# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ALISON MANAHER, individually and on behalf of others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION** |
| vs. | **JURY TRIAL DEMANDED** |
| EQUIFAX INC., a Georgia Corporation, | |
| Defendant. | |

## COMPLAINT

Plaintiff Alison Manaher, individually and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant, Equifax, Inc. Plaintiff's allegations herein are based upon personal knowledge and belief as to her own acts and upon the investigation of her counsel, and information and belief as to all other matters.

## I. INTRODUCTION

1.      This action arises from the massive data breach of Equifax's computer systems, which exposed the personal information, including names, social security

numbers, birth dates, addresses, and driver's licenses, of as many as 143 million Americans.

2.     Plaintiff brings this lawsuit on behalf of herself and a proposed class of persons or entities in the United States who: (a) had personal or credit data collected and stored by Equifax in the past year; and (b) were subject to risk of data loss and credit harm and identity theft or had to pay for third-party credit monitoring services as a result of Equifax's negligent data breach from May to July 2017.

## II.  JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Defendant's corporate headquarters are located within this District

and a substantial part of the events and omissions giving rise to the claims occurred within this district.

## III.  <u>THE PARTIES</u>

5.      Plaintiff Alison Manaher is an individual consumer residing in the state of New York.

6.      Defendant is incorporated under the laws of the state of Georgia. Defendant is a multi-billion dollar corporation that provides credit information services to hundreds of millions of businesses, governmental units, and consumers across the globe. Equifax operates through various subsidiaries including Equifax Information Services, LLC, and Equifax Consumer Services, LLC aka Equifax Personal Solutions aka PSOL. Each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

## IV. <u>FACTUAL ALLEGATIONS</u>

7.      On September 7, 2017, Equifax announced that between May and July 2017, its databases had been hacked by unauthorized third parties.

8.      Equifax receives its data from credit card companies, banks, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies such as Equifax. Equifax then stores that data internally, compiles it, and furnishes it when requested.

9.     Approximately 143 million consumers[1] across the United States were harmed by the massive data breach and Equifax's failure to adequately protect their credit and personally identifiable information ("PII").

10.    Equifax has collected and stored personal and credit information from Ms. Manaher, including her social security number, birth date, home address, driver's license information, and credit card numbers.

11.    Equifax owed a legal duty to consumers to use reasonable care to protect their credit and personal information from unauthorized access by third parties. Equifax knew that its failure to protect PII from unauthorized access would cause serious risks of credit harm and identify theft for years to come.

12.    Although Defendant announced the data breach publicly on September 7, 2017, it first became aware of the breach on or about July 29, 2017.[2]

13.    Equifax negligently failed to maintain adequate technological safeguards to protect Ms. Manaher's information from unauthorized access by

---

[1] On its new website established to share information with consumers who have been affected by the violations alleged herein, Defendant indicates that the "cybersecurity incident potentially impact[ed] approximately 143 million U.S. consumers." *See* https://www.equifaxsecurity2017.com (last accessed Sept. 8, 2017).

[2] https://www.equifaxsecurity2017.com (last accessed Sept. 8, 2017).

hackers. Equifax knew and should have known that failure to maintain adequate technological safeguards would eventually result in a massive data breach.

14.    In recent years, there have been a number of high profile data breaches caused by the failure of large companies to adequate safeguard their data. These included, but are not limited to, 70 million consumers in the Target data breach in 2014, 80 million patient and employee records in the Anthem data breach, and 56 million credit card accounts in the Home Depot data breach.

15.    Equifax could, and should, have substantially increased its cyber-security protections but failed to do so. As a result, Equifax was vulnerable to being hacked, was hacked, and over 143 million individuals are left to suffer the consequences.

16.    Consumers like Ms. Manaher should not have to bear the expense caused by Equifax's negligent failure to safeguard their credit and personal information from cyber-attackers. As a direct result of Equifax's negligence as alleged in this complaint, Mrs. Manaher has been injured.

## V.  CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action on her own behalf, and on behalf of the nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who had personal or credit data collected and stored by Equifax.

18.     Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class:

**New York Class:**

All persons or entities who are or were residents of New York state who had personal or credit data collected and stored by Equifax.

19.     Excluded from the Nationwide Class and New York Class are: (a) the Judge(s) assigned to this case; (b) Defendant, its affiliates, employees, officers and directors; and (c)  persons or entities that (i) had personal or credit data collected and stored by Equifax in the past year; and/or (ii) were subject to risk of data loss and credit harm and identity theft or had to pay for third-party credit monitoring services as a result of Equifax's negligent data breach.  Plaintiff reserves the right to modify, change, or expand the Nationwide Class or the New York Class definitions based on discovery and further investigation.

20.     <u>Numerosity</u>:  Upon information and belief, both of the Classes are so numerous that joinder of all members is impracticable.  Equifax has admitted that approximately 143 million individuals were impacted by the data breach.

21.     <u>Existence and Predominance of Common Questions of Fact and Law:</u>
Common questions of law and fact exist as to all members of the Classes.  These
questions predominate over the questions affecting individual Class members.
These common legal and factual questions include, but are not limited to whether:

    a.  Whether Plaintiff and the class members are entitled to equitable
       relief;

    b.   Whether Equifax acted negligently,

    c.  Whether Plaintiff and the class members were harmed as a result of
       Equifax's negligence; and

    d.  Whether Plaintiff and the class members are entitled to recover money
       damages.

22.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Classes
since both members of both Classes suffered risk of loss and credit harm and
identity theft caused by Equifax's negligent failure to safeguard their data, the
injuries suffered by Plaintiff  and the class members are identical and Plaintiff's
claims for relief are based upon the same legal theories as the claims of the other
class members.

23.     <u>Adequacy</u>:     Plaintiff is an adequate representative because her
interests do not conflict with the interests of the Classes that he seeks to represent,

she has retained counsel that is competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

24. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of both Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on the availability of Defendant's consumer data.

25.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## VI.  VIOLATIONS ALLEGED

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF THE NATIONWIDE CLASS, OR, ALTERNATIVELY, THE NEW YORK CLASS)

26.    Plaintiff and the putative Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

27.    Upon accepting and storing the PII of Plaintiff and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

28.    Equifax owed a duty of care not to subject Plaintiff, along with her PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any breach caused by inadequate security practices.

29.     Equifax owed numerous duties to Plaintiff and to members of the Class, including: (i) to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession; (ii) to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and (iii) to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

30.     Equifax also breached its duty to Plaintiff and the Class Members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering its dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent

31.     Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized

data breaches, including the other high profile data breaches at other large companies.

32.     Equifax knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff and Class Members' PII.

33.     Equifax breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiff and Class Members.

34.     Because Equifax knew that a breach of its systems would damage millions of individuals, including Plaintiff and Class members, Equifax had a duty to adequately protect their data systems and the PII contained thereon.

35.     Equifax had a special relationship with Plaintiff and Class members. Plaintiff and Class members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions. Moreover, only Equifax had the ability to protect its systems and the PII it stored on them from attack.

36.     Equifax's own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their PII. Equifax's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event

monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

37.     Equifax also had independent duties under state and federal laws that required Equifax to reasonably safeguard Plaintiff's and Class members' PII and promptly notify them about the data breach.

38.     Equifax breached its duties to Plaintiff  and Class members in numerous ways, including:  (i) by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiff and Class members; (2) by creating a foreseeable risk of harm through the misconduct previously described; (3) by failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiff and Class members' PII both before and after learning of the Data Breach; (4) by failing to comply with the minimum industry data security standards during the period of the Data Breach; and (5) by failing to timely and accurately disclose that Plaintiff and Class members' PII had been improperly acquired or accessed.

39.     Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiff and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax breached its duty to use reasonable care

to adequately protect and secure PII of Plaintiff and Class members during the time it was within Equifax possession or control.

40.    The law further imposes an affirmative duty on Equifax to timely disclose the unauthorized access and theft of the PII to Plaintiff and the Class so that Plaintiff  and Class members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

41.    Equifax breached its duty to notify Plaintiff and Class Members of the unauthorized access by waiting many months after learning of the breach to notify Plaintiff  and Class Members and then by failing to provide Plaintiff and Class Members information regarding the breach until September 7, 2017. Instead, its executives disposed of at least $1.8 million worth of Equifax shares after learning of the data breach but before it was publicly announced. To date, Equifax has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and the Class.

42.    Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiff and Class Members from being foreseeably captured, accessed,

disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiff  and Class members during the time it was within Equifax's possession or control.

43.     Further, through its failure to provide timely and clear notification of the Data Breach to consumers, Equifax prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their financial data and bank accounts.

44.     Upon information and belief, Equifax improperly and inadequately safeguarded PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access. Equifax's failure to take proper security measures to protect sensitive PII of Plaintiff and Class members as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of PII of Plaintiff and Class members.

45.     Equifax's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiff and Class members; and failing to provide Plaintiff and Class members with timely

and sufficient notice that their sensitive PII had been compromised. Neither Plaintiff nor the other Class members contributed to the data breach and subsequent misuse of their PII as described in this Complaint.

46.    As a direct and proximate cause of Equifax's conduct, Plaintiff and the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiff and Class Members; damages arising from Plaintiff's inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury

may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF THE NATIONWIDE CLASS, OR, ALTERNATIVELY, THE NEW YORK CLASS)**

47.    Plaintiff and the putative Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

48.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. §§ 5 *et seq.,* prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

49.    Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including,

specifically, the immense damages that would result to Plaintiff and Class Members.

50.     Equifax's violation of Section 5 of the FTC Act constitutes negligence *per se*.

51.     Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

52.     The harm that occurred as a result of the Equifax Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

53.     As a direct and proximate result of Equifax's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from their inability to use their debit or credit cards to the extent that those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts"

with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

<b><u>COUNT III</u></b><br>
<b>WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT<br>
("FCRA") (ON BEHALF OF THE NATIONWIDE CLASS, OR,<br>
ALTERNATIVELY, THE NEW YORK CLASS)</b>

54.     Plaintiff and the putative Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

55.     As individuals, Plaintiff and Class member are consumers entitled to the protections of FCRA. 15 U.S.C. § 1681a(c).

56.     Under FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

57.     Equifax is a consumer reporting agency under FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

58.     As a consumer reporting agency, FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

59.     Under FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

60.  As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Class members' PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

61.  Equifax furnished the Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

62.  The Federal Trade Commission ("FTC") has pursued enforcement actions against consumer reporting agencies under FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by" FCRA, in connection with data breaches.

63.    Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of FCRA.

64.    Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under FCRA. These obligations are well established in the plain language of FCRA and in the promulgations of the Federal Trade Commission. *See, e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix to Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of their duties under FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiff  and other members of the classes of their rights under FCRA.

65.    Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiff's and Class members' personal information for no permissible purposes under the FCRA.

66.     Plaintiff and the Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiff and the Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

67.     Plaintiff and the Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

<u>COUNT IV</u>
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(ON BEHALF THE NATIONWIDE CLASS, OR, ALTERNATIVELY,**
**THE SEPARATE NEW YORK CLASS)**

68.     Plaintiff and the putative Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

69.     Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of FCRA.

70.     Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiff's and the Class members' PII and consumer reports for no permissible purposes under FCRA.

71.     Plaintiff and the Class member have been damaged by Equifax's negligent failure to comply with FCRA. Therefore, Plaintiff and each of the

Nationwide Class member are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

72.     Plaintiff and the Class member are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

**COUNT V**
**DECLARATORY JUDGMENT**
**(ON BEHALF THE NATIONWIDE CLASS, OR, ALTERNATIVELY,**
**THE SEPARATE NEW YORK CLASS)**

73.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

74.     As previously alleged, Plaintiff and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected. As previously alleged, Equifax owes duties of care to Plaintiff and Class members that require it to adequately secure PII.

75.     Equifax still possesses PII pertaining to Plaintiff and Class members.

76.     Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and, most importantly, its systems.

77.     Accordingly, Equifax has not satisfied its legal duties to Plaintiff and Class members. In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

78.     Actual harm has arisen in the wake of the Equifax data breach regarding Equifax's duties of care to provide data security measures to Plaintiff and Class members.

79.     Plaintiff, therefore, seeks a declaration that (a) Equifax's existing data security measures do not comply with the required duties of care, and (b) in order to comply with the required duties of care, Equifax must implement and maintain reasonable security measures, including, but not limited to:

A.     Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

B.     Engaging third-party security auditors and internal personnel to run automated security monitoring;

C.     Auditing, testing, and training its security personnel regarding any new or modified procedures;

D.     Segmenting PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

E.    Purging, deleting, and destroying in a reasonable secure manner PII not necessary for its provisions of services;

F.    Conducting regular database scanning and securing checks;

G.    Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

H.    Educating its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

**COUNT VI**
**VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT O.C.G.A.**
**§§ 10-1-390, *ET SEQ*.**
**(ON BEHALF OF PLAINTIFF AND  THE NATIONWIDE CLASS)**

80.    Plaintiff and the putative Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

81.    Equifax is engaged in, and its acts and omissions affect, trade and commerce pursuant to the Georgia Fair Business Practices Act ("GFBPA") O.C.G.A. § 10-1-392(28).

82.    As alleged above, Equifax's acts, practices, and omissions at issue in this matter were directed and emanated from its headquarters in Georgia.

83.     Plaintiff and Class members entrusted Equifax with their PII.

84.     As alleged herein, Equifax engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the GFBPA:

A.     Failure to maintain adequate computer systems and data security practices to safeguard PII;

B.     Failure to disclose that its computer systems and data security practices were inadequate to safeguard PII from theft;

C.     Failure to timely and accurately disclose the Data Breach to Plaintiff and Class members;

D.     Continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach; and

E.     Continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the Data Breach and before it allegedly remediated the Breach.

85.   Furthemore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the GFBPA.

86.   Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiff and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

87.   As a direct and proximate result of Equifax's violation of the GFBPA, Plaintiff and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiff and Class Members; damages arising from Plaintiff's inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and

accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

88.     Also as a direct result of Equifax's knowing violation of the GFBPA, Plaintiff and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

A.     Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

B.     Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

C.     Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

D.     Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

E.     Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

F.     Ordering that Equifax conduct regular database scanning and securing checks;

G.     Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

H.     Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

89.     Plaintiff brings this action on behalf of herself and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make

informed purchasing decisions and to protect Plaintiff and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

90.    Plaintiff and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GFBPA, costs, and such other further relief as the Court deems just and proper.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all proposed Class members, respectfully requests that this Court:

A.    Appoint Plaintiff as the representative of the Classes and his counsel as Class counsel;

B.    Issue an order certifying this matter as a class action;

C.    Unless agreed upon by Equifax, issue an order to preserve all documents and information (and electronically-stored information) pertaining to this case;

D.    Rule against Equifax for fair compensation in an amount to be decided by the jury, and costs;

E.  Require Defendants to pay into a Court-approved escrow account an amount of money sufficient to pay Plaintiff's attorneys' fees and costs;

F.  And issue such other relief that the Court deems necessary.

## VIII.  JURY DEMAND

Plaintiff, on behalf of herself and the putative Class, demand a trial by jury on all issues so triable.

DATED this 8th day of September, 2017.

Respectfully submitted,

BY:  **WEBB, KLASE & LEMOND, LLC**

*/s/ G. Franklin Lemond, Jr.*
E. Adam Webb
  Georgia Bar No. 743910
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9594
Adam@WebbLLC.com
Franklin@WebbLLC.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

Thomas Malone
**The Malone Firm, LLC**
1650 Arch Street
Suite 2501
Philadelphia, Pennsylvania 19103

*Counsel for Plaintiff and the putative Class*