## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SAMUEL BOUNDY, FREDERICK GARDNER, MATTHEW RYBAK and GREG PESEK, individually and on behalf of all others similarly situated, | CASE NO.: _____ |
| Plaintiffs, v. | **CLASS ACTION COMPLAINT** |
| EQUIFAX, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

_____

Plaintiffs Samuel Boundy, Frederick Gardner, Matthew Rybak and Greg Pesek (collectively, "Plaintiffs"), individually and on behalf of the Classes defined below of similarly situated persons, file this Complaint against Equifax, Inc. ("Equifax"). The allegations herein are based upon personal knowledge as to matters concerning Plaintiffs and their own acts, and upon information and belief as to all other matters. The allegations that are not based on Plaintiffs' personal knowledge result from Plaintiffs' counsel's investigation.

## **INTRODUCTION**

1. Plaintiffs bring this action against Defendant Equifax for its failure to secure and safeguard consumers' personally identifiable information (hereinafter referred to as "PII") which Equifax collected from various sources in connection with the operation of its business as a consumer credit reporting agency, and for failing to provide timely, accurate, and adequate notice to Plaintiffs and other similarly situated consumer victims that their PII had been stolen and precisely what types of information were stolen.

2. On September 7, 2017 Equifax revealed that from mid-May through July 2017 it experienced one of the largest security breaches in United States history (the "data breach"), potentially impacting more than half of the U.S. population, exposed sensitive information, including social security numbers, birth dates, credit card numbers, drivers' license numbers and personal addresses, of up to 143 million Americans.  Equifax acknowledged that unauthorized persons exploited a website vulnerability to gain access to sensitive data and other information maintained by Equifax.

3. Equifax acknowledged that it discovered the unauthorized access on July 29, 2017, but has yet to provide individual notice to Plaintiffs and other victims of the data breach that their PII had been stolen and precisely what types of

information were stolen.  Instead, Equifax executives sold at least $1.8 million worth of shares before the public disclosure of the data breach[1].  Moreover, Equifax has since sought to limit its liability by secretly imposing a class action waiver and arbitration clause on Class members attempting to investigate whether they were harmed.

4.  Despite the fact that it was storing sensitive personal information that it knew was valuable to, and vulnerable to, unauthorized users, Equifax failed to take even the most basic security precautions that could have protected Plaintiffs' data. Instead, Equifax used grossly inadequate computer systems and data security practices that allowed the unauthorized users to easily make off with Plaintiffs' personal data. Stealing this much data takes time, and there were numerous steps along the way when any company following standard IT security practices would foil the unauthorized users. But Equifax failed to take these basic precautions.

---

[1] It has been reported that Equifax's Chief Financial Officer, John Gamble, sold shares worth $946,374 after Equifax had notice of the data breach but before public notice of the data breach was provided; Equifax's president of U.S. information solutions, Joeseph Loughran, exercised options to dispose of stock worth $584,099 after Equifax had notice of the data breach but before public notice of the data breach was provided; and Equifax's president of workforce solutions, Rodolfo Ploder, sold $250,458 of stock after Equifax had notice of the data breach but before public notice of the data breach was provided.

5. Since the Data Breach, Plaintiffs and Class members have been repeatedly harmed. For example, Class members have had bank accounts drained, and have had credit cards or fraudulent loans taken out in their names. They have spent countless hours filing police reports and poring over credit reports to combat identity theft. Many are now paying monthly or annual fees for identity theft and credit monitoring services. Now that their sensitive personal information (e.g., Their social security numbers, dates of birth, and home addresses) has been released, Plaintiffs and Class members must worry about being victimized throughout the rest of their lives.[2]

6. The Data Breach was the inevitable result of Equifax's inadequate and deficient approach to data security and the protection of the PII that it collected during the course of its business.

7. Equifax disregarded the rights of Plaintiffs and Class members by intentionally, willfully, recklessly, and/or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard PII, failing to take

---

[2] See, *Guide for Assisting Identity Theft Victims,* Federal Trade Commission, 4 (September 2013), https://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf (last visited September 11, 2017).

available steps to prevent and stop the breach from ever happening, failing to monitor and detect the breach on a timely basis, and failing to inform Plaintiffs, Class members and the general public of the Data Breach on a timely basis.

8. As a result of the Data Breach and Equifax's failure to properly and timely disclose the existence and extent of the Data Breach, the PII of Plaintiffs and Class members has been exposed to criminals for misuse.   The injuries suffered by Plaintiffs and Class members, or likely to be suffered by Plaintiffs and Class members as a direct result of the Data Breach include but are not limited to:

    a.  unauthorized use of their PII;

    b.  theft of their personal and financial information;

    c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.  damages arising from the inability to use their PII;

    e.  loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees,

and adverse effects on their credit including decreased credit scores and adverse credit notations;

f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

g.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of plaintiffs and class members information on the Internet black market;

h.  damages to and diminution in value of their PII entrusted to Equifax for the sole purpose of purchasing products and services from Equifax; and

i.  the loss of Plaintiffs and Class members' privacy.

9.  The injuries to the Plaintiffs and Class members were directly and proximately caused by Equifax's failure to implement and/or maintain adequate data security measures for PII.

10. Plaintiffs retain a significant interest in ensuring that their PII, which, while stolen, remains in the possession of Equifax is protected from further breaches, and seek to remedy the harms they have suffered on behalf of themselves and similarly situated consumers whose PII was stolen as a result of the Equifax Data Breach.

11. Plaintiffs bring this action to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiffs seek the following remedies, among others: statutory damages under the Fair Credit Reporting Act ("FCRA") and state consumer protection statutes, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Equifax to implement improved data security measures.

12. Because Equifax failed to provide even minimally adequate computer systems and data security practices, Plaintiffs and Class members are forced to suffer the consequences. This court must hold Equifax accountable.

## **JURISDICTION & VENUE**

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy

exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members. And, at least some members of the proposed Class have a different citizenship from Equifax.

14. This Court has personal jurisdiction over Equifax because Equifax maintains its principal place of business in Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia. Equifax intentionally availed itself of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within Georgia.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Equifax 's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

16. Plaintiff Samuel Boundy resides at 9542 lake chase island way in Tampa, FL 33626. Plaintiff Boundy is a citizen and resident of the State of Florida. Plaintiff Boundy is a victim of the Data Breach. As a result of the Data Breach, Plaintiff Boundy has spent time and effort monitoring his financial accounts.

17. Plaintiff Frederick Gardner resides at 6920 Amethyst Lane in Plano, Texas 75023.  Plaintiff Gardner is a citizen and resident of the State of Texas. Mr. Gardner is a victim of the Data Breach. As a result of the Data Breach, Plaintiff Gardner has spent time and effort monitoring his financial accounts.  Plaintiff Gardner has recently had multiple credit inquiries, which can and did have an adverse effect on his credit score.  Plaintiff Gardner has also had credit accounts opened in his name without his authorization in addition to an unauthorized withdrawal in the amount of $300 from his bank account.

18. Plaintiff Greg Pesek resides at 8039 S. Jasmine Circle in Centennial, CO 80112.  Plaintiff Pesek is a citizen and resident of the State of Colorado. Mr. Pesek is a victim of the Data Breach. As a result of the Data Breach, Plaintiff Pesek has spent time and effort monitoring his financial accounts.

19. Plaintiff Matthew Rybak resides at 1505 N. Hancock Street in Philadelphia, PA 19122.  Plaintiff Rybak is a citizen and resident of the State of Pennsylvania.  Mr. Rybak is a victim of the Data Breach.  As a result of the Data Breach, Plaintiff Rybak has spent time and effort monitoring his financial accounts.

20. Defendant Equifax, Inc. is a Delaware corporation with its principal place of business located at 1550 Peachtree Street NE Atlanta, Georgia 30309.

Equifax, Inc. may be served through its registered agent, Shawn Baldwin, at its principal office address identified above.

## <u>FACTUAL ALLEGATIONS</u>

21. Equifax is one of three nationwide credit-reporting companies that track and rates the financial history of U.S. consumers. These companies are supplied with data about loans, loan payments and credit cards, as well as information on everything from child support payments, credit limits, missed rent and utilities payments, addresses and employer history.  All this information, and more factors into credit scores.

22. Equifax gets its data from credit card companies, banks, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies, as well as by purchasing public records.

23. According to Equifax's report on September 7, 2017, the breach was discovered on July 29th. The perpetrators gained access by "[exploiting] a [...] website application vulnerability" on one of the company's U.S.-based servers. The hackers were then able to retrieve "certain files."

24. Included among those files was personal data: names, dates of birth, Social Security numbers and addresses. In some cases -- Equifax states around 209,000 instances-- the records also included actual credit card numbers.

Documentation about disputed charges was also leaked. Those documents contained additional personal information on around 182,000 Americans.

25. Personal data like this is highly valuable for cybercriminals who, among other things, will likely look to capitalize on it by launching targeted phishing campaigns.

26. Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII – a form of intangible property that Plaintiffs entrusted to Equifax and that was compromised in and as a result of the Data Breach.

27. Additionally, Plaintiffs suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII being placed in the hands of unauthorized users who have already, or will imminently, misuse such information.

28. Moreover, Plaintiffs has a continuing interest in ensuring that their private information, which remains in the possession of Equifax, is protected and safeguarded from future breaches.

29. At all relevant times, Equifax was well-aware, or reasonably should have been aware, that the PII collected, maintained and stored in the POS systems is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, such as identity theft and fraud.

30. It is well known and the subject of many media reports that PII is highly coveted and a frequent target of unauthorized users. Despite the frequent public announcements of data breaches of corporate entities, including Experian (One of Equifax's two major competitors), Equifax maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class members.

31. PII is a valuable commodity because it contains not only payment card numbers but PII as well. A "cyber blackmarket" exists in which criminals openly post stolen payment card numbers, social security numbers, and other personal information on a number of underground Internet websites. PII is "as good as gold" to identity thieves because they can use victims' personal data to open new financial accounts and take out loans in another person's name, incur charges on existing accounts, or clone ATM, debit, or credit cards.

32. At all relevant times, Equifax knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

33. Equifax was, or should have been, fully aware of the significant number of people whose PII it collected, and thus, the significant number of individuals who would be harmed by a breach of Equifax's systems.

34. Despite all of the publicly available knowledge of the continued compromises of PII in the hands of other third parties, Equifax's approach to maintaining the privacy and security of the PII of Plaintiffs and Class members was lackadaisical, cavalier, reckless, or at the very least, negligent.

35. The ramifications of Equifax's failure to keep Plaintiffs' and Class members' data secure are severe.

36. Equifax is prohibited by the Federal Trade Commission Act (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."  The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act[3].

37. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used,

---

[3] See e.g., *FTC v. Wundham Corp.,* 799 F.3d 236, 243 (3d Cir. 2015).

alone or in conjunction with any other information, to identify a specific person."

38. Equifax is required by state and federal laws and regulations to protect individuals' PII.

39. In addition to its obligations under federal and state laws, Equifax owed a duty to Plaintiffs and Class members, who entrusted them with sensitive personal information, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Equifax owed a duty to Plaintiffs and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and Class members.

40. Equifax owed a duty to Plaintiffs and Class members, who entrusted them with PII, to design, maintain, and test its computer systems to ensure that the PII in its possession was adequately secured and protected.

41. Equifax owed a duty to Plaintiffs and Class members, who entrusted them with sensitive PII, to create and implement reasonable data security practices

14

and procedures to protect the PII in its possession, including adequately training its employees and others who accessed PII within its computer systems on how to adequately protect PII.

42. Equifax owed a duty to Plaintiffs and Class members, who entrusted it with sensitive PII, to implement processes that would deter a breach of its data security systems in a timely manner.

43. Equifax owed a duty to Plaintiffs and Class members, who entrusted it with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

44. Equifax owed a duty to Plaintiffs and Class members, who entrusted it with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

45. Equifax owed a duty of care to Plaintiffs and Class members because they were foreseeable and probable victims of any inadequate and insufficient data security practices. Equifax collected Plaintiffs and Class members' information either directly or indirectly from credit card companies, banks, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies, as well as by purchasing public records.

46. Identity thieves can use personal information, such as that of Plaintiffs and Class members which Equifax failed to keep secure, to perpetrate a variety of

crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

47. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.

48. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

49. Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

50. The PII of Plaintiffs and Class members is private and sensitive in nature and was left inadequately and insufficiently protected by Equifax. Equifax did not obtain Plaintiffs' and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

51. The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

17

52. Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

53. Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Equifax would have prevented the Data Breach and, ultimately, the theft of Plaintiffs' and Class members' PII.

54. As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.  In all manners of life in this country, time has constantly been recognized as compensable, for many consumers it is the

way they are compensated, and even if retired from the work force, consumers should be free of having to deal with the consequences of a credit reporting agency's slippage, as is the case here.

55. Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including but not limited to:

    a. Theft of their personal and financial information;

    b. Unauthorized charges on their debit and credit card accounts;

    c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized users and already misused via the sale of Plaintiffs' and Class members' information on the black market;

    d. The untimely and inadequate notification of the Data Breach;

    e. The improper disclosure of Plaintiffs' and Class members' PII;

    f. Loss of privacy;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h.  Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

i.  Ascertainable losses in the form of the loss of cash back or other benefits as a result of inability to use certain accounts and credit cards affected by the Data Breach;

j.  Loss of use and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and

k.  The loss of productivity and value of their time spent to attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, canceling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on

compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

56. Equifax has not offered customers any meaningful credit monitoring or identity theft protection services, despite the fact that it is well known and publicly acknowledged that damage and fraud from a data breach can take years to occur. As a result, Plaintiffs and Class members are left to their own actions to protect themselves from the financial damage Equifax has allowed to occur. The additional cost of adequate and appropriate coverage, or insurance, against the losses and exposure that Equifax's actions have created for Plaintiffs and Class members, is ascertainable and is a determination appropriate for the trier of fact. Equifax has also not offered to cover any of the damages sustained by Plaintiffs or Class members.

57. While the PII of Plaintiffs and members of the Class has been stolen, Equifax continues to hold PII of consumers, including Plaintiffs and Class members. Particularly because Equifax and has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and members of the Class have an undeniable interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed and is not subject to further theft.

58. Plaintiffs seeks relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seeks certification of a Nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Nationwide Class").

59. Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims under the laws of the individual States in which they respectively reside, and on behalf of separate statewide classes, defined as follows:

> All persons residing in [STATE] whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Statewide Classes").

60. Excluded from each of the above Classes are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

61. Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

62. *Numerosity*: The members of the Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiffs are informed and believe that there are millions of class members, the precise number of class members is unknown to Plaintiffs, but will be determined through discovery. Class members' names and addresses are ascertainable and identifiable through information in Equifax's records, and Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

63. *Commonality*: This action involves several critical common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

    a.  Whether Equifax had a duty to protect PII;

    b.  Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c.  Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d.  Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e.  Whether Equifax's failure to implement adequate data security measures allowed the breach to occur;

f.  Whether Equifax's conduct constituted deceptive trade practices;

g.  Whether Equifax's conduct, including their failure to act, resulted in or was the proximate cause of the breach of it systems, resulting in the loss of the PII of Plaintiffs and Class members;

h.  Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect it systems and data networks;

i.  Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably inform Plaintiffs and Class members of the data breach; and

j.  Whether Plaintiffs and Class members are entitled to relief.

64. *Typicality*: Plaintiffs' claims are typical of the Class members' claims because Plaintiffs and other Class members all had their PII compromised in the data breach. Furthermore, the factual basis of Equifax's conduct are common to all Class members and represents a common thread of deliberate, negligent, and/or fraudulent misconduct resulting in injury to all Class members.

65. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Classes they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the classes they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the class.

66. *Superiority*: Plaintiffs and Class members have suffered and will continue to suffer harm and damages as a result of Equifax's conduct. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of Class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members

could afford to seek legal redress for Equifax's conduct.  Further, the cost of litigation could well equal or exceed any recovery. Absent a class action, Class members will continue to incur damages without remedy. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, and that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

67. *Declaratory & Injunctive Relief*: Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c)(4).  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Equifax. Such individual actions would create a risk of adjudications which would be dispositive of the interests of other Class members and impair their interests. Equifax has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

68. Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the

disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Equifax failed to timely notify Plaintiffs, Class members, and/or the general public of the data breach;

b. Whether Equifax owed a legal duty to Plaintiffs and the Classes to exercise due care in collecting, storing, and safeguarding their PII;

c. Whether Equifax's security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

d. Whether Equifax failed to adequately comply with industry standards amounting to negligence;

e. Whether Equifax failed to take commercially reasonable steps to safeguard the PII of Plaintiffs and Class members; and

f. Whether adherence the data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

## COUNT I
### Negligence
**(On behalf of Plaintiffs and the Nationwide Class, or, alternatively, the Separate Statewide Classes)**

69. Plaintiffs incorporate the above allegations by reference.

70. Upon accepting and storing the PII of Plaintiffs and Class members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

71. Equifax owed a duty of care not to subject Plaintiffs, along with their PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

72. Equifax owed numerous duties to Plaintiffs and to members of the Nationwide Class, including the following:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b. to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices;

c. to implement processes to quickly detect the data breach and to timely act on warnings about data breaches; and

     d.  to warn and inform Plaintiffs and Class members about the data breach in a timely fashion.

73. Equifax also breached its duty to Plaintiffs and the Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiffs and Class members, misuse the PII and intentionally disclose it to others without consent.

74. Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security.  Equifax knew about numerous, well-publicized data breaches, including the breach at one of its competitors, Experian.

75. Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' PII.

76. Equifax breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members.

77. Because Equifax knew that a breach of its systems would damage millions of individuals, including Plaintiffs and Class members, Equifax had a duty to adequately protect their data systems and the PII contained thereon.

78. Equifax had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions. Moreover, only Equifax had the ability to protect its systems and the PII it stored on them from attack.

79. Equifax's own conduct also created a foreseeable risk of harm to Plaintiffs and Class members and their PII. Equifax's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

80. Equifax also had independent duties under state and federal laws that required Equifax to reasonably safeguard Plaintiffs' and Class members' Personal Information and promptly notify them about the data breach.

81. Equifax breached its duties to Plaintiffs and Class members in numerous ways, including:

   a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members;

   b. by creating a foreseeable risk of harm through the misconduct previously described;

   c. by failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiffs and Class members PII both before and after learning of the data breach;

   d. by failing to comply with the minimum industry data security standards during the period of the data breaches; and

   e. by failing to timely and accurately disclose that Plaintiffs' and Class members' PII had been improperly acquired or accessed.

82. Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiffs and Class members from being foreseeably captured, accessed,

disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within Equifax possession or control.

83. The law further imposes an affirmative duty on Equifax to timely disclose the unauthorized access and theft of the PII to Plaintiffs and the Class so that Plaintiffs and Class members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

84. Equifax breached its duty to notify Plaintiffs and Class members of the unauthorized access by waiting many months after learning of the breach to notify Plaintiffs and Class members and then by failing to provide Plaintiffs and Class members information regarding the breach until September 2017. Instead, its executives disposed of at least $1.8 million worth of shares in the company after Equifax learned of the data breach but before it was publicly announced.  To date, Equifax has not provided sufficient information to Plaintiffs and Class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

85. Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of

Plaintiffs and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within Equifax's possession or control.

86. Further, through its failure to provide timely and clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their financial data and bank accounts.

87. Upon information and belief, Equifax improperly and inadequately safeguarded PII of Plaintiffs and Class members in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access. Equifax's failure to take proper security measures to protect sensitive PII of Plaintiffs and Class members as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of PII of Plaintiffs and Class members.

88. Equifax's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiffs and

Class members; and failing to provide Plaintiffs and Class members with timely and sufficient notice that their sensitive PII had been compromised.

89. Neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their PII as described in this Complaint.

90. As a direct and proximate cause of Equifax's conduct, Plaintiffs and the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' and Class members' inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover

and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## Count II
## Negligence Per Se
**(On behalf of Plaintiffs and the Nationwide Class, or, alternatively, the Separate Statewide Classes)**

91. Plaintiffs incorporate the above allegations by reference.

92. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII.  The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

93. Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.  Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including,

specifically, the immense damages that would result to Plaintiffs and Class members.

94. Equifax's violation of Section 5 of the FTC Act constitutes negligence per se.

95. Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

96. The harm that occurred as a result of the Equifax Data Breach is the type of harm the FTC Act was intended to guard against.   The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

97. As a direct and proximate result of Equifax's negligence per se, Plaintiffs and the Class have suffered, and continue to suffer, injuries damages arising from Plaintiffs' and Class members' inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies,

contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

### COUNT III
### Willful Violation of the Fair Credit Reporting Act
**(On behalf of Plaintiffs and the Nationwide Class, or, alternatively, the Separate Statewide Classes)**

98. Plaintiffs incorporate the above allegations by reference.

99. As individuals, Plaintiffs and Class member are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

100.    Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

101.    Equifax is a consumer reporting agency under the FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

102.    As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

103.    Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).  The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character,

general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

104. As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members' PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

105. Equifax furnished the Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

106.     Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. The willful and reckless nature of Equifax's violations is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

107.     Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. See, e.g., 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any

reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and other members of the classes of their rights under the FCRA.

108.    Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under the FCRA.

109.    Plaintiffs and the Nationwide Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

110.    Plaintiffs and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

**COUNT IV**
**Negligent Violation of the Fair Credit Reporting Act**
**(On behalf of Plaintiffs and the Nationwide Class, or, alternatively, the Separate Statewide Classes)**

111.     Plaintiffs incorporate the above allegations by reference.

112.     Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

113.     Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Nationwide Class members' PII and consumer reports for no permissible purposes under the FCRA.

114.     Plaintiffs and the Nationwide Class member have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class member are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

115.     Plaintiffs and the Nationwide Class member are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## COUNT V
## Declaratory Judgment
**(On behalf of Plaintiffs and the Nationwide Class, or, alternatively the Separate Statewide Classes)**

116.     Plaintiffs incorporate the above allegations by reference.

117.     Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII. Equifax still possesses PII pertaining to Plaintiffs and Class members.

118.     Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and, most importantly, its systems.

119.     Accordingly, Equifax has not satisfied its contractual obligations and legal duties to Plaintiffs and Class members.  In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

120.    Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

121.    Plaintiffs, therefore, seek a declaration that (a) Equifax's existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures, including, but not limited to:

    a.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

    b.  engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.  auditing, testing, and training its security personnel regarding any new or modified procedures;

d. segmenting PII by, among other things, creating firewalls and access control so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax's systems;

e. purging, deleting, and destroying in a reasonable secure manner PII not necessary for its provisions of services of;

f. conducting regular database scanning and securing checks;

g. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach of; and

h. educating its customers and the general public about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers and the general public must take to protect themselves.

## COUNT VI
## Violation of Georgia Fair Business Practices Act, O.C.G.A. §10-1-390, *et. seq.*
### (On Behalf of Plaintiffs and the Nationwide Class[4])

122.    Plaintiffs incorporate the above allegations by reference.

---

[4] In the alternative, Plaintiffs, individually and on behalf of the Statewide Classes, bring this cause of action pursuant to the consumer protection laws of their respective states.

123.    Equifax is engaged in, and their acts and omissions affect, trade and commerce pursuant to O.C.G.A. § 10-1-392(28).

124.    As discussed above, Equifax's acts, practices, and omissions at issue in this matter were directed and emanated from its headquarters in Georgia.

125.    Plaintiffs and Class members entrusted Equifax with their PII.

126.    As alleged herein this Complaint, Equifax engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the GFBPA:

    a.  failure to maintain adequate computer systems and data security practices to safeguard PII;

    b.  failure to disclose that its computer systems and data security practices were inadequate to safeguard PII from theft;

    c.  failure to timely and accurately disclose the data breach to Plaintiffs' and Class members;

    d.  continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the security vulnerabilities of the systems that were exploited in the data breach; and

e. continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the Data Breach and before it allegedly remediated the Data Breach.

127. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the GFBPA.

128. Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

129. As a direct and proximate result of Equifax's violation of the GFBPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact

of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

130.   Also as a direct result of Equifax's knowing violation of the GFBPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

    a.  ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Equifax audit, tests, and trained in security personnel regarding any new or modified procedures;

d. ordering that Equifax segment PII by, among other things, creating firewalls and access control so that if one area of Equifax it is compromised, hackers cannot gain access to other portions of Equifax's systems;

e. ordering that Equifax purge, delete, and destroying a reasonable secure manner PII not necessary for its provisions of services;

f. Ordering that Equifax conduct regular database scanning and securing checks;

g. Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal

information to 3rd parties, as well as the steps Equifax customers must take to protect themselves.

131.     Plaintiffs bring this action on behalf of themselves and Class members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

132.     Plaintiffs and Class members are entitled to a judgment against EQUIFAX for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GFBPA, costs, and such other further relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a. For an Order certifying the classes, as defined herein, and appointing Plaintiffs and their counsel to represent the Nationwide class, or in the alternative to separate Statewide Classes;

b. For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class members;

c. For equitable relief compelling Equifax to use appropriate cybersecurity methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromise;

d. For an award of damages, as allowed by law in an amount to be determined;

e. For an award of attorney's fees costs and litigation expenses, as allowable by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

This 11th day of September 2017

**HERMAN GEREL, LLP**
/s/ Andrea S. Hirsch
Andrea S. Hirsch
Ga. Bar No. 666557
Leonard A. Davis*
Steve Herman*
60 Lenox Pointe
Atlanta, GA 30324
Office: 404.880.9500
Fax: 770.450.9236
ahirsch@hermangerel.com
ldavis@hhklawfirm.com
sherman@hhklawfirm.com


**LEVIN SEDRAN & BERMAN**
Arnold Levin*
Daniel C. Levin*
Charles E. Schaffer*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
ALevin@lfsblaw.com
CSchaffer@lfsblaw.com
www.LFSBLaw.com

**FRANKLIN D. AZAR & ASSOCIATES**
Franklin D. Azar, Esq.*
Keith Scranton, Esq.*
Hugh Z. Balkin, Esq.*
14426 East Evans Avenue
Aurora, CO 80014
Tel: (303) 757-3300
Fax: (303) 757-3206
azarf@fdazar.com
scrantonk@fdazar.com
balkinz@fdazar.com


*Counsel for Plaintiffs and the Proposed Classes*

* Will apply for *pro hac vice* admission