FILED
2017 Sep-12  PM 05:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | |
|---|---|
| DARRYL W. WALKER, ROBIN L. TAYLOR, JENNIFER A. MEACHUM, DALE F. STEWART, II, JENNY STORCH, KAREN BASEWELL, and ALEXIS BUDINAS JANUSZ, | ) ) ) ) ) ) ) Civil Action No. 5:17-CV-01527 ) CLASS ACTION ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| EQUIFAX, INC., | |
| Defendant. | |

## FIRST AMENDED COMPLAINT

COME NOW, Darryl W. Walker, Robin L. Taylor, Jennifer A. Meachum, Dale F. Stewart, II, Jenny Storch, Karen Baswell, and Alexis Budinas Janusz, Plaintiffs in the above-styled action, file their Amended Complaint both individually and on behalf of a class of similarly-situated individuals against the Defendant Equifax, Inc. (hereinafter, "Equifax"), and, in support thereof, show as follows:

### INTRODUCTION

1.     Plaintiffs file this Complaint as a national class action on behalf of over 140 million consumers across the country harmed by Equifax's failure to

secure and safeguard consumers' personally identifiable information which Equifax collected from various sources in connection with the operation of its business as a consumer credit reporting agency, and for failing to provide timely, accurate and adequate notice to Consumer Plaintiffs and other Class members that their information had been stolen and precisely what types of information were stolen.

2.     Equifax has acknowledged that a cybersecurity incident ("Data Breach") potentially impacting approximately 143 million U.S. consumers. It has also acknowledged that unauthorized persons exploited a U.S. website application vulnerability to gain access to certain files. Equifax claims that based on its investigation, the unauthorized access occurred from mid-May through July 2017. The information accessed primarily includes names, Social Security numbers, birth dates, addresses, and, in some instances, driver's license numbers. In addition, Equifax has admitted that credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

## PARTIES

3.     Darryl W. Walker is above the age of nineteen (19) and is a resident of Huntsville, Alabama.

4.     Robin L. Taylor is above the age of nineteen (19) and is a resident of

Greenville, Texas.

5.    Jennifer A. Meachum is above the age of nineteen (19) and is a resident of Hartford, Michigan.

6.    Dale F. Stewart, II is above the age of nineteen (19) and is a resident of Waite Hill, Ohio.

7.    Jenny Storch is above the age of nineteen (19) and is a resident of Mansfield Center, Connecticut.

8.    Karen Baswell is above the age of nineteen (19) and is a resident of Yonkers, New York.

9.    Alexis Budinas Janusz is above the age of nineteen (19) and is a resident of Ben Salem, Pennsylvania.

10.    Equifax is a multi-billion-dollar Georgia corporation that provides credit information services to millions of businesses, governmental units, and consumers across the globe. Equifax operates through various subsidiaries including Equifax Information Services, LLC, and Equifax Consumer Services, LLC aka Equifax Personal Solutions aka PSOL. Each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to the Class

Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12.    This Court has personal jurisdiction over Defendant because it conducts business in Alabama and has sufficient minimum contacts with Alabama.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

14.    Throughout the past year, Equifax collected and stored personal and credit information from Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz, including their social security numbers, birth dates, home addresses, driver's license information, and credit card numbers.

15.    Equifax owed a legal duty to consumers like Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz to use reasonable care to protect their credit and personal information from unauthorized access by third parties. Equifax knew that its failure to protect Plaintiffs' credit and personal information from unauthorized access would cause serious risks of

credit harm and identify theft for years to come.

16.     On September 7, 2017, Equifax announced for the first time that from May to July 2017, its database storing Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz's credit and personal information had been hacked by unauthorized third parties, subjecting Plaintiffs to credit harm and identify theft.

17.     In an attempt to increase profits, Equifax negligently failed to maintain adequate technological safeguards to protect Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz's information from unauthorized access by hackers.

18.     Equifax knew and should have known that failure to maintain adequate technological safeguards would eventually result in a massive data breach.

19.     Equifax could have and should have substantially increased the amount of money it spent to protect against cyber-attacks but chose not to.

20.     Consumers like Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz should not have to bear the expense caused by Equifax's negligent failure to safeguard their credit and personal information from cyber-attackers.

21.     As a direct result of Equifax's negligence as alleged in this complaint, Plaintiffs will suffer injury of loss to pay for third-party credit monitoring

services they otherwise would not have to pay for.

22.     Mr. Walker, Ms. Taylor, Ms. Meachum, Mr. Stewart, Ms. Storch, Ms. Baswell, and Ms. Janusz hope Equifax will use this massive data breach, and their subsequent lawsuit, as a teachable moment to finally adopt adequate safeguards to protect against this type of cyber- attack in the future.

23.     The ramifications of Equifax's failure to keep Plaintiffs' and Class members' data secure are severe.

24.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[1] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[2]

25.     Personal identifying information ("PII") is a valuable commodity to identity thieves once the information has been compromised. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[3]

26.     Identity thieves can use personal information, such as that of Plaintiffs

---

[1] 17 C.F.R § 248.201 (2013).

[2] *Id.*

[3] Federal Trade Commission, *Warning Signs of Identity Theft,* available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited April 10, 2017).

and Class members which Equifax failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

27.    Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[4]

28.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[5]

29.    There may be a time lag between when harm occurs versus when it is discovered, and also between when personally identifying information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

---

[4] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits0inflection-point (last visited April 10, 2017).
[5] Victims of Identity Theft, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf last visited April 10, 2017).

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

30.     Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their personally identifying information.

31.     The PII of Plaintiffs and Class members is private and sensitive in nature and was left inadequately protected by Equifax. Equifax did not obtain Plaintiffs' and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

32.     The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulation, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security

---

[6] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

or integrity of such information.

33.     Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

34.     Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Equifax would have prevented the Data Breach and, ultimately, the theft of its customers' PII.

35.     Equifax's wrongful actions and and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer economic damages and other actual harm for which they are entitled to compensation, including:

   a)  Theft of their personal and financial information;

   b)  Unauthorized charges on their debit and credit card accounts;

   c)  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the black market;

   d)  The untimely and inadequate notification of the Data Breach;

   e)  The improper disclosure of their PII;

f)  Loss of privacy;

g)  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h)  Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

i)  Ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j)  Loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees; and adverse effects on their credit including adverse credit notations; and

k)  The loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring

and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

36.     Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to FED. R. CIV. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Nationwide Class"). Further, State Subclasses are defined below.

37.     Excluded from each of the above Classes are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

38.     Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

39.     Each of the proposed Classes meets the criteria for certification under FED. R. CIV. P. 23(a), (b)(2), (b)(3) and (c)(4).

40.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1),

the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class include at least 143 million individuals whose PII was compromised in the Equifax Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

41.   **Commonality. Fed R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Fed. R. Civ. P. 23(2)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a)  Whether Equifax had a duty to protect PII;

b)  Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c)  Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d)  Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e)  Whether Equifax's failure to implement adequate data security measures

allowed the breach to occur.

f) Whether Equifax's conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of PII of Plaintiffs and Class members;

g) Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect its POS systems and data network; and

h) Whether Plaintiffs and Class members are entitled to relief.

42.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of those of other class members. Plaintiffs had their PII compromised in the Data Breach. Plaintiffs' damages and injuries are akin to other Class members and Plaintiffs seek relief consistent with the relief of the Class.

43.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Equifax to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

44. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may not be sufficient to justify individual litigation. Here the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Equifax, and thus, individual litigation to redress Equifax's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

45. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

46.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a)  Whether Equifax failed to timely notify the public of the Breach;

b)  Whether Equifax owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c)  Whether Equifax's security measures were reasonable in light of data security recommendation, and other measures recommended by data security experts;

d)  Whether Equifax failed to adequately comply with industry standards amounting to negligence;

e)  Whether Defendant failed to take commercially reasonable steps to safeguard the PII of Plaintiffs and the Class members; and

f)  Whether adherence to data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

47.    Finally, all members of the proposed Classes are readily ascertainable. Equifax has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this

information, the members of the Class can be identified and their contact information ascertained for the purposes of providing notice to the Class. This is proven by the fact that Equifax has set up a website which allows customers to ascertain whether they are subject to the Data Breach as alleged above. Hence, Equifax may not now assert that identification of the Class members is impossible.

**CAUSES OF ACTION**

**Count I**
**Negligence**
**(On behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

48.     Plaintiffs restate and reallege Paragraphs 1 through 48 as if fully set forth herein.

49.     Upon accepting and storing the PII of Plaintiffs and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

50.     Equifax owed a duty of care not to subject Plaintiffs, along with their PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

51.     Equifax owed numerous duties to Plaintiffs and to members of the

Nationwide Class, including the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b) To protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c) To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

52.    Equifax also breached its duty to Plaintiffs and the Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted and unknown third party to gather PII of Plaintiffs and Class members, misuse the PII and intentionally disclose it to others without consent.

53.    Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized data breaches, including the breach at Experian.

54.     Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' PII.

55.     Equifax breached its duties to Plaintiffs and Class members by fialing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members.

56.     As a direct and proximate result of Equifax's conduct, Plaintiffs and the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through he use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of

privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**Count II**
**Negligence Per Se**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

57.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

58.     Section 5 of the FTC Act prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

59.     Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiffs and Class members.

60.     Equifax's violation of Section 5 of the FTC Act constitutes negligence

*per se*.

61.    Plaintiffs and Class members are within the class of persons the the FTC Act was intended to protect.

62.    As a direct and proximate result of Equifax's negligence per se, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

**Count III**
**Willful Violation of the Fair Credit Reporting Act**
**("FCRA")**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

63.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

64.     As individuals, Plaintiffs and Class members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

65.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties…" 15 U.S.C. § 1681a(f).

66.     Equifax is a consumer reporting agency under FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

67.     As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to… limit the furnishing of consumer reports to the purposes listed under section 1681B of this title." 15 U.S.C. § 1681e(a).

68.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity,

character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (a) credit… to be used primarily for personal, family, or household purposes;… or (c) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

69.    As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

70.    Equifax furnished the Nationwide Class members' consumer reports

by disclosing their consumer reports to unauthorized or unknown entities or computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

71.     Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. The willful and reckless nature of Equifax's violations are supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years and Equifax's numerous other data breaches in the past. Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches and willingly failed to take them.

72.     Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. *See, e.g.,* 55

Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and other members of the Classes of their rights under FCRA.

73.    Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under the FCRA.

74.    Plaintiffs and the Nationwide Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer… or damages of not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

75.    Plaintiffs and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

**Count IV**
**Negligent Violation of the Fair Credit Reporting Act**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs**
**and the Separate Statewide Classes)**

76.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

77.     Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

78.     Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and Nationwide Class members' PII and consumer reports for no permissible purpose.

79.     Plaintiffs and the Nationwide Class members have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages

sustained by the consumer." 15 U.S.C § 1681o(a)(1).

80.     Plaintiffs and the Nationwide Class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

**Count V**
**Declaratory Judgement**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

81.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

82.     As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

83.     Equifax still possesses PII pertaining to Plaintiffs and Class members.

84.     Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and most importantly, its systems.

85.     Accordingly, Equifax has not satisfied its contractual obligations and legal duties to Plaintiffs and Class members. In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is more

vulnerable than previously.

86.     Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

87.     Plaintiffs, therefore, seek a declaration that (a) Equifax's existing data security measures do not comply with its contractual obligations and duties of care and (b) in order to comply with its contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures.

## Count VI
## Violation of Alabama Deceptive Trade Practices Act
### (ALA CODE 1975 § 8-19-1 *et seq.*)

88.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

89.     Plaintiff Darryl W. Walker brings this claim on behalf of himself and the Alabama Subclass.

90.     Defendant's misrepresentations, active concealment, and failures to disclose violated the Alabama Deceptive Trade Practices Act ("DTPA") in that Defendant misrepresented that its services and products were of a particular standard, quality, and/or grade when they were of another (Ala. Code § 8-19-5(7)).

91.     As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it

collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

92. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

93. Defendant's misrepresentations and omissions were material to Plaintiff Darryl W. Walker and members of the Alabama Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Alabama Subclass known the truth, they would have acted differently.

94. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

95. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the DTPA.

96. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

97. As a direct and proximate result of Equifax's violation of the DTPA,

Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

98.    Also as a direct result of Equifax's knowing violation of the DTPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief,

including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal  security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

99.    Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

100.    Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GFBPA, costs, and such other further relief as the Court deems just and proper.

### Count VII
### Violation of the Michigan Consumer Protection Act
### (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

101.    Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

102.   This claim is brought by Plaintiffs on behalf of Michigan consumers who are members of the Class.

103.   The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

104.   Plaintiffs and Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

105.   Each Defendant is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

106.   Plaintiffs seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys'

fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

107.   Plaintiffs also seek punitive damages because each Defendant carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants' conduct constitutes malice, oppression, and fraud warranting punitive damages.

**Count VIII**
**Violations of the Texas Deceptive Trade Practices**
**and Consumer Protection Act**
**(TEX. BUS. & COM. CODE § 17.4 *ET SEQ.*)**

108.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

109.   This claim is brought by Plaintiffs on behalf of Texas consumers who are members of the Class.

110.   Plaintiffs and the Texas Class members are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). *See* TEX. BUS. & COM. CODE § 17.41.

111.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); or (ii) "an unconscionable action or course of action by

any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3). The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have. sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As detailed herein, Equifax has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

112.   In the course of business, Equifax willfully failed to disclose and actively concealed the conduct discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Equifax also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the Data Breach.

113.   Equifax's unfair or deceptive acts or practices were likely to and did

in fact deceive reasonable consumers, including Plaintiffs and the other Texas Class members.

114.   Equifax intentionally and knowingly misrepresented material facts regarding the Data Breach with intent to mislead Plaintiffs and the Texas Class.

115.   Equifax knew or should have known that their conduct violated the Texas DTPA.

116.   Equifax's omissions and/or misrepresentations about the emissions treatment system of the Data Breach were material to Plaintiffs and the Texas Class.

117.   Plaintiffs and the Texas Class suffered ascertainable loss caused by Equifax's misrepresentations and their concealment of and failure to disclose material information.

118.   Equifax had an ongoing duty to all Equifax customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Polluting Vehicles suffered ascertainable loss in the form of the dissemination of their PII due to Equifax's deceptive and unfair acts and practices made in the course of Equifax's business.

119.   Equifax's violations present a continuing risk to Plaintiffs as well as to the general public. Equifax's unlawful acts and practices complained of herein affect the public interest.

120.   As a direct and proximate result of Equifax's violations of the Texas DTPA, Plaintiffs and the Texas Class have suffered injury-in-fact and/or actual damage.

121.   Plaintiffs seek monetary relief against Equifax measured as actual damages in an amount to be determined at trial, treble damages for Equifax's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

122.   Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), Plaintiffs are also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

## Count IX
## Violation of the Ohio Consumer Sales Practices Act
### (OHIO REV. CODE ANN. § 1345.01, *et seq.*)

123.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

124.   This claim is brought by Plaintiffs on behalf of Ohio consumers who are members of the Class.

125.   The Ohio Consumer Sales Practices Act (Ohio SCPA), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in

connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that the products and services of Equifax have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the products and services of Equifax are of a particular standard, quality, and grade when they are not, (3) advertising the products and services of Equifax with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer. OHIO REV. CODE ANN. § 1345.02.

126.   Defendant is a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

127.   Plaintiffs and Ohio Class members are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their use of the products and services of Equifax are "consumer transactions" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

128.   As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09 *et seq.*

**Count X**
**Violation of Connecticut Unfair Trade Practices Act (CUTPA)**
**(C.G.S. § 42-110a, *et seq*.)**

129.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

130.   This claim is brought by Plaintiffs on behalf of Connecticut consumers who are members of the Class.

131.   The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

132.   At all times relevant hereto, Plaintiffs, Class members, and Defendant are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

133.   Defendant is engaged in trade or commerce within the meaning of CONN. GEN. STAT. § 42-110a(4).

134.   Plaintiffs and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

135.   Defendant acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights, and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights of others. Therefore, punitive damages are warranted.

## Count XI
## Violation of the New York General Business Law
### (N.Y. GEN BUS. LAW § 349)

136.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

137.   This claim is brought by Plaintiffs on behalf of New York consumers who are members of the Class.

138.   The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349.

139.   Plaintiffs and New York Class members are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

140.   Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

141.   Defendant's deceptive acts and practices, which were intended to mislead consumers, was conduct directed at consumers.

142.   Because Defendant's willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50.00, whichever is greater; discretionary treble damages up to $1,000.00; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive

conduct; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

## Count XII
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (73 PA. CONS. STAT. § 201-1 *et seq.*)

143.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

144.  This claim is brought by Plaintiffs on behalf of Pennsylvania consumers who are members of the Class.

145.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits, or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4).

146. Defendant, Plaintiffs, and Pennsylvania Class members are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

147.  Plaintiffs used the services of Equifax primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. § 201-

9.2.

148.   All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

149.   Defendants are liable to Plaintiffs for treble their actual damages or $100.00, whichever is greater, and attorneys' fees and costs. 73 PA. CONS. STAT. § 201-9.2(a). Plaintiffs are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

WHEREFORE, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a) For an Order certifying the Classes, as defined herein, and appointing Plaintiffs and their Counsel to represent the Nationwide Class, or in the alternative the separate Statewide Classes;

b) For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiffs and Class members;

c) For equitable relief compelling Equifax to use appropriate cyber security

methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

d) For an award of damages, as allowed by law in an amount to be determined;

e) For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f) For prejudgment interest on all amounts awarded; and

g) Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Submitted this the 12th day of September, 2017.

s/ Eric J. Artrip
Eric J. Artrip (ASB-9673-I68E)
D. Anthony Mastando (ASB-0893-X32B)
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama  35801
Phone:        (256) 532-2222
Fax:           (256) 513-7489
artrip@mastandoartrip.com
tony@mastandoartrip.com


DEFENDANT TO BE SERVED VIA CERTIFIED MAIL

Equifax, Inc.
Attn Prentice Hall Corporation System, Inc.

641 South Lawrence Street
Montgomery, AL 36104