# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
www.kslaw.com

**Michael R. Smith**
Direct Dial: 404/572-4824
Direct Fax:  404/572-5139
mrsmith@kslaw.com

December 27, 2017

<u>*VIA E-MAIL AND U.S. MAIL*</u>

| | |
|---|---|
| The Honorable Thomas W. Thrash | The Honorable William S. Duffey, Jr. |
| United States District Court for the | United States District Court for the |
| Northern District of Georgia | Northern District of Georgia |
| 2188 Richard B. Russell Federal Building | 2188 Richard B. Russell Federal Building |
| and United States Courthouse | and United States Courthouse |
| 75 Ted Turner Drive, SW | 75 Ted Turner Drive, SW |
| Atlanta, GA 30303-3309 | Atlanta, GA 30303-3309 |

Re:  *Kuhns v. Equifax Inc., et al.,* Case No. 1:17-cv-03463-TWT
     *Groover v. Equifax Inc., et al.,* Case No. 1:17-cv-04511-WSD
     *In re Equifax, Inc., Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, MDL No. 2800

Dear Chief Judge Thrash and Judge Duffey:

We write regarding the apparent inadvertent inclusion of the above-referenced *Kuhns* securities class action in the *In re Equifax, Inc., Customer Data Security Breach Litigation* consumer class action multidistrict litigation proceeding (the "Consumer MDL").  Specifically, the Court's December 8, 2017 "Case Management Order No. 1" in the Consumer MDL (the "Consumer MDL Case Management Order") was also entered in *Kuhns*, a separate and unrelated federal securities class action asserting factually and legally distinct claims from those asserted in the Consumer MDL, and seeking different relief on behalf of a different proposed class than the Consumer MDL.  *See* Consumer MDL Docket, Doc. 23; *Kuhns* Docket, Doc. 19.[1]  For the reasons set forth herein, the defendants in the *Kuhns* and *Groover* cases (hereinafter, collectively, the "Securities Actions") respectfully request that the Court vacate the Consumer MDL Case Management Order as to the *Kuhns* case only and clarify that the Securities Actions will be litigated separately from the unrelated Consumer MDL, pending further contrary order of the Court.

Based on a prior Order from Chief Judge Thrash stating that the *Kuhns* case was "**<u>inadvertently included</u>** in the list of cases to be stayed pending the decision of the Judicial Panel on Multidistrict Litigation," defendants believe the entry of the Consumer MDL Case Management Order on the *Kuhns* docket was likely inadvertent, and a continuation of the same

---

[1]  The Consumer MDL Case Management Order was not entered on the docket in the above-referenced *Groover* case, which asserts securities claims identical in substance to those asserted in the *Kuhns* case and is the subject of a pending unopposed motion for consolidation with the *Kuhns* case.  *See Kuhns* Docket, Doc. 15; *see generally Groover* Docket.

inadvertent inclusion of the *Kuhns* case in the Consumer MDL that occurred previously.  *Kuhns* Docket, Doc. 11 (emphasis added).  On October 11, 2017, this Court (through Chief Judge Thrash) entered an order staying over 60 Equifax consumer class actions pending the decision of the JPML.  *Kuhns* Docket, Doc. 8 (the "Stay Order").  The *Kuhns* case, although not a consumer class action, but rather a securities class action, was initially included in the Stay Order.  *Id.*  On October 19, 2017, defendants in *Kuhns* wrote the Court and filed a motion explaining that *Kuhns* was not a "related" case to the consumer class actions, and involved separate and distinct claims brought by a different proposed class of stockholders, not consumers.  *Kuhns* Docket, Docs. 9 & 10.  Defendants noted that the inclusion of *Kuhns* in the Stay Order appeared "unintentional and inadvertent."  *Kuhns* Docket, Docs. 9 & 10.  Defendants therefore requested that the Stay be lifted as to the *Kuhns* case, such that it could proceed under the separate statutory deadlines for appointment of a lead plaintiff and counsel required by the Private Securities Litigation Reform Act ("PSLRA").

In an October 23, 2017 Order, the Court granted the relief requested by defendants, and lifted the Stay Order as to the *Kuhns* case.  *Kuhns* Docket, Doc 11.  In its Order, the Court stated that the *Kuhns* case was "**inadvertently included** in the list of cases to be stayed pending the decision of the Judicial Panel on Multidistrict Litigation."  *Id.* at 1 (emphasis added).  Following the lifting of the Stay, filings in *Kuhns* resumed, namely the required motions for appointment of lead plaintiff, consistent with the November 14, 2017 deadline set forth by the PSLRA, as well as a motion for consolidation of *Kuhns* with the *Groover* securities class action.  *See, e.g.*, *Kuhns* Docket, Docs. 12-15.  Similar motions were also filed in the *Groover* case.  *See Groover* Docket, Docs. 12-14.

On December 6, 2017, the JPML issued its Transfer Order and listed the cases to be included within the Consumer MDL.  *See* Consumer MDL Docket, Doc. 1.  Notably, neither the *Kuhns* case nor the *Groover* case was listed.  *See id.*  However, on December 8, 2017, the Consumer MDL Case Management Order was entered on the *Kuhns* docket, requiring, among other things, that the parties in *Kuhns* submit a Preliminary Report on the Consumer MDL by January 5, 2018, and attend the Case Management Conference on January 9, 2018.  The Case Management Order was not entered on the *Groover* docket, however.  On December 11, 2017, *Kuhns* was reassigned to Chief Judge Thrash.  The related *Groover* case was not reassigned, and remains with Judge Duffey.

It appears that the same coding error that resulted in the inadvertent inclusion of the *Kuhns* case in the earlier Stay Order applicable to the consumer class actions has again caused the *Kuhns* case to be inadvertently included in the Case Management Order for the Consumer MDL.  Defendants request that the Court vacate the Consumer MDL Case Management Order as to the *Kuhns* case and clarify that the Securities Actions will be litigated separately from the unrelated Consumer MDL.

The Securities Actions defendants respectfully submit that it would prove inefficient and unworkable to attempt to coordinate further proceedings in the Securities Actions with the unrelated Consumer MDL in the manner suggested by the Consumer MDL Case Management Order.  As noted, the Securities Actions involve different parties, proposed class definitions, claims, legal theories, and factual underpinnings than the Consumer MDL.  The cases in the Consumer MDL primarily assert violations of consumer protection statutes and negligence-related claims.  These cases are brought on behalf of consumers who allege identity theft-related

harm resulting from a data security breach at Equifax. The Securities Actions, in contrast, assert claims under the Securities Exchange Act of 1934 based on alleged false and misleading disclosures to a proposed class of investors who purchased Equifax stock and claim harm resulting from a subsequent decline in Equifax's stock price. Coordinating these separate, unrelated, and factually and legally distinct actions thus would not create efficiencies or advance the interests of the multidistrict litigation process in promoting the "convenience of parties and witnesses" and "the just and efficient conduct" of the actions. *See* 28 U.S.C. § 1407(a). Indeed, as explained below, any attempt to coordinate the Securities Actions with the Consumer MDL would run counter to and would frustrate such aims, as well as the procedures contemplated by the Consumer MDL Case Management Order itself, in part because the Securities Actions, unlike the Consumer MDL, are subject to a host of unique procedural and other requirements imposed by the PSLRA.

As just one example, the PSLRA mandates a specific statutory process for the appointment of a lead plaintiff and approval of lead counsel that is already well underway in the Securities Actions and is both different from and incompatible with the framework for "Applications for Lead and Liaison Counsel Appointments" set forth in paragraph 6 of the Consumer MDL Case Management Order. *See* 15 U.S.C. § 78u-4(a)(3) (specifying procedures for notice to putative class members, motions seeking appointment as lead plaintiff and approval of lead counsel, and court appointment of a lead plaintiff and approval of lead counsel). In accordance with those statutorily mandated procedures, motions seeking appointment of a lead plaintiff have been filed in the Securities Actions and are now ripe for decision. *See Kuhns* Docket, Docs. 12-14, 18 & 21.[2] In the Securities Actions, the Court must follow the procedures for appointment of a lead plaintiff that are set forth in the PSLRA, not the different procedures contemplated by paragraph 6 of the Consumer MDL Case Management Order. *See* 15 U.S.C. § 78u-4(a)(3)(B). For this reason alone, coordination of the Securities Actions with the Consumer MDL in the manner suggested by the Consumer MDL Case Management Order is unworkable.

In addition, under the PSLRA no discovery can proceed in the Securities Actions unless and until the operative complaint(s) first survive a motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(3); *see also Behlen v. Merrill Lynch*, 311 F.3d 1087, 1091 (11th Cir. 2002) (observing that the PSLRA requires "a mandatory stay of discovery until the district court [can] determine the legal sufficiency of the class action claims"). At this time, it is uncertain *when* the Court will be in position to "determine the legal sufficiency" of the claims in the Securities Actions. Whomever is appointed as lead plaintiff in the Securities Actions will likely file an amended complaint.[3] It is presently unclear when the lead plaintiff will be appointed, when that lead

---

[2] In fact, under the applicable provisions of the PSLRA, a lead plaintiff was statutorily required to have been appointed in the Securities Actions by December 13, 2017. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (providing that the presiding court "shall appoint" a lead plaintiff within "90 days after the date on which [the required class] notice is published"); *Kuhns* Docket, Doc. 14-6 (showing that the required notice was published on September 11, 2017).

[3] Given the likelihood that the appointed lead plaintiff will file an amended complaint, which will likely include new and different allegations from those set forth in the current *Kuhns* and *Groover* complaints, it also remains to be seen at this time exactly what the "critical factual and legal issues" in the Securities Action will be. *See* Consumer MDL Case Management Order,

December 27, 2017
Page 4

plaintiff will file any amended complaint, when briefing of defendants' motion to dismiss the amended complaint will be completed, and when the Court will rule on defendants' motion. In light of this, attempting to coordinate a discovery schedule for the Securities Actions with discovery in the Consumer MDL, which is not subject to the PSLRA discovery stay, would be infeasible. Moreover, as it is presently unclear not only when, but also whether, any discovery will proceed in the Securities Action (it will not if the claims are dismissed), it is premature and unworkable at this stage for the parties to the Securities Action to propose a discovery schedule, as requested by paragraph 3(b) of the Consumer MDL Case Management Order.

In light of all of the foregoing, and to enable the Securities Actions to proceed efficiently and in compliance with the PSLRA-mandated procedures and other requirements uniquely applicable to the Securities Actions and not to the Consumer MDL, the Securities Actions defendants respectfully request that the Court vacate the Consumer MDL Case Management Order as to the *Kuhns* case only and clarify that the Securities Actions are not included within the Consumer MDL and will be litigated separately and independently from the Consumer MDL pending further contrary order of the Court.

A proposed order is enclosed herewith.

Sincerely,

/s/ *Michael R. Smith*
Michael R. Smith
*Counsel for Defendants in the Securities Actions*

Enclosure

cc:   David A. Bain (e-mail only)
      H. Lamar Mixson (e-mail only)
      Avi Josefson (e-mail only)

---

¶ 3(b). As such, the Securities Action defendants respectfully submit that any "preliminary report" attempting to describe such matters would be premature at this time. *Id.*