# King & Spalding

King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
www.kslaw.com

**Michael R. Smith**
Direct Dial: 404/572-4824
Direct Fax:  404/572-5139
mrsmith@kslaw.com

January 4, 2018

## VIA ECF FILING AND ELECTRONIC MAIL

| | |
|---|---|
| The Honorable Thomas W. Thrash | The Honorable William S. Duffey, Jr. |
| United States District Court for the | United States District Court for the |
| Northern District of Georgia | Northern District of Georgia |
| 2188 Richard B. Russell Federal Building | 2188 Richard B. Russell Federal Building |
| and United States Courthouse | and United States Courthouse |
| 75 Ted Turner Drive, SW | 75 Ted Turner Drive, SW |
| Atlanta, GA 30303-3309 | Atlanta, GA 30303-3309 |

Re:  *Kuhns v. Equifax Inc., et al.,* Case No. 1:17-cv-03463-TWT
*Groover v. Equifax Inc., et al.,* Case No. 1:17-cv-04511-WSD
*In re Equifax, Inc., Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, MDL No. 2800

Dear Chief Judge Thrash and Judge Duffey:

We write in reply to the December 28, 2017 letter (*Kuhns* Docket, Doc. 26) filed by Union Asset Management Holding AG ("Union"), an "institutional asset manager" seeking Lead Plaintiff status in the above-styled *Kuhns* and *Groover* cases (the "Securities Actions"), and in further support of our December 27, 2017 letter (*Kuhns* Docket, Doc. 25) regarding the apparent inadvertent entry of a Case Management Order addressing the *In re Equifax, Inc., Customer Data Security Breach Litigation* ("Consumer MDL") on the *Kuhns* docket.  Our December 27, 2017 letter requests that the Court (i) vacate the Consumer MDL Case Management Order as to the *Kuhns* case and (ii) confirm, consistent with the Court's October 23, 2017 Order (*Kuhns* Docket, Doc. 11) and the Judicial Panel on Multidistrict Litigation's (the "Panel") December 6, 2017 order (Consumer MDL Docket, Doc, 1), that the Securities Actions are *not* included within the Consumer MDL.

Union opposes these requests based upon the erroneous suggestion that some "decision" has been made to "centralize" the Securities Actions with the Consumer MDL.  The record is to the contrary.  Indeed, this Court previously clarified that the *Kuhns* case was "inadvertently included" in an earlier order staying numerous *consumer* class actions against Equifax, Inc. ("Equifax") pending a decision by the Panel on motions to consolidate the consumer actions into a single Consumer MDL proceeding.  *See Kuhns* Docket, Doc. 11.  We believe that the inadvertent inclusion of the *Kuhns* securities case in the list of consumer cases to be stayed pending the Panel's decision resulted from an administrative coding error, in which the *Kuhns* case was erroneously identified as a "190 Contract" suit rather than a "850

January 4, 2018
Page 2

Securities/Commodities/Exchange" suit.  *Compare Kuhns* Docket (erroneously categorizing *Kuhns* as "190 Contract" in the "Nature of Suit" field) *with Groover* Docket (correctly classifying *Groover* as a "850 Securities/Commodities/Exchange" case); *see also Kuhns* Docket, Doc. 1-3 (*Kuhns* civil cover sheet correctly identifying *Kuhns* as a 850 Securities/Commodities/Exchange case).  The incorrect coding of *Kuhns* as a 190 Contract matter may explain why *Kuhns* was included on the list of consumer actions (also coded as 190 Contract matters) addressed in this Court's earlier stay order.  After the Securities Action Defendants noted that the *Kuhns* case had been apparently inadvertently included in the stay order relating to the Consumer MDL, and requested that the stay be lifted as to *Kuhns* to allow it to proceed independently of the unrelated consumer cases, the Court agreed in an October 23, 2017 Order, and acknowledged the "inadvertent" inclusion of *Kuhns* in the consumer stay.  *See Kuhns* Docket, Docs. 9-11.

Similarly, the Panel's December 6, 2017 Order *declined* to include any of the Securities Actions in its list of cases to be "coordinated or consolidated" before Chief Judge Thrash, even though the Securities Actions previously had been identified (by plaintiffs in the Consumer MDL) as *potential* tag-along cases.  Consumer MDL, Doc. 1; *see also* MDL No. 2800 Docket, Doc. 374.  Union's attempt to explain this away as "a function of Panel Rules" providing that "tag-long actions filed in the transferee district do not require Panel action" is without merit.  *Kuhns* Docket, Doc. 26.  To the contrary, the Panel's order specifically identified a number of *consumer* cases filed within this District that the Panel ordered be combined into the Consumer MDL.  *See* Consumer MDL, Doc. 1, Schedule A at A2.  As the December 6 Order makes clear, the Securities Actions were *excluded* from that list because the Panel's intent was to facilitate the coordination of "*consumer* class actions" asserting similar claims and seeking similar relief on behalf of a class of consumers alleging injury resulting from the unauthorized access of their "personally identifiable information" in a 2017 cyber theft event.  *Id.* at 2 (stating that "all of [the actions to be coordinated in the Consumer MDL] are putative nationwide and/or statewide *consumer* class actions") (emphasis added).

Both this Court's October 23, 2017 Order and the Panel's December 6, 2017 Order thus confirm the intent to maintain separation between the Securities Actions and the factually and legally distinct Consumer MDL, and not to "centralize" the former with the latter, contrary to what Union asserts.  Moreover, the entry of the Consumer MDL Case Management Order on the docket of *Kuhns* (but not on the docket of the substantively identical *Groover* case) is consistent with the same apparent "Nature of Suit" coding error explained above, which appears to have originally caused the *Kuhns* case to be initially "inadvertently included" in the earlier consumer stay.

Irrespective of the apparent coding discrepancy, the Securities Actions, as a fundamental matter, should be kept separate from the Consumer MDL.  Lumping these disparate cases together would yield none of the efficiencies that prompted the Panel to centralize the various *consumer* actions into a coordinated proceeding before Chief Judge Thrash and would instead prove inefficient and counterproductive.  The core alleged conduct underlying the Securities Actions is entirely different from that at issue in the Consumer MDL.  While both sets of cases may be said to share some common genesis in the 2017 data security incident involving criminal unauthorized access at Equifax, the Securities Actions necessarily will focus on Equifax's public statements to the investors, whether any of those statements were false or misleading, whether

the speakers knew as much (or acted with severe recklessness), and whether the statements harmed purchasers of Equifax stock by impacting the prices at which they purchased shares. The Consumer MDL, in contrast, will focus on the data security incident itself, whether Equifax could or should have done something more or different to try to prevent or better respond to the incident, and the harm, if any, resulting to consumers whose personally identifiable information may have been compromised as a result of the data security incident. Given the vast differences in the Securities Actions and the Consumer MDL, attempting to combine or coordinate discovery would produce few, if any, efficiencies and instead would likely impede the various different parties' abilities to timely and efficiently conduct discovery on the matters of greatest importance to their respective claims and defenses. The factual and legal questions to be resolved in significant pretrial motions (including, without limitation, motions to dismiss for failure to state a claim and motions for class certification) will also differ substantially in the Securities Actions and the Consumer MDL, further undermining any potential efficiencies of combining the matters.

In these regards, the Panel's 2010 ruling in *In re BP P.L.C. Securities Litigation* refusing to include that securities action within a larger MDL proceeding is instructive. 734 F. Supp. 2d 1377 (J.P.M.L. 2010). There, certain parties to the putative class action lawsuits alleging false and misleading statements in violation of Section 10(b) of the Securities Exchange Act of 1934 requested that the securities suits be combined with an MDL proceeding involving claims of wrongful death, personal injury, and property and other economic damage resulting from the 2010 Deepwater Horizon oil spill. *Id.* The Panel observed that, while the securities actions may have shared "an underlying genesis" with the MDL proceeding—the oil spill—"the true factual focuses of these two dockets are vastly different" in ways much akin to the differences separating the Securities Actions here from the Consumer MDL, as described above. *Id.* at 1378. The Panel noted that, not only would there be few, if any, benefits to coordinating discovery, but in addition the larger MDL action was likely to require "the transferee judge's undivided attention." *Id.* The Panel concluded that "[t]o combine these essentially different factual pursuits in a single MDL would likely create an unwieldy and ultimately counterproductive litigation vehicle." *Id.* Accordingly, the Panel refused to combine the BP securities cases with the larger MDL. *Id.* Defendants respectfully submit that similar considerations, as described above, warrant continued separation of the Securities Actions from the Consumer MDL here, consistent with this Court's October 23, 2017 Order and the Panel's December 6, 2017 Order.

The cases cited in Union's letter do not support Union's request to "centralize" the Securities Actions with the Consumer MDL. Unlike here, in many of Union's cases, no party opposed centralization. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1370 (J.P.M.L. 2015) ("[n]o party oppose[d] centralization"); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practice & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382, 1382 (J.P.M.L. 2015) (same); *see also In re Bank of New York Mellon Corp. Foreign Exch. Trans. Litig.*, 857 F. Supp. 2d 1371, 1372 & n.3 (J.P.M.L. 2012) (plaintiff in "the only action involving alleged violations of the federal securities laws" agreed with opposing parties' choice of forum and took "no position" on centralization of actions based on different causes of action); *In re CenturyLink Residential Customer Billing Disputes Litig.*, 2017 WL 4414232, Dkt. 77, 87, 95 (J.P.M.L. Oct. 5, 2017) (Defendants initially consented to centralization of securities actions with consumer actions, but subsequently objected after Panel selected a forum that would require transfer of the securities actions; Panel has yet to rule

on the subsequent objections).[1]  In Union's remaining cases, unlike here, and in the BP example where centralization was denied, there was significant factual overlap among the cases sought to be centralized.  *See In re Lehman Bros Hldgs., Inc., Sec. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (centralizing securities actions and ERISA actions where "[a]ll actions share[d] factual questions relating to whether defendants allegedly made materially false and/or misleading statements which had a negative impact on Lehman Brothers securities"); *In re Standard & Poor's Rating Agency Litig.*, 949 F. Supp. 2d 1360, 1361 (J.P.M.L. 2013*)* (centralizing "seventeen state law consumer fraud and securities actions," all of which fundamentally alleged that "by misrepresenting factors it considered when analyzing structured finance securities, S & P misleadingly offered a product materially different from what it purported to provide the marketplace"); *In re MF Global Holdings Ltd. Inv. Litig.*, 857 F. Supp. 2d 1378, 1379-80 (J.P.M.L. 2012) (centralizing actions brought by investors and holders of commodities futures customer accounts where all of the centralized actions were "expected to focus on a significant number of common events, defendants, and witnesses").

For the above reasons and those set forth in the Securities Actions Defendants' December 27 letter (*Kuhns* Docket, Doc. 25), the Securities Actions Defendants respectfully request that the Court vacate the Consumer MDL Case Management Order as to the *Kuhns* case and clarify that the Securities Actions are not included within the Consumer MDL and will be litigated separately and independently from the Consumer MDL pending further contrary order of the Court.  For the Court's convenience, we have enclosed our proposed order herewith.

                                  Sincerely,

                                  */s/ Michael R. Smith*
                                Michael R. Smith
                                *Counsel for Defendants in the Securities Actions*

cc:    David A. Bain
       H. Lamar Mixson
       James A. Harrod (e-mail only)
       Avi Josefson (e-mail only)

---

[1] In *Lumber Liquidators*, the securities action previously pending in the transferee district was allowed to continue on a separate docket before a separate judge.  *See In re Lumber Liquidator*s, 109 F. Supp. 3d at 1382 (J.P.M.L. 2015); *In re Lumber Liquidators Hldgs., Inc. Sec. Litig.*, Case No. 4:13-cv-157 (E.D. Va.).