```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF GEORGIA
 2                             ATLANTA DIVISION


 3
       IN RE: EQUIFAX, INC. CUSTOMER     )
 4     DATA SECURITY BREACH LITIGATION   )
                                         ) Case No. 1:17-MD-2800-TWT
 5                                       )
                                         ) January 9, 2018
 6                                       ) 10:06 a.m.
       _____ ) Atlanta, Georgia
 7


 8
                   TRANSCRIPT OF THE STATUS CONFERENCE PROCEEDINGS
 9              BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
                        U.S. DISTRICT COURT JUDGE
10


11     APPEARANCES OF COUNSEL:

12     On behalf of the Plaintiffs:   Pitts Carr
                                      James Harrod
13                                    Mike McGlamry
                                      Daniel Mirarchi
14                                    Steve Susman
                                      David Worley
15                                    Robert Magnanini (By phone)

16     On behalf of the Defendants:   David Balser
                                      John Gamble
17                                    Stewart Haskins
                                      Michael Smith
18                                    Richard Smith
                                      Phyllis Sumner
19


20
                   Proceedings recorded by mechanical stenography
21              and computer-aided transcript produced by

22                   SUSAN C. BAKER, RMR, CRR
                        2194 U.S. COURTHOUSE
23                   75 TED TURNER DRIVE, S.W.
                        ATLANTA, GA  30303
24                        (404) 215-1558
                     susan_baker@gand.uscourts.gov

25
```

1          (Proceedings held January 9, 2018, Atlanta, Georgia,

2     10:06 a.m., in open court.)

3          THE COURT:  All right.  This is the case of In Re:

4     Equifax, Inc. Customer Data Security Breach Litigation, Case

5     Number 17-MD-2800.

6          Needless to say, I'm not going to ask everybody

7     representing the Plaintiffs to identify yourself for the

8     record.  If you think that there's a very high likelihood of

9     speaking today during the conference, let me ask you to

10     identify yourself by name and the parties you represent.  If

11     anybody else later decides you need to speak, that's fine.

12     It's not going to stop you from speaking.  I just don't want to

13     take up 30 minutes having people tell me who they are and I'm

14     not going to remember it anyway in all likelihood.

15          So if you think you are going to speak on behalf of

16     the Plaintiffs, state your name and who you represent.

17          MR. WORLEY:  David Worley for the Plaintiffs, Your

18     Honor --

19          THE COURT:  Good morning, Mr. Worley.

20          MR. WORLEY:  -- of Evangelista Worley.  Good morning,

21     Your Honor.

22          THE COURT:  Thank you for setting up the telephone

23     conference.

24          MR. MIRARCHI:  Dan Mirarchi, Your Honor, from Spector

25     Roseman & Kodroff on behalf of Plaintiff Anthony Mirarchi.

1                THE COURT:  Good morning, Mr. Mirarchi.

2                MR. CARR:  Pitts Carr, Carr & Weatherby, Your Honor,

3    for the Plaintiffs.

4                THE COURT:  Good morning, Mr. Carr.

5                MR. SUSMAN:  Steve Susman of Susman Godfrey for the

6    Plaintiff class.

7                THE COURT:  Good morning, Mr. Susman.

8                MR. SUSMAN:  Thank you, Your Honor.

9                MR. McGLAMRY:  Your Honor, Mike McGlamry of Pope

10   McGlamry.  I am here on behalf of seven credit unions.

11               THE COURT:  Good morning, Mr. McGlamry.

12               MR. McGLAMRY:  Thank you.

13               THE COURT:  All right.  I think that takes care of

14   the Plaintiffs.

15               And the Defendants and parties you represent,

16   Mr. Balser.

17               MR. BALSER:  David Balser, King & Spalding, represent

18   the Equifax Defendants.  And with me is Ms. Sumner, Phyllis

19   Sumner, and Stewart Haskins also of King & Spalding.

20               THE COURT:  Good morning, counsel.

21               MR. SMITH:  Your Honor, Michael Smith also from King

22   & Spalding representing the company and two individuals in the

23   securities cases.

24               THE COURT:  Good morning, Mr. Smith, and welcome.

25               MR. HARROD:  Your Honor, James Harrod from Bernstein

1   Litowitz Berger & Grossman for the Plaintiffs in these actions.

2                Thank you.

3                THE COURT:  I'm sorry.  Give me your name again, sir.

4                MR. HARROD:  James Harrod.  It's in the Kuhns case,

5   Your Honor.

6                THE CLERK:  He is in the other securities case,

7   Judge.

8                THE COURT:  Okay.

9                MR. HARROD:  Thank you.

10               THE COURT:  All right.  There are others who are

11  monitoring the conference by telephone.  Let me instruct you if

12  you are on the phone there's not to be any recording of this

13  conference.  And if any of you on the phone speak, please state

14  your name before you start talking and restate your name every

15  time that you speak so that my court reporter can get an

16  accurate record of this proceeding.

17               A couple of housekeeping things first.  The clerk's

18  office has asked me to remind all of you that intend to

19  participate in this case you need to register with CM/ECF, get

20  a password, and that's the only way that you are going to be

21  sure to get notified of things.  We are not going to be serving

22  orders or notices by mail.  Everything is going to be put on

23  the electronic docket, and that's the only way you are going to

24  get notice of anything.  So if you don't get -- don't register

25  with CM/ECF and you don't get a password and you don't get

1    notice, it's going to be your fault, not ours.

2            Second thing is I'm happy to let you bring your cell

3    phones and your laptops into court when we have these status

4    conferences, but you need to present an order to me at least

5    two days before the event.

6            THE CLERK:  Business days, Judge.

7            THE COURT:  She says business days.  If you show up

8    with an order, you know, at 9:00 the morning before we have a

9    status conference or a hearing, it's going to be too late.  You

10   are not going to be able to get in with your phone and your

11   laptop.  So try to do that in advance.

12           I have received a number of ex parte preliminary

13   reports from the Plaintiffs.  Those have been very helpful to

14   me in terms of educating me about the nature of the case.  I

15   received one ex parte confidential report from the Defendants,

16   again, very helpful to me in educating me about the case.  I

17   don't think I need to invite you to make any kind of

18   preliminary statement about the case this morning as a result

19   of that; but if you want to, I will give you an opportunity to

20   do so.

21           Those confidential ex parte reports have not been

22   filed unless y'all filed them.  We haven't.  And they are not

23   going to be filed.  They are confidential.  And I won't

24   intentionally disclose anything that you said in there.

25           Having said that, Mr. Worley, Mr. Balser, do y'all

1   want to make any kind of statement about the case in general?

2             I will be glad to hear from you if you do.

3             MR. WORLEY:  Not about the case in general, sir.

4   Just we will proceed with the procedure.

5             THE COURT:  Mr. Balser?

6             MR. BALSER:  No, Your Honor.

7             THE COURT:  All right.  Very good.

8             All right.  I have got your proposed agenda, and my

9   intention today is simply to just go through the items on your

10  agenda.  And if anything occurs to me along the way, I'll bring

11  it up.

12            So the first item on the agenda is the status of

13  filings and related actions.

14            Mr. Worley?

15            MR. WORLEY:  Thank you, Your Honor.  Good morning

16  again.

17            THE COURT:  We've got some chairs in the jury room if

18  we -- are y'all comfortable back there?  Do you want me to try

19  to get some chairs for you?

20            THE CLERK:  They seem to be okay.

21            THE COURT:  I guess you're comfortable.

22            All right.  Go ahead, Mr. Worley.

23            MR. WORLEY:  Your Honor, I'm going to proceed through

24  the agenda.  First of all, the status of filings and related

25  actions, there appear to be 355 actions have been filed in this

1    matter, 19 by financial -- or involved in financial institution

2    claims by financial institutions, two small business Plaintiff

3    cases and 334 consumer cases.

4              I then -- I wanted to inform the Court of the process

5    that we've followed in accordance with your Case Management

6    Order Number 1.  The Plaintiffs had a general counsel-wide call

7    on December 19th in order to come up with a process for

8    responding to the items that you requested in your first Case

9    Management Order.  And yesterday -- or Friday we presented the

10   preliminary report that was the result of those efforts from

11   most people along with a list of pending motions.

12             Yesterday we filed a list of counsel that the Court

13   had requested and a list of affiliated companies.  In your CMO

14   Number 1, you directed us to confer with defense counsel on a

15   proposed discovery plan and a schedule for this action.  And so

16   on December 19th on our Plaintiff-wide call I invited every

17   firm that had an intention of applying for leadership in this

18   action to designate a representative to be in a position to

19   confer with defense counsel about a second Case Management

20   Order.

21             It became clear that given the number of firms that

22   were interested in participating that it was impractical to

23   hold an in-person meeting with Equifax's counsel, so the

24   Plaintiffs' firms who were interested in leadership conferred.

25   We drafted a Case Management Order Number 2.  We circulated

1    that among those firms.  We had a number of telephone

2    conferences and e-mails, and we came up with the Plaintiffs'

3    version of a proposed Case Management Order Number 2 which

4    we've submitted to King & Spalding.  We had a number of

5    conversations with them and e-mails again, and we have come up

6    with what we think is an appropriate Case Management Order

7    Number 2 which we presented to the Court yesterday.

8            THE COURT:  So that proposed order has been agreed

9    upon by all of the Plaintiffs' lawyers that are seeking a

10   leadership position and King & Spalding?

11           MR. WORLEY:  That's -- yes, Your Honor, to my

12   understanding.  There may be some firms that later decide to

13   seek a leadership position, but the ones that indicated since

14   December 19th that they were interested participated in that

15   process and are signatories to that Case Management Order.

16   There are 64 Plaintiffs' firms on that order that we presented

17   to the Court yesterday.

18           And with the Court's permission, since the Case

19   Management Order -- or since the agenda tracks the Case

20   Management Order, I'd just like to go through and highlight

21   some of the things in the Case Management Order for the Court.

22           THE COURT:  That's fine.

23           MR. WORLEY:  Okay.  First of all, it provides for

24   separate tracks for consumer and financial institution actions.

25   There was not a consensus among the Plaintiffs' counsel, the

1   consumer Plaintiffs' counsel, as to whether there should be a

2   separate track for the two cases that were filed as small

3   business cases, small business Plaintiffs.  The counsel for

4   those Plaintiffs has agreed to work with the appointed lead

5   counsel for the consumer track and include those small business

6   claims in any consolidated amended complaint, but the order

7   that we submitted allows them if their claims are not included

8   in the consolidated amended complaint to seek leave to

9   establish a separate track.  We have provided the Court a list

10  -- lists as exhibits to the proposed Case Management Order of

11  the three groups -- small business, consumer and financial

12  institutions.

13          The order provides a schedule for filing a master

14  consolidated complaint in each track that would -- we suggest

15  to the Court that that should occur 60 days after lead counsel

16  is appointed and in the case of the financial institutions 75

17  days after lead counsel is appointed so that there will be

18  separate timing of those tracks.

19          Rule 12(b) motions would be filed 45 days after the

20  master consolidated complaint was filed.  Oppositions to that

21  by Plaintiffs would be filed 45 days later.  And then, finally,

22  Defendants' replies would be due 30 days after that.  So in

23  total, in each track it would be 180 days from the filing of

24  the master consolidated complaint.  The order provides for a

25  consolidated caption and filing on a consolidated basis, and

1   the Court would administratively close individual cases after
2   the master complaints are filed.

3          The order also provides a process for the appointment
4   of leadership that leadership applications would be due to the
5   Court on February 2nd.  As far as our further discovery plan
6   and scheduling order, it provides that within 30 days of
7   appointment of leadership all the parties will meet and confer
8   and present to the Court a proposed discovery plan under 26(f)
9   and a suggested schedule under 16(b) for joinder of parties,
10  consideration of class action allegations, motions and trial.

11         The order that we are submitting calls for status
12  conferences approximately every six weeks and that we provide
13  agendas two days in advance to the status conference.

14         The order also deals with further case management
15  orders.  It provides that 30 days after the appointment of
16  leadership the parties will meet and confer for the purpose of
17  agreeing upon further case management orders, including
18  exchanging initial disclosures, amending the pleadings and
19  other matters, a discovery protocol to govern discovery, an
20  order on preservation of documents, an order on the handling of
21  confidential documents and an ESI protocol.

22         The order also directs the parties to take reasonable
23  steps to preserve documents in their possession -- this is
24  paragraph 12 of the order -- and to meet and confer within 14
25  days after the appointment of leadership to identify potential

1    third parties who may possess information.

2           There is a paragraph governing communications with

3    putative class members.  In accordance with the Court's local

4    rule 23.1, the parties have begun conferring about whether

5    there is a requirement for the entry of an order communicating

6    -- governing communications with putative class members.  The

7    parties are agreeing to meet and confer on this issue, and we

8    will provide the Court an update at the next status conference.

9    Finally, the order provides in paragraph 15 for the creation of

10   a website for the posting of Court orders in accordance in the

11   case as is done in other cases in this district.

12          Those are the highlights and the major parts of the

13   Case Management Order.  Again, this is something that's been

14   agreed to by the 64 Plaintiffs' firms and King & Spalding.

15          And then the other items that we have not put in the

16   order that I think people would be interested in knowing the

17   Court's position on is the preferred page limitations that the

18   Court would like on leadership applications, whether the Court

19   would like any kind of replies to the leadership applications

20   and the Court's intention about having a hearing or not on the

21   leadership applications.

22          With that, unless the Court has any questions, that's

23   all I have on the Case Management Order.

24          THE COURT:  Well, let me say that in general the

25   proposed Case Management Order looks good to me.

1          Anybody else on the Plaintiffs' side want to speak on
2    -- but I have some things to say about it as well.  Anybody
3    else want to speak on the Plaintiffs' side about the Case
4    Management Order?
5          MR. MIRARCHI:  I would like to, Your Honor.
6          THE COURT:  All right.
7          MR. MAGNANINI:  Your Honor, my name is Bob Magnanini
8    from the law firm of Stone & Magnanini.  We were only
9    transferred into the case on Friday afternoon, so we have not
10   had a chance to review CMO Number 2 or participate in the
11   discussions.  But we will check it out and get back to the
12   Court after we have had a chance to review everything if that
13   suits Your Honor.
14         THE COURT:  Fine.  If you will tell me your name
15   again and the firm you are with.
16         MR. MAGNANINI:  Yes, Your Honor.  Robert Magnanini.
17   It's M-a-g-n-a-n-i-n-i.  It took me a while to learn.  And the
18   firm is Stone & Magnanini in New Jersey.
19         THE COURT:  I'm still not sure we got that; so you
20   call Ms. Sewell after this hearing is over and be sure we get
21   your correct identification, sir.
22         All right.  At the podium, please.
23         MR. MIRARCHI:  Good morning.  My name is Dan
24   Mirarchi, M-i-r-a-r-c-h-i.  I am with the firm of Spector
25   Roseman & Kodroff.  I am here to tell you that we represent a

1    Plaintiff who has a direct contract with Equifax.  We haven't

2    had an opportunity to review CMO Number 2 yet.  We were not

3    part of that process.  And I'm sure it was an oversight with

4    the number of claims and Plaintiffs here, Your Honor.

5           But our claims are different from the typical

6    consumer case that we have before you; and I am here to speak

7    -- am authorized actually to speak on behalf of three other

8    firms that have similar claims, one of which is Stone &

9    Magnanini who is on the phone.  His name is Robert Magnanini.

10   And I just -- I'm sure the question Your Honor is going to have

11   for me is why are your cases different from the other consumer

12   cases.  We are going to have claims that arise from a direct

13   agreement with Equifax that most of the consumers don't in this

14   case.  The damages will be different, and the claims will be

15   different.  So, and that is going to affect pretty much every

16   aspect of the litigation from drafting pleadings to discovery

17   to the defense of motions to dismiss and, if it gets that far,

18   settlement negotiations and settlement itself, Your Honor.

19          We don't have -- so when we would be drafting the

20   complaint, we would be dealing with the agreement with Equifax

21   and our clients and Plaintiffs.  The other consumers don't have

22   to deal with that.  It's going to be the material terms of

23   those contracts, what was promised to our Plaintiffs.  And also

24   it's going to -- and then when motions to dismiss arise, we are

25   going to have -- Defendants will have raised defenses that

1    won't necessarily affect us for the other consumers.

2            For instance, they will probably raise *Spokeo* dealing

3    with concrete damages.  Those are issues that may not affect us

4    and also other infirmities that the consumer class might have

5    that we don't.  Obviously, they will raise different issues for

6    us as well, Your Honor.

7            And then when we get to discovery if we get that far,

8    there will be differences in what type of discovery as well;

9    and you are going to have a class of 140 million Plaintiffs or

10   so versus a much smaller class.  And when you get into

11   discovery like that, deals will have to be cut.  Rule 26

12   proportionality is going to come into play.  And we just don't

13   want our claimants, our Plaintiffs to be prejudiced by what

14   kind of discovery will be taken.

15           For instance, in breach of contract claims, we can go

16   back as far as six years.  Also, a lot of our Plaintiffs and

17   claimants are still paying for products and services for credit

18   monitoring and identity theft protection post-breach which we

19   will also have to take discovery on as well, Your Honor.

20           So the claims and the discovery and everything will

21   be different, and we think that there should be a separate

22   track for Plaintiffs who have contract -- direct contract

23   claims with Equifax, Your Honor.

24           THE COURT:  All right.  Well, thank you,

25   Mr. Mirarchi.

1          MR. MIRARCHI:  Thank you, Your Honor.

2          THE COURT:  Anybody else on the Plaintiffs' side want

3     to be heard about the proposed Case Management Order Number 2?

4          Mr. Balser?

5          MR. BALSER:  I'd like to respond, Your Honor, to what

6     Mr. Mirarchi just addressed if I may.

7          MR. WORLEY:  And I would too, Your Honor, when

8     Mr. Balser is done.

9          THE COURT:  Well, why don't you go first, Mr. Worley,

10    and then I will hear from Mr. Balser.

11         MR. WORLEY:  Very briefly, Your Honor.

12         Many of the issues that Mr. Mirarchi raised were

13    considered by the Plaintiffs in considering whether to have a

14    small business track, and we came to the conclusion -- and I

15    think it's the consensus of the group -- that those issues are

16    best left to the determination of the lead counsel.  They can

17    be included in the consolidated complaint, and we can establish

18    a class for those people with class -- you know,

19    representatives of those people.  No one is going to want to

20    harm the claims of anyone.  And the general consensus was that

21    it was more appropriate to deal with those issues after

22    leadership was appointed.

23         THE COURT:  Mr. Balser ?

24         MR. BALSER:  Thank you, Your Honor.  David Balser of

25    King & Spalding on behalf of Equifax.

1          Mr. Mirarchi filed a complaint in this court.  His

2    named Plaintiff is Mr. Anthony Mirarchi.  He filed the

3    complaint on November 15th, 2017.  These claims that he asserts

4    in this complaint dovetail and overlap significantly with the

5    consumer claims asserted in the various complaints filed by

6    other consumer Plaintiffs, and we would strenuously urge the

7    Court to not create a separate track for this one case.

8          Interestingly, although they did tack on a breach of

9    contract case to their complaint, the first count of the

10   complaint is for breach of fiduciary duty.  The second count is

11   for negligence.  The third count is for negligence per se.

12   They also raise claims for willful violation of the FCRA and

13   negligent violation of the FCRA as well as Fair Business

14   Practice Act claims, all of which are claims that are asserted

15   in the myriad consumer cases that have been filed.

16         So these claims all arise out of the same set of

17   events.  If you look at paragraph 110 of Mr. Mirarchi's

18   complaint in which he argues that there's commonality

19   sufficient to meet the prerequisites of Rule 23, he claims that

20   the critical questions of common law, in fact, include whether

21   Equifax had a duty to protect PII, whether Equifax should have

22   known of the susceptibility of their data security systems to

23   data breach and on and on and on about negligence-based claims.

24         So, Your Honor, while there is one separate claim

25   asserted in Mr. Mirarchi's complaint, the vast, overwhelming

1    factual allegations in the numerous other counts in the

2    complaint overlap significantly with the consumer claims and

3    they ought to be treated as part of the consumer track.

4              MR. MIRARCHI:  Your Honor, may I just respond to that

5    quickly?

6              THE COURT:  Briefly, yes, sir.  Come on up to the

7    podium.

8              MR. MIRARCHI:  I will be brief, Your Honor.

9              What was mentioned about the complaint, that was an

10   initial complaint.  Obviously, our amended complaint would be

11   different.  Just because commonality -- we all -- all these

12   claims emanate from the data breach.  This is very similar to

13   what happened in the *BP* case, Your Honor, down in the Southern

14   District of Texas before Judge Ellison.  It all arise from --

15   all the claims arise from an explosion aboard the *Deepwater*

16   *Horizon*.  There, there were different class periods.  All of

17   the commonality of the issues were the same, and that's why

18   they were able to proceed to class.  But adequacy of

19   representation and typicality were different.

20             That's what's different here, Your Honor.  Our claims

21   will be different.  They will be dealing with breach of

22   contract; and the damages also will be different as well, Your

23   Honor.  So because the initial complaint has overlap with the

24   larger consumer class, it doesn't mean that our clients would

25   not be prejudiced if they weren't given a separate track.

1          Thank you, Your Honor.

2          THE COURT:  All right.  Well, I'm at this time going

3    to agree and proceed with the proposed Case Management Order

4    Number 2 and establish separate tracks for the consumer and

5    financial institution actions.  I'm not going to establish a

6    separate track for Mr. Mirarchi's case or any other cases

7    asserting a breach of contract claim.  I think there's

8    sufficient overlap with the other consumer cases that a

9    separate track is not required.  The breach of contract claims

10   can be asserted in any master complaint that's filed, and any

11   issues that relate to class certification can be dealt with

12   later at the class certification stage.

13          And this decision -- I can always revisit this issue

14   if it becomes a problem, but I'm just not persuaded at this

15   stage that there would be any prejudice to Mr. Mirarchi's

16   clients by including them in the consumer track.

17          So any other general comments about the proposed Case

18   Management Order Number 2?

19          (No response.)

20          Well, then let's talk about the leadership on the

21   Plaintiffs' side.  Typically, in cases like this, what I've

22   done is appoint lead counsel for the Plaintiffs, liaison

23   counsel who has to be local and then a steering committee for

24   the Plaintiffs.  So what I would suggest is that we have lead

25   counsel, liaison counsel and a steering committee for each of

1    the two tracks, for the consumer and financial institution

2    actions.

3           Now, the securities fraud cases are going to be

4    different; and we will talk about them later.  But for the

5    consumer and the financial institutions, that's what I would

6    anticipate doing.

7           I'm open to suggestions about that.  I don't have any

8    rigid pre-conditions or notions about that.  But you're not

9    going to find me very receptive to a steering committee that is

10   so large in an effort to accommodate everybody that wants to

11   have a leadership position that it's unworkable.  So a steering

12   committee is to exercise overall supervision and speak for the

13   Plaintiffs who are not in a lead counsel or liaison position.

14   It's not to be so enormous that everybody's in it.  Then that

15   totally defeats the purpose of having a steering committee.

16          Mr. Carr, you want to say something?

17          MR. CARR:  Yes, Your Honor.  Pitts Carr --

18          THE COURT:  Come on up to the podium, please,

19   Mr. Carr, so everybody can hear you.

20          MR. CARR:  Pitts Carr of Carr and Weatherby.

21          I would like to introduce Your Honor to Mr. Stephen

22   Susman who I'm sure you know by representation, but he has some

23   thoughts that he has presented to me that I think might be of

24   help and at least something the Court should consider.

25          I turn it over to Mr. Susman.  Thank you, Your Honor.

1          MR. SUSMAN:  Thank you, Your Honor.  Steve Susman.

2          Just some suggestions on how you might do it, Your

3   Honor.  We're all supposed to file our applications for either

4   lead counsel, steering committee or liaison counsel by February

5   2nd.  My hunch is you're going to get a lot of paper on

6   February 2nd from a lot of people.

7          THE COURT:  Well, we are going to talk about that

8   too.

9          MR. SUSMAN:  Well, let me just give you an idea that

10  might help Your Honor.  I suspect that if you make it clear

11  that your lead counsel, however many you choose to appoint,

12  your co-lead, you are appointing individuals, not law firms.

13  The individual is the lead counsel.  He is the one who you

14  trust to be -- he or she to be here to make the presentations,

15  to manage the case, to assign the work and represent the class.

16         And you are essentially in the position obviously of

17  hiring lawyers for millions and millions of people in this

18  country, probably the biggest legal contract that will ever be

19  entered into in this country.  And you contract on the front

20  end, not on the back end.  As lawyers who do contingent-fee

21  litigation know all the time, you make a contract at the

22  beginning of the case, what the fee is going to be, who the

23  lead lawyer is going to be.  And everyone hires lawyers, not

24  law firms.  So point one is that it should be individuals who

25  commit to be involved.

1          Once you find out which individuals among this group
2     want to take that responsibility on of being present for the
3     meetings of the Plaintiffs' steering committee, of being
4     present in court, then you choose among them.  And I would also
5     make those applicants, Your Honor, disclose relationships that
6     they have with any other applicants for lead counsel -- do you
7     have some sharing arrangement, are you already in a group -- so
8     you know whether you are appointing -- for example, selecting
9     jurors who work for the same employer, that's one thing that
10    lawyers, trial lawyers want to know.  And a trial judge should
11    I think ask that question in appointing lead counsel, do you
12    have a relationship or have you talked to or do you have any
13    deal-cutting with another applicant.
14         Once you -- and my hunch is that you are going to be
15    not a lot of applications, maybe ten for that position under
16    those circumstances.  That's -- and then I would suggest you
17    select the lead counsel that you want, however many you want.
18    I'm not suggesting how many, whether it should be one, three or
19    ten.  That's up to you.
20         THE COURT:  Not going to be ten.
21         MR. SUSMAN:  I understand.  Well, you know, three is
22    a good number because your ties are broken obviously.
23         But in any event, let's assume -- and then you assign
24    to those people who you have selected to be the leaders in the
25    case the job of reviewing the applications from the dozens that

1    will apply for the PSC position and let them come to you in two

2    weeks after they are selected and give you recommendations as

3    to the size of the PSC and who should be on it.  And obviously

4    not binding on you, but it seems to me that that's kind of a

5    sensible way of doing it, kind of in a phased way, totally

6    consistent with what's in Case Management Order 2 that we all

7    have to apply by February 2nd.  And we all have to put our --

8    comply with what Rule 23 requires and this Court's order

9    requires you put in your application but that if you express

10   the view -- if you agree with my suggestion that co-leads

11   should be individual lawyers and they should -- an effort

12   should be made to have independent individual lawyers, that is,

13   you are going to get the views when you get the recommendations

14   for the composition of the Plaintiffs' steering committee from

15   three, four or however many lawyers you have decided to entrust

16   with the top position in the case.  You will get their

17   independent views of who can best help bring this case to a

18   successful conclusion for the class.

19           Thank you, Your Honor.

20           THE COURT:  Thank you, Mr. Susman.

21           Anybody else want to be heard on this issue of the

22   composition of Plaintiffs' leadership?

23           And I will tell you that I'm not expecting Plaintiffs

24   to agree on the leadership.  And assuming that you don't, my

25   intention would be probably after reviewing the initial

1   applications to have a hearing where I can ask individual

2   questions of individual applicants, some of which might be on

3   topics that Mr. Susman has discussed, others not.  But that

4   would be my probable way of proceeding.

5         So what's a reasonable page limit for applications,

6   double-spaced, 14-point font, Mr. Worley?

7         MR. WORLEY:  Well, in *Home Depot*, I recall, Your

8   Honor, that you set a page limit of 25 pages and then a 50-page

9   limit for additional material which I think was more --

10  observed more in the breach than actually in the -- in

11  following through.  But I -- personally I think that 25 pages

12  is sufficient.

13        THE COURT:  25-page limit for applications,

14  double-spaced, 14-point font, no fudging with single-spaced

15  footnotes or bulletpoints and a limit of 50 pages on any

16  attached materials.

17        That suit everybody?

18        Okay.  And I don't really see any reason for replies

19  because if there's a contest I'm going to have a hearing, and I

20  will hear what anybody has to say.  The applications are to be

21  filed on the public docket.  These are not ex parte.  They are

22  not confidential.  They are to be filed on the public docket,

23  so everybody is going to know what everybody else had to say.

24        Mr. Balser, you want to say anything about the

25  Plaintiffs' leadership structure or any suggestions as to

1    qualities that I ought to be looking for in terms of appointing

2    Plaintiffs' leadership?

3             MR. BALSER:  I think I'm going to resist the

4    temptation, Your Honor.

5             THE COURT:  Probably a good idea, Mr. Balser.

6             Any other comments or suggestions about Plaintiffs'

7    leadership structure?

8             (No response.)

9             All right.  I'm going to sign the proposed Case

10   Management Order Number 2.  I think it's well done, gets us off

11   to a good start.  And if anybody that wasn't part of the

12   process of negotiating it has some problem with it later, we

13   can address it at the next status conference.  But I think this

14   gets us off to a good start, all things considered.

15            So the securities fraud case, Mr. Smith, I understand

16   you don't want to be in the MDL?

17            MR. SMITH:  Your Honor, Michael Smith from King &

18   Spalding for Equifax, Richard Smith and John Gamble.

19            It looks like a lot of fun, but I think we would like

20   to be off to the side.  There's no reason to include the

21   securities cases in the MDL.  The transfer order did not

22   include them in the MDL.  The transfer order specifically says

23   that it applies to consumer actions.

24            This is an entirely different case with different

25   focus.  It's going to focus on false and misleading statements

1    allegedly that preceded the breach.  We all know that there was

2    the data breach.  This case is going to have a different focus,

3    and there are different requirements under the PSLRA.  And

4    there's just no reason to include the securities cases in with

5    the consumer cases.  To the extent there is any need for

6    coordination, to the extent there is overlap, that can be

7    handled separately between Your Honor -- Your Honor and Judge

8    Duffey depending on how that shakes out.

9          Just to remind Your Honor, there are two securities

10   cases, one of which the Case Management Order, the Kuhns case,

11   was entered -- this consumer MDL Case Management Order was

12   entered in the Kuhns case but not in the separate Groover case

13   that is pending before Judge Duffey.  There have been motions

14   made to consolidate those two cases, but we don't believe there

15   are any efficiencies to be realized from including the

16   securities cases in with the consumer MDL.

17         THE COURT:  Thank you, Mr. Smith.

18         Mr. Mixson or --

19         MR. MIXSON:  I will let him talk.

20         MR. HARROD:  Your Honor, thank you.  James Harrod

21   from Bernstein Litowitz Berger & Grossman.

22         I think there may be a misapprehension or some

23   confusion about what it is that we are asking for because the

24   Defendants have asked for the securities cases to be treated

25   separately.  I'm not really sure what that means because what

1   we believe is that they ought to be centralized with the MDL as

2   there are many examples of securities cases proceeding

3   alongside other kinds of consumer or other contract cases.  We

4   believe there's clearly relatedness and efficiencies that will

5   come from that; and anything that would be inefficient about

6   that can be handled through Your Honor and through, I think,

7   experienced counsel recognizing that there are case management

8   solutions to most of those things.

9       What I have not heard from the Defendants is what the

10  harm would be in coordination.  They talked about there's a

11  PSLRA, the Plaintiff appointment process.  Your Honor, our

12  client is Union Asset Management Holding.  The motion is not

13  opposed at this point.  There is no other movant, and so that

14  process is effectively if not as a matter of recordkeeping

15  completed.

16      There's a stay of discovery in the cases.  As I

17  understand, CMO 2 in the MDL cases there will be a stay of

18  discovery pending the outcome of a motion to dismiss.  So there

19  is no procedural obstacle to coordination of these cases in

20  some way.

21      Mr. Smith said that there are -- there's a

22  distinction in the cases about the securities cases looking

23  backward at statements that were made in a class period before

24  the data breach.  That's, of course, true.  The underlying

25  facts in these cases are very much the same.

1          One of the allegations that we are going to make just

2     for an example is what did Equifax do to protect the consumer

3     data that was the subject of the data breach.  And I believe in

4     the consumer actions that's going to be the same question, what

5     was Equifax's duty to protect that data.  In the securities

6     cases, it will be what did they say about how they were

7     discharging that duty.  But the evidence, the documents, the

8     custodians of those documents and the witnesses are likely to

9     be the same.  And in our view, there's no reason why a separate

10    judge should proceed along a parallel track, learn what are

11    likely to be very complicated and voluminous facts to

12    effectuate a remedy which I don't think serves to solve any

13    problem or at least not one that I have seen identified.

14         So, Your Honor, we'd ask respectfully that you allow

15    the cases to proceed on a centralized basis which, you know, we

16    provided in the letter we, I think, submitted on December 28th,

17    many examples of MDLs that have taken this approach.  We have

18    proposed some case management techniques that we think will

19    allow that to happen.  And, most importantly, I think it would

20    create efficiencies mostly for the Court but also for the

21    parties to be forced to at some point -- and it's a very early

22    stage in both of these cases -- to be coordinated.

23         And I see -- and like I said before, I don't want to

24    belabor the point.  I know there's many lawyers here waiting

25    patiently.  But I see no injury.

1          So we would ask first that Your Honor sign the order

2     appointing Union Asset Management Holding as the lead

3     Plaintiff.  There's a motion for consolidation in which the

4     Kuhns case which has been assigned to Your Honor which has been

5     subject to CMO 1 in the MDL be consolidated with the other case

6     that's currently assigned to Judge Duffey.  Our understanding

7     of this is that it's simply an administrative issue where one

8     was tagged because it's agreed by everyone, the Plaintiffs and

9     the Defendants in both of these cases, that Groover which is

10    not the low-numbered case be consolidated into Kuhns under a

11    new caption.

12         And I disagree with Mr. Smith, and I don't want to

13    get into the details of this.  I don't think the MDL did not

14    transfer our case as part of the MDL transfer order.  Because

15    it was already in this district, it would have been subject to

16    the tagalong process through a conditional transfer order; but

17    it wasn't because it wasn't originally named in the motion to

18    transfer cases.  So as a subsequent tagalong, it's not subject

19    to the original transfer order.  So there's nothing in that one

20    class of consumer actions that precludes Your Honor from

21    centralizing the securities case with the MDL and to exercise

22    appropriate case management techniques to allow that to proceed

23    I think in an efficient way.

24         Is there anything else that you'd like to hear from

25    me?

1            THE COURT:  No, sir.

2            MR. HARROD:  Thank you, Your Honor.

3            MR. SMITH:  Your Honor, just a brief response.

4            THE COURT:  Briefly, Mr. Smith.

5            MR. SMITH:  Yes.

6            So, again, the MDL order did not transfer the

7    securities cases.  It was not listed among those actions.  It

8    clearly said it focused on consumer class actions.

9            You will recall that Your Honor entered an order

10   inadvertently staying the securities actions along with the

11   other consumer actions pending the MDL's ruling.  We brought

12   that to the Court's attention.  The Court entered an order

13   saying that that stay order as to the securities cases was

14   inadvertently entered.  So they are very different.

15           The PSLRA, we already have deadlines for the

16   appointment of a lead Plaintiff.  There's no reason to wait.

17   Mr. Harrod has already acknowledged there are no other

18   applicants.  That case is ready to go.  A lead Plaintiff is

19   ready to be appointed.  An amended complaint will be filed.  It

20   will be the subject of no doubt a motion to dismiss on these

21   entirely different issues about the class period statements

22   that occurred well before the breach.

23           And, finally, we have had mentioned here today, for

24   example, the BP oil spill.  In that case -- and we cited this

25   to Your Honor in our papers -- the court did not include the

1  securities cases in the MDL, saw no efficiencies, pointed out

2  all the differences between the cases.  We think the same is

3  here.  To the extent there can be any needed coordination, that

4  can occur outside of including the securities cases in all of

5  these hearings and all of these unrelated proceedings.

6  　　　　　Thank you, Your Honor.

7  　　　　　MR. HARROD:  Your Honor, can I just very briefly?

8  I'm sorry.

9  　　　　　THE COURT:  This is it.

10 　　　　　MR. HARROD:  Okay.  I understand.

11 　　　　　I don't think -- we don't need to participate in

12 every hearing in the MDL.  We just want there to be some

13 centralization.  We don't need to be part of the master MDL

14 docket.

15 　　　　　And on the *BP* case, the securities case there was

16 really much different.  I think this is much similar to what

17 Your Honor did in *Home Depot* as I understand it where you

18 centralized shareholder derivative cases and consumer data

19 breach cases.  And I think that that's a better analog.

20 　　　　　I'm working on the *Volkswagon* securities litigation

21 which is proceeding as part of the MDL next to the consumer

22 cases.  We are not part of every MDL hearing in that case.

23 Judge Breyer calls us in when he needs to see us, and he

24 manages the case that way.  So I see that there's no reason not

25 to centralize the case and apply appropriate case management

1     techniques.

2            Thank you.  I appreciate the courtesy.

3            THE COURT:  Well, I think one judge ought to be

4     handling both the MDL case and the two securities cases.  One

5     of the securities cases has already been transferred to me, and

6     I'm going to talk to Judge Duffey about the other one.

7     Assuming that there's no difference of opinion between me and

8     Judge Duffey, I anticipate that Judge Duffey's case will

9     probably be transferred to me.  And my intention is that the

10    MDL proceeding and the securities cases will be coordinated.

11           The securities case, assuming that the motion to

12    consolidate is granted and it's before me, won't be technically

13    part of the MDL; but it's going to be coordinated with the MDL

14    in terms of discovery, in terms of procedure, in terms of

15    status conferences as if it was part of the MDL.  But the cases

16    will remain open unlike the other individual cases in the MDL,

17    and they will have continued existence.  And I suppose they

18    need their own Case Management Order which to my way of

19    thinking should be virtually identical to Case Management Order

20    Number 2 in the MDL with whatever differences need to take into

21    account the PSLRA and anything that is currently pending.

22           But, Mr. Smith, you and Plaintiffs' counsel confer

23    about that.  And I hope to have some resolution of what happens

24    to the Groover case today.  You should know today.  And I think

25    there is a very high probability that that's going to be

1    transferred to me, Mr. Smith.

2            MR. SMITH:  We understand, Your Honor.  We have had

3    meet-and-confers with Plaintiffs' counsel about a Case

4    Management Order.  I think we don't have complete agreement on

5    certain deadlines in there, but I think we could submit

6    something even if it's dueling orders on some timing issues

7    with respect to the filing of an amended complaint and going

8    through the motion to dismiss process.  But we could submit

9    that to you very quickly.

10           THE COURT:  Fine.  So you're going to be with us,

11   Mr. Smith.

12           MR. SMITH:  Thank you, Your Honor.

13           THE COURT:  So I will, as I typically do in these big

14   cases, have status conferences every four to six weeks.  I

15   don't think there's any point in having the next status

16   conference until the issue of Plaintiffs' leadership has been

17   resolved.  So my thinking would be we won't schedule another

18   one today, but I would expect to have one within a couple of

19   weeks after the Plaintiffs' leadership structure has been

20   established.

21           What do you think about that, Mr. Worley?  Any

22   suggestions?

23           MR. WORLEY:  I would agree that there's not much

24   point until leadership is appointed, and we can very quickly or

25   the leadership can very quickly get with the Court and schedule

1    a hearing at that point.

2              THE COURT:  What do you think, Mr. Balser?

3              MR. BALSER:  I agree, Your Honor.

4              THE COURT:  All right.  Once the Plaintiffs'

5    leadership has been established, all Plaintiffs' counsel who

6    work on the case will be required to keep time records of your

7    time.  And mindful of that, there will be no more mass meetings

8    of Plaintiffs' counsel.  Status conferences will be for defense

9    counsel and Plaintiffs' leadership, not mass meetings of

10   everyone who is involved.

11             And there will be no time logged for people just

12   monitoring status conferences by phone.  So I'll expect there

13   to be clear understandings between Plaintiffs' leadership and

14   everybody else that's working on the case about no padding of

15   time and no unnecessary time being racked up just trying to

16   enhance positions when the time comes if it comes for fees to

17   be an issue.

18             Understood, Mr. Worley?

19             MR. WORLEY:  I have never had any problem with that,

20   Your Honor, as you know from *Home Depot*.  Thank you.  I think

21   everyone understands that.

22             THE COURT:  All right.  So I think we've covered the

23   items on the agenda and my mental agenda.  I hope this is not

24   going to be too painful for everybody, including me.  And I'm

25   confident if we work together we can avoid as much pain and

1    discomfort as possible.

2             Anybody else want to talk about anything?

3             (No response.)

4             All right.  I understand that Plaintiffs' counsel

5    want to meet in the ceremonial courtroom.  We have got it

6    reserved for you.  It's open.  There's no telephone capability

7    up there.  If you want to stay here and use my courtroom and

8    keep the phone open, that's fine.

9             I think you will all be more comfortable up in the

10   ceremonial courtroom where everybody can have a seat, but

11   that's up to you.  It's on the 23rd floor.  You are welcome to

12   use it if you want to.  It's reserved for you.

13            And unless anybody has anything else, that'll

14   conclude our first status conference on the Equifax MDL.

15            MR. WORLEY:  Thank you, Your Honor.

16            THE COURT:  Thank you very much.  Court's in recess

17   until further order.

18            (Proceedings adjourned at 11:05 a.m.)

19

20

21

22

23

24

25

1                         C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6              I hereby certify that the foregoing pages, 1 through

7    34, are a true and correct copy of the proceedings in the case

8    aforesaid.

9              This the 11th day of January, 2018.

10

11

12

13                       */s/ Susan C. Baker* _____

14                       Susan C. Baker, RMR, CRR
                         Official Court Reporter
15                       United States District Court

16

17

18

19

20

21

22

23

24

25