UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc., Customer Data Security Breach Litigation<br><br>CONSUMER ACTIONS | MDL Docket No. 2800<br>No.: 1:17-md-2800-TWT<br><br>**APPLICATION FOR APPOINTMENT OF TINA WOLFSON AS LEAD COUNSEL FOR THE CONSUMER PLAINTIFF CLASS**<br><br>Hon. Thomas W. Thrash, Jr., Presiding |

  Tina Wolfson ("Wolfson") of Ahdoot & Wolfson, PC ("AW") hereby applies to serve the consumer plaintiff class as Lead Counsel in the above-captioned case.

  Wolfson makes this application on behalf of her clients Timothy Durham (Case No. 17-3452) and Barbara Trevino (Case No. 17-7180), pursuant to Case Management Order ("CMO") Nos. 1 (ECF No. 23) and 2 (ECF No. 87) and Federal Rules of Civil Procedure, Rule 23(g). Wolfson is one of the most experienced data breach litigation attorneys appearing in this case, with decades of experience in consumer privacy cases. As Lead Counsel, she recently prosecuted and settled the *Experian Data Breach Litigation,* and was responsible for achieving the seminal appellate decision on standing in the *Neiman Marcus* data breach litigation. She also served the plaintiff class as a member of the Plaintiffs' Steering Committee ("PSC") in *The Home Depot, Inc., Customer Data Security Breach Litigation* before this Court.

  Wolfson has met and conferred with every group of attorneys who will be submitting applications and has considered opportunities to join particular slates, as well as the ability to put together her own slate. In the end, she chose to submit an individual application because she is willing and able to work with any of the other distinguished counsel applying for a leadership

position. At the same time, Wolfson's professional experience (elaborated below) makes her uniquely qualified to serve as Lead Counsel in this case and she believes that adding her as Lead Counsel to any slate will serve the best interest of the putative class. Wolfson submits that she would be an invaluable part of any team that the Court ultimately appoints.

Wolfson has made no promises to any other counsel and has not sought support for her application from any other counsel. Her sole goal is to simply provide the best legal service to the plaintiff class. Wolfson sincerely hopes that the Court allows her the opportunity to do so.

### I.     WOLFSON'S EXPERIENCE AND KNOWLEDGE OF APPLICABLE LAW

Wolfson graduated Harvard Law School in 1994 *cum laude*, and began her legal career at Morrison & Foerster defending large corporations in complex litigation. After gaining further invaluable litigation experience at a plaintiffs' civil rights and employment boutique firm, she co-founded AW in 1998.

After almost two decades of prosecuting complex cases and class actions, as well as serving on the leadership teams of many MDL cases, Wolfson is imminently qualified to lead this MDL. Her experience in data breach class actions is extensive and difficult to match. In addition to the notable experience below, Wolfson's *curriculum vitae* is attached as Exhibit 1.

#### A.     Most Relevant Data Breach Experience.

##### 1.     Co-Lead Counsel in the *Experian Data Breach Litigation*

Wolfson is currently serving as Co-Lead Counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.), before the Hon. Andrew J. Guilford. Judge Guilford appointed Wolfson Co-Lead Counsel in this consolidated litigation encompassing 38 class actions, along with Dan Robinson of Robinson Calcagnie, after contested applications and a hearing. Plaintiffs' counsel had voluntarily transferred these cases, originally filed across the

nation, to the Central District of California, as a result of Wolfson's coordination efforts early in the case to streamline the multi-state litigation.

The case arose from a data breach at Experian, another one of the three major credit reporting bureaus, that exposed the sensitive financial information of over 15 million T-Mobile customers. Along with Mr. Robinson, Wolfson manages a PSC of six additional firms.

On January 26, 2018, after two and a half years of intense but efficient litigation, and concurrent settlement discussions that began in March 2017 and included three full-day mediations, the parties reached a class-wide settlement in principle. The parties are not yet at liberty to disclose the terms of the settlement.

Wolfson's work as Co-Lead Counsel in *Experian* is invaluable experience for prosecuting this case against Equifax. She has been and continues to be personally involved in every aspect of the *Experian* case, including strategy, brief writing, oral argument, discovery, work with experts, case management, attorney oversight, and settlement. Wolfson personally reported to the Court at every case management conference and attended every substantive hearing before the Court. She successfully argued the motion to dismiss, resulting in the Court denying the dismissal of the negligence causes of action, as well as consumer protection statute causes of action. She also argued many of the discovery disputes presented to the Court, and helped prepare for and attended all of the depositions taken in the case. She worked hand in hand with consultants and experts regarding the many highly technical aspects of the case.

There are numerous factual and legal parallels between the Equifax and Experian data breaches. Factually, the cases mirror each other with respect to the technical vulnerabilities that lead to the respective breaches, the defendants' respective conduct after the breach, and the type of information that was compromised, among many other facts. Legally, the two cases share

many of the unique issues that are particular to credit bureaus, including the Fair Credit Reporting Act, the Gramm-Leach-Bliley Act and the application of others laws and regulations governing Big Data companies, credit reporting agencies, and financial institutions in the data breach context.  It is crucial that the leadership team include someone with recent experience and understanding of the seminal factual and legal issues that will govern this case.  The plaintiff class will gain a serious advantage with a team that includes Lead Counsel who recently prosecuted a similar case with so many analogous issues and has expertise in this precise legal niche.

### 2.      PSC in *The Home Depot, Inc., Customer Data Security Breach Litigation*

This Court appointed Wolfson to serve on the Consumer PSC in *The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 14-md-2583-TWT (N.D. Ga.).  Wolfson and AW were instrumental in all of the litigation efforts that brought the parties to the negotiation table in that matter, such as vetting dozens of potential class representatives, researching all potential causes of action and drafting the consolidated complaint, and opposing the motion to dismiss the complaint, among other efforts.

In light of her service on the Home Depot PSC, the Court may rest assured that Wolfson is well aware of its expectations regarding counsel's conduct in complex litigation, including the caliber of work and the efficiencies that the Court expects to see with respect to fee applications. If appointed in this case, Wolfson will more than meet the Court's expectations.

### 3.      Lead in *Neiman Marcus*, seminal standing decision from Seventh Circuit

Wolfson's colleagues from seven other firms elected her as Co-Lead Class Counsel in the consolidated consumer class action arising from the Neiman Marcus data breach, entitled *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (before the Hon. Sharon

4

Johnson Coleman, reassigned from Hon. Samuel Der-Yeghiayan, reassigned from Hon. James B. Zagel).

Wolfson and partner Theodore Maya were responsible for briefing and arguing the appeal from the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing case, was the first appellate decision to consider the issue of Article III standing in data breach cases since, and in light of, the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). The defense bar had aggressively advocated that *Clapper* set a more rigorous standard for Article III standing inquiries than previously existed and that, in light of that decision, data breach cases generally lack standing unless the plaintiffs could show that they suffered unreimbursed fraudulent charges. As a result of Wolfson's work, the Seventh Circuit adopted the plaintiffs' reasoning, rejected this narrow view of *Clapper*, and established that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes. *Remijas v. Neiman Marcus Group, LLC*, 794 N.E.3d 688 (7th Cir. 2015) (reversed and remanded). Thus, Wolfson is not only aware of the legal precedent relevant to this case, but Wolfson and AW are at the forefront of creating it.

The class settlement, which is awaiting final approval, allows for a $100 payment to each class member whose credit card was compromised in the breach.

### 4. Other Data Breach Experience

Wolfson also is serving or has served on the leadership teams in the following data breach cases, among others:

- *In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-md-02633-SI (D. Or.) (Hon. Michael H. Simon) – currently serving, by court appointment after contested

leadership applications, on the Executive Leadership Committee. Wolfson is working cooperatively and efficiently with Lead Counsel, as well as three other firms on the Executive Leadership Committee.

- *In re: U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 1:15-mc-01394-ABJ (D.D.C.) (Hon. Amy Berman Jackson) – currently serving, by court appointment, on the PSC, comprised of three firms (in addition to Lead and Liaison Counsel), after contested leadership application and hearing. Wolfson briefed and argued, in part, the voluminous motion to dismiss. Order of dismissal on appeal to the D.C. Circuit.

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello) – currently serving as Co-Lead Counsel for the putative consumer class arising from a nationwide restaurant payment card data breach. A motion to dismiss by Chipotle is currently pending.

- *Adlouni v. UCLA Health Sys. Auxiliary*, No. BC589243 (Cal. Super. Ct. Los Angeles Cty.) (Hon. John Shepard Wiley) – medical data breach. Wolfson is currently serving by court appointment on the PSC with six other firms. There is a settlement agreement in principle.

- *L.D. v. Torrance Mem'l Med. Ctr.*, No. BC670591 (Cal. Super. Ct. Los Angeles Cty.) (Hon. Carolyn B. Kuhl) – currently serving as Class Counsel in a consolidated class action arising from a data breach of a private hospital's medical records.

- *In re: YapStone Data Breach*, No. 4:15-cv-04429-JSW (N.D. Cal.) (Hon. Jeffrey S. White) – served as Lead Class Counsel. Settlement provided for credit monitoring and identity theft services to claimants (valued at approximately $4.5 million annually in

perpetuity), a *cy pres* fund to non-profit organizations, and injunctive relief in the form of YapStone implementing significant and costly data security measures.

- *S.A. v. Wash. State Univ.*, No. 17-2-23244-1 SEA (Wash. Super. Ct., King Cty.) (Hon. Hollis Hill) – serving as Co-Lead Counsel with three other firms in a consolidated class action arising from a data breach of personal information from a research storage facility.

B.  **Other Privacy Cases**

Wolfson has had a long-standing passion for cases involving the right to privacy, and her experience in privacy-related complex litigation goes far beyond data breach cases. She has been prosecuting e-privacy cases on behalf of consumer classes since the late 1990s, before the term "big data" became part of the everyday vernacular. Wolfson was among the first group of attorneys who successfully litigated the privacy rights of millions of consumers against major financial institutions based on the compilation and sale of detailed personal financial data to third party telemarketers without the consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, at the time Wolfson was prosecuting these cases, such practices were hidden from public scrutiny. The consumer privacy class actions that Wolfson successfully prosecuted included, without limitation, cases against Chase Manhattan Bank, American Express, MBNA America Bank, Discover Bank, FleetBoston, and Washington Mutual Bank.

Currently, Wolfson and AW are again involved in spearheading consumer privacy rights through novel cases, such as those prosecuting consumer rights to be left alone by telemarketers and the right to control the collection of their biometric information:

- *Chimeno-Buzzi v. Hollister Co*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) – served as Class Counsel with four other firms in this nationwide class action

arising from violations of the Telephone Consumer Protection Act of 1991 ("TCPA"). Settlement included $10 Million non-reversionary fund and significant injunctive relief.

- *Soukhaphonh v. Hot Topic, Inc.*, No. 2:16-cv-05124-DMG-AGR (C.D. Cal.) (Hon. Dolly M. Gee) – counsel for plaintiff in pending class action arising from violations of the TCPA.

- *Rivera v. Google, Inc.*, No. 1:16-cv-02714 (N.D. Ill.) (Hon. Edmond E. Chang) – counsel for plaintiffs in pending class action for alleged violations of Illinois Biometric Information Privacy Act ("BIPA"). Wolfson and co-counsel successfully opposed the motion to dismiss based on Article III standing and constitutional grounds, discovery is ongoing.

- *Monroy v. Shutterfly, Inc.*, No. 1:16-cv-10984 (N.D. Ill.) (Hon. Amy J. St. Eve) – counsel for plaintiffs in pending class action for alleged violations of Illinois BIPA. Wolfson and co-counsel successfully opposed the motion to dismiss, discovery is ongoing.

  **C.    Other Notable Recent Complex Litigation Achievements**

- *Williams v. City of New York*, No. 1:17-cv-02303-RJD-SMG (E.D.N.Y.) (Hon. Raymond J. Dearie) – serving as plaintiff's counsel in class action alleging inadequate monitoring and supervision of inmates in city jails and indifference to inmate-on-inmate violence in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Motion for preliminary injunction under submission.

- *Eck v. City of Los Angeles*, No. BC577028 (Cal. Super. Ct., Los Angeles Cty.) (Hon. Ann I. Jones) – appointed Class Counsel in the $295 Million settlement in a class action arising out of alleged violations of California's Propositions 218 and 26 by the City of

Los Angeles when approving electricity rates that allegedly contained tax increases without voter approval. Final approval is pending. Settlement includes a $52 Million non-reversionary cash fund and injunctive relief in the form of (i) direct tax savings valued at minimum of $243 Million through fiscal year 2019-2020, (ii) an agreement to comply with the stated Propositions with respect to City of Los Angeles taxes on electricity use, and (iii) yearly audits to verify tax savings.

- *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon Edward J. Davila) – appointed as Co-Lead Class Counsel. Plaintiffs challenged defendant's auto-renewal and false discount practices. The finally-approved class action settlement made $80 Million available to the class and included injunctive relief requiring McAfee to notify customers at the point of every sale that the service will be auto-renewed at an undiscounted subscription price. Further, the settlement required McAfee to change its policy regarding the past product price it lists as a reference to any discount it's currently offering: McAfee will now only list a past price it has actually charged customers within the past 45 days.

- *McKnight v. Uber Techs., Inc.*, No. 3:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar) – appointed Class Counsel; seeking final approval for a class settlement establishing a non-reversionary fund of $32.5 million returning allegedly hidden "safe ride" fee that Uber unfairly charged its customers.

- *Pantelyat v. Bank of Am., N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan) – serving as counsel for plaintiffs in class action arising from allegedly improper overdraft fees; preliminary approval of $22 million class settlement pending, representing approximately 80% of total revenues gleaned by Bank of America's alleged conduct.

- *Smith v. Floor & Decor Outlets of Am., Inc.*, No. 1:15-cv-04316-ELR (N.D. Ga.) (Hon. Eleanor L. Ross) – class action alleging unlawful formaldehyde emissions from laminate flooring.  With its Co-Lead Class Counsel, including Kenneth Canfield of Doffermyre Shields Canfield & Knowles, AW negotiated a $14 Million class settlement.

- *In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practices Litig.*, No. 1:16-md-02743-AJT-TRJ (E.D. Va.) (Hon. Anthony J. Trenga) – co-counsel for the plaintiff class claiming alleged misrepresentations of laminate flooring durability, coordinated with MDL proceedings regarding formaldehyde emissions.  $36 Million non-reversionary fund settlement in principle reached along with formaldehyde MDL.

- *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-01531-WHW-CLW (D.N.J.)  (Hon. William H. Walls) – as one of six plaintiffs' counsel on behalf of purchasers of MINI Coopers with allegedly defective timing chain and timing chain tensioners, Wolfson secured an uncapped fund for claims for warranty extension, reimbursement for repairs, and compensation for sale at a loss.

- *In re: Uber FCRA Litig.*, No. 3:14-cv-05200-EMC (N.D. Cal.) (Hon. Edward M. Chen) – currently serving as Co-Lead Class Counsel on behalf of Uber drivers alleging violations of the Fair Credit Reporting Act in Uber's background check practices.  Among other litigation victories, AW successfully opposed Uber's motion to compel arbitration and subsequently defended the trial court opinion before the Ninth Circuit.  Despite the reversal by the Ninth Circuit, which would send half of the class members into individual arbitration, AW was able to secure a settlement for the entire class.  The settlement provides for $7.5M in monetary relief to the class as well as injunctive relief

guaranteeing Uber's compliance with FCRA background check requirements. Final approval pending.

## II. WORK WOLFSON HAS DONE IN IDENTIFYING OR INVESTIGATING POTENTIAL CLAIMS IN THIS ACTION

Wolfson expended considerable time, effort, and cost in developing the case against Equifax, while fully aware that the time expended prior to leadership appointment will not be remunerated. AW has vetted dozens of potential class members, culled and reviewed all publicly available information regarding the Data Breach, retained and consulted with several experts, and put together a going forward strategy in the event the Court grants Wolfson the opportunity to work on this case.

On November 10, 2017, Wolfson co-chaired the Equifax Data Breach Conference organized by HarrisMartin in Atlanta, Georgia. There, she shared factual findings and discussed case theories and strategies with the audience, as well as in private discussions with many who attended, be they practitioners experienced in the data privacy area or those new to this area. During the following months, Wolfson has stayed in contact with numerous plaintiffs' counsel, freely offering her ideas on all factual, legal, and logistical strategies, including discussions with defense counsel. At their request, Wolfson collaborated with plaintiffs' counsel in the *Davis* case pending in the Northern District of Alabama in an attempt to move the case forward, as it was not stayed pending MDL proceedings (No. 7:17-cv-1595-LSC, subsequently transferred to this Court by the JPML).

When the Court issued CMO No. 1, Wolfson cooperated and collaborated with David Worley and other plaintiffs' counsel in drafting the Proposed CMO No. 2, participating in several telephone calls and other correspondence and drafting proposed language. As a result of these efforts and Mr. Worley's excellent leadership, the parties were able to present the Court

with an agreed upon Proposed CMO No. 2. Wolfson attended the Initial Status Conference on January 9, 2018.

Wolfson continues to closely follow developments in all ongoing data breach cases and other privacy cases, whether or not she is actively involved in litigating those cases, in order to utilize the invaluable aggregate knowledge in this case.

### III. WOLFSON'S ABILITY TO WORK COOPERATIVELY WITH OTHER PLAINTIFFS' COUNSEL AND DEFENSE COUNSEL

In virtually all of the cases described in Section I above, Wolfson worked as part of a team of attorneys from other firms, whether in a leading or supporting role. She has repeatedly demonstrated her ability to work cooperatively and efficiently with other plaintiffs' counsel, in both lead and subordinate positions. Moreover, in this case, Wolfson has already shown her collaborative and leadership skills, as described in Section II above.

Further, Wolfson values and demonstrates professionalism not only in her dealings with co-counsel, but with opposing counsel as well. She is well-regarded by the defense bar as an experienced and zealous advocate, but also a consummate professional. Wolfson often collaborates with past and present opposing counsel on continuing legal education projects, Rule 23 and MDL-related think tanks, bar activities, and joint efforts to support the judiciary.

### IV. WOLFSON HAS BEEN AND CONTINUES TO BE WILLING AND ABLE TO COMMIT TO A TIME-CONSUMING PROCESS AND HAS ACCESS TO SUFFICIENT RESOURCES TO PROSECUTE THIS LITIGATION IN A TIMELY MANNER

As a founding member of AW, with nearly two decades of complex and class action litigation behind her, Wolfson well understands both the time and financial commitments that this type of high stakes litigation demands. She is also aware that the Court expects the litigation to move promptly and efficiently. She does not take these obligations lightly and would not ask

the Court to appoint her Lead Counsel unless she was certain she could meet these obligations. Without equivocation, Wolfson assures the Court that AW has both the staff and the financial resources to lead and manage this case promptly and efficiently to a successful conclusion.

AW's staff size (eight attorneys) is large enough for the case to be staffed appropriately, but modest enough to assure the Court that Wolfson's approach to the case will be acutely aware of efficiencies and avoid any duplication of effort. As a testament to the firm's financial health and sound judgment, AW has never borrowed funds from any parties, but has thrived and grown on the proceeds it brings in through its members' efforts. Such financial health is the result of AW's principals never overextending their financial commitments. AW has always promptly met its litigation fund assessment obligations in every case. AW can undoubtedly meet the human and financial resource commitments this case requires.

Furthermore, Wolfson has already demonstrated her commitment to the case and the plaintiff class over the last four months, as described in Section II above. She has expended these significant efforts with the assumption that time expended prior to appointment of lead counsel will not be remunerated.

## V.  WOLFSON'S PROPOSAL REGARDING FEES

In order to ensure that duplicative billing is avoided, Wolfson would implement contemporaneous billing guidelines and efficiency protocols, similar to those implemented in the Home Depot matter, subject to the Court's approval. As in all other cases, monthly bill reporting will be required from all counsel authorized to work on the case, and Wolfson will personally review all such bills, and submit them for *in camera* review should the Court so desire. If necessary, she will counsel attorneys who fail to comply with the implemented billing and efficiency protocols. Wolfson will not charge the class for time expended in enforcing such

protocols. All fee applications would comport with Eleventh Circuit law.

## VI. CONCLUSION

Wolfson thanks the Court for allowing her to participate in the leadership selection process and for the Court's serious consideration. For all the foregoing reasons, Wolfson respectfully requests that the Court appoint her as Lead Counsel for the consumer plaintiff class in this litigation. She will be attending the hearing on February 9 and will be happy to address any questions or concerns the Court may have.

Respectfully Submitted,

Dated: January 30, 2018

*/s/ Tina Wolfson*
Tina Wolfson
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
*twolfson@ahdootwolfson.com*

*Proposed Lead Counsel; Counsel for Plaintiffs Timothy Durham (Case No. 17-3452) and Barbara Trevino (Case No. 17-7180)*