IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 31 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER MDL DATA SECURITY BREACH LITIGATION | DOCKET NO. 2800 1:17-md-2800-TWT ALL CASES |

**JOINT APPLICATION OF SHANE F. LANGSTON AND REBECCA M. LANGSTON FOR APPOINTMENT TO STEERING COMMITTEE**

Applicants Shane F. Langston and Rebecca M. Langston (the "Langstons") pursuant to CMO Nos. 1 and 2 file this joint application ("Joint Application") requesting that the Court appoint them (or one of them) to the steering committee for the subject Customer Data Security Breach Litigation.  In support thereof, the Langstons state as follows:

**Summary**

In support of their Joint Application, the Langstons attach hereto the following:

Exhibit A- Sworn Declaration of Shane F. Langston

Exhibit B – Curriculum Vitae of Shane F. Langston

Exhibit C – Representative Class Action and Mass Tort History

Exhibit D – Sworn Declaration of Rebecca M. Langston

The Langstons (together with our co-counsel Bailey & Galyen) represent approximately 2,000 customers impacted by the Equifax data breach.  These customer/clients have a variety of injuries.  Through literally hundreds of hours of data gathering, the Langstons are uniquely familiar with concrete injuries and traceability issues relevant to Article III standing defenses that may be advanced by Equifax.

The Langstons have extensive experience in class action and mass tort litigation. The subject Joint Application satisfies all criteria set forth in CMO 1 and 2 and FED. R. CIV. P. 23(g).

Without doubt, the Leadership Counsel for plaintiffs in the Home Depot multi-district litigation recently managed by this Court are competent, qualified, and effective counsel. Many (if not all) of these same counsels will apply for Leadership positions in the subject Equifax litigation. The Langstons (if such counsels are appointed to Leadership positions in the current litigation) are committed to work cooperatively with such counsel and contribute time, staff, attorneys and financial resources proportionally and necessary to effectively represent the putative classes.

The Langstons (absent our association with our co-counsel of Bailey & Galyen) have no affiliation with the many other hundred counsel vying for a leadership position in this cause. That said, the Langstons do not anticipate that other applicants for leadership have any objection to their participation. Further, it is anticipated that the other applicants will recognize that the Langston resources available to this litigation combined with the invaluable data from their 2,000 clients is a valuable contribution worthy of a seat on the steering committee.

## Law & Argument

The Langstons are qualified and committed to expending the time and resources required to successfully prosecute this complex litigation, making them appropriate for appointment to the plaintiffs' steering committee. Federal Rule 23(g) provides criteria for the court to consider in appointing class counsel, including: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in class actions and complex litigation; (3) counsel's knowledge of the applicable law; (4) the resources that counsel will commit to representing the

class, and (5) any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g)(1)(A)(i-iv) & (B). The Manual for Complex Litigation also discusses factors to be considered by the Court in the appointment of class counsel, which include among other factors: (1) qualifications of designated counsel; (2) competence for assignments; (3) whether counsel will fairly represent the various interests in the litigation; (4) counsel's resources, commitment, and qualifications to accomplish the assigned tasks; and (5) the counsel's ability to command the respect of colleagues and work cooperatively with opposing counsel and the court. *See* MCL § 10.224.

Although the Langstons only seek appointment to the plaintiffs' steering committee – not lead class counsel – the Langstons are qualified pursuant to the class counsel appointment criteria set out above. Shane Langston has approximately 34 years of experience, including numerous mass tort and class action cases. *See* Exh. A, at ¶ 4. His experience includes appointment as class counsel in complex litigation involving thousands of class members. *Id.*at ¶¶ 4-6. A history of Shane Langston's extensive litigation history is attached hereto as Exhibit C. Rebecca Langston also has extensive experience in mass tort litigation, including approximately two decades working on numerous mass tort cases. *See* Exh. D, at ¶¶ 4-5; *see also* Exh. C. She also has experience in common benefit committee work, including work she performed as a member of the discovery committee in the Vioxx litigation. *See* Exh. D, at ¶ 5. Jason Nabors also has significant experience in class action and mass tort litigation, including work for multiple steering committees as well as past experience with data breach cases. *See* Exh. C, at pp. 2-3.

The Langstons, along with undersigned counsel Jason Nabors and other counsel and staff at Langston & Langston, PLLC, are committed to dedicating the substantial time and resources

required for the complex data breach litigation at issue here.  In addition, the Langstons are committed to working in cooperation with other firms and counsel appointed to leadership positions.  The undersigned have been in contact with numerous other attorneys from around the country in regard to this litigation.

The Langstons, along with co-counsel Bailey and Galyen, represent approximately 2,000 individual consumers affected by the subject Equifax data breach.  The Langstons and their firm have undertaken substantial efforts in communicating and representing a large number of consumers.  The data and information associated with such a large number of plaintiffs will be beneficial to class counsel.  The Langstons are prepared to expend the time and resources necessary to successfully pursue this litigation on behalf of all potential class members.

### Conclusion

For the foregoing reasons, the Langstons respectfully request an order from this Court appointing Shane Langston and/or Rebecca Langston to the plaintiffs' steering committee.

Respectfully submitted this the 30th day of January, 2018.

/s/ *Shane F. Langston*
Shane F. Langston, Esq.

/s/ *Rebecca Langston*
Rebecca Langston, Esq.

/s/ *Jason Nabors*
Jason Nabors, Esq.

Shane F. Langston, Miss. Bar #1061; Tex. Bar #24101017
Rebecca McRae Langston, Miss. Bar #99608
Greta L. Kemp, Miss. Bar #103672
Jason L. Nabors, Miss. Bar #101630
LANGSTON & LANGSTON, PLLC

4

210 East Capitol Street, Suite 1205
Jackson, Mississippi 39201
1161 La Mirada Ct.
Southlake, TX 76092
Telephone:     (601) 969-1356
Fax:     (601) 968-3866
shane@langstonlawyers.com
rebecca@langstonlawyers.com
greta@langstonlawyers.com
jason@langstonlawyers.com

**<u>Certificate of Service</u>**

The undersigned does hereby certify that a true and correct copy of the foregoing document was filed with this Court's electronic filing system, which automatically sends notification and service of a copy of said document to all counsel of record.

This the 30th day of January, 2018.

<u>/s/Jason L. Nabors</u>
Jason L. Nabors

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 1:17-md-2800-TWT ALL CASES |

## DECLARATION OF SHANE F. LANGSTON

I, Shane F. Langston, declare under penalty of perjury pursuant to 28 USCA §1746 that the following is true and correct:

1. My law partner and wife, Rebecca M. Langston, Esq., and I are the sole shareholders of the law firm Langston & Langston, PLLC, with offices in Jackson, Mississippi and Southlake, Texas. This declaration is submitted in support of our Joint Application for appointment to the steering committee consistent with CMO 1 and 2.

2. I am a member in good standing and have been a member in good standing of the Mississippi Bar (Bar No. 1061) since 1984. I am a member in good standing and have been a member in good standing of the Texas Bar (Bar No. 24101017) since 2016. Throughout my almost 34 years of law practice I have never been disciplined or admonished by any bar association or any court on any level.

3. A very concise curriculum vitae of my education and experience is attached to the Langston Joint Application as Exhibit B. In short, I earned my BA (business) and Masters of Business Administration from Millsaps College in 1980-81 and earned my JD from the University of Mississippi School of Law in 1984. Upon graduation from law school I began practicing business law and general litigation with a "large" (by Mississippi standards) law firm in Jackson, Mississippi. In 1990, I began a two-lawyer "boutique" plaintiff firm, Langston & Frazier, LP. The firm, eventually evolving into Langston Sweet & Freese, PLLC, grew to 12 lawyers with offices in Jackson, Mississippi and Birmingham, Alabama. In 2003, my law partner wife and I formed our current firm, Langston & Langston, PLLC, where we employ several legal assistants and two highly skilled and experienced associate attorneys (i.e., Greta Kemp, Esq., with over 8 years of experience and Jason Nabors, Esq., with over 13 years of experience).

4. Throughout my 34-year law practice I have focused on the representation of plaintiffs in personal injury and business litigation.[1] This representation has included many mass tort cases and class actions. I was appointed as one of plaintiffs' class counsel for settlement purposes in a class action styled Page v. Blue Cross and Blue Shield Ass'n of Mississippi where I successfully prosecuted

---

[1] While most of my practice has centered on personal injury, I have also represented many commercial plaintiffs (i.e., railroads, pipelines, hotels, apartments, etc.) involving various tax disputes.

2

and negotiated a settlement in the millions of dollars paid to many thousands of insureds who had been defrauded in complex, secret contractual arrangements between Blue Cross and hospital providers. The litigation extended almost four (4) years from the filing of the original class action complaint to the entry of final Judgment. (See Representative Litigation History, Exhibit C attached to the Joint Application.)

5. Through the representation of the class plaintiffs in Page v. Blue Cross, I discovered that a subsection of the same plaintiffs against whom Blue Cross had advanced subrogation claims had been defrauded of millions of dollars. I filed another class action styled Gatwood v. Blue Cross and Blue Shield Ass'n of Mississippi, 2:94-cv-00154-CWP, United States District Court for the Southern District of Mississippi, Hattiesburg Division. I was the sole Lead Class Counsel and successfully concluded a multimillion class settlement. Id.

6. Following the Mississippi class actions against Blue Cross, I participated with class counsel and successfully prosecuted similar class lawsuits against Blue Cross entities in the states of Illinois, Louisiana, Oregon and Tennessee.

7. Over several decades I have successfully prosecuted many mass tort cases. A non-exhaustive but representative list of such cases is attached to the Joint Application as Exhibit C.

3

8. Additionally, for decades I have held leadership roles in various legal organizations including President of the Mississippi Association of Justice (formerly Mississippi Trial Lawyers Association) and Trustee of the Roscoe Pound Civil Justice Institute.[2] I have presented papers and lectured on many occasions at legal organizations including the Western Trial Lawyers Ass'n, the Southern Trial Lawyers Ass'n, the Mississippi Association for Justice and AAJ.

9. Addressing specifically the criteria noted in the subject CMO 1: a) I am willing and have the ability to commit to the very time-consuming process if chosen to serve on the steering committee for the subject Customer Data Security Breach multi-district litigation; b) I have the ability to work cooperatively with others; c) I am thoroughly familiar with the Manual for Complex Litigation and have educated myself in data security breach litigation by studying filings in other data security breach litigation (including Home Depot before this Court), reading literally dozens of security breach cases and legal publications, and attending a conference for plaintiff attorneys regarding the subject Equifax litigation;[3] and d)

---

[2] The Pound Civil Justice Institute is a national legal "think tank" dedicated to ensuring access to justice for ordinary citizens. Its centerpiece is the annual hosting of the Forum for State Appellate Court Judges, i.e., a full-day educational program attended by judges, legal scholars and attorneys.

[3] My entire law firm, including my partner/wife Rebecca Langston, Esq., associate attorneys Jason Nabors, Esq., and Greta Kemp, Esq., and I attended the Harris Martin's Equifax Data Breach Litigation Conference in Atlanta, GA on November 9, 2017.

4

my law firm and I have access to sufficient resources to advance this litigation in a timely manner.

10. Relative to available "resources", one of my co-counsel representing the plaintiffs in the Texas filed class actions is Steve Maxwell, Esq., with the law firm of Bailey & Galyen ("B&G"). B&G includes approximately 40 lawyers spread over 16 offices throughout Texas and one office in San Francisco, California. Texas and California, where my co-counsel and I have offices, are likely the two states with greatest number of Equifax victims.

11. This Court's CMO 2 further referenced the "Class Counsel" criteria found in Fed. R. Civ. P. 23(g). Specifically, Rule 23(g)(1)(A)(i) provides that the court must consider "the work counsel has done in identifying and investigating potential claims in the action". I attest that my law firm and my co-counsel at B&G have devoted hundreds of hours identifying and investigating potential claims:

> a. We represent approximately 2,000 individual customers who have been directly impacted by the Equifax data security breach;
>
> b. We have employed contract legal assistants who have worked for months interviewing Equifax customers and gathering relevant documents and information regarding concrete damages and traceability; and

5

c. Four (4) of our lawyers traveled to Atlanta to educate ourselves on the Equifax data breach litigation and I traveled to Atlanta to attend the January 9, 2018 status conference.

12.My law firm and my co-counsel at B&G are committed in terms of resources, staff, time, and knowledge to assisting Lead Counsel and Liaison Counsel and working cooperatively with fellow steering committee members to the competent and fair representation of the putative class members. Representing approximately 2,000 putative class members we are uniquely positioned to assist Leadership counsel in identifying potential subclasses, identifying potential class representatives within such classes, and overcoming Article III standing challenges by Equifax.

For these reasons, I request that the Court consider my appointment to the steering committee for the subject Equifax Customer Data Security Breach Litigation.

FURTHER AFFIANT SAYS NOT.

Shane F. Langston

SWORN TO AND SUBSCRIBED BEFORE ME, this the 28th, day of January, 2018.

6

STATE OF TEXAS
COUNTY OF TARRANT

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the state and county aforesaid, the within named, Shane F. Langston, who being first by me duly sworn stated on oath that the matters and facts set forth in the above and forgoing Affidavit are true and correct as therein stated.

DATED: January 28, 2018.

MIMI V. TRAN
Notary Public
STATE OF TEXAS
My Comm. Exp. 06/23/2021
ID# 124667038

(SEAL)

NOTARY PUBLIC

7

# EXHIBIT B

## CURRICULUM VITAE

**Name:**            Shane F. Langston

**Address:**         Langston & Langston, PLLC
                     210 E. Capitol St.
                     Suite 1205
                     Jackson, Mississippi 39201

                     And

                     Langston & Langton, PLLC
                     1161 La Mirada Ct.
                     Southlake, Texas 76092

**Telephone:**       (601) 969-1356

**Facsimile:**       (601) 968-3866

**Email:**           shane@langstonlawyers.com

**Personal Status:** Married; Wife Rebecca M. Langston
                     Children; Cody, 31, Jacqueline 28,
                     Jaqe 23; MacKenzie 14;
                     Gabrielle 12; Shane Aubrey 8;
                     Connor Langston, 7

**Education:**

1980                 B.B.A. Millsaps College; Magna Cum Laude;
                     Recipient – (1980) Else Business Scholarship
1981                 M.B.A. Millsaps College
1984                 J.D. University of Mississippi Law Center; Cum Laude;
                     Managing Editor, Mississippi Law Journal;
                     Phi Kappa Phi; Phi Delta Phi.

**Licensed:**        Mississippi (1984): all state and federal courts.
                     Texas (2016): all state courts.
                     United States District Court N.D. Texas.
                     United States District Court N.D. and S.D. Mississippi.
                     United States Supreme Court.
                     Fifth Circuit Court of Appeals.

**Professional Organizations:**

Mississippi State Bar
State Bar of Texas
Mississippi Association for Justice (formally MTLA; Mississippi Trial Lawyers Association); Former Past President 2001 – 2002
American Association for Justice (formally ATLA; American Trial Lawyers Association); Past-Trustee – Roscoe Pound
Magnolia Bar Association
Hinds County Bar Association

# EXHIBIT C

I. SHANE F. LANGSTON, Esq., Representative Class Action and Mass Tort Litigation History

Class Action - Page v. Blue Cross & Blue Shield of Mississippi, Cause No. 2:93-cv-00241-CWP, United States District Court, Southern District of Mississippi, Hattiesburg Division.

Class Action - Gatwood v. Blue Cross & Blue Shield of Mississippi, Cause No. 2:94-cv-00154-CWP, United States District Court, Southern District of Mississippi, Hattiesburg Division.

Mass Tort - Whitten v. GE Life and Annuity, Cause No. 2:04-cv-00321-KS-JMR, United States District Court, Southern District of Mississippi, Hattiesburg Division; Williams v. GE Life, Cause No. 3:04-cv-00779-HTW-JCS, United States District Court, Southern District of Mississippi, Jackson Division; Barranco v. GE Life, Cause No. 3:04-cv-00860-HTW-JCS, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort – Massey v. Equitable Life, Cause No. 3:02-cv-01639-TSL, United States District Court, Northern District of Mississippi; Ivy v. Equitable Life, Cause No. 4:02-cv-00423-TSL, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort – McGowan v. Mutual Life Ins. Co., Cause No. 3:03-cv-00182-HTW, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort – Hughley v. Money Life Ins. Co., Cause No. 3:03-cv-00297-TSL, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort – Ashcraft v. Money Group, Inc., Cause No. 3:04-cv-00255-TSL, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort – Avant v. Merck & Company, Inc., Cause No. 3:07-cv-00725-HTW-LRA, United States District Court, Southern District of Mississippi, Jackson Division.

Mass Tort: Shane F. Langston and his law firm have represented mass tort clients in claims against the following industries/manufacturers/defendants: asbestos; tobacco; pharmaceutical defendants including the manufacturers of Vioxx, Fen-Phen, etc.; medical product manufacturers including the manufacturers of transvaginal mesh; etc. In one such mass tort, Langston's law firm Langston

Frazier Sweet & Freese secured a $150 million trial verdict followed by a $400 million settlement of Fen-Phen claims against American Home Products.

*The above list is not exhaustive of Langston's experience and participation in class action and mass tort cases. Further, since her admission to the Mississippi Bar in 1999 Rebecca M. Langston, Esq., partner in Langston & Langston, has made significant contributions to all of the above listed mass tort cases.

II.      Langston & Langston Associate Attorney Jason Nabors, Esq., Class Action and Mass Tort History

Data breach case (Mid Delta/Pacificare litigation involving the theft of data, including social security numbers, concerning many elderly patients in Mississippi) - Aldridge, et al., v. Pacificare Life and Health Ins. Co., et al., CV2007-16 (Panola County, Miss.); Gooch et al., v. Pacificare Life and Health Ins. Co., et al., CV2007-0014 (DeSoto County, Miss.); Clark, et al., v. Pacificare Life and Health Ins. Co., et al., CV2006-188 (Tate County, Miss.); Donald, et al., v. Pacificare Life and Health Ins. Co., et al., CV2006-184 (DeSoto County, Miss.); Moore, et al., v. Pacificare Life and Health Ins. Co., et al., CV2006-142 (Panola County, Miss.).

COUNSEL OF RECORD IN THE FOLLOWING CERTIFIED CLASS ACTION CASES (FIRM APPOINTED AS LEAD CLASS COUNSEL):

IN RE: Jackson National Life Insurance Company Premium Litigation, MDL Docket No. 1122 (W.D. Mich); IN RE: UICI "Association-Group" Insurance Litigation, MDL Docket No. 1578 (N.D. Tex.); Florence R. Roberts, Individually and on Behalf of Others Similarly Situated. v. FFP Advisory Services, Inc., Civil Action No. 1:05-cv-38-D-D (N.D. Miss.).

PERFORMED COMMON BENEFIT WORK FOR PSC OR PEC IN THE FOLLOWING MDL CASES:

IN RE: Fresenius Granuflo / Naturalyte Dialysate Products Liability Litigation, MDL Docket No. 2428 (D. Mass.) (Mass Tort); IN RE: FedEx Ground Package System, Inc., Employment Practices Litigation, MDL Docket No. 1700 (N.D. IN);

IN RE: Jackson National Life Insurance Company Premium Litigation, MDL Docket No. 1122 (W.D. Mich); IN RE: UICI "Association-Group" Insurance Litigation, MDL Docket No. 1578 (N.D. Tex.).

OTHER MDL CASES WORKED ON, BUT NOT AS PART OF PSC OR PEC COMMON BENEFIT WORK:

IN RE: Zofran (Ondansetron) Products Liability Litigation, MDL Docket No. 2657 (D. Mass.); IN RE: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation MDL Docket No. 2326 (S.D. W.VA); IN RE: Ethicon, Inc., Pelvic Repair System Products Liability Litigation, MDL No. 2327 (S.D. W.VA); IN RE: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation, MDL Docket No. 2325 (S.D. W.VA); IN RE: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation, MDL Docket No. 2187 (S.D. W.VA); IN RE: Cook Medical, Inc., Pelvic Repair System Products Liability Litigation,  MDL Docket No. 2440 (S.D. W.VA); IN RE: Coloplast Corp. Pelvic Support Systems Products Liability Litigation, MDL Docket No. 2387 (S.D. W.VA); IN RE: Medtronic Defibrillator Litigation, MDL Docket No.1726 (D. Minn.).

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 1:17-md-2800-TWT |
| | ALL CASES |

## DECLARATION OF REBECCA M. LANGSTON

I, Rebecca M. Langston, declare under penalty of perjury pursuant to 28 USCA §1746 that the following is true and correct:

1. My law partner and husband, Shane F. Langston, Esq., and I are the sole shareholders of the law firm Langston & Langston, PLLC, with offices in Jackson, Mississippi and Southlake, Texas. This declaration is submitted in support of our Joint Application for appointment to the steering committee consistent with CMO 1 and 2.

2. I am a member in good standing and have been a member in good standing of the Mississippi Bar (Bar No. 99608) since 1999. I am a member in good standing and have been a member in good standing of the Washington D.C. Bar (D.C. Bar No. 475176) since the year 2000. Throughout my almost 19 years of law practice I have never been disciplined or admonished by any bar association or any court on any level.

3. I earned a double major in Business Administration and Business Management (with an emphasis in Human Resources and minor in English) from the University of Mississippi in 1995. In 1999 I was the first dual graduate from Mississippi College with a Masters in Business Administration (MBA) (Cum Laude) and JD (law degree). Upon graduation from law school I began practicing law with Langston Frazier Sweet & Freese in Jackson, Mississippi. I assisted with all class actions and mass tort cases in the law firm. In 2003, my husband Shane Langston, Esq., and I started our own law firm, Langston & Langston, PLLC. I am the managing partner and have overseen all mass tort projects.

4. Throughout my 19-year law practice I have focused on the representation of plaintiffs in personal injury and business litigation. This representation has included many mass tort cases. Among many other responsibilities in mass tory litigation, I was a member of the Discovery Committee in the Vioxx litigation.

5. Over two decades I have successfully participated in the prosecution of many mass tort cases. A non-exhaustive but representative list of such cases is attached to the Joint Application as Exhibit C.[1]

6. Additionally, for decades I have held leadership roles in various legal organizations including: President of the Mississippi Association of Justice ("MAJ")

---

[1] I contributed to and participated in the prosecution of all listed mass tort cases (and some not listed) since beginning my practice in 1999.

(formerly Mississippi Trial Lawyers Association) – 2010-11; Executive Committee and Board of Directors of MAJ – 2000 through present (longest standing member); Chair of Diversity Committee of Mississippi Bar – 2004-05; Board of Governors of American Association of Justice ("AAJ") (formerly American Trial Lawyers Association) – six years; Executive Committee of AAJ – four years; Chair of New Lawyers Division of AAJ (thousands of members) – 2007-08; Chair of Women's Caucus of AAJ (several thousand members) – 2014-15; President of Council of Presidents of AAJ (president of all 50 state presidents) – 2011-12; Chair-Elect of State Delegates of AAJ – 2018; Election Committee of AAJ – 2016 through present; Board of Governors of Western Trial Lawyers Association ("WTLA") – 2006 until present; President-Elect of WTLA – 2015; President of WTLA – 2016-17 (first female president); Board of Governors of Southern Trial Lawyers Association – 2014 through present. Additionally, I have presented papers and lectured on many occasions at legal organizations including the Western Trial Lawyers Ass'n, the Southern Trial Lawyers Ass'n, the Mississippi Association for Justice, the American Association of Justice, the Beli Society, Injury Lawyers Society, and the New Jersey Boardwalk Seminar.

7. Rule 23(g) of the Federal Rules of Civil Procedure notes that the court when appointing leadership counsel may consider "any other matter pertinent to counsel's ability to fairley and adequately represent the interests of the class." To this end, I

believe that my experience in representing *pro bono* multiple victims of the September 11, 2001 terrorist attacks; my *pro bono* leadership in representing children's interest as a Board of Director of Kids Matter (charity organization representing underprivileged children nationally and internationally); my *pro bono* participation on the Board of Directors of the Tarrant County, Texas Community Enrichment Center (charity organization helping victims of family violence, homelessness, and low-income families); and the Jackson Junior League

8. Addressing specifically the criteria noted in the subject CMO 1: a) I am willing and have the ability to commit to the very time-consuming process if chosen to serve on the steering committee for the subject Customer Data Security Breach multi-district litigation; b) I have the ability to work cooperatively with others; c) I am thoroughly familiar with the Manual for Complex Litigation and have educated myself in data security breach litigation by studying filings in other data security breach litigation (including Home Depot before this Court), reading literally dozens of security breach cases and legal publications, and attending a conference for plaintiff attorneys regarding the subject Equifax litigation;[2] and d) my law firm and I have access to sufficient resources to advance this litigation in a timely manner.

---

[2] My entire law firm, including my partner/husband Shane F. Langston, Esq., associate attorneys Jason Nabors, Esq., and Greta Kemp, Esq., and I attended the Harris Martin's Equifax Data Breach Litigation Conference in Atlanta, GA on November 9, 2017.

9. Relative to available "resources", one of my co-counsel representing the plaintiffs in the Texas filed class actions is Steve Maxwell, Esq., with the law firm of Bailey & Galyen ("B&G"). B&G includes approximately 40 lawyers spread over 16 offices throughout Texas and one office in San Francisco, California. Texas and California, where my co-counsel and I have offices, are likely the two states with greatest number of Equifax victims.

10. This Court's CMO 2 further referenced the "Class Counsel" criteria found in Fed. R. Civ. P. 23(g). Specifically, Rule 23(g)(1)(A)(i) provides that the court must consider "the work counsel has done in identifying and investigating potential claims in the action". I attest that my law firm and my co-counsel at B&G have devoted hundreds of hours identifying and investigating potential claims:

a. We currently represent approximately 2,000 individual customers who have been directly impacted by the Equifax data security breach;

b. We have employed contract legal assistants who have worked for months interviewing Equifax customers and gathering relevant documents and information regarding concrete damages and traceability; and

c. Four (4) of our lawyers traveled to Atlanta to educate ourselves on the Equifax data breach litigation.

11. My law firm and my co-counsel at B&G are committed in terms of resources, staff, time, and knowledge to assisting Lead Counsel and Liaison Counsel and

working cooperatively with fellow steering committee members to the competent and fair representation of the putative class members. Representing approximately 2,000 putative class members we are uniquely positioned to assist Leadership counsel in identifying potential subclasses, identifying potential class representatives within such classes, and overcoming Article III standing challenges by Equifax.

For these reasons, I request that the Court consider my appointment to the steering committee for the subject Equifax Customer Data Security Breach Litigation.

FURTHER AFFIANT SAYS NOT.

Rebecca M. Langston

SWORN TO AND SUBSCRIBED BEFORE ME, this the 28th, day of January, 2018.

STATE OF TEXAS
COUNTY OF TARRANT

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the state and county aforesaid, the within named, Rebecca M. Langston, who being first by me duly sworn stated on oath that the matters and facts set forth in the above and forgoing Affidavit are true and correct as therein stated.

DATED: January ___, 2018.

6



NOTARY PUBLIC

(SEAL)

7