**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| _____ | ) | MDL Docket No. 2800 |
| In re: Equifax, Inc. Customer | ) | Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation | ) | |
|  | ) | CONSUMER ACTIONS |
| _____ | ) | |

### The Susman Group's Joint Consumer Track Leadership Application

Pursuant to Case Management Order Nos. 1 and 2 (ECF Nos. 23 and 87) the Susman Group (identified below) jointly moves for their appointment to leadership positions (identified below) for the Consumer Track of plaintiffs. Hereinafter, these lawyers are collectively referred to as the "Susman Group":

**Lead Counsel**:  Stephen Susman of Susman Godfrey L.L.P.

**Liaison Counsel**:  W. Pitts Carr of Carr & Weatherby, LLP

**Steering Committee**: (1) Sherrie Savett of Berger & Montague, P.C.; (2) Steven Molo of MoloLamken, LLP; (3) Dianne Nast of NastLaw, LLC; (4) Charles Schaffer of Levin, Sedran & Berman; (5) Gary Mason of Whitfield Bryson & Mason, LLP; and (6) Jeffrey Goldenberg of Goldenberg Schneider, L.P.A. As has been the practice in several recent MDL proceedings, the appointments requested are of the named individual, not their law firms. Collectively, the lawyers in the Susman Group unanimously support this Joint Application.  In the

event that the Susman Group as constituted is not appointed, then certain of its members[1] are alternatively requesting consideration for leadership positions apart from the group and have filed individual applications.[2]

This is an extraordinary litigation and calls for the appointment of extraordinary lawyers. There are many worthy applicants, but the Susman Group respectfully submits that it is "best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2). The Susman Group includes many of the nation's preeminent class action lawyers with proven track records of successfully leading large and significant class actions (including data breach litigation), committing substantial time and resources, working cooperatively with others, and achieving exceptional results. The members of the Susman Group and their law firms collectively have hundreds of years of experience successfully representing plaintiffs in hundreds of class actions, including many data breach cases. The Susman Group is comprised of a unique combination of lawyers with deep

---

[1] Mr. Carr, Ms. Savett, Mr. Molo and Ms. Nast.

[2] Mr. Susman is seeking only to be appointed as Lead or Co-Lead Counsel and is willing to serve in that capacity with anyone else appointed by the Court to serve as a Co-Lead Counsel.

experience managing complex multidistrict litigation, negotiating effective class-wide relief, trying cases and handling appeals at the highest level. In support of this application, the Susman Group addresses below the criteria identified in Case Management Order No. 1 (ECF No. 23 at ¶6) and Fed. R. Civ. P. 23(g)(1)(A)&(B). Additionally, in support of this application, the Susman Group submits an Appendix that includes more information about these lawyers and their law firms and the experts they have retained. Further, the Susman Group has also prepared an attorneys' fee proposal which we believe is both conservative and closely aligns the interests of class counsel with the interests of the class.

## A.      The Criteria for Appointment.

Case Management Order No. 1 identifies the Court's four main criteria for appointment. The Susman Group satisfies each of these criteria.

1.      <u>Willingness and ability to commit to a time-consuming process</u>. The Susman Group fully recognizes that this litigation will be a time-consuming process and agrees to commit the time and resources needed to successfully prosecute the case. The Susman Group has already invested substantial time and resources in investigating plaintiffs' claims for relief, including hiring and consulting with experts in data security and breaches, conducting exhaustive searches of public records, researching potential causes of actions and defenses,

developing a Case Management Plan, drafting discovery requests, and developing a management protocol to efficiently and effectively manage this litigation. *See* §C.3 below and App. at 50. This work has and will continue to benefit the class. For example, the Susman Group's extensive legal research identified a new state-level statutory claim, not previously recognized, that entitles consumers with credit freezes in effect to seek substantial damages for the release of their credit information. The Susman Group also prepared and analyzed questionnaires sent to *all* plaintiffs' counsel seeking detailed information about their clients as well other vital information that was used in the Plaintiffs' Preliminary Report. The Susman Group has begun drafting a Consolidated Complaint to include these additional claims, and Group members have been retained by additional plaintiffs who have experienced actual identify theft.

2.   <u>Ability to work cooperatively with others</u>. The Susman Group also commits to work cooperatively with other counsel including lawyers representing the financial institutions and small businesses.[3] The Susman Group has

---

[3] The Susman Group agrees to coordinate with counsel for the small business plaintiffs to include their claims in a consolidated complaint without the need for establishing a third track of plaintiffs.

demonstrated that cooperative spirit in working with the other plaintiffs' lawyers to prepare the Preliminary Report and Case Management Order No. 2, as well as organizing and participating in conference calls with defendants' counsel.

3.   <u>Professional experience in this type of litigation</u>.  Collectively, the Susman Group has extensive, perhaps unparalleled, success in litigating complex class actions, multidistrict litigation and data breach cases.  For example:

**Lead Counsel:**  *Stephen Susman of Susman Godfrey L.L.P.*  Mr. Susman has been trying lawsuits for 50 years. In 2016, he was among six lawyers in the United States honored by the *American Lawyer* for his lifetime achievements as a trial lawyer and civil justice reformer. Forty years ago, he founded Susman Godfrey, the country's first commercial litigation boutique, specializing in representing plaintiffs on a contingent fee basis in complex business disputes, including class actions. In 1977, Mr. Susman was elected and then appointed Chairman of the Plaintiffs Steering Committee in the *Corrugated Container Antitrust Litigation*, one of the first class actions successfully tried to a jury verdict. In December 2017, Susman Godfrey was named "America's leading trial firm" by *Lawdragon*, one of America's most respected legal magazines. *See* App. at 1-7. The article says, "By any metric—whether it's money, U.S. Supreme Court clerks or bet-the-company cases—Susman Godfrey runs circles around everyone else." In 2017 and 2018, the

firm was also selected by *Law360* as one of the three plaintiffs' firms in the country having the best Class Action Practice Groups. *See* App. at 8-11. Ninety percent of the firm's attorneys served as federal judicial law clerks, including nine who clerked for Justices of the Supreme Court. Mr. Susman is currently serving as co-lead counsel in the *Pre-Filled Propane Tank Antitrust Litigation* (where he successfully obtained a decision for the class from the 8th Circuit sitting en banc) and in the *Processed Egg Products Antitrust Litigation* (where he was selected to be the lead trial counsel).

Because he was a pioneer in devising creative fee arrangements that compensate trial counsel for results rather than effort, Mr. Susman has devoted his career to eliminating unnecessary expense in litigating and trying cases. In the mid-1990s, as Chair of the Texas Supreme Court Discovery Advisory Committee, Mr. Susman was instrumental in the adoption of rules that limited discovery. In 1998, he was a member of the ABA's Task Force that wrote the original Civil Trial Practice Standards. Taking these efforts one step further, Mr. Susman has urged lawyers and courts to encourage the parties to agree upon their own rules to streamline trials and reduce expenses. He developed and maintains the website https://trialbyagreement.com/ that allows attorneys and judges to communicate about innovative discovery and trial protocols. He was a member of the Federal

Circuit's Committee on efficiently focusing e-discovery, and he co-chaired the trial committee of the Southern District of New York's task force to implement a pilot project for expediting civil jury trials.

Most recently, Mr. Susman has been on a crusade to save jury trials in civil cases. He acquired an understanding of the importance and value of our nation's jury trial system while serving as a law clerk to Justice Hugo Black, unquestionably the Supreme Court's most staunch defender of juries in modern times. Mr. Susman recently established The Civil Jury Project at NYU Law School. Mr. Susman is still trying cases while serving as the Executive Director of the Project. He is a frequent lecturer on trial advocacy at CLE programs around the country. And he often speaks about innovations designed to make jury trials less expensive and the presentation of cases more comprehensible to jurors. As lead counsel, Mr. Susman practices what he preaches: that there should be only one lawyer per litigation task; that in the courtroom or conference room, there is no need for observers; that plaintiffs' lawyers should be paid for results and not effort; and that young lawyers should be allowed to orally argue what they write and have speaking roles at trial (50% of Susman Godfrey lawyers had stand up roles at trials in 2017). He urges the consideration of the following videos that are part of his signature on all of his emails: https://www.susmangodfrey.com/why-us/ and Why

[You Should Want Susman Godfrey on Your Side (6 min. video)](). *See also* App. at 12-15 for a list of some of the firm's most significant class action cases and information on the other firm lawyers who will assist Mr. Susman.

**Liaison Counsel:** *W. Pitts Carr of Carr & Weatherby, LLP.* Mr. Carr has extensive experience handling complex and multi-district litigation, both within Georgia and nationally. He has served in leadership positions in cases that have resulted in a collective recovery of over $1 billion in value for the class members. He was selected as lead or liaison counsel in numerous cases, including co-liaison counsel and member of the Law and Briefing Committee for the Financial Track in *In re The Home Depot, Inc., Customer Data Security Beach Litig.*, No. 1:14-md-02583 (N.D. Ga.)(settlement value exceeds $25 million); lead counsel in *In re Defective Ballistic Police Vest Cases*, (various cases; settlement value exceeds $242.3 million); *Pounds v. Cobb Energy Mgmt. Corp.*, No. 07-1-9408-48 (Sup. Ct. Cobb County) (settlement value $120 million); *In re Blue Cross\Blue Shield of GA*, (Sup. Ct. Fulton County) (settlement value $119 million); and liaison counsel in *In re Domestic Air Transp. Antitrust Litig.*, 1:90-cv-2485 (N.D. Ga.) (settlement value $250 million). Mr. Carr has also served as lead or liaison counsel in an additional 26 significant complex cases, most of which were pending in this Court. *See* App. at 16-21. In addition to complex cases, Mr. Carr has been appointed to

other important leadership positions in the Georgia community, including Chairman of the Governor's Commission on Tort Reform, Chairman of the Board of Medical Assistance (now Community Services), member of the State Personnel Board, Board of Directors for the Georgia Dept. of Human Resources, and to the legal committee coordinating the joint litigation related to the Affordable Care Act. Further details about Mr. Carr's qualifications are in his separate application.

**Steering Committee:** *(1) Sherrie Savett of Berger & Montague, P.C.* Ms. Savett is the Chairwoman of Berger & Montague ("B&M"), a 62-lawyer firm dedicated to complex plaintiffs' litigation on behalf of consumer, investor, and business clients. *Philadelphia Magazine* named her a "Pennsylvania Top 50 Female SuperLawyer" from 2004 to 2009, as well as a *SuperLawyer* each year for more than a decade. In 11 of the past 15 years, *The National Law Journal* named B&M to its "Hot List" of top plaintiffs' law firms and appointed the firm to its prestigious "Hall of Fame," highlighting many of the cases led by Ms. Savett.

Ms. Savett has significant data breach experience. She served as co-lead counsel in the first major data breach case, *In re TJX Cos. Retail Security Breach Litig.*, No. 07-cv-10162 (D. Mass.), where hackers stole 45 million credit card numbers and 455,000 driver's license numbers. The case settled for benefits valued at over $200 million, including credit monitoring and identity theft insurance, a

fund to reimburse out of pocket costs and lost time to mitigate or correct actual or potential identity theft, and injunctive relief. Those elements became the template for many subsequent data breach settlements.

Ms. Savett currently serves on the Executive Committee in *In re Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.). There, hackers stole 15 million Social Security numbers and related personal information from a credit reporting agency. The case involves many of the same facts, legal claims, damages theories, and defenses as *Equifax*. Ms. Savett was also involved in several other data breach cases, including *Countrywide, Heartland, Anthem, Medical Informatics,* and *Hannaford. See* Savett application for further details.

Ms. Savett was also appointed to serve as co-lead counsel in two prior securities fraud class actions in this District. *Carley Capital Grp. v. Deloitte & Touche LLP*, No. 97-cv-03183 (settled for $24 million in 2000); *In re ValuJet, Inc. Secs. Litig.*, No. 96-cv-01355 (settled for $5 million in 2000). She successfully argued the motions to dismiss in both cases.[4]  Further details about Ms. Savett's qualifications are in her separate application.

---

[4] *Carley Capital*, 27 F. Supp. 2d 1324; *ValueJet,* 984 F. Supp. 1472.

*(2) Steven Molo of MoloLamken, LLP.*  Steven Molo is a founding partner of MoloLamken LLP, a national complex litigation boutique which *Benchmark Litigation* recently shortlisted for its 2018 Boutique Law Firm of the Year.  Mr. Molo leads a team of smart, accomplished trial and appellate advocates with years of experience that has achieved victories totaling billions of dollars. Mr. Molo regularly tries civil and criminal cases before judges and juries throughout the country. He has been widely praised including being named as one of the top 100 Trial Lawyers in America by *Benchmark Litigation* which called him "an outstanding advocate and fearless in court." For the past eight years, Mr. Molo has been named to *Lawdragon*'s list of the 500 Leading Lawyers in America.  He has also been recognized by *Super Lawyers*, *The Best Lawyers in America*, *Chambers USA*, *Euromoney*, and *Legal 500*, which includes him on its elite list of Leading Trial Lawyers. *Chambers* called Mr. Molo "fantastic in the courtroom," a "fabulous courtroom litigator who lights up the room with his presence," and "one of the most talented lawyers in [New York] city."

Mr. Molo and his firm have a proven record of achieving success for class plaintiffs.  His recent experience includes serving as lead counsel for the objectors in the landmark *In re National Football League Players Concussion Injury Litig.*, Nos. 2-12-md-02323, 2-14-cv-00029 (E.D. Pa.), where he secured numerous

improvements, increasing the settlement to the class by approximately $120 million. The firm also recently won a major appellate victory, reinstating a class action based on statements in Alibaba Group's initial public offering – the largest IPO in history. *See Christine Asia Co. Ltd. v. Ma*, --- F. App'x ---, 2017 WL 6003340 (2d Cir. Dec. 5, 2017).  MoloLamken also recently successfully defended a nearly $50 million jury verdict for defrauded class members before the Second Circuit in *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). Among the many resources MoloLamken will provide is one of the nation's premier issues and appeals practices led by Supreme Court advocate Jeffrey Lamken. Further details about Mr. Molo's qualifications are in his separate application.

(3) ***Dianne Nast of NastLaw, LLC.*** Dianne Nast has over 40 years of experience in complex and class action litigation throughout the United States. Currently, Ms. Nast serves as the sole lead and liaison counsel for the Direct Purchaser Plaintiffs in the *Generic Pharm. Pricing Antitrust Litig.* (E.D. Pa.), one of the largest MDLs in the country.  She is a member of the Executive Committees in *General Motors LLC Ignition Switch Litig.* (S.D.N.Y.) and *Effexor XR Antitrust Litig.* (D.N.J.) and on the Plaintiffs' Steering Committee in the *Avandia Litig.* (E.D. Pa.) where she serves as the Federal-State Liaison and Chair of the Policy and Fee Committees. Ms. Nast has also served as the sole lead counsel in both the

Page 12

*Wellbutin SR Direct Purchaser Antitrust Litig.* (E.D. Pa.) and in *Augmentin Antitrust Litig.* (E.D. Va.), as well as co-lead counsel in *Airlines Trans. Antitrust Litig.* (N.D.Ga.), *Paxil Antitrust Litig.* (E.D. Pa.) and *Nifedipine Antitrust Litig.* (D.D.C.).

Ms. Nast was appointed by then Chief Justice William H. Rehnquist to the Board of Directors of the Federal Judicial Center Foundation, where she served for ten years, including five years as its Chair. The late Judge Edward Becker, then Chief Judge of the Third Circuit, appointed Ms. Nast to serve on the Third Circuit's Task Force on Selection of Class Counsel which issued a report, *Selection of Class Counsel*, 208 F.R.D. 340 (2002), that has been cited over 100 times in court opinions. Ms. Nast was selected by The American Law Institute to serve as an advisor to the ALI's Principles of the Law of Aggregate Litigation project. Ms. Nast is a member of the American Bar Association Litigation Section, where she served on the Task Force on State Justice Initiatives and on its Committee on Counsel Fees, the Task Force on the Justice System and the Task Force on Strategic Planning. She co-chaired the Section's Committee on International Associations, served on the Section's Council, as a Section Division Director, and co-chaired the Section's Antitrust Committee.

The *National Law Journal* selected Ms. Nast as one of the nation's top 50 women litigators. She was also selected by *Philadelphia Magazine* as one of Pennsylvania's Top Fifty Women Lawyers and as one of Philadelphia's Best Complex Litigation Lawyers. She appears in numerous *Who's Who* publications, holds a Martindale-Hubbell AV rating, was included in *The Best Lawyers in America* in each edition since 2003, and was selected for *Chambers USA*. Further details about Ms. Nast's qualifications are in her separate application.

*(4) Charles Schaffer of Levin, Sedran & Berman*. Mr. Schaffer is a nationally-recognized leader in complex litigation, having been appointed to leadership positions in numerous class actions across the country. He is widely recognized for his ability to lead complex litigation. Through smart, efficient, and strategic problem solving, Mr. Schaffer and his firm have accomplished outstanding global and class settlements of billions of dollars while minimizing costs and maximizing value. For example, Mr. Schaffer was instrumental in bringing about settlements in *In re CertainTeed Corporation Roofing Shingles Product Liability Litig*, MDL No. 1817 (E.D. Pa.) (settlement value of $815 million); *In re CertainTeed Fiber Cement Siding Litig.,* MDL 2270 (E.D. Pa.) (settlement value of $103.9 million); and *Pollard v. Remington Arms Co.,* No. 4:13-CV-00086-ODS (W.D.MO.) (settlement value of $97 million). Mr. Schaffer

and his firm also have experience in data breach cases, including serving as a member of the Executive Committee in *In re Target Corp. Cust. Data Security Breach Litig.,* MDL 2522 (D. Minn.) (settlement value of $39 million for plaintiff financial institutions), where they were instrumental in conducting discovery establishing the proper standard of care and calculation of damages to all victims. Mr. Shaffer and his firm are currently serving in leadership in other data breach cases including as co-lead counsel in *Green v. Accolade, Inc.,* (E.D.Pa.)(where an employer disclosed  employees' information), lead counsel in *Bryd v. Aaron's Inc.,* No. 11-101 (W.D. Pa.) and *Peterson v. Aaron's,* No. 1-14-cv-1919 (N.D. Ga.)(where defendant placed spyware on rental computers), and on the Executive Committee in *In re Carrier IQ, Inc., Consumer Privacy Litig.,* No. 12-md-1330 (N.D. Cal.) (where defendant placed software on mobile devices). Mr. Schaffer has also represented victims of fraud or unfair trade practices including as lead counsel in *In re JP Morgan Modification Litig.*, MDL No. 2290 (D.C. Mass.) where he was involved in all phases of the litigation that resulted in a nationwide settlement with an estimated value of $506 million.

Mr. Schaffer has a LLM in Trial Advocacy, has successfully tried scores of cases, and has extensive experience prosecuting actions involving products liability, medical negligence and drug/medical devices. Mr. Schaffer maintains a

Martindale-Hubbell AV rating and is consistently recognized as a *SuperLawyer*. *See also* App. at 22-25 for further information about Mr. Schaffer and his firm.

(5) *Gary Mason of Whitfield Bryson & Mason, LLP.* For 28 years, Mr. Mason has devoted his practice exclusively to class actions with an emphasis on consumer fraud in a variety of contexts including data security breaches. Mr. Mason served as co-lead counsel in *In re Dept. of Veterans Affairs Data Theft Litig.*, No. 1:06-mc-00506 (D.D.C.) (unlawful disclosure of information of 28.5 million military veterans and active duty personnel) and lead counsel in *In re Google Buzz Privacy Litig.*, No.10-00672 (N.D. Cal)  Currently, Mr. Mason serves as interim liaison counsel in *In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.*, No. 1:15-cv-01394 (D.D.C.). Recognized as an expert in data breach cases, Mr. Mason Co-Chaired a recent Harris Martin conference on the *Equifax* case, where he also presented along with Ms. Savett and Ms. Nast. Mr. Mason has also served as lead, co-lead or class counsel in dozens of class actions ranging from environmental incidents to defective construction materials. *See also* App. at 26-28 for further information about Mr. Mason and his firm.

(6) *Jeffrey Goldenberg of Goldenberg Schneider, L.P.A.*  Mr. Goldenberg has successfully litigated data breach incidents for more than a decade. He filed the first nationwide class action on behalf of 28.5 million military personnel whose

private personal information was unlawfully removed by a Veterans Affairs employee and later stolen. *In re Dept. of Veterans Affairs Data Theft Litig.*, No. 1:06-mc-00506 (D.D.C.). As a co-lead counsel, Mr. Goldenberg successfully settled that case for $20 million which provided reimbursements for out-of-pocket expenses with the remaining funds paid to cy pres recipients. To date, the $20 million recovery remains one of the largest cash settlements in a data breach case.

As co-lead counsel, Mr. Goldenberg also initiated and quickly settled a case against the Ohio Secretary of State seeking to end the internet publication of personally identifiable information of tens of thousands of individuals on a website maintained by the Secretary of State. *Estep v. J. Kenneth Blackwell, Ohio Secretary of State,* No. 1:06-cv-106 (S.D. Ohio) (Case resolved four days after TRO hearing with remedial measures and new procedures to prevent future publication).  Mr. Goldenberg also participated in the filing of the first nationwide class action against Google for violating the Federal wiretap Act.  The complaint alleged that Google routinely used its Google Street View vehicles (equipped with special hardware and software equipment known as "snoopers" and "sniffers") to illegally intercept and record electronic communications transmitted over wireless networks. The litigation was groundbreaking in applying the Federal wiretap Act to wireless communications. *In re Google Inc. Street View Elec. Communications*

*Litig.,* No. 3:10-md-02184 (N.D. Cal.). This litigation is pending, but both the trial court and the Ninth Circuit have rejected Google's attempts to dismiss the case. *See also* App. at 29-33 for further information about Mr. Goldenberg and his firm.

4.      Access to sufficient resources to advance the litigation in a timely manner. The Susman Group has sufficient resources to prosecute this litigation. The Susman Group has already set up a litigation fund among its members to pay joint expenses, including the expenses incurred in retaining several prominent experts. These firms have committed to contribute additional funds as necessary.

**B.      Benefits to the Class and the Fee.**

The Susman Group intends to seek the following benefits for the class: (1) credit monitoring and identity theft insurance beyond the one-year period already offered (which will include adequate tools to identify and remedy actual or attempted identity theft); (2) a cash fund to reimburse out-of-pocket losses and compensate for time incurred responding to the breach; and (3) injunctive relief providing enhanced data security measures. These benefits are consistent with settlements in other similar cases. A chart of ten large sample data breach settlements is attached. *See* App. at 34-40.  We will however remain flexible and open to seeking other benefits as more details about the Equifax breach and resulting harm emerge.

If we are appointed to lead the Consumer Track plaintiffs, we would also agree not to apply for a fee that exceeds: (1) 2% of the value of credit monitoring services *actually distributed* to class members; and (2) 15% of any cash fund established to compensate class members. This structure can be used by the Court as a baseline and, considering other factors such as injunctive relief or the length of the proceedings, the Court can exercise its discretion to increase or decrease any fee award. This structure is conservative relative to other data breach cases but we are collectively willing to agree in advance to this proposal because of the management protocols we plan to implement to efficiently conduct this litigation.[5] *See* §C.3. below.

In 7 of the 10 data breach settlements we analyzed, credit monitoring was provided. *See* App. at 34-40. In two cases, the fee award was based on services actually distributed but there the awards ranged from 50-53%. *Id.* (*Countrywide, Certegy*). Fee awards in the other credit monitoring settlements were made based on services offered or the bulk price paid for group coverage irrespective of claims

---

[5] This fee proposal is made in light of the history of past data breach litigation and the unique vast size of the class in the case which includes nearly one-half of the population of the United States.

rates. *Id*. (*Anthem, Home Depot, St. Josephs, TJX, Michael's*). Our distribution-based fee proposal better aligns class counsel's interests with the interests of the class.  Similarly, 15% of the cash fund is also conservative. Courts in this Circuit and elsewhere have used a 25% benchmark. *See, e.g., Flournoy v. Honeywell Int'l, Inc*., No. 205-184, 2007 WL 1087279, at *1 (S.D. Ga. Apr. 6, 2007) ("In this Circuit, the appropriate standard for fee awards in common fund cases is a percentage of the fund established for the benefit of the class, with the benchmark fee award being twenty-five percent of the fund.") (citation omitted). The injunctive relief we would seek would likely include improvements to Equifax's data security systems, annual audits by an independent consultant and corporate governance changes to improve senior management's oversight of data security.

**C.     Additional Criteria to be Considered.**

1.     <u>The Work Done</u>. Rule 23(g) provides that in appointing class counsel, the court must also consider "the work counsel has done" and "counsel's knowledge of applicable law."  Fed. R. Civ. P. 23(g)(1)(A)(i)&(iii).  In addition to the work described in §A.1. above, the Susman Group also worked to identify, recruit, and retain some of the world's leading experts including:

***Lukasz Lenart***, Lead Developer of Apache Struts, the software exploited by criminals after Equifax failed to timely apply a "patch."  *See* Lenart's resume, App.

at 41-42. Since 2011, Mr. Lenart has been the Lead Developer of the Apache Software Foundation, a volunteer collective that created and maintains the Apache Struts software. As Lead Developer, Mr. Lenart is uniquely qualified to explain the underlying code, the security flaw in the code, the patch created, and the manner by which criminals were able to take advantage of Equifax's vulnerabilities.

**Stephen Slater, Ph.D.**, Founder and CEO, Security Compliance Corporation, providing security consulting services to large businesses. *See* Slater's resume, App. at 43. Dr. Slater holds elite industry certifications (CISSP and SANS GPEN) and he also authored materials used in an advanced class on security web software, offered by SANS Institute. Dr. Slater is ideally suited to opine on the industry standard of care for companies like Equifax that are entrusted with personal identifiable information, and to explain how Equifax's conduct failed to meet that standard.

**Anna Winningham**, Executive Vice President, Risk Control Strategies, providing security consulting services. *See* Winningham's resume, App. at 44. A former Special Agent for the FBI, Ms. Winningham provided an expert report for the plaintiffs in the *Anthem* data breach litigation, focusing on the ways in which criminals sell consumers' information on the "dark web." *See* Dkt. 720-26, *In re Anthem, Inc., Data Breach Litig.*, No. 15-md-02617, (N.D. Cal.). Ms. Winningham

has already begun work for the Susman Group in identifying Equifax's failures to prepare for, and respond to, criminals' hacking.

**Steven Weisman**, Author of "Identity Theft Alert" and "www.scamicide.com," Mr. Weisman is a noted author and speaker about the damages caused to individuals by identity theft. *See* Weisman's resume, App. 45.

**Robert Zeidman**, Founder and President, Zeidman Consulting, providing software forensics services. *See* Zeidman's resume, App. at 47. Mr. Zeidman is a pioneering leader in the field of software forensics, having created software correlation algorithms and defined processes for analyzing code. For more than 30 years, he has provided consulting services in over 200 high-tech litigations. Mr. Zeidman and his team will assist Mr. Lenart and Mr. Slater with code analysis.

2.      <u>Knowledge of Applicable Law</u>. The Susman Group's knowledge of the applicable law is demonstrated by the collective work by the Group's members in other significant data breach cases including *In re Experian Data Breach Litig,*. No. 15-cv-01592 (C.D. Cal.); *In re Anthem Data Breach Litig.*, No. 15-MD-02617 (N. D. Cal.); *In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.*, No. 1:15-cv-01394 (D.D.C.); *In re The Home Depot. Data Security Breach Litig.*, No. 14-md-02583 (N.D. Ga.); *In re Google Inc. Street View Elec. Communications Litig.,* No. 3:10-md-02184 (N.D. Cal); *In re Google Buzz Privacy Litig.*, No.10-

00672 (N.D. Cal); *In re Heartland Payment Sys. Data Security Breach Litig.*, No. 09-MD-2046 (S.D. Tex.); *In re Countrywide Fin. Corp. Data Security Breach Litig.*, No. 08-MD-01998 (W.D. Ky); *In re TJX Cos. Retail Security Breach Litig.*, No. 07-cv-10162 (D. Mass.); *In re Dept. of Veterans Affairs Data Theft Litig.,* No. 06-mc-00506 (D.D.C.); and, *Estep v. J. Kenneth Blackwell, Ohio Secretary of State,* No. 06-cv-106 (S.D. Ohio).

The Susman Group has also retained, as co-counsel, Professor Anita Allen, J.D., Ph.D. *See* Allen's resume, App. at 48-49. Dr. Allen is the Vice Provost for Faculty, and the Henry R. Silverman Professor of Law and Philosophy, at the University of Pennsylvania. Dr. Allen has taught and written extensively in the field of privacy and data protection, and she is the co-author of a leading textbook on these subjects: *Privacy Law and Society* (Thompson/West 3d. ed. 2016).  Dr. Allen's unsurpassed academic credentials complement the Susman Group's extraordinary knowledge and practical experience in litigating complex cases like this one.

Finally, the Susman Group is also unique in its collective expertise in managing complex class actions.  And, members of the Susman Group include lawyers among the very few in the country that has experience actually trying complex class action cases.

3.    <u>The Management Protocols</u>. Fed. R. Civ. P. 23(g)(1)(B) allows this Court to consider any other matter pertinent to counsel's ability to represent the interests of the class. The Susman Group asks the Court to consider the following case management below protocols that are designed to promote the best work for the least expense to the class. *See also* Manual for Complex Litig. (Fourth)(2009) §10.22.  These protocols are:  (i) Lead and Liaison counsel will personally manage the litigation, handle any outcome determinative hearings and serve as lead trial counsel. These tasks will not be delegated to others in their firms. Disagreements among lead and liaison counsel will be resolved by a simple majority vote of the Steering Committee. (ii) Absent special circumstances, only one lawyer will be assigned per litigation task. (iii) All counsel will be required to keep daily records of their time and expenses incurred. (iv) All counsel will report on a monthly basis their time and expenses to lead and liaison counsel who will make such reports available to the Steering Committee upon request. (v) Any counsel who fails to provide detailed summaries of their time and expenses within 60 days of the month in which the time was incurred may forfeit their right to receive compensation for that time. (vi) If requested by the Court, Lead and Liaison counsel will provide reports *in camera*, including a summary of time and expenses to date. (vii) Subject to the approval of the Court, Lead and Liaison counsel will agree at the start of the

Page 24

case to an approach (or method) to allocating any award of attorney fees so that no firm in the leadership group will have any incentive to perform unnecessary work. (viii) The part of any fee allocated to counsel not in leadership will be based upon the hours worked, the quality of the work performed, and their contributions to the case, but no one will be paid for work not specifically assigned in writing by Lead Counsel or time spent in attending court hearings or depositions by attorneys who do not speak unless Lead Counsel authorize their attendance in advance as being necessary to assist the attorneys who do speak.

## Conclusion

The Susman Group requests that the Court appoint its members to the leadership positions identified in this application and also as interim class counsel to "act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Members of the Susman Group have been hired by the world's most sophisticated corporations to handle their complex commercial cases. Courts handling complex class actions have also chosen the members of the Susman Group to lead the plaintiffs' classes. The consumer class here deserves no less.

Dated:  February 2, 2018
Atlanta, Georgia

W. Pitts Carr
CARR & WEATHERBY LLP
4200 Northside Pkwy NW, Building 10
Atlanta, GA 30327
Tel.: (404) 442-9000
Fax: (404) 442-9700
pcarr@wpcarr.com

Steven F. Molo
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
Fax: (212) 607-8161
smolo@mololamken.com

Dianne Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel.: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
CSchaffer@lfsblaw.com

Respectfully submitted,

/s/  Stephen D. Susman
Stephen D. Susman
SUSMAN GODFREY L.L.P.
1000 Louisiana Suite 5100
Houston, TX 77002
Tel.: (713) 651-9366
Fax: (212) 336-8340
ssusman@susmangodfrey.com

Sherrie Savett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3071
Fax: (215) 875-5715
ssavett@bm.net

Jeffrey Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel.: (513) 345-8291
Fax: (513) 345-8294
JGoldenberg@gs-legal.com

Gary E. Mason
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
Tel.: (202) 429-2290
Fax: (202) 429-2294
gmason@wbmllp.com

## CERTIFICATE OF COMPLIANCE WITH RULE 5.1(B)

I hereby certify that, pursuant to Local Rule 5.1, the foregoing Application was prepared in accordance with LR 5.1(B). Specifically, the application was prepared in Times New Roman 14 point font, double-spaced, with a top margin of 1.5 inches and all other margins of 1 inch.

/s/ Ophelia F. Camiña
Ophelia F. Camiña
SUSMAN GODFREY L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Application was filed via the Court's CM/ECF system which automatically sends notice to all participating counsel.

/s/ Ophelia F. Camiña
Ophelia F. Camiña
SUSMAN GODFREY L.L.P.
