**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

            )

In re: Equifax, Inc. Customer  )

Data Security Breach Litigation  )

_____)

MDL Docket No. 2800

No.: 1:17-md-2800-TWT

THIS FILING RELATES TO:
CONSUMER ACTIONS

**APPLICATION OF SHERRIE SAVETT OF BERGER & MONTAGUE, P.C.
FOR APPOINTMENT TO LEADERSHIP OF CONSUMER TRACK**

Sherrie Savett of Berger & Montague, P.C. ("B&M") respectfully requests appointment to the leadership team in the Consumer Track pursuant to Case Management Order No. 1 (Dkt. 23 ¶ 6), Case Management Order No. 2 (Dkt. 87 ¶ 4), and Fed. R. Civ. P. 23(g).  Ms. Savett supports the separately filed application of the Susman Godfrey group ("Susman Group"), in which she is a proposed Steering Committee member.  In the event the Susman Group is not appointed to lead the consumer track, Ms. Savett seeks appointment as a Lead Counsel, or a member of the Steering Committee.  She would be happy to work with any other counsel the Court appoints to leadership positions.

Ms. Savett is counsel for Plaintiffs Joseph Clark, Meghan Clark, and Ruth Reyes in *Clark et al. v. Equifax Inc*., No. 17-cv-03497-TWT (N.D. Ga.).

## I.    INTRODUCTION

Ms. Savett is the Chairwoman of B&M, a sixty-two lawyer firm dedicated to complex plaintiffs' litigation on behalf of consumer, investor, and business clients. She is the first woman to hold the chair position in the firm's 48 year history.  She has served on the firm's Executive Committee for decades.  Ms. Savett joined B&M in 1975 and is widely known as one of the leading lawyers in the class action bar.  She has received countless honors and awards throughout her career. She was named a "Pennsylvania Top 50 Female Super Lawyer" from 2004 through

1

2009 by Philadelphia Magazine, and has been named a Super Lawyer every year for more than a decade.  In 2008, she was named by Lawdragon as one of the 500 leading lawyers in America.  She has served as Lead or Co-Lead Counsel in dozens of class actions that settled for tens or hundreds of millions of dollars.  She is active in community affairs, and recently served a three year term as President of The Jewish Federation of Greater Philadelphia.  In addition to her vast experience, she would add gender diversity to the *Equifax* leadership team.

The National Law Journal named B&M to its "Hot List" of top plaintiffs' firms thirteen times in the past fifteen years, and appointed B&M to its prestigious "Hall of Fame" while highlighting many cases led by Ms. Savett in its case selections.  *See* Exhibit 1.

B&M exists to serve as Lead Counsel in cases such as *Equifax*.  The firm's attorneys work tirelessly to protect the interests of the plaintiffs and classes it represents.  B&M's attorneys think outside the box when necessary, and craft practical solutions to complex problems.  The firm aims to make life easier for the Court and parties.  Most of B&M's attorneys have been with the firm for the majority of their careers, spanning in many instances 30 or 40 years, and they are regularly appointed to leadership positions in the largest and most complex cases. B&M is committed to the cause of class representation, and its lawyers and staff

are passionate about bringing meaningful results to the classes we represent.

**A.      Professional Experience in This Type of Litigation.**

Ms. Savett has personally been involved in many data breach class actions over the past decade, often in leadership roles.

1. ***In re TJX Cos. Retail Security Breach Litig.*, MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.) (Young, J.).**  Ms. Savett was Co-Lead Counsel in this landmark data breach case.  *TJX* was the first major data breach class action, and it resulted in one of the largest data breach settlements to date.  Hackers stole 45 million credit and debit card numbers and 455,000 driver's license numbers, which in many instances matched Social Security numbers.  The breach was the then-largest theft of consumer data in U.S. history.  Ms. Savett obtained a settlement valued at over $200 million, including: (i) two years of credit monitoring and identity theft insurance made available to the 455,000 individuals whose driver's license numbers were exposed; (ii) a $17 million fund made available to 45 million individuals to reimburse out of pocket costs and lost time to mitigate or correct an actual or potential identity theft; and (iii) injunctive relief regarding improvements to TJX's data security systems, including an independent expert evaluation.

3

Those elements became the template for most subsequent data breach settlements.  The settlement established the principle that time spent trying to mitigate and rectify potential or actual identity theft could be compensated.  In approving the settlement, former Chief Judge William Young praised the result as an "**excellent settlement**" containing "**innovative**" and "**groundbreaking**" elements.[1]

2. ***In re Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.) (Guilford, J.).**  Ms. Savett serves on the Executive Committee.  Hackers stole 15 million Social Security numbers and related personal information from a credit reporting agency.  The case is virtually identical to *Equifax*, involving many of the same legal claims (including the Fair Credit Reporting Act), factual issues, damages theories, and defenses.  Plaintiffs largely prevailed on the motion to dismiss.  *In re Experian Data Breach Litig.*, No. 15-cv-01592, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016).  The case is now in discovery.

---

[1] *In re: TJX Cos. Retail Security Breach Litig.*, 584 F. Supp. 2d 395, 399 n.6 (D. Mass. 2008) (order approving attorneys' fees) (emphasis added); *In re: TJX*, No. 07-cv-10162-WGY, Dkt. #297 at 6:12 (D. Mass. Sept. 27, 2007) (transcript of preliminary settlement approval hearing) (emphasis added).

3. ***In re Countrywide Fin'l. Corp. Customer Data Security Breach Litig.*,
   MDL 1998, No. 08-MD-01998-TBR (W.D. Ky.).**  Ms. Savett served on
   the Executive Committee.  A Countrywide employee was arrested for
   stealing and selling Countrywide customers' Social Security numbers,
   bank account information, and other sensitive data.  The case settled for
   benefits including 2 years of credit monitoring offered to 1.9 million
   individuals, a $6.5 million cash fund to reimburse out-of-pocket losses
   for 17 million individuals, and injunctive relief.  *In re Countrywide
   Financial Corp. Customer Data Security Breach Litig.*, No. 08-MD-
   01998-TBR, 2010 WL 3341200, at *9 (W.D. Ky. Aug. 23, 2010).

4. ***In re: Heartland Payment Systems, Inc. Customer Data Security
   Breach Litig.*, MDL 2046, No. 09-MD-2046 (S.D. Tex.).**  Ms. Savett
   served on the Steering Committee.  Hackers stole more than 100 million
   credit and debit card numbers from a large credit card processor.  The
   case settled for a cash fund to reimburse out-of-pocket costs, and
   injunctive relief.  *In re Heartland Payment Systems, Inc. Customer Data
   Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1049 (S.D. Tex. 2012).

5.  ***In re: Anthem, Inc. Data Breach Litig*., MDL 2617, No. 15-MD-02617 (N.D. Cal.).**  Ms. Savett and B&M assist Lead Counsel.  Hackers stole 80 million insureds' personal information including Social Security numbers and related information.  Ms. Savett's client is a Named Plaintiff on the Consolidated Complaint.  B&M assisted with discovery, defended its client's deposition, and participated in other facets of the litigation.  A $115 million settlement is pending.

6.  ***In re: Medical Informatics Engineering, Inc. Customer Data Security Breach Litig*., MDL 2667, No. 15-md-02667 (N.D. Ind.).**  Ms. Savett and B&M assist Lead Counsel.  Hackers stole medical and personal information for 4 million individuals from a medical records company.  Ms. Savett represents multiple Named Plaintiffs on the Consolidated Complaint.  B&M assists with various facets of the litigation.  The case is ongoing.

7.  ***In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., MDL 1954, No. 08-md-01954 (D. Me.).**  Ms. Savett served in a supporting capacity where her client was a Named Plaintiff on the Consolidated Complaint.  The data breach involved the theft of 4 million credit and debit card numbers from a grocery store chain.  B&M assisted lead

counsel with dispositive briefing and defending B&M's client's deposition. Groundbreaking appellate law was established recognizing damages for out-of-pocket credit monitoring costs and replacement credit card fees. *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 167 (1st Cir. 2011). The First Circuit ruling serves as often-cited precedent in data breach litigation.

Ms. Savett's colleagues at B&M recently settled *Beckett v. Aetna, Inc*., No. 17-cv-03864 (E.D. Pa.), a case involving public disclosure of HIV information. Aetna mailed letters to 12,000 insureds with the insureds' HIV medication information visible through a large transparent window on the envelope. The HIV information was accessible to third parties such as family members, roommates, neighbors, and mail carriers. The case settled shortly after it was filed, resulting in a non-reversionary $17 million common fund. Each class member will receive an automatic payment of $500 without being required to fill out a claim form, and class members will also be allowed to submit a claim for up to $20,000 for financial and/or non-financial harm resulting from the disclosure. Settlement approval is pending.[2]

---

[2] *See Beckett v. Aetna, Inc*., No. 17-cv-03864, Dkt. #50-2 at pg. 1-2, 12-14 (E.D. Pa.) (preliminary approval brief).

Through these cases, Ms. Savett and B&M have developed valuable insights regarding the merits and practicalities of data breach litigation.

Beyond data breach litigation, Ms. Savett and B&M have specialized in class action litigation for decades.  B&M pioneered the use of class actions in this country, first in antitrust and securities cases, and later in other areas including consumer protection litigation.  Ms. Savett has written extensively about class action litigation, has had many articles published, and has served on many professional panels.  *See* Exhibit 2 (firm biography).

Ms. Savett's successful representation as Lead or Co-Lead Counsel in many large-scale securities fraud class actions supports her appointment as Lead Counsel here.  At one time, Ms. Savett led 8 of the largest 100 securities class action cases ever settled in the U.S.  Notable cases in which she was Lead or Co-Lead Counsel include *In re Rite Aid Corp. Secs. Litig.*, MDL No. 1360, No. 99-cv-1349 (E.D. Pa.) (**$334 million** settlement); *In re Waste Management, Inc. Secs. Litig.*, No. 97-cv-7709 (N.D. Ill.) (**$220 million** settlement); *In re Fleming Cos. Secs. Litig.*, MDL No. 1530, No. 03-md-01530 (E.D. Tex.) (**$94 million** settlement); *In re Cigna Corp. Secs. Litig.*, No. 02-cv-8088 (E.D. Pa.) (**$93 million** settlement); *Oppenheimer Rochester Funds Group Sec. Litig.*, MDL No. 2063, No. 09-md-02063 (D. Colo.) (**$89.5 million** settlement); *In re: Alcatel Secs. Litig.*, No. 99-cv-

01263 (E.D. Tex.) (**$75 million** settlement); and *In re: Sotheby's Holdings, Inc. Secs. Litig.*, No. 00-cv-01041 (S.D.N.Y.) (**$70 million** settlement).

Ms. Savett was Co-Lead Counsel in two securities fraud class actions before Your Honor, both of which resulted in highly favorable settlements for the class. *Carley Capital Group v. Deloitte & Touche LLP*, No. 97-cv-03183-TWT (N.D. Ga.) (case on behalf of Medaphis shareholders, settled for $24 million against auditor in 2000 after surviving motion to dismiss and conducting substantial discovery);[3] *In re: ValuJet, Inc. Secs. Litig.*, No. 96-cv-01355-TWT (N.D. Ga.) (settled for $5 million in 2000 after surviving motion to dismiss, conducting substantial discovery, and obtaining class certification).  The *Deloitte* settlement is notable because recoveries that large against auditors are rare.  Ms. Savett successfully argued the motions to dismiss in both cases, which resulted in

---

[3]  A companion case, *In re: 1996 Medaphis Corp. Secs. Litig.*, No. 96-cv-02008 (N.D. Ga.), settled for $72.5 million in cash, common stock, and warrants in 1998. Ms. Savett was Co-Lead Counsel.  The case was transferred from Judge Frank Hull to Your Honor shortly before the settlement was reached.

published opinions.[4]  Thus, she has familiarity with Your Honor and this District.

In addition to securities fraud cases, Ms. Savett was also Co-Lead Counsel in a large consumer MDL class action involving contaminated pet food.  A $24 million settlement was reached providing class members up to 100% of their economic damages.  *In re Pet Foods Product Liab. Litig.*, MDL No. 1850, No. 07-cv-02867 (D.N.J.).

These are just a sampling of successes by Ms. Savett and B&M in recent years.[5]  *See* Exhibit 2 (firm biography).

---

[4]  *Carley Capital Group v. Deloitte & Touche, LLP*, 27 F. Supp. 2d 1324 (N.D. Ga. 1998); *In re: ValueJet, Inc. Secs. Litig.*, 984 F. Supp. 1472 (N.D. Ga. 1997).

[5]   B&M's successful representation as Lead or Co-Lead Counsel in large antitrust class actions supports the firm's leadership appointment here.  *See, e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720, No. 05-md-01720 (E.D.N.Y.) (B&M, as Co-Lead Counsel, obtained a $7.25 billion settlement -- the largest antitrust settlement in history, revised to $5.7 billion after opt-outs, and pending further ongoing proceedings); *Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc*., No. 07-cv-01078 (E.D. Pa.) (**$130 million** settlement); *Meijer, Inc. et al. v. Abbott Laboratories*, No. 07-cv-

### B.   Access to Sufficient Resources to Advance the Litigation in a Timely Manner.

B&M has abundant resources to devote to this case as necessary, including 62 full-time attorneys and a large and experienced professional staff.

If appointed as Lead Counsel, Ms. Savett will dedicate the time necessary to successfully manage and litigate this case.  While she has been appointed many times throughout her career as Lead or Co-Lead Counsel, she currently is not involved in a Lead Counsel role in any other MDL litigation.  Thus, she is able to devote a substantial time commitment to this case.

She will personally oversee the assignment of work to her colleagues and co-counsel to ensure that all tasks are carried out in the most efficient fashion.  She is committed to the litigation protocols set forth in the Susman Group application,

---

05985-CW (N.D. Cal.) (B&M, as Co-Lead Counsel, obtained a **$52 million** settlement after four days of trial); *In re Currency Conversion Fee Antitrust Litig*., MDL No. 1409, No. 01-md-01409 (S.D.N.Y.) (**$336 million** settlement); *In re High Fructose Corn Syrup Antitrust Litig*., MDL No. 1087, No. 95-cv-01477 (C.D. Ill.) (B&M, as Co-Lead Counsel, reached a **$531 million** settlement on the eve of trial); and *In re Brand Name Prescription Drugs Antitrust Litig*., MDL No. 997, No. 94-cv-897 (N.D. Ill.) (**$717 million** settlement).

which are geared toward litigating the case with efficiency and minimal redundancy.

B&M also has adequate monetary resources to fund the *Equifax* litigation, including what we expect will be significant costs for discovery and expert witnesses.

Ms. Savett supports the concept of a robust leadership structure involving Lead Counsel, a multi-firm Steering Committee, and Liaison Counsel.  This case involves the largest theft of Social Security numbers in history, impacting nearly half the U.S. population.  Significant resources will be needed to litigate the case properly.  Indeed, in the recently settled *Anthem* data breach case, class counsel filed four Amended Complaints, survived two rounds of motion to dismiss briefing resulting in two 80-plus page opinions, completed intensive fact and expert discovery (including reviewing 3.8 million pages of documents; litigating 14 discovery motions; deposing 80 fact witnesses and 6 expert witnesses; defending depositions of 100 named plaintiffs; and defending several expert depositions), and fully briefed the motion for class certification and related *Daubert* motions before reaching a $115 million settlement.[6]  The Anthem breach involved 80 million class

---

[6] *In re: Anthem, Inc. Data Breach Litig.*, MDL 2617, No. 15-MD-02617, Dkt. #916-9, at ¶ 8 (N.D. Cal.) (Decl. in support of final settlement approval).

members, which is roughly half the size of Equifax breach.  The *Equifax* case will likely be every bit as hard-fought and complex as the *Anthem* case.  It is important to appoint a leadership team with adequate skills and resources to litigate a case of this magnitude.  Ms. Savett and B&M are a logical choice for such a task.

### C.      Willingness and Ability to Commit to a Time-Consuming Process.

B&M does not hesitate to take a case to trial or persist for decades if necessary to achieve victory for its clients.  In lead roles, B&M is the rare firm that has tried and won multiple class action jury trials.  A case in point is *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181 (D. Colo.), where B&M as lead trial counsel won a **$377 million** jury verdict including $177 million in compensatory damages and $200 million in punitive damages (the aggregate award increased to $926 million with interest).  The case involved environmental contamination at the Rocky Flats nuclear weapons facility.  After multiple appeals to the Tenth Circuit and a certiorari petition to the U.S. Supreme Court, the case settled in 2017 for $375 million, returning $100% of the class' recognized losses for economic damage.  The case lasted 26 years, demonstrating B&M's commitment to lengthy and resource-intensive litigation.  There are other jury trial examples as well.  *See In re: Melridge Secs. Litig.*, No. 87-cv-1426 (D. Ore.) (four month jury trial yielding plaintiffs' verdict of **$88 million***; subsequently settled for **$58 million**); *In*

13

*re: Exxon Valdez Oil Spill Litig.*, No. 89-cv-00095 (D. Alaska) (B&M as principal trial counsel obtained a **$5 billion** jury award in 1994, later reduced to **$507 million** by the U.S. Supreme Court); *Meijer, Inc. et al. v. Abbott Laboratories*, No. 07-cv-05985-CW (N.D. Cal.) (B&M, as Co-Lead Counsel, obtained a **$52 million** settlement after four days of trial).

These experiences and results illustrate the firm's willingness to commit to a time consuming process.  That said, Ms. Savett always embraces opportunities to settle cases where the class is provided a truly beneficial recovery.

Twice, B&M has won the Public Justice Foundation's prestigious "Trial Lawyer of the Year" award for taking class action cases to trial and winning significant verdicts.  We are one of the largest and most experienced class action firms in the country.  We believe class members would want this Court to appoint a firm with our history, record, commitment, and size to lead this important case.

**D.    Ability to Work Cooperatively With Others.**

With its long history as a pioneer of class action litigation, B&M has honed a unique ability to work cooperatively with others.  This skill is essential in our field, where law firms routinely join forces as co-counsel to prosecute complex and lengthy cases.

Ms. Savett has worked cooperatively with hundreds of class action firms and

14

their leaders throughout her 40 year career.  Indeed, she and/or B&M have worked productively in the past with most of the firms that are seeking *Equifax* leadership roles.

Further, her role as Chairwoman of B&M demonstrates her ability to work well with others and earn respect from her peers who selected her for this important role.  Another example of her ability to work well with others is her three year service as President and Board Chair of the Jewish Federation of Greater Philadelphia, only the third woman President in its 115 year history.

### E.    Other Factors.

Ms. Savett was a panelist at a recent Harris-Martin conference addressing the Equifax breach.  She presented on a 45 minute panel addressing pre-breach facts and post-breach responses.

Among Ms. Savett's clients is an individual who experienced actual misuse of data, as opposed to the mere threat of identity theft.  Misuse of data is an important fact that will aid the Class in establishing standing and damages.

Ms. Savett supports the conservative fee proposal set forth in the Susman Group application.  If appointed to leadership, she proposes a fee structure of 2% of the value of credit monitoring *actually distributed* to class members, and 15% of any cash fund established to compensate class members.

15

An additional benefit Ms. Savett brings is B&M's high quality in-house document hosting and review system.  It is far less expensive than third party services and will result in meaningful cost savings for the class.  *See In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.*, No. 14-cv-02213-VEC, Dkt. #23 (S.D.N.Y. July 22, 2014) (appointing B&M as co-lead counsel while acknowledging B&M's "in-house document hosting and review capabilities, which will result in additional savings for the putative class").

### F.    Judicial Recognition.

Several judges have praised Ms. Savett for her work in class actions.  For example, Judge Stewart Dalzell of the Eastern District of Pennsylvania stated:

> The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . .  [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come.  (*In re U.S. Bioscience Secs. Litig.*, No. 92-0678, hearing held April 4, 1994 (E.D. Pa.)).

Judge Wayne Andersen of the Northern District of Illinois stated the following in the *Waste Management* securities class action that settled for $220 million where Ms. Savett served as Co-Lead Counsel:

> [Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases . . . in 15 years now as a judge and I cannot recall a significant case where I felt people were better

16

represented than they are here. . . .  I would say this has been the best representation that I have seen.  (*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999)).

Judge Michael Baylson of the Eastern District of Pennsylvania stated the following in the *Cigna* securities class action that settled for $93 million where Ms. Savett served as Co-Lead Counsel:

> The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality.  The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive.  (*In re: CIGNA Corp. Secs. Litig.*, 2007 U.S. Dist.  LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007)).

## II.   CONCLUSION

Ms. Savett supports the application of the Susman Group, in which she is a proposed Steering Committee member.  In the event the Susman Group is not appointed, she seeks appointment as a Lead Counsel, or member of the Steering Committee as constructed by the Court.  She embraces the opportunity to work with any other counsel the Court appoints.

Dated: February 2, 2018

Respectfully submitted,

/s/  Sherrie Savett

**BERGER & MONTAGUE, P.C.**
Sherrie Savett
Jon Lambiras
1622 Locust St.
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ssavett@bm.net
jlambiras@bm.net

*Counsel for Plaintiffs Joseph Clark, Meghan*
*Clark, Ruth Reyes, and the Putative*
*Consumer Class*

kal7875009

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 5.1(B)</u>

I certify that, pursuant to Local Rule 5.1, this document complies with LR

5.1(B) and (C).  Specifically, the document was prepared in Times New Roman 14

point font, with a top margin of 1.5 inches and all other margins of 1 inch.


Dated: February 2, 2018               /s/  Sherrie Savett
                                      **BERGER & MONTAGUE, P.C.**
                                      Sherrie Savett
                                      Jon Lambiras
                                      1622 Locust St.
                                      Philadelphia, PA 19103
                                      Tel: (215) 875-3000
                                      Fax: (215) 875-4604
                                      ssavett@bm.net
                                      jlambiras@bm.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2018, I caused the foregoing

APPLICATION OF SHERRIE SAVETT OF BERGER & MONTAGUE, P.C.

FOR APPOINTMENT TO LEADERSHIP OF CONSUMER TRACK to be filed

electronically using the Court's electronic case filing (ECF) system, which will

automatically send notice to the email addresses of all counsel of record.


Dated: February 2, 2018        /s/  Sherrie Savett          

**BERGER & MONTAGUE, P.C.**
Sherrie Savett
1622 Locust St.
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ssavett@bm.net

# EXHIBIT 1

# THE NATIONAL LAW JOURNAL

An **ALM** Publication

## THE NATIONAL LAW JOURNAL'S
## THE PLAINTIFFS' HOT LIST HALL OF FAME
### 2003-2005
### 2007-2011



# THE PLAINTIFFS' HOT LIST

*The National Law Journal*'s annual Plaintiffs' Hot List attempts to provide a snapshot of the most successful plaintiffs' practices of the moment. To identify them, we asked firms to provide us with a year's worth of representative cases, verdicts and settlements from June 2010 to June 2011. From there we sifted through dozens of potential firms, reporting on and researching each to come up with our list. In this special report, you'll find the results: We profile 20 firms that are at the cutting edge of plaintiffs' work—and that are giving defense players a run for their money.

ISTOCKPHOTO/PIALHOVIK

# Berger & Montague, P.C.
## ATTORNEYS AT LAW

1622 LOCUST STREET | PHILADELPHIA, PA 19103-6305

*phone* 215/875-3000 | *fax* 215/875-4604 | *bergermontague.com*

# THE PLAINTIFFS'

### Firm overview

Berger & Montague, P.C., a 70-lawyer litigation boutique, is one of the largest and most distinguished plaintiffs' class action and commercial litigation law firms in the United States. Since 1970, the firm has been nationally recognized for its ability, experience, and success in prosecuting (and sometimes defending) cases involving securities fraud, antitrust violations, environmental injuries, false claims against federal and state governments, and employee, civil, and human rights. Berger & Montague has established numerous landmark precedents and achieved a multitude of record jury verdicts and settlements—with billions of dollars in recoveries for clients and class members. For these victories, not only has Berger & Montague made the National Law Journal's Hot List Hall of Fame, but it has repeatedly garnered awards, distinctions, and highest ratings from American Lawyer, Martindale-Hubble, Chambers & Partners, Philadelphia Magazine, and others. These accolades reflect qualities that the firm's clients and class members have come to understand firsthand: vast experience, extensive resources, unsurpassed legal skill, and sound judgment—all contributing to unparalleled results.

## Berger & Montague • Noteworthy Cases 2010 & 2011

## NOTEWORTHY CASES 2011

• *Meijer Inc. v. Abbott Lab.*, No. 07-5985 CW (N.D. Calif.). Shareholder Eric L. Cramer served as co-lead counsel for this antitrust class action that settled for $52 million after a four-day jury trial in Oakland, Calif. He was assisted by associates Daniel Simons and Ellen Noteware. The firm represented a class of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with monopoly power and overcharging with respect to Abbott's anti-HIV medicine Norvir to protect monopoly power for its highly profitable HIV drug Kaletra. Non-settling co-plaintiff GlaxoSmithKline went on to lose its antitrust claims in a jury trial. The settlement was approved on Aug. 11.

• *Johnson v. Arizona Hosp. and Healthcare Ass'n*, No. CV-07-1291 (D. Ariz.). The firm represented a class of thousands of temporary nurses in Arizona in a $22.4 million settlement from this statewide hospital trade association. The case involved an alleged hospital price-fixing conspiracy that the class charged had violated state and federal antitrust law. Shareholder David Sorensen served as co-lead class counsel with associate Neill Clark.

• *In re Tremont Sec. Law, State Law and Ins. Litig.*, No. 08-MD-11117 (S.D.N.Y.). Two words: Bernie Madoff. Firm shareholders Sherrie Savett and Glen Abramson helped win a settlement of $100 million for foreign trusts that purchased insurance policies whose premiums were invested in funds managed by Tremont Group Holdings and its affiliates—which ultimately invested with Madoff. The settlement, approved on Aug. 19, could go as high as $200 million or more.

## NOTEWORTHY CASES 2010

• *Pereira v. Ralph's Grocery Co.*, No. 07-841 (C.D. Calif.). Lead attorneys Douglas Risen and Todd Collins. The firm represented a statewide class of disabled consumers and a disability advocacy organization. The settlement called for retrofitting grocery stores to allow handicapped access. The case established that a disabled consumer need not visit each store within a chain to have standing to pursue classwide relief across the entire chain.

• *Ross v. Bank of America N.A.*, No. 05-7116 (S.D.N.Y.). Lead attorneys Merrill Davidoff, assisted by Charles Goodwin, David Langer, Nicholas Urban. Berger & Montague obtained final approval of the first settlements nationwide removing arbitration clauses from cardholder agreements, a development that will benefit 100 million customers. It succeeded on claims that the defendants had unlawfully acted in concert to require cardholders to arbitrate disputes and precluded them from participating in any class actions.

• *Spencer v. The Hartford Financial Services Group Inc.*, No. 05-cv-1681 (D. Conn.). Lead attorneys Peter Kahana, Steven Bloch. A $72.5 million settlement on behalf of a class of 22,000 personal injury and workers' compensation claimants was reached. The court characterized the case as groundbreaking. No such cases involving the pricing of structured settlement annuities preceded it, or have come thereafter. The judge cited the "skill," "outstanding advocacy" and "exceptional results" that prevailed against "the very real risk that the class could have recovered nothing."

# Berger & Montague • Noteworthy Cases 2005, 2007, 2008 & 2009

## NOTEWORTHY CASES 2009

• *In re Merrill Lynch & Co. Inc. Sec., Derivative & ERISA Litig.*, No. 07-CV-09633 (S.D.N.Y.). Co-lead counsel Lawrence J. Lederer. The team negotiated a $475 million settlement in one of the first securities class actions arising from the subprime mortgage meltdown. Getting there meant surmounting six separate motions to dismiss and the argument that Merrill Lynch & Co. Inc., various officers, Deloitte & Touche LLP and lead underwriters didn't display the usual indicators of fraud. The judge commended the "very fine" work done by the plaintiffs' attorneys.

• *In re TriCor Direct Purchaser Antitrust Litig.*, No 05-340 (D. Del.). Shareholder Eric Cramer served on the plaintiffs' executive committee and the three-firm lead trial team. It took three years to wrest a $250 million class settlement out of Abbott Laboratories and Fournier Industrie et Sante for alleged "product hopping"—introducing nominally but not actually improved versions of a brand-name drug (in this case cholesterol drug TriCor) to artificially extend the patent and impede generic competitors.

• *New Jersey v. Qwest Communications Int'l*, No. MER-L-3738-02 (Mercer Co., N.J., Super. Ct.). Lead counsel Merrill G. Davidoff, Peter Nordberg, Michael Dell'Angelo and Ellen T. Noteware. By opting out of a class settlement involving allegedly inflated earnings, the firm managed a separate deal giving the state of New Jersey $45 million—rather more than the wider settlement would have brought. The case established that, in New Jersey, unlike in federal court, plaintiffs can go after auditors and other enablers of fraud.

## NOTEWORTHY CASES 2008

• *In re TJX Cos. Retail Security Breach Litig.*, No. 07-10162-WGY (D. Mass.). Co-lead counsel Sherrie R. Savett, Michael Fantini and Jon Lambiras. Berger & Montague worked on all stages of this groundbreaking case, which involved the largest computer theft of personal data to date, affecting more than 45 million credit card numbers and other personal information. The settlement is valued at more than $200 million and includes three years of credit monitoring and identity theft insurance for plaintiffs, plus cash reimbursements for their expenses and losses.

• *In re Pet Foods Prod. Liab. Litig.*, No. MDL-1850 (D.N.J.). Co-lead counsel Sherrie R. Savett and Russell D. Paul. Twenty of the country's top pet food manufacturers agreed to pay $24 million and waive $8 million in insurance claims already paid to the owners of dogs and cats harmed by food spiked with toxic melamine.

• *In re KLA-Tencor Corp. Sec. Litig.*, C-06-04065 (N.D. Calif.) Co-lead counsel Sherrie R. Savett, Gary Cantor and Douglas Risen. This $65 million payout represents the fourth largest options-backdating settlement to date.

## NOTEWORTHY CASES 2007

• *In re Cigna Corp. Securities Litigation*, Master File No. 2:02 CV 8088 (E.D. Pa.). Co-lead counsel Sherrie R.Savett, Carole Broderick, Barbara A. Podell, Roslyn Pollack and Joshua Schumacher. The team won a $93 million settlement in a securities action involving the botched overhaul of an insurer's computer system.

• *In re Currency Conversion Fee Antitrust Litigation*, No. MDL-1409 (S.D.N.Y.). Co-lead counsel Merrill Davidoff. A settlement tentatively approved in November 2006 provides $336 million to compensate credit cardholders who alleged that Visa, MasterCard and other credit card companies conspired to fix the foreign currency conversion fees for overseas charges.

• *Ginsburg v. Philadelphia Stock Exchange Inc.*, No. 2202-CC (New Castle Co., Del., Ch.). Lead counsel Lawrence Deutsch, Robin Switzenbaum, Barbara A. Podell Roslyn Pollack, Joshua Schumacher, Jacob Polakoff and Shoshana Savett. The team was in the process of moving into digs in Delaware when an 11th-hour settlement was reached in this dispute over the price of shares that the Philadelphia Stock Exchange sold to various Wall Street interests. The buyers would return a portion of their shares to the plaintiffs worth at least $67 million.

## NOTEWORTHY CASES 2005

• *In re Hanford Nuclear Litigation*, No. CV-93-3087-WFN (E.D. Wash.) Co-lead counsel Peter Norberg. A plaintiffs' team secured verdicts of $227,000 and $317,000 for thyroid cancer patients who lived downwind from the nuclear weapons facility in Washington state. More than 2,000 additional claims from so-called "downwinders" are pending.

• *State of Texas ex. rel. Ven-A-Care of the Florida Keys Inc. v. Warrick Pharmaceuticals Corp.*, No. GV002327 (Travis Co., Texas, Dist. Ct.). Co-counsel Sherrie R. Savett with James Breen of The Breen Law Firm in Atlanta. This April 2004 qui tam action settled the state of Texas' claims against Schering-Plough Corp. and its subsidiaries over alleged fraudulent drug pricing. Together with a similar deal with Merck & Co., the actions recovered $44.5 million in alleged Medicaid fraud. The firms collaborated with other state and federal authorities in numerous similar actions, some of which remain pending.

• *Rite Aid Securities Litigation*, MDL No. 1360 (E.D. Pa.). Co-lead counsel Sherrie R. Savett. The book closed on this action after six years and three trips to the 3d U.S. Circuit Court of Appeals. The result was recovery of $334 million, including $125 million from accounting firm KMPG.

# Berger & Montague • Noteworthy Cases 2003 & 2004

## NOTEWORTHY CASES 2004

• *In re High Fructose Corn Syrup Antitrust Litigation* (C.D. Ill. 2004), co-lead counsel H. Laddie Montague Jr. Plaintiffs alleged that manufacturers of high fructose corn syrup that controlled 90% of the U.S. market conspired to fix prices and allocate customers and sales volumes. The case settled for $424 million.

• *In re Safety-Kleen Corp. Securities Litigation* (D.S.C. 2004), co-lead counsel Sherrie R. Savett. A hazardous waste company was accused of accounting irregularities. The case settled for $45 million.

• *In re Laidlaw Inc. Securities Litigation* (D.S.C. 2004), co-lead counsel Sherrie R. Savett. An Ontario, Canada-based trucking firm was accused of gross accounting violations. The case settled for $24 million.

## NOTEWORTHY CASES 2003

• *In re Waste Management Inc. Securities Litigation* (N.D. Ill. 2000), co-lead counsel Sherrie R. Savett. Representing a class of investors, the firm obtained a $200 million cash settlement.

• *In re IKON Office Solutions Inc. Securities Litigation* (E.D. Pa. 2000), co-lead and liaison counsel Merrill G. Davidoff. In an action filed against IKON and some of its officers on behalf of its investors, the firm negotiated a $111 million cash settlement.

• *In re Rite Aid Inc. Securities Litigation* (E.D. Pa. 2001), co-lead counsel Sherrie R. Savett. To date, the firm has obtained settlements of more than $190 million in cash and common stock.

Reprinted with permission from the 10/3/11, 10/4/10, 10/5/09, 10/6/08, 10/22/07, 10/10/05, 7/26/04 & 7/21/03 editions of the NATIONAL LAW JOURNAL. Noteworthy cases were modified from the original published version for the purposes of this reprint. © 2011 ALM Media Properties, LLC. All rights reserved. Further duplication without permission is prohibited. For information, contact 877-257-3382 or reprints@alm.com. # 005-11-11-02



**Berger&Montague, P.C.**
ATTORNEYS AT LAW

1622 LOCUST STREET | PHILADELPHIA, PA 19103-6305
*phone* 215/875-3000 | *fax* 215/875-4604 | *bergermontague.com*

# EXHIBIT 2



1622 Locust Street | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger & Montague

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation.  In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 13 out of the last 14 years (2003-05, 2007-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*, and was ranked as a 2017 "Best Law Firm" by *U.S. News - Best Lawyers*.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff.  Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## History of the Firm

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions.  David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients.  In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation.  For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation.  Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's.  The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion

against Exxon, later reduced by the U.S. Supreme Court to $507.5 million.  Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement.  The case was the first mass tort property damage class action certified on a national basis.  Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War.  The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Practice Areas and Case Profiles

### Consumer Protection

Berger & Montague's Consumer Protection Group protects consumers when they are injured by false or misleading advertising, defective products, data privacy breaches, and various other unfair trade practices. Consumers too often suffer the brunt of corporate wrongdoing, particularly in the area of false or misleading advertising, defective products, and data or privacy breaches.

- ▪ ***In re: CertainTeed Fiber Cement Siding Litigation***, MDL No. 2270 (E.D. Pa.).  The firm, as one of two Co-Lead Counsel firms obtained a settlement of more than $103 million in this multidistrict products liability litigation concerning CertainTeed Corporation's fiber cement siding, on behalf of a nationwide class.

- ▪ ***Countrywide Predatory Lending Enforcement Action:***  Berger & Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

- ▪ ***In re Pet Foods Product Liability Litigation***:  The firm served as one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food.  The case settled for $24 million.  Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover.  (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

- ▪ ***In re TJX Companies Retail Security Breach Litigation***:  The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history.  The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers.  The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses and other costs, and reimbursement of driver's license replacement costs.  Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60.  (No. 1:07-cv-10162-WGY, (D. Mass.)).

- ▪ ***In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:***  The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers.

The breach was the largest known theft of credit card information in history. The settlement is subject to court approval. (No. 4:09-MD-2046 (S.D. Tex. 2009)).

- ▪ ***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***: The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rogue employee sold their information to unauthorized third parties. Settlement benefits included: (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief. The settlement was approved by the court in 2010. (3:08-md-01998-TBR (W.D. Ky. 2008)).

- ▪ ***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation***: The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La.)).

- ▪ ***Vadino, et al. v. American Home Products Corporation, et al.:*** The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified. It was the only case anywhere in the country to include a claim for medical monitoring. In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion. (Case Code No. 240 (N.J. Super. Ct.)).

- ▪ ***Parker v. American Isuzu Motors, Inc.:*** The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes. (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

- ▪ ***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.:*** The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system. After extensive discovery, a settlement was reached. (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

- ▪ ***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.:*** The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges. Counsel completed extensive discovery and class certification briefing. A settlement was reached while the decision on class certification was pending. The settlement consisted of remedies including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects. (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

- ▪ ***Crawford v. Philadelphia Hotel Operating Co.:*** The firm served as co-lead counsel and obtained a settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each. (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

- ▪ ***Block v. McDonald's Corporation***: The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries. (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

## Securities Litigation

In the area of securities litigation, the firm has represented public institutional investors – such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which jury verdicts of $88.2 million and a RICO judgment of $239 million were obtained.

Berger & Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors.

- *In re Merrill Lynch Securities Litigation:*  Berger & Montague, as co-lead counsel, obtained a recovery of $475 million for the benefit of the class in one of the largest recoveries among the recent financial crisis cases.  (No. 07-cv-09633 (S.D.N.Y.)).

- *In re Sotheby's Holding, Inc. Securities Litigation***:**  The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant.  (No. 00-cv-1041 (DLC) (S.D.N.Y.)).

- *In re: Oppenheimer Rochester Funds Group Securities Litigation:*  The firm, as co-lead counsel, obtained a $89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc.  (No. 09-md-02063-JLK (D. Col.)).

- *In re KLA Tencor Securities Litigation:*  The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors.  (No. 06-cv-04065 (N.D. Cal.)).

- *Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:*  The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and obtained a settlement valued in excess of $99 million settlement.  (C.A. No. 2202-CC (Del. Ch.)).

- *In re Sepracor Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes.  (No. 02-cv-12235-MEL (D. Mass.)).

- *In re CIGNA Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class.  (Master File No. 2:02-cv-8088 (E.D. Pa.)).

- *In re Fleming Companies, Inc. Securities Litigation:*  The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class.  (No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

- *In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*  The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors.  (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

- *In re NetBank, Inc. Securities Litigation:*  The firm served as lead counsel in this certified class action on behalf of the former common shareholders of NetBank, Inc. The $12.5 million settlement, which occurred after class certification proceedings and substantial discovery, is particularly noteworthy because it is one of the few successful securities fraud class actions litigated against a subprime lender and bank in the wake of the financial crisis.  (No. 07-cv-2298-TCB (N.D. Ga.)).

- *Brown v. Kinross Gold U.S.A. Inc.:*  The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371.  (No. 02-cv-0605 (D. Nev.))  All class members recovered 100% of their damages <u>after</u> fees and expenses.

- *In re Campbell Soup Co. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class.  (No. 00-cv-152 (JEI) (D.N.J.)).

- *In re Premiere Technologies, Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock.  (No.1:98-cv-1804-JOF (N.D. Ga.)).

- *In re PSINet, Inc., Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors.  (No. 00-cv-1850-A (E.D. Va.)).

- ***In re Safety-Kleen Corp. Securities Litigation :*** The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (No. 3:00-cv-736-17 (D.S.C.)).

- ***The City Of Hialeah Employees' Retirement System v. Toll Brothers, Inc.:*** The firm, as co-lead counsel, obtained a class settlement of $25 million against Home Builder Toll Brothers, Inc. (No. 07-cv-1513 (E.D. Pa.)).

- ***In re Rite Aid Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (No. 99-cv-1349 (E.D. Pa.)).

- ***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel and designated lead trial counsel (by Mr. Davidoff), the firm obtained a settlement on behalf of investors of $142 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (No. 98-cv-8258 (S.D. Fla.)).

- ***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (No. 97-cv-7709 (N.D. Ill.)).

- ***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers. (MDL Dkt. No. 1318 (E.D. Pa.)).

- ***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-lead trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $57.5 million. (No. 87-cv-1426 FR (D. Ore.)).

- ***Aldridge v. A.T. Cross Corp.:*** The firm represented a class of investors in a securities fraud class action against A.T. Cross, and won a significant victory in the U.S. Court of Appeals for the First Circuit when that Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case ultimately settled for $1.5 million. (C.A. No. 00-203 ML (D.R.I.)).

- ***Silver v. UICI:*** The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99-cv-2860-L (N.D. Tex.)).

- ***In re Alcatel Alsthom Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

- ***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

- ***In re The Drexel Burnham Lambert Group, Inc.:*** The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (No. 90-cv-6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

- ***In re Michael Milken and Associates Securities Litigation:*** As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.)).

- ***RJR Nabisco Securities Litigation:*** The firm represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (No. 88-cv-7905 MBM (S.D.N.Y.)).

- ***Qwest Securities Action:*** The firm represented New Jersey in an opt-out case against Qwest and certain officers, which was settled for $45 million. (C.A. No. L-3838-02 (Superior Court New Jersey, Law Division)).

## Antitrust

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 45 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million).

> The *Legal 500*, a guide to worldwide legal services providers, ranked Berger & Montague as a Top-Tier Firm for Antitrust: Civil Litigation and Class Actions in the United States in its 2015 guide and has repeatedly cited Berger & Montague's antitrust practice as "stand[ing] out by virtue of its first-class trial skills."
>
> For five straight years, Berger & Montague has been selected by *Chambers and Partners' USA's* America's Leading Lawyers for Business as one of Pennsylvania's top antitrust firms.

- ***In re Currency Conversion Fee Antitrust Litigation:*** Berger & Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October, 2009, with a Final Judgment entered in November, 2009. Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action. A subsequent settlement with American Express increased the settlement amount to $386 million. (MDL No. 1409 (S.D.N.Y.)).

- ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:*** Berger & Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops. The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment. These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from taking various competitive steps that could have been used to steer fleets to rival payment cards. The settlement for $130 million and valuable prospective relief was preliminary approved on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

- ***Ross, et al. v. Bank of America (USA) N.A., et al.:***  Berger & Montague, as lead counsel for the cardholder classes, obtained final approval of settlements reached with Chase, Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions.  The case was brought for injunctive relief only.  The settlements remove arbitration clauses nationwide for 3.5 years from the so-called "cardholder agreements" for over 100 million credit card holders.  This victory for consumers and small businesses came after nearly five years of hard-fought litigation, including obtaining a decision by the Court of Appeals reversing the order dismissing the case, and will aid consumers and small businesses in their ability to resist unfair and abusive credit card practices.  A proposed settlement has been reached with the non-bank defendant arbitration provider (NAF), and, after defeating summary judgment, Berger & Montague is preparing the case for trial against the remaining two bank defendants.

- ***In re High Fructose Corn Syrup Antitrust Litigation:***  Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup.  After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.  (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

- ***In re Linerboard Antitrust Litigation:***  Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

- ***Johnson, et al. v AzHHA, et al.:***  Berger & Montague is co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid.  The court approved $24 million in settlements on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

- ***In re Graphite Electrodes Antitrust Litigation:***  Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case.  The case settled for in excess of $134 million and over 100% of claimed damages. (02 Civ. 99-482 (E.D. Pa.)).

- ***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:***  The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin).  The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

- ***In re Catfish Antitrust Litig. Action***:  The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million.  (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

- ***In re Carbon Dioxide Antitrust Litigation:***  The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial, for total settlements approximating $53 million, plus injunctive relief.  (MDL No. 940 (M.D. Fla.)).

- ***In re Infant Formula Antitrust Litigation***:  The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla.)).

- ***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:***  The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million.  (C.A. No. H-91-627 (S.D. Tex.)).

- *In re Corrugated Container Antitrust Litigation:*  The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

- *Bogosian v. Gulf Oil Corp.:*  With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial.  (No. 71-1137 (E.D. Pa.)).

- *In re Master Key Antitrust Litigation:*  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial.  (MDL No. 45 (D. Conn.)).

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic competition, having achieved over $1 billion in settlements in such cases over the past decade, including:

- *King Drug Co. v. Cephalon, Inc.:*  Berger & Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the prescription drug Provigil (modafinil).  After nine years of hard-fought litigation, the court approved a $512 million partial settlement, the largest settlement ever for a case alleging delayed generic competition. (Case No. 2:06-cv-01797 (E.D. Pa.)).

- *In re K-Dur Antitrust Litigation:*  Berger & Montague served as co-lead counsel for the class in this long-running antitrust litigation.  Berger & Montague litigated the case before the Court of Appeals and won a precedent-setting victory, and continued the fight before the Supreme Court. On remand, the case settled for $60.2 million (final approval granted on October 5, 2017).  (Case No. 01-1652 (D.N.J.)).

- *In re Prandin Direct Purchaser Antitrust Litigation:*  Berger & Montague served as co-lead counsel and recovered $19 million on behalf of direct purchasers of the diabetes medication Prandin.  (Case No. 2:10-cv-12141 (E.D. Mich.)).

- *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.:*  Berger & Montague was appointed as co-lead counsel in a case challenging Warner Chilcott's alleged anticompetitive practices with respect to the branded drug Doryx.  The case was settled for $15 million.  (Case No. 2:12-cv-03824 (E.D. Pa.)).

- *In re Neurontin Antitrust Litigation:*  Berger & Montague served as part of a small group of firms challenging the maintenance of a monopoly relating to the pain medication Neurontin.  The case settled for $190 million.  (Case No. 02-1830 (D.N.J.)).

- *In re Skelaxin Antitrust Litigation:*  Berger & Montague was among a small group of firms litigating on behalf of direct purchasers of the drug Skelaxin.  The case settled for $73 million.  (Case No. 2:12-cv-83 / 1:12-md-02343) (E.D. Tenn.)).

- *In re Wellbutrin XL Antitrust Litigation:*  Berger & Montague served as co-lead counsel for a class of direct purchasers of the antidepressant Wellbutrin XL.  A settlement of $37.5 million was reached with Valeant Pharmaceuticals (formerly Biovail), one of two defendants in the case. (Case No. 08-cv-2431 (E.D. Pa.)).

- *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.:*  Berger & Montague, appointed as co-lead counsel, prosecuted this case on behalf of direct purchasers alleging sham litigation led to the delay of generic forms of the brand drug Miralax.  The case settled for $17.25 million. (Case No. 07-142 (D. Del.)).

- *In re Oxycontin Antitrust Litigation:*  Berger & Montague served as co-lead counsel on behalf of direct purchasers of the prescription drug Oxycontin.  The case settled in 2011 for $16 million.  (Case No. 1:04-md-01603 (S.D.N.Y)).

- *Meijer, Inc., et al. v. Abbott Laboratories:*  Berger & Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws.  Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra.  This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California.  (Case No. 07-5985 (N.D. Cal.)).

- *In re Nifedipine Antitrust Litigation:* Berger & Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the anti-hypertension drug Adalat (nifedipine).  After eight years of hard-fought litigation, the court approved a total of $35 million in settlements.  (Case No. 1:03-223 (D.D.C.)).

- *In re DDAVP Direct Purchaser Antitrust Litigation:*  Berger & Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP.  Berger & Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent.  (Case No. 05-2237 (S.D.N.Y.)).

- *In re Terazosin Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin.  The case settled for $74.5 million.  (Case No. 99-MDL-1317 (S.D. Fla.)).

- *In re Remeron Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron.  The case settled for $75 million.  (2:02-CV-02007-FSH (D. N.J.)).

- *In re Tricor Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor.  The case settled for $250 million.  (No. 05-340 (D. Del.)).

- *In re Relafen Antitrust Litigation:*  Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone).  Just before trial, the case was settled for $175 million.  (No. 01-12239-WGY (D. Mass.)).

- *In re Cardizem CD Antitrust Litigation:*  Berger & Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD.  The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product.  On November 26, 2002, the district court approved a final settlement against both defendants for $110 million.  (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

- *In re Buspirone Antitrust Litigation:*  The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.  The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar.  On April 11, 2003, the Court approved a $220 million settlement.  (MDL No. 1410 (S.D.N.Y.)).

- *North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*  The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from

9

marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin).  The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

▪ *In re Asacol Antitrust Litigation:* The firm served as class counsel for direct purchasers of Asacol HS and Delzicol that alleged that defendants participated in a scheme to block generic competition for the ulcerative colitis drug Asacol. The case settled for $15 million. (D. Mass.).

## Commercial Litigation

Berger & Montague helps business clients achieve extraordinary successes in a wide variety of complex commercial litigation matters. Our attorneys appear regularly on behalf of clients in high stakes federal and state court commercial litigation across the United States.  We work with our clients to develop a comprehensive and detailed litigation plan, and then organize, allocate and deploy whatever resources are necessary to successfully prosecute or defend the case.

▪ *Erie Power Technologies, Inc. v. Aalborg Industries A/S, et al.:*  Berger & Montague represented a trustee in bankruptcy against officers and directors and the former corporate parent and obtained a very favorable confidential settlement.  (No. 04-282E (W.D. Pa.)).

▪ *Moglia v. Harris et al.:*  Berger & Montague represented a liquidating trustee against the officers of U.S. Aggregates, Inc. and obtained a settlement of $4 million.  (No. C 04 2663 (CW) (N.D. Cal.)).

▪ *Gray v. Gessow et al.:*  The firm represented a litigation trust and brought two actions, one against the officers and directors of Sunterra Inc. an insolvent company, and the second against Sunterra's accountants, Arthur Andersen and obtained an aggregate settlement of $4.5 million.  (Case No. MJG 02-CV-1853 (D. Md.) and No. 6:02-CV-633-ORL-28JGG (M.D. Fla.)).

▪ *Fitz, Inc. v. Ralph Wilson Plastics Co.:*  The firm served as sole lead counsel and obtained, after 7 years of litigation, in 2000 a settlement whereby fabricator class members could obtain full recoveries for their losses resulting from defendants' defective contact adhesives.  (No. 1-94-CV-06017 (D.N.J.)).

▪ *Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.:*  Berger & Montague settled this individual claim, alleging a 10-year oral contract (despite six subsequent writings attempting to reduce terms to writing, each with materially different terms added, all of which were not signed), for a combined payment in cash and stock of the defendant, of $30 Million.  (No. 92-1964 (E.D. Pa.)).

▪ *Marilou Whitney (Estate of Cornelius Vanderbilt Whitney) v. Turner/Time Warner:*  Berger & Montague settled this individual claim for a confidential amount, seeking interpretation of the distribution agreement for the movie, *Gone with the Wind* and undistributed profits for the years 1993-1997, with forward changes in accounting and distribution.

▪ *American Hotel Holdings Co., et. al v. Ocean Hospitalities, Inc., et. al.:*  Berger & Montague defended against a claim for approximately $16 million and imposition of a constructive trust, arising out of the purchase of the Latham Hotel in Philadelphia.  Berger & Montague settled the case for less than the cost of the trial that was avoided. (June Term, 1997, No. 2144 (Pa. Ct. Com. Pl., Phila. Cty.))

▪ *Creative Dimensions and Management, Inc. v. Thomas Group, Inc.:*  Berger & Montague defended this case against a claim for $30 million for breach of contract.  The jury rendered a verdict in favor of Berger & Montague's client on the claim (i.e., $0), and a verdict for the full amount of Berger & Montague's client on the counterclaim against the plaintiff.  (No. 96-6318 (E.D. Pa.)).

▪ *Robert S. Spencer, et al. v. The Arden Group, Inc., et al.:*  Berger & Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner.  The terms of the settlement are subject to a confidentiality agreement.  (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

- ***Forbes v. GMH:***  Berger & Montague represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities.  The case which claimed securities fraud in connection with the transaction settled for a confidential sum which represented a significant portion of the losses experienced.  (No. 07-cv-00979 (E.D. Pa.)).

## Commodities and Options

Berger & Montague ranks among the country's preeminent firms for managing and trying complex commodities and options related cases on behalf of individuals and as class actions.  The Firm's commodities clients include individual hedge and speculation traders, hedge funds, energy firms, investment funds, and precious metals clients.

- ***In re MF Global Holdings Ltd. Investment Litigation***:  Berger & Montague is one of two co-lead counsel representing thousands of commodities account holders who fell victim to the alleged massive theft and misappropriation of client funds at the major global commodities brokerage firm MF Global.  Over the last year, substantial settlements have been reached with JPMorgan Chase Bank, the MF Global SIPA Trustee, and the CME Group.  These settlements will ultimately enable MF Global customers to recover over one billion dollars.  Berger & Montague is continuing to pursue claims against former directors and officers of MF Global, including Jon Corzine, and against MF Global's former auditor, PricewaterhouseCoopers.  (No. 11-cv-07866 (S.D.N.Y.).

- ***In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation***:  Berger & Montague is one of two co-lead counsel representing traders of traders of gold-based derivative contracts, physical gold, and gold-based securities against The Bank of Nova Scotia, Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, Société Générale and the London Gold Market Fixing Limited.  Plaintiffs allege that the defendants, members of the London Gold Market Fixing Limited, which sets an important benchmark price for gold, conspired to manipulate this benchmark for their collective benefit.  (1:14-md-02548 (S.D.N.Y.)).

- ***In re Libor-Based Financial Instruments Antitrust Litigation***:  Berger & Montague represents investors who transacted in Eurodollar futures contracts and options on futures contracts on the Chicago Mercantile Exchange ("CME") between August 2007 and May 2010.  The lawsuit alleges that the defendant banks knowingly and intentionally understated their true borrowing costs.  By doing so, the defendant banks caused Libor to be calculated or suppressed at artificially low rates.  The defendants' alleged manipulation of Libor allowed their banks to pay artificially low interest rates to purchasers of Libor-based financial instruments.  (No. 1:11-md-02262-NRB (S.D.N.Y.)).

- ***In re North Sea Brent Crude Oil Futures Litigation***:  Berger & Montague, P.C. filed a proposed class action on behalf of traders of Brent Crude Oil futures contracts against Royal Dutch Shell plc, BP plc, Statoil ASA, Morgan Stanley, Trafigura Beheer B.V., Trafigura AG, Phibro Trading LLC, and Vitol, S.A. (collectively, "Defendants") during the period of at least 2002 through the present.  The complaint alleges that the Defendants violated the antitrust laws and the Commodity Exchange Act by using Platts reporting service's methodology for reporting prices to control the Brent Crude Oil physical market and thereby to manipulate Brent Crude Oil prices and the prices of Brent Crude oil futures contracts traded on the New York Mercantile Exchange ("NYMEX") and the Intercontinental Exchange ("ICE").  (No. 13-cv-8240 (S.D.N.Y.)).

- ***Brown, et al. v. Kinross Gold, U.S.A., et al.***:  Berger & Montague was one of two co-lead counsel in this action alleging that a leading gold mining company illegally forced out preferred shareholders.  The action resulted in a settlement of $29.25 million in cash and $6.5 million in other consideration (approximately 100% of damages and accrued dividends after fees and costs).  (No. 02-cv-00605 (D.N.V.)).

## Corporate Governance and Shareholder Rights

Berger & Montague protects the interests of individual and institutional investors in shareholder derivative actions in state and federal courts across the United States.  Our attorneys help individual and institutional

investors reform poor corporate governance, as well as represent them in litigation against directors of a company for violating their fiduciary duty or provide guidance on shareholder rights.

- ***Emil Rossdeutscher and Dennis Kelly v. Viacom:***  The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class.  (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

- **Fox v. Riverview Realty Partners, f/k/a Prime Group Realty Trust, et al.:**  The firm, as lead counsel, obtained a settlement resulting in a fund of $8.25 million for the class.

## Employment Law

The Berger & Montague Employment Law group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals.   Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- ***Jantz v. Social Security Administration:***  The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities.  The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million.  EEOC No. 531-2006-00276X (2015).

- ***Ciamillo v. Baker Hughes, Incorporated:***  The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- ***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).  No. 6:04-cv-06098 (W.D.N.Y.)).

- ***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.  (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- ***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant.  (No. 99-1087 (E.D. Pa.)).

- ***Chabrier v. Wilmington Finance, Inc.:***  The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages.  A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).  (No. 06-4176 (E.D. Pa.)).

- ***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.   (No. 07-6635 (W.D.N.Y.)).

- *Confidential.* The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Environmental and Mass Tort

Berger & Montague lawyers are trailblazers in the fields of environmental class action litigation and mass torts. Our attorneys have earned their reputation in the fields of environmental litigation and mass torts by successfully prosecuting some of the largest, most well-known cases of our time. Our Environmental & Mass Tort Group also prosecutes significant claims for personal injury, commercial losses, property damage, and environmental response costs. In 2016 Berger & Montague was named an Elite Trial Lawyer Finalist in special litigation (environmental) by The National Law Journal.

- *Cook v. Rockwell International Corporation:* In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium or other toxins. Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million. Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Merrill G. Davidoff, David F. Sorensen, and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants." (No. 90-cv-00181-JLK (D. Colo.)). The jury verdict in that case was vacated on appeal in 2010, but on a second trip to the Tenth Circuit, Plaintiffs secured a victory in 2015, with the case then being sent back to the district court. A $375 million settlement was reached in May 2016, and final approval by the district court was obtained in April 2017

- *In re Exxon Valdez Oil Spill Litigation:* On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. The award was reduced to $507.5 million pursuant to a Supreme Court decision. David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts). Harold Berger served as a member of the organizing case management committee. H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Alaska)).

- *In re Ashland Oil Spill Litigation:* The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa.)).

- *State of Connecticut Tobacco Litigation:* Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

- *In re School Asbestos Litigation:* As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.)).

- *Drayton v. Pilgrim's Pride Corp.:* The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time. A significant opinion issued in

13

the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp. 2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine). All of the cases settled on confidential terms in 2006. (No. 03-2334 (E.D. Pa.)).

- ▪ *In re SEPTA 30th Street Subway/Elevated Crash Class Action:* Berger & Montague represented a class of 220 persons asserting injury in a subway crash. Despite a statutory cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the public carrier in the investigation by the National Highway Transit Safety Administration, Berger & Montague was able to recover an aggregate of $3.03 million for the class. (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

- ▪ *In re Three Mile Island Litigation:* As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved. (C.A. No. 79-0432 (M.D. Pa.)).

- ▪ *In Re Louisville Explosions Litigation:* This case was one of the earliest examples of a class action trial of an environmental class action. It redressed damage to private property owners and employees resulting from a February 13, 1981 sewer explosion which was one of the largest explosion mishaps in U.S. history. In February, 1984 the matter went to trial, and after the plaintiffs' case and the denial of motions for direct verdict the litigation settled for net payments to the class members of 100% to 300% or more of direct monetary damages, depending on their zone's distance from the streets that exploded. Claimants lined up near the claims office for blocks to file claims. Mr. Davidoff was lead counsel and lead trial counsel. (No. CV 81-0080, W.D. Ky.).

## ERISA and Employee Benefits

Berger & Montague represents employees who have claims under the federal Employee Retirement Income Security Act. We litigate cases on behalf of employees whose 401(k) and pension investments have suffered losses as a result of the breach of fiduciary duties by plan administrators and the companies they represent. Berger & Montague has recovered hundreds of millions of dollars in lost retirement benefits for American workers and retirees, and also gained favorable changes to their retirement plans.

- ▪ *In re Unisys Corp. Retiree Medical Benefits:* The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

- ▪ *Local 56 U.F.C.W. v. Campbell Soup Co.:* The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D.N.J.)).

- ▪ *Rose v. Cooney:* No. 5:92-CV-208 (D. Conn.) The firm, acting as lead counsel, obtained more than $29 million in cash and payment guarantees from Xerox Corporation to resolve claims of breach of fiduciary duty for plan investments in interest contracts issued by Executive Life Insurance Company.

- ▪ *In re Masters, Mates & Pilots Pension Plan and IRAP Litig.:* No. 85 Civ. 9545 (VLB) (S.D.N.Y) The firm, as co-lead counsel, participated in lengthy litigation with the U.S. Department of Labor to recover losses to retirement plans resulting from imprudent and prohibited investments; settlements in excess of $20 million, which fully recovered lost principal, were obtained to resolve claims of fiduciary breaches in selecting and monitoring investment managers and investments.

- ▪ *In re Lucent Technologies, Inc. ERISA Litigation:* No. 01-CV-3491 (D.N.J.) The firm served as co-lead counsel in this class action on behalf of participants and beneficiaries of the Lucent defined contribution plans who invested in Lucent stock, and secured a settlement providing injunctive relief and for the payment of $69 million.

- *Diebold v. Northern Trust Investments, N.A.*: 1:09-cv-01934 (N.D. Ill.) As co-lead counsel in this ERISA breach of fiduciary duty case, the firm secured a $36 million settlement on behalf of participants in retirement plans who participated in Northern Trust's securities lending program. Plaintiffs alleged that defendants breached their ERISA fiduciary duties by failing to manage properly two collateral pools that held cash collateral received from the securities lending program. The settlement represented a recovery of more than 25% of alleged class member losses.

- *In re SPX Corporation ERISA Litigation*: No. 3:04-cv-192 (W.D.N.C.) The firm recovered 90% of the estimated losses 401(k) plan participants who invested in the SPX stock fund claimed they suffered as a result of defendants' breaches of their ERISA fiduciary duties caused them.

- *In re Nortel Networks ERISA Litigation*: Civil Action No. 01-cv-1855 (MD Tenn.) The firm represented a class of former workers of the bankrupt telecommunications company of mismanaging their employee stock fund in violation of their fiduciary duties. The case settled for $21.5 million.

- *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*: 1:10-cv-10588-DPW (D. Mass). The firm served as co-lead counsel in this ERISA case that alleged that defendants breached their fiduciary duties to the retirement plans it managed by taking unreasonable compensation for managing the securities lending program in which the plans participated. After the court certified a class of the plans that participated in the securities lending program at issue, the case settled for $10 million on behalf of 1,500 retirement plans that invested in defendants' collective investment funds.

- *In re Eastman Kodak ERISA Litigation*: Master File No. 6:12-cv-06051-DGL (W.D.N.Y.) The firm served as class counsel in this ERISA breach of fiduciary duty class action which alleged that defendants breached their fiduciary duties to Kodak retirement plan participants by allowing plan investments in Kodak common stock. The case settled for $9.7 million.

- *Lequita Dennard v. Transamerica Corp. et al.*: Civil Action No. 1:15-cv-00030-EJM (N.D. Iowa). The firm served as counsel to plan participants who alleged that they suffered losses when plan fiduciaries failed to act solely in participants' interests, as ERISA requires, when they selected, removed and monitored plan investment options. The case settled for structural changes to the plan and $3.8 million monetary payment to the class.

-

## Insurance and Financial Services Products / Services

When insurance companies and affiliated financial services entities engage in fraudulent, deceptive or unfair practices, Berger & Montague helps injured parties recover their losses. We focus on fraudulent, deceptive and unfair business practices across all lines of insurance and financial products and services sold by insurers and their affiliates, which include annuities, securities and other investment vehicles.

- *Spencer v. Hartford Financial Services Group, Inc.:* The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims. To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life. By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants. On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)). On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f).On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

- ▪ **_Nationwide Mutual Insurance Company v. O'Dell:_**  The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West Virginia Circuit Court, Roane County (_Nationwide Mutual Insurance Company v. O'Dell_, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31.  The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act.  On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

## Lending Practices and Borrowers' Rights

Berger & Montague's attorneys fight vigorously to protect the rights of borrowers when they are injured by the practices of banks and other financial institutions that lend money or service borrowers' loans. Berger & Montague has successfully obtained multi-million dollar class action settlements for nationwide classes of borrowers against banks and financial institutions and works tirelessly to protect the rights of borrowers suffering from these and other deceptive and unfair lending practices.

- ▪ **_Coonan v. Citibank, N.A._**:  The firm, as Co-Lead Counsel, prosecuted this national class action against Citibank and its affiliates in the United States District Court for the Northern District of New York concerning alleged kickbacks Citibank received in connection with its force-placed insurance programs.  The firm obtained a settlement of $122 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ **_Arnett v. Bank of America, N.A._**:  The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the District of Oregon concerning alleged kickbacks received in connection with its force-placed flood insurance program.  The firm obtained a settlement of $31 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ **_Clements v. JPMorgan Chase Bank, N.A._**:  The firm, as Co-Lead Counsel, prosecuted this national class action against JPMorgan Chase and its affiliates in the United States District Court for the Northern District of California concerning alleged kickbacks received in connection with its force-placed flood insurance program.  The firm obtained a settlement of $22,125,000 on behalf of a class of thousands of borrowers.

- ▪ **_Holmes v. Bank of America, N.A._**:  The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the Western District of North Carolina concerning alleged kickbacks received in connection with its force-placed wind insurance program.  The firm obtained a settlement of $5.05 million on behalf of a class of thousands of borrowers.

## Representing Opt-Outs in Class Actions

Berger & Montague offers exceptional representation of businesses, institutional investors, employee benefit or ERISA plans and governmental entities when they wish to opt out of securities and antitrust class actions filed by others and file an individual lawsuit to maximize their recovery or have a say in the proceedings.  We advise and represent clients who may opt out of class actions filed by others – often securities fraud cases and price-fixing and monopolization antitrust claims – and help them pursue their

claims independently of the class action, where they often stand to receive a much greater financial recovery.

## Whistleblower, Qui Tam, and False Claims Act

Berger & Montague has represented whistleblowers in matters involving healthcare fraud, defense contracting fraud, IRS fraud, securities fraud, and commodities fraud, helping to return more than $1.1 billion to federal and state governments.  In return, whistleblower clients retaining Berger & Montague to represent them in state and federal courts have received more than $100 million in rewards.  Berger & Montague's time-tested approach in Whistleblower/Qui Tam representation involves cultivating close, productive attorney-client relationships with the maximum degree of confidentiality for our clients.

## Judicial Praise for Berger & Montague Attorneys

Berger & Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country.  Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

## Securities Litigation

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

> Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig*., 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).

From **Chancellor William Chandler, III** of  the Delaware Chancery Court:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case.  Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case.  And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do.  I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

17

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.  The class also received $14,435,104 in interest on the Notes."

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).

From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

"In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

\* \* \*

"Throughout the course of their representation, the attorneys at Berger & Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

"[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines and the pressure of handling thousands of documents in a large multi-district action...  These counsel have also acted vigorously in their clients' interests...."

\* \* \*

"The management of the case was also of extremely high quality....  [C]lass counsel is of high caliber and has extensive experience in similar class action litigation....  The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

"In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger & Montague...."

* * *

"Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).


## Antitrust

From **Judge Madeline Cox Arleo** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express.

Transcript of the September 9 to 11, 2015 Daubert Hearing in Castro v. Sanofi Pasteur, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.


From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

* * *

> "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues …. The law firms of Berger & Montague and Coughlin Stoia were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

*In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 129 (2009).


From **Judge Faith S. Hochberg** of the United States District court for the District of New Jersey:

> "[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

*In re Remeron Antitrust Litig.*, Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In Re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).


From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

> "[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).


From **Judge Charles P. Kocoras** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested.  There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).


From **Judge Peter J. Messitte** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).


From **Judge Donald W. Van Artsdalen** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high.  The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions.  Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

## Civil/Human Rights Cases

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank.  It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda.  It was their research and their work which highlighted these old injustices and forced us to confront them.  Without question, we would not be here without them....  For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

## Insurance Litigation

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

> Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case….[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent….  [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense….  [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny….  [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

Regarding the work of Berger & Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.*, in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

## Customer/Broker Arbitrations

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course

of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general.  I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

Other

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia.  We appreciate the considerable time you spent preparing and delivering this important course across the state.  It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger & Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.


## Primary B&M Attorneys Overseeing the *Equifax* Data Breach Litigation

### Sherrie R. Savett



Sherrie R. Savett is the Chairwoman of Berger & Montague, the Chair of the Securities Litigation Department and Qui Tam/False Claims Act Department, and a member of the firm's Management Committee.  She has practiced in the area of securities litigation, consumer protection litigation, and class actions since 1975. Several securities class actions in which Ms. Savett served as lead counsel are among the largest securities class actions settled in the United States since the enactment of the Private Securities Litigation Reform Act ("PSLRA") in 1995.  Examples are Securities class actions against Rite Aid, Waste Management, Sotheby's, Alcatel, Fleming, Xcel, and Cigna (cited within). In the past decade, she has also worked actively in data breach litigation.  She has also been heavily

involved in the False Claims Act arena and was a part of the team that litigated and settled the Average Wholesale Price qui tam cases which settled collectively for over $1 billion. She has advanced investor protection by helping to establish several significant legal precedents. Ms. Savett speaks and writes often on professional topics, and is also a business and community leader.  Most recently, in 2015 and 2016 she served as a panelist in American Law Institute programs held in New York City called Securities and Shareholder Litigation: Cutting-Edge Developments, Planning and Strategy.

**Data Breach Litigation**

Ms. Savett's data breach class actions include the following:

***In re TJX Cos. Retail Security Breach Litig.*, MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.) (Young, J.).** Ms. Savett was Co-Lead Counsel in this landmark data breach class action.  *TJX* was one of the first major data breach class actions in history, and it resulted in one of the largest data breach settlements to date.  Hackers stole 45 million credit and debit card numbers and 455,000 driver's license numbers, which in many instances matched Social Security numbers.  The breach was the then-largest theft of consumer data in U.S. history.  Ms. Savett obtained a settlement valued at over $200 million, including: (i) two years of credit monitoring and identity theft insurance offered to 455,000 individuals; (ii) a $17 million fund available to 45 million people to reimburse out of pocket costs and lost time to mitigate or correct an actual or potential identity theft; and (iii) injunctive relief regarding improvements to TJX's data security systems, including an independent expert examination and corporate structures to oversee security of data.  Those elements became the template for most subsequent data breach settlements.  The settlement established the principle that time spent trying to mitigate and rectify potential or actual identity theft could be compensated.  In approving the settlement, former Chief Judge William Young praised the result as an "excellent settlement" containing "innovative" and "groundbreaking" elements.

***In re Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.).** Ms. Savett serves on the Executive Committee. Hackers stole 15 million Social Security numbers and related personal information from a credit reporting agency. Plaintiffs largely prevailed on the motion to dismiss.  *In re Experian Data Breach Litig.*, No. 15-cv-01592, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016).

***In re Countrywide Fin'l. Corp. Customer Data Security Breach Litig.*, MDL 1998, No. 08-MD-01998-TBR (W.D. Ky.).** Ms. Savett served on the Executive Committee.  A Countrywide employee was arrested for stealing and selling Countrywide customers' Social Security numbers, bank account information, and other sensitive data. The case settled for benefits including 2 years of credit monitoring offered to 1.9 million individuals, a $6.5 million cash fund to reimburse out-of-pocket losses for 17 million individuals, and injunctive relief.  *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 08-MD-01998-TBR, 2010 WL 3341200, at *9 (W.D. Ky. Aug. 23, 2010).

***In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, MDL 2046, No. 09-MD-2046 (S.D. Tex.).** Ms. Savett served on the Steering Committee.  Hackers stole more than 100 million credit and debit card numbers from a large credit card processor.  The case settled for a cash fund to reimburse out-of-pocket costs, and injunctive relief.  *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1049 (S.D. Tex. 2012).

***In re: Anthem, Inc. Data Breach Litig.*, MDL 2617, No. 15-MD-02617 (N.D. Cal.).** Ms. Savett and B&M assist Lead Counsel. Hackers stole 80 million insureds' personal information including Social Security numbers and related information.  Ms. Savett's client is a Named Plaintiff on the Consolidated Complaint.  B&M assisted with discovery, defended its client's deposition, and participated in other facets of the litigation.  A $150 million settlement is pending.

***In re: Medical Informatics Engineering, Inc. Customer Data Security Breach Litig.*, MDL 2667, No. 15-md-02667 (N.D. Ind.).** Ms. Savett and B&M assist Lead Counsel.  Hackers stole medical and personal information for

4 million individuals from a medical records company.  Ms. Savett represents multiple Named Plaintiffs on the Consolidated Complaint.  B&M assists with various facets of the litigation.  The case is ongoing.

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, MDL 1954, No. 08-md-01954 (D. Me.).  Ms. Savett served in a supporting capacity where her client was a Named Plaintiff in the Consolidated Complaint.  The data breach involved the theft of 4 million credit and debit card numbers from a grocery store chain.  B&M assisted lead counsel with dispositive briefing and defending B&M's client's deposition.  Groundbreaking appellate law was established recognizing damages for out-of-pocket credit monitoring costs and replacement credit card fees.  *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 167 (1st Cir. 2011).  The First Circuit ruling serves as often-cited precedent in data breach litigation.

**Securities Litigation**

Ms. Savett has served as lead or co-lead counsel or as a member of the executive committee in a large number of important securities and consumer class actions in federal and state courts across the country.  At one time, she led 8 of the largest 100 securities class action cases ever settled in the United States.  Her securities cases include:

*Advanced Micro Devices* (class settlement of $11.5 million) (No. C-93-20662-JW (N.D. Cal.));

\* *In re Alcatel Alsthom Securities Litigation:* The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash.  (MDL Docket No. 1263 (PNB) (E.D. Tex.));

*BankAmerica* (derivative settlement of $39.25 million) (No. 99- 1264- CEJ (E.D. Mo.));

*Boston Chicken* (class settlement of $21.5 million) (No. 1:97-cv-01308 (D.CO));

*Bristol-Myers Squibb* (class settlement of $20 million) (No. 02-CV-2251 (S.D.NY));

*In re Campbell Soup Co. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class.  (No. 00-cv-152 (JEI) (D.N.J.));

*Cephalon* (class settlement of $17 million) (No. 96-CV-0633 (E.D.Pa);

\**Cigna* In re CIGNA Corp. Securities Litigation:  The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class.  (Master File No. 2:02-cv-8088 (E.D. Pa.));

*Coastal Physician Group* (class settlement of $8.15 million) (No. 97-CV-1126-1 (N.D.Cal.));

*Crocker Bank* (class settlement of $35 million) (No. 7405 (Del. Ch.));

*Employee Solutions* (class settlement valued at $15 million) (No. 97-CV-00545 (D.AZ);

*Fidelity/Micron* (class settlement of $10 million) (No. 95-12676-RGS (D.Mass.));

\* *In re Fleming Companies, Inc. Securities Litigation:*  The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class.  (No. 5-03-MD-1530 (TJW) (E.D. Tex.));

*Genentech* (class settlement of $29 million) (No. 11,377 (Del. Ch.));

*Global Crossing* (class settlement of $444 million) (No. 1:02-cv-00910 (S.D.NY.));

*Home Shopping Network* (class settlement of $18.2 million) (No. 87-428-Civ-T-13(A) (M.D. Fla.));

*\* In re KLA Tencor Securities Litigation:*  The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors.  (No. 06-cv-04065 (N.D. Cal.));

*Long Island Lighting* (class settlement of $48.5 million) (No. No. CV 84-0588 (E.D.Pa.);

*Marconi* (class settlement of $7.1 million) (No. 2:01-CV-1259 (W.D.Pa.);

*\* Medaphis/Deloitte & Touche* (class settlement of $96.5 million) (No. 1:96-CV-2088-FMH (N.D.GA));

*MicroWarehouse* (class settlement valued at $30 million) (No. 3:96-cv-01920-DJS (D.CT.));

*Motorola* (class settlement of $15 million) (No. 95-C-1069 (N.D.Ill.));

*Oak Industries* (class settlement in excess of $35 million) (No. 83-cv-0537-G(M) (S.D.Cal.));

*Plains All American Pipeline LP* (class settlement of $24.1 million) (No. 4:99-cv-04137 (S.D.TX));

*Policy Management* (class settlement of $32 million) (No. 3:93-0807-17 (D.S.C.));

*Policy Management II* (class settlement of $7.75 million) (3:00-cv-00656-JFA (D.S.C.));

*In re Premiere Technologies, Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (No.1:98-cv-1804-JOF (N.D. Ga.));

*In re PSINet, Inc., Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (No. 00-cv-1850-A (E.D. Va.));

*Public Service Company of New Mexico* (class and derivative settlements of $33 million) (No. 89-1033 (D. N.M.));

*Raychem* (class settlement of $19.5 million) (No. 89-20801 (N.D.Cal.);

*\* In re Rite Aid Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers.  (No. 99-cv-1349 (E.D. Pa.));

*In re Safety-Kleen Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained a class  settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence. (No. 3:00-cv-736-17 (D.S.C.));

*In re Sepracor Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes.  (No. 02-cv-12235-MEL (D. Mass.));

*Shopko Stores* (class settlement of $4.9 million) (No. 01-C-1034 (E.D.WI));

*Silver v. UICI:*  The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99-cv-2860-L (N.D. Tex.)).

*SmithKline Beckman* (class settlement of $22 million) (No. 88-7474 (E.D.Pa.));

*\* In re Sotheby's Holding, Inc. Securities Litigation:*  The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00-cv-1041 (DLC) (S.D.N.Y.));

*Summit Technology* (class settlement of $10 million) (No. 96-11589 (D.Mass.));

*Sunrise Medical* (class settlement of $20 million) (No. 95-cv-03606 (S.D.Cal.));

*Subaru* (class settlement of $70 million) (No. C-00016-90 (NJ Super. Ct., Camden));

*Synergen* (class settlement of $28 million) (No. 93-B-402 (D.DC));

*U.S. Bioscience* (class settlement valued at $15.25 million) (No. 92-0678 (E.D.Pa));

*United HealthCare* (class settlement of $20.1 million) (No. 0:98-cv-01888 (D.MN));

*United Telecommunications* (class settlement of $28 million) (No. 92-105 (D.DC));

*Valujet* (class settlement of $5 million) (No. 1:96-CV-1355 (N.D.GA);

*W.R. Grace* (derivative settlement of $8.5 million) (No.2:10-cv-02326 (E.D. Pa.));

* ***In re Waste Management, Inc. Securities Litigation:***  In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants.  (No. 97-cv-7709 (N.D. Ill.)); and

* ***In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:***  The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

* Listed among the largest securities class actions settled in the United States since the enactment of the PSLRA in 1995.

**Investor Protection**

Ms. Savett has helped establish several significant precedents. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the anti-fraud  provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that  municipalities that issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir.1996).

In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D.  80 (E.D. Pa. 1993).

In the *CIGNA Corp. Securities Litigation*, the Court denied defendants' motion for summary judgment, holding that a plaintiff has a right to recover for losses on shares held at the time of  a corrective disclosure and his gains on a stock should not offset his losses in determining legally recoverable damages.  *In re CIGNA Corp. Securities Litigation*, 459 F. Supp. 2d 338 (E.D. Pa. 2006).

**Judicial Praise**

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of  Pennsylvania, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, hearing held April 4,  1994 (E.D. Pa. 1994):

> "The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . ., and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good

26

as they come."

From **Judge David S. Doty**, of the U.S. District Court for the District of Minnesota, *In re Xcel Energy Sec. Deriv. "ERISA" Litig.,* 364 F. Supp. 2d 980, 992, 995-96 (D. Minn. 2005):

> "... [A] just result without the assistance of a governmental investigation," plaintiffs' co-lead counsel Berger & Montague "conducted themselves in an exemplary manner," "consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion," and "moved the case along expeditiously."

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois, *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999):

> "... [Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania,
*In re Rite Aid Inc. Sec. Litig*., 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003):

> "This litigation presented layers of factual and legal complexity which assured that, absent a global settlement, these disputes would take on Dickensian dimensions …  In short, it would be hard to equal the skill class counsel demonstrated here ... [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings."

From U.S. District Judge **Michael M. Baylson,** *In Re: CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007):

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

**Professional Leadership**

Ms. Savett is active in her profession, and is a frequent author and lecturer on prosecuting shareholder and consumer class actions.

In addition to the 2015 and 2016 ALI programs listed above, in April 2013, Ms. Savett spoke at the 2013 ABA Litigation Section Annual Conference in Chicago on two panels. One program on securities litigation was entitled "The Good, The Bad, and The Ugly: Ethical Issues in Class Action Settlements and Opt Outs." The other program focused on consumer class actions in the real estate area and was entitled "The Foreclosure Crisis Puzzle:  Navigating the Changing Landscape of Foreclosure."

In May 2007, Ms. Savett spoke in Rome, Italy at the conference presented by the Litigation Committee of the Dispute Resolution Section of the International Bar Association and  the Section of International Law of the American Bar Association on class certification. Ms. Savett participated in a mock hearing before a United States Court on whether to certify a worldwide class action that includes large numbers of European class members.

She has lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions. She is frequently invited to present and serve as panelist in American Bar Association, American Law Institute/American Bar Association and Practicing Law Institute (PLI) conferences on securities class action litigation and the use of class actions in consumer litigation. She has been a presenter and panelist at PLI's Securities Litigation and Enforcement Institute annually from 1995 to 2010. She has also spoken at major institutional investor and insurance industry conferences, and DRI -- the Voice of the

Defense Bar. In February 2009, she was a member of a six person panel who presented an analysis of the current state of securities litigation before over 1,000 underwriters and insurance executives at the PLUS (Professional Liability Underwriting Society) Conference in New York City. She has presented at the Cyber-Risk Conference in 2009 and will present at the PLUS Conference in Chicago on November 16, 2009 on the subject of litigation involving security breaches and theft of personal information.

**Publications**

Ms. Savett has been a member of the Editorial Board of the *Securities Litigation Report* and a contributor to this publication.

She has written numerous articles on securities and complex litigation issues, including:

"Plaintiffs' Vision of Securities Litigation: Current Trends and Strategies," 1762 *PLI,* October 2009

"Plaintiffs' Vision of Securities Litigation: Trends/Strategies in 2005-2007," 1620 *PLI,* September 2007

"Plaintiffs' Vision of Securities Litigation: Trends/Strategies in 2005-2007," SM086 ALI ABA, June 7-8, 2007

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1557 *PLI*, September 2006

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1505 *PLI*, September 2005

"Recent Developments in the Lead Plaintiff and Lead Counsel Provisions of the Private Securities Litigation Reform Act (PSLRA)," 1 *Securities Litigation Report*, (Glasser LegalWorks) December 2004-January 2005

"Primary Liability of 'Secondary' Actors under the PSLRA," 1 *Securities Litigation Report*, (Glasser) November 2004

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1442 *PLI/Corp.13*, September-October 2004

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SJ084 ALI-ABA 399, May 13-14, 2004

"The 'Indispensable Tool' of Shareholder Suits," *Directors & Boards*, Vol. 28, February 18, 2004

"Plaintiff's Perspective on How to Obtain Class Certification in Federal Court in a Non-Federal Question Case"*, 679 *PLI*, August 2002

"Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley from a Plaintiff's Perspective," 9 *Securities Litigation and Regulation Reporter* (Andrews), December 23, 2003

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SG091 ALI-ABA, May 2-3, 2002

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SF86 ALI- ABA 1023, May 10, 2001

"*Janus Capital Group, Inc. v. First Derivative Traders*: Let the 'Maker Beware,'" ALI CLE March 31, 2016 Study Materials

"Greetings from the Plaintiffs' Class Action Bar: We'll Be Watching," SE082 ALI-ABA739, May 11, 2000

"Preventing Financial Fraud," B0-00E3 *PLI* BO-00E3, April-May 1999

"Shareholders Class Actions in the Post Reform Act Era," SD79 ALI-ABA 893, April 30, 1999

"What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action," with Arthur Stock, *PLI*, ALI/ABA 7239, November 1998

"The Merits Matter Most: Observations on a Changing Landscape under the Private Securities Litigation Reform Act of 1995," 39 *Arizona Law Review* 525, 1997

"Everything David Needs to Know to Battle Goliath," ABA Tort & Insurance Practice Section, *The Brief*, Vol. 20, No.3, Spring 1991

"The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy*," PLI* H4-0528, September 1, 1987

"Prosecution of Derivative Actions: A Plaintiff's Perspective," *PLI* H4-5003, September 1, 1986

**Honors**

Ms. Savett is widely recognized as a leading litigator and a top female leader in the profession by local and national legal rating organizations.

*The Legal Intelligencer* and *Pennsylvania Law Weekly* named her one of the "56 Women Leaders in the Profession" in 2004.

Thirteen times from 2003 to the present, Berger & Montague was named to the *National Law Journal's* "Hot List" of law firms nationally "who specialize in plaintiffs' side litigation and have excelled in their achievements." Having achieved this designation repeatedly, the firm is on the *National Law* Journal's "Hall of Fame." Ms. Savett's achievements were mentioned, among others, in each year.

Ms. Savett was named a "Pennsylvania Top 50 Female Super Lawyer" and a "Pennsylvania Super Lawyer" from 2004 through 2009 by *Philadelphia Magazine* after an extensive nomination and polling process among Pennsylvania lawyers.

In 2006 and 2007, she was named one of the "500 Leading Litigators" and "500 Leading Plaintiffs' Litigators" in the United States by *Lawdragon*. In 2008, Ms. Savett was named as one of the "500 Leading Lawyers in America." Also in 2008, she was named one of 25 "Women of the Year" in Pennsylvania by *The Legal Intelligencer* and *Pennsylvania Law Weekly* which stated on May 19, 2008 in the *Women in the Profession* in *The Legal Intelligencer* that she "has been a prominent figure nationally in securities class actions for years, and some of her recent cases have only raised her stature."

In June 2008, Ms. Savett was named by *Lawdragon* as one of the "100 Lawyers You Need to Know in Securities Litigation."

**Business and Community Leadership**

A business leader, Ms. Savett is a member of The Forum of Executive Women and a member of the Union League of Philadelphia.

Ms. Savett is active in community affairs. She is was President of The Jewish Federation of Greater Philadelphia, and has served for decades on its Board of Trustees. She also serves as Vice Chairperson of the Board of Directors of the National Liberty Museum and the Board of the Anti-Defamation League. In 2005, she received The Spirit of Jerusalem Medallion, the State of Israel Bonds' highest honor.

**Education**

She earned her J.D. from the University of Pennsylvania Law School, and a B.A. *summa cum laude* from the

University of Pennsylvania.

**Member/Admission**

Supreme Court of Pennsylvania (10/04/73)

United Stated District Court, Eastern District of Pennsylvania (11/15/73)

United States Supreme Court (04/14/97)

United States District Court, Central District of Illinois (05/31/96)

United States District Court, District of Colorado (09/22/97)

United States District Court, Eastern District of Wisconsin (08/17/00)

United States District Court, Eastern District of Michigan (12/15/00)

United States First Circuit of Appeals (11/19/04)

**Personal**

Ms. Savett has three children and three grandchildren. In addition to her family, she enjoys tennis, physical training, travel and collecting art.


## Jon J. Lambiras



Jon J. Lambiras, Esq., CPA, CFE is a shareholder in the Consumer Protection and Securities Fraud practice groups at Berger & Montague.  In the Consumer Protection group, he concentrates on unjust business practices and data breach litigation involving the theft of personal information by computer hackers.  In the Securities group, he concentrates on class action and opt-out litigation involving accounting fraud and financial misrepresentations.

Jon is an attorney, Certified Public Accountant, and Certified Fraud Examiner.  Prior to law school, he practiced accounting for four years as a financial statement auditor, including with a Big-Four accounting firm.

Jon has obtained the highest peer review rating, "AV Preeminent 5.0 out of 5.0," in Martindale-Hubbell for his legal abilities and ethical standards.  Also, for several years from 2012 to the present he was selected for inclusion in "Pennsylvania Super Lawyers" or "Rising Stars," an honor conferred on less than 5% of attorneys in Pennsylvania.

Jon has published numerous articles and lectured on various class action topics as summarized below.  He has also commented on class action issues for publications including The Washington Post and The Legal Intelligencer, among others.  The cases on which he worked have collectively settled for hundreds of millions of dollars.

While in law school, Jon was a Lead Articles Editor for the Pepperdine Law Review.

Jon has been heavily involved in numerous data breach class actions including *TJX, Experian, Countrywide, Heartland, Anthem, Medical Informatics*, and *Hannaford*.  Those cases are described in Sherrie Savett's biography above.

Jon's speaking engagements include the following:

- "Securities Fraud Class Actions: A Bird's Eye View," 2017, presented to the Delaware County Bar Association.

- "Securities Fraud Class Actions: A Bird's Eye View for Attorney-CPAs," 2017, presented to the Philadelphia Chapter of the American Association of Attorney-CPAs.

- "How the CFO Landed in Prison: The Nuts & Bolts of His Fraud," 2012, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs.

- "State of the Cyber Nation Address," 2011, presented at HB Litigation/NetDiligence Cyber Risk & Privacy Forum.

- "Data Breach Class Actions Involving Theft of Personal Information," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs.

- "Class Actions Involving Estate Planning, Financial Planning, Trusts, and Income Tax," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs.

- "Securities Fraud Class Actions: Comparing and Contrasting the Plaintiffs' and Defendants' View," 2007, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs.

- "Securities Fraud Class Actions: A Primer for the Attorney-CPA," 2006-08, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs.

Jon's publications include the following:

- "How a CFO Landed in Prison," FRAUD MAGAZINE (Jan./Feb. 2013).

- "Hacked," a case study published in Computer Fraud Casebook: The Bytes That Byte (Wiley Publishing 2008, ISBN #978-0-470-27814-7).

- "White-Collar Crime: Why the Sentencing Disparity Despite Uniform Guidelines?" 30 PEPP. L. REV. 459 (2003) (named Student Article of the Year by Pepperdine Law Review - *i.e.*, best article among all student articles published in Pepperdine Law Review that year).

- "Inside Job: A Guide to Insider Trading," 17 THE WHITE PAPER 23 (July/Aug. 2003).

**Professional Leadership**

Jon was an officer of the Philadelphia Chapter of the American Association of Attorney-Certified Public Accountants for many years.  He is also a member of the speaker-search committee of the Philadelphia Chapter of the Association of Certified Fraud Examiners.

**Charitable Activities**

Jon is involved in various charitable activities.  He has run food drives, clothing drives, toy drives, and blood drives at Berger & Montague.

**Education**

Pepperdine University School of Law, 2003.  Bryant College, B.S. in Accounting, *cum laude*, 1996.