**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: EQUIFAX, INC., Customer Data Security Breach Litigation | MDL Docket No. 2800 No.: 1:17-md-2800-TWT CONSUMER ACTIONS |

## WILLIAM H. MURPHY III's APPLICATION FOR APPOINTMENT AS LEAD COUNSEL AND SUPPORTING MEMORANDUM

William H. Murphy III ("Mr. Murphy") of Murphy, Falcon & Murphy ("Murphy Firm" or "Firm") makes this Application pursuant to Case Management Order ("CMO") Nos. 1 (ECF No. 23) and 2 (ECF No. 87) and Federal Rules of Civil Procedure 23(g) for appointment as Lead Counsel, or in the alternative, as a member of the Plaintiff's Steering Committee.

### I.    INTRODUCTION

This Court will no doubt be inundated with dozens of applications for appointment of lead counsel.  Most of those applications will look the same and sound the same—and the attorneys making them will probably even *look* the same. This application is different.

Ever since 2010, when Judge Harold Baer, Jr. raised the issue of the importance of diversity in lead counsel appointments in class actions in the *In re Gildan Activewear Inc. Securities Litigation*, more and more courts, legal scholars, and observers have noted the importance of having diverse lead counsel appointments in class action litigation.[1]

Diversity in lead counsel is not just a matter of historical equity, it is a question of properly representing the interests of plaintiffs of differing races, genders, religions, ethnicities, nationalities, sexual orientations, and walks of life. Mr. Murphy and his firm represent a diversity of approach and perspective that is unmatched by any other applicant. As a 100% minority owned firm in operation for more than 70 years, the Murphy Firm has built its reputation on fighting for the rights of the underrepresented and underprivileged. The Firm's attorneys are diverse both personally and professionally, and work collaboratively so as to ensure that each differing perspective is considered and marshalled for the client's benefit. Appointing diverse lead counsel avoids the problems associated with

---

[1] American Bar Association, Litigation News, Orders Highlight Need for Diversity in Appointing Class Counsel (December 1, 2010) *available at* https://apps.americanbar.org/litigation/litigationnews/top_stories/120210-diversity-class-counsel.html

collusive settlements and repeat class action players. And it sends a strong and powerful message that the courthouse door is open to all comers—whatever their background.

In this litigation, there is only one attorney and one firm that can bring the desired diversity in representing the plaintiffs in this case—and that can match that diversity with a stellar track record of successful leadership, settlements, and litigation in class actions and mass tort litigation. That attorney is Mr. Murphy— and that firm is the Murphy Firm.

Mr. Murphy has extensive experience successfully litigating and settling complex matters, including nationwide class actions, as both defense and plaintiffs' counsel. In addition, he has a background in corporate transactions. Mr. Murphy's experience, coupled with the fact that he has already established cooperative and collaborative relationships with multiple firms involved in this litigation, emphasizes his willingness and ability to work well with other attorneys from all backgrounds, on both sides of the table, even when the litigation at hand presents difficult political, social, and legal issues. Given his unique experience and history and the need for diverse lead counsel in class actions, Mr. Murphy

stands alone in his ability to serve as Lead Counsel, either singularly or as part of a larger team.

## II.   ARGUMENT

### A.   Mr. Murphy has extensive experience in corporate transactions, complex litigation, and class actions and has achieved significant results on both sides of the table.

Mr. Murphy is the managing partner of the Murphy Firm and received his Juris Doctorate from the Georgetown University Law Center in 1994 and his B.A. from Williams College in 1990.[2] He is a member of several state and federal bars, including Maryland, New York, the United States District Courts for the District of Maryland and the Southern District of New York, and the Supreme Court of the United States. After graduating from law school, Mr. Murphy worked as an associate attorney at Curtis, Mallet-Prevost, Colt & Mosle, a New York based law firm specializing in international transactions that, given its 188 years of continuous operation, is one of the nation's oldest law firms. While there, Mr. Murphy specialized in international corporate transactions, representing clients in complex business transactions, which included mergers, acquisitions, finance, and bankruptcy arbitrage. In that capacity, he represented a $4.7 billion takeover target,

---

[2] Mr. Murphy's *curriculum vitae* is attached as Exhibit 2.

a $65 million seller of its assets, and an international oil and gas producer in a $500 million asset securitization.

Mr. Murphy joined his father, William H. Murphy, Jr., and the Murphy Firm in Baltimore in 1997. He became its managing partner in 1999. As managing partner, Mr. Murphy set his sights on broadening the capabilities of the Murphy Firm and was soon hired to defend Microsoft in two national employment class actions. In those cases, the Murphy Firm worked cooperatively with multiple national law firms and their efforts resulted in a denial of class certification in both cases. Thereafter, Mr. Murphy was hired to either lead or take on a significant role in the defense of multiple complex national class actions and mass tort cases around the country.

Notably, H&R Block hired Mr. Murphy first as local counsel in a consumer fraud class action filed in Baltimore. Soon thereafter, he was elevated to lead H&R Block's defense of multiple class actions in multiple jurisdictions as national coordinating counsel. That litigation covered a variety of claims related to H&R Block's Refund Anticipation Loans ("RAL") program. In his role as national coordinating counsel, Mr. Murphy managed discovery, opposed class certification in all cases, prepared all cases for trial, forged creative settlement solutions, and

spearheaded settlement negotiations in an ever-shifting procedural landscape. The RAL litigation, which included tens of millions of class members who claimed billions of dollars in damages, continued for over six years and was eventually settled separately in three different jurisdictions. In this role, Mr. Murphy was responsible for both managing and coordinating the efforts of multiple national law firms across the country, as well as negotiating and working closely with numerous plaintiffs' counsel. As national coordinating counsel, he was able to efficiently, cooperatively, and effectively obtain a successful resolution of the litigation.

Since 1999, Mr. Murphy and the Murphy Firm have gone on to represent such corporate giants as Johnson & Johnson, Microsoft, Sony, Qualcomm, Coca-Cola Enterprises, Inc., H&R Block, the Baltimore Orioles, the Washington Redskins, the Maryland Stadium Authority, Don King Productions, Honeywell Corporation, Allied Signal, Inc. and the University of Maryland Medical System.

The extent and breadth of Mr. Murphy's and the Murphy Firm's experience in corporate transactions and the defense of large corporate entities in complex, multi-jurisdictional matters have significantly informed their representation of plaintiffs. Mr. Murphy maintains a robust plaintiffs' practice in both state and federal courts, primarily focusing on class actions, mass torts, and individual cases

regarding consumer protection, catastrophic injury, and civil rights violations, as discussed in more detail below.

> **B. Mr. Murphy and the Murphy Firm are experienced in handling large, complex class actions such as this and are well-positioned to lead this litigation on behalf of Plaintiffs.**

Since joining the Murphy Firm in 1997, a substantial amount of Mr. Murphy's time has been dedicated to representing defendants and plaintiffs in class actions. Mr. Murphy has navigated intensely fought cases on a national scale, including cases that required delicate and deft handling of nuanced legal and political issues.  Selected class actions and mass actions are as follows:

- ***Boler, et al. v. Earley, et al.*** (pending) (United States District Court, Eastern District of Michigan). The Murphy Firm filed the second class action case regarding the Flint, Michigan water crisis on behalf of all Flint residents. Causes of action include impairment of the right to contract, brought pursuant to 42 U.S.C. § 1983, and Michigan state law claims. The Sixth Circuit recently reversed the District Court's dismissal of the case, and it once again is in active litigation.

- ***Scales, et al. v. Mid-Atlantic Permanente Medical Group*** (pending) (Circuit Court for Prince George's County, Maryland). State class action case against several Kaiser Permanente entities and Dr. Bryan Williams regarding Williams' sexual assault of his female patients, occurring over a period of years. This case is in active litigation with the Murphy Firm as de facto class counsel.

- ***M.S. v. Hamilton County Department of Education, et al.*** (pending) (United States District Court for the E.D. Tennessee; U.S. Court of

Appeals for the Sixth Circuit). Pending putative class action filed pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment against the Hamilton County Department of Education and Durham Bus Services, LLC, regarding the deadly school bus crash that occurred in Chattanooga, Tennessee in November 2016. Currently on appeal in the Sixth Circuit, where briefing is in progress.

- *Fallows, et al. v. St. Joseph Medical Center, Inc.* (2014) (Circuit Court for Baltimore City, Maryland). Obtained $50 million in settlements for individuals and lead counsel for Plaintiffs and a certified class action with St. Joseph's Medical Center, Inc. on behalf of patients that had unnecessary cardiac stents placed by Dr. Mark Midei.

- *Do Right's Plant Growers, et al. v. RSM Equico, Inc., et al.* (2011) (Superior Court for Orange County, California). As settlement counsel for Defendant, successfully negotiated a $37.5 million class action settlement.

- *Wynn et al. v. MJ Harbor Hotel, LLC, et al.* (2010) (Circuit Court for Baltimore City). The Murphy Firm won a $34,333,000 mass action verdict on behalf of 29 injured restaurant workers poisoned by carbon monoxide.

- *Queen v. Constellation Power Source Generation, Inc.* (2009) (Circuit Court for Baltimore City). As lead plaintiffs' counsel, reached a $55 million class action settlement with Constellation Energy on behalf of homeowners whose groundwater had been contaminated by coal ash.

- *Billieson, et al. v. Scottsdale Ins. and Hous. Auth. of New Orleans* (2007) (Civil District Court for the Parish of Orleans, Louisiana). Defended a $5 billion class action brought against defendants by 2,400 children injured by lead paint, settled for $55 million.

- *In re H&R Block, Inc., Express IRA Marketing Litigation* (2006) (United States District Court, Western District of Missouri). Defended

H&R Block in national class action based on excessive fees charged to consumers.

- ***People of the State of New York, by the Attorney General v. H&R Block, Inc., et al.*** (2006) (Supreme Court of New York City, New York). Defended H&R Block in *parens patriae* action brought by the Attorney General of the State of New York for fraudulent and deceptive practices.

- ***Diaz v. Johnson & Johnson*** (2003) (United States District Court, Eastern District of Louisiana). As lead trial Counsel, successfully defended Johnson & Johnson in the first trial of a multi-thousand case MDL proceeding in the United States District Court in New Orleans concerning the drug Propulsid.

- ***McNulty, et al. v. H&R Block, Inc., et al.*** (2002) (Court of Common Pleas of Lackawanna County, Commonwealth of Pennsylvania). Defended and settled a statewide class action based on electronic filing fees charged to consumers.

- ***H&R Block Refund Anticipation Loan Litigation*** (2003) (Nationwide). National coordinating counsel for H&R Block in Refund Anticipation Loan litigation nationwide, including two national class actions and four state-class actions. Successfully litigated and resolved all cases which included millions of class members.

  - ***Lynn Kohan, et al. v. H&R Block, Inc.****,* (2006) (Superior Court for the District of Columbia). Defended a District-wide action.

  - ***Lynne A. Carnegie, et al. v. H&R Block, Inc., et al.*** (2003) (United States District Court, Northern District of Illinois). Defended and settled H&R Block in nationwide class action alleging violations of the Truth in Lending Act and the Racketeer Influenced and Corrupt Organizations Act.

- ▪ ***Cummins, et al. v. H&R Block, Inc., et al.*** (2003) (Circuit Court of Kanawha County, West Virginia). Defended and settled nationwide class action based on H&R Block's Refund Anticipation Loan product.

- ▪ ***Green, et al. v. H&R Block, Inc., et al.*** (2000) (United States District Court, District of Maryland). Defended and settled statewide class action based on H&R Block's Refund Anticipation Loan product.

- ***Jackson, et al. v. Microsoft, and Donaldson, et al. v. Microsoft*** (2001) (United States District Court, Western District of Washington).  Along with Paul Hastings, LLP, successfully defended the Microsoft Corporation in two $5 billion race discrimination class action cases brought separately by Willie Gary and Johnny Cochran, respectively, resulting in the dismissal of the class allegations in the first case and denial of class certification in the second case.

Mr. Murphy and the Murphy Firm have also achieved significant success in numerous complex and high profile single event cases. As a result, Mr. Murphy and the Murphy Firm have a reputation as aggressive, creative attorneys who are demonstrably willing and able to take their cases, including complex mass and class cases, to trial.  Examples are as follows:

- ***Freddie Gray, Jr. v. Caesar R. Goodson, Jr., et al.*** (2015) (Circuit Court for Baltimore City). Obtained a $6.4 million pre-suit settlement for the family and estate of Freddie Gray, Jr. for federal and state civil rights violations that led to plaintiff's death.[3]

---

[3] *See* discussion *infra* Part II.C. at pp. 17-18.

- ***Mosley v. Bryan Keshaw*** (2006) (Circuit Court for Baltimore City). Obtained a $44,300,000 verdict for an individual who was rendered a quadriplegic after a battery by a Baltimore City Police officer.

- ***Steele Software Systems v. First Union National Bank*** (2002) (Circuit Court for Baltimore City). With co-counsel Snyder, Slutkin & Kopek won a $276 million verdict against a major national bank, which included the largest punitive damage award in Maryland history at that time.

- ***Devan v. Ernst & Young*** (2002) (Circuit Court for Baltimore City). With co-counsel Snyder, Weiner & Weltcheck obtained a $185 million settlement against Ernst & Young, the largest single-defendant settlement in Maryland history at the time.

- ***Mike Tyson v. Don King Productions, et al.*** (2000) (United States District Court, Southern District of New York).  Defense counsel for Don King Productions.

- ***United States of America v. Don King, et al.,*** (1998) (United States District Court, Southern District of New York). Along with co-counsel Curtis, Mallet-Prevost Colt & Mosle, obtained acquittals for Don King and Don King Productions after a four-month jury trial on mail and wire-fraud charges.

Because Mr. Murphy and the Murphy Firm consistently try their own cases, they litigate the cases differently, ultimately achieving a higher success rate, gaining excellent settlement values, and efficiently resolving legally and politically complex matters. In all endeavors, Mr. Murphy and the Murphy Firm work together, drawing on the resources, skills, experience, perspectives, and knowledge of the diverse group of attorneys who hail from a variety of socio-economic and

ethnic backgrounds, including former clerks at Maryland's highest court, the Maryland Court of Appeals, and the United States Court of Appeals for the Federal Circuit; start-up executives; corporate managers; state and federal prosecutors; criminal defense attorneys; and intellectual property litigators. Consequently, as lead counsel in this litigation, Mr. Murphy and the Firm's collective experience and skill will increase the likelihood of a successful resolution, whether through settlement or trial.

### C. As an African-American leader of a 70 year old firm that is fully minority owned, Mr. Murphy has cultivated a diversity of background, experience, and approach that is unmatched by any other applicant.

Selecting a person of color and a diverse, minority owned firm to lead this litigation should be given special consideration given the homogenous landscape of lead counsel in nationwide MDLs and the diverse perspectives and skills offered by attorneys and firms, like the undersigned, with varied social, legal, and ethnic backgrounds. To the best of undersigned's knowledge, none of the other firms vying for lead counsel have the racial and ethnic diversity that the Murphy Firm does—and none are 100% minority owned.

Historically more than 60% of the available MDL leadership positions are awarded to repeat players.[4] It is thus not surprising that MDL leadership panels suffer from a profound shortage of diversity.[5] But complex cases are a microcosm of a diverse nation, and appointing a diverse panel is necessary for optimal results.[6] For example, including attorneys from diverse backgrounds tends to increase innovation and creative thinking and reduce the likelihood of decision-making biases and potentially collusive settlements.[7]

To this end, in 2016, the American Association for Justice, which represents the interests of the plaintiffs' bar, asked that when appointing attorneys to leadership positions, trial courts do so "consistent with the diversity of our society and the justice system."[8] In 2014, the Duke Law School Center for Judicial Studies published a white paper on MDL Standards and Best Practices, which is based

---

[4] *See* Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71, 96-98 (2015).

[5] *See* Alyson Oliver and Reed Eriksson, *Why Leadership in Diversity in Litigation is Crucial*, Trial March 2014 at 42, *available at* https://law.duke.edu/sites/default/files/centers/judicialstudies/panel_2-why_leadership_diversity_is_crucial_oliver_and_reed_march.pdf

[6] *See id.* at 41.

[7] Burch, *supra,* note 4 at 96-98.

[8] American Association for Justice, *Resolution on Diversity in Trial Court Appointments*, (July 25, 2016), attached as Ex. 4.

upon a statistical analysis of MDL procedures and outcomes and was created with significant input from practitioners as well as 17 federal and state court judges. Best Practice 4E suggests that the transferee judge "take into account whether the leadership team adequately reflects the diversity of legal talent available and the requirements of the case," noting that such procedures "enhance public trust in the courts…[and] ensure[s] that composition of the plaintiffs' leadership team reflects the needs of the case and the available talent."[9]  In addition, the National Association of Women Judges laid out a variety of reasons why "trial courts, both federal and state, should be mindful of the importance of diversity and should make [attorney] appointments that are consistent with the diversity of our society and the justice system."[10]

The class members victimized by Equifax's conduct are members of all fifty states and necessarily are diverse as to race, ethnicity, socio-economic status, and

---

[9] Duke Law School, Center for Judicial Studies, MDL Standards and Best Practices, Duke Law Center for Judicial Studies, at 44 (Sept. 11, 2014), *available at* https://law.duke.edu/sites/default/files/centers/judicialstudies/MDL_Standards_and_Best_Practices_2014-REVISED.pdf.

[10] National Association of Women Judges, *Resolution on Diversity in Trial Court Appointments*, (Oct. 8, 2016) *available at* https://www.nawj.org/about-nawj/resolutions.

gender. A similar level of diversity in their legal counsel is appropriate. And, in order to provide the class members with the most effective counsel possible, counsel in leadership positions should also come from diverse legal backgrounds and bring new, innovative thinking to the table. As discussed throughout this memorandum, this is exactly what Mr. Murphy has been doing throughout his entire career.

For over 70 years, the Murphy Firm has been a 100% minority owned law firm synonymous with a commitment to fighting for justice and the under-represented. The Firm traces its roots back to Mr. Murphy's grandfather, Judge William H. Murphy, Sr., who began practicing in 1948 in the Cherry Hill neighborhood of Baltimore. As an African-American born into segregation, Judge Murphy Sr.'s desire to enter the field of law was met with outright opposition. While deciding between acceptances from Harvard Law School and the University of Maryland School of Law ("UMD"), Judge Murphy Sr. received a unique proposition from the Dean of UMD. The Dean, an avid segregationist, offered Mr. Murphy Sr. a deal that he thought could not be refused:  he would pay Mr. Murphy Sr.'s full tuition to Harvard Law School and all related expenses in exchange for Mr. Murphy declining the offer of admission from UMD. Instead of pushing Mr.

Murphy Sr. to Harvard, the Dean's ham-handed attempt to keep African-American students out of UMD had the opposite effect. It fueled Mr. Murphy Sr. to help break a key color barrier and matriculate at UMD. In 1939, under court order, he became the third African-American to be admitted to UMD.

Judge Murphy Sr. spent the next twenty-two years building his practice, litigating cases and acting as a community organizer with an active role in local and national politics. He served as an officer in the National Bar Association and the National Black Bar Association. In 1970, he was elected judge in what is now the District Court of Maryland for Baltimore City.

His son, William H. Murphy, Jr., took up his practice and continued what would become the Murphy Firm. Judge Murphy Jr. became a first-rate trial lawyer without compromising the Firm's ethos of fighting for those that were historically under represented. In his first courtroom victory, Judge Murphy Jr. successfully represented the Black Panther Party in a First Amendment rights case, removing an injunction on the distribution of a newspaper featuring controversial party related content.

Dismayed by the lack of black appointments in the Baltimore courts, Judge Murphy Jr. gave up his successful law practice in 1980 to run for and win a seat as

judge on the Circuit Court of Maryland for Baltimore City. Three years later, after a spirited but unsuccessful run against a legendary incumbent for Mayor of Baltimore, Judge Murphy Jr. went back to private practice, focusing on criminal defense and civil rights.

This is the tradition that Mr. Murphy joined when he became a part of the Murphy Firm in 1997, and it is a tradition that he continues to this day. Most notably, in 2015, when the city of Baltimore was burning because of the unconstitutional arrest and subsequent death of Freddie Gray, Jr., Mr. Murphy was asked by the Deputy Assistant Attorney General of the United States to bring together Mr. Gray's family, Baltimore minority business owners, the city's ministerial alliance, and the leaders of impacted community associations to assist the DOJ's investigation of unconstitutional patterns and practices of the Baltimore City Police Department. In that role, Mr. Murphy worked with the Attorney General of the United States and the head of the Civil Rights Division of the Department of Justice to fortify its investigation, which led to a consent decree that mandated significant police reforms. In that case, as he has done throughout his career, Mr. Murphy facilitated the unification of divergent groups with polarizing

views to achieve a path to change a centuries-old problem. This case deserves such a diverse, minority-owned firm with a proven history of fighting for justice.

### D.   Mr. Murphy and the Murphy Firm's knowledge of the applicable law is both wide and deep.

As discussed at length above, Mr. Murphy has extensive experience in leading and navigating complex, nationwide consumer class actions. Mr. Murphy has investigated, litigated, and resolved numerous consumer class actions, and the attorneys in the Murphy Firm have represented both plaintiffs and defendants in contested cases involving a broad spectrum of legal theories, including fraud, negligence, gross negligence, False Claims Act, fraudulent marketing and advertising, and civil rights.

### E.   The Murphy Firm is willing and able to commit to an expensive and time-consuming process.

The Murphy Firm has sufficient financial resources, experience, and manpower to prosecute this case and is willing and able to commit these resources to the pursuit of this action. The Murphy Firm frequently pursues complex, time-consuming cases that require significant financial resources, as indicated by the list of substantial class action, mass tort, and single event cases set forth *supra*. Under

Mr. Murphy's leadership, firm revenue quadrupled in four years. That type of fiscal and managerial success continues to this day.

> **F.    The Murphy Firm quickly identified the potential claims, filed the first Maryland class action complaint in this litigation, and did so in active partnership with multiple other plaintiffs' firms that support his application for lead counsel.**

The Murphy Firm was the first firm to file a class action lawsuit in Maryland following disclosure of the Equifax security breach, three months before the establishment of this MDL.[11] It filed this complaint with the support of a consortium of law firms who elected to work together to pursue Equifax class action cases throughout the country in the most comprehensive, systematic, thoughtful, and efficient way possible. To date, more than 350 Maryland residents have retained the Murphy Firm to represent them in the pending Equifax litigation and are relying upon the Firm to prosecute these claims on their behalf. The Firm is one of the few firms that has been specifically retained to represent Maryland residents and has a significant interest in representing the residents of the densely populated Mid-Atlantic region.

---

[11] To the best of undersigned's knowledge, there is only one other Maryland class action lawsuit filed regarding the Equifax security breach.

Mr. Murphy is working with a team of respected attorneys that support his nomination for lead counsel.[12] The consortium of firms, all with extensive experience in similar actions, recognize Mr. Murphy's unique utility, vision, and drive to successfully resolve the cases. A detailed list of the attorneys and firms, along with their list of achievements can be found in Mr. Lowry and Mr. Clark's Joint Application.[13] Mr. Murphy is aware that some of these attorneys have submitted separate applications for Lead Counsel and/or appointment to Plaintiff's Steering Committee and supports these applications. These relationships emphasize Mr. Murphy's ability and desire to work cooperatively with other plaintiffs' counsel to reach an effective plaintiffs' counsel structure and to facilitate the efficient and successful litigation of this matter.

### G. Mr. Murphy and the Murphy Firm will work cooperatively with others, always with a singular focus of advancing the interests of the putative class.

Indeed, beyond his record in this case, Mr. Murphy's ability to unify the interests of myriad different attorneys is further highlighted by his long history of

---

[12] *See* Joint Application of Stephen G. Lowry for Leadership Position or Plaintiffs' Steering Committee and of Miles N. Clark for Plaintiffs' Steering Committee (hereinafter "Joint Application"), at Ex. B, attached hereto as Ex. 5.
[13] *See* Joint Application and corresponding Exhibits.

litigating and settling hundreds of millions of dollars of cases while working alongside multiple other lawyers. His record proves that a key part of his success is found in his ability to build consensus and manage disagreements. For example, in the H&R Block litigation, Mr. Murphy marshalled numerous plaintiffs' and defense counsel to the table to negotiate a settlement of multiple actions spanning across the country. The Murphy Firm routinely partners with other counsel and firms, and is accustomed to and comfortable with working collaboratively. Mr. Murphy has also obtained significant settlements in cases with substantial political considerations that necessarily involved outside players. It is clear that Mr. Murphy is capable of conducting himself in a collegial, cooperative manner throughout complicated legal and political landscapes, all while advancing and ensuring his clients' interests.

### H. In the alternative, Mr. Murphy requests that he be appointed to the Plaintiff's Steering Committee

If this Court declines to appoint William H. Murphy III as lead counsel, Mr. Murphy respectfully requests that this Court appoint him to the Plaintiffs' Steering Committee, for all of the reasons set forth above.

## III.  STATEMENT REGARDING FEES

Mr. Murphy and the Murphy Firm will implement rigorous billing guidelines subject to the Court's approval and all fee applications will comport with the law of this Circuit.

## IV.  CONCLUSION

William H. Murphy III has more than the requisite experience necessary to effectively and efficiently represent the members of the putative nationwide class. He is the Managing Partner of the sole 100% minority-owned firm where diversity is a valued element to resolving millions of equally diverse consumer claims.  He respectfully requests that this Court appoint him as Lead Counsel in this matter, or in the alternative, as a member of the Plaintiff's Steering Committee.

Mr. Murphy will be present at the hearing on February 9, 2018, to answer any questions this Court may have.

Respectfully submitted,

*/s/* William H. Murphy III, Esq.
William H. Murphy III (Fed. Bar No. 30126)
MURPHY, FALCON & MURPHY, P.A.
One South Street, Suite 2300
Baltimore, Maryland 21202
T: (410) 539-6500
F: (410) 539-6599
hassan.murphy@murphyfalcon.com

## LR 7.1(D) CERTIFICATION OF COMPLIANCE

Pursuant to the Local Rules of the Northern District of Georgia, the undersigned counsel certifies that this pleading complies with all formatting requirements of the Local Rules and was prepared in Times New Roman, 14-point type.

*/s/* William H. Murphy III, Esq
William H. Murphy III

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2018, a copy of Plaintiff Gallant's Motion for Appointment of Class Counsel and Supporting Memorandum and Exhibits was filed with the Clerk of the Court via the Court's CM/ECF system which will automatically send e-mail notification of such filing to the registered attorneys of record.

*/s/* William H. Murphy III, Esq
William H. Murphy III