UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                        )
IN RE: EQUIFAX, INC., CUSTOMER          )        MDL Docket No. 2800
DATA SECURITY BREACH                    )        1:17-md-2800-TWT
LITIGATION                              )
_____)        CONSUMER ACTIONS

## APPLICATION FOR APPOINTMENT OF JASON R. DOSS, COUNSEL FOR SMALL BUSINESS PLAINTIFFS, AS CO-LEAD COUNSEL FOR THE CONSUMER PLAINTIFF CLASS

Pursuant to Case Management Order Nos. 1 and 2 ("CMO 1" and "CMO 2")

[Dkt. 19 and 87], Jason R. Doss ("Doss") of the Marietta, Georgia-based law firm,

The Doss Firm, LLC, hereby applies to serve the consumer plaintiff class as co-lead

counsel[1] and further states in support:

### I.      Introduction

Doss was the first (and only to date) attorney to file class complaints on behalf

of approximately 28 million small businesses and their individual owners whose

_____

[1] For the reasons stated herein, Doss believes that co-lead counsel is the appropriate position for him in this case given that he is the only attorney that represents the interests of the Small Business Plaintiffs (as defined below). However, counsel is well aware that leadership choices belong to the Court, which may have different views about the appropriate leadership structure. If the Court will not accept Doss as co-lead counsel, Doss will gladly accept any position in leadership that the Court believes is appropriate and that adequately protects the interests of the Small Business Plaintiffs.

personal identifiable information ("PII") was stolen in the Equifax data breach. Doss represents the plaintiffs in *Kademi, LLC, et al. v. Equifax, Inc.*, 1:2017-cv-03886 (N.D. Ga., Filed 10/4/2017) and *O'Dell Properties, LLC et al. v. Equifax, Inc*., 1:2017-cv-03618 (N.D. Ga., Filed 09/19/2017) ("Small Business Plaintiffs").

The filing of the Small Business Plaintiffs' cases struck a chord with our nation as we all digested the extent of damage caused by the Equifax data breach to the approximately 145 million individual consumers and the 28 million small businesses across the United States. As documented in the CNN Money story entitled *Why the Equifax hack has small business owners worried,* the filing of the Small Business Plaintiffs' cases, which were featured in the article, drew the attention of members of Congress, including Senator Jeanne Shaheen (D-N.H.), former Governor of New Hampshire and the lead Democrat on the U.S. Senate Committee on Small Business and Entrepreneurship, and Representative Nydia Velazquez (D-NY), the Ranking Member of the House Committee on Small Business.[2] In the article, both congresswomen publicly urged Equifax "to provide greater assistance to small business owners and asked Equifax to offer small business owners protective products that are better suited to their unique circumstances."

---

[2] http://money.cnn.com/2017/09/28/pf/equifax-small-business-lawsuit/index.html

They also stated, "[w]hile it has waived the fee to freeze their credit reports, that fix can make operating a business complicated."[3] *Id.*

The above quotes illustrate that Equifax differs from prior data breach cases, in part, because Equifax can offer remedies that retail stores like Home Depot could not. For example, Equifax can create and offer new financial products that would provide valuable and meaningful relief to small businesses, but that would have no value to individual consumers who do not own small businesses. As the above quotes point out, there are also remedies Equifax already offers to individual consumers that are not valuable or practical to small businesses–e.g. credit freezes. As a result, the Equifax case consists of putative class members with significant diverging interests, i.e., non-business owning individuals vs. Small Business Plaintiffs.

Differences have already been acknowledged by this Court in CMO 2. Paragraph 1 of CMO 2 references both complaints filed by the Small Business Plaintiffs by name and expressly states that neither the Small Business Plaintiffs nor their legal claims were included in the hundreds of putative class complaints filed on behalf of individual consumers whose information was compromised in the breach. See ¶1, CMO 2 [Dkt. 87]. Further, the Small Business Plaintiffs' cases are

---

[3] The filing of the Small Business Plaintiffs' cases made national headlines and resulted in over 150 news stories by media outlets, such as CNN Money, CNBC, The National Law Journal, and local news outlets across the country.

listed on a separate exhibit from the Consumer and Financial Institution cases. See CMO 2 at Exhibit 1B.

There are compelling reasons for appointing separate and independent counsel for the Small Business Plaintiffs, including managing the potential intra-class conflicts that exist between individual consumers and small businesses, different legal claims, separate and distinct damages, and differences in the scope of discovery. Prior to the January 9, 2018 Case Management Conference, there was consensus among Plaintiffs' counsel that substantive differences exist between the claims brought by the Small Business Plaintiffs and those brought by individual consumers. There was not consensus, however, on whether the Small Business Plaintiffs would proceed on a separate track or as a subclass of the Consumer track. In an act of leadership and cooperation by all involved, Plaintiffs' counsel collectively decided to postpone the decision until after this Court appoints leadership. As stated in CMO 2:

> Counsel for the small business plaintiffs [Doss] has agreed to work with appointed lead counsel for the consumer track to include such small business claims in any consolidated amended complaint. In the event those claims are not included in any consolidated amended complaint, the small business plaintiffs may seek leave to establish a separate track. See CMO 2 at 2.

Coordination at the highest level of leadership is critical to properly protect the interests of both non-business-owning individuals and Small Business Plaintiffs,

whether they proceed as a subclass or on a separate track. Because Doss is the only attorney who represents the interests of the Small Business Plaintiffs, Doss respectfully requests that this Court appoint him as co-lead counsel of the Consumer track.  If Court-appointed leadership decides after deliberation that it would be appropriate for the Small Business Plaintiffs' cases to be pursued on a separate track, then Doss would presumably become lead counsel of the Small Business track. On the other hand, if it is decided that Small Business Plaintiffs' interests can be protected through a subclass, Doss would be able, as co-lead counsel, to continue protecting the interests of the Small Business Plaintiffs. Regardless, it is imperative that Doss be given the opportunity from the outset of this case to be in the Court-appointed leadership structure so he and his clients are on equal footing in the deliberative process that lies ahead.

Doss is filing an individual application because it is in the best interest of the Small Business Plaintiffs to cooperate with all other distinguished counsel applying for a leadership position. Doss will cooperate with any other court-appointed attorney in leadership, as stated in CMO 2. Doss is willing and able to work with any other lawyer and has provided the Court with two letters of recommendation and an affidavit from his colleagues who can attest to Doss's qualifications as a class action attorney, including his ability to collaborate and work well with others. Doss's goal is to provide the best legal representation possible to the entire plaintiff class.

Given the unique factual and legal issues in this case, Doss submits that his specialized knowledge about financial fraud, creditworthiness, and complex financial products is an asset. Doss respectfully requests that this Court allow him to demonstrate this competence.

## II.    Brief Summary of Small Business Plaintiffs' Cases

Business identity theft and fraud costs American companies billions each year, and both can negatively affect operations, cash flow, and create problems with its creditors, suppliers, and the businesses' reputation.[4] The Colorado Secretary of State's office described just how devastating the damage can be to the victim's business. The resulting damage to the victim's credit history can lead to denial of credit, which can lead to operational problems. The cost to clean up and correct the damage can be thousands of dollars and hours of lost time.[5] Approximately half of all small businesses that are victims of business identity theft go out of business within six months.[6]  There is no question that damages suffered by businesses are separate and district from damages suffered by individual consumers.

According to the U.S. Census Bureau, the Bureau of Labor Statistics, the Federal Reserve, and the Small Business Administration, there are about 28 million

---

[4] http://www.experian.com/small-business/business-credit-scores.jsp
[5] https://www.sos.state.co.us/pubs/business/ProtectYourBusiness/BITresourceguide.html
[6] http://nbr.com/2017/09/26/small-business-class-action-equifax-suit-filed/

small businesses in America representing over 99% of all American companies. Small businesses employ half of the private sector work force, and, since 1995, small businesses have created approximately two out of every three net new jobs – 65% of the total job creation in the United States. Small Business Plaintiffs are defined as any business with 500 or fewer employees whose owners' PII was compromised in the Equifax data breach. The United States Small Business Administration (SBA) defines a small business as any business with 500 or fewer employees.

Every small business owner knows that the creditworthiness of their small business depends, in part, on their own personal creditworthiness. As part of the SBA loan application process, for example, business owners must provide personal financial statements. Business loans and credit have historically been critical for small businesses to survive because, unlike large firms, small businesses lack access to public institutional debt and equity capital markets.

Equifax is a credit bureau that collects, stores, analyzes, and sells products and services based on consumer and business credit information. In its Form 10-K that was filed on February 22, 2017, Equifax stated:

> Equifax is a leading global provider of information solutions and human resources business process outsourcing services for businesses. Governments and consumers…. Our products and services are based on comprehensive databases of consumer and business information derived from numerous sources including credit, financial assets,

telecommunications and utility payments, employment, income, demographic and marketing data.[7]

Equifax financially benefits to the tune of over a billion dollars annually from the sale of its credit-related products to individuals and businesses.[8] Equifax and the other credit agencies assign each business its own business credit score and assesses the business's creditworthiness based, in part, on information specific to that business, such as business payment history, business loan default rates, and the creditworthiness of the business owners. Equifax and other credit bureaus sell financial products that disclose the business credit score and overall creditworthiness of businesses. For example, Equifax charges $99 for one business credit report.[9]

It logically follows that the Equifax data breach not only harmed individual business owners, it also negatively impacted their small businesses. Importantly, however, the damages to small businesses are separate and distinct from the damages suffered by individual consumers. Unlike consumers, Equifax has offered no relief to small businesses impacted by the Equifax data breach. For example, Equifax has already offered free credit monitoring to consumers affected by the data breach, but

---

[7] Form 10-K filed by Equifax, Inc. on February 22, 2017 (emphasis added).

[8] 2017 Equifax Form 10-K at pg. 3 filed on or about February 22, 2017; https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k201 61231.htm

[9] https://www.equifax.com/business/business-credit-reports-small-business/

Equifax continues to charge small businesses at least $5.99 per month to monitor the business' creditworthiness.[10]

To illustrate the magnitude of the diverging interests between non-business owning individuals and Small Business Plaintiffs, consider, hypothetically, that Equifax agreed to provide free credit monitoring for one year to Small Business Plaintiff like it already provides to consumers. The value of that concession by Equifax to Small Business Plaintiffs would be worth approximately $2,012,640.00 ($71.88 per year x 28 million) but the relief would have no value to an individual consumer that does not own a small business.

The same logic applies to Equifax's business credit reports.  Unlike individual consumers who receive free credit reports, Small Business Plaintiffs must pay for each business credit report.  Equifax and Experian continue to market the purchase of business credit reports as one of the best ways to prevent business identity theft.[11] Equifax charges $99 for a copy of each business credit report and it financially benefits to the tune of over a billion dollars annually from the sale of its credit-related products for individuals and businesses.[12] If, hypothetically, Equifax agreed to

---

[10] https://www.equifax.com/business/business-risk-monitor
[11] http://www.experian.com/small-business/business-identity-theft.jsp
[12] 2017 Equifax Form 10-K at pg. 3 filed on or about February 22, 2017; https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k201 61231.htm

provide a business credit report to Small Business Plaintiffs without charge so that they could determine if their business's creditworthiness was impacted by the Equifax data breach, the value of that concession by Equifax to Small Business Plaintiffs would be worth approximately $2.8 billion ($99 per year x 28 million). Just like business credit monitoring though, the relief would have no value to an individual consumer that does not own a small business.

These examples illustrate not only that putative class members in this case have divergent interests that need to be protected, but also that it was foreseeable to Equifax that the data breach would harm the Small Business Plaintiffs separately and in addition to the harm done to individual consumers.

The legal claims asserted in the Small Business Plaintiffs' complaints include negligence, negligence per se, declaratory judgment, and injunctive relief. Unlike individual consumers, the Small Business Plaintiffs did not bring claims based on the Fair Credit Reporting Act or state consumer protection statutes because they likely lack standing. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), the Small Business Plaintiffs seek certification of a Nationwide and Statewide class defined as follows:

> All United States businesses whose creditworthiness is dependent on the creditworthiness of its business owners whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017.

Each of the Small Business Plaintiffs have already suffered actual damages because at a minimum, they purchased business credit reports to determine if their business was impacted by the Equifax data breach. The legal claims asserted by the Small Business Plaintiffs are nearly identical to those brought by the financial institutions in the Home Depot case.  We believe that Equifax's systems are able to determine whether the creditworthiness of the Small Business Plaintiffs was affected by its breach, a fact that will be raised at the class certification stage.

III.   **Small Business Plaintiffs Need Separate and Independent Counsel and Should Proceed on a Separate Track from Individual Consumers, or as a Subclass of the Consumer Class**

A.   **There are potential intra-class conflicts between Small Business Plaintiffs and non-business owning individual consumers.**

Following the appointment of leadership, rigorous discussions and debate regarding how to minimize and alleviate potential intra-class conflicts of interest between non-business owning individual consumers and Small Business Plaintiffs must take place at the highest levels of leadership.  For the reasons stated above, if Small Business Plaintiffs are included in the Consumer track without, at a minimum, separate and independent counsel, Equifax may be able to marginalize the interests of the Small Business Plaintiffs throughout the case, because the number of non-business owner consumers greatly outnumber the putative class members of Small Business Plaintiffs.

Aside from the logistical difficulties of trying to balance the interests of the Small Business Plaintiffs and the individual non-business owning consumers, there are additional intra-class conflicts and divergent interests. For example, with regard to corporate entities, shareholders who were victims of the Equifax data breach do not have standing to bring claims seeking to recover business losses—except perhaps through a derivative action, which by definition are adversarial between shareholders and businesses. See, e.g., *Southwest Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619 (2006) (the general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit).

The Small Business Plaintiffs include all businesses with 500 or fewer employees. The conflict described above regarding derivative actions becomes more pronounced when considering larger businesses with multiple owners—some of whom (but not all) had their PII compromised in the Equifax data breach. It is easy to imagine situations where disagreements will arise among business owners regarding whether to accept a settlement or even participate in the class case.

The easiest and best way to remedy that problem is to give the Small Business Plaintiffs (i.e. individual business owners and their companies) separate and independent legal counsel. These intra-class conflicts can and should be avoided on the front end. The Small Business Plaintiffs need to be able to consider their unique legal claims and damages. Failing to provide a separate track, or, at minimum, a

subclass with separate and independent counsel to the Small Business Plaintiffs would likely invite difficulties throughout the case that are not in any parties' best interest.

**B.      The Legal Claims and Discovery are Different for Small Business Plaintiffs.**

Small Business Plaintiffs brought claims based on negligence and negligence per se. Unlike individual consumers, businesses likely don't have standing to bring claims under the Fair Credit Reporting Act or state consumer protection statutes. Additionally, Equifax presumably is not under any legal obligation to notify businesses whose confidential financial information was hacked because businesses do not have PII and as a result, the state and federal statutory notification requirements are inapplicable to businesses. It is entirely possible that confidential financial information, e.g., business loan information, business payment history, the PII of loan guarantors, was hacked but not disclosed by Equifax. These discovery issues are not necessarily relevant to the Consumer Plaintiffs' case. Additionally, because Equifax monitors the creditworthiness of all small businesses and individual consumers in its system, Equifax's systems can likely determine whether the creditworthiness of a small business was affected by its breach. This type of class and merits discovery is not necessarily relevant to the Consumer Plaintiffs' case either.

Aside from the points made above, discovery related to the Small Business Plaintiffs' claims will be more expansive in other ways. In a broad sense, predominating factual issues particularly relevant to the Small Business Plaintiffs include:

- Whether the malfeasance and/or negligent conduct of Equifax resulted in harm to the Small Business Plaintiffs' business credit score or otherwise negatively impacted the Small Business Plaintiffs' creditworthiness?

- Whether the malfeasance and/or negligent conduct of Equifax resulted in harm to the Small Business Plaintiffs' operations and/or access to credit?

- Whether the Small Business Plaintiffs paid for business credit reports or suffered other damages when attempting to determine whether their business' creditworthiness was affected by the Equifax Data Breach?

Within the broad categories of topics described above are more specific factual issues that will need to be explored in class-wide and merits discovery. These factual issues unique to the Small Business Plaintiffs include:

- Equifax's methodology of calculating business credit scores;

- Equifax's products offered for purchase, including, but not limited to, business credit scores and reports that relate to the creditworthiness of small businesses;

- Equifax's marketing of products, including, but not limited to, business credit scores and reports that relate to the creditworthiness of small businesses;

- Equifax's research regarding the prevention of business identity theft;

- Equifax's products offered for purchase that are designed to prevent business or corporate identity theft;

- Equifax's marketing of products that are designed to prevent business identity theft;

- Where and how Equifax obtains, stores, and uses information related to the creditworthiness of the Small Business Plaintiffs;

- How much revenue Equifax receives selling products and information that relate to the creditworthiness of the Small Business Plaintiffs?

- How much revenue does Equifax receive from selling products and information that relate to the prevention of business identity theft?

- Class list of Small Business Plaintiffs.

This is a non-exhaustive list meant only to help illustrate some of the many issues that need to be resolved by the court-appointed leadership. Once again, these issues need to be coordinated and deliberated at the highest level of leadership and Doss is the only attorney who can protect the interests of the Small Business Plaintiffs.

## IV.   Doss Satisfies the Criteria for Appointment to Leadership

As stated in CMO 1, the main criteria for appointments are (1) willingness and ability to commit to a time-consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner. [Dkt. 23]. Doss satisfies all of the criteria for appointment to a leadership position as set forth in CMO 1.

### A.   Willingness and Ability to Commit to a Time-Consuming Process

As we hope is evident from this application, Doss has already demonstrated his commitment to this case.  He developed and filed two class cases on behalf of Small Business Plantiffs, which to our knowledge has never been attempted in any previously filed data breach case.  Prior to filing the cases, Doss and the attorneys in his firm spent a great amount of time researching Equifax's business model and appropriate legal theories, as well as engaging in original critical thinking, which led to the discovery of an additional class of plaintiffs that were damaged as a result of the Equifax data breach.

The genesis and development of the Small Business Plaintiffs' cases was also a result of The Doss Firm's attorneys 45 years of collective experience representing individual retail investors, institutional investors, and businesses in cases involving financial fraud litigation, securities arbitrations and collective and class actions.

16

Many of our firm's clients are vulnerable adults who are victims of complex frauds involving financial exploitation and they are often targeted by criminals in identity theft schemes.  Many of these cases are extremely time consuming and require our attorneys to have subject matter expertise in complex financial instruments.  A specialized understanding of finance and the creditworthiness of the entities issuing the financial instruments is critical to the successful representation of our clients. Doss has and will devote whatever amount of time is necessary to successfully pursue this case.

### B.  Ability to Work Cooperatively with Others.

As demonstrated above, and as evidenced by the language in CMO 2, which was negotiated by Doss with other Plaintiffs' counsel in this case, he has already demonstrated a willingness and ability to work well with others.  Doss has a proven track record of working cooperatively with others in complex class cases like this. In support, Doss obtained a letter of recommendation from Frank B. Strickland with Strickland Brockington Lewis, LLP and an affidavit from his former law partner, Alan R. Perry, Jr. with Page Perry, LLC.  Both attorneys are well regarded both locally and nationally as extremely experienced, competent and ethical lawyers with experience in class action cases. Copies of Letter of Recommendation from Frank B. Strickland and Declaration of Alan R. Perry, Jr. are attached as Exhibits 1 and 2, respectively, to the attached Declaration of Jason R. Doss ("Doss Decl.").

Doss has known Frank Strickland for more than 10 years and has worked with him as co-counsel in class action cases, including Ellison v. Georgia Natural Gas ("GNG"), in which we represented approximately 500,000 Georgia customers who alleged GNG overcharged them for natural gas.  See Exhibit 1 to Doss Decl.  Much like the Small Business Plaintiffs' cases here, the GNG case was the first of its kind and brought a claim against GNG for violating the Natural Consumers Relief Act. *Id.*  Doss originated the case and worked on it with Frank Strickland for several years.  *Id.* Much like the Equifax case, the GNG case received significant press coverage and was politically charged.  *Id.*  The GNG class case was appealed to the Georgia Supreme Court and plaintiffs prevailed, reversing 60 years of case law involving the voluntary payment doctrine defense.  *Id.*  This outcome resulted in a settlement in excess of $11 million for 500,000 Georgia households.  *Id.*

As stated in Frank Strickland's letter of recommendation:

> Jason works well in groups and is a great collaborator.  He is a smart, creative, and competent attorney who zealously represents his clients. He has devoted his career to protecting consumers and is a nationally recognized attorney who represents investors in complex fraud cases. He seems well suited for the Equifax matter because the case will involve complex issues related to creditworthiness and finance pertaining to consumers and small businesses.  Jason's experience with complex financial instruments and issues would be an asset.

Doss has known Alan Perry for approximately 13 years and he and Alan worked closely and extensively for many years on several class action cases.  See

Exhibit 2 to Doss Decl.  The most notable and time consuming of these class action cases was Mooney v. Allianz, which was a nationwide class case on behalf of some 420,000 Allianz insurance policy holders, a case that Doss identified and was primarily responsible for originating.  *Id.*

> As stated in Alan R. Perry, Jr.'s Declaration:

> Even early in his Georgia legal career, Mr. Doss set himself apart by his hard work, his creative approach to addressing legal problems, and by his ability to work well with other attorneys, including opposing counsel.  Mr. Doss tempers his zealous representation of his clients with his collegial nature and innate ability to conduct adversarial proceedings in a fair and efficient fashion. […]  If Mr. Doss is appointed to a leadership role in this case, his background with complex financial instruments as well as many other financial issues will redound to the benefit of this class.  *Id.*

> Alan Perry, who has no financial interest in this case, and has almost 20 years of experience in representing plaintiffs in class actions, including having a leadership role in the Oxford Health Plans Litigation that resulted in a $300 million settlement, further stated:

> I have attempted to educate myself on Mr. Doss's unique focus in this case, that is, the claims brought by him on behalf of small businesses. It appears to me that the claims of these plaintiffs differ in significant respects from those of other consumers and that intra-class conflicts may suggest, if not compel, the need for separate lead counsel to make sure that such plaintiffs' interests are not abandoned or prejudiced as the case progresses.  *Id.*

> In addition to the above, Doss also attaches a letter of recommendation from Robin S. Ringo, Executive Director of Public Investors Arbitration Bar Association

19

("PIABA"), an international bar association composed of attorneys who represent investors in securities arbitration proceedings. Doss has devoted literally thousands of volunteer hours through PIABA to protect investors and educate them about financial fraud with the hope of preventing it. Doss's service through PIABA, including but not limited to being President, required him to effectively communicate and cooperate with other attorneys who are also experts in the securities arbitration and litigation field. See Exhibit 3, Letter of Recommendation from Robin Ringo, attached to Doss Decl.

### C.   Professional Experience in this Type of Litigation

The Doss Firm, LLC is a successful law firm primarily devoted to representing aggrieved consumers across the United States against financial services companies for mismanaging investments and engaging in financial fraud. The attorneys of the firm have represented almost 1000 clients and have a combined 45 years of experience representing individual retail investors, institutional investors, and businesses in financial fraud litigation, securities arbitrations, and collective and class actions.

The law firm also represents consumers in class actions. For example, Jason Doss served as co-lead counsel and obtained settlements totaling $18 million on behalf of over 750,000 Georgia households in two class cases against Georgia Natural Gas (GNG) and SCANA Energy, the two largest natural gas marketers in

Georgia accused of overcharging their customers. Both cases presented multiple legal issues of first impression.  Jason Doss was also primarily responsible for originating a nationwide consumer class of approximately 420,000 policyholders in equity-indexed annuities against Allianz Life Insurance Company, *Linda L. Mooney et. al. v. Allianz Life Insurance Company of North America*, 06-cv-545, United States District Court of Minnesota. His former law firm Page Perry, LLC was co-lead counsel with two other firms. Doss worked tirelessly for almost five years on the case, which involved intensive federal litigation.  He was involved in virtually every aspect of that case from start to finish.

Doss is a subject matter expert in his field of combating financial fraud. Jason Doss has co-authored two books, Doss, J. and Frankowski, R., *A Practitioner's Guide To Securities Arbitration* (2013), American Bar Association (225 pages) and Armstrong, F. and Doss, J., *The Retirement Challenge: Will You Sink or Swim?* (Jan. 2009), FT Press, Prentice Hall Publishing (266 pages).  *A Practitioner's Guide To Securities Arbitration* is used by law schools and practitioners across the country as a resource to help navigate the FINRA arbitration process. *The Retirement Challenge: Will You Sink or Swim?* is in bookstores across the country and is designed to help consumers avoid the pitfalls of investing and avoid becoming a victim of financial fraud.

Mr. Doss helped to create the Georgia State College of Law Investor

Advocacy Clinic, a clinic where supervised law students provide free legal assistance to investor clients to help recover their losses that may be too small to be handled by a private attorney. For six (6) semesters, Mr. Doss served as adjunct professor with the College of Law teaching students at the clinic. *A Practitioner's Guide To Securities Arbitration* is the course book used by the clinic and notably, the book is also used at other law schools including but not limited to St. John's University and the University of Miami. A full resume of Jason R. Doss is attached as Exhibit 4 to Doss Decl.

Doss recognizes the relevant experience possessed by the other qualified candidates applying for leadership positions and feels certain that all attorneys appointed by this Court to lead this case would appreciate and benefit from sharing their experience and working collaboratively with the collective goal of representing plaintiffs in this case.

### D.    Access to Sufficient Resources to Advance the Litigation in a Timely Manner.

Prior to filing the Small Business Plaintiffs cases, Doss considered the financial commitment that will be required by this case. He consulted with other attorneys who have vast experience representing parties in data breach class actions. As a result, Doss understands and is committed to devoting the necessary resources

to pursue this case in a timely manner, has access sufficient resources, and is willing and able to commit them as needed in this case.

## V.      CONCLUSION

For all the foregoing reasons, Jason R. Doss, counsel for the Small Business Plaintiffs, respectfully requests that the Court appoint him as co-lead counsel for the Consumer Plaintiff Class.

This 2nd day of February 2018.

/s/ Jason R. Doss
Jason R. Doss
Georgia bar No. 227117
Samuel T. Brannan
Georgia Bar No. 076688
The Doss Firm, LLC
36 Trammell Street, Suite 101
Marietta, Georgia 30064
(770) 578-1314 (Telephone)
(770) 578-1302 (Facsimile)
jasondoss@dossfirm.com

**ATTORNEYS FOR SMALL
BUSINESS PLAINTIFFS**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the District of Georgia, the undersigned counsel for Plaintiffs hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

s/Jason R. Doss_____
Jason R. Doss
Georgia

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically served the *Application for Appointment of Jason R. Doss, Counsel for Small Business Plaintiffs, As Co-Lead Counsel for the Consumer Plaintiff Class* with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all counsel of record.

Submitted this 2nd day of February 2018.

/s/ Jason R. Doss_____
Jason R. Doss
Georgia Bar No. 227117
The Doss Firm, LLC
36 Trammell Street, Suite 101
Marietta, Georgia 30064
(770) 578-1314 (Telephone)
(770) 578-1302 (Facsimile)
jasondoss@dossfirm.com