UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 2800<br>1:17-md-2800-TWT<br><br>ALL CASES |

**JOINT APPLICATION IN SUPPORT OF APPOINTMENT OF
CONSUMER PLAINTIFFS' CO-LEAD COUNSEL,
PLAINTIFFS' STEERING COMMITTEE,
<u>AND CO-LIAISON COUNSEL</u>**

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...................................................................................4

II. THE PROPOSED TEAM ......................................................................6

    A. Stuart A. Davidson of Robbins Geller ("Co-Lead Counsel")..............6

    B. Thomas E. Loeser of Hagens Berman ("Co-Lead Counsel") .............8

    C. Cari Campen Laufenberg of Keller Rohrback ("PSC").....................10

    D. Jodi Westbrook Flowers of Motley Rice ("PSC") ............................12

    E. Jennifer Scullion of Seeger Weiss ("PSC") .......................................12

    F. Jennifer L. Joost of Kessler Topaz ("PSC").......................................14

    G. Nicholas Diamand of Lieff Cabraser ("PSC") ...................................16

    H. Equifax "Experts" Leonard A. Bennett and James A. Francis (Fair Credit Reporting Act Counsel)...................................................17

III. THE COURT SHOULD APPOINT THE RG/HB GROUP ........................18

    A. The RG/HB Group Is Fully and Immediately Committed to Devote the Time Necessary to Successfully Lead this MDL .............18

    B. The RG/HB Group's Members Work Cooperatively, Efficiently, and Professionally with Others .......................................19

    C. The RG/HB Group Is Highly Experienced .......................................20

    D. The RG/HB Group Has Unmatched Human and Financial Resources...........................................................................................21

E.   The RG/HB Group Has Direct and Substantial Experience in Efficiently Leading Complex Cases ....................................................23

F.   The RG/HB Group Is Diverse and Inclusive ......................................24

IV.   CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGE**

*Allen v. Equifax Inc.*,
    No. 1:17-mi-99999 (N.D. Ga.) ............................................................19

*Campbell v. Facebook, Inc.*,
    No. 5:13-cv-5996 (N.D. Cal.) ............................................................16

*Corona, et al. v. Sony Pictures Entm't, Inc.*,
    No. 2:14-cv-9600 (C.D. Cal.) ...............................................11, 16, 20

*Ewing v. Admin. Sys., Inc.*,
    No. 2:08-cv-00797-RAJ (W.D. Wash.) ...............................................9

*Giron v. VTech Elecs. N. Am., LLC*,
    No 1:15-cv-11885 (E.D. Ill.) .............................................................11

*Henson v. Turn, Inc.*,
    No. 4:15-cv-1497 (N.D. Cal.) ............................................................16

*Horne v. Equifax Inc.*,
    No. 1:17-cv-03713-MHC (N.D. Ga.) .............................................18, 19

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
    MDL No. 2737 (M.D. Fla.) ..................................................11, 12, 20

*In re Anthem Inc. Data Breach Litig.*,
    MDL No. 2617 (N.D. Cal.)..............................................................16, 20

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    MDL No. 2058 (S.D.N.Y.) ..............................................................14, 15

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    MDL No. 2330 (N.D. Cal.)..............................................................10, 20

*In re Elec. Books Antitrust Litig.*,
    MDL No. 2293 (S.D.N.Y.) ...............................................................21

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. &*
    *Antitrust Litig.*,
        MDL No. 2785 (D. Kan.) ...........................................................................11, 21

*In re Experian Data Breach Litig.*,
        No. 8:15-cv-1592 (C.D. Cal.) ...................................................................11, 20

*In re the Exxon Valdez*,
        No. 89-00095 (D. Alaska)..........................................................................11, 21

*In re Facebook Biometric Info. Privacy Litig.*,
        No. 3:15-cv-3747 (N.D. Cal.) .......................................................................8, 20

*In re Facebook Class C Reclassification Litig.*,
        No. 12286 (Del. Ch.) ........................................................................................15

*In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*,
        MDL No. 2779 (D.N.J.)......................................................................................14

*In re German Automotive Mfrs. Antitrust Litig.*,
        MDL No. 2796 (N.D. Cal.)................................................................................14

*In re GM Ignition Switch Litig.*,
        MDL No. 2543 (S.D.N.Y.) ................................................................................12

*In re JPMorgan Chase Mortg. Modification Litig.*,
        MDL No. 2290 (D. Mass.)............................................................................11, 21

*In re Nat'l Prescription Opiate Litig.*,
        MDL No. 2804 (N.D. Ohio) .......................................................................13, 20

*In re NFL Players' Concussion Injury Litig.*,
        MDL No. 2323 (E.D. Pa.).................................................................................13

*In re Payment Card Interchange Fee & Merchant Discount Antitrust*
    *Litig.*,
        MDL No. 1720 (E.D.N.Y.) .............................................................................6, 20

*In re Pharm Indus. Average Wholesale Price Litig.*,
        MDL No. 1456 (D. Mass)..................................................................................21

*In re So. Peru Copper Corp. Derivative Litig.,*
No. 961-CS (Del. Ch.) ......................................................................15

*In re Sony Gaming Networks & Consumer Data Sec. Breach Litig.,*
MDL No. 2258 (S.D. Cal.) ............................................................7, 20

*In re SSA Bonds Antitrust Litig.,*
2016 U.S. Dist. LEXIS 178048 (S.D.N.Y. Dec. 22, 2016) ...............21

*In re Target Corp. Customer Data Sec. Breach Litig.,*
MDL No. 2522 (D. Minn.) ..............................................7, 10, 15, 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices, & Prods Liability Litig.,*
MDL No 2151 (C.D. Cal.) ...........................................................20, 22

*In re UnitedHealth Grp. Inc. PSLRA Litig.,*
No. 0:06-cv-01691 (D. Minn.) ............................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods.
Liab. Litig.,*
MDL No. 2672 (N.D. Cal.) ......................................................*passim*

*In re Weatherford Int'l Secs. Litig.,*
2013 U.S. Dist. LEXIS 170559 (S.D.N.Y. Nov. 5, 2013) ..................15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
MDL No. 2752 (N.D. Cal.) ..........................................................7, 8, 20

*Jabbari v. Wells Fargo & Co.,*
No. 15-cv-2159 (N.D. Cal.) ..............................................................11

*Jaffe v. Household Int'l, Inc.,*
No. 1:02-cv-05893 (N.D. Ill.) .......................................................6, 22

*Kehoe v. Fidelity Fed. Bank & Trust,*
421 F.3d 1209 (11th Cir. 2005) ..........................................................7

*Johnson v. Alijan,*
No. CV 03-5986 (C.D. Cal.) ..............................................................14

*Optimum Tech. v. Henkel Consumer Adhesives, Inc.*,
    No. 1:04-cv-01082 (N.D. Ga.) ................................................................................2

*Perkins v. LinkedIn Corp.*,
    No. 5:13-cv-4303 (N.D. Cal.) ...............................................................................16

*Rushing v. The Walt Disney Co.*,
    No. 3:17-cv-4419 (N.D. Cal.) ...............................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    301 F.R.D. 284 (N.D. Ill. 2014) ............................................................................21

## STATUTES, RULES AND REGULATIONS

Fed. Rule of Civ. Proc. 23(g) ......................................................................................18

## SECONDARY AUTHORITIES

"Private Litigation: Litigating the FCRA Case",
    12.1 Discovery and Litigation Strategies, Discovery from
    Consumer Reporting Agencies, FAIR CREDIT REPORTING, Nat'l
    Consumer Law Ctr., 9th ed. (2017) ......................................................................17

Julie A. Steinberg, *More Women Plaintiffs' Lawyers Becoming
    Complex Litigation Leaders*, BNA (Feb. 3, 2017) ...............................................3

The Equifax Inc. ("Equifax") data breach is unquestionably the most severe in U.S. history measured by its scope (143 million U.S. consumers) and the depth of private personal information that was exposed (Social Security numbers, drivers' license numbers, employment data, and past credit history). The out-of-pocket losses suffered by consumers are staggering. Millions have already spent from $10 to over $100 each to "freeze" their credit accounts on the advice of Equifax and its competitors who, ironically, have profited from the breach Equifax allowed to occur. This case is unlike any prior data breach case and is particularly distinct from the Home Depot and similar "credit card number" exposure cases that this Court and many applicants know well.  Maximizing the value of this unique case requires a litigation "dream team" that is particularly well versed in cases involving the expansive and immutable private data stolen here.

Seven of the nation's leading consumer class action firms have joined forces and propose a structure built on exceptional experience, unmatched resources, diversity, and complementary skill sets to best prosecute this extraordinary MDL. We respectfully propose the appointment of Stuart A. Davidson of **Robbins Geller Rudman & Dowd LLP** ("Robbins Geller") and Thomas E. Loeser of **Hagens Berman Sobol Shapiro LLP** ("Hagens Berman") to serve as Co-Lead Counsel for the Consumer Plaintiffs, and a Plaintiffs' Steering Committee ("PSC") of Cari

- 1 -

Campen Laufenberg of **Keller Rohrback L.L.P.** ("Keller Rohrback"), Jodi Westbrook Flowers of **Motley Rice LLC** ("Motley Rice"), Jennifer Scullion of **Seeger Weiss LLP** ("Seeger Weiss"), Jennifer L. Joost of **Kessler Topaz Meltzer & Check, LLP** ("Kessler Topaz"), and Nicholas Diamand of **Lieff Cabraser Heimann & Bernstein, LLP** ("Lieff Cabraser") (the "RG/HB Group").

While the RG/HB Group brings to bear the depth of experience and resources necessary for a case of this magnitude, its members recognize that several Atlanta area lawyers have undeniable experience and knowledge that would add value to the leadership of this action. It would therefore be our honor to work alongside **David Worley**, **Governor Roy Barnes**, **Ken Canfield**, and/or **W. Pitts Carr** as Co-Lead, Co-Liaison, or as PSC members.[1]

The attorneys comprising the RG/HB Group are women and men with extensive experience in privacy and data breach litigation and MDLs. The reputations of these attorneys, their ***personal*** commitment, the human and financial

---

[1] John Herman, managing partner of Robbins Geller's Atlanta office, is proposed as Co-Liaison Counsel. Mr. Herman is an experienced class action litigator and served as lead trial counsel in *Optimum Tech. v. Henkel Consumer Adhesives, Inc.*, No. 1:04-cv-01082 (N.D. Ga.), which was tried to a jury before this Court. Mr. Herman was an associate and then partner at King & Spalding from 1992-2002, and has known Equifax's attorneys personally and professionally for many years. Mr. Herman would welcome the opportunity to work with any of the other Atlanta lawyers that seek appointment.

resources of their law firms, and the strength of their relationships with their peers are the reasons that the RG/HB Group enjoys broad support.[2]  Indeed, the RG/HB Group consists of lawyers and firms that have served in leadership positions in the nation's largest MDLs where they have returned billions of dollars to consumers.

The RG/HB Group also addresses two fundamental concerns identified by the federal judiciary in connection with MDL leadership: (1) that the same lawyers – often "name" partners – are repeatedly appointed, leaving highly qualified "next generation" partners in a classic "Catch-22" situation; and (2) that the lawyers appointed are almost exclusively male.  Appointment of the RG/HB Group would answer these challenges by increasing inclusion and diversity within the leadership ranks and fostering parity of opportunities for highly qualified, but underrepresented, attorneys seeking future leadership positions, all while ensuring that this matter is led by a group with extraordinary experience.[3]

---

[2] A non-exhaustive list of attorneys who filed cases in this MDL and support this application is attached hereto as **Exhibit A**.

[3] *See* Julie A. Steinberg, *More Women Plaintiffs' Lawyers Becoming Complex Litigation Leaders*, BNA (Feb. 3, 2017), https://www.bna.com/women-plaintiffs-lawyers-n57982083338/ ("New statistical research confirms what has been common knowledge for some time: Far fewer women have led the courtroom battles for plaintiffs in federal suits consolidated by the [JPML].").

## I.    INTRODUCTION

The RG/HB Group will provide the Class with highly-qualified legal counsel with broad experience that reflects the scope and breadth of this MDL.  As this Court knows well, this data breach is without precedent; it is unlike prior cases involving solely credit card theft.  Each of the members brings not only unique experience and substantial personal energy to bear, but also her or his law firms' human and financial resources, proven track records, and history of working together in some of the largest and most complex MDLs.  Successful prosecution of this MDL will require counsel capable of representing outsize classes, who understand the modern science and economics of big data, and who will work effectively with state and government actors.  Counsel here recognize the nuanced diverse claims of those consumers affected by the breach from individuals whose data credit bureaus obtain and retain as a matter of course; to customers who purchased Equifax products; to children for whom Equifax has offered no protection for current and future harm they may suffer.

Early reports about the breach point to the Company's reliance on stale technology, inadequate administrative controls, and ineffective password protection.  Hackers repeatedly exploited flaws in Equifax's security, resulting in nearly non-stop hemorrhaging of sensitive data in May 2016, and again from

February-May 2017.  The RG/HB Group not only has forensic and cyber law skills to understand the technology, but also has unique experience working closely with government agencies, as they did in *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.), and other MDLs.

As Equifax has itself represented, "[e]xperts report that a victim can spend anywhere from six months to two years recovering from identity theft." Exploitation of the highly personal data disclosed here can have disastrous financial, reputational, housing, and employment consequences for the breach victims for years and even decades to come.  Victims of the breach will incur costs associated with time spent and the loss of productivity from addressing and attempting to ameliorate, mitigate and deal with the actual and future consequences of the data breach.  As described *infra*, the RG/HB Group has a track record of negotiating settlements that restore consumers' rights and justly compensates them.

The strongest litigation teams are inclusive and diverse, not closed and rigid. Each lawyer within the RG/HB Group appreciates the value that collaboration with exemplary lawyers provides and, indeed, are willing to join forces with other applicants before the Court. The RG/HB Group's members, four of whom are women, and none of whom have their names on the door, are all extremely qualified and experienced partners at firms with tremendous resources who have

spent years running nationwide MDLs – albeit often behind the scenes assisting their more "notable" senior partners – to achieve some of their firms' greatest successes, including in data breach and privacy class actions. The RG/HB Group demonstrates that diversity and excellence are not mutually exclusive.

## II.    THE PROPOSED TEAM[4]

The RG/HB Group provides the Class with the benefits that flow from their diversity of skills and experience, and the resources of their powerhouse firms.

### A.    Stuart A. Davidson of Robbins Geller ("Co-Lead Counsel")

Robbins Geller is the largest class action firm in the world, and has served as lead or co-lead counsel in many of the most noteworthy class recoveries ever, including: *In re Volkswagen "Clean Diesel"* MDL (over $11 billion, ***largest ever*** consumer class settlement); *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion, ***largest ever*** post-verdict fraud settlement); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 0:06-cv-01691 (D. Minn.) ($975,000,000, ***largest ever*** options backdating settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.7 billion, ***largest ever*** antitrust settlement, remanded on appeal). The firm has ten offices nationwide, including Atlanta, and Mr. Davidson is a partner in the Boca Raton office. Prior to

---

[4] Detailed biographies/firm resumes of the RG/HB Group members are included in **Composite Exhibits B** through **H**.

concentrating in class and MDL litigation over 15 years ago, Mr. Davidson was a lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office, where he tried over 30 cases to juries.

Mr. Davidson has been an integral part of Robbins Geller's long history of successful data breach and privacy cases. He served as Class Counsel in one of the earliest privacy cases, *Kehoe v. Fidelity Fed. Bank & Trust*, where he represented Florida drivers against a national bank for violating the Driver's Privacy Protection Act, resulting in a seminal privacy decision on damages, 421 F.3d 1209 (11th Cir. 2005), and a $50 million, all-cash recovery for the class. He also worked side-by-side with Paul J. Geller in *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL No. 2258 (S.D. Cal.), directly participating in opposing Sony's motion to dismiss and in negotiation of a multi-million dollar settlement that resulted in zero objections.[5]

Mr. Davidson was recently appointed to the Plaintiffs' Executive Committee in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, MDL No. 2752 (N.D. Cal.), the largest data breach case in history measured by number of impacted consumers

---

[5] As a result of his specialized expertise, lead counsel in the *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) called on Mr. Davidson to assist in responding to Target's motion to dismiss.

(3 billion), where he leads the law and briefing efforts.[6] He is also co-lead counsel in *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-3747 (N.D. Cal.), a cutting-edge privacy case in California concerning Facebook's alleged privacy violations through its collection of biometric identifiers without informed consent.[7]

**B.    Thomas E. Loeser of Hagens Berman ("Co-Lead Counsel")**

Like Robbins Geller, Hagens Berman has been a consistent presence at the top of the nationwide class action plaintiffs' bar, having been appointed to leadership positions in many, if not most, of the massive consumer MDLs of the last 15 years. Hagens Berman has over 75 attorneys devoted to consumer class actions in 11 offices across the United States, including 37 lawyers in the Seattle headquarters. Mr. Loeser, an *AV Rated Superlawyer*, adds a hard science and high-technology career to his 20 years of litigation, including five years as a federal cyber prosecutor. Mr. Loeser's prior technology career included an MBA, writing code for the Treasury at Microsoft and an analyst position at the Hewlett-Packard

---

[6]   Due to Mr. Davidson's efforts, Judge Koh largely denied Yahoo's motion to dismiss plaintiffs' complaint in a thorough, 93-page opinion. *In re Yahoo!*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).

[7]   Mr. Davidson also frequently lectures on class action practice and procedure, and has presented at conferences concerning emerging issues relating to data breach and consumer class action litigation including, HB Litigation Conferences *Data Breach & Privacy Litigation Conference 2016: Recent Settlements and the Picture They Paint* (Feb. 11, 2016, San Francisco, CA), and *Consumer Class Actions* (May 5, 2016, San Juan, PR).

Company. After Duke Law School, Mr. Loeser was an associate at Wilson Sonsini, specializing in technology law.

In 2002, Mr. Loeser was appointed an Assistant United States Attorney in Los Angeles where he joined the elite Cyber and Intellectual Property Crimes Section. This role required months of training in the investigation and prosecution of hacking, computer intrusion, malware, and data breach cases. The training was cutting edge, requiring Top Secret clearances, and it was ongoing throughout Mr. Loeser's government service. Mr. Loeser's training included detecting, tracing and investigating hacking by state-sponsored and foreign black-hat operators – actors which some reports suggest may have been behind the Equifax hack. And it included specialized training in investigation of the "dark web," where hackers turn to profit from their crimes. Mr. Loeser resolved hundreds of criminal cases – including federal hacking and data theft cases – and brought over a dozen federal cases to trial and through appeal.  Mr. Loeser has preserved his relationships with leading cyber attorneys and investigators, many of whom remain in government.

When Mr. Loeser joined Hagens Berman, he continued to protect victims of unfair and unlawful practices – albeit in the class action bar. He found success in highly technical class cases, including *Ewing v. Admin. Sys., Inc.*, No. 2:08-cv-00797-RAJ (W.D. Wash.), where a service provider for insurers compromised the

Social Security numbers and personal information of 500,000 persons. Other notable privacy and data breach cases include *In re Carrier IQ, Inc., Consumer Privacy Litig.*, MDL No. 2330 (N.D. Cal.), and *In re Target Data Breach.*[8]

Mr. Loeser has worked extensively with Steve Berman, the firm's Managing Partner, in many of the largest consumer class cases in U.S. history. These include the over $11 billion *Volkswagen* MDL and the related $1.2 billion *Volkswagen Franchise Dealer* litigation. Mr. Loeser's role in these cases touched on all aspects of litigation, including extensive interaction with plaintiffs' leadership and defense counsel, discovery, depositions, legal briefing and settlement.

Mr. Loeser's experience as a cyber prosecutor is unique and critical to this case where there are multiple parallel governmental investigations of Equifax, including by Congress, the Department of Justice, and state Attorneys General.

### C.    Cari Campen Laufenberg of Keller Rohrback ("PSC")

Keller Rohrback is a national law firm that frequently serves in leadership positions in some of the most prominent, high-stakes class action cases involving consumer and employee rights, including: *Volkswagen "Clean Diesel"* MDL

---

[8] Like Mr. Davidson, because of his expertise in the field and the depth of the investigation Hagens Berman completed in preparing its *Target* complaint, Mr. Loeser was asked by lead counsel to contribute to the drafting of the consolidated complaint and the response to Target's Motion to Dismiss.

(PSC); *Jabbari v. Wells Fargo & Co.*, No. 15-cv-2159 (N.D. Cal.) (Class Counsel); *In re JPMorgan Chase Mortg. Modification Litig.*, MDL No. 2290 (D. Mass.) (Co-Lead Counsel); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785 (D. Kan.) (Co-Lead Counsel); and *In re the Exxon Valdez*, No. 89-00095 (D. Alaska) (Trial Counsel). The firm is known for its cutting-edge, high-quality work and its commitment to working collaboratively to achieve results. Keller Rohrback has worked extensively with many of the plaintiffs' counsel who have appeared in this case. With 70 attorneys and six offices around the nation, the firm has the resources – both personnel and funding – to advance this litigation efficiently and effectively.

Ms. Laufenberg has been at the helm of much of Keller Rohrback's data breach and privacy protection litigation and she and her firm have served in court-appointed leadership roles in several, including: *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, MDL No. 2737 (M.D. Fla.) (Co-Lead Counsel); *In re Experian Data Breach Litig.*, No. 8:15-cv-1592 (C.D. Cal.) (PSC); *Giron v. VTech Elecs. N. Am., LLC*, No 1:15-cv-11885 (E.D. Ill.) (PSC); and *Corona, et al. v. Sony Pictures Entm't, Inc.*, No. 2:14-cv-9600 (C.D. Cal.) (serving as one of the chief attorneys fulfilling Keller Rohrback's duties as Co-Lead Counsel).

### D.    Jodi Westbrook Flowers of Motley Rice ("PSC")

Ms. Flowers began her practice in tobacco litigation, and since that time has been involved in numerous large cases impacting consumers.  These include the *Volkswagen* MDL, *In re GM Ignition Switch Litig.*, MDL No. 2543 (S.D.N.Y.), toxic lead pigment, Firestone defective tires, Mattel's defective toys, and the BP Oil spill, to name a few.  Ms. Flowers leads the Anti-Terrorism and Human Rights Practice Group at Motley Rice, a firm with eight offices nationwide, and is also active on its e-discovery, consumer fraud, and cyber security teams. Ms. Flowers has received numerous awards, including "2016 Trial Lawyer of the Year" award by Public Justice for her work on the *Jesner v. Arab Bank* liability trial. In the data breach context, Ms. Flowers currently serves as Co-Liaison Counsel in *In re 21st Century Oncology Data Breach*.  She was among the first to file suit against Equifax on September 11, 2017.  Given the unique size and scope of the Equifax breach, Ms. Flowers' experience in case management, discovery, prosecution, trial, and complex case resolution, including fashioning equitable remedies this case will likely require – will be an asset to this leadership team and to the Court.

### E.    Jennifer Scullion of Seeger Weiss ("PSC")

Seeger Weiss is one of the nation's preeminent trial law firms, with an established track record of helping lead some of the most complex and important

multidistrict cases on behalf of consumers and injured parties, including *In re NFL Players' Concussion Injury Litig.*, MDL No. 2323 (E.D. Pa.) (Co-Lead), *Volkswagen "Clean Diesel"* MDL (PSC), and, most recently, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio).  Ms. Scullion is a partner in the firm's New York office.

Prior to joining Seeger Weiss, Ms. Scullion spent 13 years as Senior Counsel and Partner at Proskauer Rose LLP representing plaintiffs, as well as defendants, as lead trial, hearing, and appellate counsel in class actions, consumer protection and antitrust litigations across the country. Among other things, Ms. Scullion was co-lead counsel in eight class actions against The Republic of Argentina on behalf of individual retirees and bondholders, where she secured a cash settlement after multiple appeals to the Second Circuit. Ms. Scullion also represented clients in consumer fraud litigation and in proceedings before federal regulatory agencies.

Ms. Scullion's practice focuses on consumer protection and antitrust matters, and she has been central to Seeger Weiss's prosecution of claims in this matter. After Equifax's massive breach was revealed, Ms. Scullion personally interviewed clients and led the Seeger Weiss team that researched, drafted, and filed its complaint. In doing so, Ms. Scullion drew on her own and the firm's experience in consumer and technology matters.

Ms. Scullion currently works with Managing Partner Christopher Seeger co-leading the investigation of consumer protection, fraud and related claims on behalf of cities, schools, and other purchasers of defective artificial turf fields in *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, MDL No. 2779 (D.N.J.), where she led the drafting of the consolidated complaint, and is a member of the Discovery, Expert Witness, and Law Committees.  She also works closely with Mr. Seeger in multiple cases on behalf of consumers nationwide arising from the manipulation of emission control systems. Ms. Scullion is likewise spearheading the firm's work as a PSC member in the *In re German Automotive Mfrs. Antitrust Litig.*, MDL No. 2796 (N.D. Cal.) seeking recovery for consumers nationwide for unlawful collusion among auto manufacturers.

### F.     Jennifer L. Joost of Kessler Topaz ("PSC")

Ms. Joost has dedicated her practice to representing plaintiffs in complex class actions, including some of the largest securities class actions to come out of the recent financial crisis.  *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, MDL No. 2058 (S.D.N.Y.) ($2.425 billion recovered).[9] Ms. Joost and

---

[9] Ms. Joost also has litigated insider trading claims, *e.g.*, *Johnson v. Alijan,* No. CV 03-5986 (C.D. Cal.), and regularly uses such evidence offensively to establish the elements of class claims. This will prove useful in this case, where executives sold nearly $1.8 million of common stock three days after Equifax discovered the hack.

Kessler Topaz commit substantial resources to achieve results, including at trial, on behalf of the classes they represent. In data breach litigation, Kessler Topaz was on the PEC and played a central role in certifying a nationwide class in *Target Data Breach*, and obtaining a $39 million settlement for the financial institution class.

Kessler Topaz has successfully tried complex cases (*e.g.*, *In re So. Peru Copper Corp. Derivative Litig.*, No. 961-CS (Del. Ch.) (obtaining a $2.1 billion judgment)), and leverages this experience to achieve more substantial recoveries for the classes it represents, including obtaining significant corporate governance change and equitable relief (*e.g.*, *BofA*; *In re Facebook Class C Reclassification Litig.*, No. 12286 (Del. Ch.) (obtaining all requested relief the day before trial)). Kessler Topaz, and Ms. Joost in particular, are experienced in efficiently steering complex class actions through the discovery process, including coordinating with co-lead counsel. Ms. Joost has had a leading role in the discovery process in at least ten class actions, including coordinating the analysis of large amounts of ESI, taking depositions across the country, and engaging in motion practice to obtain critical documents.[10] Given her location in San Francisco, Ms. Joost will be able to

---

[10] Ms. Joost has successfully rebutted assertions of privilege over the facts gathered in and the results of internal investigations, which likely will be an issue in this litigation. *See, e.g.*, *In re Weatherford Int'l Secs. Litig.*, 2013 U.S. Dist. LEXIS 170559 (S.D.N.Y. Nov. 5, 2013).

coordinate discovery of key witnesses and third parties located in California.

### G. Nicholas Diamand of Lieff Cabraser ("PSC")

Nicholas Diamand has been practicing law for twenty years and at Lieff Cabraser since 2003, and has developed an expertise in privacy cases, including data breach litigation. In 2017, *Law360* named Lieff Cabraser as the sole Plaintiffs' Digital Privacy & Data Protection "Practice Group of the Year." Privacy cases in which he or Lieff Cabraser plays or played a principal role include: *In re Anthem Inc. Data Breach Litig.*, MDL No. 2617 (N.D. Cal.) ($115 million settlement pending); *Sony Pictures* (data breach class action settlement); *Perkins v. LinkedIn Corp.*, No. 5:13-cv-4303 (N.D. Cal.) (privacy class action settlement); *Campbell v. Facebook, Inc.*, No. 5:13-cv-5996 (N.D. Cal.) (privacy class action settlement); *Henson v. Turn, Inc.*, No. 4:15-cv-1497 (N.D. Cal.) (data privacy litigation involving software tracking beacons); and *Rushing v. The Walt Disney Co.*, No. 3:17-cv-4419 (N.D. Cal.) (data privacy case related to monetization of children's personal information). In these and other actions, Mr. Diamand has managed complex litigation and multi-firm document review, deposed forensic experts, drafted and argued successful motions, and negotiated significant settlements.

In January 2017, Mr. Diamand was appointed to the Advisory Council of The Center for Democracy & Technology and, since 2016, he has been the Chair

of the Consumer Privacy/Data Breach Litigation Group of the American Association for Justice. He frequently writes and speaks on digital privacy topics, including on the implications and contours of *Spokeo, Inc. v. Robins*.

### H.    Equifax "Experts" Leonard A. Bennett and James A. Francis (Fair Credit Reporting Act Counsel)

Messrs. Bennett and Francis[11] offer critical value to this case and pledged their support to the RG/HB Group. Simply put, they are experts in Equifax. Collectively, they have prosecuted most of the successful class and complex matters brought against Equifax.  They have together litigated hundreds of Equifax cases; deposed virtually all of the relevant Equifax employees and officers; have litigated disputes related to its ESI and databases; and have an intimate working knowledge of how things work (and do not work) within the company. Mr. Bennett himself literally "wrote the book" on discovery of Equifax.[12]

---

[11]   *See* James A. Francis Biography, https://www.consumerlawfirm.com/james_francis.html; Leonard A. Bennett Biography, http://www.clalegal.com/our-firm/attorney-profiles/leonard-bennett-esq.

[12]   *See* "Private Litigation: Litigating the FCRA Case", 12.1 Discovery and Litigation Strategies, Discovery from Consumer Reporting Agencies, FAIR CREDIT REPORTING, Nat'l Consumer Law Ctr., 9th ed. (2017).

## III.   THE COURT SHOULD APPOINT THE RG/HB GROUP

Each factor set forth in Rule 23(g) and CMO 1 supports appointment of the RG/HB Group. The applicants have extensive experience leading data breach cases and are committed to devoting their personal time and their firms' substantial resources to representing the putative Class. These lawyers and firms performed the most thorough investigation among the various plaintiff firms, as evidenced by the *Horne* complaint, the contents of which have appeared many times over in later Equifax complaints filed throughout the nation. *See Horne v. Equifax Inc.*, No. 1:17-cv-03713-MHC (N.D. Ga.) (Dkt. 1).  *Horne* presents the claims of plaintiffs in 43 states, drawn from Hagens Berman's Equifax database that now contains *over 1,925 members* and *nearly 200 retained clients*.

### A.   The RG/HB Group Is Fully and Immediately Committed to Devote the Time Necessary to Successfully Lead this MDL

The experience of the RG/HB Group in massive MDLs and privacy cases gives it a deep understanding of the requisite time and energy for effective leadership. If appointed, each member will treat this case with the highest professional priority. Though the litigation will benefit from the depth of resources that their firms provide, each member of the RG/HB Group is committing her or his *own* personal time to this case, as opposed to delegating to others in their firms. The lawyers seeking appointment here *will be* the lawyers doing the day-in and

- 18 -

day-out work to bring this case to a just and efficient resolution.

The members of the RG/HB Group have been fully engaged in protecting the putative Class and keeping its members informed since news of this data breach broke. They have already spent significant time and resources developing this case, as evidenced by their respective complaints and vast number of victims they currently represent.[13]

### B.     The RG/HB Group's Members Work Cooperatively, Efficiently, and Professionally with Others

The applicants recognize that being experienced, skilled, and hard-working lawyers is only part of the equation; lawyers must also be collegial, collaborative, and respectful – particularly in large MDLs – in order to obtain the best possible results for the classes they represent. The applicants have embraced this approach as evidenced by their successes and the list of firms supporting this application.

In every case they have worked on, the applicants have been committed to working with civility, respect, and candor towards co-counsel, the Court, and defense counsel. The applicants have worked exceptionally well with other attorneys seeking leadership appointments and seek to carry over their prior

---

[13] Almost two months after the 43-state *Horne* complaint was filed by Hagens Berman and Robbins Geller, a very similar multi-state complaint was filed by other applicants. *See Allen v. Equifax Inc.*, No. 1:17-mi-99999 (N.D. Ga.) (Dkt. 3105).

working relationships to this MDL. The Court can rest assured that in appointing the RG/HB Group, this case will proceed with an underlying spirit of respect and, above all, professionalism.

### C.     The RG/HB Group Is Highly Experienced

The RG/HB Group is comprised of attorneys from the nation's largest class action firms who are among the nation's most experienced in data breach and privacy cases.  As their biographies demonstrate, the members and their firms have led many of the largest data breach and privacy cases in history, including, among others: *In re Yahoo! Data Breach* (PEC); *In re 21st Century Oncology Data Breach* (Co-Lead and Liaison Counsel); *In re Experian Data Breach* (PSC); *In re Sony Gaming Data Breach* (PSC); *In re Target Data Breach* (PEC); *In re Anthem Data Breach* (PSC); *In re: Carrier IQ Privacy Litig.* (Co-Lead); *In re Facebook Biometric Privacy Litig.*, (Co-Lead); and *Sony Pictures* (Co-Lead).

Moreover, members of the RG/HB Group and their firms have led or are leading many of the largest and most complex consumer and MDL cases, including: *Volkswagen "Clean Diesel"* (Consumer and Franchise Dealer tracks) (Lead; PSC) (over $11 billion and $1.2 billion recoveries, respectively); *Nat'l Opiate Litig.* (PEC); *In re Payment Card Interchange Fee Antitrust Litig.* (Co-Lead) ($5.7 billion recovery); *In re Toyota Motor Corp. Unintended Acceleration*

- 20 -

*Mktg., Sales Practices, & Prods Liability Litig.*, MDL No 2151 (C.D. Cal.) (Co-Lead) ($1.6 billion recovery); *In re Elec. Books Antitrust Litig.*, MDL No. 2293 (S.D.N.Y.) (Lead) ($560 million recovery); *In re Pharm Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass) (Co-Lead; Lead Trial Counsel) ($338 million recovery following trial victory); *In re JPMorgan Chase Mortg. Modification Litig.* (Co-Lead Counsel) ($506 million settlement value); *In re EpiPen Antitrust Litig.* (Co-Lead Counsel); and *In re the Exxon Valdez* (Trial Counsel) ($1.515 billion recovery).

### D.    The RG/HB Group Has Unmatched Human and Financial Resources

Where the putative Class faces a well-financed adversary represented by capable and well-funded counsel, the Class should be afforded representation by counsel with similar resources. *See In re SSA Bonds Antitrust Litig.*, 2016 U.S. Dist. LEXIS 178048, at *11-12 (S.D.N.Y. Dec. 22, 2016) (appointed firms had "substantially more resources at their disposal than the other applicant teams, including an in-house litigation support group and more than 850 attorneys worldwide"). This Court must be satisfied that counsel "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014). The RG/HB Group clearly meets this standard.

The firms in the RG/HB Group are extremely well-capitalized and possess the largest and most robust human, technological, investigatory, and financial resources in their field.  The firms have over 700 highly experienced and diverse attorneys who have dedicated their careers to consumer protection. The firms consistently advance millions of dollars of litigation costs without third-party funding in matters of comparable or even greater size and complexity.[14]

The firms' technology resources are critical as, over the last decade, electronic discovery has transformed litigation and enabled the preservation, collection, production, and review of vast quantities of documents far more efficiently and cost-effectively than was previously possible. Robbins Geller, Hagens Berman, Keller Rohrback, Lieff Cabraser, and Motley Rice have undertaken much of the e-discovery services typically outsourced to third-party providers and developed state-of-the-art resources to manage the production, storage, processing, analysis, printing, and review of electronic discovery. These resources provide the RG/HB Group with greater ability to review extensive

---

[14] The firms' willingness and ability to commit the resources necessary is evidenced by cases such as *Jaffe*, where Robbins Geller prosecuted a complex case for 14 years, expending over $35 million in actual, out-of-pocket expenses without third-party funding before securing a $1.575 billion recovery; and *In re Toyota*, where Hagens Berman and Lieff Cabraser fought on after over $20 million in expert costs, ultimately obtaining a $1.6 billion recovery.

document collections and greater control over infrastructure security, while reducing the time and expense associated with maintaining e- discovery databases.

### E.    The RG/HB Group Has Direct and Substantial Experience in Efficiently Leading Complex Cases

Hagens Berman, Robins Geller, Keller Rohrback, Motley Rice, and Seeger Weiss were all members of the PSC in the *Volkswagen "Clean Diesel"* MDL, which was led by Lieff Cabraser. [15] Lieff Cabraser instituted, and the PSC implemented, a rigorous strategy and methodology to engage the best attorneys in the completion of each task, and to track and report their time and expenses. The protocols and systems developed in the *Volkswagen* MDL have since been adopted in other nationwide litigation, including in the Chrysler emissions scandal case.

Lieff Cabraser maintains an in-house Common Benefit Time and Expense

---

[15]  *The National Law Journal* called the VW slate a "class action dream team." Ross Todd, *VW Judge Names 22 Lawyers to Class Action 'Dream Team'*, Law.com (Jan 22, 2016), https://www.law.com/sites/articles/2016/01/21/vw-judge-seeks-class-action-dream-team/. Similarly, in the *Nat'l Prescription Opiate* MDL in Cleveland, Judge Polster recently had the difficult task of appointing a leadership structure for over 200 cases brought by over 160 attorneys. Recognizing the need for experienced leadership from firms with deep benches and deep pockets, Judge Polster's appointed structure includes attorneys from Robbins Geller, Hagens Berman, Lieff Cabraser, Keller Rohrback, Motley Rice, and Seeger Weiss. *The National Law Journal* called the appointed slate a "Who's Who." Amanda Bronstad, *Judge Orders Opioid Lawyers to Come Up With a Settlement Plan*, Law.com (Jan. 9, 2018), https://www.law.com/nationallawjournal/sites/nationallawjournal/2018/01/09/judge-orders-opioid-lawyers-to-come-up-with-a-settlement-plan/.

- 23 -

Auditing Group, a specialized team that collects and contemporaneously audits submissions made by all approved firms in an MDL or class case. More specifically, the group collects common benefit submissions monthly and ensures that they are timely, sufficiently detailed, and properly coded. All firms' submitted time and expenses are kept in a database, from which the group can generate reports about time and expenses, such as by timekeeper, firm, category, as the Court may request.[16]

### F.    The RG/HB Group Is Diverse and Inclusive

The proposed leadership structure reflects their firms' commitment to increasing diversity and inclusion within the MDL leadership ranks. The importance of a diverse and inclusive leadership team cannot be overstated. In fact, on January 18 and 19, 2018, the Emory University School of Law Institute for Complex Litigation and Mass Claims hosted a symposium to "engage in a critical assessment of diversity and inclusion within the leadership ranks of class action and multidistrict litigation and to foster strategic thinking around talent

---

[16]  We believe the Protocol for Common Benefit Work and Expenses approved by Judge Chen in the *Chrysler* "dieselgate!" MDL should be a model for the protocol used here.  Rather than attach it, which would cause our compendium of exhibits to exceed the permitted page limit, we provide the following hyperlink from the Court's website:  http://www.cand.uscourts.gov/filelibrary/3121/PRETRIAL-ORDER-NO.-4-PROTOCOL-FOR-COMMON-BENEF.pdf.    The approved time and expense submission forms from *Chrysler* are attached as **Exhibit I**.

development and parity in opportunities." Notably, Paul J. Geller of Robbins Geller spoke extensively about the importance of gender diversity in MDL leadership structures as well as suggestions to provide leadership and PSC opportunities to the ***next generation*** of lawyers. He was joined by, among others, Phyllis Sumner (the lead defense counsel for Equifax) and Judges Ellis and Martinotti.[17] The RG/HB Group is precisely the type of diverse and inclusive (while eminently qualified) team that was described as a laudable goal during the Emory conference. It provides diversity and "next generation" leadership, without sacrificing the high level of skill, knowledge, and experience that is required to effectively lead this MDL and ensure the best possible representation for the putative Class.

## IV.   CONCLUSION

For the foregoing reasons, we respectfully request that the Court appoint the leadership structure proposed herein for the Consumer Plaintiffs.

---

[17] Several of the parties involved in this litigation have attended similar conferences, including The Duke Law Center for Judicial Studies' April 2017 conference entitled, *Increasing the Number of Women and Minority Lawyers Appointed to Leadership Positions in Class Actions and MDLs*, which was sponsored by Kessler Topaz.  In addition to Ms. Scullion's appearance on a panel regarding judicial discretion in MDL appointments, lawyers from Kessler Topaz, Lieff Cabraser, and Motely Rice appeared on panels concerning diversity in the MDL selection process.

DATED: February 2, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP


_s/ John C. Herman_
JOHN C. HERMAN
(Georgia Bar No. 348370)
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)
jherman@rgrdlaw.com

_Proposed Consumer Plaintiffs' Co-Liaison Counsel_

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

HAGENS BERMAN SOBOL
  SHAPIRO LLP
THOMAS E. LOESER
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206/268-9337
TomLoeser@hbsslaw.com

_Proposed Consumer Plaintiffs' Co-Lead Counsel_

- 26 -

KELLER ROHRBACK LLP
CARI CAMPEN LAUFENBERG
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: 206/623-1900
claufenberg@KellerRohrback.com

KESSLER TOPAZ MELTZER
 & CHECK LLP
JENNIFER L. JOOST
One Sansome Street
Suite 1850
San Francisco, CA 94104
Telephone: 415/400-3000
jjoost@ktmc.com

LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
NICHOLAS R. DIAMAND
250 Hudson St, 8th Flr.
New York, NY 10013
Telephone: 212/355-9500
212/355-9592 (fax)
ndiamand@lchb.com

SEEGER WEISS LLP
JENNIFER SCULLION
77 Water Street
New York, NY 10005
Telephone: 212/584-0700
212/584-0799 (fax)
jscullion@seegerweiss.com

MOTLEY RICE LLC
JODI WESTBROOK FLOWERS
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843/216-9163
jflowers@motleyrice.com

*Proposed Members of Consumer Plaintiffs'
Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 2, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys registered with the Court's CM/ECF system in the above-captioned cases.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 2, 2018.

*s/ John C. Herman*
JOHN C. HERMAN

ROBBINS GELLER RUDMAN
 & DOWD LLP

Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)
jherman@rgrdlaw.com