**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: EQUIFAX, INC CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 2800 |

**APPLICATION TO APPOINT SCOTT COLE TO THE**
**CONSUMER PLAINTIFFS' STEERING COMMITTEE**

At each step of this litigation, Scott Cole ("Cole") of Scott Cole & Associates ("SCA") has led by example and been highly proactive. Rather than sitting idly by, waiting to respond to Equifax's requests and overtures, or simply letting others do the work, Cole did what he has done for over 25 years: he stepped up and took charge—in this case launching an extensive investigation, interviewing and/or retaining experts, reaching out to defense counsel and other plaintiffs' attorneys to coordinate efforts, traveling to St. Louis to attend the Judicial Panel on Multidistrict Litigation hearing, working with what was a relatively short list of attorneys who prepared key documents for this Court (e.g., CMO No. 2, the Preliminary Report) in advance of the Case Management Conference, traveling to Atlanta to attend the Case Management Conference and the proposed after-conference meeting of lawyers and, now, seeking appointment as a member of the Consumer Plaintiffs' Steering

Committee[1]—a member who will offer not only his extensive experience, resources and creativity but important insights regarding California substantive law, class action procedure and negotiation strategies (as a trained mediator and speaker on this topic).

Having successfully litigated hundreds of class actions, most often in a sole and/or lead capacity, Cole more than exceeds the criteria set forth by the Court. On behalf of his lead client Andrew Galpern (Case No. 5:17-cv-05265-BLF), and pursuant to Case Management Order No. 1 (Dkt. 23) and No. 2 (Dkt. 87), and Federal Rules of Civil Procedure Rule 23(g), Cole hereby submits his application for appointment to the Consumer Plaintiffs' Steering Committee.

## I.    COLE HAS DEMONSTRATED LEADERSHIP IN THIS ACTION

On Thursday, September 7, 2017, Equifax belatedly confessed that, due to negligently maintained software, hackers had gained access to the sensitive personal information of approximately 143 million Americans stored on Equifax's database(s). Shortly thereafter, SCA was inundated with calls, emails, and drop-in visits from ordinary Americans who were concerned that a company like Equifax,

---

[1] Specifically, this Application supports Cole's appointment to the Consumer Plaintiffs' Steering Committee and not (in the event two separate committees are formed) any Committee established to lead the Financial Institution litigation track. Cole believes the issues germane and unique to these two tracks makes establishment of two separate committees the better approach.

whom they trusted to maintain their personal information, could fail to ensure even the most basic protections. The following Tuesday, September 12, 2017, SCA was one of the first firms[2] to file a Complaint against Equifax, Inc. on behalf of one of the many aggrieved individuals who contacted the firm.[3]

From the moment the first client called, Cole's intent has always been to take a leadership role in this case. Unlike many tag-along firms that sue and then let other attorneys do the heavy-lifting, Cole has remained engaged in the ongoing litigation. Shortly after filing, Cole coordinated with other firms to move to consolidate the cases in Northern District of California because of the availability of witnesses, experts, and co-defendants in the Northern District of California. Next, Cole reached out to various experts to learn more about data breaches, and Equifax in particular. At this point, he has consulted and/or retained experts in credit reporting, credit services, and data breaches—including one who has survived *Daubert* challenges by Equifax itself in both state and federal courts. All the while, Cole's firm fielded calls from consumers and press inquiries (even being called upon by well over a dozen

---

[2] Note that SCA is joined in the litigation of the *Galpern* matter by Timothy Rumberger, Esq., an attorney with nearly 30 years of litigation experience, much of it being in litigation against credit agencies, and who would expand upon the already-impressive team at Cole's firm.

[3] By the time of filing this Application, SCA has already been retained by many individuals beyond the name plaintiff, so it has many good choices of representative plaintiffs to put up once discussion of a Model Complaint is underway.

television, radio and print news sources for interviews as an expert in class action litigation), as news of the extent of Equifax's malfeasance continued to unfold.

Cole filed a Response in Opposition to the Motions for Transfer of Actions on September 21, 2017 (one of the first filed in this action, and the first to request transfer to the Northern District of California), and then initiated an effort to meet and confer with other firms advocating for consolidation and transfer to the California venue. Throughout this process, Cole endeavored to coordinate strategy and build consensus without compromising his duty to represent his client's interests.

With no guarantee of speaking time or other personal benefit, Cole traveled to the Judicial Panel on Multidistrict Litigation ("JPML") hearing in St. Louis, Missouri, on November 30, 2017 to liaise with other firms, specifically those advocating for the Northern District of California. While he ultimately deferred to Ms. Cabraser when the Court's clerk asked for the lawyers to consolidate their arguments through one lawyer, Cole met and conferred with Ms. Cabraser and her colleague beforehand to discuss strategy and help prepare for oral presentation.

Although Cole initially moved to consolidate and transfer the actions to the Northern District of California, the JPML's well-reasoned decision to consolidate the actions in the Northern District of Georgia has not dampened his enthusiasm toward this case or interest in its leadership. On December 29, 2017, Cole continued

4

his collaborative efforts, providing substantial feedback through numerous emails and revisions to Proposed Case Management Order No. 2 being circulated by a small segment of plaintiffs' firms in the MDL. On January 2, 2018, Cole participated in a conference call with those firms interested in MDL leadership in this case. That same day, one of his associate attorneys participated in yet another conference call with several firms advocating for a small business track. These prudent efforts came with no guarantee of a leadership role, but Cole knew it was important to his clients and consumer plaintiffs to foster a spirit of collaboration with other counsel, present a united front at the Case Management Conference in Atlanta, Georgia the following week, and build a strategic foundation for success going forward.

On January 9, 2018, Cole travelled to Atlanta for the Case Management Conference, where he met with fellow plaintiffs' attorneys and discussed future coordination. That planning and coordination continue to this day.

## II.   THIS PLAINTIFFS' STEERING COMMITTEE

To echo a sentiment expressed at the January 9, 2018 Case Management Conference, the Court should appoint to the Plaintiffs' Steering Committee not law firms, but lawyers. Indeed, a law firm is no better than the people it employs and, less directly, its reputation, culture and standards for excellence. These elements are generally driven by a few or even one top individual and then trickle down to others

in the firm. But this Court should know what it is getting at the *outset* by picking a Plaintiffs' Steering Committee of *individual advocates*, not merely the entities for whom those advocates are currently employed. This approach will guarantee a team of *people* committed to creatively, aggressively and efficiently leading this case to resolution.

In the appointment of Scott Cole to the Plaintiffs' Steering Committee, this Court will get the best of both worlds: a proven advocate with decades of class action experience and a record of success against companies and law firms of all sizes, as well as his hand-picked team of attorneys and support personnel that shares his vision and standards, and who will—each one of them—be dedicated to working with Cole under his close direction. Cole is one of those very few attorneys who has demonstrated the requisite initiative *and* possesses the credentials to be appointed to the Plaintiffs' Steering Committee. The events preceding this application evidence that. The significant amount of time Cole has already devoted to this action strongly suggests his intent to do the same going forward.

III.   **ATTORNEY & FIRM OVERVIEW**

In a career spanning over a quarter century, hundreds of complex cases, and recovery of hundreds of millions of dollars for his clients and class members—and not just through a few "big wins" or being just one vote in the resolution of a few

national-level consumer cases that, by virtue of a large number of victims, naturally boast settlement numbers with a lot of zeros—Scott Cole has forged a reputation as a titan of the plaintiff's bar. Cole has not just participated in a few key cases with a few impressive results; he has handled hundreds of class actions, against companies in every industry imaginable, tackling a wide range of substantive legal issues, and he has done that usually without back-up.

One recent achievement exemplifies what this court would be getting in appointing Cole: In December 2016, after more than 11 years of litigation, the California Supreme Court held in *Augustus v. ABM Security Services*, 2 Cal. 5th 257 (2016), that "on-call" break time is compensable—a landmark decision that now benefits millions of California non-exempt workers. SCA was one of two firms who primarily worked on the prosecution of this case—a case that ultimately yielded class certification and a judgment, and then later, a $110 million settlement.

The success in *Augustus*, after substantial litigation and its appeals, is a great example of what Cole does: he does not back down or give up. But *Augustus* is just the most recent bookend—the other being Cole's first class action (with a lot of books in between). Indeed, in 1994, just two years after forming SCA, Mr. Cole was appointed to his first steering committee in *In Re Unocal Refinery Litigation*, Contra Costa County Superior Court Case No. C94-04141. As described in "Fallout," Cole's forthcoming debut book (in press, Mar. 2018), *Unocal* involved thousands of

people exposed to odorless toxic chemicals willfully emitted from Unocal's Rodeo, California refinery over a 16-day period. What the company did was jaw-dropping and Cole saw that immediately. He was the first to file a putative class action, then broke the company's cover-up to the press, helped the grassroots efforts by townspeople to create a Good Neighbor Agreement and otherwise put substantial pressure on the corporation, and helped block issuance of a land use permit, all of which ultimately demotivated the company from further operating in that town and led to the refinery's sale to the Tosco Corp. just two years later.

The Unocal case spanned several years and, following its $80 million settlement, Cole appeared and argued at well over 200 separate causation and damages "prove-up" hearings for his most seriously-injured clients. In *Unocal*, Cole not only was an invaluable member of the PSC, he also directly represented roughly 1,100 victims—an impressive statistic given the budding nature of his law practice and fierce competition for clientele among the scores of law firms swarming to the scene. Just like Cole's work in *Augustus*, his work in *Unocal* was driven by a strong determination to level the playing field for the disenfranchised people who, before the litigation, had virtually no voice. Everything Cole has done in the decades between these two bookends has been in furtherance of that goal.

Following *Unocal*, and having established himself there as an aggressive litigator and indispensable leadership committee member (despite no prior

8

background in environmental toxic tort litigation or class actions), Cole went on immediately to serve as <u>lead</u> counsel among a dozen other firms in *In Re Tosco SFR Litigation*, Contra Costa County Superior Court Case No. C97-01637, where he sued the successor-in-interest to the refinery in the Unocal case on behalf of over 2,000 claimants. He then parlayed that experience and reputation for excellent work to get appointed as <u>lead</u> counsel again, this time in *In Re Westley Tire Fire Litigation*, Santa Clara County Superior Court Case No. CV 801282, and obtained another roughly $10 million in settlement for residents affected by air, land, and groundwater contamination. Again, these are just examples, and nowhere near an exhaustive illustration of Cole's leadership.

In addition to his achievements leading cases, Cole has successfully prosecuted cases in coordination with other firms. For example, in *Despres v. United Parcel Service, Inc.,* California Northern District Court Case No. 3:03-CV-02987 (TEH) and No. 3:03-CV-02001 (TEH)), Cole served as co-counsel in what was at the time (and might still be) the largest class action settlement of a meal break-only case ($87 million-dollar settlement on behalf of a roughly 20,000-person class). Cole also co-prosecuted, obtained a judgment, and thereafter negotiated a two-tiered $19 million settlement on behalf of fitness club group exercise instructors for unpaid wage and unreimbursed business expense claims. *Fulton v. Sports and Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.,* San Diego County Superior Court Case

No. GIC881669 (consolidated with Case No. GIC873193). See also *Securitas Security Services Cases,* Santa Clara County Superior Court Case No. 1-05-CV-047499 (co-prosecuted and settled a $15 million non-reversionary settlement on behalf of a class of tens of thousands of security guards for meal and rest break violations). As the attached firm resume details, this is the tip of the iceberg regarding Cole's leadership and results.

Cole is also an expert negotiator,[4] a skill clearly beneficial to getting cases resolved, but equally important in resolving discovery and case management disputes and facilitating communication within Steering Committees. Indeed, Cole has intensely litigated and then brokered settlements on behalf of many classes. To wit, he represented a class of retail Assistant Managers for uncompensated time spent undergoing security checks and failure to provide meal and rest breaks ($7.5 million, *Kelly v. Walgreens*, San Francisco County Superior Court Case No. CGC-07-464347), a class of over 1,000 allegedly misclassified retail Store Managers ($6.9 million, *Tierno v. Rite Aid Corp.,* California Northern District Court Case No. 3:05-CV-02520 (TEH)) and as lead class counsel among many firms for a class of 43,000 Walgreens retail store workers in California ($23 million, *In Re Walgreen Co. Wage*

---

[4] Cole is also a trained mediator and provides mediation services through www.colemediations.com. He has also presented at attorney conferences on class action procedure as well as negotiation theory and skills.

*and Hour Litigation*, United States District Court, Central District of California Case No. 2:11-CV-07664).

Since founding SCA in 1992, Cole has been principally responsible for vetting, filing and directing the prosecution of nearly every one of the hundreds of complex actions he has litigated. For more information about Cole's record, and the achievements of SCA, the firm's resume is attached hereto as Exhibit A.

## IV.   SCOTT COLE EXCEEDS THE STANDARDS SET FORTH BY THE COURT FOR LEADERSHIP IN THIS MDL

In its Case Management Order, this Court stated that the "main criteria" for leadership positions are (1) willingness and ability to commit to a time–consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner. (Id., at 6). Other considerations in Fed. R. Civ. P. 23(g)(1)(A) include the work counsel has done in identifying or investigating potential claims in the action and counsel's knowledge of the applicable law.

### A.   Scott Cole Is Willing and Able to Commit to This MDL

Scott Cole has already committed to what will likely be an expensive, time-consuming case. When a call went out to see what firms wanted to be a part of the leadership of this case, relatively few firms stepped up. Cole's firm was one that did. In doing so, Cole has already incurred filing and travel costs, devoted considerable

time, both personally and through his team, brought on experts, searched public records, interviewed witnesses, researched legal issues, and otherwise conducted himself as a committed plaintiffs' attorney should. Cole didn't wait for the Court to approve him as a co-leader of this case; he just stepped up.

Scott Cole has thrived in the competitive class action business because he has the will and resources to execute complex legal strategies against formidable adversaries.[5] Building on his success, the firm has devoted substantial resources to cases that last many years, sometimes even more than a decade. The precedent-setting decision in *Augustus v. ABM Security Services,* for example*,* took nearly 12 years—from filing to judgment, appeal, reversal, and eventually settlement.

In January 2018, in yet another example of the longevity of Cole's dedication to the cases he handles, Cole's seven-year battle against Unity Courier Service, Inc. (wage-and-hour class action filed in June 2011, later granted class certification) finally ended with a bankruptcy court honoring his certified class' $80+ million claim. United States Bankruptcy Court, Central District of California (Case No. 2:17-bk-13943). While other firms filed related cases, Cole is the only court-appointed class counsel in this case as well.

---

[5] Early in his career, Cole's commitment to his clients' cause moved him to take out a second mortgage on his house just to better finance litigation on behalf of claimants in *In re Tosco SFR Litigation, supra*. In the two decades and considerable successes since then, further mortgaging his own home won't be a concern, but the historical point illustrates that Cole is an attorney who puts client interests over his own.

While Cole is intimately familiar with the demands of class action practice, he also understands the Court's interest in efficiency. Here, this interest aligns with that of the putative class. American consumers' personal information was compromised and we cannot wait years before it is re-secured; consumer plaintiffs' attorneys in this MDL must push Equifax hard to act quickly, not merely in providing monetary compensation, but in taking concrete actions along the way to protect consumer data and ensure such a breach never occurs again.

### B.     Scott Cole Will Be An Invaluable Team Member

While Cole has conferred with various attorneys likely to seek leadership appointments, he has made no promises to support specific candidates and would gladly work with any of the other accomplished advocates. Under the informal facilitation of pre-CMC efforts by David J. Worley, plaintiffs' counsel has thus far proven to be a talented group capable of working collaboratively—boasting myriad perspectives, skills and resources. Cole fully intends to continue this approach if the Court grants him the honor of serving on the Plaintiffs' Steering Committee.

As discussed herein, Cole worked collaboratively with other counsel, generally, since the first cases were filed and, more specifically and recently, assisted drafting of Proposed Case Management Order No. 2, and the Preliminary Report, and attended both the JPML hearing in St. Louis and the first Case Management

Conference in Atlanta. He is committed to continuing this hands-on approach as a member of the Plaintiffs' Steering Committee.

### C.    Scott Cole Is Experienced in Complex and Class Action Litigation

Scott Cole has a wealth of experience successfully litigating class actions and other complex cases. Examples of his achievements include:

- *CKE Overtime Cases*, No. BC283274 (JCCP No. 4274) (Los Angeles Sup. Ct.): counsel for plaintiffs, achieved $9 million settlement of alleged unpaid overtime wages.

- *Despres (Cornn), et al. v. United Parcel Service, Inc.,* No. 3:03-CV-02001 (N.D. Cal.): co-counsel for plaintiffs alleging meal period violations on behalf of California ground delivery drivers. It settled for $87 million.

- *In Re Walgreen Co. Wage and Hour Litigation,* No. 2:11-CV-07664 (C.D. Cal): court-appointed lead counsel following consolidation of nine wage-and-hour cases, and achieved a $23 million settlement.

- *Kullar v. Foot Locker, Inc.,* No. CGC-05-447044 (San Francisco Sup. Ct.): counsel for plaintiffs alleging retail employer required certain purchases as condition of employment. The $2 million settlement was approved and withstood multiple appeals by an objector.

- *Mambuki, et al. v. Securitas Security Services USA, Inc.,* No. 1-05-CV-047499 (JCCP No. 4460) (Santa Clara Sup. Ct.): counsel for plaintiffs in

coordinated action alleging denial of meal and rest periods. It resolved for $15 million.

- *O'Brien v. Edward D. Jones & Co., LP.,* No. 1:08-CV-00529 (N.D. OH): lead counsel committee members in nationwide and New York state class action that recovered $19 million on behalf of financial services representatives.

- *Ramirez, et al. v. The Coca Cola Company, et al.,* No. RCV 056388 (JCCP No. 4280) (San Bernardino Sup. Ct.): co-counsel for plaintiffs on coordinated actions alleging off-the-clock wage violations on behalf of more than 4,000 hourly workers at the company's bottling, distribution and sales centers. It settled for $12 million.

- *Augustus v. ABM Security Services, supra*: created important precedent regarding on-call breaks and obtained a $110 million settlement after nearly 12 years of litigation and appeals.

- *Onyeige et al v. Union Telecard Alliance, LLC,* MDL 2:05-CV-5802 (D. NJ): one of the counsel for plaintiffs alleging negligent misrepresentation and deceptive advertising practices against a pre-paid phone card provider. It settled for approximately $22 million.

Currently, Cole is involved with a variety of consumer, privacy, employment, and anti-trust type cases, including:

- *Ortiz v. Golden State FC (Amazon),* No. 4:17-CV-03820-JSW (N.D. Cal.) (Hon. Jeffrey S. White): counsel for plaintiff in pending putative class action alleging misclassification and related labor code violations.

- *Nguyen v. Southern Glazer's Wine & Spirits,* No. 5:17-CV-03805-LHK (N.D. Cal) (Hon. Lucy H. Koh): lead attorney (by agreement) for plaintiffs in pending class action alleging contract, fraud, and anti-trust violations against the nation's largest liquor distributor.

- *Neumann v. Apple, Inc.,* No. 5:18-CV-00324-EJD (N.D. Cal.) (Hon. Edward J. Davila): counsel for plaintiff in recently-filed putative class action alleging contract, fraud, and consumer protection claims arising out of defective mobile phone batteries.

### D.     Scott Cole Has Sufficient Resources for this MDL

Cole can unequivocally assure the Court that he has sufficient resources to undertake a leading role in this MDL. As his many successes illustrate, he is committed to going the distance and sparing no expense to best represent his clients' interests and those of the putative class. Furthermore, as discussed above, Cole has already demonstrated his commitment to the case and consumer plaintiff class since September 2017 when he began litigating this case.

SCA boasts five attorneys[6] and can be staffed appropriately,[7] depending on the type and amount of work and without duplicating efforts. As the Court is aware, individual roles on MDL steering committees can take many forms. Cole and his firm are ready and willing to assist with any of the following areas:

a.   Coordinating and conducting pretrial discovery;

b.   Developing and proposing schedules for the commencement, execution, and completion of plaintiffs' discovery on behalf of all plaintiffs;

c.   Calling meetings of plaintiffs' counsel, coordinating responses to questions of other parties or of the Court, and/or initiating joint briefs in pretrial proceedings;

d.   Examining witnesses at hearings and/or depositions;

e.   Appearing at pretrial hearings and other proceedings;

---

[6] The Court should note that Mr. Rumberger is also committed to the prosecution of this case, has assisted and will continue to assist in its prosecution, not as a PSC member, but alongside Mr. Cole's office.

[7] SCA's firm size has always remained flexible and tracks its current and foreseeable litigation commitments—if SCA needed more lawyers, it can and would hire more lawyers. Indeed, Cole is certainly seasoned enough to understand what class actions entail but also does not believe in waste. Should this case demand more firepower, Cole is ready to commit it.

f.     Drafting and arguing motions presented to the Court or Magistrate on behalf of the Plaintiffs' Steering Committee, and opposing any motions submitted by Defendants or other parties;

g.     Negotiating and entering into stipulations with Defendants regarding this litigation;

h.     Developing settlement strategies for claims or portions thereof of any case in this MDL;

i.     Maintaining adequate files of all pretrial matters and making them available to plaintiffs and/or their attorneys under reasonable terms and conditions;

j.     Preparing periodic status reports summarizing the Plaintiffs' Steering Committee's work and progress, and submitting them to Liaison Counsel for distribution; and

k.     Performing any other task necessary for the Plaintiffs' Steering Committee to accomplish its duties as defined by the Court's orders.

## V.    <u>CONCLUSION</u>

As Scott Cole of Scott Cole & Associates would be an invaluable member of such a team, he hereby respectfully requests appointment to the Consumer Plaintiffs' Steering Committee.

Dated:  February 2, 2018              Respectfully Submitted,

_/s/ Scott Edward Cole_
Scott Edward Cole, Esq.
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, 9th Floor
Oakland, CA 94612
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
Email:       scole@scalaw.com

Proposed Consumer PSC Member

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 2, 2018, I electronically filed the foregoing document through CM/ECF System, which will provide electronic service notification to all counsel of record registered as CM/ECF users, and that a courtesy copy will be served on Court chambers.

Respectfully submitted this 2nd day of February 2018.


*/s/ Scott Edward Cole*
Scott Edward Cole