**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No.: 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS |

**APPLICATION OF ROSEMARY M. RIVAS AND JUDITH H. GERMANO
FOR APPOINTMENT AS PLAINTIFFS' CO-LEAD COUNSEL, OR IN
THE ALTERNATIVE, TO THE PLAINTIFFS' STEERING COMMITTEE**

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(g) and the Court's Case Management Order Nos. 1 (ECF No. 23) and 2 (ECF No. 87), Ms. Rosemary M. Rivas of Levi & Korsinsky, LLP ("L&K") and Ms. Judith H. Germano of GermanoLaw LLC ("GermanoLaw"),[1] who together have over 25 years of experience representing consumers and/or in the areas of data privacy and cybersecurity, hereby apply for appointment as Plaintiffs' Co-Lead Counsel, or in the alternative, to the Plaintiffs' Steering Committee.

---

[1] Ms. Rivas and Ms. Germano (collectively, "Proposed Counsel"), represent Plaintiffs Maria Schifano, LA' Sohn Smith, Dr. Heather Waitman, and Bob Helton ("Plaintiffs"), who filed the action titled, *Schifano, et al. v. Equifax Inc*., Case No. 17-06996.

As explained in detail herein, Ms. Rivas has dedicated her legal career to representing consumers in class actions and complex litigation.  She has served in leadership positions in a number of high-stake cases pending in state and federal courts, including in actions involving consumer privacy and data breaches.  Most recently, in a highly competitive process, Judge Charles R. Breyer appointed Ms. Rivas to the Plaintiffs' Steering Committee in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.,* Case No. 15-MDL-2672-CRB (JSC), which settled for over $15 billion dollars on behalf of consumers.

Ms. Germano, who is a nationally recognized leader in cybersecurity governance and privacy issues and who served more than a decade as a federal prosecutor, has extensive experience in evaluating and litigating both internal and external cybersecurity threats.  Her deep knowledge of cybersecurity and privacy governance and standards, significant experience managing large teams in complex investigations, and her honed advocacy skills, will bring valuable perspective and insight to the Plaintiffs' leadership team.

In summary, Ms. Rivas' and Ms. Germano's collective experience in the subject matter of this litigation, the applicable law, the MDL process and class action procedure, and their passion for their work, supports their appointments to

2

leadership positions in this case.  They are also willing and able to commit the necessary resources to ensure the vigorous prosecution of this matter, for however long it takes, and have a track record of working cooperatively with others, including with other Plaintiffs' counsel in this and other matters, and with federal agencies.  Accordingly, Ms. Rivas and Ms. Germano respectfully request that the Court grant their application.

## II.   PROPOSED COUNSEL ARE WELL-QUALIFIED TO LEAD THIS LITIGATION

### A.   Proposed Counsel Have The Requisite Experience and Knowledge

#### 1.   Rosemary M. Rivas

Rosemary M. Rivas heads the San Francisco office and Consumer Litigation Group of Levi & Korsinsky, LLP, which also has offices in New York City, Washington, D.C., and Connecticut, and over 30 lawyers and other legal professionals.  *See* Exhibit A (Levi & Korsinsky, LLP Firm Resume).  Ms. Rivas and/or the firm have served in leadership positions in a number of high-stake cases pending in state and federal courts.  Ms. Rivas has dedicated her legal career to representing consumers and has a significant amount of experience and knowledge in litigating complex, class action cases, including in the areas of data breach litigation and consumer privacy.

Ms. Rivas' specific experience in data breach and consumer privacy litigation supports her appointment as Co-Lead Counsel. For example, Ms. Rivas represented the plaintiff in *Ruiz v. Gap, Inc.*, 380 Fed. Appx. 689, 691 (9th Cir. 2010), one of the earliest decisions by the Ninth Circuit finding Article III standing in a case involving the theft of a laptop containing job applicants' personal information and Social Security Numbers. A number of district court cases have cited *Ruiz* and found Article III standing, including *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011). Additionally, in *Ruiz*, Ms. Rivas worked closely with Dr. Larry Ponemon, the Chairman and Founder of the Ponemon Institute, "a research 'think tank' dedicated to advancing privacy, data protection and information security practices."[2] As a result of this work, Ms. Rivas gained significant knowledge regarding the increased risks consumers face as the result of data breaches and appropriate consumer remedies.

Ms. Rivas was also one of the attorneys serving on the plaintiffs' steering committee in another large MDL concerning software that improperly intercepted and transmitted private communications, content, and data from cell phones, which resulted in a $9 million settlement and valuable injunctive relief. *See In re Carrier*

---

[2] Ponemon Institute, https://www.ponemon.org/management (last visited Feb. 2, 2018)

*IQ, Inc., Consumer Privacy Litigation*, Case No. 3:12-md-02330-EMC (N.D. Cal.). In *Carrier IQ*, Ms. Rivas was instrumental in formulating the Article III standing arguments that were made to defeat the motion to dismiss.

Ms. Rivas also assisted in a global settlement for a class of approximately two million consumers against Health Net of California for failing to adequately protect private personal and medical information from unauthorized disclosure to third parties. *Shurtleff v. Health Net of California*, Case No. 34-2012-00121600 (Sacramento Sup. Ct. Cal.) (settled for credit monitoring, $2 million fund for identity theft costs and improvements to company's security practices).

Additionally, Ms. Rivas currently represents employees whose W-2 information was disclosed to an unauthorized third party in a "phishing" attack. *Sung, et al. v. Schurman Fine Papers, d/b/a Schurman Retail Group*, Case No. 3:17-cv-02760 (N.D. Cal.). In the *Sung* case, Ms. Rivas negotiated a settlement involving changes in the company's security policies and procedures, in addition to robust identity and fraud protection and compensation to class members of up to $650.00 in cash.

Based on her extensive experience, Ms. Rivas has been invited to speak at the following conferences specifically related to consumer data privacy: *Data Privacy Law 101: U.S. Data Privacy and Security Laws 2015* (The Bar

Association of San Francisco) and *Effective Consumer Privacy Enforcement*, 2011 (Berkeley Law and The Samuelson Law, Technology & Public Policy Clinic).[3]

Ms. Rivas' professional experience and skills in MDL proceedings and class action litigation is underscored by her recent appointments and work in other high-profile cases. Recently, the Honorable Daniel D. Crabtree for the United States District Court for the District of Kansas, appointed Ms. Rivas to the Plaintiffs' Steering Committee in the case titled, *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, Case No. 2:17-md-02785-DDC-TJJ. Moreover, in a competitive process involving 150 applicants, the Honorable Charles R. Breyer selected Ms. Rivas as one of 22 lawyers to serve on the Plaintiffs' Steering Committee in the multidistrict litigation titled, *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB, which to date has settled for over $15 billion dollars on behalf of consumers—the largest in the auto industry. *The*

---

[3] Additional speaking engagements by Ms. Rivas include: *False Advertising Class Actions: A Practitioner's Guide to Class Certification, Damages and Trial*, 2017 (The Bar Association of San Francisco); *1st Annual Class Action Money & Ethics Conference*, 2017 (Beard Group); *Section 17200: The Fertility of Man's Invention*, 2016 (The Bar Association of San Francisco); *Food Labeling and False Advertising Class Actions*, 2015 (The Bar Association of San Francisco); and *Class Actions: New Developments & Approaches for Strategic Response*, 2013 (American Bar Association).

*Recorder*, a San Francisco legal newspaper, named the lawyers selected by Judge Breyer as a class action "dream team."

In another class action suit headed by Ms. Rivas, the Honorable Jon S. Tigar stated that it was a "total pleasure" to witness the lawyering in the case before him. In 2015, the Honorable Dolly Gee of the Central District of California granted final approval of a nationwide class action settlement in *Lima v. Gateway*, Case No. 09-cv-01366-DMG, a consumer fraud case that Ms. Rivas filed in 2009 and in which she was instrumental in defeating defendant's arbitration clause after the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

Ms. Rivas is also currently serving as Class Counsel in *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR (S.D.N.Y), where she recently succeeded in obtaining certification of Florida and New York classes of consumers who bought an allegedly defective hair relaxer.  Ms. Rivas has also been instrumental in obtaining favorable appellate decisions on behalf of consumers in the areas of false advertising, federal preemption, and arbitration, such as *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662 (9th Cir. 2014); *In re Sony PS3 "Other OS" Litigation*, 551 Fed. App. 916 (9th Cir. 2014); and *Probst (Brian) v. Superior Court (Health Net of Cal., Inc.; Health Net, Inc.)*, Case No. S201099, 2012 Cal. LEXIS 5008 (May 23, 2012).

Other class cases Ms. Rivas has resolved to successful conclusion include *Pappas v. Naked Juice*, Case No. 2:11-cv-08276 (C.D. Cal.) (Co-Lead Class Counsel; achieved $9 million settlement and changes to the company's testing procedures and product labels) and *Garcia v. Allergan, Inc.*, Case No. 09-cv-07088PSG (C.D. Cal.) (Co-Lead Class Counsel; achieved $7.75 million settlement and changes to the company's training procedures).

Ms. Rivas is immensely satisfied from her work when, at the end of the day, consumers contact her expressing gratitude and appreciation for the results of the cases she successfully litigated and favorably resolved.  Indeed, in 2015, Bay Area Legal Aid presented Ms. Rivas with the Guardian of Justice award, for her work achievements in the law and her role in helping direct *cy pres* funds to ensure equal access to the civil justice system.

### 2.   Judith H. Germano

Judith H. Germano is a nationally recognized thought leader on cybersecurity governance and privacy issues.  As a former federal prosecutor for 11 years, and founder of GermanoLaw, Ms. Germano advises and represents public and privately-held companies and individuals on cybersecurity and privacy matters, as well as on issues relating to fraud and other financial crimes, and regulatory-compliance.  *See* Exhibit B (GermanoLaw Firm Biographies).

An experienced trial attorney and negotiator, Ms. Germano has successfully handled federal civil and criminal cases as a plaintiff/prosecutor and as a defense attorney.  In 2013, recognizing the growing prevalence and scope of cyber threats, and lack of sufficient priorities and efforts to protect consumers and data, Ms. Germano founded GermanoLaw, to provide client-focused advice and representation to companies and individuals.  GermanoLaw is a wholly woman-owned law firm.  In addition to Ms. Germano, the GermanoLaw Team includes: Gwen Schoenfeld, Senior Counsel; Danielle Yatrakis, Associate; Theresa Reilly, Investigator (former FBI agent of 23 years); and Nicola Ruiz, Executive Assistant.

At GermanoLaw, Ms. Germano has worked directly with clients in responding to data breach incidents, and in developing policies and procedures aimed at enhancing cybersecurity and increasing protections for, and notice to, consumers regarding their data.  Ms. Germano also brings her litigation expertise to large, complex civil matters.  She currently is co-counsel for PharMerica Corporation in *United States of America, et al. v. Omnicare, Inc. et al.*, Case No. 11-cv-01326-NLH (D.N.J), a large whistleblower suit brought on behalf of the federal government and 28 states accusing PharMerica and several additional pharmacy defendants of violating the False Claims Act by offering kickbacks to nursing homes in exchange for drug referrals.  After several years pending in the

District Court, that case currently is on appeal in the U.S. Court of Appeals for the Third Circuit.

Before founding GermanoLaw, Ms. Germano was Chief of Economic Crimes at the U.S. Attorney's Office for the District of New Jersey.  She has supervised and prosecuted complex cases of national and international impact, including involving cybercrime, securities, and other financial fraud, identity theft, corruption, and national security.  Ms. Germano started handling identity theft and credit card fraud investigations and prosecutions in 2002, as an Assistant U.S. Attorney.

Before joining the U.S. Attorney's Office, Ms. Germano worked at the global law firm Shearman & Sterling, where she worked on complex litigation including high-stakes class action and MDL litigation.  For example, Ms. Germano was part of the defense team representing BASF AG in *In Re Vitamins Antitrust Litigation*, Misc. No. 99-197, MDL No. 1285 (D.D.C.), an MDL involving both domestic and international defendants concerning alleged price-fixing by suppliers of vitamins which resulted in settlements totaling more than $1 billion.

Ms. Germano also served as a law clerk to the Honorable Joseph M. McLaughlin of the U.S. Court of Appeals for the Second Circuit, and the

Honorable Dominic J. Squatrito of the U.S. District Court for the District of Connecticut.

In addition to her work in private practice, Ms. Germano also remains on the cutting edge of developing cybersecurity law, policy, and strategy through her work in academia. She is a Senior Fellow at the NYU Center for Cybersecurity (CCS) and NYU Center on Law & Security (CLS), and an Adjunct Professor of Law at NYU School of Law. Ms. Germano spearheads NYU's Women Leaders in Cybersecurity series, and developed NYU Law School's first Cybercrime seminar. Ms. Germano leads the CCS cybersecurity taskforce and roundtable series, where she convenes corporate executives and senior government officials to address critical cybersecurity concerns.

In addition to her deep knowledge of cybersecurity law and policy, Ms. Germano is especially skilled at bringing together different skill sets and perspectives, and leading diverse teams to collaborate and achieve success. In her 11 years as a federal prosecutor, Ms. Germano handled and supervised highly complex investigations, and led large teams of federal prosecutors and case agents from different federal (and sometimes also state) agencies. Currently, Ms. Germano often coordinates with other law firms of varying sizes in handling

complex civil and criminal matters.  Her work at NYU also illustrates her collaborative leadership skills.

Ms. Germano regularly educates consumers, corporate executives, and government officials on cybersecurity and data protection issues through her publications and presentations.  Since it is generally understood that the public and private sectors need to collaborate to address the nation's cybersecurity challenges, Ms. Germano's intimate familiarity with federal and state regulations relating to cybersecurity will be an invaluable asset in this case.  She co-authored a whitepaper relating to cybersecurity's evolving regulatory and liability landscape entitled, *After the Breach: Cybersecurity Liability Risk.*  The paper specifically addresses some of the large data breaches and the corresponding litigation from the last several years including the Target breach, the TJX breach, the Heartland Payment Systems breach, and the Wyndham Hotel Group breach.  She authored several other relevant whitepapers including *Cybersecurity Partnerships: A New Era of Public-Private Collaboration*, which examines the barriers to cybersecurity collaboration, internally within companies and government, and also across the public-private sector divide.

Ms. Germano is a highly sought after keynote speaker and presenter, in both business and academic settings.  She has presented at numerous events and

programs, including the National Association of Corporate Directors (NACD)'s Global Board Leaders Summit; NACD's Cybersecurity Summit; the Washington Post Cybersecurity Summit; the CISO Executive Summit; the PLI Director's Institute; the Counsel on Foreign Relations (NYC); the U.S. Chamber of Commerce (Washington, D.C.); national meetings and internal training programs for the FBI, SEC, FTC, and FDA; and lectures at NYU, Columbia, Yale, and Georgetown University. She has appeared on HuffPost Live and been quoted in Forbes, the Washington Post, CNBC, and elsewhere.

A sampling of Ms. Germano's speaking engagements include:

- *Emerging Technologies, Evolving Challenges, At the Intersection of Tech, Law & Policy* (keynote address, NYU Women Cybersecurity Leaders: Emerging Technologies conference with approximately 500 registrants);

- ALM's Transatlantic General Counsel Summit: *Caution and Opportunity in Collecting Data Today: Structuring and Leveraging Your Data Collection* (served on a panel discussing ethical considerations, as well as reputational and logistical risks, regarding collecting and using personal information, and opportunities in data analysis for legal and business decision making);

- *Reinventing the Legal Function: Executive Cybersecurity Briefing* (served on a panel providing an executive cybersecurity briefing and practice tips to corporate general counsels);

- *Cybersecurity Regulators Forum, Hosted by FTC and FDA* (spoke regarding advancing and improving self-regulatory approaches to cybersecurity);

- *Confronting the Evolving Cyber Threat* (delivered opening comments);

- *Risky Business: Cybersecurity Challenges for the Private Sector* (served on a panel discussing cybersecurity challenges for the private sector); and

- *Cyber-Ethics: Emerging Issues & Evolving Laws* (panelist with Former FBI Director Robert Mueller and Former U.S. Attorney Patrick Fitzgerald, moderated by Former Acting U.S. Attorney General Mark Filip).

Given her instrumental work in cybersecurity and response, it is no surprise that NYU School of Law has called Ms. Germano a "cybersecurity pioneer," and *Directors & Boards* magazine touted her as a "cybersecurity expert." Ms. Germano's passion in focusing on cutting-edge cybersecurity and privacy

14

issues is further evidenced by the fact that in 1996, while in law school, she coordinated what may have been the first-ever, full-day symposium on cyberlaw, "Cyberspace & the Law."

Ms. Germano's deep expertise in cybersecurity and privacy matters, experience with large, complex investigations, MDLs and civil litigation, and extensive courtroom and negotiation experience make her uniquely qualified to serve in a leadership position.

### B. Proposed Counsel Is Willing to Commit to a Time-Consuming Process and Will Commit All Resources Necessary to Advance and Successfully Litigate this Action

Proposed Counsel are willing to commit to a time-consuming process. They recognize that successfully prosecuting this litigation on behalf of consumers nationwide against a resourceful defendant such as Equifax will require sufficient personnel and financial resources and are prepared to commit those resources for the entire duration of the litigation. L&K and GermanoLaw are prepared to devote significant human and financial resources to representing the interests of Plaintiffs and class members in this action. L&K and GermanoLaw are well-established, successful law firms that have the resources and personnel necessary to pursue a case of this magnitude. Both firms have highly experienced attorneys and support

staff who are skilled at dealing cooperatively with each other to maximize efficiency and avoid unnecessary costs and expenses.

Specifically, with a team of over 30 experienced litigators, L&K is willing and able to fund all of the obligations to litigate this case.  L&K has already committed a number of lawyers and paraprofessionals to the effort and will devote whatever further resources are necessary to litigate this case through pre-trial, trial, and any appeals that may be necessary.  Additionally, since this litigation is national in scope, it is important to ensure nationwide resources are committed to the litigation.  L&K has offices in New York, California, Connecticut, and Washington, D.C., and attorneys from offices on both coasts already are assigned to this litigation.  Two senior associates, Courtney Maccarone and Andrea Clisura, based in New York, as well as another associate, Quentin Roberts, based in California, have been staffed on this case and will work with Ms. Rivas in all aspects of the litigation.  Thus, L&K is able and willing to address the needs of the litigation on both coasts, to the ultimate benefit of consumers.

GermanoLaw is comprised of four highly skilled and committed women including Ms. Germano, one senior counsel, an associate counsel, and an investigator who previously served as an FBI agent for 23 years.  The co-lead

16

leadership structure proposed will permit Proposed Counsel to combine their efforts and resources to meaningfully oppose Equifax.

Moreover, L&K routinely advances the costs of litigation, consistently litigates cases on a contingency basis, and has demonstrated an ability and willingness to dedicate substantial resources to vigorously prosecute the claims of proposed class members.  L&K is prepared to commit the resources necessary to prosecute this case to a successful conclusion.

In sum, Proposed Counsel have already thoroughly advanced the claims at issue by investigating and including the detailed allegations in their pleading, have extensive experience prosecuting the very claims that are at issue here, and are committed to expending the resources and time necessary to ensure the interests of the proposed class members are adequately represented.

### C.    Proposed Counsel Will Work Cooperatively with Plaintiffs' and Defense Counsel

The leadership team that this Court appoints must work cooperatively to resolve this action.  Ms. Rivas and Ms. Germano both recognize that civility and professionalism benefits all parties, their counsel, the judiciary, and the legal path toward justice.  As demonstrated by their successful records, Ms. Rivas and Ms. Germano are committed to working cooperatively with all counsel and each believe that respect, cooperation, efficiency, and civility among other plaintiffs'

lawyers and defense counsel is necessary to achieve the best overall results for affected class members.

The nature of the cases Ms. Rivas has handled in other national class litigation and MDL proceedings strongly evidences that ability and commitment. Given her history, the Court can be assured that Ms. Rivas is both capable and willing to serve alongside any other counsel this Court may see fit to appoint to a leadership position.  The list of firms who have been co-lead counsel, on executive committees, or steering committees with Ms. Rivas is numerous.  Indeed, in *In re: Volkswagen "Clean Diesel,"* Ms. Rivas collaborated with 21 other skilled attorneys and their firms to effectuate settlements totaling more than $15 billion on behalf of consumers in record-setting time.  She is confident that she will cooperatively work with the leadership team appointed here.

Similarly, Ms. Germano's experience as a civil litigator (appearing as counsel to plaintiffs and defense), a federal prosecutor (leading teams of investigators from different agencies on complex investigations), and an advisor to companies and individuals on cybersecurity and privacy matters, evidences her ability to work cooperatively with a wide range of attorneys, company executives, and any other individual she may encounter in her role as Co-Lead Counsel. Specifically, while litigating the *In re Vitamins Litigation* MDL, she worked

collaboratively with a vast number of attorneys from defense firms across the globe, participating on biweekly conference calls, in-person meetings, as well as coordinating for hearings and other litigation strategies.  Moreover, while an AUSA, she led the Sharpe James prosecution team and had to work collaboratively with a diverse group including individuals from the U.S. Attorney's Office, the FBI, the IRS, state investigators, and the New Jersey Office of the Attorney General.  Now, in her role at NYU, Ms. Germano routinely convenes thought leaders from industry and government for critical cybersecurity discussions in both closed-door settings and public fora (prior meeting participants include officials from the FTC, FDA, SEC, FBI, and USSS).  Accordingly, should plaintiffs' counsel have to coordinate with any federal or state regulators in this case, including but not limited to the FTC, Ms. Germano has extensive experience coordinating and working with government agencies.

### D.  Proposed Counsel Have Taken Significant Steps to Identify and Investigate the Consumer Claims

Another factor the Court may consider is the work done "in identifying and investigating potential claims in [this] action."  Fed. R. Civ. P. 23(g)(1)(A)(i).  Proposed Counsel have undertaken a significant amount of work in identifying and investigating the consumer claims at issue.  Among other things, they researched and reviewed numerous relevant documents such as news articles about the breach,

the company's response, and studies regarding the long-lasting effects of a data breach (such as identity theft).  Proposed Counsel also interviewed numerous victims of the data breach, including Plaintiffs.

Further, Proposed Counsel will continue to expend considerable resources to identify and investigate pertinent factual and legal issues relating to Plaintiffs' claims through discussions with potential witnesses and class members.  The work of Proposed Counsel in identifying and investigating the claims in this case, as well as their efforts in putting forth their initial class action complaint, demonstrates that they have, and will continue to, fairly and adequately represent the proposed class members.

Moreover, outside of this litigation, Ms. Germano works and will continue to work to educate the general public on cybersecurity threats and identity theft prevention and response.  She has experience speaking with student and community groups about building awareness of cybersecurity threats, frequently speaks to individuals in academia concerning cybersecurity risks and management, and recently was interviewed by Discovery Science for an upcoming show on cybercrime.  One talk Ms. Germano gave on "Cyber Threats and Cyber Security" which Columbia University posted on YouTube, and Oxford University posted on its portal, has more than 46,700 YouTube views,

https://www.youtube.com/watch?v=agHkanpEfik.

As a result of these efforts, Proposed Counsel together have a strong foundation of knowledge regarding the data breach and the legal issues; the above effort is reflective of Proposed Counsel's strong commitment to investigating and advancing the claims of the proposed class.  Proposed Counsel have taken, and will continue to take, steps to identify and litigate the claims and issues in this case and will continue to advance the litigation in a manner sufficient to support their appointment as Co-Lead Counsel.

In sum, the work already performed by Proposed Counsel demonstrates leadership, commitment, and the application of unparalleled experience and knowledge in this very type of security breach.

### E.    Other Factors Pertinent to Proposed Counsel's Ability to Fairly and Adequately Represent the Interests of the Class

Ms. Rivas and Ms. Germano are dedicated to the practice of law and to improving the justice system, including ensuring equal access to all litigants. Among other things, Ms. Rivas is a member of the American Association for Justice and recently participated in drafting updates to the MDL Standards and Best Practices by the Duke Law Center for Judicial Studies, in part, to increase women and diversity within the practice.

Ms. Germano is similarly dedicated to the advancement of equality and justice.  She frequently mentors and offers career advice to women and students in the field.  Ms. Germano created and spearheads NYU's Women Cybersecurity Leaders series which includes an annual full-day conference (with approximately 500 attendees the past two years), which brings together leading women and students in the industry to discuss substantive cybersecurity issues.

## III.   CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that the Court appoint Rosemary M. Rivas of Levi & Korsinsky, LLP and Judith H. Germano of GermanoLaw LLC as Co-Lead Counsel, or in the alternative, as members of the Plaintiffs' Steering Committee.

Respectfully submitted,

Dated: February 2, 2018 **LEVI & KORSINSKY, LLP**

By: s/ *Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
rrivas@zlk.com

**GERMANOLAW LLC**

By: s/ *Judith H. Germano*
Judith H. Germano
460 Bloomfield Avenue, Suite 200

Montclair, New Jersey 07042
Telephone: (201) 247-7970
jgermano@germanolaw.com

*Counsel for Plaintiffs Maria Schifano, LA'
Sohn Smith, Dr. Heather Waitman, and
Bob Helton*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the Application of Rosemary M. Rivas and Judith H. Germano for Appointment as Plaintiffs' Lead Co-Counsel, or in the Alternative, to the Plaintiffs' Steering Committee with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record indicated on the Electronic Mail Notice List maintained by this Court.

*s/ Rosemary M. Rivas*
Counsel for Plaintiffs Maria Schifano,
LA' Sohn Smith, Dr. Heather
Waitman, and Bob Helton

LEVI & KORSINSKY, LLP
44 Montgomery Street, Ste. 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Email: rivas@zlk.com