| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>ALL ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Pursuant to Federal Rule of Civil Procedure 26, Local Rule 16.2, and Case Management Order No. 4 (ECF No. 107), the parties submit this Joint Preliminary Report and Discovery Plan as follows.

**1. Description of Case:**

**(a) Describe briefly the nature of this action.**

**Plaintiffs' Description of the Nature of This Action:**

Plaintiffs (Consumers and Financial Institutions) bring this action against Equifax for its failure to adequately secure and safeguard personally identifiable information ("PII") such as the names, social security numbers, drivers' license numbers, mailing addresses, e-mail addresses and other personal information as well as credit and debit card numbers, three-digit security codes and other payment card data ("PCD") (collectively "Personal Information"), and for failing to provide timely and adequate notice that Personal Information had been stolen and precisely what types of information were stolen.

The class actions consolidated in this proceeding are in two discrete categories: (1) Consumer Cases (including cases brought on behalf of individuals

and small businesses)[1] and (2) Financial Institution Cases. To manage the litigation most efficiently, the Court has created separate tracks for the consumer cases and financial institution cases and accordingly directed certain proceedings outlined herein.

**Equifax's[2] Description of the Nature of the Actions:**

On September 7, 2017, Equifax announced that it had been the target of a data security incident involving criminal unauthorized access that potentially impacted the personally identifiable information of approximately 143 million U.S. consumers. Equifax also announced that approximately 209,000 consumers had certain credit or debit card information impacted by the incident, and approximately 182,000 consumers had certain credit file dispute documents impacted. That same day, Plaintiffs began to file putative class actions against Equifax in courts across the country. Those cases that were filed in (or removed to) federal district courts have been transferred to this Court by the U.S. Judicial Panel on Multidistrict Litigation.

The Plaintiffs in these putative class actions generally assert claims arising from Equifax's alleged actions and/or omissions in connection with the data security incident and assert a variety of common law and statutory claims seeking damages, injunctions, and other related relief. These putative class actions fall within two groups: (1) actions brought on behalf of consumers ("Consumer Cases") and (2) actions brought on behalf of financial institutions ("Financial Institution Cases").[3]

---

[1] Plaintiffs note that "Consumer Cases" is a misnomer; few Plaintiffs are "consumers" or customers of Equifax.

[2] Equifax submits this Joint Preliminary Report and Discovery Plan on behalf of all Equifax entities named as defendants in the cases currently pending before this Court in MDL No. 2800.

[3] Certain small businesses also have claims pending in this MDL, and those claims are being litigated within the Consumer Track.

**(b)**     **Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

 **Plaintiffs' Recitation:**

The litigation concerns the largest and potentially most damaging data breach in history. As one of the nation's "big three" credit bureaus, Equifax, Inc. ("Equifax") regularly collects, maintains, analyzes, and sells the private and confidential information of hundreds of millions of Americans, including names, Social Security numbers, driver's license numbers, birth dates, addresses, employment histories, spousal information, home ownership history, the amount of credit extended and utilized, payment history, and information relating to bankruptcies, foreclosures, and tax liens. Banks, credit card companies, insurance companies, employers and others regularly pay Equifax for this information in determining eligibility for services, setting rates, and making employment decisions.

The security breach occurred as a result of Equifax's failure to patch a well-known, publicized security vulnerability in Apache Struts 2 software used on Equifax's consumer disputes web portal. On March 6, 2017, the Apache Software Foundation issued a patch to address a critical security vulnerability in Apache Struts 2. In his October 3, 2017 written testimony to the U.S. House of Representatives' Committee on Energy and Commerce, Equifax's CEO at the time of the breach, Richard F. Smith, admitted Equifax was notified on March 8, 2017, by the Department of Homeland Security's Computer Emergency Readiness Team (CERT) of the need to patch the Apache Struts 2 vulnerability. By March 9, 2017, several articles and blogs had been published warning that criminals were exploiting the vulnerability. Yet Equifax failed to patch the critical Apache Struts 2 vulnerability, leaving its systems and the PII of millions of Americans' at risk.

Criminals exploited the Apache Struts 2 vulnerability and gained access to Equifax's systems for months. While some reports indicate the initial breach occurred as early as March 10, 2017, Equifax maintains the attackers first accessed the PII on May 13, 2017. Equifax reports that the breach ended on July 30, 2017, when Equifax took its consumer disputes web portal offline in response to suspicious activity. Hackers had continuous access to Equifax's network for between 78 and 142 days.

During the months when Equifax's system was compromised, the criminals had accessed approximately 147.9 million Americans' names, addresses, Social Security numbers, and/or birth dates. The criminals also gained access to approximately 13.3 million individuals' full or partial driver's license numbers, approximately 209,000 customers' Payment Card Data ("PCD") credit card numbers, and dispute documents containing the PII of approximately 182,000 individuals. Equifax has disclosed very little regarding the criminals' activities during that period. Based on the nature and extent of the breach, it is reasonable to conclude that in response to the criminals' commands, Equifax's systems transmitted the PII of all or virtually all of the compromised individuals during that period—that is, Equifax literally gave the information to the criminals.

Since the initial public announcement of the breach in September 2017, Equifax has twice revised its estimate of the number and types of compromised records. In October 2017, the company announced that there were 2.5 million more potentially impacted individuals than initially estimated. In March 2018, the company announced that it identified another 2.4 million potentially impacted individuals whose names and partial driver's license information had been stolen. To date, Equifax has acknowledged that approximately 148 million persons' PII and/or PCD have been compromised.

The victims of the breach suffered real and imminent harm as a direct consequence of its conduct, which include:

(a)     theft of Social Security numbers which can be used to open new lines of credit, obtain fraudulent tax refunds, and perpetrate identity theft;

(b)     theft of Personal Information to commit immigration fraud, obtain a driver's license or government ID card, obtain government benefits, file fraudulent tax returns and obtain a fraudulent refund, obtain medical services that will be billed to the victim, or any number of other frauds;

(c)     theft of PCD information to make duplicate cards that can be swiped as if they were the original;

(d)     theft of PCD to withdraw cash from ATMs;

(e)     costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts (including costs associated with freezing and unfreezing of their credit);

(f)     loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

(g)     costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Equifax data breach;

(h)     the imminent and certainly impending injury flowing from potential fraud and identity theft posed by the Personal Information being placed in the hands of criminals and already misused via the sale of such information on the Internet black market;

(i)     damages to and diminution in value of their personal and financial information entrusted to Equifax for the sole purpose of purchasing products and services from Equifax and with the mutual understanding that Equifax would safeguard Personal Information against theft and not allow access to and misuse of their information by others; and

(j)     for small businesses, damages associated with monitoring and mitigating harm caused by the breach.

The financial costs caused by Equifax's misconduct have also been incurred by the institutions that issued the payment cards compromised by the breach. These costs include, but are not limited to:

(a)     canceling and reissuing compromised credit and debit cards;

(b)     reimbursing customers for fraudulent charges;

(c)     closing fraudulent bank and credit accounts;

(d)     responding to credit disputes resulting from fraudulent accounts being opened as a result of compromised customer PII;

(e)     increasing fraudulent activity monitoring, taking appropriate action to mitigate the risk of identity theft and fraudulent loans and other banking activity, sustaining reputational harm, and notifying customers of potential fraudulent activity;

(f)     costs associated with the destruction of Financial Institution's property which has been rendered commercially useless and damaged, and thus must be replaced;

(g)     increased costs of associated with customers' freezing their credit; and

(h)     lost interest revenue and transaction fees due to reduced payment card usage and reduced willingness to obtain credit and debit cards and loans.

**Equifax's Recitation:**

On July 29, 2017, Equifax's Security team observed suspicious network traffic associated with its U.S. online dispute portal web application. In response, Equifax Security investigated and blocked the suspicious traffic that was identified, and continued to monitor network traffic. On July 30, 2017, Equifax Security identified additional suspicious activity and took the online dispute portal web application offline. Upon investigation, Equifax Security identified a vulnerability in Apache Struts (CVE-2017-5638), an open-source application framework that supports the Equifax online dispute portal web application. Equifax patched the affected web application before bringing it back online.

Equifax and its outside counsel promptly engaged Mandiant, a leading independent cybersecurity firm, to assist in conducting a forensic review to assess the scope of the intrusion and the specific data that was impacted. Based on the investigation, Equifax has determined that criminal hackers accessed certain confidential files without authorization between May 13 and July 30, 2017.

Equifax and its counsel worked diligently with its cybersecurity firm to determine the nature of the information that was accessed and to identify the potentially impacted consumers. One of Equifax's subsidiaries, Equifax Information Services LLC ("EIS"), is one of the three national credit reporting agencies in the United States. Importantly, Equifax found no evidence of unauthorized activity on EIS's core consumer or commercial credit reporting databases. As the forensic investigation proceeded, Equifax learned that the attackers may have accessed certain PII belonging to consumers. In particular,

Equifax determined that the information accessed for approximately 145.5 million U.S. consumers[4] primarily included names, Social Security numbers, birth dates, addresses and, in some instances, driver's license numbers. As a result of its ongoing analysis, Equifax later confirmed the identities of certain consumers whose partial driver's license information was accessed by the criminal actors. Equifax will notify these recently identified U.S. consumers directly.

On September 7, 2017, as soon as the Equifax understood the potentially impacted population, Equifax provided notification of the incident pursuant to state data breach statutes by (i) issuing a national press release, (ii) providing written notification of the incident to all state attorneys general as well as other regulatory bodies such as the Federal Trade Commission, (iii) establishing a dedicated call center to answer consumers' questions, and (iv) launching a dedicated website, equifaxsecurity2017.com, which provided all U.S. consumers with access to an online tool to determine if their information had been impacted by the incident, further information about the incident, free credit monitoring and identity theft protection offerings from Equifax, and a list of state-specific data breach disclosures. Consumers immediately began taking advantage of the tools Equifax provided on the dedicated website and through the call center.

In addition, Equifax sent direct mail notices to those consumers whose credit card information and dispute documents were impacted. Equifax will also send direct written notification to consumers whose partial driver's license information may have been accessed.

Equifax offered one free year of credit file monitoring and identity theft protection to all U.S. consumers, regardless of whether they were impacted by the security incident. The product offered, TrustedID Premier, includes credit monitoring of Equifax, Experian, and TransUnion credit reports, copies of Equifax credit reports, the ability to lock and unlock Equifax credit reports, identity theft insurance, and internet scanning for Social Security numbers. In addition, on

---

[4] On October 2, 2017, Equifax announced the completion of the forensic portion of the investigation of the incident, which determined that approximately 2.5 million additional U.S. consumers were potentially impacted, for a total of 145.5 million U.S. consumers. To make sure that these additional U.S. consumers were made aware of their inclusion in the potentially impacted universe, Equifax directly mailed them notification letters.

January 31, 2018, Equifax launched "Lock & Alert," another service available to all U.S. consumers free of charge, that enables consumers to quickly lock and unlock their Equifax credit report using a computer or app downloaded onto their mobile device. Equifax provided these services free to all U.S. consumers, and the company has taken many other steps and initiatives in response to this incident, all in an effort to assist U.S. consumers in protecting their PII.

**(c)** **The Legal Issues to Be Tried are as Follows:**

**Plaintiffs' Statement of Legal Issues:**

Hundreds of lawsuits were filed against Equifax related to the security breach on behalf of financial institutions, national and state financial institution associations and leagues, individuals, and small businesses. While all of the lawsuits vary slightly, they allege—fundamentally—the same or similar claims against Equifax. Plaintiffs anticipate that, although their consolidated amended complaints have not yet been filed, those complaints will contain similar causes of action already brought against Equifax in this MDL. The financial institution Plaintiffs, seeking to represent all banks, credit unions, financial institutions, and other entities in the United States (including its territories and the District of Columbia) who issue payment and/or otherwise extend credit to consumers whose data was exposed as a result of the security breach, have brought claims for negligence, negligence per se, and declaratory and injunctive relief. The national and state financial institution association and league Plaintiffs seek injunctive and declaratory relief. Consumer Plaintiffs, representing the individuals and small businesses who were impacted by the security breach, have brought claims based upon the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, negligence, negligence *per se*, bailment, unjust enrichment, state consumer protection laws, state data breach laws, and a claim for declaratory and injunctive relief.

Both Consumer and Financial Institution tracks will seek to certify these claims to proceed forward on behalf of the classes of individuals they seek to represent based upon a showing that common questions can be resolved by a showing of classwide proof.

**Equifax's Statement of Legal Issues:**

- Whether the Plaintiffs have suffered injury-in-fact sufficient to confer Article III standing;
- Whether any of the Plaintiffs' alleged injuries are fairly traceable to Equifax's conduct;
- Whether any of the Plaintiffs' alleged injuries are redressable by a favorable ruling;
- Whether the Plaintiffs have suffered any cognizable injury sufficient to satisfy the damages element of any of their substantive claims;
- Whether the Consumer Plaintiffs' FCRA claims are viable;
- Whether Plaintiffs' tort claims are barred by the economic loss rule;
- Whether Equifax's alleged conduct constitutes negligence and whether the Plaintiffs can prove each element of such a claim, including the existence of a duty, breach of that duty, and resulting damages;
- Whether Plaintiffs' claimed damages are the proximate result of any action or inaction on the part of Equifax;
- Whether Equifax's alleged conduct constitutes a violation of any state consumer fraud statute and the Consumer Plaintiffs can prove each element of such a claim;
- Whether Equifax's alleged conduct constitutes a violation of any state data breach notification statute and the Consumer Plaintiffs can prove each element of such a claim, including demonstrating the availability of a private class action under applicable law;
- Whether the Consumer Plaintiffs can prove each element of an unjust enrichment claim;
- Whether the Financial Institution Plaintiffs have any uncompensated losses;
- Whether the Financial Institution Plaintiffs' claims are unripe;
- Whether the Financial Institution Plaintiffs can show that they are entitled to protection under any statute that can form the basis of a viable negligence *per se* claim;
- Whether Plaintiffs can demonstrate that they are entitled to declaratory relief;
- Whether Plaintiffs can demonstrate that they are entitled to injunctive relief; and

- Whether the Consumer and Financial Institution Plaintiffs can meet their burden of proving they have satisfied all of the elements for certifying a class in accordance with FRCP 23.

**(d)    The Cases Listed Below (Include Both Style and Action Number) Are:**

(1)    Pending Related Cases:

Pursuant to a series of transfer orders issued by the Judicial Panel on Multidistrict Litigation, cases have been transferred to the Northern District of Georgia and consolidated for pre-trial proceedings.  A list of these cases, broken out by Consumer, Small Business, and Financial Institution cases, is attached hereto as Exhibit A.

There are also eight cases pending in federal courts that relate to the Equifax data security incident that have not yet been transferred to this proceeding. Equifax has noticed each of these cases to the JPML as tag-along actions, and expects the JPML to issue transfer orders for these cases in the normal course. Additionally, there are hundreds of non-class action cases currently pending in state courts across the country. The majority of these cases remain in the early stages of litigation. While a number of cases have been subject to rulings at the magistrate or small claims level, Equifax is not aware of any related cases in which a final judgment has been entered against Equifax by a court of general jurisdiction. Finally, there are four putative class actions pending in Fulton County Superior Court.  These cases purport to bring claims on behalf of all Georgia residents whose information was impacted in the data security incident. Each of these cases have been transferred to the Business Court division of the Fulton County Superior Court and are currently pending before Judge Melvin K. Westmoreland.[5] On March 13, 2018 Equifax and Plaintiffs in three of the Business Court cases filed a Joint Motion for Consolidation, and Equifax understands that plaintiffs in those three actions intend to file a consolidated complaint.  Plaintiffs in the fourth case

---

[5] These cases are: *Kircher v. Equifax, Inc.*, No. 2017CV295174 (Fulton Cty. Super. Ct., filed Sept. 13, 2017); *Bergeron v. Equifax, Inc.*, No. 2017CV295186 (Fulton

are not yet seeking consolidation.[6] Prior to that case's transfer to Business Court, Equifax had filed a motion to dismiss or, in the alternative, to stay the case in favor of the first-filed Fulton County Superior Court actions. The parties will continue to update the Court as these cases progress.

(2)     Previously Adjudicated Related Cases:

None, outside of the non-class action state court matters described above which have been the subject of preliminary rulings by magistrate and/or small claims courts and which Equifax is contesting on appeal.

**2.     This Case Is Complex Because It Possesses One or More of the Features Listed Below (please check):**

| | | |
|---|---|---|
| _X_ | (1) | Unusually large number of parties |
| _X_ | (2) | Unusually large number of claims or defenses |
| _X_ | (3) | Factual issues are exceptionally complex |
| _X_ | (4) | Greater than normal volume of evidence |
| _X_ | (5) | Extended discovery period is needed |
| _____ | (6) | Problems locating or preserving evidence |
| _X_ | (7) | Pending parallel investigations or action by government |
| _X_ | (8) | Multiple use of experts |
| _X_ | (9) | Need for discovery outside United States boundaries |
| _X_ | (10) | Existence of highly technical issues and proof |
| _____ | (11) | Unusually complex discovery of electronically stored information |

**3.     Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

---

Cty. Super. Ct., filed Sept. 14, 2017); *Lee v. Equifax, Inc.*, No. 2018CV300642 (Fulton Cty. Super. Ct., filed Sept. 22, 2017); *Butler v. Equifax, Inc.*, No. 2017CV295644 (Fulton Cty. Super Ct., filed Sept. 22, 2017).

**Plaintiffs:**

Pursuant to ECF No. 60, the Court has appointed the following leadership for the Consumer Cases:

***Co-Lead Counsel for Consumer Cases:***
Kenneth S. Canfield
**Doffermyre Shields Canfield & Knowles, LLC**
1355 Peachtree Street, N.E.
Suite 1600
Atlanta, Georgia 30309
Tel.: 404-881-8900
Email: kcanfield@dsckd.com

Amy E. Keller
**DiCello Levitt & Casey LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
Email: akeller@dlcfirm.com

Norman E. Siegel
**Stueve Siegel Hanson LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel.: (619) 400-5822
Email: siegel@stuevesiegel.com

***Co-Liaison Counsel for Consumer Cases:***
Roy E. Barnes
**Barnes Law Group, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel.: 770 Barnes Law (227-6375)
Email: Roy@barneslawgroup.com

David J. Worley
**Evangelista Worley LLC**
8100A Roswell Road
Suite 100
Atlanta, Georgia 30350
Tel.: 404-205-8400
Email: david@ewlawllc.com

Pursuant to ECF No. 62, the Court has appointed the following leadership for the Financial Institution cases:

***Co-Lead Counsel for Financial Institution Cases:***
Joseph P. Guglielmo
**Scott+Scott Attorneys at Law LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
Email: jguglielmo@scott-scott.com

Gary F. Lynch
**Carlson Lynch Sweet Kilpela & Carpenter, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel.: 412-322-9243
Email: glynch@carlsonlynch.com

*Co-Liaison Counsel for Financial Institution Cases:*
Craig A. Gillen
**Gillen, Withers & Lake, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, GA 30305
Tel.: 404-842-9700
Email: cgillen@gwllawfirm.com

MaryBeth V. Gibson
**The Finley Firm, P.C.**
Building 14, Suite 230
3535 Piedmont Road
Atlanta, GA 30305
Tel.: 404-320-9979
Email: mgibson@thefinleyfirm.com

Ranse M. Partin
**Conley Griggs Partin LLP**
1380 West Paces Ferry Road, N.W.
Suite 2100
Atlanta, GA 30327
Tel.: 404-467-1155
Email: ranse@conleygriggs.com

**Equifax:**

The following constitute lead counsel for Equifax:

David L. Balser
Georgia Bar. No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, Georgia 30309
dbalser@kslaw.com

psumner@kslaw.com

**4.    Jurisdiction:**

Is there any question regarding this Court's jurisdiction?

_____ Yes  __X__  No, except that Equifax reserves the right to challenge Plaintiffs' Article III standing.

**5.    Parties to This Action:**

    (a)    The following persons are necessary parties who have not been joined:  None

    (b)    The following persons are improperly joined as parties:  Equifax reserves the right to raise the issue of improper joinder pending service of the Consolidated Class Action Complaints.

    (c)    The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:  Equifax reserves the right to raise the issue of improper naming pending service of the Consolidated Class Action Complaints.

    (d)    The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6.    Amendments to the Pleadings:**

    Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendment are contained in LR 15.

    (a)    List separately any amendments to the pleadings which the parties anticipate will be necessary:

**CONSOLIDATED AMENDED COMPLAINTS**:
**Consumer track**: to be filed by May 14, 2018[7];
**Financial Institution Track**: to be filed by May 30, 2018.
No amendments are currently anticipated.

(b) Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law or as provided in Paragraph 6(a).

## 7. Filing Times for Motions

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below. All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) Motions to Compel: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.
(b) Summary Judgment Motions: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1
(c) Other Limited Motions: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.
(d) Motions Objecting to Expert Testimony: Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

With the above in mind, the parties respectfully request that the Court enter the following schedule:

---

[7] Pursuant to Fed. R. Civ. P. 6(a)(1), Plaintiffs' May 13, 2018 deadline (CMO No. 4) is extended to May 14, 2018.

| EVENT | DEADLINE/DATE |
|---|---|
| **File Stipulated Proposed Discovery Order** | On or before **March 30, 2018** |
| **File Stipulated Proposed Protective Order** | On or before **March 30, 2018** |
| **Parties to File Stipulated Proposed ESI Protocol** | On or before **May 2, 2018** |
| **Filing of Consolidated Amended Complaint (Consumer Track)** | On or before **May 14, 2018** |
| **Filing of Consolidated Amended Complaint (Financial Institution Track)** | On or before **May 30, 2018** |
| **Parties Deliver/Serve Requests for Production of Documents ("RFPs")** | **30 days** after filing the Consolidated Amended Complaint in the Financial Institution Track |
| **Parties to Meet and Confer Regarding Custodians, Search Terms, and a Production Protocol, and Scope of Initial RFPs** | To begin within **30 days** after delivery or service of the RFPs |
| **Parties Serve Responses and Objections to RFPs and Begin Document Production** | **30 days** after ruling on Equifax's motions to dismiss in the Financial Institution or in the Consumer Track, whichever is later |
| **Beginning of Fact Discovery** | **30 days** after the answer is filed in the consumer track or the financial institution track, whichever is later |
| **Add Additional Parties and/or Amend Pleadings** | **4 months** after the beginning of fact discovery |
| **Substantial Completion of Document Production** | **6 months** after the beginning of fact discovery |
| **Fact Discovery Closes** | **9 months** after the beginning of fact discovery |

| | |
|---|---|
| **Disclosure of Plaintiffs' Expert(s) and Serve Expert Report(s)** | **30 days** after fact discovery closes |
| **Disclosure of Equifax's Expert(s) and Serve Expert Report(s)** | **30 days** after the disclosure of plaintiffs' expert(s) and expert report(s) |
| **Disclosure of Plaintiffs' Rebuttal Expert(s) and Serve Rebuttal Expert Report(s)** | **21 days** after the disclosure of Equifax's expert(s) and expert report(s) |
| **Completion of Expert Discovery** | **60 days** after the disclosure of plaintiffs' rebuttal expert(s) and report(s) |
| **Local Rule 16.3 Conference** | Within **14 days** of the completion of expert discovery |
| **Plaintiffs' Class Certification Motions to be filed in Consumer Track** | **6 weeks** after Rule 16.3 Conference |
| **Plaintiffs' Class Certification Motions to be filed in Financial Institutions Track** | **8 weeks** after Rule 16.3 Conference |
| **Oppositions to Plaintiffs' Class Certification Motions to be filed in Consumer Track** | **45 days** after service of Plaintiffs' motion |
| **Oppositions to Plaintiffs' Class Certification Motions to be filed in Financial Institutions Track** | **45 days** after service of Plaintiffs' motion |
| **Replies in Support of Plaintiffs' Class Certification Motions to be filed in Consumer Track** | **30 days** after service of Equifax's opposition |
| **Replies in Support of Plaintiffs' Class Certification Motions to be filed in Financial Institutions Track** | **30 days** after service of Equifax's opposition |
| **Summary Judgment Motions to be filed in the Consumer Track** | No later than **16 weeks** after Rule 16.3 Conference |

| | |
|---|---|
| **Summary Judgment Motions to be filed in the Financial Institutions Track** | No later than **18 weeks** after Rule 16.3 Conference |
| **Opposition to Summary Judgment Motions to be filed in Consumer Track** | **30 days** after Summary Judgment Motions filed in Consumer Track |
| **Opposition to Summary Judgment Motions to be filed in Financial Institutions Track** | **30 days** after Summary Judgment Motions filed in Financial Institutions Track |
| **Reply in Support of Summary Judgment Motions to be filed in the Consumer Track** | **21 days** after Opposition to Summary Judgment Motions filed in Consumer Track |
| **Reply in Support of Summary Judgment Motions to be filed in the Financial Institutions Track** | **21 days** after Opposition to Summary Judgment Motions filed in Financial Institutions Track |

## 8.    Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE:  Your initial disclosures should include electronically stored information.  Refer to Fed. R. Civ. P. 26(a)(1)(B).

The parties will serve initial disclosures **30 days** after Equifax files its Motion to Dismiss in the Financial Institutions track.

## 9.    Request for Scheduling Conference.

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

The parties will respectfully abide by the Court's CMO No. 2 concerning scheduling conferences.

**10.    Discovery Period.**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period. Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing. Please state below the subjects on which discovery may be needed:

Consistent with Rule 26, the parties anticipate that they will endeavor to seek discovery only as to any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  Consistent with Fed. R. Civ. P. 26(d)(2), the parties intend to issue early Rule 34 requests.  Although such early Rule 34 requests will not be deemed served until after formal discovery has commenced, and no formal objections and responses will be required of any party until such time as formal objections and responses are due, the parties will meet and confer to discuss the early Rule 34 requests and the potential scope of discovery.  The parties continue to meet and confer about deadlines for the above.

Counsel for Plaintiffs may seek leave from the Court to conduct limited early discovery, prior to the commencement of formal discovery.  Counsel for Equifax would oppose any such effort.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

The parties do not propose that discovery should be conducted in phases, but have provided that fact discovery take place before expert discovery.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

    (a)    What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The Parties will meet and confer, and anticipate reaching agreement, regarding proposed changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure rules or by local rule. Such proposed changes will be set forth in the Stipulated Proposed Discovery Order.

    (b)    Is any party seeking discovery of electronically stored information?

    X____ Yes _____ No

If "yes,"

    (1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

    See below regarding the entry of proposed discovery orders.

    (2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

    See below regarding the entry of proposed discovery orders.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12. Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

In accordance with CMO No. 2, ECF No. 87, ¶ 7, and Fed. R. Civ. P. 26(f)(3)(C), (D), and (F), the parties have conferred regarding further discovery and case management orders, and have agreed upon deadlines for the filing of such orders (*supra*) and the items to be addressed by each order.

The parties' Stipulated Proposed Discovery Order, referenced in the proposed schedule, will address, *e.g.*:

- provisions governing inadvertent disclosure of privileged material under Federal Rule of Evidence 502(d);

- provisions regarding the logging of documents withheld or redacted as privileged or protected as attorney work product;

- designation of an e-discovery liaison who will be primarily responsible for meeting and conferring regarding ESI;

- scope and limitations of the preservation of documents (including ESI);

- agreement to accept service of documents in this case by email; and

- dates by which subsequent tasks addressed in the order (e.g., ESI disclosures) will be accomplished.

The parties' Stipulated Proposed Protective Order, referenced in the proposed schedule above, will address, *e.g*.:

- protocols for the handling of confidential and highly-confidential documents, information, and transcripts, including challenges to such designations;

- disclosure of such documents to parties, witnesses, experts, and other third parties; and

- the process for filing documents under seal.

The parties Stipulated Proposed ESI Protocol, referenced in the proposed schedule above, will address, *e.g.*

- a process for the identification and disclosure of custodians; storage systems; and non-custodian sources ("ESI disclosures");

- a process for the identification and disclosure of any potentially discoverable ESI that has been lost, destroyed, is inaccessible, or is only of limited accessibility;

- a methodology for searching ESI, including whether the use of technology assisted review ("TAR") and/or search terms are appropriate; the TAR methodology and/or search terms that will be used; and a sampling/testing procedure to validate that the agreed-upon search methodology is valid and identifies an acceptable, agreed-upon percentage of responsive documents;

- stipulations regarding the presumed authenticity of certain documents produced in discovery; and

- technical specifications governing the form of production of hard copy documents and ESI.

**13.    Settlement Potential:**

(a)    Because the case is in its infancy and discovery has not commenced, the parties believe that settlement is premature. However, the parties anticipate they may meet as appropriate to discuss the possibility of settlement as the cases progress.

(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.

(\_\_X\_\_) A possibility of settlement after discovery.
(\_\_\_\_\_) A possibility of settlement, but a conference with the judge is needed.
(\_\_\_\_\_) No possibility of settlement.

    (c)    Counsel (\_\_X\_\_) do or (\_) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. Proposed date(s) of a settlement conference is not yet determined.

    (d)    The following specific problems have created a hindrance to settlement of this case: discovery has not yet commenced; complexity of case; disagreement on merits of claims.

## 14. Trial by Magistrate Judge:

The parties do not consent to having this case tried before a magistrate judge of this Court.

**[*Signatures on following page.*]**

Respectfully submitted on
March 26, 2018

/s/ Amy E. Keller
Amy E. Keller
**DiCELLO LEVITT & CASEY LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dlcfirm.com

Kenneth S. Canfield
Ga Bar No. 107744
**DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E.
Suite 1600
Atlanta, Georgia 30309
Tel. 404.881.8900
kcanfield@dsckd.com

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com

*Consumer Plaintiffs' Co-Lead Counsel*

Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

*Consumer Plaintiffs' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW
Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Penn Plaza
19th Floor
New York, New York 10119
Tel. 212.594.5300
atadler@milberg.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Consumer Plaintiffs' Steering Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

***Consumer Plaintiffs' State Court
Coordinating Counsel***

-*and*-

*/s/ Joseph P. Guglielmo (w/ permission)*
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
230 Park Avenue, 17th Floor
New York, New York 10169
Tel. 212.223.6444
jguglielmo@scott-scott.com

Gary F. Lynch
**CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel. 412.322.9243
glynch@carsonlynch.com

***Financial Institution Plaintiffs' Co-Lead
Counsel***

Craig A. Gillen
**GILLEN WITHERS & LAKE, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, Georgia 30305
Tel. 404.842.9700
cgillen@gwllawfirm.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327
Tel. 404.572.4600
ranse@onleygriggs.com

***Financial Institution Plaintiffs' Co-Liaison Counsel***

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel. 504.525.8100
amurray@murray-lawfirm.com

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Tel. 612.349.8500
sslaughter@robinskaplan.com

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel. 404.261.7711
cvanhorn@bfvlaw.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Tel. 501.312.8500
acarney@cbplaw.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel. 612.339.7300
bbleichner@chestnutcambronne.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, Minnesota 55401
Tel. 501.812.5575
khriebel@locklaw.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel. 501.821.5575
karenhalbert@robertslawfirm.us

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel. 612.341.0400
brian.gudmunson@zimmreed.com

*Financial Institution Plaintiffs' Steering Committee*

*-and-*

*/s/ S. Stewart Haskins II (w/ permission)*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140

31

dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 26th day of March 2018.

*/s/ Amy E. Keller*

# SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified

**IT IS SO ORDERED.**

Date: _____, 2018        _____

Thomas W. Thrash
United States District Judge