```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION


 3


 4   IN RE: EQUIFAX, INC. CUSTOMER        )
     DATA SECURITY BREACH LITIGATION      )
 5                                        ) Case No. 1:17-MD-2800-TWT
                                          )
 6                                        ) April 3, 2018
                                          ) 10:04 a.m.
 7   _____ ) Atlanta, Georgia


 8


 9                          -   -   -


10


11             TRANSCRIPT OF THE STATUS CONFERENCE PROCEEDINGS
              BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
12                     U.S. DISTRICT COURT JUDGE


13                          -   -   -


14


15


16


17


18
              Proceedings recorded by mechanical stenography
19             and computer-aided transcript produced by


20                   SUSAN C. BAKER, RMR, CRR
                       2194 U.S. COURTHOUSE
21                   75 TED TURNER DRIVE, S.W.
                       ATLANTA, GA  30303
22                       (404) 215-1558
                   susan_baker@gand.uscourts.gov
23


24


25
```

1    <u>APPEARANCES OF COUNSEL</u>:

2    **On behalf of the Plaintiffs (MDL Litigation):**

3    Kenneth S. Canfield
     Doffermyre Shields Canfield & Knowles, LLC
4
     Amy E. Keller
5    DiCello Levitt & Casey, LLC

6    Norman E. Siegel
     Stueve Siegel Hanson, LLP
7
     Joseph P. Guglielmo
8    Scott & Scott, Attorneys at Law, LLP

9    Gary F. Lynch
     Carlson Lynch Sweet Kilpela & Carpenter, LLP
10
     **On behalf of the Defendant (MDL Litigation):**
11
     David Lewis Balser
12   Phyllis Buchen Sumner
     Sidney Stewart Haskins, II
13   King & Spalding, LLP

14
     **On behalf of the Plaintiffs (Securities Litigation):**
15
     James Harrod
16   Bernstein Litowitz Berger & Grossmann, LLP

17   **On behalf of the Defendant (Securities Litigation):**

18   Michael R. Smith
     King & Spalding, LLP
19

20   **On behalf of the Defendants (Derivative Litigation):**

21   David M. Chaiken
     Troutman Sanders, LLP
22
     Michael E. Liftik (By telephone)
23   Meghan A. McCaffrey (By telephone)
     Quinn Emanuel Urquhart & Sullivan, LLP
24

25

1          (Proceedings held April 3, 2018, Atlanta, Georgia,

2      10:04 a.m., in open court.)

3          THE COURT:  All right.  This is the case of In Re:

4      Equifax, Inc. Customer Data Security Breach Litigation and In

5      Re: Equifax Securities Litigation, Case Numbers 17-MD-2800 and

6      17-CV-3463.

7          First let me ask counsel for the parties who expect

8      to be speaking during the status conference to introduce

9      yourselves and the parties you represent beginning with the

10     Plaintiffs.

11         MR. CANFIELD:  Good morning, Your Honor.  Ken

12     Canfield, co-lead counsel for the consumer Plaintiffs in the

13     MDL.

14         THE COURT:  Good morning, Mr. Canfield.

15         MS. KELLER:  Good morning, Your Honor.  Amy Keller,

16     also co-lead counsel for the consumer Plaintiffs in the MDL.

17         THE COURT:  Morning, Ms. Keller.

18         MR. SIEGEL:  Good morning, Your Honor.  Norm Siegel,

19     co-lead counsel for the Plaintiffs on the consumer side in the

20     MDL.

21         THE COURT:  Morning, Mr. Siegel.

22         MR. LYNCH:  Morning, Your Honor.  Gary Lynch for the

23     financial institution Plaintiffs.

24         THE COURT:  Mr. Lynch.

25         MR. GUGLIELMO:  Morning, Your Honor.  Joseph

1    Guglielmo with Scott & Scott on behalf of the financial

2    institution Plaintiffs.

3            THE COURT:  Good morning, sir.

4            MR. BALSER:  Morning, Your Honor.  David Balser of

5    King & Spalding on behalf of the Equifax Defendants in both the

6    consumer and financial institutions MDL.

7            THE COURT:  Good morning, Mr. Balser.

8            MS. SUMNER:  Good morning, Your Honor.  Phyllis

9    Sumner also for Equifax in the MDL.

10           THE COURT:  Good morning, Ms. Sumner.

11           MR. HASKINS:  Good morning, Your Honor.  Stewart

12   Haskins also on behalf of Equifax in the MDL.

13           THE COURT:  Mr. Haskins.

14           MR. SMITH:  Good morning, Your Honor.  Michael Smith

15   for Equifax and Mr. Gamble in the securities litigation.

16           THE COURT:  Morning, Mr. Smith.

17           MR. HARROD:  Good morning, Your Honor.  James Harrod

18   for lead Plaintiffs in the securities litigation.

19           MR. CHAIKEN:  Morning, Your Honor.  David Chaiken

20   from Troutman Sanders for Defendant Richard Smith in the

21   shareholder derivative litigation, the securities class action.

22   Michael Liftik and Meghan McCaffrey from the Quinn Emanuel firm

23   are joining by telephone.

24           THE COURT:  Morning, Mr. Chaiken.

25           All right.  As I understand it, I did allow the

1    status conference to be monitored by telephone.  If you are on

2    the phone, our local rules prohibit any recording of this

3    proceeding.  So I order you not to record anything, and failure

4    to comply with that order could be treated as contempt.

5           So what I was planning to do was to go through the

6    joint proposed agenda for the security breach litigation first

7    and then go through the proposed agenda for the securities

8    litigation, and then at 11:00 I have got the hearing on the

9    motions to appoint counsel in the derivative action.  And I'll

10   do that at 11:00 or whenever we get to it.

11          Anybody have a problem with that?

12          MR. CANFIELD:  Your Honor, you may have confused me.

13   I think you said you were going to consider the agenda in the

14   securities case twice.  What I took what you meant to say was

15   that you would start with the MDL agenda and then move to the

16   securities agenda.

17          THE COURT:  That's what I meant to say, Mr. Canfield.

18          MR. CANFIELD:  That's fine, Judge.

19          THE COURT:  Okay.  So going to the security breach

20   MDL agenda, the first matter is the report on the Case

21   Management Order Number 3 and the filing of consolidated

22   complaints.

23          MR. CANFIELD:  Your Honor, the parties have made

24   considerable progress in the last month or so since leadership

25   was appointed by Your Honor in both tracks.  The first document

1    that we filed was CMO Number 3 which set forth the schedule for

2    the filing of the consolidated amended complaints in both

3    tracks.  Those are on schedule.  The consumer complaint is due

4    May 14th; and the financial institution track complaint is due

5    May 30, I believe.  And we anticipate that we will be meeting

6    those deadlines barring some unforeseen circumstances at this

7    point.

8            The only open issue under CMO Number 3 relates to

9    Local Rule 23.1 which requires the parties to report to the

10   Court on whether an order is needed to govern the class member

11   communications.  There is some continuing dialogue between the

12   parties on that issue.  We anticipate that it's not going to

13   require involvement from the Court, although that may prove to

14   be an inaccurate assumption on my part.  But we hope to get the

15   issue joined or resolved soon, and then it'll be brought up at

16   the next status conference if there's any need for the Court's

17   involvement.

18           THE COURT:  Mr. Balser?

19           MR. BALSER:  I think, Your Honor, on behalf of the

20   Equifax Defendants we have been working closely with

21   Plaintiffs' counsel.  They have been pressing us diligently on

22   a number of fronts, and we have worked cooperatively with them

23   to get CMO Number 3 put together and the joint discovery plan

24   as well.  So there are a few open issues.  But we're

25   communicating well, working well together and don't anticipate

1   any problems or issues that the Court is going to need to

2   resolve for us.

3           THE COURT:  Okay.  Well, I'm available if needed.

4           Next item on your agenda, Mr. Canfield, is

5   third-party discovery and document preservation subpoenas.

6           MR. CANFIELD:  Ms. Keller is going to handle that

7   issue, Your Honor.

8           THE COURT:  All right.  Ms. Keller?

9           MS. KELLER:  Yes, Your Honor.  Good morning.

10          So we are pleased to report that we have made a

11  substantial amount of progress with Equifax on this front.

12  Pursuant to CMO Order Number 2, we met and conferred with

13  Equifax before February 26 to identify third parties to whom we

14  thought preservation subpoenas should be sent to; and we have

15  been meeting and conferring with Equifax about those issues

16  since that time.  Equifax identified a number of entities to

17  whom they already served hold notices.  We identified

18  additional entities, about 29 additional entities to whom

19  Equifax has no objection to us serving preservation subpoenas.

20          There's a handful of entities, Your Honor, that the

21  parties are continuing to meet and confer about as to whether

22  or not Plaintiffs can serve preservation subpoenas to those

23  entities.  We anticipate that the parties will be able to work

24  through these issues.  And to the extent that there is a

25  problem, we will bring it to the Court's attention at the next

1    status conference.  But, again, Your Honor, I think we are

2    working cooperatively to resolve these issues without Court

3    intervention.

4              THE COURT:  Mr. Balser?

5              MR. BALSER:  I have nothing further to add to what

6    Ms. Keller has reported.

7              THE COURT:  Okay.  Fine.  Again, I hope you can work

8    it out.  But if you can't, I'm available.

9              Next item, Mr. Canfield, is the joint preliminary

10   planning report and discovery plan.

11             MR. CANFIELD:  That really is an information item,

12   Your Honor.  The parties have agreed upon a schedule to govern

13   the proceedings up through class certification and filing of

14   summary judgment motions.  And it's -- we have filed it, and

15   it's ready for the Court's signature.  I don't think the Court

16   has approved it as of yet.

17             THE COURT:  I haven't seen it, Mr. Canfield.

18             MR. CANFIELD:  It's Docket Entry 255.

19             Oh, this is the corrected version.  We filed an

20   original version in which we screwed up the ECF number which --

21   relating to CMO Number 2 or 3, I believe.  And Ms. Sewell

22   caught that, brought it to the parties' attention, and we filed

23   a corrected version.  And that was done -- today?

24             MS. KELLER:  Yesterday.

25             MR. CANFIELD:  Yesterday.

1            THE COURT:  So you've got an agreed-upon preliminary

2    planning report and discovery plan that's ready for my

3    signature?

4            MR. CANFIELD:  That's correct.

5            THE COURT:  Okay.  Well, I haven't seen it; but I

6    will look at it as soon as possible.  And if I have any

7    problems, I'll bring them up at the next status conference.

8            MR. CANFIELD:  Thank you, Your Honor.

9            THE COURT:  Next item, Mr. Canfield, is the status of

10   discovery and the ESI protocols, protective order.

11           MR. CANFIELD:  Mr. Guglielmo from the financial

12   institution side is going to be addressing that, Your Honor.

13           THE COURT:  All right.  Mr. Guglielmo?

14           MR. GUGLIELMO:  Your Honor, we are pleased to report

15   that we have reached an agreement with respect to the ESI

16   protocol.  And we submitted, Your Honor, as ECF 253 a joint

17   proposed ESI protocol which is in Proposed Case Management

18   Order Number 4 for your signature which includes a number of

19   provisions that the parties have agreed to with respect to

20   discussing various aspects of ESI in this action.  We'd ask

21   that you sign that order.

22           Your Honor, as to the protective order, we submitted

23   yesterday ECF 258 which is a joint agreed-upon protective

24   order.  Within that order, Your Honor, there is one provision

25   in Section 13 where the parties have agreed to continue

1   discussing the scope of the 502(d) provision within that order.

2   And we intend to submit to Your Honor a revised protective

3   order by the 16th of April with either agreed-upon language or

4   competing language.

5           But in the interim, Your Honor, we'd ask that you

6   sign the protective order so that we can exchange certain

7   information.  And to the extent again that we have an agreement

8   as to the 502 language, we would just submit a revised

9   protective order by the 16th.

10          THE COURT:  Mr. Balser?

11          MR. BALSER:  Your Honor, Mr. Haskins on behalf of

12  Equifax has been negotiating this particular set of orders with

13  the Plaintiffs' counsel; and I'd like him to respond to

14  Mr. Guglielmo.

15          THE COURT:  Okay.  Mr. Haskins?

16          MR. HASKINS:  So two things very quickly, Your Honor.

17  First, with respect to the protective order, Joe has accurately

18  characterized the parties' agreement on that.  And I think we

19  are going to be able to work out some mutually agreeable

20  language with respect to a Rule 502(d) order.  And we will

21  submit an amended protective order for the Court's

22  consideration after the parties have reached that agreement.

23          Second, I want to just clarify one thing that counsel

24  said.  The Proposed Case Management Order Number 4 that was

25  submitted is actually a discovery protocol.  While it does

1  touch on ESI, it primarily governs the conduct of discovery in

2  the case once discovery is up and running, of course.  And the

3  parties contemplate -- in fact, the joint preliminary report

4  and discovery plan contemplates that the parties will submit a

5  separate ESI protocol that I believe is due by May 2nd, Your

6  Honor.  But Case Management Order Number 4 that was proposed

7  was agreed upon by the parties and was jointly submitted to the

8  Court for its consideration.

9        THE COURT:  Well, I would be astonished if I have any

10  problem with it.  Given the volume of last-minute stuff that

11  came in yesterday, I haven't had a chance to really look at

12  Proposed Case Management Order Number 4.  As I say, I can't

13  imagine I will have any problem with it.  But I'm going to look

14  at it before I sign it.  So if I have any problem with it in

15  some fashion, we'll let you know.

16        MR. HASKINS:  Thank you, Your Honor.

17        MR. GUGLIELMO:  Thank you, Your Honor.

18        THE COURT:  Next, Mr. Canfield, the status of the

19  pending state court actions.

20        MR. BALSER:  Your Honor, I think I will take this

21  one.  David Balser on behalf of Equifax.

22        There were four -- there are four putative class

23  actions that have been filed in Fulton County, all of which

24  assert only state law claims on behalf of Georgia consumers

25  only.  All of those cases are now pending before Judge Melvin

1    Westmoreland in Fulton County business court.  Three of the

2    four cases were consolidated into a single action that has been

3    styled In Re: Equifax Data Security Breach Litigation.

4            On March 21st, in that consolidated action the

5    Plaintiffs filed a consolidated complaint and a motion to

6    appoint lead counsel.  The liaison counsel under that proposal

7    would be Steve Lowry of Harris Lowry Manton, and co-lead

8    counsel will be James Hurt and Jeffrey Pyle.  Equifax has not

9    objected to that leadership motion.

10           The parties in that -- those consolidated cases are

11   currently negotiating a proposed case management order that

12   will likely establish a deadline for Equifax to respond to the

13   newly filed consolidated complaint, and then we will set a

14   discovery schedule.  There is no hearing or case management

15   conference scheduled yet in those cases.

16           In the fourth case which is the Butler case, the

17   Plaintiffs have not agreed to consolidate their action with the

18   other three cases before Judge Westmoreland.  In fact, the

19   Plaintiffs in that case refused to agree to transfer their case

20   to the business court.  Judge Newkirk sua sponte on March 20th

21   entered an order transferring the case to the business court,

22   and that case has been assigned to Judge Westmoreland.

23           In that case, the Plaintiffs served discovery in

24   January on Equifax.  We have served objections, and we are

25   currently negotiating with them on responding and parameters

1    upon -- under which we would respond to the written discovery.

2              On February 2nd, we filed a motion to dismiss that

3    case as an improper, later-filed case.  But that case, the

4    Butler case, was the last of the four cases filed in Fulton

5    County.  But we moved to dismiss it under Georgia's abatement

6    statute or to -- in the alternative to stay the case in favor

7    of the consolidated action.  That motion is currently pending

8    and has not yet been set for hearing.  And, again, there's no

9    case management conference yet scheduled in the Butler case.

10             So that's a full report on the parallel actions in

11   state court, Your Honor.

12             THE COURT:  Mr. Canfield, do you want to add

13   anything?

14             MR. CANFIELD:  Nothing further, Your Honor.

15             THE COURT:  Well, I certainly don't want to do

16   anything that is going to make this proceeding more complicated

17   or involve more parties and moving parts than it already has.

18   But my inclination would be sometime this week to just pick up

19   the phone, call Judge Westmoreland and tell him that I'm

20   available to coordinate anything that needs to be coordinated

21   between the cases here and the cases there in Fulton County and

22   invite him if he doesn't have anything better to do to attend

23   any of these status conferences if he's interested or I'll go

24   attend his.  But I do want to make him aware that I'm available

25   and will coordinate things with him if anything needs to be

1    coordinated by the judges.

2            MR. BALSER:  Your Honor, on behalf of Equifax, we

3    have no problem with your reaching out to Judge Westmoreland.

4    I think the *Complex Manual* suggests that coordination should

5    occur between federal and state courts when there are parallel

6    actions.

7            You know, we think that, I mean, all of the

8    Plaintiffs represented in those state court actions are members

9    of the putative class in these cases.  So I mean, it's our view

10   that those cases are duplicative.  We can't remove them because

11   they are state claims and Georgia residents only.  But I do

12   think some reach-out by the Court to the state court makes some

13   sense, and I think it would be helpful for Judge Westmoreland

14   to know what the schedule is that's been set here and how Your

15   Honor is intending to manage these cases.

16           THE COURT:  Well, I wish I knew that.

17           MR. BALSER:  It's all in the Case Management Order

18   Number 3, Your Honor.

19           THE COURT:  Mr. Canfield?

20           MR. CANFIELD:  Judge, the consumer Plaintiffs have no

21   objection to your reaching out to Judge Westmoreland; and he

22   may well find that quite helpful.

23           THE COURT:  Does anybody else want to be heard on the

24   Plaintiffs' side on that?

25           (No response.)

1          Item Number 6 is coordination with the securities

2    actions.

3          Mr. Canfield?

4          MR. CANFIELD:  Mr. Siegel will handle that for the

5    consumer Plaintiffs and for the financial institution

6    Plaintiffs, Your Honor.

7          THE COURT:  Mr. Siegel?

8          MR. SIEGEL:  Good morning, Your Honor.

9          This agenda item is more of a we're flagging the

10   issue.  We understand the securities Plaintiffs have raised the

11   scope of coordination and their understanding of the Court's

12   February 21st order, Document Number 32 in the securities case.

13   For class Plaintiffs, we would just communicate to the Court

14   that we're prepared to coordinate as Your Honor instructs.

15         Obviously, the securities case is on a different

16   path, perhaps some overlapping factual issues.  But we are off

17   with the financial institutions on our schedule.  And as the

18   Court instructs following perhaps the agenda item for the

19   securities Plaintiffs, we will follow the Court's instruction

20   with respect to coordinating between our case and the

21   securities case.

22         THE COURT:  Mr. Balser?

23         MR. BALSER:  Your Honor, we're working closely and

24   frequently with the consumer Plaintiffs and the financial

25   institution Plaintiffs; and that effort has led us to be able

1    to submit these consent orders reflecting how we are proposing

2    to conduct discovery and the like.  I think we should be

3    cautious about adding another layer and dimension of complexity

4    and difficulty by trying to coordinate more than is necessary

5    with the securities cases.  The issues are different, the

6    statutes are different, and including the PSLRA which may

7    impact what the Court would be willing to do or would want to

8    do or would make sense to do with respect to discovery before a

9    motion to dismiss is ruled upon.

10        So, you know, I think we should -- and Mr. Smith may

11   have and may be prepared to address in the status conference on

12   the securities MDL more detail about this -- but I think we

13   should really try to tread cautiously about folding in the

14   securities docket and discovery path, et cetera, with the

15   consumer and FI tracks.

16        THE COURT:  Well, I think that's more or less what I

17   told Mr. Smith when he wanted out entirely and I told him he's

18   going to have to stay in.  But I did not intend to exercise a

19   heavy hand in terms of forcing him into the MDL and into the

20   MDL procedure.

21        Mr. Smith, you can be heard now or we can wait until

22   your turn --

23        MR. SMITH:  Your Honor, I think it's appropriate to

24   segue into the securities agenda.  So I can address those

25   issues then.

1          THE COURT:  Well, I'm ready to go there.

2          MR. SMITH:  All right.  Plaintiff I think will lead

3    off, and then we will respond.

4          MR. HARROD:  Your Honor, is it okay if I take the

5    podium up here?

6          THE COURT:  Sure.

7          MR. HARROD:  So, Your Honor, I think -- let me start

8    by saying James Harrod for the lead Plaintiff in the securities

9    cases.

10          I think the principal disagreement is partially based

11    on what Your Honor had intended in terms of directing the

12    parties in terms of the discovery planning process.  The

13    Defendants' view of the February 21st order is that you

14    intended not to have us engage in the same type of procedures

15    that have occurred in the consumer and financial institution

16    MDL.  Our view based on the remarks that you made at the

17    conference in January was that we should make efforts to do

18    that.

19          And so in CMO-2 in the MDL you made some directives

20    to those parties in the MDL to do certain things, and you told

21    us at the January conference that our case management process

22    should follow a similar track.  So when the February 21 order

23    was entered, we took that to mean that we should engage in the

24    same type of discovery planning that the MDL has; and so we

25    endeavored to do that.

1        We made some proposals to the Defendants and then

2   subsequently submitted them to Your Honor.  Our understanding

3   of what the order directed us to do was not to formalize a

4   specific discovery plan but to make proposals, and so that is

5   what we did.

6        The Defendants' position is that all of this should

7   be precluded by the PSLRA.  And I think (A), that's not

8   consistent with what I think Your Honor had intended the

9   parties to do; and (B), it's not necessarily -- it doesn't

10  implicate the PSLRA in the ways that they believe it does.

11       So on the first point, the effect of having us engage

12  in this discovery planning process I think is to engage in a

13  certain amount of coordination with the MDL so that we can be

14  more or less on the same track, particularly in discovery, and

15  I would imagine -- and I'd like to hear what Defendants have to

16  say about this -- when we get to the stage of discovery where

17  we will be taking depositions.  And I assume that there will be

18  many witnesses that overlap in the two cases.

19       The purpose of many of the procedures that are

20  outlined in the MDL case management plan are to stage the

21  preparation for production of documents so that when and if

22  Your Honor denies motions to dismiss in those cases the parties

23  will have engaged in an exchange of document requests and

24  objections to those, to have negotiated certain custodians who

25  will produce documents and what the search terms will be.  In

1   my experience, that process usually takes months.

2           And if it starts at the beginning of the discovery

3   period usually -- and the Plaintiffs in, I imagine, this case

4   and in most cases of this type or the party that will be

5   receiving most of the documents don't end up getting documents

6   for a significant amount of time.  And I think what Your Honor

7   was directing the parties to do in the MDL and similarly in the

8   securities case was to engage in a process to allow that to

9   happen earlier so that if a motion to dismiss is denied the

10  parties are ready to actually begin producing documents.

11          If that doesn't happen, particularly if it happens in

12  the MDL cases, the securities Plaintiffs will not be able to

13  stay on a similar schedule and track for discovery because we

14  will be way behind where the consumer cases are.  And so that

15  will be a problem.

16          To the point that this is all precluded by the PSLRA

17  stay of discovery, the principal thing that I would say is that

18  we are not actually talking about getting a production of

19  documents before the motion to dismiss is denied.  So one of

20  the principal concerns of the PSLRA is if you have a weak case,

21  if you have a frivolous case -- and I think it's clear that

22  this is not that -- you don't get to get discovery to bolster

23  your complaint.  Congress said there's a stay of discovery.

24  You have a weak case.  You are not going to go get discovery

25  from the Defendants and try to build a case based on just

1    filing a complaint.

2          That's not the case here because (A), it's not a

3    frivolous case; but (B), we are not going to actually get the

4    documents until after the motion to dismiss is denied.  On the

5    question of what the burden is there, they are doing much of

6    this work in terms of identifying custodians, in terms of

7    considering search terms and sort of shaping what the discovery

8    will look like.  They are doing that in the MDL.  So the

9    burden, while I'm sure incremental, is not massive.  It's not

10   something that they are not doing at all.

11         On the question of whether or not the PSLRA stay

12   applies, what I would say to you is they cited some cases.  All

13   those cases are very distinct from this situation.  They are

14   cases like the *SunTrust* and *Zisholtz* case that Your Honor had

15   about ten years ago where you entered an order basically saying

16   the parties were exempt from the rule that provided for initial

17   disclosures to be served.  These were cases with one party, a

18   class action.  There's one case they cite that's two NFL

19   players suing an agent.  They're not like this.

20         The majority of the cases that we would point you to

21   are cases where there are a complex group of cases, federal

22   investigation, ERISA case, consumer MDL and a securities case

23   that is subject to the PSLRA.  And courts typically in those

24   situations say I don't want one group of Plaintiffs or one

25   group of parties to be in a completely different situation than

1    the other parties, and so I will modify the PSLRA.  You have

2    the discretion to do that which I don't even think is necessary

3    here because what we are not talking about is getting

4    documents; what we are talking about is sort of staging the

5    discovery process.

6            If I just point Your Honor to a couple cases, the

7    *Bank of America* case from 2009 which is Westlaw -- 2009 WL

8    4796169 where Judge Chen at that time said in order to manage

9    the case he was going to allow the Plaintiffs in that case to

10   actually get discovery so that they would stay on the same

11   track as the New York Attorney General and the SEC and other

12   people who were prosecuting similar investigations at the same

13   time.  We saw similar things in the *Tyco* case, in the *Enron*

14   case and in the *Royal Ahold* case.  These are all cases that are

15   similar to this where there was a securities class action

16   subject to the PSLRA and related actions that alleged different

17   claims that did not have a stay.  In all of those cases, the

18   judges actually allowed the Plaintiff to get the documents that

19   the other people were getting.

20           We're not even asking for that.  We're just saying we

21   should stage the discovery, we should have the field prepared

22   so that if the case proceeds into discovery the parties will be

23   prepared.

24           And I think that's -- it's not a heavy lift.  It's

25   totally consistent with the law.  And I think it makes complete

1  sense in terms of Your Honor's ability to manage these cases in

2  terms of whatever the degree of coordination that ends up

3  happening between the securities case and the consumer cases.

4           Is there anything else on that point you'd like to

5  hear from me?

6           THE COURT:  Let me hear from Mr. Smith first.

7           MR. HARROD:  Sure.

8           MR. SMITH:  Thank you, Your Honor.  Michael Smith for

9  Equifax and Mr. Gamble.

10          Your Honor, what my colleague representing the

11 Plaintiffs is trying to do is seek a lift of the PSLRA stay.

12 This is part of the substantive governing law in the securities

13 class action that says that all discovery in the other

14 proceedings shall be stayed pending the ruling on the motion to

15 dismiss.  Your Court's order of February 21 recognized that

16 statutory stay and said that the duties to meet regarding all

17 these discovery planning issues are suspended until the Court

18 adjudicates the motion.  Plaintiff submitted a status proposal

19 where they are suggesting that we exchange document requests in

20 less than a month, that we have -- reach agreement on all these

21 ESI protocols and other discovery issues, a protective order,

22 all kinds of issues that may never be necessary.

23          The securities cases are much different.  Yes, they

24 have a breach in common; but the focus is going to be entirely

25 different, of course.  In the securities class action, the

1    focus is going to be what statements did the company make about

2    cyber security and were any of them false or misleading and

3    they were scienter -- very different, very limited statements

4    out there that the company made.

5            So the entire focus of the proceeding is going to be

6    different.  And I think appropriately if they do survive a

7    motion to dismiss -- of course, we haven't seen the

8    consolidated amended complaint.  That's not due until later

9    this month.  Briefing on that is not even scheduled to conclude

10   until late August.  Given all the progress that's been made in

11   the MDL and will continue to be made in the MDL on ESI

12   protocols, discovery planning, preservation issues, we're going

13   to be prepared to if that day comes very quickly go behind what

14   has already been done, tailor these other agreements that have

15   been reached in the MDL appropriately to what is needed in the

16   securities class actions.

17           So I would submit to you that none of this discovery

18   planning is appropriate without a lifting of the PSLRA

19   automatic stay.  There's been no showing that that is warranted

20   or justified, that we ought to honor Congress's objective there

21   to hold things, preserve documents, yes, but let's keep things

22   in place until the Court has adjudicated the motion to dismiss.

23           THE COURT:  Well, Mr. Harrod, where are we in terms

24   of the competing proposals that you and Mr. Smith are

25   disagreeing about?  Is there some filing in the record that I

1    could go to to see what it is y'all don't agree on?

2         MR. HARROD:   Your Honor, I think that the part of the

3    confusion here was we issued that order on February 21 that had

4    a competing section for lead Plaintiff's proposals and a

5    competing section for Defendants' proposals.   In response to

6    what we viewed Your Honor intended us to do, we submitted our

7    status report with what we would propose in terms of the timing

8    of discovery, the content of discovery and any procedures for

9    when we would do things like exchange document requests.

10   That's Docket Entry 39 in the securities case.

11        The Defendants -- we had sent -- and just so the

12   record is a little clear, so what happened is the Defendants --

13   we had a meet-and-confer with the Defendants.   They said to us

14   basically what they said today which is we don't believe that

15   this is what Judge Thrash intended and we are not going to

16   engage with you on everything except for third-party

17   preservation.   And we said we don't read the order that way.

18   We read the order the judge is directing us to basically do

19   what the MDL Plaintiffs were instructed to do with the MDL

20   Defendants.

21        So we sent them, I think, on the Wednesday before

22   this was filed the report and the two attachments which are a

23   proposed protective order governing confidentiality and an ESI

24   protocol.   They didn't respond to that, and I didn't expect

25   them to.   They told me they would not do that.   But after we

1    filed the report, they then filed what is Docket Entry 40 in

2    the securities case which contains their response which

3    basically says what Mr. Smith said.  It cites a few cases.

4           And I think the one point that I would ask you to

5    respond -- respond to what Mr. Smith said is that even if he's

6    correct, which I disagree with, that the PSLRA does apply to

7    these kinds of activities I think it's perfectly reasonable and

8    within your discretion and consistent with the other cases that

9    I mentioned for you to lift the stay for the limited purpose of

10   us engaging in a process to plan for discovery.

11          That has happened in other cases.  And, in fact, in

12   the cases that I mentioned, *Bank of America*, *Enron*, *Tyco*, *Royal*

13   *Ahold*, the courts lifted the stay in a similar situation to

14   actually allow the Plaintiffs to get discovery.

15          Now, as I understand it, the MDL Plaintiffs are not

16   getting discovery; so there's not discovery for us to have.

17   But we do think it makes sense and that it's a reasonable thing

18   for Your Honor to say you should, Defendants, respond to the

19   Plaintiffs' proposals regarding discovery and have a

20   meet-and-confer process and we can, you know, try to work out

21   the dates.  I think the obstacle right now is that it's their

22   view that they have no obligation to do that.

23          Is that clear, Your Honor?

24          THE COURT:  Well, I think so.

25          Mr. Smith, I'm going to consider a limited lifting of

1   the PSLRA stay.  Now, do you want Mr. Harrod to file a formal

2   motion on that or do you want me to just look at y'all's

3   competing proposals and resolve it in the context of those?

4   How do you want to proceed on this?

5           MR. SMITH:  Your Honor, if you are intent upon

6   lifting the stay in some manner --

7           THE COURT:  I'm thinking about it.

8           MR. SMITH:  Okay.

9           THE COURT:  Thinking about it.

10          MR. SMITH:  Well, then if you're considering it, I

11  think it would be appropriate for us to brief that issue for

12  you in more detail.  You can see what they are proposing in

13  their status report.  We think it's all kinds of discovery

14  planning that is unnecessary, that is barred by the PSLRA stay

15  and will be -- end up will be superseded by whatever the Court

16  rules.

17          The Court, we're hopeful -- of course, we haven't

18  seen their complaint; but the Court may well dismiss the case

19  because they haven't been able to adequately plead a false and

20  misleading statement made with scienter that caused loss.  So

21  it may be wasteful in that regard.  It may be wasteful in the

22  regard that even if the Court allows some part of the

23  securities case to go forward it may be -- look very different

24  than where we are now.

25          So I think there has been no showing.  And the cases

1    on lifting the PSLRA stay typically require some kind of, you

2    know, exigent circumstance, documents about to be lost.  That's

3    not occurring here.

4              And we've told them we'll engage with you on

5    preservation issues.  We're happy to do that.  What we don't

6    think we ought to be able -- have to do is engage in all this

7    planning, exchange document requests, agree on protocols,

8    custodians, search terms.  It's just way premature.

9              We will be able to pick that up if the Court allows

10   any part of this to survive.  Given what's occurred here, we

11   will be able to go behind what's already agreed to in the MDL

12   and quickly pick that up.  But it's just not timely or

13   permitted under the PSLRA now.

14             So I would say if they want to lift the stay, brief

15   it and show cause as to why they need it lifted.

16             THE COURT:  File a motion, Mr. Harrod.

17             MR. HARROD:  Yes, Your Honor.  Thank you.

18             THE COURT:  So on the securities litigation agenda,

19   does that take care of both Items 1 and 2?

20             MR. HARROD:  I believe so, Your Honor.

21             THE COURT:  So next item would be the request for an

22   order granting the parties permission to serve document

23   preservation subpoenas on third parties?

24             MR. HARROD:  Correct.

25             So, Your Honor, we have spoken to the Defendants'

1    counsel extensively about this.  They have provided us with

2    some information about efforts that they have engaged in to

3    have third parties preserve documents.  Our concern is that

4    those -- that process that they have engaged in which we don't

5    know everything about but we do know some things about is not

6    necessarily legally binding.

7            As I understand it, they have sent letters or notices

8    to certain third parties they believe have relevant material

9    and asked them to preserve it.  It's my understanding that

10   those letters are not legally binding.  And so subject to

11   conferring with the Defendants about the identity and the scope

12   of what those preservation subpoenas would be, we believe it's

13   appropriate under the circumstances for us to send document

14   preservation subpoenas to third parties and are asking, I

15   think, with Defendants' consent for an order to that effect.

16           THE COURT:  Mr. Smith?

17           MR. SMITH:  Your Honor, we don't consent to that.  We

18   were willing to work with the Plaintiffs on reasonable

19   preservation steps even though I think all of that would be

20   prohibited under the PSLRA stay.  But we're okay with

21   conferring with them about preservation.

22           You heard all the preservation efforts that are being

23   undertaken in the MDL.  Twenty-one letters have been sent out

24   by Equifax.  I think the MDL Plaintiffs have identified another

25   29 parties that they would like to serve subpoenas on.  This is

1   going to cover everybody.

2           So if they want anything more than what's already

3   being accomplished in the MDL, I would suggest that that be

4   part of their motion to lift the stay and they can address it

5   there.

6           THE COURT:  Cover this in your motion, Mr. Harrod.

7           MR. HARROD:  Yes, Your Honor.  Thank you.

8           THE COURT:  So I think that completes the agenda for

9   the securities litigation and the MDL.

10          MR. CANFIELD:  It completes the MDL agenda, Your

11  Honor.

12          THE COURT:  A couple of things that have occurred

13  that we haven't talked about:

14          So the SEC has sued a Defendant, Jun Ying, under the

15  Securities and Exchange Act, and that case has been assigned to

16  me.  That's 18-CV-1069.  That's a civil case.

17          Do we need to include the SEC in these status

18  conferences?  Do we need to have --

19          MR. SMITH:  Your Honor, I see no reason to do that.

20  That is an insider trading charge that the SEC has brought

21  against Mr. Ying, and I don't believe that needs to be

22  coordinated with these proceedings.

23          I mean, he is not a party to any of these

24  proceedings.  Equifax is not a party to the action the SEC has

25  taken against Mr. Ying.

1          THE COURT:  Well, that's fine.  I'll schedule a

2    status conference in that case and see where we are and just

3    leave it alone for now.

4          MR. SMITH:  I think that's appropriate.

5          THE COURT:  We've got dozens of pro se cases that

6    haven't been included in the MDL, and the magistrate judges and

7    I have just been handling them in the ordinary course of

8    business.  I'm reluctant to even talk about them in this

9    proceeding because they're not represented, and I'll just leave

10   it at that.

11         Anything anybody else wants to talk about other than

12   scheduling the next status conference?

13         MR. CANFIELD:  Nothing for the consumer Plaintiffs in

14   the MDL, Your Honor.

15         MR. BALSER:  Nothing on behalf of Equifax in the MDL,

16   Your Honor.

17         MR. HARROD:  Nothing from the securities Plaintiffs.

18         THE COURT:  Okay.  So the next thing that's going to

19   happen really is the filing of the consolidated complaints in

20   the MDL and in the securities case, I believe.

21         MR. BALSER:  That's right, Your Honor.

22         THE COURT:  So I assume there are going to be motions

23   to dismiss as soon as that's done.

24         MR. BALSER:  I think that is highly likely, Your

25   Honor.

1          THE COURT:  I'm happy to continue having monthly

2    status conferences.  I'd rather know about problems in a timely

3    basis rather than have them fester and jump up and bite me

4    later.  But do we need to continue having monthly status

5    conferences until the master complaints have been filed?

6          MR. CANFIELD:  Your Honor, what I would suggest is

7    that we do have -- continue to have status conferences.  There

8    are some things that are happening in addition to the filing of

9    the consolidated complaints.  The proposed orders that the

10   parties are working on are a principal example.

11          As the Court is aware, the fact that a status

12   conference is coming up tends to have an impact on both

13   parties, making them more reasonable and giving everybody some

14   incentive to agree.  My suggestion under the circumstances

15   would be to schedule a status conference and if it turns out

16   that there aren't any issues that require the Court's

17   involvement or even informational issues for the Court that we

18   would just -- the parties would tell the Court in advance and

19   we would cancel the conference.

20          THE COURT:  Mr. Balser?

21          MR. BALSER:  I have no objection to proceeding in

22   that fashion.

23          THE COURT:  All right.  Well, let's do that then.

24          So after we finish here, y'all get with Ms. Sewell

25   and see if you can find a date and time somewhere around the

 1    first of May that we can at least schedule the next status

 2    conference.

 3              So at 11:00 we're going to shift gears to the

 4    derivative case.  What are y'all -- are y'all planning to

 5    leave, or are you going to stay?

 6              MR. BALSER:  Most of us will leave, Your Honor.

 7              MR. CANFIELD:  Having been through one leadership

 8    hearing in this case not too long ago, I don't wish to go

 9    through another one, Judge.  So if --

10              THE COURT:  I don't have that option unfortunately.

11              MR. CANFIELD:  -- the Court is agreeable, we will

12    leave.

13              THE COURT:  That's fine.  It may get involved.

14              But, anyway, that's fine.  You know about it.  If you

15    want to leave, you can leave and I'll take care of it.  So I

16    think we're done.

17              MR. BALSER:  Thank you, Your Honor.

18              MR. CANFIELD:  Thank you, Your Honor.

19              THE COURT:  Court's in recess until ten after 11:00.

20              (Proceedings adjourned at 10:51 a.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6            I hereby certify that the foregoing pages, 1 through

7    32, are a true and correct copy of the proceedings in the case

8    aforesaid.

9            This the 3rd day of April, 2018.

10

11

12

13                    /s/ Susan C. Baker _____

14                    Susan C. Baker, RMR, CRR
                     Official Court Reporter
15                    United States District Court

16

17

18

19

20

21

22

23

24

25