1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION

3

4

IN RE: EQUIFAX, INC. CUSTOMER      ) Case No. 1:17-MD-2800-TWT
5 DATA SECURITY BREACH LITIGATION   )          1:17-CV-3463-TWT
                                    )          1:18-CV-317-TWT
6                                    )
                                    ) May 22, 2018
7                                    ) 2:00 p.m.
_____ ) Atlanta, Georgia
8

9
                            -   -   -
10

11        TRANSCRIPT OF THE STATUS CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
12               U.S. DISTRICT COURT JUDGE

13
                            -   -   -
14

15

16

17

18

19        *Proceedings recorded by mechanical stenography*
          *and computer-aided transcript produced by*
20
              SUSAN C. BAKER, RMR, CRR
21               2194 U.S. COURTHOUSE
             75 TED TURNER DRIVE, S.W.
22               ATLANTA, GA  30303
                  (404) 215-1558
23          *susan_baker@gand.uscourts.gov*

24

25

1    <u>APPEARANCES OF COUNSEL</u>:

2    **On behalf of the Plaintiffs (MDL Litigation):**

3    Kenneth S. Canfield
     Doffermyre Shields Canfield & Knowles, LLC
4
     Joseph P. Guglielmo
5    Scott & Scott, Attorneys at Law, LLP

6
     **On behalf of the Defendant (MDL Litigation):**
7
     David Lewis Balser
8    Phyllis Buchen Sumner
     Sidney Stewart Haskins, II
9    King & Spalding, LLP

10
     **On behalf of the Plaintiffs (Securities Litigation):**
11
     James Harrod
12   Bernstein Litowitz Berger & Grossmann, LLP

13   **On behalf of the Defendant (Securities Litigation):**

14   Michael R. Smith
     King & Spalding, LLP
15

16   **On behalf of the Plaintiffs (Derivative Litigation):**

17   Joseph H. Weiss
     WeissLaw, LLP
18
     **On behalf of the Defendants (Derivative Litigation):**
19
     David M. Chaiken
20   Troutman Sanders, LLP

21   Rachel Gargiulo
     Wilmer Hale, LLP
22

23

24

25

1          (Proceedings held May 22, 2018, Atlanta, Georgia,

2     2:00 p.m., in open court.)

3          THE COURT:  All right.  This is In Re: Equifax

4     Customer Data Security Breach, Case Number 17-MD-2800; Equifax

5     Securities Litigation, 17-CV-3463; and Equifax Derivative

6     Litigation, 18-CV-317.  This is a status conference being held

7     at my request.

8          Let me ask counsel for the parties who expect to

9     actually speak during the status conference to identify

10    yourselves for the record and the parties you represent.

11         MR. CANFIELD:  Good morning, Your Honor.  Ken

12    Canfield, co-lead counsel for the Plaintiffs in the consumer

13    track.

14         THE COURT:  Afternoon, Mr. Canfield.

15         MR. BALSER:  David Balser, King & Spalding, on behalf

16    of Equifax, Your Honor.

17         THE COURT:  Good afternoon, Mr. Balser.

18         MR. GUGLIELMO:  Afternoon, Your Honor.  Joseph

19    Guglielmo with Scott & Scott on behalf of the financial

20    institution Plaintiffs.

21         THE COURT:  Mr. Guglielmo.

22         MR. HARROD:  Good morning -- good afternoon, Your

23    Honor.  James Harrod from Bernstein Litowitz Berger & Grossmann

24    for Plaintiffs in the securities action.  Thank you.

25         THE COURT:  Good afternoon.

1          MR. SMITH:  Good afternoon, Your Honor.  Michael

2   Smith from King & Spalding for Equifax in the securities case

3   and the derivative suit.

4          THE COURT:  Afternoon, Mr. Smith.

5          MS. GARGIULO:  Good afternoon, Your Honor.  Rachel

6   Gargiulo from Wilmer Hale.  I represent Elaine Stock in the

7   derivative litigation.

8          MR. CHAIKEN:  Good afternoon, Your Honor.  Dave

9   Chaiken from Troutman Sanders.  We represent Defendant Richard

10  Smith in the securities class action and in the shareholder

11  derivative litigation.

12         THE COURT:  Good afternoon, Mr. Chaiken.

13         MR. WEISS:  Good afternoon, Your Honor.  Joseph Weiss

14  in the derivative litigation on behalf of Plaintiffs.

15         THE COURT:  Good afternoon, Mr. Weiss.

16         MR. WEISS:  Thank you.

17         THE COURT:  So you promised to be personally involved

18  in this, Mr. Weiss.  I'm glad to see you are a man of your

19  word.

20         MR. WEISS:  Yes, Your Honor, I hope so.  I hope I

21  will prove that throughout the case.

22         THE COURT:  Glad to see you.

23         MR. WEISS:  Thank you.

24         THE COURT:  All right.  My intention is to go through

25  the proposed agenda for the data security breach case first,

1   then the securities litigation and then the derivative

2   litigation.

3          So with respect to the customer data security breach

4   litigation, first item on the agenda, Mr. Canfield, is the

5   report on the status of the filing of the consolidated amended

6   complaints.

7          MR. CANFIELD:  Your Honor, I'll be brief on that.

8   The Plaintiffs in the consumer track filed our short and

9   concise complaint on May 14th --

10          THE COURT:  I heard it was over 600 pages long.

11          MR. CANFIELD:  That's an absolute lie.  It doesn't

12   exceed 585.

13          THE COURT:  Obviously, I was misinformed, not by much

14   apparently.

15          MR. CANFIELD:  We actually think we have done good,

16   Your Honor.

17          The financial institution Plaintiffs have their

18   complaint due May 30, and they tell me that that complaint is

19   on schedule and they should meet that deadline.  On May 14th,

20   in the consumer track we also filed a separate complaint with

21   the agreement of Equifax regarding the small business claims

22   that Your Honor put within the consumer track.  And what the

23   parties have discussed is with the approval of the Court is to

24   put the briefing and the motion to dismiss regarding the small

25   business complaint on a different schedule than the briefing on

1    the main consumer track complaint.  And if that's acceptable

2    with the Court, the parties plan to put together a proposed

3    schedule for the Court's consideration that we would submit

4    shortly.

5              THE COURT:  I don't know why I would have a problem

6    with that, Mr. Canfield.

7              MR. CANFIELD:  I wouldn't expect that you would, but

8    we certainly wouldn't presume that we would make that decision

9    for the Court.  That's why I brought it up.

10             THE COURT:  That should be fine.

11             Mr. Balser, you want to say anything on this one?

12             MR. BALSER:  No, Your Honor.  Just that we will be

13   moving to dismiss the complaint, and we will be doing that on a

14   time schedule set forth in the case management order.

15             THE COURT:  All right.  Second item, Mr. Canfield, is

16   the status of third-party discovery and document preservation

17   subpoenas.

18             MR. CANFIELD:  Mr. Guglielmo from the financial

19   institution track will be addressing that one, Your Honor.

20             THE COURT:  All right.

21             MR. GUGLIELMO:  Good afternoon, Your Honor.  Joseph

22   Guglielmo with Scott & Scott again.

23             Your Honor, just to briefly update the Court, at the

24   last status conference we discussed the issue of third-party

25   preservation subpoenas.  Since that time, we have worked

1    together with counsel for Equifax and we have come up with a

2    procedure to serve third-party subpoenas.  We have proceeded to

3    do so, and we are in communications with those third parties as

4    well as Equifax regarding the scope of those preservation

5    subpoenas.  So I think everything is proceeding according to

6    our collective procedures that we have set forth.

7            THE COURT:  Well, I'm glad to hear y'all are

8    cooperating.

9            Anything to add on that, Mr. Balser?

10            MR. BALSER:  No, Your Honor.

11            THE COURT:  All right.  Next is a potential issue

12    regarding communications with former Equifax employees.

13            Mr. Canfield?

14            MR. CANFIELD:  Your Honor, this is an informational

15    item.  As part of our informal discovery efforts in this case,

16    we have attempted to communicate with a number of former

17    employees for Equifax and learned that many of them have

18    non-disclosure agreements in place that make those witnesses

19    reluctant to talk with us.  We've raised the issue with Equifax

20    and asked if we can -- we have actually made them a proposal as

21    to how we could accommodate their interests and ours, and the

22    parties are in the process of meeting and conferring on that.

23            Actually, I anticipate that we're probably going to

24    be able to work this issue out.  But if not, we will have to

25    come before the Court.

1              I don't have anything further to add.

2              THE COURT:  Mr. Balser?

3              MR. BALSER:  The only thing I would say, Your Honor,

4     is we have -- we are in discussions.  And I am -- I share

5     Mr. Canfield's optimism that we will be able to work something

6     out.  There are some tricky issues not only with respect to the

7     NDA but with respect to the attorney-client privileged

8     information that needs to be sorted out and sorted through.

9     But as you know, we've got a good working relationship with

10    Plaintiffs' counsel and we will try to work through all those

11    issues.

12             THE COURT:  All right, Mr. Balser.

13             The status of the pending state court actions?

14             MR. BALSER:  Your Honor, I'm going to have

15    Mr. Haskins of our firm give the Court a report on the status

16    of the state court actions.

17             THE COURT:  All right.  Mr. Haskins?

18             MR. HASKINS:  Yes, Your Honor.  Stewart Haskins.

19             As the Court is probably aware, there are four cases

20    that are pending in Fulton County Superior Court in front of

21    Judge Westmoreland.  They are part of the Fulton County

22    Business Court.  Three of those cases have been consolidated

23    into a single action.  The Plaintiffs filed a consolidated --

24    master consolidated complaint on March 21st, and the Court has

25    appointed leadership similar to the leadership structure that

1  the Court has here.  Of course, there are only consumer claims

2  that have been filed in those four class actions that are in

3  state court.

4        The parties in the consolidated cases are currently

5  negotiating a case management order.  The goal in negotiating

6  that is to get that consolidated litigation in the state court

7  proceedings on a similar timeline as the case management orders

8  that Your Honor has entered here so that the two cases will be

9  on a very similar schedule and track.  And so the parties are

10  working towards getting that accomplished.

11        There is one case that is somewhat of an outlier in

12  the sense that those Plaintiffs have refused to have their case

13  consolidated with the other three state court actions that have

14  been consolidated.  Those Plaintiffs have -- that case has also

15  been assigned to Judge Westmoreland.  It's also in the business

16  court.  But they have started trying to seek discovery from

17  Equifax and really operate outside of the case schedule that

18  the other parties have agreed to.

19        Equifax has filed a motion to dismiss and/or stay

20  that case in favor of the prior filed consolidated actions, and

21  it looks like that Judge Westmoreland's going to hear argument

22  on that motion in mid-June.  At that time we may have some

23  additional requests from the Court depending upon how Judge

24  Westmoreland views that outlier of a case.

25        THE COURT:  Well, I know I called Judge Westmoreland;

1    and I know he called me back.  And I think I called him back,

2    and I think I talked with him.  But, frankly, there was so much

3    going on right about that time I just don't remember one way or

4    the other for sure.  I think we talked.  But if he tells you we

5    didn't, we didn't.  If he tells you we did, that's also

6    consistent with my recollection.

7            But I'm sure -- I think we talked, but I just -- I

8    can't -- it's possible I could be imagining that because I know

9    what we were going to talk about and whatever.  But if you have

10   any problems, Judge Westmoreland and I will talk again and see

11   if we can't help y'all out.

12           MR. HASKINS:  Thank you, Your Honor.  We would

13   appreciate that.

14           THE COURT:  All right.  Next is pending motions.

15           MR. BALSER:  Your Honor, I believe the Court's order

16   of May 21st obviates the need to go into great detail about the

17   pending motions.  Your Honor ordered staying of the briefing

18   deadlines in the Abramson, Acosta-Smith and Casper cases and

19   directed us to file a proposed CMO by June 6th to deal with

20   motions in those cases and perhaps other cases that were --

21   that are part of the MDL where the motions are still pending.

22   And we will submit to the Court by that deadline a proposal for

23   handling both those motions and motions that are carried with

24   the transferred cases that are pending.

25           THE COURT:  All right.  I don't know what happened to

1    that order.  It should have been signed before -- long before

2    yesterday, but somehow it fell into a crack or something.  But,

3    anyway, I recall signing it yesterday.

4              MR. BALSER:  All right.  Thank you.

5              THE COURT:  Anything else on the MDL case?

6              MR. CANFIELD:  Yes, Your Honor.  There's one further

7    informational item.  The parties anticipate some delays in

8    complying with some of the deadlines relating to ESI discovery

9    and some other matters.  And we have discussed extending some

10   of those deadlines so that everything that relates to initial

11   disclosures and that sort of thing would be due on August 15th

12   which is the day when the initial disclosures currently are

13   due, just basically put all these related matters back to be

14   due at a particular time.

15             We just discussed that before the hearing.  And

16   Equifax has to talk with their client about it, but we

17   anticipate that the parties will come to an agreement.  And

18   once we do, we would submit a proposed order for the Court's

19   consideration.

20             So I am just letting the Court know about that.

21             THE COURT:  Mr. Balser?

22             MR. BALSER:  I have nothing to add.

23             THE COURT:  Fine.  I'm sure I will have no problem

24   with whatever y'all propose, Mr. Canfield.

25             MR. CANFIELD:  Thank you, Your Honor.  That's all

1   from the Plaintiffs' side.

2           THE COURT:  Anything else, Mr. Balser?

3           MR. BALSER:  Nothing further from Equifax in the

4   consumer MDL, Your Honor.

5           THE COURT:  All right.  So next is the In Re: Equifax

6   Securities Litigation case.

7           Mr. Harrod?  Mr. Smith?

8           MR. BALSER:  Your Honor, may we be excused?

9           THE COURT:  Yes.

10          MR. BALSER:  Thank you.

11          MR. HARROD:  Good afternoon, Your Honor.  Want me to

12  give them a second to clear out or go ahead?

13          THE COURT:  They are leaving pretty quick so --

14          MR. HARROD:  I can't believe they want to miss this.

15          Your Honor, so we fully briefed our motion to modify

16  the stay.  I'm happy to give you a short summary of why we

17  think the motion ought to be granted.  Of course, if Your Honor

18  has any questions, I'm happy to just go right into that too.

19  But if not, I can give you a quick outline of why we think we

20  should get this pretty modest modification of the PSLRA stay.

21          THE COURT:  Well, has Equifax filed their briefs yet?

22          MR. HARROD:  They filed in opposition, I believe, two

23  weeks ago Friday.  We filed our reply on last Friday.

24          THE COURT:  So it's fully briefed?

25          MR. HARROD:  It is fully briefed, Your Honor.

1          THE COURT:  All right.  If you want to briefly tell
2    me what the issue is, I will be glad to hear from you.
3          MR. HARROD:  Right.  So, obviously, the Defendants
4    have taken the position that the PSLRA stay precludes certain
5    of the things that we proposed to them during an early
6    meet-and-confer process pursuant to Your Honor's case
7    management order.  What we're seeking in our motion to modify
8    the stay is basically to engage in some early discovery
9    planning activities that are parallel with what is going on in
10   the MDL.  Our intended purpose in seeking this modification is
11   to ensure that we remain on equal footing and keep the same
12   basic discovery pace with the MDL cases.
13          And so what we're asking for the Court to do in our
14   order that's attached to the motion is to order us to meet and
15   confer and submit a confidentiality order, meet and confer
16   regarding the submission of an ESI protocol for service of
17   document requests and to meet and confer with the Defendants
18   regarding custodians and search terms to be used to produce
19   documents pursuant to such requests.  We have also asked for an
20   order allowing us to serve third-party document preservation
21   subpoenas.
22          I think in light of the 68 or so that have been
23   served in the consumer MDL it is likely if we met and conferred
24   with the Defendants we could probably -- I think that there are
25   some gaps in what I have seen.  I have only seen three

1    exemplars of those subpoenas.  But I think there are a few

2    things that we would probably like to do.  And I think if we

3    met with them we maybe could work that out, but I'm not sure.

4            I think the most important thing is if you look at

5    the cases that we have cited in both the Defendants' brief --

6    they have cited in their brief and that we have cited in our

7    opening brief and our reply the vast majority of these cases

8    talk about a situation which is pretty significantly different

9    than what we are asking for here.  And what the parties, the

10   Plaintiffs in those cases are attempting to do is to lift the

11   stay to obtain documents, perhaps documents produced to a

12   regulator, perhaps documents that have been produced to other

13   parties in related litigation.  But, inevitably, the vast

14   majority of these cases are where a Plaintiff is seeking to

15   lift the stay to obtain documents.  And we think that the

16   request that we are making here is well within Your Honor's

17   inherent case management discretion and within your ability to

18   do.

19           It doesn't implicate the principal purposes for the

20   PSLRA stay being enacted which were to prevent Plaintiffs from

21   using burdensome discovery before the motion to dismiss was

22   decided to leverage a settlement or as in a case Your Honor

23   has, in the *Zisholtz* case that the Defendants cite, to bolster

24   what was just an insufficient complaint.  In that case, Your

25   Honor denied the motion to lift the stay where you had

1    dismissed two prior complaints by the Plaintiff.  You said, you

2    know, this is not -- you have not passed the bar, and you can't

3    now seek discovery to try to get over that bar.

4           We're not trying to do any of those things.  So I

5    think on the first step of the analysis we have met it because

6    none of the concerns underlying the enactment of the stay by

7    Congress are present here.

8           The second question is whether or not the discovery

9    we are seeking is particularized.  And I think to the extent

10   that you can even say that we are seeking discovery it's

11   certainly particularized.  I identify the five things that are

12   in our proposed order.  They are pretty specific.  They are not

13   seeking production of documents.  Again, they are just case

14   management items that the parties should try to do.

15          The last element of this test -- and this is where I

16   think the principal disagreement between the parties is -- is

17   the stay can be lifted upon a showing of a need to preserve

18   documents -- we're not moving on that basis here -- or a

19   showing of undue prejudice.  And our argument here is that the

20   undue prejudice in this case as it is in many of the cases that

21   we have cited is the delay and, in particular, the delay

22   relative to other parties in doing these kinds of case

23   management planning tasks that the MDLs do.  Your Honor

24   obviously believes that the MDL and securities case should be

25   coordinated, and we believe that if these tasks are not

1    undertaken now at this time when discovery does start we will

2    be significantly behind what is happening in the MDL.

3          And in the cases that we cite, this is a concern that

4    courts have said constitutes prejudice.  I just point out there

5    are a couple of situations that I think present a much more

6    significant burden and demand on the Defendants.  We cite a

7    case called *Nicor* which is from Chicago in the Northern

8    District of Illinois.  When the stay was lifted, there were

9    none of these concerns that Defendants talk about where people

10   are fighting over a small piece of pie and if you don't get the

11   documents you will be at a disadvantage.  The court said I

12   understand those are concerns in certain cases; you don't need

13   to show that to show undue prejudice or to lift the stay.

14         My firm had a case involving General Motors where we

15   were given access to documents produced in a consumer tort MDL

16   that was pending in the Southern District of New York while our

17   case was pending in Detroit, Michigan.  We got access to I

18   believe it was, I think, 10 or 20 million pages of documents in

19   that case on a showing that the disparate situation between in

20   that case very tangentially related parties constituted undue

21   prejudice and warranted lifting the stay.

22         Your Honor, that's pretty much it.  I think -- you

23   know, I can play it out for you; but I think you know what

24   happens when parties end up in situations where there's

25   coordination and different parties are at different stages of

1    the calendar in terms of their litigation.  And there's a lot

2    of hypothetical scenarios where I could explain to you how that

3    would harm us, but I think that they are all pretty obvious.

4              The one that I think I raised at the last hearing was

5    the idea of depositions.  If we are, say, three months, four

6    months behind what is a nine-month discovery period in the MDL

7    cases, when depositions begin to be taken we will either be in

8    a position to not be fully prepared because we will not have

9    obtained and reviewed the necessary documents.  So we would be

10   back in front of Your Honor asking for a stay of those

11   depositions.  We will be forced to take the depositions in a

12   manner where we are not fully prepared or the Defendants will

13   be forced, I'm assuming to their dismay, to produce the same

14   witnesses more than once.

15             There's obviously other scenarios and hypotheticals I

16   could illustrate for you about the potential problems with

17   this, but I think it's a fairly light lift for us in terms of

18   what we're seeking relative to what the burdens on the

19   Defendants will be.

20             That's all I have.  Thank you.

21             THE COURT:  Mr. Smith?

22             MR. SMITH:  Thank you, Your Honor.  We will be brief

23   here.

24             I think Your Honor appreciates that in passing the

25   Private Securities Litigation Reform Act, the PSLRA, Congress

1    decided to impose heightened pleading standards and as part of

2    that said that there would be no discovery.  They placed an

3    automatic stay of discovery until the legal sufficiency of the

4    complaint had had an opportunity to be tested.

5             So that automatic stay that Congress imposed just has

6    one narrow exception or two -- one, if it's necessary to

7    preserve evidence or, two, to prevent undue prejudice.  And I

8    think I heard Mr. Harrod say that really even though part of

9    what he is asking is to serve the document preservation

10   subpoenas I think he has acknowledged that in light of the 68

11   subpoenas that have already been served in the MDL there's

12   probably nothing else to do there.  They haven't even asked us

13   for the list of names to review the subpoenas.  We'd be happy

14   to meet and confer with them to talk about that.

15            But, secondly, on the undue prejudice angle, I think

16   it's worth noting that falling behind or having a delay in

17   discovery that is not undue prejudice; that's the prejudice if

18   it is that Congress imposed as part of the PSLRA.  I mean, they

19   made that decision.

20            Congress didn't say in the state provisions that

21   government investigations are stayed, that consumer litigation

22   is stayed.  It said that with respect to securities litigation

23   which has heightened pleading standards very different from

24   those that apply to the consumer cases or related ordinary

25   litigation that there it was after weighing all the pros and

1    cons of allowing even limited discovery to go forward that the

2    stay should be imposed.  So while Plaintiffs say that they may

3    suffer some somewhat vague prejudice, it's not any different

4    from what Congress decided was appropriate in a securities

5    case.

6              Although it's not relevant to the analysis, the focus

7    is on undue prejudice to the Plaintiffs.  They have tried to

8    argue, well, it shouldn't burden the Plaintiff -- the

9    Defendants much.  It shouldn't burden Equifax much because they

10   are already doing things as part of the MDL.

11             And I'll have to say there is a burden here.  They're

12   asking to, for example, serve document requests of unlimited

13   nature with regard to subject matters that may -- and all of

14   these may be entirely mooted by the Court's ruling on motion to

15   dismiss if it grants the motion or at least sufficiently

16   narrowed.  The case could be cut way back at a minimum.  And

17   it's just not appropriate to impose these kinds of obligations

18   on the Defendants without the necessary showing of undue

19   prejudice.

20             So I guess I would say in having looked at their

21   complaint we are well along the way in our motion which is due

22   to be filed in a couple of weeks.  We have a very serious

23   motion.  I do not believe the Plaintiffs have met the extremely

24   high pleading bar of pleading particular facts, for example,

25   showing a strong inference that the Defendants made a material,

1    false or misleading statement with scienter, very difficult

2    pleading thresholds to meet.

3           And before that is tested, before the legal

4    sufficiency of the complaint is tested, the Defendants should

5    not be subjected to any of these discovery activities.  And as

6    Your Honor ruled in that *SunTrust* case that Mr. Harrod cited,

7    this applies to both actually producing documents and initial

8    disclosures, planning conferences, everything that goes along

9    with discovery.  There's just no reason to go against the stay

10   that Congress imposed in this case.

11          Thank you.

12          THE COURT:  Anything else on the securities case?

13          MR. CHAIKEN:  Just a couple additional points, Your

14   Honor.  Dave Chaiken for Mr. Smith.

15          A couple things I want to make sure Your Honor is

16   aware of that we may not be focused on necessarily, but we

17   represent an individual human being.  He is not a company.  He

18   is a person, and there are other individual Defendants that are

19   represented by King & Spalding.  And the notion that -- well,

20   let me just say that the PSLRA automatic discovery stay applies

21   equally to those people as it does to the company.

22          And none of those individuals are involved in the

23   MDL.  So to the extent that there is some argument from the

24   Plaintiffs' side that this is no harm, no foul, these

25   activities are already happening in the MDL, now none of these

1    individuals are engaged in any of those activities.

2              Secondly, in his laundry list of requests, Mr. Harrod

3    I think unless I missed it did not address these written

4    discovery requests and responses and objections that he has

5    requested a court order authorizing him to serve.  That is

6    something -- and I think Mr. Smith alluded to it in his

7    argument.  That is not nothing.  That is quite an undertaking

8    to even begin the process of examining what documents exist and

9    what documents may be relevant in order to even begin to

10   articulate those written responses and objections.  And as far

11   as we are aware, Mr. Harrod is seeking to impose those

12   obligations on these individuals as well, not just the company.

13             Mr. Harrod in his brief comments mentioned to Your

14   Honor that the PSLRA was intended to avoid burdensome

15   discovery.  That's not right, Your Honor.  PSLRA was intended

16   to prohibit all discovery, any discovery until such a time as

17   the Court makes a determination that the claims are at least

18   facially valid.

19             The last thing I will say, Your Honor -- I know this

20   has sort of gotten lost in all these discussions -- but there

21   are actually two hurdles that the Plaintiffs have to overcome

22   in order to get this pre-motion to dismiss discovery.  And the

23   other hurdle in addition to the PSLRA is the Local Rule 16.2.

24   And I don't think anything that we have heard or that we have

25   seen in the pleadings justifies an exception to Local Rule 16.2

1    or either of the exceptions to the PSLRA.

2              That's all I have, Your Honor.  Thank you.

3              THE COURT:  All right, Mr. Chaiken.

4              Anything else on the securities litigation case?

5              No rebuttal, Mr. Harrod.

6              MR. HARROD:  Then nothing from Plaintiffs, Your

7    Honor.  I got it.

8              THE COURT:  All right.  Then the derivative

9    litigation.

10             Mr. Weiss?

11             MR. WEISS:  Good afternoon, Your Honor.  Joseph

12   Weiss.

13             Following our appearance here last time, at the

14   beginning of May -- I think it was on May 1 -- we came down

15   here and we met with counsel for the company, counsel for the

16   individual Defendants and counsel for the demand review

17   committee.  And I think it was a good opening meeting.  They

18   basically filled us in in terms of the status of the demand

19   review committee, namely that the committee continues to meet,

20   continues to do its investigation.

21             But as a practical matter -- and the Defendants can

22   speak to this on their own -- but the committee's going to want

23   to see what happens with the motions to dismiss in the

24   securities case and the financial institutions cases, et

25   cetera, before issuing any kind of report and deciding where to

1    go.  So we're patient people, and we're sure that that day will

2    come where the rulings will come down.  But in the meantime, we

3    have asked for the opportunity to meet with the demand review

4    committee; and that's something that they have under

5    consideration.

6              In terms of the consolidated complaint, we have begun

7    working on it.  As a practical matter, it's a chicken and egg

8    situation because on the one hand you would want to have the

9    complaint after the committee decides what it wants to do.  On

10   the other hand, the committee wants to see what exactly is

11   being complained about and what the consolidated demands will

12   be.

13             So we agreed to draft a consolidated complaint and to

14   have it filed without -- again, subject to Your Honor's wishes

15   but without them having to actually respond to it because they

16   are going to want to see what happens in the other cases.  And

17   we have agreed to do so, though, reserving whatever rights we

18   have to do an amended consolidated complaint once Your Honor

19   rules on those motions to dismiss and perhaps once the

20   committee itself issues a report because perhaps we would be

21   challenging that report in such an amended complaint.

22             And, again, subject to Your Honor's wishes, our

23   thoughts were that we would submit the consolidated amended

24   complaint perhaps two weeks after the 4th of July holiday, you

25   know, around July 13th.  As a practical matter, they're not

1    going to be answering anyway; so there isn't this intense rush.

2    And I can promise you it will not be 600 pages.

3              THE COURT:  Mr. Weiss --

4              MR. WEISS:  That's my report, Your Honor.

5              THE COURT:  Mr. Weiss, so far you've done what you

6    said you were going to do.

7              MR. WEISS:  I appreciate it.

8              THE COURT:  You have gotten off to a good start, so

9    keep it up.

10             MR. WEISS:  Thank you.  I will, Your Honor.  I will.

11             THE COURT:  All right.  Anybody want to be heard --

12             MR. WEISS:  I don't know if the Defendants have

13   anything --

14             THE COURT:  -- from the Defendants on the derivative

15   case?

16             MR. SMITH:  No, Your Honor.

17             THE COURT:  Anybody else want to be heard --

18             MS. GARGIULO:  No, Your Honor, unless you'd like more

19   context about the demand review committee's investigation.  I

20   represent Elaine Stock and also the demand review committee.

21             THE COURT:  And tell me your name again.

22             MS. GARGIULO:  Rachel Gargiulo.

23             THE COURT:  I'm fine with what y'all have reported so

24   far.

25             MS. GARGIULO:  Thank you.

1          MR. WEISS:  Thank you, Your Honor.

2          THE COURT:  All right.  Anybody else want to say

3   anything?

4          (No response.)

5          All right.  Again, I find these status conferences

6   useful; but I don't want to waste y'all's time.

7          Do you want to continue having them, Mr. Canfield?

8          MR. CANFIELD:  Yes, Your Honor.  We believe they are

9   useful as well for all the reasons we have talked about

10  previously.

11         THE COURT:  All right.  How about mid or late July?

12         I will be out from July 7th through the 15th.  So

13  y'all get with Ms. Sewell after I leave and see if y'all can

14  work out a convenient date maybe mid or late July.

15         MR. SMITH:  Thank you, Your Honor.

16         MR. CANFIELD:  Thank you, Your Honor.  Nothing

17  further.

18         THE COURT:  Thank you very much.  Court's in recess

19  until further order.

20         (Proceedings adjourned at 2:35 p.m.)

21

22

23

24

25

1                    <u>C E R T I F I C A T E</u>

2

3   UNITED STATES DISTRICT COURT:

4   NORTHERN DISTRICT OF GEORGIA:

5

6            I hereby certify that the foregoing pages, 1 through

7   25, are a true and correct copy of the proceedings in the case

8   aforesaid.

9            This the 1st day of June, 2018.

10

11

12

13                    */s/ Susan C. Baker* _____

14                    Susan C. Baker, RMR, CRR
                     Official Court Reporter
15                    United States District Court

16

17

18

19

20

21

22

23

24

25