**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800<br>1:17-md-2800-TWT<br><br>CONSUMER CASES |

**EQUIFAX'S RESPONSE TO PLAINTIFF CITY OF CHICAGO'S MOTION
TO ESTABLISH A SEPARATE TRACK
FOR GOVERNMENT ENFORCEMENT ACTIONS**

Defendant Equifax Inc. ("Equifax") respectfully submits this response to Plaintiff City of Chicago's ("City") Motion to Establish a Separate Track for Governmental Enforcement Actions. Despite the JPML having already rejected the City's attempts to differentiate its case from the closely-related consumer cases, the City now asks this Court again for individualized treatment by establishing a completely separate "track" for its case alone. A separate track is not warranted because all of the City's claims against Equifax are encompassed in the master consolidated complaint filed on behalf of the Consumer Plaintiffs ("Consolidated Complaint," Dkt. No. 374). The City's case is therefore properly included in the Consumer Track, and the City's motion should be denied.

1

## BACKGROUND

The City filed its lawsuit against Equifax on September 28, 2017 in Illinois state court in response to the data security incident Equifax announced on September 7, 2017. The City brought claims premised upon Equifax's alleged failure to properly maintain Chicago consumers' personally identifiable information ("PII"), failure to promptly notify Chicago consumers after discovering the incident, and Equifax's allegedly deceptive practices relating to its offering of free credit monitoring services to Chicago consumers in the wake of the incident. These same core allegations underlie hundreds of other consumer cases the JPML has transferred to the *In re Equifax* MDL.

Accordingly, after removing the City's action to the Northern District of Illinois on October 30, 2017, Equifax noticed the case to the JPML as a potential tag-along action on October 31, 2017. Equifax then moved for a stay of all case proceedings until the JPML ruled on the pending 28 U.S.C. § 1407 motions and determined whether the City's case would be included in any future MDL proceeding. The City opposed Equifax's motion to stay, asserting many of the same arguments it now puts forth in its present motion. *See* City's Response to Motion to Stay, attached as Exhibit 1, at 6-8 (arguing that the City's case is "unique" because, among other reasons, it is not a class action, it brings claims

under Illinois state law, and consolidation with consumer cases will not advance the purposes of § 1407 consolidation or coordination).

Over the City's objection, the Northern District of Illinois granted a stay pending the JPML's decision on the § 1407 motions. Notably, the court compared the City's case to five related putative class actions then-pending in the Northern District of Illinois, and found that "the factual allegations substantially overlap with those in [the City's case]" and that there is "no reason to think that Equifax's security practices were materially different as between Chicago residents versus non-Chicago Illinois residents versus any other State's residents." *See* Order on Equifax's Motion to Stay, attached as Exhibit 2, at 1. The court concluded that the City's case "very likely will be included in the anticipated MDL" and that including it would promote efficiency and the conservation of judicial resources. *Id.* at 2.

Consistent with the Northern District of Illinois's prediction, the JPML created the *In re Equifax* MDL in this Court on December 6, 2017, and issued a conditional transfer order ("CTO-1") with respect to the City's case on December 8. The City objected to transfer and filed a motion to vacate CTO-1 on December 28, 2017, arguing—as it did in the Northern District of Illinois—that its case should not be transferred because (i) it is not a putative class action, (ii) it involves

Illinois-specific legal issues, and (iii) transfer would not promote the just and efficient conduct of the Equifax litigation as a whole. City's Motion to Vacate, attached as Exhibit 3. On April 5, 2018, the JPML rejected those arguments and finalized transfer of the City's case to this MDL. Dkt. No. 287. The JPML specifically found that, notwithstanding any "preliminary legal issues that are unique to [the City's case], . . . inclusion of the action [in the MDL] is likely to promote the just and efficient conduct of the litigation." *Id.* at 2.

On January 10, 2018, this Court entered CMO-2, which established two case tracks: one for Consumer Plaintiffs and one for Financial Institution Plaintiffs (with the possibility of Small Business Plaintiffs moving for a third track, if necessary). Dkt. No. 87 at 1-3. Further, "[t]o facilitate the efficient handling of this multidistrict litigation, the Court direct[ed] that plaintiffs file a master consolidated complaint in each track" (*id.* at 3), which "will supersede all earlier filed individual complaints" (CMO-3, Dkt. No. 248 at 2). The Court also appointed leadership counsel for the Consumer Plaintiffs on February 22, 2018, and charged them with the responsibility to "[d]irect and manage pretrial proceeding on behalf of all Consumer Plaintiffs . . ., including the briefing and argument of motions and the conduct of all types of discovery proceedings." Dkt. No. 232 at 7.

On May 22, 2018, nearly two months after its case was transferred to the MDL, the City filed its motion to establish a separate track for "governmental enforcement actions," raising substantially the same arguments that were previously rejected by the JPML.

**ARGUMENT**

The City raises two main arguments for why this Court should establish a separate track for "governmental enforcement actions": (i) the City's claims are not represented in the Consumer Plaintiffs' Consolidated Complaint and (ii) the City's case involves legal issues that are "unique" compared to the hundreds of other cases pending in the Consumer Track. The City's first argument is incorrect, and the second does not justify creation of a separate track for the City's claims.

**1. The City's Claims Are Included In The Consumer Plaintiffs' Consolidated Complaint.**

The City's suggestion that its claims have not been included in the Consumer Plaintiffs' Consolidated Complaint is simply wrong. In fact, the Consolidated Complaint asserts Illinois-specific claims on behalf of a putative Illinois subclass that subsume the claims asserted in the City's lawsuit. All but one of the City's causes of action arise out of purported violations of two Illinois statutes—the Illinois Personal Information Protection Act, 815 Ill. Comp. Stat. §§ 530/10(a), *et seq.* ("PIPA") and the Illinois Consumer Fraud and Deceptive

5

Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq*. ("Illinois Consumer Fraud Act")—which also serve as the basis for causes of action in the Consolidated Complaint.[1]

For example, Count I of the City's Amended Complaint and Count 32 of the Consolidated Complaint both assert violations of PIPA based on Equifax's alleged failure to give timely notice of the breach. *Compare* City's Amended Complaint, ¶ 86 ("Equifax has violated Section 10 of PIPA by failing to notify Chicago residents that a breach of the security of its system data had occurred in the most expedient time possible and without unreasonable delay.") *with* Consolidated Complaint, ¶ 655 ("By failing to disclose the Equifax data breach in the most expedient time possible and without unreasonable delay, Equifax violated [Section 10 of PIPA].").

Likewise, Count III of the City's Amended Complaint and Count 33 of the Consolidated Complaint each assert violations of the Illinois Consumer Fraud Act based on Equifax's alleged failure to implement security procedures sufficient to protect consumers' PII. *Compare* City's Amended Complaint, ¶ 102 ("Equifax has

---

[1] While Counts I through V of the City's Amended Complaint are labeled as violations of the City's municipal code, the relevant code section merely states that a violation of the Illinois state statutes at issue *also* constitutes a violation of the City's code. *See* City's Amended Complaint, attached as Exhibit 4, ¶¶ 82-131. Thus, the Illinois statutes—and not the City's code—provide the substantive legal standards the City alleges Equifax violated.

engaged in conduct that constitutes an unfair act or practice declared unlawful under Section 2 of the [Illinois Consumer Fraud Act], in that it failed to implement procedures and practices to prevent unauthorized access to its data systems and the Personal Information of Chicago residents.") *with* Consolidated Complaint, ¶ 663(a) ("Equifax's . . . unfair . . . acts or practices, in violation of [Section 2 of the Illinois Consumer Fraud Act], include . . . [f]ailing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Illinois Subclass members' Personal Information, which was a direct and proximate cause of the Equifax data breach.").

The City's final cause of action, a request for declaratory and injunctive relief, is also specifically incorporated into the Consolidated Complaint. Both complaints request a declaration that Equifax has unlawfully failed to protect consumers' PII (*see* City's Amended Complaint, ¶ 129 and Consolidated Complaint, ¶ 395), and an injunction requiring Equifax to employ adequate security measures to protect such PII going forward (*see* City's Amended Complaint, ¶ 131 and Consolidated Complaint, ¶ 396).

Because the City's claims are clearly encompassed in the Consumer Plaintiffs' Consolidated Complaint, the City's suggestions that its claims "in fact have not been included [in that Complaint]" (Dkt. No. 385, ¶7), and that "a

7

separate track is warranted given the unique nature of Chicago's claims" (*id*. at ¶9), simply are not true. Creating a separate track just for the City to assert the same claims already contained in the Consolidated Complaint would be a waste of the parties' and court's resources, and it would be contrary to the goals of § 1407 litigation.

Moreover, the City's protest that the Consolidated Complaint does not assert claims specifically "on behalf of Chicago" or "mention[ ] Chicago as a plaintiff" misses the point. This Court appointed Consumer Plaintiffs' lead counsel—and directed them to file the Consolidated Complaint on behalf of *thousands* of plaintiffs named in cases included in the Consumer Track—"[t]o facilitate the efficient handling of this multidistrict litigation." CMO-2, Dkt. No. 87 at 3. Accordingly, the Court should also deny the City's alternative request to file a separate, duplicative complaint within the Consumer Track.

### 2. Any Issues That Are "Unique" To The City's Case Do Not Warrant A Separate Track.

Beyond incorrectly suggesting its claims are not represented in the Consumer Plaintiffs' Consolidated Complaint, the City also points to a couple of ways in which it contends its case is different from other cases pending in the Consumer Track. Mainly, the City argues its case should be treated differently because it is not a putative class action and because it is brought by a municipality

8

on behalf of its consumer-residents rather than directly by consumers. The JPML already rejected both of these arguments when the City raised them in opposition to transfer, and now that the City's case is in the MDL, those arguments fail to warrant creation of a new track for the same reasons.

First, the fact that the City does not assert claims on behalf of a putative class certainly does not warrant creation of a separate track. The Court's order establishing the Consumer Track does not limit the cases assigned to it to putative class actions. *See* CMO-2, Dkt. No. 87 at 1-3. Contrary to the City's contention that "[a]ll of the cases included in the consumer . . . track[ ] are class actions" (Dkt. No. 385, ¶ 9), there are over 40 non-class action cases currently pending in the Consumer Track. This Court, which has broad discretion to "employ any number of pretrial techniques . . . to efficiently manage this litigation," *In re Deep Vein Thrombosis Litig.*, 323 F. Supp. 2d 1378, 1380 (J.P.M.L. 2004), has already found it proper to include cases brought by individual plaintiffs *and* cases brought on behalf of putative classes of plaintiffs within the Consumer Track. Doing so is consistent with typical practice in MDL proceedings, where the JPML routinely transfers both individual and class action cases to the transferee court for coordinated or consolidated pretrial proceedings. *See, e.g.,* Dkt. Nos. 46, 246, 287, and 381 (JPML transfer orders transferring individual-plaintiff cases to this MDL);

*see also In re Polyurethane Foam Antitrust Litig.*, MDL 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011) ("The Panel . . . typically includes both individual actions and putative class actions in the same multidistrict proceeding when they arise from the same alleged [wrongful conduct]."); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (consolidating both class action cases and individual cases with various different defendants because the actions arose from a "common factual core").

Second, the JPML has already rejected the City's argument that its case's status as a municipal enforcement action makes it fundamentally different from—and inappropriate for consolidation or coordination with—the consumer putative class actions. *See* Transfer Order, Dkt. No. 287 at 2 (rejecting the City's argument that "preliminary legal issues" such as class certification, standing, and the scope of Illinois home rule authority make the City's case inappropriate for inclusion in the MDL, because it "shares factual questions with the consumer class actions").

Neither of the cases cited by the City support the position that an entirely separate track should be created, for the benefit of a single case, based on minor differences between that case and others pending in an MDL proceeding. In *In re McCormick & Co., Inc., Pepper Products Marketing & Sales Practices Litigation.*, the JPML simply noted that the transferee court has broad discretion to efficiently

handle pretrial proceedings, including through creation of multiple tracks, a point Equifax does not contest.  148 F. Supp. 3d 1364, 1366 (J.P.M.L. 2015).  And in *In re EpiPen Marketing, Sales Practices, and Antitrust Litigation*, the transferee court created a separate track where (i) in the context of antitrust litigation, the unique case at issue was brought by a competitor pharmaceutical company, whereas all other cases in the proceeding were brought on behalf of consumers; and (ii) the defendant had already moved to dismiss the plaintiff competitor's complaint, and the plaintiff competitor had responded, meaning the matter was "almost fully briefed for the court's consideration."  Case No. 2:17-md-02785-DDC-TJJ, Dkt. No. 42 at 3 (D. Kan. Sept. 14, 2017).

     Here, in contrast, the City's case is substantially aligned with those of the Consumer Plaintiffs because the City "seek[s] relief against Equifax on behalf of Chicago and its residents" and the Consumer Plaintiffs assert precisely the same claims (and more) against Equifax on behalf of an Illinois subclass.  Finally, unlike the situation in *In re McCormick & Co.*, creating a separate track here would require the filing of an additional, *fourth* complaint (in addition to those filed on behalf of the Consumer, Small Business, and Financial Institution Plaintiffs), and creation of an additional briefing schedule.

Accordingly, the City has not shown any good reason why this Court should unduly expand this MDL proceeding, and impose additional burden and expense on the parties and the court, by creating an entirely new track solely for the City.

## **CONCLUSION**

Because the City's case is properly included in the Consumer Track, and its claims are encompassed in the Consumer Plaintiffs' Consolidated Complaint, the Court should deny the City's motion to establish a separate track for "governmental enforcement actions," as well as its alternative request to file a separate complaint within the Consumer Track.

Respectfully submitted this 12th day of June, 2018.

*/s/ S. Stewart Haskins II*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Defendant Equifax Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Response was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 12th day of June, 2018.

                                                */s/ S. Stewart Haskins II*
                                                **KING & SPALDING LLP**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II
