# Exhibit 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 07798 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| EQUIFAX INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On review of Defendant Equifax's motion to stay, R. 15, and the briefing on it, the Court grants the motion in light of the probable formation of a Multidistrict Litigation (MDL) case concerning the 2017 data breach and its aftermath. On balance, several factors counsel in favor of the stay, at least for now, while Chicago does not identify a specific, substantial harm in waiting to see whether the Judicial Panel on MDL will create an MDL.

First, weighing in favor of a stay, the Panel will be hearing argument very soon—on November 30, 2017—to decide whether to create an MDL. The odds are quite high that the Panel will authorize an MDL: over 250 cases concerning the breach and aftermath have been filed, including five in the Northern District of Illinois. Even in just those five cases, the factual allegations substantially overlap with those in this case. That is not surprising: there appears to be no reason to think that Equifax's security practices were materially different as between Chicago residents versus non-Chicago Illinois residents versus any other State's residents. Nor is there much reason to think that the *effect* of the breach differs from city-to-city or state-to-state. Although nothing is certain, this Court's best forecast is that the Panel will create an MDL for the data breach and for Equifax's alleged conduct in response to the breach.

It is also very likely that, after an MDL is created, this lawsuit will be part of it. Of course, Equifax has already filed the notice of relatedness with the Panel as to this case. More importantly, as mentioned earlier, there is no material difference

between the core factual allegations in this case or any other (based on the Northern District of Illinois cases as a sample). Indeed, Chicago's legal theories actually overlap by 100% with the other Northern District of Illinois cases, because the ordinance that the City relies on, namely, the Consumer Fraud, Unfair Competition or Deceptive Practices Ordinance, § 2-25-090, simply incorporates the Illinois Consumer Fraud Act and the Illinois Personal Information Privacy Act for the ordinance's substantive-liability provisions. This case very likely will be included in the anticipated MDL.

On the other side of the ledger, the City argues that this case will come to a "standstill" if the stay is granted. R. 22 at 2. Of course that is what *every* stay accomplishes, which is why there is indeed a burden on the stay's proponent to justify it. Here, forging ahead with this case even as the Panel considers—and almost surely creates—an MDL would undermine the goals that the Panel seeks to effectuate by bringing many cases under the supervision of an MDL. Not only does an MDL conserve the resources of the defendant (which, by the way, can end up favoring *plaintiffs* because the defendant can put more resources into settling the cases), it brings efficiencies to *both* sides by consolidating discovery efforts on the common factual allegations. There also is the conservation of judicial resources, with one judge (or one district judge and one magistrate judge) investing the necessary time and effort in supervising the case, rather than imposing that resource drain on hundreds of judges. And there is fairness amongst plaintiffs to consider as well; it makes little sense to allow one plaintiff to have an outsized influence on the litigation against Equifax, to the potential disadvantage of all other plaintiffs.

In response, Chicago argues that Equifax inevitably cannot bring all of the data-breach cases under one roof. To be sure, there are a few cases that cannot be brought into the MDL: two other government-plaintiff cases where special rules apply preventing removal to federal court, and any Georgia state-court cases where Equifax cannot remove on the basis of diversity of citizenship. Still, there is simply no need to add another case to the number that will remain outside of the MDL. Each additional case outside the MDL poses yet another unnecessary coordination problem. Chicago is also fearful that the MDL will get bogged down in class-certification fights. If that happens, then Chicago will be free to ask the Panel to remand the case to this Court, particularly if the liability-phase discovery is completed and the parties are bickering over class-certification propriety.

2

Chicago also contends that a stay will undermine the Mandatory Initial Discovery Pilot Project. But the Standing Order governing the Project does not apply to cases transferred to an MDL, and this Court is forecasting that the case will be going. And the Standing Order need not be rigidly applied to truly extraordinary cases, like this one, where substantial burdens will be imposed if the stay is not granted.

For the reasons discussed, the stay motion [15] is granted. If Chicago has some concerns over retention of discoverable records, then the parties should confer over an appropriate litigation hold; most likely, Equifax has already been counseled on this and some confirmatory letter from Equifax might suffice. To keep track of the case, the status and motion hearing of November 27, 2017 is reset to January 8, 2018, at 10:15 a.m. The parties shall file a concise status report on the MDL proceedings by 1 p.m. on January 5, 2018.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 26, 2017

3