# Exhibit 3

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION

IN RE:

EQUIFAX, INC. CUSTOMER DATA
SECURITY BREACH LITIGATION

**This document relates to:**
*City of Chicago v. Equifax, Inc.*, N.D.
Illinois, Case No. 17-CV-07798

MDL Docket No. 2800

## PLAINTIFF'S MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO-1)

Plaintiff City of Chicago, pursuant to Judicial Panel on Multidistrict Litigation ("JPML") Rule 7.1(f), moves the JPML to vacate its order of December 8, 2017 conditionally transferring the above-captioned case to the United States District Court for the Northern District of Georgia. This motion is based on the attached Brief in Support of Motion to Vacate Conditional Transfer Order (CTO-1) and such other materials as may be presented to the JPML at the time of the hearing on the motion.

Pursuant to Rule 7.1(f), movant requests the Clerk to set this motion for the next appropriate hearing session of the JPML.

Date: December 28, 2017

Sincerely,

*/s/ John L. Hendricks*
John L. Hendricks, Deputy Corporation Counsel
Constitutional and Commercial Litigation Division
City of Chicago Department of Law
30 N LaSalle St., Suite 1230
Chicago, Illinois 60602
Phone: (312) 744-6975
Email: John.Hendricks@cityofchicago.org

*Counsel for Plaintiff City of Chicago*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of December, 2017, I electronically filed the Motion To Vacate Conditional Transfer Order (CTO-1) on behalf of Plaintiff City of Chicago with the JPML Clerk of Court using the CM/ECF system, which sent notification of such filing to each party that receives electronic filing notices in MDL No. 2800.

/s/John L. Hendricks
John L. Hendricks

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>**This document relates to:**<br>*City of Chicago v. Equifax, Inc.*, N.D. Illinois, Case No. 17-CV-07798 | MDL Docket No. 2800 |

**BRIEF IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-1)</u>**

This memorandum is filed, pursuant to Judicial Panel on Multidistrict Litigation Rule 7.1(f), in support of Plaintiff City of Chicago's ("Plaintiff" or "City") Motion to Vacate Conditional Transfer Order (CTO-1) of the Judicial Panel on Multidistrict Litigation ("JPML"), issued on December 8, 2017 ("CTO"), ordering transfer of Case No. 17-CV-07798 to the Northern District of Georgia for pretrial proceedings in accordance with 28 U.S.C. § 1407.

## BACKGROUND

The City's lawsuit was filed on September 28, 2017 in Illinois state court, stating claims against Equifax under the Consumer Fraud, Unfair Competition or Deceptive Practices Ordinance ("Ordinance"), Section 2-25-090 of the Municipal Code of Chicago ("MCC"), on behalf of the City and its residents for Equifax's deceptive and unfair business practices committed while conducting business in the City. On October 30, 2017, Defendant Equifax, Inc. filed its Notice of Removal in the Northern District of Illinois, removing the City's lawsuit pursuant to 28 U.S.C. § 1446(a). On December 6, 2017, the JPML entered the Transfer Order creating the Equifax Customer Data Security Breach MDL ("Equifax MDL"). The CTO was prompted by Defendant Equifax identifying the City's lawsuit in a Notice of Related Action filed

1

on October 31, 2017 with the JPML. As set forth below, the City respectfully requests that the JPML vacate the CTO as to the City's lawsuit and send the City's lawsuit against Equifax back to the Northern District of Illinois.

## LEGAL STANDARD

Prior to transferring a case into an MDL pursuant to 28 U.S.C. § 1407(a), the JPML must make an affirmative finding that the transfer (1) will be for the convenience of the parties and witnesses and (2) will promote the just and efficient conduct of such actions. In engaging in this analysis, the JPML will consider not only whether the transfer will eliminate duplicative discovery, but also whether a transfer will prevent inconsistent pretrial rulings and conserve the resources of the parties and their counsel. *See, e.g., In re: AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010). The JPML has instructed that "[b]efore transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met." *In re Highway Acc. near Rockville, Connecticut on December 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1972). Transfer of the City's lawsuit into the Equifax MDL will not serve the purposes of consolidated litigation. In specific, such transfer would frustrate rather than promote the just and efficient conduct of actions brought against Equifax.

**I.   The Extent Of Home Rule Authority Under The Illinois Constitution Is A Legal Issue Unique To Illinois And Should Be Interpreted By An Illinois Court.**

In responding to the City's lawsuit, which is based upon Equifax's violation of a City municipal ordinance, Equifax has declared its intention to move, under Federal Rule of Civil Procedure 12(b), to dismiss the City's case on the basis that "the City has exceeded its home rule authority in its application of the City ordinance." *City of Chicago v. Equifax Inc.*, Case No. 17-CV-07798, Dkt. No. 15 at 3, n.2 (N.D. Ill. Nov. 3, 2017); Dkt. No. 20 at 3 (N.D. Ill. Nov. 9, 2017).

2

The scope of the City's home rule authority, and whether it has been exceeded, is a potentially dispositive issue specific to the City that will not arise in *any* of the cases that have been consolidated into the Equifax MDL or that will be subject to transfer. Home rule authority is essentially a delegation of power from the State of Illinois to the City. It derives from Article VII, Section 6 of the Illinois Constitution. By transferring this case to the Northern District of Georgia, the JPML would be allowing that court to determine the extent of home rule authority pursuant to the Illinois Constitution. The implications of such a ruling are potentially vast in terms of influencing the development of home rule precedent in Illinois, which affects the City's ability to govern and protect the rights of its citizens via the enactment of ordinances such as the Ordinance, and public enforcement actions like this one. Requiring the Georgia federal district court to delve into the history and tradition of the Illinois Constitution and its interpretation would not conserve but rather would waste the resources of the judiciary, the parties, and their counsel.

Although the mere fact that resolution of a case will require adjudication of a state law issue does not preclude MDL consolidation, the JPML has recognized that a preponderance of state law issues weighs against such consolidation. *See*, *e.g., In re Uber Tech., Inc. Wage & Hour Emp. Prac.*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016) (denying motion for centralization because determination of whether plaintiffs are employees or independent contractors would rest on "state-specific legal and factual inquiries that are not suitable for centralized proceedings"); *In re Honey Prod. Mktg. and Sales Prac. Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) (denying centralization in part because cases "involve[d] different state regulations subject to different legal challenges by the defendants"). The case against transfer of a specific case becomes even stronger where that case may rest on an issue of state law that is

unique to that case and potentially dispositive. *See In re: Accutane Prod. Liability Litig.*, 560 F. Supp. 2d 1370, 1370-71 (J.P.M.L. 2008) (vacating conditional transfer of *Hyde* lawsuit because defendant's summary judgment motion involved an issue of Texas law unique to the *Hyde* case and that motion was potentially dispositive of the entire action). In this case, Equifax has plainly stated that it intends as a first response to urge dismissal of the City's lawsuit based solely on an issue unique to Illinois constitutional law. This is an issue of law with which no court outside of the Northern District of Illinois has substantial, if any, experience. Assigning the dispositive issue of Chicago's home rule authority to a court in the Northern District of Georgia cannot lead to the "just and efficient conduct" of the City's case. Furthermore, tasking the Northern District of Georgia to adjudicate the extent of the City's home rule authority on top of coordinating the logistical and discovery-related issues related to a newly formed MDL will serve as a source of overall delay for the Equifax MDL proceedings and will not promote the just and efficient conduct of other cases against Equifax. Therefore, the purposes of consolidation are not well-served in transferring the City's lawsuit into the Equifax MDL.

## II. Standing And Class Certification Will Be Key Legal Issues For The MDL, But Neither Is Relevant To The City's Lawsuit.

To date, all of the cases that have been transferred into the Equifax MDL are private class actions, many of which seek certification of a nationwide class of consumers affected by this event.[1] Centralization of these class actions will likely lead to a great conservation of judicial resources and serve the interests of eliminating duplicative discovery and preventing inconsistent pretrial rulings across the country. But the City's case is not a class action. Rather, as a public enforcement action, it is governed by different procedural rules, has different legal issues, and

---

[1] See Transfer Order, *In re Equifax Consumer Data Security Breach Litig.*, Case No. 17-MD-2800, Dkt. 550 at 2 (J.P.M.L. Dec. 6, 2017) (noting the actions immediately at issue "all . . . are putative nationwide and/or statewide consumer class actions).

4

seeks a different kind of damages than class actions. The differences between the transferred class actions and this public enforcement action highlight the impracticality of consolidating the two categories of lawsuits.

A major area of dispute in the class actions will likely be Article III standing. *See* Nicholas Green, "Standing in the Future: The Case for a Substantial Risk Theory of "Injury in Fact" in Consumer Data Breach Class Actions," 58 B.C. L. Rev. 287, 288 (January 2017); *see also In re Equifax Inc., Customer Data Security Breach Litig.*, Case No. 17-MD-2800, Dkt. No. 531 (J.P.M.L. Sept. 11, 2017) (Interested Party Response describing complications of the standing requirement among class actions from different Circuits). Accordingly, it is safe to assume the Northern District of Georgia will devote a fair amount of focus in resolving the standing issue among the class actions from across the nation. None of that, though, will promote the efficient conduct of the City's lawsuit because the City is not required to show consumer injury as a threshold matter for purposes of standing. *City of Chicago v. Purdue Pharma L.P., et al.*, 211 F. Supp. 3d 1058, 1071 (N.D. Ill. 2016) (holding that with respect to its claims under the Ordinance, "The City need not allege injury or causation to state a claim under IFCA").

Class certification is another substantial hurdle on the class action track. Courts are called upon to complete a "rigorous analysis" early in the litigation to resolve this. Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time . . . the court must determine by order whether to certify the action as a class action"); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (a class action may only be certified if the trial court is convinced "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"). The process of ruling on class certification can be prolonged by discovery and evidentiary hearings on the issue. *Mills v. Foremost Ins. Co.*, 511

F. 3d 1300, 1309 (11th Cir. 2008). Certification in data breach litigation can easily take years to get to a decision at the trial level despite courts' case management efforts. *See, e.g., In re Medical Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, Case No. 15-MD-2667, Dkt. No. 36 (N.D. Ind. Feb. 2, 2016) (scheduling order allowed for class certification briefing through Apr. 26, 2017 where initial transfer occurred on Dec. 10, 2015); *In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617, Dkt. No. 285 (N.D. Cal. Sept. 11, 2015) (scheduling certification hearing for May 4, 2017 where initial transfer took place June 12, 2015).

These looming class action issues cause the City concern that its case will be substantially delayed in the MDL process. The prospect of having to idly wait through what might be years of class action litigation that has little to no bearing on the City's case would not be just or efficient.

### III. Allowing The City's Case To Proceed In Illinois Will Not Add Substantial Burden To Equifax.

The cases most closely analogous to the City's lawsuit—enforcement actions brought by other government entities—are not subject to consolidation into the Equifax MDL; these cases will require a pretrial schedule that is not subject to the MDL and in all likelihood will move considerably faster. The Commonwealth of Massachusetts, by and through its Attorney General, sued Equifax in Massachusetts state court asserting state law claims. The Massachusetts complaint was filed September 19, 2017; motion to dismiss briefing is complete, and a hearing on the motion to dismiss is currently set for January 31, 2018. The San Francisco City Attorney has also sued Equifax in California state court asserting violations of state law governing unfair, unlawful, and fraudulent business practices. Equifax filed a demurrer to the complaint on November 21, 2017, and it appears from the San Francisco Superior Court docket that briefing on the demurrer was completed on December 14, 2017.

6

Both of these cases will remain in their respective state courts, and likely will move to discovery considerably faster than the MDL.[2] In any event Equifax will have to respond to discovery requests, produce documents, and file motions on various schedules. These public enforcement actions are more analogous procedurally to the City's case than are the class actions consolidated in the Equifax MDL. And, Equifax can just as easily meet its discovery obligations to the City by coordinating its efforts in those public enforcement cases. In sum, there are no efficiencies to be gained or burdens to be avoided by including the City's case in this MDL.

## CONCLUSION

For the foregoing reasons, the City submits that consolidating its lawsuit with the Equifax MDL will not promote the just and efficient conduct of either the City's lawsuit or the MDL as a whole, nor will it be convenient for the parties, their counsel, and the witnesses. Thus, the City respectfully requests that the JPML vacate the CTO as to the City's lawsuit pending in the Northern District of Illinois.

Date: December 28, 2017	Sincerely,

	*/s/ John L. Hendricks*
	John L. Hendricks
	Deputy Corporation Counsel
	City of Chicago Department of Law
	30 N LaSalle St., Suite 1230
	Chicago, Illinois 60602
	Phone: (312) 744-6975
	Email: John.Hendricks@cityofchicago.org

	*Counsel for Plaintiff City of Chicago*

---

[2] The City notes that Equifax appears to have filed a Motion to Stay in the Massachusetts state court case.

7