# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT |
| This document relates to: | |
| FINANCIAL INSTITUTIONS | Chief Judge Thomas W. Thrash, Jr. |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE FINANCIAL
## INSTITUTIONS' CONSOLIDATED AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................5

    A.    Financial Institutions And Associations Sue Equifax With The Same Cookie-Cutter Conclusory Allegations. ........................5

        1.    The Financial Institution Plaintiffs ................................6

        2.    The Association Plaintiffs ................................................9

        3.    Defendants ......................................................................10

    B.    The Claims At Issue. ...............................................................11

LEGAL STANDARDS ......................................................................................11

    A.    Rigorous Pleading Standards Apply. ....................................11

    B.    Georgia Law Applies To The Common Law Claims. ...........12

ARGUMENT .....................................................................................................13

I.    ALL OF THE PLAINTIFFS LACK ARTICLE III STANDING. .........13

    A.    The FI Plaintiffs Do Not Have Article III Standing. ..........14

        1.    The FI Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating A Cognizable Injury-In-Fact .................................................14

        2.    The FI Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating Traceability. ................22

    B.    The Association Plaintiffs Lack Representational Standing. .........25

II.    ALL OF THE PLAINTIFFS' NEGLIGENCE CLAIMS FAIL. ............27

i

**A.**     **Georgia Law Does Not Recognize Any Duty With Regard To Protecting Consumer Information.** ...........................................**28**

     1.     **After *McConnell III*, Plaintiffs Cannot Establish a General Duty With Respect To Protecting Personal Information.** .................................................**28**

     2.     **Plaintiffs' Allegations Are Even More Attenuated Than Those At Issue In *McConnell III*.** ...............**31**

**B.**     **Equifax Also Had No Duty To "Disclose" The Data Breach To Financial Institutions.** .................................................**34**

**C.**     **Plaintiffs' Allegations Also Fail To Plausibly Plead Causation.** ..................................................................................**35**

**D.**     **Plaintiffs Fail To Sufficiently Allege An Injury Or Damages.** .......**39**

**E.**     **Georgia's Economic-Loss Rule Bars Plaintiffs' Negligence Claims.** .............................................................................**42**

**III.**     **ALL PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS FAIL.** ............**43**

     **A.**     **The Statutes On Which Plaintiffs Rely Do Not Form The Basis For A Negligence *Per Se* Claim.** .............................**43**

        1.     **Plaintiffs Cannot Rely On The GLBA And Its Regulations.** ......................................................**44**

        2.     **Plaintiffs Cannot Rely On The FTC Act § 5 And "Similar State Statutes."** ......................................**46**

     **B.**     **Plaintiffs Fail To Plead Other Elements To Support Their Negligence *Per Se* Claim.** ...........................................**48**

**IV.**     **PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF A CLAIM FOR NEGLIGENT MISREPRESENTATION.** ...............................**49**

**V.**     **PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE CONSUMER STATUTES.** ..............................................**52**

**A.**     **The Court Should Dismiss Plaintiffs' Georgia Fair Business Practices Act Claim.** ...............................................................**52**

    1.     *McConnell III* **Confirms That The Georgia Fair Business Practices Act Does Not Require Safeguarding PII.** ...........................................**52**

    2.     **Plaintiffs Have Not Pled Reliance.** ...........................**53**

    3.     **No Plaintiff Has Alleged Damages Caused By Any Misrepresentation.** ..............................................**53**

    4.     **The GFBPA Forbids Class Actions.** ........................**53**

**B.**     **This Court Should Dismiss Plaintiffs' Claims Under Foreign State Business-Fraud And Consumer-Protection Statutes.** .....................................................................**54**

    1.     **Foreign States' Deceptive-Trade-Practices Laws Cannot Govern Conduct That Took Place In Georgia.** ......**55**

    2.     **Pleading Deficiencies Doom Plaintiffs' Statutory Claims.** ......................................................**57**

        a.     **Plaintiffs Have Failed To Adequately Plead Fraud.** .................................................**57**

        b.     **Plaintiffs Have Failed To Sufficiently Allege Scienter.** ..............................................**58**

        c.     **Plaintiffs' Allegations Of Injury Are Insufficiently Specific Or Substantial To Survive Dismissal.** .....................................**59**

        d.     **Plaintiffs' Claims Under Statutes Requiring Consumer Transactions Should Be Dismissed.** ........**60**

        e.     **Plaintiffs' Claims for Damages Under Statutes Providing Only Equitable Relief Should Be Dismissed.** .................................................**60**

f.    **Plaintiffs' Claims Under The Massachusetts Consumer Protection Act Should Be Dismissed.** ........61

g.    **Plaintiffs' Minnesota Plastic Card Act Claim Fails.** ................................................................61

**VI.   PLAINTIFFS FAIL TO PLEAD VIABLE CLAIMS WITH REGARD TO THE PAYMENT CARD DATA.** ........................................62

**VII.  PLAINTIFFS' ANCILLARY CLAIMS FAIL.** ........................................65

**CONCLUSION** ................................................................67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Mgmt. Grp. L.P. v. Hanham,*
  812 S.E.2d 509 (Ga. Ct. App. 2018)....................................................28

*Ahmed v. Air France-KLM,*
  165 F. Supp. 3d 1302 (N.D. Ga. 2016)................................................65

*Alabama v. U.S. Army Corps of Eng'rs,*
  424 F.3d 1117 (11th Cir. 2005) .........................................................66

*Albany Urology Clinic, P.C. v. Cleveland,*
  528 S.E.2d 777 (Ga. 2000) ..........................................................33, 35

*Alexander v. Sandoval,*
  532 U.S. 275 (2001).........................................................................48

*Allen v. Wright,*
  468 U.S. 737 (1984)...........................................................................2

*Almanza v. United Airlines, Inc.,*
  851 F.3d 1060 (11th Cir. 2017) .........................................................11

*Ambrosia Coal & Constr. Co. v. Morales,*
  482 F.3d 1309 (11th Cir. 2007) .........................................................12

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) .........................................................49

*In re Apple iPhone Antitrust Litig.,*
  11-CV-06714-YGR, 2013 WL 4425720 (N.D. Cal. Aug. 15, 2013)................14

*In re Arby's Rest. Grp. Litig.,*
  1:17-mi-55555-AT, 2018 WL 2128441 (N.D. Ga. 2018) ...........................32, 47

*Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*,
  850 F. Supp. 2d 1371 (S.D. Ga.), *aff'd*, 434 F. App'x 826 (11th
  Cir. 2011) ................................................................................11, 12, 50

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................12, 13, 58

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ................................................................17, 19

*Bellsouth Telecomms., LLC v. Cobb Cty.*,
  802 S.E.2d 686 (Ga. Ct. App. 2017).........................................................43, 44

*Blackford v. Wal–Mart Stores, Inc.*,
  912 F. Supp. 537 (S.D. Ga. 1996) ...................................................................39

*Bonaparte v. Tax Ct.*,
  104 U.S. 592 (1881)............................................................................................55

*Bravo v. United States*,
  577 F.3d 1324 (11th Cir. 2009) .........................................................................31

*Bridgestone Ams. Inc. v. Int'l Bus. Machines Corp.*,
  172 F. Supp. 3d 1007 (M.D. Tenn. 2016) .......................................................571

*Brock v. Avery*, 110 S.E.2d 122 (Ga. Ct. App. 1959) ...................................43, 46, 48

*Bryant v. Progressive Mountain Ins. Co.*,
  243 F. Supp. 3d 1333 (M.D. Ga. 2017) ............................................................51

*Burke v. Johnson*,
  No: 6:16–cv–199–Orl–41TBS, 2016 WL 9503732 (M.D. Fla. June
  27, 2016) ...............................................................................................................65

*Byrd v. English*,
  43 S.E.2D 419 (Ga. 1903)............................................................................37, 38

*Campbell v. Albers*,
  39 N.E.2d 672 (Ill. Ct. App. 1942) ..................................................................55

vi

*City of Atlanta v. Benator*,
    714 S.E.2d 109 (Ga. Ct. App. 2011)................................................................64

*Clapper v. Amnesty Inern. USA*,
    568 U.S. 398 (2013)..............................................................................15, 16, 18

*Collins v. Athens Orthopedic Clinic*
    No. A18A0296, 2018 WL 3134877 (Ga. Ct. App. June 27, 2018).............40, 41

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
    15-CV-01125-MJR, 2017 WL 1551330 (S.D. Ill. May 1, 2017)......................62

*Community Bank. of Trenton v. Schnuck Markets, Inc.*,
    887 F.3d 803 (7th Cir. 2018) .....................................................................*passim*

*Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*,
    153 F. Supp. 2d 101 (D. Conn. 2001)..............................................................38

*Crespo v. Coldwell Banker Mortg.*,
    599 F. App'x 868 (11th Cir. 2014)...................................................................57

*CSX Transp., Inc. v. Williams*,
    608 S.E.2d 208 (Ga. 2005) .......................................................................33, 35

*De Bouse v. Bayer AG*,
    922 N.E.2d 309 (Ill. 2009).............................................................................58

*Dowdell v. Wilhelm*,
    699 S.E.2d 30 (Ga. Ct. App. 2010).................................................................35

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n.*,
    678 F.3d 659 (8th Cir. 2012) ..........................................................................57

*Fejzulai v. Sam's West, Inc.*,
    205 F. Supp. 3d 723 (D.S.C. 2016) .................................................................54

*Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*,
    194 F.3d 1227 (11th Cir. 1999) ..........................................................22, 23, 24

*Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*,
    233 So.3d 1207 (Fla. 3d DCA 2017)...............................................................55

*Foxworthy, Inc. v. CMG Life Servs., Inc.*,
   No. 1:11–cv–2682, 2012 WL 1269127 (N.D. Ga. Apr. 16, 2012) .............50, 51

*Fulton v. Hecht*,
   580 F.2d 1243 (5th Cir. 1978) ...........................................................................47

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*,
   608 S.E.2d 636 (Ga. 2005) ................................................................................42

*Georgia Cemetery Ass'n, Inc. v. Cox*,
   353 F.3d 1319 (11th Cir. 2003) ........................................................................27

*Giles v. SunTrust Mortgage Inc.*,
   No. 1:13-CV-2992-RWS, 2014 WL 2779527 (N.D. Ga. June 19,
   2014) ..................................................................................................................65

*Goldstein, Garber & Salama, LLC v. J.B.*,
   797 S.E.2d 87 (Ga. 2017) ..................................................................................39

*Greater Atlanta Home Builders Ass'n, Inc. v. City of Atlanta, Ga.*,
   149 F. App'x 846 (11th Cir. 2005).............................................................26, 27

*Griffin v. Coca-Cola Enters., Inc.*,
   686 F. App'x 820 (11th Cir. 2017) ...................................................................13

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987) ........................................................................40

*Guin v. Brazos Higher Educ. Serv. Corp.*,
   No. CIV. 05-668 RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7,
   2006) ..................................................................................................................45

*Hammond v. Bank of New York Mellon Corp.*,
   No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June
   25, 2010) ............................................................................................................24

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*,
   479 S.E.2d 727 (Ga. 1997) ..............................................................................492

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989)....................................................................................55, 56

*Heinisch v. Bernardini*,
   CV414-221, 2014 WL 5872698 (S.D. Ga. Nov. 12, 2014)................................39

*Helpling v. Rheem Mfg. Co.*,
   1:15-CV-2247-WSD, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ...............42

*Hines v. MidFirst Bank*,
   No. 1:12-CV-2527-TWT, 2013 WL 609401 (N.D. Ga. Jan. 8,
   2013) ...................................................................................................................57

*Hite v. Anderson*,
   643 S.E.2d 550 (Ga. Ct. App. 2007)...................................................................48

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992)............................................................................................38

*In re: The Home Depot Customer Data Breach Litig.*,
   No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18,
   2016) .........................................................................................................*passim*

*Inman v. American Paramount Financial*,
   517 F. App'x 744 (11th Cir. 2013) .....................................................................50

*Kaminer v. Canas*,
   653 S.E.2d 691 (2007) ........................................................................................42

*Katz v. Pershing*,
   806 F. Supp. 2d 452 (D. Mass. 2011) .................................................................61

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012).................................................................................19

*KMS Rest. Corp. v. Wendy's Int'l, Inc.*,
   361 F.3d 1321 (11th Cir. 2004) ..........................................................................31

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) ............................................................................17

*LabMD v. Fed. Trade Comm'n*,
   — F.3d —, 2018 WL 3056794 (11th Cir. June 6, 2018) ............................47, 66

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999) .......................................................35, 38

*Lisk v. Lumber One Wood Preserving, LLC*,
  792 F.3d 1331 (11th Cir. 2015) ...............................................54

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................................15, 22

*Marshall v. McIntosh Cty.*,
  759 S.E.2d 269 (2014) ............................................................40

*Massih v. Jim Moran & Assocs., Inc.*,
  542 F. Supp. 2d 1324 (M.D. Ga.), *aff'd in part*, 315 F. App'x 177
  (11th Cir. 2008)......................................................................42

*McConnell v. Dep't of Labor*,
  787 S.E.2d 794 (Ga. Ct. App. 2016) (*McConnell I*).............29, 30, 31

*McConnell v. Dep't of Labor*,
  805 S.E.2d 79 (Ga. 2017) (*McConnell II*) ............................30

*McConnell v. Georgia Department of Labor*,
  — S.E.2d —, 2018 WL 2173252 (Ga. Ct. App. May 11, 2018)
  (*McConnell III*) ...............................................................*passim*

*McGill & Sons, Inc. v. Flood & Assocs., Inc.*,
  147 Ga. App. 3 (1978) ............................................................38

*Nat'l All. for Mentally Ill, St. Johns Inc. v. Bd. of Cty. Comm'rs of St.
  Johns Cty.*,
  376 F.3d 1292 (11th Cir. 2004) ...............................................26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  241 F.R.D. 77 (D. Me. 2007)...................................................54

*New York Life Ins. Co. v. Grant*,
  57 F. Supp. 3d 1401 (M.D. Ga. 2014) ....................................50

*Next Century Commc'ns Corp. v. Ellis*,
  318 F.3d 1023 (11th Cir. 2003) ...............................................51, 58

*Norman v. Jones Lang Lasalle Americas, Inc.*,
627 S.E.2d 382 (Ga. Ct. App. 2006)........................................................43, 48

*Oliver v. SD-3C LLC*,
No. C 11-01260 JSW, 2015 WL 10890656 (N.D. Cal. Sept. 30,
2015) ................................................................................................................14

*Parks v. AT & T Mobility, LLC*,
No. CIV_09-212-D, 2010 WL 830000 (W.D. Okla. Mar. 4, 2010) .................57

*Rasnick v. Krishna Hosp., Inc.*,
713 S.E.2d 835 (Ga. 2011) .............................................................................30

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011) ........................................................................17, 19

*Reinbrecht v. Walgreen Co.*,
742 N.W.2d 243 (Neb. Ct. App. 2007).............................................................60

*Remax the Mountain Company v. Tabsum, Inc.*,
634 S.E.2d 77 (Ga. Ct. App. 2006)..................................................................37

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .......................................................................17

*Rodi v. S. New England School of Law*,
532 F.3d 11 (1st Cir. 2008)..............................................................................58

*Sawyer v. Market Am., Inc.*,
661 S.E.2d 750 (N.C. Ct. App. 2008)...............................................................55

*Smith v. Ocwen Financial*,
488 F. App'x 426 (11th Cir. 2012) ..................................................................50

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)..............................................................59

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016)......................................................................13, 14, 15

*In re Stand 'n Seal, Prods. Liability Litig.*, No. 1:07-MD-1804-TWT,
2009 WL 2998003 (N.D. Ga. Sept. 15, 2009) ............................................12, 13

*State Farm Mut. Automobile Ins. Co. v. Campbell*,
538 U.S. 408 (2003)........................................................................................55, 56

*Stires v. Carnival Corp.*,
243 F. Supp. 2d 1313 (M.D. Fla. 2002)..............................................................57

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ......................................................................17, 59

*Tatum v. Oberg*,
650 F. Supp. 2d 185 (D. Conn. 2009)..................................................................57

*Tiismann v. Linda Martin Homes Corp.*,
637 S.E.2d 14 (Ga. 2006) ...................................................................................53

*Torres v. Wendy's Co.*,
195 F. Supp. 3d 1278 (M.D. Fla. 2016) ........................................................17, 59

*Union Camp Corp. v. S. Bulk Indus.*, *Inc.*,
386 S.E.2d 866 (Ga. Ct. App. 1989)...................................................................37

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)............................................................................................23

*Wells Fargo Bank, N.A. v. Jenkins*,
744 S.E.2d 686 (Ga. 2013) .........................................................................*passim*

*Willis v. Georgia N. Ry. Co.*,
314 S.E.2d 919 (Ga. Ct. App. 1984)...................................................................38

*Wis. Indus. Energy Grp., Inc. v. Pub. Serv. Comm'n*,
819 N.W.2d 240 (Wis. 2012)..............................................................................55

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) .........................................................................22

## Statutes

15 U.S.C. § 45 .................................................................................................46, 47

15 U.S.C. § 6801(a) ..........................................................................................44, 45

18 U.S.C. § 1030 (a)(5)(C) .....................................................................................39

Minn. Stat. § 325D.45(1) ........................................................................................60

Minn. Stat. § 325E.64 ..............................................................................................61

N.Y. Gen. Bus. Law § 349 .......................................................................................55

N.Y. Gen. Bus. Law § 899-aa ..................................................................................34

Neb. Rev. Stat. § 87-303 ..........................................................................................60

O.C.G.A. § 10-1-399(a) .......................................................................................53, 54

O.C.G.A. § 10-1-912 ................................................................................................34

O.C.G.A. § 13–6–11 .................................................................................................65

## Other Authorities

16 C.F.R. §314 .........................................................................................................44

16 C.F.R. § 314.1 .....................................................................................................45

16 C.F.R. § 314.4 .....................................................................................................45

Fed. R. Civ. P. 9(b) ..................................................................................................12

Fed. R. Civ. P. 65(d)(1) ............................................................................................66

**INTRODUCTION**

Named Plaintiffs are financial institutions who complain that Equifax's data breach had such ripple effects on the economy that any bank, credit union, or credit association may sue it.  That attenuated theory of liability is unprecedented.  This case is unlike other data-breach cases in which financial institutions alleged that they were injured because they incurred expenses in canceling and re-issuing customers' payment cards or reimbursing fraudulent charges.

Plaintiffs do not plausibly assert that they incurred ***any*** of these expenses related to payment cards.  As Plaintiffs know, the data breach impacted only 209,000 payment cards for U.S. consumers.  Plaintiffs do not plausibly allege that they issued any of these impacted cards.  And not a single Plaintiff complains that the breach compelled it to cancel or reissue a payment card, to reimburse a consumer for a fraudulent charge, to close a fraudulently opened account, or even that a single fraudulent charge has occurred.

Instead, Plaintiffs have a different—and unprecedented—theory of how they were allegedly injured.  Plaintiffs complain that they were injured because the Equifax data breach purportedly impacted the "entire financial services ecosystem," and, in response, they ***voluntarily*** incurred costs to investigate and monitor the impact of the data breach and to communicate with their customers

1

about it.  In short, Plaintiffs' theory seeks to hold Equifax responsible for services that financial institutions voluntarily *choose* to provide to their customers.

Accepting this theory would effectively make every company that falls victim to a cyber-theft of *consumer* personal information liable to every *financial institution* for alleged ripple effects across entire "ecosystems."  No court has ever recognized such a boundless theory of recovery.  Consumer information was accessed, not information that belongs to Plaintiffs.  And Equifax is aware of no prior case in which *financial institutions* asserted claims based the theft of consumer information like Social Security Numbers, names, and dates of birth.

This Court should reject Plaintiffs' invitation to be the first court to recognize this far-fetched liability theory.  Plaintiffs' unprecedented claims suffer from numerous incurable defects:

*First*, the Complaint is devoid of plausible factual allegations necessary to support Article III standing.  Plaintiffs do not allege any cognizable injuries, let alone facts establishing that their "injuries" are traceable to Equifax's conduct.  Ultimately, Plaintiffs' speculative theory of recovery strikes at the very heart of the standing doctrine, which "embraces . . the general prohibition on a litigant's raising another person's legal rights [and] the rule barring adjudication of generalized grievances."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Because Plaintiffs fail to

plead facts to support standing, the Court should dismiss the Complaint for lack of jurisdiction.

**Second**, Plaintiffs fail to establish duty or causation as is required to proceed with their negligence-based claims.   The Georgia Court of Appeal's recent decision in *McConnell v. Georgia Department of Labor*, — S.E.2d —, A16A0655, 2018 WL 2173252, at *6 (Ga. Ct. App. May 11, 2018) (*McConnell III*), forecloses Plaintiffs' arguments that Equifax owed a duty to Plaintiffs to safeguard their customers' information.   Even setting aside *McConnell III*, Plaintiffs' claims here are nothing like the claims in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*.   There, this Court allowed plaintiffs—financial institutions that "issued and owned payment cards compromised by [a] data breach" at Home Depot—to proceed with claims alleging that hackers stole information concerning those payment cards and "then sold the information on the internet to thieves who made large numbers of fraudulent transactions on credit and debit cards issued to Home Depot customers."   No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *1–2 (N.D. Ga. May 18, 2016).   The thrust of this case is not based upon payment cards "issued and owned" by Plaintiffs, and there are no similar allegations that any information was sold or that any fraudulent transactions were made.

*Third*, Plaintiffs' attempt to shoehorn their claims into various statutes and regulations to establish "negligence *per se*" also fails. None of the statutes or regulations that Plaintiffs cite sets out any specific statutory duty to protect personally identifiable information.  Nor have Plaintiffs met their burden of pleading facts sufficient to demonstrate the other elements of negligence *per se*.

*Fourth*, Plaintiffs' claims for negligent misrepresentation are deficient. Plaintiffs identify no alleged misrepresentations, let alone how any of the Plaintiffs *relied* on any representations.  Nor have Plaintiffs pled any economic injury.

*Fifth*, Plaintiffs' claims under the Georgia Fair Business Practices Act and other state statutes fail.  Neither Georgia law nor these other States' laws impose duties on Equifax to safeguard consumers' personally identifiable information or to notify financial institutions of a data breach, and, in any event, the foreign state statutes do not apply extraterritorially.  Plaintiffs' pleadings are also defective. Their claims allege intentional misrepresentations and thus sound in fraud, but Plaintiffs did not plead their allegations with the requisite particularity.  Nor do Plaintiffs adequately plead either that they relied on any alleged misrepresentations or that they engaged in any requisite consumer transactions.

*Sixth*, the Plaintiffs that purport to seek damages related to the hackers' theft of 209,000 payment card numbers do not offer sufficient factual allegations to state

a claim.  While acknowledging that the card brands notified Plaintiffs as to which payment cards were impacted, not one Plaintiff sufficiently alleges that it issued an impacted card(s) or that any of those cards were used in connection with a fraudulent transaction.  Moreover, financial institutions do not have viable tort claims against a merchant who was a victim of a data breach.  Instead, financial institutions must rely on their contractual arrangements with card brands for recovery of any alleged payment-card related losses.

Equifax is committed to maintaining the stability of the United States banking system and to protecting consumer information from being used for improper purposes.    But Plaintiffs' generalized grievances and claims of unspecified harm fail to state any cause of action and are not the kinds of claims which the judiciary should handle.  This Court should reject Plaintiffs' attempt to shift costs related to their own data-security programs and fraud-prevention services to Equifax.  The Complaint should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Financial Institutions And Associations Sue Equifax With The Same Cookie-Cutter Conclusory Allegations.

This case involves three sets of Plaintiffs—two types of financial institution plaintiffs and one set of credit-union associations—that have sued various Equifax

entities.[1]   Although they banded together to file a purported class action lawsuit, Plaintiffs allege highly disparate claims and harms arising from the theft of their *customers'* personally identifiable information ("PII").

### 1.   The Financial Institution Plaintiffs

This case involves two sets of "Financial Institution" ("FI") Plaintiffs, which consist of 46 small banks and credit unions from 29 States.   Of these FI Plaintiffs, half do not allege that they issued any payment cards affected by the Equifax data breach, while the other half (the "FI Card Plaintiffs") do so only in the most conclusory way, as described below.[2]

---

[1] For the Motion to Dismiss only, Equifax accepts the factual allegations as true.

[2] The FI Plaintiffs that do not allege to have issued payment cards include (1) Alcoa Community Federal Credit Union; (2) Atlantic City Federal Credit Union; (3) Aventa Credit Union; (4) DL Evans Bank; (5) Durand State Bank; (6) Embark Credit Union; (7) Financial Health Federal Credit Union; (8) First Choice Federal Credit Union; (9) First Nebraska Credit Union; (10) First State Bank; (11) FNBC Bank; (12) Gerber Federal Credit Union; (13) Greater Cincinnati Credit Union; (14) Jonah Bank of Wyoming; (15) ICUL Service Corporation; (16) Bank of New Hampshire; (17) Oteen VA Federal Credit Union; (18) Peoples National Bank; (19) Pinnacle Bancorp; (20) Putnam Bank; (21) Bank of Ripley; (22) Texas First Bank; and (23) Bank of Zachary. *See generally* Compl., ¶¶ 12, 15–16, 18–19, 21–22, 24, 26–30, 34–35, 37–38, 40–43, 53.   The FI Plaintiffs that allege to have issued payment cards include (1) Army Aviation Center Federal Credit Union; (2) ASI Federal Credit Union; (3) Consumers Cooperative Credit Union; (4) Elements Financial Federal Credit Union; (5) Firefly Credit Union; (6) First Financial Credit Union; (7) Halliburton Employees' Federal Credit Union; (8) Heritage Federal Credit Union; (9) Hudson River Community Credit Union; (10) Bank of Louisiana; (11) Peach State Federal Credit Union; (12) SeaComm Federal Credit Union; (13)

6

Each of the 46 FI Plaintiffs makes the same two allegations regarding the harm they purportedly suffered.  As "participant[s] in the country's credit reporting system," the FI Plaintiffs allege that the Equifax data breach spurred them to incur "direct out of pocket costs related to undertaking an investigation of the impact of the Equifax Data Breach, increased monitoring for potentially fraudulent banking activity, and communicating with customers regarding their concerns about identity theft and the safety of their accounts held at the financial institution in light of the Equifax Data Breach."  *See generally* Compl., ¶¶ 12–57.  Plaintiffs also allege "a certainly impending risk of future harm, in the form of future fraudulent banking activity . . . which will continue into the foreseeable future, and will require [each FI Plaintiff] to incur significant costs and expenses in order to reduce and mitigate this risk of harm."  *See generally id.*

The 23 FI Card Plaintiffs make these same allegations alongside a few additional allegations.  *See generally* Compl., ¶¶ 13–14, 17, 20, 23, 25, 31–33, 36, 39, 44–52, 54–56.  In particular, these Plaintiffs contend that they "received fraud

---

SELCO Community Credit Union; (14) Services Credit Union; (15) Seven Seventeen Credit Union, Inc.; (16) Sky Federal Credit Union; (17) SEFCU; (18) Summit Credit Union; (19) The Summit Federal Credit Union; (20) Suncoast Credit Union; (21) UMassFive College Federal Credit Union; (22) Washington Gas Light Federal Credit Union; and (23) Wright-Patt Credit Union.  *See generally* Compl., ¶¶ 13–14, 17, 20, 23, 25, 31–33, 36, 39, 44–52, 54–56.

alerts from one or more of the payment card brands identifying payment cards [they] issued that were compromised" and incurred "direct out of pocket costs to protect any deposit, transaction, checking, or other affected payment card accounts, refunding any cardholder for any unauthorized transactions, responding to a higher volume of cardholder complaints, confusion, and concern, and increasing fraud monitoring efforts with regard to the compromised payment cards." *See id*.

None of the Plaintiffs present any allegations regarding their individual claims.  Only 209,000 payment card numbers were accessed, and the FI Card Plaintiffs do not specify how many compromised cards, if any, they allegedly issued. *See id*., ¶¶ 166, 188.  Nor do the FI Card Plaintiffs offer a single factual allegation about what type of costs they undertook to protect against fraudulent charges or purported refunds they issued for fraudulent charges.  The FI Card Plaintiffs also do not allege plausible facts that they were forced to cancel cards or that they incurred any costs with respect to reissuing cards.  Nor does a single Plaintiff allege facts about what particular costs it undertook to investigate the impact of the data breach, to increase monitoring, or to communicate with customers.  And not a single Plaintiff alleges how these investigation, monitoring, and communicating costs are distinct from the fraud-prevention and security costs that FIs would otherwise provide even in the absence of the Equifax data breach.

8

### 2.      The Association Plaintiffs

The Complaint alleges claims on behalf of 25 "associations or leagues" (the "Association Plaintiffs").  Compl., ¶¶ 58–84.[3]  The Association Plaintiffs allege that, "[i]n light of the magnitude of the Equifax data breach and the destabilization of the credit reporting industry that it has caused, the Association Plaintiffs' members are subject to a greater risk of fraudulent banking activity, which will continue into the foreseeable future, [and] that has required and will continue to require the Association Plaintiffs' members to incur significant costs and expenses in order to reduce and mitigate this risk of harm."  *Id*., ¶ 58.  The Association Plaintiffs are "non-class plaintiffs" and seek equitable relief only.  *Id*., ¶ 59.

Like the FI Plaintiffs, the Association Plaintiffs do not allege even a single individualized factual allegation.  *See id*., ¶¶ 60–84.  Instead, the Association

_____

[3] The Association Plaintiffs include (1) Credit Union National Association; (2) Independent Community Bankers of America; (3) California Credit Union League; (4) Carolinas Credit Union League; (5) Credit Union League of Connecticut; (6) Cooperative Credit Union Association; (7) Heartland Credit Union Association; (8) Illinois Credit Union League; (9) Indiana Credit Union League; (10) Iowa Credit Union League; (11) MD/DC Credit Union Association; (12) Michigan Credit Union League; (13) Minnesota Credit Union Network; (14) Mississippi Credit Union League; (15) Montana Credit Union League; (16) Mountain West Credit Union Association; (17) Nebraska Credit Union League; (18) Nevada Credit Union League; (19) New York Credit Union Association; (20) Ohio Credit Union League; (21) Pennsylvania Credit Union Association; (22) League of Southeastern Credit Unions & Affiliates; (23) Association of Vermont Credit Unions; (24) Virginia Credit Union League; and (25) Wisconsin Credit Union League.  *See* Compl., ¶¶ 60–85.

Plaintiffs rely on the same copy-and-paste conclusory statement: each "assert[s] its claims on behalf of its members because: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to its purpose of, among other things, supporting initiatives that promote the financial stability of its members; and (c) the participation of its members is not needed in order to obtain the injunctive relief requested." *Id.*

### 3.   Defendants

Plaintiffs assert claims against Equifax Inc. ("Equifax Inc.") and Equifax Information Services LLC ("EIS," collectively, "Equifax" or "Defendants"). Compl., ¶¶ 86–87.   Throughout the Complaint, Plaintiffs ignore the distinction between Equifax Inc. and EIS, making allegations only as to "Equifax."

Despite Plaintiffs' disregard for their corporate forms, Equifax Inc. and EIS are distinct entities.   Equifax Inc. is a leading global provider of information, human-resources, and data-analytics services for businesses, governments, and consumers.   Information stored on ***Equifax Inc.'s*** servers was accessed during the data breach.   Defendant EIS is a subsidiary of Equifax Inc. and is a national consumer reporting agency that stores and furnishes consumer credit reporting data.   EIS's records were ***not*** accessed during the data breach.

10

## B.     The Claims At Issue.

Plaintiffs filed the instant Complaint on May 30, 2018.  *See* Dkt. No. 390 ("the Complaint" or "Compl.").  The Complaint asserts five claims on behalf of a putative nationwide class of all U.S. Financial Institutions "that do business with customers" whose personal information was exposed as a result of the data breach—in practical terms, a class consisting of almost every financial institution in the country.  Specifically, the Complaint asserts nationwide claims for (i) negligence; (ii) negligence *per se*; (iii) negligent misrepresentation, and (iv) declaratory and equitable relief.  Compl., ¶¶ 280–338, 605–612.  The Complaint further asserts a host of claims under various State consumer protection/fraud acts and unfair or deceptive trade practices statutes, on behalf of various putative statewide subclasses.  *See id.*, ¶¶ 339–604.

## LEGAL STANDARDS

## A.     Rigorous Pleading Standards Apply.

Complaints must contain factual allegations that "state a claim for relief that is plausible—and not merely possible." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arch Ins. Co. v. Clements, Purvis*

& *Stewart, P.C.*, 850 F. Supp. 2d 1371, 1373 (S.D. Ga.), *aff'd*, 434 F. App'x 826 (11th Cir. 2011).   In assessing the Complaint under Rule 12(b)(6), the Court accepts as true all factual allegations contained therein, but is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "Where a Complaint lacks a sufficient factual basis upon which the Court could infer the existence of an essential element, dismissal is appropriate."   *Arch Ins. Co.*, 850 F. Supp. 2d at 1374.

The standard is higher for claims of fraud.   A plaintiff must plead fraud "with particularity."   Fed. R. Civ. P. 9(b).   Pleading with sufficient particularity requires that the complaint identify "the precise statements, documents, or misrepresentations made; … the time and place of and persons responsible for the statement[s]; … the content and manner in which the statements misled the plaintiffs; and … what the Defendants gained by the alleged fraud."   *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

### B.     Georgia Law Applies To The Common Law Claims.

Although Plaintiffs hail from numerous States, they do not identify any foreign statute that governs their common-law claims, and instead plead that "the common law of Georgia applies to the nationwide common law claims of all Nationwide Class members."   Compl., ¶ 279.   This Court should presume that

12

Georgia common law governs those claims. *See In re Stand 'n Seal, Prods. Liability Litig.*, No. 1:07-MD-1804-TWT, 2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009) ("If the parties do not identify any foreign statutes in their pleadings, it is presumed that no foreign statutes are involved.") (Thrash, J.).[4]

## ARGUMENT

## I.   ALL OF THE PLAINTIFFS LACK ARTICLE III STANDING.

Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies. *Spokeo*, 136 S.Ct. at 1547. To establish standing under Article III, each Plaintiff bears the burden of showing that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. Plaintiffs bear the burden of presenting allegations to support Article III standing that are sufficient to satisfy the *Iqbal* and *Twombly* pleading standards. *See, e.g.*, *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017) (affirming dismissal because plaintiff "failed to allege facts sufficient to establish her standing" under *Iqbal*).

---

[4] Equifax merely accepts these allegations as true for purposes of this Motion to Dismiss. The Company respectfully preserves its ability to raise the argument that Georgia law may not apply to the common-law claims at later stages in the litigation, including without limitation the summary-judgment, class-certification, and trial stages.

As to the elements necessary to establish Article III standing, Plaintiffs' allegations here fall short.  Rather than making individualized allegations as to injury or traceability, the FI Plaintiffs' allegations mirror each other—with the lone change being an additional copy-and-paste sentence included for the FI Card Plaintiffs.  Compl., ¶¶ 12–57.  The Association Plaintiffs' allegations suffer from the same flaw.  *Id.*, ¶¶ 58–84.  No putative class actions—data breach or otherwise—can proceed on the basis of the generic allegations found in the Complaint.  *See, e.g.*, *Oliver v. SD-3C LLC*, No. C 11-01260 JSW, 2015 WL 10890656, at *6 (N.D. Cal. Sept. 30, 2015) (dismissing claims where Plaintiffs relied on "catch-all allegation[s]").  Each Plaintiff must allege facts to support its individual claim.  *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, 11-CV-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013) ("Plaintiffs do not satisfy Article III standing with collective allegations . . . Plaintiffs must allege facts showing that each named Plaintiff has personally suffered an injury-in-fact.").

## A.   The FI Plaintiffs Do Not Have Article III Standing.

### 1.   The FI Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating A Cognizable Injury-In-Fact.

No Plaintiff has alleged plausible facts sufficient to demonstrate an injury-in-fact, which is an "irreducible" constitutional minimum for standing.  *Spokeo*, 136 S. Ct. at 1552.  To establish an injury-in-fact, a plaintiff must show that its

injury is "concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* at 1547 (quotation marks omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564–65 n.2 (1992). The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Inern. USA*, 568 U.S. 398, 409 (2013) (alternation and quotations omitted). These requirements for alleging an injury-in-fact apply equally in the class-action context. *See Spokeo*, 136 S. Ct. at 1547 n.6.

The FI Plaintiffs' alleged injuries are the very definition of speculative and conjectural. Plaintiffs' primary theory of harm is focused on actions they ***might*** take or costs they ***may*** incur due to the theft of consumers' PII. *See* Compl. ¶¶ 234–61. Plaintiffs also assert that they are harmed because of what they anticipate third-party actors—the hackers, their customers, or government regulators—***might do*** in the future. *See, e.g.*, Compl. ¶ 254 ("Financial institutions also may face increased regulatory compliance costs going forward as a result of the Data Breach."); *id*. ¶ 259 ("Financial institutions are also harmed by the chilling effect the Data Breach has and will have on consumers' willingness to

seek extensions of credit."). Many of their alleged harms are focused on mitigating those hypothetical risks. *See*, *e.g.*, *id.*, ¶ 244 (FI Plaintiffs "have incurred costs to investigate the specific impact of the Data Breach on their individual institution, evaluate their authentication policies, protocols, procedures, and measures, and increase monitoring for and awareness of fraudulent banking activity."). Plaintiffs do not offer any allegations about transactions that have occurred. Plaintiffs do not identify a single customer of theirs that the data breach purportedly affected.

None of the alleged harms is cognizable. The FI Plaintiffs do not allege that Equifax's conduct required them to investigate the data breach or to communicate their concerns with their customers. *See*, *e.g.*, *id.* ¶ 235 (failing to specify why they were "obligated to investigate the impact of the Equifax Data Breach" or what injury they suffered in doing so). Plaintiffs appear to have taken these steps largely for commercial reasons. *See*, *e.g.*, *id.* ¶¶ 241–42 (third-parties **recommended** that financial institutions should analyze the data breach and adopt heightened fraud detection methods). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper*, 133 S.Ct. at 1151. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.*

16

Numerous courts have applied this rule in the data-breach context, concluding that mitigation efforts following a data breach do not confer standing. *See*, *e.g.*, *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (rejecting argument that "the costs . . . incurred to mitigate . . . risk of identity theft, including time they spent reviewing information about the breach and monitoring their account information, constitute[d] an injury in fact for purposes of standing"); *Beck v. McDonald*, 848 F.3d 262, 276–77 (4th Cir. 2017) (holding that "self-imposed harms cannot confer standing"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (concluding that "alleged time and money expenditures to monitor . . . financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury'"); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) (same). The Court should apply the same rule here.[5]

---

[5] Some courts have held that plaintiffs have standing where the plaintiff has sufficiently pled facts demonstrating that the risk of harm is imminent. *See*, *e.g.*, *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) (standing where there were factual allegations that identity theft had occurred); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (standing where allegations included that a thief stole a laptop computer containing the unencrypted names, addresses and social security numbers of approximately 97,000 Starbucks employees, and at least one plaintiff alleged that the information had been used to

The alleged facts of this case are entirely distinct from those in *Home Depot* where this Court denied the defendant's motion to dismiss for lack of standing. 2016 WL 2897520, at *3. Unlike here, the *Home Depot* plaintiffs—issuers of payment cards—pled that hackers stole payment card information from Home Depot and then "sold the information on the internet to thieves who made large numbers of fraudulent transactions on credit and debit cards issued to Home Depot customers." *Id.* at *1. The plaintiffs also included allegations explaining why these fraudulent transactions required them to spend money "cancel[ing] and reissu[ing] cards compromised in the data breach," "refund[ing] fraudulent charges," "investigat[ing] fraudulent charges," and "monitoring . . . customer fraud." *Id.* at *3. Unlike the "harm" alleged here, this Court found the "injuries" in Home Depot were "not speculative and are not threatened future injuries, but [were] actual, current, monetary damages." *Id.* In contrast, the FI Plaintiffs in this case have not pled facts showing that a ***single*** fraudulent transaction took place, much less one that required them to undertake any of these costs. The majority of Plaintiffs do not even allege that they issued potentially impacted payment cards.

---

open an account). There are no such allegations here, and regardless, the FI Plaintiffs' theory of harm is too attenuated to support standing.

18

The FI Plaintiffs' alleged "harm" based on increased risk of future identity theft to their customers is equally insufficient.   In the data breach context, numerous courts have held that this theory of harm is "too speculative to constitute an injury-in-fact" for plaintiffs to pursue.   *Beck*, 848 F.3d at 274; *see, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) (brokerage account-holder's increased risk of unauthorized access and identity-theft theory insufficient to constitute "actual or impending injury" after defendant failed to properly maintain an electronic platform containing her account information, because plaintiff failed to "identify any incident in which her data has ever been accessed by an unauthorized person"); *Reilly*, 664 F.3d at 40, 44 (plaintiff-employees' increased risk of identity-theft theory too hypothetical and speculative to establish "certainly impending" injury-in-fact after unknown hacker penetrated payroll system).

Moreover, even courts that recognize this theory of standing have done so only where the plaintiffs themselves actually faced risks of identity theft and the allegations "sufficed to push the threatened injury of future identity theft beyond the speculative to the sufficiently imminent."   *Beck*, 848 F.3d at 274.   Unlike in those cases, the FI Plaintiffs have not alleged a single fact that any of their consumers' information was used in a fraudulent transaction, much less that any of the FI Plaintiffs reimbursed any costs.   This case is thus much more like those in

19

which courts determined that there was no standing.  *See, e.g.*, *id.* at 274–75 (concluding that a similar theory of "harm" was not cognizable in part because the plaintiffs "uncovered no evidence that the information contained on the stolen laptop has been accessed or misused or that they have suffered identity theft").

Nor have the 23 FI Card Plaintiffs alleged a cognizable injury.  Instead, the FI Card Plaintiffs make the generic allegation that they "issued payment cards that were compromised by the Data Breach."  No FI Card Plaintiff actually alleges facts showing that any affected payment card has been subject to fraudulent charges.  *See* Compl., ¶¶ 13–14, 17, 20, 23, 25, 31–33, 36, 39, 44–52, 54–56.

This omission is particularly glaring in light of the allegation that Visa and Mastercard provided the FI Card Plaintiffs with alerts identifying the specific payment card numbers that were potentially exposed.  *Id*., ¶¶ 191–92.[6]  In other words, despite knowing exactly which cards were impacted, and that the unauthorized access occurred a year ago, ***Plaintiffs have not alleged that a single***

---

[6] When a data breach jeopardizes credit card accounts, Visa, MasterCard and other card associations typically issue private Compromised Account Management System ("CAMS") alerts to banks that issue their cards.  These CAMS alerts notify those institutions of "affected card numbers of [consumers] who may have been impacted" so that banks can re-issue the cards.  Kelly Clay, WHY TARGET THINKS ITS CUSTOMERS SHOULDN'T  PANIC AFTER DATA BREACH, *available at* https://www.forbes.com/sites/kellyclay/2013/12/20/why-target-customers-shouldnt-panic-after-data-breach/.

***fraudulent charge was made on the impacted cards.***   And, indeed, the dearth of allegations is perhaps unsurprising because only 209,000 credit card numbers were accessed, and the FI Plaintiffs do not even specify plausible facts regarding whether they issued those compromised cards.  *See supra* Background Section.

This paucity of allegations is different from other payment card data-breach claims that have survived the pleading stage.  For example, in *In re Home Depot*, the financial institution plaintiffs alleged that the stolen payment card data of 56 million consumers was posted for sale on the dark web; that following the data breach there was a "sharp uptick in debit card fraud and that the fraud . . . could be traced to cards that had all been recently used at Home Depot"; and that there would be "an average of $332 in fraudulent charges" made on each impacted card.  *Home Depot*, No. 14-md-2583-TWT (N.D. Ga.) (Dkt. No. 104, FI Plaintiffs' Consol. Compl., ¶¶ 146–154, 190).   In contrast, although some of Plaintiffs conclusorily plead that they have had to expend money protecting accounts, responding to cardholders, and increasing fraud-monitoring efforts, they have not alleged that a single fraudulent transaction occurred such that these steps were justifiable.  These FI Plaintiffs' expenditures were therefore voluntary; they reflect only that these FI Plaintiffs have "inflict[ed] harm on themselves based on their

fears of hypothetical future harm." *Clapper*, 133 S.Ct. at 1151.[7]

### 2. The FI Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating Traceability.

Even if the FI Plaintiffs had alleged a sufficient injury-in-fact—and they have not—the "demonstration of [that] injury is necessary to prove standing, [but] is not sufficient." *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999). The traceability element of Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks omitted). Furthermore, the "causal connection cannot be too attenuated." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1274 (11th Cir. 2001). To meet the traceability requirement, the FI Plaintiffs must allege facts demonstrating "that the injury is

---

[7] Plaintiffs appear to allege a few other injuries, but they are too speculative to constitute cognizable injuries-in-fact. These include that Plaintiffs will be "forced to expend additional customer service resources assisting their concerned customers" (Compl., ¶ 253); "may face increased regulatory compliance costs going forward" (*id.*, ¶ 254); and will suffer unspecified "lost profits and reputational harm" as well as a chilling effect on consumers' willingness to seek credit (*id.*, ¶¶ 255–260). Plaintiffs do not allege any facts, however, to support these allegations. Indeed, they do not, for example, point to a single example in which any of these alleged harms have occurred.

indeed fairly traceable to the defendant's acts or omissions." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977).

The Eleventh Circuit's decision in *Florida Association of Medical Equipment Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, demonstrates the insufficiency of Plaintiffs' speculative allegations. In that case, medical equipment suppliers and an association of medical equipment suppliers challenged a medical-supply bidding process that a federal agency had initiated on the ground that the agency had failed to comply with a federal statute designed to ensure public access and participation. *Id*. at 1229. The district court denied the plaintiffs' petition for a preliminary injunction "on the basis that [the plaintiffs] had not pointed to any injury traceable to the alleged [statutory] violation which could be redressed by the requested injunctive relief." *Id*. The Eleventh Circuit affirmed, agreeing with "the district court that [the plaintiffs'] allegations of harm or injury are much too attenuated to meet the requirements for standing." *Id*. at 1230. The plaintiffs' argument, the Court explained, "seem[ed] to be that: *if* [plaintiffs] were to bid, [plaintiffs] *could* be forced to participate in a 'tainted' bidding project, which *might* prove unsuccessful, and *potentially* threaten the livelihood of [their] membership *should their bids be rejected.*" *Id*. (emphases in original). In the Court's view, it was "unclear how this chain of events—as opposed to myriad

23

other possible causes—would have contributed to the possible loss by [plaintiffs'] membership of any prospective bid, assuming one was submitted by all the plaintiffs in the first place." *Id*. at 1230–31.

The FI Plaintiffs' allegations rely on similar speculation and are just as "attenuated" as the plaintiffs' allegations in *Apfel*.  As in *Apfel*, it is just as "unclear" how any action or inaction by Equifax—as opposed to say, consumers (who may make calls to the FI Plaintiffs that FI Plaintiffs indicate they have had to field), the third-party hackers, or even other data breaches that the FI Plaintiffs admit are prevalent—would have led to the FI Plaintiffs' voluntary expenditures. *See, e.g.*, Compl., ¶ 139 (explaining that the "prevalence of data breaches and identity theft has increased dramatically in recent years"); *id.*, ¶ 141 (pleading facts about other recent data breaches).[8]  Indeed, many of the same FI Plaintiffs have pled similar types of injuries—albeit limited to the payment card context—in several other recent data-breach cases, further illustrating that Plaintiffs cannot plausibly allege that their injuries are traceable to Equifax rather than other

---

[8] Other courts, too, have refused to recognize claims based on such unsupported and attenuated suggestions of causation in the data-breach context.  *See, e.g.*, *Hammond v. Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *13 (S.D.N.Y. June 25, 2010) (plaintiffs failed to allege sufficiently any credit-card fraud that was causally connected to the loss of the data tapes at issue in the case).

breaches.  *See, e.g.*, *In re Arby's Restaurant Grp., Inc. Data Security Litig.*, No. 1:17-cv-0514-AT, Dkt. Nos. 165, 352 (N.D. Ga. 2017); *First Choice Fed. Cred. Union v. Wendy's Co.*, No. 16-506, Dkt. No. 1 (D. Pa. 2016);  *Greater Chautauqua Federal Credit Union, et al. v.  Kmart Corporation, et al.*, No. 1:15-cv-2228, Dkt. No. 1 (N.D. Ill. 2015); *In re: The Home Depot Customer Data Breach Litig.*, No. 14-md-02583-TWT, Dkt. No. 1 (N.D. Ga. 2014).

In light of the spate of recent data breaches, the "injuries" the FI Plaintiffs allege are merely increased fraud-prevention measures that are due to these increased cybersecurity risks, and not in response to the Equifax data breach.  *See* Compl., ¶¶ 242–43 (pleading facts that industry standards recognize that banks should assess and analyze data breaches and that, in light of these industry standards, the FI Plaintiffs are forced to undertake these assessment and monitoring activities whenever a breach occurs).  The FI Plaintiffs do not plausibly allege any facts that would come close to establishing the required connection between Equifax's alleged conduct and their alleged injuries.  Plaintiffs lack standing to pursue their claims.

## B.   The Association Plaintiffs Lack Representational Standing.

The Association Plaintiffs also fail to establish Article III standing.  "When the plaintiff is an association, as here, the plaintiff-association must show: (1) its

members otherwise have standing to sue in their own right; (2) the interests the plaintiff-association seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested must require the participation of the association's members." *Greater Atlanta Home Builders Ass'n, Inc. v. City of Atlanta, Ga.*, 149 F. App'x 846, 848 (11th Cir. 2005).

The Association Plaintiffs' claims fail because its members do not have standing to sue in their own right, and the claims asserted will require the participation of the association's members.  First, the Association Plaintiffs fail to identify one of their members that suffered a specific loss or injury.  Rather, the Association Plaintiffs generally allege that unidentified member institutions "have suffered, and continue to suffer, tangible and intangible harm including a certainly impending risk of future harm, in the form of future fraudulent banking activity, as a direct result of the compromised PII associated with the Equifax data breach." Compl., ¶ 58.  These allegations are insufficient to establish standing, as explained above.  *Supra*, Section I; *see also Nat'l All. for Mentally Ill, St. Johns Inc. v. Bd. of Cty. Comm'rs of St. Johns Cty.*, 376 F.3d 1292, 1296 (11th Cir. 2004) (holding that a "failure to identify an injured constituent prevents [an association] from asserting associational standing").

26

Second, "[j]ust because individual members" of an Association "may have standing to assert . . . claims . . . does not, in and of itself, establish that the associations themselves have standing." *Greater Atlanta Home*, 149 F. App'x at 849. The Association Plaintiffs' claims fail because they require the participation of the association's members. Determining whether each member of the Association has a claim will require the Court to make an individualized determination in each case. Indeed, the Association Plaintiffs allege a host of injuries that may vary between members, and are likely not cognizable. In similar circumstances, the Eleventh Circuit has determined that an association lacks standing to pursue claims on behalf of its members. *See, e.g.*, *Georgia Cemetery Ass'n, Inc. v. Cox*, 353 F.3d 1319, 1322-23 (11th Cir. 2003) (named plaintiff did not have associational standing to bring takings claim because such a claim "will vary depending upon the economic circumstances of each of its members" requiring those members' participation). The Court should dismiss these claims.

## II.    ALL OF THE PLAINTIFFS' NEGLIGENCE CLAIMS FAIL.

Even if this Court were to determine it had jurisdiction to consider this case, Plaintiffs' allegations fail because they do not sufficiently allege facts supporting claims upon which relief can be granted. In Georgia, to succeed on a negligence claim, a plaintiff must prove "the existence of a duty on the part of the defendant, a

27

breach of such duty, causation of the injury alleged, and damages as a result of the alleged breach of duty." *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687 (Ga. 2013). Plaintiffs fail at the gate because Georgia law does not recognize a common law duty to protect PII generally, much less a duty to protect plaintiffs from the ripple effects that may be caused by the loss of a third-party's PII. Nor does Georgia law recognize a common law duty to disclose the data breach in a particular time period—let alone to provide specific disclosures to third parties whose information was not impacted. Nor do Plaintiffs sufficiently plead causation or harm as required to succeed on a claim for negligence. Georgia's economic-loss rule also precludes these claims.

### A. Georgia Law Does Not Recognize Any Duty With Regard To Protecting Consumer Information.

Plaintiffs' negligence claim fails. "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Access Mgmt. Grp. L.P. v. Hanham*, 812 S.E.2d 509, 511 (Ga. Ct. App. 2018) (internal citation omitted). The question of whether a duty exists is a question of law. *Id*. Plaintiffs cannot plead this requisite duty of care.

### 1. After *McConnell III*, Plaintiffs Cannot Establish a General Duty with Respect to Protecting Personal Information.

In the *Home Depot* decision, this Court denied a motion to dismiss a

negligence claim based on the prediction that Georgia courts would recognize a duty to safeguard personal information from data-security risks.   2016 WL 2897520, at *3.  But the Georgia Court of Appeals has since held that there is no such "duty of care to safeguard personal information."  *McConnell III*, 2018 WL 2173252, at *6.  Plaintiffs' negligence claim therefore fails.

In *McConnell*, an employee of the Georgia Department of Labor sent an email to over 1,000 recipients containing the personal information of over 4,000 unemployment-benefit applicants, including the applicants' names, Social Security numbers, ages, phone numbers, and email addresses.  *McConnell III*, 2018 WL 2173252, at *1.  One of the applicants whose information was exposed brought a putative class action against the Department alleging, among other things, that the Department was negligent in disclosing his and the other applicants' personal information.  *Id.* at *1, *5.  The trial court dismissed the action on multiple grounds, including that the Department had sovereign immunity and that the plaintiff failed to state a claim under Georgia law.  *Id.* at *1.  In a June 2016 opinion, the Court of Appeals affirmed the dismissal for failure to state a claim— holding that no common-law or statutory duty exists under Georgia law to safeguard or protect the personal information of another.  *McConnell v. Dep't of Labor*, 787 S.E.2d 794 (Ga. Ct. App. 2016) (*McConnell I*).  The Georgia Supreme

29

Court later vacated the Court of Appeals' judgment solely on the ground that the court should have considered the trial court's sovereign immunity ruling, a question of subject-matter jurisdiction, before turning to the merits. *McConnell v. Dep't of Labor*, 805 S.E.2d 79, 79–80 (Ga. 2017) (*McConnell II*).

On remand, in an opinion issued May 14, 2018, the Court of Appeals first addressed subject matter jurisdiction as instructed and found that sovereign immunity did not bar the claims. *McConnell III*, 2018 WL 2173252, at *4.[9] The court thus turned to the merits and, with respect to the negligence claim, again held that Georgia does not recognize a negligence claim for failure to safeguard personal information. *Id.* at *6. To succeed on a negligence claim, the court explained, a plaintiff must prove "the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." *Id.* at *5 (quoting *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011)). The duty must arise "either from a valid legislative enactment, that is, by statute, or be imposed by a common

---

[9] One judge specially concurred in the panel's sovereign immunity holding (Division 1 of the opinion), rendering that portion of case "physical precedent only." *McConnell III*, 2018 WL 2173252, at *10; *see also* Ga. Ct. App. R. 33.2(a)(1). All judges concurred fully in the remainder of the opinion (Divisions 2, 3, and 4), making those portions—including the negligence holding—"binding precedent" in Georgia. *See* Ga. Ct. App. R. 33.2(a)(1).

law principle recognized in the caselaw." *Id.*   Because a duty to safeguard

personal information "has no source in Georgia statutory law or caselaw," the court

held that the plaintiff had failed to state a claim and affirmed the dismissal of his

complaint. *Id.* at *6; *accord McConnell I*, 787 S.E.2d at 799.   The ruling in

*McConnell III* forecloses the existence of a duty to Plaintiffs and requires dismissal

of Plaintiffs' negligence claims.[10]

> ### 2.   Plaintiffs' Allegations Are Even More Attenuated Than Those At Issue In *McConnell III.*

Even setting aside *McConnell III*, Plaintiffs attempt to establish a duty that

goes far beyond what any court has ever recognized in Georgia or otherwise.   In

other data-breach cases, plaintiffs have tied their claims to the loss of information

---

[10] A federal Court sitting in diversity should "decide the case the way it appears the [Georgia] Supreme Court would decide it." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004).   And "[i]n the absence of any [Georgia] Supreme Court decisions close enough on point," the Court should "look to decisions of the [Georgia] intermediate appellate courts and follow them unless there is some really persuasive indication that the [Georgia] Supreme Court would go the other way." *Id.* (emphasis added).   Absent "persuasive evidence that the [Georgia Supreme Court] would rule otherwise," this Court is "bound" to follow the Georgia Court of Appeals' decision. *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009) (emphasis added). Here, there are no contrary Georgia Supreme Court decisions on point, and there is no indication that the Georgia Supreme Court would have ruled differently than the Georgia Court of Appeals in *McConnell III*.   In fact, had the Supreme Court been concerned with the Court of Appeals' decision on duty in *McConnell I*, it could have so indicated when it remanded for consideration of the sovereign-immunity question.

that arguably belonged to them. Consider *McConnell III*, in which the Georgia Court of Appeals declined to find the existence of a duty to protect PII. In that case, Plaintiffs alleged that the defendant had disseminated the plaintiffs' ***own*** names, Social Security numbers, ages, phone numbers, and email addresses to over 1,000 different third-parties. And in all prior data breach cases brought by financial institutions, including *Home Depot*, plaintiffs have tied their claims exclusively to the loss of payment card information for cards that were "issued and owned" by the financial institution plaintiffs. *See, e.g., Home Depot,* 2016 WL 2897520, at *2 (plaintiffs were exclusively financial institutions that "issued and owned payment cards compromised by the data breach"); *In re Arby's Rest. Grp. Litig.*, 1:17-mi-55555-AT, 2018 WL 2128441, at *3 (N.D. Ga. 2018) (same).

In contrast, these Plaintiffs do not tie their claims to the loss of information that belongs to them. Unlike *Home Depot*, which involved approximately 56 million payment card numbers, this case involves 209,000 payment card numbers (the vast majority of which were issued by large banks that are not participating in this lawsuit). Realizing the limited recovery potentially available for that relatively small number of impacted payment cards (0.3% of the number of cards impacted in *Home Depot*), Plaintiffs instead posit the extraordinary theory that Equifax owed "a common law duty . . . to FI Plaintiffs . . . to reasonably safeguard [consumer

PII]," and that the FI Plaintiffs may recover vague "damages" incurred as a result of Equifax's alleged breach of that duty. Compl., ¶ 281. In Georgia, there is no such duty—or even a reasonable analogue.

This Court is not free to fashion such a duty. As the Georgia Supreme Court has recognized, a court should not "expand traditional tort concepts beyond manageable bounds" when doing so would "create an almost infinite universe of potential plaintiffs." *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 209 (Ga. 2005) (quotation marks omitted); *see also Albany Urology Clinic, P.C. v. Cleveland*, 528 S.E.2d 777, 780 (Ga. 2000) (reversing the Georgia Court of Appeals' "impos[ition] upon healthcare providers [of] a new, judicially-created[] duty" because creating such a duty was "beyond the scope of the appellate court's authority"). No court in any jurisdiction has ever recognized the claims Plaintiffs seek to assert, nor has the Georgia legislature created such a duty. Indeed, no financial institution plaintiffs have pursued such flimsy claims, even in the wake of massive data breaches like those affecting Anthem (which affected 80 million individuals' PII) or Experian (15 million individuals' PII). In the absence of any basis to find that Equifax owed financial institutions a duty with regard to *consumers'* PII—and in consideration of binding Georgia authority that Equifax did not owe Plaintiffs such a duty—Plaintiffs' claims fail.

33

**B.**     **Equifax Also Had No Duty To "Disclose" The Data Breach To Financial Institutions.**

The Complaint also argues that Equifax owed a duty to disclose the breach to FI Plaintiffs.  Compl., ¶ 281.  Notwithstanding that the Plaintiffs specifically allege that they were notified of the data breach shortly after the conclusion of Equifax's investigation (*id.*, ¶ 203), there is no legal basis for finding any notification "duty" flowing from Equifax to the FI Plaintiffs.  A "duty can arise either by statute or be imposed by a common law principle recognized in the caselaw."  *Jenkins*, 744 S.E.2d at 688.  To the extent Plaintiffs may attempt to rely on state data-breach notification statutes, such an effort would be misguided. Plaintiffs make no allegations related to state data-breach notification statutes at all.  *See generally* Compl.  Moreover—and emblematic of the larger problems with Plaintiffs' theory of recovery—state data-breach notification statutes require notification only to individuals whose personal information has been "accessed." *E.g.,* O.C.G.A. § 10-1-912 (requiring notification to individuals "whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person"); N.Y. Gen. Bus. Law § 899-aa (requiring notification to "any resident of New York state whose private information was, or is reasonably believed to have been, acquired by a person without valid authorization").  Because the FI Plaintiffs do not allege that any of their ***own***

34

information was stolen in the data breach, these statutes cannot be the source of any duty owed by Equifax.[11]  There is also no basis in the common law to impose a duty to notify persons of a data breach.  And this Court may not fashion such a duty.  *CSX Transp., Inc.*, 608 S.E.2d at 209; *Albany Urology*, 528 S.E.2d at 780.

### C.    Plaintiffs' Allegations Also Fail To Plausibly Plead Causation.

Plaintiffs' negligence claim fails for the additional reason that recognizing it would eviscerate the causation prerequisite to recovery.  "[W]here a plaintiff complains of injuries that are wholly derivative of harm to a third party, [a] plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999), *as amended* (Aug. 18, 1999); *see also Dowdell v. Wilhelm*, 699 S.E.2d 30, 32 (Ga. Ct. App. 2010) (similar).  Here, Equifax's allegedly inadequate security measures did not cause Plaintiffs' alleged harms.  Rather, setting aside allegations concerning stolen payment cards, Plaintiffs' allegations suggest that the concerns of their customers—*i.e.*, third parties—or even other data breaches propelled them to undertake voluntary precautionary measures:

---

[11] Although the FI Card Plaintiffs contend that payment cards were impacted, they do not allege facts that any of their consumers' information was accessed.

| Claimed Costs | "Relationship" to the Data Breach |
|---|---|
| "Investigating the impact of the Equifax Data Breach" | • Voluntarily incurred costs<br>• Directed at addressing customer concerns |
| "Evaluating existing and alternative security protocols" | • Voluntarily incurred costs<br>• Directed at addressing customer concerns |
| "Monitoring for potentially fraudulent banking activity" | • Voluntarily incurred costs<br>• Directed at addressing customer concerns |
| "Communicating with customers regarding their concerns about identity theft and the safety of their accounts" | • Voluntarily incurred costs<br>• Directed at addressing customer concerns |

Plaintiffs cannot plausibly allege that any of these costs are due to Equifax and not due to other data breaches, regulations requiring this behavior by Plaintiffs regardless of any particular data breach, or the security risks that companies face.

Moreover, while no Plaintiff actually goes so far as to allege that they have reimbursed any of their customers for any fraudulent charges, such harms would *still* be beyond the bounds of causation as recognized by Georgia courts.[12]  Georgia law has long barred claims for ripple-effect damages of the kind the FI Plaintiffs seek here.  In *Byrd v. English*, 43 S.E.2D 419 (Ga. 1903), a business sued a construction company for negligently damaging city-owned-and-operated power

---

[12] Plaintiffs instead rely only on the vague allegation of a "certainly impending risk of future harm, in the form of future fraudulent banking activity," which as discussed below is not a compensable harm.

lines that supplied power to it.   The plaintiff theorized that the construction company's actions caused it to lose power for a period of time, and thereby caused it to incur damages as a result of lost business and remediation costs.   While there was no dispute that the construction company's actions were the "but for" cause of the plaintiff's damages, the Georgia Supreme Court affirmed dismissal:

> If the plaintiff can recover of these defendants upon this cause of action, then a customer of his, who was injured by the delay occasioned by the stopping of his work, could also recover from them; and one who had been damaged through his delay could in turn hold them liable; and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits. To state such a proposition is to demonstrate its absurdity.

*Id.* at 420.

In the ensuing century, Georgia courts have repeatedly applied this clear principle of law.   *See, e.g., Remax the Mountain Company v. Tabsum, Inc.*, 634 S.E.2d 77, 79 (Ga. Ct. App. 2006) (affirming the dismissal of various business owners' claims because "a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another") (quotation marks omitted); *Union Camp Corp. v. S. Bulk Indus.*, *Inc.*, 386 S.E.2d 866, 867 (Ga. Ct. App. 1989), *aff'd*, 388 S.E.2d 524 (Ga. 1990) (plaintiff failed to state a claim when it alleged that defendant negligently damaged the property of a third party and that,

37

consequently, the third party was unable to fulfill its obligations to plaintiff); *Willis v. Georgia N. Ry. Co.*, 314 S.E.2d 919, 919-20 (Ga. Ct. App. 1984) (employees did not have claim against railroad that negligently caused their employer to shut down, resulting in lost wages); *McGill & Sons, Inc. v. Flood & Assocs., Inc.*, 147 Ga. App. 3, 3 (1978) ("There is no liability for negligence since there was no injury to any person or property as a result of [defendants' negligence].").

Plaintiffs are attempting to resurrect this "absurd" theory of causation that the Georgia Supreme Court has rejected. While no data-breach plaintiff has ever alleged such a claim, numerous rulings from courts across the country addressing all manner of similar claims confirm that the reasoning of the Georgia Supreme Court in *Byrd* remains valid today. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) *as amended* (Aug. 18, 1999) (dismissing claims); *Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 106 (D. Conn. 2001) (same); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268–70 (1992) (relying on proximate cause principles to dismiss claims; finding that, under the common law, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover").

38

Moreover, Plaintiffs have not alleged that **Equifax** is directly responsible for any injury.  Assuming the injuries stemmed from the Equifax data breach, each of the alleged injuries was proximately caused by an unidentified third party's criminal acts—breaking into Equifax's servers and illegally stealing information stored on them.  *See* 18 U.S.C. § 1030 (a)(5)(C) (making it a federal crime to "intentionally access[] a protected computer without authorization").  Unforeseeable criminal acts of third parties "insulat[e] and exclud[e] the negligence of the defendant" from liability.  *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017).  Those criminal acts are foreseeable only if they are the "probable or natural consequences" of "the original wrongful act."  *Id.* That was not the case here.

### D.      Plaintiffs Fail To Sufficiently Allege An Injury Or Damages.

"Since 'a tort claim must fail where liability is established but no damages can be shown,' it follows that negligence claims must fail where no recoverable damages have even been pled."  *Heinisch v. Bernardini*, CV414-221, 2014 WL 5872698, at *2 (S.D. Ga. Nov. 12, 2014) (quoting *Blackford v. Wal–Mart Stores, Inc.*, 912 F. Supp. 537, 539 (S.D. Ga. 1996)).  Whether a given Plaintiff has alleged a cognizable injury is necessarily a highly individualized question, yet the Complaint is devoid of sufficient individualized facts.  *Griffin v. Dugger*, 823 F.2d

1476, 1482–83 (11th Cir. 1987).   Plaintiffs have not suffered any cognizable damages as a result of the Equifax data breach.  *See* Section I, *supra*.

Moreover, a recent Georgia Court of Appeals opinion, *Collins v. Athens Orthopedic Clinic*, conclusively establishes that the FI Plaintiffs have no right to recover for the "damages" they assert here.  No. A18A0296, 2018 WL 3134877 (Ga. Ct. App. June 27, 2018).[13]   In *Collins*, a putative class of approximately 200,000 customers filed suit alleging that an orthopedic clinic lost their PII in a data breach.  The trial court—under Georgia's relaxed notice pleading standards—granted the clinic's Motion to Dismiss and the Georgia Court of Appeals affirmed.

The *Collins* plaintiffs alleged that a hacker "had accessed their PII, offered to sell it on the Dark Web, and placed it, at least temporarily on [a data storage website]," causing them to incur damages in the form of an increased risk of future harm as well as time and costs associated with credit monitoring and other precautionary measures.  *Id.* at *3–4.  But the Georgia Court of Appeals found these damages insufficient to state a claim for negligence, unjust enrichment and violation of the Georgia Uniform Deceptive Trade Practices Act.  *Id.* at *7.  The

---

[13] Although *Collins* is "physical precedent only" because one judge dissented, it "may be cited as persuasive authority" where—as here—its reasoning is sound, and firmly anchored in other binding Georgia cases.  *Marshall v. McIntosh Cty.*, 327 Ga. App. 416, 419, 759 S.E.2d 269, 273 (2014).

Court held that (1) "[i]f the damage incurred by the plaintiff is only the possible result of a tortious act[,] such damage is too remote to be the basis of recovery against the wrongdoer," *id.*at *3 (alterations; quotation marks omitted)); (2) that "prophylactic costs anticipated or incurred to protect oneself against the threat of identity theft following a data breach" are not compensable damages, *id.* at *2; and (3) data-breach plaintiffs may not recover "for an increased risk of harm," *id.* at *4.

Here, the damages the FI Plaintiffs seek to recover—costs related to investigating the data breach, costs related to fraud monitoring, and costs associated with a "risk of future harm"—are not only the types of damages that *Collins* found to be unrecoverable, ***they are even more attenuated***.  In *Collins*, the plaintiffs could at least allege that their ***own*** PII had been accessed and that fraudulent charges were actually made on one plaintiff's credit card.  *Id.* at *1. Here, other than the FI Card Plaintiffs, Plaintiffs do not allege that any specific information belonging to them was impacted.   And no Plaintiff alleges that fraudulent activity has actually occurred as a result of the Equifax data breach. Plaintiffs' claims should be dismissed for failure to plead any compensable damage. *id.* at *2–4; *see also Kaminer v. Canas,* 653 S.E.2d 691, 695 (2007) ("Proof of negligence in the air, so to speak, will not do.").

41

### E.      Georgia's Economic-Loss Rule Bars Plaintiffs' Negligence Claims.

Finally, Plaintiffs' negligence claim also fails because Georgia's economic-loss rule precludes it.  That rule "'generally provides that . . . a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property.'"  *Helpling v. Rheem Mfg. Co.*, 1:15-CV-2247-WSD, 2016 WL 1222264, at \*16 (N.D. Ga. Mar. 23, 2016) (quoting *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005)).  Here, Plaintiffs allege injury to neither their person nor property.  At most, Plaintiffs allege purely *economic* losses stemming from the theft of consumers' PII.  But these are the sort of losses that are unrecoverable under the economic-loss rule. [14]

In *Home Depot*, this Court rejected this argument on the ground that "the independent duty exception would bar application of the economic loss rule." 2016 WL 2897520, at \*3.   However, the Court's ruling on this issue was predicated on the assumption that Georgia law recognized a duty to protect PII.  *Id.* That assumption no longer holds true in light of *McConnell III*.  *See supra* Section II.A.  Accordingly, this Court should now hold that there is no independent duty exception that would otherwise bar application of the economic-loss rule.

---

[14] The economic-loss rule precludes negligence and negligence *per se* claims involving economic losses.  *See, e.g., Massih v. Jim Moran & Assocs., Inc.*, 542 F. Supp. 2d 1324, 1329 (M.D. Ga.), *aff'd in part*, 315 F. App'x 177 (11th Cir. 2008).

## III.   ALL PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS FAIL.

Plaintiffs' negligence *per se* claims also fail.   *See* Compl., ¶¶ 307–324 (Count 2).   To establish a negligence *per se* claim under Georgia law, a plaintiff must establish that a law was violated; the "injured person falls within the class of persons it was intended to protect"; "the harm complained of was the harm the statute was intended to guard against"; and "a causal connection between the negligence *per se* and the injury." *Norman v. Jones Lang Lasalle Americas, Inc.*, 627 S.E.2d 382, 388 (Ga. Ct. App. 2006).   Georgia law limits negligence *per se* to statutes that "provide for certain duties" or that call for "the performance of or refraining from any specific acts." *Jenkins*, 744 S.E.2d at 688.   An allegation that a defendant violated a statute whose duty is "too indefinite" cannot support a claim for negligence *per se*. *Brock v. Avery*, 110 S.E.2d 122, 126 (Ga. Ct. App. 1959). Instead any duty must be "imposed *expressly* by the statute at issue with specificity." *Bellsouth Telecomms., LLC v. Cobb Cty.*, 802 S.E.2d 686, 698 (Ga. Ct. App. 2017) (Dillard, J., concurring).   The duty must be based on violation of a rule that has "the force of law." *Norman*, 627 S.E.2d at 388.   Here, Plaintiffs fail to allege any plausible facts supporting the elements of a negligence *per se* claim.

### A.   The Statutes On Which Plaintiffs Rely Do Not Form the Basis For A Negligence *Per Se* Claim.

In an attempt to plead the first two elements of a negligence *per se* claim,

43

Plaintiffs rely on the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§6801–6809, and its implementing regulations, 16 C.F.R. §314 (the "Safeguards Rule") (Compl. ¶ 309), as well as Section 5 of the Federal Trade Commission ("FTC") Act and similar state statutes (*id*., ¶ 318).[15]   None of these set out any "specific statutory duty" to protect PII or to notify consumers of a data breach "that is mandatory and expressly imposed."  *Bellsouth*, 802 S.E.2d at 700.

### 1.    Plaintiffs Cannot Rely On The GLBA And Its Regulations.

In *Jenkins*, the Georgia Supreme Court rejected the assertion that the GLBA, under which the Safeguards Rule was promulgated, may form the basis of any private duties.  The Court noted that although 15 U.S.C. § 6801(a) of the GLBA "[c]ertainly . . . expresses the goal that financial institutions respect the privacy, security, and confidentiality of customers," it "does not provide for certain duties or the performance of or refraining from any specific acts on the part of financial institutions, nor does it articulate or imply a standard of conduct or care, ordinary or otherwise."  *Id*. at 688.   The Court reasoned that "Congress did not see fit to impose such a duty under 15 U.S.C. § 6801(a), and this Court will not usurp

---

[15] To the extent Plaintiffs intend to rely on their references to the Fair Credit Reporting Act (the "FCRA") to establish a duty, for the reasons set forth in Equifax's Motion to Dismiss the Consolidated Consumer Class Action Complaint, that argument too would be misguided. *See* Dkt. No. 425-1 at 12-16, 48.

legislative authority by inferring or supplying one." *Id.* *Jenkins* thus precludes any attempt to rely on the GLBA alone.

Nor may Plaintiffs rely on the Safeguards Rule. At most, that Rule sets out general requirements for financial institutions to "develop, implement, and maintain [an] information security program." 16 C.F.R. §§ 314.1(a), 314.4. In other words, the Rule essentially provides that financial institutions should implement a plan with the goal of protecting customer information; the Rule simply speaks in terms of "developing" "reasonable" safeguards. 16 C.F.R. § 314.1; *Guin v. Brazos Higher Educ. Serv. Corp.*, No. CIV. 05-668 RHK/JSM, 2006 WL 288483, at *4 (D. Minn. Feb. 7, 2006) (explaining that the Safeguards Rule requires only that a financial institution have "written security policies, current risk assessment reports, and proper safeguards" in the general sense). Plaintiffs do not dispute that Equifax had such policies; rather, they merely contend that these policies were not as robust as they believe they should have been.

For purposes of assessing a negligence *per se* claim, the Rule goes no further than the Act itself in terms of setting out specific duties. *See* Vincent R. Johnson, *Cybersecurity, Identity Theft, and the Limits of Tort Liability*, 57 S.C. L. Rev. 255, 266–270 (2005). As one commentator has explained, "the standards agencies have already adopted . . . are typically flexible in nature, equivocal as to what must be

45

done, and generally unsuited to defining the conduct expected of a reasonably prudent financial institution." *Id.* at 269. Thus, "[l]ike the GLBA itself, the [regulations] offer no clear guidance as to precisely what precautions financial institutions must implement to protect data security." *Id.*; *see also Jenkins*, 744 S.E.2d at 688 (for negligence *per se*, "there must be [an] alleged breach of a legal duty with some ascertainable standard of conduct").

In any event, Plaintiffs do not provide a single factual allegation that Equifax violated any of these general requirements. Instead, Plaintiffs merely provide background information as to what these requirements are. Compl., ¶¶ 312–13.

### 2.   Plaintiffs Cannot Rely On The FTC Act § 5 And "Similar State Statutes."

Plaintiffs have also not sufficiently pled that the FTC Act or "similar statutes" can provide the basis for a negligence *per se* claim. The FTC Act does not impose any specific duty to safeguard personal information. *See generally* 15 U.S.C. § 45. It only proscribes "unfair or deceptive acts or practices in or affecting commerce." *Id.* That prohibition is not specific enough to state a claim for negligence *per se*. *See Jenkins*, 744 S.E.2d at 688; *Brock*, 110 S.E.2d at 126.

Moreover, Section 5 itself does not impose substantive requirements unless they are established elsewhere in the law. *LabMD v. Fed. Trade Comm'n*, — F.3d —, 2018 WL 3056794, at*7 (11th Cir. June 6, 2018). To be an "unfair act or

practice" under Section 5, an act must violate "clear and well-established policies that are expressed in the Constitution, statutes, or the common law." *Id.* And, as the Eleventh Circuit held in *LabMD*, the only possible "source of [a] standard of unfairness … holding that … [a] failure to … maintain a reasonably designed data-security program constitute[s] an unfair act or practice… is the common law." *Id.* The common law, however, imposes no such duty. *McConnell III*, 2018 WL 2173252, at *6. This Court therefore should not read such a duty into Section 5 of the FTC Act. *See LabMD*, 2018 WL 3056794, at *7.[16]

Also telling is that there is no private cause of action for violation of the FTC Act. *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978). The Act provides that only the FTC may pursue an action for "unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 45(a) & (b). And the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). Permitting a private plaintiff to use the FTC Act to sue for negligence *per*

---

[16] The handful of decisions finding that the FTC Act could serve as the basis of a negligence *per se* claim predate the Eleventh Circuit's recent binding decision in *LabMD* and the Georgia Court of Appeals' recent decision in *McConnell* rejecting a common law duty to protect PII. *See In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *8 (N.D. Ga. Mar. 5, 2018) (citing *Home Depot*, 2016 WL 2897520, at *4).

*se* would, therefore, undermine Congress's express intent that private plaintiffs not be permitted to sue to enforce the Act.

Here, Plaintiffs point to no FTC regulation that requires safeguarding PII. Instead, they merely claim that the FTC has "pursued" numerous "enforcement actions" for "failure to employ reasonable data security measures."  Compl., ¶ 322. Plaintiffs also point to unidentified "FTC guidelines, publications, and consent orders."  *Id.* ¶ 317.  None of these various unidentified orders and publications can support a negligence *per se* claim because Plaintiffs have identified none that "ha[s] the force of law."  *Norman*, 627 S.E.2d at 388.[17]

### B.    Plaintiffs Fail To Plead Other Elements To Support Their Negligence *Per Se* Claim.

Under Georgia law, negligence *per se* "is not liability *per se*"—a "plaintiff must still prove proximate cause and actual damage in order to recover."  *Hite v. Anderson*, 643 S.E.2d 550, 552 (Ga. Ct. App. 2007) (quotation marks omitted). Here, Plaintiffs allege that Equifax's purported negligence *per se* caused the same injuries as its alleged negligence.  Compl., ¶ 323.  But as discussed above, Plaintiffs have failed to allege sufficient facts demonstrating that they have

---

[17] Although Plaintiffs allege negligence *per se* under "similar state statutes," they do not identify any such statutes.  *See* Compl., ¶¶ 320–22.  Accordingly, that claim is insufficiently specific to state a negligence *per se* claim under Georgia law.  *See Jenkins*, 744 S.E.2d at 688; *Brock*, 110 S.E.2d at 126.

48

suffered any cognizable injury proximately caused by Equifax. *See supra* Sections I & II. Their negligence *per se* claim must be dismissed on this basis also.

## IV. PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF A CLAIM FOR NEGLIGENT MISREPRESENTATION.

Plaintiffs also fail to plead sufficiently plausible facts to support a claim for negligent misrepresentation. *See* Compl., ¶¶ 325–338 (Count 3). The "essential elements" of a negligent misrepresentation claim in Georgia are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997). Plaintiffs must plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation marks omitted). "Additionally, under Georgia law it is necessary that the maker of the statement actually be aware that the third party . . . will rely on the information and that the known third party's

reliance was the desired result of the misrepresentation." *New York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1412 (M.D. Ga. 2014) (quotation marks omitted).[18]

Here, Plaintiffs' negligent misrepresentation claim "is not supported by a significant factual basis to raise [their] right to relief above [a speculative] level." *Arch Ins. Co.*, 850 F. Supp. 2d at 1373. In a similar case, this Court dismissed a negligent misrepresentation claim where "the Complaint fail[ed] to identify which representations were allegedly negligent, when those representations were made, and which Defendant made them." *Foxworthy*, 2012 WL 1269127, at *6. "Under such circumstances," this Court noted, "the Defendants ha[d] insufficient notice of the facts upon which the Plaintiff's claim rests." *Id.* Plaintiffs here identify no specific representations that Equifax made to them with the intent that Plaintiffs rely on the statements. All Plaintiffs allege is that Equifax "[m]isrepresent[ed] that

---

[18] The Eleventh Circuit has not expressly ruled that Rule 9(b)'s heightened pleading standard applies to claims for negligent misrepresentation under Georgia Law, but in both *Inman v. American Paramount Financial*, 517 F. App'x 744, 748 (11th Cir. 2013) and *Smith v. Ocwen Financial*, 488 F. App'x 426, 428 (11th Cir. 2012), the Eleventh Circuit affirmed district courts' dismissals of negligent-misrepresentation claims for failure to meet Rule 9(b)'s pleading requirements. Even if Rule 9(b) does not apply, as shown below, the negligent-misrepresentation claim still fails under Rule 8 because Plaintiffs fail to identify any negligent misrepresentations made by Equifax. *See, e.g., Foxworthy, Inc. v. CMG Life Servs., Inc.,* No. 1:11–cv–2682, 2012 WL 1269127, at *6 (N.D. Ga. Apr. 16, 2012) (applying Rule 9(b) but alternatively dismissing plaintiff's negligent misrepresentation claim under Rule 8 for failure to give defendants "fair notice of the [p]laintiff's claim and the grounds upon which it rests") (Thrash, J.).

it would protect PII, including by implementing and maintaining reasonable security measures" or that "it would comply with common law and statutory duties pertaining to the security of PII." *E.g.*, Compl., ¶ 347(d)–(e). But these allegations do not pinpoint any statements allegedly made by Equifax—much less identify who made them, or when or where they were made. Plaintiffs' conclusory allegations cannot survive a motion to dismiss. *See, e.g.*, *Foxworthy*, 2012 WL 1269127, at *6 (dismissing negligent misrepresentation claim because the plaintiff failed to plead facts about the alleged misrepresentation); *Bryant v. Progressive Mountain Ins. Co.*, 243 F. Supp. 3d 1333, 1342 (M.D. Ga. 2017) (same).

Additionally, Plaintiffs have failed to allege in any of these counts facts showing that they ***relied*** on any alleged misrepresentation or omission, or that any alleged misrepresentation or omission ***caused*** any injury. Plaintiffs merely allege a "symbiotic relationship" within the "financial services ecosystem." *See* Compl., ¶¶ 351–352. But Plaintiffs do not and cannot adequately establish that they gave Equifax the stolen PII in reliance on any representations allegedly made by Equifax. Plaintiffs cannot recover under a negligent-misrepresentation theory. *E.g.*, *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1026–27 (11th Cir. 2003) (reliance is "an indispensable element" of fraud).

51

## V.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE CONSUMER STATUTES.

Plaintiffs fail to state a claim under state consumer protection statutes upon which they rely for multiple reasons.  *See* Compl., ¶¶ 339–604 (Counts 4–24).

### A.  The Court Should Dismiss Plaintiffs' Georgia Fair Business Practices Act Claim.

This Court should dismiss Plaintiffs' Georgia Fair Business Practices Act claim (Compl. ¶¶ 339–59) (Count 4) for four reasons.

### 1.  *McConnell III* Confirms That The Georgia Fair Business Practices Act Does Not Require Safeguarding PII.

If the Georgia Fair Business Practices Act ("GFBPA") required a company to safeguard PII, *McConnell III* would have been decided differently.  The plaintiff in *McConnell* argued that the GFBPA imposed a duty to safeguard PII.  *See McConnell III*, 2018 WL 2173252, at *6.  And although the GFBPA was before the court, *McConnell III* held that the plaintiff's complaint was "premised on a duty of care to safeguard personal information that has no source in Georgia statutory law."  2018 WL 2173252 at *6.  According to *McConnell III*, "[Georgia's] legislature has so far not acted to establish a standard of conduct intended to protect the security of personal information."  *Id.* at *7.  If the general unfair-practices provision of the GFBPA could be read to require safeguarding PII,

the *McConnell III* court would have said as much—and would have reached a different result.  This alone is reason enough to dismiss Count 4.

### 2. Plaintiffs Have Not Pled Reliance.

In any event, stating a claim under the GFBPA also requires that the plaintiff "demonstrate that he was injured as the result of . . . reliance upon the alleged misrepresentation." *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 16–17 (Ga. 2006) (quotation marks omitted).  Plaintiffs here have failed to—and cannot—allege facts sufficient to show reliance.  *See*, *supra*, Section IV.  Plaintiffs' failure to plead reliance is fatal.

### 3. No Plaintiff Has Alleged Damages Caused By Any Misrepresentation.

Furthermore, to fall within the ambit of the GFBPA, a plaintiff must be a "person who suffers injury or damages as a result of a violation" of the act.  O.C.G.A. § 10-1-399(a).  Plaintiffs have failed to allege cognizable injuries.  *See supra* Sections I–II.  Plaintiffs have also failed to allege that any act or omission of Equifax proximately caused those harms, which is necessary to establish their claims.  *See supra* Section II.  Because no Plaintiff has alleged "injury or damages as a result" of any violation by Equifax, Count 4 must be dismissed.

### 4. The GFBPA Forbids Class Actions.

Finally, the GFBPA specifically forbids class actions.  It provides that a

"person who suffers injury or damages … may bring an action individually, but not in a representative capacity."  O.C.G.A. § 10-1-399(a); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 241 F.R.D. 77, 84 (D. Me. 2007), *vacated on other grounds*, 522 F.3d 6 (1st Cir. 2008) (finding the class restriction substantive, not procedural, and refusing to allow class certification under the Georgia Fair Business Practices Act).  This Court should dismiss Plaintiffs' GFBPA claim to the extent it is brought on behalf of putative class(es).  Equifax further notes that numerous other state statutes under which Plaintiffs have asserted claims prohibit or restrict class actions[19], and those claims should also be dismissed as they are brought on behalf of putative classes.[20]

### B.  This Court Should Dismiss Plaintiffs' Claims Under Foreign State Business-Fraud And Consumer-Protection Statutes.

Plaintiffs raised a host of claims under state statutes.  These claims should be dismissed for two reasons.

---

[19] Counts 5, 11, and 24 rely on a state statute that forbids or limits class actions.

[20] Equifax acknowledges that this Court is bound by Eleventh Circuit precedent holding otherwise in regard to Alabama's deceptive-trade-practices law.  *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015).  At a minimum, however, *Lisk* presents a conflict in authority that either the *en banc* Eleventh Circuit or the Supreme Court could resolve in Equifax's favor.  *Compare id.* with *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 726–29 (D.S.C. 2016) (disagreeing with *Lisk*); *In re New Motor Vehicles*, 241 F.R.D. at 84.

### 1.   Foreign States' Deceptive-Trade-Practices Laws Cannot Govern Conduct That Took Place In Georgia.

By alleging claims under the deceptive-trade-practices laws of 19 other jurisdictions, Plaintiffs seek to impose foreign-state statutes to govern conduct that they allege occurred entirely in Georgia. *See, e.g.*, Compl., ¶ 277. As a matter of state law, however, those statutes cannot be applied extraterritorially.[21]

Nor ***could*** States constitutionally govern conduct occurring elsewhere. *See, State Farm Mut. Aut. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). Under the Dormant Commerce Clause, "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989). That is true "whether or not the commerce has effects within the State." *Id.* Under the Full Faith and Credit Clause, "[n]o State can legislate except with reference to its own jurisdiction." *Bonaparte v. Tax Ct.*, 104 U.S. 592, 594 (1881).

---

[21] *E.g.*, N.Y. Gen. Bus. Law § 349 (declaring unlawful "[d]eceptive acts or practices" only "in this state"); *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So.3d 1207, 1211 (Fla. 3d DCA 2017) (similar); *Wis. Indus. Energy Grp., Inc. v. Pub. Serv. Comm'n*, 819 N.W.2d 240, 252–53 (Wis. 2012) ("[T]he laws of a state have no extraterritorial effect.") (quotation marks and alteration omitted); *Sawyer v. Market Am., Inc.*, 661 S.E.2d 750, 754 (N.C. Ct. App. 2008) ("the Legislature has no power to enact statutes … that can extend in their operation and effect beyond the territory of the sovereignty from which the statute emanates"); *Campbell v. Albers*, 39 N.E.2d 672, 676 (Ill. Ct. App. 1942) ("laws are without force beyond the jurisdiction of the state which enacted them").

Moreover, unlike in data-breach cases arising from the theft of data acquired in commercial transactions across the country, Plaintiffs do not allege a relationship with Equifax that relates to the stolen data.  Equifax stored the stolen data on computers located in Georgia and serviced by Georgia employees.  As Plaintiffs allege, if Equifax or its agents undertook or omitted any acts, they did so wholly in this State.  *See* Compl. ¶¶ 95, 274–76, 344 (alleging that all defendant Equifax entities are Georgia companies and that actions relevant to the data breach took place in Georgia).  The Complaint is devoid of any specific allegations of Equifax conduct outside Georgia.  Moreover, if any harmful effect was felt in any other State, that effect was the direct and proximate result of an unknown third party's criminal act—not Equifax.

Laws from other States cannot be applied to "directly control[] commerce occurring wholly" within Georgia, and thus "wholly outside the boundaries" of the States that enacted them.  *See Healy*, 491 U.S. at 336.  They certainly cannot be applied to punish acts over which the State lacks any territorial jurisdiction.  *See Campbell*, 538 U.S. at 421.  Because Plaintiffs seek to impose foreign States' statutes on conduct that occurred in this State, their foreign-State deceptive-trade-practices-act claims—Counts 5–24—should be dismissed in their entirety.

56

2.      **Pleading Deficiencies Doom Plaintiffs' Statutory Claims.**

a.      **Plaintiffs Have Failed To Adequately Plead Fraud.**

Allegations of deceptive trade practices are subject to the heightened pleading standards for fraud. *E.g.*, *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).") (collecting cases); *see also Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 873 (11th Cir. 2014) (unpublished) (applying 9(b) standard when evaluating a claim alleging defendant engaged in "deceptive trade practices"); *Hines v. MidFirst Bank*, No. 1:12-CV-2527-TWT, 2013 WL 609401, at *6–*7 (N.D. Ga. Jan. 8, 2013) (Rpt. & Rec.), *adopted* 2013 WL 603883 (N.D. Ga. Feb. 19, 2013) (same).  Indeed, Plaintiffs have alleged claims under numerous state laws that courts have explicitly held are subject to the heightened pleading requirements for fraud.[22]  Additionally, all of Plaintiffs' state deceptive-trade-practices act counts rely on theories of

---

[22]   *E-Shops Corp. v. U.S. Bank Nat'l Ass'n.*, 678 F.3d 659 (8th Cir. 2012) (Minnesota); *Parks v. AT & T Mobility, LLC*, No. CIV_09-212-D, 2010 WL 830000, at *2 (W.D. Okla. Mar. 4, 2010) (Oklahoma); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) (Connecticut); *Bridgestone Ams. Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) (Tennessee).

misrepresentation and omission, and therefore sound in fraud.   Accordingly, Plaintiffs' pleading should comply with FRCP Rule 9(b).

While Plaintiffs' claims are premised on allegations of misleading omissions and affirmative misrepresentations, Plaintiffs fail to meet the requisite pleading standard because they have failed to plead facts demonstrating an injury, deception, or reliance.  *See*, *supra*, Section I–IV.  Plaintiffs thus cannot recover on their statutory claims.  *E.g.*, *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (requiring that plaintiff show actual deception and reliance); *Rodi v. S. New England School of Law*, 532 F.3d 11, 16–17 (1st Cir. 2008) (reliance required and must be reasonable); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1026–27 (11th Cir. 2003) (reliance is "an indispensable element" of fraud; affirming judgment based on failure "to plead facts constituting justifiable reliance").  All of Plaintiffs' deceptive-trade-practices claims[23] should be dismissed.

### b.    Plaintiffs Have Failed To Sufficiently Allege Scienter.

Plaintiffs repeatedly assert that Equifax "intended to mislead" Plaintiffs and that it acted "knowingly" to violate State statutes.[24]  But the Complaint is devoid of

---

[23] Counts 4–14 and 16–24.

[24] Compl., ¶¶ 369 (Count 5); 384 (Count 6); 396 (Count 7); 420 (Count 9); 436 (Count 10); 449 (Count 11); 462 (Count 12); 475 (Count 13); 486 (Count 14); 506

*any* requisite facts suggesting that Equifax knowingly violated any statute or intended to mislead Plaintiffs. *Iqbal*, 556 U.S. at 678. Plaintiffs have pled bald "labels and conclusions," *see id.*, hoping to transmute them through repetition into fact. They cannot. Because Plaintiffs have failed to plead scienter, Counts 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 17, 18, 20, 21, 22, 23, and 24 should be dismissed.

### c. Plaintiffs' Allegations Of Injury Are Insufficiently Specific Or Substantial To Survive Dismissal.

As discussed above in Sections I and II, Plaintiffs have generally failed to allege any cognizable injury proximately caused by any act or omission of Equifax. The FI Plaintiffs allege that they spent money after the data breach in an attempt to mitigate future losses. "The majority of courts in data breach cases have held that the cost to mitigate the risk of future harm does not constitute an injury … unless the future harm being mitigated against is itself imminent." *Wendy's*, 195 F. Supp. 3d at 1284 (quotation marks omitted); *see also In re SuperValu*, 870 F.3d at 771.

Numerous state statutes under which Plaintiffs have asserted claims require not only injury, but an injury that is both ***ascertainable*** and ***monetary***. *See* Ex. 1 (chart summarizing arguments on state statutory claims). And they all require Plaintiffs to allege a cognizable injury of some sort, which they have not done. *See*

---

(Count 16); 517 (Count 17); 531 (Count 18); 550 (Count 20); 563 (Count 21); 576 (Count 22); 587 (Count 23); 600 (Count 24).

*id.*; *see also In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (dismissing consumer-protection claims because "heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury"). Counts 5, 7, 8, 10, 11, 18, 19, and 24 should be dismissed.

### d. Plaintiffs' Claims Under Statutes Requiring Consumer Transactions Should Be Dismissed.

Plaintiffs allege claims under the deceptive-trade-practices statutes of numerous States when those statutes may be enforced only in connection with a **transaction** involving the sale or advertisement of **consumer** goods. *See* Ex. 1. Courts have recognized that these laws only protect consumers, not businesses. *See* Ex. 1. Counts 8, 10, 13, 19, 20 and 22 should be dismissed.

### e. Plaintiffs' Claims For Damages Under Statutes Providing Only Equitable Relief Should Be Dismissed.

Plaintiffs seek money damages under Minnesota and Nebraska statutes that permit only injunctive relief. Compl., ¶¶ 489 (Minnesota) (Count 14); 521 (Nebraska) (Count 17); Minn. Stat. § 325D.45(1); Neb. Rev. Stat. § 87-303; *see also Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 247 (Neb. Ct. App. 2007). Accordingly, the damages claims in Counts 14 and 17 should be dismissed.

### f.    Plaintiffs' Claims Under The Massachusetts Consumer Protection Act Should Be Dismissed.

Only the Massachusetts Attorney General may bring an action for a data-security breach under the Massachusetts Consumer Protection Act.[25]  Mass. Gen. Laws 93A § 4 & 93H § 6; *Katz v. Pershing*, 806 F. Supp. 2d 452, 458 (D. Mass. 2011).  Count 12 should be dismissed.

### g.    Plaintiffs' Minnesota Plastic Card Act Claim Fails.

One Plaintiff—Firefly Credit Union[26]—asserts a claim under the Minnesota Plastic Card Act, M.S.A. § 325E.64 (the "MPCA").  Compl., ¶¶ 24, 490–97.  However, the MPCA applies only to the improper storage of three specific types of payment card data—CVV codes, PIN verification numbers, and magnetic stripe data.  Minn. Stat. § 325E.64, subd. 2.  Firefly has not alleged that Equifax improperly maintained this data for any card that it issued.  Compl., ¶ 24 (alleging only that Firefly "issued payment cards that were compromised").  Count 15 should be dismissed.

---

[25] The Massachusetts Attorney General has done so.  *See Commw. of Mass. v. Equifax, Inc.*, No. 1784-cv-3009 (Mass. Super. Ct., Suffolk Cty.).

[26] Though Count 15 refers to a "Minnesota Subclass" which purports to include all Minnesota financial institutions with customers impacted in the data breach, under any circumstances, the MPSA claim would be limited to only financial institutions who issued impacted payment cards.

61

## VI.    PLAINTIFFS FAIL TO PLEAD VIABLE CLAIMS WITH REGARD TO THE PAYMENT CARD DATA.

A minority of the Plaintiffs allege that they "also issued payment cards that were compromised in the Equifax Data Breach." Compl., ¶¶ 13–14, 17, 20, 23, 25, 31–33, 36, 39, 44–52, 54–56.  On April 11, 2018, the Seventh Circuit Court of Appeals dismissed similar claims against a grocery store chain that had a data breach that compromised approximately 2.4 million payment cards used to purchase goods at its stores.  *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (2018).  In *Schnuck Markets*, the plaintiffs' complaint "presented specific figures about the scope of the data breach," including that "unencrypted data was potentially compromised for 2.4 million cards swiped at 79 Schnucks' stores from December 1, 2012 through March 30, 2013."  *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 15-CV-01125-MJR, 2017 WL 1551330, at *2 (S.D. Ill. May 1, 2017).  Those plaintiffs were also able to allege that impacted payment cards were "used in fraudulent transactions across the globe." *Id.*

Despite these allegations—which go well ***beyond*** what Plaintiffs allege here—the Northern District of Illinois dismissed the *Schnuck Markets* plaintiffs' complaint and the Seventh Circuit affirmed.  Tort law, the Seventh Circuit reasoned, did not recognize a "remedy to card-holders' banks against a retail merchant who suffered a data breach, above and beyond the remedies provided by

the network of contracts that link merchants, card-processors, banks, and card brands to enable electronic card payments." *Schnuck Markets*, 887 F.3d at 807. The Court opined that the economic-loss doctrine—which is in effect "in most jurisdictions in the United States"—holds that courts should "refuse[] to recognize tort liabilities for purely economic losses inflicted by one business on another where those businesses have already ordered their duties, rights, and remedies by contract." *Id.* at 812–13. Because the plaintiff financial institutions had agreements with card brands governing reimbursement for the losses they sought to recover in their lawsuit against *Schnuck Markets*, the Court affirmed.

This Court should apply that reasoning here. The FI Card Plaintiffs seek to recover costs allegedly incurred in order to "cancel and create new payment cards (and new uniquely-identifiable data); close or otherwise protect any deposit, transaction, checking, or other affected payment card accounts; [and] refund any cardholder for any unauthorized transactions." Compl., ¶ 252.[27] Moreover, there is no dispute that the FI Card Plaintiffs are party to the same network of agreements with card brands that the Seventh Circuit relied on in *Schnuck Markets*,

---

[27] The FI Card Plaintiffs also seek recovery for costs incurred related to "respond[ing] to a higher volume of cardholder complaints, confusion and concern; and increase[d] fraud and monitoring efforts." Compl., ¶ 252. However, as discussed in detail above, the kinds of voluntary, ripple-effect costs are not recoverable under any circumstances. *See* Sections I & II, *supra*.

as evidenced by the fraud alerts the FI Card Plaintiffs allege to have received from Visa and MasterCard.  *Id.*, ¶¶ 191–92.  As such, with respect to payment card claims, there is no meaningful distinction between the relative positions of the parties here and in *Schnuck Markets*.

Moreover, although *Schnuck Markets* analyzed Illinois and Missouri tort law, Georgia law is indistinguishable.  In Georgia, "a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."  *Gen. Elect.*, 608 S.E.2d at 637; *see supra* Section II.E.  And like in Illinois and Missouri, the application of the rule is not limited to directly contracting parties but applies whenever a party is seeking recovery governed by (or challenging conduct that is subject to) contractual obligations.  *See City of Atlanta v. Benator*, 714 S.E.2d 109, 116-17 (Ga. Ct. App. 2011) (applying economic-loss rule to bar negligence claims against contractor where contractor's actions were governed by a contract with third-party).  Finally, as was the case in *Schnuck Markets*, Georgia law does not recognize a duty to protect personal information, much less recognize the kind of special exception required to circumvent the bounds of the economic-loss rule.  *See supra* Section II.  Claims related to lost payment card data are subject to dismissal under the sound reasoning of *Schnuck Markets* and Georgia's economic-loss rule.

## VII.  PLAINTIFFS' ANCILLARY CLAIMS FAIL.

Finally, Plaintiffs' claims for declaratory judgment and equitable relief, as well its "prayer" for attorney fees, should also be dismissed.

*First*, because Plaintiffs fail to state a claim of entitlement to any substantive relief, Plaintiffs' ancillary claims for an injunction, declaratory judgment, and attorneys' fees also should be dismissed.[28]  *See Giles v. SunTrust Mortgage Inc.,* No. 1:13-CV-2992-RWS, 2014 WL 2779527, at *3 (N.D. Ga. June 19, 2014) (dismissing plaintiff's claims for "Equitable Relief, Injunctive Relief, Declaratory Relief, Punitive Damages, and Attorneys Fees . . . [b]ecause Plaintiff's substantive claims are without merit."); *Burke v. Johnson*, No: 6:16–cv–199–Orl–41TBS, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016) (Plaintiff "succumbs to the not infrequent mistake of characterizing declaratory judgment as a claim in itself.  It, however, is not a cause of action; it is a remedy.").

*Second*, even if Plaintiffs had satisfactorily pled a substantive claim—which, as set forth above, they have not—Plaintiffs' request for an injunction is still inappropriate.  This case stems from a data breach that, as Plaintiffs themselves

---

[28] Plaintiffs' request for attorneys' fees fails for the additional reason that Plaintiffs have not satisfied O.C.G.A. § 13-6-11, which requires plaintiffs to "specially plead attorneys' fees" and "allege the factual basis for seeking those fees." *Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1317, 1318 (N.D. Ga. 2016) ("Plaintiffs' prayer for attorneys' fees, standing alone, is insufficient under the pleading requirements of O.C.G.A. § 13–6–11.").

allege, Equifax discovered and remedied in July 2017.  There are no allegations that Plaintiffs continue to be harmed by any ongoing failures in Equifax's data-security practices or that a change in such practices would remedy any harm that Plaintiffs allege to have suffered.  As such, the injunction sought by Plaintiffs will not remedy or prevent any future harm and is therefore inappropriate.  *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) ("[A] preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law.").

  ***Finally***, the requested injunction is far too broad and non-specific to provide Equifax with any meaningful ability to comply, or provide this court with any meaningful standard by which to evaluate that compliance.  Plaintiffs request that the Court order Equifax to undertake eleven ambiguous actions including, "[e]nhanc[ing] endpoint and email security" and "[i]nstall[ing] an appropriate firewall."  Compl., ¶ 609.  Plaintiffs do not explain what they mean by "enhance" or "appropriate."  "Federal Rule of Civil Procedure 65(d)(1)," however, "requires that an injunctive order state the reasons for its coercive provisions, state the provisions 'specifically,' and describe the acts restrained or required 'in reasonable detail.'"  *LabMD, Inc.*, 2018 WL 3056794, at *10.  Plaintiffs' request for an order that Equifax essentially "overhaul and replace its data-security program to meet an

indeterminable standard of reasonableness" is "unenforceable." *Id*. at \*11 (holding that a similar request for an injunction failed).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint for lack of Article III jurisdiction, or, alternatively, the Court should dismiss the Complaint with prejudice for failure to state a claim.

Respectfully Submitted,
/s/  *David L. Balser*
**KING & SPALDING LLP**

David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145

1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com

jtoro@kslaw.com

*Counsel for Equifax Defendants*

DATED:  July 16, 2018

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Response was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 16th day of July, 2018.


*/s/ David L. Balser*
David L. Balser

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser
