# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>This document relates to:<br><br>SMALL BUSINESS CASES |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED SMALL BUSINESS CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. IV

INTRODUCTION ...............................................................................1

THE PARTIES AND CLAIMS ...........................................................5

    A.  The Business Plaintiffs .........................................................5

    B.  Defendants .............................................................................7

    C.  The Business Plaintiffs' Claims ...........................................8

LEGAL STANDARDS .......................................................................9

    A.  Pleading Requirements..........................................................9

    B.  Georgia Law Applies To The Common Law Claims. ...........10

ARGUMENT ....................................................................................10

I.      ALL OF THE BUSINESS PLAINTIFFS LACK ARTICLE III STANDING.10

    A.  The Business Plaintiffs Do Not Plead Sufficient Plausible Factual Allegations Demonstrating A Cognizable Injury-In-Fact.......................12

    B.  The Business Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating Traceability. .................................................17

II.     THE BUSINESS PLAINTIFFS' NEGLIGENCE CLAIM FAILS. .............20

    A.  The Business Plaintiffs Have Not Alleged Any Duty Equifax Owed To Them..........................................................................................22

        1.  Georgia Law Does Not Recognize Any Duty Owed To The Business Plaintiffs To Safeguard The PII Of Their Owners...............22

            a.   Georgia Law Does Not Recognize A General Duty to Safeguard PII..................................................................................22

i

b.   The Business Plaintiffs Invite The Court To Create A Duty Even Broader Than The Duty Rejected In *McConnell III*............24

2.   The Business Plaintiffs Fail To Allege Any Other Relevant Duty Equifax Owed To Them.............................................26

B.   The Business Plaintiffs Have Not Alleged Any Cognizable Harms To Support Their Negligence Claim. ...........................................28

1.   An "Increased Risk" Of Speculative Future Harms Is Insufficient.................................................................................29

2.   Expenses Incurred To Mitigate A Risk Of Future Harms Are Insufficient..............................................................................31

C.   The Business Plaintiffs Fail To Plead Proximate Causation...................33

1.   The Damages The Business Plaintiffs Allege Are Too Remote To Support Their Negligence Claim. ..................................33

2.   The Criminal Conduct Of The Third-Party Cyber Hackers Was An Intervening Cause.............................................................37

D.   Georgia's Economic Loss Rule Bars The Business Plaintiffs' Negligence Claim. ...............................................................39

III.   THE BUSINESS PLAINTIFFS' NEGLIGENCE *PER SE* CLAIM FAILS. ................................................................................40

A.   The Business Plaintiffs Cannot Rely On The FTC Act § 5 And "Similar State Statutes." .....................................................41

B.   The Business Plaintiffs Fail To Plead Other Elements To Support Their Negligence *Per Se* Claim.............................................44

IV.   THE COURT SHOULD DISMISS THE BUSINESS PLAINTIFFS' GEORGIA FAIR BUSINESS PRACTICES ACT CLAIM. ......................44

A.   *McConnell III* Confirms That The Georgia Fair Business Practices Act Does Not Require Safeguarding PII..............................44

ii

B.   The Business Plaintiffs Have Not Pled Reliance. ...................................45

C.   No Business Plaintiff Has Alleged Damages Caused By Any
Misrepresentation. ........................................................................46

D.   The GFBPA Forbids Class Actions. .......................................................46

V.   THE BUSINESS PLAINTIFFS' UNJUST ENRICHMENT CLAIM
SHOULD BE DISMISSED. ........................................................................47

VI.   THE BUSINESS PLAINTIFFS' O.C.G.A. § 13-6-11 CLAIM SHOULD BE
DISMISSED. ........................................................................................50

CONCLUSION ........................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Mgmt. Grp. L.P. v. Hanham*,
    812 S.E.2d 509 (Ga. Ct. App. 2018)...............................................................22

*Albany Urology Clinic, P.C. v. Cleveland*,
    528 S.E.2d 777 (Ga. 2000) .........................................................................26

*Alexander v. Sandoval*,
    532 U.S. 275 (2001).....................................................................................43

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) .....................................................................9

*Andrews v. Kinsel*,
    40 S.E. 300 (Ga. 1901) ...............................................................................38

*In re Apple iPhone Antitrust Litig.*,
    11-CV-06714-YGR, 2013 WL 4425720 (N.D. Cal. Aug. 15, 2013)................12

*Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*,
    850 F. Supp. 2d 1371 (S.D. Ga. 2011) ..........................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................9, 11

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ..........................................................15, 16, 32

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................9, 11

*Bellsouth Telecomms., LLC v. Cobb County*,
    802 S.E.2d 686 (Ga. Ct. App. 2017)............................................................40

*Blackford v. Wal–Mart Stores, Inc.*,
    912 F.Supp. 537 (S.D. Ga. 1996) ................................................................29

iv

*Bonard v. Lowe's Home Centers, Inc.,*
    479 S.E.2d 784 (Ga. Ct. App. 1996)....................................................38

*Brenner v. Future Graphics, LLC,*
    258 F.R.D. 561 (N.D. Ga. 2007) ......................................................48

*Brock v. Avery,*
    110 S.E.2d 122 (Ga. Ct. App. 1959)............................................40, 41

*Byrd v. English,*
    43 S.E.2d 419 (Ga. 1903) ...................................................34, 35, 36

*City of Atlanta v. Benator,*
    714 S.E.2d 109 (Ga. Ct. App. 2011)..................................................39

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).................................................................12, 16

*Collins v. Athens Orthopedic Clinic,*
    --- S.E.2d ---, 2018 WL 3134877 (Ga. Ct. App. July 16, 2018)..................31, 32

*CSX Transp., Inc. v. Williams,*
    608 S.E.2d 208 (Ga. 2005) ..............................................................25

*David G. Brown, P.E., Inc. v. Kent,*
    561 S.E.2d 89 (Ga. 2002) ................................................................50

*Dowdell v. Wilhelm,*
    699 S.E.2d 30 (Ga. Ct. App. 2010)...............................................33, 36

*Fejzulai v. Sam's West, Inc.,*
    205 F. Supp. 3d 723 (D.S.C. 2016) ..................................................47

*Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel,*
    194 F.3d 1227 (11th Cir. 1999) ............................................17, 18, 19

*Fulton v. Hecht,*
    580 F.2d 1243 (5th Cir. 1978) .........................................................42

*Gen. Elec. Co. v. Lowe's Home Centers, Inc.,*
    608 S.E.2d 636 (Ga. 2005) ..............................................................39

v

*Goldstein, Garber & Salama, LLC v. J.B.,*
   797 S.E.2d 87 (Ga. 2017) .................................................................38

*Griffin v. Coca-Cola Enterprises, Inc.,*
   686 F. App'x 820 (11th Cir. 2017) ...................................................11

*Hammond v. Bank of New York Mellon Corp.,*
   No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June
   25, 2010) ...........................................................................................20

*Heinisch v. Bernardini,*
   CV414-221, 2014 WL 5872698 (S.D. Ga. Nov. 12, 2014)...............29

*Helpling v. Rheem Mfg. Co.,*
   1:15-CV-2247-WSD, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ...............39

*Hite v. Anderson,*
   643 S.E.2d 550 (Ga. Ct. App. 2007)................................................44

*Holmes v. Sec. Inv'r Prot. Corp.,*
   503 U.S. 258 (1992)..........................................................................37

*In re The Home Depot Consumer Data Breach Litig.,*
   No. 1:14-cv-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18,
   2016) .................................................................................................42

*Huggins v. Aetna Cas. & Sur. Co.,*
   264 S.E.2d 191 (Ga. 1980) ..............................................................27

*Kaminer v. Canas,*
   653 S.E.2d 691 (Ga. 2007) ..............................................................29

*KMS Rest. Corp. v. Wendy's Int'l, Inc.,*
   361 F.3d 1321 (11th Cir. 2004) .......................................................24

*Knox v. Samsung Elec. Am., Inc.,*
   No. 08-4308, 2009 WL 1810728 (D.N.J. June 25, 2009) .................48

*Krottner v. Starbucks Corp.,*
   628 F.3d 1139 (9th Cir. 2010) ...........................................................7

*LabMD v. Fed. Trade Comm'n*,
— F.3d —, 2018 WL 3056794 (11th Cir. June 6, 2018) ...................................42

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ...............................................................33

*Lambert v. Hartman*,
517 F.3d 433 (6th Cir. 2008) ..............................................................20

*Lisk v. Lumber One Wood Preserving, LLC*,
792 F.3d 1331 (11th Cir. 2015) ...........................................................47

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................12, 17

*Marshall v. McIntosh Cty.*,
759 S.E.2d 269 (Ga. Ct. App. 2014)......................................................31

*McConnell v. Georgia Department of Labor*,
814 S.E.2d 790 (Ga. Ct. App. 2018)...............................................*passim*

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
241 F.R.D. 77 (D. Me. 2007)...............................................................47

*Norman v. Jones Lang Lasalle Ams., Inc.*,
627 S.E.2d 382 (Ga. Ct. App. 2006)........................................28, 40, 43

*Oliver v. SD-3C LLC*,
No. C 11-01260 JSW, 2015 WL 10890656 (N.D. Cal. Sept. 30,
2015) .......................................................................................12

*Parker v. Brush Wellman, Inc.*,
377 F. Supp. 2d 1290 (N.D. Ga. 2005).............................................30, 32

*Pate v. Oakwood Mobile Homes, Inc.*,
374 F.3d 1081 (11th Cir. 2004) ...........................................................26

*Paws Holdings, LLC v. Daikin Indus., Ltd.*,
No. CV 116-058, 2017 WL 706624 (S.D. Ga. Feb. 22, 2017).....................30

vii

*Provost v. Aptos, Inc.,*
No. 1:17-CV-02120-ELR, 2018 WL 1465766 (N.D. Ga. Mar. 12,
2018) ......................................................................................................32

*Queen v. Craven,*
97 S.E.2d 523 (Ga. Ct. App. 1957) ....................................................25

*Quinn v. City of Cave Spring,*
532 S.E.2d 131 (Ga. Ct. App. 2000) .............................................28, 43

*Randolph v. ING Life Ins. & Annuity Co.,*
973 A.2d 702 (D.C. 2009) ...................................................................32

*Rasnick v. Krishna Hosp., Inc.,*
713 S.E.2d 835 (Ga. 2011) .................................................................25

*Reilly v. Ceridian Corp.,*
664 F.3d 38 (3d Cir. 2011) ...........................................................15, 16

*Remax the Mountain Company v. Tabsum, Inc.,*
634 S.E.2d 77 (Ga. Ct. App. 2006) ...............................................35, 39

*Resnick v. AvMed, Inc.,*
693 F.3d 1317 (11th Cir. 2012) ..........................................................17

*Sitterli v. Csachi*,
811 S.E.2d 454 (Ga. Ct. App. 2018) .............................................48, 49

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ........................................................10, 12, 13

*Spooner v. City of Camilla,*
568 S.E.2d 109 (Ga. Ct. App. 2002) .............................................28, 43

*In re Stand 'n Seal, Prods. Liability Litig.,* No. 1:07-MD-1804-TWT,
2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009) .........................10

*In re SuperValu, Inc.,*
870 F.3d 763 (8th Cir. 2017) .......................................................16, 32

*Tiismann v. Linda Martin Homes Corp.*,
  637 S.E.2d 14 (Ga. 2006) .................................................................45

*Torres v. Wendy's Co.*,
  195 F. Supp. 3d 1278 (M.D. Fla. 2016).......................................17, 32

*Union Camp Corp. v. S. Bulk Indus., Inc.*,
  386 S.E.2d 866 (Ga. Ct. App. 1989)................................................35

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).........................................................................18

*W. Stone & Metal Corp. v. Jones*,
  348 S.E.2d 478 (Ga. Ct. App. 1986)................................................34

*Walker v. CSX Transp. Inc.*,
  650 F.3d 1392 (11th Cir. 2011) ..................................................34, 36

*Wells Fargo Bank, N.A. v. Jenkins*,
  744 S.E.2d 686 (Ga. 2013) .......................................................*passim*

*Whitehead v. Cuffie*,
  364 S.E.2d 87 (Ga. Ct. App. 1987)..................................................31

*Willingham v. Global Payments, Inc.*,
  No. 1:12-cv-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5,
  2013) ............................................................................................27, 46

*Willis v. Georgia N. Ry. Co.*,
  314 S.E.2d 919 (Ga. Ct. App. 1984)................................................35

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
  247 F.3d 1262 (11th Cir. 2001) ..................................................18, 19

## Statutes

15 U.S.C. § 45 .........................................................................................41

15 U.S.C. § 45(a) & (b)............................................................................42

18 U.S.C. § 1030(a)(5)(C) .......................................................................38

O.C.G.A. § 9-2-7..................................................................................48, 49, 50

O.C.G.A. § 10-1-399(a) ...............................................................................46, 47

O.C.G.A. § 13-6-11......................................................................................8, 50

O.C.G.A. § 51-12-8............................................................................................30

**Treatises**

Restatement (Second) of Torts §§ 323, 324 (1965).................................................27

Restatement (Second) of Torts Section 324A..................................................26, 27

## INTRODUCTION

The ten small business plaintiffs ("Business Plaintiffs") do not contend that any of their own confidential business information was compromised in the 2017 criminal cyber-attack on Equifax's systems.  Rather, in trying out a new legal theory that has never been advanced—much less accepted—in data breach litigation, the Business Plaintiffs assert claims based on the theft of their owners' personally identifying information ("PII").  The crux of the Business Plaintiffs' Complaint is that their owners' PII was compromised in the Equifax data breach, and that the Business Plaintiffs *could* be harmed because they rely on the creditworthiness of their owners to obtain business credit.

This unprecedented theory of liability fails.  The Business Plaintiffs' claims are all premised on Equifax's alleged wrongful conduct with respect to *their owners*.  But the Business Plaintiffs' owners are not parties to this lawsuit; as natural persons, the owners' claims are being prosecuted in the Consolidated Consumer Class Action Complaint ("Consumer Complaint").  Nor may the Business Plaintiffs commandeer their owners' claims here.  A plaintiff may not sue for an alleged wrong done to someone else.

This fundamental defect ripples through the Business Plaintiffs' Complaint, providing five bases for dismissal.

*First*, the Complaint is devoid of plausible factual allegations necessary to support Article III standing.  The Business Plaintiffs do not allege any cognizable injuries or facts about how their "injuries" are traceable to Equifax's conduct.

The Complaint does not allege that the Business Plaintiffs' data was compromised in the breach.  Rather, the Business Plaintiffs allege that they were harmed in two ways: (1) by compromising their owners' PII, and allegedly placing their owners at an increased risk of fraud or identity theft, the breach supposedly "jeopardized . . . the creditworthiness and continued operations" of the Business Plaintiffs; and (2) they incurred voluntary costs "in the form of a business credit report and devotion of resources to monitoring [their] financial accounts" based on the "risk" that their owners' credit will be negatively affected by the breach.  These supposed injuries are far too speculative and attenuated to support standing.  *None* of the Business Plaintiffs alleges that their owners' credit has actually been negatively impacted as a result of the data breach.  Nor do any of the Business Plaintiffs allege that their business creditworthiness and continued operations have actually suffered because of the data breach.

Under well-established Supreme Court precedent, the speculative harms the Business Plaintiffs have pled are not cognizable Article III injuries.  Regardless, the Complaint does not allege any specific "costs" any Business Plaintiff has

2

(allegedly) had to incur.  The Business Plaintiffs, in short, fail to plead any Article III injury-in-fact.

Nor have the Business Plaintiffs adequately alleged that their supposed injuries are fairly traceable to the data breach.  Data breaches today are unfortunately commonplace—there were more than 1,500 breaches in 2017 alone—and no Business Plaintiff pleads that their owners' PII was not stolen in any prior breach.  It is, therefore, entirely speculative for any Business Plaintiff to claim any specific risk of future harm based on the Equifax data breach, as opposed to another breach or fraudulent act.  Further, even if the costs the Business Plaintiffs allegedly incurred to mitigate a speculative risk of future harm were legally cognizable injuries (and they are not), their claims would still fail because the criminal acts by unknown third-party hackers broke any causal connection between Equifax's alleged conduct and the purported harms.

Because the Business Plaintiffs fail to plead sufficient facts to support Article III's requirements for standing, the Court should dismiss the Complaint for lack of jurisdiction.

**Second**, the Business Plaintiffs' negligence claim should be dismissed.  In light of the Georgia Court of Appeals' recent decision in *McConnell v. Georgia Department of Labor*, 814 S.E.2d 790 (Ga. Ct. App. 2018) ("*McConnell III*"),

3

Equifax clearly did not owe the *Business Plaintiffs* a duty to safeguard PII of the *Consumer Plaintiffs*.  The Business Plaintiffs' negligence claim is thus doomed.

Moreover, the Business Plaintiffs have not alleged any legally cognizable harm—they claim only a generalized risk of highly speculative future harms, and costs purportedly incurred to mitigate that risk.  And in any event, the Business Plaintiffs concede that all of their alleged harms are remote "consequences *flowing from* the unauthorized dissemination of *their owner's* Personal Information." Compl. ¶ 5 (emphasis added).  As a matter of law, those alleged down-stream injuries are too remote and attenuated to show proximate causation or state a claim for negligence.  Regardless, Georgia's economic loss rule bars the Business Plaintiffs' negligence claim because they seek only economic damages, not damages for any injury to person or property.

**Third**, the Business Plaintiffs' attempt to shoehorn their claims into the FTC Act and unspecified "similar state statutes" to establish "negligence *per se*" also fails.  The FTC Act does not set out any specific statutory duty to protect PII or to notify small businesses of a data breach involving their owners' PII, and the Business Plaintiffs' vague reference to "similar state statutes" does not impose any duty on Equifax.  Nor have the Business Plaintiffs met their burden of pleading facts sufficient to demonstrate the other basic elements of a negligence *per se*

4

claim including causation and injury.  For these reasons, the Court should dismiss the negligence *per se* claim.

*Fourth*, the Business Plaintiffs' claim under the Georgia Fair Business Practices Act ("GFBPA") fails because the GFBPA does not impose a duty to safeguard third-parties' PII.  Even if the statute did apply (and it does not), the Business Plaintiffs' pleadings are defective.  For example, the Business Plaintiffs fail to adequately plead that they *relied* on any misrepresentation Equifax supposedly made and suffered damages as a proximate result of any such reliance.

*Fifth*, the Business Plaintiffs' unjust enrichment claim lacks merit.  To state such a claim, the Business Plaintiffs would have to allege that *they* conferred a valuable benefit (*i.e.*, their PII) on Equifax and that *they* reasonably expected to be repaid.  But the Business Plaintiffs expressly allege that they did *not* give any compromised information to Equifax.  Nor do they allege that any of their information was involved in the data breach.  The unjust enrichment claim should be dismissed.

## THE PARTIES AND CLAIMS

### A.    The Business Plaintiffs

The Business Plaintiffs are ten "small businesses" existing under the laws of seven U.S. states: (i) California (Sharps Investment Enterprises, LLC), (ii)

Delaware (The Mello Group, Inc.), (iii) Florida (Pierce N Tell of Sarasota, LLC), (iv) Georgia (Forest Express Properties, LLC; St. Luc Holdings (SLH), LLC f/k/a Just Rev, LLC; Martin's Auto Repair; and Rafco, LLC), (v) Mississippi (Kademi, LLC), (vi) Ohio (Champs Sports Bar & Grill Co., d/b/a TJ's on the Avenue), and (vii) Texas (Coastal Communications, LLC).  Compl. ¶¶ 12-21.

The Business Plaintiffs generally allege that they "rel[y] in part on credit to operate," and that they "rel[y] on the personal credit" of "an individual whose [p]ersonal [i]nformation was compromised in the Equifax breach"—*i.e.*, their owners—"to obtain and maintain [their] own credit."  *Id.*  The Business Plaintiffs, however, do not allege that their owners have suffered identity theft or any fraudulent account activity as a result of the Equifax data breach, much less that the breach has harmed their owners' creditworthiness.

The Business Plaintiffs allege they have "reasonably incurred costs (in the form of a business credit report and devotion of resources to monitoring [their] financial accounts) based on the substantial risk of harm from the breach."[1]  *Id.* But the Business Plaintiffs fail to provide any specificity as to which "business

---

[1] The Business Plaintiffs' allegations about the costs they incurred are identical with one exception.  Plaintiff Champs Sports Bar & Grill Co. does not allege that it obtained a business credit report or monitored its financial accounts.  Rather, it alleges that owner "Craig Pulling spent time and effort on behalf of Plaintiff Champs Sports Bar & Grill Co. monitoring financial accounts and searching for fraudulent activity."  *Id.* ¶ 20.

credit report(s)" they purchased, from whom the reports were purchased, or why doing so was necessary or even related to the Equifax data breach.  And they fail to identify what "resources" they allegedly devoted to monitoring their financial accounts.

### B.    Defendants

The Business Plaintiffs assert claims against Equifax Inc. ("Equifax Inc."), Equifax Information Services LLC ("EIS"), and Equifax Consumer Services LLC ("ECS") (together with Equifax Inc. and EIS, "Equifax" or "Defendants").  Compl. ¶¶ 22-29.  Defendant Equifax Inc., a Georgia corporation with its principal place of business in Atlanta, Georgia, is a leading global provider of information, human-resources, and data-analytics services for businesses, governments, and consumers. Information stored on Equifax Inc.'s servers was accessed during the 2017 data breach.

Defendant EIS, a subsidiary of Equifax Inc., is a Georgia limited liability company.  EIS is a national consumer reporting agency that stores and furnishes consumer credit reporting data.  EIS's records were not accessed during the data breach.

Defendant ECS, a subsidiary of Equifax Inc., is a Georgia limited liability company that (among other things) offers credit monitoring services to consumers.

Throughout the Complaint, the Business Plaintiffs make no distinction between Equifax Inc., EIS, and ECS, making allegations only as to "Equifax."

### C.   The Business Plaintiffs' Claims

The Business Plaintiffs assert five claims on behalf of a putative nationwide class of all "businesses in the United States that have relied on an owner's personal credit to obtain or maintain financing between September 7, 2017 and the present, which owner's Personal Information was compromised" as a result of the Equifax data breach: (i) negligence; (ii) negligence per se; (iii) violation of the GFBPA; (iv) unjust enrichment; and (v) recovery of litigation expenses pursuant to O.C.G.A. § 13-6-11. *See* Compl. ¶¶ 226-73.

All five of these claims are already being prosecuted in the Consumer Complaint on behalf of a putative nationwide class of Consumer Plaintiffs "whose Personal Information was compromised as a result of the data breach"—a definition that includes the Business Plaintiffs' owners. Consumer Compl., Dkt. No. 374, ¶ 296; *see id*. ¶¶ 333-47 (negligence), 348-54 (negligence *per se*), 355-81 (violation of GFBPA), 382-91 (unjust enrichment), and 1404-06 (litigation expenses). Additionally, all of the types of relief requested by the Business Plaintiffs are subsumed within the broader relief sought by the Consumer

Plaintiffs. *Compare* Compl. at Request for Relief, ¶¶ 2-6 *with* Consumer Compl., Dkt. No. 375, at Request for Relief, ¶¶ 2-3, 5, 7, and 9.

## LEGAL STANDARDS

### A.    Pleading Requirements.

The Business Plaintiffs' Complaint must contain allegations to "state a claim for relief that is plausible—and not merely possible—on its face." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a complaint under Rule 12(b)(6), the Court accepts as true all factual allegations contained therein, but is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where a Complaint lacks a sufficient factual basis upon which the Court could infer the existence of an essential element [of a claim], dismissal is appropriate." *Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*, 850 F. Supp. 2d 1371, 1374 (S.D. Ga. 2011), *aff'd*, 434 F. App'x 826 (11th Cir. 2011).

## B.     Georgia Law Applies To The Common Law Claims.

Although the Business Plaintiffs exist under the laws of several States, they do not identify any foreign state statute that governs their common law claims, and instead concede that "the common law of Georgia applies to the nationwide common law claims of all Nationwide Class members."  Compl. ¶ 225.  For purposes of this Motion to Dismiss, this Court should presume that Georgia common law governs those claims.  *See In re Stand 'n Seal, Prods. Liability Litig.*, No. 1:07-MD-1804-TWT, 2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009) ("If the parties do not identify any foreign statutes in their pleadings, it is presumed that no foreign statutes are involved.") (Thrash, J.).[2]

## ARGUMENT

## I.     ALL OF THE BUSINESS PLAINTIFFS LACK ARTICLE III STANDING.

To establish standing under Article III of the U.S. Constitution, each Business Plaintiff bears the burden of showing that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

---

[2] Equifax only accepts these allegations as true for purposes of this Motion to Dismiss.  The Company respectfully preserves its right to raise the argument that Georgia law may not apply to the common law claims at later stages in the litigation, including without limitation the summary judgment, class certification, and trial stages.

*Robins*, 136 S. Ct. 1540, 1547 (2016).   The Business Plaintiffs must present allegations to support Article III standing that are sufficient to satisfy the *Iqbal* and *Twombly* pleading standards.   *See, e.g.*, *Griffin v. Coca-Cola Enterprises, Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017) (affirming dismissal because plaintiff "failed to allege facts sufficient to establish her standing" under *Iqbal*).

The Business Plaintiffs' allegations fail to establish the elements necessary for Article III standing.  The Business Plaintiffs do not allege that their information was compromised during the data breach.  Instead, they merely allege that their owners' Personal Information was compromised.  The Business Plaintiffs allege that because their owners' Personal Information was compromised, the breach has "jeopardized" "the creditworthiness and continued operations" of the Business Plaintiffs and that they have "reasonably incurred costs . . . based on the substantial *risk* of harm from the breach."  Compl. ¶¶ 12-21 (*emphasis added*).   But the chain of events that would have to occur—from the compromise of their owners' PII to any harm to the Business Plaintiffs' creditworthiness or continued operations—is too attenuated to support Article III standing.  Moreover, the Business Plaintiffs make no attempt to allege any facts specific to each Plaintiff explaining how the compromise of its owner's PII will negatively affect its creditworthiness or continued operations.  No putative class action—data breach or otherwise—can

11

proceed on the basis of such generic allegations. *See, e.g.*, *Oliver v. SD-3C LLC*, No. C 11-01260 JSW, 2015 WL 10890656, at *6 (N.D. Cal. Sept. 30, 2015) (dismissing claims where plaintiffs relied on "catch-all allegation[s]").  Each Business Plaintiff must allege facts to support its individual claim.  *In re Apple iPhone Antitrust Litig.*, 11-CV-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013) ("Plaintiffs do not satisfy Article III standing with collective allegations . . . [a]t a minimum, Plaintiffs must allege facts showing that each named Plaintiff has personally suffered an injury-in-fact.").

### A.    The Business Plaintiffs Do Not Plead Sufficient Plausible Factual Allegations Demonstrating A Cognizable Injury-In-Fact.

No Business Plaintiff has alleged plausible facts sufficient to demonstrate an injury-in-fact.  To establish an injury-in-fact, a plaintiff must show that its injury is "concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo*, 136 S. Ct. at 1547 (quotation marks omitted).  "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564–65 n.2 (1992).  The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013) (alteration and quotations omitted). These requirements for alleging an injury-in-fact apply equally in the class-action context. *See Spokeo*, 136 S. Ct. at 1547 n.6.

The Business Plaintiffs' alleged injuries fall into two categories: (1) the "increased risk" of speculative future harm to their creditworthiness and continued operations, and (2) voluntary costs to mitigate that alleged risk of future harm.[3] But to establish any actual harm from that purported risk, the Business Plaintiffs would have to plead, and ultimately prove, the following chain of events:

- The owner's PII was compromised in the Equifax data breach;

- The owner's PII was obtained by some criminals as a result of the Equifax data breach and then misused by those criminals;

- The owner's credit was directly impacted by the criminals' misuse of his or her PII (as opposed to any other factor among a multitude of factors that can affect a consumer's credit);

- The Business Plaintiff thereafter attempted to rely on the owner's credit for its own "creditworthiness and continued operations"; and

---

[3] Plaintiff Champs Sports Bar & Grill Co., however, has failed even to allege that it voluntarily incurred costs to mitigate the alleged risk. It only alleges that its *owner* "spent time and effort" on behalf of the Plaintiff "monitoring financial accounts and searching for fraudulent activity." Compl. ¶ 20.

- The Business Plaintiff's "creditworthiness [or] continued operations" were harmed—e.g., a denied loan application or increased interest rate—as a direct result of the owner's damaged credit (as opposed to any other element taken into consideration for the extension of business credit).

This fanciful chain of events reveals the hypothetical and conjectural nature of the Business Plaintiffs' alleged harm. Although the Business Plaintiffs would have to plead all of these facts to come close to pleading an injury, they fail to do so. The Business Plaintiffs' factual allegations stop at the first event in this chain: that their individual owners' PII was compromised. They do not allege that any of the subsequent events have occurred; nor do they address the numerous intervening factors that would break the chain at each step. For instance, if a fraudulent transaction is timely detected and addressed, it likely would not affect an individual's credit score. And even if an individual owner's credit score were reduced, his or her business's access to credit might not be affected, depending on many other factors, including the business's own credit score, the credit scores of its other owners, and the forms of credit it uses. The Business Plaintiffs' allegations do not address these issues or otherwise support their speculative claims of harm.

14

The Business Plaintiffs' alleged "harm" of increased *risk* to their "creditworthiness and continued operations" is therefore plainly insufficient. In the data breach context, numerous courts in cases where the plaintiffs' *own* PII was impacted have held that a risk of future harm is "too speculative to constitute an injury-in-fact." *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017); *see Reilly v. Ceridian Corp.*, 664 F.3d 38, 40, 44 (3d Cir. 2011) (plaintiff-employees' increased-risk-of-identity-theft theory too hypothetical and speculative to establish "certainly impending" injury-in-fact after unknown hacker penetrated payroll system). Here, the Business Plaintiffs' business information was not even compromised in the data breach, and the chain of events—from the compromise of their owners' PII to any harm to the Business Plaintiffs—is far too attenuated to support standing.

The Business Plaintiffs also allege that they incurred costs "in the form of a business credit report and devotion of resources to monitoring [their] financial accounts." Compl. ¶¶ 12-21. But they do not allege that they were required to obtain business credit reports or to devote resources to monitoring their financial accounts. *See id.* (failing to specify how they were required to obtain "a business credit report and devot[e] . . . resources to monitoring [their] financial accounts"). Rather, they allege that "[f]inancial advisors, experts, and even the media are

15

advising such [small] businesses to procure . . . credit protection products." *Id.* ¶ 6. The Business Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper*, 133 S. Ct. at 1151. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.*

Numerous courts have applied this rule in the data breach context, concluding that mitigation efforts following a data breach do not confer standing. *See*, *e.g.*, *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (rejecting argument that "costs . . . incurred to mitigate . . . risk of identity theft, including time [plaintiffs] spent reviewing information about the breach and monitoring their account information, constitute[d] an injury in fact for purposes of standing"); *Beck*, 848 F.3d at 276–77 (holding that "self-imposed harms cannot confer standing"); *Reilly*, 664 F.3d at 46 (concluding that "alleged time and money expenditures to monitor . . . financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged

'increased risk of injury'"); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) (same).  The Court should apply the same rule here.[4]

Because none of the Business Plaintiffs have alleged a cognizable injury-in-fact, the Court should dismiss this case for lack of jurisdiction.

### B.   The Business Plaintiffs Do Not Allege Sufficient Plausible Factual Allegations Demonstrating Traceability.

Even if the Business Plaintiffs had alleged a sufficient injury-in-fact—and they have not—the "demonstration of [that] injury is necessary to prove standing, [but] it alone is not sufficient."  *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999).  The traceability element of Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Lujan,* 504 U.S. at 560.  Furthermore, the "causal

---

[4] Some courts have held that plaintiffs have standing where the plaintiff has sufficiently pled facts demonstrating that the risk of harm is imminent. *See*, *e.g.*, *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) (finding standing where there were factual allegations that identity theft had occurred); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (finding standing where allegations included that a thief stole a laptop computer containing the unencrypted names, addresses and Social Security numbers of approximately 97,000 employees, and at least one plaintiff alleged that the information had been used to open an account). There are no such allegations here, and regardless, the Business Plaintiffs' theory of harm is too attenuated to support standing.

17

connection cannot be too attenuated." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1274 (11th Cir. 2001).  To meet the traceability requirement, the Business Plaintiffs must allege facts demonstrating "that the injury is indeed fairly traceable to the defendant's acts or omissions." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977).

The Eleventh Circuit's decision in *Florida Association of Medical Equipment Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, demonstrates the insufficiency of the Business Plaintiffs' speculative allegations.  In that case, medical equipment suppliers and an association of medical equipment suppliers challenged a medical-supply bidding process that a federal agency had initiated on the ground that the agency had failed to comply with a federal statute designed to ensure public access and participation.  *Id*. at 1229.  The district court denied the plaintiffs' petition for a preliminary injunction "on the basis that [the plaintiffs] had not pointed to any injury traceable to the alleged [statutory] violation which could be redressed by the requested injunctive relief."  *Id*.  The Eleventh Circuit affirmed, agreeing with "the district court that [the plaintiffs'] allegations of harm or injury are much too attenuated to meet the requirements for standing."  *Id*. at 1230.  The plaintiffs' argument, the Court explained, "seem[ed] to be that: *if* [plaintiffs] were to bid, [plaintiffs] *could* be forced to participate in a 'tainted'

18

bidding project, which *might* prove unsuccessful, and *potentially* threaten the livelihood of [their] membership *should their bids be rejected.*" *Id.* (emphasis in original). In the court's view, it was "unclear how this chain of events—as opposed to myriad other possible causes—would have contributed to the possible loss by [plaintiffs'] membership of any prospective bid, assuming one was submitted by all the plaintiffs in the first place." *Id.* at 1230–31.

The Business Plaintiffs' allegations rely on similar speculation and are more "attenuated" than the plaintiffs' allegations in *Apfel*. As in *Apfel*, it is "unclear" how any action or inaction by Equifax—as opposed to, say, the third-party hackers or even *other data breaches* that the Business Plaintiffs admit are prevalent—would have led to the Business Plaintiffs' voluntary expenditures or future harm to its credit or continued operations. *See, e.g.*, Compl. ¶¶ 68–74 (describing other major data breaches). Thus, the causal connection from the data breach to the alleged harm to the Business Plaintiffs is too attenuated to establish traceability. *See Wooden*, 247 F.3d at 1274. All of the harms arise out of the loss of *their owners'* PII, the *possibilities* that the loss of that PII *could* lead to identity theft *and* result in harm to *their owners'* creditworthiness, and the *possibility* that other entities providing commercial credit will behave in a certain way *if* the owners' creditworthiness is adversely affected.

19

Other courts, too, have refused to recognize claims based on such unsupported and attenuated suggestions of causation in the data breach context. For example, in *Hammond v. Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *13 (S.D.N.Y. June 25, 2010), the court found that the plaintiffs failed to allege sufficiently any fraud that was causally connected to the loss of the data tapes at issue in the case.  And, in data theft cases where courts have found standing, plaintiffs had more than speculation upon which to base their claims.  *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 437–438  (6th Cir. 2008) (holding that the plaintiff had satisfied standing requirements where she "was able to link the act of identity theft to the personal information that was [improperly] made available").  The Business Plaintiffs do not allege any facts in the Complaint that would come close to proving this sort of connection between Equifax's alleged conduct and their alleged injuries.

The Business Plaintiffs' claims should therefore be dismissed for lack of jurisdiction.

## II.     THE BUSINESS PLAINTIFFS' NEGLIGENCE CLAIM FAILS.

Even if this Court were to determine it had jurisdiction to consider this case (which it does not), the Business Plaintiffs do not sufficiently allege facts supporting a claim upon which relief can be granted.  To support a negligence

20

claim under Georgia law, a plaintiff must prove "the existence of a duty on the part of the defendant, a breach of such duty, causation of the injury alleged, and damages as a result of the alleged breach of duty." *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687 (Ga. 2013). The Business Plaintiffs fail to sufficiently plead these necessary elements.

*First*, the Business Plaintiffs' negligence claim fails because Georgia law does not recognize any duty to safeguard an individual's PII. And because the Business Plaintiffs' owners—*i.e.*, the Consumer Plaintiffs—cannot even show that Equifax had a duty under Georgia law to protect their PII from unauthorized access (*see* Dkt. No. 425 at 24-32), it is axiomatic that the Business Plaintiffs cannot show Equifax owed *them* a duty to protect the PII of their *owners*.

*Second*, the Business Plaintiffs fail to allege that they suffered any damages—*i.e.*, legally cognizable harms—as a result of Equifax's purported breach of duty.

*Third*, the Business Plaintiffs fail to put forth allegations that would permit the Court to find that Equifax's purported breach of duty was the proximate cause of any cognizable harm.

*Fourth*, the Business Plaintiffs' negligence claim is barred by Georgia's economic loss rule.

21

**A.      The Business Plaintiffs Have Not Alleged Any Duty Equifax Owed To Them.**

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Access Mgmt. Grp. L.P. v. Hanham*, 812 S.E.2d 509, 511 (Ga. Ct. App. 2018) (internal citation omitted).  The question whether a duty exists is a question of law.  *Id.*

The Business Plaintiffs fail to plead a duty to support their negligence claim because (i) Georgia law does not recognize a duty to safeguard an individual's PII; (ii) even if such a duty did exist, it did not extend to the Business Plaintiffs because the stolen PII did not belong to them; and (iii) the Business Plaintiffs fail to allege any other source of a duty owed to them by Equifax.

1.      Georgia Law Does Not Recognize Any Duty Owed To The Business Plaintiffs To Safeguard The PII Of Their Owners.

a.      *Georgia Law Does Not Recognize A General Duty to Safeguard PII.*

As explained in Equifax's motions to dismiss the Consumer Complaint (*see* Dkt. No. 425 at 24-32) and Financial Institutions Complaint (*see* Dkt. No. 435 at 28-31), the Georgia Court of Appeals' recent decision in *McConnell III* confirms that Georgia does not recognize any "duty of care to safeguard personal information." *McConnell III*, 814 S.E.2d at 799.  In *McConnell III*, the court explained that a plaintiff asserting a negligence claim must first prove "the

existence of a duty on the part of the defendant," and that the duty must arise "either from a valid legislative enactment . . . or be imposed by a common law principle recognized in the caselaw." *Id.* at 797. The *McConnell III* court then expressly held that a duty to safeguard personal information "has no source in Georgia statutory law or caselaw." *Id.* at 799. Accordingly, *McConnell III* forecloses the existence of any duty under Georgia law upon which the Business Plaintiffs can base their negligence claim.

*McConnell III* is fully in line with the Georgia Supreme Court's earlier decision on the question of duty in *Jenkins*, which rejected the plaintiff's argument that Georgia law imposes a duty to protect an individual's PII. 744 S.E.2d at 687-88. The court in *Jenkins* concluded that the federal Gramm-Leach-Bliley Act's "aspirational statement of Congressional policy" was not sufficient to impose a duty, "the alleged breach of which would give rise . . . to a cause of action for negligence," to guard against unauthorized access to confidential information. *Id.* Significantly, the *Jenkins* court refused to create this *new* duty—indicating that none exists at Georgia common law—and cautioned against "usurp[ing] legislative

authority by inferring or supplying" a duty not found in statutory or existing case law. [5] *Id.*

Because Georgia law does not recognize a duty to safeguard an individual's PII, the Business Plaintiffs cannot establish a duty upon which to base their negligence claim.

### b.   *The Business Plaintiffs Invite The Court To Create A Duty Even Broader Than The Duty Rejected In* McConnell III.

The Business Plaintiffs propose a duty even broader than the duty expressly rejected by Georgia Court of Appeals in M*cConnell III—i.e.*, that "Equifax owed a duty *to the Business Plaintiffs*" to safeguard the PII of *their owners*.  Compl. ¶ 227. In *McConnell III* the court found there was no duty to safeguard PII where the defendant had disseminated the plaintiffs' *own* names, Social Security numbers, ages, phone numbers, and email addresses to over 1,000 different third-parties. Here, the Business Plaintiffs ask the Court to hold that Equifax owed them a duty

---

[5] As a federal Court sitting in diversity, this Court should "decide the case the way it appears the [Georgia] Supreme Court would decide it," and "[i]n the absence of any [Georgia] Supreme Court decisions close enough on point," the Court should "look to decisions of the [Georgia] intermediate appellate courts and follow them unless there is some *really persuasive* indication that the [Georgia] Supreme Court would go the other way."  *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004) (emphasis added).  Here, there are no contrary Georgia Supreme Court decisions on point—indeed, the Supreme Court's ruling in *Jenkins* is in line with *McConnell III*—and there is no indication that the Georgia Supreme Court would have ruled differently than the Georgia Court of Appeals in *McConnell III*.

to safeguard third-parties' PII, a duty that would go far beyond what any court has ever recognized in Georgia or elsewhere.

Even if *McConnell III* had come out the other way, the Business Plaintiffs' negligence claim would still fail because they could not allege that Equifax was negligent *as to them*. *See Queen v. Craven*,  97 S.E.2d 523, 527 (Ga. Ct. App. 1957) ("A negligent act is not actionable unless negligent as to the plaintiff."). Although the Business Plaintiffs allege Equifax owed them a duty because they "were the foreseeable and probable victims of any inadequate security practices" (Compl. ¶ 229), Georgia law prohibits the "expan[sion of] traditional tort concepts beyond manageable bounds" when doing so would "create an almost infinite universe of potential plaintiffs." *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 209 (Ga. 2005) (rejecting argument that employer owed duty to a third-party non-employee who came into contact with its employee's asbestos-tainted work clothing away from the workplace).

Recognizing a duty owed to the Business Plaintiffs to safeguard personal information of third-parties would be "not only unwarranted as a matter of law but unworkable as a matter of fact and practicality." *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 839 (Ga. 2011).  There could be no logical limitation on who could bring claims for downstream harms tenuously related to the unauthorized

25

disclosure of some third-party's information.  Therefore, the Business Plaintiffs' suggestion that Equifax owed *them* a duty to protect *third-parties'* personal information fails under Georgia law, under which "the notion of legal duty must be tailored so that the consequences of wrongs are limited to a controllable degree." *Id*. at 839; *see also Albany Urology Clinic, P.C. v. Cleveland*, 528 S.E.2d 777, 780 (Ga. 2000) (reversing the Georgia Court of Appeals' "impos[ition] upon healthcare providers [of] a new, judicially-created[] duty" because creating such a duty was "beyond the scope of the . . . court's authority").

Because the Business Plaintiffs cannot establish any relevant duty owed to them by Equifax, their negligence claim should be dismissed.

2.    The Business Plaintiffs Fail To Allege Any Other Relevant Duty Equifax Owed To Them.

The Business Plaintiffs also try to fabricate a duty to support their negligence claim by alleging (i) that Equifax voluntarily undertook a duty (Compl. ¶¶ 231-32); (ii) that Equifax contractually requires its business partners to safeguard personal information (*id.* ¶¶ 234-35); and (iii) that the FCRA and/or FTC Act imposed a duty on Equifax (*id.* ¶¶ 230, 233).  None of these allegations establishes a duty owed to the Business Plaintiffs.

*First*, under Georgia law, Section 324A of the Restatement (Second) of Torts governs voluntarily undertaken duties, *Pate v. Oakwood Mobile Homes, Inc.*,

26

374 F.3d 1081, 1086 (11th Cir. 2004), and any such duty extends only to preventing "physical harm" to another's person or property, Restatement (Second) of Torts §§ 323, 324 (1965). *See also Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980) (adopting "majority rule" of Restatement § 324A). Here, the only harms the Business Plaintiffs allege are a speculative future risk of harm and costs they voluntarily incurred "in the form of a business credit report and devotion of resources to monitoring [their] financial accounts" (*see* Compl. ¶¶ 12-21)—they do not allege any physical injury to themselves or their property. Accordingly, the Business Plaintiffs' allegations fail to establish any legal duty voluntarily undertaken by Equifax. *See Willingham v. Global Payments, Inc.*, No. 1:12-cv-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs do not allege that they have suffered physical harm; therefore, they cannot state a negligence claim based on the voluntary undertaking doctrine.").

*Second*, that Equifax may contractually require its business partners to employ certain cybersecurity practices has no relevance to whether Equifax owed any common law or statutory duty to the Business Plaintiffs. Indeed, the Business Plaintiffs do not allege that they were parties to such contracts with Equifax or that Equifax was otherwise contractually required to safeguard the PII of their owners.

27

*Third*, the Business Plaintiffs' suggestion that Equifax owed them a duty for negligence purposes that arose out of two statutes, the FCRA and FTC Act, amounts to a claim for negligence *per se*. *See, e.g.*, *Norman v. Jones Lang Lasalle Ams., Inc.*, 627 S.E.2d 382, 388 (Ga. Ct. App. 2006) ("negligence *per se* arises when a statute or ordinance is violated"). As explained in Section III, those statutes cannot provide the basis for a negligence *per se* claim against Equifax. Finally, the Business Plaintiffs' stray allegation that "Equifax also had a duty to safeguard the Personal Information of Business Plaintiffs . . . and to promptly notify them of a breach because of various state laws and statutes" (Compl. ¶ 236) is plainly insufficient. The Business Plaintiffs do not cite any actual "state laws" or "statutes" that would require Equifax to safeguard information, or to notify the Business Plaintiffs in the event of a data breach. Vague references to unspecified laws cannot establish a duty. *See Spooner v. City of Camilla*,  568 S.E.2d 109, 113 (Ga. Ct. App. 2002) (affirming dismissal of negligence *per se* claim where plaintiffs "cite[d] no specific statute, rule, or regulation that imposes a duty"); *Quinn v. City of Cave Spring*, 532 S.E.2d 131, 133–34 (Ga. Ct. App. 2000) (same).

## B.    The Business Plaintiffs Have Not Alleged Any Cognizable Harms To Support Their Negligence Claim.

The Business Plaintiffs have also failed to allege any legally cognizable harms they suffered as a result of the data breach. "Since 'a tort claim must fail

where liability is established but no damages can be shown,' it follows that negligence claims must fail where no recoverable damages have even been pled." *Heinisch v. Bernardini*, CV414-221, 2014 WL 5872698, at *2 (S.D. Ga. Nov. 12, 2014) (quoting *Blackford v. Wal–Mart Stores, Inc.*, 912 F.Supp. 537, 539 (S.D. Ga. 1996)).  "Proof of negligence in the air, so to speak, will not do."  *Kaminer v. Canas*,  653 S.E.2d 691, 695 (Ga. 2007) (quotation marks omitted).

Despite filing a 120-page complaint, the only "harms" the Business Plaintiffs allege they have incurred are generic, collective allegations of (i) a highly speculative "risk" that their owners' PII will be fraudulently used in a manner that negatively impacts the owners' credit, and that the Business Plaintiffs' credit in turn will be negatively impacted; and (ii) "increased costs" "in the form of a business credit report and devotion of resources to monitoring [their] financial accounts" that the Business Plaintiffs voluntarily incurred to mitigate a "risk of harm."  Compl. ¶¶ 12-21.  Neither of these alleged categories of harm constitutes a legally cognizable harm sufficient to support a negligence claim.

1.    An "Increased Risk" Of Speculative Future Harms Is Insufficient.

The Business Plaintiffs allege that the data breach impacted the PII of individuals upon whose creditworthiness they rely for business credit, and thus exposed them to "present, immediate, imminent, and continuing increased risk of

harm." Compl. ¶ 11.  For example, Business Plaintiffs allege that "[t]he breach has jeopardized [small] businesses' access to credit and the price they pay for credit, and thus also their operations, collateral, and viability." *Id.* ¶ 194.  But no Business Plaintiff has alleged that the data breach has actually impaired its access to credit (or how), increased the price it pays for credit, or otherwise negatively impacted its operations.  Thus, these allegations—even accepted as true—amount to nothing more than an increased *risk* of highly speculative future harms.

Under Georgia law "[i]f the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act . . ., such damage is too remote to be the basis of recovery against the wrongdoer."  O.C.G.A. § 51-12-8.  "[N]o Georgia court has adopted a theory of liability premised on the mere 'increased risk' of suffering from a future . . . injury." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1299 (N.D. Ga. 2005), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007); *Paws Holdings, LLC v. Daikin Indus., Ltd.*, No. CV 116-058, 2017 WL 706624, at *13 (S.D. Ga. Feb. 22, 2017) ("[T]o the extent that Plaintiff claims that it has suffered an increased risk of injury, such increased risks of injury are insufficient to state an 'injury' recoverable in tort under Georgia law.").

Applying Georgia law to a negligence claim arising from a data breach, the Georgia Court of Appeals recently held "that the fact of compromised data is not a

30

compensable injury by itself in the absence of some 'loss or damage flowing to the plaintiff's legally protected interest.'" *Collins v. Athens Orthopedic Clinic*, --- S.E.2d ---, 2018 WL 3134877, at *3 (Ga. Ct. App. July 16, 2018) (quoting *Whitehead v. Cuffie*, 364 S.E.2d 87 (Ga. Ct. App. 1987)).[6] The *Collins* court drew upon a well-established line of Georgia tort cases finding that a mere increased risk of future harm is insufficient to sustain a negligence claim. It therefore affirmed the dismissal of a putative class action filed on behalf of approximately 200,000 patients against a medical clinic that lost their PII in a data breach. *Id*. at *7.

Here, too, Business Plaintiffs' allegations of a "fear of future damages [are] too speculative to form the basis for recovery." *Id.* at *2 (quotation omitted).

2.    <u>Expenses Incurred To Mitigate A Risk Of Future Harms Are Insufficient</u>.

Like their allegations that they face a risk of speculative future harms, the Business Plaintiffs' allegations that they have incurred "increased costs" to protect against those speculative future harms do not constitute legally cognizable harms. Again, Business Plaintiffs allege only that they have incurred costs "in the form of a business credit report and devotion of resources to monitoring [their] financial

---

[6] Although *Collins* is "physical precedent only" because one judge dissented, it "may be cited as persuasive authority" where—as here—its reasoning is sound, and firmly anchored in other binding Georgia cases. *Marshall v. McIntosh Cty.*, 759 S.E.2d 269, 273 (Ga. Ct. App. 2014).

accounts" in response to a supposed "substantial risk of harm from the breach." *See* Compl. ¶¶ 12-21.  In *Collins*, the Georgia Court of Appeals analyzed this exact situation and held that "prophylactic measures such as credit monitoring and identity theft protection and their associated costs, which are designed to ward off exposure to future, speculative harm, are insufficient to state a cognizable claim under Georgia law."  2018 WL 3134877, at *4; *see also Parker*, 230 F. App'x at 883 (applying Georgia law and affirming dismissal of claim for medical monitoring costs incurred to mitigate the risk of future harm given "the absence of a *current* physical injury") (emphasis added).  Indeed, "[t]he majority of courts in data breach cases have held that the cost to mitigate the risk of future harm does not constitute an injury . . . unless the future harm being mitigated against is itself imminent."  *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *5 (N.D. Ga. Mar. 12, 2018) (quoting *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016)); *see In re SuperValu, Inc.*, 870 F.3d at 771 (holding that costs allegedly incurred to mitigate a speculative risk of harm are not cognizable injuries); *Beck*, 848 F.3d at 276 (same); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 n.9 (D.C. 2009) (same).  The Business Plaintiffs have not alleged any future harm that is "imminent"; accordingly, the costs the

32

Business Plaintiffs allege to have incurred to mitigate speculative future harms cannot support their negligence claim.

### C.   The Business Plaintiffs Fail To Plead Proximate Causation.

1.   <u>The Damages The Business Plaintiffs Allege Are Too Remote To Support Their Negligence Claim</u>.

Even if the Business Plaintiffs could adequately allege that Equifax breached a duty owed to them and that they suffered a compensable harm (which they cannot), they have not pled allegations to show that Equifax's purported breach of duty was the *proximate—i.e.*, legally sufficient—cause of that harm. That is because they concede that all of their alleged harms are remote "consequences *flowing from* the unauthorized dissemination of *their owner's* Personal Information"—not their own business information. Compl. ¶ 5 (emphasis added).

The Business Plaintiffs' alleged harms are remote, downstream harms entirely derivative of the alleged harms to the Business Plaintiffs' owners—who are within the Consumer Plaintiff class—and the relief sought by the Business Plaintiffs is duplicative of that sought by the Consumer Plaintiffs. Under these circumstances, "the causal connection between [Equifax's alleged] conduct and the injury is too remote for the law to countenance a recovery." *Dowdell v. Wilhelm*, 699 S.E.2d 30, 32 (Ga. Ct. App. 2010) (quotation marks omitted); *see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir.

33

1999), *as amended* (Aug. 18, 1999) ("[W]here a plaintiff complains of injuries that are wholly derivative of harm to a third party, [a] plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery.").   "[I]n plain and undisputed cases" such as this, "the question [of proximate cause] should be answered by the court as a matter of law." *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1399 (11th Cir. 2011); *see W. Stone & Metal Corp. v. Jones*, 348 S.E.2d 478, 480 (Ga. Ct. App. 1986) (deciding proximate cause as a matter of law "where the jury can draw but one reasonable conclusion").

Georgia courts have long held that proximate cause serves to prevent negligence liability from extending indefinitely, beyond the directly injured party, to endless categories of downstream plaintiffs who are only indirectly impacted (if at all) by the defendant's conduct.  For example, in *Byrd v. English*, 43 S.E.2d 419 (Ga. 1903), a business sued a construction company for negligently damaging city-owned-and-operated power lines that supplied power to it.  The business's power was shut off as a result of the incident, and the business alleged that the construction company was liable for damages that the business incurred in the form of lost business and remediation costs.  While there was no dispute that the construction company's actions were the "but for" cause of the plaintiff's damages, the Georgia Supreme Court nonetheless affirmed dismissal of the complaint:

34

> If the plaintiff can recover of these defendants upon this cause of action, then a customer of his, who was injured by the delay occasioned by the stopping of his work, could also recover from them; and one who had been damaged through his delay could in turn hold them liable; and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits. To state such a proposition is to demonstrate its absurdity.

*Id.* at 420. Georgia courts have routinely applied this limiting principle to reject overbroad negligence theories and avoid absurd results. *See Union Camp Corp. v. S. Bulk Indus.*, *Inc.*, 386 S.E.2d 866, 867 (Ga. Ct. App. 1989), *aff'd*, 388 S.E.2d 524 (Ga. 1990) (holding that plaintiff failed to state a claim when it alleged that defendant negligently damaged the property of a third party and that, consequently, the third party was unable to fulfill its contractual obligations to plaintiff); *Willis v. Georgia N. Ry. Co.*, 314 S.E.2d 919, 919-20 (Ga. Ct. App. 1984) (employees of packing plant did not have claim against railroad that negligently harmed the plant causing an eight day shut down and resultant loss of wages); *see also Remax the Mountain Company v. Tabsum, Inc.*, 634 S.E.2d 77, 79 (Ga. Ct. App. 2006) (affirming the dismissal of various business owners' claims because "a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another") (quotation marks omitted).

Here, the derivative and highly attenuated nature of the Business Plaintiffs' alleged harms cannot satisfy the element of proximate causation under Georgia

35

law.  If the Business Plaintiffs were permitted to recover for alleged "consequences flowing from the unauthorized dissemination of their owner's Personal Information" (Compl. ¶ 5), then negligence liability for the data breach would extend "without limit" to an endless number of downstream plaintiffs, resulting in a legal "absurdity."  *Byrd*, 43 S.E.2d at 420 .  For example, any plaintiff who could allege some degree of reliance on the creditworthiness of a Consumer Plaintiff whose PII was impacted by the breach—*e.g.*, any plaintiff (such as plaintiff's children) who could allege that he or she relies on a Consumer Plaintiff as a cosigner on a student loan, apartment lease, car loan, or credit card—could potentially recover against Equifax.  *See* W. PAGE KEETON, PROSSER AND KEETON ON LAW OF TORTS § 41, p. 264 (5th ed. 1984) ("[T]he consequences of an act go forward to eternity . . . [b]ut any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts . . . .").  Accordingly, any "causal connection" between the data breach and the Business Plaintiffs' purported damages is "too remote for the law to countenance a recovery."  *Dowdell*, 699 S.E.2d at 32.[7]

---

[7] This is "another way of saying . . . that [Equifax] was under no duty to protect [the Business Plaintiffs] from the injury," *Walker v. CSX Transportation Inc.*, 650 F.3d at 1399 (quotation marks omitted), as explained in Section II.A above.

36

The claims pending in the Consumer Complaint highlight why this limitation of proximate causation must apply.  The Consumer Plaintiffs (which include the Business Plaintiffs' owners) already seek to recover the damages sought in the Business Plaintiffs' Complaint.  *See generally* Consumer Compl. ¶¶ 13-108 (alleging damages such as costs associated with monitoring their accounts for fraudulent activity and the alleged risk of future harm in the form of fraudulent activity).  Allowing the Business Plaintiffs' negligence claim to proceed on this remote, domino theory of causation thus would create a risk of impermissible double recovery.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-70 (1992) ("[R]ecognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the [unlawful conduct], to obviate the risk of multiple recoveries.") (applying common law proximate cause analysis).  For this reason, Georgia law bars indirectly harmed plaintiffs from recovering in tort.

2. The Criminal Conduct Of The Third-Party Cyber Hackers Was An Intervening Cause.

The Business Plaintiffs have not alleged that *Equifax* is itself directly responsible for any injury.  Instead, each of the injuries about which the Business Plaintiffs complain was proximately caused, if at all, by a third-party's criminal acts—breaking into Equifax's servers and illegally stealing information stored on

37

them.  *See* 18 U.S.C. § 1030(a)(5)(C) (making it a federal crime to "intentionally access[] a protected computer without authorization).  Unforeseeable criminal acts of third-parties "insulat[e] and exclud[e] the negligence of the defendant" from liability.  *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017).  And criminal acts are foreseeable only if they are the "probable or natural consequences" of "the original wrongful act."  *Id.*; *see also id*. at 90–91 (mere "aware[ness]" that an event "can occur" does not create liability).

Thus, the proximate cause of the Business Plaintiffs' alleged injuries was the criminal acts of the cyber hackers, not any breach of duty on the part of Equifax.  *See Bonard v. Lowe's Home Centers, Inc.*, 479 S.E.2d 784, 787 (Ga. Ct. App. 1996) (where "injury was caused by the intervening efficient act of a third person, the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court"); *Andrews v. Kinsel*, 40 S.E. 300, 301 (Ga. 1901) (finding landlord was not liable to store lessee for leaving windows open where lessee's store was burglarized because "there intervened as a direct cause between the negligence of the defendant and the damage sustained by [plaintiffs] the independent criminal act of a responsible human agency").

**D.  Georgia's Economic Loss Rule Bars The Business Plaintiffs' Negligence Claim.**

Finally, the Business Plaintiffs' negligence claim is independently barred by Georgia's economic loss rule.  That rule "'generally provides that . . . a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property.'"  *Helpling v. Rheem Mfg. Co.*, 1:15-CV-2247-WSD, 2016 WL 1222264, at *16 (N.D. Ga. Mar. 23, 2016) (quoting *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2d 636, 637 (Ga. 2005)).

Here, the Business Plaintiffs do not allege injury to their person or property.  At most, they allege purely economic losses stemming from the unauthorized access of third-parties' PII.  These are exactly the type of losses that are unrecoverable under the economic loss rule in Georgia.  *See*, *e.g., Remax the Mountain Company*, 634 S.E.2d at 79 (affirming dismissal of business owners' claims against defendant whose negligence caused a closure of the road to their business locations because "a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another"); *City of Atlanta v. Benator*, 714 S.E.2d 109, 117 (Ga. Ct. App. 2011) (affirming dismissal of negligence claims against city contractor because plaintiffs sought only economic losses and not any "damages due to injury to their persons or to their real or personal property").

39

Accordingly, the Business Plaintiffs' negligence claim also fails because it is barred by Georgia's economic loss rule.

## III.  THE BUSINESS PLAINTIFFS' NEGLIGENCE *PER SE* CLAIM FAILS.

To establish a negligence per se claim under Georgia law, a plaintiff must establish that a law was violated; the "injured person falls within the class of persons [the law] was intended to protect"; "the harm complained of was the harm the statute was intended to guard against"; and "a causal connection between the negligence *per se* and the injury."  *Norman v. Jones Lang Lasalle Americas, Inc.*, 627 S.E.2d 382, 388 (Ga. Ct. App. 2006).  Georgia law limits negligence *per se* to statutes that "provide for *certain duties*" or that call for "the performance of . . . *specific acts*."  *Jenkins*, 744 S.E.2d at 688 (emphasis added).  An allegation that a defendant violated a statute whose duty is "too indefinite" cannot support a claim for negligence *per se*.  *Brock v. Avery*, 110 S.E.2d 122, 126 (Ga. Ct. App. 1959).  Instead, any duty must be "imposed *expressly* by the statute at issue with specificity."  *Bellsouth Telecomms., LLC v. Cobb County*, 802 S.E.2d 686, 698 (Ga. Ct. App. 2017) (Dillard, P.J., concurring).  The duty must be also based on violation of a rule that has "the force of law."  *Norman*, 627 S.E.2d at 388.  Here, the Business Plaintiffs fail to allege any plausible facts supporting the elements of a negligence *per se* claim.

40

### A.   The Business Plaintiffs Cannot Rely On The FTC Act § 5 And "Similar State Statutes."

In an attempt to plead the first two elements of a negligence per se claim, the Business Plaintiffs rely on Section 5 of the Federal Trade Commission ("FTC") Act and "similar state statutes," without identifying those state statutes.[8]  Compl. ¶ 242.  But the Business Plaintiffs have not sufficiently pled that the FTC Act or "similar statute statutes" can provide the basis for a negligence *per se* claim.  The FTC Act does not impose any specific duty to safeguard personal information.  *See generally* 15 U.S.C. § 45.  It only proscribes "unfair or deceptive acts or practices in or affecting commerce."  *Id.*  That prohibition is not specific enough to state a claim for negligence *per se*.  *See Jenkins*, 744 S.E.2d at 688 (holding that the Gramm-Leach-Bliley Act did not establish a legal duty upon which a negligence claim could be based because it "does not provide for *certain* duties or the performance of or refraining from any *specific* acts on the part of financial institutions") (emphasis added); *Brock*, 110 S.E.2d at 126 (finding that violation of a section of the Georgia Code could not constitute negligence *per se* because the Code was "too indefinite for enforcement").

---

[8] To the extent Plaintiffs intend to rely on their references to the Fair Credit Reporting Act (the "FCRA") to establish a duty, for the reasons set forth in Equifax's Motion to Dismiss the Consolidated Consumer Class Action Complaint, that argument too would be misguided.  *See* Dkt. No. 425 at 12-16, 48.

Moreover, Section 5 itself does not impose substantive requirements unless they are established elsewhere in the law. *LabMD v. Fed. Trade Comm'n*, — F.3d —, 2018 WL 3056794, at *7 (11th Cir. June 6, 2018). To be an "unfair act or practice" under Section 5, an act must violate "clear and well-established policies that are expressed in the Constitution, statutes, or the common law." *Id.* (quotation marks omitted). And the only possible "source of [a] standard of unfairness . . . holding that . . . [a] failure to . . . maintain a reasonably designed data-security program constitute[s] an unfair act or practice . . . is the common law." *Id.* The common law, however, imposes no such duty. *McConnell III*, 814 S.E.2d at 797-98. This Court therefore should not read such a duty into Section 5 of the FTC Act. *See LabMD*, 2018 WL 3056794, at *7.[9]

Also telling is that there is no private cause of action for violation of the FTC Act. *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978). The Act provides that only the FTC may sue for "unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 45(a) & (b). And the "express provision of one method of enforcing a substantive rule suggests that Congress intended to

_____

[9] Equifax is aware that this Court has ruled that a negligence *per se* claim relying on Section 5 of the FTC Act can proceed. *Arby's*, 2018 WL 2128441, at *7-8; *In re The Home Depot Consumer Data Breach Litig.*, No. 1:14-cv-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016). Equifax respectfully suggests that both this case's distinct factual circumstances and the Eleventh Circuit's intervening *LabMD* case provide reason not to follow those rulings here.

preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).  Permitting a private plaintiff to use the FTC Act to sue for negligence *per se* would, therefore, undermine Congress's express intent that private plaintiffs not be permitted to sue to enforce the Act.

Here, the Business Plaintiffs point to no FTC regulation that requires safeguarding PII.  Instead, they merely claim that the FTC has "pursued" numerous "enforcement actions" for "failure to employ reasonable data security measures." Compl. ¶ 246.  They also point to unidentified "FTC publications and data security breach orders."   *Id*. ¶ 230.   None of these various unidentified orders and publications can support a negligence *per se* claim because the Business Plaintiffs have identified none that "ha[s] the force of law."  *Norman*, 627 S.E.2d at 388.

Similarly, although the Business Plaintiffs allege negligence per se under "similar state statutes," they do not identify any such statutes.  *See* Compl. ¶¶ 243-46.  That claim too is insufficiently specific to state a negligence *per se* claim under Georgia law.   *See Spooner*, 568 S.E.2d at 113 (affirming dismissal of negligence *per se* claim where plaintiffs "cite[d] no specific statute, rule, or regulation that imposes a duty"); *Quinn*, 532 S.E.2d at 134 (same).

### B.     The Business Plaintiffs Fail To Plead Other Elements To Support Their Negligence *Per Se* Claim.

Under Georgia law, negligence *per se* "is not liability *per se*"—a "plaintiff must still prove proximate cause and actual damage in order to recover."  *Hite v. Anderson*, 643 S.E.2d 550, 552 (Ga. Ct. App. 2007).  Here, the Business Plaintiffs allege that Equifax's purported negligence *per se* caused the same injuries as its alleged negligence.  Compl. ¶ 247.  But as discussed above, the Business Plaintiffs have failed to allege sufficient facts demonstrating that they have suffered any cognizable injury proximately caused by Equifax.  *See supra* Sections II.C.  As a result, their negligence *per se* claim should also be dismissed.

## IV.    THE COURT SHOULD DISMISS THE BUSINESS PLAINTIFFS' GEORGIA FAIR BUSINESS PRACTICES ACT CLAIM.

This Court should dismiss the Business Plaintiffs' Georgia Fair Business Practices Act claim (Compl. ¶¶ 248-60) (Count 3) for four reasons.

### A.     *McConnell III* Confirms That The Georgia Fair Business Practices Act Does Not Require Safeguarding PII.

If the Georgia Fair Business Practices Act ("GFBPA") required a company to safeguard PII, *McConnell III* would have been decided differently.  The plaintiff in *McConnell III* argued that the GFBPA imposed a duty to safeguard PII.  *See McConnell III*, 814 S.E.2d at 796-98.  The GFBPA was thus before the court in *McConnell III* where it held that the plaintiff's complaint was "premised on a duty

44

of care to safeguard personal information that has no source in Georgia statutory law," and that "[Georgia's] legislature has so far not acted to establish a standard of conduct intended to protect the security of personal information." *Id.* at 799. If the general unfair practices provision of the GFBPA could be read to require safeguarding PII, the *McConnell III* court would have said as much—and would have reached a different result. This alone is reason enough to dismiss Count 3.

### B.   The Business Plaintiffs Have Not Pled Reliance.

Stating a claim under the GFBPA also requires that the plaintiff "demonstrate that he was injured as the result of . . . reliance upon the alleged misrepresentation." *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 16–17 (Ga. 2006). The Business Plaintiffs here have failed to—and cannot—allege facts sufficient to show reliance.

The Business Plaintiffs allege that Equifax collects information about consumers "without the[ir] knowledge or consent" and that consumers cannot "opt out" of Equifax's data collection. Compl. ¶ 231. They fail to allege any facts showing that any of them, or even their individual owners, gave Equifax their information. They certainly cannot establish that they gave Equifax any

45

information in reliance on any representations Equifax allegedly made.[10]  Even if they could, the Business Plaintiffs allege no facts showing that any information *they* provided to Equifax in reliance on some unidentified misrepresentation was compromised in the data breach.  The GFBPA claims should be dismissed because the Business Plaintiffs cannot plead the critical element of reliance.

### C.   No Business Plaintiff Has Alleged Damages Caused By Any Misrepresentation.

Furthermore, to fall within the ambit of the GFBPA, a plaintiff must be a "person who suffers injury or damages as a result of violation" of the act. O.C.G.A. § 10-1-399(a).  The Business Plaintiffs have failed to allege cognizable injuries.  *See supra* Section II.B.  They have also failed to allege that any act or omission of Equifax proximately caused those harms.  *See supra* Section II.C. Because no Business Plaintiff has alleged "injury or damages as a result" of any violation by Equifax, Count 3 should be dismissed.

### D.   The GFBPA Forbids Class Actions.

Finally, the GFBPA forbids class actions.  It provides that a "person who

---

[10] The Business Plaintiffs have not even pleaded that they, or their individual owners, read or relied on any representation made by Equifax.  *See, e.g.*, *Willingham*, 2013 WL 440702, at *20 ("[B]road statements of reliance on defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read or relied upon those statements.").

46

suffers injury or damages . . . may bring an action individually, but not in a representative capacity."   O.C.G.A. § 10-1-399(a); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 241 F.R.D. 77, 84 (D. Me. 2007) (finding the GFBPA class action restriction substantive, not procedural, and rejecting class certification), *vacated on other grounds*, 522 F.3d 6 (1st Cir. 2008).   Equifax therefore contends that this Court should dismiss the Business Plaintiffs' GFBPA claim as to any putative class.[11]

## V.   THE BUSINESS PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

To state a claim for unjust enrichment—an equitable doctrine of recovery under Georgia law—a plaintiff must allege that (1) "the plaintiff provide[d] something of value to the defendant" and (2) did so "with the expectation that the defendant would be responsible for the cost thereof."   *Sitterli v. Csachi*, 811 S.E.2d 454, 457 (Ga. Ct. App. 2018) (quotation marks omitted).   Put another way, "when one renders service or transfers property which is valuable to another . . .

---

[11] Equifax acknowledges that this Court is bound by Eleventh Circuit precedent holding that a similar provision in Alabama's deceptive trade practices law is procedural, not substantive, and thus that Rule 23 governs.   *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015).   At a minimum, however, *Lisk* presents a conflict in authority that either the *en banc* Eleventh Circuit or the Supreme Court could resolve in Equifax's favor.   *Compare id. with Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 726–29 (D.S.C. 2016) (disagreeing with *Lisk*); *In re New Motor Vehicles*, 241 F.R.D. at 84.

promise is implied to pay the reasonable value thereof."  O.C.G.A. § 9-2-7.

First, the Business Plaintiffs have failed to adequately allege that they have provided something of value to Equifax.  The alleged "something of value" is the personal information compromised in the data breach.  Compl. ¶ 262.  But that personal information is not the Business Plaintiffs'—it is the business owners'.  *Id.* ¶¶ 12-21.  And the Complaint does not even allege that the individual owners provided their PII to Equifax.  In other words, there was no "direct conveyance of a benefit" from the Business Plaintiffs to Equifax, and absent such "direct commercial relationship" between the parties, the unjust enrichment claim fails. *Knox v. Samsung Elec. Am., Inc.*, No. 08-4308, 2009 WL 1810728, at *4 (D.N.J. June 25, 2009) (applying Georgia law and citing *Scott v. Mamari Corp.*, 530 S.E.2d 208 (Ga. Ct. App. 2000)); *see also Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007) (granting motion for judgment as a matter of law where there was "no evidence to establish that any of [the] named plaintiffs conferred a benefit directly to" defendant).

Even if the Business Plaintiffs could base their unjust enrichment claim on the individual owners' personal information, their claim suffers another defect: they have failed to adequately allege that the individual owners—as opposed to third-parties—conferred anything of value on Equifax.  In fact, the Business

48

Plaintiffs allege the opposite: that "Equifax undertakes its collection of highly sensitive information generally without the knowledge or consent of consumers . . . ." (Compl. ¶ 231), and that the personal information "was conferred on Equifax in most cases by third-parties" (*id.* ¶ 262).   In the Unjust Enrichment count, the Business Plaintiffs include the stray allegation that "in some instances" the personal information was conferred "directly by Plaintiffs and Class members themselves" (*id.* ¶ 262), but this conclusory allegation is devoid of any factual support whatsoever.   In short, because the Business Plaintiffs neither "render[ed] service" nor "transfer[red] property" to Equifax, O.C.G.A. § 9-2-7, they may not recover for unjust enrichment.  *Sitterli*, 811 S.E.2d at 457.

Second, the Business Plaintiffs fail to allege that they reasonably expected Equifax to "be responsible for the cost" of any PII.  The closest they come is their allegation that "the benefit conferred upon . . . Equifax  was  not  conferred . . . gratuitously."  Compl. ¶ 269.   But they do not allege that they reasonably expected to be reimbursed for the personal information (which was not even theirs), that anyone expected reimbursement *from Equifax*, or that any expected reimbursement would be for *the cost* of the PII as opposed to some other measure of value. Accordingly, the Business Plaintiffs "ha[ve] no right to an equitable recovery" for unjust enrichment.  *See Sitterli*, 811 S.E.2d at 457 (quotation marks omitted).

Finally, the Business Plaintiffs seek, as damages, "the profits Equifax is receiving from the use and sale of" the PII.  But the only damages available for unjust enrichment amount to the "reasonable value" of the "service" or "property" conferred.  O.C.G.A. § 9-2-7.  The Business Plaintiffs cannot maintain an action for some other measure of damages, and thus their unjust enrichment claim should be dismissed.

## VI.    THE BUSINESS PLAINTIFFS' O.C.G.A. § 13-6-11 CLAIM SHOULD BE DISMISSED.

The Business Plaintiffs may only recover expenses and fees for "stubborn litigiousness or unnecessary trouble" if "there exists no bona fide controversy or dispute regarding liability for the underlying cause of action."  *David G. Brown, P.E., Inc. v. Kent*, 561 S.E.2d 89, 90-91 (Ga. 2002).  This motion demonstrates that—at a minimum—there is a "bona fide controversy or dispute" between the parties.  Further, the Business Plaintiffs do not allege any facts suggesting bad faith on the part of Equifax.  The O.C.G.A. § 13-6-11 claim should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint for lack of Article III jurisdiction, or, alternatively, the Court should dismiss the Complaint with prejudice for failure to state a claim.

DATE: July 30, 2018

Respectfully Submitted,
/s/ David L. Balser
**KING & SPALDING LLP**
David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145

1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

DATED:  July 30, 2018

/s/ David L. Balser
David L. Balser

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser