# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **IN RE: EQUIFAX INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL Docket No. 2800**<br>**No. 1:17-md-2800-TWT**<br><br>**This document relates to:**<br>**CONSUMER CASES** |

# REPLY BRIEF IN SUPPORT OF EQUIFAX'S MOTION TO DISMISS <u>CONSOLIDATED CONSUMER CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Contents**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I.  PLAINTIFFS' NATIONWIDE CLAIMS ARE DEFECTIVE AND
    SHOULD BE DISMISSED. ............................................................... 2

   A. Plaintiffs' Fair Credit Reporting Act Claims Should Be
       Dismissed. .................................................................................... 2

      1. Equifax Did Not "Furnish" Any Information To The Criminal
          Hackers Who Broke Into Its Systems. ......................................... 2

      2. The Stolen Personally Identifying Information (PII) Is Not A
          "Consumer Report" Under The FCRA. ....................................... 4

   B. Plaintiffs' Claims of Injury Fail To Allege Cognizable Harms
       Caused By Equifax. ...................................................................... 7

      1. Plaintiffs Are Not A Class. ......................................................... 8

      2. Plaintiffs' Non-Harms And Speculative Future Harms Are Not
          Legally Cognizable Injuries. ....................................................... 9

      3. Economic Loss Doctrine. ........................................................... 14

   C. Plaintiffs' Negligence And Declaratory Judgment Claims Should
       Be Dismissed. ............................................................................. 14

   D. Plaintiffs' Negligence *Per Se* Claim Should Be Dismissed. ...................... 17

   E. Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim
       Should Be Dismissed. .................................................................. 19

i

      1. *McConnell III* **Confirms That The GFBPA Does Not Require Safeguarding PII.**............................................................................**19**

      2. **Plaintiffs Have Not Pleaded Reliance.** ...........................................**21**

  **F. Plaintiffs' Unjust-Enrichment Claim Should Be Dismissed**...................**23**

**II. THE CONTRACT CLAIMS SHOULD BE DISMISSED**...........................**24**

  **A. Plaintiffs' Express Contract Claim Should Be Dismissed.** .....................**24**

  **B. Plaintiffs' Implied-Contract Claim Should Be Dismissed.** .....................**27**

**III.    EACH OF PLAINTIFF'S CLAIMS UNDER HIS OR HER LOCAL STATE STATUTES SHOULD BE DISMISSED.** .........................................**28**

  **A. Plaintiffs' Claims Under State Business Fraud And Consumer Protection Statutes Should Be Dismissed.** ............................................**28**

      1. **Foreign States' Unfair and Deceptive Acts and Practices (UDAP) Laws Cannot Govern Conduct That Took Place In Georgia.** ....................................................................................**28**

      2. **Plaintiffs' UDAP Claims Are Redundant Of Their GFBPA Claim.** .......................................................................................**30**

      3. **Plaintiffs' UDAP Claims Fail.** ................................................**30**

  **B. Plaintiffs' Claims Under Data-Breach-Notification Statutes Should Be Dismissed.**...............................................................................**33**

  **C. Plaintiffs' O.C.G.A. § 13-6-11 Claim Should Be Dismissed.** ..................**35**

**CONCLUSION**.............................................................................................**35**

# TABLE OF AUTHORITIES

## Cases

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
  857 F.3d 939 (D.C. Cir. 2017) ...............................................................32

*Berry v. Nat'l Med. Servs., Inc.*,
  205 P.3d 745 (Kan. Ct. App. 2009).......................................................32

*Borsellino v. Goldman Sachs Grp.*,
  477 F.3d 502 (7th Cir. 2007)................................................................30

*Bravo v. United States*,
  577 F.3d 1324 (11th Cir. 2009).............................................................15

*Broughton v. Johnson*,
  545 S.E.2d 370 (Ga. Ct. App. 2001) .....................................................24

*Brown v. World Christian Church*,
  2001 WL 681256 (W.D. Tex. Apr. 5, 2001) .........................................29

*Burnett v. Stagner Hotel Cts., Inc.*,
  42 F.3d 645 (11th Cir. 1994).................................................................27

*Burnett v. Stagner Hotel Cts., Inc.*,
  821 F. Supp. 678 (N.D. Ga. 1993) ........................................................27

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
  580 F. Supp. 2d 273 (S.D.N.Y. 2008)...................................................11

*Clark v. Aaron's, Inc.*,
  914 F. Supp. 2d 1301 (N.D. Ga. 2012) .................................................24

*Clinton v. City of N.Y.*,
  524 U.S. 417 (1998) ................................................................................7

*Cole v. Chevron USA, Inc.*,
  554 F. Supp. 2d 655 (S.D. Miss. 2007).................................................32

*Collins v. Athens Orthopedic Clinic*,
  815 S.E.2d 639 (Ga. Ct. App. 2018) ....................................... 9, 12, 17

*Commw. Inv. Co v. Frye*,
  134 S.E.2d 39 (Ga. 1963) ......................................................................16

*Conway v. CitiMortgage, Inc.*,
   438 S.W.3d 410 (Mo. 2014) ................................................................. 32

*Coon v. Med. Ctr., Inc.*,
   797 S.E.2d 828 (Ga. 2017) ....................................................... 8, 18, 19

*Cooperman v. R.G. Barry Corp.*,
   775 F. Supp. 1211 (D. Minn. 1991) ..................................................... 32

*Cotton States Mut. Ins. Co. v. Crosby*,
   260 S.E.2d 860 (Ga. 1979) .................................................................. 13

*Credithrift of Am. v. Whitley*,
   380 S.E.2d 489 (Ga. Ct. App. 1989) .................................................... 21

*Crown Ford Inc. v. Crawford*,
   473 S.E.2d 554 (Ga. Ct. App. 1996) .................................................... 22

*Cumberland Contractors, Inc. v. State Bank & Trust Co.*,
   755 S.E.2d 511 (Ga. Ct. App. 2014) ...................................................... 9

*Dalesandro v. Longs Drug Stores Cal., Inc.*,
   383 F. Supp. 2d 1244 (D. Haw. 2005) ................................................. 32

*David G. Brown, P.E., Inc. v. Kent*,
   561 S.E.2d 89 (Ga. 2002) .................................................................... 35

*Dolmage v. Combined Ins. Co. of Am.*,
   2015 WL 292947 (N.D. Ill. Jan. 21, 2015) ............................................ 2

*Douglas v. Johnson Real Estate Invs., LLC*,
   2011 WL 13177544 (N.D. Ga. 2011) ................................................... 26

*Dumais v. Am. Golf Corp.*,
   299 F.3d 1216 (10th Cir. 2002) ........................................................... 26

*Eden v. Eden*,
   812 S.E.2d 317 (Ga. Ct. App. 2018) .................................................... 26

*Elkins v. Microsoft Corp.*,
   817 A.2d 9 (Vt. 2002) .......................................................................... 32

*Ernst v. Dish Network, LLC*,
   49 F. Supp. 3d 377 (S.D.N.Y. 2014) ..................................................... 5

*Finnerty v. State Bank & Trust Co.*,
   687 S.E.2d 842 (Ga. Ct. App. 2009) ........................................ 9, 10, 12

*Galaria v. Nationwide Mut. Ins. Co.*,
  2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) .......................................................2

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*,
  608 S.E.2d 636 (Ga. 2005) ...............................................................................14

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) ..........................................................................9

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*,
  485 F.3d 1233 (11th Cir. 2007) ..........................................................................8

*Harris v. Liberty Mut. Comm. Mgmt., Inc.*,
  702 F.3d 1298 (11th Cir. 2012) ........................................................................20

*Healy v. Beer Institute*,
  491 U.S. 324 (1989) .......................................................................... 28, 29, 30

*Henderson v. Gandy*,
  608 S.E.2d 248 (Ga. Ct. App. 2004) .................................................................20

*In re Arby's Rest. Grp. Inc. Litig. (Arby's II)*,
  317 F. Supp. 3d 1222 (N.D. Ga. 2018) ................................................ 19, 22, 30

*In re Arby's Rest. Grp. Inc. Litig.*,
  2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ..................................................1, 15

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
  2015 WL 4092866 (S.D. Ohio July 6, 2015) ......................................................32

*In re Experian Data Breach Litig.*,
  2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ..................................................2, 3

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
  2016 WL 2897520 (N.D. Ga. May 18, 2016) .................................................1, 15

*In re Stand 'n Seal Prods. Liab. Litig.*,
  2009 WL 2998003 (N.D. Ga. Sep. 15, 2009).......................................................8

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) ............................................................................12

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ...............................................................34

*In re VTech Data Breach Litig.*,
  2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) ......................................................31

*Kas v. Mercedes-Benz USA, LLC*,
   2012 WL 12886203 (C.D. Cal. Jan. 19, 2012)......................................................32

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992) .....................................................................................32

*Keaton v. G.C. Williams Funeral Home, Inc.*,
   436 S.W.3d 538 (Ky. Ct. App. 2013).....................................................................32

*Klonsky v. RLI Ins. Co.*,
   2012 WL 1144031 (D. Vt. Apr. 4, 2012) .............................................................4, 5

*Knutsen v. Dion*,
   90 A.3d 866 (Vt. 2013)...........................................................................................32

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ..................................................................................31

*LabMD v. Fed. Trade Comm'n*,
   894 F.3d 1221 (11th Cir. 2018)........................................................................ 17, 19

*Liston v. King.Com, Ltd.*,
   254 F. Supp. 3d 989 (N.D. Ill. 2017).....................................................................31

*Lynas v. Williams*,
   454 S.E.2d 570 (Ga. Ct. App. 1995) ......................................................................22

*McConnell v. Ga. Dep't of Labor  (McConnell III)*,
   814 S.E.2d 790 (Ga. Ct. App. 2018) ............................................................ passim

*Meeks v. Coan*,
   302 S.E.2d 418 (Ga. Ct. App. 1983) ......................................................................13

*Pack & Process, Inc. v. Celotex Corp.*,
   503 A.2d 646 (Del. Super. Ct. 1985)......................................................................32

*Palsgraf v. L.I. R. Co.*,
   162 N.E. 99 (N.Y. 1928) ........................................................................................13

*Parker v. Equifax Info. Servs., LLC*,
   2017 WL 4003437 (E.D. Mich. Sept. 12, 2017) ......................................................4

*R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*,
   99 F. Supp. 2d 174 (D.R.I. 2000) ...........................................................................32

*Regency Nissan, Inc. v. Taylor*,
   391 S.E.2d 467 (Ga. Ct. App. 1990) ......................................................................20

*Remax Mtn. Co. v. Tabsum, Inc.*,
    634 S.E.2d 77 (Ga. Ct. App. 2006) .....................................................14

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012)................................................ 12, 13

*Rite Aid of Ga., Inc. v. Peacock*,
    726 S.E.2d 577 (Ga. Ct. App. 2012) .......................................... 11, 13

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ...................................................................5

*Sitterli v. Csachi*,
    811 S.E.2d 454 (Ga. Ct. App. 2018) ...............................................23

*Slaby v. Fairbridge*,
    3 F. Supp. 2d 22 (D.D.C. 1998) .....................................................32

*Stafford v. Cross Country Bank*,
    262 F. Supp. 2d 776 (W.D. Ky. 2003) .............................................32

*State Farm v. Campbell*,
    538 U.S. 408 (2003) ....................................................................28

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) .................................................................10

*Thomas v. Hartford Mut. Ins. Co.*,
    2003 WL 220511 (Del. Super. Ct. Jan. 31, 2003)...............................32

*Torres v. Wendy's Co.*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016) ...........................................12

*Vergara Hermosilla v. Coca-Cola Co.*,
    2010 WL 11553428 (S.D. Fla. Aug. 17, 2010)...................................32

*Weathers v. Dieniahmar Music, LLC*,
    788 S.E.2d 852 (Ga. Ct. App. 2016) ...............................................24

*Wells Fargo Bank, N.A. v. Jenkins*,
    744 S.E.2d 686 (Ga. 2013) ..................................................... 14, 16

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001).......................................................11

*Zelaya v. United States*,
    781 F.3d 1315 (11th Cir. 2015).................................................. 18, 19

**Statutes**

15 U.S.C. § 1681a ...............................................................................................4

15 U.S.C. § 1681b ............................................................................................2, 6

15 U.S.C. § 1681e ...............................................................................................6

15 U.S.C. § 1681g ............................................................................................6, 7

15 U.S.C. § 45 ...................................................................................................17

C.G.S.A. § 36a-701b .........................................................................................33

Md. Comm Code § 14-3408 ..............................................................................33

Md. Comm. Code § 14-3508 .............................................................................33

Mont. Code § 30-14-142 ...................................................................................33

Mont. Code § 30-14-1705 .................................................................................33

O.C.G.A. § 10-1-399 .........................................................................................22

O.C.G.A. § 9-2-7 ...............................................................................................23

**Other Authorities**

Amended Complaint,
  *Resnick v. AvMed*,
  2011 WL 1188356 (Filed S.D. Fla. Jan. 14, 2011) ............................................13

Class Action Complaint,
  *Galaria v. Nationwide Mut. Ins. Co.*,
  2013 WL 12287435 (Filed S.D. Ohio Feb. 8, 2013)............................................3

**Rules**

Fed. R. Civ. P. 9 ........................................................................................... 30, 31

Ga. Ct. App. R. 33.2.........................................................................................10

# INTRODUCTION

Plaintiffs' Opposition (Opp.) fails to save their defective Complaint (CCC):

*First*, Plaintiffs invite this Court to make new law, against the overwhelming weight of authority, by concluding that Equifax "furnished" Plaintiffs' "consumer report[s]" to the criminal hackers who broke into Equifax's systems.  To create this new claim, Plaintiffs misread the Fair Credit Reporting Act (FCRA) and mischaracterize the congressional policies behind it.  Plaintiffs' FCRA claims should be dismissed.

*Second*, Plaintiffs' tort claims fail.  Plaintiffs cannot escape the CCC's failure to allege injuries recognized in Georgia as sufficient to support a claim.  Plaintiffs also rely—to the near-exclusion of other law—on this Court's *Home Depot*[1] and *Arby's*[2] cases for their centerpiece negligence claim, but Georgia law has rejected the aspects of those cases on which Plaintiffs base their claims.

*Third*, the CCC alleged no viable contract.  Plaintiffs' contract claims fail.

And, *fourth*, Plaintiffs' claims under foreign states' laws run headlong into the CCC's failure to allege any Equifax conduct outside Georgia.  Because Plaintiffs allege no direct relationship with Equifax, their state-law claims are

---

[1] *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, 2016 WL 2897520 (N.D. Ga. May 18, 2016).

[2] *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018).

impermissibly extraterritorial.  Further, Plaintiffs fail to meet the fraud pleading standard or to allege transactions bringing them within the scope of those statutes.

Equifax's Motion to Dismiss (Mot.) should be granted in its entirety.

## ARGUMENT

## I.  PLAINTIFFS' NATIONWIDE CLAIMS ARE DEFECTIVE AND SHOULD BE DISMISSED.

### A.  Plaintiffs' Fair Credit Reporting Act Claims Should Be Dismissed.

Plaintiffs ask this Court to stretch the language of the FCRA beyond its breaking point, advocating for definitions that no court has accepted and urging this Court to rely on congressional policies that Plaintiffs have generalized beyond recognition.  This Court should dismiss the FCRA claims.

#### 1.  Equifax Did Not "Furnish" Any Information To The Criminal Hackers Who Broke Into Its Systems.

The FCRA provides that a credit reporting agency (CRA) "may furnish a consumer report" under specifically enumerated circumstances. 15 U.S.C. § 1681b(a).  Courts have unanimously held that to "furnish" information requires an intentional disclosure, as distinct from theft.  *E.g.*, *Galaria v. Nationwide Mut. Ins. Co.*, 2017 WL 4987663, at *4 (S.D. Ohio Aug. 16, 2017); *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *2 (C.D. Cal. Dec. 29, 2016) ("*stolen*" data was "not furnished"); *see also Dolmage v. Combined Ins. Co. of Am.*, 2015 WL 292947, at *4 (N.D. Ill. Jan. 21, 2015) (collecting cases).  Plaintiffs concede as

2

much, but contend that "Equifax's conduct was so egregious and the risks were so immense that Equifax *was effectively* an active participant in the data breach." Opp. 47 (emphasis added).   This, they contend, satisfies courts' unanimous requirement of a *purposeful* disclosure by a CRA.  *Id.*

Plaintiffs cite *no* case in which a company that suffered a data breach was held to have "furnish[ed]" information to the criminal hackers, nor one in which a court held that a company intentionally "furnished" data to thieves just because it suffered an allegedly foreseeable data breach.  Both the statutory text and the unanimous weight of authority are against Plaintiffs:  when criminals steal data, the FCRA does not make the victim liable.

Plaintiffs further urge this Court to ignore the cases Equifax cites because they have alleged Equifax was "effectively complicit" in the breach.  Opp. 48. This argument is not only absurd, it does not distinguish this case from those Equifax cites.  The *Experian* and *Galaria* plaintiffs argued the same thing— namely, that the defendants there "intentionally" or "willfully" furnished consumer information to hackers.  *Experian*, 2016 WL 7973595, at *1; Class Action Complaint, *Galaria v. Nationwide Mut. Ins. Co.*, 2013 WL 12287435, ¶ 3 (Feb. 8, 2013).  Those courts rejected Plaintiffs' argument, as should this Court.

Equifax did not "furnish" information to the criminal hackers. Accordingly,

Plaintiffs' FCRA claims should be dismissed.[3]

### 2.   The Stolen Personally Identifying Information (PII) Is Not A "Consumer Report" Under The FCRA.

Plaintiffs' FCRA claims fail for a second reason as well:  the stolen PII is not a "consumer report" under the FCRA because none of it "bear[s] on" consumers' creditworthiness, character, or "mode of living."   *See* 15 U.S.C. § 1681a (d)(1); *Parker v. Equifax Info. Servs., LLC*, 2017 WL 4003437, at *1, *3 (E.D. Mich. Sept. 12, 2017); *see* Mot. 13–14 (citing cases).

Plaintiffs implicitly concede the law but ask the Court to ignore it because they allege the stolen PII was kept "to determine [the] credit worthiness" of the "150 million Americans involved in the breach."  Opp. 49.  Not true.  As Plaintiffs acknowledge in the CCC, the breach *did not* impact Equifax Information Services' consumer-reporting database.  *See* CCC ¶ 272; Mot. 6.

Further, the particular PII stolen from Equifax does not bear on creditworthiness.  It is basic identifying information, not a consumer's credit file.

Plaintiffs' cases do not say otherwise.  In *Klonsky v. RLI Ins. Co.*, 2012 WL 1144031, at *3 (D. Vt. Apr. 4, 2012), the court was specific about what information it considered to "bear[] directly on [the plaintiff's] personal

---

[3] Plaintiffs' argument regarding the Maryland Social Security Privacy Act fails for the same reason.  Opp. 67–68.

characteristics": her "driving record history," which the court found "speaks to her competence and responsibility as a driver." *Id.* It reiterated that this driving history alone was what mattered: "basic identifying information (such as name, date of birth, address, and social security number)" did not constitute consumer-report information, but "the MVR at issue [t]here contain[ed] information *beyond basic identifying information*"; specifically, "information about [the plaintiff's] driving history." *Id.* (emphasis added). *Klonsky* therefore supports Equifax's position, not Plaintiffs'. The facts in *Ernst v. Dish Network, LLC*, were similar. 49 F. Supp. 3d 377, 382 (S.D.N.Y. 2014). There, a "high risk" tag was appended to the file at issue, which might have reflected either "prior criminal activity [or] driving information" leading to a loss of driver's license validity. *Id.* By contrast, a driver's license number and state identifier are—like everything else stolen here—simply "basic identifying information," *id.*, that says nothing about the owner's creditworthiness.

Plaintiffs' appeals to generalized descriptions of congressional policy, *e.g.* Opp. 52, do not alter the common-sense conclusions reached by courts rejecting similar FCRA claims. The statutory text is what matters. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("Our duty is to give effect to the text that 535 … legislators (plus one President) enacted into law."). Plaintiffs have failed to show

that the FCRA applies here. The statute means what it says, and this Court may not sweep into it conduct that the law does not proscribe.

*Section 1681e(a).* Plaintiffs correctly do not contend that their § 1681e(a) claims can survive the dismissal of their § 1681b claims. *See generally* Opp. 46–50. Because Plaintiffs' § 1681b claims fail, their § 1681e(a) claims fail too.

*Section 1681g.* In addition to the FCRA claims brought on behalf of a nationwide class, two Plaintiffs allege claims under FCRA § 1681g—namely, that they obtained consumer disclosures from Equifax that did not identify the hackers or disclose the data breach. Mot. 50–52. But because the criminals did not procure a "consumer report," and because Plaintiffs fail to plead any facts showing that the theft of their PII was reflected in their "consumer[] file[s]," the two Plaintiffs who allege a violation of 15 U.S.C. § 1681g have failed to state a claim. *See* Mot. 50–52.

In contending that whether hackers can be identified in any given case is a fact question, Plaintiffs misapprehend Equifax's argument. *See* Opp. 51–52. A CRA rarely has any way of knowing the identities of criminal hackers who infiltrate its systems, and therefore *reading the statute as containing a requirement that a CRA disclose* the criminals' identities would be unjust and absurd *even if* the facts in a specific case might permit the CRA to disclose those identities. This

Court should not read the statute in a manner that would "produce an absurd and unjust result which Congress could not have intended." *Clinton v. City of N.Y.*, 524 U.S. 417, 429 (1998) (quotation marks omitted).

Plaintiffs fall back on the suggestion that Equifax should have "include[d] even a general description of the breach and those responsible for it." Opp. 52; *see also* CCC ¶ 420. This contention illustrates that their interpretation of the statute is manifestly unreasonable, because including only a "general description of the breach and those responsible for it" would *itself violate the statute. See* 15 U.S.C. § 1681g(a)(3)(B) ("identification of a person … *shall include* … the name of the person"); *id.* at § 1681g(a) (requiring that any such disclosure be both "clear[] and accurate[]"). Again, this shows that Congress did not contemplate that a data-security breach of a CRA could trigger a claim under § 1681g.

### B.   Plaintiffs' Claims of Injury Fail To Allege Cognizable Harms Caused By Equifax.

Plaintiffs' failure to allege any cognizable harm caused by Equifax is fatal to their tort and contract claims. *See* Mot. 16–23.

As a threshold matter, Plaintiffs contend that this Court may "consider the common law of each state applicable to the proposed alternative, state-specific classes" if it "decides that Georgia law is adverse to the common law claims of the national class." Opp. 9 (citing CCC ¶ 297); *see also id.* at 10 n.1. In other words,

Plaintiffs contend that the applicable choice-of-law principle should be, in effect, whichever law lets Plaintiffs win.  Equifax is unaware of any jurisdiction that has adopted this heads-I-win-tails-you-lose rule.  Plaintiffs certainly identify none.

More fundamentally, Plaintiffs are wrong.  This Court must "apply the conflict-of-laws rules of the forum state."  *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007); *e.g.*, *In re Stand 'n Seal Prods. Liab. Litig.*, 2009 WL 2998003, at \*2 (N.D. Ga. Sep. 15, 2009) (applying Georgia law to all claims).  The Georgia Supreme Court in 2017 reaffirmed its longstanding rule that courts sitting in Georgia "apply the common law as expounded by the courts of Georgia."  *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017); *see* Mot. 11.  This Court must apply Georgia common law.

### 1.    Plaintiffs Are Not A Class.

Plaintiffs repeatedly describe themselves *en masse*, as though they had all made identical allegations of identical injuries.  For example, they contend that "Plaintiffs here plead financial injury," Opp. 21 n.5; that "Plaintiffs allege here … that their personal information has *already* been misused," *id.* at 22; and that "[a]ll Plaintiffs … assert this harm was a direct result of the breach," *id.* at 25.  Each of these assertions is incorrect for some or even most of the Plaintiffs.  *See* Doc. 425-2 (Mot. Ex. 1).

Plaintiffs are not a class.  They are 96 individuals alleging disparate injuries, and their allegations require individual assessment to determine if each Plaintiff has stated a claim.  *See Griffin v. Dugger*, 823 F.2d 1476, 1482–83 (11th Cir. 1987) ("[A] plaintiff must allege and show that he personally suffered injury."). This Court *may not* treat Plaintiffs as fungible but must look to each individual's allegations of harm—or, more accurately, each individual's failure to allege harm. *Id.*; *see* CCC ¶¶ 13–108 & Doc. 425-2 (Mot. Ex. 1).

### 2.    Plaintiffs' Non-Harms And Speculative Future Harms Are Not Legally Cognizable Injuries.

*a. Compromise of PII*.  Georgia courts do not consider the compromise of PII an injury sufficient to support a tort claim.  *E.g.*, *Finnerty v. State Bank & Trust Co.*, 687 S.E.2d 842, 845 (Ga. Ct. App. 2009), *disapproved in part on other grounds by Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 755 S.E.2d 511 (Ga. Ct. App. 2014); *see* Mot. 17–18; *see also Collins v. Athens Orthopedic Clinic*, 815 S.E.2d 639, 643–44 (Ga. Ct. App. 2018) (affirming dismissal because "*Finnerty* and *Rite Aid* … suggest that the fact of compromised data is not a compensable injury by itself").[4]

---

[4] In *Collins*, Judge McFadden concurred in part and dissented in part on the ground that in his view the plaintiffs had pleaded sufficient injury for standing purposes. 815 S.E.2d at 647–48 (McFadden, J., concurring in part and dissenting in part).

Plaintiffs contend that *Finnerty* is "easily distinguishable" because "the plaintiff alleged an *invasion of privacy* claim." Opp. 21. But they omit that he also asserted negligence and negligence *per se* claims. *Finnerty*, 687 S.E.2d at 843–44. And the *Finnerty* court held that *all* of the plaintiff's "state law claims"—including those negligence claims—"alleg[e] … injuries [that] are wholly speculative." *Id.* at 845. The court concluded that allegations that "non-authorized third parties have access to [a plaintiff's] otherwise confidential personal information" is simply not enough. *Id.* at 845. The compromise of PII, without more, is not an injury sufficient to support a tort claim under Georgia law.[5]

**b. Unspecified Future Harms.** Georgia tort law is clear that "[a] fear of future damages [from the misuse of personal information] is too speculative to form the basis for recovery." *Finnerty*, 687 S.E.2d at 845; *see* Mot. 18 (citing cases). Plaintiffs rely on Article III standing jurisprudence to contend that their fear that they might one day suffer identity theft is a compensable injury. Opp. 22 (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)). But an allegation of injury sufficient to get a plaintiff into court is judged under a

---

Accordingly, the relevant portion of *Collins* is physical precedent (*i.e.*, persuasive authority). Ga. Ct. App. R. 33.2(a)(1).

[5] Relatedly, Plaintiffs have failed to sufficiently allege that Equifax proximately caused *any* injury. Mot. 20–23.

different, lower standard than that required to *establish a tort claim*.   As the Eleventh Circuit has explained, "[a] finding that a plaintiff has standing simply means that the plaintiff is entitled to 'walk through the courthouse door' … ; it is … conceptually distinct from whether the plaintiff is entitled to prevail on the merits."  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1280 (11th Cir. 2001); *see Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 280 (S.D.N.Y. 2008) (although plaintiff satisfied Article III standing, negligence claim failed because allegation of injury was insufficient).

Plaintiffs contend that they "allege … that their personal information has *already* been misused."  Opp. 22; *see also id.* at 21 n.5 ("Plaintiffs here plead financial injury.").  But most Plaintiffs *do not* allege this.  *See* Doc. 425-2 (Mot. Ex. 1) (identifying 55 plaintiffs, out of 96, who have alleged neither any form of identity theft nor payment-card fraud); Mot. 16–17.  Like the plaintiff in *Rite Aid of Ga., Inc. v. Peacock*, most Plaintiffs "*could not say that* [*they*] *had suffered any actual financial or physical injury*" from the alleged theft of their PII.  726 S.E.2d 577, 580 (Ga. Ct. App. 2012) (emphasis in original).  At a minimum, these 55 Plaintiffs' claims should be dismissed for this reason alone.

   *c. Mitigation of Future Harms.*  Time, effort, and money spent to mitigate the risk of future harm "do[] not constitute an injury … unless the future harm

being mitigated against is itself imminent." *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) (quotation mark omitted); *see also In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (collecting cases). Plaintiffs here uniformly allege that they bought credit-protection services to mitigate harm that is only "possible." *E.g.*, CCC ¶¶ 14–16, 22–24, 27. The *Collins* court recently concluded that "credit monitoring and other precautionary measures … are not recoverable damages" where—as here—plaintiffs allege only "an increased risk of [future] harm." 815 S.E.2d at 645. In the absence of "a compensable injury, the costs [plaintiffs] reference are prophylactic"—a recovery for which Georgia law "does not provide." *Id.*

**d. Payment-Card Fraud.** The three Plaintiffs who allege payment-card fraud have failed to allege that they were not reimbursed. Plaintiffs' opposition does not contend otherwise, Opp. 23–24, presumably because those Plaintiffs *were* reimbursed. Plaintiffs cite *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012), which concludes that plaintiffs need not plead "unreimbursed losses" to plead an injury "*under Florida law.*" *See* Opp. 24. But the weight of authority holds that plaintiffs whose unauthorized charges were reimbursed fail to plead an injury. Mot. 20 (citing cases). And Georgia courts are likely to follow the cases requiring that losses be *un*reimbursed. *Cf. Finnerty*, 687 S.E.2d at 845.

12

In addition, the *Resnick* court made its decision on starkly different facts. That court reasoned that the plaintiffs' allegations were sufficient because "the Complaint specifically allege[d] that both [plaintiffs] suffered *financial injury*." 693 F.3d at 1324 (emphasis added).  For example, the complaint alleged that one of the plaintiffs "was forced to spend money … contesting fraudulent charges made in her name."  Amended Complaint, *Resnick v. AvMed*, 2011 WL 1188356 ¶ 47 (Filed S.D. Fla. Jan. 14, 2011).  The CCC here contains no similar allegations for any of the three plaintiffs who claim payment-card fraud.  To the contrary, these plaintiffs allege only that they "spent time and effort"—not money—remedying the alleged unauthorized charges.  CCC ¶¶ 26, 33, 60.

*e. Insufficiency of Nominal Damages.*  Plaintiffs contend that they should be allowed to pursue their tort claims on a theory of nominal damages even if they did not suffer any actual injury.  Opp. 24–25.  Not so.  An "injury is necessary to show even nominal damages." *Rite Aid*, 726 S.E.2d at 580 (quotation marks omitted).  "In order for a tort action to lie, *there must be an injury to the plaintiff* …." *Cotton States Mut. Ins. Co. v. Crosby*, 260 S.E.2d 860, 861 (Ga. 1979) (emphasis added).  "Proof of negligence in the air, so to speak, will not do." *Id.* (citing *Palsgraf v. L.I. R. Co.*, 162 N.E. 99 (N.Y. 1928)); *see Meeks v. Coan*, 302 S.E.2d 418, 420 (Ga. Ct. App. 1983) (rejecting negligence claim where "no injury

resulted").

### 3.    Economic Loss Doctrine.

"Under the economic loss rule, a [contracting party] can recover in tort only those economic losses resulting from injury to his person or damage to his property." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005).  Even where no contract exists, the economic loss rule bars tort claims for purely economic damages.  *See Remax Mtn. Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 & n.6 (Ga. Ct. App. 2006).  Plaintiffs have no real answer for this case law, so they lean on rulings that the existence of an independent duty of care trumps the economic loss rule.  Opp. 18–19.  But no independent duty exists here.  *See infra* Section I.C; *see also* Mot. 24–33.

### C.    Plaintiffs' Negligence And Declaratory Judgment Claims Should Be Dismissed.

Plaintiffs' negligence claim requires that they show a duty of care and that the breach of that duty caused injury to them.  *Wells Fargo Bank, N.A. v. Jenkins,* 744 S.E.2d 686, 687 (Ga. 2013).  Because they cannot, their negligence claim should be dismissed.

Georgia common law does not impose the duty on which Plaintiffs rely. Plaintiffs have put all their chips on two *Erie* predictions this Court made about whether Georgia recognizes a legal duty to safeguard personal information.  *See*

14

*generally* Opp. 9–18 (relying on *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018), and *In re Home Depot, Inc., Cust. Data Sec. Breach Litig.*, 2016 WL 2897520 (N.D. Ga. May 18, 2016)).

But the Georgia Court of Appeals has conclusively clarified the law in this area, holding that Georgia does not recognize the duty on which those rulings were premised. *McConnell v. Ga. Dep't of Labor*, 814 S.E.2d 790, 799 (Ga. Ct. App. 2018) (*McConnell III*); *see* Mot. 24–26 (explaining history of *McConnell* case). The *McConnell III* court held unequivocally that "a duty of care to safeguard personal information … has no source in Georgia statutory or caselaw," and that a negligence claim based on such a duty does not survive.   814 S.E.2d at 799. *McConnell III* binds this Court.  *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009).

Attempting to circumvent binding law, Plaintiffs seek to artificially narrow *McConnell III*'s broad holding by arguing that the real test of whether a duty exists is "foreseeability of the harm."   Opp. 12–13.   But McConnell's complaint explicitly alleged that the harm to him and the other putative class members was "reasonably foreseeable."  Ex. 2 (1st Amended Complaint, *McConnell v. Ga. Dep't of Labor*, ¶¶ 26–27).   Under Georgia's notice-pleading standard, McConnell was not required to plead more but would have been permitted to develop facts

15

necessary to support those allegations during discovery. *See McConnell III*, 814 S.E.2d at 796 (complaint is sufficient so long as "any state of provable facts [may be] asserted in support of" its allegations). Nevertheless, the Court of Appeals broadly held that no duty existed without even hinting that its decision was limited only to *un*foreseeable data breaches.

As Plaintiffs recognize, Opp. 12–13, the court was fully aware of *Home Depot*, but it did not seek to distinguish that case or otherwise cabin its *McConnell III* holding in in any way. That is no surprise: the broad rejection of Plaintiffs' proposed new duty of care in *McConnell III* is fully in line with Georgia's approach to duty, under which duties not recognized by the legislature or set down in longstanding caselaw cannot be used as the basis for a negligence claim. *E.g.*, *Jenkins*, 744 S.E.2d at 688 (cautioning against "usurp[ing] legislative authority by inferring or supplying" an unrecognized duty). Indeed, Plaintiffs' primary argument is that imposing the duty they allege would "fulfill[] the underlying purposes of negligence law." Opp. 10; *id.* at 16 ("social policy supports a duty here"). But that argument asks this Court to engage in policymaking—a role Georgia has forbidden its courts. *Comm. Inv. Co v. Frye*, 134 S.E.2d 39, 40 (Ga. 1963) ("[T]he legislature, and not the courts, are empowered by the Constitution to decide public policy....").

16

Plaintiffs' policy arguments cannot overcome binding case law.  The duty of care on which they have premised their negligence claim does not exist.[6]  Further, as discussed above, Plaintiffs have failed to plead either injury or proximate causation, providing independent reasons why their negligence claim fails.  *See supra* Section I.B.  For those reasons, Plaintiffs' negligence claim—and their tagalong declaratory judgment claim—should be dismissed.  *See Collins*, 815 S.E.2d at 645–46 (dismissing declaratory judgment claim).

### D.    Plaintiffs' Negligence *Per Se* Claim Should Be Dismissed.

Plaintiffs contend that "not having reasonable data security" is an "unfair practice prohibited by" Section 5 of the FTC Act.  Opp. 28–29.  But negligence *per se* must be premised on a *specific* duty *expressly* imposed by a statute.  *See* Mot. 34 (citing cases).  Nothing in the FTC Act specifically or expressly identifies a failure to have "reasonable data security" as an "unfair practice."  *See* 15 U.S.C. § 45.

To the contrary, "[a]n act or practice," even one that "causes substantial injury," is "not unfair within Section 5(a)'s meaning" unless a statute, the common law, or the Constitution makes it so.  *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1229 (11th Cir. 2018).  Simply put, Plaintiffs have failed to offer any

---

[6] Plaintiffs appear to concede that the duty they allege based on the FCRA does not exist.  Mot. 33.  In any event, they do not press any argument showing such a duty. *See* Opp. 9–18.

support for their assertion that the statute, common law, or Constitution renders a failure to have "reasonable data security" an "unfair practice."

Plaintiffs also contend that because the FTC Act is a federal statute, this Court should consider "the common law generally as expressed in the Restatement" instead of Georgia common law.  Opp. 30 n.9.  Plaintiffs, however, identify no Restatement provision that expressly and specifically imposes a duty to safeguard personal information.  *See id.*  Nor does it matter that the FTC Act is federal.  For example, claims under the Federal Tort Claims Act similarly incorporate common law, but courts look to the common law of the states where they sit.  *E.g.*, *Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015) ("[A] state tort cause of action is a *sine qua non* of FTCA [*i.e.*, Tort Claims Act] jurisdiction, and we have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action.").

In any event, in Georgia "the common law is presumed to be the same in all the American States," and Georgia courts are presumed to have decided the common law correctly.  *Coon*, 797 S.E.2d at 834 (quotation marks omitted).  Nor does it matter that this might lead to Section 5 being "construed differently depending on the state in which the conduct at issue occurred."  Opp. 30 n.9.  That is because "[t]here is still only one right construction"—which is presumed to be

the one announced by Georgia courts.  *Coon*, 797 S.E.2d at 834 (quotation marks omitted); *see also Zelaya*, 781 F.3d at 1324.  In Georgia, *McConnell III* is *the* common law's pronouncement, and it holds that no duty to safeguard personal information exists.  *See Coon*, 797 S.E.2d at 834; *McConnell III*, 814 S.E.2d at 799.  This Court therefore may not find a duty in Section 5 sufficient to state a negligence *per se* claim.  *See LabMD*, 894 F.3d at 1229.

### E. Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim Should Be Dismissed.

#### 1. *McConnell III* Confirms That The GFBPA Does Not Require Safeguarding PII.

Plaintiffs complain that "Equifax again marginalizes *Arby's*," claiming that it "was decided after *McConnell* and held that data breach victims have a claim under" the GFBPA.  Opp. 32.  This is a bait-and-switch—the *Arby's* decision Plaintiffs rely on everywhere else is not one they rely on for this point.  *In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 1222 (N.D. Ga. June **28**, 2018) (*Arby's II*).  Equifax did not "marginalize[]" *Arby's II* in its motion to dismiss, because *Arby's II* was not issued until *after* Equifax filed its motion.  *See* Mot. 1.[7]

---

[7] *Home Depot* and the first *Arby's* opinion preceded *McConnell III*, and so to the extent they are in conflict, *McConnell III* robs them of persuasive value.  *Arby's II*, though decided after *McConnell III*, does not contend with *McConnell III*'s holdings.  Indeed, it does not even cite *McConnell III*.  *See generally* 317 F. Supp. 3d 1222–28.

And *Arby's II* conflicts with *McConnell III*, which held that an alleged duty to safeguard PII "has no source in Georgia statutory law."  814 S.E.2d at 678. Indeed, the *McConnell III* court considered the GFBPA and ruled that a related section of the "Fair Business Practices Act … can not serve as the source of … a general duty to safeguard and protect the personal information of another."  *Id*.  As the court explained, "[Georgia's] legislature has so far not acted to establish a standard of conduct intended to protect the security of personal information." *Id*. at 679.  That explanation of Georgia law is both correct and binding.

Plaintiffs contend that the question whether inadequate data security practices constitute unfair business practices should be deferred for jury consideration.  Opp. 31.  But "[u]nder Georgia law …a court may determine what constitutes a violation of the GFBPA as a matter of law."  *Harris v. Liberty Mut. Comm. Mgmt., Inc.*, 702 F.3d 1298, 1303–04 (11th Cir. 2012) (citing *Henderson v. Gandy*, 608 S.E.2d 248, 253 (Ga. Ct. App. 2004)).  *McConnell III* did just that. 814 S.E.2d at 798.  Moreover, Plaintiffs misread the one case they cite for their jury-question proposition, *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467 (Ga. Ct. App. 1990).   There, no question existed that plaintiffs' legal theory was cognizable; instead, there were lingering fact questions about whether, for example, "appellant's agent was timely contacted by a credit union office

regarding the model number discrepancy" for the stolen vehicle sold by the appellant. *Id.* at 470. The case *Regency* cited on this question makes clear that the *Regency* court was merely reciting the unremarkable proposition that the court should defer *fact questions* to the factfinder: "questions of fraud, the truth and materiality of representations made by a seller, and whether the buyer could have protected himself by the exercise of proper diligence are usually questions for the jury, except in plain and indisputable cases." *Credithrift of Am. v. Whitley*, 380 S.E.2d 489, 493 (Ga. Ct. App. 1989). Here, though, the question is a legal one: is allegedly inadequate data security a GFBPA "unfair act[] or practice[]"? The question has already been asked and answered. *McConnell III*, 814 S.E.2d at 798.

### 2. Plaintiffs Have Not Pleaded Reliance.

Plaintiffs needed to plead reliance, and they failed. This is a second, independent reason to dismiss their GFBPA claim. Plaintiffs contend that they need not plead reliance "to state a GFBPA claim based on omissions as opposed to misrepresentations." Opp. 34. But Plaintiffs' complaint relies on affirmative misrepresentations to support their GFBPA claim. CCC ¶¶ 362(a)–(b) & 363 (alleging that Equifax "[m]isrepresent[ed] that it would protect the privacy and confidentiality" of Plaintiffs' PII and "that it would comply with common law and statutory duties pertaining to the security and privacy" of that PII, and that those

"misrepresentations … were material").

Further, Plaintiffs contend that for reliance purposes "[t]he critical question is whether the plaintiff would have acted differently had the truth been disclosed." Opp. 35. And Plaintiffs argue that if they had known about Equifax's alleged failings, they "would have made different decisions … or forced Equifax out of business." Opp. 35. This argument contradicts the factual allegations in the Complaint. The CCC repeatedly alleges that Plaintiffs were unable "to opt-out of Equifax's collection and sale" of data, and could do nothing to "hinder[] Equifax's ability to profit from the sale of" PII. *Id.* ¶ 4; ¶ 279.

Nor can Plaintiffs avoid the reliance requirement by characterizing Equifax's conduct as "unfair." *See* Opp. 36. The statute requires reliance *regardless* of whether the act at issue is alleged to be deceptive *or* unfair. O.C.G.A. § 10-1-399(b) (plaintiff must "describ[e] the *unfair* … act or practice *relied upon*") (emphasis added). And so courts have held that reliance is "an essential element of a[] [G]FBPA claim." *Crown Ford Inc. v. Crawford*, 473 S.E.2d 554, 557 (Ga. Ct. App. 1996); *see also Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga. Ct. App. 1995). The *Arby's II* decision did not follow these Georgia cases or the Georgia statute, and instead relied on "the decisions of courts around the country" interpreting other laws. 317 F. Supp. 3d at 1227. This Court should not follow an analysis *of*

22

Georgia law not rooted *in* Georgia law.

**F.      Plaintiffs' Unjust-Enrichment Claim Should Be Dismissed.**

Plaintiffs' unjust-enrichment claim fails for several reasons.  Mot. 41–43.  First, Plaintiffs have failed to allege that they "provided" their PII to Equifax.  *Sitterli v. Csachi*, 811 S.E.2d 454, 457 (Ga. Ct. App. 2018) (quotation marks omitted).  Non-Contract Plaintiffs do not allege that they themselves conferred any "property" or "service" on Equifax.  *See* O.C.G.A. § 9-2-7.  Plaintiffs concede that no Georgia court has permitted an unjust-enrichment claim on their attenuated theory.  Opp. 38.

Moreover, an unjust-enrichment plaintiff must allege "the expectation that the defendant would be responsible for the cost" of the thing conferred.  *Sitterli*, 811 S.E.2d at 457 (quotation marks omitted).  Non-Contract Plaintiffs make no factual allegation that they expected Equifax "to be responsible for the cost" of their PII.  Mot. 42–43.

Contract Plaintiffs also cannot maintain an unjust-enrichment claim.  The parties *agree* that some contract bound Contract Plaintiffs.  *See* Mot. 44.  Equifax merely disputes the *identity* and *content* of that contract.  *See id*.  Plaintiffs "may not plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed … that a valid contract exists."  *Clark v. Aaron's,*

*Inc.*, 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012).

## II.   THE CONTRACT CLAIMS SHOULD BE DISMISSED.

### A.   Plaintiffs' Express Contract Claim Should Be Dismissed.

Plaintiffs' contract theory premised on the Privacy Policy fails because they have not sufficiently alleged that the Privacy Policy is a binding contract.  Mot. 45–46.  Plaintiffs must plead all elements of a contract.  *Broughton v. Johnson*, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001).  That includes showing "mutual assent by all parties to all contract terms."  *Id.*  But the CCC nowhere explains when, how, or even if the Privacy Policy became a mutually binding contract—especially one "of such certainty and completeness that either party may have a right of action upon it."  *Weathers v. Dieniahmar Music, LLC*, 788 S.E.2d 852, 858 (Ga. Ct. App. 2016).  Instead, Contract Plaintiffs merely allege that at some point they bought something from Equifax.  *See, e.g.*, CCC ¶¶ 13–15.  This does not show a contract of "certainty and completeness," and Plaintiffs' failure to plead a contractual duty requires dismissal of their contract claims.  *See* Mot. 46 (citing cases).

Next, as noted in Equifax's Motion, Plaintiffs are bound by an express contract—just not the one they allege.  Equifax conditions its sales of products on an express Product Agreement.  That express contract contains a merger clause.  Mot. 44–45.  Plaintiffs contend that the merger clause in Equifax's Product

Agreement does not bind them because the most recent version—the one referenced in Plaintiffs' Complaint, CCC ¶¶ 233 & 248—is dated after the data breach. They argue instead that "[i]f any Product Agreement applies, it is one that was in effect at the time of the breach." Opp. 40. But *that* version of the Product Agreement, too, contains a merger clause and does not incorporate the Privacy Policy. *See generally* Ex. 1 (Product Agreement dated May 2, 2017); *see id.* ¶ 39 ("This Agreement constitutes the entire agreement between You and Us ….").

Plaintiffs then shift ground, contending that the Privacy Policy was incorporated into Equifax's Site Terms of Use. Opp. 41. But no Plaintiff alleges that he or she accessed Equifax's website before the data security breach—and, absent such a visit, no contract including the Terms of Use could have arisen. *See generally* CCC ¶¶ 13–108. In any event, the Terms of Use subsection on which Plaintiffs rely expressly provides that "[i]n no event will Equifax … be liable to any party for any direct, indirect, special or other consequential damages for any use of or reliance upon the information found at this web site." *Id.* So, to the extent Plaintiffs contend the Site Terms of Use are a binding contract sufficient to incorporate the Privacy Policy, they cannot seek damages for the theft of their PII.

Finally, even if the Privacy Policy were a contract—and it is not—the policy itself fully disclaims the duty Plaintiffs allege. Mot. 46–47. Plaintiffs first contend

that the policy containing the disclaimer "applies only to … products … purchased *on or after* April 24, 2017." No: as Equifax pointed out in its motion to dismiss, each of its Privacy Policies contains a clause reserving to Equifax the unilateral right to modify the policy.[8] Mot. 46–47. Equifax has—consistent with the Policy's terms—modified it. The most recent version—the one dated April 24, 2017 and thus the one in force during the data breach—is applicable. And that version provides that Equifax "cannot ensure or warrant the security of any information you transmit to us." Privacy Policy, https://bit.ly/2xvDU2o. Equifax therefore did not breach the Privacy Policy.

Plaintiffs further contend that consumers who "obtained credit reports, disputed credit items, requested a fraud alert, or froze their credit" are subject to a different privacy policy, arguing that those "actions … constitute the bulk of the interaction between Equifax and consumers." Opp. 43. But those are *not* the facts pleaded in the CCC. On the contrary, Contract Plaintiffs uniformly allege that they

---

[8] This explicit reservation of a unilateral and unlimited right of modification indicates that the Privacy Policy is not an enforceable contract, because it demonstrates that Equifax *made no enforceable promise* to Plaintiffs. *See, e.g.*, *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (unilateral right of modification renders alleged contract illusory); *Douglas v. Johnson Real Estate Invs., LLC*, 2011 WL 13177544, at *2 (N.D. Ga. 2011) (same), *cf. Eden v. Eden*, 812 S.E.2d 317, 321 (Ga. Ct. App. 2018) ("It is elemental that it is not possible to have a unilateral modification *of a contract* ….") (emphasis added; quotation marks omitted).

bought *identity-theft protection or credit monitoring* products, and that it is those purchases that give rise to their breach claims.[9]  CCC ¶¶ 13–15, 18–19, 30, 60, 62, 66, 70, 73, 74, 85, 88, 91 & 96.

And even if Plaintiffs' claims were governed by the credit-report privacy policy, that policy *too* disclaims any duty of the type Plaintiffs allege.  Privacy Policy, https://www.equifax.com/privacy/personal-credit-reports (providing that Equifax "cannot ensure or warrant the security of any information you transmit to us").  Plaintiffs' breach claim should be dismissed.

### B.   Plaintiffs' Implied-Contract Claim Should Be Dismissed.

The existence of an express contract with a merger clause requires dismissal of Plaintiffs' implied-contract claim.  Mot. 48.  Further, Plaintiffs have failed to allege a meeting of the minds between them and Equifax, which is fatal to their implied-contract claim.  *Id.*  In particular, they cannot plead an implied contract because "Georgia courts have refused to imply" any obligation to "protect another from the criminal acts of third parties" without "a plain and explicit expression of willingness to" do so.  *Burnett v. Stagner Hotel Cts., Inc.*, 821 F. Supp. 678, 682 (N.D. Ga. 1993), *aff'd*, 42 F.3d 645 (11th Cir. 1994).  Plaintiffs have not identified

---

[9]  The two exceptions are Plaintiff Kleveno (who alleges he used a debit card to unfreeze his credit with Equifax) and Plaintiff Martucci (who alleges she bought a credit report).  CCC ¶¶ 26 & 33.  Their claims nevertheless fail for the other reasons cited in this Section.

any "plain and explicit expression" of that "willingness" in their pleading. *See* Mot. 49 & CCC ¶¶ 410–11.

## III. EACH OF PLAINTIFF'S CLAIMS UNDER HIS OR HER LOCAL STATE STATUTES SHOULD BE DISMISSED.

### A. Plaintiffs' Claims Under State Business Fraud And Consumer Protection Statutes Should Be Dismissed.

#### 1. Foreign States' Unfair and Deceptive Acts and Practices (UDAP) Laws Cannot Govern Conduct That Took Place In Georgia.

As a matter of black-letter Commerce Clause law, foreign states may not regulate commercial conduct that occurred entirely in Georgia. Mot. 53–56; *State Farm v. Campbell*, 538 U.S. 408, 421–22 (2003) (it is a "basic principle of federalism" that "each State *alone* can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction") (emphasis added). "[T]he Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders …." *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989) (quotation marks and alteration omitted). That is true "whether or not the commerce has effects within" that foreign state. *Id*. It is also true even if "the statute's extraterritorial reach was intended by the legislature." *Id.* Most states have correctly recognized this principle and have appropriately limited their statutes' reach as a matter of state law. *See* Mot. 54 n.19.

28

Plaintiffs reject this bedrock principle of constitutional federalism. Instead, they argue that lower-court cases—most of which address distinct issues like personal jurisdiction and choice of law—somehow trump both the Constitution and the binding Supreme Court precedent interpreting it. Opp. 53 n.13.

But even if Plaintiffs' cases had squarely addressed the legal issue this case presents, each of their cases differs from this one in a key respect: in each, the plaintiff had entered into a *direct commercial relationship* with the defendant—for example, by buying a product from the defendant. Thus, there, the commercial conduct did not "tak[e] place wholly outside the [plaintiff's] State's borders." *Healy*, 491 U.S. at 336; *see, e.g.*, *Brown v. World Christian Church*, 2001 WL 681256, at *2 (W.D. Tex. Apr. 5, 2001) (application of Texas law "does not offend the constitution" where "a Texas resident" was "solicited … in Texas, … completed the application process in Texas, and completed all of her course work" for defendant's allegedly fraudulent university "in Texas.").

But here Plaintiffs affirmatively allege that 80% of them and "[n]early all" putative Nationwide Class members "had no … relationship with Equifax." CCC ¶ 4. There is no commercial nexus with Plaintiffs' home states, and as a result Plaintiffs cannot rely on foreign statutes to govern commercial conduct that *they concede* occurred entirely in Georgia. CCC ¶ 311. Applying the statutes of those

29

other states to Equifax's conduct violates the Commerce (and Full Faith and Credit) Clauses. *Healy*, 491 U.S. at 336.

### 2.     Plaintiffs' UDAP Claims Are Redundant Of Their GFBPA Claim.

If this Court concludes—contrary to *McConnell III*—that Plaintiffs have stated a claim under the GFBPA, it should dismiss Plaintiffs' remaining state statutory claims. *Arby's II*, 317 F. Supp. 3d at 1228 (dismissing non-Georgia state-law claims as "redundant and duplicative" of GFBPA claim).

### 3.     Plaintiffs' UDAP Claims Fail.

There are numerous other reasons to dismiss Plaintiffs' UDAP claims. *See generally* Mot. 52–64 & Ex. 2. Plaintiffs fail to plead fraud with particularity; many fail to allege transactions bringing their claims within the statutes they cite; and they have largely failed to allege cognizable injuries.

***Failure to plead fraud with particularity.*** Each of Plaintiffs' state UDAP claims relies on allegations of misrepresentation and omission. Those claims sound in fraud and thus must be pleaded with particularity. *E.g.*, *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (a claim sounds in fraud when it is "premised upon a course of fraudulent conduct"). Rule 9(b)'s heightened standard applies even to claims alleged under the "unfairness" prong of a UDAP statute. *Liston v. King.Com, Ltd.*, 254 F. Supp. 3d 989, 1007 (N.D. Ill.

30

2017).   Courts have rejected what Plaintiffs try here—namely, professing that conduct they allege is deceptive escapes Rule 9(b) because Plaintiffs also label it "unfair."   *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018) ("Simply adding language of 'unfairness' … does not alter the fact that [plaintiffs'] allegations are entirely grounded in fraud ….").

Nor are Plaintiffs correct that Equifax's cases involve only "narrow representations to individuals rather than broad representations that affect all Americans."   Opp. 56.   Courts considering data-breach allegations under UDAP statutes routinely require compliance with Rule 9(b)'s pleading standard.   *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (claim under Missouri consumer-protection act failed because allegation that defendant's security measures were inadequate despite its claims to the contrary "sounds in fraud" and "was not pleaded with particularity"); *VTech*, 2018 WL 1863953, at *7 (calling fraudulent conduct "unfair" does not allow plaintiff to avoid Rule 9(b)).   This Court should follow those rulings.   Plaintiffs' allegations do not meet Rule 9(b)'s particularity requirements, *see* Mot. 56–60, and therefore should be dismissed.

*Failure to plead transactions.*   The non-Contract Plaintiffs have failed to plead transactions bringing their allegations within the reach of numerous state UDAP statutes, and so their claims cannot proceed.   Mot. 61–62.

Plaintiffs have cited numerous cases that they contend suggest the statutes do not mean what they say.  But to the contrary, courts have held that most of these statutes require *direct* consumer transactions *with the defendant or its agent*.[10]

Moreover, the cases Plaintiffs cite are unpersuasive as nonbinding, or are readily distinguishable on their facts[11] or because the law they apply is inapposite here.  For example, some statutes that do not require a direct merchant-consumer transaction still require that the injury *arise* out of a consumer transaction.[12]  No non-Contract Plaintiff has alleged such a transaction—those who allege any

---

[10] *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 2015 WL 4092866, at *8 (S.D. Ohio July 6, 2015) (W.V. law); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 949 (D.C. Cir. 2017); *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 546 (Ky. Ct. App. 2013); *Knutsen v. Dion*, 90 A.3d 866, 873 (Vt. 2013); *Kas v. Mercedes-Benz USA, LLC*, 2012 WL 12886203, at *2 (C.D. Cal. Jan. 19, 2012); *Berry v. Nat'l Med. Servs., Inc.*, 205 P.3d 745, 752 (Kan. Ct. App. 2009); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 666 (S.D. Miss. 2007); *Dalesandro v. Longs Drug Stores Cal., Inc.*, 383 F. Supp. 2d 1244, 1248 (D. Haw. 2005); *Thomas v. Hartford Mut. Ins. Co.*, 2003 WL 220511, at *4 (Del. Super. Ct. Jan. 31, 2003); *R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 178 (D.R.I. 2000); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 57 (3d Cir. 1992) (Pa. law).

[11] For example, in *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 (Mo. 2014); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003); *Elkins v. Microsoft Corp.*, 817 A.2d 9, 20 (Vt. 2002); and *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 658 (Del. Super. Ct. 1985), the plaintiffs and defendants had direct commercial or other relationships not present here.

[12] *E.g.*, *Berry*, 205 P.3d at 752; *Vergara Hermosilla v. Coca-Cola Co.*, 2010 WL 11553428, at *2 (S.D. Fla. Aug. 17, 2010); *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998); *Cooperman v. R.G. Barry Corp.*, 775 F. Supp. 1211, 1213 (D. Minn. 1991).

transaction at all allege purchases they made *after* the data breach, which cannot be purchases out of which their claims arose.

Not only that, many of the relevant non-Contract Plaintiffs have failed to allege that they participated in *any* transaction *with anyone.*[13]   Those Plaintiffs' UDAP claims should be dismissed.

**Injury.**   Plaintiffs have failed to plead injuries proximately caused by Equifax.   *See supra* Section I.B; Mot. 17–23.   Accordingly, they cannot bring claims under state UDAP laws.  *See* Mot. 60–61 & Ex. 2.

**B.   Plaintiffs' Claims Under Data-Breach-Notification Statutes Should Be Dismissed.**

Plaintiffs have asserted claims under several statutes that by their terms do not provide for private suits.[14]   Mot. 65 & n.27.   They also assert claims under

---

[13] CCC ¶¶ 17 (Arizona); 21 (California); 28 (sole Delaware Plaintiff); 39 (sole Hawaii Plaintiff); 45 (sole Iowa Plaintiff); 47 (Kansas); 63 (Mississippi); 65 (Missouri); 86 (Pennsylvania); 89–90 (both Rhode Island Plaintiffs); 98 (Utah); 100 (sole Vermont Plaintiff); 101 (sole Virginia Plaintiff).

[14] For example, violations of C.G.S.A. § 36a-701b(g) "*shall be* enforced by the Attorney General."   C.G.S.A. § 36a-701b(g) (emphasis added).   Similarly, Plaintiffs cite Md. Comm. Code § 14-3508 (part of Subtitle 35, the MPIPA) to suggest that Md. Comm. Code § 14-3408 (part of subtitle 34, the Social Security Privacy Act) is enforceable as an unfair or deceptive trade practice *despite* the fact that § 14-3508 is limited, by its own terms, to "violation[s] of *this* subtitle." (Emphasis added.)   And Mont. Code § 30-14-1705(1) provides that only "the department may bring an action"; § 30-14-1705(3) confirms as much by imposing fines to be paid *to the state, see* Mont. Code § 30-14-142.

statutes that *courts* have held do not provide for private suits. *Id.* Their sole authority for contending that these claims may nonetheless go forward is the *Target* data breach case. Opp. 62–64 (citing *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014)). This Court need not follow *Target* where its reasoning is plainly and persuasively contradicted by other courts or by the statutes themselves.

But more importantly, the state data-breach notification statutes on which Plaintiffs rely *uniformly* permit a reasonable time period to ascertain the scope of the breach, and a handful of them set outside time limits on what is reasonable, *none of which* is shorter than 45 days. Mot. 66–67. Plaintiffs concede that Equifax notified consumers of the breach 41 days after it was discovered. CCC ¶¶ 196–97; 212; 227. Plaintiffs have simply failed to allege that Equifax violated any notification statute.

Plaintiffs contend that this Court should defer decision about when Equifax was "on notice of the breach," suggesting without citation that this is a fact question. Opp. 65 n.19. Plaintiffs, again, ignore their own complaint, which squarely alleges that Equifax discovered the breach on July 29, 2017. *See* CCC at 107 ("Equifax Discovers the Data Breach"); *id.* ¶¶ 196 (discovery occurred "[o]n July 29, 2017") & 199 (identifying "August 1, 2017" as "three days after Equifax

first noticed the breach"). This Court must accept those allegations for the purposes of deciding this motion.

Nor have Plaintiffs pleaded any facts showing that any delay in notification—even if unreasonable—resulted in injury. Mot. 68–69. Accordingly, their state data-breach-notification statutory claims should be dismissed.

### C.   Plaintiffs' O.C.G.A. § 13-6-11 Claim Should Be Dismissed.

At a minimum, there is a "bona fide controversy or dispute regarding liability" in this case. *David G. Brown, P.E., Inc. v. Kent*, 561 S.E.2d 89, 90–91 (Ga. 2002). That and Plaintiffs' failure to plead facts showing bad faith are enough to deny their O.C.G.A. § 13-6-11 claim. *See* Mot. 69–70.

## CONCLUSION

For these reasons—and those in Equifax's Motion to Dismiss—the CCC should be dismissed in its entirety.

DATED:  September 12, 2018                  Respectfully submitted,

/s/  *David L. Balser*
**KING & SPALDING LLP**
David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler

Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Response was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 12th day of September, 2018.


*/s/ David L. Balser*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser
