# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

ERIN BISHOP,
et al.,

      Plaintiffs,

v.

SHORTER UNIVERSITY, INC.,

      Defendant.

CIVIL ACTION FILE
NO. 4:15-CV-0033-HLM

## ORDER

This case is before the Court on Defendant's Motion to Dismiss [4] and the Court's Order of May 12, 2015 [17].

## I.   Standard Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to

dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. <u>Alvarez v. Attorney Gen. for Fla.</u>, 679 F.3d 1257, 1261 (11th Cir. 2012).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions. <u>Chandler v. Sec'y of Fla. Dep't of Transp.</u>, 695 F.3d 1194, 1199 (11th Cir. 2012) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). The Court also does not accept as true "unwarranted deductions of fact or legal conclusions masquerading as facts." <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir. 2006) (internal quotation marks and citation omitted).

2

Finally, the Court may dismiss a complaint if it does not plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Simpson v. Sanderson Farms, Inc., 744 F. 3d 702, 708 (11th Cir. 2014) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Moreover, "[a] claim has

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss.  Id.  Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## II.  Background

### A.  Plaintiff's Allegations

#### 1.  The Parties

Named Plaintiffs are former students at Defendant Shorter University, Inc.  ("Defendant Shorter").  (First Am.

4

Compl. (Docket Entry No. 3) ¶¶ 1, 4.)  Plaintiff Bishop is a citizen of and resides in the State of North Carolina.  (Id. ¶ 7.)  Plaintiff Davis is a citizen of and resides in the State of Georgia.  (Id. ¶ 8.)  Plaintiff Owens is a citizen of and resides in Georgia.  (Id. ¶ 9.)  Plaintiff Broome is a citizen of and resides in Georgia.  (Id. ¶ 10.)  Plaintiff Albertson is a citizen of and resides in Georgia.  (Id. ¶ 11.)  Plaintiff Green is a citizen of and resides in Georgia.  (Id. ¶ 12.)  Plaintiff Clark is a citizen of and resides in Georgia.  (Id. ¶ 13.)  Plaintiff Williams is a citizen of and resides in Georgia.  (Id. ¶ 14.)  Plaintiff Dyer is a citizen of and resides in Georgia.  (Id. ¶ 15.)  Plaintiff Brewington is a citizen of and resides in Florida.  (Id. ¶ 16.)  Plaintiff Hinchman is a citizen of and resides in Georgia.  (Id. ¶ 17.)  Defendant Shorter is a non-

5

profit corporation licensed to do business and doing business in Georgia.  (Id. ¶ 18.)

## 2. Plaintiffs Provided Personal Health Information to Defendant

Plaintiffs' First Amended Complaint alleges how Defendant came to possess medical information for each of Named Plaintiffs.  Plaintiff Bishop provided medical records to Defendant and had a physical examination by one of Defendant's doctors in order to participate on the cheerleading team.  (First. Am. Compl. ¶ 24.)  After cheerleading injuries, Plaintiff Bishop had an examination by a physical therapist associated with Defendant.  (Id.) Plaintiff Bishop also provided Defendant records of off-campus medical treatment. (Id.) The off-campus treatment was partially reimbursed by Plaintiff Bishop's parents'

6

insurance, and the records likely included their personal identifying information ("PII"). Plaintiffs allege similar facts as to Plaintiffs Davis and Owens, also on the cheerleading team, who also had medical examinations by Defendant's doctor and provided medical records to Defendant in order to participate on the team; received exams by a physical therapist for their injuries; and provided medical records for off-campus treatment that their parents' insurance reimbursed. (Id. ¶¶ 25-26.)

Plaintiff Broome had a medical examination by a doctor associated with Defendant and provided medical records to Defendant in order to play on Defendant's softball team. (First Am. Compl. ¶ 27.) A physical therapist associated with Defendant examined Plaintiff Broome after she

suffered softball injuries.  (<u>Id.</u>)  Plaintiff Broome also received medical treatment off campus and provided the records to Defendant, which likely included her parents' PII as their insurance partially reimbursed the costs fo the treatment. <u>Id.</u>) Plaintiff Albertson took similar steps in order to participate on the softball team and provided Defendant with medical records for off-campus treatment, partially reimbursed by her parents' insurance, which likely included their PII.  (<u>Id.</u> ¶ 28.)  Plaintiffs allege the same for Plaintiff Clark.  (<u>Id.</u> ¶ 30.)

Plaintiff Green underwent a physical examination by a Defendant associated with Defendant and provided medical records to Defendant in order to participate on the cheerleading team.  (First Am. Compl. ¶ 29.)  Plaintiff

8

Williams did the same to play on the baseball team. (<u>Id.</u> ¶ 31.) So did Plaintiff Dyer, who also gave Defendant medical records for two off-campus medical visits which were partially reimbursed by Plaintiff Dyer's parents' insurance, resulting in their PII likely being in those medical records. (<u>Id.</u> ¶ 32.)

Plaintiffs further allege that Plaintiff Brewington had a medical examination by a doctor associated with Defendant, and handed over medical records in order to participate on the softball team. (First Am. Compl. ¶ 33.) Plaintiff Brewington also had an exam by a physical therapist associated with Defendant and provided Defendant with medical records, that likely included the PII of her parents, from two off-campus medical visits. (<u>Id.</u>)

Finally, the First Amended Complaint also alleges similar facts for Plaintiff Hinchman, who was on the wrestling team. (First Am. Compl. ¶ 34.) In order to be on the wrestling team, Plaintiff Hinchman had the requisite medical examination and provided medical records to Defendant. (Id.) Plaintiff Hinchman also gave Defendant medical records from two off-campus medical visits that likely contained the PII of his parents. (Id.)

### 3. Storage and Theft of the Medical Records

Defendant stored the medical records of Plaintiffs and other student athletes on campus in hard copy. (First Am. Compl. ¶ 35.) The records contained PII and personal health information ("PHI"), including names, social security numbers, birthdays, and basic medical information. (Id. ¶

10

AO 72A

36.)  The First Amended Complaint states that according to a police investigator quoted by the local newspaper, the door to the room containing the records was unlocked because the door was misaligned and difficult to lock.  (Id. ¶ 37.)

Plaintiffs allege that on September 23, 2014, Defendant discovered that the records of as many as 900 of Defendant's current and former students had been stolen from the unlocked room.   (First Am. Compl. ¶ 38.) Defendant notified some people of the theft by letter.  (Id.) Plaintiffs  Bishop,  Albertson,  Green,  Williams,  and Brewington did not receive any such notice in September. (Id.)  Plaintiffs claim that these Plaintiffs did not learn about

11

the theft until after the stolen information was used to file fraudulent tax returns. (Id.)

Plaintiffs state that Defendant told the public it was uncertain if any personal information was stolen even though Defendant either knew or had good reason to know that PII and PHI were stolen. (First Am. Compl. ¶ 39.) Plaintiffs allege that because Defendant did not inform them and others about the breach, they must now wait to receive their stolen tax refunds. (Id.)

According to Plaintiffs, the IRS is now investigating the fraudulently filed tax returns and stolen refunds. (First Am. Compl. ¶ 39.) Plaintiffs state that, depending on the type of investigation, the investigations can take at least six to twelve months to resolve. (Id. ¶ 40.) Plaintiffs claims that

12

they and all others who had fraudulent tax returns filed on their behalf will have to file all future tax returns by hard copy mail. (Id. ¶ 41.)

### 4. Problems with Tax Returns

Plaintiffs allege a number of different ways in which they have been harmed by being unable to file their tax returns and receive a refund. (First Am. Compl. ¶¶ 42-52.) Plaintiff Bishop spent money on credit monitoring and protection services. (Id. ¶ 42.) Because Plaintiff Bishop files jointly with her husband, Plaintiff Bishop's husband has been unable to file a return or receive a tax refund. (Id.) Plaintiff Bishop and her husband had earmarked money from their tax return for mortgage payments, student loan

13

payments, and contributing to their daughter's college fund. (Id.)

According to Plaintiffs, Plaintiff Davis was allowed to file a tax return but will not receive a refund until after the IRS completes its investigation. (First Am. Compl. ¶ 43.) Plaintiff Davis wanted to use her refund to help with a down payment on a new house and paying her student loans. (Id.)

According to Plaintiffs, the IRS told Plaintiff Owens that someone had already filed a tax return using her social security number. (First Am. Compl. ¶ 44.) Plaintiff Owens' credit score dropped 300 points. (Id.) Because they file jointly, Plaintiff Owens' spouse also cannot file a tax return or receive a refund. (Id.) Plaintiff Owens had planned to

14

use the money from the tax return to help with paying homeowner association fees dues, her husband's enrollment in a police academy, and student loan payments. (Id.)

Plaintiffs allege that Plaintiff Broome has also been unable to file a tax return or receive a refund. (First Am. Compl. ¶ 45.) Plaintiff Broome had hoped to use the money to purchase a new car and get her own apartment. (Id.)

Plaintiffs claim that Plaintiff Albertson was allowed to mail in her tax return but would not be able to immediately receive her refund. (First Am. Compl. ¶ 46.) The IRS' investigation may also affect her tax return next year. (Id.) Plaintiff Albertson planned to use her refund for mortgage payments. (Id.)

15

Plaintiffs alleges that Plaintiff Green was unable to file a tax return or receive a refund. (First Am. Compl. ¶ 47.) Plaintiff Green also received a letter that she was being audited. (Id.) Plaintiff Green had wanted to use her refund to pay her mortgage and buy clothing and other items for her baby. (Id.)

According to Plaintiffs, Plaintiff Clark was unable to file a tax return or receive a refund. (First Am. Compl. ¶ 48.) Plaintiff Clark had hoped to use her refund to pay off credit card bills. (Id.)

Plaintiffs claim that Plaintiff Williams also could not file a tax return or receive a refund and would need to get a PIN number from the IRS to use for the rest of his life. (First

16

Am. Compl. ¶ 49.)    Plaintiff Williams had earmarked his refund to go to a down payment on a house.  (<u>Id.</u>)

Plaintiffs allege that Plaintiff Dyer was also harmed by being unable to file a tax return or receive a refund because Plaintiff Dyer wanted to use his refund to pay back his student loans and may now have greater difficulty obtaining student loans for graduate school.  (First Am. Compl. ¶ 50.)

Plaintiffs claim that Plaintiff Brewington and her husband, with whom she files jointly, were unable to file returns or receive a refund and have been harmed because she may need a tax professional for future filings and had planned to use the refund to assist with the mortgage, childcare, student loans, credit card debt, and outstanding medical bills.  (First Am. Compl. ¶ 51.)

17

Finally, the First Amended Complaint alleges that Plaintiff Hinchman has been harmed by being unable to file a return or receive a refund because he is on a low, fixed income and had earmarked the money to pay his rent in advance. (First Am. Compl. ¶ 52.)

Plaintiffs state that according to the news, at least thirty other people whose records were stolen from Defendant had similar fraudulent tax returns filed. (First Am. Compl. ¶ 53.)

### 5. Plaintiffs' Reliance on Defendant

According to Plaintiffs, Defendant's website contains the following promises that Plaintiffs believe are related to protection of students' PII and PHI:

a. The goal of Campus Safety is to assure to the best of our ability the protection and

18

preservation of life and property from criminal acts and physical hazards. The expected outcomes include...better protection for the University against liability risks.

b.    Anything not working is reported and repaired within the week.

c.    The privacy of your medical information is important to us. We understand that your medical information is personal and we are committed to protecting it.

d.    OUR LEGAL DUTY. Law Requires Us to: 1. Keep your medical information private. 2. Give you this notice describing our legal duties, privacy practices, and your rights regarding your medical information. 3. Follow the terms of the notice that is now in effect.

(First Am. Compl. ¶ 55 (internal quotation marks and citations omitted) (omission in original).) Plaintiffs also claim that they paid tuition with the expectation that Defendant would use part of that money to adequately

19

protect their PII and PHI and the amount of money that should have, but did not, go to that effort is wrongfully collected. (<u>Id.</u> ¶ 56.)

## B. Procedural Background

Plaintiffs filed this case on February 20, 2015. (Docket Entry No. 1.) On February 27, 2015, Plaintiffs filed their First Amended Complaint. (Docket Entry No. 3.) On March 25, 2015, Defendant filed its Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"). (Docket Entry No. 4.) Plaintiffs filed their Response on April 22, 2015 (Docket Entry No. 15), and Defendant filed its Reply on May 18, 2015 (Docket Entry No. 18.) The briefing process for the Motion is now complete, and the Court finds the matter is ripe for resolution.

On May 12, 2015, the Court ordered the Parties to submit briefs on the Court's exercise of subject matter jurisdiction over this case. (Order of May 12, 2015 (Docket Entry No. 17).) Both Parties filed their responses on May 22, 2015. (Docket Entry Nos. 20, 21.)

## III. Discussion

### A. Negligence

Count I of Plaintiffs' First Amended Complaint states a claim for negligence. (First Am. Compl. ¶¶ 69-76.) To prevail on a negligence claim, a "plaintiff must show: (1) that [a defendant] had a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm, (2) a breach of that standard, and (3) a causal connection between the breach and the

21

resulting loss or damage to plaintiff." <u>Swinney v. Schneider Nat'l Carriers, Inc.</u>, 829 F. Supp. 2d 1358, 1365 (N.D. Ga. Nov. 8, 2011). "Negligence is the proximate cause of an injury only when the injury is the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act." <u>Duncan v. Klein</u>, 313 Ga. App. 15, 22, 720 S.E.2d 341, 347 (2011) (internal quotation marks and citation omitted).

A defendant may argue that an intervening act of a third party was the sole proximate cause of a plaintiff's injury, however, "for an intervening act of a third party to become the sole proximate cause of a plaintiff's injuries, the

AO 72A

intervening act must not have been foreseeable by defendant, must not have been triggered by defendant's act, and must have been sufficient [by] itself to cause the injury." <u>Ontario Sewing Mach. Co., Ltd. v. Smith</u>, 275 Ga. 683, 686, 572 S.E.2d 533, 536 (2002) (alteration in original) (internal quotation marks, citation, and footnote omitted). Under Georgia law, "[t]he general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act." <u>Bradley Ctr., Inc. v. Wessner</u>, 250 Ga. 199, 202, 296 S.E.2d 693, 696 (1982) (internal quotation marks and citation omitted).

"The question of proximate cause is one for the jury except in palpable, clear, and indisputable cases." <u>Atlanta Affordable Hous. Fund Ltd. P'ship v. Brown</u>, 253 Ga. App. 286, 288, 558 S.E.2d 827, 831 (2002) (internal quotation marks and citation omitted); <u>see also</u> <u>Ontario Sewing Mach.</u>, 275 Ga. at 677, 572 S.E.2d at 536 ("[I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." (internal quotation marks, citation, and footnote omitted)).

Defendant argues that two intervening criminal acts of third parties break the chain of causation from Defendant's act to the harm to Plaintiffs in this case. Two possible intervening criminal acts occurred in this case: (1) the theft

24

of the records and (2) the filing of fraudulent tax returns. The question thus is whether Defendant could have reasonably foreseen or had reason to anticipate those acts.

Most of the Georgia cases addressing the intervening criminal acts of third parties involve premises-liability and suggest that similar, prior criminal activity at the location or nearby is necessary to establish foreseeability. See e.g., Baker v. Simon Prop. Grp., 273 Ga. App. 406, 408, 614 S.E.2d 793, 795-96 (2005) (finding that "prior property crimes in the mall's parking lot are insufficient to create a factual issue whether the defendants could reasonably anticipate that a carjacking and shooting resulting in personal injury"); Drayton v. Kroger Co., 297 Ga. App. 484, 485, 677 S.E.2d 316, 317 (2009) ("In order to be reasonably

25

foreseeable, the criminal act must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers against the risk posed by that type of activity." (internal quotation marks, citation, and footnote omitted)); <u>Warner v. Arnold</u>, 133 Ga. App. 174, 179, 210 S.E.2d 350, 353-54 (1974) (concluding a jury issue existed as to causation when there had been numerous break-ins at other apartments in the building before someone broke into the plaintiff's apartment and started a fire). While instructive, those cases reflect a materially different set of facts than this one. This case does not involve a duty to protect others who come onto Defendant's land or crimes resulting in personal injury.

26

Additionally, Actual knowledge of prior criminal acts may not be necessary to prove foreseeability. Walker v. Aderhold Props., Inc., 303 Ga. App. 710, 713, 694 S.E.2d 119, 122 (2010) ("A landlord need not have actual knowledge of criminal conduct before it may be held liable for failing to keep the premises safe; rather "[a] landowner can be liable for third-party criminal attacks if the landowner has reasonable grounds to apprehend that such a criminal act would be committed but fails to take steps to guard against injury." (internal quotation marks, emphasis, and citation omitted)).   Moreover, none of those decisions came at the motion to dismiss stage of litigation.  Previous criminal activity on or about the premises may be necessary for future violent crimes on the premises to be foreseeable, but

27

the Court cannot conclude, based on those cases, as a matter of law that the theft of files is unforeseeable without similar previous criminal activity.

The standard is whether Defendant "had reasonable grounds for apprehending that such criminal act would be committed." <u>Warner</u>, 133 Ga. App. at 177, 210 S.E.2d at 352. General knowledge, without knowledge of specific past instances, can be enough to make future crimes reasonably foreseeable. <u>See</u> e.g., <u>id.</u> ("Thus, if a person leaves a borrowed car on the streets of almost any city with the doors unlocked and key in the ignition, that person is negligent (at least toward the owner) because of the very likelihood of theft."). Other courts have allowed claims for negligent storage of personal data that resulted in theft of

28

PII and identity theft to survive a motion to dismiss. <u>See</u> <u>e.g.</u>, <u>Stollenwerk v. Tri-W. Health Care Alliance</u>, 254 F. App'x 664, 668 n.2 (9th Cir. 2007) ("We note that the fact that the identity fraud incidents were committed by third parties does not preclude a finding of proximate cause. Under Arizona law, the criminal act of a third party does not necessarily relieve a defendant of liability for negligence, even when the third party is a stranger.") <u>and</u> <u>see</u> <u>also</u> <u>Resnick v. AvMed, Inc.</u>, 693 F.3d 1317, 1327 (11th Cir. 2012) ("Plaintiffs have sufficiently alleged a nexus between the data theft and the identity theft and therefore meet the federal pleading standards."); <u>Burrows v. Purchasing Power, LLC</u>, No. 1:12-CV-22800-UU, 2012 WL 9391827, at *3 (S.D. Fla. Oct. 18, 2012) ("Burrows has sufficiently alleged

29

facts to support his claims for damages resulting from the monetary loss from the use of his PII and identity theft.").[1] Plaintiffs also pleaded facts that Defendant was aware that protecting PII and PHI was important and that it promised to do so on its website. Plaintiffs also alleged that Defendant intended to keep the records in a locked room but failed to fix the broken door. When taking these facts as true and making all reasonable inferences in favor of Plaintiffs, the Court cannot conclude that Plaintiffs have failed to state a plausible claim for relief. The Court therefore denies this portion of Defendant's Motion to Dismiss.

---

[1] The Court acknowledges that <u>Burrows</u> and <u>Resnick</u> do not address Defendant's intervening criminal act argument but finds them illustrative of the federal pleading standard in these types of cases.

## B. Breach of Implied Contract

Count II of Plaintiffs' First Amended Complaint is a claim for breach of implied contract. (First Am. Compl. ¶¶ 77-86.) "Under Georgia law, there are two types of implied contracts, namely (1) contracts implied in fact, which are true contracts, and (2) contracts implied by law, wherein contractual obligations 'are implied by law without regard for the intent or assent of the parties.'" Ekokotu v. Fed. Exp. Corp., 408 F. App'x 331, 340 (11th Cir. 2011) (quoting Eaves v. J.C. Bradford & Co., 173 Ga. App. 470, 471, 326 S.E.2d 830, 831-32 (1985)).[2]   "Express contracts and

---

[2]It is unclear from the First Amended Complaint whether Plaintiffs assert the existence of a contract implied in fact or a contract implied by law or both.  Plaintiffs' Response, however, argues that "Defendant objectively manifested an intent and obligation to safeguard its students' PII and PHI" and concludes its discussion of implied contracts by stating that "Plaintiffs' allegations

31

contracts implied in fact depend upon the will of the parties

to be bound, indicating in the one case expressly in some

form recognized by law, and in the other by circumstances

from which assent may be inferred as a conclusion of fact."

<u>Butts Cnty. v. Jackson Banking Co.</u>, 129 Ga. 801, 801, 60

S.E. 149, 152 (1908). Such an obligation and assent may

be implied or presumed from the act of the parties. <u>Dorsey</u>

<u>v. Harrison</u>, 171 Ga. App. 774, 778, 320 S.E.2d 881, 885

(1984). "[A]n implied-in-fact contract...is a true contract and

requires a meeting of the minds." <u>Huddleston Concrete Co.</u>

---

taken as true adequately allege the existence of an implied-in-fact contract." (Resp. Mot. to Dismiss (Docket Entry No. 15) at 24, 25.) Alternatively, the Court concludes that Plaintiffs have not sufficiently supported a claim that court should impose a quasi-contractual obligation on Defendant absent an intent of Defendant to be bound to such an obligation. <u>Jackson Banking Co.</u>, 129 Ga. at 801, 60 S.E. at 152. The Court therefore only analyzes Count II as a claim for breach of an implied in fact contract.

32

v. Safeco Ins. Co. of Am., 186 Ga. App. 531, 534, 368 S.E.2d 117, 120 (1988) (emphasis omitted). Generally, "[a]n implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity, and a lawful subject matter." 1 Williston on Contracts § 1:5 (4th ed.).

This case presents a set of facts quite different from those in most of Georgia's cases on implied in fact contracts because, unlike the usual contractual agreement, no goods, services, or money was exchanged between Plaintiffs and Defendant. Indeed, in the other data breach cases cited by Plaintiffs there was some type of economic transaction involved. See Irwin v. RBS Wordplay, Inc., No. 1:09-CV-

33

0033-CAP (N.D. Ga. Feb. 5, 2010) (involving a data processor as defendant who provided services to the plaintiffs); <u>Anderson v. Hannaford Bros. Co.</u>, 659 F.3d 151 (1st Cir. 2011) (dealing with the data breach of a merchants from whom the plaintiffs purchased groceries); <u>Resnick</u>, 693 F.3d 1317 (addressing claims by customers against a health care services provider); <u>In re Michaels Stores Pin Pad Litig.</u>, 830 F. Supp. 2d 518 (N.D. Ill. Nov. 23, 2011) (involving theft of customer's data from a merchant). Here, Plaintiffs are not customers of Defendant and did not provide their personal information to Defendant as part of a commercial transaction. This differences do not preclude Plaintiffs' breach of implied contract claim, but they do explain why there are no cases directly on point.

34

In order to establish a implied in fact contract, Plaintiffs must demonstrate a meeting of the minds or mutual assent by the parties. The First Amended Complaint states that "Plaintiffs and Class Members, by participating in athletics and providing Defendant with their medical records and/or physical examinations, entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard Plaintiffs and Class Members' sensitive, non-public information." (First Am. Compl. ¶ 78.) Plaintiffs' allegation that they entered into an implied contract with Defendant is a legal conclusion and not one that the Court must accept as true. The First Amended Complaint also states that without such an implied contract "Plaintiffs and Class Members would not have entrusted

35

their medical records, PII and PHI to Defendant." (First Am.

Compl. ¶ 79.)  This alone is not a well-pleaded allegation,

but instead resembles a legal conclusion that Plaintiffs

relied on a promise by Defendant.

Even if the Court took as true Plaintiffs' allegation that

they relied on the existence of an implied contract, Plaintiffs

have not alleged any facts  suggesting that Defendant

assented to this purported agreement other than the

statements on Defendant's website.  "First, broad

statements of company policy do not generally give rise to

contract claims." <u>Dyer v. Nw. Airlines Corporations</u>, 334 F.

Supp. 2d 1196, 1200 (D.N.D. Sept. 8, 2004).[3]  "Second,

nowhere in the complaint are the Plaintiffs alleged to have

---

[3]The Court notes that <u>Dyer</u> also dealt with a motion to dismiss.

ever logged onto [Defendant's] website and accessed, read, understood, actually relied upon, or otherwise considered [Defendant's] privacy policy." Id. Third, the four sentences taken form Defendant's website, without any context to those statements, do not plausibly suggest that Defendant intended or assented to a promise to safeguard the PHI or PII of these Plaintiffs in this situation. Fourth, even when taking Plaintiffs' factual allegations as true, it is entirely unclear what the consideration for this implied in fact contract would be.

For the foregoing reasons the Court concludes that Plaintiffs have not plausibly alleged an implied in fact contract. The Court grants this portion of Defendant's Motion to Dismiss.

37

## C.   Breach of Fiduciary Duty

Count III of the First Amended Complaint alleges a breach of fiduciary duty claim.  (First Am. Compl. ¶¶ 87-93.) "It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Maree v. ROMAR Joint Venture, 329 Ga. App. 282, 297, 763 S.E.2d 899, 911 (2014) (internal quotation marks and citation omitted).  A fiduciary relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good

38

faith." O.C.G.A. § 23-2-58.[4] "Such relationship may be created by law, contract, or the facts of a particular case." Douglas v. Bigley, 278 Ga. App. 117, 120, 628 S.E.2d 199, 204 (2006) (footnote omitted). Generally, "[t]he existence of a confidential or fiduciary relationship is a question for the jury." Maree, 329 Ga. App. at 297-98, 763 S.E.2d at 911.

Defendant argues that it did not owe a fiduciary duty to Plaintiffs because "no Georgia appellate case has expressly stated that a college or university owes a fiduciary obligation to its students as a matter of law" and because "Plaintiffs have failed to allege sufficient facts to create that heightened relationship." (Br. Supp. Mot. to Dismiss

---

[4]In Georgia, the terms fiduciary relationship and confidential relationship are synonymous. In re Tri-State Crematory Litig., 215 F.R.D. 660, 701 n.12 (N.D. Ga. Mar. 17, 2003).

AO 72A

(Docket Entry No. 4-1) at 13, 15.) Plaintiffs contend that a confidential relationship exists because the facts demonstrate that Defendant exercised a controlling influence over Plaintiffs and other courts have found a fiduciary duty exists between a school and its students and between medical providers and patients in other contexts. (Resp. Mot. to Dismiss at 27-28, 28-31.)

The Georgia appellate courts have not found that the relationship between a university and its students is a confidential or fiduciary one as a matter of law. This Court therefore finds that Defendant owes no fiduciary duty to Plaintiffs merely because of their status as students. <u>See e.g.</u>, <u>In re Tri State Crematory Litig.</u>, 215 F.R.D. at 683 ("[T]he Court has found no Georgia decision citing

40

[O.C.G.A. § 23-2-58] in the context of funeral home duties. The Court therefore finds that Georgia law does not recognize a fiduciary duty between funeral homes and persons contracting for the services of funeral homes."). The Court's conclusion that a university does not always owe a fiduciary duty to its students, however, does not preclude the finding of a confidential relationship under the particular facts of this case.

Plaintiffs allege several facts suggesting that Defendant exercised a controlling influence over their conduct and interests. Defendant required Plaintiffs to undergo a medical examination by a medical professional associated with Defendant and to turn over medical records to Defendant before participating on any athletic teams.

41

Defendant also had Plaintiffs receive medical treatment from medical professionals associated with Defendant. When Plaintiffs received medical treatment off campus, Defendant had Plaintiffs provide those medical records to Defendant as well.  In <u>Chou v. Univ. of Chicago</u>, 254 F.3d 1347 (Fed. Cir. 2001), the court allowed a breach of fiduciary claim by a graduate student against the school survive a motion to dismiss when the student alleged facts showing a significant disparity in experience and roles between the student and her department chair and that she entrusted the handling of her affairs to her department chair. 254 F.3d at 1362-63.[5]

---

[5]The Court finds Plaintiffs' contention that the manner in which Defendant promoted itself demonstrates a fiduciary relationship unavailing because unlike in, <u>Orzechowitz v. Nova Se. Univ.</u>, No. 13-62217-CIV, 2014 WL 1329890, at *4-5 (S.D. Fla. Mar. 31,

42

Additionally, the fact that Defendant involved itself in the provision of medical care of Plaintiffs could suggest a confidential relationship. While Georgia law is not entirely clear on the extent of the duty, it is clear that doctors have some fiduciary duty to maintain patient confidentiality. <u>See e.g.</u>, <u>Witcher v. McGauley</u>, 316 Ga. App. 574, 581-82, 730 S.E.2d 56, 63 (2012) (affirming a grant of summary judgment that physician had not breached his duty to a patient when there were no allegations that the doctor disclosed confidential information or breached a confidence); <u>Cox v. Athens Reg'l Med. Ctr., Inc.</u>, 279 Ga. App. 586, 594, 631 S.E.2d 792, 799 n. 14 (2006) ("We note

---

2014), Plaintiffs have not alleged facts showing that they were even aware of Defendant's promotions or representations.

43

that, ordinarily, physicians owe a fiduciary duty to their patients with respect to the care given.").

When making all reasonable inferences in favor of Plaintiffs, as the Court is required to do at this stage, the Court finds that Plaintiffs have plausibly alleged the existence of a fiduciary duty.[6] The Court therefore denies this portion of Defendant's Motion to Dismiss.

## D. Negligent Misrepresentation

The fourth and final count of the First Amended Complaint is a claim for negligent misrepresentation. (First Am. Compl. ¶¶ 94-103.) "A claim for negligent misrepresentation requires proof that: (1) the defendant

---

[6]The Court rejects Defendant's argument that intervening criminal acts of third parties breach the chain of causation for a breach of fiduciary duty claim for the reasons stated supra Part III.A.

44

negligently supplied false information to foreseeable persons, known or unknown; (2) such persons reasonably relied upon that information; and (3) economic injury proximately resulted from that reliance." <u>Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.</u>, 426 F. Supp. 2d 1356, 1365-66 (N.D. Ga. 2006). "Reliance is an essential element of both fraud and negligent misrepresentation, and that reliance must be justified." <u>Hicks v. Sumter Bank & Trust Co.</u>, 269 Ga. App. 524, 527, 604 S.E.2d 594, 596-97 (2004).

Additionally, "a plaintiff must plead fraud, or negligent misrepresentation with particularity." <u>Brown v. SunTrust Bank</u>, No. 2:14-CV-0014-RWS-JSA, 2014 WL 4925719, at *9 (N.D. Ga. Sept. 30, 2014); <u>see also</u> <u>Inman v. Am.</u>

AO 72A

<u>Paramount Fin.</u>, 517 F. App'x 744, 748 (11th Cir. 2013)

(applying Rule 9(b) to conclude that the plaintiff failed to

plead sufficient factual allegations to support a negligent

misrepresentation claim).  "The Eleventh Circuit has held

that 'under Rule 9(b), the Plaintiffs must allege (1) the

precise statements, documents, or misrepresentations

made; (2) the time, place, and person responsible for the

statement; (3) the content and manner in which these

statements misled the Plaintiffs; and (4) what the

defendants gained by the alleged fraud.'" <u>Brown</u>, 2014 WL

4925719, at *9 (quoting <u>Brooks v. Blue Cross and Blue</u>

<u>Shield of Fla., Inc.</u>, 116 F.3d 1364, 1380-81 (11th

Cir.1997)).  "This means that to state an actionable claim for

fraud, the plaintiff must state the who, what, when[,] where,

46

AO 72A

and how." <u>Jenkins v. BAC Loan Servicing, LP</u>, 822 F.
Supp. 2d 1369, 1380 (M.D. Ga. Sept. 29, 2011) (alteration
in original) (internal quotation marks and citation omitted).

Plaintiffs' factual allegations are that Defendant (1)
discovered the theft; (2) notified some but not all of the
Named Plaintiffs; (3) knew or had reason to know the theft
included PII and PHI; and (4) communicated that it was
uncertain if any personal information was obtained. (First
Am. Compl. ¶¶ 38-39.) Specifically, Plaintiffs state that
Defendant's letter to former student-athletes warned "them
to keep a close eye on their credit and financial records" but
also said that Defendant was unsure if any personal
information was stolen. (<u>Id.</u> ¶ 98.)[7] Plaintiffs also allege

_____

[7]Plaintiffs also state that Defendant misinformed the public by
stating that the door to the room in which the records were kept

that Defendant's communication was inadequate to inform
Plaintiffs about the theft and caused substantial harm to
Plaintiffs. (Id. ¶¶ 39, 97, 100, 102.)  Those two allegations
are legal conclusions and not well-pleaded factual
allegations.  The Court therefore does not accept them as
true.  Plaintiffs have not alleged any fact showing that
Defendant's statements caused any harm to Plaintiffs
because Plaintiffs have not pleaded any facts showing that
the fraudulent tax returns could have been prevented.
Additionally, given that Defendant warned Plaintiffs to be on
alert about their credit and financial records, Plaintiffs

---

was broken instead of being left unlocked. (First Am. Compl. ¶ 99.)
Plaintiffs plead no other facts showing that any of them were aware
of this statement, were misled by it, or relied on it.  The Court sees
no reason why the question of whether the door was left unlocked
or broken would induce Plaintiffs to act or fail to act in a way that
allowed a third party to file fraudulent tax returns.

pleaded no facts suggesting an admission that PII and PHI were stolen would have prevented the harm to Plaintiffs. Plaintiffs have not stated how this statement mislead Plaintiffs or what actions it caused them to take or forego that caused the harm to Plaintiffs.

Plaintiffs also failed to sufficiently plead reliance on Defendant's letter. Reliance must be specifically supported by factual allegations. Plaintiffs' general claims that Plaintiffs relied or are presumed to rely are insufficient to meet this standard, even at the motion to dismiss stage, especially in light of the application of Rule 9(b). Moreover, Plaintiffs have not alleged facts showing that any reliance was justified. If Defendant's letter provided a warning to Plaintiffs, then without other facts, Plaintiffs cannot plausibly

49

claim that Plaintiffs were justified in relying on a possibility
that their personal information was not stolen.

The Court concludes that Plaintiffs have not sufficiently
pleaded a claim for negligent misrepresentation. The Court
grants this portion of Defendant's Motion to Dismiss.

## E.  Measure of Damages

The First Amended Complaint appears to claim
damages based on the harm caused to Plaintiffs by being
unable to spend their tax refunds on certain items for which
they had earmarked their tax refund money. Both Parties
agree that Plaintiffs can, at least at this stage, state a claim
for recovery of interest on the amount of their tax refunds as
damages for the delay in receiving their funds. (Resp. Mot.
to Dismiss at 35; Reply Mot. to Dismiss (Docket Entry No.

18) at 24.)  The Court agrees with Defendant, however, that Plaintiffs cannot recover for any harm they suffered by being unable to spend their tax refunds on other items such as credit card bills, mortgage payments, student loan payments, cars, personal items, or being unable to rent a new apartment.  Such damages are too attenuated to Defendant's alleged negligence.  See Anderson v. Hannaford Bros. Co., 659 F.3d 151, 167 (1st Cir. 2011) (finding "that the plaintiffs' claims for loss of reward points, loss of reward point earning opportunities, and fees for pre-authorization changes were not recoverable" because the "injuries were too attenuated from the data breach") (footnote omitted).  Under Georgia tort law, "damages traceable to the act, but which are not its legal and natural

51

consequence, are too remote and contingent to be recovered." O.C.G.A. § 51-12-9.  In this case, Plaintiffs' credit card, student loan, and mortgage debts are not the natural consequence of Defendant's negligence, nor is their inability to pay those debts.  The Court therefore grants this portion of Defendant's Motion to Dismiss and dismisses Plaintiff's claims for their "earmarked damages."

## F.  Punitive Damages

Generally, Georgia law allows punitive damages to "be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

52

O.C.G.A. § 51-12-5.1. Plaintiffs contend that this standard is met because of Plaintiffs' claim for negligent misrepresentation. Having found that Plaintiffs' negligent misrepresentation claim should be dismissed, supra Part. III.D., the Court concludes that Plaintiffs' claim for punitive damages should also be dismissed. See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1018 n.34 (11th Cir. 2004) (noting that punitive damages are not recoverable when the plaintiff is not entitled to compensatory damages because they failed to state a valid claim). The Court therefore grants this portion of Defendant's Motion to Dismiss.

AO 72A

## IV.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss [4] The Court **GRANTS** the Motion as to Count II and Count IV of the First Amended Complaint and **DISMISSES** Count II and Count IV, as wells as Plaintiffs' claim for "earmarked damages" and punitive damages **WITHOUT PREJUDICE**. The Court **DENIES** the remainder of Defendant's Motion.

IT IS SO ORDERED, this the 4 day of June, 2015.

_____

UNITED STATES DISTRICT JUDGE