# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT<br><br>This document relates to:<br><br>SMALL BUSINESS CASES |

## REPLY BRIEF IN SUPPORT OF EQUIFAX'S MOTION TO DISMISS CONSOLIDATED SMALL BUSINESS CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................1

I.     The Business Plaintiffs' Alleged Injuries Are Too Attenuated to Support Article III Standing. ...................................................................................1

     a.     The Business Plaintiffs Do Not Plausibly Allege A "Certainly Impending" Injury Or A "Substantial Risk" Of Injury. ........................2

     b.     The Business Plaintiffs' Injuries Are Not Plausibly Traceable To  Equifax's Conduct. ...............................................................6

II.     The Business Plaintiffs' Negligence Claim Should Be Dismissed. ...............8

     a.     The Business Plaintiffs Cannot Avoid McConnell III .......................8

     b.     The Bare Concept Of Foreseeability Cannot Save The Business Plaintiffs' Negligence Claim. .................................................10

     c.     The Business Plaintiffs Fail To Allege Proximate Causation. .............13

     d.     Georgia's Economic Loss Rule Bars The Business Plaintiffs' Negligence Claim. .................................................................15

     e.     The Business Plaintiffs Do Not Allege A Compensable Injury To Support Their Negligence Claim. ..............................................16

III.     The Business Plaintiffs' Negligence Per Se Claim Should Be Dismissed. ....................................................................................20

IV.     The Business Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim Should Be Dismissed. ...................................................................23

     a.     McConnell III Confirms That The GFBPA Does Not Require Safeguarding PII. .................................................................23

     b.     The Business Plaintiffs Have Not Pleaded Reliance. .........................23

i

V.     The Business Plaintiffs' O.C.G.A. § 13-6-11 Claim Fails. ...........................25

CONCLUSION .....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amos v. City of Butler,*
　529 S.E.2d 420 (Ga. Ct. App. 2000)) ................................................................11

*In re Arby's Rest. Grp. Inc. Litig.,*
　2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ......................................3, 9, 19, 21

*Attias v. Carefirst, Inc.,*
　865 F.3d 620 (D.C. Cir. 2017).........................................................................4, 8

*Badische Corp. v. Caylor,*
　356 S.E.2d 198 (Ga. 1987) ................................................................................11

*Beck v. McDonald,*
　848 F.3d 262 (4th Cir. 2017) ..............................................................................5

*Bradley Center, Inc. v. Wessner,*
　296 S.E.2d 693 (Ga. 1982) ................................................................................11

*Brock v. Avery Co.,*
　110 S.E.2d 122 (Ga. Ct. App. 1959)..................................................................20

*City of Miami v. Bank of Am. Corp.,*
　800 F.3d 1262 (11th Cir. 2015) ...........................................................................2

*Clapper v. Amnesty Int'l. USA,*
　568 U.S. 398 (2013).............................................................................2, 3, 4, 6

*Collins v. Athens Orthopedic Clinic,*
　815 S.E.2d 639 (Ga. Ct. App. 2018).....................................................17, 18, 19

*Coon v. Med. Ctr., Inc.,*
　797 S.E.2d 828 (Ga. 2017) ................................................................................22

*Corbitt v. Walgreen Co.,*
　2015 WL 1726011 (M.D. Ga. Apr. 15, 2015) ...................................................11

*Crown Ford Inc. v. Crawford,*
    473 S.E.2d 554 (Ga. Ct. App. 1996) .................................................................25

*CSX Transp., Inc. v. Williams,*
    608 S.E.2d 208 (Ga. 2005) .............................................................................11

*Doe v. Chao,*
    540 U.S. 614 (2004) .........................................................................................16

*Dieffenbach v. Barnes & Noble, Inc.,*
    887 F.3d 826, 828 (7th Cir. 2018) ...................................................................16

*Douglas Asphalt Co. v. QORE, Inc.,*
    657 F.3d 1146 (11th Cir. 2011) .......................................................................12

*Dowdell v. Wilhelm,*
    699 S.E.2d 30 (Ga. Ct. App. 2010) ..................................................................13

*Fidelity Union Trust Co. v. Field,*
    311 U.S. 169 (1940) .........................................................................................18

*Flintkote Co. v. Dravo Corp.,*
    678 F.2d 942 (11th Cir. 1982) .........................................................................18

*Florida Association of Medical Equipment Dealers v. Apfel,*
    194 F.3d 1227 (11th Cir. 1999) ....................................................................6, 7

*Ford v. Saint Francis Hosp., Inc.,*
    490 S.E.2d 415 (Ga. Ct. App. 1997) ................................................................24

*Galaria v. Nationwide Mut. Ins. Co.,*
    663 F. App'x 384 (6th Cir. 2016) ...................................................................4, 8

*Grijalva v. United States,*
    289 F. Supp. 2d 1372 (M.D. Ga. 2003) ...........................................................12

*Harris v. Liberty Mut. Comm. Mgmt., Inc.,*
    702 F.3d 1298 (11th Cir. 2012) .......................................................................23

*Helpling v. Rheem Mfg. Co.,*
    2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ..................................................15

iv

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 2897520 (N.D. Ga. May 18, 2016)..........................................3, 8, 9, 21

*LabMD, Inc. v. Fed. Trade Comm'n*,
   894 F.3d 1221 (11th Cir. 2018) ...................................................................21, 22

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) ............................................................................4, 8

*Lewis v. D. Hays Trucking, Inc.*,
   701 F. Supp. 2d 1300 (N.D. Ga. 2010)................................................................25

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...............................................................................................2

*Lynas v. Williams*,
   454 S.E.2d 570 (Ga. Ct. App. 1995)...................................................................25

*McConnell v. Georgia Department of Labor ("McConnell III")*,
   814 S.E.2d 790 (Ga. Ct. App. 2018)...........................................................*passim*

*Muransky v. Godiva Chocolatier, Inc.*,
   2018 WL 4762434 (11th Cir. Oct. 3, 2018) ......................................................4, 5

*Parker v. Brush Wellman, Inc.*,
   377 F. Supp. 2d 1290 (N.D. Ga. 2005 (11th Cir. 2007) ....................................17

*Paws Holdings, LLC v. Daikin Indus., Ltd.*,
   2017 WL 706624 (S.D. Ga. Feb. 22, 2017)........................................................17

*Peterson v. Reeves*,
   727 S.E.2d 171 (Ga. Ct. App. 2012)...................................................................12

*Rasnick v. Krishna Hosp., Inc.*,
   690 S.E.2d 670 (Ga. Ct. App. 2010 ...................................................................11

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) ...................................................................................5

*Remax Mtn. Co. v. Tabsum, Inc.*,
   634 S.E.2d 77 (Ga. Ct. App. 2006).....................................................................16

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ............................................................................4, 8

*Resnick v. Avmed, Inc.*,
   693 F.3d 1317 (11th Cir. 2017) ............................................................................7

*Rogers v. Coronet Ins. Co.*,
   424 S.E.2d 338 (Ga. Ct. App. 1992)...................................................................12

*Teague v. Keith*,
   108 S.E.2d 489 (Ga. 1959) ...........................................................................20, 21

*Union Camp Corp. v. S. Bulk Indus., Inc.*,
   386 S.E.2d 866 (Ga. Ct. App. 1989 ...................................................................14

*Walker v. CSX Transp. Inc.*,
   650 F.3d 1392 (11th Cir. 2011) ..........................................................................13

*Wells Fargo Bank, N.S. v. Jenkins*,
   744 S.E.2d at 688 (Opp. 39) ..............................................................................20

*Zelaya v. United States*,
   781 F.3d 1315 (11th Cir. 2015) ..........................................................................22

**Statutes**

15 U.S.C. § 45 .........................................................................................................21

O.C.G.A. § 10-1-399(b) ..........................................................................................25

O.C.G.A. § 13-6-11..................................................................................................25

**Other Authorities**

Ga. Ct. App. R. 33.2(a)(1) .......................................................................................18

## INTRODUCTION

The Business Plaintiffs invite this Court to recognize an expansive theory of liability no American court has ever accepted.  The Court should decline that invitation.  Not only should the Business Plaintiffs' claims be dismissed for lack of standing, their claims are fatally defective.  The Business Plaintiffs principally argue that they should be able to recover against Equifax because it was—or should have been—"foreseeable" that a breach of its systems could ultimately cause indirect harm to the Business Plaintiffs.  The Business Plaintiffs' view of foreseeability, however, is vastly overbroad and inconsistent with binding Georgia law.  And if accepted, the Business Plaintiffs' position would lead to unlimited liability.  The Court should reject the Business Plaintiffs' novel theory of liability and dismiss their Complaint in its entirety.

## ARGUMENT

**I.      The Business Plaintiffs' Alleged Injuries Are Too Attenuated to Support Article III Standing.**

The Business Plaintiffs do not allege any actual injuries to their credit or business operations.  Instead, they rely upon threatened future injuries and mitigation expenses incurred.  These alleged injuries are neither sufficiently imminent to constitute "injuries-in-fact," nor are they "fairly traceable" to

Equifax's conduct.[1]   In fact, the Business Plaintiffs readily admit the factual circumstances here are "unique," and their theory requires an "extra step" in the causal chain.  Opp. 1, 12.  To go that extra step, they ask the Court to make an attenuated chain of inferences about contingent events and to speculate about the actions of independent third-parties not before the Court, without any allegations to aid it in doing so.  The Business Plaintiffs lack Article III standing.

### a. The Business Plaintiffs Do Not Plausibly Allege A "Certainly Impending" Injury Or A "Substantial Risk" Of Injury.

For a threatened future injury to constitute an injury-in-fact, the "threatened injury must be *certainly impending*."  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013).  And for mitigation expenses to confer standing, there must be a "substantial risk" that the threatened injury the expenses are intended to prevent would actually occur.  *Id.* at 414 n.5.  But the Business Plaintiffs' alleged future injury is too attenuated and remote to be a "certainly impending" threat or to pose a "substantial risk" of harm.  As Equifax has explained, a series of at least four independent events would have to occur for the Business Plaintiffs' alleged injuries

---

[1] The Business Plaintiffs say only "general allegations" are necessary to plead standing.  Opp. 9 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  But *Lujan* was decided before the facial plausibility pleading standard was announced in *Twombly* and *Iqbal*, and the Eleventh Circuit has confirmed that plausible allegations of injury are required to survive a motion to dismiss for lack of standing.  *See, e.g.*, *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1272 (11th Cir. 2015), *vacated on other grounds*, 137 S. Ct. 1296 (2017).

2

*ever* to materialize: (1) a criminal must obtain each Business Plaintiff's owner's PII *because of* the Equifax breach and then misuse it; (2) that misuse must have a measurable negative effect on the *owner's* creditworthiness; (3) the business must rely on that owner's creditworthiness in trying to obtain credit (and not another owners' or guarantors'); and (4) the lender must either deny the credit or offer it on less favorable terms *because of* that owner's diminished creditworthiness.   Mot. 13–14.   There are no plausible factual allegations that these events are likely to occur.   As in *Clapper*, the Business Plaintiffs' reliance on unsupported inferences renders the alleged threat to their credit and operations too remote to satisfy Article III's imminence requirement.

This Court's decisions in *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018), and *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520 (N.D. Ga. May 18, 2016), are distinguishable and do not support standing here.   In *Arby's*, this Court found that "costs associated with detection and prevention of identity theft" were recoverable items of damages, but those costs were incurred *by the consumers whose data was stolen*, not by a third party like the Business Plaintiffs.   2018 WL 2128441, at *11. Likewise, in *Home Depot*, the plaintiff financial institutions alleged existing injuries resulting from the data breach—including costs incurred to refund and

investigate fraudulent card charges.  2016 WL 2897520, at *3.  The Court held that costs undertaken to avoid future harm would establish standing under *Clapper* because the fact that some of the plaintiffs' customers had already incurred fraudulent charges made it substantially likely that more customers would incur fraudulent charges absent plaintiffs' mitigation efforts.  Here, however, the Business Plaintiffs do *not* allege current injuries to their credit or operations to justify a finding that they are at risk of future harm traceable to the breach.

Other cases cited by the Business Plaintiffs stand only for the proposition that it is plausible to infer that a party who infiltrates a database of PII also intends to steal and misuse it.[2]  These cases do not permit the Court to draw the chain of unsupported inferences required to find standing for the Business Plaintiffs.  Here, as in *Clapper*, the threat to the Business Plaintiffs' credit or operations is, at most, an insufficient "possible future injury."  *Clapper*, 568 U.S. at 409.  And mitigation expenses will only confer standing where, unlike here, the risk they address is substantially likely.  *Remijas*, 794 F.3d at 693–94.[3]

---

[2] *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 629–30 (D.C. Cir. 2017); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015).

[3] *Muransky v. Godiva Chocolatier, Inc.*, 2018 WL 4762434 (11th Cir. Oct. 3, 2018), cited as supplemental authority (Dkt. No. 483), is inapplicable here.

The Business Plaintiffs try to distance this case from *Reilly* and *Beck* by arguing the facts in those cases "are not the facts pled here." *See* Opp. 13 n.2. But those cases illustrate the well-settled principle that a party lacks standing when its theory of injury depends on a speculative, unsupported chain of possibilities. *See Beck v. McDonald*, 848 F.3d 262, 275–76 (4th Cir. 2017) (holding plaintiffs lacked standing where they failed to show that someone would attempt to and succeed in misusing their PII); *see also Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (similar). Without facts suggesting the future events were substantially likely, those courts refused to speculate that a string of events would occur in order to find the threat of identity theft sufficiently imminent to confer standing. *Id.*; *Reilly*, 664 F.3d at 42, 43 ("[W]e cannot now describe how [the plaintiffs] will be injured in this case without beginning our explanation with the word 'if'[.]"). Here too, the Court should conclude that the Business Plaintiffs' alleged future injuries are too speculative and attenuated to constitute Article III injuries-in-fact.

---

Applying *Spokeo*, *Muransky* held that a violation of a federal statute—FACTA—constituted a "concrete injury," and thus "in the context of FACTA" that the plaintiff had suffered a concrete injury in "shouldering the cost of safely keeping or destroying [a] receipt" that a merchant had given him containing his untruncated credit card number. 2018 WL 4762434, at *5-6. In other words, the plaintiff had *already* experienced a concrete injury. The standing inquiry here does not involve a violation of a federal statute, and in any event, the harms alleged in *Murasky* bear no similarity to the Business Plaintiffs' alleged risk of speculative future harms.

> **b.** **The Business Plaintiffs' Injuries Are Not Plausibly Traceable To Equifax's Conduct.**

The Complaint's allegations also do not satisfy Article III's traceability standard.  First, the Business Plaintiffs "cannot rely on speculation about 'the unfettered choices made by independent actors not before the court'" to demonstrate traceability.  *Clapper*, 568 U.S. at 414 n.5.  To find that an injury to the Business Plaintiffs' credit or operations would be caused by the Equifax data breach, the Court would have to make assumptions about the behavior of multiple independent actors, including at a minimum (i) an unknown identity thief, (ii) the entity the thief attempts to defraud using the Business Plaintiffs' owner's PII (*e.g.*, a retailer or bank), and (iii) the Business Plaintiffs' lenders.  The Complaint's conclusory allegations do not plausibly support such assumptions.

Second, the Business Plaintiffs do not allege any facts establishing a causal nexus between the exposure of their owners' PII and a future injury to the small businesses' credit or operations.  All they allege is that they depend *"in part"*—but not entirely—on their owners' credit and that small businesses *generally* are at risk if their owners' PII is compromised.  Compl. ¶¶  12–21, 190–200 (emphasis added).  In *Florida Association of Medical Equipment Dealers v. Apfel*, the Eleventh Circuit held that the plaintiff's similar conclusory allegations were insufficient to support traceability.  194 F.3d 1227 (11th Cir. 1999).  There, the

plaintiff sued a federal agency for practically excluding it from meetings concerning the design of a bidding process for supply contracts.  Because it was excluded from the meetings, the plaintiff alleged that the process was tainted and that its future bids were likely to be rejected.  *Id.* at 1228–30.  The Eleventh Circuit found that traceability was lacking because the plaintiff failed to explain *how* the meetings contributed to the final design of the bidding process and *how* that final design made it more likely that plaintiff's bids would be rejected.  *See id.*

Here, the Business Plaintiffs fail to allege facts to plausibly trace *how* the Equifax data breach will affect their owners' credit rating, *how* the owners' credit rating will affect the Business Plaintiffs' creditworthiness, and *how* their creditworthiness would affect a lender's decision.  It is thus unclear from the Complaint how the Equifax data breach, as opposed to other possible causes—such as unrelated financial difficulties of the business or changes in market conditions— would contribute to their purported future injuries.

Nor do the cases on which the Business Plaintiffs rely support a different conclusion.  In *Resnick v. Avmed, Inc.*, the plaintiffs had already suffered *actual identity theft* as a result of the data breach, 693 F.3d 1317, 1323 (11th Cir. 2017), so the court determined it did not have to make assumptions about future events or the actions of independent parties.  And in *Home Depot*, *Lewert*, *Remijas*, *Attias*,

7

and *Galaria*, the plaintiffs' alleged injuries did not rely on a protracted series of independent acts by numerous third-parties—like the Business Plaintiffs' creditors—as they do here.  In those cases, the only nonparty act necessary for the plaintiffs to suffer the threatened injuries was misuse of the stolen PII by the data thieves.[4]  Even if the Business Plaintiffs' owners' PII is misused, the Business Plaintiffs, like the plaintiff in *Apfel*, do not allege plausible facts demonstrating a causal connection between the Equifax data breach and any speculative future injury to the Business Plaintiffs.  They therefore fail to plead that any threat to their future credit or operations is more traceable to the *Equifax data breach* than it is to any other variable or actor in the attenuated chain of causation they rely on.

## II.     The Business Plaintiffs' Negligence Claim Should Be Dismissed.

### a.     The Business Plaintiffs Cannot Avoid *McConnell III.*

The Business Plaintiffs say that they have alleged a "recognized legal duty," and in so doing ask this Court to ignore what the Georgia Court of Appeals plainly held in *McConnell v. Georgia Department of Labor ("McConnell III")*, 814 S.E.2d 790 (Ga. Ct. App. 2018).  That is, the Business Plaintiffs ask the Court to ignore *McConnell III*'s holding that there is no duty to safeguard personal information under Georgia law and to instead apply *Home Depot* and *Arby's.*  But in *Home*

---

[4] Additionally, in *Home Depot*, the thieves had already misused some of the stolen PII.  2016 WL 2897520, at *3.

*Depot* and *Arby's* the Court was trying to predict how Georgia courts would rule on the duty question ***before*** *McConnell III* conclusively answered it.[5]

*McConnell III* held unequivocally that "a duty of care to safeguard personal information . . . has no source in Georgia statutory law or caselaw." 814 S.E.2d at 799. Based on that clear articulation of Georgia law, the Court of Appeals affirmed the dismissal of a negligence claim which—like the Business Plaintiffs' claim here—was premised on an alleged duty to safeguard information that the court found does not exist. *Id.* This Court is bound by the holding in *McConnell III*.

Because *McConnell III* dooms their negligence claim, the Business Plaintiffs argue that it should not apply, theorizing that plaintiff McConnell had not alleged his purported harms were "reasonably foreseeable." But the record in *McConnell III* belies this argument—the complaint expressly alleged that "[i]t was reasonably foreseeable" that the defendant's "failure to safeguard" McConnell's information would result in unauthorized disclosure, and that it was "reasonably foreseeable" that such disclosure would cause damage to McConnell and putative class

---

[5] The Business Plaintiffs are incorrect that following *McConnell III* would mean Equifax "could intentionally release sensitive credit information to criminals . . . without incurring any legal responsibility." Opp. 17. *McConnell III* refused to impose liability where—like here—the information was *unintentionally* exposed.

9

members.  Ex. 1 (1st Am. Compl., *McConnell v. Ga. Dep't of Labor*, ¶¶ 26-27).[6]
Nonetheless, the Court of Appeals unequivocally held there is no legal duty to safeguard personal information under Georgia law.

In any event, the duty theory the Business Plaintiffs advance would go far beyond the theory *McConnell III* rejected.  Here, the Business Plaintiffs ask the Court to charge Equifax with a duty to safeguard information that does not belong to them, but rather to their business owners.  As explained in Equifax's opening brief, Mot. 24-26, if accepted there would be no limitation to the duty proposed by the Business Plaintiffs—*any* party that might, in the future, be impacted by the loss of another person's data could recover.  Perhaps given the limitless liability this would create, no American court has recognized this unprecedented view of duty.

### b.     The Bare Concept Of Foreseeability Cannot Save The Business Plaintiffs' Negligence Claim.

The Business Plaintiffs urge the Court to recognize a duty on the supposed basis that "harm to the Small Business Plaintiffs was foreseeable."  Opp. 21.  This argument ignores *McConnell III*, which held that no duty applies in the context of a data breach regardless of alleged foreseeability.  Moreover, the Business Plaintiffs vastly overstate the extent to which foreseeability factors into the duty analysis.

---

[6] Under Georgia's pleading standard, McConnell was not required to plead more as to foreseeability.  *McConnell III*, 814 S.E.2d at 796 (complaint is sufficient if "any state of provable facts [can be] asserted in support of" its allegations).

Although they contend that the Court should impose a duty so long as "Equifax could have foreseen some injury will result," Opp. 21, the Georgia Supreme Court has held that "mere foreseeability" is *not* a basis for imposing a duty of care, *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 209 (Ga. 2005).[7]

The Business Plaintiffs' cases do not hold otherwise. *Amos v. City of Butler*, for example, in no way holds that foreseeability automatically triggers a duty. It said only that "[n]egligence consists of exposing someone *to whom a duty of care is owed* to a foreseeable, unreasonable probability of harm." 529 S.E.2d 420, 422 (Ga. Ct. App. 2000) (emphasis added). In other words, a person owing a duty of care to another may not be liable for unforeseeable harms, but the mere fact that a harm may be foreseeable does not create a legal duty in the first instance. *See also Corbitt v. Walgreen Co.*, 2015 WL 1726011, at *3 (M.D. Ga. Apr. 15, 2015) (finding first that duty of care was recognized in prior Georgia caselaw, then weighing foreseeability to determine if the defendant should be held liable).

Additionally, the Business Plaintiffs' continued reliance on *Bradley Center, Inc. v. Wessner* is misplaced. 296 S.E.2d 693 (Ga. 1982). While *dicta* in *Bradley*

---

[7] *Rasnick v. Krishna Hosp., Inc.*, 690 S.E.2d 670, 674 (Ga. Ct. App. 2010), *aff'd*, 713 S.E.2d 835 (Ga. 2011) ("[The Georgia] Supreme Court has rejected the argument that 'mere foreseeability' served as a basis to extend common law tort duty."); *see also Badische Corp. v. Caylor*, 356 S.E.2d 198, 200 (Ga. 1987).

*Center* broadly referred to a "general duty one owes to all the world not to subject them to an unreasonable risk of harm," the holding in that case was narrow: that a physician owes an "independent duty" to use reasonable care to prevent harm to others where the physician exercises "control" over the patient and "knows or should know that the patient is likely to cause bodily harm to others." *Id*. at 695.[8] In fact, *Bradley Center* noted that the duty in question was an "exception" to the "general rule [that] there is no duty to control the conduct of third persons to prevent them from causing physical harm to others," regardless of whether such harm may be foreseeable. *Id.* at 696; *see Peterson v. Reeves*, 727 S.E.2d 171, 179 (Ga. Ct. App. 2012) ("In essence, *Bradley Center* marked an expansion of a physician's duty of care, albeit a very narrow one[.]"). *Bradley Center* does not support the notion that a legal duty is imposed wherever a defendant "could have foreseen some injury will result," Opp. at 21.

Finally, the Business Plaintiffs' insistence that recognizing a legal duty here would not expand tort law beyond "definitive boundaries" is incorrect. No

---

[8] *See also Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1157 (11th Cir. 2011) ("[S]ubsequent decisions interpreting and applying [*Bradley Center*] have made it clear that the 'control' that gave rise to the duty in that case was the 'legal authority' to restrain a person's liberty."); *Grijalva v. United States*, 289 F. Supp. 2d 1372, 1375 (M.D. Ga. 2003) (similar); *Rogers v. Coronet Ins. Co.*, 424 S.E.2d 338, 343 (Ga. Ct. App. 1992) (describing *Bradley Center* as case about "special relationship between private mental health hospital and a patient").

American court has *ever* recognized a duty to protect a business from speculative harms to its credit and operations indirectly caused by the disclosure of its *owner's* personal information.  This expanded theory of liability could permit recovery by other distant parties who allege some downstream harm as a result of someone's personal information being breached, such an individual who relies on another person to guarantee a loan.  The lack of any limitation on the scope of the duty the Business Plaintiffs propose underscores its inconsistency with Georgia law.

### c.   The Business Plaintiffs Fail To Allege Proximate Causation.

The Business Plaintiffs' negligence claim should also be dismissed because they fail to sufficiently allege proximate causation.  Proximate cause will bar a negligence claim where "the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery."  *Dowdell v. Wilhelm*, 699 S.E.2d 30, 32 (Ga. Ct. App. 2010).  Unable to marshal case law to support their novel theory of recovery, the Business Plaintiffs lean on the unremarkable proposition that proximate cause is typically a jury issue, and urge the Court to let their claim proceed past the pleading stage.  But "in plain and undisputed cases," like this one, proximate cause should be decided as a matter of law.  *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1399 (11th Cir. 2011).

The Business Plaintiffs attempt to distinguish Equifax's authorities in a

13

broad stroke, contending that each "turn[ed] on complicated questions of foreseeability or a chain of attenuated events involving claims for personal injury or business interruption losses."  Opp. 27.  But that generalized statement does nothing to undercut the proposition for which Equifax cited the cases—*i.e.*, that Georgia courts have routinely cited a lack of proximate causation to reject overbroad negligence theories like the Business Plaintiffs' theory here.  *See, e.g., Union Camp Corp. v. S. Bulk Indus., Inc.*, 386 S.E.2d 866, 867 (Ga. Ct. App. 1989), *aff'd*, 388 S.E.2d 524 (Ga. 1990) (affirming dismissal of claim that defendant negligently damaged property of a third-party, thereby preventing third party from fulfilling its contractual obligations to plaintiff).  Here, the Business Plaintiffs' theory of recovery is premised entirely on Equifax's alleged failure to safeguard their owners' personal information, *not* their own business information. The Business Plaintiffs have cited no authority from Georgia or any other state accepting this unprecedented theory of liability.

The Business Plaintiffs' own allegations highlight the lack of proximate causation.  According to the Complaint, the Equifax data breach has harmed them because it exposed the personal information of their owners, and, because they "rel[y] in part on" their owners' credit to operate, the breach has somehow "jeopardized . . . the creditworthiness and continued operations of [the Business

14

Plaintiffs]."  *See* Compl. ¶¶ 12-21.  This somewhere-down-the-chain theory of recovery—which the Business Plaintiffs concede requires "an extra step in the causal chain," Opp. 1—plainly flunks the proximate causation test.

Additionally, while the Business Plaintiffs say "there is no risk of an impermissible double recovery" because they "seek to recover only damages suffered by them as legal entities separate and apart from the[ir owners]," Opp. 26, the Complaint shows otherwise.  Each Business Plaintiff claims it was harmed by having to purchase a "business credit report" and to devote "resources to monitoring its financial accounts."  But they allege no facts to plausibly show why these costs were necessary given that the Consumer Plaintiffs—which include the Business Plaintiffs' owners—*also* seek to recover for time and effort spent monitoring accounts and mitigating alleged future harms, as well as for costs incurred purchasing credit reports and monitoring products.   The Business Plaintiffs fail to allege facts showing why their purported mitigation damages are not entirely duplicative (and redundant) of the Consumer Plaintiffs'.

### d.    Georgia's Economic Loss Rule Bars The Business Plaintiffs' Negligence Claim.

The Business Plaintiffs also ignore the authorities cited by Equifax which conclusively hold that "a plaintiff can recover in tort only those economic losses resulting from *injury to his person* or *damage to his property*."  *Helpling v. Rheem*

15

*Mfg. Co.*, 2016 WL 1222264, at *16 (N.D. Ga. Mar. 23, 2016) (emphasis added). Georgia courts apply the economic loss rule to bar recovery of economic damages even in the absence of a contractual relationship. *See Remax Mtn. Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 & n.6 (Ga. Ct. App. 2006). Having no real answer for this case law, the Business Plaintiffs suggest that the economic loss rule should not apply here because Equifax owed them a so-called "independent duty." That argument fails because the Business Plaintiffs have not alleged *any* legal duty Equifax owed to them that is recognized under Georgia law.

### e. The Business Plaintiffs Do Not Allege A Compensable Injury To Support Their Negligence Claim.

The Business Plaintiffs' theory here seems to be that *if* their alleged injuries satisfy Article III's standing requirements, *then* they are sufficient to plead a compensable injury for purposes of a state-law negligence claim. Opp. 30.[9] As the first section of this brief explains, their alleged injuries do not satisfy Article III. Even if they did, the presence of an Article III injury-in-fact does not automatically give a plaintiff a cause of action. *See, e.g., Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (explaining that a plaintiff can satisfy Article III's injury-in-fact

---

[9] *Dieffenbach v. Barnes & Noble, Inc.* does not stand for such a proposition. In that case, the alleged injuries supported money damages "*just as*" they supported Article III standing, not *because* they supported Article III standing. 887 F.3d 826, 828 (7th Cir. 2018) (emphasis added).

requirement and still have no cause of action).   For that reason, the Business Plaintiffs' almost-total reliance on cases discussing Article III standing bypasses the pertinent question whether Georgia law recognizes their purported injuries as sufficient to state a claim.   It does not.

First, "no Georgia court has adopted a theory of liability premised on the mere 'increased risk' of suffering from a future . . . injury." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1299 (N.D. Ga. 2005), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007); *see also Paws Holdings, LLC v. Daikin Indus., Ltd.*, 2017 WL 706624, at *13 (S.D. Ga. Feb. 22, 2017) (holding "an increased risk of injury" is "insufficient to state an 'injury' recoverable in tort under Georgia law").   Second, Georgia courts do not recognize prophylactic costs incurred to mitigate against potential future injuries as recoverable damages.   *See Parker*, 230 F. App'x at 883 (applying Georgia law and affirming dismissal of claim for medical monitoring costs incurred to mitigate the risk of future harm given "the absence of a current physical injury").

In *Collins v. Athens Orthopedic Clinic*, 815 S.E.2d 639, 643 (Ga. Ct. App. 2018), the Georgia Court of Appeals relied on these established principles of Georgia law to hold that the alleged harms the Business Plaintiffs assert cannot support a tort claim.   *Collins* held that individuals whose PII was stolen from a

medical provider failed to state a negligence claim, finding that the alleged threat of future identity theft and related mitigation expenses were "too speculative under [Georgia] law to constitute 'damages.'"  *Id.* at 645.

The Business Plaintiffs try to avoid *Collins* on two grounds: (1) the plaintiffs there did not allege any *current* out of pocket losses, and (2) it is not binding precedent, *see* Ga. Ct. App. R. 33.2(a)(1).  But the *Collins* plaintiffs, like the Business Plaintiffs, allegedly had incurred costs "for the purchase of credit monitoring and identity theft protection, or the placing of credit freezes on their accounts."  815 S.E.2d at 642.  Those costs were held insufficient.  *Id.* at 645.  If (as *Collins* held) an individual *whose own* PII was stolen cannot state a claim based on a risk of future identity theft, then the Business Plaintiffs cannot state a claim based on the far more attenuated future risk they allege here.

Moreover, the Court should follow *Collins* because it is the most direct exposition of Georgia law on this issue.  Where a state's highest court has not spoken on a state-law issue, federal courts must follow the decisions of "intermediate state court[s] . . . in the absence of more convincing evidence of what the state law is," even if those decisions are not binding on other courts in the state.  *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940); *see Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) ("Only where no

18

state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule."). *Collins* is the best indication on whether Georgia law would recognize the harms alleged here as cognizable, and the Business Plaintiffs have not produced any "more convincing evidence" that the Supreme Court of Georgia would hold differently.[10]

The Business Plaintiffs have not cited cases contrary to *Collins*. The *only* case they cite that even discusses cognizable injuries under Georgia law is *Arby's*. Although *Arby's* ruled that the plaintiffs could recover for "costs associated with detection and prevention of identity theft," some of the plaintiffs in the class had *already suffered "actual data theft."* *Arby's*, 2018 WL 2128441, at *11 (emphasis added). Here, no information of the Business Plaintiffs was compromised, and there are no allegations that the Business Plaintiffs' credit or operations have already been harmed. Further, *Arby's* was decided before *Collins*, which held that future injuries less speculative than those at issue here are not cognizable under Georgia law. *Arby's* does not support the Business Plaintiffs' claims.

---

[10] The dissenting judge in *Collins* did not disagree with the majority's injury analysis. He believed that the majority should have first addressed the plaintiffs' standing and would have remanded the case to the trial court to address whether the plaintiffs stated a claim. 815 S.E.2d at 648 (McFadden, J., concurring in part, dissenting in part, and dissenting in the judgment).

### III.    The Business Plaintiffs' Negligence *Per Se* Claim Should Be Dismissed.

The Business Plaintiffs contend that "not having reasonable data security" is an "unfair practice prohibited by" Section 5 of the FTC Act.   Opp. 34.   But negligence *per se* must be premised on a *specific* duty *expressly* imposed by a statute.   *See* Mot. 40.   Initially, the Business Plaintiffs agree that negligence *per se* must be based on violation of a statute or regulation, Opp. 33, but later assert that negligence *per se* can be based on a directive or standard that is not embodied in a statute or regulation, Opp. 39 (citing *Wells Fargo Bank, N.S. v. Jenkins*, 744 S.E.2d at 688).   *Jenkins*, however, is consistent with other Georgia authority holding that the legal duty to support a negligence *per se* claim "must be found in another legislative enactment," *id.*, which excludes publications and enforcement orders.

The Business Plaintiffs also argue that Equifax's citation to *Brock v. Avery Co.*, 110 S.E.2d 122, 126 (Ga. Ct. App. 1959), is unavailing because "the meaning Equifax attributes to it . . . would be inconsistent with (and thus effectively overruled by) the Georgia Supreme Court's decision in *Teague* [*v. Keith*, 108 S.E.2d 489 (Ga. 1959)]."   Opp. 36.   *Brock* was decided after *Teague* and, thus, could not have been overruled by *Teague*.   Moreover, the *Teague* and *Brock* decisions are in agreement that a statute whose duty is "too indefinite" cannot support a negligence *per se* claim, *Teague*, 108 S.E.2d at 491-92; *Brock*, 110

20

S.E.2d at 126.  To the extent there is inconsistency between the decisions, it relates only to their application of the indefiniteness standard.  In any event, the statutes at issue in *Teague* were far more specific than Section 5 of the FTC Act.[11]

Section 5 of the FTC Act cannot serve as the basis of a negligence *per se* claim because it does not specifically or expressly identify a failure to have "reasonable data security" as an "unfair practice."[12]  *See* 15 U.S.C. § 45.  To the contrary, "[a]n act or practice" is "not unfair within Section 5(a)'s meaning" unless a statute, the common law, or the Constitution makes it so.  *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1229 (11th Cir. 2018).  And the Business Plaintiffs offer no support for their assertion that the statute or common law renders a failure to have "reasonable data security" an "unfair practice," much less that they specifically and expressly do so.

This Court's decisions in *Arby's* and *Home Depot* were decided before the Eleventh Circuit ruled in *LabMD, Inc.* that a statute, or the common law, or the

---

[11]  The challenged statutes provided: "In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care," and "[t]he driver of every vehicle shall, consistent with the requirements of subdivision (a), drive at an appropriate reduced speed when approaching and crossing an intersection."  *Teague*, 108 S.E.2d at 491.

[12]  That the FTC publishes a *guide* for businesses on reasonable data security practices does not change the fact that the FTC Act itself does not identify a failure to have "reasonable data security" as an "unfair practice."

Constitution is required to give content to Section 5's general unfairness standard. *LabMD, Inc.*, 894 F.3d at 1231.  And *McConnell III* confirmed that the common law imposes no duty to safeguard personal information.  Nor does any statute.

The Business Plaintiffs also contend that because the FTC Act is a federal statute, this Court should consider "the common law generally as expressed in the Restatement" instead of Georgia common law.  Opp. 37 n.12.  However, they identify no Restatement provision that specifically imposes a duty to safeguard personal information.  *See id.*  Nor does it matter that the FTC Act is federal. Claims under the Federal Tort Claims Act, for example, similarly incorporate common law, but courts look to the common law of the states where they sit.  *E.g.*, *Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015).

In Georgia "the common law is presumed to be the same in all the American States," and Georgia courts are presumed to have decided the common law correctly.  *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017).  It does not matter that this might lead to Section 5 being "construed differently depending on the state in which the conduct at issue occurred," Opp. 37 n.12.  That is because "[t]here is still only one right construction"—which is presumed to be the one announced by Georgia courts.  *Coon*, 797 S.E.2d at 834.  In Georgia, *McConnell III* is *the* correct pronouncement of the common law, and it holds that no duty to

22

safeguard personal information exists.  Plaintiffs' negligence *per se* claim fails.

## IV.    The Business Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim Should Be Dismissed.

### a.    *McConnell III* Confirms That The GFBPA Does Not Require Safeguarding PII.

*McConnell III* considered the GFBPA and ruled that a related section of the "[GFBPA] … can not serve as the source of … a general duty to safeguard and protect the personal information of another."  814 S.E.2d at 798.  As the court explained, "[Georgia's] legislature has so far not acted to establish a standard of conduct intended to protect the security of personal information," and an alleged duty to safeguard PII "has no source in Georgia statutory law."  *Id.* at 799.

The Business Plaintiffs contend that the question whether inadequate data security practices constitute unfair business practices should be deferred for jury consideration.  Opp. 24.  But "[u]nder Georgia law . . . a court may determine what constitutes a violation of the GFBPA as a matter of law."  *Harris v. Liberty Mut. Comm. Mgmt., Inc.*, 702 F.3d 1298, 1303–04 (11th Cir. 2012).  And indeed, *McConnell III* did just that.

### b.    The Business Plaintiffs Have Not Pleaded Reliance.

The Business Plaintiffs' failure to plead reliance is a second, independent reason to dismiss their GFBPA claim.  The Business Plaintiffs contend that they

need not plead reliance "to state a GFBPA claim based on omissions as opposed to misrepresentations."  Opp. 42.  But the Business Plaintiffs' Complaint relies on affirmative misrepresentations to support their GFBPA claim.  *See* Compl. ¶¶ 255(a)-(b), 256 (alleging that Equifax "[m]isrepresent[ed] that it would protect the privacy and confidentiality" of Plaintiffs' PII and "that it would comply with common law and statutory duties pertaining to the security and privacy" of that PII, and that those "misrepresentations … were material"); *Ford v. Saint Francis Hosp., Inc.*, 490 S.E.2d 415, 420 (Ga. Ct. App. 1997) ("[T]he [G]FBPA require[s] reliance on the misrepresentations.").

Further, the Business Plaintiffs contend that for reliance purposes "[t]he critical question is whether the plaintiff would have acted differently had the truth been disclosed."  Opp. 43.  They point to no specific different actions they would have taken, arguing only that they "would have made different decisions … or forced Equifax out of business."  *Id*. 44.  This vague argument contradicts the factual allegations in the Complaint that consumers were unable "to opt-out of Equifax's collection and sale" of data, Compl. ¶¶ 4, 188.  Moreover, the Business Plaintiffs do not allege what they—as opposed to the Consumer Plaintiffs, whose PII was compromised—would have done differently or how they would have

forced Equifax out of business.[13]

## V.   The Business Plaintiffs' O.C.G.A. § 13-6-11 Claim Fails.

The Business Plaintiffs' § 13-6-11 claim is based on the theory that Equifax engaged in bad faith conduct before suit.  Compl ¶¶ 271–73; Opp. 46.  Under § 13-6-11, "[b]ad faith . . . implies conscious doing of wrong and a breach of a known duty through some motive of interest of ill will."  *Lewis v. D. Hays Trucking, Inc.*, 701 F. Supp. 2d 1300, 1313 (N.D. Ga. 2010).  Here, the Complaint does not (and could not) allege that Equifax consciously disregarded a known risk or acted out of self-interest or ill will.  The § 13-6-11 claim fails.

## CONCLUSION

The Court should dismiss the Business Plaintiffs' Complaint for lack of standing or, alternatively, for failure to state a claim.

---

[13] Nor can the Business Plaintiffs avoid the reliance requirement by characterizing Equifax's conduct as "unfair."  *See* Opp. 44.  The statute requires reliance *regardless* of whether the act at issue is alleged to be deceptive *or* unfair. O.C.G.A. § 10-1-399(b) (plaintiff must "describ[e] the *unfair* … act or practice *relied upon*") (emphasis added).  And so courts have held that reliance is "an essential element of a[] [G]FBPA claim."  *Crown Ford Inc. v. Crawford*, 473 S.E.2d 554, 557 (Ga. Ct. App. 1996); *see also Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga. Ct. App. 1995).

DATED:  October 15, 2018                    Respectfully Submitted,


                                            /s/  *David L. Balser*
                                            **KING & SPALDING LLP**
                                            David L. Balser
                                              Georgia Bar No. 035835
                                            Phyllis B. Sumner
                                              Georgia Bar No. 692165
                                            S. Stewart Haskins II
                                              Georgia Bar No. 336104
                                            Elizabeth D. Adler
                                              Georgia Bar No. 558185
                                            John C. Toro
                                              Georgia Bar No. 175145
                                            1180 Peachtree Street, N.E.
                                            Atlanta, Georgia  30309
                                            Tel.:  (404) 572-4600
                                            Fax:  (404) 572-5140
                                            dbalser@kslaw.com
                                            psumner@kslaw.com
                                            shaskins@kslaw.com
                                            eadler@kslaw.com
                                            jtoro@kslaw.com

                                            *Counsel for Equifax Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

DATED:  October 15, 2018

*/s/ David L. Balser*
David L. Balser

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser