## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

In re: Equifax, Inc. Customer
Data Security Breach Litigation

_____

) MDL Docket No. 2800
) Case No.: 1:17-md-2800-TWT
)
) ALL CASES
)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR LIMITED RELIEF FROM DISCOVERY STAY
## AND ENTRY OF ORDER RELATING TO INTERVIEWS OF
## DEFENDANTS' FORMER EMPLOYEES

As directed by the Court at the September 26, 2018 status conference, Plaintiffs in both the consumer and financial institutions tracks have moved for an order providing the following limited relief from the discovery stay: (1) requiring Equifax to produce the documents it provided to Congressional and regulatory authorities relating to the data breach at issue; (2) allowing Plaintiffs to obtain from up to four third-parties documents responsive to the preservation subpoenas that already have been served; (3) allowing Plaintiffs to conduct one 30(b)(6) deposition of Equifax on certain designated topics; and (4) allowing Plaintiffs to depose up to four former Equifax employees. In addition, Plaintiffs have requested that the Court enter an order governing Plaintiffs' ability to interview former Equifax employees. The basis for these requests is set forth below.

## **FACTUAL BACKGROUND**

Local Rule 26.2 provides that discovery does not begin until thirty days after an answer is filed. As a result, when a defendant moves to dismiss, little discovery-related activity typically occurs until after the Court rules on the motion. In this case, the parties proposed and the Court agreed to modify this approach by accelerating many of the discovery-related tasks that have to be done before formal discovery opens. These tasks include negotiating various case management orders; exchanging document requests and information about the parties' computer systems; and meeting and conferring regarding the requests and the search terms to be used and custodians whose records will be searched. Front loading these tasks should shorten the formal discovery period and hasten resolution of the litigation.

Consistent with this modified approach, the Joint Preliminary Report and Discovery Plan (Doc. 255) approved by the Court on April 4, 2018 (Doc. 260) required the parties to negotiate and present a stipulated discovery order, protective order, and ESI protocol by specified deadlines. Doc. 255 at 17. The parties also were ordered to serve requests for production by June 29, 2018 (thirty days after filing of the consolidated amended complaint in the financial institutions track) and to meet and confer within thirty days thereafter regarding the scope of the requests, a production protocol, and the custodians and search terms to be used. *Id.*

Similarly, Case Management Order No. 4, also entered on April 4, 2018, directs the parties to exchange certain information relating to the relevant ESI that might be requested in discovery (such as the identity of potential custodians, a description of the ESI kept by each custodian, the location of the ESI, and any anticipated undue burden in its production) and attempt to reach agreement on search methodologies. Doc. 261 at 4-7. As part of this process, CMO No. 4 further provides that the "producing Party should provide a list of proposed search terms to the requesting Party and the Parties will meet and confer regarding any additional terms proposed by the requesting Party." *Id.* at 6.

In accordance with the Court's orders, the parties successfully negotiated a discovery order, protective order, and ESI protocol and exchanged the required information relating to custodians and ESI. Exhibit 1, Decl. of Joseph P. Guglielmo, ¶ 5. In contrast, however, little progress has been made on the other discovery-related tasks. On June 29, Plaintiffs submitted their requests for production to Equifax. On July 25, 2018, the parties met and conferred regarding the scope of the requests, custodians, and search terms. During the meet and confer, Plaintiffs asked Equifax to provide a search term list for the searches it planned to do in response to the requests. *Id.* ¶ 6. Contrary to Plaintiffs' expectations based on CMO No. 4, Equifax had not previously provided a

proposed search term list. Plaintiffs also asked Equifax to produce certain documents to allow Plaintiffs to understand the facts well enough to meaningfully negotiate search terms and custodians. *Id.* ¶ 7. Defense counsel stated they would consider Plaintiffs' requests and respond at a later date. *Id.* ¶¶ 8-9.

Two weeks later, on August 10, 2018, the Court entered the parties' proposed ESI protocol. Paragraph 30 of the ESI protocol further addressed the parties' obligations regarding search terms and custodians and re-emphasized the Court's directive that the parties discuss these matters expeditiously:

> 30. **Search Terms and Technology Assisted Review.** The parties have begun to meet and confer as directed by the Court relating to the process of searching for documents responsive to discovery, including, specifically, the identification of any search terms and custodians to the extent they are necessary in responding to specific discovery requests. *The Court expects that the parties will continue to meet and confer on this issue as necessary to ensure that discoverable, responsive, non-privileged documents are identified and produced as efficiently as possible.* In addition, the parties are directed to meet and confer with regard to any proposed use of technology assisted review ("TAR") and the terms of any additional case management orders that may be needed to address issues relating to searches of electronically stored information.

Doc. 449 (emphasis added). Despite CMO No. 4 and Plaintiffs' repeated email inquiries, Equifax did not respond to Plaintiffs' requests for a search term list and certain other documents. Further, the parties did not conduct any further meet and confers as the Court had directed. Guglielmo Decl. ¶ 11.

4

On August 31, 2018, still having received no response to their request for certain relevant documents and having no means to negotiate the details of electronic searches and production, Plaintiffs wrote to defense counsel requesting that Equifax agree to limited relief from the current discovery stay to allow certain targeted discovery that would not impose an undue burden and would materially advance the litigation so that when full-bore discovery began the parties would not start from scratch. Exhibit 2, Decl. of Norman E. Siegel ¶ 2. In a phone call on September 13, 2018, Equifax's counsel declined this proposal. *Id.* ¶ 3.

During the September 13 call, Plaintiffs also pressed Equifax on another impediment they faced in advancing the litigation, namely their inability to interview key former Equifax employees who would not talk because they are bound by non-disclosure agreements. *Id.* ¶ 4; *see generally* Exhibit 3, Decl. of Steve Bursey; Exhibit 4, Declaration of R. Lee Walters. Plaintiffs first raised this issue with defense counsel by letter on May 16, 2018, seeking a solution that would allow the interviews to go forward while protecting Equifax's attorney-client privilege, but no solution had been found despite three months of negotiations. Siegel Decl. ¶ 6. The September 13 call was no more successful due to Equifax's insistence that, among other things, no interviews could take place unless Plaintiffs agreed in advance to identify each former employee they intended

to interview, provide the date the interview would occur, and give Equifax a list of all questions to be asked. Those conditions are unacceptable to Plaintiffs. *Id.* ¶ 7.

Immediately after the September 13, 2018 call, Plaintiffs informed the Court that at the next status conference they intended to seek limited relief from the discovery stay and an order facilitating their interviews of former Equifax employees. *Id.* ¶ 8. Plaintiffs also asked for permission for the parties to submit letter briefs addressing these issues. The Court granted that request.

Early on September 21, 2018, the deadline for submitting letter briefs, Equifax finally responded to Plaintiffs' request (first made on July 25, 2018) for a search term list and documents so Plaintiffs could meaningfully negotiate about those search terms. Equifax's entire response is quoted below:

> In response to your request for Equifax to provide certain documents to assist in Plaintiffs' development of ESI search terms, *we decline to provide any documents before discovery opens in these cases.* Equifax has conducted a thorough search to identify documents responsive to requests received from other investigators, some of which could be responsive to your requests at the appropriate time if these cases go forward. We have collected and searched data and documents for the custodians identified in Defendants' Custodian Disclosures served on August 17, 2018 and others. The details of Equifax's process are protected from disclosure by the work product doctrine. However, we will be happy to discuss the process at a high level during a meet and confer conference. Further, *if Plaintiffs would like to propose ESI search terms, Equifax is willing to consider them and engage in a meet and confer process once we have done so.*

Guglielmo Decl. ¶ 12 (emphasis added). Equifax thus declined to produce any

further information or provide the search term list required by CMO No. 4, but said it was willing to consider search terms proposed *by Plaintiffs*, notwithstanding Plaintiffs repeatedly stating they lack the information needed to propose such a list.

At the September 26, 2018 status conference, the Court declined to rule on Plaintiffs' two requests until after a formal motion was filed and briefed. To facilitate the briefing, the Court ordered Equifax to "give the plaintiffs four of the [non-disclosure] agreements of employees that you think the plaintiffs are most likely to want to talk to." Sept. 26, 2018 Hearing Tr. 45:7-9. Instead of following the Court's direction, on October 9 Equifax produced four "sample Equifax employee NDAs" containing restrictive covenants of the type Equifax's employees signed at the beginning of their employment. Guglielmo Decl. ¶ 14.

All four NDAs—attached as Exhibit 5 and provisionally filed under seal because they are designated under the Protective Order—are substantially identical. They bear no relation either in time period or subject matter to the data breach itself, which has from the outset been the subject of Plaintiffs' inquiries. But they do contain boilerplate language purporting to prohibit employees from disclosing any confidential information to anyone, with "confidential information" being defined extraordinarily broadly. *See* Ex. 5 at ¶¶ 1.C and 5. Equifax's transmittal email also stated that "in addition to these employee agreements,

Equifax has many agreements with third parties that may apply to former employees that also require the employees to keep certain information confidential." But the other agreements were not produced. Guglielmo Decl. ¶ 15.

To address Plaintiffs' concern that the documents produced were not the NDAs—or the only NDAs—at issue and in response to a specific inquiry from Plaintiffs regarding whether breach-specific NDAs existed, the parties conferred on October 15, 2018. Equifax's counsel explained that: (1) they could not possibly identify the specific NDAs directed by the Court because Plaintiffs had not named the witnesses to be interviewed; (2) its former employees are bound by an unknown or unknowable number of NDAs Equifax has with third parties; (3) they could not or would not identify or discuss any NDAs signed after the breach because, if they exist at all, the NDAs would implicate the attorney-client privilege; (4) they were unaware of or unwilling to discuss whether any former employees with knowledge of the breach had signed other NDAs; and (5) they claimed that they were unaware before the call that Plaintiffs sought NDAs relating specifically to or signed after the breach, despite the fact that such NDAs were the express topic of months of discussion and Plaintiffs' letter brief. *Id.* ¶ 16.

On October 15 and 18, 2018, at Plaintiffs' request, Equifax produced additional non-disclosure agreements it suggested may be relevant. Exhibit 6

8

(provisionally filed under seal). However, Equifax still has not produced the NDAs the Court ordered it to produce—namely, "four of the agreements of employees that you think the plaintiffs are most likely to want to talk to"—or even disclosed whether any former employees entered into NDAs specifically relating to the breach or signed an NDA upon terminating their employment after the breach occurred. Guglielmo Decl. ¶¶ 18-19. Moreover, despite CMO No. 4 and repeated reminders from Plaintiffs, Equifax still has not produced the search term list that should have been produced in connection with the July 25, 2018 meet and confer. *Id.* ¶ 20. Since the last status conference, Equifax has promised to provide the list, but repeatedly missed self-imposed deadlines to do so. *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

### I.   Plaintiffs' Request for Limited Relief from the Discovery Stay

Local Rule 26.2 states that the "discovery period shall commence thirty days after the appearance of the first defendant by answer to the complaint, unless the parties mutually consent to begin earlier." L.R. 26.2(A). This Court has discretion to modify the discovery stay for good cause.[1] As Judge Jones has explained, the

---

[1] *See, e.g.*, *Merial LLC v. Fidopharm, Inc.*, 2013 WL 12072140, at *1 (N.D. Ga. May 22, 2013) (noting that the stay imposed by Local Rule 26.2(A) "is not absolute and may be altered by the court"); Fed. R. Civ. Proc. 26(d)(1) (a court has discretion to alter the normal discovery schedule "for the convenience of parties

relevant considerations include, but are not limited to, whether a motion for preliminary injunction is pending, the breadth of the requested discovery, the reasons for the request, the burden on the opponent to comply, and when the request is made. *Merial*, 2013 WL 12072140, at *1.

Several of these factors support partially lifting the stay here. Plaintiffs are seeking only limited, targeted discovery and that discovery: (1) is not burdensome; (2) will give Plaintiffs the information needed to conduct negotiations regarding search terms and related ESI production issues, which if delayed will consume the first six months or more of the discovery period; (3) will avoid months of "dead time" while the parties await rulings on the motions to dismiss and materially advance the litigation in other ways, such as preserving evidence that might otherwise be lost as memories fade, employees move on, and ESI is at risk of being deleted; and (4) may reveal grounds to seek a preliminary injunction to prevent another breach, a step Plaintiffs have not yet taken in part because of the lack of transparency regarding Equifax's existing security measures.

In light of the foregoing, Plaintiffs seek the following targeted discovery:

*First*, Plaintiffs request that Equifax produce the documents it has already provided to the various regulatory bodies investigating the breach, such as the

---

and witnesses and in the interests of justice"); N.D. Ga. Local Rule 26.2(B) ("The court may, in its discretion, shorten or lengthen the time for discovery").

FTC, CFPB, Congressional committees, and state Attorneys General. The request is limited in scope as the documents are discrete and pertain directly to the breach and its cause. Their production here should impose no burden given that Equifax has already reviewed and produced them, presumably in electronic format.

*Second*, Plaintiffs have served preservation subpoenas on third parties seeking documents that can be produced without any burden at all on Equifax. Plaintiffs seek leave to require up to four third-parties to begin producing documents right away, focusing on the documents with the highest priority in terms of advancing resolution of the litigation.

*Third*, Plaintiffs seek to take one 30(b)(6) deposition of Equifax on some limited and preliminary matters, including specifically the basic facts relating to the breach, the identity of relevant witnesses and documents, and the company's internal terminology and systems. Such knowledge will enable Plaintiffs to understand and thus better negotiate the search terms, custodians, and other factors that will guide Equifax's ESI searches; allow Plaintiffs to better focus their document requests; and thus reduce the burden of production.

*Fourth*, Plaintiffs propose to depose no more than four former employees. Plaintiffs are especially concerned that the memories of these witnesses may diminish over time and want to preserve their current recollections. Permitting

depositions of former employees would give Plaintiffs a means of discovering needed facts while obviating the need for the Court to resolve any issues arising from NDAs that the former employees signed.

The limited information and documents that Plaintiffs seek through this discovery is critical to enable them to identify and negotiate search terms, custodians, and the other ESI issues that they have been directed by the Court to negotiate. Plaintiffs lack key information about the breach and its aftermath, Equifax's internal terminology, the identity of all those with relevant knowledge, the way in which those people are organized, and how Equifax stores relevant information. Without such information, Plaintiffs simply cannot evaluate—and certainly cannot agree to—a list of search terms and custodians or other matters relating to ESI searches. Guglielmo Decl. ¶ 21.

While it is always difficult for a plaintiff to negotiate search terms and other ESI issues when a major corporation is the defendant, the problem is compounded here because Equifax used internal code words to refer to the breach and its remediation efforts. For example, according to the Securities and Exchange Commission in a complaint alleging insider trading after the breach:

> The company designated the response to the breach as "Project Sierra," and instructed those working on Project Sierra that information related to the project was confidential and should not be shared with anyone outside of Equifax's crisis action team.

Complaint, *SEC v. Jun Ying*, No 1:18-cv-01069-CAP (N.D. Ga. filed Mar. 14, 2018) (Doc 1 at 5). Equifax also designated its notification and remediation plan for consumers as "Project Sparta" to limit knowledge of the plan. *Id.* at 6. Obviously, "Project Sierra" and "Project Sparta" must be on any search term list used in this case. However, but for the SEC complaint and related media reports, Plaintiffs could not possibly know that. Moreover, without some discovery (such as production of the documents provided to the SEC that presumably referred to the two code words), Plaintiffs have no way to know whether other code words or internal vernacular should be on the list.

In its letter brief and at the status conference, Equifax made three objections to Plaintiffs' request for limited relief from the discovery stay. According to Equifax, Plaintiffs agreed to comply with the Local Rule regarding the start of discovery, suggesting that ends the matter. Equifax Sept. 21, 2018 Letter Brief at 1. However, the Joint Preliminary Report, which was approved by the Court, specifically authorizes Plaintiffs to seek earlier discovery if needed. Doc. 255 at 20 ("Counsel for Plaintiffs may seek leave from the Court to conduct limited early discovery, prior to the commencement of formal discovery"); Doc. 260.

Equifax also cites *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) for the proposition that a motion to dismiss must be decided

before discovery begins. This Court specifically held in *Merial* that earlier discovery is permissible for good cause, however, and other courts have also declined to read *Chudasama* so broadly.[2] If *Chudasama* imposed the blanket prohibition suggested by Equifax, this Court's Local Rule would be unnecessary. Moreover, the widespread and longstanding practice in many other districts in this Circuit to allow early discovery as the default rule unless a defendant successfully moves for a stay would be improper.

Lastly, Equifax opposes production of the documents it has already provided to government regulators, arguing that such "cloned discovery" is improper. Yet, courts routinely reject similar arguments, finding that when the same conduct is at issue there is no need to do a document by document analysis for relevance or to see if it falls within a plaintiff's specific request.[3]

---

[2] *See, e.g.*, *Jones v. Bank of Am. Corp.*, 2013 WL 5657700, at *2 (M.D. Ga. Oct. 15, 2013) ("Nothing in *Chudasama* . . . means discovery should be stayed as a matter of course whenever a defendant files a motion to dismiss.") (internal quotations omitted); *Mimbs v. J.A. Cambece Law Office, P.C.*, 2013 WL 11982063, at *1 (S.D. Fla. June 13, 2013) (*Chudasama* decision "does not indicate a broad rule that discovery should be deferred or stayed whenever there is a pending motion that is potentially dispositive"); *Schreiber v. Kite King's Lake, LLC*, 2010 WL 3909717, at *1 (M.D. Fla. Oct. 1, 2010) ("*Chudasama* and its progeny stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount").

[3] *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *3-4 (N.D. Cal. Mar. 24, 2017); *In re Plastics Additives Antitrust Litig.*, 2004 WL

In short, there is no legal obstacle to granting Plaintiffs' request for targeted early discovery and, as described above, such discovery would materially advance the litigation and enable the parties to comply with their obligations under the Court's case management orders as contemplated by Fed. R. Civ. Proc. 1.

## II.   Plaintiffs' Request Regarding Interview of Former Employees

### A.   Plaintiffs Have a Need to Interview Equifax Former Employees and are Legally Authorized to Do So Despite any NDAs

Beginning in early spring 2018, Plaintiffs sought to interview Equifax's former employees who have relevant information. Such interviews are a standard part of most significant cases, but are particularly important here because of the size and complexity of this litigation as a whole, formal discovery is stayed, the breadth of Equifax's multiple motions to dismiss, and the Court's packed trial schedule, which all combine to severely delay development of the factual record. This delay has deleterious consequences: memories fade; witnesses relocate; they have health issues; they move on with their busy personal and professional lives. Plaintiffs simply want the opportunity to talk to witnesses knowledgeable about the

---

2743591, at *12-13 (E.D. Pa. Nov. 29, 2004); *In re Bank of America Corp. Sec., Derivative, & ERISA Litig.*, 2009 WL 4796169, at *2-3 (S.D.N.Y. Nov. 16, 2009); *Singer v. Nicor, Inc.*, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003); *Munoz v. PHH Corp.*, 2013 WL 684388, at *4-6 (E.D. Cal. Feb. 22, 2013).

breach, but Equifax—through numerous and varied though as yet unidentified confidentiality agreements—stands in the way.

It is undisputed that under Georgia law a party may interview *ex parte* former employees of an opposing party provided that the party seeking the interviews properly identifies itself and the former employees consent.[4] The existence of an NDA signed by a former employee does not modify this general rule.[5] In full compliance with the law, Plaintiffs' investigators have contacted former Equifax employees, identifying themselves as working on behalf of plaintiffs who are adverse to Equifax in litigation involving the breach and seeking non-privileged information about the breach and its aftermath.[6] However, numerous key former employees have declined to talk, citing NDAs that they signed or instructions from Equifax that they not share information relating to the

---

[4] *See, e.g.*, Ga. S. Ct. Formal Advisory Op. 94-3 (Sept. 9, 1996); *Sanifill of Ga., Inc. v. Roberts*, 232 Ga. App. 510, 511 (1998); *Jones v. City of College Park, Ga.*, 2009 WL 10666066, at *1-2 (N.D. Ga. Aug. 26, 2009); ABA Formal Op. 91-359 (March 22, 1991).

[5] *See, e.g.*, *Hoffman v. Sbarro, Inc.*, 1997 WL 736703, at *1-2 (S.D.N.Y. Nov. 26, 1997) (denying defendants' motion to prohibit *ex parte* interviews of its former employees who had signed NDAs); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444-45 (S.D.N.Y. 1995) (permitting *ex parte* interviews with former employees despite existence of NDAs).

[6] The investigators were instructed not to solicit or receive any privileged information and to terminate the interview if they believed a witness intended to disclose privileged information. Those instructions have been followed. Bursey Decl. ¶ 3; Walters Decl. ¶ 3.

breach and two specifically volunteered they otherwise would be willing to talk. Bursey Decl. ¶¶ 4, 6, 7; Walters Decl. ¶ 4, 6. Whenever a former employee stated he or she was subject to an NDA, the investigators terminated the calls. Bursey Decl. ¶ 6; Walters Decl. ¶ 5. After running up against these impenetrable roadblocks laid down by Equifax, Plaintiffs' counsel quickly made the decision to put further attempted interviews on hold and seek a resolution with Equifax and ultimately relief from the Court. Siegel Decl. ¶ 5.

Equifax's NDAs—whether in the form of oral instructions not to discuss the breach or formal contracts prohibiting such discussions—thus effectively bar Plaintiffs from developing the facts. The situation is compounded by Equifax's apparent refusal to produce or even identify all the NDAs that arguably preclude its former employees from talking to Plaintiffs. Surely Equifax knows which of its employees worked on data security, investigated the breach, participated in its remediation, and have since left the company. It also should not be hard for Equifax to identify its four most knowledgeable former employees and state whether any of them signed NDAs that specifically pertain to the breach, either contemporaneously or upon termination. Given the mystery Equifax has created about the NDAs and the aggressive manner in which Equifax has sought to impede Plaintiffs' interviews, it is not surprising its former employees are reticent to talk.

17

Use of NDAs to frustrate Plaintiffs' informal discovery efforts is improper. As a general rule and as a matter of public policy, an NDA is not a valid basis for frustrating a party's access to relevant information.[7] This is particularly true where, as here, the litigation concerns federal statutory rights.[8] To remedy the situation, as set forth below, the Court should enter an order authorizing voluntary interviews about relevant, non-privileged facts, notwithstanding the existence of any NDAs.

## B.      Plaintiffs' Proposed Resolution of the NDA Dispute

Plaintiffs respectfully request that the Court exercise its discretion to enter an order that fairly balances plaintiffs' right to investigate the facts with the legitimate concerns of both Equifax and its former employees. This proposed order

---

[7] *See, e.g.*, *Interface Operations LLC v. Laungisa*, 2016 WL 706192, at *3 (D. Nev. Feb. 22, 2016) ("courts typically prohibit parties from invoking confidentiality agreements in order to withhold evidence"); *LifeGoals Corp. v. Advanced Hair Restoration, LLC*, 2017 WL 6516042, at *3 (W.D. Wash. Dec. 19, 2017) ("an NDA or confidentiality agreement is not a valid basis for withholding discovery") (internal citation omitted); *Sonnino v. Univ. of Kansas Hosp. Autho.*, 2004 WL 769325, at *3-4 (D. Kan. Apr. 8, 2004) ("litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality").

[8] *See, e.g.*, *Chambers*, 159 F.R.D. at 444 (recognizing that NDAs are harmful to the public's ability to rein in improper behavior and as a result it is against public policy for parties to agree not to reveal in discovery or informal interviews facts relating to potential violations of federal law); *McGrane v. Reader's Digest Ass'n*, 822 F. Supp. 1044, 1046 (S.D.N.Y. 1993) ("Courts are increasingly reluctant to enforce secrecy arrangements where matters of substantial concern to the public – as distinct from trade secrets or other legitimately confidential information – may be involved.").

would expressly allow *ex parte* communications between Plaintiffs and Equifax's former employees subject to the following requirements, which meet or exceed the requirements of the Rules of Professional Conduct:

1. Upon contacting any Equifax former employee, plaintiffs' counsel shall immediately identify him or herself as an attorney (or investigator) representing plaintiffs in this action and explain the purpose of the contact.

2. Plaintiffs' counsel shall ascertain whether the former employee is represented by independent counsel related to the Equifax data breach. If so, the interview must terminate immediately.

3. Plaintiffs' counsel shall advise the former employee that participation in the interview is not mandatory. If the issue is raised by the former employee, Plaintiffs' counsel shall also advise the former employee that the interview is not precluded by any NDA between Equifax and the former employee. Plaintiffs' counsel shall terminate the interview if the former employee does not wish to participate.

4. In the course of the interview, Plaintiffs' counsel shall not attempt to solicit privileged information and shall terminate the interview should it appear that the former employee intends to volunteer privileged matters.

5. Plaintiffs shall keep a list of all former employees contacted and the date(s) of contact(s) and preserve any and all statements or notes resulting from such contacts, whether by phone or in person.

6. All information derived from such interviews shall be treated as Confidential under the Protective Order.

This proposal is based on *Lang v. Reedy Creek Improvement Dist.*, 888 F. Supp. 1143, 1148-49 (M.D. Fla. 1995), and similar orders entered by this Court.[9]

If Equifax argues this proposal is inadequate to shield its privileged information and seeks other conditions that it knows Plaintiffs will never accept (such as naming those to be interviewed in advance), there is an established procedure to deal with Equifax's professed concerns—formal depositions on the record. Particularly in light of murkiness of the relevant facts caused by Equifax's inability or unwillingness to produce all of the relevant NDAs, the Court could rationally decide that the most efficient and equitable approach is to allow Plaintiffs to depose former employees in lieu of informal interviews. Such an approach would avoid further litigation about the NDAs, deal with Plaintiffs'

---

[9] *See U.S. ex rel. Harris v. Lockheed Martin Corp.*, 2013 WL 12328947, at *4 (N.D. Ga. Feb. 5, 2013); *City of College Park*, 2009 WL 10666066, at *2; Order, *Bagwell v. Peachtree Doors and Windows, Inc.*, No. 2:08-CV-191-RWS-SSC (N.D. Ga. Aug. 25, 2009) (Doc. 59 at 2-9) (attached as <u>Exhibit 7</u>).

concerns without the need for any court orders, and allow Equifax to protect its interests by objecting on the record to questions seeking privileged information.

### C.    The Court Should Reject Equifax's Arguments

To date, Equifax has refused any reasonable resolution of this dispute based on several arguments, each of which the Court should reject.

*First*, Equifax's main stated concern is to protect privileged and work-product information from disclosure, not to preclude interviews. In fact, Equifax *agrees* that Plaintiffs' counsel may communicate *ex parte* with its former Equifax employees and that its NDAs do not preclude those employees from discussing the breach. *See* Sept. 26, 2018 Hearing Tr. 39:14-23 ("there are a number of former employees who did sign nondisclosure agreements, and it is true that we have said that alone would not preclude the interview of these former employees"). It is unnecessary to limit Plaintiffs' ability to talk with former Equifax employees simply because they know of privileged information.[10] The applicable ethical rules—and Plaintiffs' proposed order—preclude Plaintiffs from asking for

---

[10] *See, e.g.*, *Merrill v. City of New York*, 2005 WL 2923520, at *1 (S.D.N.Y. Nov. 4, 2005) (former-employee witness's possession of privileged information "would not justify precluding any contact with that individual"); *Lang*, 888 F. Supp. at 1149 (interview permissible so long as counsel advises witness to avoid disclosing privileged information, does not solicit privileged information, and terminates conversation if it appears witness may reveal privileged information); Ga. S. Ct. Formal Advisory Op. 94-3 (Sept. 9, 1996) (a lawyer may interview former employee of adverse party "to obtain nonprivileged information").

privileged information and require the interview to be ended if such information is volunteered. Moreover, the proposed order requires that records be kept so that if a question arises the Court can later determine if the rules were followed.

*Second*, Equifax asserts that it fears public disclosure of confidential information or trade secrets. Plaintiffs agree this is a legitimate concern, which would exist independent of the NDAs. But that concern is easily addressed by subjecting any information disclosed by former employees to the protective order the Court has already entered, as Plaintiffs' proposed order requires.

*Third*, Equifax seeks to impose restrictive conditions on Plaintiffs' counsel, such as that they disclose in advance the name of each former employee to be interviewed, the interview dates, and all questions to be asked. Such restrictive conditions are not required by the Georgia or ABA ethical rules; would allow Equifax to contact the former employees first; and would inevitably result in dissuading former employees from talking or otherwise stymieing Plaintiffs access to the facts. Moreover, such conditions would require Plaintiffs to disclose to Equifax their mental impressions and other opinion work product, which are absolutely protected by Rule 26(b)(3)(B), and, if the conditions were imposed notwithstanding the protections of that rule, likely would cause Plaintiffs to forego

seeking any interviews at all. Not surprisingly, this Court has rejected requests for similar conditions in other cases.[11]

Equifax suggests that restrictive conditions are needed here because its former employees worked on particularly sensitive matters overseen by its outside counsel and thus much of their knowledge is likely protected by the attorney-client privilege or work product doctrine. However, the attorney-client privilege and work product doctrine do not protect facts and Equifax should not be permitted to shield such facts by involving outside counsel in its investigation and remediation efforts. Regardless, the rules governing interviews of former employees do not change simply because a party claims that its former employees are uniquely situated or actually do have privileged information. *See generally Bagwell* at 2-9 (allowing interviews of former supervisors and managers even though they made decisions that might be imputed to the defendant in the litigation).

*Finally*, Equifax's only case citation to date, *In re Spectrum Brands, Inc.*, 2007 WL 1483633 (N.D. Ga. May 18, 2007), is inapposite. *Spectrum* dismissed a

---

[11] *See U.S. ex rel Harris*, 2013 WL 12328947, at *4 (authorizing interviews of former employees "without notice to Defense counsel"); *Bagwell*, No. 2:08-CV-191-RWS (Ex. 7 at 8) (authorizing such interviews "without the approval or presence of Defendants' counsel"); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 562 (N.D. Ga. 1992) ("The Court will not require plaintiffs to notify defendants of their intention to interview former employees, nor will it mandate that plaintiffs allow counsel for defendants to be present during the interview").

complaint in a PSLRA case for failure to plead sufficient facts. Given the chance to amend, the plaintiffs waited until the last minute to seek more time and ask for an order precluding enforcement of undisclosed NDAs between Spectrum and its current and former employees, which plaintiffs alleged were interfering with their ability to obtain new facts. Judge Duffey denied the request because the PSLRA explicitly imposes a high pleading standard before discovery can commence; plaintiffs never complained about the NDAs until they wanted more time; and the effort to amend was likely futile. Indeed, the court characterized the motion as "based on an inadequate and untimely expression of hope that somewhere, from someone, facts may exist to support their cause of action." *Id.* at *2. None of these factors are involved here.[12]

## **CONCLUSION**

For the reasons stated above, Plaintiffs request that the Court enter an order that: (1) requires Equifax to produce to Plaintiffs within 20 days the documents it

---

[12] Further, relying on *Spectrum*, Equifax argues that any order addressing the NDAs at issue in this case would be an "impermissible advisory decision." Sept. 26, 2018 Hearing Tr. 42:2-14. That is incorrect. Judge Duffey declined to address the NDA at issue because it was not in the record, not because there is something about an NDA that precludes a court from construing it. *See Spectrum*, 2007 WL 1483633, at *2-4 (declining to "issue an advisory opinion concerning the scope of an agreement *whose provisions are entirely unknown*") (emphasis added). In contrast, Plaintiffs have filed all of the NDAs Equifax produced. Any record deficiency is solely Equifax's responsibility.

already has produced to government regulators and state Attorneys General; and (2) lifts the existing stay for the limited purpose of allowing the other targeted discovery described in this memorandum. Plaintiffs further request that the Court enter an order governing Plaintiffs' interviews of former Equifax employees as described above or, alternatively, in lieu of such an order to permit Plaintiffs to immediately notice and take the depositions of such employees.

Dated: October 22, 2018

Respectfully submitted,

*/s/ Amy E. Keller*
Amy E. Keller
Adam J. Levitt
**DiCELLO LEVITT & CASEY LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dlcfirm.com
alevitt@dlcfirm.com

*/s/ Norman E. Siegel*
Norman E. Siegel
Barrett J. Vahle
J. Austin Moore
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com
vahle@stuevesiegel.com
moore@stuevesiegel.com

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
Georgia Bar No. 107744
**DOFFERMYRE SHIELDS**
**CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E.
Suite 1900
Atlanta, Georgia 30309
Tel. 404.881.8900
kcanfield@dsckd.com

***Consumer Plaintiffs' Co-Lead Counsel***

Roy E. Barnes
John R. Bevis
J. Cameron Tribble
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com

David J. Worley
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

*Consumer Plaintiffs' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue, NW
Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
David M. Berger
**GIBBS LAW GROUP LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com
dmb@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**MILBERG TADLER PHILLIPS
GROSSMAN LLP**
One Penn Plaza
19th Floor
New York, New York 10119
Tel. 212.594.5300
atadler@milberg.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Consumer Plaintiffs' Steering Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

*Consumer Plaintiffs' State Court Coordinating Counsel*

**AND**

| | |
|---|---|
| */s/ Joseph P. Guglielmo* | */s/ Gary F. Lynch* |
| Joseph P. Guglielmo | Gary F. Lynch |
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP** |
| 230 Park Avenue, 17th Floor | 1133 Penn Avenue, 5th Floor |
| New York, New York 10169 | Pittsburgh, Pennsylvania 15222 |
| Tel. 212.223.6444 | Tel. 412.322.9243 |
| jguglielmo@scott-scott.com | glynch@carsonlynch.com |

*Financial Institution Plaintiffs' Co-Lead Counsel*

| | |
|---|---|
| Craig A. Gillen | MaryBeth V. Gibson |
| **GILLEN WITHERS & LAKE, LLC** | **THE FINLEY FIRM, P.C.** |
| 3490 Piedmont Road, N.E. | 3535 Piedmont Road |
| One Securities Centre, Suite 1050 | Building 14, Suite 230 |
| Atlanta, Georgia 30305 | Atlanta, Georgia 30305 |
| Tel. 404.842.9700 | Tel. 404.320.9979 |
| cgillen@gwllawfirm.com | mgibson@thefinleyfirm.com |

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327
Tel. 404.572.4600
ranse@onleygriggs.com

*Financial Institution Plaintiffs' Co-Liaison Counsel*

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel. 504.525.8100
amurray@murray-lawfirm.com

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel. 404.261.7711
cvanhorn@bfvlaw.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel. 612.339.7300
bbleichner@chestnutcambronne.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel. 501.821.5575
karenhalbert@robertslawfirm.us

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Tel. 612.349.8500
sslaughter@robinskaplan.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Tel. 501.312.8500
acarney@cbplaw.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, Minnesota 55401
Tel. 501.812.5575
khriebel@locklaw.com

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel. 612.341.0400
brian.gudmunson@zimmreed.com

*Financial Institution Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 22nd day of October, 2018.

*/s/ Norman E. Siegel*