# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____  )
                                  )  MDL Docket No. 2800
In re: Equifax, Inc. Customer     )  Case No.: 1:17-md-2800-TWT
Data Security Breach Litigation   )
                                  )  ALL CASES
_____  )

### DECLARATION OF JOSEPH P. GUGLIELMO

I, Joseph P. Guglielmo, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am a member of Scott+Scott Attorneys at Law LLP, Co-Lead Counsel for the Financial Institution Plaintiffs. I make this declaration in further support of Plaintiffs' Motion For Limited Relief From Discovery Stay and Entry of Order Relating to Interviews of Defendants' Former Employees. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. Plaintiffs seek an order partially lifting the stay of discovery requiring Equifax to produce the documents it provided to Congressional and regulatory authorities relating to the 2017 data breach.

3. Case Management Order No. 4 directs the parties to exchange certain information relating to the relevant electronically stored information ("ESI") that might be requested in discovery (such as the identity of potential custodians, a

description of the ESI kept by each custodian, the location of the ESI, and any anticipated undue burden in its production) and attempt to reach agreement on search methodologies for such information. *See* Doc. 261 at 4-6.

4. As part of this process, CMO No. 4 further provides that the "producing Party should provide a list of proposed search terms to the requesting Party and the Parties will meet and confer regarding any additional terms proposed by the requesting Party." *Id.* at 6.

5. Consistent with the Court's orders, the parties successfully negotiated a discovery order, protective order, and ESI protocol and exchanged the required information relating to custodians and ESI. However, the parties have made little progress towards the other required discovery-related tasks such as identifying and negotiating search terms.

6. On June 29, 2018, Plaintiffs served Defendants with their requests for production of documents to Equifax. On July 25, 2018, the parties met and conferred regarding the scope of the requests, custodians, and search terms. During the meet and confer Plaintiffs asked Equifax to provide a search term list for the searches they intended to run in response to Plaintiffs' requests, consistent with CMO No. 4.

7. Contrary to Plaintiffs' expectations based on CMO No. 4, Equifax did

not provide a proposed search term list. Plaintiffs also asked Equifax to produce certain documents, such as formal investigatory reports provided to Congressional and other regulatory bodies, to allow Plaintiffs to understand the facts well enough to meaningfully negotiate search terms and custodians.

8. Counsel for Equifax stated they would consider Plaintiffs' requests and respond at a later date.

9. On August 8, 2018, Plaintiffs' contacted counsel for Equifax to inquire into the status of Plaintiffs' request. On August 9, 2018, counsel for Equifax stated that they were still conferring with their clients and would provide a response within a week regarding next steps.

10. On August 10, 2018, the Court entered the parties' proposed ESI protocol which further addressed the parties' obligations regarding search terms and custodians and re-emphasized the Court's directive that the parties discuss these matters expeditiously.

11. Despite the Court's directive and Plaintiffs' repeated requests, Equifax did not respond to Plaintiffs' request – made at the meet and confer on July 25 – for a search term list and certain other documents. Further, the parties did not conduct any further meet and confers regarding the requests for production or search terms as the Court had directed.

12. On September 21, 2018, the deadline for submission of letter briefs in advance of the September 26 status conference, Equifax finally responded to Plaintiffs' request, which had first been made two months earlier, for a search term list and certain limited documents stating:

> In response to your request for Equifax to provide certain documents to assist in Plaintiffs' development of ESI search terms, we decline to provide any documents before discovery opens in these cases. Equifax has conducted a thorough search to identify documents responsive to requests received from other investigators, some of which could be responsive to your requests at the appropriate time if these cases go forward. We have collected and searched data and documents for the custodians identified in Defendants' Custodian Disclosures served on August 17, 2018 and others. The details of Equifax's process are protected from disclosure by the work product doctrine. However, we will be happy to discuss the process at a high level during a meet and confer conference. Further, if Plaintiffs would like to propose ESI search terms, Equifax is willing to consider them and engage in a meet and confer process once we have done so.

13. Plaintiffs also seek an order relating to NDAs signed by former Equifax employees who are witnesses to the breach and its aftermath. During the September 26 status conference, the Court ordered Plaintiffs to formally brief the issue of the lifting of the discovery stay and ordered Equifax "to give the plaintiffs four of the [non-disclosure] agreements of employees that you think the plaintiffs are most likely to want to talk to." *See* Sept. 26, 2018 Hearing Tr. 45:7-9.

14. On October 9 Equifax produced four "sample Equifax employee NDAs" containing restrictive covenants of the type Equifax's employees signed at

the beginning of their employment. However, none of the four sample NDAs were consistent with what the Court had ordered Equifax to produce. The NDAs are substantially identical and appear to bear no relation either in time period or subject matter to the data breach itself.

15.   Equifax's transmittal email also stated that "in addition to these employee agreements, Equifax has many agreements with third parties that may apply to former employees that also require the employees to keep certain information confidential." Copies of these other agreements were not produced.

16.   On October 15, the parties conducted a meet and confer relating to the NDAs and Plaintiffs' concerns relating to their lack of specific relation to the data breach. Equifax's counsel stated: (1) they could not possibly identify the specific NDAs directed by the Court because Plaintiffs have not identified the witnesses they want to interview; (2) its former employees are bound by an unknown or unknowable number of NDAs Equifax has with third parties; (3) they could not or would not identify or discuss any NDAs signed after the breach because, if they existed at all, the NDAs would implicate the attorney-client privilege; (4) they were unaware of or unwilling to identify or discuss whether any former employees with knowledge of the breach had signed other NDAs; and (5) they were unaware that Plaintiffs sought NDAs relating specifically to or signed after the breach,

despite the fact that such NDAs were the express topic of months of discussion and Plaintiffs' letter brief.

17. Thereafter, on October 15 and 18, at Plaintiffs' request, Equifax produced additional NDA agreements that it suggested may be relevant.

18. Despite having produced these additional NDAs, Equifax still has not produced the non-disclosure agreements the Court ordered it to produce – namely, "four of the agreements of employees that you think the plaintiffs are most likely to want to talk to."

19. Equifax has not disclosed whether any of its former employees who worked in information security and/or were involved in the data breach investigation entered into non-disclosure agreements specifically relating to the breach or signed a non-disclosure agreement upon terminating their employment after the breach occurred.

20. To date, despite the requirement in CMO No. 4 and repeated requests from Plaintiffs, Equifax still has not produced search terms in connection with the July 25, 2018 meet and confer. After the September 26, 2018 status conference before the Court, Equifax promised to provide the list, but has missed its self-imposed deadline to do so.

21. The limited information and documents that Plaintiffs seek through

this discovery is critical to enable them to identify and negotiate search terms, custodians, and the other ESI issues they have been directed by the Court to negotiate. Plaintiffs do not know key information pertaining to the breach and its aftermath, Equifax's internal terminology, the identity of all the people with relevant knowledge, the way in which those people are organized, and how Equifax stores relevant information. Without such information, Plaintiffs simply cannot evaluate – and certainly cannot agree to – a list of search terms and custodians or other matters relating to ESI searches.

      I declare under penalty of perjury under the laws of the United States that the above statements are true to the best of my knowledge and belief.

Dated:     New York, New York
              October 22, 2018

                              SCOTT+SCOTT ATTORNEYS AT LAW LLP
                              /s/ Joseph P. Guglielmo