# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| BARBARA BAGWELL, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action File No.: |
| : | 2:08-CV-191-RWS-SSC |
| PEACHTREE DOORS AND : | |
| WINDOWS, INC., et al., : | |
| : | |
| Defendants. : | |

**ORDER**

This case is before the court on Defendants' Motion for Protective Order [Doc. 35] and Defendants' Motion for Leave to Amend Defendants' Answer and Affirmative Defenses [Doc. 43].

**Relevant Procedural History**

On September 12, 2008, Plaintiffs filed a complaint [Doc. 1] alleging that Defendants discriminated against them on the basis of their race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981 (Count I); discriminated against them on the basis of their national origin in violation of Title VII (Count II); and violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq. ("WARN Act") (Count III). Plaintiffs then filed an amended complaint [Doc. 5]. Defendants filed their Answer and Affirmative Defenses [Doc. 16] on January 26, 2009. On February 25, 2009, the parties filed their Joint Preliminary Report and

1

Discovery Plan [Doc. 19], which included the following provision:

> Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the preliminary planning report is filed, or should have been filed, will not be accepted for filing unless otherwise permitted by law.

(Doc. 19 at 8). On February 27, 2009, the District Court approved the parties' Joint Preliminary Report and Discovery Plan and ordered that the discovery period shall last ten months. (See Doc. 21). Therefore, the discovery period will end on December 25, 2009.

On May 18, 2009, Defendants filed a motion for protective order, seeking an Order to prevent Plaintiffs' counsel and their representatives from engaging in ex parte communications with eleven of Defendants' former managers and supervisors. (Doc. 35 and Ex. A to Doc. 35). Plaintiffs filed a response in opposition to Defendants' motion [Doc. 37]; Defendants have not filed a reply.

On July 9, 2009, Defendants filed a motion to amend their answer [Doc. 43] in order to assert the defense of judicial estoppel as to the claims of Plaintiffs Gwen Gee and Yolanda Bailey, based on those plaintiffs' bankruptcy filings. Plaintiffs filed a response in opposition to Defendants' motion to amend [Doc. 48], and Defendants filed a reply [Doc. 50].

**A.      Defendants' Motion for Protective Order [Doc. 35]**

Defendants request that the court issue "a protective order barring Plaintiffs and their representatives from communicating ex parte with Defendants' former managers . . . ." (Doc. 35, Def. Br., pp. 1-2). Defendants attached to their motion

2

a list of those former Peachtree Doors and Windows, Inc. supervisors and managers. (Ex. A to Doc. 35). Defendants argue that "Plaintiffs should not be allowed to conduct interviews with Defendants' former managers in an effort to obtain binding statements, which they will likely attempt to impute to the corporation, outside the presence of counsel for the corporation." (Doc. 35, Def. Br., p. 6). Defendants further assert that "[a]ny efforts to obtain information from these former managers can be made through the formal discovery process, thereby striking an appropriate balance between Plaintiffs' interests in obtaining information from the former managers and Defendants' interests in preventing its former employees from making ex parte statements concerning decisions they made while still employed with Defendants' that may be imputed to Defendants[] in this case." (Id.).

Plaintiffs respond that Defendants have not shown any basis for obtaining a protective order preventing Plaintiffs' attorneys from having ex parte communications with Defendants' former managers and assert that there is no prohibition against such contact. (Doc. 37, Pl. Br., pp. 1-2). Plaintiffs argue that Rule 4.2 of the Georgia Rules of Professional Conduct does not prohibit Plaintiffs' counsel from contacting unrepresented former employees of Defendants, including former supervisors and managers. (Id., *passim*). The court agrees.

The Local Rules of this court provide: "All lawyers practicing before this court shall be governed by and shall comply with the specific rules of practice adopted by this court and, unless otherwise provided, with the Georgia Rules of

3

Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards." LR 83.1 C., NDGa. Rule 4.2 of the Georgia Rules of Professional Conduct provides in relevant part:

> (a) A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by constitutional law or statute.

Comment 4A to the Rule provides in relevant part:

> In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Defendants argue that Comment 4A "specifically broadens the scope of the Rule to include individuals other than just those currently employed by the corporation," because the "comment specifically refers to 'persons' and 'any other person,' not current employees," and that "it refers to the 'matter in representation,' not that the person must be represented in order for the Rule to apply." (Doc. 35, Def. Br., pp. 3-4). Defendants contend that "Rule 4.2 should be interpreted to cover not just current employees, but also those persons whose acts or omissions may be imputed to the corporation, which naturally includes former

4

employees." (Id. at p. 4).

In Sanifill of Georgia, Inc. v. Roberts, 502 S.E.2d 343 (Ga. App. 1998), cert. denied, 1998 Ga. LEXIS 976 (Ga. Oct. 2, 1998), the court considered arguments similar to those made by Defendants and rejected them.  The question presented in that case was "whether a plaintiff who has filed suit against a corporate defendant may conduct ex parte communications with a former employee of the defendant where the plaintiff is seeking to establish liability by imputing to the defendant the acts or omissions of the former employee." 502 S.E.2d at 344.  The court considered whether Standard 47 of Rule 4-102 of the Rules and Regulations of the State Bar of Georgia, the predecessor to the current Rule 4.2, prohibited a plaintiff's attorney from conducting such an ex parte interview.  502 S.E. 2d at 344.[1]   The court noted that American Bar Association Model Rule 4.2 is analogous to the Georgia rule:

> 'In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.'

Sanifill, 502 S.E. 2d at 344 and n. 2 (quoting ABA Model Rule 4.2).  The court considered the official ABA Comment to that rule (which is virtually identical to Comment 4A to the current Georgia Rule 4.2), which stated at that time:

---

[1] Standard 47 to Rule 4-102 provided in relevant part: "During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior written consent of the lawyer representing such other party or is authorized by law to do so."

5

> 'In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a (1) managerial responsibility on behalf of the organization and (2) with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability (3) or whose statement may constitute an admission on the part of the organization . . . .'

Id. at 344 (quoting ABA Comment to Model Rule 4.2).[2] The court noted that some courts have relied on that language to find that former employees may be "parties" because, as Defendants argue herein, "the term 'any other person' is broad enough to include former corporate employees." Id. The court also acknowledged that "[p]olicy considerations also support inclusion of former employees whose acts or omissions may result in vicarious liability, because their conduct remains imputable even though their employment may have terminated." Id. at 344-45.

Noting that "the rule only applies to a party 'represented by a lawyer,' " however, the court concluded that "[r]egardless of policy considerations, a former employee who is not represented by a lawyer simply does not fall within the wording of the rule." Id. at 345. The court noted that in 1991, the ABA Committee on Ethics and Professional Responsibility issued Formal Opinion 91-359, in which it acknowledged " 'persuasive policy arguments' " in favor of finding that some former corporate employees are covered within the "ambit" of Model Rule 4.2, and the court also noted the Committee's observation, " 'the fact remains that the text of the Rule does not do so and the comment gives no basis for

---

[2] Comment 7 to ABA Model Rule 4.2 now makes clear that "[i]n the case of a represented organization . . . [c]onsent of the organization's lawyer is not required for communication with a former constituent."

6

concluding such coverage was intended.'" Id. (quoting ABA Formal Opinion 91-359).

Finally, the court in Sanifill observed that a "majority of the courts which have considered the issue" have concluded that Model Rule 4.2, and the state's analogous rule, do not prohibit a party from communicating with unrepresented former employees of a corporate opponent without the consent of the corporation's counsel. Sanifill, 502 S.E. 2d at 345. In Georgia, Supreme Court of Georgia Formal Advisory Opinion 94-3 provides in relevant part:

> A lawyer may properly contact and interview former employees of an organization that is represented by counsel to obtain non-privileged information relevant to litigation against the organization provided that: (1) the lawyer makes full disclosure as to the identity of his/her client; and (2) the former employee consents.

See also Arnold v. Cargill Inc., No. 01-2086(DWF/AJB), 2004 U.S. Dist. LEXIS 19381, at *26 (D. Minn. Sept. 24, 2004) ("A majority of courts have held that, in general, *Rule 4.2* does not bar *ex parte* communications with an adversary's former employee who is not represented."); Smith v. Kalamazoo Ophthalmology, 322 F. Supp. 2d 883, 888 (W.D. Mich. 2004) ("A majority of courts that have considered the issue have held that *Rule 4.2* does not bar *ex parte* communications with an adversary's former employees who are not themselves represented in the matter."); Dondore v. NGK Metals Corp., No. 00-1966, 2001 U.S. Dist. LEXIS 6268, at *4 (E.D. Pa. May 16, 2001) ("Whether the special relationship encompassed within Rule 4.2 extends to former managerial employees, who are not otherwise represented, is a more difficult question, but

7

courts have generally held that the Rule does not prohibit such communications.") (citation omitted)); Cram v. The Lamson & Sessions Co., 148 F.R.D. 259, 264 (S.D. Iowa 1993) ("Since [the publication of the ABA's Formal Opinion 91-359], several courts have adopted the conclusion reached in the opinion and have held that Model Rule 4.2 does not bar *ex parte* communication with former employees.").

Because the State Bar Rules do not prohibit Plaintiffs' counsel from contacting Defendants' former managers and supervisors without the approval or presence of Defendants' counsel, and because Defendants have offered no other basis for prohibiting such contact, Defendants' motion for protective order [Doc. 35] is **DENIED**.[3]  Counsel for Plaintiffs and Defendants may communicate with Defendants' former employees, including supervisors and managers, without the presence or permission of opposing counsel, subject to the following conditions:

1) Counsel must first determine whether the person is represented by counsel, and if so, communication with that person must cease unless that person's attorney consents to the interview.

2) Counsel must identify themselves, explain who they represent, explain the nature of this litigation and the purpose for their desired communication.

3) Counsel must explain to the person that they are not required to talk to

---

[3] The court notes that Defendants made no particularized showing, with respect to any individual former manager or supervisor listed on Exhibit A to their motion, why ex parte contact with that individual should be prohibited or how Defendants would be harmed, such as by the disclosure of privileged or confidential information, if such contact were allowed.

8

counsel, and must confirm that the person consents to the interview. If the person does not want to talk to counsel, the interview must cease.

4) Plaintiffs' counsel must not elicit any privileged or confidential communications from the person and must instruct the person not to divulge any privileged or confidential communications.

**B.** **Defendants' Motion to Amend Answer [Doc. 43]**

Defendants move to amend their answer in order to assert the defense of judicial estoppel with respect to the claims of Plaintiffs Gwen Gee and Yolanda Bailey. (Doc. 43, pp. 2-3). Defendants assert that, upon receipt of Plaintiffs' discovery responses, Defendants learned that Gee and Bailey had previously filed for bankruptcy and had "failed to disclose their instant pending claims as a contingent asset in their bankruptcy proceedings thus justifying dismissal on a judicial estoppel theory." (Id. at 2). Plaintiffs respond that Defendants' motion should be denied because no good cause exists for Defendants' request to amend their answer after the deadline for such amendments has passed, and because the proposed amendment is futile. (See Doc. 48, Pl. Br., pp. 1, 5).

1. **Good Cause for Amendment**

"Typically, Federal Rule of Civil Procedure 15(a) governs the pre-trial amendment of pleadings and provides that, once a responsive pleading has been served, 'a party may amend the party's pleading only by leave of court . . . [and] leave shall be freely given when justice so requires.'" McGrotha v. Fed Ex Ground Package Sys., Inc., No. 5:05-CV-391(CAR), 2007 U.S. Dist. LEXIS 18794, at *4 (M.D. Ga. Feb. 24, 2007) (quoting Fed. R. Civ. P. 15(a)).  If a motion to amend is filed within the time prescribed by the scheduling order entered pursuant to Fed. R. Civ. P. 16, a court should evaluate whether amendment is proper under Rule 15's "freely given" standard.  See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) ("If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well").

However, it is well-settled in Eleventh Circuit case law that when a motion to amend is filed after the scheduling order's deadline, a party must first demonstrate good cause under Rule 16(b) before the court considers whether amendment is appropriate under Rule 15.  See Smith v. Sch. Bd. of Orange County, 487 F.3d 1361, 1366 (11th Cir. 2007) ("However, where a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted." (citing Rule 16(b) and Sosa, 133 F.3d at 1419)), cert. denied, 128 S. Ct. 2513 (2008); McGrotha, 2007 U.S. Dist. LEXIS 18794, at

*6 ("When a motion to supplement is filed after the scheduling order's deadline, however, a party must first demonstrate good cause under Rule 16(b) before a court can consider whether supplementation is proper under Rule 15(d)"); Datastrip Int'l Ltd. v. Intacta Techs., Inc., 253 F. Supp. 2d 1308, 1317 ("Courts evaluating motions to amend [filed after the scheduling order's deadline] must apply the good cause rubric of Rule 16 before considering whether amendments are proper under Rule 15 or 21.").

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)'s "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.' " Sosa, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note and citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end")). "In other words, good cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." Donahay v. Palm Beach Tours & Transp., Inc., 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citing Forstmann v. Culp, 114 F.R.D. 83, 85-86 (M.D. N.C. 1987)).

In this case, the deadline for filing motions to amend was thirty days after the parties filed their Joint Preliminary Report and Discovery Plan on February 25, 2009 [Doc. 19], a deadline that was approved by the court in its Scheduling Order [Doc. 21]. Defendants filed their motion to amend on July 9, 2009, well after the

11

deadline for filing such motions. Therefore, Defendants must show good cause why the court should allow Defendants to amend their answer.

Plaintiffs contend that Defendants have not shown good cause because Defendants were aware of Gee's and Bailey's bankruptcies prior to the filing of this lawsuit. (Doc. 48, p. 3). In support of this contention, Plaintiffs attach to their response earnings deduction orders that were sent from the Bankruptcy Court to Peachtree Doors and Windows concerning these plaintiffs while they were still employed, well prior to the filing of this lawsuit.

Even if the defendant companies were aware of Gee's and Bailey's bankruptcies during their employment, however, the bankruptcies alone do not give rise to a judicial estoppel defense. Rather, that defense rests on the failure to disclose claims, or potential claims, in a bankruptcy proceeding. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285-86 (11th Cir. 2002). While Plaintiffs have shown that Defendants were arguably on notice that Gee and Bailey had previously filed for bankruptcy, as evidenced by earnings deduction orders sent to Peachtree Doors and Windows Inc. (or to Peachtree Doors, Inc. or to Peachtree Doors and Windows) by the Bankruptcy Court (see attachments to Doc. 48), there is no evidence that Defendants understood the legal significance of those filings to a defense of judicial estoppel at the time they filed their answer, or until after they received information that, according to Defendants, shows that Gee and Bailey failed to disclose their claims during their bankruptcy proceedings. Furthermore, there is no evidence that Defendants' attorneys, in preparing

12

Defendants' answer, had knowledge that Gee and Bailey had filed bankruptcies and that they had allegedly failed to disclose their claims in their bankruptcy proceedings. Defendants represent, and Plaintiffs have not controverted, that they did not learn this information until receipt of Defendants' discovery responses.

Moreover, even if Defendants could have sought to amend their answer sooner, given the fact that discovery is not scheduled to end until December 25, 2009, and in the absence of any showing of prejudice to Plaintiffs, the court will not disallow the amendment as untimely. See, e.g., Saulsberry v. Morinda, Inc., 1:07-cv-01542-WSD, 2008 U.S. Dist. LEXIS 10512, at *6 (N.D. Ga. Feb. 12, 2008) ("reluctantly" allowing a plaintiff who filed her amendment ten days after the scheduling order deadline to amend her complaint, in part "because her delay in seeking the amendment was minor" and because the amendments did not prejudice the defendant, although the plaintiff apparently had made no attempt to show good cause).

### 2. Futility of Amendment

Plaintiffs argue that Defendants should not be allowed to amend their answer to assert a judicial estoppel defense because that amendment is futile. (Doc. 48, Pl. br., pp. 5-6). Citing Muse v. Accord Human Res., Inc., 129 F. App'x 487 (11th Cir. 2005)(unpublished decision), Plaintiffs argue that judicial estoppel does not bar Gee's and Bailey's claims because their claims arose after their bankruptcy plans were confirmed and their claims, therefore, were not part of their bankruptcy estates. (Doc. 48, pp. 7-8). Therefore, according to Plaintiffs,

13

"neither had a duty to disclose anything and, consequently, cannot be penalized now for failing to disclose that which she had no obligation to reveal." (Id. at 8). Plaintiffs also argue that judicial estoppel is inappropriate because there is no evidence that Gee and Bailey were attempting to manipulate the judicial process, or that either of them "gained any advantage or derived any benefit from her failure to [disclose her claims]." (Id. at pp. 8-9).

While the court may eventually find that Gee's and Bailey's claims are not barred on the ground of judicial estoppel, the court cannot determine, on the state of the record before it, that the defense is futile. Plaintiffs may make their arguments and factual assertions concerning this defense in the event Defendants seek dismissal of Gee's and Bailey's claims on this ground.

Accordingly, Defendants' Motion for Leave to Amend Defendants' Answer and Affirmative Defenses [Doc. 43] is **GRANTED**. The Clerk is **DIRECTED** to file Defendants' First Answer and Affirmative Defenses, attached to their motion as Exhibit A.

### Summary

Defendants' Motion for Protective Order [Doc. 35] is **DENIED**. Defendants' Motion for Leave to Amend Defendants' Answer and Affirmative Defenses [Doc. 43] is **GRANTED**.

**IT IS SO ORDERED** this 25th day of August, 2009.

*Susan S. Cole*

        SUSAN S. COLE
        United States Magistrate Judge