# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>This document relates to:<br>CONSUMER TRACK<br>*Abramson et al. v. Equifax Inc.*,<br>No. 1:18-cv-1466-TWT and<br>*Acosta-Smith et al. v. Equifax Inc.*,<br>No. 1:18-cv-1467-TWT |

## EQUIFAX'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT ......................................................................................5

I.    PLAINTIFFS' DAMAGES RECITALS DO NOT PRECLUDE THE
EXERCISE OF REMOVAL JURISDICTION. ...............................6

II.    THE AMOUNT IN CONTROVERSY EXCEEDED $75,000 FOR ANY
PLAINTIFF AT THE TIME OF REMOVAL. .............................10

    A.    Equifax's Burden Is the Preponderance of the Evidence....................10

    B.    Plaintiffs' Allegations of Economic Damages Place
Approximately $7,761 in Controversy Per Plaintiff. ..........................12

    C.    Emotional Distress Verdicts in Analogous Cases Indicate that
the Amount in Controversy Is Met.......................................................13

    D.    Jury Awards for Punitive Damages Further Establish that the
Amount in Controversy Is Met.............................................................16

    E.    Even Assuming Each Plaintiff's Monetary Recovery Is Limited
to $74,000, the Complaints Satisfy the Amount in Controversy
Requirement Because They Also Seek Nonmonetary Relief. ............18

III.    THE POST-REMOVAL STIPULATIONS DO NOT DIVEST THE
COURT OF JURISDICTION. ....................................................22

CONCLUSION ..................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................

CERTIFICATE OF SERVICE ................................................................

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramson et al. v. Equifax Inc.*,
   No. 1:18-cv-1466-TWT (N.D. Ga.)............................................................*passim*

*Acosta-Smith et al. v. Equifax Inc.*,
   No. 1:18-cv-1467-TWT (N.D. Ga.)............................................................*passim*

*Allstate Leasing Corp. v. Smith*,
   47 Cal. Rptr. 636 (Ct. App. 1965) .......................................................19

*Anderson v. Conwood Co.*,
   34 F. Supp. 2d 650 (W.D. Tenn. 1999) ..............................................16

*Arizona v. ASARCO LLC*,
   773 F.3d 1050 (9th Cir. 2014) (en banc) .............................................17

*Boateng v. Morrison Mgmt. Specialists, Inc.*,
   No. 1:11-cv-00142-RWS, 2011 WL 2420381 (N.D. Ga. June 13,
   2011) .......................................................................................................17

*Boris v. Choicepoint Servs., Inc.*,
   249 F. Supp. 2d 851 (W.D. Ky. 2003)..................................................16

*Burns v. Windsor Ins. Co.*,
   31 F.3d 1092 (11th Cir. 1994) .......................................................7, 11

*Chase v. Shop 'n Save Warehouse Foods, Inc.*,
   110 F.3d 424 (7th Cir. 1997) .................................................................9

*Church v. CMH Homes, Inc.*,
   No. 2:12-CV-03619, 2013 WL 12290247 (S.D. W. Va. Mar. 8,
   2013) .........................................................................................................9

*Damele v. Mack Trucks, Inc.*,
   267 Cal. Rptr. 197 (Ct. App. 1990) .......................................................8

*De Aguilar v. Boeing Co.* ("*De Aguilar I*"),
    11 F.3d 55 (5th Cir. 1993) ...............................................................24

*De Aguilar v. Boeing Co.* ("*De Aguilar II*"),
    47 F.3d 1404 (5th Cir. 1995) .........................................................7, 8

*Drew v. Equifax Info. Servs., LLC*,
    No. C 07-00726 SI, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010) ...................17

*Elec. Funds Sols. v. Murphy*,
    36 Cal. Rptr. 3d 663 (Ct. App. 2005) ..................................................8

*Exum v. State Farm Fire & Cas. Co.*,
    821 F. Supp. 2d 1285 (M.D. Ala. 2011) ..........................................23

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005)..............................................................10, 21

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*,
    329 F.3d 805 (11th Cir. 2003) ......................................................23

*Goodrich v. Fisher-Price, Inc.*,
    No. 1:16-cv-3116-TWT, 2016 WL 9223893 (N.D. Ga. Dec. 15,
    2016) ...........................................................................16

*Harris v. Aghababaei*,
    81 F. Supp. 3d 1278, 1280–81 (M.D. Ala. 2015)...............................11

*Hestrin v. CitiMortgage, Inc.*,
    No. 2:14-cv-9836-SVW-AJW, 2015 WL 847132 (C.D. Cal. Feb.
    25, 2015) ......................................................................19

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23,
    2016) ...........................................................................21

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)..............................................................21

*Jackson v. Wilmington Trust, Nat'l Ass'n*,
   No. 1:17-cv-2616-CC-JKL, 2017 WL 8218941 (N.D. Ga. Oct. 24,
   2017), *adopted*, No. 1:17-cv-2616-CC-JKL, ECF No. 16 ............................9, 11

*Kim v. BMW Fin. Servs. NA LLC*,
   702 F. App'x 561 (9th Cir. 2017) ......................................................15

*LaFoy v. Fed. Ins. Co.*,
   No. 1:16-cv-1169-CC, 2016 WL 10567789 (N.D. Ga. Sept. 23,
   2016) ......................................................................................23

*Land Clearing Co. v. Navistar, Inc.*,
   No. CIV.A. 11-0645-WS-M, 2012 WL 206171 (S.D. Ala. Jan. 24,
   2012) ......................................................................................25

*Leaderman v. Quiktrip Corp.*,
   No. 1:16-cv-3955-WSD, 2017 WL 83325 (N.D. Ga. Jan. 10, 2017)...........12, 25

*Lowery v. Ala. Power Co.*,
   483 F.3d 1184 (11th Cir. 2007) ......................................................14

*Martin v. S.W. PCS, L.P.*,
   No. SA-03-CA-866-XR, 2003 WL 22477692 (W.D. Tex. Nov. 3,
   2003) ......................................................................................9

*Matera v. McLeod*,
   51 Cal. Rptr. 3d 331 (Ct. App. 2006), *as modified on denial of
   reh'g* (Dec. 15, 2006).....................................................................8

*Occidental Chem. Corp. v. Bullard*,
   995 F.2d 1046 (11th Cir. 1993) ......................................................21

*Patel v. Nike Retail Servs., Inc.*,
   58 F. Supp. 3d 1032 (N.D. Cal. 2014)...............................................8

*Poore v. Am.-Amicable Life Ins. Co.*,
   218 F.3d 1287 (11th Cir. 2000), *overruled in part on other grounds
   by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639 (11th Cir. 2007) ......................22

iv

*Pretka v. Kolter City Plaza II, Inc.*,
    608 F.3d 744 (11th Cir. 2010) ...................................................................11, 14

*Rental Dev. Corp. of Am. v. Lavery*,
    304 F.2d 839 (9th Cir. 1962) ............................................................................20

*Sierminski v. Transouth Fin. Corp.*,
    216 F.3d 945 (11th Cir. 2000) ..........................................................................23

*Signal Hill Aviation Co. v. Stroppe*,
    158 Cal. Rptr. 178 (Ct. App. 1979) .............................................................8, 20

*Sloane v. Equifax Info. Servs., LLC*,
    510 F.3d 495 (4th Cir. 2007) ............................................................................15

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938)......................................................................................22, 25

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013).......................................................................................7, 8

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)..........................................................................................17

*Thomas v. Countrywide Home Loans*,
    No. 3:11-CV-399-WKW, 2012 WL 527482 (M.D. Ala. Feb. 17,
    2012) .................................................................................................................25

*Tucker v. Northbrook Indem. Co.*,
    No. 2:13-cv-1857-WMA, 2013 WL 5961095 (N.D. Ala. Nov. 7,
    2013) .................................................................................................................17

**Statutes**

28 U.S.C. § 1332...............................................................................4, 11, 21, 24

28 U.S.C. § 1446.......................................................................................7, 8, 11

Cal. Civ. Code § 1785.31 ..................................................................................19

Cal. Civ. Code § 1798.84 ..................................................................................19

Cal. Civ. Code § 3295(e) ............................................................................8

Federal Courts Jurisdiction and Venue Clarification Act, Pub. L. No.
    112-63, 125 Stat. 758 (2011) ....................................................................10, 11

**Other Authorities**

Erika Harrell, U.S. Dep't of Justice, Bureau of Justice Statistics,
    Victims of Identity Theft, 2014 (revised Nov. 13, 2017), *available
    at* https://www.bjs.gov/content/pub/pdf/vit14.pdf.............................................12

# INTRODUCTION

Hundreds of lawsuits have been filed relating to the cybersecurity incident that Defendant Equifax Inc. ("Equifax") announced on September 7, 2017. Although the U.S. Judicial Panel on Multidistrict Litigation ("JPML") created this MDL proceeding for the consistent handling of lawsuits stemming from that incident, Plaintiffs contend that they should be allowed to litigate their claims outside the MDL in California state court where these cases were originally filed. Even though both complaints seek compensatory and punitive damages, attorney's fees, and unspecified nonmonetary relief, Plaintiffs contend that the Court lacks removal jurisdiction—and thus that these cases must be remanded—because the complaints recite that they seek no more than "$74,000 per plaintiff" in compensatory damages, punitive damages, and attorney's fees. This recital does not deprive this Court of jurisdiction.

As Equifax's removal papers show, the amount in controversy between any single Plaintiff and Equifax exceeds $75,000. And even if each Plaintiff's damages and attorney's fees are capped at $74,000, their additional, uncapped requests for nonmonetary relief would push them over the jurisdictional threshold. Under California law, Plaintiffs are not barred from recovering more than they demanded in their complaints (and, in fact, are prohibited from capping their claim

for punitive damages), and they could amend their complaints at any time to seek additional damages.

Implicitly acknowledging these defects in their attempt to evade federal jurisdiction, Plaintiffs submitted stipulations with their renewed motion to remand, purporting to eschew nonmonetary relief and any monetary award over $74,000. But these post-removal stipulations are irrelevant:  The question is whether jurisdiction existed *at the time of removal*—it did—and under settled law, Plaintiffs cannot escape federal jurisdiction by filing stipulations or amending their pleadings after removal.

Accordingly, this Court has jurisdiction over these actions and should deny Plaintiffs' motion to remand.

## BACKGROUND

The JPML created an MDL in this District to coordinate or consolidate the hundreds of putative class action and non-class action lawsuits that have been filed following the cybersecurity incident Equifax announced on September 7, 2017. Although the present cases indisputably raise the same factual and legal issues as the other cases pending in the MDL, Plaintiffs have consistently attempted to evade the MDL proceeding and federal court jurisdiction.

Plaintiffs' counsel initially filed these two separate suits in Orange County

Superior Court, one on behalf of Katiushka Acosta-Smith and 49 additional named Plaintiffs and the other on behalf of Ashley Abramson and 49 additional named Plaintiffs. *See Acosta-Smith et al. v. Equifax Inc.*, No. 1:18-cv-1467-TWT (N.D. Ga.); *Abramson et al. v. Equifax Inc.*, No. 1:18-cv-1466-TWT (N.D. Ga.).[1] In their nearly-identical complaints, Plaintiffs alleged that Equifax failed to adequately safeguard their personal information and that criminal hackers were thus able to infiltrate Equifax's information systems and steal that information. They asserted claims for negligence, violations of the California Consumer Credit Reporting and Consumer Records Acts, and conversion. And both complaints sought a full suite of relief, including compensatory damages, punitive damages, and attorney's fees in unlimited amounts, and other further relief. *See generally Acosta-Smith*, ECF No. 1-1; *Abramson*, ECF No. 1-2.

Equifax first removed *Acosta-Smith* to the Central District of California on the basis of diversity jurisdiction. *Acosta-Smith*, ECF No. 1-2. Having learned that federal jurisdiction likely existed over their case as well, the *Abramson* Plaintiffs amended their complaint the same day, purporting to limit each Plaintiff's damages and attorney's fees to $74,000. Am. Compl. at 10, *Abramson*,

---

[1] These are the current designations for these cases. Citations to documents in *Acosta-Smith* and *Abramson* refer to these dockets and the related ECF numbers; document titles are omitted unless directly relevant to the pending motion.

3

ECF No. 1-4.  The very next day, the *Acosta-Smith* Plaintiffs voluntarily dismissed their federal court case, *Acosta-Smith*, ECF No. 1-3, and refiled their case against Equifax in state court, also purporting to limit each Plaintiff's damages and attorney's fees to $74,000, Compl. at 10–11, *Acosta-Smith*, ECF No. 1-5.

Concluding that Plaintiffs' tactics did not preclude federal jurisdiction, Equifax removed both cases to federal court on the basis of diversity jurisdiction. The Notices of Removal establish that there is complete diversity between the parties and that the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a)(1).  *See generally* Removal Notice, *Abramson*, ECF No. 1; Removal Notice, *Acosta-Smith* ECF No. 1.  Plaintiffs in both cases then moved to remand the cases to state court.  *Abramson*, ECF No. 9; *Acosta-Smith*, ECF No. 9.

Equifax noticed both *Abramson* and *Acosta-Smith* as potential "tag along" actions to the JPML, which conditionally transferred the cases to this MDL. Plaintiffs moved to vacate the conditional transfer orders, despite established JPML precedent holding that a pending motion to remand does not counsel against transfer to an MDL.  *In re Equifax*, MDL No. 2800, ECF Nos. 635, 651.

Meanwhile in the district court, Equifax opposed Plaintiffs' motions to remand and moved to stay pending the JPML's final decision on transfer.  The district court granted Equifax's motions to stay, *Acosta-Smith*, ECF No. 23;

4

*Abramson*, ECF No. 10, and the JPML then denied Plaintiffs' motions to vacate, transferring these actions to this Court, *In re Equifax*, ECF No. 713.

In due course, and pursuant to the schedule in CMO-5, Plaintiffs renewed their motions to remand. Mot. Remand, *In re Equifax*, No. 1:17-md-2800-TWT, ECF No. 350. Plaintiffs do not contest that there is complete diversity between the parties. *Id.* Their sole contention is that the amount in controversy does not exceed $75,000. Plaintiffs submitted post-removal stipulations with their renewed motion to remand, purporting to waive each Plaintiff's "right to recover or accept[] an amount in excess of $74,000" for "all forms of damages" and "attorney's fees" and to disclaim any request for nonmonetary relief, *id.* at 30–31, apparently attempting to oust this Court of jurisdiction. In other words, although Plaintiffs were notified that Equifax intended to seek a federal forum for these cases when Equifax removed the first iteration of *Acosta-Smith*, they waited *almost four months* to file these stipulations. But because the amount in controversy was met at the time of removal, Plaintiffs' belated stipulations are too little, too late, and they do not divest this Court of its removal jurisdiction.

## ARGUMENT

This Court should deny Plaintiffs' motion to remand because it has diversity and supplemental jurisdiction over these cases.

5

The diversity statute's $75,000 amount in controversy requirement is satisfied.  Each Plaintiff seeks compensatory damages, punitive damages, statutory punitive damages, and attorney's fees.  Although their complaints contain recitals purporting to limit any monetary award to $74,000 per Plaintiff, these recitals do not preclude the exercise of diversity jurisdiction.  Among other reasons, the recitals are not binding and irrevocable, and under California law, the recitals do not affect any Plaintiff's ability to recover more than $74,000.  But even if each Plaintiff were limited to $74,000 in damages and attorney's fees (and they are not), Plaintiffs' requests for additional nonmonetary relief are enough to push any Plaintiff over the jurisdictional threshold.

Furthermore, setting aside the complaints' ineffective damages recitals, the amount in controversy requirement is otherwise satisfied, as Equifax demonstrated in its removal papers.

Finally, Plaintiffs' post-removal stipulations have no bearing on this Court's jurisdiction.  Under settled law, post-removal filings cannot divest a federal court of jurisdiction that attached at the time of removal.

This Court should, therefore, deny Plaintiffs' motion to remand.

## I.   PLAINTIFFS' DAMAGES RECITALS DO NOT PRECLUDE THE EXERCISE OF REMOVAL JURISDICTION.

Plaintiffs seek compensatory damages, punitive damages, and attorney's

fees, purportedly subject to a cap of "$74,000 per plaintiff."  Am. Compl. at 10, *Abramson*; Compl. at 10–11, *Acosta-Smith*.  These artful recitals do not preclude the exercise of federal jurisdiction.  Although a plaintiff may in certain circumstances "avoid removal to federal court . . . by stipulating to amounts at issue that fall below the federal jurisdictional requirement," "the key characteristic about those stipulations is that they are *legally binding*."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (emphasis added).  Or, as the Fifth Circuit put it, "[l]itigants who want to prevent removal *must file a binding stipulation or affidavit with their complaints*."  *De Aguilar v. Boeing Co.* ("*De Aguilar II*"), 47 F.3d 1404, 1412 (5th Cir. 1995) (alteration in original) (emphasis added) (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095–96 n.6 (11th Cir. 1994) (noting, in light of modern-day state pleading rules, a plaintiff cannot avoid federal jurisdiction simply by requesting less than the jurisdictional amount in its complaint).  The removal statute likewise confirms that where a plaintiff demands less than the jurisdictional amount, diversity jurisdiction is nonetheless present "if . . . the State practice . . . permits recovery of damages in excess of the amount demanded."  28 U.S.C. § 1446(c)(2)(A)(ii).

Here, the damages recitals in Plaintiffs' complaints are not "binding,"

*Knowles*, 568 U.S. at 595; *De Aguilar II*, 47 F.3d at 1412, and California law clearly "permits [the] recovery of damages in excess of the amount demanded" in Plaintiffs' complaints, § 1446(c)(2)(A)(ii).  Under California's "rules of pleading and practice, the plaintiff *is not limited to the damages specified in his complaint.*" *Damele v. Mack Trucks, Inc.*, 267 Cal. Rptr. 197, 202 (Ct. App. 1990) (emphasis added); *see also Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1036 (N.D. Cal. 2014) ("[U]nder California law, a plaintiff is *not limited* to the amount set forth in his or her complaint." (emphasis added)).  And California courts "routinely resolve variances between pleading and proof by allowing amendment before, during, and after trial." *Signal Hill Aviation Co. v. Stroppe*, 158 Cal. Rptr. 178, 183 (Ct. App. 1979).[2]

Courts in this Circuit and elsewhere routinely hold that to effectively preclude removal, a plaintiff must enter a binding pre-removal stipulation or affidavit.  *See Jackson v. Wilmington Trust, Nat'l Ass'n*, No. 1:17-cv-2616-CC-

---

[2] Furthermore, California law *does not permit* a plaintiff to cap her punitive damages. Cal. Civ. Code § 3295(e); *Matera v. McLeod*, 51 Cal. Rptr. 3d 331, 343 (Ct. App. 2006) ("A complaint in any action must not allege an amount of punitive damages."), *as modified on denial of reh'g* (Dec. 15, 2006); *Elec. Funds Sols. v. Murphy*, 36 Cal. Rptr. 3d 663, 674 (Ct. App. 2005) (same).  Thus, even if Plaintiffs' damages recitals were otherwise effective (and they are not), they impose no limitation on Plaintiffs' request for punitive damages.  *See De Aguilar II*, 47 F.3d at 1413 (disregarding specific prayer for relief that violated state court pleading rules).

JKL, 2017 WL 8218941, at *5 (N.D. Ga. Oct. 24, 2017) (recommending remand where plaintiff stipulated to a recovery below $75,000 before removal in verified state-court complaint), *adopted*, No. 1:17-cv-2616-CC-JKL (N.D. Ga. Mar. 3, 2018), ECF No. 16; *Chase v. Shop 'n Save Warehouse Foods, Inc.*, 110 F.3d 424, 430 (7th Cir. 1997) (affirming denial of motion to remand where plaintiff failed to file binding stipulation with her complaint); *accord Church v. CMH Homes, Inc.*, No. 2:12-cv-03619, 2013 WL 12290247, at *2–3 (S.D. W. Va. Mar. 8, 2013) (denying motion to remand premised on recital in complaint that damages were "not to exceed $75,000" because that recital was not a "formal, truly binding" stipulation and was "not a good faith assertion of the true amount in controversy," but rather was "designed to thwart removal"); *Martin v. S.W. PCS, L.P.*, No. SA-03-CA-866-XR, 2003 WL 22477692, at *3 (W.D. Tex. Nov. 3, 2003) (denying motion to remand where complaint alleged damages were limited to $74,000 and where plaintiff offered post-removal affidavit as to amount in controversy; reasoning that "'[l]itigants who want to prevent removal must file a binding stipulation or affidavit *with their complaints*'" (alteration in original) (emphasis added) (citation omitted)).

Because Plaintiffs' recitals are not binding or irrevocable, and because Plaintiffs did not file binding stipulations with their complaints, diversity

jurisdiction exists over their claims and their cases are removable.

## II.  THE AMOUNT IN CONTROVERSY EXCEEDED $75,000 FOR ANY PLAINTIFF AT THE TIME OF REMOVAL.

Because Plaintiffs' damages recitals do not preclude removal, Equifax needs only to show, by a preponderance of the evidence, that the amount in controversy requirement was met for at least one Plaintiff in each case at the time of removal. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) (holding that the amount in controversy requirement need only be met for one plaintiff in a multi-plaintiff action for a federal court to have jurisdiction over the entire action). Plaintiffs' requests for "actual damages, including economic loss and emotional distress," and punitive damages push the matter in controversy over $75,000 for at least one Plaintiff, based on the allegations in their complaints and jury verdicts in analogous cases.[3] *See* Am. Compl. ¶ 19, *Abramson*; Compl. ¶ 19, *Acosta-Smith*.

### A.  Equifax's Burden Is the Preponderance of the Evidence.

Prior to the passage of the Federal Courts Jurisdiction and Venue Clarification Act ("JVCA"), Pub. L. No. 112-63, 125 Stat. 758 (2011), the Eleventh Circuit required a removing defendant to prove to a "legal certainty" that the plaintiff could not recover less than the jurisdictional amount, even if the

---

[3] Equifax denies that Plaintiffs have been damaged or are entitled to any recovery; it provides these amounts simply to demonstrate that the allegations in the complaints place a sufficient amount in controversy to establish jurisdiction.

relevant state law would allow him to recover more. *See Burns*, 31 F.3d at 1097. The court adopted that test in *Burns*, in part, because it was "unwilling, without congressional guidance" to make removal dependent on inconsistent state laws. *Id.*

When Congress passed the JVCA, it abrogated *Burns*. Now, "if the initial pleading seeks . . . a money judgment," removal is proper if the Court finds, "*by the preponderance of the evidence*," that the amount in controversy exceeds $75,000. JVCA, § 103, 125 Stat. at 760 (emphasis added) (codified at 28 U.S.C. § 1446(c)(2)(A)(ii), (B)); 28 U.S.C. § 1332(a); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (explaining that a removing defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it").

Courts in this Circuit have correctly applied the preponderance standard set out in the statute instead of the legal certainty test when the plaintiff's pleadings sought less than the jurisdictional amount. *See, e.g.*, *Harris v. Aghababaei*, 81 F. Supp. 3d 1278, 1280–81 (M.D. Ala. 2015) (collecting other cases in this Circuit); *see also Jackson*, 2017 WL 8218941, at *6 (suggesting the *Burns* test has been

superseded by the JVCA but declining to reach the issue).[4]   This Court, too, should apply the removal statute as written, and ask whether the amount in controversy for any Plaintiff more likely than not exceeded $75,000 at the time of removal.

### B.   Plaintiffs' Allegations of Economic Damages Place Approximately $7,761 in Controversy Per Plaintiff.

Plaintiffs allege economic damages exceeding $7,761, according to *a report cited in their complaints*, which states that "victims of personal information fraud lost an average of $7,761."  Erika Harrell, U.S. Dep't of Justice, Bureau of Justice Statistics, Victims of Identity Theft, 2014 at 7 (revised Nov. 13, 2017).[5]  Plaintiffs counter that they do not allege suffering identity theft—"only. . . that [they] have been placed at risk of suffering identity theft."  Mot. Remand at 19 (emphasis omitted).  Nonetheless, Plaintiffs describe the activities of "thieves and hackers" for nearly a full page of their complaints and allege that their "extremely valuable" "sensitive personal and financial information" was "compromised in this breach."

---

[4] In *Leaderman v. Quiktrip Corp.*, No. 1:16-cv-3955-WSD, 2017 WL 83325, at *1 (N.D. Ga. Jan. 10, 2017), the parties did not raise, and the Court did not decide, whether the JVCA abrogated the legal certainty test.

[5] Plaintiffs cited "a 2014 Department of Justice report on identity theft."  Am. Compl. ¶ 18, *Abramson*; Compl. ¶ 18, *Acosta-Smith*.  Equifax included the above quoted DOJ report in its Notices of Removal.  Plaintiffs do not dispute that it is the report their complaints refer to.  Mot. Remand at 18.  It is available at https://www.bjs.gov/content/pub/pdf/vit14.pdf.

Am. Compl. ¶ 16, *Abramson*; Compl. ¶ 16, *Acosta-Smith*.  And they further allege that they have been "forced to spend additional time monitoring their credit and finances as well as dealing with any potentially fraudulent activity" because these identity thieves can "assume [Plaintiffs'] identities . . . [to] open credit or bank accounts, apply for medical services, . . . apply for loans, forge checks, . . ., or file a fraudulent tax return."  Am. Compl. ¶¶ 16, 18, *Abramson*; Compl. ¶¶ 16, 18, *Acosta-Smith*.  The DOJ report Plaintiffs refer to in their complaints signals their intent to rely on this report's empirical data to support their allegations.  Thus, looking solely to the Plaintiffs' allegations, Equifax has shown by a preponderance of the evidence that at least $7,761 of economic damages per Plaintiff are at issue in each case.

### C.   Emotional Distress Verdicts in Analogous Cases Indicate that the Amount in Controversy Is Met.

Even if Plaintiffs do not seek approximately $7,761 in economic damages, their allegations of emotional distress are sufficient to meet the amount in controversy requirement.   Again citing to the same DOJ report, Plaintiffs' complaints allege that over a third of identity theft victims suffer "moderate or severe emotional distress."  Am. Compl. ¶ 18, *Abramson*; Compl. ¶ 18, *Acosta-Smith*.  They further allege that each Plaintiff "has experienced substantial and ongoing emotional distress, which has sometimes manifested in physical

13

symptoms, as a result of the data breach."  Am. Compl. ¶¶ 20, 43, *Abramson*;
Compl. ¶¶ 20, 43, *Acosta-Smith*.

In its Notices of Removal, Equifax cited cases in which plaintiffs were
awarded emotional distress damages for harms arising out of the breach of their
personal identifying information.  Plaintiffs contend that Equifax's reliance on
these jury verdicts amounts to "speculation" and that the Court is barred from
basing its decision on "results in other lawsuits or from limited facts about the
injuries."  Mot. Remand at 16–17 (citing *Lowery v. Ala. Power Co.*, 483 F.3d
1184, 1210–11 (11th Cir. 2007)).  But *Lowery* held only that the other verdicts the
defendants cited in that case did not support jurisdiction because the record was
"bereft of detail" that the case at bar and the other cases were factually similar.
483 F.3d at 1221.  And the Eleventh Circuit later clarified that in *Lowery* it "took
pains to emphasize" that the "record . . . contained only 'naked pleadings.'"
*Pretka*, 608 F.3d at 753 (quoting *Lowery*, 483 F.3d at 1209).  Unlike the situation
in *Lowery*, the pleadings here are not naked.  They provide sufficient factual matter
to allow the Court to compare Plaintiffs' alleged injuries to the injuries in the cases
cited in Equifax's removal papers and this brief.  As the Eleventh Circuit later
affirmed, a defendant may rely on the pleadings and "evidence combined with
reasonable deductions, reasonable inferences, or other reasonable extrapolations."

14

*Id.* at 754.

Similarly, Plaintiffs ignore *Kim v. BMW Financial Services NA LLC*, 702 F. App'x 561 (9th Cir. 2017), in which the Ninth Circuit upheld a jury verdict of $150,000 in noneconomic damages awarded to a victim of identity theft who claimed that the defendant insufficiently investigated a questionable credit account reporting on his file.  In *Kim*, the plaintiff did not suffer "psychological illness," "actual identity theft," or "serious medical problems" as Plaintiffs contend, Mot. Remand at 24, but rather three denials of credit and a reduced credit rating before the inaccurate credit account was removed from his file.  Still, this showing of emotional distress was sufficient to sustain an award of $150,000.  *Kim*, 702 F. App'x at 562–63.

Likewise, in *Sloane v. Equifax Information Services, LLC*, 510 F.3d 495 (4th Cir. 2007), the plaintiff alleged that Equifax failed to correct errors in her credit report.  *Id.* at 497.  She offered evidence of "emotional distress, chronic anxiety, and frustration" over a twenty-one-month period, with descriptions of "humiliation and anger she experienced."  *Id.* at 503.  She also alleged that the distress manifested in some "physical symptoms."  *Id.* at 503-04.  The court found that the evidence supported an award of $150,000 for emotional distress.  *Id.* at 507. Plaintiffs, by comparison, allege "*significant* stress and anxiety" and "*substantial*

*and ongoing* emotional distress, which has sometimes manifested in physical symptoms."  Am. Compl. ¶¶ 18, 20, *Abramson* (emphasis added); Compl. ¶¶ 18, 20, *Acosta-Smith* (emphasis added).  These cases support Equifax's contention that Plaintiffs' allegations place more than $75,000 in damages in controversy for each Plaintiff.  *See also Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851, 860–61 (W.D. Ky. 2003) (finding plaintiff's worry and anxiety that persisted roughly 2.5 hours a day supported jury award of $75,000 for emotional distress resulting from inaccurate reporting of insurance claims); *Anderson v. Conwood Co.*, 34 F. Supp. 2d 650, 651, 655–56 (W.D. Tenn. 1999) (finding plaintiff's testimony of worry, stress, and anxiety supported emotional distress damages of $50,000 on Fair Credit Reporting Act claim).

### D.   Jury Awards for Punitive Damages Further Establish that the Amount in Controversy Is Met.

Plaintiffs also seek punitive damages for Equifax's allegedly willful and/or malicious conduct.  Am. Compl. ¶¶ 28, 32, 38, 44, *Abramson*; Compl. ¶¶ 28, 32, 38, 44, *Acosta-Smith*.  "The law is clear that '[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered unless it is apparent to a legal certainty that such cannot be recovered.'"  *Goodrich v. Fisher-Price, Inc*., No. 1:16-cv-3116-TWT, 2016 WL 9223893, at *1 (N.D. Ga. Dec. 15, 2016) (alteration in original) (quoting *Holley Equip. Co. v. Credit*

16

*Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)). This Court has previously looked to verdicts in other cases in assessing whether a claim for punitive damages establishes the amount in controversy. *See, e.g., Boateng v. Morrison Mgmt. Specialists, Inc.*, No. 1:11-cv-00142-RWS, 2011 WL 2420381, at *2 (N.D. Ga. June 13, 2011) (reviewing punitive damages awarded on similar claims but ultimately finding the fact patterns were too different to support jurisdiction).[6]

As Equifax noted in its removal papers, a California district court has awarded a plaintiff $700,000 in punitive damages for improperly handling personally identifying information. *See Drew v. Equifax Info. Servs., LLC*, No. C 07-00726 SI, 2010 WL 5022466, at *3 (N.D. Cal. Dec. 3, 2010). Furthermore, the Supreme Court has stated that a 9:1 ratio between punitive damages and actual damages is permissible. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). The Ninth Circuit has even upheld awards at a ratio of 300,000:1 under extraordinary circumstances. *Arizona v. ASARCO LLC*, 773 F.3d 1050, 1061 (9th Cir. 2014) (en banc); *see also Tucker v. Northbrook Indem. Co.*, No. 2:13-cv-1857-WMA, 2013 WL 5961095, at *1 (N.D. Ala. Nov. 7, 2013) (relying

---

[6] The cases Plaintiffs rely on are inapposite. *See* Mot. Remand at 21–23. In those cases, either the removing defendant proffered no evidence of punitive damages awards in similar cases or the court found that the proffered cases were not analogous to the case at bar.

on punitive damages ratios of 1:1 to 121:1 upheld by Alabama Supreme Court in assessing whether amount in controversy was met and concluding mere ratio of 0.5:1 would establish the amount in controversy).

Applying the 9:1 ratio to just the $7,761 economic damages amount referenced in the DOJ report yields a prospective punitive damages award of $69,849 and a total potential damages amount of $77,610 per Plaintiff.  Applying merely a 0.5:1 ratio to (i) economic damages of $7,761 and (ii) an award of emotional distress damages of, *e.g.*, $43,000, yields a prospective punitive damages award of $25,380.50, for a total award of $76,141.50.  To be clear, Equifax does not believe that any Plaintiff is entitled to any damages at all, much less a five-figure award including punitive damages.  But for jurisdictional purposes, the complaints clearly place more than $75,000 per Plaintiff in controversy.  Equifax has, therefore, carried its burden of showing by a preponderance of the evidence that the amount in controversy is satisfied.

### E.    Even Assuming Each Plaintiff's Monetary Recovery Is Limited to $74,000, the Complaints Satisfy the Amount in Controversy Requirement Because They Also Seek Nonmonetary Relief.

The complaints assert claims for violations of the California Consumer Credit Reporting Act and the California Consumer Records Act; they also assert a claim for common law conversion.  Even assuming Plaintiffs' *monetary* recovery

18

is limited to $74,000, Plaintiffs also appear to seek nonmonetary and equitable relief under these causes of action.  The Consumer Credit Reporting Act provides that "[i]njunctive relief shall be available to any consumer aggrieved by a violation or a threatened violation of this title whether or not the consumer seeks any other remedy under this section."  Cal. Civ. Code § 1785.31.  Likewise, the Consumer Records Act states that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."  Cal. Civ. Code § 1798.84.  And a plaintiff suing for conversion is permitted to seek relief in the form of an injunction ordering the "specific recovery of the property."  *E.g.*, *Allstate Leasing Corp. v. Smith*, 47 Cal. Rptr. 636, 639 (Ct. App. 1965).

Although the recitals in Plaintiffs' complaints purport to limit their damages to "$74,000 per plaintiff including compensatory damages, punitive damages and attorney's fees," nowhere in their complaints do Plaintiffs disavow equitable or injunctive relief *or* purport to subject that type of relief to any monetary cap.  *See Hestrin v. CitiMortgage, Inc*., No. 2:14-cv-9836-SVW-AJW, 2015 WL 847132, at *1-2 (C.D. Cal. Feb. 25, 2015) ("[Plaintiff's] waiver, by its own terms, applies only to *damages*—it does nothing to affect the value of the injunction he seeks. Since the Court must consider the value of potential equitable relief, which itself exceeds the jurisdictional threshold, the complaint's [damages] limitation is

19

immaterial." (internal citations omitted)).

To the contrary, while the complaints request certain specific categories of relief, they also request "other and further relief as the court may deem proper." Am. Compl. at 11, *Abramson*; Compl. at 11, *Acosta-Smith*.   And both the California Court of Appeals and the Ninth Circuit have held that such a request constitutes a request for equitable and injunctive relief.  *See Stroppe*, 158 Cal. Rptr. at 183; *Rental Dev. Corp. of Am. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962).  For purposes of calculating the amount in controversy, the Court should thus treat the complaints as requesting any equitable and injunctive relief embraced within the complaints' allegations.

The gravamen of Plaintiffs' claims is that Equifax improperly failed to safeguard Plaintiffs' personally identifying information and that as a result criminal hackers were able to infiltrate Equifax's information systems and steal that information.  Injunctive relief sought in these cases could thus take the form of an order requiring Equifax to enhance the security of its information systems and internal controls.  *See* Am. Compl. ¶ 14, *Abramson*; Compl. ¶ 14, *Acosta-Smith*. (alleging Equifax failed "to exercise due diligence in the hiring, training and supervision of its employees who were entrusted with Plaintiffs' confidential information [and] by failing to take and maintain adequate computer security

20

measures to protect this confidential information from unauthorized access"). Further, the Supreme Court has held that for purposes of calculating the amount in controversy, declaratory or injunctive relief is "measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *see Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993).

Here, there is no question that an injunction requiring Equifax to enhance its data security systems would be valuable to Plaintiffs and thus would further satisfy § 1332(a)'s threshold. *See, e.g.*, *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (finding that "the injunctive components of the Settlement are of valuable benefit to the Class and especially important in the context of this case because Home Depot is bound for a period of two years following execution of the Settlement Agreement to implement and maintain enhanced security measures designed to detect and prevent this type of harm from occurring again"). Indeed, since Plaintiffs have alleged no less than $74,000 in damages, the value of the injunctive relief would only need to be *$1,000* for the Court to have diversity jurisdiction over a single Plaintiff's claim and supplemental jurisdiction over the other Plaintiffs' claims. *See Exxon Mobil Corp.*, 545 U.S. at 549 (holding that a

21

court may exercise jurisdiction over claims below jurisdictional threshold so long as one plaintiff's claim exceeds the jurisdictional amount).  Therefore, even if the Court determines that Plaintiffs have effectively limited their monetary recovery to $74,000, the Court should hold that Plaintiffs' requests for nonmonetary relief pushes their claims over the jurisdictional threshold.

## III.   THE POST-REMOVAL STIPULATIONS DO NOT DIVEST THE COURT OF JURISDICTION.

When Equifax removed these cases, the amount in controversy exceeded $75,000 and removal jurisdiction attached.  In an attempt to defeat federal jurisdiction, Plaintiffs rely on damages stipulations they filed nearly four months *after* Equifax removed these cases to federal court.  These stipulations do not change the amount Plaintiffs' complaints placed in controversy.

As the Supreme Court established long ago, whether removal jurisdiction exists is evaluated based on the record as it existed at the time of removal.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal[.]").  And where "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."  *Id.* at 292; *see also Poore v. Am.-Amicable Life Ins. Co.*, 218 F.3d 1287, 1291 (11th Cir. 2000) (same),

*overruled in part on other grounds by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 640–41 (11th Cir. 2007).[7]

Courts in this Circuit have routinely found that post-removal stipulations like Plaintiffs' do not divest courts of diversity jurisdiction. *See, e.g.*, *Exum v. State Farm Fire & Cas. Co.*, 821 F. Supp. 2d 1285, 1294–95 (M.D. Ala. 2011) (refusing to remand based on plaintiff's post-removal affidavit); *LaFoy v. Fed. Ins. Co.*, No. 1:16-cv-1169-CC, 2016 WL 10567789, at *2 (N.D. Ga. Sept. 23, 2016) (finding plaintiff's post-removal offer to stipulate to damages below $75,000 insufficient to divest the court of jurisdiction). Rather, such post-removal evidence is only relevant inasmuch as it "sheds light on the situation which existed when the case was removed"; but it is irrelevant if, as here, it does not relate "to that period of time." *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (quotations and citations omitted).

Here, the post-removal stipulations are not relevant to what the amount in controversy was at the time of removal. Plaintiffs' initial complaints sought an

---

[7] Plaintiffs' reliance on *Federated Mutual Insurance Co. v. McKinnon Motors, LLC* is misplaced. These cases are in a markedly different procedural posture, and, unlike the defendant in that case, Plaintiffs are bound by their state-court pleadings that, along with Equifax's removal papers, establish that the amount in controversy is met. *Cf.* 329 F.3d 805, 806–07 (11th Cir. 2003) (affirming grant of *defendant's motion to dismiss* for lack of subject matter jurisdiction).

unlimited award of damages and attorney's fees.  Only after Equifax removed the first iteration of *Acosta-Smith* did Plaintiffs add recitals to their complaints purporting to limit their monetary awards.  This Court should not countenance these manipulative tactics.[8]  *See De Aguilar v. Boeing Co.* ("*De Aguilar I*"), 11 F.3d 55, 58 (5th Cir. 1993) (rejecting plaintiffs' post-removal stipulations and affirming denial of motion to remand because plaintiffs' previous complaints demanded more than the jurisdictional amount for the same injuries).  Regardless, Plaintiffs' recitals would not have prevented Plaintiffs from recovering more than the jurisdictional amount in California state court, and the complaints otherwise establish that the amount in controversy was met at the time of removal.  Though Plaintiffs *now* purport to stipulate that they will not accept any award over $74,000, that does not change the fact that that the amount in controversy was satisfied at the time of removal.  The stipulations are too little, too late.

The cases Plaintiffs rely on do not show otherwise.  In those cases, the plaintiffs' initial complaints were ambiguous as to the amount in controversy, and the post-removal evidence clarified that the amount in controversy fell below

---

[8] Likewise, the decision to pursue two separate actions on behalf of 50 Plaintiffs (instead of a single action on behalf of all 100) alleging the same facts, asserting the same claims, and seeking the same relief, can only be explained as an attempt to avoid the "mass action" provision of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11)(B)(i).

$75,000.  *See Land Clearing Co. v. Navistar, Inc.*, No. CIV.A. 11-0645-WS-M, 2012 WL 206171, at \*1 n.2, \*3–4 (S.D. Ala. Jan. 24, 2012) (remanding where complaint contained conflicting *ad damnum* clauses and plaintiff's counsel *clarified* it was the result of inadvertence); *Thomas v. Countrywide Home Loans*, No. 3:11-CV-399-WKW, 2012 WL 527482, at \*4, \*7–8 (M.D. Ala. Feb. 17, 2012) (finding post-removal stipulation *clarified* that the named plaintiff's individual damages were below the jurisdictional amount because the putative class complaint was silent on individualized damages).[9]  These cases are inapplicable here because Plaintiffs' stipulations do not clarify any ambiguity in their complaints; they purport to reduce the amount in controversy—exactly what *Red Cab Co.* held a plaintiff *cannot do*.

Because jurisdiction properly attached at the time of removal, Plaintiffs' post-removal stipulations do not divest this Court of jurisdiction.

## CONCLUSION

This Court should deny Plaintiffs' motion to remand because this Court has diversity and supplemental jurisdiction over these cases.

---

[9] In *Leaderman*, *supra* note 4, the defendant offered no explanation or evidence of the amount in controversy in its removal papers.  *Id.* at \*2.  The Court could have remanded the case on that basis alone, so its partial reliance on the post-removal stipulation was dicta.  Regardless, Equifax showed in its removal papers that the amount in controversy here exceeds $75,000 for any Plaintiff.

DATED:  October 22, 2018          Respectfully Submitted,


*/s/  David L. Balser*
**KING & SPALDING LLP**
David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

DATED:  October 22, 2018

*/s/ David L. Balser*
David L. Balser

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser