# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 <br> No. 1:17-md-2800-TWT |
| This document relates to: <br><br> FINANCIAL INSTITUTIONS | Chief Judge Thomas W. Thrash, Jr. |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE FINANCIAL
## INSTITUTIONS' CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................1

ARGUMENT .......................................................................................................3

I.   Plaintiffs Fail to Allege Plausible Factual Allegations Establishing
     Article III Standing. ..................................................................................3

     A.   The FI Plaintiffs Cannot Rely on Generic, Collective
          Allegations. ......................................................................................3

     B.   Plaintiffs' Theory of Standing is Unprecedented. .............................5

     C.   The FI Plaintiffs' Allegations of Standing Do Not Survive
          *Twombly* and *Iqbal*..........................................................................6

          1.   Plaintiffs Do Not Plausibly Plead That The Costs
               They Incurred To Mitigate An Increased Risk Of
               Fraud Is A Cognizable Injury That Equifax Caused...........6

          2.   Legal Compliance Is Not A Cognizable Injury
               Traceable to Equifax.................................................................8

     D.   The Association Plaintiffs Lack Standing.........................................9

II.  Plaintiffs' Opposition Misconstrues Georgia Law Demonstrating Why
     Their Negligence Claim Fails.................................................................10

     A.   The FI Plaintiffs Misapprehend Georgia Law Regarding
          Duty.................................................................................................10

          1.   There Is No General Duty to Protect Against
               Foreseeable Injury. ...............................................................11

          2.   The FI Plaintiffs' Allegations Fail to Establish that
               Equifax Voluntarily Assumed Any Additional Duty..........14

     B.   The FI Plaintiffs Do Not Allege Proximate Causation..................15

i

C.     The FI Plaintiffs Fail to Sufficiently Demonstrate An Injury or Damages.........................................................................18

D.     The FI Plaintiffs Misconstrue Georgia's Economic Loss Rule. .................................................................................19

III.     Plaintiffs' opposition does not save their Negligence *Per Se* claim. ........20

A.     The FTC Act Is Insufficiently Specific to Support A Negligence *Per Se* Claim. .................................................21

B.     The GLBA and Its Safeguards Rule Are Insufficiently Specific to Support a Negligence *Per Se* Claim. ...........................23

C.     The FI Plaintiffs Fail to Explain How They Have Pled Other Elements To Support Their Negligence *Per Se* Claim........24

IV.     The FI Plaintiffs Fail to Address the Deficiencies in Their Claim for Negligent Misrepresentation.........................................................24

V.     The FI Plaintiffs' Claims Under State Consumer Statutes Remain Subject to Dismissal.................................................................27

A.     The FI Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim Should Be Dismissed.............................................28

B.     The FI Plaintiffs Do Not Salvage Their Claims Under Foreign State Business-Fraud and Consumer-Protection Statutes. .......................................................................28

1.     Foreign States' Unfair and Deceptive Acts and Practices (UDAP) Laws Cannot Govern Conduct That Took Place In Georgia........................................28

2.     The FI Plaintiffs Fail to Rebut That Pleading Deficiencies Doom Their Compliant. ...................................30

3.     The FI Plaintiffs Cannot Shoehorn Their Unprecedented Claims Into Ill-Fitting Consumer Protection Statutes. ...................................................31

**VI.**   **The FI Card Plaintiffs' Claims Remain Inadequate.**................................**34**

      **CONCLUSION** ...........................................................................**35**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Marine, Inc. v. Continental Carbon, Inc.*,
481 F.3d 1302 (11th Cir. 2007) ..........................................................................17

*Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*,
426 F. Supp. 2d 1356 (N.D. Ga. 2006).............................................................26

*Amos v. City of Butler*,
529 S.E.2d 420 (Ga. Ct. App. 2000)...................................................................12

*Apex Oil Co. v. Jones Stephens Corp.*,
881 F.3d 658 (8th Cir. 2018) ...............................................................................32

*In re Apple iPhone Antitrust Litig.*,
11-CV-06714-YGR, 2013 WL 4425720 (N.D. Cal. Aug. 15, 2013)...................4

*In re Arby's Rest. Grp. Inc. Litig.*,
No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018).......2, 10, 23

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .............................................................................9

*Atlanta Nat'l Bank v. Bateman*,
94 S.E. 853 (Ga. Ct. App. 1918).........................................................................20

*Atwater v. Nat'l Football League Players Ass'n*,
No. CIVA 1:06CV1510 JEC, 2007 WL 1020848 (N.D. Ga. Mar.
29, 2007) ............................................................................................................27

*Badische Corp. v. Caylor*,
356 S.E.2d 198 (Ga. 1987) ...........................................................................11, 15

*Balleneger Paving Co. v. Gaines*,
499 S.E.2d 722 (Ga. Ct. App. 1998)...................................................................13

*Bans Pasta, LLC v. Mirko Franchising, LLC,*
7:13-CV-00360-JCT, 2014 WL 637762 (W.D. Va. Feb. 12, 2014)..................23

*In re Bates,*
09-51279-NPO, 2010 WL 2203634 (Bankr. S.D. Miss. May 27, 2010) .........................................................................................................24

*Beck v. McDonald,*
848 F.3d 262 (4th Cir. 2017) ...............................................................6

*U.S. ex rel. Beck v. Truradiation Partners Ark., LLC,*
No. 5:15-CV-5275, 2018 WL 2993539 (W.D. Ark. June 14, 2018)..................31

*Bellwether Comm. Credit Union v. Chipotle Mexican Grill, Inc.,*
17-CV-1102-WJM-STV, 2018 WL 5279468 (D. Colo. Oct. 24, 2018) .........................................................................................................22, 5

*Bishop v. Shorter Univ., Inc.,*
No. 4:15-CV-0033-HLM (N.D. Ga. June 4, 2015) ..............................27

*Black Radio Network, Inc. v. NYNEX Corp.,*
44 F. Supp. 2d 565 (S.D.N.Y. 1999) ..................................................33

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.,*
818 N.E.2d 1140 (N.Y. Ct. App. 2004) .............................................34

*Bradley Ctr., Inc. v. Wessner,*
296 S.E.2d 693 (Ga. 1982) ...........................................................12, 13

*Bravo v. United States,*
577 F.3d 1324 (11th Cir. 2009) ........................................................11

*Bumpers v. Cmty. Bank of N. Va.,*
747 S.E.2d 220 (N.C. 2013) ..............................................................32

*Byrd v. English,*
43 S.E. 419 (Ga. 1903) .................................................................16, 17

*City of Waukesha v. E.P.A.,*
320 F.3d 228 (D.C. Cir. 2003)...........................................................8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................................................................7

*Collins v. Athens Orthopedic Clinic*,
815 S.E.2d 639 (Ga. Ct. App. 2018)...................................18

*Common Cause/Georgia v. Billups*,
554 F.3d 1340 (11th Cir. 2009) ...........................................9

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ........................................3, 35

*Construction Lender, Inc. v. Sutter*,
491 S.E.2d 853 (Ga. Ct. App. 1997)...................................19

*Crane v. Johnson*,
783 F.3d 244 (5th Cir. 2015) ................................................8

*CSX Transp., Inc. v. Williams*,
608 S.E.2d 208 (Ga. 2005) .................................................11

*CTI Servs. LLC v. Haremza*,
797 F. Supp. 2d 1257 (N.D. Okla. 2011)............................33

*Doe v. Duling*,
782 F.2d 1202 (4th Cir. 1986) .............................................8

*In re Equifax*,
289 F. Supp. 3d 1322 (J.P.M.L. 2017) ...............................35

*First Choice Fed. Credit Union v. Wendy's Co.*,
CV 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)................23

*Foxworthy, Inc. v. CMG Life Servs., Inc.*,
No. 1:11-CV-2682-TWT, 2012 WL 1269127 (N.D. Ga. Apr. 16, 2012) ...........................................................................25

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000).............................................................9

*Gen. Elec. Co. v. Lowe's Home Centers, Inc.*,
608 S.E.2D 636 (Ga. 2005)...............................................................................19

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
888 F.3d 1198 (11th Cir. 2018) ...........................................................................9

*Golden v. Zwickler*,
394 U.S. 103 (1969)..............................................................................................8

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ...........................................................................4

*Healy v. Beer Institute*,
491 U.S. 324 (1989)..................................................................................28, 29, 30

*Hendon Properties, LLC v. Cinema Dev., LLC*,
620 S.E.2d 644 (Ga. Ct. App. 2005)..................................................................26

*Higgins v. Bank of Am., N.A.*,
No. 115CV01119ELRJFK, 2015 WL 12086083 (N.D. Ga. Sept.
22, 2015) .............................................................................................................26

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
No. 1:14-cv-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18,
2016) .......................................................................................................2, 10, 22

*Iannacchino v. Ford Motor Co.*,
888 N.E.2d 879 (Mass. 2008) ............................................................................32

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*,
773 F.3d 243 (11th Cir. 2014) .............................................................................8

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) .............................................................................7

*LabMD, Inc. v. Fed. Trade Comm'n*,
894 F.3d 1221 (11th Cir. 2018) ............................................................21, 22, 23

*Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) .......................................................................15, 16

*Legacy Acad., Inc. v. Mamilove, LLC*,
    761 S.E.2d 880 (Ga. Ct. App. 2014)..................................................23

*Leon v. Continental AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................31

*Lord v. WatPro, Inc.*,
    491 N.W.2d 1 (Minn. 1992) .............................................................33

*In re Lupron Litig.*,
    295 F. Supp. 2d 148 (D. Mass. 2003)..............................................31

*Malak v. First Nat'l Bank of Atlanta*,
    393 S.E.2d 267 (Ga. Ct. App. 1990).................................................20

*McAuley v. Wills*,
    303 S.E. 2d 258 (Ga. 1983) .............................................................15

*McConnell v. Ga. Dep't of Labor*,
    814 S.E.2d 790 (Ga. Ct. App. 2018)..........................................*passim*

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.*,
    692 F. Supp. 327 (S.D.N.Y. 1988) ...................................................31

*Newitt v. First Union Bank*,
    607 S.E.2d 188 (Ga. Ct. App. 2004)..................................................27

*Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*,
    CV09-2079-PHX-JAT, 2010 WL 1759453 (D. Ariz. Apr. 30,
    2010) .................................................................................................24

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002).................................................................32

*Pate v. Oakwood Mobile Homes, Inc.*,
    374 F.3d 1081 (11th Cir. 2004) ........................................................14

*Pedro v. Equifax, Inc.*,
    868 F.3d 1275 (11th Cir. 2017) .....................................................6, 7

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005) ...............................................................33

*Peterson v. Reeves*,
   727 S.E.2d 171 (Ga. Ct. App. 2012)...................................................13

*Pinero v. Jackson Hewitt Tax Serv. Inc.*,
   594 F. Supp. 2d 710 (E.D. La. 2009)....................................................1

*Raleigh & G.R. Co. v. Lowe*,
   28 S.E. 867 (Ga. 1897) .......................................................................20

*Rasnick v. Krishna Hospitality, Inc.*,
   690 S.E.2d 670 (Ga. Ct. App. 2010)...................................................11

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) ...............................................................6, 7

*Remax Mountain Co. v. Tabsum, Inc.*,
   634 S.E.2d 77 (Ga. Ct. App. 2006).........................................16, 17, 19

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ........................................................6, 7

*Robert & Co. Assocs. v. Rhodes-Haverty P'ship*,
   300 S.E.2d 503 (Ga. 1983) .................................................................26

*Rogers v. Omni Sol., Inc.*,
   No. 10-21588-CIV, 2010 WL 4136145 (S.D. Fla. Oct. 19, 2010)....................29

*Schernekau v. McNabb*,
   470 S.E.2d 296 (Ga. Ct. App. 1996)...................................................13

*SELCO Cmty. Credit Union v. Noodles & Co.*,
   267 F. Supp. 3d 1288 (D. Colo. 2017)................................................21

*Siever v. BWGaskets, Inc.*,
   669 F. Supp. 2d 1286 (M.D. Fla. 2009)..............................................34

*Smoot v. Physicians Life Ins. Co.*,
   87 P.3d 545 (N.M. Ct. App. 2003) .....................................................32

*State Farm v. Campbell*,
538 U.S. 408 (2003)..................................................................28

*Statler v. Dell, Inc.*,
775 F. Supp. 2d 474 (E.D.N.Y. 2011) ....................................33

*Stelts v. Epperson*,
411 S.E.2d 281 (Ga. Ct. App. 1991)........................................15

*Sun Trust Banks, Inc. v. Killebrew*,
464 S.E.2d 207 (Ga. 1995) .....................................................13

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ...............................................5, 6

*Swann v. Sec'y, Ga.*,
668 F.3d 1285 (11th Cir. 2012) ................................................7

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
117 F. Supp. 3d 722 (M.D.N.C. 2015) ....................................31

*Union Camp Corp. v. S. Bulk Indus., Inc.*,
386 S.E.2d 866 (Ga. Ct. App. 1989)........................................16

*United States v. Students Challenging Regulatory Agency Procedures
(SCRAP)*,
412 U.S. 669 (1973)...................................................................5

*Warner v. Arnold*,
210 S.E.2d 350 (Ga. Ct. App. 1974)........................................13

*Wells Fargo Bank, N.A. v. Jenkins*,
744 S.E.2d 686 (Ga. 2013) ...............................................10, 23

*Wells v. Willow Lake Estates, Inc.*,
390 F. App'x 956 (11th Cir. 2010) ............................................8

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) ...................................................7

**Statutes**

15 Okla. Stat. Ann. § 753(5), (7) .................................................................33

78 Okla. Stat. Ann. § 54(A) .........................................................................33

15 U.S.C. § 45 .............................................................................................21

Ark. Code Ann. § 4-88-113(f)(1)(A) ...........................................................32

N.Y. Gen. Bus. L. § 349 ..........................................................................33, 34

O.C.G.A. § 11-4-402.....................................................................................20

**Other Authorities**

16 C.F.R. §314 .............................................................................................23

16 C.F.R. §§ 314.1(a), 314.4.........................................................................23

16 C.F.R. § 314.3(a).....................................................................................23

RESTATEMENT (SECOND) OF TORTS §§ 323, 324A....................................14

WILLIAM L. PROSSER AND W. PAGE KEETON, THE LAW OF TORTS, §
    41 (5th ed. 1984).................................................................................17

## INTRODUCTION

The Opposition (Opp.) fails to save the FI Plaintiffs' deficient Complaint:

*First*, the FI Plaintiffs[1] invite the Court to create an unprecedented theory of standing by contending that they have suffered a cognizable injury that is fairly traceable to Equifax's conduct merely because they allegedly chose to spend time and money "evaluating" and "assessing" the impact of the Data Breach for their customers.  Unlike previous data breach lawsuits brought by financial institutions, the FI Plaintiffs' claims are not tied to actual losses by those institutions due to stolen payment card data, but to speculative expenses only loosely related to the consumer PII stolen in the Equifax data breach.  The logical conclusion of the FI Plaintiffs' argument is that companies suffering a data breach are subject to the claims of every business whose customers' PII was compromised.  This expansive theory is against the overwhelming weight of authority, and this Court should reject it.  The Court should not open the floodgates for unlimited strict liability.

*Second*, if the Court were to determine that the FI Plaintiffs have standing (which they do not), the FI Plaintiffs cannot escape the Complaint's failure to allege the elements necessary to support their negligence claim, including duty,

---

[1] Capitalized terms have the same meaning as in Equifax's Motion to Dismiss the Financial Institutions Consolidated Amended Complaint ("Mot."). Dkt. No. 435-1.

proximate cause, and damages.  The FI Plaintiffs rely—to the near-exclusion of other law—on this Court's *Home Depot*[2] and *Arby's*[3] cases. But not only do those cases deal exclusively with payment card claims (and not the overreaching, consumer PII claims asserted here), Georgia courts have rejected the aspects of those cases on which the FI Plaintiffs base their arguments.

***Third***, the FI Plaintiffs' Opposition does not save their negligence *per se* claims, which are predicated on statutes that do not announce clearly ascertainable standards of conduct.  The FI Plaintiffs also fail to explain how they have pled other requisite elements of that claim including causation and damages.

***Fourth***, the FI Plaintiffs fail to salvage their negligent misrepresentation claim.  They do not allege that the statements they point to are false.  They also do not plead that they have relied on those statements or that they were harmed.

***Fifth***, the FI Plaintiffs improperly seek recovery under a grab-bag of ill-fitting state consumer protection statutes.  But the FI Plaintiffs fail to meet the requisite pleading standard or to allege facts bringing Plaintiffs within the scope of those statutes.

---

[2] *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-cv-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016).

[3] *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018).

2

***Sixth***, the FI Card Plaintiffs fail to distinguish *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018), which dooms the limited subset of payment card claims asserted by the FI Card Plaintiffs here.

Equifax's Motion to Dismiss should be granted in its entirety.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE FACTUAL ALLEGATIONS ESTABLISHING ARTICLE III STANDING.

The Complaint does not contain plausible individualized factual allegations sufficient to show that Equifax's conduct cognizably harmed Plaintiffs.   And Plaintiffs stretch Article III standing beyond its breaking point by advocating for a theory of limitless liability that no court has accepted.

### A.   The FI Plaintiffs Cannot Rely on Generic, Collective Allegations.

The FI Plaintiffs' reliance on generic, collective allegations to establish their standing renders their Complaint insufficient.   *See* Mot. 14 (collecting cases dismissing complaints involving collective/generic allegations).   The FI Plaintiffs relegate their response to a footnote, suggesting that they need not rely on individualized factual allegations because Equifax's "negligence harmed Plaintiffs and the Class in uniform ways."   Opp. 11 n.5.   Although Equifax vigorously disputes that it was negligent or that the FI Plaintiffs and the putative Class were harmed in any way (let alone in a uniform way), this argument is beside the point.

3

In **all** cases, "Plaintiffs do not satisfy Article III standing with collective allegations . . . Plaintiffs must allege **facts** showing that **each** named Plaintiff has **personally** suffered an injury-in-fact." *In re Apple iPhone Antitrust Litig.*, 11-CV-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013) (emphases added); *see also Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("If [a named plaintiff] cannot show personal injury, then no article III case or controversy exists … This individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which the plaintiff belongs.") (internal quotation marks, alterations and citations omitted).

At most, Plaintiffs generically identify purported "injuries"—mostly unidentified expenditures of time and money voluntarily undertaken to "respond to" and "assess" the Equifax data breach—that they assert affected each or some of them.   Opp. 10-11.   But the Complaint is devoid of a single individualized allegation about the circumstances in which even one Plaintiff undertook these alleged expenditures.   Nor have the FI Plaintiffs included any individualized allegations about how an act or omission of **Equifax**—as opposed to the FI Plaintiffs' voluntary actions or the criminal hackers—caused the FI Plaintiffs harm. *E.g.*, *In re Apple iPhone Antitrust Litig.*, 2013 WL 4425720, at *6 (dismissing case

where plaintiffs failed to plead facts tying any theory of injury to a particular plaintiff).[4]

### B. Plaintiffs' Theory of Standing is Unprecedented.

It bears repeating that no court has ever recognized that a ***financial institution's*** decision to take steps to mitigate risk following a data breach involving ***consumer*** PII—such as names, SSNs, and contact information—can constitute a cognizable injury. Indeed, only a handful of courts have held that and individual's decision to take steps to mitigate the risk of identity theft can constitute an injury in fact to the individual whose PII was taken, and only in those cases in which the individual-plaintiff included sufficiently plausible facts to support their allegations that they faced a substantial risk of identity theft, by, for example, pointing to specific instances of fraud that had already occurred. *See In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (collecting cases); Opp. 20 (collecting cases). The Opposition does nothing to address the clear lack of precedent supporting Plaintiffs' claims.

---

[4] *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973) (Opp. 11 n.5) was decided before *Iqbal* and *Twombly*, does not concern pleading standards, and merely held that environmental groups had standing to challenge a governmental agency decision that would impact all of them in the same exact way. 412 U.S. at 684–85.

### C.     The FI Plaintiffs' Allegations of Standing Do Not Survive Twombly and Iqbal.

#### 1.     Plaintiffs Do Not Plausibly Plead That The Costs They Incurred To Mitigate An Increased Risk Of Fraud Is A Cognizable Injury That Equifax Caused.

The FI Plaintiffs' grounds for Article III standing largely boil down to an increased risk of fraud (Opp. 11-12, 17-21), and the voluntarily assumed costs of protecting against it (*id*. at 12-13). However, the FI Plaintiffs fail to appreciate the many cases that have held that plaintiffs ***did not*** sufficiently plead that they faced a substantial risk of harm in the wake of a data breach because the plaintiffs did not allege that fraud had occurred.  Mot. 18-22 (collecting cases).  The FI Plaintiffs try to distinguish these cases by pointing out that different types of information were accessed, or that there were no allegations as to the motive of the data thieves. Opp. 19-20.  But those cases ***held*** that the plaintiffs did not sufficiently plead a substantial risk of harm because they failed to allege that they incurred fraudulent charges on their payment cards or that fraudulent accounts had been opened.  *See In re SuperValu, Inc.*, 870 F.3d at 770; *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43-46 (3d Cir. 2011).[5]  As in

---

[5] Plaintiffs cite *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), and *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017), for the proposition that the expenditure of time and money in the wake of a data breach is a cognizable injury

these cases, the FI Plaintiffs merely assume that there may one day be fraudulent transactions (Opp. 11-12, 18-19) and do not plead facts showing that fraudulent transactions took place.[6]

The FI Plaintiffs' purported injuries are not "fairly traceable" to Equifax's conduct. *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288-89 (11th Cir. 2012). Rather, the FI Plaintiffs' alleged injuries are traceable, if anything, to their own speculation about "future events based on hypothetical future criminal acts." *Reilly*, 664 F.3d at 46. The allegation by the subgroup of FI Card Plaintiffs that they incurred costs to cancel and reissue payment cards (Opp. 16), absent any alleged facts showing that any cancelled payment card was used for a fraudulent charge, fails to confer standing for the same reasons. The FI Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

---

(Opp. 13) but there the plaintiffs alleged that they had actually become victims of identity theft. *Resnick*, 693 F.3d at 1323; *Pedro*, 868 F.3d at 1280.

[6] Only the Ninth Circuit suggests otherwise, but even in those cases at least **some** plaintiffs pled that their identity or accounts had been compromised, suggesting imminent harm to others who had not yet been directly affected. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1027-28 (9th Cir. 2018); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).

### 2.      Legal Compliance Is Not A Cognizable Injury Traceable to Equifax.

Plaintiffs fail to allege that laws are being actively enforced against them, as is required under the lone 11th Circuit case they cite to support their injury-from-compliance argument. *See, e.g.*, *Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010) (Opp. 15) (holding that the costs incurred by tenants in complying with regulations constituted an injury in fact where the defendant notified plaintiffs that it intended to evict them if they did not comply).[7]  The FI Plaintiffs must, at a minimum, show a threat of prosecution that is both real and immediate, which they have not alleged. *Golden v. Zwickler*, 394 U.S. 103, 109–10 (1969); *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986) ("[a] litigant must show more than the fact that state officials stand ready to perform their general duty to enforce laws").  Legal compliance expenditures do not suffice. *See Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 245 (11th Cir. 2014) (burden of compliance with law did not qualify as a sufficient injury under Article III); *Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015) (same).

---

[7] Plaintiffs also cite *City of Waukesha v. E.P.A.*, 320 F.3d 228 (D.C. Cir. 2003) (Opp. 15), but that case is inapposite; it involved a challenge to an agency rule that would have affected how associational members would operate their businesses.

### D.     The Association Plaintiffs Lack Standing.

The Association Plaintiffs (the 25 "associations or leagues" of financial institutions) rely on two theories of standing—diversion-of-resources and associational—both of which fail.  Opp. 23-24.  The Association Plaintiffs' ***one*** conclusory allegation that they diverted resources to assist harmed members—without a single alleged fact supporting it—is insufficient under *Twombly* and *Iqbal*.  *See Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203 (11th Cir. 2018) (rejecting this theory where the plaintiff offered no facts to support it).[8]  The Association Plaintiffs have also not sufficiently alleged that "[their] members would otherwise have standing to sue in their own right," *Arcia*, 772 F.3d at 1342, as explained above.  *See supra* I.A-C.  Independently, the Association Plaintiffs do not deny that they assert claims that will "require[] the participation of individual members in the lawsuit," *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000), because determining whether each member of the Association Plaintiffs has a claim will require the Court to make an individualized determination in each case.  Mot. 27.

---

[8] Plaintiffs' cases do not state otherwise.  Opp. 23 (citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (plaintiffs submitted evidence supporting their diversion-of-resources theory); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (same)).

## II.    PLAINTIFFS' OPPOSITION MISCONSTRUES GEORGIA LAW DEMONSTRATING WHY THEIR NEGLIGENCE CLAIM FAILS.

Independently, the FI Plaintiffs' allegations fail to sufficiently allege facts supporting claims upon which relief can be granted.  To succeed on a negligence claim, a plaintiff must offer sufficiently plausible factual allegations to support four elements: duty, breach, causation, and damages.  The FI Plaintiffs do not.

### A.    The FI Plaintiffs Misapprehend Georgia Law Regarding Duty.

The FI Plaintiffs' negligence claim fails because the Complaint does not allege a cognizable duty of care or that the breach of that duty caused injury to the FI Plaintiffs.  *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687 (Ga. 2013). The FI Plaintiffs rely heavily on two *Erie* predictions this Court made about whether Georgia recognizes a legal duty to safeguard personal information.  Opp. 25-27 (relying on *In re Arby's Rest. Grp. Inc. Litig.*, and *In re Home Depot, Inc., Cust. Data Sec. Breach Litig.*).  But the Georgia Court of Appeals has conclusively clarified the law in this area, holding that Georgia does not recognize the duty on which those rulings were premised.  *McConnell v. Ga. Dep't of Labor*, 814 S.E.2d 790, 799 (Ga. Ct. App. 2018) (*McConnell III*); Mot. Section II.A (explaining history of *McConnell* case).  The *McConnell III* court held that "a duty of care to safeguard personal information … has no source in Georgia statutory or caselaw," and that a negligence claim based on such a duty fails.  814 S.E.2d at 799.

*McConnell III* governs.  *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009).  The FI Plaintiffs' fail to distinguish *McConnell III*.

### 1. There Is No General Duty to Protect Against Foreseeable Injury.

The FI Plaintiffs seek to artificially narrow *McConnell III*'s broad holding by arguing that the decision applies only to *un*foreseeable data breaches.  That is incorrect—Plaintiff McConnell's complaint explicitly alleged that the harm to him and the putative class members was "reasonably foreseeable," Ex. 1 (1st Amended Complaint, *McConnell v. Ga. Dep't of Labor*, ¶¶ 26–27), and the Court of Appeals was required to accept that allegation for purposes of the appeal.[9]  Nevertheless, the Court did not even hint that its broad holding was limited only to *un*foreseeable data breaches.

In any event, the Georgia Supreme Court has repeatedly held that "mere foreseeability" is not a basis for imposing a duty of care.  *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 209 (Ga. 2005); *see also Rasnick v. Krishna Hospitality, Inc.*, 690 S.E.2d 670, 674 (Ga. Ct. App. 2010); *Badische Corp. v. Caylor*, 356

---

[9] Under Georgia's notice-pleading standard, McConnell was not required to plead more to establish foreseeability at the pleading stage, but would have been permitted to develop facts necessary to support his allegation of foreseeability during discovery.  *See McConnell III*, 814 S.E.2d at 796 (complaint is sufficient so long as "any state of provable facts [may be] asserted in support of" its allegations).

S.E.2d 198, 200 (Ga. 1987). Instead, "[n]egligence consists of exposing someone **to whom a duty of care is owed** to a foreseeable, unreasonable probability of harm." *Amos v. City of Butler*, 529 S.E.2d 420, 422 (Ga. Ct. App. 2000) (emphasis added). In other words, while a defendant is insulated from unforeseeable consequences, foreseeability is but one factor to be considered when evaluating the existence of a duty.[10]

The FI Plaintiffs state that "*McConnell III* is distinguishable because it did not address th[e] general duty of care" as set forth in *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982). Opp. 26. This is false. The Appellants' opening brief in *McConnell III* stated that "[i]n this case, as in *Bradley Center* . . . the **key issue** for consideration is whether the DOL owed a 'legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm.'" Ex. 2 (Br. of Appellant, *McConnell v. Ga. Dep't of Labor*, Appeal No. A16A0655, filed Oct. 31, 2017) (emphasis added). In any event, while dicta in *Bradley Center* broadly referred to a "general duty one owes to all the world not to subject them to an unreasonable risk of harm," the holding in that case applies to a narrow set of circumstances only, *viz.*, a physician owes an

---

[10] As it has been over a year since the Equifax data breach and Plaintiffs have failed to allege that even one allegedly "foreseeable" act of fraud has occurred, it can hardly be said that "foreseeability" factor is met here either.

"independent duty" to use reasonable care to prevent harm to others where the physician exercises "control" over a patient and "knows or should know that the patient is likely to cause bodily harm to others."   296 S.E.2d at 695.    In fact, *Bradley Center* noted that the doctor's duty was an "exception" to the "general rule [that] there is no duty to control the conduct of third persons to prevent them from causing physical harm to others," ***regardless*** of whether such harm is foreseeable. *Id* at 696; *see Peterson v. Reeves*,   727 S.E.2d 171, 179 (Ga. Ct. App. 2012) (noting *Bradley Center* is an exception).   *Bradley Center* does not establish that Georgia law recognizes a duty to protect against all "foreseeable" harms.

Finally, the FI Plaintiffs reliance on cases involving intervening acts does not support the existence of a duty here. In all of those cases the plaintiffs suffered injury to their person or property as a direct result of an allegedly foreseeable intervening act that had occurred.   *See Sun Trust Banks, Inc. v. Killebrew*, 464 S.E.2d 207, 211 (Ga. 1995) (plaintiff shot in parking lot); *Schernekau v. McNabb*, 470 S.E.2d 296, 298 (Ga. Ct. App. 1996) (child shot as a result of parents allowing another child to carry an air rifle); *Balleneger Paving Co. v. Gaines*, 499 S.E.2d 722, 724 (Ga. Ct. App. 1998) (plaintiff struck by drunk driver while working on construction site that had inadequate traffic control); *Warner v. Arnold*, 210 S.E.2d 350, 351 (Ga. Ct. App. 1974) (plaintiff's personal property was damaged as a

13

result of an allegedly foreseeable break-in). That is not at all like the FI Plaintiffs' theory here, which seeks recovery for *future* economic injuries that *could* be caused by an as-of-yet *uncommitted crime* (bank fraud) that could potentially be made possible by *another crime* (the Equifax data breach) in which *neither the FI Plaintiffs nor their property were involved*. This is clearly a bridge too far.

> ### 2. The FI Plaintiffs' Allegations Fail to Establish that Equifax Voluntarily Assumed Any Additional Duty.

The FI Plaintiffs' contention that Equifax "assumed" a special duty by collecting consumer PII also fails. Opp. 34-35. In *McConnell III*, the defendant also collected PII from the plaintiff, and yet the Court rejected the notion that the collection of the PII created any sort of duty to safeguard it. 814 S.E.2d at 796. Moreover, Georgia has adopted Section 324A of the Restatement (Second) of Torts governing an undertaking to protect another's property. *See Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1086 (11th Cir. 2004). Under that "good Samaritan" provision, a duty extends only to preventing *"physical harm"* to another's *person or property*. RESTATEMENT (SECOND) OF TORTS §§ 323, 324A (emphasis added). The FI Plaintiffs do not claim (and could not claim) any physical harm to their person or property. There is no additional "assumed" duty

at issue here.[11]

### B.     The FI Plaintiffs Do Not Allege Proximate Causation.

The FI Plaintiffs devote exactly one (unpersuasive) paragraph (Opp. 36) in response to Equifax's contention that the FI Plaintiffs' claims are deficient for failing to allege proximate causation (Mot. 35-39).  The FI Plaintiffs are incorrect when they contend that the sole "limiting principle in the causation analysis is foreseeability."  Opp. 36.  Even where an injury is "foreseeable," a court may find that a "plaintiff's injur[ies] are too remote for the law to countenance a recovery." *McAuley v. Wills*, 303 S.E. 2d 258, 260-61 (Ga. 1983); *see also Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) ("[F]oreseeability and direct injury (or remoteness) are distinct concepts, both of which must generally be established by a plaintiff."); *see, e.g.*, *Badische Corp.*, 356 S.E.2d at 200.

The FI Plaintiffs fail to address *Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*, which illustrates the difference between foreseeability and direct injury.  There, it was "foreseeable" that, by making smokers sick, cigarette manufacturers would increase the costs faced by organizations providing

---

[11] The case cited by the FI Plaintiffs—which involved a real estate agent voluntarily undertaking to obtain a property survey on the plaintiff's behalf—is inapposite. *Stelts v. Epperson*, 411 S.E.2d 281, 283 (1991).

healthcare benefits to smokers.  Nonetheless, the Second Circuit held that such costs were not recoverable: "[S]ubstituting the foreseeability test, in place of ***finding the existence of a direct injury***, is error.  As a general rule, proximate cause requires that both be present." *Laborers Local 17 Health & Benefit Fund,* 191 F.3d at 236 (emphasis added).  Indeed, the FI Plaintiffs' assertion that Equifax has "foreseeably" increased the costs they face (Opp. 35-36) is even more attenuated than the allegations that the Second Circuit dismissed in *Laborers Local 17* because the FI Plaintiffs fail to even allege that their customers have suffered actionable harm.

Nor has Equifax proximately caused harm to the FI Plaintiffs under Georgia law. As held in *Byrd v. English*, 43 S.E. 419 (Ga. 1903) and its progeny (Mot. 36-38), a defendant who negligently damages property is not subsequently liable to third-parties that rely on that property to conduct their businesses.  *See, e.g., Remax Mountain Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 (Ga. Ct. App. 2006) (defendant blocked road); *Union Camp Corp. v. S. Bulk Indus., Inc.*, 386 S.E.2d 866, 867 (Ga. Ct. App. 1989), *aff'd*, 388 S.E.2d 524 (Ga. 1990) (defendant cut off water supply); *Byrd*, 43 S.E. at 420 (defendant cut power line).   Under this line of cases, "foreseeability" does not even come into play.  The FI Plaintiffs' alleged "reliance" on the PII that "flows within the nation's credit reporting and verification system"

16

(Opp. 2) is no different than the plaintiffs in *Byrd*, *Remax*, and *Union Camp*'s reliance on power lines, roads, and water pipes to conduct their own businesses.[12] As in those cases, the FI Plaintiffs' claims here should be dismissed.

Finally, the FI Plaintiffs' theory of recovery demonstrates exactly why the law will not countenance attenuated and indirect claims of economic injury. Any number of businesses rely on consumer PII to verify identities (in much the same way that any number of businesses rely on roads, water pipes, and powers lines), and any number of third-parties may be impacted by the loss of an individual's PII (in much the same the same way that numerous third parties are impacted when an individual becomes sick from smoking). Such claims are nonetheless barred lest it "result in infinite liability for all wrongful acts," which "would set society on edge and fill the courts with endless litigation." WILLIAM L. PROSSER AND W. PAGE KEETON, THE LAW OF TORTS, § 41, p. 264 (5th ed. 1984) (internal quotation marks omitted). The Court should reject the FI Plaintiffs' attempt to obfuscate these clear boundaries of recovery.

---

[12] Plaintiffs cite *Action Marine, Inc. v. Continental Carbon, Inc*. (Opp. 36), but that case is unhelpful. Plaintiffs alleged that a facility emitted chemicals onto their property. 481 F.3d 1302 (11th Cir. 2007). Because the facility was alleged to have *directly* injured the plaintiffs' property, the *Action Marine* court was concerned with "factual causation" only. *Id.* at 1310-11 n.6.

17

**C.     The FI Plaintiffs Fail to Sufficiently Demonstrate An Injury or Damages.**

The FI Plaintiffs also have no right to recover for the "damages" they assert here, as the recent Georgia Court of Appeals opinion, *Collins v. Athens Orthopedic Clinic*, 815 S.E.2d 639 (Ga. Ct. App. 2018), establishes.  *See* Mot. 40-41.  The *Collins* court dismissed a class action complaint against an orthopedic clinic that suffered a data breach and lost the PII of approximately 200,000 patients.  *Collins*, 815 S.E.2d at 642.  The Court of Appeals affirmed, finding that "prophylactic costs anticipated or incurred to protect oneself against the threat of identity theft following a data breach" were not sufficient to establish the damages element of the *Collins* plaintiffs' tort claims.  *Id*. at 643-45.

The FI Plaintiffs argue that this Court should disregard *Collins* because the *Collins* plaintiffs "alleged only an 'increased risk of harm' and potential future costs." Opp. 36-37, n. 18.  That is incorrect.  The *Collins* plaintiffs alleged that:

- Plaintiffs' stolen PII, including SSNs, was posted for sale on the dark web and on Pastebin, a data storage website designed to facilitate the sharing of large amounts of data online.  *See* Ex. 3 (Complaint, *Collins v. Athens Orthopedic Clinic*, Case No. SU17CV0089, filed January 20, 2017, ¶ 20).

- "Shortly after the Athens Orthopedic data breach, Plaintiff Collins had fraudulent charges made using her credit card."  *Id*. ¶ 25.

- "Plaintiff Collins has spent time calling a credit reporting agency and placing a fraud or credit alert on her credit report to try to

18

contain the impact of the data breach." *Id*.
The FI Plaintiffs' allegations of harm are even more attenuated here because, other than the FI Card Plaintiffs, the FI Plaintiffs do not allege that the Equifax data breach impacted any information belonging to them and ***no*** Plaintiff alleges that fraudulent activity has actually occurred as a result of the Equifax data breach.

### D.     The FI Plaintiffs Misconstrue Georgia's Economic Loss Rule.

The economic loss rule also bars the FI Plaintiffs' tort claims.  Mot. 42-43. "Under  the economic loss rule, … a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another."  *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2D 636, 637 (Ga. 2005).  Even where no contract exists, the economic loss rule bars tort claims for purely economic damages.  *See Remax Mtn. Co..*, 634 S.E.2d at 79 & n.6.  The FI Plaintiffs attempt to skirt this rule by arguing that "Georgia courts routinely permit negligence claims to proceed even if only a financial loss is involved."  Opp. 37. The cases they cite, however, are inapposite in that they do not even discuss—let alone concern—the economic loss rule.  In fact, the cases involve situations where the defendant directly injured the plaintiff or the plaintiff's property.  *See Construction Lender, Inc. v. Sutter*, 491 S.E.2d 853, 856-57 (Ga. Ct. App. 1997) (defendant  bank  directly  dispersed  plaintiff's  money  (*i.e.,*  property)  to  a

homebuilder in contravention of the duty the bank assumed to obtain plaintiff's approval before any such disbursements); *Malak v. First Nat'l Bank of Atlanta*, 393 S.E.2d 267, 269-70 (Ga. Ct. App. 1990) (interpreting O.C.G.A. § 11-4-402 and holding that a jury should determine whether a bank's improper dishonor of plaintiff's check proximately caused foreclosure of plaintiff's property).[13]   As a result, whether phrased in terms of "duty," Section II.A, *supra*, "proximate cause," Section II.B, *supra*, or the "economic loss rule," the FI Plaintiffs' claims should meet the same end, as Georgia law does not allow for recovery of the speculative, indirect, and economic "damages" that the FI Plaintiffs seek here.

## III.   PLAINTIFFS' OPPOSITION DOES NOT SAVE THEIR NEGLIGENCE *PER SE* CLAIM.

To establish a negligence *per se* claim under Georgia law, Plaintiffs "must establish that a law was violated"; they fall "within the class of persons it was intended to protect"; "the harm complained of was the harm the statute was intended to guard against"; and "a causal connection between the negligence *per se* and the injury."  Mot. 43 (citing case law).  The FI Plaintiffs' Opposition does not

---

[13] Plaintiffs' reliance on *Atlanta Nat'l Bank v. Bateman*, 94 S.E. 853 (Ga. Ct. App. 1918) and *Raleigh & G.R. Co. v. Lowe*, 28 S.E. 867 (Ga. 1897) for the proposition that Georgia courts have previously found defendants liable where their "negligence exposes others to a risk of criminal financial fraud" (Opp. 30, 38) fares no better.  Those cases address the treatment of unendorsed promissory notes and bills of lading, and have no bearing here.

demonstrate that they have alleged any plausible facts to support these elements.

## A.   The FTC Act Is Insufficiently Specific to Support A Negligence *Per Se* Claim.

The FI Plaintiffs contend that "[m]aintaining data security measures that are unreasonable and insufficient to safeguard confidential consumer information is an unfair practice under Section 5" of the FTC Act and under state statutes based on that Act.  Opp. 40-43.  But negligence *per se* must be premised on a specific duty expressly imposed by a statute.  *See* Mot. 46-47 (citing cases).  Nothing in the FTC Act specifically or expressly identifies maintaining "unreasonable" "data security measures" as an "unfair practice."  *See* 15 U.S.C. § 45.  To the contrary, "[a]n act or practice," is "not unfair within Section 5(a)'s meaning" unless a statute, the common law, or the Constitution makes it so.  *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1229 (11th Cir. 2018).  Because, as discussed herein, there is no "statute," "common law," or Constitutionally-mandated duty to safeguard PII, the FTC Act cannot support the FI Plaintiffs' claim for negligence *per se*. *See McConnell III,* 814 S.E.2d at 799.

The FI Plaintiffs also cannot overcome the fact that, under any circumstances, the FTC Act does not apply to the kinds of non-competition-based, non-consumer claims being asserted here.  *See SELCO Cmty. Credit Union v. Noodles & Co.,* 267 F. Supp. 3d 1288, 1297 n.4 (D. Colo. 2017) ("Section 5 in

particular seeks to protect consumers and competitors from unfair trade practices . .
. Plaintiffs have alleged no harm from the destruction of competition, and they are
neither [defendant's] consumers nor its competitors, so they cannot recover under a
theory of negligence *per se* based on alleged violations of the FTC Act." (internal
alterations, quotation marks, and citations omitted)).   *LabMD* itself noted that, "at
the time of the FTC Act's inception, the FTC's primary mission was understood to
be the enforcement of antitrust law" and that ultimately Congress expanded the
FTC Act to "clarify that the FTC's authority applied not only to competitors but,
importantly, also to ***consumers***." *LabMD*, 894 F.3d at 1228 (emphasis added); *see
also Bellwether Comm. Credit Union v. Chipotle Mexican Grill, Inc.*, 17-CV-1102-
WJM-STV, 2018 WL 5279468, at *8 (D. Colo. Oct. 24, 2018) (dismissing
negligence *per se* claim based on FTC Action Section stemming from a payment
card related data on the grounds that the financial institution plaintiffs "are neither
consumer nor competitors of" the defendant and have not alleged "that they were
otherwise harmed by destruction of competition").

The FI Plaintiffs' contrary authority is inapposite.   Opp. 40-41.   *Home*

Case 1:17-md-02800-TWT   Document 497   Filed 11/01/18   Page 35 of 50

*Depot*, *Arby's*, and *Wendy's*[14] were all decided before *LabMD*.  And *Bans Pasta*

and *Legacy Academy* dealt with franchisee disputes unrelated to data security.  *See*

*Bans Pasta, LLC v. Mirko Franchising, LLC,* 7:13-CV-00360-JCT, 2014 WL

637762, at *12 (W.D. Va. Feb. 12, 2014) (FTC franchise rule); *Legacy Acad., Inc.*

*v. Mamilove, LLC,* 761 S.E.2d 880, 892 (Ga. Ct. App. 2014) (same).

### B.   The GLBA and Its Safeguards Rule Are Insufficiently Specific to Support a Negligence *Per Se* Claim.

The FI Plaintiffs do not dispute that GLBA itself is insufficiently specific to

form the basis of a negligence *per se* claim.  *See Wells Fargo Bank, N.A. v.*

*Jenkins,* 744 S.E.2d 686, 688 (Ga. 2013) (GLBA is just "an aspirational statement

of Congressional policy" that cannot form the basis of a negligence per se claim).

The FI Plaintiffs instead argue that the "safeguards rule," as expressed in 16 C.F.R.

§314, is sufficient to establish a duty to the FI Plaintiffs.  Opp. 43-44.  This

position is also untenable because the safeguards rule does not prescribe more

"ascertainable" conduct than the GLBA itself.  *See* 16 C.F.R. §§ 314.1(a), 314.4

(setting forth general requirement to "develop, implement, and maintain [an]

information security program").   None of the cases the FI Plaintiffs cite hold

---

[14] *First Choice Fed. Credit Union v. Wendy's Co.*, CV 16-506, 2017 WL 9487086, at *1 (W.D. Pa. Feb. 13, 2017), *report and recommendation adopted*, CV 16-506, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017).

otherwise.  Opp. 46 (citing *Owens v. Dixie Motor Co.*, No. 5:12-cv-389-FL, 2014 WL 12703392, at *19 (E.D.N.C. March 31, 2014) (containing no discussion of the safeguards rule other than to note that the defendant "was not aware of its objection [sic] under 16 C.F.R. § 314.3(a) . . . to have a written information security program."); *In re Bates*, 09-51279-NPO, 2010 WL 2203634, at *16 n.18 (Bankr. S.D. Miss. May 27, 2010) (addressing GLBA provisions unrelated to those at issue here and merely "assum[ing] without deciding that Mississippi would allow the GLBA to form the basis for a state law claim of negligence *per se*"); *Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*, CV09-2079-PHX-JAT, 2010 WL 1759453, at *3 (D. Ariz. Apr. 30, 2010) (rejecting claim).

### C. The FI Plaintiffs Fail to Explain How They Have Pled Other Elements To Support Their Negligence *Per Se* Claim.

The FI Plaintiffs' Opposition does not address their failure to allege facts demonstrating that they have suffered any cognizable injury proximately caused by Equifax, which is also grounds to dismiss their negligence *per se* claim. Mot. at 48.

## IV. THE FI PLAINTIFFS FAIL TO ADDRESS THE DEFICIENCIES IN THEIR CLAIM FOR NEGLIGENT MISREPRESENTATION.

The FI Plaintiffs also fail to plead sufficiently plausible facts to support the various elements of their negligent misrepresentation claim, including falsity, reasonable reliance, and "economic injury proximately resulting from such

reliance."  Mot. 49-51 (citing *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997).  First, the FI Plaintiffs fail to plead facts sufficient to support falsity, including "which representations were allegedly negligent, when those representations were made, and which Defendant made them."  *Foxworthy, Inc. v. CMG Life Servs., Inc.*, No. 1:11-CV-2682-TWT, 2012 WL 1269127, at *6 (N.D. Ga. Apr. 16, 2012) (Thrash, J.).  The FI Plaintiffs point to a few of Equifax's statements, the majority of which do not even concern what measures Equifax takes to protect PII, let alone contain any promise that Equifax made to the FI Plaintiffs to comply with any specific "industry data security protocols to ensure that the PII [i]s secure."  Opp. 49-50.[15]  Indeed, at least three statements do not concern data ***protection*** at all, such as the statement that "[f]urnishers who report data to Equifax play a vital role in helping identify credit risk and reduce financial losses throughout the entire credit granting community."  Opp. 49 (citing CAC [Dkt. No. 390] ¶ 124); *see also id.* (citing CAC ¶ 125 (first statement refers to "data excellence" and says nothing about data protection)); *see also id.* (citing CAC ¶ 127 (stating that Equifax "anticipat[es] and execute[s] on regulatory initiatives")).  As in *Foxworthy*, Equifax has insufficient notice of the

---

[15] Plaintiffs also do not identify who at Equifax made these statements and when, which is also fatal.  Mot. 50 (collecting cases).

facts underlying the FI Plaintiffs' negligent misrepresentation claim.

The FI Plaintiffs also fail to allege facts showing that they actually or justifiably relied on any alleged misrepresentation or omission.  The FI Plaintiffs cite Paragraphs 105, 123, and 134-36 of their Complaint (Opp. 51), but not one of these paragraphs contain allegations that the FI Plaintiffs actually (let alone justifiably) relied on the *statements* they identify in their Opposition.  The FI Plaintiffs suggest that they do not need to plead *justifiable* reliance because "such challenges are generally a question of fact that should not be resolved on a motion to dismiss."  Opp. 52.  But the case they cite does not support this argument.  *See Hendon Properties, LLC v. Cinema Dev., LLC*, 620 S.E.2d 644, 650-51 (Ga. Ct. App. 2005) (rejecting argument that "there can be no justifiable reliance on a promise which is unenforceable at the time it is made" because the "parties' agreement was not . . . necessarily enforceable at the time it was made").[16]  And

---

[16] Like *Hendon*, each of the other cases Plaintiffs cite to support their various arguments are inapposite.  *See Higgins v. Bank of Am., N.A.*, No. 115CV01119ELRJFK, 2015 WL 12086083, at *5 (N.D. Ga. Sept. 22, 2015) (Opp. 47) (plaintiff sufficiently alleged reliance on a statement that a tax lien would not negatively impact a credit statement); *Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 300 S.E.2d 503, 504 (Ga. 1983) (Opp. 47) (affirming summary judgment on the ground that a lack of privity will not shield a defendant from liability to a limited class of third parties); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1367-68 (N.D. Ga. 2006) (Opp. 48) (pre-*Twombly* and *Iqbal* case parsing how certain statements were made and rejecting argument that they

notably, the case the FI Plaintiffs append to the Opposition ***dismissed*** a negligent misrepresentation claim in a consumer data breach action because the plaintiffs failed to allege plausible facts supporting elements of their claim. *See, e.g.*, Dkt. 471-6 at 45-50 (attaching *Bishop v. Shorter Univ., Inc.*, No. 4:15-CV-0033-HLM (N.D. Ga. June 4, 2015)).

Finally, whether the FI Plaintiffs "relied" on Equifax's representations or not, the FI Plaintiffs cannot tie the damages they seek here to any such reliance. The FI Plaintiffs nowhere allege that, but for their reliance on Equifax's statements, they would have avoided taking the actions they allege they took in the wake of the Equifax data breach. The FI Plaintiffs' claim for negligent misrepresentation therefore fails. *See Newitt v. First Union Bank*, 607 S.E.2d 188, 196 (Ga. Ct. App. 2004) (negligent misrepresentation requires "actual economic loss proximately resulting from the defendants' negligent misrepresentation").

## V.    THE FI PLAINTIFFS' CLAIMS UNDER STATE CONSUMER STATUTES REMAIN SUBJECT TO DISMISSAL.

Numerous problems riddle the FI Plaintiffs' claims under state consumer

---

could be the basis for liability); *Atwater v. Nat'l Football League Players Ass'n*, No. CIVA 1:06CV1510 JEC, 2007 WL 1020848, at *2, 12 (N.D. Ga. Mar. 29, 2007) (Opp. 48 n. 25) (pre-*Twombly* and *Iqbal* case where plaintiff alleged that defendant falsely listed certain people and entities as registered financial advisors, which plaintiff relied on in making investment decisions).

statutes, which the Opposition does not meaningfully address.

**A.     The FI Plaintiffs' Georgia Fair Business Practices Act (GFBPA) Claim Should Be Dismissed.**

The FI Plaintiffs do not persuasively address the numerous reasons to dismiss their GFBPA claim, including that (1) *McConnell III* confirms that the GFBPA does not require safeguarding PII; (2) the FI Plaintiffs have not pled reliance; and (3) no Plaintiff has alleged damages caused by any misrepresentation. Mot. 52-53.  The FI Plaintiffs also concede that *McConnell III* considered at least one GFBPA provision to hold that it could not serve as the source of a duty to safeguard PII.  Opp. 64.

**B.     The FI Plaintiffs Do Not Salvage Their Claims Under Foreign State Business-Fraud and Consumer-Protection Statutes.**

**1.     Foreign States' UDAP Laws Cannot Govern Conduct That Took Place In Georgia.**

As a matter of black-letter Commerce Clause law, foreign states may not regulate commercial conduct that occurred entirely in Georgia.  Mot. 54–56; *State Farm v. Campbell*, 538 U.S. 408, 421–22 (2003) (it is a "basic principle of federalism" that "each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction").  "[T]he Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders ...."  *Healy v. Beer Institute*, 491 U.S. 324,

336 (1989) (quotation marks and alteration omitted).  That is true "whether or not the commerce has effects within" that foreign state.  *Id.*  It is also true even if "the statute's extraterritorial reach was intended by the legislature."  *Id.*  Most states have recognized this principle and have appropriately limited their statutes' reach as a matter of state law.  *See* Mot. 55 n.21.

The FI Plaintiffs reject this bedrock principle of constitutional federalism. Instead, they argue that lower-court cases somehow trump both the Constitution and the binding Supreme Court precedent interpreting it.  Opp. 55 n.27.  But even if the FI Plaintiffs' cited cases squarely addressed the legal issue this case presents, each of their cases differs from this one in a key respect:  in each, the plaintiff's claims stemmed from a direct commercial transaction they entered into with the defendant—for example, by buying a product or service.   Thus, there, the commercial conduct did not "tak[e] place wholly outside the [plaintiff's] State's borders."  *Healy*, 491 U.S. at 336; *see, e.g.*, *Rogers v. Omni Sol., Inc.*, No. 10-21588-CIV, 2010 WL 4136145, at *4-6 (S.D. Fla. Oct. 19, 2010) (application of Florida law "comports with the Due Process Clause of the Fourteenth Amendment" where defendant "negotiated the sale of goods to a customer who was in the state," shipped the product "to a retailer in Florida" and used a Florida resident as a "reference" for the product).

But here the FI Plaintiffs fail to allege that Equifax engaged in any purported misconduct outside Georgia. *See* CAC ¶¶ 107, 109, 110 (asserting only that Equifax is the second largest CRA and that its information databases are derived from "numerous sources"). And while the FI Plaintiffs may generically allege that Equifax sells "products" to banks, there is no allegation that those transactions form the basis of any claims asserted here. There is no commercial nexus between the Equifax data breach and the FI Plaintiffs' home states, and as a result the FI Plaintiffs cannot rely on foreign statutes to govern commercial conduct that *they concede* occurred entirely in Georgia. CAC ¶ 277 (Equifax's alleged negligence "emanated from Georgia"); *Healy*, 491 U.S. at 336.

### 2. The FI Plaintiffs Fail to Rebut That Pleading Deficiencies Doom Their Compliant.

#### a. The Court Should Reject The FI Plaintiffs' Argument Regarding Pleading Standards.

The FI Plaintiffs must, but have failed to, adequately plead fraud. Mot. 57-58. The FI Plaintiffs' position that "none of the statutes under which Plaintiffs bring claims . . . require Plaintiffs' to prove the strict elements of fraud" (Opp. 57) is incorrect. A number of the state statutes under which the FI Plaintiffs seek to proceed include heightened pleading standards similar to those governing fraud

claims.[17]  Notwithstanding the FI Plaintiffs' attempt to characterize their claims as relying on "unfair" conduct (Opp. 58), a review of their allegations reveals them to be riddled with generalized allegations of "misrepresentations" and "reliance." *E.g.,* CAC ¶¶ 350, 420, 506, 576, 600 (all generically asserting that subclass members relied on Equifax's "misrepresentations").  This Court should hold the FI Plaintiffs to heightened pleadings standards which the Complaint does not meet despite the FI Plaintiffs' generalized contentions otherwise (Opp. 60).

### 3. The FI Plaintiffs Cannot Shoehorn Their Unprecedented Claims Into Ill-Fitting Consumer Protection Statutes.

The FI Plaintiffs also miss that each of the state statutes on which they rely are either designed to protect consumers from exploitation in connection with

---

[17] Plaintiffs concede that Counts 6, 10, 13, 14, 22, and 24 are subject to a heightened pleading standard.  Opp. Ex. A-2 at 4, 8, 11–12, 19, 21.  Courts have similarly applied Rule 9(b) to claims under the statutes relied on in Counts 5, 7, 8, 11, 12, 16, and 20.  *See U.S. ex rel. Beck v. Truradiation Partners Ark., LLC*, No. 5:15-CV-5275, 2018 WL 2993539, at *2 (W.D. Ark. June 14, 2018) (dismissing ADTPA claim under Rule 9(b)); *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988) (dismissing both *unfair* and *deceptive* claims under CUTPA under Rule 9(b)); *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1227 (S.D. Fla. 2017) (concluding that FDUTPA claim based on fraud or deceptive conduct is subject to Rule 9(b)); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) (applying Rule 9(b) to LUTPA claims); *Mudler Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir. 2017) (concluding Ch. 93A claim is subject to Rule 9(b)); *In re Lupron Litig.*, 295 F. Supp. 2d 148, 180–81 nn.35–36 (D. Mass 2003) (concluding NCPA claim sufficiently pled under Rule 9(b)); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 734–35 (M.D.N.C. 2015) (concluding Rule 9(b) applies to NCUDTPA).

specific transactions, or to protect individuals from the direct consequences of conduct that is "unfair" or "deceptive" as to that individual.[18] The unprecedented theory of liability that the FI Plaintiffs assert—that the compromise of consumer information gives rise to claims on behalf of all manner of entities that "rely" on that consumer information—cannot be squared with these statutes.

***The FI Plaintiffs' Theory of Causation Is Unsupported By Any State Statutory Claim***.  The FI Plaintiffs concede, as they must, that the FI Plaintiffs must plead reliance for the deceptive practices claims[19] or, at a minimum, their claims must satisfy the basic principles of proximate causation.[20] The FI Plaintiffs'

---

[18] The Minnesota Plastic Security Card Act may be the lone exception, but that claim fails for other, independent reasons. *See* Mot. at 61.

[19] Plaintiffs concede that reliance is either required as a separate element or as part of proximate cause for Counts 6, 11, 13, 17, 21, 22, and 24.  Opp. Ex. A-2. Plaintiffs must concede that Count 23 also requires reliance for the same reason they concede Count 17 requires reliance.  Opp. Ex. A-2 14, 20.  Reliance is also required for Counts 5, 10, and 20.  *See Apex Oil Co. v. Jones Stephens Corp*., 881 F.3d 658, 662 (8th Cir. 2018) (holding reliance is required in the pre-2017 amendment version of the ADTPA); Ark. Code Ann. § 4-88-113(f)(1)(A) (requiring reliance post-2017 amendment of ADTPA); *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151, 161–62 (Ill. 2002) (holding plaintiff must be deceived to recover damages under the ICFA); *Bumpers v. Cmty. Bank of N. Va*., 747 S.E.2d 220, 226 (N.C. 2013) (holding that a claim under the NCUDTPA requires reliance).

[20] At a minimum, Counts 12, 18, 19, and 23 require proximate cause or a similar causal element.  *See Iannacchino v. Ford Motor Co*., 888 N.E.2d 879, 886 (Mass. 2008) (requiring plaintiff to show causal connection between the deception and the loss and the loss that was reasonably foreseeable as a result of the deception under Ch. 93A); *Smoot v. Physicians Life Ins. Co*., 87 P.3d 545, 550 (N.M. Ct. App.

do not meet these standards.  *See* Section II.B, *supra.*

> ### The FI Plaintiffs' Claims Are not Tied to Any Transaction With Equifax**.**

Although the FI Plaintiffs argue that they are "consumers" of Equifax's goods and services, the FI Plaintiffs ignore the additional requirement that their claims stem from *consumer transactions*.[21]  *See* Mot. 60 (counts 8, 10, 13, 19, 20, and 22 require consumer transactions); Dkt. No. 435-2 (supporting law).  While the FI Plaintiffs may have purchased Equifax goods and services in the broad sense, that does not make them a "consumer." And the FI Plaintiffs do not assert any claims stemming from those transactions.

---

2003) (claim under the NMUTPA requires proof of causal link between deceptive act and plaintiff's loss); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (noting that claim under N.Y. Gen. Bus. L. § 349 requires proof of injury "as a result of" challenged practice); 78 Okla. Stat. Ann. § 54(A) (requiring plaintiff to show "actual damages" "sustained" by deceptive act).

[21] *See* 15  Okla. Stat. Ann. § 753(5), (7) (requiring "consumer transaction"); id. § 761.1(A) (allowing "aggrieved consumer" to pursue action); *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011) (requiring plaintiff to have consumed a commodity or service of the defendant's to be an "aggrieved consumer" under the OCPA); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483–84 (E.D.N.Y. 2011) (explaining N.Y. Gen. Bus. L. § 349 only applies to "consumer oriented" transactions); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 583 (S.D.N.Y. 1999) (holding that "arm's length transactions for services that are not available to the general public" are not consumer oriented); *Church of the Nativity of our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 7–8 (Minn. 1992) (holding that "merchants" are not covered under the MCPA and defining "merchants" to include entities that have "regular . . . business personnel who are familiar with business practices and who are equipped to take any action required"), *overruled on other grounds, Ly v. Nystrom*, 615 N.W.2d 302, 314 n.25 (Minn. 2000).

***The FI Plaintiffs Fail to Plead Any Cognizable Harm.***  The FI Plaintiffs also do not dispute that each of the state statutory claims requires a showing of injury, and that certain state statutory claims require a heightened requirement that the alleged injury be both ascertainable and monetary.[22]  The FI Plaintiffs' statutory claims also fail this requirement.  *See* Section I & II.C, *supra*.

## VI.   THE FI CARD PLAINTIFFS' CLAIMS REMAIN INADEQUATE.

The FI Card Plaintiffs' claims related to compromised payment card data remain subject to dismissal for the additional reasons set forth in *Schnuck Markets*, *viz.*, financial-institutions can recover through their agreements with card brands and are precluded from suing the victim of a data breach to recover any losses. Mot. 62-64.  The FI Card Plaintiffs contend that *Schnuck Markets* does not apply because "Plaintiffs did not allege that Equifax was contractually involved in payment card networks." Opp. 67.  Not only is this argument wrong, it ignores Plaintiffs' own allegations.  The FI Card Plaintiffs alleged that Equifax "regularly accepts debit and credit cards" (CAC ¶ 494), and is subject to the "Payment Card

---

[22] *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009) (explaining that "actual damages" are required under the FDUTPA and that "actual damages" do not include consequential damages like lost profits); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.*, 818 N.E.2d 1140, 1145 (N.Y. Ct. App. 2004) (holding that "indirect or derivative" injuries are insufficient to sustain cause of action under N.Y. Gen. Bus. L. § 349).

Industry Data Security Standard," or "PCI DSS,"  CAC ¶¶ 228-232; *see also Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 809 (7th Cir. 2018) (PCI DSS are the "data security requirements *in the contracts* linking [Schnuck Markets] to the card payment system" (emphasis added)).  The Complaint, therefore, establishes that the FI Card Plaintiffs' payment card claims are subject to the same "network of contracts and contractual remedies," as were the claims in *Schnuck Markets*.  *Id.* at 815.  The FI Card Plaintiffs' claims should be dismissed. *Id.*; *see also Bellwether Comm. Credit Union*, 2018 WL 5279468 at *6-9 (adopting *Schnuck Markets'* and dismissing similar claims).[23]

## CONCLUSION

For these reasons, the Court should dismiss the Complaint for lack of Article III jurisdiction, or, alternatively, the Court should dismiss the Complaint with prejudice for failure to state a claim.[24]

---

[23] The statement in *Schnuck Markets* distinguishing its holding from the *In re Equifax* MDL is also of no consequence here. The JPML order referenced in *Schnuck Markets* addressed only consumer claims in which payment card industry contractual relationships were not at issue. See *In re Equifax,* 289 F. Supp. 3d 1322, 1326-30 (J.P.M.L. 2017) (consolidating consumer claims).

[24] Plaintiffs argue that their ancillary claims should proceed, largely on the grounds that they can fix the deficiencies by crafting a new request for injunctive relief or by amending to properly assert a claim for fees. Opp. 68-70. These claims nonetheless remain subject to dismissal as pled.  Mot. 65-67.

DATED:  November 1, 2018                 Respectfully Submitted,

*/s/ David L. Balser*
**KING & SPALDING LLP**

David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145

1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140

dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Response was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 1st day of November, 2018.

*/s/ David L. Balser*
David L. Balser

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

_/s/ David L. Balser_
David L. Balser