# Exhibit 2

# IN THE COURT OF APPEALS

# STATE OF GEORGIA

**THOMAS MCCONNELL,**
**Individually and on behalf of**
**a class of others similarly situated,**

      **Appellant(s),**

**V.**                                      **APPEAL NO.  A16A0655**

**GEORGIA DEPARTMENT OF**
**LABOR,**                          **DATE OF DOCKETING**
                                  **December 9, 2015**

                                  **DATE OF REINSTATEMENT**
                                  **October 4, 2017**

      **Appellee.**


# BRIEF OF APPELLANT(S)

Scott A. Schweber
Ga. Bar No. 631286
Jefferson M. Allen
Ga. Bar No. 010898
Attorneys for Appellants

3330 Cumberland Boulevard
Suite 600
Atlanta, Georgia 30339

IN THE COURT OF APPEALS

STATE OF GEORGIA

**THOMAS MCCONNELL,**
**Individually and on behalf of**
**a class of others similarly situated**

     **Appellant(s),**

**V.**                       **APPEAL NO. A16A0655**

**GEORGIA DEPARTMENT OF**
**LABOR,**                   **DATE OF DOCKETING**
                               **December 9, 2015**

     **Appellee.**

                              **DATE OF REINSTATEMENT**
                               **October 4, 2017**

<u>**BRIEF OF APPELLANT(S)**</u>

**INTRODUCTION**

Home Depot. Equifax. Anthem Health Care. Yahoo. Target. All of these large and well known companies store and maintain millions of records of Personal Identifying Information ("PII") that they hold or maintain regarding customers or consumers. All of these companies have been targets of hacking whereby consumer's PII has been compromised. The common allegation in claims against these companies has been that they failed to take adequate steps to protect PII. In none of these cases was there an allegation that someone on the "inside" stole the

information, or that someone on the inside was negligent in disclosing or releasing

PII. Yet all of these companies have been criticized for failing to take the steps

necessary to protect customers' or consumers' PII and have faced massive

nationwide class actions. Home Depot entered into a multi-millon dollar

settlement after Judge Thrash of the Northern District declined to dismiss the case

as a matter of law. The Settlement Hearing in the Anthem Data breach case is

scheduled for Feburary 2018.

The facts of the case before this Court, however, differ from the cases

referenced above in one material fact. In this case, an employee of the Georgia

Department of Labor (hereinafter "Appellee" or "Department of Labor" or "DOL")

emailed PII of over 4700 Georgia Citizens to 1000 recipients over by e-mail. ***This

employee created a spreadsheet, attached it to an email and hit send!*** There was

no hacking in this case, no computer theft, and no break in. An employee of the

DOL negligently disclosed this information via e-mail.

PII belongs to individuals. In this case, as the result of disclosure of PII

without permission, Appellants have been harmed, and they have sustained losses.

The mission of our courts is to administer justice and provide a forum to vindicate

the rights of citizens who have been harmed by others. As stated in O.C.G.A. § 9-

2-3 for every right, there shall be a remedy, and When the law requires a person to

perform an act for the benefit of another or to refrain from doing an act which may

injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby. O.C.G.A. § 51-1-6. 4,757 citizens of Georgia have been harmed by the negligent conduct of the DOL, as they have had their PII disclosed, have suffered actual identity theft, and incurred costs and expenses associated with remedial action to protect their credit accounts and identity. The law provides our citizens with a remedy, but only when courts allow them to present their claims.

The trial court shut the door to the courthouse on 4,757 citizens of Georgia. The trial court's order was incorrect as a matter of law, and on behalf of 4,757 citizens of Georgia, we ask this Court to vindicate the rights of these Georgia citizens and to reopen the door to the courthouse.

## PART ONE

Appellant Thomas McConnell, individually and on behalf of a class of all other persons similarly situated, appeals the Order granting the DOL's Motion to Dismiss entered by the Superior Court of Cobb County on October 13, 2015. (R – 407). The trial court erred in concluding that Appellants had failed to state claims under Georgia Law for Negligence, Breach of Fiduciary Duty and Invasion of Privacy by Disclosure of Public Facts. At a minimum, if these claims were properly dismissed, the dismissal should have been without prejudice. Appellants

ask this Court to reverse the trial court order, and remand the case to the trial court for further proceedings including discovery, and trial.

## PROCEDINGS BELOW

On January 17, 2014, Appellant(s) filed a Class Action Complaint against Appellee in the Superior Court of Fulton County. (R – 366) On March 12, 2014 Appellant(s) filed their First Amended Class Action Complaint. (R – 379) On April 11, 2014 Appellee moved to Dismiss the First Amended Complaint pursuant to O.C.G.A. §9-11-12 (b)(6). (R – 96) The case was transferred to the Superior Court of Cobb County on February 9, 2015. (R – 363) On September 21, 2015 the Cobb Superior Court heard argument on Appellee's Motion to Dismiss. At the hearing, the trial court requested that both parties submit proposed Orders. On October 13, 2015 the trial court granted Appellee's Motion, and signed the Order prepared and submitted by Appellee. (R – 407)(R – 1)

On June 16, 2016 this Court entered its Judgment affirming the trial court's order. On June 23, 2016 Appellants filed their Notice of Intent to Apply for Certiorari, and on February 27, 2017 Certiorari was granted. On September 13, 2017 the Supreme Court entered its Judgment, vacating this Court's Judgment, and remanding the case with direction to make the threshold determination of whether Appellant's claims are barred by sovereign immunity. Appellant respectfully submits that this Court's review is not limited to the sovereign immunity issue.

The fact that the Supreme Court reversed this Court's prior order and remanded for further consideration, suggests that this Court should again perform a de novo review of the entire case.

## MATERIAL FACTS RELEVANT TO THE APPEAL

On or about September 25, 2012, the DOL created a spreadsheet that contained the name, social security number, home phone number, email address and age of 4,757 individuals over the age of 55, who resided in Cobb, Cherokee and Fulton Counties. (R – 380 ¶ 6) Under the authority of O.C.G.A. §10-1-911(6) this information is deemed "personal information", and hereinafter referred to as "PII". (R – 380 ¶ 6) Plaintiff's personal information was included in the spreadsheet. (R – 380 ¶ 7)

On September 5, 2013, an employee of the DOL sent the spreadsheet by email to approximately 1,000 individuals. (R – 381 ¶ 8) This information was publicly disseminated without reason, justification or permission of Appellant or the class members whose personal information was contained in the spreadsheet. (R – 381 ¶ 8) Appellant's personal information was disclosed in the email. (R – 381 ¶ 9). Appellant alleged upon information and belief in the ante-litem notice that class members had suffered actual identity theft. ( R - 379 Ex. A).

Appellee was negligent when its employee disseminated the personal information, and when it failed to take the necessary precautions required to safeguard and protect the personal information from unauthorized disclosure. By disseminating the personal information, Appellee breached the fiduciary duty that it owed to Appellants, and disregarded Appellants' right to privacy. (R - 379)

The First Amended Complaint noted that the Georgia General Assembly has found that identity theft is one of the fastest growing crimes in the State of Georgia. O.C.G.A. §10-1-910(3). (R – 381 ¶ 11) The First Amended Complaint alleged that the negligent and improper dissemination of the Appellants' personal information has placed Appellants at imminent, immediate and continuing risk of identity theft. (R – 381-382 ¶ 12). The Ante Litem notice attached to the First Amended Complaint (R - 379) specifically alleged: "Demand is hereby made for $3,000,000.00 for credit monitoring for the 4757 individuals whose personal information was disclosed, credit lock for the 4757 individuals, reimbursement of credit repair expense, damages to compensate the 4757 individuals for identity theft that has occurred or will occur in the future, and attorney fees and expenses."

As the proximate result of the dissemination and disclosure of Appellants' personal information, Appellants are now required to take the time and effort to mitigate the damage from the dissemination and disclosure of their personal information, including, but not limited to placing freezes and alerts with the credit

reporting agencies, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity. (R – 381-382 ¶ 12) Because his PII was disclosed, Appellant McConnell purchased a Life Lock membership at the rate of $19.00 per month. As of March 12, 2014, Appellant McConnell's Life Lock expenses totaled $114.00, and as stated in the First Amended Complaint, the Lifelock expenses were expected to accrue at the rate of $19.00 per month for the foreseeable future. (R – 381-382 ¶ 12)

Upon information and belief, other class members have been the victim of identity theft, and have incurred actual out of pocket monetary damages and costs related to credit monitoring, identity protection services and have suffered adverse impact to their credit scores related to the closure of credit accounts. (R – 382 ¶ 12 and Exhibit "A" ante litem notice)  In addition, Appellants, have experienced, and will continue to experience, fear, upset, anxiety and injury to peace and happiness related to the disclosure of their PII, because this disclosure has provided all the raw material necessary to facilitate the theft of their identities and unauthorized charges on their credit or bank accounts. (R – 382 ¶ 12)

Appellant's First Amended Complaint contained three Counts based upon the above referenced facts: Count I Negligence, (R – 385-6 ¶¶ 2-28) Count II Breach of Fiduciary Duty, (R – 387-9 ¶¶ 29-36) and Count III Invasion of Privacy by Public Disclosure of Private Facts. (R – 389-90 ¶¶ 37-40) The trial court

dismissed the First Amended Complaint in its entirety, ruling that none of the facts alleged in the First Amended Complaint stated a cause of action under Georgia law.

## PART TWO

### ENUMERATIONS OF ERROR

1. The trial court erred by holding that the State has not waived its sovereign immunity for the type of losses that Plaintiff alleged in his First Amended Complaint.

2. The trial court erred by holding the First Amended Complaint did not state a claim for Negligence.

3. The trial court erred by holding the First Amended Complaint did not state a claim for Breach of Fiduciary Duty.

4. The trial court erred by holding the First Amended Complaint did not state a claim for Invasion of Privacy by Disclosure of Public Fact.

### JURSIDICTIONAL STATEMENT

Pursuant to Article 6, §5, Paragraph 3 of the Georgia Constitution, this Court and not the Georgia Supreme Court has jurisdiction to hear this appeal because this is not a case reserved to the appellate jurisdiction of the Georgia Supreme Court or conferred on other courts by law.

# PART THREE

## STANDARD OF REVIEW

Motions to Dismiss are reviewed under the de novo standard of review construing the pleadings in the light most favorable to the plaintiff, with any doubts resolved in the plaintiff's favor. Wright v. Waterberg Big Game Hunting Lodge Otjahewita (Pty), Ltd., 330 Ga. App. 508 (2014).

## ARGUMENT AND CITATION OF AUTHORITY

In Walker v. Gowen Stores, LLC, 322 Ga. App. 376, 745 S.E.2d 287 (2013), this Court set forth the analytical framework to be used by trial and appellate courts when considering a Motion to Dismiss pursuant to O.C.G.A. § 9-11-12 (b) (6) .

> A motion to dismiss pursuant to O.C.G.A. § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. *State of Ga.v. Singh,* 291Ga. 525, 529 (3)(731 SE2d 649) (2012) (citation omitted). … The issue is not whether the complaint is perfectly pled "but whether it sufficiently gave [the defendant] fair notice of the claim and a general indication of the type of litigation involved." *Lathem v. Hestley,* 270 Ga. 849, 850 (514 SE2d 440)(1999).

We reject the argument that the complaint must be dismissed because damages are too remote to be proven. "[T]he speculative nature of damages alleged in a complaint may not afford a basis for the granting of a motion to dismiss wherein the allegations of a complaint are taken as true. . . ." *Little v. Fleet Finance,* 224 Ga. App. 498, 500 (l) (481 SE2d 552) (1997).

Walker v. Gowen Stores, LLC, 322 Ga. App. 376 (2013) and

Northway v. Allen, 291 Ga. 227, 229 (2012).

In this case, the DOL made much of the argument that Appellants had not

yet suffered identity theft, and that therefore the 'speculative' nature of damages

undercut the validity of Appellants' claim. While evidence of damages is key to

survive summary judgment, an argument that damages are "speculative" holds no

weight in a motion to dismiss argument, as courts have consistently rejected the

idea of dismissing a complaint based upon an argument that "…damages are too

remote to be proven." Walker, 322 Ga. App. 376, citing Little v. Fleet Finance,

224 Ga. App. 498, 500 (481 S.E.2d 552)(1997) (where, the court stated that "the

speculative nature of damages alleged in a complaint may not afford a basis for

the granting of a motion to dismiss wherein the allegations of a complaint are

taken as true…."). When the First Amended Complaint is reviewed against these

standards, Appellant(s) show that it was error for the trial court to grant

Appellee's Motion to Dismiss.

### A.  Appellants' Claims Are Not Barred By Sovereign Immunity.

Appellants' Complaint was brought under the Georgia Tort Claims Act which states in pertinent part that:

> The state waives its sovereign immunity for the torts of state
>
> officers and employees while acting within the scope of their
>
> official duties or employment and shall be liable for
>
> such torts in the same manner as a private individual or entity
>
> would be liable under like circumstances.
>
> O.C.G.A. § 50-21-23(a).

The sovereign immunity defense was not addressed with any force or detail at the trial court, and was wholly absent from Appellee's initial Motion to Dismiss. (R - 24 - 83)  Appellee's Second Motion to Dismiss also failed to argue that the First Amended Complaint was or should be barred by sovereign immunity.

It was not until October 9, 2014 that the DOL filed its third Motion to Dismiss, (R - 318-326) which first raised the issue of the GTCA.  The arguments in that motion, however were limited to one of Plaintiff's claim for relief--"that the Court award any and all such equitable and injunctive relief for the class as are

authorized by the facts and the law." (R-391).  The sovereign immunity defense was not raised as to the complaint as a whole.  The DOL noted that the GTCA waiver of sovereign immunity was only for claims for money damages - not for claims of injunctive or equitable relief.  (R 320-321)  The Motion did not make any argument that the First Amended Complaint was barred generally by the GTCA. Plaintiff filed a "Notice of Withdrawal of Claims for Injunctive and Equitable Relief" on December 4, 2014 (R - 334-335)  That the waiver of sovereign immunity was not a real issue or defense raised by the DOL is shown by the fact that the issue was not substantively raised in briefing, but only appeared in the trial court order granting the motion to dismiss, which was in fact drafted by Counsel for the Department of Labor. (R – 40)

Under the Georgia Tort Claims Act, O.C.G.A. §50-21-20 et seq., the State waives sovereign immunity for tort claims "within the limitations of this article and in accordance with the fair and uniform principals established in this article." O.C.G.A. §50-21-21.

Appellants asserted a "claim" against the State, defined as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties or employment."  O.C.G.A. §50-21-22(1).

Appellants' demand is for money compensation for their losses, including costs for credit protection services, compensation for fear, hurt, anxiety cause by the disclosure of their personal information, and any actual losses related to identity theft related to the disclosure.  "Loss" is defined by the GTCA as "personal injury…including lost wages and economic loss to the person who suffered the injury…mental anguish; **and any other element of actual damages recoverable in actions for negligence**."  O.C.G.A. §50-21-22(3).  Demand for these losses was clearly plead in the First Amended Complaint which specifically plead as damages "Life lock expenses of $19.00 per month . . , actual out of pocket monetary damages and costs related to credit monitoring, identity protection services and adverse impact to credit scores related to the closure of credit accounts, [and] additional damages [as] authorized pursuant to O.C.G.A. §51-12-4 and §51-12-6 [where] such damage is to be measured and determined by the enlightened conscience of fair and impartial jurors as such disclosure of personal identifying information has caused, and will continue to cause harm, anxiety and fear in Appellants regarding how and where there personal identifying information has been disclosed. . . "  (R. 381 ¶ 12 First Amended Complaint).

The DOL argued below that the tort claim act only subjects the State to tort claims for personal injury or damage to tangible property.  The law is not so limited however.  "Economic loss to the person who suffered the injury" is within

the definition of "loss" under O.C.GA §50-21-22(3). "Mental anguish" is a type of compensable loss under the statute. "Any other element of damages recoverable in actions for negligence" are the types of losses allowed under the GTCA.

Appellee may argue at trial (or at summary judgment) that there is insufficient evidence of damage to allow the case to go to trial - but this case was never at that stage. The First Amended Complaint clearly pleads and requests the type of damages allowed under the GTCA. Sovereign immunity has been waived for such claims. It was error for the trial court to accept the DOL's argument that sovereign immunity had not been waived. Appellants respectfully submit that their prayer for relief and specific request for monetary damages as compensation clearly falls within the scope of " any other element of actual damages recoverable in actions for negligence." O.C.G.A. §50-21-22(3). Thus Appellants' claims are *not* barred by the GTCA.

### B.   The First Amended Complaint Sets Forth a Claim for Common-law    Negligence  or Negligence Per Se.

A complaint for negligence must allege the following essential elements:

(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

Bradley Center, Inc. v. Wessner, 250 Ga. 199, 200 (1982) *quoting* Lee Street Auto Sales v. Warren, 102 Ga. App. 345 (1960).   In this case, as in Bradley Center (and others to be discussed herein) the key issue for consideration is whether the DOL owed a "legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm" with regard to the class members' PII and Social Security Numbers.  In this case the standard of conduct required by Georgia law is to refrain from disclosing PII to the public.

A legal duty is not necessarily a duty to affirmatively take a certain act.  A legal duty can also mean a duty to avoid certain acts, which acts could pose unreasonable risk of harm to others.  It is significant that the Court used the term "risk" of harm - rather than "actual" harm, because the existence of duty related to specific conduct is based upon risk or possibility of harming others.  One owes a duty legal duty regardless of whether a harm actually results from the breach of that specific duty.  Nominal damages may be awarded where there is a breach of a duty, but no evidence of actual damages.  However, the issue of damages cannot and should not be used as part of the analysis of whether or not a duty exists in the first place.  It was error for the trial court to consider the question of damages in its analysis of the Motion to Dismiss.

### 1) *A legal duty may be found by reference to common-law principles of conduct.*

Georgia courts have affirmed the existence of duties or a standard of conduct which support negligence claims, where such duties were not previously specifically set forth by statute.  In Mixon v. Dobbs Houses, Inc., 149 Ga. App. 481 (1979) the Court of Appeals affirmed the finding of a duty to pass along a telephone message (where no such duty had been established by statute or previous case law) based on the fundamental concept that all persons are charged with an inherent duty to perform acts in such a way as to avoid foreseeable harm to others:

> In order for a party to be liable as for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result.' . . . The question for the jury is whether danger should have been recognized by common experience, or by the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight.  [internal quote and cit. omitted]

Id. at 483.  This Court held that Mrs. Mixon stated valid negligence cause of action where an employee's supervisor agreed to (but then failed) to relay telephone message to the employee husband that she was in labor, and the husband missed wife's childbirth as result of the failure to relay the message.  This court found that once the supervisor agreed to receive and relay the message (which is analogous to an agreement to hold PII and social security numbers), the employer

had a duty to actually pass the message, and could not deny having a basic duty to do so.

The <u>Mixon</u> decision foreshadowed the Supreme Court's decision in <u>Bradley Center, v. Wessner</u> 250 Ga 199 (1982), which held that a physician owed a duty to a non-patient third party where criminal conduct of the patient (who was receiving psychiatric treatment) resulted in physical injury to the non-patient.  In <u>Bradley Center</u>, as in <u>Mixon</u>, there was no prior case authority specifically recognizing or describing the duty alleged to underlie the negligence claim.  The Court in <u>Bradley Center</u>, however, looked to the general duty owed by all to avoid harming others as the source of the duty underlying the negligence claim.

> The legal duty in this case arises out of the general duty one owes to all the world not to subject them to unreasonable risk of harm.  This has been expressed as follows " . . . negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm."  Restatement, Torts 2d §282

<u>Id.</u> at 201. <u>See also</u> <u>Landis v. Rockdale Co</u>. 206, Ga. App. 876 (holding police officer did owe affirmative duty to apprehend intoxicated driver, where driver later injured third party, as statutes prohibiting drunk driving, combined with officer's special relationship to the general public provided source of the duty.)

The facts of this case are analogous and support the finding that the DOL does owe an affirmative duty to protect and preserve the confidentiality of the PII

it collects from Georgia citizens. The DOL required 4,757 class members to divulge their PII (including social security numbers) to receive unemployment benefits. By requiring class members to provide this PII, the DOL assumed an affirmative duty to keep and hold such information confidential and not to disclose the information to the general public (i.e. the general duty not to subject class members to unreasonable risk of harm). **This only makes sense, as there would be no point in Georgia Legislature's declaration that PII is important, private and confidential, if there is no general duty to maintain the confidentiality and privacy of PII.**

Although the DOL may not have known or anticipated the particular harm suffered by class members through the disclosure of their PII, certainly "ordinary prudence might have foreseen that some injury would result from [the DOL's] act or omission, or that consequences of a generally injurious nature might result." Williams v. Grier, 196 Ga. at 337 (1943)(finding that owner / landlord had duty to discharge janitor with known violent tendencies before janitor shot plaintiff).

### 2) *A legal duty may be established by reference to statutes, even though such statutes do not provide a private right of action.*

O.C.G.A. § 51-1-6 "Recovery of Damages upon Breach of Legal Duty" provides that "when the law requires a person to perform an act for the benefit of another or to refrain from performing an act which may injure another, although no

cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

The purpose of O.C.G.A. § 51-1-6 is to allow common-law negligence claims for violations of Georgia statutes where the operative statutes do not themselves set forth a private right of action. *See* <u>Cruet v. Emory Univ</u>. 85 F. Supp 2d 1353, 1354 ( " Section 51-1-6 is a vehicle for asserting a tort claim for the violation of a legal duty . . . [which is] designed to provide a cause of action for the breach of a legal duty where one does not otherwise exist.")

In <u>Wells Fargo  N.A. v. Jenkins</u>, 293 Ga. 162, 165 (2013) the Supreme Court explained that where a Georgia statute serves as the basis of a duty for a negligence claim, O.C.G.A. § 51-1-6 requires that "there must be the alleged breach of a legal duty with some ascertainable standard of conduct."  That standard of conduct is readily apparent in this case, though, based upon O.C.G.A. § 10-1-393.8 which specifically prohibits disclosure of social security numbers (*i.e.* it establishes a standard of conduct to protect and not disclosure social security numbers to the general public.)  Several prior decisions of this Georgia appellate courts have recognized and affirmed duties owed by individuals or entities in Georgia, even where previous case law had not specifically identified the specific duty owed.  *See generally* <u>Pulte Home Corp. v. Simerly</u>, 322 Ga. App. 699, 705 (2013)(recognizing regulations of the Federal Clean Water act, as source of duty for negligence claim,

even where plaintiff did not directly assert a claim for violation of the Federal act.) *See also* <u>Norfolk Southern Railway Co. v. Zeagler</u>, 293 Ga. 582 (2013)(where this Court held that duty to train workers in negligence action could be found in Federal Employers' Liability Act general duty to provide a safe workplace).

Georgia law clearly allows the adoption of a statute as a standard of case (or duty) in a negligence or negligence per se action.  See <u>Central Anesthesia Assoc. v. Worthy</u>, 173 Ga. App. 150 (325 S.E.2d 819) (1984), aff'd, supra, 254 Ga. 728.  The standard of appellate review of such claims involves a two-fold inquiry 1) does the injured person(s) fall within the scope of the class of persons the statute was intended to protect and 2) whether the harm complained of was the harm the statute was intended to guard against.   <u>Rockefeller v. Kaiser Found. Health Plan</u>, 251 Ga. App. 699, 703 (2001).

In this case there is statutory authority which clearly prohibits public disclosure of social security numbers, the class members are within the scope of persons to be protected by the statute, and the harm they have suffered by public disclosure of their PII and social security numbers is within the scope of identifiable damages.

### 3) *The Georgia Legislature has identified Personal Identifying Information as information that should be maintained with particular care.*

This Court can and should look to statements from the Georgia Legislature regarding the harm that identity theft can cause to Georgia citizens in finding that there is a general common-law duty to protect and preserve Personal Information[2].

The Georgia General Assembly has found that identity theft is one of the fastest growing crimes in the State of Georgia. O.C.G.A. §10-1-910(3). Privacy and financial security of individuals is at risk due to collection of PII (including collection of PII from offices and agencies of the state of Georgia. O.C.G.A. §10-1-910(1). Identity theft is "costly" to consumers. O.C.G.A. §10-1-910(6), and victims of identity theft must act quickly to minimize the damage (i.e. damage is presumed from identity theft) O.C.G.A. §10-1-910(7). These legislative findings and statement of intent help explain why there is a general duty to maintain the confidentiality of PII.

### 4) *The Georgia Legislature, through O.C.G.A. § 10-1-393.8 specifically prohibits disclosure of Social Security Numbers.*

The Appellee DOL argued to the trial court that it does not have a duty to protect the Appellants' personal information, because relevant statutes have not

---

[2] Personal Information is defined as first name or initial, last name and social security number. O.C.G.A. § 10-9-911(6)

created a specific private right of action for violation of data privacy statutes. (R – 40) That position is plainly incorrect. The Appellee is subject to the same duties and obligations to maintain the confidentiality of PII as any person, firm or corporation in Georgia. The statute that clearly establishes Appellee's duty, O.C.G.A. § 10-1-393.8, provides in pertinent part:

> Except as otherwise provided in this Code section, a person, firm or a corporation shall not: (1) Publicly post or publicly display in any manner an individual's social security number. As used in this Code section, "publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public; . . .

The statement of this duty is clear and unequivocal. ***Do not post or display individuals' social security numbers***. The policy rationale for this statutory duty is set forth by O.C.G.A. § 10-1-910, et seq., which explained the growing threat of identity theft, and the legislature's intent to protect citizens from the adverse effects of disclosure of PII, which is a direct cause of identity theft. This statute was specifically referenced in Appellants' First Amended Complaint. (R – 381 ¶ 11) The fact that the statute itself does not establish a private right of action does not mean that this statue cannot properly be viewed as providing evidence to establish the common law duty. A statute can (and often does) establish the general duty owed by Georgia individuals, corporations and State agencies, even

where the statute does not provide for a separate private right of action for violation of the statute.

In this case O.C.G.A. § 10-1-910 and O.C.G.A. § 10-1-393(3) establish and evidence a duty to preserve PII even though the Fair Business Practices Act does not create an independent cause of action unauthorized for disclosure of PII. See generally, Pulte Home Corp. v. Simerly, 322 Ga. App. 699 (2013) and Rockefeller v. Kaiser Found. Health Plan of Ga., 251 Ga. App. 699 (2001) (each explaining that statute or regulation can provide the standard of conduct or duty not to disclose PII for claim of negligence). Here Appellants do not argue that there is a private right of action under O.C.G.A. § 10-1-910 and O.C.G.A. § 10-1-393(3), but instead submit that these statutes confirm that there is a common law duty to protect and preserve such PII. These statutes help establish the duty of care to be exercised by those who hold or collect PII – which exists regardless of whether the statutes themselves set forth a private right of action.

The DOL has argued that O.C.G.A. § 10-1-393(3) only prohibits intentional disclosure of social security numbers. This argument is not supported by the plain language of the statute, which defines "publicly display" as to "intentionally communicate *or otherwise make available to the general public*." The statute describes two types of action - intentional communication and action "to

otherwise make available".  Use of the phrase "otherwise make available" distinguishes such acts from intentional communication, and does not impose upon a party **only** the duty to refrain from knowing and intentional acts.  The use of the phrase "or otherwise make available" encompasses the negligent disclosure of social security numbers.  It is error to conclude that O.C.G.A. § 10-1-393(3) only prohibits intentional disclosure of social security numbers.

O.C.G.A. § 10-1-393(a) states that a "person firm or corporation *shall* not (1) publicly post or publicly display *in any manner* an individual's social security number."  The prohibition is not restricted to intentional disclosure.  Use of the phrase "in any manner" to modify post/display includes negligent conduct resulting in the post or display of social security numbers of Georgia citizens.

To the extent the term "intentionally communicate" was used by the legislature, that was likely intended to insulate from liability those persons or firms who hold PII and have had such PII hacked from computer systems or otherwise stolen despite the maintenance of adequate security precautions.  In fact, most of the nationwide legal claims have involved fact patterns where the disclosure of PII and social security numbers was tied to computer hacking or unauthorized access to data.

The facts of this case are different - and demonstrate why Georgia employers, State agencies and collectors of PII do owe a general duty to exercise due care to preserve and maintain the confidentiality of PII. The facts of this case demonstrate that the DOL was negligent and breached its duty when Appellants' PII was "otherwise [made] available to the general public.

The release of the Appellants' PII was not an accident or event that happened through no fault of the Appellee. The DOL's computer systems were not hacked by an outsider. The spreadsheet with the PII was not stolen. The First Amended Complaint alleges that the DOL employee created spreadsheet, attached it to an email message, added one thousand email addresses to the recipient list for that email and hit send. (R – 381 ¶ 8) This PII was not disclosed because of a computer virus, or a glitch, or some "act of god." It took place as the result of an affirmative act of an employee of the DOL. Certainly, the DOL owed a duty, based upon O.C.G.A. § 10-1-393.8 to refrain from taking acts which accomplished the unauthorized dissemination of the names, social security numbers, home phone, e-mail address and age of 4,757 Georgia citizens. The DOL may argue they did not breach a duty, or that they should not be legally responsible for the loss based upon facts which may be established through discovery and trial, but it was

error for the trial court to to hold that the DOL did not owe a basic duty to protect and preserve the PII and Social Security numbers of 4,757 Georgia citizens.

### C. The First Amended Complaint States a Claim for Breach of Fiduciary Duty.

#### *1) The Department of Labor owes a Fiduciary Duty to Appellants.*

The trial court's dismissal of Appellants' breach of fiduciary duty claim should be reversed because a claim for breach of fiduciary duty is uniquely *unsuitable* for disposition via a motion to dismiss, absent evidence in the pleadings that clearly refutes or disproves the existence of a fiduciary duty. There is no such record evidence, and Appellants' claim for breach of fiduciary duty should not have been dismissed by the trial court as a matter of law. With respect to this issue, the DOL (and this Court in its prior opinion) relied on decisions involving disputes between banks and their customers that are entirely distinguishable. See Jenkins v. Wachovia Bank, 314 Ga. App. 257 (2012) (where plaintiff attempted to establish tort liability based upon the Federal Graham Leach Bliley Act). Those cases are distinguishable however, because a bank / customer relationship is a commercial relationship and is fundamentally different than the relationship between the DOL and Georgia citizens.

In the first place, banking / customer relationships are governed by written contracts that set forth the duties, rights and responsibilities of the parties. Second, banking / customer relationships have consistently been held to be arm's length business relationships between two parties not properly described or considered to be confidential relationships. Savu v. SunTrust Bank, 293 Ga. App. 683, 688 S.E.2d 276 (2008). Third, banking / customer relationships involve choice. Georgia citizens can choose to have banking relationships or not. Customers have choices in connection with their personal or business finances. They can avail themselves of check cashing stores, or companies like Western Union. Or, they can decide to establish banking relationships, and choose from a wide array of savings and loans, credit unions and banks. A Georgia citizen can evaluate which entity he or she wants to do business with. It is a personal decision that can be driven by and entities' terms and conditions, locations, and personal relationships. This is entirely different from the relationship that a Georgia citizen has with the DOL.

This Court should not have found Jenkins as persuasive or controlling authority, because of the very significant factual differences in the relationships between the parties in Jenkins and in this case. Bank - Customer

relationships are not fiduciary in nature because they are arm's length business relationships, governed by written contracts and account agreements. There are no such contracts between the DOL and Plaintiff class members here.

Georgia citizens that are part of the work force may be entitled unemployment benefits by virtue of the Federal Unemployment Tax Act. In order to obtain benefits to which they are legally entitled, Georgia citizens have no choice but to comply with information demands by the DOL (ie. for their PII). If citizens refuse to provide PII they cannot receive benefits. This is why the relationship between the DOL and Appellants is not equivalent or analogous to a bank / customer relationship.

The Courts have held that the existence of a fiduciary duty must be determined based upon a full factual record because a fiduciary or confidential relationship may be created by law, contract, or the facts of a particular case, and generally, the existence of a confidential or fiduciary relationship is a factual matter for the jury to resolve. Thunderbolt Harbour Phase II Condominium Assoc. Inc. v. Ryan, 326 Ga. App. 580, 582 (2014). Further, when a fiduciary or confidential relationship is not created by law or contract, the court must examine the facts of a particular case to determine if such a relationship exists. Because a

confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve. Bienert v. Dickerson, 276 Ga. App. 621, 624 (2005).

That is precisely what is happening in this case. While there is no written contract between Appellants and the DOL, there are (and discovery may further establish) a wide variety of facts to establish the confidential and fiduciary relationship between the parties. The question of whether or not there was a confidential relationship that would create a fiduciary duty is a fact question to be determined by the jury as the trier of fact – not by the trial court via a motion to dismiss.

Examination of the plain language of O.C.G.A. § 23-2-58 (which defines confidential relationships) in light of the specific facts and particular circumstances of this case shows that the DOL did owe a fiduciary duty to protect and not disclose the Appellants' PII. As set forth in O.C.G.A. § 23-2-58, confidential relationships are derived from "any relationship … created by law … where one party is so situated as to exercise a controlling influence over the will, conduct and *interest* of another… " The DOL serves many functions as an agency of the State of Georgia, but the relevant function in this case is as the agent to: a)

collect PII from Georgia citizens as required and b) to distribute unemployment compensation payments and administer other services to which such citizens are entitled under the law. The DOL certainly exercises significant controlling influence over the interest of Appellants - it controls unemployment compensation payments, which are only distributed if and when Appellants provide the DOL with the PII (including social security numbers) that it requires claimants to disclose. *Unless Appellants follow the DOL's rules and procedures – including the obligation to provide PII to the DOL, the Appellants cannot or will not receive unemployment benefits.* Under these circumstances, the Appellants reasonably relied upon the DOL to protect the confidentiality of their PII (and certainly to comply with O.C.G.A. §10-1-393.8).

The DOL serves as the authorized agent of all Georgia citizens to process unemployment insurance applications, and to distribute payments to authorized recipients from contributions collected from Georgia employers. The DOL is an agent processing those payments in the most common sense of the term, and is an "agent" of the Appellants as that term is defined by O.C.G.A. § 23-2-58, because the DOL processes unemployment compensation claims, it clearly and directly "exercises a controlling influence" over the . . . interest of [the claimant]. The DOL exercises an influence over the interests of Georgia citizens because: a) it

collects, processes and distributes payments to claimants; and b) it holds and (as Appellants contend) is obligated to protect PII of individual citizens and claimants.

Was it reasonable for Appellants to expect the DOL to maintain the confidentiality of their PII? Appellants contend that it was reasonable, and this is not an issue that should have been resolved by the trial court via a motion to dismiss.

The facts of this case support a finding of a confidential / fiduciary relationship between the DOL and the Appellants with regard to the DOL's handling of PII. Certainly, the facts alleged satisfy the basic pleading requirements, and do not justify rejection of the claim as a matter of law, in the absence of discovery. Questions regarding the existence of a fiduciary duty are intended to be resolved by the trier of fact, not by the trial court, and it was error for the trial court to dismiss Count II of the First Amended Complaint.

> **2)    *The First Amended Complaint states a claim for breach of fiduciary duty.***

A breach of fiduciary duty claim requires three elements: the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach. <u>Wells Fargo Bank. N.A. v. Cook</u>, 332 Ga. App. 834, 842 (2015). The First Amended Complaint in this case alleged that the DOL owed a fiduciary duty to

Appellants (R – 387 ¶ 30), that the DOL breached such duty (R – 388 ¶ 32-33), that Appellants were damaged and that such damage was proximately caused by the DOL's action (R– 388 ¶ 34-36).  In light of these allegations it was error for the trial court to rule that Appellants failed to state a claim for Breach of Fiduciary Duty under Georgia law.

> **D. The First Amended Complaint States a Claim for Invasion of Privacy by Public Disclosure of Private Facts.**

The seminal Georgia decision explaining the right to privacy under Georgia law is the case of <u>McDaniel v. Atlanta Coca-Cola Bottling Co.</u>, 60 Ga. App. 92 (1939). That case involved claims by the plaintiff against her employer who had placed listening devices and eavesdropped on her private discussions while plaintiff was a patient in Emory University Hospital. The Court of Appeals rejected the defendant's general demurer, and set forth the basic parameters of the right to privacy under Georgia law, and described the measure of damages for a violation of this personal right.  In <u>McDaniel</u> the Court reiterated that the right of privacy has its foundation in the instincts of nature, and a right of privacy in matters purely private is therefore derived from natural law.  Id at 100.  Importantly the Court held that a violation of the right of privacy is a direct invasion of a legal right, and it is a tort.  Id.

In this case the PII disclosed by the DOL is private and personal to Appellants, and it is clearly not to be publicly disclosed via e-mail. Georgia law

recognizes a variety of information as private and not subject to public

disclosure, including certain financial and banking records, medical records,

certain police records (particularly records of juvenile crime) and records related

to status as a victim of a crime (particularly sexual assault). The law recognizes a

claim for unauthorized disclosure of private information in these circumstances.

### 1) *The private facts need not be embarrassing for disclosure to constitute a tort.*

There are three basic components to a tort claim for unauthorized disclosure

of public facts. First, there must be a public disclosure of such facts. Second, that

facts disclosed must be private, secluded or secret facts. Third, the matter made

public must be "offensive and objectionable to a reasonable man of ordinary

sensibilities under the circumstances." Cabaniss v. Hipsley, 114 Ga. App. 367,

372 (1966); see also Nelson v. Glynn-Brunswick Hosp. Auth, 257 Ga. App. 571,

578 (2002).

In this case DOL admitted that Appellants' PII was distributed to at least

1,000 persons via e-mail. It is a reasonable inference that the PII spreadsheet

has been subsequently disclosed to many more. Disclosure to 1000

individuals certainly constitutes public disclosure. None of the Appellants

wanted or intended to have their PII on that spreadsheet, and it is not

reasonable to conclude that they intended to be considered a "private" group such that distribution within the set of 4,757 is considered "private." It was error for the trial court to rule as a matter of law that this disclosure was not public. (R – 413). ("Disclosure to a discrete group of individuals is not a public disclosure"). It was error for the trial court to conclude that 1000 individuals represent a "discrete" group. While Appellants contend disclosure to 1000 does constitute public disclosure as a matter of law, at a minimum this was a jury question to be resolved by the trier of fact – not the trial court on a preliminary motion without presentation of the evidence.

Then the analysis moves to the latter two elements – is the information private, and if it is, was the disclosure "offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances?" The answers to these questions raise issues of fact, which are to be resolved by the jury, and it was error for the trial court to make this determination as a matter of law. See Multimedia WMAZ Inc. v. Kubach, 212 Ga. App. 707 (1994) (affirming damages award against media company for disclosure of plaintiff s HIV+ status).

The question for the Court to ask is this: would Appellants consider their age, cell phone number and social security numbers to be private or public information. Appellants respectfully submit that they would *NOT* consider that information to be public; they would consider the information to be private, and

they would object to the public dissemination of that information without their knowledge, authorization or permission. Again though, Appellants are not asking for this question to be answered by this Court as a matter of law. This is a question to be resolved by the jury.  It was error for the trial court to hold as a matter of law that no reasonable person would consider the PII set forth in the spreadsheet to be private.

Fortunately, we do not live in George Orwell's world (yet) and the law still recognizes basic levels of privacy. This is demonstrated by the fact that the Georgia legislature has specifically defined "personal information" to be a social security number, or any other information  which would, "[if] compromised would be sufficient to perform or attempt to  perform  identity  theft against the person whose information was compromised." O.C.G.A. §10-1-911(6). In this case, "Personal Information" as defined by this statute clearly represents, and is synonymous  with  private information as that term has been used in  case  law. Thus the First Amended Complaint satisfies the second element of the claim.

As to the final part of the analysis of the claim – would Appellants find the disclosure of their PII to be offensive and objectionable? – counsel respectfully submits that if polled, each Appellant would answer the question with a resounding yes –  they would state that the public disclosure of their age, personal cell phone number and social security number is offensive and objectionable. But

ultimately, this is a question of fact, not to be resolved via a motion to dismiss.

The trial court should not have ruled as a matter of law that the disclosure of the

PII under these circumstances was ***NOT*** offensive and objectionable.  Because the

facts asserted in  the First Amended Complaint demonstrated a public  disclosure

of private  facts, which disclosure would be  considered  offensive  and

objectionable,  the DOL's Motion to Dismiss  should have been  denied.

### 2) *Cumberland Contractors, Inc. v. State Bank & Trust Co is distinguishable.*

In support of its argument, the DOL cited Cumberland Contractors, Inc. v.

State Bank & Trust Co., 327 Ga. App. 121, 755 SEd 511 (2014).  However, that

case is distinguishable from the present case.  In Cumberland, the Defendant

borrowers' counterclaim for invasion of privacy was based on the fact that

Plaintiff improperly included the Defendant borrowers' social security numbers

(not PII) in the Complaint filed by Plaintiff.  These facts are entirely different

from the facts of the present case where a DOL employee sent Appellants' PII to

1000 individuals by e-mail.  Furthermore, current court rules mandate that before

any pleading is filed with the clerk, that social security numbers be redacted.

Certainly, unauthorized disclosure of a social security number should be

actionable under Georgia law.

When all pleadings and all doubts regarding such pleadings are construed most favorably to the Appellants the First Amended Complaint adequately states a claim for invasion of privacy by public disclosure of private facts.

## CONCLUSION

It is clear that Appellants' First Amended Complaint is allowed by the GTCA, and is not barred by sovereign immunity. 4,757 citizens of Georgia have had their PII disseminated to the public. Some have had their identities stolen, all are at increased risk of identity theft, and thousands have incurred costs and damage related to credit protection and monitoring. The law of Georgia certainly provides these citizens their day in court under any of the legal theories asserted in the First Amended Complaint. Appellants request reversal of the trial courts dismissal, and to reopen the courthouse to these Georgia citizens.

This 31st day of October, 2017.

This submission does not exceed the word count limit imposed by Rule 24.

<div style="margin-left: 50%;">

s:\Scott A. Schweber

Georgia Bar No. 631286

S:\Jefferson M. Allen

Georgia Bar No. 010898

Attorneys for Appellants

</div>

Cohen, Cooper, Estep & Allen, LLC

3330 Cumberland Boulevard, Suite 600

Atlanta, Georgia 30339

Tel: (404) 814-0000

e-mail: sschweber@ccealaw.com

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

| | | |
|---|---|---|
| THOMAS MCCONNELL, individually and on behalf of a class of all others similarly situated, | * * * * | |
| Appellants, | * | |
| v. | * | CASE NO.: A16A0655 |
| GEORGIA DEPARTMENT OF LABOR, | * * | |
| Appellee. | * * * | |

## <u>CERTIFICATE OF SERVICE</u>

I have this date filed the foregoing Appellants' Brief by using the Court of Appeals eFaST system. I certify that there is a prior agreement with counsel for Appellee to allow documents in a .pdf format sent via email to suffice for service. I certify that I served such filing via e-mail to the attorney of record at the e-mail address listed below:

Ellen Cusimano, Esq.
Office of the Attorney General
Atlanta, GA 30334-1300
ecusimano@law.ga.gov

This 31st day of October, 2017.

s:\Scott A. Schweber

Georgia Bar No. 631286