# Exhibit 3

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

SU17CV0089

PATRICK HAGGARD
JAN 20, 2017 05:13 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

# IN THE SUPERIOR COURT OF ATHENS-CLARKE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHRISTINE COLLINS, PAULETTE MORELAND, and KATHRYN STRICKLAND on behalf of themselves and all others similarly situated, | ) ) ) ) | Civil Action No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ATHENS ORTHOPEDIC CLINIC, P.A., | ) ) | |
| | ) | |
| Defendant. | | |

## VERIFIED COMPLAINT

Plaintiffs, Christine Collins, Paulette Moreland, and Kathryn Strickland ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant, Athens Orthopedic Clinic, P.A. ("Athens Orthopedic") for injunctive relief, breach of implied contract, unjust enrichment, negligence, and violation of Georgia's Uniform Deceptive Trade Practices Act.  Plaintiffs allege the following upon information and belief, except for those allegations that specifically pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge.

## INTRODUCTION

1.     In June of 2016, the private, personal information of at least 200,000 current and former Athens Orthopedic patients was taken from Athens Orthopedic's

computer data bases and made public.  That information included not only the sensitive medical information of Plaintiffs and the Class, but also their social security numbers, names, dates of birth, and addresses.

2.     Through no fault of their own, Plaintiffs and Class Members now face an imminent threat that their personal information will be used to their detriment and will spend the next several years, if not the rest of their lives, monitoring their credit and protecting their identities in an effort to insulate themselves from the inevitable consequences of this breach.

3.     Athens Orthopedic, however, refuses to take any responsibility and has refused even to offer Plaintiffs and the Class credit monitoring or identity theft protection at the Company's expense. This basic relief has been routinely afforded to victims of other data breaches, even by companies that steadfastly maintain they were not otherwise culpable for breaches of their data.

4.     For example, Anthem, Bebe, Dairy Queen, Experian (T-Mobile), Home Depot, Jimmy John's, Kmart, Michael's, Neiman-Marcus, P.F. Chang's, Sears, Sony, Staples, SuperValu, Target, UCLA Health, United Shore Financial, the UPS Store, and White Lodging, and the United States Office of Personnel Management have all offered some form of free credit monitoring and/or ID theft protection in the wake of their respective data breaches.  Notably, that list includes several other

health care organizations, like Athens Orthopedic, that had similar personal and health information compromised on their watch.

5.      In fact, it has become industry practice to provide the kind of credit monitoring and identity theft protection sought in this Action.

6.      Plaintiffs and the Class seek injunctive relief, requiring Athens Orthopedic to (1) provide credit monitoring and identity theft protection; (2) reimburse the costs incurred  (and to be incurred in the future) by members of the proposed class who purchased credit monitoring and identity theft protection or who placed a credit freeze[1] on their accounts after the Athens Orthopedic data breach; and (3) take appropriate measures, identified herein, to ensure that another similar data breach does not happen again.

7.      This is a lawsuit that should not have been required.  Athens Orthopedic should have recognized the very basic responsibilities it owed its patients and provided the relief now sought herein.  Athens Orthopedic did not, hence the need for this litigation.

---

[1]   The costs associated with a credit freeze include not just the amounts paid to each of the three major credit reporting agencies to put the initial freeze in place, but also additional amounts that must be paid to lift the freeze temporarily every time the victim applies for a loan or otherwise wishes to allow access to the credit report for the remainder of his or her life.

## FACTUAL ALLEGATIONS

8. Athens Orthopedic describes itself as a provider of comprehensive orthopedic care to Athens, Georgia, and the surrounding area since 1966. As such, it offers the services of physicians who specialize in orthopedic surgery and the treatment and diagnosis of diseases and injuries of the bones, muscles, tendons, nerves, and ligaments.

9. When patients seek treatment at Athens Orthopedic, they are first required to provide personally identifiable information ("PII") as part of the process. PII collected by Athens Orthopedic includes, *inter alia,* patients' names, addresses, telephone numbers, birthdates, email addresses, and social security numbers. Patients are also required to provide their insurance information, if any.

10. In addition to patients' PII and insurance information, Athens Orthopedic maintains patients' medical records in its database.

11. Athens Orthopedic's patients pay consideration to Athens Orthopedic for all of the services it provides. A portion of the overall consideration paid was to be allocated to protecting and securing patients' PII.

12. Athens Orthopedic understood that its patients' PII is private and committed to keeping it private.  For example, in its Notice of Privacy Practices, Athens Orthopedic stated "We understand the importance of privacy and are committed to maintaining the confidentiality of your medical information."

13.    The healthcare industry is a uniquely appealing target for data thieves. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification titled, "Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain," that warned all healthcare providers that "[c]yber actors will likely increase cyber intrusions against health care systems … due to … lax cybersecurity standards, and a higher financial payout for medical records in the black market."[2]

14.    A PriceWaterhouseCoopers study found that information security incidents rose by 60 percent in the health-care industry in 2014.[3]

15.    Despite these warnings, Athens Orthopedic failed to protect its patients' data.

16.    According to Athens Orthopedic, a cyber thief accessed a database containing its patients' PII on or about June 14, 2016.  Apparently that individual had probed the Company's computer systems for many months prior thereto without detection.  It took two weeks, until June 27, 2016, for Athens Orthopedic to discover

---

2  FTC Private Industry Notification, Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (April 8, 2014), available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf.

3  PWC, Managing cyber risks in an interconnected world, at 22 (Sept. 30, 2014), available at http://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

that its database had been hacked.  It took another several weeks, until August of 2016, before Athens Orthopedic informed Plaintiffs and other patients that their PII had been compromised.

17.    Athens Orthopedic has publicly attributed the breach to hackers seeking ransom. According to Athens Orthopedic, the hackers used a "third-party" vendor's log-in credentials to access Class Members' PII. Defendant described the third-party vendor as a "nationally-known health care information management contractor."

18.    The cyber thief has identified himself as "the Dark Overlord," and he claims that he netted the PII of 396,810 current and former Athens Orthopedic patients, including "everything AOC ever collected" from them.  According to the thief, the data obtained includes patients' health insurance details, including policy identification numbers, home addresses, dates of birth, ages, phone numbers, email addresses, genders, races, states of residence, zipcodes, and most importantly, patients' social security numbers.

19.    As a result of the data breach, and through no fault of their own, Plaintiffs' PII is now in the public domain.

20.    After the officers of Athens Orthopedic rejected the cyber thief's demand for payment for the return of the PII and other data stolen, at least some, if not all, of this compromised information was offered for sale on the "dark web," an internet network not indexed by traditional search engines.  Some of this information

taken from Athens Orthopedic's data base was also made available, at least temporarily, on Pastebin, a data storage website designed to facilitate the sharing of large amounts of data online.

21.   Because names, addresses, dates of birth, and social security numbers were compromised and made available to others on the dark web, criminals are now able to assume Class Members' identity and fraudulently obtain credit cards, issue fraudulent checks, file tax refund returns, liquidate bank accounts, and open new accounts, all in Class Members' names. Even Class Members who have not yet experienced identity theft or are not yet aware of it nevertheless face the imminent and substantial risk of future injury.

22.   Athens Orthopedic was negligent in protecting Plaintiffs' and all of its patients' data.  According to the cyber thief, Athens Orthopedic stored information on its database using easily hacked, unencrypted plaintext.  The hacker claims he gained easy access to the data from an internal network using readily available plaintext usernames and passwords.

23.   Yet unlike other companies that have lost control of their customers' data, Defendant has not offered Plaintiffs and other Class Members credit monitoring, identity theft protection, or *any* other remedial measures.[4]

---

[4] For example, Anthem, Bebe, Dairy Queen, Experian (T-Mobile), Home Depot, Jimmy John's, Kmart, Michael's, Neiman-Marcus, P.F. Chang's, Sears, Sony, Staples, SuperValu, Target, UCLA Health, United Shore Financial, the UPS Store,

24.     Instead, Athens Orthopedic told patients they are on their own. In its notice to affected patients, Defendant recommended that they contact the three credit bureaus, place fraud alerts on their accounts, and monitor their own credit reports.

## PARTIES

25.     Plaintiff Christine Collins ("Collins") is a resident of the State of Georgia. Plaintiff Collins received a notice from Athens Orthopedic informing her that her PII was compromised in the data breach.  Shortly after the Athens Orthopedic data breach, Plaintiff Collins had fraudulent charges made using her credit card and spent time getting them reversed by the card issuer.  Plaintiff Collins has spent time calling a credit reporting agency and placing a fraud or credit alert on her credit report to try to contain the impact of the data breach and anticipates having to spend more time and money in the future on similar activities.

26.     Plaintiff Paulette Moreland ("Moreland") is a resident of Chester County, Pennsylvania. Plaintiff Moreland received a notice from Athens Orthopedic informing her that her PII was compromised in the data breach.  Plaintiff Moreland has spent time calling a credit reporting agency and placing a fraud or credit alert on

---

and White Lodging have all offered some form of  free credit monitoring and/or ID theft protection in the wake of their respective data breaches. Similarly, the United States Office of Personnel Management offered similar protections to federal employees.

her credit report to try to contain the impact of the data breach and anticipates having to spend more time and money in the future on similar activities.

27.    Plaintiff Kathryn Strickland ("Strickland") is a resident of the State of Georgia. Plaintiff Strickland received a notice from Athens Orthopedic informing her that her PII was compromised in the data breach. Plaintiff Strickland has spent time calling a credit reporting agency and placing a fraud or credit alert on her credit report to try to contain the impact of the data breach and anticipates having to spend more time and money in the future on similar activities.

28.    Defendant Athens Orthopedic is a Georgia professional Corporation with its principal place of business in Athens, Clarke County, Georgia.

## JURISDICTION AND VENUE

29.    This Court has jurisdiction because Defendant is a Georgia professional corporation with its principal place of business in Georgia and the actions causing Plaintiffs' injuries arose in Georgia.  This Court has original jurisdiction pursuant to the 1983 Constitution of Georgia, Article VI, §1, Para. I, and O.C.G.A. § 15-6-8 to hear and decide all of the issues alleged in this complaint.

30.    Venue is proper in Athens-Clarke County pursuant to O.C.G.A. § 9-10-93, as Defendant's registered agent and principal place of business are in Athens-Clarke County.

31.     None of the Plaintiffs' claims exceed the sum or value of $75,000, exclusive of interest and costs, and all of Defendant's facilities, and therefore the vast majority, more than two-thirds, of the victims of the data breach, are located in the State of Georgia.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring all claims as class claims under O.C.G.A. § 9-11-23. The requirements of § 9-11-23 are met with respect to the Class defined below.

33.     Plaintiffs bring this action as a class action on behalf of themselves and all members of the following Class of similarly situated persons:

> All persons who reside in the United States whose PII was compromised as a result of breaches of databases containing PII controlled by Athens Orthopedic in June of 2016.

34.     Excluded from the Class are Defendant and any of its officers, directors, or employees, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the Court and its officers, employees, and relatives.

35.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

36.     All members of the proposed Class are readily ascertainable, as Athens Orthopedic has access to addresses and other contact information for all Class Members, which can be used for providing notice to Class Members.  In fact, Athens Orthopedic has already notified at least a portion of the Class that their PII may have been accessed through the data breach.

37.     *Numerosity.* The Class is so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, media reports indicate between 200,000 and 397,000 patients' records have been compromised.

38.     *Commonality*. There are numerous questions of law and fact common to Plaintiffs and the Class, including the following:

(a)     whether Defendant failed to implement and maintain reasonable systems, security procedures and practices to protect Class Members' PII;

(b)     whether Defendant unlawfully maintained or lost Class Members' PII;

(c)     whether Defendant unreasonably delayed in notifying affected patients of the security breach;

(d)     whether an implied contract exists between Defendant and members of the Class;

(e)     whether Defendant breached the terms of its express and/or implied contract;

(f)     whether Plaintiffs and other Class Members were injured as a result;

(g)     whether Defendant owed Plaintiffs and other Class Members a duty to exercise reasonable care in the keeping of their PII;

(h)     whether Defendant breached a duty of care owed to Class Members;

(i)     whether Plaintiffs and other Class Members were injured as a result;

(j)     whether Defendant knew or should have known that its computer systems were vulnerable to attack;

(k)     whether Plaintiffs and members of the Class suffered injury, including ascertainable losses, as a result of Defendant's conduct (or failure to act);

(l)     whether Plaintiffs and other Class Members have been damaged; and

(m)     whether Plaintiffs and other Class Members are entitled to injunctive relief, restitution, disgorgement, and/or other relief.

39.     *Typicality*. Plaintiffs' claims are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, had their PII compromised and stolen, and were not offered credit monitoring or identity theft protection by Athens Orthopedic in response to the breach. Plaintiffs and all Class Members were injured through the uniform misconduct of Defendant described in this Complaint and assert the same claims for relief.

40.     *Adequacy*. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who are experienced in class actions and complex litigation, including in data breach litigation. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of the Class.

41.     ***Predominance.***   The questions of law and fact common to Class Members predominate over any questions which may affect only individual members.

42.     ***Superiority***.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.  Plaintiffs and other Class Members have been harmed by Defendant's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation arising from the same data breach. Plaintiffs know of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

43.     Class certification is appropriate under O.C.G.A. § 9-11-23(b)(2), in that Defendant has acted in a manner that applies generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class.

44.      Class certification is also appropriate under O.C.G.A. §9-11-23(b)(3) for any Class member who purchased his or her own credit monitoring or identity

theft protection after the data breach or who purchased and placed a credit freeze on his or her accounts.

## COUNTS

### COUNT I – VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### O.C.G.A. §10-1-370 *ET SEQ.*

45.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

46.     Plaintiffs and Class Members are "persons" as defined by the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), O.C.G.A.  §10-1-371(5).

47.     Athens Orthopedic violated and continues to violate the Georgia UDTPA by engaging in the unconscionable, deceptive, or unfair acts or practices as described herein.   This conduct includes, *inter alia*, breaching duties Athens Orthopedic owes to Plaintiffs and the Class pursuant to O.C.G.A.  §10-1-370, et seq., by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

48.     Had Plaintiffs and Class Members known of Athens Orthopedic's inability to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII, then they would not have obtained care through providers employed by or affiliated with Athens Orthopedic.

49.     By omitting the fact that Athens Orthopedic was not providing fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII, Athens Orthopedic violated the Georgia UDTPA.

50.     Plaintiffs and Class Members reasonably relied upon Athens Orthopedic's omissions in obtaining and paying for medical care from providers employed by or affiliated with Athens Orthopedic.

51.     Defendant's omissions regarding Athens Orthopedic's ability to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII was an act likely to mislead Plaintiffs and the members of the Class acting reasonably under the circumstances, and constitutes an unfair and deceptive trade practice in violation of the Georgia UDTPA.

52.     Defendant knew or should have known that it had kept highly relevant and material information from its customers —namely information regarding its inability to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII— and therefore violated the Georgia UDTPA.

53.     As a direct and proximate result of Defendant's violation of the Georgia UDTPA, Plaintiffs and other Class Members will suffer damages in the future,

including the cost of identity theft protection and/or credit monitoring services and the costs associated with placing and maintaining a credit freeze on their accounts over the course of a lifetime, as Plaintiffs and Class Members' PII will never be recovered and made private again.

54.    In addition, the Data Breach has rendered Athens Orthopedic's system(s) even more vulnerable to further unauthorized access and requires that Athens Orthopedic immediately take even more stringent measures to safeguard the PII of Plaintiffs and Class Members in order to prevent future harm.

55.    Plaintiffs seek to enjoin Defendant on terms that the Court considers appropriate in order to prevent future harm to the Plaintiffs and Class Members.

## COUNT II - BREACH OF IMPLIED CONTRACT

56.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

57.    Plaintiffs and the Class delivered their PII to Athens Orthopedic as a required part of obtaining services.

58.    In providing such data, Plaintiffs and Class Members entered into implied contracts with Athens Orthopedic pursuant to which Athens Orthopedic agreed to safeguard and protect their PII and to timely and accurately notify Plaintiffs and Class Members that their PII had been compromised.

59.     In delivering their PII to Defendant, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard their PII.

60.     Plaintiffs and Class Members would not have entrusted their PII to Athens Orthopedic in the absence of such an implied contract.

61.     Athens Orthopedic accepted possession of Plaintiffs' and Class Members' PII for the purpose of providing medical services.

62.     Plaintiffs and other Class Members believed Athens Orthopedic would maintain their PII in a reasonably secure manner, and they provided their PII on that basis for the purpose of obtaining medical services.

63.     The various privacy notices and medical-records-release procedures in place at Athens Orthopedic demonstrate Defendant and its patients mutually understood and acknowledged the sensitive nature of PII provided to Defendant, as well as the confidential nature of medical information generated by Athens Orthopedic.

64.     Had Defendant disclosed to Plaintiffs and Class Members that it did not have adequate security practices to secure their PII, Plaintiffs and Class Members would not have provided their PII to Athens Orthopedic.

65.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

17

66.     Athens Orthopedic breached the implied contracts with Plaintiffs and Class Members by failing to take reasonable measures to safeguard their PII.

67.     As a proximate result of this breach, Plaintiffs and Class Members have suffered or will suffer damages, including the cost of identity theft protection and/or credit monitoring services and the costs associated with placing and maintaining a credit freeze on their accounts over the course of a lifetime.

## COUNT III – UNJUST ENRICHMENT

68.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69.      Plaintiffs and Class Members conferred a monetary benefit on Athens Orthopedic in the form of monies and fees paid for medical services.

70.     The funds paid by the Plaintiffs and Class Members were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs and Class Members.

71.     Athens Orthopedic failed to provide reasonable security, safeguards, and protections for the Plaintiffs' and Class Members' PII, and as a result the Plaintiffs and Class overpaid Defendant.

72.     Athens Orthopedic failed to disclose to Plaintiffs and Class Members that its computer systems and security practices were inadequate to protect their PII against theft.

73.     Under principles of equity and good conscience Athens Orthopedic should not be permitted to retain the money belonging to Plaintiffs and Class Members that they paid for adequate safeguards and security measures to protect Plaintiffs' and Class Members' PII but did not receive.

74.     Athens Orthopedic wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

75.     Athens Orthopedic's enrichment at the expense of Plaintiffs and Class Members was, and continues to be, unjust.

76.     As a result of Defendant's wrongful conduct, as alleged above, Plaintiffs and the Class are entitled to credit monitoring and identity theft protection services free of charge, and to restitution of any payments made for such services and for the costs associated with placing and maintaining a credit freeze on their accounts over the course of a lifetime.

## COUNT IV – NEGLIGENCE

77.     Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

78.     Defendant owed its patients a duty of reasonable care in the handling and safeguarding of PII they entrusted to Athens Orthopedic for purposes of obtaining medical services.

79.     By requiring Plaintiffs and Class Members to submit their PII as a condition of obtaining medical services, Defendant assumed a duty to use reasonable care to safeguard and protect their PII from being compromised by, or improperly disclosed to, unauthorized third parties.

80.     Defendant also had a duty to timely inform Plaintiffs and other Class Members that their PII had been compromised or improperly furnished to unauthorized third parties.

81.     Athens Orthopedic, through the acts described herein, breached its duty of care by, *inter alia*,:

> (a)     failing to properly implement and maintain adequate security measures to protect customer PII from being accessed, disseminated, or misused by unauthorized third parties;
>
> (b)     failing to adequately store Plaintiffs' and other Class Members' PII;
>
> (c)     failing to timely and sufficiently notify Plaintiffs and other Class Members that their PII had been compromised or improperly accessed by unauthorized third parties
>
> (d)     failing to offer credit monitoring or identity theft protective services to Class Members.

82.     As a direct and proximate result of Defendant's negligence, Plaintiffs and other Class Members have suffered, or will suffer, damages, including the cost of identity theft protection and/or credit monitoring services and the costs associated with placing and maintaining a credit freeze on their accounts over the course of a lifetime.

## COUNT V – DECLARATORY JUDGMENT

83.     Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

84.     Plaintiffs and Class Members have stated claims against Athens Orthopedic based on negligence, breach of implied contract, unjust enrichment, and violation of the Georgia UDTPA.

85.     Athens Orthopedic has failed to live up to its obligations to provide reasonable security measures for the PII of Plaintiffs and Class Members, as indicated by the Data Breach that precipitated this lawsuit.

86.     In addition, the Data Breach has rendered Athens Orthopedic's system(s) even more vulnerable to unauthorized access and requires that Athens Orthopedic immediately take even more stringent measures to safeguard the PII of Plaintiffs and Class Members going forward.

87.     A question has arisen in the wake of Athens Orthopedic's Data Breach regarding the actions Athens Orthopedic is currently taking to provide reasonable data security measures to protect the PII of Plaintiffs and the Class.  On information and belief, Athens Orthopedic maintains that its security measures were, and remain, reasonably adequate.  On information and belief, Athens Orthopedic further denies that it previously had or now has any obligation to better safeguard the PII of Plaintiffs and the Class.

88.     Plaintiffs and Class Members thus seek a declaration that Athens Orthopedic is not in compliance with its existing obligations, and that Athens Orthopedic must implement specific additional, prudent security practices, as outlined below, to provide reasonable protection of Plaintiffs' and the Class Member's PII.

89.     Specifically, Plaintiffs seek a declaration that Athens Orthopedic must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class, including, but not limited to: (1) engaging third-party security auditors/penetration testers, as well as internal security personnel to conduct testing consistent with prudent data-security industry practices, including simulated attacks, penetration tests, and audits on Athens Orthopedic's systems on a periodic basis; (2) engaging third-party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or modified procedures; (4) purging, deleting, and destroying, in a secure manner, PII not necessary for its business operations; (5) conducting regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third

party regarding the security of the computer systems Athens Orthopedic uses to store PII; and (8) meaningfully educating patients and other Data Breach victims about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

90.     In addition, Plaintiffs seek a declaration that to comply with its existing obligations, Athens Orthopedic must provide credit monitoring and identity theft protection to Plaintiffs and Members of the Class.

## COUNT VI – ATTORNEYS' FEES UNDER O.C.G.A. §13-6-11

91.     Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

92.     Defendant has acted in bad faith in failing to provide credit monitoring and identity theft protection to Plaintiffs and Class Members and has been stubbornly litigious and caused Plaintiffs unnecessary trouble and expense in their attempt to recover relief owed to them and Class Members.

93.     As noted in footnote 3, it has become standard practice for companies whose patients, customers, and clients become victims of data breaches to provide at least a year of credit monitoring and identity theft protection.  Athens Orthopedic nevertheless has refused to provide even this basic relief.

94.     Defendant has caused Plaintiffs unnecessary trouble and expense in their attempt to obtain a recovery and protection.  As such, Plaintiffs are entitled to

recovery of attorneys' fees pursuant to O.C.G.A. §13-6-11 and other applicable law in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     That the Court certify this case as a class action and appoint the named Plaintiffs to be Class representatives and their counsel to be Class counsel;

B.     That the Court award Plaintiffs appropriate relief, to include actual and statutory damages, disgorgement, and restitution;

C.     That the Court award Plaintiffs preliminary or other equitable or declaratory relief as may be appropriate by way of applicable law, including but not limited to the provision of credit and identity theft protection for the life of the victim;

D.     That the Court enter such additional orders or judgments as may be necessary to prevent these practices and to restore to any person in interest any money or property which may have been acquired by means of the violations alleged herein;

E.     That the Court award Plaintiffs such other, favorable relief as may be available and appropriate under law or at equity;

F.     That the Court award costs and reasonable attorneys' fees; and

G.    That the Court enter such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 20, 2017

LAW OFFICES OF DAVID A. BAIN, LLC

*/s/ David A. Bain*

David A. Bain
Georgia Bar No. 032449
1050 Promenade II
1230 Peachtree Street, NE
Atlanta, GA  30309
Tel:  (404) 724-9990
Fax:  (404) 724-9986
dbain@bain-law.com


Mark S. Goldman
Douglas J. Bench
GOLDMAN SCARLATO & PENNY, PC
Eight Tower Bridge, Ste. 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: (484) 342-0700
goldman@lawgsp.com
bench@lawgsp.com

*Counsel for Plaintiffs and the Proposed Class*