**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT<br><br>This document relates to: ALL ACTIONS |

**EQUIFAX'S OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED
RELIEF FROM DISCOVERY STAY AND ENTRY OF ORDER RELATING
TO INTERVIEWS OF DEFENDANTS' FORMER EMPLOYEES**

Plaintiffs' motion seeks two unrelated forms of relief: (i) that the Court set aside Local Rule 26.2 and abandon the previously agreed-upon Scheduling Order in this case to allow Plaintiffs to obtain substantial merits discovery before the Court rules on Equifax's pending motions to dismiss, which are fully briefed and will be argued on December 14th; and, (ii) that the Court enter an order governing Plaintiffs' ex parte  interviews of former Equifax employees.

The Court should deny Plaintiffs' first request in its entirety.  To depart from this Court's Local Rules and the mutually agreed-upon Scheduling Order, Plaintiffs must show *good cause* why discovery must be obtained *now* and not after the forthcoming ruling on the pending motions to dismiss, which will be argued next month.  The only reasons Plaintiffs ask this Court to deviate from the schedule

agreed to and entered by the Court in April are that doing so will "advance" the litigation and impose "little burden" on Equifax.  These arguments are not only incorrect, but they entirely avoid the controlling issue of timing and fail to explain why Plaintiffs need immediate relief (they do not).  Moreover, Plaintiffs' specific discovery requests—seeking every document Equifax provided to any government regulators, up to five depositions, including a Rule 30(b)(6) deposition, and the production of documents from multiple third parties—far exceed the scope of permissible discovery at any time and would only invite further discovery disputes before this Court at a time when the Court is otherwise focused on the threshold motions to dismiss.  Consequently, the Court should deny Plaintiffs' motion to lift the stay on discovery.

The Court should also decline to enter Plaintiffs' proposed order governing ex parte interviews of former Equifax employees.  As an initial matter, Plaintiffs fail to support their claim that Equifax has inappropriately impeded their ability to conduct such interviews.  In truth, Equifax has never objected to such interviews taking place, even though, as Equifax has continuously reminded Plaintiffs, such interviews pose a substantial risk of the disclosure of (i) privileged communications and information protected by the work product doctrine and (ii) confidential and trade secret information belonging to Equifax and third

parties.  While Equifax generally agrees that the conditions proposed in Plaintiffs' motion are necessary to guard against such disclosures, they are not sufficient.  The additional conditions shown in Equifax's proposed order, submitted herewith, are necessary to sufficiently protect Equifax's interests without imposing any additional burden on Plaintiffs' ability to conduct the interviews.  The Court should, therefore, reject Plaintiffs' proposal and, instead, adopt and enter Equifax's proposed order.

## <u>BACKGROUND</u>

After the JPML created this MDL, the Court and the parties began carefully crafting the ground rules and procedures to govern discovery in these proceedings, including certain pre-discovery measures.  To date, the parties have consistently cooperated with one another and completed most of the agreed-upon pre-discovery tasks.

## I.    THE PARTIES EFFORTS TO ADVANCE THE LITIGATION.

Initially, the parties negotiated, mutually agreed to, and jointly submitted a Corrected Joint Preliminary Report and Discovery Plan, which the Court adopted and entered as the Scheduling Order in this case.  Jt. Corrected Prelim. Rpt. & Discovery Plan, ECF No. 255 [hereinafter Scheduling Order]; Entry of Scheduling Order, ECF No. 260.  The Scheduling Order specifically provides that discovery

does not begin until "30 days after the answer is filed in the consumer track or the financial institution track, whichever is later." Scheduling Order at 17. It further provides that no document production shall occur until "30 days after [the Court rules] on Equifax's motions to dismiss in the Financial Institution or in the Consumer Track, whichever is later." *Id.* These provisions are consistent with Local Rule 26.2, which likewise stays discovery until 30 days after the first defendant answers the complaint. LR 26.2, NDGa. Equifax has not filed an answer in either track; motions to dismiss the consolidated complaints in both tracks are now fully briefed and pending for decision. Thus, pursuant to the Local Rules and the Scheduling Order, the discovery period for this case is not yet open.

Given the complexity of these proceedings and the extent of anticipated discovery, Equifax stepped out of the normal procedures in this District and agreed in the Scheduling Order to a slight modification of Local Rule 26.2. Instead of staying *all* discovery, the Scheduling Order requires the parties to complete certain pre-discovery tasks before Equifax files an answer, including negotiating a protective order, exchanging initial requests for production, serving document preservation subpoenas on third parties, and conferring about these and other topics. *See generally* Scheduling Order; CMO-2 at 7–8, ECF No. 87. Similarly, the parties negotiated and submitted CMO-4, which sets forth the agreed-upon

discovery protocol for these proceedings.  CMO-4, ECF No. 261.  The parties have completed all of those tasks.

Pursuant to the agreed upon Scheduling Order, the parties exchanged their first sets of requests for production of documents in late June.  They also held the initial meet-and-confer about those requests.  During that meet-and-confer, Plaintiffs demanded that Equifax produce documents that it had previously provided to any government entities that conducted an investigation following the cybersecurity incident and a list of search terms Equifax intends to use to locate documents responsive to Plaintiffs' requests, even though the purpose of that meet-and-confer was for the parties to prepare to move forward once the pending motions to dismiss are decided.

At a meet-and-confer in mid-September, Equifax told Plaintiffs that, because discovery had not yet commenced, it would not re-produce documents it had previously produced during any government and regulatory investigations.  At the September status conference, Plaintiffs made the remarkable claim that they were unable to negotiate search terms for identifying responsive documents *because they had not yet received any documents from Equifax*—despite the fact that discovery is stayed and CMO-4 imposes no such requirement.  Status Conf. Tr. 14:9–14, 15:1–4, Sept. 26, 2018, ECF No. 476.  The Court deferred ruling on the

issue and directed Plaintiffs to file the present motion.

Under CMO-4, the parties are required to negotiate search terms before using any search terms to locate and cull potentially responsive documents. CMO-4 at 6. Search terms are used to locate responsive documents; CMO-4 does not contemplate producing documents to identify search terms. And even though Equifax will not use any search terms until it is required to actually locate and produce documents (and document production will not begin until the parties have resolved objections to document requests, which will not be served until 30 days after the Court rules on the pending motions to dismiss), Equifax provided Plaintiffs with its search terms on October 30. *See* Ex. B, Email from Equifax to Plaintiffs (Oct. 30, 2018). To date, Plaintiffs have not proposed any search terms, responded to Equifax's search terms, or indicated that they have issues with Equifax's search terms, but rather insist that they need discovery.

## II. THE PARTIES' COMPETING PROPOSALS REGARDING FORMER EMPLOYEE INTERVIEWS.

Meanwhile, the parties were also negotiating a separate, unrelated request from Plaintiffs. In mid-May, Plaintiffs wrote Equifax regarding their desire to conduct ex parte interviews of unidentified former Equifax employees who had thus far refused to speak with Plaintiffs' investigators. *See* Ex. C, Letter from Plaintiffs to Equifax (May 16, 2018). Plaintiffs accuse Equifax of inappropriately

laying down "impenetrable roadblocks" to any such interviews, but they cannot credibly support that claim.  Pls.' Mot. at 17, ECF No. 488.  First, Plaintiffs seem to take issue with the fact that certain former employees apparently refused to speak with them due to "an NDA," but there is nothing inherently wrong with a former employee refusing to speak with an investigator due to his or her concern over violating an NDA.  Plaintiffs do not contend that any Equifax NDA is invalid or unenforceable or fails to serve the legitimate purpose of protecting Equifax's confidential information.  So their attack on any former employee's reluctance to speak based on a valid NDA is misplaced.[1]

In fact, Equifax informed Plaintiffs in early June that it did not object to such interviews and would agree to provide former employees with certain assurances Plaintiffs requested, so long as Plaintiffs agreed to certain reasonable conditions to minimize the risks of the disclosure of any privileged, work-product, and confidential information.  *See* Ex. D, Letter from Equifax to Plaintiffs at 2 (June 6,

---

[1] The only evidence Plaintiffs put forth to support their tampering accusation is that a handful of former employees refused to speak to their investigators, citing "an NDA" and/or directions from Equifax not to speak about the cybersecurity incident.  Pls.' Mot. Ex. 3, Bursey Decl. ¶¶ 4, 6–7, ECF No. 488-4; *id.* Ex. 4, Walters Decl. ¶ 4, ECF No. 488-5.  Putting aside that any such statements are hearsay, *see* Fed. R. Evid. 801(c), neither the mere existence of an NDA between Equifax and a former employee nor any directions Equifax may have previously given its former employees, many of whom were involved in attorney-client communications, suggest that Equifax inappropriately impeded the interviews.

2018) (requesting Plaintiffs' counsel identify the former employees they wished to interview, consistent with the conditions CMO-4 imposes on former employee depositions, *see* CMO-4 at 12).  Plaintiffs rejected Equifax's proposal, but the parties continued to confer regarding the interviews.

The following month, after further discussion, Equifax provided Plaintiffs with a proposed script for Plaintiffs to use during any ex parte interviews with former employees, and the parties exchanged proposed revisions to the script.  *See* Ex. E, Emails Between Equifax & Plaintiffs (July 17–18, 2018).  Plaintiffs also proposed that Equifax's outside counsel send a letter to former employees to allay any concerns the employees might have about being interviewed—even though Plaintiffs refused to identify the former employees they wanted to interview.  *Id.*

At the mid-September meet-and-confer, Equifax reiterated its position that it would not object to such interviews, subject to Plaintiffs' agreement to comply with some additional conditions to address Equifax's legitimate concerns about privileged and confidential information.  Specifically, Equifax asked Plaintiffs to (i) identify the former employees they intended to interview, (ii) limit the scope of the interviews to events that occurred before Equifax and its outside counsel began investigating and responding to the cybersecurity incident, and (iii) provide Equifax with a list of questions Plaintiffs intended to ask the employees.  Pls.' Mot.

Ex. 2, Siegel Decl. ¶ 7, ECF No. 488-3.  Plaintiffs refused Equifax's offer.  *Id.* ¶ 8.

Equifax continued to confer with Plaintiffs on the issue and provided proposed revisions to the interview script and letter to be sent to the former employees.  *See* Ex. F, Email from Equifax to Plaintiffs at 1–2 (Sept. 19, 2018).  Equifax also renewed its requests from the mid-September meet-and-confer, explaining that its proposals were necessary "to minimize the risk of disclosure of privileged or work product information and to [e]nsure that Equifax's and third parties' confidential information is not disclosed."  *Id.* at 1.

Plaintiffs did not respond to Equifax's proposals before the September status conference, at which time they reiterated their opposition to Equifax's earlier proposals.  Plaintiffs also asked Equifax to produce "exemplars" of the NDAs that the *unidentified* former employees had signed.  Status Conf. Tr. 44:10, 45:1–6.  The Court deferred ruling on the issues and directed Equifax to produce "four of the agreements of employees that [Equifax] think[s] the plaintiffs are most likely to want to talk to."  Status Conf. Tr. 43:15–17, 45:7–9.

Following the status conference, Equifax complied with the Court's order and produced four sample NDAs relevant to the positions of the former employees Equifax believes Plaintiffs intend to interview.  Ex. G, Sumner Decl. ¶ 5.  Equifax also reiterated that it has confidentiality agreements in place with third parties that

could apply to former employees of the company.   The next day, Plaintiffs informed Equifax, for the first time, that they wanted samples of NDAs *relating specifically to or signed after* the cybersecurity incident. *Id.* ¶ 7.[2]  At another meet-and-confer on October 15th, Equifax informed Plaintiffs that Equifax does not have any such NDAs. *Id.* ¶ 8.

Days before Plaintiffs filed the present motion, Equifax sent Plaintiffs additional sample third-party NDAs as well as a letter regarding the former employee interviews.   In the letter, Equifax explained that, "in an effort to avoid motion practice on th[e] issue," it was "willing to forego" certain previous requests it made previously that Plaintiffs had refused.   Ex. H, Letter from Equifax to Plaintiffs at 2 (Oct. 18, 2018).   Equifax also substantially agreed to each of the conditions Plaintiffs put forth in their letter brief.  *Id.* at 2–3. Equifax also signaled

---

[2] Plaintiffs contend that incident-specific NDAs "were the express topic of months of discussion and Plaintiffs' letter brief."  Pls.' Mot. Ex. 1, Guglielmo Decl. ¶ 14, ECF No. 488-2.   That representation is belied by their May 16 letter and their counsel's statements at the status conference.  *See* Ex. C at 1–2 (failing to mention incident-specific NDAs); Status Conf. Tr. 44:10, 45:1–6 (requesting "examples" of employee and third-party NDAs, without temporal or subject matter limitation).  In any event, Equifax informed Plaintiffs at the October 15th meet-and-confer that Equifax does not have any incident-specific NDAs, Ex. G ¶ 8, and Equifax's proposed order regarding former employee interviews only prohibits the disclosure of "confidential and trade secret information . . . that is *unrelated* to issues regarding the cybersecurity incident,"  Ex. A, Proposed Order ¶ 6 (emphasis added).

its willingness to continue discussing its proposed revisions to the letter to be sent to former employees and the interview script. *Id.* at 2. Plaintiffs omit any reference to this proposal—or Equifax's concessions—in their motion, and now claim that the revisions would discourage and confuse the witnesses, Ex. I, Email from Plaintiffs to Equifax (Nov. 5, 2018). And instead of sending Equifax a counter-proposal, Plaintiffs have chosen to continue their pursuit of this motion.

## ARGUMENT

### I.   PLAINTIFFS' REQUEST FOR "LIMITED" RELIEF FROM THE DISCOVERY STAY SHOULD BE DENIED.

Plaintiffs' request to stray from both the Local Rules and their earlier agreement in order to begin early discovery for the purported "limited" purposes (i) of compelling Equifax to produce documents Equifax previously provided during government and regulatory investigations, (ii) of allowing Plaintiffs to conduct five depositions, including one Rule 30(b)(6) deposition, and (iii) of compelling production of documents from third parties, should be denied. *First*, Plaintiffs' discovery requests are barred by the plain language of Local Rule 26.2 and the *mutually agreed upon* Scheduling Order. *Second*, there is no good cause to deviate from the Local Rule or to modify the Scheduling Order. *Third*, and in any event, Plaintiffs' "limited" discovery requests are improper at this stage of the proceedings, if not entirely.

11

### A.   Plaintiffs' Discovery Requests Are Barred By Local Rule 26.2 and the Agreed-Upon Scheduling Order.

Local Rule 26.2 stays any pre-answer discovery in each case that was transferred to, or filed in, this Court.  LR 26.2, NDGa.  Moreover, the Scheduling Order—which the parties *negotiated, mutually agreed to, and jointly proposed* after the cases were transferred into this MDL—incorporated and adopted Local Rule 26.2 and continued the stay on pre-answer discovery.  Scheduling Order at 17; *see also id.* at 20 (noting that "Equifax would oppose" any effort to obtain early discovery).  Plaintiffs' discovery requests are therefore in derogation of Local Rule 26.2, the Scheduling Order, *and* the agreement of the parties.

It is beyond dispute that discovery imposes significant costs on litigants and the Court.  *See Chudasama v. Mazda Motor Corp.* 123 F.3d 1353, 1367–68 (11th Cir. 1997).  As such, the Eleventh Circuit repeatedly has instructed that "motions to dismiss for failure to state a claim 'should be resolved before discovery begins.'"  *Roberts v. FNB S. of Alma*, 716 F. App'x 854, 857 (11th Cir. 2017) (per curiam) (quoting *Chudasama*, 123 F.3d at 1367), *cert. denied*, 138 S. Ct. 2659 (2018).  This is because dismissal of "a nonmeritorious claim before discovery has begun" avoids imposing unnecessary costs on the litigants and courts.  *Chudasama*, 123 F.3d at 1368.  So, as a general matter, courts should eliminate any legally unsupported claims "before the discovery stage."  *Id.*  These interests are

heightened in this case, where the pending motions to dismiss—seeking to dismiss *all of Plaintiffs' 129 different causes of action*—not only have the potential to dispose of the entire case (rendering *any discovery* unnecessary) but also, short of such a dismissal, may eliminate many claims on which entire areas of discovery would be based.[3]

The agreed-upon Scheduling Order, which incorporates the stay on pre-answer fact discovery found in Local Rule 26.2, thus strikes a balance between the parties' and the Court's interests in advancing the litigation and their interests in avoiding substantial costs and burdens associated with potentially unnecessary discovery and related discovery disputes.   Allowing Plaintiffs to proceed with fact discovery now will not only upset that balance, but will also likely "unduly enlarge the scope of discovery," *id.*   The discovery stay is necessary to ensure that discovery in this case, if needed at all, will be tailored to the remaining legally viable claims.[4]

---

[3] Moreover, the unnecessary-cost-avoidance rationale for resolving motions to dismiss before permitting any fact discovery is just as strong, if not stronger, with respect to third parties who are only collaterally involved with the litigation and on whom courts are especially sensitive about imposing unnecessary burdens and expenses.

[4] Plaintiffs assert that other districts within the Eleventh Circuit have implemented *Chudasama* differently, including by requiring a defendant to move for and show the propriety of a discovery stay. Pls.' Mot. at 14 & n.2.  That, of course, is not the

### B.   Plaintiffs Have Not Shown Good Cause to Change the Schedule.

Plaintiffs argue that the discovery stay should be lifted because it would advance the litigation and would not impose an undue burden on Equifax. Not only are Plaintiffs wrong, but their argument does not even address the correct legal standard. Plaintiffs must show *good cause* to deviate from the Local Rule and to amend the Scheduling Order to proceed with *early* discovery. *See* Fed. R. Civ. P. 16(b)(4) (stating that a scheduling order may be modified "only for good cause and with the judge's consent"); *Merial LLC v. Fidopharm, Inc.*, No. 1:13-cv-1207, 2013 WL 12072140, at *1 (N.D. Ga. May 22, 2013) (requiring good cause to deviate from Local Rule 26.2). To carry that burden, Plaintiffs must answer the question *why* they need that discovery now, rather than after the Court rules on the pending motions to dismiss. But Plaintiffs fail to advance a single good reason why they should be allowed to conduct early discovery now, when formal discovery, if necessary, will soon be open.

The primary reason Plaintiffs offer to explain why they need early discovery is their claimed inability to negotiate search terms. But that conception of the discovery process is exactly backwards. To comply with a request for production, the producing party must locate responsive documents, review them for relevance,

---

rule in this District, which follows *Chudasama* through Local Rule 26.2 and places the burden of lifting the discovery stay on the party seeking early discovery.

privilege, or other protections, and *then* produce them.  Search terms are intended to assist the producing party with the first and second steps of this process *before* any documents are produced.  The discovery protocol adopts this common-sense order of performance.  *See* CMO-4 at 6 (requiring the parties to "first confer" about search terms "before using any such search terms").  Instead, Plaintiffs ask the Court to compel Equifax to produce a broad array of documents, without regard to their relevance, so they can use that discovery to propose search terms.  Adopting Plaintiffs' produce-now, cull-later approach would defeat the purpose and eliminate the benefits of using search terms altogether and result in duplicative productions.  The Court should decline Plaintiffs' invitation to do so.

Moreover, Plaintiffs are incorrect that lifting the stay on discovery would materially advance the litigation and not impose an undue burden on Equifax or third parties.  First, negotiations over search terms are not delaying this litigation.  Equifax has produced a list of proposed search terms to Plaintiffs, and the parties are conferring about those terms just as the case management orders contemplate.  Because document production is not scheduled to begin until 30 days after the Court rules on the pending motions to dismiss, there is ample time for the parties to reach an agreement "before [Equifax] us[es] such search terms," CMO-4 at 6.  The Court's rulings on the pending motions to dismiss could render any discovery

15

produced before that time irrelevant, and the production of irrelevant information, by definition, does nothing to advance Plaintiffs' case.  On the other hand, and contrary to Plaintiffs' claims, lifting the stay on discovery would impose significant burdens on Equifax and third parties in terms of the time, effort, and costs needed to locate, review, and produce any documents and to schedule, prepare for, and attend any depositions.  And because the parties do not yet know which, if any, of Plaintiffs' claims are legally cognizable, continuing the stay of discovery until the Court rules on the motions to dismiss avoids the possibility of engaging in needless discovery.  *See Chudasama*, 123 F.3d at 1368.

The motions to dismiss are now fully briefed, and the Court is scheduled to hear oral arguments on them on December 14th.  As soon as the motions are decided and the stay on discovery is lifted, the parties will know which, if any, claims remain, and they will be able to appropriately tailor their requests and productions.  Plaintiffs' concerns about relevant information being lost, forgotten, or destroyed in the meantime are entirely unfounded.  Plaintiffs have not made any showing that any potential evidence is in actual danger of being lost or that any unidentified potential deponent's (approximately 15 month-old) memories will fade before the Court decides the pending motions to dismiss.  Because Plaintiffs have failed to show good cause to depart from that economical procedure,

Plaintiffs' motion should be denied.

### C.  Regardless, Plaintiffs' Discovery Requests Are Improper.

Even if there were good cause to allow early discovery—and there is not—Plaintiffs' discovery requests are nevertheless improper.  Their blanket request for all documents provided by Equifax to government entities in connection with different proceedings and investigations—what courts refer to as "cloned" or "piggyback" discovery—is overbroad, not directed to relevant information, and not proportional to the known (as opposed to speculative) needs of the case.  That request would not be proper during the normal discovery period, and it is much less so now.  And, as Plaintiffs' motion demonstrates, their other requests are simply backdoor attempts to obtain early merits discovery.  Each and all of their requests should be denied.

Plaintiffs' request for *every document* Equifax produced to other governmental entities that investigated the cybersecurity incident is improper on its face.  *See Strickland v. Tristar Prods., Inc.*, No. 4:16-cv-51, 2017 WL 2874621, at *1 (S.D. Ga. July 5, 2017) ("Plaintiffs are not entitled to 'all documents' and 'all depositions' in the 10 identified [related] cases, regardless of the pertinence of those materials to the instant case.  They simply must identify the materials more specifically than 'all.'").  Courts across the country have routinely denied similar

17

requests for cloned discovery, reasoning that they are not properly tailored to information discoverable in the specific case at hand:

> "[C]loned discovery", requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial . . . . It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.

*King County v. Merrill Lynch & Co.*, No. 10-cv-1156, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011); *see also, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL 2672, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (noting that "such a practice would expand the scope of discovery beyond that allowed by the Federal Rules"); *Wollam v. Wright Med. Grp.*, No. 10-cv-03104-DME-BNB, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011) (denying motion to compel because sweeping request for all discovery produced in other matters "simply reaches too far").[5]

---

[5] The cases Plaintiffs rely on are inapposite. There is no evidence that the prevailing practice in similar litigation is to allow such cloned discovery. *Cf. In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03-2038, 2004 WL 2743591, at *12-13 (E.D. Pa. Nov. 29, 2004) ("prevailing practice" in antitrust litigation was to produce cloned discovery). The only parallel proceeding Plaintiffs identify is the SEC action, which they admit is unrelated to the claims in this case, *see* Pls.' Mot. at 12–13 (noting SEC case involves alleged securities violations). *Cf. In re Bank of Am. Corp. Securities Litigation*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at

As courts consistently recognize, government investigations in particular usually involve much broader inquiries than are at issue in civil litigation:

> Plaintiff requests all . . . documents that defendants previously produced in other lawsuits or to 'any congressional body, regulatory agency, law enforcement agency or person.' This request for 'cloned discovery' is . . . overbroad and of speculative relevance. . . . Government investigations also may be much broader than the limited subject matter of a lawsuit. Moreover, defendants contend that, far from being the 'near zero' burden described by plaintiff, the time, expense, and coordination required for multiple reproductions are substantial . . . .

*Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, No. 12-cv-10085, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (citations omitted); *see also, e.g.*, *Drake v. Allergan, Inc.*, No. 2:13-cv-234, 2014 WL 12664971, at *3 (D. Vt. Mar. 19, 2014) ("[T]he scope of the discovery demands issued by the Department of Justice during its criminal investigation may have been much broader than relevant to this litigation."). For example, Plaintiffs ask for documents provided to the SEC. Pls.' Mot. at 13. But, as Plaintiffs concede, the SEC inquiry involves alleged violations of securities laws, *id.* at 12, which are not at issue in this case. Moreover, government investigations, and the discovery conducted in them, typically are confidential—further complicating requests in civil litigation to disclose information pertaining to them. *See Cap. Ventures*, 2014 WL 1431124, at

---

*3 (S.D.N.Y. Nov. 16, 2009) (plaintiffs would be disadvantaged in light of pace of discovery in parallel proceeding).

*3 ("Communications with regulators are also subject to numerous confidentiality and privilege issues.").

Plaintiffs' other requests are no less improper. They are requests for typical merits discovery, which should await the Court's ruling on the pending motions to dismiss. For example, Plaintiffs unabashedly admit that they would ask Equifax's Rule 30(b)(6) witness "basic facts relating to the breach," Pls.' Mot. at 11, which is clearly a merits inquiry. And Plaintiffs concede that their requests are motivated, at least in part, by their desire to uncover grounds for a possible preliminary injunction. *Id.* at 10. In other words, they seek permission to conduct what they admit is an improper fishing expedition. *See S.B. Tenet Healthcare Corp.*, 732 F. App'x 721, 724–25 (11th Cir. 2018) (per curiam) (holding plaintiff was not entitled to discovery "to unearth facts to support her claims" while motion to dismiss was pending); *Rodriguez-Torres v. Gov't Dev. Bank of P.R.*, 265 F.R.D. 40, 44 (D.P.R. 2010) (denying discovery request that was "merely a fishing expedition to find out if there is any evidence that supports [the plaintiffs'] claim"). Because the parties can currently only speculate whether any claims will proceed to formal discovery, allowing any discovery at this time would necessarily risk wasting the producing parties' (whether Equifax's or third parties') and the Court's

valuable resources on costly and potentially useless endeavors.[6]   Plaintiffs'

backdoor request for early merits discovery should, therefore, be denied.

## II.   THE COURT SHOULD ADOPT EQUIFAX'S PROPOSED ORDER GOVERNING INTERVIEWS WITH FORMER EMPLOYEES AND REJECT PLAINTIFFS' ALTERNATIVE ORDER.

Equifax and Plaintiffs have engaged in significant efforts to reach an

agreement on Plaintiffs' request to conduct ex parte interviews of former Equifax

employees.  *See supra* Background, Section II.  In fact, *before Plaintiffs filed the*

*present motion*, Equifax wrote Plaintiffs, not only substantially agreeing to all of

the conditions Plaintiffs had proposed, but also withdrawing Equifax's proposals

that Plaintiffs previously refused.  *See* Ex. H at 2–3.  In any event, Plaintiffs'

proposed conditions on the ex parte interviews fail to fully address Equifax's

---

[6] Allowing Plaintiffs' request would inevitably lead to a similar request from the plaintiffs in the Securities Action (No. 1:17-cv-3463), where, as here, the defendants' motion to dismiss is fully briefed and scheduled for oral argument early next month.  As the Court observed, the discovery stay imposed in that case by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was intended by Congress not only to shield securities class action defendants from the burden (and threat) of expensive discovery, but also "to prevent plaintiffs from using discovery as a fishing expedition to find sustainable claims."  *In re Equifax Sec. Litig.*, No. 1:17-cv-3463-TWT, 2018 WL 3023278, at *6 (N.D. Ga. June 18, 2018).  Accordingly, while any request by the Securities Action plaintiffs to engage in discovery before the motion to dismiss in that case is resolved would undermine the underlying purposes of the PSLRA, Equifax anticipates that, if the Court were Plaintiffs' motion to lift the discovery stay here, the Securities Action plaintiffs will seek leave to take corresponding discovery, thus subjecting Equifax to the added burden of opposing an additional request in the Securities Action.

legitimate concerns about disclosure of privileged and confidential information. Equifax's proposed order, on the other hand, adequately protects those interests while imposing little to no added burden on Plaintiffs. *See generally* Ex. A. The Court should therefore deny Plaintiffs' motion and instead adopt Equifax's proposed order.

First, Plaintiffs' proposal does not prohibit against improper disclosure of information covered by NDAs and confidentiality agreements applicable to former employees, both with Equifax and third parties. *See* Pls.' Mot. at 19–20. While Equifax recognizes that NDAs it has with former employees will not preclude disclosure of information relevant to this litigation, Plaintiffs are not entitled to carte blanche ask former employees about highly confidential and proprietary matters that bear no relation to this case. Nor should Plaintiffs have carte blanche to ask former employees about confidential information that might belong to third parties (such as consultants, clients, and other vendors), as Equifax cannot unilaterally waive confidentiality agreements it has entered into with third parties. That is the case *even if* the information is subject to the protective order in this case. To address these legitimate concerns, Equifax's proposed order—unlike Plaintiffs'—prohibits the disclosure of (i) information unrelated to this litigation or Equifax's information security program and (ii) information belonging to third

22

parties that is subject to confidentiality agreements between those third parties and Equifax.  *See* Ex. A ¶ 7.

Second, Plaintiffs' approach leaves too much to chance by not requiring their counsel or investigators to advise the witnesses not to disclose privileged, work-product, or confidential information.  Instead, it puts the entire onus on the lawyer or the investigator conducting the interview.  Pls.' Mot. at 19.  But the witness is in a better position to know whether a particular question calls for privileged, work-product, or confidential information than is the interviewer, especially in this case because non-attorney investigators will conduct some of the interviews.  *See G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 534–35 (S.D.N.Y. 2001) (recognizing enhanced risk of inadvertent disclosure when non-attorney investigators interview employees about topics "dangerously close" to privileged matters).  For these reasons, courts routinely require the interviewing party to fully advise the witnesses of their rights and obligations with respect to the interviews, including their obligation to avoid improperly disclosing any privileged information, and routinely impose conditions on the interviews to mitigate the harms of any improper disclosures.  *See, e.g.*, *NAACP v. Fla. Dep't Corr.*, 122 F. Supp. 2d 1335, 1341 (M.D. Fla. 2000) (requiring plaintiffs to advise former employees not to disclose privileged information); *Joynes v. NCL Am., Inc.*, No.

23

08-23493-CIV, 2010 WL 107733, at *1 (S.D. Fla. Jan. 7, 2010) (R&R) (same); *Jones v. City of College Park*, No. 1:05-CV-1797-JTC, 2009 WL 10666066, at *2 (N.D. Ga. Aug. 26, 2009) (requiring plaintiffs' counsel to inform the former employees they represent a party in an action against the employees' former employer and to advise the employee that the interview is voluntary); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 562 (N.D. Ga. 1992) (requiring similar advice by letter); *Hoffman v. Sbarro, Inc.*, No. 97 CIV. 4484 (SS), 1997 WL 736703, at *2 (S.D.N.Y. Nov. 26, 1997) (requiring plaintiffs' counsel to report any disclosure of potentially privileged information to the court).

Consistent with that authority, Equifax's proposed order: (i) requires Plaintiffs to advise witnesses not to disclose any privileged or otherwise protected information or any confidential information covered under Equifax or third-party NDAs; (ii) requires the parties to reach an agreement within seven (7) days on the contents of a script Plaintiffs' counsel and investigators are to use during the interviews; and (iii) requires Plaintiffs to notify Equifax upon a disclosure of any information that may reasonably be considered privileged, protected, or confidential so that Equifax can mitigate the effect of that improper disclosure. Ex. A ¶¶ 5–7.

Finally, and although Equifax does not know who Plaintiffs intend to

interview, they likely wish to interview high-level employees who had considerable involvement with Equifax and its outside counsel's investigation of the cybersecurity incident. In some cases, courts have refused altogether to allow similarly situated former employees to be interviewed on an ex parte basis. *See Saliga v. Chemtura Corp.*, No. 3:12cv832(RNC), 2013 WL 6097100, at *1 (D. Conn. Nov. 20, 2013) (prohibiting ex parte interviews of high-level employees who had considerable involvement with counsel regarding the litigation); *Camden v. Maryland*, 910 F. Supp. 1115, 1117 (D. Md. 1996) (same); *see also G-I Holdings, Inc.*, 199 F.R.D. at 534–35 (requiring interviews be conducted in presence of defendants' counsel or before a special master). Here, where Equifax has agreed to allow Plaintiffs to investigate their claims by conducting ex parte interviews of former employees, safeguards—beyond those Plaintiffs propose—are necessary and equitable. Equifax's proposal strikes the proper balance between Plaintiffs' search for information and Equifax's interests in prohibiting improper disclosures.

## **CONCLUSION**

The Court should deny Plaintiffs' motion and enter the order proposed by Equifax and submitted herewith.

DATED:  November 9, 2018                    Respectfully Submitted,

                                            */s/ David L. Balser*
                                            **KING & SPALDING LLP**
                                            David L. Balser
                                              Georgia Bar No. 035835
                                            Phyllis B. Sumner
                                              Georgia Bar No. 692165
                                            S. Stewart Haskins II
                                              Georgia Bar No. 336104
                                            Elizabeth D. Adler
                                              Georgia Bar No. 558185
                                            John C. Toro
                                              Georgia Bar No. 175145
                                            1180 Peachtree Street, N.E.
                                            Atlanta, Georgia  30309
                                            Tel.:  (404) 572-4600
                                            Fax:  (404) 572-5140
                                            dbalser@kslaw.com
                                            psumner@kslaw.com
                                            shaskins@kslaw.com
                                            eadler@kslaw.com
                                            jtoro@kslaw.com

                                            *Counsel for Equifax Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

DATED:  November 9, 2018

*/s/ David L. Balser*
David L. Balser

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser