IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE EQUIFAX INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 2800<br>Case No. 1:17-md-2800<br><br>CONSUMER TRACK<br>*Block v. Equifax, Inc., et al.*<br>Member Case No. 1:17-cv-05341 |

**DEFENDANTS SUSAN MAULDIN AND JOE SANDERS'
OPPOSITION TO PLAINTIFF CARSON BLOCK'S
MOTION TO ESTABLISH A SEPARATE DISCOVERY TRACK**

COMES NOW Defendants Susan Mauldin ("Mauldin") and Joe Sanders ("Sanders"), Defendants in the above styled action, and hereby submits this Brief in Opposition to Plaintiff Cason Block's Motion to Establish a Separate Discovery Track, and shows the Court as follows:

INTRODUCTION

The Court has entered a series of orders in this multi-district litigation to keep proceedings reasonably cost-effective and efficient. With over four hundred cases being administered by the Court, careful calibration of pretrial proceedings is an unavoidable necessity.

Plaintiff Carson Block ("Block"), however, contends that the discovery tracks established by the Court should not apply to him. Nor should he be

1

constrained to coordinate his discovery efforts with lead counsel designated by the Court. Rather, Block insists that "unique issues" presented by his particular complaint give the Court "the power and discretion, if not the duty, to carve out a separate discovery track" for his case. (*See* Pl.'s Mot. to Establish a Separate Discovery Track [Doc. No. 451-1] [hereinafter, "Block Mot."] at 11-12.)

Block is mistaken. First, he has articulated no "unique issues" peculiar to his case. Tacking on an assortment of current and former Equifax[1] employees as defendants does not alter the reality that the "issues" in this matter are precisely the same here as they are in the hundreds of other cases being administered by the Court: the adequacy of Equifax's data security protections and the handling of a data breach that occurred in 2017. Second, Block has not shown that the discovery already permitted by the Court will somehow be insufficient to develop the facts surrounding eleven named individuals' roles in, leading up to, and following the breach (if any). His speculation that lead counsel will not adequately pursue such facts is simply that—speculation. Third, allowing a lone-ranger plaintiff to conduct uncoordinated discovery in this case would inevitably

---

1   Because it makes little difference for present purposes, Mauldin and Sanders refer to Equifax, Inc., Equifax Information Services LLC, and Equifax Consumer Services LLC, individually and collectively, as "Equifax."

create the very sort of duplications, inefficiencies, and disruptions that the Court's case management orders were designed to eliminate.

Respectfully, Block's Motion should be denied.

## PERTINENT PROCEDURAL BACKGROUND

This multi-district litigation is the outgrowth of hundreds of lawsuits that followed Equifax's acknowledgement of a data breach. Plaintiffs in those actions complain that the cybersecurity defenses maintained at Equifax prior to the breach were flawed, and that those flaws led to the misappropriation of massive quantities of consumer data. Many further allege that Equifax failed to promptly and/or adequately disclose the existence of the breach after its internal discovery.

Substantively, Block's case is no different. (*See generally* Compl., Member Case No. 1:17-cv-05341 [hereinafter, "Block Compl."].) He alleges the same security failures, same breach, and same inadequate response as hundreds of other litigants. Yet he claims to be "unique," in that his complaint "names a multiplicity of [*i.e.*, eleven] individual defendants" (*see* Block Mot. at 2), which, "[o]n information and belief," he alleges acted negligently in safeguarding consumer data at Equifax. (*See* Block Compl. ¶¶ 10-20.) Specifically what negligent acts or omissions these individuals allegedly engaged in, Block does

not say. Nor does he differentiate between these individual defendants and Equifax in his pleading, opting instead to allege only that "*Defendants* had a duty" and "*Defendants* breached their duty[.]" (*Id.* ¶¶ 47-48 (emphasis supplied).)

Block's case has been assigned to the Consumer Track established by the Court for purposes of discovery. He now asks to be excepted from the restrictions placed on written discovery and depositions contained in Case Management Order No. 4, "at least with regard to any discovery that [he] may wish to pursue vis-à-vis the individual defendants[.]" (*See* Block Mot. at 18.) And he further asks to bypass lead counsel and the plaintiffs' steering committee for purposes of such taking such discovery. For the reasons set forth below, that is a terrible idea.

### ARGUMENT AND CITATION TO AUTHORITY

**I.   Block Has Not Pointed to Any "Unique Issues" Justifying Separate, but Concurrent, Discovery**

Mauldin and Sanders do not quibble with the notion that a "transferee judge has the broad discretion to design a pretrial program which will allow discovery on any *unique issues* to proceed concurrently with discovery on the common issues." *See, e.g.*, *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F.

Supp. 1403, 1405-06 (J.P.M.L. 1974) (emphasis supplied). That principle, however, does nothing to advance the relief requested in Block's Motion.

Despite repeated emphasis on his election to call out certain Equifax employees as defendants (apparently, based on nothing other than their job titles), Block does not actually articulate any *issue* that is unique to his case. The data breach he alleges is the very one at issue in hundreds of other cases. The allegedly inadequate cybersecurity protections are the same. And the purportedly deficient notification of the breach is identical.

Block's entire argument that there are *unique* factors requiring a separate discovery track (*see* Block Mot. at 12) is based solely upon the fact that only Block's Complaint named individual defendants out of the 412 lawsuits.  Block has not addressed any other *unique* factor to necessitate a separate discovery track.

Ultimately, Block's entire argument rests on the assumption that the purported negligence *of Equifax* is somehow a different factual matter than the purported negligence of Equifax's agents. But that assumption is flawed. As a corporation, Equifax cannot act in isolation. Rather, "[a]s an artificial person, a corporation 'can act, and does act, alone through agents.'" *Eckles v. Atlanta Tech. Grp., Inc.*, 485 S.E.2d 22, 24 (Ga. 1997) (internal quotations omitted); *accord Palazzo*

*v. Gulf Oil. Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents[.]"). Discovery into what Equifax did or did not do is, by necessity, discovery into how its agents—like the eleven named defendants here—acted or declined to act.

Put simply, the *issues* presented by the Block case are not "unique." Only the roster of defendants is. That feature, however, does not bring this case within the ambit of the authorities cited by Block in his motion.

## II. The Professed Concern that Lead Counsel Will Not Take Pertinent Discovery is Purely Speculative

In Case Management Order No. 4, the Court permitted plaintiffs eighty (80) interrogatories, fifteen (15) specifically allocated to the consumer plaintiffs; fifty (50) requests for admission, with ten (10) for the consumer plaintiffs alone; and forty (40) non-party depositions, "including employees and former employees," plus a forty-hour Rule 30(b)(6) deposition of Equifax corporate representatives. (*See* Case Management Order No. 4 [Doc. No. 261] at 8-10.)

Notwithstanding this ample allotment of discovery, Block complains that it is "unlikely" that lead counsel will take the discovery he needs to prosecute his claims. (*See* Block Mot. at 15-16.) But Block does not identify even a single

concrete request that he proposes be included in discovery, much less point to any indication that such a request would be omitted by lead counsel as irrelevant to the broader consumer claims. Nor does Block provide any basis to conclude that the eleven (11) employees singled out in his pleading are unlikely to be subjects in the forty (40) individual depositions permitted by the Court, or that the questions likely to be posed to those deponents will be different than those his counsel would ask if seated across from the same witnesses.[2]

Consequently, Block's Motion is both speculative and premature. Block simply assumes, without factual basis, that the discovery he would take is materially different than that hundreds of other plaintiffs would take related to the same core set of facts. And he asks the Court to cast aside a comprehensive discovery framework before discovery has even begun, all because he deems it "unlikely" that lead counsel would develop the facts necessary to prosecute his claims. Baseless prognostications about what lead counsel will or will not do should not carve inroads into the calibrated discovery architecture established by the Court.

---

[2] Given the allegations on Block's Complaint, his speculation that the eleven named individuals will not be the subjects of deposition discovery is puzzling. Indeed, if his "information and belief" is on point, then the employees with responsibility for the subject matters described in Block's pleading seem highly likely to be the subjects of deposition testimony. (*See* Block Compl. ¶¶ 10-20.)

### III. Granting Block's Motion Would Inevitably Lead to Inefficiency, Duplication of Effort, and Disruption

Notably absent from Block's Motion is any explanation regarding how his proposed discovery would avoid trampling over the discovery being taken by lead counsel. But that omission is hardly surprising. After all, discovery into what individual agents of Equifax did or did not do cannot be uncoupled from the broader inquiry into what *Equifax* did or did not do. *See Palazzo*, 764 F.2d at, 1385; *Eckles*, 485 S.E.2d at 24.

The reality is that, if permitted to proceed, Block's discovery would overlap extensively, if not completely, with what lead counsel seems poised to conduct. It would result in needless duplication of effort by both plaintiffs' and defendants' counsel, and would make the already complicated logistics of this multi-district litigation exponentially more challenging for all involved.

Mauldin and Sanders have no doubt that many among plaintiffs' counsel would welcome the opportunity to take the helm and conduct discovery as he or she deems most fit. But the Court's Case Management Orders in this case were thoughtfully "designed to help manage a large and diverse docket and to accommodate fairly the many diverse interests present in the litigation." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 614 F. Supp. 2d 550, (E.D. Pa. 2009). Having a

single litigant upend those processes based on flimsy arguments and baseless speculation seems likely only to increase inefficiencies, duplication, and disruption without a discernible benefit.

## CONCLUSION

For the foregoing reasons, Defendants Mauldin and Sanders respectfully request that Block's Motion to Establish Separate Discovery Track be denied.

[ *Signature of Counsel Appears on the Following Page* ]

Respectfully submitted this 12th day of November, 2018.

        ARNALL GOLDEN GREGORY LLP

        */s/* Edward A. Marshall
        Aaron M. Danzig
        Georgia Bar No. 205151
        aaron.danzig@agg.com
        Edward A. Marshall
        Georgia Bar No. 471533
        edward.marshall@agg.com
        171 17th Street, Suite 2100
        Atlanta, GA 30363-1031
        (404) 873-8536 phone
        (404) 873-8537 fax

        *Attorney for Defendants Susan Mauldin and Joe Sanders*

        BRISKIN, CROSS & SANFORD, LLC

        Alan M. Briskin
        Georgia Bar No. 083110
        abriskin@briskinlaw.com
        David M. Messer
        Georgia Bar No. 771007
        dmesser@briskinlaw.com
        1001 Cambridge Sq., Suite D
        Alpharetta, GA 30009
        (770) 410-1555 phone

        *Attorneys for Defendant Susan Mauldin*

## CERTIFICATE OF COMPLIANCE AND SERVICE

By his signature below, and as required by Local Rule 7.1.D., counsel for Defendants Susan Mauldin and Joe Sanders certifies that the foregoing document, which was prepared using 13-point Book Antiqua font, was served on all counsel of record by filing the same on the Court's CM/ECF system.

>/s/ Edward A. Marshall
>Edward A. Marshall
>Georgia Bar No. 471533