**EXHIBIT 1**

IN THE CIRCUIT COURT FOR <u>Baltimore County</u>

(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒PLAINTIFF ☐DEFENDANT    CASE NUMBER _____
(Clerk to insert)

**CASE NAME:** <u>Craig Ward, et al.</u> vs. <u>Equifax, Inc., et al.</u>
Plaintiff                                    Defendant

**PARTY'S NAME:** <u>Craig Ward, Todd & Mary Warren & Teri Weatherly</u>  **PHONE:** _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** <u>Sarah A. Zadrozny</u>    **PHONE:** <u>410-821-0070</u>

**PARTY'S ATTORNEY'S ADDRESS:** <u>600 Washington Avenue, Suite 200, Towson, MD 21204</u>

**PARTY'S ATTORNEY'S E-MAIL:** <u>szadrozny@sgs-law.com</u>

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours   14 days

### PLEADING TYPE

**New Case:**  ☒Original  ☐Administrative Appeal  ☐Appeal
**Existing Case:** ☐Post-Judgment  ☐Amendment
*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint - DOB of Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☒ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**EXHIBIT A.3**

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☒ Expungement | ☒ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☐ Damages-Punitive | ☐ Judgment-Default | ☐ Reinstatement of Employment | |

*If you indicated **Liability** above*, mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐Liability is conceded. ☒Liability is not conceded, but is not seriously in dispute. ☐Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|

☐ Under $10,000        ☐ $10,000 - $30,000        ☐ $30,000 - $100,000        ☒ Over $100,000

☐ Medical Bills $_____        ☐ Wage Loss $_____        ☐ Property Damages $_____

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
A. Mediation        ☐Yes   ☒No                    C. Settlement Conference   ☐Yes   ☒No
B. Arbitration        ☐Yes   ☒No                    D. Neutral Evaluation          ☐Yes   ☒No

| SPECIAL REQUIREMENTS |
|---|

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

| ESTIMATED LENGTH OF TRIAL |
|---|

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*
*(Case will be tracked accordingly)*

☐ 1/2 day of trial or less                    ☐ 3 days of trial time
☐ 1 day of trial time                          ☐ More than 3 days of trial time
☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of                    ☐ **Standard** - Trial within 18 months of
Defendant's response                                               Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response        ☐ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☐ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____ . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☒ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| | |
|---|---|
| 9/29/2017 | *Signature of Counsel / Party* |
| Date | |
| 600 Washington Avenue, Suite 200 | Sarah A. Zadrozny |
| Address | Printed Name |
| Towson                 MD          21204 | |
| City                        State        Zip Code | |

**CRAIG WARD**
527 St. Francis Road
Baltimore, MD 21286

and

**TODD & MARY WARREN**
2014 Riding Crop Way
Baltimore, Maryland 21244

and

**TERI WEATHERLY**
601 Allegheny Avenue
Towson, Maryland 21204

Plaintiffs,

v.

**EQUIFAX, INC.**
**Serve On:** The Prentice-Hall Corporation
System, MA, Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD 21202

and

**EQUIFAX INFORMATION SERVICES, LLC**
**Serve On:** CSC-Lawyers Incorporating Service
Company, Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD 21202

and

**EQUIFAX CONSUMER SERVICES, LLC**
**Serve On:** CSC-Lawyers Incorporating Service
Company, Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD 21202

Defendants.

IN THE

CIRCUIT COURT

FOR

BALTIMORE COUNTY

Case No. _____

2017 SEP 29 AM 10: 43
FILED
CIRCUIT COURT
BALTIMORE COUNTY

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Craig Ward, Todd Warren, Mary Warren and Teri Weatherly, on behalf of

themselves and on behalf of the entire class of persons similarly situated, by and through their

**EXHIBIT A.2**

attorneys, Michael Paul Smith, Melissa L. English and Sarah A. Zadrozny of Smith, Gildea &

Schmidt, LLC and Timothy F. Maloney, Veronica B. Nannis and Megan Benevento of Joseph,

Greenwald and Laake, P.A., file this Class Action Complaint, and sue Defendants for cause,

claim damages, and state as follows:

## INTRODUCTION

1.      Plaintiffs bring this class action case against Defendant Equifax, Inc. ("Equifax")

and its related entities (collectively, the "Equifax Defendants") for their extensive failures to

secure and safeguard consumers' Personally Identifiable Information ("PII") which the Equifax

Defendants collected from various sources in connection with the operation of their business, and

for failing to provide timely, accurate, and adequate notice to Plaintiffs and Class members that

their PII had been stolen and precisely what types of information were stolen.

2.      Equifax has acknowledged that a cybersecurity incident ("Data Breach")

occurred, potentially impacting approximately 143 million U.S. consumers. Equifax has also

acknowledged that unauthorized persons exploited a U.S. website application vulnerability to

gain access to certain files.  Equifax claims that based on its investigation, the unauthorized

access occurred from mid-May through July 2017.  The information accessed primarily includes

names, Social Security numbers, birth dates, addresses and, in some instances, driver's license

numbers.  In addition, Equifax has admitted that credit card numbers for approximately 209,000

U.S. consumers were exposed, as well as PII for approximately 182,000 U.S. consumers

involved in credit report disputes.

3.      Equifax has acknowledged that it discovered the unauthorized access on July 29,

2017, but has failed to inform the public why it delayed notification of the Data Breach to

consumers until September 7, 2017.  Instead, Equifax executives sold at least $1.8 million worth

of shares before the public disclosure of the breach.  It has been reported that its Chief Financial

Officer John Gamble sold shares worth $946,374, its President of U.S. Information Solutions,

Joseph Loughran, exercised options to dispose of stock worth $584,099, and its President of

Workforce Solutions, Rodolfo Ploder, sold $250,458 of stock on August 2, 2017.

4.      The PII for Plaintiffs and Class members was compromised due to the Equifax

Defendants' acts and omissions and their failure to properly protect PII.

5.      The Data Breach was the inevitable result of the Equifax Defendants' inadequate

approach to data security and the protection of the PII it collected during the course of business.

6.      The Equifax Defendants disregarded the rights of Plaintiffs and Class members by

intentionally, recklessly, and/or negligently failing to take adequate and reasonable measures to

ensure that its data systems were protected, failing to disclose to its customers the material fact

that it did not have adequate computer systems and security practices to safeguard PII, failing to

take available steps to prevent and stop the breach from happening, and failing to monitor and

detect the breach on a timely basis.

7.      As a result of the Equifax Data Breach, the PII of Plaintiffs and Class members

have been exposed to criminals for misuse.  The injuries suffered by Plaintiffs and Class

members, and those likely to be suffered by Plaintiffs and Class members, as a direct result of

the Equifax Data Breach include, but are not limited to:

     a.   unauthorized use of their PII;

     b.   theft of their personal and financial information;

     c.   costs associated with the detection and prevention of identity theft and
        unauthorized use of their financial accounts;

     d.   damages arising from the inability to use their PII;

e. loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they are permitted to obtain from their accounts, including missed payments on bills and loans, and late charges and fees;

f. adverse effects on their credit including decreased credit scores and adverse credit notations;

g. costs associated with time spent and the loss of productivity and/or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Equifax Data Breach;

h. the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the internet's black market/dark web;

i. damages to and diminution in value of their PII entrusted to Equifax for the sole purpose of purchasing products and services from Equifax; and

j. the loss of Plaintiffs' and Class members' privacy.

8. The injuries to Plaintiffs and Class members were directly and proximately caused by the Equifax Defendants' failure to implement and/or maintain adequate data security measures for PII.

9.      Further, Plaintiffs retain a significant interest in ensuring that their PII, which, while stolen, remains in the possession of Equifax is protected from further breaches, and seek to remedy the harms they have suffered on behalf of themselves and similarly situated consumers whose PII was stolen as a result of the Data Breach.

10.     Plaintiffs bring this action to remedy these harms on behalf of themselves and all similarly situated citizens of Maryland whose PII was accessed during the Data Breach.

## PARTIES, JURISDICTION, AND VENUE

11.     Plaintiff Craig Ward is a resident of Baltimore County, Maryland.

12.     Plaintiff Todd Warren is a resident of Baltimore County, Maryland.

13.     Plaintiff Mary Warren is a resident of Baltimore County, Maryland.

14.     Plaintiff Teri Weatherly is a resident of Baltimore County, Maryland.

15.     Defendant Equifax, Inc., is a corporation organized under the laws of Georgia with its principal place of business in Georgia and authorized to conduct business in the state of Maryland.  It is engaged in the business of credit reporting and monitoring and maintains several offices in Maryland.  Equifax transacted, and currently transacts, business in Maryland and elsewhere.

16.     Defendant Equifax Information Services, LLC is a limited liability company formed under the laws of Georgia with its principal place of business in Georgia and authorized to conduct business in the state of Maryland.  Upon information and belief, Equifax Information Services, LLC transacted, and currently transacts, business in Maryland and elsewhere.

17.     Defendant Equifax Consumer Services, LLC is a limited liability company formed under the laws of Georgia with its principal place of business in Georgia and authorized

to conduct business in the state of Maryland. Upon information and belief, Equifax Consumer Services, LLC transacted, and currently transacts, business in Maryland and elsewhere.

18.     Plaintiffs bring this action pursuant to Md. Rule 2-231 as a class action on their own behalf and on behalf of an entire class of people similarly situated.

19.     All members of the proposed class are citizens of the State of Maryland.

20.     This Court has personal jurisdiction over Equifax pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103 because at all relevant times and currently Equifax regularly conducts business in Maryland, and has sufficient minimum contacts in Maryland.

21.     Venue is proper in this Court pursuant to Md. Cod Ann., Cts. & Jud. Proc. § 6-201 because Equifax is subject to this Court's personal jurisdiction, and Equifax systematically and continually transacted business in this County during the applicable time period and currently transacts business in this County.

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

22.     Equifax is one of three nationwide credit reporting companies that track and rate the financial history of U.S. consumers. These companies are supplied with data about loans, loan payments and credit cards, as well as information on everything from child support payments, credit limits, missed rent and utilities payments, addresses and employer history. All of this information plus more factors into credit scores.

23.     Unlike other data breaches, not all of the people affected by the Equifax Data Breach may be aware that they are customers of the company. Equifax gets its data from credit card companies, banks, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies, as well as by purchasing public records.

24.     According to Equifax's press release on September 7, 2017, the breach was discovered on July 29.[1]  The perpetrators apparently gained access by exploiting a vulnerability in its U.S.-based website applications.  The hackers were then able to retrieve certain files.

25.     Included among those files was a treasure trove of personal data, including: names, dates of birth, Social Security numbers and addresses.  In some cases the records also included actual credit card numbers.  Documentation about disputed credit charges was also leaked.  Those documents contained additional PII for around 182,000 U.S. consumers and an unknown number of Marylanders.

26.     This amount and kind of personal data is a treasure trove for cybercriminals who will look to capitalize on it through phishing campaigns.

27.     Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII – a form of intangible property that was entrusted to Equifax.

28.     Additionally, Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their PII being placed in the hands of criminals who have already, or will imminently, misuse such information.

29.     Moreover, Plaintiffs have a continuing interest in ensuring that their private information, which remains in the possession of Equifax, is protected and safeguarded from future breaches.

30.     At all relevant times, Equifax was aware, or reasonably should have been aware, that the PII collected, maintained and stored on its servers is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, to perform identity theft and other kinds of fraud.

---

[1] *See* https://investor.equifax.com/news-and-events/news/2017/09-07-2017-213000628

31.     It is well known and the subject of many media reports that PII is highly coveted and a frequent target of hackers.  Despite the frequent public announcements of data breaches of corporate entities, including Experian in 2015, Equifax maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class members.

32.     PII is a valuable commodity because it contains not only payment card numbers but PII as well.   Upon information and belief, a "cyber black market" or "dark web" exists in which criminals openly post stolen payment card numbers, social security numbers, and other personal information on a number of underground internet websites.  PII is a gold mine for identity thieves because they can use victims' personal data to open new financial accounts and take out loans in another person's name, incur charges on existing accounts, or clone ATM, debit, or credit cards.

33.     At all relevant times, Equifax knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

34.     Equifax was or should have been fully aware of the significant number of people whose PII it collected, and thus, the significant number of individuals who would be harmed by a breach of Equifax's systems.

35.     Unfortunately, and as alleged below, despite all of this publicly available knowledge of the continued compromises of PII at the hands of illicit third parties, Equifax's approach to maintaining the privacy and security of the PII of Plaintiffs and Class members was lackadaisical, reckless, or at the very least, negligent.

36.     Identity thieves can use personal information, such as that of Plaintiffs' and Class members' which Equifax failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

37.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit.

38.     There may also be a time lag between when harm occurs versus when it is discovered, and also between when PII or payment card data ("PCD") is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[2]

39.     Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

40.     The PII of Plaintiffs and Class members is private and sensitive in nature and was left inadequately protected by Equifax. The Equifax Defendants did not obtain Plaintiffs' and

---

[2] U.S. Government Accountability Office, *Report to Congressional Requesters*, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf.

Class members' consent to disclose their PII to any other person, as required by applicable law and industry standards.

41.     The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state regulations, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

42.     The Equifax Defendants had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

43.     Had the Equifax Defendants remedied the deficiencies in their data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, the Equifax Defendants would have prevented the Data Breach and, ultimately, the theft of its customers' PII.

44.     As a direct and proximate result of the Equifax Defendants' wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been harmed and placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing

police reports. This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable, for many consumers it is the way they are compensated, and even if retired from the work force, consumers should be free of having to deal with the consequences of a credit reporting agency's slippage, as is the case here.

45.     The Equifax Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.  theft of their personal and financial information;

    b.  unauthorized charges on their debit and credit card accounts;

    c.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the black market;

    d.  the untimely and inadequate notification of the Data Breach;

    e.  the improper disclosure of their PII and PCD;

    f.  loss of privacy;

    g.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    h.  ascertainable losses in the form of deprivation of the value of their PII and PCD, for which there is a well-established national and international market;

    i.   ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

    j.   loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and

    k.   the loss of productivity and value of their time spent to address attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

46.    The Equifax Defendants have not offered customers, including Plaintiffs and Class members, any meaningful credit monitoring or identity theft protection services, despite the fact that it is well known and acknowledged by the government that damage and fraud from a data breach can take years to become apparent.

47.    As a result, Plaintiffs and Class members are left to fend for themselves in order to protect against the financial damage the Equifax Defendants have allowed to occur. The additional cost of adequate and appropriate coverage, or insurance, against the losses and

exposure that the Equifax Defendants' actions have created for Plaintiffs and Class members, is ascertainable and is a determination appropriate for the trier of fact.

48.     The Equifax Defendants have also not offered to cover any of the damages sustained by Plaintiffs or Class members.

49.     While the PII of Plaintiffs and members of the Class has been stolen, the Equifax Defendants continue to hold PII of consumers, including Plaintiffs and Class members. Particularly because the Equifax Defendants have demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and Class members have an undeniable interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed and that it is not subject to further theft.

50.     Plaintiff Craig Ward is a victim of the Data Breach.  In or about 2013, Plaintiff Ward enrolled in and paid for Equifax's "ID Patrol" service as a result of fraudulent credit card accounts having been opened in his name without his authorization.  Plaintiff Ward relied on the Equifax Defendants to maintain the security of his PII.  In addition, Plaintiff Ward's information was and/or is maintained on the Equifax Defendants' server(s) for purpose of credit reporting. Plaintiff Ward has spent time and effort monitoring his financial accounts as a result of the Data Breach and has been denied the benefit of the bargain.

51.     Plaintiffs Todd and Mary Warren are victims of the Data Breach.  Plaintiffs Todd and Mary Warren have been identified as consumers whose PII have been subject to the Data Breach.  Plaintiffs Todd and Mary Warren have suffered the same type of harm as other Class members including, but not limited to: a need for monitoring their financial accounts and credit protection.

52.     Plaintiff Teri Weatherly is a victim of the Data Breach.  Plaintiff Weatherly has been identified as a consumer whose PII has been subject to the Data Breach.  Plaintiff Weatherly has a subscription to a LifeLock account and will continue to renew it as a result of the Data Breach.  Plaintiff Weatherly has suffered the same type of harm as other Class members including, but not limited to: a need for monitoring her financial accounts and credit protection.

## CLASS ALLEGATIONS

53.     The allegations in the above stated paragraphs are incorporated by reference as if fully restated herein.

54.     Plaintiffs bring this action pursuant to Maryland Rule 2-231 as a class action on their own behalf and on behalf of the entire class of people similarly situated and seek certification of a statewide Maryland class as defined below:

> All persons residing in Maryland whose Personally Identifiable Information was acquired by unauthorized persons in the Equifax Data Breach.  Exempted from this class is any person who was an employee, officer, member and/or agent of Equifax and/or any of its affiliates, parents, or subsidiaries, any members or employees of Plaintiffs' Counsel, the Judge(s) presiding over this action and any members of the Judge's immediate family or staff, and any persons who make a timely election to be excluded from the Class (the "Maryland Class", or "Class").

55.     Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

56.     This action is properly maintained as a class action under Md. Rule 2-231(b)(1)(A) in that separate actions by individual members of the class would create inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Equifax Defendants.

57.     This action is also properly maintainable as a class action pursuant to Md. Rule 2-231(b)(1)(B) in that separate actions by individual members of the class would create a risk of

adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members not party to the adjudications, or would substantially impair or impede their ability to protect themselves.

58.     This action also is properly maintained under Md. Rule 2-231(b)(3), in that questions of law or fact common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy between the class and the Equifax Defendants.

59.     The members of the Maryland Class are so numerous that their joinder is impracticable.   The Class consists of all Maryland residents whose PII was released in the Equifax Data Breach.

60.     Plaintiffs believe and therefore aver that their claims are typical of the Class in that all members whose PII was released in the Equifax Data Breach.

61.     This action is properly maintained as a call action under Md. Rule 2-231(b)(2) in that the Equifax Defendants have acted or refused to act as hereinafter more specifically alleged, on grounds which are generally applicable to the class.

62.     Plaintiffs believe and therefore aver that a class action is superior to other available methods of adjudicating the alleged controversy, especially considering the size and common interests of the Class, as well as the fact that the amount at stake for individual class members makes it unlikely that said individuals will pursue a separate action.

63.     There are questions of law and fact common to the claims of each and all members of the Class.  These common questions include, but are not limited to:

    a.  Whether the Equifax Defendants had a duty to protect PII;

b.  Whether the Equifax Defendants knew or should have known of the susceptibility of their data security systems to a data breach;

c.  Whether the Equifax Defendants' security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d.  Whether the Equifax Defendants were negligent in failing to implement reasonable and adequate security procedures and practices;

e.  Whether the Equifax Defendants' failure to implement adequate data security measures allowed the breach to occur;

f.  Whether the Equifax Defendants' conduct constituted deceptive trade practices under Maryland law;

g.  Whether the Equifax Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiffs and Class members;

h.  Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of the Equifax Defendants' failure to reasonably protect their POS systems, servers, and data network; and

i.  Whether Plaintiffs and Class members are entitled to relief.

64.  These common issues of law and fact predominate over any question affecting only individual Class members.

65.  Plaintiffs' claims are typical of those involving all members of the proposed Class. Plaintiffs had their PII compromised in the Data Breach. Plaintiffs' damages and injuries are akin to other Class members and Plaintiffs seeks relief consistent with the relief of the Class.

66.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs are members of the Class and the interests of the named Plaintiffs and all other members of the Class are identical.  Plaintiffs have no conflicts of interest with the Class.

67.     Plaintiffs' counsel has substantial experience in complex litigation and class action proceedings and will adequately represent the Class's interests.

68.     The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class consists, upon information and belief, of over 100 individuals whose PII was compromised in the Equifax Data Breach, and thus are so numerous that joinder of all members is impracticable.  Class members may be identified through objective means.

69.     This action entails questions of law and fact common to Class members that predominate over any questions affecting only individual plaintiffs, and, therefore, a class action is superior to other available methods of fair and efficient adjudication of this litigation.

70.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but if he or she does, he or she may exclude himself or herself from the class upon the receipt of notice.

71.     Likewise, particular issues in this case are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether the Equifax Defendants failed to timely notify the public of the Data Breach;

b. Whether the Equifax Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c. Whether the Equifax Defendants' security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

d. Whether the Equifax Defendants failed to adequately comply with industry standards amounting to negligence;

e. Whether the Equifax Defendants failed to take commercially reasonable steps to safeguard the PII of Plaintiffs and Class members; and

f. Whether adherence to data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

72.    Finally, all members of the proposed Class are readily ascertainable.  The Equifax Defendants have access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice to the Class.

**COUNT I**
**NEGLIGENCE**
**(ON BEHALF OF PLAINTIFFS AND THE MARYLAND CLASS)**

73.    Plaintiffs incorporate the above stated paragraphs as if fully set forth herein.

74.    Upon accepting and storing the PII of Plaintiffs and Class members in its computer systems and on its networks, the Equifax Defendants undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that

information and to use commercially reasonable methods to do so.  The Equifax Defendants knew that the PII was private and confidential and should be protected as private and confidential.

75.     The Equifax Defendants owed a duty of care not to subject Plaintiffs, along with their PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

76.     The Equifax Defendants owed numerous duties to Plaintiffs and the members of the Maryland Class, including the following:

a.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b.      to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c.      to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

77.     The Equifax Defendants also breached its duty to Plaintiffs and the Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, the Equifax Defendants failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiffs and Class members, misuse the PII and intentionally disclose it to others without consent.

78.     The Equifax Defendants knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. The Equifax Defendants knew about numerous, well-publicized data breaches, including the breach at Experian.

79.     The Equifax Defendants knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' PII.

80.     The Equifax Defendants breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members.

81.     Because the Equifax Defendants knew that a breach of its systems would damage millions of individuals, including Plaintiffs and Class members, the Equifax Defendants had a duty to adequately protect their data systems and the PII contained thereon.

82.     The Equifax Defendants had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust the Equifax Defendants with their PII was predicated on the understanding that the Equifax Defendants would take adequate security precautions. Moreover, only the Equifax Defendants had the ability to protect its systems and the PII it stored on them from attack.

83.     The Equifax Defendants' own conduct also created a foreseeable risk of harm to Plaintiffs and Class members and their PII. The Equifax Defendants' misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

84.    The Equifax Defendants also had independent duties under state laws that required the Equifax Defendants to reasonably safeguard Plaintiffs' and Class members' Personal Information and promptly notify them about the data breach.

85.    The Equifax Defendants breached their duties to Plaintiffs and Class members in numerous ways, including by:

     a.    failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members;

     b.    creating a foreseeable risk of harm through the misconduct previously described;

     c.    failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiffs' and Class members' PII both before and after learning of the Data Breach;

     d.    failing to comply with the minimum industry data security standards during the period of the Data Breach; and

     e.    failing to timely and accurately disclose that Plaintiffs' and Class members' PII had been improperly acquired or accessed.

86.    Through the Equifax Defendants' acts and omissions described in the Complaint, including the Equifax Defendants' failure to provide adequate security and its failure to protect PII of Plaintiffs and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within the Equifax Defendants' possession and/or control.

87.    The Equifax Defendants also had a duty to timely disclose the unauthorized access and theft of the PII to Plaintiffs and the Class so that Plaintiffs and Class members can

take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

88.    The Equifax Defendants breached their duty to notify Plaintiffs and Class Members of the unauthorized access by waiting many months after learning of the breach to notify Plaintiffs and Class members and then by failing to provide Plaintiffs and Class members information regarding the breach until September 2017.  Instead, Equifax's executives disposed of at least $1.8 million worth of shares in the company after Equifax learned of the data breach but before it was publicly announced.   To date, the Equifax Defendants has not provided sufficient information to Plaintiffs and Class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

89.    Through the Equifax Defendants' acts and omissions described in this Complaint, including the Equifax Defendants' failure to provide adequate security and its failure to protect PII of Plaintiffs and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, the Equifax Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within the Equifax Defendants' possession or control.

90.    Further, through its failure to provide timely and clear notification of the Data Breach to consumers, the Equifax Defendants prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their financial data and bank accounts.

91.    Upon information and belief, the Equifax Defendants improperly and inadequately safeguarded PII of Plaintiffs and Class members in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access. The Equifax Defendants' failure to take proper security measures to protect sensitive PII of Plaintiffs and Class members

as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of PII of Plaintiffs and Class members.

92.     The Equifax Defendants' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to:

a.   failing to adequately protect the PII;

b.   failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiffs and Class members; and

c.   failing to provide Plaintiffs and Class members with timely and sufficient notice that their sensitive PII had been compromised.

93.     Neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their PII.

94.     As a direct and proximate cause of the Equifax Defendants' conduct, Plaintiffs and the Class suffered damages including, but not limited to:

a.   damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members;

b.   damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards;

    c.  damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

95.    The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**COUNT II**
**NEGLIGENT SUPERVISION**
**(ON BEHALF OF PLAINTIFFS AND THE MARYLAND CLASS)**

96.    Plaintiffs incorporate the above stated paragraphs as if fully set forth herein.

97.    In connection with the operation of their business, the Equifax Defendants hired, retained, and/or supervised individuals and/or companies to operate, maintain, store, and monitor their POS systems, servers, and data network and the PII and other information contained therein as employees, agents, and/or representatives of the Equifax Defendants.

98.    The Equifax Defendants owed a duty to Plaintiffs and Class members to use reasonable care to select, retain, and/or supervise employees, agents, and/or representatives who were competent and fit to:

    a.  operate, maintain, secure, and safeguard Plaintiffs' and Class members' PII;

    b. not to subject Plaintiffs, along with their PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices;

    c. exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in their possession, custody, or control;

    d. protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

    e. implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

99.    The Equifax Defendants knew, or should have known, of its employees', agents', and/or representatives' incompetence with respect to operating, monitoring, maintaining, and securing Equifax's data systems and networks due to a separate data breach having occurred at Equifax in March 2017, as well as the data breaches having occurred at different companies, including Experian in 2015.

100.    The Equifax Defendants' employees, agents, and/or representatives failed to adequately protect and safeguard PII by failing to: (1) operate, monitor, maintain, and/or secure its computer systems, servers and databases to safeguard PII of Plaintiffs and Class members, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

101.    The Equifax Defendants were negligent by failing to adequately hire, retain, and/or supervise its employees, agents, and/or representatives with respect to the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and

misuse, which permitted an unknown third party to gather PII of Plaintiffs and Class members,

misuse the PII and intentionally disclose it to others without consent.

102.    The Equifax Defendants breached their duty to use reasonable care to hire, retain,

and/or supervise its employees, agents, and/or representatives who would adequately protect,

maintain, monitor, and secure PII of Plaintiffs and Class members during the time it was within

the Equifax Defendants' possession or control.

103.    Neither Plaintiffs nor the other Class members contributed to the Data Breach and

subsequent misuse of their PII.

104.    As a direct and proximate cause of the Equifax Defendants' negligent hiring,

retention, and/or supervision, Plaintiffs and the Class suffered damages including, but not limited

to:

    d.  damages arising from the unauthorized charges on their debit or credit cards or on

        cards that were fraudulently obtained through the use of the PII of Plaintiffs and

        Class members;

    e.  damages arising from Plaintiffs' inability to use their debit or credit cards because

        those cards were cancelled, suspended, or otherwise rendered unusable as a result

        of the Data Breach and/or false or fraudulent charges stemming from the Data

        Breach, including but not limited to late fees charges and foregone cash back

        rewards;

    f.  damages from lost time and effort to mitigate the actual and potential impact of

        the Data Breach on their lives including, inter alia, by placing "freezes" and

        "alerts" with credit reporting agencies, contacting their financial institutions,

        closing or modifying financial accounts, closely reviewing and monitoring their

credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

105.    The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the breach mentioned above.

**COUNT III**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE MARYLAND CLASS)**

106.    Plaintiffs incorporate the above stated paragraphs as if fully set forth herein.

107.    As previously alleged, Plaintiffs and Class members entered into an implied contract that required the Equifax Defendants to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, the Equifax Defendants owe duties of care to Plaintiffs and Class members that require it to adequately secure PII.

108.    The Equifax Defendants still possess PII pertaining to Plaintiffs and Class members.

109.    The Equifax Defendants have made no announcement or notification that they have remedied the vulnerabilities in their computer data systems.

110.    Accordingly, the Equifax Defendants have not satisfied their contractual obligations and legal duties to Plaintiffs and Class members.  In fact, now that the Equifax Defendants' lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

111.    Actual harm has arisen in the wake of the Data Breach regarding the Equifax Defendants' contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

112.    Plaintiffs, therefore, seek a declaration that (a) the Equifax Defendants' existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, the Equifax Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on the Equifax Defendants' systems on a periodic basis, and ordering the Equifax Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.  engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.  auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.  segmenting PII by, among other things, creating firewalls and access controls so that if one area of the Equifax Defendants' data systems is compromised, hackers cannot gain access to other portions of the systems;

    e.  purging, deleting, and destroying in a reasonable secure manner PII not necessary for its provisions of services;

    f.  conducting regular database scanning and securing checks;

g. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. educating their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps their customers must take to protect themselves.

## COUNT IV
## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT (MCPA), MD. CODE ANN., COMM. LAW § 13-301, *et seq.* AND MARYLAND PERSONAL INFORMATION PROTECTION ACT (MPIPA), MD CODE ANN., COMM. LAW § 14-3501, *et seq.* (ON BEHALF OF PLAINTIFFS AND THE MARYLAND CLASS)

113. Plaintiffs incorporate the above stated paragraphs as if fully set forth herein.

114. As discussed above, the Equifax Defendants' acts, practices, and omissions at issue in this matter affected individuals in Maryland, including Plaintiffs, and elsewhere.

115. Equifax is a corporation registered to do business in Maryland.

116. Equifax Information Services, LLC and Equifax Consumer Services, LLC are limited liability companies registered to do business in Maryland.

117. MPIPA states:

(c) Business maintains personal data -- Notification of breach. –
(1) A business that maintains computerized data that includes personal information that the business does not own or license shall notify the owner or licensee of the personal information of a breach of the security of a system if it is likely that the breach has resulted or will result in the misuse of personal information of an individual residing in the State.
(2) Except as provided in subsection (d) of this section, the notification required under paragraph (1) of this subsection shall be given as soon as reasonably practicable after the business discovers or is notified of the breach of the security of a system.
(3) A business that is required to notify an owner or licensee of personal information of a breach of the security of a system under paragraph (1) of

this subsection shall share with the owner or licensee information relative to the breach.

(d)  Delay of notification required under subsections (b) and (c). –

(1)  The notification required under subsections (b) and (c) of this section may be delayed:

(i)  If a law enforcement agency determines that the notification will impede a criminal investigation or jeopardize homeland or national security; or

(ii)  To determine the scope of the breach of the security of a system, identify the individuals affected, or restore the integrity of the system.

(2)  If notification is delayed under paragraph (1)(i) of this subsection, notification shall be given as soon as reasonably practicable after the law enforcement agency determines that it will not impede a criminal investigation and will not jeopardize homeland or national security.

Md. Code Ann., Comm. Law § 14-3504.

118.    The Equifax Defendants had an obligation to notify Plaintiffs and Class members as soon as reasonably practicable after discovery of the Data Breach.

119.    Instead, the Equifax Defendants delayed informing its customers of the breach, allowing its executives to sell at least $1.8 million worth of shares before informing its customers and publically disclosing the Data Breach on September 7, 2017.

120.    The Equifax Defendants have not provided Plaintiffs and Class members an explanation as to why it delayed notification of the Data Breach.  The Equifax Defendants were not justified in their delay of notifying Plaintiffs and Class members about the Data Breach.

121.    Violations of MPIPA constitute an unfair and deceptive trade practice within the meaning of the MCPA and are subject to the enforcement and penalty provisions contained in the MCPA.  Md. Code Ann., Comm. Law § 14-3508.

122.    In addition, the MCPA prohibits unfair or deceptive trade practices, including any:

(1)     False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2)     Representation that:

    (i)     Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

    . . .

    (iv)    Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3)     Failure to state a material fact if the failure deceives or tends to deceive;

. . .

(9)     Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

    (i)     The promotion or sale of any consumer goods, consumer realty, or consumer service; . . .

Md. Code Ann., Comm. Law § 13-301.

123.    The Equifax Defendants engaged in unfair or deceptive acts or practices in violation of the MCPA by:

    a.  failing to maintain adequate computer systems and data security practices to safeguard PII;

    b.  failing to disclose that its computer systems and data security practices were inadequate to safeguard PII from theft;

    c.  failing to timely and accurately disclose the Data Breach to Plaintiffs and Class members;

    d.  continuing to accept PII and store other personal information after the Equifax Defendants knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach; and

e. continuing to accept PII and store other personal information after the Equifax Defendants knew or should have known of the Data Breach and before it allegedly remediated the Breach.

124.   As a direct and proximate result of the Equifax Defendants' violation of the MPIPA and MCPA, Plaintiffs and Class members suffered damages including, but not limited to:

a. damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members;

b. damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards;

c. damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

125.    Plaintiffs and Class members are entitled to a judgment against the Equifax Defendants for actual damages and attorneys' fees pursuant to the MCPA, and such other further relief as the Court deems just and proper.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against the Equifax Defendants as follows:

A.    For an Order certifying the Maryland Class as defined herein, and appointing Plaintiffs and their Counsel to represent the Maryland Class.

B.    For equitable relief enjoining the Equifax Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiffs and Class members;

C.    For equitable relief compelling the Equifax Defendants to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

D.    For an award of damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees costs and litigation expenses, as allowable by law;

F.    For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this court may deem just and proper.

Respectfully submitted,

_____
Timothy F. Maloney, Esq.
Veronica B. Nannis, Esq.
Megan A. Benevento, Esq.
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 / (301) 220-1214 (fax)
Email: tmaloney@jgllaw.com
vnannis@jgllaw.com
mbenevento@jgllaw.com
*Co-Counsel for Plaintiffs and Class Members*

_____
Michael Paul Smith, Esq.
Melissa L. English, Esq.
Sarah A. Zadrozny, Esq.
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21202
(410) 821-0070 / (410) 821-0071 (fax)
Email: mpsmith@sgs-law.com
menglish@sgs-law.com
szadrozny@sgs-law.com
*Counsel for Plaintiffs and Class Members*

## PRAYER FOR JURY TRIAL

Plaintiffs and Class Members hereby request a trial by jury on the foregoing Class Action
Complaint.

_____
Timothy F. Maloney, Esq.
Veronica B. Nannis, Esq.
Megan A. Benevento, Esq.
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 / (301) 220-1214 (fax)
Email: tmaloney@jgllaw.com
vnannis@jgllaw.com
mbenevento@jgllaw.com
*Co-Counsel for Plaintiffs and Class Members*

_____
Michael Paul Smith, Esq.
Melissa L. English, Esq.
Sarah A. Zadrozny, Esq.
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21202
(410) 821-0070 / (410) 821-0071 (fax)
Email: mpsmith@sgs-law.com
menglish@sgs-law.com
szadrozny@sgs-law.com
*Counsel for Plaintiffs and Class Members*