**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) ) ) ) ) | MDL Docket No. 2800<br>Case No.: 1:17-md-2800-TWT<br><br>ALL CASES |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LIMITED RELIEF FROM DISCOVERY STAY AND ENTRY OF ORDER RELATING TO INTERVIEWS OF DEFENDANTS' FORMER EMPLOYEES**

In opposing Plaintiffs' motion for limited relief from the discovery stay, Equifax ignores the unique circumstances that weigh in favor of granting the motion. This litigation began 14 months ago, and the Equifax data breach began well before that. Because it may take many months to resolve the motions to dismiss, discovery may not begin under Local Rule 26.2(A) until two years or more after the events at issue occurred. To jump start the process, the parties agreed—and the Court ordered—the preliminary work needed to lay the groundwork for discovery be done immediately. Plaintiffs are unable to do much of that work without key facts within the exclusive control of Equifax and third parties. However, Equifax has refused to voluntarily provide any information and its NDAs have frustrated Plaintiffs' ability to obtain information from third parties.

Under the circumstances, the appropriate course is to lift the discovery stay

to allow Plaintiffs to obtain the information needed to comply with this Court's orders and advance the litigation. The requested discovery will impose little, if any, burden on Equifax; will need to be done anyway so long as even one of Plaintiffs' legal claims survives; and will pay huge dividends in terms of efficiency when full discovery begins. Plaintiffs' motion thus should be granted.

## I. Reply To Equifax's Factual Background

Despite the impression Equifax seeks to convey in its factual recitation, Equifax has consistently used the discovery stay and its NDAs to interfere with Plaintiffs' ability to learn basic factual information needed to comply with this Court's case management orders. Moreover, while professing its willingness to meet and confer on the issues raised by Plaintiffs' motion, Equifax has dragged its heels, unnecessarily prolonging negotiations by taking weeks to respond to Plaintiffs' proposals and then taking positions it knew Plaintiffs would not accept. All the while, Equifax has been able to maintain the status quo, while this Court's deadlines have passed and Plaintiffs have been kept at bay and in the dark.

As stated in Plaintiffs' motion, Equifax did not timely provide the search term list required by CMO No. 4. During a meet-and-confer on July 25, Plaintiffs requested that Equifax provide its search terms and produce limited documents to help Plaintiffs identify other appropriate search terms. Equifax ignored these

requests, even after a further order (Doc. 449 at 13, ¶ 30) and multiple email inquiries. Accordingly, on August 31 Plaintiffs requested the specific discovery at issue, a request which Equifax's counsel declined on September 13. Then, on September 21, defense counsel refused to produce any documents whatsoever or to disclose Equifax's search terms or methodology, stating only that that it would confer only if *Plaintiffs* proposed search terms. Exhibit 8 (Sept. 21, 2018 email). Recognizing its position was untenable, Equifax finally provided its search terms on October 30, more than a week *after* the present motion was filed; more than a month after the September 26 status conference at which Plaintiffs' counsel reminded Equifax of its obligations under CMO No. 4; and more than three months after the deadline set by this Court.

On November 9, Plaintiffs informed Equifax the proposed search terms and methodology were too opaque to be independently evaluated and requested that Equifax disclose how the search terms were selected, produce the documents that were reviewed in selecting the terms, and confirm that the terms included all of the internal code words used in the aftermath of the breach. Exhibit 8 (Nov. 9, 2018 email). In response, Equifax disclosed that its search term list is based on its "investigation of the Security Incident, *including custodian interviews and review of relevant documents*." Exhibit 8 (Nov. 16, 2018 email) (emphasis added). *Yet*,

*Equifax refuses to share with Plaintiffs the interviews or documents on which the search terms are based.*

The search terms and custodians to be used by Equifax will fundamentally determine what documents and data are produced in discovery. This Court's CMOs thus mandate that those search terms and custodians be identified through a collaborative "meet and confer" process, not a unilateral decision by Equifax. But, without access to any custodians and documents, Plaintiffs cannot meaningfully negotiate. To do so, Plaintiffs need more information from documents and witnesses about the underlying facts, the identity of those who worked on Equifax's data security and the aftermath of the breach, the terminology and code words they used, and how Equifax maintains relevant documents and data.

Equifax does not even attempt to explain how Plaintiffs can meet their obligations under this Court's orders without such basic information, but simply seems to suggest that if this Court does nothing things will work out.[1] Likewise, as to the NDA protocol, although Equifax withdrew some of its plainly unworkable

[1] Equifax suggests its failures are somehow excused because Plaintiffs allegedly have not identified the search terms they will use. *See* Doc. 503 at 6. But this is wrong. On November 8, immediately after being asked to do so, Financial Institution Plaintiffs provided their proposed search terms. Exhibit 9. And Consumer Plaintiffs intend to produce relevant and responsive documents without the use of search terms, as expressly provided in the Federal Rules and contemplated in CMO No. 4, § IV, so they have no obligation to propose any search terms to Equifax.

requirements upon learning that Plaintiffs would file this motion, despite four months of unsuccessful "negotiation" over these very terms, Equifax holds out the prospect that if the Court does nothing the parties will be able to reach an agreement. *See* Doc. 503 at 11 ("[I]nstead of sending Equifax a counter-proposal, Plaintiffs have chosen to continue their pursuit of this motion."). Unfortunately, the only factor that seems to spur Equifax to action is the prospect of the Court's intervention, but even then Equifax largely responds with the bare minimum, empty promises of further negotiations to stave off an unfavorable ruling, or incorrect factual assertions to give the false impression it has been cooperative.

For example, Equifax did not inform Plaintiffs during the October 15, 2018 telephone conference that there are no NDAs that cover the breach specifically or were signed by employees terminated after the breach. Doc. 503 at 10 n.2. In fact, Equifax's counsel would neither confirm nor deny the existence of any such agreements and said if there were any, their terms would implicate attorney-client privilege issues. Doc. 488-2, Guglielmo Decl. at ¶ 16. Despite four months of attempted negotiations, Plaintiffs did not learn that there were no breach-specific NDAs until Equifax filed its opposition to the pending motion.

## II. <u>The Court Should Grant Limited Relief From The Discovery Stay</u>

Equifax makes three arguments in opposition to a partial lifting of the

discovery stay: (1) Plaintiffs agreed there would be no early discovery; (2) no good cause exists supporting any lifting of the stay; and (3) the requested discovery is overbroad. The Court should reject each of these contentions.

**A. Equifax wrongly insists that Plaintiffs agreed to a discovery stay and that a stay is legally required.**

No less than ten times throughout its brief, Equifax reiterates its position that Plaintiffs agreed that no discovery could commence before resolution of Rule 12 motions. *E.g.*, Doc. 503 at 12. This argument is easily dispatched. The Joint Preliminary Report, which was approved by the Court, specifically authorizes Plaintiffs to seek earlier discovery if needed. Doc. 255 at 20 ("Counsel for Plaintiffs may seek leave from the Court to conduct limited early discovery, prior to the commencement of formal discovery."); Doc. 260 (order adopting joint report). Plaintiffs insisted on this language to address this exact situation.

Equifax also continues to lean heavily on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997), for the proposition that discovery cannot begin until a motion to dismiss is decided. As explained in Plaintiffs' opening brief, *Chudasama* does not bar immediate discovery, as other courts have recognized. Doc. 488-1 at 13-14 & n.2 (citing, *e.g.*, *Merial LLC v. Fidopharm, Inc.*, 2013 WL 12072140, at *1 (N.D. Ga. May 22, 2013); *Jones v. Bank of Am. Corp.*, 2013 WL 5657700, at *2 (M.D. Ga. Oct. 15, 2013)).

To the extent Equifax likens the circumstances here to the facts of *Chudasama*, it is mistaken. In that case, the Eleventh Circuit acknowledged a district court's broad discretion to manage discovery, *id.* at 1366-67, but reversed a discovery sanctions order for abuse of discretion where the "district court effectively abdicate[d] its responsibility to manage a case involving contentious litigants and permit[ted] excessive and dilatory discovery tactics to run amok." *Id.* at 1356. The court was particularly concerned that the district court refused to rule on a motion to dismiss a "dubious" fraud claim that "dramatically enlarged the scope" of discovery. *Id.* at 1368-69. The decision does not address a stay of discovery in the first instance, but instead whether a district court can *ignore* an apparently meritorious motion to dismiss for more than 18 months, reserving any ruling until *after the completion* of discovery. *Id.* at 1360.[2]

Other than its insistence that every claim in this MDL is meritless, Equifax offers no support for its claim that the limited discovery sought here will "unduly enlarge the scope of discovery." Doc. 503 at 13, quoting *Chudasama*, 123 F.3d at 1368. It does not even attempt to identify any claim ("dubious" or otherwise), the

---

[2] Equifax also relies on *Roberts v. FNB S. of Alma, Georgia*, 716 F. App'x 854, 857 (11th Cir. 2017). There, the district court did not abuse its discretion by staying discovery pending a ruling on an ultimately successful motion to dismiss a pro se litigant's complaint. *Id.* at 857. There is no question that the Court possesses the same prerogative to manage the discovery here—Plaintiffs' motion asks for the prudent exercise of that discretion.

dismissal of which would affect the scope of discovery. Indeed, Equifax will have to produce the core documents relating to the breach—the same documents that it has already collected, reviewed, and produced to various governmental entities—and Plaintiffs will take the other discovery at issue *if any single claim survives*.

Nor does Equifax, at any point in its brief, specifically identify any undue burden it will suffer if the Court allows some discovery now. It asserts that "discovery imposes significant costs," but such generalities are insufficient to show disproportionality under the Rules or an "upsetting of the balance" struck by Local Rule 26.2. *See* Doc. 503 at 12-13.

Finally, Equifax makes no serious argument as to the requested third-party discovery. It says only, in a single footnote, that third parties might be unnecessarily burdened by responding to a narrowly-drawn subpoena. Doc. 503 at 13 n.3. This contention offers nothing of substance in quantifying any such burden, but instead merely repackages Equifax's professed belief that, as in *Chudasama*, every claim brought here on behalf of millions of consumers, small businesses, and financial institutions, is specious. If a third party does claim undue burden, the Court can address that issue in the normal course.

**B. Good cause exists to grant limited relief from the discovery stay.**

Equifax falsely claims that Plaintiffs' motion "does not even address the

correct legal standard," which it asserts is "good cause." Doc. 503 at 14. Plaintiffs agree the standard is good cause, *see* Brief in Support of Motion, Doc. 488-1 at 9 & n.1, and specifically identified the factors establishing good cause for the requested limited[3] relief: (1) it will permit productive resolution of search term and related ESI production issues; (2) it will avoid months of "dead time"; (3) it will preserve critical testimony, particularly from former employees to whom Plaintiffs are otherwise unable to talk because of Equifax's NDAs; and (4) it will provide a roadmap for efficient future discovery by identifying key facts relevant to all claims and identifying relevant witnesses and documents. *See* Doc. 488-1 at 9-13; *see also Merial*, 2013 WL 12072140, at *1 (listing considerations of good cause).

Plaintiffs have clearly set forth why this limited early discovery will efficiently advance the litigation. This very purpose is expressed in Fed. R. Civ. P. 1, 28 U.S.C. § 1407, and in the JPML's order establishing this MDL to process the hundreds of related cases filed across the country. *See* Doc. 550 at 2. True, this Court's Local Rules balance the efficiencies gained by swift progress in discovery against the possibility of resolution via a Rule 12 motion. Under the circumstances, a stay of all discovery is considerably less conducive to efficient resolution than allowing very limited discovery now that will save months down the road. This is

[3] Plaintiffs do not and never have sought a "blanket lifting" of the discovery stay under Local Rule 26.2(A). Sept. 26, 2018 Hearing Transcript at 43:8-25.

the very definition of good cause.

Equifax's main argument is that the "controlling issue" is the timing of the Court's hearing on the motions to dismiss. *See* Doc. 503 at 2. If timing is the controlling issue—and it undoubtedly is a key consideration—it weighs in favor of granting the requested relief. By way of illustration, Equifax's expressed goal is that it "will not use any search terms until it is required to actually locate and produce documents (and document production will not begin until the parties have resolved objections to document requests, which will not be served until 30 days after the Court rules on the pending motions to dismiss)." Doc. 503 at 6. Assuming, for the sake of argument, that the Court enters an order denying in whole or in part the motions to dismiss on March 1, 2019, Equifax will serve its objections to the first requests in May 2019. Plaintiffs will likely then spend months seeking to resolve objections through negotiation or Court order, and only then will Equifax search its documents. Equifax's admitted plan to stall for two years or more before it begins to produce documents—documents *it has already searched and produced* in other matters involving the circumstances of the breach—makes no sense and serves no legitimate purpose.

Finally, Equifax erroneously claims that Plaintiffs' inability to meaningfully assess and negotiate search terms and a search protocol cannot comprise good

cause. But the months of delay necessitated by Equifax's opaque and dilatory approach to the search term "negotiation" provide ample justification for the requested relief. Real negotiation as contemplated by CMO 4 (Doc. 261 at 6-7) and the ESI Protocol (Doc. 449 at 13, ¶ 30) requires information about the genesis of the proffered search terms, the core set of documents used to identify those terms, the scope of custodial information to which they will be applied, and the number of hits they will return. Equifax *itself* used interviews with custodians and review of documents to generate its search terms, but refuses to identify those custodians or documents. Exhibit 8 (Nov. 16, 2018 email).

**C. The requested discovery is appropriate and narrowly tailored.**

Equifax cannot seriously argue that re-production of its regulatory document productions is unduly burdensome—they have already been selected, compiled and produced. Instead it claims that such requests are overbroad or otherwise improper as "cloned" discovery. Doc. 503 at 17-19. Yet, by and large, Equifax has not attempted to explain how its existing regulatory productions differ from the events and conduct at issue in this MDL. *See* Doc. 488-1 at 14 n.3 (collecting cases).

If anything, the authorities cited by Equifax confirm that the Court has broad discretion to require such documents to be produced depending on the specific circumstances. That the courts in those cases decided not to exercise their

discretion is not determinative here, but simply reflects how the circumstances in those cases differ from this one. For instance, in *Strickland v. Tristar Products, Inc.*, the plaintiffs had already conducted extensive discovery in their own case. The plaintiffs waited until the close of discovery to request all documents and deposition transcripts from ten other cases involving similar products. 2017 WL 2874621, at *1 (S.D. Ga. July 5, 2017). In *King County v. Merrill Lynch & Co.*, the government investigations involved different securities than those at issue in the civil case. 2011 WL 3438491, at *2-3 (W.D. Wash. Aug. 5, 2011). And in the sprawling VW emissions litigation, shareholder plaintiffs were not entitled to the entire 20-million page document repository collected by the consumer plaintiffs because it clearly contained a variety of documents irrelevant to the shareholder litigation. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017).

Grasping for a helpful example, Equifax asserts that a request for the SEC production is overbroad because this litigation does not involve securities violations. That position is incorrect—the facts surrounding the timing of Equifax's knowledge regarding the breach and its public disclosure (or non-disclosure) of that knowledge are relevant to this case. But even if it was correct, other productions—namely to the FTC—are coextensive with the scope of this

litigation. After all, the FTC Act itself is the predicate for Plaintiffs' claims for negligence per se. *See, e.g.*, Consumer Compl., Doc. 374, ¶¶ 350-54; *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016). And, despite Equifax's assertion that there may be documents it produced to regulators that are not relevant here, the company has not shown any reason to believe that is the case.

Equifax's concerns about privilege are likewise unfounded. Presumably a privilege review was completed in connection with the regulatory productions.[4] Nonetheless, the protective order entered in this case prevents public disclosure and protects Equifax's privilege in the event of inadvertent disclosure in the litigation. *See* Doc. 298 at 19-25 (providing non-waiver protections under Federal Rule of Evidence 502(d) and a procedure for clawback of privileged documents).

Finally, Plaintiffs are not conducting a "fishing expedition" to support their claims, but are simply trying to move discovery forward on their existing claims, which they pleaded in exhaustive detail. It is unclear what Equifax means by "merits discovery"—of course Plaintiffs want discovery of information relevant to

[4] Equifax cites *Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass Apr. 14, 2014), for the proposition that regulator communications might be privileged (though it does not assert any such privilege exists). Plaintiffs are not seeking every communication with the government, but Equifax's production of its own documents to the government.

their claims—but for now they seek a narrow, specific subset of such information. Production of the FTC documents, a single corporate representative deposition, a few depositions of former employees, and limited production by third parties would allow Plaintiffs to negotiate search terms and formulate targeted discovery for later use with no significant burden on Equifax and would help to avoid the inefficiencies and headaches experienced by the Court and all parties in other litigation such as *Androgel*.

## III. The Court Should Grant Relief Regarding Equifax's NDAs

Despite Equifax's protestations to the contrary, the parties remain at an impasse on the NDA issue. Plaintiffs' initial brief justifies entry of an order based on *Lang v. Reedy Creek Imp. Dist.*, 888 F. Supp. 1143, 1148-49 (M.D. Fla. 1995). Equifax's proposed order, on the other hand, is yet another in a long line of delay tactics. It provides for negotiation *in the future* of a letter and script, and a subsequent procedure for submission *again* of disputes to the Court. *See* Doc. 503-1, ¶¶ 1, 7. And there will be disputes so long as Equifax continues to insist on a process that further chills participation by suggesting to former-employee witnesses that, for example, they may be outed to Equifax, they still cannot disclose confidential information of Equifax or third parties (which Equifax defines broadly in its NDAs), and that most anything could be privileged or work

product information. *See* Exhibit 10 (Equifax's Sept. 19, 2018 redlined letter and script, which were omitted as attachments to Exhibit F (Doc. 503-6) to the opposition brief). These roadblocks are not legally required; lead counsel's professional responsibility and the protective order alleviate Equifax's privilege concerns. The Court should enter an order adopting Plaintiffs' proposal and/or permit immediate depositions of key former employees.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, their motion for limited discovery and entry of an order governing communications with former employees should be granted.

Dated: November 23, 2018

Respectfully submitted,

*/s/ Amy E. Keller*
Amy E. Keller
Adam J. Levitt
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dlcfirm.com
alevitt@dlcfirm.com

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
Georgia Bar No. 107744
**DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E.
Suite 1900
Atlanta, Georgia 30309
Tel. 404.881.8900
kcanfield@dsckd.com

*/s/ Norman E. Siegel*
Norman E. Siegel
Barrett J. Vahle
J. Austin Moore
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com
vahle@stuevesiegel.com
moore@stuevesiegel.com

***Consumer Plaintiffs' Co-Lead Counsel***

Roy E. Barnes
John R. Bevis
J. Cameron Tribble
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com

David J. Worley
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

***Consumer Plaintiffs' Co-Liaison Counsel***

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW
Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
David M. Berger
**GIBBS LAW GROUP LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com
dmb@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Penn Plaza
19th Floor
New York, New York 10119
Tel. 212.594.5300
atadler@milberg.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

***Consumer Plaintiffs' Steering Committee***

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

***Consumer Plaintiffs' State Court Coordinating Counsel***

**AND**

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, New York 10169
Tel. 212.223.6444
jguglielmo@scott-scott.com

*/s/ Gary F. Lynch*
Gary F. Lynch
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel. 412.322.9243
glynch@carlsonlynch.com

***Financial Institution Plaintiffs' Co-Lead Counsel***

Craig A. Gillen
**GILLEN WITHERS & LAKE, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, Georgia 30305
Tel. 404.842.9700
cgillen@gwllawfirm.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327
Tel. 404.572.4600
ranse@conleygriggs.com

***Financial Institution Plaintiffs' Co-Liaison Counsel***

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel. 504.525.8100
amurray@murray-lawfirm.com

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Tel. 612.349.8500
sslaughter@robinskaplan.com

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel. 404.261.7711
cvanhorn@bfvlaw.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Tel. 501.312.8500
acarney@cbplaw.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel. 612.339.7300
bbleichner@chestnutcambronne.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, Minnesota 55401
Tel. 501.812.5575
khriebel@locklaw.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel. 501.821.5575
karenhalbert@robertslawfirm.us

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel. 612.341.0400
brian.gudmunson@zimmreed.com

***Financial Institution Plaintiffs' Steering Committee***

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to L.R. 7.1D that the foregoing complies with the font and point selections permitted by L.R. 5.1C. This brief was prepared on a computer using the Times New Roman font (14 point).

*/s/ Norman E. Siegel*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 23rd day of November, 2018.

*/s/ Norman E. Siegel*