# EXHIBIT 10

**Williams, Sheri**

**From:** Amy Keller <akeller@dlcfirm.com>
**Sent:** Thursday, November 01, 2018 7:15 PM
**To:** Amy Keller
**Subject:** FW: Plaintiffs' Interviews of Former Employee
**Attachments:** EFX 9.19.18 Edits Former Employee Letter.DOCX; EFX 9.19.18 Edits to Former Employee Script.DOCX; EFX 9.19.18 Red-line Former Employee Script.DOCX; EFX 9.19.18 Red-line Former Employee Letter.DOCX

---

**From:** Haskins, Stewart [SHaskins@KSLAW.com]
**Sent:** Wednesday, September 19, 2018 6:26 PM
**To:** Siegel, Norm (siegel@stuevesiegel.com); Amy Keller; Ken Canfield
**Cc:** Balser, David; Sumner, Phyllis; Adler, Elizabeth
**Subject:** Plaintiffs' Interviews of Former Employee

Norm, Amy, and Ken,

We write to follow up on our previous discussions and prior correspondence regarding Plaintiffs' desire to conduct *ex parte* interviews of certain former Equifax employees.

Given the back and forth on this issue, I thought it would be helpful to review where we are as we attempt to reach a solution that works for both parties.

On May 16, 2018, Plaintiffs proposed *ex parte* interviews of former employees and offered some proposed guidelines for those interviews, including to insure that they took steps to determine whether the former employee is represented by counsel, to advise the former employee of the nature and purpose of the contact, to avoid disclosure of privileged information, and to treat all evidence derived from the interviews as Confidential under the Protective Order in this matter.

We responded on June 6, 2018 expressing our willingness to reach an agreement.

Following additional discussions on the issue, on July 17, 2018, Equifax provided Plaintiffs with a proposed "script" to use during interviews of former employees.

In response, on July 18, 2018, Plaintiffs provided proposed revisions to the script and also provided, for the first time, a proposed letter from Equifax's outside counsel to be sent to former employees prior to any interviews. The revisions to the script proposed by Plaintiffs and the proposed letter raised new areas of concern for Equifax, including language purporting to waive Equifax's nondisclosure agreements with its former employees. After reviewing Plaintiffs' proposed script and letter, Equifax emailed Plaintiffs on August 3, 2018 and offered to have a conference call to discuss issues of concern. The parties scheduled a meet and confer telephone conference on September 13, 2018 to discuss this and other issues during which time we advised that Equifax would provide Plaintiffs with comments on the proposed script and letter, and further explanation of its position, in the near future. This e-mail follows up on our conversation on that day.

Equifax has considered Plaintiffs' proposed script revisions and the draft letter and we are attaching our proposed changes to these documents. We also renew our prior request that Plaintiffs provide Equifax with a list of all the former employees they intend to contact and the dates of the proposed interviews. Equifax will then identify any individuals

represented by counsel and for those that are not, Equifax will send the letter at least one week in advance of the date of the scheduled interview.

Our changes to these documents arise out of two principal concerns – to minimize the risk of disclosure of privileged or work product information and to insure that Equifax's and third parties' confidential information is not disclosed.

Some, if not many, of the former employees that Plaintiffs may seek to interview were employed by Equifax during the time period when the company and its outside counsel were investigating and responding to the data security incident. Those employees would be parties to privileged communications (or have knowledge of such privileged information) and much of the information and many of the documents generated during the investigation of and response to the incident fall within the scope of the work product protection. For this reason, questions that post-date the investigation that began on July 29, 2017 should be avoided.

In addition, because the nondisclosure agreements that former employees signed with Equifax prevent the disclosure of confidential and trade secret information belonging to Equifax or to third parties and shared with Equifax under conditions of confidentiality, Equifax remains concerned that interviews of these employees by Plaintiffs may divulge information that is properly deemed confidential and should not be disclosed.

Equifax does not contend that its agreements preclude discussion of information relevant to this matter – so long the information is not privileged, protected or confidential trade secrets, intellectual property or other such information owned by Equifax or entrusted to Equifax by third parties. In light of this, we propose the following guidelines and safeguards regarding these interviews to protect confidential and/or privileged information in addition to those set forth in Equifax's letter of June 6, 2018 and those set forth in Plaintiffs' letter of May 16, 2018:

- *First,* the interviews should be limited in scope to any non-privileged, non-confidential information about events related to the data breach announced by Equifax on Sept. 7, 2017 that occurred prior to July 29, 2017, in order to limit the danger of inquiring into privileged and/or confidential information during the time when counsel were investigating and responding to the incident.

- *Second*, Equifax requests that Plaintiffs provide a list of questions that will be covered during any interviews of former employees. This will ensure that the interviews do not disclose any information that is not directly relevant to the incident and this litigation. Similar conditions have been suggested by the courts to parties who seek interviews in the face of appropriate nondisclosure agreements governing confidential information. *See, e.g., In re Spectrum Brands, Inc.*, No. 1:05-CV-02494-WSD, 2007 WL 1483633, at *4 (N.D. Ga. May 18, 2007) (denying plaintiffs' request to limit scope of confidentiality agreements, in part, because plaintiffs failed to specify the questions sought that were allegedly precluded by the confidentiality agreement).

We remain willing to discuss these issues and concerns, as well as the attached drafts we have provided at your convenience. We believe we should be able to find a mutually acceptable solution that protects Equifax's interests and allows Plaintiffs to properly investigate their claims. We look forward to your thoughts on the foregoing proposal.

Stewart
**S. Stewart Haskins | King & Spalding LLP**
1180 Peachtree Street, NE | Atlanta, Georgia 30309
(404) 572-4687 | shaskins@kslaw.com

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

[King & Spalding Letterhead]

To: [Former Employees]
From: Stewart Haskins, Attorney for Equifax
Date: [Insert]
Re: Inquiries You May Receive From Lawyers Suing Equifax Seeking To Interview You About Your Knowledge of the Cyber Attack on Equifax

In the wake of the cyber attack on Equifax announced on September 7, 2017, various lawsuits have been filed against Equifax. The lawyers for the plaintiffs who brought those lawsuits are now seeking to interview former Equifax employees about the events leading up to attack. The lawyers include Ken Canfield of Atlanta, Amy Keller of Chicago, Norm Siegel of Kansas City, Joe Guglielmo of New York, and Gary Lynch of Pittsburgh, along with a team of other lawyers and investigators working at their direction.

We have been informed that one or more of these lawyers may be contacting you.

You will have to make your own decision about whether you wish to speak with the lawyers seeking to contact you. There is no subpoena or court order requiring you to speak with these attorneys, and you are not obligated to speak with plaintiffs' counsel or their investigators if you do not wish to do so.

If you are represented by counsel, you should immediately inform the plaintiffs' counsel or their investigators of that fact.

If you do wish to speak with plaintiffs' counsel or their investigators, please note the following:

- **Confidentiality:** You may have signed a Non-Disclosure Agreement (an NDA) or a Confidentiality Agreement with Equifax agreeing not to disclose confidential information belonging to Equifax or belonging to third-parties and shared with Equifax under conditions of confidentiality. To the extent you are contacted by the lawyers listed above or those working with them for an interview about the cyber attack, Equifax has agreed – for the limited purpose of these interviews only -- that any non-disclosure or confidentiality agreement that you signed does not preclude you from answering questions posed by the listed lawyers or those working for them seeking non-privileged, non-confidential information about facts and events known to you that occurred prior to July 29, 2017. This means you should not disclose any information unrelated to the incident, confidential information of Equifax or third parties (such as intellectual property, trade secrets, confidential business or technical methods or design or other proprietary and sensitive information), or privileged information. The lawyers listed above have agreed that they will keep any information you provide them confidential under the terms of a Protective Order entered by the Court. Please note that your name and the fact that you participated in the interview may need to be provided by the Plaintiffs' Counsel in connection with legal proceedings.

**Deleted:** Equifax

**Deleted:** Subject to Non-Disclosure Agreements

**Deleted:** Re: Waiver of Terms of Non-Disclosure Agreements¶
¶
Consumers and financial institutions filed hundreds of class actions related to the data breach announced by Equifax in September 2017. These cases are pending in federal court in Georgia before Judge Thomas Thrash. Judge Thrash appointed lawyers to lead the cases on behalf of consumers and financial institutions. Those

**Deleted:** The lawyers appointed by Judge Thrash seek to interview former Equifax employees regarding the facts and circumstances relating to the data breach and its cause. Many former Equifax employees have signed agreements, such as non-disclosure agreements, that may restrict their ability to participate in such interviews. To facilitate these interviews, Equifax has agreed to waive the provisions of any agreements that prohibit former employees from being interviewed. As a result, Equifax's former employees are free to communicate with court-appointed counsel and the investigators working with them as if any non-disclosure agreement signed by the former employee did not exist. ¶
¶

**Deleted:** court-appointed

**Formatted:** Font: Bold

**Deleted:** Also, Equifax has not waived the attorney-client privilege or

- **Attorney-Client Privilege and Work Product:** Various information and communications involving Equifax are protected by the attorney-client privilege or protections afforded by the work product doctrine. You are not permitted to discuss that information at all. **Accordingly, you should not share with plaintiffs' counsel or their investigators any information or documents protected by the attorney-client privilege or work product doctrine.** The attorney-client privilege protects communications (including conversations and emails) and legal services and work done involving an Equifax attorney (including outside and in-house counsel) or your own attorney, or involving consultants assisting the Company after the attack was discovered (like Mandiant). The work product doctrine also protects communications, documents or information prepared by you or others in the course of investigating the incident to respond to, prepare for and defend anticipated litigation in the wake of the cyber attack. Again, you are only permitted to answer questions and provide **non-privileged, non-confidential** information about facts and events known to you that occurred prior to July 29, 2017, when the suspicious traffic related to the cyber attack was first discovered.

**Formatted:** List Paragraph, Bulleted + Level: 1 + Aligned at: 0.25" + Indent at: 0.5"

**Formatted:** Font: Bold

**Deleted:** court-appointed

**Formatted:** Font: Bold

**Deleted:** Finally, Equifax's waiver of the agreements is limited to the purpose of allowing you to communicate with court-appointed counsel and their investigators. You are not authorized to communicate with anyone else and the agreements otherwise remain in full force and effect

If you have any questions, please contact me directly.

Deleted:

**EFX MDL – Former Employee Interview "Script"**

Deleted: .

1. First determine whether the former employee is represented by counsel with respect to any matter related to the data security incident Equifax announced on September 7, 2017. If the individual is represented, the conversation must end, but the caller may first request the name and contact information of the individual's counsel.

2. Explain generally that (i) the person contacting the former employee represents (or is an investigator acting on behalf of counsel that represents) Plaintiffs in litigation arising out of the data security incident Equifax announced on September 7, 2017 ("Security Incident"); (ii) Plaintiffs have filed a lawsuit against Equifax relating to the Security Incident; and (iii) Equifax is represented by its own attorneys who are defending the company in the litigation.

3. Advise that the former employee is free to speak with Plaintiffs' Counsel, but is under no obligation to do so. Explain that there is no subpoena or court order requiring the former employee to provide any information. Ask if the former employee has any questions (while advising that Counsel cannot provide legal advice). Confirm that the former employee agrees to continue the conversation. Note that the name of the former employee and their participation in this interview may need to be provided by Plaintiffs' Counsel in connection with this and other legal proceedings.

4. If the former employee states he or she signed a Non-Disclosure Agreement or Confidentiality Agreement with Equifax, explain that the former employee may speak with Plaintiffs' Counsel regarding the factual information and events that relate to the data security incident and that occurred prior to July 29, 2017, so long as he or she does not disclose any information that the former employee believes to be unrelated to the incident, confidential information of Equifax or third parties (such as intellectual property, trade secrets, confidential business or technical methods or design or other proprietary and sensitive information), or information protected by the attorney-client privilege and/or work product doctrine as explained below. Explain that Equifax does not contend that the provisions in a NDA or Confidentiality Agreement prevent the former employee from discussing non-privileged, non-confidential factual events or information related to the incident that occurred prior to July 29, 2017.

5. Provide the former employee with another copy of the attached Memorandum from Equifax at the outset of the interview.

6. Prior to asking any substantive questions, explain that the former employee must be careful not to disclose any information that the former employee believes to be protected by the attorney-client privilege and/or work product doctrine because the privilege

Deleted:

belongs to the company, and not the former employee. If the former employee asks questions about those protections, Plaintiffs' Counsel shall provide only the following definitions:

a. Attorney-Client Privilege: Protects communications (including conversations and emails) involving an Equifax attorney (including outside and in-house counsel) or your own attorney.

b. Work Product Doctrine: Protects communications, including documents and information included in such documents, prepared by you or others (including consultants) in anticipation of any litigation against Equifax, including any materials prepared by or for Equifax as part of investigating the data security incident in anticipation that litigation might be filed concerning the incident.

Deleted: ,

Deleted: that were

Deleted:

Deleted:

Deleted:

7. Tell the former employee prior to asking any substantive questions that if they are uncertain or have questions regarding whether certain information may be covered by the attorney-client privilege and/or work product doctrine, the individual should contact an appropriate attorney and should not divulge the information.