```
1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF GEORGIA
2                     ATLANTA DIVISION

3
   IN RE:  EQUIFAX, INC., CUSTOMER )    Case Number
4  DATA SECURITY BREACH LITIGATION )
                                    )    1:17-md-2800-TWT
5                                   )
   _____)
6                                   )
   IN RE:  EQUIFAX DERIVATIVE       )    Case Number
7  LITIGATION                       )
                                    )    1:18-cv-317-TWT
8  _____)
                                    )
9  IN RE:  EQUIFAX SECURITIES       )    Case Number
   LITIGATION                       )
10                                  )    1:17-cv-3463-TWT
   _____)

11

12

13            Transcript of a status conference

14     before the Honorable Thomas W. Thrash, Jr., Chief Judge

15               February 19, 2019; 2:01 p.m.

16                     Atlanta, Georgia

17

18

19
   (Appearances on page two)
20

21
        Proceedings recorded by mechanical stenography,
22  transcript produced by computer.

23
              Diane Peede, RMR, CRR, CRC
24              Federal Official Court Reporter
               75 Ted Turner Drive, SW, Suite 2194
25              Atlanta, Georgia  30303-3309
```

Appearances:

Counsel for Plaintiffs:     Kenneth Canfield
                            Amy Keller
                            Norman Siegel
                            Joseph Guglielmo
                            MaryBeth V. Gibson
                            Gary Lynch
                            Peter Schneider
                            Kyle Bates
                            James A. Harrod
                            Joseph H. Weiss


Counsel for Defendants:     David Balser
                            Phyllis Sumner
                            Stewart Haskins
                            Michael Smith
                            Warren Pope
                            Meghan McCaffrey
                            David M. Chaiken

P R O C E E D I N G S

(Call to the order of the Court.)

THE COURT:  All right.  This is the case of In Re:
Equifax Customer Data Security Breach Litigation, case number
17-md-2800; In Re:  Equifax Derivative Litigation, case
number 18-cv-317; and In Re:  Equifax Securities Litigation,
case number 17-cv-3463.

I'm going to start with the MDL case.  So first let
me ask counsel for the parties who expect to participate in
the status conference in the MDL case to identify yourself by
name and, of course, the parties you represent.

MR. CANFIELD:  Good morning, Your Honor.  On this
wet afternoon, I'm Ken Canfield, co-lead counsel for the
Plaintiffs.

THE COURT:  Well, I had no idea when we scheduled
this status conference that it was going to be this miserable
outside.  So I'm sorry about that.  There's nothing I can do.

MS. KELLER:  Good afternoon, Your Honor.  Amy
Keller, also co-lead counsel and from Chicago.  So I don't
mind this weather at all.

THE COURT:  Good afternoon, Ms. Keller.

MR. SIEGEL:  And Norman Siegel of Stueve Siegel
Hanson for the Consumer Plaintiffs, Your Honor.

THE COURT:  Good afternoon, Mr. Siegel.

MR. SIEGEL:  Good afternoon.

1    MR. BALSER:  Good afternoon, Your Honor.  David

2    Balser of King and Spaulding on behalf of the Equifax

3    Defendants.

4         THE COURT:  Mr. Balser.

5         MS. SUMNER:  Good afternoon, Your Honor.  Phyllis

6    Sumner with King and Spaulding on behalf of the Equifax

7    Defendants.

8         THE COURT:  Ms. Sumner.

9         MR. HASKINS:  Good afternoon, Your Honor.  Stewart

10   Haskins on behalf of the Equifax Defendants as well.

11        THE COURT:  Mr. Haskins.

12        MR. SCHNEIDER:  Your Honor, Pete Schneider with the

13   law firm of Schneider Wallace.  We represent Plaintiff the

14   Commonwealth of Puerto Rico.

15        MR. BATES:  Good afternoon, Your Honor.  Kyle Bates

16   from Schneider Wallace, also for the Commonwealth of Puerto

17   Rico.

18        THE COURT:  Good afternoon, gentlemen.

19        MS. McCAFFREY:  Good afternoon, Your Honor.  Meghan

20   McCaffrey for Quinn Emanuel on behalf of the Defendant Mr.

21   Richard Smith.

22        MR. CHAIKEN:  Dave Chaiken from Troutman Sanders,

23   also for Defendant Richard Smith.  Thank you.

24        THE COURT:  Okay.  We're not to the Securities

25   Litigation case yet.

1     MR. CHAIKEN:  That's right, Your Honor.  We've got

2  an issue with respect to the spinoff MDL and the answer

3  deadline coming up.  So we're hoping to address that with

4  Your Honor.

5     THE COURT:  Fine.

6     MR. GUGLIELMO:  Good afternoon, Your Honor.  Joseph

7  Guglielmo, co-lead counsel, on behalf of the Financial

8  Institution Plaintiffs.

9     THE COURT:  Good afternoon, Mr. Guglielmo.

10     MR. LYNCH:  Gary Lynch, Your Honor, on behalf of

11  the Financial Institution Plaintiffs.

12     THE COURT:  Mr. Lynch.

13     All right.  This is a status conference being held

14  at my request.  I've received the joint proposed agenda, and

15  my intention is simply to go through the agenda as stated,

16  with one additional item.

17     First is the report on the status of discovery.

18     MS. BRITTON:  (Speaking by telephone) Elizabeth

19  Britton with the Cadel firm.

20     THE COURT:  Mr. Canfield.

21     MR. CANFIELD:  Thank you, Your Honor.  I guess this

22  is a report on the status of Plaintiffs' efforts to get

23  discovery from Equifax.  And the Court has established a

24  fairly aggressive schedule for fact discovery.  Fact

25  discovery is supposed to be completed by December 30th of

this year.  And the Court's CMOs envision that the parties would do a lot of the groundwork prior to the formal beginning of discovery under the local rules so that once that formal discovery opened, we'd all be able to hit the ground running.  And in many ways, we've gotten pretty far along in meeting the requirements that the Court has imposed.

The Consumer Plaintiffs and the Financial Institution Plaintiffs and Equifax worked out a number of CMOs dealing with some major issues.  We exchanged request for production of documents and have had some meet and confers relating to those requests.  So that's been moving along.

We didn't make as much progress as the Court is aware when we turned to the issue of search terms and custodians, I know which is one of the Court's favorite issues.  That's what triggered the Plaintiffs filing of the motion for limited relief from the discovery stay that was briefed and remains pending.

The -- now that the Court has ruled on the motions to dismiss and we know that the formal discovery period is about to begin, the parties have had some discussions about making some efforts to put us in the position where we can meaningfully negotiate over search terms and custodians.

And what we have agreed is that in accordance with the -- one of the Court's CMOs, Equifax will begin to produce

documents on February 28th and also serve its formal

objections to Plaintiffs' discovery requests.

They will also begin -- the documents that they

will begin producing at that time are the ones that don't

require electronic searches to be conducted.  So we will

start to get the benefit of those documents fairly quickly,

we hope.

Equifax has also said that they will produce a

substantial number of the documents that have already been

provided to government regulators and other government

authorities by March 15th, and we've been told that we should

expect between ninety and a hundred thousand documents, which

we don't know for sure, but we suspect there's about 75 to 80

percent of all the documents that Equifax did produce to the

government.

Getting those documents will be a substantial help

to the Plaintiffs in understanding what search terms need to

be used and what custodians' documents need to be searched.

As we mentioned in our motion for limited relief

from the discovery stay, we believe that we also needed to

take some limited depositions early on to again inform us so

that when the electronic searches are done, they're as

comprehensive as we believe they need to be.  So for that

purpose, we're going to be scheduling some depositions early

on after the formal discovery period begins at the end of

1   March, and we've already communicated with King and Spaulding

2   about scheduling for one of those.

3            We know that at the end of that process, which we

4   don't know exactly when that will be, we also don't know what

5   kind of documents we're going to get, but we're hopeful that

6   we'll be in a much better position to negotiate with King and

7   Spaulding about search terms and custodians.

8            We do know that as further information has come out

9   about what happened during the breach, additional custodians

10  and search terms have been -- become obvious to us.  For

11  example, when the House committee report came out that we

12  talked quite a bit about during the oral argument on the

13  motion to dismiss, that listed a number of Equifax employees

14  and talked about certain documents.  And a lot of those

15  people who were named in the House report were not on the

16  list of custodians we originally got.

17           So that is kind of an example of why we need as

18  much information as we can before we embark upon this process

19  of meaningfully negotiating these search terms.

20           Once we -- the Plaintiffs are in a position where

21  we feel we can meaningfully do that, which hopefully will not

22  be very long, then we intend to have a discussion with

23  Equifax about what those search terms and custodians need to

24  be, and we're hopeful, but guardedly so, about our ability to

25  reach agreement on those matters.

1        We haven't agreed on a specific schedule by which

2    that is going to be done.  We think that working together in

3    good faith will move the process along.  And if we need a

4    formal schedule, we'll propose one to the Court or at least

5    attempt to agree upon one for submission at a future status

6    conference.

7        Our hope is to avoid what happened in AndroGel.  I

8    don't think that's what's going to happen in this case.

9        THE COURT:  That was a disaster.

10        MR. CANFIELD:  Tell me, Judge.  I was a part of it

11    as much as you were, probably even spent more time on search

12    terms and custodians.  But we're doing everything we can so

13    that doesn't end up delaying where we are.  And our goal is

14    to have as much of the documentation as can be produced done

15    early on in the process.

16        There's one other factor that the parties have

17    discussed and that is that if after the searches are done for

18    Plaintiffs existing request for production, our first request

19    for production, Plaintiffs serve additional requests, which

20    we anticipate is likely to happen, that even after Equifax

21    has done its initial searches with the agreed-upon search

22    terms and custodians, that the parties will discuss adding

23    additional search terms and additional custodians as those

24    become apparent as a result of the discovery that's taken

25    forward.

1          So that's our report on the status of Plaintiffs'

2    discovery efforts directed at Equifax.

3          THE COURT:  Mr. Guglielmo, do you or Mr. Lynch want

4    to say anything about discovery on behalf of the Financial

5    Institutions?

6          MR. GUGLIELMO:  No, Your Honor.  I think Mr.

7    Canfield has accurately summarized the events that have been

8    taking place amongst the Consumer and Financial Institution

9    cases.

10          THE COURT:  Mr. Balser.

11          MR. BALSER:  Thank you, Your Honor.  You'll be

12    happy to know that I agree with almost everything that Mr.

13    Canfield said.  I do want to emphasize to the Court that

14    Equifax has been complying not only with the letter but the

15    spirt of CMOs number four and five, which govern the

16    discovery plan in the case.

17          Even though the discovery period has not yet begun,

18    we have provided the Plaintiffs with initial disclosures, ESI

19    disclosures, custodian disclosures, search terms and

20    methodology used to search documents.

21          As Mr. Canfield noted, we have responses to their

22    79 requests for production due February 27th or 28th, and

23    we're going to provide responses and objections to those.

24          Requests at that time will also begin, as Mr.

25    Canfield noted, producing documents, and we expect, as he

1    indicated, to be producing approximately 100,000 documents

2    that were produced to the government by March 15th, even

3    though the discovery period doesn't formally commence until

4    March 29th.

5              So we are -- I think that's right.  March 20- -- I

6    guess -- is that right?

7              MR. CANFIELD:  March 29th.

8              MR. BALSER:  March 30th.  So even though the

9    discovery period has not formally begun, we are expediting

10   the production of documents in order to heed the Court's

11   instruction to be in a position to hit the ground running

12   once the discovery period begins.

13             So we were not in the AndroGel case.  We --

14             THE COURT:  That's your good fortune.

15             MR. BALSER:  Yeah.  We intend to do our part to

16   avoid a similar experience for both Plaintiffs' lawyers and

17   the Court.

18             I'm sure there will be issues that we won't reach

19   full agreement on.  And if we can't, we'll obviously be back

20   to you together to resolve those.  But for now, we are fully

21   cooperating, and I think we're working constructively with

22   Plaintiffs' counsel to get them in a position to commence

23   discovery and depositions early after the commencement of the

24   discovery period.

25             THE COURT:  Thank you, Mr. Balser.

1              Does anybody else want to be heard on discovery?

2              (No response.)

3              THE COURT:  Well, I'm going to try to be optimistic

4    and hope that y'all can work together and avoid some of the

5    issues that have arisen in other cases that have gotten those

6    other cases bogged down and are just in a state of paralysis

7    over discovery issues.  So, again, I encourage both sides to

8    be reasonable and compromise, if necessary.  The Plaintiffs

9    may not get everything they want.  The Defendants may give up

10   more than it wants to, but that's just the way this process

11   works.

12             So we will continue having monthly status

13   conferences, and that's always going to be an item on the

14   agenda is the progress of discovery.  So, hopefully, things

15   won't get out of hand.

16             All right.  The next item is the report on the

17   status of third-party discovery.  Mr. Canfield.

18             MR. CANFIELD:  And following up on Mr. Balser's

19   comments and the Court's comments, as I recall, when we were

20   before you for the leadership application hearing in this

21   case, I said that we -- all the Plaintiffs' lawyers in our

22   group have had long-standing relationships with the lawyers

23   at King and Spaulding, believed we had a great deal of mutual

24   respect built on personal experience and reputation, and

25   that's continued to date.

So we're hopeful that some of the issues that arose in the AndroGel case are not going to be a part of this case. We promised to you that we will be working together in a professional way, and that is certainly the way things have been handled to date.  And I have every expectation that they will continue that way in the future.

With regard to the status of third-party discovery, I'm pleased to announce that the parties have agreed that Plaintiffs may begin serving subpoenas on third parties immediately and not have to wait until after the end of March.  We've served preservation subpoenas on a number of third parties.  That was done quite some time ago.

But by beginning the process of service now, it will give the third parties additional time that they otherwise wouldn't have had and it's going to expedite the process.

We will, obviously, work with defense counsel and with the third-parties' counsel to schedule any depositions that are needed of third parties, and, obviously, use good-faith efforts, as we always would, to ensure that people have adequate and reasonable time to respond.

We will set the dates, the return dates on these depositions for once the period of formal discovery begins. So I think that's -- it's not an issue that needs the Court's ruling or direction.  It's an informational matter for the

1  Court.

2         THE COURT:  Mr. Balser, do you have anything to

3  add?

4         MR. BALSER:  No, Your Honor.

5         THE COURT:  All right.  Very good.

6         The next item is the motion for clarification as to

7  the individual defendants.

8         MR. CANFIELD:  That should be a relatively short

9  issue, Your Honor.  I think all the parties are in agreement.

10 There are some lawyers who are present here who can speak to

11 this, if need be.  But they represent individual defendants

12 who were sued in a case filed by the plaintiff block that was

13 one of the hundreds of cases that were transferred to this

14 court for purposes of the MDL.

15        That case was administratively closed and

16 litigation on that case was subsumed within the consolidated

17 Amended Complaint that Plaintiffs filed, and that serves as

18 the vehicle for litigating these issues.

19        The lawyers for the individual defendants in the

20 block case are looking for clarification from the Court that

21 it is not necessary for them to file answers on behalf of

22 their individual defendants in those cases.  And the Consumer

23 and Financial Institution Plaintiffs are certainly agreeable

24 with that, as I understand Equifax is.  So we'd urge the

25 Court to grant their motion.

1    THE COURT:  Mr. Balser.

2    MR. BALSER:  We concur.

3    THE COURT:  Ms. McCaffrey, is there any reason why

4  I shouldn't grant your motion?

5    MS. McCAFFREY:  No, Your Honor.  That would be

6  lovely.  Thank you.

7    (Courtroom laughter.)

8    THE COURT:  All right.  I'll grant the motion for

9  clarification at Docket Number 548.  There's no need for any

10  of the individual defendants to file answers in the block

11  case.

12    The next item is the Class Plaintiffs' motion for

13  limited relief from the discovery stay.

14    MR. CANFIELD:  There are two issues that were

15  raised in the Plaintiffs' motion.  The first was the request

16  that we have limited relief to begin immediate discovery so

17  we can negotiate search terms and custodians, and the second

18  issue dealt with non-disclosure agreements that were signed

19  by former employees that we found to be interfering with our

20  ability to conduct informal discovery.

21    In light of the Court's ruling on the motions to

22  dismiss and the upcoming beginning of the formal discovery

23  period, we don't believe it's necessary for the Court to rule

24  on that first section of the -- our pending motion.  But we

25  do believe that the Court should take under consideration and

rule upon the issue of the non-disclosure agreements.

And if the Court recalls, that has been fully briefed.  It was argued last fall.  And both sides submitted proposed orders governing what was to happen, and we were -- we have competing orders and we were at an impasse.

So Plaintiffs just request that the Court take that issue up and issue a ruling when it has the opportunity to do that.  And if there's anything further that the Court needs from us in order to help along that process, we obviously would be happy to do whatever the Court directs.

THE COURT:  Ms. Sumner.

MS. SUMNER:  Thank you, Your Honor.  I don't want to belabor arguments that we made previously because, like Mr. Canfield said, this has been fully briefed.

I'll just point out that the parties actually did make significant progress in getting close to a process, and this really is now a matter of differences in the proposed orders relating to how that process should occur.

If you compare the orders, they actually overlap and there is some consistency.  But Equifax has requested some additional steps to protect the attorney-client privilege and the confidentiality agreements in particular that it has entered into with other third parties.

So we're happy to answer any questions about that. But that's really what it boils down to as a matter of

1   process.

2          THE COURT:  All right, Ms. Sumner.

3          MR. BALSER:  Your Honor, I'm going to offer another

4   path on this.  I agree with Mr. Canfield that the first part

5   of the prior motion is mooted by the order on the motions to

6   dismiss.  But I think -- my view is that the second part of

7   the motion on which they now seek relief has also been

8   mooted.

9          I think the right way to deal with this is to -- we

10  have a discovery period that commences March 29th.  They can

11  notice the depositions of whatever former employees they

12  want.  And any of the confidentiality issues can just be

13  hashed out in the discovery process.

14         If the Court, rather than choosing between one

15  order or the other or ruling on this motion, the vast

16  majority of which I think has been mooted, I think another

17  way to do it and a way I would suggest or at least recommend

18  the Court consider is just let them notice whatever

19  depositions they want and then hash it out in the deposition

20  process.  I actually think that might be more efficient.

21         MR. CANFIELD:  Your Honor, that would be the worst

22  possible result because, effectively, that would mean we

23  can't talk to a former employee that has a non-disclosure

24  agreement with King and Spaulding, which apparently is most

25  of them, and it would essentially block all informal

discovery efforts that parties universally have the
opportunity to do.

So Mr. Balser's approach would essentially prevent
us from doing that, doing something that is routinely allowed
in cases.  It is consistent with the ethical rules, and King
and Spaulding itself doesn't contend that its NDAs insulate
its former employees from talking to us.  The parties just
disagree about what steps need to be done and have to go
through -- the Plaintiffs have to go through in order to
conduct those interviews.

Our proposed order is consistent with orders that
have -- other orders that have been entered by this Court and
other courts and that incorporate every single one of the
items required by the ethical rules.

King and Spaulding has had a series of demands that
we believe are designed to deter former employees from
talking to Plaintiffs' counsel or our investigators.  If the
Court recalls, it started with King and Spaulding wanted us
to identify in advance who it was that we intended to
interview.  We had to give them the date that the interview
was going to occur.  We had to provide a list of all the
questions that we wanted to ask the former employees.

And it is true that over time, about five or six
months of discussion, they would gradually agree not to have
all of the -- not to insist upon all of those requirements.

1      But under King and Spaulding's order, what would

2   happen, we believe, is that our investigator would have to

3   read a script to be -- that hasn't even been negotiated to

4   the witness.  And so you're talking about five minutes, ten

5   minutes of telling this person what either an onerous thing

6   that this is or how difficult it is going to be, and the

7   inevitable result is the witnesses are going to say, I don't

8   want to participate.  I don't want -- it sounds too

9   legalistic to me.

10      So we believe that the existing ethical rules are

11   adequate.  We've submitted an order to that effect.  And we

12   would urge the Court to consider our motion and to grant that

13   order.

14      One footnote.  In looking at the briefing on this

15   issue this morning, I could not find that we actually

16   submitted a proposed order to the Court.  I think we did.

17   That's my recollection.  We will check.  And if we didn't and

18   then the Court would find it helpful, we'll be glad to submit

19   an actual proposed order.

20      We specified, clearly specified in our brief the

21   items that we believe should have been included in the order,

22   but I'm not sure that we actually filed of record the

23   proposed order itself.

24      THE COURT:  Well, if you haven't, you had need to

25   do that, Mr. Canfield, because in these situations -- and Ms.

Sumner -- usually what I do is I just decide who's being the
most unreasonable and sign the other side's order.

(Courtroom laughter.)

MR. CANFIELD:  We'll submit ours.  It probably
won't happen today, given the weather, but we'll do it
tomorrow, if that's all right.

MS. SUMNER:  Your Honor, just one clarification for
the record.  The non-disclosure agreements are not with King
and Spaulding.  These are agreements with Equifax and also
other third parties relating to confidential trade secret
information that sometimes is shared to Equifax employees.

So to the extent Mr. Canfield was referring to
agreements with King and Spaulding, this is -- these are
agreements with Equifax and other third parties.  However,
the attorney-client privilege issue is obviously one that
King and Spaulding is involved in.  Thank you.

THE COURT:  All right, Ms. Sumner.

All right.  The next item is other outstanding
motions.

MR. SCHNEIDER:  Your Honor, Pete Schneider on
behalf of the Commonwealth of Puerto Rico.  It's a privilege
to be in your court today.  Thank you.

The Court may recall that the City of Chicago filed
a motion for separate governmental track, and we join in that
motion.

1          When the JPML transferred Puerto Rico's case into

2     this court, it specifically stated that separate tracks were

3     duly available to this Court to efficiently and fairly handle

4     government enforcement actions.

5          Unlike Chicago, however, Your Honor, Puerto Rico

6     does not have voting members in the House and Senate,

7     including those on the House Oversight Committee itself that

8     investigated Equifax for misconduct for the very issues that

9     arose in this case.  Puerto Rico does not have that

10    representation.

11         It would be fair, Your Honor, and just and

12    equitable, given the circumstances in which Puerto Rico finds

13    itself, to have a separate governmental enforcement track on

14    behalf of Puerto Rico.  And therefore we join in the motion

15    for a separate track with the City of Chicago, Illinois, and

16    respectfully ask Your Honor to allow a separate track for

17    governmental actions.

18              THE COURT:  All right, Mr. Schneider.

19              MR. SCHNEIDER:  Thank you, Your Honor.

20              THE COURT:  Does anybody else want to speak to that

21    issue?

22              MR. CANFIELD:  Your Honor, the Plaintiffs have not

23    received the motion that was filed by the -- by Puerto Rico.

24    My understanding is it was filed last Friday by hand and

25    hasn't yet hit the ECF system.  So this afternoon was the

1    first time that we were aware of it.

2            We will oppose the motion.  We don't believe a

3    separate track is necessary, but we would like an opportunity

4    to brief the issue.  And I think under the Court's case

5    management orders, the parties are to meet and confer and

6    propose a briefing schedule that the Court would enter to

7    deal with new motions.  So that's what we would suggest

8    happen here.

9            MR. SCHNEIDER:  Your Honor, if it pleases the

10   Court, we did send out a meet-and-confer e-mail.  We received

11   one response to it from the Consumer Plaintiffs that said

12   that they did not take issue with our joinder in the City of

13   Chicago's motion for a separate track.

14           Again, these are governmental enforcement actions.

15   They don't deal with class certification and a lot of the

16   issues that the Consumer Plaintiffs and Equifax are going to

17   have to deal with.

18           Puerto Rico, as the Court is well aware, has had so

19   many difficulties since the hurricane.  It would be unfair to

20   have Puerto Rico unjustly delayed as a result of issues that

21   arise between the Consumer Plaintiffs and Equifax.

22           And we are happy to continue to brief the issue.

23   We're happy to come back here in front of Your Honor and

24   argue these points again at any time the Court deems

25   appropriate.

1        THE COURT:  Mr. Balser.

2        MR. BALSER:  Your Honor, we have not yet seen a

3   formal motion for joinder filed by the Commonwealth of Puerto

4   Rico.

5        We would not oppose joinder by Puerto Rico with the

6   City of Chicago's motion, but we most definitely will oppose

7   the creation of a separate track for the City of Chicago and

8   the Commonwealth of Puerto Rico.  And so I would suggest that

9   if and when that motion gets filed on the ECF and served,

10  that we have an appropriate time to further brief the issues.

11       THE COURT:  Well, I'm not going to make any attempt

12  today to rule on either Chicago's motion or Puerto Rico's

13  motion.  So y'all confer and come up with a briefing

14  schedule, and I'll rule when I can.

15       MR. SCHNEIDER:  Yes, sir, Your Honor.

16       THE COURT:  The final item is the -- on your agenda

17  is the coordination of discovery with the Securities

18  Litigation.  Do you want to just wait on that one until I get

19  to the Securities Litigation part or do y'all want to leave?

20       MR. BALSER:  Your Honor, this is an issue that we

21  raised, and I think we can probably cover it pretty quickly

22  now.  And since the Court is going to be having monthly

23  status conferences, I think for today's purposes we wanted to

24  put on the Court's radar the issue of coordination for

25  purposes of efficiency.

1    I think we're not yet even in the commencement of

2    the discovery period.  So I think these issues will have to

3    play out.  But we think, especially with respect to Equifax

4    witnesses for depositions, we will only want those people.

5    We think that's fair under the circumstances.  But I don't

6    think we have to get into any of the specifics today because

7    there are -- there's a lot of water that needs to go under

8    the bridge before we're really ready to talk concretely about

9    it.

10    But we do think -- I mean, you'll recall my partner

11    Mr. Smith argued vociferously to not be included in this MDL,

12    and you -- I think all will remember fondly your remark to

13    Mr. Smith that he's going to be here with us, and part of the

14    Court's rationale for that was efficiency and coordination, I

15    believe.

16    So we do think given the fact that the Securities

17    Litigation is part of this MDL, that we ought to be

18    coordinating on discovery, and that's why we wanted to raise

19    it.

20    But we have no specific proposal for Your Honor

21    today and neither will my colleagues in the Securities track

22    other than to say that we're committed to trying to figure

23    out a way to make this as efficient as possible, including

24    with coordination between those two aspects of the MDL.

25    THE COURT:  Well, thank you, Mr. Balser.

And I do expect that there will be coordination of discovery between the MDL case and the Securities Litigation case and the Derivative case if it goes forward, and I'll deal with any problems that come up when they come up.

All right.  Somebody on the phone is making breathing sounds which are coming across into our sound system.  So everybody that's on the phone, mute your phone, please, so we don't hear you breathing.

It seems to have stopped.

All right.  There's one item -- two items on my agenda.  One is -- actually, three.  One is all of the individual cases that were transferred to me or at least the vast majority of them are still open on the docket.  Is there any reason why those can't be closed administratively?  Among other things, it's making my pending case number look totally atrocious.

MR. CANFIELD:  Your Honor, from the Consumer Plaintiffs' standpoint, we had understood that they already had been administratively closed.  And I think the Court had announced its intention to do that.  So we're perfectly fine with that approach.  We think it would be appropriate.

THE COURT:  Mr. Balser.

MR. BALSER:  As you might imagine, we certainly have no objection to your doing that.

THE COURT:  All right.

1          Well, I'll order the clerk to close

2   administratively all of the individual cases other than the

3   pro ses, and that's what I need to talk about next.  We've

4   got a lot of pro se cases, and I've basically just been

5   ignoring them until I could rule on the motions to dismiss.

6          I've got to start doing something with them.  Any

7   suggestions, Mr. Balser?

8          MR. BALSER:  One suggestion would be to treat those

9   the same way you're treating the individual cases and close

10  those administratively as well.

11         THE COURT:  I'm not sure I can do that because

12  we've kept the pro se cases separate and have not put them in

13  with the MDL cases.

14         MR. BALSER:  Your Honor, we can move to include

15  those cases in the MDL if that would provide the appropriate

16  process to deal with those.

17         THE COURT:  Well, many of them were transferred to

18  me by the MDL panel.  So in that sense, they are in the MDL

19  already.

20         But, for example, I don't know what Mr. Canfield's

21  position is, whether he is representing the pro ses as well

22  as everybody -- all the other Plaintiffs in the MDL.

23         MR. CANFIELD:  Judge, I haven't thought about the

24  issue until just now.  But I don't see conceptually any

25  difference between a pro se complaint and one that was filed

1  by a lawyer.

2            One of the cases that was transferred here, the MDL

3  panel obviously envisioned that there would be coordination.

4            Under the Court's CMOs, the Consumer Plaintiffs

5  filed a consolidated Amended Complaint which is to serve as

6  the vehicle for all of the litigation involved in -- that was

7  initiated by all of those cases, pro se or filed by lawyers.

8  And to allow individual pro se Plaintiffs to participate

9  separate and apart from the efforts that are being led by

10  co-lead counsel that the Court appointed could lead to chaos.

11            So our belief is along the lines of what Equifax

12  has suggested, that they simply be administratively closed.

13            If for whatever reason the Court is unwilling to do

14  that or doesn't believe it can do that, an alternative would

15  simply be to stay all those cases until the complete --

16  completion of discovery proceedings, with a Consolidated

17  Amended Complaint, and then take another look at that point.

18            THE COURT:  All right.  I'm going to order the

19  clerk to administratively close all of the pro ses that were

20  transferred here by the MDL panel for the very reason you

21  just gave, Mr. Canfield.  And you think about it and tell me

22  at the next status conference if you think I can do the same

23  thing with the ones that were filed here directly.

24            MR. CANFIELD:  We will do that, Your Honor.

25            (Discussion off the record between the Court and

1    the courtroom deputy.)

2           THE COURT:  The last issue and the most unfortunate

3    one deals with future status conferences.  We will have them

4    every month or so.  The problem arises because on March 4th,

5    I will be starting the FTC versus Actavis bench trial in the

6    AndroGel case, and I'm expecting that to take all of March.

7           I will take Friday afternoons off in that trial.

8    So as much as I hate doing these things on Friday afternoons,

9    that's the only time that's going to be available in March.

10          And then it gets worse because on April the 8th, I

11   start the Gangster Disciples criminal RICO trial involving 13

12   alleged members of the Gangsters Disciples prison gang, and

13   that one is supposed to take six to eight weeks.  And, again,

14   I'll be taking Friday afternoons off.

15          But the only time available for these status

16   conferences will be Friday afternoon.  So I'm not happy about

17   that, but there's just no alternative.

18          So Ms. Sewell will be in touch with y'all or y'all

19   can decide after I leave the bench when the next status

20   conference will be.

21          Next is the Derivative Litigation.

22          MR. BALSER:  Your Honor, before we close out on the

23   MDL part of the status conference, I did want to just bring

24   to the Court's attention that there is a possibility that

25   we'll be filing a very narrow motion for clarification with

respect to one very, very narrow aspect of the Court's order and the motion to dismiss.

I didn't want that to come over the transom without my having at least mentioned it as a possibility at this hearing.  So there are still some issues we're considering looking at, but I wanted to let the Court know that.

And, obviously, if it gets filed, we'll file it by the deadline, which is February 25th.

THE COURT:  If it's not ruled on by March the 4th, God help us, Mr. Balser.

(Courtroom laughter.)

MR. BALSER:  I understand.

THE COURT:  All right.  The Derivative Litigation.

MR. WEISS:  Good afternoon, Your Honor.  Joseph Weiss on behalf of the Derivative Plaintiffs.

THE COURT:  Good afternoon, Mr. Weiss.

MR. WEISS:  Thank you.  It's good to get out of the cold of New York and come to the rain in Atlanta.

In any event, we, of course, agree that there should be coordination of discovery, and I don't think there's going to be any issue as to that between us and the Defendants or counsel for the special committee, but they can speak for themselves.

But we have agreed to enter into a confidentiality order in order to facilitate the initial production of

documents.  And I frankly was not aware of the number of

documents, but, you know, we'll be ready for them.  And we're

anticipating they'll be producing the same documents to us as

they produce in the MDL and presumably in the Securities

case.

Our case is different than the others in the sense

that in addition to looking at the past, we're looking at the

future in terms of protecting the company and making sure

something like this doesn't happen again.  So we have

discussed with them -- and it was awaiting Your Honor's

rulings on the motion to dismiss -- a meeting between us and

our expert and Equifax's chief information security officer,

and that's going to be scheduled.

Once we're able to do that and to learn what steps

the company has already taken, what they're contemplating

and, you know, what we and our expert believe still should be

done, we're going to have a meeting with the demand review

committee of the board of directors, which is going to be our

second meeting, and it's going to try to get a feel for what

the company is prepared to listen to from us and where they

stand.  So there's some flux here.

There's also the issue of money in our case, just

like the others, in terms of the damages to the company.  But

that's something that will still have to be dealt with, and

we think the discovery will be helpful in that regard.

1          That's pretty much where we stand, Your Honor.

2          THE COURT:  All right.  Thank you, Mr. Weiss.

3          MR. WEISS:  Thank you.

4          MR. POPE:  Mr. Pope, Your Honor, on behalf of

5   Equifax in the Derivative Litigation.  The Derivative

6   Litigation is in a different posture than the Securities

7   Litigation and the MDL.  There is no pending discovery.

8   There are no discovery requests in that case.

9          So while we agree at a high level that there should

10  be coordination, there's not anything to respond to from the

11  Plaintiffs in terms of discovery.

12         So unlike in the Securities Litigation where

13  there's going to be responses and objections to document

14  requests, there's not that mechanism in the Derivative

15  Litigation.

16         So while, as I told Mr. Weiss, we're willing to

17  share documents across with him with respect to what we

18  produce in the Securities Litigation, there's not that

19  vehicle.  So we're just not there yet, I think, Your Honor.

20  But I heard Your Honor and you expect coordination, and we'll

21  work with Mr. Weiss on that, but we're just in a different

22  place procedurally in the Derivative Litigation.  There's

23  been no motion practice there.  There's been no response to

24  the Complaint.

25         So I'll let the committee counsel speak.  But we

 1    intend to cooperate.  We intend to share documents, where

 2    appropriate, but we're in a different posture with respect to

 3    the Derivative Litigation, Your Honor.

 4               THE COURT:  All right, Mr. Pope.

 5               Anybody else want to be heard on the Derivative

 6    case?

 7               (No response).

 8               THE COURT:  All right.  That leads to the

 9    Securities case.  I've got your agenda, and the first item on

10    it is coordination of discovery.  So, Mr. Harrod.

11               MR. HARROD:  Good afternoon, Your Honor.  It's good

12    to see you again.

13               On the topic of coordination, we don't have a

14    formal proposal from the Defendants about what exactly

15    coordination they are looking for.  We are, of course,

16    willing to and expect to be able to coordinate as much as

17    reasonably possible.

18               The only constraint that I would say is that I

19    would rather have a specific set of procedures or guidelines

20    that they want in terms of coordination so that we can

21    respond to it in a meaningful way.  And that's all I would

22    say about that.

23               You know, we obviously want to preserve both the

24    parties and the Court's resources in terms of not engaging in

25    unnecessary motion practice or anything else.

So to the extent that we can do that without sacrificing the ability to litigate our case, we'll be happy to do so.

THE COURT:  Thank you, Mr. Harrod.

MR. HARROD:  You're welcome.

THE COURT:  Mr. Smith, do you want to be heard on that?

MR. SMITH:  Mr. Pope will respond.

THE COURT:  All right.

MR. POPE:  Your Honor, we agree that there ought to be a procedure and protocol, and we're committed to get the Plaintiffs a draft of that, and we'll continue to meet and confer on that.  In the event we can't agree, we'll be back here to discuss it with you on the Friday afternoon to be named in March.

THE COURT:  Fine.

The second item is the status of proposed search items and custodians.

MR. HARROD:  Thank you, Your Honor.  We don't have a lot of dispute, but I just wanted to inform the Court that the progress, as the MDL Plaintiffs noted, on resolving the question of both custodians and search terms has not gone quite as well as I would have liked.  I would have liked at this point, after the motion to dismiss has been resolved, to have more of a complete agreement on that.

1          And I'm unhappy about one -- a couple of particular

2     issues.  One is that there's some disagreement about

3     custodians.  We're going to make a formal response to the

4     Defendants probably this week or early next week.

5          But just to give you one example, Your Honor, one

6     of the custodians who is not on the Defendants' list is Mr.

7     John Kelly, who is the chief legal officer.  He's referenced

8     in your opinion as the supervisor of two of the individuals

9     who were responsible for cyber security at the company.

10    Obviously, we need to have his documents.

11         During this conference this afternoon, Your Honor,

12    the Defendants actually filed their motion.  I think it's

13    styled as a motion for clarification regarding your order on

14    the very topic of the corporate scienter aspect of your

15    motion to dismiss opinion.

16         Mr. Kelly's role as the supervisor of the people

17    who you identified as being principally responsible for cyber

18    security at the company makes it clear that we need to

19    understand what information he was receiving during the class

20    period with respect to that issue.  So that's just one

21    example.

22         On the question of search terms, we served our

23    document request in August of last year.  We've had three

24    exchanges of revisions on search terms with the Defendants.

25         At this point, I am -- I'm hopeful that we'll be

1    able to reach agreement on these issues, but at the present

2    we're not.  We're having some difficulty trying to find a way

3    to understand what each other is saying.  There's a dispute

4    basically about the breadth of the search terms and how many

5    documents are culled in that process.

6          I can understand from Your Honor's comments about

7    the AndroGel case that you are looking for the parties to try

8    to find a way to compromise on this, and we will do that.

9    But I am concerned about the position the Defendants have

10   taken so far.  And I would ask that -- or I would expect that

11   if the issues are not resolved prior to the next status

12   conference, that we will make some request for the Court to

13   intervene on that, with the understanding and knowledge that

14   Your Honor would like us to try to resolve that as best we

15   can.  So I will make every effort to do that, but at this

16   point I can't say that we're there.

17         THE COURT:  Mr. Smith or Mr. Pope.

18         MR. POPE:  We concur with Mr. Harrod.  We'll make

19   every effort to not bring it before Your Honor.

20         I will say that I think with respect -- we're

21   actually farther along than the MDL Plaintiffs with respect

22   to search terms and parties.

23         So we've made valiant efforts.  We're not there

24   yet.  We're going to be producing documents early, before

25   fact discovery starts, the same way it's going to occur in

1    the MDL.

2              So to the extent they want to review those

3    documents and inform themselves with respect to negotiations,

4    then I encourage them to do that and I encourage both sides

5    to try to reach agreement before the next status conference.

6              THE COURT:  All right.  The next item is update

7    regarding previously produced materials.

8              MR. HARROD:  On this, Your Honor, I think I can be

9    very brief.  As they noted in the MDL cases, the Defendants

10   have agreed to produce shortly after their responses to our

11   document requests which are due February 27th.  They're going

12   to produce the corpus of the documents that have been

13   produced in connection with governmental and regulatory

14   investigations.  So I'm happy to report that.

15             While I would say in contrast to what Mr. Pope just

16   said, I am not sure that those documents are going to be

17   dispositive of the question of what the search terms are.  I

18   think we're going to need to try to come to agreement.

19             Obviously, there may be information in that

20   production that will help us, but I think that we need to

21   make sure that we have a population of documents that's

22   produced in our case that is tailored to the issues in our

23   case.  And so we need to protect our interests in that

24   regard, and hopefully we'll be able to do that by compromise.

25             But I am happy to report that they agreed to do it,

1   and it sounds like they're going to do it right away.  So

2   that's good news.

3           That's all I have today, Your Honor.  Thank you.

4           THE COURT:  Do you want to say anything, Mr. Pope?

5           MR. POPE:  I do.  I want to object to the word

6   "corpus."  I don't know what that means with respect to

7   document production.

8           So we understand that we want to try to coordinate

9   and we want to try to keep pace with the MDL.  We're going to

10  respond and object to their RFPs on the 27th, as we said we

11  would, and we're going to make a document production shortly

12  thereafter, and then we can talk about what that means,

13  whether it has any impact on search terms or not.

14          Obviously, in the MDL, they're taking the position

15  that it does.  So I would encourage Mr. Harrod to think about

16  that.

17          And then, finally, on the motion for clarification,

18  he did point out it has been filed today.  Defendants filed

19  it, Your Honor.  I think it was filed while we're here in

20  court.  And we'll let the motion speak for itself.  And,

21  hopefully, their response will be due before March 4th.

22          THE COURT:  All right.  That's everything on the

23  agenda of all three cases.

24          Is there anything else we need to talk about, Mr.

25  Canfield?

1          MR. CANFIELD:  Not for the Consumer Plaintiffs,

2    Your Honor.

3          THE COURT:  Any of the other Plaintiffs?

4          MR. HARROD:  No, Your Honor.

5          THE COURT:  Anything else, Mr. Balser, Mr. Smith?

6          MR. BALSER:  No, Your Honor.

7          MR. POPE:  No, Your Honor.

8          THE COURT:  All right.  Thank you very much.

9          Let me say I know it involved a lot of time and a

10   lot of billable hours and it was exhausting, but the oral

11   argument on the motions to dismiss was extremely helpful and

12   made a difference.  So tell your clients they spent a lot of

13   money on that, but it was helpful and made a difference.

14         MR. SCHNEIDER:  Your Honor, may I address the

15   Court?

16         THE COURT:  Yes, sir.

17         MR. SCHNEIDER:  I just wanted to make sure as it

18   relates to the administrative closing of certain cases that

19   the Court mentioned, that those administrative closings would

20   not include the City of Chicago or the Commonwealth of Puerto

21   Rico, seeing that we're about to brief the issue of separate

22   track with the Court, have a briefing schedule with all

23   parties, and then come have a hearing on that issue.

24         THE COURT:  Well, I don't know if you'll have a

25   hearing or not.  But, anyway, you come up to Ms. Sewell and

1    give her our case file numbers, and those two cases are not

2    to be closed.

3             MR. SCHNEIDER:  Yes, sir.  Thank you, Your Honor.

4             THE COURT:  And the rest of y'all come up and try

5    to work out a date on a Friday afternoon for the next status

6    conference.

7             Thank you very much.  Court's in recess until

8    further order.

9             (Proceedings concluded at 2:59 p.m.)

10                        - - - - - - - -

11                     Reporter's Certification

12   I certify that the foregoing is a correct transcript from the

13   record of proceedings in the above-entitled matter.

14                            s/Diane Peede, RMR, CRR, CRC
                             Official Court Reporter
15                           United States District Court
     Date:  February 22, 2019    Northern District of Georgia

16

17

18

19

20

21

22

23

24

25