**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>This document relates to:<br><br>CONSUMER TRACK |

**EQUIFAX'S RESPONSE TO THE
SOVEREIGN TRIBAL GOVERNMENT'S
<u>MOTION TO ESTABLISH A SEPARATE TRACK</u>**

Defendant Equifax Inc. ("Defendant" or "Equifax") opposes Plaintiffs Fond du Lac Band of Lake Superior Chippewa's, St. Croix Chippewa Indians of Wisconsin's, and Red Cliff Band of Lake Superior Chippewa's (collectively, the "Tribal Government Plaintiffs") Motion to Establish Separate Indian Tribal Governments Track (the "Motion," Dkt. No. 577). The only question before this Court is whether creating a separate track for tribal government plaintiffs would lead to a more efficient and just resolution of the claims transferred to this MDL. Because the answer to that question is clearly "no," the Tribal Government Plaintiffs' Motion should be denied.

# BACKGROUND

## A.    Procedural History

The Tribal Government Plaintiffs filed their complaints against Equifax Inc.[1] on July 17, 2018 (filed by the St. Croix Chippewa Indians of Wisconsin in the Western District of Wisconsin and attached at <u>Exhibit A</u>), August 14, 2018 (filed by the Fond du lac Band of Lake Superior Chippewa in the District of Minnesota and attached at <u>Exhibit B</u>), and November 1, 2018 (filed by the Red Cliff Band of Lake Superior Chippewa in the Western District of Wisconsin and attached at <u>Exhibit C</u>) (collectively, the "Tribal Government Actions"). Each Tribal Government Action purports to have been filed on behalf of the plaintiff-tribe "in its parens patriae authority and capacity on behalf of and including" all members of the tribe bringing suit. *See* Exs. A, B, & C at 1. And each Tribal Government Plaintiff seeks to represent a "class of all federally recognized Indian Tribes." *Id*.

Equifax noticed the Tribal Government Actions to the U.S. Judicial Panel on

---

[1] The St. Croix Chippewa Indians' of Wisconsin's Complaint and the Fond du lac Band of Lake Superior Chippewa's Complaint both named Apache Systems, Inc. as a defendant. *See* Exs. A & B. But Equifax has not received any notification that Apache Systems, Inc. was served with either complaint. At any rate, the Tribal Government Plaintiffs do not mention the inclusion of Apache Systems, Inc. in connection with their request for a separate track, nor would the presence of such claims against additional parties warrant the creation of separate track. *See* Dkt. No. 649 (denying Plaintiff Block's motion for a separate track and holding that the presence of additional defendants cannot serve as the basis for a separate track).

Multidistrict Litigation ("JPML") as a potential tag-along action appropriate for inclusion in this MDL. *See In re Equifax, Inc. Customer Data Security Breach Litigation*, MDL No. 2800 (J.P.M.L.), Dkt. Nos. 852 & 927. The Tribal Government Actions were then transferred to this Court for inclusion in the MDL without objection from the Tribal Government Plaintiffs. *Id.*, Dkt. Nos. 866 & 930.

Six months before the Tribal Government Plaintiffs filed suit, this Court had entered Case Management Order No. 2 ("CMO-2," Dkt. No. 87), which established two tracks—a Consumer Track and a Financial Institution Track—"to manage this multidistrict proceeding most efficiently." CMO-2 at 2. The Court established the Consumer Track to include all claims asserted by or on behalf of U.S. consumers, "including the 145.5 million individuals who [the Consumer] Plaintiffs allege had their personal information compromised in the breach." *Id*. at 1. Further, the Court appointed a team of experienced attorneys to represent the Consumer Plaintiffs (Dkt. No. 232), and ordered them to file a "master consolidated complaint" in the Consumer Track "to facilitate the efficient handling of this multidistrict litigation" (CMO-2 at 3).

In accordance with the Court's case management orders, the Consumer Plaintiffs filed a consolidated Complaint on May 14, 2018 (the "Consolidated Consumer Complaint"). Dkt. No. 374. The Consolidated Consumer Complaint

asserts numerous claims—including the negligence, Fair Credit Reporting Act ("FCRA"), and breach of implied contract claims asserted by the Tribal Government Plaintiffs—on behalf of a putative nationwide class that includes all impacted members of the Tribal Government Plaintiffs' tribes. *Id.* ¶ 296. The Consolidated Consumer Complaint also asserts claims on behalf of state subclasses, including putative classes of "[a]ll natural persons residing in Wisconsin whose Personal Information was compromised as a result of the [2017 data security incident]" and "[a]ll natural persons residing in Minnesota whose Personal Information was compromised as a result of the [2017 data security incident]." *Id.* ¶¶ 297, 872-890, 1374-1395.

On January 28, 2019, the Court denied in part and granted in part Equifax's motion to dismiss the Consolidated Consumer Complaint. Dkt. No. 540. The Court dismissed the FCRA and contract claims, but allowed certain of the Consumer Plaintiffs' other claims to move forward, including the negligence claim asserted in the Tribal Government Plaintiffs' Complaints. *Id.* Discovery on those remaining claims is ongoing.

On March 1, 2019, the Tribal Government Plaintiffs filed their Motion for a Separate Track. Dkt. No. 577. On March 15, 2019, the Court entered a briefing schedule, making responses to the Motion due April 1, 2019. Dkt. No. 640 This

response is filed pursuant to that March 15, 2019 Order.

### B. The Tribal Government Plaintiffs' Allegations

The Tribal Government Actions allege the same operative facts as the Consolidated Consumer Complaint. Specifically, the Tribal Government Plaintiffs allege that "[t]he Equifax data breach was a direct and proximate result of Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards," and Equifax's "failure to protect against reasonably foreseeable threats to the security or integrity of such information." St. Croix Compl. ¶ 31; Red Cliff Compl. ¶ 27; Fond du Lac Compl. ¶ 30. The Tribal Government Plaintiffs allege that as a result of that data breach, their members "suffered actual injury in the form of damages to and diminution in the value of their PII," St. Croix Compl. ¶ 22; Red Cliff Compl. ¶ 18; Fond du Lac ¶ 21, and that they have "suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and data misuse posed by their PII being place in the hands of unauthorized persons who have already, or will imminently, misuse such information," St. Croix ¶ 25; Red Cliff Compl. ¶ 21; Fond du Lac ¶ 24.

Based on these allegations, each of the Tribal Government Plaintiffs assert claims for negligence, breach of the Fair Credit Reporting Act (the "FCRA," 15

U.S.C. § 1681), and breach of implied contract. St. Croix Compl. ¶¶ 41-80; Red Cliff Compl. ¶¶ 36-73; Fond du Lac ¶¶ 39-76. The Red Cliff Band of Lake Superior Chippewa also assert a claim for breach of the Wisconsin Deceptive and Unfair Trade Practices Act ("WDTPA," Wis. Stat § 100.18), Red Cliff Compl. ¶¶ 74-83, and the Fond du Lac Band of Lake Superior Chippewa assert a claim for breach of Minnesota Consumer Protection Statutes (Minn. Stat. § 325.13, 325D.44, 325F.69), Fond du Lac Compl. ¶¶ 77-86.  All of the Tribal Government Plaintiffs' claims are included in the Consolidated Consumer Complaint. And all of the individuals on whose behalf the Tribal Government Plaintiffs purport to bring these claims are subsumed by the class definition in the Consolidated Consumer Complaint.

## ARGUMENT

Plaintiffs make three main arguments in support of establishing a separate track: (1) that the history of Tribal Nations and federal Indian law and policy counsel in favor of establishing a separate track for the Tribal Government Plaintiffs; (2) that there are factual issues unique to Indian Tribes that would be better addressed in a separate tribal government track; and (3) that there are legal issues unique to the Tribal Government Plaintiffs' claims that warrant their separation from the other consumer claims. As shown below, none of these

arguments justifies creating a separate track. This Court properly used its "broad discretion to employ any number of pretrial techniques . . . [to] efficiently manage the various aspects" of this MDL by assigning the Tribal Government Plaintiffs' claims to the Consumer Track. *In re: Oil Spill By The Oil Rig "Deepwater Horizon" In The Gulf Of Mexico, On April 20, 2010*, 731 F. Supp. 2d 1352, 1355 (J.P.M.L. 2010)

## I. The History of Indian Tribal Nations Has No Bearing on the Propriety of a Separate Track in This MDL.

The majority of the Tribal Government Plaintiffs' brief focuses on an overview of the relationship between Indian tribes and the United States government dating back to the Constitutional Convention. Dkt. No. 577-1 at 2-13. While this section of the brief discusses the history of American Indian Tribes, it contains no discussion of the Tribal Government Plaintiffs' claims against Equifax. Indeed, this section of the brief contains but one, conclusory reference to the Equifax Data Breach, portraying it as "another challenge in a series of external threats challenging the tribes' sovereignty and their unique culture of governance and ways of life." *Id.* at 3. Not only does this assertion have no bearing on the propriety of establishing a separate tribal governments track, it is incorrect.

The Tribal Government Plaintiffs' complaints clearly state that the Equifax Data Breach was the result of a criminal hack of Equifax that impacted the PII of

7

"143 million *Americans*." Red Cliff Compl. ¶ 17 (emphasis added). There are no allegations that the data breach was directed at the Tribal Government Plaintiffs. And there are no allegations that the Equifax Data Breach had any impact on the Tribal Government Plaintiffs' ability to govern their constituents or that the Tribal Government Plaintiffs' constituents were uniquely impacted by the Equifax Data Breach. Indeed, though the Tribal Government Plaintiffs discuss a number of areas of concern related to tribal sovereignty—such as health care, law enforcement, tribal courts, social series, and child welfare programs—the Tribal Government Plaintiffs make no attempt to tie these issues to the Equifax Data Breach or their claims in this case.

Plaintiffs' briefing in this case is adopted from briefing filed in *In re National Prescription Opiates Litigation*, MDL No. 2804, (N.D. Ohio). *See* Dkt. No. 577-1 at 2 n.2 (stating that "much of the content in this Brief was taken directly from the amicus brief filing by over 400 Tribes in response to various motions to dismiss filed by the Defendants in MDL No. 2804"); *see also In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) at Dkt. No. 1026, filed Oct. 5, 2018 (Attached hereto as Exhibit D) (opposition to motion to dismiss brief from which Plaintiffs' briefing here was adopted). If anything, however, that case demonstrates why a separate track is unnecessary here.

In the *In re: National Prescription Opiate Litigation*, the moving Indian tribes were able to show, with evidence, that Indian tribes were uniquely impacted by the opiate crisis. *Id.* at Dkt. No. 503, filed May 28, 2018 (motion requesting a separate tribal track in MDL) (attached as Exhibit E). This evidence included that (1) mortality rates associated with opiates were higher among Indian tribe members than any other segment of the U.S. population; (2) that Indian tribe members received healthcare in a different manner from other class members (specifically, through the Indian Health Service); (3) that Indian Tribal members were neurologically more susceptible to opiate addictions than other segments of the U.S. population; and (4) that, based on publicly available evidence, it was more foreseeable that the members of Indian tribes would be disproportionately impacted by the opiate crisis. *Id.* at 4-8. There are no similar allegations or evidence at issue here.

The Tribal Government Plaintiffs' attempt to co-opt motion to dismiss briefing from the *In re: National Prescription Opiate Litigation* in order to justify creating a separate track here therefore fails. The cases are different, the claims are different, and the reasons that may have justified a separate tribal government track in the *In re: National Prescription Opiate Litigation* are not present here.

## II. The Factual Issues Bearing on The Tribal Government Plaintiffs' Claims Are The Same Factual Issues Bearing on The Claims in the Consolidated Consumer Complaint.

The Tribal Government Plaintiffs' position that their claims "present unique factual issues and require special discovery considerations" is incorrect.

The limited facts the Tribal Government Plaintiffs point to as being unique to members of Indian tribes are irrelevant to the claims these Plaintiffs assert. The Tribal Government Plaintiffs identify four "facts" that purportedly justify the establishment of separate track: (1) that American Indian youth have graduation rates below the national average; (2) that "many tribal members must travel a great distance to access essential services;" (3) that certain segments of Indian Tribe's populations have high unemployment rates; and (4) that only a quarter of certain Indian Tribe populations can "come up with $2,000 in thirty (30) days in the event of a financial emergency." Dkt. No. 577-1 at 14-15.  None of these facts appear in the Tribal Government Plaintiffs' complaints, and they are not relevant to any claims in this litigation, much less to the issue of a separate discovery track.

Instead, the factual issues raised by the Tribal Government Plaintiffs' actual allegations—whether Equifax acted negligently in protecting consumer PII, whether individual tribe members suffered identity theft as a result of the Equifax data breach, etc.—are the same factual issues raised by the Consolidated Consumer

10

Complaint. As a result, there are no relevant facts unique to the Tribal Government Plaintiffs' claims and there is therefore no "direct specialized discovery" that the Tribal Government Plaintiffs need to conduct. Dkt. No. 577 at 2. Creating a new track is therefore unnecessary and would only result in duplication of effort by the parties and this Court.

### III. The Legal Issues Raised by the Tribal Government Actions Overlap Entirely with Those Being Litigated in The Consumer Track.

The Tribal Government Plaintiffs' final argument—that there are "many unique legal matters affecting only tribal governments"—also fails to justify the creation of separate track in the MDL.

As an initial matter, none of the issues raised by the Tribal Government Plaintiffs have any bearing on the scope of discovery or the facts needed to prove or disprove their claims. As discussed above, those facts will be explored in the discovery underway in the Consumer Track, and creating a separate track here would result in duplicative discovery. Moreover, even if differing legal issues could justify the creation of a new track, the myriad constitutional provisions and federal statutes cited by the Tribal Government Plaintiffs in their briefing—none of which appear in their complaints—appear to have little, if any, connection to their claims here. Instead, the only legal issues raised by the Tribal Government Plaintiffs' *complaints* are whether they can demonstrate the elements of

11

negligence, breach of implied contract, and violation of the state consumer protection laws they invoke.[2] Those claims will be subject to the same analysis, and will rise and fall on the same evidence, as the overlapping claims asserted in the Consolidated Consumer Complaint. There are no unique legal issues that could justify creating a separate track for the Tribal Government Plaintiffs' claims.[3]

Finally, the Tribal Government Plaintiffs' general references to tribal sovereignty do not warrant the creation of a separate tribal government track. As an initial matter, it is not clear what claims the Tribal Government Plaintiffs can assert in their own names (if any), as opposed to claims asserted on behalf of the individual members of the respective Tribes. But regardless of whether the Tribal

---

[2] In accordance with the Court's ruling on Equifax's Motion to Dismiss the Consolidated Consumer Complaint, the Tribal Government Plaintiffs' FCRA and contract claims are also barred.

[3] The cases the Tribal Government Plaintiffs cite do not support their request for a separate track. *See Nat'l Labor Relations Bd. v. Little River Band of Ottawa Indians Tribal Gov't*, 788 F.3d 537 (6th Cir. 2015) (holding that the National Labor Relations Board may apply the National Labor Relations Act to casinos operated by federally recognized Indian tribes); *Nevada v. Hicks*, 533 U.S. 353 (2001) (holding that a tribal court did not have jurisdiction over a civil rights and tort claim filed against Nevada state officials in connection with the execution of a search warrant on tribal property); *United States v. Wheeler*, 435 U.S. 313 (1978) (holding that the Double Jeopardy Clause did not bar indictment in federal court for crime arising out of the same set of facts as a crime previously prosecuted in tribal court); *Worcester v. Georgia*, 31 U.S. 515 (1832) (holding that the State of Georgia could not enforce a law regarding residing on Cherokee Indian lands that was in conflict with the terms of Federal laws and treaties).

Government Plaintiffs assert independent claims, their inclusion in the Consumer Track of this MDL will not impinge on their independent right to contract, including any resolution of the Tribes' claims in this litigation. Dkt. 577-1 at 19. Inclusion in the Consumer track simply means that discovery and other pre-trial activities will be coordinated with the litigation on the other, nearly identical claims in the Consolidated Consumer Complaint. MDL courts have declined to separate out similar governmental claims into separate tracks where the discovery required for such claims would be duplicative of that sought in an established consumer track. *See*, *e.g.*, *In re: Oil Spill By The Oil Rig "Deepwater Horizon" In The Gulf Of Mexico, On April 20, 2010*, No. 10-md-2179 (E.D. La. Jan. 27, 2011), ECF 1076 (denying State of Louisiana's motion to create separate government track). And there is no reason to depart from this approach here.

*   *   *

The Court appropriately exercised its discretion under Section 1407 in assigning the Tribal Government Actions to the Consumer Track, and there is no basis for revisiting that decision and creating a separate track.

## CONCLUSION

For these reasons, the Court should deny the Tribal Government Plaintiffs'

Motion for a separate track.

Respectfully submitted this 1st day of April, 2019.

    /s/ *S. Stewart Haskins II*
**KING & SPALDING LLP**
David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Defendant Equifax Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1B. This brief was prepared on a computer using the Times New Roman font (14 point).

DATED: April 1, 2019

                                              */s/ S. Stewart Haskins II*
                                              **KING & SPALDING LLP**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ S. Stewart Haskins II
**KING & SPALDING LLP**