IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>ALL ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

**PLAINTIFFS' CONSOLIDATED REPLY
TO RESPONSES TO MOTION TO ESTABLISH
A SEPARATE TRACK FOR TRIBAL GOVERNMENTS ACTIONS**

Pursuant to Document 640, the Tribal Governments Plaintiffs file this, their Consolidated Reply to Responses to Motion to Establish a Separate Track for Tribal Governments Actions, and in support thereof, would state the following:

Two oppositions to the Tribal Governments Plaintiffs' motion were filed: (1) the first by the Consumer Plaintiffs (Doc. 677); and, (2) the second by Equifax (Doc. 678). The Consumer Plaintiffs' main argument is that there are no discovery needs unique to the tribal governments, and therefore a separate track is unnecessary (Doc. 677, at pg. 3). Equifax argues that "[a]ll of the Tribal Government Plaintiffs' claims are included in the Consolidated Consumer Complaint. And all of the individuals on whose behalf the Tribal Government Plaintiffs purport to bring these claims are subsumed by the class definition in the Consolidated Consumer Complaint." (Doc. 678, at pg. 6).

1

However, the Consumer Plaintiffs' argument ignores the reality of historical and systemic financial discrimination against tribes and tribal members by financial institutes and other lenders. As a result of these discriminations, and other factors unique to tribes, a separate track is required. Further, Equifax's arguments are unpersuasive because the Consumer Plaintiffs are not adequate representatives of the Tribal Governments Plaintiffs' claims.

## I. Tribal Governments Plaintiffs' Unique Discovery Needs

In addition to the factual and legal issues unique to the tribes outlined in the Tribal Governments' motion and supporting brief, there has been a long history of systemic financial discrimination against tribes and tribal members by financial institutions and other lenders. This heightens the harm caused by identity theft and other issues stemming from the data breach. Therefore, the Tribal Governments Plaintiffs have unique discovery needs on the issues of, among others, causation and damages.

Financial discrimination against tribes and tribal members is uncontroverted. By way of example:

- Generally speaking, in May of 2003, the First Nations Development Institute published a research report relating to lending discrimination against Indians. They found, among other statistics, that Indians were 193% more likely to be victims of the sub-prime lending scam in 2003. In New Mexico, in the

year 2000, 79% of home loans were from sub-prime and manufactured home lenders.[1]
- Historically, Native Americans have been the victim of discriminatory home lending practices known as "redlining" where banks refuse to lend to prospective borrows with addresses on reservations. Examples include:
    - In 1994 Blackpipe State Bank of Martin settled a suit brought by the US against it for redlining reservations in South Dakota;[2]
    - In 2007 Aegis Mortgage and NovaStar Mortgage, Inc.[3] settled a lawsuit for redlining; and,
    - In 2018 the US Department of Housing and Urban Development fined loanDepot.com for its refusal to lend to two Native Americans living on tribal lands.[4]
- In 1997 the US Justice Department sued The First National Bank of Gordon, Nebraska, who loaned heavily to citizens of the Pine Ridge Indian Reservation, for violating federal fair lending laws. The bank settled for $275,000.[5]

As a result of the historic and systemic discrimination against tribes and tribal members as partially cataloged above, Tribes have even more limited access to sources of credit compared to other non-Tribal members of the Consumer Class. Identity theft and the data breach almost certainly exasperate the problems faced by the Tribal Governments Plaintiffs; accordingly, specific and unique discovery is

---

[1] FIRST NATIONS DEVELOPMENT INSTITUTE. BORROWING TROUBLE: PREDATORY LENDING IN NATIVE AMERICAN COMMUNITIES (2008).
[2] *USA v. Blackpipe State Bank*, 5:93-cv-05115-RHB (D.S.D. 1994)
[3] *National Community Reinvestment Coalition v. NovaStar Financial, Inc. et al*, 07-861-RCL (D.D.C. 2009).
[4] *Conciliation Agreement*, FHEO Title VIII Case Numbers 08-17-5267-8 and 08-18-6949-8.
[5] *United States v. First National Bank of Gordon, Nebraska*, 5:96-5035-RHB (D.S.D. 2001).

needed with respect to at least damages and causation related to the tribal Governments Plaintiffs. The Consumer Class Complaint recognizes the importance of consumer credit in the US economy. *See, e.g.*, Doc. 374 at ¶¶ 122-123. As a result of the additional hurdles placed in front of Tribal borrowers, access to consumer credit can become even more important to them, and the issues in this litigation are thus unique. As argued in the prior briefing, "[t]he vulnerability of Native Americans to security data breaches and the adverse consequences to each tribe and its members produce greater financial hardship among Indian tribal members already living in poverty." Doc. 577-1, at pg. 14.

Allowing specific discovery on tribal issues at this pretrial stage is wholly consistent with established multidistrict litigation practices. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §11.31 (2004) ("The controlling factual and legal issues can almost always be identified by a thorough and candid discussion with counsel at the initial conference, prior to discovery. The judge should construct the discovery plan identifying the primary issues, at least preliminarily, based on the pleadings and the parties' positions at the initial conference. Discovery may then provide information for further defining and narrowing issues, **which may in turn lead to revision and refinement of the discovery plan**.") (emphasis added); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.422 ("Sometimes judges

order 'common' discovery to proceed in a specified sequence, without similarly limiting 'individual' discovery in the various cases.").

Moreover, allowing a separate Tribal Governments track is consistent with this Court's prior orders:

> Except where it is most cost-effective and efficient to do otherwise, the Court intends for the tracks to proceed on the same discovery schedule and that counsel appointed to lead the separate tracks coordinate as closely as possible to avoid duplication of effort. The Court further intends, however, that pleadings and motions proceed separately in each track.

*CMO* #2 (Doc. 87 at pg. 3). Allowing unique tribal discovery on a separate track will not disrupt the discovery schedule—by contrast, it will protect tribal sovereignty and allow the Tribal Governments' pleadings and motions to proceed separately if necessary.

## II. The Consumer Plaintiffs are Not Adequate Representatives of Tribal Governmental Plaintiffs' Claims

Equifax argues that a separate Tribal Governments track is not needed because "[a]ll of the Tribal Government Plaintiffs' claims are included in the Consolidated Consumer Complaint. And all of the individuals on whose behalf the Tribal Government Plaintiffs purport to bring these claims are subsumed by the class definition in the Consolidated Consumer Complaint." (Doc. 678, at pg. 6). However, the Consumer Plaintiff representatives are inadequate and even unable to represent the interests of the Tribal Governments Plaintiffs.

5

The Consumer Class "is brought by 96 individuals from across the United States on behalf of all natural persons victimized by the breach to redress the damage that they have suffered and to obtain appropriate relief to mitigate the risk that Equifax will allow another breach in the future." Doc. 374 at ¶ 6. Further, the "Consolidated [Consumer Class] Complaint is intended to serve as a superseding complaint as to all other complaints consolidated in this multidistrict litigation **that were filed on behalf of natural persons**, and to serve for all purposes at the operative pleading for the Classes defined below." *Id.*, at ¶ 7. As a matter of primary concern, the Tribal Governments Plaintiffs are just that—Tribal Governments and not natural persons. *See Worchester v. Georgia*, 31 U.S. (6 Pet.) 515, 559 (1832); *United States v. Wheeler*, 435 U.S. 313, 322-23 (1987). The Tribal Governments' claims are therefore not superseded (or subsumed) by the Consumer Class's own definitions. Accordingly, Equifax's argument that "[a]ll of the Tribal Governments Plaintiffs' claims are included in the Consolidated Consumer Complaint…" falls flat on its face. (Doc. 678, at pg. 6).

As argued in the briefing supporting its motion, the Tribal Governments are different juridical entities than their respective members, and bring their suits under their *parens patriae* authority. It is simply not true that "all of the individuals on whose behalf the Tribal Governments Plaintiffs purport to bring these claims are subsumed by the class definition in the Consolidated Consumer Complaint." (Doc.

678, at pg. 6). If it were, notions of Tribal sovereignty would be impermissibly violated.

On file with the court is a Consolidated Class Action Complaint for Small Business Claims (Doc. 375), which is also in the Consumer Track—those business plaintiffs are owned by natural persons[6] and the Business claims are no more "subsumed" into the Consolidated Consumer Class definitions than the Tribal Governments are without consideration of Tribal sovereignty. Furthermore, the Tribal Governments claims are not within the Small Business class definition as the Tribes are political sovereigns.

As a result, the Consumer Class representatives (whether natural persons or small businesses) are inadequate to represent to the Tribal Governments Plaintiffs: "Rule 23(a)(4) provides that a class action may be maintained only if 'the representative parties will fairly and adequately protect the interests of the class.' Like the typicality requirement, and in contrast to the requirements of numerosity

---

[6] *See, e.g.,* Small Business Class Complaint at ¶ 12 ("Business Plaintiff Sharps Investment Enterprises, LLC, is a limited liability company existing under the laws of the State of California. Sharps Investment Enterprises, LLC, relies in part on credit to operate. Sharps Investment Enterprises, LLC, relies on the personal credit of Joshua Sharps, the individual whose Personal Information was compromised in the Equifax breach, to obtain and maintain its own credit. The breach has thus jeopardized not only Joshua Sharps' personal credit, but also the creditworthiness and continued operations of Sharps Investment Enterprises, LLC. Sharps Investment Enterprises, LLC, has reasonably incurred costs (in the form of a business credit report and devotion of resources to monitoring its financial accounts) based on the substantial risk of harm from the breach.").

and commonality, the adequacy requirement focuses on the desired attributes of those who seek to represent the class as opposed to the characteristics of the class." NEWBERG ON CLASS ACTIONS (5th ed.) §3.50.

The Tribal Governments cases were initially brought by the St. Croix Chippewa Indians of Wisconsin, the Fond du Lac Band of Lake Superior Chippewa, and the Red Cliff Band of Lake Superior Chippewa.[7] Those three tribes are seeking to represent a class of all "similarly situated, federally recognized Indian Tribes and Nations and their individual Members." *See, e.g., St. Croix* Complaint ¶ 14. The ninety-six natural persons seeking to represent the Consumer Class (including two natural persons, Kyle Olson and Robert Anderson, from Wisconsin) cannot possibly represent "'separate sovereigns pre-existing the Constitution.'" *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (*quoting Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)). Further, it is unlikely the ninety-six proposed representatives would understand their role in the litigation with respect to being the class representative for federally recognized sovereigns with issues distinct from the consumers. *See* NEWBERG ON CLASS ACTIONS (5th ed.) §3.67 ("While a lack of knowledge about the facts or legal theories of a particular case will usually not bar

---

[7] *See generally*, *St. Croix Chippewa Indians of Wisconsin v. Equifax, Inc., et al.*, No. 1:18-cv-04258-TWT (Doc. 2, filed July 17, 2018); *Fond du Lac Band of Lake Superior Chippewa v. Equifax, Inc., et al.*, No. 1:18-cv-04257-TWT (Doc. 1, filed Aug. 14, 2018); *Red Cliff Band of Lake Superior Chippewa v. Equifax, Inc., et al.*, No. 1:19-cv-00420-TWT (Doc. 1, filed November 1, 2018).

8

a finding that the proposed representative can adequately represent the class, courts are more troubled if the proposed representative lacks any understanding of the representative's role in class litigation.").

The Tribal Governments Plaintiffs' claims do not fit squarely within the complaints in the Consumer Class. Further, the Consumer Class representatives are inadequate to represent their interests. Accordingly, a separate track is warranted.

### III.     The Tribal Governments Plaintiffs are Distinct from Carson Block

The separate track sought by the Tribal Governments Plaintiffs is distinct from the proposal made by Plaintiff Carson Block. *See, e.g.,* Doc. 649. Plaintiff Block, an individual, unsuccessfully sought to establish a separate track to pursue discovery in excess of the limits set forth in the Case Management Orders because Block named certain individuals as defendants in his complaint. *Id.* at 2. As argued in Section I *supra* that is the opposite of what the Tribal Governments are asking for. By contrast, the Tribal Governments seek unique discovery—in keeping within the confines of *CMO* #2—based on their status as sovereigns and other unique circumstances outlined in their briefing.

### IV.     Conclusion

Establishing a separate Tribal Governments track is consistent with the goals of centralized litigation: "The purposes of this transfer or 'centralization' process are to avoid duplication of discovery, to prevent inconsistent pretrial rulings, and to

conserve the resources of the parties, their counsel and the judiciary. Transferred actions terminated in the transferee district are remanded to their originating transferor districts by the Panel at or before the conclusion of centralized pretrial proceedings." Jud. Panel on Multidistrict Litig., *Overview of Panel, available at* https://www.jpml.uscourts.gov/overview-panel-0 (last visited April 12, 2019).

Tribal Governments Plaintiffs are not seeking duplicative discovery—but rather they are seeking to establish a separate track to pursue the unique discovery needs of political sovereigns that face factual and legal issues other Plaintiffs do not. This separate track has already been contemplated by the Court in its Case Management Orders. *See, CMO* #2 (Doc. 87 at pg. 2) ("If and when additional actions are filed in or transferred to this Court, the actions will be assigned to the appropriate track. The Court intends to appoint separate leadership for plaintiffs in each track."). For the reasons above, and for the reasons in the Tribal Governments Plaintiffs' Motion and Brief in Support, this Honorable Court should establish a separate Tribal Governments Plaintiffs track.

Dated: April 30, 2019.

**FOND DU LAC BAND OF LAKE SUPERIOR CHIPPEWA**
**ST. CROIX CHIPPEWA INDIANS OF WISCONSIN**
**REDCLIFF BAND OF LAKE SUPERIOR CHIPPEWA**
By Their Attorneys:

*/s/ T. Roe Frazer II*
T. Roe Frazer II
Patrick D. McMurtray

Thomas Roe Frazer III
FRAZER PLC
1 Burton Hills Blvd., Ste. 215
Nashville, TN 37215
(615) 647-6464
roe@frazer.law

J. Nix Daniel, III
Mary Jane Bass
John R. Zoesch, III
BEGGS & LANE, RLLP
501 Commendencia St.
Pensacola, FL 32502
(850) 432-2451

Frederick T. Kuykendall, III
THE KUYKENDALL GROUP, LLC
P.O. Box 2129
Fairhope, AL 36533
(205) 252-6127
ftk@thekuykendallgroup.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Motion was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 30th day of April, 2019.

*/s/ T. Roe Frazer III*
T. Roe Frazer II

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

>  */s/ T. Roe Frazer III*
>  T. Roe Frazer II