```
                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION


IN RE:  EQUIFAX, INC., CUSTOMER  )      Case Number
DATA SECURITY BREACH LITIGATION  )
                                 )      1:17-md-2800-TWT
                                 )
_____)
                                 )
                                 )
IN RE:  EQUIFAX SECURITIES       )      Case Number
LITIGATION                       )
                                 )      1:17-cv-3463-TWT
                                 )
_____)
                                 )
                                 )
IN RE:  EQUIFAX DERIVATIVE       )      Case Number
LITIGATION                       )
                                 )      1:18-cv-317-TWT
                                 )
_____)


           Transcript of a status conference before the

           Honorable Thomas W. Thrash, Jr., Chief Judge

                    April 3, 2019; 2:03 p.m.

                        Atlanta, Georgia




(Appearances on page two)



     Proceedings recorded by mechanical stenography,
transcript produced by computer.
_____

               Diane Peede, RMR, CRR, CRC
              Federal Official Court Reporter
             75 Ted Turner Drive, SW, Suite 2194
                Atlanta, Georgia   30303-3309
```

```
 1   Appearances:

 2   Counsel for Plaintiffs:    James A. Harrod
                                Amanda Kay Seals
 3                              H. Lamar Mixson
                                Joseph H. Weiss (by telephone)
 4                              Michael A. Rogovin
                                Emily Ward
 5

 6
     Counsel for Defendants:    Michael R. Smith
 7                              B. Warren Pope
                                Benjamin Lee
 8                              April M. Elliott
                                Gregory M. O'Neil
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                   P R O C E E D I N G S
 2              (Call to the order of the Court.)
 3              THE COURT:  All right.  This is the case of In Re:
 4   Equifax Securities Litigation, Case Number 17-CV-3463, and In
 5   Re:  Equifax Derivative Litigation, Case Number 18-CV-317.
 6              First, let me ask counsel for the parties to
 7   identify yourselves for the record and the parties you
 8   represent, beginning with the Plaintiffs.
 9              MR. HARROD:  Good afternoon, Your Honor.  James
10   Harrod from Bernstein Litowitz Berger and Grossmann, for lead
11   Plaintiff in the Securities case.
12              THE COURT:  Good afternoon, Mr. Harrod.
13              MS. SEALS:  Good afternoon, Your Honor.  I'm Amanda
14   K. Seals from Boundurant, Mixson and Elmore.  I also
15   represent the lead Plaintiff in the Securities action.
16              THE COURT:  Good afternoon, Ms. Seals.
17              MR. LAMAR MIXSON:  Good afternoon, Your Honor.
18   Mickey Mixson, also with Bondurant, Mixson and Elmore,
19   representing the Plaintiffs in the Securities case.
20              THE COURT:  Good afternoon, Mr. Mixson.
21              MR. MIXSON:  Good afternoon, Your Honor.
22              MR. ROGOVIN:  Good afternoon, Your Honor. Michael
23   Rogovin from WeissLaw, representing lead Plaintiffs in the
24   Derivative litigation.
25              And my colleague Joseph Weiss, I believe, should be
```

1  on the phone.  I think he was trying to dial in.
2          MR. WEISS:  Good afternoon, Your Honor.  This is
3  Mr. Weiss.  And I apologize, but we were literally on a Delta
4  flight, taxied away from the gate, and they brought it back,
5  saying they had mechanical problems, and it wasn't leaving
6  until 12:30.  There was no way I would make it.  So I
7  apologize that I couldn't be there in person.
8          THE COURT:  There are no apologies necessary, Mr.
9  Weiss.  That sort of thing happens.
10         MR. WEISS:  I'm glad I'm here, Your Honor.
11         MR. SMITH:  Good afternoon, Your Honor.  Michael
12 Smith for Equifax.
13         THE COURT:  Good afternoon, Mr. Smith.
14         MR. POPE:  Good afternoon, Your Honor.  Warren Pope
15 on behalf of Equifax.
16         THE COURT:  Good afternoon, Mr. Pope.
17         MR. LEE:  Good afternoon, Your Honor.  Benjamin
18 Lee, also on behalf of Equifax.
19         THE COURT:  Mr. Lee.
20         MS. APRIL ELLIOTT:  Good afternoon, Your Honor.
21 April Elliott from WilmerHale on behalf of Ms. Stock in the
22 Derivative action.
23         THE COURT:  Good afternoon, Ms. Elliott.
24         MR. O'NEIL:  Good afternoon, Your Honor.  Greg
25 O'Neil from Nelson Mullins, also on behalf of Ms. Stock.

1        THE COURT:  Good afternoon, Mr. O'Neil.

2        All right.  I think I'm going to do the Securities
3   case first.

4        So I've received your proposed agenda for today's
5   status conference, and I'll just go through it in the order
6   you've got it listed.

7        First of all, the proposed search terms and
8   custodians to be used in connection with the Defendants'
9   production of documents, who wants to go first on that?

10       Mr. Harrod?

11       MR. HARROD:  Thank you, Your Honor.  Again, James
12  Harrod for lead Plaintiff in the Securities case.

13       We have had multiple meet-and-confer communications
14  with Equifax.  We've exchanged correspondence.

15       Most recently, last night, Equifax provided us with
16  some information that we're going to try to use over the next
17  few days to provide them with revisions to our search terms.
18  There's still some outstanding issues about custodians.

19       I think what we would like to propose to the Court
20  at this point is that we want to have a deadline for either
21  reaching an agreement on the outstanding questions or
22  bringing whatever we can't agree on to the Court.  Subject to
23  the Court's calendar and schedule, we'd like to do that
24  sufficiently in advance of whatever the next status
25  conference would be so that we could submit whatever the

1  disputes are to Your Honor.

2  Mr. Pope and I just spoke a few minutes ago, and
3  our proposal would be to try to bring this to a close by May
4  15th in anticipation of having a status conference, again,
5  subject to Your Honor's schedule, sometime in early June.
6  And I think that's kind of where we are.

7  I don't have anything more specific to discuss
8  regarding the content of what our disagreements are.  I don't
9  think it would be beneficial to either us or the Court to do
10 that at this point.

11 THE COURT:  All right.

12 Are you going to speak to this, Mr. Pope?

13 MR. POPE:  I have nothing to add, Your Honor.  I
14 concur that May 15th is a reasonable deadline, and we'll
15 either reach agreement by May 15th or we won't.  If we don't,
16 then we'll come back to Your Honor and tee that up for the
17 next status conference, which, again, subject to your
18 availability, would be sometime in June.

19 THE COURT:  All right.

20 Mr. Harrod, prepare a written order incorporating
21 your proposal and get Mr. Pope's approval as to form, with
22 the deadline of May 15th and to be put on the agenda for the
23 next status conference if things haven't been worked out, and
24 submit it to me.

25 MR. HARROD:  Thank you, Your Honor.

1          THE COURT: Just for your information, my status,
2  my schedule for the rest of this year is a train wreck. I'm
3  going to be picking -- I hope picking a jury Monday for a
4  four- to six-week criminal RICO case that I hope will be
5  through by May 15th.
6          And then I'm actually going to try to take a week
7  of vacation in July.
8          And then starting August 1st, I have a four-week
9  long pill mill case to try, a criminal case. And then the
10 day after Labor Day, I'll start the second phase of the
11 Gangster Disciples RICO case. And then at some point after
12 that, I'll try the third stage of it.
13         So nothing y'all can do about it. I thought I'd
14 just let you know what the situation is --
15         MR. HARROD: Thank you.
16         THE COURT: -- if I'm not as available as I have
17 tried to be in the past.
18         The next item is the status of a proposed
19 stipulation and protocol regarding coordination of
20 depositions.
21         Mr. Harrod?
22         MR. HARROD: Your Honor, I had a conversation with
23 Mr. Pope yesterday, and I think we don't need to address this
24 item at the moment.
25         THE COURT: Fine.

1  The next item is Equifax wants to talk about its
2  motion for clarification.
3  MR. SMITH: Good afternoon, Your Honor. Michael
4  Smith for Equifax.
5  I don't think this will take long, but we have
6  filed a motion for clarification of essentially one paragraph
7  of the Court's order which addresses corporate scienter, the
8  scienter of Equifax.
9  Specifically, we'd like the order to be clarified
10 to specify whether it found scienter of anyone besides Mr.
11 Smith. The order is clear that it finds scienter of Mr.
12 Smith. But as for corporate scienter, did it find the
13 scienter of any other individuals whose scienter could be
14 attributed to Equifax?
15 The Plaintiff contends and reads the order that it
16 found the scienter of two individuals who were not named as
17 Defendants: Mr. Webb, who was the chief IT officer; and Ms.
18 Mauldin, who was the chief security officer of Equifax.
19 The Plaintiffs also argue that, well, really, you
20 don't even need to identify anybody who -- by name or
21 specifically who had scienter as long as somebody had
22 scienter who participated in the making of the statements.
23 We do not believe that either of those things is
24 clear from the order, and we have requested that it be
25 clarified.

1           I'm going to -- Ms. Sewell, if I could turn on this
2   light?
3           THE COURTROOM DEPUTY:  Sure.
4           MR. SMITH:  Let's see.
5           I need to go the other way.  That's about as much
6   as it goes here.
7           So this is the section of the order that we're
8   focusing on, and I'll begin to say that this section clearly
9   points out that for corporate scienter, under the applicable
10  case law -- and they're citing the Mizzaro v. Home Depot
11  case, which is the Eleventh Circuit case -- the order says
12  that you look to the state of mind of the corporate officials
13  who make or issue the statement or order or prove its
14  issuance or furnish language for inclusion in the statement.
15          So that's where you begin, but when you look at the
16  rest of this section of the order, although Webb and Mauldin
17  are referenced, the order does not specifically find that
18  Webb or Mauldin had scienter or that they participated in any
19  way in making the statements, approving the statements, or
20  furnishing any information for the statements.
21          The Defendants attached to their motion the very
22  few allegations from the Complaint that address Webb and
23  Mauldin, and none of these allegations -- there's only a
24  handful -- none of these allegations references their state
25  of mind.  They don't reference that they received any

1  warnings of deficient cyber security.  There are no
2  allegations that they made, approved or furnished information
3  for any of the statements.
4          Really, essentially, all that's pled is their
5  positions, that they found out about the breach after it was
6  detected by Equifax, and who they reported it to.
7          So from -- when you couple that fact with the fact
8  that the order in other places finds that the allegations of
9  the Complaint were not sufficient to allege the scienter of
10 the other individual defendants, Ploter and Gamble, so when
11 you look at and couple those things together, I think it's
12 clear that there's no finding, at least that we can discern,
13 that Webb and Mauldin had scienter or that their scienter,
14 there was any basis for attributing it to Equifax.
15         So the order also goes on and it references that
16 there are these allegations that someone in management, that
17 management, unspecified, were alleged in the Complaint to
18 receive warnings.
19         And the Plaintiffs argue that under the Mizzaro
20 case, that that's enough, that you don't need to identify
21 specific people, that all you have to do is essentially say
22 somebody in management must have known, must have
23 participated in the making of statements, and then that's all
24 that's needed to raise sufficient allegations of corporate
25 scienter.

So I'd like to -- we don't think that that is a correct statement of what Mizzaro held, and I think it's important to just look at -- which I've put up on the screen here, are excerpts from this decision.

Like Your Honor's order, this section of the Mizzaro v. Home Depot opinion on corporate scienter begins by saying, We look to the state of mind of the individual corporate official or officials who make or issue the statement.  That is clear what needs to happen.

But then it goes on and it says here the Plaintiff, in Home Depot, Bucks County, does not argue that any Home Depot officials were responsible for the statements other than the named individual defendants.

Well, that's exactly what we have in this case.  No -- there are no allegations in the Complaint that anyone besides the individual defendants were responsible for the statements.

So in Home Depot, the Court used that and said, Well, we've already found that the individual defendants in Home Depot didn't have scienter.  You don't point to anyone else.  So, therefore, Home Depot doesn't have scienter either.

So in the passage in the last section here of the graphic, it points that out.  Bucks County doesn't argue anybody other than the named individuals were responsible;

1   and it doesn't argue that even if it didn't name scienter as
2   to the individual defendants, it does raise -- the Complaint
3   does raise a strong inference that somebody responsible for
4   the allegedly misleading statements must have known of the
5   fraud.
6            So the court says they don't even allege this.  We
7   don't need to get into it.
8            And then they say, but in any event, the Amended
9   Complaint does not create any inference, let alone a strong
10  one, that unnamed Home Depot officials were both responsible
11  for issuing the public statements and were aware of the
12  fraud.
13           So the central holding is that there's no corporate
14  scienter because the people you identified as making the
15  statements didn't have scienter.  So that's the ruling.
16           It did not hold in any way that, well, you don't
17  have to name the individual people that -- whose scienter is
18  being attributed to the company.  I think to the contrary, it
19  suggested you do have to look to the state of mind of the
20  individual or corporate official or officials.
21           And if you look at other parts of the opinion
22  earlier in the opinion, the court referenced, you know, Black
23  Letter Eleventh Circuit 9(b) law that says that 9(b) is
24  satisfied as long as the complaint sets forth the time and
25  place of each such statement and the person responsible for

1   making it.

2          So there's no suggestion here that it's okay in a
3   world of the private Securities Litigation Reform Act, which
4   is all about particularity of allegations, in a world of
5   9(b), that, as this quote shows, requires particularity of
6   allegations, that you can just have unparticular allegations
7   which don't even identify a specific individual and provides
8   no basis for that individual's state of mind or whether that
9   individual even participated in making any of the statements.
10  So that's not what Mizzaro found.

11         So in short, Your Honor, we would request that the
12  order be clarified as to whether it found corporate scienter
13  based on anyone's scienter other than Smith's, and if so, to
14  identify who those individuals were and where in the
15  Complaint it alleges that they had both scienter and
16  responsibility for making, approving or furnishing
17  information for the statements.

18         Thank you, Your Honor.

19         THE COURT:  All right.  I'm going to deny your
20  motion, Mr. Smith.  I think my order is clear enough that I
21  found scienter on the part of Mr. Smith and Equifax, and
22  that's all I need to say to deny the motion to dismiss.  So
23  I'm not going to change my order.  And I will deny your
24  motion for clarification.

25         Is there anything else on the Securities case?

1          MR. HARROD:  No, Your Honor, not from us.
2          THE COURT:  All right.  Then the Derivative
3  litigation, the first item on the agenda is Equifax's
4  production of documents to lead counsel.
5          Mr. Weiss, are you going to speak to that?
6          MR. WEISS:  Yes, Your Honor.  Thank you.  I think
7  I'm pleased to report that there are no disputes that need
8  the Court's attention, I guess both in this regard and with
9  regard to any other matter in the Derivative case.
10         But the Defendants have produced to us
11  approximately 500,000 pages of documents, which include
12  documents from what they called reading room, and these are
13  the really highly confidential documents, several hundred
14  thousand.  And we're going through those documents.  And as I
15  understand, there will be additional production, but it takes
16  time.
17         So we're not pressing for -- although we can look
18  at the ones anyway, but I think we've made substantial
19  progress in that regard in terms of trying to see what the
20  documents show.
21         I don't know that I have anything further on that
22  point, Your Honor, unless you want me to go on further just
23  in terms of the other items on the agenda.
24         THE COURT:  Do you want to say anything, Mr. Pope?
25         MR. POPE:  No, Your Honor.

1          THE COURT: Fine.

2          The next item on your agenda, Mr. Weiss?

3          MR. WEISS: Yes, Your Honor. So, obviously, one of
4 the issues here is trying to understand not only what went
5 wrong that causes us all to, in effect, be here together, but
6 also to try and understand what the company has done since
7 then, and our expert, cyber security expert to try to see
8 what additional measures should be taken.

9          In that regard, we do have a meeting scheduled at
10 Equifax's headquarters with our expert, including us,
11 including counsel, but it would be at Equifax's headquarters
12 in Atlanta, together with their chief information security
13 officer. And, you know, we have pretty much a day devoted to
14 that.

15         Once that takes place, if I may, Your Honor, it
16 kind of brings us to the next item, which shortly thereafter
17 we will be meeting in person with the company's demand review
18 committee to share our thoughts with them in terms of what
19 additional measures should be taken in terms of internal
20 controls and cyber security. So we expect that all to happen
21 either at the end of April or early May.

22         THE COURT: All right, Mr. Weiss.

23         Do you want to add anything, Mr. Pope?

24         MR. POPE: No, Your Honor. Thank you.

25         THE COURT: I believe that covers the agenda item

1  for both cases.
2              Is there anything else we need to talk about today?
3              MR. SMITH:  I don't believe so, Your Honor.
4              MR. HARROD:  No, Your Honor.
5              THE COURT:  All right.  Y'all get with Ms. Sewell
6  after I leave the bench and see if you can come up with a
7  date in May that we can have our next regular status
8  conference, and that is hopefully out of range of the
9  Gangster Disciples case.
10             The Court's in recess until further order.
11             (Proceedings concluded at 2:26 p.m.)
12                      - - - - - - - -
13                    Reporter's Certification
14 I certify that the foregoing is a correct transcript from the
15 record of proceedings in the above-entitled matter.

16                             s/Diane Peede, RMR, CRR, CRC
                                Official Court Reporter
17                              United States District Court
   Date:  June 5, 2019          Northern District of Georgia