# Exhibit  1

Settlement Agreement and Release

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Plaintiffs' Motion to Direct Notice of Proposed Settlement

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

## **EXHIBITS**

EXHIBIT 1 - LIST OF ACTIONS

EXHIBIT 2 - BUSINESS PRACTICES COMMITMENTS

EXHIBIT 3 - CONSENT ORDER

EXHIBIT 4 - CREDIT MONITORING AND RESTORATION SERVICES

EXHIBIT 5 - ORDER DIRECTING NOTICE

EXHIBIT 6 - NOTICE PLAN

EXHIBIT 7 - NOTICES

      A.    LONG FORM

      B.    SHORT FORM

EXHIBIT 8 - CLAIM FORM

EXHIBIT 9 - CLAIMS ADMINISTRATION PROTOCOL

EXHIBIT 10 - SETTLEMENT CLASS REPRESENTATIVES

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of July 22, 2019, by and between, as hereinafter defined, (a) Settlement Class Representatives on behalf of themselves and the Settlement Class, and (b) Defendants (collectively, the "Parties"). This Agreement fully and finally compromises and settles any and all consumer claims that are, were, or could have been asserted in the litigation styled *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.).

## 1   RECITALS

1.1    In a series of announcements beginning in September 2017, Equifax Inc. announced that it had been the victim of a criminal cyberattack on its computer systems in which the attacker/s gained unauthorized access to the personal information of approximately 147 million U.S. individuals.

1.2    After announcement of the Data Breach (as hereinafter defined), multiple putative class action lawsuits were filed by consumers against Equifax alleging it had failed to properly protect personal information in accordance with its duties, had inadequate data security, and improperly delayed notifying potentially impacted individuals.

1.3    On December 7, 2017, the Judicial Panel on Multidistrict Litigation transferred more than 200 putative class action lawsuits to the Honorable Thomas W. Thrash in the United States District Court for the Northern District of Georgia (the "Court") for coordinated pretrial proceedings.

1.4    Additional lawsuits against Equifax were also transferred to, filed in, or otherwise assigned to the Court and included in coordinated pretrial proceedings as part of *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.).

1.5    On February 12, 2018, the Court appointed leadership for consumer plaintiffs and interim class counsel pursuant to Federal Rule of Civil Procedure 23(g).

1.6    Class Counsel filed a Consolidated Consumer Class Action Complaint ("Complaint") in *In re: Equifax Inc. Customer Data Security Breach*

*Litigation*, Equifax moved to dismiss the Complaint, and the Court denied in part and granted in part the motion by Order dated January 28, 2019.

1.7    Beginning in September 2017, the Parties engaged in arm's-length settlement negotiations overseen by former United States District Court Judge Layn R. Phillips. The Parties engaged in five in-person mediation sessions, on November 27 and 28, 2017, May 25, 2018, August 9, 2018, November 16, 2018, and March 30, 2019, under the direction of Judge Phillips. The last mediation session resulted in the Parties executing a binding term sheet, to be superseded by this Agreement.

1.8    Class Counsel has investigated the facts relating to the Data Breach with the assistance of consultants and experts in cybersecurity and identity theft, interviewed witnesses, reviewed Congressional testimony, analyzed the evidence adduced during pretrial and confirmatory discovery, including over a half-million pages of documents, spreadsheets, and other native files produced by Equifax, and researched the applicable law with respect to Plaintiffs' claims against Equifax and the potential defenses thereto.

1.9    Defendants (as hereinafter defined) deny any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, any infirmity in the defenses that Defendants have asserted or would assert, or to the requirements of Federal Rule of Civil Procedure 23 and whether Plaintiffs satisfy those requirements.

1.10   Based upon their investigation, pretrial discovery, confirmatory discovery, and legal motion practice, as set forth above, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to Plaintiffs and Settlement Class Members and are in their best interests, and have agreed to settle the consumer claims asserted in *In re: Equifax Inc. Customer Data Security Breach Litigation* pursuant to the terms and provisions of this Agreement.

1.11   It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

2

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

## 2   DEFINITIONS

As used in this Agreement, the following terms shall have the meanings indicated:

2.1   "Action" or "Actions" means all the actions listed in Exhibit 1, which are consumer cases that have been filed in, transferred to, or otherwise assigned to the Court and included in coordinated or consolidated pretrial proceedings as part of *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.).

2.2   "Administrative Costs" means all reasonable costs and expenses of the Settlement Administrator incurred in carrying out its duties under this Agreement, including, without limitation, validating Settlement Class Members and determining eligibility for benefits under the Settlement, administering, calculating, and distributing the Consumer Restitution Fund and its benefits to Settlement Class Members, and paying Taxes.

2.3   "Affiliate" means, with respect to any Entity, any other Entity that directly or indirectly controls or is controlled by, or is under common control with, such Entity. For purposes of this definition, "control" when used with respect to any Entity means an ownership interest of at least twenty-five percent (25%) and/or the power to direct the management and policies of such Entity, directly or indirectly, whether through the ownership of voting securities, by contract, or otherwise.

2.4   "Agreement" means this Settlement Agreement and Release. The terms of the Agreement are set forth herein including the exhibits hereto.

2.5   "Alternative Reimbursement Compensation" means compensation to Settlement Class Members as set forth in Section 7.5.

2.6   "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

3

2.7     "Business Practices Commitments" means the measures provided for in Exhibit 2.

2.8     "Claim Form" means the form Settlement Class Members submit (either in paper form or via the Settlement Website) to claim benefits under the Settlement, attached hereto as Exhibit 8.

2.9     "Claims Administration Protocol" means the protocol to be followed by the Settlement Administrator in processing claims made under this Agreement, attached hereto as Exhibit 9.

2.10    "Class Counsel" means Kenneth S. Canfield of Doffermyre Shields Canfield & Knowles, LLC, Amy E. Keller of DiCello Levitt Gutzler LLC, Norman E. Siegel of Stueve Siegel Hanson LLP, and Roy E. Barnes of Barnes Law Group, LLC.

2.11    "Consumer Restitution Fund" means three hundred eighty million, five hundred thousand United States Dollars ($380,500,000), any interest on or other income or gains earned while such amount is held in the Consumer Restitution Fund Account, and such additional amounts that Equifax may be required to contribute under the terms of this Agreement.

2.12    "Consumer Restitution Fund Account" means the account described in Sections 3.1 and 3.3 through 3.10.

2.13    "Court" means the United States District Court for the Northern District of Georgia.

2.14    "Credit Monitoring Services" means the services described in Section 7.1.

2.15    "Data Breach" means the data breach announced by Equifax Inc. on or about September 7, 2017.

2.16    "Defendants" means Equifax Inc., Equifax Information Services, LLC, and Equifax Consumer Services LLC.

2.17    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 17.1.

4

2.18    "Entity" means any corporation, partnership, limited liability company, association, trust, or other organization of any type.

2.19    "Equifax" means Equifax Inc., Equifax Information Services, LLC, and Equifax Consumer Services LLC.

2.20    "Extended Claims Period" means the period beginning with the end of the Initial Claims Period through 4 years after the end of the Initial Claims Period.

2.21    "Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

2.22    "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Fairness Hearing, which finally approves the Agreement, certifies the Settlement Class, dismisses Defendants with prejudice, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects.

2.23    "Initial Claims Period" means the 6 months after the date of the entry of the Order Permitting Issuance of Notice of Class Action Settlement.

2.24    "Notice" means notice of the proposed class action settlement to be provided to Settlement Class Members pursuant to the Notice Plan approved by the Court in connection with its Order Permitting Issuance of Notice of Class Action Settlement, substantially in the forms attached hereto as Exhibits 6.A through 6.F and 7.

2.25    "Notice Costs" means all reasonable costs and expenses of the Notice Provider, including, without limitation, all expenses or costs associated with the Notice Plan and providing Notice to the Settlement Class.

2.26    "Notice Date" means 60 days after the Court enters the Order Permitting Issuance of Notice of Class Action Settlement.

2.27    "Notice Plan" means the settlement notice program developed by the Notice Provider substantially in the form attached hereto as Exhibit 6, as approved by the Court.

2.28    "Notice Provider" means Signal Interactive Media LLC. A different Notice Provider may be substituted if approved by the Court.

2.29    "Objection Deadline" means 60 days after the Notice Date.

2.30    "One-Bureau Credit Monitoring Services" means the services described in Section 7.4.

2.31    "Opt-Out Deadline" means 60 days after the Notice Date.

2.32    "Order Permitting Issuance of Notice of Class Action Settlement" means an order determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2) and will likely be able to certify the Settlement Class for purposes of judgment. Such order will include the forms and procedure for providing notice to the Settlement Class, establish a procedure for Settlement Class Members to object to or opt-out of the Settlement, and set a date for the Fairness Hearing, without material change to the Parties' agreed-upon proposed order attached hereto as Exhibit 5.

2.33    "Out-of-Pocket Losses" means losses as defined in Section 6.

2.34    "Parent" means, with respect to any Entity, any other Entity that owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or a majority of others performing similar function, of such Entity.

2.35    "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Defendants.

2.36    "Plaintiffs" means all plaintiffs named in the Consumer Consolidated Class Action Complaint filed in *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.).

6

2.37    "Preventative Measures" means Out-of-Pocket Losses associated with freezing or unfreezing credit reports and purchasing credit monitoring services as set forth in Sections 6.2.2 and 6.2.4.

2.38    "Released Claim" means any claims, liabilities, rights, demands, suits, obligations, damages, including but not limited to consequential damages, losses or costs, punitive damages, attorneys' fees and costs, action or causes of action, penalties, remedies, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, administrative, statutory, or equitable—that relate to or arise from the Data Breach or the facts alleged in the Actions.

2.39    "Restoration Services" means the services described in Section 7.2.

2.40    "Service Awards" means compensation awarded and paid to Settlement Class Representatives in recognition of their role in this litigation, subject to Court approval, as set forth in Section 10.

2.41    "Settlement" means the settlement of the Actions by and between the Parties, and the terms thereof as stated in this Agreement.

2.42    "Settlement Administrator" means JND Legal Administration. A different Settlement Administrator may be substituted if approved by the Court.

2.43    "Settlement Class" means the approximately 147 million U.S. consumers identified by Equifax whose personal information was compromised as a result of the cyberattack and data breach announced by Equifax Inc. on September 7, 2017. Excluded from the Settlement Class are: (i) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

2.44    "Settlement Class Member" means a member of the Settlement Class.

2.45    "Settlement Class Representatives" are the Plaintiffs listed in Exhibit 10.

7

2.46    "Settlement Website" means a website established by the Settlement Administrator to provide information about the Settlement including deadlines and case documents, and permit Settlement Class Members to electronically submit Claim Forms.

2.47    "Subsidiary" means, with respect to any Entity, any other Entity of which the first Entity owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or others performing similar functions, of the other Entity.

2.48    "Successor" means, with respect to a natural person, that person's heir, successors, and assigns, and, with respect to an Entity, any other Entity that through merger, buyout, assignment, or any other means or transaction, acquires all of the first Entity's duties, rights, obligations, shares, debts, or assets.

2.49    "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Consumer Restitution Fund, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the Consumer Restitution Fund for any period while it is held in the Consumer Restitution Fund Account; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Consumer Restitution Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Consumer Restitution Fund (including without limitation, expenses of tax attorneys and accountants).

2.50    "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement. With respect to any and all

8

Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 3   CREATION AND TREATMENT OF THE CONSUMER RESTITUTION FUND

3.1     Equifax Inc. agrees to make a non-reversionary settlement payment of three hundred eighty million, five hundred thousand United States Dollars ($380,500,000) and deposit that settlement payment into the Consumer Restitution Fund Account as follows: (i) it shall deposit one hundred and fifty thousand United States Dollars ($150,000) into the Consumer Restitution Fund Account 5 Business Days after the date of this Agreement, to cover reasonable set-up costs of the Notice Provider; (ii) it shall deposit twenty-five million United States Dollars ($25,000,000) into the Consumer Restitution Fund Account 5 Business Days after the Court enters the Order Permitting Issuance of Notice of Class Action Settlement to cover reasonable Notice and Administrative Costs incurred prior to the Effective Date, and set-up costs for the Credit Monitoring and Restoration Services vendor; and (iii) it shall deposit the balance of the three hundred eighty million, five hundred thousand United States Dollars

9

($380,500,000) into the Consumer Restitution Fund Account within 10 Business Days after the Effective Date.

3.2     Additional Amounts for Out-of-Pocket Losses: In addition to the Consumer Restitution Fund, Equifax Inc. agrees to pay up to one hundred twenty-five million United States Dollars ($125,000,000) in additional amounts for valid Out-of-Pocket Losses submitted during both the Initial Claims Period and the Extended Claims Period in the event the Consumer Restitution Fund is exhausted. Additional amounts (up to $125,000,000) will be paid by Equifax Inc. as needed on a monthly basis within 14 Business Days after receipt of written notification from the Settlement Administrator that there are insufficient funds remaining in the Consumer Restitution Fund to pay valid Out-of-Pocket Losses. These amounts will be paid only on an as-needed basis and may not be used for any purpose other than paying valid Out-of-Pocket Losses once the Consumer Restitution Fund no longer has any available funds to pay such claims.

3.3     The Consumer Restitution Fund Account shall be an account established at a financial institution approved by Class Counsel and Defendants and, pursuant to Section 3.9, shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468B-1, *et seq*.

3.4     No amounts may be withdrawn from the Consumer Restitution Fund Account unless (i) expressly authorized by this Agreement or (ii) approved by the Court. Class Counsel may authorize the payment of actual reasonable Administrative Costs and Notice Costs from the Consumer Restitution Fund Account without further order of the Court. The Settlement Administrator shall provide Class Counsel and Defendants with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Consumer Restitution Fund Account before the Effective Date at least 5 Business Days prior to making such withdrawal or payment.

3.5     The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Consumer Restitution Fund to Settlement Class Members pursuant to this Agreement.

3.6     The Settlement Administrator and Class Counsel are responsible for communicating with Settlement Class Members regarding the distribution of the Consumer Restitution Fund and amounts paid under the Settlement.

3.7     All funds held in the Consumer Restitution Fund Account relating to the Settlement shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to Settlement Class Members or otherwise disbursed pursuant to this Agreement or further order of the Court.

3.8     Any funds in the Consumer Restitution Fund Account in excess of two hundred fifty thousand United States Dollars ($250,000) shall be invested in short term United States Agency or Treasury Securities, repurchase agreements collateralized by such instruments, or a mutual fund invested solely in such instruments, and shall collect and reinvest all earnings accrued thereon. Any funds held in the Consumer Restitution Fund Account in an amount of less than $250,000 may be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of $250,000 are invested. Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check clearing process.

3.9     The Parties agree that the Consumer Restitution Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Consumer Restitution Fund and paying from the Consumer Restitution Fund any Taxes owed with respect to the Consumer Restitution Fund. The Parties agree that the Consumer Restitution Fund shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the Consumer Restitution Fund as a qualified settlement fund from the earliest date possible.

3.10    All Taxes relating to the Consumer Restitution Fund shall be paid out of the Consumer Restitution Fund, shall be considered to be an Administrative Cost of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the

Consumer Restitution Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

3.11   The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Consumer Restitution Fund.

3.12   Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state and local tax consequences to him, her or it of the receipt of funds from the Consumer Restitution Fund pursuant to this Agreement.

## 4   RELIEF PROVIDED OUTSIDE OF THE CONSUMER RESTITUTION FUND

4.1   Business Practices Commitments.

4.1.1   Equifax will adopt, pay for, and implement, (or maintain where such Business Practices Commitments have been implemented) the Business Practices Commitments related to information security to safeguard Settlement Class Members' "Personal Information" as defined and as set forth in Exhibit 2.

4.1.2   Equifax's Business Practices Commitments will be memorialized in an order to be entered by the Court in connection with the Judgment and materially identical to the Proposed Consent Order attached as Exhibit 3 to this Agreement, and thereby will be subject to independent supervision and judicial enforcement.

4.1.3   From the Effective Date neither Equifax nor any of its Affiliates will use or seek to enforce any arbitration provision or class action waiver in any Equifax product or service that has been offered in response to the Data Breach as of the date of this Agreement, or that is otherwise provided by Equifax under this

12

Agreement, against consumers for claims related to or arising from the Data Breach. This provision cannot be superseded or modified by any agreement pertaining to any other Equifax product or service or any product or service offered by one of Equifax's Affiliates, parents, successors, agents, subsidiaries, or assigns.

4.1.4   Equifax will implement a program to provide prompt notice of any future breaches of consumer information consistent with the requirements of all federal and state regulations.

4.1.5   Plaintiffs through Class Counsel began negotiating a potential resolution of the Actions in September 2017, which included proposed business practices commitments, and the settlement process continued over approximately 18 months resulting in the Business Practices Commitments as described in Exhibit 2, which were finalized as part of the Parties' binding term sheet executed on March 30, 2019.

4.2   Credit Freezes and Unfreezes. Separate from and in addition to the Consumer Restitution Fund, and notwithstanding any provision of law related to payment for placement and removal of credit freezes, all Settlement Class Members will be eligible to place and remove credit freezes on their Equifax Information Services, LLC ("EIS") credit files, free of charge, enforceable under this Agreement for 10 years without filing a claim.

4.3   Continuation of Monitoring. Separate from and in addition to the Consumer Restitution Fund, Equifax has provided Settlement Class Members who enrolled in TrustedID Premier monitoring provided by Equifax following the Data Breach with an additional one year of credit monitoring services known as IDNotify to allow for continuity of these services.

## 5   PAYMENTS FROM THE CONSUMER RESTITUTION FUND

5.1   The Consumer Restitution Fund will be used to fund the consumer restitution and redress described in the Settlement provisions listed in

Sections 6, 7.1, 7.2, 7.5, 9, 10, and 11. Equifax will separately pay all other costs of the Settlement.

5.2    To the extent the aggregate amounts required to fund the Settlement provisions listed in Sections 6 and 7.5 exceed the amount of the Consumer Restitution Fund (and, for Out-of-Pocket Losses, exceeds the amounts available in Section 3.2 providing for Additional Amounts for Out-of-Pocket Losses) remaining after distributions are made to fund the Settlement provisions listed in Sections 7.1, 7.2, 9, 10, and 11 at the end of the Initial Claims Period, the cash payments provided in these provisions shall be reduced on a *pro rata* basis, meaning cash payments shall be allocated based on each claimant's proportional share of the remainder of the Consumer Restitution Fund.

5.3    <u>Payment of Approved Out-of-Pocket Loss Claims During Extended Claims Period</u>. Subject to the requirements of Section 8.1.2, approved Out-of-Pocket Loss claims filed during the Extended Claims Period will be paid in full from the Consumer Restitution Fund on a rolling basis in the order that such claims are received by the Settlement Administrator, up to an amount that exhausts the Consumer Restitution Fund, and, if applicable, the Additional Amounts for Out-of-Pocket Losses available in Section 3.2.

5.4    <u>Use of Remaining Amounts in the Consumer Restitution Fund</u>. Any remaining funds in the Consumer Restitution Fund after the payments described in Sections 6, 7.1, 7.2, 7.5, 9, 10, and 11, and after the conclusion of the Extended Claims Period and payment of approved Out-of-Pocket Loss claims filed during the Extended Claims Period, will be used as follows:

    5.4.1    First, the caps in Sections 6.2.6 and 7.5 will be lifted (if applicable) and payments increased *pro rata* to Settlement Class Members with valid claims up to the full amount of the approved claim submitted under those Sections.

    5.4.2    Second, if the payments described in Sections 5.4.1 do not exhaust the Consumer Restitution Fund, then any remaining funds shall be used to purchase up to 36 months of additional

14

Restoration Services (purchased in full-month increments).

5.4.3     Third, if the payments described in Sections 5.4.1 and 5.4.2 do not exhaust the Consumer Restitution Fund, remaining amounts in the Consumer Restitution Fund will be used to purchase additional Credit Monitoring Services (purchased in monthly, weekly, or daily increments to exhaust any remaining funds) for those Settlement Class Members who have enrolled in such services under Section 7.1.

5.5     <u>Use of Unclaimed Funds</u>. Upon completion of the distributions identified in Sections 5.1 through 5.4, and after the Settlement Administrator completes its duties with respect to delivering settlement funds to Settlement Class Members with valid claims as set forth in Section 14.1.16, any remaining funds resulting from the failure of Settlement Class Members to timely negotiate a settlement check or to timely provide required tax information such that a settlement check could issue, shall be distributed to Settlement Class Members, or as otherwise ordered by the Court, for consumer restitution and redress but in no event shall any of the Consumer Restitution Fund revert to Equifax.

## 6   REIMBURSEMENT FOR OUT-OF-POCKET LOSSES

6.1     The Settlement Administrator will use the Consumer Restitution Fund to compensate those Settlement Class Members who submit valid claims for Out-of-Pocket Losses. Settlement Class Members will be subject to an aggregate claims cap of twenty thousand United States Dollars ($20,000) paid directly from the Consumer Restitution Fund regardless of the number of claims submitted by the Settlement Class Member during the Initial Claims Period and Extended Claims Period. This provision does not prevent Settlement Class Members from submitting claims under applicable insurance policies.

6.2     "Out-of-Pocket Losses" are verifiable unreimbursed costs or expenditures that a Settlement Class Member actually incurred and that are fairly traceable to the Data Breach. Out-of-Pocket Losses may include, without limitation, the following:

6.2.1 unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other alleged misuse of a Settlement Class Member's personal information;

6.2.2 costs incurred on or after September 7, 2017, associated with placing or removing a credit freeze on a Settlement Class Member's credit file with any credit reporting agency;

6.2.3 other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

6.2.4 credit monitoring costs that were incurred on or after September 7, 2017, through the date of the Settlement Class Member's claim submission;

6.2.5 up to 25% reimbursement for costs incurred by a Settlement Class Member in connection with Equifax credit or identity monitoring subscription products in the 12 months preceding September 7, 2017;

6.2.6 subject to the provisions of Section 8.4 regarding Documented Time and Self-Certified Time and Section 8.1.2 regarding claims during the Extended Claims Period, up to 20 total hours for time spent taking Preventative Measures and time spent remedying fraud, identity theft, or other misuse of a Settlement Class Member's personal information that is fairly traceable to the Data Breach at $25 per hour. Up to thirty-one million United States Dollars ($31,000,000) of the Consumer Restitution Fund will be used to compensate Settlement Class Members for time under this Section that is claimed during the Initial Claims Period. If the settlement payments for time claimed during the Initial Claims Period exceed this amount, then payments for time shall be distributed *pro rata* to those making valid claims for time during the Initial Claims Period. Approved claims for Documented Time and Self-Certified Time filed during the Extended Claims Period will be paid in

the order they are received and approved at the same *pro rata* rate (if applicable) as claims for Documented Time and Self-Certified Time filed during the Initial Claims Period, up to an aggregate cap for Documented Time and Self-Certified Time during both the Initial and Extended Claims Period of thirty-eight million United States Dollars ($38,000,000). After passage of the Extended Claims Period and payment of approved claims filed during the Extended Claims Period, claims for time spent may be subject to the provisions of Section 5.4.1, if applicable, in which case all approved claims for time will be paid at the same pro rata rate.

# 7   CREDIT MONITORING, RESTORATION SERVICES, AND ALTERNATIVE REIMBURSEMENT COMPENSATION

7.1      All Settlement Class Members will be eligible to claim and enroll in at least 4 years of Credit Monitoring Services, a description of which is set forth in Exhibit 4. These services will be provided by Experian, which will be appointed by the Court as the provider of Credit Monitoring Services and be subject to the Court's jurisdiction for enforcement of the terms of this Settlement.

      7.1.1      Minors:  For Settlement Class Members who were under the age of 18 on May 13, 2017, during the period when a Settlement Class Member is under the age of 18 the monitoring made available will be the minor monitoring services provided by Experian as described in Exhibit 4.

7.2      All Settlement Class Members (regardless of whether the Settlement Class Member makes any claim under the Settlement) will also be able to access Restoration Services, a description of which is set forth in Exhibit 4. These services will be provided by Experian. The Restoration Services include access to a U.S. based call center providing services relating to identity theft, fraud and identity restoration for a period of 7 years.

7.3      Equifax represents and warrants that it is not an Affiliate of Experian and has no financial interest in Experian. Equifax will not receive any monetary or other financial consideration for the Credit Monitoring

17

Services or Restoration Services made available under this Settlement. Equifax will provide its data necessary to carry out these services to Experian free of charge.

7.4     Settlement Class Members who elect to enroll in Credit Monitoring Services within the Initial Claims Period shall have the option to make a claim for One-Bureau Credit Monitoring Services at the same time they claim Credit Monitoring Services. The One-Bureau Credit Monitoring Services will be provided by Equifax for a period of no more than 6 years beginning after the date on which the Credit Monitoring Services described in Section 7.1 above (including any additional monthly increments provided pursuant to Section 5.4.3) expire. The aggregate term of the Credit Monitoring Services and the One-Bureau Credit Monitoring Services will equal 10 years. A description of the One Bureau Credit Monitoring Services is set forth in Exhibit 4. The cost of the One-Bureau Credit Monitoring Services will be paid separately by Equifax, not from the Consumer Restitution Fund.

   7.4.1   <u>Minors</u>:   For Settlement Class Members who were under the age of 18 on May 13, 2017, One-Bureau Credit Monitoring Services will be provided by Equifax for a period of no more than 14 years beginning after the date on which the Credit Monitoring Services described in Section 7.1 above expire. The aggregate term of the Credit Monitoring Services and the One Bureau Credit Monitoring Services will equal 18 years. During the period when a Settlement Class Member is under the age of 18, the monitoring made available will be the minor monitoring services provided by Equifax described in Exhibit 4.

7.5     Settlement Class Members who already have some form of credit monitoring or protection and do not claim the Credit Monitoring Services available under Section 7.1 may file a claim for Alternative Reimbursement Compensation of $125. The Settlement Class Member must identify the monitoring service and certify that he or she has some form of credit monitoring or protection as of the date the Settlement Class Member submits the claim and will have such credit monitoring in place for a minimum of six (6) months from the claim date. Settlement Class

18

Members who elect to receive Alternative Reimbursement Compensation under this provision are not eligible to enroll in Credit Monitoring Services offered under Section 7.1 or to seek reimbursement, as Out-of-Pocket Losses, for purchasing credit monitoring or protection services covering the six-month period after the claim date. Up to thirty-one million United States Dollars ($31,000,000) of the Consumer Restitution Fund will be used to provide Alternative Reimbursement Compensation to Settlement Class Members under this provision. If payments for Alternative Reimbursement Compensation under this provision exceed the cap set forth in the preceding sentence, then payments for such Alternative Reimbursement Compensation shall be distributed *pro rata* to those making valid claims for Alternative Reimbursement Compensation. After passage of the Extended Claims Period, claims for Alternative Reimbursement Compensation may be subject to the provisions of Section 5.4.1, if applicable.

7.6    Claims for Credit Monitoring Services and Alternative Reimbursement Compensation can be made only within the Initial Claims Period.

7.7    The Parties, Class Counsel, and Defendants' Counsel shall not have any liability whatsoever with respect to any act or omission of Experian, or any of its respective designees or agents, in connection with its provision of Credit Monitoring Services or Restoration Services or the performance of its duties under this Agreement.

7.8    If, at the end of the Initial Claims Period, more than 7 million Settlement Class Members have enrolled in the Credit Monitoring Services, the following obligations apply:

7.8.1    If the total payments required under Sections 6, 7.2, 7.5, 9, and 10, plus the cost of providing the Credit Monitoring Services to 7 million Settlement Class Members (the "Costs") are greater than or equal to Three Hundred Million Dollars ($300,000,000), Equifax Inc. shall pay into the Consumer Restitution Fund an amount equal to the cost of providing Credit Monitoring Services to enrollees above 7 million (the "Additional Credit Monitoring Cost")

19

    7.8.2     If the Costs are less than Two Hundred Fifty Six Million Five Hundred Thousand Dollars ($256,500,000) and the Additional Credit Monitoring Cost is greater than Forty Three Million Five Hundred Thousand Dollars ($43,500,000), Equifax Inc. shall pay into the Consumer Restitution Fund an amount equal to the Additional Credit Monitoring Cost less Forty Three Million Five Hundred Thousand Dollars ($43,500,000)

    7.8.3     If (i) the Costs are greater than or equal to Two Hundred Fifty Six Million Five Hundred Thousand Dollars ($256,500,000), but less than Three Hundred Million Dollars ($300,000,000) and (ii) the Costs plus the Additional Credit Monitoring Costs are greater than or equal to Three Hundred Million Dollars ($300,000,000), Equifax Inc. shall pay into the Consumer Restitution Fund an amount equal to the Costs plus Additional Credit Monitoring Costs less Three Hundred Million Dollars ($300,000,000).

7.9     If, during the Extended Claims Period, more than 7 million Settlement Class Members have enrolled in Credit Monitoring Services and either (i) the Costs are greater than or equal to Two Hundred Fifty Six Million Five Hundred Thousand Dollars ($256,500,000) or (ii) the Additional Credit Monitoring Costs are greater than Forty Three Million Five Hundred Thousand Dollars ($43,500,000) then, at least on a monthly basis, Equifax Inc. shall recalculate its obligations under Sections 7.8.1 through 7.8.3, and shall deposit any additional money into the Consumer Restitution Fund that would be required, less any amounts previously deposited pursuant to Sections 7.8.1 through 7.8.3, or previously under this Section.

## 8   CLAIMS PERIODS AND PROCESS

8.1     <u>Claims Periods</u>. There will be two claims periods: the Initial Claims Period and the Extended Claims Period.

    8.1.1     The Initial Claims Period will run for 6 months after the Order Permitting Issuance of Notice of Class Action Settlement.

    8.1.2     The Extended Claims Period will run for 4 years after the

conclusion of the Initial Claims Period. During the Extended Claims Period, Settlement Class Members can seek reimbursement for valid Out-of-Pocket Losses (excluding losses of money and time associated with Preventative Measures) incurred during the Extended Claims Period only if the Settlement Class Member provides a certification that he or she has not obtained reimbursement for the claimed expense through other means.

8.2     <u>Claims Process</u>. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically through the Settlement Website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Initial Claims Period, or, where applicable, during the Extended Claims Period. Where applicable, the Settlement Administrator shall apply the Claims Administration Protocol, attached as Exhibit 9.

8.3     <u>Claims for Reimbursement for Out-of-Pocket Losses under Section 6</u>. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member and shall be responsible for evaluating claims and making a determination as to whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Data Breach. Settlement Class Members with Out-of-Pocket Losses must submit Reasonable Documentation supporting their claims, except no documentation is required for claims for reimbursement for Equifax subscription products as provided in Section 6.2.5. As used herein, "Reasonable Documentation" means documentation supporting a claim, including but not limited to: credit card statements, bank statements, invoices, telephone records, and receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the claimant do not constitute Reasonable Documentation but may be included to provide clarification, context or support for other submitted Reasonable Documentation.

8.3.1     In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) the timing of the loss, including whether the loss occurred on or

21

after May 13, 2017, through the date of the Class Member's claim submission; (ii) whether the loss involved the possible misuse of the type of personal information accessed in the Data Breach (i.e., name, address, birth date, Social Security Number, driver's license number, payment card information); (iii) whether the personal information accessed in the Data Breach that is related to the Class Member is of the type that was possibly misused; (iv) the Class Member's explanation as to how the loss is fairly traceable to the Data Breach; (v) the nature of the loss, including whether the loss was reasonably incurred as a result of the Data Breach; and (vi) any other factor that the Settlement Administrator considers to be relevant. The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Data Breach.

8.3.2    Out-of-Pocket Losses associated with placing or removing credit freezes on credit files (Section 6.2.2.) and purchasing credit monitoring services (Section 6.2.4) ("Preventative Measures"), shall be deemed fairly traceable to the Data Breach if (i) they were incurred on or after September 7, 2017, through the date of the Settlement Class Member's claim submission, and (ii) the claimant certifies that they incurred such Out-of-Pocket Losses as a result of the Data Breach and not as a result of any other compromise of the Settlement Class Member's information.

8.4    <u>Claims for Time</u>. Settlement Class Members who spent time remedying fraud, identity theft, or other alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach, or subject to Section 8.1.2, Settlement Class Members who spent time on Preventative Measures fairly traceable to the Data Breach, can receive reimbursement for such time expenditures subject to the following provisions.

8.4.1    <u>Documented Time</u>. Settlement Class Members with (i) Reasonable Documentation of fraud, identity theft, or other

22

alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach and (ii) time spent remedying these issues, or time spent taking Preventative Measures, may submit a claim for up to 20 hours of such time to be compensated at $25 per hour. This documentation may overlap with documents submitted to support other Out-of-Pocket Losses. In the event the Settlement Administrator does not approve a claim for Documented Time, that claim shall be treated as a claim for Self-Certified Time and be subject to the provisions of Section 8.4.2.

8.4.2   <u>Self-Certified Time</u>. Settlement Class Members who attest (i) to fraud, identity theft, or other alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach, or Preventative Measures, and (ii) that they spent time remedying such misuse or taking Preventative Measures, but who cannot provide Reasonable Documentation of such issues may self-certify the amount of time they spent remedying the foregoing by providing a certified explanation of the misuse or Preventative Measures taken and how the time claimed was spent remedying the misuse or taking Preventative Measures. Settlement Class Members may file a claim for Self-Certified Time for up to 10 hours at $25 per hour.

8.4.3   <u>Time Increments.</u> Valid claims for both Documented Time and Self-Certified Time will be reimbursed in 15-minute increments, with a minimum reimbursement of 1-hour per valid Out-of-Pocket Loss claim for time.

8.5   Disputes and Appeals.

8.5.1   To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses, Alternative Reimbursement Compensation, or Credit Monitoring Services is deficient in whole or part, within 14 days after making such a determination, the Settlement Administrator shall notify the Settlement Class Member in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her

23

preferred method of communication) of the deficiencies and give the Settlement Class Member 30 days to cure the deficiencies. The notice shall inform the Settlement Class Member that he or she can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing and request an appeal. If the Settlement Class Member attempts to cure the deficiencies but, in the sole discretion and authority of the Settlement Administrator fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within 14 days of the determination. The notice shall inform the Settlement Class Member of his or her right to dispute the determination in writing and request an appeal within 30 days. The Settlement Administrator shall have the sole discretion and authority to determine whether a claim for Out-of-Pocket Losses, Alternative Reimbursement Compensation, or Credit Monitoring Services is deficient in whole or part but may consult with the Parties in making individual determinations.

8.5.2   If a Settlement Class Member disputes a determination in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) and requests an appeal, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel a copy of the Settlement Class Member's dispute and Claim Form along with all documentation or other information submitted by the Settlement Class Member. Class Counsel and Defendants' Counsel will confer regarding the claim submission, and their agreement on approval of the Settlement Class Member's claim, in whole or part, will be final. If Class Counsel and Defendants' Counsel cannot agree on approval of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to a mutually-agreeable neutral third-party who will serve as the claims referee. If no agreement is reached on selection of the claims referee, the Parties will submit proposals to the Court. The Court will have final, non-appealable decision-making authority over designating the

24

claims referee. The claims referee's decision will be final and not subject to appeal or further review.

## 9   ADMINISTRATIVE COSTS AND NOTICE COSTS

9.1     The Administrative Costs and Notice Costs will be paid from the Consumer Restitution Fund. However, if the amount of Notice Costs exceeds more than a specified dollar amount, as agreed to by the Parties and submitted to the Court for *in camera* review, either of the Parties may terminate this Agreement.

## 10  SERVICE AWARDS

10.1    Settlement Class Representatives and Class Counsel may seek Service Awards for the Settlement Class Representatives. Any requests for such awards must be filed at least 21 days before the Objection Deadline. Equifax agrees not to oppose requests for such Service Awards to the extent they do not exceed two thousand five hundred United States Dollars ($2,500) per Settlement Class Representative.

10.2    The Settlement Administrator shall pay the Service Awards approved by the Court to the Settlement Class Representatives from the Consumer Restitution Fund, which shall not exceed two hundred and fifty thousand United States Dollars ($250,000) of the Consumer Restitution Fund. Such Service Awards shall be paid in the amount approved by the Court within 10 Business Days of the Effective Date.

10.3    In the event the Court declines to approve, in whole or in part, the payment of the Service Awards in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Service Awards shall constitute grounds for cancellation or termination of this Agreement.

## 11  ATTORNEYS' FEES AND EXPENSES

11.1    Plaintiffs, through Class Counsel, will request up to $77,500,000 of the Consumer Restitution Fund (representing 25% of the Settlement Fund negotiated as part of the March 30, 2019, term sheet) to pay reasonable

attorneys' fees for work performed by Class Counsel or other counsel working at their direction in connection with this litigation, to be distributed as determined by Class Counsel. In addition to fees, plaintiffs will also request reimbursement of reasonable costs and expenses incurred in connection with the litigation up to three million United States Dollars ($3,000,000), which shall also be paid from the Consumer Restitution Fund. Class Counsel will make such applications as provided under the Federal Rules of Civil Procedure and Equifax agrees not to take a position on such applications. Any such applications must be filed at least 21 days before the Objection Deadline.

11.2    The Settlement Administrator shall pay the attorneys' fees, costs, and expenses awarded by the Court, plus any interest accrued on the amount of the approved attorneys' fees, to Class Counsel from the Consumer Restitution Fund. Such attorneys' fees, costs, and expenses shall be paid in the amount approved by the Court within 10 Business Days of the Effective Date.

11.3    Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to any payment or allocation of attorneys' fees, costs, and expenses to or made by Class Counsel under this Agreement.

11.4    The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees and costs. In the event the Court declines to approve, in whole or in part, the payment of the attorneys' fees, costs, or expenses in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of attorneys' fees, costs, and expenses shall constitute grounds for cancellation or termination of this Agreement.

## 12  PRESENTATION TO THE COURT

12.1    On or after July 15, 2019, Settlement Class Representatives and Class Counsel will file this Agreement and Exhibits, along with a motion for Order Permitting Issuance of Notice of Class Action Settlement pursuant to the requirements of Federal Rule of Civil Procedure 23(e)(1).

12.2    Class Counsel shall apply to the Court for entry of the Order Permitting Issuance of Notice of Class Action Settlement attached hereto as Exhibit 5.

## 13  CLASS NOTICE, OPT-OUTS, OBJECTIONS, AND CAFA NOTICE

13.1    Notice shall not be distributed or disseminated until after the Court enters the Order Permitting Issuance of Notice of Class Action Settlement.

13.2    The Notice Provider is responsible for distributing and disseminating the Notice in accordance with the Notice Plan, Exhibit 6 hereto.

13.3    Defendants shall provide the Settlement Administrator with the names, last known mailing address, date of birth, and last known e-mail addresses of Settlement Class Members to the extent reasonably available, no later than 5 Business Days after the date on which the Court enters the Order Permitting Issuance of Notice of Class Action Settlement. To the extent that Equifax has reasonably available names or other identifying information about Settlement Class Members, but not mailing or email addresses, those names and other identifying information shall also be provided to the Settlement Administrator for use in verifying the identity of Settlement Class Members. The Notice Provider and Settlement Administrator shall make all necessary efforts to ensure the security and privacy of Settlement Class Member information.

13.4    Class Counsel shall provide the Settlement Administrator with the names, last known mailing address, and last known email addresses of Settlement Class Representatives and any other putative class member who has reported updated address information to Class Counsel, no later than 5 Business Days after the date on which the Court enters the Order Permitting Issuance of Notice of Class Action Settlement.

13.5    The Notice shall explain the procedure for Settlement Class Members to opt-out and exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing, postmarked no later than 60 days after the Notice Date (the "Opt-Out Deadline"). Each written request for exclusion must set forth the name of the individual seeking exclusion, be

signed by the individual seeking exclusion, and can only request exclusion for that one individual.

13.6    The Notice shall explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Court no later than 60 days after the Notice Date (the "Objection Deadline"). The written objection must include the objector's name, address, personal signature, a statement of the specific grounds for the objection, a statement indicating the basis for the objector's belief that he or she is a member of the Settlement Class, a statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years, a statement whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number, and four dates between the Objection Deadline and a date two weeks before Fairness Hearing, during which the Settlement Class Member is available to be deposed by counsel for the Parties. In addition to the foregoing, if the Settlement Class Member is represented by counsel and such counsel intends to speak at the Fairness Hearing, the written objection must include a detailed statement of the specific legal and factual basis for each and every objection and a detailed description of any and all evidence the objecting Settlement Class Member may offer at the Fairness Hearing, including copies of any and all exhibits that the objecting Settlement Class Member may introduce at the Fairness Hearing. In addition to the foregoing, if the Settlement Class Member is represented by counsel, and such counsel intends to seek compensation for his or her services from anyone other than the Settlement Class Member, the objection shall contain the following information: (a) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (b) a statement identifying all instances in which the counsel or the counsel's law firm have objected to a class action settlement within the preceding 5 years, giving the style and court in which the class action settlement was filed; (c) a statement identifying any and all agreements that relate to the objection or the process of objecting—whether written or oral—between

28

the Settlement Class Member, his or her counsel, and/or any other person or entity; (d) a description of the counsel's legal background and prior experience in connection with class action litigation; and (e) a statement regarding whether fees to be sought will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought; the factual and legal justification for any fees to be sought; the number of hours already spent by the counsel and an estimate of the hours to be spent in the future; and the attorney's hourly rate.

13.7    The Notice will also state that any Settlement Class Member who does not file a timely and adequate notice of intent in accordance with this Section waives the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the Settlement.

13.8    Equifax will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than 10 days after this Agreement is filed with the Court.

## 14  DUTIES OF SETTLEMENT ADMINISTRATOR

14.1    The Settlement Administrator shall perform the functions as are specified in this Agreement and its Exhibits, including, but not limited to, overseeing administration of the Consumer Restitution Fund; operating the Settlement Website and a toll-free number; administering the claims processes; and distributing the Settlement benefits described herein. These functions may need to be performed in conjunction with the Notice Provider, as described herein. In addition to other responsibilities that are described in this Agreement, the duties of the Settlement Administrator include:

14.1.1    Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

14.1.2    Establishing a reasonably practical procedure, using information obtained from Equifax pursuant to Section 13.3, to verify that claimants are Settlement Class Members.

14.1.3    Establishing and maintaining a post office box for mailed

written objections and notifications of exclusion from the Settlement Class;

14.1.4    Establishing and maintaining the Settlement Website that, among other things, allows Settlement Class Members to submit Claims Forms electronically;

14.1.5    Responding to Settlement Class Member inquiries via U.S. mail, e-mail, and telephone;

14.1.6    Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

14.1.7    Mailing to Settlement Class Members who request it paper copies of the Notice and Claim Forms;

14.1.8    Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members, pursuant to Section 8;

14.1.9    Paying Taxes;

14.1.10    Processing all objections and requests for exclusion from the Settlement Class;

14.1.11    Coordinating with Experian to receive and send activation codes for Credit Monitoring Services no later than 45 days after the Effective Date or the conclusion of the Initial Claims Period, whichever is later;

14.1.12    Receiving requests for exclusion and objections from Settlement Class Members and promptly providing copies thereof to Class Counsel and Defendants' Counsel. If the Settlement Administrator receives any requests for exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement

30

Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;

14.1.13   Providing, no later than 5 Business Days after the Opt-Out and Objection Deadlines, a final report to Class Counsel and Defendants' Counsel that summarizes the number of written requests for exclusion, objections, and other pertinent information as requested by Class Counsel or Defendants' Counsel;

14.1.14   Providing weekly reports and a final report to Class Counsel and Defendants' Counsel that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel or Defendants' Counsel. The Settlement Administrator shall also, as requested by Class Counsel or Defendants' Counsel and from time to time, provide information about the amounts remaining in the Consumer Restitution Fund;

14.1.15   Making available for inspection by Class Counsel and Defendants' Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

14.1.16   After the Effective Date, processing and transmitting distributions to Settlement Class Members;

14.1.17   In advance of the Fairness Hearing, preparing an affidavit to submit to the Court that: (i) provides pertinent information relating to the claims process as requested by Class Counsel; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class; and

14.1.18   Performing any function at the agreed-upon instruction of both

31

Class Counsel and Defendants' Counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Section 5.

14.2     The Parties, Class Counsel, and Defendants' Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Consumer Restitution Fund; (iii) the formulation, design or terms of the disbursement of the Consumer Restitution Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Consumer Restitution Fund; (v) any losses suffered by or fluctuations in the value of the Consumer Restitution Fund; or (vi) the payment or withholding of any Taxes, expenses or costs incurred in connection with the taxation of the Consumer Restitution Fund or the filing of any returns.

14.3     The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the administration of the Settlement; (ii) the management, investment or distribution of the Consumer Restitution Fund; (iii) the formulation, design or terms of the disbursement of the Consumer Restitution Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Consumer Restitution Fund; (v) any losses suffered by, or fluctuations in the value of the Consumer Restitution Fund; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Consumer Restitution Fund or the filing of any returns.

## 15  DUTIES OF NOTICE PROVIDER

15.1     The Notice Provider shall perform the functions as are specified in this Agreement and its Exhibits, including, but not limited to implementing the Notice Plan attached hereto as Exhibit 6, using the methods and forms of Notice approved by the Court. In addition to other responsibilities that

are described in this Agreement and the Notice Plan, the duties of the Notice Provider include:

15.1.1   Coordinating with the Settlement Administrator, Class Counsel, and Defendants' Counsel to effectuate this Agreement.

15.1.2   Assisting the Settlement Administrator in creating and maintaining the Settlement Website.

15.1.3   Reporting to the Parties and the Court regarding the status and effectiveness of the Notice Plan.

15.2   The Parties, Class Counsel, and Defendants' Counsel shall not have any liability whatsoever with respect to any act or omission of the Notice Provider, or any of its respective designees or agents, in connection with its implementation of the Notice Plan and performance of its duties under this Agreement.

15.3   The Notice Provider shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel for any liability arising from the Notice Provider's implementation of the Notice Plan and performance of its duties under this Agreement.

## 16  RELEASE

16.1   As of the Effective Date, all Settlement Class Members and all Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and Successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely and unconditionally release and discharge any and all Released Claims against Equifax and its current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, insurers, Successors, assigns, and attorneys, except for claims relating to the enforcement of the Settlement or this Agreement.

16.2   As of the Effective Date, Equifax and its representatives, officers, agents, directors, Affiliates, Successors, Subsidiaries, Parents, employees, insurers, and attorneys absolutely and unconditionally release and discharge Settlement Class Members, Settlement Class Representatives,

33

and Class Counsel from any claims that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits.

16.3    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

16.4    Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

## 17  EFFECTIVE DATE AND TERMINATION

17.1    The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

17.1.1    Defendants and Class Counsel execute this Agreement;

17.1.2    The Court enters the Order Permitting Issuance of Notice of Class Action Settlement, without material change to the Parties' agreed-upon proposed order attached hereto as Exhibit 5;

17.1.3    Notice is provided to the Settlement Class consistent with the Order Permitting Issuance of Notice of Class Action Settlement;

17.1.4    The Court enters the Final Approval Order and Judgment; and

17.1.5     The Final Approval Order and Judgment has become final because (i) the time for appeal, petition, rehearing or other review has expired, or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

17.2     In the event that the Court declines to enter the Order Permitting Issuance of Notice of Class Action Settlement as specified in Section 17.1.2, declines to enter the Final Approval Order and Judgment in substantially similar form as submitted by the Parties, or the Final Approval Order and Judgment does not become final as specified in Section 17.1.5, the Parties shall have 60 days during which the Parties shall work together in good faith in considering, drafting, and submitting reasonable modifications to this Agreement to address any issues with the Settlement identified by the Court or that otherwise caused the Final Approval Order and Judgment not to become final. If such efforts are unsuccessful or the Court declines to approve the revised Settlement, Defendants and Plaintiffs may at their sole discretion terminate this Agreement on 5 Business Days written notice to Class Counsel or Defendants, respectively. For avoidance of doubt, neither Defendants nor Plaintiffs may terminate the Agreement while an appeal from an order granting approval of the Settlement is pending.

17.3     Defendants also may at their sole discretion terminate this Agreement on 5 Business Days written notice to Class Counsel if more than a specified number of individuals submit valid requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for *in camera review*.

17.4     In the event this Agreement is terminated pursuant to Sections 17.2 or 17.3, the Settlement Administrator, within 10 Business Days of receiving written notification of such event from counsel for Defendants, shall pay to Defendants an amount equal to the Consumer Restitution Fund together

with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income, (ii) any reasonable Administrative Costs or Notice Costs actually incurred and paid or payable from the Consumer Restitution Fund as authorized in this Agreement.

17.5    Except as otherwise provided herein, in the event this Agreement is terminated, the Parties to this Agreement, including Settlement Class Members, shall be deemed to have reverted to their respective status in the Actions immediately prior to the execution of this Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event this Agreement is terminated:

17.5.1    Any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion; and

17.5.2    This Agreement shall become null and void, and the fact of this Settlement and that Defendants did not oppose certification of any class under this Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class.

## 18  NO ADMISSION OF WRONGDOING

18.1    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

18.1.1    Shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted

in the Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

18.1.2    Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

18.1.3    Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

18.1.4    Shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

18.1.5    Shall not be construed as or received in evidence as an admission, concession or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Actions would not have exceeded the Consumer Restitution Fund, provided, however, that if this Agreement is approved by the Court, the Defendants may refer to it to enforce the release of claims granted to them hereunder.

37

## 19  REPRESENTATIONS

19.1    Each Party represents that (i) such Party has full legal right, power and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding and enforceable agreement, and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 20  NOTICES

20.1    All notices to Class Counsel provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Amy E. Keller                                    Kenneth S. Canfield
**DICELLO LEVITT GUTZLER LLC**                   **DOFFERMYRE SHIELDS**
Ten North Dearborn Street                        **CANFIELD & KNOWLES, LLC**
Eleventh Floor                                   1355 Peachtree Street, N.E.
Chicago, Illinois 60602                          Suite 1725
Tel. 312.214.7900                                Atlanta, Georgia 30309
akeller@dicellolevitt.com                        Tel. 404.881.8900
                                                 kcanfield@dsckd.com


Norman E. Siegel                                 Roy E. Barnes
**STUEVE SIEGEL HANSON LLP**                     **THE BARNES LAW GROUP, LLC**
460 Nichols Road, Suite 200                      31 Atlanta Street
Kansas City, Missouri 64112                      Marietta, GA 30060
Tel. 816.714.7100                                Tel. 770.227.6375
siegel@stuevesiegel.com                          roy@barneslawgroup.com

38

20.2    All notices to Defendants or counsel to Defendants provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

David L. Balser
Phyllis B. Sumner
S. Stewart Haskins II
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: 404.572.4600
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com

Michelle A. Kisloff
Adam A. Cooke
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel.: 202.637.5600
michelle.kisloff@hoganlovells.com
adam.a.cooke@hoganlovells.com

20.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Equifax Data Breach Settlement
C/O JND Legal Administration
P.O. Box 91318
Seattle, WA 98111
Info@EquifaxBreachSettlement.com

39

20.4    The notice recipients and addresses designated in this Section may be changed by written notice posted to the Settlement Website.

## 21  MISCELLANEOUS PROVISIONS

21.1    Further Steps. The Parties agree that they each shall undertake any required steps to effectuate the purposes and intent of this Agreement.

21.2    Representation by Counsel. The Settlement Class Representatives and Defendants represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

21.3    Contact with Settlement Class Members. The Parties agree that Class Counsel may communicate with Settlement Class Members regarding the Settlement, and Equifax shall not otherwise interfere with such communications.

21.4    Contractual Agreement. The Parties understand and agree that all terms of this Agreement, including the Exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

21.5    Integration. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

21.6    Drafting. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentem*. This Agreement is a collaborative effort of the Parties and their attorneys.

40

21.7    <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties who executed this Agreement or their successors-in-interest.

21.8    <u>Waiver</u>. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

21.9    <u>Severability</u>. Should any part, term or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

21.10   <u>Successors</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, Successors and assigns of the Parties thereto.

21.11   <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

21.12   <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Georgia, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

21.13   <u>Interpretation</u>.

    21.13.1   Definitions apply to the singular and plural forms of each term defined.

    21.13.2   Definitions apply to the masculine, feminine, and neuter genders of each term defined.

21.13.3   Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

21.14   <u>No Precedential Value</u>. The Parties agree and acknowledge that this Agreement carries no precedential value.

21.15   <u>Fair & Reasonable</u>. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

21.16   <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

21.17   <u>Headings</u>. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

21.18   <u>Exhibits</u>. The Exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

21.19   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

21.20   <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Equifax Inc.

_____
Name: John J. Kelley III
Title: Corporate Vice President, Chief Legal Officer
Date:


Equifax Information Services LLC

_____
Name: John J. Kelley III
Title: Corporate Vice President, Chief Legal Officer
Date:


Equifax Consumer Services LLC

_____
Name: John J. Kelley III
Title: Corporate Vice President, Chief Legal Officer
Date:

43

CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

Name: Roy E. Barnes
Title: Co-Liaison Plaintiffs' Counsel
Date: July 19, 2019

Name: Kenneth S. Canfield
Title: Co-Lead Plaintiffs' Counsel
Date: July 9, 2019

Name: Amy E. Keller
Title: Co-Lead Plaintiffs' Counsel
Date: 19 July 2019

Name: Norman E. Siegel
Title: Co-Lead Plaintiffs' Counsel
Date: 7.19.19

# EXHIBIT 1

## LIST OF ACTIONS

1.     *In re Equifax, Inc. Customer Data Security Breach Litig.* (N.D. Ga., Case No. 1:17-md-2800-TWT), Doc. 374, Consolidated Consumer Class Action Complaint.

2.     *Abraham v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03453)

3.     *Abramowitz, et al. v. Equifax Inc.* (S.D.N.Y., Case No. 7:17-cv-07642) (N.D. Ga., Case No. 1:17-cv-05533)

4.     *Abramson, et al. v. Equifax Inc.* (C.D. Cal., Case No. 8:17-cv-02201) (N.D. Ga., Case No. 1:18-cv-01466)

5.     *Agosto, et al. v. Equifax Information Services, LLC* (N.D. Ohio, Case No. 5:18-cv-00346) (N.D. Ga., Case No. 1:18-cv-01150)

6.     *Ahmed v. Equifax Inc.* (E.D.N.Y., Case No. 2:17-cv-06576) (N.D. Ga., Case No. 1:17-cv-05407)

7.     *Alexander v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05230) (N.D. Ga., Case No. 1:17-cv-05038)

8.     *Alexander, et al. v. Equifax, Inc.* (W.D. Mo., Case No. 4:17-cv-00788) (N.D. Ga., Case No. 1:17-cv-05413)

9.     *Allen, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04544)

10.     *Amadick, et al. v. Equifax* (D. Minn., Case No. 0:17-cv-04196) (N.D. Ga., Case No. 1:17-cv-05027)

11.     *Amuial v. Equifax, Inc.* (S.D. Fla., Case No. 1:17-cv-23405) (N.D. Ga., Case No. 1:17-cv-05285)

12.    *Anderson, et al. v. Equifax Inc., et al.* (D.S.C., Case No. 2:17-cv-02825) (N.D. Ga., Case No. 1:17-cv-05449)

13.    *Anderson v. Equifax, Inc.* (E.D. Ky., Case No. 2:17-cv-00156) (N.D. Ga., Case No. 1:17-cv-05008)

14.    *Anderson, et al. v. Equifax Information Services, LLC* (D. Nev., Case No. 2:18-cv-00592) (N.D. Ga., Case No. 1:18-cv-01591)

15.    *Appel, et al. v. Equifax, Inc.* (D. Minn., Case No. 0:17-cv-04488) (N.D. Ga., Case No. 1:17-cv-05378)

16.    *Astor, et al. v. Equifax Inc., et al.* (M.D. Fla., Case No. 6:17-cv-01653) (N.D. Ga., Case No. 1:17-cv-05368)

17.    *Atiles, et al. v. Equifax, Inc., et al.* (S.D.N.Y., Case No. 7:17-cv-07493) (N.D. Ga., Case No. 1:17-cv-05532)

18.    *Austin v. Equifax, Inc., et al.* (E.D. Pa., Case No. 2:17-cv-04045) (N.D. Ga., Case No. 1:17-cv-05129)

19.    *Avise v. Equifax Inc.* (C.D. Cal., Case No. 8:17-cv-01563) (N.D. Ga., Case No. 1:17-cv-05022)

20.    *Ayala, et al. v. Equifax Incorporated, et al.* (D. Ariz., Case No. 4:17-cv-00462) (N.D. Ga., Case No. 1:17-cv-05221)

21.    *Bahnmaier v. Equifax, Inc.* (N.D. Okla., Case No. 4:17-cv-00512) (N.D. Ga., Case No. 1:17-cv-05087)

22.    *Bailey v. Equifax Inc., et al.* (S.D.W.Va., Case No. 3:17-cv-04211) (N.D. Ga., Case No. 1:17-cv-05440)

23.    *Baker v. Equifax, Inc.* (D. Minn., Case No. 0:17-cv04655) (N.D. Ga., Case No. 1:17-cv-05380)

24.    *Bakken, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03676)

25.     *Bakko v. Equifax, Inc.* (E.D. Mich., Case No. 2:17-cv-13992) (N.D. Ga., Case No. 1:17-cv-05442)

26.     *Bandoh-Aidoo v. Equifax, Inc., et al.* (C.D. Cal., Case No. 2:17-cv-06658) (N.D. Ga., Case No. 1:17-cv-05002)

27.     *Barker v. Equifax, Inc.* (C.D. Cal., Case No. 8:17-cv-01560) (N.D. Ga., Case No. 1:17-cv-05007)

28.     *Barone v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05958) (N.D. Ga., Case No. 1:17-cv-05362)

29.     *Becker, et al. v. Equifax Inc.* (W.D. Tex., Case No. 5:17-cv-00900) (N.D. Ga., Case No. 1:17-cv-05500)

30.     *Beekman, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03492)

31.     *Belden v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05260) (N.D. Ga., Case No. 1:17-cv-05039)

32.     *Belfon v. Equifax Inc.* (E.D.N.Y., Case No. 2:17-cv-06577) (N.D. Ga., Case No. 1:17-cv-05408)

33.     *Benavidez, et al. v. Equifax Inc., et al.* (C.D. Ill., Case No. 4:17-cv-04279) (N.D. Ga., Case No. 1:17-cv-05276)

34.     *Benson v. Equifax Inc.* (W.D. Ky., Case No. 3:17-cv-00564) (N.D. Ga., Case No. 1:17-cv-05502)

35.     *Benway v. Equifax, Inc.* (D. Md., Case No. 1:17-cv-03360) (N.D. Ga., Case No. 1:17-cv-05309)

36.     *Bethea, et al. v. Equifax, Inc., et al.* (E.D. Va., Case No. 3:17-cv-00648) (N.D. Ga., Case No. 1:18-cv-00055)

37.     *Biles v. Equifax, Inc.* (N.D. Ill., Case No. 1:17-cv-08224) (N.D. Ga., Case No. 1:17-cv-05289)

3

38.   *Biorn v. Equifax Inc.* (D. Mont., Case No. 2:17-cv-00071) (N.D. Ga. Case No. 1:17-cv-05412)

39.   *Bishop v. Equifax Inc.* (S.D. Tex., Case No. 4:18-cv-02079) (N.D. Ga., Case No. 1:18-cv-03331)

40.   *Bitton v. Equifax Information Services, LLC, et al.* (S.D.N.Y., Case No. 1:17-cv-06946) (N.D. Ga., Case No. 1:17-cv-05126)

41.   *Blake, et al. v. Equifax, Inc., et al.* (D.N.J., Case No. 1:17-cv-07121) (N.D. Ga., Case No. 1:18-cv-00040)

42.   *Block v. Equifax, Inc., et al.* (N.D. Cal., Case No. 5:17-cv-05367) (N.D. Ga., Case No. 1:17-cv-05341)

43.   *Bobbitt v. Equifax, Inc.* (N.D. Ill., Case No. 1:17-cv-08631) (N.D. Ga., Case No. 1:18-cv-00142)

44.   *Bologna, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03578)

45.   *Boothman v. Equifax Credit Information Services, Inc.* (E.D. Pa., Case No. 2:18-cv-01665) (N.D. Ga., Case No. 1:18-cv-02022)

46.   *Bordelon v. Equifax Information Services LLC* (W.D. La., Case No. 6:18-cv-01137) (N.D. Ga., Case No. 1:18-cv-05609)

47.   *Boundy, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03480)

48.   *Bradley v. Equifax, Inc.* (D.N.J., Case No. 1:17-cv-07276) (N.D. Ga., Case No. 1:18-cv-00042)

49.   *Branch v. Equifax Inc.* (N.D. Cal., Case No. 5:17-cv-05429) (N.D. Ga., Case No. 1:17-cv-05343)

50.   *Brandon v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03454)

51.   *Brannan, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03708)

52.    *Breen, et al. v. Equifax Inc.* (D.S.C., Case No. 4:17-cv-03395) (N.D. Ga., Case No. 1:18-cv-00134)

53.    *Brock, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-04510)

54.    *Broder v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03587)

55.    *Brodsky v. Equifax Inc.* (E.D.N.Y., Case No. 2:17-cv-05528) (N.D. Ga., Case No. 1:17-cv-05405)

56.    *Brown v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03449)

57.    *Brown v. Equifax Information Services, LLC,* (M.D., Fla., Case No. 6:18-cv-01162) (N.D. Ga., Case No. 1:18-cv-03977)

58.    *Brumfield v. Equifax, Inc.* (E.D.N.Y., Case No. 1:17-cv-06459) (N.D. Ga., Case No. 1:17-cv-05399)

59.    *Burns v. Equifax, Inc.* (D. Minn., Case No. 0:19-cv-00851) (N.D. Ga., Case No. 1:19-cv-01924)

60.    *Bussey v. Equifax Credit Bureau* (M.D. Ga., Case No. 7:17-cv-00158) (N.D. Ga., Case No. 1:17-cv-05197)

61.    *Butler v. Equifax Inc.* (S.D. Cal., Case No. 3:17-cv-02158) (N.D. Ga., Case No. 1:17-cv-05242)

62.    *Byas, et al. v. Equifax, Inc.* (N.D. Miss., Case No. 4:17-cv-00130) (N.D. Ga., Case No. 1:17-cv-05025)

63.    *Cadwallader, et al. v. Equifax Inc., et al.* (D. Minn., Case No. 0:17-cv-04640) (N.D. Ga., Case No. 1:17-cv-05379)

64.    *Calderon, et al. v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:17-cv-04389)

65.    *Campbell v. Equifax Inc.* (W.D. Wash., Case No. 2:17-cv-01657) (N.D. Ga., Case No. 1:17-cv-05491)

66.   *Campos v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-06579) (N.D. Ga., Case No. 1:17-cv-05397)

67.   *Caplan v. Equifax Information Services, LLC* (E.D. Pa., Case No. 2:17-cv-04055) (N.D. Ga., Case No. 1:17-cv-05130)

68.   *Caraway v. Equifax, Inc.* (N.D. Ohio, Case No. 4:18-cv-01388) (N.D. Ga., Case No. 1:18-cv-04753)

69.   *Carr, et al. v. Equifax Inc., et al.* (D. Kan., Case No. 5:17-CV-04089) (N.D. Ga., Case No. 1:17-cv-05426)

70.   *Carter, et al. v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:18-cv-00626)

71.   *Cary, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03433)

72.   *Casper v. Equifax, Inc.* (M.D.N.C., Case No. 1:17-cv-01004) (N.D. Ga., Case No. 1:18-cv-01511)

73.   *Cederdahl v. Equifax Information Services, LLC* (S.D. Iowa, Case No. 4:17-cv-00342) (N.D. Ga., Case No. 1:17-cv-05371)

74.   *Chehebar v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11414) (N.D. Ga., Case No. 1:17-cv-05428)

75.   *Chehebar v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11417) (N.D. Ga., Case No. 1:17-cv-05429)

76.   *Chenault v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03764)

77.   *Cherney, et al. v. Equifax, Inc.* (E.D. Mich., Case No. 2:17-cv-12966) (N.D. Ga., Case No. 1:17-cv-05017)

78.   *Cho v. Equifax, Inc., et al.* (C.D. Cal., Case No. 2:17-cv-08548) (N.D. Ga., Case No. 1:18-cv-00032)

79.     *Christen, et al. v. Equifax Inc.* (D.N.J., Case No. 2:17-cv-06951) (N.D. Ga., Case No. 1:17-cv-05059)

80.     *Clark, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03497)

81.     *Clark, et al. v. Equifax Inc.* (D.N.M., Case No. 1:17-cv-01118) (N.D. Ga., Case No. 1:17-cv-05417)

82.     *Coade-Wingate v. Equifax Inc., et al.* (N.D.N.Y., Case No. 1:17-cv-01136) (N.D. Ga., Case No. 1:18-cv-00001)

83.     *Cofield, et al. v. Equifax Inc., et al.* (D. Md., Case No. 1:17-cv-03119) (N.D. Ga., Case No. 1:18-cv-01550)

84.     *Cole v. Equifax Inc.* (D. Mass., Case No. 1:17-cv-11712) (N.D. Ga., Case No. 1:17-cv-05015)

85.     *Cole, et al. v. Equifax Inc., et al.* (D. Vt., Case No. 5:17-cv-00223) (N.D. Ga., Case No. 1:18-cv-00046)

86.     *Coleman v. Equifax, Inc.* (M.D. Tenn., Case No. 3:18-cv-00004) (N.D. Ga., Case No. 1:18-cv-00329)

87.     *Collins v. Equifax, Inc.* (C.D. Cal., Case No. 8:17-cv-01561) (N.D. Ga., Case No. 1:17-cv-05021)

88.     *Collins v. Equifax, Inc.* (S.D. Tex., Case No. 1:17-cv-00187) (N.D. Ga., Case No. 1:17-cv-05088)

89.     *Cooper, et al. v. Equifax Incorporated, et al.* (D. Ariz., Case No. 4:17-CV-00490) (N.D. Ga., Case No. 1:17-cv-05222)

90.     *Cowherd v. Equifax, Inc.* (S.D. Tex., Case No. 4:18-cv-02230) (N.D. Ga., Case No. 1:18-cv-04699)

91.     *Cox, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03586)

92.   *Crossett v. Equifax, Inc.* (E.D. Mo., Case No. 4:17-cv-02434) (N.D. Ga., Case No. 1:17-cv-05452)

93.   *Crow, et al. v. Equifax, Inc.* (N.D. Cal., Case No. 4:17-cv-05355) (N.D. Ga., Case No. 1:17-cv-05340)

94.   *Cuevas v. Equifax Inc., et al.* (C.D. Cal., Case No. 2:17-cv-08604) (N.D. Ga., Case No. 1:18-cv-00033)

95.   *Cunniff v. Equifax, Inc.* (N.D. Ga., Case No. 1:18-cv-01070)

96.   *Dash v. Equifax Information Services LLC* (S.D.N.Y., Case No. 1:17-cv-07076) (N.D. Ga., Case No. 1:17-cv-05529)

97.   *Dash v. Equifax Information Services LLC* (W.D. Tex., Case No. 1:17-cv-00901) (N.D. Ga., Case No. 1:17-cv-05460)

98.   *Daughtery, et al. v. Equifax Inc.* (E.D. Ark., Case No. 4:17-cv-00597) (N.D. Ga., Case No. 1:17-cv-05228)

99.   *Davis, et al. v. Equifax Inc.* (N.D. Ala., Case No. 7:17-cv-01595) (N.D. Ga., Case No. 1:17-cv-05219)

100.   *Davis, et al. v. Equifax, Inc.* (S.D.N.Y., Case No. 1:17-cv-06883) (N.D. Ga., Case No. 1:17-cv-05125)

101.   *Day v. Equifax Inc.* (D. Colo., Case No. 1:18-cv-00042) (N.D. Ga., Case No. 1:18-cv-00364)

102.   *Dela Cruz v. Equifax Inc., et al.* (C.D. Cal., Case No. 8:17-cv-02084) (N.D. Ga., Case No. 1:18-cv-00034)

103.   *Derby v. Equifax, Inc.* (W.D. Pa., Case No. 2:17-cv-01186) (N.D. Ga., Case No. 1:17-cv-05068)

104.   *Dhuka, et al. v. Equifax, Inc.* (W.D. Tex., Case No. 1:17-cv-00919) (N.D. Ga., Case No. 1:17-cv-05463)

105.   *Diaz v. Equifax Inc.* (S.D.N.Y., Case No. 7:17-cv-08175) (N.D. Ga., Case No. 1:18-cv-00082)

106.   *DiMichele, et al. v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-06527) (N.D. Ga., Case No. 1:18-cv-000648)

107.   *Dixon, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03809)

108.   *Domino, et al. v. Equifax, Inc.* (S.D. Fla., Case No. 0:17-cv-61936) (N.D. Ga., Case No. 1:17-cv-05284)

109.   *Donnelly v. Equifax Inc. et al.* (N.D. Ga., Case No. 1:18-cv-00361)

110.   *Dowgin v. Equifax, Inc.* (D.N.J., Case No. 1:17-cv-06923) (N.D. Ga., Case No. 1:17-cv-05050)

111.   *Dremak v. Equifax, Inc.* (S.D. Cal., Case No. 3:17-cv-01829) (N.D. Ga., Case No. 1:17-cv-05193)

112.   *Dreni v. Equifax Credit Information Services* (M.D. Fla., Case No. 2:18-cv-00770) (N.D. Ga., Case No. 1:18-cv-05816)

113.   *Dressler v. U.S. Department of Education, et al.* (M.D. Fla., Case No. 2:18-cv-00311) (N.D. Ga., Case No. 1:18-cv-04345)

114.   *Duke, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03765)

115.   *Duran, et al. v. Equifax, Inc., et al.* (C.D. Cal., Case No. 8:17-cv-01571) (N.D. Ga., Case No. 1:17-cv-05023)

116.   *Duran v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-06584) (N.D. Ga., Case No. 1:17-cv-05396)

117.   *Durham v. Equifax, Inc., et al.* (N.D. Ga., Case No. 1:17-cv-03452)

118.   *Earl v. Equifax, Inc., et al.* (D.N.H., Case No. 1:17-cv-00513) (N.D. Ga., Case No. 1:17-cv-05418)

119.   *Eastman, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03512)

120.    *Eaton v. Equifax Information Services LLC* (S.D.N.Y., Case No. 7:18-cv-01958) (N.D. Ga., Case No. 1:18-cv-01146)

121.    *Edwards v. Equifax Info. Services, LLC* (D.N.J., Case No. 2:18-cv-08748) (N.D. Ga., Case No. 1:18-cv-02314)

122.    *Englert, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03509)

123.    *Eppy v. Equifax, Inc.* (S.D. Fla., Case No. 0:17-cv-61833) (N.D. Ga., Case No. 1:17-cv-05283)

124.    *Eustice v. Equifax Inc.* (S.D. Tex., Case No. 4:19-cv-02247) (N.D. Ga., Case No. 1:19-cv-03128)

125.    *Eustice v. Equifax Inc.* (S.D. Tex., Case No. 4:19-cv-02248) (N.D. Ga., Case No. 1:19-cv-03129)

126.    *Eustice v. Equifax Inc.* (S.D. Tex., Case No. 4:19-cv-02249) (N.D. Ga., Case No. 1:19-cv-03130)

127.    *Evans v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05454) (N.D. Ga., Case No. 1:17-cv-05344)

128.    *Fail, et al. v. Equifax, Inc., et al.* (S.D. Ind., Case No. 1:17-cv-03581) (N.D. Ga., Case No. 1:17-cv-05290)

129.    *Faillace v. Equifax, Inc.* (C.D. Cal., Case No. 2:17-cv-06721) (N.D. Ga., Case No. 1:17-cv-05006)

130.    *Farinella v. Equifax Information Services, LLC* (E.D.N.Y., Case No. 2:17-cv-05548) (N.D. Ga., Case No. 1:17-cv-05406)

131.    *Fausz v. Equifax Information Services, LLC* (W.D. Ky., Case No. 3:17-cv-00576) (N.D. Ga., Case No. 1:17-cv-05503)

132.    *Feehrer, et al. v. Equifax, Inc.* (D.N.J., Case No. 1:17-cv-07803) (N.D. Ga., Case No. 1:18-cv-00045)

133.    *Feied v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv005524) (N.D. Ga., Case No. 1:17-cv-05345)

10

134.  *Fiore v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03456)

135.  *Flores v. Equifax, Inc.* (N.D. Ga., Case. No. 18-cv-00117)

136.  *Flores, et al. v. Equifax Inc.* (S.D.N.Y., Case No. 7:17-cv-07088) (N.D. Ga., Case No. 1:17-cv-05530)

137.  *Forrest v. Equifax Inc.* (S.D. Tex. 1:18-cv-00113) (N.D. Ga., Case No. 1:18-cv-02936)

138.  *Frank, et al. v. Equifax Inc., et al.* (N.D. Ala., Case No. 5:17-cv-01611) (N.D. Ga., Case No. 1:17-cv-05218)

139.  *Frank v. Equifax Information Svcs.* (S.D.N.Y., Case No. 1:18-cv-03913) (N.D. Ga., Case No. 1:18-cv-02331)

140.  *Frazier v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-06587) (N.D. Ga., Case No. 1:17-cv-05395)

141.  *Fried v. Equifax Inc.* (S.D. Cal., Case No. 3:17-cv-01955) (N.D. Ga., Case No. 1:17-cv-05240)

142.  *Friedman, et al. v. Equifax, Inc., et al.* (D.N.J., Case No. 1:17-cv-07022) (N.D. Ga., Case No. 1:17-cv-05060)

143.  *Fuhrman v. Equifax Inc., et al.* (E.D. Mich., Case No. 2:17-cv-13508) (N.D. Ga., Case No. 1:17-cv-05312)

144.  *Gallant v. Equifax Inc.* (D. Md., Case No. 8:17-cv-02712) (N.D. Ga., Case No. 1:17-cv-05024)

145.  *Galpern v. Equifax, Inc., et al.* (N.D. Cal., Case No. 5:17-cv-05265) (N.D. Ga., Case No. 1:17-cv-05041)

146.  *Gastineau, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03769)

147.  *Gay v. Equifax, Inc.* (D. Colo., Case No. 1:17-cv-02417) (N.D. Ga., Case No. 1:17-cv-05216)

148.  *Geller, et al. v. Equifax, Inc.* (S.D. Fla., Case No. 9:17-cv-81056) (N.D. Ga., Case No. 1:17-cv-05288)

11

149.   *Gerstein, et al. v. Equifax Information Services, LLC* (S.D. Ohio, Case No. 1:17-cv-00593) (N.D. Ga., Case No. 1:17-cv-05048)

150.   *Gersten, et al. v. Equifax, Inc.* (S.D. Cal., Case No. 3:17-cv-01828) (N.D. Ga., Case No. 1:17-cv-05192)

151.   *Gettino v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04664)

152.   *Gibson v. Equifax, Inc.* (D. Haw., Case No. 1:17-cv-00466) (N.D. Ga., Case No. 1:17-cv-05358)

153.   *Gibson, et al. v. Equifax, Inc.* (W.D. Okla., Case No. 5:17-cv-00973) (N.D. Ga., Case No. 1:17-cv-05072)

154.   *Gladwell, et al. v. Equifax, Inc., et al.* (S.D. W. Va., Case No. 5:17-cv-04061) (N.D. Ga., Case No. 1:17-cv-05445)

155.   *Goldweber v. Equifax Inc.* (N.D. Cal., Case No. 5:17-cv-05586) (N.D. Ga., Case No. 1:17-cv-05347)

156.   *Gottesman, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03498)

157.   *Gottlieb, et al. v. Equifax, Inc.* (D.N.J., Case No. 1:17-cv-07615) (N.D. Ga., Case No. 1:18-cv-00044)

158.   *Gray, et al. v. Equifax Information Services, LLC* (W.D. Ark., Case No. 6:17-cv-06095) (N.D. Ga., Case No. 1:17-cv-05171)

159.   *Green, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03487)

160.   *Greenlee v. Equifax, Inc.* (C.D. Cal., Case No. 5:17-cv-01929) (N.D. Ga., Case No. 1:17-cv-05269)

161.   *Greenwald, et al. v. Equifax, Inc.* (D.N.H., Case No. 1:17-cv-00438) (N.D. Ga., Case No. 1:17-cv-05411)

162.   *Groover v. Equifax Inc., et al.* (S.D.N.Y., Case No. 1:17-cv-07082) (N.D. Ga., Case No. 1:17-cv-04511)

163.   *Grossberg, et al. v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-05280) (N.D. Ga., Case No. 1:17-cv-05061)

12

164. *Guillen v. Equifax, Inc.* (N.D. Ga., Case No. 1:19-cv-01580)

165. *Gulley v. Equifax Inc., et al.* (W.D. Ark., Case No. 4:17-cv-04088) (N.D. Ga., Case No. 1:17-cv-05229)

166. *Halpin v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03872)

167. *Hamilton, et al. v. Equifax, Inc.* (C.D. Cal., Case No. 2:17-cv-06899) (N.D. Ga., Case No. 1:17-cv-05266)

168. *Hamre, et al. v. Equifax Information Services, LLC* (D.N.D., Case No. 3:17-cv-00196) (N.D. Ga., Case No. 1:17-cv-05446)

169. *Harper v. Equifax Inc., et al.* (D. Mass., Case No. 1:17-cv-11785) (N.D. Ga., Case No. 1:17-cv-05453)

170. *Hebrlee, et al. v. Equifax, Inc., et al.* (N.D. Ill., Case No. 1:17-CV-07120) (N.D. Ga., Case No. 1:17-cv-05493)

171. *Henderson v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03829)

172. *Henderson v. Equifax, Inc., et al.* (D. Minn., Case No. 0:17-cv-04289) (N.D. Ga., Case No. 1:17-cv-05377)

173. *Hensley v. Equifax, Inc., et al.* (E.D. Pa., Case No. 5:17-cv-04105) (N.D. Ga., Case No. 1:17-cv-05131)

174. *Highfield v. Equifax, Inc., et al.* (N.D. Ala., Case No. 5:17-cv-01567) (N.D. Ga., Case No. 1:17-cv-4989)

175. *Hogue v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03781)

176. *Horne, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03713)

177. *House v. Equifax Inc., et al.* (S.D. Iowa, Case No. 4:17-cv-00392) (N.D. Ga., Case No. 1:17-cv-05376)

178. *House v. Equifax Inc.* (D. Kan., Case No. 2:17-cv-02523) (N.D. Ga., Case No. 1:17-cv-05102)

179. *Hyatt v. Equifax Information Services LLC, et al.* (E.D. Wis., Case No. 1:17-cv-01670) (N.D. Ga., Case No. 1:17-cv-05441)

180. *Ialacci v. Equifax Inc., et al.* (N.D. Cal., Case No. 5:17-cv-05647) (N.D. Ga., Case No. 1:17-cv-05359)

181. *Iraheta v. Equifax Information Services* (W.D. La., Case No. 5:17-cv-01363) (N.D. Ga., Case No. 1:18-cv-03792)

182. *Irwin v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05735) (N.D. Ga., Case No. 1:17-cv-05360)

183. *Jimenez v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03885)

184. *Johns, et al. v. Equifax, Inc.* (N.D. Cal., Case No. 5:17-cv-05372) (N.D. Ga., Case No. 1:17-cv-05342)

185. *Johnson v. Equifax Inc.* (D. Mont., Case No. 6:17-cv-00100) (N.D. Ga., Case No. 1:17-cv-05415)

186. *Johnson, et al. v. Equifax, Inc., et al.* (N.D. Tex., Case No. 3:17-cv-02464) (N.D. Ga., Case No. 1:17-cv-05444)

187. *Johnson, et al. v. Equifax Inc.* (N.D. Tex., Case No. 3:17-cv-03135) (N.D. Ga., Case No. 1:17-cv-05447)

188. *Jones, et al. v. Equifax Inc., et al.* (N.D. Miss., Case No. 3:17-cv-00211) (N.D. Ga., Case No. 1:17-cv-05325)

189. *Joof v. Equifax Inc.* (C.D. Cal., Case No. 2:17-cv-06659) (N.D. Ga., Case No. 1:17-cv-05003)

190. *Jorge, et al. v. Equifax, Inc.* (E.D.N.Y., Case No. 2:17-cv-05404) (N.D. Ga., Case No. 1:17-cv-05071)

191. *Kalmick, et al. v. Equifax Inc.* (W.D. Tex., Case No. 1:17-cv-00954) (N.D. Ga., Case No. 1:17-cv-05461)

192. *Katz, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03798)

193. *Kealy, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03443)

14

194.   *Kelley v. Equifax Inc. et al.* (N.D. Ga., Case No. 1:18-cv-00418)

195.   *Kemp v. Equifax, Inc., et al.* (N.D. Miss., Case No. 1:17-cv-00147) (N.D. Ga., Case No. 1:17-cv-05323)

196.   *Kendall v. Equifax Information Services, LLC* (D.N.J., Case No. 2:17-cv-06922) (N.D. Ga., Case No. 1:17-cv-05049)

197.   *Kerobyan v. Equifax Inc., et al.* (C.D. Cal., Case No. 2:18-cv-05401) (N.D. Ga., Case No. 1:18-cv-04741)

198.   *Kilgore, et al. v. Equifax Information Services LLC* (D.N.M., Case No. 1:17-cv-00942) (N.D. Ga., Case No. 1:17-cv-05070)

199.   *King v. Equifax, Inc.* (S.D. Ind., Case No. 1:17-cv-03157) (N.D. Ga., Case No. 1:17-cv-05029)

200.   *King v. Equifax Inc.* (S.D. Tex., Case No. 4:19-cv-00368) (N.D. Ga., Case No. 1:19-cv-00881)

201.   *Kishel, et al. v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:17-cv-05139)

202.   *Klavans v. Equifax Inc., et al.* (D. Del., Case No. 1:17-cv-01346) (N.D. Ga., Case No. 1:17-cv-05273)

203.   *Klein, et al. v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-05489) (N.D. Ga., Case No. 1:17-cv-05400)

204.   *Kloewer v. Equifax Inc.* (D. Colo., Case No. 1:17-cv-03149) (N.D. Ga., Case No. 1:18-cv-00208)

205.   *Knepper v. Equifax Information Services, LLC* (D. Nev., Case No. 2:17-cv-02368) (N.D. Ga., Case No. 1:17-cv-05154)

206.   *Kohn, et al. v. Equifax Inc., et al.* (D.N.J., Case No. 1:17-cv-07257) (N.D. Ga., Case No. 1:18-cv-00041)

207.   *Kozlowski v. Bank of America, N.A., et al.* (E.D. Cal., Case No. 1:18-cv-00131) (N.D. Ga., Case No. 1:18-cv-01185)

208. *Krachanus v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04694)

209. *Krawcyk v. Equifax Inc.* (W.D. Mo., Case No. 4:17-cv-00760) (N.D. Ga., Case No. 1:17-cv-05014)

210. *Kruse v. Equifax Inc.* (D. Minn., Case No. 0:19-cv-00177) (N.D. Ga., Case No. 1:19-cv-00879)

211. *Kuss, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03436)

212. *LaGasse, et al. v. Equifax, Inc., et al.* (N.D. Ga., Case No. 1:17-cv-03745)

213. *Lamar v. Equifax, Inc.* (C.D. Cal, Case No. 5:18-cv-01369) (N.D. Ga., Case No. 1:18-cv-05685)

214. *Lander, et al. v. Equifax Inc.* (E.D. Tex., Case No. 4:19-cv-00060) (N.D. Ga., Case No. 1:19-cv-00743)

215. *Lang, et al. v. Equifax Information Services, LLC* (N.D. Ill., Case No. 1:17-cv-06519) (N.D. Ga., Case No. 1:17-cv-05026)

216. *Lapter v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03445)

217. *Larson, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03905)

218. *Lawyer v. Equifax Inc.* (S.D. Tex., Case No. 4:17-cv-03161) (N.D. Ga., Case No. 1:17-cv-05498)

219. *Lee, et al. v. Equifax Inc.* (N.D. Cal., Case No. 5:17-cv-05553) (N.D. Ga., Case No. 1:17-cv-05346)

220. *Lee v. Equifax Information Services, LLC* (E.D.N.Y., Case No. 1:18-cv-03133) (N.D. Ga., Case No. 1:18-cv-04698)

221. *Leigh, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:18-cv-00116)

222. *Leonardo v. Equifax Inc.* (C.D. Cal., Case No. 2:18-cv-00647) (N.D. Ga., Case No. 1:18-cv-00622)

223.   *Levy v. Equifax Information Services, LLC, et al.* (E.D.N.Y., Case No. 1:17-cv-05354) (N.D. Ga., Case No. 1:17-cv-05063)

224.   *Lewis v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03863)

225.   *Link v. Equifax Credit Information Services* (D. Ariz., Case No. 2:18-cv-04070) (N.D. Ga., Case No. 1:18-cv-05620)

226.   *Link v. Equifax Credit Information Services Incorporated* (D. Ariz., Case No. 2:18-cv-04089) (N.D. Ga., Case No. 1:18-cv-05621)

227.   *Lipchitz v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03457)

228.   *Luciano v. Equifax Informational Services, LLC* (E.D.N.Y., Case No. 1:19-cv-00437) (N.D. Ga., Case No. 1:19-cv-01370)

229.   *Lynch, et al. v. Equifax, Inc.* (E.D. Tex., Case No. 4:17-cv-00640) (N.D. Ga., Case No. 1:17-cv-05090)

230.   *Mallh v. Equifax, Inc.* (E.D.N.Y., Case No. 1:17-cv-05555) (N.D. Ga., Case No. 1:17-cv-05398)

231.   *Maloney v. Equifax, Inc.* (E.D. Wi., Case No. 2:17-cv-01238) (N.D. Ga., Case No. 1:17-cv-05069)

232.   *Manaher v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03447)

233.   *Mann v. Equifax Information Services LLC* (E.D. Pa., Case No. 2:17-cv-04100) (N.D. Ga., Case No. 1:17-cv-05103)

234.   *Manopla v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-12275) (N.D. Ga., Case No. 1:17-cv-05492)

235.   *Manopla v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11424) (N.D. Ga., Case No. 1:17-cv-05431)

236.   *Manopla v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11440) (N.D. Ga., Case No. 1:17-cv-05435)

237.   *Manopla v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11419) (N.D. Ga., Case No. 1:17-cv-05430)

238. *Mardock v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03499)

239. *Martin, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03458)

240. *Martin v. Equifax Inc.* (M.D. Tenn., Case No. 3:17-cv-01246) (N.D. Ga., Case No. 1:17-cv-05116)

241. *Martin v. Equifax, Inc.* (N.D. Miss., Case No. 3:17-cv-00174) (N.D. Ga., Case No. 1:17-cv-05324)

242. *Martin v. Equifax, Inc., et al.* (S.D. Miss., Case No. 3:17-cv-00744) (N.D. Ga., Case No. 1:18-cv-00038)

243. *Martinez, et al. v. Equifax, Inc.* (S.D. Fla., Case No. 1:17-cv-23510) (N.D. Ga., Case No. 1:17-cv-05287)

244. *Mashburn, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04159)

245. *Mason v. Equifax, Inc.* (D.S.C., Case No. 4:17-cv-02644) (N.D. Ga., Case No. 1:17-cv-05448)

246. *McCall, et al. v. Equifax Information Services, LLC* (D. Nev., Case No. 2:17-cv-02372) (N.D. Ga., Case No. 1:17-cv-5158)

247. *McDowell, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03502)

248. *McGonnigal, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03422)

249. *McHenry, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03582)

250. *McHill, et al. v. Equifax Inc.* (D. Or., Case No. 3:17-cv-01405) (N.D. Ga., Case No. 1:17-cv-05089)

251. *McShan, et al. v. Equifax, Inc., et al.* (C.D. Cal., Case No. 2:17-cv-06764) (N.D. Ga., Case No. 1:17-cv-05020)

252. *Mead, et al. v. Equifax Inc., et al.* (D. Alaska, Case No. 3:17-cv-00208) (N.D. Ga., Case No. 1:17-cv-05251)

253.   *Meade, et al. v. Equifax, Inc.* (S.D. Ohio, Case No. 2:17-cv-00892) (N.D. Ga., Case No. 1:17-cv-05528)

254.   *Melrath v. Equifax, Inc., et al.* (D. Del., Case No. 1:17-cv-01324) (N.D. Ga., Case No. 1:17-cv-05270)

255.   *Menzer v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03459)

256.   *Messer, et al. v. Equifax, Inc.* (W.D. Tenn., Case No. 2:17-cv-02694) (N.D. Ga., Case No. 1:17-cv-05527)

257.   *Meyers, et al. v. Equifax Information Services, LLC,* (N.D. Ill., Case No. 1:17-cv-06652) (N.D. Ga., Case No. 1:17-cv-05275)

258.   *Miller, et al. v. Equifax Inc., et al.* (E.D. Cal., Case No. 2:17-cv-01872) (N.D. Ga., Case No. 1:17-cv-04996)

259.   *Miller, et al. v. Equifax Inc., et al.* (N.D. Okla., Case No. 4:17-cv-00569) (N.D. Ga., Case No. 1:17-cv-05462)

260.   *Minka, et al. v. Equifax Information Services, LLC* (E.D. Pa., Case No. 2:17-cv-04205) (N.D. Ga., Case No. 1:18-cv-00039)

261.   *Mirarchi v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04600)

262.   *Mobbs v. Equifax Inc., et al.* (N.D. Cal., Case No. 5:17-cv-05815) (N.D. Ga., Case No. 1:17-cv-05361)

263.   *Mohamedali, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03501)

264.   *Morgan v. Equifax Inc.* (E.D. Va., Case No. 3:18-cv-00173) (N.D. Ga., Case No. 1:18-cv-01738)

265.   *Morris v. Equifax, Inc.* (D. Colo., Case No. 1:17-cv-02178) (N.D. Ga., Case No. 1:17-cv-04990)

266.   *Murphy v. Equifax, Inc.* (N.D. Cal., Case No. 4:17-cv-05262) (N.D. Ga., Case No. 1:17-cv-05040)

267.   *Murphy, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03613)

268.   *Muscarella, et al. v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:18-cv-1240)

269.   *Myers, et al. v. Equifax Inc.* (E.D. Cal., Case No. 2:17-at-01878) (N.D. Ga., Case No. 1:17-cv-04997

270.   *Napier v. Equifax Inc., et al.* (D. Me., Case No. 1:17-cv-00372) (N.D. Ga., Case No. 1:17-cv-05327)

271.   *Neilan v. Equifax Inc.* (N.D. Ill., Case No. 1:17-cv-06508) (N.D. Ga., Case No. 1:17-cv-05010)

272.   *Nguyen v. Equifax Inc.* (N.D. Cal., Case No. 5:18-06143) (N.D. Ga., Case No. 1:18-cv-04920)

273.   *Ogburn v. Equifax, Inc., et al.* (E.D. Va., Case No. 3:17-cv-00644) (N.D. Ga., Case No. 1:17-cv-05436)

274.   *O'Neill v. Equifax, Inc., et al.* (N.D. Ga., Case No. 1:17-cv-03523)

275.   *O'Neill v. Equifax, Inc., et al.* (D.N.J., Case No. 1:17-cv-07284) (N.D. Ga., Case No. 1:18-cv-00043)

276.   *Ostoya, et al. v. Equifax, Inc.* (N.D. Ala., Case No. 2:17-cv-01550) (N.D. Ga., Case No. 1:17-cv-04987)

277.   *Pacelli v. Equifax Information Services, LLC* (E.D. Pa., Case No. 2:17-cv-04246) (N.D. Ga., Case No. 1:17-cv-05526)

278.   *Pagliarulo v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03460)

279.   *Palmer v. Equifax,* (D.S.C., Case No. 2:18-cv-02405) (N.D. Ga., Case No. 1:19-cv-01383)

280.   *Pantaze v. Equifax Information Services, LLC* (N.D. Ala., Case No. 2:17-cv-01530) (N.D. Ga., Case No. 1:17-cv-04986)

281.   *Parkhill v. Equifax Inc., et al.* (S.D. Tex., Case No. 4:17-cv-02931) (N.D. Ga., Case No. 1:17-cv-05496)

282.   *Partridge, et al. v. Equifax, Inc.* (D. Utah, Case No. 2:17-cv-01017) (N.D. Ga., Case No. 1:17-cv-05419)

283.   *Partridge v. Equifax, Inc.* (S.D. Ala., Case No. 1:17-cv-00423) (N.D. Ga., Case No. 1:17-CV-05227)

284.   *Paul v. Equifax, Inc.* (E.D.N.Y., Case No. 2:17-cv-06588) (N.D. Ga., Case No. 1:17-cv-05409)

285.   *Pavesi, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03476)

286.   *Pavitt, et al. v. Equifax, Inc.* (W.D. Wash., Case No. 2:17-cv-01363) (N.D. Ga., Case No. 1:17-cv-05101)*Pawlowski v. U.S. Dep't of Educ., et al.* (E.D. Va., Case No. 1:18-cv-00626) (N.D. Ga., Case No. 1:18-cv-04611)

287.   *Pellitteri, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03881)

288.   *Perkins, et al. v. Equifax Inc.* (N.D. Fla., Case No. 3:17-cv-00727) (N.D. Ga., Case No. 1:17-cv-05274)

289.   *Perkins, et al. v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-03479)

290.   *Peters, et al v. Equifax Information Services, LLC, et al.* (C.D. Cal., Case No. 8:17-cv-01634) (N.D. Ga., Case No. 1:17-cv-05381)

291.   *Peterson, et al. v. Equifax, Inc.* (S.D. Tex., Case No. 4:19-cv-00367) (N.D. Ga., Case No. 1:19-cv-00880)

292.   *Pflager v. Equifax* (N.D. Ohio, Case No. 3:18-cv-01027) (N.D. Ga., Case No. 1:18-cv-04472)

293.   *Pierre, et al. v. Equifax, Inc., et al.* (E.D. La., Case No. 2:17-cv-10520) (N.D. Ga., Case No. 1:17-cv-05537)

294.   *Pino v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:17-cv-05140)

295.   *Pleasant, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03507)

296.   *Podalsky, et al. v. Equifax, Inc.* (S.D. Fla., Case No. 1:17-cv-23465) (N.D. Ga., Case No. 1:17-cv-05286)

297. *Potente v. Equifax Info. Services, LLC* (D.N.J., Case No. 2:18-cv-10489) (N.D. Ga., Case No. 1:18-cv-03327)

298. *Powers, et al. v. Equifax Inc.* (D.S.C., Case No. 6:17-cv-02510) (N.D. Ga., Case No. 1:17-cv-05450)

299. *Prejean, et al. v. Equifax, Inc.* (D. Haw., Case No. 1:17-cv-00468) (N.D. Ga., Case No. 1:17-cv-05367)

300. *Pugliese v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03461)

301. *Quagliani v. Equifax, Inc., et al.* (D. Conn. Case No. 3:17-cv-01668) (N.D. Ga., Case No. 1:17-cv-05250)

302. *Raffin v. Equifax, Inc.* (C.D. Cal., Case No. 2:17-cv-06620) (N.D. Ga., Case No. 1:17-cv-05001)

303. *Rajput v. Equifax, Inc.* (N.D. Ala., Case No. 5:17-cv-01606) (N.D. Ga., Case No. 1:17-cv-05217)

304. *Ramsay v. Equifax, Inc.* (S.D. Tex., Case No. 4:17-cv-02783) (N.D. Ga., Case No. 1:17-cv-05495)

305. *Ramirez v. Equifax, Inc., et al.* (E.D. Pa., Case No. 2:18-cv-00083) (N.D. Ga., Case No. 1:18-cv-01025)

306. *Ray v. Equifax Inc., et al.* (D. Del., Case No. 1:17-cv-01331) (N.D. Ga., Case No. 1:17-cv-05272)

307. *Ressetar, et al. v. Equifax, Inc., et al.* (M.D. Pa., Case No. 3:17-cv-01670) (N.D. Ga., Case No. 1:18-cv-00047)

308. *Reyes v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv-06589) (N.D. Ga. Case No. 1:17-cv-05394)

309. *Reyes v. Equifax, Inc.* (E.D.N.Y., Case No. 1:17-cv-06590) (N.D. Ga., Case No. 1:17-cv-05410)

310. *Rice, et al. v. Equifax, Inc.* (N.D.W.V., Case No. 1:17-cv-00156) (N.D. Ga., Case No. 1:17-cv-05128)

311.   *Rich v. Equifax Information Services, LLC* (W.D. Pa., Case No. 3:17-cv-00229) (N.D. Ga., Case No. 1:17-cv-05505)

312.   *Richmond, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03477)

313.   *Riveles v. Equifax Information Services, Inc.* (E.D.N.Y., Case No. 2:18-cv-00349) (N.D. Ga., Case No. 1:18-cv-00480)

314.   *Ruscitto v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03444)

315.   *Salinas, et al. v. Equifax, Inc.* (N.D. Cal., Case No. 3:17-cv-05284) (N.D. Ga., Case No. 1:17-cv-05042)

316.   *Samson v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03448)

317.   *Sander v. Equifax Inc., et al.* (D.D.C., Case No. 1:17-cv-02119) (N.D. Ga., Case No. 1:17-cv-05230)

318.   *Santomauro v. Equifax Inc.* (D.D.C., Case No. 1:17-cv-01852) (N.D. Ga., Case No. 1:17-cv-05028)

319.   *Schifano, et al. v. Equifax Inc.* (C.D. Cal., Case No. 2:17-cv-06996) (N.D. Ga., Case No. 1:17-cv-05267)

320.   *Scott v. Equifax Inc.* (C.D. Cal., Case No. 2:17-cv-06715) (N.D. Ga., Case No. 1:17-cv-05005)

321.   *Seror v. Equifax Inc.* (D.N.J., Case No. 3:17-cv-11437) (N.D. Ga., Case No. 1:17-cv-05432)

322.   *Seymore, et al. v. Equifax, Inc.* (S.D. Cal., Case No. 3:17-cv-01871) (N.D. Ga., Case No. 1:17-cv-05196)

323.   *Shack v. Equifax, Inc.* (N.D. Ill., Case No. 1:19-cv-02622) (N.D. Ga., Case No. 1:19-cv-02527)

324.   *Sievers v. Equifax Inc., et al.* (D. Mont., Case No. 4:17-cv-00103) (N.D. Ga., Case No. 1:17-cv-05416)

325.   *Sikes v. Equifax Inc., et al.* (W.D.N.C., Case No. 1:17-cv-00258) (N.D. Ga., Case No. 1:17-cv-05422)

326. *Simmons, et al. v. Equifax, Inc., et al.* (N.D. Ga., Case No. 1:17-cv-03659)

327. *Skye v. Equifax Inc.* (D. Mass., Case No. 1:17-cv-11742) (N.D. Ga., Case No. 1:17-cv-05016)

328. *Smith, et al. v. Equifax Inc., et al.* (N.D. Ohio, Case No. 1:17-cv-02183) (N.D. Ga., Case No. 1:17-cv-05499)

329. *Smith, et al. v. Equifax Inc., et al.* (S.D. Tex., Case No. 4:17-cv-02939) (N.D. Ga., Case No. 1:17-cv-05497)

330. *Acosta-Smith v. Equifax Inc., et al.* (C.D. Cal., Case No. 8:18-0005) (N.D. Ga., Case No. 1:18-cv-01467)

331. *Smith v. Equifax Inc.* (N.D. Ala., Case No. 2:18-cv-01147) (N.D. Ga., Case No. 1:19-cv-00744)

332. *Solomon v. Equifax Incorporated,* (D. Ariz., Case No. 2:18-cv-01567) (N.D. Ga., Case No. 1:18-cv-02842)

333. *Southwick, et al. v. Equifax Inc., et al.* (W.D. Okla., Case No. 5:17-cv-01184) (N.D. Ga., Case No. 1:17-cv-05459)

334. *Spicer v. Equifax Inc., et al.* (N.D. Cal., Case No. 5:17-cv-05228) (N.D. Ga., Case No. 1:17-cv-05037)

335. *Sprecher v. Equifax Inc., et al.* (N.D. Ga., Case No. 1:17-cv-05141)

336. *St. Clair, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04792)

337. *Stabenow, et al. v. Equifax, Inc.* (M.D. Fla., Case No. 8:17-cv-02289) (N.D. Ga., Case No. 1:17-cv-05370)

338. *Stanfield, et al. v. Equifax Inc.* (S.D. Ill., Case No. 3:17-cv-01102) (N.D. Ga., Case No. 1:17-cv-05223)

339. *Stewart, et al. v. Equifax Inc., et al.* (E.D. Mo., Case No. 4:17-cv-02433) (N.D. Ga., Case No. 1:17-cv-05451)

340. *Stiles v. Equifax Inc., et al.* (W.D. Ky., Case No. 5:17-cv-00144) (N.D. Ga., Case No. 1:17-cv-05504)

341. *Strange v. Equifax Inc.* (W.D. La., Case No. 5:17-cv-01615) (N.D. Ga., Case No. 1:18-cv-00209)

342. *Strauchman v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03482)

343. *Tada, et al. v. Equifax, Inc.* (C.D. Cal., Case No. 2:17-cv-06666) (N.D. Ga., Case No. 1:17-cv-05004)

344. *Taenzer, et al. v. Equifax, Inc., et al.* (S.D. Iowa, Case No. 4:17-cv-00349) (N.D. Ga., Case No. 1:17-cv-05375)

345. *Tanks, et al. v. Equifax, Inc.* (S.D. Cal., Case No. 3:17-cv-01832) (N.D. Ga., Case No. 1:17-CV-05194)

346. *Tate, et al. v. Equifax, Inc.* (W.D.N.C., Case No. 3:17-cv-00555) (N.D. Ga., Case No. 1:17-cv-05424)

347. *Tepfenhart, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03571)

348. *Thomson, et al. v. Equifax Inc.* (N.D. Tex., Case No. 3:17-cv-02468) (N.D. Ga., Case No. 1:17-cv-05443)

349. *Tirelli, et al. v. Equifax Information Services, LLC* (S.D.N.Y., Case No. 7:17-cv-06868) (N.D. Ga., Case No. 1:17-cv-05124)

350. *Tomas v. Equifax Inc., et al.* (N.D. Ga. 18:-cv-00466)

351. *Tomlin, et al. v. Equifax Information Services, LLC* (E.D. Ky., Case No. 2:17-cv-00158) (N.D. Ga., Case No. 1:17-cv-05009)

352. *Tomlinson v. Equifax Inc.* (E.D. Ky., Case No. 3:17-cv-00087) (N.D. Ga., Case No. 1:17-cv-05310)

353. *Torrey v. Equifax Information Services, LLC* (N.D. Ohio, Case No. 1:17-cv-01922) (N.D. Ga., Case No. 1:17-cv-05058)

354. *Tosco, et al. v. Equifax Inc.* (S.D. Fl., Case No. 1:17-cv-24136) (N.D. Ga., Case No. 1:18-cv-00365)

355. *Trevino v. Equifax, Inc., et al.* (C.D. Cal., Case No. 2:17-cv-07180) (N.D. Ga., Case No. 1:17-cv-05268)

356. *Turner v. Equifax Inc.* (S.D. Cal., Case No. 3:17-cv-02041) (N.D. Ga., Case No. 1:17-cv-05241)

357. *Turner, et al. v. Equifax Inc. et al.* (N.D. Ga., Case No. 1:18-cv-00112)

358. *Tweeddale v. Equifax, Inc.* (M.D. Fla., Case No. 6:17-cv-01936) (N.D. Ga., Case No. 1:17-cv-05369)

359. *Vice v. Equifax Inc.* (N.D. Ga., Case No. 1:17-cv-04250)

360. *Vita, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03484)

361. *Vonwiller v. Equifax Information Services, LLC* (S.D. Cal., Case No. 3:17-cv-01839) (N.D. Ga., Case No. 1:17-cv-05195)

362. *Walker, et al. v. Equifax, Inc.* (N.D. Ala., Case No. 5:17-cv-01527) (N.D. Ga., Case No. 1:17-cv-04988)

363. *Walton v. Equifax Inc., et al.* (S.D. Ind., Case No. 1:18-cv-00225) (N.D. Ga., Case No. 1:18-cv-02863)

364. *Ward, et al. v. Equifax, Inc., et al.* (D. Md., Case No. 1:17-cv-3246) (N.D. Ga., Case No. 1:18-cv-1471)

365. *Warren v. Equifax Information Services, LLC* (N.D. Ga., Case No. 1:18-cv-02044)

366. *Washburn, et al. v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03451)

367. *Weaver, et al. v. Equifax, Inc.* (W.D.N.C., Case No. 1:17-cv-00268) (N.D. Ga., Case No. 1:17-cv-05423)

368. *Whipper, et al. v. Equifax, Inc., et al.* (W.D. Pa., Case No. 1:17-cv-00248) (N.D. Ga., Case No. 1:18-cv-00056)

369. *White, et al v. Equifax, Inc.* (C.D. Cal., Case No. 2:17-cv-07991) (N.D. Ga., Case No. 1:17-cv-05291)

370.   *Whitfill, et al. v. Equifax Inc., et al.* (N.D. Tex., Case No. 4:17-cv-00771) (N.D. Ga., Case No. 1:17-cv-05490)

371.   *Whittington v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-04940)

372.   *Wilhite v. Equifax Inc.* (S.D. Tex., Case No. 4:18-cv-02062) (N.D. Ga., Case No. 1:18-cv-03328)

373.   *Wilhite v. Equifax Inc.* (S. D. Tex., Case No. 4:18-cv-02067) (N.D. Ga., Case No. 1:18-cv-03329)

374.   *Wilhite v. Equifax Inc.* (S.D. Tex., Case No. 4:18-cv-02077) (N.D. Ga., Case No. 1:18-cv-03330)

375.   *Wilhite v. Equifax Inc.* (S.D. Tex., Case No. 4:18-cv-02080) (N.D. Ga., Case No. 1:18-cv-03332)

376.   *Wilkins v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03972)

377.   *Williams v. Equifax Inc., et al.* (D. Md., Case No. 1:17-cv-02803) (N.D. Ga., Case No. 1:17-cv-05308)

378.   *Williams v. Equifax Inc., et al.* (E.D. Mich., Case No. 2:17-cv-13307) (N.D. Ga., Case No. 1:17-cv-05311)

379.   *Williams v. Equifax Inc.* (E.D.N.Y., Case No. 1:17-cv06591) (N.D. Ga., Case No. 1:17-cv-05393)

380.   *Wiltz, et al. v. Equifax, Inc., et al.* (S.D. Tex., Case No. 4:17-cv-02778) (N.D. Ga., Case No. 1:17-cv-05494)

381.   *Wolf v. Equifax, Inc.* (N.D. Ga., Case No. 1:17-cv-03450)

382.   *Wolf v. Equifax, Inc.* (N.D. Ga., Case No. 1:18-cv-135)

383.   *Wong v. Equifax, Inc., et al.* (D.R.I., Case No. 1:17-cv-00489) (N.D. Ga., Case No. 1:17-cv-05501)

384.   *Woods, et al. v. Equifax, Inc.* (E.D. Tex., Case No. 4:17-cv-00660) (N.D. Ga., Case No. 1:18-cv-00023)

385.   *Young v. Equifax Inc.* (M.D. Fla., Case No. 2:17-cv-00538) (N.D. Ga., Case No. 1:17-cv-05326)

386.   *Zamora v. Equifax, Inc., et al.* (D.N.J., Case No. 2:17-cv-07085) (N.D. Ga., Case No. 1:17-cv-05062)

387.   *Ziegeler v. Equifax Inc.* (W.D. Tex., Case No. 6:19-cv-00260) (N.D. Ga. Case No. 1:19-cv-01996)

388.   *Zweig v. Equifax, Inc.* (E.D.N.Y., Case No. 1:17-cv-05366) (N.D. Ga., Case No. 1:17-cv-05067)

389.   *Zweig, et al. v. Equifax Inc., et al.* (S.D.N.Y., Case No. 7:17-cv-07090) (N.D. Ga., Case No. 1:17-cv-05531)

390.   *Zribi v. Equifax, Inc., et al.* (D. Conn., Case No. 3:17-cv-01710) (N.D. Ga., Case No. 1:17-cv-05328)

# EXHIBIT 2

## EQUIFAX BUSINESS PRACTICES COMMITMENTS

Unless otherwise specified below, the following security measures or their equivalents will be deployed and maintained by Equifax for at least 5 years from the date the District Court grants final approval of the Settlement Agreement unless otherwise specified below:

1    **Scope:** This Agreement shall apply to all networking equipment, databases or data stores, applications, servers, and endpoints that:  (1) are capable of accessing, using or sharing software, data, and hardware resources; (2) are owned, operated, and/or controlled by Equifax; and (3) collect, process, store, have access, or grant access to Personal Information of consumers who reside in the United States, but excluding networking equipment, databases or data stores, applications, servers, or endpoints outside of the U.S. where access to Personal Information is restricted using a risk-based control ("Equifax Network").

   a.  "Personal Information" shall have the same meaning as set forth in the data privacy laws in the states in which Class Members reside, unless preempted by federal law.

   b.  The "NIST Standard" refers to the most recent applicable NIST guidance, beginning with NIST 800-53r4, as the primary set of standards, definitions, and controls. Where this Agreement requires Equifax to test cyber resilience, Equifax will use an industry-recognized cybersecurity framework (for example, NIST CSF framework). Where this Agreement refers to "NIST or another comparable standard," Equifax either will use the NIST standard indicated above or another industry-recognized cybersecurity standard that satisfies Regulator Requirements.

   c.  "Regulator" means the Federal Trade Commission ("FTC"), the Consumer Financial Protection Bureau ("CFPB"), or the multi-state group of state Attorneys General investigating the 2017 Data Breach. If no Regulator is willing or able to make a determination under this Agreement, then one of the attorneys designated as Co-Lead Counsel for the Consumer Plaintiffs in this multi-district

1

litigation, or their law firms, and Equifax's CISO or their designee shall, in good faith, reach a determination.

2    **Information Security Program:** Within ninety (90) days of final approval, Equifax shall implement, and thereafter regularly maintain, review, and revise a comprehensive Information Security Program that is reasonably designed to protect the confidentiality, integrity, and availability of the Personal Information that Equifax collects, processes, or stores on the Equifax Network.

3    **Managing Critical Assets:** Equifax shall identify and document a comprehensive IT asset inventory, using an automated tool(s) where practicable, that, consistent with NIST or another comparable standard, will inventory and classify, and issue reports on, all assets that comprise the Equifax Network, including but not limited to software, applications, network components, databases, data stores, tools, technology, and systems.   The asset inventory required under this paragraph shall be regularly updated and, at a minimum, identify: (a) the name of the asset; (b) the version of the asset; (c) the owner of the asset; (d) the asset's location within the Equifax Network; and (e) the asset's criticality rating. Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process[1] establishing that hardware and software within the Equifax Network be rated based on criticality, factoring in whether such assets are used to collect, process, or store Personal Information.   Equifax shall comply with this provision by June 30, 2020.

4    **Data Classification:** Equifax shall maintain and regularly review and revise as necessary a data classification and handling standard.

---

[1] "Governance Process" shall mean any written policy, standard, procedure or process (or any combination thereof) designed to achieve a control objective with respect to the Equifax Network.

**5**    **Security Information and Event Management:** Consistent with NIST or another comparable standard, Equifax shall implement a comprehensive, continuous, risk-based SIEM solution (or equivalent). Equifax shall continuously monitor, and shall test on at least a monthly basis, any tool used pursuant to this paragraph, to properly configure, regularly update, and maintain the tool, to ensure that the Equifax Network is adequately monitored.

**6**    **Logging and Monitoring:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing: (1) risk-based monitoring and logging of security events, operational activities, and transactions on the Equifax Network, (2) the reporting of anomalous activity through the use of appropriate platforms, and (3) requiring tools used to perform these tasks be appropriately monitored and tested to assess proper configuration and maintenance. The Governance Process shall include the classification of security events based on severity and appropriate remediation timelines based on classification.

**7**    **Vulnerability Scanning:** Equifax shall implement and maintain a risk-based vulnerability scanning program reasonably designed to identify and assess vulnerabilities within the Equifax Network.

**8**    **Penetration Testing:** Equifax shall implement and maintain a risk-based penetration-testing program reasonably designed to identify and assess security vulnerabilities within the Equifax Network.

**9**    **Vulnerability Planning:** Equifax shall rate and rank the criticality of all vulnerabilities within the Equifax Network. For each vulnerability that is ranked most critical, Equifax shall commence remediation planning within twenty-four (24) hours after the vulnerability has been rated as critical and shall apply the remediation within one (1) week after the vulnerability has received a critical rating.  If the remediation cannot be applied within one (1) week after the vulnerability has received a critical rating, Equifax shall identify or implement compensating controls designed to protect Personal Information as soon as practicable but no later than one (1) week after the vulnerability received a critical rating.

3

**10**     **Patch Management:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process to maintain, keep updated, and support the software on the Equifax Network. Equifax shall maintain reasonable controls to address the potential impact that security updates and patches may have on the Equifax Network and shall maintain a tool that includes an automated Common Vulnerabilities and Exposures (CVE) feed with regular updates regarding known CVEs.

**11**     **Threat Management:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing a threat management program designed to appropriately monitor the Equifax Network for threats and assess whether monitoring tools are appropriately configured, tested, and updated.

**12**     **Access Control and Account Management**: Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process established to appropriately manage Equifax Network accounts. This Governance Process shall include, at a minimum, (1) implementing appropriate password, multi-factor, or equivalent authentication protocols; (2) implementing and maintaining appropriate policies for the secure storage of Equifax Network account passwords, including policies based on industry best practices; and (3) limiting access to Personal Information by persons accessing the Equifax Network on a least-privileged basis.

**13**     **File Integrity Monitoring**: Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process established to provide prompt notification of unauthorized modifications to the Equifax Network.

**14**     **Legacy Systems**: Equifax shall develop and implement a risk-based plan to remediate current legacy systems on a schedule that provides for remediation within five years following final approval of this Agreement and which includes applying compensating controls until the systems are remediated.  Equifax shall also maintain a Governance Process for active lifecycle management for replacing and deprecating legacy systems when they reach end of life.

4

**15**    **Encryption:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process requiring Equifax either to encrypt Personal Information or otherwise implement adequate compensating controls.

**16**    **Data Retention:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing a retention schedule for Personal Information on the Equifax Network and a process for deletion or destruction of Personal Information when such information is no longer necessary for a business purpose, except where such information is otherwise required to be maintained by law.

**17**    **TrustedID Premier**: Equifax, including by or through any partner, affiliate, agent, or third party, shall not use any information provided by consumers (or the fact that the consumer provided information) to enroll in TrustedID Premier to sell, upsell, or directly market or advertise its fee-based products or services.

**18**    **Mandatory Training**: Equifax shall establish an information security training program that includes, at a minimum, at least annual information security training for all employees, with additional training to be provided as appropriate based on employees' job responsibilities.

**19**    **Vendor Management:** Equifax shall oversee its third party vendors who have access to the Equifax Network by maintaining and periodically reviewing and revising, as needed, a Governance Process for assessing vendor compliance in accordance with Equifax's Information Security Program to assess whether the vendor's security safeguards are appropriate for that business, which Governance Process requires vendors by contract to implement and maintain such safeguards and to notify Equifax within seventy-two (72) hours of discovering a security event, where feasible.

20    **Incident Response Exercises:** Equifax shall conduct, at a minimum, biannual incident response plan exercises to test and assess its preparedness to respond to a security event.

21    **Breach Notification:** Equifax shall comply with the state data breach notification laws, as applicable, and unless preempted by federal law.

22    **Information Security Spending:** Equifax shall ensure that its Information Security Program receives the resources and support reasonably necessary for the Information Security Program to function as required by this Settlement.  In addition, over a five-year period beginning 1/1/2019, Equifax shall spend a minimum of $1 billion on data security and related technology.

23    **Third-Party Assessments:**  Equifax shall engage a Third-Party Assessor meeting the criteria specified in this Agreement to conduct a SOC 2 Type 2 attestation, or to conduct an assessment using industry-recognized procedures and standards in satisfaction of Regulator requirements for this Agreement (the "Third-Party Assessments").  The Third-Party Assessments will meet the following minimum standards, unless a Regulator expressly authorizes otherwise:

   a. The Third-Party Assessments will be conducted by an unbiased, independent, cybersecurity organization agreeable both to Equifax and a Regulator. Prior to selection, Equifax will disclose to the Regulator approving the Third-Party Assessor any compensated engagement by Equifax of the Third-Party Assessor in the 2 years prior to the assessment. The Third-Party Assessor shall be a Certified Information Systems Security Professional ("CISSP") or a Certified Information Systems Auditor ("CISA"), or a similarly qualified organization; and have at least five (5) years of experience evaluating the effectiveness of computer system security or information system security.

   b. The scope of the Third-Party Assessments, including the assertion statements required, will be established by the Third-Party Assessor in consultation with Equifax.

c.  The Third-Party Assessments will evaluate Equifax's Information Security Program, including its policies and practices, consistent with NIST or another comparable standard.

d.  The reporting periods for the Third-Party Assessments shall (1) cover the first 180 days following final approval of this Agreement for the initial Third-Party Assessment, and each two-year period thereafter for a total of seven (7) years.  Provided, however, that the parties agree in good faith to adjust this timeline to align with Third-Party Assessments performed for Regulators to the extent that they are used to satisfy this Agreement.

e.  The Third-Party Assessor will confirm that Equifax has complied with the terms of this Agreement.

f.  The Third-Party Assessments will identify deficiencies in Equifax's Information Security Program and, in good faith cooperation with Equifax's CISO or their designee, prioritize and establish dates by which Equifax shall remediate the deficiencies identified or implement compensating controls.

g.  Within 30 days after the close of each reporting period in Paragraph 23(d) above, the Third-Party Assessor will provide to a designated Consumer Plaintiffs' Counsel a verification of compliance with this Agreement, which includes the identification of material deficiencies and Equifax's corresponding plan pursuant to Paragraph 23(f).

h.  Equifax may use a Third-Party Assessment performed in satisfaction of obligations to government entities to meet the Third-Party Assessment requirement here, provided that the assessment complies with Paragraph 23.

24   **Regulator Requirements**: The Parties acknowledge that Equifax may be obligated to comply with requirements governing Equifax's Information Security Program and Third-Party Assessments as part of the resolution of claims stemming from the 2017 Data Breach and asserted against Equifax

by certain government entities (the "Regulator Requirements"). In the event that any of the specific obligations set forth in the above provisions conflict with provisions set forth in the Regulator Requirements regarding the same or similar obligations, then the more restrictive Regulator provision shall apply and supersede the less restrictive provision in this Agreement.

25   **Miscellaneous:** In the event that technological or industry developments or intervening changes in law render any of the provisions set forth in this Agreement obsolete or make compliance by Equifax with any provision impossible or technically impractical, Equifax will provide notice to Co-Lead Counsel for Consumer Plaintiffs. If the Parties reach a mutual agreement that the elimination or modification of a provision is appropriate, they may jointly petition the Court to eliminate or modify such provision. If the Parties fail to reach an agreement, Equifax may petition the Court to eliminate or modify such provision. Under any circumstances, to the extent Consumer Plaintiffs believe that Equifax is not complying with any business practices commitments, they will first meet and confer with Equifax prior to seeking relief from the Court.

# EXHIBIT 3

# PROPOSED CONSENT ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| _____ ) | MDL Docket No. 2800 |
| In re: Equifax, Inc. Customer ) | Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation ) |  |
| ) | CONSUMER CASES |
| ) |  |
| _____ ) |  |

## [PROPOSED] CONSENT ORDER

On July ___, 2019, the Consumer Plaintiffs, by and through the Settlement Class Representatives on behalf of themselves and the Settlement Class, entered into a Settlement Agreement with Defendants Equifax Inc., Equifax Information Services LLC, and Equifax Consumer Services LLC (collectively "Equifax") to resolve the consumer track of the above-captioned litigation.

Pursuant to Sections 2.7, 4.1.1, and 4.1.2, and Exhibits 2 and 3 of the Settlement Agreement, Equifax is obligated to undertake certain Business Practice Commitments that are to be memorialized in a Consent Order entered by this Court in connection with the Judgment. The Court, having reviewed the Settlement Agreement, Exhibits, and Business Practices Commitments set forth therein, hereby ORDERS as follows:

Unless otherwise specified below, the following security measures or their equivalents will be deployed and maintained by Equifax for at least five (5) years from the date this Court grants final approval of the Settlement Agreement:

1. **Scope:** This Order shall apply to all networking equipment, databases or data stores, applications, servers, and endpoints that: (1) are capable of accessing, using or sharing software, data, and hardware resources; (2) are owned, operated, and/or controlled by Equifax; and (3) collect, process, store, have access, or grant access to Personal Information of consumers who reside in the United States, but excluding networking equipment, databases or data stores, applications, servers, or endpoints outside of the U.S. where access to Personal Information is restricted using a risk-based control ("Equifax Network"). For purposes of this Order, the following definitions apply:

   a. "Personal Information" shall have the same meaning as set forth in the data privacy laws in the states in which Class Members reside, unless preempted by federal law.

   b. The "NIST Standard" refers to the most recent applicable NIST guidance, beginning with NIST 800-53r4, as the primary set of standards, definitions, and controls. Where this Order requires

2

Equifax to test cyber resilience, Equifax will use an industry-recognized cybersecurity framework (for example, NIST CSF framework). Where this Order refers to "NIST or another comparable standard," Equifax either will use the NIST standard indicated above or another industry-recognized cybersecurity standard that satisfies Regulator Requirements.

c. "Regulator" means the Federal Trade Commission ("FTC"), the Consumer Financial Protection Bureau ("CFPB"), or the multi-state group of state Attorneys General investigating the 2017 Data Breach. If no Regulator is willing or able to make a determination under this Order, then one of the attorneys designated as Co-Lead Counsel for the Consumer Plaintiffs in this multi-district litigation, or their law firms, and Equifax's CISO or their designee shall, in good faith, reach a determination.

2. **Information Security Program:** Within ninety (90) days of final approval of the Settlement Agreement, Equifax shall implement, and thereafter regularly maintain, review, and revise a comprehensive Information Security Program that is reasonably designed to protect the

confidentiality, integrity, and availability of the Personal Information that Equifax collects, processes, or stores on the Equifax Network.

3. **Managing Critical Assets:** Equifax shall identify and document a comprehensive IT asset inventory, using an automated tool(s) where practicable, that, consistent with NIST or another comparable standard, will inventory and classify, and issue reports on, all assets that comprise the Equifax Network, including but not limited to software, applications, network components, databases, data stores, tools, technology, and systems. The asset inventory required under this paragraph shall be regularly updated and, at a minimum, identify: (a) the name of the asset; (b) the version of the asset; (c) the owner of the asset; (d) the asset's location within the Equifax Network; and (e) the asset's criticality rating. Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process[1] establishing that hardware and software within the Equifax Network be rated based on criticality, factoring in whether such assets are used to collect, process, or store

---

[1] "Governance Process" shall mean any written policy, standard, procedure or process (or any combination thereof) designed to achieve a control objective with respect to the Equifax Network.

Personal Information. Equifax shall comply with this provision by June 30, 2020.

4.    **Data Classification:** Equifax shall maintain and regularly review and revise as necessary a data classification and handling standard.

5.    **Security Information and Event Management:** Consistent with NIST or another comparable standard, Equifax shall implement a comprehensive, continuous, risk-based SIEM solution (or equivalent). Equifax shall continuously monitor, and shall test on at least a monthly basis, any tool used pursuant to this paragraph, to properly configure, regularly update, and maintain the tool, to ensure that the Equifax Network is adequately monitored.

6.    **Logging and Monitoring:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing: (1) risk-based monitoring and logging of security events, operational activities, and transactions on the Equifax Network, (2) the reporting of anomalous activity through the use of appropriate platforms, and (3) requiring tools used to perform these tasks be appropriately monitored and tested to assess proper configuration and maintenance. The Governance

Process shall include the classification of security events based on severity and appropriate remediation timelines based on classification.

7. **Vulnerability Scanning:** Equifax shall implement and maintain a risk-based vulnerability scanning program reasonably designed to identify and assess vulnerabilities within the Equifax Network.

8. **Penetration Testing:** Equifax shall implement and maintain a risk-based penetration-testing program reasonably designed to identify and assess security vulnerabilities within the Equifax Network.

9. **Vulnerability Planning:** Equifax shall rate and rank the criticality of all vulnerabilities within the Equifax Network. For each vulnerability that is ranked most critical, Equifax shall commence remediation planning within twenty-four (24) hours after the vulnerability has been rated as critical and shall apply the remediation within one (1) week after the vulnerability has received a critical rating. If the remediation cannot be applied within one (1) week after the vulnerability has received a critical rating, Equifax shall identify or implement compensating controls designed to protect Personal Information as soon as practicable but no later than one (1) week after the vulnerability received a critical rating.

10. **Patch Management:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process to maintain, keep updated, and support the software on the Equifax Network. Equifax shall maintain reasonable controls to address the potential impact that security updates and patches may have on the Equifax Network and shall maintain a tool that includes an automated Common Vulnerabilities and Exposures (CVE) feed with regular updates regarding known CVEs.

11. **Threat Management:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing a threat management program designed to appropriately monitor the Equifax Network for threats and assess whether monitoring tools are appropriately configured, tested, and updated.

12. **Access Control and Account Management**: Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process established to appropriately manage Equifax Network accounts. This Governance Process shall include, at a minimum, (1) implementing appropriate password, multi-factor, or equivalent authentication protocols; (2) implementing and maintaining appropriate policies for the secure storage of Equifax Network account passwords, including policies based

on industry best practices; and (3) limiting access to Personal Information by persons accessing the Equifax Network on a least-privileged basis.

13. **File Integrity Monitoring**: Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process established to provide prompt notification of unauthorized modifications to the Equifax Network.

14. **Legacy Systems**: Equifax shall develop and implement a risk-based plan to remediate current legacy systems on a schedule that provides for remediation within five years following entry of this Order and which includes applying compensating controls until the systems are remediated. Equifax shall also maintain a Governance Process for active lifecycle management for replacing and deprecating legacy systems when they reach end of life.

15. **Encryption:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process requiring Equifax either to encrypt Personal Information or otherwise implement adequate compensating controls.

16. **Data Retention:** Equifax shall maintain, regularly review and revise as necessary, and comply with a Governance Process establishing a retention

schedule for Personal Information on the Equifax Network and a process for deletion or destruction of Personal Information when such information is no longer necessary for a business purpose, except where such information is otherwise required to be maintained by law.

17.   **TrustedID Premier**: Equifax, including by or through any partner, affiliate, agent, or third party, shall not use any information provided by consumers (or the fact that the consumer provided information) to enroll in TrustedID Premier to sell, upsell, or directly market or advertise its fee-based products or services.

18.   **Mandatory Training**: Equifax shall establish an information security training program that includes, at a minimum, at least annual information security training for all employees, with additional training to be provided as appropriate based on employees' job responsibilities.

19.   **Vendor Management:** Equifax shall oversee its third party vendors who have access to the Equifax Network by maintaining and periodically reviewing and revising, as needed, a Governance Process for assessing vendor compliance in accordance with Equifax's Information Security Program to assess whether the vendor's security safeguards are appropriate for that business, which Governance Process requires vendors

by contract to implement and maintain such safeguards and to notify Equifax within seventy-two (72) hours of discovering a security event, where feasible.

20. **Incident Response Exercises:** Equifax shall conduct, at a minimum, biannual incident response plan exercises to test and assess its preparedness to respond to a security event.

21. **Breach Notification:** Equifax shall comply with the state data breach notification laws, as applicable, and unless preempted by federal law.

22. **Information Security Spending:** Equifax shall ensure that its Information Security Program receives the resources and support reasonably necessary for the Information Security Program to function as required by this Settlement. In addition, over a five-year period beginning January 1, 2019, Equifax shall spend a minimum of $1,000,000,000 ($1 billion) on data security and related technology.

23. **Third-Party Assessments:** Equifax shall engage a Third-Party Assessor meeting the criteria specified in this Order to conduct a SOC 2 Type 2 attestation, or to conduct an assessment using industry-recognized procedures and standards in satisfaction of Regulator requirements for this Order (the "Third-Party Assessments"). The Third-Party Assessments will

meet the following minimum standards, unless a Regulator expressly authorizes otherwise:

a. The Third-Party Assessments will be conducted by an unbiased, independent, cybersecurity organization agreeable both to Equifax and a Regulator. Prior to selection, Equifax will disclose to the Regulator approving the Third-Party Assessor any compensated engagement by Equifax of the Third-Party Assessor in the 2 years prior to the assessment. The Third-Party Assessor shall be a Certified Information Systems Security Professional ("CISSP") or a Certified Information Systems Auditor ("CISA"), or a similarly qualified organization; and have at least five (5) years of experience evaluating the effectiveness of computer system security or information system security.

b. The scope of the Third-Party Assessments, including the assertion statements required, will be established by the Third-Party Assessor in consultation with Equifax.

c. The Third-Party Assessments will evaluate Equifax's Information Security Program, including its policies and practices, consistent with NIST or another comparable standard.

d.  The reporting periods for the Third-Party Assessments shall (1) cover the first 180 days following final approval of the Settlement Agreement for the initial Third-Party Assessment, and each two-year period thereafter for a total of seven (7) years. Provided, however, that the parties agree in good faith to adjust this timeline to align with Third-Party Assessments performed for Regulators to the extent that they are used to satisfy this Order.

e.  The Third-Party Assessor will confirm that Equifax has complied with the terms of this Order.

f.  The Third-Party Assessments will identify deficiencies in Equifax's Information Security Program and, in good faith cooperation with Equifax's CISO or their designee, prioritize and establish dates by which Equifax shall remediate the deficiencies identified or implement compensating controls.

g.  Within 30 days after the close of each reporting period in Paragraph 23(d) above, the Third-Party Assessor will provide to Consumer Plaintiffs' Co-Lead Counsel a verification of compliance with this Order, which includes the identification of material deficiencies and Equifax's corresponding plan pursuant to Paragraph 23(f).

h. Equifax may use a Third-Party Assessment performed in satisfaction of obligations to government entities to meet the Third-Party Assessment requirement here, provided that the assessment complies with Paragraph 23 of this Order.

24. **Regulator Requirements**: The Parties and Court acknowledge that Equifax may be obligated to comply with requirements governing Equifax's Information Security Program and Third-Party Assessments as part of the resolution of claims stemming from the 2017 Data Breach and asserted against Equifax by certain government entities (the "Regulator Requirements"). In the event that any of the specific obligations set forth in the above provisions conflict with provisions set forth in the Regulator Requirements regarding the same or similar obligations, then the more restrictive Regulator provision shall apply and supersede the less restrictive provision in this Order.

25. **Miscellaneous:** In the event that technological or industry developments or intervening changes in law render any of the provisions set forth in this Order obsolete or make compliance by Equifax with any provision impossible or technically impractical, Equifax will provide notice to Consumer Plaintiffs Co-Lead Counsel. If the Parties reach a mutual

agreement that the elimination or modification of a provision is appropriate, they may jointly petition the Court to eliminate or modify such provision. If the Parties fail to reach an agreement, Equifax may petition the Court to eliminate or modify such provision. Under any circumstances, to the extent Consumer Plaintiffs believe that Equifax is not complying with any provision of this Order, they will first meet and confer with Equifax prior to seeking relief from the Court.

26. **Continuing Jurisdiction and Enforcement:** The Court retains jurisdiction over this matter and the Parties for purposes of enforcing the terms of this Consent Order.

IT IS SO ORDERED this ____ day of _____, 2019.

_____
THOMAS W. THRASH, JR.
United States District Judge

# EXHIBIT 4

# CREDIT MONITORING AND RESTORATION SERVICES

# <u>Three-Bureau Credit Monitoring Services</u>

The following provisions are subject to the terms and definitions set forth in the Parties'
Settlement Agreement (the "Agreement"). The Credit Monitoring Services as defined in the
Agreement shall include:

1. Daily Consumer Report monitoring from each of the three nationwide Consumer
   Reporting Agencies showing key changes to one or more of a Settlement Class
   Member's Consumer Reports, including automated alerts when the following occur:
   new accounts are opened; inquiries or requests for Settlement Class Member's
   Consumer Report for the purpose of obtaining credit; changes to a Settlement Class
   Member's address; and negative information, including delinquencies or
   bankruptcies.

2. On-demand online access to a free copy of a Settlement Class Member's Experian
   Consumer Report, updated on a monthly basis;

3. Automated alerts, using public or proprietary data sources:

   i.   when data elements submitted by the Settlement Class Member for
        monitoring (such as a Social Security number, email address, or credit
        card number) are discovered on suspicious web sites, including
        underground web sites known as the "dark web";

   ii.  when names, aliases, and addresses have been associated with the
        Settlement Class Member's Social Security number;

   iii. when a payday loan or certain other unsecured credit has been taken or
        opened using the Settlement Class Member's Social Security number;

iv.  when a Settlement Class Member's information matches information in arrest records or criminal court records;

v.  when a Settlement Class Member's information is used for identity authentication;

vi.  when a Settlement Class Member's mail has been redirected through the United States Postal Service;

vii.  when banking activity is detected related to new deposit account applications, opening of new deposit accounts, changes to Settlement Class Member's personal information on an account, and new signers being added to a Settlement Class Member's account;

viii.  when a balance is reported on a Settlement Class Member's credit line that has been inactive for at least six months.

4. One Million Dollars ($1,000,000) in identity theft insurance to cover loss related to a stolen identity event, including coverage prior to the Settlement Class Member's enrollment in the Credit Monitoring Services, provided the loss results from a stolen identity event first discovered during the policy period and subject to the terms of the insurance policy;

5. A customer service center to provide assistance with enrollment, website navigation, monitoring alerts questions, dispute assistance, fraud resolution assistance, and other assistance related to the Credit Monitoring Services;

6. Full Identity Restoration Services as described below; and

7. For Settlement Class Members under the age of 18, a parent or guardian can enroll the Settlement Class Member under the age of 18 to receive the following services:

2

alerts when data elements submitted for monitoring appear on suspicious websites, including underground websites known as the "dark web;" alerts when the Social Security number of a Settlement Class Member under the age of 18 is associated with new names or addresses or the creation of a Consumer Report at one or more of the three nationwide Consumer Reporting Agencies; and Full Service Identity Restoration, working with the legal guardian, in the event that a Settlement Class Member under the age of 18 has their identity compromised. Upon turning 18, the Settlement Class Member can enroll in the Credit Monitoring Services. If a Settlement Class Member under the age of 18 has an Experian Consumer Report with sufficient detail to permit authentication, a parent or guardian may enroll them in the Credit Monitoring Services prior to their eighteenth birthday.

# **Restoration Services**

The following provisions are subject to the terms and definitions set forth in the Parties' Settlement Agreement (the "Agreement"). Restoration Services as described in the Agreement consist of "Assisted Identity Restoration" and "Full Service Identity Restoration" provided by a third party not affiliated with Equifax.

1. Assisted Identity Restoration: Any Settlement Class Member who is not enrolled in the Credit Monitoring Services may avail themselves of Assisted Identity Restoration for seven (7) years from the Effective Date. Assisted Identity Restoration includes assignment of a dedicated identity theft restoration specialist to a Settlement Class Member who has experienced an identity theft event. The specialist provides assistance to the Settlement Class Member in addressing that identity theft event, including a customized step-by-step process with form letters to contact companies, government agencies, Consumer Reporting Agencies, or others, and by participating in conference calls with an affected financial institution or government agency related to the identity theft event.

2. Full Service Identity Restoration: Any Affected Consumer who is enrolled in the Credit Monitoring Services may avail themselves of Full Service Identity Restoration while they are enrolled. Full Service Identity Restoration includes assignment of a dedicated identity theft restoration specialist to a Settlement Class Member who has experienced an identity theft event, as well as use of a specialized limited power of attorney to assist the Settlement Class Member in addressing the identity theft event, including by contacting companies, government agencies, or Consumer Reporting Agencies on behalf of the Settlement Class Member. Full Service Identity Restoration

also includes the use of interactive dispute letters.

# Equifax One-Bureau Credit Monitoring Services

The following provisions are subject to the terms and definitions set forth in the Parties'

Settlement Agreement (the "Agreement").

Equifax One-Bureau Credit Monitoring Services will include the following:

1. Daily Consumer Report monitoring from Equifax showing key changes to the enrolled Settlement Class Member's Equifax Information Services LLC ("EIS") Consumer Report including automated alerts when the following occur: new accounts are opened; inquiries or requests for an Affected Consumer's Consumer Report for the purpose of obtaining credit; changes to an Affected Consumer's address; and negative information, such as delinquencies or bankruptcies;

2. On-demand online access to a free copy of an enrolled Settlement Class Member's EIS Consumer Report, updated on a monthly basis;

3. Automated alerts using certain available public and proprietary data sources when data elements submitted by an enrolled Settlement Class Member for monitoring, such as Social Security numbers, email addresses, or credit card numbers, appear on suspicious websites, including underground websites known as the "dark web;" and

4. For Settlement Class Members under the age of 18, Equifax shall provide child monitoring services where the validated parent or guardian can enroll the Settlement Class Member under the age of 18 in these services. Child monitoring services include: alerts when data elements such as a Social Security number submitted for monitoring appear on suspicious websites, including underground websites known as the "dark web;" for minors who do not have an EIS Consumer Report, an EIS Consumer Report is created, locked, and then monitored, and for minors with an EIS

Consumer Report, their Consumer Report is locked and then monitored. The types of alerts that minors may receive through child monitoring services are the same as the types of alerts that adults receive.

# EXHIBIT 5

# ORDER DIRECTING NOTICE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| _____ | ) MDL Docket No. 2800 |
| In re: Equifax, Inc. Customer | ) Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation | ) |
| | ) CONSUMER ACTIONS |
| | ) |
| _____ | ) |

## <u>ORDER DIRECTING NOTICE</u>

Before the Court is the Consumer Plaintiffs' unopposed motion to permit issuance of class notice of the proposed class action settlement. Having reviewed the proposed settlement agreement, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed settlement satisfies the criteria of Federal Rule of Civil Procedure 23(e) such that the Court will likely be able to approve the proposed settlement as fair, reasonable, and adequate, and that issuance of notice of the proposed settlement in accordance with the proposed notice plan is appropriate. Accordingly, good cause appearing in the record, **IT IS HEREBY ORDERED THAT**:

### <u>The Settlement Class and Class Counsel</u>

(1)    As set forth more fully herein, the Court finds that giving notice of the proposed settlement is justified pursuant to Federal Rule of Civil Procedure

23(e)(1). The Court finds that it will likely be able to approve the proposed settlement as fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the following settlement class for purposes of judgment on the settlement:

> The approximately 147 million U.S. consumers identified by Equifax whose personal information was compromised as a result of the cyberattack and data breach announced by Equifax on September 7, 2017.[1]

(2)    For settlement purposes, the Court determines the proposed settlement class meets all the requirements of Rule 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representatives are typical of absent class members; that the class representatives will fairly and adequately protect the interests of the class, as they have no interests antagonistic to or in conflict with the class and have retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

---

[1] Excluded from the settlement class are: (i) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the settlement class.

(3)    The Court appoints the named plaintiffs identified in Exhibit 10 as representatives of the proposed settlement class.

(4)    The following lawyers are designated as settlement class counsel pursuant to Rule 23(g): Kenneth S. Canfield of Doffermyre Shields Canfield & Knowles, LLC; Amy E. Keller of DiCello Levitt & Gutzler, LLC; Norman E. Siegel of Stueve Siegel Hanson LLP; and Roy Barnes of Barnes Law Group, LLC. The Court finds that these lawyers are experienced and will adequately protect the interests of the settlement class.

## Preliminary Evaluation of the Proposed Settlement

(5)    Upon preliminary review, the Court finds the proposed settlement provides a recovery for the class that is within the range of what could be approved as fair, reasonable, and adequate, taking into account all of the risks, expense, and delay of continued litigation; is the result of numerous good faith and arm's-length negotiations that took place under the auspices of a prominent national mediator; is not otherwise deficient; otherwise meets the criteria for approval; and thus warrants issuance of notice to the settlement class.

(6)    In making this determination, the Court has considered the substantial monetary and non-monetary benefits to the class; the specific risks faced by the class in prevailing on Consumer Plaintiffs' claims; the stage of the proceedings at

which the settlement was reached; the effectiveness of the proposed method for distributing relief to the class; the proposed manner of allocating benefits to class members; and all of the other factors required under Rule 23.

## **Approval Hearing**

(7)     An approval hearing shall take place before the Court on _____, 2019, at _____ a.m./p.m. in Courtroom 2108 of the United States District Court for the Northern District of Georgia, located at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303-3309 to determine whether: (a) the proposed settlement class should be certified for settlement purposes pursuant to Rule 23; (b) the settlement should be approved as fair, reasonable, and adequate and, in accordance with the settlement's terms, this matter should be dismissed with prejudice; (c) class counsel's application for attorneys' fees and expenses should be approved; and (d) the application for the class representatives to receive service awards should be approved. Any other matters the Court deems necessary and appropriate will also be heard.

(8)     Any settlement class member who has not timely and properly excluded themselves from the settlement class in the manner described below may appear at the approval hearing in person or through counsel and be heard, as

allowed by the Court, regarding the proposed settlement; provided, however, that no class member who excluded themselves from the class shall be entitled to object or otherwise appear, and, further provided, that no class member shall be heard in opposition to the settlement unless the class member complies with the requirements of this Order pertaining to objections, which are described below.

## Administration and CAFA Notice

(9)   JND Legal Administration is appointed as the settlement administrator, with responsibility for claim submissions, certain notice functions, and administration pursuant to the terms of the settlement agreement. The claim form attached to the settlement agreement is approved, as are versions derived therefrom to be used during the extended claims period and for claims by minors, as described in the motion for this order directing notice. The settlement administrator may, where necessary, require individuals to provide, through written, electronic, or other means, certain personal information including (without limitation) full name, address, year of birth, email address, phone number, and last six (6) digits of Social Security number in order to verify an individual's status as a class member and/or eligibility for any benefits under the settlement, in addition to any other purposes consistent with the settlement administrator's responsibilities under the settlement agreement. The settlement administrator's fees, as approved

by the parties, will be paid from the settlement fund pursuant to the settlement agreement.

(10)   Within 10 days after the filing of the motion to permit issuance of notice, Defendant shall serve or cause to be served a notice of the proposed settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

## **Notice to the Class**

(11)   Signal Interactive Media LLC is appointed as the notice provider, with responsibility for effectuating class notice in accordance with the proposed notice plan. The notice provider's fees, as approved by the parties, will be paid from the settlement fund pursuant to the settlement agreement.

(12)   The notice plan set forth in the settlement agreement and the forms of notice attached as exhibits to the settlement agreement satisfy the requirements of Federal Rule of Civil Procedure 23 and thus are approved. Non-material modifications to the exhibits may be made without further order of the Court. The notice provider is directed to carry out the notice program in conformance with the settlement agreement and to perform all other tasks that the settlement agreement requires.

(13)   The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designed to be readily understandable by settlement class members.

### Appointment of Experian for Monitoring and Restoration Services

(14)   The Court appoints Experian as the provider of monitoring services to eligible Settlement Class Members as set forth in the Settlement Agreement. The Court directs that Experian effectuate the Settlement Agreement in coordination with Settlement Class Counsel, Equifax, and the Settlement Administrator, subject to the jurisdiction and oversight of this Court.

### Exclusions from the Class

(15)   Any settlement class member who wishes to be excluded from the settlement class must mail a written notification of the intent to exclude themselves to the settlement administrator at the address provided in the notice, postmarked no later than _____ (the "opt-out deadline"). Each written request for exclusion must identify this action, set forth the name of the individual seeking exclusion, be signed by the individual seeking exclusion, and can only request exclusion for that one individual.

(16)   The settlement administrator shall provide the parties with copies of all opt-out notifications, and, within 14 days after the opt-out deadline, a final list of all that have timely and validly excluded themselves from the settlement class. The final list of exclusions as well as a final list of those in the class should be filed with the Court before the approval hearing.

(17)   Any settlement class member who does not timely and validly exclude themselves from the settlement shall be bound by the terms of the settlement. If final judgment is entered, any settlement class member who has not submitted a timely, valid written notice of exclusion from the settlement class shall be bound by all subsequent proceedings, orders, and judgments in this matter, including but not limited to the release set forth in the settlement and final judgment.

(18)   All those settlement class members who submit valid and timely notices of exclusion shall not be entitled to receive any benefits of the settlement.

## Objections to the Settlement

(19)   A settlement class member who complies with the requirements of this Order may object to the settlement, Class Counsel's request for fees and expenses, or the request for service awards to the class representatives.

(20)   No settlement class member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any settlement class member shall be received and considered by the Court, unless the objection is (a) electronically filed with the Court by the objection deadline; or (b) mailed to the settlement administrator at the address listed in the Long Form Notice available on the settlement website, and postmarked by no later than the objection deadline. Objections shall not exceed twenty-five (25) pages. For the objection to be considered by the Court, the objection must be in writing and shall set forth:

    (a)    The name of this action;

    (b)    The objector's full name and current address;

    (c)    The objector's personal signature on the written objection (an attorney's signature is not sufficient);

(d)    A statement indicating the basis for the objector's belief that he or she is a member of the settlement class;

(e)    A statement of whether the objection applies only to the objector, to a specific subset of the settlement class, or to the entire settlement class;

(f)    A statement of the objector's grounds for the objection, accompanied by any legal support for the objection;

(g)    A statement identifying all class action settlements objected to by the objector in the previous five (5) years; and

(h)    A statement as to whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number, and four dates between the Objection Deadline and [a date two weeks before Fairness Hearing] during which the objecting settlement class member is available to be deposed by counsel for the Parties.

(21)   In addition to the foregoing, if the objector is represented by counsel and such counsel intends to speak at the Fairness Hearing, the written objection must include:

10

(a)    A detailed statement of the specific legal and factual basis for each and every objection; and

(b)    A detailed description of any and all evidence the objector may offer at the Fairness Hearing, including copies of any and all exhibits that the objector may introduce at the Fairness Hearing.

(22)   In addition to the foregoing, if the objector is represented by counsel, and such counsel intends to seek compensation for his or her services from anyone other than the objector, the written objection must include:

(a)    The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection;

(b)    A statement identifying all instances in which the counsel or the counsel's law firm have objected to a class action settlement within the preceding five (5) years, giving the style and court in which the class action settlement was filed;

(c)    A statement identifying any and all agreements that relate to the objection or the process of objecting—whether written or oral—between the objector, his or her counsel, and/or any other person or entity;

(d)    A description of the counsel's legal background and prior experience in connection with class action litigation; and

(e)    A statement regarding whether fees to be sought will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought; the factual and legal justification for any fees to be sought; the number of hours already spent by the counsel and an estimate of the hours to be spent in the future; and the attorney's hourly rate.

(23)   Any settlement class member who fails to comply with the provisions in this Order will waive and forfeit any and all rights they may have to object, may have their objection stricken from the record, and may lose their rights to appeal from approval of the settlement. Any such class member also shall be bound by all the terms of the settlement agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the release in the settlement agreement if final judgment is entered.

## Claims Process

(24)   The settlement agreement establishes a process for claiming benefits under the settlement, including reimbursement for out-of-pocket losses relating the

breach; reimbursement for time spent remedying issues relating the breach; free credit monitoring services; and alternative cash payments for those settlement class members who already have some form of credit monitoring. If money remains in the settlement fund after the initial claims period, an "extended claims period" will go into effect for an additional 4 years (or until the fund is exhausted, whichever occurs first) which will permit settlement class members to submit claims for reimbursement of out-of-pocket losses or time spent remedying issues relating the breach after the initial claims period if certain conditions are met. The settlement agreement also sets forth a detailed disputes and appeals process for settlement class members whose claims are denied in whole or part. The Court approves this claims process and directs that the settlement administrator effectuate the claims process according to the terms of the settlement agreement.

## Termination of the Settlement and Use of this Order

(25)   This Order shall become null and void and shall be without prejudice to the rights of the parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the settlement is not approved by the Court or is terminated in accordance with the terms of the settlement agreement, all subject to the cure provisions set forth in the settlement agreement. In such event, the settlement and settlement agreement shall

13

become null and void and be of no further force and effect, and neither the settlement agreement nor the Court's orders, including this Order, relating to the settlement shall be used or referred to for any purpose whatsoever.

(26)   This Order shall be of no force or effect if final judgment is not entered or there is no effective date under the terms of the settlement agreement; shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against any settlement class representative or any other settlement class member that its claims lack merit or that the relief requested is inappropriate, improper, or unavailable; and shall not constitute a waiver by any party of any defense or claims it may have in this litigation or in any other lawsuit.

## Continuance of Final Approval Hearing

(27)   The Court reserves the right to adjourn or continue the approval hearing and related deadlines without further written notice to the settlement class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the settlement website.

## Summary of Deadlines

(28)   The settlement agreement shall be administered according to its terms

14

pending the Approval Hearing. Deadlines arising under the settlement agreement

and this Order include but are not limited to the following:

| EVENT | TIMING |
| --- | --- |
| Deadline for Defendant to disseminate CAFA notices | [10 days after settlement agreement filed with the Court] |
| Deadline for Defendant to provide settlement class list to settlement administrator | [5 business days after order directing notice] |
| Notice date | [60 days after order directing notice] |
| Deadline to file Class Counsel's motion for attorneys' fees, costs, expenses and service awards | [at least 21 days before objection deadline] |
| Deadline for Class Counsel to file motion for final approval of settlement and responses to any timely submitted settlement class member objections | [14 days prior to final approval hearing] |
| Objection deadline | [60 days after notice date] |
| Opt-out deadline | [60 days after notice date] |
| Initial claims deadline | [6 months after order directing notice] |
| Extended claims deadline | [4 years after initial claims deadline] |
| Final approval hearing | [At least 150 days after order directing of notice] |

IT IS SO ORDERED this _____ day of _____, 2019.

_____
THOMAS W. THRASH, JR.
United States District Judge

**EXHIBIT 6**

**NOTICE PLAN**

*In re: Equifax, Inc. Customer Data Security*
*Breach Litigation*
*No. 1:17-MD-2800 (N.D. Ga.)*

Notice Plan

# NOTICE PLAN

The Notice Plan for *In re Equifax, Inc., Customer Data Security Breach Litigation*, MDL 2800 (N.D. Ga.) (Consumer Track) was developed by the Notice Provider and the Parties in collaboration with the Federal Trade Commission, the Consumer Finance Protection Bureau, and participating offices of State Attorneys General (collectively, the "Regulators"). The Notice Plan will provide the best notice practicable under the circumstances of this case, satisfy all aspects of Rule 23 of the Federal Rules of Civil Procedure, satisfy the Due Process clause of the United States Constitution, and conform with the guidance for effective notice articulated in the *Manual for Complex Litigation*, 4th.

The objective of the Notice Plan is to provide the best notice practicable of the Settlement to members of the Settlement Class as defined in the Settlement Agreement and to enhance class members' awareness about their rights and the benefits available under the Settlement. The FJC's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide considers 70-95% reach among class members reasonable. In order to meet or exceed that reach, the Notice Plan employs modern developments in the fields of public opinion research and consumer behavior, including qualitative and quantitative testing, to craft and select the most effective messaging and communication channels to increase notice

1

and participation rates. The Notice Plan is designed to occur both during the Initial and Extended Claims Periods provided by the Settlement as well as to provide reminder notice during the time period after the Extended Claims Period in which Class Members remain eligible for identity restoration services.

The Notice Plan improves upon the approach utilized in many class action settlements, which historically have not taken advantage of testing and consumer research and often involve a single notice to each Settlement Class Member with little follow up. The various forms of Notice in the plan will direct Settlement Class Members to a settlement website that will contain links to Settlement documents and provide Settlement Class Members with the ability to submit Claim Forms electronically. The Settlement Administrator will maintain the website and will work with the Notice Provider to develop and integrate relevant content for the website and enhance consistency between the look and feel of the website and notice messaging.

The Notice Plan will have several components:

1) Initial Research and Testing through focus groups in several cities, a national polling survey, and digital ad testing;

2) Direct Notice through email, with assistance by the Settlement Administrator;

3)     Digital Notice during the Initial Claims Period through Facebook, Search (Google, Yahoo, and Bing), Twitter, and Display;

4)     Paid Publication notice through the use of paid media, including USA Today and radio;

5)     Extended Claims Period Notice Activities (if necessary); and,

6)     Supplemental Notice Measures (if necessary).

These components will achieve the same reach and frequency benchmarks that have been achieved under notice programs that have been approved by courts in other cases. Each of these components is discussed in more detail below.

## 1.    <u>Initial Research and Testing</u>

Following the entry of an order permitting issuance of notice of class action settlement, the Notice Provider will begin a period of Initial Research and Testing. This period of Initial Research and Testing will take about 14 days.

Initial Research and Testing is customary in commercial and political mass media advertising. It is used to measure the effectiveness of various media and messaging, so that the Notice Provider may adjust and optimize the messaging prior to full-scale investment and implementation. This methodology has been shown to increase participation rates. In the Notice Plan, the purpose of Initial Research Testing is primarily to confirm two things: 1) the best media and

messaging practicable across various demographics of the class and 2) the best notice practicable for those class members that may not be reached through the digital components of the program.

The Notice Provider has collaborated with the Parties and the Regulators to prepare several different formats of digital and email notice with varying text, graphic design, and layout. The Parties seek Court approval of the forms of notice attached to this Notice Plan so that they may be tested prior to larger distribution. This will permit the Notice Provider to study and analyze the most effective method of providing notice in the digital and email channels and implement those formats of notice deemed most effective.  After approval by the Court, the different forms of notices will be translated into Spanish by the Notice Provider and the Spanish language notices will be used in connection with the notice effort where appropriate.

The initial research effort will involve a four-step process. *First*, the Notice Provider will assemble a demographic profile of the Settlement Class using a proprietary database of consumer information maintained by the Notice Provider. *Second*, the Notice Provider will convene a series of ten focus groups comprised of a representative cross-section of the class across the country. Each group will last approximately two hours, be professionally moderated, and consist of

approximately eight participants. *Third,* the Notice Provider will conduct a statistically significant survey of 1,600 Settlement Class Members. As part of the survey, in particular, the Notice Provider will seek to understand which class members are least likely to be found online and assess the best way that is practicable under the circumstances to reach those consumers. *Fourth,* in conjunction with this research, the Notice Provider will conduct online early media testing using Court-approved digital notices. The Notice Provider will measure empirical results of testing and begin to define and optimize the variables affecting response rate. The Notice Provider will then place (cause to be published) those Court-approved notices, and send (cause to be sent) the Court-approved emails measured to most effectively reach and inform Settlement Class Members of the Settlement.

## 2.    <u>Direct Notice</u>

Within five business days after the Court's order directing notice, Equifax shall provide the Settlement Administrator with the names, last known mailing address, date of birth, and last known email addresses of Settlement Class Members to the extent reasonably available. The Settlement Administrator shall make all necessary efforts to ensure the security and privacy of Settlement Class Member information; shall not use the information provided by Equifax or Class

Counsel in connection with the Settlement or this Notice Plan for any purposes other than providing notice or conducting claims administration; and will not share Settlement Class Member information with any third parties without advance consent from the Parties. The Settlement Administrator will use reasonable efforts to obtain email addresses for those Settlement Class Members whose email addresses Equifax does not possess by comparing the class list with their proprietary databases and purchasing emails to the extent practicable from commercially available sources, including a proprietary database maintained by the Notice Provider. To the extent that Equifax has reasonably available names or other identifying information about Settlement Class Members, but not mailing or email addresses, those names and other identifying information shall also be provided to the Settlement Administrator for use in verifying the identity of Settlement Class Members.

Once this process is completed, the Settlement Administrator will send email notice to those Settlement Class Members for whom an email address could be identified. The initial email notice to all Settlement Class Members for whom an email address is available will be sent by the Notice Date (60 days after the Court's order directing notice). The 60-day period between the Court's order directing notice and the Notice Date is hereinafter referred to as the Initial Notice Period.

Two more email notices will be sent during the Initial Claims Period to Settlement Class Members who have not yet opted out, filed a claim, or unsubscribed from a previous email.   The first additional email notice will be sent approximately halfway through the Initial Claims Period and the second will be sent with approximately two weeks left in the Initial Claims Period.  The specific timing of the two additional emails may be adjusted by the Notice Provider and Settlement Administration as needed to avoid logistical difficulties and ensure proper deliverability and effectiveness. Another email notice will be sent at or about the beginning of the Extended Claims Period.  Additional email notices may be sent as recommended by the Settlement Administrator and approved by the Parties, who shall not unreasonably withhold approval. The content of all proposed email messaging appears in Exhibit A to this Notice Plan.

To ensure the notice emails are seen by as many Class Members as practicable, the Settlement Administrator will take steps to avoid its communications being flagged in spam filters. Such measures include using a reputable email service provider, avoiding spam trigger words in subject lines, avoiding embedding forms and video, and staggering email batches. The Settlement Administrator will also use reasonable efforts to obtain updated email

addresses for those Class Members whose emails "bounce back" and to resend notices to the updated email addresses.

In order to combat phishing, the Settlement Administrator will include a disclaimer in all email communications as well as other coordinated "awareness" and Class Member training information on the website. This disclaimer will let Class Members know that the Settlement Administrator will never request personal information over email, and that any emails they receive requesting data should be reported to the Settlement Administrator.   Additionally, the Settlement Administrator will include information on its website for Class Members about what to expect in legitimate, Court-authorized email communications about the Settlement; educate Class Members regarding how to spot a phishing attack and preventative measures to take (e.g., hovering over links to see the actual domain and not forwarding any settlement emails to other addresses); and take steps to protect the class notice domain itself from being impersonated including implementing Sender Policy Framework (SPF), Domain Keys Identified Mail (DKIM) and Domain-based Message Authentication, Reporting, and Conformance (DMARC).

### 3.   Digital Notice during the Initial Claims Period

In addition to the direct individual notice, the Notice Plan will utilize a

digital advertising program in its comprehensive campaign targeting a reach of 90 percent of Settlement Class Members during the Initial Notice Period.  During this process, the Notice Provider will work iteratively to determine the most effective digital notices, targeting strategies, and digital platforms.  The Notice Provider will adjust the campaign to optimize the most efficient and engaging notice practicable.

All notice communications will be limited to those that have been approved by the Court. The digital advertising campaign will begin in the Initial Notice Period and last for the duration of the Initial Claims Period.  The digital channels to be utilized in providing notice are listed below:

· *Facebook and Instagram Advertising*

· *Twitter*

· *Google, Bing, and Yahoo Search*

· *Display Advertising*

The potential notice communications that will be used in the digital advertising during the Initial Claims Period are attached as Exhibit B.  Some of the digital advertising may include video.  The scripts of the potential video advertisements are attached as Exhibit F.  After approval of the scripts by the Court, the video advertisements will be produced and the final production versions submitted to the Parties for their approval, which shall not be unreasonably withheld.  Any disputes

regarding the final production versions of the video advertisements will be submitted to the Court for resolution.

The target for the digital campaign is to create 892 million impressions on or before the Notice Date of which 333 million will occur on Facebook and related platforms (representing assumed activity of 2.5 impressions per class member at a 90 percent reach); 213 million impressions on Twitter (representing assumed activity of one impression per class member), and 346 million impressions on display advertising (representing assumed activity of 2.6 impressions per class member at a 90 percent reach). During the remainder of the Initial Claims Period, the target is to create an additional 332 million impressions of which 133 million will occur on Facebook and related platforms, 106 million impressions on Twitter, and 93 million impressions on display advertising. Accordingly, the targeted total impressions during the length of the Initial Claims Period will exceed 1.2 billion. The actual impressions for the specific platforms may differ from these targets because, as described above, the placement of specific advertising and the platforms used for this advertising will be adjusted by the Notice Provider during the course of the campaign to optimize the notice efforts.

The Notice Provider will work with the Parties to develop technical controls and guidelines designed to ensure that notices are placed on reputable websites that

have controls to prevent spoofing and fraud.  The Notice Provider also will ensure that ads do not appear on websites that may be deemed sensitive or inappropriate. The display networks that the Notice Provider will use have built in filters that remove offensive placements. The Notice Provider will take additional precautions to ensure brand safety for Equifax such as excluding sensitive categories and individual websites from the campaign based on a list of inappropriate websites maintained by the Notice Provider to be supplemented by Equifax.

To combat artificial traffic from the digital notice programs, to mitigate fraud, and to avoid spoofing, the Notice Provider will use the software, ClickGUARD, to detect and mitigate artificial traffic, and will take other reasonable measures to ensure consumer privacy in coordination with the Parties.

## 4.   **Paid Publication**

*Newspapers*

To provide additional outreach to Settlement Class Members who may not have ready access to email or digital media, the Notice Provider will arrange for a single advertisement to be placed in one issue of *USA Today* that will run during the Initial Notice Period. The advertisement has been agreed to by the Parties after receiving input from the Regulators and will be approved by the Court before being placed. The content of the newspaper advertisement is contained in Exhibit

C.   If necessary to reach Settlement Class Members who may not have ready access to email or digital media and without detracting from the scope of the notice effort directed at other Settlement Class Members, the advertisement may also be placed in additional publications as recommended by the Notice Provider and approved by the Parties with the input of the Regulators.

*Radio*

Furthermore, the Notice Provider will oversee a radio advertising campaign to supplement direct, digital, and publication notice. This radio campaign will focus on areas with lower digital penetration. The content of the radio advertisements has been developed by the Notice Provider and agreed to by the Parties with input from the Regulators. Once approved by the Court, radio advertising will run during the Initial Claims Period. Transcripts of the radio advertising are attached as Exhibit D.

## 5.   <u>**Extended Claims Period and Thereafter**</u>

If the settlement funds are not exhausted during the Initial Claims Period, the Notice Provider will continue to place Digital Advertising as described in Section 3 at a rate of approximately 160,000 impressions per month until the settlement funds are exhausted or the expiration of the Extended Claims Period, whichever occurs first. The Digital Advertising during the Extended Claims Period will be

tailored to the relief available under the Settlement. The Notice Provider will conduct an additional digital notice campaign on Google, Yahoo, and Bing regarding restoration services throughout the period such services are available under the Settlement. The digital notice campaign will use search terms selected by the Notice Provider and approved by the Parties. The content for this additional digital advertising is attached as Exhibit E.

## 6.   **Supplemental Notice Measures**

As recommended by the Notice Provider or as otherwise deemed appropriate, the Parties may seek approval from the Court to perform supplemental notice or use additional channels or modes of notice not otherwise articulated in this Notice Plan. Supplemental or additional channels and modes of notice may also be recommended by the Regulators. The Parties agree to consider all such recommendations in good faith and, if agreed, seek approval from the Court to implement the recommendations.

Further, the Notice Provider will have the discretion to make non-material changes to the Notice Plan, such as by adjusting the formatting or content of the messaging used in the email, digital, and publication notices, without seeking further approval from the Court, provided that the Parties agree to all such changes.

7.    **Conclusion**

In sum, this proposed Notice Plan encompasses the use of modern media testing followed by several synergistic media campaigns in order to deliver the best notice practicable and to optimize participation. The combined email, digital media, and publication notice efforts under this plan are calculated to reach in excess of 90 percent of Settlement Class Members approximately 8 times before the Notice Date and approximately 6 additional times during the remainder of the Initial Claims Period.

# EXHIBIT A

# Email Notices

**Email 1 – Full short-form notice sent before the Notice Date**

<u>Sender</u>:

<u>Subject</u>:     (for testing)
          1. Equifax Data Breach Class Action Settlement
          2. Equifax Data Breach Settlement – You may be eligible for cash, free credit monitoring, and more
          3. Legal Notice of Proposed Class Action Settlement with Equifax
          4. Claim Your Benefits in the Equifax Data Breach Settlement
          5. Your Rights in the Equifax Data Breach Settlement
          6. Notice of Class Action Settlement – Equifax Data Breach

<u>Body</u>:

<div align="center">

**COURT APPROVED LEGAL NOTICE**

**If Your Personal Information Was Impacted in the 2017
Equifax Data Breach, You May Be Eligible for Benefits
from a Class Action Settlement**

</div>

In September of 2017, Equifax announced it experienced a data breach, which impacted the personal information of approximately 147 million people. Equifax has reached a proposed settlement to resolve class action lawsuits brought by consumers alleging Equifax failed to adequately protect their personal information. Equifax denies any wrongdoing, and no judgment or finding of wrongdoing has been made.

If your personal information was impacted in the Equifax data breach, you may be eligible for benefits from the settlement after it becomes final. Under the proposed settlement, Equifax will: (1) pay $380.5 million into a fund to pay benefits to consumers, court-approved fees and costs of class counsel and service awards to the named class representatives, and other expenses; (2) implement and maintain certain data security enhancements; (3) if necessary, pay up to $125 million more to reimburse consumers for out-of-pocket losses resulting from the data breach; and (4) provide certain other relief.

<div align="center">1</div>

**Are You Eligible:** You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** or call **1-833-759-2982.**

**Benefits:** If you are a class member, you are eligible for one or more of the following benefits:

    **1. Free Credit Monitoring or $125 Cash Payment.** You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request a $125 cash payment.
- The free credit monitoring includes at least four years of three-bureau credit monitoring, offered through Experian. You can also get up to six more years of free one-bureau credit monitoring through Equifax.
- If you already have credit monitoring services that will continue for at least 6 more months, you may be eligible for a cash payment of $125.

    **2. Other Cash Payments.** You may also be eligible for the following cash payments up to $20,000 for:
- **the time you spent** remedying fraud, identity theft, or other misuse of your personal information caused by the data breach, or purchasing credit monitoring or freezing credit reports, up to 20 total hours at $25 per hour.
- **out-of-pocket losses** resulting from the data breach.
- **up to 25% of the cost of Equifax credit or identity monitoring** products you paid for in the year before the data breach announcement.

    **3. Free Identity Restoration Services:** You are eligible for 7 years of free assisted identity restoration services to help you remedy the effects of identity theft and fraud.

**How to Get Benefits:**

To get free credit monitoring or cash payments, or both, you must submit a claim:
- Online at www.EquifaxBreachSettlement.com, or
- By mail.

2

**You must submit a claim by [initial claims period deadline date]. Certain claims may require supporting documents.**

If there is still money in the fund after payment of valid claims submitted during the initial claims period that ends on [INSERT DATE], there will be an extended claims period lasting for four years. In the extended claims period, you may make certain claims for out-of-pocket losses incurred in the future, including time and money spent trying to address identity theft or fraud related to the data breach.

You don't need to file a claim to get **free identity restoration services**.

None of these benefits will be distributed or available until the settlement is finally approved by the Court. The amount you receive may be less than the claim you submit depending on the number and amount of claims that are submitted.

<u>**Understanding Your Options:**</u>

If you want the court to exclude you from the settlement class, you must write to the Settlement Administrator by [INSERT DEADLINE]. List the name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT), your full name, your current address, and the words "Request for Exclusion" at the top of the document. You must sign this request and mail it to Equifax Data Breach Class Action Settlement Administrator, Attn: Exclusion, c/o JND Legal Administration, P.O. Box 91318, Seattle, WA 98111.

To object to the settlement, you must file an objection with the court by [INSERT DEADLINE]. For detailed instructions about the process of objecting, visit **www.EquifaxBreachSettlement.com**.

You must file a claim if you want to receive free credit monitoring or cash benefits under this settlement. If you do nothing, you won't receive a cash payment or credit monitoring service, won't be able to sue Equifax for the claims being resolved in the settlement, and will be legally bound by all orders of the court.

The Court will hold a hearing on [INSERT DATE] to consider any objections, and decide whether to approve the settlement, award attorneys' fees and expenses, and grant service awards to the named class representatives. You may enter an

appearance through an attorney, but do not have to. The court has appointed lawyers to represent you and the class, but you can hire another lawyer at your own expense.

**This is only a summary of the settlement. For more information, visit www.EquifaxBreachSettlement.com**, or call (toll free) **1-833-759-2982**.

*This is a Court authorized notice, not a lawyer advertisement.*

**Email 2 – Sent approximately halfway through the Initial Claims Period**

<u>Sender</u>:

<u>Subject</u>:    (for testing)
1. Reminder – Equifax Data Breach Class Action Settlement
2. Equifax Data Breach Settlement – You may still be eligible for cash, free credit monitoring, and more
3. Don't Forget to Claim Your Benefits in the Equifax Data Breach Settlement
4. Upcoming Deadlines in the Equifax Data Breach Settlement – Know Your Rights
5. Second Notice of Class Action Settlement – Equifax Data Breach

<u>Body</u>:

The body of Email 2 will use materially the same language as Email 1, but the format will be different.  Email 2 will consist of a document containing visual images that was prepared and formatted by the Federal Trade Commission.   A copy of the body of Email 2 follows.

**COURT APPROVED LEGAL NOTICE**

# If Your Personal Information Was Impacted in the 2017 Equifax Data Breach, You May Be Eligible for Benefits from a Class Action Settlement

In September of 2017, Equifax announced it experienced a data breach, which impacted the personal information of approximately 147 million people. Equifax has reached a proposed settlement to resolve class action lawsuits brought by consumers alleging Equifax failed to adequately protect their personal information. Equifax denies any wrongdoing, and no judgment or finding of wrongdoing has been made.

If your personal information was impacted in the Equifax data breach, you may be eligible for benefits from the settlement after it becomes final. Under the proposed settlement, Equifax will: (1) pay $380.5 million into a fund to pay benefits to consumers, court-approved fees and costs of class counsel and service awards to the named class representatives, and other expenses; (2) implement and maintain certain data security enhancements; (3) if necessary, pay up to $125 million more to reimburse consumers for out-of-pocket losses resulting from the data breach; and (4) provide certain other relief.

## ▶ Are You Eligible:

You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** and click the "Am I Impacted?" button or call **1-833-759-2982**.

## ▶ Benefits:

If you are a class member, you are eligible for one or more of the following benefits:



1. **Free Credit Monitoring or $125 Cash Payment.** You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request a $125 cash payment.
   - » The free credit monitoring includes at least four years of three-bureau credit monitoring, offered through Experian. You can also get up to six more years of free one-bureau credit monitoring through Equifax.
   - » If you already have credit monitoring services that will continue for at least 6 more months, you may be eligible for a cash payment of $125.



2. **Other Cash Payments.** You may also be eligible for the following cash payments up to $20,000 for:
   - » **the time you spent** remedying fraud, identity theft, or other misuse of your personal information caused by the data breach, or purchasing credit monitoring or freezing credit reports, up to 20 total hours at $25 per hour.
   - » **out-of-pocket losses** resulting from the data breach.
   - » **up to 25% of the cost of Equifax credit or identity monitoring** products you paid for in the year before the data breach announcement.



3. **Free Identity Restoration Services:** You are eligible for 7 years of free assisted identity restoration services to help you remedy the effects of identity theft and fraud.

## ▶ How to Get Benefits:

To get free credit monitoring, cash payments, or both, you must submit a claim:
   - » Online at **www.EquifaxBreachSettlement.com**, or
   - » By mail.

**You must submit a claim by [initial claims period deadline date]. Certain claims may require supporting documents.**

If there is still money in the fund after payment of valid claims submitted during the initial claims period that ends on [INSERT DATE], there will be an extended claims period lasting for four years. In the extended claims period, you may make certain claims for out-of-pocket losses incurred in the future, including time and money spent trying to address identity theft or fraud related to the data breach.

You don't need to file a claim to get **free identity restoration services**.

The amount you receive may be less than the claim you submit depending on the number and amount of claims that are submitted.

## ▶ Understanding Your Options:

If you want the court to exclude you from the settlement class, you must write to the Settlement Administrator by [INSERT DEADLINE]. List the name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT), your full name, your current address, and the words "Request for Exclusion" at the top of the document. You must sign this request and mail it to Equifax Data Breach Class Action Settlement Administrator, Attn: Exclusion, c/o JND Legal Administration, P.O. Box 91318, Seattle, WA 98111.

To object to the settlement, you must file an objection with the court by [INSERT DEADLINE]. For detailed instructions about the process of objecting, visit **www.EquifaxBreachSettlement.com**.

You must submit a claim to **www.EquifaxBreachSettlement.com** by [INITIAL CLAIMS PERIOD DEADLINE DATE]. You must file a claim if you want to receive free credit monitoring or cash benefits under this settlement. If you do nothing, you won't receive a cash payment or credit monitoring service, won't be able to sue Equifax for the claims being resolved in the settlement, and will be legally bound by all orders of the court.

The Court will hold a hearing on [INSERT DATE] to consider any objections, and decide whether to approve the settlement, award attorneys' fees and expenses, and grant service awards to the named class representatives. You may enter an appearance through an attorney, but do not have to. The court has appointed lawyers to represent you and the class, but you can hire another lawyer at your own expense.

**This is only a summary of the settlement.**

<u>None of these benefits will be distributed or available until the settlement is finally approved by the Court.</u>
**For more information, visit**
**www.EquifaxBreachSettlement.com, or call (toll free) 1-833-759-2982.**

*This is a Court authorized notice, not a lawyer advertisement.*

**Email 3 – Sent with approximately two weeks left in the Initial Claims Period**

<u>Sender</u>:

<u>Subject</u>:    (for testing)
1.  Time is Running Out – Equifax Data Breach Settlement
2.  Equifax Data Breach Settlement – Last Chance to Claim Benefits
3.  Act Now – Don't Forget to Claim Your Benefits in the Equifax Data Breach Settlement

<u>Body</u>:

**This is a Court approved legal notice. If your personal information was impacted in the 2017 Equifax data breach, you may be eligible for benefits from a class action settlement. BUT YOU MUST ACT SOON.**

**Claims must be made by [DATE] at EquifaxBreachSettlement.com.**

**<u>Are You Eligible</u>:** You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** or call **1-833-759-2982.**

**<u>Benefits</u>:** If you are a class member, you are eligible for one or more of the following benefits:

**1. Free Credit Monitoring or $125 Cash Payment.** You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request a $125 cash payment.
- The free credit monitoring includes at least four years of three-bureau credit monitoring, offered through Experian. You can also get up to six more years of free one-bureau credit monitoring through Equifax.
- If you already have credit monitoring services that will continue for at least 6 more months, you may be eligible for a cash payment of $125.

**2. Other Cash Payments.** You may also be eligible for the following cash payments up to $20,000 for:

- **the time you spent** remedying fraud, identity theft, or other misuse of your personal information caused by the data breach, or purchasing credit monitoring or freezing credit reports, up to 20 total hours at $25 per hour.
- **out-of-pocket losses** resulting from the data breach.
- **up to 25% of the cost of Equifax credit or identity monitoring** products you paid for in the year before the data breach announcement.

**3. Free Identity Restoration Services:** You are eligible for 7 years of free assisted identity restoration services to help you remedy the effects of identity theft and fraud.

## How to Get Benefits:

To get free credit monitoring or cash payments, or both, you must submit a claim:
- Online at www.EquifaxBreachSettlement.com, or
- By mail.

**You must submit a claim by [initial claims period deadline date]. Certain claims may require supporting documents.**

If there is still money in the fund after payment of valid claims submitted during the initial claims period that ends on [INSERT DATE], there will be an extended claims period lasting for four years. In the extended claims period, you may make certain claims for out-of-pocket losses incurred in the future, including time and money spent trying to address identity theft or fraud related to the data breach.

You don't need to file a claim to get **free identity restoration services**.

None of these benefits will be distributed or available until the settlement is finally approved by the Court. The amount you receive may be less than the claim you submit depending on the number and amount of claims that are submitted.

## Understanding Your Rights:

You must file a claim if you want to receive free credit monitoring or cash benefits

8

under this settlement. If you do nothing, you won't receive a cash payment or credit monitoring service.

**This is only a summary of the settlement. For more information, visit EquifaxBreachSettlement.com**, or call (toll free) **1-833-759-2982**.

*This is a Court authorized notice, not a lawyer advertisement.*

**Email 4 – Sent at or about the beginning of the Extended Claims Period**

<u>Sender</u>:

<u>Subject</u>:  (for testing)
   1. Equifax Data Breach Settlement – You Still Have Four Years to Make Certain Claims
   2. Equifax Data Breach Settlement – Extended Chance to Claim Certain Benefits
   3. Remember, You Can Still Claim Some Class Action Benefits – Equifax Data Breach

<u>Body</u>:

**This is a Court approved legal notice.**

Don't forget, if your personal information was impacted in the 2017 Equifax data breach, and you have a problem with identity theft or fraud because of the breach in the next four years, you may be eligible for further settlement benefits. **Claims for such benefits during this "Extended Claims Period" must be made by [DATE] at EquifaxBreachSettlement.com.** Until [DATE], you may also be eligible for free identity restoration services to help you remedy the effects of identity theft and fraud.

**<u>Are You Eligible</u>:** You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** or call **1-833-759-2982.**

**<u>Benefits</u>:**

**1. Cash Payments for Certain Losses incurred during the next four years:** During the Extended Claims Period, you can seek reimbursement for Out-of-Pocket Losses or Time Spent (but not losses of money and time associated with freezing or unfreezing credit reports or purchasing credit monitoring or protection services) if you certify that you have not already received reimbursement for the claimed loss. All such claims must be made by [DATE] and will be paid on a first-come-first-served basis.

10

**2. Free Identity Restoration Services:** You remain eligible for the remainder of 7 years of free identity restoration services to help you remedy the effects of identity theft and fraud. You do not have to make a claim for this benefit. Visit **EquifaxBreachSettlement.com to learn more about using these services.**

You cannot make claims for Credit Monitoring Services, Alternative Reimbursement Compensation, or Out-of-Pocket Losses or Time associated with freezing or unfreezing credit reports or purchasing credit monitoring or protection services.

<u>**How to Get Benefits:**</u>

To get cash payments, you must submit a claim:
- Online at www.EquifaxBreachSettlement.com, or
- By mail.

**You must submit a claim by [DATE]. Certain claims may require supporting documents.**

To get free identity restoration services, visit EquifaxBreachSettlement.com or call (toll free) 1-833-759-2982.  You do not need to file a claim to get those services.

**This is only a summary of the benefits available to eligible class members during the extended claims period. For more information, visit EquifaxBreachSettlement.com**, or call (toll free) **1-833-759-2982**.

*This is a Court authorized notice, not a lawyer advertisement.*

11

# EXHIBIT B

# Digital Ads for Use During the Initial Claims Period

The following are mockups of digital advertisements that will be implemented across Facebook, Instagram, Twitter, Display Networks and Search Networks in the pre-program media testing phase of the Notice Plan. A portion of these ads will be translated into Spanish.

By testing an abundance of ads with varying copy and graphics, we can determine the messaging and creative that are most successful in reaching various segments of the class, informing them of the settlement and their rights, and, ultimately driving engagement and participation. Top-performing ads will thus be delivered to appropriate groups throughout the Initial Notice Period and Initial Claims Period.

All ads will feature and/or link directly to the Case Website.

Facebook

Mockups of Facebook ads are shown in three sizes that correspond to the device and placement of the ads (pictured from left to right):

- Mobile News Feed
  (ads that show in the News Feed to people using Facebook on mobile devices)

- Desktop News Feed
  (ads that show in the News Feed to people using Facebook on desktop computers)

- Right Column
  (ads that appear in the right-side column on Facebook for people using desktop computers)

4

**E** **Equifax Data Breach Settlement** ...
Sponsored · 🌐

The 2017 Equifax data breach impacted the personal information of 147 million U.S. consumers. Find out if your info was impacted.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Class Action**                LEARN MORE

👍 Like          💬 Comment          ↗ Share

**E** **Equifax Data Breach Settlement**
Sponsored · 🌐

The 2017 Equifax data breach impacted the personal information of 147 million U.S. consumers. Find out if your info was impacted.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Class Action**          Learn More

👍 Like          💬 Comment          ↗ Share



**2017 Equifax Class Action**
equifaxbreachsettlement.com
The 2017 Equifax data breach impacted the personal information of 147 million U.S. consume...

**E** **Equifax Data Breach Settlement** ···
Sponsored · 🌐

$380.5 million has been set aside to help millions of U.S. consumers whose personal info was impacted in the 2017 Equifax data breach. Are you one of them?



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Class Action**                LEARN MORE

👍 Like          💬 Comment          ↪ Share

---

**E** **Equifax Data Breach Settlement**
Sponsored · 🌐

$380.5 million has been set aside to help millions of U.S. consumers whose personal info was impacted in the 2017 Equifax data breach. Are you one of them?



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Class Action**            Learn More

👍 Like          💬 Comment          ↪ Share

---



**2017 Equifax Data Breach Class Action**
equifaxbreachsettlement.com
$380.5 million has been set aside to help millions of U.S. consumers whose personal info w...

6



**Equifax Data Breach Settlement**
Sponsored · 🌐

Impacted by the 2017 Equifax Data Breach?
Find out your options and whether you're
eligible for proposed class action settlement
benefits.



EQUIFAXBREACHSETTLEMEN...   [ LEARN MORE ]
**2017 Equifax Data Breach
Proposed Settlement**

👍 Like      💬 Comment      ↪ Share

---

**Equifax Data Breach Settlement**
Sponsored · 🌐

Impacted by the 2017 Equifax Data Breach? Find out your options and
whether you're eligible for proposed class action settlement benefits.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Proposed Settlement**      [ Learn More ]

👍 Like      💬 Comment      ↪ Share

---



**2017 Equifax Data Breach Proposed Settleme...**
equifaxbreachsettlement.com
Impacted by the 2017 Equifax Data Breach?
Find out your options and whether you're
eligibl...

7



**Equifax Data Breach Settlement**
Sponsored · 

Was your personal information impacted in the 2017 Equifax data breach? Click here to find out. You may be entitled to financial compensation from a proposed class action settlement.



EQUIFAXBREACHSETTLEMEN...    [ LEARN MORE ]

👍 Like        💬 Comment        ↪ Share

**Equifax Data Breach Settlement**
Sponsored · 

Was your personal information impacted in the 2017 Equifax data breach? Click here to find out. You may be entitled to financial compensation from a proposed class action settlement.



EQUIFAXBREACHSETTLEMENT.COM    [ Learn More ]

👍 Like        💬 Comment        ↪ Share



equifaxbreachsettlement.com
Was your personal information impacted in the 2017 Equifax data breach? Click here to find...

8



**Equifax Data Breach Settlement**
Sponsored · 🌐

The proposed Equifax Data Breach Settlement will provide class members with benefits like free credit monitoring, cash, and identity restoration services. Find out if you're a class member.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Lawsuit**                    LEARN MORE

👍 Like        💬 Comment        ↪ Share

**Equifax Data Breach Settlement**
Sponsored · 🌐

The proposed Equifax Data Breach Settlement will provide class members with benefits like free credit monitoring, cash, and identity restoration services. Find out if you're a class member.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Lawsuit**                    Learn More

👍 Like        💬 Comment        ↪ Share



**2017 Equifax Data Breach Lawsuit**
equifaxbreachsettlement.com
The proposed Equifax Data Breach Settlement will provide class members with benefits like...

9

**Equifax Data Breach Settlement**
Sponsored · ⌄

Equifax Data Breach Proposed Class Action Settlement: Click here to find out if you're a member of the class.





EQUIFAXBREACHSETTLEMEN...
**Was your info impacted?**    LEARN MORE

👍 Like      💬 Comment      ↪ Share

---

**Equifax Data Breach Settlement**
Sponsored · 🌐

Equifax Data Breach Proposed Class Action Settlement: Click here to find out if you're a member of the class.



EQUIFAXBREACHSETTLEMENT.COM
**Was your info impacted?**    Learn More

👍 Like      💬 Comment      ↪ Share

---



**Was your info impacted?**
equifaxbreachsettlement.com
Equifax Data Breach Proposed Class Action
Settlement: Click here to find out if you're a m...

10



**Equifax Data Breach Settlement**
Sponsored · 

Don't miss the deadline to claim your benefits under the Equifax data breach proposed class action settlement. Find out if you're eligible to submit a claim now.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Settlement**

LEARN MORE

👍 Like     💬 Comment     ↪ Share

**Equifax Data Breach Settlement**
Sponsored · 

Don't miss the deadline to claim your benefits under the Equifax data breach proposed class action settlement. Find out if you're eligible to submit a claim now.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Settlement**

Learn More

👍 Like     💬 Comment     ↪ Share



**2017 Equifax Data Breach Settlement**
equifaxbreachsettlement.com
Don't miss the deadline to claim your benefits under the Equifax data breach proposed clas...

11



**Equifax Data Breach Settlement**
Sponsored · ···

If your personal information was impacted in the 2017 Equifax data breach, you may be eligible for compensation, free credit monitoring, and other benefits under a proposed class action settlement.



EQUIFAXBREACHSETTLEMEN…
**2017 Equifax Data Breach Class Action**    [ LEARN MORE ]

 Like     Comment    Share

**Equifax Data Breach Settlement**
Sponsored · 

If your personal information was impacted in the 2017 Equifax data breach, you may be eligible for compensation, free credit monitoring, and other benefits under a proposed class action settlement.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Class Action**    [ Learn More ]



 Like    Comment    Share



**2017 Equifax Data Breach Class Action**
equifaxbreachsettlement.com
If your personal information was impacted in the 2017 Equifax data breach, you may be elig…

12



**Equifax Data Breach Settlement** ...
Sponsored ·

Was your personal information impacted in the 2017 Equifax data breach? Find out if you're eligible for financial compensation and other benefits under a proposed class action settlement.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Class Action**    LEARN MORE

👍 Like        💬 Comment        ↪ Share

**Equifax Data Breach Settlement**
Sponsored ·

Was your personal information impacted in the 2017 Equifax data breach? Find out if you're eligible for financial compensation and other benefits under a proposed class action settlement.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Class Action**    Learn More

👍 Like        💬 Comment        ↪ Share



**2017 Equifax Data Breach Class Action**
equifaxbreachsettlement.com
Was your personal information impacted in the 2017 Equifax data breach? Find out if you're...

13

**Equifax Data Breach Settlement**
Sponsored · 

A $380.5 million class action proposed settlement fund has been established for U.S. consumers impacted by the Equifax data breach. Follow the link to find out if you're a class member and if you're eligible to make a claim.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Litigation**

LEARN MORE

Like    Comment    Share

---

**Equifax Data Breach Settlement**
Sponsored · 

A $380.5 million class action proposed settlement fund has been established for U.S. consumers impacted by the Equifax data breach. Follow the link to find out if you're a class member and if you're eligible to make a claim.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Litigation**

Learn More

Like    Comment    Share

---



**2017 Equifax Data Breach Litigation**
equifaxbreachsettlement.com
A $380.5 million class action proposed settlement fund has been established for U.S. consu...

14



**Equifax Data Breach Settlement**
Sponsored · 

The 2017 Equifax data breach impacted the personal info of 147 million U.S. consumers. A recent class action settlement can provide reimbursement. Find out if you're eligible to claim settlement benefits today.



EQUIFAXBREACHSETTLEMEN...
**Equifax Class Action**                LEARN MORE

👍 Like        💬 Comment        ↗ Share

**Equifax Data Breach Settlement**
Sponsored · 

The 2017 Equifax data breach impacted the personal info of 147 million U.S. consumers. A recent class action settlement can provide reimbursement. Find out if you're eligible to claim settlement benefits today.



EQUIFAXBREACHSETTLEMENT.COM
**Equifax Class Action**                Learn More

👍 Like        💬 Comment        ↗ Share



**Equifax Class Action**
equifaxbreachsettlement.com
The 2017 Equifax data breach impacted the personal info of 147 million U.S. consumers. A r...

15

 **Equifax Data Breach Settlement**
Sponsored · 👤

A proposed settlement in the Equifax data breach lawsuit will provide eligible class members with financial compensation, free credit monitoring, cash reimbursements for losses, and identity restoration services. Find out if you're a class member who can submit a claim for benefits now.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Data Breach Settlement**    LEARN MORE

👍 Like     💬 Comment     ↪ Share

 **Equifax Data Breach Settlement**
Sponsored · 🌐

A proposed settlement in the Equifax data breach lawsuit will provide eligible class members with financial compensation, free credit monitoring, cash reimbursements for losses, and identity restoration services. Find out if you're a class member who can submit a claim for benefits now.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Data Breach Settlement**    Learn More

👍 Like     💬 Comment     ↪ Share



**2017 Equifax Data Breach Settlement**
equifaxbreachsettlement.com
A proposed settlement in the Equifax data breach lawsuit will provide eligible class membe...

16



**Equifax Data Breach Settlement**
Sponsored · 🌐

A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If your personal info was impacted, you may be eligible for financial compensation, free credit monitoring, and more. Determine if you're eligible for settlement benefits.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Lawsuit**                    LEARN MORE

👍 Like          💬 Comment          ↪ Share

**Equifax Data Breach Settlement**
Sponsored · 🌐

A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If your personal info was impacted, you may be eligible for financial compensation, free credit monitoring, and more. Determine if you're eligible for settlement benefits.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Lawsuit**                    Learn More

👍 Like          💬 Comment          ↪ Share



**2017 Equifax Lawsuit**
equifaxbreachsettlement.com
A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If your pe...

17

**E** Equifax Data Breach Settlement   ...
Sponsored · 🌐

The proposed settlement in the 2017 Equifax data breach class action provides compensation, free credit monitoring, and identity restoration services to eligible class members. Find out if you're eligible and claim your benefits.



Claim your **benefits** under the proposed settlement.

EQUIFAXBREACHSETTLEMEN...   LEARN MORE

👍 Like        💬 Comment        ↗ Share

**E** Equifax Data Breach Settlement
Sponsored · 🌐

The proposed settlement in the 2017 Equifax data breach class action provides compensation, free credit monitoring, and identity restoration services to eligible class members. Find out if you're eligible and claim your benefits.



Claim your **benefits** under the proposed settlement.

EQUIFAXBREACHSETTLEMENT.COM        Learn More

👍 Like        💬 Comment        ↗ Share



Claim your **benefits** under the proposed settlement.

equifaxbreachsettlement.com
The proposed settlement in the 2017 Equifax data breach class action provides compensation...

18



Impacted by the 2017 Equifax data breach? You could be eligible for compensation and other benefits under a proposed class action settlement.





Impacted by the 2017 Equifax data breach? You could be eligible for compensation and other benefits under a proposed class action settlement.





19



**Equifax Data Breach Settlement**
Sponsored · 

Was your info impacted in the 2017 Equifax data breach? Learn what you're entitled to under the proposed class action settlement.



EQUIFAXBREACHSETTLEME…
**Proposed Class Action Settlement**                    LEARN MORE



**Equifax Data Breach Settlement**
Sponsored · 

Was your info impacted in the 2017 Equifax data breach? Learn what you're entitled to under the proposed class action settlement.



EQUIFAXBREACHSETTLEMENT.COM
**Proposed Class Action Settlement**                    Learn More

👍 Like          💬 Comment          ↪ Share



**Proposed Class Action Settlement**
equifaxbreachsettlement.com
Was your info impacted in the 2017 Equifax data breach? Learn what you're entitled to unde…

20



**Equifax Data Breach Settlement**
Sponsored ·

Was your information impacted? Submit your claim for benefits from a proposed class action settlement.

EQUIFAXBREACHSETTLEME...   LEARN MORE

👍 Like      💬 Comment      ➢ Share



**Equifax Data Breach Settlement**
Sponsored · 🌐

Was your information impacted? Submit your claim for benefits from a proposed class action settlement.

EQUIFAXBREACHSETTLEMENT.COM      Learn More

👍 Like          💬 Comment          ➢ Share



equifaxbreachsettlement.com
Was your information impacted? Submit your claim for benefits from a proposed class action...

21



**Equifax Data Breach Settlement** ...
Sponsored · 

A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If you are a class member, you must act soon to claim your benefits.



EQUIFAXBREACHSETTLEME...          LEARN MORE



**Equifax Data Breach Settlement**
Sponsored · 

A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If you are a class member, you must act soon to claim your benefits.



EQUIFAXBREACHSETTLEMENT.COM          Learn More

👍 Like          💬 Comment          ↪ Share



equifaxbreachsettlement.com
A proposed settlement has been reached in the 2017 Equifax data breach lawsuit. If you are...

22

# Instagram

































# Twitter



34



 **Equifax Data Breach Settlement**
@Equifax_Breach

Impacted by the 2017 Equifax Data Breach? Find out your options and whether you're eligible for settlement benefits.

8:40 AM - 18 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

416   647   ...

Promoted

36



**Equifax Data Breach Settlement**
@Equifax_Breach

Was your info impacted in the Equifax data breach?
You may be entitled to compensation from a proposed
settlement.

5:42 PM - 16 Jul 2019

2017 Equifax Data Breach Lawsuit

Learn More

416    647    •••

Promoted

37



**Equifax Data Breach Settlement**
@Equifax_Breach

The Equifax settlement offers cash & other benefits to class members. Find out if you're a member of the class.

5:42 PM - 16 Jul 2019

Compensation, Reimbursement, & Protection

2017 Equifax Data Breach Lawsuit

Learn More

416    647

Promoted

38





**Equifax Data Breach Settlement**
@Equifax_Breach

Don't miss the deadline to claim your benefits under the 2017 Equifax data breach settlement. Submit your claim now.

5:42 PM - 16 Jul 2019

2017 Equifax Data Breach Lawsuit

Learn More

416   647

Promoted

40

 **Equifax Data Breach Settlement**
@Equifax_Breach

If your personal info was impacted in the Equifax breach, you could get compensation and other settlement benefits.

8:46 AM - 18 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

↩    ⇄ 416    ♥ 647    •••

⤤ Promoted

41

 **Equifax Data Breach Settlement**
@Equifax_Breach

Was your personal info impacted in the 2017 Equifax Data Breach? Find out if you're eligible for compensation.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Class Action

Learn More

416   647   ...

Promoted

42

 **Equifax Data Breach Settlement**
@Equifax_Breach

There's a $380.5 million proposed fund for those impacted by the Equifax breach. You may be entitled to benefits.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

↩   ↻ 416   ♥ 647   •••

Promoted

43

 **Equifax Data Breach Settlement**
@Equifax_Breach

147 million people may be entitled to benefits in the
Equifax data breach settlement. Find out if you're
eligible.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

↩    ⟲ 416    ♥ 647    •••

▣ Promoted

44

 **Equifax Data Breach Settlement**
@Equifax_Breach

Equifax settlement benefits: Compensation, credit monitoring, reimbursements, & more. Find out if you're eligible.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Proposed Settlement

Learn More

    416    647   

 Promoted

45



**Equifax Data Breach Settlement**
@Equifax_Breach

Equifax Data Breach proposed settlement: If your info was impacted, you may be eligible for settlement benefits.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

416   647   ...

Promoted

46

 **Equifax Data Breach Settlement**
@Equifax_Breach

The Equifax data breach class action settlement
provides compensation, credit & identity protection to
class members

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Lawsuit

Learn More

416    647    •••

Promoted

47



**Equifax Data Breach Settlement**
@Equifax_Breach

Impacted by the 2017 Equifax data breach? You may be eligible for compensation & other settlement benefits.

5:58 PM - 16 Jul 2019



Find out what **benefits** you may be eligible for.

2017 Equifax Class Action Settlement

Learn More

↩        ⇄ 416        ♥ 647        •••

⤢ Promoted

48



 **Equifax Data Breach Settlement**
@Equifax_Breach

Was your information impacted? Submit your claim for benefits from a proposed class action settlement.

5:58 PM - 16 Jul 2019



2017 Equifax Class Action

Learn More

↩    ⇄ 416    ♥ 647    •••

⤴ Promoted

50

 **Equifax Data Breach Settlement**
@Equifax_Breach

You may be eligible for benefits under a proposed settlement in the Equifax data breach lawsuit. Learn more today.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Lawsuit                    Learn More

    416    647   

 Promoted

51

# Display Advertising

The display ads will feature across various websites  where the Notice Administrator can reach potential class members. Included is one display size, though there will be various sizing options that we will utilize during the campaign. It should be noted that any display ads which are resized will keep exactly the same images and language.

53



54



55









# Paid Search

## (Desktop and Mobile)

## Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

[Ad] www.equifaxbreachsettlement.com ▾

$380.5 million has been set aside in a proposed class action settlement to help millions whose personal info was impacted in the 2017 data breach. Are you one of them?

### Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

[Ad] www.equifaxbreachsettlement.com

$380.5 million has been set aside in a proposed class action settlement to help millions whose personal info was impacted in the 2017 data breach. Are you one of them?

61

## Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

[Ad]  www.equifaxbreachsettlement.com ▾

The court-ordered deadline to submit a claim in the Equifax settlement is coming up. Act now to find out if you're eligible.

### Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

[Ad]  www.equifaxbreachsettlement.com

The court-ordered deadline to submit a claim in the Equifax settlement is coming up. Act now to find out if you're eligible.

62

## Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com ▾

The proposed Equifax data breach class action settlement provides compensation and other benefits. Find out if you're eligible to make a claim.

Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com

The proposed Equifax data breach class action settlement provides compensation and other benefits. Find out if you're eligible to make a claim.

63

## Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com ▾

Equifax 2017 proposed class action settlement: If your info was impacted, you may be eligible to claim benefits. Find out if you're eligible to claim benefits.

Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com

Equifax 2017 proposed class action settlement: If your info was impacted, you may be eligible to claim benefits. Find out if you're eligible to claim benefits.

64

## Equifax 2017 Data Breach | Was Your Info Impacted? | Act Now To Claim Your Benefits

Ad www.equifaxbreachsettlement.com ▼

A proposed settlement has been reached in the Equifax 2017 data breach lawsuit. Act soon to determine if you are eligible for benefits.

Equifax 2017 Data Breach | Was Your Info Impacted? | Act Now To Claim Your Benefits

Ad www.equifaxbreachsettlement.com

A proposed settlement has been reached in the Equifax 2017 data breach lawsuit. Act soon to determine if you are eligible for benefits.

## Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com ▾

147 million consumers had personal info impacted by the 2017 Equifax data breach. Are you one of them?

Equifax 2017 Data Breach | Was Your Info Impacted? | You May Have a Claim

Ad   www.equifaxbreachsettlement.com

147 million consumers had personal info impacted by the 2017 Equifax data breach. Are you one of them?

66

## Equifax 2017 Data Breach | Were You Impacted? | Claim Your Benefits Today

[Ad]  www.equifaxbreachsettlement.com ▼

A proposed settlement has been reached in the Equifax 2017 data breach lawsuit. Act soon to determine if you are eligible for benefits.

### Equifax 2017 Data Breach | Were You Impacted? | Claim Your Benefits Today

[Ad]  www.equifaxbreachsettlement.com

A proposed settlement has been reached in the Equifax 2017 data breach lawsuit. Act soon to determine if you are eligible for benefits.

67

The logo pictured here will be implemented on the Facebook, Instagram, and Twitter accounts and will appear on all ads on those platforms.



# EXHIBIT C

# Newspaper Ad

**COURT APPROVED LEGAL NOTICE**

# If Your Personal Information Was Impacted in the 2017 Equifax Data Breach, You May Be Eligible for Benefits from a Class Action Settlement

In September of 2017, Equifax announced it experienced a data breach, which impacted the personal information of approximately 147 million people. Equifax has reached a proposed settlement to resolve class action lawsuits brought by consumers alleging Equifax failed to adequately protect their personal information. Equifax denies any wrongdoing, and no judgment or finding of wrongdoing has been made.

If your personal information was impacted in the Equifax data breach, you may be eligible for benefits from the settlement after it becomes final. Under the proposed settlement, Equifax will: (1) pay $380.5 million into a fund to pay benefits to consumers, court-approved fees and costs of class counsel and service awards to the named class representatives, and other expenses; (2) implement and maintain certain data security enhancements; (3) if necessary, pay up to $125 million more to reimburse consumers for out-of-pocket losses resulting from the data breach; and (4) provide certain other relief.

## ▶ Are You Eligible:

You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** and click the "Am I Impacted?" button or call **1-833-759-2982**.

## ▶ Benefits:

If you are a class member, you are eligible for one or more of the following benefits:



1. **Free Credit Monitoring or $125 Cash Payment.** You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request a $125 cash payment.
   » The free credit monitoring includes at least four years of three-bureau credit monitoring, offered through Experian. You can also get up to six more years of free one-bureau credit monitoring through Equifax.
   » If you already have credit monitoring services that will continue for at least 6 more months, you may be eligible for a cash payment of $125.



2. **Other Cash Payments.** You may also be eligible for the following cash payments up to $20,000 for:
   » **the time you spent** remedying fraud, identity theft, or other misuse of your personal information caused by the data breach, or purchasing credit monitoring or freezing credit reports, up to 20 total hours at $25 per hour.
   » **out-of-pocket losses** resulting from the data breach.
   » **up to 25% of the cost of Equifax credit or identity monitoring** products you paid for in the year before the data breach announcement.



3. **Free Identity Restoration Services:** You are eligible for 7 years of free assisted identity restoration services to help you remedy the effects of identity theft and fraud.

## ▶ How to Get Benefits:

To get free credit monitoring, cash payments, or both, you must submit a claim:
   » Online at **www.EquifaxBreachSettlement.com**, or
   » By mail.

**You must submit a claim by [initial claims period deadline date]. Certain claims may require supporting documents.**

If there is still money in the fund after payment of valid claims submitted during the initial claims period that ends on [INSERT DATE], there will be an extended claims period lasting for four years. In the extended claims period, you may make certain claims for out-of-pocket losses incurred in the future, including time and money spent trying to address identity theft or fraud related to the data breach.

You don't need to file a claim to get **free identity restoration services**.

The amount you receive may be less than the claim you submit depending on the number and amount of claims that are submitted.

## ▶ Understanding Your Options:

If you want the court to exclude you from the settlement class, you must write to the Settlement Administrator by [INSERT DEADLINE]. List the name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT), your full name, your current address, and the words "Request for Exclusion" at the top of the document. You must sign this request and mail it to Equifax Data Breach Class Action Settlement Administrator, Attn: Exclusion, c/o JND Legal Administration, P.O. Box 91318, Seattle, WA 98111.

To object to the settlement, you must file an objection with the court by [INSERT DEADLINE]. For detailed instructions about the process of objecting, visit **www.EquifaxBreachSettlement.com**.

You must submit a claim to **www.EquifaxBreachSettlement.com** by [INITIAL CLAIMS PERIOD DEADLINE DATE]. You must file a claim if you want to receive free credit monitoring or cash benefits under this settlement. If you do nothing, you won't receive a cash payment or credit monitoring service, won't be able to sue Equifax for the claims being resolved in the settlement, and will be legally bound by all orders of the court.

The Court will hold a hearing on [INSERT DATE] to consider any objections, and decide whether to approve the settlement, award attorneys' fees and expenses, and grant service awards to the named class representatives. You may enter an appearance through an attorney, but do not have to. The court has appointed lawyers to represent you and the class, but you can hire another lawyer at your own expense.

**This is only a summary of the settlement.**

> <u>None of these benefits will be distributed or available until the settlement is finally approved by the Court.</u>
> **For more information, visit**
> **www.EquifaxBreachSettlement.com, or call (toll free) 1-833-759-2982.**

*This is a Court authorized notice, not a lawyer advertisement.*

# EXHIBIT D

# Scripts for Radio Ads

## Radio Notice Scripts

**15-seconds radio announcement**

1. About 147 million U.S. consumers whose personal information was impacted in the 2017 Equifax data breach may be eligible for compensation, free credit monitoring, and more under a proposed class action settlement. Visit <u>EquifaxBreachSettlement.com</u> to find out your options. That's <u>EquifaxBreachSettlement.com</u>.

2. Equifax has agreed to settle a class action lawsuit about the 2017 data breach that impacted the information of millions of U.S. consumers. Learn more about the settlement, your rights, and whether you can submit a claim for cash and other benefits at <u>EquifaxBreachSettlement.com</u>. That's <u>EquifaxBreachSettlement.com</u>.

**30-seconds radio announcement**

1. About 147 million U.S. consumers impacted by the 2017 Equifax data breach are eligible to make a claim under a proposed settlement. Benefits include compensation for time and money spent preventing or recovering from identity theft because of the breach; four years of free credit monitoring; identity restoration services; and more. Visit <u>EquifaxBreachSettlement.com</u> to find out your options and if you're eligible to submit a claim. Or you can call toll free 1-833-759-2982. That's <u>EquifaxBreachSettlement.com</u> or call 1-833-759-2982.

2. Attention: You may be eligible for cash payments, identity theft protection services, and other benefits in the Equifax data breach class action settlement. If you're one of about 147 million U.S. consumers whose information was impacted in the 2017 Equifax data breach, you may be eligible for cash payments for time and money you spent because of the data breach. Visit EquifaxBreachSettlement.com for more information about your rights under the settlement and to make a claim. Or you can call toll free 1-833-759-2982. That's EquifaxBreachSettlement.com or call 1-833-759-2982.

# EXHIBIT E

# Digital Ads for Use After the Initial Claims Period

The following are mockups of digital advertisements that will be implemented across Facebook, Instagram, Twitter, Display Networks and Search Networks to inform Settlement Class Members of Identity Restoration Services and potential reimbursement options under the Extended Claims Period.

A portion of these ads will be translated into Spanish.

All ads will feature and/or link directly to the Case Website.

2

# Facebook

Mockups of Facebook ads are shown in three sizes that correspond to the device and placement of the ads (pictured from left to right):

- Mobile News Feed
  (ads that show in the News Feed to people using Facebook on mobile devices)

- Desktop News Feed
  (ads that show in the News Feed to people using Facebook on desktop computers)

- Right Column
  (ads that appear in the right-side column on Facebook for people using desktop computers)

4



**Equifax Data Breach Settlement**
Sponsored · 🌐

If your information was impacted in the 2017 Equifax data breach, you're eligible to get free identity restoration services under the class action settlement. Click here to find out how.



EQUIFAXBREACHSETTLEMEN...
**2017 Equifax Class Action Settlement**

LEARN MORE

👍 Like    💬 Comment    ➦ Share

**Equifax Data Breach Settlement**
Sponsored · 🌐

If your information was impacted in the 2017 Equifax data breach, you're eligible to get free identity restoration services under the class action settlement. Click here to find out how.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Class Action Settlement**

Learn More

👍 Like    💬 Comment    ➦ Share



**2017 Equifax Class Action Settlement**
equifaxbreachsettlement.com
If your information was impacted in the 2017 Equifax data breach, you're eligible to get f...

5

**E** **Equifax Data Breach Settlement** ...
Sponsored · 🌐

Identity impacted after the 2017 Equifax data breach? Get access to free help under a class action settlement if you are a class member.



EQUIFAXBREACHSETTLEME...
**2017 Equifax Class Action Settlement**    LEARN MORE

👍 Like       💬 Comment       ↪ Share

**E** **Equifax Data Breach Settlement**
Sponsored · 🌐

Identity impacted after the 2017 Equifax data breach? Get access to free help under a class action settlement if you are a class member.



EQUIFAXBREACHSETTLEMENT.COM
**2017 Equifax Class Action Settlement**    Learn More

👍 Like       💬 Comment       ↪ Share



**2017 Equifax Class Action Settlement**
equifaxbreachsettlement.com
Identity impacted after the 2017 Equifax data breach? Get access to free help under a clas...

6



**Equifax Data Breach Settlement**
Sponsored · ●            ...

The Equifax Settlement provides reimbursement to people who lost time or money due to identity theft or fraud because of the 2017 data breach. Find out if you're eligible for reimbursement and make a claim.



EQUIFAXBREACHSETTLEMEN...    LEARN MORE

👍 Like        💬 Comment        ↗ Share

**Equifax Data Breach Settlement**
Sponsored · ●

The Equifax Settlement provides reimbursement to people who lost time or money due to identity theft or fraud because of the 2017 data breach. Find out if you're eligible for reimbursement and make a claim.



EQUIFAXBREACHSETTLEMENT.COM    Learn More

👍 Like        💬 Comment        ↗ Share



equifaxbreachsettlement.com
The Equifax Settlement provides reimbursement to people who lost time or money due to iden...

7



**Equifax Data Breach Settlement** ...
Sponsored · 

Did you recently lose time or money from identity theft or fraud because of the 2017 Equifax Data Breach? You may have a claim to compensation. Find out if you're eligible to submit a claim.



Submit your claim now.

EQUIFAXBREACHSETTLEMEN...
**equifaxbreachsettlement.co m**                    LEARN MORE

👍 Like      💬 Comment      ↪ Share

**Equifax Data Breach Settlement**
Sponsored · 

Did you recently lose time or money from identity theft or fraud because of the 2017 Equifax Data Breach? You may have a claim to compensation. Find out if you're eligible to submit a claim.



Submit your claim now.

EQUIFAXBREACHSETTLEMENT.COM
**equifaxbreachsettlement.com**      Learn More

👍 Like      💬 Comment      ↪ Share



**2017 Equifax Data Breach Settlement**
equifaxbreachsettlement.com
Did you recently lose time or money from identity theft or fraud because of the 2017 Equif...

8

# Instagram









# Twitter



 **Equifax Data Breach Settlement**
@Equifax_Breach

Identity impacted because of the 2017 Equifax data breach? Get access to free help under a class action settlement.

11:54 AM - 19 Jul 2019



2017 Equifax Class Action Settlement

Learn More

416      647

Promoted

14

 **Equifax Data Breach Settlement**
@Equifax_Breach

Equifax Settlement: Reimbursement may be available for ID theft or fraud losses caused by the 2017 data breach.

5:58 PM - 16 Jul 2019



2017 Equifax Data Breach Class Action

Learn More

↩   ⇄ 416   ♥ 647   •••

▣ Promoted

15



# Display Advertising

The display ads will feature across various websites  where the Notice Administrator can reach potential class members. Included is one display size, though there will be various sizing options that we will utilize during the campaign. It should be noted that any display ads which are resized will keep exactly the same images and language.



19







# Paid Search

### (Desktop and Mobile)

## Data Breach Settlement | Equifax Class Action | Free ID Restoration Services

[Ad] www.equifaxbreachsettlement.com ▾

Victim of identity theft, fraud? If eligible, get free help under a court settlement. Click here to access identity restoration services now.


2017 Equifax Data Breach | Was Your Identity Stolen?

[Ad] www.equifaxbreachsettlement.com

A recent court settlement provides free Identity Restoration Services. Find out if you're eligible & access your free services now.

24

2017 Equifax Data Breach | Did You Lose Time or Money? | Submit a Reimbursement Claim

Ad www.equifaxbreachsettlement.com ▾

People who recently lost time or money due to the 2017 Equifax breach could get reimbursed. Find out if you're eligible to submit a claim.


Equifax 2017 Settlement | Extended Claims Period | Get Reimbursement

Ad www.equifaxbreachsettlement.com ▾

Did you recently lose time or money as a result of the 2017 Equifax data breach? You may be eligible for reimbursement under a proposed class action settlement.

25

The logo pictured here will be implemented on the Facebook, Instagram, and Twitter accounts and will appear on all ads on those platforms.



# EXHIBIT F

# Scripts for Video Ads

**15-second video script**

| | Audio | Visual |
|---|---|---|
| 1. | ACTOR:<br><br>If your personal information was impacted in the 2017 Equifax data breach, you may be eligible for a cash payment, free credit monitoring, and other benefits under a proposed class action settlement.<br><br>[0:10] | GRAPHIC OVERLAY:<br><br>● Cash payments<br>● Free credit monitoring<br>● Identity restoration services |
| 2. | VO:<br><br>Visit EquifaxBreachSettlement.com to find out if you're eligible to submit your claim.<br><br>[0:15] | GRAPHIC OVERLAY:<br><br>EquifaxBreachSettlement.com |

**30-second video script #1**

| | Audio | Visual |
|---|---|---|
| 1. | ACTOR:<br><br>The 2017 Equifax data breach impacted the personal information of approximately 147 million U.S. consumers.<br><br>[0:05] | |

| 2. | ACTOR:<br><br>If your information was impacted, you may be eligible for benefits under a proposed class action settlement.<br><br>[0:11] | |
|----|----|----|
| 3. | ACTOR:<br><br>Under the settlement, you may be entitled to:<br><br><ul><li>Cash payments for money and time spent preventing or recovering from identity theft because of the breach;</li><li>Four years of free credit monitoring; and</li><li>Identity restoration services</li></ul><br>[0:21] | GRAPHIC OVERLAY:<br><br><ul><li>Cash payments</li><li>At least 4 years of free credit monitoring</li><li>Identity restoration services</li></ul> |
| 4. | VO:<br><br>Visit <u>EquifaxBreachSettlement.com</u> to find out if you're a class member and eligible to submit a claim for benefits today.<br><br>[0:27] | GRAPHIC OVERLAY:<br><br><u>EquifaxBreachSettlement.com</u><br><u>1-833-759-2982</u> |
| 5. | VO:<br><br>That's <u>EquifaxBreachSettlement.com</u>.<br>[0:30] | GRAPHIC OVERLAY:<br><br><u>EquifaxBreachSettlement.com</u><br>1-833-759-2982 |

**60-second video script #2**

| | Audio | Visual |
|---|---|---|
| 1. | ACTOR:<br><br>Are you one of the approximately 147 million U.S. consumers impacted in the Equifax data breach?<br><div align="right">[0:06]</div> | |
| 2. | ACTOR:<br><br>A proposed class action settlement may entitle you to certain benefits, including:<br><br><ul><li>Cash payments to reimburse you for out-of-pocket costs and compensate you for time spent remedying identity theft because of the breach;</li><li>Four years of free credit monitoring and identity theft protection; and</li><li>Identity restoration services</li></ul><div align="right">[0:21]</div> | GRAPHIC OVERLAY:<br><br><ul><li>Cash reimbursement for out-of-pocket losses and your time</li><li>Free credit monitoring and identify theft protection</li><li>Identity restoration services</li></ul> |

| 3. | ACTOR:<br><br>A class action lawsuit was brought by consumers against Equifax after it announced in September 2017 that a criminal cyberattack on its systems impacted the names, Social Security numbers, birth dates, addresses, and other personal information of millions of people.<br><div align="right">[0:33]</div> | |
| --- | --- | --- |
| 4. | ACTOR:<br><br>Under the terms of the proposed settlement, Equifax has agreed to pay $380.5 million into a fund to pay benefits.<br><div align="right">[0:40]</div> | |
| 5. | VO:<br><br>Visit EquifaxBreachSettlement.com to find out if you're eligible to file a claim for benefits.<br><div align="right">[0:45]</div> | GRAPHIC OVERLAY:<br><br>EquifaxBreachSettlement.com<br>1-833-759-2982 |
| 6. | VO:<br><br>You may be entitled to compensation, free credit monitoring and identity theft protection, and identity restoration services. | |

| | | |
|---|---|---|
| | [0:50] | |
| 7. | VO:<br><br>Visit EquifaxBreachSettlement.com for more information and to submit a claim today.<br>[0:55] | GRAPHIC OVERLAY:<br><br>EquifaxBreachSettlement.com<br>1-833-759-2982 |

Draft Disclosure

This is a court-approved legal notice. This is not an advertisement. The proposed settlement may affect your rights. If you make a claim under the settlement, or if you do nothing, you will be releasing all of your legal claims relating to the data breach against Equifax when the settlement becomes final. In order to be eligible for certain benefits, you must submit a claim. For cash reimbursement, you must be able to document your claim. The Settlement Administrator has the authority to review and validate claims. Class members who wish to opt out may exclude themselves from the settlement and give up their right to participate. Class members who wish to object to the settlement may do so prior to the court-imposed deadline. Court-approved Class Counsel are: DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC; DICELLO LEVITT GUTZLER LLC; STUEVE SIEGEL HANSON LLP; and THE BARNES LAW GROUP, LLC. You will not be charged by these lawyers for their work on the case.

**EXHIBIT 7-A**

**PROPOSED LONG-FORM NOTICE**

**This is a Court approved Legal Notice. This is not an advertisement.**

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
Case No. 1:17-md-2800-TWT (N.D. Ga.)

# EQUIFAX DATA BREACH
# CLASS ACTION SETTLEMENT

## IF YOUR PERSONAL INFORMATION WAS IMPACTED IN THE 2017 EQUIFAX DATA BREACH, YOU MAY BE ELIGIBLE FOR BENEFITS FROM A CLASS ACTION SETTLEMENT

A class action settlement has been proposed in a case against Equifax Inc., Equifax Information Services LLC, and Equifax Consumer Services LLC ("Equifax") relating to a data breach that Equifax announced in September 2017 (the "Data Breach"). If you are a Settlement Class Member, there will be benefits available to you from the proposed settlement. **The easiest way to submit a claim under the settlement is online at www.EquifaxBreachSettlement.com**. If you are unsure of whether you are eligible for benefits, visit the website or call **1-833-759-2982.**

In addition to other benefits, the proposed settlement requires Equifax to establish a "Consumer Restitution Fund" of a minimum of $380.5 million. The settlement relief includes:

- Cash Payment for Out-of-Pocket Losses: The Consumer Restitution Fund will be used to reimburse out-of-pocket losses fairly traceable to the Data Breach, including costs of credit monitoring and placing or removing a credit freeze on a credit file, up to $20,000 per person ("Out-of-Pocket Losses").

- Cash Payment for Time Spent: Out-of-Pocket Losses include payment for time spent remedying fraud, identity theft, or other misuse of your personal information caused by the Data Breach, or freezing or unfreezing credit reports and purchasing credit monitoring services, for up to 20 hours at $25 per hour ("Time Spent").

- Cash Payment for Equifax Subscription Products: Settlement Class Members who paid for Equifax credit or identity monitoring subscription products between September 7, 2016 and September 7, 2017, can receive up to 25% reimbursement for the amount they paid for services during that time ("Subscription Product Reimbursement").

- Credit Monitoring Services: All Settlement Class Members are eligible to enroll in at least four (4) years of Experian's credit monitoring services at no cost. The services include three-bureau daily monitoring of your credit files, a $1 million identity theft insurance policy, and other features discussed below ("Credit Monitoring Services"). You can make a claim for both cash payments and Credit Monitoring Services.

- Cash Payment for Alternative Credit Monitoring Service: If you already have some form of credit monitoring or protection, or would like to get a different credit monitoring service before submitting a claim, you may be eligible for cash up to $125 as an alternative to the free Credit Monitoring Services ("Alternative Reimbursement Compensation").

- Identity Restoration Services: All Settlement Class Members will be able to use assisted identity restoration services offered through Experian, including a dedicated identity theft

restoration specialist to help with identity recovery and restoration for a period of seven (7) years ("Restoration Services") if you experience identity theft or fraud.

- ▪ Equifax Business Practices Commitments: Equifax has agreed to implement and maintain certain business practices relating to its information security program, which will be monitored by an independent third party and be enforceable in court.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **File a claim for Out-of-Pocket Losses or Time Spent** | You must submit a claim in order to receive reimbursement for Out-of-Pocket Losses and/or Time Spent. You may claim Out-of-Pocket Losses, Time Spent, and Credit Monitoring Services under the settlement.<br><br>For more detailed information, see Questions __-__. | **DATE**<br>**For current losses and time**<br>**DATE**<br>**For future losses and time** |
| **File a claim for Credit Monitoring Services or Alternative Reimbursement Compensation** | You must submit a claim in order to receive the Free Credit Monitoring Services offered under the settlement, or Alternative Reimbursement Compensation up to $125.<br><br>For more detailed information, see Question __. | **DATE** |
| **File a claim for Subscription Product Reimbursement** | You must submit a claim in order to receive reimbursement for Subscription Product Reimbursements. | **DATE** |
| **Access to Identity Restoration Services** | You may access Identity Restoration Services after the settlement becomes final, whether or not you make a claim under the settlement.<br><br>For more detailed information, see Question __. | **No deadline. Services will be available for at least 7 years.** |
| **Exclude yourself from the settlement** | You can exclude yourself from the settlement by informing the Settlement Administrator that you want to "opt-out" of the settlement. If the settlement becomes final, this is the only option that allows you to retain your rights to separately sue Equifax for claims related to the Data Breach. If you opt-out, you may not make a claim for benefits under the settlement.<br><br>For more detailed information, see Question __. | **DATE** |

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

2

| Object or comment on the settlement | You may object to the settlement by writing to explain to the Court why you don't think the settlement should be approved. If you object, you will remain a Settlement Class Member, and if the settlement is approved, you will be eligible for the benefits of the settlement and give up your right to sue on certain claims described in the Settlement Agreement, which is available at www.EquifaxBreachSettlement.com.<br><br>For more detailed information, see Question __. | DATE |
|---|---|---|
| Do nothing | If you do nothing, you can still access Identity Restoration Services, but will not be entitled to any other benefits provided under the settlement. If the settlement becomes final, you will give up your rights to sue Equifax separately for claims relating to the Data Breach or to continue to pursue any such claims you have already filed. | |

## What this Notice Contains

**Page**

**BASIC INFORMATION AND OVERVIEW** ......................................................

1.  What is this notice, and why did I get it? ...........................................

2.  What is this lawsuit about? ...............................................................

3.  Why is this a class action? ...............................................................

4.  Why is there a settlement? .............................................................

**WHO IS PART OF THE SETTLEMENT** ........................................................

5.  How do I know if I am part of the settlement? ...................................

**THE SETTLEMENT BENEFITS** .................................................................

6.  What does the settlement provide? ...................................................

7.  How will the settlement compensate me for identity theft I have already suffered or money I have already paid to protect myself? ...................................................

8.  How will the settlement help protect me against future identity theft and fraud? ...............

9.  Can minor children make a claim for Credit Monitoring Services? ...................................

10. What if I already have credit monitoring or identity theft protection services? ...................

11. How will the settlement help me deal with identity theft or fraud if it happens? ................

12. What if I have Out-of-Pocket Losses or Time Spent because of the Equifax Data Breach in the future? ...................................................

13. What claims can I make during the Extended Claims Period? ...........................................

14. Will the settlement include changes to Equifax's data security program? ...........................

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

3

15.     What happens if there are leftover settlement funds? ..........................................

16.     What happens if the Consumer Restitution Fund runs out of money? ................................

**HOW TO GET SETTLEMENT BENEFITS** .........................................................

17.     How do I file a claim for Credit Monitoring Services, Time Spent, or Out-of-Pocket Losses? ..................................................................................................

18.     When and how will I receive the benefits I claim from the settlement? .............................

**LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT** .........................................

19.     What am I giving up to stay in the settlement class? ..........................................

**THE LAWYERS REPRESENTING YOU** .........................................................

20.     Do I have a lawyer in this case? .............................................................

21.     How will these lawyers be paid? .............................................................

22.     Will the class representatives receive any additional money? ...............................

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .............................................

23.     How do I exclude myself from the settlement? .................................................

**OBJECTING OR COMMENTING ON THE SETTLEMENT?** .......................................

24.     How do I tell the Court that I like or don't like the settlement? .........................................

**GETTING MORE INFORMATION** ...............................................................

25.     Where can I get more information? ...........................................................

## BASIC INFORMATION AND OVERVIEW

| 1.   What is this notice? |
|---|

A Court authorized this notice to inform you how you may be affected by this proposed settlement. This notice describes the lawsuit, the general terms of the proposed settlement and what it may mean to you. This notice also explains how to participate in, or exclude yourself from, the settlement if you were impacted by the Data Breach.

For information on how to determine if you are a Settlement Class Member, and therefore eligible for benefits under this settlement, see Question __.

| 2.   What is this lawsuit about? |
|---|

In September 2017, Equifax announced that it had been the victim of a criminal cyberattack on its systems. The attackers gained unauthorized access to the personal information of approximately 147 million U.S. consumers. This information included people's names, Social Security numbers, birth dates, addresses, and in some instances driver's license numbers, credit card numbers, or other personal information.

Numerous lawsuits were brought on behalf of consumers whose personal information was impacted as a result of the Data Breach. Chief Judge Thomas W. Thrash Jr. of the U.S. District Court for the Northern District of Georgia is overseeing these lawsuits. These lawsuits are known as *In re: Equifax*

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

4

*Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT. The consumers who sued are called the "Plaintiffs." Equifax, Inc., and two of its subsidiaries are the "Defendants." Plaintiffs claim that Equifax did not adequately protect consumers' personal information and that Equifax delayed in providing notice of the data breach. The most recent version of the lawsuit, which describes the specific legal claims alleged by the Plaintiffs, is available at www.EquifaxBreachSettlement.com. Equifax denies any wrongdoing, and no court or other judicial entity has made any judgment or other determination of any wrongdoing.

| **3. Why is this a class action?** |
| --- |

In a class action, one or more people called "class representatives" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." Because this is a class action, even persons who did not file their own lawsuit can obtain relief from harm that may have been caused by the Data Breach, except for those individuals who exclude themselves from the settlement class by the deadline.

| **4. Why is there a settlement?** |
| --- |

The Court has not decided in favor of Plaintiffs or Equifax. Instead, both sides agreed to a settlement after a lengthy mediation process overseen by a retired federal judge. Settlements avoid the costs and uncertainty of a trial and related appeals, while more quickly providing benefits to members of the settlement class. The class representatives appointed to represent the class and the attorneys for the settlement class ("Class Counsel," see Question __) believe that the settlement is in the best interests of the Settlement Class Members.

## WHO IS PART OF THE SETTLEMENT

| **5. How do I know if I am part of the settlement?** |
| --- |

You are a Settlement Class Member if you are among the approximately 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach.

You can confirm you are a Settlement Class Member, and eligible for benefits, by:

- Visiting the secure web page **https://www.EquifaxBreachSettlement.com**; or
- Calling **1-833-759-2982**.

Excluded from the settlement are:

- Officers and directors of Equifax;
- The presiding judge and any judicial staff involved in the lawsuit; and
- Any Class Member who opts-out (*see* Question ___).

## THE SETTLEMENT BENEFITS

| **6. What does the settlement provide?** |
| --- |

Equifax will pay at least $380,500,000 into a Consumer Restitution Fund. The Consumer Restitution Fund will be used to:

- Make cash payments for Out-of-Pocket Losses and Time Spent (*see* Question ___);
- Purchase Credit Monitoring Services (*see* Question ___);

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

5

- Pay cash Alternative Reimbursement Compensation to Settlement Class Members who already have their own credit monitoring or identity protection coverage before making a claim (*see* Question ____);

- Make cash payments for Subscription Product Reimbursement;

- Purchase Restoration Services for all Settlement Class Members, regardless of whether they make a claim (*see* Question ____);

- Pay the costs of notifying Settlement Class Members and administering the settlement;

- Pay service awards to the Settlement Class Representatives, as approved by the Court (*see* Question ____);

- Pay attorneys' fees, costs, and expenses, as approved by the Court (*see* Question ____).

If the Consumer Restitution Fund is used up, Equifax will pay up to an additional $125,000,000 to pay Out-of-Pocket Losses (*see* Question ____).

Equifax has also agreed to implement and maintain certain business practices relating to its information security program (*see* Question ____). A detailed description of these business practices commitments is available in the Settlement Agreement, which is available at www.EquifaxBreachSettlement.com.

| **7.  How will the settlement compensate me for identity theft I have already suffered or money I have already paid to protect myself, and my time spent on those things?** |
| --- |

**Settlement Benefit: Cash Payment for Time Spent**: If you spent time (i) dealing with fraud, identity theft, or other alleged misuse of your personal information that is fairly traceable to the Data Breach, or (ii) taking preventative measures (time placing or removing security freezes on your credit report, or purchasing credit monitoring or identity protection) that are fairly traceable to the Data Breach, then you may make a claim for reimbursement for $25 per hour for up to 20 hours.

You may receive reimbursement for up to 10 hours at $25 per hour by providing a description of (i) the actions taken in response to the Data Breach in dealing with misuse of your information or taking preventative measures and (ii) the time associated with those actions. You must certify that the description is truthful. Valid claims for Time Spent will be reimbursed in 15-minute increments, with a minimum reimbursement of 1-hour per claim.

To claim reimbursement of more than 10 hours of Time Spent, you must also provide reasonable documentation of fraud, identity theft, or other alleged misuse of your personal information fairly traceable to the Data Breach (*i.e.*, letter from IRS or bank or police report).

If there are more than $31 million in claims for Time Spent made during the Initial Claims Period (*see* Question __), all payments for Time Spent will be reduced and distributed on a proportional basis. Certain claims for Time Spent may also be made during the Extended Claims Period, up to a total cap for Time Spent during the Initial and Extended Claims Periods of $38 million in claims.

The deadline to file a claim for time you have already spent as a result of the Data Breach is **[DATE]**. The deadline to file eligible claims for time you spend in the future as a result of the Data Breach is **[DATE]** (*see* Questions ____).

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

6

**Settlement Benefit: Payment for Unreimbursed Out-of-Pocket Losses**: If you spent money to deal with fraud or identity theft that was fairly traceable to the Data Breach, or to protect yourself from future harm, then you can submit a claim for reimbursement up to $20,000 (including your claim for Time Spent). Out-of-Pocket Losses that are eligible for reimbursement may include, without limitation, the following:

- Money spent on or after September 7, 2017, associated with placing or removing a security freeze on your credit report with any credit reporting agency;

- Credit monitoring or identity theft protection costs you paid on or after September 7, 2017;

- Unreimbursed costs, expenses, losses or charges you paid on or after May 13, 2017, because of identity theft or identity fraud, falsified tax returns, or other alleged misuse of your personal information;

- Other miscellaneous expenses related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Professional fees incurred in connection with addressing identity theft, fraud, or falsified tax returns; and

- Up to 25% reimbursement of the money you paid for Equifax credit monitoring or identity theft protection subscription products between September 7, 2016 and September 7, 2017.

This list provides examples only, and other losses or costs fairly traceable to the Data Breach may also be eligible for reimbursement. Go to www.EquifaxBreachSettlement.com or call [toll-free number].

The Settlement Administrator will decide if your claim for Out-Of-Pocket Losses are valid. Only valid claims will be paid. The deadline to file a claim for Out-of-Pocket Losses you have already had is **[DATE]**. Certain claims for losses in the future as a result of the Data Breach may be made during the Extended Claims Period (see Questions ___). The deadline to file those claims is **[DATE]**.

| **8.  How will the settlement help protect me against future identity theft and fraud?** |
|---|

**Settlement Benefit: Credit Monitoring Services**: The settlement provides a way to help protect yourself from unauthorized use of your personal information. Settlement Class Members may submit a claim to enroll in at least four (4) years of three-bureau credit monitoring services, provided by Experian, at no cost. These services include the following features:

- Three-bureau credit monitoring providing notice of changes to your credit report at all three national credit bureaus;

- Up to $1 million dollars in insurance covering costs related to identity theft or fraud;

- Real-time notification of credit inquiries and other notifications;

- On-demand online access to a free copy of one bureau credit report, updated on a monthly basis;

- CyberAgent® Dark Web Monitoring that monitors internet activity for the trading or selling of your personal information;

- Customer support provided by Experian; and

- Many other features described at www.EquifaxBreachSettlement.com.

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

7

If you make a valid claim and enroll in Credit Monitoring Services, you can also elect to enroll in up to six (6) years of one-bureau credit monitoring services provided by Equifax that would begin after the three-bureau Credit Monitoring Services expire. This one-bureau credit monitoring service will include automated online alerts for key changes to your Equifax credit report, on-demand online access to your Equifax credit report updated on a monthly basis, and, if you request, internet monitoring that includes searching suspicious websites for your Social Security number. You must opt in for these one-bureau services when you submit your claim for Credit Monitoring Services, and you will be sent instructions for how to enroll in the one-bureau monitoring before your three-bureau Credit Monitoring Services expire. The cost of this service will be paid separately by Equifax, not out of the Consumer Restitution Fund.

Information about Credit Monitoring Services for minor children is provided in Question ____.

**The deadline for all claims for Credit Monitoring Services is [DATE].**

If you submit a valid claim form and elect to enroll in Credit Monitoring Services, you will receive enrollment instructions by email after approval of the settlement. You may make a claim for both reimbursement for Out-of-Pocket Losses and/or Time Spent and Credit Monitoring Services.

---

**9.   Can minor children make a claim for Credit Monitoring Services?**

---

**Settlement Benefit: Credit Monitoring Services for Minor Children**: A parent or legal guardian of a Settlement Class Member who is a minor (under the age of 18) can make a claim for Credit Monitoring Services on the child's behalf under the settlement. While the Settlement Class Member is under 18, they will receive minor monitoring services as follows: alerts when certain personal data appears on suspicious websites, including underground websites known as the "dark web;" alerts when the Social Security number is associated with new names or addresses or the creation of a consumer report at one or more of the three nationwide Consumer Reporting Agencies; and Identity Restoration Services in the event that a Settlement Class Member under the age of 18 has their identity compromised. Upon turning 18, the Settlement Class Member can enroll in the full Credit Monitoring Services. If a Settlement Class Member under the age of 18 has an Experian credit file with sufficient detail to permit authentication, a parent or guardian may enroll them in the full Credit Monitoring Services prior to their eighteenth birthday.

Additionally, the parent or legal guardian can elect to enroll the minor in one-bureau credit monitoring services provided by Equifax that would begin after the Credit Monitoring Services expire for a period of up to 14 years. While the Settlement Class Member is under 18, they will receive minor monitoring services as follows: alerts when data elements such as a Social Security number submitted for monitoring appear on suspicious websites, including underground websites known as the "dark web;" for minors who do not have an Equifax credit file, a file is created, locked, and then monitored, and for minors with an Equifax credit file, their credit file is locked and then monitored. The Experian Credit Monitoring Services and the optional one-bureau credit monitoring provided by Equifax together will cover 18 years.

The parent or legal guardian must opt for the minor to receive the one-bureau services when submitting a claim for the Credit Monitoring Services, and the parent or legal guardian will be sent instructions for how to enroll in the one-bureau monitoring before the Credit Monitoring Services expire. The cost of these services will be paid separately by Equifax, not out of the Consumer Restitution Fund.

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

| **10. What if I already have credit monitoring or identity protection services?** |
|---|

**Settlement Benefit: Cash Alternative Reimbursement Compensation**: If you already have some other kind of credit monitoring or protection services, and do not claim the free Credit Monitoring Services available through the settlement, you may file a claim for Alternative Reimbursement Compensation for up to $125. To claim Alternative Reimbursement Compensation you must certify that you have some form of credit monitoring or protection services on the date you submit your claim form and that you will keep those services for a minimum of six (6) months.

You should keep in mind that:

- **The deadline for all claims for Alternative Reimbursement Compensation is [DATE].**

- If you claim Alternative Reimbursement Compensation, you cannot claim free Credit Monitoring Services.

- If you claim Alternative Reimbursement Compensation, you cannot also seek reimbursement for purchasing credit monitoring or protection services covering the 6 month period after you make your claim. However, you can still make other claims for Time Spent or Out-of-Pocket Losses.

- If there are more than $31 million claims for Alternative Reimbursement Compensation, all payments for Alternative Reimbursement Compensation will be lowered and distributed on a proportional basis.

| **11. How will the settlement help me deal with identity theft or fraud if it happens?** |
|---|

**Settlement Benefit: Free Identity Restoration Services**: All Settlement Class Members will receive access to Assisted Identity Restoration Services if they experience an identity theft event. These services will be provided by Experian for a period of seven (7) years. These services include:

- Access to a U.S. based call center providing services relating to identity restoration.

- Assignment of a certified Identity Theft Restoration Specialist to assist you in addressing an identity theft event.

- Assistance with a step-by-step process to deal with companies, government agencies, and credit bureaus.

All Settlement Class Members may access Assisted Identity Restoration Services after the settlement becomes final, even if you never make a claim from this settlement, by going to www.EquifaxBreachSettlement.com, or calling toll free 1-833-759-2982.

| **12. What if I have Out-of-Pocket Losses or Time Spent because of the Equifax Data Breach in the future?** |
|---|

All claims for Out-of-Pocket Losses or Time Spent that have already happened must be made by **[DATE]**.

If there is still money in the Consumer Restitution Fund after all initial payments, there will be an "Extended Claims Period" which will allow you to make certain claims for Out-of-Pocket Losses or

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

9

Time Spent that happen after the initial claims deadline. **All such claims must be made by [DATE] and will be paid on a first-come-first-served basis**.

During the Extended Claims Period, you can seek reimbursement for Out-of-Pocket Losses or Time Spent (but not losses of money and time associated with freezing or unfreezing credit reports or purchasing credit monitoring or protection services) if you certify that you have not already received reimbursement for the claimed loss.

| **13. What claims can I make during the Extended Claims Period?** |
|---|

If the Extended Claims Period goes into effect as described in Question No. ___, you can seek reimbursement for Out-of-Pocket Losses or Time Spent incurred during the Extended Claims Period (excluding losses of money and time associated with placing or removing a security freeze on your credit reports or purchasing credit monitoring or identity theft protection services) if you certify that you have not already received reimbursement for the claimed loss.

**You cannot make any of the following claims during the Extended Claims Period:**

- Claims for free Credit Monitoring Services (see Question __).

- Claims for cash Alternative Reimbursement Compensation for credit monitoring or protection (see Question __).

- Claims for Out-of-Pocket Losses or Time Spent associated with freezing or unfreezing credit reports or purchasing credit monitoring or protection services.

| **14. Will the settlement include changes to Equifax's data security program?** |
|---|

**Settlement Benefit: Data Security Business Practices Commitments by Equifax**: Equifax has agreed to adopt, pay for, implement, and maintain extensive Business Practices Commitments related to information security for a period of five (5) years. A detailed description of these Business Practices Commitments is available in the Settlement Agreement, which is available at www.EquifaxBreachSettlement.com. These commitments will be assessed by an independent third party and be enforceable in court. Equifax also will not seek to enforce any arbitration provision in any Equifax product that has been offered in response to the Data Breach as of the date of the settlement agreement or that is provided under the settlement.

| **15. What happens if there are leftover settlement funds?** |
|---|

The Consumer Restitution Fund will be used to pay initial claims for Out-of-Pocket Losses and Time Spent, for Credit Monitoring Services and Alternative Reimbursement Compensation, for Identity Restoration Services, for administrative and notice costs, and for class representative service awards and attorneys' fees and expenses as approved by the Court.

- If there are still settlement funds, valid claims made during the Extended Claims Period will be paid on a first-come-first-served basis.

- If settlement funds remain, the monetary caps for Time Spent (*see* Question __) and Alternative Reimbursement Compensation (*see* Question __) will be lifted (if applicable) and those

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

10

payments will be increased proportionally up to the full amount of approved claims for Time Spent and Alternative Reimbursement Compensation.

- If settlement funds still remain, up to three (3) additional years of Identity Restoration Services will be made available to all Settlement Class Members, regardless of whether they made a claim under the settlement.

- If settlement funds still remain, additional Credit Monitoring Services (purchased in full month increments) will be provided to Settlement Class Members who claimed Credit Monitoring Services.

- If any settlement funds still remain, then those remaining funds will be distributed by the court for consumer restitution and redress, but no money will be returned to Equifax.

### 16. What happens if the Consumer Restitution Fund runs out of money?

If the payments described in Question ___ use up the Consumer Restitution Fund, Equifax will add up to $125,000,000 as needed to pay valid claims for Out-of-Pocket Losses.

## HOW TO GET SETTLEMENT BENEFITS

### 17. How do I file a claim for Credit Monitoring Services, Time Spent, or Out-of-Pocket Losses?

To obtain Credit Monitoring Services or to file a claim for reimbursement for Time Spent or Out-of-Pocket Losses fairly traceable to the Data Breach, you will need to file a claim form. There are two options for filing claims:

(1) File Online: You may fill out and submit the claim form online at www.EquifaxBreachSettlement.com. This is the quickest way to file a claim.

(2) File by Mail: Alternatively, you may simply fill out the claim form included with this notice and mail it to the address on the form with supporting documentation, if any. You can download a hard copy of the claim form (available at www.EquifaxBreachSettlement.com), or ask the Settlement Administrator to mail a claim form to you by calling 1-833-759-2982. Fill out your claim form, and mail it to: Equifax Data Breach Litigation Claims, c/o JND Legal Administration, P.O. Box 91318, Seattle, Washington, 98111.

The deadline to file a claim is **[DATE]** (this is the last day to file online and the postmark deadline for mailed claims).

To fill out and submit a claim form during the Extended Claims Period (see Questions __), you will need to access and submit the Extended Claims Period claim form online at www.EquifaxBreachSettlement.com; or contact the Settlement Administrator and request a hard copy of the Extended Claims Period claim form that can be filled out and returned by mail.

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

11

| **18. When and how will I receive the benefits I claim from the settlement?** |
|---|

**Credit Monitoring Services claimed by Settlement Class Members will begin, and payments for valid claims will be made, after the Court enters a final judgment and the settlement becomes final. This may take several months or more; please be patient. Once there is a final judgment, it will be posted on the Settlement Administrator's website.**

If you make a valid claim for Credit Monitoring Services, the Settlement Administrator will send you information on how to activate your credit monitoring once the settlement is final. The Settlement Administrator will provide you with an activation code and link to the Experian website where you can enroll and activate your Credit Monitoring Services.

Checks for valid claims for Out-of-Pocket Losses, Time Spent, and Alternative Reimbursement Compensation will be mailed by the Settlement Administrator to the mailing address that you provide.

## LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT

| **19. What am I giving up to stay in the settlement class?** |
|---|

If you make a claim under the settlement, or if you do nothing, you will be releasing all of your legal claims relating to the Data Breach against Equifax when the settlement becomes final. By releasing your legal claims, you are giving up the right to file, or to continue to pursue, separate legal claims against or seek further compensation from Equifax for any harm related to the Data Breach—whether or not you are currently aware of those claims.

Unless you exclude yourself from the settlement (see Question __), all of the decisions by the Court will bind you. That means you will be bound to the terms of the settlement and accompanying court orders, and cannot bring a lawsuit or be part of another lawsuit against Equifax regarding the Data Breach.

Paragraphs __-__ of the Settlement Agreement define the claims that will be released by Settlement Class Members who do not exclude themselves from the settlement. You can access the Settlement Agreement and read the specific details of the legal claims being released at www.EquifaxBreachSettlement.com.

If you have any questions, you can contact the Settlement Administrator (see Question __).

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

12

## THE LAWYERS REPRESENTING YOU

### 20. Do I have a lawyer in the case?

Yes. The Court appointed the following attorneys to represent you and other Settlement Class Members as "Class Counsel."

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112

Amy E. Keller
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, 11th Floor
Chicago, IL 60602

Roy E. Barnes
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060

Kenneth S. Canfield
**DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E., Suite 1725
Atlanta, GA 30309

You will not be charged by these lawyers for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have questions about making a claim, please contact the Settlement Administrator (see Question __).

### 21. How will these lawyers be paid?

Class Counsel have undertaken this case on a contingency-fee basis, meaning they have paid for all of the expenses in the case and have not been paid any money in relation to their work on this case. Accordingly, Class Counsel will ask the Court to award them attorneys' fees of up to $77,500,000 and reimbursement for costs and expenses up to $3,000,000 to be paid from the Consumer Restitution Fund. The Court will decide the amount of fees and costs and expenses to be paid. You will not have to separately pay any portion of these fees yourself. Class Counsel's request for attorneys' fees and costs (which must be approved by the Court) will be filed by [DATE] and will be available to view on the settlement website at www.EquifaxBreachSettlement.com.

### 22. Will the class representatives receive any additional money?

The class representatives in this action are listed in the Settlement Agreement, which is available at www.EquifaxBreachSettlement.com. Class Counsel will ask the Court to award these individuals "service awards" of $2,500 each for the time that they spent, and the risks that they undertook, in bringing this lawsuit on behalf of the class. This amount will also have to be approved by the Court. Any amount approved by the Court will be paid from the Consumer Restitution Fund.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 23. How do I exclude myself from the settlement?

If you are a member of the settlement class but do not want to remain in the class, you may exclude yourself from the class (also known as "opting out"). If you exclude yourself, you will lose any right to participate in the settlement, including any right to receive the benefits outlined in this notice.

Questions? Go to www.EquifaxBreachSettlement.com or call 1-833-759-2982

13

If you decide on this option, you may keep any rights you have, if any, against Equifax and you may file your own lawsuit against Equifax based upon the same legal claims that are asserted in this lawsuit, but you will need to find your own attorney at your own cost to represent you in that lawsuit. If you are considering this option, you may want to consult an attorney to determine your options.

**IMPORTANT:** You will be bound by the terms of the Settlement Agreement unless you submit a timely and signed written request to be excluded from the settlement. To exclude yourself from the settlement you must mail a "request for exclusion," postmarked no later than **[DATE]**, to:

<div align="center">

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Exclusion**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111**

</div>

This statement must contain the following information:

(1)   The name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, or similar identifying words such as "Equifax Data Breach Lawsuit");

(2)   Your full name;

(3)   Your current address;

(4)   The words "Request for Exclusion" at the top of the document or a statement that you do not wish to participate in the settlement; and

(5)   Your signature.

**If you do not comply with these procedures and the deadline for exclusions, you will lose any opportunity to exclude yourself from the settlement class, and your rights will be determined in this lawsuit by the Settlement Agreement if it is approved by the Court, and you may not recover under any other settlement agreement regarding the claims released as part of the settlement**.

<div align="center">

## <u>OBJECTING OR COMMENTING ON THE SETTLEMENT</u>

</div>

| **24. How do I tell the Court that I like or don't like the settlement?** |
|---|

If you are a Settlement Class Member, you have the right to tell the Court what you think of the settlement. You can object to the settlement if you don't think it is fair, reasonable, or adequate, and you can give reasons why you think the Court should not approve it. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement as it is.

To object, you must send a letter stating that you object to the settlement. Your objection letter must include:

(1)   The name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, or similar identifying words such as "Equifax Data Breach Lawsuit");

(2)   Your full name and current address;

<div align="center">

Questions? Go to www.EquifaxBreachSettlement.com or call [PHONE NUMBER]

14

</div>

(3)    Your personal signature (an attorney's signature is not enough);

(4)    A statement indicating why you think that you are a member of the settlement class;

(5)    A statement with the reasons why you object, accompanied by any legal support for your objection;

(6)    A statement identifying all class action settlements to which you have objected in the previous five (5) years; and

(7)    A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between [the Objection Deadline] and [a date two weeks before Fairness Hearing] during which you are available to be deposed by counsel for the Parties.

Additionally, if you are represented by a lawyer and your lawyer intends to speak at the Fairness Hearing, your written objection letter must include:

(8)    A detailed statement of the specific legal and factual basis for each and every objection; and

(9)    A detailed description of any and all evidence you may offer at the Fairness Hearing, including copies of any and all exhibits that you may introduce at the Fairness Hearing.

Additionally, if you are represented by a lawyer, and your lawyer intends to seek compensation for his or her services from anyone other than you, your written objection letter must include:

(10)   The identity of all lawyers who represent you, including any former or current lawyer who may be entitled to compensation for any reason related to the objection;

(11)   A statement identifying all instances in which your lawyer or your lawyer's law firm have objected to a class action settlement within the preceding five (5) years, giving the case name, case number, and court in which the class action settlement was filed;

(12)   A statement identifying any and all agreements or contracts that relate to the objection or the process of objecting—whether written or oral—between the you, your lawyer, and/or any other person or entity;

(13)   A description of your lawyer's legal background and prior experience in connection with class action litigation; and

(14)   A statement regarding whether your lawyer's compensation will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought; the factual and legal justification for any fees to be sought; the number of hours already spent by your lawyer and an estimate of the hours to be spent in the future; and the lawyer's hourly rate.

Questions? Go to www.EquifaxBreachSettlement.com or call [PHONE NUMBER]

15

To be considered by the Court, your objection letter must be filed electronically with the Court by **[DATE]** or mailed, postmarked no later than **[DATE]**, to the following addresses:

<div align="center">

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111**

</div>

**If you do not comply with these procedures and the deadline for objections, you may lose any opportunity to have your objection considered at the Fairness Hearing or otherwise to contest the approval of the settlement or to appeal from any orders or judgments entered by the Court in connection with the proposed settlement. You will still be eligible to receive settlement benefits if the settlement becomes final even if you object to the settlement**.

The Court has scheduled a Fairness Hearing to listen to and consider any concerns or objections from Settlement Class Members regarding the fairness, adequacy, and reasonableness of the terms of the Settlement Agreement. That hearing will take place on **[DATE and TIME]** before the Honorable Thomas W. Thrash Jr., at the United States District Court for the Northern District of Georgia located in Courtroom 2108 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Dr., SW, Atlanta, Georgia 30303-3309. This hearing date and time may be moved. Please refer to the settlement website, www.EquifaxBreachSettlement.com for notice of any changes.

<div align="center">

## <u>GETTING MORE INFORMATION</u>

</div>

| **25. Where can I get more information?** |
| --- |

If you have questions about this notice or the settlement, you may go to the settlement website at www.EquifaxBreachSettlement.com. You can also contact the Settlement Administrator at **[PHONE NUMBER]** or by mailing a letter to **Equifax Data Breach Settlement, c/o [ADMINISTRATOR]**, **[ADDRESS]**, for more information or to request that a copy of this document be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them (contact information noted above in Question __). You may also seek advice and guidance from your own private lawyer at your own expense, if you wish to do so.

This notice is only a summary of the lawsuit and the settlement. Other related documents can be accessed through the settlement website. If you have questions about the proposed settlement, or wish to receive a copy of the Settlement Agreement but do not have access to the Internet to download a copy online, you may contact the Settlement Administrator. The Court cannot respond to any questions regarding this notice, the lawsuit, or the proposed settlement.

<div align="center">

***Please do not contact the Court or its Clerk***.

</div>

Questions? Go to www.EquifaxBreachSettlement.com or call [PHONE NUMBER]

16

## EXHIBIT 7-B

## PROPOSED SHORT-FORM NOTICE

COURT APPROVED LEGAL NOTICE

# If Your Personal Information Was Impacted in the 2017 Equifax Data Breach, You May Be Eligible for Benefits from a Class Action Settlement

In September of 2017, Equifax announced it experienced a data breach, which impacted the personal information of approximately 147 million people. Equifax has reached a proposed settlement to resolve class action lawsuits brought by consumers alleging Equifax failed to adequately protect their personal information. Equifax denies any wrongdoing, and no judgment or finding of wrongdoing has been made.

If your personal information was impacted in the Equifax data breach, you may be eligible for benefits from the settlement after it becomes final. Under the proposed settlement, Equifax will: (1) pay $380.5 million into a fund to pay benefits to consumers, court-approved fees and costs of class counsel and service awards to the named class representatives, and other expenses; (2) implement and maintain certain data security enhancements; (3) if necessary, pay up to $125 million more to reimburse consumers for out-of-pocket losses resulting from the data breach; and (4) provide certain other relief.

**Are You Eligible:** You are a class member and eligible for settlement benefits if you are a U.S. consumer whose personal information was impacted by the Equifax data breach. If you are unsure of whether you are a class member, visit **www.EquifaxBreachSettlement.com** or call **1-833-759-2982.**

**Benefits:** If you are a class member, you are eligible for one or more of the following benefits:

**1. Free Credit Monitoring or $125 Cash Payment.** You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request a $125 cash payment.
- The free credit monitoring includes at least four years of three-bureau credit monitoring, offered through Experian. You can also get up to six more years of free one-bureau credit monitoring through Equifax.
- If you already have credit monitoring services that will continue for at least 6 more months, you may be eligible for a cash payment of $125.

**2. Other Cash Payments.** You may also be eligible for the following cash payments up to $20,000 for:
- **the time you spent** remedying fraud, identity theft, or other misuse of your personal information caused by the data breach, or purchasing credit monitoring or freezing credit reports, up to 20 total hours at $25 per hour.
- **out-of-pocket losses** resulting from the data breach.
- **up to 25% of the cost of Equifax credit or identity monitoring** products you paid for in the year before the data breach announcement.

**3. Free Identity Restoration Services:** You are eligible for 7 years of free assisted identity restoration services to help you remedy the effects of identity theft and fraud.

**How to Get Benefits:**

To get free credit monitoring or cash payments, or both, you must submit a claim:
- Online at www.EquifaxBreachSettlement.com, or
- By mail.

**You must submit a claim by [initial claims period deadline date]. Certain claims may require supporting documents.**

If there is still money in the fund after payment of valid claims submitted during the initial claims period that ends on [INSERT DATE], there will be an extended claims period lasting for four years. In the extended claims period, you may make certain claims for out-of-pocket losses incurred in the future, including time and money spent trying to address identity theft or fraud related to the data breach.

You don't need to file a claim to get **free identity restoration services**.

None of these benefits will be distributed or available until the settlement is finally approved by the Court. The amount you receive may be less than the claim you submit depending on the number and amount of claims that are submitted.

<u>**Understanding Your Options:**</u>

If you want the court to exclude you from the settlement class, you must write to the Settlement Administrator by [INSERT DEADLINE]. List the name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT), your full name, your current address, and the words "Request for Exclusion" at the top of the document. You must sign this request and mail it to Equifax Data Breach Class Action Settlement Administrator, Attn: Exclusion, c/o JND Legal Administration, P.O. Box 91318, Seattle, WA 98111.

To object to the settlement, you must file an objection with the court by [INSERT DEADLINE]. For detailed instructions about the process of objecting, visit **www.EquifaxBreachSettlement.com**.

You must file a claim if you want to receive free credit monitoring or cash benefits under this settlement. If you do nothing, you won't receive a cash payment or credit monitoring service, won't be able to sue Equifax for the claims being resolved in the settlement, and will be legally bound by all orders of the court.

The Court will hold a hearing on [INSERT DATE] to consider any objections, and decide whether to approve the settlement, award attorneys' fees and expenses, and grant service awards to the named class representatives. You may enter an appearance through an attorney, but do not have to. The court has appointed lawyers to represent you and the class, but you can hire another lawyer at your own expense.

**This is only a summary of the settlement. For more information, visit  www.EquifaxBreachSettlement.com**, or call (toll free) **1-833-759-2982**.

*This is a Court authorized notice, not a lawyer advertisement.*

**EXHIBIT 8**

**CLAIM FORM**

**Must be postmarked or submitted online NO LATER THAN Month Day, 2019**

EQUIFAX DATA BREACH SETTLEMENT
C/O JND LEGAL ADMINISTRATION
P.O. BOX 91318
SEATTLE, WA 98111-9418
WWW.EQUIFAXBREACHSETTLEMENT.COM

**EFX**

# Equifax Data Breach Claim Form

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

If you are a U.S. consumer whose personal information was impacted by the Equifax data breach announced on September 7, 2017, you may submit a claim.

**The easiest way to submit a claim is online at www.EquifaxBreachSettlement.com**, or you can complete and mail this claim form to the mailing address above.

**You may submit a claim for one or more of these benefits**:

**Credit monitoring or $125 Cash Payment**: Use the claim form to request free credit monitoring services. Or, if you have credit monitoring services, you can request a $125 cash payment.

**Cash Reimbursement**. Use the claim form to request money for one or more of the following:

1. **Reimbursement for Time Spent.** If you spent time trying to avoid or recover from fraud or identity theft because of the Equifax data breach, you can get $25 per hour for up to 10 total hours, or up to 20 total hours if you provide supporting documents.

2. **Reimbursement for Money You Spent.** If you spent money trying to avoid or recover from fraud or identity theft because of the Equifax data breach, you can be reimbursed up to $20,000. You must submit documents supporting your claim.

3. **Up to 25% Reimbursement for Equifax Credit Monitoring Subscriptions.** If you had an Equifax credit monitoring or identity theft protection subscription between 9/7/2016 and 9/7/2017, you can get a payment of 25% of the amount you paid.

No claim is required for **identity restoration services**. U.S. consumers impacted by the Equifax data breach will be able to access identity restoration services for a period of at least 7 years once the Settlement is final. More information is available at www.EquifaxBreachSettlement.com.

\*     \*     \*

**Claims must be submitted online or mailed by [DATE]. Use the address at the top of this form for mailed claims.**

*Please note: the settlement administrator may contact you to request additional documents to process your claim. Your cash benefit may decrease depending on the number and amount of claims filed.*

For more information and complete instructions visit **www.EquifaxBreachSettlement.com.**

**Please note that Settlement benefits will be distributed after the Settlement is approved by the Court and final.**

## Your Information

*We will use this information to contact you and process your claim.  It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing info@EquifaxBreachSettlement.com.*

| 1. NAME (REQUIRED): | First | Middle Initial | Last |
|---|---|---|---|
| 2. ALTERNATIVE NAME(S) (IF ANY): | | | |
| 3. MAILING ADDRESS (REQUIRED): | Street Address | | |
| | Apt. No. | | |
| | City | | |
| | State | | |
| | Zip | | |
| 4. PHONE NUMBER: | | | |
| 5. EMAIL ADDRESS: | | | |
| 6. YEAR OF BIRTH (REQUIRED) | | | |

## Credit Monitoring: Free Service or Cash Payment

***You may be eligible to receive free credit monitoring or up to $125 if you already have credit monitoring.***

You can receive free, three-bureau credit monitoring at all three national credit reporting agencies (Equifax, Experian, and TransUnion). Experian will provide this service for at least four years. You can also enroll in free, single-bureau credit monitoring of your Equifax credit file, provided by Equifax, for up to six years after the Experian service ends.

**Or**, if you have credit monitoring services that you will keep for at least six months, you can request a cash payment of $125.

*Please select either Option 1 or Option 2 below, but not both.*

☐ **Option 1, Credit Monitoring**: I want to receive free, three-bureau credit monitoring.

*If you select this option, you will be sent instructions and an activation code after the settlement is final to your email address or home address.  You won't be "upsold" any services by enrolling or otherwise asked to submit any payment for these services now or in the future.*

If You selected Option 1, would you like to sign-up for Equifax's free, one-bureau credit monitoring service for up to 6 more years after the initial, three-bureau credit monitoring services expire?

☐  Yes.

*If you select "yes" for this option, you will be sent instructions to your email address or your home address before your three-bureau credit monitoring expires.  You won't be "upsold" any services by enrolling or otherwise asked to submit any payment for these services now or in the future.*

☐ **Option 2, Cash Payment**:  I want a cash payment of $125. I certify that I have credit monitoring and will have it for at least 6 months from today.

*If you select this option, you cannot also enroll in the free, three-bureau credit monitoring service offered through this Settlement.*

## Cash Payment: Time Spent

If you spent time trying to recover from fraud or identity theft caused by the data breach, or if you spent time trying to avoid fraud or identity theft because of the data breach (placing or removing credit freezes on your credit files or purchasing credit monitoring services), complete the chart below. You can be compensated $25 per hour for up to 20 hours.

If you claim **10 hours or less**, you **must** describe the actions you took in response to the data breach and the time each action took.

If you claim **more than 10 hours total**, you **must** describe the actions you took in response to the data breach *and* include supporting documents showing fraud, identity theft, or other misuse of your personal information.

*By filling out the boxes below, you are certifying that the time you spent doesn't relate to other data breaches.*

| Explanation of Time Spent (Identify what you did and why) | Approx. Date(s) | Number of Hours and Minutes | Supporting Documentation? (Y/N) |
|---|---|---|---|
| _____ _____ _____ _____ _____ | | | |
| _____ _____ _____ _____ _____ | | | |
| _____ _____ _____ _____ _____ | | | |

## Cash Payment: Money You Lost or Spent

If you lost or spent money trying to prevent or recover from fraud or identity theft caused by the Equifax data breach and have not been reimbursed for that money, you can receive reimbursement for up to $20,000 total.

It is important for you to send documents that show what happened and how much you lost or spent, so that you can be repaid (except for money you may have spent on Equifax subscription products as explained below). If they are the same as the documents you attached in the section above, you do not need to send them again.

To look up more details about how cash payments work, visit **www.EquifaxBreachSettlement.com** or call toll-free 1-833-759-2982. You will find more information about the types of costs and losses that can be paid back to you, what documents you need to attach, and how the Settlement Administrator decides whether to approve your payment.

| Loss Type and Examples of Documents | Amount and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Equifax breach) |
|---|---|---|
| Costs for freezing or unfreezing your credit report on or after 9/7/2017 *Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $  Date: | _____ _____ _____ _____ _____ |
| Credit monitoring and identity theft protection purchased between 9/7/2017 and the date of your claim submission  *Examples: Receipts or statements for credit monitoring services* | $  Date: | _____ _____ _____ _____ _____ |
| Costs incurred for an Equifax credit or identity theft monitoring subscription products I had between 9/7/2016 and 9/7/2017  *Equifax will check its records and these claims will be paid without documentation if Equifax's records match your claim. You may still submit receipts of statements for Equifax credit monitoring services to support your claim* | $  Date: | _____ _____ _____ _____ _____ _____ |
| Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information on or after 05/13/2017  *Examples: Account statement with unauthorized charges highlighted; police reports; IRS documents; FTC Identity Theft Reports; letters refusing to refund fraudulent charges; credit monitoring services you purchased* | $  Date: | _____ _____ _____ _____ _____ |
| Professional fees paid to address identity theft on or after 5/13/2017  *Examples: Receipts, bills, and invoices from accountants, lawyers, or others* | $  Date: | _____ _____ _____ _____ |

| Other expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges related to the data breach<br><br>*Examples: Phone bills, receipts, detailed list of places you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled* | $<br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____<br>_____<br>_____ |

## How You Would Like to Receive Your Cash Payment

If you made a claim for a cash payment in this claim form, you can elect to receive your payment either by check or pre-paid card to your mailing address.

Checks must be cashed within 90 days.  If you select a pre-paid card, the card never expires.

Which do you prefer?

☐ Check

☐ Pre-Paid Card

## Signature

I affirm under the laws of the United States that the information I have supplied in this claim form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the claims administrator before my claim is complete.

| Signature: | Dated: |
| --- | --- |

| Print Name: |
| --- |

# EXHIBIT 9

# CLAIMS ADMINISTRATION PROTOCOL

## <u>CLAIMS ADMINISTRATION PROTOCOL</u>

The provisions below are subject to the terms and definitions set forth in the Order Permitting Issuance of Notice of Class Action Settlement and the Settlement filed with the Court in the litigation styled *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.) (the "Class Action"). Terms used throughout this Claims Administration Protocol ("Protocol") shall have the same meaning as in the Agreement. To the extent any provisions in this Protocol are inconsistent with the Order Permitting Issuance of Notice of Class Action Settlement or Agreement, those terms in the Order Permitting Issuance of Notice of Class Action Settlement and Agreement control.  The Court overseeing the Class Action shall have the ultimate oversight and approval of this Protocol.

I.  <u>Claims Periods</u>. There will be two claims periods: the Initial Claims Period and the Extended Claims Period.

   A.  The Initial Claims Period will run for 6 months after the Order Permitting Issuance of Notice of Class Action Settlement.

   B.  The Extended Claims Period will run for 4 years after the conclusion of the Initial Claims Period. During the Extended Claims Period, Settlement Class Members can seek reimbursement for valid Out-of-Pocket Losses (excluding losses of money and time associated with Preventative Measures) incurred during the Extended Claims Period only if the Settlement Class Member provides a certification that he or she has not obtained reimbursement for the claimed expense through other means.

II.  <u>Claims Process</u>. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically through the Settlement Website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Initial Claims Period, or, where applicable, during the Extended Claims Period.

   A.  The Settlement Administrator will mail paper copies of the Claim Forms and Notice to Settlement Class Members who request such copies.

   B.  The Settlement Administrator will review, determine the validity of, and process all claims submitted by Settlement Class Members.

1.      In determining whether to approve claims submitted by Settlement Class Members, the Settlement Administrator will consider circumstances beyond the control of the Settlement Class Member (e.g., if a Settlement Class Member incurs a loss on the last day of the Initial Claims Period that could only be compensated during the Initial Claims Period and submits their claim during the Extended Claims Period, that claim would be deemed as having been submitted during the Initial Claims Period).

C.     The Settlement Administrator will process valid claims of Settlement Class Members and distribute payments after the Effective Date.

III.   <u>Claims for Reimbursement for Out-of-Pocket Losses</u>. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member and shall be responsible for evaluating claims and making a determination as to whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Data Breach. Settlement Class Members with Out-of-Pocket Losses must submit Reasonable Documentation supporting their claims, except no documentation is required for claims for reimbursement for Equifax subscription products as provided in the Agreement. As used herein, "Reasonable Documentation" means documentation supporting a claim, including but not limited to: credit card statements, bank statements, invoices, telephone records, and receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the claimant do not constitute Reasonable Documentation but may be included to provide clarification, context or support for other submitted Reasonable Documentation.

A.     In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) the timing of the loss, including whether the loss occurred on or after May 13, 2017, through the date of the Class Member's claim submission; (ii) whether the loss involved the possible misuse of the type of personal information accessed in the Data Breach (i.e., name, address, birth date, Social Security Number, driver's license number, payment card information); (iii) whether the personal information accessed in the Data Breach that is related to the Class Member is of the type that was possibly misused; (iv) the Class Member's explanation as to how the loss is fairly traceable to the Data Breach; (v) the nature of the loss, including whether the loss was reasonably incurred as a result of the

Data Breach; and/or (vi) any other factor that the Settlement Administrator considers to be relevant. The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Data Breach.

B.   Out-of-Pocket Losses associated with placing or removing credit freezes on credit files and purchasing credit monitoring services ("Preventative Measures"), shall be deemed fairly traceable to the Data Breach if (i) they were incurred on or after September 7, 2017, through the date of the Settlement Class Member's claim submission, and (ii) the claimant certifies that they incurred such Out-of-Pocket Losses as a result of the Data Breach and not as a result of any other compromise of the Settlement Class Member's information.

C.   The Settlement Administrator shall not require Settlement Class Members to seek reimbursement for Out-of-Pocket Losses from other sources before filing a Claim Form.

IV.   <u>Claims for Time</u>. Settlement Class Members who spent time remedying fraud, identity theft, or other alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach, or subject to the Agreement, Settlement Class Members who spent time on Preventative Measures fairly traceable to the Data Breach, can receive reimbursement for such time expenditures subject to the following provisions.

A.   <u>Documented Time</u>. Settlement Class Members with (i) Reasonable Documentation of fraud, identity theft, or other alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach and (ii) time spent remedying these issues, or time spent taking Preventative Measures, may submit a claim for up to 20 hours of such time to be compensated at $25 per hour. This documentation may overlap with documents submitted to support other Out-of-Pocket Losses. In the event the Settlement Administrator does not approve a claim for Documented Time, that claim shall be treated as a claim for Self-Certified Time.

B.   <u>Self-Certified Time</u>. Settlement Class Members who attest (i) to fraud, identity theft, or other alleged misuse of the Settlement Class Member's personal information fairly traceable to the Data Breach, or

Preventative Measures, and (ii) that they spent time remedying such misuse or taking Preventative Measures, but who cannot provide Reasonable Documentation of such issues may self-certify the amount of time they spent by providing a certified explanation of the misuse or Preventative Measures taken and how the time claimed was spent remedying the misuse or taking Preventative Measures. Settlement Class Members may file a claim for Self-Certified Time for up to 10 hours at $25 per hour.

C.   Time Increments. Valid claims for both Documented Time and Self-Certified Time will be reimbursed in 15-minute increments, with a minimum reimbursement of 1-hour per valid Out-of-Pocket Loss claim for time.

V.   Claims for Credit Monitoring Services. All Settlement Class Members will be eligible to claim and enroll in at least 4 years of Credit Monitoring Services. Claims for Credit Monitoring Services can be made only within the Initial Claims Period. Settlement Class Members who elect to enroll in Credit Monitoring Services within the Initial Claims Period shall have the option to make a claim for One-Bureau Credit Monitoring Services at the same time they claim Credit Monitoring Services.

A.   The Settlement Administrator will coordinate with Experian to receive and send activation codes for Credit Monitoring Services no later than 45 days after either the Effective Date or the conclusion of the Initial Claims Period, whichever is later.

VI.   Claims for Alternative Reimbursement Compensation. Settlement Class Members who already have some form of credit monitoring or protection and do not claim Credit Monitoring Services may file a claim for Alternative Reimbursement Compensation of $125. The Settlement Class Member must identify the monitoring service and certify that he or she has some form of credit monitoring or protection as of the date the Settlement Class Member submits the claim and will have such credit monitoring in place for a minimum of six (6) months from the claim date. A Settlement Class Member who elects to receive Alternative Reimbursement Compensation is not eligible to enroll in Credit Monitoring Services or to seek reimbursement, as Out-of-Pocket Losses, for purchasing credit monitoring or protection services covering the six-month period after the Settlement Class Member makes a claim for Alternative Reimbursement Compensation. Claims for

4

Alternative Reimbursement Compensation can be made only within the Initial Claims Period.

VII.   <u>Restoration Services</u>. All Settlement Class Members (regardless of whether the Settlement Class Member makes any claim under the Settlement) will also be able to access Restoration Services.

VIII.  <u>Certification and Attestation</u>. The requirement that Settlement Class Members certify or attest to certain information in Claims Forms they submit will be satisfied by Settlement Class Members' signatures on the Claim Forms.  For Claims Forms submitted on behalf of minor Settlement Class Members, an additional attestation will be required to ensure that the individual filing on behalf of the minor is the minor's legal guardian or parent.  Additional security protocols and verification may be proposed by the Settlement Administrator to ensure validity of minor claims.

IX.   <u>Disputes and Appeals</u>.

A.    To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses, Alternative Reimbursement Compensation, or Credit Monitoring Services is deficient in whole or part, within 14 days after making such a determination, the Settlement Administrator shall notify the Settlement Class Member in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) of the deficiencies and give the Settlement Class Member 30 days to cure the deficiencies. The notice shall inform the Settlement Class Member that he or she can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing and request an appeal. If the Settlement Class Member attempts to cure the deficiencies but, in the sole discretion and authority of the Settlement Administrator fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within 14 days of the determination. The notice shall inform the Settlement Class Member of his or her right to dispute the determination in writing and request an appeal within 30 days. The Settlement Administrator shall have the sole discretion and authority to determine whether a claim for Out-of-Pocket Losses, Alternative Reimbursement Compensation, or Credit Monitoring Services is deficient in whole or part but may consult with the Parties in making individual determinations.

5

B.    If a Settlement Class Member disputes a determination in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) and requests an appeal, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel a copy of the Settlement Class Member's dispute and Claim Form along with all documentation or other information submitted by the Settlement Class Member. Class Counsel and Defendants' Counsel will confer regarding the claim submission, and their agreement on approval of the Settlement Class Member's claim, in whole or part, will be final. If Class Counsel and Defendants' Counsel cannot agree on approval of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to a mutually-agreeable neutral who will serve as the claims referee. If no agreement is reached on selection of the claims referee, the Parties will submit proposals to the Court. The Court will have final, non-appealable decision-making authority over designating the claims referee. The claims referee's decision will be final and not subject to appeal or further review.

X.    <u>Shortfall Notification</u>. Beginning when the Settlement Administrator first determines that there are insufficient funds remaining in the Consumer Restitution Fund to pay valid Out-of-Pocket Losses (a "Shortfall"), the Settlement Administrator shall notify Defendants and Class Counsel on a monthly basis in writing of the Shortfall. That written notification will identify the amount needed to pay the Shortfall.  Within fourteen (14) days of receiving this written notice, Defendants shall deposit money into the Consumer Restitution Fund in the amount necessary to cure the Shortfall.

XI.    <u>Reporting.</u> The Consumer Financial Protection Bureau (the "Bureau"), the Federal Trade Commission (the "Commission"), and the Parties shall, on at least a weekly basis during the Initial Claims Period unless the Bureau or the Commission determine otherwise, and as requested thereafter during the Extended Claims Period, jointly discuss with the Notice Provider and Settlement Administrator compliance with the Notice Plan, the claims process, and administration of the Consumer Restitution Fund. During such discussions, the Bureau and the Commission may make requests to the Notice Provider and Settlement Administrator for information regarding compliance with the Notice Plan, the claims process, and administration of the Consumer Restitution Fund. Such information shall not be unreasonably withheld, and any such productions shall be made within 14 days of the

request, provided that any reasonable request for an extension shall not be denied.  All information provided to the Bureau or the Commission, whether orally or in writing, shall be treated as confidential pursuant to 12 C.F.R. Part 1070, and 15 U.S.C. 46(f) and 16 CFR 4.10, respectively, and not publicly disclosed until the Effective Date.  Information provided to the Bureau or the Commission will be anonymized except in the case of a consumer complaint to the Bureau or the Commission or where the consumer provides consent.

XII.   <u>Toll-Free Number</u>. The Settlement Administrator will establish and maintain a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries. The toll-free telephone line will be staffed with sufficient resources to handle reasonably expected call volumes.

XIII.  <u>Settlement Website</u>. The Settlement Administrator will establish and maintain the Settlement Website to permit consumers to obtain information about the Settlement Class Members' rights and options under the Settlement and submit claims during the Initial and Extended Claims Periods. The Settlement Website will:

A.   Contain a "landing page" upon Class Counsel's filing of the Motion for Preliminary Approval, indicating that the Settlement Website will be updated upon the Court's entry of the Order Permitting Issuance of Class Action Notice in the Class Action;

B.   Be available for informational purposes and for submission of claims as soon as possible after the Court's entry of the Order Permitting Issuance of Class Action Notice in the Class Action;

C.   Be maintained until the end of the Extended Claims Period;

D.   Include answers to frequently asked questions;

E.   Provide consumers the ability to access a mechanism to determine whether they are Settlement Class Members;

F.   Include information concerning how Settlement Class Members can enroll in the Credit Monitoring Services and One-Bureau Credit Monitoring Services, and access Restoration Services available through the Settlement once these benefits become available;

G.    Describe the information and documentation that consumers must submit in connection with their claims, including instructions for providing such information and submitting such documentation by electronic upload or mail; and

H.    Be available in English, and translated to Spanish as soon as possible.

XIV.   <u>Mailing Payments:</u> When mailing a check or prepaid card, the Settlement Administrator shall send the check or prepaid card to the address provided by the Settlement Class Member in the Claim Form or to the Settlement Class Member's preferred address if updated with the Claims Administrator. If a check or prepaid card is returned as undeliverable, the Settlement Administrator will make all reasonable efforts to deliver the check or prepaid card, including by attempting to contact the Settlement Class Member in order to obtain an updated address, sending the check or prepaid card to any forwarding address provided upon return as undeliverable, and/or by using the National Change of Address (NCOA) dataset. Any check or prepaid card will include its expiration date, if applicable, and the Settlement Class Member's name. The Settlement Administrator will inform the Settlement Class Member that the check or prepaid card is for the "Equifax Data Breach Settlement" and any conditions that must be complied with in order to receive the funds. There will be no fees or charges of any kind debited from Settlement Class Members for obtaining funds from the check or prepaid card; however, checks not cashed within 90 days shall no longer be valid.  Class Members who have not yet cashed checks will be reminded to do so between 30 and 40 days after the checks have been issued.

# EXHIBIT 10

# SETTLEMENT CLASS REPRESENTATIVES

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE: EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL Docket No. 2800<br><br>Case No.: 1:17-md-2800-TWT<br><br>**CONSUMER ACTIONS** |

## EXHIBIT 10
## SETTLEMENT CLASS REPRESENTATIVES

| | |
|---|---|
| 1. Acklin-Davis, Cherya | 19. Clemente, Ricardo |
| 2. Adams, Christy | 20. Craney, Bridgette |
| 3. Anderson, Robert | 21. Crowell, Thomas |
| 4. Angelechio, Donald | 22. Davis, Germany |
| 5. Archambault, Michelle | 23. Dunleavy, Christopher |
| 6. Armstrong, Dean | 24. Elliott, Abby |
| 7. Bakko, Justin | 25. Etten, Robert |
| 8. Benson, Robert | 26. Ferrel, Kayla |
| 9. Bielecki, David | 27. Ferrell, Janelle |
| 10. Bishop, Michael | 28. Galpern, Andrew |
| 11. Bologna, Sabina | 29. Gay, James |
| 12. Browning, Nancy | 30. Getz, Michael |
| 13. Campbell, Francine | 31. Goza, Terry |
| 14. Carr, Mark | 32. Greenwood, Thomas |
| 15. Carr, Natasha | 33. Grossberg, Josh |
| 16. Chase, Michael | 34. Guess, Jasmine |
| 17. Cherney, Jack | 35. Hammond, John |
| 18. Cho, Grace | 36. Hannon, Thomas |

| |
|---|
| 37. Harris, Jennifer |
| 38. Harvey, Kismet |
| 39. Hawkins, Tabitha |
| 40. Heath, Todd |
| 41. Helton, Bob |
| 42. Henry, Cathy |
| 43. Hepburn, Alexander |
| 44. Hitchcock, Eva |
| 45. Holly, Kathleen |
| 46. Hornblas, Michael |
| 47. Jacobs, Gregory |
| 48. Kacur, David |
| 49. Kier, Aloha |
| 50. King, Brenda |
| 51. Kleveno Jr., Alvin |
| 52. Klotzbaugh, Joanne |
| 53. Lee, Debra |
| 54. Lemmons, Brett |
| 55. Lipner, Leah |
| 56. Martucci, Maria |
| 57. May, Delitha |
| 58. McGonnigal, James |
| 59. Mirarchi, Anthony |
| 60. Napier, Barry |
| 61. O'Dell, Justin |
| 62. Olson, Kyle |
| 63. Orchard III, Mel |
| 64. Packwood, Joseph |
| 65. Pagliarulo, John |
| 66. Parks, Richard |
| 67. Parrow, Clara |
| 68. Pascal, Bruce |
| 69. Patterson, Sylvia |

| |
|---|
| 70. Paulo, Wanda |
| 71. Perkins, Dallas |
| 72. Plante, Stephen |
| 73. Podalsky, Gregg |
| 74. Rajput, Sanjay |
| 75. Sanchez, Benjamin |
| 76. Sands, David |
| 77. Santomauro, Rodd |
| 78. Schifano, Maria |
| 79. Schneider, Thomas |
| 80. Sharp, James |
| 81. Sharpe, Miche' |
| 82. Simmons II, John |
| 83. Smith, Amie |
| 84. Solorio, Anna |
| 85. Strausser, Jonathan |
| 86. Strychalski, Kim |
| 87. Swiftbird, Pete |
| 88. Tafas, Cheryl |
| 89. Tobias, Gerry |
| 90. Turner, Nathan |
| 91. Tweeddale, Jennifer |
| 92. Van Fleet, Katie |
| 93. Whittington II, Richard |