# Exhibit 8

Declaration of Hon. Layn Phillips (Ret.)

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Plaintiffs' Motion to Direct Notice of Proposed Settlement

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>ALL ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

I, LAYN R. PHILLIPS, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I submit this Declaration in my capacity as the mediator in connection with the proposed settlement of the above-captioned class action. While the mediation process is confidential, the parties have authorized me to inform the Court of the procedural and substantive matters set forth herein in support of approval of the Settlement. My statements and those of the parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my part or the parties' part to waive the agreement or the protections of Rule 408. I make this declaration based on personal knowledge and am competent to so testify.

2.  I am a former U.S. District Judge, a former United States Attorney, and a former litigation partner with the law firm of Irell & Manella LLP. I currently

serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises, which is based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California and the District of Columbia, as well as the U.S. Courts of Appeals for the Ninth and Tenth Circuits and the Federal Circuit.

3. I earned my Bachelor of Science in Economics as well as my J.D. from the University of Tulsa. I also completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry. After serving as an antitrust prosecutor and an Assistant United States Attorney in Los Angeles, California, I was nominated by President Reagan to serve as a United States Attorney in Oklahoma, and did so for approximately four years.

4. I personally tried many cases and oversaw the trials of numerous other cases as a United States Attorney. While serving as a United States Attorney, I was nominated by President Reagan to serve as a United States District Judge for the Western District of Oklahoma. While on the bench, I presided over a total of more than 140 federal trials and sat by designation in the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico and Colorado.

5. I left the federal bench in 1991 and joined Irell & Manella, where for 23 years I specialized in alternative dispute resolution, complex civil litigation and internal investigations. In 2014, I left Irell & Manella to found my own company, Phillips ADR Enterprises, which provides mediation and other alternative dispute resolution services.

6. Over the past 25 years, I have devoted a considerable amount of my professional life to serving as a mediator and arbitrator in connection with large, complex cases such as this one. I have successfully mediated numerous complex commercial cases, including large-scale data breach actions.

7. I was first contacted by the parties in the Fall of 2017 regarding assisting with discussions concerning a potential resolution of this litigation and agreed to serve as mediator to facilitate such discussions. On November 27 and 28, 2017, the parties and their counsel participated in their first of five separate mediation sessions before me that together covered six full days of mediation. The parties engaged in additional in-person mediation sessions on May 25, 2018, August 9, 2018, November 16, 2018, and March 30, 2019. The participants during these various sessions included Co-Lead Counsel for the Consumer Plaintiffs and members of the Plaintiffs' Steering Committee, and representatives from Equifax along with their outside counsel from King & Spalding and Hogan Lovells.

8. Prior to the mediation sessions, the parties provided me detailed mediation statements that addressed key factual issues, and the important legal issues related to both liability and damages. Many of the issues presented by the parties were novel and unsettled. For example, Equifax maintained the position that plaintiffs could not establish a common law duty to protect confidential information under Georgia law, plaintiffs could not certify a class, and plaintiffs had suffered no cognizable injuries. Plaintiffs countered on all these points. I found these mediation statements to be extremely valuable in helping me understand the relative merits of each party's positions, and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. It was apparent to me from the first mediation session that both sides possessed strong, non-frivolous arguments, and that neither side was assured of victory if the case was litigated to final judgment.

9. Because the parties submitted their mediation statements and arguments in the context of a confidential mediation process pursuant to Federal Rule of Civil Procedure 408, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of much hard work, and they were complex and highly adversarial. After reviewing all of the written mediation statements and exhibits, I believed that the negotiation would

be a difficult and adversarial process through which all involved would hold strong to their convictions that they had the better legal and substantive arguments, and that a resolution without further litigation or trial was by no means certain.

10. The November 2017 mediation session concluded with the parties far apart in their respective negotiation positions. It did, however, provide a framework for the parties' continued dialogue. Over the course of the next 16 months, the parties regularly advised me as to their direct communications regarding potential resolution of the case and attempts to make progress on specific issues including Equifax's business practice changes, coordination with Equifax's efforts to resolve certain regulatory investigations related to the 2017 data breach, the amount of any settlement fund, and the form of the parties' settlement Term Sheet. The parties' additional mediation sessions on May 25, 2018, August 9, 2018, and November 16, 2018 resulted in incremental movement towards settlement. But while productive in some respects, these additional sessions were, like the first session, difficult and adversarial, and the session on November 16, 2018 ended with a substantial chasm remaining between the parties' respective settlement positions.

11. In late 2018, I was informed that the parties were at impasse and that settlement discussions had ceased. After the Court's January 28, 2019 ruling on

Equifax's Motion to Dismiss, I contacted both sides and concluded that the parties had widely divergent views on the meaning and import of the Court's order and the prospects for the case moving forward. Nevertheless, I encouraged the parties to continue their evaluations of their respective positions and prospects for settlement. The parties subsequently agreed to mediate a fifth time on Saturday, March 30, 2019.

12. In advance of the March 30 mediation I instructed the parties to meet in my office on the evening on March 29 to discuss the progress on the proposed business practice changes and the form of the parties' draft Term Sheet. When the mediation commenced the morning of March 30, the parties exchanged settlement proposals related to the amount of the settlement fund and continued to finalize the non-monetary terms of the settlement including the business practice changes and form of the Term Sheet. Although the parties reached consensus on the non-monetary terms, the parties were at impasse on the amount of the settlement fund. Late into the evening of March 30, I made a double-blind mediator's proposal, which was accepted by both parties, and the parties executed a binding Term Sheet at approximately 11 p.m. subject to approval by Equifax's Board of Directors which was received the following business day.

13. Based on my experience as a litigator, a former U.S. District Judge and a mediator, I believe that this settlement represents a reasonable and fair outcome given the parties' strongly held positions throughout the 16 months of negotiations. As such, I strongly support the approval of the settlement in all respects.

14. Finally, the advocacy on both sides of the case was outstanding. Co-Lead Counsel for the Plaintiffs – Norman Siegel, Ken Canfield, and Amy Keller – and counsel from King & Spalding – David Balser, Phyllis Sumner, and Stewart Haskins and Michelle Kisloff from Hogan Lovells – represented their clients with tremendous effort, creativity, and zeal. All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients and the settlement is the direct result of all counsel's experience, reputation, and ability in complex class actions including the evolving field of privacy and data breach class actions.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct and that this declaration was executed this 17 day of July, 2019.



LAYN R. PHILLIPS