# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT |
| This document relates to: FINANCIAL INSTITUTIONS | Chief Judge Thomas W. Thrash, Jr. |

## RESPONSE IN OPPOSITION TO THE FINANCIAL INSTITUTION PLAINTIFFS' MOTION FOR LEAVE TO AMEND

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................2

I.    The Operative Complaint ...........................................................................2

II.   The Motion to Dismiss Order...................................................................3

III.  The Proposed Amended Complaint.................................................4

LEGAL STANDARDS .................................................................................8

ARGUMENT ....................................................................................................9

I.    The FI Plaintiffs Proposed Amendments Fail to Establish Standing To
Pursue The Ecosystem Claims. ......................................................9

     A.   The Proposed Amended Complaint Fails to Add Any
Meaningful Factual Allegations to the Operative Complaint. .............9

     B.   The Proposed Amended Complaint Fails to Plead Actual
Injuries Traceable to Equifax's Conduct..............................................10

          1.   The FI Plaintiffs' Allegations of Fraudulent Banking
Activity Are Not Concrete, Particularized or Traceable to
Equifax's Conduct...................................................................11

               a.   Any Fraudulent Banking Activity Stemming From
Harm to the Financial "Ecosystem" Is Not
Concrete and Particularized...........................................12

               b.   The Alleged "Fraudulent Banking Activity" Is Not
Traceable to Equifax's Conduct. ...................................17

          2.   The FI Plaintiffs' Strained Allegations of "Lost Revenue"
From Credit Freezes Are Entirely Speculative........................21

     C.   The FI Plaintiffs' Remaining "Risk of Harm" Injuries Are Still
Insufficiently Concrete or Particularized. ...........................................23

i

1.      The FI Plaintiffs Cannot Establish an Imminent, Particularized Risk of Harm Based On Alleged "Ecosystem" Injuries. ...............................................24

2.      The FI Plaintiffs Cannot Charge Equifax With The Costs Of Doing Business As A Financial Institution. .......................27

D.      The Ecosystem Claims Are Not Redressable.....................................28

CONCLUSION .............................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Private Clinic Mgmt. LLC v. Berry*,
   912 F.3d 1330 (11th Cir. 2019) ........................................................28

*Attias v. Carefirst, Inc.*,
   865 F.3d 620 (D.C. Cir. 2017)...................................................14, 15

*Bd. of Ottawa Twp. High Sch. Dist. 140 v. U.S. Dep't of Educ.*,
   05 C 00655, 2007 WL 1017808 (N.D. Ill. Mar. 31, 2007), *aff'd Bd.
   of Educ. of Ottawa Twp. High Sch. Dist. 140 v. Spellings*, 517 F.3d
   922 (7th Cir. 2008)..........................................................................23

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ...........................................................15

*Bernstein v. Kerry*,
   962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd*, 584 Fed. Appx. 7 (D.C.
   Cir. 2014) ........................................................................................18

*Blocker v. Small Bus. Admin.*,
   916 F. Supp. 37 (D.D.C. 1996)........................................................28

*Brewer-Giorgio v. Producers Video, Inc.*,
   216 F.3d 1281 (11th Cir. 2000) .........................................................8

*Carrero v. Farrelly*,
   310 F. Supp. 3d 542 (D. Md. 2018)...................................................9

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................*passim*

*Clean Air Council v. United States*,
   362 F. Supp. 3d 237 (E.D. Pa. 2019)...............................................18

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005) .........................................................8

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    563 F.3d 466 (D.C. Cir. 2009) .............................................................. 13

*Ctr. for Law & Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) ............................................................ 25

*Dalton Farms Associates v. Baker*,
    704 F. Supp. 460 (S.D.N.Y. 1989) ...................................................... 20

*Florida Association of Medical Equipment Dealers v. Apfel*,
    194 F.3d 1227 (11th Cir. 1999) ............................................................ 17

*Florida Audubon Soc. v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) ......................................................... 13, 18

*Florida Wildlife Fed'n, Inc. v. S. Florida Water Mgmt. Dist.*,
    647 F.3d 1296 (11th Cir. 2011) ............................................................ 28

*Garcia v. Evans*,
    1:08-CV-01819-AWI, 2012 WL 1564491 (E.D. Cal. Apr. 30,
    2012) ...................................................................................................... 10

*Georgia Dep't of Labor v. McConnell*,
    828 S.E.2d 352 (Ga. 2019) .................................................................... 29

*Griffin v. Coca-Cola Enters., Inc.*,
    686 F. App'x 820 (11th Cir. 2017) ......................................................... 9

*Griffin v. Dep't of Labor Fed. Credit Union*,
    912 F.3d 649 (4th Cir. 2019) ................................................................ 12

*Griffin v. Lockheed Martin Corp.*,
    647 F. App'x 920 (11th Cir. 2016) ......................................................... 8

*Habecker v. Town of Estes Park, Colo.*,
    518 F.3d 1217 (10th Cir. 2008) ...................................................... 19, 22

*Hartz Mountain Indus., Inc. v. Polo*,
    CIV.A. 05-2530 (JAP), 2005 WL 2807355 (D.N.J. Oct. 26, 2005) .................. 13

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*,
  641 F.3d 1259 (11th Cir. 2011) ............................................................8

*Kansas Corp. Comm'n v. Fed. Energy Regulatory Comm'n*,
  881 F.3d 924 (D.C. Cir. 2018) ............................................................13

*KH Outdoor, L.L.C. v. Clay Cty., Fla.*,
  482 F.3d 1299 (11th Cir. 2007) ..........................................................29

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .....................................................................20, 26

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................22

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ...........................................................15, 25

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ..........................................................21

*Rivers v. S. Auction & Realty*,
  A19A0049, --- S.E.2d ---, 2019 WL 2710228 (Ga. Ct. App. June
  28, 2019) ...............................................................................................6

*Rueb v. Brown*,
  504 F. App'x 720 (10th Cir. 2012) ......................................................10

*Sonnett v. Lankford*,
  15-CV-024-S, 2016 WL 9088707 (D. Wyo. Mar. 10, 2016) ..............10

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016) .....................................................................9, 10

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) ..............................................................15

*Torres v. Wendy's Co.*,
  195 F. Supp. 3d 1278 (M.D. Fla. 2016) .........................................16, 25

*Wagner v. Levann*,
  12-CV-00187-WJ-SMV, 2014 WL 12798379 (D.N.M. Jan. 8,
  2014) ................................................................................................................10

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ...................................................................14, 15

**Statutes**

O.C.G.A. § 13-6-11.................................................................................................6

# **INTRODUCTION**

In its order ruling on Equifax's motion to dismiss the Financial Institutions' Consolidated Amended Complaint, this Court held that the Financial Institution Plaintiffs ("FI Plaintiffs") lack standing to assert their so-called "Ecosystem Claims"—*i.e.*, claims asserted by FI Plaintiffs that did not issue any payment cards compromised in the Equifax data breach but that nonetheless seek to recover for ripple-effect harms that *all U.S. financial institutions* allegedly suffered due to the compromise of *consumer* PII rather than their own information.

The FI Plaintiffs now seek leave to file a Second Amended Consolidated Complaint (the "Proposed Amended Complaint") that continues to assert Ecosystem Claims. The gist of their motion for leave is that they have cured the defects that the Court identified by pleading additional factual detail about their claimed injuries. But the defects in the FI Plaintiffs' Ecosystem Claims are incurable.  Contrary to the FI Plaintiffs' contention, the Court did not dismiss these claims simply because the complaint contained insufficient factual detail—the Court deemed the entire theory of recovery infirm and unworkable:

> Other than the Financial Institution Card Issuers, the Plaintiffs do not allege that any of their information was stolen from them in the Data Breach. The injury that they claim is an injury to the "credit reporting system." This is not an injury that is concrete and particularized to the Plaintiffs. Any person or business that relies upon the provision of credit—that is, virtually everybody—can claim this injury.    This

1

theory of liability would allow every financial institution in the United States—and everyone else—to sue every time that there is a data breach where personally identifying information is stolen.

Motion to Dismiss Order (the "MTD Order," Dkt. 539, *amended* Dkt. 711) at 10-11. In other words, the Court concluded that the injuries the FI Plaintiffs alleged in support of the Ecosystem Claims are *not* concrete and particularized; nor are they traceable to Equifax's conduct.

The Court's reasoning still applies to the Proposed Amended Complaint, and it would be entirely futile to let the FI Plaintiffs plead additional factual detail in support of their legally invalid Ecosystem Claims. The motion for leave to amend should, therefore, be denied.

## **BACKGROUND**

### I.   **THE OPERATIVE COMPLAINT**

The FI Plaintiffs filed the Financial Institution Plaintiffs Consolidated Amended Complaint (the "Operative Complaint," Dkt. 390) on May 30, 2018. The Operative Complaint asserted claims on behalf of 46 named plaintiffs, half of which allegedly issued payment cards impacted in the Equifax data breach. Operative Compl. ¶¶ 12-57.

The Operative Complaint asserted Ecosystem Claims on behalf of all the FI Plaintiffs based on the repeated allegation that, as "participant[s] in the country's

2

credit reporting system," the Equifax data breach spurred the FI Plaintiffs to incur "direct out of pocket costs related to undertaking an investigation of the impact of the Equifax Data Breach, increased monitoring for potentially fraudulent banking activity, and communicating with customers regarding their concerns about identity theft and the safety of their accounts." *Id.* Each FI Plaintiff also alleged that they "had suffered and are at increased risk of suffering losses as a result of various forms of fraudulent banking activity." *Id.* ¶ 234.

Based on these allegations, the FI Plaintiffs sought to recover not only for costs associated with reissuing compromised payment cards, but also for numerous other costs untied to any payment cards, including payments purportedly made to reimburse customers whose PII was impacted in the data breach for unspecified fraudulent banking activity and costs allegedly associated with the prevention of future bank fraud. *Id.* ¶¶ 234-261. No court has ever permitted these "Ecosystem" Claims. In fact, to Equifax's knowledge, no financial institution has previously asserted such claims in the wake of a data breach involving consumer PII.

## II.   THE MOTION TO DISMISS ORDER

In due course, Equifax moved to dismiss the FI Plaintiffs' Operative Complaint. The Court issued its MTD Order on January 28, 2019, granting in part and denying in part Equifax's motion to dismiss. *See* MTD Order. The Court

3

generally denied Equifax's motion as it related to claims associated with compromised payment cards, but granted the motion in all other respects, including by holding that the FI Plaintiffs lacked Article III standing to assert the Ecosystem Claims. *See generally id.*

The Court ruled that the FI Plaintiffs failed to establish any of the essential elements of standing with respect to the Ecosystem Claims. It held that their alleged injuries were not "concrete and particularized" to the FI Plaintiffs because the alleged injuries impacted all business that rely on PII to verify customers' identities, *id.* at 9-11; that even if the FI Plaintiffs had suffered a concrete and particularized injury, they had failed to demonstrate that it was traceable to Equifax, *id.* at 16-17; and that, even if the FI Plaintiffs could otherwise establish standing, the injury they complained of—*i.e.,* the "[p]ollution of the entire financial services ecosystem"—could not be judicially redressed, *id.* at 17.

## III.  THE PROPOSED AMENDED COMPLAINT

Although the FI Plaintiffs have made a handful of cosmetic changes to downplay the "ecosystem" nature of their claims, *see, e.g.*, Dkt. 648-3 at 229, they have not altered the basic nature of their Ecosystem Claims or the legal theories under which they wish to proceed in this case.

4

The majority of the allegations in the Proposed Amended Complaint are unchanged from the Operative Complaint. *See generally id*. The Proposed Amended Complaint seeks to revive the Ecosystem Claims by altering the "Parties" section in the Operative Complaint in two ways. First, the Proposed Amended Complaint would remove most of the original named plaintiffs and a number of state-specific claims that those named plaintiffs asserted. Second, the Proposed Amended Complaint adds additional detail concerning the purported "injuries" of the named plaintiffs that wish to remain in the case. *Id.*

In particular, while the Operative Complaint was filed on behalf of 46 financial institutions and 25 "associations or leagues," Operative Compl. ¶¶ 12-58, the Proposed Amended Complaint would reduce those numbers to 12 FI Plaintiffs and 6 Association Plaintiffs,[1] Prop. Am. Compl. ¶¶ 11-30. The remaining FI Plaintiffs consist of four financial institutions—DL Evans Bank, Financial Health Federal Credit Union, First Financial Credit Union, and The First State Bank—that did not issue any payment cards compromised in the breach. Prop. Am. Compl. ¶¶ 13-15. The other eight FI Plaintiffs who allegedly issued compromised payment

---

[1] Of the six remaining Association Plaintiffs, one of them—Indiana Credit Union League—fails to allege that one of its members issued compromised payment cards. *Id*. ¶ 27. That Association Plaintiff therefore still fails to establish standing. *See* MTD Order at 20 ("Failure to identify an injured constituent prevents an association from asserting associational standing.").

cards also continue to assert the Ecosystem Claims that the Court previously dismissed, as well as claims based on the compromise of payment cards. *Id.* ¶¶11-12, 16-21.

Importantly, the Proposed Amendment Complaint alleges no new forms of injury; it just adds certain factual allegations concerning injuries that were pled—and deemed insufficient—in the Operative Complaint.[2] So, while the Operative Complaint alleged that the "FI Plaintiffs … have suffered … losses as a result of various forms of fraudulent banking activity," Operative Compl. ¶ 234, the Proposed Amended Complaint would allege specific dollar amounts of costs associated with the alleged fraudulent banking activity, *see* Prop. Am Compl. ¶¶ 15, 17, 20. And while the Operative Complaint alleges that the FI Plaintiffs "have incurred and will continue to incur additional costs to revise their methods of authentication" and to "implement new methods of fraud monitoring and

---

[2] The Proposed Amended Complaint also seeks to add a claim for attorneys' fees under O.C.G.A. § 13-6-11. *See* Prop. Am. Compl. ¶¶ 363-368. Because the majority of the FI Plaintiffs' claims have been (and should remain) dismissed, the FI Plaintiffs cannot demonstrate that Equifax has "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11; *see also Rivers v. S. Auction & Realty*, A19A0049, --- S.E.2d ---, 2019 WL 2710228, at *5 (Ga. Ct. App. June 28, 2019) ("It is well settled that mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness or causing unnecessary trouble and expense as contemplated under the statute. The key is whether a bona fide controversy exists.") (internal citation omitted). The FI Plaintiffs thus should not be permitted to add a new attorneys' fees claim.

6

prevention," Operative Compl. ¶¶ 248, 251, the Proposed Amended Complaint would identify certain identity verification services that certain named plaintiffs purchased at some point after the Equifax data breach, Prop. Am. Compl. ¶¶ 12, 15, 16, 21.

It is also important to note what is *not* included in the Proposed Amended Complaint: any allegations tying fraudulent banking activity to the Equifax data breach. At most, the Proposed Amended Complaint alleges that four of the twelve FI Plaintiffs had customers who were among the 147 million individuals whose PII was compromised in the Equifax data breach and that some of those same customers were victims of bank fraud *at some point* in the nearly two years that have elapsed since the breach. *E.g.*, Prop. Am. Compl. ¶ 17 (alleging that Hudson River Community Credit Union "reimbursed customers whose PII was stolen in the Data Breach for fraudulent transactions"). But the Proposed Amended Complaint alleges no facts tying the alleged fraud to the Equifax data breach.[3]

---

[3] Despite already having asked this Court for leave to amend, on July 12, 2019 counsel for the FI Plaintiffs filed a putative class action in Pennsylvania state court asserting Ecosystem Claims nearly identical to those asserted in the Proposed Amended Complaint on behalf of a named FI Plaintiff that was dismissed from this case as a result of the MTD Order. See Ex. 1. That FI Plaintiffs' counsel felt the need to file this overlapping state-court complaint suggests they recognize the futility of the instant Motion to Amend.

## LEGAL STANDARDS

Although leave to amend "'shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (quoting *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir. 1992)). A proposed amendment is futile where a plaintiff lacks standing to assert the claims in the proposed amended complaint. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida,* 641 F.3d 1259, 1271 (11th Cir. 2011) (affirming "denial of the motion for leave to amend the complaint as futile" where plaintiff lacked standing to pursue claims in amended complaint); *Griffin v. Lockheed Martin Corp.*, 647 F. App'x 920, 924 (11th Cir. 2016) (same). And denying leave to amend is especially appropriate where, as here, "[t]he deficiencies of the second amended complaint remain[] in the proposed complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1015 (11th Cir. 2005).

The FI Plaintiffs' motion to amend should be denied as futile because it fails to remedy the incurable standing deficiencies identified in the MTD Order.

## ARGUMENT

### I.  THE FI PLAINTIFFS PROPOSED AMENDMENTS FAIL TO ESTABLISH STANDING TO PURSUE THE ECOSYSTEM CLAIMS.

To establish Article III standing, each Plaintiff bears the burden of pleading individualized facts showing that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs bear the burden of pleading allegations to support Article III standing sufficient to satisfy the *Twombly* and *Iqbal* pleading standards. *See, e.g.*, *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017). The Proposed Amended Complaint continues to fall short of pleading any of the three required elements of standing.

### A.  The Proposed Amended Complaint Fails to Add Any Meaningful Factual Allegations to the Operative Complaint.

As shown by the chart attached as Appendix A, the clearest failing of the Proposed Amendment Complaint is that it alleges no new types of injuries, but simply adds additional detail concerning alleged injuries that the Court already deemed insufficient to establish Article III standing.

The FI Plaintiffs' failure to include any materially different allegations means their motion to amend should be denied outright. *See Carrero v. Farrelly*,

310 F. Supp. 3d 542, 547–48 (D. Md. 2018) ("A motion to amend a complaint is not the proper vehicle to offer new arguments in favor of standing based on the same factual allegations the Court already held insufficient."); *see also Rueb v. Brown*, 504 F. App'x 720, 722 (10th Cir. 2012) (affirming district court's denial of motion to amend "as an inappropriate attempt to seek reconsideration of the court's previous determination"); *Sonnett v. Lankford*, No. 15-CV-024-S, 2016 WL 9088707, at *2 (D. Wyo. Mar. 10, 2016) (denying motion to amend and noting that "[i]t appears Plaintiffs have filed the instant Motion to Amend in an attempt to skirt the Court's previous decision, or in an attempt to have this Court reconsider the ruling"); *Wagner v. Levann*, No. 12-CV-00187-WJ-SMV, 2014 WL 12798379, at *2 n.2 (D.N.M. Jan. 8, 2014) (same); *Garcia v. Evans*, No. 1:08-CV-01819-AWI, 2012 WL 1564491, at *1 (E.D. Cal. Apr. 30, 2012) (same).

### B. The Proposed Amended Complaint Fails to Plead Actual Injuries Traceable to Equifax's Conduct.

To plead an injury-in-fact, a plaintiff must show that its injury is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted). Here, Plaintiffs allege two types of "actual" injuries (*i.e.,* injuries that are not prophylactic responses to a perceived risk of future harm): (1) alleged costs incurred to reimburse customers for "fraudulent banking activity" and (2) alleged

10

lost revenue stemming from customers' choosing to freeze their credit reports. Neither of these injuries is concrete, particularized, or traceable to Equifax's conduct.

> **1.    The FI Plaintiffs' Allegations of Fraudulent Banking Activity Are Not Concrete, Particularized or Traceable to Equifax's Conduct.**

The basis for the FI Plaintiffs' motion to amend is their assertion that, because the Proposed Amended Complaint adds "specificity" to certain Plaintiffs' allegations of "fraudulent banking activity," the Proposed Amended Complaint now establishes an "imminent" threat of harm sufficient to prop up the rest of the attenuated, prophylactic "injuries" underpinning the Ecosystem Claims. This theory falls apart, however, because even with the inclusion of certain FI Plaintiffs' "individual stories" of fraudulent banking activity, there are still no allegations supporting the conclusion that the alleged fraud is a concrete and particularized injury traceable to Equifax's conduct. Despite making certain cosmetic edits in the Proposed Amended Complaint, *see* Dkt. 648-3, the FI Plaintiffs' claims still necessarily rest on the vague and general theory that Equifax harmed the financial "ecosystem." This is not a cognizable basis for standing.

        *a.*    *Any Fraudulent Banking Activity Stemming From Harm to the Financial "Ecosystem" Is Not Concrete and Particularized.*

The alleged fraud losses forming the cornerstone of the Ecosystem Claims are not concrete or particularized to any individual plaintiff. As the MTD Order observed, the FI Plaintiffs "do not allege that any of their information was stolen from them in the Data Breach," meaning that the only "injury that they claim is an injury to the 'credit reporting system.'" MTD Order. at 10. Nothing in the Proposed Amended Complaint changes—or could change—this inescapable conclusion.

Although the FI Plaintiffs have now placed approximate dollar amounts on the amount of bank fraud losses they allegedly incurred in the 18 months following the announcement of the Equifax data breach, those allegations still fall short of showing a particularized injury.

For one, the allegations do nothing to change the reality that all financial institutions fall victim to bank fraud for innumerable reasons and that, *at most*, the FI Plaintiffs believe that the alleged instances of bank fraud are associated with a greater, industry-wide risk of fraud following the Equifax data breach. *See, e.g., Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (for an injury to be particularized, "[t]here must be some connection between the

plaintiff and the defendant that 'differentiate[s]' the plaintiff so that his injury is not 'common to all members of the public'") (quoting *United States v. Richardson*, 418 U.S. 166, 177 (1974)); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) (plaintiffs' climate-change-related injuries were not particularized because they were "not focused any more on these petitioners than … on the remainder of the world's population"); *Hartz Mountain Indus., Inc. v. Polo*, CIV.A. 05-2530 (JAP), 2005 WL 2807355, at *7 (D.N.J. Oct. 26, 2005) (residents and businesses lacked standing to recover costs associated with increased congestion caused by construction project because the "alleged injuries are nothing more than generalized, amorphous grievances shared by the public at large").

Moreover, the fact remains that any "particularized effects" of the compromise of consumer PII in the Equifax data breach "will not be felt by [the FI Plaintiffs] unless an 'attenuated chain of possibilities' occurs." *Kansas Corp. Comm'n v. Fed. Energy Regulatory Comm'n*, 881 F.3d 924, 930 (D.C. Cir. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 666 (D.C. Cir. 1996) (claims of a "particularized injury" cannot be based "on a lengthy chain of conjecture").

13

The FI Plaintiffs' attempt to analogize the Ecosystem Claims to the claims asserted by consumer plaintiffs or payment card plaintiffs only underscores the general (and speculative) nature of the Ecosystem Claims. Unlike the consumer and payment card claims, none of the compromised data underpinning the Ecosystem Claims is alleged to have belonged to the FI Plaintiffs. *See* Mot. to Am. at 23. The alleged injuries for which the Ecosystem Plaintiffs seek recovery are therefore not particularized to the FI Plaintiffs.

Even assuming the lengthy chain of events required to get from the Equifax data breach to an occurrence of bank fraud, the loss of any given individual's PII cannot be said to have damaged any particular bank. The "injury" the FI Plaintiffs complain about is instead spread across all financial institutions and, indeed, all businesses that rely on PII. *See* MTD Order at 11 (noting that the "infinitely wide web of potential injuries" implicated by the Ecosystem Claims "is neither concrete nor particularized"). The FI Plaintiffs' attempt to ride the coattails of the consumer and payment card plaintiffs does not hold up.

The same goes for the FI Plaintiffs' reliance on cases like *In re  Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018), and *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017). Each of those cases involved lawsuits by *consumers* based on the alleged loss of *their own* information that had been given to the defendants in the

14

context of a direct business relationship. *See Zappos.com*, 888 F.3d at 1027 (noting

that the consumer plaintiffs' PII had been compromised); *Carefirst*, 865 F.3d at

628 (consumers alleged that their insurance company lost health records and other

PII belonging to them). Claims like these are a far cry from the Ecosystem Claims,

which rely on information that did not belong to the FI Plaintiffs but rather their

third-party customers.

And although *Zappos* and *Carefirst* found standing where consumers sued

for the loss of their own PII, numerous other courts have held that consumer

plaintiffs failed to establish a concrete and particularized injury sufficient to confer

standing in the context of a data breach. *See In re SuperValu, Inc.*, 870 F.3d 763,

771 (8th Cir. 2017) (rejecting argument that "costs . . . incurred to mitigate . . . [a]

risk of identity theft, including time [plaintiffs] spent reviewing information about

the breach and monitoring their account information, constitute[d] an injury in fact

for purposes of standing"); *Beck v. McDonald*, 848 F.3d 262, 276–77 (4th Cir.

2017) (holding that "self-imposed harms cannot confer standing"); *Reilly v.

Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (concluding that "alleged time and

money expenditures to monitor . . . financial information do not establish standing,

because costs incurred to watch for a speculative chain of future events based on

hypothetical future criminal acts are no more 'actual' injuries than the alleged

'increased risk of injury'"); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) (same).

If the Ecosystem Claims were to be analogized to other claims, the more apt comparison is to the Small Business claims which this Court previously dismissed in their entirety. *See* Dkt. 541 (dismissing small business claims). In its order dismissing those claims, the Court held that the claims of small businesses based on the alleged compromise of their *business owners'* PII failed for lack of standing. *Id.* at 10-14. The Court reasoned that the injuries pled were not concrete or particularized, but instead were "too attenuated and too speculative and conjectural," because an exceedingly long chain of events would have to occur before they materialized. *Id.* at 12.

So too here. The FI Plaintiffs' claims of bank fraud are based on nothing more than speculation about a series of events that may or may not have led to the FI Plaintiffs' alleged "fraudulent banking activity" losses. *See id.* at 12-13 ("These alleged injuries are too speculative because any break in the attenuated causal chain would result in the injuries not occurring, and also because the 'risk of harm' resulting from compromised personal information itself is too uncertain."). The allegations of fraudulent banking activity are, at best, based on speculation about a

series of possible criminal events and not the kind of concrete and particularized injuries that support standing in federal court.

>   b.   The Alleged "Fraudulent Banking Activity" Is Not Traceable to Equifax's Conduct.

The FI Plaintiffs' argument about the traceability of the alleged fraudulent banking activity is entirely conclusory and untethered to their own allegations. The FI Plaintiffs contend that they have satisfied the traceability requirement because they plead that, "as a direct result of the Equifax Data Breach," they "reimburs[ed] consumers for fraudulent charges that are tied to the Data Breach." Mot. to Am. at 25.  But this blanket assertion is plainly insufficient.

The motion to amend fails to address—and cannot address—the Court's observation that "actual harm to a financial institution is contingent upon a lengthy sequence of actions that are far removed from the Data Breach." MTD Order at 16-17 (citing *Florida Association of Medical Equipment Dealers v. Apfel*, 194 F.3d 1227, 1229 (11th Cir. 1999)). The FI Plaintiffs do not and cannot dispute that the "fraudulent banking activity" for which they seek to recover would necessarily be the result of a complex web of independent actions taken by third-party criminals. *E.g.*, Prop. Am. Compl. ¶ 189 (describing lengthy process that leads to bank fraud). And because "a protracted chain of causation" defeats standing, the Court's holding on this point still controls and precludes the FI Plaintiffs from establishing

17

traceability. *Florida Audubon Soc.*, 94 F.3d at 670; *see also Apfel,* 194 F.3d 1227, 1229 (claims based on similar chain of possible events were "much too attenuated" to confer standing); *Clapper*, 568 U.S. at 414 (plaintiffs lack standing where injury is dependent on a "speculative chain of possibilities"); *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 248 (E.D. Pa. 2019) (injuries not traceable where court would be required to "speculate as to what actions" certain individuals would have taken "but for" the challenged conduct); *Bernstein v. Kerry*, 962 F. Supp. 2d 122, 129 (D.D.C. 2013), *aff'd*, 584 F. Appx. 7 (D.C. Cir. 2014) (standing not established where, "[t]o trace the alleged injury in this case to the challenged actions of defendants, this Court would have to speculate on whether defendants' funding policies were in fact aiding terrorists, whether the terrorists were using these funds for activities intended to harm plaintiffs, and whether these activities are leading to a 'certainly impending' injury for plaintiffs") (internal citation omitted).

The FI Plaintiffs attempt to short-circuit this requirement by arguing that their damages do not rely on a speculative chain of events because they already occurred. *See* Mot. Am. At 25 (attempting to distinguish *Fla. Ass'n of Med. Equip. Dealers v. Apfel*). That position misses the point, however, which is that the FI Plaintiffs' ability to *trace that injury to Equifax* is admittedly reliant on speculation

18

about a long series of events that may or may not have occurred. And no Financial Institution Plaintiff alleges *any* facts "tying" any fraudulent banking activity to the Equifax data breach, much less facts showing that the speculative chain of events required for the Equifax data breach to have led to fraudulent banking activity have occurred. All the FI Plaintiffs allege is that at some point in the eighteen-month period between the announcement of the Equifax data breach and the filing of the Proposed Amended Complaint, certain of the FI Plaintiffs' customers suffered bank fraud. *See* Am. Compl. ¶¶ 15, 17, 20-21. There are no allegations that the fraudsters were the same criminals who hacked Equifax (or even that those criminal hackers transferred the stolen PII to another third-party criminal). The FI Plaintiffs simply speculate that the bank fraud was tied to the Equifax data breach. That is not sufficient. *See Clapper*, 568 U.S. at 413 (traceability requirement not satisfied where plaintiff "can only speculate as to" the cause of the alleged injury); *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) ("If 'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden [of showing traceability] has not been met." (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

If anything, the Proposed Amended Complaint's allegations suggest that the FI Plaintiffs' claimed injuries are *not* properly charged to Equifax and are equally

19

likely to be "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *see also Dalton Farms Associates v. Baker*, 704 F. Supp. 460, 463 (S.D.N.Y. 1989) (declining to "engage in the speculation required to find that the plaintiffs' injury is fairly traceable" to defendants where alternative causes for the asserted injuries were "equally likely"). The Proposed Amended Complaint alleges that "[t]he prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S." Prop. Am. Compl. ¶ 84.  Yet the FI Plaintiffs allege no facts showing that it was the Equifax data breach—as opposed to some other breach or incident—that caused their alleged injuries.

The FI Plaintiffs try to overcome the clear gap in their traceability argument by alleging that the fraudsters used "PII compromised in the [Equifax] Data Breach." Mot. to Am. at 6, 13. But this misleading, conclusory assertion proves nothing. Any number of third-party actors can possess the exact same PII and have obtained that PII from countless different sources. That a financial institution may have been the subject of bank fraud "using" a social security number that was compromised in the Equifax data breach in no way "ties" that fraud to Equifax.

For these reasons, the FI Plaintiffs' reliance on *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), is misplaced. There, the plaintiffs were consumers who alleged that the defendant—of which they were customers—negligently allowed criminals to access the plaintiffs' *own* personal information, that the plaintiffs were careful in guarding their *own* information, and that they nonetheless fell victim to identity fraud following the data breach in question. *Resnick*, 693 F.3d at 1322. The plaintiffs did not base their claims on speculation about harms that had allegedly befallen an entire industry. Instead, the plaintiffs were a subset of the defendant's customers who had their *own* PII taken. The question whether fraud befalling a subset of individuals whose *own* PII was directly compromised in a data breach can be traced to that breach has no bearing on the separate question of whether every financial institution in the country can trace fraudulent banking activity to a data breach that did not involve financial institutions' information. *Resnick* does not control.

The FI Plaintiffs cannot meet the traceability requirement, and their claims should be dismissed.

### 2. The FI Plaintiffs' Strained Allegations of "Lost Revenue" From Credit Freezes Are Entirely Speculative.

The only other "actual" injury the FI Plaintiffs allege are "lost revenues due to abandoned credit applications from customers who froze their credit reports in

the wake of the Data Breach." Mot. Am. at 13. The FI Plaintiffs reliance on these "lost revenues" to manufacture standing is misplaced.

For one, this theory is based on nothing more than pure speculation that (1) certain customers froze their credit because of the data breach, as opposed to some other reason; (2) the customers that froze their credit because of the data breach applied for a loan; (3) those customers applying for loans would have been immediately approved if their credit reports had been unfrozen; (4) those customers would have moved forward with the loan had they been immediately approved (*i.e.,* a short delay due to a frozen credit report caused the customer to abandon a loan); and (5), if the customers who froze their credit reports had ultimately taken out a loan, they would have timely paid back their loans in full. Such unadorned speculation does not support standing in federal court. *Clapper*, 568 U.S. at 414; *Habecker*, 518 F.3d at 1225.

Moreover, the FI Plaintiffs fail to explain how their *customers'* decisions to freeze their credit reports invaded the *FI Plaintiffs'* "legally protected interest[s]." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). The FI Plaintiffs have no right to control whether their customers freeze their credit reports. That right belongs to the customers, and the FI Plaintiffs cannot assert an injury based on the exercise of that right. Moreover, while the FI Plaintiffs may choose not to issue a loan in the

absence of a credit report, they are not *prevented* from making such a loan. As a result, any "harm" stemming from not making a loan stems from each individual FI Plaintiff's own voluntary decisions, not the Equifax data breach. *See Clapper*, 568 U.S. at 416 (plaintiffs cannot generate standing by "inflicting harm on themselves"); *Bd. of Ottawa Twp. High Sch. Dist. 140 v. U.S. Dep't of Educ.*, 05 C 00655, 2007 WL 1017808, at *7 (N.D. Ill. Mar. 31, 2007), *aff'd*, 517 F.3d 922 (7th Cir. 2008) ("[R]edressable injuries do not arise from voluntary choices."); *see also* MTD Order at 12 ("The Plaintiffs  cannot manufacture standing by going beyond what is required by ordinary due diligence and regulatory compliance.").[4]

## C.   The FI Plaintiffs' Remaining "Risk of Harm" Injuries Are Still Insufficiently Concrete or Particularized.

The remaining "injuries" on which the FI Plaintiffs rely are all prophylactic measures purportedly taken in response to the Equifax data breach. These injuries include: (1) the costs to alter verification procedures; (2) the costs of services purchased to bolster fraud detection and prevention; and (3) the cost to purchase cyber security insurance. The Proposed Amended Complaint continues to fall short

---

[4] That the FI Plaintiffs assert damages from frozen credit reports only emphasizes how disjointed and unsustainable the Ecosystem Claims are. On the one hand, the FI Plaintiffs seek to charge Equifax with all fraudulent banking activity that has involved any individual whose PII was compromised in the Equifax data breach. Yet, the FI Plaintiffs also assert that they have been damaged by Equifax's encouraging consumers to freeze their credit *in order to prevent bank fraud*.

23

of demonstrating that these "injuries" were taken in response to an imminent, concrete, and particularized threat of harm, or that they are anything more than business as usual for financial institutions operating in the modern U.S. economy.

### 1. The FI Plaintiffs Cannot Establish an Imminent, Particularized Risk of Harm Based On Alleged "Ecosystem" Injuries.

Despite the "individual stories" included in the Proposed Amended Complaint, the FI Plaintiffs' theory of injury remains that the Equifax data breach made it riskier for all businesses to rely on PII to verify customer identities; therefore, U.S. financial institutions should be able to recover against Equifax for all costs incurred to guard against bank fraud in the years following the data breach. The Court already rejected this theory of standing in its MTD Order. And it should do so again here.

The FI Plaintiffs' sole argument as to why the Court should reach a different conclusion is that they have "specifically allege[d]" that they have incurred "costs to reimburse customers whose data was stolen in the Equifax Data Breach for fraudulent banking activity." Mot. Am. at 14. But this argument fails, as set out in detail above. The FI Plaintiffs have not alleged any concrete and particularized injury arising from fraudulent banking activity, or any injury that can be traced to the Equifax data breach. At best, the FI Plaintiffs continue to speculate that the

Equifax data breach has or will lead to increased bank fraud, but this naked speculation cannot carry the Ecosystem Claims or convert the FI Plaintiffs' "costs" into concrete and particularized injuries sufficient to establish standing. *See Clapper*, 133 S. Ct. at 1151 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm"); *Reilly*, 664 F.3d at 46 (concluding that "alleged time and money expenditures to monitor . . . financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury'"); *Torres*, 195 F. Supp. 3d at 1284 (same); *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) ("[W]ere all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'").

The Ecosystem Claims rely on this Court's statement, made in connection with its ruling that *payment card claims* can move forward, that "Plaintiffs who 'have actually experienced fraudulent accounts or other fraudulent activity' allege an injury sufficient to establish Article III standing." Mot. to Am. at 15 (quoting MTD Order at 12). But, as this Court explicitly recognized, applying this reasoning

to the Ecosystem Claims would erase the bounds of standing altogether. It "would mean that financial institutions have standing to assert a claim any time some event occurs that affects the data security landscape," a premise which "would be unworkable." MTD Order at 14. This Court's holding that losses related to compromised payment cards conferred standing on the financial institutions *that issued those payment cards* has no bearing on the question whether *all U.S. financial institutions* can sue Equifax for alleged ecosystem losses occurring after the Equifax data breach.

The FI Plaintiffs themselves allege that *all* financial institutions (and, indeed, countless other business) suffer losses as a result of identity theft every day. But that does not give financial institutions standing to sue every company that has been the victim of a data breach. To be concrete and particularized, the loss must impact the FI Plaintiffs in a unique, identifiable way. Incurring costs to guard against bank fraud is not unique or particularized to any one financial institution, but a cost that all financial institutions (and countless other businesses) incur on a regular basis. The Ecosystem Claims for prophylactic expenses therefore continue to fall short of establishing a concrete and particularized injury. *See Lujan*, 504 U.S. at 561 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

26

The Proposed Amended Complaint continues to fall well short of alleging facts sufficient to support standing based on the prophylactic costs that the FI Plaintiffs allegedly incurred.

### 2. The FI Plaintiffs Cannot Charge Equifax With The Costs Of Doing Business As A Financial Institution.

By seeking to recover for alleged out-of-pockets "costs," the FI Plaintiffs try to force Equifax to pay for common sense business practices that any financial institution might implement to combat the risk of fraud facing all participants in today's economy. Other than making the conclusory assertion that the FI Plaintiffs acted "in response" to the Equifax data breach, the FI Plaintiffs have made no allegations refuting the Court's prior conclusion that the alleged costs are "no more than due diligence and business as usual in the digital age." MTD Order at 12.

For example, the FI Plaintiffs seek recovery for costs "to purchase identity authentication and identity theft protection services," Prop. Am. Compl. ¶ 11, "fraud training" for employees, *id.* ¶ 12, and the cost of "enhanced authentication methods to verify new and existing customers," *id.* ¶ 18. Particularly given the FI Plaintiffs' own allegations that an increase in data breaches (which began long before the Equifax breach) has resulted in over $16.8 billion in global fraud losses, *id.* ¶ 85, these costs truly are "required by ordinary due diligence and regulatory compliance," not the Equifax data breach. MTD Order at 12.  Such ordinary costs

27

of doing business are not Article III injuries in fact.[5] *See Blocker v. Small Bus. Admin.*, 916 F. Supp. 37, 42 (D.D.C. 1996) (plaintiff lacked standing where her alleged injuries were "the result of many factors and actions taken by the plaintiff herself" and likely would have "been incurred regardless" of the defendant's alleged actions).

### D.   The Ecosystem Claims Are Not Redressable.

Finally, the Proposed Amended Complaint does not overcome the MTD Order's valid observation that the Ecosystem Claims are not redressable because "it is hard to imagine a ruling by this Court that will likely remedy 'pollut[ion] of the entire financial services ecosystem.'" MTD Order at 17 (quoting Operative Compl. ¶ 6). "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Florida Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303–04 (11th Cir. 2011) (internal citation

---

[5] The FI Plaintiffs' allegations regarding the purchase of "cyber-insurance policies" fail to establish standing for the additional reason that the Proposed Amended Complaint does not allege what the "cyber insurance" at issue actually covers. As a result, the Court has no basis to evaluate the impact of these allegations on standing. *See Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019) ("We cannot divine what these allegedly incurred costs are referring to, and so we cannot assess whether they give Aaron a sufficient stake in this appeal, whether they are fairly traceable to the challenged statutes, or whether they will be redressed by a favorable decision.").

28

omitted). Here, while the FI Plaintiffs contend that compensation for "out-of-pocket costs spent responding to the Equifax Data Breach" will redress their injuries, that contention misconstrues their own claims. The only "injury" for which the FI Plaintiffs seek recovery is the alleged increased risk of fraudulent banking activity. The prophylactic measures for which the FI Plaintiffs seek recovery are simply their reaction to that perceived increased risk. But requiring Equifax to pay for those measures, or even forcing some injunctive relief upon Equifax, could not purge the U.S. financial system of fraud or even reduce the fraud that is already endemic. *See KH Outdoor, L.L.C. v. Clay Cty., Fla*., 482 F.3d 1299, 1303 (11th Cir. 2007) (injury is not redressable where alternative causes for the injury outside of defendant's challenged action would remain regardless of any order court order). The Ecosystem Claims therefore remain subject to dismissal for the additional reason that they cannot be redressed by this Court.

## **CONCLUSION**

For these reasons, the Court should deny the FI Plaintiffs' motion for leave to amend. [6]

---

[6] Equifax reserves its right to file a Rule 12(b)(6) motion if the Court permits the FI Plaintiffs to file the Proposed Amended Complaint. In this regard, it bears noting that the Georgia Supreme Court recently held in *Georgia Dep't of Labor v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019), that Georgia law does not recognize a duty to protect PII.

Respectfully Submitted,

/s/  *David L. Balser*
**KING & SPALDING LLP**

David L. Balser
  Georgia Bar No. 035835
Phyllis B. Sumner
  Georgia Bar No. 692165
S. Stewart Haskins II
  Georgia Bar No. 336104
Elizabeth D. Adler
  Georgia Bar No. 558185
John C. Toro
  Georgia Bar No. 175145

1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Defendants*

DATED:  July 29, 2019

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Response was prepared on a computer using Times New Roman font (14 point).

Respectfully submitted, this 29th day of July, 2019.


*/s/ David L. Balser*
David L. Balser

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ David L. Balser*
David L. Balser

# APPENDIX A:
## ALLEGATIONS IN OPERATIVE COMPLAINT COMPARED TO ALLEGATIONS IN PROPOSED AMENDED COMPLAINT

| Allegations in the Operative Complaint | "New" Allegations in the Proposed Amended Complaint |
|---|---|
| "Because the vast quantity of consumer data compromised as a result of the Data Breach is the same consumer data FI Plaintiffs use to conduct their business, FI Plaintiffs and the Class have suffered and are at increased risk of suffering losses as a result of various forms of fraudulent banking activity." Operative Compl. ¶ 234. | "Plaintiff First Financial Credit Union incurred direct out-of-pocket costs to reimburse customers whose PII was stolen in the Data Breach for fraudulent transactions involving checking accounts, costing approximately $2,500." Prop. Am. Compl. ¶ 15.<br><br>"Plaintiff Hudson River Community Credit Union incurred direct out-of-pocket costs to reimburse customers whose PII was stolen in the Data Breach for fraudulent transactions, costing approximately $30,824." *Id*. ¶ 17.<br><br>"Plaintiff The Summit Federal Credit Union incurred direct out-of-pocket costs to reimburse customers whose PII was stolen in the Data Breach for fraudulent transactions, costing approximately $10,000." *Id*. ¶ 20. |
| The FI Plaintiffs were "forced to take immediate action in response to the Equifax Data Breach" including costs to "investigate the specific impact of the Data Breach on their individual institution, evaluate their authentication policies, protocols, procedures, and measures, and increase monitoring for and awareness of fraudulent banking | "Plaintiff Consumers Cooperative Credit Union incurred direct out-of-pocket costs to purchase identity authentication and identity theft protection services, specifically Transunion's service that provides knowledge based authentication through "out of wallet" questions, costing approximately $375,000 per year, and |

| | |
|---|---|
| activity." *Id.* ¶ 244.<br><br>Many of the FI Plaintiffs "have incurred and will continue to incur additional costs to revise their methods of authentication" and to "implement new methods of fraud monitoring and prevention." *Id.* ¶¶ 248, 251. | PSCU's Pindrop service, which identifies and prevents call center authentication fraud, costing approximately $20,000 per year." *Id.* ¶ 12; *see also, id.* ¶¶ 11, 15, 21 (claiming similar authentication product purchases as injuries).<br><br>"Plaintiff The First State Bank moved away from using authentication questions that relied on the types of PII exposed in the Data Breach and now uses enhanced authentication methods to verify new and existing customers. The cost to The First State Bank for this change in policy and related training was approximately $4,500." *Id.* ¶ 16; *see also, id.* ¶ 18, 20 (claiming similar "retraining" and "policy change" costs as damages).<br><br>"Plaintiff Texas First Bank incurred direct out-of-pocket costs to hire a new employee dedicated to cybersecurity and attempted fraud training in order to deter fraud attempts that occur on current accounts as a result of the Data Breach. The out-of-pocket cost to Plaintiff Texas First Bank for the role this employee performs as a direct result of the Data Breach is approximately $20,000 per year." *Id.* ¶ 19; *see also, id.* ¶¶ 12, 13, 18, 20 (claiming similar costs for new employee hires or "staffing costs" as damages). |
| The FI Plaintiffs "have suffered, and | "[O]ne customer who froze his credit |

| | |
|---|---|
| will continue to suffer, lost profits" as a result of "credit freezes," which "lead to reduced revenues for financial institutions as they are not able to efficiently complete credit applications." Operative Compl. ¶¶ 255-56. | due to the Data Breach attempted to renew his line of credit with Plaintiff DL Evans, but did not know his PIN to unfreeze his credit. Plaintiff DL Evans spent time working with the customer to assist him in this endeavor, which ultimately required awaiting a new PIN by mail. The process took over two weeks, causing lost revenue of approximately $386.90 due to the delays and resulting in increased operating costs of $37.65 for Plaintiff DL Evans." *Id.* ¶ 13; *see also, id.* ¶ 14 (claiming similar lost revenues from delays associated with credit freezes as an "injury"). |