

+ Via ECF +

August 12, 2019

The Honorable Thomas W. Thrash, Jr.
Chief United States District Judge
Northern District of Georgia
Richard B. Russell Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

      Re:   *In Re: Equifax, Inc. Customer Data Security Breach Litigation*
             MDL No. 2800 (N.D. Ga.)

Dear Judge Thrash:

The Financial Institution Plaintiffs respectfully request that, for the reasons described below, the Court overrule all objections to the subpoena served on Graeme Payne, a former Equifax employee. (ECF No. 572 (Notice of Dep. and Subpoena)).

**Background**

At the time of the Equifax Data Breach (May–July 2017), Graeme Payne was Equifax's Senior Vice President and Chief Information Officer for Global Platforms.[1] He was directly involved in overseeing the initial stages of the investigation of the Data Breach and coordinating Equifax's response. (House Rep. at 36–37, 39, 42–43, 46–48). Equifax terminated Mr. Payne on October 2, 2017 as a result of the investigation into the Data Breach and because "he failed to forward an email." (*Id.* at 49–50). The very next day, October 3, former Equifax CEO Richard Smith testified in Congress before the Energy and Commerce Committee, and attempted to assign primary blame for the Data Breach on "an individual who had failed to act on a security warning." (*Id.* at 50). At multiple points in his testimony, Smith referred to the "human error" of a *single individual* who was supposedly

---

[1]    U.S. House of Representatives Committee on Oversight and Government Reform, Maj. Staff Rep., 115th Congress, December 2018, at 7, https://republicans-oversight.house.gov/wp-content/uploads/2018/12/Equifax-Report.pdf (last accessed August 9, 2019). [Hereinafter, "House Rep."].

responsible for forwarding alerts about the Apache Struts vulnerability and patch to others in the organization.[2]

Payne was interviewed by the Committee ten months later, on August 10, 2018. (*Id.* at 12 n.28). He deduced that Smith was referring to Payne when Smith blamed an individual employee for failing to act on the alert about the Apache Struts patch. (*Id.* at 51). Payne "was not very happy" and believed Smith's testimony was "a gross simplification." (*Id.*). Payne *directly disputed* Smith's testimony:

> To assert that a senior vice president in the organization should be forwarding vulnerability alert information to people . . . sort of three or four layers down in the organization on every alert just doesn't hold water, doesn't make any sense. If that's the process that the company has to rely on, then that's a problem. (*Id.* at 52).

On February 26, 2019, the Consumer Plaintiffs' Co-Lead Counsel filed a notice of deposition and subpoena as to Payne (ECF No. 572), with requests for production of "[a]ll documents in the witness's possession, custody, or control relating to the data breach at Equifax that was announced in September 2017." (ECF No. 572 at 6). Payne's counsel objected to the subpoena on March 7, 2019, stating that Payne was in possession of responsive documents that were provided to him by counsel for Equifax, and that Equifax asked Payne to assert an attorney-work-product objection. (ECF No. 624 at 1–2).[3] Equifax's counsel sent an email on March 20, 2019, and stated the following:

> Equifax objects to the Payne Subpoena to the extent it seeks the compilation of documents that Equifax's counsel provided to Mr. Payne to help prepare him to testify before various government regulators. … To be sure, Equifax does not object to producing the documents themselves. (Email, attached as <u>Exhibit A</u>, at 1).

Equifax admits in the email described above that the underlying documents sought from Payne do not contain any thoughts or mental impressions of an attorney. Instead, Equifax wants to shield the documents from disclosure because Equifax's counsel showed them to Payne (who has separate counsel) to prepare for testimony.

---

[2]   *Id.* at 50–51; *see also* Financial Institution Consolidated Am. Compl., ECF No. 390, at ¶¶175–83 (describing background of vulnerability and alerts).
[3]   As a clarification, Plaintiffs do not seek to compel production of the handwritten notes referred to in Payne's objection. (ECF No. 624 at 2).

Honorable Thomas W. Thrash
August 12, 2019
Page 3

**Argument**

I. **Equifax's Compilation of Non-Privileged Documents to Prepare Payne for Testimony Is Not Protected Attorney Work Product**

Numerous authorities find that a pre-testimony document compilation is not the type of "work product" that protects otherwise discoverable documents from disclosure. *See* Charles P. Cercone, *The War Against Work Product Abuse: Exposing the Legal Alchemy of Document Compilations As Work Product*, 64 U. Pitt. L. Rev. 639, 687 (2003) ("[D]ocument compilations, regardless of whatever small amount of attorney 'mental impressions' can be speculatively imputed to them, are primarily relevant factual information unprotected by the work product immunity."); *see also, e.g.*, *In re Xarelto Prod. Liab. Litig.*, 314 F.R.D. 397, 408 (E.D. La. 2016) ("[T]he list of materials reviewed by a witness in preparation for a deposition contains material relevant to claims or defenses."); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250, 252 (D. Kan. 1996) ("The selecting and grouping of information does not transform discoverable documents into work product."); *cf. In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 636 (N.D. Ga. 2002) (requiring disclosure of witnesses plaintiffs' counsel interviewed to prepare complaint).

Some courts do acknowledge a potential work product concern in pre-testimony compilations, but even among those courts, there is a split of authority. *Compare Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) (finding pre-testimony compilation of documents for use with attorney's own client protectable), *with In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1017–18 (1st Cir. 1988) (criticizing rationale of *Sporck* "because … much depends on whether the fruits of the screening would soon be revealed in any event."). The better-reasoned cases recognize that pre-testimony compilations are not the type of core, opinion work product subject to heightened protection; the mental impressions conveyed by the compilations are minimal, and will be discovered inevitably through questioning the witness. *In re San Juan*, 859 F.2d at 1017 ("The situation is not remotely analogous to the situation where a party seeks an attorney's personal notes and memoranda which contain his confidential assessments of the testimony of prospective witnesses."); *Keller v. Sumco, Inc.*, No. 1:07-cv-1426, 2009 WL 10692012 at *4 (S.D. Ind. May 5, 2009). Plaintiffs' counsel could simply ask Payne at his deposition, one by one, whether he reviewed or relied on certain documents to refresh his recollection in preparation for his previous testimonies or the deposition. *See* Fed. R. Evid. 612; *see also Sperling v. City of Kennesaw Police Dep't*, 202 F.R.D. 325, 329 (N.D. Ga. 2001); *Keller*, 2009 WL 10692012, at *4. But the work product

doctrine does not force this type of litigation inefficiency when the identity of discoverable documents is requested in advance. *See In re San Juan*, 859 F.2d at 1017 ("Requiring preidentification [of exhibits] merely moves up the schedule, accelerating disclosures which would inevitably take place. Consequently, the resultant lists cannot validly aspire to the stature of opinion work product, nor can they command the correlative degree of (heightened) protection."); *In re Xarelto*, 314 F.R.D. at 409 (finding it would be "impracticable and unworkable" to show witnesses documents one at a time to ascertain which documents were reviewed prior to testimony). Indeed, given that Equifax has produced in excess of 500,000 pages of information, attempting to show Payne documents that he may have reviewed, one-by-one, is clearly impracticable.

*Sporck* has not been adopted by the Eleventh Circuit, but other district courts in this Circuit have "crafted a narrower application of the doctrine" in which "a party asserting an attorney opinion privilege claim must come forward with some evidence that disclosure of the requested documents creates a real, non-speculative danger of revealing *counsel's thoughts*." *See In re Trasylol Prod. Liab. Litig.*, No. 08-MD-1928, 2009 WL 936597, at **2–4 (S.D. Fla. Apr. 7, 2009) (emphasis added). Equifax cannot make this showing, and Equifax's minimal interest in obscuring a compilation it prepared in 2018 is outweighed by Plaintiffs' substantial need to thoroughly and efficiently examine Payne, a key witness who previously testified specifically about the Data Beach and its causes. In order to reasonably do so, Plaintiffs' counsel must know, in advance, which documents he possesses and which ones he may have relied on or referred to when testifying previously.

## II. Equifax Waived Work Product Protection by Giving the Compilation to Payne and Gratuitously Volunteering Its Counsel's Role in Giving Him Documents

Any work product interest Equifax possessed in its counsel's selection of particular documents was waived when those documents were given to Payne, a third party who publicly disputed Equifax's initial explanation of the causes of the Data Breach. Work product protection may be waived "[w]hen an attorney freely and voluntarily discloses [the work product] to someone with interests adverse to his or those of his client, knowingly increasing the possibility that an opponent will obtain and use the material." *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981); *see also Doe No. 1 v. U.S.*, 749 F.3d 999, 1008 (11th Cir. 2014) ("Disclosure of work-product materials to an adversary waives the work-product privilege."). Equifax terminated Payne, ostensibly for his role in failing to prevent the Data Breach, and

the next day, its CEO publicly blamed him (albeit not by name) as the "human error" that led to the Data Breach. Payne's interview with the House Committee – given *after* Payne's receipt of the documents – clearly indicates that Payne and Equifax's interests were not aligned at the time. Equifax provided Payne with the document compilation *despite knowing* that Payne was motivated to dispute Smith's testimony in order to preserve Payne's reputation and to avoid any personal liability for the Data Breach. Payne's firing by Equifax, as well as the conflicting public accounts provided by Equifax and Payne, put their legal interests (and credibility) in direct tension for purposes of both the government investigations and this litigation.

Giving the documents to Payne substantially increased the likelihood that Equifax's other adversaries, including Plaintiffs here or the government investigators, would learn what Equifax shared with Payne. *See Stern v. O'Quinn*, 253 F.R.D. 663, 681–82 (S.D. Fla. 2008). Although Plaintiffs are aware of a settlement agreement between Payne and Equifax pertaining to Payne's job termination, the terms of that agreement do not appear to prevent Payne from disclosing the identity of the documents Equifax provided to him. Plaintiffs also understand that Payne's counsel specifically inquired as to whether Equifax and Payne shared a common interest at the time the documents were disclosed, and that Equifax's counsel answered in the negative. Equifax provided the documents to Payne without securing any promise on Payne's part to keep the identity of those documents secret from adverse parties. Without such an agreement from Payne, Equifax could not reasonably expect its compilation to remain confidential.

Further, Plaintiffs' subpoena simply requested Payne produce whatever Data Breach-related documents were in his possession. (ECF No. 572 at 6). Equifax manufactured a work product issue by gratuitously volunteering that the responsive documents in Payne's possession were given to him by Equifax's counsel, and thus reflect a "compilation" work product. This type of strategic disclosure, made solely for the purpose of creating a work product objection, has been deemed a waiver of protection by several courts. *In re Pradaxa Prod. Liab. Litig.*, No. 3:12-MD-02385-DRH, 2013 WL 1776433, at *3 (S.D. Ill. Apr. 25, 2013); *see also Keller*, 2009 WL 10692012, at *4. Equifax unnecessarily disclosed that the documents Payne possesses were given to him by Equifax's counsel. Plaintiffs did not ask for that information, and would not have known it absent Equifax's disclosure.

**<u>Conclusion</u>**

For the reasons above, the Court should overrule the objections to the Payne subpoena.

Honorable Thomas W. Thrash
August 12, 2019
Page 6

|  | Sincerely, |
|---|---|
| */s/ Joseph P. Guglielmo* | */s/ Gary F. Lynch* |
| **SCOTT+SCOTT,** | |
| **ATTORNEYS AT LAW, LLP** | **CARLSON LYNCH, LLP** |
| Joseph P. Guglielmo | Gary F. Lynch |
| The Helmsley Building | 1133 Penn Avenue, 5th Floor |
| 230 Park Ave., 17th Floor | Pittsburgh, PA 15222 |
| New York, NY 10169 | Telephone: (412) 322-9243 |
| Telephone: (212) 223-4478 | glynch@carlsonlynch.com |
| jguglielmo@scott-scott.com | |