IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP - 5 2019

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 1:17-md-2800-TWT |
| | CONSUMER CASES |

## *PRO SE* OBJECTION TO CLASS CERTIFICATION, SETTLEMENT, ATTORNEY FEES AND INCENTIVE AWARDS

Plaintiff's Motion for Class Settlement [Doc. 739] should be DENIED.

"[E]stablishment of a grand-scale compensation scheme is a matter fit for *legislative consideration*"[1]. "Inequitable settlements are an unfortunate recurring bug in our system of class litigation."[2] Art. III denied such legislation like Amchem and Ortiz[3]—only that *asbestos* became *data breach* here. Fed. R. Civ. P. and Rule 23 were "written to further...justice", keeping "day in court" for "unsophisticated litigants".[4] Mock-up "fiduciary" "shall not abridge, enlarge or modify any substantive right"[5], i.e., dump unsophisticated absentees to earn a gold mine. When 93 plaintiffs each asks $2,500 *cash awards*—"perverse incentives for

---

[1] Amchem Prods. Inc. v. Windsor, 521 US 591, 622 (1997) (emphasized)
[2] Pearson v. Target Corp., 893 F.3d 980, 982 (7th Cir. 2018)(Wood, C.J.)
[3] Ortiz v. Fibreboard Corp., 527 US 815, 852 n.30 (1999)
[4] Surowitz v. Hilton Hotels Corp., 383 US 363, 373 (1966)
[5] 28 U. S. C. § 2072(b).

class representatives to place at risk potentially valid claims for monetary relief"[6], lawyers want $77.5 million **cash**, but legally unsophisticated absentees got fake news headlines—a bait-and-switch into *pro rata* "limited fund" dogfight—"[***cash***] payments will be substantially lowered" https://www.equifaxbreachsettlement.com

## I.    Objector Disclosures

Shiyang Huang ("Objector") is not an attorney nor legally trained, and wrote this pro se brief entirely. "Courts should…avoid unduly burdening [objecting] class members…class member [unrepresented by counsel] may present objections [below] technical legal standards."[7] But "[g]ood-faith objections can assist the court…under Rule 23(e)(2)".[8] Objector *verified* membership on settlement website and is a confirmed class member. See App'x for declaration.

Harvard Law's Laurence Tribe *admonished* class-settlement failures, e.g. Amchem and Ortiz—or what *parties*[9] want to retry here—***massacre of absentees, while mock "fiduciary" and figurehead plaintiffs feast a cash cow***. In last 5 years, Objector only opposed one unconstitutional settlement, appealed and briefed pro se.

---

[6] Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2559 (2011)

[7] Committee Notes on Rules—2018 Amendment at Subd. 23(e)(5)(A)

[8] 2018 Committee Notes, supra at Subd. 23(e)(5)(B)

[9] Standard Fire Ins.Co. v. Knowles, 133 S.Ct. 1345, 1349 (2013)(cleaned up)
    "A nonnamed class member is not a party…before the class is certified."

- Schultz v. Edward D. Jones & Co., L.P., No. 4:16-cv-1346-JAR (E.D. Mo.)
- *Appealed,* Schultz v. Huang, No. 19-2158 (8th Cir.) (All briefs submitted)

To be clear, past objections only makes Objector *more* credible—because serial class-action settlers declare themselves "skilled" by *exactly* the same repetition.

## II.    Standards Of Named Plaintiffs' Standing

"A court is powerless…if no named plaintiff has standing."[10] Plaintiff must suffer injury-in-fact, "`an invasion of a legally protected interest' that is `concrete and particularized' and `actual or imminent, not conjectural or hypothetical.'"'"[11] "If the named plaintiff…fails to establish the requisite case or controversy'", no class is possible *at all*.[12] "[D]istrict court must determine that at least one named class representative has Article III standing to raise each class subclaim."[13] "The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'"[14] Art. III is only "relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm."[15]

---

[10]  Frank v. Gaos, 139 S.Ct. 1041, 1046 (2019)(per curiam)

[11] Nicklaw v. Citimortgage, 855 F.3d 1265, 1270 (11th Cir. 2017)

[12] Church v. City of Huntsville, 30 F.3d 1332, 1340 (11th Cir. 1994).

[13] Hines v. Widnall, 334 F.3d 1253, 1256 (11th Cir. 2003)

[14] Huff v. N.D. Cass Co. of Ala., 485 F.2d 710, 714 (5th Cir.1973)

"Old Fifth precedent"; Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981)

[15] Lewis v. Casey, 518 U.S. 343, 349 (1996)

### III.    Class Certification Standard

"[M]oment of certification requires "heightene[d] attention,"…because certification effectively concludes the proceeding save…fairness hearing." [16] Proponents are *not* entitled to at least one attempt at class certification, which prevented repeating class litigations.[17] "The party seeking class certification has the burden of proof…A district court that has doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met.""[18] Class Certification must satisfy Rule 23(a) entirely and one part of Rule 23(b). [19] Rule 23(a) requires four prerequisites: (1) numerosity (2) commonality (3) typicality (4) adequacy of representation. [20] "A class representative must possess the same interest and suffer the same injury as the class members... Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[21] For Rule 23(b)(3), named plaintiffs must prove—that questions of law or fact common to

---

[16] Ortiz, 527 U.S. at 849 (quoting Amchem, 521 U.S. at 620)

[17] Ewing Indus. Corp. v. Bob Wines Nursery, Inc., 795 F.3d 1324 (11th Cir. 2015).

[18] Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233-34 (11th Cir. 2016)

[19] Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013)

[20] Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1264-1265 (11th Cir. 2009).

[21] Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322 (11th Cir. 2008)

the members of the class establish predominance and superiority.[22] "Where, after adjudication of the classwide issues, plaintiffs must still introduce individualized proof...legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)"[23].

## IV.    **Amchem Barred Rule 23 Failures From Class Settlements**

Amchem's denial of sprawling class-action collusion made it a textbook class-action failure since 1997. Amchem's criticism has exact fit here, because they *are* the same failures—the exposure here is now *data breach*—not *asbestos*.

First, Amchem admonished Rule 23(a)(4) abuses and failures—class cannot be certified if "the class collapses into distinct groups of winners and losers."[24] "[C]lass representative must...possess the *same interest and suffer the same injury* as the class members"[25] *This* transaction, likewise, "makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." [26] "Some class members suffer no [harm at all]...while others suffer [serious injuries]...The

---

[22] Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013); Fed. R. Civ. P. 23(b)(3)

[23] Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)

[24] Valley Drug, 350 F.3d at 1189 (citation omitted)

[25] Wal-Mart, 131 S.Ct. at 2550.

[26] Amchem, 521 US at 610 (cleaned up).

exposure-only plaintiffs especially share little in common, either with each other or with the presently injured class members." Amchem, 521 US at 624. (cleaned up). Here, *this* settlement lets "presently injured" ones buffet up to $20,000/each, while cramming exposure-only victims into a forgettable "limited fund"—essentially— *"good luck, exposure-onlys, no documented injuries now, res judicata later."*

Next, Amchem blasted injurious "fiduciaries" for weaponing legal sophistry at unsophisticated absentees—***their own fiduciary clients***. Rule 23(a)(2) and Rule 23(a)(3) requires commonality and typicality of class claims for aggregate adjudication, but "when individual stakes are high and disparities among class members great… That certification cannot be upheld, for it rests on a conception of Rule 23(b)(3)'s predominance requirement irreconcilable with the Rule's design." Id. at 625. "[N]amed parties… sought to act on behalf of a single giant class rather than on behalf of discrete subclasses…the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." Id. at 626. (emphasis added). Rule 23(e) bars Plaintiffs who are "fainthearted before the action is adjudicated". Id. at 623. All 93 plaintiffs here got bought-off, $2,500

illegal and perverse[27] payoffs each, failing "same interest and same injury" rule. [28]

Third, Amchem slammed class counsels' crocodile tears—"with an already enormous fee within counsel's grasp, zeal for the client may relax sooner"[29]. "The disparity between the currently injured and exposure-only categories of plaintiffs, and the diversity within each category are not made insignificant…the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability…The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."[30] Such abusive settlement "cannot carry the large load" to satisfy Rules Enabling Act. Id. at 629. Plaintiffs' voluminous file dump, to overwhelm court, is filled with "not precedents…unrelated issues…taken out of context…illustrat[ing] the regrettable tendency…to substitute citations for analysis."[31] Contrarily, Amchem was denied, twice[32]—and fits word-by-word here.

---

[27] Trustees v. Greenough, 105 US 527, 538 (1885); Wal-Mart, 131 S.Ct at 2559.

[28] Wal-Mart, 131 S.Ct at 2550; Busby, 513 F.3d at 1322.

[29] Ortiz, 527 US at 852 n.30

[30] Amchem, 521 US at 626-27.

[31] Harzewski v. Guidant Corp., 489 F.3d 799, 807 (7th Cir. 2007)(Posner, J.)

[32] Georgine v. Amchem Prods., Inc., 83 F.3d 610 (3d Cir.1996), aff'd.
Amchem Prods., Inc. v. Windsor, 521 US 591 (1997)

## V.   Settlement Left No "Live" Article III Case-or-Controversy

| Settle with… | Only *Parties* who settled | | Nonparty till Approval |
|---|---|---|---|
| Trial Class | The class and counsel | Defendants | *No one* |
| Plaintiffs | Plaintiffs & lawyers *only* | Defendants | *3rd parties—injured* |

"A nonnamed class member is not a party…before the class is certified."[33]

While *parties* salivate mutual benefits "deal" that only re-injures absentee class,

"jurisdiction cannot be conferred by consent, the district court should be leery of

any stipulations the parties offer".[34] "[W]ithout subject matter jurisdiction, the

court is powerless to continue."[35] "The controversy must be definite and concrete,

touching the legal relations of parties having adverse legal interests."[36]

"Only a properly certified class may succeed to the *adversary* position of a

named plaintiff"[37]. But settlements axiomatically has no adversary left to certify

*any* class. Rule 23 prevents economic "inability of *parties* to...*litigate*[] in federal

courts."[38] Only "certification of a suit as a class action…will bind all…members of

the class" [39] as *parties* to a lawsuit. Rule 23 is only for *parties* in "*adversary*

_____

[33] Standard Fire, 133 S.Ct. at 1349 (cleaned up)

[34] Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 (11th Cir. 2000)

[35] Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)

[36] Aetna Life Ins. Co. v. Haworth, 300 US 227, 240-241 (1937).

[37] US v. Sanchez-Gomez, 138 S.Ct. 1532, 1539 (2018)

[38] Snyder v. Harris, 394 US 332,338 (1969)(emphasized).

[39] Sosna v. Iowa, 419 US 393,399 n.8 (1975).

*position"*, not *after* they *extinguished* their own claims, because only "attorney's fee[] is…insufficient to create an Article III case or controversy"[40]. *Third parties* had no parties to represent them for certification—no claims are "live" anymore.

"[U]naccepted settlement offer has no force…with the offer off the table… adversity between the parties persists."[41] Also true is the *opposite—Settlement extinguished Article III adversity of parties* before binding unnamed victims, especially when Plaintiffs and counsel both owe a high bar of fiduciary duty. "[A]bsent a genuine adversary issue between parties, federal court may not safely proceed to judgment."[42] "[A]pproved settlement takes the form of a judgment of the court, and without both Article III power and proper subject-matter jurisdiction, the court cannot act."[43] Article III is not legislation bypass, and Amchem was denied to exactly "avoid a serious rend in the garment of the federal judiciary that would result from the Court, even with the noblest motives, exercising power that it lacks"[44], in light of "serious doubts as to the existence of the requisite jurisdictional amount, justiciability, adequacy of notice, and personal jurisdiction

_____

[40] Lewis v. Continental Bank Corp., 494 US 472,480 (1990) (citation omitted)
[41] Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663,666 (2016).
[42] Arizonans for Official English v. Ariz., 520 US 43, 71 (1997)(cleaned up)
[43] Schumacher v. SC Data Center, Inc., 912 F.3d 1104, 1105 (8th Cir. 2019)
(quoting Robertson v. Allied Sols., LLC, 902 F.3d 690, 698 (7th Cir. 2018))
[44] Georgine, 83 F.3d at 617-618; aff'd, 521 US 591 (1997).

over absent class members"[45], and "federal court has no power to issue a judgment in a case unless it involves an actual controversy between adverse parties in an adversary proceeding." [46] (citing The Declaratory Judgment Act, 28 U.S.C. § 2201).

Hoping objections are too onerous for unsophisticated victim absentees, lawyers made figurehead puppet Plaintiffs agree to a deal injurious to absentees, but maximizes fees terms liked by Plaintiffs' lawyers themselves.[47] "[Defendants] lost its incentive to challenge" when parties settle.[48] Moreover, "there is no real dispute between the plaintiff and defendant…their interest in the question brought here for decision is one and the same, and not adverse; and that in these proceedings the plaintiff and defendant are attempting to procure the opinion of this court… in the decision of which they have a common interest opposed to that of other persons, who are not parties to this suit."[49]

In Sosna[50], named plaintiffs, *after certification,* can have their own claims

---

[45] Georgine, 83 F.3d at 617-618; aff'd, 521 US 591 (1997).

[46] Vorbeck v. Schnicker, 660 F.2d 1260, 1265 (8th Cir.1981)

[47] See Redish, Martin H. and Kastanek, Andrianna D. Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process, Univ. Chi. L. Rev. Vol. 73 : Iss. 2 , Article 2. (2006).

[48] In re Southwest Airlines Voucher Litig., 799 F.3d 701, 714 (7th Cir. 2015).

[49] Lord v. Veazie, 49 US 251, 254 (1850).

[50] Sosna v. Iowa, 419 U.S. 393 (1975)

mooted to continue litigation. In Geraghty[51] and Roper[52], named plaintiffs, while their claims mooted *without of an agreement to settle*, can seek appeal of adverse certification rulings. Simply, Plaintiffs here, ***agreed to settle*** before a class was certified, mooting their own claims. "The effort to obtain court approval [of settlement] entails the suspension, if not termination, of hostilities...judges no longer have the full benefit of the adversarial process."[53] Having adverse parties is irreducible—Plaintiffs are wasting Article III judiciary's time to "advise a deal".

## VI.    Plaintiffs Have Nothing To Qualify Daubert Admissibility

"[A]t the class certification stage, the trial court can and should consider the merits of the case [*only*] to the degree necessary" to satisfy Rule 23 requirements.[54] Full *Daubert* test is the prevailing approach in 11th Circuit for class certification. "[T]he district court must perform a full *Daubert* analysis before certifying the class".[55] Sher / Local 703 formed Circuit's ***full Daubert*** rule at class certification.

Sadly, Plaintiffs have flunked for *Daubert* exam, knowing nothing on class

---

[51] U.S. Parole Comm'n v. Geraghty, 445 US 388 (1980)
[52] Deposit Guaranty Nat. Bank v. Roper, 445 US 326 (1980)
[53] Scardelletti v. Debarr, 265 F.3d 195, 208 (4th Cir. 2001)
(quoting Bell Atl. v. Bolger, 2 F.3d 1304, 1310 (3d Cir.1993))
[54] Sher v. Raytheon Co., 419 F.App'x 887, 890 (11th Cir. 2011)(unpublished)
[55] Local 703 v. Regions Financial Corp., 762 F.3d 1248, 1258 n.7 (11th Cir. 2014)
(quoting Am. Honda Motor Co. v. Allen, 600 F.3d 813, 815-16 (7th Cir.2010)

damages that the class will suffer in future. Indeed, "confirmatory discovery"[56] is only ***window dressing*** for mock "fiduciaries" to ink a deal that get themselves ***cash attorney fees now***, but absentees will bite forever identity theft dust—***future harms***. Those who decided to settle, gave up nothing at all—attorney get their fat check, arguably "more" beyond statutory lodestars; currently injured got VIP claim forms up to $20,000; but exposure-only class members is left with ***lip service***— credit monitoring, *at best*, might alerts ***future*** harm, but hardly saves future risks and damages—worse, after "monitoring" expires, victims still haunted by Equifax breach, will bite *res judicata*, or negative-value suit—same as without class actions.

## VII.   Zeal For Attorney Fees Led To Ballooned Coupon Valuation

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action … [courts] must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid."[57] Credit monitoring "coupon" value here got ***wildly*** overvalued—to boost attorney fees, while taxing class member recoveries and avoiding money-change-hands for Defendants.

---

[56] ECF 739-2 at 5.

[57] Committee Notes on Rules—1998 Amendment at Subd. 23(h)

"CAFA directs courts to apply heightened scrutiny to coupon settlements."[58]

(citing 28 U.S.C. § 1712(e)). "In CAFA's findings and purposes, Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.""[59]

Cash relief, unlike credit-monitoring "coupons", has "not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products." Id. at 952.

"[I]nterests of class members and class counsel nearly always diverge… class counsel may "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.""[60] It is worse, when "class counsel is paid in cash, and the class is paid in some other way, for example, with coupons"[61] "[A]buse is greatest when the coupons have value only if a class member is willing to do business again with the defendant who has injured her in

_____

[58] In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015)
[59] Id. at 950 (citing C.A.F.A., Pub.L. No. 109-2, § 2, 119 Stat. 4 (2005)).
[60] In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013) (quoting Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir.2003);
Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir.1991))
Also see Nick Landsman-Roos, Front-End Fiduciaries: Precertification Duties and Class Conflict, 65 Stan. L. Rev. 817 (2013).
[61] HP Inkjet, supra at 1179.

13

some way"[62]. Here, "credit monitoring" are coupons, because it buys and can buy only one thing—***monopoly-priced*** credit monitoring products from Defendants.[63]

Here is how settlers inflated basis of attorney fees under the coupon pricing.

- ECF 739-1 at 8: "Four years of three-bureau credit monitoring and identity protection services through Experian ($1,200 value) and an additional six years of one-bureau credit monitoring through Equifax (valued at $720)."

- Compare with App'x—Experian prices 3-bureau credit monitoring and identity protections at $99.99 / year / person. <u>4 years = $400, not $1,200</u>

- Compare with App'x—6-year, three-bureau Experian deal is only $600 ***and*** is much better than 6-year Equifax-only deal—requiring substantial discount under the ***actual*** Experian deal <u>(~$200) and not $720 value</u>

  **After myth-busting**, "Coupon value" dwarfed to under $100 million. 25% in $100 million is only $25 million, not $77.5 million attorney's fees.

- The coupons, first, forces Class members to do business with Equifax, who leaked data in the first place, and now wants to "tax" above $$$ differences

- *A few years of* 1-bureau, Equifax-only monitoring, while marginally better than nothing, is ***realistically same as nothing*** when risk is ***forever.***

  "*You need a service that watches your files at all three major credit bureaus, not just one. Otherwise, it's like locking one door and leaving two open.*" [64]

Lastly, A-Z efforts from State and Federal agencies went way beyond mock

---

[62] <u>In re Southwest Airlines Voucher Litig.</u>, 799 F.3d 701, 706 (7th Cir. 2015)

[63] See, e.g. Karl Bode, <u>The Equifax Settlement Is A Crude Joke</u>.
<u>www.vice.com/en_us/article/d3agv7/the-equifax-settlement-is-a-cruel-joke</u>

[64] Bev O'Shea, <u>Why Credit Monitoring Services From Credit Bureaus Fall Short</u>
<u>www.nerdwallet.com/blog/finance/comparing-credit-bureau-monitoring-services</u>

fiduciaries' routine pretrial paperwork, or "confirmatory discovery"[65] window

dressing before the parties rush for outlandish fee feast with absentee-class as the

burned charcoal. Plaintiffs were not lone investigators who sniffed out disasters on

their own. Federal agencies, 50 States' Attorney Generals were fully involved in

this data breach saga. "Those contacts"[66] with Equifax in 2017 is no green-light to

gigantic fees and abusive sell-out of class members under Rule 23, or Article III.

## VIII. 93 Plaintiffs' Illegal Incentives Are Perverse And Pointless

First, incentive awards are illegal against "consistently followed" common-

fund rules, repeated in <u>Alyeska Pipelines</u>[67], <u>Boeing</u>[68], and <u>US Airways</u>, supra.

> "This Court has "recognized consistently" that someone "who recovers a common fund for the benefit of persons other than himself" is due "a reasonable attorney's fee from the fund as whole." [<u>Boeing</u>, 444 US at 478]. We have understood that rule as "reflect[ing] the traditional practice in courts of equity." Ibid.; see [<u>Sprague v. Ticonic Nat. Bank</u>, 307 US 161, 164-166 (1939)]; [<u>US Airways</u>, 133 S.Ct. at 1548]. And we have applied it in a wide range of circumstances as part of our inherent authority. See [<u>Boeing</u>, 444 US at 474, 478]; [<u>Hall v. Cole</u>, 412 U.S. 1, 6-7 and n. 7 (1973)]; [<u>Mills v. Electric AutoLite Co.</u>, 396 US 375, 389-390, 392 (1970)]; [<u>Sprague</u>, 307 U.S., at 166]; [<u>Central Railroad & Banking Co. of Ga. v. Pettus</u>, 113 U.S. 116, 126-127 (1885)]; [<u>Trustees v. Greenough</u>, 105 U.S., 527, 528, 531-533 (1882)]."[69]

---

[65] ECF 739-2 at 5.

[66] ECF 739-1 at 4.

[67] <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 US 240 (1975)

[68] <u>Boeing Co. v. Van Gemert</u>, 444 US 472 (1980)

[69] <u>US Airways, Inc. v. McCutchen</u>, 133 S.Ct. 1537, 1550 (2013)

Notably, last two common-fund rulings in the quote—Pettus and Trustees, slammed "incentive awards" outright, because such "salary" charged to common-fund "would present too great a temptation to parties to intermeddle"[70] and harm usually legally unskilled class members, who are nevertheless "equitable owners of their respective shares in the recovery"[71]. Nor do plaintiffs have any *standing* to seek incentives—there is no injury, traceable to, redressible by absentee members.

Second, Plaintiffs fails recent Muransky [72] test from 11th Circuit-- "incentive awards must be supported by "legitimate considerations" sufficient to "dispel the cloud of collusion which such a settlement suggests.""[73] Incentive awards here are "perverse incentives"[74] to sell-out absentee claims—as they cheer $2,500 checks on the sideline, absentees are sent into limited-fund dogfight—not even the $250 promised (clever "*up to*" clickbait). Third, the fact that 93 Plaintiffs in this MDL sued Equifax is enough to say, that "inducing" Plaintiffs is totally unnecessary. "Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced

---

[70] Greenough, 105 US at 538; Also quoted in Pettus, 113 US at 122.

[71] Boeing, 444 US at 482

[72] Muransky v. Godiva Chocolatier, Inc., 922 F. 3d 1175, 1196-97 (11th Cir. 2019)

[73] Id. (citing Holmes v. Continental Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983)

[74] Wal-Mart, 131 S.Ct. at 2559

federal judge knows that any statements to the contrary [are] sheer sophistry."[75]
There is not too-few plaintiffs—in fact, too many. They are all indistinguishable
figureheads, no clue of "fiduciary duty" they have—because "[c]lass actions are
the brainchildren of the lawyers"[76], crocodiles tearing for $77.5 million deal fees.

## IX. Plaintiffs Failed To Distinguish State-Law Claims

As a privacy invasion tort claim, the Court shall consider "how Georgia
courts determine the applicable law in tort cases."[77] Georgia generally follows the
doctrine of *lex loci delicti*[78], which applies the substantive law of the place where
the wrong occurred.[79] "'[T]he place of the wrong, the *locus delicti*, is the place
where the injury was suffered . . . or, as it is sometimes more generally put, it is the
place where the last event necessary to make an actor liable for the alleged tort
takes place.'"[80] Jurisdiction from where each putative class member suffered harm
would apply to the class claims. However, the Georgia choice of law system has a
unique exception if the *lex loci delicti* is foreign law. Due Process also requires

---

[75] Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002).
(quoting Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 n.9 (3d Cir.1973)
[76] Eubank v. Pella Corp., 753 F.3d 718,719 (7th Cir.2014)(Posner, J.)
[77] Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc., 713 F.2d 1500, 1503
(11th Cir.1983)( resolution to the choice of law rules of the forum state)
[78] Dowis v. Mud Slingers, Inc., 279 Ga. 808, 816 (2005).
[79] International Bus. Machs. Corp. v. Kemp, 244 Ga. App. 638, 640 (2000).
[80] Risdon Enters, Inc. v. Colemill Enters, Inc., 172 Ga. App. 902, 903 (1984).

Georgia with "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [Georgia] law is not arbitrary or unfair."[81] Plaintiff must analyze state law variations and discuss whether diversity class memberships and multiple state-law variations prohibit class certification.[82] "[I]t is 'the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law.'"[83] Plaintiffs' state law analysis is totally absent. "Failure to engage in an analysis of state law variations is grounds for decertification."[84] Plaintiffs have "failed to articulate adequately how these variations in state law would not preclude predominance".[85]

Plaintiffs also failed Rules Enabling Act—barring Rules to "abridge, enlarge, or modify" substantive rights.[86] "Roughly estimating damages to the class as a whole and only subsequently allowing for processing of individual claims

---

[81] Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985).

[82] Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180 (11th Cir. 2010) (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986)).

[83] Id. (quoting Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 313 (5th Cir. 2000)).

[84] Cole v. General Motors Corp., 484 F.3d 717, 724 (5th Cir. 2007).

[85] Id. at 726.

[86] 28 U.S.C. § 2072(b)

would inevitably alter defendants' substantive right to pay damages reflective of their actual liability."[87] The damages calculation will neither accurately reflect the number of class members actually injured nor the amount of harm actually caused by the defendants.[88] "[I]ndividual damages defeat predominance when they are accompanied by 'significant individualized questions going to liability.'"[89]

"[T]he individual nature of affirmative defenses is still relevant to whether predominance is satisfied."[90] Plaintiffs failed predominance, because they only want a check that Equifax promised them for kicking absentees under the bus.

## X.    Last Note

The "Old Fith" precedential Johnson[91] settlement factors are not discussed in much detail here. Because the settlement is a part of "a staged performance", but "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted— that if a settlement is "fair," then certification is proper."[92]

-----------------------

[87] McLaughlin v. American Tobacco Co., 522 F.3d 215, 231 (2d Cir. 2008)
[88] Id.
[89] Id. (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004)).
[90] Brown, 817 F.3d at 1240.
[91] Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).
[92] Amchem, 521 U.S. at 621-622 (citation omitted)

## XI.   Conclusion

This settlement-class copycat of <u>Amchem</u> should be denied entirely.

***Parties*** to got ***cash relief.   Nonparties*** really got ***no relief***—and no future injuries protection in this feigned deal. Inflation of settlement "coupon value" are only public stunts for raising attorney's fee basis—"…too often, class counsel [settles] with substantial attorneys' fees but meager benefits…Named plaintiffs fail…ethical obligations as fiduciaries to the class."[93] "[C]urrent record does not adequately dispel the possibility that class counsel bargained away a benefit to the class in exchange for their own interests."[94]   Only if the Court, however, upholds the Settlement, Objector requests reasonable financial awards under Court's discretion and Fed. R. Civ. P. 23(e) for attorney fee reductions—"Good-faith objections can assist the court…It is legitimate for an objector to seek payment"[95].


Dated: August 31, 2019                    Respectfully Submitted,

                                          /s/ _____

                                          Shiyang Huang (*pro se*)


---

[93] <u>Pearson,</u> 893 F.3d at 982.
[94] <u>In re Bluetooth Headset Prods. Liability Litig.</u>, 654 F.3d 935, 938 (9th Cir. 2011).
[95] <u>Committee Notes on Rules</u>—2018 Amendment at Subd. 23(e)(5)(B);

## DECLARATION OF OBJECTING CLASS MEMBER

1. Objector Shiyang Huang[96] is a class member as proven by both Equifax's 2017 Data Breach notification, and by EquifaxBreachSettlement.com's verification tool. Settlement Website's verification confirmation is attached.

2. Objector is in the "exposure-only" category—Objector has no claimable losses as of now, but the exposure-risk of such injury will continue forever.

3. Objector intends to claim credit monitoring coupons and financial payments for hours spent handling the breach impact, including e.g. aftermath of unauthorized card charges and set up of credit fraud alerts.

4. Objector prepared this brief without help from *anyone,* drawing only past objection against unconstitutional, abusive class-action settlements.

5. Objector does not intend to appear at the fairness hearing now, but reserves right to file Notice to Appear after Plaintiffs' fee motions, as necessary.

Dated: August 31, 2019

Respectfully Submitted,

/s/

Shiyang Huang (*pro se*)

[96] Address: 2800 SW Engler Ct., Topeka, KS 66614;
Phone: (314) 669-1858;
Email: defectivesettlement@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2019, I mailed the foregoing as instructed

by the settlement notice. Participants in the case will be served by the settlement

administrator and CM/ECF while Objecting Class Member has fulfilled all

requirements set in the Settlement Notice regarding instructions for objections.

Clerk of the Court
Attn: 1:17-md-2800-TWT
United States District Court
Northern District of Georgia
75 Ted Turner Dr., SW
Atlanta, GA 30303-3309

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Date: August 31, 2019

/s/ _____

Shiyang Huang (*pro se*)

22

# EQUIFAX DATA BREACH SETTLEMENT

## Thank You

Based on the information you provided, our records indicate your personal information was impacted by this incident.

For more information, visit the FAQ page.

FILE A CLAIM

## EXHIBITS OF EXPERIAN CREDIT MONITORING PRICING

<u>Price As Shown: $99.99 per-person, per-year; even cheaper with more individuals.</u>

<u>Note:</u> Regardless of Feature Differences that Parties may want to divert attention to, Plaintiffs provided <u>nothing</u> to protect the future injury of Absent Class Members beyond 4-Years, or 10 Years (with 6-Year Equifax-Only Monitoring), and <u>absolutely nothing</u> after the 10-year time expires when the Class suffers any related injuries.





24



UNITED STATES
POSTAL SERVICE®

www.paypal.com

F

08/31/2019
From 66614
0 lbs 3 ozs
Zone 5

US POSTAGE PAID
Pitney Bowes
ComBasPrice
024P0007627494

## USPS FIRST-CLASS™ PKG

2800 sw engler ct
topeka KS 66614-4317

**0000**

C039

United States District Court, N.D.Ga
Attn: 1:17-MD-2800-TWT
75 Ted Turner Dr SW
Atlanta GA 30303-3315

**USPS TRACKING #**

9400 1096 9993 9227 5703 24