# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL FINANCIAL INSTITUTION ACTIONS | MDL Docket No. 2800<br><br>No. 1:17-md-2800-TWT<br><br><br>Chief Judge Thomas W. Thrash, Jr. |

# FINANCIAL INSTITUTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................3

I.  PLAINTIFFS ADEQUATELY ALLEGE THEIR ARTICLE III
    STANDING......................................................................................3

    A.  Equifax Wrongly Ignores the Fraudulent Banking Activity
    Plaintiffs Already Suffered Due to the Equifax Data Breach ..............3

        1.  Equifax confuses the different standing analysis that
    applies to retrospective injuries, like Plaintiffs' allegations
    of fraudulent banking activity, with the analysis that applies
    to purely prospective injuries......................................................4

        2.  Having already suffered fraudulent banking activity,
    Plaintiffs have established that they face a substantial risk
    of future harm such that their efforts to mitigate that future
    risk also constitute injury-in-fact. ............................................10

    B.  The Injuries Plaintiffs Already Suffered Are Traceable Directly
    to the Equifax Data Breach ..............................................................14

    C.  Plaintiffs' Injuries Can Be Redressed by a Favorable Judicial
    Decision..........................................................................................18

II.  THE ASSOCIATION PLAINTIFFS HAVE ARTICLE III STANDING....19

III.  THE COURT SHOULD REJECT EQUIFAX'S INAPPROPRIATE
    REQUEST TO RECONSIDER ITS PRIOR, CORRECT RULING
    THAT PLAINTIFFS' O.C.G.A. §13-6-11 CLAIM IS WELL-PLEADED .19

CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017)................................................................12

*Baca v. Colorado Dep't of State*,
  No. 18-1173, 2019 WL 3938266 (10th Cir. Aug. 20, 2019)................................4

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) .............................................................12

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................15

*Borges v. Bank of New York Mellon*,
  No. 1:13-CV-02623-LMM, 2015 WL 11233231 (N.D. Ga. Dec.
  15, 2015) ...............................................................................19

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*,
  765 F.3d 1205 (10th Cir. 2014) ...........................................................4

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
  563 F.3d 466 (D.C. Cir. 2009)..............................................................9

*Delgiudice v. Primus*,
  679 Fed. Appx. 944 (11th Cir. 2017)......................................................20

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
  344 F.3d 1263 (11th Cir. 2003) .........................................................15

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 Fed. Appx. 384 (6th Cir. 2016).......................................................12

*Griffin v. Dep't of Labor Fed. Credit Union*
  912 F.3d 649 (4th Cir. 2019) .............................................................9

*Habecker v. Town of Estes Park, Colo.*,
   518 F.3d 1217 (10th Cir. 2008) ...........................................................................17

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
   892 F.3d 613 (4th Cir. 2018) ......................................................................11, 13

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
   380 F. Supp. 3d 1243 (M.D. Fla. 2019)..............................................................5, 11

*In re SuperValu, Inc.*
   870 F.3d 763 (8th Cir. 2017) ..............................................................................6

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18,
   2016) ............................................................................................................13, 16

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ...........................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).........................................................................................11

*Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*,
   148 F.3d 1231 (11th Cir. 1998) ..........................................................................15

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,
   918 F.3d 1312 (11th Cir. 2019) ..........................................................................10

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) ................................................................................12

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) .............................................................................12

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ..........................................................................15

*Rivers v. S. Auction and Realty*
   No. A19A0049, 2019 WL 2710228 (Ga. Ct. App. June 28, 2019)....................19

iii

*Salcedo v. Hanna*,
    No. 17-14077, 2019 WL 4050424 (11th Cir. Aug. 28, 2019) ...................... 11, 18

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ............................................................................. 4, 8, 13

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 5

*Torres v. Wendy's Co.*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016) ........................................................... 7

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ................................................................ 14, 16

*U.S. v. Students Challenging Regulatory Agency Procedures
    (SCRAP)*,
    412 U.S. 669 (1973) .......................................................................................... 9

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ........................................................................................ 18

## Statutes, Rules & Regulations

United Stated Code
    15 U.S.C. §1693g .............................................................................................. 6
    18 U.S.C. §1344 ................................................................................................ 6

Federal Rules of Civil Procedure
    Rule 12(b)(6) .................................................................................................. 20

Official Code of Georgia
    O.C.G.A. §13-6-11 ..................................................................................... 19, 20

Financial Institution Plaintiffs and the Association Plaintiffs (collectively, "Plaintiffs") respectfully submit this Reply in further support of their Motion for Leave to Amend ("Motion").  ECF No. 648.

## INTRODUCTION

Unable to credibly characterize Plaintiffs' well-pleaded claims as implausible, Equifax ignores the amendments proposed in direct response to the Court's prior order and instead asks the Court to believe that Plaintiffs are pursuing a theory they already have expressly disavowed.

Plaintiffs are well aware of the Court's prior holding that the injury to the credit reporting system is not sufficiently concrete or particularized to support subject matter jurisdiction in federal court.  Mindful of the Court's ruling, counsel for Plaintiffs are pursuing those claims where they belong:  in state court.  Despite Equifax's awareness of the state court action, Equifax insists that the abandoned claims remain lurking in the Proposed Second Amended Complaint (the "SAC"). They do not.

Plaintiffs assert no claims stemming from an injury to the credit reporting "ecosystem," as previously described by the Court.  In a rhetorical sleight of hand, Equifax rebrands the purported "Ecosystem Claims" to now refer to any claim by a Plaintiff "that did not issue any payment cards compromised in the Equifax data

breach."  Response in Opposition to the Financial Institution Plaintiffs' Motion for Leave to Amend (ECF No. 774) ("Opp.") at 1.  But no court in the data breach context ever has held that the only financial institutions with standing to assert claims in federal court are those that issued compromised payment cards, and the amendments Plaintiffs propose demonstrate why.

Each Plaintiff now specifically alleges the fraudulent activity and resultant damages that they already, actually suffered, and plead in detail their specific efforts to mitigate the substantial risk of future harm, including the specific products and services purchased, and the increased resources spent to prevent further fraudulent banking activity.  ¶¶11-21.  Despite limiting their claims to those that already resulted in direct out-of-pocket costs, Equifax dismisses Plaintiffs' proposed amendments as only "cosmetic" in nature.  Opp. at 4.  But, unlike the litigants in the cases Equifax cites to claim that Plaintiffs are merely seeking reconsideration, *id.* at 9-10, Plaintiffs carefully heeded the Court's direction.  The Court previously "discounted" Plaintiffs' allegations concerning a substantial risk of future fraudulent activity, Opinion and Order, ECF No. 539 ("MTD Op.") at 13, finding that, because they were "pretty much word for word the same for each of the Plaintiffs," they were thus "abstract and generalized," which was "a factor that weigh[ed] against finding that the allegations are concrete and particularized."  *Id.* at 8.  In direct response to

2

the Court's concern, Plaintiffs now plead their allegations regarding fraudulent banking activity and resultant damages in detail, satisfying the injury-in-fact standing requirements for both retrospective and prospective relief.

Plaintiffs also specifically allege that this fraudulent banking activity was caused using data compromised in the Equifax Data Breach. Rather than address Plaintiffs' claims as pleaded, which must be accepted as true, Equifax instead asks the Court to require Plaintiffs to affirmatively prove at the pleading stage that their injuries were not caused by "some other breach," Opp. at 19, an unprecedented requirement that contravenes the standards applied at the pleading stage to determine when an injury is fairly traceable to a defendant's conduct. Finally, contrary to Equifax's position, Plaintiffs' injuries are redressable by an order for payment of damages and for other equitable relief.

In sum, Equifax has failed to demonstrate that Plaintiffs' proposed amendment is futile or subject to dismissal. The Court thus should grant Plaintiffs' Motion.

## ARGUMENT

## I. PLAINTIFFS ADEQUATELY ALLEGE THEIR ARTICLE III STANDING

### A. Equifax Wrongly Ignores the Fraudulent Banking Activity Plaintiffs Already Suffered Due to the Equifax Data Breach

Plaintiffs allege that, beyond the injuries associated with the compromise of

3

payment card data, Plaintiffs also experienced fraudulent banking activity using PII that was compromised in the Data Breach. ¶¶11-13, 15-21. This constitutes both injury-in-fact sufficient to confer Article III standing and confirms that Plaintiffs face a substantial risk of future harm such that their efforts to mitigate that risk, in the form of implementing enhanced identity theft protection measures, among others, were reasonable and also constitute injury-in-fact.

**1.    Equifax confuses the different standing analysis that applies to retrospective injuries, like Plaintiffs' allegations of fraudulent banking activity, with the analysis that applies to purely prospective injuries**

The operative injury-in-fact analysis "differs 'depending on whether the plaintiff seeks prospective or retrospective relief.'" *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014).[1] Where, as here, a plaintiff seeks redress for a retrospective injury that has already, actually, caused harm, the operative analysis considers only whether the injury is concrete and particularized. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *see also Baca v. Colorado Dep't of State*, No. 18-1173, 2019 WL 3938266, at *9 (10th Cir. Aug. 20, 2019). By contrast, where a plaintiff seeks purely prospective relief, to demonstrate injury-in-fact, the plaintiff must also show that a harm is either certainly

---

[1]    Unless otherwise noted, citations are omitted and emphasis is added.

impending or that there is a substantial risk that the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (setting forth the analysis applying to "allegation[s] of ***future*** injury").

Despite devoting nearly six pages to the topic, Equifax barely raises any credible challenges to Plaintiffs' assertion of retrospective injury-in-fact in the form of fraudulent banking activity that has already, actually occurred. Equifax's primary claim is that Plaintiffs must be attempting to resurrect the dismissed ecosystem claims because Plaintiffs "'do not allege that any of ***their*** information was stolen from them in the Data Breach.'" Opp. at 12; *see also id*. at 14. Thus, according to Equifax, the "***only***" injury Plaintiffs possibly could assert must then be an injury to the credit reporting system. *Id*. at 12. Not so. Plaintiffs' detailed allegations of injuries suffered due to fraudulent banking activity are both particularized and concrete, and Equifax's failure to so recognize represents a critical conceptual flaw that suffuses Equifax's entire opposition.

In Equifax's view, because financial institutions don't own PII like names, social security numbers, or driver's license numbers – the exact type of information that "can be used for identity theft," *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1252 (M.D. Fla. 2019), as a matter of law, financial institutions can never be injured by a compromise of PII. This certainly is

not the law, and numerous statutes recognize the reality that the fraudulent use of compromised PII can victimize financial institutions.  *E.g.,* 18 U.S.C. §1344 (criminalizing bank fraud).  Indeed, when PII is compromised, it is Plaintiffs that bear the ultimate risk of fraudulent banking activity because federal law requires them to reimburse consumers for any fraudulent banking activity.  ¶186; *see also* 15 U.S.C. §1693g (requiring financial institutions to reimburse consumers for fraudulent banking activity; to escape such liability, "the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . .").

If anything, Plaintiffs have suffered an injury that is more particularized and more concrete than consumers whose stolen identities were used to conduct fraudulent banking activity.[2]  *In re SuperValu, Inc.* – a case on which Equifax relies, *see* Opp. at 15 – is instructive.  There, the plaintiff alleged that he "noticed a fraudulent charge on his credit card statement and immediately cancelled his credit card."  870 F.3d 763 (8th Cir. 2017).  The defendant did not contest "that identity theft constitutes an actual, concrete, and particularized injury," *id.* at 772, and the Eighth Circuit held that the plaintiff's "allegations of misuse of his Card Information

---

[2]    For precisely this reason, if financial institutions have not suffered an injury-in-fact, consumers with compromised PII also would lack standing given that many of their asserted injuries stem directly from allegations of fraudulent banking activity that financial institutions were obligated to reimburse.  ECF No. 374, ¶¶26, 33, 37, 48, 54, 55, 60, 62, 63, 67, 69, 75, 77, 79, 83, 84, 86, 91, 101, & 103.

were sufficient to demonstrate that he had standing." *Id.* at 773.  The Eighth Circuit so held even though the plaintiff was never the party responsible for paying for the misuse of his payment card data.  Instead, it was the plaintiff's financial institution that ultimately incurred direct out-of-pocket costs as a result of the data breach, regardless of who may have technically "owned" the compromised data.

*Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278 (M.D. Fla. 2016), another case on which Equifax relies, *see* Opp. at 15-16, grounded its decision in similar reasoning.  There, the court held that a consumer lacked standing despite incurring two fraudulent charges on his credit card expressly because "Plaintiff has not alleged that the two fraudulent charges went unreimbursed ***by his credit union***." *Id.* at 1283.

Both cases confirm that Plaintiffs' allegations of harm are akin to the consumer's claims of harm.[3]  When consumers suffer identity theft and fraudulent banking activity after their PII is compromised in a data breach, as Plaintiffs' allegations make clear, it is financial institutions that are ultimately on the hook.[4]

Equifax does not question whether Plaintiffs have already, actually suffered from fraudulent banking activity.   Instead, Equifax tries to brush Plaintiffs'

---

[3]     Unlike the small businesses that Equifax claims are more analogous, financial institutions cannot "seek recovery of their damages in the Consumer Class action." ECF No. 541 at 11 (rejecting an attempt to secure a "second recovery").

[4]     Ironically, Equifax seemed to acknowledge as much when it "encourage[d] consumers to freeze their credit ***in order to prevent bank fraud***."  Opp. at 23 n.4.

allegations of fraudulent banking activity aside by claiming that even if such activity did occur, it hasn't really "damaged any particular bank" because the damages are somehow metaphysically "spread across all financial institutions."  *Id.*

Equifax, though, fails to explain how the $30,824 Plaintiff Hudson River Community Credit Union lost to fraudulent banking activity, ¶17, or the $10,000 lost by Plaintiff The Summit Federal Credit Union, ¶20, or the $2,500 lost by Plaintiff First Financial Credit Union, ¶15 – or how any of the other sums lost due to fraudulent banking activity using data compromised in the Equifax Data Breach, *see* ¶¶11-13, 15-21 – will be "spread across all financial institutions."  No other financial institution is going to chip in to cover these losses, nor does any provision of federal law compel such otherwise unheard-of corporate beneficence.   Because it is Plaintiffs – and Plaintiffs alone – who reimbursed their customers for the fraudulent banking activity caused by the Equifax Data Breach, such activity has harmed Plaintiffs in a personal and individual way, and thus constitutes a particularized injury.  *Spokeo*, 136 S. Ct. at 1548.

Next, Equifax tells the Court that fraudulent banking activity is insufficient to establish standing because "all financial institutions fall victim to bank fraud for innumerable reasons," such that it is impossible to attribute fraudulent banking activity to a particular data breach.  Opp. at 12.  Though a traceability argument at

heart, Equifax seems to think that its argument establishes that, contrary to Plaintiffs' allegations, Plaintiffs are only alleging an industry-wide risk of fraud.

Equifax cites *Griffin v. Dep't of Labor Fed. Credit Union*, in which the Fourth Circuit found only that a "plaintiff who [was] barred by law from making use of defendant's services" was not injured by the inability to access those services.  912 F.3d 649, 653, 657 (4th Cir. 2019) (emphasis omitted).  There, federal law prevented the plaintiff from suffering an injury.   Here, where federal law affirmatively obligates Plaintiffs (and Equifax) to protect the very information that was compromised in the Equifax Data Breach, ¶¶64-67, 75, the opposite is true.

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466 (D.C. Cir. 2009) is similarly distinguishable.  Plaintiffs are not like activists seeking to redress an "increase in global temperature" that affects "the world's population."  *Id.* at 478. Instead, they seek redress for the money they already, actually spent responding to the Equifax Data Breach.  *Cf.   U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973) ("[S]tanding is not to be denied simply because many people suffer the same injury.").  Such harms apply not to the world's population, but are particularized to Plaintiffs alone.

Finally, while Equifax also claims Plaintiffs' injuries are not concrete, it fails to explain why.  Nor could it.  Plaintiffs allege they already, actually incurred direct-

out-of-pocket costs, the type of "economic harm" the Eleventh Circuit recently characterized as "the epitome of 'concrete.'" *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). Because the "inability to have and use money to which a party is entitled is a concrete injury," *id.*, this argument must fail.

Thus, Plaintiffs' allegations of retrospective injury regarding fraudulent banking are both particularized and concrete and constitute injury-in-fact sufficient to confer Article III standing.

> ### 2. Having already suffered fraudulent banking activity, Plaintiffs have established that they face a substantial risk of future harm such that their efforts to mitigate that future risk also constitute injury-in-fact.

Plaintiffs' amended allegations also establish that they face the substantial risk of prospective injury in the form of additional fraudulent banking activity, such that the costs incurred to prevent that risk were reasonable. These include the costs to alter customer verification procedures and retrain staff regarding these enhanced procedures, ¶¶14-18, 20, 21, the costs to purchase enhanced identity authentication, identity theft protection, or fraud detection and prevention services, ¶¶11-16, 18-21, 212, and the costs to purchase cyber security insurance[5] in response to the Data

---

[5]     Equifax claims that Plaintiff Financial Health Federal Credit Union's ("FHFCU") purchase of a cyber-insurance policy is insufficient to confer standing because FHFCU did not allege what it "actually covers." Opp. at 28 n.5. FHFCU did allege, though, that it purchased the cyber-insurance policy "[a]s a result of its

Breach.  ¶14.  Each of these injuries are particularized, in that they affect each Plaintiff in a unique and individual way, and concrete in that each harm is associated with already incurred out-of-pocket costs.

Equifax goes to great lengths to obscure the holdings of the circuit courts that have considered mitigation efforts when analyzing standing in the data breach context.  Opp. at 14-16.  On the most critical issue, the circuits largely speak with one voice: "[I]n data breach cases, where courts have found an injury in fact based on an increased risk of identity theft, they have also found an adequate injury in fact based on the harm incurred by protecting against that risk."  *21st Century Oncology*, 380 F. Supp. 3d at 1256-57 (collecting cases); *see also Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621-22 (4th Cir. 2018) ("[A] mere compromise of personal information, ***without more***, fails to satisfy the injury-in-fact element in the absence of an identity theft. . . the Court has recognized standing to

---

customers' PII being compromised in the Data Breach."  ¶14.  FHFCU also alleges that it lost $13,000 of revenue due to abandoned credit applications, and that "as a result of customers freezing their credit reports in the aftermath of the Data Breach," it now takes "multiple days," instead of a single day to process applications.  *Id.*  The Eleventh Circuit recently reaffirmed that allegations of "wasted time" state a particularized and concrete harm, stressing that its precedents "strongly suggest" that such harm requires allegations not of wasted ***days***, but merely "more than a few seconds."  *Salcedo v. Hanna*, No. 17-14077, 2019 WL 4050424, at **2, 8 (11th Cir. Aug. 28, 2019); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) ("[A]llegations of lost sales [provide] standing under Article III.").

11

sue on the basis of costs incurred to mitigate or avoid harm when a substantial risk of harm actually exists."); *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (because plaintiff did not allege that data was misused, this "***in turn*** renders their contention of an enhanced risk of future identity theft too speculative"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011) ("[N]o evidence suggests that the data has been—or will ever be—misused . . . allegations of an increased risk of identity theft resulting from a security breach are therefore insufficient to secure standing."); *Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384, 388 (6th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015).

     *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) and *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) go farther.  In the Ninth and D.C. Circuits, there is no need to show "an injury" ***resulting*** from the compromise of PII; rather, it is the compromise of PII that is "the injury" ***demonstrating*** a substantial risk of harm such that the time and money spent to mitigate that risk also constitute independent injuries-in-fact.  *Zappos*, 888 F.3d at 1029 n.14; *Carefirst*, 865 F.3d at 629.

     Equifax tries to distinguish *Zappos* and *Carefirst* by arguing that they "involved lawsuits by ***consumers*** based on the alleged loss of ***their own*** information."  Opp. at 14-15; *see also id*. at 21 (arguing that "*Resnick* does not control" because it involved "individuals whose *own* PII was directly compromised).

But neither *Zappos*, nor *Carefirst*, nor any of the other circuit decisions to consider standing in the context of a data breach, including *Resnick*, turned on who "owned" the stolen data.  Instead, the only question before the circuits – and the only question that matters here – is whether Plaintiffs have shown that there is a substantial risk that the harm will occur.  *Spokeo*, 136 S. Ct. at 1548.

Here, because Plaintiffs allege that they already, actually, suffered injuries-in-fact in the form of fraudulent banking activity and compromised payment cards, under almost any circuit's analysis, the time and money spent to mitigate the substantial risk of those harms also constitutes injury-in-fact.  *Hutton*, 892 F.3d at 622; *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ("[A]ny costs undertaken to avoid future harm from the data breach would fall under footnote 5 of *Clapper*, specifically as reasonable mitigation costs due to a substantial risk of harm.").

Equifax's attempt to argue that such efforts are "a cost that all financial institutions (and countless other businesses) incur on a regular basis," Opp. at 26, or constitute "ordinary due diligence and regulatory compliance," *id.* at 27, ignores that Plaintiffs undertook such mitigation efforts as a direct response to the fraudulent banking activity and compromised payment cards they experienced in response to the Equifax Data Breach.

13

Thus, having already experienced fraudulent banking activity, Plaintiffs have sufficiently pleaded that they face the substantial risk of prospective injury in the form of additional fraudulent banking activity such that their efforts to mitigate that risk constitute independent injury-in-fact sufficient to support Article III standing.

### B.   The Injuries Plaintiffs Already Suffered Are Traceable Directly to the Equifax Data Breach

Plaintiffs also sufficiently allege that their injuries are fairly traceable to the Equifax Data Breach.  Ignoring the claims actually pleaded, Equifax again insists that Plaintiffs' injuries are contingent upon a lengthy and speculative chain of harms, ignoring that Plaintiffs' injuries occurred because PII compromised in the Equifax Data Breach was used to commit fraudulent banking activity.  *E.g.*, ¶¶11-13, 15-21.

By arguing that it is "equally likely" that Plaintiffs' injuries were caused by independent actors not before the Court, Opp. at 19-20, an assertion Plaintiffs dispute, Equifax inherently concedes that it is also "equally likely" that Plaintiffs' injuries were caused by the Equifax Data Breach.  This alone should end the inquiry. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008) ("'A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true.'").

Equifax asks the Court to impose a brand new requirement on financial

14

institutions in data breach litigation:  to affirmatively prove – at the pleading stage – that Plaintiffs' injuries weren't caused by "some other breach," or "[a]ny number of third-party actors."  Opp. at 19-20.

Equifax thoroughly misstates the applicable standard.  "[N]o authority even remotely suggests that proximate causation applies to the doctrine of standing." *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 148 F.3d 1231, 1251 n.23 (11th Cir. 1998); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) ("***[F]or standing purposes*** [plaintiff] is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence.") (emphasis in original).  Instead, it is black-letter that law that "[a] showing that an injury is 'fairly traceable' requires *less* than a showing of 'proximate cause.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).  "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."  *Id.*  Notably, there is no requirement to plead that a "defendant's actions are the very last step in the chain of causation."  *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997).

In Equifax's view, neither consumers nor Plaintiffs that issued compromised payment cards could fairly trace their injuries to the Equifax Data Breach.  Yet, even though "[a]ny number of third-party actors can possess exact same PII [and PCD]

and have obtained that PII [and PCD] from countless different sources," neither this Court, nor any other in the data breach context, has had difficulty concluding that such injuries are fairly traced to the breach in which such data was compromised. MTD Op. at 17; *The Home Depot*, 2016 WL 2897520, at *3 (finding that such injuries were "fairly traceable to [defendant's] conduct, specifically the alleged failure to implement adequate data security measures"). Equifax similarly argues that it is implausible that fraudsters used social security numbers that were compromised in the Equifax Data Breach to commit fraudulent banking activity. Opp. at 20. Experts disagree. *E.g.*, ¶194 ("Security experts warned that "the scale of the Equifax breach means that every SSN . . . must be presumed to be public knowledge."); *see also* ¶¶181-201 (describing in detail the near-unanimous view of experts that the PII compromised in the Equifax Data Breach will be used to commit fraudulent banking activity).

Equifax's arguments depend on speculation that lacks foundation in the SAC. As alleged, (1) hackers stole PII from Equifax and (2) used that PII to commit fraudulent banking activity at Plaintiffs' institutions. ¶¶11-13, 15-21. Equifax's mere speculation as to the ways the causal chain could have been broken does not render Plaintiffs' detailed allegations to the contrary implausible. Having launched a facial attack, Plaintiffs allegations must be "taken as true." *Stalley*, 524 F.3d at

16

1232-33.   Equifax's authority, which addresses ***prospective*** harms and their accordingly speculative causal chains, Opp. at 13, 18-19,[6] does not suggest otherwise.  Here, the Court need not speculate ***at all***; Plaintiffs' injuries already have occurred, and they have occurred as a direct result of the Equifax Data Breach.

Equifax further tries to distort Plaintiffs' allegations by claiming that Plaintiffs only allege that "at some point in the eighteen-month period between the announcement of the Equifax data breach and the filing of the [SAC], certain of the Plaintiffs' customers suffered bank fraud."  Opp. at 19.  Equifax again mischaracterizes the SAC.  As alleged, identity theft resulted in $16.8 billion in losses in 2017 alone.  ¶86.  Plaintiffs do not, as Equifax claims, seek to charge Equifax with ***all*** fraudulent banking activity that has occurred notwithstanding its relationship to the Equifax Data Breach, but only the fraudulent bank activity Plaintiffs directly attribute to the Equifax Data Breach.

To the extent, though, that Equifax believes that Plaintiffs are "reliant on speculation," Opp. at 18, following discovery, Equifax may seek summary judgment if it can muster facts showing that it was, in fact, "some other breach," *id.* at 20, that

---

[6]   The one case Equifax cites involving a retrospective injury, *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217 (10th Cir. 2008), is readily distinguishable. While the Court may not be able to infer "the motivations of individual voters," *id.* at 1225, it can, with a substantial degree of certainty, know what considerations motivated hackers and fraudsters.

caused Plaintiffs' injuries. *See*, *e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990).

Finally, Equifax distorts the direct causal chain relating to Plaintiffs' allegations of lost revenue. Equifax's imagined five-step straw-man causal chain is, itself, "pure speculation." Opp. at 22. The actual causal chain is far shorter. As pleaded, following the breach, (1) Equifax directed consumers to consider freezing their credit reports, ¶204; (2) because of Equifax's direction, they did, ¶¶13, 14, 16, 18, 21; and (3) as a result, it now takes Plaintiffs more time to process credit applications. *Id.* These injuries, which are concrete and particularized, *Salcedo*, 2019 WL 4050424, at **2, 8, are traceable directly to the Equifax Data Breach.

Plaintiffs thus meet their pleading-stage burden and adequately allege that their injuries are fairly traceable to the Equifax Data Breach.

## C. Plaintiffs' Injuries Can Be Redressed by a Favorable Judicial Decision

Equifax argues that Plaintiffs' injuries are not redressable because requiring Equifax to pay for the harm it has wrought will not "purge the U.S. financial system of fraud." Opp. at 29. True. But that is not the order Plaintiffs seek. Instead, Plaintiffs seek damages for fraudulent banking activity that already has occurred, the costs to mitigate against the substantial risk of future fraudulent banking activity, and injunctive relief to protect PII and PCD. *See*, *e.g.*, ¶¶10-30, 210-16, 355-62.

18

Plaintiffs' injuries therefore plainly are redressable by orders from this Court.

## II.   THE ASSOCIATION PLAINTIFFS HAVE ARTICLE III STANDING

By its silence, Equifax concedes that five of the six Association Plaintiffs have standing based on diversion-of-resources and associational theories of standing. *Borges v. Bank of New York Mellon*, No. 1:13-CV-02623-LMM, 2015 WL 11233231, at *4 (N.D. Ga. Dec. 15, 2015). Equifax also concedes that Indiana Credit Union League has adequately alleged standing based on the diversion of its resources, questioning only whether it has associational standing. This argument fails for the reasons set forth *supra* n. 5.

## III.   THE COURT SHOULD REJECT EQUIFAX'S INAPPROPRIATE REQUEST TO RECONSIDER ITS PRIOR, CORRECT RULING THAT PLAINTIFFS' O.C.G.A. §13-6-11 CLAIM IS WELL-PLEADED

Plaintiffs propose to amend their Section 13-6-11 claim only to clarify that it is a separate claim for relief. Equifax provides no reason for this Court to depart from its prior holding that Plaintiffs' allegations are sufficient to state a claim of bad faith under O.C.G.A. §13-6-11. MTD Op. at 80. The lone case Equifax cites, *Rivers v. S. Auction and Realty*, was decided after considering the totality of evidence presented at trial. No. A19A0049, 2019 WL 2710228, at *5 (Ga. Ct. App. June 28, 2019) (decision made "[b]ased on the record in this case"). No such record exists here. Construing Plaintiffs' allegations in the light most favorable to Plaintiffs,

Plaintiffs' Section 13-6-11 claim remains well-pleaded.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.[7]

Respectfully submitted this 6th day of September, 2019.

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
**SCOTT+SCOTT**
**ATTORNEYS ATLAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
Tel. 212.223.6444
jguglielmo@scott-scott.com

Gary F. Lynch
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel. 412.322.9243
glynch@carsonlynch.com

*Financial Institution Plaintiffs' Co-Lead Counsel*

---

[7]     The Court should deny Equifax's request to file an additional Rule 12(b)(6) motion to dismiss.  Equifax could have opposed Plaintiffs' Motion on the basis that the SAC failed to state a claim.  *See Delgiudice v. Primus*, 679 Fed. Appx. 944, 949 (11th Cir. 2017).  Equifax chose not to.  If Equifax wants a third bite at the apple, or to lodge a factual challenge to Plaintiffs' standing allegations, the appropriate time for such arguments will be at summary judgment.

Craig A. Gillen
**GILLEN WITHERS & LAKE, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, Georgia 30305
Tel. 404.842.9700
cgillen@gwllawfirm.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327
Tel. 404.572.4600
ranse@onleygriggs.com

*Financial Institution Plaintiffs' Co-Liaison
Counsel*

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel. 504.525.8100
amurray@murray-lawfirm.com

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402

21

Tel. 612.349.8500
sslaughter@robinskaplan.com

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel. 404.261.7711
cvanhorn@bfvlaw.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Tel. 501.312.8500
acarney@cbplaw.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel. 612.339.7300
bbleichner@chestnutcambronne.com

Karen Hanson Riebel
**LOCKRIDGE      GRINDAL      NAUEN
P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, Minnesota 55401
Tel. 501.812.5575
khriebel@locklaw.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223

22

Tel. 501.821.5575
karenhalbert@robertslawfirm.us

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel. 612.341.0400
brian.gudmunson@zimmreed.com

*Financial Institution Plaintiffs' Steering Committee*

## __CERTIFICATE OF COMPLIANCE__

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 6th day of September, 2019.


_s/ Joseph P. Guglielmo_
Joseph P. Guglielmo

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo