IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>This document relates to:<br>*City of Chicago v. Equifax, Inc.*<br>No. 1:18-cv-1470-TWT<br><br>Chief Judge Thomas W. Thrash, Jr. |

**REPLY IN SUPPORT OF PLAINTIFF CITY OF CHICAGO'S
MOTION FOR RECONSIDERATION**

Equifax's response brief encourages the Court to deny the City's motion for reconsideration on the basis of a handful of uncompelling arguments about legal standards and procedural machinations. But those arguments aren't what Equifax really cares about. It's not hard to see that what Equifax is actually hoping to accomplish here is the proverbial killing of two birds with one stone: settle the Consumer Plaintiffs' claims (for pennies on the dollar, no less), and quietly extinguish the City's separate and distinct government enforcement action as an added bonus. That's made plain when Equifax contends that it's altogether "premature" to even consider whether the City's enforcement action could actually

1

be "subsumed" by the consumer claims, and thus, the proposed settlement now before the Court.

There are a number of problems with that approach. For one, and as even the Consumer Plaintiffs recently admitted in an email which is attached to this reply, the City's government enforcement claims have never been (and could never be) represented by the consumer track nor anyone else in this litigation. Equifax knows that and therefore refuses to take a position on the issue, hoping instead that if it waits long enough the Court might be inclined to find that the settlement resolved the City's claims nonetheless.[1] That's not an appropriate way forward and only serves to undermine the very purposes for which the MDL process exists. Further, given that the City's claims are not actually being represented elsewhere in the litigation, and they won't (and were never intended to) be affected by the consumer settlement, there's no reason the City should have to wait any longer—potentially years more—to proceed with its case, whether that be in a separate "government track" or otherwise.

---

[1] On this point, the idea that Equifax and its counsel failed to form a view or consider at all the impact of the consumer settlement (if any) on the other claims and cases in this litigation at the time they negotiated it, executed it, or presented it for approval to this Court is not credible.

As for the matters upon which Equifax has actually put pen to paper, none should compel the Court to deny reconsideration. Taking great pains to sidestep the points raised in the City's motion, Equifax claims that the City is merely attempting to rehash arguments it raised in its original motion. That's clearly not accurate. As even Equifax acknowledges, the City need not raise newly discovered evidence or present newly decided legal authority in order to assert a valid reason for reconsideration. Rather, it need *only* demonstrate that reconsideration is "necessary to correct a clear error or to prevent manifest injustice." (*See* Resp. at 5 (quoting *Green v. Premier Telecomm. Servs., LLC*, 2017 WL 6994888, at *1 (N.D. Ga. Nov. 9, 2017)); Mot. at 2 (quoting *Franscona v. Minn. Mut. Life Ins. Co.*, 53 F. Supp. 2d 1282, 1283 (N.D. Ga. 1998) (Thrash, J.)).) The City's motion does both.

First, the Court's finding that the Consumer Plaintiffs' claims have "subsumed" the City's enforcement action was clear error. By constitutional and statutory authority, only the City has the power to bring the claims at issue. The Consumer Plaintiffs recognize as much and have correctly taken the position that they've neither asserted those claims nor represented the City in any other fashion at any point in this litigation, and that the settlement now before the Court in no way affects (or was intended to affect) the City's claims. For its part, Equifax purposely doesn't address these arguments and thus, concedes them.

Equifax instead axiomatically asserts that the Court has broad discretion to manage its own docket. True enough. Courts do indeed have discretion to control scheduling of the cases before them, especially when presiding over MDLs, but it is not unlimited. MDL courts must establish schedules that move a case forward toward resolution. The refusal to do so here on the basis that the City's claims were somehow represented by the consumer track, when even the Consumer Plaintiffs themselves claim that was never the case, was clearly erroneous.

Second, and as noted above, Equifax skirts the City's manifest injustice argument, refusing to take a position on whether the City's claims supposedly subsumed by the consumer track are also subsumed by the consumer settlement. Instead, Equifax suggests that the City be forced to wait to litigate its enforcement claims, if they still exist at that point, until the already-embattled consumer settlement is finally approved. With numerous objections to the settlement already submitted, and weeks until the objection deadline, the settlement approval and appeals process is shaping up to take years to reach its end, and that's if there is even a settlement at the end. Requiring the City's case to sit idle during this time would run afoul of the purpose of multidistrict proceedings (i.e., to justly and efficiently move cases toward resolution), effectively bar the City from having its day in court, and be manifestly unjust.

As discussed in its motion and further below, the City should be permitted to litigate its case—whether it's via a separate track within this MDL or not—and the motion for reconsideration should be granted.

**I.      Equifax Does Not Challenge the City's Argument that the Court's Order Contained a Clear Error.**

At the crux of the City's argument that it was clear error for the Court to deny a separate track is the Court's finding that the City's claims are subsumed by those of the Consumer Plaintiffs. (Mot. at 3–7.) Not once in Equifax's response does it challenge the notion that the City's claims are distinct—nor can it. The City's complaint plainly asserts enforcement claims under its own ordinance—Municipal Code of Chicago, MCC § 2-25-090—that only the City itself has the authority to bring, and seeks relief not available to Illinois consumers, such as civil fines. *See* MCC § 2-25-090(b) ("The *commissioner* shall be charged with enforcement of this section. . . .") (emphasis added). And, for the avoidance of doubt, the City has withdrawn the only potentially overlapping relief—its request for restitution on behalf of Chicago residents—for the time being, now that the Consumer Plaintiffs have proposed to settle these claims. (Mot. at 3.) Equifax fails to refute this complete lack of overlap in claims between the City and Consumer Plaintiffs in its response, thus conceding the point. *See Alexander-Igbani v. Dekalb*

*Cty. Sch. Dist.*, 2013 WL 12097455, at *5 (N.D. Ga. July 11, 2013) (noting that failure to address other party's arguments results in concession on the issue).

Rather than grapple with how treating the City's distinct claims the same as consumers' is not a clear error, Equifax attempts to reframe the issue. First, Equifax contends that because the City has not separately addressed the Court's conclusion that a government track would "needlessly complicate" the litigation, the motion for reconsideration should be denied. (Resp. at 8–9.) This argument, and the authority Equifax relies upon in support of it, is unconvincing.

The Court's finding that a separate track would "needlessly complicate" the litigation stems from the underlying premise that the claims of the Consumer Plaintiffs "subsume" those of the City's. (*See* dkt. 784 at 1 (stating that "the Consolidated Complaint asserts Illinois-specific claims on behalf of a putative Illinois subclass that subsume the claims asserted in the City's lawsuit.").) The City asserts this premise is clearly erroneous, necessarily rendering any resulting inferences—such as needlessly complicating the litigation—erroneous as well.

Consumer Plaintiffs, by their own admission, do not represent the interests of the City. *See* Declaration of Eve-Lynn J. Rapp ("Rapp Decl."), attached as Exhibit 1, at ¶ 3; Oct. 10, 2019 Keller Email, attached as Exhibit 1-A. The state of the consumer settlement—which the City was never asked to weigh in on—

likewise makes it readily apparent that the City's interests are not represented by Consumer Plaintiffs. Nor, as evidenced by the Consumer Plaintiffs' refusal to cooperate with or provide discovery to government litigants during the pendency of this MDL, have they ever been. (*See* dkt. 667 at 2–3 (describing Puerto Rico's failed attempts to coordinate with Consumer Plaintiffs).)

Equifax's primary authority, *Galardi v. City of Forest Park*, 2011 WL 13214217 (N.D. Ga. Aug. 30, 2011), does nothing to bolster its position. (*See* Resp. at 9.) To the contrary, *Galardi* supports the City's argument that judicial misinterpretation of the claims asserted is a sufficient basis for a finding of clear error that requires reconsideration. Specifically, the defendant in *Galardi*—whose request to reconsider *was* granted—argued that the court clearly erred in upholding a First Amendment claim based on facts not actually asserted in the plaintiffs' complaint. *Galardi*, 2011 WL 13214217, at *9. The court ultimately agreed and granted the motion. *Id.* The City's argument here is analogous: in its Order the Court found that the City's claims were included in the Consumer Plaintiffs' Consolidated Complaint (*see* dkt. 784 at 1), but that finding is belied by the pleadings and the actual claims asserted. The Consumer Plaintiffs don't assert, and are not capable of asserting, claims against Equifax under the Municipal Code of

Chicago, MCC § 2-25-090, nor capable of recovering the civil penalties for which it allows. *See* MCC § 2-25-090(b).

Equifax next tries to justify the Order by pointing to the Court's broad discretion to govern the MDL proceeding. To be clear, the City does not dispute that "courts enjoy broad discretion in deciding how best to manage the cases before them." *See Chudasma v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). But that "discretion is not unfettered," particularly "[w]hen a litigant's rights are materially prejudiced[.]" *Id.* at 1367. And although additional deference is given "to a district court administering a MDL proceeding, due process and fundamental fairness may not be sacrificed to provide assembly-line justice." *In re PPA Prods. Liability Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006).

Here, while the Court's Order refusing to establish a separate track for the City may be the discretionary "procedural" mechanism that Equifax claims it is on paper (Resp. at 9), its consequences are antithetical to the "goal of the multidistrict litigation process"—to "promote the just and efficient conduct of civil actions," *In re PPA Prods. Liability Litig.*, 460 F.3d at 1229 (internal quotations omitted)—and ultimately prevent the City from having its day in Court. *See id.* at 1232 (Courts may of course enter various pretrial plans to accommodate "the circumstances of the particular MDL" but they "*must* establish schedules . . . if the coordinated cases

8

are to move in a diligent fashion toward resolution by motion, settlement, or trial." (emphasis added)); *see also Glover v. City of Pensacola*, 372 Fed. App'x 952, 955-56 (11th Cir. 2010) ("Parties should feel that a district court has given them their day in court."). The Court's ruling prevents the City from being able to litigate its claims, and it does so based on the mistaken ground that those claims are subsumed by those of the Consumer Plaintiffs. Accordingly, the City's motion for reconsideration "should be granted to correct a clear error." *See Franscona*, 53 F. Supp. 2d at 1283.

## II.     Equifax's Proposed Outcome Is Manifestly Unjust.

As the City flagged in its motion, the Court's finding that the City's claims are subsumed by the Consumer Plaintiffs' Consolidated Complaint begs the question of whether they're also subsumed by the Consumer Plaintiffs' settlement. Equifax has tellingly refused to take a position on this issue, not only in its response (Resp. at 10 n.1), but also by failing to respond to counsel for the City on the matter when directly requested to do so. *See* Rapp Decl. ¶ 4; Oct. 10, 2019 Rapp Email, attached as Exhibit 1-B. Perhaps that's because Equifax has realized that it cannot take a position on the issue without rendering the need for a separate track—or freeing the City to proceed in the current one—abundantly clear.

On the one hand, Equifax can't possibly argue that the City's claims are released: the settlement itself doesn't include the City as a party or provide any of the relief now sought by the City;[2] the City did not receive notice of the settlement (but will submit an opt-out nonetheless out of an abundance of caution); the City was not involved in the settlement negotiations; and counsel for Consumer Plaintiffs have explicitly disclaimed that they represent or have ever represented the City's interests. *See* Rapp Decl. ¶ 3; Ex. 1-A.[3] But neither can Equifax take the position that the City's claims are *not* released under the settlement agreement,

---

[2] Although the City has withdrawn its request for restitution based on the current version of the settlement purporting to provide it to Illinois consumers, it notes that consumers are now expected to receive pennies, if anything, in monetary relief from the settlement. The City therefore reserves its right to reassert its claim for restitutionary relief if the settlement is approved and once the final settlement payouts are known, subject to any applicable set-offs.

[3] Equifax's refusal to take a position on whether it believes the settlement encompasses the City's claims makes it impossible for the City to determine if it should object to the deal. To be clear, the City's and the Consumer Plaintiffs' positions are that the settlement does not involve the City's claims. Equifax and its counsel presumably had a view on this issue when they negotiated and executed the agreement, so it's unclear why they just won't say it. And, if it they believed that the City's claims were part of the settlement, why didn't Consumer Leads or Equifax attempt to communicate with the City about the settlement or otherwise involve it in the negotiation process? The only explanation is that they are hoping to somehow capitalize on the Court's previous ruling, in hopes that by the time it gets addressed by the Court, the time to object has passed and it's already too late. If Equifax ends up taking the position or this Court finds that the City's claims are resolved and released by the consumer settlement agreement, the City reserves its right to object to the settlement.

because to do so would be an explicit acknowledgment that the City's and Consumer Plaintiffs' claims are separate and distinct—dashing Equifax's hopes that the settlement will tacitly extinguish the City's separate and distinct claims. Instead, Equifax makes the remarkable assertion that consideration of the City's claims is "premature" and that the City cannot litigate its own claims until the consumer settlement process has fully run its course—without ever indicating why or what will change as it relates to the City's unique claims once the approval process is completed (whenever that may be) . (Resp. at 10 n.1.) This outcome is the epitome of manifest injustice.

If the volume of objections received to date (nearly a month prior to the objection deadline), scathing criticism from consumer advocacy organizations, industry professionals, and politicians alike, as well as the general public outcry are any indication, final resolution of the consumer settlement and any associated appeals will be an ongoing process that could take months, if not years. And that's a best-case scenario, as approval of the settlement remains in doubt. *See* FTC, *Equifax Data Breach Settlement*, "I thought I could choose $125 instead of free credit monitoring. What happened?" (Sept. 2019) (FTC warning consumers that

they "will be disappointed with the amount" they stand to receive under the deal).[4] In other words, the approval process will be protracted at the expense of yet more prejudice to the City, which has already been forced to wait in limbo for two years without so much as a responsive pleading to its complaint, much less discovery.

Moreover, the City pointed to a number of cases in which MDL courts created separate tracks for government enforcement actions—presumably to avoid this sort of unjust result—but Equifax did not meaningfully respond to them in its briefing. (*See* Mot. at 5.) For example, Equifax summarily rejects the government track established in the *In re Marriott* data breach MDL as a discretionary determination by that court, but fails to cite a single proceeding where a court's discretion has enabled it to halt the progression of a government enforcement action until the consumer track resolves. Equifax does make a passing suggestion that the judge in the *Marriott* MDL permitted a government track due to "the specific circumstances in those proceedings" (Resp. at 8), but did not, because it could not, distinguish the two cases in any way.

---

[4]    https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement#FAQ5 (last accessed October 24, 2019).

Equifax's reliance on *In re Deepwater Horizon* (*see* Resp. at 9) is similarly uncompelling. There, the court denied the State of Louisiana's motion for a separate track in light of its pretrial order *appointing* specific "[g]overnment [c]oordinating [c]ounsel" with an eye toward the "facilita[tion of] efficient discovery" and "the governmental interests at stake in the MDL[.]" *In re Deepwater Horizon Oil Rig Oil Spill*, No. 2:10-md-2179, dkt. 1074, (E.D. La. Jan. 27, 2011). The court ensured that the government counsel already appointed from the Department of Justice and a State Attorney General would protect and act on behalf of the various federal and state governments involved in the litigation, so that the government entities had a voice and an active role in the scheduling and coordinating of discovery in the MDL. *See id.*

That is decidedly not what has happened in this case. Since the JMPL transferred the City of Chicago's case from the Northern District of Illinois on April 5, 2018, the City's case has sat stagnant. Prior to the City's transfer, the Court had already established separate tracks for consumer class actions, small businesses, and financial institutions. (Dkt. 87 (CMO 2, dated Jan. 10, 2018).) Accordingly, on May 22, 2018, the City moved the Court to establish a separate track for government actions as well, as is common practice. (*See* dkt. 385.) Pursuant to a previously entered case management order, all responsive pleading

and discovery deadlines were stayed in the interim. (*See* dkt. 23 (CMO 1, dated Dec. 8, 2017)).) It was not until August 6, 2019—over a year later, and after the Consumer Plaintiffs' settlement had already been reached and the notice plan authorized—that the Court denied the City's motion. (Dkt. 784.)

*         *         *

In the end, the City's interests have not been represented in this MDL, it has not been permitted to take an active role (or any role, really) in the litigation, and the purposes and goals of multidistrict litigation have been stymied as a result. *See In re PPA Prods. Liability Litig.*, 460 F.3d at 1229. Reconsideration is therefore necessary both to correct a clear error as well as to prevent manifest injustice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **CITY OF CHICAGO**, |
| Dated: October 24, 2019 | /s/ Eve-Lynn J. Rapp<br>One of Plaintiff's Attorneys |
|  | Stephen J. Kane<br>stephen.kane@cityofchicago.org<br>City of Chicago Department of Law<br>121 North LaSalle Street, Room 600<br>Chicago, Illinois 60602<br>Tel.: 312.744.6934 |
|  | Jay Edelson<br>jedelson@edelson.com<br>Benjamin H. Richman |

brichman@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel.: 312.589.6370
Fax: 312.589.6378

## CERTIFICATE OF SERVICE

I certify that on October 24, 2019, I caused the foregoing to be electronically with the Clerk of the United States District Court for the Northern District of Georgia using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/     Eve-Lynn J. Rapp