## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL No. 17-2800-TWT |
| THEODORE H. FRANK and DAVID R. WATKINS, | CONSUMER ACTIONS |
| Objectors. | Chief Judge Thomas W. Thrash, Jr. |

## FRANK AND WATKINS' OBJECTION TO SETTLEMENT AND TO MOTION FOR ATTORNEYS' FEES

This settlement flunks basic Rule 23 class-certification and 23(e) fairness requirements designed to protect absent class members because it creates a single class despite fundamental intraclass conflicts between subgroups: some class members have valuable statutory-damages claims while others have none, yet all receive the same benefits under the settlement. Such conflicts require subclassing and separate legal representation. Further, class counsel unfairly structured the settlement and claims process to deter legitimate objections and throttle monetary claims. The Court should deny approval of the settlement, but at a minimum, class counsel's fee request should be reduced because it exceeds a reasonable percentage in a megafund case and overestimates their minimal risk. Class counsel's inflated lodestar includes time from 60 law firms but no billing

records to permit objectors to determine the extent of the duplication.

## I.   Frank and Watkins are class members and intend to appear through non-profit counsel at the fairness hearing.

Objectors Theodore H. Frank and David R. Watkins (collectively "Frank") are members of the settlement class. Frank's mailing address is 1629 K Street NW, Suite 300, Washington, D.C. 20006, and he was a citizen of Washington, D.C. at the time of the data breach. *See* Declaration of Theodore H. Frank (attached at Ex. 1) ¶ 7. Watkins's mailing address is 2769 Sommet Drive, Salt Lake City, Utah 84117. *See* Declaration of David R. Watkins (attached at Ex. 2) ¶ 2. Both Frank and Watkins verified on the settlement website that their information was impacted and both submitted a claim form. Frank Decl. ¶ 5; Watkins Decl. ¶ 5. Frank and Watkins are thus class members. Frank's objection applies to the entire settlement class, and also specifically to the members of the settlement class with state-law statutory damages claims. *See* Watkins Decl. ¶ 3; Frank Decl. ¶ 3.

Frank's counsel, Melissa A. Holyoak of the non-profit 501(c)(3) Hamilton Lincoln Law Institute ("HLLI") will appear at the Fairness Hearing, currently scheduled for December 19, 2019, at 10:00 a.m. Frank reserves the right to cross-examine any witnesses put forward in support of the settlement. Frank intends to rely on this Objection and accompanying declarations at the fairness hearing, and reserves the right to rely on any evidence submitted on the record; he joins any objections not inconsistent with this one. Frank objects to any provisions of the settlement purporting to

limit appellate rights of class members or create new burdens beyond those imposed in Federal Rules of Appellate Procedure 7 or 8.

The Center for Class Action Fairness ("CCAF"), a program housed within HLLI, represents class members *pro bono* against unfair class-action procedures and settlements, and has won hundreds of millions of dollars for class members. Frank Decl. ¶¶ 11-13. As commentators recognize, CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018); *see also, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising Frank).

The Preliminary Approval Order (Dkt. 742, "PAO") in this case requires objectors to identify all class action settlements objected to by the objector in the previous five years. PAO at 10-11. Watkins has not previously objected to a class action settlement. *See* Watkins Decl. ¶ 9. Frank, however, is CCAF's Director of Litigation and has objected or assisted in objections to dozens of settlements. *See* Frank Decl. ¶ 16. The attached declaration of Frank satisfies this listing requirement. *See id.* Complying with the listing requirement took several hours and was unduly burdensome, particularly because the requested information is publicly available. *See infra*, Section III.A.

The PAO also requires detailed information regarding objectors' counsel who intend to seek compensation. *See* PAO at 11-12. CCAF does not consider the possibility of fees when deciding whether to object to a class action settlement. Frank Decl. ¶ 35. In other cases, CCAF has asked the

court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class. *See id.* ¶ 36. Thus, whether CCAF seeks fees in this case depends on what it achieves for the class. Based on the possibility that CCAF will seek fees, however, the attached declaration of the undersigned Melissa A. Holyoak satisfies this burdensome request for information, most of which is publicly available. *See* Declaration of Melissa A. Holyoak ¶¶ 5-20 (attached at Exhibit 3). Further, to preempt any possibility of a false accusation of objecting in bad faith and seeking to extort class counsel, Watkins and Frank are willing to stipulate to an injunction prohibiting them from accepting compensation in exchange for the settlement of this objection. *See* Frank Decl. ¶ 19; Watkins Decl. ¶¶ 10-11.

Finally, as required by the PAO, Frank and Watkins state that they are available for deposition in Salt Lake City, Utah on November 20, 21, 22, and December 4. *See* Watkins Decl. ¶ 8; Frank Decl. ¶ 8. Frank and Watkins object to the depositions, *see* Section III.A, but agree to make themselves available upon an agreement of reciprocal depositions of Professor Klonoff and a sample of class representatives identified by Frank and Watkins, and upon receiving a request complying with Fed. R. Civ. P. 26(g)(1). Frank and Watkins further reserve all rights under Fed. R. Civ. P. 26(g)(3) and 45.

## II.   The settlement class cannot be certified because intraclass conflicts preclude Rule 23(a)(4) adequacy of representation and flunk settlement fairness under Rule 23(e)(2)(D).

"Class-action settlements are different from other settlements." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). "[T]he district

court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *Id.* at 718. Instead, "[c]areful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quotation omitted). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)).

This judicial duty to vouchsafe the rights of the absent plaintiffs extends to the class certification decision, obliging district courts to conduct a "rigorous analysis" to ensure compliance with Rule 23 certification prerequisites. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The burden of proving these prerequisites resides with certification proponents. *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). Aside from trial manageability concerns, that burden is no lighter for a settlement-only class certification. Rule 23(a) and (b)(3) requirements are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened,

attention in the settlement context." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *accord Pampers*, 724 F.3d at 721.

A court cannot certify a class action unless it determines that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to proceed as a class action, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Dukes*, 131 S. Ct. at 2550 (cleaned up). The purpose of Rule 23(a)(4) is to assure that the absent class members' interests are represented in the litigation so as to make it fair to bind them to the release and settlement of the action. *Amchem*, 521 U.S. at 621. The Rule 23(a)(4) adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. Here, Rule 23(a)(4) adequacy is lacking because there are fundamental intraclass conflicts regarding statutory-damages claims that require separate subclassing and separate counsel.

The Settlement here ccontemplates a single settlement class: "[t]he approximately 147 million U.S. consumers identified by Equifax whose personal information was compromised as a result of the cyberattack and data breach announced by Equifax on September 7, 2017." PAO at 2. This Court found that plaintiffs could proceed with data breach claims from 25 states, the District of Columbia, Puerto Rico and the Virgin Islands, and consumer-protection statutes from 33 states, the District of Columbia and the Virgin Islands. Order Granting Motion to Dismiss in Part, Dkt. 540 at 63-65,

69-75. Rule 23(a)(4) requires class members with different statutory claims to be subclassed with separate representation so that a group of class members' claims are not favored at the expense of another's.

*In re Literary Works* is directly on point. 654 F.3d 242 (2d Cir. 2011). In that case, class counsel attempted to negotiate compensation from Google for three separate "categories" of class members (labeled A, B, and C) in a single settlement class. *Id*. at 246. Each category had a different statutory claim and each received a different damages formula. *Id*. There was no dispute that each category had differently valued claims, nor that the compensation for the different categories was unequal. Instead, the problem was that the class representatives were generally representing all subgroups—class representatives had claims in categories A, B, and C—but were incentivized to favor their more exclusive category A and B claims. *Id*. at 251, 252 (citing *Amchem*, 521 U.S. at 627). The Court found that "the interests of class members who hold only Category C claims ***fundamentally conflict*** with those of class members who hold Category A and B claims." *Id*. at 254 (emphasis added).

The Second Circuit explained that "[a]lthough all class members share[d] an interest in maximizing the collective recovery, their interests diverge[d] as to the distribution of that recovery because each category of claim is of different strength and therefore commands a different settlement value." *Id*. The Court struck the settlement on Rule 23(a)(4) grounds: the class representatives "cannot have had an interest in maximizing

compensation for **every** category." *Id*. at 252 (emphasis in original).

Recently, the Eleventh Circuit adhered to these principles in *W. Morgan-East Lawrence Water & Sewer Auth. v. 3M Co.*, 737 Fed. Appx. 457 (11th Cir. 2018) (unpublished). Confronting a settlement of claims alleging defendant manufacturers had contaminated a water supply, the court found it impermissible to lump both water purchasers and the water authority into a single class with unitary representation. *Id*. at 464-66. Purchasing class members "asserted claims for monetary damages addressing individualized harms such as mental anguish—claims not shared by the Water Authority." *Id*. at 464; *cf. also Lyons v. Georgia-Pacific Corp. Salaried Emples. Ret. Plan*, 221 F.3d 1235, 1252-1254 (11th Cir. 2000) ("We cannot expect Lyons to assert with 'forthrightness and vigor' those interests of other class members that he does not share and in which he has no stake.").[1]

Moreover, class members are entitled to both unconflicted named representatives and unconflicted *class attorneys*. "Only the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately

---

[1] *See also Dewey v. Volkswagen AG*, 681 F.3d 170, 188 (3d Cir. 2012) (finding that representative plaintiffs' "interest in excluding other plaintiffs from the reimbursement group" was "precisely the type of allocative conflict of interest that exacerbated the misalignment of interests in *Amchem*."); *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) ("Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative.").

represented." *Literary Works*, 654 F.3d at 252. The Second Circuit explained why separate legal counsel is necessary to resolve an intraclass conflict:

> ***The rationale is simple: how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?*** It is for this reason that the participation of impartial mediators and institutional plaintiffs does not compensate for the absence of independent representation. Although the mediators safeguarded the negotiation process, and the institutional plaintiffs watched out for the interests of the class as a whole, no one advanced the strongest arguments in favor of Category C's recovery.

654 F.3d at 253 (emphasis added); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (holding that intraclass conflict "requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel"); *Piambino II*, 757 F.2d at 1145 n.88 (11th Cir. 1985) (ordering designation of a separate subclass "with the right to have separate counsel unbeholden to Lead Counsel").

This case is worse than *Literary Works*. Rather than just three competing subgroups like *Literary Works*, this case involves dozens of competing statutes that vary significantly in the amount of statutory damages available. For example, the Complaint seeks damages under New York General Business Law that permits recovery of $50 in statutory damages. *See* Complaint, Dkt. 374 ¶¶ 1018-25 (citing N.Y. Gen. Bus. Law §§ 349, *et seq*.). But the Complaint also sought statutory damages of $2,000 for Utah class members like Objector Watkins and $1,500 for class members like

Objector Frank from Washington, D.C. *See* Complaint, Dkt. 374 ¶¶ 571-583 (D.C. Code § 28-3904, *et seq.*), ¶¶ 1239-53 (Utah Code §§ 13-11-1, *et seq.*). And, the settlement includes class members from other states where *no* statutory claims are available. *See, e.g.,* Order, Dkt. 540 at 63 (dismissing 17 of the state consumer-fraud statutory claims because statutes did not impose liability for omission unless duty to disclose). The fact that all class members had a mutual interest in maximizing recovery from defendant is not sufficient. *Ortiz*, 527 U.S. at 857 (discrediting "common interest in securing contested insurance funds for the payment of claims"); *In re GMC Pickup Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 797 (3d Cir. 1995).

In *Juris v. Inamed Corp.*, the Eleventh Circuit echoed the importance of independent counsel when faced with such intraclass conflicts. 685 F.3d 1294, 1323 (11th Cir. 2012). *Juris* involved a settlement without formal subclasses, but the court had appointed representatives "who understood that their role was to advocate on behalf of their respective subgroups." *Id.* at 1324. Further, the district court had appointed independent counsel for these subgroups, providing the necessary structural assurances of adequacy: "even prior to provisional certification of the class, the interests of those claimants with unmanifested injuries were ***represented and given a separate seat at the negotiation table through qualified and independent counsel***." *Id.* at 1324 (emphasis added).

Unlike *Juris*, the competing subgroups in this case have no separate counsel. Notably, the Complaint refers to the Utah class members as a

"subclass," the District of Columbia class members as a "subclass," as well as
subclasses for the 49 other states, Puerto Rico and Virgin Islands. Dkt. 374
¶¶ 428-1396. But class counsel abandoned any pursuit of certifying or
seeking separate counsel for those subclasses when it sought preliminary
approval of the settlement. Dkt. 739-1 at 8. Instead, the *same* counsel went to
the negotiating table representing class members from states with valuable
statutory-damages claims like Frank and Watkins ($1,500 and $2,000,
respectively), class members from states with low-value statutory-damages
claims (*e.g.*, $50), and class members from states with *no* statutory-damages
claims. The dangers of having no separate representation[2] were realized for
Frank and Watkins: without separate counsel to help press their most
compelling case, their respective subgroups could not maximize the litigation
values of their statutory claims. Instead, Frank and Watkins receive the
same relief under the settlement as other class members and still waive all of

_____

[2] There were named plaintiffs from Utah and the District of Columbia,
*see* Dkt. 374 at 17, 64, but nothing suggests those representatives assumed
any role "to advocate on behalf of their respective subgroups." *Juris*, 685 F.3d
at 1324. Further, those class representatives, who have never been deposed,
will each receive $2,500 service awards that are not available to other class
members. Fee Request at 31-32 "[W]here representative obtain more for
themselves by settlement than they do for the class for whom they are
obligated to act as fiduciaries, serious questions are raised as to the fairness
of the settlement to the class." *Holmes v. Cont'l Can. Co.*, 706 F.2d 1144, 1148
(11th Cir. 1983). The class representatives have no incentive to fight for the
statutory-damages claims of the absent class members.

their statutory-damages claims. Settlement, Dkt. 739-2 § 2.38. The statutory damages claims have been litigated and survived a motion to dismiss; the settlement waives them for literally nothing extra.

For that same reason, not only is Rule 23(a)(4) adequacy not satisfied, but the settlement is also unfair under Rule 23(e). When assessing the fairness of a class action settlement, Rule 23(e)(2)(D) requires the district court to consider whether the settlement "treats class members equitably relative to each other." This recent amendment to Rule 23 addresses concerns whether "the apportionment of relief among class members takes appropriate account of differences among their claims." Advisory Committee Notes on 2018 Amendments to Rule 23. Class members like Frank and Watkins and the tens of millions of others with live statutory damages claims should not be bound by a settlement with these fundamental intraclass conflicts: this settlement class requires subclassing with separate representation.

Finally, the Rule 23(b)(3) opt-out right does not correct for these issues. (Indeed, *Amchem* involved an opt-out class.) Opt-out "does not relieve the court of its duty to safeguard the interests of the class and to withhold approval from any settlement that creates conflicts among class members." *In re GMC*, 55 F.3d at 809; *see also Day v. Persels & Assocs., LLC*, 729 F.3d 1309 (11th Cir. 2013) (vacating settlement that had been approved partially based upon ability of class members' to opt out).

III.   **The settling parties artificially burdened the right of objection and throttled the number of cash claims.**

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 WL 112211, 2012 U.S. Dist. LEXIS 3846, at \*17 (W.D. Wash. Jan. 12, 2012). Together, the hurdles imposed on objection and claims submission in this settlement do not appropriately respect class members' Rule 23 rights.

   A.   **The threat of deposition and unduly burdensome requirements were devised to unnecessarily depress objections; class representatives should be made available to test adequacy.**

The PAO here has 16 separate requirements to permit an absent class member to object, and if the objector fails to comply, she "will waive and forfeit any and all rights [she] may have to object." PAO at 10-12. Many of these requirements are unduly burdensome and purposefully designed to decrease the number of objections to the settlement.

*First*, the PAO requires that any objector appearing at the Fairness Hearing through a lawyer must identify "four dates between [11/19/2019] and December 5, 2019 during which the objecting settlement class member is available to be deposed by counsel for the Parties." PAO at 10. Including this provision unnecessarily discourages objections and courts routinely reject such a requirement. *See, e.g., Bennett v. Boyd Biloxi, LLC*, No. 14-cv-0330, 2016 U.S. Dist. LEXIS 62217, at \*19 n.12 (S.D. Ala. May 11, 2016) ("The Court has difficulty imagining why such discovery would be necessary in this case or why such a draconian sanction should be applied."); *Withers v. eHarmony, Inc.*, 267 F.R.D. 316, 320 (C.D. Cal. 2010) ("[T]he party seeking

the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members.").

But this settlement's threat of deposition is particularly egregious because it requires objectors to reserve four days in a two-week span around the Thanksgiving holiday. In seeking preliminary approval, class counsel offered no reason why such depositions were necessary. *See* Dkt. 739-1. Equifax knows the identity of every class member. This threat of deposition was designed simply to depress the number of objections and impose additional costs on good-faith objectors.

Frank and Watkins agree to make themselves available subject to an agreement for reciprocal discovery of their subclass representatives and experts Professor Klonoff and Harold T. Daniel, Jr. Class counsel described class representatives' participation as providing documents, but there is no indication that *any* of the 96 class representatives were ever deposed. *See* Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards ("Fee Request"), Dkt. 858-1 at 4, 31-32. Frank and Watkins challenge the adequacy of the class representatives because the settlement includes subgroups with separate statutory-damages claims that were not properly represented. *See* Section II. Equifax never tested the adequacy of the representatives and at least the Utah and D.C. representatives should be made available for deposition by objectors.

*Second*, the PAO places additional unnecessary restrictions on objectors by requiring objectors to identify all class actions objected to by the objector in the past five years. PAO at 10. And if the objector retains counsel who intends to seek compensation, the objector must include his attorney's

experience with class actions including all class actions objected to in the past five years, all agreements with objector, and a statement regarding whether fees to be sought will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought, hours spent, an estimate of future hours and the attorneys' hourly rate. *See* PAO at 11-12.

Such requirements do not prevent bad-faith objections (and are unnecessary given Rule 23(e)(5)(B) protections) but create an additional hurdle for objectors to jump. "No settlement can fairly move forward with these procedures." *Bronson v. Samsung Elecs. Am., Inc.,* 2019 U.S. Dist. LEXIS 169395, 2019 WL 4738232 (N.D. Cal. Sept. 29, 2019). Courts should avoid notice language that places "burdensome hurdles" for "free exercise of rights, such as onerous requirements to submit a 'satisfactory' objection or opt-out request." Fed. Jud. Cent., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, 3 (2010).[3]

*Third*, an objector who has retained counsel must still sign the objection personally. Dkt. 742 at 9. This requirement is surplus to counsel's Rule 11 obligations and is unduly burdensome as it places a higher standard on objectors than other parties. "[U]nless a rule or statute specifically state otherwise, a pleading need not be verified." Fed. R. Civ. P. 11(a) & (b).

*Finally*, when burdens deter objections, the Court loses the benefit of valuable adversarial perspectives that objectors can bring to the evaluation of a settlement's fairness. *See Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277,

---

[3] Available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Nov. 11, 2019).

286 (7th Cir. 2002) ("It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally."). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors that do appear. *See In re GMC*, 55 F.3d at 812-13; *Redman v. Radioshack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (describing it as "naïve" to infer assent from silence). Not only do the hurdles constitute a reason to reject the settlement in this case, they provide an added reason to discredit any argument that a low number of objectors signals the class members' approval of the settlement.

**B.    Realizing that class members would not receive $125 cash, the settling parties added additional burdens to throttle the number of cash claims submitted.**

The email and long form notice attached to the Settlement told consumers: "Free Credit Monitoring or **$125 Cash Payment**. You can get free credit monitoring services. Or, if you already have credit monitoring services, you can request **a $125 cash payment**." Settlement, Dkt 739-2 at 142, 266. But after the settlement website went live, millions of claims were filed for cash compensation and it became clear that claimants could receive nowhere near $125. Dkt. 858-1 at 16. The settling parties decided to take "corrective action." *Id.* Whatever was represented to the Court in sealed proceedings (Dkt. 781), that corrective action included attempts to throttle the number of cash claims.

As covered in the *New York Times*, the settling parties sent a follow-up email to claimants: "The email—which looked so spammy the F.T.C. had to assure readers on its website that it was legitimate—said that people looking

for a cash reward must verify they had credit monitoring in place by Oct. 15, 2019, ***or their claims would be denied***." Charlie Warzel, *Equifax Doesn't Want You to Get Your $125. Here's What You Can Do.*, N.Y. TIMES (Sept. 16, 2019) (emphasis added). But according to a recent FTC study, only 3% of class members actually respond to emails regarding class action settlements. *See* FTC Staff Report, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, 11 (Sept. 2019). Millions of class members who previously submitted legitimate claims likely ignored the follow-up emails demanding a response within a short window.

The class notice never informed these class members that perfecting their claim would require providing additional information. *See* Long Form Notice, Dkt. 739-2 at 266; *cf. Custom LED, LLC v. eBay, Inc.*, 2013 U.S. Dist. LEXIS 122022, *20 (N.D. Cal. Aug. 27, 2013) (rejecting approval because notice failed to provide "crucial information" about how to receive payment). With no notice of this new requirement, the settling parties deny millions of class members the settlement share they validly claimed. *Cf. Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) ("it is unfathomable that the class's lawyer would try to sabotage the recovery of some of his own clients.").

## IV.   Even if the settlement class is certifiable, class counsel's fee request should be reduced, returning the excess to the class.

If the Court disagrees and concludes that the settlement class should be certified, then it should still reduce class counsel's excessive fee request.

### A.   10% is a reasonable fee percentage of this megafund.

While class counsel improperly calculates the fee percentage, *see* Section B below, even employing counsel's methodology, the 20.36% request

is grossly excessive because it is over twice the median percentage awarded in megafund settlements of this size:

> In megafund cases where extraordinarily large class recoveries of $75-$200 million and more are recovered, courts most stringently weigh the economies of scale inherent in class actions in fixing an appropriate per cent recovery for reasonable fees. Accordingly, ***fees in the range of 6-10% and even lower are common in this large scale context***.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993) (emphasis added) (awarding 5.25% of $305 million common fund). Because of economies of scale, a reasonable fee award should utilize sliding scale percentage to prevent a windfall for plaintiffs' attorneys at the expense of the class. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). "It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998).

"The existence of a scaling effect—the fee percent decreases as class recovery increases—is central to justifying aggregate litigation such as class actions. Plaintiffs' ability to aggregate into classes that reduce the percentage of recovery devoted to fees should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993–2008, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010). Empirical research shows that in class action settlements over $175 million, the median fee award was 10.2% and the

mean was 12.0%. *Id*. at 265 tbl. 7.

Given the limited risk involved here, awarding class counsel the median 10% is more than fair. This case involved much less risk as demonstrated by the ***over 40 applications for appointment*** to serve as class counsel. *See* Dkts. 130-202. Had there been competitive bidding for the lead counsel role, there is no chance that the winner would not have agreed to a fee less than the requested 20%. That so many qualified firms sought to take part of this case reflects the minimal risk involved. *See, e.g., In re Anthem Inc. Data Breach Litig*., 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018) (fact that court received 18 motions to serve as lead counsel evidenced the lack of risk). Competitive bidding would have resulted in a much lower billing rate to the class than the thousands of dollars an hour sought here— and likely better recovery to the class.

To support their fee request, class counsel relies on the declaration of Professor Robert Klonoff who cherry-picks larger percentage awards from megafund cases in state and mostly out-of-circuit cases. *See* Dkt. 858-2 at 62-67. And rather than demonstrating special circumstances for an upward departure, the in-circuit cases he cites support a *downward* departure. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). For example, Klonoff cites *Allapattah Servs. v. Exxon Corp*., 454 F. Supp. 2d 1185 (S.D. Fla. 2006). *See* Dkt. 858-2 at 62-63. After fourteen years of contentious litigation, the *Allapattah* plaintiffs "prevailed on every claim and overcame every defense at trial and on appeal" with "[f]ull and complete recovery [] achieved on behalf of the entire Class and every individual Class Member."454 F. Supp. 2d at 1205.

By contrast, the available relief here after fees and expenses is an estimated $0.57 per class member. *See* Section IV.B below. The vast majority of the class relief will be in-kind, rather than cash compensation. *See* Section IV.B. Hardly an "extraordinary result" as plaintiffs claim, *see* Fee Request 2. And while the settlement may be the "largest data breach settlement in history," that is only because of the class size. *Id.* at 17. The settlement is instead a classic instance of leveraging of a large class size rather than achieving a good value. *Cf. Murray v. GMAC Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.) (finding settlement a "sellout" where class members receive 1% of minimum statutory award). If anything, the dimes per class member that this nuisance settlement provides directs that the fee award should depart even further from the typical megafund cases. *Cf. Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, 2015 WL 2406966, at *3 (N.D. Cal. May 20, 2015) (finding downward departure because results were "neither exceptional nor hard-fought"). Here, a 10% fee award would be more than reasonable.

**B.    Class counsel's fee should be calculated based on the actual results achieved by class counsel, which is overstated by more than $200 million.**

Class counsel seeks fees based on a $380.5 million fund, but that overstates the results achieved for purposes of calculating the fee award by over $200 million for several reasons. *See* Fee Request at 17. *First*, class counsel's fee should not be based on the $70.5 million that the FTC obtained. As class counsel observes, the term sheet reflecting the $310 million settlement between plaintiffs and defendant was executed in March 2019. *See* Fee Request, Ex. 1 at 73. When the parties shared those terms with the FTC,

it was the *FTC* that increased the fund from $310 to $380.5 million. *See* Fee Request at 6. Class counsel should be paid based on the benefit *they* achieved for the class, not the government agency.

"Allowing private counsel to receive fees based on the benefits created by public agencies would undermine the equitable principles which underlie the concept of the common fund…" *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 337 (3d Cir. 1998) (internal quotation omitted). "[C]lass counsel's compensation must be proportioned to the ***incremental*** benefits they confer on the class, not the total benefits." *Reynolds*, 288 F.3d at 286 (emphasis added); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (same). To award fees without regard to incremental class recovery is to misalign the interests of class counsel and its clients. "[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013). Only the benefit created by class counsel should be considered when calculating attorneys' fees. The ink was dry on the term sheet well before the FTC required an additional $70.5 million for consumers and thus, class counsel's fee should not be based on that increase.

*Second*, the notice and administration costs should be excluded for purposes of calculating attorneys' fees. The notice and administration costs are paid out of the $380.5 million Consumer Restitution Fund, but the total amount of those costs is hidden from class members. Settlement 739-2 § 9.1. Those costs will likely be no less than $25 million. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK, Dkt. 1047 at 15 (N.D. Cal. Aug. 16, 2018) (notice and administration costs of $23 million). Courts have

recognized that the best approach is to calculate percentage-of-recovery *after* expenses have been deducted from the settlement. In *Redman v. RadioShack*, the Seventh Circuit explained:

> But the roughly $2.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. ***Those costs are part of the settlement but not part of the value received from the settlement by the members of the class***. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.

768 F.3d at 630 (emphasis added); *Pearson*, 772 F.3d at 781 (such expenses are "costs, not benefits").

Settlement notice is a benefit to the defendant, because without it, the defendant does not meet due-process standards for enforcing the settlement release. *See e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998). Put simply, attorneys' fees should be calculated based on the class benefit and "fees paid to the settlement administrator—do[] not constitute a benefit to the class members." *Myles v. AlliedBarton Security Svcs., LLC*, No. 12-5761 JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014); *Teachers' Ret. Sys. v. A.C.L.N.*, Ltd., No. 01-CV-11814 (MP), 2004 WL 1087261, at *7 (S.D.N.Y. May 14, 2004) (same). Indeed, if notice and administration expenses are included when calculating attorneys' fees, class counsel is being awarded a commission on those costs. *See Kmiec v. Powerwave Tech.*, No. 12-00222-CJC, 2016 WL 5938709, at *5 (C.D. Cal. Jul. 11, 2016); *Redman*, 768 F.3d at 630. The settling parties should disclose the total amount of notice and administration costs, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv), and class counsel

should not be awarded a commission on those costs.

*Third*, the $385 million value that class counsel uses mistakenly treats the credit monitoring as cash. Quite the opposite: "compensation in kind is worth less than cash of the same nominal value." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). Indeed, the $385 million covers the "costs" of credit monitoring. Settlement 739-2 §§ 5.1, 7.1. But the "the standard [under Rule 23] is not how much money a company spends on purported benefits, but the value of those benefits to the class." *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 944 (9th Cir. 2011) (cleaned up). Nor is the actual value to class members equal to the $1,920 "retail price" that class counsel estimates. *See In re Anthem*, 2018 WL 3960068, at *7 (rejecting "retail price" for valuing nonmonetary credit monitoring). Instead, the actual value is no more than $5. The fact that class members chose cash *even after* learning it would be "a very small amount"[4] reveals that class members value the credit monitoring at no more than a few dollars—not surprising given that many credit card companies offer credit monitoring for free, and many other large data breach settlements have already given class members credit monitoring. And many of the credit monitoring recipients did not want credit monitoring. *See* Section III.B above. If class members valued credit monitoring at retail price, they would have already purchased it.

For purposes of calculating attorneys' fees, the value is $38M (cash for

---

[4] *See* FTC Equifax Data Breach Settlement FAQ No. 5 *available at* https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement#FAQ5.

out-of-pocket) + $31M (alternative cash) + $15M (credit monitoring at $5 x 3M class members, Fee Request at 12) + $78.74M requested fees = $162.74M.[5] (Another $125M is hypothetically available in Settlement § 3.2, but class counsel do not claim any of this money will be actually given to class members.) Class counsel should be awarded 10% of the $162.7 million or $16.27 million in fees and expenses, returning $62 million to class members. Yes, this number is less than the purported lodestar, but (1) the lodestar is greatly inflated by the inefficiency of the litigation (see Section IV.C below) and the settlement value of less than $1-$2/class member reflects the *size* of the class rather than an excellent result. The class is compromising its claims dramatically (such that over 90% of the class will receive no pecuniary compensation) and surrendering its statutory damages claims entirely, yet class counsel is seeking an enormous multiplier of an inflated lodestar.

## C. The Fee Request lacks basic information; the lodestar is inflated with 60 law firms; the Court should not award a multiplier.

The Fee Request lacks basic information including who did what and who seeks what. *In re High Sulfur Content Gasoline Prod. Liab. Litig.,* 517 F.3d 220, 227 (5th Cir. 2008) (court must ensure that "fees are reasonable and divided up fairly among plaintiffs' counsel"). The four-page lodestar submitted by class counsel includes only total hours by firm and hourly rates for *some* of the timekeepers. Class Counsel Supp. Decl, Dkt. 858-1 at 83-84,

---

[5] The $1 billion cybersecurity investment is properly excluded because it benefits Equifax. *See Koby v. ARS Natl. Services, Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (injunctive relief of business practices was "presumably to avoid further litigation risk" and had no real settlement value).

86-87. But without any billing records, class members are "handicapped in objecting." *Redman*, 768 F.3d at 638; *see Martin v. Global Mktg. Research Servs.,* 2016 U.S. Dist. LEXIS 101898 (M.D. Fla. Aug. 3, 2016). This showing cannot even satisfy the bare minimum of "identify[ing] the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983); *see also* N.D. Ga. L. Civ. R. 54.2(A)(2) ("The movant shall file and serve a detailed specification and itemization of the requested award…"). "Generalized statements that the time spent was reasonable or unreasonable are not particularly helpful and not entitled to much weight." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

Billing records are particularly important here to assess the duplication and overstaffing given that the lodestar outrageously includes time for ***60 law firms*** totaling $20.9 million. Dkt. 858-1 at 83-84. Data-breach cases seem to be especially prone to back-scratching overbilling like this. Editorial Board, *The Anthem Class-Action Con*, Wall St. J. (Feb. 11, 2018). And based on the minimal risk and inferior results, *see* Section IV.A, class counsel cannot show "exceptional circumstances" to justify a multiplier greater than one. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010).

Class counsel also asks for $6 million in fees for future administration. This is similarly unfounded: administration should be done by administrators, not by attorneys getting a blank check.

## CONCLUSION

The Court should deny approval. If it were to approve the settlement, the Court should reduce fees to no more than 10% of the cash benefits actually delivered to class members and return any reduction to the class.

Dated: November 19, 2019.          /s/ Melissa A. Holyoak
                                   Melissa A. Holyoak, (DC Bar No. 487759)
                                   Hamilton Lincoln Law Institute
                                   1629 K Street, NW Suite 300
                                   Washington, DC 20036
                                   Phone: (573) 823-5377
                                   Email: melissa.holyoak@hlli.org

                                   *Attorneys for Objectors David R. Watkins
                                   and Theodore H Frank*

I, David R. Watkins, personally attest that I have discussed the foregoing Objection with my counsel and I have fully reviewed and endorse the Objection.

Dated: November 18, 2019.

DAVID R. WATKINS
*Objector*

I, Theodore H. Frank, personally attest that I have discussed the foregoing Objection with my counsel and I have fully reviewed and endorse the Objection.

Dated: November 18, 2019.        THEODORE H. FRANK
                                 *Objector*

## CERTIFICATE OF FONT

I hereby certify that this Objection has been prepared in compliance with Local Rules 5.1 and 7.1.


Dated: November 19, 2019.                                /s/ Melissa A. Holyoak

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

Dated: November 19, 2019.                                        /s/ Melissa A. Holyoak