IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800<br>) Case No.: 1:17-md-2800-TWT<br>)<br>) CONSUMER ACTIONS<br>)<br>) |

OBJECTION TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES
AND SERVICE AWARDS

[FED. R. CIV. P. 23(H)(2)]

## I.  PROOF OF CLAIM – DECLARATION OF JOHN W. DAVIS

I, John W. Davis, declare pursuant to 28 U.S.C. § 1746 as follows:

I make this declaration based on personal knowledge and am competent to so testify.  I am a member of the Settlement Class as set forth in the Settlement Agreement, DE739-2 at § 2.43.  I received correspondence from Equifax, Inc. on or about September 13, 2017 notifying me that my "personal information may have been impacted by this incident."  A true and correct copy of this correspondence is attached hereto as Exhibit 1.  I timely submitted a claim form and was assigned Claim ID PXJST-MCZER.

I understand that, pursuant to the Settlement Notice and this Court's Order Directing Notice (DE742) that I must provide additional information –

including a statement identifying any class action settlements to which I have objected in the previous five years.  I further understand that, had I retained counsel in this matter, I would have been subjected to substantially greater requirements – including "A statement as to whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, **and if through counsel**, identifying counsel by name, address, and telephone number, and **four dates between the Objection Deadline and December 5, 2019 during which the objecting settlement class member is available to be deposed by counsel for the Parties**." *See Settlement Notice* at 15, §25(7) (emphasis added).

I am unavailable between November 19, 2019 and December 5, 2019 due to the press of business (including an *en banc* petition to the Eleventh Circuit Court of Appeals in the matter of *Price v. Godiva Chocolatier*, case no. 16-16486 - due on December 4, 2019) and required travel from Florida to California concerning an insurance matter.  Accordingly, I have been unable to retain counsel to represent me in this matter.  Additionally, I object to requirements placed on objecting class members and their counsel including, but not limited to, the requirement to provide information concerning unrelated cases.  I make this objection on the basis of relevance and the absence of probative value.  I additionally object that imposing substantial

procedural requirements class members must meet simply to have their objections considered has a chilling effect on class member commentary and thereby deprives the Court of an accurate assessment of the class's reaction to the proposed settlement.  This is particularly so for class members who would retain counsel competent to evaluate the settlement and fee request, but do not do so because it requires them to agree to submit to a deposition.  That is an undue burden seemingly unconnected to, and a penalty for, the exercise of the right to counsel of one's choice.  Without waiving these objections, I submit the following information requested by the Settlement Notice.

My full name is John W. Davis.  My address is 3030 N. Rocky Point Dr. W., Suite 150, Tampa, Florida  33607.  As stated above, I believe I am a member of the Class.  My objection applies to the entire class to the extent this objection concerns attorneys' fees and "service awards" to lead plaintiffs which, if reduced, said reduction would flow to class members.  My grounds for objection are articulated *infra*.  I do not intend to appear at the Fairness Hearing.

In the past five years I have been an objecting class member to the following class action settlements: *Connor v. JP Morgan Chase Bank* (S.D. Cal. No. 10 CV 1284 GPC BGC) (objection resulted in an increase in class size

of over 100% and an additional $3,960,092 to the newly-discovered class members); *Davenport v. Discover Financial Services* (N.D. Ill., No. 15-cv-06052) (objection overruled); and *In re BHP Billiton Ltd.* (S.D.N.Y. No. 16-cv-01445) (currently pending before the Second Circuit Court of Appeals). I have conducted a diligent review and believe this to be an exhaustive list of cases where I have appeared as an objector. I reserve the right to supplement this list if I discover or recall additional matters.

In the interest of full disclosure, I have also, from time to time, represented objecting class members. With regard to representation of objectors to class action settlements, courts have occasionally overruled or disagreed with my clients' objections. However, no court has held that any objection that I prepared was frivolous or otherwise not directed at the issues presented by the case. Some of the objection cases I have litigated have resulted in substantial financial benefits to the class or important precedential appellate decisions. *See, e.g., Coburn v. Stamps.com, Inc.* (Los Angeles Sup. Ct. No. BC 353721), (after briefing on appeal, the settling parties agreed to make a second distribution of transferrable settlement relief); *Foos v. Ann Taylor, Inc.* (S.D. Cal. No. 11-cv-2794), (successfully moved to require the settling parties to disclose publicly the number of claims for vouchers made in the settlement.); *Davis v. Cole Haan, Inc.* (N.D. Cal. No.

11-01826) (successfully moved for an order requiring class counsel's attorneys' fees to be calculated under the contingent "coupon" fee provisions of the Class Action Fairness Act, which resulted in a fee some 90% lower than the fee defendant had originally agreed to pay under the settlement); *Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) (represented one of only two objectors' groups to be awarded fees for assisting in eliminating $325,000 in unfair "incentive" payments); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (agreeing that attorneys' fees requested were too high, and should be measured against the fund actually paid out by the defendant, rather than the total fund made available); *Chieftain Royalty Co. v Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455(10th Cir. 2017) cert. denied sub nom. *Chieftain Royalty Co. v. Nutley*, 139 S. Ct. 482 (2018) (reversing and remanding percentage fee award and incentive award because district court applied incorrect law).

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct and that this declaration was executed on November 18, 2019 in Tampa, Florida.

John W. Davis

## II. ARGUMENT

### A. Standard of Review

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2).   The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The burden of proving the fairness of a settlement rests squarely on its proponents.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

### B. Class Counsel's fee should be limited to lodestar.

The Supreme Court's "common-fund" or "equitable-fund" cases have involved fees calculated and assessed in a variety of ways.  The seminal common-fund decision, *Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually incurred (and paid) for specific tasks,

without any kind of enhancement or multiplier. *See Greenough,* Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print). Two subsequent decisions, *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885), and *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931), involved percent-of-fund awards – with the Supreme Court in both cases slashing unreasonably high fee awards. In *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939), the common-fund award appears again to have been for fees actually incurred and paid for specific tasks just as in *Greenough*, for the record on remand in *Sprague* reveals that the petition in that case sought reimbursement only for fees actually billed by, and paid to, the lawyers. *See Sprague v. Ticonic Nat'l Bank,* 28 F.Supp. 229, 231 (D. Me. 1939), *aff'd in relevant part and rev'd in part on other grounds,* 110 F.2d 174, 178 (1st Cir. 1940) ("The decree of the District Court is affirmed insofar as it allows the original petition for reimbursement in the amount of $1,214.51."). In *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980), the Supreme Court mandated a common-fund fee award, which the district court on remand honored the Supreme Court's mandate by employing the lodestar methodology to calculate fees. *See Van Gemert v. Boeing,* 516 F. Supp. 412, 414, 418 (S.D.N.Y. 1981) (employing lodestar methodology rather than percent-of-fund to calculate attorneys' fees: "'The starting point of every fee award . . . must

be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974)).

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991).  Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases. *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 551-552, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.3d at 775.

- 8 -

When cases settle for a common fund, defendants have no interest in limiting the fees paid from the fund at class members' expense.[1] Accordingly, it is up to the Court, acting as guardian of absent class members, to scrutinize Lead Counsel's fee request to ensure Counsel do not receive a windfall to the detriment of the class members they represent. Given that role, Objector submits that the correct approach is to: (1) recognize that limitations on reasonable attorneys' fee awards under fee-shifting statutes may inform common fund awards, (2) presume a fee based on counsel's lodestar is reasonable and adequate in the absence of extraordinary circumstances; and (3) refuse to award a percentage fee that greatly exceeds that amount. *See, e.g., In re Bolar Pharms. Co. Sec. Litig.,* 800 F.Supp. 1091, 1095-96 (E.D.N.Y. 1992) (on remand from *In re Bolar Pharm. Co. Sec. Litig.,* 966 F.2d 731 (2d Cir. 1992)); *see also Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 307-08 (D.D.C. 1996); *Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1435-37 (S.D.N.Y.1994), *aff'd,* 67

---

[1] "Defendants are interested only in the total costs of the settlement to them, and not in the division of the costs between attorneys' fees and payment to class members." *Pearson v NBTY, Inc.,* 772 F.3d 778, 787 (7th Cir. 2014). "The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel." *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014).

F.3d 1072 (2d Cir. 1995); *Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277,

283-85 (S.D.N.Y.1993).

**C.** *Trustees v. Greenough* **and** *Central RR & Banking Co. v. Pettus* **Proscribe Service Awards for Class Representatives in Common-Fund Cases.**

Plaintiffs ask the Court to approve distributions of $2,500 to each of the

96 named plaintiffs, a total of $240,000.   *See Declaration of Robert Klonoff,*

DE858-2 at 99.    However, such awards are expressly prohibited by the

seminal cases that recognized the common fund doctrine.   "Since the

decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad*

*& Banking Co. v. Pettus*, 113 U.S. 116 (1885), the Supreme Court of the

United States has recognized consistently that a litigant or a lawyer who

recovers a common fund for the benefit of persons other than himself or his

client is entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see generally* John P.

Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87

Harv. L. Rev. 1597, 1601-02 (1974). The Court has applied the rule "in a wide

range of circumstances as part of our inherent authority."[2]

---

[2] *U.S. Airways, Inc. v. McCutchen,* 569 U.S. 88, 104 (2013); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257-58 (1975).

But those fundamental cases recognizing courts' inherent authority to distribute litigation expenses from a common fund expressly proscribe other compensation to the named plaintiff. *Greenough* and *Pettus* held that a representative plaintiff (and its counsel) may recover reasonable litigation expenses including attorney's fees from a common-fund recovery, but that the representative plaintiff *shall not* be reimbursed for personal service rendered on behalf of the class. The Court held that any payment compensating a representative plaintiff for "personal services" in prosecuting the litigation is both "decidedly objectionable" and "illegally made." *Greenough,* 105 U.S. at 537-38. A named plaintiff's "claim to be compensated, out of the fund ... for his personal services" the Court flatly "rejected as unsupported by reason or authority." *Pettus,* 113 U.S. at 122.[3]

---

[3] *See also* Dawson, *Lawyers and Involuntary Clients*, 87 Harv. L. Rev. at 1602:

> The Court in *Greenough* ... drew a sharp distinction .... While [Francis] Vose, the active litigant, was held to be entitled to a "charge" for the reasonable value of his lawyers' services, which the lower court would fix with a wide discretion, it had no discretion to award an allowance to Vose himself for his own time and expenses.

For a century, lower courts applying the common fund doctrine followed these holdings, distinguishing between the litigation expenses (including reasonable attorney's fees) that class representatives may recover, and allowances for "personal services" in acting as representative plaintiffs— compensation for which *Greenough* and *Pettus* expressly forbade.[4]  See also Dawson, *Lawyers and Involuntary Clients,* 87 Harv. L. Rev. at 1602 (finding in 1974 no cases reimbursing representatives "for their own time, travel, or personal expenses, however necessary their efforts may have been to litigation….").

However, between 1980 and 1990 lower courts began to ignore the rule, and the practice of paying representative plaintiffs subsequently became widespread. "Beginning around 1990…awards for representative plaintiffs

_____

[4] *See, e.g., Zucker v. Westinghouse Electric,* 374 F.3d 221, 226 (3d Cir. 2004) (reiterating the rule of *Greenough* that "denied Vose's request for fees for 'personal services' because such compensation might reward and encourage potentially useless litigation by others seeking lucrative 'salaries'"), *aff'g  In re Westinghouse Sec. Litig.,* 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (similarly following *Greenough*); *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *see also Gortat v. Capala Brothers, Inc.*, 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*).

began to find readier acceptance," and soon orders "approving incentive awards proliferated," so that "[b]y the turn of the century, some considered these awards to be 'routine.' Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1310-11 & n.21 (2006); 2 *McLaughlin on Class Actions* §6:28 & nn.29-30 (15th ed., 2018) (reporting "near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000-$20,000.").

They have done so with no basis at all in law.  Even putting aside *Greenough's* express prohibition, there is no affirmative authority empowering courts to make these awards from common funds. "The judiciary has created these awards out of whole cloth." 5 *Newberg on Class Actions* §§17:1 (5th ed. 2019); *see id.* at §§17:2, 17:4. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. Rev. 1303, 1312-13 (2006) (noting the "lack of specific authorization for incentive awards in the relevant statutes or court rules.").

As the Sixth Circuit aptly observed, "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for

bringing suit or to compromise the interest of the class for personal gain." *In re Dry Max Pamers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003)).

More fundamentally, *Greenough* and *Pettus* remain binding law.  It is the Supreme Court's prerogative alone to overrule one of its precedents. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016).  Lower courts are not at liberty to determine that Supreme Court authority is no longer valid because they believe it to be outdated.  Longstanding decisions become more authoritative, not less: "the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Gamble v. United States*, __U.S.__, 139 S. Ct. 1960, 1969 (2019) (citing *Montejo v. Louisiana*, 556 U. S. 778, 792 (2009));

The Supreme Court has never overruled its early prohibition on incentive awards.  Its only re-visitation comprises a recent a footnote of dictum, referring to the practice, apparently without realizing it violates prior precedent.  *China Agritech Inc. v. Resh,* __U.S.__, 138 S.Ct. 1800, 1811 n.7 (2019) (stating that named plaintiffs should be motivated to file class actions because "[t]he class representative might receive a share of class

recovery above and beyond her individual claim." citing *Cook v. Niedert,* 142

F.3d 1004, 1016 (C.A.7 1998).[5]

Nevertheless, numerous circuit courts have since endorsed this

departure from prior practice.  Most have done so without reference to any

Supreme Court or statutory authority, instead relying upon the perceived

utility or prevalence of the practice among lower courts.[6]  The Third and

Sixth Circuits have, in approving incentive awards, overruled *sub silentio*

---

[5] The Court's note makes no reference to *Greenough* or *Pettus*, or to the common fund doctrine, and so cannot be construed to have overruled them. *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *Agostini v. Felton,* 521 U.S. 203, 237 (1997)(discouraging courts from concluding that "our more recent cases have, by implication, overruled an earlier precedent."); *see also Mickens v. Taylor,* 535 U.S. 162, 172 (2002).

[6] *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit.".); *Caliguri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving incentive awards because "courts in this circuit regularly grant service awards of $10,000 or greater"); *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000) (holding without elaboration that "the district court did not abuse its discretion ... in awarding an incentive award to the Class Representatives."); *Berry v. Schulman,* 807 F.3d 600, 613-14 (4th Cir. 2015); *Newmont Min. Corp.,* 352 F.App'x 232, 235 (10th Cir. 2009) ("'Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...'") *Keepseagle v. Perdue,* 856 F.3d 1039, 1056 (D.C. Cir. 2017) (approving incentive awards "to compensate the class representative").

their own prior cases recognizing *Greenough's* prohibition.[7]   The Second

Circuit recently affirmed incentive awards against a *Greenough* challenge,

but avoided legal analysis by holding, without further explanation, that

*Greenough* and *Pettus* were "inapposite" and did not "provide factual settings

akin to those" in the case.   *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85,

96 (2d Cir. 2019).

   The Eleventh Circuit presents a unique case.   That court recently

upheld incentive awards against an explicit *Greenough* challenge, reasoning

---

[7] The Third Circuit initially recognized the *Greenough* rule in *Zucker v. Westinghouse Elec.*, 374 F.3d 221, 226 (3d Cir. 2004), *aff'g In re Westinghouse Sec. Litig.*, 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (following *Greenough*). Later, however, an en *banc* court affirmed incentive awards of $220,000, citing only district-court decisions and explaining in a footnote that "'[i]ncentive awards are not uncommon in class action litigation....". *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2010) (*en banc*) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). The Sixth Circuit recognized the *Greenough* rule in *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1207-08 (6th Cir. 1992) (noting that *Greenough* had specifically disallowed any allowance for the named plaintiff's "personal services and private expenses."). But later Sixth Circuit cases treat the propriety of incentive awards as indeterminate, without reference to *Granada Investments* or Supreme Court authority. *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310-11 (6th Cir. 2016) (declaring that "[o]ur court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either." (quoting *In re Dry Max Pampers Litig,* 724 F.3d 713, 722 (6th Cir. 2013).

that many circuits had endorsed incentive awards, and that *Greenough* and *Pettus* were decided prior to Rule 23, *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir.), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019). However, the case has been vacated pending en banc rehearing.

That would appear to leave the *Greenough* issue an open question in the Eleventh Circuit.[8] However, this Court should not follow the reasoning of the vacated *Muransky* case. Greenough remains good law in this and every other circuit, and other circuit court cases, however numerous, cannot expand courts' inherent authority beyond that allowed by the Supreme Court. Nor is there independent legislative authority to make incentive awards in this common fund case. The promulgation of Rule 23 makes no difference. Nothing in Rule 23 undermines—let alone overrules—*Greenough* and *Pettus*. Nowhere does Rule 23 authorize or permit special payments compensating named plaintiffs for service as class representatives or to give them additional incentives to litigate. *See* 5 *Newberg on Class Actions* §17:1. In

---

[8] However, *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) follows *Greenough* and *Pettus* to rule that bankruptcy fund claimants can receive "no compensation for personal services", arguably serving as binding recognition of the *Greenough* doctrine.

fact, Rule 23 could not do so. The Rules Enabling Act states that the federal rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. §2072. A federal rule of procedure cannot overrule the Supreme Court to expand courts' inherent authority to establish a right to incentive awards in common fund cases.

Accordingly, Objector contends that incentive bonuses here are unlawful, given that the case involves common funds and there is no statutory authority for them in this case.

**D.   Plaintiffs have not presented evidence sufficient to support the requested awards upon any theory under which such awards are commonly justified.**

Even assuming arguendo that the requested service awards were not prohibited by Supreme Court precedent, this Court should refuse to award them here. This case presents a particular example of how unaccountable the practice has become, detached from any notion of recompense for individual expenses or "services" provided to the class. Plaintiffs here seek an award of $2,500 to each of 96 class representatives – a total bounty of $240,000. *See Declaration of Robert Klonoff,* DE858-2 at 99. As for personal efforts, expenses, or services, no representative plaintiff submitted evidence demonstrating what his or her role was in the case. Any description of time spent by lead plaintiffs is limited to generalized and

conclusory hearsay in the declarations of Class Counsel (DE858-1:33) and

Robert Klonoff (DE828-2:99).

Here, as in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

825 F.3d 299, 311 (6th Cir. 2016), "[c]lass counsel argue[d] in conclusory

terms" that incentive payments properly compensate class representatives

for their "time spent on the case."  That troubled the Sixth Circuit, which

voided $10,000 incentive bonuses, explaining:

> To ensure that these amounts are not in fact a bounty,
> however, counsel must provide the district court with
> specific documentation—in the manner of attorney time
> sheets—of the time actually spent on the case by each
> recipient of an award. Otherwise the district court has no
> basis for knowing whether the awards are in fact "a
> disincentive for the [named] class members to care about the
> adequacy of relief afforded unnamed class members[.]"

*Shane Group*, 825 F.3d at 311 (quoting *In re Dry Max Pampers Litig.*,

724 F.3d 713, 722 (6th Cir. 2013)).[9]

---

[9] *See also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (citing
*Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1267
(N.D.Ill.1993):

> In deciding whether such an award is warranted,
> relevant factors include the actions the plaintiff has
> taken to protect the interests of the class, the degree
> to which the class has benefitted from those actions,
> and the amount of time and effort the plaintiff
> expended in pursuing the litigation.

Similarly, this Court cannot on the present record ensure that the requested service awards are justified, and not merely a disincentive to question the adequacy of the settlement. To the contrary, the uniformity of the request and the attendant assertion that 96 out of 96 plaintiffs deserve exactly $2,500 belies any idea that the awards reflect individual expenses, effort, or services to the class. Indeed, if plaintiffs had submitted such evidence it would likely show a duplication of efforts thereby militating against the requested excessive and redundant "service awards." Nor, given the sheer number of plaintiffs, can the request be justified by suggesting that a cash award was necessary to induce plaintiffs to come forward. Accordingly, Objector respectfully submits that the request for service awards should be denied in full.

## III.   CONCLUSION

The common fund doctrine of attorneys' fees is grounded in the idea that those who benefit from a fund recovered by lawyers' efforts will be unjustly enriched if the lawyers are not paid reasonable fees from the fund. *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). But no doctrine designed to avoid unjust enrichment could possibly justify the windfall enjoyed by class action lawyers who are routinely paid fees substantially higher than their already-substantial hourly rates. While huge incomes

surely encourage the filing of many cases, this naturally comes at the expense of the class members they represent, as well as litigation in other less lucrative areas, such as civil rights and employment discrimination. Here, as in *Bolar Pharmaceuticals,* an award of the attorneys' lodestar is presumptively reasonable and fair, and serves the purposes both of equity and of encouraging private enforcement of the law.  Awarding substantially more than the lodestar produces unacceptable conflicts of interest.

Additionally, this Court should deny plaintiffs' requested "service awards" because they are proscribed by Supreme Court precedent and, in any event, lack sufficient evidentiary support.

Objector certifies this document was prepared in Century Schoolbook, 13-point font.

Respectfully submitted, this 18th day of November, 2019.

_____
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

*Pro se*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing document in compliance with procedures set forth in the Settlement Notice as follows:

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

This 18th day of November, 2019.

_____

John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

*Pro se*

# EXHIBIT 1

(https://www.equifax.com)

# Thank You

Based on the information provided, we believe that your personal information may have been impacted by this incident.

Click the button below to continue your enrollment in TrustedID Premier.

    Enroll

For more information visit the FAQ page. (https://faq.trustedidpremier.com)



© 2017 Equifax Inc. All rights reserved

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other product and company names mentioned herein are the property of their respective owners.

Privacy Policy (https://trustedidpremier.com
/static/privacy-policy) | Terms of Use
(https://trustedidpremier.com/static/terms)