# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re: Equifax Inc. Customer Data
Security Breach Litigation

MDL Docket No. 2800
No. 1:17-md-2800-TWT

CONSUMER ACTIONS

Chief Judge Thomas W. Thrash, Jr.

---

## OBJECTION OF CLASS MEMBER MIKELL WEST

---

## Introduction

The requested 25% attorneys' fees from the portion of the settlement that class counsel actually negotiated, i.e., $310 million, is grossly excessive for megafund settlements in this District. Two opinions from the Northern District of Georgia would reject this high of a percentage outright. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1271–72 (N.D. Ga. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993). Yet, class counsels' fee motion doesn't mention them.

The parties negotiated for Equifax not to oppose fees (Dkt. 739-2 at 26), so the only ones who might call attention to this overreaching, not to mention the excessive 3.7 lodestar multiplier (itself still understated), are the class members. Unfortunately and deliberately, class counsel used the class notice to set numerous and substantial roadblocks, making it extremely difficult for class members to file objections to the proposed fee and shortcomings of the settlement.

Under the notice, class members wishing to object must comply with an outrageous 14 enumerated requirements. Dkt. 739-2 at 271-73. Most notable among them, any class member who wishes to object must provide four dates over a sixteen day window in which to give a deposition. The Thanksgiving Holidays fall within that window. These requirements serve only to discourage objections, and have incurably tainted the settlement approval process.

For these and other reasons, the settlement should be disapproved and class counsels' request for $77.5 million should be rejected. If the settlement is approved, nothing more than 10% of $310 million ($31) million should be allowed in attorneys' fees. The remaining $46.5 million should be returned for the benefit of the class.

## Standing and Objection Procedures

This objecting class member's full name is Mikell Alan West. His address is 5109 Goldeneye Drive, Corpus Christi, Texas 78413. His current phone number is 361-215-8487. Mr. West has never previously objected to a class action settlement.

Mr. West is among the approximately 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach. *See* Exhibit 1, Declaration of Mikell West, incorporated by reference as though set forth in full. He is thus a member of the class as defined by the Class Notice and has standing to make this objection. Mr. West confirmed he is a class member by visiting the settlement website and submitting his last name and the last 6 digits of his social security number. Ex. 1-A.

Mr. West filed a claim online. Ex. 1-B. Because Mr. West already has credit monitoring services through Experian and will have them for at least six months after filing his claim, he requested a cash payment. Ex. 1.

Mr. West objects to the proposed settlement and attorneys' fee request in *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, for the reasons stated herein. Although this objection is asserted on behalf of Mr. West alone, it applies equally to the class as a whole, and particularly to class members like him with existing credit monitoring who are likely to receive miniscule payments under the alternative reimbursement compensation option of the settlement.

Mr. West intends on appearing at the fairness hearing through his counsel of record Jerome J. Froelich, Jr.,[1] of McKenney & Froelich, One Midtown Plaza, Suite 910, 1360 Peachtree Street, Atlanta, Georgia 30309-2920, (404) 881-1111 and Robert Clore of Bandas Law Firm, P.C., 500 N. Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401, (361) 558-3527.[2] In addition to Mr. Freolich and Mr. Clore, Mr. West is represented by Christopher Bandas of the Bandas Law Firm, P.C. Mr. Clore, however, will be counsel of record for Mr. West on behalf of the Bandas Law Firm, P.C. Additional counsel may be retained on behalf of Mr. West

---

[1]Mr. Froelich had difficulty logging into his CM/ECF account on November 19, 2019 to file his notice of appearance. His office forwarded his completed and signed Appearance of Counsel form to Mr. Clore on the evening of November 19, 2019 and asked for Mr. Clore to file it as an exhibit to the objection. Mr. Froelich intends to file it again on November 20, 2019.

[2]Under Case Management Order No. 1, because Mr. Clore is admitted to the United States District Court, Southern District of Texas (ID No. 2032287), he is admitted *pro hac vice* in this litigation. Dkt. 23 at 4.

to assist with any deposition. A description of the attorneys' legal background and prior experience in connection with class action litigation is attached hereto as Exhibit 2, which is incorporated by reference herein.

Counsel for Mr. West do not anticipate offering evidence at the fairness hearing, but intend to argue based on the papers filed in support of the objection. Although Mr. West objects to the class notice requirement of appearing for deposition as a clear attempt to intimidate objectors, he nevertheless submits that he is available to give a deposition on either December 2nd, 3rd, 4th, or 5th, 2019. Mr. West joins in the request by class members' Frank and Watkins for a reciprocal deposition of Professor Klonoff. Dkt. 876 at 4.

The specific legal and factual bases of Mr. West's objection are set forth herein.

Mr. Froelich has previously represented objecting class members on two occasions in the preceding five years: (1) *Cross v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01270-RWS, United States District Court, Northern District of Georgia, and (2) *Markos v. Wells Fargo Bank, N.A.*, 1:15-cv-001156-LMM, United States District Court, Northern District of Georgia. Mr. Clore, Mr. Bandas, and/or the Bandas Law Firm, P.C. have represented objecting class members on numerous occasions in the preceding five years. The case names, case numbers, and courts are set forth

in an exhibit to this objection, which is incorporated by reference herein. *See* Exhibit 3.[3]

This objection is made in good faith for the purpose of improving the settlement for the benefit of the class. It is anticipated that class counsel will attack the motives of Mr. West's attorneys even though amended Rule 23(e)(5)(B) now specifically requires district court approval of any settlement of an objection, whether on appeal or in the district court. In making these criticisms, class counsel will likely omit the numerous instances in which Mr. West's attorneys have assisted clients assisted in returning millions to classes. *See e.g.,* Exhibit 3.

As directed in objector requirement 12 of the class notice, Mr. West informs the Court that he has a representation agreement with the Bandas Law Firm. *See* Exhibit 4.[4] Further, the Bandas Law Firm has a retainer agreement with Mr. Froelich to serve as local counsel. *See* Exhibit 5.

---

[3] In complying with the requirement that objectors identify all instances in which their lawyer or lawyer's law firm have objected, a thorough review of records was made; and searches were made on Pacer and www.serialobjector.com. Although it is possible an objection may have been inadvertently missed, counsel made a good-faith effort to locate and identify every objection called for in the class notice. Any omission, discrepancy or shortcoming in these disclosures is strictly unintentional. Should counsel become aware of any such deficiencies, they will take immediate steps to address any such matters.

[4] In response to objector requirement 14 on the long form notice, the manner in which Mr. West's counsel will be compensated depends on the outcome of the objection and myriad of factors. In general, please see the attorney-client representation agreement in Exhibit 4, which establishes the terms of compensation. It is impossible to estimate the amount of fees to be sought at this

In addition to the arguments contained herein, Mr. West incorporates by reference the arguments and authorities contained in other filed objections, including the objection of Theodore H. Frank and David R. Watkins (Dkt. 876), made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

### Objections

### I.      This Court has a fiduciary obligation to the class.

Notwithstanding this Court's discretion in approving settlements, "it shall not confer approval without scrutiny." *Domestic Air*, 148 F.R.D. at 312. It is incumbent upon the Court "to protect the interests of absent class members" by "independently and objectively analyz[ing] the evidence and circumstances before

---

juncture because of unknown variables; however, any fee will be sought in accordance with Rule 23 and applicable law. Mr. West's counsel have spent approximately 42 hours on the case as of the filing of this objection. It is impossible to estimate the number of hours to be spent or the amount of fees to be sought in the future because of unknown variables including class counsels' willingness to make changes to the settlement and to reduce their request for attorneys' fees, the extent and scope of the deposition of Mr. West, whether objectors' counsel are permitted to depose Klonoff, the outcome of the objection, whether appeal to the Eleventh Circuit and Supreme Court is required, the outcome of any such appeal, whether the case is remanded with a new notice and subsequent round of objections, etc. Mr. Clore and Mr. Froelich charge an hourly rate of $600; Mr. Bandas charges $700 per hour. Objection is made to the requirement to objecting to the proposed settlement and requested fees, that objectors come up with an estimate of fees and hours to be spent as unauthorized under Rule 23, ambiguous, and impossible to answer at this stage.

it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished." *Id*. (citation omitted). Courts have equated this to a fiduciary obligation to the absent class members. *Sharleigh Assoc. LLC v. Windmere-Durable Holdings, Inc*., 184 F.R.D. 688, 693 (S.D. Fla. 1999) ("[t]he court bears fiduciary responsibilities to the class").

It is especially important for the Court to scrutinize class counsels' fee taken from the common fund. Equifax has agreed not to take any position on class counsels' proposed $77.5 million fee. Dkt. 739-2 at 26. In the absence of a true adversarial process, "the court must act as a fiduciary for class members and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee." *Bowen v. SouthTrust Bank of Alabama*, 760 F. Supp. 889, 896–97 (M.D. Ala. 1991) (quotations omitted).

## II. The class notice imposes draconian requirements on class members wishing to object, tainting the approval process.

The substance and amount of opposition to the settlement must be considered, along with the other *Bennett* factors, in weighing approval of the settlement. *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).[5] The

---

[5] The *Bennett* factors include: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; 4) the complexity, expense and duration of litigation; 5) the substance and amount of opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved. *Id*.; *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).

Court is undoubtedly aware of criticism of the settlement from the media. *See e.g.,* Shahar Ziv*, Here's Why You Could Get as Little as $0.21 From Equifax's Data Breach Settlement*, Forbes (Aug. 1, 2019);[6] *Warzel, Charlie, Equifax Doesn't Want You to Get Your $125. Here's What You Can Do*, NEW YORK TIMES (Sept. 16, 2019).[7] But it cannot weigh the extent of opposition from class members because the class notice deliberately squelched it.

The notice lists <u>fourteen</u> requirements for class members who wish to file an objection, including identifying sensitive attorney-client agreements, offering four dates to appear for a deposition over a period of sixteen days (including the Thanksgiving holidays), and providing detailed information about counsels'

---

Class counsel have not yet proffered evidence on factors 2 and 3. With 147 million consumers impacted by the data breach, it stands to reason that potential class recovery could bring Equifax to its knees. Indeed, credit freezes alone cost consumers an estimated $1.4 billion. Dkt. 374 at 136-37. "[I]n any case[,] there is a range of reasonableness with respect to a settlement." *ICarpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). Class counsel should have shared this information with the class ahead of the objection deadline, and in failing to do so, further stymied class members' abilities to evaluate the settlement and whether to object. *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) ("[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record").

[6] https://www.forbes.com/sites/shaharziv/2019/08/01/you-might-only-get-21-cents-from-the-equifax-data-breach-settlement-instead-of-125/#5488ba5c4cbe.

[7] https://www.nytimes.com/2019/09/16/opinion/equifax-settlement.html

history and hours estimated to be spent on the case. Dkt. 739-2 at 271-73.[8] These unduly burdensome requirements are calculated to drive down the number and quality of objections. *See Jacobson v. Persolve, LLC*, 14-CV-00735-LHK, 2016 WL 7230873, at *6 (N.D. Cal. Dec. 14, 2016) (disapproving of "burdensome requirements for class members to object to the settlement"); *accord Bennett v. Boyd Biloxi, LLC*, CV 14-0330-WS-M, 2016 WL 2743527, at *6 (S.D. Ala. May 11, 2016) (refusing to approve proposed notice that required deposition by objectors).

Mr. West was able to file his objection, but many class members likely abstained for fear of having to give a deposition, particularly around Thanksgiving. There is no legitimate basis for this requirement. Any suggestion that the requirements exist to weed out bad-faith objections is a pretext in light of Rule 23(e)(5)(B)'s requirement that this Court approve any compensation to counsel for an objector. The settlement should not be approved in light of these burdensome requirements, which are antithetical to Rule 23 and the notion that valid objections should be encouraged, not discouraged. *See Reynolds v. Beneficial Nat. Bank*, 288

---

[8] See also
https://www.equifaxbreachsettlement.com/admin/services/connectedapps.cms.extensions/1.0.0.0/a4f6125d-1f25-4e2c-aa90-3f2bb20e811f_1033_EFX_-_Long_Form_Notice.pdf.

F.3d 277, 288 (7th Cir. 2002). In no case, should *Bennett* factor 5 be found to favor settlement approval.

### III. The settlement unfairly favors class members without existing credit monitoring; class recovery is inadequate considering the terms of class counsels' proposed $77.5 million fee.

In considering adequacy of the class relief, this Court must address items under amended Rule 23 that are not part of the *Bennett* inquiry. Specifically, the Court must consider "the effectiveness of any proposed method of distributing relief to the class" and whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii),(D); *Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *4–5 (M.D. Fla. Jan. 30, 2019) (Howard, J.) (reviewing both Rule 23(e)(2) and considerations under *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984)). It must also weigh class relief with "the terms of any proposed award of attorney's fees[.]" FED. R. CIV. P. 23(e)2)(C)(iii).

These considerations cut against settlement approval. Class members like Mr. West who had their personal information compromised by Equifax, but already have credit monitoring (and who have not yet sustained out of pocket losses) will receive "a very small amount" of cash that will be "[n]owhere near"

$125.[9] That is because just $31 million cash was set aside for those class members. Dkt. 739-2 at 19. The FTC considers the credit monitoring "a much better value[.]"[10] Why should class members who already have credit monitoring get a much worse value? Of course, a class member with credit monitoring may choose the creditor monitoring benefit. But, the class notice does not explain the logistics. Does the settlement create a new Experian account that requires the class member to input new information? Must the class member cancel his existing Experian account?

Without clarification in the class notice, it appears the settlement arbitrarily punishes (and class counsel inadequately represented) those with existing credit monitoring accounts in favor of class counsels' fee recovery and those who don't already have credit monitoring.

Further, while class members like Mr. West will be lucky to get a few dollars from the company that negligently compromised his personal information, class counsel request $77.5 million in fees. As discussed *infra*, that fee request is out of bounds for a megafund settlement in this District. That is likely why class counsel insisted that Equifax agree not to oppose the fee motion. Dkt. 739-2 at 26. Of course, Equifax would not "agree to a clear-sailing clause without

---

[9] https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement.

[10] *Id.*

compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

The class relief, and particularly the relief for class members with existing credit monitoring, is inadequate relative to the terms of class counsels' proposed fee.

## IV.    Class counsels' fee request is grossly excessive for a megafund.

Regardless of whether the Court approves the settlement, the Court should not award class counsel anything approaching $77.5 million. For purposes of attorneys' fees, it's important to start with the common fund from which class counsel ask to be paid. Even though the settlement contemplates the $77.5 million fee as a 25% recovery  from the $310 million fund negotiated under the March 30, 2019 term sheet (Dkt. 739-at 2 25), class counsel reframe it as 20.3% from $380.5 million. But, as class counsel readily admit, the FTC is responsible for securing that additional $70.5 million. Dkt. 858 at 6. Class counsels' percentage-based recovery should not come from funds that they didn't obtain for the class. This Court should treat the request as 25% of the $310 million fund that *they* negotiated.

Though a 25% benchmark fee might appear superficially reasonable under *Camden I*,[11] courts in this District do not allow that high of a percentage to be

---

[11] *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991).

taken from a megafund. *See Domestic Air*, 148 F.R.D. at 350–51; *Carpenters*, 587 F. Supp. 2d at 1271–72. *Camden I* contemplated that the benchmark fee "may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775. One of those circumstances, at least in the Northern District of Georgia, is when a settlement reaches into the hundreds of millions of dollars. *Carpenters*, 587 F. Supp. 2d at 1271–72; *Domestic Air*, 148 F.R.D. at 350 ("While the benchmark for a percentage award in a normal common fund case falls between 20–30%, the present action is an exception to the typical common fund case because of the size of the recovery"). Indeed, *Camden I* specifically "authorizes an examination of the economies of scale inherent in any class action in determining an appropriate fee award." *Domestic Air*, 148 F.R.D. at 352 (citing *Camden I*, 946 F.2d at 775).

In *Carpenters*, Judge Hunt awarded 21% rather than 26% from a $137.5 million fund, specifically finding "that as the size of the common fund increases, the percentage of that fund awarded to class counsel should decrease." *Id*. at 1268, 1272. Judge Hunt acknowledged that not all courts share this view, which has tended "to skew the average percentage of awards in mega-fund cases higher than what this Court would consider reasonable." *Id*. at 1272.[12]

---

[12] That explains Klonoff's cherry-picked settlements where courts awarded fees above traditional megafund percentages. Dkt. 858-2 at 63-67.

Though a 21% fee was not excessive for a $137.5 million settlement, it was for a $305 million settlement. Judge Shoob in *Domestic Air* found that "a reduced percentage award of fees and expenses of 5.25% is appropriate … given the size of the recovery." *Domestic Air*, 148 F.R.D. at 351. "In megafund cases where extraordinarily large class recoveries of $75–$200 million and more are recovered, courts most stringently weigh the economics of scale inherent in class actions in fixing an appropriate percent recovery for reasonable fees. Accordingly, fees in the range of 6–10% and even lower are common in this large scale context." *Domestic Air*, 148 F.R.D. at 350–51.

Under principles of economies of scale followed in this District, if the settlement is approved, a 10% fee from the $310 million fund ($31 million) would be at the outer bounds of reasonableness. *Domestic Air*, 148 at 351. It would still allow for a generous 1.48 lodestar multiplier.

The $310 million fund secured by class counsel is undeniably more a product of 147 million potential claims against Equifax than protracted labor by class counsel. Although class counsel have not submitted any breakdown of hourly labor by category (as discussed *infra*, the Court should order this), presumably most of their lodestar is dedicated to mediation and settlement. Dkt. 858 at 4 (noting Equifax and class counsel began settlement discussions in September 2017). Under these circumstances, the economies of scale lowers "fees to class

counsel who achieved a quick result in a class action due to the economies of scale, reasoning that there is little additional time or effort required to litigate a class action and that plaintiffs' attorneys should not allowed to receive a contingent fee payable out of the entire fund at the same rate that the attorney would receive on one claim." *Domestic Air*, 148 F.R.D. at 352.

Class counsel are mistaken that the size of the fund "does not change the analysis." Dkt. 858 at 20. Without mentioning *Domestic Air* or *Carpenters* from this District,[13] they rely on authority from the Southern District of Florida, which emphasizes that a low percentage for large funds may discourage other counsel from continuing to fight for a better outcome. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1212-13 (S.D. Fla. 2006). This case is not like *Allapattah*, where class counsel litigated the case for 15 years, including two trials and appeals before the Supreme Court, to achieve an extraordinary 100% return on class compensatory damages. 454 F.Supp.2d 1185, 1213 (S.D. Fla. 2006). This case settled early; so the concerns over creating a disincentive to future counsel who might otherwise litigate longer for a better result are not implicated.

---

[13] Remarkably, class counsels' expert on fees, Robert Klonoff, does not cite *Domestic Air*. He does cite *Carpenters*, but not for its application of the economies of scale to megafunds. Dkt. 858-2 at 76, 96.

### V.     The *Johnson* factors do not support the proposed fee.

The *Johnson*[14] factors do not support exceeding the standard 6%-10% fee for megafunds above $200 million recognized in *Domestic Air*. 148 F.R.D. at 350. The time and labor required (factor 1) weighs against the fee request. With $20.9 million in lodestar (discussed *infra*), class counsel are asking to be paid at nearly four times their blended $676 hourly rate. Dkt. 858-1 at 26. This case settled quickly and with no formal discovery or depositions taken. Class counsel pat themselves on the back from reviewing documents, interviewing key witnesses, and noticing several critical depositions. Dkt. 858 at 4. But, they don't identify a single deposition taken before agreeing to terms with Equifax. The first depositions taken by class counsel will come from objectors.

Though the case is complex, the expense and duration—less than two years and $1.2 million in expenses for a settlement involving nearly half the American population—are modest for a class action of this magnitude. *See An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud.

---

[14] The factors include: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to perform the legal service properly," (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "time limitations imposed by the client or other circumstances," (8) "the amount involved and the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the 'undesirability' of the case," (11) "the nature and length of the professional relationship with the client," and (12) "awards in similar cases." *Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

811, 820 (2010) (finding average and median times to final settlement approval of around three years).

As to the amount involved and the results obtained (factor 8), class counsel have overstated the results (while failing to proffer the value of class claims). This is the largest settlement for a data breach because of the aggregation of 147 million class members' claims, not years of labor by class counsel. Class counsel also muddy the water by including the cost of practice changes, which are a benefit to Equifax. *See In re Home Depot, Inc*., 931 F.3d 1065, 1077 (11th Cir. 2019) (noting this Court declined to include practice changes in calculating fees); *Koby v. ARS Natl. Services, Inc*., 846 F.3d 1071, 1079 (9th Cir. 2017) (injunctive relief of business practices was "presumably to avoid further litigation risk" and had no real settlement value).

Contrary to class counsels' suggestion, the "undesirability of the case" factor (factor 10) is applicable; it just doesn't support a high fee. Sixty law firms participated in the litigation. Dkt. 858-1 at 83-84. The case was obviously highly desirable.

Finally, awards in similar cases (factor 12) do not support the $77.5 million fee. Judge Shoob awarded a 5.25% fee from a $305 million settlement based on the economies of scale. *Domestic Air*, 148 F.R.D. at 350–51. This Court awarded $15.3 million in the *Home Depot* data breach class action where the percentage-

based cross-check revealed a fee of slightly more than a third of the class benefit. *Home Depot, Inc.*, 931 F.3d at 1077. Of course, the $42.5 million class benefit did not rise to the level of a megafund. Plus, the Court awarded the fee under the lodestar method with a modest 1.3 multiplier. *Id.* Similarly, a court allowed a 27% fee in a data breach case, but only where the lodestar multiplier was just "slightly over 1.0." *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018).

## VI.    The real lodestar multiplier is at least 3.7 and probably much higher.

While lodestar cross-checks are not mandated in the Eleventh Circuit, there is every reason to conduct one here given the magnitude of the $77.5 million proposed fee. In "megafund cases, the lodestar cross-check assumes particular importance." *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013) ("the lodestar cross-check is particularly important in so-called megafund settlements such as this one"). The reason is that a high lodestar multiplier may evidence a windfall. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)

This is not a case like *Anthem* or *Home Depot* where class counsel are requesting roughly what they would have recovered had they billed at their hourly rates. Class counsels' $20,986,357.80 in represented lodestar requires a 3.7

multiplier to reach $77.5 million. Dkt. 858-1 at 26. That would compensate class counsel at around $2,500 per hour ($676.72 blended hourly rate x 3.7 multiplier = $2,503.86 hourly rate).

Of course, class counsels' lodestar is the presumptive reasonable fee. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (emphasis original) (quotations omitted). Class counsel have failed to demonstrate entitlement to nearly four times the presumptively reasonable fee.

This Court should not entertain the purported 2.79 multiplier that is based on class counsels' estimated future work. "The law is settled that in calculating the lodestar, the Court must use 'the number of hours reasonably **expended** on the litigation,' and the movant 'should submit evidence supporting the hours worked." *See Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and adding emphasis); *see also 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013) ("Plaintiff has not identified any authority that would entitle it to an award of 'anticipated legal fees and costs,' nor is the court aware of any."); *Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (the fact "that a substantial portion of the requested fees were incurred *after* the settlement was

19

reached at the mediation . . . casts doubt on the value to the class of the billed hours") (emphasis original).

The Court should also not write class counsel a blank check on expenses. Class counsel seek reimbursement for $167,808.19 that covers Pacer and electronic research. Dkt. 858-1 at 89. At least with respect to legal research, firms often pay flat rates regardless of usage, and class counsel cannot pass this overhead on as an out-of-pocket expense. *Carpenters*, 587 F. Supp. at 1272. The Court should also not allow recovery of $104,493.55 in "Miscellaneous" expenses without further explanation.

## VII.  The Court should order class counsel to file more detailed lodestar material.

Given class counsels' self-interest in securing the largest fee possible, the Court should not accept their assurances that they eliminated all duplicative, unauthorized or otherwise non-compensable hours. Dkt. 858 at 23. The Court should review their time closely and order their billing records produced for review by the class. The class members should not be kept in the dark about their attorneys' efforts to take $77.5 million plus expenses from the common fund. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) ("[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record").

Class counsels' current lodestar submission gives neither the class nor the Court any assurance against a considerable overpayment from the class members' common fund. The Eleventh Circuit instructs that class counsel must produce "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. Of City of Montgomery*, 836 F.3d 1292, 1303 (11th Cir. 1988). Great detail is not required, but the records must "'identify the general subject matter of [the] time expenditures.' The time records . . . should demonstrate that the attorneys did not bill for hours that were unproductive, excessive or redundant." *William B. Rubenstein*, Newberg on Class Actions § 15:47 (5th ed.); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (refusing to accept claimed lodestar multiplier on cross-check where class counsel only submitted "the total hours spent by each attorney and other professional[s], with no specification of date or task[;]" without any "backup detail" it was "impossible to assess duplication of effort or unproductive time.").

Sixty law firms submitted a total of 31,011.9 hours. Dkt. 858-1 at 82-87. That is a virtual guarantee of substantial overlap. The generic lodestar submission, without any categorization as to task (or even attorney), makes it impossible to eliminate any of it.

**Conclusion**

This Court should deny final approval of the settlement in light of the inequitable treatment of class members who have an existing credit monitoring service and considering the terms of class counsels' unopposed proposed $77.5 million fee, which they have shielded from opposition by creating roadblocks for class members wishing to object. Even if the settlement is approved, that fee request should be rejected out of hand. Anything more than 10% from the $310 million secured by class counsel (i.e., $31 million), would be unreasonable. That would still allow for a generous 1.48 lodestar multiplier. The remaining $46.5 million should be returned to the benefit of the class. Finally, before awarding fees, this Court should, as a matter of transparency to the class, require class counsel to disclose billing and expense records, and allow class members to lodge additional objections after reviewing them.

Dated:          November 19, 2019               Respectfully submitted,

                                                /s/ Robert W. Clore
                                                Robert W. Clore
                                                *Pro Hac Vice*[15]
                                                State Bar of Texas #24012436
                                                Admitted to the United States District

---

[15] Dkt. 23 at 4.

Court, Southern District of Texas, ID
No. 2032287
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78418
(361) 698-5200


Jerome J. Froelich, Jr.
State Bar No. 278150

McKENNEY & FROELICH
One Midtown Plaza, Suite 910
1360 Peachtree Street
Atlanta, Georgia  30309-2920
(404) 881-1111

*Attorneys   for   Objecting   Class
Member, Mikell West*

Dated November 19, 2019

_____

Mikell West
Objecting Class Member

## <u>CERTIFICATE OF FONT</u>

I hereby certify that this Objection has been prepared in compliance with Local Rules 5.1 and 7.1

DATED: November 19, 2019                      /s/ Robert W. Clore
                                                            Robert W. Clore

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that today he filed the foregoing document and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: November 19, 2019                      /s/ Robert W. Clore
                                             Robert W. Clore