# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

IN RE: CENTURYLINK SALES          MDL No. 17-2795 (MJD/KMM)
PRACTICES AND SECURITIES
LITIGATION

This Document Relates to:

0:17-cv-02832     0:17-cv-04622
0:17-cv-04613     0:17-cv-04944
0:17-cv-04615     0:17-cv-04945
0:17-cv-04616     0:17-cv-01562
0:17-cv-04617     0:17-cv-01565
0:17-cv-04618     0:17-cv-01572
0:17-cv-04619     0:17-cv-01573


**BRIEF OF ATTORNEYS GENERAL OF DELAWARE, ARIZONA, ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, IDAHO, ILLINOIS, INDIANA, IOWA, KENTUCKY, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MISSISSIPPI, NEBRASKA, NEVADA, NEW JERSEY, NORTH CAROLINA, NORTH DAKOTA, OHIO, OKLAHOMA, OREGON, PENNSYLVANIA, RHODE ISLAND, SOUTH CAROLINA, TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON, AND WYOMING AS AMICI CURIAE OPPOSING DEFENDANT CENTURYLINK'S MOTION FOR TEMPORARY INJUNCTION**
_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

STATEMENT OF INTEREST ................................................................................... 1

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 3

I.  FEDERAL COURTS CANNOT ASSUME JURISDICTION OVER STATE LAW ENFORCEMENT ACTIONS PROPERLY BROUGHT IN STATE COURTS ............................................................................................ 3

    A.  CenturyLink's Proposed Injunction Would Violate the Eleventh Amendment .......................................................................................... 5

    B.  *Younger* Abstention Principles Foreclose an Injunction ........................ 9

II.  THE ANTI-INJUNCTION ACT BARS CENTURYLINK'S PROPOSED INJUNCTION ........................................................................... 11

    A.  An Injunction Is Not "Necessary in Aid of Jurisdiction" ...................... 13

    B.  The Other Anti-Injunction Act Exceptions Are Inapplicable ............... 20

III.  CENTURYLINK'S PROPOSED INJUNCTION IS INEQUITABLE BECAUSE IT WOULD HARM THE PUBLIC INTEREST .......................... 21

    A.  An Injunction Would Harm the Public Interest by Incentivizing Collusive "Reverse Auction" Settlements in Class Action Litigation ................................................................................................. 23

    B.  An Injunction Would Harm the Public Interest by Ensuring Lesser Recoveries for Fraud Victims .................................................... 26

    C.  An Injunction Would Harm the Public Interest by Limiting the Ability of Government Officials to Use Restitution to Deter Wrongdoing .......................................................................................... 28

IV.  STATE ATTORNEYS GENERAL ARE GOVERNED BY DIFFERENT LEGAL STANDARDS AND LACK PRIVITY WITH CONSUMERS IN STATE LAW ENFORCEMENT ACTIONS ................... 30

    A.  The Legal Issues in Federal Class Action Lawsuits Are Often Different from Those Before State Courts Hearing Government Enforcement Actions ............................................................................ 30

    B.  Class Members Are Not in Privity with State Attorneys General ......... 33

        i.  Class Members Have No Substantive Legal Relationship with State Attorneys General .................................................... 34

i

ii.    Class Members Cannot Adequately Represent State Attorneys General Because The Parties Have Different Interests .................................................................................... 34

iii.   State Attorneys General Do Not Control Class Action Lawsuits or Represent Class Members in a Manner that Allows for Preclusion ................................................................ 39

CONCLUSION ............................................................................................. 41

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Nestle Purina PetCare Co.*,
779 F.3d 481 (7th Cir. 2015) ................................................................. 18, 19

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................ 14, 24

*Angela R. by Hesselbein v. Clinton*,
999 F.2d 320 (8th Cir. 1993) ........................................................................ 8

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*,
398 U.S. 281 (1970) ................................................................. 12, 13, 19, 22

*AU Optronics Corp. v. South Carolina*,
699 F.3d 385 (4th Cir. 2012) ........................................................................ 9

*Beck v. Levering*,
947 F.2d 639 (2d Cir. 1991) .................................................................. 36, 37

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) .................................................... 15, 20, 21, 38

*Canady v. Allstate Ins. Co.*,
282 F.3d 1005 (8th Cir. 2002) ..................................................................... 22

*Carlough v. Amchem Prod., Inc.*,
10 F.3d 189 (3d Cir. 1993) ..................................................................... 14, 16

*CE Design Ltd. v. King Supply Co.*,
791 F.3d 722 (7th Cir. 2015) ....................................................................... 24

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
280 F.3d 874 (8th Cir. 2002) ....................................................................... 10

*CFTC v. Comm'l Hedge Servs., Inc.*,
422 F. Supp.2d 1057 (D. Neb. 2006) ............................................... 37, 38, 39

*Chao v. A-One Med. Servs., Inc.*,
346 F.3d 908 (9th Cir. 2003) ....................................................................... 38

*Chick Kam Choo v. Exxon Corp.*,
486 U.S. 140 (1988) ................................................................. 12, 20, 21

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) ................................................................................. 24

*Com. ex rel. Stephens v. N. Am. Van Lines, Inc.*,
    600 S.W.2d 459 (Ky. Ct. App. 1979)................................................................31

*Cuomo v. Clearing House Ass'n, L.L.C.*,
    557 U.S. 519 (2009) .............................................................................................4

*Curtis v. Altria Grp., Inc.*,
    813 N.W.2d 891 (Minn. 2012) ............................................................4, 31, 40

*Danforth v. Minnesota*,
    552 U.S. 264 (2008) .............................................................................................3

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
    640 F.2d 109 (8th Cir. 1981)..............................................................................22

*Doe v. Hesketh*,
    828 F.3d 159 (3d Cir. 2016) ..............................................................................36

*Donovan v. Cunningham*,
    716 F.2d 1455 (5th Cir. 1983) ...........................................................................36

*Dover Elevator Co. v. Arkansas State Univ.*,
    64 F.3d 442 (8th Cir. 1995)..................................................................................7

*Duckett v. Fuller*,
    819 F.3d 740 (4th Cir. 2016)......................................................................34, 40

*E.E.O.C. v. U.S. Steel Corp.*,
    921 F.2d 489 (3d Cir. 1990) ..............................................................................39

*EEOC v. Pemco Aeroplex, Inc.*,
    383 F.3d 1280 (11th Cir. 2004) .........................................................................35

*Ex parte Young*,
    209 U.S. 123 (1908) .............................................................................................7

*Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*,
    308 F. Supp. 3d 1280 (N.D. Ga. 2018) .............................................................39

*Foster v. State of Minnesota*,
    888 F.3d 356 (8th Cir. 2018)......................................................................12, 32

*Franchise Tax Bd. of California v. Hyatt*,
    139 S. Ct. 1485 (2019) .....................................................................................5, 6

*Goodrich v. Supreme Court of S.D.*,
    511 F.2d 316 (8th Cir.1975)..............................................................................22

*Hauschildt v. Beckingham*,
    686 N.W.2d 829 (Minn. 2004) ..........................................................................32

*Head v. Special Sch. Dist. No. 1*,
182 N.W.2d 887 (Minn. 1970) ...................................................................... 4

*Herman v. S.C. Nat. Bank*,
140 F.3d 1413 (11th Cir. 1998) ................................................... 35, 36, 38, 39

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) .................................................................................. 10

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
2013 WL 3463503 (E.D. Pa. July 10, 2013) .................................... 15, 21, 39

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985) ............................................................... passim

*In re BankAmerica Corp. Sec. Litig.*,
263 F.3d 795 (8th Cir. 2001) ..................................................................... 15

*In re Bayshore Ford Trucks Sales, Inc.*,
471 F.3d 1233 (11th Cir. 2006) .................................................................. 14

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) ....................................................................... 24

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ................................................................ passim

*In re Fed. Skywalk Cases*,
680 F.2d 1175 (8th Cir. 1982) .................................................................... 14

*In re Flonase Antitrust Litig.*,
879 F.3d 61 (3d Cir. 2017) ........................................................................... 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ......................................................................... 25

*In re Glenn W. Turner Enterprises Litig.*,
521 F.2d 775 (3d Cir. 1975) ....................................................................... 18

*In re Jimmy John's Overtime Litig.*,
877 F.3d 756 (7th Cir. 2017) ................................................................. 19, 22

*In re Montgomery Ward, LLC*,
634 F.3d 732 (3d Cir. 2011) ....................................................................... 34

*In re SDDS, Inc.*,
97 F.3d 1030 (8th Cir. 1996) ...................................................................... 22

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
2012 WL 13065005 (D. Minn. Jan. 19, 2012) ............................................. 17

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013)......................................................................... 25

*In re: Motor Fuel Temperature Sales Practices Litig.*,
872 F.3d 1094 (10th Cir. 2017)....................................................................... 23

*Kelly v. Robinson*,
479 U.S. 36 (1986) .......................................................................................... 29

*Kline v. Burke Const. Co.*,
260 U.S. 226 (1922) ........................................................................................ 13

*Lansing v. Wells Fargo Bank, N.A.*,
894 F.3d 967 (8th Cir. 2018)........................................................................... 32

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .......................................................................................... 7

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006)........................................................................... 38

*LG Display Co. v. Madigan*,
665 F.3d 768 (7th Cir. 2011)............................................................................. 9

*Minnesota Living Assistance, Inc. v. Peterson*,
899 F.3d 548 (8th Cir. 2018)........................................................................... 10

*Mitchum v. Foster*,
407 U.S. 225 (1972) ................................................................................... 12, 21

*Montana v. United States*,
440 U.S. 147 (1979) ........................................................................................ 40

*Nat'l Basketball Ass'n v. Minnesota Prof'l Basketball, Ltd. P'ship*,
56 F.3d 866 (8th Cir. 1995)............................................................................. 19

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012)............................................................................. 9

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ................................................................................... 24, 26

*Pearson v. Target Corp.*,
893 F.3d 980 (7th Cir. 2018)........................................................................... 23

*Pelt v. Utah*,
539 F.3d 1271 (10th Cir. 2008)....................................................................... 34

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ...................................................................................passim

*People v. Pac. Land Research Co.*,
569 P.2d 125 (Cal. 1977) ............................................................................ 38

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ..................................................................................... 24

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) ..................................................................................... 28

*Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*,
640 F.3d 821 (8th Cir. 2011) .......................................................................... 9

*Purdue Pharma L.P. v. Kentucky*,
704 F.3d 208 (2d Cir. 2013) ........................................................................... 9

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,
386 F.3d 419 (2d Cir. 2004) .................................................................... 17, 19

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir.2002) ......................................................................... 24

*Sam Fox Pub. Co. v. United States*,
366 U.S. 683 (1961) ..................................................................................... 36

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*,
428 F.3d 831 (9th Cir. 2005) .................................................................... 18, 21

*Sec'y of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ........................................................................ 36

*Sec'y United States Dep't of Labor v. Kwasny*,
853 F.3d 87 (3d Cir. 2017) ................................................................ 35, 36, 37

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
764 F.3d 1327 (11th Cir. 2014) ................................................................ 31, 32

*Smith v. Bayer Corp.*,
564 U.S. 299 (2013) ............................................................................... passim

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ....................................................................................... 10

*State of Missouri v. Fiske*,
290 U.S. 18 (1933) ..................................................................................... 6, 8

*State v. Danny's Franchise Sys., Inc.*,
517 N.Y.S.2d 157 (N.Y. App. Div. 1987) ....................................................... 31

*State v. Joseph*,
636 N.W.2d 322 (Minn. 2001) ...................................................................... 32

*State v. Minnesota Sch. of Bus., Inc.*,
   915 N.W.2d 903 (Minn. Ct. App. 2018) ........................................................ 5

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................................. passim

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) ............................................................... 24, 28

*Thorogood v. Sears, Roebuck & Co.*,
   627 F.3d 289 (7th Cir. 2010) ........................................................................ 23

*Trainor v. Hernandez*,
   431 U.S. 434 (1977) ....................................................................................... 10

*U.S. Commodity Futures Trading Comm'n v. Kratville*,
   796 F.3d 873 (8th Cir. 2015) .......................................................... 35, 37, 39

*United States v. Bhatia*,
   545 F.3d 757 (9th Cir. 2008) ........................................................................ 40

*United States v. E. Baton Rouge Par. Sch. Bd.*,
   594 F.2d 56 (5th Cir. 1979) .......................................................................... 25

*United States v. Lane Labs-USA Inc.*,
   427 F.3d 219 (3d Cir. 2005) ......................................................................... 29

*United States v. Schurkman*,
   728 F.3d 129 (2d Cir. 2013) ................................................................. 15, 19

*Vendo Co. v. Lektro-Vend Corp.*,
   433 U.S. 623 (1977) ....................................................................................... 13

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ............................................................. 17

*Williams v. State of Wash.*,
   554 F.2d 369 (9th Cir. 1977) ........................................................................ 10

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
   496 F.3d 326 (4th Cir. 2007) ........................................................................ 35

*Winkler v. Eli Lilly & Co.*,
   101 F.3d 1196 (7th Cir. 1996) ...................................................................... 16

*Wisconsin Right to Life, Inc. v. Fed. Election Comm'n*,
   542 U.S. 1305 (2004) ..................................................................................... 12

*Wyly v. Weiss*,
   697 F.3d 131 (2d Cir. 2012) ................................................................. 14, 15

*Younger v. Harris*,
  401 U.S. 37 (1971) ........................................................................... 5, 9, 10

## Statutes

15 U.S.C. § 45 .................................................................................. 39
21 U.S.C. § 301 ................................................................................ 29
28 U.S.C. § 1651 ........................................................................... 2, 11
28 U.S.C. § 2283 ........................................................................... 2, 11
28 U.S.C.A. § 1715 ............................................................................ 25
29 U.S.C. § 1001 .............................................................................. 35
Minn. Stat. § 8.31 .............................................................................. 4

## Other Authorities

John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370 (2000) ........................ 27
Prentiss Cox, *Public Enforcement Compensation and Private Rights*, 100 Minn. L. Rev. 2313 (2016) ................................................................... 36

## Rules

Fed. R. Civ. P. 23(e) ........................................................................... 24
Fed. R. Civ. P. 65 .............................................................................. 22

## Treatises

Charles Alan Wright & Arthur R. Miller, 18A Fed. Prac. & Proc. Juris. § 4448 (3d ed.) ............................................................................... 33

## Constitutional Provisions

U.S. Const. amend. XI. ........................................................................... 5

## STATEMENT OF INTEREST

The 37 undersigned Attorneys General are their respective jurisdictions' chief legal officers.  Their interest here arises because the rule that Defendant CenturyLink, Inc. ("CenturyLink") urges this Court to adopt—namely, that a state attorney general cannot pursue restitution against a defendant once private litigants settle their claims against the same defendant—would significantly impair the ability of the Attorneys General to carry out their constitutional and statutory responsibilities and protect the citizens of their respective states. CenturyLink's proposed injunctive relief also implicates legal principles common to state attorneys general, such as sovereignty, abstention, and claim preclusion. Additionally, the relief CenturyLink seeks could undermine ongoing investigations into CenturyLink's business practices by certain Attorneys General.

## INTRODUCTION[1]

CenturyLink's Motion for a Temporary Injunction ("Motion") requests improper and unnecessary injunctive relief that would undercut the Minnesota Attorney General's sovereign interest in enforcing Minnesota law, threaten the independence of Minnesota's courts, and negate well-recognized differences between public and private litigation. CenturyLink's proposal has ramifications beyond the instant matter: the rule it advocates would enable wrongdoers to use private class action settlements to thwart key aspects of

---

[1] The undersigned Attorneys General incorporate by reference the Statement of Facts contained in the separate Memorandum submitted by the Minnesota Attorney General. ECF No. 485, at 2-5.

1

government enforcement actions in virtually any situation in which they face both types of lawsuit. This Court should not facilitate such an outcome.

Despite CenturyLink's suggestions to the contrary, courts recognize that private settlements are no bar to law enforcement actions by government officials. Much of the authority CenturyLink relies upon concerns injunctions applicable to private parties only. The few cases it references in which attorneys general were enjoined are both anomalous and contrary to binding precedent. Moreover, even those cases are easily distinguishable on their facts.

To be clear, the undersigned Attorneys General take no position in this brief on the merits of the parties' proposed settlement. They object only to CenturyLink's assertion that federal courts may treat class action settlements as grounds to enjoin state attorneys general from seeking restitution in parallel law enforcement actions. This position is wrong for several reasons:

- The Eleventh Amendment forbids it. Attorneys general have sovereign immunity in actions brought in state courts to enforce state laws. Federal courts cannot assume jurisdiction over any aspect of these actions in the absence of consent on the part of attorneys general.

- It requires federal courts to overstep their statutory authority. The All-Writs Act, 28 U.S.C. § 1651, and Anti-Injunction Act, 28 U.S.C. § 2283, authorize federal courts to enjoin state court proceedings only in limited instances, such as when an injunction is necessary "in aid of the federal court's jurisdiction." Injunctions such as the one CenturyLink proposes implicate convenience

2

rather than necessity, and do not satisfy the high burden these statutes impose.

- <u>It runs counter to settled principles of equity.</u>  Enjoining state attorneys general on the basis of private litigation would incentivize abusive class action settlements.  It would also undermine deterrence and harm class members by allowing wrongdoers to retain more of the proceeds from their misconduct.

- <u>It rests on the mistaken premise that attorneys general and private litigants are in privity.</u>  The interests of private plaintiffs are different from those of attorneys general, and attorneys general do not represent private plaintiffs in litigation.  As such, private settlements cannot bind attorneys general.

In short, the rule CenturyLink advocates is both bad law and bad policy.

CenturyLink's Motion is little more than a thinly-veiled attempt to "weaponize" a private settlement for purposes of avoiding more substantial liability in the Minnesota Attorney General's state court lawsuit against it ("the Enforcement Action").  This Court should reject CenturyLink's attempt and deny the Motion.

<u>**ARGUMENT**</u>

## I.   FEDERAL COURTS CANNOT ASSUME JURISDICTION OVER STATE LAW ENFORCEMENT ACTIONS PROPERLY BROUGHT IN STATE COURTS

CenturyLink's proposed injunction would undermine three bedrock principles of federalism.  First, each state has a sovereign interest in the enforcement of its own laws. *See, e.g.*, *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008) (noting "the general principle

3

that States are independent sovereigns with plenary authority to make and enforce their own laws"). Second, state attorneys general, as the chief legal officers of their respective states, are charged with the application of sovereign law enforcement power. *See, e.g.*, *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 536 (2009) (referencing "the role of sovereign-as-law-enforcer"). Third, absent constitutional concerns, federal courts lack jurisdiction to interfere with the valid exercise of state sovereignty. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (recognizing "the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III").

The Enforcement Action is firmly within the confines of these general principles. In Minnesota, as in other states, the state attorney general "possesses original discretion which he may exercise in instituting proper proceedings to secure the enforcement of law." *Head v. Special Sch. Dist. No. 1*, 182 N.W.2d 887, 892 (Minn. 1970). The attorney general has both statutory and common law authority to "institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of this state, the preservation of order, and the protection of legal right." *Id.* This is as true in consumer protection matters as in other contexts. *See Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 898 (Minn. 2012) ("Section 8.31 [of the Minnesota Statutes] provides the State AG with broad and comprehensive authority to investigate, conduct discovery, and sue responsible parties to remedy violations, or potential violations, of the [consumer protection] laws [set

4

forth in] subdivision 1."); *State v. Minnesota Sch. of Bus., Inc.*, 915 N.W.2d 903, 909 (Minn. Ct. App. 2018) (discussing *parens patriae* authority).[2]

An injunction precluding any part of the Enforcement Action, including the Minnesota Attorney General's restitution claims, would mark a significant and troubling departure from the principles of federalism described above. Such an injunction would contravene both the Eleventh Amendment's guarantee of sovereign immunity and the well-established doctrine of abstention set out in *Younger v. Harris*, 401 U.S. 37 (1971). This Court should refrain from taking such a step.

## A. CenturyLink's Proposed Injunction Would Violate the Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has "often emphasized that the Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) (citation omitted). *See also Pennhurst*, 465 U.S. at 116-17 ("[T]he Eleventh Amendment's restriction on the federal judicial power is based in large part on the problems of federalism inherent in making one sovereign appear against

---

[2] Minnesota affirmatively invoked its sovereign law enforcement interests at the earliest stage of the Enforcement Action. *See* Compl. at 2, ¶ 2 (referencing the state attorney general's statutory and common law authority "to bring this action to enforce Minnesota's laws, to vindicate the State's sovereign and quasi-sovereign interests, and to remediate all harm arising out of – and provide full relief for – violations of Minnesota's laws").

its will in the courts of the other.") (citation and internal punctuation omitted). In keeping with this principle, the Supreme Court "has held that the Constitution bars suits against nonconsenting States in a wide range of cases." *Hyatt*, 139 S. Ct. at 1496.[3]

The Supreme Court has previously warned against "vest[ing] in federal courts authority, acting solely under state law, to ignore the sovereignty of the States that the Eleventh Amendment was adopted to protect." *Pennhurst*, 465 U.S. at 109 n.17. In *Pennhurst*, residents of a Pennsylvania mental health institution sought a federal court injunction to compel state government officials to manage the institution in compliance with a Pennsylvania statute. On appeal, the Supreme Court refused to permit the injunction, reasoning "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106. It concluded that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Id.* at 117.

CenturyLink's proposed injunction cannot be squared with *Pennhurst*. The Enforcement Action was brought by a Minnesota official—the state attorney general—for the express purpose of enforcing Minnesota's consumer fraud laws. The restitution claims CenturyLink contends are "duplicative" (*e.g.*, CenturyLink Mem., ECF No. 423, at 2) are

---

[3] The All-Writs Act does not trump sovereign immunity. *See, e.g.*, *In re Baldwin-United Corp.,* 770 F.2d 328, 340 (2d Cir. 1985) (citing *State of Missouri v. Fiske*, 290 U.S. 18, 28 (1933)).

based exclusively on state law.[4]  Minnesota has never consented to federal jurisdiction over any aspect of the Enforcement Action.[5]  Additionally, CenturyLink does not allege any violation of *federal* law stemming from the Enforcement Action.[6]  The injunction it seeks would effectively instruct a state official on how to collect and allocate restitution under state law—a clear violation of sovereign immunity.  Even if CenturyLink's assertions that the injunction would conserve judicial resources and reduce confusion (*see, e.g.*, CenturyLink Mem., ECF No. 423, at 20-22) had merit—and, as explained below, they do not—"such considerations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Pennhurst*, 465 U.S. at 123.

CenturyLink cannot save its request for an injunction by claiming it has not sued the Minnesota Attorney General directly.  As the Supreme Court explained in *Pennhurst*, "a suit is against the sovereign . . . if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." 465 U.S. at 101 n.11 (citation and internal

---

[4] While improper collection of restitution by a state attorney general might constitute a tort under state law, this alone would not confer federal jurisdiction.  *See Pennhurst*, 465 U.S. at 112 & n.22 (noting sovereign immunity applies to tortious conduct by state officials acting in the scope of their authority) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 685-95 (1949)).

[5] "[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst*, 465 U.S. at 99 n.9.

[6] As such, the exception to sovereign immunity set out in *Ex parte Young*, 209 U.S. 123 (1908), which concerns unconstitutional acts by state officials, does not apply.  *See, e.g.*, *Pennhurst*, 465 U.S. at 106; *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995).

quotation marks omitted).  Thus, courts must examine the nature of the proposed relief, rather than the form of the underlying claim, in determining whether a particular action would offend sovereign immunity.  *See id.* at 107 (noting "the general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought") (italics in original); *Angela R. by Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993) ("[T]he Eleventh Amendment prohibits a federal court from *granting relief* against state officials for conduct that violates only state law.") (emphasis added).

Because CenturyLink's request for injunctive relief would undoubtedly restrain the Minnesota Attorney General from acting, it constitutes a "suit against the sovereign" under *Pennhurst*.  Indeed, in a closely analogous matter, the Third Circuit recently held that the Eleventh Amendment forbade an order enjoining a state attorney general from pursuing claims purportedly released under a settlement in class action litigation to which he was never a party.  *In re Flonase Antitrust Litig.*, 879 F.3d 61, 65-68 (3d Cir. 2017) (citing *State of Missouri v. Fiske*, 290 U.S. 18 (1933)). In *Flonase*, as here, the defendant filed a motion for an injunction, rather than a complaint, against the state attorney general.  879 F.3d at 67.

Only one of the cases CenturyLink relies upon, *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), contemplates the issue of sovereign immunity in connection with restitution claims by state actors.  It is true that in *Baldwin*, the Second Circuit held that the Eleventh Amendment did not bar a federal court injunction against state attorneys general seeking restitution on behalf of securities fraud victims in their respective states.  The court's decision, however, was based on the premise that the victim, rather than the attorney

general, is the real party in interest for purposes of a restitution claim. *Id.* at 341-42. The Second Circuit has since receded from this position. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 217 n.8 (2d Cir. 2013) (criticizing the argument that state actors, including an attorney general, "[were] not the real parties in interest for restitution claims allegedly brought on behalf, and for the benefit, of a circumscribed group of consumers"). Moreover, several other circuits have taken a contrary view. *See, e.g.*, *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012) (rejecting a "claim- by-claim" approach that would distinguish between different requests for relief in a state attorney general's complaint, and holding that the state was the real party in interest with respect to all claims, including those for restitution, in its law enforcement action); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670-72 (9th Cir. 2012) (same); *LG Display Co. v. Madigan*, 665 F.3d 768, 772-74 (7th Cir. 2011) (same).[7] Accordingly, *Baldwin* has limited value as precedent on this point, and should not be followed.

**B. *Younger* Abstention Principles Foreclose an Injunction**

Mandatory abstention principles also preclude CenturyLink's proposed injunction. In *Younger*, the Supreme Court determined that a federal district court order enjoining a criminal prosecution in a California state court "must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings

---

[7] Though the real party in interest analysis in these cases and in *Purdue Pharma* was undertaken in the context of diversity jurisdiction, rather than sovereign immunity, the Eighth Circuit and other courts have opined that the standard is the same regardless of which purpose the analysis is used for. *See Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 826-27 (8th Cir. 2011) (collecting cases).

except under special circumstances." 401 U.S. at 41. It held that, in light of general principles of equity and comity, "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts [by a state actor] to enforce it" absent "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 55.

The Supreme Court has since expanded *Younger* abstention to encompass not only criminal prosecutions but also certain civil matters. Specifically, it has applied *Younger* to state enforcement actions "akin to a criminal prosecution in important respects," like those "initiated to sanction . . . the party challenging the state action [in federal court] . . . for some wrongful act." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). In *Trainor v. Hernandez*, 431 U.S. 434 (1977), for example, the Supreme Court instructed a federal district judge not to grant an injunction halting state court actions by the Illinois Department of Public Aid to recover welfare payments allegedly obtained through fraud. It reasoned "the principles of *Younger* and *Huffman* are broad enough to apply to interference by a federal court with an ongoing civil enforcement action such as this, brought by the State in its sovereign capacity." *Id.* at 444. *See also Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 551-55 (8th Cir. 2018) (discussing *Younger*). The Eighth Circuit and other courts have found *Younger* encompasses actions by state attorneys general to enforce consumer protection laws. *See, e.g.*, *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879-80 (8th Cir. 2002); *Williams v. State of Wash.*, 554 F.2d 369, 370 (9th Cir. 1977).

Here, *Younger* applies in full force.[8]  CenturyLink does not allege the Minnesota Attorney General undertook the Enforcement Action for an improper purpose, such as harassment.  Nor does it suggest that the state court adjudicating the Enforcement Action is unable to decide issues relating to restitution or to hear any constitutional claims CenturyLink wishes to raise.  Rather, like the state court defendants in *Younger* and *Huffman*, it seeks only to use a federal court injunction to defeat elements of the state court action against it.  This Court should reject CenturyLink's attempt.

## II.   THE ANTI-INJUNCTION ACT BARS CENTURYLINK'S PROPOSED INJUNCTION

Irrespective of the above sovereignty principles, the Anti-Injunction Act forbids CenturyLink's proposed injunction.  While the All-Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a), the Anti-Injunction Act specifically limits this authority.  The latter statute provides that a federal court may not grant an injunction to stay proceedings in a state court except in three instances: "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

The "core message" of the Anti-Injunction Act "is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2013).  The statute "broadly commands that those tribunals shall remain free from interference by federal courts" unless there exists a basis

---

[8] The fact that CenturyLink has not sued the Minnesota Attorney General directly does not change the analysis, given that application of *Younger*—like the Eleventh Amendment test described above—turns on the nature of the relief sought against the state actor.

to invoke one of the "three specifically defined exceptions." *Id.* The Supreme Court has construed the Anti-Injunction Act as "an absolute ban upon the issuance of a federal injunction against a pending state court proceeding" where none of these exceptions applies. *Mitchum v. Foster*, 407 U.S. 225, 228-29 (1972)

In line with Congress' intent, the Supreme Court has repeatedly emphasized that the three exceptions to the Anti-Injunction Act are limited in scope. In *Bayer*, its most recent opinion interpreting the statute, it reiterated that these exceptions "are narrow and are not to be enlarged by loose statutory construction." *Id.* (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)) (internal punctuation and further citation omitted). It also observed that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 297 (1970)). *See also Wisconsin Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (noting federal courts should use authority conferred by the All-Writs Act "sparingly and only in the most critical and exigent circumstances") (Rehnquist, C.J., in chambers).

CenturyLink's proposed injunction does not satisfy the standards set out above. As explained below, the injunction is not "necessary in aid of jurisdiction." Moreover, the other two exceptions to the Anti-Injunction Act are inapplicable. Thus, no basis for the injunction exists, and the Anti-Injunction Act precludes CenturyLink's request.

## A.   An Injunction Is Not "Necessary in Aid of Jurisdiction"

The existence of parallel federal and state court litigation does not, by itself, allow invocation of the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act. Nor may a federal court enjoin a state court proceeding simply because the state court has taken (or may take) some action the federal court believes is incorrect as a matter of law. *See Atlantic Coast Line*, 398 U.S. at 296 (noting "lower federal courts possess no power whatever to sit in direct review of state court decisions"). Rather, an injunction must "be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295.

The Supreme Court has distinguished between *in rem* and *in personam* actions in analyzing when a state court action impairs the preexisting jurisdiction of a federal court, expressly holding that the federal court's jurisdiction can be affected only in the context of an *in rem* proceeding. In *Kline v. Burke Const. Co.*, it stated:

> Where [an] action is *in rem*, the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. . . . But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an [*in personam*] action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.

260 U.S. 226, 229-30 (1922). *See also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) ("The traditional notion is that *in personam* actions in federal and state court may

13

proceed concurrently, without interference from either court, and there is no evidence that

the ["necessary in aid of jurisdiction"] exception to [the Anti-Injunction Act] was intended

to alter this balance.") (plurality opinion).  *Kline* remains good law, and continues to be

cited for the above distinction.  *See, e.g.*, *Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012);

*In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1251 (11th Cir. 2006).

Indisputably, the federal and state actions against CenturyLink are *in personam*

proceedings.  CenturyLink's argument that an injunction is permissible relies heavily on

cases that restrict the scope of *Kline* by analogizing complex class action litigation to a res

over which the federal court overseeing the litigation acquires jurisdiction.  *See*

CenturyLink Mem., ECF No. 423, at 11-14 (citing *In re Diet Drugs*, 282 F.3d 220, 234-36

& n.12 (3d Cir. 2002), *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 203-04 (3d Cir.

1993), *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985), and various district

court rulings).  These cases are inapposite for multiple reasons.

First, the Eighth Circuit has never adopted the "res" analogy some other courts have

used to limit *Kline*.  Indeed, its leading case on the "necessary in aid of jurisdiction"

exception follows the "narrow" interpretation of this exception set out in *Kline*.  *In re Fed.*

*Skywalk Cases*, 680 F.2d 1175, 1182 (8th Cir. 1982).  Notably, the Eighth Circuit observed

in this case that the plurality opinion in *Lektro-Vend* "reaffirmed [the Supreme Court's]

earlier holdings that a simultaneous *in personam* state action does not interfere with the

jurisdiction of a federal court in a suit involving the same subject matter."  *Id.* at 1183.

More recently, the Eighth Circuit again relied on *Kline* in holding the "necessary in aid of

jurisdiction" exception did not permit an injunction against parallel state court proceedings

in multidistrict securities fraud litigation. *See In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001). This Court should not deviate from the above precedent absent clear instruction to the contrary from the Eighth Circuit.[9]

Second, most of the decisions CenturyLink relies upon involved proceedings in state court initiated by private parties, rather than state attorneys general. Many concerns animating the "res" analogy, like the threat of perpetual and vexatious state court lawsuits subsequent to a federal court settlement, hold less weight in connection with enforcement actions brought by attorneys general. While the Second Circuit did enjoin state attorneys general from seeking restitution in *Baldwin*, later opinions have highlighted that ruling's narrow scope.[10] *See, e.g.*, *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013) ("[W]e decline to extend the holding of *Baldwin-United* beyond the exceptional circumstances of that case."); *Wyly*, 697 F.3d at 138-39 (distinguishing *Baldwin*).[11]

---

[9] Though CenturyLink cites several prior opinions of this Court in arguing the "necessary in aid of jurisdiction" exception may be used to enjoin parallel *in personam* actions, the opinions do not reference *Kline*, *Federal Skywalk*, or *BankAmerica*, and it appears these cases may not have been brought to the Court's attention in connection with the questions presented in the earlier matters.

[10] The Anti-Injunction Act did not apply in *Baldwin* because the states had not yet filed suit. 770 F.2d at 335. Instead, the court determined an injunction was permissible under the All-Writs Act. *Id.* Though the two statutes are construed similarly, the latter is arguably broader than the former in that it authorizes injunctions that are "appropriate" in addition to those that are "necessary." *See, e.g.*, *Diet Drugs*, 282 F.3d at 239. Here, the Anti-Injunction Act clearly applies.

[11] CenturyLink cites two other cases involving injunctions in connection with restitution claims by state attorneys general: *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014), and *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2013 WL 3463503 (E.D. Pa. July 10, 2013). In those cases, settlements in the federal court litigation were finalized long before the requests for injunctive relief were made, and the

Third, CenturyLink does not (and cannot) argue the Minnesota Attorney General is pursuing state court relief for an improper purpose. Courts willing to issue injunctions as "necessary in aid of jurisdiction" have often cited improper intentions on the part of state court litigants as justification. In *Baldwin*, for example, the trial judge enjoined restitution claims in light of his conclusion "that the state actions were improperly being brought for harassing and vexatious purposes and as a means of coercing the defendants to pay more funds into the federal settlement pool." 770 F.3d at 339. Similarly, in *Carlough*, the Third Circuit found injunctive relief proper in connection with a state court action it viewed as "a preemptive strike against the viability of the federal suit." 10 F.3d 189 at 203-04. *See also Diet Drugs*, 282 F.3d at 238 (noting the enjoined part of the state court lawsuit interfered with the federal action "by design"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202-03 (7th Cir. 1996) (criticizing "forum-shopping" on the part of state court litigants). Here, the Minnesota Attorney General did not bring the Enforcement Action to challenge or otherwise influence the private litigation before this Court.

Finally, the cases CenturyLink relies upon are distinguishable based on procedural posture. Many of those cases involved substantial expenditures of time and resources by the parties (and the court) in the federal forum, along with little activity and/or a later-filed action in the state forum. *See, e.g.*, *In re Uponor, Inc., F1807 Plumbing Fittings Prod.*

---

doctrine of *res judicata* was invoked. As discussed in more detail below, *res judicata* analysis—normally conducted under the "protect or effectuate judgments" exception to the Anti-Injunction Act, rather than the "necessary in aid of jurisdiction" exception—is inappropriate here because: (1) no settlement has been approved; and (2) the Minnesota Attorney General is not in privity with class members.

*Liab. Litig.*, 2012 WL 13065005, at \*11 (D. Minn. Jan. 19, 2012) (pointing out that the federal case "involve[ed] lengthy negotiations and a proposed settlement reached after years of motion practice and discovery and days of formal and informal arm's-length negotiations," and noting an injunction "[would] impact only a few existing lawsuits, all of which are in their infancy"); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1434 (D. Minn. 1993) (deeming injunctive relief proper based in part on "the long history of related litigation in this court").[12] Courts granted injunctions in those matters on grounds of efficiency and conservation of judicial resources. This case is far different: (1) the Minnesota Attorney General began investigating CenturyLink *years* before private litigation began; (2) the Enforcement Action was filed long before the private actions were consolidated in a multidistrict proceeding; (3) the Enforcement Action has involved comparable or greater expenditures of time and resources than the federal court litigation; and (4) the Enforcement Action is more advanced than the action before this Court.

Though CenturyLink suggests the nature and complexity of multidistrict litigation dampens the force of the Anti-Injunction Act, courts have rejected this position. The Second Circuit, for example, has stated that "our decision in [*Baldwin*] did not create a blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state proceedings." *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 427 (2d Cir. 2004). *See also Diet Drugs*, 282 F.3d at 236 (noting complex class actions

---

[12] As noted above, the state court proceedings enjoined in *Diet Drugs*, *Carlough*, and *Baldwin* were commenced only after it became clear that the federal actions were close to settlement, and were initiated for the purpose of challenging or otherwise evading the settlements in question.

are not, "by virtue of that characterization alone," exempt from "the general rule that *in personam* cases must be permitted to proceed in parallel"). The relevant inquiry in multidistrict proceedings, as in other actions, is "[whether] a parallel state action threatens to render the exercise of the federal court's jurisdiction nugatory." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 843-44 (9th Cir. 2005) (citation omitted). *Accord Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484-85 (7th Cir. 2015) (stating "an injunction is proper only when 'necessary' to protect federal jurisdiction") (quotation marks in original).[13]

Here, an injunction simply is not "necessary" to preserve this Court's jurisdiction. CenturyLink argues that an injunction will, in turn: (1) facilitate a global settlement and thus achieve finality; (2) promote "the nationwide uniformity of the settlement"; (3) avert confusion and delay in connection with opt-outs and claim administration; and (4) avoid duplicative litigation that would waste resources. *See* CenturyLink Mem., ECF No. 423, at 14-23. Each assertion is dubious. CenturyLink fails to explain why a state court order offsetting any restitution awarded in the Enforcement Action by the amount paid under a federal court settlement would be insufficient to address its concerns as to settlement economics, uniformity, opt-outs, and claim administration.[14] Moreover, given that an order

---

[13] *Cf. In re Glenn W. Turner Enterprises Litig.*, 521 F.2d 775, 779-81 (3d Cir. 1975) (declining to enjoin a state attorney general's action to collect on a state court judgment awarding restitution against a defendant who was also being sued by private parties in multidistrict litigation before a federal court).

[14] Though CenturyLink claims Congress wanted "to achieve uniformity in resolving nationwide claims such as those at issue here," CenturyLink Mem., ECF No. 423, at 19, it

enjoining the restitution claims would still leave much of the Enforcement Action pending, CenturyLink's claims regarding finality and conservation of resources lack merit.[15]

More importantly, CenturyLink's arguments invoke convenience, rather than necessity. Considerations of this kind do not warrant an injunction. *See, e.g.*, *Adkins*, 779 F.3d at 485 (stating "necessary" does not mean "whatever a federal court thinks is good litigation management"). Indeed, courts have held that contingencies such as the potential for the state court to issue a judgment first, the expected collapse of a proposed settlement due to a state court ruling, and the likelihood of delay resulting from a trial in the state court are insufficient to invoke the "necessary in aid of jurisdiction" exception. *See, e.g.*, *Adkins*, 779 F.3d at 483-86; *Retirement Systems*, 386 F.3d at 429-31; *Diet Drugs*, 282 F.3d at 234-36; *Nat'l Basketball Ass'n v. Minnesota Prof'l Basketball, Ltd. P'ship*, 56 F.3d 866, 872 (8th Cir. 1995).[16] As in *Atlantic Coast Line*, "the state and federal courts [have] concurrent jurisdiction in this case, and neither court [is] free to prevent [restitution claims] from [being] simultaneously pursu[ed] in both courts." 398 U.S. at 295.

---

offers no evidence that Congress intended for enforcement actions by state attorneys general—which are not class actions—to be enjoined on "uniformity" grounds.

[15] Nothing precludes CenturyLink from pursuing a true global settlement that would cover both claims by private litigants and enforcement actions by state attorneys general.

[16] "The possibility that a potential judgment in a subsequent state court suit might conflict with a prior federal judgment . . . is not a basis to enjoin the state court suit." *Schurkman*, 728 F.3d at 138. *See also In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 766 (7th Cir. 2017) (finding an injunction unnecessary to prevent "conflicting interpretations of written policies that overlap across the [federal and state] cases," as issue preclusion could address this concern).

## B. The Other Anti-Injunction Act Exceptions Are Inapplicable

The "protect or effectuate judgments" exception to the Anti-Injunction Act—often called the "relitigation exception"—is not relevant here. This exception "is founded in the well-recognized concepts of res judicata and collateral estoppel," and "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147. An "essential prerequisite" for its application "is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 148. Use of the relitigation exception must be kept "strict and narrow," and "an injunction can issue only if preclusion is clear beyond peradventure." *Bayer*, 564 U.S. at 306 (quoting *Chick Kam Choo*, 486 U.S. at 148).

Because this Court has not yet entered a judgment, the relitigation exception does not apply. CenturyLink implicitly concedes this, but conflates exceptions in arguing that the Ninth Circuit's ruling in *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014), supports its position that an injunction is "necessary in aid of jurisdiction."[17] In

---

[17] CenturyLink also asserts that the state court hearing the Enforcement Action will be required to dismiss the Minnesota Attorney General's restitution claims as *res judicata* after its proposed settlement is approved, and that the relitigation exception will allow this Court to enjoin the Enforcement Action in the event the state court fails to do so. CenturyLink Mem., ECF No. 423, at 26 n.4. As discussed below, however, *res judicata* cannot apply here because class members are not in privity with the Minnesota Attorney General. Moreover, this Court's authority would be limited in such a scenario. *See Bayer*, 564 U.S. at 307 & n.5 (stating"[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court" and observing that appellate review of "a state trial court's erroneous refusal to give preclusive effect to a federal judgment" is favored over an injunction) (citation omitted; emphasis in original).

fact, the holding in *IntelliGender* is based exclusively on the relitigation exception, and involves considerations unique to that exception. *See id.* at 1176-77. Given that "[a] distinction between the necessary in aid of jurisdiction exception and the relitigation exception has consistently been recognized in the caselaw," *Sandpiper*, 428 F.3d at 843 n.18, *IntelliGender* is inapposite.[18]

The "expressly authorized by Congress" exception to the Anti-Injunction Act is also inapplicable. This exception covers instances where "an Act of Congress [has] created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum*, 407 U.S. at 237. No act of Congress is implicated here.

## III. CENTURYLINK'S PROPOSED INJUNCTION IS INEQUITABLE BECAUSE IT WOULD HARM THE PUBLIC INTEREST

Even if an exception to the Anti-Injunction Act applies, a federal court injunction against state court proceedings may still be unwarranted. "[T]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 151 (1988) (emphasis in original). Any injunction

---

[18] In another case CenturyLink relies upon, *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2013 WL 3463503 (E.D. Pa. July 10, 2013), the federal court ostensibly based its decision to enjoin state court claims on the "necessary in aid of jurisdiction" exception. Nonetheless, given that the court's ruling addressed the effect of a preexisting settlement and was predicated on *res judicata* concerns, *Id.* at *8, *American Investors* is properly viewed as a relitigation exception case. It is inapposite here for the same reasons as *IntelliGender*.

must be "otherwise proper under general equitable principles." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970).[19]

The Eighth Circuit has listed a number of factors a district court should analyze in deciding whether to grant a preliminary injunction. These include: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Courts have routinely considered the *Dataphase* factors in connection with requests for injunctive relief under the All-Writs Act. *See, e.g.*, *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1020 (8th Cir. 2002); *In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996). A higher standard applies when the state court lawsuit is a quasi-criminal proceeding such as the Enforcement Action: the petitioner "must demonstrate a threat of great and immediate irreparable injury that cannot be eliminated by his defense to the state proceeding." *SDDS*, 97 F.3d at 1041 n.15 (quoting *Goodrich v. Supreme Court of S.D.*, 511 F.2d 316, 317 (8th Cir.1975)).

CenturyLink's proposed injunction is improper under general equitable principles because it would harm the public interest.[20] As explained below, injunctions such as the

---

[19] An injunction issued under the All-Writs Act must meet this standard irrespective of whether Rule 65 of the Federal Rules of Civil Procedure applies. *See In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 n.11 (7th Cir. 2017) (noting a circuit split on the Rule 65 question).

[20] CenturyLink's request also does not satisfy the other factors, as described in the separate Memorandum submitted by the Minnesota Attorney General. ECF No. 485, at 41-43.

one CenturyLink requests would: (1) encourage collusive "reverse auction" settlements in class action litigation; (2) result in lesser recoveries for victims of fraud and other misconduct; and (3) undermine the ability of state attorneys general to deter fraudulent and deceptive acts.  Accordingly, CenturyLink's motion must be denied.

### A.  An Injunction Would Harm the Public Interest by Incentivizing Collusive "Reverse Auction" Settlements in Class Action Litigation

Courts have frequently warned of the potential for abuse in connection with class action settlements.  As the Seventh Circuit recently stated, "[i]nequitable settlements are an unfortunate recurring bug in our system of class litigation."  *Pearson v. Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018).[21]  Settlements in the class action context "pose obvious conflict-of-interest problems" as a result of the incentives they create: "[f]rom the selfish standpoint of class counsel and the defendant . . . the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees."  *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1117 (10th Cir. 2017) (citation omitted).  As such, "class counsel may be tempted to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers."  *Id.* (citation omitted).[22]  In situations involving this kind of collusion, "class members receive little—but they have no control

---

[21] As noted above, the undersigned Attorneys General take no position in this brief on the proposed settlement in this matter. The purpose of this subsection is to describe general consequences that would result from injunctions such as the one CenturyLink proposes.

[22] *See also Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293-94 (7th Cir. 2010) (compiling sources discussing the problem of collusion in class action settlements).

over the litigation or the terms of settlement." *CE Design Ltd. v. King Supply Co.*, 791

F.3d 722, 725 (7th Cir. 2015).[23]

The risk of collusion increases where multiple class actions target the same

defendant—e.g., the scenario presented at the outset of multidistrict litigation. In such

instances, the defendant may exploit the situation by engaging in a "reverse auction." This

is "the practice whereby the defendant in a series of class actions picks the most ineffectual

class lawyers to negotiate a settlement within the hope that the district court will approve

a weak settlement that will preclude other claims against the defendant." *In re Cmty. Bank*

*of N. Virginia*, 418 F.3d 277, 308 (3d Cir. 2005) (quoting *Reynolds v. Beneficial Nat'l Bank*,

288 F.3d 277, 282–83 (7th Cir.2002)). *See also China Agritech, Inc. v. Resh*, 138 S. Ct.

1800, 1814-15 (2018) (Sotomayor, J., concurring) (observing that, where multiple putative

class actions cover the same harm to the same class, defendants may "pit[] the various class

counsel against one another and agree[] to settle with the lawyer willing to accept the

lowest bid on behalf of the class").[24]

---

[23] The Supreme Court has recognized that due process concerns may arise when a class action settlement extinguishes the right of absent class members to pursue damages. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-14 (1985). Under Federal Rule of Civil Procedure 23(e), the court is obligated to "protect[] unnamed class members from unjust or unfair settlements affecting their rights." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). This, however, "is a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008).

[24] Settlement negotiations prior to class certification "create the possibility of negotiation from a position of weakness by the attorneys who purports to represent the class," and may "result in denying other plaintiffs' counsel information that is necessary for them to make an effective evaluation of the fairness of any settlement that results." *In re Gen. Motors*

State attorneys general and other government officials serve an important role in countering class action settlement abuse of the kind referenced above. Under the Class Action Fairness Act of 2005, class action defendants must notify government officials of proposed settlements. 28 U.S.C.A. § 1715. *See also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013) ("Congress enacted the CAFA notice requirement to provide a check on inequitable settlements[.]") (citation omitted). An attorney general who learns of an abusive settlement thus has the ability to bring an enforcement action against the defendant to secure truly meaningful restitution for victims of fraud or other misconduct.[25] Indeed, the prospect of such action may deter class action defendants from entering into inequitable settlements in the first instance.

Injunctions like the one CenturyLink seeks—barring state attorneys general from seeking restitution against class action defendants who have resolved private claims— would hamper the ability of attorneys general and other government officials to police abusive settlements. Such injunctions would incentivize defendants to exploit "reverse auctions" to a greater extent, secure in the knowledge that the resulting settlements would thwart not only more effective private actions, but also efforts by attorneys general to

---

*Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995) (citations omitted).

[25] Though an attorney general can challenge an inequitable settlement in other ways as well (such as by filing an *amicus* brief objecting to the settlement), requiring the attorney general to do so or be barred from seeking restitution would not be good policy: it "would impose an onerous and extensive burden . . . to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention." *United States v. E. Baton Rouge Par. Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979).

obtain additional relief.  The proposal CenturyLink advances is, in fact, even more extreme: it would facilitate defendants' use of collusive settlements to terminate restitution claims in enforcement actions occurring *parallel* to class action litigation—even when the private lawsuits commence *later*.[26]  This outcome would clearly harm the public interest, and is not consistent with principles of equity.

### B.    An Injunction Would Harm the Public Interest by Ensuring Lesser Recoveries for Fraud Victims

Settlements in class action litigation ordinarily yield monetary recoveries for fraud victims that are much lower than these individuals' "make whole" amounts (i.e., the total dollar loss resulting from the misconduct).  The Supreme Court has noted that "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).  Frequently, however, these conditions are not met—especially in the class action context.  As such, "[s]ettlement value is not always acceptable[.]"  *Id.*

The class action mechanism tends to generate recoveries far below fraud victims' "make whole" amounts on account of multiple factors.  Most concerning, described above, is when collusion between class counsel and defendants occurs at victims' expense.  Even when arms-length bargaining takes place, however, more benign factors can impede significant recoveries on behalf of victims.  Class counsel typically receive a significant

---

[26] Class action lawsuits often "piggyback" off revelations from government investigations.

percentage (up to one-third) of the total settlement value in fees, reducing the amount available to the victims. Attorneys for the class may have fewer resources than the defendant (which is often a large corporation). In many instances—including this case— provisions in previously-signed adhesion contracts (such as mandatory arbitration clauses and class action waivers) may put class counsel in a poor negotiating position at the outset of litigation.[27]

State attorneys general and other government officials can frequently recover far more for fraud victims—up to the entire "make whole" amount—in enforcement actions against wrongdoers. Government officials are typically salaried employees who do not receive a personal financial benefit from settling enforcement actions. Additionally, government agencies frequently keep only a modest share of any recovery to cover costs and fees.[28] Issues that often pose challenges in class action lawsuits (like the contract provisions referenced above) tend to be less problematic in connection with government enforcement actions. Government officials can employ tools not available to private attorneys (including pre-litigation interviews and administrative subpoenas), and, as discussed below, may be subject to lighter burdens with respect to legal standards such as pleading requirements and statutes of limitation.

---

[27] Problems of this kind further incentivize collusion in contingent fee litigation because class counsel may opt to "sell out" the class to obtain certain fees now rather than an unlikely recovery later. *See generally* John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 386-93 (2000) (discussing conflicting incentives in class action litigation).

[28] Government officials may also be able to leverage other forms of monetary relief (e.g., civil penalties) to increase the amount of restitution obtained in enforcement actions.

The rule CenturyLink urges would harm the public interest by tethering state attorneys general and other government officials to the diminished recoveries private attorneys are able to obtain in class action litigation.[29] This would strip attorneys general of their ability to secure better recoveries—leading to windfalls for wrongdoers and ensuring that the victims of their misconduct are never made whole.[30] Outcomes of this kind run counter to equity and should not be incentivized.

### C. An Injunction Would Harm the Public Interest by Limiting the Ability of Government Officials to Use Restitution to Deter Wrongdoing

CenturyLink's proposal, if adopted generally, would also harm the public interest by undermining the deterrent effect of restitution obtained in government enforcement actions. Commenting on an order requiring a landlord to pay restitution in connection with unlawful collection of rent, the Supreme Court stated "it is not unreasonable . . . to conclude that such a restitution order is appropriate and necessary to enforce compliance with the [applicable rent statute] and to give effect to its purposes," given that "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains[.]" *Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946). It expanded on this reasoning in *Kelly*

---

[29] Government officials would be unable to avoid preclusion by settling their claims first, given that defendants—whose consent would be needed for this—would have strong incentive to resolve such claims only after settling the private claims and thereby securing preclusion.

[30] Opt-out rights do not sufficiently protect fraud victims in this scenario. In most class actions involving fraud, opting out and litigating one's individual claim is not economically feasible due to the claim's low value. *See, e.g.*, *Thorogood*, 547 F.3d at 744. Government officials are the only parties positioned to obtain "make whole" relief (or an amount closer to it) for fraud victims in these situations.

*v. Robinson*, observing that criminal restitution orders further deterrence because "the direct relationship between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine." 479 U.S. 36, 49 n.10 (1986). *See also United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 229 (3d Cir. 2005) (finding that a restitution order would deter future violations of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et. seq.*, by the defendants, and reasoning that "[s]uch a forward-looking deterrent effect is an important ancillary consequence of restitution").

Enjoining state attorneys general from seeking restitution on account of private settlements would undermine the deterrent effect of government enforcement actions and frustrate the intent of state legislatures in authorizing attorneys general to pursue these actions. Injunctions of this kind could enable repeat wrongdoers to treat sums expended in class action settlements (which, as noted above, are typically much lower than fraud victims' "make whole" amounts) as mere "costs of doing business." Because such an outcome would contravene equitable principles, CenturyLink's request must be denied.[31]

---

[31] CenturyLink does not address disgorgement—a remedy available to some, but not all, state attorneys general—in its brief or in its proposed order. Injunctions barring restitution claims by state attorneys general but allowing the attorneys general to seek disgorgement would serve little purpose—they would not promote efficiency or facilitate settlements—and it is unclear why such injunctions would be "necessary in aid of jurisdiction" under the All-Writs Act. On the other hand, injunctions prohibiting both restitution *and* disgorgement would clearly undermine the deterrent value of government enforcement actions.

## IV. STATE ATTORNEYS GENERAL ARE GOVERNED BY DIFFERENT LEGAL STANDARDS AND LACK PRIVITY WITH CONSUMERS IN STATE LAW ENFORCEMENT ACTIONS

CenturyLink incorrectly asserts that a settlement disposing of the private claims against it will bind the Minnesota Attorney General, even though the Minnesota Attorney General is not a party to the private litigation, because the Minnesota Attorney General is in "privity" with class members. This claim rests on three flawed premises: (1) that the legal issues before federal courts in class action lawsuits are the same as those before state courts adjudicating parallel government enforcement actions; (2) that class counsel can adequately represent the interests of state attorneys general and other government officials in private litigation; and (3) that attorneys general act in a "representative capacity." As explained below, these premises contradict settled principles of preclusion law reaffirmed by the Supreme Court in *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), and *Taylor v. Sturgell*, 553 U.S. 880 (2008). Accordingly, this Court's approval of a settlement in the instant matter will not preclude any aspect of the Enforcement Action, including the restitution claims.

### A. The Legal Issues in Federal Class Action Lawsuits Are Often Different from Those Before State Courts Hearing Government Enforcement Actions

Because enforcement actions brought by state attorneys general are governed by different legal standards than private class action lawsuits, courts hearing the former kind of action will typically confront different questions from courts adjudicating the latter. As noted above, attorneys general often bear lower burdens than private litigants, and may be unaffected by difficulties that would be insurmountable in private litigation (e.g., contract

provisions that limit relief).  This is true in Minnesota as well as in other states.  *See, e.g.*, *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 899 (Minn. 2012) (stating that, unlike the Minnesota Attorney General, "a private litigant does not have the right to obtain expedited discovery without [taking additional steps]" under Minnesota's consumer protection law); *State v. Danny's Franchise Sys., Inc.*, 517 N.Y.S.2d 157, 159 (N.Y. App. Div. 1987) (pointing out that private litigants who bring actions under a state franchise law are subject to a different statute of limitations than the New York Attorney General); *Com. ex rel. Stephens v. N. Am. Van Lines, Inc.*, 600 S.W.2d 459, 462 (Ky. Ct. App. 1979) (holding the Kentucky Attorney General, unlike private parties, can pursue violations of the state's consumer fraud law beyond those involving items intended for "personal, family, or household use").

Under these circumstances, preclusion requirements are not satisfied.  In *Bayer*, the Supreme Court held that a federal court may not enjoin a state court ruling on preclusion grounds where "a state court using the . . . [legal] standard [applicable in the state action] would decide a different question than the one the federal court [previously] resolved." 564 U.S. at 312.  Because "a federal court and a state court apply different law . . . they decide distinct questions" in this situation.  *Id.*[32]  Accordingly, preclusion cannot serve as

---

[32] The relitigation exception to the Anti-Injunction Act, discussed in *Bayer*, is "narrower" than "traditional principles of claim preclusion" in that it "only authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court."  *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1336 (11th Cir. 2014) (quoting *Bayer*, 564 U.S. at 306).  Outside this context, preclusion commonly applies to matters "that could have been litigated, but were not," as well as those that were "actually litigated and decided."  *Id.*  A *federal* court assessing whether to enjoin a state court proceeding on the basis of preclusion must use the narrower standard.  *Id.*  A

grounds for federal injunctive relief where a claim by a state attorney general is subject to a different legal standard than that of a private plaintiff.[33]

State law preclusion principles dictate the same result. In Minnesota, for instance, *res judicata* bars litigation of a subsequent claim where (among other requirements) "the earlier claim involved the same set of factual circumstances" and "the estopped party had a full and fair opportunity to litigate the matter." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (citing *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). Private claims often implicate different facts, such as contract terms that affect private parties but not state attorneys general. Moreover, in conducting "full and fair opportunity to litigate" analysis, "Minnesota courts will not apply *res judicata* . . . when effective litigation was limited by the nature or relationship of the parties." *Id.* at 972 (citing *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001)).[34] Private plaintiffs subject to more stringent legal standards cannot effectively litigate claims of attorneys general.[35]

---

*state* court determining whether to give preclusive effect to a prior decision (state or federal) may apply the "traditional" test. *Id.*

[33] In the instant matter, for example, the restitution claims of class members—unlike those of the Minnesota Attorney General—are subject to arbitration agreements and class action waivers. *See* Minn. Mem., ECF No. 485, at 22.

[34] Courts may also examine "whether there were significant procedural limitations in the prior proceeding [and] whether the [first] party had the incentive to litigate fully the issue." *Joseph*, 636 N.W.2d at 328 (citation omitted).

[35] The "flexible" doctrine of *res judicata* should not be applied where, as here, it would "work an injustice." *Foster v. State of Minnesota*, 888 F.3d 356, 359 (8th Cir. 2018) (quoting *Hauschildt*, 686 N.W.2d at 837).

## B.  Class Members Are Not in Privity with State Attorneys General

Under well-established principles of nonparty preclusion, class action settlements cannot bar restitution claims by state attorneys general.  The Supreme Court examined nonparty preclusion at length in *Taylor*, observing that "[a] person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit," and that "application of claim and issue preclusion to nonparties . . . runs up against the deep-rooted historic tradition that everyone should have his own day in court."  553 U.S. at 892-93 (citation omitted).  It held that a nonparty can be bound by the outcome of an earlier lawsuit only where he or she: (1) has agreed to be bound; (2) has a "pre-existing substantive legal relationship" with a party to the prior action; (3) was "adequately represented by someone with the same interests" who was a party to the prior action; (4) "assumed control" over the prior action; (5) "brings suit as the designated representative" of a party to the prior action; or (6) is subject to a particular statutory scheme that "expressly prohibits successive litigation [and] is otherwise consistent with due process."  *Id.* at 893-95 (citations and internal punctuation omitted).[36]  None of these exceptions applies in relation to enforcement actions brought by attorneys general.[37]

---

[36] *See also* Charles Alan Wright & Arthur R. Miller, 18A Fed. Prac. & Proc. Juris. § 4448 (3d ed.) (noting that a broader view of nonparty preclusion "under which preclusion could be asserted simply on the ground that the issues have been well litigated by a party who had a close identity of interests with the person to be bound" is no longer valid after *Taylor*).

[37] Because the first and sixth exceptions referenced above are clearly inapplicable here— and will rarely affect enforcement actions brought by attorneys general—the discussion below addresses only the other four categories referenced in *Taylor*.

i.   *Class Members Have No Substantive Legal Relationship with State Attorneys General*

State attorneys general do not have a "pre-existing substantive legal relationship" with class members of the kind described in *Taylor*.  This exception covers relationships that "originated as much from the needs of property law as from the values of preclusion by judgment," such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."  *Id.* at 894.  *See also Duckett v. Fuller*, 819 F.3d 740, 746 (4th Cir. 2016) (observing that the exception "is reserved for a variety of legal, property-based relationships").  The relationship between class members and attorneys general is not comparable.  *See, e.g.*, *Pelt v. Utah*, 539 F.3d 1271, 1290 (10th Cir. 2008) (stating "a substantive legal relationship as contemplated by the exception is one in which the parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues.").  The exception also cannot be invoked where the parties have different incentives—which, as discussed below, is true of class members as compared to attorneys general.  *See In re Montgomery Ward, LLC*, 634 F.3d 732, 738-39 (3d Cir. 2011) (finding that a trustee in bankruptcy did not have a substantive legal relationship with a debtor of the kind contemplated by *Taylor* where the incentives of the two were "misaligned").

ii.   *Class Members Cannot Adequately Represent State Attorneys General Because The Parties Have Different Interests*

Class members do not share the same interests as state attorneys general and thus cannot adequately represent attorneys general in litigation.  The Eighth Circuit has stated that "[r]arely will privity be found between a private party in one action and a party in a later action when the party in the later action is a governmental agency," given that

"[g]overnmental agencies have statutory duties, responsibilities, and interests that are far broader than the discrete interests of a private party." *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 889 (8th Cir. 2015) (citing *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1291 (11th Cir. 2004)). Furthermore, it has adopted "the well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." *Id.* (citing *Pemco Aeroplex*, 383 F.3d at 1291).

Many other courts have endorsed this principle as well, often in connection with litigation under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* In *Sec'y United States Dep't of Labor v. Kwasny*, the Third Circuit pointed out that "under ERISA's statutory framework, private plaintiffs do not adequately represent, and are not charged with representing, the broader national public interests represented by the Secretary [of Labor] in ERISA suits." 853 F.3d 87, 95 (3d Cir. 2017) (citing *Herman v. S.C. Nat. Bank*, 140 F.3d 1413, 1424 (11th Cir. 1998)). It concluded that, since "the Secretary's interest in maintaining the integrity of, and public confidence in, the pension system is broader than the interests of private litigants . . . the Secretary is not in privity with private litigants and is therefore not bound by the results reached by private litigation." *Id.* The Second, Fourth, Fifth, Seventh, and Eleventh Circuits have held similarly. *See Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 340 (4th Cir. 2007); *Herman*, 140 F.3d at 1423-26; *Beck v. Levering*, 947 F.2d 639, 642

(2d Cir. 1991); *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 692-94 (7th Cir. 1986) (en banc); *Donovan v. Cunningham*, 716 F.2d 1455, 1462-63 (5th Cir. 1983).[38]

Significantly, in a number of the cases referenced above, courts allowed restitution claims by government officials to proceed even though private lawsuits seeking monetary relief had previously been resolved. In *Kwasny*, for example, the Third Circuit affirmed an order awarding restitution for employee 401(k) plan losses to the Secretary of Labor, notwithstanding a prior judgment granting restitution to a particular employee of the firm in question. 853 F.3d at 95-96. Similarly, the Eleventh Circuit permitted the Secretary of Labor to seek restitution for ERISA violations in *Herman* despite a preexisting settlement in class action litigation brought by plan beneficiaries, noting that "[t]he national public interest in deterrence of asset mismanagement suffers if private parties can release claims against ERISA violators for negligible financial recovery and thereby immunize plan trustees and 'parties in interest' from ERISA violations." 140 F.3d at 1426. *See also Beck*, 947 F.2d at 642 (characterizing an argument "that the doctrine of res judicata prohibits the Secretary of Labor and the private plaintiffs from recovering monetary relief that duplicates the relief granted in [a] prior [ERISA] action" as "frivolous"). *Cf. Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016) ("The interests of a victim and the government in a restitution determination are not sufficiently similar for a finding of privity.").[39]

---

[38] *Cf. Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 690 (1961) (observing "the Government is not bound by private antitrust litigation to which it is a stranger").

[39] *See generally* Prentiss Cox, *Public Enforcement Compensation and Private Rights*, 100 Minn. L. Rev. 2313, 2349-68 (2016) (observing "the premise that seeking public compensation converts public enforcement into the equivalent of a private action is

Though the Eighth Circuit did not directly face the question of whether a private settlement can bar subsequent restitution claims by a government official in *Kratville*, its ruling in that case leaves no doubt as to its position. *Kratville* fully endorses the holding in *CFTC v. Comm'l Hedge Servs., Inc.*, 422 F. Supp.2d 1057 (D. Neb. 2006), quoting that opinion for the proposition that "quite apart from whether [particular] individual victims are satisfied with their private settlements, full and ample restitution, and other equitable remedies such as disgorgement of profits, serve distinct deterrence functions that are vital to the national public interest." 796 F.3d at 889 (citing *Commercial Hedge Services*, 422 F. Supp. 2d at 1061). In *Commercial Hedge Services*, the district court ruled that "when private parties settle their disputes without the approval or consent of the [Commodity Futures Trading] Commission, those settlements cannot preclude the Commission from later seeking additional or more full restitution or any other remedy." 422 F. Supp. 2d at 1061. [40] It observed that "even though a private litigant understandably may believe it wise to compromise claims to gain prompt and definitive relief, such a settlement does not further the broader national public interests represented by the Commission and reflected

---

incorrect," and analyzing differences between government enforcement actions and class action lawsuits in detail).

[40] This rule does not give class members "a second bite of the apple," as CenturyLink incorrectly suggests. A court that awards restitution in a government enforcement action should ordinarily offset such award by any sums paid to private plaintiffs in earlier litigation. *See, e.g.*, *Kwasny*, 853 F.3d at 95-96; *Beck*, 947 F.2d at 642; *Commercial Hedge Services*, 422 F. Supp. 2d at 1061. Because private litigants are not in privity with government officials, however, a private lawsuit cannot preclude the government from taking *its own* bite of the apple.

37

in Congress's delegation of . . . enforcement powers to the Commission." *Id.* at 1060-61

(citing *Herman*, 140 F.3d at 1426).

*California v. IntelliGender*, 771 F.3d 1169 (9th Cir. 2014), a decision upon which

CenturyLink heavily relies, is inconsistent with the weight of authority in this context and

should not be followed. *IntelliGender* assumes "[w]hen a government entity sues for the

same relief that plaintiff has already pursued then the requisite closeness of interests for

privity is present." *Id.* at 1179 (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 923

(9th Cir. 2003)). This, however, disregards the Supreme Court's guidance in *Taylor* (which

*IntelliGender* does not discuss): for preclusion to apply, the claimant must be "adequately

represented" in the prior lawsuit "by someone with the same interests." 553 U.S. at 894

(citation omitted).[41] As *Kratville* and other opinions referenced above make clear, private

parties have different interests from government officials in restitution determinations.

*Chao* and *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006), two cases upon which the

---

[41] *IntelliGender* also ignores relevant state law precedent. In *People v. Pac. Land Research Co.*, the California Supreme Court reasoned that "[a]n action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties," noting that "[t]he request for restitution . . . in such an action is only ancillary to the primary remedies sought for the benefit of the public. . . . [given that] such repayment is not the primary object of the suit, as it is in most private class actions." 569 P.2d 125, 129 (Cal. 1977). It further stated that "an action by the People lacks the fundamental attributes of a consumer class action filed by a private party" because the government official bringing the lawsuit "is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests, and the claims and defenses are not typical of the class." *Id.*

holding in *IntelliGender* relies, predate *Taylor* and should not have been used to find privity.[42]

State attorneys general, like the federal government agencies referenced in the above cases, represent interests broader than those of private plaintiffs when bringing enforcement actions. Like these agencies, they "seek to protect the integrity of . . . public market[s]," the "continued integrity and hence vitality of [which] ha[ve] huge [economic] implications." *Kratville*, 796 F.3d at 889 (citing *Commercial Hedge Services*, 422 F. Supp. 2d at 1060). Private litigants cannot adequately represent state attorneys general in this context. Accordingly, privity between them does not exist.

      iii.      *State Attorneys General Do Not Control Class Action Lawsuits or Represent Class Members in a Manner that Allows for Preclusion*

The "control" exception discussed in *Taylor* does not apply because state attorneys general typically have no control over private class action lawsuits. In *Montana v. United*

---

[42] *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2013 WL 3463503 (E.D. Pa. July 10, 2013), another opinion CenturyLink relies upon in support of its privity argument, similarly fails to take the Supreme Court's ruling in *Taylor* into account. *American Investors* also misapplies pre-*Taylor* preclusion case law addressing recoveries by the Equal Employment Opportunity Commission ("EEOC") to consumer protection actions brought by state attorneys general. *See id.* at *7-8 (citing *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489 (3d Cir. 1990)). Even if the holdings in *U.S. Steel* and other opinions finding privity in the EEOC context are still valid after *Taylor*, these holdings do not generalize given the unique role of the EEOC and the nature of its relationship with private plaintiffs. *See Herman*, 140 F.3d at 1426 n.22 (observing that EEOC cases do not support a finding of privity in the ERISA context, in part because the relevant statutory schemes are different); *Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1292 & n.11 (N.D. Ga. 2018) (differentiating EEOC matters from consumer protection cases brought under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45). Indeed, the Third Circuit's ruling in *Kwasny* makes clear that the reasoning in the earlier *U.S. Steel* opinion does not apply more broadly.

*States*—cited in *Taylor* in reference to this exception—the Supreme Court listed various factors that would suggest control over a lawsuit, such as "requir[ing] the . . . lawsuit to be filed," "review[ing] and approv[ing] the complaint," "pa[ying] the attorneys' fees and costs," and "direct[ing] [an] appeal." 440 U.S. 147, 155 (1979). *See also United States v. Bhatia*, 545 F.3d 757, 759-60 (9th Cir. 2008) (noting the control test turns on "whether the "relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings"). Attorneys general do none of the above things in private class action litigation.[43]

Nor do state attorneys general act as "designated representatives" or "agents" of class members. The Supreme Court warned in *Taylor* that "courts should be cautious about finding preclusion on this basis." 553 U.S. at 906. It stated that "principles of agency law are suggestive" as to the kind of representation giving rise to preclusion, and that such principles "indicate that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication." *Id.* The Supreme Court indicated that the test for control set out in *Montana* would again apply in this context. *See id.* at 906 n.13. *Cf. Fuller*, 819 F.3d at 746-47 (examining whether a plaintiff had acted "subject to the control" of a party bound by a previous result). Because government enforcement actions are not subject to the control of private litigants, attorneys general are not "designated representatives" or "agents" of these litigants.

---

[43] Though the Minnesota Supreme Court found in *Curtis* that the Minnesota Attorney General has a degree of authority over private lawsuits, 813 N.W.2d at 900-01, this authority does not rise to the level of necessary to find privity under *Taylor* and *Montana*.

## **CONCLUSION**

For the reasons set forth above, CenturyLink's Motion should be DENIED.


Dated: November 22, 2019                              Respectfully submitted,


                                                      KATHLEEN JENNINGS
                                                      Attorney General
                                                      State of Delaware


                                                      /s/ David Weinstein
                                                      DAVID WEINSTEIN
                                                      Deputy Attorney General
                                                      Delaware Bar Id. No. 6099

                                                      Delaware Department of Justice
                                                      820 North French Street
                                                      Wilmington, DE 19801

                                                      Telephone: (302) 577-8971
                                                      Email: David.Weinstein@delaware,gov

**ALSO SUPPORTED BY:**

MARK BRNOVICH
ATTORNEY GENERAL OF ARIZONA

LESLIE RUTLEDGE
ATTORNEY GENERAL OF ARKANSAS

XAVIER BECERRA
ATTORNEY GENERAL OF CALIFORNIA

PHIL WEISER
ATTORNEY GENERAL OF COLORADO

WILLIAM TONG
ATTORNEY GENERAL OF CONNECTICUT

KARL RACINE
ATTORNEY GENERAL OF DISTRICT OF COLUMBIA

ASHLEY MOODY
ATTORNEY GENERAL OF FLORIDA

CHRIS CARR
ATTORNEY GENERAL OF GEORGIA

CLARE CONNORS
ATTORNEY GENERAL OF HAWAII

LAWRENCE WASDEN
ATTORNEY GENERAL OF IDAHO

KWAME RAOUL
ATTORNEY GENERAL OF ILLINOIS

CURTIS HILL
ATTORNEY GENERAL OF INDIANA

TOM MILLER
ATTORNEY GENERAL OF IOWA

ANDY BESHEAR
ATTORNEY GENERAL OF KENTUCKY

AARON FREY
ATTORNEY GENERAL OF MAINE

BRIAN FROSH
ATTORNEY GENERAL OF MARYLAND

MAURA HEALEY
ATTORNEY GENERAL OF MASSACHUSETTS

DANA NESSEL
ATTORNEY GENERAL OF MICHIGAN

JIM HOOD
ATTORNEY GENERAL OF MISSISSIPPI

DOUG PETERSON
ATTORNEY GENERAL OF NEBRASKA

AARON FORD
ATTORNEY GENERAL OF NEVADA

GURBIR GREWAL
ATTORNEY GENERAL OF NEW JERSEY

JOSH STEIN
ATTORNEY GENERAL OF NORTH CAROLINA

WAYNE STENEHJEM
ATTORNEY GENERAL OF NORTH DAKOTA

DAVE YOST
ATTORNEY GENERAL OF OHIO

MIKE HUNTER
ATTORNEY GENERAL OF OKLAHOMA

ELLEN ROSENBLUM
ATTORNEY GENERAL OF OREGON

JOSH SHAPIRO
ATTORNEY GENERAL OF PENNSYLVANIA

PETER NERONHA
ATTORNEY GENERAL OF RHODE ISLAND

ALAN WILSON
ATTORNEY GENERAL OF SOUTH CAROLINA

HERBERT SLATERY
ATTORNEY GENERAL OF TENNESSEE

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

THOMAS DONOVAN
ATTORNEY GENERAL OF VERMONT

MARK HERRING
ATTORNEY GENERAL OF VIRGINIA

ROBERT FERGUSON
ATTORNEY GENERAL OF WASHINGTON

BRIDGET HILL
ATTORNEY GENERAL OF WYOMING