# Exhibit B - 8

**William Bell**
**925 Signal Road**
**Signal Mountain**
**TN 37377**
**wbell643@gmail.com**

Received

SEP 2 3 2019

by JNDLA

**September 19th, 2019**

Re: *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To whom it may concern:

I'm a part of the above class action suit because Equifax has previously confirmed that my personal information *was* inadequately protected by them while in their care. My confidential financial and other information was obtained (by who knows who), and-or was at risk of being obtained, thanks to Equifax's negligence.

I don't think the proposed settlement in the above case is fair or adequate, due to the very small amount of monetary compensation predicted to be received by data breach victims like myself.

I think Equifax needs to increase the funds ultimately available to those whose confidential information was mishandled by them.

I've never objected to the proposed settlement of any class action lawsuit before now.

I won't be attending the Fairness Hearing.

Thanks,
Bill Bell

William Bell
925 Signal Road
Signal Mountain TN 37377

CHATTANOOGA TN 373

USA FOREVER

SEP 2 3 2019

Equifax Data Breach Class Action
    Settlement Administrator
Attn: Objection
C/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

William Mitchell
9 W South Orange Ave, Unit 220
South Orange, NJ 07079

Received
SEP 23 2019
by JNDLA

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To the Honorable Judge Thrash and the Court:

As a settlement class member, I would like to object to the current Equifax breach settlement. I believe I am a member of the settlement class, as I have confirmed my eligibility through the settlement website (equifaxbreachsettlement.com) using my last name and last six digits of my SSN. I have not objected to any other class action settlements in the previous five years, nor indeed ever. I will not be able to attend the Fairness Hearing.

I object to this settlement because the terms of the settlement do not adequately compensate me for the harm caused by Equifax's mishandling of my data. Indeed, it seems like the settlement will probably not even amount to the cost of the postage stamp used to send this.

The case calls the breach the "Customer Data Security Breach." I want to be clear that I do not identify as a customer of Equifax. I did not give Equifax my data, nor do I directly purchase any goods or services from them. I am just a citizen. They gathered my data through operations with other entities, and they gave that data to malicious actors. They did not take basic security measures to protect it. That information is now *permanently and irrevocably* available.

I receive phishing attempts multiple times per week, whether via email or phone. While I attempt to be savvy in evaluating communications, personal information about me is a weapon that attackers can wield in social engineering. With this leak of data, it is now easier for attackers to "prove" their legitimacy. That threat will never end, and it will never go down. Equifax armed these attackers by failing to protect my data. In recompense, I am offered free credit monitoring, which (A) does not cover all sources of harm from this leak and (B) I already have for free through multiple services I *do* patronize. To be clear: an offer of free credit monitoring has zero value to me.

I view an alternative compensation of $125 as acceptable. While it does not cover the full scope of damage that could occur, it does proactively cover damages of which I may not learn within the next few years. However, capping the total amount of the settlement to reduce the payout to class members benefits Equifax at the cost of myself and other victims *who had no way of protecting ourselves against this*. It encourages repeated negligent behavior from both Equifax and the other credit bureaus. The number of claimants should be an indication of how important this is to each of us, not an excuse to minimize and normalize the harm to us. For this reason, I object to the capping of the cash payout in this settlement.

Sincerely,

2019-09-17



William Mitchell
9 W South Orange Ave, Unit 220
South Orange, NJ 07079

DW DANIELS
NJ 070
23 SEP '19
PM 4 L

SEP 23 2019

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

September 17, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objections
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received
SEP 2 3 2019
by JNDLA

Re: Equifax Inc. Customer Data Breach Litigation
    Case No. 1:17=md-2800-TWT

To Whom It May Concern:

As a confirmed member of the settlement class, I am writing to object to the terms of the Equifax data breach settlement. Personally, I feel deceived by the unfair terms of the settlement.

I was originally informed that I would receive $125 as a victim of the data breach who already has a credit monitoring service.  Now I learn that the under the terms of the settlement only $31 Million was allocated for victims. With over 147 million victims, this settlement equates to approximately $.21 per victim.  This is a ridiculously small amount given the damage Equifax has done to me by recklessly exposing my sensitive financial information.

I urge the court to reopen this lawsuit and obtain a fair and just amount of compensation for me and the other victims of Equifax's negligent actions.

I have not objected to any other class action settlement in the past five years.

I do not intend to appear at the Fairness Hearing.

Sincerely,

William F. Robinson, Jr.
11996 E. Ida Circle
Englewood, CO 80111



DENVER CO 802

18 SEP 2019 PM8 L

Robinson/Doerr
11996 E. Ida Circle
Englewood, CO 80111

SEP 2 3 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objections
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

In Regards To : Equifax Inc. Customer Data Security Breach Litigation

Hello,

I would like to submit my objection to the Equifax Data Breach settlement. No one gets to own my privacy. No one should be selling it, paying for it, or compensating me for it. Data theft affects anyone with an internet connection, bank account, credit card, or phone plan. It's unsettling that one company can have so much information to lose. Additionally, I find it inappropriate that "the amount [I] receive may be significantly reduced depending on how many ~~victims~~ valid claims are ultimately submitted..." It is very misleading to have "$125" as the headline.

Additionally, sending an email from the not-legitimate-sounding info@equifaxbreachsettlement.com is a particularly strange way to communicate. I ignored the email as spam, until I read about it weeks later in the news. A direct-mailing with clear instructions, perhaps notarized, would help make it seem like Equifax and all the lawyers were moderately empathetic.

Regards,

William Shonk

5653 Callowhill St.

Pittsburgh, PA 15206

Received
SEP 2 3 2019
by JNDLA

W. SHONIK
5663 CALLOWHILL ST. PITTSBURGH PA 150
PITTSBURGH, PA 15206   19 SEP 2019 PM 3 L

EQUIFAX DATA BREACH CLASS ACTION
SETTLEMENT ADMINISTRATOR
ATTN: OBJECTION
c/o JND LEGAL ADMINISTRATION
P.O. BOX 91318
SEATTLE, WA 98111 - 9418   SEP 2 3 2019

5811-S4818

# Letter of Objection

In re: Equifax Inc. Customer Data Security Breach Litigation

Case No. 1:17-md-2800-TWT



Received

SEP 2 0 2019

by JNDLA

Zlatko Dimitrioski

35-55 29th Street Apt. 2C

Astoria, NY 11106

Dear Honorable Thomas W. Thrash Jr.,

I entered my Last Name and Social Security Number into https://eligibility.equifaxbreachsettlement.com/en/eligibility and I got this message: "Based on the information you provided, our records indicate your personal information was impacted by this incident." Because of this, I am a member of the settlement class for the Equifax Customer Data Security Breach.

I object to the current class action settlement because it doesn't protect me against the misuse of my personal information due to the Equifax Inc. breach for the duration of my life. I feel so frustrated and misled!

The settlement provides credit monitoring for a limited amount of time. I cannot change my name, my social security number, or my date of birth, or any of my personal information – that information that was entrusted to Equifax Inc. is now available to any crook to misuse FOREVER.

Protection for 6 years, or $125 is simply not even close to compensating me for the stress, time spent on freezing credit, calling all credit bureaus, and uncertainty that I will face for the *rest of my life*. A crook can come in at 2026 and destroy me financially and emotionally by misusing my own data which I didn't even ask for Equifax Inc. to hold on to and Equifax Inc. will not be held responsible.

Finally, the settlement states that after the end of the monitoring period I will not be "UPSOLD" services, however, it doesn't state that I will not be "SOLD" services – which I will be forced to do since I will again be vulnerable after the monitoring ends. Equifax Inc. will profit from this breach since I will be forced to buy their services to protect myself from their negligence with my personal information. That is why I feel frustrated and misled that this settlement is fair and just – it is NOT.

I have never been part of any other class action and have never objected to any other class action suites. Unfortunately, I do not have the means to appear in the Fairness Hearing either in person or through a lawyer.

Sincerely,

Zlatko Dimitrioski

35-55 29th Street Apt. 2C

Astoria, NY 11106

U.S. POSTAGE $0.55
FCM LETTER
10003 0000
09/17/19
Date of sale
06 25SK
11488643

Zlatka Dimitriosa
35-55 29th st apt 2c
Astoria, NY 11106

SEP 2 0 2019

To:
Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection Administration
C/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418

1268 13th AV N
St. Cloud MN 56303
September 18, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received
SEP 23 2019
by JNDLA

re: In re: Equifax Inc. Customer Data Security Breach Litigation,
Case No. 1:17-md-2800-TWT

Dear Settlement Administrator:

I object to the settlement in this case as being woefully inadequate. I understand that a total of
$31,000,000 has been set aside for the 147,000,000 million customers who may have been affected by
the data breach. That works out to twenty-one cents per customer. I note that the attorneys fees are
$77,000,000 (not including expenses), so the attorneys are receiving about one and one-half times the
amount paid to customers who cannot (or do not want to) document the particular harm the Equifax
breach caused.

According to an Equifax news release – https://investor.equifax.com/tools/viewpdf.aspx?
page={9249D594-63F6-4AD4-8677-6C53C5DD32BF} – Equifax had income in 2018 of $3,800,000,000.
According to a news release from the FTC –
https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement – the
entire settlement is $425,000,000, or about 11% of one year's (2018) revenue of Equifax's. The
settlement amount apparently gives Equifax credit for providing services itself and is spread over a
number of years.

The settlement offers me the alternative of credit monitoring, which I already have through a different
source, so that is of no value. Overall, this settlement provides a negligible benefit to me, and seems
like just a cost of doing business to Equifax. I hope the Court will not approve such an inadequate
remedy.

According to https://eligibility.equifaxbreachsettlement.com/en/eligibility I was affected by the data
breach.

I have not objected to any class action settlements within the last five years.

I do not intend to appear at the Fairness Hearing.

Sincerely yours,

Sam Calvert



MINNEAPOLIS MN 554

18 SEP 2019 PM 3 L

SEP 23 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

1268 13th AV N
St. Cloud MN 56303

Equifax Data Breach Class Action Settlement Administrator          September 18, 2019
Attn: Objection
c/o JND Legal Administration
P.O.Box 91318
Seattle, WA 98111-9418

```
┌─────────────────────┐
│      Received       │
│                     │
│    SEP 23 2019      │
│                     │
│     by JNDLA        │
└─────────────────────┘
```

In re: Equifax Inc. Customer Data Security Breach Litigation
Case No. 1:17-md-2800-TWT

Your Honor,

My wife and I are objecting to the settlement because the company is making it so challenging
to get even a small amount of money ($125) given the extraordinary exposure to all our private
financial and personal information.  And now we learn that the company has actually set aside
enough money to pay each filer for relief an average of $.27 (acknowledged by the FTC), not the
$125 the FTC and Equifax originally said we can get (albeit meeting certain criteria, which we
do). As soon as we became aware of the breach and our exposure, we froze each of our
accounts at the three main credit bureaus. And we alerted our bank and investment company
of our exposure.

We were customers of Equifax for 4 or 5 years or more, I can't find exactly when we started but
I've not been able to talk to anyone from the company. We received notification from Equifax
long after the breach and certainly much longer after the patch was made known to the
company.

We have not been part of any class action suit that we're aware of in the last 5 years, nor have
we objected to any.

We do not plan to appear at the Fairness Hearing either in person or by representation.

Thank you for your consideration,

*Richard Skillman Jr.*

Richard Skillman Jr.
Sherene Zolno
25900 Pillsbury RD SW
Vashon, WA 98070

SEATTLE WA 980

19 SEP 2019 PM

SEP 23 2019

Skillman Zolon
25900 Pillsbury RD SW
Vashon, WA 98070

**Equifax Data Breach Class Action Settlement**
**Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O.Box 91318**
**Seattle, WA 98111-9418**

Received
SEP 03 2019
by JNDLA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 1:17-md-2800-TWT CONSUMER CASES |

### *PRO SE* OBJECTION TO CLASS CERTIFICATION, SETTLEMENT, ATTORNEY FEES AND INCENTIVE AWARDS

Plaintiff's Motion for Class Settlement [Doc. 739] should be DENIED.

"[E]stablishment of a grand-scale compensation scheme is a matter fit for *legislative consideration*"[1]. "Inequitable settlements are an unfortunate recurring bug in our system of class litigation."[2] Art. III denied such legislation like Amchem and Ortiz[3]—only that *asbestos* became *data breach* here. Fed. R. Civ. P. and Rule 23 were "written to further…justice", keeping "day in court" for "unsophisticated litigants".[4] Mock-up "fiduciary" "shall not abridge, enlarge or modify any substantive right"[5], i.e., dump unsophisticated absentees to earn a gold mine. When 93 plaintiffs each asks $2,500 *cash awards*—"perverse incentives for

---

[1] Amchem Prods. Inc. v. Windsor, 521 US 591, 622 (1997) (emphasized)
[2] Pearson v. Target Corp., 893 F.3d 980, 982 (7th Cir. 2018)(Wood, C.J.)
[3] Ortiz v. Fibreboard Corp., 527 US 815, 852 n.30 (1999)
[4] Surowitz v. Hilton Hotels Corp., 383 US 363, 373 (1966)
[5] 28 U. S. C. § 2072(b).

class representatives to place at risk potentially valid claims for monetary relief"[6], lawyers want $77.5 million **cash**, but legally unsophisticated absentees got fake news headlines—a bait-and-switch into *pro rata* "limited fund" dogfight—"[**cash**] payments will be substantially lowered" https://www.equifaxbreachsettlement.com

## I.    Objector Disclosures

Shiyang Huang ("Objector") is not an attorney nor legally trained, and wrote this <u>pro se</u> brief entirely. "Courts should…avoid unduly burdening [objecting] class members…class member [unrepresented by counsel] may present objections [below] technical legal standards."[7] But "[g]ood-faith objections can assist the court…under Rule 23(e)(2)".[8] Objector *verified* membership on settlement website and is a confirmed class member. See App'x for declaration.

Harvard Law's Laurence Tribe *admonished* class-settlement failures, e.g. <u>Amchem</u> and <u>Ortiz</u>—or what *parties*[9] want to retry here—***massacre of absentees, while mock "fiduciary" and figurehead plaintiffs feast a cash cow***. In last 5 years, Objector only opposed one unconstitutional settlement, appealed and briefed <u>pro se</u>.

-------------------------

[6] <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2559 (2011)
[7] <u>Committee Notes on Rules—2018 Amendment</u> at Subd. 23(e)(5)(A)
[8]  <u>2018 Committee Notes, supra</u> at Subd. 23(e)(5)(B)
[9] <u>Standard Fire Ins.Co. v. Knowles</u>, 133 S.Ct. 1345, 1349 (2013)(cleaned up)
 "A nonnamed class member is not a party…before the class is certified."

- <u>Schultz v. Edward D. Jones & Co., L.P.</u>, No. 4:16-cv-1346-JAR (E.D. Mo.)
- *Appealed,* <u>Schultz v. Huang</u>, No. 19-2158 (8th Cir.) (All briefs submitted)

To be clear, past objections only makes Objector *more* credible—because serial class-action settlers declare themselves "skilled" by *exactly* the same repetition.

## II.   Standards Of Named Plaintiffs' Standing

"A court is powerless…if no named plaintiff has standing."[10] Plaintiff must suffer injury-in-fact, "`an invasion of a legally protected interest' that is `concrete and particularized' and `actual or imminent, not conjectural or hypothetical.'"[11] "If the named plaintiff…fails to establish the requisite case or controversy'", no class is possible *at all*.[12] "[D]istrict court must determine that at least one named class representative has Article III standing to raise each class subclaim."[13] "The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'"[14] Art. III is only "relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm."[15]

---

[10]  <u>Frank v. Gaos,</u> 139 S.Ct. 1041, 1046 (2019)(per curiam)
[11]  <u>Nicklaw v. Citimortgage, 855 F.3d 1265, 1270 (11th Cir. 2017)</u>
[12]  <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1340 (11th Cir. 1994).
[13]  <u>Hines v. Widnall</u>, 334 F.3d 1253, 1256 (11th Cir. 2003)
[14]  <u>Huff v. N.D. Cass Co. of Ala.</u>, 485 F.2d 710, 714 (5th Cir.1973)
  "Old Fifth precedent"; <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir.1981)
[15]  <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996)

### III.   Class Certification Standard

"[M]oment of certification requires "heightene[d] attention,"…because certification effectively concludes the proceeding save…fairness hearing." [16] Proponents are *not* entitled to at least one attempt at class certification, which prevented repeating class litigations.[17] "The party seeking class certification has the burden of proof…A district court that has doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met.""[18] Class Certification must satisfy Rule 23(a) entirely and one part of Rule 23(b). [19] Rule 23(a) requires four prerequisites: (1) numerosity (2) commonality (3) typicality (4) adequacy of representation. [20] "A class representative must possess the same interest and suffer the same injury as the class members... Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[21] For Rule 23(b)(3), named plaintiffs must prove—that questions of law or fact common to

---

[16] <u>Ortiz</u>, 527 U.S. at 849 (quoting <u>Amchem</u>, 521 U.S. at 620)
[17] <u>Ewing Indus. Corp. v. Bob Wines Nursery, Inc.</u>, 795 F.3d 1324 (11th Cir. 2015).
[18] <u>Brown v. Electrolux Home Prods., Inc.</u>, 817 F.3d 1225, 1233-34 (11th Cir. 2016)
[19] <u>Comcast Corp. v. Behrend</u>, 133 S.Ct. 1426, 1432 (2013)
[20] <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1264-1265 (11th Cir. 2009).
[21] <u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314, 1322 (11th Cir. 2008)

the members of the class establish predominance and superiority.[22] "Where, after adjudication of the classwide issues, plaintiffs must still introduce individualized proof...legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)"[23].

## IV.    **_Amchem_ Barred Rule 23 Failures From Class Settlements**

_Amchem_'s denial of sprawling class-action collusion made it a textbook class-action failure since 1997. _Amchem_'s criticism has exact fit here, because they _are_ the same failures—the exposure here is now _data breach_—not _asbestos_.

First, _Amchem_ admonished Rule 23(a)(4) abuses and failures—class cannot be certified if "the class collapses into distinct groups of winners and losers."[24] "[C]lass representative must...possess the **_same interest and suffer the same injury_** as the class members"[25] **_This_** transaction, likewise, "makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others."[26] "Some class members suffer no [harm at all]...while others suffer [serious injuries]...The

_____

[22] Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013); Fed. R. Civ. P. 23(b)(3)
[23] Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)
[24] Valley Drug, 350 F.3d at 1189 (citation omitted)
[25] Wal-Mart, 131 S.Ct. at 2550.
[26] Amchem, 521 US at 610 (cleaned up).

exposure-only plaintiffs especially share little in common, either with each other or with the presently injured class members." <u>Amchem</u>, 521 US at 624. (cleaned up). Here, ***this*** settlement lets "presently injured" ones buffet up to $20,000/each, while cramming exposure-only victims into a forgettable "limited fund"—essentially— *"good luck, exposure-onlys, no documented injuries now, res judicata later."*

Next, <u>Amchem</u> blasted injurious "fiduciaries" for weaponing legal sophistry at unsophisticated absentees—***their own fiduciary clients***. Rule 23(a)(2) and Rule 23(a)(3) requires commonality and typicality of class claims for aggregate adjudication, but "when individual stakes are high and disparities among class members great… That certification cannot be upheld, for it rests on a conception of Rule 23(b)(3)'s predominance requirement irreconcilable with the Rule's design." <u>Id.</u> at 625. "[N]amed parties… sought to act on behalf of a single giant class rather than on behalf of discrete subclasses…the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." <u>Id.</u> at 626. (emphasis added). Rule 23(e) bars Plaintiffs who are "fainthearted before the action is adjudicated". <u>Id.</u> at 623. All 93 plaintiffs here got bought-off, $2,500

illegal and perverse[27] payoffs each, failing "same interest and same injury" rule. [28]

Third, <u>Amchem</u> slammed class counsels' crocodile tears—"with an already enormous fee within counsel's grasp, zeal for the client may relax sooner"[29]. "The disparity between the currently injured and exposure-only categories of plaintiffs, and the diversity within each category are not made insignificant...the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability...The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."[30] Such abusive settlement "cannot carry the large load" to satisfy Rules Enabling Act. <u>Id.</u> at 629. Plaintiffs' voluminous file dump, to overwhelm court, is filled with "not precedents...unrelated issues...taken out of context...illustrat[ing] the regrettable tendency...to substitute citations for analysis."[31] Contrarily, <u>Amchem</u> was denied, <u>twice</u>[32]—and fits word-by-word here.

---

[27] <u>Trustees v. Greenough</u>, 105 US 527, 538 (1885); <u>Wal-Mart</u>, 131 S.Ct at 2559.
[28] <u>Wal-Mart</u>, 131 S.Ct at 2550; <u>Busby</u>, 513 F.3d at 1322.
[29] <u>Ortiz</u>, 527 US at 852 n.30
[30] <u>Amchem,</u> 521 US at 626-27.
[31] <u>Harzewski v. Guidant Corp.</u>, 489 F.3d 799, 807 (7th Cir. 2007)(Posner, J.)
[32] <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610 (3d Cir.1996), <u>aff'd.</u>
  <u>Amchem Prods., Inc. v. Windsor</u>, 521 US 591 (1997)

## V.   Settlement Left No "Live" Article III Case-or-Controversy

| Settle with… | Only *Parties* who settled | | Nonparty till Approval |
|---|---|---|---|
| Trial Class | The class and counsel | Defendants | *No one* |
| Plaintiffs | Plaintiffs & lawyers **only** | Defendants | ***3rd parties—injured*** |

"A nonnamed class member is not a party…before the class is certified."[33]

While **parties** salivate mutual benefits "deal" that only re-injures absentee class,

"jurisdiction cannot be conferred by consent, the district court should be leery of

any stipulations the parties offer".[34] "[W]ithout subject matter jurisdiction, the

court is powerless to continue."[35] "The controversy must be definite and concrete,

touching the legal relations of parties having adverse legal interests."[36]

"Only a properly certified class may succeed to the ***adversary*** position of a

named plaintiff"[37]. But settlements axiomatically has no adversary left to certify

**any** class. Rule 23 prevents economic "inability of **parties** to…***litigate***[] in federal

courts."[38] Only "certification of a suit as a class action…will bind all…members of

the class"[39] as **parties** to a lawsuit. Rule 23 is only for **parties** in "***adversary***

---

[33] Standard Fire, 133 S.Ct. at 1349 (cleaned up)
[34] Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 (11th Cir. 2000)
[35] Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)
[36] Aetna Life Ins. Co. v. Haworth, 300 US 227, 240-241 (1937).
[37] US v. Sanchez-Gomez, 138 S.Ct. 1532, 1539 (2018)
[38] Snyder v. Harris, 394 US 332,338 (1969)(emphasized).
[39] Sosna v. Iowa, 419 US 393,399 n.8 (1975).

*position"*, not *after* they **extinguished** their own claims, because only "attorney's fee[] is…insufficient to create an Article III case or controversy"[40]. *Third parties* had no parties to represent them for certification—no claims are "live" anymore.

　　"[U]naccepted settlement offer has no force…with the offer off the table… adversity between the parties persists."[41] Also true is the **opposite—Settlement extinguished Article III adversity of parties** before binding unnamed victims, especially when Plaintiffs and counsel both owe a high bar of fiduciary duty. "[A]bsent a genuine adversary issue between parties, federal court may not safely proceed to judgment."[42] "[A]pproved settlement takes the form of a judgment of the court, and without both Article III power and proper subject-matter jurisdiction, the court cannot act."[43] Article III is not legislation bypass, and <u>Amchem</u> was denied to exactly "avoid a serious rend in the garment of the federal judiciary that would result from the Court, even with the noblest motives, exercising power that it lacks"[44], in light of "serious doubts as to the existence of the requisite jurisdictional amount, justiciability, adequacy of notice, and personal jurisdiction

―――――――――――――――

[40] <u>Lewis v. Continental Bank Corp.</u>, 494 US 472,480 (1990) (citation omitted)
[41] <u>Campbell-Ewald Co. v. Gomez</u>, 136 S.Ct. 663,666 (2016).
[42] <u>Arizonans for Official English v. Ariz.</u>, 520 US 43, 71 (1997)(cleaned up)
[43] <u>Schumacher v. SC Data Center, Inc.</u>, 912 F.3d 1104, 1105 (8th Cir. 2019) (quoting <u>Robertson v. Allied Sols., LLC</u>, 902 F.3d 690, 698 (7th Cir. 2018))
[44] <u>Georgine</u>, 83 F.3d at 617-618; <u>aff'd</u>, 521 US 591 (1997).

over absent class members"[45], and "federal court has no power to issue a judgment in a case unless it involves an actual controversy between adverse parties in an adversary proceeding." [46] (citing The Declaratory Judgment Act, 28 U.S.C. § 2201).

Hoping objections are too onerous for unsophisticated victim absentees, lawyers made figurehead puppet Plaintiffs agree to a deal injurious to absentees, but maximizes fees terms liked by Plaintiffs' lawyers themselves.[47] "[Defendants] lost its incentive to challenge" when parties settle.[48] Moreover, "there is no real dispute between the plaintiff and defendant…their interest in the question brought here for decision is one and the same, and not adverse; and that in these proceedings the plaintiff and defendant are attempting to procure the opinion of this court… in the decision of which they have a common interest opposed to that of other persons, who are not parties to this suit."[49]

In Sosna[50], named plaintiffs, *after certification,* can have their own claims

---

[45] Georgine, 83 F.3d at 617-618; aff'd, 521 US 591 (1997).
[46] Vorbeck v. Schnicker, 660 F.2d 1260, 1265 (8th Cir.1981)
[47] See Redish, Martin H. and Kastanek, Andrianna D. Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process, Univ. Chi. L. Rev. Vol. 73 : Iss. 2 , Article 2. (2006).
[48] In re Southwest Airlines Voucher Litig., 799 F.3d 701, 714 (7th Cir. 2015).
[49] Lord v. Veazie, 49 US 251, 254 (1850).
[50] Sosna v. Iowa, 419 U.S. 393 (1975)

mooted to continue litigation. In Geraghty[51] and Roper[52], named plaintiffs, while their claims mooted *without of an agreement to settle*, can seek appeal of adverse certification rulings. Simply, Plaintiffs here, ***agreed to settle*** before a class was certified, mooting their own claims. "The effort to obtain court approval [of settlement] entails the suspension, if not termination, of hostilities…judges no longer have the full benefit of the adversarial process."[53] Having adverse parties is irreducible—Plaintiffs are wasting Article III judiciary's time to "advise a deal".

## VI.   Plaintiffs Have Nothing To Qualify Daubert Admissibility

"[A]t the class certification stage, the trial court can and should consider the merits of the case [*only*] to the degree necessary" to satisfy Rule 23 requirements.[54] Full *Daubert* test is the prevailing approach in 11th Circuit for class certification. "[T]he district court must perform a full *Daubert* analysis before certifying the class".[55] Sher / Local 703 formed Circuit's ***full Daubert*** rule at class certification.

Sadly, Plaintiffs have flunked for *Daubert* exam, knowing nothing on class

---

[51] U.S. Parole Comm'n v. Geraghty, 445 US 388 (1980)
[52] Deposit Guaranty Nat. Bank v. Roper, 445 US 326 (1980)
[53] Scardelletti v. Debarr, 265 F.3d 195, 208 (4th Cir. 2001)
(quoting Bell Atl. v. Bolger, 2 F.3d 1304, 1310 (3d Cir.1993))
[54] Sher v. Raytheon Co., 419 F.App'x 887, 890 (11th Cir. 2011)(unpublished)
[55] Local 703 v. Regions Financial Corp., 762 F.3d 1248, 1258 n.7 (11th Cir. 2014)
  (quoting Am. Honda Motor Co. v. Allen, 600 F.3d 813, 815-16 (7th Cir.2010)

damages that the class will suffer in future. Indeed, "confirmatory discovery"[56] is only *window dressing* for mock "fiduciaries" to ink a deal that get themselves *cash attorney fees now*, but absentees will bite forever identity theft dust—*future harms*. Those who decided to settle, gave up nothing at all—attorney get their fat check, arguably "more" beyond statutory lodestars; currently injured got VIP claim forms up to $20,000; but exposure-only class members is left with *lip service*— credit monitoring, *at best*, might alerts *future* harm, but hardly saves future risks and damages—worse, after "monitoring" expires, victims still haunted by Equifax breach, will bite *res judicata*, or negative-value suit—same as without class actions.

## VII.   Zeal For Attorney Fees Led To Ballooned Coupon Valuation

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action … [courts] must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid."[57] Credit monitoring "coupon" value here got *wildly* overvalued—to boost attorney fees, while taxing class member recoveries and avoiding money-change-hands for Defendants.

---

[56] ECF 739-2 at 5.
[57] Committee Notes on Rules—1998 Amendment at Subd. 23(h)

"CAFA directs courts to apply heightened scrutiny to coupon settlements."[58] (citing 28 U.S.C. § 1712(e)). "In CAFA's findings and purposes, Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.""[59]

Cash relief, unlike credit-monitoring "coupons", has "not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products." Id. at 952.

"[I]nterests of class members and class counsel nearly always diverge… class counsel may "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.""[60] It is worse, when "class counsel is paid in cash, and the class is paid in some other way, for example, with coupons"[61] "[A]buse is greatest when the coupons have value only if a class member is willing to do business again with the defendant who has injured her in

_____

[58] In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015)
[59] Id. at 950 (citing C.A.F.A., Pub.L. No. 109-2, § 2, 119 Stat. 4 (2005)).
[60] In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013) (quoting Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir.2003);
Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir.1991))
Also see Nick Landsman-Roos, Front-End Fiduciaries: Precertification Duties and Class Conflict, 65 Stan. L. Rev. 817 (2013).
[61] HP Inkjet, supra at 1179.

some way"[62]. Here, "credit monitoring" are coupons, because it buys and can buy

only one thing—***monopoly-priced*** credit monitoring products from Defendants.[63]

Here is how settlers inflated basis of attorney fees under the coupon pricing.

- ECF 739-1 at 8: "Four years of three-bureau credit monitoring and identity protection services through Experian ($1,200 value) and an additional six years of one-bureau credit monitoring through Equifax (valued at $720)."

- Compare with App'x—Experian prices 3-bureau credit monitoring and identity protections at $99.99 / year / person. 4 years = $400, not $1,200

- Compare with App'x—6-year, three-bureau Experian deal is only $600 ***and*** is much better than 6-year Equifax-only deal—requiring substantial discount under the ***actual*** Experian deal (~$200) and not $720 value

  **After myth-busting**, "Coupon value" dwarfed to under $100 million.
  25% in $100 million is only $25 million, not $77.5 million attorney's fees.

- The coupons, first, forces Class members to do business with Equifax, who leaked data in the first place, and now wants to "tax" above $$$ differences

- ***A few years of*** 1-bureau, Equifax-only monitoring, while marginally better than nothing, is ***realistically same as nothing*** when risk is ***forever.***

  *"You need a service that watches your files at all three major credit bureaus, not just one. Otherwise, it's like locking one door and leaving two open."* [64]

Lastly, A-Z efforts from State and Federal agencies went way beyond mock

─────────────────

[62] In re Southwest Airlines Voucher Litig., 799 F.3d 701, 706 (7th Cir. 2015)
[63] See, e.g. Karl Bode, The Equifax Settlement Is A Crude Joke.
www.vice.com/en_us/article/d3agv7/the-equifax-settlement-is-a-cruel-joke
[64] Bev O'Shea, Why Credit Monitoring Services From Credit Bureaus Fall Short
www.nerdwallet.com/blog/finance/comparing-credit-bureau-monitoring-services

fiduciaries' routine pretrial paperwork, or "confirmatory discovery"[65] window dressing before the parties rush for outlandish fee feast with absentee-class as the burned charcoal. Plaintiffs were not lone investigators who sniffed out disasters on their own. Federal agencies, 50 States' Attorney Generals were fully involved in this data breach saga. "Those contacts"[66] with Equifax in 2017 is no green-light to gigantic fees and abusive sell-out of class members under Rule 23, or Article III.

## VIII. 93 Plaintiffs' Illegal Incentives Are Perverse And Pointless

First, incentive awards are illegal against "consistently followed" common-fund rules, repeated in Alyeska Pipelines[67], Boeing[68], and US Airways, supra.

> "This Court has "recognized consistently" that someone "who recovers a common fund for the benefit of persons other than himself" is due "a reasonable attorney's fee from the fund as whole." [Boeing, 444 US at 478]. We have understood that rule as "reflect[ing] the traditional practice in courts of equity." Ibid.; see [Sprague v. Ticonic Nat. Bank, 307 US 161, 164-166 (1939)]; [US Airways, 133 S.Ct. at 1548]. And we have applied it in a wide range of circumstances as part of our inherent authority. See [Boeing, 444 US at 474, 478]; [Hall v. Cole, 412 U.S. 1, 6-7 and n. 7 (1973)]; [Mills v. Electric AutoLite Co., 396 US 375, 389-390, 392 (1970)]; [Sprague, 307 U.S., at 166]; [Central Railroad & Banking Co. of Ga. v. Pettus, 113 U.S. 116, 126-127 (1885)]; [Trustees v. Greenough, 105 U.S., 527, 528, 531-533 (1882)]."[69]

---

[65] ECF 739-2 at 5.
[66] ECF 739-1 at 4.
[67] Alyeska Pipeline Service Co. v. Wilderness Society, 421 US 240 (1975)
[68] Boeing Co. v. Van Gemert, 444 US 472 (1980)
[69] US Airways, Inc. v. McCutchen, 133 S.Ct. 1537, 1550 (2013)

Notably, last two common-fund rulings in the quote—Pettus and Trustees, slammed "incentive awards" outright, because such "salary" charged to common-fund "would present too great a temptation to parties to intermeddle"[70] and harm usually legally unskilled class members, who are nevertheless "equitable owners of their respective shares in the recovery"[71]. Nor do plaintiffs have any *standing* to seek incentives—there is no injury, traceable to, redressible by absentee members.

Second, Plaintiffs fails recent Muransky [72] test from 11th Circuit-- "incentive awards must be supported by "legitimate considerations" sufficient to "dispel the cloud of collusion which such a settlement suggests.""[73] Incentive awards here are "perverse incentives"[74] to sell-out absentee claims—as they cheer $2,500 checks on the sideline, absentees are sent into limited-fund dogfight—not even the $250 promised (clever "*up to*" clickbait). Third, the fact that 93 Plaintiffs in this MDL sued Equifax is enough to say, that "inducing" Plaintiffs is totally unnecessary. "Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced

---

[70] Greenough, 105 US at 538; Also quoted in Pettus, 113 US at 122.
[71] Boeing, 444 US at 482
[72] Muransky v. Godiva Chocolatier, Inc., 922 F. 3d 1175, 1196-97 (11th Cir. 2019)
[73] Id. (citing Holmes v. Continental Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983)
[74] Wal-Mart, 131 S.Ct. at 2559

16

federal judge knows that any statements to the contrary [are] sheer sophistry."[75] There is not too-few plaintiffs—in fact, too many. They are all indistinguishable figureheads, no clue of "fiduciary duty" they have—because "[c]lass actions are the brainchildren of the lawyers"[76], crocodiles tearing for $77.5 million deal fees.

## IX.   Plaintiffs Failed To Distinguish State-Law Claims

As a privacy invasion tort claim, the Court shall consider "how Georgia courts determine the applicable law in tort cases."[77] Georgia generally follows the doctrine of *lex loci delicti*[78], which applies the substantive law of the place where the wrong occurred.[79] "'[T]he place of the wrong, the *locus delicti*, is the place where the injury was suffered . . . or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for the alleged tort takes place.'"[80] Jurisdiction from where each putative class member suffered harm would apply to the class claims. However, the Georgia choice of law system has a unique exception if the *lex loci delicti* is foreign law. Due Process also requires

---

[75] Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002).
(quoting Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 n.9 (3d Cir.1973)
[76] Eubank v. Pella Corp., 753 F.3d 718,719 (7th Cir.2014)(Posner, J.)
[77] Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc., 713 F.2d 1500, 1503
(11th Cir.1983)( resolution to the choice of law rules of the forum state)
[78] Dowis v. Mud Slingers, Inc., 279 Ga. 808, 816 (2005).
[79] International Bus. Machs. Corp. v. Kemp, 244 Ga. App. 638, 640 (2000).
[80] Risdon Enters, Inc. v. Colemill Enters, Inc., 172 Ga. App. 902, 903 (1984).

Georgia with "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [Georgia] law is not arbitrary or unfair."[81] Plaintiff must analyze state law variations and discuss whether diversity class memberships and multiple state-law variations prohibit class certification.[82] "[I]t is 'the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law.'"[83] Plaintiffs' state law analysis is totally absent. "Failure to engage in an analysis of state law variations is grounds for decertification."[84] Plaintiffs have "failed to articulate adequately how these variations in state law would not preclude predominance".[85]

Plaintiffs also failed Rules Enabling Act—barring Rules to "abridge, enlarge, or modify" substantive rights.[86] "Roughly estimating damages to the class as a whole and only subsequently allowing for processing of individual claims

---

[81] Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985).
[82] Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180 (11th Cir. 2010) (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986)).
[83] Id. (quoting Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 313 (5th Cir. 2000)).
[84] Cole v. General Motors Corp., 484 F.3d 717, 724 (5th Cir. 2007).
[85] Id. at 726.
[86] 28 U.S.C. § 2072(b)

would inevitably alter defendants' substantive right to pay damages reflective of their actual liability."[87] The damages calculation will neither accurately reflect the number of class members actually injured nor the amount of harm actually caused by the defendants.[88] "[I]ndividual damages defeat predominance when they are accompanied by 'significant individualized questions going to liability.'"[89]

"[T]he individual nature of affirmative defenses is still relevant to whether predominance is satisfied."[90] Plaintiffs failed predominance, because they only want a check that Equifax promised them for kicking absentees under the bus.

## X.    Last Note

The "Old Fith" precedential <u>Johnson</u>[91] settlement factors are not discussed in much detail here. Because the settlement is a part of "a staged performance", but "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted— that if a settlement is "fair," then certification is proper."[92]

-------------------------

[87] <u>McLaughlin v. American Tobacco Co.</u>, 522 F.3d 215, 231 (2d Cir. 2008)
[88] <u>Id.</u>
[89] <u>Id.</u> (quoting <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1251 (11th Cir. 2004)).
[90] <u>Brown</u>, 817 F.3d at 1240.
[91] <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).
[92] <u>Amchem</u>, 521 U.S. at 621-622 (citation omitted)

## XI.    Conclusion

This settlement-class copycat of <u>Amchem</u> should be denied entirely.

***Parties*** to got ***cash relief.   Nonparties*** really got ***no relief***—and no future injuries protection in this feigned deal. Inflation of settlement "coupon value" are only public stunts for raising attorney's fee basis—"…too often, class counsel [settles] with substantial attorneys' fees but meager benefits…Named plaintiffs fail…ethical obligations as fiduciaries to the class."[93] "[C]urrent record does not adequately dispel the possibility that class counsel bargained away a benefit to the class in exchange for their own interests."[94]   Only if the Court, however, upholds the Settlement, Objector requests reasonable financial awards under Court's discretion and Fed. R. Civ. P. 23(e) for attorney fee reductions—"Good-faith objections can assist the court…It is legitimate for an objector to seek payment"[95].

Dated: August 31, 2019                          Respectfully Submitted,

                                                          /s/   _____

                                                          Shiyang Huang (*pro se*)

---

[93] <u>Pearson,</u> 893 F.3d at 982.
[94] <u>In re Bluetooth Headset Prods. Liability Litig.,</u> 654 F.3d 935, 938 (9th Cir. 2011).
[95] <u>Committee Notes on Rules</u>—2018 Amendment at Subd. 23(e)(5)(B);

## DECLARATION OF OBJECTING CLASS MEMBER

1. Objector Shiyang Huang[96] is a class member as proven by both Equifax's 2017 Data Breach notification, and by EquifaxBreachSettlement.com's verification tool. Settlement Website's verification confirmation is attached.

2. Objector is in the "exposure-only" category—Objector has no claimable losses as of now, but the exposure-risk of such injury will continue forever.

3. Objector intends to claim credit monitoring coupons and financial payments for hours spent handling the breach impact, including e.g. aftermath of unauthorized card charges and set up of credit fraud alerts.

4. Objector prepared this brief without help from *anyone,* drawing only past objection against unconstitutional, abusive class-action settlements.

5. Objector does not intend to appear at the fairness hearing now, but reserves right to file Notice to Appear after Plaintiffs' fee motions, as necessary.

Dated: August 31, 2019

Respectfully Submitted,

/s/

Shiyang Huang (*pro se*)

_____

[96] Address: 2800 SW Engler Ct., Topeka, KS 66614;
Phone: (314) 669-1858;
Email: defectivesettlement@gmail.com

21

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2019, I mailed the foregoing as instructed

by the settlement notice. Participants in the case will be served by the settlement

administrator and CM/ECF while Objecting Class Member has fulfilled all

requirements set in the Settlement Notice regarding instructions for objections.

Clerk of the Court
Attn: 1:17-md-2800-TWT
United States District Court
Northern District of Georgia
75 Ted Turner Dr., SW
Atlanta, GA 30303-3309

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Date: August 31, 2019

/s/ _____
Shiyang Huang (*pro se*)

22

# EQUIFAX DATA BREACH SETTLEMENT

## Thank You

Based on the information you provided, our records indicate your personal information was impacted by this incident.

For more information, visit the **FAQ page.**

FILE A CLAIM

23

## EXHIBITS OF EXPERIAN CREDIT MONITORING PRICING

<u>Price As Shown: $99.99 per-person, per-year; even cheaper with more individuals.</u>

<u>Note:</u> Regardless of Feature Differences that Parties may want to divert attention to, Plaintiffs provided <u>nothing</u> to protect the future injury of Absent Class Members beyond 4-Years, or 10 Years (with 6-Year Equifax-Only Monitoring), and <u>absolutely nothing</u> after the 10-year time expires when the Class suffers any related injuries.





24

Received
SEP 0 3 2019
by JNDLA

www.paypal.com

US POSTAGE PAID
Pitney Bowes
ComBia-Price
024F000762749Z

UNITED STATES
POSTAL SERVICE

08/31/2019
From 66614
0 lbs 3 ozs
Zone 7

USPS FIRST-CLASS™ PKG

0000

B900

2800 sw engle ct
topeka KS 66614-4317

Attn: Equifax Settlement Objection
C/O Jnd Legal Administration
PO Box 91318
Seattle WA 98111-3418

USPS TRACKING #

9400 1096 9993 9227 5703 00

SEP 0 3 2019

**Steven Devol**

417 S. Hill St. Apt. 730
Los Angeles, CA 90013
(818) 631-8543
stevedevol@gmail.com

17th September 2019

Received

SEP 2 3 2019

by JNDLA

**Equifax Data Breach Class Action Settlement Administrator**
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In re: **Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT**

Dear Administrator: I believe I am a member of this settlement class, because I was a recipient of the initial notification that my personal information had been compromised in the Equifax breach; I was invited to become a member of the settlement class; after joining the settlement I received a claim number and opted for the $125 cash payment initially offered; and I responded to the follow-up email of Sept. 6, 2019, requiring me to verify the name of the credit monitoring company I was registered with at the time I filed my initial claim.

I wish to object to the Equifax settlement, in particular the mechanism through which I am seeking the promised $125 payment. The initial offer of $125 is now looking like a "bait and switch" by Equifax and its legal team. Equifax and its legal team seem to be counting on a low rate of response to this offer, but when it became apparent that many more people would be seeking the $125 payment than expected, they threw up an additional barrier to receiving this settlement, in the form of an email requiring me to provide the name of the credit monitoring company I was registered with at the time I filed the claim.

This can only serve to increase public cynicism about any future legal settlements. Equifax needs to adhere to the terms of its settlement and provide the $125 to any member of the class who wishes.

I have not objected to any other settlement in the past five years.

Additionally, I do not intend to appear for the Fairness hearing.

Sincerely,

Steven Devol



MARVIN GAYE

LOS ANGELES CA 900

30 SEP 2019 PM8 L

SEP 2 3 2019

Mr Steve DeVol
Apt 730
417 S Hill St
Los Angeles, CA  90013

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
P.O. Box 9318
Seattle, WA  98111-9418

98111-941818

1999 Ridgetop Dr
Charlottesville, VA  22903

September 17, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Re:   Equifax Inc. Customer Data Security Breach Litigation
      Case No. 1:17-md-2800-TWT

Class Action Settlement Administrator:

```
+----------------------+
|    Received          |
|                      |
|   SEP 23 2019        |
|                      |
|   by JNDLA           |
+----------------------+
```

I recently was notified by Equifax, Inc. that my personal information had been exposed during
the above security breach.  I wish to object to the proposed class action settlement – particularly
the terms under which individuals like me might receive up to $125 dollars compensation.  (As I
currently have credit monitoring via another source, I have elected to request monetary
compensation.)

Though I knew that up the personal information of 147 million individuals that was held by
Equifax had been exposed, I only recently learned that the current proposed settlement
earmarks a mere $31 million to reimburse such claims.  If all of the affected individuals request
monetary compensation, I would receive a total of 21¢.  The deceptive letter I received from
company belies this substantial gap between the proposed compensation and the potential
compensation.  *This stems from the pool for monetary compensation having been woefully
underfunded.*

I urge you to require that Equifax provide sufficient compensation as a result of its inability to
protect our important personal financial information.  Therefore, I respectfully request that the
Court re-examine this issue and bring the level of potential compensation closer to the
statements by Equifax in its letter to the settlement class.  Such a requirement also will act as a
warning to other financial services companies of the importance *and value* of maintaining
security for the personal information they hold.

I have not been objected to any prior class action settlements, and do not intend to appear at
the Fairness Hearing, either in person or through a lawyer.

Thank you.

Sincerely yours,

Steven S. Wasserman



1449 Ridge Top Dr
Charlottesville VA 22903

SEP 2 3 2019

RICHMOND VA 230
17 SEP 2019 PM 4 L

Equifax Data Breach Class Action Settlement Administrator
ATTN: Objection
c/o JND Legal Administration
PO Box 91318
Seattle WA 98111-9418

98111-941818

Amy, Anna, Vicky and Steve Odem
3703 Publix Road
Lakeland, FL 33810

September 17, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

> Received
> SEP 23 2019
> by JNDLA

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-
   TWT

For myself, my wife and our children, we, jointly and severally object most strenuously
to this proposed settlement.

Our privacy and security have be egregiously invaded by Equifax, and the proposed
settlement is an outrage and a pittance.  Totally and completely inappropriate and filled
with loopholes and strings that make it out of all proportion to the aggravation,
consternation and insult that we and other Equifax' victims have suffered.

For example but without limiting other objections, the public notice highlighting a
purported $125 settlement is so severely limited by terms and conditions as to be almost
fraudulent, in favor of Equifax.

Note that we have never in the last 5 years objected to any class action settlement.

Sincerely

Steve Odem, for and on behalf of myself, my wife and our children
3703 Publix Road
Lakeland, FL 33810





TAMPA FL 335
SAINT PETERSBURG FL
18 SEP 2019 PM 4 L

SEP 2 3 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Steve Odem
3703 Publix Road
Lakeland, FL  33810

Susan S. Hanis
8208 Nolichucky Ct
Raleigh, NC 27612
September 16, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



I believe I am a member of the settlement class because the website tool provided by Equifax indicated my data was compromised.

I object to the settlement.  I believe it is laughably inadequate in that it will neither offset the damage done, nor will it deter future negligence.

I never agreed to share my personal data with Equifax, let alone let them store it.

The compromised data is "evergreen".  It includes my Social Security Number, which will not change for the rest of my life.   Now that the data has been breached, I am at risk for the rest of my life, which I am hoping will be significantly more than 10 years.  Financial planning experts indicate that their actuarial guidance says I should plan for another 35 years.  10 years is not enough.

The sheer volume of this breach means that not only the users whose data was exposed have been damaged.  Our entire country has been damaged.  All US taxpayers, who rely on the integrity of Social Security Numbers, have an interest.

Any settlement is inadequate if it allows Equifax to continue using my personal data without my express written consent.  They have demonstrated themselves to be unworthy of public trust.

I have not objected to any other class action settlements in the previous 5 years.

I do not intend to appear at the Fairness Hearing, nor am I represented by a lawyer in this matter.

Sincerely,

Susan S. Hanis



USA

Research Triangle Region

17 SEP 2019 PM 4 L

Equifax Data Breach Class Action
Settlement Administrator

ATTN: OBJECTION
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 2 0 2019

98111-941818

Ms. Susan S. Hanis
8208 Nolichucky Ct.
Raleigh, NC 27612

September 18,2019

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
Case No. 1:17-md-2800-TWT
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

SEP 2 3 2019
by JNDLA

To whom it may concern,

When I found out about the Equifax security breach and determined that my account was one of those impacted, I immediately froze all of my accounts on all credit reporting agencies.

I think this is more effective than having a credit monitoring agency tell me something after the fact. I therefore see no need to have a credit monitoring company and would appreciate the monetary settlement.

As a result of the quick action I have taken, I would like to be included in the monetary settlement. My freezes will be in effect for not less than 4 years and most likely many more years after that.

- I have not objected to any class action settlements in the past
- I will not be appearing at the fairness hearing
- I am not represented by an attorney

Sincerely,

Sybille Hamilton
10415 w Vienna Ave
Wauwatosa, Wi 53222

Received
SEP 2 3 2019
by JNDLA

414-527-0883
Sybill1@earthlink.net



MILWAUKEE WI 530

19 SEP 2019 PM 2 L

Equifax Data Breach Class Action Settlement Admn.

Attn: Objection

C/o JND Legal Administration

P.O. Box 91318

Seattle, WA 98111

SEP 2 3 2019

Sybille Hamilton
10415 W. Vienna Ave.
Wauwatosa, WI 53222

# TARA M. DOWD

675 Walton Ave, Apt 4C, Bronx NY, 10451 | 646.389.1131 | taradowd@gmail.com

9/18/19

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418
Re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-T

Received
SEP 23 2019
by JNDLA

**To Whom It May Concern:**

I am writing to strenuously object to the proposed settlement in this case.  When the breech was announced, both my husband and I checked with Equifax and verified that our data was indeed compromised.  I immediately took on the time consuming and arduous task of freezing our credit reports at all three agencies.  This took several hours over multiple days to complete.  I would not have had to resort to this were it not for the gross negligence of Equifax.

This settlement is a joke.  Equifax knew the **EXACT** number of people who would be affected by this, and purposely set aside an amount of money that would not cover the entire class at $125 per person.  **DO NOT LET THEM GET AWAY WITH THIS!**

Consumers have no choice when it comes to credit agencies and data, we have no way of deleting our files from these agencies.  Now we are being laughed at by the very agency whose **ONLY** job was to protect the data that consumers can't control.   It's insulting and outrageous that they be allowed to skate away without paying what they initially promised.

I have never objected to a class settlement and in fact have never written a letter either for or against any settlement, but this one caused great ire due to the smarmy nature of Equifax and the belittling of consumers that is being undertaken by this farcical settlement.  I will not be attending any hearings and hope that this letter helps, in some small way, to sway the court to reject the current terms.

Sincerely,

**Tara M. Dowd**



NEW YORK NY 100

18 SEP 2019 PM 4 L

SEP 2 3 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Dowd Hewitt
675 Walton Avenue - Apt 4C
Bronx NY 10451

**Theodore R. Marcus**
7306 Via Marie Celeste
Rancho Palos Verdes, CA 90275-4405

16 September 2019

Received

SEP 2 0 2019

by JNDLA

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418


In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

I am a member of the settlement class based on the extensive communication I have
received about it, first from Equifax and subsequently from the "Equifax Breach
Settlement Administrator." I have never objected to to any class action settlement.

I object to this settlement because I consider it a travesty of justice. The settlement fails to
either compensate the victims, or to deter Equifax (and the rest of the credit reporting
industry) from further failures to protect the security of sensitive consumer credit data.
And for the victims, it has all the appearance of a scam that adds insult to injury.

The Federal Trade Commission (FTC) touted the settlement and the $125 compensation
available to Equifax victims. I chose the $125 compensation option because I already have
active credit monitoring services. These services were the remedy for several previous
data breaches, including the federal Office of Personnel Management. The advertised $125
compensation gave the impression of a serious effort by the FTC to remedy the breach
and to punish Equifax for their negligence.

Only after reports began appearing in (legitimate) media did the FTC admit that the $31
million Equifax set aside for general compensation (presumably with the FTC's assent)
was grossly inadequate. Even though the FTC admits that the breach affected 147 million
people, they insist they did not anticipate so many requests for compensation. They now
strongly recommend the credit monitoring option, as victims who choose cash
compensation will actually receive a few pennies rather than the advertised $125. To me,
that sounds like the sort of bait-and-switch scam from which the FTC is supposed to be
protecting consumers.

I cannot believe FTC officials were unaware that many Equifax victims already have credit
monitoring from settlements of previous breaches, and would thus choose cash
compensation from a company that profits so much from their personal data. I also
cannot believe that either the FTC officials or the Court would consider a $31 million fund
fund adequate to compensate the victims of a breach that affected 147 million people.

If the Court approves this settlement, it will be endorsing what amounts to one more
scam against Equifax victims, perpetrated by Equifax and the FTC. It adds insult to injury,
providing the illusion of justice for victims while shielding Equifax executives and
shareholders from any real accountability for the company's serious failure (and of course,
greatly enriching the "Class Action Settlement Administrator"). It will give consumers yet
another confirmation that both our justice system and our government agencies
exclusively serve the rich and powerful, at the expense of everyone else.

If the Court and the FTC are doing their jobs, they must reject this settlement. They must recognize and affirm the duty of Equifax and other credit reporting companies to safeguard sensitive consumer data. They must provide sufficient deterrence and remedies when a company fails in that duty. Executives of companies like Equifax must recognize that when they neglect that duty there will be serious consequences, for themselves and for their shareholders. This settlement will have the opposite effect, giving them the reassurance that the FTC and the federal courts stand ready to not merely bail them out, but to help them scam the victims.

I do not intend to appear at the Fairness Hearing, either in person or through a lawyer.

Very truly yours,

Theodore R. Marcus



USA
FOREVER
P20870 1062 15226

LOS ANGELES
CA 900
17 SEP 2019
PM 3 L

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

SEP 2 0 2019

Ted R. Marcus
7306 Via Marie Celeste
Rancho Palos Verdes, CA
90275-4405

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Received

SEP 2 0 2019

by JNDLA

**Re:** (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

I write to object to the terms of this settlement, having received Notice of it and filed a claim for $125.    It represents precisely the kind of deceptive practice that the FTC was established to overcome.  Setting aside only $23M for victims while offering each victim $125 equals a pay-out instead of less than One Dollar per victim.

That is deceptive on its face, by over one-hundred times.

But wait – there's more.  Alternatively, victims may choose Equifax own service of credit monitoring – in effect driving millions of customers to a company that has demonstrated its negligence and unreliability in a service where both qualities are paramount.  Thus, Equifax has roped-in the 'watchdog' FTC in a marketing scheme to profit by its own negligence and wrongdoing.  The 'watchdog' is sound asleep – or worse – is assisting the wrongdoers in their mischief.

I object – and I have Never objected to a class settlement previously.  I am unable to attend the hearing, so ask your particular consideration of this letter.

Very truly yours,

Thomas F. Cushing

PO Box 592

Danville, CA 94526

415.307.1600

tfcmail@gmail.com

*PS.*
*It's classic "Bait & Switch",*
*$125    our service*
*TFC*

100 Jay St.
Alamo CA 94507

SEP 20 2019

Equifax Data Breach C/O Settlement Admin
ATTN: OBJECTION
C/O JND Legal Administration
PO Box 91318
Seattle WA 98111-9418
98114-9418

OAKLAND CA 945
17 SEP 2019 PM 4 L

FOREVER USA

Thomas Markley Snell
320 E 72nd St. Apt. 5B
New York, NY 10021

September 18, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418

Received
SEP 2 3 2019
by JNDLA

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Dear Administrator:

I am a Settlement Class Member in the Equifax Breach as my personal financial data was exposed by Equifax. My membership in the Settlement Class is confirmed by the "Equifax Data Breach Settlement – Check Your Eligibility" website (https://eligibility.equifaxbreachsettlement.com/en/eligibility) linked to in the enforcement section of Federal Trade Commission's website.

The Settlement makes a mockery of class-action litigation procedures. The late and muddled disclosure of the requirement that Class Members seeking cash show that they had credit monitoring in place failed to meet the standard of timely and clear communication required by class-action procedures.

Further, the Equifax and FTC communications were made in bad faith. In their public statements both Equifax and the Federal Trade Commission misled the public about the terms of the Settlement and Class Member's ability to obtain the "headline" $125 reimbursement. Specifically, the July FTC announcement that Equifax agreed to pay up to $700 million vastly overstated the amount that Equifax intends to pay, the proof of which can be found in Equifax's funding of the settlement for a substantially lower amount.

Finally, the credit monitoring service offered by Equifax as a Settlement alternative to cash represents a substantive conflict of interest for Equifax. It exposes Class Members to future Equifax incompetence and the as yet untested improvements in their business processes. Why should Class Members presume that Equifax, the company that mishandled their personal information, be a reliable monitor of the damage caused by that very Equifax breach?

I have not objected to any class action settlement in the previous five (5) years.

I do not intend to appear at the Fairness Hearing as the expense and inconvenience of travel would far exceed any financial benefit I could conceivably receive.

I urge you to reject the Settlement.

Sincerely,

*Thomas M. Snell*

Thomas M. Snell



NEW YORK NY 100

18 SEP 2019 PM 7 L

THOMAS M SNELL
320 E 72ND ST APT 5B
NEW YORK NY 10021-5251

SEP 2 3 2019

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

**Timothy Allen Boutin**
19 Pleasant Street
Chelmsford, MA. 01824-1643

**September 18, 2019**

**Equifax Data Breach Class Action Settlement Administrator**
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*RE – Equifax Data Breach Class Action Settlement Administrator: Objection*

> Received
> SEP 23 2019
> by JNDLA

**Greetings:**

Based on our ongoing monitoring of the developments in the Equifax breach settlement proceedings, please regard this communique as representing my vehement objection regarding the constraints offered by the two "options" available to the millions of consumers impacted by this breach.

Quite frankly, it would've have been extremely easy for us to quantify the financial damages and time lost in resolving this issue – having to offer a deposit to Verizon to establish a new voice/internet service at a cost of $100 alone, because we had our credit file locked to new inquiries would have alone taken care of filling the financial threshold offered as a cash payout. But here are some other examples:

- Having a refinancing approval process impeded due to locked credit files
- Consulting with Corporate Counsel resources regarding processes we should employ to protect our credit in the wake of the breach
- Consulting with the Social Security Administration about this issue at the behest of Counsel
- Buying an annual credit monitoring service to protect me from the fall out of this breach

Unfortunately, this is not our first time through such breaches – we have been impacted by *the Anthem Blue Cross Blue Shield breach*, by a *LinkedIn breach*, etc. – and virtually any consumer doing any business today in America would tell you the same. Personally, I do as little as possible online in terms of financial transactions so as to avoid future breaches and even more anxiety. In Equifax's case, there are two truly insidious elements to their related settlement communications that are truly distinct from the other types of breaches:

- They continue to serve as a financial watchdog of consumer credit, even though those whose credits they are supposed to monitoring have had that very credit adversely spike as a result of Equifax's malfeasance.
- By telling consumers, in effect, to take the monitoring because "you're never going to see that $125" seems particularly brazen.

For the record:

- We have not objected to any other class action settlements in the past 5 years.
- We have not retained legal counsel in this matter.
- We do not intend to appear at the Fairness Hearing.

Regards,

Timothy A. Boutin



BOSTON MA 021
18 SEP 2019 PM 2 L

Boehn
19 Pleasant Street
Chelmsford MA
01824.

Equifax Data Breach Class Action Settlement Administration
C/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

ATTN: OBJECTION

SEP 2 3 2019

Equifax Data Breach Class Action Settlement Administrator          September 18, 2019
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

Dear Sirs:

I wish to register my objection with the possibility that my compensation of $125 can be reduced by the amount of claimants. I believe enough money should be set aside for all victims to be paid. I feel this amount is already unreasonable and inadequate.

I am a member of this class because I received notice from Equifax that my data was breached.

I have not objected to any other class action suits within the past 5 years

I will not be appearing at the Fairness Hearing, nor will be represented by an attorney.

I have had credit monitoring in place by Experian ProtectMYID Essential.

Timothy Brophy
10600 S Ocean Drive
#1203
Jensen Beach, FL
34957

Received
SFP 2 3 2019
by JNDLA

Timoth Brophy
Sept 18, 2019



I. BAPPIN
10600 S. OCEAN DR.
# 1803
JENSEN BEACH, FL
34957

EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT ADMINISTRATION

SEP 2 3 2019

ATTN: OBJECTION

C/o JND LEGAL ADMINISTRATION

PO BOX 91318

SEATTLE, WA. 98111-9418

MID-ISLAND NY 115
09 SEP 2019 PM 4 L

*To: Equifax Data Breach Class Action Settlement Administrator*
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Received
SEP 2 0 2019
by JNDLA

*Re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT,

September 17, 2019

This letter is to object to the settlement reached with Equifax. I received a notice from both Equifax and from the Settlement Administrator that my information was among that stolen during the breach.

I feel deceived by the offer of cash settlement, only to learn that not nearly enough money was set aside to award each potential victim filing a claim. $125 was very little to offer in response to such an outrageous theft, and now that is not even possible.

This settlement benefits the company, but does little to make restitution to victims.

I have made no objection to any other class action settlement within the past five years. I am not represented by a lawyer, and I will not be present at the fairness hearing in December.

Timothy Hagy
1107 Prospect Avenue
Bristol, Virginia 24201



KNOXVILLE TN 377

17 SEP 2019 PM 1 L

Equifax Settlement Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111 - 9418

SEP 2 0 2019

No + Prospect Ave Bristol, VA 24201

1735 NINETEENTH STREET, N.W.
WASHINGTON, D.C. 20009

Timothy J. Minter
4255 Bamford Court
Fort George G. Meade, MD 20755

17 September 2019

**Via Postal Delivery**

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Your Honor:

> Received
>
> SEP 2 3 2019
>
> by JNDLA

I am a New York-licensed attorney currently on active duty with the U.S. Army. I write this letter in my individual capacity, and the opinions expressed herein do not reflect the opinions of the Department of Defense, the U.S. Army, or the Judge Advocate General's Corps. I currently practice law in the field of cybersecurity with a focus on the emerging international and domestic law of cyber operations.

I am writing to object to the proposed terms of the settlement by Equifax. The terms of the settlement are unfair to the consumer who suffered the injury and are being promised a bait-and-switch resolution. I would respectfully request that you decline to approve this settlement unless and until the Defendants agree to make every aggrieved plaintiff in the class whole.

It is wholly unacceptable for Equifax to promise Alternative Reimbursement Compensation in an uncertain amount. Put simply, the Defendants were negligent in their cybersecurity. This is a business that – without any opt-in or consent from consumers – collected for profit the personal information of a large proportion of the U.S. adult population and then was negligent in how they safeguarded such valuable information . The defendants failed to exercise basic cybersecurity practices of properly patching their systems or encrypt their data. The hackers that accessed my and my fellow class members' data used known exploits for which a patch had been available for two months. [1] Due to the sensitivity of the information held by Equifax, the Defendants had a duty of care to prevent their actions from creating an unreasonable risk of harm to the consumers whose data they held. [2] Although cybersecurity creates new mechanisms for commerce, the underlying historic duties of care are neither novel nor unprecedented. Their negligence has quite simply left me more exposed to con artists and other nefarious actors.

In my own case, Equifax's promise of credit monitoring makes little sense. First, I have little reason to trust Equifax's promise of credit monitoring – they failed to secure their systems,

---

[1] Newman, Lily Hay, *Equifax's Security Overhaul, a Year After It's Epic Breach*, WIRED, 25 July 2018, *available at* https://www.wired.com/story/equifax-security-overhaul-year-after-breach/ (Last Accessed Sept. 17, 2019).
[2] Restatement of the Law, Torts § 298 (1934, American Law Institute)

1

so now I am supposed to trust them again?  Unlikely. Secondly, I have had – and will continue to have – credit monitoring provided by the Office of Personnel Management (OPM) due to the 2014 OPM breach in which my SF86 Security Clearance data was stolen by an advanced persistent threat (APT) widely attributed to be the Chinese Government. [3]  I –like most Government employees – will have credit monitoring provided until 2025 [4], currently provided by ID Experts [5]  Quite simply, any credit monitoring provided by Equifax will be superfluous to me and to every similarly situated military and government employee.

Equifax's alternative compensation – "up to $125" but likely far less [6] does not meet the standard of Fed. R. Civ. P. Rule 23e(2) of "adequate" relief for members of the class . In approving a class settlement, a district court must consider whether it is "fair, reasonable, and adequate." Van Horn v. Trickey, 840 F.2d 604 at 606 (8th Cir. 1988).  The factors that the Court must consider to determine the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement.  This is not a close case.  The negligence of the Defendants is open-and-shut, and has been widely reported.  The damages sustained by members of the class are likewise significant and permanent.  Equifax cannot plead poverty – even in 2018, they reported $3.4B in revenue and $300M in profits (and gave 187.9M in dividends to shareholders). [7]  If Equifax can afford to give dividends to shareholders, they can afford to make whole the consumers whose data they negligently handled.

I would therefore request that the Court take a close look at the terms of the proposed settlement.  $125 is insufficient to provide credit monitoring to those who do not trust it and wish to purchase it from a competitor. [8]  At a minimum, I would respectfully request that the Court refuse to approve any settlement where the financial reimbursement to class members is an uncertain amount.

Timothy J. Minter

---

[3] Koerner, Brendan, *Inside the Cyberattack That Shocked the US Government*, Wired, 23 October 2016, *available at* https://www.wired.com/2016/10/inside-cyberattack-shocked-us-government/ (Last Accessed Sept. 17, 2019)

[4] Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 632, 129 Stat. 2242, 2470 (2015).

[5] MyIDCare, https://opm.myidcare.com/login (Last Accessed Sept. 17, 2019).

[6] Carpenter, Julia, *FTC Says 'Overwhelming' Number of Equifax Claims Means Consumers Likely Won't Get $125*, Wall St. J., July 31, 2019, *available at* https://www.wsj.com/articles/ftc-says-overwhelming-number-of-equifax-claims-means-consumers-likely-wont-get-125-11564598476 (Last Accessed Sept. 17, 2019)

[7] Equifax Co., Annual Report (Form 10K) (Feb. 21, 2019)

[8] For example, LifeLock provided by the cybersecurity firm Symantec costs $25.99/month. https://www.lifelock.com/#planschart (Last Accessed Sept. 17, 2019).

Minter
4255 Binford Ct.
Ft. Meade MD 20755

· SEP 2 3 2019

CAPITAL DISTRICT 208

18 SEP 2019 PM 4 L

Equifax Data Breach Class
Action Settlement Administration
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111 - 9418

98111-941818

**DATE:**       September 17, 2019

**TO :**       Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received
SEP 2 0 2019
by JNDLA

**FROM:**       Todd Buckton
Equifax Claim Number: PV5ZXK3EYC

**RE:**       Equifax Inc. Customer Data Security Breach Litigation,
Case No. 1:17-md-2800-TWT

**Todd Buckton**
607 North Park Blvd.
Glen Ellyn, IL 60137

**O:** 630.545.0665
**C:** 630.767.9344
**E:** toddbuckton@me.com

Dear Equifax Settlement Administrator:

I am currently a member of the settlement class with the claim number:
PV5ZXK3EYC.

I am writing to ensure that I receive the full amount of $125 for my troubles during the egregious Equifax breach of 2017. In 2017, I was enrolled in a professional credit monitoring service that continues today.

The time spent changing passwords, re-checking credit reports and ensuring the safety of my personal and digital life after the Equifax breach was voluminous.

The thought that in exchange for a cash settlement, free enrollment in a credit-monitoring entity that Equifax would recommend is amusing.

In my estimation, Equifax, more so than any other firm, should valiantly defend the data of the individuals they represent. They did not. Equifax is not selling data and credit services, what they actually do is market trust. And they failed miserably to keep that trust. I have lost complete faith in a formerly-admirable institution.

I have never objected to a class action settlement before as I felt they were generally fair. For Equifax to not pay the full amount of $125 that they originally offered is as disgraceful as allowing this breach to occur in the first place.

I do not plan on attending the fairness hearing but hope that my feelings are heard through this missive.

I am not represented by an attorney. I am an individual interested in seeing Equifax keep their pledge.

Sincerely,

Todd Buckton



CAROL STREAM IL 601

17 SEP 2019 PM 1 L

Todd Buckton
607 North Park Blvd.
Glen Ellyn, IL 60137

SEP 2 0 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111—S41618

Tristan Wagner
3828 N Haight Ave Unit B
Portland, OR 97227
503-941-0216
tristan.wagner@gmail.com
September 16, 2019

Received
SEP 23 2019
by JNDLA

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Dear Equifax Data Breach Class Action Settlement Administrator:

I am writing to object to the proposed settlement In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT. I have never written an objection letter to a class action settlement in the past.

My personal data was exposed as part of the data breach. My trust in Equifax is exceptionally low and I would prefer not to use them for credit monitoring services. Therefore, I initially opted for the cash payment settlement option. However, after reading news reports about the very small portion of funds reserved for paying out cash claims, it began to seem unlikely that this option would provide any meaningful compensation, so I switched to the free credit monitoring service option.

I feel like I have been forced to become a customer of the misbehaving company that was responsible for leaking my personal data in the first place. Do I have any protection should Equifax leak my data again in the future, or fail to provide adequate credit monitoring services? I would like to see as part of the settlement a guarantee of significant inflation-adjusted cash compensation from Equifax should they leak my data again any time within the next 20 years.

I am extremely dissatisfied with this proposed settlement.

Sincerely,

Tristan Wagner





PORTLAND OR 972

18 SEP 2019 PM 2 L

SEP 23 2019

EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT ADMINISTRATOR
ATTN: OBJECTION
C/O JND LEGAL ADMINISTRATION
PO BOX 91318
SEATTLE, WA 98111-9418

**Tristan Wagner**
3828 N Haight Ave
Portland, OR 97227

Vail Reese
818 Sanchez Street
San Francisco, CA 94114

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

September 17, 2019

To Whom It May Concern:

Received

SEP 2 3 2019

by JNDLA

I am a member of the settlement class in the proceeding *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, as I received information from Equifax stating that my information had been compromised in their data breach. I am writing to formally object to the proposed settlement. I have never objected to a class action settlement prior to this.

The settlement amount that the government agreed to was ridiculous, as it served neither to make the victims whole nor provide a deterrent to the gargantuan company that allowed the breach to occur. If the cash reward was supposed to be $125 for every person who already had security monitoring (as I and my husband did, because we had been victims of previous data breaches from other giant entities that failed to protect our date, including Target and Blue Cross Blue Shield) then the settlement should have provided that money to every person who applied for it, not up until the arbitrary amount of 31 million was reached, an amount that everyone clearly knew was not going to be sufficient to compensate all the victims.

Equifax needs to provide a cash payment to every victim of their data breach, even if it drives the company bankrupt, because if it cannot compensate us it should cease to exist after failing to in its most fundamental task.

I also object because $125 is not nearly sufficient. Lifelock costs between $10 and $30 *per month*, and my family will need our credit protected for the foreseeable future because our credit data will be on the dark web for the foreseeable future.

Sincerely,

Vail Reese

Clare G. Willis
818 Sanchez Street
San Francisco, CA 94114

SEP 2 3 2019

SAN FRANCISCO CA 940

19 SEP 2019 PM 3 L

Equifax Settlement Administrator
Attn: Objection
C/o JND Legal Administration
PO Box 91318
Seattle WA 98111 - 9418

98111-94188

18 Watchtower Rd
Hopkinton, NH 03229
September 17, 2019

Received
SEP 23 2019
by JNDLA

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

Dear Sir or Madam:

I am a member of the settlement class based on the information obtained on the information I obtained on the equifaxdatabreach.com website.

I am writing to object to the proposed settlement.  It is one-sided, does not adequately compensate the settlement class members for the inconvenience and increased risks they face as a result of Equifax's failures to protect sensitive personal information, and will provide a trivial incentive to Equifax and similar holders of sensitive information to improve on their security measures.

I have never objected to a class action settlement proposal.

I am unable to appear at the fairness hearing and am not represented by counsel.


Sincerely,

Varel D Freeman

Cc: NH Consumer Protection Bureau



MANCHESTER NH 030

18 SEP 2019 PM 3 L

SEP 23 2019

Equifax Data Breach Class Action Administration
Attn: OBJECTION
JND Legal Administration
PO Box 91318
Seattle WA 98111-9418

98111-941818

**Victoria M. Benedict**
**860 Wellesley Drive, NW**
**Atlanta, Georgia 30305**

September 17, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



**In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT**

Dear Chief Judge Thrash:

I am a resident of Atlanta, Georgia, and my current address is noted at the top of this letter.

I am writing to object to the terms of the Equifax data breach settlement.

I am a member of the class because my personal information was stolen.  I know this because I entered my last name and the last 6 digits of my Social Security Number on the "Check My Eligibility" tool at the Equifax website https://eligibility.equifaxbreachsettlement.com/en/Eligibility

I object to the settlement because it is clearly an insufficient amount to pay all of the claimants.  I am upset that the Federal Trade Commissions announced the settlement and suggested that each class member would be eligible to receive up to $125.  This is ridiculously misleading. Given the 147 million people whose information was exposed, and the huge numbers of people like myself who filed for relief, the amount Equifax agreed to pay to settle the matter is woefully low, and is in no way a deterrent to Equifax or the other credit monitoring bureaus to ensure that they prevent future data breaches.  The settlement should be rejected because it is not high enough to send a signal to the C-suite of Equifax that the American public is sick and tired of its failures.  Equifax had one job – to safeguard my private financial data – and it utterly failed.  Equifax profits off of my personal financial data and they should be held accountable for their failures in meaningful way – meaningful to them and to me and the other members of the class.  I drive by the headquarters of Equifax on Peachtree Street several times a week and every time I do, I bristle at their corporate failures.

I have not objected to any class action settlement in the previous five (5) years.

I do not intend to appear at the Fairness Hearing, either in person or through a lawyer.

I hope that the Court will make note of my objection and reject the settlement, so that the FTC will come to a new settlement agreement that sufficiently compensates me and the other class members and sends a signal to the leadership of Equifax that we will not tolerate their mistakes.

Sincerely,

*Victoria Benedict*



ATLANTA METRO 300

17 SEP 2019 PM 13 L

Equifax Data Breach Class Action Settlement
Administration
Attn. — OBJECTION
c/o JND Legal Administration
PO Box 91318
Seattle, WA
                98111—9418

98111-941818



Victoria Benedict
860 Wellesley Dr. NW
Atlanta, GA 30305

SEP 20 2019

In re: Equifax Inc. Customer Data Breach Litigation,
Case 1:17-md-2800-TWT

Received
SEP 23 2019
by JNDLA

To Whom It May Concern,

I would like to get the legal formalities out of the way.
My full name is Viktor Aleksandrovich Krapivin. I am
a member of the settlement class by virtue of the indication
on the settlement website. I found this out by entering my
last name and last 6 digits of my social security number.
My signature: _____ . I have not objected to a class action settlement
in the past 5 years. I do not intend to appear at the fairness
hearing. I reside at 218 Ayrshire Farm Ln in apartment W1, in the census designated
district of Stanford located in Santa Clara County in California with
94305 as my zip code.

My objection statement (and included legal support):

Inherently, the harm suffered by the settlement class is greater
than the proposed settlement. The settlement only allows for claims
of actual damages at present. It is impossible to predict what sort
of fraud can be done with the data leaked by the defendant. By
leaked I mean failure to secure from hackers. These damages will
occur in the future and the defendant will the profit
off their negligence and sell credit monitoring services.
Additionally, the amount allocated by the defendant for the settlement
is miniscule. I read in the New York Times that if each class member
filled a claim, each class member would receive 21 cents. This is
unacceptable. The total future damages suffered by the plaintiffs will not be 21 cents.
Additionally, the claims process is cumbersome and unnecessarily complicated.
It is unreasonable because defendants have made claiming the $125 award
much more difficult. It is unreasonable because criminals can wait 10 years
to misuse the stolen data after credit monitoring services end. It is unreasonable because
not all class members will be able to claim services by the 01/22/2020 deadlines,
since it is quite soon. For these reasons, I respectfully OBJECT and URGE the
court to DENY the settlement. Sincerely,
(Viktor Krapivin)

218 Agshuk Farm Ln
Apt 101
Stanford, CA 94305

SAN FRANCISCO CA 940

19 SEP 2019 PM 3 L

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 23 2019

Vivian Chang
3093 Pualei Circle #205
Honolulu, HI 96815
808 265-6215
vividchange@mac.com

September 16, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-0418

Received
SEP 19 2019
by JNDLA

Dear Administrator,

I am a Settlement Class Member and I have filed a claim. I object to the settlement.

Included is the following necessary information:

1. The proceeding is *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT,

2. My name and address are listed above.

3. My personal signature is below.

4. I have been notified by Equifax, stating that my data has been compromised, so I filed a claim - I am a member of the Data Breach Class Action Settlement.

5. Equifax failed in keeping my personal financial information secure, was sued by the government and settled. I opted to receive the $125 payment, but I understand that the money to settle claims is inadequate. I recently received an email from the Equifax settlement team stating that I must verify that I had credit monitoring in place or my claim will be denied. If I PROVE that I had credit monitoring I may receive less than a dollar if all claims are paid. My data is compromised and now my time is wasted, and I got insulted, too. Nice.

In my world, if I had a job to do and botched it this badly, I would be fired. I am "small enough to fail."

6. I have never objected to any class action settlement in my whole life - I'm 69 years old. But then I have never seen one so shockingly inadequate.

7. I do not intend to appear at the Fairness Hearing. I can't afford a lawyer so I won't send one. Although if I got that $125 it would be a start. Well, maybe not.

Please deny the settlement. The Equifax and the attorneys are the only ones who are benefitting from this arrangement. Nothing has been done to rectify the damage done to me by the inadequate business practices of Equifax.


Sincerely yours,


Vivian Chang



HONOLULU HI 967

16 SEP 2019 PM 5 L

Equifax Data Breach Class Action Settlement Administrator

Attn: OBJECTION

c/o JND Legal Administration

P.O. Box 91318

Seattle, WA 98111-0418

98111-941818

SEP 19 2019

Vivian Chang
3093 Pualei Cir Apt 205
Honolulu, HI 96815