# Exhibit B - 10

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Received

NOV 22 2019

by JNDLA

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No.  1:17-md-2800-TWT

## CONSUMER ACTIONS

Chief Judge Thomas W. Thrash, Jr.

Fairness Hearing Date 12/19/2019

## SUPPLEMENT TO OBJECTION

There is one more case that the objector filed an objection in and forgot about until a phone call gave me an indirect heads up. I thank that firm in Detroit, Michigan, you know who you are.

Polyurethane Foam Antitrust Litigation 10-md-2196, Toledo Ohio.

I certify under penalty of perjury of the United States that all of the above is true and accurate to the best of my knowledge.



Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394

E: caaloa@gmail.com P: 248-635-3810   November 19, 2019

This document was mailed to the administrator via first class mail on the same day the objection was mailed, three hours apart.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394

E: caaloa@gmail.com P: 248-635-3810   November 19, 2019

Christopher Andrews
P.O. Box 530394
Livonia, MI 48153-0394

NOV 2 2 2019

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



1000

98111

U.S. POSTAGE PAID
LIVONIA, MI
48150
NOV 19 '19
AMOUNT
$1.00
R2305K1371-06-99

Received

NOV 2 2 2019

by JNDLA

Dear Administrator and Clerk of the Court,

There Are Multiple Legal Documents In This Envelope. One of Them Is A Sealed Document. These Federal Filings Should Not Be Viewed Or Copied. Please Send Them And This Cover Sheet To The Clerk of the Court.

Thank You.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No.  1:17-md-2800-TWT

**CONSUMER ACTIONS**

Chief Judge Thomas W. Thrash, Jr.

Fairness Hearing Date 12/19/2019

Notice Of Appearance And Intent   .
To Appear

.

## OBJECTION TO THE GHASTLY $380 MILLION SETTLEMENT

 "The Court finds that it will likely be able to approve the proposed settlement as fair,

reasonable, and adequate." From Doc 742 pg 2 of 15 dated 07/22/19. The objector

vehemently disagrees and requests (a) the proposed settlement class should not be

certified for settlement purposes pursuant to Rule 23; (b) the settlement should not be

approved as fair, reasonable, and adequate and, in accordance with the settlement's

terms, (c) this matter should not be dismissed with prejudice; (d) class counsel's

application for attorneys' fees and expenses should be denied; (e) the application for

the class representatives to receive service awards should be denied and (f) the tsunami

of material issues and errors that the parties made and/or concealed be corrected.

# Table Of Contents

Introduction……………………………………………………………..… 3

Objector Has Standing………………………………………..……………….…3

Any Approval Violates 11th Circuit Case Law…………………….……………..5

The Parties Are Engaged In Shenanigans By Violating Freedom Of Speech And The Fourth Amendment Right To Due Process By Deterring Objections…………………6

The Requirement To Disclose Past Objections Is Biased And Prejudicial……………7

The Twenty Five Page Limit On Objections Is Not In The Long Notice……………….11

The Requirement Of Objectors To Be Deposed Or Their Objections Will Be Struck Is Part Of The Scheme To Scare Off Objectors………………………………..……..…11

JND Administration Is Intentionally Violating Our Privacy Rights A La Equifax…..13

The Failure To Inform Class Members What Information Was Stolen From Them Individually Before Settling This Case Violates Due Process…………………………16

Identity Theft Protection Is Also Required Not Just Credit Monitoring……………...18

The 147.9 Million Class Members Should Not Have To File A Claim………………19

The 125.00 Cash Component Was A Bad Faith Bait Trick ……………………………20

Is There Insurance Coverage Involved In These Settlements?...................................22

The Deal Does Not Take Into Account The Differences In State Laws……………...22

The Claims Payment Process Is A Waste Of Money For The Class…………………..23

An Opt Out Form Is Missing To Keep The Deal Break Number Low……………….23

The Monitoring Value Along With The Fee Request Are Deceitfully Inflated………24

Summary……………………………………………………………………….24

The Following Issues Were Left Out Of The Objection Due To Page Constraints

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## INTRODUCTION

Apparently "The Devil Went Down to Georgia" again, this time looking for a class action settlement to steal. I see Cohen Milstein, Miller Law and Gustafson are involved. They are the same culprits that double crossed me and a class a while ago in another case that was reversed on appeal and it will be dismissed in the second appeal. As a result of this finding, the objector decided to dig into this proposed settlement and as expected found a tsunami of material issues and errors that some singularly and others combined absolutely prohibit approval of this overhyped, quid pro quo deal under law. This objection is filed on his behalf and on behalf of all 147.9 million class members. He is serving his appearance in this case and notice of intent to appear at the hearing, requests ten minutes of time to address the court and/or answer its questions and adopts any objections that are not inconsistent with his own. The plague of material errors and issues left unaddressed, with others covered-up, so spectacularly violate Rule 23(e) and due process that this sellout of a collusional, stiff the victims, bad faith "deal" is now known as "The Equifax Whack-A-Mole Settlement."

### The Objector Has Standing

Christopher Andrews is of legal age, a valid class member, objector, a "U.S. consumer" along with being a resident of the State of Michigan and he wrote this objection himself. The objector visited the bugged class website on 09-12-19 entered his last name, applicable digits of his social security number and was informed

that some unknown, undisclosed, personal information was "impacted." (aka stolen) see Exhibit 1. He then filed a claim for damages with the administrator on 9-12-19 at 9:21 a.m. and had to choose credit monitoring. See Exhibit 2. He therefore is a valid class member and has standing to object. This good faith objection will make vast improvements for the benefit of the entire class by the time all is said and done.

The objector does not presently intend to call any witnesses at the Fairness Hearing but reserves the right to do so, make use of any and all documents entered onto the docket by any settling party/objector/witness or any visual items used at this as well as future fairness hearings and question any witnesses testifying for this approval.

Based on the evidence, the objector contends that class counsel, named plaintiffs, the defendant, and the administrator colluded and schemed amongst themselves in a Faustian bargain by hijacking and settling this error ridden, unfair settlement for the gluttonous unjustified fees, awards, expenses and costs they demand by selling out the class. The class has been set up, hoodwinked and bamboozled into this collusional settlement orchestrated by the cabal of lawyers so rejection is required. It's a common divide and conquer strategy that games a crooked rigged system and treats the unnamed class as pawns in their settlement scheme. The only thing missing in this now exposed zany charade of mistakes, missteps, blunders, buffoonery, cover-up and double-cross is the Benny Hill Show Theme Song.

https://www.youtube.com/watch?v=zQf2TiwBFHo

## Any Approval Violates 11th Circuit Case Law

Since this is not a certified class action, class counsel negotiated this settlement from a position of weakness; they can't even threaten to take this case to trial. The class should be certified first to allow plaintiffs to negotiate from a better bargaining position instead of rolling over. Equifax knows this and dictated the terms of the deal just like they created the settlement agreement. There is no way class counsel co-wrote that agreement based on the plague of errors below, Equifax did. Our lawyers and class reps had to accept what Equifax imposed so everyone arranged for this rah rah deal to get it approved. The $1,920.00 in credit monitoring value is fraudulently inflated a minimum of 240% and that is the retail cost, the actual cost is a fraction of that, it's all smoke and mirrors. The parties rigged this deal to claim 20% or $77 million in inflated fees, costs and awards for 18 months of "work" done by others. In return Equifax is let off the hook for a lowball amount and the case disappears, a quid pro quo. "In order to approve the settlement agreement, the district court was required to determine that it was fair, adequate, reasonable, and not the product of collusion." Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n, 18 F.3d 1527, 1530 (11th Cir. 1994). This proposed settlement looks like a jigsaw puzzle with half the pieces gone. The following six factors are what a court should consider to decide whether a settlement agreement in a class action is fair: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery

at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; (See note bottom of pg 12,) and (6) the stage of proceedings at which the settlement was achieved,  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). The refusal to structure a settlement to maximize class recovery but instead provide for their own personal benefit was a breach of class counsel's fiduciary duty. E.g. Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship, 874 F.3d 692, 694 (11th Cir. 2017).

**The Parties Are Engaged In Shenanigans By Violating Freedom Of Speech And The Fourth Amendment Right To Due Process By Deterring Objections**

The parties are muzzling freedom of speech and violating due process rights by deterring objections from being filed. Class members who wish to object must follow an unfair, bad faith, multistep, draconian objection requirement protocol or their objection is struck. This has the effect of watering down objections, intimidating and/or scaring off class members and/or their counsel. This is unconscionable, illegal, bias, unfairly prejudicial, it undermines and violates Rule 23, public and judicial trust, it violates due process, it's bad faith, lacks transparency, basic mechanisms of fairness and it appears this is set up for a rubber stamp approval in Equifax's home town.

Doc 742 at 13.7 states "The Notice will also state that any Settlement Class Member who does not file a timely and adequate notice of intent in accordance with this Section waives the right to object or to be heard at the Fairness Hearing and shall be forever

barred from making any objection to the Settlement."

Response: Why is this not mentioned or explained in the long notice? My reading of this is if a class member files an objection they also have to file a notice of intent to appear or the objection is struck. This is prejudicial, violates due process and makes the long notice defective, it must be redone and the class re-noticed.

**The Requirement To Disclose Past Objections Is Biased And Prejudicial**

The settlement agreement and long notice requires that an objector include "A statement identifying all class action settlements to which you have objected in the previous five (5) years;" See Settlement Agreement Doc 739-2 pg 16 @20 and the Court's Order Doc. 742 pg 10. Such a requirement is ineffective at preventing bad-faith objections but merely creates an additional hurdle for objectors to jump through. See Trabakoolas v. Watts Water Tech., Inc., No. 3:12-cv-01172-WHO (EDL) (Dkt. 276), at *4 (N.D.Cal. Feb. 14, 2013) (excising from class notice the requirement to list past suits in which the objector or his attorney has objected); see generally Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, 5 (2010), available at ttps://www.fjc.gov/sites/default/files/materials/2017/NotCheck.pdf (directing courts to avoid notice language that places "burdensome hurdles" for "free exercise of rights, such as onerous requirements to submit a 'satisfactory' objection or opt-out requirements. (Last visited August 01, 2019)  When class counsel and the court require

disclosure of past objections to be able to file an objection in this case or else have it stricken from the record, this shows prejudice, bias, violates due process and Rule 23. This requirement is being used to deter class members from filing objections so as to not upset the expected approval. The statement below is applicable in this case which the objector adopts: Case 1:09-md-02036-JLK Document 3698 Entered on FLSD Docket 11/13/2013 written by Patrick Sweeney. "Requesting information beyond that undermines a class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling. Every objection should be judged on its own merits. If it is frivolous or unmeritorious, the Court may overrule those objections on that basis. If the objections have merit, they should be sustained, regardless of who made them. The requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any objection. Federal Rules of Evidence 403 articulates that evidence otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The committee notes to Rule 403 state there are certain reasons such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful

than merely wasting time, at the other extreme. Situations in this area call for balancing

the probative value of and need for the evidence against the harm likely to result from

its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956);

Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392

(1952); McCormick § 152, pp. 319-321." (1975 Committee Notes to Rule 403.)

Federal Rule of Evidence 404 prohibits introducing this information and it is

impermissible evidence of the Objectors', or their attorney's, character.

Character evidence is rarely, if ever, admitted within the realm of civil trials.

Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is

generally discouraged because it carries serious risks of prejudice, confusion and delay.

See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of

excluding such evidence, despite its admitted probative value, is the practical

experience that its disallowance tends to prevent confusion of issues, unfair surprise

and undue prejudice."). (2006 Committee Notes to Rule 404.) (*See Generally, U.S. v.*

*DeMarco,* 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony

against credibility of opposing counsel.) In this case, information regarding these

Objectors, their attorney, and their previous objections to Class Action settlements is

not only irrelevant to this Court's decision at the upcoming fairness hearing but is

proffered only to color the Court's perception of these persons and sway the Court's

decision regarding these objections. This is improper and therefore the requirements in

the order, settlement, and notice requiring this information should be struck.

Rule 23 provides a means for objections. To infer an objection is less meritorious merely because its author has made one before would undermine Rule 23. Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation.] Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value. *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003). Class Counsel's attempt to discourage objectors by requiring information not germane to this cause cannot be enforced." It appears the defendants and class counsel colluded and decided not to release mailing addresses and chose to hide/ignore that fact for the inflated attorney/ expense fees while settling for a low ball settlement in return, a quid pro quo.

Just so the objection is not illegally struck, this objector includes a list of objections going back five years from 11-19-19, under protest:

Lithium Ion Battery, three cases, Northern District of CA MDL 4:13-md-02420-YGR
Optical Disk Drive, two cases, Northern District of CA 10-MD 2143 RS
Edwards vs. National Milk Producers in Northern Dist of CA 4:11-cv-04766-JSW
Packaged Ice Litigation Eastern District of MI, Case No. 2:08-MD-1952-PDB
Red Bull SDNY Case No.1:13-cv-00369-KPF, Case No.1:13-cv-080008-KPF
Shane vs. Blue Cross Blue Shield, two cases, Eastern District of MI 10-14360

Total improvements/saving over the years is $46 million with that number rising substantially by the time all is said and done in this case.

**The Twenty Five Page Limit On Objections Is Not In The Long Notice**

The settlement agreement Doc. 739-2 @ 20 states, "Objections shall not exceed twenty-five (25) pages." The court's order Doc 742 pg 9 @20 says the same thing. That important 25 page limit fact was intentionally left out of the Long Notice so the lawyers can request the court strike any objection that is over the page limit or the court can do it sua sponte. It's deceitful, prejudicial, bias, bad faith against the class, it undermines Rule 23 and violates due process. Just so this objection is not illegally struck it was reduced to just twenty five pages, with exhibits, what a con. The intent is and does prevent a well throughout and comprehensive objection from being filed. This requirement helps everyone but the class and intentionally keeps other withheld issues out of the appeals court scope of review. It has also prevented this objector (and possibly other objectors) from expanding on existing issues, raising additional material issues and leaving out extensive authorities out of the objection because of the hidden, unfair, unreasonable, inadequate page limit. The process must be halted and the class re-noticed with accurate information for round two.

**The Requirement Of Objectors To Be Deposed Or Their Objections Will Be Struck Is Part Of The Scheme To Scare Off Objectors**

Number 7 in the Long Notice: "A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between 11/19/2019 and 12/5/2019 during which you are available to be deposed by counsel for the Parties."

It does not state in any of the filings that objectors who file an objection, or who may or may not appear with or without a lawyer at the hearing agree that they are now subject to the jurisdiction of the District Court and being deposed in Georgia. Objector objects because the pattern of being ambiguous and leaving out critical details is misleading and deceiving. This objector has reviewed 250 settlements over the years. The issues and errors combined above and below are the most extreme example of due process violations and bias he has ever seen, it's historic for all the wrong reasons. The four hurdles above are designed by the parties and stated by the court's Order 742 cause objectors harassment, ambiguity, confusion, annoyance, embarrassment, oppression, undue burden and expense. These requirements also have the effect of watering down and/or deterring objections from being filed. These are constitutional violations that violate due process and freedom of speech, it's tacit authorization and/or deliberate indifference to those violations made by class counsel, it's arbitrary, capricious, undermines Rule 23(e), violates Rule 23(a)(4) and Rule 23 (g)(4), ROPC, 11th Circuit and Supreme Court law. To prevent an illegal striking of his objection, the objector is available on these four dates per the ambiguous notice requirements, 11-19-19, 11-20-19, 11-21-19 and 11-22-19. Note, 226,000 people have objected to this settlement via an online petition as of 11/18/19, a legal world record. See https://threatpost.com/200k-sign-petition-against-equifax-data-breach-settlement/148560/ and https://www.change.org/p/don-t-let-equifax-escape-liability

**JND Administration Is Intentionally Violating Our Privacy Rights A La Equifax**

JND Administration should have had a disclosure like the following on the home page;

"This website uses cookies and other tracking technologies to improve user experience, track anonymous site usage, permit sharing on social media networks, sending email and advertising purposes. By continuing to use this website you accept the use of cookies. Click here to accept and/or read more about how we use cookies."

Or: "Your privacy. We use cookies to improve your experience on our site and to show you personalized advertising. To find out more, read our privacy policy and cookie policy. (There is a box with a check mark to click on that says) I'm OK with that or you accept the use of cookies by closing or dismissing this notice.

Or: "This site uses cookies to provide you with more responsive and personalized service and to show personalized advertisements. By using this site you agree to our Legal Disclaimer, and Online Privacy and Cookie Policy." Click below to consent to the use of this technology and the processing of your personal data.

Or: "Yahoo is part of Verizon Media. Verizon Media and our partners, need your consent to access your device and use your data (including location) to understand your interests, and provide and measure personalized ads." (A box has to be checked to agree or disagree to continue)

From Twitter's own home page; "This page and certain other Twitter sites place and read third party cookies on your browser that are used for non-essential purposes including targeting of ads. Through these cookies, Google, LinkedIn, NewsCred and Logicad collect personal data about you for their own purposes. Learn more."

The class website was last verified as being bugged as of today, November 19, 2019.

Class counsel and JND Administration did not disclose to the tens of millions of

visitors that they are allowing Google, Facebook, Twitter and Bing to place five to six

tracking (surveillance) cookies on the home page of the class website, each section at

the top of the page and in all the sections that drop down including the claims section.

Tracking includes the IP address, your location and information about your browser,

computer, and operating system; along with non persistent and persistent cookies being

inserted into to a visitor's browser. We will call this "Cookiegate" see Exhibit 3.

 In the "I would like to" section where a visitor clicks on "Check your eligibility" window then enters their last name and last six digits of their social security number, there are six tracking cookies, under the "File a claim" section there are five tracking cookies, in the "Upload a document" section there are five tracking cookies, in the "Check my claim status" there are six cookies, under "Contact the administrator" there are six tracking cookies and under the document section there are five tracking cookies placed. The page you actually file a claim on, six cookies are inserted. These cookies are placed into every visitor's device collecting data from the claimant without their knowledge, authorization, compensation nor did this objector or the class members agree to any legal disclaimers, online privacy and cookie policies. One Google cookie stays on your device for two years and the other two, Facebook and Twitter may be staying on their forever so tens of millions of visitors to the website and those who filed a claim were illegally and are currently being tracked. Is there any additional malware/spyware (other than cookies) on the website presently? The cookies present a legitimate risk to website security and user privacy. Download "Ghostery" to verify. Equifax allows our information to be stolen and class counsel and the administrator allowed Google, Twitter, Facebook and Bing to track us illegally which allows them to take that information and add to their profile of each person in their own databases to sell to third parties. What a treasonous, double cross sellout, they all need to be fired.

Next, anyone could easily figure out the correct missing three digit Social Security number using pen and paper by knowing one other item to match to the balance of the numbers if they had them. Or, using that one item and a "Brute-Force Attack", the correct sequence can be figured out in one second using a typical laptop. By using a claimant's IP, a visitor can be simply identified with other information Google, Facebook and Twitter possess. The claims process exposed 67% of our social security number again and it was all unnecessary as you will read further below.

What an illegal and egregious violation of our privacy by the parties, a la Equifax. History and tradition reinforce that a concrete injury for Article III standing purposes occurred when the administrator allows Google, Facebook and Twitter or any other third party to track a person's internet activity without authorization. The parties intentionally failed to disclose that fact in plain sight on the first page of the website. Since the visitor was not told about the tracking, the cookie policies did not accept nor give permission to place cookies, JND Administration and class counsel should be fired and replaced immediately or they can forfeit their fees which go back into the fund for the benefit of the class. This is a class action waiting in the wings against all the parties. I and many claimants would not have continued on the site if we were told about this illegal tracking up front. I would consider being a named plaintiff in a class action against them and request $1,000.00 on behalf of each person who visited the site, was illegally tracked and had their privacy invaded for a second time in this case.

**The Failure To Inform Class Members What Information Was Stolen From Them Individually Before Settling This Case Violates Due Process**

The class is forfeiting all claims against the company that can cause *lifelong* damage to everyone for a short term solution and the parties are downplaying the problems we face. The terms of this "settlement" (immunity) with Equifax are utterly unacceptable. Extremely valuable and irreplaceable information was stolen from all of us but Equifax and the plaintiffs won't disclose what "impacted" information was stolen from each individual.  According to sources in and out of the record, the following information was/may have been stolen from 147.9 million victims such as name, home address, city, state, zip code, date of birth, social security number, telephone numbers, email addresses, dispute documents like copies of tax returns, pictures taken from the drivers licenses, voter registration cards, financial account numbers, credit or debit card number, in combination with any required security code, access code, or password that would permit access to the consumer's financial account, tax liens, civil judgments, copies of utility bills, property tax bills, public records etc for those disputing an issue on their reports that is required to prove who they are, any biometric information, meaning data generated by electronic measurements of an individual's unique physical characteristics, such as a fingerprint, voice print, retina or iris image, birth certificate or other unique physical characteristics or digital representation and other information that they have put into their records. Also included is any non-FCRA information data

such as information that bears on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and any other data that is/was used or expected to be used or collected in whole or in part for any purpose. Each victim needs to know what was stolen from them.

A minimum of twenty three different pieces of information were stolen per person for a grand total of up to 3,401,700,000. (three billion four hundred million seven hundred thousand) separate pieces of information. (147.9 million class members multiplied by 23 pieces each) That information was stolen during the 1680 hours multiple hackers had access to Equifax's servers making 10,000 inquiries and there could be more missing data that has not been disclosed. The most valuable information that could ever be stolen from someone was and is irreplaceable. This objector and each of the 147.9 million victims have the right to know exactly what information Equifax allowed to be stolen from each of us that was in their care, custody and control *before* deciding what the best course of action to take regarding our claims. The more information that was stolen the increased amount of damage caused to myself and each class member so the more damages someone would be owed. Some may have lost 10%, 50% or 100% of the total. Without knowing what was stolen, a class member and this objector cannot in good faith opt out because we have no idea what was stolen, the value of it, have no evidence to present to an attorney or to a court if they wanted to move forward on their own and what to ask for in damages. Our lawyers have intentionally failed to explain

to the unnamed class the ramifications of the theft of their data before forcing us into this unfair, unreasonable and inadequate deal. Re-notice to the class is required.

. **Identity Theft Protection Is Also Required Not Just Credit Monitoring**

Out lawyers failed to disclose to the 147.9 million victims in the long notice that this deal should also include identity theft monitoring. Credit monitoring services often market themselves as safeguards of your credit profile, but that's not quite the case.

Here's what credit monitoring can't do:

- It can't prevent or alert you to identity theft or credit card fraud.
- It can't keep you from receiving phishing emails — or from opening them.
- It can't keep or alert you to someone from applying for credit in your name.
- It won't correct errors on your credit report.
- It can't alert or stop taxpayer identity theft and tax refund fraud.
- It can't stop or alert you to payday loan fraud.
- It can't stop or alert you to medical identity fraud
- It can't stop Medicare fraud
- It can't stop or alert you to change of USPS mailing address requests.
- It can't stop or alert you to orders for new utility, cable, and wireless services.
- It can't stop or alert you to check-cashing requests.

This settlement wants to help claimants with after the fact and future identity theft costs, but why not stop it first? The settlement should provide for credit monitoring **and** identity theft protection for free from all three credit agencies *forever,* since this is the biggest threat for each class member is *forever.* The ID Theft Monitoring service should alert consumers when stolen identity information is detected. This deal is a get rich, quick scheme by the lawyers and named plaintiffs who sold out the class.

**The 147.9 Million Class Members Should Not Have To File A Claim**

Apparently Equifax and our lawyers only want a small percent of the affected class to file a claim to keep their cost's low and the stock price high, cheating 95% or 140 million people out of damages. The parties failed to meet their burden to show that a claims process is necessary or desirable. This claims settlement is abusive because it is solely being utilized to reduce the payout to class members by Equifax with class counsel's blessing.  A directive from the Federal Judicial Center, which instructs that, "[w]hen the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." *Id.*; *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*(2010). Available at:http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

The FJC's guide instructs district courts to consider whether "a claims process [is] actually necessary[]," cautioning that "[i]n too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." The parties are trying to keep most of the 147.9 million victims from participating in this deal is by using a "claims made" settlement process, which is dependent on each class member filing a claim. Class members should *not* be required

to file a claim, they should automatically be entitled to benefits since Equifax already knows who the valid class members are and possess class member's contact data. This claims process is a double cross by our lawyers and named plaintiffs. So, since Equifax has up to date mailing addresses and already knows who is entitled to relief, I request on my behalf, and on behalf of all 147.9 million absent class members, that Equifax send a letter to each of us by first class mail in an envelope disclosing which personal information was stolen from each class member. It should include a statement that the recipient is now automatically enrolled in the claim fund and is covered in a new deal with credit *and* ID theft monitoring for *life,* since the risk we face is for *life*. The envelope should also include a copy of the new revised long notice which will ensure all class members are properly noticed under Rule 23 and due process for round two after all the issues and errors are repaired, if possible. The class is not paying for past or future notice costs, the lawyers are due to their errors and double cross. The treacherous claims/notice program is a complete waste of money and unnecessary but saves Equifax a fortune by limiting claims underhandedly. It's a crooked rigged deal.

.                    **The 125.00 Cash Component Was A Bad Faith Bait Trick**

If only 250,000 people out of 147.9 million class members had filed a claim for past out of pocket costs for credit monitoring they could receive the full $125.00 amount. As of 10-30-19, 3 million signed up for monitoring, the cash number is intentionally left undisclosed hmm. The parties knew all along the cash amount would be pennies on

dollar of the actual *past* yearly costs incurred by those who paid out of pocket for coverage in the past, millions of them. Applicable claimants paid just Equifax $30 a month for years for credit monitoring. Those who seek the cash component should also be able to obtain credit and ID monitoring as well for *future* damages that may occur even decades from now. If someone selects the cash option then that class member then has to pay $200.00 a year on their own starting today for just credit monitoring of all three reports. These conjoined issues are being unfairly separated out to ram this square approval through a round approval hole so our lawyers trick the class and help Equifax conserve cash. Equifax can unfairly limit liability, the lawyers get paid off with $77 million and the puppet named plaintiffs $2,500.00 in a quid pro quo deal. I would want $30,000.00 for all my stolen information described above if I were selling it, but Equifax allowed the information  to be stolen and now they and my lawyers are fine paying me a quarter or I forfeit that amount for free credit monitoring for four years, worth retail, $800.00, uh…..no. The parties were scheming and possibly drinking whiskey out of a bottle in a smoke filled back room some place when these sellout amounts in this scheme were concocted. It's a conspiracy by class lawyers, the notice entity, the claims administrator, and the puppet named plaintiffs all done for their money first and in return Equifax is let off the hook for a fraction of the damages by selling out the 147.9 million member unnamed class. The objector requests that class counsel and all the named class representatives be fired for their treasonous

double cross which sold out the class under 23(a)(4), 23(g)(4), it's misconduct and they violated the Rules of Professional Conduct, they are inexperienced and/or inadequate.

.      **Is There Insurance Coverage Involved In These Settlements?**

Are there insurance policies involved in this settlement? Are D&O policies in play and being drawn on to pay for this settlement? Is Loyds of London involved? Are subsidiaries and affiliates insurance coverage in play?  How many policies are available and what is the amount of coverage for each contract and in total? Have the executives responsible when this breach occurred have they paid for any part of this settlement and if not why not? The number of polices, the amounts and copies of the contracts need to be disclosed and should have been disclosed to the class before we decided what to do. They should also be posted to the class website ASAP along with the objections filed and a copy of the fairness hearing transcript so the 147.9 million class members who were not at the hearing can find out what happened.

.      **The Deal Does Not Take Into Account The Differences In State Laws**

In Amchem Products Inc. v. Windsor, 521 U.S. 591, 625 (1997), holds that the adequate representation requirement of Federal Rule of Civil Procedure 23(a)(4) mandates the absence of "conflicts of interest between named parties and the class they seek to represent." The court must hold that Rule 23(a)(4)'s adequacy requirement is not satisfied right now because the 147.9 million member settlement class contains consumers from all fifty states and treats them as if they are all covered by one law.

A nationwide class cannot be certified and a pro rata distribution plan cannot be approved without first taking into account the substantial differences in state laws.

### The Claims Payment Process Is A Waste Of Money For The Class

Why send out a card with $.25 on of compensation on it, its de minimis. How much will that cost vs. sending out a postcard check? There is a huge cost difference and markup by the administrator doing it the present way which is a huge waste of money. Why not electronic deposit for those who can do that so they can receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods saving a tremendous amount of money for the class? This is not a new idea; it's being done in a case I am involved in right now. Our lawyers don't care; the cost is paid for with (OPM) Other People's Money, class money, they just want $77 million and retire.

### An Opt out Form Is Intentionally Missing To Keep The Deal Break Number Low

17.3 (from the settlement agreement); "Defendants also may at their sole discretion terminate this Agreement on 5 Business Days written notice to Class Counsel if more than a specified number of individuals submit valid requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for in camera review." A opt out form, in the proper languages, is intentionally missing on the class website to keep the opt out number below the deal break mark, voiding the

notice. That deal break number should have also been disclosed to the class. The

astounding issues show collusion against the class so class counsel should be fired.

**The Monitoring Value And Fee Request Are Deceitfully Inflated-Its Misconduct**

The monitoring value is only worth $800.00 retail over four years, not $1,920.00 as our

duplicitous lawyers claim to trick the class into to showing how "great" the deal is. See

Exhibit 4. The lawyers did not come up with the 500,000 pages of evidence, they just

assembled it from various sources, negotiated a lowball illegal lay down deal dictated

by Equifax and are claiming unjustified credit and gouging us with inflated hours and

fees for finding the named plaintiffs. But, because we have poor results it should be

based on lodestar. Here is who really did all the work and got us the evidence; Federal

Trade Commission, New York Department of Financial Services and Consumer

Financial Protection Bureau, Federal Bureau of Investigation, Consumer Protection

Financial Bureau, SEC, House Energy and Commerce Committee Senate Banking

Committee, Fifty State Attorney Generals' (led by the Puerto Rico AG see Doc 773)

and the Government Accounting Office. The evidence was provided by and paid for by

the U.S. taxpayer, there is little risk to the class by moving forward.

## Summary

The court has a legal, ethical and moral obligation to reject this scandalous, error

plagued, trial balloon deal because it contains a multitude of material errors, omissions,

collusion, bad faith, scheming, deception, misconduct, due process errors, it violates

freedom of speech, it has a missing opt out form, lowball reimbursement, it undermines and violates Rule 23, 11th Circuit and  Supreme Court case law. It is crystal clear that class counsel and named plaintiffs sabotaged this deal and betrayed the trust of the class in favor of their own self-enrichment, its misconduct. I request class counsel and named plaintiffs be fired without fees, costs or expenses under 23(a)(4) and 23(g)(4), they are inadequate. This deal is a colossal failure under Rule 23(e).

The arrogance of the lawyers along with the historic number of issues and material errors they made, ignored and covered-up in this Titanic wreck of a collusional settlement, is equal to the arrogance of and fatal errors made 143 years ago by General Custer at the Battle of the Little Bighorn.

This twenty five page objection, with four exhibits, plus a motion to seal his current address and the sealed document were mailed to the administrator on 11/19/19 by prepaid, first class, certified, return receipt mail. Since the USPS does not deliver to the street address a P.O. Box is required.

I certify under penalty of perjury of the United States that all of the above is true and accurate to the best of my knowledge.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394

E: caaloa@gmail.com P: 248-635-3810    November 19, 2019

Exhibit 1

# Check Your Eligibility

Use the form below to find out if your information was impacted and if you are a class member.

Last Name

| andrews |

Last 6 Digits of Social Security Number

| ****** |

# Thank You

Based on the information you provided, our records indicate your personal information was impacted by this incident.

For more information, visit the FAQ page.

**From 09-12-19**

**Checked three times**

Exhibit 2

# EQUIFAX DATA BREACH SETTLEMENT

# Your Claim Summary

## Your Information

| | |
|---|---|
| First Name | Christopher |
| Last Name | Andrews |
| Middle Initial | |
| Alternative Name | |
| Mailing Address | PO Box 530394 |
| Apt No | |
| City | Livonia |
| Country | United States of America |
| State | Michigan |
| Zip Code | 48153-0394 |
| Phone Number |  |
| Email Address | caaloa@gmail.com |
| Year of Birth | |

## Credit Monitoring: Free Service or Cash Payment

☑ Option 1, Credit Monitoring: I want to receive free, three-bureau credit monitoring.

## Cash Payment: Time Spent

Privacy - Terms

⊘ No spent time

# Cash Payment: Money You Lost or Spent

⊘ No money lost or spent

# Supporting Documents

⊘ No documents selected

# Your Signature

Your claim will not be received by the Settlement Administrator until you click the submit button after your electronic signature. For security reasons, once you hit submit, you **will not** be able to make any changes to your claim form through this portal, however, you will still be able to go into the portal to upload supporting documentation if you haven't done so. If you later decide you need to change any of the information on your claim form, you will need to reach out to the Settlement Administrator directly.

☑ I affirm under the laws of the United States that the information I have supplied in this claim form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

☑ I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

Christopher Andrews

Date    September 12, 2019

SUCCESS 

Your claim form has been submitted successfully

Your claim number is: ▓▓▓▓▓▓▓▓▓

Exhibit 3

Tracking cookies on the Home Page Of Website and In Each Section and Document
Advertising
Twitter
2 Trackers
"Our mission: To give everyone the power to create and share ideas and information instantly, without barriers."
Continue to full tracker profile
Detected tracker URLs:
https://static.ads-twitter.com/uwt.js
1 ad
GoogleAdWords
Google (www.google.com) operates the Google Display Network a collection of millions of websites and mobile applications that are powered by display advertising, including many Google services like Y...
Continue to full tracker profile
Detected tracker URLs:
https://www.googleadservices.com/pagead/conversion_async.js


Essential
1 Tracker
Google Tag Manager
Google (www.google.com) operates the Google Display Network a collection of millions of websites and mobile applications that are powered by display advertising, including many Google services like Y...
Continue to full tracker profile
Detected tracker URLs:
https://www.googletagmanager.com/gtag/js?id=UA-143121829-
1https://www.googletagmanager.com/gtag/js?id=AW-728851818


Site Analytics
1 Tracker
Google Analytics
Google (www.google.com) operates the Google Display Network a collection of millions of websites and mobile applications that are powered by display advertising, including many Google services like Y...
Continue to full tracker profile
Detected tracker URLs:
https://www.google-analytics.com/analytics.js

"We constantly innovate to simplify the business of digital advertising, so that customers can amplify their brand stories across audiences, channels and screens in the most creative, engaging and ef...

Continue to full tracker profile

Detected tracker URLs:

https://bat.bing.com/bat.js

Social Media
Facebook Connect
1 Tracker
Getting tracker description…

Detected tracker URLs:
https://connect.facebook.net/en_US/fbevents.js
List View

Cookie    _fbp:"fb.1.1566071434604.2098293356"

## About this cookie: fbp

Used by Facebook to deliver a series of advertisement products such as real time bidding from third party advertisers

The main purpose of this cookie is: **Targeting/Advertising**

 https://cookiepedia.co.uk/cookies/_fbp

Cookies first seen on the website and all sections on 8-28-19 and last seen 11-19-19.

Exhibit 4

**Copied And Pasted From  Experian Website**

## IdentityWorks[SM] Premium

$199.99 /year (save $39.89 annually) multiplied by four years is $800.00 a year not $1,920.00 a difference of $1120.00 or 240 % overcharge value. This is with all three credit bureaus.


https://www.experian.com/consumer-products/compare-identity-theft-products.html
Last seen 9-12-19

You can also get one bureau credit monitoring for free with Credit Karma and AAA.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No.  1:17-md-2800-TWT

**CONSUMER ACTIONS**

Chief Judge Thomas W. Thrash, Jr.

Fairness Hearing Date 12/19/2019

**Motion To Seal Objector's Home Address**

Since the hundreds of lawyers, the ninety plus named plaintiffs and the lawyers with

defense counsel did not have to disclose their home address for the world to see and

possibly be subjected to harassment at their residence, neither should any of the

objectors. This objector requests his address be sealed from public view. The lawyers

can see the address if they choose. A separate sealed document includes his residential

address.

This motion should be granted.

I certify under penalty of perjury of the United States that all of the above is true and

accurate to the best of my knowledge.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394 E:

caaloa@gmail.com P: 248-635-3810    11/19/19.

This motion to seal the address and the sealed document itself was mailed to the

administrator with the objection and exhibits on 11/19/19 by prepaid, first class,

certified, return receipt mail.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394 E:

caaloa@gmail.com P: 248-635-3810    11/19/19.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No.  1:17-md-2800-TWT

## CONSUMER ACTIONS

Chief Judge Thomas W. Thrash, Jr.

Fairness Hearing Date 12/19/2019

**Sealed Document**

**Christopher Andrews**

**9555 Crestline Drive**

**Pinckney, MI 48169**

I certify under penalty of perjury of the United States that all of the above is true and accurate to the best of my knowledge.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394 E: caaloa@gmail.com P: 248-635-3810    11/19/19.

This sealed document was mailed to the administrator with the objection on 11/19/19 by prepaid, first class, certified, return receipt mail.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394 E: caaloa@gmail.com P: 248-635-3810    11/19/19.

Christopher Andrews
P.O. Box 530394
Livonia, MI 48153-0394

NOV 2 2 2019

7017 1450 0001 2552 2363

CERTIFIED MAIL

Equifax Data Breach Class Action
Settlement Administrator
Attention: Objection
c/o JND Administration
P.O. Box 91318
Seattle, WA 98111-9418

Metroplex AA 330
WED 20 NOV 2019 9M

U.S. POSTAGE PAID
LEXINGTON, KY
NOV 19, 19
AMOUNT
$8.35
98111     R2305K127140-09

8435 SW 89th Ave
Portland Oregon 97223
971 777 4527

Received
SEP 30 2019
by JNDLA

Honorable Thomas W. Thrash Jr.

United States District Court for the Northern District of Georgia,

Courtroom 2108

Richard B. Russell Federal Building and United States Courthouse,

75 Ted Turner Dr., SW,

Atlanta, GA 30303-3309


In the matter of :*Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, AKA "Equifax Data Breach Lawsuit

Your Honor,

I am Christopher Helmsworth, residing at 8435 SW 89th Ave, Portland Oregon 97223.

I believe that I am a member of the above mentioned lawsuit, having received emails from Equifax to that effect and confirming via the Equifax settlement website that I am on their list.

I object to this settlement for two main reasons. First, to even begin processing my claim, Equifax's website says that I must submit a copy of my driver's license. I find it shocking that a company that did such a poor job of keeping track of my other information wants me to give them more confidential information without at least outlining how they will keep this information secure.

Second, the settlement does not adequately address the scope of the data breech and the company's lackadaisical response. I became aware that my data had been misused in late June 2017. Announcement of a data breech did not come out until September 2017. Had I not frozen my credit in early July, I would have been financially ruined. As it is, because of Equifax's actions, I have placed a permanent freeze on my credit information, removing it only temporarily when it is needed for specific financial activity. I expect to do this burdensome action for the foreseeable future as I have lost all confidence in companies such as Equifax.

Please be advised that I have not objected to any class action settlements in the previous five (5) years.

I do not plan to appear at the Fairness Hearing in person or through a lawyer.

I am available to be deposed on Nov 21, 25, 26, and 27.

Sincerely

Christopher Helmsworth

CC: Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



PORTLAND OR 972

27 SEP 2019 PM 5 L

SEP 3 0 2019

8435 SW 89TH AVE
PORTLAND OR 97223

EQUIFAX DATA BREACH
CLASS ACTION SETTLEMENT ADMIN
ATTN: OB SECTION
C/O JND LEGAL ADMIN
PO BOX 91318
SEATTLE, WA 98111 - 9418

98111-941818

Received

NOV 2 2 2019

by JNDLA

STATEMENT OF OBJECTIONS

## In re: Equifax Inc. Customer Data Security Breach Litigation
## No. 1:17-md-2800-TWT

I have not objected to any class action settlements in the previous five years. I do not intend to appear at the Fairness Hearing personally or have an attorney appear for me. I am available to be deposed on the following four dates: November 22nd, 23rd, 24th, and 25th.

## Statement of Objections

I am objecting to the proposed settlement[1] as the parent and legal guardian of two minors affected by the breach. Both of these minors were identified as having been affected through use of the eligibility tool made available on the official settlement website.[2]

I am objecting to the settlement because

- Equifax was aware of the sensitivity of the Personally Identifiable Information they were entrusted with and the damage, both financial and emotional, that would be caused if this information was stolen;

- Equifax was grossly negligent in their management of this information;

- The actual, financial damages, excluding emotional damages, will be far in excess of the settlement amount;

- The non-monetary settlement considerations are insufficient;

- The settlement amount fails to appropriately penalize Equifax for their gross negligence; and

- The settlement amount fails to incentivize attention to cybersecurity amongst other companies in the industry.

Each of these points is detailed in the following sections.

**Equifax was aware of the sensitivity of the Personally Identifiable Information they were entrusted with and the damage, both financial and emotional, that would be caused if this information was stolen.**

A criminal's ability to steal an individual's identity is limited by the number of data items a criminal can collect on a target victim. Frequently, these data items must be expensively collected and aggregated from multiple, different sources.[3]

---

[1] *Settlment Agreement and Release. In re: Equifax Inc. Securities Litigation.* No. 1:17-md-02800-TWT. Doc. 739-2. N. D. Ga., July 22, 2019.

[2] URL: https://eligibility.equifaxbreachsettlement.com/en/Eligibility.

[3] Lilly Newman. "The WIRED Guide to Data Breaches". In: *WIRED* (Dec. 2018). URL: https://www.wired.com/story/wired-guide-to-data-breaches/amp.

1

Unlike breaches of the past, the number of data items stolen in the Equifax breach is unrivaled. Equifax has revealed in Securities and Exchange (SEC) filings that names, dates of birth, social security numbers, passport details, driver's license numbers, driver's license states, addresses, phone numbers, and email addresses were included in the stolen data.[4] This number of data items exposes the victims of the Equifax breach to a significantly heightened risk of identity theft and to incidents of identity theft that are likely to be far more directly and indirectly expensive and time consuming and difficult to correct. Additionally, given the permanence of these data times—social security numbers, driver's license numbers, addresses—criminal organizations will be able to use this information for the life of the victims, much longer than the four years of credit monitoring offered under the settlement.

**Equifax was grossly negligent in their management of Personally Identifiable Information.**

The gross negligence and incompetence of Equifax has been enumerated in a ruling partially denying Equifax's motion to dismiss a class-action lawsuit filed against it by investors in the company.[5] Briefly, while Equifax claimed it employed "strong data security and confidentiality standards" and maintained "a highly sophisticated data information network that includes advanced security, protections and redundancies,"[6] the ruling notes that "according to cybersecurity experts, a 'catastrophic breach of Equifax's systems was inevitable because of systemic organizational disregard for cybersecurity and cyber-hygiene best practices.'"[7]

**The actual, financial damages, excluding emotional damages, will be far in excess of the settlement amount.**

The actual, financial damages, excluding emotional damages, will be far in excess of the maximum amount of $425 million Equifax may pay to victims to remedy the damage done by Equifax. A 2014 study by the Department of Justice (updated in November 2017) found that identity theft victims lost an average of $1,343 as a result of identity theft and that approximately 7% of the US population over the age of 16 experienced some form of identify theft.[8] If these numbers are conservatively applied to the approximately 150 million victims of the Equifax credit breach then we can expect approximately 10.5 million (7% of 150 million) individuals to be the victim of identify theft as a

---

[4] Equifax. *Form 8-K*. May 2018. URL: https://www.sec.gov/Archives/edgar/data/33185/000119312518154706/0001193125-18-154706-index.htm.

[5] *Consolidated Class Action Complaint For Violations of the Federal Securities Laws. In re: Equifax Inc. Securities Litigation*. No. 1:17-cv-3463-TWT. Doc. 49. N. D. Ga., Apr. 23, 2018.

[6] Ibid., ¶ 53.

[7] Ibid., ¶ 66.

[8] Erica Harrell. *Victims of Identity Theft, 2014*. Revised November, 2017. Bureau of Justice Statistics, Sept. 2015. URL: https://www.bjs.gov/content/pub/pdf/vit14.pdf.

direct result of the Equifax breach, which will cost the victims a combined total of approximately $14 billion (7% of 150 million times $1,343). That 7% of the 150 million victims of the Equifax breach will be victims of identify theft as a result of the Equifax breach is a conservative underestimate given the quality of the data acquired from Equifax—full names, social security numbers, current and past addresses, current and past employers, current and past debts, and current and past financial history.

**The non-monetary settlement considerations are insufficient.**

Under the settlement victims of the Equifax breach will receive four years of three-bureau credit monitoring from Experian[9] (minor victims may receive a *maximum* of an additional fourteen years of one-bureau credit monitoring from Equifax[10]), and seven years of assisted or full identity restoration services.[11] In exchange for allowing their Personally Identifiable Information to be stolen, making them lifetime victims of an increased probability of identity theft and credit abuse, Equifax is offering four years of non-preventative, monitoring services and seven years of identity restoration services, both of which place the burden and direct and indirect costs on the victim. The monitoring services are nothing more than that—monitoring. The assisted identity restoration is accurately described in Exhibit 4 of the settlement as a "customized step-by-step process with form letters [. . .]"[12], and the full identity restoration requires the victim to execute a "specialized limited power of attorney" with the as of yet unknown and unnamed identity restoration service provider.[13] Equifax can and should be required to provide better service. It is well known that all three credit bureaus provide "V. I. P." service to detect and resolve issues before they affect consumers.[14] Furthermore, under the settlement, there are no restrictions on either Experian or Equifax utilizing the information they acquire to satisfy the conditions of the settlement to further augment their databases.

**The settlement amount fails to appropriately penalize Equifax for their gross negligence.**

While the May 2017 breach of Equifax's systems was the largest in number of victims, it is not Equifax's first or only breach. In April 2013 credit reports were stolen, in May 2016 its W-2 Express website was breached, in April 2016 tax data was stolen, in January 2017 credit information was leaked on LifeLock customers, an Equifax partner, and there are a number of smaller breaches.[15]

---

[9]*Settlement Agreement and Release*, item 7.1, p. 20.
[10]Ibid., item 7.4.1, p. 21.
[11]Ibid., item 7.2, p. 20.
[12]Ibid., Exhibit 4, Restoration Services, item 1., p. 103.
[13]Ibid., Exhibit 4, Restoration Services, item 2., p. 103.
[14]Tara Siegel Bernard. "Credit Error? It Pays to Be on V. I. P. List". In: *The New York Times* (May 11, 2014). URL: https://www.nytimes.com/2011/05/15/your-money/credit-scores/15credit.html.
[15]Thomas Brewster. "A Brief History of Equifax Security Fails". In: *Forbes* (Sept. 2017). URL: https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-data-breach-

As one security researcher commented, "'It really looks like they [Equifax] don't care about security on their website—not surprised they got breached, certainly easily [sic.]'"[16] In each of these incidents, cybersecurity experts have observed that these breaches would have been preventable if basic cybersecurity best practices and industry standards had been followed.[17] Before the May 2017 breach Equifax was independently notified by the United States Department of Homeland Security[18] and the Apache Software Foundation[19], the open-source software foundation that develops and maintains the software that was the initial vector for the breach, that their systems needed to be patched. These multiple breaches, their preventable nature, and the fact that Equifax was notified by multiple, independent, authoritative parties that the systems ultimately breached in May 2017 were vulnerable indicates a level of incompetence, gross negligence, and inattention to cybersecurity that is nearly unfathomable.

**The settlement amount fails to incentivize attention to cybersecurity amongst other companies in the industry.**

Under the settlement, Equifax will pay restitution of approximately $380 million, which may be increased to a maximum of approximately $505 million. This amount is insufficient to compensate victims for actual damages, and does not provide any funds to compensate victims for pain and suffering. If allowed to stand, this amount will set a dangerous precedent for companies responsible for securing Personally Identifiable Information. Hearkening back to the cost-benefit analysis that led to the Ford Pinto, the message to companies will be clear: cybersecurity is an optional concern that can be subjected to the same cost-benefit analysis as any corporate undertaking; fines will have an impact, but a recoverable impact, and, most importantly, companies will not be held accountable for the damages caused by their negligence.

Christopher Lewis
November 18, 2019

---

history/.

[16]Brewster, "A Brief History of Equifax Security Fails".

[17]Office of Senator Elizabeth Warren. *Bad Credit: Uncovering Equifax's Failure to Protect Americans' Personal Information*. US Senate, Feb. 2018. URL: https://www.warren.senate.gov/files/documents/2018_2_7_%20Equifax_Report.pdf.

[18]Computer Emergency Readiness Team (CERT). *Apache Struts 2 is vulnerable to remote code execution*. VU#834067. US Department of Homeland Security, Mar. 2017. URL: https://www.kb.cert.org/vuls/id/834067/.

[19]Apache Software Foundation. *Apache Struts 2 is vulnerable to remote code execution*. CVE-2017-5638. Jan. 2017. URL: https://cve.mitre.org/cgi-bin/cvename.cgi?name=CVE-2017-5638.

My personal information is:

Christopher Lewis
3 Ledgebrook Court
Weston, CT  06883

WESTON, CT 06883

NOV 2 2 2019

Equifax Data Breach Class Action Settlement
Attn: Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

98111-9418

WEST CHESTER NY 105
19 NOV 2019 PM 2 L

FOREVER USA

CLIFFORD SHORF
5209 NASH DR
THE COLONY, TX 75056

November 14, 2019

Equifax Data Breach Class Action Settlement Administrator
ATTN: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received

NOV 18 2019

by JNDLA

In re:  Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

I know I am a member of the Settlement Class because shortly after the breach was announced, Equifax confirmed on their data breach website that I was affected by the data breach.

I have recently filed a claim on the Equifax Breach Settlement website for benefits of the proposed Settlement.  I would like to be a beneficiary of Free Credit Monitoring and ID Theft Protection at least to the extent allowed in any Settlement approved by the Court.

I object to the limited benefits of the currently proposed Class Action Settlement for the following reasons.  Equifax compiled our personal data without our consent, and while profiting from use of our information, failed to properly protect our information from theft.  This breach subjects us to Identity Theft and misuse of our Identities for the rest of our lives and possibly beyond that.  The protection offered in the Settlement is of limited duration.  With our information most likely in the wrong hands as a result of the breach, the risk to future misuse of our Identities is not of limited duration.  It is a risk that will continue for our lifetimes and beyond.  I propose that Equifax provide free for a Lifetime, 3 credit bureau monitoring, monitoring of the dark web, and free credit restoration as needed, including the free services of credit counselors and attorneys  as needed.  Equifax should also provide unlimited restoration of any financial losses resulting from Identity Theft.

I have not been a member of any other class action suit in the previous 5 years.

I do Not intend to appear at the Fairness Hearing.  I have Not hired my own attorney.  I am depending on the attorneys hired by the Court to represent the Class, to also present to the Court my request for an increase in Settlement benefits for the Class.

Thank you.

Sincerely,

*Clifford Shorf*

CLIFFORD SHORF

Mr. Clifford Shorf
5209 Nash Dr
The Colony, TX 75056

NOV 1 8 2019

NORTH TEXAS TX P&DC
DALLAS TX 750
14 NOV 2019 PM 8 L



Equifax Data Breach Class Action Settlement Administrator
ATTN; Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA  98111-9418

98111-941818

# Ms. Carol Sue Tittman

11 Tanglewood Drive

Danbury, CT. 06811-4220

tittmancarol@gmail.com

October 7, 2019                                    Page 1 of 3

Attn:   OBJECTION, C/O JND Legal Administration

EQUIFAX Inc. Customer Data Security Breach Litigation,

Case No. 1:17-md-2800-TWT

## EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT ADMINISTRATOR

## PO BOX. 91318

## SEATTLE, WASHINGTON 98111-9418

Ladies & Gentlemen:

I think I am definitely a member of this CLASS ACTION CASE, for reasons listed below:

1.   many issues, FRAUD, IDENTITY THEFT, USPS over many years

2.   currently trying to obtain CLOSURE LETTERS ($0.00 balances) from COMENITY BANK for 2 credit card accounts held by COMENITY BANK

a.   since March 2, 2019. I have been requesting these letters, since then 2 letters, different dates to Comenity Legal Department alerting them that I am requesting these closure letters

b.   more recently, October. 2019, wrote a letter to their (COMENITY BANK) OFFICE of the PRESIDENT, explaining that I have requested these closure letters since March, 2019. I have received 3 closure letters from Comenity Bank for other credit card accounts held by their bank.  There are 2, now, that I cannot seem to obtain these closure

letters for. Now questioning if it is because of the EQUIFAX DATA BREACH ISSUE.

## *I AM OBJECTING TO THE SETTLEMENT FOR THIS DATA BREACH FOR REASONS ENUMERATED BELOW:*

1.  for 6-7 years now many issues with my banking, created havoc in my life, constantly having to close accounts then open new accounts, checking accounts, credit card accounts due to FRAUD, IDENTITY THEFT, IMPERSONATION, etc.

2   much reporting to federal bureaus, agencies, WHITE COLLAR CRIME, SENIOR CITIZENS TARGETED, WOMEN, FEDERAL BUREAUS HAVE WONDERFUL VERBIAGE. LOOK AT THE PONZE SCHEME AND ALL OTHER SCHEMES WHERE THERE ARE MEGA LAW SUITS

3   much of my time spent as well as my money for these DISTURBANCES, WHERE PROCESSES SHOULD HAVE FLOWN IN A NORMAL PATTERN

4   EQUIFAX's BANDAGE, if you will, to PACIFY CUSTOMERS AFFECTED, is NOT ADEQUATE for the disturbances, errors, issues created by this DATA BREACH

At this time, I have NOT objected to any other class action settlements where I DO have several in the works/pending

At this time, October, 2019, I am not considering appearing or being represented by an attorney for this FAIRNESS HEARING dated **11/19/2019 and 12/05/2019.**

*IT CERTAINLY COULD BE ALL MY PREVIOUS ISSUES (Credit Cards, Banking, etc.) COULD HAVE BEEN ASSOCIATED WITH THIS EQUIFAX DATA BREACH. I AM CURRENTLY HAVING ALL ISSUES WITH REGARD TO MY BANKING AND CREDIT CARDS INVESTIGATED AT THE FEDERAL LEVEL, MANY LETTERS TO THE FBI, FEDCIA, IC3's, TIPS, ICE/HSI. PEOPLE OF SUSPICION HAVE BEEN REPORTED AS WELL.*

*I HAVE ALL RECORDS (letters, emails, correspondences) OF EVERYTHING I HAVE HAD ISSUES WITH, REPORTED, OVER THESE PAST NUMBER OF YEARS. AS I HAVE KNOWN, MANY LAW SUITS HAVE BEEN INTERNAL, LOOK AT WELLS FARGO, WHERE I HAVE A CLAIM.*

AT THIS TIME I WILL NOT MAIL ALL MY SUPPORTING DOCUMENTS. I WOULD NEED A SMALL TRUCK. BE ADVISED YOU, THE

COURT, LAWYERS, WILL HAVE MY FULL COOPERATION IF MORE BACK
UP, PAPERWORK, IS NECESSARY/REQUIRED.

Sincerely,

*Carol Sue Littman*

Ms.Carol Sue Tittman

Victim

Cc: my file

WESTCHESTER NY 2003

OCT 1 0 2019

Equifax Data Breach Class
Action Settlement
Administrator
P.O. Box 91318
Seattle, Washington
98111-9418 941

September 19, 2019

To whom it may Concern:

This is in reference to:  *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT.

I have received information from Equifax after the data breach, and therefore realize I'm part of the group that had information shared inappropriately.

! responded on your official website (for victims of that incident) that I had the credit card protection fraud coverage (I've had a couple of companies confirm they have given me that service for free, since they had incidents).  SO – I decided to ask for the $125 check instead.

Now, I'm reading that the real amount of the check will be something like a dollar.  That's not fair at all!   If I've had to take time to understand what happened in your breach situation, then figure out that I've been affected, then decide that I am supposedly protected by a fraud watch, well – I feel I should certainly be entitled to the $125 which you promised.  If Equifax didn't set enough money aside to pay all victims their share, that's something they need to resolve!

I have never objected to any class action settlements in the past.

I will not be at the Fairness Hearing, either in person or through a lawyer.

Sincerely,

Catherine Masie
cathy@masie.com

Catherine Masie
46 Circular Street, PO box 397
Saratoga Springs, NY  12866

Received
SEP 2 6 2019
by JNDLA



Music
PO Box 397
S.sprngs NY
12866

ALBANY NY 1220
23 SEP 2019 PM21

Equifax Data Breach Class Action
Attn: OBJECTION
c/o JND Legal Administration
PO Box 91318
Seattle WA 98111-9418
98111-941318

SEP 26 2019

Cay Horstmann
340 S Lemon Ave Unit 8492
Walnut, CA 91789

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

September 18, 2019

To whom it may concern:

I am a member of the settlement class because, according to Equifax, my Equifax account was among those affected by the security breach.

I would like to object to the proposed settlement. Dealing with the consequences of this security breach meant that I had to follow cumbersome processes for establishing accounts with credit monitoring sites, checking their status ever so often, and reacting to (fortunately innocuous) reports of potential issues. This made me expend time and energy to deal with a situation completely out of my control—I never chose to have my data stored with Equifax.

I was given a choice among two remedies. (1) Further credit monitoring, which I do not need since I receive it from other sources (2) A one-time payment of up to $125 which, according to news articles such as https://www.nytimes.com/2019/09/16/opinion/equifax-settlement.html is likely to be much lower—in the case that everyone in the class receives it, less than what I am paying to mail you this letter.

This is not fair, reasonable or adequate.

I have not objected to any class action settlements in the previous five (5) years. I do not intend to appear at the Fairness Hearing.

Sincerely,

Cay Horstmann

Received
SEP 2 6 2019
by JNDLA



SEP 2 6 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418
USA

98111841B B900

Horstmann
Uhlandstr. 28
10719 Berlin
GERMANY

Charles Lang II

9240 S. Michigan Avenue

Chicago, Illinois 60619

Received

NOV 2 2 2019

by JNDLA

November 10, 2019

In Regards to: Equifax Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

To: The Court / Equifax Settlement Administrator

I am aware that I am a member of the Equifax Breach Settlement class. I became aware of this information via a news story and then checking my information on the Equifax Breach Settlement Internet Website.

I object to the settlement as I do not think the settlement is adequate or fair to people who are in settlement group and it should not be approved. As once your personal identifying information is stolen, there is no time limit for which a thief can use that information.

I usually check my credit reports once per year for free. Now with this breach, I feel that every person in the settlement group should have a lifetime of credit report monitoring from at the every least Equifax. As they were the company that failed to adequately secure our information.

I have not decided if I will make the trip to the Fairness Hearing yet. But I hope that this Objection Letter and perhaps letters from others in the group will have an effect on this settlement.

Sincerely,

Charles Lang II

9240 S. MICHIGAN AVE.
CHICAGO IL. 60619

NOV 2 2 2019

EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT ADMINISTRATION
ATTN: OBJECTION
C/O JND LEGAL ADMINISTRATION
P.O. BOX 91318
SEATTLE, WA 98111- 9418

98111-941818

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

"Equifax Data Breach Lawsuit"

Charles A. Wolfe

2605 Kelsey Court

Plano, TX 75075

Received
NOV 2 1 2019
by JNDLA

Signature: *Charles A. Wolfe*

I am a member of the 'settlement class' as confirmed by the Eligibility Check tool on the Equifaxbreachsettlement.com website:

"Based on the information you provided, our records indicate your personal information was impacted by this incident."

I object to the current settlement as it does not provide for the long-term mitigation of identity-theft risk resulting from the negligence of Equifax in protecting the sensitive information of settlement class members. The risk caused by the Equifax breach will remain for the life of each member, yet the protection offered by the current settlement expires in 10 years or less. The real threat to members will occur once this short-term protection expires, after which members will be on their own with no recourse against Equifax in the case of identity theft, unless they previously exempted themselves from the settlement, in which case any suit to recover damages from Equifax resulting from identity theft would be difficult to prove resulted specifically from the Equifax breach. A fair settlement would provide for a reasonable level of lifetime protection.

I have objected to no other class-action settlements in the previous five years.

I do not intend to appear at the Fairness Hearing.

11/16/19

2605 Kelsey Court
Plano, TX 75075

NOV 2 1 2019

NORTH TEXAS TX P&DC
DALLAS TX 750
18 NOV 2019 PM 8 L

USA
FOREVER

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

628 Pullman Place

Alexandria, VA 22305

*Sept. 23, 2019*

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

> Received
>
> **SEP 30 2019**
>
> by JNDLA

Dear Sir,

Re Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT, my wife and I were among the 147 million whose credit files were breached due to malfeasance on the part of Equifax. (After receiving letters from Equifax, we confirmed online that both of our files were among those breached.)

After being told that the proposed settlement of up to $700 million will provide for $125/person for those whose files were exposed, we now find out that there are insufficient funds – only $31 million - to provide for anything more than 248,000 claims and that claims in excess of this will result in prorated payments. If all 147 million opt and qualify for the cash settlement, we would receive as little as 42 cents. What a misleading and unfair proposed settlement! Where is the other $669 million going?

Equifax's negligence has forced us to spend both considerable time and $60 to enroll in freezing our accounts with the three credit reporting companies. (We have the receipts.) On top of that, we have spent several hours over the course of the last year temporarily suspending these freezes when we open new banking accounts (and will have to do this for the foreseeable future).

For the record, we have not objected to any other class action suit settlements over the last five years.

Thomas Michael Slayton                    Cheryl Elizabeth Slayton

Stanton
628 Pullman Place
Alexandria, VA 22301

SEP 3 0 2019

Equifax Data Breach Class Action
Settlement Administrator

Attn: Objection
c/o JND Legal Administration
P.O. Box 91318

Seattle, WA 98111-9418

Chidozie Ugwumba
1585 Wolff St.
Denver, CO 80204

Received
SEP 2 4 2019
by JNDLA

To: Whom It May Concern
In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

I believe I am a member of the settlement class because I have received several notices from Equifax to that effect. I have completed all documentation required to receive the proposed cash settlement, which I have elected because I already have credit monitoring, having been the victim of prior breaches. I have not objected to any class action settlement in the past five years. I am objecting to this settlement due to:

1) Equifax's tactics of requiring multiple steps spread over significant time to file a claim.
2) The total amount is woefully inadequate. Because these breaches have become de rigueur, there are many people like me who already have credit monitoring, and who deserve reasonable compensation for the damage caused. Just because Equifax woefully underestimated the number of people who would elect cash—and then unsuccessfully schemed to reduce that number—does not mean we should not be adequately compensated.

I am not represented by a lawyer, and do not intend to appear at the fairness hearing.

Sincerely,

Chidozie Ugwumba

Chidozie Ugwumba
1585 Wolff St.
Denver, Co 80204

⑰

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
C/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

DENVER CO 800

21 SEP 2019 PM 5 L

SEP 2 4 2019

USA FOREVER

9-16-2019

Dear: To Whom It may concern,

Equifax Data Breach Lawsuit
Case No. 1:17-md-2800-TWT

Received
OCT 07 2019
by JNDLA

I have been identified by Equifax that my personal data has been compromised, Therefore I am a member of The settlement class.

To my recollection, I have not been any participant in any class action settlement in the last 5 years.

I OBJECT to this settlement as inadequate:

First it was presented that $125.00 would be offered to every signee to the settlement.

Then it was subsequently revealed that only $31 million would be available for The cash option which is so inadequate that it is LUDICROUS!

Now Equifax is trying to set-up obstacles in requiring proof That credit monitoring is in place, as set-up by The signee.

Equifax is criminally negligent for mis-handling The public's personal data.

Reject The present settlement = Equifax should pay more!

Thank you, Chris Hisamune.
Chris Hisamune
1032 9th St Apt. C
Santa Monica, CA 90403

I do not intend to appear at the Fairness Hearing.

The Nature Conservancy
Chris Hisamune
1032 9th St. Apt. C
Santa Monica, CA 90403-4173



Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Christian Pena
644 Minorca Avenue
Coral Gables, FL 33134

September 16, 2019
Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In Re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT
("Equifax Data Breach Lawsuit")

Dear Equifax Data Breach Class Action Settlement Administrator:

I am writing in reference to the Equifax Data Breach Lawsuit. I believe I am a member of the
settlement class because I have been notified that my information was compromised in the data
breach of which the Equifax Data Breach Lawsuit is subject.

I object to the settlement because providing free credit monitoring does not provide adequate
compensation to me and to any person whose data was breached. A maximum of $125 in cash is
barely adequate, token compensation to those who have had the safety of their data
compromised. I am not asking for the Court to order a larger settlement, but I am protesting the
fact that instead of being given $125 each, plaintiffs are being offered a credit monitoring service,
which will be purchased by Equifax and provided by Experian, a rival company that also has
obligations pertaining to personal data. There are already free credit monitoring services in place
and I use one of them, Credit Karma. This offer of free credit monitoring is of no value to me. I
am personally offended that Equifax is trying to avoid giving those who were harmed cash
compensation. Please consider rejecting the terms of this settlement.

I have not objected to any class action settlements in the previous five years and I do not intend
to appear at the Fairness Hearing. I am not represented by an attorney in this matter.
Sincerely,

Christian Pena
Claim Number P2Q9DV8L7C

Received
SEP 3 0 2019
by JNDLA

USA

FOREVER

9561907180911145

SEP 3 0 2019

MIAMI
FL 331
26 SEP *19
PM 1 1

Equifax Data Breach Class Action
Settlement Administration Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

1644 Minorca Avenue
Coral Gables, FL 33134

November 19, 2019



Hello,

I am writing this correspondence to object to the settlement terms before the court. The terms of the settlement are not commensurate with Equifax's failure to safeguard personal information and the damages I and my fellow Americans have suffered as a result of these failures.

The facts of the case are simple: Equifax failed to adequately protect the personal information of nearly half of all Americans, including myself. The Federal Trade Commission (FTC) sued and settled the case. The FTC publically touted a cash reward of $125 per person, when in reality the maximum reward under this term equates to twenty-one cents if all eligible claims are filed. That is inadequate. While the terms lay a ground work to seek additional cash and intangible compensation, in the form of credit monitoring services, the process is unduly cumbersome and represents little value. The further cash awards are inadequate in amount and the credit monitoring services provided are widely and easily attainable to all Americans for free. I already obtain these services through two credit card companies and consumer advocacy websites, including but not limited to Credit Karma.

Additionally, the FTC failed in administering its mission, which includes to enhance informed consumer choice, and represent the United States. The FTC has fallen victim to regulatory capture and does not represent my interests. The FTC demonstrates this on July 31, 2019, when it releases a public notification, entitled "FTC Encourages Consumers to Opt for Free Credit Monitoring, as part of Equifax Settlement," where the FTC advocates for consumers to select Equifax credit monitoring services instead of the cash reward. Further, the notice resulted in requiring claims to justify why they are seeking a cash reward moving forward. This notice was published two days after the settlement terms were released to the public in response to wide public backlash to the points I raise above and only serves to benefit Equifax, not the American consumers affected by Equifax's failures. The credit monitoring services provide no compensation to myself as I have the services for free, yet the FTC advocates for this course instead of pursuing Equifax for fair compensation.

This opinion is further supported by the fact that Massachusetts Attorney General Maura Healey continues to litigate against Equifax. This statement is supported by a press release from her office dated September 19, 2017.

I thank the court's time considering this objection.

Very Respectively,

Christian Sarnie

781-364-7116

Chrissarnie@aol.com

125 Murdock St

Unit 1



125 Murdock St.
Unit 1
Brighton MA 02135

© USPS 2016

NOV 2 5 2019

Equifax Data Breach
Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131

BOSTON MA 021

22 NOV 2019 PM 8 L

FOREVER
USA

Barn Swallow

Received

SEP 27 2019

by JNDLA

**Christian Michael Villarreal**

27105 Pumpkin St ● Murrieta, CA 92562
Phone: (951) 551-0714 ● E-Mail: ChrisMichaelVillarreal@gmail.com

Date: 9/18/19

*In re: Equifax Inc. Customer Data Security Breach Litigation*
Case No. 1:17-md-2800-TWT

To whom it may concern:

I am identified as a member of the class in the Equifax Breach case by the form at
eligibility.equifaxbreachsettlement.com, and wish to object to the settlement. I feel that the amount of
the settlement, as well as the maximum individual amount offered, $125, is not adequate compensation.
Given just how many people are affected by this breach, the amount that each member of the class will
ultimately receive from this settlement can never be enough to reasonably compensate them unless that
amount is increased by almost an order of magnitude, at the very least. I feel that it was somewhat
deceptive to even suggest that victims could potentially receive $125, as the sheer size of the class and
the amount that would be offered were both known at the time that these statements were being crafted.

Sadly, nearly all legal precedent declares that actual damages must be proved in a data breach
case for any compensation I would consider reasonable to be awarded. Since attribution is usually
incredibly difficult to prove and damages from any particular breach can take years to manifest (if they
even do), this leads to the actual victims of a data breach (The people whose information the breached
company neglected to adequately protect) being inadequately compensated for what may develop into
years of fighting against fraudulent charges and claims in their names.

If I were a customer of Equifax, I may feel somewhat different about this case. But I am not
their customer; I am their product. I was never given any opportunity to object to that, either. As an
American citizen, my data was given to Equifax – without my consent, or even my knowledge
sometimes – to safeguard and sell to other companies. They willfully ignored warnings from the
employees they paid to protect my information and failed to handle the resultant breach properly, with
the public disclosure of the breach devolving into a circus, and thus garner no sympathy from me. I
personally feel that, for the sheer magnitude of this breach, this settlement amount is nowhere near
adequate. The victims should be entitled to $125 at a *minimum*, not as a maximum.

I have not objected to any class action settlements in the previous 5 years, nor do I intend to
appear at the Fairness Hearing.

Sincerely,

Christian Michael Villarreal

27/05 Pumpkin St.
Murrieta, CA 92562

SEP 27 2019

Equifax Data Breach Class Action Settlement Administration
Attn: Objection
C/O JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

96111—941816

LOS ANGELES CA 900
26 SEP 2019 PM 8 L



327 Midway Park Drive
St. Augustine, FL. 32084

October 1, 2019

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Received
OCT 07 2019
by JNDLA

To object, you must send a letter stating that you object to the settlement. Your objection letter must include:

The name of this proceeding Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT (N.D. Ga.) EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT

1. NAME/ADDRESS

    Christie Ann Biehl – 327 Midway Park Drive, St. Augustine, FL. 32084 USA

2. Your personal signature (an attorney's signature is not enough);

    BELOW SIGNED PERSONALLY

3. A statement indicating why you think that you are a member of the settlement class;

    STATEMENT: I have membership in TrustedID Equifax credit monitoring that will expire and have verified that my PII was breached by Equifax and that Equifax did not take necessary actions to protect its servers from the breach

4. A statement with the reasons why you object, accompanied by any legal support for your objection;

    STATEMENT and REASONS WHY I OBJECT:

    I object to this settlement as it does not fairly and equitably compensate the injured millions (147+ millions) of people who placed their trust and identities in the hands of Equifax who did not properly safeguard the information. (See Appendix for reason for breach. It was the fault of not performing the necessary patch to protect the environment.)

    Another reason I believe that Equifax does not deserve to be a business anymore in the United States of America as Equifax did NOT take reasonable care to protect the highly sensitive data that USA citizens have entrusted Equifax to guard. (See details in the Appendix.)

Equifax has lost the trust of millions of people and rightly so.  <u>Equifax should be ordered by the Court to be dissolved and banned from operating.  All of the leadership should be given a jail sentence of at least 30 days and fined $1,000,000.00 dollars each to pay the Court for disbursement to the people injured.  Their assets should be seized just as drug criminals' assets are seized as necessary to pay the Court.</u>

5. A statement identifying all class action settlements to which you have objected

STATEMENT:  In the previous five (5) years; and. I. have not objected to any previous class action settlements at all in the past five years.

6. A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between <u>11/19/2019</u> and <u>12/05/2019</u> during which you are available to be deposed by counsel for the Parties.

STATEMENT:  I do not plan to appear at the Fairness hearing in person or through a lawyer.  My letter serves as my voice to the Court.

Respectfully and most sincerely,

Dr. Christie Ann Biehl

# ATTACHMENT

## Missed patch caused Equifax data breach

Apache Struts was popped, but company had at least TWO MONTHS to fix it

By Simon Sharwood 14 Sep 2017 at 02:09
Equifax has revealed that the cause of its massive data breach was a flaw it should have patched weeks before it was attacked.

The company has updated its www.equifaxsecurity2017.com/ site with a new "A Progress Update for Consumers" that opens as follows:
Equifax has been intensely investigating the scope of the intrusion with the assistance of a leading, independent cybersecurity firm to determine what information was accessed and who has been impacted. We know that criminals exploited a U.S. website application vulnerability. The vulnerability was Apache Struts CVE-2017-5638. We continue to work with law enforcement as part of our criminal investigation, and have shared indicators of compromise with law enforcement.
As the Apache Foundation pointed out earlier this week, it reported CVE-2017-5638 in March 2017. Doubt us? Here's the NIST notification that mentions it as being notified on March 10th.
Equifax was breached in "mid-May" 2017, realised it in July and got around to telling the world in early September. If we take "mid-May" as the 15th of the month, Equifax had nine working weeks in which to apply the patch.
That its data breach was entirely avoidable is not the end of Equifax's woes, as the new Progress Update also reveals that "Due to the high volume of security freeze requests, we experienced temporary technical difficulties and our system was offline for approximately an hour at 5PM ET on September 13, 2017 to address this issue."
The company also appears to have suffered another data breach, this time in Argentina where its Bryan Krebs reports "an online portal designed to let Equifax employees in Argentina manage credit report disputes from consumers in that country was wide open, protected by perhaps the most easy-to-guess password combination ever: "admin/admin."
Source: https://www.theregister.co.uk/2017/09/14/missed_patch_caused_equifax_data_breach/

## Equifax Officially Has No Excuse

A patch that would have prevented the devastating Equifax breach had been available for months.

Capping a week of incompetence, failures, and general shady behavior in responding to its massive data breach, Equifax has confirmed that attackers entered its system in mid-May through a web-application vulnerability that had a patch available in March. In other words, the credit-reporting giant had more than two months to take precautions that would have defended the personal data of 143 million people from being exposed. It didn't.

As the security community processes the news and scrutinizes Equifax's cybersecurity posture, numerous doubts have surfaced about the organization's competence as a data steward. The company took six weeks to notify the public after finding out about the breach. Even then, the site that Equifax set up in response to address questions and offer free credit monitoring was itself riddled with vulnerabilities. And as security journalist Brian Krebs first reported, a web portal for handling credit-report disputes from customers in Argentina used the embarrassingly inadequate credentials of "admin/admin." Equifax took the platform down on Tuesday. But observers say the ongoing discoveries increasingly paint a picture of negligence—especially in Equifax's failure to protect itself against a known flaw with a ready fix.

### A 'Relatively Easy' Hack
The vulnerability that attackers exploited to access Equifax's system was in the Apache Struts web-application software, a widely used enterprise platform. The Apache Software Foundation said in a statement on Saturday (when rumors swirled that the March Struts bug might be to blame) that, though it was sorry if attackers exploited a bug in its software to breach Equifax, it always recommends that users regularly patch and update their Apache Struts platforms. "Most breaches we become aware of are caused by failure to update software components that are known to be vulnerable for months or even years," René Gielen, the vice president of Apache Struts, wrote.

**In this case, Equifax had ample opportunity to update.**

"This vulnerability was disclosed back in March. There were clear and simple instructions of how to remedy the situation. The responsibility is then on companies to have procedures in place to follow such advice promptly," says Bas van Schaik, a product manager and researcher at Semmle, an analytics security firm. "The fact that Equifax was subsequently attacked in May means that Equifax did not follow that advice. Had they done so this breach would not have occurred."

## More Equifax

Penetration testers and other security researchers say that it would have been simple for an attacker to exploit the flaw and get into the system. "Once they identified Equifax's systems as vulnerable, actually exploiting the vulnerability to gain access to the Equifax servers and network will unfortunately have been relatively easy," says van Schaik, who recently discovered and disclosed a different Apache Struts bug. "It's hard to say how difficult it will have been for the attackers to get their hands on customer data once they found their way into Equifax's servers and network. But the timeline suggests that time was on the attackers' side."

After exploiting the vulnerability to gain a foothold, the attackers may have found scores of unprotected data immediately or may have worked over time—between mid-May and the end of July—to gain more and more access to Equifax's systems. "Generally when you successfully exploit a web-application bug like this you will become the system user who owns the web server process," says Alex McGeorge, the head of threat intelligence at the security firm Immunity. "Security best practices dictate that this user have as little privilege as possible on the server itself, since security vulnerabilities in web applications and web servers are so commonly exploited." In practice, though, McGeorge says that hackers could have found credentials or other information in plaintext right away if Equifax didn't have proper protections in place.

## Mounting Concerns

The company's attempts at damage control have been boilerplate at best. "Equifax has been intensely investigating the scope of the intrusion with the assistance of a leading, independent cybersecurity firm to determine what information was accessed and who has been impacted," the company said in a statement Wednesday. "We continue to work with law enforcement as part of our criminal investigation."

## Most Popular

Lawmakers are planning two hearings to scrutinize the situation, though, and have requested detailed information about the breach from Equifax. Dozens of people whose personal data was exposed have already filed lawsuits against the company. Peter Kaplan, the acting director of public affairs at the Federal Trade Commission, told WIRED in a statement that "the FTC typically does not comment on ongoing investigations. However, in light of the intense public interest and the potential impact of this matter, I can confirm that FTC staff is investigating the Equifax data breach." And politicians have additionally called on federal watchdog and protection agencies like the Securities and Exchange Commission and the Consumer Financial Protection Bureau to initiate their own investigations.

Equifax will suffer scrutiny and losses because of the breach, but the real victims are the individuals whose data was potentially compromised. And Equifax has particular responsibility to protect its consumer data, since much of it doesn't even come from customers who directly choose to do business with the firm, but surfaces instead from credit check requests for anyone living and working in the US. "I am concerned," Immunity's McGeorge says. "This is a thing that you use whether you realize it or not, because all commerce data goes through them. You do have a stake in this."

Source: https://www.wired.com/story/telltale-heart-fitbit-murder/#intcid=recommendations_wired-right-rail-popular_f02748f7-333a-48c7-9d61-ecd807daebc7_cral-top3-1

327 Midway Park Drive
St. Augustine, FL. 32084

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



PRIORITY MAIL
POSTAGE REQUIRED

9405 5102 0083 0363 7903 64

USPS TRACKING #

SHIP TO:
Equifax Data Breach Class Action Settlement
ATTN: Objection c/o JND Legal Admin
PO BOX 91318
ADMINISTRATOR
SEATTLE WA 98111-9418

OCT 07 2019

Shipped using PostalMate
Pkg:163318

OCT 07 2019

Christie Biehl
327 MIDWAY PARK DR
ST AUGUSTINE FL 32084

B900   0021

PRIORITY MAIL 2-DAY

CID: 166426
CommercialPlusPrice
071V013293336

P
US POSTAGE AND FEES PAID
PRIORITY MAIL
Oct 05 2019
Mailed from ZIP 32084
PM Flat Rate Env
Retail 156207.035  RADE  EXP 04/29
endicia

PRIORITY
★ MAIL ★

PRESS FIRMLY TO SEAL

☐ DATE OF DELIVERY SPECIFIED*
📶 USPS TRACKING™ INCLUDED*
$ INSURANCE INCLUDED*
📦 PICKUP AVAILABLE
* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EP14B July 2013  OD: 10 x 6

P S00001000012

♻ This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14B © U.S. Postal Service.

13000 Pine Ct.
Bowie, MD 20720

*Received*
*OCT 17 2019*
*by JNDLA*

October 12, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT:

I feel deceived by the Equifax settlement. When the settlement first came out, all the headlines proclaimed that victims could choose between a $125 and credit monitoring. I was pleasantly surprised by the cash option because it seems so rare for class action lawsuits to provide victims with true compensation. Too often, victims are left with in kind compensation from the very company that caused the problem in the first place.

Now I find that the $125 is a mirage. So many people opted for cash over credit monitoring that there isn't enough money in the settlement to go around. This is ridiculous. I already have credit monitoring because I was also a victim of a different security breach. Equifax's offer of additional credit monitoring is completely useless to me. I, and other affected by the breach, should be entitled to the full $125.

I do not intend to appear at the Fairness Hearing.

Sincerely,

*Christine Smit*

Christine Smit

Christine Smit
13000 Pine Ct.
Bowie, MD 207-2D

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

9811189418 B300

Received
OCT 17 2019
by JNDLA

