# Exhibit B - 14

November 4, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA  98111-9418

Received
NOV 0 8 2019
by JNDLA

Dear Sirs,

I object to the settlement in the proceeding: **Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT**.

Equifax clearly identified my social security number and credit file was included in the Security Breach.  I don't believe the court should deny the settlement as it is.  I have several credit monitoring agencies, including McAfee ID Monitoring, Kroll ID Monitoring, AllClear ID, and Protect My ID, all of which monitors my credit, and the release of my personally identifiable information, including credit card numbers, social security number, email addresses, bank information, address, and other credit based information.  To add another credit monitoring service is neither useful, nor an equitable settlement.

Further, I have placed a credit freeze on my file, and for each need for a credit review (e.g., buying a car, establishing a new line of credit, new credit card, insurance, purchase of a house, etc.), I've had to unfreeze my credit across all three agencies, at the cost of at least $5 per credit release, which has added up since the Equifax Customer Data Security Breach, and will continue to accrue in the future for each need to unfreeze my credit.   I strongly object to the settlement as proposed.

My name and contact information:

Jonathan W. Namovic
2929 W Gulf Dr Unit 307
Sanibel, FL  33957

I have never objected to any class action settlements in my life.  I will not appear at the fairness Hearing shortly scheduled.

Sincerely,

Jonathan W. Namovic

Jonathan W. Namovic

2909 W. Gulf Dr Unit 307
Sanibel, FL 33957

FT MYERS FL 339

04 NOV 2019 PM 1 L

98111-941818

Equifax Data Breach Class Act'on
Settlement Administrator

ATTN: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418

Received
NOV 08 2019
by JNDLA

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

> Received
> SEP 2 6 2019
> by JNDLA

*Re:* **Equifax Inc. Customer Data Security Breach Litigation**, **Equifax Data Breach Lawsuit**

To Whom it May Concern,

I am a member of the settlement class for the Equifax Data Breach Class Action Settlement. I have confirmed using the tools provided by Equifax that my data was stolen as part of the data breach.

I object to the current settlement terms as presented. Initially, I was informed that Equifax was going to provide up to $700 million to be used to compensate those of us effected by their negligence with up to $125 dollars. I have now learned, months later, that Equifax has only set aside $31 million to settle these claims. Given this my compensation for the mismanagement and loss of my personal data could be as low as a few cents. I believe that both $125 or a few cents compensation is insulting when considering the massive personal and financial harm I have been exposed to due to the negligence of Equifax. I feel deceived by the terms of the settlement and I believe that Equifax should be required to pay the full amount of $125 (or a greater amount) to all persons who were effected in the data breach and have sought compensation. Any amount less would show a disregard to the seriousness of this breach and would be an insult to those effected.

This is the only class action settlement to which I have objected in the previous five (5) years.

I do not intend to appear at the Fairness Hearing, either in person or through a lawyer.

Sincerely,

Jordan Kocak
1411 29th Ave NE
Minneapolis, MN 55418

1411 29th Avenue
Mpls, MN 55418

MINNEAPOLIS MN 554
23 SEP 2019 PM 2 L

Equifax Data Breach
Class Action Settlement Admin.
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 26 2019

98111-941818

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

Joshua Levin
475 Clermont Ave.
Apt 531
Brooklyn, NY 11238

November 3, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

```
Received
NOV 1 2 2019
by JNDLA
```

To Whom It May Concern:

I am among the 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach. I am thus a member of the settlement class in the lawsuit. I am writing to object to the settlement, which I believe to be neither fair nor adequate.

In July, Equifax settled a suit filed by the Federal Trade Commission initiated in response to its manifest failure to protect the personal financial information of more than 147 million people. The settlement amount of up to $700 million was widely reported. It was also indicated on the settlement website created to allow those who had their information exposed by Equifax to file a claim. After millions of people registered with the website, it was reported by the *New York Times* that Equifax had earmarked just $31 million for claims. Divided among all claimants, then, this $31 million amounts to just cents. Considering the original settlement trumpeted up to $125 per claimant, the government's failure to ensure enough money had been set aside to guarantee reasonable compensation for affected members of the public is almost deceitful. This pretense was compounded by the FTC's statement in July admitting that the large response meant claimants were all but sure to be shortchanged by the cash option.

As if all this weren't bad enough, Equifax has spent the subsequent weeks erecting new hurdles to cash claimants, including the necessity of providing documentation proving credit monitoring services. It's worth noting, the proof of credit monitoring was a new stipulation, which seems tailor made to discourage settlement members to seek the recompense to which they are entitled.

On the basis of all this chicanery alone, the settlement is proving a failure. But to the narrow question of whether it is fair and adequate, the answer is undeniably no. If millions of people have sought the cash option on the promise of $125 per claimant and instead may wind up getting mere cents in compensation for Equifax's negligence, it is downright obvious that the settlement is unreasonable and inadequate.

It is worth noting that this is the first class action settlement to which I have objected in the last five years.  Although I do not intend to appear at the Fairness Hearing, I am available to be deposed by counsel for the Parties 11/23, 11/24, 11/30, and 12/1 2019.

Sincerely,

Joshua Levin

Joshua Wenn
475 Clermont Ave
Apt 531
Brooklyn, NY 11238

NOV 1 2 2019

NEW YORK NY 100
05 NOV 2019 PM 11 L

Equifax Data Breach Class Action Settlement Admin.
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418

98111-9418 B900

September 25, 2019

Julia K. Theodore
336-338 Bay Ave. #704
Ocean City, NJ. 08226

```
Received
SEP 30 2019
by JNDLA
```

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To Whom It May Concern:

I, Julia K. Theodore, of the above address in Ocean City, NJ, believe that I am a member of the settlement class. I confirmed this on the Equifax Data Breach Settlement web site using my Social Security Number.

This letter is to inform you that I strongly object to the settlement. It provides no realistic form of compensation since I was already covered by a credit monitoring company (Lifelock) and plan on continuing my relationship with them. The option of a $125 financial settlement would in reality provide me with a pittance, at most, given the amount available to the total class. It is insulting to those of us who were negatively affected by the negligent behavior of Equifax.

I have not objected to any other class settlement in the past five years. I will not appear at the Fairness Hearing, and do not have a lawyer representing me in this matter, but am willing to be deposed.

Sincerely,

*Julia K Theodore*

Julia K. Theodore



Ms. Julia K. Theodore
336-338 Bay Ave Apt 704
Ocean City, NJ 08226-4064

SEP 3 0 2019

SOUTH JERSEY NJ 080

26 SEP 2020 PM 5 L

SEP 3 0 2019

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

98111-941818

Justin Cardoza
6900 Sharlands Ave Unit 322
Reno, NV 89523

Received
NOV 1 5 2019
by JNDLA

October 11, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Dear Clerk of Court:

I object to the Equifax Data Breach Settlement because I believe it is not fair, reasonable, or adequate. Equifax has been grossly negligent in its handling of Americans' sensitive information and should be held accountable. The entire settlement amount ($700 million), of which at most $425 million or 60% will actually go to the affected individuals[1], is significantly less than Equifax's self reported revenue for just the second quarter of 2019 ($880 million)[2]. This settlement is a slap on the wrist in response to what is possibly the most severe data breach in all of human history[3].

I believe the settlement is not adequate because it does not provide anywhere close to enough funds to compensate everyone affected. There is not really an amount that would make it all better given the amount of sensitive information Equifax allowed to be stolen, but the amount agreed upon is not enough to make Equifax blink. It is certainly not enough to compensate the class members even for time spent freezing our credit reports. If the entire settlement amount were divided evenly among everyone affected, each person would get less than $5. If the entire consumer restitution fund were divided evenly, each person would get less than $3.

That leads me to my next point: I believe the settlement is not fair because it is not able to compensate the class members as promised. The communications went quickly from "claim $125 for the breach" to "you might get a few cents" to "you can't request a cash payment anymore" because of demand. All parties involved in the negotiation should have taken into account the scale of the breach and the number of people affected from the beginning, and that clearly did not happen.

Finally, I believe the alternative offer of credit monitoring is not a reasonable solution either. The Equifax breach has exposed half of the American population to a greatly increased, lifelong risk of identity theft. Four to ten years of credit monitoring is meaningless when the stolen information will be usable by criminals for several decades to come. Regardless of the duration of the monitoring, placing credit freezes is a far more effective measure. It actually helps prevent some forms of identity theft rather than simply providing notifications after the fact[4]. The offer of credit monitoring is made even more meaningless by the growing number of banks who offer free credit monitoring services to all their customers. I already had three different monitoring services offered to me before the settlement by banks I do business with, at no cost to me either monetarily or in terms of my legal rights.

I am certain that I am a member of the settlement class because I have received communications from the settlement administrator indicating that I am, and I verified that I was affected using the online tool provided by the settlement administrator.

I have not objected to any other class action settlements in the last five years.

I do not intend to appear at the Fairness Hearing.

Thank you for your time and consideration. I hope that my statements are helpful in coming to a decision on this settlement and any future action against Equifax.

Sincerely,

*Justin Cardoza*

Justin Cardoza

**References**
1. CNN Business article by Ryan Prior, retrieved from https://www.cnn.com/2019/07/26/us/equifax-breach-settlement-questions-answered-trnd/index.html on 10/11/2019
2. Equifax Releases Second Quarter Results: retrieved from https://investor.equifax.com/news-and-events/news/2019/07-24-2019-221313586 on 10/11/2019.
3. Ars Technica article by Dan Goodin: Why the Equifax breach is very possibly the worst leak of personal info ever, retrieved from https://arstechnica.com/information-technology/2017/09/why-the-equifax-breach-is-very-possibly-the-worst-leak-of-personal-info-ever/ on 10/11/2019
4. NerdWallet article: Should You Get Credit Monitoring? by Bev O'Shea, retrieved from https://www.nerdwallet.com/blog/finance/credit-monitoring-identity-theft-monitoring/ on 10/11/2019

Justin Cardoza
6900 Sharlands Ave Unit 322
Reno, NV 89523

NOV 1 5 2019

RENO NV 895
12 NOV 2019 PM 3 T

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111×9418 B830



USA
FOREVER

9/22/19

Re: *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT
("Equifax Data Breach Lawsuit")

To whom it may concern,

I, as a member of the settlement class as noted via the Federal Trade Commission website and the Settlement site based on my name and SSN, object to the settlement in the above case as currently proposed. This is the only class action settlement to which I have objected within the past five years and I do not intend to appear at the Fairness Hearing.

As someone whose personal information has been compromised and who currently has credit monitoring that thereby makes the proposed additional monitoring meaningless, I find the proposed settlement monetary amount provided by the Equifax company to be inadequate and insufficient. As noted in numerous reports, the proposed settlement would allow for each affected individual to receive < $1 should all affected persons respond, which seems woefully inadequate given the inability for consumers to prevent Equifax from having access to their information if they wish to live within our current financial system. A fairer alternative, in my opinion, would be for Equifax to be penalized with either significantly higher monetary restitution equal to the failure of the company to provide careful stewardship of information that cannot be voluntarily withheld from them and/or an opportunity to be able to choose to prevent Equifax from profiting from personal, private information in the future for consumers. More punitive options would perhaps impress upon Equifax and similar companies that consumer data deserves the most stringent protection possible or that they may not be allowed to continue to receive such information in the future.

Sincerely,

Joel C. Boggan
3520 Kangaroo Drive
PO Box 62143
Durham, NC 27705

Received
SEP 2 6 2019
by JNDLA

35 2 Kangaroo Dr
PO Box 62143
Durham, NC 27705

RALEIGH NC 275
Research Triangle Region
23 SEP 2019 PM 11

Equifax Data Breach Class
Action Settlement Administrat
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA  98111 - 9418

SEP 2 6 2019

98111-941818

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

John R. Crowell III

16340 COMPTON PALMS DRIVE

APT: #126340

Tampa, FL 33647

To whom it may concern,

Allow me to begin with the simple; I have never objected to any class action suit in the last five years. I have not been included in any lawsuit in general in the last five years.

I am writing to object to the current settlement with the Equifax Breach and the current offer given to the American public. A data breach from a company of this size that we are *required* to use for any credit or life advancement is going to affect victims for years, even decades. I am finally building my credit back up and this issue could prevent me from finally being someone stable. There should absolutely be a better, bigger, settlement with coverage over the issues for people exceptionally better off than I am right now. My wife has had plenty of issues, hours talked through and attempted to be solved, regarding her identity being stolen and I do not wish to see this happen to me. Only so much credit monitoring can be done. Why would I trust Equifax with my data when they've already lost it?

Please keep me updated as to this objection and response.

Received

SEP 2 3 2019

by JNDLA

John R. Crowell III

Choice Legal
9204 King Palm Dr
Tampa FL 33619



USPS CERTIFIED MAIL

9214 8901 4961 0100 4460 74

EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT ADMINIST
ATTN: OBJECTION
C/O: JND LEGAL ADMINISTRATION
PO Box 91318
SEATTLE WA 98111-9418

SEP 2 3 2019

Postage: $5.6500

9204 King Palm Dr
Tampa FL 33619



CERTIFIED MAIL

9214 8901 4961 0100 4460 74

EQUIFAX DATA BREACH CLASS ACTION SE
ATTN: OBJECTION
C/O: JND LEGAL ADMINISTRATION
PO Box 91318
SEATTLE WA 98111-9418

SEP 2 3 2019

Hasler
09/18/2019
US POSTAGE $005.60⁰
FIRST-CLASS MAIL

ZIP 33619
011E12650849

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800<br>) Case No.: 1:17-md-2800-TWT<br>)<br>) CONSUMER ACTIONS<br>)<br>) |

**OBJECTION TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES
AND SERVICE AWARDS**

**[FED. R. CIV. P. 23(H)(2)]**

## I.  PROOF OF CLAIM – DECLARATION OF JOHN W. DAVIS

I, John W. Davis, declare pursuant to 28 U.S.C. § 1746 as follows:

I make this declaration based on personal knowledge and am

competent to so testify.  I am a member of the Settlement Class as set forth

in the Settlement Agreement, DE739-2 at § 2.43.  I received correspondence

from Equifax, Inc. on or about September 13, 2017 notifying me that my

"personal information may have been impacted by this incident."  A true and

correct copy of this correspondence is attached hereto as Exhibit 1.  I timely

submitted a claim form and was assigned Claim ID PXJST-MCZER.

I understand that, pursuant to the Settlement Notice and this Court's

Order Directing Notice (DE742) that I must provide additional information –

including a statement identifying any class action settlements to which I have objected in the previous five years. I further understand that, had I retained counsel in this matter, I would have been subjected to substantially greater requirements – including "A statement as to whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, **and if through counsel**, identifying counsel by name, address, and telephone number, and **four dates between the Objection Deadline and December 5, 2019 during which the objecting settlement class member is available to be deposed by counsel for the Parties**." *See Settlement Notice* at 15, §25(7) (emphasis added).

I am unavailable between November 19, 2019 and December 5, 2019 due to the press of business (including an *en banc* petition to the Eleventh Circuit Court of Appeals in the matter of *Price v. Godiva Chocolatier*, case no. 16-16486 - due on December 4, 2019) and required travel from Florida to California concerning an insurance matter. Accordingly, I have been unable to retain counsel to represent me in this matter. Additionally, I object to requirements placed on objecting class members and their counsel including, but not limited to, the requirement to provide information concerning unrelated cases. I make this objection on the basis of relevance and the absence of probative value. I additionally object that imposing substantial

procedural requirements class members must meet simply to have their objections considered has a chilling effect on class member commentary and thereby deprives the Court of an accurate assessment of the class's reaction to the proposed settlement.  This is particularly so for class members who would retain counsel competent to evaluate the settlement and fee request, but do not do so because it requires them to agree to submit to a deposition. That is an undue burden seemingly unconnected to, and a penalty for, the exercise of the right to counsel of one's choice.  Without waiving these objections, I submit the following information requested by the Settlement Notice.

My full name is John W. Davis.  My address is 3030 N. Rocky Point Dr. W., Suite 150, Tampa, Florida  33607.  As stated above, I believe I am a member of the Class.  My objection applies to the entire class to the extent this objection concerns attorneys' fees and "service awards" to lead plaintiffs which, if reduced, said reduction would flow to class members.  My grounds for objection are articulated *infra*.  I do not intend to appear at the Fairness Hearing.

In the past five years I have been an objecting class member to the following class action settlements:  *Connor v. JP Morgan Chase Bank* (S.D. Cal. No. 10 CV 1284 GPC BGC) (objection resulted in an increase in class size

of over 100% and an additional $3,960,092 to the newly-discovered class members); *Davenport v. Discover Financial Services* (N.D. Ill., No. 15-cv-06052) (objection overruled); and *In re BHP Billiton Ltd.* (S.D.N.Y. No. 16-cv-01445) (currently pending before the Second Circuit Court of Appeals). I have conducted a diligent review and believe this to be an exhaustive list of cases where I have appeared as an objector. I reserve the right to supplement this list if I discover or recall additional matters.

In the interest of full disclosure, I have also, from time to time, represented objecting class members. With regard to representation of objectors to class action settlements, courts have occasionally overruled or disagreed with my clients' objections. However, no court has held that any objection that I prepared was frivolous or otherwise not directed at the issues presented by the case. Some of the objection cases I have litigated have resulted in substantial financial benefits to the class or important precedential appellate decisions. *See, e.g., Coburn v. Stamps.com, Inc.* (Los Angeles Sup. Ct. No. BC 353721), (after briefing on appeal, the settling parties agreed to make a second distribution of transferrable settlement relief); *Foos v. Ann Taylor, Inc.* (S.D. Cal. No. 11-cv-2794), (successfully moved to require the settling parties to disclose publicly the number of claims for vouchers made in the settlement.); *Davis v. Cole Haan, Inc.* (N.D. Cal. No.

11-01826) (successfully moved for an order requiring class counsel's attorneys' fees to be calculated under the contingent "coupon" fee provisions of the Class Action Fairness Act, which resulted in a fee some 90% lower than the fee defendant had originally agreed to pay under the settlement); *Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) (represented one of only two objectors' groups to be awarded fees for assisting in eliminating $325,000 in unfair "incentive" payments); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (agreeing that attorneys' fees requested were too high, and should be measured against the fund actually paid out by the defendant, rather than the total fund made available); *Chieftain Royalty Co. v Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455(10th Cir. 2017) cert. denied sub nom. *Chieftain Royalty Co. v. Nutley*, 139 S. Ct. 482 (2018) (reversing and remanding percentage fee award and incentive award because district court applied incorrect law).

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct and that this declaration was executed on November 18, 2019 in Tampa, Florida.

John W. Davis

## II. ARGUMENT

### A.    Standard of Review

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2).   The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).   The burden of proving the fairness of a settlement rests squarely on its proponents. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).   *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

### B.    Class Counsel's fee should be limited to lodestar.

The Supreme Court's "common-fund" or "equitable-fund" cases have involved fees calculated and assessed in a variety of ways.   The seminal common-fund decision, *Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually incurred (and paid) for specific tasks,

without any kind of enhancement or multiplier. *See Greenough,* Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print). Two subsequent decisions, *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885), and *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931), involved percent-of-fund awards – with the Supreme Court in both cases slashing unreasonably high fee awards. In *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939), the common-fund award appears again to have been for fees actually incurred and paid for specific tasks just as in *Greenough,* for the record on remand in *Sprague* reveals that the petition in that case sought reimbursement only for fees actually billed by, and paid to, the lawyers. *See Sprague v. Ticonic Nat'l Bank,* 28 F.Supp. 229, 231 (D. Me. 1939), *aff'd in relevant part and rev'd in part on other grounds,* 110 F.2d 174, 178 (1st Cir. 1940) ("The decree of the District Court is affirmed insofar as it allows the original petition for reimbursement in the amount of $1,214.51."). In *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980), the Supreme Court mandated a common-fund fee award, which the district court on remand honored the Supreme Court's mandate by employing the lodestar methodology to calculate fees. *See Van Gemert v. Boeing,* 516 F. Supp. 412, 414, 418 (S.D.N.Y. 1981) (employing lodestar methodology rather than percent-of-fund to calculate attorneys' fees: "'The starting point of every fee award . . . must

- 7 -

be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974)).

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases. *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 551-552, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.3d at 775.

- 8 -

When cases settle for a common fund, defendants have no interest in limiting the fees paid from the fund at class members' expense.[1] Accordingly, it is up to the Court, acting as guardian of absent class members, to scrutinize Lead Counsel's fee request to ensure Counsel do not receive a windfall to the detriment of the class members they represent. Given that role, Objector submits that the correct approach is to: (1) recognize that limitations on reasonable attorneys' fee awards under fee-shifting statutes may inform common fund awards, (2) presume a fee based on counsel's lodestar is reasonable and adequate in the absence of extraordinary circumstances; and (3) refuse to award a percentage fee that greatly exceeds that amount. *See, e.g., In re Bolar Pharms. Co. Sec. Litig.,* 800 F.Supp. 1091, 1095-96 (E.D.N.Y. 1992) (on remand from *In re Bolar Pharm. Co. Sec. Litig.,* 966 F.2d 731 (2d Cir. 1992)); *see also Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 307-08 (D.D.C. 1996); *Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1435-37 (S.D.N.Y.1994), *aff'd,* 67

---

[1] "Defendants are interested only in the total costs of the settlement to them, and not in the division of the costs between attorneys' fees and payment to class members." *Pearson v NBTY, Inc.,* 772 F.3d 778, 787 (7th Cir. 2014). "The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel." *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014).

F.3d 1072 (2d Cir. 1995); *Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277,

283-85 (S.D.N.Y.1993).

## C. *Trustees v. Greenough* and *Central RR & Banking Co. v. Pettus* Proscribe Service Awards for Class Representatives in Common-Fund Cases.

Plaintiffs ask the Court to approve distributions of $2,500 to each of the

96 named plaintiffs, a total of $240,000. *See Declaration of Robert Klonoff,*

DE858-2 at 99. However, such awards are expressly prohibited by the

seminal cases that recognized the common fund doctrine. "Since the

decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad*

*& Banking Co. v. Pettus*, 113 U.S. 116 (1885), the Supreme Court of the

United States has recognized consistently that a litigant or a lawyer who

recovers a common fund for the benefit of persons other than himself or his

client is entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see generally* John P.

Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87

Harv. L. Rev. 1597, 1601-02 (1974). The Court has applied the rule "in a wide

range of circumstances as part of our inherent authority."[2]

---

[2] *U.S. Airways, Inc. v. McCutchen,* 569 U.S. 88, 104 (2013); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257-58 (1975).

But those fundamental cases recognizing courts' inherent authority to distribute litigation expenses from a common fund expressly proscribe other compensation to the named plaintiff. *Greenough* and *Pettus* held that a representative plaintiff (and its counsel) may recover reasonable litigation expenses including attorney's fees from a common-fund recovery, but that the representative plaintiff *shall not* be reimbursed for personal service rendered on behalf of the class. The Court held that any payment compensating a representative plaintiff for "personal services" in prosecuting the litigation is both "decidedly objectionable" and "illegally made." *Greenough,* 105 U.S. at 537-38. A named plaintiff's "claim to be compensated, out of the fund ... for his personal services" the Court flatly "rejected as unsupported by reason or authority." *Pettus,* 113 U.S. at 122.[3]

---

[3] *See also* Dawson, *Lawyers and Involuntary Clients*, 87 Harv. L. Rev. at 1602:

> The Court in *Greenough* ... drew a sharp distinction ....
> While [Francis] Vose, the active litigant, was held to
> be entitled to a "charge" for the reasonable value of his
> lawyers' services, which the lower court would fix with
> a wide discretion, it had no discretion to award an
> allowance to Vose himself for his own time and
> expenses.

For a century, lower courts applying the common fund doctrine followed these holdings, distinguishing between the litigation expenses (including reasonable attorney's fees) that class representatives may recover, and allowances for "personal services" in acting as representative plaintiffs—compensation for which *Greenough* and *Pettus* expressly forbade.[4]  See also Dawson, *Lawyers and Involuntary Clients,* 87 Harv. L. Rev. at 1602 (finding in 1974 no cases reimbursing representatives "for their own time, travel, or personal expenses, however necessary their efforts may have been to litigation….").

However, between 1980 and 1990 lower courts began to ignore the rule, and the practice of paying representative plaintiffs subsequently became widespread. "Beginning around 1990…awards for representative plaintiffs

---

[4] *See, e.g., Zucker v. Westinghouse Electric,* 374 F.3d 221, 226 (3d Cir. 2004) (reiterating the rule of *Greenough* that "denied Vose's request for fees for 'personal services' because such compensation might reward and encourage potentially useless litigation by others seeking lucrative 'salaries'"), *aff'g In re Westinghouse Sec. Litig.,* 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (similarly following *Greenough*); *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *see also Gortat v. Capala Brothers, Inc.*, 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*).

began to find readier acceptance," and soon orders "approving incentive awards proliferated," so that "[b]y the turn of the century, some considered these awards to be 'routine.' Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1310-11 & n.21 (2006); 2 *McLaughlin on Class Actions* §6:28 & nn.29-30 (15th ed., 2018) (reporting "near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000-$20,000.").

They have done so with no basis at all in law. Even putting aside *Greenough's* express prohibition, there is no affirmative authority empowering courts to make these awards from common funds. "The judiciary has created these awards out of whole cloth." 5 *Newberg on Class Actions* §§17:1 (5th ed. 2019); *see id.* at §§17:2, 17:4. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. Rev. 1303, 1312-13 (2006) (noting the "lack of specific authorization for incentive awards in the relevant statutes or court rules.").

As the Sixth Circuit aptly observed, "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for

- 13 -

bringing suit or to compromise the interest of the class for personal gain." *In re Dry Max Pamers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003)).

More fundamentally, *Greenough* and *Pettus* remain binding law. It is the Supreme Court's prerogative alone to overrule one of its precedents. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016). Lower courts are not at liberty to determine that Supreme Court authority is no longer valid because they believe it to be outdated. Longstanding decisions become more authoritative, not less: "the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Gamble v. United States*, __U.S.__, 139 S. Ct. 1960, 1969 (2019) (citing *Montejo v. Louisiana*, 556 U. S. 778, 792 (2009));

The Supreme Court has never overruled its early prohibition on incentive awards. Its only re-visitation comprises a recent a footnote of dictum, referring to the practice, apparently without realizing it violates prior precedent. *China Agritech Inc. v. Resh,* __U.S.__, 138 S.Ct. 1800, 1811 n.7 (2019) (stating that named plaintiffs should be motivated to file class actions because "[t]he class representative might receive a share of class

recovery above and beyond her individual claim." citing *Cook v. Niedert,* 142

F.3d 1004, 1016 (C.A.7 1998).[5]

Nevertheless, numerous circuit courts have since endorsed this

departure from prior practice. Most have done so without reference to any

Supreme Court or statutory authority, instead relying upon the perceived

utility or prevalence of the practice among lower courts.[6] The Third and

Sixth Circuits have, in approving incentive awards, overruled *sub silentio*

_____

[5] The Court's note makes no reference to *Greenough* or *Pettus,* or to the common fund doctrine, and so cannot be construed to have overruled them. *Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*"); *Agostini v. Felton,* 521 U.S. 203, 237 (1997)(discouraging courts from concluding that "our more recent cases have, by implication, overruled an earlier precedent."); *see also Mickens v. Taylor,* 535 U.S. 162, 172 (2002).

[6] *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Caliguri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving incentive awards because "courts in this circuit regularly grant service awards of $10,000 or greater"); *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 463 (9th Cir. 2000) (holding without elaboration that "the district court did not abuse its discretion ... in awarding an incentive award to the Class Representatives."); *Berry v. Schulman,* 807 F.3d 600, 613-14 (4th Cir. 2015); *Newmont Min. Corp.,* 352 F.App'x 232, 235 (10th Cir. 2009) ("'Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...'") *Keepseagle v. Perdue,* 856 F.3d 1039, 1056 (D.C. Cir. 2017) (approving incentive awards "to compensate the class representative").

their own prior cases recognizing *Greenough's* prohibition.[7]   The Second

Circuit recently affirmed incentive awards against a *Greenough* challenge,

but avoided legal analysis by holding, without further explanation, that

*Greenough* and *Pettus* were "inapposite" and did not "provide factual settings

akin to those" in the case.  *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85,

96 (2d Cir. 2019).

The Eleventh Circuit presents a unique case.   That court recently

upheld incentive awards against an explicit *Greenough* challenge, reasoning

---

[7] The Third Circuit initially recognized the *Greenough* rule in *Zucker v. Westinghouse Elec.*, 374 F.3d 221, 226 (3d Cir. 2004), *aff'g In re Westinghouse Sec. Litig.*, 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (following *Greenough*). Later, however, an en *banc* court affirmed incentive awards of $220,000, citing only district-court decisions and explaining in a footnote that "'[i]ncentive awards are not uncommon in class action litigation....". *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2010) (*en banc*) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002).  The Sixth Circuit recognized the *Greenough* rule in *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1207-08 (6th Cir. 1992) (noting that *Greenough* had specifically disallowed any allowance for the named plaintiff's "personal services and private expenses.").  But later Sixth Circuit cases treat the propriety of incentive awards as indeterminate, without reference to *Granada Investments* or Supreme Court authority. *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310-11 (6th Cir. 2016) (declaring that "[o]ur court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either." (quoting *In re Dry Max Pampers Litig*, 724 F.3d 713, 722 (6th Cir. 2013).

that many circuits had endorsed incentive awards, and that *Greenough* and *Pettus* were decided prior to Rule 23, *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir.), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019). However, the case has been vacated pending en banc rehearing.

That would appear to leave the *Greenough* issue an open question in the Eleventh Circuit.[8] However, this Court should not follow the reasoning of the vacated *Muransky* case. Greenough remains good law in this and every other circuit, and other circuit court cases, however numerous, cannot expand courts' inherent authority beyond that allowed by the Supreme Court. Nor is there independent legislative authority to make incentive awards in this common fund case. The promulgation of Rule 23 makes no difference. Nothing in Rule 23 undermines—let alone overrules—*Greenough* and *Pettus*. Nowhere does Rule 23 authorize or permit special payments compensating named plaintiffs for service as class representatives or to give them additional incentives to litigate. *See* 5 *Newberg on Class Actions* §17:1. In

---

[8] However, *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) follows *Greenough* and *Pettus* to rule that bankruptcy fund claimants can receive "no compensation for personal services", arguably serving as binding recognition of the *Greenough* doctrine.

fact, Rule 23 could not do so. The Rules Enabling Act states that the federal

rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C.

§2072. A federal rule of procedure cannot overrule the Supreme Court to

expand courts' inherent authority to establish a right to incentive awards in

common fund cases.

Accordingly, Objector contends that incentive bonuses here are

unlawful, given that the case involves common funds and there is no

statutory authority for them in this case.

### D.   Plaintiffs have not presented evidence sufficient to support the requested awards upon any theory under which such awards are commonly justified.

Even assuming arguendo that the requested service awards were not

prohibited by Supreme Court precedent, this Court should refuse to award

them here. This case presents a particular example of how unaccountable

the practice has become, detached from any notion of recompense for

individual expenses or "services" provided to the class. Plaintiffs here seek

an award of $2,500 to each of 96 class representatives – a total bounty of

$240,000. *See Declaration of Robert Klonoff,* DE858-2 at 99. As for

personal efforts, expenses, or services, no representative plaintiff submitted

evidence demonstrating what his or her role was in the case. Any

description of time spent by lead plaintiffs is limited to generalized and

conclusory hearsay in the declarations of Class Counsel (DE858-1:33) and

Robert Klonoff (DE828-2:99).

Here, as in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,*

825 F.3d 299, 311 (6th Cir. 2016), "[c]lass counsel argue[d] in conclusory

terms" that incentive payments properly compensate class representatives

for their "time spent on the case." That troubled the Sixth Circuit, which

voided $10,000 incentive bonuses, explaining:

> To ensure that these amounts are not in fact a bounty,
> however, counsel must provide the district court with
> specific documentation—in the manner of attorney time
> sheets—of the time actually spent on the case by each
> recipient of an award. Otherwise the district court has no
> basis for knowing whether the awards are in fact "a
> disincentive for the [named] class members to care about the
> adequacy of relief afforded unnamed class members[.]"

*Shane Group,* 825 F.3d at 311 (quoting *In re Dry Max Pampers Litig.,*

724 F.3d 713, 722 (6th Cir. 2013)).[9]

---

[9] *See also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (citing
*Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1267
(N.D.Ill.1993):

> In deciding whether such an award is warranted,
> relevant factors include the actions the plaintiff has
> taken to protect the interests of the class, the degree
> to which the class has benefitted from those actions,
> and the amount of time and effort the plaintiff
> expended in pursuing the litigation.

Similarly, this Court cannot on the present record ensure that the requested service awards are justified, and not merely a disincentive to question the adequacy of the settlement. To the contrary, the uniformity of the request and the attendant assertion that 96 out of 96 plaintiffs deserve exactly $2,500 belies any idea that the awards reflect individual expenses, effort, or services to the class. Indeed, if plaintiffs had submitted such evidence it would likely show a duplication of efforts thereby militating against the requested excessive and redundant "service awards." Nor, given the sheer number of plaintiffs, can the request be justified by suggesting that a cash award was necessary to induce plaintiffs to come forward. Accordingly, Objector respectfully submits that the request for service awards should be denied in full.

## III.  CONCLUSION

The common fund doctrine of attorneys' fees is grounded in the idea that those who benefit from a fund recovered by lawyers' efforts will be unjustly enriched if the lawyers are not paid reasonable fees from the fund. *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). But no doctrine designed to avoid unjust enrichment could possibly justify the windfall enjoyed by class action lawyers who are routinely paid fees substantially higher than their already-substantial hourly rates. While huge incomes

surely encourage the filing of many cases, this naturally comes at the expense of the class members they represent, as well as litigation in other less lucrative areas, such as civil rights and employment discrimination.

Here, as in *Bolar Pharmaceuticals,* an award of the attorneys' lodestar is presumptively reasonable and fair, and serves the purposes both of equity and of encouraging private enforcement of the law. Awarding substantially more than the lodestar produces unacceptable conflicts of interest.

Additionally, this Court should deny plaintiffs' requested "service awards" because they are proscribed by Supreme Court precedent and, in any event, lack sufficient evidentiary support.

Objector certifies this document was prepared in Century Schoolbook, 13-point font.

Respectfully submitted, this 18th day of November, 2019.

_____
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972

*Pro se*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing document in

compliance with procedures set forth in the Settlement Notice as follows:


Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418


This 18th day of November, 2019.


_____

John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972

*Pro se*

EXHIBIT 1

Enrollment                                                                                                       https://trustedidpremier.com/eligibility/enroll.html

Case 1:17-md-02800-TWT   Document 899-16   Filed 12/05/19   Page 42 of 88
Case 4:17-md-02800-TWT   Document 879-16   Filed 11/05/19   Page 42 of 24

(https://www.equifax.com)

---

## Thank You

Based on the information provided, we believe that your personal information may have been impacted by this incident.

Click the button below to continue your enrollment in TrustedID Premier.

Enroll

For more information visit the FAQ page. (https://faq.trustedidpremier.com)

---



© 2017 Equifax Inc. All rights reserved

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other product and company names mentioned herein are the property of their respective owners.

Privacy Policy (https://trustedidpremier.com /static/privacy-policy) | Terms of Use (https://trustedidpremier.com/static/terms)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800<br>) Case No.: 1:17-md-2800-TWT<br>)<br>) CONSUMER ACTIONS<br>)<br>) |

## NOTICE OF APPEARANCE AND COMPLIANCE WITH PRELIMINARY APPROVAL ORDER

TO THE HONORABLE COURT, THE CLERK OF THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that John W. Davis, 3030 N. Rocky Point Dr. W., Suite 150, Tampa, Florida 33607; Telephone (813) 533-1972; Email john@johnwdavis.com hereby appears in this action.

Pursuant to this Court's Order Directing Notice (DE742) and paragraph 25 of the Notice to Class Members, an objection to proposed attorneys' fees and incentive awards was lodged with the Settlement Administrator in paper form on November 18, 2019 as follows:

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-94180

A true and correct copy of the objection is attached hereto as Exhibit 1.

Respectfully submitted, this 19th day of November, 2019.

/s/ John W. Davis

John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 19th of November, 2019.

/s/  John W. Davis

John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

Received
NOV 20 2019
by JNDLA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800<br>) Case No.: 1:17-md-2800-TWT<br>)<br>) CONSUMER ACTIONS<br>)<br>) |

## OBJECTION TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND SERVICE AWARDS

### [FED. R. CIV. P. 23(H)(2)]

## I.  PROOF OF CLAIM – DECLARATION OF JOHN W. DAVIS

I, John W. Davis, declare pursuant to 28 U.S.C. § 1746 as follows:

I make this declaration based on personal knowledge and am competent to so testify. I am a member of the Settlement Class as set forth in the Settlement Agreement, DE739-2 at § 2.43. I received correspondence from Equifax, Inc. on or about September 13, 2017 notifying me that my "personal information may have been impacted by this incident." A true and correct copy of this correspondence is attached hereto as Exhibit 1. I timely submitted a claim form and was assigned Claim ID PXJST-MCZER.

I understand that, pursuant to the Settlement Notice and this Court's Order Directing Notice (DE742) that I must provide additional information –

including a statement identifying any class action settlements to which I have objected in the previous five years.  I further understand that, had I retained counsel in this matter, I would have been subjected to substantially greater requirements – including "A statement as to whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, **and if through counsel**, identifying counsel by name, address, and telephone number, and **four dates between the Objection Deadline and December 5, 2019 during which the objecting settlement class member is available to be deposed by counsel for the Parties**." *See Settlement Notice* at 15, §25(7) (emphasis added).

I am unavailable between November 19, 2019 and December 5, 2019 due to the press of business (including an *en banc* petition to the Eleventh Circuit Court of Appeals in the matter of *Price v. Godiva Chocolatier*, case no. 16-16486 - due on December 4, 2019) and required travel from Florida to California concerning an insurance matter.  Accordingly, I have been unable to retain counsel to represent me in this matter.  Additionally, I object to requirements placed on objecting class members and their counsel including, but not limited to, the requirement to provide information concerning unrelated cases.  I make this objection on the basis of relevance and the absence of probative value.  I additionally object that imposing substantial

procedural requirements class members must meet simply to have their objections considered has a chilling effect on class member commentary and thereby deprives the Court of an accurate assessment of the class's reaction to the proposed settlement. This is particularly so for class members who would retain counsel competent to evaluate the settlement and fee request, but do not do so because it requires them to agree to submit to a deposition. That is an undue burden seemingly unconnected to, and a penalty for, the exercise of the right to counsel of one's choice. Without waiving these objections, I submit the following information requested by the Settlement Notice.

My full name is John W. Davis. My address is 3030 N. Rocky Point Dr. W., Suite 150, Tampa, Florida 33607. As stated above, I believe I am a member of the Class. My objection applies to the entire class to the extent this objection concerns attorneys' fees and "service awards" to lead plaintiffs which, if reduced, said reduction would flow to class members. My grounds for objection are articulated *infra*. I do not intend to appear at the Fairness Hearing.

In the past five years I have been an objecting class member to the following class action settlements: *Connor v. JP Morgan Chase Bank* (S.D. Cal. No. 10 CV 1284 GPC BGC) (objection resulted in an increase in class size

of over 100% and an additional $3,960,092 to the newly-discovered class members); *Davenport v. Discover Financial Services* (N.D. Ill., No. 15-cv-06052) (objection overruled); and *In re BHP Billiton Ltd.* (S.D.N.Y. No. 16-cv-01445) (currently pending before the Second Circuit Court of Appeals). I have conducted a diligent review and believe this to be an exhaustive list of cases where I have appeared as an objector. I reserve the right to supplement this list if I discover or recall additional matters.

In the interest of full disclosure, I have also, from time to time, represented objecting class members. With regard to representation of objectors to class action settlements, courts have occasionally overruled or disagreed with my clients' objections. However, no court has held that any objection that I prepared was frivolous or otherwise not directed at the issues presented by the case. Some of the objection cases I have litigated have resulted in substantial financial benefits to the class or important precedential appellate decisions. *See, e.g., Coburn v. Stamps.com, Inc.* (Los Angeles Sup. Ct. No. BC 353721), (after briefing on appeal, the settling parties agreed to make a second distribution of transferrable settlement relief); *Foos v. Ann Taylor, Inc.* (S.D. Cal. No. 11-cv-2794), (successfully moved to require the settling parties to disclose publicly the number of claims for vouchers made in the settlement.); *Davis v. Cole Haan, Inc.* (N.D. Cal. No.

11-01826) (successfully moved for an order requiring class counsel's attorneys' fees to be calculated under the contingent "coupon" fee provisions of the Class Action Fairness Act, which resulted in a fee some 90% lower than the fee defendant had originally agreed to pay under the settlement); *Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) (represented one of only two objectors' groups to be awarded fees for assisting in eliminating $325,000 in unfair "incentive" payments); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (agreeing that attorneys' fees requested were too high, and should be measured against the fund actually paid out by the defendant, rather than the total fund made available); *Chieftain Royalty Co. v Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455(10th Cir. 2017) cert. denied sub nom. *Chieftain Royalty Co. v. Nutley*, 139 S. Ct. 482 (2018) (reversing and remanding percentage fee award and incentive award because district court applied incorrect law).

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct and that this declaration was executed on November 18, 2019 in Tampa, Florida.

_____
John W. Davis

## II. ARGUMENT

### A.    Standard of Review

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2).   The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The burden of proving the fairness of a settlement rests squarely on its proponents. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

### B.    Class Counsel's fee should be limited to lodestar.

The Supreme Court's "common-fund" or "equitable-fund" cases have involved fees calculated and assessed in a variety of ways.  The seminal common-fund decision, *Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually incurred (and paid) for specific tasks,

without any kind of enhancement or multiplier.  *See Greenough,* Transcript of

Record at 711-23, 770-78 (original) 228-32, 247-56 (print).  Two subsequent

decisions, *Central Railroad Banking Co. v. Pettus,* 113 U.S. 116 (1885), and

*United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931), involved

percent-of-fund awards – with the Supreme Court in both cases slashing

unreasonably high fee awards.  In *Sprague v. Ticonic National Bank,* 307

U.S. 161 (1939), the common-fund award appears again to have been for fees

actually incurred and paid for specific tasks just as in *Greenough,* for the

record on remand in *Sprague* reveals that the petition in that case sought

reimbursement only for fees actually billed by, and paid to, the lawyers.  *See*

*Sprague v. Ticonic Nat'l Bank,* 28 F.Supp. 229, 231 (D. Me. 1939), *aff'd in*

*relevant part and rev'd in part on other grounds,* 110 F.2d 174, 178 (1st Cir.

1940) ("The decree of the District Court is affirmed insofar as it allows the

original petition for reimbursement in the amount of $1,214.51.").  In *Boeing*

*Co. v. Van Gemert,* 444 U.S. 472, 478 (1980), the Supreme Court mandated a

common-fund fee award, which the district court on remand honored the

Supreme Court's mandate by employing the lodestar methodology to

calculate fees.  *See Van Gemert v. Boeing,* 516 F. Supp. 412, 414, 418

(S.D.N.Y. 1981) (employing lodestar methodology rather than percent-of-fund

to calculate attorneys' fees: "'The starting point of every fee award . . . must

be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974)).

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases. *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 551-552, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.3d at 775.

When cases settle for a common fund, defendants have no interest in limiting the fees paid from the fund at class members' expense.[1] Accordingly, it is up to the Court, acting as guardian of absent class members, to scrutinize Lead Counsel's fee request to ensure Counsel do not receive a windfall to the detriment of the class members they represent. Given that role, Objector submits that the correct approach is to: (1) recognize that limitations on reasonable attorneys' fee awards under fee-shifting statutes may inform common fund awards, (2) presume a fee based on counsel's lodestar is reasonable and adequate in the absence of extraordinary circumstances; and (3) refuse to award a percentage fee that greatly exceeds that amount.  *See, e.g., In re Bolar Pharms. Co. Sec. Litig.,* 800 F.Supp. 1091, 1095-96 (E.D.N.Y. 1992) (on remand from *In re Bolar Pharm. Co. Sec. Litig.,* 966 F.2d 731 (2d Cir. 1992)); *see also Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 307-08 (D.D.C. 1996); *Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1435-37 (S.D.N.Y.1994), *aff'd,* 67

---

[1] "Defendants are interested only in the total costs of the settlement to them, and not in the division of the costs between attorneys' fees and payment to class members." *Pearson v NBTY, Inc.,* 772 F.3d 778, 787 (7th Cir. 2014).  "The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel." *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014).

F.3d 1072 (2d Cir. 1995); *Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277, 283-85 (S.D.N.Y.1993).

**C.     *Trustees v. Greenough* and *Central RR & Banking Co. v. Pettus* Proscribe Service Awards for Class Representatives in Common-Fund Cases.**

Plaintiffs ask the Court to approve distributions of $2,500 to each of the 96 named plaintiffs, a total of $240,000. *See Declaration of Robert Klonoff,* DE858-2 at 99.    However, such awards are expressly prohibited by the seminal cases that recognized the common fund doctrine.  "Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), the Supreme Court of the United States has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see generally* John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv. L. Rev. 1597, 1601-02 (1974). The Court has applied the rule "in a wide range of circumstances as part of our inherent authority."[2]

---

[2] *U.S. Airways, Inc. v. McCutchen,* 569 U.S. 88, 104 (2013); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257-58 (1975).

But those fundamental cases recognizing courts' inherent authority to distribute litigation expenses from a common fund expressly proscribe other compensation to the named plaintiff. *Greenough* and *Pettus* held that a representative plaintiff (and its counsel) may recover reasonable litigation expenses including attorney's fees from a common-fund recovery, but that the representative plaintiff *shall not* be reimbursed for personal service rendered on behalf of the class. The Court held that any payment compensating a representative plaintiff for "personal services" in prosecuting the litigation is both "decidedly objectionable" and "illegally made." *Greenough,* 105 U.S. at 537-38. A named plaintiff's "claim to be compensated, out of the fund ... for his personal services" the Court flatly "rejected as unsupported by reason or authority." *Pettus,* 113 U.S. at 122.[3]

---

[3] *See also* Dawson, *Lawyers and Involuntary Clients*, 87 Harv. L. Rev. at 1602:

> The Court in *Greenough* ... drew a sharp distinction .... While [Francis] Vose, the active litigant, was held to be entitled to a "charge" for the reasonable value of his lawyers' services, which the lower court would fix with a wide discretion, it had no discretion to award an allowance to Vose himself for his own time and expenses.

For a century, lower courts applying the common fund doctrine followed these holdings, distinguishing between the litigation expenses (including reasonable attorney's fees) that class representatives may recover, and allowances for "personal services" in acting as representative plaintiffs—compensation for which *Greenough* and *Pettus* expressly forbade.[4]  See also Dawson, *Lawyers and Involuntary Clients,* 87 Harv. L. Rev. at 1602 (finding in 1974 no cases reimbursing representatives "for their own time, travel, or personal expenses, however necessary their efforts may have been to litigation….").

However, between 1980 and 1990 lower courts began to ignore the rule, and the practice of paying representative plaintiffs subsequently became widespread. "Beginning around 1990…awards for representative plaintiffs

---

[4] *See, e.g., Zucker v. Westinghouse Electric,* 374 F.3d 221, 226 (3d Cir. 2004) (reiterating the rule of *Greenough* that "denied Vose's request for fees for 'personal services' because such compensation might reward and encourage potentially useless litigation by others seeking lucrative 'salaries'"), *aff'g  In re Westinghouse Sec. Litig.,* 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (similarly following *Greenough*); *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *see also Gortat v. Capala Brothers, Inc.,* 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*).

began to find readier acceptance," and soon orders "approving incentive awards proliferated," so that "[b]y the turn of the century, some considered these awards to be 'routine.' Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1310-11 & n.21 (2006); 2 *McLaughlin on Class Actions* §6:28 & nn.29-30 (15th ed., 2018) (reporting "near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000-$20,000.").

They have done so with no basis at all in law.  Even putting aside *Greenough's* express prohibition, there is no affirmative authority empowering courts to make these awards from common funds. "The judiciary has created these awards out of whole cloth." 5 *Newberg on Class Actions* §§17:1 (5th ed. 2019); *see id.* at §§17:2, 17:4. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. Rev. 1303, 1312-13 (2006) (noting the "lack of specific authorization for incentive awards in the relevant statutes or court rules.").

As the Sixth Circuit aptly observed, "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for

bringing suit or to compromise the interest of the class for personal gain." *In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003)).

More fundamentally, *Greenough* and *Pettus* remain binding law.  It is the Supreme Court's prerogative alone to overrule one of its precedents. *Bosse v. Oklahoma,* 137 S. Ct. 1, 2 (2016).  Lower courts are not at liberty to determine that Supreme Court authority is no longer valid because they believe it to be outdated.  Longstanding decisions become more authoritative, not less: "the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Gamble v. United States,* __U.S.__, 139 S. Ct. 1960, 1969 (2019) (citing *Montejo v. Louisiana,* 556 U. S. 778, 792 (2009));

The Supreme Court has never overruled its early prohibition on incentive awards.  Its only re-visitation comprises a recent a footnote of dictum, referring to the practice, apparently without realizing it violates prior precedent. *China Agritech Inc. v. Resh,* __U.S.__, 138 S.Ct. 1800, 1811 n.7 (2019) (stating that named plaintiffs should be motivated to file class actions because "[t]he class representative might receive a share of class

recovery above and beyond her individual claim." citing *Cook v. Niedert,* 142

F.3d 1004, 1016 (C.A.7 1998).[5]

    Nevertheless, numerous circuit courts have since endorsed this

departure from prior practice. Most have done so without reference to any

Supreme Court or statutory authority, instead relying upon the perceived

utility or prevalence of the practice among lower courts.[6] The Third and

Sixth Circuits have, in approving incentive awards, overruled *sub silentio*

---

[5] The Court's note makes no reference to *Greenough* or *Pettus,* or to the common fund doctrine, and so cannot be construed to have overruled them. *Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*"); *Agostini v. Felton,* 521 U.S. 203, 237 (1997)(discouraging courts from concluding that "our more recent cases have, by implication, overruled an earlier precedent."); *see also Mickens v. Taylor,* 535 U.S. 162, 172 (2002).

[6] *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Caliguri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving incentive awards because "courts in this circuit regularly grant service awards of $10,000 or greater"); *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 463 (9th Cir. 2000) (holding without elaboration that "the district court did not abuse its discretion ... in awarding an incentive award to the Class Representatives."); *Berry v. Schulman,* 807 F.3d 600, 613-14 (4th Cir. 2015); *Newmont Min. Corp.,* 352 F.App'x 232, 235 (10th Cir. 2009) ("'Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...'") *Keepseagle v. Perdue,* 856 F.3d 1039, 1056 (D.C. Cir. 2017) (approving incentive awards "to compensate the class representative").

their own prior cases recognizing *Greenough's* prohibition.[7]   The Second

Circuit recently affirmed incentive awards against a *Greenough* challenge,

but avoided legal analysis by holding, without further explanation, that

*Greenough* and *Pettus* were "inapposite" and did not "provide factual settings

akin to those" in the case.   *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85,

96 (2d Cir. 2019).

    The Eleventh Circuit presents a unique case.   That court recently

upheld incentive awards against an explicit *Greenough* challenge, reasoning

---

    [7] The Third Circuit initially recognized the *Greenough* rule in *Zucker v. Westinghouse Elec.*, 374 F.3d 221, 226 (3d Cir. 2004), *aff'g In re Westinghouse Sec. Litig.*, 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002) (following *Greenough*). Later, however, an *en banc* court affirmed incentive awards of $220,000, citing only district-court decisions and explaining in a footnote that "'[i]ncentive awards are not uncommon in class action litigation....". *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2010) (*en banc*) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002).   The Sixth Circuit recognized the *Greenough* rule in *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1207-08 (6th Cir. 1992) (noting that *Greenough* had specifically disallowed any allowance for the named plaintiff's "personal services and private expenses.").   But later Sixth Circuit cases treat the propriety of incentive awards as indeterminate, without reference to *Granada Investments* or Supreme Court authority. *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310-11 (6th Cir. 2016) (declaring that "[o]ur court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either." (quoting *In re Dry Max Pampers Litig,* 724 F.3d 713, 722 (6th Cir. 2013).

that many circuits had endorsed incentive awards, and that *Greenough* and

*Pettus* were decided prior to Rule 23, *Muransky v. Godiva Chocolatier, Inc.*,

922 F.3d 1175, 1196 (11th Cir.), *reh'g en banc granted, opinion vacated*, 939

F.3d 1278 (11th Cir. 2019).  However, the case has been vacated pending en

banc rehearing.

That would appear to leave the *Greenough* issue an open question in

the Eleventh Circuit.[8]  However, this Court should not follow the reasoning of

the vacated *Muransky* case.  Greenough remains good law in this and every

other circuit, and other circuit court cases, however numerous, cannot expand

courts' inherent authority beyond that allowed by the Supreme Court.  Nor is

there independent legislative authority to make incentive awards in this

common fund case.  The promulgation of Rule 23 makes no difference.

Nothing in Rule 23 undermines—let alone overrules—*Greenough* and *Pettus*.

Nowhere does Rule 23 authorize or permit special payments compensating

named plaintiffs for service as class representatives or to give them

additional incentives to litigate. *See 5 Newberg on Class Actions* §17:1. In

---

[8] However, *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) follows
*Greenough* and *Pettus* to rule that bankruptcy fund claimants can receive "no
compensation for personal services", arguably serving as binding recognition
of the *Greenough* doctrine.

fact, Rule 23 could not do so.  The Rules Enabling Act states that the federal rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. §2072.  A federal rule of procedure cannot overrule the Supreme Court to expand courts' inherent authority to establish a right to incentive awards in common fund cases.

Accordingly, Objector contends that incentive bonuses here are unlawful, given that the case involves common funds and there is no statutory authority for them in this case.

**D.    Plaintiffs have not presented evidence sufficient to support the requested awards upon any theory under which such awards are commonly justified.**

Even assuming arguendo that the requested service awards were not prohibited by Supreme Court precedent, this Court should refuse to award them here.  This case presents a particular example of how unaccountable the practice has become, detached from any notion of recompense for individual expenses or "services" provided to the class.  Plaintiffs here seek an award of $2,500 to each of 96 class representatives – a total bounty of $240,000.  *See Declaration of Robert Klonoff,* DE858-2 at 99.  As for personal efforts, expenses, or services, no representative plaintiff submitted evidence demonstrating what his or her role was in the case.  Any description of time spent by lead plaintiffs is limited to generalized and

conclusory hearsay in the declarations of Class Counsel (DE858-1:33) and

Robert Klonoff (DE828-2:99).

Here, as in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

825 F.3d 299, 311 (6th Cir. 2016), "[c]lass counsel argue[d] in conclusory

terms" that incentive payments properly compensate class representatives

for their "time spent on the case." That troubled the Sixth Circuit, which

voided $10,000 incentive bonuses, explaining:

> To ensure that these amounts are not in fact a bounty,
> however, counsel must provide the district court with
> specific documentation—in the manner of attorney time
> sheets—of the time actually spent on the case by each
> recipient of an award. Otherwise the district court has no
> basis for knowing whether the awards are in fact "a
> disincentive for the [named] class members to care about the
> adequacy of relief afforded unnamed class members[.]"

*Shane Group*, 825 F.3d at 311 (quoting *In re Dry Max Pampers Litig.*,

724 F.3d 713, 722 (6th Cir. 2013)).[9]

---

[9] *See also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing
*Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1267
(N.D.Ill.1993):

> In deciding whether such an award is warranted,
> relevant factors include the actions the plaintiff has
> taken to protect the interests of the class, the degree
> to which the class has benefitted from those actions,
> and the amount of time and effort the plaintiff
> expended in pursuing the litigation.

Similarly, this Court cannot on the present record ensure that the requested service awards are justified, and not merely a disincentive to question the adequacy of the settlement. To the contrary, the uniformity of the request and the attendant assertion that 96 out of 96 plaintiffs deserve exactly $2,500 belies any idea that the awards reflect individual expenses, effort, or services to the class. Indeed, if plaintiffs had submitted such evidence it would likely show a duplication of efforts thereby militating against the requested excessive and redundant "service awards." Nor, given the sheer number of plaintiffs, can the request be justified by suggesting that a cash award was necessary to induce plaintiffs to come forward. Accordingly, Objector respectfully submits that the request for service awards should be denied in full.

## III.   CONCLUSION

The common fund doctrine of attorneys' fees is grounded in the idea that those who benefit from a fund recovered by lawyers' efforts will be unjustly enriched if the lawyers are not paid reasonable fees from the fund. *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). But no doctrine designed to avoid unjust enrichment could possibly justify the windfall enjoyed by class action lawyers who are routinely paid fees substantially higher than their already-substantial hourly rates. While huge incomes

surely encourage the filing of many cases, this naturally comes at the expense of the class members they represent, as well as litigation in other less lucrative areas, such as civil rights and employment discrimination.

Here, as in *Bolar Pharmaceuticals,* an award of the attorneys' lodestar is presumptively reasonable and fair, and serves the purposes both of equity and of encouraging private enforcement of the law.  Awarding substantially more than the lodestar produces unacceptable conflicts of interest.

Additionally, this Court should deny plaintiffs' requested "service awards" because they are proscribed by Supreme Court precedent and, in any event, lack sufficient evidentiary support.

Objector certifies this document was prepared in Century Schoolbook, 13-point font.

Respectfully submitted, this 18th day of November, 2019.

John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

*Pro se*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing document in compliance with procedures set forth in the Settlement Notice as follows:


Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418


This 18th day of November, 2019.


_____

    John W. Davis
    3030 N. Rocky Point Dr. W.
    Suite 150
    Tampa, FL  33607
    (813) 533-1972

    *Pro se*

# EXHIBIT 1

https://trustedidpremier.com/eligibility/enroll.html

(https://www.equifax.com)

## Thank You

Based on the information provided, we believe that your personal information may have been impacted by this incident.

Click the button below to continue your enrollment in TrustedID Premier.

Enroll

For more information visit the FAQ page. (https://faq.trustedidpremier.com)



© 2017 Equifax Inc. All rights reserved

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other product and company names mentioned herein are the property of their respective owners.

Privacy Policy (https://trustedidpremier.com /static/privacy-policy) | Terms of Use (https://trustedidpremier.com/static/terms)

9/13/2017, 6:33 PM




PRESS FIRMLY TO SEAL          PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PME 1-DAY
TAMPA, FL
33611
NOV 18 19
AMOUNT
$25.50
R2305K132337-02

This envelope is made from post-consumer waste. Please recycle again.


UNITED STATES
POSTAL SERV


UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL
EXPRESS®

PRIORITY
MAIL
EXPRESS

NOV 20 2019


EE 448 815 161 US

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)          PHONE (   )

John Davis
3030 N Rocky Point Dr. W
Ste 150
Tampa FL 33607

**DELIVERY OPTIONS (Customer Use Only)**
☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1)
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4)
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's
mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
☐ 10:30 AM Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)          PHONE (   )
Equifax Data Breach Class Action
Settlement Administrator
Attn. Objection
C/O JND Legal Administration
PO Box 91318. Seattle WA

ZIP + 4® (U.S. ADDRESSES ONLY)
9 8 1 1 1 - 9 4 1 8

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.          Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
PO ZIP Code   33611   Scheduled Delivery Date (MM/DD/YY)   11/19/19   Postage   $ 25.50

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO
Date Accepted (MM/DD/YY)   11/18/19   Scheduled Delivery Time  ☐ 10:30 AM  ☑ 3:00 PM  ☐ 12 NOON   Insurance Fee   COD Fee
Time Accepted   12:44 ☐ AM ☑ PM   10:30 AM Delivery Fee   Return Receipt Fee
Special Handling/Fragile   Sunday/Holiday Premium Fee   Live Animal Transportation Fee
Weight   ☐ Flat Rate   Acceptance Employee Initials   XRH   Total Postage & Fees   $ 25.50

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)   Time  ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)   11/19/19   Time  ☐ AM ☑ PM   Employee Signature




LABEL 11-B, JULY 2018   PSN 7690-02-000-9996

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP

PEEL FROM THIS CORNER ➤

P S 1 0 0 0 1 0 0 0 0 0 6

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

UNITED STATES POSTAL SERVICE

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select international destinations. See DMM and IMM at pe.usps.com for complete details.
‡ Money Back Guarantee for U.S. destinations only.          ‡ For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights reserved.

Received
SEP 30 2019
by JNDLA

*7 Bluebird Lane*
*Mill Valley, California*
*94941*

*tel. (415) 297-6657*
johngf@aceweb.com

## John G. Fischer

**In RE: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:15-md-2800-TWT**

Thursday, September 19, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA. 98111-9418

To Whom it May Concern:
I am a member of the Settlement Class. I have been notified electronically that my data was breached.

I object to the fact that the settlement may actually not be what it purports to be. I am hearing that the settlement is not fully funded by Equifax, that if class members such as I want to take my option to receive $25 plus money for my time wasted in this matter, the funds may not actually be on deposit. I don't like Equifax and DO NOT WANT THEIR CREDIT MONITORING SERVICES. If I want credit monitoring service, I will happily use another vendor, not Equifax, an organization which has been proven to be negligent with people's important *private information.*

**Please amend or change any settlement to make sure that we class members who want to receive our $125 plus money for time wasted on this matter can collect this money.** Please make sure that Equifax funds this settlement adequately.

I have never objected to a class action settlement in my life, but I am objecting to this. I do not intend to attend any hearings regarding this matter, however, I do hope that this Court considers my objection.

Sincerely,

7B Bird
MV, CA a4941

Equifax Data Breach Class Action

Attn: Objection

c/o JND Legal Administration

P.O. Box 91318

Seattle, WA 98111-9418

SEP 23 2019

SEP 30 2019

24324 Greenberg Court
Naperville, Illinois 60564
November 16, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

> Received
>
> NOV 2 2 2019
>
> by JNDLA

Dear Sir or Madam:

This letter is in response to the Equifax Data Breach Lawsuit *(Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT) offered to individuals affected by inadequate Equifax security controls.

Neither my wife nor I are customers of Equifax and I believe the compensation offered by Equifax is inadequate. Even $125 per event is inadequate.

Nevertheless Equifax continues to be a persistent negative business experience.  The data breech is only one of three problems we have recently experienced - one is ongoing.

EQUIFAX Data Breech
Both wife and I were impacted.  It is well known Equifax management chose not to implement best practices security.  Management opted instead for a fatter bottom line at the expense of our personal data.

This is not simply what a CPA would refer to as a material weakness, it is mission failure.  Equifax is one of three major credit bureaus, we don't need all three.  Equifax is not too big to fail, and in fact simply slapping them on the back of the hand sends a message to all organizations that profit-centric behavior will be tolerated.

Due to the Equifax data breech, we have needed to freeze our accounts at all three credit bureaus.  And this has complicated our lives.

ELOC Application
In 2018, my wife and I applied for a Home Equity Line of Credit on our home which we 100% owned.  Pentagon Federal was not able to retrieve our credit scores.  Both my wife and I spoke to Equifax customer service, and we were instructed that a PIN would be mailed to us to unfreeze our accounts.

It never arrived. Twice.  We lost the loan.

I need to write a certified letter (attached) to Paulino do Rego Barros, Equifax President, and later received a phone call from the president's office.  At that time we learned Equifax was mailing our PINS not to our address in Naperville, Illinois – but to a temporary apartment in Alexandria where I consulted in 2012-2013.  Please note this is FIVE years after my consulting assignment ended and we have owned our home in Naperville since 1993!

Car Loan Application
Problems continue. My wife and applied for a car loan yesterday.  To get a loan we need to unfreeze whatever agency the bank chooses to use.  Our application bank notified us that they use Equifax.

Although we have our 10 digit PINs, the website will not allow us to unfreeze our credit.  We will need to call during working hours to get a representative to help us.

The low standard of quality provided by Equifax continues.  Close them down.

John Grenier, CPA

24324 Greenberg Court
Naperville, Illinois  60564
March 2, 2018

Paulino do Rego Barros
President, Equifax
1550 Peachtree Street, N.W.
Atlanta, GA 30309

Mr. Barros:

Equifax has made my life <u>much more difficult</u>.  Because of Equifax's data breech, which went undetected for several months, I need to protect my credit vigilantly.

I placed a freeze on my credit last September, which likely will be required for the remainder of my lifetime.  <u>Yesterday a refinance on a Home Equity Loan was denied based upon the inability of the lender to access both my and my wife's credit scores at Equifax</u>.  Please note our credit scores are over 800.

| | |
|---|---|
| February 9: | Called Equifax to lift my credit freeze for the lender |
| | This was a long telephone call for both my wife and myself, requiring us to provide extensive personal information and answer obscure financial questions.  We were given confirmation numbers (8040061406, 8040062171) for 10-digit keys to be mailed to us. |
| | It is now March 2, and this fulfilment has not occurred.  I believe that the mail is reliable; I believe the representative did not process our requests properly. |
| February 20: | Called Equifax to understand why we haven't received the 10-digit keys.  Another long phone call with many verifications, to simply tell me my confirmation number was correct.  Equifax's representative could not provide specifics regarding when the item was processed and mailed.  I should be patient, I would receive my numbers soon. |
| March 1: | Lender let me know my loan application had been cancelled.  They allow 10 days for credit freezes to be removed, and it is now 3 weeks. |
| March 2: | Called to request new numbers.  Confirmation numbers (8061048490, 8061049291). |

I managed security initiatives for CTO (Centralized Transaction Organization) at JP Morgan.  It is not simply that Jamie Dimon invested in state of the art security, it is also cultural.  Security at JPMC had a seat at the table, and their needs were heard and resources allocated to initiatives.  Please note that CTO has over 20,000 employees, which is more than twice the size of Equifax.

This is a classic example of an organization placing profits before controls.  Not only because of the data breech, but because controls were not in place to detect the breech for an extended period.  CPAs refer to this is as <u>material weakness</u>.  Equifax permanently complicated the financial lives of 150 million Americans, myself included, and has not been held responsible for making Americans whole again.

John Grenier, CPA

cc:  Randy Hultrgren, Representative Illinois 14th District
Richard Durbin, Senator, State of Illinois
Tammy Duckworth, Senator, State of Illinois
John Kelly, Chief Legal Officer, Equifax



Ms. Emily A. Basham
24324 Greenberg Ct.
Naperville, IL 60564-8067

NOV 2 2 2019

EQUIFAX DATA BREACH
CLASS ACTION SETTLEMENT ADMIN
ATTN: OBJECTION
C/O JND LEGAL ADMIN.
P.O. BOX 91318
SEATTLE, WA 98111-9418

98111—941818



006390609145038

United States District Court for the Northern District of Georgia
United States Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303-3361

RECEIVED IN CLERK'S OFFICE
U.S D.C. - Atlanta

SEP 20 2019

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Your Honor,

Equifax notified me that they had allowed all of my personal and financial information to be stolen from their database.

I applied online for the $125 that the Federal Trade Commission had specified that Equifax should pay to every one of their victims.

Now Equifax is saying that I will receive 21 cents, because they set aside an insignificant amount for the settlement.

I request that you reject this settlement and force Equifax to pay a commiserate amount to compensate for the damage done from their data breach.

Respectfully,
John Judkins
19730 SW 49th Avenue
Tualatin, Oregon 97062

John Judkins
19730 SW 49th Avenue
Tualatin, OR 97062-8778

PORTLAND OR 972

17 SEP 2019 PM 1 L



United States District Court
Northern District of Georgia
United States Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303-3361

30303-331861

November 12, 2019

John Fitzgerld Myers
600 Northern Ave Apt 2302
Clarkston GA 30021

Received
NOV 21 2019
by JNDLA

In re: Equifax Inc. Customer Data Security
Breach Litigation, Case No. 1:17-md-2800-TWT

To whom it may concern:

I am writing to state my objection to the proposed
settlement. I am a member of the proposed settlement after
verifying the last four numbers of my social security number with
the settlement administrator after calling 1-833-759-2982.
I have never, ever, objected to a class action settlement.
I object to this settlement and would like the court to
know that I believe the proposed settlement is totally
inadequate.

From the very beginning, (following the breach), Equifax promised
anyone who had signed up for credit monitoring $125 each.
It sounded reasonable at the time but after crunching the
numbers I had no other choice but to object — after
realizing; from the $700 million payout figure touted by

½

the FTC less than 5% would actually be used toward victim compensation. That is insulting. After letting those figures sink in; Equifax then had the gall to require anyone submitting a claim (for compensation) would have to PROVE that they actually had credit monitoring. This went from insulting to appalling. Not only is Equifax massively under compensating people for EXPOSING their personal info, it's doing all it can to weed out as many as possible from the settlement by requiring them to jump through additional hoops.

I will not be attending the hearing set to be held in Atlanta GA on December 19, 2019 at the Richard B. Russell Federal Bldg (Courtroom 2108) at 10 Am, as I have other engagements scheduled for that day but I am writing this letter to voice my objections to this inadequate proposed settlement. It is NOT fair to the Consumer whose personal info was handled so carelessly by Equifax. A company many thought could be trusted with such valuable information.

Thank you,

John F. Myers    2/2



Mr. John Myers
600 Northern Ave. Apt. 2302
Clarkston, GA 30021

NOV 2 1 2019

98111-941818

Equifax Data Breach Class
Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

November 4, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn:  Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA  98111-9418

Received
NOV 0 8 2019
by JNDLA

Dear Sirs,

I object to the settlement in the proceeding: **Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT.**

Equifax clearly identified my social security number and credit file was included in the Security Breach.  I don't believe the court should deny the settlement as it is.  I have several credit monitoring agencies, including McAfee ID Monitoring, Kroll ID Monitoring, AllClear ID, and Protect My ID, all of which monitors my credit, and the release of my personally identifiable information, including credit card numbers, social security number, email addresses, bank information, address, and other credit based information.  To add another credit monitoring service is neither useful, nor an equitable settlement.

Further, I have placed a credit freeze on my file, and for each need for a credit review (e.g., buying a car, establishing a new line of credit, new credit card, insurance, purchase of a house, etc.), I've had to unfreeze my credit across all three agencies, at the cost of at least $5 per credit release, which has added up since the Equifax Customer Data Security Breach, and will continue to accrue in the future for each need to unfreeze my credit.   I strongly object to the settlement as proposed.

My name and contact information:

John J. Namovic
2929 W Gulf Dr Unit 307
Sanibel, FL  33957


I have never objected to any class action settlements in my life.  I will not appear at the fairness Hearing shortly scheduled.


Sincerely,

John J. Namovic

2424 W. Gulf Dr. Unit D4
Sanibel, FL 33957

Equifax Data Breach Class Action Settlement Administrator
ATTN: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Received
NOV 08 2019
by JNDLA

FT MYERS FL 339

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

*Received*
*SEP 30 2019*
*by JNDLA*

To whom it may concern,

I, John Cody Stevens, am part of the class action lawsuit due to my personal information being included in the breach of Equifax's system and agreed to participate in the class action settlement.  I object to the settlement payout being cut down significantly, for me, from the original $125.00.  I am now being told I could receive substantially less than $125.00 and Equifax is actively trying to lower, not only the settlement payout amount but also the settlement pool size.  How can we protect our citizen's personal information from harm if we allow corporations to avoid the full punishment ordered by the justice system like this?

This is the only class action settlement I've objected to in the last five (5) years.  I do not intend to appear at the Farness Hearing unless requested.


John Cody Stevens

25837 Labana Woods Drive.

Taylor, MI 48180

METROPLEX MI 480

25 SEP 2019 PM 4 L

SEP 3 0 2019

ATTN: Objector
C/o JND Legal Administrator
P.o. Box 91318
Seattle, WA 98111-9418

25837 Loben wal Dr.
Taylor, MI 48180

19629 Galway Bay Circle, #302
Germantown, Maryland  20874
November 14, 2019

Received

NOV 2 1 2019

bv JNDLA

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT,

Your Honor:

I write to respectfully object to the terms of the Equifax claim breach settlement on two grounds: first, inadequate notice, and second, the amount of the settlement when divided by the number of claimants is far less than the advertised $125 payout.  I believe myself to be a member of the settlement class because when I entered my information on the settlement administrator's website, it said that my data was breached.

I object firstly because, although Rule 23(b)(2) of the *Federal Rules of Civil Procedure* says that "notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means," it also says that "the court *must* direct to class members the *best* notice that is practicable under the circumstances, *including individual notice to all members who can be identified through reasonable effort*" (emphasis added).  There should be a list of all of the people whose data was breached, and yet (to the best of my knowledge and belief), I never received a mailing.  Rather, I heard about this breach by word of mouth at my place of employment, and over the Internet.  I credit the settlement administrator for promoting adequate press coverage, but in cases such as this I believe that potential class members should also be notified by first-class mail.  Notably, those who are most severely harmed may not have had the opportunity to have heard about it at work (since they might be unemployed) nor to have heard of it over the Internet (because of inability to afford high-speed Internet, or because of simple lack of time to browse the Web).

Furthermore, it is hard to determine whether an e-mailed notice is genuine or not, and automated anti-spam software used by my e-mail provider may have filtered any attempted e-mail notification even if I would have been inclined to read it had it appeared in my inbox.  Other people would likely presume that such a notice is a phishing attempt, and delete it, especially given the characteristics of this particular Settlement Class (which may distinguish it from other settlements in which notice other than by First-Class Mail was approved.)  In this case the Defendant actually has, or should have, the mailing addresses, of all class Members, so first-class mail is especially appropriate, where it might be less appropriate in cases where the defendant has e-mail addresses of plaintiffs but not physical addresses.

   I admit that I moved, but one would hope that the post office would have either returned or forwarded any attempted first-class mail sent to my old address.  The objection on the grounds of sufficiency of notice applies to that portion of the settlement class that was not notified by first-class mail, and to myself.

   My second grounds of objection is regarding the size of the settlement.  A July *Washington Post* article ("Equifax promised up to $125 for the hack. Now, the FTC says you'll get 'nowhere near' that amount," by Eli Rosenberg, retrieved online from https://www.washingtonpost.com/business/2019/07/31/equifax-promised-up-hack-now-ftc-says-youll-get-nowhere-near-that-amount/) explains that the math simply doesn't add up. If every person whose data was breached deserves $125 in damages under the law, then $31 million is inadequate to pay them all (unless, as I explained above, not all of the victims were notified.)  This portion of the objection applies to the entire class.

   For these reasons I respectfully object to the proposed settlement.  I have never previously objected to any court  (nor submitted formal objections to any settlement administrator) regarding any other class action settlement, I do not intend to appear personally at the Fairness Hearing, and I have not retained legal representation in this matter.  Thank you for considering my views on this matter.

        Respectfully submitted,

        Jonathan David Loo

Mr. Jonathan D. Loo
19629 Galway Bay Cir Unit 302
Germantown Md 20874

NOV 2 1 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



NOV 2 1 2019

**PRIORITY**
★ **MAIL** ★

**FLAT RATE ENVELOPE**
ONE RATE ★ ANY WEIGHT™

APPLY PRIORITY MAIL POSTAGE HERE

Mr. Jonathan D. Loo
19629 Galway Bay Cir Unit 302
Germantown Md 20874

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 93111-9418

* For international shipments, the maximum weight is 4 lbs.

EP14H July 2013 Outer Dimension: 10 x 5

U.S. POSTAGE
$7.35
20874
Date of sale
11/19/19
06   2SSK
11488720
993691119095124

FOREVER / USA

FOLD HERE