# Exhibit B - 16

**REQUEST FOR EXCLUSION**

**November 15th, 2019**

**To:**

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Received
DEC 0 2 2019
by JNDLA

**To Whom it may Concern:**

**Regarding:**

*Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT know as the Equifax Data Breach Lawsuit

I am on the list of people exposed by the security breach:

Lori Francis

1924 Carmel Dr. Plano Tx 75075

I do not believe this settlement is reasonable.  I have spent a lifetime preparing for retirement and with my social security number and associated personal information that was exposed in this breach could cost me all those assets.  This settlement does not address that risk.

Should I lose my retirement assets because someone uses my personal information to access my retirement accounts, I do reserve the right to expect Equifax to make me whole.  I never gave them approval to accumulate my personal information.  They accumulated my information for their profit and without my approval and then they were negligent and allowed that information to be distributed.

There are no other class action law suits that I have object to, but this one has way too much potential damage to accept a settlement that limits Equifax's exposure, while exposing me.

I do not intend to appear at the fairness hearing.  Expecting me to take that time only furthers my losses because of Equifax's negligence.  If I encounter actual losses, I do expect Equifax to make me whole.

*L. Francis*

Lori Francis

Francis
1924 Carmel Dr
Plano TX 75075

DEC 0 2 2019



PLACE THIS LABEL TO THE LEFT OF THE POSTAGE

USPS CERTIFIED MAIL

9514 8065 7826 9322 1488 75

RETURN RECEIPT

Equity Data Breach Class Action Settlement
Admin
Petition Objection
c/o JND Legal Administration
PO Box 91318
Seattle WA 98111

U.S. POSTAGE
$5.65
FCM LETTER
75075 0000
11/18/19
06/18/19
25
11486430 SSK
8965911181617568

FOLD HERE

Ly Nguyen
725 Fell St. #8,
San Francisco, CA 94117
Claim #P46WC-3DZUY



*In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT*

To whom it may concern,

I am a member of the settlement class because the Equifax settlement site indicates that my personal and financial data was a part of the data breach (https://eligibility.equifaxbreachsettlement.com/en/Eligibility).

I object strongly to this settlement as it is not fair, reasonable, or adequate to compensate for the damages done to Equifax's "customers" (though none of us have chosen for Equifax to collect our data), nor is it any kind of deterrent for similar companies so that this doesn't happen again. Whether willful or through incompetence, the penalties for this kind of failure should be incredibly steep because the 148 million people impacted will be dealing with the repercussions of this for the foreseeable future.

I absolutely feel deceived by the terms of the settlement. The idea that offering members of this settlement class credit monitoring by Equifax, the same company whose shoddy security practices led to this massive failure, could be adequate or appropriate is moronic. That this isn't accompanied by financial recompense is insulting. The number of hoops I had to jump through to prove to the same company that lost my data that I had appropriately taken steps to protect myself from them is idiotic. And the fact that a $425 million settlement comes to just $2.87 per victim is frankly unacceptable.

I have not objected to any class action settlements previously and I do not intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer.

I truly hope that this ridiculous settlement is rejected and a more equitable settlement is reached.

Sincerely,

Ly Nguyen



USA FIRST-CLASS FOREVER

SAN FRANCISCO CA 940|

03 OCT 2019 PM 3 L

LY NGUYEN
225 FELL ST. #8
SAN FRANCISCO, CA 94117

☐ CHECK IF ADDRESS HAS CHANGED

OCT 07 2019

Equifax Data Breach Class Action
Settlement Administrator

Attn'. Objections c/o JND Legal Admin
PO Box 91318
Seattle, WA 98111 - 9418

ER-117480

98111-94i8i8

Received
SEP 24 2019
by JNDLA

September 20, 2019

Equifax Data Breach Class Action Settlement Administrator
ATTN:  OBJECTION
c/o JND Legal Administration
P O BOX 91318
Seattle, WA  98111-9418

RE:  Equifax Data Breach Lawsuit Claim Number: PVY24-BMAEJ  Madison I McCall

Dear Sir/Madam:

I logged onto the *EquifaxBreachSettlement* website and clicked on the green box to **Find Out If Your Information Was Impacted**. I found out that my data was in fact compromised and soon thereafter submitted a class action claim against Equifax.   The Claim Number is referenced above.

Today I am registering my complaint about the settlement terms of either free credit monitoring or $125 cash.  Equifax was alerted to its security vulnerability by the FTC and failed to act.  They have not even admitted to any wrongdoing.  This massive data breach is shocking.  The offer of credit monitoring from the very firm that failed to keep my Social Security Number and other such data safe is a joke. Who would want credit monitoring from Equifax now?  Likewise the offer of $125 (or less depending on the number of filers) is woefully inadequate to cover potential problems of protecting my identity and monitoring my credit now and into the future.

 I never authorized Equifax to accumulate financial data on me.  I never authorized the sale or exposure of that data to them or to anyone else.  I am very upset that my privacy has been violated and that I am exposed to potential fraud and/or criminal activity now and into the future due to Equifax's careless handling of my financial data.  This data breach is particularly troubling because Equifax is a credit monitoring company and should have been able to safeguard this information.  In conclusion, **I object to this settlement**.  I've never filed a class action complaint until now.  I don't plan to appear at a Fairness Hearing.

*Madison McCall     Sept 20th 2019*

Madison I McCall, 510 Wellington Pl, Charlottesville, VA  22903

RICHMOND VA 230

21 SEP 2019 PM 3 L

USA FOREVER

Equifax Data Breach Class Action Settlement Administrator
ATTN: OBJECTION
c/o JND Legal Administration
P O BOX 91318
SEATTLE, WA  98111-9418

Madison & Dorothy McCall
510 Wellington Pl
Charlottesville, VA  22903

SEP 2 4 2019

**To:**

The Honorable Chief Judge Thomas W. Thrash, Jr.

        - and -

Equifax Data Breach Class Action Settlement Administrator

Attn: Objection

c/o JND Legal Administration

P.O. Box 91318

Seattle, WA 98111-9418

```
Received

NOV 0 7 2019

by JNDLA
```

**From:** Mandi Jo Hanneke, Class Member

**Re: In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT**

**Date:** November 4, 2019

To the Honorable Chief Judge Thomas W. Thrash, Jr.:

I write to object to the proposed settlement in the matter **In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT.** The relief provided to the class members through the Settlement Agreement is not fair, reasonable, or adequate. As a member of the class, I ask that you deny the Settlement Agreement and Release.

The required information, other than the reasons for objection and my personal signature, as listed at https://www.equifaxbreachsettlement.com/faq, is below my signature, at the end of this objection letter.

**The Relief Is Not Fair, Reasonable, and Adequate**

In order for a proposed settlement in a class action to be approved, the relief must be fair, reasonable, and adequate. Simply, the proposed relief satisfies none of these three requirements.

The Parties argue that the relief is fair, reasonable, and adequate because "the specific benefits compare favorably to what has been previously obtained" in prior data breach litigation. (Settlement Agreement, Document 739-1, Page 15). Much of this argument relates to the dollar amount involved, which is quite large. However, the number of individuals whose data was mishandled by Equifax is also extremely large – 147 million. According to the US government, that is nearly 58% of the entire adult population of the United States who had their personal information exposed by the negligence of Equifax! (Attachment A, US Census Bureau QuickFacts). Just because the number is large, doesn't mean it is fair, reasonable, and adequate. In this case, it is not.

1. **Six Years of 1-Bureau Credit Monitoring at Equifax is Unfair, Inadequate, and Unreasonable**

The Settlement is unreasonable, unfair, and inadequate when you recognize that a large portion of the Settlement relief requires consumers to use services from and entrust their personal information to the very company that allowed their personal information to be stolen in the first place. According to the documents, this portion of the Settlement is provided to the consumers by Equifax. What reasonable person would voluntarily choose to seek credit monitoring services from the very entity that mishandled their personal information requiring them to obtain the monitoring services to begin with? The simple answer is that no reasonable person would do that. A Settlement Agreement that promotes the services of, and requires the harmed class members to use the services of the company that harmed them, is unfair, inadequate, and unreasonable.

With regard to the adequacy and reasonableness of the length of time of this relief and the value of the relief, I refer you to Sections 4 and 5, below.

2. **The $31 Million Cap on Time Spent Relief is Neither Adequate Nor Reasonable**

There are 147 million class members. The Settlement permits every class member to file a claim for time spent dealing with Equifax's mishandling of personal information. The minimum amount of time a class member can claim is 1 hour, at $25 per hour. A cap of $31 million has been placed on this claim. This portion of the fund will be exhausted if only 1.24 million class members file claims for time spent. That is less than 1% of the class! Webster's Dictionary defines adequate as sufficient and reasonable as sensible. A settlement is neither sufficient nor sensible if it counts on less than 1% of the class members filing claims in order to pay out the minimum claims amount (1 hours' time at $25 per hour).

I spent time freezing my credit at all three bureaus. It took me approximately 1 hour to do that. If 20% of the class members did this and filed claims for it, each class member would receive $1.05 for that 1 hour of time spent. That's not even close to minimum wage. If 39% of class members file claims for time spent (or less file claims exceeding 1 hour of time), then the cost of the stamp to mail the check for the relief will be more than the amount of the check.

This part of the relief is all the more unreasonable considering that the Settlement Agreement provides for additional sums to be paid into the Fund for credit monitoring services if more than 7 million class members seek that portion of the relief. Accordingly, the Settlement Agreement foresaw the possibility of at least 4% of the class members seeking relief, yet

provided funding for time spent relief for less than 1% of the class. It is entirely reasonable to believe that every class member seeking credit monitoring relief will also apply for time spent relief for actions taken, such as applying for credit freezes, yet the Settlement Agreement does not provide funds for equal percentages of class members filing for both.

Due to the cap on this portion of the Fund and the inequity of funding provided for this portion of relief, as compared to other portions of the relief, the settlement is neither adequate nor reasonable.

### 3. The $31 Million Cap on the $125 Alternative Compensation is Neither Adequate Nor Reasonable

If a class member already has credit monitoring, they are able to file a claim for $125 in. The payout for this portion of the Fund is capped at $31 million (or just 8% of the $380.5 million settlement amount) for these claims.

There are 147 million class members.  Although this alternative is only for those claimants that already have credit monitoring, given the ubiquitous-ness of both prior class actions that have settled with credit monitoring as the primary "payout" and the fact that at least two credit card companies offer credit monitoring to their customers for free, it is easily foreseeable that substantial percentage of class members filing for relief already have credit monitoring services and would therefore be eligible for the $125 payment.

Yet, a cap of $31,000,000 allows full payment for just 248,000 class members, which is less than 0.2% of the class! If even half of the 147 million class members file claims for this alternative relief, they will receive a payment of $0.42 – a mere 0.3% of the $125 advertised amount and less than the cost of mailing the check to the claimant. Capping this cash amount at $31 million, when the class is 147 million members strong is unreasonable and inadequate. It is also inadequate when viewed against the backdrop that the Settlement Agreement foresaw the possibility of at least 7 million class members filing claims for credit monitoring and provided for additional funds. Yet, this portion of the relief begins reducing the agreed-upon relief after just 248,000 class members file for it, just 3.5% of the at least 7 million claimants it predicted might file for credit monitoring services. I can't stress enough that the cap makes this an unreasonable and inadequate settlement.

Moreover, on July 31, 2019, just 9 days into the 6 month claim filing period,  the FTC issued a press release "urging consumers affected by Equifax's 2017 data breach to consider signing up for the free credit monitoring". (Attachment B, July 31, 2019 FTC Press Release) A settlement that cannot withstand claims for even 9 days of the 6 month claim period is neither adequate nor reasonable.

Further, given that claimants had to provide the name of the credit monitoring service they had in order to file for the $125 option, the FTC was urging claimants to seek relief from the settlement that would duplicate already obtained services – in other words – no relief at all. A Settlement that provides no relief at all (which accepting credit monitoring when a consumer already has it results in) is an unfair settlement. The fact that the FTC was urging consumers to accept that "no relief" option as their best "option" under the settlement should be prima facie evident of unfair, inadequate, and unreasonable relief.

### 4.  Four Years of 3-Bureau Credit Monitoring is Inadequate

The Settlement Agreement touts the availability of 4 years of credit monitoring and its claimed value of $1,200 as sufficient. The personal information that Equifax mishandled included my birthdate and Social Security Number. My birthdate cannot be modified. I will have it the rest of my life. I will be required to use it to open bank accounts (for example) for the rest of my life. My SSN is not easily modifiable. Again, I will be required to use it for the rest of my life. Equifax's negligence and failure to secure my personal information has left me vulnerable to identity theft for the rest of my life.

My grandmother just turned 100 and I am now 42. According to the Social Security Administration, I am expected to live another 40 years. (Attachment C, SSA Actuarial Life Table) Four years is just 1/10[th] of the time I will need to monitor my credit reports and other information to watch for identity theft from Equifax's mishandling of my personal information. Four years is far too short of a time period to provide adequate relief for the lifetime of monitoring that will be required because of Equifax's negligence.

### 5.  The Claimed Value and Cost of the 3-Bureau Credit Monitoring is Unreasonable

Further, the Settlement Agreement claims that "Four years of three-bureau credit monitoring ... would cost each class member $1,200." (Settlement Agreement, Document 739-1, Page 16) This is a wildly overstated amount, which affects the reasonableness of the relief. A simple web search for credit monitoring services shows that a consumer can obtain 3-burureu credit monitoring from independent companies at a range of costs, starting as low as $99.99 per year (Attachment D, Screenshot from https://identitydefense.com-visited on October 29, 2019).

Moreover, credit monitoring from Experian for one adult, bought online, with no bulk discount is only $199.99. (Attachment E, Experian advertised cost for 1 adult) Yet, the Settlement Agreement claims this service provides a $300 value per year. On its face, this is inaccurate. I would hope that when guaranteeing a large number of users (millions, or hundreds of millions, based on this class size), the parties would be able to negotiate a substantial discount. From the

parties' claims of consumer value, they have not only failed to negotiate a discount, but that have actually agreed to pay Experian **more than** the going rate for an individual purchasing the service. This is the definition of unreasonable.

If you dig into the Settlement Agreement a bit more, however, it appears the Agreement has negotiated a payment of $34 per claimant for the full 10 years of credit monitoring provided for in the Settlement Agreement. [1] The Parties should not be able to claim $1,920 as the value to the consumer of this portion of the settlement, but only spend $34 on it. It's a misrepresentation, and when seen from the consumer's point of view, inadequate relief for the harm caused by the defendant.

**Conclusion**

The class is 147 million members. The amount of the settlement, excluding attorney's fees and costs, is $300 million. If distributed evenly among all class members, each person would receive $2.04. Yet, most class members won't even see that, given the caps for cash payouts that have been included in the Agreement.

Further, within 9 days of the ability to file claims, the FTC was urging class members to file claims not for cash, but for credit monitoring services they already had – in other words, for no relief at all. Because if you already receive credit monitoring, signing up for more credit monitoring over the same period of time from a different provider is not relief – it is nothing.

Simply, the Settlement Agreement provides relief to the class members that is unfair, unreasonable, and inadequate. The Court should deny the request and disapprove the agreement.

Respectfully Submitted,

Mandi Jo Hanneke
26 Foxglove Lane
Amherst, MA 01002

---

[1] The Settlement Agreement appears to indicate that if more than 7 million class members make claims for credit monitoring, then additional funds will be paid to accommodate the additional claims. First, 7 million is only 4% of the class. Second, the maximum funds that could be devoted to these claims is $238 million ($300 million minus $62 million for time and alternative claims). That amounts to a cost of $34 per claimant for 10 years of credit monitoring services – well below the $1,920 the Settlement Agreement claims as the value the consumer is getting.

Information Required to be included in this Objection:

1. The name of this proceeding: *In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT*
2. Your full name and current address: *Mandi Jo Hanneke, 26 Foxglove Lane, Amherst MA 01002*
3. Your personal signature: *See Above*
4. A statement indicating why you think that you are a member of the settlement class: *When I enter my information using the "look-up tool" provided on the FTC's website about this settlement (https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement; and https://eligibility.equifaxbreachsettlement.com/en/eligibility), I am told "Based on the information you provided, our records indicate your personal information was impacted by this incident."*
5. A statement with the reasons why you object, accompanied by any legal support for your objection: *See Full Contents of Letter*
6. A statement identifying all class action settlements to which you have objected in the previous five (5) years: *I have not objected to any class action settlements in the previous 5 years.*
7. A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between 11/19/2019 and 12/5/2019 during which you are available to be deposed by counsel for the Parties: *I do not intend to appear at the Fairness Hearing.*

Additionally, if you are represented by a lawyer and your lawyer intends to speak at the Fairness Hearing, your written objection letter must include:

8. A detailed statement of the specific legal and factual basis for each and every objection: *I am not represented by an attorney.*
9. A detailed description of any and all evidence you may offer at the Fairness Hearing, including copies of any and all exhibits that you may introduce at the Fairness Hearing: *I am not represented by an attorney.*

Additionally, if you are represented by a lawyer, and your lawyer intends to seek compensation for his or her services from anyone other than you, your written objection letter must include:

10. The identity of all lawyers who represent you, including any former or current lawyer who may be entitled to compensation for any reason related to the objection: *I am not represented by an attorney.*
11. A statement identifying all instances in which your lawyer or your lawyer's law firm have objected to a class action settlement within the preceding five (5) years, giving the case name, case number, and court in which the class action settlement was filed: *I am not represented by an attorney.*
12. A statement identifying any and all agreements or contracts that relate to the objection or the process of objecting—whether written or oral—between the you, your lawyer, and/or any other person or entity: *I am not represented by an attorney.*

13. A description of your lawyer's legal background and prior experience in connection with class action litigation: *I am not represented by an attorney.*

14. A statement regarding whether your lawyer's compensation will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought; the factual and legal justification for any fees to be sought; the number of hours already spent by your lawyer and an estimate of the hours to be spent in the future; and the lawyer's hourly rate: *I am not represented by an attorney.*

# Attachment A

U.S. Department of Commerce | Blogs | Index A-Z | Glossary | FAQs

Search

## QuickFacts
**United States**

QuickFacts provides statistics for all states and counties, and for cities and towns with a *population of 5,000 or more*.

### Table

| All Topics | United States |
|---|---|
| **Population estimates, July 1, 2018, (V2018)** | **327,167,434** |
| 👤 **PEOPLE** | |
| **Population** | |
| **Population estimates, July 1, 2018, (V2018)** | **327,167,434** |
| Population estimates base, April 1, 2010, (V2018) | 308,758,105 |
| Population, percent change - April 1, 2010 (estimates base) to July 1, 2018, (V2018) | 6.0% |
| Population, Census, April 1, 2010 | 308,745,538 |
| **Age and Sex** | |
| Persons under 5 years, percent | ⚠ 6.1% |
| Persons under 18 years, percent | ⚠ 22.4% |
| Persons 65 years and over, percent | ⚠ 16.0% |
| Female persons, percent | ⚠ 50.8% |
| **Race and Hispanic Origin** | |
| White alone, percent | ⚠ 76.5% |
| Black or African American alone, percent   (a) | ⚠ 13.4% |
| American Indian and Alaska Native alone, percent   (a) | ⚠ 1.3% |
| Asian alone, percent   (a) | ⚠ 5.9% |
| Native Hawaiian and Other Pacific Islander alone, percent   (a) | ⚠ 0.2% |
| Two or More Races, percent | ⚠ 2.7% |
| Hispanic or Latino, percent   (b) | ⚠ 18.3% |
| White alone, not Hispanic or Latino, percent | ⚠ 60.4% |
| **Population Characteristics** | |
| Veterans, 2013-2017 | 18,939,219 |
| Foreign born persons, percent, 2013-2017 | 13.4% |
| **Housing** | |
| Housing units, July 1, 2018, (V2018) | 138,537,078 |
| Owner-occupied housing unit rate, 2013-2017 | 63.8% |
| Median value of owner-occupied housing units, 2013-2017 | $193,500 |
| Median selected monthly owner costs -with a mortgage, 2013-2017 | $1,515 |
| Median selected monthly owner costs -without a mortgage, 2013-2017 | $474 |
| Median gross rent, 2013-2017 | $982 |
| Building permits, 2018 | 1,328,827 |
| **Families & Living Arrangements** | |
| Households, 2013-2017 | 118,825,921 |
| Persons per household, 2013-2017 | 2.63 |
| Living in same house 1 year ago, percent of persons age 1 year+, 2013-2017 | 85.4% |
| Language other than English spoken at home, percent of persons age 5 years+, 2013-2017 | 21.3% |
| **Computer and Internet Use** | |
| Households with a computer, percent, 2013-2017 | 87.2% |
| Households with a broadband Internet subscription, percent, 2013-2017 | 78.1% |
| **Education** | |
| High school graduate or higher, percent of persons age 25 years+, 2013-2017 | 87.3% |
| Bachelor's degree or higher, percent of persons age 25 years+, 2013-2017 | 30.9% |
| **Health** | |
| With a disability, under age 65 years, percent, 2013-2017 | 8.7% |
| Persons without health insurance, under age 65 years, percent | ⚠ 10.0% |
| **Economy** | |
| In civilian labor force, total, percent of population age 16 years+, 2013-2017 | 63.0% |
| In civilian labor force, female, percent of population age 16 years+, 2013-2017 | 58.2% |
| Total accommodation and food services sales, 2012 ($1,000)   (c) | 708,138,598 |
| Total health care and social assistance receipts/revenue, 2012 ($1,000)   (c) | 2,040,441,203 |
| Total manufacturers shipments, 2012 ($1,000)   (c) | 5,696,729,632 |
| Total merchant wholesaler sales, 2012 ($1,000)   (c) | 5,208,023,478 |
| Total retail sales, 2012 ($1,000)   (c) | 4,219,821,871 |
| Total retail sales per capita, 2012   (c) | $13,443 |
| **Transportation** | |
| Mean travel time to work (minutes), workers age 16 years+, 2013-2017 | 26.4 |

Case 1:17-md-02800-TWT   Document 899-18   Filed 12/05/19   Page 19 of 64

### Income & Poverty

| | |
|---|---|
| Median household income (in 2017 dollars), 2013-2017 | $57,652 |
| Per capita income in past 12 months (in 2017 dollars), 2013-2017 | $31,177 |
| Persons in poverty, percent | ▲ 11.8% |

## BUSINESSES

### Businesses

| | |
|---|---|
| Total employer establishments, 2016 | 7,757,807 |
| Total employment, 2016 | 126,752,238 |
| Total annual payroll, 2016 ($1,000) | 6,435,142,055 |
| Total employment, percent change, 2015-2016 | 2.1% |
| Total nonemployer establishments, 2017 | 25,701,671 |
| All firms, 2012 | 27,626,360 |
| Men-owned firms, 2012 | 14,844,597 |
| Women-owned firms, 2012 | 9,878,397 |
| Minority-owned firms, 2012 | 7,952,386 |
| Nonminority-owned firms, 2012 | 18,987,918 |
| Veteran-owned firms, 2012 | 2,521,682 |
| Nonveteran-owned firms, 2012 | 24,070,685 |

## GEOGRAPHY

### Geography

| | |
|---|---|
| Population per square mile, 2010 | 87.4 |
| Land area in square miles, 2010 | 3,531,905.43 |
| FIPS Code | 00 |

About datasets used in this table

**Value Notes**

⚠ Estimates are not comparable to other geographic levels due to methodology differences that may exist between different data sources.

Some estimates presented here come from sample data, and thus have sampling errors that may render some apparent differences between geographies statistically indistinguishable. Click the Quick Info ⓘ icon to the left of each row in TABLE view to learn about sampling error.

The vintage year (e.g., V2018) refers to the final year of the series (2010 thru 2018). *Different vintage years of estimates are not comparable.*

**Fact Notes**
- **(a)**  Includes persons reporting only one race
- **(b)**  Hispanics may be of any race, so also are included in applicable race categories
- **(c)**  Economic Census - Puerto Rico data are not comparable to U.S. Economic Census data

**Value Flags**
- **-**   Either no or too few sample observations were available to compute an estimate, or a ratio of medians cannot be calculated because one or both of the median estimates falls in the lowest or upper interval of an open ended distribution.
- **D**   Suppressed to avoid disclosure of confidential information
- **F**   Fewer than 25 firms
- **FN**  Footnote on this item in place of data
- **NA**  Not available
- **S**   Suppressed; does not meet publication standards
- **X**   Not applicable
- **Z**   Value greater than zero but less than half unit of measure shown

QuickFacts data are derived from: Population Estimates, American Community Survey, Census of Population and Housing, Current Population Survey, Small Area Health Insurance Estimates, Small Area Income and Poverty Estimates, State and County Housing Unit Estimates, County Business Patterns, Nonemployer Statistics, Economic Census, Survey of Business Owners, Building Permits.

| ABOUT US | FIND DATA | BUSINESS & INDUSTRY | PEOPLE & HOUSEHOLDS | SPECIAL TOPICS | NEWSROOM |
|---|---|---|---|---|---|
| Are You in a Survey? | QuickFacts | Help With Your Forms | 2020 Census | Advisors, Centers and Research Programs | News Releases |
| FAQs | American FactFinder | Economic Indicators | 2010 Census | Statistics in Schools | Release Schedule |
| Director's Corner | 2010 Census | Economic Census | American Community Survey | Tribal Resources (AIAN) | Facts for Features |
| Regional Offices | Economic Census | E-Stats | Income | Emergency Preparedness | Stats for Stories |
| History | Interactive Maps | International Trade | Poverty | Statistical Abstract | Blogs |
| Research | Training & Workshops | Export Codes | Population Estimates | Special Census Program | |
| Scientific Integrity | Data Tools | NAICS | Population Projections | Data Linkage Infrastructure | |
| Census Careers | Developers | Governments | Health Insurance | Fraudulent Activity & Scams | |
| Diversity @ Census | Catalogs | Longitudinal Employer-Household Dynamics (LEHD) | Housing | USA.gov | |
| Business Opportunities | Publications | Survey of Business Owners | International | | |
| Congressional and Intergovernmental | | | Genealogy | | |
| Contact Us | | | | | |

**CONNECT WITH US**

Accessibility | Information Quality | FOIA | Data Protection and Privacy Policy | U.S. Department of Commerce

# Attachment B



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# FTC Encourages Consumers to Opt for Free Credit Monitoring, as part of Equifax Settlement

## Share This Page

FOR YOUR INFORMATION

July 31, 2019

**TAGS:** consumer refunds | Bureau of Consumer Protection | Consumer Protection | Privacy and Security | Consumer Privacy | Credit Reporting | Data Security

The Federal Trade Commission is urging consumers affected by Equifax's 2017 data breach to consider signing up for the free credit monitoring offered as part of the settlement. A new FTC blog post notes that because of high interest in the alternative cash payment under the settlement, consumers who choose this option might end up getting far less than $125.

The settlement with Equifax announced on July 22 included at least $300 million and potentially up to $425 million to help consumers recover from the breach. Among the benefits available to consumers affected by the breach is free credit monitoring services or, alternatively, a cash payment if they already have credit monitoring.

The FTC blog post notes that the public response to the settlement has been overwhelming. Because the amount of money set aside for the cash payment option is capped at $31 million, consumers who select that option may not receive the $125 they had expected.

For those who have not submitted a claim, the FTC is recommending that affected consumers consider choosing the free credit monitoring service, which is worth hundreds of dollars and comes with identity theft insurance and restoration services. For consumers who have already chosen the cash option, the settlement administrator will e-mail those consumers and provide them with the opportunity to either (1) submit additional information, or (2) switch to the free credit monitoring service. Consumers can also contact the settlement administrator directly.

Consumers can find out more about the settlement at ftc.gov/Equifax.

The Federal Trade Commission works to promote competition, and protect and educate consumers. You can learn more about consumer topics and file a consumer complaint online or by calling 1-877-FTC-HELP (382-4357). Like the FTC on Facebook, follow us on Twitter, read our blogs, and subscribe to press releases for the latest FTC news and resources.

**PRESS RELEASE REFERENCE:**
Equifax to Pay $575 Million as Part of Settlement with FTC, CFPB, and States Related to 2017 Data Breach

# Contact Information

MEDIA CONTACT:
Juliana Gruenwald Henderson
*Office of Public Affairs*
202-326-2924



ftc.gov

# Attachment C

Attachment C

 Social Security

## Actuarial Life Table

A period life table is based on the mortality experience of a population during a relatively short period of time. Here we present the 2016 period life table for the Social Security area population. For this table, the period life expectancy at a given age is the average remaining number of years expected prior to death for a person at that exact age, born on January 1, using the mortality rates for 2016 over the course of his or her remaining life.

This life table is available for certain prior years.

Select a year for period life table:  2015  ⌄   Go

### Period Life Table, 2016

| Exact age | Male | | | Female | | |
|---|---|---|---|---|---|---|
| | Death probability [a] | Number of lives [b] | Life expectancy | Death probability [a] | Number of lives [b] | Life expectancy |
| 0 | 0.006364 | 100,000 | 76.04 | 0.005331 | 100,000 | 80.99 |
| 1 | 0.000432 | 99,364 | 75.52 | 0.000359 | 99,467 | 80.43 |
| 2 | 0.000284 | 99,321 | 74.55 | 0.000247 | 99,431 | 79.46 |
| 3 | 0.000234 | 99,292 | 73.58 | 0.000169 | 99,407 | 78.48 |
| 4 | 0.000170 | 99,269 | 72.59 | 0.000155 | 99,390 | 77.49 |
| 5 | 0.000157 | 99,252 | 71.60 | 0.000135 | 99,375 | 76.50 |
| 6 | 0.000147 | 99,237 | 70.62 | 0.000120 | 99,361 | 75.51 |
| 7 | 0.000136 | 99,222 | 69.63 | 0.000109 | 99,349 | 74.52 |
| 8 | 0.000120 | 99,209 | 68.64 | 0.000100 | 99,338 | 73.53 |
| 9 | 0.000101 | 99,197 | 67.64 | 0.000094 | 99,328 | 72.54 |
| 10 | 0.000088 | 99,187 | 66.65 | 0.000093 | 99,319 | 71.54 |
| 11 | 0.000093 | 99,178 | 65.66 | 0.000098 | 99,310 | 70.55 |
| 12 | 0.000130 | 99,169 | 64.66 | 0.000113 | 99,300 | 69.56 |
| 13 | 0.000209 | 99,156 | 63.67 | 0.000140 | 99,289 | 68.56 |
| 14 | 0.000320 | 99,135 | 62.68 | 0.000176 | 99,275 | 67.57 |
| 15 | 0.000441 | 99,103 | 61.70 | 0.000216 | 99,258 | 66.58 |
| 16 | 0.000564 | 99,060 | 60.73 | 0.000259 | 99,236 | 65.60 |

| Exact age | Male | | | Female | | |
|---|---|---|---|---|---|---|
| | Death probability [a] | Number of lives [b] | Life expectancy | Death probability [a] | Number of lives [b] | Life expectancy |
| 27 | 0.001669 | 97,738 | 50.47 | 0.000666 | 98,740 | 54.90 |
| 28 | 0.001708 | 97,575 | 49.55 | 0.000707 | 98,674 | 53.93 |
| 29 | 0.001752 | 97,408 | 48.63 | 0.000753 | 98,605 | 52.97 |
| 30 | 0.001794 | 97,238 | 47.72 | 0.000803 | 98,530 | 52.01 |
| 31 | 0.001835 | 97,063 | 46.80 | 0.000853 | 98,451 | 51.05 |
| 32 | 0.001880 | 96,885 | 45.89 | 0.000905 | 98,367 | 50.09 |
| 33 | 0.001930 | 96,703 | 44.97 | 0.000956 | 98,278 | 49.14 |
| 34 | 0.001986 | 96,516 | 44.06 | 0.001009 | 98,184 | 48.19 |
| 35 | 0.002052 | 96,325 | 43.15 | 0.001069 | 98,085 | 47.23 |
| 36 | 0.002125 | 96,127 | 42.23 | 0.001134 | 97,980 | 46.28 |
| 37 | 0.002196 | 95,923 | 41.32 | 0.001199 | 97,869 | 45.34 |
| 38 | 0.002264 | 95,712 | 40.41 | 0.001263 | 97,752 | 44.39 |
| 39 | 0.002334 | 95,495 | 39.50 | 0.001329 | 97,628 | 43.45 |
| 40 | 0.002420 | 95,272 | 38.59 | 0.001403 | 97,499 | 42.50 |
| 41 | 0.002530 | 95,042 | 37.69 | 0.001491 | 97,362 | 41.56 |
| 42 | 0.002663 | 94,801 | 36.78 | 0.001597 | 97,217 | 40.62 |
| 43 | 0.002823 | 94,549 | 35.88 | 0.001724 | 97,061 | 39.69 |
| 44 | 0.003013 | 94,282 | 34.98 | 0.001871 | 96,894 | 38.76 |
| 45 | 0.003229 | 93,998 | 34.08 | 0.002033 | 96,713 | 37.83 |
| 46 | 0.003479 | 93,694 | 33.19 | 0.002212 | 96,516 | 36.90 |
| 47 | 0.003780 | 93,369 | 32.30 | 0.002417 | 96,303 | 35.98 |
| 48 | 0.004140 | 93,016 | 31.43 | 0.002651 | 96,070 | 35.07 |
| 49 | 0.004553 | 92,631 | 30.55 | 0.002911 | 95,815 | 34.16 |
| 50 | 0.005007 | 92,209 | 29.69 | 0.003193 | 95,536 | 33.26 |
| 51 | 0.005493 | 91,747 | 28.84 | 0.003492 | 95,231 | 32.36 |
| 52 | 0.006016 | 91,243 | 27.99 | 0.003803 | 94,899 | 31.48 |
| 53 | 0.006575 | 90,694 | 27.16 | 0.004126 | 94,538 | 30.59 |
| 54 | 0.007170 | 90,098 | 26.34 | 0.004462 | 94,148 | 29.72 |
| 55 | 0.007805 | 89,452 | 25.52 | 0.004829 | 93,728 | 28.85 |
| 56 | 0.008477 | 88,754 | 24.72 | 0.005220 | 93,275 | 27.99 |
| 57 | 0.009181 | 88,001 | 23.93 | 0.005612 | 92,788 | 27.13 |
| 58 | 0.009916 | 87,193 | 23.15 | 0.006000 | 92,267 | 26.28 |

| Exact age | Male | | | Female | | |
|---|---|---|---|---|---|---|
| | Death probability [a] | Number of lives [b] | Life expectancy | Death probability [a] | Number of lives [b] | Life expectancy |
| 59 | 0.010683 | 86,329 | 22.37 | 0.006397 | 91,714 | 25.44 |
| 60 | 0.011533 | 85,407 | 21.61 | 0.006848 | 91,127 | 24.60 |
| 61 | 0.012434 | 84,422 | 20.85 | 0.007358 | 90,503 | 23.76 |
| 62 | 0.013302 | 83,372 | 20.11 | 0.007893 | 89,837 | 22.94 |
| 63 | 0.014109 | 82,263 | 19.37 | 0.008453 | 89,128 | 22.12 |
| 64 | 0.014913 | 81,102 | 18.65 | 0.009063 | 88,375 | 21.30 |
| 65 | 0.015808 | 79,893 | 17.92 | 0.009761 | 87,574 | 20.49 |
| 66 | 0.016868 | 78,630 | 17.20 | 0.010581 | 86,719 | 19.69 |
| 67 | 0.018101 | 77,303 | 16.49 | 0.011535 | 85,801 | 18.89 |
| 68 | 0.019544 | 75,904 | 15.78 | 0.012646 | 84,811 | 18.11 |
| 69 | 0.021206 | 74,421 | 15.09 | 0.013919 | 83,739 | 17.33 |
| 70 | 0.023122 | 72,843 | 14.40 | 0.015413 | 82,573 | 16.57 |
| 71 | 0.025265 | 71,158 | 13.73 | 0.017089 | 81,301 | 15.82 |
| 72 | 0.027585 | 69,360 | 13.07 | 0.018861 | 79,911 | 15.09 |
| 73 | 0.030070 | 67,447 | 12.43 | 0.020705 | 78,404 | 14.37 |
| 74 | 0.032794 | 65,419 | 11.80 | 0.022703 | 76,781 | 13.66 |
| 75 | 0.035963 | 63,274 | 11.18 | 0.025035 | 75,038 | 12.97 |
| 76 | 0.039588 | 60,998 | 10.58 | 0.027766 | 73,159 | 12.29 |
| 77 | 0.043511 | 58,583 | 10.00 | 0.030822 | 71,128 | 11.62 |
| 78 | 0.047720 | 56,034 | 9.43 | 0.034227 | 68,936 | 10.98 |
| 79 | 0.052358 | 53,360 | 8.88 | 0.038062 | 66,576 | 10.35 |
| 80 | 0.057712 | 50,567 | 8.34 | 0.042539 | 64,042 | 9.74 |
| 81 | 0.063886 | 47,648 | 7.82 | 0.047663 | 61,318 | 9.15 |
| 82 | 0.070782 | 44,604 | 7.32 | 0.053278 | 58,395 | 8.58 |
| 83 | 0.078442 | 41,447 | 6.84 | 0.059378 | 55,284 | 8.04 |
| 84 | 0.086997 | 38,196 | 6.38 | 0.066132 | 52,001 | 7.51 |
| 85 | 0.096603 | 34,873 | 5.94 | 0.073763 | 48,562 | 7.01 |
| 86 | 0.107390 | 31,504 | 5.52 | 0.082465 | 44,980 | 6.53 |
| 87 | 0.119456 | 28,121 | 5.12 | 0.092370 | 41,271 | 6.07 |
| 88 | 0.132853 | 24,762 | 4.75 | 0.103546 | 37,459 | 5.64 |
| 89 | 0.147599 | 21,472 | 4.40 | 0.115997 | 33,580 | 5.23 |
| 90 | 0.163689 | 18,303 | 4.08 | 0.129706 | 29,685 | 4.85 |

| Exact age | Male | | | Female | | |
|---|---|---|---|---|---|---|
| | Death probability [a] | Number of lives [b] | Life expectancy | Death probability [a] | Number of lives [b] | Life expectancy |
| 91 | 0.181104 | 15,307 | 3.78 | 0.144636 | 25,835 | 4.50 |
| 92 | 0.199810 | 12,535 | 3.50 | 0.160741 | 22,098 | 4.18 |
| 93 | 0.219765 | 10,030 | 3.25 | 0.177971 | 18,546 | 3.88 |
| 94 | 0.240913 | 7,826 | 3.03 | 0.196270 | 15,245 | 3.61 |
| 95 | 0.261868 | 5,941 | 2.83 | 0.214769 | 12,253 | 3.37 |
| 96 | 0.282225 | 4,385 | 2.66 | 0.233174 | 9,622 | 3.16 |
| 97 | 0.301555 | 3,147 | 2.51 | 0.251158 | 7,378 | 2.96 |
| 98 | 0.319421 | 2,198 | 2.37 | 0.268378 | 5,525 | 2.79 |
| 99 | 0.335392 | 1,496 | 2.25 | 0.284481 | 4,042 | 2.63 |
| 100 | 0.352162 | 994 | 2.13 | 0.301550 | 2,892 | 2.48 |
| 101 | 0.369770 | 644 | 2.02 | 0.319643 | 2,020 | 2.33 |
| 102 | 0.388259 | 406 | 1.91 | 0.338821 | 1,374 | 2.19 |
| 103 | 0.407672 | 248 | 1.81 | 0.359151 | 909 | 2.06 |
| 104 | 0.428055 | 147 | 1.71 | 0.380700 | 582 | 1.93 |
| 105 | 0.449458 | 84 | 1.61 | 0.403542 | 361 | 1.81 |
| 106 | 0.471931 | 46 | 1.52 | 0.427754 | 215 | 1.69 |
| 107 | 0.495527 | 24 | 1.43 | 0.453420 | 123 | 1.58 |
| 108 | 0.520304 | 12 | 1.35 | 0.480625 | 67 | 1.47 |
| 109 | 0.546319 | 6 | 1.27 | 0.509462 | 35 | 1.37 |
| 110 | 0.573635 | 3 | 1.19 | 0.540030 | 17 | 1.27 |
| 111 | 0.602317 | 1 | 1.11 | 0.572432 | 8 | 1.18 |
| 112 | 0.632432 | 0 | 1.04 | 0.606778 | 3 | 1.09 |
| 113 | 0.664054 | 0 | 0.97 | 0.643184 | 1 | 1.01 |
| 114 | 0.697257 | 0 | 0.91 | 0.681775 | 0 | 0.93 |
| 115 | 0.732119 | 0 | 0.84 | 0.722682 | 0 | 0.86 |
| 116 | 0.768725 | 0 | 0.78 | 0.766043 | 0 | 0.79 |
| 117 | 0.807162 | 0 | 0.73 | 0.807162 | 0 | 0.73 |
| 118 | 0.847520 | 0 | 0.67 | 0.847520 | 0 | 0.67 |
| 119 | 0.889896 | 0 | 0.62 | 0.889896 | 0 | 0.62 |

| Exact age | Male | | | Female | | |
|---|---|---|---|---|---|---|
| | Death probability [a] | Number of lives [b] | Life expectancy | Death probability [a] | Number of lives [b] | Life expectancy |
| [a] Probability of dying within one year. | | | | | | |
| [b] Number of survivors out of 100,000 born alive. | | | | | | |
| Note: The period life expectancy at a given age for 2016 represents the average number of years of life remaining if a group of persons at that age were to experience the mortality rates for 2016 over the course of their remaining life. | | | | | | |

The Social Security area population is comprised of (1) residents of the 50 States and the District of Columbia (adjusted for net census undercount); (2) civilian residents of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands; (3) Federal civilian employees and persons in the U.S. Armed Forces abroad and their dependents; (4) non-citizens living abroad who are insured for Social Security benefits; and (5) all other U.S. citizens abroad.

# Attachment D

Attachment O

# Find the right Plan for You

Your personal information is everywhere. So are fraudsters. Protect yourself now with our powerful and comprehensive identity protection.

Individual ● Family

## Essential

**$69.99** /yr

Billed Annually

**Comprehensive Identity Protection for Individuals**

- ⊘ AI-Powered Platform
- ⊘ Risk Managment Reporting
- ⊘ Dark Web Monitoring
- ⊘ Safe Browsing Tools
- ⊘ Anti-Phishing Mobile App

Get Protected Now

## RECOMMENDED

## Complete

**$149.99** /yr

Billed Annually

**Powerful Identity Protection and Credit Monitoring**

- ⊘ AI-Powered Platform
- ⊘ All the Features of Plus, plus...
- ⊘ Credit Score* and Reporting
- ⊘ Social Insight Report
- ⊘ Bank Account Takeovers

Get Protected Now

## Plus

**$99.99** /yr

Billed Annually

**Advanced Identity Protection and Credit Monitoring**

- ⊘ AI-Powered Platform
- ⊘ All the Features of Essential, plus...
- ⊘ Monthly Credit Score
- ⊘ Address Monitoring
- ⊘ 3-Bureau Credit Monitoring

Get Protected Now

Visited October 29, 2019

https://identitydefense.com/

# Attachment E

Attachment 3

Step 1

# Who are you protecting?



**One adult**



**One adult**
(and up to 10 children)



**Two adults**
(and up to 10 children)

Step 2

# Choose your plan level

Case 1:17-md-02800-TWT   Document 899-18   Filed 12/05/19   Page 41 of 64

| | | |
|---|---|---|
| Bank Account & Credit Card Takeovers | | ✓ |
| Identity Validation Alerts | | ✓ |
| Payday Loan Monitoring | | ✓ |
| Court Records & Bookings | | ✓ |
| Sex Offender Registry | | ✓ |
| File-Sharing Network Monitoring | | ✓ |
| Social Network Monitoring | | ✓ |

## Experian CreditLock

| | | |
|---|---|---|
| Lock and Unlock Your Experian Credit File | ✓ | ✓ |
| Real-time Alerts on Attempted Credit Inquiries | ✓ | ✓ |

## Credit Monitoring & Alerts

| Credit Bureaus Monitored ⊙ | Experian | Experian, Equifax®, TransUnion® |
|---|---|---|
| New Credit Inquiries | ✓ | ✓ |
| New Accounts | ✓ | ✓ |
| Large Account Balance Changes | ✓ | ✓ |
| Credit Utilization | ✓ | ✓ |

| | | |
|---|---|---|
| Positive Activity | ✓ | ✓ |
| Dormant Accounts | ✓ | ✓ |
| FICO® Score* Alerts | ✓ | ✓ |

## Credit Scores

| | | |
|---|---|---|
| 3-Bureau FICO® Scores* | | Quarterly |
| FICO® Scores* based on Experian data | Daily | Daily |
| Score Tracking | ✓ | ✓ |
| FICO® Score* Simulator | ✓ | ✓ |
| Additional FICO® Scores*<br>(Auto, Home & Bankcard) | ✓ | ✓ |

‡Monitoring with Experian begins within 48 hours of enrollment in your trial. Monitoring with Equifax® and TransUnion® takes approximately 4 days to begin, though in some cases cannot be initiated during your trial period. You may cancel your trial membership in IdentityWorks℠ any time within 30 days of enrollment without charge.

※Identity Theft Insurance underwritten by insurance company subsidiaries or affiliates of American International Group, Inc. (AIG). The description herein is a summary and intended for informational purposes only and does not include all terms, conditions and exclusions of the policies described. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions. Review the Summary of Benefits for Experian IdentityWorks℠ Premium or Experian IdentityWorks℠ Plus.

*Credit score is calculated based on FICO® Score 8 model, unless otherwise noted. In addition to the FICO® Score 8, we may offer and provide other base or industry-specific FICO® Scores (such as FICO® Auto Scores and FICO® Bankcard Scores). Your lender or insurer may use a different FICO® Score than FICO® Score 8 or such other base or industry-specific FICO® Score (if available), or another type of credit score altogether. Learn more.

© 2019 Experian Information Solutions, Inc. All rights reserved.

Experian and the Experian marks used herein are trademarks or registered trademarks of Experian Information Solutions, Inc. Other product and company names mentioned herein are the property of their respective owners.

Mandi J. Hanneke
26 Foxglove Ln.
Amherst, MA 01002

NOV 0 7 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111 - 9418

September 17, 2019

United States District Court

Northern District of Georgia

Richard Russell Federal Bldg.

2211 US Courthouse

75 Ted Turner Dr. SW

Atlanta, GA 30303-3309

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 25 2019

JAMES N. HATTEN, Clerk
Deputy Clerk
By:

Dear Sir/Ms:

This letter is sent to expressed my continued outrage that a company as corrupt as Equifax can continue to get away with misconduct with no accountability. For more than five years I have attempted, without success, to get Equifax to clean up my credit history. Because Equifax and the other credit bureaus get paid regardless of whether or not they provide accurate information, they continue to ignore consumers.

Now it has been revealed that Equifax did not protect my private data and that of more than 100 MILLION US citizens. But when the FTC came up with a settlement that would pay the claimants a small compensation, Equifax has now managed to dodge any material responsibility.

I ask the court to hold Equifax accountable and at least enforce the settlement the US government negotiated. All three credit bureaus should be further investigated. What recourse does the public have if these companies do not have any accountability?

Most Sincerely,

Lawrence M. Jacobson

3640 SW Baird St. #3

Portland, OR 97219

206-232-6300

Theodson
3640 SW Baird St. #3
Portland OR 97219

US District Court
Northern District of Georgia
Richard Russell Bldg
2211 US Courthouse
75 Ted Turner Dr SW

RE:
— Equifax

PORTLAND OR 972

17 SEP 2019 PM 1 L

CLEARED
SEP 25 2019
U.S. Mar.

November 4, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn:  Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA  98111-9418

Received

NOV 0 8 2019

by JNDLA

Dear Sirs,

I object to the settlement in the proceeding: **Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT.**

Equifax clearly identified my social security number and credit file was included in the Security Breach.  I don't believe the court should deny the settlement as it is.  I have several credit monitoring agencies, including McAfee ID Monitoring, Kroll ID Monitoring, AllClear ID, and Protect My ID, all of which monitors my credit, and the release of my personally identifiable information, including credit card numbers, social security number, email addresses, bank information, address, and other credit based information.  To add another credit monitoring service is neither useful, nor an equitable settlement.

Further, I have placed a credit freeze on my file, and for each need for a credit review (e.g., buying a car, establishing a new line of credit, new credit card, insurance, purchase of a house, etc.), I've had to unfreeze my credit across all three agencies, at the cost of at least $5 per credit release, which has added up since the Equifax Customer Data Security Breach, and will continue to accrue in the future for each need to unfreeze my credit.   I strongly object to the settlement as proposed.

My name and contact information:

Leanna M. Namovic
4615 Lindell Blvd., Apt. 306
St. Louis, MO  63108

I have never objected to any class action settlements in my life.  I will not appear at the fairness Hearing shortly scheduled.

Sincerely,

Leanna Namovic

Leanna M. Namovic

Leanna Nramovic
4615 Lindell Blvd Apt 306
St. Louis, MO 63108

FT MYERS FL 339

04 NOV 2019 PM 1 L

Equifax Data Breach Class Action
Settlement Administration
ATTN: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle WA 98111-9418
98111-941838

Received
NOV 0 8 2019
by JNDLA

Leigh K. Schroeder
3016 SW 105th St
Seattle, WA  98146

September 23, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received

SEP 25 2019

by JNDLA

Re: *Equifax Inc. Customer Data Security Breach Litigation*
Case No. 1:17-md-2800-TWT

I am a member of the Settlement Class in the above referenced case because my personal information was impacted by the Equifax Data Breach. I am writing to object to the proposed Settlement in the matter and ask the Court to find that the terms of the Settlement Agreement are unfair, inadequate and unreasonable. I have never before objected to a class action settlement and I do not intend to appear at the Fairness Hearing, at it is 2,600 miles away from where I live.

The current Settlement does not provide adequate financial compensation for all affected consumers. Instead it structured in a way that intentionally creates hurdles for consumers to make a claim, cynically hoping that we will find the effort is not worth the outcome and give up. We were told that we could make a claim for $125. Then we were told the more people who make a claim, the less each claimant would get; nowhere near the amount originally promised because the Settlement inexplicably does not set aside enough money to pay the promised amount.  Then we were told that we had to prove we have credit monitoring to make a claim for the cash. We are now suddenly obligated to accept the worthless credit monitoring being offered instead of the cash we were promised. Equifax' behavior in this breach was shameful but this claim process has treated the consumer like guilty, complicit parties instead of victims of criminal corporate behavior.

This Settlement is deceitful. It is obviously offered as a press release for Equifax and not a sincere attempt to make restitution. If this Settlement is approved, we can expect Equifax to continue as they were and treat the expense of settling claims as a cost of doing business rather than a reason to change how they operate. Privacy does matter, consumers do matter, and any Settlement in this case should reflect that.

Thank you for your consideration.

Sincerely,

Leigh K. Schroeder

STOKES LAWRENCE

1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101-2393

Address Service Requested

98533-000
99000-035

Hasler
09/23/2019
US POSTAGE $000.50⁰
FIRST-CLASS MAIL
ZIP 9810
011D11651729

SEATTLE
WA 980
23 SEP '19
PM 5 1

SEP 25 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

57 Riverview Rd
Irvington, NY 10533
September 23rd, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection - c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418
Re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Dear Sirs:

Some time ago I was notified that I am one of the people affected by the Equifax Data Breach and am a member of the settlement class. Shortly after the settlement was announced I submitted a claim for Alternative Reimbursement Compensation as I already had Credit Monitoring in place. Later and as directed, I updated my claim with the names of the providers of that monitoring – Intuit/Experian IDnotify and credit karma.

I object to the settlement because the funds Equifax has committed to restitution are laughably inadequate. And because the time, worry, and unceasing vigilance required of me because of Equifax's negligence will never be repaid if the settlement is approved as is.

Almost 150 million people in the US were affected by the breach. The settlement as it currently stands caps Alternative Reimbursement at $31 million and compensation for time spent dealing with the aftermath of the breach at an additional $31 million. As a result, the headline figure of $125/person is made meaningless by the scarcity of funds committed.

If a settlement is reached it should remove those caps and require Equifax to pay into the Consumer Restitution Fund as needed. With over $3 billion in equity and over $500 million in annual income Equifax is quite capable of providing adequate restitution to its victims.

If not, the case should go to trial as Equifax has clearly been a bad actor. In the year prior to the data breach Equifax was made aware of the vulnerabilities of its systems including the unbelievable blunder of storing and transmitting the personal and financial data of most Americans in plain text.

In March 2017, Equifax became aware that a major breach of their computer systems had occurred. But the consumer data remained out in the open. In May and June most of the data was copied – most likely by the same people who looked in March. But it was not until September that the public was made aware of the breach.

During those months – a time when the victims of the breach could have secured their finances – Equifax did nothing to protect those victims. Instead, Equifax executives dumped their shares in the company three days after the breach. And though Equifax denied any connection between those unscheduled sales and the data breach, Jun Ying (the then CIO of Equifax) later plead guilty to insider trading and was sent to prison.

I am not represented by a lawyer, have never objected to a class action settlement, and will not be attending the Fairness Hearing. That said, I find the conduct of Equifax to be so egregious and the compensation provided to victims of the breach by the proposed settlement so inadequate that I feel I must write this letter.

Respectfully,

Leo J McLaughlin III

Received
SEP 26 2019
by JNDLA



Mr. Leo McLaughlin
57 Riverview Rd.
Irvington, NY 10533-1333

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection -c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 2 6 2019

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 24 2019

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

19 September 2019

To Whom It May Concern:

I was one of the 147 million people whose information was compromised by the Equifax data breach in 2017.

On the original claim form it clearly states:

### *"You may submit a claim for one or more of these benefits*

**Credit monitoring or Cash Payment of up to $125:** Use the claim form to request free credit monitoring services. Or, if you already have credit monitoring services, and will have them for at least six months after filing your claim, you can request a cash payment of up to $125."

In an email from Equifax received on 7 September 2019 it clearly states:

> According to our records, you filed a claim for alternative compensation of up to $125 in connection with the Equifax data breach settlement and certified on the claim form that you had some form of credit monitoring or protection in place and will continue to have the credit monitoring in place for a minimum of six months from the date of your claim filing.
>
> **You must either verify or amend your claim by October 15, 2019.**
>
> *If you do not, your claim for alternative compensation will be denied.*
> • To **verify** your claim for alternative compensation, you must provide the name of your credit monitoring service that you had in place when you filed your claim.

The request to provide the name of my credit monitoring service was an additional requirement not mentioned in the original claim form. Given the fact that Equifax has earmarked only $31 million for claims, the 147 million claimants will each receive 21 cents.

This settlement is not only misleading; it is a "bait and switch" tactic to reduce the number of claimants for the cash payment. Equifax should be prosecuted for attempting to defraud the public.

Yours sincerely,

Lewis Ware
3328 Montezuma Road
Montgomery, AL 36106

Dr. L. B. Ware
3328 Montezuma Road
Montgomery, AL 36106

Paul Tarczy & Linda Turnquist
2531 Overhill Lane
Davis, CA 95616

Received

SEP 24 2019

by JNDLA

September 19, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

re: *Equifax Inc. Customer Data Security Breach Litigation*,
    Case No. 1:17-md-2800-TWT

To Whom It May Concern,

We are involuntary customers of Equifax.  We were notified via US mail that our data may have been unwittingly mishandled.  In looking up our names in Equifax's database, it is clear that our very privacy has been breached and we are seemingly helpless to do anything about it.  We now read that the settlement of the case will allow us pennies in compensation.

This letter is the first time we are getting involved in objecting to any event in the US legal system.  Neither of us has ever questioned court settlements before and are thus hopeful that this letter will have an impact on the proposed settlement listed above.

It is clear that Equifax' setting aside $31 million for compensation is woefully inadequate.  Even if we were to receive the full $125 from the settlement, which is now extremely unlikely, it would still be profoundly short of what we consider our valuable privacy.  We understand that the court cannot make changes to the settlement but it des have the power to reject it.  We urge the court to reject the proposed settlement otherwise those most affected by the circumstances will once again be left out in the cold.

 We will not be present at the fairness hearing and have not involved an attorney to represent us.  Our opinion is summarized entirely in this letter.  We hope it will have an impact.

Sincerely,

Paul Tarczy & Linda Turnquist



SACRAMENTO CA 950
20 SEP 2019 PM 4 L

Tarczy - Turnquist
2531 Overhill Ln
Davis, CA 95616

**Equifax Data Breach**
**Class Action Settlement Administrator**
**Attn: Objection**
**c/o JNC Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

SEP 2 4 2019



**William V. and Lisa H. Rogers**
1930 Cappelletti Court
Mountain View CA 94043
650-804-5884

Sept. 20, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Re: In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT
Claim #PZ92T-S75UA and Claim #PFA6C-K59U8

Dear Administrator,

We are two of the 147 million people affected by Equifax's negligence. As a result we placed
freezes on all our credit reports, incurring a variety of fees. We had to unfreeze our reports in
order to purchase a car, then redo the freezes. This took a lot of time.

We were originally pleased to hear that the Equifax settlement included compensation for the
fees and time we have wasted through no fault of our own. We properly filed our claims and
looked forward to our reimbursement. We even "validated" our claims in response to the recent
email, even though this was obviously an attempt by Equifax to put up unnecessary obstacles and
reduce the number of claims.

Now we read in the news that Equifax never set aside enough money to pay the claims. This is
bad faith, pure and simple. How can the law permit a company to proceed with a settlement
when they clearly had no intention of meeting their obligations under it? What is the point of
government prosecution and lawsuits if the penalty for violating the law is peanuts?

We are disgusted by these bait-and-switch tactics. We have never objected to a class action
settlement before, nor do we have legal representation or expect to appear in court in person. We
do however ask you to reject this patently unfair settlement. Equifax needs to honor its
commitment and pay all claims in full.

Sincerely,

Rogers
1930 Cappelletti Ct
Mountain View CA 94043

SEP 2 4 2019

Aft. Objections

98111-94118

Equifax Data Breach Class Action Settlement Administrator
c/o JND Legal Administration
PO Box 91318
Seattle WA 98111 - 9418

SAN FRANCISCO CA 940

21 SEP 2019 PM 3 L

HENRY DAVID THOREAU FOREVER
Thoreau



September 25, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Dear Administrator

The purpose of this letter is to voice my objection to the settlement Equifax
has offered to their clients whose personal data was put at risk due to the security
breach in 2017. In May of that year the firm that prepares my yearly tax returns
experienced a data security breach affecting all of their clients. As compensation they
offered, and I accepted, a free year of credit monitoring by Equifax. The Equifax data
breach occurred two months later, thus doubling the chances of my personal data being
exposed. The lawsuit Equifax settled with the F.T.C. was for up to $700 million. If one
had credit monitoring in place at the time of the breach the compensation could have
been up to $125. In reality only $31 million was earmarked for claims, as the F.T.C.
admitted a couple of days later, and they encouraged victims to instead take the free
credit monitoring offer (twice bit thrice shy; I declined the offer). So if everyone
affected, around 147 million people, filed a claim the amount each would receive would
be around 21¢, less than the cost of postage to deliver it.


The opinion of many financial experts is that Equifax is counting on victims to either feel
that the email sent out with instructions on how to file a claim was suspect, that they
are unwilling to take the time to file the claim or may feel too intimidated by the
process. I am none of the above. I have never been involved in any prior class action
settlements, and I do not intend to appear at the Fairness Hearing either in person or
through a lawyer and am not represented by one. I filed my claim, with proof that I had
credit monitoring in place at the time of the breach. This is a slap in the face to everyone
who placed their trust, and personal data, in the hands of Equifax. With this letter I am
voicing my objection to, and feeling deceived by, the the terms of the settlement.
Thank you for your attention to this matter.

*Lisa D. Williams*

Lisa D Williams
5320 NE Lucky Gap St
Newport, OR 97365
(541) 264-8228



John Fitzgerald Kennedy 1917-1963

forever usa

Received
OCT 01 2019
by JNDLA

PORTLAND OR 973
30 SEP 2019 PM 2 L

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Admininistration
P.O. Box 91318
Seattle, WA  98111-9418

98111-941818

Lisa Williams
5320 NE Lucky Gap St
Newport OR 97365-1220

10/15/2019

Lori M Capron
2414 West Olive Way
Chandler, Arizona 85248

Received
NOV 0 4 2019
by JNDLA

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT, or similar identifying words such as "Equifax Data Breach Lawsuit"

To whom it may concern;

My name is Lori Capron. I believe I am part of the settlement class because I am among the approximately 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach.

I object to the proposed settlement because I believe the proposed settlement is **not reasonable or prudent**. The current price of identity and fraud protection service averages ($20/month * 12) $240/yr. The amount of information stolen would allow someone to steal my identity at least 15 yrs. from now. I feel identity and fraud protection should be available, at Equifax expense, for no less than 25 years.

I have not been part of any other class action objections in the previous 5 years.

Sincerely;

Lori M Capron
2414 West Olive Way
Chandler, Arizona 85248

480-200-6013

Chandler AZ 852

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
C/o JND Legal Admin
P.O. Box 91318
Seattle, WA 98111-9418

PHOENIX
AZ 852
31 OCT '19
PM 5 L

98111-941818

FOREVER
846991031115739
USA