# Exhibit B - 18

**PAMELA W. BASCONI**
**1757 PATTERSON ROAD**
**VERSAILLES, KENTUCKY 40383-9619**

November 9, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

```
Received
NOV 1 2 2019
by JNDLA
```

Objection to Settlement In re: Equifax Inc. Customer Data Security Breach Litigation, Case No.
1:17-md-2800-T.

Dear Administrator,

I object to the settlement in the proceeding In re: Equifax Inc. Customer Data Security Breach
Litigation, Case No. 1:17-md-2800-T.

My full name and current address is
Pamela W. Basconi
1757 Patterson Rd.
Versailles, KY 40383

I never asked to do business with Equifax. Equifax collected financial and personal data about me
and charged others for information about me. Hackers accessed this information Equifax collected
about me and 147,000,000 others over a period of months. News reports indicated Equifax could
have prevented the hackers from accessing its system, including a July 30, 2019 article in the Wall
Street Journal, 'Equifax Pitches Focus on Security'. This article reported that "(h)ackers accessed
Equifax's systems through a flaw in the open-source web software Apache Struts that Equifax didn't
fix despite government warnings." Yet the settlement agreement allows Equifax to avoid any
admission of negligence or wrongdoing.

The magnitude of the Equifax Data Breach is astounding. It appears the hackers were able to access
my personal information, and the personal information of approximately 147,000,000 others, for a
period of several months. Yet the total settlement fund is only $380,500.00. Even assuming the full
settlement amount would be available without deductions for attorney's fees or administration costs
from the settlement fund, the total settlement payment is only $2.58 per settlement class member
based on an estimated settlement class of 147,000,000. This amount is ridiculously low for a data
breach of the magnitude of the Equifax Data Breach . A settlement that provides so little to so many
individuals who have been placed at great risk for credit fraud and identity theft for the rest of their
lives is not fair, reasonable or acceptable. The settlement terms are shockingly inadequate to

Equifax Data Breach Class Action Settlement Administrator
Page 2

compensate victims of the Equifax breach for the increased identity fraud risk they now have for the rest of their lives.

The proposed settlement is not fair, reasonable or adequate as it does not require Equifax to provide me with details of those items of my personal information that were accessed in 2017 by unknown and unauthorized persons or entities from the Equifax website and computers. Equifax should be required to provide me with detailed information about my personal information that was accessed or disclosed in the Equifax Data Breach, and Equifax should be required to provide this information to everyone whose information was disclosed. An acknowledgement on a website that "personal information was accessed", or a decision that I qualify to file a claim is not sufficient information to allow me to make an informed decision about whether the proposed settlement is fair, reasonable or adequate, or to decide whether to opt out of the class action. Some newspaper articles indicated that credit card information of approximately 200,000 of the 147,000,000 people was accessed in the Equifax Data Breach. The proposed Settlement Agreement makes no mention of a subset of persons that suffered a greater loss of personal information as a result of the Equifax Data breach. I am unaware of any way of finding out from Equifax whether my credit card information was accessed, or of obtaining any information on what items of my personal information were accessed. This information is needed so that I can make a more informed decision about what steps I should take in the future to best protect against fraud and identity theft.

The Consent Order provides that Settlement Class Members will be eligible to place and remove credit freezes on their Equifax Information Services, LLC ("EIS") credit files, free of charge, for 10 years without filing a claim. As a result of the Equifax Data Breach, I will need to maintain credit freezes on on my credit files at Equifax and all other credit reporting entities until I die, and Equifax should be required to provie free credit freezes and freeze removals for my lifetime. Requiring Equifax to provide free freezes and removal of freezes for 10 years is not fair, reasonable or acceptable. Equifax should also be required to pay a fair and reasonable amount to cover the actual or estimated costs of placing and removing credit freezes at the other credit reporting agencies which I need, and which are needed by all those affected by the Equifax Data Breach.

Fraudulent charges were made to the credit card account I most often use in June 2017. The credit card issuer cancelled the card after I reported the fraudulent charges and a new card was issued June 21, 2017. After fraudulent charges were again made using the new credit card number in early September of 2017, the credit card issuer again cancelled the card and another new card was issued. After learning of the Equifax Data Breach in September, 2017, I froze my credit reports at Equifax and 2 other credit reporting companies. I also set up alerts on all credit cards in my name requesting notice each time a charge was made without the card present and alerts for other types of charges in an effort to minimize the risk of fraudulent charges to my legitimate credit cards. Fraudulent charges were made again in November 2018 on the new credit card number issued in September 2017, and the credit card was cancelled for the third time and another new credit card was issued. The fraudulent credit card charges in 2018 were made while I was enrolled in the free

Equifax Data Breach Class Action Settlement Administrator
Page 3

credit monitoring service provided by Equifax and after I had frozen my credit reports at Equifax
and 2 other credit reporting companies.

I received a letter from FingerHut dated September 27, 2017 advising that my application for the
WebBank/Fingerhut Revolving Credit Account and the WebBank/Fingerhut FreshStart Closed End
Installment Loan was denied as I had frozen or blocked my credit file and they could not access my
credit file. Ironically, they suggested I contact Equifax to unblock my credit report. As this was a
fraudulent attempt to obtain credit and a loan in my name, I declined to unfreeze my account.

The free credit monitoring provided by Equifax in the past and for the time periods described in the
settlement does not prevent future fraudulent use of my personal information derived directly or
indirectly as a result of the Equifax Data Breach. Free credit monitoring only allows me to check
for fraudulent use of my personal information; it does not prevent fraudulent charges made using
information obtained without authorization in the Equifax Data Breach or prevent identity theft.
Credit monitoring is not an adequate safeguard against future fraudulent use of my personal
information accessed in the Equifax Data Breach. Freezing my credit reports is no guarantee agains
future fraud or identity theft resulting from information obtained in the Equifax Data Breach, but it
is more effective (and more expensive) than the credit monitoring. Many everyday functions,
including opening a new bank account, obtaining a new credit card, buying or financing a new car,
and getting a new cellphone, require a credit check that means I must unfreeze and then refreeze my
credit reports. The proposed settlement is not fair, reasonable or adequate as it does not adequately
provide for payment for losses or damages incurred after the initial claim period that result from
Equifax's Data Breach.

I think I am a member of the settlement class because, when I typed in my last name and the last 6
digits of my social security number on the website https://eligibility.equifaxbreachsettlement.com/
eligibility, I was prompted to file a claim. In September of 2017, when Equifax offered credit
monitoring to individuals whose information was accessed as a result if its data breach, I submitted
the information required on the Equifax website to find out if my information had been accessed
and was told on the Equifax website that " Based on the information provided, we believe that your
personal information may have been impacted by this incident."

I have not objected to any class action settlements in the previous five (5) years.

Because of the cost to travel to the Fairness Hearing, I do not intend to appear at the Fairness
Hearing, either in person or through a lawyer.

Sincerely,

Pamela W. Basconi

Pamela Basconi
1757 Patterson Rd.
Versailles, KY 40383

NOV 1 2 2019

LOUISVILLE KY 400
09 NOV 2019 PM 3 1

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

## patrick frank

1622 Crescent Place
Venice, Calif.
90291 USA
310.578.0918
323.283.7327 mobile
pfrank@grabados.org
http://grabados.org

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 25 2019

JAMES N. HATTEN, Clerk
By: Deputy Clerk

September 16, 2019

Clerk of the Court
U.S. District Court
Richard B. Russell Federal Building
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

*In re: Equifax Inc. Customer Data Security Breach Litigation*
Case No. 1:17-md-2800-TWT

Dear Mr. Hatten

I am part of the class action settlement named above, and I hereby object to this settlement. The monetary option was first promoted as up to $125, but this will likely by illusory because of the total limit on the payout by Equifax. Moreover, in order to receive this money, one must first prove that they have credit monitoring. This is unnecessarily burdensome. I fell that I have been "baited and switched." In addition, the company should have to pay more. Its breach of trust was so great that Equifax in my opinion deserves the maximum penalty that Georgia allows, which is the "death penalty." The company should be dissolved and its officers tried and jailed if convicted. Thank you for your attention.

Yours cordially

Patrick Frank

**Patrick Frank**
**1622 Crescent Place**
**Venice, CA 90291**

U.S. POSTAGE PAID
LOS ANGELES
$0.55
94195 E

CLERK of THE COURT
U.S. DISTRICT COURT
RUSSELL FEDERAL BLDG
2111 U.S. COURTHOUSE
75 TED TURNER DR S W
ATLANTA G A 30303-3309





SEP 25 2019
U.S. Mo.
Atlanta Ga.

Certified Mail Receipt #7015 0640 0007 1549 8188

# I object to the proposed settlement in the Equifax Data Breach Lawsuit.

## (In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT)

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Received
NOV 15 2019
by JNDLA

November 12, 2019

Dear Sir or Madam:

My name is Paula Kay Filseth.

I live at 230 Jensen Spring Road, Los Gatos, CA, 95033.

My mailing address is P.O. Box 246, Los Gatos, CA, 95031

I am one of the 147 million Americans whose private data was compromised in the 2017 Equifax Data Breach.  My husband's data was also compromised.

I verified that my data was exposed by using the Equifax breach lookup tool online.

I have not objected to any other class action settlements in the last five (5) years.

I am not currently represented by counsel.

I do not know yet whether I will be able to attend the Fairness Hearing.

**Following is a summary of my reasons for objecting to the proposed Equifax settlement:**

I object strongly to the settlement as proposed and ask that it be denied for the following reasons:

(1)   The amount of money set aside to compensate "affected" people like me is ludicrously inadequate given the number of people harmed and the nature of the harm done.

(2)   Many, many claimants were unfairly deceived by -- and relied to their detriment upon -- the FTC's original description of the settlement as free credit monitoring OR $125.00 per claimant.

(3)   The proposed settlement's definition of -- and timelines for establishing -- negative impact are unacceptably and unrealistically short, and leave affected consumers like me with no hope of remuneration for even significant personal damage that results outside the near term.

(4)   The offer of a few years of "credit monitoring" is of minimal or no value to many affected consumers like me (for a number of reasons, spelled out in the detailed explanations following this summary).

(5)   The proposed settlement concerns itself more with preserving Equifax's ability to survive as an entity (and to compete in its market space) than to ensure that those of us who were hurt by the company's willful negligence are remunerated to an extent actually commensurate with the damage done to us, or that the lifetime risk to which we have been exposed be mitigated to every extent possible -- or at least to the full or even reasonable extent of Equifax' ability to pay.

(6)   The proposed settlement wildly disproportionately benefits Equifax and class counsel at the expense of those actually victimized by Equifax's willful and negligent carelessness.

(7)   The proposed settlement is so egregiously unfair to members of the class that it further undermines public faith in the class-action system.

(8)   The proposed settlement so egregiously benefits Equifax, its shareholders, and class counsel at the expense of class members that it fails to adequately discourage other credit reporting bureaus or commercial entities from being careless with customer data in future.

**Following is a more detailed explanation of my reasons for objecting to the proposed Equifax settlement:**

I object strongly to the settlement as proposed and ask that it be denied for the following reasons:

(1)   The amount of money set aside to compensate "affected" people like me is ludicrously inadequate given the number of people harmed and the nature of the harm done.

> Equifax reported revenues of $3.1 BILLION in 2016 alone.  Yet in a proposed $700 million settlement, only $31 *million* was earmarked for claims by people whose data was breached, but who have not YET been impacted

by a breach that has made them vulnerable to identity and taxpayer theft for the rest of their lives.

That earmark would have assumed that only 248 THOUSAND of the estimated 147 MILLION -- that is, less than 1% -- of the people affected actually submitted a claim for the damage done to them … namely, a lifetime of significantly increased risk of identity fraud.

(2)   Many, many claimants were unfairly deceived by -- and relied to their detriment upon -- the FTC's original description of the settlement as free credit monitoring OR $125.00 per claimant.

The "cash settlement" number was originally touted by the FTC as a payment of $125 per claim.

This number, which assumed that less than 1% of the affected consumers would actually submit a claim for settlement money, was offensively, ridiculously unrealistic.

That it was completely unrealistic is clearly evidenced by the FTC's later demand that claimants, even those who relied on its original representation in submitting their claims properly and promptly, now jump through additional steps and endure more hassle to "prove" that they already have credit monitoring in order to qualify for a cash settlement.  This was NOT a requirement of the original settlement as class members had been told and relied upon.  Further, the FTC now pushes claimants to revise their claims and opt for credit monitoring, acknowledging as it did not do at all clearly in the beginning, that the actual cash settlement will depend on the number of final claimants, and is therefore likely be very low, and certainly far below the $125 originally indicated.

(3)   The proposed settlement's definition of -- and timelines for establishing -- negative impact are unacceptably and unrealistically short, and leave affected consumers like me with no hope of remuneration for even significant personal damage that results outside the near term.

There is no "shelf life" to the data that was exposed by the Equifax breach. Those of us whose data was compromised will be vulnerable to ongoing risk of financial loss and the active possibility of identity theft for *decades* – indeed, likely, for the rest of our lives.

(4)   The offer of a few years of "credit monitoring" is of minimal or no value to many affected consumers like me, for the following reasons:

- Again, there is no "shelf life" to the data that was exposed by the Equifax breach.  A few short years of credit monitoring will do little to help those of us

whose data was exposed for more than a fraction of the period over which we are now vulnerable.

- Credit monitoring does nothing to prevent identity theft or credit card fraud, to which affected consumers like me are now significantly more vulnerable.

- Credit monitoring does nothing to stop taxpayer identity theft, to which affected consumers like me -- and the American taxpayer, who ultimately underwrites this fraud -- are now significantly more vulnerable. Even our taking the arduous step of regularly freezing and unfreezing our credit reports cannot protect us from having false tax returns filed in our names.

- Many affected consumers like me already have some form of commercial credit monitoring, either as a result of a previous (less egregious) data breach or as benefit offered by a credit card, bank, or other entity.

- Many of us who do have some form of credit monitoring, including monitoring provided through a previous breach, have found these services to be woefully inadequate (e.g., reports are sporadic and frequently do not include mention of credit-impacting events we already know about, such as applying for a loan ourselves).

(5)   The proposed settlement concerns itself more with preserving Equifax's ability to survive as an entity (and to compete in its market space) than to ensure that those of us who were hurt by the company's willful negligence are remunerated to an extent actually commensurate with the damage done to us, or that the lifetime risk to which we have been exposed be mitigated to every extent possible -- or at least to the full or even reasonable extent of Equifax' ability to pay.

As consumers, we did not ask or agree to have our data gathered or marketed by Equifax or any other credit bureau. Equifax profits handsomely from treating us as commodities and selling our data. Equifax has egregiously and willfully failed to protect that data, and by failing to do so, has placed 145 million people at increased lifetime risk of financial loss, identity theft, and taxpayer identity theft.

To be blunt, we do not care if Equifax goes bankrupt or out of business because it is required to remunerate us more reasonably for the decades of increased risk it has thrust upon us through its willful negligence. We do not believe that the court, the FTC, or class counsel should place higher value on protecting Equifax and its shareholders than its victims.

There are at least two other major credit reporting bureaus at this time. Not only would the loss of Equifax therefore *not* create an unacceptable void in that market space, but an actually *meaningful* settlement -- one actually designed to compensate and meaningfully protect affected consumers like

Certified Mail Receipt #7015 0640 0007 1549 8188

me -- could well serve to incentivize the remaining bureaus to more carefully safeguard our data in future.

(6)   The proposed settlement wildly disproportionately benefits Equifax and class counsel at the expense of those actually victimized by Equifax's willful and negligent carelessness.

The settlement as structured concerns itself more with granting class counsel with a veritable windfall -- nearly $80 million -- than with ensuring that affected consumers are both shielded from risk and remunerated for any financial loss that occurs over the decades of significantly increased vulnerability that have been thrust upon them.

It should be noted that $80 million is nearly three times the amount of money set aside to compensate the estimated 147 million victims of the data breach with a cash settlement.

(7)   The proposed settlement is so egregiously unfair to members of the class that it further undermines public faith in the class-action system.

(8)   The proposed settlement so egregiously benefits Equifax, its shareholders, and class counsel at the expense of class members that it fails to adequately discourage other credit reporting bureaus or commercial entities from being careless with customer data in future.

****

Thank you for your consideration.

Sincerely,

*Paula Kay Filseth*

Paula Kay Filseth
408.353.9705
pkfilseth@yahoo.com
230 Jensen Springs Road
Los Gatos, CA  95033

Mailing address:
Paula Filseth
PO Box 246
Los Gatos, CA  95031



Paula Filseth
Po Box 246
Los Gatos, CA 95031

NOV 15 2019

7015 0640 0007 1549 8188

Equifax Data Breach Class
Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

9811135418 B900

U.S. POSTAGE PAID
REDWOOD ESTATES, CA
95044
NOV 13 19
AMOUNT
$4.05
R2305H128971-3

1000   98111

Paul Meidinger
PO Box 677
Lodi, CA 95241

17 September 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Dear Sir/Madam:

In re: Equifax Inc. Customer Data Security Breach Litigation
Case No. 1:17-md-2800-TWT

I am a member of the settlement class because I visited the eligibility website
(https://eligibility.equifaxbreachsettlement.com/en/eligibility) which indicated that my personal data had been
compromised. I filed a claim and was given the claim number PP7YRV9LE3.

I object to the terms of this settlement because I believe them to be inadequate and deceptive. I do
not believe anyone will receive the $125 cash settlement due to the number of claims submitted, and
any credit/identity theft caused by the data breach will likely end up costing more than $125 to fix.
Additionally, the information provided initially said no documentation of existing credit monitoring
service was required (even though I do have it) in order to receive the $125, then the terms changed
and we were told that documentation *is* required.

I have not objected to any class action settlements in the previous five (5) years.

I cannot attend the Fairness Hearing due to work obligations.

Sincerely,

Paul Meidinger

Received
OCT 22 2019
by JNDLA

Pd Box 677
Lodi CA CS244

OCT 2 2 2019

Equifax Data Breach Class Action Settlement Admin.
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle WA 98111-9418

98111-941818

SACRAMENTO CA 957
18 OCT 2019 PM 5 L



Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418



9/27/2019

Paul Nowyj
150 E. Wynnewood Rd. APT 10M
Wynnewood, PA 19096

Dear Equifax Data Breach Class Action Settlement Administrator,

I am writing to file a formal objection to the Equifax Inc Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT. Please find a screenshot showing of the website that confirms I am a member of the settlement class. I have not objected to any other class action settlements in the last 5 years. I am unable to attend the fairness hearing 800 miles away in Georgia. I am not represented by an attorney.

I object to the settlement because it does not sufficiently compensate the victims of the crimes committed by Equifax. It's estimated that the individual pay-outs to the victims of this crime will get less than 21 cents in compensation from a company that had $3.4 billion dollars in revenue last year (https://www.forbes.com/sites/shaharziv/2019/08/01/you-might-only-get-21-cents-from-the-equifax-data-breach-settlement-instead-of-125/#5fc3f3b74cbe).

The only legitimate compensation would be to liquidate the company and divide the proceeds among the victims. Companies must be sent a message that there are actions so egregious, that they warrant a death sentence from the court system. From the post breach analysis, it's clear that this wasn't an accident, none of Equifax's internal Emails or earnings information was exposed, they had the technology to prevent this but were too apathetic to implement it. Any company that shows this level of gross negligence should not be allowed to control access to homes, apartments, college, cars, and jobs for millions of hard-working Americans.

In my case freezing my credit at all agencies has affected my ability to get work, rent an apartment, and obtain credit. It's insulting to the American people that a company can destroy so many financial lives, and then settle that lawsuit by sending the victims less compensation than it cost for the stamp on this letter. If this settlement goes through as currently structured, it only reinforces inequality in America by allowing a multi-billion-dollar company to gut the American consumer through a complicit federal court system.

Sincerely,

-Paul Nowyj



## Thank You

Based on the information you provided, our records indicate your personal information was impacted by this incident.

For more information, visit the FAQ page.



P. Nowyj
150 E. Wynnewood Rd. Apt. 10M
Wynnewood, PA 19096

PHILADELPHIA PA 190
28 SEP 2019 PM 5 L

OCT 01 2019

Equifax Data Breach Class Action Settlement Admn.
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111 - 9418

98111-S41818

Paul Tarczy & Linda Turnquist
2531 Overhill Lane
Davis, CA 95616

Received
SEP 24 2019
by JNDLA

September 19, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

re: Equifax Inc. Customer Data Security Breach Litigation,
   Case No. 1:17-md-2800-TWT

To Whom It May Concern,

We are involuntary customers of Equifax.  We were notified via US mail that our data may have been unwittingly mishandled.  In looking up our names in Equifax's database, it is clear that our very privacy has been breached and we are seemingly helpless to do anything about it.  We now read that the settlement of the case will allow us pennies in compensation.

This letter is the first time we are getting involved in objecting to any event in the US legal system.  Neither of us has ever questioned court settlements before and are thus hopeful that this letter will have an impact on the proposed settlement listed above.

It is clear that Equifax' setting aside $31 million for compensation is woefully inadequate.  Even if we were to receive the full $125 from the settlement, which is now extremely unlikely, it would still be profoundly short of what we consider our valuable privacy.  We understand that the court cannot make changes to the settlement but it des have the power to reject it.  We urge the court to reject the proposed settlement otherwise those most affected by the circumstances will once again be left out in the cold.

 We will not be present at the fairness hearing and have not involved an attorney to represent us.  Our opinion is summarized entirely in this letter.  We hope it will have an impact.

Sincerely,

Paul Tarczy & Linda Turnquist

SACRAMENTO CA 956

20 SEP 2019 PM 4 L

Tarczy - Turnquist
2531 Overhill Ln
Davis, CA  95616

**Equifax Data Breach**
**Class Action Settlement Administrator**
**Attn: Objection**
**c/o JNC Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

SEP 2 4 2019

1106 Glenmose Road
Fairport, New York 14450
October 3, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, Washington 98111-9418



To whom it may concern:

I am writing to object to the proposed settlement of the Equifax Data Breach Lawsuit. The settlement does not provide a useful remedy for class members who do not need credit monitoring services. I am a member of the settlement class; I filed a claim for alternative compensation, received claim number PTJ389BP27, and verified my claim for alternative compensation.

The Federal Trade Commission reports at https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement#FAQ5 that
- Because "the public response to the settlement has been overwhelming", "each person who takes the money option is likely to get a very small amount. Nowhere near the $125 they could have gotten if there hadn't been such an enormous number of claims filed."
- As an alternative, the Commission urges everyone to opt instead for the free credit monitoring, which "provides a much better value". (Even if they do not need additional monitoring services!)

I am appalled that I am being urged to "settle" for a duplicate service that I do not need **because whoever negotiated the structure of the settlement misjudged the remedy needed by the people who were harmed.**

I am willing to entertain the possibility that those who negotiated the proposed settlement did their best. Now, however, the Court has "overwhelming" proof that the remedy does not meet the needs of the class members. **Instead of pushing members into an alternative they do not need, how about just fixing the remedy?**

I also am concerned about the ongoing hazing of class members who opt for the cash remedy to change or drop their claim. Such methods include the Commission's (and Court's (?)) endorsement of a "bait and switch" to the monitoring remedy, and additional demands for proof of current monitoring services from class members.

I have not objected to any class action settlements in the last five (5) years. I will not appear at the Fairness Hearing in person or through a representative.

Thank you in advance for considering my objection to the settlement.

Sincerely,

Michael A. Domaratz

Copy to: Attorney General Letitia James, Office of the Attorney General, The Capitol, Albany, New York
        12224-0341

ROCHESTER NY 144
04 OCT 2019 PM 1 L

OCT 07 2019

PROUD NARFE MEMBER

MR MICHAEL DOMARATZ
1106 GLENMOSE RD
FAIRPORT NY 14450-3869

EQUIFAX DATA BREACH CLASS ACTION
SETTLEMENT ADMINISTRATOR
ATTN: OBJECTIONS
C/O JND LEGAL ADMINISTRATION
PO BOX 91318
SEATTLE, WASHINGTON   98111-9418

11/4/19

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

1. Your full name and current address;

**Michael Marino**

**80 N. Moore St. #21-H**

**New York, NY 10013**

> Received
> NOV 1 2 2019
> by JNDLA

2. Your personal signature (an attorney's signature is not enough);

**See below…**

3. A statement indicating why you think that you are a member of the settlement class;

**I received an email saying that my account was breached and that I am part of the settlement class suit.**

4. A statement with the reasons why you object, accompanied by any legal support for your objection;

**I object to being baited and switched, told I could get $125 settlement or free credit monitoring. I already have credit monitoring through many of my credit cards and had such monitoring at the time of the breach. My Discover credit card has provided me with this service and has done so since I first got it, years before this breach.**

***The court should not approve the settlement because it is not adequate.***

5. A statement identifying all class action settlements to which you have objected in the previous five (5) years; and

**I have not objected to any class action settlements in the past 5 years, or any other time for that matter.**

6. A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates

*Michael Marino*        11/4/19

*PAGE 2*

between **11/19/2019** and **12/05/2019** during which you are available to be deposed by counsel for the Parties.

**I will not be appearing at the Fairness Hearing.**

*Michael Marino*   11/4/19

Michael Marino
80 N. Moore St. #21-H
New York, NY 10013

NOV 1 2 2019

Equifax Data Breach Class Action Settlement Administrator
ATTN: OBJECTION
C/O JND Legal Administration
P.O. BOX 91318
Seattle, WA 98111-9418

FOREVER
001390511014220

USA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re: Equifax Inc. Customer Data
Security Breach Litigation

MDL Docket No. 2800
No. 1:17-md-2800-TWT


CONSUMER ACTIONS


Chief Judge Thomas W. Thrash, Jr.

## OBJECTION OF CLASS MEMBER MIKELL WEST

## Introduction

The requested 25% attorneys' fees from the portion of the settlement that class counsel actually negotiated, i.e., $310 million, is grossly excessive for megafund settlements in this District. Two opinions from the Northern District of Georgia would reject this high of a percentage outright. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1271–72 (N.D. Ga. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993). Yet, class counsels' fee motion doesn't mention them.

The parties negotiated for Equifax not to oppose fees (Dkt. 739-2 at 26), so the only ones who might call attention to this overreaching, not to mention the excessive 3.7 lodestar multiplier (itself still understated), are the class members. Unfortunately and deliberately, class counsel used the class notice to set numerous and substantial roadblocks, making it extremely difficult for class members to file objections to the proposed fee and shortcomings of the settlement.

Under the notice, class members wishing to object must comply with an outrageous 14 enumerated requirements. Dkt. 739-2 at 271-73. Most notable among them, any class member who wishes to object must provide four dates over a sixteen day window in which to give a deposition. The Thanksgiving Holidays fall within that window. These requirements serve only to discourage objections, and have incurably tainted the settlement approval process.

For these and other reasons, the settlement should be disapproved and class counsels' request for $77.5 million should be rejected. If the settlement is approved, nothing more than 10% of $310 million ($31) million should be allowed in attorneys' fees. The remaining $46.5 million should be returned for the benefit of the class.

## Standing and Objection Procedures

This objecting class member's full name is Mikell Alan West. His address is 5109 Goldeneye Drive, Corpus Christi, Texas 78413. His current phone number is 361-215-8487. Mr. West has never previously objected to a class action settlement.

Mr. West is among the approximately 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach. *See* Exhibit 1, Declaration of Mikell West, incorporated by reference as though set forth in full. He is thus a member of the class as defined by the Class Notice and has standing to make this objection. Mr. West confirmed he is a class member by visiting the settlement website and submitting his last name and the last 6 digits of his social security number. Ex. 1-A.

Mr. West filed a claim online. Ex. 1-B. Because Mr. West already has credit monitoring services through Experian and will have them for at least six months after filing his claim, he requested a cash payment. Ex. 1.

Mr. West objects to the proposed settlement and attorneys' fee request in *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, for the reasons stated herein. Although this objection is asserted on behalf of Mr. West alone, it applies equally to the class as a whole, and particularly to class members like him with existing credit monitoring who are likely to receive miniscule payments under the alternative reimbursement compensation option of the settlement.

Mr. West intends on appearing at the fairness hearing through his counsel of record Jerome J. Froelich, Jr.,[1] of McKenney & Froelich, One Midtown Plaza, Suite 910, 1360 Peachtree Street, Atlanta, Georgia 30309-2920, (404) 881-1111 and Robert Clore of Bandas Law Firm, P.C., 500 N. Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401, (361) 558-3527.[2] In addition to Mr. Freolich and Mr. Clore, Mr. West is represented by Christopher Bandas of the Bandas Law Firm, P.C. Mr. Clore, however, will be counsel of record for Mr. West on behalf of the Bandas Law Firm, P.C. Additional counsel may be retained on behalf of Mr. West

---

[1] Mr. Froelich had difficulty logging into his CM/ECF account on November 19, 2019 to file his notice of appearance. His office forwarded his completed and signed Appearance of Counsel form to Mr. Clore on the evening of November 19, 2019 and asked for Mr. Clore to file it as an exhibit to the objection. Mr. Froelich intends to file it again on November 20, 2019.

[2] Under Case Management Order No. 1, because Mr. Clore is admitted to the United States District Court, Southern District of Texas (ID No. 2032287), he is admitted *pro hac vice* in this litigation. Dkt. 23 at 4.

to assist with any deposition. A description of the attorneys' legal background and prior experience in connection with class action litigation is attached hereto as Exhibit 2, which is incorporated by reference herein.

Counsel for Mr. West do not anticipate offering evidence at the fairness hearing, but intend to argue based on the papers filed in support of the objection. Although Mr. West objects to the class notice requirement of appearing for deposition as a clear attempt to intimidate objectors, he nevertheless submits that he is available to give a deposition on either December 2nd, 3rd, 4th, or 5th, 2019. Mr. West joins in the request by class members' Frank and Watkins for a reciprocal deposition of Professor Klonoff. Dkt. 876 at 4.

The specific legal and factual bases of Mr. West's objection are set forth herein.

Mr. Froelich has previously represented objecting class members on two occasions in the preceding five years: (1) *Cross v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01270-RWS, United States District Court, Northern District of Georgia, and (2) *Markos v. Wells Fargo Bank, N.A.*, 1:15-cv-001156-LMM, United States District Court, Northern District of Georgia. Mr. Clore, Mr. Bandas, and/or the Bandas Law Firm, P.C. have represented objecting class members on numerous occasions in the preceding five years. The case names, case numbers, and courts are set forth

in an exhibit to this objection, which is incorporated by reference herein. *See* Exhibit 3.[3]

This objection is made in good faith for the purpose of improving the settlement for the benefit of the class. It is anticipated that class counsel will attack the motives of Mr. West's attorneys even though amended Rule 23(e)(5)(B) now specifically requires district court approval of any settlement of an objection, whether on appeal or in the district court. In making these criticisms, class counsel will likely omit the numerous instances in which Mr. West's attorneys have assisted clients assisted in returning millions to classes. *See e.g.,* Exhibit 3.

As directed in objector requirement 12 of the class notice, Mr. West informs the Court that he has a representation agreement with the Bandas Law Firm. *See* Exhibit 4.[4] Further, the Bandas Law Firm has a retainer agreement with Mr. Froelich to serve as local counsel. *See* Exhibit 5.

---

[3] In complying with the requirement that objectors identify all instances in which their lawyer or lawyer's law firm have objected, a thorough review of records was made; and searches were made on Pacer and www.serialobjector.com. Although it is possible an objection may have been inadvertently missed, counsel made a good-faith effort to locate and identify every objection called for in the class notice. Any omission, discrepancy or shortcoming in these disclosures is strictly unintentional. Should counsel become aware of any such deficiencies, they will take immediate steps to address any such matters.

[4] In response to objector requirement 14 on the long form notice, the manner in which Mr. West's counsel will be compensated depends on the outcome of the objection and myriad of factors. In general, please see the attorney-client representation agreement in Exhibit 4, which establishes the terms of compensation. It is impossible to estimate the amount of fees to be sought at this

In addition to the arguments contained herein, Mr. West incorporates by reference the arguments and authorities contained in other filed objections, including the objection of Theodore H. Frank and David R. Watkins (Dkt. 876), made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## Objections

### I.     This Court has a fiduciary obligation to the class.

Notwithstanding this Court's discretion in approving settlements, "it shall not confer approval without scrutiny." *Domestic Air*, 148 F.R.D. at 312. It is incumbent upon the Court "to protect the interests of absent class members" by "independently and objectively analyz[ing] the evidence and circumstances before

---

juncture because of unknown variables; however, any fee will be sought in accordance with Rule 23 and applicable law. Mr. West's counsel have spent approximately 42 hours on the case as of the filing of this objection. It is impossible to estimate the number of hours to be spent or the amount of fees to be sought in the future because of unknown variables including class counsels' willingness to make changes to the settlement and to reduce their request for attorneys' fees, the extent and scope of the deposition of Mr. West, whether objectors' counsel are permitted to depose Klonoff, the outcome of the objection, whether appeal to the Eleventh Circuit and Supreme Court is required, the outcome of any such appeal, whether the case is remanded with a new notice and subsequent round of objections, etc. Mr. Clore and Mr. Froelich charge an hourly rate of $600; Mr. Bandas charges $700 per hour. Objection is made to the requirement to objecting to the proposed settlement and requested fees, that objectors come up with an estimate of fees and hours to be spent as unauthorized under Rule 23, ambiguous, and impossible to answer at this stage.

it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished." *Id*. (citation omitted). Courts have equated this to a fiduciary obligation to the absent class members. *Sharleigh Assoc. LLC v. Windmere-Durable Holdings, Inc*., 184 F.R.D. 688, 693 (S.D. Fla. 1999) ("[t]he court bears fiduciary responsibilities to the class").

It is especially important for the Court to scrutinize class counsels' fee taken from the common fund. Equifax has agreed not to take any position on class counsels' proposed $77.5 million fee. Dkt. 739-2 at 26. In the absence of a true adversarial process, "the court must act as a fiduciary for class members and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee." *Bowen v. SouthTrust Bank of Alabama*, 760 F. Supp. 889, 896–97 (M.D. Ala. 1991) (quotations omitted).

## II. The class notice imposes draconian requirements on class members wishing to object, tainting the approval process.

The substance and amount of opposition to the settlement must be considered, along with the other *Bennett* factors, in weighing approval of the settlement. *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).[5] The

---

[5] The *Bennett* factors include: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; 4) the complexity, expense and duration of litigation; 5) the substance and amount of opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved. *Id*.; *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).

Court is undoubtedly aware of criticism of the settlement from the media. *See e.g.,* Shahar Ziv*, Here's Why You Could Get as Little as $0.21 From Equifax's Data Breach Settlement*, Forbes (Aug. 1, 2019);[6] *Warzel, Charlie, Equifax Doesn't Want You to Get Your $125. Here's What You Can Do*, NEW YORK TIMES (Sept. 16, 2019).[7] But it cannot weigh the extent of opposition from class members because the class notice deliberately squelched it.

The notice lists <u>fourteen</u> requirements for class members who wish to file an objection, including identifying sensitive attorney-client agreements, offering four dates to appear for a deposition over a period of sixteen days (including the Thanksgiving holidays), and providing detailed information about counsels'

---

Class counsel have not yet proffered evidence on factors 2 and 3. With 147 million consumers impacted by the data breach, it stands to reason that potential class recovery could bring Equifax to its knees. Indeed, credit freezes alone cost consumers an estimated $1.4 billion. Dkt. 374 at 136-37. "[I]n any case[,] there is a range of reasonableness with respect to a settlement." *ICarpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). Class counsel should have shared this information with the class ahead of the objection deadline, and in failing to do so, further stymied class members' abilities to evaluate the settlement and whether to object. *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) ("[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record").

[6] https://www.forbes.com/sites/shaharziv/2019/08/01/you-might-only-get-21-cents-from-the-equifax-data-breach-settlement-instead-of-125/#5488ba5c4cbe.

[7] https://www.nytimes.com/2019/09/16/opinion/equifax-settlement.html

history and hours estimated to be spent on the case. Dkt. 739-2 at 271-73.[8] These unduly burdensome requirements are calculated to drive down the number and quality of objections. *See Jacobson v. Persolve, LLC*, 14-CV-00735-LHK, 2016 WL 7230873, at *6 (N.D. Cal. Dec. 14, 2016) (disapproving of "burdensome requirements for class members to object to the settlement"); *accord Bennett v. Boyd Biloxi, LLC*, CV 14-0330-WS-M, 2016 WL 2743527, at *6 (S.D. Ala. May 11, 2016) (refusing to approve proposed notice that required deposition by objectors).

Mr. West was able to file his objection, but many class members likely abstained for fear of having to give a deposition, particularly around Thanksgiving. There is no legitimate basis for this requirement. Any suggestion that the requirements exist to weed out bad-faith objections is a pretext in light of Rule 23(e)(5)(B)'s requirement that this Court approve any compensation to counsel for an objector. The settlement should not be approved in light of these burdensome requirements, which are antithetical to Rule 23 and the notion that valid objections should be encouraged, not discouraged. *See Reynolds v. Beneficial Nat. Bank*, 288

---

[8] See also
https://www.equifaxbreachsettlement.com/admin/services/connectedapps.cms.extensions/1.0.0.0/a4f6125d-1f25-4e2c-aa90-3f2bb20e811f_1033_EFX_-_Long_Form_Notice.pdf.

F.3d 277, 288 (7th Cir. 2002). In no case, should *Bennett* factor 5 be found to favor

settlement approval.

### III. The settlement unfairly favors class members without existing credit monitoring; class recovery is inadequate considering the terms of class counsels' proposed $77.5 million fee.

In considering adequacy of the class relief, this Court must address items

under amended Rule 23 that are not part of the *Bennett* inquiry. Specifically, the

Court must consider "the effectiveness of any proposed method of distributing

relief to the class" and whether "the proposal treats class members equitably

relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii),(D); *Grant v. Ocwen Loan

Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *4–5 (M.D.

Fla. Jan. 30, 2019) (Howard, J.) (reviewing both Rule 23(e)(2) and considerations

under *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984)). It must also weigh

class relief with "the terms of any proposed award of attorney's fees[.]" FED. R.

CIV. P. 23(e)2)(C)(iii).

These considerations cut against settlement approval. Class members like

Mr. West who had their personal information compromised by Equifax, but

already have credit monitoring (and who have not yet sustained out of pocket

losses) will receive "a very small amount" of cash that will be "[n]owhere near"

$125.[9] That is because just $31 million cash was set aside for those class members. Dkt. 739-2 at 19. The FTC considers the credit monitoring "a much better value[.]"[10] Why should class members who already have credit monitoring get a much worse value? Of course, a class member with credit monitoring may choose the creditor monitoring benefit. But, the class notice does not explain the logistics. Does the settlement create a new Experian account that requires the class member to input new information? Must the class member cancel his existing Experian account?

Without clarification in the class notice, it appears the settlement arbitrarily punishes (and class counsel inadequately represented) those with existing credit monitoring accounts in favor of class counsels' fee recovery and those who don't already have credit monitoring.

Further, while class members like Mr. West will be lucky to get a few dollars from the company that negligently compromised his personal information, class counsel request $77.5 million in fees. As discussed *infra*, that fee request is out of bounds for a megafund settlement in this District. That is likely why class counsel insisted that Equifax agree not to oppose the fee motion. Dkt. 739-2 at 26. Of course, Equifax would not "agree to a clear-sailing clause without

---

[9] https://www.ftc.gov/enforcement/cases-proceedings/refunds/equifax-data-breach-settlement.

[10] *Id.*

compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman v. RadioShack Corp*., 768 F.3d 622, 637 (7th Cir. 2014).

The class relief, and particularly the relief for class members with existing credit monitoring, is inadequate relative to the terms of class counsels' proposed fee.

## IV. Class counsels' fee request is grossly excessive for a megafund.

Regardless of whether the Court approves the settlement, the Court should not award class counsel anything approaching $77.5 million. For purposes of attorneys' fees, it's important to start with the common fund from which class counsel ask to be paid. Even though the settlement contemplates the $77.5 million fee as a 25% recovery from the $310 million fund negotiated under the March 30, 2019 term sheet (Dkt. 739-at 2 25), class counsel reframe it as 20.3% from $380.5 million. But, as class counsel readily admit, the FTC is responsible for securing that additional $70.5 million. Dkt. 858 at 6. Class counsels' percentage-based recovery should not come from funds that they didn't obtain for the class. This Court should treat the request as 25% of the $310 million fund that *they* negotiated.

Though a 25% benchmark fee might appear superficially reasonable under *Camden I*,[11] courts in this District do not allow that high of a percentage to be

---

[11] *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991).

taken from a megafund. *See Domestic Air*, 148 F.R.D. at 350–51; *Carpenters*, 587 F. Supp. 2d at 1271–72. *Camden I* contemplated that the benchmark fee "may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775. One of those circumstances, at least in the Northern District of Georgia, is when a settlement reaches into the hundreds of millions of dollars. *Carpenters*, 587 F. Supp. 2d at 1271–72; *Domestic Air*, 148 F.R.D. at 350 ("While the benchmark for a percentage award in a normal common fund case falls between 20–30%, the present action is an exception to the typical common fund case because of the size of the recovery"). Indeed, *Camden I* specifically "authorizes an examination of the economies of scale inherent in any class action in determining an appropriate fee award." *Domestic Air*, 148 F.R.D. at 352 (citing *Camden I*, 946 F.2d at 775).

In *Carpenters*, Judge Hunt awarded 21% rather than 26% from a $137.5 million fund, specifically finding "that as the size of the common fund increases, the percentage of that fund awarded to class counsel should decrease." *Id.* at 1268, 1272. Judge Hunt acknowledged that not all courts share this view, which has tended "to skew the average percentage of awards in mega-fund cases higher than what this Court would consider reasonable." *Id.* at 1272.[12]

---

[12] That explains Klonoff's cherry-picked settlements where courts awarded fees above traditional megafund percentages. Dkt. 858-2 at 63-67.

Though a 21% fee was not excessive for a $137.5 million settlement, it was for a $305 million settlement. Judge Shoob in *Domestic Air* found that "a reduced percentage award of fees and expenses of 5.25% is appropriate … given the size of the recovery." *Domestic Air*, 148 F.R.D. at 351. "In megafund cases where extraordinarily large class recoveries of $75–$200 million and more are recovered, courts most stringently weigh the economics of scale inherent in class actions in fixing an appropriate percent recovery for reasonable fees. Accordingly, fees in the range of 6–10% and even lower are common in this large scale context." *Domestic Air*, 148 F.R.D. at 350–51.

Under principles of economies of scale followed in this District, if the settlement is approved, a 10% fee from the $310 million fund ($31 million) would be at the outer bounds of reasonableness. *Domestic Air*, 148 at 351. It would still allow for a generous 1.48 lodestar multiplier.

The $310 million fund secured by class counsel is undeniably more a product of 147 million potential claims against Equifax than protracted labor by class counsel. Although class counsel have not submitted any breakdown of hourly labor by category (as discussed *infra*, the Court should order this), presumably most of their lodestar is dedicated to mediation and settlement. Dkt. 858 at 4 (noting Equifax and class counsel began settlement discussions in September 2017). Under these circumstances, the economies of scale lowers "fees to class

counsel who achieved a quick result in a class action due to the economies of scale, reasoning that there is little additional time or effort required to litigate a class action and that plaintiffs' attorneys should not allowed to receive a contingent fee payable out of the entire fund at the same rate that the attorney would receive on one claim." *Domestic Air*, 148 F.R.D. at 352.

Class counsel are mistaken that the size of the fund "does not change the analysis." Dkt. 858 at 20. Without mentioning *Domestic Air* or *Carpenters* from this District,[13] they rely on authority from the Southern District of Florida, which emphasizes that a low percentage for large funds may discourage other counsel from continuing to fight for a better outcome. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1212-13 (S.D. Fla. 2006). This case is not like *Allapattah*, where class counsel litigated the case for 15 years, including two trials and appeals before the Supreme Court, to achieve an extraordinary 100% return on class compensatory damages. 454 F.Supp.2d 1185, 1213 (S.D. Fla. 2006). This case settled early; so the concerns over creating a disincentive to future counsel who might otherwise litigate longer for a better result are not implicated.

---

[13] Remarkably, class counsels' expert on fees, Robert Klonoff, does not cite *Domestic Air*. He does cite *Carpenters*, but not for its application of the economies of scale to megafunds. Dkt. 858-2 at 76, 96.

## V.    The *Johnson* factors do not support the proposed fee.

The *Johnson*[14] factors do not support exceeding the standard 6%-10% fee for megafunds above $200 million recognized in *Domestic Air*. 148 F.R.D. at 350. The time and labor required (factor 1) weighs against the fee request. With $20.9 million in lodestar (discussed *infra*), class counsel are asking to be paid at nearly four times their blended $676 hourly rate. Dkt. 858-1 at 26. This case settled quickly and with no formal discovery or depositions taken. Class counsel pat themselves on the back from reviewing documents, interviewing key witnesses, and noticing several critical depositions. Dkt. 858 at 4. But, they don't identify a single deposition taken before agreeing to terms with Equifax. The first depositions taken by class counsel will come from objectors.

Though the case is complex, the expense and duration—less than two years and $1.2 million in expenses for a settlement involving nearly half the American population—are modest for a class action of this magnitude. *See An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud.

---

[14] The factors include: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to perform the legal service properly," (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "time limitations imposed by the client or other circumstances," (8) "the amount involved and the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the 'undesirability' of the case," (11) "the nature and length of the professional relationship with the client," and (12) "awards in similar cases." *Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

811, 820 (2010) (finding average and median times to final settlement approval of around three years).

As to the amount involved and the results obtained (factor 8), class counsel have overstated the results (while failing to proffer the value of class claims). This is the largest settlement for a data breach because of the aggregation of 147 million class members' claims, not years of labor by class counsel. Class counsel also muddy the water by including the cost of practice changes, which are a benefit to Equifax. *See In re Home Depot, Inc*., 931 F.3d 1065, 1077 (11th Cir. 2019) (noting this Court declined to include practice changes in calculating fees); *Koby v. ARS Natl. Services, Inc*., 846 F.3d 1071, 1079 (9th Cir. 2017) (injunctive relief of business practices was "presumably to avoid further litigation risk" and had no real settlement value).

Contrary to class counsels' suggestion, the "undesirability of the case" factor (factor 10) is applicable; it just doesn't support a high fee. Sixty law firms participated in the litigation. Dkt. 858-1 at 83-84. The case was obviously highly desirable.

Finally, awards in similar cases (factor 12) do not support the $77.5 million fee. Judge Shoob awarded a 5.25% fee from a $305 million settlement based on the economies of scale. *Domestic Air*, 148 F.R.D. at 350–51. This Court awarded $15.3 million in the *Home Depot* data breach class action where the percentage-

based cross-check revealed a fee of slightly more than a third of the class benefit. *Home Depot, Inc*., 931 F.3d at 1077. Of course, the $42.5 million class benefit did not rise to the level of a megafund. Plus, the Court awarded the fee under the lodestar method with a modest 1.3 multiplier. *Id.* Similarly, a court allowed a 27% fee in a data breach case, but only where the lodestar multiplier was just "slightly over 1.0." *In re Anthem, Inc. Data Breach Litig*., 15-MD-02617-LHK, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018).

## VI. The real lodestar multiplier is at least 3.7 and probably much higher.

While lodestar cross-checks are not mandated in the Eleventh Circuit, there is every reason to conduct one here given the magnitude of the $77.5 million proposed fee. In "megafund cases, the lodestar cross-check assumes particular importance." *Alexander v. FedEx Ground Package Sys., Inc*., 05-CV-00038-EMC, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013) ("the lodestar cross-check is particularly important in so-called megafund settlements such as this one"). The reason is that a high lodestar multiplier may evidence a windfall. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)

This is not a case like *Anthem* or *Home Depot* where class counsel are requesting roughly what they would have recovered had they billed at their hourly rates. Class counsels' $20,986,357.80 in represented lodestar requires a 3.7

multiplier to reach $77.5 million. Dkt. 858-1 at 26. That would compensate class counsel at around $2,500 per hour ($676.72 blended hourly rate x 3.7 multiplier = $2,503.86 hourly rate).

Of course, class counsels' lodestar is the presumptive reasonable fee. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (emphasis original) (quotations omitted). Class counsel have failed to demonstrate entitlement to nearly four times the presumptively reasonable fee.

This Court should not entertain the purported 2.79 multiplier that is based on class counsels' estimated future work. "The law is settled that in calculating the lodestar, the Court must use 'the number of hours reasonably **expended** on the litigation,' and the movant 'should submit evidence supporting the hours worked." *See Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and adding emphasis); *see also 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013) ("Plaintiff has not identified any authority that would entitle it to an award of 'anticipated legal fees and costs,' nor is the court aware of any."); *Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (the fact "that a substantial portion of the requested fees were incurred *after* the settlement was

reached at the mediation . . . casts doubt on the value to the class of the billed hours") (emphasis original).

The Court should also not write class counsel a blank check on expenses. Class counsel seek reimbursement for $167,808.19 that covers Pacer and electronic research. Dkt. 858-1 at 89. At least with respect to legal research, firms often pay flat rates regardless of usage, and class counsel cannot pass this overhead on as an out-of-pocket expense. *Carpenters*, 587 F. Supp. at 1272. The Court should also not allow recovery of $104,493.55 in "Miscellaneous" expenses without further explanation.

## VII.  The Court should order class counsel to file more detailed lodestar material.

Given class counsels' self-interest in securing the largest fee possible, the Court should not accept their assurances that they eliminated all duplicative, unauthorized or otherwise non-compensable hours. Dkt. 858 at 23. The Court should review their time closely and order their billing records produced for review by the class. The class members should not be kept in the dark about their attorneys' efforts to take $77.5 million plus expenses from the common fund. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) ("[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record").

Class counsels' current lodestar submission gives neither the class nor the Court any assurance against a considerable overpayment from the class members' common fund. The Eleventh Circuit instructs that class counsel must produce "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. Of City of Montgomery*, 836 F.3d 1292, 1303 (11th Cir. 1988). Great detail is not required, but the records must "'identify the general subject matter of [the] time expenditures.' The time records . . . should demonstrate that the attorneys did not bill for hours that were unproductive, excessive or redundant." *William B. Rubenstein*, Newberg on Class Actions § 15:47 (5th ed.); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (refusing to accept claimed lodestar multiplier on cross-check where class counsel only submitted "the total hours spent by each attorney and other professional[s], with no specification of date or task[;]" without any "backup detail" it was "impossible to assess duplication of effort or unproductive time.").

Sixty law firms submitted a total of 31,011.9 hours. Dkt. 858-1 at 82-87. That is a virtual guarantee of substantial overlap. The generic lodestar submission, without any categorization as to task (or even attorney), makes it impossible to eliminate any of it.

## Conclusion

This Court should deny final approval of the settlement in light of the inequitable treatment of class members who have an existing credit monitoring service and considering the terms of class counsels' unopposed proposed $77.5 million fee, which they have shielded from opposition by creating roadblocks for class members wishing to object. Even if the settlement is approved, that fee request should be rejected out of hand. Anything more than 10% from the $310 million secured by class counsel (i.e., $31 million), would be unreasonable. That would still allow for a generous 1.48 lodestar multiplier. The remaining $46.5 million should be returned to the benefit of the class. Finally, before awarding fees, this Court should, as a matter of transparency to the class, require class counsel to disclose billing and expense records, and allow class members to lodge additional objections after reviewing them.

Dated:      November 19, 2019       Respectfully submitted,

/s/ Robert W. Clore
Robert W. Clore
*Pro Hac Vice*[15]
State Bar of Texas #24012436
Admitted to the United States District

---

[15] Dkt. 23 at 4.

Court, Southern District of Texas, ID No. 2032287
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78418
(361) 698-5200


Jerome J. Froelich, Jr.
State Bar No. 278150

McKENNEY & FROELICH
One Midtown Plaza, Suite 910
1360 Peachtree Street
Atlanta, Georgia  30309-2920
(404) 881-1111

*Attorneys for Objecting Class Member, Mikell West*

Dated November 19, 2019 _____

Mikell West
Objecting Class Member

## <u>CERTIFICATE OF FONT</u>

I hereby certify that this Objection has been prepared in compliance with Local Rules 5.1 and 7.1

DATED: November 19, 2019          /s/ Robert W. Clore
                                   Robert W. Clore

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that today he filed the foregoing document and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: November 19, 2019           /s/ Robert W. Clore
                                          Robert W. Clore

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

## DECLARATION OF CLASS MEMBER MIKELL WEST

Comes now Mikell West and states the following under oath and under penalty of perjury in support of his objection:

1.      My name is Mikell West. I am over the age of eighteen (18) years. I am qualified and competent to make this affidavit. The facts stated herein are within my personal knowledge.

2.      My current address is 5109 Goldeneye Drive, Corpus Christi, Texas 78413. I have never filed an objection to a class action settlement. My current phone number is 361-215-8487. I am among the approximately 147 million U.S. consumers identified by Equifax whose personal information was impacted by the Equifax Data Breach. I confirmed that I am a Settlement Class Member by visiting the settlement website and submitting my last name and the last 6 digits of my social security number. A true and correct copy of the confirmation from the website is attached hereto as Exhibit 1-A. The website indicated that my personal information was impacted by this incident. *Id*. On November 13, 2019, I filed a claim online. A true and correct copy of the confirmation my claim is attached hereto as Exhibit 1-B.

3.      Because I already have credit monitoring services through Experian and will have them for at least six months after filing my claim, I requested a cash payment on my claim.

Dated this the 19th day of November, 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Mikell West

2

Exhibit 1-A

Please select one option...                                                ▼

# Thank You

Based on the information you provided, our records indicate your personal information was impacted by this incident.

For more information, visit the FAQ page.

FILE A CLAIM

Exhibit 1-B

EQUIFAX DATA BREACH SETTLEMENT

| Home | Key Dates | Important Documents | FAQs | I Would Like To... ▾ | ES |

## Your Claim Summary

### Your Information

| | |
|---|---|
| First Name | Mikell |
| Last Name | West |
| Middle Initial | |
| Alternative Name | |
| Mailing Address | 5109 Goldeneye Drive |
| Apt No | |
| City | Corpus Christi |
| Country | United States of America |
| State | Texas |
| Zip Code | 78413 |
| Phone Number | (361) 215-8487 |
| Email Address | Mikellwest@gmail.com |
| Year of Birth | 1984 |

### Credit Monitoring: Free Service or Cash Payment

☑ Option 2, Cash Payment: I want a cash payment of up to $125. I certify that I have credit monitoring and will have it for at least 6 months from today.
    Current Credit Monitoring Service: Experian

### Cash Payment: Time Spent

| Explanation of Time Spent | Approx Month | Approx Year | Hours and Minutes |
|---|---|---|---|
| Reviewing credit monitoring reports from Experian related to data compromise alerts - this has been a repeated time expenditure with the regular reports from Experian. The October time is an estimate of the regular amount of time routinely spent. | October | 2019 | 0 hours 15 minutes |

### Cash Payment: Money You Lost or Spent

⊘ No money lost or spent

### Supporting Documents

⊘ No documents selected

### How Would You Like to Receive Your Cash Payment

☑ Check

### Your Signature

Your claim will not be received by the Settlement Administrator until you click the submit button after your electronic signature. For security reasons, once you hit submit, you **will not** be able to make any changes to your claim form through this portal, however, you will still be able to go into the portal to upload supporting documentation if you haven't done so. If you later decide you need to change any of the information on your claim form, you will need to reach out to the Settlement Administrator directly.

☑ I affirm under the laws of the United States that the information I have supplied in this claim form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.
☑ I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

        Mikell West

Date   November 13, 2019

SUCCESS ✔

Your claim form has been submitted successfully
Your claim number is: **P4KNZ-JAXR7**

You May Print These Details And Keep A Copy For Future Reference By Clicking The Print Button

PRINT

This is The Official Settlement Website For The Equifax Data Breach Settlement.
It Is Operated By The Settlement Administrator, Not By Equifax.



 Copyright © 2019 JND. All rights reserved      Privacy Policy

<u>Description of Mr. West's Lawyers' Legal Background and Prior Experience in</u>
<u>Connection with Class Action Litigation</u>

**Jerome J. Froelich, Jr**.
McKenney & Froelich

Mr. Froelich has more than 40 years' experience practicing law and is licensed in Georgia and New Jersey. Mr. Froelich earned his law degree from Seton Hall University School of Law and worked as a trial attorney with the U.S. Attorney's Office. Mr. Froelich has taught litigation programs at various law schools around the nation and has earned numerous honors including a listing in "The Best Lawyers in America," a Super Lawyer for years 2004-2015 and 2017-2020, and has an AV* rating from Martindale Hubbell. Mr. Froelich's experience in class action litigation includes assisting class members in objecting to class action settlements. *See Cross v. Wells Fargo Bank*, N.A., No. 1:15-cv-01270-RWS, United States District Court, Northern District of Georgia; *Markos v. Wells Fargo Bank, N.A*., 1:15-cv-001156-LMM, United States District Court, Northern District of Georgia. Additionally, he has been lead counsel in two other class action cases both in the United States District Court for the Northern District of Georgia. He represented both plaintiffs Kleiner and Morsani in a class action where their cases were joined. *Jackie Kleiner and George Morsani v. the First National Bank of Atlanta*, Northern District of Georgia civil action numbers C80-921 and C81-1553 and two plaintiffs *Allan J. Feifer and Mark Spix v. First Union National Bank of Georgia*, in the Northern District of Georgia. He was also lead counsel in the class action charging the Atlanta Olympic Committee with overcharging for tickets. *David Churin v. Atlanta Committee for the Olympic Games*, (Fulton County Superior Court 1997).

**Robert W. Clore**
Bandas Law Firm, P.C.

Mr. Clore has twenty years' experience as a civil appellate attorney, has been licensed in Texas since 1999, and practices in courts across the nation. Mr. Clore is rated AV Preeminent by Martindale-Hubbell. Mr. Clore graduated *magna cum laude* from St. Mary's University School of Law, served as Articles Editor with the St. Mary's Law Journal, and clerked for two years at the Thirteenth Court of Appeals, State of Texas. He then worked as appellate counsel for several respected defense firms in Texas before joining the Bandas Law Firm to represent plaintiffs in 2016. As Senior Appellate Counsel for the Bandas Law Firm, he has assisted in securing many victories on behalf of clients in both personal injury and class action matters. *See e.g*., *Salinas v. World Houseware Producing* Co., 34 N.Y.3d 925, 926 (Sept. 12,

2019) (New York Court of Appeals reversing in favor of client in products liability action); *Broussard v. Omni Hotels Corp. et al.*, 2019 WL 4309574 (Tex. App.— Corpus Christi Sept. 12, 2019, no pet.) (court of appeals reversing in favor of client in personal injury action); *In re Optical Disk Drive Prods. Antitrust Litig.*, 10-2143, Dkts. 2889 (N.D. Cal. Feb. 21, 2019) (following client class member's objection, the court partially unsealed a portion of class counsels' bid to become class counsel and returned $650,268.62 in expenses to account for objection that class counsel was overcompensated under the terms of their bid; client class member seeks to return tens of millions more to the class on appeal); *In re Lithium Ion Batteries Antitrust Litigation*, 13-md-02420, Dkt. 2005 (N.D. Cal. Oct. 27, 2017) (reducing class counsels' fees from 25% to 10% consistent with objection of client; fee ultimately vacated by Court of Appeals for the Ninth Circuit in *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 231, 232-33 (9th Cir. 2019)). Mr. Clore's experience in class action litigation is assisting class members in objecting to unfair settlements and excessive fee requests.

**Christopher A. Bandas**
Bandas Law Firm, P.C.

Mr. Bandas has 24 years' experience in civil litigation, licensed in Texas since 1993. He is a member in good standing of the State Bar of Texas, and is admitted to practice in various federal courts across the nation. He graduated from the University of Houston Law Center, where he served an associate editor of the Houston Law Review. After years of work with a respected defense firm in Corpus Christi, Texas, Mr. Bandas started his own plaintiff's firm in 2005. Though he has been criticized by some courts for his representation of objecting class members, he has also assisted them in benefitting classes on numerous occasions. See Exhibit 3. Mr. Bandas's experience in class action litigation is assisting class members in objecting to unfair settlements and excessive fee requests.

<u>Cases in Which Robert Clore, Christopher Bandas, and/or the Bandas Law Firm, P.C. have Represented Class Members in Filing an Objection to a Class Action Settlement in the Preceding Five Years.[1]</u>

1. Cross v. Wells Fargo, 15-1270, United States District Court, Northern District of Georgia. Trial court reduced class counsels' fees by around $500,000 for the benefit of the class but otherwise overruled objection.

2. In re Optical Disk Drive Products, 10-2143, United States District Court, Northern District of California, two objections overruled by the district court and pending on appeal in the Ninth Circuit;[2] on February 21, 2019, in the third objection pending before the district court, the Court unsealed a fee bid (court unsealed one page) consistent with objection, and denied class counsel $650,268.62 in expenses to account for client's objection that class counsel had already been dramatically overpaid under their bid used to secure class counsel status. Objection otherwise overruled.

---

[1] This represents all of the cases in which Mr. Bandas, Robert Clore, and/or the Bandas Law Firm have represented class members in filing an objection to a class action settlement in the preceding five years, to the best of their recollection and after reviewing their records, performing searches on Pacer, and looking on www.serialobjector.com. It should be noted that Mr. Clore was not associated with the Bandas Law Firm until 2016; thus he was not associated with some of the listed objections. Mr. Clore never represented an objecting class member before his employment with Bandas Law Firm, P.C. If any objection is omitted from this list, it is because a lack of recollection or record of having objected in any other cases. Due to a server malfunction at the Bandas Law Firm, P.C. that occurred during the summer, 2017, Mr. Bandas' office lost a considerable amount of records. As such, it is possible that there may be objections not listed which Objector's counsel were unable to recall and which did not appear in their records. Any omission is wholly inadvertent and counsel will take immediate steps to supplement this disclosure should any such discrepancies come to the attention of counsel.

[2] *See Hagens Berman's $31 Million Consumer Antitrust Fee Award at Risk*, Bloomberg Law (Oct. 21, 2019), accessible at https://news.bloomberglaw.com/class-action/hagens-bermans-31-million-consumer-antitrust-fee-award-at-risk.; Dorothy Atkins, *9th Circuit Judge "Concerned" Over Hagens Berman's $42 M Fees*, Law360 (Oct. 21, 2019), accessible at https://www.law360.com/appellate/articles/1211568/9th-circ-judge-concerned-over-hagens-berman-s-42m-fees.

1

3. In re Lithium Ion Batteries Antitrust Litigation, 13-md-02420, United States District Court, Northern District of California. District court reduced class counsels' fees from 25% to 10% consistent with objection of client; objection otherwise overruled.

4. Jeffrey A. Thomas v. Dun and Bradstreet Credibility Corp, 15-cv-03194, United States District Court, Central District of California. District court cut class counsels' attorneys' fees from 30% to 27% for the benefit of the class, consistent with objection; objection otherwise overruled.

5. Boise v. Ace American Insurance, 15-21264, United States District Court, Southern District of Florida. District court overruled objection after class counsel responded with lodestar material requested by objector.

6. Edwards v. National Milk Producers Federation, 11-cv-04766, United States District Court, Northern District of California. Class counsels' attorneys' fees reduced by $4.3 million for the benefit of the class, consistent with client's objection; objection otherwise overruled. Appeal dismissed.

7. Birchmeier v. Caribbean Cruise Line, 12-cv-04069, United States District Court, Northern District of Illinois. Trial court reduced class counsels' fee between $3-$6 million, depending on the results of the claims process, directly benefitting the class; otherwise objection overruled. Affirmed on appeal.

8. Rawa, et al. v. Monsanto Co., 4:17-cv-01252. Fees reduced by around $1 million consistent with objection; objection otherwise overruled. Pending on appeal.

9. Duncan v. JPMorgan Chase Bank 14-cv-00912, United States District Court, Western District of Texas. Trial court reduced class counsels' attorneys' fees by $1.2 million for the benefit of the class, consistent with the objection of client. Objection otherwise overruled. Appeal dismissed.

10. Abante Rooter and Plumbing, Inc. v. Pivotal Payments Inc., 3:16-cv-05486-JCS, United States District Court, Northern District of California. Trial court

reduced class counsels' fees by $450,000 for the benefit of the class, consistent with the objection of the client. Court also ordered class counsel to produce financial records justifying settlement to objecting class member for inspection. Objection otherwise overruled; appeal dismissed.

11. In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing and Sales Practice Litigation, MDL No. 1:16MD2743, United States District Court, Eastern District of Virginia. Trial court reduced class counsels' fees by around $1 million for the benefit of the class; objection otherwise overruled. Appeal pending.

12. Farnham v. Caribou Coffee Company, Inc., 16-CV-00295-wmc, United States District Court, Western District of Washington. Trial court reduced fees by around $100,000 but otherwise overruled objection. Appeal dismissed.

13. Saltzman v. Pella Corporation, 06-cv-04481, United States District Court, Northern District of Illinois, Eastern Division. Objection filed to the first settlement resulted in reversal of settlement approval by the Seventh Circuit. Objection to the second settlement withdrawn.

14. Medeiros v. HSBC, Case No. 12-885, 15-9093, United States District Court, Central District of California. Objection overruled; appeal dismissed.

15. Markos v. Wells Fargo Bank, 15-cv-01156, United States District Court, Northern District of Georgia. Objection overruled.

16. Williamson v. McAfee, 14-cv-00158, United States District Court, Northern District of California. Objection overruled. Appeal dismissed.

17. Cipro Cases I & II, Judicial Council Coordination Proceeding Nos. 4154 and 4220, Superior Court of San Diego, objection overruled, appeal dismissed for lack of jurisdiction.

18. In re Syngenta AG MIR 162 Corn Litigation, Master File No. 2:14-MD-02591-JWL-JPO, MDL No. 2591, United States District Court for the District of Kansas, objection overruled, pending on appeal.

19. Farrell, et al. v. Bank of America, N.A., 3:16-cv-00492, United States District Court, Southern District of California. Objection overruled. Pending on appeal.

20. Jabbari, et al. v. Wells Fargo & Co. and Wells Fargo Bank, N.A., 15-cv-02159, United States District Court, Northern District of California, objection overruled, pending on appeal.

21. McKnight, et al. v. Uber Technologies, 3:14-cv-05615, United States District Court, Northern District of California. Objection pending before the district court.

22. Siciliano, et al. v. Apple, Inc., 2013-1-CV-257676, Superior Court of California, County of Santa Clara. Objection overruled; appeal dismissed.

23. Farenth v. Walmart Stores, Inc., G.D. 13-11472, Court of Common Pleas, Allegheny County, Pennsylvania. Objection overruled.

24. Schwartz v. Avis, No. 11-4052, United States District Court, District of New Jersey. Objection overruled. Appeal dismissed.

25. Sanborn v. Viridian Energy, 3:14-cv-01731, United States District Court, District of Connecticut. Objection overruled.

26. Perkins v. Linkedin, 13-4303 (N.D. Cal); 16-15430, United States Court of Appeals, Ninth Circuit. Appeared on appeal. Appeal dismissed.

27. In re: Automotive Parts Antitrust Litigation, 12-2311, 13-903, 13-1003, 13-2203, United States District Court, Eastern District of Michigan, objection overruled, appeal dismissed.

28. Chambers v. Whirlpool, Case No. 8:11-cv-01733, United States District Court, Central District of California, objection overruled, appeal pending in the Ninth Circuit.

29. Ebarle et al v. Lifelock, Inc., Case No. 3-15-cv-258, United States District Court, Northern District of California. Objection overruled; appeal dismissed.

30. In re Life Time Fitness, Inc TCPA Litigation, 14-md-02564, United States District Court, District of Minnesota. Objection overruled. Affirmed on appeal.

31. Sanchez-Knutson v. Ford Explorer, United States District Court, Southern District of Florida, 14-61344. Objection overruled. Appeal dismissed.

32. Clark v. Gannett, 16 CH 06603, Circuit Court, Cook County Illinois; objection struck as contempt for objector failing to appear for hearing; appeal dismissed for lack of jurisdiction.

33. In re: Blue Buffalo Company LTD. Marking and Sales Practices Litigation, 14-md-2562, United States District Court, Eastern District of Missouri. Objection overruled; affirmed on appeal.

34. Garber, et al. v. Office of the Commissioner of Major League Baseball; Case No. 12-cv-03704, United States District Court, Southern District of New York. Objection withdrawn, appeal withdrawn. Court admonishes Mr. Bandas in an order denying sanctions.

35. Fauley et al v. Metropolitan Life, Storick, 14 CH 1518, Circuit Court, Lake County Illinois. Objection overruled, appeal dismissed

36. Wright v. Nationstar Mortgage, 14-cv-10457, United States District Court, Northern District of Illinois. Objection withdrawn.

37. Mehigan v. Ascena Retail Group 15-cv-00724, United States District Court, Eastern District of Pennsylvania. Objection overruled, appeal dismissed.

38. Beck v. Harbor Freight, , Court of Common Pleas, Lake County Ohio. Objection overruled, appeal dismissed

39. In re Electronic Books Antitrust Litigation, No. 11-md-02293 (DLC), Southern District of New York. Objection overruled, no appeal filed.

40. Circeo-Loudon et al v. Green Tree Servicing, 14-cv-21384, United States District Court, Southern District of Florida. Objection withdrawn.

41. Cole v. Nibco, Inc., 13-7871, United States District Court, District of New Jersey. Objection withdrawn.

42. In re: Takata Airbag Product Liability Litigation, Master File No. 15-MD-02599, S.D. Fla. Case No. 1:14-cv-24009, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed.

43. Vergara v. Uber Technologies, 15-cv-06942, United States District Court, Northern District of Illinois. Objection overruled, represented client only on appeal, appeal dismissed.

44. Thomas Jackson v. Petrohawk Energy Corp. Shareholder Litig., No. 1142124, 129th District Court, Harris County, Texas. Objection overruled, appeal dismissed by First District Court of Appeals, Texas.

## CLASS ACTION OBJECTOR
## POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ("Agreement") is made between MIKELL WEST ("Client(s)" or "you") and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as follows:

**I.      SCOPE AND METHOD OF REPRESENTATION**

1.1     **Attorneys' Legal Services.**  You agree Attorneys will: Prepare and file on your behalf an objection to proposed class action settlements in the following matter and represent you in any appeal there from (the "Objection"): In re Equifax Inc. Customer Data , In the United States District Court, Northern District of Georgia.

1.2     **Method of Representation.** BLF is a Texas law firm located at 500 N. Shoreline, Suite 1020, Corpus Christi, Texas 78401, (361) 698-5200. Our lawyers are licensed in Texas and in certain federal courts. Attorneys will seek admission before the Court *pro hac vice* and/or as required by the applicable federal and/or state and/or local rules of practice applicable this litigation and/or will seek to associate local counsel in order to effectuate this representation in compliance with any such rules. Client authorizes that Attorneys prepare any Objection(s) for filing with the Court and, if necessary, any appeals there from.

1.3     **Purpose of Representation:** As a member of the above referenced class, your legal rights are affected by the proposed settlement in that case. As a class member, you have the right to comment and object to the proposed settlement as prescribed by the Court in the notice of proposed class action settlement and Rule 23 of the Federal Rules of Civil Procedure.  As a class member, you have the right to seek legal advice and have a lawyer represent you with respect to making any comments or objections to the proposed settlement. You acknowledge that, prior to the execution of this agreement, you contacted me seeking legal advice about your rights and options as a class member.  You further acknowledge the following: (1) that you were not solicited by me or any other lawyer; (2) you have not been paid or promised any money, incentive or any other consideration to assert your rights as a class member with an interest in the proposed settlement; and (3) you authorize the disclosure of this fee agreement to the Court or any counsel in the case if requested.

1.4     The scope of our representation is limited. We will craft the legal arguments used in your objection and handle the logistics of filing the objection. In general, Bandas Law Firm will make an appearance in the applicable court(s) on your behalf. In the event of adverse decisions that we believe raise meritorious appellate issues, we will file a notice of appeal on your behalf, and either make an appearance or retain an attorney to make an appearance in appellate proceedings.

2.      **YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR**

2.1     You represent that you are a member of the proposed settlement class based upon your review of the class definition contained in the class notice you have reviewed at the following website: https://www.equifaxbreachsettlement.com/

2.2     If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3     Subject to the limitations in Paragraph 3.3 below, in return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal there from without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal there from, including the right to approve any settlement or resolution of same.

3.      **ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU**

3.1     **Class Action Settlement:**  If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (If a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so).  Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member.  You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2     **Incentive Award or Payment:** Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector.  This is referred to herein as an Incentive Award or Incentive payment.  You understand any incentive award or payment sought will never exceed $5,000.  You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all. You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you.  No incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award.  In the event an incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

**3.3**   **Attorneys' Fees**:  You will not be responsible to pay attorneys' fees or expenses of any kind.  Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above.  You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal there from if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws.  The attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any.  You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2. You further acknowledge that Attorneys may seek and/or receive fees either through application to the Court and/or as a negotiated amount.  Client acknowledges that Attorneys shall have the right to seek and/or compromise any attorneys fees independently of Client.

**4.**   **CONFLICTS OF INTEREST**

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object.  You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal there from.

**5.**   **ADMINISTRATIVE MATTERS**

**5.1**   **Termination:**  Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

**5.2**   **Association of Co-counsel:** Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

**5.3**   **No Guaranty of Results:**  Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter.  You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4     **Deposition:** The class notice indicates that the attorneys representing the class may attempt to take your deposition. You will not be responsible for any costs associated with the deposition, and the Bandas Law Firm, P.C. and/or counsel hired by the Bandas Law Firm, P.C. will represent and be present with you during any deposition should one go forward. The attorneys taking your deposition may inquire about personal matters and criticize your objection. They may also have criticisms of the Bandas Law Firm, P.C. for its prior representation of other objecting class members. Class Counsel frequently seek to intimidate objectors through questions intended to create fear and uncertainty. They may ask you questions about instances where Courts have criticized objectors and their counsel generally, and Bandas Law Firm, P.C. specifically. They are unlikely to ask you any question where objectors generally have won, or where Bandas Law Firm, P.C. specifically has won on behalf of their client. You represent and warrant that you acknowledge that you have the right and opportunity to ask your lawyers about any and all instances where Bandas Law Firm, P.C. and/or its lawyers have prevailed and/or been criticized by Courts and/or lost objections and/or appeals. You further represent and warrant that by signing your objection and proceeding with this process that any questions regarding this process and your lawyers' prior work in this area have been answered to your satisfaction. Finally, you acknowledge that much of the narrative and rhetoric that Class Counsel has about objectors generally, and your lawyers specifically, is publicly available information that you can access through Google searches and by consulting websites hosted by Class Action lawyers such as https://www.serialobjector.com/ This website is maintained and paid for by class action attorneys who seek to discourage objections and scrutiny of their settlements and protect their own fee awards.

5.5     **Entire Agreement:** This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto. This Agreement shall not be modified except by written agreement signed by both parties.

I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

Signed and accepted on this 5th day of November, 2019.

**Client(s):**

_____
Mikell West

**Attorneys:**

_____
Christopher A. Bandas

# McKenney & Froelich
### Attorneys at Law

William J. McKenney (GA & NY)
Jerome J. Froelich, Jr. (GA & NJ)

1360 Peachtree Street
One Midtown Plaza, Suite 910
Atlanta, Georgia 30309
www.mckenneyfroelichlaw.com

Telephone
(404) 881-1111
Facsimile
(404) 881-8040

November 19, 2019

*Personal and Confidential*

Mr. Robert Clore, Esq.
Bandas Law Firm PC
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401-0353

*RE:* *In Re: Equifax Inc., Customer Data Security Breach Litigation Case No.: 1:17MD2800TWT (NDGA)*

Dear Robert:

This will confirm our agreement whereby I will be co-counsel with your firm and enter an appearance on behalf of Objector Mikell West to the settlement of the Class Action case against Equifax, reference above, in the United States District Court for the Northern District of Georgia. In return you will send me a retainer of $10,000.00 to be paid no later than December 1, 2019. In addition to the $10,000.00 I will receive 15% of any of the amounts you receive in any monies you receive in the Equifax Inc. case. The $10,000.00 will be deducted from any money owed me on the 15% fee.

Very Truly Yours,

Jerome J. Froelich, Jr.

JJF/apk

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No. |
| _____ | ) | |
| *Defendant* | ) | |

### APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

_____ .

Date:  _____

_____
*Attorney's signature*

_____
*Printed name and bar number*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

_____
*FAX number*

September 22, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received
SEP 25 2019
BY JNDLA

Re:   Equifax Data Breach Lawsuit
      *In re: Equifax Inc. Customer Data Security Breach Litigation*
      Case No. 1:17-md-2800-TWT

Dear Judge Thrash:

I have received notification that I am a member of the settlement class in the lawsuit referenced above.  My claim number is P5NW6VLPAE.

I object to the proposed settlement because it does not provide a remedy that is even close to being sufficient for the victims.  Indeed, the F.T.C. has admitted that the settlement proceeds are woefully inadequate.  Equifax exposed the personal financial information of millions of people.  It is unconscionable that Equifax now has set aside only $31 million for claims.  News reports indicate that 147 million people were affected by the breach.  The settlement fund thus provides that every person affected would receive about twenty-one cents.

When the government sued Equifax – and WON – I expected the government to pursue a reasonable remedy on my behalf.  I feel as if I have been deceived.  I understand that the chances of my ever receiving the purported $125.00 settlement payment offered by Equifax are slim to none.   And frankly, the alternative option of having Equifax monitor my credit is deeply concerning.  That is an unacceptable remedy.

I urge this Court to reject the proposed settlement and to demand that Equifax provide a settlement amount that is fair and equitable, considering the grave harm caused by its malfeasance.

I have not objected to any class action settlements in the last five years.  Indeed, I do not believe I have ever objected to a class action settlement.

I do not intend to appear in person at the Fairness Hearing on December 19, 2019.

Sincerely,

Millie Baumbusch
145 15th Street NE
Apt. 629
Atlanta, GA 30309

**Millie Baumbusch**
145 15th St. NE, Apt. 629
Atlanta, GA 30309

ATLANTA METRO 300

23 SEP 2019 PM9 L

SEP 25 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

```
┌─────────────────────┐
│      Received        │
│                      │
│     SEP 30 2019      │
│                      │
│      by JNDLA        │
└─────────────────────┘
```

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

We are members of the settlement class.  We received letters from Equifax stating we are.

The settlement offers 10 years of credit monitoring or a $250 settlement.  Since we already have credit monitoring, we chose the settlement.  Subsequently, we filed statements with them stating we already have credit monitoring through Lifelock.  All of this was done electronically on the settlement website.

Apparently, if all of the millions of us affected by their data breach file for the $250 settlement, we will all receive 21¢ (that is not a typo, that is twenty one cents).  This is a slap on the wrist for Equifax and an insult to those of us affected by their breach.

We have not objected to any class settlements in the past five (5) years.

We do not intend to appear at the Fairness Hearing, either in person or through a lawyer.  21¢ each will not compensate us for the cost of doing so.


*Milton D. Weedon*
Milton D. Weedon, Jr.


*Jacquelyn Ann Weedon*
Jacquelyn Ann Weedon


336 Woody Circle
Tryon, NC 28782

September 25, 2019

SEP 3 0 2019

Jacquelyn Weedon
336 Woody Cir
Tryon, NC 28782



Equifax Data Breach Class Action Settlement Administrator
Attn: OBJECTION
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Monica Beisel
1302 S Park Street
San Angelo, Texas 76901
October 20,2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
% JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

To whom it may concern:

I am writing to ask the Court to deny approval of the Equifax Data Breach Lawsuit settlement on the grounds that the settlement is not fair, reasonable, and is woefully inadequate. The sheer number of accounts (therefore people) affected was staggering (>147 million); the egregious behavior of Equifax was alarming (they knew but did not notify breached account holder for MONTHS) and then they were not prepared for those affected to help secure the lost data. I spent many hours researching the best way to secure the data of myself, my husband and my eldest son (19 yo at the time of the incident). I also spent more than $60 to freeze our credit accounts with the other credit reporting companies. I am thankful that the law now states freezes and thaws are free of charge but at that time, credit reporting companies were all charging a fee.

Charlie Warzel summoned up the settlement well: "Equifax exposed personal financial information, was sued by the government and settled. The government publicly touted a cash reward alternative of up to $125 to victims without ensuring enough money had been set aside to guarantee the max amount for every possible person affected; the government backtracked on its statement; eventually, the Equifax settlement team sent a mid-weekend email adding a new hurdle for victims to claim their money. And the cash settlement? "Forget about the $125 alternative," the Los Angeles Times columnist Michael Hiltzik wrote. "It doesn't really exist in the real world."" (NYT Op/Ed, 9/16/2019)

I am a member of the settlement class because I qualify on Equifax's breach tool site as being someone impacted by the security breach. I have never objected to a class action settlement in the last 5 years. I do not intend to appear at the Fairness Hearing either in person or through a lawyer.

With gratitude,

Monica Beisel

Received
OCT 2 4 2019
by JNDLA

Betsy
1302 S. Park St.
SA, TX 76101

OCT 24 2019

Equifax Data Breach Class Action Settlement Admin
ATT: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111 - 9418

Received
OCT 24 2019
by JNDLA

Received
OCT 24 2019
by JNDLA

Murali S Kulathungam

Received

AUG 19 2019

by JNDLA

2465 Centreville Rd
#J17-219
Herndon, VA  20171

13 August 2019

Re:     Equifax Inc. Customer Data Security Breach Litigation
        Case No. 1:17-md-2800-TWT

To Whom It May Concern,

I am a member of the settlement class in the above referenced case.  I confirmed this through the https://eligibility.equifaxbreachsettlement.com/en/eligibility website.  I formally object to the terms of the settlement that have been announced.

The data breach at Equifax impacted half of all Americans.  Americans who have no choice in whether they want to do business with Equifax or not.  We are forced into this business relationship and have no ability to extract ourselves from it.  As such, Equifax is in a position to guard our data as well or as poorly as they wish, with no significant recourse, and they have demonstrated that they do not safeguard our data adequately.  Equifax knew about the breach long before it was disclosed; in fact their CIO was found guilty of selling Equifax stock before the breach was announced, profiting from that inside knowledge.

The settlement options are for 10 years of credit monitoring or $125 if you already have it.  What value is credit monitoring that expires?  My name, social security number, and all of my history, which may have been included in the breach, won't change.  In 10 years and one day, my data could be compromised again, and the free monitoring would have expired.  Credit monitoring itself isn't terribly valuable; it purports to notify us of 'suspicious' changes in our credit report.  So if a new credit card is opened at a bank where I already have an account, is that suspicious?  How will the monitoring know that a new credit account is 'suspicious'?  And, given their lack of timeliness in notifying people of the breach, how long will they wait to tell us about 'suspicious' activity?  I have zero confidence in the efficacy of the credit monitoring, a service which I don't want but have no choice but to accept under the terms of the agreement.

In addition, the settlement is barely a slap on the wrist for Equifax, which means that there is no significant motivation for them not to engage in similar behavior in the future.  This settlement is an insult to all Americans who are forced to do business with Equifax and their peers without an ability to disengage from any business relationship with those companies.

In summary, **I object to the settlement, and I request that the court deny the settlement in its current form and send it back to the FTC for reconsideration.**

I have not objected to any other class action settlements in the past.  I do not intend to appear at the Fairness Hearing, but if my presence and participation are requested by the court, I can make myself available.

Thank you

Murali S Kulathungam

Murali S. Kulathungam
2465 Centreville Rd # J17-219
Herndon, VA 20171-4586



NOVA 220
14 AUG 2019  PM 6 L

Equifax Data Breach Class Action
Settlement Administration
Attn: OBJECTION
c/o JND Legal Administration
PO Box 91318
Seattle  WA   98111-9418

98111-941810

**Nancy and Gary Banks**
**890 Elmore Mountain Rd.**
**Morrisville, VT 05661**

**Tel: 617-835-5426**

Received
NOV 1 9 2019
by JNDLA

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

Dear Administrator,

    *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

Equifax's job is to collect massive amounts of data so they can assess the credit worthy of each of us – so a determination can be made as to whether any of us can get loans or other credit services.  Part of that deal is that Equifax is supposed to protect the data and on that job – they failed.  In response a settlement was reached, until it was determined it would cost too much money.  And so we were given 30 days – a deadline that I missed to prove new facts. (Yes I do have credit monitoring)

Who exactly is this settlement designed to help?  The customers who were injured or protect Equifax?  Now it becomes my job to check and double-check all my credit to ensure that no one is using my data incorrectly.  <u>That is simply wrong</u>.  It is time that the companies who take our data so easily take responsibility for ensuring its safety.  A company like Equifax is happy to sell itself to businesses around the world making millions.  I am happy they do this, but there are costs associated with this service and I do not feel that I am the one who should absorb this cost.  Equifax should.

Equifax made a deal. It is up to them to live with the deal they made.  If it was fair in round 1, it should be fair today.  I urge you to reject this settlement. I might also note this is the first objection I have made in a case. It is only by making settlements actually painful behaviors will change.

Thank you for your consideration,

*Nancy Banks* /11/14/19
/11/14/19

Nancy and Gary Banks



Banks
890 Elmore Mtn. Rd.
Morrisville, VT
05661

NOV 19 2019

7019 1120 0000 9642 2730

Equifax Data Breach Settlement Administrator
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

U.S. POSTAGE PAID
FCM LETTER
MORRISVILLE, VT
0566
NOV 16, 19
AMOUNT
$6.85
R2303S100624-07

1000
98111



**Nancy Kaplan**
**300 Deal Lake Dr., #10**
**Asbury Park, NJ  07712**
914-714-2299
msnancykaplan@gmail.com

September 23, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To whom it may concern,

I am writing to notify you of my objection to the Equifax settlement. I have never objected to a class action settlement, but I consider the current offer from Equifax inadequate and unacceptable. Below are the facts:

I learned I was part of the breach when I entered my social security number into the Equifax website set up for consumers following disclosure of the breach. I filed a claim and received confirmation of claim receipt.

The reason I object to the settlement is that initially Equifax said it would reimburse affected consumers up to $125 in compensation. Now I have been informed that I can get free credit monitoring instead. I don't want free credit monitoring. When I learned of the breach, I immediately set about freezing my credit with at least 4 of the major credit reporting agencies, which took 5-6 hours of my time. As a precaution, my credit remains frozen, which means the free monitoring is of no use to me. I want the cash compensation Equifax originally offered and no less.

I will not be attending the Fairness Hearing and am not represented by an attorney, but I want you to know of this consumer's thoughts on this settlement.  My contact information is above.

Sincerely,

Nancy Kaplan



Nancy Kaplan
300 Deal Lake Dr., #10
Asbury Park, NJ 07712

SEP 2 4 2019

Equifax Data Breach Class Action Settlement
Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Nathan Fong
2203 Hunters Chase
Bel Air, MD 21015
September 16, 2019

Received
SEP 30 2019
by JNDLA

United States District Court for the Northern District of Georgia
Attn: Honorable Thomas W. Thrash Jr.
Richard B. Russell Federal Building and United States Courthouse
75 Ted Turner Dr., SW,
Atlanta, GA 30303-3309

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Your Honor:

I was one of the 147 million Americans whose personal information was compromised in the Equifax breach.

I strongly object to the settlement offered by Equifax. I believe that protecting privacy does matter and that those who expose entrusted personal information owe victims real compensation.

The $31 million dollar limit proposed by Equifax, which could copmensate victims as little as $0.21 each, is a burlesque of justice. I ask the court to reject Equifax's attempt at these scandalous hijinks.

Personally, I have made many sacrifices to protect my credit and pay my bills and taxes on time. I thank you for your time and consideration in this matter.

Also, per the requirements listed on the Equifax breach settlement website, I will state that I have never objected to another class action settlement, and I will not attend the hearing.

Respectfully,

Nathan Fong



BALTIMORE
MD 212
27 SEP 19
PM 5 L

SEP 3 0 2019

EQUIFAX DATA BREACH
SETTLEMENT ADMINISTRATION
ATTN: OBJECTION
C/O JND LEGAL ADMINISTRATION
PO BOX 91318
SEATTLE, WA 98111-9418

Nate Foy

2203 Hunters Chase

Bel Air, MD 21015

October 19, 2019

Received
OCT 2 4 2019
by JNDLA

To Whom It May Concern,

This letter is in Re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT. As a US citizen who was direct effected by the Equifax data breach, I am a member of the settlement class. I confirmed that am part of the class using the Equifax online tool located at https://www.equifaxbreachsettlement.com/eligibility-check

I am writing to strongly object to the Equifax settlement and urge the court to deny approval. This is only class action settlement I have objected to in the previous five (5) years.

This letter outlines each of my objections as well as the legal and factual basis for those objections.

**Objection 1: Insufficient Remediation of Harms.**

Due to the size of the class and the magnitude of each claim, most members of the class will only be entitled to a very small amount of compensation in the form of free credit monitoring. Recommendations from legal authorities including the FTC already urge class members to choose this form of renumeration[1]. Therefore, the court should only accept this settlement if credit monitoring remediates a significant amount of the harm afflicted onto the class by Equifax's negligent behavior. As explained below, real harms suffered by class members far exceed the value of free credit monitoring.

I object to the settlement because **free credit monitoring does not remediate many substantial real sources of harm suffered by the class**. These harms fall into two broad categories.

The first category of harms that are not remediated by free credit monitoring are those harms directly related to the breach. For example, the following types of harm are not remediated by free credit monitoring:

1. the harm of monitoring credit from the time of the breach until free credit monitoring is obtained.
2. the harm of contacting each online account that uses personally identifying information (PII) for account recovery purposes and informing the company that an alternative method should be used. This process took a substantial amount of time that, if billed at a rate corresponding to my salary, would cost in excess of $1,000.00 (already far more than the maximum amount awarded by the settlement).

---

[1] Juliana Henderson (FTC Office of Public Affairs). *FTC Encourages Consumers to Opt for Free Credit Monitoring, as part of Equifax Settlement*. Online. https://www.ftc.gov/news-events/press-releases/2019/07/ftc-encourages-consumers-opt-free-credit-monitoring-part-equifax. Retrieved Oct. 19, 2019.

3. the harm to companies that were forced to adopt business processes in response to the leak, and the real harm that those companies passed on to the class in the form of increased costs.
4. the harm caused by attackers using personally identifying information (PII) obtained from the breach to attack bank accounts, brokerage accounts, utility companies, online stores, and other forms of online accounts that use continue to use PII as a form of authentication.

A second substantial source of harms suffered by the class and not remediated by credit monitoring is more subtle and pernicious. The enormous size of the breach relative to the US population means that *the Equifax breach has a multiplicative impact on the total harm wrought by other (non-Equifax) data breaches in the past, present, and future — even breaches in which PII is better-protected*.

As described in a recent Nature paper, attackers may use a new class of machine learning algorithms called generative models to leverage the data obtained from the Equifax data breach to de-anonymize otherwise anonymous and sensitive PII[2]. I believe that the unique scope of the Equifax breach means that Equifax has enabled attacks that would have otherwise not been possible. The impact of these attacks is certainly not limited to actions whose impact is mitigated by credit monitoring alone.

## Objection 2: Insufficient Punitive Impact to Serve as an Effective Deterrent to Future Negligence by Equifax and Others.

The vast majority of the value of the settlement is tied up in free credit monitoring that was already free. I urge the court to force Equifax to carry the full financial burden for its negligence, and to pay for that burden in real money as opposed to worthless coupons whose value is over-inflated.

I am available on any day between 11/19/2019 and 11/22/2019 inclusive. My phone number is 314-276-2787. Please contact me prior to scheduling a deposition or hearing if my physical presence is necessary.

Regards,

Nathan Fulton, Ph.D.
8 Mullins Ct. #1
Cambridge, MA
02141

---

[2]   Luc Rocher, Julien M. Hendrickx, Yves-Alexandre de Montjoye. Estimating the success of re-identifications in incomplete datasets using generative models. Nature Communications. Online. https://www.nature.com/articles/s41467-019-10933-3. Accessed October 17, 2019.



Cambridge, MA
02141

OCT 24 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection Administrator
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

BOSTON MA 021
21 OCT 2019 PM 5

98111-9418

Received
OCT 24 2019
by JNDLA

**Objection to Settlement**

September 18, 2019

RE: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

My name is Nathan Miller, my address is 231 SW I Street, Grants Pass, OR 97526.

I am a member of the Equifax settlement because my information was exposed in their recent high profile data breach.  I have file number P8RK3-YPWCG with the claims administrator and have fulfilled all their obligations to date to receive up to $125 in compensation.

I have not objected to any other class settlements in the past 5 years.

I do not plan to attend the fairness hearing.

---

I object to the fairness of the payout by Equifax to class members who have opted to receive the $125 payment.  It comes to my attention that only a very small portion of the actual proceeds was designated to this payment.  It was a mistake to include such a small percentage of the proceeds to paying members a cash settlement and a higher percentage of the overall settlement should be included for the payout.  This feels designed to save Equifax or their lawyers money and payout as little as possible to the actual victims.

As a victim of their negligence I will forever have the potential of suffering an identity crime. That liability, created entirely by their negligence and without my permission to even have my data on file, could and probably will cost me tens of thousands of dollars over my lifetime, probably more.  The meager $125 settlement is not nearly enough first off, but the fact that it will most likely be less than that makes it even worse.

In summary, the victims of this negligence by Equifax, or not being fairly compensated for their damages with the current structure of the payment.

Nathan Miller

Received
SEP 23 2019
by JNDLA

MEDFORD OR 975

20 SEP 2019 PM 1 T

NATHAN MILLER
231 SW I ST
GRANTS PASS, OR 97526

Equifax Data Breach Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

SEP 23 2019

98111⑨9418

Received

AUG 1 9 2019

by JNDLA

August 16, 2019

Nathan Charles Speed
868 19th St.
Lakeport, CA 95453

***In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT**

**Equifax Data Breach Lawsuit**

Your Honor,

I am a member of the settlement class for this case, according to the website set up to
check whether a person's information was affected by the 2017 Equifax breach, and have already
filed a claim asking for damages for the time and money my family spent and continue to spend
protecting my credit history. I have objected to settlement of no other class action lawsuits in the
last five years. I do not intend to appear at the Fairness Hearing for this case.

I'm objecting to the proposed settlement of this case because the damages being settled
for are *prima facie* insufficient to cover the unbelievable damage Equifax's wantonly
irresponsible behavior did to the security of the personal information of over half of the adults in
the United States. $700 million, roughly- a significant portion of which will not be seen by the
people who were part of the data breach- frankly is hardly even a small fraction of the past,
present and future damage they did. However, the question is not on what legal basis the
settlement amount should be raised, but **what legal basis was used to create such a low
settlement to begin with**? That Equifax doesn't have enough money to cover the damage it did?
Whether that's even true or not in Equifax's case, obviously it's not a defense to any lawsuit.
You can't just adjust the facts of damages downward because it's inconvenient to be held
accountable. And on any other basis, this settlement does not line up with the facts of the case.
The settlement should never have been made for such a low sum, and it should be rejected.

This company did not care enough to sufficiently protect the sensitive data in its
possession, data often being collected *against* the wishes of the people about whom they were
collecting it, and they did what likely amounts to thousands of dollars' worth of personal
damages, on average, to every American adult affected by their data breach, given the time and

money people are having to spend just to make up for Equifax's irresponsibility, the risk to their identities created, and the actual damages that will continue to be done well into the future as identities continue to be stolen.   In fact, if we're looking for justice, here, it's not obvious to me why the American people shouldn't just own Equifax the company outright after a travesty such as this.   We're talking about billions and billions of dollars in damages, and Equifax needs to pay for it.

The FTC failed in its duty to protect the American people with this settlement, and they need to go back to the drawing board.   Please reject the settlement so that the American people can see actual justice done.   Thank you very much, Your Honor.

Sincerely,

Nathan Speed



SAN FRANCISCO CA 940

Nathan Speed
868 19th St.
lakeport, CA 95453

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

Received
SEP 2 4 2019
by JNDLA

September 20, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In re: Equifax Inc. Customer Data Security Breach Litigation,
Case No. 1:17-md-2800-TWT

Full Name and Current Address: Neal I. Mansfield, 628 Ravenwoods Dr.,
Chesapeake, VA 23322

Personal Signature:

I feel that I am a member of the settlement class. I checked the Equifax
online site and it indicates that I am an effected customer/member of the
settlement class. I filed an online claim on July 26, 2019. My claim number
is PGE2X-Q7DAR

I object to the minimal amount of the cash payout for those of us who
already have credit monitoring services.

I have not objected to any class action settlements within the past 5 years.

I do not intend to appear at the Fairness Hearing.

Sincerely,

Neal I. Mansfield



RICHMOND VA 230

21 SEP 2019 PM 2 L

Mark Mansfield
628 Ravenwoods Dr.
Chesapeake VA 23322

SEP 2 4 2019

Equifax Data Breach Class Action Settlement Admi
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received
SEP 2 6 2019
by JNDLA

From:
Noah Kirsch
137 E. 26th St. Apt A2
New York, NY 10010

Re: *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TW

To Whom It May Concern:

As a victim of the Equifax data breach (as confirmed on the settlement website), I am outraged by the proposed settlement currently underway. It gave consumers the misleading impression that they would be adequately compensated for the breach, when in reality each person will likely receive just pennies on the dollar. I do not consent to the proposal, and I am pushing for a settlement that offers meaningful relief to victims and ensures that Equifax, and other credit companies, are more fully incentivized to protect user data down the road.

I have not previously objected to a class action settlement, and I do not currently intend to appear at the Fairness Hearing.

Signed,

Noah Kirsch



NEOPOST
09/23/2019
US POSTAGE
FIRST-CLASS MAIL
$000.50°
ZIP 07310
041M11274482

**Forbes**
499 WASHINGTON BLVD., JERSEY CITY, NJ 07310
Attn: Noah Kirsch

Equifax Data Breach Class Action Settlement Administrator

Attn: Objection
c/o JND Legal Administration
PO Box 91318
Seattle, WA
98111

SEP 2 6 2019

98111-9418108

**Noah David Levinson**
213 Grouse Hill Rd
North Abington Twp, PA 18414
570-313-6338
noahdlevinson@gmail.com

Received
OCT 01 2019
by JNDLA

25th September 2019

**United States District Court for the Northern District of Georgia**
**Equifax Data Breach Class Action Settlement Administrator**
**And All Other Relevant Judicial Bodies**
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Dear Judicial Bodies,

I object to the settlement in re: Equifax Inc. Customer Data Security Breach Litigation, Case No.
1:17-md-2800-TWT, otherwise known  as "Equifax Data Breach Lawsuit." I am a member of the
settlement class as my information was compromised in the Equifax Data Breach according to Equifax.

I object to the settlement because it is nowhere near just to the damage that Equifax has presently caused
and may cause in the future with these leaks. This corporation was given the responsibility of securing
and protecting our credit information. They broke their promise to the country, and have not been
adequately punished. The financial punishment has been minimal, considering this is an issue that affects
the majority of Americans. We do not get to opt into this system. Equifax took advantage of us and then
lost our private data. How this settlement has evolved has been catastrophic. Considering I spent nearly, if
not more than, 20 hours securing all my information, locking my accounts, calling and calling again to all
the credit agencies, I highly doubt I will be truly compensated for my time and the injustice of the
situation. But between the mishaps of the $125 distribution and the free credit monitoring, it's been a
mess. I demand further financial compensation in the settlement, and more criminal charges against
Equifax and their negligence. I feel deceived by the terms of this settlement.

I have never objected to a class action settlement before (including the last 5 years). I do not intend to
appear at the Fairness Hearing, because I live in Pennsylvania and don't have the resources to travel to the
Fairness Hearing.

Sincerely,

*Noah David Levinson*

LEHIGH VALLEY PA 180

(XX) SEP 2019 PM 3 L

OCT 01 2019

Noah David Levinson
213 Crouse Hill Rd.
N. Abington Twp, PA 18414

Equifax Data Breach Class Action
    Settlement Administrator
C/o JND Legal Administration
PO Box 91318
Seattle, WA 98111-9418

98111-941818

Norma L. Kline
413 Martha Dr.
Meadville, PA  16335

Received

NOV 1 9 2019

by JNDLA

November 16, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA  98111-9418

RE: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Greetings:

I am writing to object to the court settlement of Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT.

When the settlement was announced I verified online at the site Equifax established that my information was stolen as a result of the Equifax data breach.  Therefore, I am a member of the settlement class.  I object to the settlement because it is not fair, adequate or reasonable.  The cash settlement ($120) does not begin to cover costs associated with the liabilities associated with misuse of the data, especially as that liability covers the lifetime's of all effected.  Plus, ID protection services to be provided are of limited value or no value depending on the stolen data is misused.  The Equifax data breach has exposed 148 million people to an unacceptable degree of possible financial loss, misuse of data that adversely effects credit history and scores and related legal expenses.  The settlement does not adequately address the needs of the members of the class law suit or require Equifax to provide to address them.  I base my objections on the following:

1) The cash settlement is inadequate to cover the out of pocket expenses associated direct and indirect costs associated with ID theft. A 2014 U.S. Department of Justice (DOJ) study has determined  victims experienced a combined average loss of $1,343 (https://www.csid.com/2016/09/real-cost-identity-theft/). Another study found that the most common amount of fraudulent charges reported was $6,000, and victims reported spending an average cost of $808 to deal with their ID theft, not including lawyers' fees (https://privacyrights.org/resources/victims-speak-out-identity-theft-survey-identity-theft-victims-and-recommendations-reform).  In addition to the inadequacy of the cash settlement to address expenses within a short period of time of the settlement being announced so many people had applied for the $120 allotment that the funds obligated were deficient and the cash settlement had been reduced to about $20.

2)  A recent Government Accounting Office (GAO) study has determined: ID theft services are inadequate to address the full range of personal and financial harm; are of limited value in addressing the range of liabilities to which those effected have been exposed; and identity theft

1

service do not diminish the risks of non financial harm (e.g., medical identity theft, child identity theft, or other types of fraud). The GAO interviewed 35 academic, consumer, government, and industry experts, along with representatives of seven companies that offer identity theft services and determined that credit or identity monitoring to be of limited value (https://privacyrights.org/resources/victims-speak-out-identity-theft-survey-identity-theft-victims-and-recommendations-reform). Credit monitoring is flawed. The core of many ID-protection products is credit monitoring, which looks for fraudulent new accounts on credit reports. But most e-mail and mobile alerts from those services raise false alarms about routine changes. If fraud is detected, people might not be "warned" until days, weeks, or months after the fact )https://www.consumerreports.org/cro/magazine/2013/01/don-t-get-taken-guarding-your-id/index.htm).

3) The settlement does not adequately address the duration of liability to myself or the others effected by the data breach -- the rest of our lives. Victims face these types of problems for years after their identities are actually stolen. Fraud alerts are not effective. Further, the majority of thieves are not caught and continue misuse stolen data (https://privacyrights.org/resources/victims-speak-out-identity-theft-survey-identity-theft-victims-and-recommendations-reform).

To summarize my objections I wish to point out the inadequacies, unfairness and unreasonableness of the settlement:

1) The cash allotment does not begin to cover the potential expenses of those effected who will spend the rest of their lives dealing with multiple ramifications of the negligence of Equifax to secure a database the company knew to be vulnerable. Indeed, based on the above referenced studies the amount per person whose data was stolen needs to be increased by eight to sixty fold. Plus, cash needs to be set aside to cover legal costs.

2) A limited time credit monitoring service is in my opinion worthless and deceptive in terms of its value. I base this opinion on my own experience with the service referenced above csid.com. My personal data was stolen three times in U.S. OPM data breaches of 2005 and 2016. The Agency provided the tens of millions effected free credit monitoring for a limited period. Above I have addressed the limitations of such services here I note my experience as to what I had to do to have my personal information monitored, my unsuccessful efforts to get the credit monitoring firm to actual inform me what type of assistance they provided should I be informed that information was being misused. For the credit monitoring to be holistic the service required that I place personal information into it (e.g., bank accounts, passport, drivers license, medical insurance) that may well have exceeded the personal information stolen. After placing this information in this cookie jar that hackers know exists and will seek to gain entry I am told by company representatives their database cannot be breached. Well, that is patently untrue so I will spend no more time on that point. For several months I unsuccessfully spoke with credit monitoring company to get a clear explanation as to what their services covered to assist me should my personal records be misused, including an electronic or paper copy of the documentation their website indicated was available at my request that specified the coverage provided. In general company representatives informed me that most of the financial liability (e.g., bank account theft, fraudulent credit card purchases) I might incur or other misuse of personal information (e.g., SSN abuse) was my responsibility to address and was covered by safeguards I already had in place: credit card company protections, bank safeguards, etc. They

2

would compensate for some time spent salvaging my credit or financial loss but with limitations that were inadequate to the task. As I recall neither legal fees or nor legal services were provided. Most disturbing I never acquired the written statement that specified exactly what their services covered. Multiple times I was directed to an online written that that information would be provided at my request or directed to a nonfunctional web page where the .pdf file purportedly was available. Yes, I did place everything the service wanted into their database which consisted of everything a hacker seeking to to misuse my identity would want. Now consider what types of notifications (i.e., credit alerts) I received. Numerous over hyped alerts that turned out be notices of sex offenders now residing in my neighborhood and may be misusing my address or name. These alerts were so frequent that I began to think I was the only non sex offender living in my small city of 13,000 people. In order to ascertain whether these sex offenders were using information that can be readily acquired online by anyone at anytime I had to review the disgusting crimes. After opting out of these specific alerts about which I could do nothing I had suspended them. In the end I removed my information from the monitoring service because I saw not benefit to it and saw no personal benefit to it. The sole purpose was to give the illusion to those effected by the data breaches that U.S OPM was temporarily helping to protect us when in fact the services were inadequate to the threat and for relatively modest cost relieved of liability for the harm imposed.

To these points as to the overall worthlessness of the security monitoring services I add that the protections to my credit history and personal information was better safeguarded by implementing the measures recommended by the FTC, Consumer Reports, IRS, etc.

3) The settlement agreement required Equifax to notify in writing everyone impacted yet years after the fact I have not received such notification and had to confirm it online after learning of the settlement via the press. Why? It is not as though they did not have my name and address.

The points made above should NOT be interpreted to suggest that Equifax is without liability to provide compensation to address the misuse of the credit histories of 148 million people who have been compromised for their lifetimes by Equifax's willful repeated negligence to secure its database. Rather the settlement fails to provide fair, reasonable or or adequate compensation to those who must spend a lifetime dealing with the consequences. Since credit monitoring services are of little value to address the scope of credit history theft abuses and the monetary compensation grossly insufficient my suggestion is that the above referenced Equifax settlement be negated by the court and replaced with a new settlement. The new settlement needs to award a cash settlement to everyone whose data was stolen in this settlement and the new one. I recommend the average loss of $1343 to ID theft victims determined by DOJ times the 148 million people whose credit data was stolen = about $199 trillion. Plus, funds need to be held in escrow to cover potential legal expenses to be handled by a legal firm designated in the new settlement to represent all those effected by the data breach. I suggest an escrow of at least $5,000 for each of the 148 million people = $740 trillion. This legal service needs to be maintained for 50 years. In my estimation such a settlement would be fair, reasonable and adequate. Plus, since Equifax still has our contact information the settlement must require all those impacted be notified by certified mail within six months of the new settlement and for the same time period run ads on television during prime time and on social media to inform the public of the new settlement. Once settlement beneficiaries contact Equifax via the system provided in the certified letter Equifax will send via certified receipt required mailings a check to

3

everyone for $1343.

While I doubt the court will accept my recommended new settlement it should clearly demonstrate that the existing settlement fails to address profound adverse financial liability of the Equifax data breach on roughly half the population of the United States for the foreseeable future or justly compensate them.

I do not intend to to appear at the Fairness Hearing, either in person or through a lawyer.

Please note that I have never before objected to class action settlement.

Thank you for considering my objections to the Equifax settlement and my proposed remedy.

Sincerely,

Norma L. Kline

4

413 Martin Dr.
Meadville, PA 16335

NOV 19 2019

PITTSBURGH PA 150
16 NOV 2019 PM 1 L

98111-941818

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
C/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418