# Exhibit B - 21

Vijay Srikrishna Bhat,
1394 Sanchez Street,
San Francisco - 94131

Received
SEP 30 2019
by JNDLA

September 25th, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

Sir / Madam,

I'm a software engineer living in San Francisco, and I have been affected by the Equifax data breach - I've verified this on the settlement website https://www.equifaxbreachsettlement.com. I have not voiced objections to any other class action settlements in the past five years. I do not intend to attend the Fairness Hearing.

I'm writing to vehemently object to the settlement between Equifax and the FTC - it is an egregious case of corporate unaccountability run amuck and the perpetrators being let off with a mere slap on the wrist.

Equifax's business model is to collect data on hundreds of millions of Americans - without their knowledge or active consent - and sell it for profit to their customers. This is straight up theft since consumers have no say and don't get compensated for the use of their data. If that weren't enough, Equifax was careless enough to let hackers steal consumer data, putting 147 million Americans - more than half the country - at risk for identity theft. It costs an identity theft victim an average of $1200 to reverse the damage caused. Which means the $125 settlement amount per settlement class member was paltry to begin with. To add insult to injury, only $31 million was set aside for paying settlement class members so most people won't see a dime.

A real settlement for damage as serious as this should have been $176 billion - $1200 for each class member. Even setting aside $125 per class member should have cost them $18 billion - not $31 million. Handing serious punishments that threaten to put them out of business is the only way to make irresponsible data brokers like Equifax realize that this is a big deal and to take security seriously.

The current settlement is beyond ridiculous and shows the level of cronyism and corruption in the industry and the FTC. I strongly urge the court to keep corporate power and their cronies in check, and protect the American consumer by rejecting the settlement.

Sincerely,

Vijay Srikrishna Bhat



SAN FRANCISCO CA 940

SEP 30 2019

Equifax Data Breach Class Action Settlement
Administrator

Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

Mr. Vijay Bhat
1394 Sanchez St
San Francisco, CA 94131

317 Tranquillity Road
Middlebury, CT  06762
17 September 2019

**Equifax Data Breach Class Action Settlement Administrator**
**Attn: Objection**
**c/o JND Legal Administration**
**P.O. Box 91318**
**Seattle, WA 98111-9418**

```
Received

SEP 30 2019

by JNDLA
```

To Whom It May Concern:

We, Walter Scott Peterson and Jean M. Peterson, both of 317 Tranquillity Road, Middlebury, CT, 06762, are writing *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, in accordance with FAQ #25, to exercise our "right to tell the Court what [we] think of the settlement" and "to object to the settlement."

We individually qualify for this settlement according to FAQ #5 and the initial notice, filed the required forms in good faith, and now learn through multiple news reports that Equifax and its lawyers are twisting the appropriate effects of the settlement to ensure their benefit and deny ours.

We have never objected to a class action settlement before, but this one is totally unfair and in our opinion a perversion of the system of justice in this country.  We feel deceived by this settlement and are angered by the lengths to which we must go to receive our rightful restitution (or more likely not).

An additional email was supposedly sent to us requiring further verification of our claim, but that email has not been received, or if it was it was disguised to look like spam so we did not yet respond to it (we are looking to find a replacement to which we can respond).

We request that the Court DENY this settlement as is, in hopes that in a new, fairer settlement there will be sufficient funds to pay ALL those that Equifax harmed the full $125.

Thank you for considering our request.  We do not intend to appear at the Fairness Hearing and are not represented by a lawyer.

Truly yours,

Walter Scott Peterson

Jean M. Peterson

CC:  Office of the Attorney General, State of Connecticut, 55 Elm Street, Hartford, CT, 06106

Walter Scott & Jean M. Peterson
317 Tranquillity Road
Middlebury, CT 06762-2226

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
C/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 30 2019

17 September 2019

William Bonney
16 Oliver Street, Apt. 2
Watertown, MA 02472

RECEIVED
FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 2 4 2019

United States District Court for the Northern District of Georgia
75 Ted Turner Dr NW, Suite 2211
Atlanta, GA 30303

JAMES N. HATTEN, Clerk

By: Deputy Clerk

Dear Sir or Madam:

I believe my data was breached because of shoddy security at Equifax and I am owed a settlement in re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT.

I object to the way the settlement is proceeding; it's not fair nor reasonable. One reason is that Equifax is creating roadblocks for me to get my settlement. I filed a claim on July 29, 2019 (Claim Number: PRWLYBNDVK). On September 7, I got an inconspicuous email that asked for verification and additional information (the name of my credit monitoring service). I happened to notice the email before it went in my spam folder, which is probably where Equifax was hoping it would go.

I feel decieved by the way the settlement is proceeding.

Cordially,

William Bonney

B

Mr. William Bonney
16 Oliver St., Apt 2
Watertown, MA 02472-4715



US District Court for the Northern District of Georgia
75 Ted Turner Dr NW, Suite 2211
Atlanta, GA 30303

SEP 24 2019

BOSTON MA 021
BOSTON MA 021

re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

William A McCall
11001 N 7th ST APT 2159
PHOENIX AZ 85020-1143

I am a member of the settlement class because I received notification from a credit card company that someone attempted to open an account under my name, using my address, social security number, date of birth and possibly other information. Absent the Equifax breach, no one other than myself would have had access to this information.

I am objecting to the terms of the proposed settlement because:

- Per Yann Bastard's Sept 16th article in the New York Times, Equifax has no intention of ever paying $125 (which isn't enough anyway) to each of the 147 MILLION victims of this breach.  Having set aside a mere $31 million for claims, each claimant would receive only 21 cents from Equifax.  This is chump change and an insult.

- This minimal settlement, favorable to Equifax, gives Equifax zero incentive to make sure a breach such as this doesn't occur again.

- Credit reporting is a virtually unregulated industry and its product is disseminating private information about individuals, without consent and often without their knowledge.  This is an industry that needs to be served notice it's practices are being monitored and needs to understand that it's careless ness will be punished severely up to and including the very existence of companies that refuse to conform.

- This is a sweetheart deal that I'd guess was probably written by the industry itself without consulting consumer groups or individuals.

I have never objected to any class action settlement previously.

I do not intend to attend the Fairness hearing personally or be represented by a lawyer.

William McCall

Received
SEP 2 6 2019
by JNDLA

PHOENIX AZ 852

23 SEP 2019 PM 8 1

BILL & MARY McCALL
11001 N. 7TH ST. APT. 2159
PHOENIX, AZ 85020

SEP 2 6 2019

EQUIFAX DATA BREACH CLASS ACTION
SETTLEMENT ADMINISTRATOR
ATTN: OBJECTION
c/o JND LEGAL ADMINISTRATION
P.O. Box 91318
SEATTLE, WA 98111-9418

98111-94180



**William V. and Lisa H. Rogers**
1930 Cappelletti Court
Mountain View CA 94043
650-804-5884

Sept. 20, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Re: In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT
Claim #PZ92T-S75UA and Claim #PFA6C-K59U8

Dear Administrator,

We are two of the 147 million people affected by Equifax's negligence. As a result we placed freezes on all our credit reports, incurring a variety of fees. We had to unfreeze our reports in order to purchase a car, then redo the freezes. This took a lot of time.

We were originally pleased to hear that the Equifax settlement included compensation for the fees and time we have wasted through no fault of our own. We properly filed our claims and looked forward to our reimbursement. We even "validated" our claims in response to the recent email, even though this was obviously an attempt by Equifax to put up unnecessary obstacles and reduce the number of claims.

Now we read in the news that Equifax never set aside enough money to pay the claims. This is bad faith, pure and simple. How can the law permit a company to proceed with a settlement when they clearly had no intention of meeting their obligations under it? What is the point of government prosecution and lawsuits if the penalty for violating the law is peanuts?

We are disgusted by these bait-and-switch tactics. We have never objected to a class action settlement before, nor do we have legal representation or expect to appear in court in person. We do however ask you to reject this patently unfair settlement. Equifax needs to honor its commitment and pay all claims in full.

Sincerely,

Rogers
1930 Cappelletti Ct
Mountain View CA 94043

SEP 24 2019

Atth.
Objections

SAN FRANCISCO CA 940
21 SEP 2019 PM 3 L

Equifax Data Breach Class Action Settlement Administrator
c/o JND Legal Administration
P O Box 91318
Seattle WA 98111 - 9418

98111-941318

Sept 18 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

```
┌─────────────────────┐
│   Received          │
│   SEP 30 2019        │
│   by JNDLA          │
└─────────────────────┘
```

re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT

I believe I am a member of the Settlement Class by information provided at the website
https://www.equifaxbreachsettlement.com/file-a-claim which states that I have been impacted by the Equifax
breach.

I object to the Settlement Agreement because

- The Consumer Restitution Fund is grossly undercapitalized. 147 million individuals' data was breached.
The amount allocated including the additional payment for Out of Pocket Losses is less than $4 per
individual. This, taking the $25 per hour reimbursement rate, sums to 8.25 minutes per individual. Hence
the settlement is not adequate to meet reasonable compensation for the impacted consumers.
- Consumers have no mechanism to ensure that Equifax ceases mishandling their private data in future and
no assurance that the firm will be run with a reasonable minimum standard of competence. Consumers
have no mechanism to change these personal data, such as Social Security Number or date of birth. The
damages caused by Equifax are irrevocable, yet the compensation is trivial.
- Equifax is capable of paying a much larger settlement on a cash basis. Equifax's market capitalization is
currently 17 billion, it earns approximately $532 million in profits per year, and it pays dividends to
shareholders of $47 million per quarter.
- To my best understanding based upon reporting in the press, Equifax and its executives behaved in a
grossly negligent manner with regards to data security. For instance, Susan Mauldin, whose highest
qualification is a degree in music composition, was the Chief Security Officer. In addition to paying a fair
and reasonable amount for the direct impact upon consumers, Equifax and its executives should be
paying exemplary and punitive damages so that future absurd incompetence is deterred.
- No money is to be paid by the Equifax executives responsible for mismanaging the firm. The former CEO
retired having earned approximately $90 million in his last year and his departure was characterized as
"retired" rather than "for cause" which could allow Equifax to claw back some payments to him that could
be used towards victims' compensation.
- Equifax and its executives have taken no real skin in the game for their behavior and indeed as stated
above shown themselves to not care about the consequences of their actions. This settlement shows a
lack of responsibility taken by the firm and its leadership as well as a desire by the class's legal counsel to
sign a settlement and get a big payday.

To my recollection, I have not objected to any class action settlements in the past five years.


I do not intend to appear at the Fairness Hearing. I do not believe that pursuing a legal claim as an individual would
result in much of anything net of costs, but I urge the Court to reject the Settlement Agreement and send the
defendant and the class's legal counsel back to draft something appropriate.

Sincerely,

Witold Andrew Szymanski
1 Columbus Pl Apt S42B
New York NY 10019

Mr. W. Andrew Szymanski
1 Columbus Pl. Apt. S42B
New York, NY 10019-8214



SEP 3 0 2019

Equifax Data Breach Class Settlement Administrator
Attn Objection
c/o JND Legal Administration
PO Box 91316
Seattle WA 98111-9418

Received
NOV 2 1 2019
by JNDLA

18 November 2019
Zachary Deschaux
98 Beltran St, Apt 1
Malden, MA 02148

RE: *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To whom it may concern:

I am contacting you today as a member of the settlement class to inform you that I strongly
object to the terms of the settlement presented forth in document 739-2.

I verified that my personal information was impacted by Equifax's data breach through the
settlement website. I have reviewed the contents of the settlement offer and find that the offer
made is wholly unacceptable. The settlement offer is not fair, adequate, reasonable, nor in the
public interest because it fails to be commensurate with the degree of immediate and reasonably
predictable damage resulting from Equifax's negligence in safeguarding people's most sensitive
personal information. Accepting the settlement offer as is would be a gross miscarriage of
justice.

The remedial action of credit monitoring is flawed on multiple bases. Credit monitoring is
already available to all with the same degree of internet access as those accessing the settlement
website; multiple companies offer credit monitoring online for free. Also, the stated limit for
enrollment in this credit monitoring program is seven million (7,000,000) people. This is grossly
insufficient when the number of settlement members is greater than one hundred and forty
million (140,000,000) people. Even assuming only half of the settlement members enroll, the
allocated funds would be insufficient to cover those members for 5 months.

The alternative remedial action of a $125 cash settlement per person is also significantly flawed.
With a cap of thirty one million ($31,000,000), it would be impossible to come close to covering
all those affected by the breach who also have some form of credit monitoring already. With the
credit monitoring site Credit Karma as an example, if half of its fifty million (50,000,000) US
members, which is the same ratio to the number of Americans affected by the breach, were to

choose the cash settlement, each person would only receive $1.24 due to the egregiously low cap on this form of compensation. $1.24 is in no way commensurate to the damages of the Equifax data breach, and this one example does not take into account the multitude of other Americans affected who have some alternate credit monitoring service already.

I have not objected to any class action settlements within the previous five (5) years.

I do not intend to appear at the Fairness Hearing in person or through a lawyer.

Please contact me if you have any questions or require any clarifications.

Sincerely,

Zachary Deschaux

Zachary Deschaux

Zachary Deschaux
38 Beltran St, Apt 1
Malden, MA 02148

NOV 2 1 2019

BOSTON MA 021
18 NOV 2019 PM 5 L

Equifax Data Breach Class Action Settlement Administrator
Attn: Exclusion and Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

98111-941818

1 exd
1 obj

Receive
NOV 2 1 2019
by JNDLA

Zackory Fidler
166 Cottonwood Place
Commercial Point, OH 43116
11/13/2019

In re: Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT. Also widely known as "The Equifax Data Breach Lawsuit.

According to the data breach website, equifaxbreachsettlement.com I am a member of the settlement class. I have never objected to a class action settlement before.

I am objecting to the time limitation put on credit monitoring due to the Equifax Data Breach. Equifax and the other credit bureaus determine every fiscal aspect of our lives from credit cards, to home purchases to vehicle loans. I believe that to assume any entity with the technical expertise to perform this breach would not simply wait out the time frame permitted to Equifax is erroneous. The sensitivity of the information taken can, quite literally, ruin someone's life.

To offer credit monitoring for four years, then offer a service Equifax already offers for another six leaves everyone vulnerable thereafter. The information taken in this breach is essentially permanent and the settlement offers no lasting protection to us.

I am simply a regular person with no legal representation other than Class Counsel and I will not be attending the Fairness Hearing and therefore cannot offer any deposition dates.

Regards,

Zackory Fidler

FOWLER
166 COTTONWOOD PL.
COMMERCIAL POINT, OH
43116

NOV 2 1 2019

EQUIFAX DATA BREACH CLASS
ACTION SETTLEMENT ADMINISTRATOR
ATTN: OBJECTION c/o JND LEGAL ADMINISTRATION
PO BOX 91318
SEATTLE, WA 98111-9418

98111-941818



COLUMBUS OH 431
28 NOV 2019 PM 4 L



October 8, 2019

Received

NOV 0 4 2019

by JNDLA

To Whom It May Concern:

/LAWSUIT

We are writing to express our displeasure at the Equifax Data Breach Settlement. Both of us had our data breached, and although to date we haven't suffered any financial loss as a result, our data is still being misused for email phishing scams, and we are constantly vigilant about checking our banking and credit card accounts for fraudulent activity.  We feel that consumers have been deceived by the terms of the settlement – first being told we could claim $125 reimbursement, then finding out there is not enough money in the settlement to cover all the claims, and then most recently learning that we have to take yet another step to secure either a monetary claim or the alternative option of several years' worth of credit monitoring.

It appears that yet again, the American consumer is at the mercy of the large corporation. This settlement is neither fair nor reasonable, amounting to a slap on the wrist for Equifax, which was entrusted with our most intimate information. As consumers we deserve much better.

Susan Kurtz
Terry Holbrook
6839 Marrowback Road
Conesus, NY 14435

We have not objected to any other class action
settlements in the previous 5 years.
We do not intend to appear at the Fairness
Hearing.

CC: NYS Attorney General
    Consumer Financial Protection Bureau
    Federal Trade Commission
    US District Court for Northern Georgia
    Equifax Data Breach Settlement Administrator



EQUIFAX DATA BREACH CLASS ACTION
Attn: OBJECTION SETTLEMENT
c/o JND LEGAL ADMINISTRATION
PO Box 91318
SEATTLE WA 98111-9418

ROCHESTER NY
01 NOV 2019 PM 1 L

FOREVER / USA

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL No. 17-2800-TWT |
| THEODORE H. FRANK and DAVID R. WATKINS, | CONSUMER ACTIONS |
| Objectors. | Chief Judge Thomas W. Thrash, Jr. |

# DECLARATION OF THEODORE H. FRANK

I, Theodore H. Frank, declare as follows:

1.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     My business address is Hamilton Lincoln Law Institute, 1629 K St. NW, Suite 300, Washington, DC 20006. My telephone number is (703) 203-3848. My email address is ted.frank@hlli.org. I request that my attorney and I be served any discovery requests electronically, as it is the quickest way to reach us, as we are frequently outside of Washington, D.C.

3.     I am a class member in this matter. I object to the settlement and class counsel's fee request on behalf of the entire class, and also specifically to the members of the settlement class with state-law statutory damages claims, for the reasons stated in the accompanying filing.

4.     I plan to appear at the Fairness Hearing through my counsel Melissa A. Holyoak, Hamilton Lincoln Law Institute, 1629 K St. NW, Suite 300, Washington, DC 20006.  Her phone number is (573) 823-5377.

### My class membership

5.     I verified on the settlement website, www.equifaxbreachsettlement.com, that I was a class member by entering my last name and the last six digits of my social security number. I signed up for the TrustedID service in 2017, and submitted a claim form on the settlement website on October 4, 2019. My claim number is P38CX-G7RUN.

6.     I elected to receive a cash payment instead of credit monitoring because I currently have credit monitoring with Chase Credit Journey and I

intend to have it for at least six months. In addition, I elected to receive a cash payment for time spent addressing the Equifax data breach. I estimate that I spent over ten hours taking Equifax-specific preventative measures regarding the data breach. In September and October 2017, I spent time determining whether my personal information had been compromised by the Equifax data breach, reviewing TrustedID terms and conditions before agreeing to the TrustedID service, and signing up for TrustedID. From November 2017 through February 2019, I also spent time reviewing and responding to multiple emails from Equifax, recovering passwords, and reviewing TrustedID account credit alerts.

7.     I registered my current Houston residential address when I made a claim on the Equifax data breach settlement website, but at the time of the September 7, 2017 Equifax data breach, I was residing at 2700 Woodley Road, Apt. PH5, Washington, D.C. 20008, and at the time of the breach, I was a citizen of Washington, D.C.

8.     The Preliminary Approval Order requires me to identify four dates between November 19, 2019 and December 5, 2019 when I am available to be deposed. I will make myself available for deposition in Salt Lake City, Utah on November 21, 22, 23, and December 4, upon an agreement for reciprocal discovery. I am agreeing to make myself available for deposition in Salt Lake City because that is where my fellow objector, David Watkins, and my attorney, Melissa Holyoak, reside; Ms. Holyoak has small children, and it is more convenient for me to fly to her than vice versa. Melissa Holyoak will

be defending both of our depositions; my deposition and Mr. Watkins's deposition would need to be scheduled at different times. Our agreement to be deposed is subject to an agreement of reciprocal depositions of Professor Klonoff and a sample of class representatives identified by the objectors, and upon receiving a request complying with Fed. R. Civ. P. 26(g)(1). In addition to the dates identified above, I am also willing to make myself available for deposition on another mutually-agreed upon date, subject to the reciprocal discovery discussed above. However, we object to any depositions as unduly burdensome and harassing: there is no legitimate dispute that I am a class member.

9.     Many class members contacted me and other CCAF attorneys directly or through a third party about the possibility of objecting. We ultimately chose to use Melissa's brother and me as the objectors to minimize the logistical difficulties of defending depositions and the burdens created by the preliminary approval order to objecting and to minimize the risk that harassment through discovery would cause an objector to choose to withdraw his or her objection.

### Center for Class Action Fairness

10.     I founded the non-profit Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public-interest law firm based out of Washington, DC, in 2009. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit. In January 2019, CCAF became part of the Hamilton

Lincoln Law Institute ("HLLI"), a new non-profit public-interest law firm founded in 2018.

11.     CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. *See, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification.) The Center has won over 200 million dollars for class members and received national acclaim for its work. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 ("the leading critic of abusive class action settlements"); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL).

12.     The Center has been successful, winning reversal or remand in over a dozen federal appeals decided to date. *E.g., Frank v. Gaos*, 139 S. Ct.

1041 (2019); *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019) (unpublished); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). A number of these appeals centered around class certification issues similar to the ones raised in this objection. *E.g.*, *Lithium*; *Dewey*. While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them.

13. CCAF has won more than $200 million dollars for class members by driving the settling parties to reach an improved bargain or by reducing

outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2016) (more than $100 million at time). *See also, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million).

## CCAF Class-Action Objections

14.     In 2008, before I started CCAF, I objected pro se (after dismissing the attorney I initially retained) to the class action settlement in *In re Grand Theft Auto Video Game Consumer Litigation*, No. 1:06-md-1739 (SWK) (S.D.N.Y.) because of the disproportionate recovery it gave to class counsel against the class. The district court refused to certify the class and approve the settlement. 251 F.R.D. 139 (S.D.N.Y. 2008).

15.     The highly-publicized success of my *Grand Theft Auto* objection caused class members victimized by other bad class action settlements to contact me to see if I could represent them. I started the Center for Class Action Fairness in 2009 to respond to this demand.

16.     HLLI attorneys Melissa Holyoak, M. Frank Bednarz, and Adam Schulman have worked on this objection; HLLI attorney Anna St. John may work on this objection in the future. CCAF and HLLI have represented clients (or CCAF and HLLI attorneys have appeared pro se) in the following objections to settlements or fee requests, which I color-code as green for successful or partially successful; red for unsuccessful; and white for pending without interim success. While the Preliminary Approval Order requires an objector to include a "[s]tatement identifying all class action settlements objected to by the objector in the previous (5) years" I have not limited this list to the preceding five years because of the burden such winnowing would impose and the risk of potentially excluding cases in which I or other CCAF attorneys appeared that were appealed or otherwise proceeded without our active participation within the specified time period. Note that some cases involve multiple objections to multiple iterations of the settlement. Unless otherwise indicated, we did not receive payment. In the interests of disclosure, I am identifying all objections where HLLI and CCAF attorneys have appeared as counsel or pro se even if those attorneys have not yet worked on this objection. This list does not include class action settlement cases where we were appointed or sought amicus status on behalf of class interests without representing an objecting class member, or cases where we sought to be appointed guardian ad litem on behalf of the class.

| Case | Result |
|------|--------|
| *In re Bluetooth Headset Products Liability Litigation,* Case No 2:07-ML-1822-DSF-E (C.D. Cal.) | District court approved the settlement and fee request. On appeal, the Ninth Circuit vacated, 654 F.3d 935 (9th Cir. 2011). On remand, the district court approved the settlement and reduced fees from $800,000 to $232,000. We did not appeal again, and received no payment. |
| *In re TD Ameritrade Account Holder Litigation*, Case No C 07-2852 VRW (N.D. Cal.) | The objection was successful and the district court rejected the settlement. 2009 U.S. Dist. LEXIS 126407 (N.D. Cal. Oct. 23, 2009). A substantially improved settlement was approved. |
| *Fairchild v. AOL,* Case No 09-cv-03568 CAS (PLAx) (C.D. Cal.) | The trial court approved the settlement and fee request. The Center appealed and in November, 2011, the Ninth Circuit reversed, sustaining the Center's objection to the improper *cy pres*. *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011). On remand, the parties cured the abusive *cy pres*. |
| *In re Yahoo! Litigation,* Case No 06-cv-2737 CAS (FMOx) (C.D. Cal.) | The district court approved the settlement and fee request. I withdrew from representations of my clients during the appeal, and my former clients chose to voluntarily dismiss their appeal. I received no payment. I believe the appeal was meritorious and would have prevailed and that the plaintiffs' tactic of buying off my clients at the expense of the class was unethical. |
| *True v. American Honda Motor Co.*, Case No. 07-cv-00287 VAP (OPx) (C.D. Cal.) | The objection was successful and the district court rejected the settlement. 749 F. Supp. 2d 1052 (C.D. Cal. 2010). The parties negotiated a substantially improved settlement in California state court, winning the class millions of dollars more in benefit. CCAF attorney Frank Bednarz appeared for the objector *pro hac vice*. |

| Case | Result |
|---|---|
| *Lonardo v. Travelers Indemnity*, Case No. 06-cv-0962 (N.D. Ohio) | The parties in response to the objection modified the settlement to improve class recovery from $2.8M to $4.8M while reducing attorneys' fees from $6.6M to $4.6M and the district court approved the modified settlement and awarded CCAF about $40,000 in fees. 706 F. Supp. 2d 766 (N.D. Ohio 2010). The "Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving." *Id.* at 804. We did not appeal, and received no payment beyond that ordered by the court. |
| *In re Motor Fuel Temperature Sales Practices Litigation*, Case No. 07-MD-1840-KHV (D. Kan.) | We objected to the settlement with Costco; the district court rejected the settlement, but approved a materially identical one after our renewed objection. The district court approved several other settlements that CCAF objected to (including several with me as the objector). The Tenth Circuit affirmed and denied our petition for rehearing *en banc*. |
| *Bachman v. A.G. Edwards*, Cause No: 22052-01266-03 (Mo. Cir. Ct.) | The district court approved the settlement and fee request, and the decision was affirmed by the intermediate appellate court. The Missouri Supreme Court declined further review. |

| Case | Result |
|------|--------|
| *Dewey v. Volkswagen*, Case No. 07-2249(FSH) (D.N.J.) | We objected on behalf of multiple class members, including a law professor. The district court approved the settlement, but reduced the fee request from $22.5 million to $9.2 million. CCAF appealed and the settling parties cross-appealed the fee award. On appeal, the Third Circuit sustained CCAF's objection to the Rule 23(a)(4) determination and vacated the settlement approval. 681 F.3d 170 (3d Cir. 2012). On remand, the parties modified the settlement to address CCAF's objection and make monetary relief available to hundreds of thousands of class members who had been frozen out by the previous settlement. The district court awarded CCAF $86,000 in fees. Other objectors appealed and we defended the district court's settlement approval on appeal. The Third Circuit affirmed the settlement approval and the Supreme Court denied *certiorari*. We received no payment beyond that authorized by the court. |
| *In re Apple Inc. Securities Litig.*, Case No. C-06-5208-JF (N.D. Cal.) | As a result of CCAF's objection, the parties modified the settlement to pay an additional $2.5 million to the class instead of third-party *cy pres*. The district court awarded attorneys' fees to CCAF and approved the settlement and fee request. We did not appeal and received no payment beyond that authorized by the court. |

| Case | Result |
|---|---|
| *Robert F. Booth Trust v. Crowley,* Case No. 09-cv-5314 (N.D. Ill.) (Rule 23.1) (*pro se* objector) | The district court denied my motion to intervene and dismiss abusive shareholder derivative litigation that sought $930,000 in fees, and then rejected the proposed settlement. I appealed. On appeal, the Seventh Circuit agreed (1) that my motion to intervene should have been granted and (2) my motion to dismiss should have been granted, and remanded with orders to dismiss the litigation. 687 F.3d 314 (7th Cir. 2012). As a result, Sears shareholders saved $930,000 in attorneys' fees. CCAF was awarded a few hundred dollars in costs. |
| *In re Classmates.com Consolidated Litigation*, Case No. 09-cv-0045-RAJ (W.D. Wash.) | We objected on behalf of law professor Michael Krauss. The district court granted CCAF's objection and rejected the settlement. The parties proposed an improved settlement, and the district court sustained our renewed objection to the settlement. The parties modified the settlement again to pay class members over $2 million more than the original settlement, and the district court agreed with CCAF that the fee request was excessive, reducing the fee request from $1.05 million to $800,000. The district court praised CCAF's work and sanctioned plaintiffs $100,000 (awarded to the class) for its abusive discovery of objectors. 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012). CCAF did not appeal and did not receive any payment. |
| *Ercoline v. Unilever*, Case No. 10-cv-1747 (D. N.J.) (*pro se* objector) | The district court approved the $0 settlement and fee request. I did not appeal, and neither I nor CCAF received any payment. |

| Case | Result |
|---|---|
| *In re HP Inkjet Printer Litigation*, Case No. 05-cv-3580 (N.D. Cal.) (*pro se* objector) | The district court approved the settlement and reduced the fee request from $2.3 million to $1.5 million. On appeal, the Ninth Circuit vacated the settlement approval and fee award. 716 F.3d 1173 (9th Cir. 2013). On remand, the district court again approved the settlement and reduced the fee request to $1.35 million. We did not appeal, and received no payment. |
| *In re HP Laserjet Printer Litigation*, Case No. 8:07-cv-00667-AG-RNB (C.D. Cal) (*pro se* objector) | The trial court approved the settlement, while lowering the attorneys' fees from $2.75M to $2M. We did not appeal, and received no payment. |
| *In re New Motor Vehicles Canadian Export Antitrust Litigation*, No. MDL 03-1532 (D. Me.) (I was objector represented by CCAF counsel Dan Greenberg) | The trial court agreed with my objection that the *cy pres* was inappropriate, and the parties modified the settlement to augment class recovery by $500,000. The court affirmed the fee request, but awarded CCAF about $20,000 in fees. |
| *Sobel v. Hertz Corp.*, No. 06-cv-545 (D. Nev.) (CCAF attorney Dan Greenberg) | The district court agreed with our objection and refused to approve the coupon settlement. The parties litigated, and the district court granted partial summary judgment in the amount of $45 million, and awarded CCAF fees of $90,000. Hertz won reversal on appeal, and CCAF received nothing. |

| Case | Result |
|---|---|
| *Cobell v. Salazar*, Case No. 1:96-cv-1285 (TFH) (D.D.C.) | The district court approved the settlement, but reduced the requested fees from $224 million to $99 million, and reduced the proposed incentive award by several million dollars, creating over $130 million of additional benefit to the class. On appeal, the D.C. Circuit affirmed the settlement approval. 679 F.3d 909. CCAF's client retained other counsel and petitioned the Supreme Court to hear the case. The Supreme Court denied the writ of certiorari. We received no payment. |
| *Stetson v. West Publishing*, Case No. CV-08-00810-R (C.D. Cal.) (CCAF attorney Dan Greenberg) | The district court sustained our objection and rejected the coupon settlement. The parties proposed a modified settlement that improved class recovery by several million dollars. We did not object to the new settlement, and neither sought nor received payment. |
| *McDonough v. Toys "R" Us* and *Elliott v. Toys "R" Us*, Case Nos. 2:06-cv-00242-AB, No. 2:09-cv-06151-AB (E.D. Pa.) | The district court approved the settlement and fee request. CCAF appealed, and the Third Circuit vacated the settlement approval and fee award. *In re Baby Prods Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). On remand, the parties negotiated an improved settlement that improved class recovery by about $15 million. We did not object to the settlement but objected to the renewed fee request. The district court awarded CCAF $742,500 in fees and reduced class counsel's fees by the same amount. CCAF appealed, but voluntarily dismissed the appeal without receiving any payment beyond what was ordered by the court. |

| Case | Result |
|---|---|
| *Trombley v. National City Bank,* Case No. 10-cv-232 (JDB) (D.D.C.) | We objected to an excessive fee request of ~$3000/hour for every partner, associate, and paralegal in a case that settled in a reverse auction shortly after a complaint was filed; we further objected to an arbitrary allocation process that prejudiced some class members at the expense of others. The district court approved the settlement and fee request. CCAF did not appeal, and received no payment. Later, CCAF won appeals in the Third and Seventh Circuits on some of the issues we raised in this case. |
| *Blessing v. Sirius XM Radio Inc.,* Case No. 09-cv-10035 (S.D.N.Y.) | The district court approved the settlement and fee request, and the Second Circuit affirmed in an unpublished order. CCAF petitioned for *certiorari.* The Supreme Court denied *certiorari,* but Justice Alito wrote separately to indicate that, while *certiorari* was inappropriate, the Second Circuit erred in holding CCAF's client did not have standing to challenge the improper class counsel appointment. *Martin v. Blessing,* 134 S. Ct. 402 (2013). |
| *Weeks v. Kellogg Co.,* Case No. CV-09-08102 (MMM) (RZx) (C.D. Cal.) (CCAF attorney Dan Greenberg) | The district court sustained CCAF's objection and refused settlement approval. The parties modified the settlement to largely address CCAF's concerns, creating extra pecuniary benefit to the class. The Center sought and was awarded attorneys' fees as a percentage of the benefit conferred, and received no other payment beyond that awarded by the court. |

| Case | Result |
|------|--------|
| *In re Dry Max Pampers Litig.*, Case No. 1:10-cv-00301 TSB (S.D. Ohio) | The district court approved the settlement and fee request. On appeal, the Sixth Circuit vacated both orders. 724 F.3d 713 (6th Cir. 2013). On remand, plaintiffs dismissed the meritless litigation, benefiting the class that would not have to pay the higher costs from abusive litigation. We received no payment. |
| *In re Mutual Funds Investment Litig.*, No. 04-md-15862 (D. Md.) | The trial court approved the settlement and fee award. CCAF did not appeal, and received no payment. |
| *Barber Auto Sales, Inc. v. UPS*, No. 5:06-cv-04686-IPJ (N.D. Ala.) (CCAF attorney Dan Greenberg) | The trial court approved the settlement and fee award. CCAF did not appeal, and received no payment. |
| *Brazil v. Dell*, No. C-07-1700 RMW (N.D. Cal.) (CCAF attorney Dan Greenberg) | The trial court approved the settlement and fee award. CCAF appealed. After CCAF filed its opening brief in the Ninth Circuit, the trial court modified its opinion approving the settlement and fee award. CCAF chose to voluntarily dismiss its appeal and received no payment. |
| *Fogel v. Farmers*, No. BC300142 (Super. Ct. Cal. L.A. County) | The trial court approved the settlement and reduced the fees from $90M to $72M. The Center was awarded fees and expenses for its objection, and did not appeal, and received no payment beyond what the court ordered. |

| Case | Result |
|---|---|
| *Walker v. Frontier Oil*, No. 2011-11451 (Harris Cty. Dist. Ct. Tex.) | The trial court approved the settlement and fee award. On appeal, the Texas Court of Appeals agreed that the $612,500 fee award violated Texas law, saving shareholders $612,500. *Kazman v. Frontier Oil,* 398 SW 3d 377 (Tex. App. 2013). We neither sought nor received payment. |
| *In re MagSafe Apple Power Adapter Litig.*, No. C. 09-1911 JW (N.D. Cal.) | We objected on behalf of law professor Marie Newhouse. The trial court approved the settlement and fee award. On appeal, the Ninth Circuit in an unpublished decision vacated both orders and remanded for further proceedings. The Center renewed its objection and the district court approved the settlement but reduced fees from $3 million to $1.76 million. We did not appeal, and received no payment. |
| *In re Online DVD Rental Antitrust Litig.,* No 4:09-md-2029 PJH (N.D. Cal.) | I was the objector. The district court approved the settlement and fee award, and the Ninth Circuit affirmed in an appeal I briefed and argued. 779 F.3d 934 (9th Cir. 2015). On remand, class counsel attempted to distribute over $2 million to *cy pres*. I objected to the *cy pres* proposal, and the court agreed with my objection and ordered distribution to the class. We did not seek attorneys' fees. |
| *In re Nutella Marketing and Sales Practices Litig.*, No 11-1086 (FLW)(DEA) (D. N.J.) (CCAF attorney Dan Greenberg) | The district court approved the settlement, but reduced the fee award by $2.5 million. We did not appeal, and received no payment. |

| Case | Result |
|---|---|
| *In re Groupon, Inc., Marketing and Sales Practices Litig.*, No. 3:11-md-2238-DMS-RBB (S.D. Cal.) (pro se objection; separately retained in private capacity on appeal) | The district court sustained the objection to the settlement; the parties presented a materially identical settlement and the district court approved that settlement and fee award. I did not appeal and received no payment. Other objectors appealed. After briefing was complete, I was retained by one of the appellants in my private capacity to argue the appeal on a flat-fee basis, and the Ninth Circuit agreed with me in an unpublished order that the district court's settlement approval applied the wrong standard of law, and vacated and remanded. On remand, the parties proposed a new settlement, and I did not object. |
| *In re Johnson & Johnson Derivative Litig.*, No. 10-cv-2033-FLW (D.N.J.) | The district court approved the settlement. CCAF appealed and successfully moved to stay the appeal while the fee request was litigated. The district court reduced the fee request from $10.45 million to about $5.8 million, saving shareholders over $4.6 million. CCAF voluntarily dismissed its appeal, and received no payment. |
| *Pecover v. Electronic Arts Inc.*, No. C 08-02820 CW (N.D. Cal.) (I objected, represented by CCAF attorney Melissa Holyoak) | The district court honored our objection to the excessive *cy pres* and encouraged modifications to the settlement that addressed my objection. As a result of the Center's successful objection, the class recovery improved from $2.2 million to $13.7 million, an improvement of over $11.5 million. The Center did not appeal the decision. The district court awarded $33,975 in attorneys' fees to the Center. The Center received no payment not ordered by the Court. |

| Case | Result |
|---|---|
| *In re EasySaver Rewards Litigation*, No. 3:09-cv-2094-AJB (WVG), No. 3:09-cv-2094-BAS (S.D. Cal.) | The district court approved the settlement and the fee request. On appeal, the Ninth Circuit vacated the settlement approval and remanded for further consideration. We renewed our objection, and the district court approved the settlement and fee request again. On appeal, the Ninth Circuit vacated and remanded the fee award, but affirmed the settlement approval. We sought *certiorari* on the settlement approval, but a defendant obtained a bankruptcy stay, and the Supreme Court denied *certiorari* after plaintiffs argued that *certiorari* should be denied because of the stay. Our client objected to the renewed fee request, and the district court upheld the objection, denying the motion without prejudice. A new fee request is pending in the district court subject to the bankruptcy stay, and our client will likely object to that one as well. |
| *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901 (SHS) (S.D.N.Y.) (*pro se* objection; then represented by CCAF attorneys) | The parties agreed to correct the defective notice. Upon new notice, I restricted my objection to the excessive fee request. The district court agreed to reduce the fee request (and thus increase the class benefit) by $26.7 million. 965 F. Supp. 2d 369 (S.D.N.Y. 2013). I was awarded costs. I appealed the fee decision, but voluntarily dismissed my appeal without further payment. My objection to the *cy pres* proposal was overruled; I won a stay of the *cy pres* order and appealed. While the appeal was pending, in 2017, class counsel agreed to distribute the proposed *cy pres* to the class, and the appeal was remanded to district court after a Rule 62.1 indicative ruling. The district court granted our request for attorneys' fees. |

19

| Case | Result |
|---|---|
| *City of Livonia Employees' Retirement System v. Wyeth*, No. 1:07-cv-10329 (RJS) (S.D.N.Y.) | The district court approved the settlement and reduced fees (and thus increased class benefit) by $3,037,500. Though the court ultimately agreed in part with our objection to fees, it was critical of our objection, though it mischaracterized the argument we made. The district court criticized the objection as "frivolous" but the First Circuit recently held in a non-CCAF case that the issue of a minimum distribution threshold does indeed make a settlement problematic. We did not appeal, and received no payment. |
| *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-md-2023 (BMC) (JMA) (E.D.N.Y.) (I objected, represented by CCAF attorney Adam Schulman) | Upon my objection, the parties modified the settlement to provide for direct distribution to about a million class members, increasing class recovery from about $0.5 million to about $5 million. The district court agreed with my objection to one of the *cy pres* recipients, but otherwise approved the settlement and the fee request. CCAF was awarded attorneys' fees. I did not appeal, and neither I nor CCAF received any payment not awarded by the court. |

| Case | Result |
|---|---|
| *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176 (N.D. Ill.) | The district court approved the settlement, but reduced fees by $1.67 million. We appealed, and the plaintiffs cross-appealed; the Seventh Circuit affirmed, but reduced fees further. On remand, class counsel asserted rights to additional fees, and we objected again. The court denied the fee request in part, and, on motion for reconsideration, vacated the fee order on the grounds notice was required. We negotiated a settlement that tripled relief to the class. We moved for attorneys' fees, which the district court denied. We appealed the denial and won reversal and attorneys' fees. |
| *Fraley v. Facebook, Inc.*, No. 11-cv-01726 (RS) (N.D. Cal.) (*pro se* objection) | The district court approved the settlement, which was modified after our objection by increasing class distributions by 50%. The district court further reduced fees by $2.8 million, which increased the *cy pres* distribution by the same amount. We did not appeal the settlement approval or fee award, and did not receive any payment. Our request for attorneys' fees was denied, and our appeal of that decision was denied. We did not seek *certiorari*. |

| Case | Result |
|------|--------|
| *Pearson v. NBTY*, No. 11-CV-07972 (N.D. Ill) (I objected, represented by CCAF attorneys Melissa Holyoak and Frank Bednarz) | The district court approved the settlement, but reduced fees by $2.6 million. On appeal, the Seventh Circuit reversed the settlement approval, praising the work of the Center. 772 F.3d 778 (7th Cir. 2014). On remand, the settlement was modified to increase class recovery from $0.85 million to about $5.0 million. The second settlement was approved, and CCAF was awarded attorneys' fees of $180,000. Other objectors appealed; we cross-appealed to protect our rights. When the other objectors dismissed their appeals, we dismissed our cross-appeal without any payment beyond that ordered by the court. We moved the district court for relief requiring other objectors who received under-the-table payments to be required to disgorge those payments to the class, an action that was covered by the *Wall Street Journal*. The district court held it did not have jurisdiction over the action, and we appealed that decision and won in the Seventh Circuit. The district court denied the motion to disgorge extortionate objector fees, and our appeal of that decision is pending. |
| *Marek v. Lane,* 134 S. Ct. 8, 571 US – (2013). | In 2013 an objector retained the Center to petition the Supreme Court for a writ of *certiorari* from *Lane v. Facebook.*, 696 F.3d 811 (9th Cir. 2012), *rehearing denied* 709 F.3d 791 (9th Cir. 2013), a case we had not previously been involved in. Although the Supreme Court declined to hear the case, Chief Justice Roberts wrote an opinion respecting denial of *certiorari* declaring the Court's interest in the issue of *cy pres* that has been influential in improving many settlements for class members. |

| Case | Result |
|------|--------|
| *Dennis v. Kellogg, Inc.*, No. 09-cv-01786 (IEG) (S.D. Cal.) | On remand from a Ninth Circuit decision, the district court approved a modified settlement and the fee request. Law professor Todd Henderson was the objector. CCAF did not appeal or receive any payment. |
| *Berry v. LexisNexis.*, No. 11-cv-754 (JRS) (E.D. Va.) (CCAF attorney Adam Schulman *pro se*) | The district court approved the settlement and the fee request. The Fourth Circuit affirmed, and the Supreme Court denied *certiorari*. |
| *In re BankAmerica Corp. Secs. Litig.*, No. 13-2620 (8th Cir.) | CCAF was retained as appellate counsel on behalf of a class representative objecting to a *cy pres* distribution and supplemental fee award, and prevailed. 775 F.3d 1060 (8th Cir. 2015). As a result, the class will receive an extra $2.6 to $2.7 million, plus any proceeds from pending collateral litigation against third parties. CCAF did not seek or receive any payment beyond costs. |
| *Redman v. Radioshack Corp.*, No. 11-cv-6741 (N.D. Ill.) | The district court approved the settlement and the fee request. On appeal, the Seventh Circuit reversed, upholding our objection. 768 F.3d 622 (7th Cir. 2014). The case is pending on remand, but is presumably extinguished by RadioShack's bankruptcy. We were awarded costs. |
| *Richardson v. L'Oreal USA*, No. 13-cv-508-JDB (D.D.C.) (CCAF attorney Adam Schulman) | The district court sustained our objection to the settlement. 991 F. Supp. 2d 181 (D.D.C. 2013). We received no payment. |

| Case | Result |
|------|--------|
| *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436 (S.D. Ohio) | We represented law professor Josh Blackman. The district court approved the settlement and fee request. The Sixth Circuit affirmed in a 2-1 decision, and denied *en banc* review. The Supreme Court denied *certiorari*. |
| *Steinfeld v. Discover Financial Services*, No. 3:12-cv-01118-JSW (N.D. Cal.) | We withdrew the objection upon assurances from the parties about the interpretation of some ambiguous settlement terms. We received no payment. |
| *In re Aetna UCR Litigation*, No. 07-3541, MDL No. 2020 (D.N.J) (I was a *pro se* objector with assistance from local counsel) | While our objection was pending, the defendant invoked its contractual right to withdraw from the settlement. The litigation is pending. |
| *Poertner v. The Gillette Co.*, No. 6:12-cv-00803 (M.D. Fla.) (I objected, represented by CCAF attorney Adam Schulman) | The district court approved the settlement and the fee award, and the Eleventh Circuit affirmed in an unpublished order, and the Supreme Court denied *certiorari*, despite the circuit split with *Pearson*. |

| Case | Result |
|------|--------|
| *In re Google Referrer Header Privacy Litigation*, No. 10-cv-04809 (N.D. Cal.) (I was a *pro se* objector and also represented HLLI attorney Melissa Holyoak) | The district court approved the settlement and the fee award. The Ninth Circuit affirmed in a 2-1 decision. On April 30, 2018, the Supreme Court granted *certiorari* for the October 2018 Term in *Frank v. Gaos*, No. 17-961. I argued the case in the Supreme Court October 31, 2018. In 2019, the Supreme Court vacated the decision and remanded for consideration of the question of Article III standing. The Ninth Circuit remanded to the district court. The case is pending in the district court. |
| *Delacruz v. CytoSport, Inc.*, No. 4:11-cv-03532-CW (N.D. Cal.) (I was a *pro se* objector) | I joined in part the *pro se* objection of William I. Chamberlain. The district court approved the settlement and the fee award. We did not appeal, and received no payment. |
| *In re American Express Anti-Steering Rules Antitrust Litigation*, No. 11-md-2221 (E.D.N.Y.) | We objected and the district court rejected the settlement. We have neither sought nor received payment. |

| Case | Result |
|---|---|
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12-cv-10064 (N.D. Ill.) | Our objection was only to the fee request, and the district court agreed to a reduction of about $7 million in fees. We appealed seeking further reductions, but plaintiffs offered to pay our client $25,000 to dismiss his appeal, and he accepted the offer against our recommendation and his earlier promise to us. Ethics rules prohibited us from interfering with the client's decision. CCAF received no payment. Seventh Circuit law requires the court to investigate before granting a motion to voluntarily dismiss an appeal of a class action settlement approval, but no investigation was performed, despite extensive press coverage of our protest of class counsel's unethical behavior. |
| *Lee v. Enterprise Leasing Company-West*, LLC, No. 3:10-cv-00326 (D. Nev.) (CCAF attorney Melissa Holyoak) | The district court approved the settlement and the fee request. CCAF did not appeal, and received no payment. |
| *Jackson v. Wells Fargo*, No. 2:12-cv-01262-DSC (W.D. Pa.) | The district court approved the settlement and the fee request. CCAF did not appeal, and received no payment. CCAF attorney Adam Schulman represented the objector. |
| *In re Transpacific Passenger Air Transp. Antitrust Litig.,* No. 3:07-cv-05634-CRB (N.D. Cal.) | The district court approved the settlement, but reduced the Rule 23(h) request for fees and expenses by over $5.1 million, for the benefit of the class. The district court awarded CCAF fees. In a 2-1 decision, the Ninth Circuit affirmed settlement approval. CCAF attorney Anna St. John argued at the district court and appellate level. |

| Case | Result |
|------|--------|
| *Careathers v. Red Bull N. Am., Inc.*, No. 1:13-cv-0369 (KPF) (S.D.N.Y.) (I objected, represented by CCAF attorney Erin Sheley) | The district court approved the settlement, but reduced the fee request by $1.2 million. We did not appeal, and received no payment. |
| *In re Riverbed Securities Litigation*, Consolidated C.A. No. 10484-VCG (Del. Ch.) | CCAF assisted *pro se* objector Sam Kazman, a CEI attorney, before CCAF merged with CEI. The court approved the settlement and reduced the fee request. |
| *In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 14-2522 (PAM/JJK) (D. Minn.) | The district court denied our objection. We successfully appealed to the Eighth Circuit. On limited remand, the district court denied our objection again. We appealed to the Eighth Circuit, which ordered supplemental briefing, and then affirmed. |
| *In re Polyfoam Antitrust Litig.*, No. 10-MD-2196 (N.D. Ohio) (CCAF attorney Anna St. John) | We objected to the fees and the *cy pres* proposal, and the district court reduced fees and rejected plaintiffs' proposed *cy pres* recipient. We did not appeal and received no payment. Our request for attorneys' fees was denied, and we did not appeal. |
| *Hays v. Walgreen Co.*, No. 14-C-9786 (N.D. Ill.) | We objected to a $0 settlement that provided only worthless disclosures to the shareholder class. Our appeal in the Seventh Circuit was successful, and plaintiffs voluntarily dismissed their case on remand. |

| Case | Result |
|---|---|
| *In re Subway Footlong Sandwich Mktg. & Sales Pract. Litig.*, No. 2:13-md-2439-LA (E.D. Wisc.) | I objected, represented by CCAF attorney Adam Schulman. The district court approved the settlement and fee request over my objection. Our appeal in the Seventh Circuit was successful, and plaintiffs voluntarily dismissed their case on remand. |
| *In re Colgate-Palmolive SoftSoap Antibacterial Hand Soap Mktg. & Sales Pract. Litig.*, No. 12-md-2320 (D.N.H.) | CCAF attorney Anna St. John objected *pro se*. The district court approved the settlement and fee request over her objection. She filed an appeal to the *cy pres* provision of the settlement and dismissed the appeal without payment once the *cy pres* issue became moot. |
| *Doe v. Twitter, Inc.*, No. CGC-10-503630 (Cal. Sup. Ct. S.F. Cty.) | The district court approved the settlement over our objection, but reduced attorneys' fees. We did not appeal and received no payment. |
| *Rodriguez v. It's Just Lunch Int'l*, No. 07-cv-9227 (SHS)(SN) (S.D.N.Y.) | CCAF attorney Anna St. John successfully represented an objector to an abusive settlement; the court rejected the settlement. The litigation is pending, and our client will likely object to the improved settlement. |
| *Rougvie v. Ascena Retail Group*, No. 15-cv-724 (E.D. Pa.) | CCAF attorney Adam Schulman appeared on behalf of two objectors; the parties modified the settlement in part, and district court agreed with our objection that CAFA applied and governed attorneys' fees. We did not appeal, but other objectors appealed. The appeals were voluntarily dismissed. We were ultimately awarded $78,000 in attorneys' fees for our work improving the settlement that provided $702,640 in additional class benefit. |

| Case | Result |
|---|---|
| *Allen v. Similasan Corp.*, No. 3:12-cv-0376-BAS (JLB) (S.D. Cal.) | CCAF's objection on behalf of an objector to a $0 settlement was upheld. The parties negotiated a new settlement proposing to pay about $500,000 to the class. We did not object to the new settlement, and neither sought nor received payment. |
| *In re PEPCO Holdings, Inc., Stockholder Litig.*, C.A. No. 9600-VCMR (Del. Ch.) | In response to our proposed objection on *Walgreen* grounds, class counsel voluntarily dismissed the lawsuit and proposed settlement, saving the shareholders a substantial amount of money. We were awarded attorneys' fees by the Court. |
| *In re Pharmacyclics, Inc. Shareholder Litig.*, No. 1-15-CV-278055 (Santa Clara County, Cal.) | Law professor Sean J. Griffith, an objector with an unsuccessful objection to a $0 shareholder settlement, retained CCAF for the appeal, which is pending in the California Court of appeal. |
| *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD (N.D. Cal.) | CCAF attorney Anna St. John represented an objector. After we objected, the parties disclosed that the settlement claims rate was higher than we anticipated, and the district court approved the settlement. We did not appeal, and did not receive any payment. |
| *Edwards v. National Milk Producers Fed'n*, No. 11-cv-04766-JSW (N.D. Cal.) | CCAF attorney Anna St. John represented an objector who objected to fees only. The district court reduced the requested fees by over $4.3 million, to be distributed to the class. We were awarded attorneys' fees by the court. We did not appeal; another objector's appeal is pending. |

| Case | Result |
|---|---|
| *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 12-MD-2358 (D. Del.) | I objected in this case, represented by CCAF attorney Adam Schulman. The district court overruled our objection to the settlement, but reduced attorneys' fees. Our appeal to the Third Circuit was successful, vacating the settlement and remanding. The case is pending in district court. |
| *Saska v. The Metropolitan Museum of Art*, No. 650775/2013 (Sup. Ct. N.Y. Cty., N.Y.) | CCAF attorney Anna St. John objected *pro se*. The court approved the settlement and attorneys' fee award over her objection. We did not appeal, and have neither sought nor received payment. |
| *Birbrower v. Quorn Foods, Inc.*, No. 2:16-cv-01346-DMG (AJW) (C.D. Cal.) | I objected on behalf of a class member to a claims-made settlement and fee request. The district court approved the settlement and fee award over the objection. We did not appeal, and received no payment. |
| *Aron v. Crestwood Midstream Partners L.P.*, No. 16-20742 (5th Cir.) | An unsuccessful *pro se* objector retained us to prosecute his appeal of approval of a $0 settlement where the court refused to follow *Walgreen*. The Fifth Circuit dismissed the appeal for lack of appellate jurisdiction because the objector filed his objection past the deadline in the district court. |
| *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411-YGR (N.D. Cal.) | Represented by CCAF attorneys, I objected to a lopsided settlement and fee request. The district court approved the settlement, and the Ninth Circuit affirmed. |

| Case | Result |
|---|---|
| *Campbell v. Facebook, Inc.*, No. 13-cv-5996-PJH (N.D. Cal) | Former CCAF attorney William Chamberlain represented a class member, CCAF attorney Anna St. John, objecting to an abusive settlement and fee request. The district court overruled the objection and approved the settlement. Our appeal to the Ninth Circuit was argued by Adam Schulman and is pending. |
| *Knapp v. Art.com, Inc.*, No. 16-cv-00768-WHO (N.D. Cal.) | Another CCAF attorney and I represented a class member objecting to a settlement and fee request. The district court approved the settlement but agreed with us that fees should be awarded only after the redemption rate of the coupon relief was known. We objected to the resubmitted attorney fee request and won a reduction in attorneys' fees. |
| *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420 YGR (DMR) | On behalf of class member Frank Bednarz, I objected to a settlement and fee request. The court overruled the objection and approved the settlement, but reduced the attorneys' fees. We appealed the class certification and settlement approval to the Ninth Circuit and won remand. The parties have improved the settlement, but have not yet moved for preliminary approval. We objected to the attorneys' fees in a third tranche of settlements; the district court approved the fee request; we did not appeal, but other objectors did. We joined one objector in a Rule 62.1 motion for an indicative ruling vacating the fee award in the wake of the Ninth Circuit's decisions. |
| *Ma v. Harmless Harvest, Inc.*, No. 16-cv-7102 (JMA) (SIL) (E.D.N.Y.) | CCAF attorney Adam Schulman appeared on behalf of objector Anna St. John to a $0 settlement. The district court rejected the settlement. The litigation is pending. |

| Case | Result |
|------|--------|
| *In re Anthem Inc. Data Breach Litigation*, 15-md-02617-LHK (N.D. Cal) | I represented an objector, CCAF attorney Frank Bednarz, who objected to fees and asked the court to investigate overbilling. The district court agreed and appointed a special master to investigate, and ultimately reduced fees. In response to our objection to *cy pres* provisions in the settlement, the parties agreed to increase recovery to the class. We did not seek fees and did not appeal. |
| *Leung v. XPO Logistics, Inc.*, No. 15-cv-03877 (N.D. Ill.) | On behalf of a class member, CCAF attorney Frank Bednarz objected to the fee request. The district court reduced fees slightly. We did not appeal. |
| *Cannon v. Ashburn Corp*, No. 16-cv-1452 (D.N.J.) | On behalf of an objector, CCAF attorney Adam Schulman objected to an abusive settlement through local counsel. The parties agreed to modify the settlement to improve class recovery, and the district court rejected the modified settlement. |
| *Farrell v. Bank of Am., N.A.*, No. 3:16-cv-00492-L-WVG (S.D. Cal.) | I represent an objector who objected to fees, a *cy pres* provision, and the class certification in the alternative. The attorneys reduced their fee request in response to our objection, and the court approved the modified fee request and settlement. Our appeal to the Ninth Circuit is pending. |

| Case | Result |
|------|--------|
| *In re Petrobras Securities, Litigation*, No. 14-cv-9662 (S.D.N.Y.). | CCAF represented an objector who objected to fees and class certification. The district court reduced fees by over $96 million and affirmed the settlement. We did not appeal. CCAF requested attorneys' fees, which were granted in part and denied in part. We appealed the denial of our attorneys' fees in the Second Circuit and won. On remand, the court again granted in part CCAF's request for fees, which we appealed to the Second Circuit; that appeal is pending. |
| *Berni v. Barilla*, No. 16-cv-4196 (E.D.N.Y.) | CCAF attorney Adam Schulman objected *pro se* to a $0 class-action settlement. The district court approved the settlement, and Schulman's appeal to the Second Circuit is pending. |
| *In re Domestic Airline Travel Antitrust Litigation*, No. 15-mc-1404 (D.D.C.) | CCAF attorney Ted Frank represented class members and CCAF attorneys Ted Frank and Frank Bednarz in objecting to the lack of a distribution plan and a class notice suggesting that the settlement proceeds would go to *cy pres*. The district court approved the settlement and deferred any ruling on fees. Our appeal to the D.C. Circuit is pending. |
| *Cowen v. Lenny & Larry's*, No. 17-cv-1530 (N.D. Ill.) (I objected, represented by CCAF attorney Frank Bednarz) | CCAF attorney Frank Bednarz represented class member and CCAF attorney Ted Frank in objecting to the disproportion in this coupon settlement. The parties modified the settlement to make relief more proportional to attorneys' fees, providing $537,950 more to the class (over original cap of $350,000) and mooting our objection. The district court granted our motion for $20,000 in attorneys' fees on August 20, 2019. |

| Case | Result |
|------|--------|
| *In re Samsung Top-Load Washing Machine Marketing Sales Practices and Prod. Liability Litig.*, No. 17-ml-2792-D (W.D. Okla.) | CCAF attorney Frank Bednarz represented a class member objecting to the disproportion attorneys' fees and actual relief, which consists of duplicative injunctive relieve and a claims-made settlement that provides only coupons to most class member. The fairness hearing was held October 7, 2019 and our objection is pending. |
| *Littlejohn v. Ferrara Candy Co.*, No. 17-cv-1530 (S.D. Cal.) | CCAF attorney Ted Frank represented a class member objecting to this $0 settlement. The district court approved the settlement. Our appeal to the Ninth Circuit is pending. |
| *In re Wells Fargo & Co. Shareholder Derivative Litigation*, No. 3:16-cv-05541-JST (N.D. Cal.) | CCAF attorney Ted Frank objected to the fee request on behalf of a class member. The fairness hearing was held August 1, 2019 and our objection is pending. |
| *In re Stericycle Securities Litigation*, No. 16-cv-7145 (N.D. Ill.) | CCAF attorneys represent a shareholder class member objecting to the fee request in this settlement. The fairness hearing was held on July 22, 2019 and our objection is pending. |
| *In re Volkswagen Clean Diesel MDL*, No. 3:15-md-02672-CRB (N.D. Cal.) | HLLI attorneys objected to the settlement and fee request on behalf of a client in this case; the district court approved both. We appealed the fee award, but did not appeal the settlement approval. The Ninth Circuit dismissed the appeal on the grounds that our client's acceptance of the benefits of the settlement included the signature of a release that released him from any further claims and deprived him of appellate standing, and we did not appeal further. |

| Case | Result |
|------|--------|
| *In re ConAgra Foods, Inc.,* No. 2:11-cv-05379-CJC-AGR (C.D. Cal.) | CCAF attorney Ted Frank represented a class member objecting to the disproportion attorneys' fees and actual relief including worthless injunctive relief. The district court approved the settlement. Our appeal to the Ninth Circuit is pending. |
| *Mckinney-Drobnis v. Massage Envy Franchising, LLC,* No. 16-cv-6450-MMC (N.D. Cal.) | CCAF attorney Ted Frank represented a class member objecting to this coupon settlement. Our objection is pending. |

17.    In the six cases which I list below, I was retained in my private capacity to represent appellants or objectors in cases where CCAF did not have a client. In each case, my retainer was for a flat fee with a right to a percentage of court-awarded fees, and if the lead attorney or client chose to settle an appeal or objection, I received no additional payment. I would only accept the work if I believed the appeal was meritorious. I have a 2-0 record in these cases where my clients chose to see the appeal through to its conclusion. One of these appeals was in the *Groupon* case in the Ninth Circuit listed above.

| Case | Result |
|------|--------|
| *Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014). | I was retained on a flat-fee basis for briefing and argument of the appeal. The Seventh Circuit reversed settlement approval and ordered the reinstatement of defrocked class representatives. On remand, the settlement was substantially improved. I retained counsel to seek fees on my behalf, and the court awarded me fees in 2019. |

| Case | Result |
|------|--------|
| *In re Toyota Motor Corp. Unintended Acceleration Litigation*, Nos. 13-56458 (L), 13-56468 (9th Cir.) | I was retained on a flat-fee basis to participate in the appeal and assist with the successful opposition to a motion for an appeal bond. The objecting client chose to voluntarily dismiss his appeal in response to a settlement offer, and I withdrew from representation before the dismissal. I received no payment from the plaintiffs or defendants. I believe the appeal was meritorious, and the arguments that I planned to make on behalf of the objector were later adopted by the Eighth Circuit in *BankAmerica Corp.* |
| *In re Deepwater Horizon Economic and Property Settlement Appeals* (No. 13-30095) and *In re Deepwater Horizon Medical Settlement Appeals* (No. 13-30221) (5th Cir.) | I was retained by counsel for five appellants on a flat-fee basis while the appeals were pending. After oral argument in 13-30095 and after briefing in 13-30221, three of the appellants retained new counsel who voluntarily dismissed their appeals; I do not know what deal they made, and I received no payment. The two remaining appellants chose to move to voluntarily dismiss their appeals without recompense. I received no payment from the plaintiffs or defendants or objectors. I believe the appeals were meritorious, and many of the arguments I made in the briefing were adopted by the Seventh Circuit in *Eubank*. |

36

| Case | Result |
|------|--------|
| *In re CertainTeed Fiber Cement* (No. 14-1882) (3d Cir.) | I was retained on a flat-fee basis to work on the appeal after assisting counsel for the objector in the district court on an hourly basis. (In response to the district-court objection, the parties modified the settlement to bar reversion to the defendant, which was worth some amount of money to the class, but the district court denied a motion for attorneys' fees for the objector.) As cross-motions were pending in the Third Circuit, the parties settled, and I withdrew from representation, and the objectors dismissed their appeal. I received no payment from the plaintiffs or defendants. I believe the appeal was meritorious because the district court failed to comply with *Baby Products Antitrust Litigation*'s requirement to determine the actual payment to the class. The settlement approved by the district court was akin to that rejected by the Seventh Circuit in *Eubank*. |
| *Fladell v. Wells Fargo Bank*, No. 13-cv-60721 (S.D. Fla.) | I was retained on an hourly-fee basis to provide a draft objection to the attorneys for a pair of objectors, and then a declaration in support of the objection. After I submitted the declaration, a current CCAF client contacted me and suggested that I had a conflict of interest, and asked me to withdraw from the *Fladell* case. I disagreed that there was a conflict of interest, but received permission to withdraw to avoid any collateral dispute with my clients, and waived my hourly fee. I believe the objection was meritorious, and the district court's decision approving the settlement and overruling objections without determining actual benefit to the class contradicted *In re Baby Products* and *Pearson v. NBTY*, among other decisions. I did not participate in the appeal, and did not receive any money from its settlement. |

| Case | Result |
|------|--------|
| *In re Groupon, Inc., Marketing and Sales Practices Litig.*, No. 3:11-md-2238-DMS-RBB (S.D. Cal.) | Discussed above. After appellate briefing was complete, I was retained by one of the appellants in my private capacity to argue the appeal on a flat-fee basis, and the Ninth Circuit agreed with me in an unpublished order that the district court's settlement approval applied the wrong standard of law, and vacated and remanded. |

18.     There were several other cases where CCAF did not have a client where I consulted in my private capacity with attorneys representing objecting class members in cases about legal strategy for objections on an hourly basis or flat-fee basis, sometimes providing draft objections or outlines or draft briefs or draft responses to motions for appeal bonds or sanctions, sometimes providing copies of relevant public filings I had previously made, sometimes recommending that no objection be pursued. Because I did not file an objection as either counsel or objector in those cases, because I had no attorney-client relationship with the objector, because I was not the ultimate legal decisionmaker in those cases, because the ultimate legal decisionmaker in those cases did not always follow my advice or keep me apprised of the status of the case, because I withdrew from continued participation in several pending cases in June 2015, and because of contractual confidentiality obligations, I do not list them in this declaration. I similarly do not list numerous cases where objectors or attorneys or settling parties or experts have discussed pending settlements, client representations, objections, appeals, or collateral litigation with me and/or I have provided copies of

public CCAF filings as a favor without payment or creating an attorney-client relationship. State attorneys general offices and the Department of Justice occasionally telephone me or meet with me from time to time to discuss class-action settlements or certifications, and I do not track or list those cases either.

19.    I no longer accept paid representation in such cases in my private capacity with attorneys who do not agree to avoid dismissing appeals for quid pro quo payment because CCAF engages in litigation to create precedent requiring objectors and their counsel to equitably disgorge payments received without court approval for withdrawing objections or appeals, and I want to avoid conflicts of interest while CCAF engaged in such litigation. I note that it would be simple enough for the settling parties to stipulate to settlement procedures definitively deterring bad-faith objectors by including an order forbidding payment to objectors without disclosure and court approval. Instead they have imposed abusively burdensome requirements on objection that will do little to deter bad-faith objectors while forcing attorneys for good-faith objectors to waste untold hours on a declaration of dozens of pages. Both HLLI and David Watkins have expressed a willingness to be bound by an injunction barring us from settling this objection for payment without court approval if there is any doubt as to our good-faith intentions in objection to an unfair settlement and fee request.

20.    A website purporting to list other cases where I acted as an attorney or objector is inaccurate, listing me in several cases where I had no

role, made no appearances, and had no attorney-client relationship with the objector; and falsely attributing to me filings I had nothing to do with. The website is further inaccurate in omitting dozens of my successful objections, falsely characterizing successful objections as having been overruled entirely, and misrepresenting the substance of court filings and testimony. Though I have notified the website of its errors, and though I frequently submit declarations such as this one providing a full resume of my cases and results, they refuse to provide accurate information about my record.

21.    A number of objectors I have no affiliation with have filed briefs plagiarizing my work or CCAF's work in other cases without consulting with me. At least one objector has incorrectly represented to a court that I have agreed to represent him before a retainer agreement was signed.

22.    HLLI pays me on a salary basis that does not vary with the result in any case. HLLI and CCAF attorneys do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

### Pre-empting Ad Hominem Attacks

23.    In my experience, class counsel often responds to CCAF objections by making a variety of *ad hominem* attacks, often wildly false. The vast majority of district court judges do not fall for such transparent and abusive tactics. In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common

ones below. If the Court is inclined to disregard the *ad hominem* attacks, it can avoid these collateral disputes entirely.

24.    Class counsel often try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to tar CCAF are inapposite. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 437 n. 150 (public interest groups are not professional objectors); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. The difference between a for-profit "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for pro bono representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success,

and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements and fee requests it sees.

25.     While one district court called me a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to me non-pejoratively as a "professional objector" in an opinion agreeing with my objection and reversing a settlement approval and class certification.

26.     Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See Pearson v. Target Corp.*, No. 17-2275 (7th Cir.); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

27.     Before I joined CEI, I had a private practice unrelated to my non-profit work. One of my former clients, Christopher Bandas, is a professional objector who has settled objections and withdrawn appeals for cash payments. I withdrew from representation of Mr. Bandas in 2015 when he undertook steps that interfered with my non-profit work. Mr. Bandas was criticized by the Southern District of New York after I ceased to represent

him, and class counsel in other cases often cites that language and attempts to attribute it to me. Class counsel in multiple cases, using boilerplate language, has tried to make it seem like my paid representation of Mr. Bandas was somehow scandalous, using language like "forced to disclose" and "secret." The sneering is false: my representation of Mr. Bandas was not secret, as I filed declarations in my name on his behalf in multiple cases, noting under oath that I was being paid to perform legal work for him; I filed notices of appearances in cases where he had previously appeared; and my declaration in the *Capital One* case ending the relationship was filed voluntarily at great personal expense to myself, as I had been offered and refused to take a substantial sum of money to accede to a Lieff Cabraser fee award of over $3400/hour. I only worked for Mr. Bandas in cases where I believed there was a meritorious objection to be made, had no role in any negotiations he made to settle appeals, and my pay was flat-rate or by the hour and not tied to his ability to extract settlements. I argued two appeals for Mr. Bandas, and won both of them. There is nothing scandalous about that, unless one believes it is scandalous for an attorney to be paid to perform successful high-quality legal services for a client. CCAF had no attorney-client relationship with Mr. Bandas, and Mr. Bandas never paid CCAF, other than for his share of printing expenses when he was an independent co-appellant representing clients unrelated to CCAF.

28. Firms whose fees we have objected to have previously cited to *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ 10329 (RJS), 2013

WL 4399015 (S.D.N.Y. Aug. 7, 2013), in efforts to tar CCAF. While the *Wyeth* court did criticize our client's objection (after mischaracterizing the nature of that objection), it ultimately agreed with our client that class counsel's fee request was too high, and reduced it by several million dollars to the benefit of shareholder class members.

29.     Class counsel frequently cite a nine-year-old case, *Lonardo v. Travelers Indemnity C*o., 706 F. Supp. 2d 766, 804 (N.D. Ohio 2010), where the district court criticized a policy-based argument by CCAF as supposedly "short on law"; however, CCAF ultimately was successful in the Seventh and Ninth Circuits on that same argument. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (agreeing that reversionary clauses are a problematic sign of self-dealing); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (same). Moreover, the court in *Lonardo* stated its belief that "Mr. Frank's goals are policy-oriented as opposed to economic and self-serving" and even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Lonardo*, 706 F. Supp. 2d at 813-17.

30.     CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue,

and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

31.     While I am often accused of being an "ideological objector," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of Consumer Reports from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate. I have frequently confirmed my support for the principles behind class actions in declarations under oath,

interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my briefing in *Frank v. Gaos*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. And I was the putative class representative in a federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.).

32.    On October 1, 2015, after consultation with its board of directors and its donors, CCAF merged with the much larger Competitive Enterprise Institute ("CEI"). Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I was permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CCAF attorneys made several filings in several cases opposed by CEI donors.

33.    CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor

CCAF's clients agree with all of those positions, and they should not be ascribed to me, my clients, or this objection, any more than my support for a Pigouvian carbon tax should be ascribed to CEI scholars who have publicly opposed that position.

34. CCAF has since left CEI, and are now part of the Hamilton Lincoln Law Institute, which receives no corporate funding. We did not consult any of our donors about our objection to the *Equifax* settlement.

35. Some class counsels have accused us of improper motivation because CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibly of a fee award never factors into the Center's decision to accept a representation or object to an unfair class-action settlement or fee request.

36. CCAF's history in requesting attorneys' fees reflects this approach. Despite having made dozens of successful objections and having won over $200 million on behalf of class members, CCAF has not requested attorneys' fees in the majority of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the court for a fraction of the fees to which it would be

legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount be returned to the class settlement fund. In *Petrobras*, despite winning tens of millions of dollars for the class, we requested less than $200,000 in fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 18, 2019, in Houston, Texas.

Theodore H. Frank

Received
SEP 26 2019
by JNDLA

17 August 2019

In re: Equifax Inc. Customer
Data Security Breach Litigation
Case No. 1:17-md-2800-TWT

Theodore S. Jackson          312-401-3505
1639 W Farwell Ave. #2       theodore.jackson@
Chicago, IL  60626                   gmail.com

To Whom It May Concern:

    I am writing to express my objection to the way in which this settlement is being administered. I have, since initially applying for the cash compensation of up to $125, received a subsequent email asking me to reconfirm that I already posess credit monitoring and that I am thus entitled to a cash reward. Over the years I have been part of similar classes (one from Verizon comes to mind in which I was offered a microphone without being told whether it was ever compatible with my cellular phone) but even in that case was never asked to confirm my previous statement that I was a member of that class. If I remember correctly, during the registration process for this case I was already asked to affirm under penalty of perjury that my statement(s) were true. Why, then, would a second statement or confirmation be necessary? The only reason I can think of for this double confirmation is that

is that those persons in charge of administering the settlement simply hope to create another barrier to prevent these cash payments from being sent. After all, anyone with a basic knowledge of arithmetic can calculate that $31 million divided by $125 means that only a class of 248,000 persons could ever receive the full payment of $125. Unfortunately the missteps Equifax took affect 147 million claimants. For these reasons I find that the way in which the settlement in this case has been handled is unsatisfactory. Anyone who has had their personal data or identity stolen would say that $125 ~~the~~ does not remedy this kind of unfortunate circumstance. The data that Equifax maintains pertains to almost every U.S. citizen. The court should send a much stronger message to credit reporting agencies that they need to take every precaution with our personal data and that future breaches will not be tolerated.

I have not objected to any other class action settlements in the last five years.

Unfortunately I am unable to appear at the Fairness Hearing either in person or through my attorney.

Sincerely,

Theodore S. Jackson



1639 W. Fargwell Ave #2
Chicago, IL 60626

CAROL STREAM IL 601
23 SEP 2019 PM 4 L

Equifax Data Breach Class Action Administra
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

SEP 2 6 2019

98111-941818

Thomas Shaffner
144 N. 6th St.
Highlands, NC 28741
571-303-9866
Shaffnert03@yahoo.com
11/4/2019



Received
NOV 2 1 2019
by JND' ^

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Dear Sir or Ma'am:

I am a member of the plaintiff class in the case called *Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT*. I am a class member because I have confirmed via the claim website that I am a member of the claim; my claim number is PGVKJ-X23LE. I have never before objected to a class action settlement and I do not intend to appear at the fairness hearing. I am writing to object to the claim.

The claim notifications states that up to $125 will be available to claimants, but the Federal Trade Commission itself is noting that this option is effectively nonexistent due to the number of claimants and recommending that customers take the credit monitoring instead of the payment.
(https://www.consumer.ftc.gov/blog/2019/07/equifax-data-breach-pick-free-credit-monitoring) Having a governmental agency make such a statement seems to me the definition of an insufficient settlement; were the settlement remotely commensurate with the size of the breach this would not be an issue.

This situation is meaningfully deceptive to claimants (who the US government notes would now be effectively in error to trust settlement documentation they have received), and unjust as it means any and all claimants who already have credit monitoring will remain minimally compensated or uncompensated. This means claimants effectively suffer *further* due to the magnitude of the negligence of Equifax and instead of truly being required to compensate in proportion to the damage it caused, Equifax benefits from the magnitude of its own negligence. Finally, claimants who fail to discover the warnings from the FTC as I did will have insufficient information to make a reasonable decision regarding the claim as the claim notifications themselves include estimates that are, quite simply, no longer accurate.

As such, I find the claims process disingenuously presented, the settlement notification inadequate, and the settlement itself neither fair, reasonable, nor adequate. I request that the court reject the settlement.

Sincerely,

Thomas Shaffner



PRIORITY
PRIORITAIRE / LUFTPOST

Equifax Data breach Class Act. Settlement Adm.
Attn: objection
c/o JND Legal Adm.
P.O. box 91318
Seattle WA 98111-9418, USA

98111394180 B900

NOV 2 1 2019

628 Pullman Place

Alexandria, VA 22305

*Sept. 23, 2019*

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

Received

SEP 30 2019

by JNDLA

Dear Sir,

Re Equifax Inc. Customer Data Security Breach Litigation, Case No. 1:17-md-2800-TWT, my wife and I were among the 147 million whose credit files were breached due to malfeasance on the part of Equifax. (After receiving letters from Equifax, we confirmed online that both of our files were among those breached.)

After being told that the proposed settlement of up to $700 million will provide for $125/person for those whose files were exposed, we now find out that there are insufficient funds – only $31 million - to provide for anything more than 248,000 claims and that claims in excess of this will result in prorated payments. If all 147 million opt and qualify for the cash settlement, we would receive as little as 42 cents. What a misleading and unfair proposed settlement! Where is the other $669 million going?

Equifax's negligence has forced us to spend both considerable time and $60 to enroll in freezing our accounts with the three credit reporting companies. (We have the receipts.) On top of that, we have spent several hours over the course of the last year temporarily suspending these freezes when we open new banking accounts (and will have to do this for the foreseeable future).

For the record, we have not objected to any other class action suit settlements over the last five years.

Thomas Michael Slayton                    Cheryl Elizabeth Slayton



USA FIRST-CLASS FOREVER

Slayton
628 Pullman Place
Alexandria, VA 22301

SEP 30 2019

Equifax Data Breach Class Action
Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318

18 November 2019

Tomoe Kaneko

98 Beltran St, Apt 1

Malden, MA 02148

Received

NOV 2 1 2019

by JNDLA

RE: *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT

To whom it may concern:

I am contacting you today as a member of the settlement class to inform you that I strongly object to the terms of the settlement presented forth in document 739-2.

I verified that my personal information was impacted by Equifax's data breach through the settlement website. I have reviewed the contents of the settlement offer and find that the offer made is wholly unacceptable. The settlement offer is not fair, adequate, reasonable, nor in the public interest because it fails to be commensurate with the degree of immediate and reasonably predictable damage resulting from Equifax's negligence in safeguarding people's most sensitive personal information. Accepting the settlement offer as is would be a gross miscarriage of justice.

The remedial action of credit monitoring is flawed on multiple bases. Credit monitoring is already available to all with the same degree of internet access as those accessing the settlement website; multiple companies offer credit monitoring online for free. Also, the stated limit for enrollment in this credit monitoring program is seven million (7,000,000) people. This is grossly insufficient when the number of settlement members is greater than one hundred and forty million (140,000,000) people. Even assuming only half of the settlement members enroll, the allocated funds would be insufficient to cover those members for 5 months.

The alternative remedial action of a $125 cash settlement per person is also significantly flawed. With a cap of thirty one million ($31,000,000), it would be impossible to come close to covering all those affected by the breach who also have some form of credit monitoring already. With the credit monitoring site Credit Karma as an example, if half of its fifty million (50,000,000) US members, which is the same ratio to the number of Americans affected by the breach, were to

choose the cash settlement, each person would only receive $1.24 due to the egregiously low cap on this form of compensation. $1.24 is in no way commensurate to the damages of the Equifax data breach, and this one example does not take into account the multitude of other Americans affected who have some alternate credit monitoring service already.

I have not objected to any class action settlements within the previous five (5) years.

I do not intend to appear at the Fairness Hearing in person or through a lawyer.

Please contact me if you have any questions or require any clarifications.

Sincerely,

Tomoe Kaneko

98 Beltran St, Apt 1
Malden, MA 02148

NOV 2 1 2019

Equifax Data Breach Class Action Settlement Administrat
Attn: Exclusion and Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

1 excl.
1 obj.



Equifax Data Breach Class Action Settlement Administrator

ATTN: Objection

C/O JND Legal Administration

P.O. Box 91318

Seattle, WA. 98111-9418

Received

NOV 1 2 2019

by JNDLA

To Whom it may concern:

I am writing this letter to inform you that I am extremely unhappy with the Equifax settlement. Equifax has made billions of dollars off the use of people's personal data. This is data that we haven't necessarily given them permission to collect and sell. This information is vital to people's personal and financial security. The punishment given was not great enough for the crime they committed.

To remind you, Equifax makes money off collecting and storing personal data. This company's data is the difference between a 3% and 10% mortgage interest. This data is data used by employers to determine if a person can gain employment or stay employed. This is life blood data. As a company that makes money off collecting and selling this data, they have a duty to protect that very same data.

Equifax allowed for millions of people's data to be exposed. These are everyday people who can't afford to pay thousands of dollars to restore their credit when it is ruined by Equifax's disastrous actions. Equifax took over seven months to tell anyone that their information was stolen; in the meantime, they continued to evaluate people's credit worthiness and even took in information on new accounts opened on behalf of a customer (presumably thousands opened as a result of their failure to protect our data).

It is highly likely that thousands of new accounts were opened and impacting people's credit within that seven-month period. Outside of just credit worthiness and fraudulent accounts is the physical security of millions of people. Giving criminals our addresses and personal identifying information that can be used for thousands of impersonation crimes. Think about the person that will be put in jail or the person who is hiding from someone that wants to physically hurt them and who's address is now compromised. Think about the child that is checked out of school by a person using this very information to claim they are the parent. How about the person that applies for employment and is told "we have gone with another candidate;" all because Equifax didn't protect that person's information. Equifax's action has compromised the very opportunity to put food on the table. The impacts of this breach and Equifax's failure to quickly inform will go far beyond the time Equifax is allowed to wipe its hands of this.

Equifax has shown that it is incapable of putting our security over their profits. In return they are given an easy-out to settle their abhorrent crime. The United States had slapped Equifax on the hand when they should be closing them down and indicting people within their organization. This company above all other companies should have the highest responsibility to invest in technology and security to safeguard people's information. They should have told us immediately and placed everyone on credit monitoring for the rest of their lives. Equifax continues to make money off monitoring people's credit

and doesn't even have the decency to provide individuals free monitoring service without having to jump through hoops.

Equifax's actions are indefensible and the equivalent of an everyday person failing to report a felony they have witnessed. That everyday person would be in jail and Equifax is let off with a punishment equivalent to a speeding ticket. Equifax should have to give free credit monitoring for the rest of each person's life and they should be responsible for the full cost of repairing and correcting any issue, now or 15 years in the future, that was caused by their failure to protect data and their failure to report the breach in a timely manner.

We are truly disappointed in the outcome of this settlement and the ability of the United States Justice Department to hold Equifax accountable for their actions.

Sincerely,

Trinity Tuttle & Benjamin Reynoso

(Claim # PPD7S94TQX & PKMU4PVYHC)

1804 Garnet Ave #317

San Diego, CA. 92109

Ph: 702-994-3830

TUTTLE/ REYNOSO
1804 GARNET AVE
#317
SAN DIEGO, CA 92109

NOV 1 2 2019

EQUIFAX DATA BREACH CLASS ACTION SETTLEMENT
ADMINISTRATOR
ATTN: OBJECTION
C/O JND LEGAL ADMINISTRATION
P.O BOX 9318
SEATTLE, WA 98111-9418

98111-941818

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 25 2019

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

### Case No.: **1:17-md-2800-TWT**

In re: Equifax, Inc. Customer Data Security Breach Litigation

## CLASS MEMBER
## TROY KENNETH SCHEFFLER'S
## OPPOSITION AND OBJECTION TO PROPOSED SETTLEMENT

### STANDING

Objector Scheffler finds standing with this Court as a class member due to his data being breached consistent in the instant case definition of class members as identified in class notice, described by court order, and by confirmation by the class administrator through https://www.EquifaxBreachSettlement.com.

### "FAIRNESS" HEARING

Objector does not intend to attend a fairness hearing; they aren't usually very fair and just a formality to pretend pesky objectors are actually being heard. Like any other herding of a commodity, how often do cattle rustlers listen to their cattle?

1

# STATEMENT OF PRIOR OBJECTIONS, AVAILABILITY, AND REPRESENTATION BY COUNSEL

Class objector Troy Scheffler has made objections in the following cases:

1:13-cv-24583-PAS (Southern District of Florida)

15-02599-MD-MORENO (Southern District of Florida)

8:15-cv-01592-AG-DFM (Central District of California)

Although not formally represented, your objector has incurred expenses related to attorneys such as research, FRCP direction, analysis, and formatting. The costs are being incurred on a continual basis and your Objector may formally retain counsel. Anyhow, isn't this part of the demand of the Cass Notice to disclose attorney compensation at this point treading on attorney client privilege?

I mean I totally understand that the new rules were to intended to accelerate the shakedown and that objectors aren't compensated as the attorneys are despite the fact they are trying to do more of a service to the class than anyone else. Basically, Rule 13(e)(5)(B) provides less work for judges, a faster payday in the millions for the class attorneys, and dissuades

2

any objection as fruitless in any respect. There is of course no other reason for the rule change. Quite the justice system we have.

I am available any date between 11/19/2019 and 12/05/2019 to be disposed and explain how much of a scam this settlement is.

## OBJECTION AND ARGUMENT

### I.    The Class Award is Based Entirely on Speculation

Throughout the parties' proposed settlement and ultimately the class award is the ethereal consequence of "may receive". On its face this is a speculative award. One cannot be expected to waive an absolute right to seek relief on the basis that they "may receive" expressed compensation.

One cannot make a contract that "if you waive your right to sue", you "may receive" compensation; where is the reciprocal consideration? This is absurd and is at best playing the lottery and at worst debasing the Court to nothing more than a casino that a class (MILLIONS in this matter) is forced to participate in.

There is no concrete award for a member to adequately make an informed decision on value to settle. In fact, this racket of class actions

inflating and conflating "potential value", while decreasing the actual concrete value, while astronomically overcompensating the class counsel with enormous payouts is underscored in this case.

The Class Notice itself states one can file by 01/22/2020 for "current losses and time" at $25 per hour for up to 20 hours. This is then followed by the caveat, "If there are more than $31 million in claims for Time Spent made during the Initial Claims Period (see Question 12), all payments for Time Spent will be reduced and distributed on a proportional basis (see Question 17). Certain claims for Time Spent may also be made during the Extended Claims Period, up to a total cap for Time Spent during the Initial and Extended Claims Periods of $38 million in claims."

The Notice then continues from the "potential" reimbursement of $500 to a "Settlement Benefit" of reimbursement of $20,000?!?! Wait what? So is this supposed to also come out of the $38 million pool? How on earth can this Court entertain such wildly different amounts and basis to be paid from a total fund that may or may not be able to cover claims made merely on time spent? In other words, if the parties anticipate that the reserved funds may run out just on rank and file

4

claims based upon time spent capping at $500, how on earth do they think there could be enough to cover $20,000 claims?  Why should those that suffer the most in damages share the pot with the millions of others that didn't?

So if a pharmaceutical company gave millions of people a headache and a few people brain cancer, they can just say, "Oops, we were distributing to the MILLIONS of people who just coincidentally made it before you because you had to round up your medical bills and we ran out of funds, here is a rose for your grave".

Why are the two VICTIMS with admittedly wildly different levels of damages placed in the same pool?  This is crazy let alone emphasizes that this amount was pulled out of their... hat.

Oh, but it gets worse...  The deadline in the extended claims period goes to 01/22/2024.  Apparently, the "award" one is forced to consider is first come first served?  This is outrageous.  So basically, one could have the "hackers" use their obtained information to damage them in 2019.  That victim files their $20,000 claim immediately and "may" possibly, maybe, sorta, roll the dice get paid that $20,000.  Then their neighbor, also breached, has their information used in 2024 and the calculated

5

damages are the exact same. That neighbor files a claim in 2024, but the funds are exhausted. Same underlying claim, same actual damages, but one gets paid and the other gets stiffed. Lol, this settlement is soooooooooo stupid!

Whoa whoa! Never fear if the inverse is true. If settlement funds remain, the ATTORNEYS get paid more! Say what girlfriend? Yeah, the class gets stiffed in a shortage, don't get paid more than "kinda promised" in a surplus, but the attorney's get paid regardless and then some... God bless the hustlers, amirite?

So in Doc 739-1 P19, the claim is made that "The proposed class members treat class members equally. Each class member is eligible to receive the same benefits as other class members and no class members are favored over others." Well I am all in favor of "class members treating other class member equally" (I am assuming an error in grammar), but it is patently untrue that "no class member is favored over others". As stated, those who file claims earlier than the rest, get paid more. Soooooooooo, the quickest are favored over the more methodical. I mean this Court supports methodology when assessing their damages, right?

6

The class reps also get the shaft. The pleadings claim the class reps benefit from a surplus along with the attorneys; you know, for the attorneys to make it seem like a team win. Oh yeah? How so? How is that even possible considering in EVERY class certification, the class reps must state their absolute compensation. Lol, that's ONE OF THE MAIN CONSIDERATIONS IN A CLASS. Give me a break, attorneys trying to act like they have any consideration outside their own wallet and ego is laughable.

This is of course bogus. The class reps don't receive more in a surplus, only the attorneys do. This is clear from the fact that the attorneys worked up the payment scheme whilst ignoring the class reps. Oops! I think what is even clearer is that the class attorneys were only focuses on THEIR compensation.

The reps got hosed in this case and I'm sure when they were getting wet their counsel was telling them it was rain. ANYONE OF THE ATTORNEYS ON THIS CASE AND ANY OF THE JUDGES THAT HAVE TOUCHED IT KNOW THAT IF THOSE CLASS REPS STAYED WITH AN INDIVIDUAL CLAIM THAT THE DEFENDANT WOULD HAVE SETTLED WITH EACH AND EVERYONE OF THEM FOR

$5000 <u>MINIMUM</u>. If their counsel screwed them by only demanding $2,500 (If they demanded anything-My guess is that the Defendant pitched this and the rep attorneys were like whatever, let's talk about the millions we're getting), how could the class ever expect to believe they're getting any better representation?

Oh and then, how can one state with a straight face, "The amount that you receive may be substantially less than $125"... Oh, like zero? What a bargain. Unfair and unequal outcomes for each class member is what classes are supposed to avoid. Tell me this is a joke.

Man, and I thought I had enough until I started reading more of this rubbish. In the PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT, they actually state "The total cost to Equifax thus is at least $1.38 billion and might be significantly more"!!! Wowee! Or no wait, $1 billion of that is for EQUIFAX in a capital investment...not the class members.

Then of course the litigants LIE to the court, "The benefit to the class is even greater. The retail cost of buying the same credit monitoring

8

services for the entire class alone would exceed $282 billion ($1,920 times 147 million class members)."

Well, credit monitoring wouldn't have prevented the data breach. So fail right there. No, not only is there no value in something Equifax pays nothing for, but only a fraction of a fraction of anyone cares about credit monitoring and only a fraction of a fraction of those people ever pay for it considering it comes free with a Discover Card, Capital One Card, etc etc etc. Oh did I mention there are other free credit monitoring sites like CreditKarma?

Is it any surprise in the dozen or so class settlements that Equifax has made in just the past few years that this is the first thing to pitch? Bahahaha, *Chakejian v. Equifax Information Services, L.L.C.*, 07-cv-2011 (E.D. Pa. 2011) Credit monitoring. *James Jenkins, et al., v. Equifax Information Services LLC* Civil Action No. 3:15-cv-00443-MHL... Credit monitoring. On and on we go. How well did all this credit monitoring work to stop a data breach?

This is getting so deep that I have to put on my waders to finish reading this trash. Lol, credit monitoring is like giving a football as

compensation to someone you made a quadriplegic that didn't even like sports in the first place...  Sooooooooo, stupid.

## II.    The Class Basis is Entirely Speculative

The class and award are continually based upon "risk".  "Risk" is not actionable; it is by definition speculative.  Bootstrapping the idea of exposure as a "damage" is putting the cart before the horse.

The court itself in its 01-28-2019 order cites the 96 plaintiff's alleging "'present, immediate, imminent, and continuing increased risk of harm" (Order 01/28/2019) due to the compromise of their personally identifiable information in the Data Breach'" (p.3)  Huh?  When is "risk" actionable or a factor in damages to justify a class award or even define a class?  Continuing risk?  If the court believes there is "continued increased risk of harm, why are we settling at such an early stage?  Shouldn't we give it a bit of time to see what pans out?

Citing *Finnerty*, the Court erroneously assumes that this case by asserting that in Equifax that the hackers actually looked at what they obtained.  Well this seems to be a big question, has anyone established

that the "breach" actually obtained any information?  Most hackers exercise their craft just as a challenge; ie for funsies.

As evinced by the class award scheme, people are forced to play the odds.  Why?  The Court is conflating "risk" with damages.  They are playing along with the parties in conflating proximate cause with the separate element of damages.

This places one in a precarious situation of "possible" invasion of privacy, to actually being a victim of the use of their information which compounds actual damages.  This scheme is untenable.

This forces class members to roll the dice.  They may look at the settlement as a matter of compensating for simply the data breach.  If so, they could be coaxed into taking the $2.50 (380.5 million bucks divided by 147 million affected members).  Then later they could find out that their information is LATER used amassing thousands upon thousands in actual damages and would be SOL, and I am not talking about statute of limitations.

There is absolutely no commonality in potential damages.  Then again, they are POTENTIAL damages.  Who knows?  Were the hackers

11

caught?  Nope?  So how on earth are class members supposed to weigh their options?

What exactly are we settling for?  Who saw what and what did they do with what they saw?  So a peeping Tom gets busted looking in the window takes pictures of my naughty parts and then sells them nationwide making gorillions of dollars.  Ok, I know what happened, how it affected me, and I can quantify a few things.

What is this case?  This could have been nothing more than someone not paying attention to the car they got in when their friend was being picked up and noticing it's the wrong car.  Other than a smirk, a sorry, and some uncomfortable laughs, what else is there?

I have had personal accounts "hacked" a number of times.  What has happened?  Nothing.  I changed my password.  Lol, in this case, a person can't even do that.  Instead they wait and wonder what actuals and factuals will come upon them in the future if they take this dumb dumb settlement.

Serious guys and gals, we keep hearing about this enormous "risk", but have we had an instance of someone actually taking the data IN

THIS BREACH and then using it to damage one of the class members? Who did it?  Certainly we have a perp that one of the Plaintiffs can point to, because how else are we to believe they were the cause of the damage?  I worked 10 years in bill collecting and I could have got anyone's social security number, birthdate, and credit card numbers. They hired people off the street...  How do we know if anyone affected wasn't a victim of my former cadre?  Wowzers, even in a res ipsa case you need more to go on.  Then this Court expects a class to be based on this?

I really did laugh out loud when the settlement pimps out their nonsensical credit monitoring nonsense.  I thought this was settlement on a data breach, you know, they already have the data...  How exactly would credit monitoring stop another data breach?  Oh and just as an aside, free credit monitoring is something you can get for FREE anywhere.  They may as well have thrown in "free air to breathe"... so valuable that you need it to live! Their credit monitoring costs nothing and as said can be found elsewhere for the value of zero.  How does this Court seriously take ZERO in value as a value for those affected?  Zero,

null, nothing.  Nothing is not something.  $1,200 value they claim in their FILED DOCS TO SUPPORT THIS SETTLEMENT?

Let's see what the defendant charges…  Hmmm…  Beep beep type type type beep boop beep.  My computer came up with an answer… According to their website:  Monthly is $19.95, times 12 months, times 3 years.  Beep beep boop beep, you can buy it WITH NO REBATE for $957.60.  $1,200?  Just this took 10 seconds of research to disprove what the parties are claiming in anticipation to their payday.    I wonder where else the parties are duping this court.  See attorney's fees…the fluff and exaggeration there would make Jack and the Beanstalk seem based on a true story.

### III.    The Underlying Claims Are Flimsy. The Notice is a Lie, and the Settlement Only Benefits the Class Attorneys

The 559 page complaint takes shotgun to the nth degree.  As said, the Plaintiffs took as much fecal and hoped something would stick.  Oh and boy does this settlement stink.  I mean really guys?  There doesn't need to be much commentary on how such a complaint with so many claims from different states claim that there is somehow typicality for a nationwide class.  Hey, you guys want to do it state by state, more

14

power to you.  However, poaching Minnesota residents in such a
pleading is unconscionable.

If the Plaintiffs were at all serious about their claims, they would
have demanded more than $2,500 for a rep fee.  I seem to remember
class reps needing to show they are zealously representing the class.
They aren't even zealously representing themselves even with their
bazillion dollar attorneys.

We seem to get the breakdown of how the attorneys are going to buy
their new yachts, but how exactly are the class reps getting paid?  The
notice simply states they get $2,500.  Yet, in the

*Chakejian*?  The reps got $15,000.  *Jenkins*?  $5,000.  Oh and let's see
here…  As time passes, reps and the class seem to get paid less while
the attorneys, who arguably do less work as the previous settlements
have already done the trailblazing, while the attorneys conveniently get
paid more…  Imagine that!

Where exactly did the parties get $2,500 for the rep fee?  *In re
Experian Data Breach Litigation*, 15-CV-01592 AG DFM…  Like I said,
the groundwork was already laid for a copycat lawsuit and a copycat

15

settlement.  Yet this should beg the question with THE COURT, what exactly did the class attorneys do in this instant case that the Experian Class attorneys didn't do?  In Experian the class attorneys demanded "up to $10.5 million".  In this God forsaken case, they want "up to $77.5 million" and reimbursement of $3 million more???  Uhhhh, doesn't the Court demand justification for attorney's fees or instead do they just let these guys and gals walk on the heads of class members on their way to the Promised Land?

The funniest part about EVERY class action with Equifax (and of course others) is that the class attorneys ALWAYS claim they're settlement is revolutionary...  Lol, the hubris gained after spending just 3 (three) years in law school.

In this case they brag about their revolutionary way to notice the class and how their negotiations were down and dirty.  Yeah right...  With the amount of class settlements, it should be judicial notice that Equifax folds like a lawn chair.

"A key feature of the settlement is a first-of-its-kind Notice Program..." (P.10 Doc 739-1)  Lol, huh?  Trying to let people know that they are being forced into a settlement is a "key feature".  Admittedly, I

may have missed it and will look again on appeal, but the parties claim that in this new revolutionary key feature, that it would be tested on "1,600 likely class members". Well, that's a heck of an assumption they're likely class members, but what were the results???

## IV.   The Foundation of the Settlement is Based on Flawed Law

559 pages to justify a class cannot possibly satisfy by nature the uniformity needed under Rule 23. How much argument does this point require? In fact, the idea of littering a complaint with state law claims should justify NOT having a class rather than justifying a nationwide class under Rule 23.

How does basing other state's law on "Georgia" law to justify a nationwide class? This is the opposite of state sovereignty and circumvents 49 other states. This was the premise to the foundation for the Court to justify entertaining the class. (P.8 1/28/2019 order)

There are so many claims in the complaint it is nearly impossible to understand what the settlement's driving force is.

The second reason that this scheme presents a problem is that Minnesota residents are being hijacked by a district they don't live in.

Why does this matter? Well, you should be able to hire an attorney from the state you were SUPPOSEDLY damaged in. Georgia doesn't allow pro haec the same as most others so the attorney I would like to have represent me in this nonsensical case, cannot directly represent me. This one of the biggest problems with nationwide classes. Those outside the venued district have a much more difficult time finding counsel. I have sought direct counsel for this objection and have not been able to find anyone. My intended counsel sought counsel to sponsor him for pro haec, no luck. This is not equitable.

### V.     For Once I would Agree With Equifax

Your humble objector realleges and reasserts each and every claim and averment made in the Defendant's motion to dismiss. The Complaint was junk and so is this settlement because it was based upon it.

Come on guys. Doc 739-1 If we don't cram through this settlement "The risks are also substantial. If the Settlement is not approved, Equifax will surely renew its arguments under Georgia law that there is no legal duty to safeguard personal information after the recent decision in Georgia Dep't of Labor v. McConnell, 828 S.E.2d 352, 358

18

(Ga. 2019), which held under different facts that no such duty exists, and that Plaintiffs have not alleged any compensable injuries. See Collins v. Athens Orthopedic Clinic, 347 Ga. App. 13, 16 (2018), cert. granted (Apr. 29, 2019) (presenting the issue of whether a data breach victim may recover damages without proof of actual identity theft).

Weird, I actually made this very argument before I ran across this. Why would Equifax ever agree to a reasonable award to something they would likely win by trying the case? Lol, it goes on as if I wrote it myself and did in this objection, "Even if Plaintiffs prevail on those legal issues, they face the risk that causation cannot be proved, discovery will not support their factual allegations, a jury might find for Equifax, and an appellate court might reverse a Plaintiffs' judgment.

I thought this was being held in a Court, not a railroad.

## VI.    The Noticing Scheme is Garbage and a Lie

Email addresses come and go. I have changed mine at least 3 times in the past few years. What exactly is "an aggressive digital and social media campaign designed to reach 90 percent of the class an average of eight times before the Notice Date and six more times by the end of the

Initial Claims period??  Bahahaha!  I haven't seen this once and this is
supposed to be the most effective way?  This is nuts.

90%, eh?  https://www.statista.com/statistics/273476/percentage-of-
us-population-with-a-social-network-profile/  Shows that only 79% of
the public has a social media profile.  Even less would use it regularly.
Does the Court just not pay attention to the BS in these classes just
because both parties are colluding?  AT BEST, their scheme would only
reach 79% of people and that would be if EVERY SINGLE ONE of those
with social media profiles were hit with a notice.  It is literally
impossible to reach 90% even with divine intervention.  This took me 10
seconds of a Google search to debunk.

USA Today?  Lol, who reads that?  News flash: Hear ye hear ye!
Mainstream "news" is tanking fast.  Fake news is a thing.

Here is the first article of this great paper that surely everyone
would be drawn to like flies on poop...
https://www.usatoday.com/story/opinion/2019/09/23/black-history-white-
privilege-course-graduation-requirement-column/2389375001/

Yep.  "All college students should take a mandatory course on black history and white privilege".  Where do I get my copy???  Maybe my "white blindness" is stopping me from seeing how amazing of a settlement this truly is.

Or another gem on literally my second search, https://www.usatoday.com/story/news/nation/2019/02/20/hate-groups-white-power-supremacists-southern-poverty-law-center/2918416002/

Yep, those white supremacists are the ones roaming the streets lynching the poor blacks.  This despite that at 12% of the population, blacks commit over half the nations murders.  Interracial rape is 100% black on white according to FBI crime stats.  Oh and the latest interracial violent crime data from the DOJ shows that out of 590,000 interracial violent crimes between whites and blacks 90% were black on white.  YES NINTETY.  Oh and mass shooters?  Over 75% are black

The majority of hate groups are black.  The only reason there was an uptick in "hate groups" was not because of white supremacists (What are they claiming whites are believing they are supreme in anyhow; let me know and we can compare notes), but simply due to more departments are participating in reporting hate crimes.  The numbers

still show blacks are overrepresented in hate crimes and whites are underrepresented. This notwithstanding the constant which hunts against whites.

Lets go for a third search...
https://www.usatoday.com/story/news/nation/2019/08/06/shooting-ohio-dayton-el-paso-texas-shooter-gilroy-california/1924532001/

Hmmm weird, defying all reality, whites and especially white males are just out of control shooting up everyone! Yet reality again shows the vast majority of mass shootings (4 or more people) are a black thing. The NYT found 75% were black and that number is low https://www.nytimes.com/2016/05/23/us/americas-overlooked-gun-violence.html Ahh, the Mother Jones article is where it all begins... Notice that to get whites in the majority, they had to exclude gangs, drugs, and everything typically related to blacks. Boom! Now mass shooting is a white thing and the media runs with it.

Yet, this hack racist and sexist newspaper is what people are expected to read to get notice and this Court is promoting it? Shameful. No thanks.

22

## VII. It's All About the Attorney Fees and Cronyism

Shareholders and taxpayers be damned! "Class Counsel will request 25 percent of the $310 million settlement fund they negotiated in the Term Sheet." The People actually damaged, maybe possibly? $2.50 and the class reps a pittance at $2,500. Gotta love how the fee is even based on a scam. In what world outside of bizarre class action land do attorneys get compensated thousands of times, well millions of times more than the Plaintiff's?

Lol, this fee arrangement is so sleazy. So they say, "Well we are representing all these POTENTIAL class members, so therefore we should get paid such and such" in the same breath they say, "If there isn't the amount of class members we figured and there are remaining funds, we get paid more!" So what are they getting paid for if the fee has such an arbitrary factor? It clearly isn't based on the class members when the fewer they have the more cash they get for "representation". Representing who or whom? Less is more? I totally follow that politicians want us to believe up is down, but are the courts really trying to impress delusion upon us? I have to wrap this up, I want to vomit.

## CONCLUSION

This is THE WORST class settlement I have ever been involved with or ever read. This Court needs to step up and pull back on these clowns. This objection speaks for the entire class. I hope this Court isn't planning on being the Big Top itself.

There is absolutely nothing in this entire settlement scam that benefits anyone other than the class attorneys and even when it purports to benefit others, there are no guarantees.

There is no typicality or commonality in damages. In fact, they can't even argue what the damages are. This settlement is trash and should be placed in the bin. Expect an appeal.

Truly yours,

2019-1119

Troy Scheffler
Plaintiff Pro Se
26359 Shandy Trl
Merrifield, MN 56465
763-225-7702

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

Case No.: **1:17-MD-2800-TWT**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 2 5 2019

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

In re: Equifax, Inc. Customer Data Security Breach Litigation

## CERTIFICATE OF SERVICE
## BY MAIL

I hereby certify that on 11/19/2019, I caused the following documents:

Class Member Troy Kenneth Scheffler's Opposition and Objection to Proposed Settlement;

to be mailed by first class mail, postage paid, to the following:

Equifax Data Breach Class Action Settlement Administrator

Attn: Objection

c/o JND Legal Administration

P.O. Box 91318

Seattle, WA 98111-9418

Date: 11/19/2019

_____

John Hoyt

26359 Shandy Trl

Merrifield, MN 56465

Troy Schilder
26359 Shady Tl
Merrifield, MN 56465



U.S. POSTAGE PAID
FCM LG ENV
BRAINERD, MN
56401
NOV 19, 19
AMOUNT
**$1.60**
R2300S102275-19

1024          30303

CLEARED
NOV 25 2019
U.S. Marshals
Atlanta Ga

US District Court

Richard B. Russell Federal Building

2211 United States Courthouse

75 Ted Turner Dr. SW

Atlanta, GA 30303-3309

Received

NOV 2 6 2019

by JNDLA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Case No.: **1:17-md-2800-TWT**

In re: Equifax, Inc. Customer Data Security Breach Litigation

## CLASS MEMBER
## TROY KENNETH SCHEFFLER'S
## OPPOSITION AND OBJECTION TO PROPOSED SETTLEMENT

### STANDING

Objector Scheffler finds standing with this Court as a class member due to his data being breached consistent in the instant case definition of class members as identified in class notice, described by court order, and by confirmation by the class administrator through https://www.EquifaxBreachSettlement.com.

### "FAIRNESS" HEARING

Objector does not intend to attend a fairness hearing; they aren't usually very fair and just a formality to pretend pesky objectors are actually being heard. Like any other herding of a commodity, how often do cattle rustlers listen to their cattle?

## STATEMENT OF PRIOR OBJECTIONS, AVAILABILITY, AND
## REPRESENTATION BY COUNSEL

Class objector Troy Scheffler has made objections in the following cases:

1:13-cv-24583-PAS (Southern District of Florida)

15-02599-MD-MORENO (Southern District of Florida)

8:15-cv-01592-AG-DFM (Central District of California)

Although not formally represented, your objector has incurred expenses related to attorneys such as research, FRCP direction, analysis, and formatting.  The costs are being incurred on a continual basis and your Objector may formally retain counsel.  Anyhow, isn't this part of the demand of the Cass Notice to disclose attorney compensation at this point treading on attorney client privilege?

I mean I totally understand that the new rules were to intended to accelerate the shakedown and that objectors aren't compensated as the attorneys are despite the fact they are trying to do more of a service to the class than anyone else.  Basically, Rule 13(e)(5)(B) provides less work for judges, a faster payday in the millions for the class attorneys, and dissuades

2

any objection as fruitless in any respect.  There is of course no other reason for the rule change.  Quite the justice system we have.

I am available any date between 11/19/2019 and 12/05/2019 to be disposed and explain how much of a scam this settlement is.

## OBJECTION AND ARGUMENT

### I.   The Class Award is Based Entirely on Speculation

Throughout the parties' proposed settlement and ultimately the class award is the ethereal consequence of "may receive".  On its face this is a speculative award.  One cannot be expected to waive an absolute right to seek relief on the basis that they "may receive" expressed compensation.

One cannot make a contract that "if you waive your right to sue", you "may receive" compensation; where is the reciprocal consideration? This is absurd and is at best playing the lottery and at worst debasing the Court to nothing more than a casino that a class (MILLIONS in this matter) is forced to participate in.

There is no concrete award for a member to adequately make an informed decision on value to settle.  In fact, this racket of class actions

inflating and conflating "potential value", while decreasing the actual concrete value, while astronomically overcompensating the class counsel with enormous payouts is underscored in this case.

The Class Notice itself states one can file by 01/22/2020 for "current losses and time" at $25 per hour for up to 20 hours. This is then followed by the caveat, "If there are more than $31 million in claims for Time Spent made during the Initial Claims Period (see Question 12), all payments for Time Spent will be reduced and distributed on a proportional basis (see Question 17). Certain claims for Time Spent may also be made during the Extended Claims Period, up to a total cap for Time Spent during the Initial and Extended Claims Periods of $38 million in claims."

The Notice then continues from the "potential" reimbursement of $500 to a "Settlement Benefit" of reimbursement of $20,000?!?! Wait what? So is this supposed to also come out of the $38 million pool? How on earth can this Court entertain such wildly different amounts and basis to be paid from a total fund that may or may not be able to cover claims made merely on time spent? In other words, if the parties anticipate that the reserved funds may run out just on rank and file

4

claims based upon time spent capping at $500, how on earth do they think there could be enough to cover $20,000 claims?  Why should those that suffer the most in damages share the pot with the millions of others that didn't?

So if a pharmaceutical company gave millions of people a headache and a few people brain cancer, they can just say, "Oops, we were distributing to the MILLIONS of people who just coincidentally made it before you because you had to round up your medical bills and we ran out of funds, here is a rose for your grave".

Why are the two VICTIMS with admittedly wildly different levels of damages placed in the same pool?  This is crazy let alone emphasizes that this amount was pulled out of their...  hat.

Oh, but it gets worse...  The deadline in the extended claims period goes to 01/22/2024.  Apparently, the "award" one is forced to consider is first come first served?  This is outrageous.  So basically, one could have the "hackers" use their obtained information to damage them in 2019. That victim files their $20,000 claim immediately and "may" possibly, maybe, sorta, roll the dice get paid that $20,000.  Then their neighbor, also breached, has their information used in 2024 and the calculated

damages are the exact same.  That neighbor files a claim in 2024, but the funds are exhausted.  Same underlying claim, same actual damages, but one gets paid and the other gets stiffed.  Lol, this settlement is sooooooooooo stupid!

Whoa whoa!  Never fear if the inverse is true.  If settlement funds remain, the ATTORNEYS get paid more!  Say what girlfriend?  Yeah, the class gets stiffed in a shortage, don't get paid more than "kinda promised" in a surplus, but the attorney's get paid regardless and then some…  God bless the hustlers, amirite?

So in Doc 739-1 P19, the claim is made that "The proposed class members treat class members equally.  Each class member is eligible to receive the same benefits as other class members and no class members are favored over others."  Well I am all in favor of "class members treating other class member equally" (I am assuming an error in grammar), but it is patently untrue that "no class member is favored over others".  As stated, those who file claims earlier than the rest, get paid more.  Soooooooooo, the quickest are favored over the more methodical.  I mean this Court supports methodology when assessing their damages, right?

The class reps also get the shaft. The pleadings claim the class reps benefit from a surplus along with the attorneys; you know, for the attorneys to make it seem like a team win. Oh yeah? How so? How is that even possible considering in EVERY class certification, the class reps must state their absolute compensation. Lol, that's ONE OF THE MAIN CONSIDERATIONS IN A CLASS. Give me a break, attorneys trying to act like they have any consideration outside their own wallet and ego is laughable.

This is of course bogus. The class reps don't receive more in a surplus, only the attorneys do. This is clear from the fact that the attorneys worked up the payment scheme whilst ignoring the class reps. Oops! I think what is even clearer is that the class attorneys were only focuses on THEIR compensation.

The reps got hosed in this case and I'm sure when they were getting wet their counsel was telling them it was rain. ANYONE OF THE ATTORNEYS ON THIS CASE AND ANY OF THE JUDGES THAT HAVE TOUCHED IT KNOW THAT IF THOSE CLASS REPS STAYED WITH AN INDIVIDUAL CLAIM THAT THE DEFENDANT WOULD HAVE SETTLED WITH EACH AND EVERYONE OF THEM FOR

7

$5000 <u>MINIMUM</u>.  If their counsel screwed them by only demanding $2,500 (If they demanded anything-My guess is that the Defendant pitched this and the rep attorneys were like whatever, let's talk about the millions we're getting), how could the class ever expect to believe they're getting any better representation?

Oh and then, how can one state with a straight face, "The amount that you receive may be substantially less than $125"… Oh, like zero? What a bargain.  Unfair and unequal outcomes for each class member is what classes are supposed to avoid.  Tell me this is a joke.

Man, and I thought I had enough until I started reading more of this rubbish.  In the PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT, they actually state "The total cost to Equifax thus is at least $1.38 billion and might be significantly more"!!!  Wowee!  Or no wait, $1 billion of that is for EQUIFAX in a capital investment…not the class members.

Then of course the litigants LIE to the court, "The benefit to the class is even greater. The retail cost of buying the same credit monitoring

services for the entire class alone would exceed $282 billion ($1,920 times 147 million class members)."

Well, credit monitoring wouldn't have prevented the data breach. So fail right there. No, not only is there no value in something Equifax pays nothing for, but only a fraction of a fraction of anyone cares about credit monitoring and only a fraction of a fraction of those people ever pay for it considering it comes free with a Discover Card, Capital One Card, etc etc etc. Oh did I mention there are other free credit monitoring sites like CreditKarma?

Is it any surprise in the dozen or so class settlements that Equifax has made in just the past few years that this is the first thing to pitch? Bahahaha, *Chakejian v. Equifax Information Services, L.L.C.*, 07-cv-2011 (E.D. Pa. 2011) Credit monitoring. *James Jenkins, et al., v. Equifax Information Services LLC* Civil Action No. 3:15-cv-00443-MHL... Credit monitoring. On and on we go. How well did all this credit monitoring work to stop a data breach?

This is getting so deep that I have to put on my waders to finish reading this trash. Lol, credit monitoring is like giving a football as

compensation to someone you made a quadriplegic that didn't even like sports in the first place… Sooooooooo, stupid.

## II.   The Class Basis is Entirely Speculative

The class and award are continually based upon "risk". "Risk" is not actionable; it is by definition speculative. Bootstrapping the idea of exposure as a "damage" is putting the cart before the horse.

The court itself in its 01-28-2019 order cites the 96 plaintiff's alleging "'present, immediate, imminent, and continuing increased risk of harm" (Order 01/28/2019) due to the compromise of their personally identifiable information in the Data Breach'" (p.3) Huh? When is "risk" actionable or a factor in damages to justify a class award or even define a class? Continuing risk? If the court believes there is "continued increased risk of harm, why are we settling at such an early stage? Shouldn't we give it a bit of time to see what pans out?

Citing *Finnerty*, the Court erroneously assumes that this case by asserting that in Equifax that the hackers actually looked at what they obtained. Well this seems to be a big question, has anyone established

that the "breach" actually obtained any information?  Most hackers exercise their craft just as a challenge; ie for funsies.

As evinced by the class award scheme, people are forced to play the odds.  Why?  The Court is conflating "risk" with damages.  They are playing along with the parties in conflating proximate cause with the separate element of damages.

This places one in a precarious situation of "possible" invasion of privacy, to actually being a victim of the use of their information which compounds actual damages.  This scheme is untenable.

This forces class members to roll the dice.  They may look at the settlement as a matter of compensating for simply the data breach.  If so, they could be coaxed into taking the $2.50 (380.5 million bucks divided by 147 million affected members).  Then later they could find out that their information is LATER used amassing thousands upon thousands in actual damages and would be SOL, and I am not talking about statute of limitations.

There is absolutely no commonality in potential damages.  Then again, they are POTENTIAL damages.  Who knows?  Were the hackers

11

caught?  Nope?  So how on earth are class members supposed to weigh their options?

What exactly are we settling for?  Who saw what and what did they do with what they saw?  So a peeping Tom gets busted looking in the window takes pictures of my naughty parts and then sells them nationwide making gorillions of dollars.  Ok, I know what happened, how it affected me, and I can quantify a few things.

What is this case?  This could have been nothing more than someone not paying attention to the car they got in when their friend was being picked up and noticing it's the wrong car.  Other than a smirk, a sorry, and some uncomfortable laughs, what else is there?

I have had personal accounts "hacked" a number of times.  What has happened?  Nothing.  I changed my password.  Lol, in this case, a person can't even do that.  Instead they wait and wonder what actuals and factuals will come upon them in the future if they take this dumb dumb settlement.

Serious guys and gals, we keep hearing about this enormous "risk", but have we had an instance of someone actually taking the data IN

THIS BREACH and then using it to damage one of the class members? Who did it? Certainly we have a perp that one of the Plaintiffs can point to, because how else are we to believe they were the cause of the damage? I worked 10 years in bill collecting and I could have got anyone's social security number, birthdate, and credit card numbers. They hired people off the street... How do we know if anyone affected wasn't a victim of my former cadre? Wowzers, even in a res ipsa case you need more to go on. Then this Court expects a class to be based on this?

I really did laugh out loud when the settlement pimps out their nonsensical credit monitoring nonsense. I thought this was settlement on a data breach, you know, they already have the data... How exactly would credit monitoring stop another data breach? Oh and just as an aside, free credit monitoring is something you can get for FREE anywhere. They may as well have thrown in "free air to breathe"... so valuable that you need it to live! Their credit monitoring costs nothing and as said can be found elsewhere for the value of zero. How does this Court seriously take ZERO in value as a value for those affected? Zero,

null, nothing.  Nothing is not something.  $1,200 value they claim in their FILED DOCS TO SUPPORT THIS SETTLEMENT?

Let's see what the defendant charges...  Hmmm...  Beep beep type type type beep boop beep.  My computer came up with an answer... According to their website:  Monthly is $19.95, times 12 months, times 3 years.  Beep beep boop beep, you can buy it WITH NO REBATE for $957.60.  $1,200?  Just this took 10 seconds of research to disprove what the parties are claiming in anticipation to their payday.    I wonder where else the parties are duping this court.  See attorney's fees...the fluff and exaggeration there would make Jack and the Beanstalk seem based on a true story.

### III.   The Underlying Claims Are Flimsy. The Notice is a Lie, and the Settlement Only Benefits the Class Attorneys

The 559 page complaint takes shotgun to the nth degree.  As said, the Plaintiffs took as much fecal and hoped something would stick.  Oh and boy does this settlement stink.  I mean really guys?  There doesn't need to be much commentary on how such a complaint with so many claims from different states claim that there is somehow typicality for a nationwide class.  Hey, you guys want to do it state by state, more

14

power to you.  However, poaching Minnesota residents in such a pleading is unconscionable.

If the Plaintiffs were at all serious about their claims, they would have demanded more than $2,500 for a rep fee.  I seem to remember class reps needing to show they are zealously representing the class. They aren't even zealously representing themselves even with their bazillion dollar attorneys.

We seem to get the breakdown of how the attorneys are going to buy their new yachts, but how exactly are the class reps getting paid?  The notice simply states they get $2,500.  Yet, in the

*Chakejian*?  The reps got $15,000.  *Jenkins*?  $5,000.  Oh and let's see here...  As time passes, reps and the class seem to get paid less while the attorneys, who arguably do less work as the previous settlements have already done the trailblazing, while the attorneys conveniently get paid more...  Imagine that!

Where exactly did the parties get $2,500 for the rep fee?  *In re Experian Data Breach Litigation*, 15-CV-01592 AG DFM...  Like I said, the groundwork was already laid for a copycat lawsuit and a copycat

15

settlement.  Yet this should beg the question with THE COURT, what exactly did the class attorneys do in this instant case that the Experian Class attorneys didn't do?  In Experian the class attorneys demanded "up to $10.5 million".  In this God forsaken case, they want "up to $77.5 million" and reimbursement of $3 million more???  Uhhhh, doesn't the Court demand justification for attorney's fees or instead do they just let these guys and gals walk on the heads of class members on their way to the Promised Land?

The funniest part about EVERY class action with Equifax (and of course others) is that the class attorneys ALWAYS claim they're settlement is revolutionary...  Lol, the hubris gained after spending just 3 (three) years in law school.

In this case they brag about their revolutionary way to notice the class and how their negotiations were down and dirty.  Yeah right... With the amount of class settlements, it should be judicial notice that Equifax folds like a lawn chair.

"A key feature of the settlement is a first-of-its-kind Notice Program..." (P.10 Doc 739-1)  Lol, huh?  Trying to let people know that they are being forced into a settlement is a "key feature".  Admittedly, I

may have missed it and will look again on appeal, but the parties claim
that in this new revolutionary key feature, that it would be tested on
"1,600 likely class members".  Well, that's a heck of an assumption
they're likely class members, but what were the results???

## IV.   The Foundation of the Settlement is Based on Flawed Law

559 pages to justify a class cannot possibly satisfy by nature the
uniformity needed under Rule 23.  How much argument does this point
require?  In fact, the idea of littering a complaint with state law claims
should justify NOT having a class rather than justifying a nationwide
class under Rule 23.

How does basing other state's law on "Georgia" law to justify a
nationwide class?  This is the opposite of state sovereignty and
circumvents 49 other states.  This was the premise to the foundation for
the Court to justify entertaining the class.  (P.8 1/28/2019 order)

There are so many claims in the complaint it is nearly impossible to
understand what the settlement's driving force is.

The second reason that this scheme presents a problem is that
Minnesota residents are being hijacked by a district they don't live in.

Why does this matter?  Well, you should be able to hire an attorney from the state you were SUPPOSEDLY damaged in.  Georgia doesn't allow pro haec the same as most others so the attorney I would like to have represent me in this nonsensical case, cannot directly represent me.  This one of the biggest problems with nationwide classes.  Those outside the venued district have a much more difficult time finding counsel.  I have sought direct counsel for this objection and have not been able to find anyone.  My intended counsel sought counsel to sponsor him for pro haec, no luck.  This is not equitable.

## V.    For Once I would Agree With Equifax

Your humble objector realleges and reasserts each and every claim and averment made in the Defendant's motion to dismiss.  The Complaint was junk and so is this settlement because it was based upon it.

Come on guys.  Doc 739-1 If we don't cram through this settlement "The risks are also substantial. If the Settlement is not approved, Equifax will surely renew its arguments under Georgia law that there is no legal duty to safeguard personal information after the recent decision in Georgia Dep't of Labor v. McConnell, 828 S.E.2d 352, 358

(Ga. 2019), which held under different facts that no such duty exists, and that Plaintiffs have not alleged any compensable injuries. See Collins v. Athens Orthopedic Clinic, 347 Ga. App. 13, 16 (2018), cert. granted (Apr. 29, 2019) (presenting the issue of whether a data breach victim may recover damages without proof of actual identity theft).

Weird, I actually made this very argument before I ran across this. Why would Equifax ever agree to a reasonable award to something they would likely win by trying the case? Lol, it goes on as if I wrote it myself and did in this objection, "Even if Plaintiffs prevail on those legal issues, they face the risk that causation cannot be proved, discovery will not support their factual allegations, a jury might find for Equifax, and an appellate court might reverse a Plaintiffs' judgment.

I thought this was being held in a Court, not a railroad.

## VI.   The Noticing Scheme is Garbage and a Lie

Email addresses come and go. I have changed mine at least 3 times in the past few years. What exactly is "an aggressive digital and social media campaign designed to reach 90 percent of the class an average of eight times before the Notice Date and six more times by the end of the

Initial Claims period??  Bahahaha!  I haven't seen this once and this is supposed to be the most effective way?  This is nuts.

90%, eh?  https://www.statista.com/statistics/273476/percentage-of-us-population-with-a-social-network-profile/ Shows that only 79% of the public has a social media profile.  Even less would use it regularly. Does the Court just not pay attention to the BS in these classes just because both parties are colluding?  AT BEST, their scheme would only reach 79% of people and that would be if EVERY SINGLE ONE of those with social media profiles were hit with a notice.  It is literally impossible to reach 90% even with divine intervention.  This took me 10 seconds of a Google search to debunk.

USA Today?  Lol, who reads that?  News flash: Hear ye hear ye! Mainstream "news" is tanking fast.  Fake news is a thing.

Here is the first article of this great paper that surely everyone would be drawn to like flies on poop...

https://www.usatoday.com/story/opinion/2019/09/23/black-history-white-privilege-course-graduation-requirement-column/2389375001/

Yep.  "All college students should take a mandatory course on black history and white privilege".  Where do I get my copy???  Maybe my "white blindness" is stopping me from seeing how amazing of a settlement this truly is.

Or another gem on literally my second search,

https://www.usatoday.com/story/news/nation/2019/02/20/hate-groups-white-power-supremacists-southern-poverty-law-center/2918416002/

Yep, those white supremacists are the ones roaming the streets lynching the poor blacks.  This despite that at 12% of the population, blacks commit over half the nations murders.  Interracial rape is 100% black on white according to FBI crime stats.  Oh and the latest interracial violent crime data from the DOJ shows that out of 590,000 interracial violent crimes between whites and blacks 90% were black on white.  YES NINTETY.  Oh and mass shooters?  Over 75% are black

The majority of hate groups are black.  The only reason there was an uptick in "hate groups" was not because of white supremacists (What are they claiming whites are believing they are supreme in anyhow; let me know and we can compare notes), but simply due to more departments are participating in reporting hate crimes.  The numbers

still show blacks are overrepresented in hate crimes and whites are underrepresented.  This notwithstanding the constant which hunts against whites.

Lets go for a third search...
https://www.usatoday.com/story/news/nation/2019/08/06/shooting-ohio-dayton-el-paso-texas-shooter-gilroy-california/1924532001/

Hmmm weird, defying all reality, whites and especially white males are just out of control shooting up everyone!  Yet reality again shows the vast majority of mass shootings (4 or more people) are a black thing. The NYT found 75% were black and that number is low https://www.nytimes.com/2016/05/23/us/americas-overlooked-gun-violence.html  Ahh, the Mother Jones article is where it all begins... Notice that to get whites in the majority, they had to exclude gangs, drugs, and everything typically related to blacks.  Boom!  Now mass shooting is a white thing and the media runs with it.

Yet, this hack racist and sexist newspaper is what people are expected to read to get notice and this Court is promoting it?  Shameful. No thanks.

## VII.  It's All About the Attorney Fees and Cronyism

Shareholders and taxpayers be damned!  "Class Counsel will request 25 percent of the $310 million settlement fund they negotiated in the Term Sheet."  The People actually damaged, maybe possibly?  $2.50 and the class reps a pittance at $2,500.  Gotta love how the fee is even based on a scam.  In what world outside of bizarre class action land do attorneys get compensated thousands of times, well millions of times more than the Plaintiff's?

Lol, this fee arrangement is so sleazy.  So they say, "Well we are representing all these POTENTIAL class members, so therefore we should get paid such and such" in the same breath they say, "If there isn't the amount of class members we figured and there are remaining funds, we get paid more!"  So what are they getting paid for if the fee has such an arbitrary factor?  It clearly isn't based on the class members when the fewer they have the more cash they get for "representation".  Representing who or whom?  Less is more?  I totally follow that politicians want us to believe up is down, but are the courts really trying to impress delusion upon us?  I have to wrap this up, I want to vomit.

## CONCLUSION

This is THE WORST class settlement I have ever been involved with or ever read.  This Court needs to step up and pull back on these clowns.  This objection speaks for the entire class.  I hope this Court isn't planning on being the Big Top itself.

There is absolutely nothing in this entire settlement scam that benefits anyone other than the class attorneys and even when it purports to benefit others, there are no guarantees.

There is no typicality or commonality in damages.  In fact, they can't even argue what the damages are.  This settlement is trash and should be placed in the bin.  Expect an appeal.

Truly yours,

2019-1119

Troy Scheffler
Plaintiff Pro Se
26359 Shandy Trl
Merrifield, MN 56465
763-225-7702

Tom Stahl
26359 Shady Trl
Merrifield, MN 56465

NOV 26 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

U.S. POSTAGE PAID
BRAINERD, MN
56401
NOV 18 '19
AMOUNT
$1.60
R2305010275-19
1024
08111

October 8, 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111-9418

To: Equifax Data Breach Class Action Settlement Administrator

I am writing regarding *Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT. Like millions of other Americans, my personal information was leaked through the Equifax Data breach, so I am a member of this settlement class. I have not objected to any other class action settlements in the previous five years. I will not be appearing at the Fairness Hearing in person or through a lawyer, due to financial constraints.

I do object to the current settlement agreement—it is insufficient for the widespread harm Equifax has caused and exposed people like myself to. We are not Equifax's customers—we are the product. Yet I never consented to their collection of my personal information, and they profit greatly off it while failing to maintain even basic security standards. We are forced to bear with however they choose to operate because otherwise we would be shut off from the financial system, but there is no accountability for the credit bureaus. In this settlement, they are not forced to pay victims any meaningful restitution, and millions of people like myself are left to deal with the consequences while they continue to profit. Equifax should have been shut down by this breach, instead of facing light penalties. I was barely the age of a legal adult when the breach occurred, rendering me ineligible for the extra "protections" the settlement provides for minors, yet I will have to deal with the consequences of my social security number being available to hackers for the rest of my life, realistically up to 70 years. And like all of those affected, I will constantly have to check my credit cards, credit reports, and other financial records to ensure that no one has impersonated me in order to obtain credit or to steal my own savings. I feel completely deceived by the terms of this settlement. Why are Americans now penalized for Equifax's negligence without adequate compensation? True compensation for this data breach would be, at minimum, tens of thousands of dollars per victim for the unneeded worry and additional monitoring we will have to undertake throughout our lives, not to mention for the profits Equifax continues to make at our expense. The settlement should be denied by the Court as is.

Sincerely,

Victoria Johnson

Current mailing address:        Permanent address:
50 Craigie Street               5209 Paseo de Pablo
Apartment 26                    Torrance, CA 90505
Somerville, MA 02143

Received
OCT 15 2019
by JNDLA



BOSTON MA 021
09 OCT 2019 PM 10 L

OCT 1 5 2019

Equifax Data Breach Class Action Settlement Administrator
Attn: Objection
c/o JND Legal Administration
P.O. Box 91318
Seattle, WA 98111 - 9418

98111-941818

Victoria Johnston
50 Craigie St.
Apt. 26
Somerville, MA 02143