# Appendix 1

## Supplemental Declaration of Class Counsel

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Plaintiffs' Motion for Final Approval of Settlement

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No. 2800
No. 1:17-md-2800-TWT

CONSUMER ACTIONS

Chief Judge Thomas W. Thrash, Jr.

## CLASS COUNSEL'S OMNIBUS DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE TO VARIOUS OBJECTIONS

Kenneth S. Canfield, Amy E. Keller, and Norman E. Siegel declare as follows:

1.     This Court appointed us to serve as Co-Lead Counsel for the Consumer Plaintiffs and Interim Class Counsel in the above-captioned MDL. Along with Roy E. Barnes, who serves as Co-Liaison Counsel with lead responsibilities, we have led the Plaintiffs' efforts in the consumer track since our appointment on February 9, 2018. We make this Declaration in support of Plaintiffs' motion for final approval of the settlement, and in support of our response to the various objections received

to the settlement. We have personal knowledge of all the matters addressed in this Declaration.[1]

2.      This Declaration supplements our declaration submitted as part of Plaintiffs' Motion to Direct Notice of Proposed Settlement to the Class [Doc. 739-4], which provided the Court with a history of the litigation, described Class Counsel's work leading up to the filing of that motion, and otherwise addressed facts that were relevant to the Court's decision whether to direct notice to the class. It also supplements our declaration submitted as part of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives [Doc. 858], which provides more detail concerning the history of the litigation and settlement for the Court.

3.      This Declaration focuses on the facts that bear on the Court's determination of whether the proposed settlement is fair, reasonable, and adequate, and should be finally approved. For ease of reference, we have reiterated here some of the same facts that we covered in our earlier declarations.

---

[1] Class Counsel and their staff have taken the screen shots throughout this declaration. The screen shots of the "tweets" cited throughout this declaration were available as of December 3, 2019.

## *Class Counsel's Work on Legal and Discovery Matters*

4.      On September 7, 2017, Equifax announced that criminals had stolen from its computer networks confidential personal and financial information pertaining to millions of consumers. Equifax eventually admitted that approximately 147 million Americans were affected by this data breach. Class action lawsuits against Equifax immediately began to be filed by affected consumers and financial institutions. Ultimately, more than 300 such lawsuits were filed around the country.

5.      In December 2017, the Judicial Panel on Multidistrict Litigation transferred these lawsuits to this Court. The Court created two separate tracks to manage the litigation—one for the consumer cases and one for the cases brought by financial institutions. On February 12, 2018, the Court appointed a group of 13 lawyers to lead the litigation, including Ken Canfield, Amy Keller, and Norman Siegel as Co-Lead Counsel and Roy Barnes as Co-Liaison Counsel, sharing duties with Co-Lead Counsel. [Doc. 232] This group was also appointed Interim Consumer Class Counsel pursuant to Fed. R. Civ. P. 23(g), and is referred to as "Class Counsel" in the Settlement Agreement and this Declaration. The legal team appointed to lead the consumer track includes some of the nation's most respected class action lawyers who collectively have prosecuted over 50 data breach cases, including all of the most significant cases brought both before and after this MDL.

6.      As Class Counsel, our first major task was to file a consolidated amended complaint, which the Court had announced would serve as the vehicle for litigating the consumer claims. Our group had a substantial head start on this task because, prior to our appointment, we had already filed a case that named class representatives from every state. Nonetheless, the consolidated complaint was a massive undertaking, involving investigating the underlying facts, vetting several thousand potential class representatives, and thoroughly researching many legal theories under federal law and the laws of all 50 states. On May 14, 2018, Plaintiffs filed our 559-page consolidated amended consumer complaint, which named 96 class representatives and asserted numerous common law and statutory claims under both state and federal law. [Doc. 374]

7.      In June 2018, Equifax moved to dismiss the complaint in its entirety. [Doc. 425] Equifax's primary focus was attacking Plaintiffs' negligence and negligence *per se* claims, arguing that Georgia law does not recognize a legal duty to safeguard personal information, none of the class representatives (or any class members) suffered a legally-cognizable injury, and that Plaintiffs could not plausibly prove any alleged injury was caused by the Equifax data breach. The motion to dismiss was exhaustively briefed during the summer and early fall of 2018. [Docs. 452, 464, 483] On December 14, 2018, the Court heard more than three hours of oral

argument on Equifax's motion to dismiss. [Doc. 534] Then, on January 28, 2019, the Court largely denied Equifax's motion. [Doc. 540] Equifax answered on February 25, 2019. [Doc. 571]

8.    While the consolidated amended complaint was being prepared and Equifax's motion to dismiss was pending, Class Counsel and the members of the Plaintiffs' Steering Committee undertook a substantial amount of additional work to move the case forward. That work included the organizational activity that is part of leading any case of this magnitude (establishing committees, assigning areas of responsibility, hiring vendors for e-discovery, etc.), as well as tasks such as locating and consulting with experts; working with the class representatives to assemble their documents and compile their damages; investigating the facts relating to the breach, including the mechanism for how the breach occurred and the data was exfiltrated; communicating with public interest groups active in the cybersecurity, consumer protection, and financial fraud fields; coordinating with the leadership of the financial institution track and the related securities litigation; developing our strategy for prosecuting the case; meeting with state and federal lawmakers regarding the breach; issuing document retention subpoenas to scores of third parties; and attending monthly status conferences in court.

9.      Under the Northern District of Georgia's Local Rules, discovery does not begin until 30 days after an answer is filed. Nevertheless, we were able to secure case management orders that front-loaded much of the preparatory work needed before formal discovery could, as a practical matter, proceed and set the groundwork for discovery once the motions were decided. In accordance with these orders, the parties negotiated a series of protocols to govern discovery, exchanged requests for production of documents, and attempted to negotiate the search terms and list of custodians that would be used in electronic searches. [Doc. 258] (Protective Order); [Doc. 449] (Production and ESI Protocol) Several parts of this pre-discovery process proved to be challenging, forcing Class Counsel to spend substantial time on these matters. On some issues, the parties reached impasse compelling Class Counsel to file a motion seeking limited relief from the discovery stay and an order facilitating our interviews of former Equifax employees who had signed non-disclosure agreements. [Doc. 488]

10.     Once the Court ruled on Equifax's motion to dismiss, formal discovery commenced, and Plaintiffs' efforts intensified. Among other things, Class Counsel and the Plaintiffs' Steering Committee reviewed over 500,000 pages of documents produced by Equifax, as well as many thousands of native files including presentations and databases; began producing named plaintiffs' documents to

Equifax; and scheduled depositions of several former Equifax employees. Our document review was complicated by Equifax's decision to segregate additional, allegedly highly-confidential documents in a "reading room" controlled by Equifax, which required the parties to negotiate revised orders concerning discovery and creating new review protocols, along with meeting and conferring about Equifax's ongoing productions. Those efforts continued up to the moment the case settled.

11.    Class Counsel fought to protect the consumer class's interests on multiple fronts. For example, this Court had already answered in the affirmative the question of whether Equifax had a legal duty to protect Plaintiffs' personal data. But this important question, among others, was being actively litigated in the Georgia appellate courts during the pendency of this case. In fact, Class Counsel drafted and filed before the Georgia Supreme Court an *amicus* brief regarding the scope of the negligence duty to protect confidential personal information in *Georgia Department of Labor v. McConnell* [Doc. 858-1, Ex. A]. We filed that brief so that the Supreme Court would be fully informed of the facts relating to this case and the potential implications of its ruling for the *Equifax* class.[2]

---

[2] Indeed, since the Settlement was reached, additional decisions regarding data security have been rendered by other courts, which could have negative implications for the present case. *See, e.g., Adkins v. Facebook, Inc.*, No. 18-05982-WHA, Opinion and Order (N.D. Cal. Nov. 26, 2019), attached hereto as Ex. 12.

### *Overview of Settlement Discussions*

12.    Settlement discussions began in September 2017. After initial telephone and in-person discussions regarding a potential settlement process, the parties retained Layn R. Phillips, a former federal judge and principal of Phillips ADR, to serve as mediator. Judge Phillips is perhaps the country's preeminent mediator in major civil litigation and has successfully mediated several other data breach cases, including *In re Anthem Customer Data Breach Security Litig.*, which until now is the most successful consumer data breach settlement. Our first negotiating session took place in Newport Beach, California on November 27-28, 2017. The parties engaged in extensive preparation for the mediation and exchanged comprehensive mediation statements.

13.    Although little progress was made at the first mediation, it did serve to initiate what became a lengthy back-and-forth process with Equifax that lasted over the next 16 months. The parties negotiated over this period with the oversight of Judge Phillips—work that involved exchanging additional mediation statements, numerous and regular telephone conferences, and additional all-day mediation sessions with Judge Phillips on May 25, 2018, August 9, 2018, November 16, 2018, and March 30, 2019. During this period, Class Counsel and the Plaintiffs' settlement committee also spent significant time with vendors so that we could develop and

deliver state-of-the-art monitoring and restoration services to the entire class. We also retained several leading cybersecurity experts to assist us and consulted with knowledgeable consumer groups and dozens of consumer advocates, Congressional staff, and state Attorneys General.

14.     The technical changes needed to secure Equifax's data security system presented a difficult issue. And, once the cause of the breach was determined, how to ensure that Equifax properly fixed its vulnerabilities presented another important challenge. It was critical that the technical changes would not only force Equifax to adopt measures to decrease the likelihood of a future breach, but also to ensure that its systems were designed so as to minimize the impact if another breach does occur. This was a particularly important component of the negotiations, because, unlike most data breach victims, the class here did not choose to do business with Equifax and cannot prevent Equifax from continuing to store their sensitive personal information. The parties worked on detailed and comprehensive business practice changes involving Equifax's cybersecurity measures. In connection with the negotiations, we retained Mary Frantz, one of the nation's leading cybersecurity experts. Working with Ms. Frantz, we examined Equifax's existing data security systems, attended meetings including at Equifax's headquarters in Atlanta with Equifax's counsel and its security experts to discuss the cause of the breach and

Equifax's remedial efforts, and exchanged numerous proposals and counter-proposals before reaching an agreement in March 2019 (as addressed below).

15.     Although the negotiations were productive and moved the parties closer to settlement, the process slowed substantially following the November 16, 2018, mediation session, and eventually came to a stop in December 2018. From Class Counsel's perspective, Equifax would not meet Plaintiffs' demands unless and until Plaintiffs successfully navigated the case past the motion to dismiss. It was only after the Court entered its lengthy order largely denying Equifax's motion to dismiss that negotiations resumed in February 2019. Judge Phillips convened what proved to be the final mediation on March 30, 2019. After getting consensus on all terms other than the size of the fund (including the individual relief and extensive business practice changes), the parties reached impasse. Late in the evening, Judge Phillips made a "mediator's proposal," which both sides accepted, and the parties executed a binding Term Sheet at about 11 p.m., subject to approval by Equifax's board of directors, which occurred the next day. A copy of the binding March 30 Term Sheet was previously attached to our declaration submitted in support of our Motion for Attorneys' Fees, Expenses, and Service Awards to Class Representatives as Exhibit B.

16.     From the outset of the negotiations, Class Counsel had focused on three major components of relief. First, the establishment of a cash settlement fund to compensate those class members who had suffered out-of-pocket losses and lost time as a result of the breach. Second, the provision of high-quality credit monitoring and identity restoration services specifically tailored to address the data compromised in this breach. And third, modifications to Equifax's data security practices that would be subject to Court enforcement (including a commitment to spend a minimum of $1 billion on data security), which would protect the class—most of whom have no relationship with Equifax—well into the future. The March 30, 2019, Term Sheet achieved each of these goals, as further specified in Class Counsel's Declaration in Support of Motion to Direct Notice. [Doc. 739-4, ¶¶ 27-31]

### *Input from Federal and State Regulators*

17.     The binding Term Sheet reached on March 30, 2019, provided for a period of 60 days for Equifax to share the Term Sheet with, and for Class Counsel to consider any comments from, the Federal Trade Commission, the Consumer Financial Protection Bureau, and state Attorneys General ("Regulators") regarding the relief afforded to the class. This provision is consistent with guidance provided by the Federal Judicial Center regarding solicitation of the views of federal and state

regulators regarding class action settlements. *See generally*, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges at 26-27. Because the Regulators were not involved in negotiating the Term Sheet, the parties agreed that, "to the extent that the Regulators propose changes to the class benefits or the Term Sheet, Plaintiffs will discuss and consider in good faith such changes, and if the parties agree, the Term Sheet and settlement agreement will be amended accordingly." (Doc. 858-1, Pg. 72, § VII). The parties agreed that if Class Counsel or Equifax rejected those changes, the Term Sheet would be enforced as the final settlement.

18.     In the weeks that followed, the Regulators negotiated with Equifax and agreed upon a number of proposed substantive changes to the Term Sheet. We were not involved in those negotiations, but were asked to include them in the final settlement. Many of the proposed changes were minor, while others provided more substantial relief, including increasing the settlement fund from $310 million to $380.5 million, providing up to an additional $125 million if needed to pay claims for documented out-of-pocket losses, and an expansion of the extended claims period from 3 years to 4 years. Class Counsel supported the changes that benefitted members of the settlement class, but opposed others that might diminish the relief available under the Term Sheet, trigger objections, create problems in approving the

settlement, or otherwise make class members worse off.

19.    Because the proposed modifications were presented as a "take it or leave it" package, Class Counsel's opposition to some of the individual proposals triggered another round of difficult and intense negotiations that lasted over two months.

20.    Successfully resolving those problems did not ensure that the extra money would be available. That is because Equifax refused to execute the settlement until and unless it also reached separate agreements with the regulators, which it wanted to announce as part of a "global resolution," but Equifax was having difficulty reaching such agreements.

21.    Class Counsel forced the issue by setting a deadline and threatening to move to enforce the binding deal reflected in the Term Sheet. Equifax signed the class action settlement shortly before the deadline was to expire. In all likelihood, had Class Counsel not set the deadline, the extra money would have never been obtained for the class.

22.    During the four-month period after executing the Term Sheet (from April through July, 2019) during which they were preoccupied by the negotiations with Equifax and the regulators, Class Counsel spent 4,884 hours valued at over $3.5 million.

23. On July 19, 2019, Equifax and Plaintiffs executed the Settlement Agreement. Plaintiffs submitted the agreement and moved for an order directing notice to the class on July 22. The same day, after a hearing, the Court granted the motion, authorizing issuance of notice to the class. [Doc. 742]

24. Equifax entered into separate settlements with the Regulators on or about July 19, 2019. The regulatory settlements—involving Equifax and the FTC, CFPB, and Attorneys General from 48 states, the District of Columbia and Puerto Rico—expressly refer to and are dependent upon the class action settlement Class Counsel negotiated, incorporate its substantive terms, and rely upon and defer to the class action settlement and this Court to distribute all relief to impacted consumers. Accordingly, this is not a case where Class Counsel piggybacked on the effort of government regulators to achieve a private settlement. To the contrary, Class Counsel negotiated a binding settlement with Equifax without the involvement or assistance of the Regulators. While Class Counsel later agreed to modify the settlement to provide additional relief that the Regulators initiated, incorporating the additional relief into the settlement was a difficult and lengthy process, and was finally brought to fruition through Class Counsel's extensive efforts.

25. During the period from March 30, 2019 until mid-July, 2019, in addition to negotiating with Equifax and the Regulators regarding the scope of the

relief in the settlement agreement, we spent considerable time first selecting and then working with Signal Interactive to craft what we believe is a state-of-the-art notice program; and successfully convincing Equifax to agree to the program. We also consulted with federal and state regulators, who provided input. The process was laborious. The parties discussed the details of every email, social media advertisement, video, newspaper, and radio advertisement to which the class would be exposed, ranging from their substantive content and headlines to such matters as the facial expressions of the actors featured in the advertisements. The parties also negotiated about the scripts that would be used during the focus groups that Signal has conducted, the questions that were included in the public opinion survey, and issues relating to many other topics. Simultaneously, we selected and worked with JND to design a settlement website that allows class members to electronically file their claims; drafted a claims protocol that covered every step of the claims process, from filing through verification and adjudication of electronic claims; prepared the scripts for hundreds of telephone operators to use in responding to class members' questions; and otherwise managed development of the claims and administration process. During this time, we traveled to JND's headquarters in Seattle to tour their facility, observe their operations, and meet with their senior management. We also spent considerable time negotiating and coordinating with Equifax and the

Regulators regarding the claims and administration process to reach agreement on the final documents, forms, notices, and procedures that would be used.

### *Preliminary Approval and Media Coverage of the Settlement*

26.     On the morning of July 22, 2019, before Class Counsel had presented the proposed settlement and proposed Notice Plan to this Court, there was a deluge of pervasive and, in some respects, misleading coverage in the national media following statements and press conferences by Equifax and regulators announcing their separate settlements with Equifax.

27.     Class Counsel filed the proposed settlement with the Court the morning of July 22, 2019, and were scheduled to appear in front of the Court to present the proposed settlement at 11:00 a.m. that same day.

28.     Before the hearing, at 9:00 a.m. that same day, Equifax held a conference call for its investors, analysis, and others, with a follow-up 9:30 a.m. call for the media. *See* Equifax Announces Comprehensive Consumer Settlement Arising from 2017 Cybersecurity Incident (July 22, 2019).[3]

29.     Shortly thereafter, at 10:00 a.m., the Federal Trade Commission convened a press conference to announce the settlement. Participants included FTC

---

[3] *Available at* https://investor.equifax.com/news-and-events/news/2019/07-22-2019-125543228.

16

Chairman Joe Simons, Consumer Financial Protection Bureau Director Kathy Kraninger, and Maryland Attorney General Brian Frosh. *See* Equifax to Pay $575 Million as Part of Settlement with FTC, CFPB, and States Related to 2017 Data Breach (July 22, 2019).[4]

30.     The media coverage of the Settlement began following these press conferences and statements, before the commencement of the approval hearing and before the Notice Plan was approved. This early media coverage, which continued for days, created a widespread misperception that all consumers affected by the data breach (and, in some news stories, all Americans, regardless of class membership) could get $125 simply by filing a claim.

31.     Although alternative cash compensation is only one potential type of relief for individuals who do not want to receive the credit monitoring developed to monitor the specific types of information affected by the data breach, reports of an entitlement to a $125 cash payment—usually without reference to the other components of the settlement—were widespread in the days following the approval hearing, but well before the Notice Plan was implemented.

---

[4]  *Available at* https://www.ftc.gov/news-events/press-releases/2019/07/equifax-pay-575-million-part-settlement-ftc-cfpb-states-related.

32.     For example, on July 22, 2019, *USA Today* published an article stating that "you can receive $125 if you already have a credit monitoring service and won't enroll in the free one." Nathan Bomey, *What does Equifax's $700M settlement over its data breach mean for you?* (July 22, 2019).[5]

33.     In reporting a few days later, *USA Today* moved the $125 claim to its headline, inviting readers to take steps to claim their $125 from the settlement:[6]

MONEY

# Equifax will pay Americans hit by breach. Take these steps to file claim for $125 or more

**Kelly Tyko** USA TODAY

Published 12:43 a.m. ET Jul. 25, 2019 | Updated 12:48 a.m. ET Jul. 30, 2019

  

Kelly Tyko, *Equifax will pay Americans hit by breach. Take these steps to file claim for $125 or more.* (July 25, 2019).

34.     The next day, on July 26, 2019, *Slate* published another story with a

---

[5] *Available at* https://www.usatoday.com/story/money/2019/07/22/ftc-equifax-settlement/1793029001/.

[6] *Available at* https://www.usatoday.com/story/money/2019/07/25/equifax-settlement-how-file-claim-125-credit-reporting/1822919001/.

headline that continued the narrative that all class members (or all Americans) were

entitled to $125 under the settlement:



Josephine Wolff, *You Have a Moral Obligation to Claim Your $125 from Equifax*,

Slate (July 26, 2019).[7] In this article, *Slate* encouraged consumers to "[g]o claim

your $125 from Equifax. Right now. Even if $125 isn't a sum of money that matters

to you, even if you don't feel you were really directly affected by the breach. Even

if the prospect of filling out a relatively brief online form fills you with more dread

than the theft of all of your personal data." The article went on to call the settlement

"astonishingly large."[8]

---

[7] https://slate.com/technology/2019/07/equifax-settlement-money-how-to-claim.html.

[8] Slate later published a follow-up piece clarifying points about the Settlement on

35.     On the same day, CNBC published a similar article with the headline: "I may have banked $125 from filling out the Equifax claim in seconds – what are you waiting for?"[9]

## I may have banked up to $125 by filling out this Equifax claim in seconds — what are you waiting for?

PUBLISHED FRI, JUL 26 2019-4:21 PM EDT | UPDATED TUE, JUL 30 2019-9:46 AM EDT

The article encourages readers to file claims for $125, in part because the settlement was endorsed by the FTC: "If you're leery about using the link above, here's the portal for filing a claim offered by the Federal Trade Commission—a U.S. government agency whose mission is protecting American consumers."

36.     The innocent but pervasive misinformation regarding the entitlement to $125 under the settlement continued to move through the public discourse. For example, citing the CBNC article, Congresswoman Ocasio-Cortez tweeted to her 5.9

---

July 29, 2019. Josephine Wolff, *The Nitty Gritty of the Equifax Settlement*, Slate (July 29, 2019), https://slate.com/technology/2019/07/equifax-settlement-125-credit-monitoring-details.html.

[9] *Available at* https://www.cnbc.com/2019/07/26/you-could-make-125-by-filling-out-this-equifax-data-breach-claim-form.html?__source=twitter%7Cmain.

million followers: "Everyone: go get your check from Equifax! $125 is a nice chunk of change" with a link to the claim form.[10]



37.     All of these communications occurred within four days of the approval hearing and well before the initiation of the direct notice program. And, as explained in the Settlement Agreement and the notice program approved by the Court, not everyone is eligible for $125 under the settlement and even those eligible because they already have credit monitoring are not guaranteed $125. The settlement limits

---

[10] *Available at* https://twitter.com/AOC/status/1154852681523093505. Once informed on the settlement terms, Congresswoman Ocasio-Cortez advised followers that "for most people the better deal is 10 years of free credit monitoring." *See* https://twitter.com/AOC/status/1154935657527222272.

alternative compensation to those who already have credit monitoring services, do not want the services available under the settlement, attest they will maintain their own service for at least six months, and provide the name of their current credit monitoring provider. Moreover, the settlement provides that alternative compensation claimants will receive *up to* $125 because it was subject to an aggregate $31 million cap, and was not a $125 guaranty.

38.   The amount available to pay alternative compensation claims is capped at $31 million to ensure there are sufficient funds to pay class members for out-of-pocket losses they sustained as a result of the breach (such as freezing their credit or for the amount of money they already spent purchasing their own monitoring services, which they can claim *in addition to* alternative compensation), covering the costs of credit monitoring for up to seven million class members (the rest would be paid separately by Equifax), and other benefits. If the cap is exceeded during the initial claims period, alternative compensation claims will be reduced and paid *pro rata*. The cap will be lifted at the end of the extended claims period if money remains after other benefits are paid and a supplemental *pro rata* distribution will be made. [Doc. 739-2, ¶ 7.5]

39.   This structure was an important component of the settlement. Class Counsel wanted to ensure that enough settlement funds were made available to class

members to cover out-of-pocket losses because it was widely reported that many Americans spent money freezing their credit or checking their credit reports after the breach. Wakefield Research Survey, *Nearly 1 in 5 Americans Froze Credit After Equifax Breach*, Fundera (Mar. 6, 2018).[11]

40.   In addition to ensuring that sufficient settlement funds were made available to cover out-of-pocket losses incurred by class members, Class Counsel's negotiation of the alternative reimbursement compensation benefit was also guided by claims rates in other data breach settlements. For example, in the *Anthem* data breach settlement, while 1,257,208 timely claims were received for the two years of credit monitoring services made available under that settlement, only 144,208 claims were submitted for alternative compensation. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK (NC) [Doc. 1042, Ex. A]. Accordingly, based on the *Anthem* experience, demand for a quality credit monitoring product that would cost consumers $1,200 to purchase on their own over 4 years was much stronger than for a smaller cash benefit.

41.   Not only were Class Counsel focused on ensuring that the best credit monitoring product be made available to class members that specifically addressed

---

[11]   *Available at* https://www.fundera.com/resources/credit-freeze-after-equifax-breach.

and monitored the information impacted by the data breach [*see* Doc. 739-2 at 100-105], but they also wanted to ensure that the credit monitoring product would cover each and every class member electing that benefit.

42.     To ensure that the settlement fund was not over-extended by requests for credit monitoring, Class Counsel negotiated for a provision requiring that each and every request for credit monitoring over seven million class members would be paid by Equifax separate and apart from the settlement fund. [Doc. 739-1 at 8]

43.     By request of the regulatory agencies, the settlement website went live on the evening of July 23, 2019, allowing consumers to find out if they were class members and to electronically file their claims for benefits. Less than 48 hours later, and prior to the issuance of the Court-approved direct notice program, Class Counsel learned that millions of claims already had been filed, most of which sought alternative compensation, rather than credit monitoring. While Class Counsel suspected that many of these claims might be invalid given the erroneous and pervasive press coverage around the $125 claim, it was apparent that the $31 million cap would be hit and thus alternative compensation claimants would receive substantially less than $125.

44.     Class Counsel immediately contacted defense counsel and proposed adjustments to the notice and claims program so that class members would be

informed about the situation and that those who had already filed claims would be given a chance to file an amended claim to change the type of relief they preferred under the settlement. When issues remained after Class Counsel's negotiation with Equifax regarding this proposed corrective action, Class Counsel sought emergency relief from the Court. At a hearing on July 30, 2019, the Court approved Plaintiffs' proposals, which were implemented. Further, Class Counsel issued a public statement on August 1, 2019, explaining the terms of the settlement and urging class members to rely only on the official notice authorized by this Court, not the media or other sources. [Doc. 858-1, Ex. C]  Individuals who had filed claims prior to that point in time were invited to "validate" their claims by providing the name of their credit monitoring service, in accordance with the terms of the Settlement Agreement § 7.5, as discussed further in the Declaration of Jennifer Keough, App. 4.

45.    While the Court-ordered notice program continued as ordered, misinformation regarding the $125 claim persisted, sometimes prompted not by a misunderstanding of the settlement's terms, but now by objectors seeking to stir discontent regarding the settlement by tying the $125 claim to an erroneous statement that there was "only $31 million in cash" available under the settlement. Most notably, on September 16, 2019, the *New York Times* published an opinion piece, on its Op-Ed page, concerning the settlement:



Charlie Warzel, *Equifax Doesn't Want You to Get Your $125. Here's What You Can Do.*, New York Times (Sept. 16, 2019),[12] attached hereto as Ex. 1. In the piece, Charlie Warzel inaccurately reported that "Equifax earmarked only $31 million for claims, meaning that if all 147 million people affected by the breach filed a claim, everyone would get just 21 cents." Mr. Warzel quotes Jay Edelson, an attorney for the City of Chicago in this case: "This deal makes me sick." He also quoted Ted Frank,[13] a recurrent objector to class action settlements and an objector in this case

---

[12] *Available at* https://www.nytimes.com/2019/09/16/opinion/equifax-settlement.html

[13] Ted Frank, Hamilton Lincoln Law Institute, https://hlli.org/ted-frank/ (last accessed Dec. 2, 2019).

who used the article as a forum to encourage other objections as quoted by Mr.

Warzel:

> Mr. Frank argues, if people come out in droves with formal objections, it may lessen the burden for all victims. "It's like that meme where if 10,000 people storm Area 51, the government won't shoot them all. If enough people object, they probably won't get deposed. And if they do, well, you can look at it as a once-in-a-lifetime experience."

46.     Mr. Warzel did not attempt to contact Class Counsel, nor did he report on the other cash benefits (including out of pocket reimbursement up to $20,000 per claim) available under the settlement from a total of $505.5 million in available funds. Several class members heeded the advice provided by Mr. Frank, and filed objections to the Settlement, citing to the *New York Times* opinion piece, and the inaccurate information that "only $31 million was available for cash claims" under the settlement.[14]   Days after the article was posted, objections spiked. *See* Decl. of Jennifer Keough ¶ 81, App. 4.

---

[14] Examples include objections from Anne Vaughan ("Enclosed please find materials that I have relating to my correspondence from and to Equifax as a result of the breach occurring in the Fall of 2018. I do so at the recommendation of Charlie Warzel, Opinion Writer of the New York Times, in the lead editorial of September 18, [sic] 2019."); Claudia Moncagatta (citing to the *New York Times* opinion piece); Daniel C. Gedacht (citing to the *New York Times* opinion piece); Joshua Levin ("After millions of people registered with the website, it was reported by the *New York Times* that Equifax had earmarked just $31 million for claims."); Mikell West [Doc. 880 at 8] (citing to the *New York Times* opinion piece).

47.     Unlike previous reporting that may have been prompted by innocent confusion caused by early coverage of the settlement, statements like those in the Warzel opinion were likely prompted by objectors seeking to spread misinformation. For example, despite the erroneous statement in the article that there was "only $31 million for claims," Mr. Frank previously acknowledged that "[t]here are other pots of money" available for claims:



48.     Thus, although he understood there was other substantial cash relief in the settlement, Mr. Frank decided to focus on alternative reimbursement compensation, presumably to stir discontent regarding the settlement and later to accuse Class Counsel of "snooker[ing]" the FTC.



49.     As reflected in the objections, several class members continued to believe that the settlement provided only $31 million in relief. This narrative was repeated again on November 8, 2019, when Reuben Metcalfe, the CEO of Class

Action, Inc.[15] took up the false narrative in support of his promotion of his website, classactioninc.com. On that date, Mr. Metcalfe published an article on *Medium* that made a number of misrepresentations about the settlement, namely: "[t]he proposed settlement of $700M includes only $31M for cash payments."

## You have the right to object to the Equifax settlement. Here's how.

 Reuben Metcalfe [Follow]
Nov 8 · 10 min read





HECK YEAH INDEPENDENT ACCESS TO JUSTICE

## TLDR FACTS:

- The 2017 Equifax data breach affected 148M US residents, and included names, addresses, SSN's, credit cards, drivers licence details and more.

- The proposed settlement of $700M includes only $31M for cash payments.

---

[15] Class Action, Inc., https://classactioninc.com/ (last accessed Dec. 3, 2019).

Reuben Metcalfe, *You have the right to object to the Equifax settlement. Here's how.*, Medium (Nov. 8, 2019).[16] A copy of that article is attached as Ex. 2.

50.     In Mr. Metcalfe's article, he promotes a "chat-bot" named "Clarence" that his company typically uses to file claims for claimants in class action settlements. Class Action, Inc. is a claims filing service that, we understand, charges a five percent transaction fee to aid class members in filing claims using its service.[17] Mr. Metcalfe programmed the chat-bot specifically for the Equifax settlement at the website https://www.NoThanksEquifax.com.

51.     That chat-bot provides a simple user flow that directs consumers to one of three options: object, opt-out, or file a claim. Prior to the objection deadline, individuals who visited the chat-bot were provided insufficient and misleading information about the settlement and the benefits it provided. References or links to the settlement website were only provided to consumers who affirmatively chose to file a claim, and only after they were walked through misleading statements about what the settlement provided and offered an opportunity to object based upon that

---

[16] *Available at* https://medium.com/@reubenmetcalfe/you-have-the-right-to-object-to-the-equifax-settlement-heres-how-4dfdb6cca663.

[17]  Mr. Edelson, counsel for the City of Chicago quoted in Mr. Warzel's New York Times opinion alongside Mr. Frank, is identified as a member of Class Action Inc.'s Advisory Board. *See* Class Action Inc. 2019 Demo Day Pitch – Class Action, https://vimeo.com/341715052 (at 5:50 mark in video).

information. The chat-bot informed consumers that only two types of relief were available under the settlement: credit monitoring, or a cash payment "between $1.30 and $25 per person." The chat-bot did not inform consumers that they could file claims for out-of-pocket losses (up to $20,000) and their time; that they were eligible to receive identity restoration services without filing a claim; or that the settlement reduced the risk of a future data breach by requiring Equifax to adopt sweeping business practice changes, spend at least $1 billion on cybersecurity over five years, submit to independent compliance audits, and risk being found in contempt of court if it fails to comply. Further, while the chat-bot was critical of the credit monitoring offered under the settlement, it did not explain to consumers the features of the credit monitoring developed for this case, or even that Experian—at Class Counsel's insistence—would be subjected to the Court's jurisdiction, ensuring that Class Counsel could ensure that Experian was providing services in accordance with the Settlement Agreement.

52.    Screen shots of the chat-bot's user flow are attached hereto as Composite Ex. 3 ("Learn More," "File a Claim," "Opt-Out," and "Object").

53.    News of the chat-bot caught on, and completing the circle he initiated in the *Times* opinion, Mr. Frank directed consumers to the Class Action Inc.'s chat bot to encourage more objections:



54.     Class Counsel again provided information to the media to correct this latest misinformation campaign. *See* Alison Frankel, *Equifax settlement faces objection campaign by class action disruptor*, Reuters (Nov. 11, 2019).[18] Despite pointing out Mr. Metcalfe's misrepresentations regarding the settlement, he did not modify the representations, nor did he reach out to Class Counsel to ask questions or voice his concerns.

---

[18] *Available at* https://www.reuters.com/article/legal-us-otc-equifax/equifax-settlement-faces-objection-campaign-by-class-action-disruptor-idUSKBN1XL2LK.

55.     On November 19, 2019, Mr. Metcalfe sent the purported objections procured via his chat-bot to JND, promoting his efforts on social media.



56.    Mr. Metcalfe represented that he had obtained 911 objections from settlement class members; however, JND has confirmed that only 718 were actually from class members.  *See* Keough Decl. ¶ 81.

57.    Mr. Metcalfe made the objections publicly available. He provided information regarding objections that were "unsigned" via Google Docs.[19] In a spreadsheet, Mr. Metcalfe provides the date the "objection" was received from an individual, along with their first name (last name and other PII redacted) and the individual's "message to the Court." Mr. Metcalfe made available 911 "signed objections" via a public Dropbox link.[20] It does not appear that any of these documents were redacted. Accordingly, they are being publicly filed with the Court in the same form available on Dropbox.

58.    After submitting the chat-bot objections, Mr. Metcalfe updated the bot, allowing individuals to either "write to the Court," or "stay updated," attached hereto as Composite Ex. 4.

---

[19] *Available here:*
https://docs.google.com/spreadsheets/d/1gfF7Gk8bOhDZwADeYbBWn9FMWN4uM1sr9rk89hN0efY/edit?fbclid=IwAR2ivlPVPUGUpvWMM69jWNEZitll-YArppORV-pWJU0fd5XmFvulOyCK7aQ#gid=86993864 (last accessed Dec. 3, 2019).

[20] *Available here*:
https://www.dropbox.com/sh/da8xqdcnmzxggx7/AAA6ZiXdRmbOdx6pWAREUmv9a?dl=0 (last accessed Dec. 3, 2019).

59.    Class Counsel is attempting to seek additional information from Class Action, Inc. via subpoena in order to assess the validity of the objections. Among other things, Class Counsel needs to understand how signatures to the objections were obtained. Class Counsel have been in contact with Mr. Metcalfe to schedule his deposition.

60.    Class Counsel is also seeking the depositions of a limited number of other objectors, pursuant to the terms of the Settlement Agreement.

61.    For example, Class Counsel took the deposition of Mikell West, who is represented by The Bandas Law Firm, P.C. ("Bandas Law") and Christopher Bandas, among other attorneys on December 4, 2019. [Doc. 880-2; 881] Federal courts across the country have referred to Mr. Bandas as a "serial objector," who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012); *see also, e.g.*, *In re Gen. Elec. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) (noting that Bandas "has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements" and concluding that the objector's "relationship with Bandas, a known vexatious appellant, further supports a finding

that [objector] brings this appeal in bad faith"); *In re Hydroxycut Mktg. & Sales Practices Litig*., 2013 WL 5275618, at \*5 (S.D. Cal. Sept. 17, 2013) (noting that "Mr. Bandas was attempting to pressure the parties to give him $400,000 to withdraw the objections and go away" and "was using the threat of questionable litigation to tie up the settlement unless the payment was made"); *Clark v. Gannett Co.*, 122 N.E. 3d 376, 380 (Ill. Ct. App. 2018) (Bandas has "earned condemnation of [his] antics from courts around the country. Yet, [his] obstructionism continues.").

62.    In 2018, the Appellate Court of Illinois, First District, ruled that Mr. Bandas had "engaged in a fraud on the court" by failing to file a *pro hac vice* appearance and filing an objection for an improper purpose—mainly, to elicit payment to drop an objection. *Clark v. Gannett Co., Inc.*, 122 N.E.3d 376 (Ill. App. 1st Nov. 20, 2018), *reh'g denied* (Jan. 18, 2019).  The court referred Mr. Bandas to the disciplinary commission for assisting in the unauthorized practice of law. *See id.* at 390-392 (finding that another attorney "was merely the frontman for the objection so that Bandas did not have to sign any pleadings or appear in court."). *See* Ex. 5. In a subsequent action, Mr. Bandas and his firm were permanently enjoined by a federal judge from, among other things, seeking admission to practice in any court without providing a copy of the final judgment in the action and objecting to any class action settlement without complying with certain

37

requirements. *Edelson P.C. v. The Bandas Law Firm*, 2019 WL 272812 (N.D. Ill. Jan. 17, 2019). Ex. 6. The apparent purpose of the injunction is to ensure that courts overseeing class action litigation in which Mr. Bandas or his firm become involved are aware of his unethical conduct. Neither Mr. Bandas nor his firm has filed the final judgment in this case.

63.     In his deposition, Mr. West testified that he was not aware of Mr. Bandas or Bandas Law's prior misconduct, nor was he aware of the injunction that was issued against them. Additionally, Mr. West testified that he paid for credit monitoring services, but did not file a claim for the hundreds of dollars in out-of-pocket losses to which he would be entitled as a result. Mr. West also testified that he did not see sitting for a deposition as a burden. Many of the objections that Mr. West made were undermined by his testimony.

64.     Class Counsel are also seeking the depositions of George Cochran (an attorney), John Davis, and Steven Helfand. Class Counsel seek to take their depositions to ensure that their motives for objecting in this action are appropriate and comport with Rule 23's criteria and have good reason to do so. *See, e.g.*, *Muransky v. Godiva Chocalatier*, 2016 WL 11601079, at *3 (S.D. Fla. Sept. 16, 2016) (labelling Mr. Davis and others as "professional objectors who threaten to delay resolution of class action cases unless they receive extra compensation."); *In*

*re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WLL 7364803, at *11 (N.D. Cal. Dec. 19, 2016) (noting that Mr. Helfand "frequently file[s] objections in class action settlement proceedings," which, in that case, was not "well-tailored to the facts of the case"); *Davis v. Apple Computer, Inc.*, 2005 WL 1926621 (Cal. Ct. App., 1st Dist., Div. 4 Aug. 12, 2005) (noting that Mr. Davis and Mr. Helfand had "confidentially settled or attempted to confidentially settle putative class actions in return for payment of fees and other consideration directly to them" in apparent violation of court rules.)

65.    Another objector in this case—Christopher Andrews (whose objection is postmarked November 20, 2019)—also has a history of objecting to class action settlements. He has made a number of unfounded accusations against Class Counsel in this case. In addressing Mr. Andrews' objections in another class action, *Shane v. Blue Cross*, No. 10-cv-14360 (E.D. Mich.), the court noted that many of his "submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." Ex. 7. The court also noted that Mr. Andrews "is known to be a 'professional objector who has extorted additional fees from counsel in other cases[.]'" *Id.* And based on an email that Mr. Andrews sent to counsel in the *Shane* action on November 27, 2019, this case appears to another example of an extortion scheme. Ex. 8.

66.     Another objector—Troy Scheffler—filed what essentially amounts to a racist rant under the guise of objecting to the settlement (albeit belatedly, on November 25, 2019): "Mainstream 'news' is taking fast.  Fake news is a thing. . . . The majority of hate groups are black. The only reason there was an uptick in 'hate groups' was not because of white supremacists. . . .  The numbers still show blacks are overrepresented in hate crimes and whites are underrepresented.   This notwithstanding the constant which [sic] hunts against whites." [Doc. 884 at 20-22] Mr. Scheffler has objected to a number of class actions; however, a court has previously found that similar objections to the ones he made here "have no factual or legal merit."  No. 13-cv-24583-PAS, Doc. 197 at 25 (S.D. Fla. July 22, 2016), *aff'd* No. 16-15277 (11th Cir. July 31, 2017).  In another objection, Mr. Scheffler agreed to a payout to drop his objection.  *In re Experian Data Breach Litig.*, No. 15-cv-01592, Doc. 335 (C.D. Cal. July 3, 2019) (approving payment of $10,000 to Mr. Scheffler and his counsel to drop the objection).

67.     All objections to this case are being filed contemporaneously in a separate document.  They are summarized in the attached Ex. 9.


### *Class Counsel's Additional Work*


40

68.     Since the Court's order authorizing class notice, Class Counsel have also spent substantial time on other matters, such as overseeing implementation of the claims and notice programs; communicating with JND, Signal, defense counsel, and the Regulators (including through weekly conference calls); answering hundreds of questions from class members; evaluating and responding to objections; and working on the papers that will be filed before the final approval hearing.

69.     Although a toll-free number was set up to answer questions that settlement class members could have about the settlement, Class Counsel have collectively responded to hundreds of inquiries from class members, themselves, ranging from how to fill out claims forms, to questions about the specific types of relief available under the settlement.

70.     And Class Counsel's work will not end once the settlement is finally approved or even after all appeals are resolved. Class Counsel's oversight responsibilities and other work will continue until the settlement is finally consummated, which will not occur until far into the future. The initial claims period does not end until January 2020, and likely will be followed by a four-year extended claims period. Identity restoration services will be available to class members for three more years after that. The notice program will continue throughout this entire seven-year period. Moreover, as the settlement administrator begins verifying

claims, Class Counsel will be hard at work monitoring the process and where necessary participating in the dispute resolution procedures as contemplated by the claims protocol. (Ex. 9 to Settlement Agreement, Doc. 739-2 at 285-292). Additional information regarding Class Counsel's anticipated work is outlined in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives and Supporting Memorandum of Law [Doc. 858], as well as declarations submitted in support. [Docs. 858-1, 858-2, 858-3]

71.    Since submission of Plaintiffs' motion for attorneys' fees, Class Counsel have continued to collect and review time and expense records pursuant to the standard protocol and the review process described in our previous declaration [Doc. 858-1 ¶¶ 40-49]. Since October 1, 2019, and after review by Class Counsel for billing judgment, Plaintiffs' counsel have incurred an additional 1,366 hours of time and $1,005,657.90 in lodestar through November 30, primarily on overseeing the notice program and administration of the settlement and work related to final approval and responding to objections. In addition, there is a modest amount of previously-incurred time that was erroneously not reported by participating firms who represent individual class representatives, totaling 234.6 hours and $100,303.00 in lodestar. All of this time is summarized by firm in Exhibit 10 hereto, and detail

thereof will be submitted to the Court *in camera* pursuant to the February 12, 2018 Order.

72.     When combined with the time submitted with the fee application (31,011.9 hours and $20,986,357.80 lodestar), the time and lodestar reasonably incurred on behalf of the class and submitted in support of Plaintiffs' fee application—to the extent the Court considers lodestar in this common-fund settlement—is 32,612.5 hours and $22,092,191.70 lodestar. This time is reasonable and justified in view of the issues, the complexity and importance of the case, the manner in which the case was defended, and the quality of the result.

73.     Plaintiffs' lodestar of $22,092,191.70 as of November 30, 2019, results in a multiplier of 3.5 through November 2019. The multiplier is even lower if Class Counsel's future hours as estimated above are included in the cross-check calculation. When considering the additional 10,000 hours and $6,767,200 in lodestar Class Counsel conservatively estimates will be expended after final approval, the lodestar for current and future time thus is $28,859,391.70, reducing the total multiplier to 2.69. Class Counsel will make a final supplement of time incurred immediately prior to the final approval hearing.

74.     In connection with the fee application, Class Counsel reported that they had reasonably and necessarily incurred $1,248,033.46 in expenses for such items

as court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures. Since submission of the fee application, Class Counsel have reasonably and necessarily incurred an additional $42,002.70 in expenses, bringing the total requested expenses as of this filing to $1,290,036.16. Supporting detail for each of these current expenses has been reviewed by Class Counsel. A chart summarizing these expenses by category is attached hereto as Exhibit 11, and detail of these expenses will be submitted to the Court *in camera* pursuant to the February 12, 2018 Order. Class Counsel will make a final supplement of expenses incurred immediately prior to the final approval hearing.

We declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 5th day of December, 2019.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield

*/s/ Amy E. Keller*
Amy E. Keller

*/s/ Norman E. Siegel*
Norman E. Siegel

# Exhibit 1

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

## The New York Times

# Equifax Doesn't Want You to Get Your $125. Here's What You Can Do.

Consumers have a few options for dealing with the data breach settlement.



**By Charlie Warzel**
Mr. Warzel is an Opinion writer at large.

Sept. 16, 2019

Equifax had one job — keep its vast trove of personal financial information on millions of Americans secure. In 2017, the company failed spectacularly at that job when a hack compromised the information of more than 147 million people.

This July, Equifax settled a lawsuit with the Federal Trade Commission in response to that failure for up to $700 million. A settlement website was created to allow those who had their information exposed by Equifax to file a claim to receive either free three-bureau credit monitoring for up to 10 years or up to $125 (if you already had credit monitoring, no documentation necessary).

News spread. Millions listened and inundated the claim site. A week later, I reported on some fine print in the settlement suggesting that Equifax earmarked only $31 million for claims, meaning that if all 147 million people affected by the breach filed a claim, everyone would get just 21 cents. Two days later, the F.T.C. admitted this and urged victims instead to take the free credit monitoring. Activists and politicians, including Elizabeth Warren, excoriated the F.T.C., calling the initial settlement "misleading."

Last weekend, victims looking for their $125 faced yet another indignity in the form of an email from the Equifax settlement team. The email — which looked so spammy the F.T.C. had to assure readers on its website that it was legitimate — said that people looking for a cash reward must verify they had credit monitoring in place by Oct. 15, 2019, or their claims would be denied.

To recap: Equifax exposed personal financial information, was sued by the government and settled. The government publicly touted a cash reward alternative of up to $125 to victims without ensuring enough money had been set aside to guarantee the max amount for every possible person affected; the government backtracked on its statement; eventually, the Equifax settlement team sent a mid-weekend email adding a new hurdle for victims to claim their money. And the cash settlement? "Forget about the $125 alternative," the Los Angeles Times columnist Michael Hiltzik wrote. "It doesn't really exist in the real world."

As one of the 147 million who had their personal information exposed (my weekend email was helpfully buried in the purgatory of Gmail's "Promotions" tab), the settlement high jinks are enraging to me — an example of financial restitution in the form of a news release only. Worse yet, the bungled payouts may have long-term repercussions for the way Americans think about privacy.

"This deal makes me sick," Jay Edelson, a class-action lawyer who specializes in privacy cases, told me last week. "This is going to be most Americans' experience with privacy class-action suits. And their view is going to be, I assume, 'We were promised a lot and we're going to get nothing and that's how it'll always be.'"

*[If you're online — and, well, you are — chances are someone is using your information. We'll tell you what you can do about it. Sign up for our limited-run newsletter.]*

Fortunately, experts say there are still things you can do if you feel frustrated and misled.

## Respond to that Equifax settlement email

This may seem obvious but the best thing you can do, especially if you have credit monitoring protections active, is make sure you find, open and respond to the Equifax email the settlement team sent out. Theodore H. Frank, a lawyer who specializes in class-action suits, told me this week that only 3 percent of the people who get class-action emails actually respond. But responding is important, because it shows real consumer interest in restitution.

Of course, you'll need to show proof that you have credit monitoring to be eligible for a cash settlement. But there's a chance you might have credit monitoring active even if you weren't previously aware. Many major credit cards actually provide a form of credit monitoring — it's worth checking with your credit card company to see if you have some form of monitoring in place. If you do, it's a loophole that might allow you to receive your piece of the settlement.

Case 1:17-md-02800-TWT    Document 900-1    Filed 12/05/19    Page 49 of 247

Granted, this requires some legwork — more than many people may be willing to put in. But giving up is exactly what the settlement team is hoping for when they send out a suspect-looking email, Mr. Frank argued. "Boycotting this unfair settlement isn't doing anything. The settlement attorneys will still get paid, even if you don't," he said.



## Write a letter to the court

Before anyone can get their money, the court — specifically, the United States District Court for the Northern District of Georgia — has to approve the settlement. This, two class-action lawyers told me, is where victims have some real power to exert some influence. According to one lawyer familiar with the settlement, one of the factors the court looks at are the responses from those who write letters.

These objections can come in many forms — you can find information on how to object here under FAQ section 25 — and you can simply write a standard one-page letter. No legalese or lawyers necessary. "Courts actually read all the objections," one attorney said. Because most people are too intimidated to write in, a small percentage can go a long way. "Even if it's just 1,000 or 2,000 people, that can send a big message." The letter should be brief and outline the process, stressing that you feel deceived by the terms of the settlement — if you do.

Another option is to write your state attorney general to complain about the settlement. Multiple class-action lawyers I spoke with noted that a number of state attorneys general were part of this settlement and that inundating them with letters could ratchet up the pressure to push back on the settlement.

The difficulty is that people usually don't realize a settlement is unfair right away. Often, it's not until years later, when a check for a few cents arrives, that they'll realize they've been baited and switched. But then it's too late.



## File a formal, legal objection

Then there's the heavy-lift option, which involves class-action lawyers like Mr. Frank. This process is likely to take time, as the objection will cite case law and make a formal argument to the settlement judge. Once these formal objections are filed, other victims can join them without needing to do as much legwork.

There are some serious downsides to filing a formal objection, according to Mr. Frank. Those who do could face long, aggressive depositions from Equifax's lawyers. Their financial records could be subpoenaed as well. "The lawyers take these objections very personally," he said. "They have $80 million in fees at stake. It's going to be really ironic when the lawyers who were fighting for the privacy of the class will harass them and invade their privacy to keep their money."

But, Mr. Frank argues, if people come out in droves with formal objections, it may lessen the burden for all victims. "It's like that meme where if 10,000 people storm Area 51, the government won't shoot them all. If enough people object, they probably won't get deposed. And if they do, well, you can look at it as a once-in-a-lifetime experience."

Opinion | 2,800 and Taxi Doesn't Want to Collect Your $125. Here's What You Can Do. - The New York Times

## Why should I do this?

If all of this sounds elaborate, it is. But if you care about the future of privacy, the impact could be meaningful. As Mr. Frank notes, this is ultimately about sending a message on behalf of millions of victims that protecting privacy does matter and that those who expose entrusted personal information owe victims real compensation. Not some bait-and-switch news release.

*Like other media companies, The Times collects data on its visitors when they read stories like this one. For more detail please see our privacy policy and our publisher's description of The Times's practices and continued steps to increase transparency and protections.*

*Follow @privacyproject on Twitter and The New York Times Opinion Section on Facebook and Instagram.*

# Exhibit 2

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

Case 1:17-md-02800-TWT   Document 900-1   Filed 12/05/19   Page 52 of 247

# You have the right to object to the Equifax settlement. Here's how.



Reuben Metcalfe   Follow
Nov 8 · 10 min read



HECK YEAH INDEPENDENT ACCESS TO JUSTICE

## TLDR FACTS:

- The 2017 Equifax data breach affected 148M US residents, and included names, addresses, SSN's, credit cards, drivers licence details and more.

- The proposed settlement of $700M includes only $31M for cash payments.

- The '$125 to $250' claims are currently expected to pay less than $5 each.

- The proposed credit monitoring service (via Experian) recently had their own data breach. (We know because we filed thousands of claims for it.)

- If approved, the attorneys representing you will make $77.5M in fees.

- Equifax shares are up 43% this year… For now.

- *We built a chatbot called Clarence to make it easy for you to object.*

## HOW TO OBJECT:

Simply ask our chat-bot Clarence to do it for you by **clicking here**.



Shia LaBeouf would. In fact, he probably already has.

## THE STORY:

It was 2AM, and the the tone of the 7–11 employee counter had changed.

Brow now certifiably furrowed, he eventually landed on "I won't sell" before (now rather pointedly) completing my coffee purchase.

Like myself, this hard working fellow's personal data had been compromised in The Worst Data Breach in History involving roughly half the US population and I suspect, the vast majority of those reading this post.

Unlike myself, he hadn't the context of having filed tens of thousands of class action claims that week.Indeed, he was aware of neither the settlement, the data breach, *nor the existence of any credit bureau*, including Equifax.

**Naturally, when I asked him for how much he'd be willing to sell me his first and last name, email and physical addresses, telephone number, credit card number, social security number and drivers license details for …He assumed it was a joke.**





You'd think selling SSN's would be illegal. It is not.

I mean it sounds like it **must** be a joke... Doesn't it?

Is there a scenario in which that question isn't patently ludicrous?

His story is not uncommon. Over the past few months I've asked the same question of clerks, bankers, mothers, friends, or anyone with enough patience (or perhaps the temperament) for a curve-ball from a stranger.

Most refuse to entertain the question entirely and — when pushed — will answer in the 'tens of thousands to millions' range.

Still, we now find ourselves with what most believe to be **only three options** in the Equifax settlement as follows;

**1) File a claim for $125–250 per person.**

Only you're much more likely to receive less than **five dollars**, due to a capped $31M settlement pool with completely predictable claim volumes.





GET YOUR $125 NOW BEFORE ITS PREDICTABLY $5

## 2) Accept credit monitoring services from Experian

Of course, they recently settled their own data-breach class action for sixteen million Californian T Mobile users. So one might be forgiven for feeling odd about handing ones data over so that they too can sell it to their clients.



We can protect your data this time... we just need a little more of it if that's okay.

## 3) Shake our heads, and do nothing.

…And watch as Equifax's stock climbs higher than it was prior to the breach, whilst simultaneously losing your legal rights to sue or participate in any future outcome of any litigation related to the event.



Tempting.

# Here's two options you may not have heard of:

## 4) Opting out

Usually only attorneys (or those with the means to hire one) have the awareness and access to exercise their right to *opt-out* of a class action settlement in order to pursue their rights individually. That being said, there are a number who have received multi-thousand dollar judgments in their favor from pursuing this path in small claims court.



Opting out means you're on your own — which may not be a bad idea if you're willing to put the time in.

…And then there's this option:

## 5) You can object to the settlement(!)





Objecting is kind of a big deal.

If you were not aware you had to the right to object, it is because every actor in the class action ecosystem is actively incentivized to ensure that is the case.

**What could possibly be so important about this mechanism, that both plaintiffs and defense counsel would make it as difficult as possible?**

To put it simply; If class actions were a finely tuned system of checks and balances (which they can be and often are) filing an objection would be the equivalent of someone walking in with a bomb strapped to their chest.

It is essentially a vote of 'no confidence' in the settlement, and it causes a lot of trouble for those who are trying to approve the deal. In this case, a successful objection or group of objections would;

- Prevent the settlement from being approved as-is.

- Prevent class counsel from receiving a $77.5M paycheck.

- Prevent Experian from receiving a great deal of money for their 'free' credit monitoring services (paid in part by some of the $669M that doesn't go to you.)

- Pave the path for an immediate appeal against a judges decision if they decide to overrule such objections and,

- Expose Equifax to the full extent of any and all liability the class action settlement would otherwise waive in lieu.

Unsurprisingly, filing an objection (as noted in Q25 on this FAQ) is not as easy as filing a claim for the not-really-$125.

Whilst there is no legal reason to prioritize one legal right over another, filing objections for class actions are reliably several times harder, invariably involving physical letters, often sent to multiple physical addresses.

That being said, even among 'normally' difficult processes… This settlement has perhaps **the MOST unduly burdensome** we've seen to date… And we've seen hundreds in our role as the worlds leading (okay okay — the only) online class action claims filing service for consumers.

**On learning this, I had to remind myself as to why I started this company.**

You see, the Equifax Data breach happened shortly after I was inspired (incensed?) to start Class Action Inc in 2017.

When this settlement finally across our desk years later, I immediately told my Facebook friends to 'wait for a moment' before filing a claim… The numbers didn't add up, and whilst it's common for consumer class action claims to see low participation rates (The average US resident is part of 3–4 class actions each year, yet files only one claim every five years) … This settlement was…

Well.

Unsettling.

1. The consumer cash portion is less than 5% of the total settlement pool

2. The proposed credit monitoring supplier only recently settled a large-scale data breach of their own.

3. The payment is likely to be *orders of magnitude* less than what was advertised.

4. The attorneys representing the class are getting **double** the total cash portion of their consumer client base. (One presumes they refused to be paid in $77.5M worth of free credit monitoring.)

5. The defendant's share price has SKYROCKETED, with speculators touting stock as 'a buy right now'…Perhaps the Equifax execs who sold $2 Million worth of stock *after* the breach but *before* the announcement should have held on a little longer, hey?

**But you know… Not everyone cares about this kind of thing.**

Only a small percentage of the population people pay real attention to data, privacy rights, or related class actions and their outcomes. Out of sight, out of mind right? Life is

for living — not dwelling on what happened in the past!

Still, to the extent you wouldn't sell your SSN and credit card details to a stranger on the street for $5, and to the extent a necessary part of my job is to observe hundreds of class actions a year… SOMEONE should probably speak up when things aren't working like they're supposed to.

As the filing deadlines has approached in recent weeks, with a few notable exceptions — I haven't seen many offering real solutions for consumers who've felt frustrated with what can feel like an abuse of power, and a mistaken belief that they are powerless.

**In truth, class members are more powerful than you might think.**

Given our role, we've decided it's our job to let them know that fact.

Hey, you'd do the same for us, right?

So!

**Here's the deal:**

I Reuben Metcalfe, founder of Class Action, Inc, whilst having no desire to alienate myself or my company from the class action plaintiffs bar, the class action defense bar, or the judiciary who oversee this critical part of the US legal infrastructure, am pretty much **done** with being quiet about just how bad of a mess the class action system has become:

- Claims rates are regularly in the single digit range.

- Coupon settlements are (somehow) alive and well.

- Adhesive arbitration agreements are being increasingly upheld.

- Collective power wanes, along with the faith in the system so many stewards of justice spent their lives to earn and maintain.

Perhaps it is the current climate, but it feels as though the fabric of trust upon which the strength of the rule of law rests, increasingly frays at the seams.

If we are to repair and maintain this rich and valuable tapestry then, we must prepare to speak and act in its service when the opportunity presents itself.

# Here's what we're doing about it:

## Starting today, our claims-filing robot bear Clarence will not only file claims for class action settlements.

## He will now file opt-outs and objections. (For free.)

Why would a company simultaneously antagonize both the class action plaintiffs bar and the collective legal resources of the Fortune 500?

Quite simply, we believe it's the most sustainable long-term path.

While some corporations see fit to censor their own communities for fear of retaliation from national interests, we choose to empower the voice of our community, and to join them with a voice of our own.

On that note, allow me to be explicit:

**The Equifax settlement is an objectively bad deal.**

It is not fair.

It is not adequate.

It is not reasonable.

As filing agent and custodian for hundreds of thousands of US consumer class members, we believe the five percent fee we procure from filing such claims, is of lesser value than the loyalty and support of our customers, who deserve a service provider who refuses to profit at their expense.

**We choose not to be complicit in the wholesale of human rights.**

We choose transparent systems over institutionalized ambivalence.

We choose to eschew the needlessly complex, and unduly burdensome.

We choose to reinforce an underfunded court system suffering from increasing pressures on an outdated infrastructure.

We choose greater access for consumers to their powerful legal rights.

We choose increased independent access to justice.

And far this settlement is concerned?

We choose to object.

You can join us in doing so by clicking here.

Sincerely,

Reuben Metcalfe

Founder and CEO, Class Action, Inc.

**Addenda:**

For avoidance of doubt - whilst we believe objecting is the better option - we can and will file claims for those among our client community who choose to do so for this particular settlement. We're capitalists, so we don't accept donations — but we'd love to file your claims for you for hundreds of (other, much better) settlements each year for our standard five percent fee if you're interested in semi-regular amounts of free money on the internet. You can find us at www.classactioninc.com

# FAQ: (Updated 11/11/19)

## Q: How many objections are needed to 'block' this settlement?

A: Only one valid objection is needed — but higher volumes really make an impact. The highest volume of objections I've personally seen on a case was almost 30 — though I hear some cases have seen several hundred in the past. We accrued over two hundred objections on the first day of this post, so I suspect we may be setting a world record here.

## Q: What data do you need from me to file an objection?

A: We'll need your name, physical address, email, and the reasons why you're objecting to the settlement. You'll also be confirming you are indeed part of the settlement — if you're unsure, you can find out here.

**Q: I already filed a claim… Can I still file an objection?**

A: You can — make sure to mention it in your objection.

**Q: Will Clarence (or your company) sell, lease, or expose my data?**

A: No. (Except for filing the objection to the court.)

**Q: Do you make money from this? What's the angle, here?**

A: We don't make money from filing objections (Indeed, it costs a reasonable amount to send the physical letters by certified mail) That said, if the settlement is renegotiated and our clients are paid higher amounts (Say for example, the originally proposed $125-$250 per person) then we'll still make 5% in filing fees for those claims. If that happens, it'll be the same for every class member, whether or not they're a customer. It's a bit like a union (you know, one of the cool ones) advocating for workers rights — whether or not every worker is part of the union. You don't have to be a customer if you don't want to, but we promise to work really hard for you if you do.

**Q: Is there anything else I can do to help make this thing happen?**

A: Yes! TELL EVERYONE.

Privacy     Equifax     Legal     Startup     Justice

About    Help    Legal

# Exhibit 3

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

Nothanksequifax.com Chat Bot Thread – File a Claim



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – File a Claim



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – File a Claim





11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – File a Claim



Nothanksequifax.com Chat Bot Thread – File a Claim

https://www.equifaxbreachsettlement.com/



## Welcome To The Equifax Data Breach Settlement Website

In September of 2017, Equifax announced it experienced a data breach, which impacted the personal information of approximately 147 million people. A federal court is considering a proposed class action settlement submitted on July 22, 2019, that, if approved by the Court, would resolve lawsuits brought by consumers after the data breach. Equifax denies any wrongdoing, and no judgment or finding of wrongdoing has been made.



If you are a class member, you can use this website to claim the benefits described below.

*Please note that none of these benefits will be distributed or available until the settlement is finally approved by the Court.*

If you request or have requested a cash benefit, the amount you receive may be significantly

Nothanksequifax.com Chat Bot Thread – File a Claim



Nothanksequifax.com Chat Bot Thread – Learn More



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections





11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Become a member   Sign in   Get started

# You have the right to object to the Equifax settlement. Here's how.

Reuben Metcalfe [Follow]
Nov 8 · 10 min read



HECK YEAH INDEPENDENT ACCESS TO JUSTICE

## TLDR FACTS:

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread - Objections



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread - Objections



Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out

https://www.courts.ca.gov/1007.htm



Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out

[https://www.clfip.com/ip/equifax-settlement-opt-out.html](https://www.clfip.com/ip/equifax-settlement-opt-out.html)



Nothanksequifax.com Chat Bot Thread – Opt-Out

# Automatic Equifax Settlement Opt-out Document Generator

Complete Your Information and a PDF copy of the form with information you enter below will be emailed to you. Mailing Instructions will be provided in the email.

* Required

## Are You Eligible? *
Visit Official link: https://eligibility.equifaxbreachsettlement.com/eligibility

◯ Yes The Site Shows I Am Eligible

## Potential Waiver Of Rights *
Please note: by sending the document generated by this system, you will waive all rights to be part of the settlement or receive the benefits it proposes. This document generator is provided to you as a courtesy. You should seek legal consultation before completing this form.

◯ Yes I Understand. I will seek services of an attorney before mailing the document. I have read the important information disclosed at https://www.clfip.com/ip/equifax-settlement-opt-out.html

## Full Name *
Enter Your Full Legal Name Here. This Is the Information That Will Be Printed On The Document

Your answer

11/11/19 12:07 PM

Nothanksequifax.com Chat Bot Thread – Opt-Out



Nothanksequifax.com Chat Bot Thread – Opt-Out



11/11/19 12:07 PM

# Exhibit 4

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

Nothanksequifax.com Chat Bot Thread – Learn More



Nothanksequifax.com Chat Bot Thread – Learn More



Nothanksequifax.com Chat Bot Thread – Learn More



https://medium.com/@reubenmetcalfe/you-have-the-right-to-object-to-the-equifax-settlement-heres-how-4dfdb6cca663

Nothanksequifax.com Chat Bot Thread – Learn More

# You have the right to object to the Equifax settlement. Here's how.


Reuben Metcalfe  Follow
Nov 8 · 10 min read





HECK YEAH INDEPENDENT ACCESS TO JUSTICE

## TLDR FACTS:



Nothanksequifax.com Chat Bot Thread – Learn More



Nothanksequifax.com Chat Bot Thread – Stay Updated



Nothanksequifax.com Chat Bot Thread – Stay Updated





Nothanksequifax.com Chat Bot Thread – Stay Updated



11/25/19 11:40 AM

Nothanksequifax.com Chat Bot Thread – Stay Updated

Nothanksequifax.com Chat Bot Thread – Write to the Court



Nothanksequifax.com Chat Bot Thread – Write to the Court



Nothanksequifax.com Chat Bot Thread – Write to the Court



Nothanksequifax.com Chat Bot Thread – Write to the Court



Nothanksequifax.com Chat Bot Thread – Write to the Court



Nothanksequifax.com Chat Bot Thread – Write to the Court





11/25/19 11:40 AM

# Exhibit 5

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

2018 IL App (1st) 172041
Appellate Court of Illinois, First District,
Second Division.

Ramona CLARK and Dylan Schlossberg,
Individually and on Behalf of All Others Similarly
Situated, Plaintiffs-Appellees and Cross-Appellants,

v.

GANNETT CO., INC., a Delaware
Corporation, Defendant-Appellee.
(Gary Stewart, Objector-Appellant and
Cross-Appellee; Christopher A. Bandas
and C. Jeffrey Thut, Cross-Appellees).

No. 1-17-2041
|
Opinion filed November 20, 2018
|
Rehearing denied January 18, 2019

**Synopsis**

**Background:** Class representatives brought class action
against defendant, alleging that defendant violated Telephone
Consumer Protection Act. Parties thereafter signed settlement
agreement establishing nonreversionary fund of $13.8 million
and providing that class counsel would seek reasonable
attorney fees of no more than 39% of fund, and the
Circuit Court, Cook County, No. 16 CH 06603, Kathleen G.
Kennedy, J., preliminarily approved settlement and directed
notice to settlement class. Objector filed objections regarding
amount of settlement, class counsel's attorney fees, and class
notice. The Circuit Court, Kathleen G. Kennedy, J., overruled
objections and affirmed certification of settlement class. Class
counsel then moved for sanctions against objector's counsel,
alleging that objector's counsel filed objections for improper
purpose. After objector failed to appear at hearing regarding
motion, the Circuit Court, Pamela McLean Meyerson, J., held
him in contempt, fined him $500, and struck his objections,
and further denied class counsel's motion. Objector appealed
and class counsel cross appealed.

**Holdings:** The Appellate Court, Hyman, J., held that:

objector's notice of appeal failed to specify judgment
appealed from as required by rule, and thus appellate court
lacked jurisdiction to consider appeal, and

trial court abused its discretion by excluding from hearing on
class counsel's motion for sanctions all evidence related to
objections to other class action settlements in which objector's
counsel was counsel.

Reversed and remanded.

Mason, P.J., specially concurred, with opinion.

**Procedural Posture(s):** On Appeal; Motion to Approve
Settlement; Motion for Contempt Sanctions; Motion to
Exclude Evidence or Testimony; Judgment.

*379 Appeal from the Circuit Court of Cook County. No. 16
CH 06603, The Honorable Kathleen G. Kennedy and Pamela
McLean Meyerson, Judges, presiding.

**Attorneys and Law Firms**

C. Jeffrey Thut, of Noonan, Perillo & Thut, of Waukegan, for
objector-appellant.

Rafey S. Balabanian, Ryan D. Andrews, and Alexander G.
Tievsky, of Edelson PC, of Chicago, for appellees Ramona
Clark and Dylan Schlossberg.

Bradley J. Andreozzi and Iman N. Boundaoui, of Drinker
Biddle & Reath LLP, of Chicago, and Matthew J. Fedor (pro
hac vice), of Drinker Biddle & Reath LLP, of Florham Park,
New Jersey, for appellee Gannett Co.

Darren M. VanPuymbrouck, of Freeborn & Peters LLP, of
Chicago, for cross-appellee Christopher A. Bandas.

Joseph R. Marconi, Victor J. Pioli, and Ava L. Caffarini,
of Johnson & Bell, Ltd., of Chicago, for cross-appellee C.
Jeffrey Thut.

**OPINION**

JUSTICE HYMAN delivered the judgment of the court, with
opinion.

**\*\*370 ¶ 1** The relationship between class counsel and
objector's counsel can be a tense **\*\*371 \*380** and
combative one. And when objector's counsel happens to be
professional objectors, who impose objections for personal
financial gain without little or no regard for the interests of
the class members, open hostility often ensues. Objector's

Clark v. Gannett Co., Inc., 2018 IL App (1st) 172041 (2018)
122 N.E.3d 376, 428 Ill.Dec. 367

counsel here, Christopher A. Bandas, of Corpus Christi, Texas, and C. Jeffrey Thut, of Chicago, have provoked more than the ire of class counsel, earning condemnation for their antics from courts around the country. Yet, their obstructionism continues.

¶ 2 After the trial court overruled objector counsel's boilerplate objections to the settlement agreement and attorneys' fees, class counsel decided to expose what they regarded as a farce by moving under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) for sanctions against objector's counsel.

¶ 3 The trial court held a hearing on the Rule 137 motion. The objector, Gary Stewart, of Cardiff, California, who had been ordered to appear at the hearing, was a no-show. The trial court held Stewart in contempt, fined him $500, and struck his objections to the settlement and attorneys' fees. The trial court also denied sanctions against objector's counsel.

¶ 4 Stewart appeals the trial court's contempt order. But, his notice of appeal is defective. The notice of appeal identifies an order that had been withdrawn and omits mention of the superseding order issued four days later. Thus, this court lacks jurisdiction to review Stewart's contempt finding, and it stands.

¶ 5 Stewart also appeals the trial court's order denying his objections to the class settlement and granting the full amount of class counsel's request for attorneys' fees. Because the contempt order stands, and that order struck his objections, we need not address his objections.

¶ 6 In the course of the Rule 137 hearing, the trial court granted a motion *in limine* to exclude evidence of objector's counsel's pattern of conduct in representing objectors in class action lawsuits. We reverse that ruling and remand for new Rule 137 hearing at which this evidence will be admitted to determine whether the objection was filed for an improper purpose.

¶ 7 Finally, we direct the clerk of our court to forward a copy of this order to the Attorney Registration and Disciplinary Commission (ARDC) to determine whether disciplinary action should be taken against Bandas and Thut.

¶ 8 The Parties

¶ 9 Plaintiff-Class representatives, Ramona Clark and Dylan Schlossberg, represented by Edelson PC, of Chicago, sued Gannett Co., Inc., in a class action suit alleging violations of the Telephone Consumer Protection Act of 1991 (Telephone Consumer Protection Act) (47 U.S.C. § 227 (b)(1)(A)(iii) (2012) ). A disbarred California attorney referred objector Gary Stewart, of Cardiff, California, to attorney Christopher Bandas, a member of the Texas state bar who is not licensed to practice law in Illinois. C. Jeffrey Thut, of Chicago, acted as local counsel for Bandas.

¶ 10 Background

¶ 11 Plaintiffs alleged that Gannett violated the Telephone Consumer Protection Act (*id.*) by promoting the sale of its newspapers through unsolicited marketing calls to cellular telephones of a class of about 2.6 million individuals. Plaintiffs sought actual and statutory damages, an injunction on unsolicited calls, and declaratory relief.

¶ 12 In January 2014, Richard Casagrand and Schlossberg filed an almost identical lawsuit in the United States District Court for the District of New Jersey. About two years later, during which little **372 *381 formal discovery appears to have been exchanged, the parties spent a full day in mediation with former federal Judge Wayne R. Andersen. In April, the parties held another full day with Judge Andersen. Next, Casagrand and Schlossberg voluntarily dismissed the New Jersey case, and in May 2016, Schlossberg along with Clark (in place of Casagrand) refiled the virtually identical case in the chancery division of the circuit court of Cook County.

¶ 13 By July, the parties had signed a settlement agreement establishing a nonreversionary fund of $13.8 million. Gannett also promised to initiate various measures designed to ensure compliance with the Act and prevent future unwanted telemarketing calls to consumers. On the matter of class counsel's attorneys' fees, the settlement agreement provided: "Class Counsel will petition the Court for an award of reasonable attorneys' fees," which class counsel agreed "to limit" at "no more than 39% of the Settlement Fund."

¶ 14 The following month, in August 2016, Judge Kathleen Kennedy preliminarily approved the settlement and directed notice to a settlement class. According to the parties, 99% of the settlement class of 2.6 million members received direct notice of the suit. About 50,000 members made claims to

participate in the settlement. Absent from the record is a transcript of the preliminary hearing.

¶ 15 In October, class counsel moved for an award of attorneys' fees, expenses, and an incentive award for the class representatives.

¶ 16 The sole objector to the settlement was Stewart. His participation was solicited by a disbarred California attorney, Darrell Palmer, who referred Stewart to Texas attorney Bandas. In turn, Bandas contacted Chicago attorney Thut to act as his local counsel. On the last day for filing objections, Thut signed and filed an objection prepared by Bandas, which included this statement: "Objector is also represented by Christopher Bandas, with Bandas Law Firm, PC, 500 N. Shoreline, Corpus Christi, Texas 78401, as his general counsel in objecting to the settlement. Mr. Bandas does not presently intend on making an appearance for himself or his firm." At no time did Bandas file an appearance or sign a pleading.

¶ 17 Bandas's objection on behalf of Stewart argued that class counsel's attorneys' fees were excessive and class members had received insufficient information in the class notice regarding the settlement terms. After class counsel's response, Stewart added an objection to the amount of the settlement.

¶ 18 At the fairness hearing, the Edelson PC firm argued that the objection was a "cut and paste job" filed by a professional objector. Thut's total oral argument consisted of a single sentence, "We are resting on our papers."

¶ 19 Judge Kennedy affirmed the certification of the settlement class, overruled Stewart's objection, determined that class notice provided adequate information, and found the settlement agreement "fair, reasonable, and adequate." As to attorneys' fees, she found "no basis to require a net benefit analysis or a Lone Star [sic] cross-check or to supervise the allocation of fees," and approved $5,382,000 for attorneys' fees and expenses, representing a fee of 39% of the settlement amount, as "within the range of reasonable fees."

## ¶ 20 Rule 137 Sanctions

¶21 The next month, Edelson PC moved for sanctions against Bandas and Thut under Rule 137. Edelson PC maintained that Bandas and Thut filed Stewart's objection for an improper purpose, namely, to elicit attorneys' fees without providing

any benefit **382 **373 to the class or informing the court of their improper purpose. Bandas and Thut retained separate counsel for the hearing on the Rule 137 motion. On January 31, 2017, Freeborn & Peters LLP filed an appearance on behalf of Bandas, along with a motion challenging the court's jurisdiction over him (735 ILCS 5/2-301 (West 2016) ) and asserting the sanctions motion fails to state a claim under section 2-615 of the Code of Civil Procedure (id. § 2-615). The trial court construed the 2-615 motion as a motion to strike the sanctions motion.

¶ 22 Edelson PC argued:

"Ultimately he, you know, Mr. Bandas, got us to a mediation and basically said, 'I'm going to—I can delay the settlement which will cost the class and class counsel money. And, in exchange for me not doing that, you can pay me'—I think his first demand was near half a million dollars. We ultimately agreed to pay him $225,000 so he wouldn't appeal this objection."

Edelson PC also argued that Bandas's "game" was to enlist other attorneys to sign documents, even though he wrote "every single document in this case," and not sign the objection. As to Thut, Edelson PC argued he was responsible for Bandas's actions because he "signed everything without reviewing it."

¶ 23 Bandas's counsel admitted Bandas had "participated in the mediation" and had prepared the first draft of the objection and stated that "there was input from others."

¶ 24 On May 19, 2017, Judge Pamela McLean Meyerson ruled on the Rule 137 motion for sanctions, noting

"The objection to the settlement was prepared by Mr. Bandas and it was reviewed, signed, and filed by Mr. Thut. Judge Kennedy had overruled the objection and approved the settlement on November 14th, 2016. At that time there were some arguments about improper motives of the objector, but she stated that this court attempted to look only to the merits and makes no determination about any untoward motive behind Mr. Stewart's objection."

¶25 Edelson PC requested sanctions (i) striking the objection; (ii) requiring Bandas to obtain admission to the bar of this state before representing any future clients in Illinois; and (iii) imposing monetary sanctions or, alternatively, amending the judgment to note that the objection had been resolved by settlement, essentially enforcing Bandas's alleged demand of

$225,000 to drop the appeal. Judge Meyerson refused to strike the objection on the basis that Judge Kennedy had overruled it. Judge Meyerson then found that Rule 137 sanctions did not apply to Bandas because he did not sign the objection and had not filed an appearance in this jurisdiction, but suggested filing a complaint with the ARDC about Bandas not having been admitted *pro hac vice.*

¶ 26 Regarding Thut, Judge Meyerson ordered an evidentiary hearing limited to the issue of whether Thut filed the objection for an improper purpose: "My holding is that I do need more evidence and I will set an evidentiary hearing, but it's going to be strictly limited. I mentioned what the sanctions were that have been requested. The only sanction that I will consider at this point is a monetary sanction. I will not strike the objection because it's already been overruled by Judge Kennedy. I won't require anything of Mr. Bandas because it is only with respect to Mr. Thut, and I will not enforce the alleged settlement as a sanction because while Plaintiff asked me to enforce the settlement as an alternative sanction, Plaintiff also says that the mediation was a sham and that the settlement agreement [with the objector] is the product of extortion."

**374 *383 ¶ 27 Edelson PC served Stewart with an Illinois Supreme Court Rule 237(b) (eff. July 1, 2005) notice to appear at the evidentiary hearing. Thut, as Stewart's counsel, moved to quash Stewart's appearance. The court denied the motion, and ordered Stewart's appearance.

### ¶ 28 Rule 137 Sanctions Evidentiary Hearing

¶ 29 Before the hearing, Thut moved *in limine* to bar any testimony or evidence regarding other class action cases in which he served as objector's counsel or in which sanctions were sought against him.

### ¶ 30 *Edelson's Testimony*

¶ 31 At the hearing, attorney Jay Edelson, of Edelson PC, testified that he represented the class and lead negotiations to resolve Stewart's objection. In October 2016, he called Thut to discuss the objector's request for more information to assess the settlement's reasonableness. Thut "responded with impatience," did not seem to understand that he had made that objection, and he didn't care." Thut responded that he "should speak to his co-counsel [Bandas] who's really leading the case." Thut also said Bandas was "calling all of the shots."

After some discussion about inaccuracies in the objection, Thut "started swearing" and, eventually, hung up on him.

¶ 32 Thut, in a letter dated October 27, 2016, to Jay Edelson, stated that Bandas served as lead counsel, made all the decisions, and would move to be admitted *pro hac vice* in Illinois.

### ¶ 33 *Balabanian's Testimony*

¶ 34 Edelson PC attorney Rafey Balabanian testified that he knew Stewart acted as a "professional objector." He noted that Stewart's objection described Bandas to be "general counsel," and he believed Stewart's objection indicated Bandas intended to seek *pro hac vice* admission, which Bandas never did. (The objection states, "Mr. Bandas does not presently intend on making an appearance for himself or his firm.") Balabanian said Thut repeatedly told him that Bandas represented Stewart.

¶ 35 Balabanian spoke with Thut outside Judge Kennedy's courtroom after the initial final fairness hearing,

> "Judge Kennedy entered and continued the motion for final approval. Mr. Thut left the courtroom rather abruptly. I recall I walked out after him. I told him that—I reminded him about the contents, essentially, of the letter that my partner had sent to him on, I think, October 18th, expressing that Christopher Bandas was a serial professional objector, that he filed objections for the improper purpose of extorting fees for himself as proved, and that if he persisted in acting as counsel for Mr. Stewart, that we would likely sue him for that conduct."

Thut responded by calling Balabanian "Junior" and saying Balabanian should talk to Bandas because "he was calling the shots."

¶ 36 After the hearing at which Judge Kennedy approved the settlement, Balabanian spoke with Thut about withdrawing from the case. Thut said Balabanian should speak to Bandas about resolving the case because "he's the one running the show" and "he speaks for us." Balabanian denied chasing Thut down the hall and asking him to resolve the objection to avoid an appeal.

¶ 37 Next, Bandas returned a telephone call from Balabanian to discuss "potentially resolving" Stewart's objection. Balabanian wanted to talk about the objection because

he thought they had an "understanding" that "we don't pay professional objectors." Bandas "became irritated" and called the subject "nonsense," then hung up. A few days later, Balabanian e-mailed Bandas to again inquire about resolving the objection. Bandas responded that he did not "trust" **375 *384 Balabanian and they would need to communicate through a mediator.

¶ 38 Balabanian e-mailed Bandas on November 30 about mediation. Bandas responded, suggesting a mediator, Rodney Max. Bandas e-mailed Max (copying Balabanian) that he represented the objector "and soon-to-be appellant" and Balabanian for the settlement class and Bandas for Stewart, had agreed to mediate fees for Bandas.

¶ 39 Then, Max and Bandas spoke by telephone, followed by Max relating to Balabanian a demand from Bandas "to his group" of between $225,000 and $457,000. The demand did not seek any alterations to the class settlement. Balabanian understood this to mean the objection would "potentially" be resolved in exchange for a payment. Balabanian did not know if the demand included any payment to Stewart.

¶ 40 Balabanian asked Max for Bandas's justification for the requested payment, explaining that a payment without any relief for the class was inappropriate and improper. Bandas's response to Max was that he had no obligation to improve the settlement on behalf of the class, he represented only his client's interest, and the payment demand had nothing to do with the time he put into the case. Balabanian "felt as though we were being extorted" and made no counteroffer but asked if "$225,000 would actually settle the matter." Balabanian understood this to mean that if his firm paid $225,000, Bandas and Thut would not pursue an appeal. Max confirmed an agreement between class counsel and Bandas for the $225,000. When Max informed Bandas of Edelson PC's intent to seek court approval of the payment as required by statute (735 ILCS 5/2-806 (West 2016) ), Bandas responded that disclosure of the mediation agreement could not be made to anyone, "including the court."

¶ 41 An objection to a question regarding Bandas's reputation in the legal community was sustained by the trial court.

¶ 42 On cross-examination, Thut's lawyer questioned Balabanian, eliciting testimony that Bandas's conduct as a serial objector was well-known to the class action community.

¶ 43 *Thut's Testimony*

¶ 44 Thut testified that before this case, he had been co-counsel with Bandas on objections involving three class action cases; two in federal court, and one in Illinois state court. Bandas was admitted to practice in federal court so he would handle appeals in those cases. As for the Gannett settlement, Bandas called Thut on the morning of October 21, 2016, the deadline for objections, and they had a five-minute conversation about Stewart's need for representation. Thut received Bandas's objection by e-mail at 1 p.m. Thut checked the settlement website, read the objection and exhibits, and called Bandas back. Thut said he asked Bandas, "Is everything in here true and correct?" and "Did this guy sign this?" After Bandas answered "absolutely" and "yes, he did," Thut "hopped in [his] car" and "flew down" to the Skokie courthouse to meet the filing deadline. Thut filed the objection at 4:30 p.m.

¶ 45 Thut did not review any case law. He was satisfied that Stewart's objection was "factually accurate and warranted by existing law." Thut did not have a retainer agreement with Stewart, and he did not know whether Bandas and Stewart had a retainer agreement but assumed they did.

¶ 46 *Trial Court's Ruling*

¶ 47 The trial court found by a preponderance of the testimony that the objection was not filed for an improper purpose. The trial court further declined to grant the Rule 137 motion for sanctions.

**376 *385 ¶ 48 Stewart's Contempt Finding

¶ 49 On the day of the hearing, July 19, 2017, Stewart failed to appear. Judge Meyerson found Stewart to be in direct criminal contempt and imposed a $500 fine. But the written order entered on July 20 read that Stewart had been found

"in indirect criminal contempt of court for his knowing failure to appear at the evidentiary hearing on July 19, 2017, in violation of the Court's Orders of June 30 and July 19, 2017. As a sanction, Mr. Stewart is ordered to pay a fine in the amount of $500 to the Clerk of the Circuit Court of Cook County within 30 days of the date of this Order. In addition, the Court strikes Mr. Stewart's objection to the

settlement in this matter (which objection was previously overruled)."

¶ 50 On July 24, on Clark and Schlossberg's motion, Judge Meyerson withdrew the July 20 order, finding Stewart in direct criminal contempt of court to conform to her oral pronouncement.

¶ 51 Stewart's Notice of Appeal referenced only the July 20 order that found him in indirect criminal contempt. His Notice of Appeal does not mention or refer to the July 24 order. In his prayer for relief he "requests that the Appellate Court reverse the November 14, 2016 Order overruling his objection and reverse the July 20, 2017 Order finding Mr. Stewart in Contempt, imposing a $500 on him, and striking his objection."

¶ 52 Analysis

¶ 53 Stewart's Notice of Appeal

¶ 54 We have an independent duty to review our jurisdiction over an appeal and dismiss when it does not exist. *Vines v. Village of Flossmoor*, 2017 IL App (1st) 163339, ¶ 8, 418 Ill.Dec. 507, 90 N.E.3d 996 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539, 83 Ill.Dec. 332, 470 N.E.2d 290 (1984) ). Illinois Supreme Court Rule 303(b)(2) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. June 4, 2008). Without a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and must dismiss the appeal. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176, 351 Ill.Dec. 308, 950 N.E.2d 1136 (2011). A notice of appeal confers jurisdiction on the appellate court to consider only the judgments or parts of judgments specifically identified in the notice. *Corah v. The Bruss Co.*, 2017 IL App (1st) 161030, ¶ 20, 413 Ill.Dec. 231, 77 N.E.3d 1038 (citing *General Motors Corp.*, 242 Ill. 2d at 176, 351 Ill.Dec. 308, 950 N.E.2d 1136).

¶ 55 The July 20 order found Stewart in "indirect criminal contempt." The July 24 order withdrew the July 20 order and found Stewart in "direct criminal contempt." Stewart's notice of appeal references only the withdrawn July 20 order and Judge Kennedy's November 14, 2016 order overruling his objection to the settlement.

¶ 56 Stewart's insurmountable problem is that Judge Meyerson withdrew the July 20 order and issued a different order on July 24, superseding the order specified in his notice of appeal. Under Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017), an appellant must "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." The appellate court has jurisdiction only to review the judgments or parts of judgments identified, or inferred from, the notice of appeal. **377 *386 *City of Chicago v. Concordia Evangelical Lutheran Church*, 2016 IL App (1st) 151864, ¶ 70, 410 Ill.Dec. 30, 69 N.E.3d 255. Further, a notice of appeal will be deemed to include an unspecified interlocutory order when the interlocutory order was a step in the procedural progression leading to the judgment specified in the notice. *Id.* In *City of Chicago*, the trial court's ruling on a motion *in limine* was a step in the procedural progression leading to the final order specified in the notice. *Id.* ¶ 71. Here, the order specified in the notice, the withdrawn order, preceded the order that held Stewart in contempt. The July 20 order, having been withdrawn, no longer exists and cannot be the basis for an appeal. See *Kelch v. Watson*, 237 Ill. App. 3d 875, 877, 178 Ill.Dec. 448, 604 N.E.2d 971 (1992) ("The effect of a vacated order is that of a void order. Black's Law Dictionary defines 'vacate' as follows: '[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment.' (Black's Law Dictionary 1548 (6th ed. 1990).").

¶ 57 Finally, the notice filed on August 15, 2017, referenced four orders: November 14, 2016; June 30, July 17, and July 20, 2017. During oral argument, Thut represented to this court that the proper order (the July 24 order) was *attached* to the notice of appeal. Contrary to Thut's statement, not only did the notice of appeal not reference or attach the July 24 order, but none of the four orders referenced as exhibits in the body of the notice were attached either. The notice of appeal in the record consists of two pages without any attachments.

¶ 58 We must comply with the Illinois Supreme Court Rules governing appeals, and neither a trial court nor an appellate court has the authority to excuse compliance with the filing requirements. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 150, 198 Ill.Dec. 399, 632 N.E.2d 1010 (1994). Thus, we lack jurisdiction to consider Stewart's appeal.

¶ 59 Class Counsel's Cross-Appeal

Clark v. Gannett Co., Inc., 2018 IL App (1st) 172041 (2018)

122 N.E.3d 376, 428 Ill.Dec. 367

¶ 60 Class counsel cross-appeals (i) the order denying sanctions under Rule 137 against Bandas; (ii) the evidentiary rulings excluding evidence, including the grant of Thut's motion *in limine* related to objections to class action settlements in which Thut was counsel; and (iii) the trial court's order denying sanctions under Rule 137 against Thut. Class counsel asks that we remand for a new evidentiary hearing.

¶ 61 After thoroughly reviewing the record, including the transcripts and pleadings in the trial court, we recognize the cross-appeal for what it is—an internecine clash between class counsel and objector counsel, between Edelson PC and Bandas-Thut. So we refer to the Edelson PC firm rather than the named plaintiffs because the cross-appeal, at its core, is a feud that the Edelson PC firm has with objector's counsel. This is nothing new to class action litigation; an objector by challenging one or more aspects of the settlement transforms the fairness hearing into an adversarial proceeding. And, from time to time, as here, objections are not class member driven but driven by attorneys interested in lining their own pocketbooks. Stewart was plucked by an intermediary, a disbarred lawyer to boot, for Bandas-Thut.

¶ 62 Edelson PC claims that Bandas-Thut's motive for objecting was nothing short of disingenuous and Bandas-Thut interposed the last-minute objection for their own pecuniary interests, their own self-interests; in other words, to extort a fee for themselves. For this reason, Edelson PC moved for Rule 137 sanctions against Bandas-Thut, asserting that the objection was filed for "an improper purpose." Essentially, Edelson PC depicts Bandas-Thut as hold-up artists deliberately manipulating the legal system to collect an unearned bonanza at Edelson PC's expense. This is **\*378 \*387** self-serving because here every dollar for fees reduces what is available to class members and, accordingly, is at the class members' expense.

¶ 63 Illinois Supreme Court Rule 137 Sanctions

¶ 64 Edelson PC asserts error in the July 19, 2017, granting of Thut's motion *in limine* to exclude all evidence related to other objections to class action settlements in which Thut was counsel. According to Edelson PC, by so doing, the trial court excluded certain evidence demonstrating Thut's knowledge of the extortionate purpose of the objection. Edelson PC argues that the trial court failed to follow procedures required by the Attorney Act (705 ILCS 205/1 (West 2014) ), thereby

allowing Bandas and Thut to file documents "in a manner that avoids any attorney taking responsibility for their contents."

¶ 65 Rule 137 requires every pleading, motion and other document of a party represented by an attorney to be signed by at least one attorney of record.

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

(We do not condone the use of sexist language; the pronouns should be reconfigured to refer to both sexes or, better yet, gender-free. We urge the supreme court to substitute gender-neutral language.) Rule 137 further provides that if a document is signed in violation of this rule, the court, either on a motion or its own initiative, may impose on the person who signed it "an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." *Id.*

¶ 66 The supreme court designed Rule 137 to prevent abuse of the judicial process by sanctioning parties who file vexatious and harassing actions based on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217, 317 Ill.Dec. 727, 882 N.E.2d 607 (2007). See *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020, 288 Ill.Dec. 418, 817 N.E.2d 1068 (2004) ("The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits."). The purpose is not, however, to punish parties "simply because they have been unsuccessful in the litigation." *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050, 240 Ill.Dec. 105, 715 N.E.2d 792 (1999). Using an objective standard, the trial court must evaluate whether a party made a reasonable inquiry into the facts and law supporting his or her allegations. *Dismuke*, 378 Ill. App. 3d at 217, 317 Ill.Dec. 727, 882 N.E.2d 607. Penal in nature, Rule 137 is strictly construed, and courts reserve sanctions for egregious cases. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1032, 306 Ill.Dec. 782, 858 N.E.2d 579 (2006). The party seeking sanctions for a violation of the rule bears the burden of proof

and must show that the opposing party made untrue and false allegations without reasonable cause. *Stifle v. Baker Epstein Marz*, 2016 IL App (1st) 150180, ¶ 32, 410 Ill.Dec. 774, 71 N.E.3d 770.

¶ 67 When considering the propriety of Rule 137 sanctions, a reviewing **379 *388 court determines whether (i) a trial court's ruling was based on adequate information, (ii) valid reasons appropriate to the case are identifiable, and (iii) the ruling logically follows from applying the reasons stated to the particular circumstances. *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737, 228 Ill.Dec. 1, 688 N.E.2d 699 (1997). Before imposing sanctions, a hearing must be conducted to afford the parties an opportunity to present evidence to support or rebut the claim and to allow them to articulate their respective positions. *Id.* at 736, 228 Ill.Dec. 1, 688 N.E.2d 699. See *Century Road Builders, Inc. v. City of Palos Heights*, 283 Ill. App. 3d 527, 531, 219 Ill.Dec. 158, 670 N.E.2d 836 (1996) ("An evidentiary hearing should always be held when a sanction award is based upon a pleading filed for an improper purpose, rather than one which is merely unreasonable based on an objective standard."). The ruling on the motion *in limine* foreclosed Edelson PC from presenting evidence of the relationships between serial objector Stewart and Texas attorney Bandas, who has a history with courts across the country of acting frivolous, vexatious, and in bad faith. See *infra* ¶ 69.

¶ 68 Thut, as Stewart's Illinois attorney, argues that he should not be held responsible for Bandas's actions, despite signing the objection. Thut avers the objection to the settlement was proper and that Judge Kennedy overruled Stewart's objection but declined to find the objection frivolous "or impute untoward motives toward Thut."

¶ 69 There are two ways an objector might be paid: first, "by raising the value of a class action settlement and receiving a percentage of the increase in value or a fixed-payment for having improved the settlement" or, "on the other hand, he might intervene and cause expensive delay in the hope of getting paid to go away. The former purpose for intervening would be entirely proper, while the latter would not." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003). The attempt to intervene might not be frivolous, but the court must decide whether sufficient evidence supports the trial court's conclusion regarding improper purpose. *Id.* at 659. The pattern of conduct engaged in by Bandas, Thut, and Stewart is relevant to the objection's possible improper purpose of

seeking attorneys' fees with the bare minimum of effort, expense, and time.

¶ 70 Bandas-Thut, with Stewart as the objector, have used this strategy in multiple cases in different states. This case was the impetus for the federal lawsuit brought by Edelson PC accusing the defendants of various racketeering and conspiracy violations of federal statutes. We take judicial notice of that proceeding. *Edelson PC v. The Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at *2 (N.D. Ill. July 20, 2018). Plaintiff Edelson PC accused Bandas, Thut, Stewart, and 20 unnamed John Does of being "vexatious litigants" who allegedly recruit "sham" objectors to frivolously object, appeal its denial, settle out of court, then withdraw as soon as class counsel agrees to a nominal amount in "attorneys' fees." As noted in Judge Pallmeyer's ruling in *Edelson PC*, "courts nationwide have denounced Defendants' behavior," specifically Bandas, Thut, and Stewart. The *Gannett* case was cited as one of 15 lawsuits since 2009 in which Bandas, Thut, and Stewart have repeated this same basic pattern—frivolously object, appeal its denial, settle out of court, and withdraw. See *id.* ("Nevertheless, courts across the country have excoriated Defendants' exploitative, rent-seeking behavior in cases in which their involvement has come to light."). One federal judge found that "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate *389 **380 changes to settlements, but does so for his own personal financial gain [and] has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 281 F.R.D. 531, 533 (N.D. Cal. 2012). Another federal judge described Mr. Bandas as "a known vexatious appellant" who has been "repeatedly admonished for pursuing frivolous appeals of objections to class action settlements." *In re General Electric Co. Securities Litigation*, 998 F.Supp.2d 145, 156 (S.D.N.Y. 2014). See, *e.g.*, *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* 295 F.R.D. 112, 159 n.40 (E.D. La. 2013); *Garber v. Office of the Commissioner of Baseball*, No. 12-CV-03704, 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017).

¶ 71 The same pattern of "rent-seeking behavior" expressed in *Edelson PC* exists here. An order denying Rule 137 sanctions will not be disturbed on review absent an abuse of discretion. *Oviedo v. 1270 S. Blue Island Condominium Ass'n*, 2014 IL App (1st) 133460, ¶ 46, 384 Ill.Dec. 865, 17 N.E.3d 847 (citing *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47, 371 Ill.Dec. 532, 990 N.E.2d 720). But our deferential standard of review does not prevent this court from independently

reviewing the record to determine whether the facts warrant an abuse of discretion finding. *Id.* Here, as in *Oviedo*, "the better course is to allow the trial court, on consideration of our views" regarding the claims of an improper purpose as the basis for Stewart's objection, to revisit the request for sanctions. *Id.* Therefore, we vacate the order denying the motion for Rule 137 sanctions and remand this matter to the trial court. We direct the trial court to conduct a new hearing with admission of evidence of similar conduct in other cases to determine whether the objection was indeed filed for an improper purpose.

### ¶ 72 Unauthorized Practice of Law

¶ 73 The Attorney Act requires a license to practice law in Illinois, and only a licensed attorney can "receive any compensation directly or indirectly for any legal services." 705 ILCS 205/1 (West 2014); see also Ill. R. Prof'l Conduct (2010) R. 8.5(a) (eff. Jan. 1, 2010) ("A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."). Section 1 of the Attorney Act permits a contempt sanction for the unauthorized practice of law, "in addition to other remedies permitted by law and shall not be construed to deprive courts of this State of their inherent right to punish for contempt or to restrain the unauthorized practice of law." 705 ILCS 205/1 (West 2014). The Attorney Act was intended to prevent the practice of a profession by those who are not licensed. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 25, 293 Ill.Dec. 657, 828 N.E.2d 1155 (2005). No private right of action exists under the Attorney Act, but other attorneys licensed in Illinois have standing to bring an unauthorized practice of law cause of action because the practice of law by unlicensed persons infringes on the rights of those who are properly licensed. *Id.* at 26, 293 Ill.Dec. 657, 828 N.E.2d 1155 (citing *Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.*, 329 Ill. App. 3d 953, 956, 263 Ill.Dec. 872, 769 N.E.2d 74 (2002) ).

¶ 74 Bandas claims there is no basis to sanction him because he is a nonparty and a nonattorney of record and he did not sign any pleadings. Responding to Edelson PC's argument, Bandas asserts Thut was Stewart's attorney of record and signed the objection. Bandas further asserts Rule 137 cannot apply to impose sanctions on **381 *390 him and, thus, the trial court did not abuse its discretion in refusing sanctions.

¶ 75 Bandas hides behind the narrow interpretation of Rule 137 as limited to those attorneys who sign a pleading or other document. First, Stewart's objection, filed October 16, 2016, identifies Bandas, with Bandas Law Firm, PC, in Corpus Christi, Texas, as his general counsel in objecting to the settlement. Stewart's objection stated further: "Mr. Bandas does not presently intend on making an appearance for himself or his firm." And Bandas unquestionably provided Stewart legal services that constitute the practice of law in Illinois and subject him to the personal jurisdiction of this Court, including (i) soliciting a disbarred lawyer to arrange for Stewart to serve as an objector in Illinois; (ii) agreeing to represent Stewart in the Illinois proceeding, as Stewart's objection acknowledges; (iii) drafting Stewart's objection and listing himself as Stewart's lawyer in the Illinois proceeding; (iv) contacting Thut to appear in his stead in the Illinois proceeding; (v) representing Stewart in discussions with class counsel regarding Stewart's objection, by phone, and by e-mail; and (vi) entering into negotiations with class counsel and, apparently, agreeing to resolve this matter solely in exchange for $225,000 in attorneys' fees. In addition, Thut repeatedly informed class counsel that Bandas called the shots, and his role was limited, so limited, in fact, that at the final hearing Thut made no argument or any other comment regarding the objection.

¶ 76 By not signing or appearing in court, Bandas has succeeded in circumventing the Rule 137, but that does not relieve him of responsibility for his undisputed representation of Stewart in Illinois.

¶ 77 In ruling on the motion for sanctions, the trial court noted "[t]he objection to the settlement was prepared by Mr. Bandas and it was reviewed, signed, and filed by Mr. Thut." The trial court found, however, it had no jurisdiction to sanction Bandas, suggesting the proper route to pursue sanctions was with the Illinois ARDC. In "a case before a court of the State of Illinois," the lawyer must still register with the ARDC, be admitted *pro hac vice*, and file an appearance. Ill. S. Ct. R. 707(c)(1) (eff. Feb. 1, 2018). See also Ill. S. Ct. R. 13 Committee Comments (adopted June 14, 2013) (noting limited scope appearance applies to attorneys appearing for "settlement negotiations"). At the very least, subsections (1) and (3) of Rule 13(c) require Bandas to have filed a limited scope appearance (after being admitted *pro hac vice* under Rule 707). See Ill. S. Ct. R. 13(c)(1), (6) (eff. July 1, 2017); R. 707 (eff. Feb. 1, 2018).

¶ 78 The Illinois Supreme Court possesses the authority to regulate the practice of law, but no all-embracing definition defines its meaning. *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791, 797-98, 333 Ill.Dec. 101, 914 N.E.2d 520 (2009). A "generally accepted definition of the term exists," however, as " 'the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' " *Id.* at 798, 333 Ill.Dec. 101, 914 N.E.2d 520 (quoting *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256, 94 N.E.2d 148 (1950) ). Bandas's method of *not* applying and appearing *pro hac vice* is designed to escape responsibility by appearing not to practice law in this jurisdiction.

¶ 79 Bandas was named as Stewart's counsel from the inception of proceedings; this status never changed and presents this court with the conundrum of Bandas filing an objection to reap monetary benefits **\*391 \*\*382** in an Illinois case, and doing all the substantive work, while hiding behind the cloak of Rule 137.

¶ 80 But, Bandas cannot avoid responsibility so easily. Rule 5.1(c) of the Illinois Rules of Professional Conduct of 2010 provides,

"A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer * * * has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." Ill. R. Prof'l Conduct (2010) R. 5.1(c) (eff. Jan. 1, 2010).

The committee comments indicate paragraph (c) "expresses a general principle of personal responsibility for acts of another" and references Rule 8.4(a) regarding misconduct. Ill R. Prof'l Conduct (2010) R. 5.1 cmt. 4 (eff. Jan. 1, 2010); see Ill. R. Prof'l Conduct (2010) R. 8.4(a) (eff. Jan. 1, 2010) ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.").

¶ 81 We turn to Thut's actions. Assisting another in the unauthorized practice of law is also the unauthorized practice

of law. Ill. R. Prof'l Conduct (2010) R. 5.5(a) (eff. Jan. 1, 2010). The Illinois Rules were adopted in 1990 and modeled after the American Bar Association Model Rules of Professional Conduct. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 179, 226 Ill.Dec. 416, 685 N.E.2d 871 (1997). Foreign lawyers "not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in [Illinois,]" but they must associate with an admitted lawyer "who actively participates in the matter." Ill. R. Prof'l Conduct (2010) R. 5.5(c)(1) (eff. Jan. 1, 2010).

" 'The signing attorney cannot leave it to some trusted subordinate, or to one of his [or her] partners, to satisfy himself [or herself] that the filed paper is factually and legally responsible; by signing he [or she] represents not merely the fact that it is so, but also the fact that he [or she] personally has applied his [or her] own judgment.' " *Bachmann v. Kent*, 293 Ill. App. 3d 1078, 1086, 228 Ill.Dec. 299, 689 N.E.2d 171 (1997) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) ).

Here, the documents were prepared by Bandas and signed by Thut, who admittedly did not review or take an active part in the case. By failing to adequately investigate the basis for the objections to the proposed settlement before filing, Thut did not use his own judgment, nor did Bandas adequately supervise his actions.

¶ 82 The annotated comments to the American Bar Association's Model Rules of Professional Conduct Rule 5.5 note the following: "Lawyers who work with out-of-state lawyers risk being deemed to have assisted in them in the unauthorized practice of law." American Bar Association, Annotated Model Rules of Professional Conduct, R. 5.5, at 523 (8th ed. 2015). See, *e.g.*, *In re Lerner*, 124 Nev. 1232, 197 P.3d 1067 (2008) (lawyer allowed employee licensed only in Arizona to conduct initial consultations, decide whether to accept representation, negotiate claims, and serve as clients' sole contact with firm); *In re DuBre*, 376 S.C. 158, 656 S.E.2d 343 (2007) (managing lawyer of out-of-state collection firm's South Carolina office signed firm's pleadings so they could be filed in state and took no other action in those cases, **\*\*383 \*392** which were handled by out-of-state lawyers).

¶ 83 Exceptions to the rule enable an out-of-state attorney to participate in pending litigation, and include a co-counsel situation where representation is undertaken in association with an attorney admitted to practice in the jurisdiction and who actively participates in the representation. Peter J.

Walsch, *Multijurisdictional Practice of Law Issues in Estate Planning*, 40 Est. Plan. 23, 29 (June 2013). For the "temporary basis" to apply, "the affiliation with the local attorney must be temporary." *Id.*

"A local attorney serving as a 'mere conduit' to an out-of-state attorney could face discipline for 'assisting in unauthorized practice of law.' For example, in *In Re DuBre*, [376 S.C. 158, 656 S.E.2d 343 (S.C. 2007) ], an attorney was disciplined for an association with an outof-state * * * law firm through which the attorney lent his name to the pleadings filed within the state but substantially all substantive work in the matters was done at the office of the out-of-state law firm. The local attorney may need to implement the action recommended by the out-of-state attorney so that the local attorney has the opportunity to review all such actions and protect the client against any advice which falls below the level of competence." *Id.*

The situation described is akin to that presented here, with the out-of-state attorney doing all the substantive work and the local counsel filing the objection a few scant hours after first hearing of it via telephone.

¶ 84 Moreover, Thut admitted that he did not have a retainer agreement with Stewart. As Thut stated, Bandas was "calling all the shots." Thut was merely the frontman for the objection so that Bandas did not have to sign any pleadings or appear in court. The record does not establish any payment-sharing between Bandas and Thut, but we are mindful that any agreement addressing the division of fees between law firms must comply with Rule 1.5(e), which states:

"(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;

(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

(3) the total fee is reasonable." Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

¶ 85 Bandas and Thut, and Stewart by extension, have taken advantage of a situation described as "murky" and with

"unpredictable" or "sporadic" enforcement, with a "vastly uncertain" scope of jurisdictional restrictions in various states. See Arthur F. Greenbaum, *Multijurisdictional Practice and the Influence of Model Rule of Professional Conduct 5.5 —An Interim Assessment*, 43 Akron L. Rev. 729, 731 n.7 (2010) ("Commission member describing the rules governing multijurisdictional practice at that time as 'ambiguous' and 'uncertain' "). Both attorneys have engaged in a fraud on the court.

¶ 86 We reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this opinion. The clerk of our court is directed to forward a copy of this order to the ARDC to determine whether disciplinary **\*393   \*\*384** action should be taken against Bandas and Thut.

¶ 87 Reversed and remanded.

Justice Walker concurred in the judgment and opinion.

Presiding Justice Mason specially concurred, with opinion.

¶ 88 PRESIDING JUSTICE MASON, specially concurring:
¶ 89 I concur in the result in this case and agree that we lack jurisdiction over Stewart's appeal from the trial court's order finding him in contempt. The failure of Stewart's counsel to perfect an appeal from the July 24, 2017, order precludes us from resolving on the merits issues relating to the November 14, 2016, order overruling his objection to the settlement and the propriety of the trial court's July 20, 2017 order striking that objection, *nunc pro tunc*, as a sanction for Stewart's failure to appear for a hearing on the petition for Rule 137 sanctions against his attorney. I write specially because I nevertheless consider it necessary, as future guidance for trial judges, to comment on the exorbitant fees awarded to class counsel and the lack of any meaningful examination by the trial court of the justification for those fees.

¶ 90 As noted, a virtually identical class action complaint was originally filed in federal district court in New Jersey on January 2, 2014. According to class counsel's brief on appeal, "[t]he parties litigated the case in that forum for nearly two years." But examination of the court's docket reveals that other than the filing of the complaint and responsive pleadings, there was virtually no "litigation" to speak of. There was no contested motion practice and, in particular, no motion for class certification. The court originally ordered

that an initial pretrial conference would be held on July 15, 2014. At the request of the parties, that conference was postponed to October 30, 2014. Although class counsel represent that the parties engaged in "extensive discovery," none of that activity is reflected on the court's docket.

¶ 91 By September 2015, the parties had agreed to stay the federal case pending mediation. Ultimately, after several extensions of the stay, the federal case was dismissed by stipulation on April 27, 2016. Class counsel's brief explains the reason for the dismissal as based on "the uncertainty surrounding federal subject-matter jurisdiction in TCPA cases at that time." In point of fact, as recited in the stipulation of settlement, class counsel's concern pertained to the anticipated decision in *Spokeo, Inc. v. Robins*, 578 U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), a case decided shortly after the parties stipulated to dismiss the federal case. Spokeo dealt not with subject-matter jurisdiction but rather with a class plaintiff's ability to demonstrate injury-in-fact as required to establish standing to sue under federal law. In *Spokeo*, the United States Supreme Court determined that publication of allegedly inaccurate information by a website operator was insufficient to confer standing on a putative class representative alleging a "bare procedural violation" of the Fair Credit Reporting Act. *Id.* at ——, 136 S.Ct. at 1549. The court found that the procedural violation unaccompanied by an identifiable, "concrete" injury could not satisfy the injury-in-fact component of standing. *Id.* at ——, 136 S.Ct. at 1548. As applied in this case, the allegation in the New Jersey complaint that the named plaintiff and members of the class had received unsolicited, automated telephone calls, without more, would likely suffer the same fate. Thus, it is apparent that it was not the lack of subject-matter jurisdiction but standing that motivated class counsel **\*385 \*394** to abandon a forum in which the court might determine that the named plaintiff—and hence the class—had not suffered any concrete injury at all.

¶ 92 By the time the New Jersey case was dismissed by stipulation, the parties had participated in two days of mediation in an effort to settle the case. Although the mediation did not immediately produce a settlement, later negotiations resulted in an agreement in principle that called for the federal case to be dismissed and refiled in Cook County. Thus, before the case was filed here, the parties had agreed to settle it.

¶ 93 The case was refiled in Cook County on May 12, 2016. Two months later, on July 12, 2016, the stipulation

of class action settlement was signed. The stipulation of settlement was filed in the circuit court on October 7, 2016. In addition to the creation of a $13.8 million settlement fund, the agreement provided that within one year of the settlement's effective date, Gannett would (i) provide "training concerning [Telephone Consumer Protection Act (TCPA) ] compliance to key managers who oversee telemarketing calls to consumers" and (ii) "conduct a review of its internal TCPA compliance procedures and the TCPA compliance procedures of any vendor that conducts telemarketing on Gannett's behalf." No enforcement or verification mechanism for this relief is provided for under the settlement. Class counsel also agreed to "limit" their fees to "no more than 39% of the Settlement Fund" or roughly $5.38 million, plus costs, including the cost of administering the settlement.

¶ 94 The trial court preliminarily approved the settlement the following month. We have no way of knowing what, if any, inquiries the trial judge made regarding the "package deal" presented to her as the parties did not bother to bring a court reporter to the hearing. We do know that the parties' appearance on the settlement was, other than routine motions, their first substantive appearance on the case.

¶ 95 As is typical in TCPA cases, less than 2% of the estimated 2.6 million class members responded to notice of the settlement. The 50,000 class members who did file claims can expect to receive, after payment of attorney fees and costs, roughly $150 each. Meanwhile, even if we had jurisdiction, we would have no record to speak of that would enable us to determine whether the more than $5 million in fees Class Counsel expect to receive are reasonable or appropriate. The trial court did not require counsel to file a fee petition supported by time records showing exactly how much time counsel devoted to the case. As discussed above, the docket in the New Jersey litigation, participation in two days of mediation and negotiation of the settlement agreement, particularly lacking any mechanism to enforce the nonmonetary relief beyond the modest payments to class members, would not appear to warrant such a generous payday. And while a trial court certainly has discretion to dispense with a lodestar calculation under appropriate circumstances (*Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 244, 213 Ill.Dec. 563, 659 N.E.2d 909 (1995) ), where, as here, the parties present the court with a *fait accompli* and the court has absolutely no familiarity with the background of the litigation, the court abdicates its role as the guardian of the interests of absent class members when it simply accepts counsel's word for it.

¶ 96 Every dollar that goes to class counsel depletes the funds available to compensate class members. See *Baksinski v. Northwestern University*, 231 Ill. App. 3d 7, 15, 172 Ill.Dec. 436, 595 N.E.2d 1106 (1992) ("once an attorney files a petition for compensation from the [class action settlement] fund, his role changes from that of a fiduciary for his clients to that of **\*\*386 \*395** a claimant against the fund which was created for the benefit of [his] client[ ]"); see also *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010); *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (reversing district court's approval of settlement and criticizing court for failing to carefully scrutinize the settlement's terms to ensure class counsel was acting as "honest fiduciaries"). As the settlement fund is non-reversionary, Gannett had no interest in opposing Edelson PC's request for fees and given our conclusion that Stewart's objection was motivated solely by his lawyers' desire to extract a payment from class counsel and not to improve the terms of the settlement for the class, without the trial judge's oversight, absent class members had no one looking out for their interests. See *Baksinski*, 231 Ill. App. 3d at 13, 172 Ill.Dec. 436, 595 N.E.2d 1106 (courts must act with " 'moderation and a jealous regard' " for the rights of absent class members) (quoting *Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881) ). And as far as the record shows, the trial court simply accepted class counsel's representation that a 39% fee was appropriate.

¶ 97 I sincerely doubt that a lodestar calculation would have yielded a number that, enhanced by a reasonable multiplier, would remotely approach $5.38 million. And we have nothing upon which to base a conclusion that this case presented particularly risky litigation warranting a significantly higher fee than the traditional 20 to 30% fees commonly awarded in TCPA cases. See *In re Capital One Telephone Consumer Protection Act Litigation*, 80 F.Supp.3d 781, 798-99 (N.D. Ill. 2015) (conducting TCPA class action settlement analysis of 72 settlements approved since 2010 and finding median fees to be between 17.7 to 33.3% of the settlement); see also *Wilkins v. HSBC Bank Nevada, NA*, No. 14 C 190, 2015 WL 890566, at \*11 (N.D. Ill. Feb. 27, 2015) (awarding fees of 23.75% in "average TCPA class action"); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at \*3, \*8-10 (N.D. Cal. Apr. 15, 2015) (using lodestar method to award fees which amounted to 13.5% of settlement fund); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031, at \*17 (S.D. Ohio Feb. 7, 2014) (reducing fee award in TCPA class action from one-third of the settlement fund to 15% of the fund).

¶ 98 The trial court's uncritical acceptance of an award of 39% of the settlement fund to class counsel in a case in which the court had no prior involvement encourages the skepticism, cynicism, and distrust of our judicial system so prevalent in society today. I strongly encourage trial judges in future cases to fulfill their critical role as the guardians of the interests of absent class members, to carefully analyze unopposed fee requests that diminish funds available to compensate class members, and to insist that a reviewable record be made of any hearing, including the court's reasons for granting counsel's fee request.

**All Citations**

2018 IL App (1st) 172041, 122 N.E.3d 376, 428 Ill.Dec. 367

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 6

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

2019 WL 272812
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

EDELSON PC, Plaintiff,

v.

The BANDAS LAW FIRM PC, et al., Defendants.

Case No. 1:16-cv-11057
|
Signed 01/17/2019

**Attorneys and Law Firms**

Eve-Lynn J. Rapp, Ryan D. Andrews, Edelson P.C., Alexander Glenn Tievsky, Benjamin Harris Richman, Edelson PC, Chicago, IL, Rafey S. Balabanian, Edelson PC, San Francisco, CA, for Plaintiff.

Darren Van Puymbrouck, Falkenberg Ives LLP, Alexander S. Vesselinovitch, Matthew Thomas Connelly, Freeborn & Peters, LLP, Joseph R. Marconi, Brian C. Langs, Victor J. Pioli, Johnson & Bell, Ltd., Chris C. Gair, Kristi Lynn Nelson, Thomas Reynolds Heisler, Gair Eberhard Nelson Dedinas Ltd., Alexander Holmes Burke, Daniel J. Marovitch, Burke Law Offices, LLC, Chicago, IL, Robert Patrick Cummins, Norman, Hanson & DeTroy LLC, Portland, ME, for Defendants.

**FINAL JUDGMENT ORDER**

REBECCA R. PALLMEYER, United States District Judge

**\*1** IT IS HEREBY ADJUDGED and DECREED that final judgment is entered in this matter on Count V of Plaintiff Edelson PC's complaint in favor of Plaintiff and against Christopher Bandas and the Bandas Law Firm PC ("Defendants").

**I. REASONS FOR ISSUANCE OF INJUNCTION**
Defendants do not dispute that that they engaged in the unauthorized practice of law in *Clark v. Gannett Co., Inc.* Defendants further do not dispute that they engaged in the following conduct without obtaining authorization from the Illinois Supreme Court to practice law in Illinois: agreeing to represent Gary Stewart in the *Gannett* litigation, drafting the objection of Stewart in *Gannett*, providing legal advice

to Stewart related to *Gannett*, contacting and arranging for C. Jeffrey Thut to appear in Defendants' stead in *Gannett*, allowing C. Jeffrey Thut to assist Defendants in the unauthorized practice of law, representing Stewart in discussions with class counsel regarding Stewart's objection, entering into negotiations with class counsel in *Gannett* on behalf of Stewart, and agreeing to resolve Stewart's objection in exchange for $225,000 in attorneys' fees with no changes to the settlement agreement. Accordingly, the Court finds that issuance of a permanent injunction against Defendants is appropriate.

**II. ACTS RESTRAINED OR REQUIRED**
Defendants The Bandas Law Firm, P.C. and Christopher A. Bandas are hereby restrained and permanently enjoined from engaging in the following actions:

1. Providing any advice or other service requiring the use of any degree of legal skill or knowledge related to any state or federal court proceedings in the State of Illinois, regardless of whether Defendants or their clients are physically located within the State of Illinois, without obtaining admission to the bar of Illinois or leave to appear *pro hac vice* from the court before which the proceeding is pending. The restrained advice and services include but are not limited to providing legal advice, acting as general counsel, drafting documents, negotiating, or accepting payment of attorneys' fees.

2. Soliciting attorneys located in the State of Illinois to sign pleadings or other documents drafted by Defendants in a case where Defendants do not appear;

3. Paying, or offering to pay, or to loan any client any monies in connection with any class action objection unless such payment is awarded or expressly approved by a court;

4. Seeking admission, *pro hac vice* or otherwise, to practice in any state or federal court without fully and truthfully responding to all questions on the application and without attaching a copy of this judgment;

5. Defendants shall not file or cause to be filed any objection to any proposed class action settlement in any state or federal court unless:

   a. Such objection states whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also states with specificity the grounds for the objection; and

b. Any payment in connection with the objection is disclosed and approved by the court and, unless approved by the court after a hearing, no payment or other consideration is provided in connection with forgoing or withdrawing the objection or forgoing dismissing, or abandoning an appeal from a judgment approving the proposal;

**\*2**  6. Defendants, having consulted with their clients, shall immediately and unconditionally withdraw objections and filings related thereto any and all objections now pending in Illinois state and federal courts, including *Clark v. Gannett Co., Inc.* Defendants shall have no further direct or indirect involvement in those matters, and Defendants shall accept no compensation of any kind related to those matters.

## III. CONTINUING JURISDICTION

Without affecting the finality of this judgment, the Court retains jurisdiction to enforce the injunction set forth herein.

## IV. COSTS

Defendants shall pay Plaintiff's costs in the amount of $5,447.65.

## V. NO JUST REASON FOR DELAY

The Court finds pursuant to Rule 54(b) that is no just reason for delay of entry of this judgment.

## IT IS SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 272812

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 7

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THE SHANE GROUP, INC., et al.,

      Plaintiffs,

                                    Case No. 10-CV-14360

v.                                 (Class Action Matter)

                                    HON. DENISE PAGE HOOD

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

      Defendant.

_____/

### OPINION AND ORDER REGARDING FAIRNESS HEARING, GRANTING MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PAYMENT OF INCENTIVE AWARDS, DENYING MOTIONS TO INTERVENE, GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN ALLOCATION, DENYING MOTION TO STRIKE SUR-REPLY, AND DENYING MOTIONS FOR SANCTIONS

## I.    BACKGROUND

On June 22, 2012, a Consolidated Class Action Amended Complaint was filed

against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging:

Unlawful Agreement in Violation of § 1 of the Sherman Act under the Rule of Reason

(Count I); Unlawful Agreements in Violation of Section 2 of the Michigan Antitrust

Reform Act, M.C.L. § 445.772 (Count II). (Doc. No. 78) The class action seeks to recover overcharges paid by purchasers of Hospital Healthcare Services directly to hospitals in Michigan. These overcharges resulted from the anticompetitive acts of Blue Cross. (Am. Comp., ¶ 1) Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Detroit, Michigan. (Am. Comp., ¶ 18) Blue Cross provides, directly and through its subsidiaries, health insurance and administrative services, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO") health insurance products. (Am. Comp., ¶ 18)

A Discovery Plan was jointly submitted by the parties on August 3, 2012. (Doc. No. 82) Several Scheduling Orders were thereafter entered by the Court and discovery was conducted by the parties. Various motions were filed by the parties as well. After the parties informed the Court the parties had resolved the issues before the Court and after a hearing was held on the matter, the Court entered an Order Granting Preliminary Approval to Proposed Class Settlement on June 26, 2014. (Doc. No. 151) The Court set a date for the Fairness Hearing on November 12, 2014, 2:00 p.m. Objections were ordered to be filed no later than 90 days from the Preliminary Approval Order. The Court approved Epiq Class Action & Mass Tort Solutions, Inc. to administer the Settlement Agreement under the supervision of Class Counsel.

Eagle Bank, a Maryland State Chartered Bank, was approved by the Court to maintain the Escrow Account in which the Settlement Fund shall be held and to disburse the funds after the Court's approval. To be excluded from the Settlement Class, a Class Member was required to request in writing postmarked no later than 90 days after the Preliminary Approval. If the request for exclusion from any class member was not timely filed, this would result in the Class Member being deemed included in the Settlement Class. The Claim Form was to be completed and sent to the Settlement Administrator by first-class mail, post-marked no later than November 16, 2014.

The Preliminary Order provided that Class Counsel serve an application for attorneys' fees, reimbursement of expenses and incentive awards no later than 30 days after entry of the Preliminary Approval Order, which was filed on July 24, 2014. (Doc. No. 155) Blue Cross filed with the Court a certificate stating compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, on July 1, 2014. (Doc. No. 152) Class Counsel were required to serve, no later than 75 days after entry of the Preliminary Approval Order, a Notice regarding dissemination of the Notice Plan, which was filed on October 2, 2014. (Doc. No. 162)

Timely objections to (90 days from the June 26, 2014 Preliminary Approval Order) or letters regarding the proposed class action settlement were filed by: John Kunitzer (Doc. No. 158, filed September 19, 2014); Christopher Andrews (Doc. No.

159, filed September 24, 2014); Scott Mancinelli (Doc. No. 160, filed September 24, 2014) and, ADAC Automotive and Others (Doc. No. 161, filed September 24, 2014). Untimely letters regarding the proposed class action settlement were filed by Darrell Thompson (Doc. No. 165, October 20, 2014) and Marguerite M. Schubert (Doc. No. 176, October 31, 2014).

This matter is now before the Court to determine whether the proposed class action settlement is fair. If the Court so finds, Plaintiffs seek final approval of the settlement and plan allocation. Also before the Court is Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives, Certain Movants' Motion to Unseal Certain Records and to Adjourn the Fairness Hearing. A hearing was held on the various motions on November 12, 2014. The motions are each addressed below.

## II.    MOTIONS TO INTERVENE

### A.    Background

Twenty-Six Class Members, represented by the Varnum law firm, seek to intervene for the limited purpose of unsealing records and adjourning the fairness hearing. (Doc. No. 166) Specifically, they seek to unseal the following four documents which were filed sealed: Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class (Doc. No. 127); the Motion for Class Certification

4

and Appointment of Class Counsel and Response thereto (Doc. Nos. 133, 139); and the Motion to Exclude Expert Testimony of Dr. Jeffrey Leitzinger (Doc. No. 140). The Twenty-Six Class Members seek to access the Sealed Documents to gather information that will help them assess the likelihood of success of the case, assess their potential damages recovery, and gather information relevant to their assessment of the proposed settlement and their objections to the proposed settlement. They claim that they are entitled to intervene as of right, or in the alternative, with permission of the Court, and that this motion is timely.

Blue Cross and Plaintiffs oppose the motion asserting that the motion to intervene is untimely and that the Twenty-Six Class Members have not shown they are entitled or require to review the sealed documents to evaluate whether the proposed settlement is fair. Certain Third-Party Hospitals and other organizations seek to intervene in order to respond in opposition to the Twenty-Six Class Members' Motion to Unseal certain records. (Doc. Nos. 183, 184, 185, 186, 189, 192) The Third-Party Hospitals and other organizations produced highly sensitive information during the discovery phase and oppose any records unsealed.

## B. Intervention as of Rights, Fed. R. Civ. P. 24(a)

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure which allows a party to intervene who "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that
disposition of the action may as a practical matter impair or impede the movant's
ability to protect its interest, unless existing parties adequately represent that interest."
Fed. R. Civ. P. 24(a)(2). An applicant must show: 1) the application was timely filed;
2) the applicant possesses a substantial legal interest in the case; 3) the applicant's
ability to protect its interest will be impaired without intervention; and 4) the existing
parties will not adequately represent the applicant's interest. *Blount-Hill v. Zelman*,
636 F.3d 278, 283 (6th Cir. 2011). Each of these elements is mandatory, and therefore
failure to satisfy any one of the elements will defeat intervention under the Rule. *Id.*
The court must consider timeliness in the first instance. *Id.* at 284 (The "court where
the action is pending must *first* be satisfied as to timeliness" under Rule 24.) (quoting
*NAACP v. New York*, 413 U.S. 345, 365 (1973)).

In determining timeliness, five factors must be considered: 1) the point to which
the suit has progressed; 2) the purpose for which intervention is sought; 3) the length
of time the proposed intervenors knew or should have known of their interest in the
case; 4) the prejudice to the original parties due to the proposed intervenors' failure
to promptly intervene after they knew or reasonably should have known of their
interest in the case; and 5) the existence of unusual circumstances militating against
or in favor of intervention. *Blount-Hill*, 636 F.3d at 284 (quoting *Jansen v.*

6

*Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990)).

Applying the first factor–the point to which the suit has progressed–the instant action was filed on October 29, 2010, four years ago. The related case filed by the United States against Blue Cross was filed on October 18, 2010 and jointly dismissed on March 28, 2013. The Twenty-Six Class Action Members filed the instant motion on October 20, 2014. Over the four years this case and other related cases were before the Court, the cases have been vigorously litigated and extensive discovery have been conducted. In this class action lawsuit, motions to dismiss and other motions were filed. During the litigation, the parties in this case entered into settlement negotiations. On June 23, 2014, the parties filed a Motion for Order for Preliminary Approval of Settlement. The parties held a hearing on the matter, granting the motion in a June 26, 2014 Order. (Doc. No. 151) When the Twenty-Six Class action Members filed the instant Motion to Intervene in October 2014, the suit had progressed to resolution, only awaiting a hearing on the fairness of the settlement and the motion for final approval of the settlement scheduled on November 12, 2014, about three weeks from when the Motion to Intervene was filed. Notices have been filed to class action members and the Twenty-Six Class Action Members themselves had filed their Objections to the settlement. This factor does not weigh in favor of the Twenty-Six Class Action Members since the motion was filed four years after the

7

instant case was filed and when a resolution between the parties has been reached.

The second factor–the purpose of the intervention–is to review motions and documents filed under seal in this case. The Twenty-Six Class action Members claim they require these documents in order to value their claims and to determine whether the settlement is fair. While objectors are entitled to meaningful participation in the settlement process, they are not automatically entitled to discovery or to question and debate every provision of the proposed settlement. *In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1084 (6th Cir. 1984); *Bailey v. White,* 320 F. App'x 364, 366 (6th Cir. 2009). These objectors should have knowledge of their own interests, as opposed to the interest of others and so evaluating their interests need not require the review of documents submitted by others to the Court and amongst the parties of the instant suit. The Sixth Circuit has noted that the purpose for intervening in order to investigate and evaluate the proposed settlement, was satisfied by the opportunity to participate in the fairness hearing. *Bailey*, 320 F. App'x at 366. This factor does not weigh in favor of the Twenty-Six Class Action Members since the Sixth Circuit has held that the members are not entitled automatically to discovery because they are able to participate in the fairness hearing.

As to the third factor, the length of time the proposed intervenors knew of their interest in the case, the Court finds they should have known of their interest when the

8

United States filed its lawsuit against Blue Cross back in 2010, and when the instant suit and the related suits were filed in this District in 2010 and 2011. The related lawsuits were well-publicized at that time and since the filing of the suits in the general media and the insurance and medical communities. This Court notes that many of the moving parties have lawsuits in this District against Blue Cross regarding its handling of their insurance contracts on other issues. The length of time the proposed intervenors should have known their interest in the case factor does not weigh in their favor.

Regarding the fourth factor–the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case–also weighs against the Twenty-Six Class Action Members. As addressed in the third factor above, the proposed intervenors should have known of their interests back in 2010. Their failure to promptly intervene back then and only after the parties in the instant suit have reached a resolution, clearly prejudices those parties. The parties have conducted extensive discovery and have vigorously litigated this case. The proposed intervenors now seek documents which are filed under seal but contain sensitive information regarding the parties' interests and private information regarding the parties' insurance and medical information. In addition, many hospitals participated in this litigation and medical

9

information regarding patients may be contained in these documents. This factor weighs against the Twenty-Six Class Action Members and heavily weighs in favor of the original parties who have vigorously litigated this action.

The fifth factor–the existence of unusual circumstances militating against or in favor of intervention–the proposed intervenors, other than noting there are no unusual circumstances militating against intervention, do not identify any unusual circumstances why the Court should allow intervention. The settling parties argue there are unusual circumstances militate against intervention. They claim that the Settlement involves millions of Settlement Class Members, many of which are large and sophisticated entities. This factor weighs against the Twenty-Six Class Action Members since there are unusual circumstances where millions of class members are involved and where documents the proposed intervenors seek to review may contain highly sensitive business, personal, medical and insurance information which may not be present in other class action lawsuits.

Weighing the factors required for the Court to determine whether the Motion to Intervene is timely, the Court finds that the various motions to intervene were not timely filed. Having considered the timeliness issue in the first instance and since this element is mandatory, the Motion to Intervene, even for the limited purpose of unsealing and reviewing documents filed by the parties, is denied. *Blount-Hill,* 636

10

F.3d at 283.

### C.     Permissive Intervention, Fed. R. Civ. P. 24(b)

Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  The Sixth Circuit in *Blount-Hill* held that because the proposed intervenors' motion was untimely in its analysis under mandatory intervention, the motion for permissive intervention was also untimely. *Id.* at 287.  For the same reasons above, since the motion for mandatory intervention is untimely, the motion under the permissive intervention rule is also untimely.  As in *Bailey*, the Twenty-Six Class Action Members have participated in this case by filing their Objections to the class action settlement.  They have a voice as objectors in this case.  The Motion to Intervene under the permissive intervention rule is denied.

Since the Motions to Intervene are denied, there is no basis to adjourn the Fairness Hearing.  The request to adjourn the Fairness Hearing is denied.

## III.   FAIRNESS OF SETTLEMENT

### A.     Rule 23

Rule 23 of the Rules of Civil Procedure governs the Court's determination of whether the settlement is fair.  Pursuant to Fed. R. Civ. P. 23(e)(2), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise: If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." The factors to be determined at the fairness hearing are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (2007).

### B.    Objections Filed

#### 1.    Pro Se Letters/Objections

##### a.    John Kunitzer

John Kunitzer filed a timely Objection on September 15, 2014. (#158) Kunitzer asserts that during the time period at issue, he has had four major surgeries, but has been unable to obtain copies of his bills and therefore cannot support his claim. He states that this is another case where the lawyers involved will reap the substantial benefits instead of those that actually suffered the loss.

##### b.    Christopher Andrews

Christopher Andrews also filed timely Objections on September 24, 2014.

12

(Doc. No. 159) He also filed supplemental documents to support his Objections, to seek sanctions and to respond to other motions. (Doc. Nos. 163, 172, 179, 202, 204, 205, 207, 209, 210) Andrews asserts that he is a non-attorney and is also acting as a representative under a Power of Attorney for Cathy Waltz as executor of the estate of Eileen Greenia and Emily Byrne, and for Ron Waltz and Michael Andrews. (Doc. Nos. 193, 195) Andrews lists several issues including: the $30 million amount for damages is too low; incentive awards are too high; postcard and long notices are flawed and defective; claim forms are flawed; claim packets are defective; hourly rates are too high as are the number of hours claimed for attorneys' fees; $3.5 million in expenses is too high; and, Blue Cross should have paid for the notice. Andrews presented his arguments at the hearing.

### c.    Scott Mancinelli

Scott Mancinelli filed a timely Objection on September 24, 2014. (Doc. No. 160) He asserts he directly purchased healthcare services form Michigan General Acute Care Hospitals for himself and for his minor children between January 2006 and June 2014 in the form of co-pay, co-insurance and insurance deductibles. Mancinelli argues the settlement is not reasonable, fair or adequate. He claims the settlement fails to address Blue Cross' "Most Favored Nation" contracts with the hospitals, which was the primary issue in the case. He argues the MFN issue is not

addressed in the settlement because there is no declaratory or injunctive relief prohibiting unfair trade practices in the future. The release in the settlement addressing the MFN issue applies to almost every consumer of acute care hospital services in Michigan. Mancinelli claims that in exchange for the paltry $15 to $40, consumers are "dooming" themselves to a "rigged" hospital pricing system that perpetuates a "quasi-monopoly" for Blue Cross, which is not the best interest of the settlement class, the citizens of Michigan, or other insurance carriers. Mancinelli argues that the *cy pres* recipients and the present *cy pres* distribution is a carve out of funds from the overall settlement and is not necessitated by or the result of the economic unavailability of a distribution to class members. He claims that the *cy pres* distribution is a direct result of a cap placed on distributions to class members and that the cap should be removed. As to notice, Mancinelli asserts he received no direct notice of the class action or its settlement, but that his eight-year old daughter received a post card notice. He agrees with Kunitzer's objection that the claim forms require a claimant to put the date of service, the amount paid and hospital provider, which very few class members are unable to obtain back to 2006.

### d. Darrell Thompson

Darrell Thompson filed untimely letters regarding the settlement, the first filed October 15, 2014 (Doc. No. 165), and two others received by the Court on November

14

7 and 11, 2014. Thompson's letter dated October 13, 2014 states that he was a patient
at Michigan hospitals from January 1, 2006 to June 23, 2014. He emailed the
settlement administrator on September 17, 2014 asking how to determine if he is part
of the settlement. The settlement administrator responded on September 19, 2014
indicating it was investigating the issue and then responded on September 24, 2014
directing Thompson to contact Class Counsel. Thompson then emailed Class Counsel
the evening of September 24th. He received a telephone call the following week
indicating he could file for the class action settlement, but by then, the time to file
objections had passed. Thompson presented his arguments at the hearing.

### e.    Marguerite Schubert/Dale J. Schubert

Marguerite Schubert filed an untimely letter to the Court on October 30, 2014
submitted by her son, Dale J. Schubert. (Doc. No. 176) Her son indicates he had been
attempting to complete the claim form, but has been unable to obtain information from
certain insurance companies. He states that he has called the claims administrator, but
has not been able to obtain assistance with his questions. He asked to speak to one of
the staff attorneys handling the matter, but has not received a response to the request.
He seeks an adjournment of the filing deadline until all the issues have been
addressed.

The Named-Plaintiffs submitted a supplemental brief indicating that they

15

investigated Mr. Schubert's inquiries to Epiq. Charles Marr, Epiq's Project Manager, submitted a declaration indicating he called Mr. Schubert regarding his letter to the Court and further explained to him the details of the Plan of Allocation. Mr. Marr indicated that by the end of the call, Mr. Schubert stated he had the necessary information to file a claim, which was received by Epiq timely.

### 2. ADAC Automotive and Others (Represented by Varnum)

Twenty-Six self-insured Objectors, made up of over 5,000 health plan participants filed a timely joint objection asserting: 1) the proposed settlement fund is woefully inadequate; 2) the proposed settlement gives preferential treatment to the named plaintiffs; 3) the proposed settlement gives preferential treatment to class counsel; and, 4) the claims process is unnecessarily burdensome. (#161, 9/24/14) They argue that under the "preferential treatment" standard, although not included in the seven UAW factors in evaluating the fairness of a settlement, the Sixth Circuit also looked to whether the settlement gives preferential treatment to the named plaintiffs and class counsel, citing *Greenberg v. Procter & Gamble Co.* (*In re Dry Max Pampers Litig.*), 724 F.3d 713, 719 (6th Cir. 2013) and *Vasalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013). The Objectors' arguments are addressed in the analysis below.

### C. Factors

### 1.    Substantial Risk of Fraud or Collusion

The Twenty-Six Objectors argue that class members over the eight-and-a-half-year period covered under the proposed settlement spent over $86 billion in Michigan hospitals. They claim that only 1 percent of the class member payments will be refunded under the settlement plan and for a small number of specific hospitals, class members will be refunded 3.5 percent of their payments to those particular hospitals. The Twenty-Six Objectors claim that "simple math" dictates that in order to refund class members 1 percent of their hospital expenditures, the settlement fund should be at least $850 million, based on the $85 billion figure. They argue that the proposed settlement of a gross amount of $29,990,000 is "woefully inadequate." The nearly $30 million gross settlement amount is allocated as follows: 1) $3.5 million to reimburse class counsel for expenses; 2) up to $10 million attorneys' fees for class counsel; 3) over $200,000 in potential incentive awards to the named-Plaintiffs; and, 4) expenses incurred in administering the proposed settlement, pre-authorized up to $1 million. The Twenty-Six Objectors claim that closer to $15 million would then be available to reimburse class members, which they argue is "wholly inadequate" to reimburse the class members. The 1 percent refund set forth in the proposed settlement they argue is completely misleading and illusory. The proposed net settlement amount represents 0.000176 percent of the hospital expenditures by the

class members during the class period or $1 for every $5,681 spent by class members. If Plaintiffs are successful at trial, they claim that the case is a "billion-dollar" case. The Twenty-Six Objectors also argue that Blue Cross, despite being a non-profit corporation, holds massive reserves at almost $12.8 billion at the end of 2013, including $696 million in cash. They claim that any judgment against Blue Cross could be collected.

The Twenty-Six Objectors claim that this "grossly inadequate" amount suggests a "serious risk of fraud and collusion" between the Named-Class Plaintiffs and Blue Cross. The proposed four organization Named-Plaintiffs are entitled to an incentive payment of up to $50,000 and the four individual Named-Plaintiffs are entitled to $10,000 incentive payment. With the net settlement fund of $15 million, they argue that it this was solely distributed to individual class members (and not to insurers or self-insured entities), each class member would receive an average recovery of $3.00.

The Twenty-Six Objectors argue that the excessive attorneys' fees award of up to $10 million to Plaintiffs' counsel is unreasonable and points to a substantial risk of fraud and collusion. They claim that the substantial amount to be paid to class counsel, when compared to the "meager" net amount to be paid to class members, creates a substantial conflict of interest between class counsel and class members that raises a serious risk of fraud and collusion.

They next argue that the burdensomeness of the claims process will be a substantial deterrent to claims being filed and further suggests possible fraud or collusion. The claim form requires insurers and self-insured plans to itemize in a claims table: 1) the amount of healthcare services paid for; on 2) each date of service over the class period; for 3) each of approximately 130 hospitals in Michigan. They argue that the claims tables from insurers and self-insured are likely to be thousands of pages long. The individuals are also required to itemize their claim by amount, date and hospital during the class period. The requirement that insurers and self-insureds submit copies of supporting bills would result in submission of perhaps millions of pages of supporting documents. They claim that individuals are not required to submit supporting documents. The Twenty-Six Objectors argue that the insurers and self-insured plans should be treated the same way as individuals and not require supporting documents, unless the claim is suspect. The claimants are required to certify under penalty of perjury that their claim form is true and accurate, which should be sufficient to minimize the risk of false or inflated claims submitted. They also claim that millions of class members are either directly insured by Blue Cross or are self-insured plans administered by Blue Cross, which means that Blue Cross has superior access to the hospital payment information concerning its insureds and the self-insured plans it manages. The Twenty-Six Objectors claim that the claims

19

process can only be seen as a "cynical" attempt to discourage most class members from submitting claims in order to justify the extremely low settlement fund amount.

The Named-Class Plaintiffs respond that the Settlement creates a common fund of approximately $30,000,000, which they claim is an excellent recovery for the class since it recovers more than 25 percent of the $118 million damages estimated. They argue that this amount of recovery and much less, have been approved in countless antitrust class actions. *See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* No. 03-cv-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005)(11.4% of damages); *In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 WL 1221350, at *4 (E.D. Pa. June 2, 2004)(collecting cases approving anywhere from 5.35% to 28% of damages). Named-Class Plaintiffs assert that this settlement was reached after three and a half years of hard-fought litigation, production of millions of pages of documents, depositions of 169 witnesses, analysis of many terabytes of data, expert reports submitted by the parities, and, briefing of several motions. They claim there are no indicia of unfairness to class members and that Class Counsel's request for attorneys' fees and expenses is authorized by abundant case law.

The Named-Class Plaintiffs assert that the history of this litigation is hard-fought with extensive negotiations between the parties. They claim the Court had ample opportunity to observe the intensely adversarial nature of this litigation during

the past few years.  They note that Blue Cross fought the class action at every turn, and Class Counsel fought back vigorously.  The Named-Class Plaintiffs submitted declarations detailing the drawn-out settlement negotiations which demonstrate the arm's-length, adversarial nature of the parties' relations.

The Named-Class Plaintiffs assert that the Settlement Agreement itself refutes the idea that there was fraud or collusion.  The Settlement Agreement provides that all awards are placed in the sole discretion of the district court.  They claim that Class Counsel's interests are fully aligned with the Settlement Class' interest, therefore, there was no self-dealing or fraud or collusion in the settlement negotiations.  The Named-Plaintiffs claim that Class Counsel include highly competent antitrust class action experts, whose records of zealous and successful representation belies any claim that they would "sell out their clients for a quick deal."  (Doc. No. 169, Pg ID 5328)  Class Counsel invested $3.5 million of their own money and over $15 million of their time, despite facing substantial risks and a formidable opponent.

Applying the first factor, the Court finds there is no indication of fraud or collusion in this case.  It is "presumed that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands" absent "evidence of improper incentives."  *UAW,* 497 F.3d at 628.  Each party vigorously advanced and defended their arguments and positions before the

21

Court.  There were initially three cases filed relating to the instant Settlement which were later consolidated by the Court after the parties' agreed to do so.  (Doc. No. 65) Various motions were filed by the parties, including a Motion to Dismiss filed by Blue Cross, which was denied by the Court.  (Doc. No. 102) The parties engaged in extensive motion practice and discovery relating to the class certification issue and expert-related issues.  It was only after these motions were filed that the Court was informed that the parties resolved the matter after extensive negotiations.  Each time a status conference or a hearing was held before the Court, there were numerous attorneys in attendance representing each party.  The duration and complexity of the litigation and the number of parties involved undermines the Objectors' claims that fraud or collusion resulted in the Settlement Agreement.  The Court did not observe any signs that the parties were engaged in pretense and posturing during the years in litigation before the Court to mask collusion in reaching a Settlement Agreement with Blue Cross.  It is this Court's observation as to cases before this Court involving the antitrust cases filed against Blue Cross that Blue Cross defends these cases most vigorously.  Class Counsel in these consolidated cases also vigorously argued each of their positions before the Court.  All the Objectors have failed to show that the Named-Plaintiffs and Class Counsel engaged in acts of fraud or collusion in negotiating the Settlement Agreement before the Court.

## 2. Complexity, Expense, and Likely Duration of Litigation

The Twenty-Six Objectors argue that the bulk of the work necessary to prepare the case for trial has been done. They claim that although antitrust litigation is complex, expensive and takes time, those are largely "sunk costs" at this point. They also claim that if Plaintiffs prevail at trial, they are entitled to treble damages and recovery of attorneys' fees and costs, which means there is substantially less risk to the Plaintiffs in continuing to litigate rather than settle. The Twenty-Six Objectors claim it is Blue Cross who bears far greater litigation risk because of the treble damages and attorneys' fees and costs recovery it faces.

The Named-Plaintiffs respond that they have yet to complete the class certification litigation, there is expert discovery to be conducted, and summary judgment motions have not been filed. The antitrust claims at issue involving MFNs are difficult and complicated. Class Counsel have put millions of dollars in this case already, but more litigation is required to move the case forward. Appeals would follow, however the case is resolved by trial. Given the sizable hurdles in front of the Plaintiffs, any recovery outside of this Settlement would likely take years to recover and would highly be uncertain.

As to the second factor in this case, the Court finds that the antitrust MFN issues raised by the Plaintiffs are complex, very expensive to litigate and the litigation

23

would continue for years, including any appeals. The MFN issue is not a common issue involving antitrust cases in the healthcare arena. The Named-Plaintiffs have submitted the expenses and fees they have expended related to the consolidated cases. The litigation, contrary to the Objectors' arguments, is far from complete. The parties have yet to complete class certification motions, expert discovery, and any dispositive motion practice, even though the parties have engaged in extensive fact discovery to date. The complexity, expense and likely duration factor weighs in favor of class settlement.

### 3.    Amount of Discovery

The Twenty-Six Objectors indicate that Plaintiffs engaged in a very significant amount of discovery in this case, but because the documents have been filed under seal, it is impossible to assess the extent to which discovery has confirmed the allegations in the Complaint, enhanced or developed additional information to support the allegations in the Complaint or identified weaknesses in the allegations which might motivate settlement.

The Named-Plaintiffs agree that they have engaged in discovery of millions of pages of documents, multiple terabytes of data, 169 depositions and preparation of competing expert reports. They argue that based on all of this discovery taken, the Named-Plaintiffs and Blue Cross are well-aware of the strengths and weaknesses of

the case. They argue that based on the significant discovery taken, this factor weighs heavily in favor of approval of the settlement.

There is no dispute that extensive discovery has been taken in this case, and the Objectors so concede. In light of this extensive discovery, the Court finds that the Named-Plaintiffs and Blue Cross have been able to evaluate the propriety and fair value of the settlement. The amount of discovery taken and considered by the parties in this case weighs in favor of approving the settlement.

### 4. Likelihood of Success on the Merits

The Twenty-Six Objectors argue that they are unable to determine the likelihood of success on the merits since the documents are sealed in this matter. They claim the information that is publicly available strongly suggests Plaintiffs have a substantial likelihood of success since the Department of Justice brought a federal complaint against Blue Cross. In addition, the Michigan legislature banned the MFN Agreements by legislation passed in March 2013. They also claim that the Court has not granted a dispositive motion in favor of Blue Cross in this suit or the related Aetna lawsuit or the original Department of Justice lawsuit. The Objectors argue that it is obvious that the proposed settlement is grossly unreasonable, which means class members have nothing to lose, and everything to gain, by going forward with trial.

The Named-Plaintiffs argue that in this case, an expert has analyzed the

damages in this case, which was labor-intensive. The analysis could reliably and manageably be measured for purchasers covered by 23 provider agreements, out of hundreds of provider agreements with MFN hospitals at 13 hospitals, out of 70 MFN hospitals. According to the Named-Plaintiffs, this analysis projects damages that is far less than the multi-billion dollar case argued by the Objectors. They argue that the many risks of continued litigation cast significant doubt on whether class members would receive any recovery. The Named-Plaintiffs further argue that even though the United States and the State of Michigan obtained success, they did not have to obtain class certification or prove that the class members paid an overcharge for hospitals services, or measure the amount of the overcharge. While the Named-Plaintiffs argue they would have succeeded at trial in this case, given the complex economic issues, a jury may not credit Plaintiffs' evidence or a jury may award less than the damages that would be sought at trial. The Named-Plaintiffs claim they face significant risk that class members would receive nothing without a settlement, therefore the recovery of nearly $30 million reflects a substantial victory for Settlement Class members.

The main question in approving a class settlement is whether the settlement is fair in light of "plaintiff's likelihood of success on the merits." *UAW*, 497 F.3d at 631. As noted above, extensive discovery has been held in this case. The Court has denied Blue Cross' initial Motion to Dismiss, finding at that point in the litigation that

Plaintiffs had stated a claim against Blue Cross. However, in light of Plaintiffs'
expert's analysis as to damages, the Court finds that the settlement amount reached
by the parties is fair in light of any success the Plaintiffs may obtain on the merits of
the case. As noted above, although significant discovery has been performed in this
case, the litigation is far from over. The Named-Plaintiffs face significant risk that the
class members could receive nothing or some negligible amount in damages at trial
or on appeal. The Court finds that the likelihood of success on the merits weighs in
favor of approving the settlement.

### 5.    Opinions of Class Counsel and Class Representatives

The Twenty-Six Objectors argue that in circumstances where class counsel and
class representatives receive preferential treatment under the terms of the settlement,
the Court should not give any weight to their opinions. They claim Class Counsel and
the Class Representatives have a conflict of interest due to their heavy financial
incentive to push for the proposed settlement.

The Named-Plaintiffs and their counsel argue that as noted previously, counsel
include leaders in complex class action litigation, particularly in the field of antitrust.
They have considered voluminous discovery, expert analysis and engaged in motion
practice before reaching the settlement. The Named-Plaintiffs claim they have
participated in the case for years and they include all segments of the Settlement

Class, including individual purchasers, institutional payors, purchasers in each of the Categories 1, 2 and 3.

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006). Courts should defer to the judgment of experienced counsel who have evaluated the strength of the proofs. *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983).

Class Counsel and the Named-Plaintiffs in this action all support the settlement in this case. Deference is given to their opinions because they have had the opportunity to review discovery and an opinion by an expert in the evaluation of the case. Although the Objectors argue that Class Counsel and the Class Representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement, the Court must weigh this factor significantly in their favor. The Objectors have not overcome this burden in light of the discovery taken in this case and the expert analysis reviewed by Class Counsel and Named-Plaintiffs.

### 6.    Reaction of Absent Class Members

The Twenty-Six Objectors argue that Aetna's parallel lawsuit against Blue Cross provides significant evidence of the inadequacy of the proposed settlement. Aetna alleges it suffered over $600 million in damages, and with the trebled damages,

Aetna claims damages over $2 billion.  The Twenty-Six Objectors argue that the
aggregate damages in this class action exceed the individual damages sought by
Aetna.

The Named-Plaintiffs argue that as to Aetna's estimate of damages, such
estimate is based on lost profits for Aetna's sales in the market for commercial group
health insurance and diminution of business value, not overcharges for purchases of
hospital services attributable to Blue Cross' conduct.  In this case, Named-Plaintiffs
only sought *overcharges* in the sale of hospital services, *not total payments* for
hospital services paid by class members.

The Named-Plaintiffs and Counsel assert that more than 26,000 class members
had filed claims as of October 17, 2014, including the largest purchasers of hospital
services in Michigan.  They claim that only 1,518 potential class members opted out,
0.02% of the class and 0.05% of those directly notified.  Out of this number, 179
requests were filed by Aetna entities, who have filed a separate lawsuit in this District.
They cite cases where courts approved class action settlements with a far higher opt
rate such as 0.55% in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)
and 0.4% in *Garner v. State Farm Mut. Auto. Ins.*, No. 08-cv-1365, 2010 WL
1687832, at *15 (N.D. Cal. Apr. 22, 2010).  They also argue that there were only four
objections filed, representing 32 class members, one of which was later withdrawn.

29

They claim that the low number of objections favors approval of the settlement. *See*,

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001)(The small number of

objections weighed in favor of settlement where 27,883 notices were sent and 18

objections received.).

Based on the opt out rate at 0.02% of the class and 0.05% of those directly

notified, and the few objections filed against the settlement, the Named-Plaintiffs have

shown that the opt-out rate the factor as to the reaction of absent class members

weighs in favor of settlement.

### 7. The Public Interest

The Twenty-Six Objectors assert that nearly every member of the public is a

class member, therefore the interests of the public are best analyzed as part of

assessing the reasonableness of the settlement to the class.

The Named-Plaintiffs argue that the public interest in this case is to settle a

complex litigation and class action and to conserve judicial resources. They claim that

in this case, 169 depositions have been taken, including depositions of over 100 third

parties (employees from dozens of hospitals), and that having a trial in this case would

burden the court and place a burden on Michigan healthcare providers.

There is a strong public interest in encouraging settlement of complex litigation

and class action suits because such suits are "notoriously difficult and unpredictable

and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 530 (E.D. Mich. 2003)(quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The public interest the Objectors raise is essentially a numerosity issue, which weighs in favor of a class action settlement. The public interest is strong to settle complex class action cases, such as this case. If the matter was to move forward to class action litigation, dispositive motion practice and trial, given the number of members in the class, the time to resolve this matter would be lengthy. The number of witnesses, including those in the Michigan healthcare system involved, would burden those systems. There is no guarantee at trial that the matter would be resolved in favor of class members. The public interest in settling complex class action litigation weighs in favor of settlement.

### 8. Preferential Treatment

The Twenty-Six Objectors argue that based on the Sixth Circuit decision in *Greenberg*, incentive payments to the named-Plaintiffs and Class Counsel are a disincentive for the class members to care about the adequacy of relief afforded by unnamed class members and instead encourages the class representatives to compromise the interest of the class for their personal gain. Such inequities in treatment, they argue, make a settlement unfair.

The Named-Plaintiffs assert that the incentive payments to the Named-Plaintiffs

31

are allowed and encouraged to reward their efforts in litigating the case on behalf of the class. The incentives are proportional to the time and resources each Named-Plaintiff devoted to the case. They argue that the attorneys' fees are not dependent on any award, but are subject to the Court's approval. As to absent class members, the Named-Plaintiffs argue that the settlement on their behalf is not "perfunctory." The settlement calls for a recovery of over 25 percent of the $118 million they claimed are the estimated damages in this case, which, they argue is not "perfunctory" in light of the risks, burdens and delay of continued litigation. They claim that there is no preferential treatment in favor of the Named-Plaintiffs and Class Counsel.

Courts have stressed that incentive awards are the efficient ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Depending on the circumstances, incentive awards are appropriate. *Id.* at 897-98. The Named-Plaintiffs in this case have been involved since the filing of all three consolidated cases. They have been involved in extensive discovery and any award to class representatives is proportioned to the time and effort each representative performed in this action. As to absent class members, their awards are not "perfunctory" in that the settlement is over 25 percent of the $118 million in estimated damages. The attorneys' fees requested are not contingent upon any award, but are

subject to the court's approval. The Court finds that the settlement before the Court

does not give preferential treatment to the Named-Plaintiffs, other than the incentives

which are reasonable in light of their involvement in the case. The Court also finds

that the relief to unnamed class members is not illusory or perfunctory. Because the

settlement does not give preferential treatment to Named-Plaintiffs or perfunctory

relief to unnamed class members, the Court approves the settlement in this case.

### 9. Plan of Allocation

In addition to the above-stated factors, the Court must also determine whether

the method of distributing the settlement fund is "fair and reasonable." *Thacker v.*

*Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010).

The Named-Plaintiffs in this case have shown that an expert has analyzed the

damages in this case and the effect of the MFNs on the damages. The Plan of

Allocation categorizes different claims by placing them in three categories: 23

provider agreements for which damages were able to be measured (Category 1);

purchases at hospitals with an MFN agreement, but for which the plaintiff has no

reliable evidence of harm or evidence of only de minimus damages (Category 2); and

purchases were made when no MFN agreement was in effect (Category 3). Category

1 is allocated to receive 78 percent of the Net Settlement Fund, Category 2 will

receive 20 percent of the Net Settlement Fund, and Category 3 will receive 2 percent

of the Net Settlement Fund. The Plan of Allocation is structured where the stronger claims receive more than the other claims where damages are less. Any payments in Category 3 which are too small to distribute will instead be made to the non-profit organization Free Clinics of Michigan, a charity providing free health services throughout Michigan. This non-profit was agreed to by the parties.

### 10. Conclusion/Summary

Having reviewed and heard the Objections and arguments by the parties and having weighed the factors set forth above, the Court finds that the Settlement submitted to the Court is fair, reasonable and adequate and that the Plan of Allocation is also fair, reasonable and adequate. The Court approves the Settlement and the Plan of Allocation. The Objections are overruled for the reasons set forth above.

## IV. ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

### A. Attorneys' Fees and Expenses Standard of Review

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). The court engages in a two-part analysis when assessing the reasonableness of a fee petition. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the court determines the method of calculating the attorneys' fees–either the percentage of the fund approach or the lodestar method. *Id.*; *Van Horn v.*

34

*Nationwide Prop. and Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The court has the discretion to select the appropriate method for calculating attorneys fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances." *Id.* Second, the court must then analyze and weigh the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). *Id.*

## B. Percentage of the Fund Approach

Class Counsel asserts that the Court should award attorneys' fees using the percentage of the fund approach at one-third of the fund amount. Class Counsel argues that this Circuit approves and prefers the percentage of the fund approach in awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and fully aligns the interests of Class Counsel and the Class. *See, e.g., Rawlings,* 9 F.3d at 515. Class Counsel notes that the requested fee is $5.5 million less than their actual fees based on the lodestar approach. Courts in this District have approved attorneys' fees in antitrust class actions anywhere from a 30% to one-third ratio of the common fund. *See, In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich.

Dec. 13, 2011); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000). Courts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund. *See, In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986).

Class Counsel claims that Co-Lead Counsel coordinated the efforts of all Plaintiffs' Counsel to maximize efficiency, minimize duplication of effort, and minimize any unnecessary or duplicative billing. Class Counsel asserts the time submissions were reviewed to ensure that no person submitted time for unauthorized work.

As noted previously, this action is a complex antitrust class action. Class Counsel submitted declarations of the various attorneys who participated in this case setting forth their attorneys' fees and expenses incurred. Based on the submission of Class Counsel and after review of the Objections submitted, the Court finds that the percentage of the fund method is the proper measure to award attorneys' fees in this case rather than the lodestar method. The percentage of the fund method eliminates arguments regarding the reasonableness of rates and hours incurred by the numerous counsel involved in this case and fully aligns with the interest of the Class. *Rawlings,*

9 F.3d at 515.

The Court further finds that the requested one-third of the fund percentage at $9,996,667.00 is reasonable in light of the time and resources expended by Class Counsel in this case. Taking Class Counsel's submissions regarding the fees incurred at $15,497,960.25 under the lodestar method, the one-third ratio awards Class Counsel more than $5 million *less* if the lodestar method was instead used in this case. Even if 10% of the lodestar amount was decreased, Class Counsel's fees under the lodestar method would still be higher than the one-third amount requested by Class Counsel. The Court finds that Class Counsel properly supported the request to award one-third of the common fund as attorneys' fees.

## C.    *Ramey* Factors

The Court must also review the requested fees and weigh the factors set forth in *Ramey*:  (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [the lodestar cross-check]; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1194-97.  Based on the Class Counsel submissions and reviewing the Objections to the requested fees, the Court finds that each of these factors weighs

in favor of awarding the requested attorneys' fees.

The first factor, the value of the benefit to the Class, is that the Settlement provides cash payment of $29.99 million to the Class Members. As previously noted, this amount represents 25% of the overcharges the Class Members paid as estimated by Plaintiffs' expert. Courts have approved settlements in class action antitrust settlements anywhere between 5.35% to 28% of estimated damages in a complex antitrust class actions. *See, In re Linerboard,* 2004 WL 1221350, at *4. This amount weights in favor of approving the fee award in light of the risks of the litigation as previously addressed.

Regarding the second factor, the society's stake in rewarding attorneys as an incentive, the Court finds this weighs in favor of approving the fee request. A court is tasked with ensuring that counsel are fairly compensated for the work performed and the result achieved. *Rawlings,* 9 F.3d at 516. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society." *In re Cardizem*, 218 F.R.D. at 534. In this case, Class Counsel's work resulted in a settlement for the Class, which in light of the risk of the litigation the attorneys' fees requested are reasonable. As noted above, courts have held that the public interest is strong in encouraging settlement of complex litigation and class action suits because they are difficult and unpredictable. The settlement conserves judicial resources and

compensates class members.

The third factor, whether the services were undertaken on a contingent fee basis, weighs in favor of awarding the attorneys' fees requested. Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery. *In re Telectronics,* 137 F. Supp. 2d at 1043. Plaintiff's Counsel prosecuted the cases on a contingent basis. They are aware that for a variety of reasons, including information revealed during discovery, court rulings on motions, and findings by a jury, Plaintiff's Counsel could recover no fee for prosecuting the cases. The nature of the contingent fee arrangement between Plaintiffs and their Counsel weighs in favor of the fees requested by Class Counsel.

As to the fourth factor, the value of the services on an hourly basis [the lodestar cross-check], as noted above, if the Court were to award the attorneys' fees based on the lodestar method, the fees would exceed by more than $5 million the requested one-third ratio. The Court finds that the requested one-third attorneys' fees amount is reasonable.

The Court has noted, and there is no real dispute that this antitrust litigation is complex. This fifth factor, the complexity of the litigation, weighs in favor of awarding the requested attorneys' fees.

The sixth factor, the professional skill and standing of counsel on both sides,

weigh in favor of awarding the attorneys' fees requested. "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,* 248 F.R.D. 483, 504 (E.D. Mich. 2008). The Court has observed counsel on all sides of this litigation. There is no doubt that Blue Cross is a formidable opponent. Blue Cross' counsel have zealously defended Blue Cross' position in this litigation and the related litigation before the Court. Class Counsel and the other Plaintiffs' Counsel in this case have also vigorously prosecuted the case on behalf of the Class. Class Counsel have submitted the lead counsels' backgrounds which indicate that each counsel have excellent standing amongst their peers and all are well-experienced in this area of litigation.

Weighing the *Ramey* factors set forth by the Sixth Circuit, for the reasons set forth above, they requested attorneys' fees of one-third of the Settlement Fund is fair and reasonable and is so awarded.

### D. Expenses

Class Counsel asserts that they have incurred litigation expenses in the aggregate amount of $3,499,893.02 for the benefit of the Settlement Class. They claim that a significant component of the expenses is the cost of the expert work performed on behalf of the Settlement Class. They retained highly qualified economic

experts to analyze the impact of Blue Cross' MFN clauses on prices of acute care hospital healthcare services in Michigan, and to address other issues such as market definition and market power. Class Counsel claims the experts' work required complex statistical analysis of extraordinarily large amounts of data. They assert that the notice sent to the Class indicated Class Counsel would seek up to $3,500,000 in attorneys' fees. The costs incurred by Class Counsel is in line with the notice sent to the Class. Class Counsel indicated they will not seek reimbursement of certain expenses, including approximately $146,000 in expenses related to sending notice to an additional 500,000 names. Class Counsel asserts that they incurred the millions of dollars of expenses in this case, without any guarantee of recovery. Class Counsel claims the out of pocket expenses support their commitment to this case, even with the substantial risks inherent in this complex class action litigation.

Class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses. *In re Cardizem,* 218 F.R.D. at 535. The type of expenses compensable are the type typically billed by attorneys to paying clients in the marketplace. *Id.* Courts have recognized that the assistance of qualified experts is necessary and a costly expense

41

in antitrust litigation. *See, B&H Med., L.L.C. v. ABP Admin., Inc.,* No. 02-73615, 2006 WL 123785, at *3 (E.D. Mich. Jan. 13, 2006).

Reviewing the expenses incurred by Class Counsel set forth in their declarations and after considering the Objections, the Court finds that the requested amount incurred by counsel out-of-pocket is reasonable, in light of the time, resources, expert analysis and complexity of this class action case. The amount requested is substantial at $3,499,893.02. However, this amount includes complicated analysis by experts as to how the MFN clauses impacted healthcare services in Michigan using extraordinarily large amount of data. Class Counsel have shown that the experts provided significant services on behalf of the Settlement Class resulting in the settlement between the parties.

**E.    Incentive Awards**

Class Counsel request $165,000 in incentive awards for each Plaintiff organization and individual Plaintiffs as follows:

- Michigan Regional Council of Carpenters Employee benefits Fund - $45,000;
- Abatement Workers National Health and Welfare Fund - $35,000;
- Monroe Plumbers & Pipefitter Local 671 Welfare Fund - $35,000
- The Shane Group, Inc. - $20,000
- Susan Baynard - $10,000
- Anne Patrice Noah - $10,000

        •    Bradley Veneberg - $5,000
        •    Scott Steele - $5,000

The Notice to the Settlement Class provided incentive awards for the class representatives at $240,000, which is .8% of the Settlement Fund. However, Class Counsel is only seeking a total of $165,000 in incentive awards, which is at 0.55% of the Settlement Fund, lower than the amount in the Notice.

       The Sixth Circuit has noted that incentive awards are typically awarded to class representatives for their extensive involvement with a lawsuit. *Hadix*, 322 F.3d at 897. Awards encourage members of a class to become class representatives and reward their efforts taken on behalf of the class. *Id.* Payment of incentive awards to class representatives is a reasonable use of settlement funds. *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 351 (6th Cir. 2009). Courts have approved incentive awards of up to $15,000 for individual plaintiff class representatives for providing information to class counsel, receiving and approving pleadings, assisting in discovery and participating in settlement discussions. *See, In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006). Larger incentive awards than those to individual plaintiffs have been approved for organizational class representatives because of the greater burden in the course of litigation by producing greater numbers of documents and participating in Rule 30(b)(6) depositions. *See, In*

*re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D. N.Y. Oct. 23, 2012).

After reviewing the request for incentive awards and the Objections thereto, the Court finds that awards requested are reasonable. The three Union self-funded organizations produced thousands of documents during discovery. The organizations shared their knowledge of the industry with Class Counsel and assisted in drafting and responding to discovery requests. The organizations' staff and agents spent time and resources during the litigation resulting in the settlement on behalf of the Class. The Shane Group was an initial filer of the lawsuit in October 2010. Its representatives worked with Class Counsel throughout the litigation locating and producing documents, responding to discovery requests and reviewing filings in the case. Based on these four groups' participation in the litigation resulting in the settlement on behalf of the Class, the incentive awards requested for each are reasonable.

As to the individual awards for Baynard and Noah, according to Class Counsel, they provided important and indispensable service to the Settlement Class. They searched their personal records multiple times to locate documents responsive to Blue Cross' discovery requests and obtained documents in the custody of third parties. Both testified via depositions, which required them to travel to Detroit from northern Michigan. The Court finds that the requested incentive awards for Noah and Baynard

are reasonable in light of their participation during the discovery phase of the litigation. Their participation benefitted the Class.

The individuals Veneberg and Steele filed their complaints in October 2010 and January 2011, respectively. They both participated in discovery by locating and producing documents. The Court finds that their participation in the litigation supports the requested incentive awards.

## V.   SANCTIONS

Objector Christopher Andrews field a Motion for Sanctions against Class Counsel for their filings related to their requested fees and approval of the settlement. Class Counsel responds that Andrews has not provided any basis for sanctioning Class Counsel. In turn, Class Counsel filed a Motion for Show Cause relating to sanctionable conduct by Andrews. Andrews responds that Class Counsel are the ones engaging in sanctionable conduct. Since the Fairness Hearing in this matter, Andrews has filed supplemental documents with the Court. Class Counsel has also filed supplemental documents with the Court.

Rule 11 permits sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l*

*Ass'n of Mach. and Aerospace Workers,* 613 F.3d 609, 626 (6th Cir. 2010). Rule 11

sanctions are warranted if the attorney's conduct was unreasonable under the

circumstances. *Andretti v. Borla Performance Indus., Inc.,* 426 F.3d 824, 833 (6th

Cir. 2005). The grant of sanctions must be reviewed in the context of the litigation

history of the action. *Merritt,* 613 F.3d at 627. The central purpose of Rule 11 is to

deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S.

384, 393 (1990).

As to Class Counsel's actions relating to this case and the responses filed to

Andrews' submissions, the Court finds that their submissions have been well

grounded in fact and the circumstances, made in good faith and were not filed for any

improper purpose, harassment, or delay. Class Counsel's filings have been in

accordance with the rules and the Court's orders regarding filings of documents

related to the Class Action Settlement and Fairness Hearing.

Regarding Andrews' *pro se* submissions, the Court finds that many of the

submissions are not warranted by the law and facts of the case, were not filed in good

faith and were filed to harass Class Counsel. Class Counsel claims Andrews'

demands for payment of a "ransom," is extortion. Rule 11 requires a *pro se* plaintiff

to sign any document filed with the court as certification that the document is not

being submitted for an improper purpose and that the documents' legal claims and

46

factual allegations are warranted. Fed. R. Civ. P. 11(c); *Garrison v. Mich. Dep't of Corr.,* 333 F. App'x 914, 920 (6th Cir. 2009). The court may impose an appropriate sanction on a party who violates the rule. *Garrison,* 333 F. App'x at 920. Sanctions imposed by the court require a finding of fraud or willful disobedience of a court order. *Id.* Here, although Andrews has submitted various documents to the Court, the Court finds he has not disobeyed any court order, nor has Class Counsel alleged Andrews has committed fraud. Class Counsel only argues that Andrews' communications to Class Counsel amount to "criminal extortion" in that Andrews is attempting to interfere with the Court's authority and proceedings by demanding that filed pleadings be withdrawn and that he be paid an undisclosed sum of money. The demands by Andrews are just that, demands which the Court need not consider.

The Court is aware that other courts have noted that Andrews is known to be a "professional objector who has extorted additional fees from counsel in other cases," but this Court will not at this time sanction his conduct of filing documents with the Court. *See, In re Nutella Marketing and Sales Practices Litig.,* No. 11-cv-01086 (D.N.J.)(7/9/12 Fairness Hearing Tr., Ex. C to Doc. No. 201). As to Class Counsel's claim that Andrews has engaged in criminal extortion, Class Counsel is free to pursue that claim with the appropriate authorities.

## VI.    CONCLUSION

For the reasons set forth above, the Court finds that the Settlement and the Plan of Allocation is fair, reasonable and adequate to the interest of the Class Members.

Accordingly,

IT IS ORDERED that the Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives (**Doc. No. 155**) is GRANTED.

IT IS FURTHER ORDERED that the Motions to Intervene for the Limited Purpose of Unsealing Records and Adjourning Fairness Hearing (**Doc. Nos. 166, 183, 185, 186, and 192**) are DENIED.

IT IS FURTHER ORDERED that the Motion for Final Approval of Settlement and Plan of Allocation (**Doc. No. 169**) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Strike Sur-Reply of Objector Christopher Andrews (**Doc. No. 177**) is DENIED.

IT IS FURTHER ORDERED that the Motion for Sanctions filed by Christopher Andrews (**Doc. No. 205**) is DENIED.

IT IS FURTHER ORDERED that Class Counsels' Emergency Motion for Show Cause Order Relating to Sanctionable Conduct by Objector Christopher Andrews (**Doc. No. 206**) is DENIED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: March 31, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2015, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

# Exhibit 8

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

**From:** caaloa <caaloa@gmail.com>
**Date:** November 27, 2019 at 12:10:27 PM EST
**To:** "E. Powell Miller" <epm@millerlawpc.com>
**Subject: Shane vs Blue Cross and Equifax**


Dear Mr. Miller,
For saving the class $1.5 million and to resolve the Shane vs Blue Cross litigation is $400,000.00 until
further notice and that includes selling you my 1,400+ page template I use in filing the best objections
and appeals. This will prevent you from making material errors in future cases.
The Equifax objection will hit the docket on Monday, I happened to mention your firm's name in it, hope
you don't mind. I will generate publicity for the Equifax sellout, you will see what I mean when you read
the submission and coverage out state but no publicity in Michigan, it has already started last night.  I
will create the same media coverage in MI when my Shane brief is filed when it will be sent to 200 radio,
TV and newspapers in addition the the national list. That brief will be better then the Equifax objection.
Allowing this case to drag on only makes it worse for everyone, not better. I will win either way, by slam
dunk.
Happy Thanksgiving,
Christopher Andrews

# Exhibit 9

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stuart | Ludwig and Janice | Cary | NC | 27511 | N | 8.1.19 | Y | | X | | X | | | |
| Sutton | Edmund C. | Seattle | WA | 98101 | N | 8.1.19 | N. | | | | X | | | |
| Case | Heather | Eugene | OR | 97401 | N | 8.6.19 | Y. | | | | | | X | |
| May | Joel Aaron | Vancouver | WA | 98664 | N | 8.6.19 | Y. | | | | | X | X | |
| Walthall | John | Scottsville | NY | 14646 | N | 8.6.19 | Y. | | | | | X | X | |
| Utter | Alexander | Hawthorne | CA | 90250 | N | 8.7.19 | Y | | | | | | X | |
| Rudo-Hutt | Brian | Jersey City | NJ | 07302 | N | 8.8.19 | Y | | | | | | X | |
| Nitkin | Benjamin | Centennial | CO | 80112 | N | 8.9.19 | Y | | | | | | X | |
| Estes | Erin | Island Lake | IL | 60042 | N | 8.9.19 | Y | | | | | | X | |
| Kevin | Johnson | Lexington | MA | 02421 | N | 8.9.19 | Y | | | | | | X | |
| Talsania | Sonali | Miami | FL | 33137 | N | 8.12.19 | Y | | | | | | X | |
| Ritner | Robert P. | San Clemente | CA | 92672 | N | 8.16.19 | Y. | | | | | X | X | |
| Marshall | Qunay | Jacksonville | FL | 32257 | N | 8.16.19 | N | | | | | | X | |
| Patton | Deborah K. | LaVale | MD | 21502 | N | 8.19.19 | Y | | X | | | | X | |
| Coxhead | Helen A. | Clearwater | FL | 33767 | N | 8.19.19 | Y | | X | | | | X | |
| Kulathungam | Murali S. | Herndon | VA | 20171 | N | 8.19.19 | Y | | | | | X | X | |
| Speed | Nathan Charles | Lakeport | CA | 95453 | N | 8.19.19 | Y | | | | | X | | |
| Crotts | Sarah J. | Greensboro | NC | 27455 | N | 8.21.19 | Y. | | | | | | X | |
| Gilliland | Ronald L. | Alexandria | PA | 16611 | N | 8.22.19 | Y. | X | | | | X | X | |
| Hannum | David | Torrance | CA | 90503 | N | 8.22.19 | N | | | | | X | X | |
| Higgins | Hugh K. | Austin | TX | 78759 | N | 8.23.19 | Y. | | | | | | X | |
| Stubbs | Donald Richard | Gambrills | MD | 21054 | N | 8.29.19 | Y | | | | | | X | |
| King | Chris | Las Vegas | NV | 89112 | N | 9.3.19 | Y | | | X | | | X | |
| Hyman | Joshua D. | Vancouver | WA | 98661 | N | 9.3.19 | Y | | | | | | X | |
| LeBlanc | Raymond | Aiea | HI | 96701 | N | 9.3.19 | Y | | | | | | X | |
| Huang | Shiyang | Topeka | KS | 66614 | N | 9.3.19 | Y | | X | | | | X | |
| Simon | David N. | Chicago | IL | 60659 | N | 9.6.19 | Y | | | | | | X | |
| Coleman | Edward A. | Springfield | NJ | 07081 | N | 9.10.19 | Y | | | X | | | X | |
| Gilbert | Daniel B. | Easthampton | MA | 01027 | N | 9.12.19 | Y | X | | X | | | X | |
| Calcut | Devin Scott | Rathdrum | ID | 83858 | N | 9.13.19 | Y | | | | | X | X | |
| Kasle | Douglas | Capitola | CA | 95010 | N | 9.16.19 | Y | | | | | | X | |
| Mason | Cindy | Austin | TX | 78736 | N | 9.16.19 | Y | | X | | | | X | |
| Brown | David D. | Billerica | MA | 01821 | N | 9.16.19 | Y | | X | X | | | X | X |
| Loeb | Roger Martin | Parker | CO | 80134 | N | 9.17.19 | Y | X | | | | | X | |
| Mitchell | Lauren | Portland | OR | 97218 | N | 9.18.19 | Y | X | | | | | | |
| Benvenutti | Jamie | Lawrence | KS | 66044 | N | 9.18.19 | N. | X | | | | | | X |
| Santiago | Deborah | Fernandina Beach | FL | 32034 | N | 9.19.19 | Y | | | | | | X | |
| Boothby | Madelaine | Seattle | WA | 98118 | N | 9.19.19 | N | | | | | | | X |
| Zimberoff | Rafael | Seattle | WA | 98118 | N | 9.19.19 | Y | | | | | | X | |
| Chang | Vivian | HoNlulu | HI | 96815 | N | 9.19.19 | Y | | | | | | X | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Neumann | Alex | Lithia Springs | GA | 30122 | N | 9.20.19 | Y | | | | | X | | |
| Dickey | Amy | St. Louis | MO | 63123 | N | 9.20.19 | Y | X | | X | | X | X | |
| Chon | Andrew | Redondo Beach | CA | 90278 | N | 9.20.19 | Y | | | | | X | | |
| Bernstein | Anita | Brooklyn | NY | 11230 | N | 9.20.19 | Y | | | | | X | | |
| Segur | Anna | Boulder | CO | 80301 | N | 9.20.19 | Y | | | X | | X | X | |
| Hall | Catherine | Sunriver | OR | 97707 | N | 9.20.19 | Y | | | | | X | | |
| Justice | Charles C. | Easley | SC | 29640 | N | 9.20.19 | Y | | | | | | X | |
| Peterson | Charles F. | Colorado Springs | CO | 80903 | N | 9.20.19 | Y | | | | | X | X | |
| Reed | Charles | Kansas City | MO | 64106 | N | 9.20.19 | Y | | | | X | | | |
| Talero | Daniel | Boulder | CO | 80305 | N | 9.20.19 | Y | | | | | X | | |
| Terk | Daniel G. | Leominster | MA | 01453 | N | 9.20.19 | Y | | | | | X | | |
| Weintraub | David | Edison | NJ | 08817 | N | 9.20.19 | Y | | | | | X | | |
| Patterson | Dean | New York | NY | 10009 | N | 9.20.19 | Y | | | X | X | X | | |
| Hubbard | Deven | Las Vegas | NV | 89141 | N | 9.20.19 | Y | | | | | X | | |
| Bagnuto | Ellen M. | Broomfield | CO | 80023 | N | 9.20.19 | N | | | | | X | | |
| Comess | Keith A. | Portland | OR | 97232 | N | 9.20.19 | Y | | | | | X | | |
| DeRook | Fances A. | Portland | OR | 97232 | N | 9.20.19 | Y | | | | | X | | |
| Golnik | Gary | Newburyport | MA | 01950 | N | 9.20.19 | Y | X | X | | X | | | |
| Kushner | Gary B. | Kalamazoo | MI | 49009 | N | 9.20.19 | Y | | | | | X | | |
| Hall | Ivan S. | Sunriver | OR | 97707 | N | 9.20.19 | Y | | | | | X | | |
| Bridges | James R. | Everett | WA | 98204 | N | 9.20.19 | Y | X | | | | X | X | |
| Walters | Jeffrey | Atlanta | GA | 30316 | N | 9.20.19 | Y | X | | | | X | | |
| Cardador | Joe Manuel | Fairway | KS | 66205 | N | 9.20.19 | N | | | | X | | X | |
| Balzar | John | Potomac | MD | 20854 | N | 9.20.19 | Y | | | | X | | | |
| Fleischman | John | Cincinnati | OH | 45208 | N | 9.20.19 | Y | X | | | | X | | |
| Fleischman | Mary | Cincinnati | OH | 45208 | N | 9.20.19 | Y | X | | | | X | | |
| Hammer | Jonathan | Monroe | CT | 06468 | N | 9.20.19 | N | | | | | X | | |
| Goel | Karan | Seattle | WA | 98121 | N | 9.20.19 | N | | | | | X | | |
| ReyNlds | Kathleen | Camp Sherman | OR | 97730 | N | 9.20.19 | Y | | | | | X | | |
| Boyd | Laurel | Portland | OR | 97206 | N | 9.20.19 | Y | | | | | X | | |
| Hansen | Linda R. | Boulder | CO | 80301 | N | 9.20.19 | Y | X | | X | | X | | |
| Rockcliff | Mara | Lancaster | PA | 17603 | N | 9.20.19 | Y | | | | X | X | | |
| Keats | Marilyn K. | Charlotte | NC | 28216 | N | 9.20.19 | Y | | | | | X | | |
| Barnett | Mary Leslie | Phoenix | AZ | 85032 | N | 9.20.19 | Y | | | | X | X | | |
| Pengra | Patricia R. | Pasadena | CA | 91104 | N | 9.20.19 | Y | | | | | X | | |
| Baggett | Patrick | Carrollton | TX | 75006 | N | 9.20.19 | N | | | | | X | X | |
| Schreiber | Paul | Brooklyn | NY | 11217 | N | 9.20.19 | Y | | | X | | X | | |
| Rooney | Peter W. | Washington | DC | 20003 | N | 9.20.19 | Y | X | | | | | | |
| Naylor | Rachel | N. Layton | Utah | 84040 | N | 9.20.19 | Y | | | | | X | | |
| Hanis | Susan S. | Raleigh | NC | 27612 | N | 9.20.19 | Y | | | | X | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Marcus | Theodore R. | Rancho Palos Verdes | CA | 90275 | N | 9.20.19 | Y | X | | | X | X | | |
| Cushing | Thomas F. | Danville | CA | 94526 | N | 9.20.19 | Y | X | | | | X | | |
| Hagy | Timothy | Bristol | VA | 24201 | N | 9.20.19 | Y | | | | | X | | |
| Buckton | Todd | Glen Ellyn | IL | 60137 | N | 9.20.19 | Y | | | | | X | | |
| Benedict | Victoria M. | Atlanta | GA | 30305 | N | 9.20.19 | Y | X | | | X | X | | |
| Dimitrioski | Zlatko | Astoria | NY | 11106 | N | 9.20.19 | Y | | | | | X | | |
| Damewood | Michael | Littleton | CO | 80127 | N | 9.20.19 | Y | | | | | X | | |
| Judkins | John | Tualatin | OR | 97062 | N | 9.20.19 | Y | | | | | X | | |
| Judkins | Susan | Tualatin | OR | 97062 | N | 9.20.19 | Y | | | | | X | | |
| Alan | Sinclair | Santa Cruz | CA | 95060 | N | 9.23.19 | Y | | | | X | X | | |
| Manter | Alexander | Washington | DC | 20005 | N | 9.23.19 | Y | X | | | X | X | | |
| Zinser | Amy E. | New Canaan | CT | 06840 | N | 9.23.19 | Y | | | | | X | | |
| Zajac | Andrew | Lakewood | OH | 44107 | N | 9.23.19 | Y | X | | | | X | | |
| Hueter | Barbara | Lakewood | OH | 44107 | N | 9.23.19 | Y | X | | | | X | | |
| Horowitz | Arlene | Fort Lee | NJ | 07024 | N | 9.23.19 | Y | | | | | X | X | |
| Braid | Barbara L. | Laramie | WY | 82070 | N | 9.23.19 | Y | X | X | | | X | | |
| Korte | Barbara | Plymouth | MI | 48170 | N | 9.23.19 | Y | | | | | X | X | |
| Lynch | Barton | Arlington | VA | 22202 | N | 9.23.19 | Y | | | | X | | | |
| Stasiowski | Beth Ann | Eldersburg | MD | 02178 | N | 9.23.19 | Y | X | | | | X | X | |
| Sheets | Billy | Newberg | OR | 97132 | N | 9.23.19 | Y | | X | | X | X | | |
| Watson | Brian Michael | Kent | WA | 98042 | N | 9.23.19 | Y | | | | X | X | | |
| Olsen-Ecker | Britt | Baltimore | MD | 21218 | N | 9.23.19 | N | | | X | | X | | |
| Scarlett | Caleb Olin | Charleston | SC | 29492 | N | 9.23.19 | N | | | | | X | | |
| Engelsen | Candace | San Francisco | CA | 94118 | N | 9.23.19 | Y | | | | | X | | |
| SancimiN | Catherine | New York | NY | 10014 | N | 9.23.19 | Y | | | | | X | X | |
| Hoffmeyer | Charles C. | Grand Ledge | MI | 48837 | N | 9.23.19 | Y | | | | X | X | | |
| Moore | Charles | Arlington | VA | 22201 | N | 9.23.19 | Y | X | | | X | X | | |
| Luc | Cheryl | West End | NC | 27376 | N | 9.23.19 | Y | | | | X | X | | |
| Wilson | Christiana Mara | Newport News | VA | 23602 | N | 9.23.19 | Y | | | | X | X | | |
| Gavlin | Christine | Western Springs | IL | 60558 | N | 9.23.19 | N | | | | | X | | |
| Anglin | Clarence J. | Metairie | LA | 70002 | N | 9.23.19 | N | | | | | X | | |
| Willis | Clare | San Francisco | CA | 94114 | N | 9.23.19 | Y | | | | | X | | |
| Willhelm | Heidi | Madison | WI | 53704 | N | 9.23.19 | Y | X | | X | | X | | |
| Albrecht | David | West Hollywood | CA | 90069 | N | 9.23.19 | Y | X | | | | | | |
| Moncagatta | Claudia | Seattle | WA | 98109 | N | 9.23.19 | N | | | | | X | X | |
| Eisenstein | Corinne | Ocean Isle Beach | NC | 28469 | N | 9.23.19 | N | | | | | X | | |
| Boyd | Daniel | PlaN | TX | 75093 | N | 9.23.19 | N | X | | | | X | | |
| Bratslavsky | David | San Juan | PR | 00901 | N | 9.23.19 | N | | | | | | X | |
| Fulbright | David | Edwardsville | IL | 62025 | N | 9.23.19 | N | | | | | | X | |
| Williams | David F. | Tulsa | OK | 74135 | N | 9.23.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bartlett-May | Donna | Spring Valley | CA | 91978 | N | 9.23.19 | Y. | | | | X | | | |
| Bartlett-May | Richard | Spring Valley | CA | 91978 | N | 9.23.19 | Y. | | | | X | | | |
| Hay | Donna | EnciN | CA | 91436 | N | 9.23.19 | Y | | | | X | X | | |
| Karo | Douglas | Durham | NH | 03824 | N | 9.23.19 | N | | X | | X | | | |
| Alexander | Eldridge | Ann Arbor | MI | 48106 | N | 9.23.19 | Y | | | | | X | | |
| Boden | Elizabeth | Riverside | IL | 60546 | N | 9.23.19 | Y | X | | | | X | | |
| Rodgers | Elizabeth | Boise | ID | 83702 | N | 9.23.19 | Y | | | | | X | | |
| Fredrickson | Esther | Albuquerque | NM | 87105 | N | 9.23.19 | Y | X | | | | X | | |
| DeLapp | Kenneth | Albuquerque | NM | 87105 | N | 9.23.19 | Y | X | | | | X | | |
| Goldfine | Evan | Larchmont | NY | 10538 | N | 9.23.19 | Y | | X | | | X | | |
| Martin | Faith | Kansas City | MO | 64114 | N | 9.23.19 | N | | | | | X | | |
| Spear | Gillian | Brooklyn | NY | 11211 | N | 9.23.19 | Y | | | | | X | | |
| Gurrola | Horacio | Oceanside | CA | 92057 | N | 9.23.19 | Y | | | | | X | | |
| Cheney | Jacqueline | Brooklyn | NY | 11215 | N | 9.23.19 | Y | X | | | | X | | |
| Door | Jacqueline | Crystal | MN | 55428 | N | 9.23.19 | N | X | | | | X | X | |
| Foster | James | Sioux Falls | SD | 57104 | N | 9.23.19 | | | | | | X | | |
| Griffin | James | Milton | MA | 02186 | N | 9.23.19 | N | | | | | X | X | |
| Brown | Jeffrey | Yorba Linda | CA | 92886 | N | 9.23.19 | Y | X | | | | X | | |
| Jenkins | Jeffry A. | Wasilla | AK | 99687 | N | 9.23.19 | Y | | | | X | X | | |
| Ferri | Joseph J. | Long Valley | NJ | 07853 | N | 9.23.19 | Y | | | | | X | | |
| Swann | Judith | Ithaca | NY | 14850 | N | 9.23.19 | Y | | | | | X | | |
| Engel | Julie | Yuma | AZ | 85365 | N | 9.23.19 | Y | | | | X | | | |
| Ferri | Karen T. | Long Valley | NJ | 07853 | N | 9.23.19 | Y | | | | | X | | |
| Peeler | Kate | Nrth Hills | CA | 91343 | N | 9.23.19 | Y | X | | | | X | | |
| Graham | Kevin | Sterling Heights | MI | 48313 | N | 9.23.19 | Y | X | | | | X | | |
| Murphy | Kevin | Clen Allen | VA | 23059 | N | 9.23.19 | Y | | | | | X | | |
| White | Kim | Los Angeles | CA | 90042 | N | 9.23.19 | Y | | | | | X | | |
| Isaacs | Larry | Asheville | NC | 28804 | N | 9.23.19 | N | | | | | X | | |
| Wall, Jr. | Leavell A. | Black Mountain | NC | 28711 | N | 9.23.19 | Y | | | | | X | | |
| Adams | Lee | Tallahassee | FL | 32303 | N | 9.23.19 | Y | X | X | | | X | | |
| Defliese | LeNre M. | Mercer Island | WA | 98040 | N | 9.23.19 | Y | | | | | X | | |
| Giles | Lewis | Dallas | TX | 75208 | N | 9.23.19 | Y | | | | | X | | |
| Isaacs | Linda | Asheville | NC | 28804 | N | 9.23.19 | N | | | | | X | X | |
| Moore | Linda | Desoto | TX | 75115 | N | 9.23.19 | N | | | | | X | | |
| Spiegel | Lynda Rich | Forest Hills | NY | 11375 | N | 9.23.19 | Y | | | | | X | | |
| Mills-Thysen | Mark | Sebastopol | CA | 95472 | N | 9.23.19 | Y | X | | | | X | | |
| Hutton | Mary | Kirkland | WA | 98034 | N | 9.23.19 | N | | | | | X | | |
| Wolff | Megan | Brooklyn | NY | 11215 | N | 9.23.19 | N | | | | | X | | |
| Walker | Melissa | Spartanburg | SC | 29302 | N | 9.23.19 | Y | X | | | | X | | |
| Hussain | Mohammed | Cherry Hill | NJ | 08003 | N | 9.23.19 | Y | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Przybylo | Nathan | Neenah | WI | 54956 | N | 9.23.19 | Y | | | | X | X | X | |
| Carlberg | Paul | Aurora | CO | 80017 | N | 9.23.19 | Y | | | | X | | | |
| Hoyer | Paul | Philadelphia | PA | 19103 | N | 9.23.19 | N | | X | | | X | | |
| Bellin | Peter | Oxnard | CA | 93035 | N | 9.23.19 | N | | | | | X | | |
| Maureemootoo | Peter | Roseville | CA | 95661 | N | 9.23.19 | N | | | | | X | | |
| Lineberry | Schreiber | Franklin | KY | 42134 | N | 9.23.19 | N | | X | | | X | | |
| Grove, Jr. | Ralph F. | Nrfolk | VA | 23510 | N | 9.23.19 | Y | | | | | X | | |
| Kirsch | Rebecca | Culver City | CA | 90232 | N | 9.23.19 | Y | X | | | | X | | |
| Zirker, IV | Robert H. | Bowling Green | OH | 43402 | N | 9.23.19 | Y | | | | | X | | |
| Mitchell | Roger | Carrboro | NC | 27510 | N | 9.23.19 | Y | | | | | X | | |
| Zamoyta | Ruth | Millburn | NJ | 07041 | N | 9.23.19 | Y | | | | | X | | |
| Calvert | Sam | St. Cloud | MN | 56303 | N | 9.23.19 | Y | | | | | X | | |
| Skillman Jr. | Richard | Vashon | WA | 98070 | N | 9.23.19 | Y | | | | | X | X | |
| ZolN | Sherene | Vashon | WA | 98070 | N | 9.23.19 | Y | | | | | X | X | |
| Devol | Steven | Los Angeles | CA | 90013 | N | 9.23.19 | Y | X | | | | X | | |
| Wasserman | Steven | Charlottesville | VA | 22903 | N | 9.23.19 | Y | X | | | | X | | |
| Odem | Steve | Lakeland | FL | 33810 | N | 9.23.19 | N | X | | | | X | | |
| Odem | Vicky | Lakeland | FL | 33810 | N | 9.23.19 | N | X | | | | X | | |
| Odem | Anna | Lakeland | FL | 33810 | N | 9.23.19 | N | X | | | | X | | |
| Odem | Amy | Lakeland | FL | 33810 | N | 9.23.19 | N | X | | | | X | | |
| Hamilton | Sybille | Wauwatosa | WI | 53222 | N | 9.23.19 | Y | | | | | X | | |
| Dowd | Tara M. | Bronx | NY | 10451 | N | 9.23.19 | Y | | | | | X | | |
| Snell | Thomas M. | New York | NY | 10021 | N | 9.23.19 | Y | | | | | X | | |
| Boutin | Timothy | Chelmsford | MA | 01824 | N | 9.23.19 | Y | X | | | | X | | |
| Brophy | Timothy | Jensen Beach | FL | 34957 | N | 9.23.19 | Y | | | | | X | | |
| Minter | Timothy J. | Fort George G. Meade | MD | 20755 | N | 9.23.19 | Y | | | | | X | | |
| Wagner | Tristan | Portland | OR | 97227 | N | 9.23.19 | N | | | | | X | | |
| Reese | Vail | San Francisco | CA | 94114 | N | 9.23.19 | Y | | | | | X | | |
| Freeman | Varel D. | Hopkinton | NH | 03229 | N | 9.23.19 | Y | | | | X | X | | |
| Krapivin | Viktor | Stanford | CA | 94305 | N | 9.23.19 | Y | | | | X | X | X | |
| Bell | William | Signal Mountain | TN | 37377 | N | 9.23.19 | Y | | | | | X | | |
| Mitchell | William | South Orange | NJ | 07079 | N | 9.23.19 | Y | | | | | X | | |
| Robinson, Jr. | William F. | Englewood | CO | 80111 | N | 9.23.19 | Y | X | | | | X | | |
| Shonk | William | Pittsburgh | PA | 15206 | N | 9.23.19 | Y | X | | X | | X | | |
| Liska | John | Austin | TX | 78704 | N | 9.23.19 | N | | | | | X | | |
| Crowell, III | John R. | Tampa | FL | 33647 | N | 9.23.19 | N | | | | X | | | |
| Pena | Katherine | Coral Gables | FL | 33134 | N | 9.23.19 | Y | | | | | X | | |
| Miller | Nathan | Grants Pass | OR | 97526 | N | 9.23.19 | Y | | | | | X | | |
| Foster | Sallie | Philadelphia | PA | 19143 | N | 9.23.19 | Y | | | | | X | | |
| McConnell | Sari | Burlingame | CA | 94010 | N | 9.23.19 | Y | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sucov | Andrew | Cranston | RI | 02905 | N | 9.24.19 | Y | | | | | X | | |
| Douglas | Austin | Columbus | OH | 43212 | N | 9.24.19 | Y | | | | X | | | |
| Peter | Brian | Chevy Chase | MD | 20815 | N | 9.24.19 | Y | | | | X | | | |
| Ugwumba | Chidozie | Denver | CO | 80204 | N | 9.24.19 | Y | | | | | X | | |
| Katz | David | Portland | OR | 97202 | N | 9.24.19 | Y | X | | | | X | | |
| McCall | Dorothy | Charlottesville | VA | 22903 | N | 9.24.19 | Y | | | | | X | | |
| Kalies | Elizabeth | Chapel Hill | NC | 27515 | N | 9.24.19 | N | | | | | X | | |
| Carrow | James | Chicago | IL | 60610 | N | 9.24.19 | Y | | | | | X | X | |
| Tyvand | James | Sunriver | OR | 97707 | N | 9.24.19 | Y | | | | | X | | |
| Mansfield | Jill | Chesapeake | VA | 23322 | N | 9.24.19 | Y | | | | | X | | |
| Wong | Kenneth | Alhambra | CA | 91803 | N | 9.24.19 | Y | | | | | X | | |
| Schroeder | Leigh K. | Seattle | WA | 98146 | N | 9.24.19 | Y | X | | | | X | | |
| Turnquist | Linda | Davis | CA | 95616 | N | 9.24.19 | Y | | | | | X | | |
| Tarczy | Paul | Davis | CA | 95616 | N | 9.24.19 | Y | | | | | X | | |
| Rogers | Lisa | Mountain View | CA | 94043 | N | 9.24.19 | Y | X | | | | X | | |
| Rogers | William | Mountain View | CA | 94043 | N | 9.24.19 | Y | X | | | | X | | |
| McCall | Madison | Charlottesville | VA | 22903 | N | 9.24.19 | Y | | | | | X | | |
| Mansfield | Mark | Chesapeake | VA | 23322 | N | 9.24.19 | Y | X | | | | X | | |
| Kaplan | Nancy | Asbury Park | NJ | 07712 | N | 9.24.19 | Y | | | | | X | | |
| Mansfield | Neal L. | Chesapeake | VA | 23322 | N | 9.24.19 | Y | | | | | X | | |
| Scrogham | Ronald | Irving | TX | 07506 | N | 9.24.19 | N | | | | | X | | |
| Cox | Samuel | Signal Mountain | TN | 37377 | N | 9.24.19 | Y | | | | | X | | |
| Rogers | Stephen M. | Bloomfield | CT | 06002 | N | 9.24.19 | Y | | | | | X | | |
| Frank | Edward W. | Incline Village | NV | 89451 | N | 9.24.19 | Y | | | | | X | | |
| Bonney | William | Watertown | MA | 02472 | N | 9.24.19 | N | X | | | | | | |
| Ware | Lewis | Montgomery | AL | 36106 | N | 9.24.19 | N | X | | | | X | | |
| Dixon III | Francis J. | Middle Grove | NY | 12850 | N | 9.24.19 | N | | | | X | | | |
| Jacobson | Lawrence M. | Portland | OR | 97219 | N | 9.25.19 | N | | | | | X | | |
| Baumbusch | Millie | Atlanta | GA | 30309 | N | 9.25.19 | Y | | | | | X | | |
| Frank | Patrick | Venice | CA | 90291 | N | 9.25.19 | N | X | | | X | X | X | |
| Masie | Catherine | Saratoga Springs | NY | 12866 | N | 9.26.19 | Y | | | | | X | | |
| Horstmann | Cay | Walnut | CA | 91789 | N | 9.26.19 | Y | | | | | X | | |
| Huang | Daniel | New York | NY | 10017 | N | 9.26.19 | Y | | | | | X | | |
| Warihay | Doreen | Cape Coral | FL | 33904 | N | 9.26.19 | Y | | | | | X | X | |
| Bauer | Farrah | Escondido | CA | 92027 | N | 9.26.19 | Y | | | | | X | | |
| Kielian | Gregory | Erie | CO | 80516 | N | 9.26.19 | Y | | | | | X | | |
| Escajeda | Hilary G. | Denver | CO | 80230 | N | 9.26.19 | Y | X | | | | X | | |
| Meier | Jane E. | Bonita | CA | 91902 | N | 9.26.19 | Y | | | | | X | | |
| Bauer | Jeffrey A. | Escondido | CA | 92027 | N | 9.26.19 | Y | | | | | X | | |
| Boggan | Joel C. | Durham | NC | 27705 | N | 9.26.19 | Y | | | | X | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kocak | Jordan | Minneapolis | MN | 55418 | N | 9.26.19 | Y | | | | | X | | |
| Donaldson | Krista | San Francisco | CA | 94107 | N | 9.26.19 | Y | | | | | X | | |
| McLaughlin III | Leo J. | Irvington | NY | 10533 | N | 9.26.19 | Y | | | | | X | | |
| Kirsch | Nah | Nw York | NY | 10010 | N | 9.26.19 | Y | | | | | X | | |
| Offenbach | Seth | Bronx | NY | 10471 | N | 9.26.19 | Y | | | | | X | | |
| Elliott | Stephen F. | Avery | CA | 95224 | N | 9.26.19 | N | | | | | X | | |
| Jackson | Theodore S. | Chicago | IL | 60626 | N | 9.26.19 | Y | X | | | | X | | |
| McCall | William A. | Phoenix | AZ | 85020 | N | 9.26.19 | Y | | | | X | X | | |
| Broughton | Deanne | Brush Prairie | WA | 98606 | N | 9.26.19 | N | | | | X | | | |
| Carpenter | Becky | Kissimmee | FL | 34758 | N | 9.27.19 | Y | | | | X | X | | |
| Richmond | Bert O. | Athens | GA | 30606 | N | 9.27.19 | N | | | | | X | | |
| Richmond | Kay | Athens | GA | 30606 | N | 9.27.19 | N | | | | | X | | |
| Villarreal | Christian | Murrieta | CA | 92562 | N | 9.27.19 | Y | X | | | | X | | |
| Lindgren | Drew | Tacoma | WA | 98402 | N | 9.27.19 | | | | | X | | | |
| Jensen | Eric | Seattle | WA | 98122 | N | 9.27.19 | Y | X | | | X | X | X | |
| Robinson | Eric | Portland | OR | 97239 | N | 9.27.19 | Y | | | | X | X | | |
| Mannacio | Eugene R. | Nvato | CA | 94949 | N | 9.27.19 | Y | | X | X | X | X | X | |
| Brainin | Gary | San Jose | CA | 95117 | N | 9.27.19 | Y | | | | X | X | | |
| Uselmann | Gregory | Hartland | WI | 53029 | N | 9.27.19 | Y | | | | X | X | | |
| Ginzberg | Steven | New York | NY | 10023 | N | 9.27.19 | N | | | | X | X | | |
| Manian | Susan | San Mateo | CA | 94404 | N | 9.27.19 | Y | X | | | | X | | |
| Last | Benjamin | Seattle | WA | 98107 | N | 9.30.19 | Y | | | | X | X | | |
| Rottman | Benjamin | Pittsburgh | PA | 15201 | N | 9.30.19 | Y | | | | | X | | |
| Slayton | Cheryl | Alexandria | VA | 22305 | N | 9.30.19 | Y | | | | | X | | |
| Slayton | Thomas | Alexandria | VA | 22305 | N | 9.30.19 | N | | | | | X | | |
| Pena | Christian | Coral Gables | FL | 33134 | N | 9.30.19 | Y | | | | | X | | |
| Helmsworth | Christopher | Portland | OR | 97223 | N | 9.30.19 | Y | | | | | X | X | |
| Law | David E. | San Diego | CA | 92122 | N | 9.30.19 | Y | | | | | X | | |
| Wimmer | Dean | Telford | PA | 18969 | N | 9.30.19 | N | | | | | X | | |
| Lewis | Deborah E. | Charlottesville | VA | 22902 | N | 9.30.19 | Y | X | | | | X | X | |
| Chabot | Douglas | Bozeman | MT | 59715 | N | 9.30.19 | Y | | | | | X | X | |
| Pomrehn | Gregory | Seattle | WA | 98108 | N | 9.30.19 | Y | | | | | X | | |
| Neal | Harrison | Springfield | VA | 22153 | N | 9.30.19 | Y | | | | | X | | |
| Weedon Jr. | Milton D. | Tyron | NC | 28782 | N | 9.30.19 | Y | | | | | X | | |
| Weedon | Jacquelyn | Tyron | NC | 28782 | N | 9.30.19 | Y | | | | | X | | |
| Aylsworth | Jason | Maricopa | AZ | 85139 | N | 9.30.19 | Y | | | | | X | | |
| Tapp | Jason E. | 76530 Baden-Baden | Germany | | N | 9.30.19 | Y | | | | | X | | |
| Peterson | Jean | Middlebury | CT | 06762 | N | 9.30.19 | Y | X | | X | | X | | |
| Peterson | Walter | Middlebury | CT | 06762 | N | 9.30.19 | Y | X | | X | | X | | |
| Fischer | John G. | Mill Valley | CA | 94941 | N | 9.30.19 | Y | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stevens | John | Taylor | MI | 48180 | N | 9.30.19 | Y | | | | | X | | |
| Theodore | Julia K. | Ocean City | NJ | 08226 | N | 9.30.19 | Y | | | | | X | | |
| Schroeder | Kathleen | Bend | OR | 97702 | N | 9.30.19 | Y | X | | | | X | | |
| Oechslin | Kristin | Charlotte | NC | 28205 | N | 9.30.19 | Y | X | | | X | X | | |
| Peters | Margaret E. | Los Angeles | CA | 90066 | N | 9.30.19 | Y | X | | | | X | | |
| Fong | Nathan | Bel Air | MD | 21015 | N | 9.30.19 | Y | | | | | X | | |
| Brummel | Richard | Kansas City | MO | 64113 | N | 9.30.19 | Y | | | | X | X | | |
| Fischer | Steven | Evanston | IL | 60202 | N | 9.30.19 | Y | | | | X | | | |
| Theodore | Steven C. | Ocean City | NJ | 08226 | N | 9.30.19 | Y | | | | | X | | |
| Bhat | Vijay | San Francisco | CA | 94131 | N | 9.30.19 | Y | | | | X | X | | |
| Szymanski | Witold | New York | NY | 10019 | N | 9.30.19 | Y | | X | | X | | | |
| BruN | George | Manchester | NH | 03101 | N | 9.30.19 | N | | | | X | | | |
| Moscato, Ph.D. | Beth | Indianapolis | IN | 46220 | N | 9.30.19 | Y | | | | X | | | |
| Lang | Ellen F. | Glendale | CO | 80246 | N | 10.1.19 | Y | X | | | | X | | |
| Levinson | Nah | Nrth Abington Twp. | PA | 18414 | N | 10.1.19 | Y | X | | | X | | | |
| Nwyj | Paul | Wynnewood | PA | 19096 | N | 10.1.19 | Y | | | | X | X | | |
| Freeman | Sallie | Richmond | VA | 23225 | N | 10.1.19 | Y | | | | | X | | |
| Miller | David | Portland | OR | 97206 | N | 10.2.19 | Y | | | | | X | | |
| Miller | Sonja | Portland | OR | 97206 | N | 10.2.19 | Y | | | | | X | | |
| Williams | Lisa D. | Newport | OR | 97365 | N | 10.2.19 | Y | X | | | | X | | |
| Tisdale | Sallie | Portland | OR | 97213 | N | 10.2.19 | Y | X | | | | X | | |
| Harding-Estes | Elizabeth | Vestavia Hills | AL | 35216 | N. | 10.2.19 | Y | | | | | X | | |
| Rak | Brian | Piscataway | NJ | 08854 | N | 10.3.19 | Y | X | | | | X | | |
| Rohrbeck | Cynthia | Washington | DC | 20008 | N | 10.3.19 | Y | | | | X | | X | |
| Goering | David K. | Spokane Valley | WA | 99206 | N | 10.3.19 | Y | | X | | X | X | | |
| Peterson | Sonja L. | Spokane Valley | WA | 99206 | N | 10.3.19 | Y | | X | | X | X | | |
| Tam, Esq. | Janice | San Francisco | CA | 94110 | N | 10.3.19 | Y | X | | | X | X | | |
| Kratovil | Jessica | Piscataway | NJ | 08854 | N | 10.3.19 | Y | X | | | X | | | |
| Berry | Ken | San Diego | CA | 92128 | N | 10.3.19 | N | X | | X | | X | | X |
| Heywood | Paul | Boston | MA | 02136 | N | 10.3.19 | Y | | | | | X | | |
| Bobb | Stuart | Loveland | CO | 80538 | N | 10.3.19 | Y | | X | | X | X | | |
| Nrris | Carol P. | Glade Valley | NC | 28627 | N | 10.4.19 | Y | | | | | X | | |
| Van Akkeren | James P. | Sheboygan | WI | 53081 | N | 10.4.19 | Y | | | | | X | | |
| Szum | John W. | Dayton | OH | 45433 | N | 10.4.19 | Y | | | | X | X | | |
| Lederman | Vicki | Summit | NJ | 07901 | N | 10.4.19 | Y | | X | | X | X | | |
| McCormick | Barbara A. | Montclair | NJ | 07043 | N | 10.4.19 | Y | | | | | X | | |
| Hisamune | Chris | Santa Monica | CA | 90403 | N | 10.7.19 | Y | | | | X | X | | |
| Biehl | Christie | St. Augustine | FL | 32084 | N | 10.7.19 | Y | | | | X | | | |
| Gedacht | Daniel C. | DPO, AP | Korea | 96209 | N | 10.7.19 | Y | | | | | X | | |
| Bony | David | Overland Park | KS | 66204 | Y | 10.7.19 | Y | | | | X | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Morris | James | San Mateo | CA | 94402 | N | 10.7.19 | Y | | | X | X | X | | |
| Biehl | Jeffrey | St. Augustine | FL | 32084 | N | 10.7.19 | Y | | | | X | | | |
| McCormick | Kevin | Montclair | NJ | 07043 | N | 10.7.19 | Y | | | | | X | | |
| Nguyen | Ly | San Francisco | CA | 94111 | N | 10.7.19 | Y | X | | | X | X | | |
| LaBelle | Marcella | Manchester | CN | 06040 | N | 10.7.19 | Y | X | | | X | X | | |
| McLane | Margaret | Belleville | NJ | 07109 | N | 10.7.19 | Y | X | | | | X | | |
| Bauer | Michael | San Jose | CA | 95134 | N | 10.7.19 | Y | | | | | X | | |
| Domaratz | Michael A. | Fairport | NY | 14450 | N | 10.7.19 | Y | X | | | | X | | |
| Wise | Rachel | Nrth Wales | PA | 19454 | N | 10.7.19 | Y | | | | | X | X | |
| Farrow | Rik | Sedona | AZ | 86336 | N | 10.7.19 | Y | | | | | X | | |
| Williamson | Ronald D. | Endwell | NY | 13760 | N | 10.7.19 | Y | | X | | X | X | | |
| Klotz | Steven S. | Hollywood | FL | 33020 | N | 10.7.19 | Y | X | | | X | X | X | |
| Einstein | Eric | New York | NY | 10003 | N | 10.8.19 | Y | X | | | | X | | |
| Benton | James C. | Falls Church | VA | 22046 | N | 10.8.19 | Y | X | X | | X | X | X | |
| Ogden | Simon | New York | NY | 10010 | N | 10.8.19 | Y | | | | | X | | |
| Fryberger | Grace | Tucson | AZ | 85716 | N. | 10.10.19 | Y | | X | | | X | X | |
| Franken | Barbara | Montgomery | TX | 77316 | N | 10.11.19 | Y | | | | | X | | |
| Kukuk | Bradley | Alexandria | VA | 22312 | N | 10.11.19 | Y | | | | | X | X | |
| Franken | Govardus | Alexandria | VA | 22312 | N | 10.11.19 | Y | | | | | X | | |
| Wehner | Karen A. | Sarasota | FL | 34236 | N | 10.11.19 | Y | | | | | X | | |
| Sanchez de Boado | Alexi | Hyattsville | MD | 20782 | N | 10.15.19 | Y | | | | X | X | | |
| Seshadri | Amita | San Francisco | CA | 94117 | N | 10.15.19 | Y | X | | | | X | | |
| Peck | Deana S. | Phoenix | AZ | 85016 | N | 10.15.19 | Y | | | | | X | | |
| Love | Gary | Seattle | WA | 98115 | N | 10.15.19 | Y | | | | X | | | |
| Smith | Jack L. | Marana | AZ | 85658 | N | 10.15.19 | Y | | | | | X | | |
| Burns | James M. | Roopville | GA | 30170 | N | 10.15.19 | Y | | | | | X | | |
| Felderman | Reed | Omaha | NE | 68124 | N | 10.15.19 | Y | | | | | X | | |
| Krasny, M.D. | Robert M. | Santa Monica | CA | 90402 | N | 10.15.19 | Y | | | | | X | | |
| Benedict | Sarah | Princeton | NJ | 08544 | N | 10.15.19 | Y | | | | X | X | | |
| Johnson | Victoria | Somerville | MA | 02143 | N | 10.15.19 | Y | | | | | | | |
| Smit | Christine | Bowie | MD | 20720 | N | 10.17.19 | N | X | | | | X | | |
| James | Alan M. | Lititz | PA | 17543 | N | 10.18.19 | N. | X | | | | X | X | |
| Fulmore, Jr. | Booker | Harrisburg | PA | 17111 | N | 10.18.19 | N. | | | X | | | X | |
| Haskell | David G. | Boulder | CO | 80304 | N | 10.18.19 | Y | X | | | X | X | | |
| Korn | Ian | Brooklyn | NY | 11213 | N | 10.18.19 | Y | | | | | X | | |
| Sturges | James C. | Somerville, MA 02144 | MA | 02144 | N | 10.21.19 | Y | X | X | | | X | | |
| Potter | Joey | Windsor Heights | IA | 50324 | N | 10.21.19 | Y | | | | | X | | |
| Piper | Michael H. | Marblehead | MA | 01945 | N | 10.21.19 | Y | | | | | X | | |
| Doyle | Nra | Studio City | CA | 91604 | N | 10.21.19 | Y | X | | | | X | | |
| Berg | Amy | Providence | RI | 02906 | N | 10.22.19 | Y | X | | | | X | X | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Britton | Emma | Dayton | OH | 45433 | N | 10.22.19 | Y | | | | | X | | |
| Judge | J. Peter | Williston | VT | 05495 | N | 10.22.19 | Y | | | | | X | | |
| Meidinger | Paul | Lodi | CA | 95241 | N | 10.22.19 | Y | X | | | | X | X | |
| Ramirez-Coleman | Rosa | Lodi | CA | 95242 | N | 10.22.19 | Y | X | | | | X | X | |
| Gamboro | Jill | Glendale | CA | 91202 | N | 10.23.19 | Y | | | | X | X | | |
| Fulton | Nathan | Cambridge | MA | 02141 | N | 10.24.19 | N | | | | X | X | | |
| Beisel | Monica | San Angelo | TX | 76901 | N | 10.24.19 | Y | | | | | X | | |
| Fields | Alison | Washington | DC | 20008 | N | 10.24.19 | N | X | | | | X | | |
| Tucker | Ezra L. | Portland | OR | 97239 | N | 10.25.19 | Y | | | | X | X | | |
| Wittman | David M. | Davis | CA | 95616 | N | 10.28.19 | Y | | | | | X | | |
| Yip | Filip | New York | NY | 10024 | N | 10.28.19 | Y | X | | | X | | | |
| Mindling | James | Weston | CT | 06883 | N | 10.28.19 | Y | | | | X | X | | |
| Dolence | Jennifer | Centennial | CO | 80122 | N | 10.28.19 | Y | | | | X | X | | |
| Falcone | Kate | Weston | CT | 06883 | N | 10.28.19 | Y | | | | X | X | | |
| Ernst | Leslie | San Francisco | CA | 94109 | N | 10.28.19 | Y | | | | X | X | | |
| Lloyd | Lester | Duxbury | MA | 02332 | N | 10.28.19 | Y | X | | | | X | | |
| Cherepko | Michael | Brooklyn | NY | 11211 | N | 10.28.19 | Y | | | | | | | |
| Dolence | Robert | Centennial | CO | 80122 | N | 10.28.19 | Y | | | | X | X | | |
| Filippelli | Roberto | Largo | FL | 33770 | N | 10.28.19 | Y | | X | | | X | | |
| Laudato | Matthew | Dulles | VA | 20189 | N | 10.30.19 | Y | | | | X | X | | |
| Hart | Jennifer | Chicago | IL | 60615 | N | 10.31.19 | Y | | | | X | X | X | |
| Witt | Brian | Berkeley | CA | 94703 | N | 11.2.19 | Y | X | | | X | X | | |
| Wisler | Dale J. | Atkinson | NH | 03811 | N | 11.4.19 | Y | | | | | X | | |
| Capron | Lori M. | Chandler | AZ | 85248 | N | 11.4.19 | N | | | | | X | | |
| Thomas | Randall S. | Nashville | TN | 37203 | N | 11.4.19 | Y | X | X | | | | X | |
| Capron | Ronald D. | Chandler | AZ | 85248 | N | 11.4.19 | N | | | | | X | | |
| Kurtz | Susan | Conesus | NY | 14435 | N | 11.4.19 | Y | X | | | X | | | |
| Holbrook | Terry | Conesus | NY | 14435 | N | 11.4.19 | Y | X | | | X | | | |
| Vaughan | Anne | Berwick | ME | 03901 | N | 11.4.19 | N | | | | | | | |
| Binder | Brendon | Saginaw | MI | 48603 | N | 11.5.19 | Y | | | | X | | | |
| Hanneke | Mandi Jo | Amherst | MA | 01002 | N | 11.7.19 | Y | X | | | X | X | | |
| Davis | Ryan T. | New York | NY | 10040 | N | 11.7.19 | Y | X | | | X | X | | |
| Vore | Spencer | Longmont | CO | 80501 | N | 11.7.19 | Y | | | | X | X | | |
| Namovic | John J. | Sanibel | FL | 33957 | N | 11.8.19 | Y | | | | | X | | |
| Namovic | Jonathan W. | Sanibel | FL | 33957 | N | 11.8.19 | Y | | | | | X | | |
| Namovic | Leanna M. | Sanibel | FL | 33957 | N | 11.8.19 | Y | | | | | X | | |
| Barbera | Sharon | Scottsdale | AZ | 85260 | N | 11.8.19 | Y | | | | X | X | | |
| ReyNso | Benjamin | San Diego | CA | 92109 | N | 11.12.19 | N | | | | X | X | | |
| Tuttle | Trinity | San Diego | CA | 92109 | N | 11.12.19 | N | | | | X | X | | |
| Levin | Joshua | Brooklyn | NY | 11238 | N | 11.12.19 | Y | X | | | | X | X | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MariN | Michael | New York | NY | 10013 | N | 11.12.19 | Y | X | | | | X | | |
| Basconi | Pamela W. | Versailles | KY | 40383 | N | 11.12.19 | Y | | | | X | X | X | |
| Schumacher | Richard | Richardson | TX | 75083 | N | 11.12.19 | Y | | | | X | | | |
| Tittman | Carol | Danbury | CT | 06811 | N | 11.12.19 | Y | | | | | X | | |
| Boehm | Deborah | Richfield | MN | 55323 | N | 11.15.19 | N | | | | | X | | |
| Cardoza | Justin | ReN | NV | 89523 | N | 11.15.19 | Y | X | | | X | X | | |
| Brown | Michael L. | Galena | OH | 43021 | N | 11.15.19 | Y | | | | | X | | |
| Cantrell | Michael | Athens | GA | 30606 | N | 11.15.19 | Y | | | | X | X | X | |
| Filseth | Paula | Los Gatos | CA | 95033 | N | 11.15.19 | Y | X | X | | X | X | X | |
| Helfand | Steven | Pembroke Pines | FL | 33027 | N | 11.18.19 | Y | | X | X | | | | |
| Shorf | Clifford | The Colony | TX | 75056 | N | 11.18.19 | Y | | | | | X | | |
| Cochran | George W. | Streetsboro | OH | 44241 | N | 11.18.19 | Y | | X | | | X | X | |
| Nrth | Matthew C. | Hampton | VA | 23669 | N | 11.18.19 | Y | | | | X | X | | |
| Richland | Shea R. | Prescott | AZ | 86303 | N | 11.18.19 | Y | | | | | X | X | |
| Davis | John W. | Tampa | FL | 33607 | N | 11.19.19 | Y | | X | | | | X | |
| Attig | David | Savoy | IL | 61874 | N | 11.19.19 | Y | X | | | | X | | |
| Watkins | David R. | Salt Lake City | UT | 84117 | Y | 11.19.19 | Y | | X | | | | X | |
| Banks | Gary | Morrisville | VT | 05661 | N | 11.19.19 | N | X | | X | | X | | |
| Banks | Nancy | Morrisville | VT | 05661 | N | 11.19.19 | N | X | | X | | X | | |
| Frank | Theodore | Washinton | DC | 20006 | Y | 11.19.19 | Y | | X | | | | X | |
| Holyoak | Melissa | Washinton | DC | 20006 | Y | 11.19.19 | Y | | X | | | | X | |
| Kline | Nrma L. | Meadville | PA | 16335 | N | 11.19.19 | Y | | | X | X | X | X | |
| West | Mikell | Corpus Christi | TX | 78413 | Y | 11.19.19 | Y | | X | X | | X | X | |
| Srikanth | Kannan | Columbus | OH | 43202 | N | 11.20.19 | Y | | | | X | X | | |
| Lowell | Austin T. | West Lafayette | IN | 47906 | N | 11.21.19 | Y | | | | | X | X | |
| Wolfe | Charles A. | PlaN | TX | 75075 | N | 11.21.19 | Y | | | | | X | | |
| Komen | Daniel | San Francisco | CA | 94117 | N | 11.21.19 | Y | X | | | | X | | |
| Semsak | Daniel A. | Bellingham | WA | 98229 | N | 11.21.19 | Y | | | | | X | | |
| Struse | Heidi | Albuquerque | NM | 87016 | N | 11.21.19 | Y | | | | | X | | |
| Myers | John F. | Clarkston | GA | 30021 | N | 11.21.19 | Y | X | | | | X | X | |
| Loo | Jonathan D. | Germantown | MD | 20874 | N | 11.21.19 | Y | X | | X | | X | | |
| Boone | Stephen | Long Beach | NJ | 07740 | N | 11.21.19 | Y | | | | | X | | |
| Schomburg | Susan | Chicago | IL | 60601 | N | 11.21.19 | Y | X | | | X | X | | |
| Shaffner | Thomas | Highlands | NC | 28741 | N | 11.21.19 | Y | X | | X | | X | | |
| Kaneko | Tomoe | Malden | MA | 02148 | N | 11.21.19 | Y | | | | X | X | | |
| Deschaux | Zachary | Malden | MA | 02148 | N | 11.21.19 | Y | | | | X | X | | |
| Fidler | Zackory | Commercial Point | OH | 43116 | N | 11.21.19 | Y | | | | | X | | |
| Lang II | Charles | Chicago | IL | 60619 | N | 11.22.19 | N | | | | | X | | |
| Andrews | Christopher | Livonia | MI | 48153 | N | 11.22.19 | N | X | X | X | X | X | X | |
| Lewis | Christopher | Weston | CT | 06883 | N | 11.22.19 | Y | | | | X | | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grenier | John | Naperville | IL | 60564 | N | 11.22.19 | N | | | | X | | | |
| Lu | Kathleen | Berkeley | CA | 94703 | N | 11.22.19 | Y | | | | | X | | |
| Brough | Sandra | Greensboro | MD | 21639 | N | 11.22.19 | Y | | | | | X | | |
| Befort | Arlinda | Oakland | CA | 94611 | N | 11.22.19 | Y | | | X | | X | | |
| Scheffler | Troy | Merrifield | MN | 56465 | Y | 11.25.19 | Y | | X | X | X | X | X | |
| Anecito | Scott | Chandler | AZ | 85248 | N | 11.25.19 | N | | | | | X | | |
| Sarnie | Christian | Brighton | MA | 02135 | N | 11.25.19 | N | | | X | | X | X | |
| Walton | Jeffrey | Pasadena | MD | 21122 | N | 11.25.19 | N | | | | | X | X | |
| Webster | Kimberly | New Paltz | NY | 12561 | N | 11.25.19 | Y | | X | | | X | | |
| Searles | Queen | Burbank | CA | 91510 | N | 11.25.19 | N | | | | | X | X | |
| Goswami | Subrata | Milpitas | CA | 95035 | N | 11.26.19 | Y | | | | X | | X | |
| Sprowles | Mary | Fair Oaks | CA | ? | N | 11.22.19 | N | | | | | X | | |
| O'Neil | David | Garner | NC | ? | N | 11.22.19 | N | | | | X | | | |
| Farrell | Theresa | Highland | CA | ? | N | 11.22.19 | N | | | | X | X | | |
| Trogdon-Livingston | Loretta | Gastonia | NC | ? | N | 11.22.19 | N | | | | | X | | |
| Koehn | Beth | Milwaukee | WI | ? | N | 11.22.19 | N | | | | | X | | |
| Martin | Daniel | San Antonio | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Gurney | Michael | Tustin | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Bendiksen | Lauren | Allen | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Shapiro | Ralph F. | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Walton | Deane | Nrownsville | TN | ? | N | 11.22.19 | N | | | | | X | | |
| Hasley-Eanes | Kourtney | Graham | TX | 76450 | N | 11.22.19 | N | | | | | X | | |
| Baumbach | Robert | Surprise | AZ | 85374 | N | 11.22.19 | N | | | | | X | | |
| Lindemann | Jennifer | West Fargo | ND | | N | 11.22.19 | N | | | | | X | | |
| Ashley | Wendy | Newburgh | IN | 47630 | N | 11.22.19 | N | | | | | X | X | |
| Hartley | David | Gig Harbor | WA | 98335 | N | 11.22.19 | N | | | | X | | | |
| Clifton | Latesha R. | Chicago | IL | 60640 | N | 11.22.19 | N | | | | | X | | |
| Cordwell | Robert | Menlo Park | CA | 94025 | N | 11.22.19 | N | | | | | X | | |
| Friend | Brenda | Jacksonville | MI | 49201 | N | 11.22.19 | N | | | | | | | X |
| Feeney | Patrick | Chicago | IL | 60657 | N | 11.22.19 | N | | | | X | | | |
| Smith | Melissa | Sugar Hill | GA | 30518 | N | 11.22.19 | N | | | | X | | | |
| Fowler | Gloria | South Holland | IL | ? | N | 11.22.19 | N | | | | | | | X |
| Krogman | Sandra | ? | ? | ? | N | 11.22.19 | N | | | | | | X | X |
| Hill | Sarah | Boynton Beach | FL | 33436 | N | 11.22.19 | N | | | | | | | X |
| Maynard | Rickey | Clinton Township | MI | ? | N | 11.22.19 | N | | | | | X | X | X |
| Jenson | Ashley | Wescosville | PA | 18106 | N | 11.22.19 | N | X | | | | X | | |
| Hill | Ashley | Archer | FL | 32618 | N | 11.22.19 | N | | | | X | X | | X |
| Hauk | Randall | Seattle | WA | ? | N | 11.22.19 | N | | | | X | | | X |
| Hagey | Mary Jo | Gladwin | MI | ? | N | 11.22.19 | N | | | | X | | | |
| Casello | Jon | Vail | AZ | ? | N | 11.22.19 | N | | | | X | | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Nitce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Saltzman | Zachary | New York | NY | 10023 | N | 11.22.19 | N | | | | | | X | X |
| Rhyne | Brenda | Big Spring | TX | ? | N | 11.22.19 | N | | | | | X | X | X |
| Thompson | Valorie | Church Hill | TN | 37642 | N | 11.22.19 | N | | | | X | X | | |
| Cunneen | Jeanna | Villa Park | IL | ? | N | 11.22.19 | N | | | | | | | X |
| Scroggins | JoAnna | Borger | TX | 79007 | N | 11.22.19 | N | | | | | X | | |
| JovaNvic | Dejan | Brooklyn | NY | 11217 | N | 11.22.19 | N | | | | | | X | X |
| Wllson | Matthew | Bandy | VA | ? | N | 11.22.19 | N | | | | X | X | | |
| Mitchell | Linda` | Valparaiso | IN | ? | N | 11.22.19 | N | | | | | X | | |
| Gilliam | Joanna | Kinsman | OH | ? | N | 11.22.19 | N | | | | | X | | |
| Golden | Kara | Wyandotte | MI | 48192 | N | 11.22.19 | N | | | | | X | | |
| ChagNn | Armand | Orlando | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Compton | Cheryl | Trenton | OH | 45067 | N | 11.22.19 | N | X | | | | X | | |
| Carney | Roxanne | Sebastian | FL | 32958 | N | 11.22.19 | N | | | | | X | | |
| Coulter | Crystal | Clay | WV | 25043 | N | 11.22.19 | N | | | | | X | | |
| Martin | Jeremy | Joplin | MO | 64801 | N | 11.22.19 | N | | | | | | | X |
| Carla | Irmen | Springfield | MO | 65804 | N | 11.22.19 | N | | | | | | | X |
| Marquardt | Jonathan | Miami Lakes | FL | ? | N | 11.22.19 | N | | | | X | X | | |
| Diaz | Pedro | Lompoc | CA | 93436 | N | 11.22.19 | N | | | | X | X | | |
| Spicher | Kristina | Port Orchard | WA | 98367 | N | 11.22.19 | N | | | | | X | | |
| Hsu | Chao Hsin | Frisco | TX | 75033 | N | 11.22.19 | N | | | | | | | X |
| Bouchard | Dina | Johnston | RI | ? | N | 11.22.19 | N | X | | | | | | |
| Chambers | Rachael | Dyer | IN | 46311 | N | 11.22.19 | N | | | | | X | X | X |
| DeSmit | Erin | Watauga | TX | ? | N | 11.22.19 | N | X | | | | X | | |
| Wendt | Alan | Tucson | AZ | 85712 | N | 11.22.19 | N | | | | | X | | |
| Meegan | Rebecca | Markham | IL | 60428 | N | 11.22.19 | N | | | | | X | | |
| ZeNNs | Leonidas | Orleans | VT | 05860 | N | 11.22.19 | N | | | | | | X | X |
| Casey | Kathy | Siloam Springs | AR | ? | N | 11.22.19 | N | | | | | X | | |
| Truesdell | Lydia | Niagra Falls | NY | 14304 | N | 11.22.19 | N | X | | | X | X | | |
| Wilcoxon | Bruce | Gilbert | AZ | 85295 | N | 11.22.19 | N | | | | X | X | | |
| Li | Rosa | Durham | NC | ? | N | 11.22.19 | N | | | | X | | | |
| Hardy | Carissa | Dayton | OH | 45439 | N | 11.22.19 | N | | | | | X | | |
| Bischop | Lorna | Yuba City | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Smith | Yvonne | Fremont | OH | 43420 | N | 11.22.19 | N | | | | X | | | |
| Ciccaglione | Adele | Kings Park | NY | ? | N | 11.22.19 | N | | | | X | | | |
| Dunaway | Daniel | Fond du lac | WI | 54935 | N | 11.22.19 | N | | | | X | X | | |
| Mamone | James | Bridgeton | NJ | ? | N | 11.22.19 | N | | | | | X | | |
| Richardson | Marcus | Mobile | AL | 36613 | N | 11.22.19 | N | X | | | | X | | |
| Stephens | Lynda | Charlotte | NC | 28270 | N | 11.22.19 | N | | | | X | X | | |
| Worden | Robert | Clearwater | FL | 33763 | N | 11.22.19 | N | | | | X | | | |
| Clayton | Laurence | Littleton | MA | 01460 | N | 11.22.19 | N | X | | | | X | X | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hawker | Jordan | Hayward | CA | 94541 | N | 11.22.19 | N | | | | X | X | X | |
| Aaron | Matthew | Kensington | MD | ? | N | 11.22.19 | N | X | | | | X | | |
| Smith | Donald | Philadelphia | PA | 19136 | N | 11.22.19 | N | | | | | X | | |
| Hobbs | Jared | St. Charles | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Zielinski | Vincent | Oroville | CA | 95966 | N | 11.22.19 | N | | X | | X | X | | |
| Apjok | Scott | Troutville | VA | 24175 | N | 11.22.19 | N | | | | X | X | | |
| Vannett | Elizabeth | Helotes | TX | ? | N | 11.22.19 | N | | | | | | X | X |
| Bobko | Joseph | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Tuttle | Lori | Hillsboro | NH | 03244 | N | 11.22.19 | N | | | | X | | X | |
| Ketring | Heather | Victorville | CA | 92394 | N | 11.22.19 | N | | | | X | X | | |
| Walsh | Cassey | Branford | CT | 06405 | N | 11.22.19 | N | | | | | X | | |
| Ort | Tina | Deltona | FL | 32725 | N | 11.22.19 | N | | | | | X | | |
| Bayne | Dustin | Lancaster | CA | ? | N | 11.22.19 | N | | | | | X | X | |
| Trobliger | Robert | Fords | NJ | ? | N | 11.22.19 | N | | | | | X | | |
| Wagner | Shaun | Arlington | TX | 76010 | N | 11.22.19 | N | | | | X | | | |
| Gockley | Lovella | La Grande | OR | ? | N | 11.22.19 | N | | | | | | | X |
| Sheehan | Christine | Joliet | IL | 60435 | N | 11.22.19 | N | | | | | | | X |
| Buche | Ronald | Valparaiso | IN | 46383 | N | 11.22.19 | N | | | | | X | | |
| Meyer | Amanda | Shawnee | KS | ? | N | 11.22.19 | N | | | | | X | | |
| Compton | Avery | Tucson | AZ | ? | N | 11.22.19 | N | | | | X | | | |
| Arnwine | Brandon | Kodak | TN | ? | N | 11.22.19 | N | | | | | X | | |
| Stoecker | Andrew | Encinitas | CA | 92024 | N | 11.22.19 | N | | | | | X | | |
| Dover | Kenneth | Hot Springs | AR | 71901 | N | 11.22.19 | N | | | | | | X | X |
| Beavers | James | Cockeysville | MD | 21030 | N | 11.22.19 | N | | | | | X | X | |
| Jean-Baptiste | Annjeannette | Brooklyn | NY | 11213 | N | 11.22.19 | N | | | | X | X | | |
| Douglas | Phillip | Waddell | AZ | 85355 | N | 11.22.19 | N | | | | X | X | X | |
| Cobb | Debra | Ellenwood | GA | ? | N | 11.22.19 | N | | | | | X | | |
| Maese | Santiago | South Jordan | UT | ? | N | 11.22.19 | N | | X | | X | X | | |
| Gordon | Karen | San Mateo | CA | 94401 | N | 11.22.19 | N | | | | | X | X | |
| Monahan | Sara | Cave Creek | AZ | ? | N | 11.22.19 | N | | | | | X | | |
| Peterson | Robert | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Sypal | Christine | Lincoln | NE | 68510 | N | 11.22.19 | N | | | | | X | | |
| Talley | Curtis | Mesquite | NV | ? | N | 11.22.19 | N | | | | | X | | |
| Jacobus | Juliann | Phoenix | AZ | 85019 | N | 11.22.19 | N | | | | | | | X |
| Falk | Melissa | Webster | TX | 77598 | N | 11.22.19 | N | | | | | X | | |
| Turner | George | Rutherfordton | NC | ? | N | 11.22.19 | N | | | | X | | | |
| Scheriff | John | Babylon | NY | 11704 | N | 11.22.19 | N | X | | | | | | |
| Navarro | Christina | Highland | NY | 12528 | N | 11.22.19 | N | | | | | X | | |
| Beko | Sharon | Naples | FL | 34120 | N | 11.22.19 | N | | | | | X | | |
| Whitlock | Kevin | Interlachen | FL | 32148 | N | 11.22.19 | N | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Schnabel | Bret | Sparta | MI | ? | N | 11.22.19 | N | | | | | | X | X |
| Rebeta | Michael | Cleveland | OH | ? | N | 11.22.19 | N | | | | | | | X |
| Brust | Stephen | Snellville | GA | ? | N | 11.22.19 | N | | | | | | X | X |
| Hamilton | Jason | McKinney | TX | ? | N | 11.22.19 | N | | | | | | X | X |
| Lindsey | Wesley | Tulsa | OK | ? | N | 11.22.19 | N | | | | | X | | |
| Martin | Patrice | Baldwinville | MA | 01436 | N | 11.22.19 | N | | | | | X | | |
| Reid | Matthew P. | New York | NY | 10024 | N | 11.22.19 | N | | | | | X | X | |
| Young | Melissa | Jacksonville | FL | 32210 | N | 11.22.19 | N | | | | | X | | |
| Walker | Breset | New York | NY | ? | N | 11.22.19 | N | | | | | X | | |
| Jones | Eric | Elysburg | PA | 17824 | N | 11.22.19 | N | | | | X | | X | |
| Amador | Raymundo | Edinburg | TX | 78542 | N | 11.22.19 | N | | | | | | X | X |
| Hoffman | Fred | Granite City | IL | 62040 | N | 11.22.19 | N | | | | | X | | |
| Whiteman | Candace | Halfmoon | NY | 12065 | N | 11.22.19 | N | X | | | | X | | |
| Ussery | Gary | Wellford | SC | ? | N | 11.22.19 | N | | | | | X | | |
| Hughes | Paula | Lombard | IL | ? | N | 11.22.19 | N | | | | | | | X |
| Carrow | Paulette | Lancaster | CA | 93535 | N | 11.22.19 | N | | | | | X | | |
| Passeri | Joseph | Worcester | MA | 01606 | N | 11.22.19 | N | | | | | X | X | |
| Martin | Jeremy | Euless | TX | 76040 | N | 11.22.19 | N | | | | | X | | |
| Mason | Julia | Fairfax | VA | 22030 | N | 11.22.19 | N | | | | | X | | |
| Edmonds | James | Hudson | MA | 01749 | N | 11.22.19 | N | | | | X | | X | |
| Linscheid | Matthew | Vancouver | WA | 98665 | N | 11.22.19 | N | | | | | X | X | |
| Wolfe | John | Seattle | WA | 99122 | N | 11.22.19 | N | | | | | X | X | |
| Wilcoxson | Jane | Woodward | OK | ? | N | 11.22.19 | N | | | | | X | | |
| Sullivan | Sean | Arlington | VA | 22204 | N | 11.22.19 | N | | | | X | | | |
| Uhl | Jenna | Rochester | NY | 14622 | N | 11.22.19 | N | | | | X | | | |
| HaY | Cara | Rock Hill | SC | 29732 | N | 11.22.19 | N | | | | X | | | |
| Garey | Deanna | Tomball | TX | ? | N | 11.22.19 | N | | | | | | | X |
| Hatfield | Randall | Hope | AR | 71801 | N | 11.22.19 | N | | | | | | | X |
| Starr | Danielle | Houston | TX | 77079 | N | 11.22.19 | N | | | | | X | X | |
| Waits | Kattina | Dublin | TX | 76446 | N | 11.22.19 | N | | | | X | | | |
| Roth | Margaret | Havertown | PA | 19083 | N | 11.22.19 | N | X | | | X | | | |
| Wilson | Elaine | Manassas | VA | ? | N | 11.22.19 | N | X | | | | X | | |
| Neyman | Yelena | Richmond Hts. | OH | 44143 | N | 11.22.19 | N | | | | | | | X |
| Stonebarger | Gilbert | Henderson | NV | ? | N | 11.22.19 | N | | | | | X | | |
| Collier | Clarence | Spartanburg | SC | 29301 | N | 11.22.19 | N | | | | X | | | |
| Barnes | Angela | Huntsville | AL | 35802 | N | 11.22.19 | N | | | | X | | | |
| DeWitt | Holly | Olympia | WA | 98501 | N | 11.22.19 | N | | | | X | X | | |
| Starr | Stephen | Ambler | PA | ? | N | 11.22.19 | N | | | | | | X | X |
| Slater | Caleb Olin | Davenport | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Snell | Rachel | Billings | MT | 59102 | N | 11.22.19 | N | | | | | | | X |

Current 12.5.2019

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Orlando | Dominic | Lisle | IL | ? | N | 11.22.19 | N | | | | X | | X | |
| Mitchell | Richard | Bay Saint Louis | MS | 39520 | N | 11.22.19 | N | | X | | | X | | |
| Eveland | Clark | Fairfield | OH | 45014 | N | 11.22.19 | N | | | | | | X | X |
| Hemphill | Morgan | Tualatin | OR | 97062 | N | 11.22.19 | N | | | | X | | | |
| Hofhenke | Casey | Willows | CA | 95988 | N | 11.22.19 | N | | | | | | | X |
| Ramey | Melissa | Lexington | GA | ? | N | 11.22.19 | N | | | | X | | | |
| Sides | Tracy | Dallas | TX | 75214 | N | 11.22.19 | N | | | | X | | X | |
| Woodson | Steve | Nrth Kansas City | MO | ? | N | 11.22.19 | N | X | | | | | | |
| Patton | Josh | Birmingham | AL | 35242 | N | 11.22.19 | N | | | | | X | | |
| Goodman | Jeremy | NE Shoreline | WA | 98155 | N | 11.22.19 | N | | | | | X | | |
| Margelony | Leah | Manchester | CT | 06042 | N | 11.22.19 | N | | | | | X | | |
| Davis IV | Alvin | Gainesville | FL | 32641 | N | 11.22.19 | N | | | | X | | | |
| Dirnbach | Mitchell | Fullerton | CA | 92835 | N | 11.22.19 | N | | | | | X | | |
| Allen | Darnell | Coeur d alene | ID | 83814 | N | 11.22.19 | N | | | | X | | | |
| Cid | Yvette | Jersey City | NJ | 07305 | N | 11.22.19 | N | | | | | | | X |
| Zapata | Richard | Corpus Christi | TX | 78415 | N | 11.22.19 | N | | | | | X | X | |
| Yeast | Emily | Clarksville | TN | 37042 | N | 11.22.19 | N | | | | X | X | X | |
| Henion | Nancy | Augusta | ME | ? | N | 11.22.19 | N | | | | | X | | |
| Sanders | Dawn | Carmichael | CA | 95608 | N | 11.22.19 | N | | | | | X | | |
| Molenda | J. Scott | Buffalo | NY | 14214 | N | 11.22.19 | N | | | | X | | | |
| Barnes | Joel | Colchester | VT | ? | N | 11.22.19 | N | | | | X | | | |
| Plumb | Peter | Puyall | WA | 98375 | N | 11.22.19 | N | | | | | | | X |
| Pevey | William | Pembroke | GA | 31321 | N | 11.22.19 | N | | | | | X | | |
| Cheskie | Peter | Oshkosh | WI | 54904 | N | 11.22.19 | N | | | | X | | | |
| Marshall | Robert | Ortonville | MI | ? | N | 11.22.19 | N | | | | | X | X | |
| Yetter | Nancy | Jersey Village | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Tomlinson | Linda | Wellsboro | PA | 16901 | N | 11.22.19 | N | | | | | X | | |
| Anderson | Michelle | Orchards | WA | 99027 | N | 11.22.19 | N | | X | | | X | | |
| Cunningham | Rachel | El Centro | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Stoner | Allison | Fort Lauderdale | FL | 33308 | N | 11.22.19 | N | X | | | | X | | |
| Firestone | Dylan | Avon Lake | OH | 44012 | N | 11.22.19 | N | | | | | | | X |
| Womble | Franklin | Cincinnati | OH | ? | N | 11.22.19 | N | | | | X | X | | |
| Keri | RiteNur | Strasburg | VA | ? | N | 11.22.19 | N | | | | | X | X | |
| Jenkins | Terry | Sunrise Beach | MO | 65079 | N | 11.22.19 | N | | | | | X | | |
| Cicki | Sanders | Hudson | FL | 34667 | N | 11.22.19 | N | | | | X | | | |
| Scales | Stacy | Napa | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Minick | Robert | Hamilton | OH | 45013 | N | 11.22.19 | N | | | | X | | | |
| Bateman | Ricky | Wausau | WI | 54401 | N | 11.22.19 | N | | | | X | | | |
| Arrants | Andrew | Port Orchard | WA | ? | N | 11.22.19 | N | | | | X | X | | |
| Dollhopf | Jeffrey | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Praden | Michele | Mobile | AL | 36609 | N | 11.22.19 | N | | | | | | X | X |
| Anderson | Patricia | Princeton | NC | 02756 | N | 11.22.19 | N | | | | | X | X | |
| Long | Terrence | Chicago | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Franklin | Alexander | Lincoln | CA | 95648 | N | 11.22.19 | N | | | | | X | | |
| Goodnight | Belinda | Jackson | GA | 30233 | N | 11.22.19 | N | | | | | | X | X |
| Bretholtz | Michael | New Haven | CT | 06511 | N | 11.22.19 | N | | X | | X | X | | |
| Holloway | Doris | Shreveport | LA | 71106 | N | 11.22.19 | N | | | | | | | X |
| Barnett | David C. | Chicago | IL | 60640 | N | 11.22.19 | N | | | | X | X | | |
| Mims | Ronda | Riverside | CA | 92503 | N | 11.22.19 | N | | | | X | | | |
| MacDonald | Nicholas | Quincy | MA | 02169 | N | 11.22.19 | N | | | | | X | X | |
| Huettig | Steven | Hazelton | ID | 83335 | N | 11.22.19 | N | | | | X | | | |
| Wright | Jonathan | Nashville | TN | ? | N | 11.22.19 | N | | | | X | | | |
| Dixon | Clarence | Fort Worth | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Saxton | April | Broken Arrow | OK | 74012 | N | 11.22.19 | N | X | | | | X | | |
| Quinn | Alison | Tallahassee | FL | 32303 | N | 11.22.19 | N | | | | | X | | |
| Reskiewicz | Sue | ? | ? | ? | N | 11.22.19 | N | X | | | | | | |
| Smith | Mary | Baxter Springs | KS | 06671 | N | 11.22.19 | N | | | | | | | X |
| Hutchinson | Cullen | Haymarket | VA | 20169 | N | 11.22.19 | N | | | | | X | | |
| Wiegand | Amy | White Plains | NY | 10606 | N | 11.22.19 | N | X | | | | X | | |
| Gardner | Anthony | Spring Hill | FL | 34606 | N | 11.22.19 | N | | | | | X | | |
| Smith | Jacqueline | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Nickerson | Desirea | Katy | TX | 77449 | N | 11.22.19 | N | | | | | | | X |
| Starling | Mike | Johnston City | IL | 62951 | N | 11.22.19 | N | | | | | | X | X |
| Strobl-Ban | Heidi | Southfield | MI | 48033 | N | 11.22.19 | N | | | | | | | X |
| Fish | Clarissa | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Chamberlain | Ruth | Etters | PA | 17319 | N | 11.22.19 | N | | | | X | | | |
| Thomas | John | Mineola | ? | 11501 | N | 11.22.19 | N | | | | X | | | |
| Salsman | Carolyn | Hot Springs | AR | 71913 | N | 11.22.19 | N | | | | | | X | X |
| James | Donald | Lafayette | CA | 94549 | N | 11.22.19 | N | | | | X | X | | |
| Fink | Richard | Andover | MA | ? | N | 11.22.19 | N | | | | X | X | | |
| Mulins | Steven | Richardson | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Hinzman | Joseph | Petersburg | TN | 37144 | N | 11.22.19 | N | | | | | X | | |
| Smith | Amy | Sebring | FL | 33870 | N | 11.22.19 | N | X | | | | X | | |
| Ward | Ryan | Broken Bow | NE | ? | N | 11.22.19 | N | | | | | X | | |
| Permar | Jeffrey | Reidsville | NC | 27320 | N | 11.22.19 | N | | | | X | X | | |
| Marx | John | Smithtown | NY | ? | N | 11.22.19 | N | | | | | | | X |
| Zyph-Hursh | Katherine | Prosser | WA | 99350 | N | 11.22.19 | N | | | | | | | X |
| Stone | Roger | Peoria | IL | ? | N | 11.22.19 | N | | | | X | | | |
| Ledbetter | Richard | ? | ? | ? | N | 11.22.19 | N | | | | | | X | X |
| Morton | Corwin | Rulo | NE | ? | N | 11.22.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Johnston | Jennifer | Jacksonville | FL | ? | N | 11.22.19 | N | | | | X | | | |
| Dominguez | Oscar | Miami | FL | ? | N | 11.22.19 | N | | | | | | X | X |
| Holden | Mark | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Hicks | Aletha | Dallas | TX | ? | N | 11.22.19 | N | | | | X | | | |
| Ginn | Marie | Foley | AL | ? | N | 11.22.19 | N | | | | | | | X |
| Hawkins | Ellen | Warwick | RI | 02893 | N | 11.22.19 | N | | | | X | X | | |
| Lewis | Frederick | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Flinchbaugh | Tom | Myrtle Beach | SC | 29579 | N | 11.22.19 | N | | | | | X | | |
| Colville | Zalfen | Independence | MO | 64054 | N | 11.22.19 | N | | | | | X | | |
| Branch | Amy | Tarentum | PA | ? | N | 11.22.19 | N | | | | | X | | |
| Gray | Walter | Berkeley | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Gilbert | Cindy | Indianapolis | IN | 46268 | N | 11.22.19 | N | | | | | X | X | |
| Endicott | Laura | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Steele | Michael | Redding | CA | ? | N | 11.22.19 | N | | | | X | X | X | |
| Thompson | Zach | Denver | CO | 80222 | N | 11.22.19 | N | | | | X | | X | |
| Namoski | Christine | Brunswick | OH | 44212 | N | 11.22.19 | N | | | | | | | X |
| Hearlihy | David | Maineville | OH | 45039 | N | 11.22.19 | N | | | | X | X | | |
| Fox | William | LebaNn | TN | ? | N | 11.22.19 | N | | | | X | | X | |
| Gonzales | Savanna | San Antonio | TX | 78253 | N | 11.22.19 | N | | | | | | | X |
| Gokey | Lynda | Superior | WI | ? | N | 11.22.19 | N | | | | | X | | |
| Moore | Mary | Palm Bay | FL | 32905 | N | 11.22.19 | N | | | | | | | X |
| Reque | Peter | San Francisco | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Sardinha | Carol | Ansonia | CT | ? | N | 11.22.19 | N | | | | X | X | | |
| Newby | Robert | Jersey City | NJ | 07304 | N | 11.22.19 | N | | | | | X | | |
| Thomas | Sheena | Des Moines | IA | ? | N | 11.22.19 | N | | X | | | X | | |
| Bell | Michael | Goodyear | AZ | 85338 | N | 11.22.19 | N | X | | | | X | | |
| Onkst | Claudia | Santa Clarita | CA | 91351 | N | 11.22.19 | N | | | | | X | | |
| Lowden | Brandon | New York | NY | 10034 | N | 11.22.19 | N | | | | X | | | |
| Unick | Lee | Lynden | WA | 98264 | N | 11.22.19 | N | | | | | X | | |
| Tenant | Kristin | West Allis | WI | 53227 | N | 11.22.19 | N | | | | | | | X |
| Bennett | Kenneth | Gordonsville | VA | 22942 | N | 11.22.19 | N | | | | | X | | |
| Crouch | Julianne | Southhaven | MA | 38671 | N | 11.22.19 | N | | | | | X | | |
| Lee | Kenneth | Hyde Park | MA | 02136 | N | 11.22.19 | N | | | | | X | | |
| Paslay | Judy | Malakoff | TX | 75148 | N | 11.22.19 | N | | | | X | | | |
| Neuman | Alex | East Windsor | NJ | ? | N | 11.22.19 | N | | | | | X | | |
| Mongiat | James | Stone Mountain | GA | ? | N | 11.22.19 | N | | | | | X | | |
| Rogers | Carrie | Mount Laurel | NJ | 08054 | N | 11.22.19 | N | | | | | X | | |
| Allred | Loretta | Shores | MI | 48081 | N | 11.22.19 | N | | | | | X | | |
| Thomas | Tuesday | Los Angeles | CA | 90016 | N | 11.22.19 | N | | | | | X | | |
| Daley | Steven | Tempe | AZ | 85282 | N | 11.22.19 | N | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Nitce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Turner | David | Tallahassee | FL | 32310 | N | 11.22.19 | N | | X | | | X | | |
| Smith | Nathaniel | Brooklyn | NY | 11222 | N | 11.22.19 | N | | | | | | X | X |
| Jordan | Lisa | Sterling | VA | 20164 | N | 11.22.19 | N | | | | X | X | | |
| Cheever | Melissa | Chehalis | WA | 98532 | N | 11.22.19 | N | | | | | | X | |
| Macabata | Ryan | FPO | AE | 09834 | N | 11.22.19 | N | | | | | | X | X |
| Allman | Stacy | Rapid City | SD | 57702 | N | 11.22.19 | N | | | | | X | | |
| O'Hara | Catherine | Nrth Tonawanda | NY | ? | N | 11.22.19 | N | | | | | | X | X |
| Carney | Kristi | Warrenville | SC | 29851 | N | 11.22.19 | N | | | | | X | | |
| Preston | Debra | Orlando | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Weimann | RC | Mims | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Delgado | Yenia | Chicago | IL | 60609 | N | 11.22.19 | N | | | | | | X | X |
| Costa | Yvonne | Halifax | MA | 02338 | N | 11.22.19 | N | | X | | | | | |
| Ramirez | Michael | ? | ? | ? | N | 11.22.19 | N | | | | | | X | X |
| Lowe | James | Crestwood | KY | 40014 | N | 11.22.19 | N | | | | | X | | |
| Garrant | Michelle | Plattsburg | NY | 12901 | N | 11.22.19 | N | X | | | | | | |
| Wysocki | John | Farmington Hills | MI | 48335 | N | 11.22.19 | N | X | | | | X | X | |
| Lisk | Bernard | Seneca Falls | NY | 13148 | N | 11.22.19 | N | | | | | | X | X |
| Taylor | Karen | Fort Worth | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Moore | Mark | Seneca | SC | 29672 | N | 11.22.19 | N | | | | | | X | X |
| Sallis | Randal | LebaNn | TN | 37087 | N | 11.22.19 | N | | | | | | | X |
| Shunk | Kathleen | Dayton | OH | 45419 | N | 11.22.19 | N | | | | X | X | | |
| Gillin | Kathleen | Berwyn | IL | 60402 | N | 11.22.19 | N | | | | | X | | |
| Ludolph | Mark | Rockford | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Toler | Lisa | Pomona | MO | 65789 | N | 11.22.19 | N | | | | X | X | X | |
| Richards | Melissa | Dayton | OH | 45415 | N | 11.22.19 | N | | | | | X | | |
| Brinkherhoff | Susan | Taylors | SC | 29687 | N | 11.22.19 | N | | | | | | X | X |
| MoreN | Eric | ? | ? | | N | 11.22.19 | N | | | | | X | | |
| Rusher | Mitchell | Boca Raton | FL | 33487 | N | 11.22.19 | N | | | | X | | | |
| Murch | Deborah | Nrth Chelmsford | MA | ? | N | 11.22.19 | N | | | | | | | X |
| Hernandez | Yvonne | Las Vegas | NV | ? | N | 11.22.19 | N | | | | | X | | |
| Sokol | Matthew | MagNlia | TX | ? | N | 11.22.19 | N | X | | | | X | | |
| Reznichek | Patricia | Manitowoc | WI | 54220 | N | 11.22.19 | N | | | | | X | | |
| Laneruot | Lawrence | Ashtabula | OH | 44005 | N | 11.22.19 | N | | | | X | X | X | |
| Jones | Jack | Anderson | IN | 46016 | N | 11.22.19 | N | | | | X | | X | |
| Marks | Marcia | Santa Clarita | CA | 91351 | N | 11.22.19 | N | | | | | X | | |
| Lanier | Dawn | Monroe | MI | ? | N | 11.22.19 | N | | | | | | | X |
| Vanet | Judi | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Luebke | Angela | Blythe | CA | 92225 | N | 11.22.19 | N | X | | | | X | X | |
| Scribner | John | Sacramento | CA | ? | N | 11.22.19 | N | | | X | | X | | |
| Johnson | Kara | Mishawaka | IN | 46544 | N | 11.22.19 | N | | | | | | X | X |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trimborn | Georg | Skokie | IL | ? | N | 11.22.19 | N | X | | | | X | | |
| Malone | Evelyn | East Liverpool | OH | ? | N | 11.22.19 | N | | | | | X | X | |
| Downing | Chris | Louisberg | NB | 27549 | N | 11.22.19 | N | | | | | X | X | |
| Grieper | Robert | Plantation | FL | 33324 | N | 11.22.19 | N | | | | X | | | |
| Schwab | Judyann | Forest | IL | ? | N | 11.22.19 | N | | | | | X | X | |
| Floyd | Karen | Blacklick | OH | ? | N | 11.22.19 | N | | | | | X | | |
| Fritschi | Susan | Mishawaka | IN | ? | N | 11.22.19 | N | | | | X | | | |
| Miller | Matthew | Cullman | AL | ? | N | 11.22.19 | N | | | | | X | | |
| Adams | Elizabeth | Americus | GA | ? | N | 11.22.19 | N | | | | | X | | |
| Faircloth | Michelle | Clayton | NC | 27520 | N | 11.22.19 | N | | X | | | X | | |
| Day | Elaine | DeFuniak | FL | 32433 | N | 11.22.19 | N | | | | | X | | |
| Corona | Yvette | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Narayan | Akshay | Cambridge | MA | 02139 | N | 11.22.19 | N | | | | X | X | | |
| Hagen | Kelly | Vero Beach | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Overton | Thomas | Seattle | WA | 98103 | N | 11.22.19 | N | | | | X | | | |
| Mullane | Jonathan | Cambridge | MA | ? | N | 11.22.19 | N | | | | X | | | |
| Viverito | Jaimie | Boynton Beach | FL | 33436 | N | 11.22.19 | N | | | | | X | | |
| Ramos | Edith | Chicago | IL | 60644 | N | 11.22.19 | N | | | | | | X | X |
| Rimar | Gary | Arlington | VA | 22204 | N | 11.22.19 | N | | | | | X | | |
| Lori | Payne | Mount Juliet | TN | 37122 | N | 11.22.19 | N | | | | | X | X | |
| Mandros | Matthew | South Jordan | UT | 84009 | N | 11.22.19 | N | | | | X | | | |
| Critelli | Glenn | Myrtle Beach | SC | ? | N | 11.22.19 | N | | | | | X | | |
| GeNvese | Kelly | Monessen | PA | 15062 | N | 11.22.19 | N | | | | | X | | |
| Bialecki | Valentine | Holyoke | MA | 01040 | N | 11.22.19 | N | | | | | X | | |
| Wright | Danita | ? | ? | ? | N | 11.22.19 | N | | X | | | X | | |
| Spalding | Mary | Louisville | KY | 40217 | N | 11.22.19 | N | | | | X | | | |
| Kohler | Charles | Traverse City | MI | ? | N | 11.22.19 | N | | | | | X | X | |
| Crumbley | Deborah | Columbus | SC | 29212 | N | 11.22.19 | N | | | | | X | | |
| Gralak | Lynnette | Nrth Platte | NE | 69101 | N | 11.22.19 | N | | | | | | | X |
| Morgan | Dennis | Greensboro | NC | 27405 | N | 11.22.19 | N | | | | X | | | |
| Erdman | Brett | ? | ? | ? | N | 11.22.19 | N | | | | | X | X | |
| Wier | Jennifer | College Station | TX | 77845 | N | 11.22.19 | N | | | | X | | | |
| Foster | Stephen | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Johnson | Larry | Burtrum | MN | ? | N | 11.22.19 | N | | | | | X | | |
| Ramos | Rosa | Chicago IL | IL | 60609 | N | 11.22.19 | N | | | | | | X | X |
| Newhart | Erica | Arlington | TX | 76012 | N | 11.22.19 | N | | | | | | X | X |
| Adams | Nicole | Lexington | KY | 40517 | N | 11.22.19 | N | | | | X | | | |
| Alvarez | Maria | FresN | CA | 93722 | N | 11.22.19 | N | | | | X | X | | |
| LaMonica | Ronald | Ashford | CT | 06278 | N | 11.22.19 | N | | | | | | X | X |
| Murphy | John | Sparks | NV | 89434 | N | 11.22.19 | N | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Nice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams | Tina | Girard | PA | 16417 | N | 11.22.19 | N | | | | | X | X | |
| Twitchell | Nathan | Morristown | TN | ? | N | 11.22.19 | N | | | | X | | | |
| Wade-Evans | Todd | Belleville | IL | 62220 | N | 11.22.19 | N | | | | | X | | |
| Schroeder | Jennifer | Blue Mound | IL | 62513 | N | 11.22.19 | N | | | | | X | | |
| Israel | Adam | New York | NY | 10024 | N | 11.22.19 | N | | | | X | | | |
| Beauvais | Michelle | Somerset | WI | ? | N | 11.22.19 | N | | | | | X | | |
| Matiut | Samuel | Denver | NC | 28037 | N | 11.22.19 | N | | | | X | | | |
| Hawkins | Thomas | Arlington | TX | 76006 | N | 11.22.19 | N | | | | | X | X | |
| Bermijo | Paul A. | Phoenix | AZ | 85027 | N | 11.22.19 | N | | | | X | | | |
| Craddock | Curtis | Springfield | VA | 22150 | N | 11.22.19 | N | | | | X | X | | |
| Kates | Lori | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Brooks | Jeffrey | Fort Mill | SC | ? | N | 11.22.19 | N | | | | | X | | |
| Zorrilla | Edward | Artesia | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Reed | Christopher | Berkeley | CA | 94703 | N | 11.22.19 | N | | | | | X | X | |
| Reichel | Nastassia | Austin | TX | 78748 | N | 11.22.19 | N | | | | X | | | |
| Harper | Annette | St. Joseph | MO | 64504 | N | 11.22.19 | N | | | | | | | X |
| Smith | Shalene | Pahrump | NV | 89048 | N | 11.22.19 | N | | | | | X | | |
| Markle | Ronald | ? | ? | ? | N | 11.22.19 | N | | | | | | X | X |
| Kilker | Dan | Luzerne | PA | 18709 | N | 11.22.19 | N | | | | | X | | |
| Anderson | Kimberly | Morton | IL | 61550 | N | 11.22.19 | N | | | | | X | | |
| Bonillas | Phillip | Imperial | CA | 92251 | N | 11.22.19 | N | | | | | X | | |
| White | Connie | Bessemer City | NC | ? | N | 11.22.19 | N | | | | | X | | |
| Griffith | Jonathan | Sacramento | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Zadworski | Monica | Citrus Heights | CA | 95621 | N | 11.22.19 | N | | | | X | | | |
| Downey | Jacob | Warrenton | VA | 20186 | N | 11.22.19 | N | | | | | | | X |
| Schrage | David | Anderson | SC | ? | N | 11.22.19 | N | | | | | | | X |
| Cascio | Raymond | Babylon | NY | 11704 | N | 11.22.19 | N | | | | | | | X |
| Baize | Barbara | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Craven | Michael | ReN | NV | ? | N | 11.22.19 | N | | | | | X | | |
| Underwood | Guillermina | England | AR | 72046 | N | 11.22.19 | N | | | | | X | X | |
| Myers | Joan | Long Beach | CA | 90802 | N | 11.22.19 | N | | | | | X | X | |
| Salonis | Jonathan | Toms River | NJ | 07008 | N | 11.22.19 | N | X | | | | X | | |
| Johnson | Robin | Burtrum | MN | ? | N | 11.22.19 | N | | | | X | | X | |
| Brundage | Adam | ? | ? | ? | N | 11.22.19 | N | | | | X | | | |
| Bjugan | Julie | Pine Island | MN | ? | N | 11.22.19 | N | | | | | | | X |
| Vonck | Marlice | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Dambrosio | Anthony | Melrose | MA | ? | N | 11.22.19 | N | | | | | X | | |
| Reiff | Linda | Kingston Springs | TN | ? | N | 11.22.19 | N | | | | | | | X |
| Wight | Peter | West Haven | CT | ? | N | 11.22.19 | N | X | | | | X | | |
| Florio-August | Alyssa | Belleville | NJ | 07109 | N | 11.22.19 | N | | | | | | | X |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Frazier | Tracy | Bellefontaine | OH | 43311 | N | 11.22.19 | N | | | | | X | | |
| Collier | Robert | Caddo | OK | 74729 | N | 11.22.19 | N | | | | X | | | |
| Smith | Ethan | Waterloo | NY | ? | N | 11.22.19 | N | | | | | X | | |
| Bordenkircher | Paul | Las Vegas | NV | 89135 | N | 11.22.19 | N | | | | X | X | | |
| Willms | Steven | Anniston | AL | 36201 | N | 11.22.19 | N | | | | X | | | |
| Johnson | Marjorie | Rock Hill | SC | ? | N | 11.22.19 | N | | | | | X | | |
| Allen | Kaitlyn | Millers Falls | MA | ? | N | 11.22.19 | N | | | | | X | | |
| Bermijo | Jane C. | Pheonix | AZ | 85027 | N | 11.22.19 | N | | | | X | | | |
| Brown | Benjamin | Medical Lake | WA | 99022 | N | 11.22.19 | N | | | | X | | | |
| Mills | John | Emerson | NJ | ? | N | 11.22.19 | N | | | | X | | | |
| Trinka | Bryce | Weston | CT | 06883 | N | 11.22.19 | N | | | | | X | | |
| Eisenach | Jared | Fort Collins | CO | 80524 | N | 11.22.19 | N | | | | | | | X |
| Thomas | James | Kingsport | TN | 37660 | N | 11.22.19 | N | | | | | X | | |
| Phillis | DeAun | Witchita | KS | 67208 | N | 11.22.19 | N | X | | | X | X | X | |
| Meyer | Alan | Riverside | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Rios | Dawn | Riverbank | CA | 95367 | N | 11.22.19 | N | | | | | | X | X |
| LaTendresse | Jason | Horicon | WI | ? | N | 11.22.19 | N | | | | X | | | |
| Vance | Robin | San Leandro | CA | 94578 | N | 11.22.19 | N | | | | X | X | | |
| ValdoviNs | Marco | Oxnard | CA | 93036 | N | 11.22.19 | N | | | | | | | X |
| Whitfield | Gregory | ? | ? | ? | N | 11.22.19 | N | | | | | X | X | |
| Hawks | Karen | Grand Prairie | TX | 75052 | N | 11.22.19 | N | | | | X | | | |
| Keheley | Timothy | Rialto | CA | 92376 | N | 11.22.19 | N | | | | X | | | |
| Kleiner | Brendon | Valley Stream | NY | ? | N | 11.22.19 | N | | | | X | | X | |
| Aguilar | Jaime | Chesterton | IN | 46304 | N | 11.22.19 | N | | | | X | | X | |
| Garren | Jordan | Hickory | NC | ? | N | 11.22.19 | N | | | | X | | | |
| Vaughan | Robin | Braidwood | IL | ? | N | 11.22.19 | N | | | | | | | X |
| Mcnickles | Geoffrey | Sanford | ME | 04073 | N | 11.22.19 | N | | | | | | | X |
| Kaether | Jason | Burleson | TX | 76028 | N | 11.22.19 | N | | | | X | X | | |
| Milsted | David | Logan | OH | ? | N | 11.22.19 | N | | | | | | | X |
| Eaton | Rosalyn | Sacramento | CA | 95833 | N | 11.22.19 | N | | | | | | X | X |
| Thompson | Brandi | Waynesboro | VA | 22980 | N | 11.22.19 | N | | | | | | | X |
| Jones | Makeshia | Nacogdoches | TX | 75961 | N | 11.22.19 | N | | | | | X | | |
| McLain | Brian | ? | ? | ? | N | 11.22.19 | N | | | | | X | X | |
| Strickland | Ursula | Ozark | AL | 36360 | N | 11.22.19 | N | | | | | | | X |
| Durling | Darlene | Park City | IL | 60085 | N | 11.22.19 | N | | | | X | | | |
| Brown | Fred M. | Milton | WV | 25541 | N | 11.22.19 | N | | | | | X | | |
| Stasek | Dawn | ? | ? | ? | N | 11.22.19 | N | | | | X | | | |
| Rhyne | Hugh | Big Spring | TX | ? | N | 11.22.19 | N | | | | X | X | | |
| Post | Richard | Fort Wayne | IN | 46835 | N | 11.22.19 | N | X | | | | X | | |
| Treadwell | Fedrick | SNw Camp | NC | 27349 | N | 11.22.19 | N | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Calahan | Michael | San Jose | CA | 95125 | N | 11.22.19 | N | | | | X | | | |
| Coe | Cherie | Escanaba | MI | 49829 | N | 11.22.19 | N | | | | X | | | |
| Curcio | Meghan | Valrico | FL | 33596 | N | 11.22.19 | N | | | | X | | | |
| Cates | Cheryl | Vassar | MI | 49868 | N | 11.22.19 | N | | | | | X | | |
| Ziolkowski | Anthony | Manville | RI | 02838 | N | 11.22.19 | N | | | | | | X | X |
| Morton | Henry | New York | NY | ? | N | 11.22.19 | N | | | | | X | X | |
| Hilger | Paul | Lincoln | NE | 68516 | N | 11.22.19 | N | | | | X | | | |
| Deacon | Daniel | El Paso | TX | 79935 | N | 11.22.19 | N | | | | | X | | |
| Hankins | Janie | Granbury | TX | 76048 | N | 11.22.19 | N | | | | | X | X | |
| Butler | Crystal | ? | RI | 02893 | N | 11.22.19 | N | | | | X | | X | |
| Foraker | Jane C. | Monroe | MI | 48161 | N | 11.22.19 | N | | | | | X | | |
| Amic | Kimberly | Pittsburgh | PA | 15205 | N | 11.22.19 | N | | | | X | | | |
| Sheridan | Shaun | Benton | AR | 72015 | N | 11.22.19 | N | | | | X | X | X | |
| Carithers | Ernest | Oceanside | CA | ? | N | 11.22.19 | N | | | | | | | X |
| Allen | Rosa | Zachary | LA | 70791 | N | 11.22.19 | N | | | | X | | | |
| Dennett | Stanley | Killeen | TX | 76543 | N | 11.22.19 | N | | | | X | | | |
| Rusher | Niesha | Columbus | MO | 39702 | N | 11.22.19 | N | | | | | X | | |
| Brendon | Charles | Las Vegas | NV | 89113 | N | 11.22.19 | N | | | | | X | | |
| Glover | William | Beaumont | TX | 77726 | N | 11.22.19 | N | | | | | X | | |
| McGarry | Finbar | Colchester | VT | 05446 | N | 11.22.19 | N | | | | | X | | |
| Lindsay | Heather | San Antonio | TX | 78247 | N | 11.22.19 | N | | | | | X | | |
| Redmon-Franklin | Kaitlyn | Rocklin | CA | 95677 | N | 11.22.19 | N | X | | | | X | | |
| Harris | Theresa | Cicero | NY | ? | N | 11.22.19 | N | | | | | | | X |
| Chandler | Arren | Austin | TX | 78751 | N | 11.22.19 | N | | X | | | X | | |
| Mikolaitis | Mike | Wilkes-Barre | PA | 18706 | N | 11.22.19 | N | | | | | | X | X |
| Jackson | Cheryl | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Jacobs | Nicole | Clairton | PA | 15025 | N | 11.22.19 | N | | | | | | | X |
| Goldberg | Todd | El Cajon | CA | ? | N | 11.22.19 | N | | | | | X | X | |
| Colwell | John Wayne | Deltona | FL | 32725 | N | 11.22.19 | N | | | | X | | | |
| Ferguson | Michael | Canyon | TX | 79015 | N | 11.22.19 | N | | | | | | | X |
| Pilon | Richard | Bartlett | TN | ? | N | 11.22.19 | N | | | | X | | | |
| Beauchampl | Jay | Edmond | OK | 73012 | N | 11.22.19 | N | | | | X | | | |
| Schlene | Eric | West Lafayette | IN | ? | N | 11.22.19 | N | | | | X | X | | |
| Specht | Laurance | Brooklyn | NY | 11218 | N | 11.22.19 | N | | | | X | | | |
| Gibson | Mary | San Antonio | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Biedinger | Robert | Cross Roads | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Baldwin | Alan | Denver | CO | 80202 | N | 11.22.19 | N | | | | | X | | |
| Jordan | Brooke | Flushing | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Sirer | Emin | Ithaca | NY | 14853 | N | 11.22.19 | N | | | | X | X | | |
| Zawieruszynski | Darlene | St. Lucie | FL | ? | N | 11.22.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dingler | Jimmy | WiNna | TX | 75792 | N | 11.22.19 | N | | | | | | | X |
| Snyder | Jordan | Jackson | MI | 49203 | N | 11.22.19 | N | | | | X | | X | |
| Fletcher | Chris | LebaNn | OR | 97355 | N | 11.22.19 | N | | | | X | | X | |
| Ward | Susan | Jefferson | MD | 21755 | N | 11.22.19 | N | | | | X | | | |
| Black | Kenneth | San Francisco | CA | ? | N | 11.22.19 | N | | | | | X | X | |
| Pilipenko | Oleg | Solon | OH | 44139 | N | 11.22.19 | N | | | | | | | X |
| Martin | Carolyn | Mabelvale | AR | 72103 | N | 11.22.19 | N | | | | | X | X | |
| King | Marandell | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Stark | Pamela | Kansas City | KS | 66112 | N | 11.22.19 | N | | | | X | X | X | |
| Pan | Arthur | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Spiker | Andrew | West Lafayette | IN | ? | N | 11.22.19 | N | | | | | | X | X |
| Comery | Sean | Columbia | TN | 38401 | N | 11.22.19 | N | | | | | | | X |
| House | Kimberly | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Owens | James | Virginia Beach | VA | ? | N | 11.22.19 | N | | | | | | X | X |
| Patten | Julie | Chiloquin | OR | ? | N | 11.22.19 | N | | | | | X | | |
| Fugate | Angel | Hammond | IN | ? | N | 11.22.19 | N | | | | | X | | |
| Abdullah | Nafeesah | Chicago | IL | 60661 | N | 11.22.19 | N | | | | X | | | |
| Sorrell | Karen | Falmouth | KY | ? | N | 11.22.19 | N | | | | | | X | X |
| Copans | Kathleen | Lynn | MA | ? | N | 11.22.19 | N | | | | | X | | |
| Wakeford | Cynthia | Highland | MI | 48356 | N | 11.22.19 | N | | | | X | | X | |
| Ex | Francine | Kfar Sava | Israel | ? | N | 11.22.19 | N | | | | | X | | |
| DePalma | Peter | Citrus Heights | CA | 95610 | N | 11.22.19 | N | | | | | | X | X |
| Payton | Louis | Fort McCoy | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Wink | Graham | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Krupnik | Daniel | Chicago | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Martyn | Terri | Oglesby | IL | 61348 | N | 11.22.19 | N | | | | | X | X | |
| Hamm | Rick | Ludlow | KY | ? | N | 11.22.19 | N | | | | X | | | |
| Holtrop | James | Hudsonville | MI | 49426 | N | 11.22.19 | N | X | | | X | X | | |
| Milligan | Maria | Perrysburg | OH | 43551 | N | 11.22.19 | N | | | | X | | | |
| Rafael | Gunta | HaNver Park | IL | ? | N | 11.22.19 | N | | | | X | | X | |
| Carmer | Tami | Kent | OH | ? | N | 11.22.19 | N | | | | | | | X |
| Nadler | Benjamin | Modiin | Israel | ? | N | 11.22.19 | N | | | | | X | | |
| Lockwood | Steven | Owosso | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Moran | Dow | Jersey City | NJ | 07310 | N | 11.22.19 | N | | | | X | X | | |
| Greenwood | Steven | Cypress | TX | 77433 | N | 11.22.19 | N | | | | | X | | |
| Walker | Cipeo | ? | ? | ? | N | 11.22.19 | N | | | | | X | X | |
| Myers | Sheila | Hermitage | PA | 16146 | N | 11.22.19 | N | | | | X | | | |
| Ford | Mary | Huntsville | AL | ? | N | 11.22.19 | N | | | | | X | | |
| Kneen | Jason | Portage | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Wilcox | Samantha | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Nitce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gearlds | Eagle | Tompkinsville | KY | 42167 | N | 11.22.19 | N | | | | | | X | X |
| Schilke | Erik | Middletown | CT | ? | N | 11.22.19 | N | | | | X | | | |
| Cook | Leslie | Riverside | CA | 92509 | N | 11.22.19 | N | | | | | | | X |
| Luongo | Eric | Lackawanna | NY | 14218 | N | 11.22.19 | N | | | | X | | | |
| Staudacher | Sandy | Ocala | FL | 34473 | N | 11.22.19 | N | | | | | X | | |
| Dumoulin | Donald | Carmel | IN | ? | N | 11.22.19 | N | | | | | X | X | |
| King | Lynn | Richton Park | IL | ? | N | 11.22.19 | N | | | | | X | X | |
| MeriN | Diana | Metuchen | NJ | ? | N | 11.22.19 | N | | | | X | | | |
| Sandberg | Angela | Melbourne | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Lipari | Barbara | Costa Mesa | CA | 92627 | N | 11.22.19 | N | | | | | | | X |
| Grabowski | Rebecca | Davison | MI | 48423 | N | 11.22.19 | N | | | | X | X | X | |
| Tyer | Rhea | Cordova | TN | 38016 | N | 11.22.19 | N | | | | X | X | | |
| Furry | Lester | Ft. Myers | FL | 33913 | N | 11.22.19 | N | | | | X | | X | |
| Anderson | Jesse | Fort Worth | TX | 76108 | N | 11.22.19 | N | | | | | X | | |
| Kubasiak | Benjamin | Pittsburgh | PA | 15220 | N | 11.22.19 | N | | | | | | X | X |
| Dana | Jacqueline | Princeton | LA | 71067 | N | 11.22.19 | N | | | | | X | | |
| Allen | Colleen | Hartland | WI | 53029 | N | 11.22.19 | N | | | | | X | X | |
| Yantz | Matthew | Revere | MA | 02151 | N | 11.22.19 | N | | | | | | | X |
| Jordan | Patricia | Roselle | IL | 60172 | N | 11.22.19 | N | | | | X | | | |
| Kemraj | SueAnn | Oakland | FL | 34787 | N | 11.22.19 | N | | | | | | X | X |
| Mandolfo | Samuel | Ralston | NE | ? | N | 11.22.19 | N | | | | X | | | |
| Bohne | Steven | Spring Arbor | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Joseph | Mary | Bradenton | FL | 34207 | N | 11.22.19 | N | | | | | | | X |
| Holder | Stephen | Cleveland | TN | 37323 | N | 11.22.19 | N | | | | | X | X | |
| Bendiksen | Matthew | Allen | TX | ? | N | 11.22.19 | N | | | | X | | | |
| Laguna | Justin | Queen Creek | AZ | 85140 | N | 11.22.19 | N | | | | X | | | |
| Ward | Tameka | Oak Park | MI | 48237 | N | 11.22.19 | N | X | | | | X | | |
| Mobley | Renee | Humble | TX | ? | N | 11.22.19 | N | | | | | | X | X |
| Piper | Derek | Greenwood | IN | 46142 | N | 11.22.19 | N | X | | | X | X | | |
| Dibble | Kathlyn | Round Lake | IL | 60073 | N | 11.22.19 | N | | | | | X | | |
| Storey | Sharon | Saint Helens | OR | 97051 | N | 11.22.19 | N | | | | X | | | |
| Prasad | Krishna | Flower Mound | TX | 75022 | N | 11.22.19 | N | | | | | X | X | |
| Price | Lonny | West Terre Haute | IN | 47885 | N | 11.22.19 | N | | | | | X | | |
| Rager | Cathy | Elkton | KY | 42220 | N | 11.22.19 | N | | | | X | | X | |
| Bradford | Sharon | Lafayette | LA | 70508 | N | 11.22.19 | N | | | | X | X | | |
| Brightwell | Anita | Rogers | AR | ? | N | 11.22.19 | N | | | | X | | | |
| Dozer | Kirk | Chilicothe | OH | 45601 | N | 11.22.19 | N | | | | | | | X |
| Nickolls | Robin | Vero Beach | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Davis | Karen | Newman | GA | 30265 | N | 11.22.19 | N | | | | | X | | |
| Longway | Tracey | Bridgeport | CT | ? | N | 11.22.19 | N | | | | | X | X | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Barber | Kathy | Jonesboro | AR | 72401 | N | 11.22.19 | N | | | | | | X | X |
| Jones | Heather | Stockton | MO | 65785 | N | 11.22.19 | N | | | | X | X | | |
| Douglas | John | Saugus | CA | 91350 | N | 11.22.19 | N | | | | | X | X | |
| Ryan | Ann | Doral | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Phelps | Jennifer | Des Moines | IA | 50311 | N | 11.22.19 | N | | | | X | | | |
| Khan | Sheeraz | Bolingbrook | IL | 60490 | N | 11.22.19 | N | | | | | X | | |
| Lewis | Pamela | ? | ? | ? | N | 11.22.19 | N | X | | | | X | X | |
| Barnes | James | Cypress | TX | ? | N | 11.22.19 | N | | | | | X | X | |
| Bendler | Marc | Algonquin | IL | 60102 | N | 11.22.19 | N | | | | X | | | |
| van der Kam | Herald | Collegeville | PA | ? | N | 11.22.19 | N | | | | | X | | |
| Ballard | Stephanie | Lexington | KY | 40509 | N | 11.22.19 | N | | | | | X | | |
| Olivo | Amy | Surprise | AZ | 85378 | N | 11.22.19 | N | | | | | | X | X |
| Hartman | Mark | El Cajon | CA | 92020 | N | 11.22.19 | N | | | | | X | | |
| Bartholomew-King | Julia | Brooklyn | NY | 11201 | N | 11.22.19 | N | | | | X | | | |
| Amon | Richard | Riverdale | GA | ? | N | 11.22.19 | N | X | | | X | X | | |
| Weigel | Jonathan | Spanaway | WA | ? | N | 11.22.19 | N | | | | X | X | | |
| Felt | Greg | Phoenix | AZ | ? | N | 11.22.19 | N | | | | X | X | | |
| Hayden | Kellie | Newburg | MD | 20664 | N | 11.22.19 | N | | | | X | | | |
| Harris | Ramona | Mineola | TX | ? | N | 11.22.19 | N | | | | | X | X | |
| Moore | Paul | Hinsdale | MT | 59241 | N | 11.22.19 | N | | | | X | | X | |
| O'Mara | Virginia | Weymouth | MA | 02188 | N | 11.22.19 | N | | | | X | | | |
| Michael | Tauraso | Bothell | WA | ? | N | 11.22.19 | N | | | | X | | | |
| Liu | Su | Los Angeles | CA | 90064 | N | 11.22.19 | N | | | | X | | | |
| Matson | Carolyn | Springfield | IL | ? | N | 11.22.19 | N | | | | | | X | X |
| DeSmit | Forrest | Watauga | TX | ? | N | 11.22.19 | N | X | | | | X | | |
| Morris | Felicia | St. George | UT | 84771 | N | 11.22.19 | N | X | | | X | | | |
| Sharpe | Ashaki | Walnut Grove | MS | 39189 | N | 11.22.19 | N | | | | | | | X |
| Hernandez | Nicki | Aberdeen | WA | 98520 | N | 11.22.19 | N | | | | | | X | X |
| Trice | Nrlene | Weeki Wachee | FL | 34614 | N | 11.22.19 | N | | | | X | | | |
| Ragatz | Nancy | Fenton | MI | 48430 | N | 11.22.19 | N | | | | | | | X |
| Crouch | Emily | Portsmouth | NH | 03801 | N | 11.22.19 | N | | | | | X | | |
| Casad | Mike | Chatham | IL | 62629 | N | 11.22.19 | N | | | | | | X | X |
| O'Brien | Arthur | Kansas City | MO | ? | N | 11.22.19 | N | | | | | X | | |
| Gibbeny | Shelley | Hudson | IN | 46747 | N | 11.22.19 | N | X | | | | X | | |
| Locke | Leslie | San Antonio | TX | 78244 | N | 11.22.19 | N | | | | | | | X |
| Stansbury | Wade | Clenwood City | WI | 54013 | N | 11.22.19 | N | | | | X | X | | |
| Lewis | Donna | Seffner | FL | 33584 | N | 11.22.19 | N | X | | | | X | | |
| Brust | Charles | Rochester | MN | ? | N | 11.22.19 | N | | | | | | | X |
| Steele | Emily | Columbia | MD | 21044 | N | 11.22.19 | N | | | | | X | | |
| Smith | Darell | Eugene | OR | 97405 | N | 11.22.19 | N | | | | X | X | X | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pfahl | Raymond | Cleveland | OH | 44144 | N | 11.22.19 | N | | | | | | | X |
| Looney | Jennifer | Bristol | TN | ? | N | 11.22.19 | N | | | | | X | | |
| Akeley | Lee | Ocala | FL | 34473 | N | 11.22.19 | N | | | | | | | X |
| Dolan | Susan | Montgomery Village | MD | 20886 | N | 11.22.19 | N | | | | | | | X |
| Farole | Michael | Corona | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Tesch | Lori | Ortonville | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Roberson | Cyndi | Victoria | TX | ? | N | 11.22.19 | N | | | | | | X | X |
| Kuver | Daphne | Tacoma | WA | 98422 | N | 11.22.19 | N | | | | | X | | |
| Gaskins | Joy | New Bern | NC | 28562 | N | 11.22.19 | N | | | | | X | | |
| Chidester | Anthony | San Antonio | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Palmer | Tania | Prior Lake | MN | ? | N | 11.22.19 | N | | | | X | | | |
| Baker | Tammie | Edwardsville | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Lutz | Katherine | Old Bridge | NJ | 08857 | N | 11.22.19 | N | | | | | X | | |
| Mariani | Christine | Bedford | MA | ? | N | 11.22.19 | N | X | | | | | | |
| Small | Ann | Humble | TX | 77346 | N | 11.22.19 | N | | | | X | | | |
| Conn | Heather | Whitmore Lake | MI | ? | N | 11.22.19 | N | | | | X | | | |
| Chen | Mimi | Alhambra | CA | 91801 | N | 11.22.19 | N | | | | | X | | |
| Parker | Cheryl | Semmes | AL | 36575 | N | 11.22.19 | N | | | | | X | | |
| Rogers | Toli | ? | ? | ? | N | 11.22.19 | N | | | | | X | X | |
| ViggiaN | David | Roswell | GA | ? | N | 11.22.19 | N | | | | X | | | |
| TiscareN | Vanessa | Whittier | CA | 90603 | N | 11.22.19 | N | | | | | X | | |
| Silander | Olli | Virginia Beach | VA | ? | N | 11.22.19 | N | | | | X | | | |
| Smat | Robert | Wauwatosa | WI | 53226 | N | 11.22.19 | N | | | | | X | X | |
| Crawford | Kristen | Cassville | MO | ? | N | 11.22.19 | N | | | | X | X | | |
| Caliza-Whitehead | Rose Marie | Waianae | HI | 96792 | N | 11.22.19 | N | | | | | X | X | |
| Davis | Barbara | Fremont | MI | 49412 | N | 11.22.19 | N | | | | | X | X | |
| Dolson | Laura | Ann Arbor | MI | 48103 | N | 11.22.19 | N | | | | X | | | |
| Anderson | Roy | Horn Lake | MS | 38638 | N | 11.22.19 | N | | | | X | | | |
| Gaffney | Lilia | Jacksonville | FL | 32244 | N | 11.22.19 | N | | | | X | X | | |
| Moorehead | Stacey | Rochester | NY | 14616 | N | 11.22.19 | N | X | | | | X | | |
| McKenzie | William | Leesburg | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Nsek | Carl | Denver | CO | ? | N | 11.22.19 | N | | | | | X | | |
| Craycraft | Philip | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Fisher | Barbara | San Juan CapistraN | CA | 92675 | N | 11.22.19 | N | | | | | | | X |
| Yu | Dennis | San Francisco | CA | ? | N | 11.22.19 | N | | | | X | | X | |
| Brass | Barbara | Roseville | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Neyens | Sara | Rock Island | IL | ? | N | 11.22.19 | N | | | | | | | X |
| Keel | Teresa | Garnerville | NY | 10923 | N | 11.22.19 | N | | | | | X | | |
| Benavides | Olivia | Lakewood | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Williams | Mary | Indianapolis | IN | ? | N | 11.22.19 | N | | | | X | | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notce? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Johns | Megan | Sioux Falls | SD | 57107 | N | 11.22.19 | N | | | | | X | | |
| Jensen | Charlene | Sacramento | CA | 95691 | N | 11.22.19 | N | | | | | X | | |
| Gagne | Thomas | Pittsburgh | PA | 15221 | N | 11.22.19 | N | | | | | X | | |
| Epstein | Zedd | Oakland | CA | ? | N | 11.22.19 | N | | | | X | X | | |
| Ramirez | Nadine | ChiN | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Bill | Thomas | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Bowie | Carol | Houston | TX | 77014 | N | 11.22.19 | N | X | | | | X | | |
| Dake | Cory | St. Anna | TX | 75409 | N | 11.22.19 | N | | | | X | | X | |
| SussiN | Donita | Tobyhanna | PA | 18466 | N | 11.22.19 | N | X | | | | X | X | |
| Gardner | Shanna | Keysville | GA | 30816 | N | 11.22.19 | N | | X | | | X | | |
| Engley Moore | Evelyn | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Andriotis | Sunilda | Elmhurst | NY | 11370 | N | 11.22.19 | N | | | | | X | | |
| Marx | Victoria | Flint | MI | ? | N | 11.22.19 | N | | | | | X | | |
| Tan | Phaik | Shakopee | MN | 55379 | N | 11.22.19 | N | | | | X | | X | |
| Morales | Melissa | Orange | CA | 92867 | N | 11.22.19 | N | | | | X | | | |
| Wallis | Elizabeth | Tucscon | AZ | 85718 | N | 11.22.19 | N | | | | X | | | |
| Chaney | Katesha | Athens | GA | 30605 | N | 11.22.19 | N | | | | | X | | |
| Zabawar | Nicholas | Warwick | RI | 02888 | N | 11.22.19 | N | | | | X | | | |
| Irwin | Eric | Oakhurst | CA | 93644 | N | 11.22.19 | N | | | | | | X | X |
| Schneider | Jonathan | Oxnard | CA | 93036 | N | 11.22.19 | N | | | | X | | | |
| Jenkins | Demetrice | New Orleans | LA | 70114 | N | 11.22.19 | N | | | | | X | X | |
| Green | Wendy | Star | NC | 27356 | N | 11.22.19 | N | | | | | X | | |
| Munson | Morgan | Baton Rouge | LA | 70806 | N | 11.22.19 | N | | | | X | | | |
| Genardo | Nicki | Ocala | FL | 34470 | N | 11.22.19 | N | | | | | | X | X |
| Boller | Brett | Friend | NE | 68359 | N | 11.22.19 | N | | | | | X | X | |
| Cress | Bryan | Plainfield | IN | 46167 | N | 11.22.19 | N | | | | | X | | |
| FrancoFra | Alessandra | Brooklyn | NY | 11230 | N | 11.22.19 | N | | | | X | | | |
| Raines | Bethanie | Lodi | WI | 53555 | N | 11.22.19 | N | | | | X | | X | |
| Kiehl | David | Bel Aired | IS | 67226 | N | 11.22.19 | N | | | | X | | X | |
| Horridge | Sherrill | Gibson City | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Dawe | Tricia | Charlotte | FL | 33952 | N | 11.22.19 | N | | | | X | | X | |
| Cavette | Carol | Spokane | WA | 99208 | N | 11.22.19 | N | | | | X | | | |
| Sibley | Patricia | Reardan | WA | ? | N | 11.22.19 | N | | | | | X | X | |
| Luchetti | Joseph | Bethlehem | CT | 06751 | N | 11.22.19 | N | | | | X | | | |
| Sheridan | James | Agawam | MA | 01001 | N | 11.22.19 | N | | | | | X | X | |
| Clark | Bradon | San Antonio | TX | 78210 | N | 11.22.19 | N | | | | | X | X | |
| Suderski | Jennifer | Hammond | IN | 46324 | N | 11.22.19 | N | | | | X | | X | |
| Wells | Matt | Clayton | NC | 27527 | N | 11.22.19 | N | | | | | X | | |
| White | Amy | Parlin | NJ | 08859 | N | 11.22.19 | N | | | | X | | X | |
| Waldorf | Frank | Hazlet | NJ | ? | N | 11.22.19 | N | | | | | | | X |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dobrowolski | Chris | ? | | ? | N | 11.22.19 | N | | | | | X | | |
| Hurst | Robert | Covington | LA | 70433 | N | 11.22.19 | N | | | | X | | X | |
| Williams | Jesse | Ammon | ID | ? | N | 11.22.19 | N | | | | | X | | |
| Kuklin | Stephen | Mountain City | TN | ? | N | 11.22.19 | N | | | | X | X | | |
| Schlagle | Michael | Point Pleasant | NJ | ? | N | 11.22.19 | N | | | | | X | | |
| Clardy | William | Lewisburg | KY | 42256 | N | 11.22.19 | N | | | | X | | X | |
| Leveque | Roland | Des Moines | IA | ? | N | 11.22.19 | N | | | | X | | | |
| Clark | Melinda | Lorain | OH | ? | N | 11.22.19 | N | | | | X | | X | |
| Armstrong | Michael | Riverside | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Melby | Allan | Roaring River | NC | 28069 | N | 11.22.19 | N | | | | X | | | |
| Akin | Laronda | Benton | IL | 62812 | N | 11.22.19 | N | | | | | X | | |
| Fresh | Lisa | Portland | OR | ? | N | 11.22.19 | N | | | | X | | | |
| Collins | Charles | Medford | NJ | ? | N | 11.22.19 | N | | | | X | | | |
| McAllister | Ira | Austin | TX | 78724 | N | 11.22.19 | N | | | | X | X | X | |
| Braun | Brendan | Franklin | TN | ? | N | 11.22.19 | N | | | | | X | | |
| Wussick | Nita | Washington | PA | 15301 | N | 11.22.19 | N | | | | X | X | | |
| Peterson | Ron | West Jordan | UT | ? | N | 11.22.19 | N | | | | | X | X | |
| Copeland | Kimberly | Hamburg | PA | 19526 | N | 11.22.19 | N | | | | | | | X |
| Hammond | Ike | Columbia | SC | ? | N | 11.22.19 | N | | | | | X | | |
| Clark Jr. | Walter L | Youngstown | OH | 44515 | N | 11.22.19 | N | | | | | X | | |
| Higgins | Katherine | Shoreview | MN | 55126 | N | 11.22.19 | N | | | | X | X | | |
| Maldonado | Kerry | Conway | SC | 29527 | N | 11.22.19 | N | | | | | X | X | |
| Stack | Steven | Mount Pleasant | SC | ? | N | 11.22.19 | N | | | | | | | X |
| Hames | Virginia | Pinson | AL | 35126 | N | 11.22.19 | N | | | | X | X | | |
| McLeod | Karen | Irmo | SC | 29063 | N | 11.22.19 | N | | | | | X | | |
| Hiatt | Timothy | Denton | TX | 76205 | N | 11.22.19 | N | | | | | X | X | |
| Anderson | Mary | Summerville | SC | ? | N | 11.22.19 | N | | | | X | | X | |
| Armstrong | Dennis | ? | | ? | N | 11.22.19 | N | | | | | | | X |
| Scripps | Kerry | Newaygo | MI | 49337 | N | 11.22.19 | N | | | | | X | | |
| Lemoi | Brandi | Coventry | RI | 02816 | N | 11.22.19 | N | | | | X | | X | |
| Douglas | Kim | Nrth Terre Haute | IN | ? | N | 11.22.19 | N | | | | | X | | |
| Bernath | Michelle | Mukilteo | WA | 98275 | N | 11.22.19 | N | | | | | X | | |
| Hurford | Peter | Chicago | IL | ? | N | 11.22.19 | N | | | | X | | | |
| Borkoskie | Debra | Lawrenceville | GA | 30046 | N | 11.22.19 | N | | | | X | X | | |
| Baker | Jeff | Nrthbrook | IL | 60062 | N | 11.22.19 | N | | | | X | | | |
| Ramage | Shelley | Nebraska City | NE | ? | N | 11.22.19 | N | | | | | | | X |
| Weaver | Nicholas | Napa | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Lewis | Kimberly | Nrfolk | VA | 23503 | N | 11.22.19 | N | | | | | X | X | |
| Weinstein-Raun | Benjamin | Berkeley | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Corison | Bianca | Redding | CA | 96003 | N | 11.22.19 | N | | | | X | | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Elston | Terry | Lindenwold | NJ | 08021 | N | 11.22.19 | N | | | | | | | X |
| Trainer | Amanda | Marlinton | WV | ? | N | 11.22.19 | N | | | | | X | | |
| Summers | Ivy | Mountain City | TN | ? | N | 11.22.19 | N | | | | X | | | |
| Llewellyn | Shanna | Long Beach | CA | 90803 | N | 11.22.19 | N | | | | | | X | X |
| Thibodeaux | Jeffery | Lake Charles | LA | 70601 | N | 11.22.19 | N | | | | | X | | |
| Ewing | Jamie | Independence | MO | 64056 | N | 11.22.19 | N | | | | X | | | |
| Glazier | Frederick | Houston | TX | 77095 | N | 11.22.19 | N | | | | X | | | |
| Sapiro | David | King George | VA | ? | N | 11.22.19 | N | | | | | X | | |
| McGregor | Ann | ? | ? | ? | N | 11.22.19 | N | | | | | | | X |
| Hebert | Mary | Dallas | TX | ? | N | 11.22.19 | N | | | | | | | X |
| Morales | Rosendo | Laveen | AZ | 85339 | N | 11.22.19 | N | | | | | X | | |
| Koble | Benjamin | York | PA | 17404 | N | 11.22.19 | N | | | | | X | | |
| Acone | Angela | Taylors | SC | 29687 | N | 11.22.19 | N | | | | | | | X |
| Sparling | Andrew | Sunnyside | NY | 11104 | N | 11.22.19 | N | | | | | | X | X |
| Wann | Kristi | Broken Arrow | OK | 74014 | N | 11.22.19 | N | | | | | | | X |
| Czapiewski | Randall | Lacrosse | WI | 54603 | WI | 11.22.19 | N | | | | | X | X | |
| Kiser | David | Fort Myers | FL | 33919 | N | 11.22.19 | N | | | | | X | | |
| ReY | Michael | San Leandro | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Williams | Rhonda | Atwater | CA | 95301 | N | 11.22.19 | N | | | | | X | X | |
| Anecito | Scott | Chandler | AZ | 85248 | N | 11.22.19 | N | | | | | X | | |
| Bartkowiak | Barbara | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| McNeely | Alacyn | Carver | MA | 02330 | N | 11.22.19 | N | | | | | | | X |
| Kozloff | Susan | Highland Park | IL | 60035 | N | 11.22.19 | N | | | | | | X | X |
| Klisuric | Thomas | Castle Rock | WA | ? | N | 11.22.19 | N | | | | | | | X |
| Lynch | Jacob | Phoenix | AZ | ? | N | 11.22.19 | N | | | | X | | | |
| Wendt | Cheryl | Rochester | NY | 14606 | N | 11.22.19 | N | | | | | X | | |
| Fisher | Connie | Lakewood | CO | 80214 | N | 11.22.19 | N | | | | | | X | X |
| Grubaugh | Tonia | Thorsby | AL | 35171 | N | 11.22.19 | N | | | | | | X | X |
| Morrison | Robert | Marietta | GA | ? | N | 11.22.19 | N | | | | | X | X | |
| Davis | Denise | Manchester | MI | 48158 | N | 11.22.19 | N | | | | | X | | |
| Anholt | Eric | Portland | OR | 97202 | N | 11.22.19 | N | | | | | X | X | |
| Burns | Katrina | Baton Rouge | LA | ? | N | 11.22.19 | N | | | | X | | | |
| Russ | Elizabeth | Cincinnati | OH | 45228 | N | 11.22.19 | N | | | | | X | | |
| Leach | Eric | Saco | ME | 04072 | N | 11.22.19 | N | | | | | X | | |
| Davenport | ShanNn | Mineola | TX | 75773 | N | 11.22.19 | N | | | | | X | | |
| Kaufman | Tracy | Naugatuck | CT | ? | N | 11.22.19 | N | | | | | X | | |
| Green | Karen | Omaha | NE | 68164 | N | 11.22.19 | N | | | | | X | | |
| Eckerson | Janet | Middletown | NY | 10940 | N | 11.22.19 | N | | | | | | X | X |
| McDONugh | Matthew | Franklin | MA | ? | N | 11.22.19 | N | | | | | X | | |
| Parr | Nancy | Cypress | TX | 77429 | N | 11.22.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pomerantz | James | Westport | IN | ? | N | 11.22.19 | N | | | | X | | | |
| Smith | Robert | Ada | MN | 56510 | N | 11.22.19 | N | | | | | X | | |
| Rickard | Peter | Rochester | MA | 02770 | N | 11.22.19 | N | | | | | X | | |
| Feury | Todd | Lewisburg | WV | 24901 | N | 11.22.19 | N | | | | | X | X | |
| Hutchins | Barry | Leland | NC | 28451 | N | 11.22.19 | N | | | | | X | | |
| Burr | Lisa | Nrthfield | VT | 05663 | N | 11.22.19 | N | | | | X | | | |
| Thomas | Gretchen | Bloomington | MN | 55420 | N | 11.22.19 | N | | | | | | | X |
| Jobman | Clara | Nrth Platte | NE | ? | N | 11.22.19 | N | | | | | X | X | |
| Walton | Laurel | Staten Island | NY | 10301 | N | 11.22.19 | N | | | | | X | | |
| Held | BJ | Madison | WI | 53704 | N | 11.22.19 | N | | | | | X | | |
| Jeffries | Dina | Lowell | AR | 72745 | N | 11.22.19 | N | | | | | X | | |
| Dundee | Caroline | Fort Collins | CO | ? | N | 11.22.19 | N | | | | X | | | |
| Collins | Jill | Vero Beach | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Fox | Timothy | Lacey | WA | ? | N | 11.22.19 | N | | | | | X | X | |
| Budny | Kaitlyn | Milwaukee | WI | 53228 | N | 11.22.19 | N | | | | | X | | |
| Albinda | Stephen | Pheonix | AZ | 85044 | N | 11.22.19 | N | | | | | X | | |
| Jaloszynski | Michael | Manistee | MI | 49660 | N | 11.22.19 | N | | | | X | | | |
| Dundee | Peter | Fort Collins | CO | ? | N | 11.22.19 | N | | | | X | | X | |
| Reed | Larry | Downey | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Keith | Vickie | Huntsville | AL | 35806 | N | 11.22.19 | N | | | | | | | X |
| Dardick | Sarah | San Francisco | CA | 94116 | N | 11.22.19 | N | | | | | X | | |
| Martin | Ronald | Olney | IL | 62450 | N | 11.22.19 | N | | | | | | | X |
| Hiatt | Karen | Denton | TX | 76205 | N | 11.22.19 | N | | | | | X | X | |
| Clare | Christine | San Pedro | CA | ? | N | 11.22.19 | N | | | | X | | | |
| Bornt | Rhonda | Athens | TN | ? | N | 11.22.19 | N | | | | | X | | |
| Lonis | Kimberly | Akron | OH | 44312 | N | 11.22.19 | N | | | | | X | | |
| Lynch | Mark | Flat Rock | NC | ? | N | 11.22.19 | N | | | | | X | | |
| Williams | Clathyn | Tacoma | WA | 98404 | N | 11.22.19 | N | | | | | | | X |
| Tharp | Tawnya | Wampum | PA | 16157 | N | 11.22.19 | N | | | | | X | | |
| Singer | Debra | Anderson | IN | ? | N | 11.22.19 | N | | | | | X | | |
| Smokowicz | Leslie | Martinsburg | WV | 25404 | N | 11.22.19 | N | | | | X | | | |
| Majewski | Marc | Downers Grove | IL | ? | N | 11.22.19 | N | | | | X | X | | |
| Payne | Donnie | Clarkston | MI | 48348 | N | 11.22.19 | N | | | | | X | | |
| Dolan | Michael | Plainfield | IN | ? | N | 11.22.19 | N | | | | | X | | |
| Eden | William | San Francisco | CA | ? | N | 11.22.19 | N | | | | X | X | | |
| Humphrey | James | Cleveland | TN | 37312 | N | 11.22.19 | N | | | | X | | | |
| Vecchio | Vincent | Hammonton | NJ | 08037 | N | 11.22.19 | N | | | | | X | | |
| Parker | Patrick | ? | ? | 43228 | N | 11.22.19 | N | | | | X | | | |
| Rehg | Todd | St. Louis | MO | ? | N | 11.22.19 | N | | | | | X | | |
| McClain | Deborah | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Seidenspinner | Jeff | Berlin | MD | 21811 | N | 11.22.19 | N | | | | | X | | |
| Tucker | Michele | Sun City | CA | 92586 | N | 11.22.19 | N | | | | | X | | |
| Bahnfleth | Doreen | Hudson | FL | 34667 | N | 11.22.19 | N | | | | | X | | |
| Bailey | Elaine | Barto | PA | 19504 | N | 11.22.19 | N | | | | | X | | |
| Hunt | Michelle | Baltimore | MD | ? | | 11.22.19 | N | | | | | | X | X |
| Ahmed | Priom | Brooklyn | NY | ? | N | 11.22.19 | N | | | | | X | | |
| Green | Robert | Elmira | NY | 14904 | N | 11.22.19 | N | | | | | | | X |
| Bax | Nicolas | Bethesda | MD | ? | N | 11.22.19 | N | | | | | X | | |
| Holden | Lynne | Wellsburg | WV | 26070 | N | 11.22.19 | N | | | | | X | | |
| Greene | Andrew | Philadelphia | PA | 19137 | N | 11.22.19 | N | | | | X | | | |
| Maranville | Daniel | Fairfield | CT | 06825 | N | 11.22.19 | N | | | | | X | X | |
| Van Hooser | Judy | Lewisville | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Bowe | Sean | Westminster | CO | 80023 | N | 11.22.19 | N | | | | X | | | |
| Valverde | Jonathan | Roy | WA | 98580 | N | 11.22.19 | N | | | | X | | | |
| Nichols | Kelly | ReN | NV | 89511 | N | 11.22.19 | N | | | | | X | | |
| Langehaug | Mary | Maddock | ND | 58348 | N | 11.22.19 | N | | | | | | | X |
| Crabtree | Beverly | Whitley City | KY | 42653 | N | 11.22.19 | N | | | | | X | X | |
| Heidt | Hannah | Waterville | ME | 04901 | N | 11.22.19 | N | | | | | X | | |
| Holloway | Matthew | Riverside | NJ | 08075 | N | 11.22.19 | N | | | | | | | X |
| Berg | Jessie | Huron | SD | 57350 | N | 11.22.19 | N | X | | | X | X | | |
| Cribari | Anastasia | Gunnison | CO | 81230 | N | 11.22.19 | N | | | | | X | | |
| Cseko Jr. | Joe | Patterson | KY | 12563 | N | 11.22.19 | N | | | | | X | | |
| Chipp | Stephen | Weidman | MI | ? | N | 11.22.19 | N | | X | | X | X | | |
| Bruce | Paula | Lake in the Hills | IL | 60156 | N | 11.22.19 | N | | | | | X | | |
| Bever | Mark | Peoria | AZ | 85382 | N | 11.22.19 | N | X | | | | X | | |
| Burke | Kim | ? | ? | ? | N | 11.22.19 | N | | | | X | X | | |
| Goebel | James W. | Davenport | IA | 52803 | N | 11.22.19 | N | | | | | X | | |
| Lewis | Jennifer | Jacksonville | FL | 32258 | N | 11.22.19 | N | | | | | X | | |
| Glover | Karen | Pleasant Grove | AL | 35127 | N | 11.22.19 | N | | | | | X | | |
| Padjen | Sheryl | Salt Lake City | UT | 84121 | N | 11.22.19 | N | | | | X | X | | |
| Harris | David | New Albany | IN | 47150 | N | 11.22.19 | N | | | | | X | | |
| Steele | Amy | ? | ? | ? | N | 11.22.19 | N | | | | | X | | |
| Walker | Richard | Sparks | NV | ? | N | 11.22.19 | N | | | | | X | X | |
| Jakucki | Joseph | Mesa | AZ | ? | N | 11.22.19 | N | X | | | X | X | | |
| Plontus | Janet | Royal Oak | MI | ? | N | 11.22.19 | N | | | | | X | X | |
| Parker | Tamara | Derby | KS | 67037 | N | 11.22.19 | N | | | | X | | | |
| Scott | Jens | Keller | TX | ? | N | 11.22.19 | N | | | | | | | X |
| Moore | Wendy | TerraceLecanto | FL | 34461 | N | 11.22.19 | N | | | | X | | | |
| Alford | Michele | Calimesa | CA | 92320 | N | 11.22.19 | N | | | | X | | | |
| Alam | Mohammad | Brooklyn | NY | 11232 | N | 11.22.19 | N | | | | X | | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arslan | Engrin | Sparks | NV | ? | N | 11.22.19 | N | | | | | X | | |
| Roberts | James | Marietta | GA | 30064 | N | 11.22.19 | N | | | | X | X | | |
| Perotti | Gloria | Ontario | NY | 14519 | N | 11.22.19 | N | | | | X | X | | |
| Jackson | Kelly | Washington | DC | 20017 | N | 11.22.19 | N | | | | | X | | |
| Villanueva | Haydee | Bronx | NY | 10456 | N | 11.22.19 | N | | | | | X | | |
| Salts | Amy | Buford | GA | 30519 | N | 11.22.19 | N | | | | X | | | |
| Raymond | Jeffrey | Millbury | MA | ? | N | 11.22.19 | N | | X | | | X | | |
| Criswell | Christian | Philadelphia | PA | 19127 | N | 11.22.19 | N | | | | X | | | |
| Hermanson | Kiley | West Fargo | ND | 58078 | N | 11.22.19 | N | | | | | X | | X |
| Emmons | Gloria | Kalamazoo | MI | ? | N | 11.22.19 | N | | | | | | | X |
| Roberts | Rose Ann | High Falls | NY | ? | N | 11.22.19 | N | | | | | X | | |
| Hutchins | Joyce | Leland | NC | 28451 | N | 11.22.19 | N | | | | | X | | |
| Ferland | Katrina | Granite Bay | CA | ? | N | 11.22.19 | N | | | | | X | | |
| Jawa | Raj | Dorchester | MA | ? | N | 11.22.19 | N | | | | X | | | |
| Hsu | Israel | Bellerose | NY | ? | N | 11.22.19 | N | | | | | X | | |
| Hatfield | Ted | Greenfield | IN | 46140 | N | 11.22.19 | N | X | | | | X | | |
| Schatz | Michael | Nrth Wales | PA | 19454 | N | 11.22.19 | N | | | | X | | | |
| Eilbacher | Maryann | Fort Pierce | FL | ? | N | 11.22.19 | N | | | | | X | X | |
| Bogenrieder | Christine | Statham | GA | ? | N | 11.22.19 | N | | | | | X | | |
| McMillan | Roy | Curtis Bay | MD | ? | N | 11.22.19 | N | | | | | X | | |
| MacInnis | Kennedy | Oakland | CA | 94610 | N | 11.22.19 | N | | X | | | X | | |
| Simmons | Candace | Smyrna | TN | 37167 | N | 11.22.19 | N | | | | X | X | | |
| Farley | Sarah | Lexington | KY | ? | N | 11.22.19 | N | | | | | X | | |
| ConNr | Margaret | Tifton | GA | ? | N | 11.22.19 | N | | | | X | | | |
| Wagner | Lauren | Spring Grove | IL | 60081 | N | 11.22.19 | N | | | | | X | | |
| Keltesch | Jodi | Mukwonago | WI | 53149 | N | 11.22.19 | N | | | | | X | | |
| Vaughn | Matthew | Austin | TX | 78751 | N | 11.22.19 | N | | | | | X | | |
| Gould | Tiffany | Grafton | OH | 44044 | N | 11.22.19 | N | | | | | X | | |
| Rasmussen | Craig | Vashon | WA | 98070 | N | 11.22.19 | N | | | | X | | | |
| Porta | Megan | York | PA | 17406 | N | 11.22.19 | N | | | | X | | | |
| Fragala | Mike | Springfield | VA | ? | N | 11.22.19 | N | | | | | | | X |
| Carey | Jennifer | Miami | FL | ? | N | 11.22.19 | N | | | | X | | | |
| Harrison | Belinda | Heidelberg | MS | ? | N | 11.22.19 | N | | | | | | | X |
| Aylor | Pamela | Sun City Center | FL | 33573 | N | 11.22.19 | N | | | | X | | | |
| Hoolwerf | Dan | Dallas | TX | 75227 | N | 11.22.19 | N | | | | | X | | |
| Seaton | Calvin | Chesterfield | VA | 23235 | N | 11.22.19 | N | | | | | X | | |
| Kloc | Michael | Macon | GA | ? | N | 11.22.19 | N | | | | | X | | |
| Price | Donna | Spring | TX | ? | N | 11.22.19 | N | | | | | X | | |
| Giaimo | David | Canton | GA | 30115 | N | 11.22.19 | N | | | | X | | | |
| DeJesus | Michael | Sicklerville | NJ | 08081 | N | 11.22.19 | N | | | | | | | X |

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Notice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Krieger | Elazar | Meadows | NY | 11365 | N | 11.22.19 | N | | | | | X | | |
| Pierce | Colin | Philadelphia | PA | ? | N | 11.22.19 | N | | | | | X | | |
| Jewell | Charles | Ripley | WV | 25271 | N | 11.22.19 | N | | | | X | | | |
| Joyce | Benny | Raleigh | NC | 27613 | N | 11.22.19 | N | | | | | X | | |
| Woodward | Susan | Canton | GA | 30114 | N | 11.22.19 | N | | | X | | | X | | |
| Culwell | Mary | Silverhill | AL | 36576 | N | 11.22.19 | N | | | | | X | X | |
| Rahenkamp | Daniel | Tampa | FL | ? | N | 11.22.19 | N | | | | | | | X |
| Kurtz | Janet | New Port Richey | FL | ? | N | 11.22.19 | N | | | | | | X | X |
| Carpenter | James | Owingsville | KY | ? | N | 11.22.19 | N | | | | | | | X |
| Green | ShanNn | BYville | OH | 43723 | N | 11.22.19 | N | | | | | X | | |
| White | Denise | Suwanee | GA | 30024 | N | 11.22.19 | N | | | | | X | | |
| Eschrich | Kristin | Grayslake | IL | 60030 | N | 11.22.19 | N | | | | X | X | | |
| Mattice | Thomas | Modesto | CA | 95350 | N | 11.22.19 | N | | | | | | | X |
| Chandler | Michael | Nrthfield | ME | ? | N | 11.22.19 | N | | | | | X | | |
| Marshall | Elizabeth | Oklahoma City | OK | ? | N | 11.22.19 | N | | | | X | X | | |
| Quick | Mary | Chapel Hill | NC | ? | N | 11.22.19 | N | | | | | X | X | |
| Poskey | Judith | Zionsville | IN | 46077 | N | 11.22.19 | N | | | | | | | X |
| Tanner | Rema | Nashville | TN | ? | N | 11.22.19 | N | | | | X | | | |
| Keaster | Gary | Miami | FL | ? | N | 11.22.19 | N | | | | | X | | |
| Jefferson | Deloris | Ellenwood | GA | ? | N | 11.22.19 | N | | | | | X | | |
| McLoughlin | Kethryn | Peculiar | MO | ? | N | 11.22.19 | N | | | | X | | | |
| Fernandez | David | Richmond | VA | 23223 | N | 11.22.19 | N | | | | | X | | |
| Cherry | Patricia | Donalsonville | GA | 39845 | N | 11.22.19 | N | | | | | X | | |
| Dye | Philip | Rainbow City | AL | 35906 | N | 11.22.19 | N | | | | | X | | |
| Owens | Denny | San Pablo | CA | 94806 | N | 11.22.19 | N | | | | | | | X |
| DiGiovani | Mary | Orlando | FL | 32839 | N | 11.22.19 | N | | | | | X | | |
| Clem | Tami | Hutchinson | KS | 67502 | N | 11.22.19 | N | | | X | | X | X | |
| Scott | Lawrence | Belchertown | MA | | N | 11.22.19 | N | | | | | X | | |
| Geist | Johannes | Alexandria | VA | 22304 | N | 11.22.19 | N | | | | | X | | |
| Vogel | Kathleen | Irvine | CA | 92603 | N | 11.22.19 | N | | | | | X | | |
| Rocheleau | Jessica | ? | ? | ? | N | 11.22.19 | N | | | | X | | | |
| Keith | Diana | Rockford | IL | ? | N | 11.22.19 | N | | | | X | | | |
| Fontana | Domenic | King of Prussia | PA | ? | N | 11.22.19 | N | | | | | X | | |
| Stocks | Tina | Durant | OK | 74701 | N | 11.22.19 | N | | | | X | | | |
| Chaney | Kevin | Olathe | KS | ? | N | 11.22.19 | N | | | | | X | | |
| Walker | Sheryl | Carbondale | IL | 62901 | N | 11.22.19 | N | | | | | X | | |
| Francis | Rob | PalN | TX | 75075 | N | 12.2.19 | N | | | | | X | | |
| Francis | Lori | PalN | TX | 75075 | N | 12.2.19 | N | | | | | X | | |
| Dimbach | Mitchell | Fullerton | CA | 92835 | N | 11.22.19 | N | | | | | X | | |
| Feller | Robert | Millville | NJ | ? | N | 11.22.19 | N | | | | | X | | |

Objections to In re Equifax, Inc. Settlement

| Last Name | First Name | City | State | Zip | Has a Lawyer? | Date Rec'd | Fulfilled Criteria? | Regulator Representations? | Attorneys Fees? | Ntice? | Total Relief? | Relief Per Class Members? | Claims Process? | Objection Basis Unclear |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forsyth | John P. | ReN | NV | 89509 | N | 11.22.19 | N | | | | | | | X |
| Foutch | Pam | Springfield | IL | ? | N | 11.22.19 | N | | | | | X | | |
| Irmen | Carla | Springfield | MO | 65804 | N | 11.22.19 | N | | | | | | | X |
| Johnson | Kevin | Lexington | MA | 02421 | N | 08.09.19 | Y | | | | | X | | |
| Kinslow | Travis | Tigard | OR | 97224 | N | 11.22.19 | N | | | | | X | | |
| Levy | James | Ridgefield | CT | 06877 | N | 11.22.19 | N | | | | | X | | |
| Payne | Lori | Mount Juliet | TN | 37122 | N | 11.22.19 | N | | | | | X | | |
| RiteNur | Keri | Strasburg | VA | ? | N | 11.22.19 | N | | | | | X | X | |
| Sanders | Cicki | Hudson | FL | 34867 | N | 11.22.19 | N | | | | | X | | |
| Sinclair | Alan | Sanata Cruz | CA | 95060 | N | 09.23.19 | Y | | | | X | X | | |
| Swan | Jack | Henderson | NJ | 89074 | N | 11.22.19 | N | | | | | X | | |
| Tauraso | Michael | Bethel | WA | ? | N | 11.22.19 | N | | | | X | | | |

# Exhibit 10

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

| TIME SUMMARY FOR INCEPTION TO SEPTEMBER 30, 2019 | | | SUPPLEMENT THROUGH NOVEMBER 30, 2019 | | | |
|---|---|---|---|---|---|---|
| Firm | Total by Firm | Total by Firm | | Total by Firm | Total by Firm | |
| | Hours | Lodestar | Hours | Lodestar | Hours | Lodestar |
| **Court Appointed Leadership** | | | | | | |
| Barnes Law Group, LLC | 3,164.10 | $1,807,848.50 | 205.50 | $122,655.00 | 3,369.60 | $1,930,503.50 |
| Cohen Milstein Sellers & Toll, PLLC | 1,444.50 | $980,137.00 | 3.90 | $2,514.00 | 1,448.40 | $982,651.00 |
| DiCello Levitt Gutzler | 4,275.80 | $3,004,355.00 | 265.30 | $171,222.50 | 4,541.10 | $3,175,577.50 |
| Doffermyre Shields Canfield & Knowles, LLC | 2,873.60 | $2,873,600.00 | 284.10 | $284,100.00 | 3,157.70 | $3,157,700.00 |
| Doss Firm, LLC | 1,141.80 | $720,030.00 | 0.00 | $0.00 | 1,141.80 | $720,030.00 |
| Evangelista Worley LLC | 608.80 | $372,600.00 | 2.40 | $1,642.50 | 611.20 | $374,242.50 |
| Gibbs Law Group LLP | 2,305.10 | $1,282,741.50 | 28.00 | $19,381.00 | 2,333.10 | $1,302,122.50 |
| Griffin & Strong P.C. | 221.70 | $92,965.00 | 0.00 | $0.00 | 221.70 | $92,965.00 |
| Hausfeld LLP | 2,274.60 | $1,286,259.00 | 16.80 | $10,039.00 | 2,291.40 | $1,296,298.00 |
| Milberg Tadler Phillips Grossman LLP | 1,661.30 | $1,158,597.50 | 0.00 | $0.00 | 1,661.30 | $1,158,597.50 |
| Tadler Law LLP | 14.20 | $11,530.00 | 0.90 | $732.50 | 15.10 | $12,262.50 |
| Morgan & Morgan Complex Litigation Group | 1,604.60 | $1,230,361.30 | 24.30 | $14,741.40 | 1,628.90 | $1,245,102.70 |
| Murphy, Falcon & Murphy | 839.80 | $544,064.50 | 9.30 | $8,194.50 | 849.10 | $552,259.00 |
| Stueve Siegel Hanson LLP | 6,444.20 | $4,592,801.00 | 527.70 | $372,045.50 | 6,971.90 | $4,964,846.50 |
| **Other Consumer Counsel** | | | | | | |
| Ahdoot & Wolfson | 19.70 | $10,697.50 | 0.00 | $0.00 | 19.70 | $10,697.50 |
| Alexander Schack | 26.60 | $9,830.00 | 0.00 | $0.00 | 26.60 | $9,830.00 |
| Barrack, Rodos & Bacine | 3.00 | $2,310.00 | 0.00 | $0.00 | 3.00 | $2,310.00 |
| Berger & Montague P.C. | 53.70 | $35,289.50 | 0.00 | $0.00 | 53.70 | $35,289.50 |
| Blood, Hurst & O'Reardon LLP | 73.80 | $39,031.00 | 0.00 | $0.00 | 73.80 | $39,031.00 |
| Buether Joe & Carpenter, LLC | 5.40 | $2,767.50 | 0.00 | $0.00 | 5.40 | $2,767.50 |
| Christensen Young & Associates | 18.20 | $10,920.00 | 0.00 | $0.00 | 18.20 | $10,920.00 |
| Colson Hicks Eidson | 7.30 | $4,560.00 | 0.00 | $0.00 | 7.30 | $4,560.00 |
| Consumer Justice Center | 19.90 | $8,955.00 | 0.00 | $0.00 | 19.90 | $8,955.00 |
| David A. Bain, LLC | 23.60 | $12,036.00 | 0.00 | $0.00 | 23.60 | $12,036.00 |
| Dorros Law | 4.20 | $2,520.00 | 0.00 | $0.00 | 4.20 | $2,520.00 |
| Eggnatz Pascucci | 13.70 | $7,192.50 | 0.00 | $0.00 | 13.70 | $7,192.50 |
| Emerson Firm, PLLC | 8.90 | $7,075.50 | 0.00 | $0.00 | 8.90 | $7,075.50 |
| Emerson Scott LLP | 44.90 | $35,695.50 | 0.00 | $0.00 | 44.90 | $35,695.50 |
| Federman & Sherwood | 60.40 | $51,040.00 | 0.60 | $510.00 | 61.00 | $51,550.00 |
| Fink Bressack | 23.60 | $15,056.00 | 0.00 | $0.00 | 23.60 | $15,056.00 |
| Finkelstein & Thompson | 29.90 | $21,965.00 | 0.00 | $0.00 | 29.90 | $21,965.00 |
| Fleming Law Firm, PLLC | 20.90 | $10,697.50 | 0.40 | $220.00 | 21.30 | $10,917.50 |
| Geragos & Geragos, APC | 96.10 | $61,665.00 | 0.00 | $0.00 | 96.10 | $61,665.00 |

| | TIME SUMMARY FOR INCEPTION TO SEPTEMBER 30, 2019 | | SUPPLEMENT THROUGH NOVEMBER 30, 2019 | | | |
|---|---|---|---|---|---|---|
| **Firm** | **Total by Firm** | **Total by Firm** | | **Total by Firm** | **Total by Firm** |  |
| | **Hours** | **Lodestar** | **Hours** | **Lodestar** | **Hours** | **Lodestar** |
| Goldman Scarlato & Penny, P.C. | 67.70 | $48,407.50 | 0.00 | $0.00 | 67.70 | $48,407.50 |
| Grabar Law Office | 22.60 | $17,515.00 | 0.00 | $0.00 | 22.60 | $17,515.00 |
| Green & Noblin P.C. | 4.20 | $1,424.00 | 0.00 | $0.00 | 4.20 | $1,424.00 |
| Gustafson Gluek PLLC | 159.40 | $93,295.00 | 0.00 | $0.00 | 159.40 | $93,295.00 |
| Hannon Law Firm, LLC | 120.40 | $22,084.00 | 0.00 | $0.00 | 120.40 | $22,084.00 |
| Harris Lowry Manton | 9.50 | $3,325.00 | 0.00 | $0.00 | 9.50 | $3,325.00 |
| Hellmuth & Johnson | 22.70 | $18,704.50 | 0.00 | $0.00 | 22.70 | $18,704.50 |
| Kantrowitz, Goldhamer & Graifman, P.C. | 22.10 | $18,785.00 | 0.00 | $0.00 | 22.10 | $18,785.00 |
| Keller Rohrback | 95.80 | $44,721.50 | 2.00 | $650.00 | 97.80 | $45,371.50 |
| Levi & Korsinsky, LLP | 24.70 | $19,786.00 | 0.80 | $668.00 | 25.50 | $20,454.00 |
| Daniel Mirarchi, Esq. | 4.00 | $2,340.00 | 0.00 | $0.00 | 4.00 | $2,340.00 |
| Mastando & Artrip, LLC | 21.10 | $9,495.00 | 0.00 | $0.00 | 21.10 | $9,495.00 |
| NastLaw LLC | 29.20 | $21,112.00 | 0.00 | $0.00 | 29.20 | $21,112.00 |
| O'Brien Law Firm | 10.10 | $6,565.00 | 0.00 | $0.00 | 10.10 | $6,565.00 |
| Quinn, Connor, Weaver, Davies & Rouco | 7.40 | $4,215.00 | 0.00 | $0.00 | 7.40 | $4,215.00 |
| Robbins Arroyo | 17.50 | $7,952.50 | 0.00 | $0.00 | 17.50 | $7,952.50 |
| Saltz, Mongeluzzi, Barrett & Bendesky, P.C. | 13.50 | $7,222.50 | 0.00 | $0.00 | 13.50 | $7,222.50 |
| Sanford Heisler Sharp, LLP | 519.80 | $106,274.00 | 0.00 | $0.00 | 519.80 | $106,274.00 |
| Saveri & Saveri, Inc. | 7.00 | $3,640.00 | 0.00 | $0.00 | 7.00 | $3,640.00 |
| Scott Cole & Associates, APC | 11.00 | $6,350.50 | 41.20 | $20,538.00 | 52.20 | $26,761.50 |
| Spector Roseman & Kodroff, PC | 14.80 | $9,339.00 | 0.00 | $0.00 | 14.80 | $9,339.00 |
| Stein Mitchell Beato & Missner LLP | - | $0.00 | 153.90 | $58,067.50 | 153.90 | $58,067.50 |
| Stritmatter Kessler Whelan Koehler Moore | 158.00 | $63,030.00 | 0.00 | $0.00 | 158.00 | $63,030.00 |
| Stull, Stull & Brody | 55.70 | $52,137.50 | 14.30 | $12,999.50 | 70.00 | $65,137.00 |
| The Giatras Law Firm, PLLC | - | $0.00 | 19.20 | $5,040.00 | 19.20 | $5,040.00 |
| The Miller Law Firm | 108.50 | $52,911.00 | 0.00 | $0.00 | 108.50 | $52,911.00 |
| Webb, Klase & Lemond, LLC | 28.10 | $15,092.50 | 0.00 | $0.00 | 28.10 | $15,092.50 |
| Wilentz, Goldman & Spitzer, P.A. | 22.70 | $18,727.50 | 0.00 | $0.00 | 22.70 | $18,727.50 |
| Withers Bergman LLP | 6.50 | $4,712.50 | 0.00 | $0.00 | 6.50 | $4,712.50 |
| | | | | | | |
| **TOTAL FOR LEADERSHIP** | **28,874.10** | **$19,957,890.30** | **1368.20** | **$1,007,267.90** | **30,242.30** | **$20,965,158.20** |
| **TOTAL FOR NON-LEADERSHIP** | **2,137.80** | **$1,028,467.50** | **232.40** | **$98,693.00** | **2,370.20** | **$1,127,033.50** |
| **TOTAL ALL FIRMS** | **31,011.90** | **$20,986,357.80** | **1600.60** | **$1,105,960.90** | **32,612.50** | **$22,092,191.70** |

# Exhibit 11

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

| EXPENSE SUMMARY FOR INCEPTION TO SEPTEMBER 30, 2019 | | SUPPLEMENT THROUGH NOVEMBER 30, 2019 | |
|---|---|---|---|
| **Category** | **Total** | **Category** | **Total** |
| Federal Express, Local Courier, Postage | $6,701.47 | Federal Express, Local Courier, Postage | $436.67 |
| Hotels | $90,474.21 | Hotels | $1,857.45 |
| Meals | $29,879.40 | Meals | $91.98 |
| Air Travel | $129,988.63 | Air Travel | $4,951.32 |
| Discovery Costs | $25,102.06 | Discovery Costs | $1,184.55 |
| Pacer, Electronic Research | $167,808.19 | Pacer, Electronic Research | $27,208.54 |
| Experts | $466,408.16 | Experts | $0.00 |
| Court Fees | $52,900.66 | Court Fees | $400.00 |
| Process Service | $9,058.30 | Process Service | $0.00 |
| Hearing Transcripts | $6,812.85 | Hearing Transcripts | $0.00 |
| Ground Transportation (Mileage, Rental Car, Parking, Taxi, Rideshare) | $28,647.23 | Ground Transportation (Mileage, Rental Car, Parking, Taxi, Rideshare) | $1,011.14 |
| Miscellaneous | $104,493.55 | Miscellaneous | $3,128.55 |
| Mediation Services | $129,758.75 | Mediation Services | $1,732.50 |
| | | | |
| **TOTAL** | **$1,248,033.46** | **TOTAL** | **$42,002.70** |

| CUMULATIVE TOTAL | $1,290,036.16 |
|---|---|

# Exhibit 12

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Class Counsel's Omnibus Declaration In Support Of Plaintiffs'
Motion for Final Approval of Settlement and Response to
Various Objections

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   STEPHEN ADKINS, an individual and
     Michigan resident, on behalf of himself and all
11   others similarly situated,                                    No. C 18-05982-WHA

12              Plaintiff,

13      v.

14   FACEBOOK, INC.,                                               **ORDER ON MOTION FOR**
                                                                   **CLASS CERTIFICATION**
15              Defendant.                                         **AND MOTIONS TO STRIKE**

16   _____/

17                                   **INTRODUCTION**

18          This is a putative class action by plaintiff Stephen Adkins against defendant Facebook,

19   Inc.  Plaintiff asserts a claim for negligence based on Facebook's alleged faulty security

20   practices in collecting and storing plaintiff's information.  These faulty practices allegedly

21   allowed hackers to break into Facebook's platform and pilfer the personal information of 29

22   million Facebook users worldwide, including more than four million users in the United States.

23   The operative complaint seeks relief in the form of a credit monitoring service for the victims,

24   in addition to compensatory, statutory, and punitive damages.  The operative complaint also

25   seeks declaratory relief (Amd. Compl. at 48) (Dkt. No. 193).

26          A prior order walked through the coding vulnerability which allowed the data breach

27   (Dkt. No. 153).  In brief, when three features on Facebook's platform interacted, "access

28   tokens" became visible.  Similar to a password, access tokens permitted users to enter their

     account.  Once these access tokens became visible, those accounts became vulnerable to entry

**United States District Court**
For the Northern District of California

1    by strangers.  In this way, the hackers entered 300,000 accounts in September 2018 (Bream

2    Decl. ¶¶ 11–17; Amd. Compl. ¶¶ 95–97, 100) (Dkt. Nos. 97; 193)

3           The hackers ran two separate search queries from within these 300,000 accounts.  The

4    first yielded the names and telephone numbers and/or e-mail addresses of fifteen million users

5    worldwide (2.7 million in the United States).  The second yielded more sensitive information on

6    fourteen million users worldwide (1.2 million in the United States).  The information taken

7    from this second group included names, telephone numbers, e-mail addresses, gender, date of

8    birth, and, to the extent the fields were populated, workplace, education, relationship status,

9    religious views, hometown, self-reported current city, and website.  Within this second group,

10   the hackers also obtained the user's locale and language, the type of device used by the user to

11   access Facebook, the last ten places the user was "tagged" in or "checked into" on Facebook,

12   the people or pages on Facebook followed by the user, and the user's fifteen most recent

13   searches using the Facebook search bar.  The original 300,000 users who had their accounts

14   entered into also had the same information taken as this second group (Bream Decl. ¶¶ 10–12,

15   18–19).

16          In February 2019, five named plaintiffs filed a consolidated complaint which averred ten

17   claims.  An order consolidated eleven putative class action lawsuits filed in this district which

18   arose from this data breach.  Following Rule 12 practice, in August 2019, only one named

19   plaintiff, Stephen Adkins, and two claims remained (Dkt. Nos. 76, 78, 96, 108, 113, 115, 153).

20          Plaintiff now seeks to certify a class of all Facebook users whose personal information

21   became part of the September 2018 data breach.  Plaintiff seeks certification under Rule

22   23(b)(2), Rule 23(b)(3), and Rule 23(c)(4).  More specifically, plaintiff seeks injunctive relief

23   for a *worldwide* class under Rule 23(b)(2), namely plaintiff seeks certain changes to Facebook's

24   security practices to ensure no further harm comes to its users.  Plaintiff seeks damages on

25   behalf of a *nationwide* class under Rule 23(b)(3), related to the diminished value of personal

26   information and for Facebook to provide cash for future credit monitoring.  Finally, plaintiff

27   seeks certification of a *nationwide* class under Rule 23(c)(4) for those who seek additional

28

United States District Court

For the Northern District of California

1   individual damages resulting from the time spent devoted to the data breach, and who incurred

2   other individual injuries (Dkt. Nos. 193 at 47, 48; 198 at 1).

3       In opposing the class certification motion, Facebook concentrates most of its fire on the

4   Rule 23(b)(3) damages class. Primarily, Facebook opposes on the ground that individual issues

5   would predominate. Facebook also moved to strike two of plaintiff's expert declarations (Dkt.

6   Nos. 213–15). This order follows oral argument.

7                               **ANALYSIS**

8       This order first holds that plaintiff Stephen Adkins has sufficiently established Article

9   III standing because of a substantial risk of identity theft and also because he has lost time due

10  to the breach. Next, this order holds that Identity Theft Expert James Van Dyke's expert

11  opinion must be excluded because his methodology is unreliable. CPA Ian Ratner's expert

12  opinion, however, will be allowed. Finally, this order will certify an injunctive class under Rule

13  23(b)(2). The details now follow.

14      **1.    ARTICLE III STANDING.**

15      A prior order dated June 21, 2019, held that plaintiff Adkins had sufficiently established

16  standing (Dkt. No. 153 at 12). Then, as now, the only contentious element concerned the

17  injury-in-fact requirement. Then, as now, plaintiff Adkins sufficiently established injury due to

18  a substantial risk of future identity theft and also due to a continuing loss of time, all to follow.

19                  **A.    Substantial Risk of Identity Theft.**

20      No social security or credit-card numbers were taken in this hack. The hackers took

21  plaintiff's name, date of birth, phone number, gender, and hometown, among other information

22  (Dkt. No. 193 ¶ 102). Plaintiff, however, cannot change his date of birth or hometown and

23  would not be expected to change his gender merely on account of a data breach. This

24  information will abide, sensitive, long-term. This sensitivity, combined with the fact that the

25  information was not merely taken, but specifically targeted for theft, continues to confer a basis

26  for standing at this stage.

27

28

1    Facebook complains that plaintiff has so far suffered only three ████████████, all of

2    which went directly to his ████████. But his identity remains at peril, theft-wise. That is

3    enough.

4    A finding of a substantial risk of identity theft does not depend on concrete examples

5    that the stolen information has already been misused. In *Krottner v. Starbucks Corporation*,

6    "Starbucks sent a letter to . . . affected employees alerting them to the theft and stating that

7    Starbucks had no indication that the private information ha[d] been misused." 628 F.3d 1139,

8    1140–41 (9th Cir. 2010) (internal quotation marks and citation omitted). Nevertheless, a

9    credible threat of real and immediate harm had been sufficiently alleged there because the

10   information: (i) had been sensitive and (ii) had been stolen. *Id*. at 1143. Plaintiff's risk of

11   identity theft stems from the sensitivity of the information taken combined with its theft.

12   The information taken in *Krottner* — name, address, social security number — included

13   information sufficiently similar to the information taken here. A social security number, though

14   even worse to lose, is like one's date of birth, prior history, and gender. They remain with the

15   victim forever, thereby "g[i]v[ing] hackers the means to commit fraud or identity theft." *In re*

16   *Zappos.com, Inc.*, 888 F.3d 1020, 1027–29 (9th Cir. 2018), *cert. denied sub nom., Zappos.com*

17   *v. Stevens*, 139 S. Ct. 1373 (2019). Information such as this will never go bad, and so, hackers

18   can warehouse this stolen data for years before using it. The substantial risk remains.

19   It is true that in *Zappos*, our court of appeals mentioned there were concrete examples of

20   identity theft and specific instances of hacked accounts in that data breach, whereas in this case

21   there are none. 888 F.3d at 1027–28. But *Zappos* also recognized that "[a] person whose

22   [personal information] has been obtained and compromised may not see the full extent of

23   identity theft or identity fraud for years. And it may take some time for the victim to become

24   aware of the theft." *Id*. at 1028–29 (internal quotations omitted). Nothing in *Zappos* suggests

25   that the absence of evidence of misuse kills standing. At this stage, information loss can be

26   deemed sensitive without the victim being yet drained of identity.

27   According to Facebook, a social security number on its own can cause identity theft,

28   whereas the information taken in this data breach does not have that power. Yet, one of

4

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████   Even Facebook's own expert
recognized outside this litigation that "investigators find that a cellphone number is often even
more useful than a [s]ocial [s]ecurity number because it is tied to so many databases and is
connected to a device you almost always have with you" (Dkt. No. 231-2 at 2).  The *risk* of
identity theft is imminent, without a multi-link chain of inferences, even though no social
security number was taken.

The injury-in-fact requirement "helps to ensure that the plaintiff has a personal stake in
the outcome of the controversy."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)
(internal quotation marks and citation omitted).  The information taken in this breach
persuasively assures that plaintiff has such a stake.  Plaintiff has established harm for Article III
standing.

**B.      Loss of Time.**

In the alternative, the prior order dated June 21, 2019, found that plaintiff Adkins had
established Article III standing due to the harm of his loss of time.  Plaintiff's expert now
calculates that plaintiff spent ████████responding to this breach ████████████████████
████████████████Specifically, plaintiff Adkins testified he spent roughly ██████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████   Plaintiff's expert calculates
the total opportunity-cost of these damages as between ██████████████████████████
████████

At first blush, this amount of time might appear too small.  A small injury, however, can
still establish standing.  As noted in the context of administrative standing by the United States
Supreme Court in *United States v. Students Challenging Regulatory Agency Procedures
(SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (*citing,* Kenneth C. Davis, *Standing: Taxpayers and
Others*, 35 U. Chi. L. Rev. 601, 613 (1968)):

> "Injury in fact" reflects the statutory requirement that a
> person be "adversely affected" or "aggrieved," and it serves

United States District Court

For the Northern District of California

5

United States District Court
For the Northern District of California

1
2
3
4
5
6
7

> to distinguish a person with a direct stake in the outcome of
> a litigation — even though small — from a person with a
> mere interest in the problem. We have allowed important
> interests to be vindicated by plaintiffs with no more at stake
> in the outcome of an action than a fraction of a vote, see
> *Baker v. Carr*, 369 U.S. 186; a $5 fine and costs, see
> *McGowan v. Maryland*, 366 U.S. 420; and a $1.50 poll tax,
> *Harper v. Virginia Bd. of Elections*, 383 U.S. 663. . . . As
> Professor Davis has put it: "The basic idea that comes out
> in numerous cases is that an identifiable trifle is enough for
> standing to fight out a question of principle; the trifle is the
> basis for standing and the principle supplies the
> motivation."

Three United States courts of appeals have relied on this decision to hold that a mere trifle also

suffices under Article III. *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002); *Sierra Club,*

*Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 557 (5th Cir. 1996); *Doe v. County*

*of Montgomery, Ill.*, 41 F.3d 1156, 1159–60 (7th Cir. 1994). The time lost by plaintiff

establishes a harm for standing purposes.

### 2. FACEBOOK'S MOTIONS TO STRIKE EXPERT TESTIMONY.

This order now turns to Facebook's two *Daubert* motions to strike expert testimony.

Facebook moves to strike all of the various submissions of two of plaintiff's experts. These

experts are: (i) Identity Theft Expert James Van Dyke and (ii) CPA Ian Ratner.

#### A. Identity Theft Expert James Van Dyke.

This order finds that Expert Van Dyke did not base his testimony in sufficient facts or

data. Nor is his testimony the product of reliable principles and methods. And even accepting

the principles and methods he used, Van Dyke did not reliably apply these methods to the facts

of this case.

Expert Van Dyke's 29-page opinion testimony boils down to two conclusions. *First*,



*Second*,

Van Dyke cherry-picked his own prior expert opinions. He recycled a conclusion from

a different case. He removed references to a critical premise that does not apply here. More

specifically, in Van Dyke's report from the Anthem data breach case, Van Dyke highlighted the

United States District Court

For the Northern District of California

1    importance of social security numbers to identity theft:

2           More damaging forms of misuse often result from criminals
          amassing more elements of any one consumer's data —
3           akin to assembling all pieces of a puzzle, ***with the social
          security number being a key foundational element***.  As an
4           example . . . .

5    *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2017 WL 3730912 (N.D. Cal.

6    Mar. 21, 2017) (Dkt. No. 744-24 ¶ 19) (emphasis added).

7        In the report here, Van Dyke cut and pasted the same exact language except *he omitted*

8    *any reference to Social Security numbers being "key"* to the risk of identity theft described

9    (Van Dyke Decl. ¶ 3.n.):

10           More damaging forms of misuse often result from criminals
          amassing more elements of any one consumer's data — akin
11           to assembling all pieces of a puzzle.  As an example . . . .

12        Plaintiff argues Van Dyke simply took care to omit a fact that did not apply to this case,

13    namely the part about social security numbers.  This misses the point.  The point is that the

14    social security numbers ranked as "key" — until this case, where they weren't stolen, so the

15    "key" element got removed.  This inconsistency means Van Dyke says whatever is convenient

16    to the case at hand.

17        In addition, Van Dyke's opinions and declarations were riddled with error.  His report

18    referred to the theft of maiden names.  Maiden names were not taken in the instant breach.  He

19    later admitted this inclusion "was a mistake."  He also posited that internet protocol addresses

20    were stolen in the attack and spun a hypothetical that depended on a person knowing "the

21    names of family members."  He further spent much of his report homing in on the theft of

22    mailing addresses.  Yet, to repeat, none of this information was taken in the breach.  Moreover,

23    in a separate paragraph in his declaration, he referred to how "victims now suffer reduced value

24    of personal information."  This, too, he later walked back, conceding that this paragraph should

25    never have been included.  Van Dyke also wrote that he was "retained by [p]laintiffs' counsel in

26    March of 2018" in this case.  But this data breach occurred in September 2018.  That sequence

27    seems impossible (Van Dyke Decl. ¶¶ 2.a., 3.o, 4.b., 5.d., 5.h., 5.l., 6.p., 6.q., 7.f., 8.a.; Reply

28    Decl. ¶¶ 2.b.ii., 2.g., 2.i.) (Dkt. Nos. 197-32; 231-4).

In a reply declaration, Van Dyke cited to a "beta" "proprietary algorithm" that he claimed generated a "risk level" of 6 out of 10 for the Facebook breach (Reply Decl. ¶ 2.h.). Facebook deposed him. Inexplicably, it then came to light that he also generated this rating by *including information that had not been compromised in the breach* ███████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████. *When the correct information was input instead, the risk level fell to a 1.2 for Group 1 users and* ████████████ ████████████████████████████████ Van Dyke II Dep. at 465:18–467:9). According to Van Dyke's own website, less than a two out of ten risk level describes a breach that does not warrant consumer action of any kind (Dkt. No. 248-6). This result squarely conflicts with his expert opinion.

In response to all this, counsel primarily argue that Van Dyke's testimony rested on "his knowledge and experience in the field [of consumer identity fraud]" (Opp. Br. at 9) (Dkt. No. 233). This order presumes Van Dyke is an expert. Yet his report is too flawed. Even a good expert can do a bad job.

The vast majority of the testimony submitted by Van Dyke was boilerplate from other cases. It could have been written about any data breach, and lacked sufficient analysis. It contained too many errors to be relied upon. For the foregoing reasons, Facebook's motion to strike Van Dyke's Report is **GRANTED**.

### B. CPA Ian Ratner.

Facebook also challenges the admissibility of CPA Ratner's expert testimony as to his damages analysis. *First*, Facebook argues that he ignores foundational problems in calculating the diminished value of personal information. *Second*, Facebook argues that his time and risk based damages are hypothetical and unreliable. This order disagrees.

"Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). As to Facebook's first argument, CPA Ratner attempted to show, through economic models, that access to personal information in-and-of-itself has market value, and that the hackers taking the personal information freely from Facebook is a value lost to the class

1    members (Ratner Decl. ¶¶ 45, 46).  He also showed that companies are willing to pay money

2    (such as through targeted advertising) for access to someone's personal information.  In

3    addition, he pointed out that Facebook's role in the data breach deprived plaintiff and the class

4    members from being able to control access to their personal information and monetize it if they

5    so chose.  This calculation is admissible.

6          Turning to Facebook's second argument, CPA Ratner attempted to calculate class-wide

7    damages for class members' risk and stress from the breach, time spent dealing with the

8    consequences of it, and the risk of identity theft.  Facebook argues that these are mere averages

9    and don't address the characteristics of each class member.  "Normally, failure to include

10   variables will affect the analysis' probativeness, not its admissibility."  *Hemmings v. Tidyman's*

11   *Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (quotations omitted).  This too must be attacked by

12   cross examination.  The motion to strike CPA Ratner's expert opinion is **DENIED**.

13         **3.    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

14         Plaintiff moves to certify a damages class under Rule 23(b)(3), an "issues" class under

15   Rule 23(c)(4), and an injunctive-only class under Rule 23(b)(2).  Facebook trains most of its

16   fire on the Rule 23(b)(3) class.  This order therefore begins there.

17                **A.    Rule 23(b)(3).**

18         Before certification, the district court "must conduct a 'rigorous analysis' to determine

19   whether the party seeking certification has met the prerequisites of Rule 23."  *Zinser v. Accufix*

20   *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (*quoting Valentino v. Carter-Wallace,*

21   *Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).  As part of this inquiry, the district court has an

22   obligation to ensure "that a class representative must be part of the class and possess the same

23   interest and suffer the same injury as the class members."  *Gen. Tel. Co. of Sw. v. Falcon*, 457

24   U.S. 147, 156 (1982) (internal quotation marks and citations omitted).  This sometimes involves

25   delving into the merits to resolve factual disputes to the extent necessary to determine whether

26   the Rule 23 elements have been met.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–52

27   (2011).

28

**United States District Court**
For the Northern District of California

9

United States District Court
For the Northern District of California

1    Plaintiff Stephen Adkins seeks to represent a nationwide class of Facebook users who

2    had information taken in the data breach.  The Terms of Service provide that California law

3    governs both the terms "and any claim, without regard to conflict of law provisions" (Dkt. No.

4    98-1 § 4.4).  Thus, California law applies even as to tort claims, and a nationwide class will not

5    become bogged down in the differences among state laws of negligence.  In that connection,

6    plaintiff Adkins, on behalf of the class, seeks to recover on two theories of damages under

7    California law:  (i) the cost of a credit monitoring service and (ii) the diminished value of the

8    personal information taken in the breach.  This order holds that neither harm presents a

9    cognizable injury, and so the damages class cannot be certified.

10                               *i.*       *Credit Monitoring.*

11    Under his first theory of liability, plaintiff Adkins seeks the cost of credit monitoring on

12    behalf of the class.  Plaintiff's expert CPA opines that credit monitoring will be appropriate to

13    redress the class's "increased risk, stress, nuisance, inconvenience, and annoyance of identity

14    theft" (Ratner Decl. ¶ 32).  Significantly, plaintiff Adkins has never paid any money as a result

15    of this data breach.  Had he paid for credit monitoring, for example, he could prevail on this

16    claim.  But he has never purchased any credit monitoring service.  Plaintiff Adkins's theory of

17    liability instead relies on the aforementioned injuries, like his present stress and the increased

18    risk of identity theft.

19    While plaintiff Adkins has standing to sue based on his increased risk of future identity

20    theft, in California, this risk alone does not rise to the level of appreciable harm to assert a

21    negligence claim.  California has long held that "[i]t is fundamental that a negligent act is not

22    actionable unless it results in injury to another."  *Fields v. Napa Milling Co.*, 164 Cal. App. 2d

23    442, 447 (1958).  California also holds that "[n]ominal damages, to vindicate a technical right,

24    cannot be recovered in a negligence action, where no actual loss has occurred."  *Id*. at 448.  In

25    addition, in a different context, the California Supreme Court has indicated that the mere threat

26    of future harm is insufficient.  *See Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18

27    Cal. 4th 739, 743 (1998).

28

United States District Court

For the Northern District of California

1    No binding decision has ever decided whether or not future harms from a data breach

2    can anchor a claim for negligence.  In California, such an exception would follow from an

3    already recognized exception to the present harm requirement, namely the cost of future

4    medical monitoring due to an exposure to toxic chemicals.  *Potter v. Firestone Tire & Rubber*

5    *Co.*, 6 Cal. 4th 965, 1009 (1993).  The weight of persuasive decisions militates against

6    extending this exception to cases like ours.

7    In a non-precedential decision, our court of appeals applied Arizona law to reject

8    extending medical monitoring to credit monitoring in a data breach when the plaintiff did not

9    present any actual evidence of identity theft.  *Stollenwerk v. Tri–West Health Care All.*, 254 F.

10   App'x 664, 665–67 (9th Cir. 2007).  In *Ruiz v. Gap, Inc.*, Judge Samuel Conti relied on

11   *Stollenwerk* to reject that the medical monitoring exception would apply to credit monitoring

12   under California law.  Judge Conti opined that medical monitoring was a personal injury

13   permitted to protect public health, but "[t]here is no such public health interest at stake in lost-

14   data cases."  622 F. Supp. 2d 908, 914–15 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir.

15   2010).  Judge Conti's decision was upheld on appeal on other grounds.

16   Since these decisions, Judge Gary Klausner and Judge Richard Seeborg have extended

17   the medical monitoring exception to credit monitoring.  *Corona v. Sony Pictures Entm't, Inc.*,

18   No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) (Judge Gary

19   Klausner); *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *4

20   (N.D. Cal. Sept. 14, 2016) (Judge Richard Seeborg).  The undersigned judge would be inclined

21   to follow these decisions and hold credit monitoring available to data breach victims.

22   Yet, even these decisions cannot help plaintiff Adkins here.  Specifically, Judge

23   Klausner permitted "*costs already incurred*, including costs associated with credit monitoring,"

24   and specifically dismissed the negligence theory of an increased risk of *future* harm.  *Corona*,

25   2015 WL 3916744, at *4–5 (emphasis added).  Judge Richard Seeborg also held that "[t]hose

26   who have incurred such out-of-pocket expenses have pleaded cognizable injuries, whereas those

27   who claim only that they may incur expenses in the future have not."  *Castillo*, 2016 WL

28   9280242, at *4.

United States District Court
For the Northern District of California

1    This dividing line is further supported by another non-precedential decision by our court

2    of appeals.  In *Krottner v. Starbucks, Corporation*, our court of appeals applied Washington law

3    to dismiss a data breach claim for negligence because there was only the *risk* of future identity

4    theft.  406 F. App'x 129, 131 (9th Cir. 2010).  Because the claim for negligence could not

5    proceed merely on such risk, our court of appeals expressly did not reach the issue of whether

6    credit monitoring would be appropriate.  *Id*. at 131–32.  One district judge relied on this

7    decision to dismiss a California negligence claim in the context of a data breach.  *See In re Sony*

8    *Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 n.17 (S.D.

9    Cal. 2012) (Judge Anthony Battaglia) (California and Washington law not "materially

10   different").

11   So too here.  Plaintiff Adkins has incurred zero out-of-pocket expenses as a result of this

12   breach.  The time he spent reacting to this data breach may be recoverable as damages in its

13   own right, but has no relationship to the remedy of future credit monitoring.  To the contrary, ██

14   ████████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   On the evidence presented, therefore, no decision supports that plaintiff Adkins can

18   allege a viable negligence claim under a credit monitoring theory.  If some members of the class

19   bought credit monitoring because of this data breach, perhaps they can assert such a claim.

20   Plaintiff Adkins, however, is not a member of the class he seeks to represent.  He therefore

21   cannot represent the class on this theory.

22                           *ii.*        *Diminished Value of Personal Information.*

23   Two prior orders deemed the harm of diminished value of personal information

24   insufficient to satisfy injury for purposes of Section 17200 and the CLRA (Dkt. Nos. 153, 185).

25   Plaintiff Adkins now asserts an entirely new theory on how to calculate this harm for the

26   negligence claim (Ratner Decl. ¶¶ 45, 46) (emphasis added):

27            *[Personal information], such as that maintained by*
             *Facebook, derives value from remaining private.*  The
28            value of this privacy should be exclusively enjoyed by
             Facebook's users.  However, as a result of the [d]ata

                                                    12

United States District Court
For the Northern District of California

1
2
3
4
5
6
7

> [b]reach, Facebook essentially granted access to [personal information] for free and conveyed value to unauthorized third parties without compensation to the rightful owners of that information — its users.  When the users provided their [personal information] to Facebook, they received the value of Facebook's social media services in return.  When Facebook allowed third parties to access the users' [personal information], no value was conveyed to the users.  *The value that Facebook's users lost as a result of that conveyance can be measured through the [m]arket [m]ethod (a standard valuation method) by analyzing what third parties pay to access comparable information.*

In other words, plaintiff's injury stemmed from loss of privacy and loss of royalties.  Again, however, this calculus is too speculative to assert a claim for negligence.  Plaintiff never asserts that he would have paid anyone to access comparable information.  Although it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information has independent economic value to an individual user.  That Adkins *could* have received royalties is not a cognizable injury.

For these reasons, the Rule 23(b)(3) class is **DENIED**.

**B.    Rule 23(c)(4).**

"When appropriate," Rule 23(c)(4) allows a court discretion to certify an action "as a class action with respect to particular issues."  The text does not explain when such a class would be appropriate.  Here, plaintiff seeks certification of damages claims for lost time.  Duty and breach would be tried on a common basis.  Causation and damages would be tried individually.  This order agrees with Facebook that "issue certification is not appropriate where the determination of liability itself requires an individualized inquiry" (Dkt. No. 215 at 25 *quoting* 1 *McLaughlin on Class Actions* § 4:43 (15th ed. 2018)).  That is, bifurcating elements of liability "does not materially advance the overall disposition of the case because" the court must still consider "plaintiff-specific matters such as fact of injury, causation . . . and extent of damage" (*ibid. quoting McLaughlin*, *supra*).  Plaintiff's request to certify an issues-only class under Rule 23(c)(4) is **DENIED**.

13

**United States District Court**
For the Northern District of California

### C.     Rule 23(b)(2).

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). Rule 23(a) considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." None of these elements are contested, and this order finds they have been satisfied. Plaintiff stands shoulder to shoulder with other class members when it comes to forward-looking relief. He is typical and adequate.

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, plaintiff seeks injunctive relief to impose a set of changes on Facebook's conduct to ensure no further harm comes to him and the class.

What plaintiff seeks, on behalf of the class is, as follows. *First*, a declaration that Facebook's existing security measures do not comply with its duties of care to provide adequate security. *Second*, to comply with its duties of care, Facebook must implement and maintain reasonable security measures, including that Facebook engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Facebook's systems on a periodic basis, and ordering Facebook to promptly correct any problems or issues detected by such third-party security auditors (Dkt. No. 193 ¶ 221).

In addition, plaintiff seeks an order that Facebook engage third-party security auditors and internal personnel to run automated security monitoring. Any final order may also embed a monitor into Facebook's headquarters. Other requested relief includes: ordering that Facebook audit, test, and train its security personnel regarding any new or modified procedures; ordering that Facebook user applications be segmented by, among other things, creating firewalls and

14

1   access controls so that if one area is compromised, hackers cannot gain access to other portions

2   of Facebook's systems; ordering that Facebook conduct regular database scanning and securing

3   checks; ordering that Facebook routinely and continually conduct internal training and

4   education to inform internal security personnel how to identify and contain a breach when it

5   occurs and what to do in response to a breach; and ordering Facebook to meaningfully educate

6   its users about the threats they face as a result of the loss of their financial and private

7   information to third parties, as well as the steps Facebook users must take to protect themselves

8   (*ibid.*).

9       Facebook argues that plaintiff does not have standing to allege prospective injunctive

10  relief because Facebook has fixed the bug that caused the data breach. This order holds that

11  Facebook's repetitive losses of users' privacy supplies a long-term need for supervision, at least

12  at the Rule 23 stage. At this stage, there is a likelihood of future harm to warrant potential

13  relief. Plaintiff has standing.

14      Nor must plaintiffs specify the precise injunctive relief they will ultimately seek at the

15  class certification stage." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir.

16  2019). Rule 23(b)(2) "[o]rdinarily will be satisfied when plaintiffs have described the general

17  contours of an injunction that would provide relief to the whole class, that is more specific than

18  a bare injunction to follow the law, and that can be given greater substance and specificity at an

19  appropriate stage in the litigation through fact-finding, negotiations, and expert testimony."

20  *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).

21      Here, under these circumstances, the requested relief of an order compelling Facebook

22  to promptly correct any problems or issues detected by such third-party security auditors

23  outlines the "general contours" of the requested injunction at this stage. A more specific

24  remedy can be fashioned later in this litigation. Facebook ultimately has not sufficiently shown

25  otherwise that "crafting uniform injunctive relief will be impossible." *B.K.*, 922 F.3d at 973.

26  Rule 23(b)(2) is satisfied. Plaintiff's motion to certify a Rule 23(b)(2) class is **GRANTED**.

27

28

United States District Court

For the Northern District of California

**CONCLUSION**

For the foregoing reasons, Facebook's motion to strike Identity Theft Expert James Van Dyke's expert opinion is **GRANTED**. Facebook's motion to strike CPA Ian Ratner's expert opinion is **DENIED**. Plaintiff's motion for class certification of a damages class under Rule 23(b)(3) and under Rule 23(c)(4) is **DENIED**. Plaintiff's motion for class certification of an injunctive class under Rule 23(b)(2) is **GRANTED**.

The following class is **CERTIFIED** for injunctive purposes only: All current Facebook users whose personal information was compromised in the data breach announced by Facebook on September 28, 2018.

This class definition shall apply for all purposes, including settlement. Plaintiff Stephen Adkins is hereby **APPOINTED** as class representative. Plaintiff's counsel Andrew Friedman of Cohen Milstein Sellers & Toll PLLC, John Yanchunis of Morgan & Morgan Complex Litigation Group, and Ariana Tadler of Tadler Law LLP are hereby **APPOINTED** as class counsel. By **DECEMBER 19 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice, including by first-class mail and via Facebook.

This order shall remain redacted for seven calendar days to allow any party an opportunity to seek relief from the court of appeals on the accompanying order on the motions to seal (Dkt. No. 259).

**IT IS SO ORDERED.**

Dated: November 26, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE