**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC - 5 2019

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No. 1:17-md-2800-TWT

**CONSUMER ACTIONS**

Chief Judge Thomas W. Thrash, Jr.

Fairness Hearing Date 12/19/2019

Notice Of Appearance And Intent
To Appear

### OBJECTION TO THE GHASTLY $380 MILLION SETTLEMENT

"The Court finds that it will likely be able to approve the proposed settlement as fair,
reasonable, and adequate." From Doc 742 pg 2 of 15 dated 07/22/19. The objector
vehemently disagrees and requests (a) the proposed settlement class should not be
certified for settlement purposes pursuant to Rule 23; (b) the settlement should not be
approved as fair, reasonable, and adequate and, in accordance with the settlement's
terms, (c) this matter should not be dismissed with prejudice; (d) class counsel's
application for attorneys' fees and expenses should be denied; (e) the application for
the class representatives to receive service awards should be denied and (f) the tsunami
of material issues and errors that the parties made and/or concealed be corrected.

## Table Of Contents

Introduction.................................................................................. 3
Objector Has Standing...................................................................3
Any Approval Violates 11th Circuit Case Law..............................................5
The Parties Are Engaged In Shenanigans By Violating Freedom Of Speech And The
Fourth Amendment Right To Due Process By Deterring Objections.....................6
The Requirement To Disclose Past Objections Is Biased And Prejudicial..............7
The Twenty Five Page Limit On Objections Is Not In The Long Notice...................11
The Requirement Of Objectors To Be Deposed Or Their Objections Will Be Struck
Is Part Of The Scheme To Scare Off Objectors...........................................11
JND Administration Is Intentionally Violating Our Privacy Rights A La Equifax.....13
The Failure To Inform Class Members What Information Was Stolen From Them
Individually Before Settling This Case Violates Due Process.............................16
Identity Theft Protection Is Also Required Not Just Credit Monitoring.................18
The 147.9 Million Class Members Should Not Have To File A Claim..................19
The 125.00 Cash Component Was A Bad Faith Bait Trick ..............................20
Is There Insurance Coverage Involved In These Settlements?......................................22
The Deal Does Not Take Into Account The Differences In State Laws...................22
The Claims Payment Process Is A Waste Of Money For The Class......................23
An Opt Out Form Is Missing To Keep The Deal Break Number Low...................23
The Monitoring Value Along With The Fee Request Are Deceitfully Inflated.........24
Summary..................................................................................24
The Following Issues Were Left Out Of The Objection Due To Page Constraints
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## INTRODUCTION

Apparently "The Devil Went Down to Georgia" again, this time looking for a class action settlement to steal. I see Cohen Milstein, Miller Law, and Gustafson are involved. They are the same culprits that double crossed me and a class a while ago in another case that was reversed on appeal and it will be dismissed in the second appeal. As a result of this finding, the objector decided to dig into this proposed settlement and as expected found a tsunami of material issues and errors that some singularly and others combined absolutely prohibit approval of this overhyped, quid pro quo deal under law. This objection is filed on his behalf and on behalf of all 147.9 million class members. He is serving his appearance in this case and notice of intent to appear at the hearing, requests ten minutes of time to address the court and/or answer its questions and adopts any objections that are not inconsistent with his own. The plague of material errors and issues left unaddressed, with others covered-up, so spectacularly violate Rule 23(e) and due process that this sellout of a collusional, stiff the victims, bad faith "deal" is now known as "The Equifax Whack-A-Mole Settlement."

## The Objector Has Standing

Christopher Andrews is of legal age, a valid class member, objector, a "U.S. consumer" along with being a resident of the State of Michigan and he wrote this objection himself. The objector visited the bugged class website on 09-12-19 entered his last name, applicable digits of his social security number and was informed

that some unknown, undisclosed, personal information was "impacted." (aka stolen) see Exhibit 1. He then filed a claim for damages with the administrator on 9-12-19 at 9:21 a.m. and had to choose credit monitoring. See Exhibit 2. He therefore is a valid class member and has standing to object. This good faith objection will make vast improvements for the benefit of the entire class by the time all is said and done.

The objector does not presently intend to call any witnesses at the Fairness Hearing but reserves the right to do so, make use of any and all documents entered onto the docket by any settling party/objector/witness or any visual items used at this as well as future fairness hearings and question any witnesses testifying for this approval.

Based on the evidence, the objector contends that class counsel, named plaintiffs, the defendant, and the administrator colluded and schemed amongst themselves in a Faustian bargain by hijacking and settling this error ridden, unfair settlement for the gluttonous unjustified fees, awards, expenses and costs they demand by selling out the class. The class has been set up, hoodwinked and bamboozled into this collusional settlement orchestrated by the cabal of lawyers so rejection is required. It's a common divide and conquer strategy that games a crooked rigged system and treats the unnamed class as pawns in their settlement scheme. The only thing missing in this now exposed zany charade of mistakes, missteps, blunders, buffoonery, cover-up and double-cross is the Benny Hill Show Theme Song.

https://www.youtube.com/watch?v=zQf2TiwBFHo

## Any Approval Violates 11th Circuit Case Law

Since this is not a certified class action, class counsel negotiated this settlement from a position of weakness; they can't even threaten to take this case to trial. The class should be certified first to allow plaintiffs to negotiate from a better bargaining position instead of rolling over. Equifax knows this and dictated the terms of the deal just like they created the settlement agreement. There is no way class counsel co-wrote that agreement based on the plague of errors below, Equifax did. Our lawyers and class reps had to accept what Equifax imposed so everyone arranged for this rah rah deal to get it approved. The $1,920.00 in credit monitoring value is fraudulently inflated a minimum of 240% and that is the retail cost, the actual cost is a fraction of that, it's all smoke and mirrors. The parties rigged this deal to claim 20% or $77 million in inflated fees, costs and awards for 18 months of "work" done by others. In return Equifax is let off the hook for a lowball amount and the case disappears, a quid pro quo. "In order to approve the settlement agreement, the district court was required to determine that it was fair, adequate, reasonable, and not the product of collusion." Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n, 18 F.3d 1527, 1530 (11th Cir. 1994). This proposed settlement looks like a jigsaw puzzle with half the pieces gone. The following six factors are what a court should consider to decide whether a settlement agreement in a class action is fair: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery

at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; (See note bottom of pg 12,) and (6) the stage of proceedings at which the settlement was achieved, Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). The refusal to structure a settlement to maximize class recovery but instead provide for their own personal benefit was a breach of class counsel's fiduciary duty. E.g. Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship, 874 F.3d 692, 694 (11th Cir. 2017).

**The Parties Are Engaged In Shenanigans By Violating Freedom Of Speech And The Fourth Amendment Right To Due Process By Deterring Objections**

The parties are muzzling freedom of speech and violating due process rights by deterring objections from being filed. Class members who wish to object must follow an unfair, bad faith, multistep, draconian objection requirement protocol or their objection is struck. This has the effect of watering down objections, intimidating and/or scaring off class members and/or their counsel. This is unconscionable, illegal, bias, unfairly prejudicial, it undermines and violates Rule 23, public and judicial trust, it violates due process, it's bad faith, lacks transparency, basic mechanisms of fairness and it appears this is set up for a rubber stamp approval in Equifax's home town.

Doc 742 at 13.7 states "The Notice will also state that any Settlement Class Member who does not file a timely and adequate notice of intent in accordance with this Section waives the right to object or to be heard at the Fairness Hearing and shall be forever

barred from making any objection to the Settlement."

Response: Why is this not mentioned or explained in the long notice? My reading of this is if a class member files an objection they also have to file a notice of intent to appear or the objection is struck. This is prejudicial, violates due process and makes the long notice defective, it must be redone and the class re-noticed.

**The Requirement To Disclose Past Objections Is Biased And Prejudicial**

The settlement agreement and long notice requires that an objector include "A statement identifying all class action settlements to which you have objected in the previous five (5) years;" See Settlement Agreement Doc 739-2 pg 16 @20 and the Court's Order Doc. 742 pg 10. Such a requirement is ineffective at preventing bad-faith objections but merely creates an additional hurdle for objectors to jump through. See Trabakoolas v. Watts Water Tech., Inc., No. 3:12-cv-01172-WHO (EDL) (Dkt. 276), at *4 (N.D.Cal. Feb. 14, 2013) (excising from class notice the requirement to list past suits in which the objector or his attorney has objected); see generally Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, 5 (2010), available at ttps://www.fjc.gov/sites/default/files/materials/2017/NotCheck.pdf (directing courts to avoid notice language that places "burdensome hurdles" for "free exercise of rights, such as onerous requirements to submit a 'satisfactory' objection or opt-out requirements. (Last visited August 01, 2019)  When class counsel and the court require

disclosure of past objections to be able to file an objection in this case or else have it

stricken from the record, this shows prejudice, bias, violates due process and Rule 23.

This requirement is being used to deter class members from filing objections so as to

not upset the expected approval. The statement below is applicable in this case which

the objector adopts: Case 1:09-md-02036-JLK Document 3698 Entered on FLSD

Docket 11/13/2013 written by Patrick Sweeney. "Requesting information beyond that

undermines a class member's rights under Rule 23, and impinges on evidentiary Rules

403 and 404, which prohibit character evidence as a basis for making a prejudicial

ruling. Every objection should be judged on its own merits. If it is frivolous or

unmeritorious, the Court may overrule those objections on that basis. If the objections

have merit, they should be sustained, regardless of who made them. The requirements

of submitting information regarding unrelated cases and an objector's, or his

attorney's, history of litigation is patently irrelevant to the merits of any objection.

Federal Rules of Evidence 403 articulates that evidence otherwise relevant may not be

admissible if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needless presentation of cumulative evidence. The

committee notes to Rule 403 state there are certain reasons such information is not

admissible as "[t]hese circumstances entail risks which range all the way from

inducing decision on a purely emotional basis, at one extreme, to nothing more harmful

than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321." (1975 Committee Notes to Rule 403.) Federal Rule of Evidence 404 prohibits introducing this information and it is impermissible evidence of the Objectors', or their attorney's, character. Character evidence is rarely, if ever, admitted within the realm of civil trials. Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."). (2006 Committee Notes to Rule 404.) (*See Generally, U.S. v. DeMarco,* 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony against credibility of opposing counsel.) In this case, information regarding these Objectors, their attorney, and their previous objections to Class Action settlements is not only irrelevant to this Court's decision at the upcoming fairness hearing but is proffered only to color the Court's perception of these persons and sway the Court's decision regarding these objections. This is improper and therefore the requirements in

the order, settlement, and notice requiring this information should be struck.

Rule 23 provides a means for objections. To infer an objection is less meritorious merely because its author has made one before would undermine Rule 23. Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation.] Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value. *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003). Class Counsel's attempt to discourage objectors by requiring information not germane to this cause cannot be enforced." It appears the defendants and class counsel colluded and decided not to release mailing addresses and chose to hide/ignore that fact for the inflated attorney/ expense fees while settling for a low ball settlement in return, a quid pro quo.

Just so the objection is not illegally struck, this objector includes a list of objections going back five years from 11-19-19, under protest:

Lithium Ion Battery, three cases, Northern District of CA MDL 4:13-md-02420-YGR
Optical Disk Drive, two cases, Northern District of CA 10-MD 2143 RS
Edwards vs. National Milk Producers in Northern Dist of CA 4:11-cv-04766-JSW
Packaged Ice Litigation Eastern District of MI, Case No. 2:08-MD-1952-PDB
Red Bull SDNY Case No.1:13-cv-00369-KPF, Case No.1:13-cv-080008-KPF
Shane vs. Blue Cross Blue Shield, two cases, Eastern District of MI 10-14360

Total improvements/saving over the years is $46 million with that number rising substantially by the time all is said and done in this case.

**The Twenty Five Page Limit On Objections Is Not In The Long Notice**

The settlement agreement Doc. 739-2 @ 20 states, "Objections shall not exceed twenty-five (25) pages." The court's order Doc 742 pg 9 @20 says the same thing. That important 25 page limit fact was intentionally left out of the Long Notice so the lawyers can request the court strike any objection that is over the page limit or the court can do it sua sponte. It's deceitful, prejudicial, bias, bad faith against the class, it undermines Rule 23 and violates due process. Just so this objection is not illegally struck it was reduced to just twenty five pages, with exhibits, what a con. The intent is and does prevent a well throughout and comprehensive objection from being filed. This requirement helps everyone but the class and intentionally keeps other withheld issues out of the appeals court scope of review. It has also prevented this objector (and possibly other objectors) from expanding on existing issues, raising additional material issues and leaving out extensive authorities out of the objection because of the hidden, unfair, unreasonable, inadequate page limit. The process must be halted and the class re-noticed with accurate information for round two.

**The Requirement Of Objectors To Be Deposed Or Their Objections Will Be Struck Is Part Of The Scheme To Scare Off Objectors**

Number 7 in the Long Notice: "A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between 11/19/2019 and 12/5/2019 during which you are available to be deposed by counsel for the Parties."

It does not state in any of the filings that objectors who file an objection, or who may or may not appear with or without a lawyer at the hearing agree that they are now subject to the jurisdiction of the District Court and being deposed in Georgia. Objector objects because the pattern of being ambiguous and leaving out critical details is misleading and deceiving. This objector has reviewed 250 settlements over the years. The issues and errors combined above and below are the most extreme example of due process violations and bias he has ever seen, it's historic for all the wrong reasons. The four hurdles above are designed by the parties and stated by the court's Order 742 cause objectors harassment, ambiguity, confusion, annoyance, embarrassment, oppression, undue burden and expense. These requirements also have the effect of watering down and/or deterring objections from being filed. These are constitutional violations that violate due process and freedom of speech, it's tacit authorization and/or deliberate indifference to those violations made by class counsel, it's arbitrary, capricious, undermines Rule 23(e), violates Rule 23(a)(4) and Rule 23 (g)(4), ROPC, 11th Circuit and Supreme Court law. To prevent an illegal striking of his objection, the objector is available on these four dates per the ambiguous notice requirements, 11-19-19, 11-20-19, 11-21-19 and 11-22-19. Note, 226,000 people have objected to this settlement via an online petition as of 11/18/19, a legal world record. See https://threatpost.com/200k-sign-petition-against-equifax-data-breach-settlement/148560/ and https://www.change.org/p/don-t-let-equifax-escape-liability

**JND Administration Is Intentionally Violating Our Privacy Rights A La Equifax**

JND Administration should have had a disclosure like the following on the home page;

"This website uses cookies and other tracking technologies to improve user experience, track anonymous site usage, permit sharing on social media networks, sending email and advertising purposes. By continuing to use this website you accept the use of cookies. Click here to accept and/or read more about how we use cookies."

Or:  "Your privacy. We use cookies to improve your experience on our site and to show you personalized advertising. To find out more, read our privacy policy and cookie policy. (There is a box with a check mark to click on that says)  I'm OK with that or you accept the use of cookies by closing or dismissing this notice.

Or: "This site uses cookies to provide you with more responsive and personalized service and to show personalized advertisements. By using this site you agree to our Legal Disclaimer, and Online Privacy and Cookie Policy." Click below to consent to the use of this technology and the processing of your personal data.

Or: "Yahoo is part of Verizon Media. Verizon Media and our partners, need your consent to access your device and use your data (including location) to understand your interests, and provide and measure personalized ads." (A box has to be checked to agree or disagree to continue)

From Twitter's own home page; "This page and certain other Twitter sites place and read third party cookies on your browser that are used for non-essential purposes including targeting of ads. Through these cookies, Google, LinkedIn, NewsCred and Logicad collect personal data about you for their own purposes. Learn more."

The class website was last verified as being bugged as of today, November 19, 2019.

Class counsel and JND Administration did not disclose to the tens of millions of

visitors that they are allowing Google, Facebook, Twitter and Bing to place five to six

tracking (surveillance) cookies on the home page of the class website, each section at

the top of the page and in all the sections that drop down including the claims section.

Tracking includes the IP address, your location and information about your browser,

computer, and operating system; along with non persistent and persistent cookies being

inserted into to a visitor's browser. We will call this "Cookiegate" see Exhibit 3.

 In the "I would like to" section where a visitor clicks on "Check your eligibility" window then enters their last name and last six digits of their social security number, there are six tracking cookies, under the "File a claim" section there are five tracking cookies, in the "Upload a document" section there are five tracking cookies, in the "Check my claim status" there are six cookies, under "Contact the administrator" there are six tracking cookies and under the document section there are five tracking cookies placed. The page you actually file a claim on, six cookies are inserted. These cookies are placed into every visitor's device collecting data from the claimant without their knowledge, authorization, compensation nor did this objector or the class members agree to any legal disclaimers, online privacy and cookie policies. One Google cookie stays on your device for two years and the other two, Facebook and Twitter may be staying on their forever so tens of millions of visitors to the website and those who filed a claim were illegally and are currently being tracked. Is there any additional malware/spyware (other than cookies) on the website presently? The cookies present a legitimate risk to website security and user privacy. Download "Ghostery" to verify. Equifax allows our information to be stolen and class counsel and the administrator allowed Google, Twitter, Facebook and Bing to track us illegally which allows them to take that information and add to their profile of each person in their own databases to sell to third parties. What a treasonous, double cross sellout, they all need to be fired.

Next, anyone could easily figure out the correct missing three digit Social Security number using pen and paper by knowing one other item to match to the balance of the numbers if they had them. Or, using that one item and a "Brute-Force Attack", the correct sequence can be figured out in one second using a typical laptop. By using a claimant's IP, a visitor can be simply identified with other information Google, Facebook and Twitter possess. The claims process exposed 67% of our social security number again and it was all unnecessary as you will read further below.

What an illegal and egregious violation of our privacy by the parties, a la Equifax. History and tradition reinforce that a concrete injury for Article III standing purposes occurred when the administrator allows Google, Facebook and Twitter or any other third party to track a person's internet activity without authorization. The parties intentionally failed to disclose that fact in plain sight on the first page of the website. Since the visitor was not told about the tracking, the cookie policies did not accept nor give permission to place cookies, JND Administration and class counsel should be fired and replaced immediately or they can forfeit their fees which go back into the fund for the benefit of the class. This is a class action waiting in the wings against all the parties. I and many claimants would not have continued on the site if we were told about this illegal tracking up front. I would consider being a named plaintiff in a class action against them and request $1,000.00 on behalf of each person who visited the site, was illegally tracked and had their privacy invaded for a second time in this case.

**The Failure To Inform Class Members What Information Was Stolen From Them Individually Before Settling This Case Violates Due Process**

The class is forfeiting all claims against the company that can cause *lifelong* damage to everyone for a short term solution and the parties are downplaying the problems we face. The terms of this "settlement" (immunity) with Equifax are utterly unacceptable. Extremely valuable and irreplaceable information was stolen from all of us but Equifax and the plaintiffs won't disclose what "impacted" information was stolen from each individual.  According to sources in and out of the record, the following information was/may have been stolen from 147.9 million victims such as name, home address, city, state, zip code, date of birth, social security number, telephone numbers, email addresses, dispute documents like copies of tax returns, pictures taken from the drivers licenses, voter registration cards, financial account numbers, credit or debit card number, in combination with any required security code, access code, or password that would permit access to the consumer's financial account, tax liens, civil judgments, copies of utility bills, property tax bills, public records etc for those disputing an issue on their reports that is required to prove who they are, any biometric information, meaning data generated by electronic measurements of an individual's unique physical characteristics, such as a fingerprint, voice print, retina or iris image, birth certificate or other unique physical characteristics or digital representation and other information that they have put into their records. Also included is any non-FCRA information data

such as information that bears on a consumer's credit worthiness, credit standing,

credit capacity, character, general reputation, personal characteristics, or mode of

living, and any other data that is/was used or expected to be used or collected in whole

or in part for any purpose. Each victim needs to know what was stolen from them.

A minimum of twenty three different pieces of information were stolen per person for

a grand total of up to 3,401,700,000. (three billion four hundred million seven hundred

thousand) separate pieces of information. (147.9 million class members multiplied by

23 pieces each) That information was stolen during the 1680 hours multiple hackers

had access to Equifax's servers making 10,000 inquiries and there could be more

missing data that has not been disclosed. The most valuable information that could

ever be stolen from someone was and is irreplaceable. This objector and each of the

147.9 million victims have the right to know exactly what information Equifax allowed

to be stolen from each of us that was in their care, custody and control *before* deciding

what the best course of action to take regarding our claims. The more information that

was stolen the increased amount of damage caused to myself and each class member so

the more damages someone would be owed. Some may have lost 10%, 50% or 100%

of the total. Without knowing what was stolen, a class member and this objector cannot

in good faith opt out because we have no idea what was stolen, the value of it, have no

evidence to present to an attorney or to a court if they wanted to move forward on their

own and what to ask for in damages. Our lawyers have intentionally failed to explain

to the unnamed class the ramifications of the theft of their data before forcing us into this unfair, unreasonable and inadequate deal. Re-notice to the class is required.

**.      Identity Theft Protection Is Also Required Not Just Credit Monitoring**

Out lawyers failed to disclose to the 147.9 million victims in the long notice that this deal should also include identity theft monitoring. Credit monitoring services often market themselves as safeguards of your credit profile, but that's not quite the case.

Here's what credit monitoring can't do:

- It can't prevent or alert you to identity theft or credit card fraud.
- It can't keep you from receiving phishing emails — or from opening them.
- It can't keep or alert you to someone from applying for credit in your name.
- It won't correct errors on your credit report.
- It can't alert or stop taxpayer identity theft and tax refund fraud.
- It can't stop or alert you to payday loan fraud.
- It can't stop or alert you to medical identity fraud
- It can't stop Medicare fraud
- It can't stop or alert you to change of USPS mailing address requests.
- It can't stop or alert you to orders for new utility, cable, and wireless services.
- It can't stop or alert you to check-cashing requests.

This settlement wants to help claimants with after the fact and future identity theft costs, but why not stop it first? The settlement should provide for credit monitoring **and** identity theft protection for free from all three credit agencies *forever,* since this is the biggest threat for each class member is *forever.* The ID Theft Monitoring service should alert consumers when stolen identity information is detected. This deal is a get rich, quick scheme by the lawyers and named plaintiffs who sold out the class.

**The 147.9 Million Class Members Should Not Have To File A Claim**

Apparently Equifax and our lawyers only want a small percent of the affected class to file a claim to keep their cost's low and the stock price high, cheating 95% or 140 million people out of damages. The parties failed to meet their burden to show that a claims process is necessary or desirable. This claims settlement is abusive because it is solely being utilized to reduce the payout to class members by Equifax with class counsel's blessing.  A directive from the Federal Judicial Center, which instructs that, "[w]hen the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." *Id*.; *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*(2010). Available at:http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf. The FJC's guide instructs district courts to consider whether "a claims process [is] actually necessary[]," cautioning that "[i]n too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." The parties are trying to keep most of the 147.9 million victims from participating in this deal is by using a "claims made" settlement process, which is dependent on each class member filing a claim. Class members should *not* be required

to file a claim, they should automatically be entitled to benefits since Equifax already knows who the valid class members are and possess class member's contact data. This claims process is a double cross by our lawyers and named plaintiffs. So, since Equifax has up to date mailing addresses and already knows who is entitled to relief, I request on my behalf, and on behalf of all 147.9 million absent class members, that Equifax send a letter to each of us by first class mail in an envelope disclosing which personal information was stolen from each class member. It should include a statement that the recipient is now automatically enrolled in the claim fund and is covered in a new deal with credit *and* ID theft monitoring for *life,* since the risk we face is for *life.* The envelope should also include a copy of the new revised long notice which will ensure all class members are properly noticed under Rule 23 and due process for round two after all the issues and errors are repaired, if possible. The class is not paying for past or future notice costs, the lawyers are due to their errors and double cross. The treacherous claims/notice program is a complete waste of money and unnecessary but saves Equifax a fortune by limiting claims underhandedly. It's a crooked rigged deal.

### . The 125.00 Cash Component Was A Bad Faith Bait Trick

If only 250,000 people out of 147.9 million class members had filed a claim for past out of pocket costs for credit monitoring they could receive the full $125.00 amount. As of 10-30-19, 3 million signed up for monitoring, the cash number is intentionally left undisclosed hmm. The parties knew all along the cash amount would be pennies on

dollar of the actual *past* yearly costs incurred by those who paid out of pocket for coverage in the past, millions of them. Applicable claimants paid just Equifax $30 a month for years for credit monitoring. Those who seek the cash component should also be able to obtain credit and ID monitoring as well for *future* damages that may occur even decades from now. If someone selects the cash option then that class member then has to pay $200.00 a year on their own starting today for just credit monitoring of all three reports. These conjoined issues are being unfairly separated out to ram this square approval through a round approval hole so our lawyers trick the class and help Equifax conserve cash. Equifax can unfairly limit liability, the lawyers get paid off with $77 million and the puppet named plaintiffs $2,500.00 in a quid pro quo deal. I would want $30,000.00 for all my stolen information described above if I were selling it, but Equifax allowed the information  to be stolen and now they and my lawyers are fine paying me a quarter or I forfeit that amount for free credit monitoring for four years worth retail, $800.00, uh…..no. The parties were scheming and possibly drinking whiskey out of a bottle in a smoke filled back room some place when these sellout amounts in this scheme were concocted. It's a conspiracy by class lawyers, the notice entity, the claims administrator, and the puppet named plaintiffs all done for their money first and in return Equifax is let off the hook for a fraction of the damages by selling out the 147.9 million member unnamed class. The objector requests that class counsel and all the named class representatives be fired for their treasonous

double cross which sold out the class under 23(a)(4), 23(g)(4), it's misconduct and they violated the Rules of Professional Conduct, they are inexperienced and/or inadequate.

**.      Is There Insurance Coverage Involved In These Settlements?**

Are there insurance policies involved in this settlement? Are D&O policies in play and being drawn on to pay for this settlement? Is Loyds of London involved? Are subsidiaries and affiliates insurance coverage in play?  How many policies are available and what is the amount of coverage for each contract and in total? Have the executives responsible when this breach occurred have they paid for any part of this settlement and if not why not? The number of polices, the amounts and copies of the contracts need to be disclosed and should have been disclosed to the class before we decided what to do. They should also be posted to the class website ASAP along with the objections filed and a copy of the fairness hearing transcript so the 147.9 million class members who were not at the hearing can find out what happened.

**.   The Deal Does Not Take Into Account The Differences In State Laws**

In Amchem Products Inc. v. Windsor, 521 U.S. 591, 625 (1997), holds that the adequate representation requirement of Federal Rule of Civil Procedure 23(a)(4) mandates the absence of "conflicts of interest between named parties and the class they seek to represent." The court must hold that Rule 23(a)(4)'s adequacy requirement is not satisfied right now because the 147.9 million member settlement class contains consumers from all fifty states and treats them as if they are all covered by one law.

A nationwide class cannot be certified and a pro rata distribution plan cannot be approved without first taking into account the substantial differences in state laws.

### The Claims Payment Process Is A Waste Of Money For The Class

Why send out a card with $.25 on of compensation on it, its de minimis. How much will that cost vs. sending out a postcard check? There is a huge cost difference and markup by the administrator doing it the present way which is a huge waste of money. Why not electronic deposit for those who can do that so they can receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods saving a tremendous amount of money for the class? This is not a new idea; it's being done in a case I am involved in right now. Our lawyers don't care; the cost is paid for with (OPM) Other People's Money, class money, they just want $77 million and retire.

### An Opt out Form Is Intentionally Missing To Keep The Deal Break Number Low

17.3 (from the settlement agreement); "Defendants also may at their sole discretion terminate this Agreement on 5 Business Days written notice to Class Counsel if more than a specified number of individuals submit valid requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for in camera review." A opt out form, in the proper languages, is intentionally missing on the class website to keep the opt out number below the deal break mark, voiding the

notice. That deal break number should have also been disclosed to the class. The astounding issues show collusion against the class so class counsel should be fired.

**The Monitoring Value And Fee Request Are Deceitfully Inflated-Its Misconduct**

The monitoring value is only worth $800.00 retail over four years, not $1,920.00 as our duplicitous lawyers claim to trick the class into to showing how "great" the deal is. See Exhibit 4. The lawyers did not come up with the 500,000 pages of evidence, they just assembled it from various sources, negotiated a lowball illegal lay down deal dictated by Equifax and are claiming unjustified credit and gouging us with inflated hours and fees for finding the named plaintiffs. But, because we have poor results it should be based on lodestar. Here is who really did all the work and got us the evidence; Federal Trade Commission, New York Department of Financial Services and Consumer Financial Protection Bureau, Federal Bureau of Investigation, Consumer Protection Financial Bureau, SEC, House Energy and Commerce Committee Senate Banking Committee, Fifty State Attorney Generals' (led by the Puerto Rico AG see Doc 773) and the Government Accounting Office. The evidence was provided by and paid for by the U.S. taxpayer, there is little risk to the class by moving forward.

**Summary**

The court has a legal, ethical and moral obligation to reject this scandalous, error plagued, trial balloon deal because it contains a multitude of material errors, omissions, collusion, bad faith, scheming, deception, misconduct, due process errors, it violates

freedom of speech, it has a missing opt out form, lowball reimbursement, it

undermines and violates Rule 23, 11th Circuit and  Supreme Court case law. It is crystal

clear that class counsel and named plaintiffs sabotaged this deal and betrayed the trust

of the class in favor of their own self-enrichment, its misconduct. I request class

counsel and named plaintiffs be fired without fees, costs or expenses under 23(a)(4)

and 23(g)(4), they are inadequate. This deal is a colossal failure under Rule 23(e).

The arrogance of the lawyers along with the historic number of issues and material

errors they made, ignored and covered-up in this Titanic wreck of a collusional

settlement, is equal to the arrogance of and fatal errors made 143 years ago by

General Custer at the Battle of the Little Bighorn.

This twenty five page objection, with four exhibits, plus a motion to seal his current

address and the sealed document were mailed to the administrator on 11/19/19 by

prepaid, first class, certified, return receipt mail. Since the USPS does not deliver to the

street address a P.O. Box is required.

I certify under penalty of perjury of the United States that all of the above is true and

accurate to the best of my knowledge.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394

E: caaloa@gmail.com P: 248-635-3810    November 19, 2019

disclosure of past objections to be able to file an objection in this case or else have it stricken from the record, this shows prejudice, bias, violates due process and Rule 23. This requirement is being used to deter class members from filing objections so as to not upset the expected approval. The statement below is applicable in this case which the objector adopts: Case 1:09-md-02036-JLK Document 3698 Entered on FLSD Docket 11/13/2013 written by Patrick Sweeney. "Requesting information beyond that undermines a class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling. Every objection should be judged on its own merits. If it is frivolous or unmeritorious, the Court may overrule those objections on that basis. If the objections have merit, they should be sustained, regardless of who made them. The requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any objection. Federal Rules of Evidence 403 articulates that evidence otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The committee notes to Rule 403 state there are certain reasons such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful

than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321." (1975 Committee Notes to Rule 403.) Federal Rule of Evidence 404 prohibits introducing this information and it is impermissible evidence of the Objectors', or their attorney's, character. Character evidence is rarely, if ever, admitted within the realm of civil trials. Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."). (2006 Committee Notes to Rule 404.) (*See Generally, U.S. v. DeMarco,* 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony against credibility of opposing counsel.) In this case, information regarding these Objectors, their attorney, and their previous objections to Class Action settlements is not only irrelevant to this Court's decision at the upcoming fairness hearing but is proffered only to color the Court's perception of these persons and sway the Court's decision regarding these objections. This is improper and therefore the requirements in

the order, settlement, and notice requiring this information should be struck.

Rule 23 provides a means for objections. To infer an objection is less meritorious merely because its author has made one before would undermine Rule 23. Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation.] Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value. *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003). Class Counsel's attempt to discourage objectors by requiring information not germane to this cause cannot be enforced." It appears the defendants and class counsel colluded and decided not to release mailing addresses and chose to hide/ignore that fact for the inflated attorney/ expense fees while settling for a low ball settlement in return, a quid pro quo.

Just so the objection is not illegally struck, this objector includes a list of objections going back five years from 11-19-19, under protest:

Lithium Ion Battery, three cases, Northern District of CA MDL 4:13-md-02420-YGR
Optical Disk Drive, two cases, Northern District of CA 10-MD 2143 RS
Edwards vs. National Milk Producers in Northern Dist of CA 4:11-cv-04766-JSW
Packaged Ice Litigation Eastern District of MI, Case No. 2:08-MD-1952-PDB
Red Bull SDNY Case No.1:13-cv-00369-KPF, Case No.1:13-cv-080008-KPF
Shane vs. Blue Cross Blue Shield, two cases, Eastern District of MI 10-14360

Total improvements/saving over the years is $46 million with that number rising substantially by the time all is said and done in this case.

**The Twenty Five Page Limit On Objections Is Not In The Long Notice**

The settlement agreement Doc. 739-2 @ 20 states, "Objections shall not exceed twenty-five (25) pages." The court's order Doc 742 pg 9 @20 says the same thing. That important 25 page limit fact was intentionally left out of the Long Notice so the lawyers can request the court strike any objection that is over the page limit or the court can do it sua sponte. It's deceitful, prejudicial, bias, bad faith against the class, it undermines Rule 23 and violates due process. Just so this objection is not illegally struck it was reduced to just twenty five pages, with exhibits, what a con. The intent is and does prevent a well throughout and comprehensive objection from being filed. This requirement helps everyone but the class and intentionally keeps other withheld issues out of the appeals court scope of review. It has also prevented this objector (and possibly other objectors) from expanding on existing issues, raising additional material issues and leaving out extensive authorities out of the objection because of the hidden, unfair, unreasonable, inadequate page limit. The process must be halted and the class re-noticed with accurate information for round two.

**The Requirement Of Objectors To Be Deposed Or Their Objections Will Be Struck Is Part Of The Scheme To Scare Off Objectors**

Number 7 in the Long Notice: "A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between 11/19/2019 and 12/5/2019 during which you are available to be deposed by counsel for the Parties."

It does not state in any of the filings that objectors who file an objection, or who may or may not appear with or without a lawyer at the hearing agree that they are now subject to the jurisdiction of the District Court and being deposed in Georgia. Objector objects because the pattern of being ambiguous and leaving out critical details is misleading and deceiving. This objector has reviewed 250 settlements over the years. The issues and errors combined above and below are the most extreme example of due process violations and bias he has ever seen, it's historic for all the wrong reasons. The four hurdles above are designed by the parties and stated by the court's Order 742 cause objectors harassment, ambiguity, confusion, annoyance, embarrassment, oppression, undue burden and expense. These requirements also have the effect of watering down and/or deterring objections from being filed. These are constitutional violations that violate due process and freedom of speech, it's tacit authorization and/or deliberate indifference to those violations made by class counsel, it's arbitrary, capricious, undermines Rule 23(e), violates Rule 23(a)(4) and Rule 23 (g)(4), ROPC, 11th Circuit and Supreme Court law. To prevent an illegal striking of his objection, the objector is available on these four dates per the ambiguous notice requirements, 11-19-19, 11-20-19, 11-21-19 and 11-22-19. Note, 226,000 people have objected to this settlement via an online petition as of 11/18/19, a legal world record. See https://threatpost.com/200k-sign-petition-against-equifax-data-breach-settlement/148560/ and https://www.change.org/p/don-t-let-equifax-escape-liability

**JND Administration Is Intentionally Violating Our Privacy Rights A La Equifax**

JND Administration should have had a disclosure like the following on the home page;

"This website uses cookies and other tracking technologies to improve user experience, track anonymous site usage, permit sharing on social media networks, sending email and advertising purposes. By continuing to use this website you accept the use of cookies. Click here to accept and/or read more about how we use cookies."

Or: "Your privacy. We use cookies to improve your experience on our site and to show you personalized advertising. To find out more, read our privacy policy and cookie policy. (There is a box with a check mark to click on that says) I'm OK with that or you accept the use of cookies by closing or dismissing this notice.

Or: "This site uses cookies to provide you with more responsive and personalized service and to show personalized advertisements. By using this site you agree to our Legal Disclaimer, and Online Privacy and Cookie Policy." Click below to consent to the use of this technology and the processing of your personal data.

Or: "Yahoo is part of Verizon Media. Verizon Media and our partners, need your consent to access your device and use your data (including location) to understand your interests, and provide and measure personalized ads." (A box has to be checked to agree or disagree to continue)

From Twitter's own home page; "This page and certain other Twitter sites place and read third party cookies on your browser that are used for non-essential purposes including targeting of ads. Through these cookies, Google, LinkedIn, NewsCred and Logicad collect personal data about you for their own purposes. Learn more."

The class website was last verified as being bugged as of today, November 19, 2019.

Class counsel and JND Administration did not disclose to the tens of millions of

visitors that they are allowing Google, Facebook, Twitter and Bing to place five to six

tracking (surveillance) cookies on the home page of the class website, each section at

the top of the page and in all the sections that drop down including the claims section.

Tracking includes the IP address, your location and information about your browser,

computer, and operating system; along with non persistent and persistent cookies being

inserted into to a visitor's browser. We will call this "Cookiegate" see Exhibit 3.

In the "I would like to" section where a visitor clicks on "Check your eligibility" window then enters their last name and last six digits of their social security number, there are six tracking cookies, under the "File a claim" section there are five tracking cookies, in the "Upload a document" section there are five tracking cookies, in the "Check my claim status" there are six cookies, under "Contact the administrator" there are six tracking cookies and under the document section there are five tracking cookies placed. The page you actually file a claim on, six cookies are inserted. These cookies are placed into every visitor's device collecting data from the claimant without their knowledge, authorization, compensation nor did this objector or the class members agree to any legal disclaimers, online privacy and cookie policies. One Google cookie stays on your device for two years and the other two, Facebook and Twitter may be staying on their forever so tens of millions of visitors to the website and those who filed a claim were illegally and are currently being tracked. Is there any additional malware/spyware (other than cookies) on the website presently? The cookies present a legitimate risk to website security and user privacy. Download "Ghostery" to verify. Equifax allows our information to be stolen and class counsel and the administrator allowed Google, Twitter, Facebook and Bing to track us illegally which allows them to take that information and add to their profile of each person in their own databases to sell to third parties. What a treasonous, double cross sellout, they all need to be fired.

Next, anyone could easily figure out the correct missing three digit Social Security number using pen and paper by knowing one other item to match to the balance of the numbers if they had them. Or, using that one item and a "Brute-Force Attack", the correct sequence can be figured out in one second using a typical laptop. By using a claimant's IP, a visitor can be simply identified with other information Google, Facebook and Twitter possess. The claims process exposed 67% of our social security number again and it was all unnecessary as you will read further below.

What an illegal and egregious violation of our privacy by the parties, a la Equifax. History and tradition reinforce that a concrete injury for Article III standing purposes occurred when the administrator allows Google, Facebook and Twitter or any other third party to track a person's internet activity without authorization. The parties intentionally failed to disclose that fact in plain sight on the first page of the website. Since the visitor was not told about the tracking, the cookie policies did not accept nor give permission to place cookies, JND Administration and class counsel should be fired and replaced immediately or they can forfeit their fees which go back into the fund for the benefit of the class. This is a class action waiting in the wings against all the parties. I and many claimants would not have continued on the site if we were told about this illegal tracking up front. I would consider being a named plaintiff in a class action against them and request $1,000.00 on behalf of each person who visited the site, was illegally tracked and had their privacy invaded for a second time in this case.

**The Failure To Inform Class Members What Information Was Stolen From Them Individually Before Settling This Case Violates Due Process**

The class is forfeiting all claims against the company that can cause *lifelong* damage to everyone for a short term solution and the parties are downplaying the problems we face. The terms of this "settlement" (immunity) with Equifax are utterly unacceptable. Extremely valuable and irreplaceable information was stolen from all of us but Equifax and the plaintiffs won't disclose what "impacted" information was stolen from each individual.  According to sources in and out of the record, the following information was/may have been stolen from 147.9 million victims such as name, home address, city, state, zip code, date of birth, social security number, telephone numbers, email addresses, dispute documents like copies of tax returns, pictures taken from the drivers licenses, voter registration cards, financial account numbers, credit or debit card number, in combination with any required security code, access code, or password that would permit access to the consumer's financial account, tax liens, civil judgments, copies of utility bills, property tax bills, public records etc for those disputing an issue on their reports that is required to prove who they are, any biometric information, meaning data generated by electronic measurements of an individual's unique physical characteristics, such as a fingerprint, voice print, retina or iris image, birth certificate or other unique physical characteristics or digital representation and other information that they have put into their records. Also included is any non-FCRA information data

such as information that bears on a consumer's credit worthiness, credit standing,

credit capacity, character, general reputation, personal characteristics, or mode of

living, and any other data that is/was used or expected to be used or collected in whole

or in part for any purpose. Each victim needs to know what was stolen from them.

A minimum of twenty three different pieces of information were stolen per person for

a grand total of up to 3,401,700,000. (three billion four hundred million seven hundred

thousand) separate pieces of information. (147.9 million class members multiplied by

23 pieces each) That information was stolen during the 1680 hours multiple hackers

had access to Equifax's servers making 10,000 inquiries and there could be more

missing data that has not been disclosed. The most valuable information that could

ever be stolen from someone was and is irreplaceable. This objector and each of the

147.9 million victims have the right to know exactly what information Equifax allowed

to be stolen from each of us that was in their care, custody and control *before* deciding

what the best course of action to take regarding our claims. The more information that

was stolen the increased amount of damage caused to myself and each class member so

the more damages someone would be owed. Some may have lost 10%, 50% or 100%

of the total. Without knowing what was stolen, a class member and this objector cannot

in good faith opt out because we have no idea what was stolen, the value of it, have no

evidence to present to an attorney or to a court if they wanted to move forward on their

own and what to ask for in damages. Our lawyers have intentionally failed to explain

to the unnamed class the ramifications of the theft of their data before forcing us into this unfair, unreasonable and inadequate deal. Re-notice to the class is required.

**.     Identity Theft Protection Is Also Required Not Just Credit Monitoring**

Out lawyers failed to disclose to the 147.9 million victims in the long notice that this deal should also include identity theft monitoring. Credit monitoring services often market themselves as safeguards of your credit profile, but that's not quite the case.

Here's what credit monitoring can't do:

- It can't prevent or alert you to identity theft or credit card fraud.
- It can't keep you from receiving phishing emails — or from opening them.
- It can't keep or alert you to someone from applying for credit in your name.
- It won't correct errors on your credit report.
- It can't alert or stop taxpayer identity theft and tax refund fraud.
- It can't stop or alert you to payday loan fraud.
- It can't stop or alert you to medical identity fraud
- It can't stop Medicare fraud
- It can't stop or alert you to change of USPS mailing address requests.
- It can't stop or alert you to orders for new utility, cable, and wireless services.
- It can't stop or alert you to check-cashing requests.

This settlement wants to help claimants with after the fact and future identity theft costs, but why not stop it first? The settlement should provide for credit monitoring **and** identity theft protection for free from all three credit agencies *forever,* since this is the biggest threat for each class member is *forever.* The ID Theft Monitoring service should alert consumers when stolen identity information is detected. This deal is a get rich, quick scheme by the lawyers and named plaintiffs who sold out the class.

**The 147.9 Million Class Members Should Not Have To File A Claim**

Apparently Equifax and our lawyers only want a small percent of the affected class to file a claim to keep their cost's low and the stock price high, cheating 95% or 140 million people out of damages. The parties failed to meet their burden to show that a claims process is necessary or desirable. This claims settlement is abusive because it is solely being utilized to reduce the payout to class members by Equifax with class counsel's blessing.  A directive from the Federal Judicial Center, which instructs that, "[w]hen the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." *Id.*; *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*(2010). Available at:http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

The FJC's guide instructs district courts to consider whether "a claims process [is] actually necessary[]," cautioning that "[i]n too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." The parties are trying to keep most of the 147.9 million victims from participating in this deal is by using a "claims made" settlement process, which is dependent on each class member filing a claim. Class members should *not* be required

to file a claim, they should automatically be entitled to benefits since Equifax already knows who the valid class members are and possess class member's contact data. This claims process is a double cross by our lawyers and named plaintiffs. So, since Equifax has up to date mailing addresses and already knows who is entitled to relief, I request on my behalf, and on behalf of all 147.9 million absent class members, that Equifax send a letter to each of us by first class mail in an envelope disclosing which personal information was stolen from each class member. It should include a statement that the recipient is now automatically enrolled in the claim fund and is covered in a new deal with credit *and* ID theft monitoring for *life,* since the risk we face is for *life*. The envelope should also include a copy of the new revised long notice which will ensure all class members are properly noticed under Rule 23 and due process for round two after all the issues and errors are repaired, if possible. The class is not paying for past or future notice costs, the lawyers are due to their errors and double cross. The treacherous claims/notice program is a complete waste of money and unnecessary but saves Equifax a fortune by limiting claims underhandedly. It's a crooked rigged deal.

### The 125.00 Cash Component Was A Bad Faith Bait Trick

If only 250,000 people out of 147.9 million class members had filed a claim for past out of pocket costs for credit monitoring they could receive the full $125.00 amount. As of 10-30-19, 3 million signed up for monitoring, the cash number is intentionally left undisclosed hmm. The parties knew all along the cash amount would be pennies on

dollar of the actual *past* yearly costs incurred by those who paid out of pocket for coverage in the past, millions of them. Applicable claimants paid just Equifax $30 a month for years for credit monitoring. Those who seek the cash component should also be able to obtain credit and ID monitoring as well for *future* damages that may occur even decades from now. If someone selects the cash option then that class member then has to pay $200.00 a year on their own starting today for just credit monitoring of all three reports. These conjoined issues are being unfairly separated out to ram this square approval through a round approval hole so our lawyers trick the class and help Equifax conserve cash. Equifax can unfairly limit liability, the lawyers get paid off with $77 million and the puppet named plaintiffs $2,500.00 in a quid pro quo deal. I would want $30,000.00 for all my stolen information described above if I were selling it, but Equifax allowed the information  to be stolen and now they and my lawyers are fine paying me a quarter or I forfeit that amount for free credit monitoring for four years worth retail, $800.00, uh…..no. The parties were scheming and possibly drinking whiskey out of a bottle in a smoke filled back room some place when these sellout amounts in this scheme were concocted. It's a conspiracy by class lawyers, the notice entity, the claims administrator, and the puppet named plaintiffs all done for their money first and in return Equifax is let off the hook for a fraction of the damages by selling out the 147.9 million member unnamed class. The objector requests that class counsel and all the named class representatives be fired for their treasonous

double cross which sold out the class under 23(a)(4), 23(g)(4), it's misconduct and they violated the Rules of Professional Conduct, they are inexperienced and/or inadequate.

**.    Is There Insurance Coverage Involved In These Settlements?**

Are there insurance policies involved in this settlement? Are D&O policies in play and being drawn on to pay for this settlement? Is Loyds of London involved? Are subsidiaries and affiliates insurance coverage in play? How many policies are available and what is the amount of coverage for each contract and in total? Have the executives responsible when this breach occurred have they paid for any part of this settlement and if not why not? The number of polices, the amounts and copies of the contracts need to be disclosed and should have been disclosed to the class before we decided what to do. They should also be posted to the class website ASAP along with the objections filed and a copy of the fairness hearing transcript so the 147.9 million class members who were not at the hearing can find out what happened.

**.    The Deal Does Not Take Into Account The Differences In State Laws**

In Amchem Products Inc. v. Windsor, 521 U.S. 591, 625 (1997), holds that the adequate representation requirement of Federal Rule of Civil Procedure 23(a)(4) mandates the absence of "conflicts of interest between named parties and the class they seek to represent." The court must hold that Rule 23(a)(4)'s adequacy requirement is not satisfied right now because the 147.9 million member settlement class contains consumers from all fifty states and treats them as if they are all covered by one law.

A nationwide class cannot be certified and a pro rata distribution plan cannot be approved without first taking into account the substantial differences in state laws.

**The Claims Payment Process Is A Waste Of Money For The Class**

Why send out a card with $.25 on of compensation on it, its de minimis. How much will that cost vs. sending out a postcard check? There is a huge cost difference and markup by the administrator doing it the present way which is a huge waste of money. Why not electronic deposit for those who can do that so they can receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods saving a tremendous amount of money for the class? This is not a new idea; it's being done in a case I am involved in right now. Our lawyers don't care; the cost is paid for with (OPM) Other People's Money, class money, they just want $77 million and retire.

**An Opt out Form Is Intentionally Missing To Keep The Deal Break Number Low**

17.3 (from the settlement agreement); "Defendants also may at their sole discretion terminate this Agreement on 5 Business Days written notice to Class Counsel if more than a specified number of individuals submit valid requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for in camera review." A opt out form, in the proper languages, is intentionally missing on the class website to keep the opt out number below the deal break mark, voiding the

notice. That deal break number should have also been disclosed to the class. The astounding issues show collusion against the class so class counsel should be fired.

**The Monitoring Value And Fee Request Are Deceitfully Inflated-Its Misconduct**

The monitoring value is only worth $800.00 retail over four years, not $1,920.00 as our duplicitous lawyers claim to trick the class into to showing how "great" the deal is. See Exhibit 4. The lawyers did not come up with the 500,000 pages of evidence, they just assembled it from various sources, negotiated a lowball illegal lay down deal dictated by Equifax and are claiming unjustified credit and gouging us with inflated hours and fees for finding the named plaintiffs. But, because we have poor results it should be based on lodestar. Here is who really did all the work and got us the evidence; Federal Trade Commission, New York Department of Financial Services and Consumer Financial Protection Bureau, Federal Bureau of Investigation, Consumer Protection Financial Bureau, SEC, House Energy and Commerce Committee Senate Banking Committee, Fifty State Attorney Generals' (led by the Puerto Rico AG see Doc 773) and the Government Accounting Office. The evidence was provided by and paid for by the U.S. taxpayer, there is little risk to the class by moving forward.

## Summary

The court has a legal, ethical and moral obligation to reject this scandalous, error plagued, trial balloon deal because it contains a multitude of material errors, omissions, collusion, bad faith, scheming, deception, misconduct, due process errors, it violates

freedom of speech, it has a missing opt out form, lowball reimbursement, it

undermines and violates Rule 23, 11th Circuit and Supreme Court case law. It is crystal

clear that class counsel and named plaintiffs sabotaged this deal and betrayed the trust

of the class in favor of their own self-enrichment, its misconduct. I request class

counsel and named plaintiffs be fired without fees, costs or expenses under 23(a)(4)

and 23(g)(4), they are inadequate. This deal is a colossal failure under Rule 23(e).

The arrogance of the lawyers along with the historic number of issues and material

errors they made, ignored and covered-up in this Titanic wreck of a collusional

settlement, is equal to the arrogance of and fatal errors made 143 years ago by

General Custer at the Battle of the Little Bighorn.

This twenty five page objection, with four exhibits, plus a motion to seal his current

address and the sealed document were mailed to the administrator on 11/19/19 by

prepaid, first class, certified, return receipt mail. Since the USPS does not deliver to the

street address a P.O. Box is required.

I certify under penalty of perjury of the United States that all of the above is true and

accurate to the best of my knowledge.

Christopher Andrews, Pro se objector, P.O. Box 530394 Livonia, MI 48153-0394

E: caaloa@gmail.com P: 248-635-3810    November 19, 2019