IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 1:17-md-2800-TWT<br><br>CONSUMER CASES |

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
DEC -9 2019
JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

## *PRO SE* RESPONSE[1] TO OBJECTION REBUTTALS [Doc. 901] [Doc.902]

Binding former 5th Cir. precedent says "**we would not substitute one hour of efficiency for one moment of justice.**"[2] New 5th Circuit also recently persuaded, "the quality of their objections that should guide the court's review"; **but** "settlement is not fair where all the cash goes to expenses and lawyers" when <u>exposure-only</u> "[class] members receive only discounts of dubious value.'"[3] "**[E]stablishment of a grand-scale compensation scheme is a matter fit for legislative consideration**"[4], but a Settlement must not "abridge, enlarge or modify any substantive right"[5] as settlers fatally wish this **fee-rich** deal to go through, even if it means to put absentees, judiciary, and public interests all under the bus.

---

[1] Objector hereby joins all non-frivolous Objections and responses, e.g. Frank Br.
[2] <u>Pettway v. Am. Cast Iron Pipe Co.</u>, 576 F.2d 1157, 1123 (5th Cir. 1978)(bolded) "Old Fifth precedent", <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981)
[3] <u>Jones v. Singing River Health Servs. Found.</u>, 865 F.3d 285, 300 (5th Cir. 2017) (quoting and clarifying <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977))
[4] <u>Amchem Prods. Inc. v. Windsor</u>, 521 US 591, 622 (1997) (emphasized)
[5] <u>Id.</u> at 613 (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)

1

I.      **Plaintiffs Has No Art. III Jurisdiction, nor Rule 23 Compliance**

1. "[T]he rule [is] that federal courts will not entertain friendly suits, or those which are feigned or collusive in nature"[6]. Settlers had unsurprisingly nothing to argue against **lack of justiciability**[7]. Defendants did not even reply to Objections, deeply trusting Plaintiffs' lawyers to advance Defendants' interests with 96 figurehead plaintiffs. Equifax's worry-free posture has precedential reasons— "with an already enormous fee within counsel's grasp, zeal for the client may relax sooner"[8]. But only "attorney's fee[] is…insufficient to create an Article III case or controversy".[9] "[T]he parties must have the necessary stake not only at the outset of litigation, but throughout its course."[10] (Perhaps Equifax foresaw the inevitable defeat in Rule 23 even before jurisdiction—a good reason to save attorney fees!)

2. Beyond the fact that "absent a genuine adversary issue between parties, federal court may not safely proceed to judgment"[11], without Article III injury-in-fact, exposure-only victims has no ripe claims until real injury happens, because

---

[6] Flast v. Cohen, 392 US 83, 100 (1968)
[7] Huang Pro Se Objection, ECF 813 at 11-14.
[8] Ortiz v. Fibreboard Corp., 527 US 815, 852 n.30 (1999)(rebuking reverse auction)
[9] Lewis v. Continental Bank Corp., 494 US 472, 480 (1990) (citation omitted)
[10] Camreta v. Greene, 131 S. Ct. 2020, 2028 (2011)
(citing Arizonans for Official English v. Ariz., 520 U.S. 43, 67 (1997)
[11] Arizonans for Official English v. Ariz., 520 US 43, 71 (1997)(cleaned up)

one "must show that he[/she] has "suffered an injury in fact" that is caused by "the conduct complained of" and that "will be redressed by a favorable decision."[12] "A "concrete" injury must be "*de facto*"; that is, it must actually exist."[13] Exposure-only victims such as Objector, can only point to thin air for "illusionary standing" until the breach becomes **de facto** injuries—until then, there is no Art. III case. Recall Amchem was denied to exactly "avoid a serious rend in the garment of the federal judiciary that would result from the Court, even with the noblest motives, exercising power that it lacks", in light of "serious doubts as to the existence of the requisite jurisdictional amount, justiciability, adequacy of notice, and personal jurisdiction over absent class members"[14]. Jurisdictional dismissal is inevitable.

## II. Rule 23 Denied Squeezing Subclasses Into "Winners and Losers"

Amchem and Valley Drug admonished sprawling class-action collusion and Rule 23(a)(4) abuses—class cannot be certified if "the class collapses into distinct groups of winners and losers."[15] "[Amchem] is sound because there was a real expectation that the exposure-only plaintiffs would [be injured] after the date

---

[12] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561 (1992)
[13] Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1002 (11th Cir. 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016))
[14] Georgine v. Amchem Prods., 83 F.3d 610, 617-618 (3d Cir. 1996)(aff'd)
[15] Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

specified in the settlement…. [N]o exposure-only plaintiff could estimate with any certainty the extent of his or her future injury, the settlement offered no assurance that sufficient funds would remain to protect the interests of that group."[16] Plaintiffs, can you predict when exposure-onlys will be victimized the "currently-injured" group? Nope. Class representatives here failed "same interest and same injury" in landslide.[17] Plaintiffs' unpersuasive scrambles turn sour quickly—"everyone has an incentive to protect against future harms"[18], says Plaintiffs…but who has the right to claim up to $20,000? Not the exposure-only victims—they cannot claim "future harms" for $20,000 each in this self-interested settlement. Quoting Amchem doesn't even need much alteration, because Amchem exactly gave "currently-injured" a pricing model for existing injuries, but a blank check that expires before real injuries happen for "exposure-onlys". Supreme Court found appellate analysis "homed in on settlement terms in explaining why it found the absentees' interests inadequately represented. [3d Cir.'s] close inspection of the settlement in that regard was altogether proper."[19] This is 100% Amchem copycat.

---

[16] In re Target Corp. Customer Data Sec. Breach Litig., 892 F.3d 968, 975 (8th Cir. 2018). (citing and distinguishing its characteristics from Amchem).
[17] Wal-Mart Stores v. Dukes, 131 S. Ct. 2541, 2550 (2011).
[18] ECF 902 at 11-12.
[19] Amchem, 521 US at 619-620

While Plaintiffs self-inflicted <u>Target</u> against themselves, <u>Target</u> **involves future credit card breaches that <u>can be cured</u>** by replacing credit cards from financial institutions for free. But this collusive deal is not curing future injury—instead, it is a re-play of <u>botched legislative trickery</u>[20], a now-doomed attempt here in federal judiciary, trying to buy up *res judicata*, a bait-and-switch to trade future injury claims with a national legislation and illusionary relief for future claimants.

Rule 23(a)(2) and Rule 23(a)(3) also failed "when individual stakes are high and disparities among class members great… certification cannot be upheld, for it rests on a conception of Rule 23(b)(3)'s predominance requirement irreconcilable with the Rule's design…[N]amed parties… sought to act on behalf of a single giant class [when] the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."[21] <u>All of Amchem's fatal signs are here</u>—only difference is that asbestos is now data breach.

---

(citing <u>Georgine v. Amchem Prods.</u>, 83 F.3d 619, 630-631 (3d Cir. 1996)
[20] Michael Hiltzik. <u>Before its massive data breach, Equifax fought to kill a rule allowing victims to sue.</u> https://www.latimes.com/business/hiltzik/la-fi-hiltzik-equifax-arbitration-20170911-story.html
[21] <u>Amchem</u>, 521 US at 625-626. (Explaining manageability did not fail <u>Amchem</u> settlement-class – Other Rule 23 parts failed, e.g. adequacy and predominance)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 1:17-md-2800-TWT<br><br>CONSUMER CASES |

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC -9 2019

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

## *PRO SE* RESPONSE[1] TO OBJECTION REBUTTALS [Doc. 901] [Doc.902]

Binding former 5th Cir. precedent says **"we would not substitute one hour of efficiency for one moment of justice."**[2] New 5th Circuit also recently persuaded, "the quality of their objections that should guide the court's review"; **but** "settlement is not fair where all the cash goes to expenses and lawyers" when <u>exposure-only</u> "[class] members receive only discounts of dubious value.""[3] **"[E]stablishment of a grand-scale compensation scheme is a matter fit for legislative consideration"**[4], but a Settlement must not "abridge, enlarge or modify any substantive right"[5] as settlers fatally wish this **fee-rich** deal to go through, even if it means to put absentees, judiciary, and public interests all under the bus.

---

[1] Objector hereby joins all non-frivolous Objections and responses, e.g. Frank Br.
[2] <u>Pettway v. Am. Cast Iron Pipe Co.</u>, 576 F.2d 1157, 1123 (5th Cir. 1978)(bolded) "Old Fifth precedent", <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981)
[3] <u>Jones v. Singing River Health Servs. Found.</u>, 865 F.3d 285, 300 (5th Cir. 2017) (quoting and clarifying <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977))
[4] <u>Amchem Prods. Inc v. Windsor</u>, 521 US 591, 622 (1997) (emphasized)
[5] <u>Id.</u> at 613 (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)

1

### I.     Plaintiffs Has No Art. III Jurisdiction, nor Rule 23 Compliance

1. "[T]he rule [is] that federal courts will not entertain friendly suits, or those which are feigned or collusive in nature"[6]. Settlers had unsurprisingly nothing to argue against **lack of justiciability**[7]. Defendants did not even reply to Objections, deeply trusting Plaintiffs' lawyers to advance Defendants' interests with 96 figurehead plaintiffs. Equifax's worry-free posture has precedential reasons— "with an already enormous fee within counsel's grasp, zeal for the client may relax sooner"[8]. But only "attorney's fee[] is…insufficient to create an Article III case or controversy".[9] "[T]he parties must have the necessary stake not only at the outset of litigation, but throughout its course."[10] (Perhaps Equifax foresaw the inevitable defeat in Rule 23 even before jurisdiction—a good reason to save attorney fees!)

2. Beyond the fact that "absent a genuine adversary issue between parties, federal court may not safely proceed to judgment"[11], without Article III injury-in-fact, exposure-only victims has no ripe claims until real injury happens, because

---

[6] Flast v. Cohen, 392 US 83, 100 (1968)
[7] Huang Pro Se Objection, ECF 813 at 11-14.
[8] Ortiz v. Fibreboard Corp., 527 US 815, 852 n.30 (1999)(rebuking reverse auction)
[9] Lewis v. Continental Bank Corp., 494 US 472, 480 (1990) (citation omitted)
[10] Camreta v. Greene, 131 S. Ct. 2020, 2028 (2011) (citing Arizonans for Official English v. Ariz., 520 U.S. 43, 67 (1997)
[11] Arizonans for Official English v. Ariz., 520 US 43, 71 (1997)(cleaned up)

one "must show that he[/she] has "suffered an injury in fact" that is caused by "the conduct complained of" and that "will be redressed by a favorable decision."[12] "A "concrete" injury must be "*de facto*"; that is, it must actually exist."[13] Exposure-only victims such as Objector, can only point to thin air for "illusionary standing" until the breach becomes **de facto** injuries—until then, there is no Art. III case. Recall Amchem was denied to exactly "avoid a serious rend in the garment of the federal judiciary that would result from the Court, even with the noblest motives, exercising power that it lacks", in light of "serious doubts as to the existence of the requisite jurisdictional amount, justiciability, adequacy of notice, and personal jurisdiction over absent class members"[14]. Jurisdictional dismissal is inevitable.

## II. Rule 23 Denied Squeezing Subclasses Into "Winners and Losers"

Amchem and Valley Drug admonished sprawling class-action collusion and Rule 23(a)(4) abuses—class cannot be certified if "the class collapses into distinct groups of winners and losers."[15] "[Amchem] is sound because there was a real expectation that the exposure-only plaintiffs would [be injured] after the date

---

[12] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561 (1992)
[13] Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1002 (11th Cir. 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016))
[14] Georgine v. Amchem Prods., 83 F.3d 610, 617-618 (3d Cir. 1996)(aff'd)
[15] Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

specified in the settlement.... [N]o exposure-only plaintiff could estimate with any certainty the extent of his or her future injury, the settlement offered no assurance that sufficient funds would remain to protect the interests of that group."[16] Plaintiffs, can you predict when exposure-onlys will be victimized the "currently-injured" group? Nope. Class representatives here failed "same interest and same injury" in landslide.[17] Plaintiffs' unpersuasive scrambles turn sour quickly—"everyone has an incentive to protect against future harms"[18], says Plaintiffs...but who has the right to claim up to $20,000? Not the exposure-only victims—they cannot claim "future harms" for $20,000 each in this self-interested settlement. Quoting Amchem doesn't even need much alteration, because Amchem exactly gave "currently-injured" a pricing model for existing injuries, but a blank check that expires before real injuries happen for "exposure-onlys". Supreme Court found appellate analysis "homed in on settlement terms in explaining why it found the absentees' interests inadequately represented. [3d Cir.'s] close inspection of the settlement in that regard was altogether proper."[19] This is 100% Amchem copycat.

---

[16] In re Target Corp. Customer Data Sec. Breach Litig., 892 F.3d 968, 975 (8th Cir. 2018). (citing and distinguishing its characteristics from Amchem).
[17] Wal-Mart Stores v. Dukes, 131 S. Ct. 2541, 2550 (2011).
[18] ECF 902 at 11-12.
[19] Amchem, 521 US at 619-620

4

While Plaintiffs self-inflicted <u>Target</u> against themselves, <u>Target</u> **involves future credit card breaches that <u>can be cured</u>** by replacing credit cards from financial institutions for free. But this collusive deal is not curing future injury—instead, it is a re-play of <u>botched legislative trickery</u>[20], a now-doomed attempt here in federal judiciary, trying to buy up *res judicata*, a bait-and-switch to trade future injury claims with a national legislation and illusionary relief for future claimants.

Rule 23(a)(2) and Rule 23(a)(3) also failed "when individual stakes are high and disparities among class members great… certification cannot be upheld, for it rests on a conception of Rule 23(b)(3)'s predominance requirement irreconcilable with the Rule's design…[N]amed parties… sought to act on behalf of a single giant class [when] the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." [21] <u>All of Amchem's fatal signs are here</u>—only difference is that asbestos is now data breach.

---

(citing <u>Georgine v. Amchem Prods.</u>, 83 F.3d 619, 630-631 (3d Cir. 1996)
[20] Michael Hiltzik. <u>Before its massive data breach, Equifax fought to kill a rule allowing victims to sue.</u> https://www.latimes.com/business/hiltzik/la-fi-hiltzik-equifax-arbitration-20170911-story.html
[21] <u>Amchem</u>, 521 US at 625-626. (Explaining manageability did not fail <u>Amchem</u> settlement-class – Other Rule 23 parts failed, e.g. adequacy and predominance)

5

Amchem slammed class counsels' crocodile tears—"with an already enormous fee within counsel's grasp, zeal for the client may relax sooner"[22]. Clearly, Plaintiffs cared more about securing fees than securing recovery for class members, going as far as hiring three "mock judges"[23] in a nonjusticible settlement that robs more "exposure-only" victims far before injury-in-fact even exists.

"The disparity between the currently injured and exposure-only categories of plaintiffs, and the diversity within each category are not made insignificant…the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability…The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."[24] Here we are again.

### III. Bloated Attorney Fee Request Informs Disastrous Settlement Terms

Plaintiffs had nothing to defend 96 Plaintiffs' VIP checks for $2,500 each while absentee fight "limited fund" is absentee's Article III injury, Plaintiffs also had nothing remotely close to justify their crocodile-tearing fee requests.

---

[22] Ortiz v. Fibreboard Corp., 527 US 815, 852 n.30 (1999).
[23] See various "legal opinions" in ECF 858-2, 858-3, 900-2, and 900-3. Objector invoked Daubert on all "legal opinions" as to Rule 23(a)(4) in separate motions.
[24] Amchem, 521 US at 626-27.

**First**, all credit-monitoring for class-members are coupons.[25] Alternatively, the Court can treat each "credit-monitoring" at the equivalent value of cash recovery per class member, or estimated $0.21 each. But they are coupons, because credit-monitoring option gets nothing besides it.

**Second**, while 3-bureau credit monitoring sells at $99.99/year, Plaintiffs must think absentees are fools to ignore negotiation scale of <u>147 million victims</u>. If Plaintiffs cannot even win any discount for half of U.S. population, the only reason for "retail pricing inflation" is to boost basis of attorney's fees, before percentages.

**Last**, Plaintiffs asked exotic percentages of "fictitious fund". Plaintiffs simply cannot find support in any <u>circuit-binding</u> opinions, because citing these consensuses from 2nd, 3rd, 7th and 9th Circuit can only embarrass themselves:

> "[M]ean award from settlements in the $100 to $250 million range **is 12% and the median 10.2%.** All three articles find that the percentage of the fund awarded to counsel declines as the size of the fund increases......[I]t is **almost as expensive to conduct discovery in a $100 million case as in a $200 million case.... hard to justify awarding counsel as much of the second hundred million as of the first**. The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases... **[D]istrict court needed data rather than cherry-picked examples**"[26]

---

[25] Detail Explanations in ECF 813 at 12-14.
[26] <u>Silverman v. Motorola Solutions, Inc.</u>, 739 F.3d 956, 958-959 (7th Cir. 2013) (Easterbrook, C.J.) (emphasized)
Also see <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43 52-53 (2d Cir. 2000)

7

> "[W]here awarding 25% of a "megafund" would yield **windfall profits for class counsel in light of the hours spent on the case,** courts should adjust the benchmark percentage or employ the lodestar method instead....
> **[B]asis for inverse relationship between size of fund and percentage** awarded for fees is that "in many instances the increase in recovery is **merely a factor of the size of the class and has no direct relationship to the efforts of counsel**"[27]

> "[District court concluded that] class counsel "would have negotiated a fee of at least 10 to 15% of the recovery...We question the significance of this inquiry to class action lawsuits of this magnitude. While such private fee arrangements might be appropriate in smaller class actions or litigation involving individual plaintiffs, **we do not believe they provide much guidance in cases involving the aggregation of over 8 million plaintiffs**..."[28]

> "Calculation of the lodestar...provides a check on the reasonableness of the percentage award. Where [lawyers' investment of time] is minimal, **as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.**"[29]

> "**The percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent.**"[30]

---

[27] In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) (quoting In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 339 (3d Cir. 1998) (emphasized)
[28] Prudential, 148 F.3d at 340. (emphasized)
[29] Dennis v. Kellogg Co., 687 F. 3d 1149, 1160 (9th Cir. 2012) (emphasized)
[30] Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 122 (2d Cir. 2005)(emphasized)

## IV. Meritless Objector Attacks from Plaintiffs Cannot Save Settlement

"Serial objectors" gets to extort only when lawyers fear sunlight in rat deals. Figurehead's lawyers cannot defend the record except desperately trying whatever might stick. So if Plaintiffs' insist—they must be admitting "it takes two to tango".

Fortunately, this Court need not to read settling Plaintiffs' papers, as it is obvious that Plaintiffs cannot find any binding support for their delusion, which is filled with "not precedents...unrelated issues...taken out of context...illustrat[ing] the regrettable tendency...to substitute citations for analysis."[31] Amchem was denied, twice[32]— a denial will be the most efficient use of scarce judiciary resources for a collusive suit that is floating in dockets without jurisdiction.

## V. Conclusion: Collusive Settlement Attempt Is A Waste Of Time

This settlement is a part of "a staged performance", but "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted— that if a settlement is "fair," then certification is proper."[33]

This settlement should be DENIED to get the same fate as Amchem.

Dated: December 6, 2019

Respectfully Submitted[34],
/s/
Shiyang Huang (*pro se*)

---

[31] Harzewski v. Guidant Corp., 489 F.3d 799, 807 (7th Cir. 2007)(Posner, J.)
[32] Georgine, 83 F.3d 610; aff'd. 521 US 591 (1997)
[33] Amchem, 521 U.S. at 621-622 (citation omitted)
[34] I certify this Court will receive a copy, CM/ECF will alert all counsels of record.