# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| *In re: Equifax, Inc. Customer Data Security Breach Litigation* | MDL Docket No. 2800<br>Case No. 1:17-md-2800-TWT<br><br>**CONSUMER ACTIONS** |

## COMMONWEALTH OF MASSACHUSETTS' AMICUS CURIAE BRIEF IN OPPOSITION TO THE PROPOSED SETTLEMENT

TABLE OF CONTENTS

I.   **INTRODUCTION** ...................................................................................1

II.  **RELEVANT PROCEDURAL BACKGROUND** ....................................4

    A. Massachusetts' Enforcement Action. ................................................4

    B. The Proposed Settlement Agreement and Release. ...........................5

    C. The Defendant Negotiated a Separate Release with Nearly
       All Other States................................................................................7

III. **ARGUMENT** ........................................................................................8

    A. Private Settlements Do Not Bind Government Law Enforcement.....9

    B. Massachusetts May Pursue and Obtain All Available Relief
       Against the Defendant Irrespective of this Class Action.................12

    C. The Defendant Has Acknowledged that Claims by the States are
       Separate from those Asserted by the Class Plaintiffs.......................17

IV.  **CONCLUSION** ........................................................................................18

## TABLE OF AUTHORITIES

### Federal Cases

*E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280 (11th Cir. 2004) ......................10

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) .............8

*Federal Trade Commission v. Hornbeam Special Situations, LLC,*
   308 F. Supp. 3d. 1280 (N.D. Ga. 2018), ........................................... 10, 11, 16, 17

*George v. Academy Mortgage Corp. (UT),*
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...................................................................8

*Herman v. South Carolina National Bank,*
   140 F.3d 1413 (11th Cir. 1998) ............................................................... 9, 10, 12

*Hudson v. United States*, 522 U.S. 93 (1997) ...........................................................14

*In re Equifax Customer Data Security Breach Litigation,*
   371 F.Supp.3d 1150 (N.D. Ga. 2019). .................................................................11

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ...............................................16

*United States v. Borden Co.*, 347 U.S. 514 (1954)........................................... 14, 15

### State Cases

*Commonwealth v. Chatham Development Company,*
   49 Mass. App. Ct. 525 (2000) ..................................................................... 13, 14

*Commonwealth v. Fall River Motor Sales, Inc.,* 409 Mass. 302 (1991) .................13

### Statutes and Regulations

28 U.S.C. § 1715 (2012) ......................................................................................1, 8

Mass. Gen. Laws c. 93A ................................................................................. *passim*

Mass. Gen. Laws c. 93H ................................................................................. *passim*

201 Code Mass. Regs 17.00.......................................................................................4

## I.   <u>INTRODUCTION</u>

The Commonwealth of Massachusetts, through its Attorney General,

submits this *amicus curiae* brief to safeguard Massachusetts' sovereign interests.[1]

In early September 2017, Massachusetts learned that for almost five months in

2017, the Defendant exposed the sensitive and private information of at least 147

million consumers—including nearly half of the adult population of

Massachusetts—by failing to update open-source code that it knew was insecure

and exploitable (the "Data Breach").  Affected residents of Massachusetts have

spent, and will continue to spend, money, time, and other resources attempting to

protect against an increased risk of identity theft and fraud that resulted from the

Data Breach.  The full extent of the harm to consumers and the public at large

remains to be determined.

After learning of the Data Breach, Massachusetts, through its Attorney

General, acted nearly immediately to protect the public's interest by bringing a

civil enforcement action against the Defendant in Massachusetts state court on

---

[1] Massachusetts submits this *amicus* brief in order to express its position regarding
the Proposed Settlement Agreement as contemplated under the Class Action
Fairness Act of 2005, 28 U.S.C. § 1715 (2012) ("CAFA"). By filing this brief,
Massachusetts does not concede that it is a Class Member, or that it is bound by the
Proposed Settlement Agreement or any term thereof.  Massachusetts is making a
special appearance here without waiver of its rights to contest that it or its
Enforcement Action is subject to jurisdiction here.

September 19, 2017.  *See Commonwealth v. Equifax*, Civil Action No. 1784-CV-3009-BLS2 (the "Enforcement Action").  Massachusetts alleged that the Defendant violated, in numerous ways, the Massachusetts Consumer Protection Act and Data Protection Law and seeks those remedies exclusively reserved by statute to the Attorney General—*i.e.* civil penalties, consumer restitution, and injunctive relief. The Enforcement Action, which predated the formation of this MDL, is currently in the midst of fact discovery, after unsuccessful attempts by the Defendant to dismiss or stay the case.

On August 5, 2019, the Massachusetts Attorney General received notice of the proposed class action settlement agreement and release, pursuant to CAFA.  At no point prior thereto was Massachusetts consulted, invited, or permitted to provide any input to the terms of the proposed Settlement Agreement. Massachusetts is neither a Party nor a Settlement Class Member in this case, and it did not participate in any aspect of the prior proceedings before this Court.  Its claims in the Enforcement Action, moreover, were not asserted—and as the Defendant has previously acknowledged to this Court, *could not have been asserted*—by any of the class plaintiffs in this class action.

Nonetheless, the settling parties now ask this Court to approve a Proposed Settlement that contains a release provision that appears to be an attempt to release

2

the Defendant from claims being asserted by Massachusetts in its separate

Enforcement Action.  *See* Doc. No. 739-2, at 33 (§ 16.1) (the "Proposed Release").

If approved, the Proposed Release would improperly infringe on Massachusetts'

ability to vindicate its sovereign interests in enforcing its own consumer protection

and data protection laws, and is in contravention of controlling 11th Circuit

precedent.  It would further put Massachusetts in an unfair position vis-a-vis her

sister States, which separately settled with the Defendant and negotiated a separate

release for their own sovereign claims, for separate consideration.

To avoid future unnecessary litigation on the issue, to ensure that

Massachusetts is treated equally to all other States, and to ensure that the

Defendant is not able to undermine Massachusetts' consumer protection

enforcement scheme, Massachusetts requests this Court order the parties to amend

the Proposed Release so that it comports with controlling precedent, as follows:

1. The definition of "Released Claim" at § 2.38 shall expressly exclude civil monetary penalties, restitution, disgorgement, and broad injunctive relief in any law enforcement action;

2. The definition of "Unknown Claims" at § 2.50 shall expressly exclude civil monetary penalties, restitution, disgorgement, and broad injunctive relief in any law enforcement action; and

3. The release at § 16.1 shall expressly exclude government agencies or sovereign states acting in a law enforcement or *parens patriae* capacity and not be intended to prohibit cooperation by Class Members with law enforcement.

3

The Proposed Settlement Agreement should not be approved as fair, reasonable or adequate unless modified as sought herein.

## II.    RELEVANT PROCEDURAL BACKGROUND

### A. Massachusetts' Enforcement Action

On September 19, 2017, months prior to the formation of this MDL, Massachusetts filed a five-count civil complaint against the Defendant in Suffolk Superior State Court arising out of the Data Breach, alleging violations of the Massachusetts Consumer Protection Act (Mass. Gen. Laws c. 93A, §§ 2 & 3) and Data Protection Law (Mass. Gen. Laws c. 93H, §§ 2 & 3; 201 Code Mass. Regs., § 17.00 *et seq*).  *See* Complaint (attached as **Exhibit 1**).  As alleged by Massachusetts, the Defendant knew its network was vulnerable and could have prevented the Data Breach, but failed to do so in a manner that violated numerous provisions of Massachusetts' Data Protection Law and Consumer Protection Act. [2]

---

[2] In sum and substance, Massachusetts has alleged that the Defendant: (a) delayed providing notice of the Data Breach, in violation of Mass. Gen. Laws c. 93H; (b) failed to reasonably secure consumers' personal information, in violation of the Massachusetts data security regulations (201 Code Mass. Regs. 17.00 *et seq.*); and (c) violated the Massachusetts Consumer Protection Law (Mass. Gen. Laws c. 93A, § 2) by engaging in various unfair or deceptive practices in connection with failing to safeguard consumers' data, misrepresenting its data security practices, and for failing to mitigate the public harm caused by the Data Breach.  *See* **Exhibit 1** at ¶¶ 78–128.

As specifically authorized and contemplated by those laws, Massachusetts has asserted claims, *inter alia*, for civil penalties, restitution, disgorgement of profits, and permanent injunctive relief in order to protect the public interest and deter future misconduct by the Defendant or others.  *See generally*, **Exhibit 1**.

On October 17, 2017, the Defendant moved to dismiss Massachusetts' claims.  On December 5, 2017, it moved to stay the Enforcement Action pending either the resolution of then-pending investigations of the Data Breach by the FTC or group of the (then) forty other state Attorneys General, or the formation of the present MDL.  The Superior Court denied both motions in April 2018.  The Enforcement Action is currently in discovery; Massachusetts has completed six of (at least) thirteen planned depositions of fact witnesses, with depositions of the parties' designated expert witnesses to follow.

### B. The Proposed Settlement Agreement and Release

On July 22, 2019, Plaintiffs in *In re Equifax, Inc. Customer Data Security Breach Litigation* filed the Proposed Settlement Agreement. Doc. No. 739-2. Therein, the parties purport to release the Defendant from all "Released Claims" brought by "any other person purporting to claim on [Settlement Class Members'] behalf."  Doc. No. 739-2, at 33 (§ 16.1).  In an apparent attempt to extend the release to its widest possible scope, the parties defined "Released Claims" in broad

5

terms to encompass "[a]ny claims, . . . suits, . . . damages, . . . action . . . penalties, remedies, of every kind or description—whether known or Unknown . . . asserted or unasserted, [or] . . . . legal . . . statutory, or equitable" that relate to the Data Breach or "the facts alleged in the Actions." *Id.* § 2.38. The definition of "Unknown Claims" is drafted in similarly broad fashion. *See id.*, § 2.50. Neither defined terms exclude claims brought by sovereign states in law enforcement actions. Massachusetts had no input (or any opportunity to provide input) into the terms of the Multistate Settlement or the Proposed Settlement Agreement.[3]

On August 5, 2019, Massachusetts received the Proposed Settlement Agreement, pursuant to CAFA. In a November 13, 2019 telephone conference with counsel for the settling parties, representatives from the Massachusetts and Indiana Attorney General's Offices requested that the parties modify the Proposed Release to make clear it was not intended to reach the claims of those states. During that call, counsel for the Defendant expressed an unwillingness to make the modification, and further expressed the view that, as to any class member who did not opt out of the Proposed Settlement, the release would operate to preclude

---

[3] The "50 State Attorneys General," along with the FTC and CFPB, that Class Counsel note "had input into the Settlement's notice program and claims administration protocols" included Puerto Rico and Washington, D.C., but not Massachusetts or Indiana. *See* Plaintiffs' Motion for Final Approval of Proposed Settlement, Doc. No. 903 at 2.

Massachusetts from seeking additional restitution or relief on behalf of that

consumer in its Enforcement Action.

By emails exchanged between November 15, 2019 and December 4, 2019,

Massachusetts again requested that the settling parties modify the release language

to make clear it does not reach its claims.  Counsel for both parties refused to

modify the settlement.

### C. The Defendant Negotiated a Separate Release with Nearly All Other States

Simultaneously with the Proposed Settlement Agreement, the attorneys

general of 48 states, the District of Columbia, and Puerto Rico announced a

collective settlement with the Defendant of their respective state consumer

protection and data protection law claims against the Defendant arising out of the

Data Breach (the "Multistate Settlement").  In exchange for making various

monetary payments directly to the settling States and agreeing to certain injunctive

relief, the Defendant obtained a separate release from each settling State from all

claims the States could have brought under their respective state consumer

protection and data protection laws based on the Data Breach.[4]  Massachusetts did

not join the Multistate Settlement and played no role in negotiating its terms.

## III.   <u>ARGUMENT</u>

CAFA requires that class action defendants provide notice of the terms of

settlement to the Attorney General of each state "so that they may voice concerns

if they believe that the class action settlement is not in the best interest of their

citizens."  S. Rep. No. 109-14, at 5 (2005), 2005 U.S.C.C.A.N. 3, 6.  *See* 28 U.S.C.

§ 1715 (2012); *see also George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d

1356, 1373 (N.D. Ga. 2019) (objections from the state attorneys general are an

important consideration when evaluating a class action settlement); *Figueroa v.*

*Sharper Image. Corp.*, 517 F. Supp. 2d 1292, 1301 n.9 (S.D. Fla. 2007) (noting

role of state attorneys general in class settlement approval process).

---

[4] Attached as **Exhibit 2** is a copy of the settlement between Equifax and the State of Alabama, which Equifax attached to a Form 8-K that it filed with the SEC on July 22, 2019 announcing the Multistate Settlement.  *See also* https://www.sec.gov/Archives/edgar/data/33185/000119312519198584/000119312 5-19-198584-index.htm.

Massachusetts understands Exhibit 2 to be identical in all material respects with the settlements Equifax reached with the other states that joined the Multistate Settlement.  The state release provision appears at page 60, ¶ 66.

Massachusetts files this *amicus curiae* brief to express its concerns with respect to the scope of the release in the Proposed Settlement Agreement.  The Proposed Release appears calculated to improperly infringe on Massachusetts' power to vindicate its sovereign interests in enforcing its own consumer protection and data protection laws.  If approved, it would contravene controlling precedent, threaten to undermine Massachusetts' consumer protection enforcement scheme, and treat Massachusetts (and by extension, its residents) unfairly vis-à-vis those states that resolved their claims with Equifax through a separate resolution, with a separate release.

## A. Private Settlements Do Not Bind Government Law Enforcement.

It is well-settled in the Eleventh Circuit that a government law enforcement agency is not bound by a release negotiated by private litigants where its action seeks to enforce a "statute that implicate both public and private interests." *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1424–1425 (11th Cir. 1998) (holding that a private class action settlement did not bar the Secretary of Labor from pursuing restitution and other relief because "the Secretary was not a party to the [class action] settlement and has national public interests separate and distinct from those of the [case's] private litigants"), *cert. denied*, 525 U.S. 1140.  This is because "governmental agencies have statutory duties, responsibilities, and

interests that are far broader than the discrete interests of a private party."
*E.E.O.C. v. Pemco Aeroplex, Inc*., 383 F.3d 1280, 1291 (11th Cir. 2004) (following
*Herman* and holding that the EEOC could move forward with an enforcement
action notwithstanding the conclusion of the charging party's lawsuit), *cert.
denied*, 546 U.S. 811.  It is immaterial that the government's action may be based
on the same or similar misconduct or that the government's action may, ultimately,
in certain respects, supplement the relief obtained by private litigants.  *See
Herman*, 140 F.3d at 1425.

This District Court has recently applied *Herman* to an independent action
brought by the Federal Trade Commission in *FTC v. Hornbeam Special Situation,
LLC*, 308 F. Supp. 3d. 1280 (N.D. Ga. 2018), *reconsidered on other grounds*, No.
1:17-CV-3094-TCB, 2018 WL 6254580 (N.D. Ga. Oct. 15, 2018).  There, this
district court rejected the argument that *res judicata* should apply against an action
by the FTC that asserted claims against a defendant that were "wholly duplicative
of the claims of a prior class-based action" and which sought "monetary
compensation on behalf of injured person in the class."  *Id*. at 1292 (emphasis
omitted).  Following the precedent of *Herman*, this District Court permitted the
FTC's action to proceed notwithstanding that claims by private litigants for

10

restitution were released by the class action settlement, emphasizing the "FTC's broader interest in deterrence, full recompense, and enforcement of the law." *Id*.

It is no different here. Through its Enforcement Action, Massachusetts seeks to vindicate sovereign interests that are separate and distinct from those of the class litigants. Defendant has acknowledged the Attorney General's broad, independent enforcement authority, asserting (unsuccessfully) at the motion to dismiss stage in these proceedings that her action precluded the chapter 93A claims asserted by certain class plaintiffs.[5] Only the Attorney General can enforce the Massachusetts Data Protection Law and the Data Security Regulations, and she is vested with broad authority to remedy violations thereof. *See* Mass. Gen. Laws c. 93H, § 6 (Attorney General may seek all remedies available under chapter 93A and also "other relief that may be appropriate."). And only the Attorney General can bring proceedings under the Massachusetts Consumer Protection Act "in the public interest" and pursue, in the name of the Commonwealth, permanent injunctive relief, consumer restitution, and civil penalties. *See* Mass. Gen. Laws c. 93A § 4.

---

[5] In its Motion to Dismiss, Defendant even referenced the Enforcement Action to argue that "[o]nly the Massachusetts Attorney General may bring an action for a data security breach under the Massachusetts Consumer Protection Act." Doc. No. 425-1 at 64 and n. 25. *See also* Doc. No. 435-1 at 61 and n. 25 (same). This Court (correctly) rejected that argument. *See* Opinion and Order, Doc. 539, at 58–59 (Jan. 28, 2019), *In re Equifax Customer Data Security Breach Litigation,* 371 F.Supp.3d 1150, 1182–83 (N.D. Ga. 2019).

Nonetheless, the parties have taken the position that the Proposed Release is proper as drafted, and in conversations with representatives of Massachusetts, counsel for the Defendant has asserted that the Proposed Release is intended to bar Massachusetts' claims made "on behalf of consumers" in its Enforcement Action. The Eleventh Circuit, however, has firmly rejected the end-run that the Defendant appears to be attempting. *See Herman*, 140 F.3d at 1425–26 (rejecting attempts by private class litigants to release the ERISA claims of the Secretary of Labor: "The ERISA enforcement scheme, carefully constructed by Congress, is undermined if private litigants can sue ERISA violators first, reach a settlement, and bar the [Secretary of Labor's] action."). Because no class member could have brought these claims in the name of Massachusetts or on behalf of the public at large, the Proposed Settlement Agreement and Proposed Release do not apply to or bind Massachusetts' claims in its Enforcement Action.

### B. Massachusetts May Pursue and Obtain All Available Relief Against the Defendant Irrespective of this Class Action.

Under the Consumer Protection Act, Massachusetts (through its Attorney General) may bring actions in the public interest to seek permanent injunctive relief, civil penalties, and restitution to remedy and vindicate violations of the Consumer Protection Act. Mass. Gen. Laws c. 93A, § 4. Massachusetts' authority

is equally broad under the Data Protection Law, which not only grants the Attorney General exclusive authority to pursue relief under the Consumer Protection Act, but further authorizes her office to seek any other orders necessary "to remedy violations of [the law] and for other relief that may be appropriate."  Mass. Gen. Laws c. 93H, § 6.  Each of these avenues of relief, separately and collectively, are a critical component of the Massachusetts enforcement scheme and serve important public purposes that are not served by relief obtained in private litigation.

For example, only the Attorney General may obtain civil penalties for violations of the Massachusetts Consumer Protection Act and the Data Protection Law.  Civil penalties serve important public purposes by penalizing violations of law and deterring future misconduct.  *See Commonwealth v. Fall River Motor Sales, Inc.*, 409 Mass. 302, 311 (1991) (factors that inform a court's imposition of civil penalties under Mass. Gen. Laws c. 93A include: "(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5) the necessity of vindicating the authority of the [Commonwealth]" (in original, "the FTC") (internal quotations omitted)); *Commonwealth v. Chatham Dev. Co*., 49 Mass. App. Ct. 525, 528–29 (2000) (discussing the role of deterrence in assessing civil

13

penalties and observing that "the Attorney General has the power to bring suit not only on behalf of those persons specifically injured but also on behalf of those similarly situated"); *see generally*, *Hudson v. United States*, 522 U.S. 93, 105 (1997) (observing that administratively imposed monetary penalties serve mutually-reinforcing functions of deterrence and to "promote the stability of the banking industry").  The public interest in deterrence would be undermined if private parties in class actions could prevent States from obtaining civil penalties to ensure compliance with the law and discourage future violations.

Massachusetts also has an independent statutory right to seek broad injunctive and other equitable relief against entities that violate the Consumer Protection Act and Data Protection Laws.  *See* Mass. Gen. Laws c. 93A, § 4 ("[w]henever the attorney general has reason to believe that any person is using or is about to use any method, act, or practice" that violates the Act, and "that proceedings would be in the public interest," she may pursue a civil action for, *inter alia,* "temporary restraining orders or preliminary or permanent injunctions . . . ."); Mass. Gen. Laws c. 93H, § 6 (Attorney General may seek remedies under both Mass. Gen. Laws c. 93A, § 4, "*and* for other relief that may be appropriate.") (emphasis added).  As with civil penalties, a private suit cannot bar the government through a private settlement from obtaining injunctive relief.  *See, e.g.*, *United*

14

*States v. Borden Co.*, 347 U.S. 514, 518–19 (1954) (holding that a private plaintiff's injunctive relief did not bar the federal government from bringing suit for injunctive relief under the Clayton Act and observing that then Act authorized private plaintiffs to bring injunctive relief because "private and public actions were designed to be cumulative, not mutually exclusive").  Accordingly, Massachusetts may obtain different and additional injunctive relief against the Defendant irrespective of this class action to protect residents of Massachusetts and deter future violations of Massachusetts law.

Consumer restitution, like civil penalties and injunctive relief, is also an important component of the Massachusetts enforcement scheme, and the Attorney General is specifically authorized to pursue it on behalf of groups of consumers. *See* Mass. Gen. Laws c. 93A, § 4 (the Attorney General may seek "other orders or judgments as many be necessary to restore to any person who has suffered any ascertainable loss by reason of" conduct in violation of the Consumer Protection Act); Mass. Gen. Laws c. 93H, § 6 (authorizing the Attorney General to seek all remedies available under chapter 93A and also "other relief that may be appropriate.").

Moreover, restitution orders sought by the Attorney General are not, under the Consumer Protection Act, treated as exclusive substitutes for private damages.

15

Rather, the Act confers concurrent authority on the Attorney General in public enforcement actions—*and* on individual consumers in private actions—to seek monetary relief.  *Compare* Mass. Gen. Laws c. 93A, § 4 (authorizing the Attorney General to seek, on behalf of the state, orders or judgements "as may be necessary to restore to any person who has suffered any ascertainable loss . . . any moneys or property, real or personal . . . ."); *with id.* § 9 (authorizing "[a]ny person . . . who has been injured by another person's" violation of the Consumer Protection Act to "bring an action in the superior court . . . for damages. . . .").

Restitution orders sought in public law enforcement actions also serve distinct, public purposes—including ensuring that parties do not profit from their wrongdoing and deterring future would-be wrongdoers—that may not adequately be achieved through private actions for damages.[6]  Therefore, as this Court has previously recognized, Massachusetts may pursue restitution in its Enforcement Action, notwithstanding the release in the Proposed Settlement Agreement.  *See Hornbeam*, F. Supp. 3d. at 1291–93 (refusing to apply *res judicata* to the FTC's

---

[6] The distinct, public purposes served by restitution orders in law enforcement actions have long been recognized.  *See Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946) ("a restitution order is appropriate and necessary to enforce compliance with the [federal Emergency Price Control Act of 1942] and to give effect to its purposes.  Future compliance may be more definitely assured if one is compelled to restore one's illegal gains[.]").

16

claims for restitution based on the same conduct released in a class action settlement).  The Defendant's position that the Proposed Release would bar any claim for restitution by Massachusetts in its Enforcement Action is unsupported, and contrary to the controlling precedent.

### C. The Defendant Has Acknowledged that Claims by the States are Separate from those Asserted by the Class Plaintiffs.

Simultaneously with the Proposed Settlement Agreement, the Defendants entered into separate settlement agreements with 48 other state attorneys general to resolve the States' claims under their respective state consumer protection and data protection laws.  *See supra*, § II.C.  Massachusetts, along with Indiana, were two States that did not join that settlement, and which have ongoing cases against the Defendant.  The Multistate Settlements included separate releases for those States' claims for consumer restitution that were negotiated and resolved in separate agreements. *See* **Exhibit 2** at p. 60, ¶ 66.

There, Defendants recognized and respected that each governmental entity must have the ability to determine how its own claims will be pursued.  Here, however, Defendant appear to treat Massachusetts (and Indiana) differently.  As discussed previously, this position is not supported by controlling precedent, would allow the Defendant to evade liability in the Enforcement Action, and would be

17

manifestly unfair to Massachusetts and its residents.  In turn, modifying the Proposed Release as sought herein will not deprive either party, or the Class, of any benefit or consideration under the Proposed Settlement Agreement that they legitimately can obtain under applicable law.

## IV.   <u>CONCLUSION</u>

The Massachusetts Attorney General asks that the Court decline to approve the Proposed Settlement and Release unless it is modified to comport with controlling Eleventh Circuit precedent by making clear that the Proposed Settlement and Release *cannot* apply to the Enforcement Action or Massachusetts' claims for restitution, penalties, and injunctive relief.  To avoid unnecessary future litigation,[7]  Massachusetts respectfully requests that this Court order the parties to amend the proposed settlement agreement and release as follows:

1.  The definition of "Released Claim" at § 2.38 shall expressly exclude civil monetary penalties, restitution, and broad injunctive relief in any law enforcement action;

2.  The definition of "Unknown Claims" at § 2.50 shall expressly exclude civil monetary penalties, restitution, and broad injunctive relief in any law enforcement action; and

---

[7] In light of the controlling precedent in this Circuit, Massachusetts will not consider an approval of the Proposed Settlement and Release to be an acknowledgement that Massachusetts is bound by the Release, and reserves all rights to argue this issue in its own Enforcement Action, as necessary.

3. The release at § 16.1 shall expressly exclude government agencies or sovereign states acting in a law enforcement or *parens patriae* capacity and not be intended to prohibit cooperation by Class Members with law enforcement.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS

MAURA HEALEY
ATTORNEY GENERAL

By:     /s/ Sara Cable
        Sara Cable (Mass. BBO # 667084)
        Jared Rinehimer (Mass. BBO # 684701)
        Elizabeth Cho (Mass. BBO # 672556)
        Sarah Petrie (Mass. BBO # 684213)
        Assistant Attorneys General
        Office of the Attorney General
        Consumer Protection Division
        One Ashburton Place
        Boston, Massachusetts 02108
        617.727.2200
        sara.cable@mass.gov
        jared.rinehimer@mass.gov
        elizabeth.cho@mass.gov
        sarah.petrie@mass.gov

        Dated: December 12, 2019

19

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Amicus Brief has been prepared in compliance with

Local Rules 5.1 and 7.1.

/s/ Sara Cable
Sara Cable
Assistant Attorney General
Commonwealth of Massachusetts

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service,

which will send notification of such filing to all counsel of record this 12th day of December,

2019.

/s/ Sara Cable
Sara Cable

OFFICE OF THE MASSACHUSETTS
ATTORNEY GENERAL
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200
E-mail: sara.cable@mass.gov