# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

**REPLY IN SUPPORT OF THE OBJECTION OF MIKELL WEST**

**Introduction**

The 1,106 objections filed to the proposed settlement and requested $77.5 million fee amount to a 0.00075% objection rate. Dkt. 902 at 1. That is <u>more than twice the typical objection rate</u> of 0.0003% according to the FTC.[1] *Compare In re Home Depot, Inc., Customer Data Security Breach Litig.*, 2016 WL 6902351, at *4 (noting there were "only 5 timely objections"). That's remarkable considering the <u>unprecedented requirements for objectors</u> here.[2]

The settlement should not be approved under *Bennett* and Rule 23(e)(2)(C) based on the current evidence. The parties settled early after Equifax admitted the data breach, agreed to a kings' ransom in attorneys' fees unopposed by Equifax, and then set up myriad obstacles for class members wishing to voice dissent. This class member met the laundry list of requirements, sat for a deposition, and was rewarded with class counsel offering a disturbingly misleading account of his testimony on the record.

This Court should not displace established megafund jurisprudence in this District with the opinions of class counsels' paid experts. If the settlement is approved, nothing more than 10% of the $310 million cash fund actually secured

---

[1] *See* Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, at 11 (Federal Trade Commission Sept. 2019) https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[2] Counsel could find no case requiring class members to provide 4 dates from a 16-day window to give a deposition in order to object.

by class counsel should be awarded in attorneys' fees. That would still allow a generous 1.48 lodestar multiplier. The rest of the agreed upon $77.5 million fee ($46.5 million) should be reallocated to the class.

## I. Class counsels' misleading attacks on Mr. West and his counsel are meant to distract from the merits.

Class counsels' primary response is attacking the objectors. As it relates to Mr. West, class counsel take criticisms of one of his attorneys, Christopher Bandas, and falsely extrapolate that there must be ill motive here. But, Mr. Bandas is not Mr. West's counsel of record. Jerry Froelich and Robert Clore[3] are. No court has ever sanctioned them or suggested that they filed a frivolous objection.

Even without considering the countervailing cases in which clients of Mr. Bandas have prevailed in improving class benefits,[4] that is an outdated narrative. Under amended Rule 23(e)(5), this Court must approve any compensation offered by class counsel for a class member to withdraw an objection or appeal. FED. R.

---

[3] Class counsel suggest impropriety in Mr. Clore failing to attach an injunction order entered against Mr. Bandas and the Bandas Law Firm from the Northern District of Illinois. Dkt. 900-1 ¶ 62. The injunction requires Mr. Bandas to "fully and truthfully" respond to all questions on an application for admission (pro hac vice or otherwise) and to attach a copy of the judgment. Dkt. 900-1 at Ex. 6. Mr. Bandas is not counsel of record and has not sought admission. The injunction does not speak to Mr. Clore, and even if it did, there was no application for pro hac vice admission. As noted in the objection (Dkt. 880 at 3 n.2, 22), under Case Management Order No. 1, because Mr. Clore is admitted to the United States District Court, Southern District of Texas (ID No. 2032287), he is admitted *pro hac vice* in this litigation. Dkt. 23 at 4. Thus, there was nothing for Mr. Clore to attach the injunction to.

[4] *See e.g.,* Dkt. 880-3.

2

CIV. P. 23(e)(5)(B)(ii) (eff. Dec. 1, 2018). Thus, the notion the objection is brought to extract an improper payment is not only false, it is an impossibility under the new rules. *See In re Optical Disk Drive Antitrust Litig.*, 3:10-md-02143, Dkt. 2889 (N.D. Cal. Feb. 21, 2019) ("Rule 23 now requires court approval of any payment or consideration provided to an objector in exchange for forgoing or withdrawing an objection to a proposed settlement, or for forgoing, dismissing, or abandoning an appeal from a judgment approving the settlement, thereby ameliorating at least some of the concern that objectors may act from questionable motives.").

Class counsel also distort Mr. West's testimony to suit their narrative. Three attorneys, Kenneth Canfield, Amy Keller, and Norman Siegel, who weren't at Mr. West's deposition signed a declaration claiming to have personal knowledge about his testimony. Dkt. 900-1 at ¶¶ 1, 63. They don't attach his transcript or indicate they reviewed it. Not surprisingly, what they have to say about his testimony is inaccurate. They claim "that his testimony appears to demonstrate the even he does not agree with many of the arguments made in his objection" and that his testimony "undermine[s]" many of his objections. Dkt. 902 at 40 n. 33; Dkt. 900-1 at ¶ 63. As the attached transcript reveals, however, Mr. West stood firmly behind each of his objections. Ex. 1 *passim*.

Class counsel represent that Mr. West believes the deposition requirement is

3

not burdensome. Dkt. 900-1 at ¶63. False. In fact, Mr. West described having to give a deposition as the greatest impediment to class members objecting. Ex. 1 at 50-52. *He* was able to take time off of work and appear for deposition, but he believes this was a "substantial impediment" to many others interested in objecting. Ex. 1 at 50-52. Having to provide "four dates over a two week period" including the Thanksgiving holidays "didn't deter me, but it most likely deterred countless others[.]" Ex. 1 at 49-50; Dkt. 800 at 1, 9 (objection noting that "Mr. West was able to file his objection, but many class members likely abstained for fear of having to give a deposition, particularly around Thanksgiving.").

He testified unequivocally that the goal of his objection is to improve the settlement benefits for the class. Ex. 1 at 11, 15, 17-19, 25, 28, 60, 73. He believes that millions in excessive fees should be reallocated to the class. Ex. 1 at 11, 17-18. Class counsel attempt to isolate this objection from the settlement itself, but as he noted, "we're talking about a pie, and you're saying ignore the largest slice of the pie, and what would you change about the rest of the pie." Ex. 1 at 17; *see* FED. R. CIV. P. 23(e)(2)(c)(iii) (requiring the court to consider "the terms of any proposed award of attorney's fees" in considering the adequacy of class relief).

Finally, the declarants indicate that Mr. West was unaware of criticism of Mr. Bandas. Dkt. 900-1 at ¶ 63. That too is false. His representation agreement discloses it. Dkt. 880-4 at ¶ 5.4; Ex. 1 at 76-77. Further, he testified he was aware

4

both of the firm's successes and criticisms against it. Ex. 1 at 35-36, 70. Nevertheless, he trusted Mr. Clore to represent him given his high regard for him personally and as an attorney. Ex. 1 at 36, 39, 69-71, 85. The lengths to which class counsel go to mislead the Court about Mr. West should be taken into account in considering settlement approval.

## II. Class counsel fail to meet their burden on the *Bennett* factors and the new Rule 23(e)(2)(C) considerations.

Despite around 100 pages of briefing from class counsel and hundreds more in declarations and expert reports, they failed to proffer potential class damages or a range of reasonableness to address factors 2 and 3, which are mandatory considerations. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The mere conclusion that the settlement benefit as valued by class counsel is more than the class could have recovered at trial, without assessing the value of class damages, is boilerplate. Dkt. 902 at 6; Dkt. 903 at 14; App. 3 ¶15; Dkt 858-2 ¶73; *cf. Abernethy v. Snow*, 151 Fed. Appx. 896, 898 (11th Cir. 2005) (conclusory statements are not enough in awarding fees; "[t]he court's order . . . must articulate the decisions it made, give principled reasons for those decisions, and show its calculation."). "[I]n any case[,] there is a range of reasonableness with respect to a settlement." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). The lack of information doesn't just thwart analysis under *Bennett*, it disarms class members in

5

evaluating whether to opt out or object. *See Shane Group, Inc. v. Blue Cross Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016).

While class counsel have provided inadequate information on two of six *Bennett* factors, the remaining four factors weigh against approval. Opposition to the settlement (factor 5) weighs decisively against approval. Considering this case settled in under two years and Mr. West was the first deponent in the consumer litigation, expense and duration of litigation (factor 4) and the stage of proceedings at which settlement was achieved (factor 6), suggest plenty was left on the table, or worse, funneled to class counsel. Class counsel overstate the risks in discussing the likelihood of success at trial (factor 1). Settlement was a foregone conclusion after Equifax admitted the data breach in September 2017 Dkt. 858 at 3. The parties started mediating a month later. 858-1 at 8. Forty different attorneys submitted applications to serve as class counsel. Dkts. 130-202. That may not evidence the absence of risk, but there was a line of attorneys waiting to assume the limited risks presented.

Class relief relative to the terms of the proposed attorneys' fees also counsels against approval. FED. R. CIV. P. 23(e)(2)(C)(iii). Equifax agreed not to oppose class counsel taking $77.5 million as 25% of $310 million. Dkt. 739-2 ¶ 11.1. As discussed in Mr. West's objection and *infra*, that is an overreaching percentage for a megafund in this District. Equifax would not have agreed to it

6

"without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014). The settlement should be disapproved.

### III. The parties agreed that class counsel would request 25% of the $310 million actually negotiated by class counsel, not a percentage of $380.5 million.

Class counsel continue to reframe their fee as 20.36% of the $380.5 million Consumer Restitution Fund. But that's not what they promised under the terms of the settlement. According to § 11.1, the parties agreed that fees will be sought as "25% of the Settlement Fund negotiated as part of the March 30, 2019, term sheet" (Dkt. 739-2 ¶ 11.1), which is $310 million. The parties could have agreed that class counsel could petition for 20.36% of the $380.5 million Consumer Restitution Fund. They chose not to, and that provision of the settlement limiting the sum from which they can request fees (for the benefit of the class) should be given effect.

Even though Equifax cannot oppose fees under the agreement, it clearly did not believe class counsel were entitled to the additional $70.5 million negotiated by the FTC. Even class counsels' fee motion acknowledges that it was the FTC, not them, that "increas[ed] the fund from $310 million to $380.5 million." Dkt. 858 at 6. They should not be heard now to inflate the figure to make the requested percentage more palatable.

7

Nor should nonmonetary benefits artificially inflate the fund from which fees are calculated. Class counsel promised to seek 25% of $310 million, not 20% of $380 million, and certainly not 1% of a fictitious billion dollar settlement. The *Anthem Data Breach Litig.* opinion cited by class counsel holds against their position. 15-MD-02617-LHK, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018). The court refused to include money spent on cybersecurity in the sum from which it calculated fees. As in *Anthem*, "it is difficult to isolate which portion of [Equifax's] increase in its cybersecurity spending is attributed to the instant lawsuit as opposed to money that [Equifax] would have spent anyway in the aftermath of the data breach at issue." *Id*.

### IV. This court should apply the megafund rule used in this District, not the outlier approach from the Third Circuit.

Class counsel are wrong that megafund principals recognized in this District don't govern fees from the $310 million fund. Dkt. 901 at 13 (citing *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 174 (3d Cir. 2006)). This is not the Third Circuit, where the economies-of-scale rule has been rejected. *Compare In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302-03 (3d Cir. 2005) (disapproving of megafund principals) *with In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (requiring an adjustment to the benchmark percentage for

8

megafunds where lodestar reveals windfall profits);[5] *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (utilizing a diminishing percentage sliding-scale for megafunds under an ex ante market-based analysis); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (disapproving off benchmark fee without accounting for the economies of scale).

*Camden I* authorizes consideration of the economies of scale in awarding fees. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (citing *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991)). In the Northern District of Georgia, courts recognize "that as the size of the common fund increases, the percentage of that fund awarded to class counsel should decrease." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1271–72 (N.D. Ga. 2008). That approach doesn't depend on a case "decided over 25 years ago." Dkt. 901 at 14 (citing *Domestic Air*, 148 F.R.D. at 312) (awarding 5.25% from $305 million). Judge Hunt applied the megafund rule as recently as 2008. *Carpenters Health*, 587 F. Supp. 2d. at 1271-72. He rejected a request for 26% fee from $137.5 million, finding 21% was reasonable in light of

---

[5] Judge Koh in the Northern District of California allowed a 27% fee from a $115 million megafund in *Anthem Data Breach Litig*. 15-MD-02617-LHK, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018). That was only permissible where the lodestar cross-check revealed a multiplier just "slightly over 1.0." *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018). No doubt she would have dramatically reduced the percentage had the multiplier reached 3.7 (and likely much higher) as in this case.

the economies of scale. *Id.* at 1268, 1272. To be sure, he would have awarded a much lower percentage from this $310 million fund given his adherence to the diminishing percentage rule.

This Court should not displace authority from this District with the opinions of class counsels' hired experts. As objectors Frank and Watkins observe, Robert Klonoff offers legal argument masquerading as expert opinion. Dkts. 890-1, 909-1. His legal conclusions should be stricken.[6] FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 597 (1993).

For his part, Professor Miller acknowledges that "that percentage fees tend to decline with class recovery." Dkt. 900-3 at 8. Indeed, the most recent 2017 Eisenberg-Miller-Germano Study, observes:

> <u>We continue to find a "scaling" effect</u>, in the sense that <u>fees as a percentage of the recovery tend to decrease as the size of the recovery increases</u>--an effect that appears to be due to the economies of scale that can sometimes be achieved in very large cases. The key fee determinant continues to be the size of the class recovery: <u>The amazingly regular relationship between these variables continues in the present data</u>.

Theodore Eisenberg, Geoffrey P. Miller, Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. REV. 937 (2017) (emphasis added).

Nevertheless, Miller backs the $77.5 million fee request with a handful of cases from the Southern District of Florida. Dkt. 900-3 at 9. Like class counsel and

---

[6] Mr. West joins in Frank's and Watkin's request for this Court to strike Klonoff's declaration, and incorporates the arguments contained in Dkt. 909-1 by reference.

10

Klonoff, he ignores both *Carpenters* and *Domestic Air* from this District. He also attempts to justify the high fee by filling in blanks from his own 2017 study. Dkt. 900- at 8-9. As he notes, the 2010 Eisenberg-Miller Study "found that for the highest decile of class recovery (>$175.5 million), the mean fee was 12.0% and the median fee was 10.2%." Dkt. 900-3 at 8. The 2017 Eisenberg-Miller-Germano study doesn't list the percentages for the same decile of class recovery.

He claims that after reviewing the data from settlements between $325 million to $425 million from the 2017 Eisenberg-Miller-Germano Study, the mean percentage is 19.7%. Dkt. 900-3 at 8-9. He doesn't describe how many settlements fell within that group nor any of the data relied on for that new figure. He also does not reconcile the claimed increase with the statement in his 2017 study that "among cases with recoveries greater than $50 million, … fees did not increase over the 2003-2013 period." Theodore Eisenberg, Geoffrey P. Miller, Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. REV. 937 (2017). Whatever the case, 20% from $310 million is an overreaching fee in this District. This Court, as a fiduciary for the class, should keep fees in line with the comparable megafund fee percentages in this District.[7]

---

[7] It should also scrutinize class counsels' requests for expenses (*see* Dkt. 880 at 20) and not simply accept their assurances "that all of their expenses were reasonable." Dkt. 901 at 24.

11

## V. It is particularly important to analyze lodestar in megafunds; the limited disclosure already reveals gross overcompensation.

Class counsel should not be given $77.5 million of the class members' settlement fund without the time records of the 60 law firms that submitted time being "scrutinized or even reviewed." Dkt. 901 at 22 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In "megafund cases, the lodestar cross-check assumes particular importance." *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013) ("the lodestar cross-check is particularly important in so-called megafund settlements such as this one").

The claimed $20.9 million lodestar, with a purported 31,011.9 among 60 law firms,[8] necessarily includes substantial overlap, meaning the compensable lodestar is much lower. Though exhaustive billing records may not be required on cross-check, a court should insist upon "enough information for its review of the time and rate submission to be a meaningful cross-check." *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *7 (M.D.N.C. May 9, 2016); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (rejecting purported lodestar multiplier on cross-check where the attorneys only submitted "the total hours spent by each attorney and other professional[s], with no

---

[8] Dkt. 858-1 at 82-87.

specification of date or task"). The generic lodestar submission, without any categorization as to task (or even attorney), makes it impossible to eliminate a single minute of duplicative billing. As it stands, a $77.5 million fee will almost certainly pay class counsel more than 4 times their lodestar.

Class counsel shouldn't be allowed to water down that number with future billing. They ignore authority holding that lodestar shouldn't include anticipated work. *See Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012); *see also 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013); *Manner v. Gucci Am., Inc.*, 15-CV-00045- BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016). Instead, they reference this Court's fee award in *Home Depot*, 2017 WL 9605207, *1 (N.D. Ga. Oct. 11, 2017), *aff'd in part and rev'd in part*, 931 F.3d 1065, 1082 (11th Cir. 2019). To the extent the lodestar in *Home Depot* included future time (the referenced docket entry, Dkt. 336 at 2, doesn't show it), there was no objection to it (Dkt. 339) and the issue was not addressed in either the order awarding fees or in the Eleventh Circuit's opinion. *Home Depot*, 2017 WL 9605207, *1; *Home Depot*, 931 F.3d at 1082.

Whatever the billing records reveal about the true lodestar, there is every reason for transparency and little reason to keep them hidden from the class. The class members' personal information is in the hands of unknown third parties.

13

They should at least be allowed to see their own attorneys' billing records. *See* MODEL R. POF'L CONDUCT R. 1.5(b) (requiring communication to the client of the "basis or rate of the fee…"); cf. *Kondash v. Kia Motors Am., Inc.*, 767 Fed. Appx. 635, 637 (6th Cir. 2019) (in class actions, 'because of the interest of a broader public outside the named parties, the standards for overcoming the presumption of openness' should be applied […] with particular strictness") (quoting *Shane Group, Inc. v. Blue Cross Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)).

## Conclusion

Based on the current evidence before the Court, the proposed settlement should be disapproved. If the Court nevertheless approves the settlement, it should deny class counsels' request for $77.5 million and award no more than 10% of the $310 million fund actually secured by class counsel. The remaining cash ($46.5 million) should be returned to the class. Before awarding any fee, the Court should order class counsel to provide a breakdown in how they accumulated their claimed lodestar, and make it available for review by class members.

Dated: December 13, 2019     Respectfully submitted,

/s/ Robert W. Clore
Robert W. Clore
*Pro Hac Vice*[9]
State Bar of Texas #24012436
Admitted to the United States District
Court, Southern District of Texas, ID
No. 2032287
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78418
(361) 698-5200

Jerome J. Froelich, Jr.
State Bar No. 278150
McKENNEY & FROELICH
One Midtown Plaza, Suite 910
1360 Peachtree Street
Atlanta, Georgia  30309-2920
(404) 881-1111

*Attorneys for Objecting Class Member, Mikell West*

---

[9] Dkt. 23 at 4.

15

## **CERTIFICATE OF FONT**

I hereby certify that this Objection has been prepared in compliance with Local Rules 5.1 and 7.1

DATED: December 13, 2019         /s/ Robert W. Clore
                                  Robert W. Clore

## **CERTIFICATE OF SERVICE**

The undersigned certifies that today he filed the foregoing document and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: December 13, 2019               /s/ Robert W. Clore
                                                             Robert W. Clore