# EXHIBIT 1

No. S18C1317

---

### In the

# Supreme Court of Georgia

---

THOMAS MCCONNELL, et al.,

*Appellants,*

v.

GEORGIA DEPARTMENT OF LABOR,

*Appellee.*

---

On Writ of Certiorari to the Georgia Court of Appeals
Georgia Court of Appeals Case No. A16A0655

---

## BRIEF OF APPELLEE

---

Christopher M. Carr          112505
  *Attorney General*
Kathleen M. Pacious          558555
  *Deputy Attorney General*
Loretta L. Pinkston-Pope   580385
  *Senior Asst. Attorney General*
Ellen Cusimano               844964
  *Assistant Attorney General*

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 657-4355
ecusimano@law.ga.gov

*Counsel for Appellee*

## Table of Contents

**Page**

Table of Authorities ......................................................................... iii

Questions Presented ........................................................................ 1

Introduction .................................................................................... 1

Statement ........................................................................................ 2

    A. Factual Background ................................................................ 2

    B. Proceedings Below ................................................................. 3

Summary of Argument .................................................................... 4

Argument ......................................................................................... 5

  I. The Court of Appeals erred in concluding that sovereign immunity has been waived for McConnell's claims .................... 5

    A. The GTCA's definition of "loss" bars McConnell from recovering his alleged economic damages .............................. 5

    B. Sovereign immunity has not been waived for claims that the State allegedly violated the FBPA ......................................... 7

    C. Sovereign immunity has not been waived for McConnell's claims for emotional damages .............................................. 8

  II. The Court of Appeals correctly concluded that McConnell's claims fail on the merits ..................................................... 9

    A. McConnell failed to state a claim for negligence. ................. 9

      1. DOL did not owe any legal duty to McConnell. ............. 10

      2. McConnell has not alleged a legally cognizable injury.. 15

    B. McConnell failed to state a claim for breach of fiduciary duty. ....................................................................... 20

i

C. McConnell failed to state a claim for public disclosure of private embarrassing facts. ................................................... 25

    1. Social security numbers and home addresses, etc. are not embarrassing facts. .......................................................... 25

    2. DOL's disclosure was not a *public* disclosure. ............... 26

Conclusion ............................................................................... 28

## Table of Authorities

**Cases**                                                 **Page**

*Amburgy v. Express Scripts, Inc.*,
    671 F. Supp. 2d 1046 (E.D. Mo. 2009)……………………………..18

*Ansley Marine Constr., Inc. v. Swanberg*,
    290 Ga. App. 388 (2008)…………………………………………20

*Barrs v. Acree*,
    302 Ga. App. 521 (2010)…………………………………………23

*Benedict v. State Farm Bank, FSB*,
    309 Ga. App. 133 (2011)…………………………………………25

*Berryhill v. Ga. Community Support and Solutions, Inc.*,
    281 Ga. 439 (2006)………………………………………………..11

*Blakey v. Victory Equip. Sales*,
    259 Ga. App. 34 (2002)…………………………………….……26

*Boyd v. Orkin Exterminating Co.*,
    191 Ga. App. 38 (1989)………………………………………16, 19

*Bradley Center, Inc. v. Wessner*,
    250 Ga. 199 (1982)……………………………………………10, 14

*Bruscato v. O'Brien*,
    307 Ga. App. 452 (2010)…………………………………..………9

*Bullard v. MRA Holding, LLC*,
    292 Ga. 748 (2013)………………………………………………..25

*Cabaniss v. Hipsley*,
    114 Ga. App. 367 (1966)……………………………...…25, 26, 27

*City of Columbus v. Ga. Dep't of Transp.*,
    292 Ga. 878 (2013)………………………………………………..24

*Clarke v. Freeman*,
    302 Ga. App. 831 (2010)……………………………………...…8

*Coon v. Med. Ctr., Inc.*,
    300 Ga. 722 (2017)……………………………………………8

*Cottrell v. Smith*,
    299 Ga. 517 (2016)……………………………..…………20, 23, 25, 26

*Cox v. Athens Reg'l Med. Ctr.*,
    279 Ga. App. 586 (2006)………………………………….…..21

*Cumberland Contractors, Inc. v. State Bank & Trust Co.*,
    327 Ga. App. 121 (2014)………………………………..…25, 26

*De Souza v. JP Morgan & Chase Co.*,
    2014 U.S. Dist. LEXIS 45777 (N.D. Ga. 2014)……………………25

*Dortch v. Atlanta Journal*,
    261 Ga. 350 (1991)…………………………………………..26

*Finnerty v. State Bank & Trust Co.*,
    301 Ga. App. 569 (2009)……………………………….…..16, 26, 27

*Ga. Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc.*,
    294 Ga. 593 (2014)……………………………………………4, 7

*Gettner v. Fitzgerald*,
    297 Ga. App. 258 (2009)………………………………..……..25

*Haughton v. Canning*,
    287 Ga. App. 28 (2007)………………………………………27

*Holcomb v. Walden*,
    270 Ga. App. 730 (2004)…………………………..……..10

*Holmes v. Countrywide Fin. Corp.*,
    2012 U.S. Dist. LEXIS 96587 (2012)……………………..……..18

*Home Indem. Corp. v. Battery Machinery Co.*,
    109 Ga. App. 322 (1964)……………………………………...………..6

*Hughes v. Georgia Department of Corrections*,
    267 Ga. App. 440 (2004)……………………………………………..7

*Ianicelli v. McNeely*,
    272 Ga. 234 (2000)…………………………………………………..24

*In Re: Arbys Rest. Group*,
    2018 U.S. Dist. Lexis 131140 (N.D. Ga. March 5, 2018)…....14, 15

*In Re: The Home Depot Inc. Consumer Data Security Breach Litigation*,
    2016 U.S. Dist. Lexis 65111 (N.D. Ga., May 18, 2016)…………..15

*Jenkins v. Wachovia Bank*,
    314 Ga. App. 257 (2012)…………………………...………..21, 22

*Kahle v. Litton Loan Servicing LP*,
    486 F. Supp. 2d 705 (S.D. Ohio 2007)………………………….18

*McConnell v. Dep't of Labor*,
    345 Ga. App. 669 (2018)…………………………..…………....1, 3, 6, 8

*McConnell v. Dep't of Labor*,
    302 Ga. 18 (2017)………………………………………..………1, 3

*McConnell v. Dep't of Labor*,
    337 Ga. App. 457 (2016)………………………………………...3

*Morrell v. Wellstar Health Sys., Inc.*,
    280 Ga. App. 1 (2006)……………………………….…………22

*Multimedia Wmaz v. Kubach*,
    212 Ga. App. 707 (1994)………………………………………27

*Parker v. Brush Wellman*,
    230 F. App'x 878 (11th Cir. 2007)……………………………20

*Paul v. Providence Health System-Oregon*,
   273 P.3d 106 (Ore. 2012)……………………………………..……17

*Peacock v. Retail Credit Co.*,
   302 F. Supp. 418 (N.D. Ga. 1969)…………………………..………27

*Pinero v. Jackson Hewitt Tax Serv.*,
   594 F. Supp. 2d 710 (E.D. La. 2009)………………………..……...17

*Pisciotta v. Old Nat'l Bancorp.*,
   499 F.3d 629 (7th Cir. 2007)…………………………………16, 18, 19

*Ponder v. Pfizer, Inc.*,
   522 F. Supp. 2d 793 (M.D. La. 2007)………………………..………17

*Rasnick v. Krishna Hospitality*,
   289 Ga. 565 (2011)……………………………………..……9, 10

*Riddle v. Ashe*,
   269 Ga. 65 (1998)……………………………………………….5

*Ruiz v. Gap, Inc.*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009)…………………..……17, 18

*Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*,
   283 Ga. App. 711 (2007)……………………………………………24

*Sommers Oil Co. v. Georgia Dep't of Agric.*,
   305 Ga. App. 330 (2010)……………………………………………9

*Southerland v. Georgia Dept. of Corrections*,
   293 Ga. App. 56 (2008)……………………………………………5

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)………………………………………………..7

*Wells Fargo Bank v. Jenkins*,
   293 Ga. 162 (2013)……………………………………………12, 13

*Williams v. Cobb County Farm Bureau, Inc.*,
 312 Ga. App. 350 (2011)……………………………………………25

*Williams v. Ga. Dep't of Corr.*,
 338 Ga. App. 719 (2016)……………………………………………..25

**Statutes**                                         **Page**

15 U.S.C. § 6801(a)………………………………………………………12

O.C.G.A. § 10-1-393.8………………………………………...………10, 11

O.C.G.A. § 10-1-910………………………………………………10, 12, 13

O.C.G.A. § 10-1-912(a)………………………………………………….…13

O.C.G.A. § 10-6-1…………………………………………………………23

O.C.G.A. § 23-2-58…………………………………………………….…20

O.C.G.A. § 45-1-4(e)……………………………………………………...7

O.C.G.A. § 45-19-20………………………………………………………7

O.C.G.A. § 50-21-20………………………………………………….…1, 5

O.C.G.A. § 50-21-21(a)……………………………………………………5

O.C.G.A. § 50-21-22(3)……………………………………………….…4, 6

## QUESTIONS PRESENTED

Upon granting McConnell's writ of certiorari in this case, this Court asked the parties to address the following question(s):

1.  Did the court of appeals err in holding that the State's sovereign immunity was waived under the Georgia Tort Claims Act, O.C.G.A. § 50-21-20 et seq., for McConnell's tort claims?

2.  Did the court of appeals err in holding that McConnell's tort claims failed to state a claim?

## INTRODUCTION

This case involves the Georgia Department of Labor's inadvertent disclosure of Thomas McConnell's social security number and other personal information to approximately 1,000 email recipients. Previously, this Court reviewed the case and remanded it to the Court of Appeals with instructions to rule on the threshold issue of the State's sovereign immunity. *McConnell v. Dep't of Labor*, 302 Ga. 18 (2017). On remand, the court of appeals held that sovereign immunity has been waived for McConnell's claims, but that they nonetheless fail on the merits. *McConnell v. Dep't of Labor*, 345 Ga. App. 669, 675-83 (2018). McConnell and the Department of Labor both submitted petitions for certiorari review, which this Court granted. As explained in more detail below, this Court should reverse the Court of Appeals' holding that sovereign immunity has been waived for McConnell's

1

claims, but should affirm the holding that McConnell's claims fail on the merits.

## STATEMENT

### A. Factual Background

McConnell alleges that a Department of Labor ("DOL") employee negligently sent an email to approximately 1,000 recipients that attached a spreadsheet containing the names, social security numbers, home phone numbers, email addresses, and ages of 4,757 individuals, including McConnell.[1]  (R-381, ¶¶ 6-8, 11).  McConnell claims that, as a result of this disclosure, he is at "imminent, immediate and continuing risk of identity theft" and has experienced "fear, upset, anxiety and injury to peace and happiness." (*Id.* at ¶¶ 11-12).  He also claims he has had to "take the time and effort to mitigate" the alleged damages from the disclosure by "placing freezes and alerts with the credit reporting agencies, closing or modifying financial accounts, and closely reviewing and monitoring [his] credit reports and accounts for unauthorized activity," and that he has "out-of-pocket costs related to credit monitoring and identity protection services." (*Id.* at ¶ 12).  McConnell did not allege that he has been the subject of identity theft.

---

[1] The recipients of the email were all individuals whose personal information was included in the spreadsheet that was disclosed in the email.

### B.   Proceedings Below

McConnell asserted three claims against DOL based on the email disclosure: (1) negligence, (2) breach of fiduciary duty, and (3) public disclosure of embarrassing private facts.  (R-385, 387, 389).  DOL moved to dismiss all three claims on the grounds that it is entitled to sovereign immunity and that McConnell failed to state a claim upon which relief may be granted.  (R-407).  The trial court agreed with both arguments and dismissed the case.  On appeal, the Court of Appeals affirmed the dismissal for failure to state a claim, but did not address whether sovereign immunity barred McConnell's claims.  *McConnell v. Department of Labor*, 337 Ga. App. 457 (2016).

On certiorari review, this Court held that the Court of Appeals "erred by deciding the merits of McConnell's claims without first considering whether the doctrine of sovereign immunity bars any of his allegations against the State." *McConnell*, 302 Ga. at 19.  This Court therefore vacated the Court of Appeals' judgment and remanded the case so that the Court of Appeals could "make the threshold determination of whether the trial court erred in its holding that McConnell's claims are barred by sovereign immunity." *Id.*

On remand, the Court of Appeals reversed the trial court's holding that sovereign immunity had not been waived for McConnell's claims, but once again affirmed the dismissal of McConnell's complaint for failure to state a claim for relief on the merits.  *McConnell v. Dep't of Labor*, 345 Ga. App. 669 (2018).

## SUMMARY OF ARGUMENT

The Court of Appeals should have found that it lacked subject matter jurisdiction over McConnell's claims on the grounds of sovereign immunity for three reasons. *First*, the State's limited waiver of sovereign immunity via the Georgia Tort Claims Act ("GTCA") is inapplicable to economic damages that do not derive from a personal injury, disease, or death. *See* O.C.G.A. § 50-21-22(3). *Second*, McConnell's negligence claim predicated on a purported legal duty arising out of the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-393.8, is barred by sovereign immunity because the FBPA does not contain an express legislative waiver of the State's sovereign immunity. *Third*, sovereign immunity has not been waived for McConnell's claims of emotional damages resulting from DOL's alleged negligence because he did not allege a physical impact or physical injury under the "impact rule."

The Court of Appeals did, however, correctly hold that McConnell failed to state a claim for relief for each of his three claims. *First*, McConnell's negligence claim is not viable because DOL did not have a legal duty to safeguard his personal information from disclosure. *Second*, McConnell's breach of fiduciary duty claim fails because merely providing his personal information to DOL is not sufficient to establish a fiduciary duty. *Third*, McConnell's public disclosure claim fails because the disclosure of his personal information to 1,000 email

4

recipients is not a disclosure to the "public at large" or the disclosure of an "embarrassing" fact.

## ARGUMENT

### I. The Court of Appeals erred in concluding that sovereign immunity has been waived for McConnell's claims

#### A. The GTCA's definition of "loss" bars McConnell from recovering his alleged economic damages

The Georgia Constitution provides that the State's sovereign immunity may be waived "only as provided by the General Assembly in a State Tort Claims Act or another Act . . . which specifically provides that sovereign immunity is waived and sets forth the extent of such waiver." Ga. Const. Art. I, Sec. II, Par. IX (e). "A waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace." *Riddle v. Ashe*, 269 Ga. 65, 67 (1998) (citation omitted).

In 1992, the General Assembly passed the GTCA, which provides for a limited waiver of sovereign immunity under specified circumstances. O.C.G.A. § 50-21-20. The GTCA mandates that "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article." O.C.G.A. § 50-21-21(a). The burden of proving a waiver of sovereign immunity under the GTCA is on the plaintiff. *Southerland v. Georgia Dept. of Corrections*, 293 Ga. App. 56, 57 (2008).

5

As relevant here, the GTCA waives sovereign immunity only to the extent the plaintiff suffered a "loss" as this term is defined in the Act: *i.e.*, "personal injury; disease; death; damage to tangible property, including lost wages and *economic loss to the person who suffered the injury, disease, or death*; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence." O.C.G.A. § 50-21-22(3) (emphasis added). As this language makes clear, the GTCA expressly limits the recovery of economic damages to a plaintiff who *also* suffered a "[personal] injury, disease, death." *Id.* Because McConnell does not allege that DOL's email disclosure caused him to suffer a personal injury, disease, or death, he cannot recover economic losses.

Nonetheless, the Court of Appeals erroneously concluded that the "catch-all" phrase of O.C.G.A. § 50-21-22(3) encompassed McConnell's economic losses. *Id.* The Court of Appeals reasoned that the General Assembly could have modified "any other element of actual damages recoverable in actions for negligence" with "'sustained by a person who suffered injury, disease, or death' if it had intended to limit the final phrase in this way." *McConnell*, 345 Ga. App. at 673. This reasoning ignores the settled principle of statutory construction that a catch-all provision applies only where what is sought to be included is not covered elsewhere in the statute. *See Home Indem. Corp. v. Battery Machinery Co.*, 109 Ga. App. 322, 324 (1964). Here, economic losses are already specifically referenced in O.C.G.A. § 50-21-22(3) and, therefore,

cannot be considered again in the catch-all provision. *See Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (explaining that "[h]owever inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment"). The Court of Appeals erred in applying the catch-all provision to economic losses not arising from a personal injury, disease, or death.

### B. Sovereign immunity has not been waived for claims that the State allegedly violated the FBPA

Under the Georgia Constitution, the sovereign immunity of the State may be waived "only as provided by the General Assembly in a State Tort Claims Act or another Act . . . which specifically provides that sovereign immunity is waived and sets forth the extent of such waiver." Ga. Const. Art. I, Sec. II, Par. IX (e); *see Georgia Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 597 (2014). Here, the FBPA does not contain an expression by the General Assembly that the State's sovereign immunity has been waived, or the extent of any such waiver. Thus, unlike other statutes where the Georgia legislature specifically provided for a waiver of sovereign immunity and the extent of such waiver, the legislature has not done so in the FBPA. *See* O.C.G.A. § 45-1-4 et. seq. (the Georgia Whistleblower Act); O.C.G.A. § 45-19-20 et seq. (Fair Employment Practices Act); *Hughes v. Georgia Department of Corrections*, 267 Ga. App. 440, 442 (2004). In the absence of language in the FBPA or any other evidence

that the Act explicitly waives the State's sovereign immunity, McConnell cannot show that DOL has waived its sovereign immunity for a negligence claim based on a duty arising from the FBPA.

### C. Sovereign immunity has not been waived for McConnell's claims for emotional damages

The Court of Appeals also erred in holding that DOL waived its immunity for McConnell's claims of emotional damages.  Georgia follows the physical impact rule, which requires plaintiffs seeking to recover emotional damages based on negligent conduct to show: (1) a physical impact; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury causes the plaintiff mental suffering or emotional distress.  *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 734 (2017).  Here, because the allegedly negligent email disclosure did not cause McConnell to suffer any physical impact that resulted in a physical injury, he is barred from recovering emotional damages under Georgia's impact rule.

The Court of Appeals erroneously concluded that the impact rule applies only to "negligent infliction of emotional distress" claims, not to ordinary negligence claims.  *McConnell*, 345 Ga. App. at 674.  But precedent shows that courts apply the impact rule to negligent conduct in general, not just to claims formally styled as "negligent infliction of emotional distress."  *See, e.g., Clarke v. Freeman*, 302 Ga. App. 831, 836 (2010) ("Georgia applies the impact rule to cases in which a party seeks

to recover for emotional distress in a claim involving negligent conduct"); *Bruscato v. O'Brien*, 307 Ga. App. 452, 456-57 (2010) (same). Thus, the fact that McConnell did not refer to his claim as "negligent infliction of emotional distress" does not save it from dismissal under the impact rule. *See generally Sommers Oil Co. v. Georgia Dep't of Agric.*, 305 Ga. App. 330, 332 (2010) (explaining that "[n]omenclature notwithstanding, the substance of a claim must be considered, and a party cannot do indirectly what the law does not allow to be done directly"). The Court of Appeals' holding to the contrary should be reversed; otherwise, plaintiffs could circumvent the impact rule by simply referring to their cause of action as "negligence" rather than "negligent infliction of emotional distress."

## II. The Court of Appeals correctly concluded that McConnell's claims fail on the merits

This Court should affirm the Court of Appeals' judgment that McConnell's claims for negligence, breach of fiduciary duty, and public disclosure of private embarrassing facts fail on the merits.

### A. McConnell failed to state a claim for negligence.

A negligence claim has four elements: (1) the existence of a legal duty, (2) a breach of that duty, (3) causation, and (4) damages resulting from the alleged breach. *Rasnick v. Krishna Hospitality*, 289 Ga. 565, 566 (2011). As discussed below, McConnell's negligence claim fails for two reasons: DOL does not have a legal duty to safeguard his personal

information, and he has not suffered an injury for which damages may be recovered under Georgia law.

### 1.    DOL did not owe any legal duty to McConnell.

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law." *Holcomb v. Walden*, 270 Ga. App. 730, 731 (2004).  A legal duty "can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw." *Rasnick*, 289 Ga. at 566-67.  Here, McConnell has identified two Georgia statutes as the source of DOL's alleged duty to safeguard his personal information: O.C.G.A. § 10-1-393.8 (part of the Fair Business Practices Act) and O.C.G.A. § 10-1-910 (legislative findings underlying the Personal Identity Protection Act).  *See* Appellant's Brief, pp. 14-17.  He also contends that DOL's duty to safeguard his personal information stems from this Court's statement in *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 201 (1982), that there is a "general duty one owes to all the world not to subject them to unreasonable risk of harm." *Id.* at p. 10.  McConnell is incorrect on all three counts.

*First*, O.C.G.A. § 10-1-393.8 states that:

[A] person, firm, or corporation shall not: (1) Publicly post or publicly display in any manner an individual's social security number.  As used in this Code section, "publicly post" or "publicly display" means to *intentionally* communicate or otherwise *make available to the general public*.

10

(Emphasis added). This statute, as evidenced by its explicit language, creates only a duty not to "intentionally" disclose a social security number to the "general public."[2] O.C.G.A. § 10-1-393.8. Under the facts alleged in McConnell's amended complaint, O.C.G.A. § 10-1-393.8 cannot serve as a legal duty underpinning his negligence claim. McConnell did not allege that DOL "intentionally" disclosed his personal information. To the contrary, he alleged that the disclosure was "negligent" and, indeed, specifically referred to it as a "negligent and improper dissemination." (R-381, ¶ 11). Additionally, as discussed below, McConnell did not allege that DOL communicated his personal information to the "general public." DOL instead communicated his personal information to a limited, discrete group of approximately 1,000 individuals. (*Id.* at ¶¶ 6-8). O.C.G.A. § 10-1-393.8 does not apply, and McConnell cannot use it to establish a legal duty.

---

[2] McConnell's interpretation of the statute as also prohibiting unintentional disclosures, *see* Appellant's Brief, p. 16, is incorrect. He bases this interpretation on the statutory language that defines "publicly display" as to "intentionally communicate *or otherwise make available to the general public.*" *Id.* (citing O.C.G.A. § 10-1-393.8). According to McConnell, the word "intentionally" does not modify the phrase "or otherwise make available to the public." *Id.* at p. 17. McConnell is incorrect, as such a construction would render the phrase "intentionally communicate" mere surplusage. *See, e.g., Berryhill v. Ga. Community Support and Solutions, Inc.*, 281 Ga. 439, 441 (2006) ("Courts should give a sensible and intelligent effect to every part of a statute and not render any language superfluous"). This phrase should instead be read as prohibiting individuals from "*intentionally* communicat[ing]" or "otherwise *intentionally* mak[ing] available to the general public."

*Second*, O.C.G.A. § 10-1-910 does not provide a legal duty, either. This provision is a legislative finding that "[t]he privacy and financial security of individuals is increasingly at risk, due to the ever more widespread collection of personal information by both the private and public sectors," that "[i]dentity theft is one of the fastest growing crimes," and that "[i]dentity theft is costly to the marketplace and to consumers." In other words, O.C.G.A. § 10-1-910 is a legislative policy statement.

Such legislative policy statements do not create legal duties giving rise to liability. This Court made that clear in *Wells Fargo Bank v. Jenkins*, 293 Ga. 162 (2013). In *Jenkins*, the plaintiff sued a bank after a teller accessed the plaintiff's confidential information and gave it to her husband, who then stole the plaintiff's identity. *Id.* at 163. The plaintiff argued that 15 U.S.C. § 6801(a) of the Gramm-Leach-Bliley Act ("GLBA") created a legal duty to protect his confidential personal information. *Id.* That portion of the GLBA provides:

> It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

*Id.* The Court of Appeals agreed, but this Court reversed, holding that the Court of Appeals had "misread an aspirational statement of Congressional policy . . . as establishing a legal duty." *Id.* The Court explained that in order to create such a duty, a statute must "provide

some ascertainable standard of conduct." *Id.* at 164. And Section 6801 of the GLBA neither "provides for certain duties or the performance of or refraining from any specific acts on the part of financial institutions," nor "articulate[s] or impl[ies] a standard of conduct or care," amounts to nothing more than a "Congressional policy statement" that cannot give rise to a legal duty. *Id.* The Court thus declined to "usurp legislative authority by inferring or supplying one." *Id.*

McConnell's attempt to transform an aspirational statement of the Georgia Legislature into a legal duty here should likewise be rejected. Like the portion of the GLBA at issue in *Jenkins*, none of the seven findings in O.C.G.A. § 10-1-910 set forth specific duties, nor do they "articulate or imply a standard of conduct or care." *Jenkins*, 293 Ga. at 164. Accordingly, none of them create a legal duty at all, much less one that applies in this case.

The statute's surrounding provisions confirm this. Section § 10-1-912(a) requires any information broker or data collector who maintains computerized data that includes the personal information of individuals to "give notice of any breach of the security of the system … to any resident of this state whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Unlike the general policies set forth in O.C.G.A. § 10-1-910, this provision creates a legal duty with an ascertainable standard. Thus, the General Assembly knew how to create a legal duty

13

within this statutory scheme, and it chose to limit that duty to providing notice of security breaches. In light of this express duty created by the General Assembly in service of its policy findings, it would make no sense to divine a separate duty from those findings.

*Third*, McConnell's reliance on language in *Bradley Center v. Wessner*, 250 Ga. 199 (1982), that there is a "general duty one owes to all the world not to subject them to unreasonable harm," *see* Appellant's Brief at p. 10, is misplaced. *Bradley Center* is factually and legally inapposite. In *Bradley Center*, the narrow issue was whether "an individual other than the patient can recover for the alleged malpractice of the physician where that person is injured by the criminal conduct of the patient and there is no privity between the injured party and the physician." *Id.* at 200. This Court held that, because a "special relationship" existed between the patient and the physician, and the physician had control over the patient, the physician owed third parties a duty of care. *Id.* No similar "special relationship" exists here, with the result that *Bradley Center* cannot be used to create a legal duty in this case.[3]

---

[3] Nor does *Arby's* help McConnell on this point. *See* Appellant's Brief at p. 10 (citing 2018 U.S. Dist. Lexis 131140, at *18). There, the district court specifically explained that *Bradley* should not be interpreted as a way to create a "new tort" and that there is no "absolute duty to avoid injuring others" under Georgia tort law. *Id.*

And while two recent federal cases have used *Bradley Center* to create a legal duty, both cases concerned the factually distinguishable scenario of whether retail merchants should have foreseen the risk of third party "hackers" intercepting their customers' personal information. *See In Re: The Home Depot Inc. Consumer Data Security Breach Litigation*, 2016 U.S. Dist. Lexis 65111 (N.D. Ga., May 18, 2016); *In Re: Arbys Rest. Group*, 2018 U.S. Dist. Lexis 131140 (N.D. Ga. March 5, 2018). Unlike McConnell's case, both *Home Depot* and *Arby's* involved claims of actual theft of customers' financial data by third party hackers, including unauthorized debit and credit card charges and disabled accounts. *See Home Depot*, 2016 U.S. Dist. Lexis, at *18-19; *Arby's*, 2018 U.S. Dist. Lexis 131140, at * 14-15. Those cases are too factually distinguishable to apply here. Indeed, the *Arby's* court noted that the facts in *McConnell* were "starkly different" from those in *Home Depot* because there were no "allegations of known security deficiencies" and no allegations that the inadvertent emailing of the spreadsheet "was foreseeable." *Arby's*, 2018 U.S. Dist. Lexis 131140, at *25-26.

### 2. McConnell has not alleged a legally cognizable injury.

McConnell has failed to state a negligence claim (or any claim, for that matter) for another reason: he has not alleged a cognizable legal injury. McConnell alleged that he was injured by DOL's disclosure because it has placed him "at imminent, immediate and continuing risk

of identity theft." (R-381, ¶ 11). But that is not a cognizable injury under Georgia law: Georgia courts have held that an "an increased risk of identity theft" due to the disclosure of confidential personal information to third parties is too speculative to state an injury. *Finnerty v. State Bank & Trust Co.*, 301 Ga. App. 569 (2009), cert. denied, 2010 Ga. LEXIS 442 (2010).

In *Finnerty*, the Court of Appeals rejected the same argument now raised here. There, the plaintiff sued a bank after it filed a complaint with an exhibit that contained the plaintiff's social security number. *Id.* at 569. Because court filings were publicly accessible through the clerk's office, the plaintiff claimed that he had suffered damages because of "an increased risk of identity theft and non-authorized third parties hav[ing] access to the otherwise confidential personal information disclosed by [the defendant]." *Id.* at 572 (internal quotation marks omitted). The Court of Appeals dismissed the plaintiff's claims, holding that "[a] fear of future damages is too speculative to form the basis for recovery."[4] *Id.*

Courts from numerous other jurisdictions have agreed. *See Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 639 (7th Cir. 2007)

---

[4] Georgia courts also have rejected claims in other contexts premised on an increased risk of future injury. *See Boyd v. Orkin Exterminating Co.*, 191 Ga. App. 38 (1989) (holding that the plaintiffs could not recover for the "increased risk of cancer" suffered by their children as a result of the defendant's negligent application of insecticides).

("Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy"); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009) (the increased risk of future identity theft "does not rise to the level of appreciable harm necessary to assert a negligence claim"); *Pinero v. Jackson Hewitt Tax Serv.*, 594 F. Supp. 2d 710, 715-16 (E.D. La. 2009) (allegations of an increased risk of identity theft failed to state a claim because the plaintiff "has not alleged that any third party accessed her information and stole her identity"); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 798 n.5 (M.D. La. 2007) ("[T]he injury accrues when the compromised data are actually used by a third party to steal someone's identity"); *Paul v. Providence Health System-Oregon*, 273 P.3d 106, 110 (Ore. 2012) (plaintiffs failed to state a claim based on the increased risk of identity theft because they "alleged no actual identity theft or financial harm, other than credit monitoring and similar mitigation costs").

McConnell's allegation that he has incurred time, effort, and money "to mitigate the actual and potential damage" from the disclosure of his personal information likewise fails to state a cognizable injury. (R-381-382, ¶ 12). These expenditures are not injuries in themselves; they are attempts to mitigate the increased risk of identity theft. Since the increased risk of identity theft is not a cognizable injury, however, McConnell has no damages to mitigate. *See*

*Ruiz*, 622 F. Supp. 2d at 918 ("Here, however, [plaintiff] has no actual damages to mitigate since he has never been a victim of identity theft").

Although the Georgia courts have not directly addressed whether expenditures for credit monitoring after the disclosure of confidential information constitute a cognizable injury, courts in other jurisdictions have found that they do not. As one federal district court observed, "case after case has discarded claims by litigants to collect damages for the electronic monitoring of their financial accounts and credit history." *Holmes v. Countrywide Fin. Corp.*, 2012 U.S. Dist. LEXIS 96587, *18-19 (2012); *see also Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046 (E.D. Mo. 2009) (finding that the plaintiff's claim that he was "spending significant amounts of time monitoring his credit and medical information" after his personal information was wrongfully disclosed failed to state a claim for relief); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 710 (S.D. Ohio 2007) ("[A]n argument that time and money spent monitoring a plaintiff's credit suffices to establish an injury 'overlook[s] the fact that their expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized'").

Courts considering credit-monitoring claims have also drawn on decisions denying recovery for the costs of medical monitoring based on the increased risk of contracting an illness. For example, in *Pisciotta*, the Seventh Circuit noted that the Indiana Supreme Court's rejection of claims for the cost of present medical monitoring caused by the

18

increased risk of a future injury "provides us with guidance on the likely approach that court would adopt with respect to the information exposure injury in this case [and] we think it supports the view that no cause of action for credit monitoring is available."[5] 499 F.3d at 639.

In this vein, Georgia law does not recognize medical monitoring claims seeking the costs of present monitoring in an attempt to mitigate the increased risk of a future illness. In *Boyd v. Orkin Exterminating Co.*, 191 Ga. App. 38 (1989), the Court of Appeals implied that the increased risk of a future injury in conjunction with the present cost of monitoring that potential injury does not establish a cognizable injury. The plaintiffs in *Boyd* sued an exterminating company for negligently misapplying insecticide inside their home. They claimed that exposure to the insecticide fumes placed their children at an "increased risk of cancer." *Id.* at 40. The Court of Appeals held that the plaintiffs had not established any actual injury and had no right to recover "for the alleged 'increased risk of cancer'" even though the children "would require periodic monitoring over the ensuing years to determine whether they were developing any health problems." *Id.* In other words, the plaintiffs suffered no cognizable

---

[5] It should be noted, however, that "[e]ven in jurisdictions where medical monitoring has been acknowledged as a compensable damage, courts still have expressed doubt that credit monitoring also should be compensable." *Pisciotta*, 499 F.3d at 638 n.10.

injury, even though they asserted a claim for present monitoring costs based on the increased risk of future injury. *See also Parker v. Brush Wellman*, 230 F. App'x 878, 883 (11th Cir. 2007) ("Plaintiffs have failed to point us to any Georgia authority that allows recovery of medical monitoring costs in the absence of a current physical injury, and *Boyd* suggests that Georgia would not recognize such a claim."). The same reasoning applies here, where McConnell seeks monitoring costs based on an increased risk of future identity theft; he has suffered no cognizable injury.

### B. McConnell failed to state a claim for breach of fiduciary duty.

A claim for breach of fiduciary duty has three elements: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damage proximately caused by the breach. *Ansley Marine Constr., Inc. v. Swanberg*, 290 Ga. App. 388, 391 (2008). A fiduciary duty arises from the existence of a "confidential relationship," which is defined as any relationship where "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58; *Cottrell v. Smith*, 299 Ga. 517, 531 (2016). Thus, to establish the existence of a confidential relationship (and, hence, a fiduciary duty), plaintiffs bear the burden of establishing "special circumstances showing that [they] had a particular

relationship of trust or mutual confidence with the [defendant]."
*Jenkins v. Wachovia Bank*, 314 Ga. App. 257, 262 (2012), rev'd on other
grounds by *Wells Fargo Bank v. Jenkins*, 293 Ga. 162 (2013).

McConnell's allegations regarding his supposed confidential
relationship with DOL consist solely of the following:

> [DOL] required Plaintiff [] to disclose confidential personal
> identification information for Plaintiff [] to obtain services . . .
> and by requesting or requiring that Plaintiff [] produce such
> personal identifying information, the Plaintiff [] reasonably
> placed their trust and confidence in the DOL that the DOL
> would safeguard and protect their information.

(R-387, ¶ 30). Notably, McConnell includes no allegation that DOL was
"so situated as to exercise a controlling influence over the will, conduct,
and interest" of McConnell. This omission is, by itself, fatal to
McConnell's claim. *See Cox v. Athens Reg'l Med. Ctr.*, 279 Ga. App.
586, 593 (2006) (finding no confidential relationship where there was
"no allegation that [the defendant], in setting its rates, exercised
controlling influence over the will, conduct, or interest of appellants, or
held a relationship of mutual confidence").

Nevertheless, to the extent McConnell argues that a confidential
relationship existed simply because: (1) DOL required him to disclose
his personal information as a pre-requisite to obtaining benefits, (2) he
trusted DOL would safeguard his personal information, (3) DOL was
acting as his agent, and (4) DOL is a trustee of all applicants for

unemployment benefits, *see* Appellant's Brief, pp. 22-25, he is wrong for four reasons.

*First*, the mere fact that an individual is required to disclose personal information to obtain a service or benefit is not, as a matter of law, sufficient to establish a confidential relationship. *See Jenkins v. Wachovia Bank*, 314 Ga. App. 257 (2012) (reversed in part on other grounds sub nom in *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (2013)). In *Jenkins*, the Court of Appeals held that a bank did not breach any fiduciary duty to a customer when it disclosed the customer's confidential information. It reasoned that the bank did not owe the plaintiff a fiduciary duty to safeguard his personal information because there was no confidential relationship, and the plaintiff's allegations did not reveal "any special circumstances showing that he had a particular relationship of trust or mutual confidence with the bank." *Id.* at 262. In other words, the fact that the plaintiff gave the bank his personal information to receive services, and the bank promised to protect it, did not create a confidential relationship.

Likewise, here, McConnell has done nothing more than allege that he provided DOL with his personal information to receive services from DOL (i.e., unemployment benefits). McConnell's allegations are thus insufficient to establish the existence of a confidential relationship or a special relationship of trust or mutual confidence. The fact that DOL is a state agency should not change this result. *See, e.g., Morrell v. Wellstar Health Sys., Inc.*, 280 Ga. App. 1, 7 (2006) (rejecting the

argument that certain hospitals, "solely by virtue of their nonprofit status, owe a fiduciary duty to all patients").

*Second*, to the extent McConnell argues that a confidential relationship exists simply because he placed his confidence in DOL and "reasonably relied" upon DOL to safeguard his personal information, *see* Appellant's Brief, p. 24, this Court has rejected such an argument on multiple occasions. *See, e.g., Cottrell v. Smith*, 299 Ga. 517, 532 (2016) (explaining that just because "people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential relationship"). McConnell's allegations are insufficient to establish a confidential relationship, which means he has failed to state a claim for breach of fiduciary duty.

*Third*, no agency relationship exists between DOL and McConnell. Under Georgia law, "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. The relationship must result from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Barrs v. Acree*, 302 Ga. App. 521, 524 (2010). McConnell's complaint does not allege that he gave DOL authority to perform actions on his behalf or that DOL actually performed any actions on his

behalf.[6]  McConnell's claim that he was in an agency relationship with DOL is therefore without merit.

*Fourth*, McConnell's reliance on Article I, Section II, Paragraph 1 of the Georgia Constitution (known as the "trustee clause") is misplaced.  The trustee clause applies in the specific situation where "a public officer had definitely benefitted financially (or definitely stood to benefit financially) as a result of simply performing their official duties.'" *City of Columbus v. Ga. Dep't of Transp.*, 292 Ga. 878, 882 (2013) (quoting *Ianicelli v. McNeely*, 272 Ga. 234, 236 (2000)).  There is no allegation here that DOL benefitted or stood to benefit financially from inadvertently disclosing McConnell's information.  The trustee clause does not apply in this case.

---

[6] There are two types of agencies: actual agency and apparent agency.  To prove actual agency, "the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results." *Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*, 283 Ga. App. 711 (2007). However, "[a]pparent authority to do an act is created as to a third person when the statements or conduct of the alleged principal reasonably cause the third party to believe that the principal consents to have the act done on his behalf by the purported agent." *Id.*  Neither type of agency exists here, as there are no allegations that McConnell controlled the method, manner, and time of DOL's distribution of benefits.  Likewise, there are no allegations involving a "third party" and its belief that DOL was acting on McConnell's behalf.

### C. McConnell failed to state a claim for public disclosure of private embarrassing facts.

To state a claim for public disclosure of private embarrassing facts, the plaintiff must establish: (1) the disclosure was a public disclosure; (2) the facts disclosed were private, secluded, or secret facts and not public ones; and (3) the matter made public was offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances. *Cottrell v. Smith*, 299 Ga. 517, 532 (2016) (citing *Cabaniss v. Hipsley*, 114 Ga. App. 367, 372 (1966)). McConnell has not met that burden here because the facts disclosed were not "embarrassing" and the disclosure was not to the "public at large."

#### 1. Social security numbers and home addresses, etc. are not embarrassing facts.

McConnell's public disclosure claim fails because his social security number, home phone number, etc. are not "embarrassing" facts. Numerous courts, including this one, have characterized this common-law cause of action as one for the "public disclosure of *embarrassing* private facts." *See Cottrell v. Smith*, 299 Ga. 517 (2016); *Bullard v. MRA Holding, LLC*, 292 Ga. 748 (2013); *Williams v. Ga. Dep't of Corr.*, 338 Ga. App. 719 (2016); *Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 327 Ga. App. 121 (2014); *De Souza v. JP Morgan & Chase Co.*, 2014 U.S. Dist. LEXIS 45777 (N.D. Ga. 2014); *Williams v. Cobb County Farm Bureau, Inc.*, 312 Ga. App. 350 (2011); *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133 (2011); *Gettner v. Fitzgerald*, 297 Ga. App. 258 (2009).

25

That the cause of action requires disclosure of embarrassing facts is further supported by this Court's recent recognition that "the interest protected [in a public disclosure claim] is that of *reputation*." *Cottrell v. Smith*, 299 Ga. 517, 533 (2016) (emphasis added) (citing *Cabaniss*, 114 Ga. App. at 372). An individual's reputation is not damaged simply because the disclosed fact is private. Instead, only *embarrassing* facts are deleterious to an individual's reputation. Accordingly, this Court should affirm the dismissal of McConnell's public disclosure claim for the additional reason that his social security number, home address, etc. are not embarrassing facts. *See Dortch v. Atlanta Journal*, 261 Ga. 350 (1991) (disclosure of unlisted telephone numbers does not give rise to a claim for public disclosure); *see also Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 327 Ga. App. 121 (2014) (a social security number is not an embarrassing private fact), cert. denied, 2014 Ga. LEXIS 927 (Ga., Nov. 3, 2014).

### 2. DOL's disclosure was not a *public* disclosure.

A "public disclosure" is one that is made "to the public at large," not just to a group of people. *See, e.g., Finnerty v. State Bank & Trust Co.*, 301 Ga. App. 569, 571 (2009); *Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 37-38 (2002). This definition is consistent with the common understanding of the word "public": "Belonging to the entire community. Unrestricted in participation." *See* Ballentine's Law Dictionary (3rd ed. 2010). Court rulings in public-disclosure cases are

consistent with this understanding; indeed, in most such cases, there is no issue over whether the disclosure was made to the "public" because it occurred via newspapers, television, magazines, books, and other modes of communication accessible by the general public. *Haughton v. Canning*, 287 Ga. App. 28, 30 (2007); *see, e.g., Multimedia Wmaz v. Kubach*, 212 Ga. App. 707 (1994) (television broadcast); *Cabaniss*, 114 Ga. App. at 372 (photograph in newspaper).

Under this definition, DOL's disclosure of McConnell's personal information was not made to the "public at large." To the contrary, the disclosure was made to a limited, discrete group of 1,000 email recipients. This case is similar to *Finnerty*, where the Court of Appeals held that the electronic filing of a document in Fulton County State Court containing the plaintiff's social security number was not a disclosure to the public at large. *Finnerty*, 301 Ga. App. at 571. This was so even though the court filings were accessible by all attorneys registered for electronic filing—surely more than 1,000 persons—and was also accessible via electronic terminals in the clerk's office. *Id.* Here, McConnell's personal information was accessible to many fewer persons than the plaintiff's social security number in *Finnerty*. DOL's dissemination consequently does not amount to a disclosure to the "public at large." *See Peacock v. Retail Credit Co.*, 302 F. Supp. 418 (N.D. Ga. 1969) (cited by *Finnerty*, 301 Ga. App. at n.11) (holding that the disclosure of a credit report containing confidential information

27

about the plaintiff to a credit reporting agency's customers was not made to the "public at large" because it was a "limited" publication).

## CONCLUSION

For the reasons set out above, this Court should: (1) reverse the judgment of the Court of Appeals that sovereign immunity has been waived for McConnell's claims, and (2) affirm the judgment of the Court of Appeals that McConnell's claims fail on the merits.

Respectfully submitted.

/s/ *Ellen Cusimano*

Christopher M. Carr          112505
  *Attorney General*
Kathleen M. Pacious          558555
  *Deputy Attorney General*
Loretta L. Pinkston-Pope   580385
  *Senior Asst. Attorney General*
Ellen Cusimano                  844964
  *Assistant Attorney General*


Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 657-4355
ecusimano@law.ga.gov

*Counsel for Appellant*

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2019, I served this brief by mailing a copy of the brief to be delivered via regular U.S. Mail, addressed as follows:

Scott A. Schweber, Esq.
Jefferson M. Allen, Esq.
Cohen, Cooper, Estep & Allen, LLC
3330 Cumberland Boulevard, Suite 600
Atlanta, GA 30339

/s/ *Ellen Cusimano*
Ellen Cusimano