IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800<br>1:17-md-2800-TWT<br><br>ALL FINANCIAL INSTITUTION ACTIONS |

OPINION AND ORDER

This is a data breach case. It is before the Court on the Plaintiffs' Motion for Leave to Amend the Financial Institutions' Consolidated Amended Complaint [Doc. 648]. For the reasons set forth below, the Plaintiffs' Motion for Leave to Amend the Financial Institutions' Consolidated Amended Complaint [Doc. 648] is GRANTED in part and DENIED in part.

I. Background

On September 7, 2017, the Defendant Equifax Inc. announced that it was the subject of one of the largest data breaches in history. Financial Institution Pls.' Consolidated Am. Compl. ¶¶ 3, 166 [Doc. 390]. From mid-May through the end of July 2017, hackers stole the personal information of nearly 150 million Americans (the "Data Breach"). *Id.* This personally identifiable information included names, Social Security numbers, birth dates, addresses, driver's license numbers, images of taxpayer ID cards and passports, photographs associated with government-issued identification, payment card

information, and more. *Id.* ¶ 3. This Data Breach, according to the Plaintiffs, was the direct result of Equifax's disregard for cybersecurity.

Equifax is a Georgia corporation with its principal place of business in Atlanta, Georgia. *Id.* ¶ 86. The Defendant Equifax Information Services LLC is a wholly-owned subsidiary of Equifax with its principal place of business in Atlanta, Georgia. *Id.* ¶ 87. Equifax Information Services collects and reports consumer information to financial institutions, including the Plaintiffs. *Id.* The Plaintiffs are financial institutions that provide a range of financial services. *Id.* ¶¶ 12-85. The Plaintiffs depend greatly on the services provided by Equifax and other credit reporting agencies, since the information they provide is necessary to determine the credit-worthiness of their customers. *Id.* ¶ 97.

According to the Plaintiffs, the Data Breach was the direct result of Equifax's refusal to take the necessary steps to protect the personally identifiable information in its custody. Equifax was warned on numerous occasions that its cybersecurity was dangerously deficient, and that it was vulnerable to data theft and security breaches. *Id.* ¶¶ 158-64. In fact, Equifax had suffered multiple security breaches in the past, showing that the Data Breach was not an isolated incident. *Id.* ¶¶ 150-58. However, despite these warnings, Equifax did not take the necessary steps to improve its data security or prepare for the known cybersecurity risks. *Id.* ¶¶ 158-64.

On March 7, 2017, a vulnerability in the Apache Struts software, a popular open source software program, was discovered. *Id.* ¶ 176. Equifax used Apache Struts to run a dispute portal website. *Id.* ¶ 173. The same day that this vulnerability was announced, the Apache Foundation made available various patches to protect against this vulnerability. *Id.* ¶ 177. The Apache Foundation, along with the U.S. Department of Homeland Security, issued public warnings regarding the vulnerability and the need to implement these patches. *Id.* ¶¶ 176-77. Equifax received these warnings and disseminated them internally but failed to implement the patch. *Id.* ¶¶ 179-80. Then, between May 13 and July 30, 2017, hackers exploited this vulnerability to enter Equifax's systems. *Id.* ¶ 184. These hackers were able to access multiple databases and exfiltrate sensitive personal information in Equifax's custody. *Id.* In addition to obtaining this personal information, the hackers accessed 209,000 consumer credit card numbers. *Id.* ¶ 186. On July 29, 2017, Equifax discovered the Data Breach. *Id.* ¶ 196. Equifax's CEO, Richard Smith, was informed of the breach on July 31, 2017. *Id.* ¶ 198. On September 7, 2017, Equifax publicly announced that the Data Breach had occurred. *Id.* ¶ 203.

On May 30, 2018, the Financial Institution Plaintiffs ("FI Plaintiffs") filed the FI Plaintiffs' Consolidated Amended Complaint asserting claims on behalf of 46 named plaintiffs against Equifax regarding damages resulting from the Equifax Data Breach. *Id.* ¶¶ 12-57 [Doc. 390]. The Plaintiffs allege

3

that the Data Breach undermined the credit reporting and verification system by exposing this personally identifiable information. *Id.* ¶¶ 105-06. According to the Plaintiffs, they were harmed because the Data Breach had a significant impact on financial institutions, including the measures they use to authenticate their customers. *Id.* ¶ 246. The Plaintiffs claim they were forced to expend resources to assess the impact of the Data Breach and their ability to authenticate customers and detect fraud. *Id.* ¶¶ 247-48. They have also expended resources establishing new monitoring methods for preventing fraud and will continue to incur costs to develop new modes of preventing such activity. *Id.* ¶ 251. Twenty-three of the Plaintiffs also allege that they issued payment cards that were compromised in the Data Breach. *See id.* ¶¶ 13-14, 17, 20, 23, 25, 31-33, 36, 39, 44-52, 54-56. The Plaintiffs assert claims for negligence, negligence per se, negligent misrepresentation, and claims under various state business practices statutes. The Defendants moved to dismiss.

The Court granted in part and denied in part the Defendants' Motion to Dismiss the Plaintiffs' Consolidated Amended Complaint [Doc. 539]. The Court held that the FI Plaintiffs who did not allege any payment-card related injuries fell short of satisfying the standing requirements of Article III, as they had not alleged an injury that was concrete, particularized, actual or imminent. [Doc. 539, at 11-12]. Similarly, the Court held that the Association Plaintiffs did not adequately allege Article III standing because they failed to identify that any

4

of their members who had been injured by the Data Breach under the associational theory of standing and failed to establish standing under a diversion-of-resources theory. *Id.* at 19-20. The Plaintiffs now move for leave to amend their Consolidated Amended Complaint.

## II. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." However, leave to amend may be denied where there has been undue delay or where the amendment would be futile. *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984); *Burger King Corporation v. C.R. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). A proposed amendment is futile where a plaintiff lacks standing to assert the claims in the proposed amended complaint. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1271 (11th Cir. 2011).

## III. Discussion

The FI Plaintiffs move for leave to amend their Consolidated Amended Complaint regarding Article III standing and a claim seeking attorneys' fees and expenses of litigation pursuant to O.C.G.A § 13-6-11.

### A.   The Financial Institutions

In the FI Plaintiffs' Consolidated Amended Complaint, the Plaintiffs sought to recover costs associated with reissuing compromised payment cards along with costs untied to any payment cards. Consolidated Am. Compl. ¶¶ 12-

5

57. These included payments allegedly made to reimburse customers whose personal identifiable information was impacted in the Data Breach for unspecified fraudulent banking activity and costs purportedly associated with the prevention of future bank fraud (the "Ecosystem Claims"). *Id.* at 234-261. On January 28, 2019, this Court granted in part and denied in part Equifax's Motion to Dismiss, dismissing the FI's Ecosystem Claims for lack of Article III standing but allowing the FI's claims associated with compromised payment cards to go forward. [Doc. 539]. The FI Plaintiffs failed to establish any of the essential elements of standing with respect to the Ecosystem Claims because their alleged injuries were not concrete and particularized since the alleged injuries impacted all businesses that rely on personal identifiable information to verify customers' identities. *Id.* at 9-11. Even if the FI Plaintiffs had suffered a concrete and particularized injury, they failed to allege facts showing that it was traceable to Equifax. *Id.* at 16-17. Furthermore, regardless if the FI Plaintiffs could otherwise establish standing, the injury they complained of – i.e., the "[p]ollution of the entire financial services ecosystem" – could not be judicially redressed. *Id.* at 17. Now, the FI Plaintiffs move to amend their Consolidated Amended Complaint.

The Court agrees with the Defendants that the FI Plaintiffs have not altered the basic nature of their Ecosystem Claims or the legal theories under which they wish to proceed. Although the Proposed Amended Complaint adds

certain factual allegations concerning injuries that were pleaded such as specific dollar amounts of costs associated with the alleged fraudulent banking activity and certain identity verification services that the Plaintiffs implemented after the Equifax Data Breach, no new forms of injury are alleged. The conclusory and formulaic allegations of fraudulent banking activity and injuries involving prophylactic measures purportedly taken in response to the Equifax Data Breach are still insufficiently concrete and particularized. And the lost revenue allegations due to abandoned credit applications are still entirely speculative. To allow standing for these injuries, as this Court previously stated, "would mean that financial institutions have standing to assert a claim any time some event occurs that affects the data security landscape," a premise which "would be unworkable." Id., at 14.

Denying leave to amend is appropriate where "[t]he deficiencies of the second amended complaint remained in the proposed complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1015 (11th Cir. 2005). The FI Plaintiffs have just repackaged the same claims that were earlier dismissed. The FI Plaintiffs who do not allege any payment-card related injuries still fall short of satisfying the standing requirements of Article III because they do not allege an injury that is concrete, particularized, actual, or imminent. The Court denies the FI Plaintiffs' Motion for Leave to Amend the "Ecosystem Claims" as futile because

it fails to remedy the standing deficiencies identified in the Motion to Dismiss Opinion and Order.

### B.   The Associations

The Consolidated Amended Complaint was also filed on behalf of 25 "associations or leagues." Consolidated Am. Compl. ¶¶ 12-58. The Proposed Amended Complaint reduces that number to 6 Association Plaintiffs. Proposed Am. Compl. ¶¶ 11-30. To establish standing, an association plaintiff must show: "(1) its members otherwise have standing to sue in their own right; (2) the interests the plaintiff-association seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested must require the participation of the association's members." *Greater Atlanta Home Builders Ass'n, Inc. v. City of Atlanta, GA.,* 149 F. App'x 846, 848 (11th Cir. 2018). An association can also establish standing under the "diversion-of-resources theory" by showing that the defendant's acts forced the organization to divert its resources to respond to these acts. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

This Court previously found that the Association Plaintiffs failed to establish standing for two reasons [Doc. 539, at 20]. First, the Association Plaintiffs failed to establish standing under an associational standing theory because they did not identify an injured constituent. *Id.*; *Nat'l All. For Mentally Ill, St Johns Inc. v. Bd. of Cty. Comm'rs of St. Johns City.*, 376 F.3d 1292, 1296

8

(11th Cir. 2004). Second, the Association Plaintiffs failed to establish standing under the diversion-of-resources theory because their allegations of injury are generic and abstract, rather than concrete and particularized.

In the Proposed Amended Complaint, five of the six Association Plaintiffs sufficiently allege associational standing, including Credit Union National Association, Independent Community Bankers of America, Illinois Credit Union League, New York Credit Union Association, and Virginia Credit Union League. Proposed Am. Compl. ¶¶ 21-30. The Plaintiffs now specifically plead which FI Plaintiff each Association Plaintiff counts as a member. *Id.* Each of the five Association Plaintiffs listed above identifies at least one member as an FI Card Issuer that has suffered harm, satisfying the first *Hunt* prong.

These Association Plaintiffs also satisfy the second *Hunt* prong by alleging that the interests pursued in this litigation are consistent with the Association Plaintiffs' purpose, "supporting initiatives that promote the financial stability of its members." *Id.* The third *Hunt* prong is also satisfied. As the Association Plaintiffs point out, members' participation is not required for the issues on which they seek equitable relief: Equifax's legal duties regarding data security, the adequacy of its current security practices, and whether additional data security measures are needed. *See In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1308 (S.D. Fla. 2003) ("It is well-established

9

that an association may seek equitable relief on behalf of its members without running afoul" of the member participation requirement.).

As to these five Association Plaintiffs, the Court grants the Plaintiffs' Motion for Leave to Amend. Regarding Plaintiff Indiana Credit Union League, the Court denies the Plaintiffs' Motion for Leave to Amend for failure to identify an injured constituent under an associational standing theory and for failure to show a concrete and particularized injury under a diversion-of-resources theory.

### C. O.C.G.A. § 13-6-11 Claim

The Proposed Amended Complaint seeks to clarify that the Plaintiffs' request for reasonable attorneys' fees and the expenses of litigation pursuant to O.C.G.A. § 13-6-11 stands as a separate and well-pleaded claim. *See* Proposed Am. Compl. ¶¶ 364-368. Under O.C.G.A. § 13-6-11, reasonable attorneys' fees and the expenses of litigation may be recovered "where the plaintiff has specifically pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Bad faith refers to "the acts in the transaction itself prior to the litigation," *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002). "It contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will." *City of Atlanta v. First Nat'l Bank of Atlanta*, 246 Ga. 424, 425 n.3 (1980).

10

In the Proposed Amended Complaint, the Plaintiffs allege that Equifax's senior management acted in bad faith by ignoring specific warnings that its systems were vulnerable to attack and by refusing to adopt recommended security measures to adequately protect consumer data. Proposed Am. Compl. ¶ 365. The Plaintiffs further allege that if Equifax had adopted reasonable data security measures rather than knowingly failing to comply with industry standards of care the Data Breach could have been prevented and FI Card Issuers would not have been injured. *Id.* ¶¶ 366-367. These allegations are sufficient to state a claim of bad faith under O.C.G.A. § 13-6-11. Thus, the Court grants the Plaintiffs' Motion for Leave to Amend their O.C.G.A. § 13-6-11 claim to clarify that it is a separate claim for relief.

### IV. Conclusion

For the reasons stated above, the Plaintiffs' Motion for Leave to Amend the Financial Institutions' Consolidated Amended Complaint [Doc. 648] is GRANTED in part and DENIED in part.

SO ORDERED, this 18 day of December, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge