# Exhibit 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br>vs.<br><br>NIBCO, Inc.,<br><br>                         Defendant. | Civil Action No. 13-7871-FLW-TJB<br><br><br><br>**NOTICE OF MOTION FOR *PRO HAC VICE* ADMISSION OF CHRISTOPHER A. BANDAS** |

**PLEASE TAKE NOTICE** that on April 1, 2019 at 9:00 am, or as soon thereafter as counsel may be heard, Objecting Class Member Jeffrey Palmer shall move under Local Civ. R. 101.1(c) for an Order permitting the *pro hac vice* admission of Christopher A. Bandas.

1

**PLEASE TAKE FURTHER NOTICE** that Objecting Class Member Jeffrey Palmer will rely upon the Certifications of Janet Gold and Christopher A. Bandas in support of this motion.

**PLEASE TAKE FURTHER NOTICE** that Class Counsel and Defendant's counsel have not consented to this Motion. No brief is necessary as this Motion does not raise novel or complex issues of law.

A proposed form of Order is attached.

DATED:  February 27, 2019          Respectfully submitted,


/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
jgold @egclawfirm.com

Robert W. Clore
*Pro Hac Vice* Admission Pending
Christopher A. Bandas
*Pro Hac Vice* Admission Pending
Bandas Law Firm, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5200
rBandas@bandaslawfirm.com
cbandas@bandaslawfirm.com

*Counsel for Objecting Class Member Jeffrey Palmer*

**Certificate of Service**

The undersigned certifies that today she filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  February 27, 2019

/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
jgold @egclawfirm.com
*Attorney for Objector/Class Member*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, vs. | **CERTIFICATION OF JANET L. GOLD IN SUPPORT OF *PRO HAC VICE* ADMISSION OF CHRISTOPHER A. BANDAS** |
| NIBCO, Inc., | |
| Defendant. | |

**Janet L. Gold**, of full age, certifies as follows:

1. I am an attorney at law of the State of New Jersey, a member in good standing of the bar of this Court, and a member of the firm Eisenberg, Gold & Agrawal, P.C., co-counsel for Objecting Class Member Jeffrey Palmer in this matter. I have personal knowledge of the facts set forth herein.

1

2. I make this certification in support of Plaintiffs' motion to admit Christopher A. Bandas *pro hac vice* as counsel for Plaintiffs.

3. Christopher A. Bandas is an attorney and the sole shareholder with the firm of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401.

4. Mr. Bandas has advised me that he is a member in good standing of the bars the State Bar of Texas; the Supreme Court of Texas; the United States District Court for the Southern District of Texas; the United States Court of Appeals, District of Columbia Circuit; the United States District Court, Northern District of Texas; the United States District Court, Eastern District of Texas; the United States District Court, Western District of Texas; the United States District Court, Western District of Michigan; the United States Courts of Appeals for the Second Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, Eighth Circuit, Ninth Circuit, Eleventh Circuit, and the United States Supreme Court.

He is not under suspension, nor has he ever been suspended or disbarred from any court. He did disclose to me that in 2013, his *pro hac vice* admission was rescinded in the Western District of Washington when he posted an appeal bond after a court ordered deadline. That matter is closed. *Dennings v. Clearwire Corp.*, No. 2:10-cv-01859, ECF Doc. 165-4 (Aug. 15, 2013) ECF Doc. 166 (W.D. Wash. Aug. 20, 2013). I am also aware that Mr. Bandas, as set forth in his certificate, is

under investigation by the Illinois Attorney & Registration Disciplinary Commission in connection with an allegation of the unauthorized practice of law for failing to move *pro hac vice* in a matter in Illinois.

Mr. Bandas also disclosed to me that he has had trouble in the past in failing to seek *pro hac vice* admission in representation of objecting class members in the past. Mr. Bandas has set forth those matters in his certificate for *pro hac vice* admission which involve. By seeking admission pro hac vice before this Court, Mr. Bandas is seeking to put himself before the Court in connection with his representation of the Objecting Class Member, Jeffrey Palmer. Mr. Bandas is fully familiar with the proposed settlement and request for attorneys' fees by class counsel, and the objection thereto.

5. There is good cause for the *pro hac vice* admission of Mr. Bandas, as he is fully familiar with the proposed settlement and request for attorneys' fees by class counsel, and the objection thereto, and no delay in the conduct of the proceedings would be occasioned by him acting as attorney for Objecting Class Member Jeffrey Palmer in this matter.

6. Pursuant to Local Civil Rule 101.1(c)(4), my firm will appear in this action, including all court appearances on behalf of Objecting Class Member Jeffrey Palmer and agree to accept service of all notices, orders, and pleadings in this action. I or an attorney from my firm will sign and file all pleadings, enter all

appearances, sign all stipulations, and other such documents in this matter. I agree to be responsible for the conduct of the above-named counsel should he be admitted *pro hac vice*.

DATED:  February 27, 2019                    Respectfully submitted,


                                             /s/ *Janet L. Gold, Esquire*
                                             Janet L. Gold, Esquire

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | **CERTIFICATION OF CHRISTOPHER A. BANDAS IN SUPPORT OF *PRO HAC VICE* ADMISSION** |
| NIBCO, Inc., | |
| Defendant. | |

**Christopher A. Bandas**, of full age, certifies as follows:

1. I am an attorney and the sole shareholder of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401, co-counsel for Objecting Class Member Jeffrey Palmer in the captioned matter. I make this certification on my personal knowledge in support of Objecting Class Member Jeffrey Palmer's application to have me admitted *pro hac vice* in the

captioned matter. I am fully familiar with the proposed settlement, request for class counsels' attorneys' fees, and Mr. Palmer's objections thereto.

2. I a member in good standing of the bars of the State Bar of Texas (admitted 1993); the Supreme Court of Texas (admitted 1993); the United States District Court for the Southern District of Texas (admitted 2013); the United States Court of Appeals, District of Columbia Circuit (admitted 2008); the United States District Court, Northern District of Texas (admitted 1998); the United States District Court, Eastern District of Texas (admitted 2001); the United States District Court, Western District of Texas (admitted 2005); the United States District Court, Western District of Michigan (admitted 2007); the United States Courts of Appeals for the Second Circuit (admitted 2016; inactive), Third Circuit (admitted 2008), Fourth Circuit (admitted 2018), Fifth Circuit (admitted 1995), Sixth Circuit (admitted 2017), Seventh Circuit (admitted 2011), Eighth Circuit (admitted 2012), Ninth Circuit (admitted 2006), Eleventh Circuit (admitted 2012), and the United States Supreme Court (admitted 2006).

The names and addresses of the offices maintaining the rolls of members of the bar in these jurisdictions are as follows:

State Bar of Texas
Membership Department
P.O. Box 12487
Austin, Texas 78711

The Texas Supreme Court

Clerk's Office
P.O. Box 12248, Austin, Texas 78711

The United States District Court for the Northern District of Texas
Clerk's Office
1100 Commerce Street, Room 1452
Dallas, TX 75242

The United States District Court for the Eastern District of Texas
Clerk's Office
William M. Steger Federal Building and United States Courthouse
211 West Ferguson Street Room 106
Tyler, Texas 75702

The United States District Court for the Western District of Texas
Clerk's Office
655 E. Cesar E. Chavez Blvd., Room G65
San Antonio, Texas 78206

The United States District Court for the Western District of Michigan
Thomas L. Dorwin, Clerk of Court
399 Federal Building
110 Michigan NW
Grand Rapids,  Mich.   49503

The United States Court of Appeals for the District of Columbia Circuit
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, N.W.
Room 5205
Washington, DC 20001

United States District Court for the Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002

United States Court of Appeals for the Second Circuit
Clerk's Office
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

United States Court of Appeals for the Third Circuit
Clerk's Office
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

United States Court of Appeals for the Fourth Circuit
Clerk's Office
1100 East Main Street, Suite 501
Richmond, Virginia 23219

United States Court of Appeals for the Fifth Circuit
Clerk's Office
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

United States Court of Appeals for the Sixth Circuit
Clerk's Office
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

United States Court of Appeals for the Seventh Circuit
Clerk's Office
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

United States Court of Appeals for the Eighth Circuit
Clerk's Office
Thomas F. Eagleton Courthouse
Room 24.329
111 South 10th Street
St. Louis, MO 63102

United States Court of Appeals for the Ninth Circuit Court
Clerk's Office

P.O. Box 193939
San Francisco, CA 94119-3939

United States Court of Appeals for the Eleventh Circuit Court
John Ley, Clerk of Court
56 Forsyth St., N.W.
Atlanta, Georgia 30303

United States Supreme Court
Clerk's Office
1 First Street, NE
Washington, DC 20543

3. I am not under suspension, nor have I ever been suspended or disbarred from any court. However, my *pro hac vice* admission was rescinded in the Western District of Washington when I posted an appeal bond after a court ordered deadline. That matter is closed. *Dennings v. Clearwire Corp.*, No. 2:10-cv-01859, ECF Doc. 165-4 (Aug. 15, 2013) ECF Doc. 166 (W.D. Wash. Aug. 20, 2013). There is one disciplinary proceeding pending against me in Illinois before the Illinois Attorney Registration & Disciplinary Commission.

A complaint was previously filed with the Illinois Attorney Registration & Disciplinary Commission arising from *Clark v. Gannett Co., Inc*., No. 2016-CH-06603 (Cir. Ct. Cook Cnty, Ill. Jul. 19, 2017) in connection with an allegation of unauthorized practice of law in Illinois based on representation of a class member without moving for *pro hac vice* admission. After investigating the matter, the Illinois ARDC initially took no action. The First District Court of Appeals on November 20, 2018, issued an opinion, referring the matter again to the ARDC,

and that matter is currently pending. I do not know the likely time of the disposition of that investigation.

Additionally, in *Edelson PC v. The Bandas Law Firm PC*, No. 16-cv-11057, ECF Doc. 178 (N.D. Ill. Jan. 17, 2019), which also stemmed from the *Clark v. Gannett* litigation listed above, the Court addressed a complaint about the unauthorized practice of law in Illinois, and entered an injunction requiring me, *inter alia*, to obtain *pro hac vice* admission in connection with objections, and to further attach a copy of the order to any such application. Consistent with newly amended FED. R. CIV. P 23, the order also requires that any objection filed by me "state[] whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state[] with specificity the grounds for the objection" and that "[a]ny payment in connection with the objection is disclosed and approved by the court and, unless approved by the court after a hearing, no payment or other consideration is provided in connection with forgoing or withdrawing the objection or forgoing dismissing, or abandoning an appeal from a judgment approving the proposal." *Id*. at 2. My *pro hac vice* application is thus filed with the intent of honoring this order to appear before the Court in any proceeding in which I represent an objecting class member.

In *Garber v. Office of the Comm'r of Baseball*, 12-CV-03704, Doc. 608, at 2, 8-12 (S.D.N.Y. Feb. 27, 2017), the Court admonished me in connection with my

representation of an objecting class member, and expressed concern over my failure to appear before the Court. The Court declined to enter sanctions against me, but required that I provide a copy of the order to any attorney who serves as local counsel for a class member that I represent in the Southern District of New York. Again, by my request for *pro hac vice* admission, I seek to put myself before the Court in connection with my representation of the objecting class member, Jeffrey Palmer.

4. I am conversant with the local civil rules of the United States District Court for the District of New Jersey, and will abide by those rules.

5. Upon entry of the requested order, payment in the appropriate amount will be forwarded to the New Jersey Lawyers' Fund For Client Protection as provided by New Jersey Court Rule 1:28-2(a).

6. In accordance with Local Civil Rule 101.1(c)(3), upon entry of the requested order, payment in the amount of $150.00 will be forwarded to the Clerk, United States District Court.

7. I understand that in accordance with Local Civil Rule 101.1(c)(5), a lawyer admitted *pro hac vice* is within the disciplinary jurisdiction of this Court. I agree to comply with the requirements of Local Civil Rule 101.1(c). I agree to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees.

8. The firm of Eisenberg, Gold & Agrawal, P.C. of Cherry Hill, New Jersey has agreed to work with my firm in the litigation of this action.

9. I respectfully request that this court grant Objecting Class Member Jeffrey Palmer's application to have me admitted *pro hac vice* for all purposes in this action, including appearance at the fairness hearing. Class counsel and Counsel for Defendant have advised that they oppose admission of our co-counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED:  February 27, 2019                    Respectfully submitted,

Christopher A. Bandas

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

EDELSON PC,

              *Plaintiff*,

    *v.*

THE BANDAS LAW FIRM PC, et al

              *Defendants*.

Case No. 1:16-cv-11057

**FINAL JUDGMENT ORDER**

IT IS HEREBY ADJUDGED and DECREED that final judgment is entered in this matter on Count V of Plaintiff Edelson PC's complaint in favor of Plaintiff and against Christopher Bandas and the Bandas Law Firm PC ("Defendants").

**I.    REASONS FOR ISSUANCE OF INJUNCTION**

Defendants do not dispute that that they engaged in the unauthorized practice of law in *Clark v. Gannett Co., Inc.* Defendants further do not dispute that they engaged in the following conduct without obtaining authorization from the Illinois Supreme Court to practice law in Illinois: agreeing to represent Gary Stewart in the *Gannett* litigation, drafting the objection of Stewart in *Gannett*, providing legal advice to Stewart related to *Gannett*, contacting and arranging for C. Jeffrey Thut to appear in Defendants' stead in *Gannett*, allowing C. Jeffrey Thut to assist Defendants in the unauthorized practice of law, representing Stewart in discussions with class counsel regarding Stewart's objection, entering into negotiations with class counsel in *Gannett* on behalf of Stewart, and agreeing to resolve Stewart's objection in exchange for $225,000 in

attorneys' fees with no changes to the settlement agreement. Accordingly, the Court finds that issuance of a permanent injunction against Defendants is appropriate.

## II.    ACTS RESTRAINED OR REQUIRED

Defendants The Bandas Law Firm, P.C. and Christopher A. Bandas are hereby restrained and permanently enjoined from engaging in the following actions:

1.    Providing any advice or other service requiring the use of any degree of legal skill or knowledge related to any state or federal court proceedings in the State of Illinois, regardless of whether Defendants or their clients are physically located within the State of Illinois, without obtaining admission to the bar of Illinois or leave to appear *pro hac vice* from the court before which the proceeding is pending. The restrained advice and services include but are not limited to providing legal advice, acting as general counsel, drafting documents, negotiating, or accepting payment of attorneys' fees.

2.    Soliciting attorneys located in the State of Illinois to sign pleadings or other documents drafted by Defendants in a case where Defendants do not appear;

3.    Paying, or offering to pay, or to loan any client any monies in connection with any class action objection unless such payment is awarded or expressly approved by a court;

4.    Seeking admission, *pro hac vice* or otherwise, to practice in any state or federal court without fully and truthfully responding to all questions on the application and without attaching a copy of this judgment;

5.    Defendants shall not file or cause to be filed any objection to any proposed class action settlement in any state or federal court unless:

2

a. Such objection states whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also states with specificity the grounds for the objection; and

b. Any payment in connection with the objection is disclosed and approved by the court and, unless approved by the court after a hearing, no payment or other consideration is provided in connection with forgoing or withdrawing the objection or forgoing dismissing, or abandoning an appeal from a judgment approving the proposal;

6. Defendants, having consulted with their clients, shall immediately and unconditionally withdraw objections and filings related thereto any and all objections now pending in Illinois state and federal courts, including *Clark v. Gannett Co., Inc.* Defendants shall have no further direct or indirect involvement in those matters, and Defendants shall accept no compensation of any kind related to those matters.

### III. CONTINUING JURISDICTION

Without affecting the finality of this judgment, the Court retains jurisdiction to enforce the injunction set forth herein.

### IV. COSTS

Defendants shall pay Plaintiff's costs in the amount of $5,447.65.

### V. NO JUST REASON FOR DELAY

The Court finds pursuant to Rule 54(b) that is no just reason for delay of entry of this judgment.

3

**IT IS SO ORDERED.**

REBECCA R. PALLMEYER
United States District Judge

JUDGMENT ENTERED: _January 17, 2019_

_____
CLERK, U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

4

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | [PROPOSED] ORDER FOR *PRO HAC VICE* ADMISSION OF CHRISTOPHER A. BANDAS |
| NIBCO, Inc., | |
| Defendant. | |

This matter having been presented to the Court by Janet L. Gold, Eisenberg, Gold & Agrawal, P.C for the entry of an Order allowing the appearance *pro hac vice* of Christopher A. Bandas for all purposes in the above captioned matter, and the Court having reviewed the Certifications of Janet L. Gold and Christopher A. Bandas and it appearing that Christopher A. Bandas is an attorney and the sole shareholder of the firm of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401; and that Janet L. Gold, Eisenberg,

1

Gold & Agrawal, P.C. has agreed to act as local counsel; and for good cause having been shown;

**IT IS** on this _____ day of , 2019

**ORDERED**, that Christopher A. Bandas is hereby admitted *pro hac vice* for all purposes of representing Plaintiffs in the above entitled action, and it is

**FURTHER ORDERED** that, pursuant to Local Rule 101.1(c) Christopher A. Bandas shall make a payment to the New Jersey Lawyer's Fund for Client Protection as provided by New Jersey Court Rule 1:28-2(a) if they have not already made contributions,

**FURTHER ORDERED** that pursuant to Local Rule 101.1(c)(3), Christopher A. Bandas shall make a payment of $150.00, payable to the Clerk, United States District Court,

**FURTHER ORDERED** that Christopher A. Bandas shall be bound by the General and Admiralty Rules of the United States District Court for the District of New Jersey, including but not limited to the provisions of Local Rule 103.1, Judicial Ethics and Professional Responsibility, and the Local Rule 104.1, Discipline of Attorneys; and it is

**FURTHER ORDERED** that pursuant to Local Rule 101.1(c), Christopher A. Bandas shall be deemed to have agreed to take no fee in any tort case in excess of the New Jersey Court Contingency Fee Rule, Rule 1:27-7, as amended.

SO ORDERED:

_____
Honorable            , U.S.M.J.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
|               Plaintiffs, | **NOTICE OF MOTION FOR *PRO HAC VICE* ADMISSION OF ROBERT W. CLORE** |
| vs. | |
| NIBCO, Inc., | |
|               Defendant. | |

**PLEASE TAKE NOTICE** that on April 1, 2019 at 9:00 am, or as soon thereafter as counsel may be heard, Objecting Class Member Jeffrey Palmer shall move under Local Civ. R. 101.1(c) for an Order permitting the *pro hac vice* admission of Robert W. Clore.

**PLEASE TAKE FURTHER NOTICE** that Objecting Class Member Jeffrey Palmer will rely upon the Certifications of Janet Gold and Robert W. Clore in support of this motion.

1

**PLEASE TAKE FURTHER NOTICE** that Class Counsel and Defendant's counsel have not consented to this Motion. No brief is necessary as this Motion does not raise novel or complex issues of law.

A proposed form of Order is attached.

DATED:  February 27, 2019          Respectfully submitted,


                                   /s/ *Janet L. Gold, Esquire*
                                   Janet L. Gold, Esquire
                                   Eisenberg, Gold & Agrawal, P.C.
                                   1040 North Kings Highway, Suite 200
                                   Cherry Hill, New Jersey 08034
                                   Tel: (856) 330-6200
                                   Fax: (856) 330-6207
                                   jgold @egclawfirm.com

                                   Robert W. Clore
                                   *Pro Hac Vice* Admission Pending
                                   Christopher A. Bandas
                                   *Pro Hac Vice* Admission Pending
                                   Bandas Law Firm, P.C.
                                   500 North Shoreline, Suite 1020
                                   Corpus Christi, TX 78401
                                   Tel: (361) 698–5200
                                   Fax: (361) 698-5200
                                   rclore@bandaslawfirm.com
                                   cbandas@bandaslawfirm.com

                   *Counsel for Objecting Class Member Jeffrey Palmer*

## Certificate of Service

The undersigned certifies that today she filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  February 27, 2019

/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
jgold @egclawfirm.com
*Attorney for Objector/Class Member*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | **CERTIFICATION OF JANET L. GOLD IN SUPPORT OF *PRO HAC VICE* ADMISSION OF ROBERT W. CLORE** |
| vs. | |
| NIBCO, Inc., | |
| Defendant. | |

**Janet L. Gold**, of full age, certifies as follows:

1. I am an attorney at law of the State of New Jersey, a member in good standing of the bar of this Court, and a member of the firm Eisenberg, Gold & Agrawal, P.C., co-counsel for Objecting Class Member Jeffrey Palmer in this matter. I have personal knowledge of the facts set forth herein.

2. I make this certification in support of Plaintiffs' motion to admit Robert W. Clore *pro hac vice* as counsel for Plaintiffs.

3. Robert W. Clore is Senior Appellate Counsel with the firm of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401.

4. Mr. Clore has advised me that he is a member in good standing of the bars of the State Bar of Texas; the Texas Supreme Court; the Supreme Court of Texas; the United States District Court for the Southern District of Texas; the United States District Court for the Northern District of Illinois; the United States Courts of Appeals for the Second Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, Eighth Circuit, Ninth Circuit, Tenth Circuit, Eleventh Circuit, and the United States Supreme Court. He is not under suspension, nor has he ever been suspended or disbarred from any court. Mr. Clore is fully familiar with the proposed settlement and request for attorneys' fees by class counsel, and the objection thereto.

5. There is good cause for the *pro hac vice* admission of Mr. Clore, as he is fully familiar with the proposed settlement and request for attorneys' fees by class counsel, and the objection thereto, and no delay in the conduct of the proceedings would be occasioned by him acting as attorney for Objecting Class Member Jeffrey Palmer in this matter.

6. Pursuant to Local Civil Rule 101.1(c)(4), my firm will appear in this action, including all court appearances on behalf of Objecting Class Member

Jeffrey Palmer and agree to accept service of all notices, orders, and pleadings in this action. I or an attorney from my firm will sign and file all pleadings, enter all appearances, sign all stipulations, and other such documents in this matter. I agree to be responsible for the conduct of the above-named counsel should he be admitted *pro hac vice*.


DATED:  February 27, 2019                Respectfully submitted,


/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | **CERTIFICATION OF ROBERT W. CLORE IN SUPPORT OF *PRO HAC VICE* ADMISSION** |
| NIBCO, Inc., | |
| Defendant. | |

**Robert W. Clore**, of full age, certifies as follows:

1. I am Senior Appellate Counsel with the firm of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401, co-counsel for Objecting Class Member Jeffrey Palmer in the captioned matter. I make this certification on my personal knowledge in support of Objecting Class Member Jeffrey Palmer's application to have me admitted *pro hac vice* in the

captioned matter. I am fully familiar with the proposed settlement, request for class counsels' attorneys' fees, and Mr. Palmer's objections thereto.

2. I a member in good standing of the bars of the State Bar of Texas (admitted 1999); the Supreme Court of Texas (admitted 1999); the United States District Court for the Southern District of Texas (admitted 2013); the United States District Court for the Northern District of Illinois (admitted 2017); the United States Courts of Appeals for the Second Circuit (admitted 2016), Third Circuit (admitted 2016), Fourth Circuit (admitted 2018), Fifth Circuit (admitted 2015), Sixth Circuit (admitted 2017), Seventh Circuit (admitted 2016), Eighth Circuit (admitted 2016), Ninth Circuit (admitted 2016), Tenth Circuit (admitted 2018), Eleventh Circuit (admitted 2018), and the United States Supreme Court (admitted 2017).

The names and addresses of the offices maintaining the rolls of members of the bar in these jurisdictions are as follows:

State Bar of Texas
Membership Department
P.O. Box 12487
Austin, Texas 78711

The Texas Supreme Court
Clerk's Office
P.O. Box 12248, Austin, Texas 78711

United States District Court for the Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002

United States District Court for the Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
Clerk, United States District Court
219 S. Dearborn Street
Chicago, Illinois 60604

United States Court of Appeals for the Second Circuit
Clerk's Office
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

United States Court of Appeals for the Third Circuit
Clerk's Office
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

United States Court of Appeals for the Fourth Circuit
Clerk's Office
1100 East Main Street, Suite 501
Richmond, Virginia 23219

United States Court of Appeals for the Fifth Circuit
Clerk's Office
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

United States Court of Appeals for the Sixth Circuit
Clerk's Office
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

United States Court of Appeals for the Seventh Circuit

Clerk's Office
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

United States Court of Appeals for the Eighth Circuit
Clerk's Office
Thomas F. Eagleton Courthouse
Room 24.329
111 South 10th Street
St. Louis, MO 63102

United States Court of Appeals for the Ninth Circuit Court
Clerk's Office
P.O. Box 193939
San Francisco, CA 94119-3939

United States Court of Appeals for the Tenth Circuit Court
Clerk's Office
Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257-1823

United States Court of Appeals for the Eleventh Circuit Court
John Ley, Clerk of Court
56 Forsyth St., N.W.
Atlanta, Georgia 30303

United States Supreme Court
Clerk's Office
1 First Street, NE
Washington, DC 20543


3. I am not under suspension, nor have I ever been suspended or disbarred

from any court. No disciplinary proceedings are pending against me, and no

discipline has previously been imposed upon me in any jurisdiction.

4

4. I am conversant with the local civil rules of the United States District Court for the District of New Jersey, and will abide by those rules.

5. Upon entry of the requested order, payment in the appropriate amount will be forwarded to the New Jersey Lawyers' Fund For Client Protection as provided by New Jersey Court Rule 1:28-2(a).

6. In accordance with Local Civil Rule 101.1(c)(3), upon entry of the requested order, payment in the amount of $150.00 will be forwarded to the Clerk, United States District Court.

7. I understand that in accordance with Local Civil Rule 101.1(c)(5), a lawyer admitted *pro hac vice* is within the disciplinary jurisdiction of this Court. I agree to comply with the requirements of Local Civil Rule 101.1(c). I agree to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees.

8. The firm of Eisenberg, Gold & Agrawal, P.C. of Cherry Hill, New Jersey has agreed to work with my firm in the litigation of this action.

9. I respectfully request that this court grant Objecting Class Member Jeffrey Palmer's application to have me admitted *pro hac vice* for all purposes in this action, including appearance at the fairness hearing. Class counsel and Counsel for Defendant have advised that they oppose admission of our co-counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED:  February 27, 2019          Respectfully submitted,


Robert W. Clore

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | [PROPOSED] ORDER FOR *PRO HAC VICE* ADMISSION OF ROBERT W. CLORE |
| NIBCO, Inc., | |
| Defendant. | |

This matter having been presented to the Court by Janet L. Gold, Eisenberg, Gold & Agrawal, P.C for the entry of an Order allowing the appearance *pro hac vice* of Robert W. Clore for all purposes in the above captioned matter, and the Court having reviewed the Certifications of Janet L. Gold and Robert W. Clore and it appearing that Robert W. Clore is Senior Appellate Counsel with the firm of Bandas Law Firm, PC, located at 500 North Shoreline Blvd., Suite 1020, Corpus

Christi, Texas 78401; and that Janet L. Gold, Eisenberg, Gold & Agrawal, P.C. has agreed to act as local counsel; and for good cause having been shown;

**IT IS** on this _____ day of , 2019

**ORDERED**, that Robert W. Clore is hereby admitted *pro hac vice* for all purposes of representing Plaintiffs in the above entitled action, and it is

**FURTHER ORDERED** that, pursuant to Local Rule 101.1(c) Robert W. Clore shall make a payment to the New Jersey Lawyer's Fund for Client Protection as provided by New Jersey Court Rule 1:28-2(a) if they have not already made contributions,

**FURTHER ORDERED** that pursuant to Local Rule 101.1(c)(3), Robert W. Clore shall make a payment of $150.00, payable to the Clerk, United States District Court,

**FURTHER ORDERED** that Robert W. Clore shall be bound by the General and Admiralty Rules of the United States District Court for the District of New Jersey, including but not limited to the provisions of Local Rule 103.1, Judicial Ethics and Professional Responsibility, and the Local Rule 104.1, Discipline of Attorneys; and it is

**FURTHER ORDERED** that pursuant to Local Rule 101.1(c), Robert W. Clore shall be deemed to have agreed to take no fee in any tort case in excess of the New Jersey Court Contingency Fee Rule, Rule 1:27-7, as amended.

Case 1:17-md-02800-TWT  Document 976-2  Filed 02/04/20  Page 38 of 246

SO ORDERED:

_____
Honorable _____, U.S.M.J.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | |
| NIBCO, Inc., | |
| Defendant. | |

# OBJECTION OF CLASS MEMBER JEFFREY PALMER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STANDING AND PROCEDURES TO OBJECTION ........................................................4

OBJECTIONS .................................................................................................11

I.     This Claims-Made, Reversionary Settlement Is Likely to Pay Class Counsel
       More than the Class and Delays Most Class Recovery More than Six Years ........11

II.    The Claims Process Appears Structured to Limit Class Payout. ...........................15

III.   More Information Is Needed on the Number of Class Members and the
       Value of their Claims, Not to Mention the Results of the Claims Process. ...........17

IV.    Any Fee Award Should Be Deferred Pending the Results (or at Least
       Estimated Results) of the Claims Process; Regardless, 75% of Fees Should
       Be Withheld as With Class Recovery. ...............................................................20

V.     Class Counsels' Lodestar Submission Is Grossly Inadequate. ..............................21

VI.    Any Award under the Percentage Method Should Take Into Account Actual
       Class Recovery. .............................................................................................27

CONCLUSION ...............................................................................................30

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001) ....................................................25, 26

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 993 (9th Cir. 2010)......................10

*City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449
    (1992) ........................................................................................................26

*Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546 (D.N.J.2010) ....................................22

*Dungee v. Davison Design & Dev. Inc*, 674 F. App'x 153 (3d Cir. 2017)........................26

*Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) ......................................................16

*Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622 (E.D. Pa. 1986) ..............................28

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975)............................................................11, 19

*Glover v. Ferrero USA, Inc.*, No. CV 11-1086 (FLW), 2012 WL 12996302
    (D.N.J. Sept. 18, 2012) (Wolfson, J.) ..............................................................22, 24

*Gray v. BMW of N. Am., LLC*, No. 13-CV-3417 (WJM), 2017 WL 3638771
    (D.N.J. Aug. 24, 2017)...................................................................................1, 22

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir.2000)...................................27

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ..............................*passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55
    F.3d 768 (3d Cir. 1995)..................................................................................11

*In re Johnson & Johnson Derivative Litig.*, No. 10-2033(FLW), 2013 WL
    11228425 (D.N.J. June 13, 2013), *adopted,* No. CIV.A. 10-2033 FLW,
    2013 WL 6163858 (D.N.J. Nov. 25, 2013) (Wolfson, J.).....................................23

*In re Prudential Insurance Co. America Sales Practice Litigation,* 148 F.3d
    283 (3d Cir.1998)...........................................................................................27

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) .........................................29

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del.2002)............................27

*Interfaith Cmty. Org. v. Honeywell Int'l. Inc.*, 426 F.3d 694 (3d Cir. 2005) ....................22

*Jabbari v. Wells Fargo & Co*., No. 15-02159-VC, Dkt. 271 at 13 (N.D. Cal. Jun. 14, 2018) .........................................................................................................21

*Jacobson v. Persolve, LLC*, 14-CV-00735-LHK, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) ............................................................................................10

*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) (Alsup, J.) .....................................................................................................14

*Lachance v. Harrington*, 965 F. Supp. 630 (E.D. Pa. 1997) ............................................23

*McLennan v. LG Elecs. USA, Inc.*, No. 2:10-CV-03604 WJM, 2012 WL 686020, at *10 (D.N.J. Mar. 2, 2012)............................................................22

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (3d Cir. 2004) .......................................11

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ...............................................12, 14

*Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595 (M.D. Pa. 1996)...............2, 26

*Public. Int. Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179 (3d Cir. 1995); ........................................................................................................22

*Rooker v. Gen. Mills Operations, LLC*, No. CV 17-467 PA (PLAX), 2018 WL 4962089 (C.D. Cal. Mar. 26, 2018) ...................................................13

*Rougvie, et al. v. Ascena Retail Group, Inc. et al*., No. 2:15-cv-00724, Dkt. 185 at 2-3 (E.D. Pa. Jul. 29, 2016) ........................................................21

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016)....................................................................................................25

*Sullivan v. DB Invs., Inc*., 667 F.3d 273 (3d Cir. 2011) ..................................................29

*True v. American Honda Motor Co.* (C.D. Cal. 2010)749 F. Supp. 2d. 1052, 1079..............................................................................................................10

*Vines v. Covelli Enterprises*, No. CIV.A. 12-0028, 2012 WL 5992114 (W.D. Pa. Nov. 30, 2012) .................................................................................12

*Wallace v. Powell*, 301 F.R.D. 144 (M.D. Pa. 2014) ....................................................27

*Yedlowski v. Roka Bioscience, Inc*., No. 14-CV-8020-FLW-TJB, 2016 WL
    6661336, at (D.N.J. Nov. 10, 2016) ...........................................................29

## Rules

FED. R. CIV. P. 23 ................................................................................*passim*

FED. R. CIV. P. 23 (cmts. to 2018 amendments) ........................................... 15, 18, 19, 21

## Other Authorities

Claims-Made Class Action Settlements, 99 JUDICATURE 81 (Winter 2015)................13

Sarah Gohmann Bigelow, *Reconsidering Reverters: The Benefits of
    Reversionary Funds in Class-Action Settlements*, Blog: Duty and The
    Breach, Savitt Bruce & Willey, LLP .......................................................13

## PRELIMINARY STATEMENT

Class counsel hold this out as a $43.5 million common fund settlement (Dkt. 179-1 at 1), but it is really a reversionary claims-made settlement likely to net class counsel more ($13 million in fees plus $1 million costs)[1] than the entire class. *See Gray v. BMW of N. Am., LLC*, No. 13-CV-3417 (WJM), 2017 WL 3638771, at *5 (D.N.J. Aug. 24, 2017).[2] The settlement requires NIBCO to place $22.5 million in escrow to cover attorneys' fees, claims, and expenses, and to maintain a $3 million balance throughout the claims period. Dkt. 173-1 at 17-18. It caps payout at $43.5 million, provides no equivalent settlement floor, and then returns any unclaimed funds to NIBCO. Dkt. 173-1 at 17-18.[3] That means, after deducting $13 million in proposed fees, $1.2 million in out-of-pocket expenses, and $850,000 in notice and

---

[1] NIBCO and class counsel agreed that fees would be 29.885% of the Gross Settlement Fund, which is $12,999,975. Dkt. 173-1 at 46; Dkt. 180 at 14. The objection will round up the $25 and refer to fees throughout as $13 million.

[2] "Plaintiffs … mischaracterized the relief obtained by Class Counsel as a 'common fund'" where "[n]o specific monetary figure has been set aside to provide relief to the class; rather, the Settlement Agreement permits class members to make individual claims in order to obtain relief." *Gray*, 2017 WL 3638771, at *5.

[3] "End of Claims Period. Following the close of the Claim Period and after all timely Claims have been determined and paid as set forth herein, including any gross-up for all Eligible Class Members as set forth in Paragraphs 9.a, 9.b, and 9.c, any remaining funds in the Gross Settlement Fund but not paid into the Settlement Escrow Account shall remain with NIBCO and any funds remaining in the Settlement Escrow account but not allocated to an Eligible Claimant will be returned to NIBCO as all Eligible Claimants will have received their complete remedy under this Agreement."

administration costs (Dkt. 173-3 at 15), the class could get theoretically nothing while NIBCO takes back $7.4 million. Dkt. 173-1 at 27.

Of course, some class members will file claims. But empirical data shows most won't. *See Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 607 (M.D. Pa. 1996) (noting "'statistical certainty' that only a fraction of class members would submit verifiable claims"). It is absolutely crucial for the Court to evaluate the claims process before approving the settlement and awarding any fees. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013) (vacating order approving settlement and fund allocation plan where court "did not know the amount of compensation that will be distributed directly to the class"). If there is any chance class counsel will take more than the class members, then the settlement should be rejected out of hand.

The parties didn't leave NIBCO's limited payout to chance. The settlement includes a reversionary provision with a claims process likely to restrict claims paid. Dkt. 173-1 at 27. Class members must complete a twelve page claim form that repeatedly references deadlines based on the "Effective Date" which is not defined in the form. Dkt. 173-1 at Ex. 1.[4] In a footnote, the claim form tells them to consult the fifty-five page settlement agreement to look up undefined terms. *Id.* at 1 n.1. Additionally, the form gives a litany of items to substantiate a Covered

---

[4] http://www.pexsystemsettlement.com/pdf/NIBCO_Claim_Form_FINAL.pdf (last visited Feb. 25, 2019).

Product, including an inspection report, bills of sale or purchase orders, builder or plumbing records, correspondence identifying tubing, fittings, and/or clamps, a report from a plumber, engineer, architect or home inspector, a builder, plumber or contractor letter stating upon personal knowledge that tubing, fittings, and/or clamps were used, photographs, and other documentation. *Id.* at 6. But the claim form leaves out any discussion of attaching items to establish Reasonably Proven Property Damage for past damages. Presumably, class members must consult the settlement agreement for that as well.

If a class member successfully submits a claim form, NIBCO has the right "at any time" to request the settlement administrator conduct further review of the claim. Dkt. 173-1 at 25. The settlement also allows NIBCO and class counsel to agree to rejection of a claim, ostensibly without input from the settlement administrator. Dkt. 173-1 at 25-26. Further, if a class member wishes to appeal a rejected claim on the issue of whether there was a Qualifying Leak, he or she must appeal to an "independent" engineering consultant who is paid by NIBCO separate and apart from the settlement fund. Dkt. 173-1 at 26-27. That is, the class members' rejected claims are reviewed by a consultant beholden to NIBCO.

Of course, there is the question of why class members would go to the trouble of filing claims in the first place when the notice discloses that they won't get 75% of their payment until the end of the Claims Period, which is **six years**

after the Effective Date. Class Long Form Notice at 6; & Dkt. 173-1 at 5. The justification for drawing out payment is to ensure sufficient funds to pay claims. Dkt. 173-1, Ex. 2 at 6.[5] If that's the case, 75% of class counsels' fees should also be deferred to ensure the fund isn't depleted.

The 2018 amendments to Federal Rule of Civil Procedure 23(e) specifically require the court, in determining whether the relief provided for the class is adequate, to "tak[e] into account: … the effectiveness of any proposed effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(ii),(iii) (eff. Dec 1, 2018). These considerations call for rejection of the proposed settlement.

Further, any fee permitted should be far below $13 million, and in reasonable proportion to actual class recovery. To the extent lodestar is considered, class counsels' broad submission without hourly breakdown as to how they incurred their time will not support anything close to $13 million.

## STANDING AND PROCEDURES TO OBJECTION

Objector's full name, address, telephone number, and date of birth are as

---

[5] "In order to ensure that the Net Settlement Fund is not depleted during the Claim Period, the Eligible Claimants shall receive an initial payment of 25%, and at the end of the Claim Period, the Eligible Claimants shall receive a second *pro rata* payment."

follows: Jeffrey Paul Palmer; 700 West Walnut Street, Nocona, Texas 76255; (940) 232-1017; November 15, 1964.

Objector owns a residential structure in the United States containing plumbing systems that in 2014 contained NIBCO's Tubing, Fittings, and/or Clamps as defined by the Class Notice. Exhibit 1, Declaration of Jeffrey Palmer, incorporated by reference as though set forth in full. The residential structure is at 102 Northcott Street, Nocona, Texas 76255, and contained NIBCO Tubing, Fittings, and/or Clamps as defined by the Class Notice. *Id.* at 1. These would have been installed in June, 2014 to the best of Objector's recollection. *Id.* Objector is therefore a member of the class as defined by the Class Notice.

Objector completed a claim form, along with attachments, and timely forwarded it to the settlement administrator by email as instructed in the class notice. Attached hereto as Exhibit 1-A is a true and correct copy of the completed claim form and attachments. Attached hereto as Exhibit 1-B, is a true and correct copy of the email.

In support of the objection, Objector relies on the documents attached to his claim form to show that the structure at 102 Northcott, which he owns, contains a Covered Product as defined in the Class Notice. These documents, again attached hereto as Exhibit 1-A, include a contractor letter from Mr. Palmer stating upon personal knowledge that Fittings as defined in the class notice were used in the

property. The documents attached also include a true and correct copy of a receipt from Nocona Building Center, which includes the purchase of some PEX Tubing and Fittings. *Id*. Objector is not certain if this is the receipt for the fittings that leaked, but it was the only one from that time period he has been able to locate. Ex. 1. The documents attached also include a true and correct copy of an invoice from Classic Construction & Remodeling from October 18, 2014, which documents the expense incurred for the damage caused from the leak. Ex. 1-A.

As noted in Objector's declaration and the letter attached to the claim form, Objector is a general contractor, and has considerable experience in performing construction jobs on homes, including installation and repair of plumbing. Ex. 1 at 2. From 1993 until 2004, he was a general contractor in San Diego and Sacramento, California. *Id*. Part of his overall work as a contractor included installing and repairing plumbing. *Id*. Having spent over 10 years as a contractor working with insurance companies with water damage claims, Objector learned to make note of what causes leaks in a water damage situation. *Id*. He has also worked as an adjuster in catastrophe claims. *Id*.

Additionally, he has worked as a contractor in Nocona, Texas from 2004 until present, which also includes plumbing work. *Id*. In 2014 and 2015, he was a general contractor and operated under the business name, Classic Construction & Remodeling in Nocona, Texas. *Id*. He no longer operates under that business name.

*Id.* at 2-3.

In early 2014, Objector purchased a home at 102 Northcott Street, Nocona, Texas 76255 as a rental property. *Id*. at 3. After purchasing the home, he purchased NIBCO Pex Tubing and yellow brass Fittings for installation in the third bathroom of the house. *Id.* Objector specifically recalls the yellow brass Fittings with the word NIBCO stamped on them, and used them at the joints in the PEX tubing. *Id.* He does not recall the fittings stamped with interlocking ovals or stamped DR as depicted on the settlement website. *Id.*

In October 2014, a few months after putting in the plumbing, Objector learned there had been a leak in the bathroom where the NIBCO tubing and fittings were installed. *Id.* He is not certain exactly when the leak occurred because he was renting out the property to a tenant. *Id*. The leak damaged the drywall and water ran under the vanity, damaging the flooring and the vanity cabinet. *Id.* There was also a leak in the wall where the shower valve was installed, which damaged the drywall and allowed mold to grow in the wall. *Id*. The shower had to be replaced in order to repair the damage. *Id.* Objector recalls seeing the leaking yellow brass fittings with the NIBCO insignia on them after removing drywall behind the vanity and the wall at the side of the shower. *Id.*

Based on Objector's personal knowledge, as described in his declaration and contractor letter, the NIBCO Fittings as defined in the Class Notice were used in

the property. *Id*. As shown in the October 18, 2014 invoice attached to Objector's claim form, Objector sustained damages from the water leak at his property at 102 Northcott Street, Nocona, Texas 76255 from NIBCO Fittings, and paid out-of-pocket expenses of $2,337. Ex. 1 at 3-4, 1-A. Objector was required to replace the Fittings under the house and damage was done to the drywall, vanity, and flooring. *Id*. Objector was forced to gut the entire bathroom. *Id*. at 4. He was not reimbursed for the replacements/repairs. *Id*.

Objector has no reason to believe the leak was the result of a penetration of the Tubing, Fittings, and/or Clamp from a foreign object such as a nail or other physical abuse, or due to an improper attachment of the Tubing, Fittings, and/or Clamp to plumbing components or appliances, or due to an improper stress on the Tubing, Fittings, and/or Clamp due to improper installation, or due to an improperly set or malfunctioning pressure reducing valve not manufactured or sold by NIBCO, or due to age of fixture sealant components supplied or provided by a plumber, or due to any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. *Id*.

Objector is represented by local counsel, Janet L. Gold, Eisenberg, Gold & Agrawal, P.C., 1040 North Kings Highway, Suite 200, Cherry Hill, New Jersey 08034, and Robert Clore and Christopher Bandas, Bandas Law Firm, PC, 500

North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401.[6] Contemporaneous with this objection, Mr. Clore and Mr. Bandas are moving for *pro hac vice* admission before this Court. Although Objector does not intend to appear personally at the Final Approval Hearing, his counsel intend to appear at the hearing on his behalf. To the best of his recollection, Objector has objected to a class action settlement on one prior occasion, *Gellis v. Verizon Communications*, 07-cv-03679, before the United States District Court, Northern District of California. The objection was overruled and the appeal was dismissed for want of prosecution. Objector's counsel Janet Gold has represented an objecting class member on one prior occasion, *Schwartz v. Avis*, No. 11-4052, United States District Court, District of New Jersey. The objection overruled and the appeal was dismissed. Mr. Clore, Mr. Bandas, and/or the Bandas Law Firm, P.C. have represented objecting class members on numerous occasions, assisting clients in returning millions of dollars in excess attorneys' fees to the rightful settlement beneficiaries, the class members. *See* Exhibit 2. In fact, Mr. Bandas was part of a group of attorneys representing objectors in the *Baby Products* class action settlement that resulted in reversal of a settlement that threatened, as here, to result

---

[6] The class notice states that "all attorneys who are involved in any way [in] asserting objections on behalf of the Settlement Class Member must be listed on the objection papers." Notice at 12. Objecting class member's brother, Darrel Palmer is an attorney, but has no involvement in asserting the objection and does not represent Jeffrey Palmer. Darrell simply suggested his brother give the Bandas Law Firm a call about the NIBCO class action settlement. Ex. 1.

in a disproportionate allocation of fees to class counsel relative to class recovery. 708 F.3d 163, 175 (3d Cir. 2013). As directed in the class notice, a list of cases with captions, court and case number, and the disposition are attached as Exhibit 2,[7] and are incorporated herein by reference.[8]

      The statement of the objections and the grounds therefor are set forth below. Although this objection is asserted only on behalf of class member Jeffrey Palmer,

---

[7] In complying with the requirement that objectors and their counsel disclose all cases in which they have filed an objection by caption, court and case number, and for each case, the disposition of the objection, a thorough review of records was made; and searches were made on Pacer and www.serialobjector.com. Although it is possible an objection may have been inadvertently missed, counsel made a good-faith effort to locate and identify every objection called for in the class notice. Any omission, discrepancy or shortcoming in these disclosures is strictly unintentional. Should counsel become aware of any such deficiencies, they will take immediate steps to address any such matters.

[8] Objection is made to the unlimited scope of the request for prior objections. Anything beyond five years is excessive and serves no purpose other than to obstruct class members' due process rights in objecting to the settlement. *Jacobson v. Persolve, LLC*, 14-CV-00735-LHK, 2016 WL 7230873, at *6 (N.D. Cal. Dec. 14, 2016) (disapproving of "burdensome requirements for class members to object to the settlement"); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). There is no rational explanation for the disclosure other than to stifle objections. *See True v. American Honda Motor Co.* (C.D. Cal. 2010)749 F. Supp. 2d. 1052, 1079 (attorney's prior representation of class members not relevant). Although these Objectors were able to file their objections, there may have been many class members whose objections were chilled. Objection is further made to any other procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objector's and counsel's due process rights and/or Rule 23.

he believes it applies equally to the entire class. Objector relies upon the documents contained in the Court's file in support of these objections.

## OBJECTIONS

## I. This Claims-Made, Reversionary Settlement is Likely to Pay Class Counsel More than the Class and Delays Most Class Recovery More than Six Years.

Given the inherent conflicts in class action settlements, the Third Circuit regards the district court as a "fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The court must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Baby Prods.*, 708 F.3d at 175 (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (3d Cir. 2004); *Gen Motors*, 55 F.3d at 785).

In carrying out that duty, not only should the Court consider the fairness, adequacy, and reasonableness of the settlement using the *Girsh* factors,[9] but it

---

[9] The *Girsh* factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (noting proponent of settlement bears burden of proving Girsh factors weigh in favor of approval.)

should also consider the direct benefit provided to the class. *Baby Prods.*, 708 F.3d at 174. The Third Circuit rightfully disapproves of any settlement allocation where "class counsel, and not their client, may be the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179; *accord Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) ("in consumer class actions…the presumption should…be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel"); *Vines v. Covelli Enterprises*, No. CIV.A. 12-0028, 2012 WL 5992114, at *6 (W.D. Pa. Nov. 30, 2012) (disproportionate distribution for class counsel and reversionary provisions are classic warning signs of unfair arrangements). Further, allocation between the class and class counsel is now expressly part of the fairness inquiry under Rule 23(e). The court may only approve the settlement if it finds that it is fair, reasonable, and adequate after considering, among other things:

> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and]
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment[.]

FED. R. CIV. P. 23(e)(2)(C).

There is every reason to believe that $13 million in attorneys' fees will exceed class recovery in this claims-made, reversionary settlement with no floor. Reversionary claims-made settlements "create a risk that class counsel's recovery will be disproportionate to that of the class." Sarah Gohmann Bigelow, *Reconsidering Reverters: The Benefits of Reversionary Funds in Class-Action Settlements*, Blog: Duty and The Breach, Savitt Bruce & Willey, LLP.[10] For this reason, respected class action attorney Elizabeth Cabraser characterized reversionary provisions in claims-made settlements as "rare" and "disfavored." *Claims-Made Class Action Settlements*, 99 JUDICATURE 81 (Winter 2015).[11]

The problem isn't just that this is a reversionary claims-made settlement, although that's enough. It's that there is no settlement floor. This would at least provide some measure of proportionality. *See* Sarah Gohmann Bigelow, *Reconsidering Reverters: The Benefits of Reversionary Funds in Class-Action Settlements*, Blog: Duty and The Breach, Savitt Bruce & Willey, LLP;[12] *see e.g.*, *Rooker v. Gen. Mills Operations, LLC*, No. CV 17-467 PA (PLAX), 2018 WL 4962089, at *2 (C.D. Cal. Mar. 26, 2018) (in a claims-made reversionary

---

[10] Accessible at https://www.sbwllp.com/reconsidering-reverters-the-benefits-of-reversionary-funds-in-class-action-settlements (last visited Feb. 22, 2019).

[11] Accessible at https://judicialstudies.duke.edu/sites/default/files/centers/judicialstudies/judicature/judicature-vol99-no3_point-counter.pdf (last visited Feb. 22, 2019).

[12] Accessible at https://www.sbwllp.com/reconsidering-reverters-the-benefits-of-reversionary-funds-in-class-action-settlements (last visited Feb. 22, 2019).

settlement, setting a floor of at least 65% of the net settlement to be distributed to the class). If the parties had agreed to a $39 million floor, then after class counsels' proposed $13 million, the class might have recovered around $24 million after deducting litigation and settlement administration expenses. In that context, class counsels' fee would amount to around a third of the settlement fund.

Without a minimum payout, the disproportionate allocation could be worse than in *Pearson v. NBTY, Inc.*, where glucosamine buyers received only $0.8 million relative to class counsels' $2.1 million in fees. 772 F.3d 778, 781-82. The Seventh Circuit vacated approval of that settlement and required the settlement to be valued at the amount the class members actually received. *Id.*; *see also Kakani v. Oracle Corp.*, 2007 WL 1793774, at *5 (N.D. Cal. June 19, 2007) (Alsup, J.) (denying preliminary approval to a claims-made settlement where "$2.25 million might wind up being more in fees than the class receives in payments").

Any settlement structured to allow class counsel to be the primary beneficiary is, by definition, unfair and inadequate to the class. Unless class counsel can carry their burden to show the claims paid in this case will exceed by a considerable margin class counsels' proposed $13 million, the Court should reject the settlement. *Baby Prods.*, 708 F.3d at 175 (vacating order approving the settlement and fund allocation).

## II. The Claims Process Appears Structured to Limit Class Payout.

The comments to the recent amendments to Rule 23 note that it will often "be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims process method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." FED. R. CIV. P. 23 (e) (cmts. to 2018 amendments). The claims process here *is* unreasonably demanding, and has been communicated in confusing fashion in both the class notice and claim form itself. Further, the administration/appellate process yields too much influence to NIBCO over claim rejection.

The claim form is long—twelve pages—and the instructions require claimants to complete all questions. Dkt. 173-1, Ex. 1. Neither the claim form nor the class notice indicate whether a class member can submit multiple claims and if multiple forms are required if he or she owns separate effected properties.

The class notice uses the term "Effective Date" fifteen times without ever defining it. Dkt. 173-1, Ex. 2 at 5-6, 8-9, 11. The claim form uses it seven times without defining it. Dkt. 173-1, Ex. 1 at 1, 7-8, 10. Claimants are then repeatedly questioned whether they experienced a leak with respect to tubing, fittings, or clamps "on or after the Effective Date?" *Id.* at 7-8, 10. Since that date has yet to occur, how can claimants answer the question?

A footnote in the claim form (but not the notice) refers class members to the fifty-five page settlement agreement to look for definitions. Dkt. 173-1, Ex. 1 at 1 n.1. Even then, the term "Effective Date" is subject to variables not likely to be within the purview of most class members, including the date that the Court enters the Final Approval Order which is deemed "Final." Dkt. 672-1 at 7.

The claim form provides a litany of items that can be used to establish proof of a covered product, but nowhere does the form (or class notice) call for or explain what is required, if anything, for proof of Reasonably Proven Property Damage for past damages. Dkt. 173-1, Ex. 1 at 6. Presumably, class counsel will respond that the class members should again sift through the fifty-five page settlement to uncover the specifics of that ostensible requirement. All of that confusion increases the likelihood of class members submitting late, inaccurate, or incomplete forms; or more likely, no forms at all. Correspondingly, NIBCO has every incentive to reject claims where claimants did not file the form out completely or correctly. *See Eubank v. Pella Corp.,* 753 F.3d 718, 725–26 (7th Cir. 2014) (noting twelve page claim form was long and that the forms could lead to rejection of incomplete or incorrectly submitted claims).

The form is also unnecessarily invasive of class members' privacy. There's no reason they should have to list their date of birth to establish they have a Covered Product. Nor should they have been required to name their home owner's

insurance company and policy number if they didn't file a claim against their policy.

Aside from the confusing, unnecessarily invasive, and unduly burdensome claim form, the administration and appeals process gives NIBCO too much input over claims rejection. Dkt. 173-1 at 25-26. And, any claimant who wishes to appeal the rejection of a claim determined not to involve a Qualifying Leak must persuade a consultant paid by NIBCO outside of the settlement fund. Dkt. 173-1 at 26-27. The decision of this "independent" consultant is final. Notice at 7.

These hurdles make it unlikely class recovery will match or even come close to class counsels' proposed $13 million fee, particularly when those who do file claims are capped at 70% of their reasonably proven property damage.

## III.  More Information Is Needed on the Number of Class Members and the Value of their Claims, Not to Mention the Results of the Claims Process.

Aside from the obvious defects in settlement structure and claims process, the settlement cannot be approved at this stage because of a fundamental lack of information. Not only is it impossible to assign value to the claims-made reversionary settlement with no floor, but class counsel have yet to proffer any comparison with potential class recovery. From Objector's counsels' review, nowhere in the motion for preliminary approval, class notice, or fee motion is there any reference to the value of class damages released. Even the approximate size of the class appears unknown. According to the settlement administrator, the

overinclusive "potential audience size is estimated at approximately 10,732,000." Dkt. 173-3 at 7. However, NIBCO estimates there are between 157,700 to 400,000 structures in the United States in the settlement class. *Id.* at 8. The parties should submit a reasonable estimate of the class size and an aggregate value of class damages. Even with that, however, there is no real number to compare class damages with considering the the claims-made reversionary settlement with no floor.

As the Third Circuit has explained, the fairness inquiry "needs to be, as much as possible, practical and not abstract." *Baby Prods.*, 708 F.3d at 175. In determining the direct benefit to the class, the Court should consider the number of claims and estimated number of class members as well as class recovery relative to estimated damages. *Id.* at 174. Further, the Third Circuit instructs that where the parties have not supplied this data, the court "should affirmatively seek" it out. *Id.* at 174. The comments to the recent amendments to Rule 23 agree that "[t]he parties should … supply the court with information about the likely range of litigated outcomes[,]" and that it is often necessary to "forecast the likely range of possible classwide recoveries…." FED. R. CIV. P. 23(e) (cmts. to 2018 amendments).

On its face, the Court cannot adequately consider *Girsh* factors (8) the range of reasonableness in light of the best recovery, or (9) the range of reasonableness

of the settlement in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. Nor can it evaluate factor (2), the reaction of the class to the settlement, without the results of the claims process. *Id.*; FED. R. CIV. P. 23(e) (cmts. to 2018 amendments) ("[t]he relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that parties report back to the court about actual claims experience may be important."); *see also Baby Prods.*, 708 F.3d at 175 (vacating approval of settlement where court lacked information about the amount of direct compensation to the class and thus could not properly assess "whether the settlement was in the best interest of the class as a whole").

The missing data also stifles class member participation in making informed decisions on whether to opt out or object. "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *Baby Prods.,* 708 F.3d at 180. When class members lack "information on the membership for the class" or "the size of potential claims[,]" they may lack the ability to evaluate, as a matter of due process, whether "the settlement represents a superior alternative to litigating." *Gen. Motors*, 55 F.3d at 789. The notice represents that class members may recover 70% of Reasonably Proven Property Damage. Notice at 6. But, that does

not give them a real sense of the value of what they are releasing collectively. Class members should have an understanding of the aggregate value of their claims relative to the estimated actual value of the settlement. The Court should not approve the settlement without the parties producing this data, and without reissuing notice to include it, along with new objection and opt-out deadlines. Further, the Court should make no extrapolations about class approval of the settlement based on the number of objections and exclusions in the absence of this critical information.

### IV. Any Fee Award Should Be Deferred Pending the Results (or at Least Estimated Results) of the Claims Process; Regardless, 75% of Fees Should Be Withheld as With Class Recovery.

Even though the class must wait more than six years for 75% of their recovery, the settlement calls for payment of class counsels' $13 million plus $1 million in costs ten days after the Effective Date. Dkt. 173-1 at 46-47. If the class is to be the foremost beneficiary, and the reason for withholding most of the class relief is to ensure funds won't be depleted during the claims period (Dkt. 173-1 at 21), it follows that at least the same proportion of class counsels' fees should be withheld for the duration of the claims period.

Aside from the extensive delay endured only by the class, the uncertainty in actual class recovery further counsels for deferment of fees. As discussed in the comments to the 2018 amendments, this is precisely the type of case where it is

"important to relate the amount of an award of attorney's fees to the expected benefits to the class. One way to address this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results." FED. R. CIV. P. 23(e) (cmts to 2018 amendments).

In similar circumstances, Judge Vince Chhabria in the Northern District of California sought to protect class interests by reserving "[t]en percent of Class Counsel's awarded fees … in the Settlement Fund until after Class Counsel files a Notice of Completion of Duties" and "after substantially all of the Settlement Fund has been distributed to the Class…" *Jabbari v. Wells Fargo & Co*., No. 15-02159-VC, Dkt. 271 at 13 (N.D. Cal. Jun. 14, 2018); *see also Rougvie, et al. v. Ascena Retail Group, Inc. et al*., No. 2:15-cv-00724, Dkt. 185 at 2-3 (E.D. Pa. Jul. 29, 2016) (withholding 25% of fees until class counsel provided certification of distribution to the class). This case requires a far greater withholding since the settlement delays most class recovery longer than six years.

## V.    Class Counsels' Lodestar Submission is Grossly Inadequate.

With the caveat that no fee approaching actual class recovery should be entertained, to the extent the Court awards a fee, it would be most appropriately calculated under the lodestar method because of the uncertain value of this claims-made reversionary settlement. "Courts in this district have previously found the lodestar method" should be applied because of the uncertain value of claims-made

settlements, which "cannot be characterized as true 'common fund[s]' for purposes of the percentage-of-the-fund analysis." *McLennan v. LG Elecs. USA, Inc.*, No. 2:10-CV-03604 WJM, 2012 WL 686020, at *10 (D.N.J. Mar. 2, 2012) (citing *Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546, 593 (D.N.J.2010)); *see also Gray*, 2017 WL 3638771, at *4–5.

Class counsel represent an $8.2 million lodestar (Dkt. 179 at 2)[13], but their submission is wholly inadequate, even if just as a cross-check for a percentage-based award. *Glover v. Ferrero USA, Inc.*, No. CV 11-1086 (FLW), 2012 WL 12996302, at *4 (D.N.J. Sept. 18, 2012) (Wolfson, J.) (transcript) (calling for detailed lodestar submission in context of lodestar cross-check). This case involves multiple law firms engaged in similar litigation in at least two separate lawsuits. Class counsels' assurances that they made efforts to avoid duplicative efforts are not enough given this Court's fiduciary obligations.

In calculating lodestar, the paramount requirement for the time spent on a given matter is reasonableness. *Interfaith Cmty. Org. v. Honeywell Int'l. Inc.,* 426 F.3d 694 (3d Cir. 2005). Hours must be excluded which are "excessive, redundant, or otherwise unnecessary." *Public. Int. Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir. 1995); *see In re Johnson & Johnson Derivative Litig.*,

---

[13] Specifically, class counsel identify their lodestar as $8,220,894.85, which would produce a 1.58 lodestar multiplier for $12,999,975 in fees. Dkt. 179 at 2. Or, if we include $1,095,000 in costs (Dkt. 180 at 14), the multiplier would be 1.7.

No. 10-2033(FLW), 2013 WL 11228425, at *9 (D.N.J. June 13, 2013), *adopted,* No. CIV.A. 10-2033 FLW, 2013 WL 6163858 (D.N.J. Nov. 25, 2013) (Wolfson, J.); *Lachance v. Harrington*, 965 F. Supp. 630, 650 (E.D. Pa. 1997) ("When evaluating at lodestar, the court must be cautious to ensure that class counsel does not engage in duplicative and repetitive work").

Class counsel have not disclosed the number of hours they spent by task to allow for elimination of duplicative or unnecessary hours among the collective 14,831.6 hours (divided among 36 attorneys and staff) reported by the three firms that submitted supporting declarations. Dkt. 179-2 (3,114.7 reported hours for $1.8 million lodestar by Lite De Palma Greenberg); Dkt. 1790-3 (4,706 hours reported for $2.6 mil lodestar by Sauder Schelkopf LLC and Chimicles Schwartz Kriner & Donaldson-Smith LLP); Dkt. 179-4 at 14 (7,010.9 reported hours for $3.7 million lodestar by Berger Montague). Considering the number of attorneys who worked on this case, there is almost certainly some duplicative labor. Not surprisingly then, Mr. Greenberg's and Mr. Sauder's declarations mirror each other's recitations of work performed. Dkt. 179-2 at 17-18; Dkt. 179-3 at 20-21 (describing the firms' overlapping work, including among other things, legal research, drafting of complaints, and briefing).

Objector would refer class counsel to this Court's reduction of fees and comments made during a fairness hearing about a similar generic lodestar

submission in *Glover*, 2012 WL 12996302, at *4 (D.N.J. Sept. 18, 2012 transcript

of July 9, 2012 hearing) (Wolfson, J.):

> Let me also, just at the outset I would like to discuss with counsel the manner in which your rates, hourly rates, were submitted for the work done, which was done only for purposes of the lodestar check, because you are not actually looking for a lodestar recovery but a percentage of the common fund. But I have a problem.
>
> I appreciate that you need not give me chapter and verse of what your fees are. But I must point out that at least with the Carella firm I had codes that indicated what kind of work was being done by which attorneys. I had nothing from the other attorneys as to how many hours were spent on what tasks; and it, one, creates grave concerns for this Court in determining whether you have provided me an adequate basis for determining what your real fees were for the lodestar check because everyone gives the same general descriptions: You worked on motions. You worked on discovery. You worked on the settlement. And I've got five law firms all telling me the same thing which leads me to believe duplication of effort, and no one has broken this down—and also such substantial number of hours that were spent where the Court can't even assess in the broadest fashion whether it was reasonable amounts of time being spent.
>
> I start with that. No breakdown at all even in a summary fashion.

*Id*. at *4. This Court should apply the same scrutiny to the broad submission as it

did in *Ferrero*. Further, class counsel shouldn't be heard to submit their time

records *in camera*. Dkt. 179-2 at 16. The class members have a right to know how

their attorneys spent their time and the basis upon which fees will be awarded. This

material should be filed of record, with appropriate redactions for work product where necessary.

"Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). In *Shane Group*, the Sixth Circuit vacated approval of the settlement where documents which the parties considered in reaching the settlement were sealed from the class. *Id.* at 306, 309. Because class members could not view this critical information, the Court found that "[t]he Rule 23(e) objection process seriously malfunctioned." *Id.* at 309.

The same is true of a fee entered based on sealed records. The need for transparency is particularly important with class actions because "many members of the 'public' are also plaintiffs in the class action." *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001).

> Protecting the access right in class actions "promotes [class members'] confidence" in the administration of the case. . . . Additionally, the right of access diminishes the possibility that "injustice, incompetence, perjury, [or] fraud" will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation. Finally, openness of class actions provides class members with "a more complete understanding of the [class action process] and a better perception of its fairness."

*Cendant*, 260 F.3d at 193 (quotations omitted).

There are simply no compelling interests that would allow for the sealing of class counsels' billing records, while still allowing for reasonable redaction of work product. *Cendant*, 260 F.3d at 193-98.

To the extent fees are awarded under the lodestar method, after reducing hours for duplicative and unnecessary time, a negative multiplier should be applied considering the claims-made, reversionary settlement with no floor. *See Petruzzi's Inc.*, 983 F. Supp. at 607 (rejecting an upward adjustment on lodestar because of the claims-made nature of the settlement). Of course, the Court should start with the "'strong presumption that the lodestar represents the 'reasonable fee,'" and only allow an upward adjustment in "rare" and "exceptional" circumstances. *Dungee v. Davison Design & Dev. Inc*, 674 F. App'x 153, 156–57 (3d Cir. 2017) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). The prospect that class counsels' fee will exceed class relief coupled with making the class wait more than six years to get most of it is anything but the extraordinary circumstances required for a positive multiplier. Nothing more than between .5 and .75 of class counsels' lodestar, after appropriate reductions for duplicitous and unreasonable billing, should be allowed.

## VI. Any Award under the Percentage Method Should Take Into Account Actual Class Recovery.

If fees are awarded under the percentage method, the Court should allow nothing more than 25%[14] of the actual or reasonably estimated claims. *Baby Prods.*, 708 F.3d at 179-80. In general, the Third Circuit requires consideration of the *Gunter/Prudential* factors to assist in evaluating the reasonableness of fees. The factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Baby Prods.*, 708 F.3d at 177 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000); *In re Prudential Insurance Co. America Sales Practice Litigation,* 148 F.3d 283 (3d Cir.1998)).

In *Baby Products*, the Third Circuit recognized that direct recovery by the class must be considered when the results appear to provide a disproportionate

---

[14] "Many courts, including several in the Third Circuit, have considered 25% to be the 'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors." *Wallace v. Powell*, 301 F.R.D. 144, 166 (M.D. Pa. 2014) (quoting *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 262 (D.Del.2002) (gathering case law and awarding 22.5% in fees on a $10.01 million settlement fund)).

award in favor of class counsel. *Baby Prods.*, 708 F.3d at 169-70, 179-80 (rejecting $14 million in fees where class would expected to recover around $3 million and the rest would go to *cy pres* recipients); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 636 (E.D. Pa. 1986) (where claims process resulted in disproportionate fees relative to class recovery, "the attorneys' fee must be based on the actual recovery of the class, not on the amount of the fund"). In this context, when "evaluating a fee award, [the court] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process." *Baby Prods.*, 708 F.3d at 179. Once the final numbers are in, the court should, "relying on the *Gunter/Prudential* factors and its experience, determine whether the level of distribution provided to the class by the settlement reflects a failure of class counsel to represent adequately the interests of the entire class." *Id.*

The most relevant factor here is the first—the size of the fund created and the number of persons benefitted. The true size of the fund and the number of members benefitted in this case depends entirely on the results of the claims process. As discussed, actual class recovery is likely to be below class counsels' proposed $13 million. If that's the case, then class counsel failed to represent adequately the interests of the class. Class counsel should recover no more than a percentage of the actual benefit to the class.

Class counsel have hamstrung the court in analyzing the amount of time

devoted to the case with an overly broad lodestar submission. The skill and efficiency of counsel should be measured on their results here—an attorney-first settlement. Class counsels' recitation of the risk of non-payment is a five sentence paragraph in their fee motion, and is essentially that insurance issues threatened the prospect of sufficient funds, which could be said in many cases. Dkt. 179-1 at 24. Finally, the two securities and one antitrust class action opinions class counsel cite as "similar" cases are nothing like this consumer class action that resulted in a claims-made reversionary settlement with no floor. Dkt. 179-1 at 25. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) (securities); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016) (securities); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (antitrust).

In particular, the *Roka Bioscience* settlement paid the class from a settlement fund *pro rata*, and the court provided for a second redistribution for any balance remaining. *Roka Bioscience*, No. 14-CV-8020-FLW-TJB, Dkt 71 at 2 (D.N.J. Nov. 8, 2017) (Wolfson, J). To the extent the redistribution was infeasible, the Court authorized the balance to be distributed *cy pres*. *Id*. Most importantly, none of the three cases mention a reversionary provision allowing unclaimed funds to return to the defendant as allowed under this settlement. Dkt. 173-1 at 27.

In short, there is no plausible justification for allowing class counsel to take

$13 million plus $1 million in costs when the class is likely to take far less. Nothing more than 25% of actual class recovery, or at least reasonably estimated class recovery, should be permitted.

## CONCLUSION

Objecting class member Jeffrey Palmer urges the Court to reject the settlement and find class counsel inadequate representatives in making themselves the foremost beneficiary at the expense of the class. Structurally, the Court should disapprove the reversionary, claims-made structure of the settlement coupled with a confusing and cumbersome claims process, which affords NIBCO significant control over claims approval. Any award of fees should be deferred until the Court has an understanding of the likely value of the settlement based on actual claims submitted. If the Court nevertheless entertains fees at this juncture, class counsel should be required to submit lodestar with breakdowns as to how individual attorneys incurred their time by task. This material should be filed, with appropriate redactions for work product, and not submitted under seal. After allowing for elimination of redundant and unnecessary time, class counsel should be awarded no more than .5 to .75 of their lodestar to account for having negotiated a settlement structure likely to reward class counsel more than the class. Alternatively, class counsel should recover no more than 25% of actual class recovery.

DATED: February 27, 2019         Respectfully submitted,


/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
jgold @egclawfirm.com

Robert W. Clore
*Pro Hac Vice* Admission Pending
Christopher A. Bandas
*Pro Hac Vice* Admission Pending
Bandas Law Firm, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5200
rclore@bandaslawfirm.com
cbandas@bandaslawfirm.com

*Counsel for Objecting Class Member Jeffrey Palmer*

Jeffrey Palmer
Class Member/Objector

## Certificate of Service

The undersigned certifies that today she filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated exhibits upon the following.

DATED: February 27, 2019


Class Action Objections
Attn: NIBCO Class Action Settlement
PO Box 58086
1500 JFK Boulevard, Suite C31
Philadelphia, PA 19102



/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
jgold @egclawfirm.com
*Attorney for Objector/Class Member*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>vs.<br><br>NIBCO, Inc.,<br><br>                    Defendant. | Civil Action No. 13-7871-FLW-TJB |

---

## DECLARATION OF JEFFREY PALMER

---

My name is Jeffrey Palmer. I am over 18 years old. I am qualified and competent to make this declaration. The facts stated herein are within my personal knowledge.

My full name is Jeffrey Paul Palmer. My address, phone number and date of birth are: 700 West Walnut Street, Nocona, Texas 76255; (940) 232-1017; November 15, 1964.

I own a residential structure in the United States containing plumbing systems that in 2014 contained NIBCO's Tubing, Fittings, and/or Clamps as defined by the Class Notice. The residential structure is at 102 Northcott Street, Nocona, Texas 76255, and contained NIBCO Tubing, Fittings, and/or Clamps as defined by the Class Notice. These would have been installed in June, 2014 to the best of my recollection. I am therefore a member of the class as defined by the Class Notice.

I completed a claim form, along with attachments, and forwarded it to the settlement administrator by email as instructed in the class notice. Attached hereto as Exhibit 1-A is a true and correct copy of the completed claim form and attachments. Attached hereto as Exhibit 1-B, is a true and correct copy of the email I sent to the administrator with the claim form attached.

In support of my objection, I rely on the documents attached to my claim form to show that the structure at 102 Northcott, which I own, contains a Covered Product as defined in the Class Notice. Those documents, again attached hereto as Exhibit 1-

A, include a contractor letter from me stating upon personal knowledge that Fittings as defined in the class notice were used in the property. The documents attached also include a true and correct copy of a receipt from Nocona Building Center, which includes the purchase of some PEX Tubing and Fittings. I am not certain if this is the receipt for the fittings that leaked, but it was the only one from that time period that I have been able to locate. The documents attached also include a true and correct copy of an invoice from Classic Construction & Remodeling from October 18, 2014, which documents the expense incurred for the damage caused from the leak.

As noted in the letter attached to my claim form, I am a general contractor, and have considerable experience in performing construction jobs on homes, including installation and repair of plumbing. From 1993 until 2004, I worked as a general contractor in San Diego and Sacramento, California. Part of my overall work as a contractor included installing and repairing plumbing. Having spent over 10 years as a contractor working with insurance companies with water damage claims, I have learned to make note of what causes leaks in a water damage situation. I have also worked as an adjuster in catastrophe claims. Additionally, I have worked as a contractor in Nocona, Texas from 2004 until present, and my work also includes plumbing work.

In 2014 and 2015, I was a general contractor and operated under the business

name, Classic Construction & Remodeling in Nocona, Texas. I no longer operate under that business name.

In early 2014, I purchased a home at 102 Northcott Street, Nocona, Texas 76255 as a rental property. After purchasing the home, I purchased NIBCO Pex Tubing and yellow brass Fittings for installation in the third bathroom of the house. I specifically recall the yellow brass Fittings with the word NIBCO stamped on them, and I used them at the joints in the PEX tubing. I do not recall the fittings stamped with interlocking ovals or stamped DR as depicted on the settlement website.

In October 2014, a few months after putting in the plumbing, I learned there had been a leak in the bathroom where the NIBCO tubing and fittings were installed. I'm not certain exactly when the leak occurred because I was renting out the property to a tenant.

The leak damaged the drywall and water ran under the vanity, damaging the flooring and the vanity cabinet. There was also a leak in the wall where the shower valve was installed, which damaged the drywall and allowed mold to grow in the wall. The shower had to be replaced in order to repair the damage. I recall seeing the leaking yellow brass fittings with the NIBCO insignia on them after removing drywall behind the vanity and the wall at the side of the shower.

Based on my personal knowledge, as described above, the NIBCO Fittings as defined in the Class Notice were used in the property. As shown in the October 18,

2014 invoice attached to my claim form, I sustained damages from the water leak at my property at 102 Northcott Street, Nocona, Texas 76255 from NIBCO Fittings, and paid out-of-pocket expenses of $2,337. I was required to replace the Fittings, and damage was done to the drywall, vanity, and flooring. I was forced to gut the entire bathroom. I was not reimbursed for the replacements/repairs.

I have no reason to believe the leak was the result of a penetration of the Tubing, Fittings, and/or Clamp from a foreign object such as a nail or other physical abuse, or due to an improper attachment of the Tubing, Fittings, and/or Clamp to plumbing components or appliances, or due to an improper stress on the Tubing, Fittings, and/or Clamp due to improper installation, or due to an improperly set or malfunctioning pressure reducing valve not manufactured or sold by NIBCO, or due to age of fixture sealant components supplied or provided by a plumber, or due to any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps.

To the best of my recollection, I have objected one time before to a class action settlement. That case was *Gellis v. Verizon Communications*, 07-cv-03679, before the United States District Court, Northern District of California. The objection was overruled and the appeal was dismissed for want of prosecution.

My brother, Darrel Palmer, who is an attorney, suggested I give the Bandas

Law Firm a call about the NIBCO class action settlement. He does not represent me, and I did not have any involvement with him in the case other than his suggestion that I call the Bandas Law Firm.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2019

Jeffrey Palmer

# Exhibit 1-A

<div style="border:1px solid black; float:right; text-align:center;">

**PEX**
Instructions

</div>

**NIBCO PEX Settlement Administrator**
PO BOX 58086
1500 JFK Blvd, Suite C31
Philadelphia, PA 19102

**Claim Form Instructions**
**for Settlement Class Members**

**ATTENTION: NIBCO PEX CLASS ACTION SETTLEMENT CLASS MEMBERS:**

Use this Claim Form if: (a) you owned or occupied real property containing plumbing systems that contain NIBCO 1006 Tubing ("Tubing"), NIBCO F1807 Fittings ("Fittings"), and/or NIBCO Stainless Steel Clamps ("Clamps")[1] and have experienced at least one leak from the Tubing, Fittings, and/or Clamps that resulted in a physical escape of water causing damage; and/or (b) you paid for repairs or damages resulting from a Qualifying Leak from NIBCO Tubing, Fittings, or Clamps.

A physical escape of water that is the result of penetration by a foreign object and/or certain installation issues is not eligible for a remedy. The Settlement Agreement defines these exclusions at Paragraph 1.ff.iv. To determine whether you are eligible to submit a Claim Form, or for more information regarding the Settlement, visit the Settlement Website, www.pexsystemsettlement.com. If you need more space for your responses, please attach additional sheets.

*Claim Form Deadline.*

Claim Forms can be submitted starting immediately. Claim Forms are due 150 days after the Effective Date for Qualifying Leak(s) that occurred between January 1, 2005 and the Effective Date. Claim Forms are due 150 days after the Qualifying Leak occurs if the Qualifying Leak occurs after the Effective Date and before the end of the six year Claim Period. The Effective Date will be posted on the Settlement Website once known.

*How To Complete This Claim Form.*

1. All questions must be answered. Please type or print your responses in ink. Use "N/A" when the question does not apply. You must respond to any request by the Settlement Administrator for additional information. If you fail to respond, your Claim may not be processed and you may waive your rights to receive a monetary award under the Settlement.
2. Please keep a copy of your submitted Claim Form and all supporting materials. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. All copies of documentation submitted in support of your claim should be clear, legible and complete.
3. There are three ways to submit your Claim Form and supporting materials: (a) by mail; (b) by email to the following email address: info@pexsystemsettlement.com; or (c) via the Settlement Website, www.pexsystemsettlement.com.
4. If you are mailing your Claim Form and supporting materials, please include the completed Claim Form and all supporting materials in one envelope and send to the following address:

**PEX System Settlement**
ATTN: CLAIMS
PO BOX 58086
1500 JFK Blvd, Suite C31
Philadelphia, PA 19102

If you have any questions, please contact the Settlement Administrator by email at info@pexsystemsettlement.com or by telephone at 1-855-649-5968, or write to the address above.

---

[1]The definition of any capitalized term not defined herein can be found in the Settlement Agreement which can be downloaded at the Settlement Website: www.pexsystemsettlement.com.

**It is your responsibility to notify the Settlement Administrator of any change of address that occurs after you submit your Claim.**

*What to expect after you submit your Claim Form.*

1. Please note that no acknowledgment will be made of the receipt of a Claim Form. If you wish to be assured that your Claim Form and documentation were received by the Settlement Administrator, please use a shipping method that provides delivery confirmation.
2. Please note that it will take several months for the Settlement Administrator to process your Claim Form. This work will be completed as quickly as possible given the need to investigate and evaluate each Claim Form.
3. The Settlement Administrator will evaluate all of the information and documentation that you submit in order to determine your eligibility for monetary benefits under the Settlement, and will contact you to request additional information if the information you provided is insufficient to process your Claim.

| For Internal Use Only | NIBCO PEX Settlement Administrator<br>PO BOX 58086<br>1500 JFK Blvd, Suite C31<br>Philadelphia, PA 19102 | PEX |
|---|---|---|

## I. CLAIMANT CONTACT INFORMATION/MAILING ADDRESS

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form.

| Jeff | Palmer |
|---|---|
| **First Name** | **Last Name** |

700 W Walnut St
**Street Address**

| Nocona | TX | 76255 |
|---|---|---|
| **City** | **State** | **Zip Code** |

| (940) 232.1017 | ( 940) 232 - 1017 | ( 940) 232 - 1017 |
|---|---|---|
| **Home Phone** | **Cell Phone** | **Work Phone** |

jeff@epalmers.com
**Email Address**

**Please enter your Notice ID #** n/a **if you received a Notice by mail or email.**

**Please place a check in the applicable box. Are you a:**

- ☐ 1. Plumber
- ☐ 2. Tenant
- ☐ 3. Builder
- ☐ 4. Homeowner
- ☐ 5. Insurer
- ☒ 6. Owner of Commercial or Rental Property
- ☐ 7. Other: _____

If Making a Claim for a Business or Entity, Identify the Name of Business or Entity: n/a

Name of person making a Claim on behalf of Business or Entity: n/a

Position or Title: n/an/

3

## II. DESCRIPTION OF PROPERTY WHERE THE QUALIFYING LEAK(S) OCCURRED

**A.** **PROPERTY ADDRESS** (Do not use a post office box – please enter street address)

Property Street Address:

102 Northcott St

City: Nocona    State: TX    Zip Code: 76255

**B.** **PROPERTY OWNERSHIP**

1. Name of Property Owner: Jeff Palmer

   Name of Additional Property Owner (if applicable): n/a

   Name of Additional Property Owner (if applicable): n/a

**LIST ALL PROPERTY OWNERS.** If there are additional owners, please attached a list which each additional owner's full name.

2. Are you the current owner of the property? X YES _____ NO

   If not, what dates did you own the property? _____

3. If an insurance claim was made concerning the Qualifying Leak(s), state the Claim Number and insurance company:

   n/a

4. If you are a builder, contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise for amounts you paid due to leaks at the properties of others, please answer the following questions:
   **(You must provide documentation and evidence of payment in order for your claim to be complete).**

   What is the name and contact information for your insured or person for whom you paid a claim?

Full Name: n/a

Current Mailing Address: n/a

City: n/a    State: n/a    Zip Code: n/a

What is the name and contact information for your insured or person for whom you paid a claim?

Daytime Phone Number: n/a    Evening Phone Number: n/a

Email: n/a

4

## C.    PROPERTY TYPE

Please place a check mark next to the property type for which you are submitting a Claim:

1. Single Family Dwelling ___x___
2. Multi-Unit Dwelling ___n/a___
3. Commercial Property ___n/a___

If the property is a multi-unit dwelling, estimate the number of units with PEX Tubing, Fittings, and/or Clamps: ___n/a___

## D.    INSTALLATION INFORMATION

1.   Who was the builder of your structure with Tubing, Fittings, and/or Clamps?

___x___  Check here if you don't know.

Name: ___n/a___

Address: ___n/a___

City: ___n/a___          State: __n/a__      Zip Code: __n/a__

Phone Number: __n/a__

2.   Who installed the Tubing, Fittings, and/or Clamps?  ____ Check here if you don't know.

Name: __Classic Construction__

Address: __301 7th st__

City: __Nocona__          State: __TX__      Zip Code: __76255__

Phone Number: __no longer in business__

3.   Estimated Installation Date: _____6 /2014_____
                                            MM          DD          YYYY

☐  Installed when structure was originally built.

☒  Installed after original construction of the structure.

☐  Don't know.

## E.    HOMEOWNERS INSURANCE

If you are claiming as a homeowner, identify the name and policy number of your homeowners insurance in effect at the time of your Qualifying Leak:

Name of homeowners insurance: __Farm Bureau__

Policy number: __60695911__

5

## III. IDENTIFICATION AND INSTALLATION OF TUBING, FITTINGS, and CLAMPS

### A. DESCRIPTION OF NIBCO PEX TUBING, FITTINGS, and/or CLAMPS

Do not submit a Claim Form unless you have or had the Tubing, Fittings, and/or Clamps in your structure. You can access photos and a description of these products at www.pexsystemsettlement.com. The Tubing, Fittings, and Clamps were used for a variety of applications including, without limitation, hot and cold water distribution in plumbing applications in homes, residences, buildings or other structures. **Please note that the Tubing, Fittings, and Clamps at issue in this Settlement are likely no longer on the market. The Tubing was sold between 2005 and approximately 2013. The Fittings were sold between 2005 and approximately 2015. The Clamps were sold between August 2005 and approximately August 2015.**

### B. PROOF OF A COVERED PRODUCT
How have you determined that your structure contains Tubing, Fittings, or Clamps? (Check all that apply.)

| | |
|---|---|
| n/a | Leaked Tubing |
| x | Leaked Fitting |
| n/a | Leaked Clamp |
| n/a | Inspection report |
| x | Bills of sale, purchase orders |
| n/a | Builder or plumbing records |
| n/a | Correspondence identifying Tubing, Fittings, and/or Clamps in the property |
| n/a | Report from plumber, engineer, architect or home inspector identifying Tubing, Fittings, and/or Clamps in the property. |
| x | Builder, plumber or contractor letter stating upon personal knowledge that Tubing, Fittings, and/or Clamps were used in the property. |
| n/a | Photographs |
| n/a | Other Documentation (describe): |

**Enclosures Required**: For each document you checked above, please enclose a copy (not an original) with this completed form. Also, for a Future Property Damage Claim, please enclose the section(s) of Tubing, any Fitting, and/or any Clamp that leaked, if any. If you do not have the leaked Tubing, Fitting, and/or Clamp, please explain why below:

## IV. DESCRIPTION OF LOSS

### A. Tubing Leak

1. Approximate length of Tubing you allege leaked? ____n/a_____

2. Have you replaced the Tubing that is/are the subject of the leak? n/a Yes  n/a No

3. Approximate length of Tubing replaced: ____n/a_____

4. Have you repaired any alleged damage to your property as a result of the leak? n/a Yes  n/a No

6

If Yes, describe the repairs and damage (if multiple leaks describe repairs/damages by leak): ___n/a___

_____

_____

     5.    List the approximate date that each alleged Qualifying Leak occurred and the unreimbursed amount that you spent on damages or repairing the leak:

Date:___n/a__/_____/_____    Amount Paid Out-of-Pocket by You: $ ___n/a___

Date:___n/a__/_____/_____    Amount Paid Out-of-Pocket by You: $ ___n/a___

List additional leaks on another page, if needed.

     6.    Have you been reimbursed for any replacement/repair costs from your insurance company or any other third party? _____ Yes ___x___ No

If Yes, state:

Reimbursement Amount: $_____

Source of Reimbursement: _____

     7.    Do you currently have damage caused by any Tubing that has not been repaired or replaced? _____ Yes ___x___ No

If Yes, describe: _____

_____

_____

_____

**For replacement/repair that you assert has not been completed, you must provide documentation (i.e., repair estimates, bids, etc.) that document the cost estimates for the repair or replacement.**

     8.    Do you have any Tubing that has experienced a leak on or after the Effective Date?

    _____ Yes ___x___ No

If yes, then please provide either the failed Tubing or reason why the failed Tubing is not available for submission.

If providing failed Tubing, check here _____.

If not providing failed Tubing, please explain the reason as to why not here:

___n/a_____

**B.**    **Fitting Leak**

If you allege that one or more Fittings have leaked, please answer the following questions:

1.  How many Fitting(s) do you allege leaked? _____**2**_____

2.  Have you replaced the Fitting(s) that is/are the subject of the leak? __x__ Yes _____ No

3.  How many Fitting(s) have you replaced? _____**6**_____

4.  Have you repaired any alleged damage to your property as a result of the leak? _x__ Yes _____ No

5.  If Yes, describe the repairs (if multiple leaks describe repairs by leak):

    _____Replaced fittings where leaking under the house and in the wall at the third bathroom.__

    ___Damage was done to the drywall, vanity and flooring. Entire bathroom was gutted and replaced.__


6.  List the date that each leak occurred as the result of a Fitting and the amount spent on damage or repairs by leak:

    Date: _10_/_17_/__14___     Amount Paid Out-of-Pocket by You: $ __2337_____

    Date:___/___/_____        Amount Paid Out-of-Pocket by You: $ _____

    Date:___/___/_____        Amount Paid Out-of-Pocket by You: $ _____

    List additional leaks on another page, if needed.

            x

7.  Have you been reimbursed for any replacement/repair costs from your insurance company or any other third party? _____ Yes __x__ No

    If Yes, state:

    Reimbursement Amount: $_____n/a_____

    Source of Reimbursement: _____n/a_____

8.  Do you currently have damage caused by Fitting(s) that has not been repaired or replaced? _____ Yes __x__ No

    If Yes, describe: _____n/a_____

    _____

    _____

    _____

    _____

**For replacement/repair that you assert has not been completed, you must provide documentation (i.e., repair estimates, bids, etc.) that documents the cost estimates for the repair or replacement.**

9.  Do you have any Fitting(s) that have experienced a leak on or after the Effective Date? _____ Yes __x__ No

If yes, then please provide either the failed Fitting(s) or reason why the failed Fitting(s) is not available for submission.

If providing failed Fitting(s), check here n/a .

If not providing failed Fitting(s), please explain the reason as to why not here:

    n/a   Unaware of suit when repairs were made.  Faulty fittings were disposed of.

**C.**    **Clamp Leak**

If you allege one or more Clamp(s) have leaked, please answer the following questions:

1. How many Clamp(s) do you allege leaked? n/a

2. Have you replaced the Clamp(s) that is/are the subject of the leak? n/a Yes n/a No

3. How many Clamp(s) have you replaced? n/a

4. Have you repaired any alleged damage to your property as a result of the leak?
n/a Yes n/a No

If Yes, describe the repairs (if multiple leaks describe repairs by leak): n/a

5. List the date each leak occurred and the amount spent on damage or repairs by leak:

Date: n/a / /     Amount Paid Out-of-Pocket by You: $ n/a

Date: n/a / /     Amount Paid Out-of-Pocket by You: $ n/a

List additional leaks on another page, if needed.

6. Have you been reimbursed for any replacement/repair costs from your insurance company or any other third party? n/a Yes n/a No

If Yes, state:

Reimbursement Amount: $ n/a

Source of Reimbursement: n/a

7. Do you currently have damage caused by Clamp(s) that has not been repaired or replaced?
n/a Yes n/a No

If Yes, describe: n/a

9

**For replacement/repair that you assert has not been completed, you must provide documentation (i.e., repair estimates, bids, etc.) that document the cost estimates for the repair or replacement.**

8.   Do you have any Clamp(s) that have experienced a leak on or after the Effective Date?

_____ Yes   __X__ No

If yes, then please provide either the failed Clamp(s) or reason why the failed Clamp(s) is not available for submission.

If providing failed Clamp(s), check here __n/a__ .

If not providing failed Clamp(s), please explain the reason as to why not here:

n/a

---

**V. RE-PLUMB CLAIMS**

**Please fill out this section only if you have experienced three (3) or more Qualifying Leaks and are seeking a re-plumb.**

1.   Are you requesting a replacement of, or reimbursement for replacement of, the Tubing, Fittings, and/or Clamps in your home or building?

_____ Yes   __X__ No

2.   If the answer to the previous question was "yes", please answer the following:

Has your property had three (3) or more Qualifying Leaks each at separate times?

__n/a__ Yes   __n/a__ No

3.   Please provide the number of fixtures in your home or building:  __n/a__

4.   Have you already completely re-plumbed your property as a result of the leak(s)?

__n/a__ Yes   __n/a__ No

If Yes, describe: __n/a__

5.   For any work described above, please state the amount paid out-of-pocket by you:

$_____n/a_____
**(you must submit invoice(s) and proof of payment for repairs)**

6.   Have you been reimbursed for any replacement/repair costs from your insurance company or any other third party? __n/a__ Yes  __n/a__ No  If Yes, state:

Reimbursement Amount: $_____n/a_____

10

Source of Reimbursement: _____n/a_____

**Please note that if you are deemed eligible by the Settlement Administrator for a Re-Plumb Claim, you will no longer be eligible to make any Future Property Damage Claims.**

## VI. WORK AUTHORIZATION

By signing and returning this Claim Form, I accept the terms of the Settlement and authorize the Settlement Administrator to schedule inspection, repairs, and/or a re-plumb of the property, as applicable.

## VII. SETTLEMENTS

Have you entered into any oral or written settlement of the claims identified above, or received the benefit of any payments to you or on your behalf as a result of those claims? _____ Yes ___X___ No

If Yes, identify the other party or parties to the settlement: _____n/a_____

If Yes, also state the date and amount of settlement:

| _____n/a_____ | $ | _____n/a_____ |
|---|---|---|
| MM     DD     YYYY | | Amount of Settlement |

If Yes, please attach a copy of the Release or Settlement Agreement, if any.

## VIII. ADDITIONAL INFORMATION

If you have any additional information which you would like us to consider in evaluating your Claim, please attach that information as a separate document.

If you have previously contacted NIBCO about one or more of the leaks identified above, please check here ☐

## IX. RELEASE, CERTIFICATION, AND AGREEMENT TO BE BOUND

I/we declare that the information that I/we have supplied in this Claim Form is true and correct to the best of my/our knowledge and belief and that this document is signed pursuant to 28 U.S.C. § 1746 under penalty of perjury. By signing below, I/we hereby certify that I/we have read the Release in Paragraph 34 of the Settlement Agreement and agree to be bound by the Release and the Settlement Agreement.

_____
*Signature of Claimant*

Date: **02/27/2019**
          MM     DD     YYYY

_____
*Signature of Claimant*

Date: _____
          MM     DD     YYYY

11

**THIS FORM WILL BE USED BY THE SETTLEMENT ADMINISTRATOR TO DETERMINE YOUR ELIGIBILITY TO RECOVER UNDER THIS SETTLEMENT AND TO DETERMINE THE VALUE, IF ANY, OF YOUR SETTLEMENT RECOVERY.**

<div align="center">

ACCURATE CLAIMS PROCESSING TAKES TIME.

THANK YOU FOR YOUR PATIENCE.

**REMINDER CHECKLIST**

</div>

1. Please check to make sure you have answered all of the questions on the Claim Form.

2. Please sign and date above under penalty of perjury.

3. Remember to enclose copies of all required supporting documentation.

4. Keep a copy of the completed Claim Form and supporting documentation for your records.

5. If you desire an acknowledgment of receipt of your Claim Form, please use a form of mailing that will provide you with a return receipt.

6. If you move, or if the Notice of Settlement was sent to you at an old or incorrect address, please provide us with your new address.

7. If you have any questions, contact the Settlement Administrator by calling 1-855-649-5968, by email at info@pexsystemsettlement.com, or by writing to:

<div align="center">

PEX System Settlement
ATTN: CLAIMS
PO BOX 58086
1500 JFK Blvd, Suite C31
Philadelphia, PA 19102

</div>

Jeffrey Paul Palmer
700 West Walnut Street
Nocona, Texas 76255

My name is Jeffrey Palmer. I am a general contractor, and have considerable experience in performing construction jobs on homes, including installation and repair of plumbing. From 1993 until 2004, I worked as a general contractor in San Diego and Sacramento, California. Part of my overall work as a contractor included installing and repairing plumbing.  Having spent over 10 years as a contractor working with insurance companies with water damage claims, I have learned to make note of what causes leaks in a water damage situation.  I have also worked as an adjuster in catastrophe claims. Additionally, I have worked as a contractor in Nocona, Texas from 2004 until present, and my work also includes plumbing work.

In 2014 and 2015 I was a general contractor and operated under the business name, Classic Construction & Remodeling in Nocona, Texas. I no longer operate under that business name.

In early 2014, I purchased a home at 102 Northcott Street, Nocona, Texas 76255 as a rental property. After purchasing the home, I purchased NIBCO Pex tubing and yellow brass fittings and installed them in the third bathroom of the house. I specifically recall the yellow brass fittings with the word NIBCO stamped on them, and I used them at the joints in the PEX tubing. I do not recall the fittings stamped with interlocking ovals or stamped DR as depicted on the settlement website.

In October 2014, a few months after putting in the plumbing, I learned there had been a leak in the bathroom where the NIBCO tubing and fittings were installed. I'm not certain exactly when the leak occurred since I was renting out the property to a tenant. The leak damaged the drywall and water ran under the vanity, damaging the flooring and the vanity cabinet.  There was also a leak in the wall where the shower valve was installed, which damaged the drywall and allowed mold to grow in the wall.  The shower had to be replaced in order to repair the damage. I recall seeing the leaking yellow brass fittings with the NIBCO insignia on them after removing drywall behind the vanity and the wall at the side of the shower.

Based on my personal knowledge, as described above, the NIBCO Fittings as defined in the Class Notice were used in the property. Attached to this letter is a true and correct copy of a receipt from Nocona Building Center, which includes the purchase of some Pex Tubing and Fittings. I am not certain if this is the receipt for the fittings that leaked, but it was from that time period that the defective fittings were installed. Also attached to this letter is an invoice from Classic Construction & Remodeling from October 18, 2014, (produced at that time for tax purposes for the rental properties) which documents the expense incurred for the damage caused from the leak.

February 27, 2019

Jeffrey Palmer



# NOCONA BUILDING CENTER, INC

### 401 CLAY STREET • NOCONA, TEXAS 76255
### PHONE (940) 825-4824
### FAX (940) 825-4021

Page 1                 **\*\*\*\*\*\*\* INVOICE \*\*\*\*\*\*\*\***                Invoice # 010088975

| SPECIAL : | | |
|---|---|---|
| INSTR : | | |

TIME: 07:43:12
SHIP: 11/07/14
INVOICE: 11/07/14
DUE DATE: 12/10/14

SALESMAN : arry D Robertso    NUMBER TDR    ACCTS/P :        ORDERED BY :

SOLD :
TO: CLASSIC CONS.                                    SHIP :         T   2      f:2159
: 700 WEST WALNUT                                    TO JEFF
: NOCONA, TX 76255                                   :
                                                     :

CUSTOMER NO: 0002267    JOB : 00001    CUSTOMER P.O. :        PUR:        SHIP VIA:

| LN | ORDER | SHIP | L | U/M | U-PRICE | ITEM NUMBER | DESCRIPTION | UNITS | C | PRICE | EXTENSION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2.00 | 2.00 | L | EACH | 4.84 | 20402240 | 1/2 X 3/8 CDMP ANGL S. VLV 41248 | 2.000 | EACH | 4.840 | 9.68 |
| 2 | 2.00 | 2.00 | L | EACH | 2.26 | 20401870 | 3/4X1/2X1/2"BRASS PEX TEE 41158 | 2.000 | EACH | 2.264 | 4.53 |
| 3 | 1.00 | 1.00 | L | EACH | 5.89 | 20400010 | A-12-20R 1/2 X 20' BLUE PEX TUBING | 1.000 | EACH | 5.890 | 5.89 |
| 4 | 1.00 | 1.00 | L | EACH | 10.29 | 20400025 | A-34-20R 3/4 X 20'RED PEX TUBING | 1.000 | EACH | 10.290 | 10.29 |

LOADER--------------    CHECKER--------    DRIVER----------    WEIGHT:    0 lbs

T.B.F.        0.00

10088975

| | | |
|---|---|---|
| FREIGHT | | SALES TOTAL   $30.39 |
| TAXABLE TOTAL | 30.39 | MISC + FRGT |
| NONTAXABLE TOTAL | 0.00 | SALES TAX   2.51 |
| | | TOTAL   $32.90 |

TAX NO.

TERMS:  MONTHLY CLOSING DATE IS LAST DAY OF MONTH.  ANY CHARGES OR PAYMENTS MADE AFTER CLOSING DATE WILL SHOW ON NEXT MONTHS STATEMENT.
ALL CHARGES ARE DUE AND PAYABLE BY 10TH OF NEXT MONTH FOLLOWING DATE OF PURCHASE.
ANY AMOUNT NOT PAID BY THIS DATE IS CONSIDERED PAST DUE AND WILL HAVE THE MAXIMUM LEGAL INTEREST APPLIED TO THE ACCOUNT.



"We take old-fashioned pride in our work!"

REPAIRS - RESTORATION - RECONSTRUCTION

PO Box 601 - Nocona, TX 76255  -  Phone (940) 232-1017

# Invoice

**Customer:** Jeff Palmer

**Job:** 102 Northcott st
Nocona TX, 76255

**DATE:** October 18, 2014

Repair damage to bathroom due to leaking fittings in wall

| | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| | | **Bathroom repairs** | | $        - |
| 3 | rough | Plumbing rough in | $    75.00 | $      225.00 |
| 1 | | remove & reset shower | $   350.00 | $      350.00 |
| 1 | | vanity & sink | $   375.00 | $      375.00 |
| 1 | | Flooring - vinyl | $   285.00 | $      285.00 |
| 1 | | Drywall repair | $   320.00 | $      320.00 |
| 1 | | Paint | $   157.00 | $      157.00 |
| 25 | hr | Labor | $    25.00 | $      625.00 |
| | | | | $        - |
| | | **Total repairs** | | $    **2,337.00** |

Exhibit 1-B

**jeff@classicdesignworks.com**

| | |
|---|---|
| **From:** | jeff@classicdesignworks.com |
| **Sent:** | Wednesday, February 27, 2019 8:57 AM |
| **To:** | 'info@pexsystemsettlement.com' |
| **Subject:** | claim form |
| **Attachments:** | claim form final.pdf |

Gentlemen,

Attached please find a completed claim form with supporting documentation for the class action settlement referenced.

If you could please confirm your receipt of this information, it would be appreciated.

Thank you,

Jeff Palmer

# EXHIBIT 2

Case 1:17-md-02800-TWT Document 634-2 Filed 02/27/19 Page 296 of 133 PageID: 17304

Caption of Cases in Which Christopher Bandas, Robert Clore, and/or the Bandas Law Firm, P.C. have Represented Class Members in Filing an Objection to a Class Action Settlement.[1]

1. In re Baby Products Antitrust Litig. et al. 2-06-cv-00242, United States District Court, Eastern District of Pennsylvania. Represented client on appeal who filed pro se objection below. Court of Appeals vacated the approval of the settlement and award of attorneys' fees. 708 F.3d 163, 181-82 (3d Cir. 2013).

2. In re Optical Disk Drive Products, 10-2143, United States District Court, Northern District of California, two objections overruled by the district court and pending on appeal in the Ninth Circuit; in the third objection pending before the district court, the court on February 21, 2019 unsealed a fee bid (court unsealed one page) consistent with objection, and denied class counsel $650,268.62 in expenses to account for client's objection that class counsel had already been dramatically overpaid under their bid used to secure class counsel status. Objection otherwise overruled.

---

[1] This represents all of the cases in which Mr. Bandas, Robert Clore, and/or the Bandas Law Firm have represented class members in filing an objection to a class action settlement, to the best of their recollection and after reviewing their records, performing searches on Pacer, and looking on www.serialobjector.com. It should also be noted that Mr. Clore was not associated with the Bandas Law Firm until 2016; thus he was not associated with the vast majority of the listed objections. Mr. Clore never represented an objecting class member before his employment with Bandas Law Firm, P.C. If any objection is omitted from this list, it is because a lack of recollection or record of having objected in any other cases. Due to a server malfunction at the Bandas Law Firm, P.C. that occurred during the summer, 2017, Mr. Bandas' office lost a considerable amount of records. As such, it is possible that there may be objections not listed which Objector's counsel were unable to recall and which did not appear in their records. Any omission is wholly inadvertent and counsel will take immediate steps to supplement this disclosure should any such discrepancies come to the attention of counsel.

3. In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, 05-md-1720, United States District Court, Eastern District of New York. Objection overruled. Court of Appeals vacated certification and reversed approval of the settlement.

4. Dennis v. Kellogg Co., 3-09-cv-01786, United States District Court, Southern District of California. Represented client on appeal who filed pro se objection below. Ninth Circuit reversed the district court's order approving the settlement, and vacated the judgment and award of attorneys' fees.

5. In re Lithium Ion Batteries Antitrust Litigation, 13-md-02420, United States District Court, Northern District of California. District court reduced class counsels' fees from 25% to 10% consistent with objection of client; objection otherwise overruled.

6. Jeffrey A. Thomas v. Dun and Bradstreet Credibility Corp, 15-cv-03194, United States District Court, Central District of California. District court cut class counsels' attorneys' fees from 30% to 27% for the benefit of the class, consistent with objection; objection otherwise overruled.

7. Boise v. Ace American Insurance, 15-21264, United States District Court, Southern District of Florida. District court overruled objection after class counsel responded with lodestar material requested by objector.

8. Edwards v. National Milk Producers Federation, 11-cv-04766, United States District Court, Northern District of California. Class counsels' attorneys' fees reduced by $4.3 million for the benefit of the class, consistent with client's objection; objection otherwise overruled. Appeal dismissed.

9. Birchmeier v. Caribbean Cruise Line, 12-cv-04069, United States District Court, Northern District of Illinois. Trial court reduced class counsels' fee between $3-$6 million, depending on the results of the claims process, directly benefitting the class; otherwise objection overruled. Affirmed on appeal.

10. Douglas v. The Western Union Company, 14-cv-01741, United States District Court, Northern District of Illinois. Class counsels' fees reduced by $2.4 million consistent with objection; objection otherwise overruled.

11. Rawa, et al. v. Monsanto Co., 4:17-cv-01252. Fees reduced by around $1 million consistent with objection; objection otherwise overruled. Pending on appeal.

12. Duncan v. JPMorgan Chase Bank 14-cv-00912, United States District Court, Western District of Texas. Trial court reduced class counsels' attorneys' fees by $1.2 million for the benefit of the class, consistent with the objection of client. Objection otherwise overruled. Appeal dismissed.

13. Abante Rooter and Plumbing, Inc. v. Pivotal Payments Inc., 3:16-cv-05486-JCS, United States District Court, Northern District of California. Trial court reduced class counsels' fees by $450,000 for the benefit of the class, consistent with the objection of the client. Court also ordered class counsel to produce financial records justifying settlement to objecting class member for inspection. Objection otherwise overruled; appeal dismissed.

14. Saltzman v. Pella Corporation, 06-cv-04481, United States District Court, Northern District of Illinois, Eastern Division. Objection filed to the first settlement resulted in reversal of settlement approval by the Seventh Circuit. Objection to the second settlement pending before the district court as of February 15, 2019.

15. In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing and Sales Practice Litigation, MDL No. 1:16MD2743, United States District Court, Eastern District of Virginia. Trial court reduced class counsels' fees by around $1 million for the benefit of the class; objection otherwise overruled. Appeal pending.

16. Farnham v. Caribou Coffee Company, Inc., 16-CV-00295-wmc, United States District Court, Western District of Washington. Trial court reduced fees by around $100,000 but otherwise overruled objection. Appeal dismissed.

17. Cross v. Wells Fargo, 15-1270, United States District Court, Northern District of Georgia. Trial court reduced class counsels' fees by around $500,000 for the benefit of the class but otherwise overruled objection.

18. In re LivingSocial Marketing and Sales Practices Litigation, 11-mc-00472, United States District Court, District of Columbia. Fees reduced from $3 million to $1.3 million consistent with objection; objection otherwise overruled; appeal dismissed.

19. Fraley et al v. Facebook, 11-cv-01726, United States District Court, Northern District of California. Objection overruled, affirmed on appeal with one dissent.

20. Medeiros v. HSBC, Case No. 12-885, 15-9093, United States District Court, Central District of California. Objection overruled; appeal dismissed.

21. In re Nutella Marketing & Sales Practices, 11-1086, United States District Court, District of New Jersey (Wolfson, J.). Objection overruled, represented client on appeal, appeal dismissed as part of agreement for withdrawal of motion for sanctions against Mr. Bandas and client.

22. Markos v. Wells Fargo Bank, 15-cv-01156, United States District Court, Northern District of Georgia. Objection overruled.

23. Williamson v. McAfee, 14-cv-00158, United States District Court, Northern District of California. Objection overruled. Appeal dismissed.

24. Cipro Cases I & II, Judicial Council Coordination Proceeding Nos. 4154 and 4220, Superior Court of San Diego, objection overruled, appeal dismissed for lack of jurisdiction.

25. In re Syngenta AG MIR 162 Corn Litigation, Master File No. 2:14-MD-02591-JWL-JPO, MDL No. 2591, United States District Court for the District of Kansas, objection overruled, pending on appeal.

26. Farrell, et al. v. Bank of America, N.A., 3:16-cv-00492, United States District Court, Southern District of California. Objection overruled. Pending on appeal.

27. Jabbari, et al. v. Wells Fargo & Co. and Wells Fargo Bank, N.A., 15-cv-02159, United States District Court, Northern District of California, objection overruled, pending on appeal.

28. McKnight, et al. v. Uber Technologies, 3:14-cv-05615, United States District Court, Northern District of California. Objection pending before the district court.

29. Siciliano, et al. v. Apple, Inc., 2013-1-CV-257676, Superior Court of California, County of Santa Clara. Objection overruled; appeal dismissed.

30. Farenth v. Walmart Stores, Inc., G.D. 13-11472, Court of Common Pleas, Allegheny County, Pennsylvania. Objection overruled.

31. Schwartz v. Avis, No. 11-4052, United States District Court, District of New Jersey. Objection overruled. Appeal dismissed.

32. Sanborn v. Viridian Energy, 3:14-cv-01731, United States District Court, District of Connecticut. Objection overruled.

33. Perkins v. Linkedin, 13-4303 (N.D. Cal); 16-15430, United States Court of Appeals, Ninth Circuit. Appeared on appeal. Appeal dismissed.

34. In re: Automotive Parts Antitrust Litigation, 12-2311, 13-903, 13-1003, 13-2203, United States District Court, Eastern District of Michigan, objection overruled, appeal dismissed.

35. Chambers v. Whirlpool, Case No. 8:11-cv-01733, United States District Court, Central District of California, objection overruled, appeal pending in the Ninth Circuit.

36. Ebarle et al v. Lifelock, Inc., Case No. 3-15-cv-258, United States District Court, Northern District of California. Objection overruled; appeal dismissed.

37. In re Life Time Fitness, Inc TCPA Litigation, 14-md-02564, United States District Court, District of Minnesota. Objection overruled. Affirmed on appeal.

38. In re National Football League Players' Concussion Injury Litigation, 12-md-02323, United States District Court, Eastern District of Pennsylvania. Objection overruled. Affirmed on appeal.

39. Sanchez-Knutson v. Ford Explorer, United States District Court, Southern District of Florida, 14-61344. Objection overruled. Appeal dismissed.

40. Clark v. Gannett, 16 CH 06603, Circuit Court, Cook County Illinois; objection struck as contempt for objector failing to appear for hearing; appeal dismissed for lack of jurisdiction.

41. In re: Blue Buffalo Company LTD. Marking and Sales Practices Litigation, 14-md-2562, United States District Court, Eastern District of Missouri. Objection overruled; affirmed on appeal.

42. In re Cathode Ray Tube (CRT) Antitrust Litigation, Case No. 07-cv-05944, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

43. In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation, Case No. 10-ml-02151, United States District Court, Central District of California. Objection overruled. Represented objector on appeal; appeal dismissed.

44. In re NetFlix Privacy Litigation, Case No. 11-cv-00379, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

45. Franklin v. Wells Fargo Bank, Case No. 14-cv-02349, United States District Court, Southern District of California. Objection overruled.

46. Garrett Kacsuta v. Lenovo (United States), Case No. 13-cv-00316, United States District Court, Central District of California. Objection overruled.

47. Roberts v. Electrolux Home Products, Case No. 12-cv-01644, United States District Court, Central District of California. Mr. Bandas did not appear on behalf of objector, but involved in the objection. Objection withdrawn.

48. In re Bank of America Credit Protection Marketing & Sales Practices Litigation, United States District Court, 11-md-02269, Northern District of California. Objection overruled, appeal dismissed.

49. Montanez v. Gerber Childrenswear, Case No. 09-cv-07420, United States District Court, Central District of California. Objection overruled; represented client on appeal; appeal dismissed.

50. Garber, et al. v. Office of the Commissioner of Major League Baseball; Case No. 12-cv-03704, United States District Court, Southern District of New York. Objection withdrawn, appeal withdrawn. Court admonishes Mr. Bandas in an order denying sanctions.

51. In Re Dynamic Random Access Memory (DRAM) Litigation, Case No. 02-md-01486, United States District Court, Northern District of California. Objection withdrawn, appeal dismissed.

52. Cooper v. Aetna Health; Case No. 2:07-cv-03541, United States District Court, District of New Jersey. Objection never ruled on and settlement approval not granted because number of opt-outs exceeded the cap.

53. Dennings v. Clearwire Corporation, 10-cv-01859, United States District Court, Western District of Washington. Objection overruled. Summary affirmance granted. Pro hac vice admission of Christopher Bandas in the Western District of Washington rescinded on account of paying appellate bond after district court ordered deadline.

54. Fauley et al v. Metropolitan Life, Storick, 14 CH 1518, Circuit Court, Lake County Illinois. Objection overruled, appeal dismissed

55. Doherty v Hertz, 10-cv-00359, United States District Court, District of New Jersey. Objection overruled.

56. Gehrich v. Chase Bank, 12-cv-05510, United States District Court, Northern District of Illinois. Objection overruled, appeal dismissed

57. Wilkins v HSBC Bank  Nevada NA et al, 14-cv-00190, United States District Court, Northern District of Illinois. Objection overruled, appeal dismissed.

58. In re Hydroxycut Mktg. & Sales Practices Litig., 09-cv-1088, United States District Court, Southern District of California. Mr. Bandas did not appear on behalf of objector, but involved in the objection. District court struck objection for lack of standing and denied sanctions as to Mr. Bandas.

59. Poertner v. The Gillette Company, 12-cv-00803, United States District Court, Middle District of Florida. Objection overruled, appeal dismissed.

60. Smith et al v. Intuit, 12-cv-00222, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

61. Hamilton v. Suntrust Mortgage Inc et al, 13-cv-60749, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed.

62. Embry v. Acer America Corp., 09-01808, United States District Court, Northern District of California. Objection filed by Christopher Bandas stricken, appeal dismissed. Civil contempt order issued against Mr. Bandas for failing to comply with district court's appeal bond order. Contempt order ultimately vacated.

63. Franklin v. Wells Fargo Bank, 14-cv-02349, United States District Court, Southern District of California. Objection overruled, no appeal filed.

64. Hall v. Bank of America, N.A. et al, 12-cv-22700, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed.

65. Fladell v. Wells Fargo Bank, 13-cv-60721, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed

66. In re American International Group, Inc, 2008 Securities Litigation 08-cv-04772, United States District Court, Southern District of New York. Objection overruled, appeal dismissed.

67. In re Capital One Telephone Consumer Protection Act Litigation, 12-cv-10064, United States District Court, Northern District of Illinois. Objection overruled, appeal dismissed

68. Brody v. Merck & Co, Inc, 12-cv-04774, United States District Court, District of New Jersey. Objection overruled, appeal dismissed.

69. Rossi v. The Proctor & Gamble Company, 11-cv-07238, United States District Court, District of New Jersey. Objection overruled, represented client on appeal, appeal dismissed.

70. David Wolf et al v. Red Bull GMBH et al, 13-cv-08008, United States District Court, Southern District of New York. Final order does not address objection, appeal dismissed.

71. Nwabueze v. AT&T, 09-cv-01529, United States District Court, Northern District of California. Objections overruled, appeal dismissed.

72. In re Wal-Mart Wage and Hour Employment Practices Litig., 2:06-cv-00225, United States District Court, District of Nevada. Objection overruled, appeal dismissed. Civil contempt order issued for failing to comply with appeal bond order. Contempt order ultimately vacated.

73. In re Certainteed Fiber Cement Siding Litigation, 11-md-02270, United States District Court, Eastern District of Pennsylvania. Objection overruled, appeal dismissed.

74. Allen v. JPMorgan Chase Bank, 13-cv-08285, United States District Court, Northern District of Illinois. Objection overruled, appeal dismissed.

75. Rose v. Bank of America Corporation, 11-cv-02390, United States District Court, Northern District of California. Objection overruled.

76. In re Apple In-App Purchase Litigation, 11-cv-01758, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

77. Stroud v. eMachines Inc., Case No. CJ-2003-968-L, U.S. District Court, Cleveland County, State of Oklahoma. Objection overruled, objection dismissed.

78. Wright v. Nationstar Mortgage, 14-cv-10457, United States District Court, Northern District of Illinois. Objection withdrawn.

79. Mehigan v. Ascena Retail Group 15-cv-00724, United States District Court, Eastern District of Pennsylvania. Objection overruled, appeal dismissed.

80. Wilson v. Everbank 14-cv-22264, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed.

81. Bodnar v. Bank of America, 14-cv-03224, United States District Court, Eastern District of Pennsylvania. Objection overruled, appeal dismissed.

82. Beck v. Harbor Freight, 15CV00598, Court of Common Pleas, Lake County Ohio. Objection overruled, appeal dismissed

83. In re Electronic Books Antitrust Litigation, No. 11-md-02293 (DLC), Southern District of New York. Objection overruled, no appeal filed.

84. Largess v. U.S. Banks, 14-21252, United States District Court, Southern District of Florida. Objection withdrawn.

85. Circeo-Loudon et al v. Green Tree Servicing, 14-cv-21384, United States District Court, Southern District of Florida. Objection withdrawn.

86. Arnett v. Bank of America, 11-CV-01372, United States District Court, District of Oregon. Objection overruled, appeal dismissed

87. In re: Takata Airbag Product Liability Litigation, Master File No. 15-MD-02599, S.D. Fla. Case No. 1:14-cv-24009, United States District Court, Southern District of Florida. Objection overruled, appeal dismissed.

88. Beringer, et al. v. Certegy Check Services, Inc., 8:07-CV-01657-SDM-MSS, 8:07-CV-01434-SDM-TGW, United States District Court, Middle District of Florida. Objection withdrawn.

89. Bokhyun Yoo v. Wendy's International, 2:07-cv-04515-FMC-JC, United States District Court, Central District of California. Objection overruled, appeal dismissed.

90. In re TFT-LCD (Flat Panel) Antitrust Litigation, 3:07-MD-1827, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

91. In re Pre-filled Propane Tank Marketing and Sales Practices Litigation, Master Case No. 09-2086-MD-W-GAF, United States District Court, Western District of Missouri. Objection overruled, appeal dismissed.

92. Hartless v. Clorox Company, 06-cv-02705, United States District Court, Southern District of California. Objection overruled, represented client on appeal, affirmed.

93. Herfert v. Crayola, 11-cv-01301, United States District Court, Western District of Washington. Objection withdrawn, appeal dismissed.

94. Hohenberg v. Ferrero USA, Inc, 11-cv-00205, United States District Court, Southern District of California. Objection overruled, represented client on appeal, affirmed.

95. Ko v. Natura Pet Products, 09-cv-02619, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

96. Walker v. Discover Financial Services, Inc., 10-cv-06994, United States District Court, Northern District of Illinois. Objection overruled, represented client on appeal, appeal dismissed.

97. Milliron v. T Mobile, 08-cv-04149, United States District Court of New Jersey. Objection overruled, appeal dismissed.

98. Adams. AllianceOne Receivables Management, 08-cv-00248, United States District Court, Southern District of California. Objection overruled, appeal dismissed.

99. In re Apple iPhone 4 Products Liability Litigation, 10-md-02188, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

100.   In re Google Buzz Privacy Litigation, 10-cv-00672, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

101.   Chavez v. Blue Sky Natural Beverage Company, 06-cv-06609, United States District Court, Northern District of California. Objection overruled, appeal dismissed.

102.   Kambiz Batmanghelich v. Sirius XM Radio, 09-cv-09190, United States District Court, Central District of California. Objection rejected as untimely, appeal dismissed.

103. In re: Reebok Easytone Litigation, 10-cv-11977, United States District Court for Massachusetts. Objection overruled.

104. Vergara v. Uber Technologies, 15-cv-06942, United States District Court, Northern District of Illinois. Objection overruled, represented client on appeal, appeal dismissed.

105. Thomas Jackson v. Petrohawk Energy Corp. Shareholder Litig., No. 1142124, 129th District Court, Harris County, Texas. Objection overruled, appeal dismissed by First District Court of Appeals, Texas.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

KIMBERLY COLE, ALAN COLE,    :
JAMES MONICA, LINDA BOYD,    :
MICHAEL MCMAHON, RAY    :    Civil Action No.: 13-cv-7871(FLW)(TJB)
SMINKEY, JAMES MEDDERS, JUDY    :
MEDDERS, ROBERT PEPERNO,    :
SARAH PEPERNO, and KELLY    :
MCCOY, on behalf of themselves and all    :
others similarly situated,    :
   :
       Plaintiffs,    :
   :
       v.    :
   :
NIBCO, Inc.,    :
   :
       Defendant.    :

---

## PLAINTIFFS' OPPOSITION TO *PRO HAC VICE* MOTION OF CHISTOPHER A. BANDAS AND HIS LAW FIRM, BANDAS LAW PC, AND BANDAS' ASSOCIATE, ROBERT CLORE

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com
scruzhodge@litedepalma.com

***Counsel for Plaintiffs***

[Additional Counsel listed on signature page]

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTORY STATEMENT .............................................................................1

FACTUAL BACKGROUND .....................................................................................1

     A.     Longstanding Concerns About Professional Objectors ...........................................1

     B.     Mr. Bandas' Notorious Track Record....................................................................1

          1.     Mr. Bandas' history of delaying settlements to extort fees with no corresponding benefit to the class.................................................................1

          2.     Mr. Bandas' prior abuses of the *pro hac vice* process and his clients .........2

          3.     Mr. Bandas' relationship with suspended objector lawyer Joseph Darrell Palmer, the brother of Mr. Bandas' objector client, Jeffrey Palmer ...........5

ARGUMENT...............................................................................................................6

THE COURT SHOULD DENY PRO HAC VICE ADMISSION TO MR. BANDAS AND HIS ASSOCIATE.............................................................................................6

CONCLUSION...........................................................................................................8

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Brown v. Wal-Mart*,
No. 01-L-85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009) ................................2, 3

*Chambers v. Whirlpool*,
Case No. 8:11-cv-01733-FMO (C.D. Cal.)....................................................................3, 5

*Dennings v. Clearwire Corp.*,
928 F. Supp. 2d 1270 (W.D. Wash. 2013)..........................................................................4

*Garber v. Office of the Comm'r of Baseball*,
No. 12-cv-3704 (S.D.N.Y. Feb. 27, 2017)......................................................................3, 4

*In re Baby Products Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013).................................................................................................4

*In re Cathode Ray Tube Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012).........................................................................................2

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. Nov. 22, 2011) ................................................................2

*In re Gen. Elec. Co. Sec. Litig.*,
2014 WL 534970 (S.D.N.Y. Feb. 11, 2014)........................................................................2

*In re Hydroxycut Marketing & Sales Practices Litigation*,
2013 WL 5275618 (S.D. Cal. Sept. 17, 2013).....................................................................2

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
2014 WL 815394 (S.D. Cal. Mar. 3, 2014) .........................................................................2

*Jacob v. National Railroad Passenger Corp.*,
63 Fed. Appx. 610 (3d Cir. 2003) .......................................................................................7

*Kohlmayer v. National Railroad Passenger Corp.*,
24 F. Supp. 2d 877 (D.N.J. 2000) ....................................................................................6, 7

*O'Keefe v. Mercedes-Benz United States, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003)..........................................................................................1

*Thoma v. A.H. Robins Co.*,
100 F.R.D. 344 (D.N.J. 1983)...........................................................................................7, 8

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J 2005) ............................................................................................1


## **OTHER AUTHORITIES**

Alison Frankel, *The Ted Frank Interview*, Reuters, June 25, 2015 ..................................................2

John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors:*
    *What to Do About Them?*, 39 Fla. St. U. L. Rev. 865, 866 (2012) ....................................1

# INTRODUCTORY STATEMENT

This Court should deny the requests for *pro hac vice* admission of Christopher Bandas and his associate, Robert Clore, of Bandas Law Firm PC.  ECF Nos. 182, 183.  Based on a track record that spans decades, neither Mr. Bandas nor his firm meets the minimum standards to practice before this Court.

# FACTUAL BACKGROUND

## A.    Longstanding Concerns About Professional Objectors

More than ten years ago, this Court stated that "federal courts are increasingly weary of professional objectors" in class actions.  *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J 2005), *quoting O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).  Chief Judge Smith of the Third Circuit has recognized that there is "a cottage industry of so-called professional objectors: attorneys who oppose settlements on behalf of non-named class members and threaten to file meritless appeals of the final judgment merely to extract a payoff."  John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 Fla. St. U. L. Rev. 865, 866 (2012).  Due to these concerns, Fed. R. Civ. P. 23(e)(5) was recently amended in an attempt to control such abuses.

## B.    Mr. Bandas' Notorious Track Record

### 1.    Mr. Bandas' history of delaying settlements to extort fees with no corresponding benefit to the class

Mr. Bandas is perhaps the most notorious serial objector who engaged in such abusive practices.  Courts across the country have recognized that Mr. Bandas is a grifter who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain…[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit

to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are

not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing."

*In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 & n. 3 (N.D. Cal. 2012), *quoting In*

*re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. Nov. 22,

2011) (internal quotations omitted).[1]

      Mr. Bandas' history of abuse is so bad, in fact, that well-known ideological objector

Theodore Frank has disassociated himself from Mr. Bandas, having concluded that his tactics are

"'repugnant' and 'unethical.'"  Alison Frankel, *The Ted Frank Interview*, Reuters, June 25, 2015;

*see also* http://www.litigationandtrial.com/files/2015/06/Frank-Declaration.pdf  (reflecting that,

contrary to his promises upon associating with Mr. Frank, Mr. Bandas "settled" an appeal with

large cash payments to his objector client and himself with no corresponding benefit to the

class).

      **2.**      **Mr. Bandas' prior abuses of the *pro hac vice* process and his clients**

      Mr. Bandas previously engaged in a scheme of refraining from entering his appearance or

seeking *pro hac vice* admission in connection with class action objections for the specific

purpose of avoiding court sanctions.  *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*,

2014 WL 815394, at *3 (S.D. Cal. Mar. 3, 2014) (declining to impose Rule 11 sanctions for

---

[1] *Accord In re Hydroxycut Marketing & Sales Practices Litigation*, 2013 WL 5275618, at *5
(S.D. Cal. Sept. 17, 2013) (Mr. Bandas sought $400,000 to "make his objection go away—
otherwise, he could hold the settlement process up for two to three years through the appeal
process"); *Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85, Order Denying Objections to the
Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission at 2 (Ill. Cir.
Ct. 14th Cir. Oct. 29, 2009) (attached as Exhibit 1to the accompanying Declaration of Bruce D.
Greenberg) ("Bandas is a professional objector who is improperly attempting to 'hijack' the
settlement of this case from deserving class members and dedicated, hard working counsel,
solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'"); *In re Gen. Elec. Co. Sec.
Litig.*, 2014 WL 534970, at *9 (S.D.N.Y. Feb. 11, 2014) (citing some of Mr. Bandas' unsavory
history and labeling him "a known vexatious appellant").

improper objection because it was "doubtful whether the Court has jurisdiction to sanction Mr. Bandas," but threatening to refer Mr. Bandas "to the State Bar of Texas's Commission for Lawyer Discipline"); *Brown v. Wal-Mart*, No. 01-L-85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009) (Greenberg Decl., Exhibit 1)  (reflecting that in various cases "Bandas' local counsel appeared at the final fairness hearing but only to withdraw as counsel due to the fact that he could not in 'good conscience . . . continue to work toward the strategic objectives outlined . . . by Mr. Bandas" and "Bandas' co-counsel is being referred by the Iowa court to the Iowa Supreme Court's disciplinary committee").

In *Garber v. Office of the Comm'r of Baseball*, No. 12-cv-3704, ECF No. 608 at 9, 11-12 (S.D.N.Y. Feb. 27, 2017), Judge Valerie Caproni got fed up with that tactic.  She declined to sanction Mr. Bandas solely because she was not convinced she had jurisdiction over him, but held that  (1) Mr. Bandas "orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a payoff;" (2) Mr. Bandas "orchestrated" local counsel to "appear on various filings Bandas drafted or prepared behind the scenes" as part of his "machinations [] designed to avoid his professional responsibilities to the Court…"; (3) Mr.  Bandas' client "testified that in Bandas' numerous representations of him in objections to class action settlements, [Bandas' client] has never received funds from the settlement of any of his objections;" which (4) "…indicates that Bandas' settlement of objections has been without any benefit to his client … or to the class, supporting the conclusion that many, if not most, of the objections being raised by Bandas are not being pursued in good faith." *Id*.[2]

---

[2] Mr. Bandas' track record reflects he represents himself, not his clients.  In *Chambers v. Whirlpool*, Case No. 8:11-cv-01733-FMO (C.D. Cal.), Judge Fernando Olguin held: "The objection filed by attorney[]…Bandas… contradicts several statements made by their client and objector, Christine Knott, during her deposition," likely because the so-called client "never spoke with [Mr. Bandas' local counsel] Mr. Hanigan <u>or</u> Mr. Bandas before the objection was filed.  *Id*.,

Mr. Bandas' Certification in this Court, ECF No. No. 182-2, at 6-7, blandly states that Judge

Caproni "admonished" him in *Garber* but fails to provide a fair description of the drastic nature

and extent of Judge Caproni's admonition.[3]

And earlier this year, Judge Rebecca Pallmeyer of the United States District Court of the

Northern District of Illinois issued a permanent injunction against Mr. Bandas and The Bandas

Law Firm. *See* ECF No. 182-3. Among other things, the injunction found that The Bandas Law

Firm and Mr. Bandas (1) engaged in the unauthorized practice of law in Illinois by representing

an objector to a class action in Illinois, and (2) "agree[d] to resolve [the] objection in exchange

for $225,000 in attorneys' fees with no changes to the settlement agreement." Judge Pallmeyer

required Mr. Bandas to "immediately and unconditionally withdraw objections and filings

related thereto any and all objections now pending in Illinois state and federal courts…."

---

ECF No. 351, at 14 (emphasis in original). In *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. 2013), the court held: "Plaintiffs eventually deposed Mr. Morgan and Mr. De La Garza [both purported objectors represented by Mr. Bandas] and learned that Mr. Morgan had no personal objection to the settlement, neither of them had read the settlement agreement or their own objections to it, and both have worked with the same attorney on other class action cases." That court eventually "revoke[d] Mr. Bandas' authorization to practice in the Western District of Washington" after he failed to post a bond. *Dennings v. Clearwire Corp.*, No. 10-01859 (W.D. Wash. Aug. 20, 2013) (ECF No. 166). *See* ECF No. 182-2, at 5 (discussing *Dennings* ruling).

[3] Mr. Bandas' description of the over 100 cases in which he has previously objected (ECF No. 184-2) is similarly incomplete or misleading. For example, in connection with the very first case he cites, *In re Baby Products Antitrust Litig.*, he claims he "Represented client on appeal who filed pro se objection below. Court of Appeals vacated the approval of the settlement and award of attorneys' fees. 708 F.3d 163, 181-82 (3d Cir. 2013)." In fact, the Third Circuit noted that three objectors filed appeals, but only one of them, who was represented by Mr. Frank, not Mr. Bandas, filed briefing. *Id*. at 169 n.3. So Mr. Bandas has misled this Court by implying that he deserves credit for a result that other objector counsel got (and where he filed no brief either in the District Court or on appeal).

3.      Mr. Bandas' relationship with suspended objector lawyer Joseph
        Darrell Palmer, the brother of Mr. Bandas' objector client, Jeffrey
        Palmer

Perhaps unsurprisingly, Mr. Bandas' objector client in this case, Jeffrey Palmer, is the

brother of another notorious serial objector counsel, Joseph Darrell Palmer.  The California State

Bar Court suspended Joseph Darrell Palmer from the practice or law due to "three counts of

moral turpitude for the grossly negligent making of false statements in sworn affidavits filed in

federal class actions."  http://members.calbar.ca.gov/fal/Licensee/Detail/125147.  Objector

Jeffrey Palmer previously served as his brother Joseph Darrell Palmer's client in raising baseless

objections that resulted in no benefit to the class in another class action case.  *See* ECF No. 184,

at 9 n.6; https://www.serialobjector.com/cases/114 .

ECF No. 184 states, at 9 n.8, that Joseph Darrell Palmer "has no involvement" in the

instant objection.  But despite being suspended, Joseph Darrell Palmer filed objections in

*Chambers v. Whirlpool,* Case No. 8:11-cv-01733-FMO (C.D. Cal.), and thereafter engaged in

deceptive conduct, causing Judge Olguin to disqualify him and strike his clients' objections.  *See*

*Chambers*, ECF Nos. 243, 253, 298.  Notwithstanding his suspension, Joseph Darrell Palmer

also recently sued another notorious serial objector lawyer, Steven Helfand, seeking as

"attorneys' fees" $15,500 of a $35,000 payment they extorted to dismiss an appeal from the

denial of a frivolous objection filed in a class action against American Express (with no

corresponding benefit to the class).  Greenberg Decl., Exhibit 2.  Helfand is currently on inactive

status and the California State Bar filed a complaint against him and Joseph Darrell Palmer for

committing numerous acts "involving moral turpitude, dishonesty or corruption" in connection

with a class action against J.C. Penney.  http://members.calbar.ca.gov/courtDocs/17-O-

00411.pdf.  Joseph Darrell Palmer has jointly filed many objections with Mr. Bandas (and his

recently-hired associate Robert Clore).[4]  Given these facts, there can be no assurance that suspended lawyer Joseph Darrell Palmer "has no involvement" in the instant objection filed by his brother, or that that there are no agreements, tacit or otherwise, for Joseph Darrell Palmer to benefit from his brother's involvement here as an objector.

## ARGUMENT

## THE COURT SHOULD DENY PRO HAC VICE ADMISSION
## TO MR. BANDAS AND HIS ASSOCIATE

Admission *pro hac vice* is a privilege, not a right.  Local Civil Rule 101.1(c) provides: "Any member in good standing of the bar of any court of the United States or of the highest court of any state, who is not under suspension or disbarment by any court and is ineligible for admission to the bar of this Court under L.Civ.R. 101.1(b), <u>may in the discretion of the Court</u>, on motion, be permitted to appear and participate in a particular case" (emphasis added).  In *Kohlmayer v. National Railroad Passenger Corp.*, 124 F. Supp. 2d 877, 878 (D.N.J. 2000), Judge Politan stated that "the rule contemplates that Courts may deny admission *pro hac*

---

[4] *See* https://www.serialobjector.com/cases/61  (Joseph Darrell Palmer served as attorney for Mr. Bandas as objector; appeal dismissed while sanctions motion pending); https://www.serialobjector.com/cases/113 (Messrs. Bandas and Palmer co-counsel for objector Edmund Bandas; appeal dismissed with no benefit to class); https://www.serialobjector.com/cases/109 (Messrs. Bandas and Palmer co-counsel; Mr. Palmer's *pro hac vice* motion denied because he failed to disclose, under penalty of perjury, that he had been convicted of a felony and his temporary suspension by the Colorado, Arizona, and California bar); https://www.serialobjector.com/cases/82  (Messrs. Palmer and Bandas working together as counsel; Mr. Palmer representing his relative Paul Palmer); https://www.serialobjector.com/cases/211 (Messrs. Bandas, Clore and Palmer co-counsel; Mr. Palmer withdraws due to his suspension by the California State Bar).  Messrs. Bandas and Helfand have both filed objections in many of the same cases as well. https://www.serialobjector.com/persons/302.

*vice*, even though the applicant is not currently suspended or disbarred from the practice of law. The scope of discretion has been left to interpretation by the Courts." *Id*. at 879.

The question presented in *Kohlmayer* was "whether it is proper for this Court to consider evidence of past inappropriate, uncivilized, and unprofessional behavior by [the attorney seeking admission] in determining whether he should be permitted to practice before this Court." *Id*. at 879-880. Because Judge Politan found that the requesting attorney's track record was "replete with instances of grossly inappropriate, uncivilized, and unprofessional behavior," *id*. at 880, and that his antics "have not subsided," *id*. at 882, he held: "There must, however, be some point, some line at which an attorney's repeated, documented, instances of uncivilized behavior, whether or not rising to the level of a disbarable offense, strips him of the privilege of *pro hac vice* admission" and that the attorney's "conduct…has reached that point." *Id*. at 883; *see also Jacob v. National Railroad Passenger Corp*., 63 Fed. Appx. 610 (3d Cir. 2003) (affirming decision of Judge Bassler to deny *pro hac vice* admission to the same attorney as in *Kohlmayer*).

Mr. Bandas' conduct too has reached, and crossed, the line at which he should be denied *pro hac vice* admission. His conduct extends far beyond the "grossly inappropriate, uncivilized, and unprofessional behavior" justifying denial in *Kohlmayer*. He is a grifter who has abused the legal process, abused at least certain of his clients, and delayed the distribution of relief to millions of class members across the country by filing frivolous appeals, all in order to enrich himself with no corresponding benefit to the class.

*Kohlmayer* and *Jacob* are not the only cases in this District that have denied *pro hac vice* admission to an attorney with a checkered track record. In *Thoma v. A.H. Robins Co*., 100 F.R.D. 344 (D.N.J. 1983), Judge Brotman denied *pro hac vice* admission to <u>all counsel from the applicant law firm</u> where that firm had "continually thwarted the progress of the litigation," not

only in the case before Judge Brotman, but in at least one other case elsewhere. *Id*. at 348-49. Mr. Bandas's track record here exceeds that of the applicant lawyers in *Thoma*. As in *Thoma*, both he and his associate should be denied *pro hac vice* admission here.

## CONCLUSION

For the reasons set forth above, this Court should exercise its discretion and deny the *pro hac vice* motions of Mr. Bandas and his associate, Mr. Clore, and prohibit their firm from participating in this case or seeking or sharing in any fees from this case. To the extent Jeffery Palmer is a *bona fide* objector, and not simply a shill for Mr. Bandas, his local counsel, Ms. Gold, can effectively represent him.

Dated:  March 18, 2019

**LITE DEPALMA GREENBERG, LLC**

By:    _/s/ Bruce D. Greenberg_
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com
        scruzhodge@litedepalma.com

*Class Counsel*

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580
Facsimile: (610) 421-1326

*Co-Lead Class Counsel*

**BERGER MONTAGUE P.C.**
Lawrence Deutsch
Shanon J. Carson
Jacob M. Polakoff
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

*Co-Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Bruce D. Greenberg, hereby certify that on March 18, 2019, I filed the foregoing using

this Court's CM/ECF System which will send Notice to all counsel of record through the Court's

ECF system.

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com
scruzhodge@litedepalma.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, | Civil Action No.: 13-7871-FLW-TJB |
| Plaintiffs, | |
| v. | **DECLARATION OF BRUCE D. GREENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR *PRO HAC VICE* MOTION OF CHRISTOPHER A. BANDAS, HIS LAW FIRM, BANDAS LAW PC, AND BANDAS' ASSOCIATE, ROBERT CLORE** |
| NIBCO, Inc., | |
| Defendant. | |

Bruce D. Greenberg, of full age, being duly sworn upon his oath, declares as follows:

1.      I am an attorney at law of the State of New Jersey, and a member of the law firm of Lite DePalma Greenberg, LLC, attorneys for plaintiffs in this matter.  I have been one of the counsel for plaintiffs during the entirety of the litigation of this matter.

2.      I make this Declaration in Support of Plaintiffs' Opposition to the *Pro Hac Vice* Motion of Christopher A. Bandas and his law firm, Bandas Law PC, and Mr. Bandas' associate, Robert Clore.

1

3.      Attached as Exhibit 1 is a true and correct copy of an Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for *Pro Hac Vice* Admission in *Brown v. Wal-Mart*, No. 01-L-85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009).

4.      Attached as Exhibit 2 is a true and correct copy of a Contract–Amended Complaint in *John W. Davis v. Steven Helfand* (37-2018-22363CL-CO-CTL).

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  March 18, 2019

                                                                    */s/ Bruce D. Greenberg*
                                                                    Bruce D. Greenberg

2

# EXHIBIT 1

IN THE CIRCUIT COURT FOR THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND, ILLINOIS
ENERAL DIVISION

| | |
|---|---|
| LISA BROWN, CYNTHIA CAMP, an Illinois resident, and JOSEPH STANFIELD, an Illinois resident, on behalf of themselves and all others similarly situated, | Case No. 01 L 85 |
| Plaintiffs, | FILED in the CIRCUIT COURT OF ROCK ISLAND COUNTY GENERAL DIVISION |
| -v- | OCT 2 9 2009 |
| WAL-MART STORES, INC., a Delaware corporation, d/b/a WAL-MART Discount Stores, WAL-MART Supercenters and SAM's CLUB operating segments, | Clerk of the Circuit Court |
| Defendant. | |

### ORDER DENYING OBJECTIONS TO THE SETTLEMENT AND FEES AND THE MOTION TO INTERVENE AND FOR PRO HAC VICE ADMISSION

At the October 29, 2009 Fairness Hearing, this Court reviewed the five objections to the proposed Settlement filed with the Court. One of the objectors has also moved to intervene and her counsel has moved for admission *pro hac vice.*

The Court has considered the objections filed by Shyniea Smothers, Paul Haasz, Edward D. Heath, II, and Debra Jackson and finds them to be without merit for the reasons set forth in Plaintiffs' submissions in support of the Settlement.

The remaining objection (hereinafter, the "Bandas Objection") was filed by Ms. Jill Carlson, by attorney Alan Barinholtz. His co-counsel, Christopher Bandas (who has moved for admission pro hac vice), is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country. See Appendix filed by Class Plaintiffs as part of their submission in support of the proposed Settlement and the application for counsel fees and expenses ("Appendix") at Tabs 13-30.

 

The Court finds that out of 291,266 class members, there were only five objections timely filed with the Court. The Bandas Objection filed on behalf of Ms. Carlson is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' client. The record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees." Bandas has filed virtually identical, frivolous objections in South Carolina, Iowa, Missouri and Florida in settlements of similar wage and hour class actions against Wal-Mart.

In South Carolina, Bandas filed an objection and motion to intervene on behalf of a class member with the assistance of local counsel named Gasper Barr, III. Bandas represented to the court there that he had a pending motion for admission *pro hac vice* when, in fact, no such motion had been or ever was filed. Neither Bandas, Mr. Barr nor their client objector appeared at the South Carolina final fairness hearing. Judge Perry Buckner denied the objection and motion to intervene filed by Bandas and found that Bandas filed an untimely notice of appeal while still failing to file a *pro hac vice* motion. Appendix, Tab 15.

In Missouri, Bandas' local counsel appeared at the final fairness hearing but only to withdraw as counsel due to the fact that he could not in "good conscience....continue to work toward the strategic objectives outlined...by Mr. Bandas." Judge Midkiff entered separate orders nullifying the Bandas objection and denying his motion for

admission *pro hac vice*.  Appendix, Tab 19.  This did not dissuade Bandas from filing a
Notice of Appeal (with new local counsel) on July 2, 2009.

Most recently, in Iowa, Bandas and his co-counsel solicited a class member, Terry
Healy, to object to the class settlement and application for attorneys' fees and expenses
and to move to intervene in papers substantially similar to those filed here in Illinois.  *See
Mussmann et al. v. Wal-Mart Stores, Inc. et al.*, No. LACV-27486, Iowa District Court,
Clinton County, Order Regarding Terry Healy's Objection and Motion to Intervene, at ¶¶
2, 13 and 6-13 (Appendix, Tab 25).  At his deposition held on October 2, 2009, Mr.
Healy learned about Bandas' objections to the Wal-Mart class actions across the nation
for the first time.  *Id*. at ¶¶ 14-16.  As a result, Mr. Healy voluntarily withdrew his
objection with prejudice.  *Id*. at ¶¶ 16-17.  Bandas failed to appear at the hearing on his
"client's" motion to intervene.  By order dated October 13, 2009, the Iowa court found
that Bandas' objection in that case was withdrawn or otherwise denied or struck, and that
the motion to intervene was deemed moot or otherwise denied or struck for failure to
comply with the requirements of the Iowa Rules of Civil Procedure governing motions to
intervene.  Neither Bandas nor his client appeared at the final fairness hearing.  Bandas'
co-counsel is being referred by the Iowa court to the Iowa Supreme Court's disciplinary
committee.

In Florida, in *Ouellette v. Wal-Mart Stores, Inc.*, File No. 67-01-CA-326, Bandas
was one of a group of professional objectors that the Florida court found were "working
through collusion for their own benefit and not for the benefit of this class or their
clients."  The Florida court further found that all of the objectors' counsel -- including



Bandas — were engaged "in an effort to extort money from the class and/or class counsel. Appendix, Tab 27.

Apart from these Wal-Mart cases, Bandas has a history as a professional objector in other class actions cases:

- In *In re: Dynamic Random Access Memory Antitrust Litigation* filed in the Northern District of California, Bandas withdrew his objection after "further investigation," which revealed that Bandas wholly failed to adhere to his Rule 11 obligations to thoroughly investigate his client's claims. Appendix, Tab 29, Ex. A.

- In Miller County, Arkansas, attorney Bandas filed a canned objection in *Lane's Gifts and Collectibles, LLC v. Yahoo! Inc.* The court denied the objection. Attorney Bandas then appealed, but he withdrew the appeal 48 hours later. Appendix, Tab 29, Ex. B-D.

- In *Conroy v. 3M Corp.* in the U.S. District Court for the Northern District of California, Bandas submitted an objection that was "unfounded, and . . . unlikely to succeed." No. C 00-2810 CW, 2006 U.S. Dist. LEXIS 96169, at *10-11 (N.D. Cal. Aug. 10, 2006) (Tab 16). Further, the "objections were patently frivolous . . . [and] bore no particular relationship to the circumstances of the settlement . . . ." *Id.* at *11. As a result, the court ordered Bandas to post a $431,000 bond to pursue an appeal of the objection. *Id.* Not surprisingly, Bandas abandoned the appeal. Appendix, Tab 29, Ex. F.

- Most recently, in March 2009, Bandas withdrew an objection to a proposed settlement he filed in a class action pending in Oklahoma, *Sacket v. Great Plains*

*Pipeline Co, et al.* The withdrawal came only after counsel for the class vehemently opposed the objection, highlighting Bandas' history of filing canned objections at the last moment in an effort to extort attorneys' fees. Appendix, Tab 30.

The Court finds that a lack of involvement and participation by Ms. Carlson and her counsel, combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel. Though filed by two lawyers, the Bandas Objection offers nothing in the way of specific criticisms of the proposed Settlement. The content of the Bandas Objection demonstrates that neither Ms. Carlson nor her counsel has ever visited the settlement website or read the Stipulation of Settlement in this case. The Bandas Objection ignores the terms of the proposed Settlement before the court. The Bandas Objection offers no legal or factual support for its assertion that the claims deadline is "brief" or that the claims process is difficult. The Class Settlement Amount and the Floor are clearly laid out in the Stipulation of Settlement and in the Class Notice. Bandas' assertions regarding dissemination of Class Notice are also unfounded. The Stipulation of Settlement and the Preliminary Approval Order signed by the Court on July 1, 2009, lay out the form and method of notice and the Mulholland Declaration submitted by Class Counsel confirms that notice was effectuated in a manner that more than satisfies due process and the Illinois rules.

The Bandas Objection's complaints about "other" Wal-Mart settlements are irrelevant to the matter before this Court and the Bandas Objection offers no rationale or basis to the contrary. Each of the settlements to which he refers has been finally

Case 3:13-cv-07871-TWT Document 197-2 Filed 02/04/20 Page 137 of 246 PageID: 18783

Case 3:07-cv-05944-JST   Document 1062-1   Filed 03/01/12   Page 15 of 26
Case4:07-md-01819-CW   Document1386-20   Filed09/14/11   Page7 of 7

NOV/12/2009/THU 03:16 PM                                        P. 006

approved by the trial court before which such case was pending and, in virtually each

such instance, Bandas' "objections" have been rejected.

     In short, the Bandas Objection does not appear to be an effort to enhance the

value of the settlement.   It is short on specifics, is wholly devoid of evidence or

controlling authority, and fails to comply with the procedures ordered the Court for

properly objecting to the Settlement.   Moreover, it is clear that neither the objector nor

her counsel reviewed the Settlement Agreement or any of the voluminous pleadings and

appellate briefing that clearly reflect the complexities of this case, and the enormous

efforts expended by Class Counsel on behalf of the Class over the last eight years.[1]

     The Court therefore strikes the Bandas Objection for failure of proof, and failure

to demonstrate that the objector is acting on behalf of the Class.

     For the reasons set forth in Plaintiffs' submissions in opposition to the Carlson

motion to intervene and for the reasons set out in the record before this Court at the

Fairness Hearing, the Carlson motion to intervene and the Bandas motion for *pro hac*

*vice* admission are both denied.

Dated:      October 29, 2009

                                              Honorable Mark VandeWiele

---

[1]   In support of the objection, Bandas attached several documents that pertain
exclusively to *Salvas v. Wal-Mart Stores, Inc.*, Supreme Judicial Court, Commonwealth
of Massachusetts, SJC No. 10108. Bandas does not even attempt to explain the relevance
of these documents in the motion to intervene and objection he filed with this Court.

# EXHIBIT 2

**PLD-C-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| JOSEPH D. PALMER<br>208 VIA MORELLA<br>ENCINITAS, CA 92024<br><br>TELEPHONE NO: 619-985-1099  FAX NO. *(Optional)*: none<br>E-MAIL ADDRESS *(Optional)*: darrell.palmer@gmail.com<br>ATTORNEY FOR *(Name)*: IN PRO PER | FILED<br>CIVIL BUSINESS OFFICE 9<br>CENTRAL DIVISION<br><br>2018 MAY 24 P 4: 03<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 330 BROADWAY
MAILING ADDRESS:
CITY AND ZIP CODE: SAN DIEGO, CA 92101
BRANCH NAME: CENTRAL

PLAINTIFF: JOSEPH D.PALMER

DEFENDANT: JOHN W. DAVISand STEVEN F. HELFAND

☐ DOES 1 TO _____

| CONTRACT | |
|---|---|
| ☐ COMPLAINT | ☑ AMENDED COMPLAINT *(Number)*: one |
| ☐ CROSS-COMPLAINT | ☐ AMENDED CROSS-COMPLAINT *(Number)*: |

MAY 24 '18 PM 3:10

**Jurisdiction *(check all that apply)*:**
☐ ACTION IS A LIMITED CIVIL CASE
Amount demanded ☐ does not exceed $10,000
☑ exceeds $10,000 but does not exceed $25,000
☐ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
☐ from limited to unlimited
☐ from unlimited to limited

CASE NUMBER:
37-2018-000222363-CL-CO-CTL
22363

1. Plaintiff* *(name or names)*: Joseph D. Palmer

alleges causes of action against defendant* *(name or names)*:
JOHN W.DAVIS and STEVEN F. HELFAND  (both CALIFORNIA ATTORNEYS)
2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. a. Each plaintiff named above is a competent adult
   ☐ except plaintiff *(name)*:
   (1) ☐ a corporation qualified to do business in California
   (2) ☐ an unincorporated entity *(describe)*:
   (3) ☐ other *(specify)*:

   b. ☐ Plaintiff *(name)*:
   a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name *(specify)*:

   b. ☐ has complied with all licensing requirements as a licensed *(specify)*:
   c. ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant named above is a natural person
   ☐ except defendant *(name)*:      ☐ except defendant *(name)*:
   (1) ☐ a business organization, form unknown   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation         (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:    (3) ☐ an unincorporated entity *(describe)*:
   (4) ☐ a public entity *(describe)*:      (4) ☐ a public entity *(describe)*:
   (5) ☐ other *(specify)*:        (5) ☐ other *(specify)*:

* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Page 1 of 2

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PALMER V. DAVIS & HELFAND | 37-2018-000222363-CL-CO-CTL |

4.   *(Continued)*
  b. The true names of defendants sued as Does are unknown to plaintiff.
    (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named
        defendants and acted within the scope of that agency or employment.
    (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to
        plaintiff.
  c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.
  d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, **and**
  a. ☐ has complied with applicable claims statutes, *or*
  b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because
  a. ☑ a defendant entered into the contract here.
  b. ☐ a defendant lived here when the contract was entered into.
  c. ☑ a defendant lives here now.
  d. ☐ the contract was to be performed here.
  e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.
  f. ☐ real property that is the subject of this action is located here.
  g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

  ☑ Breach of Contract

  ☑ Common Counts

  ☐ Other *(specify):*

9. ☐ Other allegations:

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
  a. ☐ damages of: $ 15,500.00
  b. ☐ interest on the damages
    (1) ☑ according to proof
    (2) ☐ at the rate of *(specify):*     percent per year from *(date):*
  c. ☐ attorney's fees
    (1) ☐ of: $
    (2) ☑ according to proof.
  d. ☐ other *(specify):*

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 5/24/18

Joseph D. Palmer
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PALMER v. DAVIS | |

**FIRST** _____ **CAUSE OF ACTION—Breach of Contract**
(number)

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* JOSEPH D. PALMER

alleges that on or about *(date):* JUNE 16, 2016
a ☐ written ☑ oral ☐ other *(specify):*
agreement was made between *(name parties to agreement):*
PALMER, DAVIS & STEVEN HELFAND
☐ A copy of the agreement is attached as Exhibit A, or
☐ The essential terms of the agreement ☑ are stated in Attachment BC-1 ☐ are as follows *(specify):*

BC-2. On or about *(dates):* APRIL 12-30, 2018
defendant breached the agreement by ☐ the acts specified in Attachment BC-2 ☑ the following acts
*(specify):*

Since receiving the $35,000 into his trust account Helfand has, at the direction of Davis, refused to distribute any funds to PALMER, however both have ratified the Distribution by distributing funds to Brown, Ronan and Cassteel as directed.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4 ☑ as follows *(specify):*
$15,500

BC-5. ☐ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☐ according to proof.
BC-6. ☐ Other:

Page _____

Page 1 of 1

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

## PALMER V.DAVIS     **BC-1**

In june 2016 PALMER asked DAVISand STEVEN HELFAND  to jointly take over the representation and settlement negotiations in a class-action objection matter pending before the Northern District of Illinois district court and the Seventh circuit Court of Appeals; The district court case is titled Kaufman v.American Express

Davis and Helfand agreed to do so and FURTHER agreed to share the settlement equally with PALMER; DAVIS filed a notice of appearance, and together with Helfand participated in the Seventh Circuit mediation and settled the appeal; class counsel agreed to pay  $35,000, for the dismissal of the appeal filed by PALMER; plaintiff is informed and believes that such settlement agreement was memorialized in an email betweenDAVIS and class counsel

 The appeal was dismissed in 2016, and on or about April 12, 2018 class counsel wired $35,000 to Steven Helfand's client trust account.

Prior to Helfand receiving the $35,000 into his trust account,
the class member-Objector clients Heather Ronan and Jessica Casteel approved a distribution plan for the $35,000 settlement;  that written distribution approval, is attached here too as **ATTACHMENT BC-3.**

# ATTACHMENT BC-3. PALMERv. DAVIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED
CIVIL BUSINESS OFFICE 9
CENTRAL DIVISION

2018 MAY 24 P 4: 03

| | |
|---|---|
| SAUL M. KAUFMAN and KIMBERLY STEGICH, individually and on behalf of all others similarly situated; | ) ) ) 1:07-CV-01707 ) Judge Joan B. Gottschall |
| Plaintiffs, | ) ) |
| v. | ) SETTLEMENT DISTRIBUTION ) AGREEMENT |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC. | ) ) ) |
| Defendants. | ) |

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

Below is the breakdown of the settlement proceeds of Kaufman v. American Express:

| | |
|---|---|
| **Total Settlement Amount:** | **$35,000.00** |
| **Steven Helfand and John Davis, Attorneys** | **$15,500.00** |
| **Jeff Brown, Attorney** | **$ 3,000.00** |
| **Client Incentive Award: Heather Ronan** | **$ 500.00** |
| **Client Incentive Award: Jessica Casteel** | **$ 500.00** |
| **Darrell Palmer, Attorney** | **$15,500.00** |

Please sign below approving the disbursements. Your settlement check will be forwarded to you once we are in receipt of settlement funds and a fully executed Agreement.

**[SIGNATURES ON PAGE 2]**

1

Approved: January ___, 2017                    _____
                                               Steven Helfand

Approved: January ___, 2017                    _____
                                               John Davis

Approved: January ___, 2017                    _____
                                               Jeff Brown

                                               _____
                                               Heather Ronan

Approved: January ___, 2017                    _____
                                               Jessica Casteel

Approved: January ___, 2017                    _____
                                               Darrell Palmer

Approved: January ___, 2017

2

PLD-C-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PALMER v. DAVIS | 37-2018-000222363-C-CO-C |

SECOND      **CAUSE OF ACTION—Common Counts**
_(number)_

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):* JOSEPH D. PALMER

     alleges that defendant *(name):* DAVIS & HELFAND

     became indebted to    ☑ plaintiff    ☐ other *(name):*

a. ☐   within the last four years
     (1) ☐   on an open book account for money due.
     (2) ☐   because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. ☑   within the last ☑ two years   ☐ four years
     (1) ☑   for money had and received by defendant for the use and benefit of plaintiff.
     (2) ☐   for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff.
         ☐   the sum of $ $15,500
         ☐   the reasonable value.
     (3) ☐   for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
         ☐   the sum of $
         ☐   the reasonable value.
     (4) ☐   for money lent by plaintiff to defendant at defendant's request.
     (5) ☐   for money paid, laid out, and expended to or for defendant at defendant's special instance and request.
     (6) ☐   other *(specify):*

CC-2. $ _____ , which is the reasonable value, is due and unpaid despite plaintiff's demand,

     plus prejudgment interest   ☐ according to proof   ☐ at the rate of _____ percent per year

     from *(date):*

CC-3. ☐   Plaintiff is entitled to attorney fees by an agreement or a statute
         ☐   of $
         ☐   according to proof.

CC-4. ☐   Other:

Page _____

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001(2) [Rev. January 1, 2009] | **CAUSE OF ACTION—Common Counts** | Code of Civil Procedure, § 425.12<br>www.courtinfo.ca.gov |
|---|---|---|



570 Broad Street / Suite 1201 / Newark, NJ 07102
**P:** 973.623.3000 / **F:** 973.623.0858 / litedepalma.com

Newark ▪ Chicago ▪ Philadelphia

April 4, 2019

**VIA ECF**
Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Federal Building
  and Courthouse
402 East State Street
Trenton, NJ  08608

    Re:    ***Cole v. NIBCO, Inc.***
           **Civil Action No.: 13-cv-7871(FLW)(TJB)**

Dear Judges Wolfson and Bongiovanni:

        Together with our co-counsel, this office represents Plaintiffs and the Class in this matter.
It has come to our attention that objector Jeffrey Palmer and his counsel made false statements in
their Declarations submitted to this Court.  We write to request leave to make a short
supplemental submission regarding those false statements and their effect on Mr. Palmer's
opposition to final settlement approval and to an award of attorneys' fees to Class Counsel, as
well as their effect on the application by his counsel for pro hac vice admission.

        Pursuant to the instructions of Judge Wolfson's chambers, a copy of that proposed
supplemental submission is attached.  Plaintiffs respectfully request that Judge Bongiovanni
withhold decision on the motion for admission pro hac vice of Mr. Palmer's counsel until after
the Court has decided whether the attached supplemental submission will be considered.

        Thank you very much for your consideration.

        Respectfully,

        Bruce D. Greenberg

BDG:emp

cc:    All Counsel (via ECF)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

KIMBERLY COLE, ALAN COLE, :
JAMES MONICA, LINDA BOYD, :
MICHAEL MCMAHON, RAY : Civil Action No.: 13-7871(FLW) (TJB)
SMINKEY, JAMES MEDDERS, :
JUDY MEDDERS, ROBERT :
PEPERNO, SARAH PEPERNO, :
KELLY MCCOY, LESA WATTS, :
CHAD MEADOW, JOHN PLISKO, :
SUSAN PLISKO, KENNETH :
McLAUGHLIN, RYAN KENNY, : **DECLARATION OF**
ALEXANDER DAVIS, and : **BRUCE D. GREENBERG**
ANDREA DAVIS, on behalf of :
themselves and all others similarly :
situated, :
               Plaintiffs, :
      v. :
       :
NIBCO, INC., :
       :
           Defendant. :

Bruce D. Greenberg, of full age, being duly sworn upon his oath, declares as follows:

1.    I am an attorney at law of the State of New Jersey, and a Member of the law firm of Lite DePalma Greenberg, LLC, one of the attorneys for Plaintiffs and the Settlement Class in this matter. I have personal knowledge of the facts contained in this Declaration.

2.     Attached as Exhibit A is a true copy of the objection of Jeffrey Palmer to the class action settlement in *In re Kitec Plumbing System Prods. Liab. Litig.*, Case No. 09-md-2098 (N.D. Tex.), filed on September 30, 2011.  ECF No. 108.

3.     Attached as Exhibit B is a true copy of the withdrawal of that objection by Mr. Palmer on October 10, 2011, ten days later.  ECF No. 111.

4.     Attached as Exhibit C is a true copy of a catalog that reflects that the first two items listed on the Nocona Building Center, Inc. receipt proffered by Mr. Palmer and purporting to evidence his purchase of NIBCO Covered Products in fact are BestPEX products sold by iPlumb PEX Plumbing and Radiant Heating Systems, not NIBCO Covered Products.  *Compare* Nocona receipt line 1, #41248 at the end of the column labeled "Description," *with* Exhibit C, page 28, showing "Bulk #41248" under "1/4 Turn Supply Valves; and *compare* Nocona receipt, line 2, #41158 at the end of the column labeled "Description," *with* Exhibit C, page 27, showing "Bulk #41158" under "Reducing Tees."

5.     The two product numbers for tubing on the Nocona receipt bring up listings as Watts products, not NIBCO Covered Products, when searched on Google.  *Compare* Nocona receipt, line 3, "P-12-20B" under "Description" *with* https://www.amazon.com/Watts-Brass-Tubular-Cross-Linked-Polyethylene/dp/B001M5E85K, showing "P-12-20B" as a Watts product; and compare Nocona receipt, line 4, "P-34-20A" under "Description" with

2

https://www.amazon.com/Watts-Water-Technologies-P-34-20R-

Straight/dp/B001UL2ZDS, showing "P-34-20A" as a Watts product.  True copies

of these web pages are attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  April 4, 2019

　　　　　　　　　　　　　　　 _/s/ Bruce D. Greenberg_____
　　　　　　　　　　　　　　　 Bruce D. Greenberg

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE KITEC PLUMBING SYSTEM  )  Case No. 09-md-2098
PRODUCTS  )
  )
LIABILITY LITIGATION  )
  )
  )
  )
_____  )

## NOTICE OF OBJECTION OF CLASS MEMBER JEFF PALMER AND NOTICE OF INTENT TO APPEAR

COMES NOW, JEFF PALMER ("Objector"), Class Member to this action, by and through his undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the November 17, 2011, 2010, settlement hearing, and requests award of an incentive fee for serving as unnamed class member objector.  Objector's address and class member status is reflected in his Declaration filed concurrently herewith, together with his signature, as directed in the Class Notice.

Objector raises the following issues with respect to the Proposed Settlement:

1.  There is no information given to the class (or apparently the Court), about the value of the settlement, thereby precluding an honest assessment of the fairness to the class under Rule 23.

2.  There is no information given to the class (or the Court), about the request for attorneys' fees in the amount of $25 million, precluding a true assessment of the reasonableness of the request.

3.  There are persistent predominance and adequacy questions similar to those raised in *Amchem Products,* which may preclude certification, even for settlement purposes.

4.  There is no information given as to the eight-year claims period, when the claims released must have occurred presently.  This raises fairness questions.

5.  The Claim Form is too long, confusing, demanding, and invasive.

/ / /

/ / /

1

I.

## NO INFORMATION IS PROVIDED ABOUT THE ESTIMATE OF THE HARM SUFFERED BY THE CLASS, PRECLUDING A FINDING OF REASONABLENESS

Rule 23 provides that a class action settlement must be "fair, adequate, and reasonable." While Defendants are theoretically parting with $125 million (with reversion rights), there is no information as to why $100 million is an adequate settlement fund for the class. Is the perceived harm greater than that, and if so, by how much? Absent this information, it seems premature to determine whether this figure is reasonable. This objector believes that information as to average amounts of claims, and projected claims rates (usually less than 10% of the entire class), together with a projected total exposure amount, are essential to a court's obligation in weighing the fairness of a settlement.

II.

## THE REQUESTED ATTORNEYS' FEE MUST BE SUPPORTED WITH APPROPRIATE DOCUMENTATION

Class Counsel requests $25 million in fees, with no fee application filed with the Court. This blanket, unsupported request requires scrutiny by the Court, and the Class, as only reasonable fees are awardable under Rule 23: "In a class action settlement, the district court has an *independent duty* under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Products Liability Litigation,* 517 F.3d 220, 227 (5th Cir. 2008)(emphasis added). *See also, Strong v BellSouth Telecommunications, Inc.,* 137 F.3d 844, 849 (5th Cir. 1998): "To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."

The Fifth Circuit holds that "a district court is not bound by an agreement of the parties with regard to fees. . . . The court must scrutinize the agreed-to fees . . . and not merely ratify a pre-arranged compact." *Strong, supra,* at 849. Further, the blanket 25% request does not comport with Fifth Circuit jurisprudence using only lodestar calculations for

class actions: "This circuit uses the 'lodestar method' to calculate fees [and then applies the *Johnson v. Georgia* factors to justify them]." *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *Strong, supra,* applying lodestar method. In fact, the court in *High Sulfur, supra,* affirmed that a court <u>must</u> use the lodestar method in class action cases: "This circuit requires district courts to use the 'lodestar method' to 'assess attorneys' fees in class action suits." 517 F.3d at 228.

Accordingly, Class Counsel's blanket request for $25 million cannot be approved by the Court before submission of time records for a lodestar analysis, as required by this Circuit. These records must be submitted for class, as well as Court, scrutiny:

> [The court] failed to fulfill its further duty to monitor legal fees by its perfunctory approval of the allocation determined by the Fee Committee. . . . The court made matters worse when it sealed the exhibit listing the individual fees and the record entries pertaining to fees and placed a gag order on the plaintiffs' attorneys. These actions not only kept the public in the dark about each plaintiffs' attorney's award but also prevented counsel from communicating with each other and with their own clients on the subject. The lack of transparency about the individual fee awards supports a perception that many of these attorneys were more interested in accommodating themselves than the people they represent. . . . The record lacks the attorneys' time and expense statements, letters, comments, hourly billing rates, and other materials allegedly submitted by the Fee Committee to the district court on or before the ex parte hearing on January 22, 2007. . . . Nor does the record contain a breakdown of the hours and rates claimed by each attorney or their respective lodestars.

*High Sulfur,* 517 F.3d at 229-30. This authority is clear: Class Counsel's fee request must be supported by their time records for perusal by the class, and the Court. This has not been done. The class must be given an opportunity to analyze the fee request after submission, and submit objections thereto if appropriate.

Accordingly, any approval of the fee request of $25 million is patently premature, and approval would be an abuse of discretion as the court determined in *High Sulfur.*

<div align="center">

**III.**

**<u>THE NATURE OF THE HARM INDICATES THAT PREDOMINANCE IS LACKING, PRECLUDING CERTIFICATION</u>**

</div>

The nature of the harm indicates that there may be consumer fraud, warranty, breach of contract, and other individualized issues at stake in this litigation. Consumer protection

laws in the 50 states vary considerably, to say nothing of how Canadian law treats these

issues.  While these important differences do not always defeat class treatment of the

litigation, it is the duty of the district court to inquire into whether it may be more appropriate

to create subclasses based upon the varying remedies.  While it may add time to the analysis,

it ensures the fairness required under Rule 23.

     *a.  Adequacy Issues*

     Under Rule 23(a), Class Counsel must show both that the interests of the

representative party do not conflict with the interests of any of the absent class members and

that class counsel is adequate.  Rule 23(b) requires class claims to predominate over

individual issues.  The proposed settlement suffers the fatal flaw of potentially lacking under

both of these requirements.

     The remedy provided in this lawsuit, reimbursement of repair costs of defective

plumbing, fails to differentiate between the remedies available to residents of the various

states.  This places class representatives at odds with other unnamed class members from

different states that have more desirable consumer protection laws.  This also compromises

the adequacy of class counsel as a result of a possible conflict; representing named plaintiffs

from one state at the potential expense of absent class members from different states (and

countries).

     Rule 23(a) operates to ensure that the lead plaintiffs are appropriate representatives

for the individuals on whose behalf they litigate.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct.

2541 (2011).  The requirements of Rule 23(a) "limit the class claims to those fairly

encompassed by the named plaintiff's claims." *Id.,* citing *General Telephone Co. of Southwest

v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *General Telephone Co. of Northwest v. EEOC*,

446 U.S. 318, 330 (1980)).

     The conflicting consumer state statutes have the effect of making lead plaintiffs'

claims and available remedies different from the absent class members they represent.  This,

by definition, makes lead plaintiffs inadequate to represent absent class members from

different states. Similarly, class counsel faces the very real conflict of being unable to

adequately represent these same absent class members because the interests of the named

plaintiffs are divergent from the rest of the class. See, Model Rules of Professional Conduct

1.8(g).

The differences can be highlighted most vividly in comparing a Montana resident to a

New Mexico resident:  in New Mexico, an aggrieved consumer is entitled to the greater of

actual damages or $100, whichever is greater (N.M. Stat. Ann. §57-12-10(B)), while in

Montana, a consumer can recover the greater of actual damages or $500 (Mont. Code Ann.

§30-14-133W).  (Doc. 98 at 3)  This makes a claim in Montana five times more valuable than

a claim in New Mexico and more valuable still than in a state with no enhanced damages for

consumer injury.  This disparity undermines, and perhaps defeats, adequacy, as well as

predominance, under Rule 23.

In *Ortiz v. Fibreboard Corp.* 527 U.S. 815 (1999), the Supreme Court noted that one

factor counseling against certification of the settlement class was the fact that certain

claimants "had more valuable claims . . . the consequence being an . . . instance of disparate

interests. *Id.* at 857.  The Court therefore held that when class members have claims of

varying strength or merit, it is an *abuse of discretion* to approve a settlement that treats them

all the same." *Id.*  The Montana resident described above has a more valuable claim than the

New Mexico resident, giving them disparate interests.  To treat them the same constitutes an

abuse of discretion.

b.      *Predominance Issues.*

Predominance tests whether a proposed class is sufficiently cohesive to support class

treatment. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

Differences in the applicable state laws in this case go to the heart of the Class

members' substantive claims and potential recoveries and, thus, undermine the cohesiveness

of the class.  The predominance inquiry "may not be watered down merely because the

parties have entered a proposed settlement." *In re Grand Theft Auto Video Game Consumer*

*Litigation* 251 F.R.D. 139, 159-160 (S.D.N.Y. 2008), citing *Amchem Products,* 521 U.S. at

620; *Denney v. DeutscheBank AG* (2d Cir. 2006) 443 F.3d 253, 270; *In re Warfarin [Sodium*

*Antitrust Litigation]* (3d Cir. 2004) 391 F.3d 516, 529-30.

The district court therefore has the responsibility to inquire into whether these

consumer state issues would unfairly affect any class members. *Ficalora v. Lockheed*

*California Co.,* 751 F.2d 995 (9th Cir. 1985). It may not be the province of a district court to

summarily disregard the considered judgment of other states' legislature's judgments

regarding the protection of its citizens: "State consumer-protection laws vary considerably,

and courts must respect these differences rather than apply one state's laws to sales in other

states with different rules." *In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.* 288 F.3d

1012, 1017 (7th Cir. 2002). Appellants maintain that it is an abuse of discretion to fail to

create subclasses addressing each state's parameters regarding damages for consumer fraud ,

giving due respect to each state's laws: "Here, as in *Amchem,* legislative choices – even

choices not to act – must be respected: 'Differences across states may be costly for courts

and litigants alike, but they are a fundamental aspect of our federal republic and must not be

overridden in a quest to clear the queue in court.' *In re Bridgestone/ Firestone, Inc.,* 288 F.3d

1012, 1020 (7th Cir. 2002)." *In re Relafen Antitrust Litig.,* 225 F.R.D. 14, 25, 346 F.Supp.2d

349 (D.Mass. 2004).

A settlement with subclasses is more closely aligned with the holding in *Phillips*

*Petroleum v. Shutts,* 472 U.S. 797 (1985), in which the Supreme Court rejected the blanket

application of the forum state's law when other state laws conflicted with it. The Court

quoted the Supreme Court of Kansas' opinion, before discounting it:

> "The general rule is that the law of the forum applies unless it is
> expressly shown that a different law governs, and in case of doubt, the
> law of the forum is preferred. . . . Where a state court determines it has
> jurisdiction over a nationwide class action and procedural due
> process guarantees of notice and adequate representation are present, we
> believe the law of the forum should be applied unless compelling
> reasons exist for applying a different law. . . . Compelling reasons do
> not exist to require this court to look to other state laws to determine
> the rights of the parties involved in this lawsuit." 235 Kan. At 221-22.
> We think that this is something of a "bootstrap" argument. . . .

> Whatever practical reasons may have commended this rule to the
> Supreme Court of Kansas, . . . we do not believe that it is consistent
> with the decisions of this Court. . . . We therefore . . . reverse its
> judgment insofar as it held that Kansas law was applicable to all of the
> transactions which it sought to adjudicate.

472 U.S. at 821-23. Overall fairness is not a reason to approve a settlement:

> If a common interest in a fair compromise could satisfy the
> predominance requirement of Rule 23(b)(3), that vital prescription
> would be stripped of any meaning in the settlement context. . . . Even
> if Rule 23(a)'s commonality requirement may be satisfied by that
> shared experience [of asbestos exposure], the predominance criterion is
> far more demanding. . . . Differences in state law, the Court of
> Appeals observed, compound these disparities.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The Supreme Court then

cited a Second Circuit case, approving the creation of subclasses to satisfy the predominance

inquiry:

> "Where differences among members of a class are such that subclasses
> must be established, we know of no authority that permits a court to
> approve a settlement without creating subclasses on the basis of
> consents by members of a unitary class, some of whom happen to be
> members of the distinct subgroups. The class representatives may well
> have through that the Settlement serves the aggregate interests of the
> entire class. But the adversity among subgroups requires that the
> members of each subgroup cannot be bound to a settlement except by
> consent given by those who understand that their role is to represent
> solely the members of their respective subgroups." *In re Joint Eastern
> and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-43 (1992).

*Amchem*, 521 U.S. at 627. As in *Amchem*, the class members in this case have widely-

divergent claims; some know they have a system-wide problem spread throughout a hospital,

while others may suffer harm in the future. The potential-damage members have a different

interest than the present-damage members, which defeated predominance, and certification,

in *Amchem*. These similarities should cause the Court to reconsider whether certification,

even for settlement purposes, is truly appropriate.

<div align="center">IV.</div>

<div align="center"><u>THERE IS NO INFORMATION PROVIDED AS TO WHY THERE IS AN EIGHT
YEAR CLAIMS PERIOD</u></div>

The settlement provides for a generous eight year claims period. The claim, however,

apparently must exist today. Why, then, is there an eight-year claims period? Does the

settlement cover claims which will arise during the next eight years?  The settlement does not

indicate that it does.  This inherent ambiguity requires more explanation to the class, and to

the Court.

<div align="center">V.</div>

<div align="center">**THE CLAIM FORM IS TOO INVASIVE, DEMANDING, AND CONFUSING**</div>

The Claim Form is 12 pages long.  The last page, with a bar code, is "intentionally left

blank."  The instructions state that "all questions *must* be answered."  (Emphasis in original.)

This is a bit intimidating.  The claim requests "all" cancelled checks.  It requests that the

claimant send in a piece of pipe.  This is despite the fact, however, that the claimant may not

have kept defective pipe if it has already been repaired, or the claimant may not have suffered

damage yet, and does not wish to start dismantling his pipes.

Tax information should not be required for those who have already suffered the cost

of a repair and are simply requesting reimbursement; it is not a taxable event.  Accordingly,

requesting people's social security numbers is overly broad and intrusive.  It also seems

overly intrusive and unnecessary to submit proof of ownership, requiring property tax

documents.  Simply proof of having the Kitec product in one's home or building should be

sufficient; a photograph and other verifying evidence would seem more reasonable than

providing personal tax documents.  Further, this other verifying evidence is requested on the

next page.

In fact, proving one's claim appears tantamount to proving a "federal case," one needs

the following to submit a valid claim:  social security number, when the property was

acquired, by whom, who bought the property, who owns it now, provide a copy of the

condominium agreement, proof of ownership such as property tax statement, plumbers

reports, manufacturer warranties, installation date of the system, type of installation, amount

of pipe installed, problems and types of damage, repair and replacement history, and names

of contractors and plumbers.  Additionally, the claimant must produce a plumbing sample.  A

<div align="center">8</div>

residential consumer will likely not have all of this information (or product). It is simply

asking too much. There must be a simpler way of verifying who needs what repairs.

Further, the settlement does not address how the claimants who allegedly may suffer

future plumbing failures are to be compensated, if at all. This class of claimants must be

addressed in the settlement; this hearkens back to the predominance and adequacy issues

raised above, and calls into question the true fairness of the settlement.

It begs the question: if Kitec is really going to pay everyone the cost of repair or

reimbursement, then what is the need for the settlement at all? If there is a problem with the

plumbing, Kitec can set up an in-house claims department to handle repair and replacement

issues. This eliminates the need for these global releases, which in fact do not even eliminate

the possibility of future suits, as there are provisions regarding collateral suits for indemnity

and other related matters. It appears this settlement does not resolve much of anything at all,

and places a huge onus on the claimant, while exacting a very broad release for defendants.

WHEREFORE, This Objector respectfully requests that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate

these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness

of the proposed settlement.

C.  Continue the Fairness Hearing until such time that this Objector has had an

opportunity to review Class Counsel's Fee Application and for an opportunity to submit

limited Discovery regarding said Fee Application.

D.  Award an incentive fee to this Objector for its service as a named

representative of Class Members in this litigation.

DATED: September 30, 2011                  By:  ___/s/ Christopher A. Bandas___
                                                Christopher A. Bandas
                                           Christopher A. Bandas
                                           Bandas Law Firm, P.C.
                                           500 N. Shoreline Blvd., Suite 1020
                                           Corpus Christi, Texas 78471
                                           Phone: 361-698-5200

Fax: 361-698-5222
Email: cbandas@bandaslawfirm.com


By:  /s/ Joseph D. Palmer
         Joseph D. Palmer

Joseph D. Palmer (*Pro Hac Vice* Pending)
Law Offices of Darrell Palmer
603 N. Highway 101, Suite A
Solana Beach, CA 92075
P: (858) 792-5600 / F: (858) 792-5655
Email: darrell.palmer@palmerlegalteam.com


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 30, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of Texas Dallas Division by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.


         /s/ Christopher A. Bandas

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re Kitec Plumbing System Products | § | |
| | § | MDL NO. 2098 |
| | § | |
| Liability Litigation | § | Case No. 09-md-2098-F |

## NOTICE OF WITHDRAWAL OF OBJECTION TO CLASS SETTLEMENT AND AWARD OF ATTORNEYS' FEES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEFF PALMER, by and through his counsel of record, hereby

withdraws, with prejudice, his objection to the Class Settlement and Award of Attorneys'

Fees.

Dated: October 10, 2011.

Respectfully submitted,

By:      /s/ Christopher A. Bandas
Christopher A. Bandas
State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 N. Shoreline, Ste. 1020
Corpus Christi, Texas 78401
(361) 698-5200 Telephone
(361) 698-5222 Facsimile
Email: cbandas@bandaslawfirm.com

Joseph D. Palmer
*(Pro Hac Vice Pending)*
Law Offices of Darrell Palmer
603 N. Highway 101, Ste. A
Solona Beach, CA 92075
(858) 792-5600 Telephone
(858) 792-5655 Facsimile
darrell.palmer@palmerlegalteam.com
ATTORNEYS FOR OBJECTOR
JEFF PALMER

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to counsel and those listed below, by CM-ECF court e-filing on this the 10th day of October 2011.

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
507 C Street, NE
Washington, DC 20002
**Co-Lead Counsel for U.S. Plaintiffs**

Richard L. Josephson
Van H. Beckwith
Baker Botts L.L.P.
2001 Ross Avenue, Ste. 600
Dallas, Texas 75201
**U.S. Counsel for IPEX Defendants**

         /s/ Christopher A. Bandas
Christopher A. Bandas

# EXHIBIT C

TM

# iPlumb

**Version 2010.04.19**

## PRODUCT CATALOG














# iPlumb
PEX Plumbing and Radiant
Heating Systems

6601 South Shields Blvd.
Oklahoma City, OK 73149
405-631-0000 *Tel*
800-842-2543 *Toll free*
405-631-1701 *Fax*
www.iplumb.tv

*President*
Charles Leggett
charlesleggett@me.com

*President of Sales*
Brit Leggett
britleggett@mac.com

*Vice President of Sales*
JP Scherer
jpscherer@me.com





# TABLE OF CONTENTS

iPlumb Story ................................................................................................................ 4

Mission Statement ........................................................................................................ 4

Company Contact Info ................................................................................................... 4

PEX Tubing .................................................................................................................... 5

Flair-It PEX & PB Fittings ............................................................................................. 8

Flair-It PRO PEX Fittings ........................................................................................... 14

Flair-It Plus Manifolds ................................................................................................ 18

PROBite Fittings .......................................................................................................... 20

BestPEX Brass Insert PEX Fittings ............................................................................ 25

iPlumb Plastic Insert PEX Fittings ............................................................................. 30

PEX Tools .................................................................................................................... 32

Rings & Clamps .......................................................................................................... 36

PEX Installation Products .......................................................................................... 39

PEX Risers ................................................................................................................... 41

PEX Displays / Starter Kits ......................................................................................... 43

Irrigation ..................................................................................................................... 45

Low Pressure Natural Gas Excess Flow Valves - Non-bypass ................................... 46

Colored Flex Connects ................................................................................................ 47

Order Form .................................................................................................................. 48

## THE IPLUMB STORY

iPLUMB PEX Plumbing and Radiant Heating Systems is a large supplier to plumbing distributors, wholesalers, hardware stores and OEMs worldwide. iPlumb is a division of Leggett Supply, a family owned and operated company based in Muskogee, Oklahoma and specializes in PEX plumbing and radiant heating systems and is positioning itself to take an even bigger bite of the market with a stronger knife and fork!

This is an exciting time for iPlumb. In a way, it's more of a renaissance. There are many new changes occurring and in store for iPlumb. We have given our website a complete facelift and are using our Project Path for client management and interaction. We also have made some personnel advances, improved and diversified our product lines, a new newsletter and are in the process of redesigning and streamlining our catalog!

Our website, www.iPlumb.tv, is soon-to-be the most comprehensive website in the PEX Plumbing and Radiant Heating industry. Customers now have access to our catalogs, contact information, photos, videos, instructions, event calendars, shopping cart, FAQs, and more!

We have also implemented new software for client management and interaction, which is linked to our website. This software makes communication much more efficient between iPlumb and it's customers. These two tools will help us be more efficient with servicing our customers at a level far beyond our competition's ability.

Because the PEX industry is constantly evolving, iPlumb seeks out new and innovative products on a daily basis. "We have the latest high quality domestic and import PEX products available with competitive pricing", says Brit Leggett. One of our latest accomplishments is bringing in PROBite Lead-Free fittings. Currently, California and Vermont have adopted new legislation that requires lead-free plumbing fittings. The trend is expected to expand nationwide within a few years. Our PROBite Lead-Free line has already gained popularity as a solution to the new legislation and meets the new Anex G specifications.

Perhaps one of the most innovative advances in the plumbing market today is our newest product line: Flair-It PRO. Flair-It PRO fittings are simply our Flair-It Plus fittings without the nuts. Instead of using nuts, we now offer Flair-It PRO rings. This is an alternative to the expansion methods offered by other products. With the Flair-It PRO system, the plumber is able to install the fitting in seconds, use PEX-a, PEX-b, or PEX-c and test the system immediately after installation! There is no need to expand the PEX! There is no waiting period for the PEX to tighten around the fitting! Just put a Flair-It PRO ring on the pipe, arrange the fitting and the ring together into the tool, and squeeze the tool to pull them together. It's as easy as that!

Another important addition to iPlumb is it's Newsletter "iPlumb". iPlumb will have several exciting sections dedicated to informing of new products available, FAQ and answers, How-Tos, Industry News, iPlumb representative highlight stories, our event schedule and much more!

Be sure to check with your local iPlumb representative or visit iPlumb.tv to see the latest products available in the PEX industry.

## OUR MISSION

The mission of iPlumb is to offer a wide variety of quality products at competitive prices, delivered in a timely manner, while adding a personal touch to customer service. To accomplish this mission, we continually search the market for new and innovative products, capitalize on all resources available, maintain clear inter-company communication and efficiency and strive to provide our customers the service and support that is essential for guaranteed customer satisfaction.

## COMPANY CONTACT INFO

| **President** | **Sales Office** | **Warehouse** |
|---|---|---|
| Charles Leggett - charlesleggett@me.com | 6601 South Shields Blvd. | 1701 South Cherokee St. |
| **President of Sales** | Oklahoma City, OK 73149 | Muskogee, OK 74401 |
| Brit Leggett - britleggett@mac.com | 405-631-0000 Tel | 918-682-2233 Tel |
| **Vice President of Sales** | 405-631-1701 Fax | |
| JP Scherer - jpscherer@me.com | www.iPlumb.tv | |



# PEX PIPE



SAFEPEX STICKS

SAFEPEX COILS

BESTPEX STICKS

BESTPEX COILS

RADIANT HEAT PEX

FLAIR-IT CORRUGATED PIPE

POLYETHYLENE PIPE

PEX is a polymer pipe constructed of cross-linked polyethylene.  It is an alternative to copper plumbing pipe because of the lower cost, faster installation and more flexible properties.  There are three types of PEX available through iPlumb:  PEX-a (SafePEX), PEX-b (BestPEX) and radiant heat PEX, which is PEX-b with an oxygen barrier.  All PEX distributed by iPlumb meets the requirements of ASTM F 876 and F 877.  3/8" - 1" ID PEX is available in straight sticks from 5' to 20' and coils from 100' to 1000' in bulk and barcode.



**SAFEPEX STRAIGHT STICKS COLD**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 06050 | 16050 | SAFEPEX TUBING 3/8" X 5' COLD | |
| 06054 | 16054 | SAFEPEX TUBING 3/8" X 10' COLD | |
| 06058 | 16058 | SAFEPEX TUBING 3/8" X 20' COLD | |
| 06051 | 16051 | SAFEPEX TUBING 1/2" X 5' COLD | |
| 06055 | 16055 | SAFEPEX TUBING 1/2" X 10' COLD | |
| 06059 | 16059 | SAFEPEX TUBING 1/2" X 20' COLD | 25 |
| 06052 | 16052 | FLEXPEX TUBING 3/4" X 5' COLD | |
| 06056 | 16056 | FLEXPEX TUBING 3/4" X 10' COLD | |
| 06060 | 16060 | FLEXPEX TUBING 3/4" X 20' COLD | 15 |
| 06057 | 16057 | FLEXPEX TUBING 1" X 20' COLD | |



**SAFEPEX STRAIGHT STICKS HOT**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 06150 | 16150 | SAFEPEX TUBING 3/8" X 5' HOT | |
| 06154 | 16154 | SAFEPEX TUBING 3/8" X 10' HOT | |
| 06158 | 16158 | SAFEPEX TUBING 3/8" X 20' HOT | |
| 06151 | 16151 | SAFEPEX TUBING 1/2" X 5' HOT | |
| 06155 | 16155 | SAFEPEX TUBING 1/2" X 10' HOT | |
| 06159 | 16159 | SAFEPEX TUBING 1/2" X 20' HOT | 25 |
| 06152 | 16152 | SAFEPEX TUBING 3/4" X 5' HOT | |
| 06156 | 16156 | SAFEPEX TUBING 3/4" X 10' HOT | |
| 06160 | 16160 | SAFEPEX TUBING 3/4" X 20' HOT | 15 |



# PEX PIPE



**SAFEPEX COILS COLD**

| BULK | BARCODE | DESCRIPTION | PALLET |
|------|---------|-------------|--------|
| 06062 | 16062 | SAFEPEX TUBING 3/8" X 100' COLD | 28 |
| 06063 | 16063 | SAFEPEX TUBING 1/2" X 100' COLD | 22 |
| 06067 | 16067 | SAFEPEX TUBING 1/2" X 300' COLD | 22 |
| 06068 | 16068 | SAFEPEX TUBING 1/2" X 1000' COLD | 22 |
| 06064 | 16064 | SAFEPEX TUBING 3/4" X 100' COLD | 11 |
| 06071 | 16071 | SAFEPEX TUBING 3/4" X 300' COLD | 11 |
| 06066 | 16066 | SAFEPEX TUBING 1" X 100' COLD | |
| 06065 | 16065 | SAFEPEX TUBING 1" X 300' COLD | |



**SAFEPEX COILS HOT**

| BULK | BARCODE | DESCRIPTION | PALLET |
|------|---------|-------------|--------|
| 06162 | 16162 | SAFEPEX TUBING 3/8" X 100' HOT | 28 |
| 06166 | 16166 | SAFEPEX TUBING 3/8" X 1000' HOT | 11 |
| 06163 | 16163 | SAFEPEX TUBING 1/2" X 100' HOT | 22 |
| 06167 | 16167 | SAFEPEX TUBING 1/2" X 300' HOT | |
| 06168 | 16168 | SAFEPEX TUBING 1/2" X 1000' HOT | |
| 06164 | 16164 | SAFEPEX TUBING 3/4" X 100' HOT | 11 |
| 06171 | 16171 | SAFEPEX TUBING 3/4" X 300' HOT | 22 |



**BESTPEX STRAIGHT STICKS BLUE**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 41260 | 51260 | BESTPEX TUBING 3/8" X 5' BLU | 10 |
| 41266 | 51266 | BESTPEX TUBING 3/8" X 10' BLU | 10 |
| 41272 | 51272 | BESTPEX TUBING 3/8" X 20' BLU | 10 |
| 41262 | 51262 | BESTPEX TUBING 1/2" X 5' BLU | 10 |
| 41268 | 51268 | BESTPEX TUBING 1/2" X 10' BLU | 10 |
| 41274 | 51274 | BESTPEX TUBING 1/2" X 20' BLU | 25 |
| 41264 | 51264 | BESTPEX TUBING 3/4" X 5' BLU | 10 |
| 41270 | 51270 | BESTPEX TUBING 3/4" X 10' BLU | 10 |
| 41276 | 51276 | BESTPEX TUBING 3/4" X 20' BLU | 10 |



**BESTPEX STRAIGHT STICKS RED**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 41261 | 51261 | BESTPEX TUBING 3/8" X 5' RED | 10 |
| 41267 | 51267 | BESTPEX TUBING 3/8" X 10' RED | 10 |
| 41273 | 51273 | BESTPEX TUBING 3/8" X 20' RED | 10 |
| 41263 | 51263 | BESTPEX TUBING 1/2" X 5' RED | 10 |
| 41269 | 51269 | BESTPEX TUBING 1/2" X 10' RED | 10 |
| 41275 | 51275 | BESTPEX TUBING 1/2" X 20' RED | 25 |
| 41265 | 51265 | BESTPEX TUBING 3/4" X 5' RED | 10 |
| 41271 | 51271 | BESTPEX TUBING 3/4" X 10' RED | 10 |
| 41277 | 51277 | BESTPEX TUBING 3/4" X 20' RED | 10 |



**BESTPEX STRAIGHT STICKS WHITE**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 41310 | 51310 | BESTPEX TUBING 3/8" X 5' WHT | 10 |
| 41307 | 51307 | BESTPEX TUBING 3/8" X 20' WHT | 10 |
| 41305 | 51305 | BESTPEX TUBING 1/2" X 5' WHT | 10 |
| 41291 | 51291 | BESTPEX TUBING 1/2" X 20' WHT | 25 |
| 41306 | 51306 | BESTPEX TUBING 3/4" X 5' WHT | 10 |
| 41292 | 51292 | BESTPEX TUBING 3/4" X 20' WHT | 10 |
| 41309 | 51309 | BESTPEX TUBING 1" X 5' WHT | 10 |
| 41284 | 51284 | BESTPEX TUBING 1" X 20' WHT | 5 |



**BESTPEX COILS BLUE**

| BULK | BARCODE | DESCRIPTION | BAG |
|------|---------|-------------|-----|
| 41278 | 51278 | BESTPEX TUBING 3/8" X 100' BLU | 25 |
| 41280 | 51280 | BESTPEX TUBING 1/2" X 100' BLU | 40 |
| 41299 | 51299 | BESTPEX TUBING 1/2" X 300' BLU | 13 |
| 41314 | 51314 | BESTPEX TUBING 1/2" X 500' BLU | 13 |
| 41301 | 51301 | BESTPEX TUBING 1/2" X 1000' BLU | 7 |
| 41282 | 51282 | BESTPEX TUBING 3/4" X 100' BLU | 30 |
| 41312 | 51312 | BESTPEX TUBING 3/4" X 300' BLU | 13 |
| 41303 | 51303 | BESTPEX TUBING 3/4" X 500' BLU | 7 |

# PEX PIPE



**BESTPEX COILS RED**

| BULK | BARCODE | DESCRIPTION | PALLET |
|------|---------|-------------|--------|
| 41279 | 51279 | BESTPEX TUBING 3/8" X 100' RED | 25 |
| 41281 | 51281 | BESTPEX TUBING 1/2" X 100' RED | 40 |
| 41298 | 51298 | BESTPEX TUBING 1/2" X 300' RED | 13 |
| 41315 | 51315 | BESTPEX TUBING 1/2" X 500' RED | 13 |
| 41300 | 51300 | BESTPEX TUBING 1/2" X 1000' RED | 7 |
| 41283 | 51283 | BESTPEX TUBING 3/4" X 100' RED | 30 |
| 41317 | 51317 | BESTPEX TUBING 3/4" X 300' RED | 13 |
| 41302 | 51302 | BESTPEX TUBING 3/4" X 500' RED | 7 |



**BESTPEX COILS WHITE**

| BULK | BARCODE | DESCRIPTION | PALLET |
|------|---------|-------------|--------|
| 41308 | 51308 | BESTPEX TUBING 3/8" X 100' WHT | 25 |
| 41289 | 51289 | BESTPEX TUBING 1/2" X 100' WHT | 40 |
| 41293 | 51293 | BESTPEX TUBING 1/2" X 300' WHT | 13 |
| 41316 | 51316 | BESTPEX TUBING 1/2" X 500' WHT | 13 |
| 41294 | 51294 | BESTPEX TUBING 1/2" X 1000' WHT | 7 |
| 41290 | 51290 | BESTPEX TUBING 3/4" X 100' WHT | 30 |
| 41318 | 51318 | BESTPEX TUBING 3/4" X 300' WHT | 13 |
| 41295 | 51295 | BESTPEX TUBING 3/4" X 500' WHT | 7 |
| 41285 | 51285 | BESTPEX TUBING 1" X 100' WHT | 13 |
| 41296 | 51296 | BESTPEX TUBING 1" X 300' WHT | 5 |
| 41297 | 51297 | BESTPEX TUBING 1" X 500' WHT | 6 |



**POLYETHYLENE COILS**
* For use on ice makers.

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 15989 | PE TUBING 1/4" OD X 100' | |



**RADIANT HEAT PEX COILS**
* Contains an oxygen barrier.

| BULK | DESCRIPTION | PALLET |
|------|-------------|--------|
| 48320 | RADIANT HEAT PEX TUBING 3/8" X 200' | 14 |
| 48330 | RADIANT HEAT PEX TUBING 3/8" X 300' | 14 |
| 48360 | RADIANT HEAT PEX TUBING 3/8" X 600' | 8 |
| 48300 | RADIANT HEAT PEX TUBING 3/8" X 1000' | 8 |
| 48510 | RADIANT HEAT PEX TUBING 1/2" X 100' | 14 |
| 48520 | RADIANT HEAT PEX TUBING 1/2" X 200' | 14 |
| 48530 | RADIANT HEAT PEX TUBING 1/2" X 300' | 14 |
| 48540 | RADIANT HEAT PEX TUBING 1/2" X 400' | 14 |
| 48560 | RADIANT HEAT PEX TUBING 1/2" X 600' | 14 |
| 48500 | RADIANT HEAT PEX TUBING 1/2" X 1000' | 8 |
| 48640 | RADIANT HEAT PEX TUBING 5/8" X 400' | 8 |
| 48600 | RADIANT HEAT PEX TUBING 5/8" X 1000' | 7 |
| 48710 | RADIANT HEAT PEX TUBING 3/4" X 100' | 15 |
| 48730 | RADIANT HEAT PEX TUBING 3/4" X 300' | 14 |
| 48750 | RADIANT HEAT PEX TUBING 3/4" X 500' | 8 |
| 48010 | RADIANT HEAT PEX TUBING 1" X 100' | 13 |
| 48050 | RADIANT HEAT PEX TUBING 1" X 500' | 6 |



**SLEEVED PEX PIPE**
* Ideal for projects that require sleeved PEX.

| BULK | DESCRIPTION | PALLET |
|------|-------------|--------|
| 07700 | CORRUGATED SLEEVE FOR 1/2" X 100' BLU | 20 |
| 07701 | CORRUGATED SLEEVE FOR 1/2" X 100' RED | 20 |
| 07702 | CORRUGATED SLEEVE FOR 3/4" X 100' BLU | 8 |
| 07703 | CORRUGATED SLEEVE FOR 3/4" X 100' RED | 8 |
| 07704 | SLEEVED PEX-A 1/2" X 100' BLU | 20 |
| 07705 | SLEEVED PEX-A 1/2" X 100' RED | 20 |
| 07706 | SLEEVED PEX-A 3/4" X 100' BLU | 8 |
| 07707 | SLEEVED PEX-A 3/4" X 100' RED | 8 |
| 07708 | SLEEVED PEX-B 1/2" X 100' BLU | 20 |
| 07709 | SLEEVED PEX-B 1/2" X 100' RED | 20 |
| 07710 | SLEEVED PEX-B 3/4" X 100' BLU | 8 |
| 07711 | SLEEVED PEX-B 3/4" X 100' RED | 8 |



# FLAIR-IT PEX & PB FITTINGS

| | |
|---|---|
|  | **COUPLINGS** |
| | **TRANSITIONS** |
| | **MALE/FEMALE ADAPTERS** |
| | **ELBOWS** |
| | **MALE/FEMALE ELBOWS** |
| | **DROP EAR ELBOWS** |
| | **TEES** |
| | **MALE/FEMALE TEES** |
| | **VALVES** |
| | **WATER HEATER BYPASS KITS** |
| | **PLUG COUPLINGS** |
| | **ICE MAKER FITTINGS** |
| | **WRENCHES** |
| | **ACCESSORIES/PARTS** |

Flair-It fittings are constructed of durable Polyoxymethylene (POM) and are compatible with PEX and PB. The patented design consists of a nut and flared insert and requires no tools. The fittings push against the ID *and* OD of the pipe, creating a strong long-term seal. Flair-It fittings are available in 3/8" - 3/4" and are stocked in bulk and barcoded versions. Must be ordered in lots of ten. Starter kits are also available.

### COUPLINGS



| BULK | BARCODE | DESCRIPTION |
|---|---|---|
| 06788 | 16788 | FLAIR-IT COUPLING 3/8" OD F NUT |
| 06855 | 16855 | FLAIR-IT COUPLING 3/8" |
| 06840 | 16840 | FLAIR-IT COUPLING 1/2" |
| 06846 | 16846 | FLAIR-IT COUPLING 3/4" |

### REDUCING COUPLINGS



| BULK | BARCODE | DESCRIPTION |
|---|---|---|
| 06787 | 16787 | FLAIR-IT REDUCING COUPLING 1/2" X 3/8" OD F NUT |
| 06853 | 16853 | FLAIR-IT REDUCING COUPLING 1/2" X 3/8" |
| 06845 | 16845 | FLAIR-IT REDUCING COUPLING 3/4" X 1/2" |

### TRANSITION FITTINGS




| BULK | BARCODE | DESCRIPTION |
|---|---|---|
| 06343 | 16343 | FLAIR-IT TRANSITION FITTING 5/8" OD |
| 06347 | 16347 | FLAIR-IT TRANSITION FITTING 7/8" OD |

# FLAIR-IT PEX & PB FITTINGS



### PB / PEX ADAPTERS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06844 | 16844 | FLAIR-IT PB / PEX ADAPTER 3/4" PB X 3/4" PEX |



### PB ADAPTER SLEEVES*

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06792 | 26790 | FLAIR-IT 3/4" PB ADAPTER SLEEVE (3 PER BARCODED BAG) |
| *MUST BE USED WITH ALL FLAIR-IT FITTINGS EXCEPT 06844 TO CONNECT 3/4" PB | | |



### MALE ADAPTERS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06850 | 16850 | FLAIR-IT MALE ADAPT 3/8" X 3/8" MPT |
| 06870 | 16870 | FLAIR-IT MALE ADAPT 3/8" X 1/2" MPT |
| 06852 | 16852 | FLAIR-IT MALE ADAPT 1/2" X 3/8" MPT |
| 06842 | 16842 | FLAIR-IT MALE ADAPT 1/2" X 1/2" MPT |
| 06868 | 16868 | FLAIR-IT MALE ADAPT 1/2" X 3/4" MPT |
| 06848 | 16848 | FLAIR-IT MALE ADAPT 3/4" X 3/4" MPT |
| 06872 | 16872 | FLAIR-IT MALE ADAPT 3/4" X 3/4" MPT BSP FLEX COPPER CNCTR |

### FEMALE ADAPTERS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06789 | 16789 | FLAIR-IT FEMALE ADAPTER 3/8" OD F NUT X 1/2" FPT |
| 06851 | 16851 | FLAIR-IT FEMALE ADAPTER 1/2" X 3/8" FPT |
| 06841 | 16841 | FLAIR-IT FEMALE ADAPTER 1/2" X 1/2" FPT |
| 06858 | 16858 | FLAIR-IT FEMALE ADAPTER 1/2" X 3/4" FPT |
| 06847 | 16847 | FLAIR-IT FEMALE ADAPTER 3/4" X 3/4" FPT |

### SWIVEL ADAPTERS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06795 | 16795 | FLAIR-IT SWIVEL ADAPTER 3/8" X 1/2" FSWV SHORT NUT |
| 06874 | 16874 | FLAIR-IT SWIVEL ADAPTER 3/8" X 1/2" FSWV BSP |
| 06869 | 16869 | FLAIR-IT BALLCOCK ADAPTER 3/8" X 3/4" FSWV BCT |
| 06796 | 16796 | FLAIR-IT SWIVEL ADAPTER 1/2" X 1/2" FSWV SHORT NUT |
| 06873 | 16873 | FLAIR-IT SWIVEL ADAPTER 1/2" X 1/2" FSWV BSP |
| 06856 | 16856 | FLAIR-IT SWIVEL ADAPTER 1/2" X 3/4" FSWV |
| 06849 | 16849 | FLAIR-IT SWIVEL ADAPTER 3/4" X 3/4" FSWV |
| 06865 | 16865 | FLAIR-IT BALLCOCK ADAPTER 1/2" X 3/4" FSWV BCT |

### GARDEN HOSE FITTINGS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06798 | 16798 | FLAIR-IT GARDEN HOSE ELBOW 3/8" X 3/4" FSWV GH |
| 06867 | 16867 | FLAIR-IT GARDEN HOSE ADAPT 1/2" X 3/4" MGH |
| 06866 | 16866 | FLAIR-IT GARDEN HOSE ADAPT 1/2" X 3/4" FSWV GH |
| 06818 | 16818 | FLAIR-IT GARDEN HOSE ELBOW 1/2" X 3/4" FSWV GH |

# FLAIR-IT PEX & PB FITTINGS

### ELBOWS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06786 | 16786 | FLAIR-IT ELBOW 3/8" X 3/8" OD F NUT |
| 06815 | 16815 | FLAIR-IT ELBOW 3/8" |
| 06800 | 16800 | FLAIR-IT ELBOW 1/2" |
| 06806 | 16806 | FLAIR-IT ELBOW 3/4" |

### REDUCING ELBOWS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06805 | 16805 | FLAIR-IT REDUCING ELBOW 3/4" X 1/2" |

### MALE ELBOWS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06784 | 16784 | FLAIR-IT MALE ELBOW 3/8" OD F NUT X  3/8" MPT |
| 06799 | 16799 | FLAIR-IT MALE ELBOW 3/8" X 1/2" MPT |
| 06810 | 16810 | FLAIR-IT MALE ELBOW 1/2" X 3/8" MPT |
| 06803 | 16803 | FLAIR-IT MALE ELBOW 1/2" X 1/2" MPT |
| 06812 | 16812 | FLAIR-IT MALE ELBOW 1/2" X 3/4" MPT |
| 06808 | 16808 | FLAIR-IT MALE ELBOW 3/4" X 1/2" MPT |
| 06809 | 16809 | FLAIR-IT MALE ELBOW 3/4" X 3/4" MPT |

### FEMALE ELBOWS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06802 | 16802 | FLAIR-IT FEMALE ELBOW 1/2" X 1/2" FPT |
| 06813 | 16813 | FLAIR-IT FEMALE ELBOW 3/4" X 3/4" FPT |

### DROP EAR ELBOWS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06804 | 16804 | FLAIR-IT DROP EAR ELBOW 1/2" X 1/2" FPT W/SEAL |
| 06801 | 16801 | FLAIR-IT DROP EAR ELBOW 1/2" X 1/2" FPT |

### SWIVEL ELBOWS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06793 | 16793 | FLAIR-IT SWIVEL ELBOW 3/8" X 1/2" FSWV SHORT NUT |
| 06817 | 16817 | FLAIR-IT SWIVEL ELBOW 3/8" X 1/2" FSWV BSP |
| 06797 | 16797 | FLAIR-IT SWIVEL ELBOW 3/8" X 3/4" FSWV BSP |
| 06816 | 16816 | FLAIR-IT SWIVEL ELBOW 1/2" X 1/2" FSWV BSP |
| 06811 | 16811 | FLAIR-IT SWIVEL ELBOW 1/2" X 3/4" FSWV |
| 06785 | 16785 | FLAIR-IT SWIVEL ELBOW 1/2" MPT X 1/2" FSWV BSP |
| 06807 | 16807 | FLAIR-IT SWIVEL ELBOW 3/4" X 3/4" FSWV |

# FLAIR-IT PEX & PB FITTINGS

## TEES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06831 | 16831 | FLAIR-IT TEE 3/8" |
| 06820 | 16820 | FLAIR-IT TEE 1/2" |
| 06827 | 16827 | FLAIR-IT TEE 3/4" |

## REDUCING TEES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06833 | 16833 | FLAIR-IT REDUCING TEE 3/8" X 3/8" X 1/2" |
| 06790 | 16790 | FLAIR-IT REDUCING TEE 1/2" X 1/2" X 3/8" OD F NUT |
| 06830 | 16830 | FLAIR-IT REDUCING TEE 1/2" X 1/2" X 3/8" |
| 06824 | 16824 | FLAIR-IT REDUCING TEE 3/4" X 1/2" X 1/2" |
| 06825 | 16825 | FLAIR-IT REDUCING TEE 3/4" X 1/2" X 3/4" |
| 06826 | 16826 | FLAIR-IT REDUCING TEE 3/4" X 3/4" X 1/2" |

## MALE TEES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06822 | 16822 | FLAIR-IT MALE TEE 1/2" X 1/2" X 1/2" MPT |
| 06837 | 16837 | FLAIR-IT MALE TEE 1/2" X 1/2" MPT X 1/2" MPT |
| 06838 | 16838 | FLAIR-IT MALE TEE 1/2" X 1/2" MPT X 1/2" |
| 06839 | | FLAIR-IT MALE TEE 1/2" MPT X 1/2" MPT X 1/2" |

## SWIVEL TEES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06821 | 16821 | FLAIR-IT SWIVEL TEE 1/2" X 1/2" X 1/2" FSWV |
| 06828 | | FLAIR-IT SWIVEL TEE 1/2" X 1/2" FSWV X 1/2" |
| 06829 | 16829 | FLAIR-IT SWIVEL TEE 1/2" X 1/2" X 3/4" FSWV |
| 06836 | 16836 | FLAIR-IT SWIVEL TEE 1/2" FSWV X 1/2" MPT X 1/2" MPT |

## STRAIGHT STOP VALVES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06879 | 16879 | FLAIR-IT STRAIGHT STOP VALVE 3/8" |
| 06881 | 16881 | FLAIR-IT STRAIGHT STOP VALVE 1/2" X 3/8" OD F NUT |
| 06892 | 16892 | FLAIR-IT STRAIGHT STOP VALVE 1/2" X 3/8" COMPRESSION |
| 06880 | 16880 | FLAIR-IT STRAIGHT STOP VALVE 1/2" |
| 06889 | 16889 | FLAIR-IT STRAIGHT STOP VALVE 1/2" X 1/2" MPT |

## ANGLE STOP VALVES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06883 | 16883 | FLAIR-IT ANGLE STOP VALVE 3/8" |
| 06888 | 16888 | FLAIR-IT ANGLE STOP VALVE 1/2" X 3/8" OD F NUT |
| 06893 | 16893 | FLAIR-IT ANGLE STOP VALVE 1/2" X 3/8" COMPRESSION |
| 06885 | 16885 | FLAIR-IT ANGLE STOP VALVE 1/2" |

# FLAIR-IT PEX & PB FITTINGS



### WASHING MACHINE VALVES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06886 | 16886 | FLAIR-IT WASH MACH VLV 1/2" MPT X HOSE BIBB  WASH  MACH |
| 06887 | 16887 | FLAIR-IT WASH MACH VALVE 1/2" |



### MANIFOLD VALVES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06916 | 16916 | FLAIR-IT MANIFOLD VLVE 1/2" FSWV X 1/2" MPT X 1/2" MPT (RED) |
| 06917 | 16917 | FLAIR-IT MANIFOLD VLVE 1/2" FSWV X 1/2" MPT X 1/2" MPT (BLU) |



### ANGLE DRAIN VALVES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06882 | 16882 | FLAIR-IT ANGLE DRAIN VALVE 3/8" |
| 06884 | 16884 | FLAIR-IT ANGLE DRAIN VALVE 1/2" |



### CENTER DRAIN VALVES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06902 | 16902 | FLAIR-IT 3-WAY CENTER DRAIN VALVE 3/8" |
| 06914 | 16914 | FLAIR-IT 3-WAY CENTER DRAIN VALVE 1/2" |



### WATER HEATER BYPASS VALVES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06900 | 16900 | FLAIR-IT 3-WAY WTR HTR BYPASS VALVE 3/8" |
| 06910 | 16910 | FLAIR-IT 3-WAY WTR HTR BYPASS VALVE 1/2" |
| 06912 | 16912 | FLAIR-IT 3-WAY WTR HTR BYPASS VALVE 1/2" X 1/2" MPT X 1/2" |
| 06913 | | FLAIR-IT 3-WAY WTR HTR BYPSS VLV 1/2" X 1/2" FPT SWV X 1/2" |



### RV WATER HEATER BYPASS KITS

| BULK | DESCRIPTION |
|------|-------------|
| 04912 | FLAIR-IT RV WATER HEATER BYPASS KIT |
| 04917 | FLAIR-IT SUPREME RV WATER HEATER BYPASS KIT W/ 1 VALVE |



### WATER HEATER BYPASS KIT PARTS



| BULK | DESCRIPTION |
|------|-------------|
| 06313 | 1/2" FLEXIBLE BRAIDED TUBING NUT |
| 06325 | 1/2" FLEX TUBING NUT AND INSERT |
| 06783 | 1/2" FLEXIBLE PIPE ADAPTER |
| 04914 | BRASS CHECK VALVE 1/2" MPT X 1/2" MPT |
| 04915 | BRASS NIPPLE 1/2" MPT X 2" |

# FLAIR-IT PEX & PB FITTINGS

### PLUG COUPLINGS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06862 | 16862 | FLAIR-IT PLUG COUPLING 3/8" |
| 06863 | 16863 | FLAIR-IT PLUG COUPLING 1/2" |
| 06864 | 16864 | FLAIR-IT PLUG COUPLING 3/4" |

### ICE MAKER FITTINGS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06834 | 16834 | FLAIR-IT ICE MAKER TEE 1/2" X 1/2" X 1/8" FPT |
| 06871 | 16871 | FLAIR-IT FEMALE ICE MAKER ADAPTER 1/2" X 1/8" FPT |
| 64858 | | IPLUMB BRASS NEEDLE VALVE 1/8" MPT X 1/4" OD COMP |
| 05834 | | FLAIR-IT ICE MAKER KIT (06834 & 64858) |
| | 15989 | PE TUBING 1/4" OD X 100' |

### WRENCHES



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06390 | 16390 | FLAIR-IT WRENCH 1/2" X 3/8" |
| 06391 | 16391 | FLAIR-IT WRENCH 3/4" X 1/2" |

### CAPS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06859 | 16859 | FLAIR-IT CAP 3/8" |
| 06860 | 16860 | FLAIR-IT CAP 1/2" |
| 06861 | 16861 | FLAIR-IT CAP 3/4" |

### VALVE PARTS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06419 | 16419 | VALVE SEAL |
| 06420 | 16420 | TOP NUT FOR VALVE |
| 06441 | 16441 | STEM FOR VALVE |
| 06442 | 16442 | OVAL HANDLE WHITE |
| 06445 | 16445 | TEAR DROP HANDLE RED |
| 06447 | 16447 | TEAR DROP HANDLE WHITE |
| 06448 | 16448 | TEAR DROP HANDLE BLUE |

### NUTS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06480 | 16480 | FLAIR-IT NUT 3/8" |
| 06418 | 16418 | FLAIR-IT NUT 1/2" |
| 06454 | 16454 | FLAIR-IT NUT 3/4" |

### SEALS



| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06435 | 16435 | SANTOPRENE SWIVEL SEAL 1/2" |
| 06465 | 16465 | SANTOPRENE SWIVEL SEAL 3/4" |
| 06482 | 16482 | SANTOPRENE BALLCOCK SEAL |
| 06483 | 16483 | SANTOPRENE GARDEN HOSE SEAL |



# FLAIR-IT PRO PEX FITTINGS

COUPLINGS

MALE/FEMALE ADAPTERS

ELBOWS

MALE/FEMALE ELBOWS

DROP EAR ELBOWS

TEES

MALE/FEMALE TEES

VALVES

ICE MAKER FITTINGS

CAPS

NUTS/RINGS

INSTALLATION TOOL

Flair-It PRO PEX fittings meet IAPMO, NSF, and CSA specifications and are ideal for both professional installation and do-it-yourself plumbing repair. Flair-It PRO PEX fittings require Flair-It PRO tools, which are affordable and compact for easy use in tight spaces. The Flair-It PRO PEX system is compatible with any brand or type of SDR-9 PEX tubing. It is approved for behind the wall and in concealed areas. Flair-It PRO fittings may be used with rings or nuts. Flair-it PRO fittings are available in bulk. Display/Starter kits are available.



### COUPLINGS

| BULK | DESCRIPTION |
|------|-------------|
| 27840 | FLAIR-IT PRO COUPLING 1/2" |
| 27846 | FLAIR-IT PRO COUPLING 3/4" |

### REDUCING COUPLINGS

| BULK | DESCRIPTION |
|------|-------------|
| 27845 | FLAIR-IT PRO REDUCING COUPLING 3/4" X 1/2" |

# FLAIR-IT PRO PEX FITTINGS



### MALE ADAPTERS

| BULK | DESCRIPTION |
|---|---|
| 27842 | FLAIR-IT PRO MALE ADAPTER 1/2" X 1/2" MPT |
| 27848 | FLAIR-IT PRO MALE ADAPTER 3/4" X 3/4" MPT |



### FEMALE ADAPTERS

| BULK | DESCRIPTION |
|---|---|
| 27841 | FLAIR-IT PRO FEMALE ADAPTER 1/2" X 1/2" FPT |
| 27847 | FLAIR-IT PRO FEMALE ADAPTER 3/4" X 3/4" FPT |



### SWIVEL ADAPTERS

| BULK | DESCRIPTION |
|---|---|
| 27873 | FLAIR-IT PRO FAUCET ADAPTER 1/2" X 1/2" FSWV BSP |
| 27856 | FLAIR-IT PRO SWIVEL ADAPTER 1/2" X 3/4" FSWV |
| 27865 | FLAIR-IT PRO BALLCOCK ADAPTER 1/2" X 7/8" FSWV BCT |
| 27849 | FLAIR-IT PRO SWIVEL ADAPTER 3/4" X 3/4" FSWV |



### ELBOWS

| BULK | DESCRIPTION |
|---|---|
| 27800 | FLAIR-IT PRO ELBOW 1/2" |
| 27806 | FLAIR-IT PRO ELBOW 3/4" |



### REDUCING ELBOWS

| BULK | DESCRIPTION |
|---|---|
| 27805 | FLAIR-IT PRO REDUCING ELBOW 3/4" X 1/2" |





### MALE ELBOWS

| BULK | DESCRIPTION |
|---|---|
| 27810 | FLAIR-IT PRO MALE ELBOW 1/2" X 3/8" MPT |
| 27803 | FLAIR-IT PRO MALE ELBOW 1/2" X 1/2" MPT |
| 27809 | FLAIR-IT PRO MALE ELBOW 3/4" X 3/4" MPT |



### FEMALE ELBOWS

| BULK | DESCRIPTION |
|---|---|
| 27802 | FLAIR-IT PRO FEMALE ELBOW 1/2" X 1/2" FPT |



### DROP EAR ELBOWS

| BULK | DESCRIPTION |
|---|---|
| 27801 | FLAIR-IT PRO DROP EAR ELBOW 1/2" X 1/2" FPT |

# FLAIR-IT PLUS PEX FITTINGS



### SWIVEL ELBOWS

| BULK | DESCRIPTION |
|------|-------------|
| 27816 | FLAIR-IT PRO SWIVEL ELBOW 1/2" X 1/2" FSWV BSP |
| 27811 | FLAIR-IT PRO SWIVEL ELBOW 1/2" X 3/4" FSWV |
| 27807 | FLAIR-IT PRO SWIVEL ELBOW 3/4" X 3/4" FSWV |



### TEES

| BULK | DESCRIPTION |
|------|-------------|
| 27820 | FLAIR-IT PRO TEE 1/2" |
| 27827 | FLAIR-IT PRO TEE 3/4" |



### REDUCING TEES

| BULK | DESCRIPTION |
|------|-------------|
| 27824 | FLAIR-IT PRO REDUCING TEE 3/4" X 1/2" X 1/2" |
| 27825 | FLAIR-IT PRO REDUCING TEE 3/4" X 1/2" X 3/4" |
| 27826 | FLAIR-IT PRO REDUCING TEE 3/4" X 3/4" X 1/2" |



### MALE TEES

| BULK | DESCRIPTION |
|------|-------------|
| 27839 | FLAIR-IT PRO MALE TEE 1/2" MPT X 1/2" MPT X 1/2" |
| 27822 | FLAIR-IT PRO MALE TEE 1/2" X 1/2" X 1/2" MPT |
| 27838 | FLAIR-IT PRO MALE TEE 1/2" X 1/2" MPT X 1/2" |
| 27837 | FLAIR-IT PRO MALE TEE 1/2" X 1/2" MPT X 1/2" MPT |



### SWIVEL TEES

| BULK | DESCRIPTION |
|------|-------------|
| 27828 | FLAIR-IT PRO SWIVEL TEE 1/2" X 1/2" FSWV X 1/2" |
| 27821 | FLAIR-IT PRO SWIVEL TEE 1/2" X 1/2" X 1/2" FSWV |
| 27836 | FLAIR-IT PRO SWIVEL TEE 1/2" MPT X 1/2" FSWV BSP X 1/2" MPT |



### STRAIGHT STOP VALVES

| BULK | DESCRIPTION |
|------|-------------|
| 27880 | FLAIR-IT PRO STRAIGHT STOP VALVE 1/2" |



### BIDIRECTIONAL VALVES

| BULK | DESCRIPTION |
|------|-------------|
| 27879 | FLAIR-IT PRO BIDIRECTIONAL VALVE 1/2" |

# FLAIR-IT PLUS PEX FITTINGS



### 3-WAY VALVES

| BULK | DESCRIPTION |
|------|-------------|
| 27910 | FLAIR-IT PRO 3-WAY VALVE 1/2" |



### MANIFOLD VALVES

| BULK | DESCRIPTION |
|------|-------------|
| 27890 | FLAIR-IT PRO MANIFOLD VALVE 1/2" X 1/2" FSWV (BLU) |
| 27891 | FLAIR-IT PRO MANIFOLD VALVE 1/2" X 1/2" FSWV (RED) |



### ICE MAKER FITTINGS

| BULK | DESCRIPTION |
|------|-------------|
| 27834 | FLAIR-IT PRO ICE MAKER TEE 1/2" X 1/2" X 1/8" FPT |
| 64858 | BRASS NEEDLE VALVE 1/8" MPT X 1/4" OD COMP |
| 25834 | FLAIR-IT PRO ICE MAKER KIT (07834 & 64858) |
| 15989 | PE TUBING 1/4" OD X 100' |



### CAPS

| BULK | DESCRIPTION |
|------|-------------|
| 07860 | FLAIR-IT PRO CAP 1/2" |
| 07861 | FLAIR-IT PRO CAP 3/4" |



### RINGS

| BULK | DESCRIPTION |
|------|-------------|
| 27797 | FLAIR-IT PRO RING 1/2" (RED) |
| 27798 | FLAIR-IT PRO RING 1/2" (BLU) |
| 27799 | FLAIR-IT PRO RING 1/2" (BLK) |
| 27792 | FLAIR-IT PRO RING 3/4" (RED) |
| 27793 | FLAIR-IT PRO RING 3/4" (BLU) |
| 27794 | FLAIR-IT PRO RING 3/4" (BLK) |



### NUTS

| BULK | DESCRIPTION |
|------|-------------|
| 07796 | FLAIR-IT PRO NUT 1/2" |
| 27795 | FLAIR-IT PRO NUT 3/4" |



### INSTALLATION TOOLS

| BULK | DESCRIPTION |
|------|-------------|
| 18050 | FLAIR-IT PRO INSTALLATION TOOL 1/2" USA |
| 18150 | FLAIR-IT PRO INSTALLATION TOOL 1/2" |
| 18151 | FLAIR-IT PRO INSTALLATION TOOL 3/4" |





# FLAIR-IT PLUS MANIFOLDS



**MANIFOLDS**

**MANIFOLD VALVES**

**SWIVEL ADAPTERS**

**MANIFOLD BODIES**

**MANIFOLD CAPS**

**MANIFOLD CONNECTORS**

**MANIFOLD BRACKETS**

**ACCESS PANELS**

Flair It Plus manifolds are constructed of durable Udel Polysulfone (PLS). The modular manifold assembly is customizable and easy to use. Standard 1/2" male threaded outlets make the Flair-It Plus manifolds versatile. Flair It Plus manifolds meet IAPMO NSF standards. The manifolds are available in 8 - 36 ports.

**FLAIR-IT PLUS MANIFOLDS**



| W/O VALVES | W/FLAIR-IT PLUS VALVES | DESCRIPTION |
|------------|------------------------|-------------|
| 07951 | 07950 | FLAIR-IT PLUS MANIFOLD 8 PORT |
| 07953 | 07952 | FLAIR-IT PLUS MANIFOLD 12 PORT |
| 07955 | 07954 | FLAIR-IT PLUS MANIFOLD 16 PORT |
| 07957 | 07956 | FLAIR-IT PLUS MANIFOLD 20 PORT |
| 07959 | 07958 | FLAIR-IT PLUS MANIFOLD 24 PORT |
| 07961 | 07960 | FLAIR-IT PLUS MANIFOLD 28 PORT |
| 07963 | 07962 | FLAIR-IT PLUS MANIFOLD 32 PORT |
| 07965 | 07964 | FLAIR-IT PLUS MANIFOLD 36 PORT |



**FLAIR-IT PLUS MANIFOLD VALVES**

| BULK | DESCRIPTION |
|------|-------------|
| 27890 | FLAIR-IT PRO MANIFOLD VALVE 1/2" X 1/2" FPT SWV (BLU) |
| 27891 | FLAIR-IT PRO MANIFOLD VALVE 1/2" X 1/2" FPT SWV (RED) |



**FLAIR-IT MANIFOLD VALVES**

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 06916 | 16916 | FLAIR-IT MANIFOLD VALVE 1/2" FPT SWV X 1/2" MPT X 1/2" MPT (BLU) |
| 06917 | 16917 | FLAIR-IT MANIFOLD VALVE 1/2" FPT SWV X 1/2" MPT X 1/2" MPT (RED) |



**BRASS MANIFOLD VALVES**

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 41206 | 51206 | BRASS MANIFOLD VALVE IMPORT 1/2" X 1/2" FPT SWV |
| 41207 | 51207 | DAHL BRASS MANIFOLD VALVE USA 3/8" X 1/2" FPT SWV |
| 41208 | 51208 | DAHL BRASS MANIFOLD VALVE USA 1/2" X 1/2" FPT SWV |
| 41209 | 51209 | DAHL BRASS MANIFOLD VALVE USA 3/4" X 1/2" FPT SWV |



# FLAIR-IT PLUS MANIFOLDS



### FLAIR-IT PLUS SWIVEL ADAPTERS

| BULK | DESCRIPTION |
|------|-------------|
| 27873 | FLAIR-IT PRO SWIVEL ADAPTER 1/2" X 1/2" FPT SWV BSP |



### IPLUMB BRASS SWIVEL ADAPTERS

| BULK | BARCODE | CNTRCTR PK | DESCRIPTION |
|------|---------|------------|-------------|
| 41176 | 51176 | | BRASS SWV ADAPTER 3/8" X 1/2" FPT SWV PLSTC NUT |
| 41177 | 51177 | 91177 (10) | BRASS SWV ADAPTER 1/2" X 1/2" FPT SWV PLSTC NUT |



### IPLUMB PLS SWIVEL ADAPTERS

| BULK | CNTRCTR PK | DESCRIPTION |
|------|------------|-------------|
| 34111 | 94111 (10) | IPLUMB PSU SWV ADAPTER 1/2" X 1/2" FPT SWV |



### FLAIR-IT PLUS MANIFOLD BODIES

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 07900 | 17900 | FLAIR-IT PLUS MANIFOLD BODY 2 PORT |
| 07901 | 17901 | FLAIR-IT PLUS MANIFOLD BODY 4 PORT |



### FLAIR-IT PLUS MANIFOLD CAPS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 07918 | 17918 | FLAIR-IT PLUS MANIFOLD CAP 1/2" |
| 07919 | 17919 | FLAIR-IT PLUS MANIFOLD CAP 3/4" |



### FLAIR-IT PLUS MANIFOLD CONNECTORS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 07920 | 17920 | FLAIR-IT PLUS MANIFOLD CONNECTOR 1" FSWV X 3/4" FPT |
| 07921 | 17921 | FLAIR-IT PLUS MANIFOLD CONNECTOR 1" FSWV X 3/4" MPT |
| 7917 | 17917 | FLAIR-IT PLUS MANIFOLD CONNECTOR 1" FSWV X 1" MPT |



### FLAIR-IT PLUS MANIFOLD BRACKETS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
| 07922 | 17922 | FLAIR-IT PLUS MANIFOLD BRACKET (PAIR) |



### ACCESS PANELS

| BULK | DESCRIPTION |
|------|-------------|
| 09100 | MANIFOLD ACCESS PANEL 14" X 29" (MAX 24 PORTS) |
| 09101 | MANIFOLD ACCESS PANEL 14" X 38" (MAX 36 PORTS) |
| 09102 | MANIFOLD ACCESS PANEL 14" X 50" (MAX 50 PORTS) |





# PROBITE FITTINGS

- COUPLINGS
- REDUCING COUPLINGS
- SLIP COUPLINGS
- MALE/FEMALE ADAPTERS
- ELBOWS
- MALE/FEMALE ELBOWS
- DROP EAR ELBOWS
- TEES
- END STOPS
- BALL VALVES
- CHROME SUPPLY VALVES
- SUPPLY HOSES
- CHECK VALVES
- HI-FLO STIFFENERS
- DISCONNECT CLIP
- SERVICE REPAIR KITS

PROBite Push Connect Fittings & Valves are brass push-on fittings that connect copper, PEX, CPVC and stainless steel plumbing pipe; available in both low-lead and lead-free versions. PROBite is removable and reusable with full, unrestricted flow. 1/4" - 2" PROBite fittings are available in bulk and individually barcoded bags with inserts. Starter kits are also available. PROBite fittings meet IAPMO, UPC, IPC, ASSE 1061, NSF 61 and cUPC standards. PEX inserts must be used when connecting PEX pipe. PROBite low-lead is made with ultra safe CW617N forged brass. PROBite lead-free meets Annex-G, California AB-1953 and Vermont lead-free requirements. SharkBite ® is a registered trademark of Cash Acme.

### COUPLINGS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39141 | 88141 | 50141 | 98141 | PROBITE COUPLING 1/4" C | |
| 39038 | 88038 | 50038 | 98038 | PROBITE COUPLING 3/8" C | 60 |
| 39001 | 88001 | 50001 | 98001 | PROBITE COUPLING 1/2" C | 60 |
| 39002 | 88002 | 50002 | 98002 | PROBITE COUPLING 3/4" C | 40 |
| 39024 | 88024 | 50024 | 98024 | PROBITE COUPLING 1" C | 20 |
| 39039 | 88039 | 50039 | 98039 | PROBITE COUPLING 1-1/4" C | |
| 39041 | 88041 | 50041 | 98041 | PROBITE COUPLING 1-1/2" C | |
| 39042 | 88042 | 50042 | 98042 | PROBITE COUPLING 2" C | |

### REDUCING COUPLINGS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39046 | 88046 | 50046 | 98046 | PROBITE REDUCING COUPLING 1/2" C X 3/8" C | 60 |
| 39003 | 88003 | 50003 | 98003 | PROBITE REDUCING COUPLING 3/4" C X 1/2" C | 30 |
| | | 50120 | 98120 | PROBITE REDUCING COUPLING 1" C X 1/2" C | 30 |
| 39023 | 88023 | 50023 | 98023 | PROBITE REDUCING COUPLING 1" C X 3/4" C | 20 |
| 39043 | 88043 | 50043 | 98043 | PROBITE REDUCING COUPLING 1-1/4" C X 1" C | |
| 39044 | 88044 | 50044 | 98044 | PROBITE REDUCING COUPLING 1/-1/2" C X 1-1/4" C | |
| 39045 | 88045 | 50045 | 98045 | PROBITE REDUCING COUPLING 2" C X 1-1/2" C | |

# PROBITE FITTINGS



### SLIP COUPLINGS

| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39060 | 88060 | 50060 | 98060 | PROBITE SLIP COUPLING 1/2" C (W/DISC. CLIP) | 60 |
| 39061 | 88061 | 50061 | 98061 | PROBITE SLIP COUPLING 3/4" C (W/DISC. CLIP) | 60 |
| 39062 | 88062 | 50062 | 98062 | PROBITE SLIP COUPLING 1" C (W/DISC. CLIP) | 30 |

### MALE ADAPTERS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39143 | 88143 | 50143 | 98143 | PROBITE MALE ADAPTER 1/4" C X 1/4" MPT | |
| 39052 | 88052 | 50052 | 98052 | PROBITE MALE ADAPTER 3/8" C X 3/8" MPT | |
| | | 50124 | 98124 | PROBITE MALE ADAPTER 3/8" C X 1/2" MPT | 60 |
| 39008 | 88008 | 50008 | 98008 | PROBITE MALE ADAPTER 1/2" C X 1/2" MPT | 60 |
| 39010 | 88010 | 50010 | 98010 | PROBITE MALE ADAPTER 1/2" C X 3/4" MPT | 20 |
| 39009 | 88009 | 50009 | 98009 | PROBITE MALE ADAPTER 3/4" C X 3/4" MPT | 30 |
| | | 50133 | 98133 | PROBITE MALE ADAPTER 1" C X 3/4" MPT | 20 |
| 39028 | 88028 | 50028 | 98028 | PROBITE MALE ADAPTER 1" C X 1" MPT | 25 |
| 39053 | 88053 | 50053 | 98053 | PROBITE MALE ADAPTER 1-1/4" C X 1-1/4" MPT | |
| 39054 | 88054 | 50054 | 98054 | PROBITE MALE ADAPTER 1-1/2" C X 1-1/2" MPT | |
| 39055 | 88055 | 50055 | 98055 | PROBITE MALE ADAPTER 2" C X 2" MPT | |

### FEMALE ADAPTERS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39142 | 88142 | 50142 | 98142 | PROBITE FEMALE ADAPTER 1/4" C X 1/4" FPT | |
| 39048 | 88048 | 50048 | 98048 | PROBITE FEMALE ADAPTER 3/8" C X 3/8" FPT | |
| 39005 | 88005 | 50005 | 98005 | PROBITE FEMALE ADAPTER 1/2" C X 1/2" FPT | 45 |
| 39007 | 88007 | 50007 | 98007 | PROBITE FEMALE ADAPTER 1/2" C X 3/4" FPT | 20 |
| 39006 | 88006 | 50006 | 98006 | PROBITE FEMALE ADAPTER 3/4" C X 3/4" FPT | 30 |
| 39027 | 88027 | 50027 | 98027 | PROBITE FEMALE ADAPTER 1" C X 1" FPT | 25 |
| 39049 | 88049 | 50049 | 98049 | PROBITE FEMALE ADAPTER 1-1/4" C X 1-1/4" FPT | |
| 39050 | 88050 | 50050 | 98050 | PROBITE FEMALE ADAPTER 1-1/2" C X 1-1/2" FPT | |
| 39051 | 88051 | 50051 | 98051 | PROBITE FEMALE ADAPTER 2" C X 2" FPT | |

### ELBOWS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39144 | 88144 | 50144 | 98144 | PROBITE ELBOW 1/4" C | |
| 39056 | 88056 | 50056 | 98056 | PROBITE ELBOW 3/8" C | 45 |
| 39011 | 88011 | 50011 | 98011 | PROBITE ELBOW 1/2" C | 60 |
| 39012 | 88012 | 50012 | 98012 | PROBITE ELBOW 3/4" C | 30 |
| 39026 | 88026 | 50026 | 98026 | PROBITE ELBOW 1" C | 30 |
| 39057 | 88057 | 50057 | 98057 | PROBITE ELBOW 1-1/4" C | |
| 39058 | 88058 | 50058 | 98058 | PROBITE ELBOW 1-1/2" C | |
| 39059 | 88059 | 50059 | 98059 | PROBITE ELBOW 2" C | |

### REDUCING ELBOWS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39013 | 88013 | 50013 | 98013 | PROBITE REDUCING ELBOW 3/4" C X 1/2" C | 20 |

# PROBITE FITTINGS

### MALE ELBOWS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39082 | 88082 | 50082 | 98082 | PROBITE MALE ELBOW 3/8" C X 3/8" MPT | |
| 39083 | 88083 | 50083 | 98083 | PROBITE MALE ELBOW 1/2" C X 1/2" MPT | 45 |

### FEMALE ELBOWS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39064 | 88064 | 50064 | 98064 | PROBITE FEMALE ELBOW 3/8" C X 3/8" FPT | |
| 39065 | 88065 | 50065 | 98065 | PROBITE FEMALE ELBOW 1/2" C X 1/2" FPT | 45 |

### DROP EAR ELBOWS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39101 | 88101 | 50140 | 98140 | PROBITE DROP EAR ELBOW 3/8" C X 3/8" FPT | 40 |
| 39063 | 88063 | 50063 | 98063 | PROBITE DROP EAR ELBOW 3/8" C X 1/2" FPT | |
| 39014 | 88014 | 50014 | 98014 | PROBITE DROP EAR ELBOW 1/2" C X 1/2" FPT | 30 |
| | | 50130 | 98130 | PROBITE DROP EAR ELBOW 3/4" C X 3/4" FPT | 25 |

### HIGH EAR ELBOWS



| LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|-------------|------|
| 50135 | 98135 | PROBITE HIGH EAR ELBOW 1/2" C X 1/2" FPT | 30 |

### TEES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39145 | 88145 | 50145 | 98145 | PROBITE TEE 1/4" C | |
| 39084 | 88084 | 50084 | 98084 | PROBITE TEE 3/8" C | 25 |
| 39015 | 88015 | 50015 | 98015 | PROBITE TEE 1/2" C | 30 |
| 39016 | 88016 | 50016 | 98016 | PROBITE TEE 3/4" C | 20 |
| 39022 | 88022 | 50022 | 98022 | PROBITE TEE 1" C | 10 |
| 39085 | 88085 | 50085 | 98085 | PROBITE TEE 1-1/4" C | |
| 39086 | 88086 | 50086 | 98086 | PROBITE TEE 1-1/2" C | |
| 39087 | 88087 | 50087 | 98087 | PROBITE 2" C | |

### REDUCING TEES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| | | 50127 | 98127 | PROBITE RDCNG TEE 3/8" C X 3/8" C X 1/2" C | 30 |
| | | 50126 | 98126 | PROBITE RDCNG TEE 1/2" C X 1/2" C X 3/8" C | 30 |
| 39019 | 88019 | 50019 | 98019 | PROBITE RDCNG TEE 3/4" C X 1/2" C X 1/2" C | 20 |
| 39018 | 88018 | 50018 | 98018 | PROBITE RDCNG TEE 3/4" C X 1/2" C X 3/4" C | 20 |
| 39017 | 88017 | 50017 | 98017 | PROBITE RDCNG TEE 3/4" C X 3/4" C X 1/2" C | 25 |
| 39025 | 88025 | 50025 | 98025 | PROBITE RDCNG TEE 1" C X 1" C X 3/4" C | 15 |

### END STOPS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39146 | 88146 | 50146 | 98146 | PROBITE END STOP 1/4" C | |
| 39088 | 88088 | 50088 | 98088 | PROBITE END STOP 3/8" C | 60 |
| 39020 | 88020 | 50020 | 98020 | PROBITE END STOP 1/2" C | 60 |
| 39021 | 88021 | 50021 | 98021 | PROBITE END STOP 3/4" C | 60 |
| 39030 | 88030 | 50030 | 98030 | PROBITE END STOP 1" C | 30 |
| 39089 | 88089 | 50089 | 98089 | PROBITE END STOP 1-1/4" C | |
| 39090 | 88090 | 50090 | 98090 | PROBITE END STOP 1-1/2" C | |
| 39091 | 88091 | 50091 | 98091 | PROBITE END STOP 2" C | |

# PROBITE FITTINGS

## BALL VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39035 | 88035 | 50035 | 98035 | PROBITE BALL VALVE 1/2" C | 25 |
| 39036 | 88036 | 50036 | 98036 | PROBITE BALL VALVE 3/4" C | 15 |
| 39037 | 88037 | 50037 | 98037 | PROBITE BALL VALVE 1" C | 12 |

## CHROME SUPPLY VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39094 | 88094 | 50094 | 98094 | CHRM STRT SPLY VLV 1/2" C X 3/8" O.D. COMP | |
| 39093 | 88093 | 50093 | 98093 | CHRM ANGL SPLY VLV 1/2" C X 3/8" O.D. COMP | |

## STRAIGHT VALVES



| LL BULK | LL BAG | DESCRIPTION | CASE |
|---------|--------|-------------|------|
| 39148 | 88148 | PROBITE STRAIGHT VALVE 1/2" C | |

## FAUCET CONNECTS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39103 | 88103 | 50103 | 98103 | PROBITE FCT CNNCT 12", 1/2" C X 1/2" FPT | |
| 39102 | 88102 | 50102 | 98102 | PROBITE FCT CNNCT 18", 1/2" C X 1/2" FPT | |
| 39104 | 88104 | 50104 | 98104 | PROBITE FCT CNNCT 24", 1/2" C X 1/2" FPT | |

## FAUCET CONNECTS W/STRT VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39106 | 88106 | 50106 | 98105 | PROBITE FCT CNNCT W/STRT VLV 12", 1/2" C X 1/2" FPT | |
| 39105 | 88105 | 50105 | 98105 | PROBITE FCT CNNCT W/STRT VLV 18", 1/2" C X 1/2" FPT | |
| 39107 | 88107 | 50107 | 98107 | PROBITE FCT CNNCT W/STRT VLV 24", 1/2" C X 1/2" FPT | |

## FAUCET CONNECTS W/ANGLE VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39110 | 88110 | 50110 | 98110 | PROBITE FCT CNNCT W/ANGL VLV 12", 1/2" C X 1/2" FPT | |
| 39109 | 88109 | 50109 | 98109 | PROBITE FCT CNNCT W/ANGL VLV 18", 1/2" C X 1/2" FPT | |
| 39111 | 88111 | 50111 | 98111 | PROBITE FCT CNNCT W/ANGL VLV 24", 1/2" C X 1/2" FPT | |

## WATER HEATER CONNECTS



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39100 | 88100 | 50108 | 98108 | PROBITE WTR HTR CNNCT 18", 3/4" C X 3/4" FPT | 10 |
| 39116 | 88116 | 50116 | 98116 | PROBITE WTR HTR CNNCT W/VLV 18", 3/4" C X 3/4" FPT | |
| 39117 | 88117 | 50117 | 98117 | PROBITE WTR HTR INSTALL KIT 3/4" C X 3/4" FPT | |

## TOILET CONNECTS W/STRT VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39112 | 88112 | 50112 | 98112 | PROBITE TLT CNNCT W/STRT VLV 12", 1/2" C X 7/8" FPT | |
| 39113 | 88113 | 50113 | 98113 | PROBITE TLT CNNCT W/STRT VLV 18", 1/2" C X 7/8" FPT | |

# PROBITE FITTINGS

### TOILET CONNECTS W/ANGLE VALVES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39114 | 88114 | 50114 | 98114 | PROBITE TLT CNNCT W/ANGL VLV 12", 1/2" C X 7/8" FPT | |
| 39115 | 88115 | 50115 | 98115 | PROBITE TLT CNNCT W/ANGL VLV 18", 1/2" C X 7/8" FPT | |

### REPAIR HOSES



| LL BULK | LL BAG | LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|---------|--------|-------------|------|
| 39118 | 88118 | 50118 | 98118 | PROBITE REPAIR HOSE 12", 1/2" C | |
| 39119 | 88119 | 50119 | 98119 | PROBITE REPAIR HOSE 18", 1/2" C | |

### CHECK VALVES



| LF BULK | LF BAG | DESCRIPTION | CASE |
|---------|--------|-------------|------|
| 50122 | 98122 | PROBITE CHECK VALVE 1/2" C | 30 |
| 50123 | 98123 | PROBITE CHECK VALVE 3/4" C | 20 |
| 50131 | 98131 | PROBITE CHECK VALVE 1" C | 15 |

### HI-FLO STIFFENER



| BULK | BAG | DESCRIPTION | CASE |
|------|-----|-------------|------|
| 39095 | 88095 | PROBITE HI-FLO STIFFENER 3/8" (2 PER PACKAGE) | |
| 39096 | 88096 | PROBITE HI-FLO STIFFENER 1/2" (2 PER PACKAGE) | 600 |
| 39097 | 88097 | PROBITE HI-FLO STIFFENER 3/4" (2 PER PACKAGE) | 1000 |
| 39099 | 88099 | PROBITE HI-FLO STIFFENER 1" (2 PER PACKAGE) | 200 |

### DISCONNECT CLIPS



| BULK | BAG | DESCRIPTION | CASE |
|------|-----|-------------|------|
| 39147 | 88147 | PROBITE DISCONNECT CLIP 1/4" (1 PER PACKAGE) | |
| 39092 | 88092 | PROBITE DISCONNECT CLIP 3/8" (1 PER PACKAGE) | |
| 39031 | 88031 | PROBITE DISCONNECT CLIP 1/2" (1 PER PACKAGE) | 150 |
| 39032 | 88032 | PROBITE DISCONNECT CLIP 3/4" (1 PER PACKAGE) | 150 |
| 39033 | 88033 | PROBITE DISCONNECT CLIP 1" (1 PER PACKAGE) | 100 |

### SERVICE REPAIR KITS



| LL | LF | DESCRIPTION | CASE |
|----|----|-------------|------|
| 41115 | 42115 | PROBITE SERVICE REPAIR KIT | 1 |
| 41108 | 41108 | SERVICE REPAIR KIT BOX | 6 |



# BESTPEX BRASS INSERT PEX FITTINGS

|  | **COUPLINGS** |
| | **PEX/PB ADAPTERS** |
| | **MALE/FEMALE ADAPTERS** |
| | **SWEAT ADAPTERS** |
| | **ELBOWS** |
| | **MALE/FEMALE ELBOWS** |
| | **DROP EAR ELBOWS** |
| | **TEES** |
| | **MINI MANIFOLDS** |
| | **TEST PLUGS** |
| | **SERVICE REPAIR KITS** |
| | **VALVES** |
| | **ICE MAKER FITTINGS** |
| | **WATER HAMMER ARRESTORS** |
| | **COPPER MANIFOLDS** |
| | **COPPER STUB OUTS** |
| | **COPPER CONNECTORS** |

BestPEX brass insert fittings are constructed of durable high quality brass. They meet ASTM F877, F1807 and CSA B137.5 standards and are compatible with both copper crimp rings and stainless steel clamps. 3/8" - 1" BestPEX brass insert fittings are sold in bulk, barcode and contractor packs (bulk fittings in a barcoded bag). Starter kits are available.

### COUPLINGS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41131 | 51131 | | BRASS COUPLING 3/8" | 100 | 800 |
| 41132 | 51132 | 91132 (10) | BRASS COUPLING 1/2" | 50 | 200 |
| 41133 | 51133 | 91133 (10) | BRASS COUPLING 3/4" | 100 | 400 |
| 41134 | 51134 | 91134 (5) | BRASS COUPLING 1" | 25 | 250 |

### REDUCING COUPLINGS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41135 | 51135 | | BRASS REDUCING COUPLING 1/2" X 3/8" | 100 | 1000 |
| 41136 | 51136 | 91136 (10) | BRASS REDUCING COUPLING 3/4" X 1/2" | 25 | 200 |
| 41137 | 51137 | 91137 (5) | BRASS REDUCING COUPLING 1" X 3/4" | 25 | 200 |

# BESTPEX BRASS INSERT PEX FITTINGS

### PEX/PB ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41164 | 51164 | | BRASS PEX/PB ADAPTER 1/2" PEX X 1/2" PB | 50 | 500 |
| 41165 | 51165 | | BRASS PEX/PB ADAPTER 3/4" PEX X 3/4" PB | 100 | 250 |
| 41240 | 51240 | | BRASS PEX/PB ADAPTER 1/2" PEX X 1/2" PB W/SSC | | |
| 41241 | 51241 | | BRASS PEX/PB ADAPTER 3/4" PEX X 3/4" PB W/SSC | | |
| 41250 | 51250 | | BRASS PEX/PB ADAPTER 1/2" PEX X 1/2" PB W/RING | | |
| 41251 | 51251 | | BRASS PEX/PB ADAPTER 3/4" PEX X 3/4" PB W/RING | | |

### MALE ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41121 | 51121 | | BRASS MALE ADAPTER 3/8" X 1/2" MPT | 50 | |
| 41122 | 51122 | 91122 (10) | BRASS MALE ADAPTER 1/2" X 1/2" MPT | 50 | 400 |
| 41123 | 51123 | 91123 (10) | BRASS MALE ADAPTER 1/2" X 3/4" MPT | 25 | 200 |
| 41124 | 51124 | 91124 (10) | BRASS MALE ADAPTER 3/4" X 1/2" MPT | 25 | 250 |
| 41125 | 51125 | 91125 (10) | BRASS MALE ADAPTER 3/4" X 3/4" MPT | 25 | 200 |
| 41126 | 51126 | 91126 (5) | BRASS MALE ADAPTER 1" X 3/4" MPT | 25 | 200 |
| 41127 | 51127 | 91127 (5) | BRASS MALE ADAPTER 1" X 1" MPT | 25 | 100 |

### FEMALE ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41128 | 51128 | 91128 (10) | BRASS FEMALE ADAPTER 1/2" X 1/2" FPT | 25 | 200 |
| 41129 | 51129 | 91129 (10) | BRASS FEMALE ADAPTER 1/2" X 3/4" FPT | 25 | 150 |
| 41130 | 51130 | 91130 (10) | BRASS FEMALE ADAPTER 3/4" X 3/4" FPT | 25 | 250 |
| 41154 | 51154 | 91154 (5) | BRASS FEMALE ADAPTER 1" X 1" FPT | 25 | 100 |

### SWIVEL ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41176 | 51176 | | BRASS FAUCET TERM 3/8" X 1/2" FSWV PLSTC NUT | 25 | 200 |
| 41195 | 51195 | | BRASS SWV ADAPTER 3/8" X 1/2" FSWV BRASS NUT | 25 | 250 |
| 41178 | 51178 | | BRASS BALLCOCK ADPT 3/8" X 7/8" FSWV PLSTC NUT | 25 | |
| 41177 | 51177 | 91177 (10) | BRASS FAUCET TERM 1/2" X 1/2" FSWV PLSTC NUT | 25 | 200 |
| 41196 | 51196 | | BRASS SWV ADAPTER 1/2" X 1/2" FSWV BRASS NUT | 10 | 250 |
| 41179 | 51179 | 91179 (10) | BRASS BALLCOCK ADPT 1/2" X 7/8" FSWV PLSTC NUT | 25 | 250 |
| 41199 | 51199 | | BRASS SWV ADAPTER 3/4" X 3/4" FSWV BRASS NUT | 25 | 250 |

### MALE SWEAT ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41190 | 51190 | 91190 (10) | BRASS MALE SWEAT 1/2" X 1/2" MSWT | 100 | 500 |
| 41191 | 51191 | 91191 (10) | BRASS MALE SWEAT 3/4" X 3/4" MSWT | 50 | 200 |
| 41192 | 51192 | 91192 (5) | BRASS MALE SWEAT 1" X 1" MSWT | 25 | |

### FEMALE SWEAT ADAPTERS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41193 | 51193 | 91193 (10) | BRASS FEMALE SWEAT 1/2" X 1/2" FSWT | 50 | 500 |
| 41194 | 51194 | 91194 (10) | BRASS FEMALE SWEAT 3/4" X 3/4" FSWT | 25 | 200 |
| 41211 | | | BRASS FEMALE SWEAT 1" X 1" FSWT | 25 | 100 |

### ELBOWS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41138 | 51138 | | BRASS ELBOW 3/8" | 100 | 500 |
| 41139 | 51139 | 91139 (10) | BRASS ELBOW 1/2" | 100 | 400 |
| 41140 | 51140 | 91140 (10) | BRASS ELBOW 3/4" | 25 | 300 |
| 41141 | 51141 | 91141 (5) | BRASS ELBOW 1" | 25 | |

# BESTPEX BRASS INSERT PEX FITTINGS

### REDUCING ELBOWS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41143 | 51143 | 91143 (10) | BRASS REDUCING ELBOW 3/4" X 1/2" | 25 | 250 |

### MALE ELBOWS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41144 | 51144 | | BRASS MALE ELBOW 3/8" X 1/2" MPT | 25 | |
| 41145 | 51145 | | BRASS MALE ELBOW 1/2" X 3/8" MPT | 25 | 500 |
| 41146 | 51146 | 91146 (10) | BRASS MALE ELBOW 1/2" X 1/2" MPT | 25 | 200 |
| 41147 | 51147 | 91147 (10) | BRASS MALE ELBOW 1/2" X 3/4" MPT | 25 | 200 |
| 41148 | 51148 | 91148 (10) | BRASS MALE ELBOW 3/4" X 3/4" MPT | 25 | 100 |

### DROP EAR ELBOWS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41149 | 51149 | 91149 (10) | BRASS DROP EAR ELBOW 1/2" X 1/2" FPT | 25 | |
| 41181 | 51181 | 91181 (10) | BRASS DROP EAR ELBOW 1/2" X 1/2" FPT (3 EAR) | 25 | 200 |
| 41113 | 51113 | 91113 (10) | BRASS DROP EAR ELBOW 3/4" X 3/4" FPT | 25 | 200 |

### SWIVEL ELBOWS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41197 | 51197 | | BRASS SWIVEL ELBOW 3/8" X 1/2" FSWV PLASTIC NUT | 25 | 300 |
| 41198 | 51198 | 91198 (10) | BRASS SWIVEL ELBOW 1/2" X 1/2" FSWV PLASTIC NUT | 25 | 250 |
| 41171 | 51171 | | BRASS SWIVEL ELBOW 1/2" X 3/4" FSWV BRASS NUT | 25 | 200 |
| 41107 | 51107 | | BRASS SWIVEL ELBOW 3/4" X 3/4" FSWV PLASTIC NUT | | |
| 41110 | 51110 | | BRASS SWIVEL ELBOW 3/4" X 3/4" FSWV BRASS NUT | | |

### TEES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41150 | 51150 | | BRASS TEE 3/8" | 100 | |
| 41151 | 51151 | 91151 (10) | BRASS TEE 1/2" | 50 | 250 |
| 41152 | 51152 | 91152 (10) | BRASS TEE 3/4" | 25 | 200 |
| 41153 | 51153 | 91153 (5) | BRASS TEE 1" | 10 | 100 |

### REDUCING TEES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41155 | 51155 | | BRASS REDUCING TEE 1/2" X 3/8" X 3/8" | 100 | |
| 41157 | 51157 | 91157 (10) | BRASS REDUCING TEE 1/2" X 1/2" X 3/4" | 25 | 250 |
| 41158 | 51158 | 91158 (10) | BRASS REDUCING TEE 3/4" X 1/2" X 1/2" | 25 | 100 |
| 41159 | 51159 | 91159 (10) | BRASS REDUCING TEE 3/4" X 1/2" X 3/4" | 25 | 200 |
| 41160 | 51160 | 91160 (10) | BRASS REDUCING TEE 3/4" X 3/4" X 1/2" | 25 | 200 |
| 41161 | 51161 | 91161 (5) | BRASS REDUCING TEE 1" X 3/4" X 3/4" | 25 | 100 |
| 41163 | 51163 | 91163 (5) | BRASS REDUCING TEE 1" X 1" X 1/2" | 25 | 100 |
| 41162 | 51162 | 91162 (5) | BRASS REDUCING TEE 1" X 1" X 3/4" | 25 | 100 |

### MALE TEES



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|------|---------|-------------|-----|------|
| 41112 | 51112 | BRASS MALE TEE 3/8" X 3/8" X 1/2" MPT | 25 | |
| 41111 | 51111 | BRASS MALE TEE 1/2" X 1/2" X 1/2" MPT | 25 | 100 |

# BESTPEX BRASS INSERT PEX FITTINGS

## MINI MANIFOLDS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41100 | 51100 | 91100 (5) | BRASS MINI MANIFOLD 3 PORT 1/2" X 3/4" IN/CL | 10 | 120 |
| 41101 | 51101 | 91101 (5) | BRASS MINI MANIFOLD 3 PORT 1/2" X 3/4" IN/OUT | 10 | 120 |
| 41102 | 51102 | 91102 (5) | BRASS MINI MANIFOLD 4 PORT 1/2" X 3/4" IN/CL | 10 | 120 |
| 41103 | 51103 | 91103 (5) | BRASS MINI MANIFOLD 4 PORT 1/2" X 3/4" IN/OUT | 10 | 120 |

## TEST PLUGS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41172 | 51172 | | BRASS TEST PLUG 3/8" | 100 | 500 |
| 41173 | 51173 | 91173 (10) | BRASS TEST PLUG 1/2" | 300 | 1200 |
| 41174 | 51174 | 91174 (10) | BRASS TEST PLUG 3/4" | 100 | 800 |
| 41175 | 51175 | 91175 (5) | BRASS TEST PLUG 1" | 100 | 500 |

## LONG HANDLE BALL VALVES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BOX | CASE |
|------|---------|---------|-------------|-----|------|
| 41182 | 51182 | 91182 (10) | BRASS LONG HANDLE BALL VALVE 1/2" | 10 | 100 |
| 41183 | 51183 | 91183 (10) | BRASS LONG HANDLE BALL VALVE 3/4" | 10 | 100 |
| 41184 | 51184 | 91184 (5) | BRASS LONG HANDLE BALL VALVE 1" | 5 | 50 |

## 1/4 TURN BALL VALVES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BOX | CASE |
|------|---------|---------|-------------|-----|------|
| 41200 | 51200 | | BRASS 1/4 TURN BALL VALVE 3/8" | | |
| 41249 | 51249 | 91249 (10) | CHROME 1/4 TURN BALL VALVE 1/2" | 25 | 250 |
| 41201 | 51201 | | BRASS 1/4 TURN BALL VALVE 1/2" | 10 | 100 |
| 41204 | 51204 | | CHROME 1/4 TURN BALL VALVE 3/4" | 10 | 100 |

## 1/4 TURN SUPPLY VALVES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BOX | CASE |
|------|---------|---------|-------------|-----|------|
| 41247 | 51247 | 91247 (10) | CHROME 1/4 TURN STRT VALVE 1/2" X 3/8" OD COMP | 25 | 250 |
| 41248 | 51248 | 91248 (10) | CHROME 1/4 TURN ANGL VALVE 1/2" X 3/8" OD COMP | 25 | 250 |

## MANIFOLD VALVES



| BULK | BARCODE | DESCRIPTION | BOX | CASE |
|------|---------|-------------|-----|------|
| 41207 | 51207 | DAHL MANIFOLD VALVE DOMESTIC 3/8" X 1/2" FSWV | 10 | 100 |
| 41208 | 51208 | DAHL MANIFOLD VALVE DOMESTIC 1/2" X 1/2" FSWV | 10 | 100 |
| 41206 | 51206 | IPLUMB MANIFOLD VALVE IMPORT 1/2" X 1/2" FSWV | 20 | 240 |
| 41209 | 51209 | DAHL MANIFOLD VALVE DOMESTIC 3/4" X 1/2" FSWV | 10 | 100 |

## WASHING MACHINE VALVES



| BULK | BARCODE | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|---------|-------------|-----|------|
| 41186 | 51186 | 91186 (10) | BRASS WASH MACH VALVE 1/2" X 3/4" MPT GH (RED) | | |
| 41188 | 51188 | 91188 (10) | BRASS WASH MACH VALVE 1/2" X 3/4" MPT GH (BLU) | | |

## ICE MAKER FITTINGS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|------|---------|-------------|-----|------|
| 41185 | 51185 | BRASS DRAIN VALVE TEE 1/2" X 1/2" X 1/4" OD COMPRESSION | | |
| 64858 | | BRASS NEEDLE VALVE 1/8" MPT X 1/4" OD COMPRESSION | | |
| 15989 | | PE TUBING 1/4" OD X 100' | | |

# BESTPEX BRASS INSERT PEX FITTINGS

## SERVICE REPAIR KITS



| BULK | BARCODE | DESCRIPTION | CASE |
|------|---------|-------------|------|
| | 51115 | BRASS SERVICE REPAIR KIT | 1 |
| 41108 | | SERVICE REPAIR KIT BOX | 6 |

## WATER HAMMER ARRESTORS



| BULK | DESCRIPTION | BOX | CASE |
|------|-------------|-----|------|
| 41205 | MINI WATER HAMMER ARRESTOR 1/2" | 12 | 72 |

## COPPER MANIFOLDS - CLOSED



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41230 | COPPER MANIFOLD 3 PORT 1/2" X 3/4" IN/CL | 25 |
| 41232 | COPPER MANIFOLD 4 PORT 1/2" X 3/4" IN/CL | 25 |
| 41234 | COPPER MANIFOLD 5 PORT 1/2" X 3/4" IN/CL | 25 |
| 41236 | COPPER MANIFOLD 6 PORT 1/2" X 3/4" IN/CL | 25 |
| 41238 | COPPER MANIFOLD 8 PORT 1/2" X 3/4" IN/CL | 25 |

## COPPER MANIFOLDS - OPEN



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41231 | COPPER MANIFOLD 3 PORT 1/2" X 3/4" IN/OUT | 25 |
| 41233 | COPPER MANIFOLD 4 PORT 1/2" X 3/4" IN/OUT | 25 |
| 41235 | COPPER MANIFOLD 5 PORT 1/2" X 3/4" IN/OUT | 25 |
| 41237 | COPPER MANIFOLD 6 PORT 1/2" X 3/4" IN/OUT | 25 |
| 41239 | COPPER MANIFOLD 8 PORT 1/2" X 3/4" IN/OUT | 25 |

## COPPER MANIFOLDS W/VALVES



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41226 | COPPER MANIFOLD 4 PORT 1/2" X 3/4" IN/CL W/VALVES | 10 |
| 41252 | COPPER MANIFOLD 5 PORT 1/2" X 3/4" IN/CL W/VALVES | 10 |
| 41253 | COPPER MANIFOLD 6 PORT 1/2" X 3/4" IN/CL W/VALVES | 10 |
| 41286 | COPPER MANIFOLD 4 PORT 1/2" X 3/4" IN/OUT W/VALVES | 10 |
| 41287 | COPPER MANIFOLD 5 PORT 1/2" X 3/4" IN/OUT W/VALVES | 10 |
| 41288 | COPPER MANIFOLD 6 PORT 1/2" X 3/4" IN/OUT W/VALVES | 10 |

## COPPER STUB OUTS



| BULK | BARCODE | CNTRCTR | DESCRIPTION | CASE |
|------|---------|---------|-------------|------|
| 41242 | 51242 | 91242 (10) | COPPER STUB OUT ELBOW 1/2" X 6" X 3 1/2" | 100 |
| 41256 | 51256 | 91256 (10) | COPPER STUB OUR ELBOW 1/2" X 6" X 3 1/2" W/BRKT | 50 |

## COPPER CONNECTORS

| BULK | CNTRCTR | DESCRIPTION | BAG | CASE |
|------|---------|-------------|-----|------|
| 61560 | 91560 (5) | FLEXIBLE COPPER CONNECTOR 12", 3/4" X 3/4" FPT | 25 | 100 |
| 61561 | 91561 (5) | FLEXIBLE COPPER CONNECTOR 15", 3/4" X 3/4" FPT | 25 | 100 |
| 61562 | 91562 (5) | FLEXIBLE COPPER CONNECTOR 18", 3/4" X 3/4" FPT | 25 | 100 |
| 61563 | 91563 (5) | FLEXIBLE COPPER CONNECTOR 24", 3/4" X 3/4" FPT | 25 | 100 |



# IPLUMB PSU INSERT PEX FITTINGS

COUPLINGS

MALE/FEMALE ADAPTERS

ELBOWS

FEMALE ELBOWS

TEES

TEST PLUGS

SERVICE REPAIR KITS

iPlumb polysulfone insert PEX fittings are constructed of durable Udel Polysulfone (PSU). PSU is a cost effective alternative to brass. These fittings meet the requirements of ASTM F 2159 and are compatible with copper crimp rings. 1/2" and 3/4" iPlumb PLS insert fittings are available in bulk and barcoded bags of ten.



**COUPLINGS**

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34106 | 94106 (10) | IPLUMB PSU COUPLING 1/2" | 250 |
| 34107 | 94107 (10) | IPLUMB PSU COUPLING 3/4" | 250 |



**REDUCING COUPLINGS**

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34108 | 94108 (10) | IPLUMB PSU COUPLING 3/4" X 1/2" | 250 |



**MALE ADAPTERS**

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34109 | 94109 (10) | IPLUMB PSU MALE ADPTR 1/2" X 1/2" MPT | 250 |
| 34117 | 94117 (10) | IPLUMB PSU MALE ADPTR 1/2" X 3/4" MPT | 250 |
| 34118 | 94118 (10) | IPLUMB PSU MALE ADPTR 3/4" X 1/2" MPT | 250 |
| 34110 | 94110 (10) | IPLUMB PSU MALE ADPTR 3/4" X 3/4" MPT | 250 |

# IPLUMB PLS INSERT PEX FITTINGS



### SWIVEL ADAPTERS

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34111 | 94111 (10) | IPLUMB PSU FAUCET TERMINATION 1/2" X 1/2" FSWV BSP | 250 |
| 34112 | 94112 (10) | IPLUMB PSU SWIVEL ADAPTER 3/4" X 3/4" FSWV | 250 |



### ELBOWS

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34114 | 94114 (10) | IPLUMB PSU ELBOW 1/2" | 250 |
| 34115 | 94115 (10) | IPLUMB PSU ELBOW 3/4" | 250 |



### REDUCING ELBOWS

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34113 | 94113 (10) | IPLUMB PSU ELBOW 3/4" X 1/2" | 250 |



### SWIVEL ELBOWS

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34116 | 94116 (10) | IPLUMB PSU SWIVEL ELBOW FAUCET TERM 1/2" X 1/2" FSWV BSP | 250 |



### TEES

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34100 | 94100 (10) | IPLUMB PSU TEE 1/2" | 250 |
| 34101 | 94101 (10) | IPLUMB PSU TEE 3/4" | 250 |



### REDUCING TEES

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34102 | 94102 (10) | IPLUMB PSU TEE 1/2" X 1/2" X 3/4" | 250 |
| 34103 | 94103 (10) | IPLUMB PSU TEE 3/4" X 1/2" X 1/2" | 250 |
| 34104 | 94104 (10) | IPLUMB PSU TEE 3/4" X 1/2" X 3/4" | 250 |
| 34105 | 94105 (10) | IPLUMB PSU TEE 3/4" X 3/4" X 1/2" | 250 |



### TEST PLUGS

| BULK | CNTRCTR | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 34119 | 94119 (10) | IPLUMB PSU TEST PLUG 1/2" | 250 |
| 34120 | 94120 (10) | IPLUMB PSU TEST PLUG 3/4" | 250 |



### SERVICE REPAIR KIT

| BULK | DESCRIPTION |
|------|-------------|
| 44115 | IPLUMB PSU SERVICE REPAIR KIT |
| 41108 | REPAIR KIT BOX |

Case 1:17-md-02800-TWT  Document 976-2  Filed 02/04/20  Page 197 of 246



## PEX TOOLS

- **PIPE CUTTERS**
- **RING/CLAMP REMOVAL TOOLS**
- **SSC CRIMP TOOLS**
- **COPPER RING CRIMP TOOLS**
- **COMPOSITE HANDLE CRIMP TOOLS**
- **COMPACT CRIMP TOOLS**
- **INTERCHANGEABLE DIE CRIMP TOOLS**
- **BLOCK CRIMP TOOLS**
- **TOOL REFURBISH KITS**
- **FLAIR-IT PRO TOOLS**
- **FLAIR-IT TOOLS**

Below is one of the largest and most diversified lines of PEX tools that includes both domestic and import, stainless steel clamp (SSC) and copper ring, one-handed, compact, long-handle and composite handle crimp tools, pipe cutters and ring/clamp removal tools.

### PLASTIC TUBING CUTTERS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 01150 | IPLUMB PLASTIC TUBING CUTTER | 100 |

### UNIVERSAL PIPE CUTTERS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 01175 | IPLUMB UNIVERSAL PIPE CUTTER | 60 |

### PRO RATCHET CUTTERS & BLADES



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 01100 | IPLUMB PRO RATCHET CUTTER - METAL BODY | 20 |
| 02200 | IPLUMB PRO RATCHET CUTTER - COMPOSITE BODY | 20 |
| 01000 | IPLUMB REP BLADE FOR 01100 & 02200 CUTTER | 100 |

# PEX TOOLS

### SSC REMOVAL TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18042 | SSC BUSTER TOOL USA 3/8" - 1" | 10 |

### RING REMOVAL TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18019 | COPPER RING REMOVAL TOOL USA 3/8" - 1" | 10 |

### 2-HANDLE SSC RATCHET TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41116 | SSC RATCHET TOOL USA 3/8" - 1" | 18 |
| 42116 | IMPORT SSC RATCHET TOOL 3/8" - 1" * NO WARRANTY | 20 |
| 43116 | ADVANCED IMPORT SSC RATCHET TOOL 3/8" - 1" | 30 |

### 3-HANDLE SSC RATCHET TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18038 | OETIKER 3-HANDLE SSC RATCHET TOOL USA 3/8" - 1" | 16 |

### MURRAY LONG HANDLE SSC RATCHET TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 47116 | MURRAY LONG HANDLE SSC RATCHET TOOL USA 3/8" - 1" | 8 |

### LED SSC RATCHET TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18041 | IPLUMB LED SSC RATCHET TOOL 3/8" - 1" | 24 |

### SOFT TOUCH RATCHET CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18032 | SOFT TOUCH RACHET CRIMP TOOL USA 1/2" |  |

### STANDARD CRIMP TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18022 | PEX CRIMP TOOL USA 3/8" | 14 |
| 18023 | PEX CRIMP TOOL USA 1/2" | 10 |
| 18026 | PEX CRIMP TOOL USA 1/2" & 3/4" | 10 |
| 18024 | PEX CRIMP TOOL USA 3/4" | 10 |
| 18025 | PEX CRIMP TOOL USA 1" | 10 |
| 18052 | PEX CRIMP TOOL USA 1-1/4" |  |

# PEX TOOLS



### RIGHT ANGLE CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18044 | RIGHT ANGLE PEX CRIMP TOOL USA 1/2" | |
| 18043 | RIGHT ANGLE PEX CRIMP TOOL USA 3/4" | |



### COMPOSITE HANDLE CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18123 | ERGOCRIMP PEX CRMP TOOL 1/2" | 10 |
| 18124 | ERGOCRIMP PEX CRMP TOOL 3/4" | 10 |
| 18125 | ERGOCRIMP PEX CRMP TOOL 1" | 10 |
| 18126 | ERGOCRIMP PEX CRMP TOOL 1/2" & 3/4" | 10 |
| 18045 | COMPOSITE HANDLE PEX CRMP TOOL USA 1/2" & 3/4" | 10 |



### COMPACT CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18027 | COMPACT PEX CRIMP TOOL USA 3/8" | 10 |
| 18028 | COMPACT PEX CRIMP TOOL USA 1/2" | 20 |
| 18029 | COMPACT PEX CRIMP TOOL USA 3/4" | 10 |
| 18049 | COMPACT PEX CRIMP TOOL USA 1" | 10 |



### EASY SEAL COMPACT CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18046 | EASY SEAL COMPACT PEX CRIMP TOOL USA 1/2" | 10 |
| 18047 | EASY SEAL COMPACT PEX CRIMP TOOL USA 3/4" | 10 |



### 14" COMBO CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18030 | IPLUMB 14" COMBO PEX CRIMP TOOL 3/8", 1/2" & 3/4" | 5 |



### 18" COMBO CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18031 | IPLUMB 18" COMBO PEX CRIMP TOOL 3/8", 1/2", 3/4" & 1" | 5 |



### COMBO CRIMP TOOLS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18039 | PEX CRMP TOOL W/ INTRCH DIES USA 3/8", 1/2", 3/4" & 1" | 7 |

# PEX TOOLS

### SCREW DRIVE CRIMP TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18048 | SCREW DRIVE TOOL USA 3/8" - 1" | 10 |

### UNIVERSAL CRIMP TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18599 | UNIVERSAL CRIMP TOOL 3/8", 1/2" & 3/4" | |

### BLOCK CRIMP TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18601 | BLOCK CRIMP TOOL 3/8" & 1/2" | 30 |
| 18600 | BLOCK CRIMP TOOL 1/2" & 3/4" | 30 |

### GO/NO-GO GAUGES



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18021 | GO/NO-GO GAUGE USA 3/8"-1" | 100 |

### TOOL REFURBISH KITS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 40006 | REFURBISH KIT FOR 41116 AND 18038 | 10 |
| 18054 | REPLACEMENT PIN FOR 18027/18028 | 1 |
| 18055 | REPLACEMENT E-CLIP FOR 18027/18028 | 1 |

### FLAIR-IT PRO TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18050 | FLAIR-IT PRO TOOL 1/2" USA | 30 |
| 18150 | FLAIR-IT PRO TOOL 1/2" | 30 |
| 18151 | FLAIR-IT PRO TOOL 3/4" | 30 |

### FLAIR-IT TOOLS



| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 18152 | FLAIR-IT PEX EXPANDER TOOL 1/2" & 3/4" | 30 |



# RINGS & CLAMPS

**FLAIR-IT PRO PEX RINGS**

**COPPER PEX CRIMP RINGS**

**OETIKER PEX SSC**

**MURRAY PEX SSC**

**COPPER PB CRIMP RINGS**

**OETIKER PB SSC**

iPlumb offers a variety of methods for crimping PEX fittings. Copper rings and stainless steel clamps (SSCs) are available for both PEX and polybutylene (PB). The copper rings are annealed copper and color coded for easy identification - black for PEX and gold for PB. Oetiker and Murray SSCs are constructed of stainless steel and meet ASTM F 1807 (metal fittings) and F 2098 and F 2159 (plastic fittings). Murray SSCs are ideal for cold weather installations and offer a thicker band for additional tension. Our copper rings and SSCs meet ASTM F 1807 (metal fittings) and F 2159 (plastic fittings). Our copper PB rings meet ASTM F 1380.

### FLAIR-IT PRO PEX RINGS



| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 27797 | FLAIR-IT PRO PEX RING 1/2" (RED) | | 300 |
| 27798 | FLAIR-IT PRO PEX RING 1/2" (BLU) | | 300 |
| 27799 | FLAIR-IT PRO PEX RING 1/2" (BLK) | | 300 |
| 27792 | FLAIR-IT PRO PEX RING 3/4" (RED) | | 300 |
| 27793 | FLAIR-IT PRO PEX RING 3/4" (BLU) | | 300 |
| 27794 | FLAIR-IT PRO PEX RING 3/4" (BLK) | | 300 |

# CRIMP RINGS & CLAMPS

### COPPER PEX CRIMP RINGS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|---|---|---|---|---|
| 18711 | | IPLUMB COPPER PEX CRIMP RING 3/8" BLACK | 100 | 2000 |
| 18712 | | IPLUMB COPPER PEX CRIMP RING 1/2" BLACK | 100 | 10000 |
| 18713 | | IPLUMB COPPER PEX CRIMP RING 3/4" BLACK | 50 | 500 |
| 18714 | | IPLUMB COPPER PEX CRIMP RING 1" BLACK | 50 | 250 |
| | 68711 | IPLUMB COPPER PEX CRIMP RING 3/8" BLACK 10-PACK | | |
| | 68712 | IPLUMB COPPER PEX CRIMP RING 1/2" BLACK 10-PACK | | |
| | 68713 | IPLUMB COPPER PEX CRIMP RING 3/4" BLACK 10-PACK | | |
| | 68714 | IPLUMB COPPER PEX CRIMP RING 1" BLACK 10-PACK | | |
| | 68723 | IPLUMB COPPER PEX CRIMP RING 3/8" BLACK 100-PACK | | |
| | 68724 | IPLUMB COPPER PEX CRIMP RING 1/2" BLACK 100-PACK | | |
| | 68721 | IPLUMB COPPER PEX CRIMP RING 3/4" BLACK 50-PACK | | |
| | 68722 | IPLUMB COPPER PEX CRIMP RING 1" BLACK 50-PACK | | |

### OETIKER PEX STAINLESS STEEL CLAMPS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|---|---|---|---|---|
| 41117 | | OETIKER PEX SSC 3/8" | 100 | 6000 |
| 41118 | | OETIKER PEX SSC 1/2" | 100 | 2000 |
| 41119 | | OETIKER PEX SSC 3/4" | 50 | 2000 |
| 41120 | | OETIKER PEX SSC 1" | 50 | 1300 |
| | 61117 | OETIKER PEX SSC 3/8" 10-PACK | | |
| | 61118 | OETIKER PEX SSC 1/2" 10-PACK | | |
| | 61119 | OETIKER PEX SSC 3/4" 10-PACK | | |
| | 61120 | OETIKER PEX SSC 1" 10-PACK | | |
| | 62319 | OETIKER PEX SSC 3/4" 50-PACK | | |
| | 62320 | OETIKER PEX SSC 1" 50-PACK | | |
| | 62417 | OETIKER PEX SSC 3/8" 100-PACK | | |
| | 62418 | OETIKER PEX SSC 1/2" 100-PACK | | |

### MURRAY PEX STAINLESS STEEL CLAMPS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|---|---|---|---|---|
| 46117 | | MURRAY PEX SSC 3/8" | 100 | 2000 |
| 46118 | | MURRAY PEX SSC 1/2" | 100 | 2000 |
| 46119 | | MURRAY PEX SSC 3/4" | 50 | 1000 |
| 46120 | | MURRAY PEX SSC 1" | 50 | 500 |
| | 66117 | MURRAY PEX SSC 3/8" 10-PACK | | |
| | 66118 | MURRAY PEX SSC 1/2" 10-PACK | | |
| | 66119 | MURRAY PEX SSC 3/4" 10-PACK | | |
| | 66120 | MURRAY PEX SSC 1" 10-PACK | | |
| | 66127 | MURRAY PEX SSC 3/4" 50-PACK | | |
| | 66128 | MURRAY PEX SSC 1" 50-PACK | | |
| | 66129 | MURRAY PEX SSC 3/8" 100-PACK | | |
| | 66130 | MURRAY PEX SSC 1/2" 100-PACK | | |

# CRIMP RINGS & CLAMPS

## COPPER PB CRIMP RINGS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|------|---------|-------------|-----|------|
| 18002 | | IPLUMB COPPER PB CRIMP RING 3/8" | 100 | |
| 18003 | | IPLUMB COPPER PB CRIMP RING 1/2" | 100 | |
| 18004 | | IPLUMB COPPER PB CRIMP RING 3/4" | 50 | |
| | 68002 | IPLUMB COPPER PB CRIMP RING 3/8" 10-PACK | | |
| | 68003 | IPLUMB COPPER PB CRIMP RING 1/2" 10-PACK | | |
| | 68004 | IPLUMB COPPER PB CRIMP RING 3/4" 10-PACK | | |

## OETIKER PB STAINLESS STEEL CLAMPS



| BULK | BARCODE | DESCRIPTION | BAG | CASE |
|------|---------|-------------|-----|------|
| 41227 | | OETIKER PB SSC 3/8" | 100 | |
| 41228 | | OETIKER PB SSC 1/2" | 100 | |
| 41229 | | OETIKER PB SSC 3/4" | 50 | |
| | 61227 | OETIKER PB SSC 3/8" 10-PACK | | |
| | 61228 | OETIKER PB SSC 1/2" 10-PACK | | |
| | 61229 | OETIKER PB SSC 3/4" 10-PACK | | |



# PEX INSTALLATION PRODUCTS

 **DESIGN GUIDE**

 **RB CLIP GUN SYSTEM**

 **REDDI STRIP STAPLER SYSTEM**

 **MESH APPLICATION SYSTEM**

 **HEAT TRANSFER PLATES**

 **BUBBLE FOIL**

**BEND SUPPORTS**

**J CLAMPS**

iPlumb offers a variety of PEX support products. The bend supports are especially useful because they can be installed in seconds and eliminate the need for elbows.



### RB CLIP GUNS

| BULK | DESCRIPTION |
|------|-------------|
| 40625 | RB PNEUMATIC CLIP GUN |
| 40626 | RB MANUEL CLIP GUN |





### RB CLIPS

| BULK | DESCRIPTION |
|------|-------------|
| 40267 | RB STAND-OFF CLIPS 3/8" (100/BOX) |
| 40268 | RB STAND-OFF CLIPS 1/2" (100/BOX) |
| 40269 | RB STAND-OFF CLIPS 3/4" (100/BOX) |
| 40270 | RB FLUSH MOUNT CLIPS 3/8" (100/BOX) |
| 40271 | RB FLUSH MOUNT CLIPS 1/2" (100/BOX) |
| 40272 | RB FLUSH MOUNT CLIPS 5/8" (100/BOX) |

### REDDI STRIP STAPLERS

| BULK | DESCRIPTION |
|------|-------------|
| 40620 | REDDI-STRIP STAPLER |



### REDDI-STRIP STAPLES

| BULK | DESCRIPTION |
|------|-------------|
| 40621 | REDDI-STRIP 3/4" PNET 200-BOX |
| 40622 | REDDI-STRIP 1 1/4" PNET 200-BOX |

# PEX INSTALLATION PRODUCTS



### MESH CLIP APPLICATION SYSTEM

| BULK | DESCRIPTION |
|------|-------------|
| 40623 | MESH CLIP APPLICATION TOOL |
| 40624 | MESH CLIP 5O-BOX |



### HEAT TRANSFER PLATES

| BULK | DESCRIPTION |
|------|-------------|
| 41304 | HEAT TRANSFER PLATE 1/2" X 20" |



### BUBBLE FOIL

| BULK | DESCRIPTION |
|------|-------------|
| 41313 | 16" BUBBLE FOIL 500 SQ. FT. |



### DESIGN GUIDE

| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 21000 | DESIGN GUIDE | | |



### METAL BEND SUPPORTS

| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 10375 | BEND SUPPORT METAL 3/8" | | |
| 10500 | BEND SUPPORT METAL 1/2" | | |
| 10501 | BEND SUPPORT METAL 1/2" W/BRKT | | |
| 10750 | BEND SUPPORT METAL 3/4" | 25 | 100 |



### PLASTIC BEND SUPPORTS

| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 10800 | IPLUMB BEND SUPPORT PLASTIC 1/2" | | |
| 10950 | EASY SNAP BEND SUPPORT PLASTIC 1/2" | | |
| 10975 | EASY SNAP BEND SUPPORT PLASTIC 3/4" | | |



### J CLAMPS

| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 42050 | EASY SNAP J CLAMP 1/2" | | |
| 42075 | EASY SNAP J CLAMP 3/4" | | |
| 42100 | EASY SNAP J CLAMP 1" | | |



# PEX RISERS



**1/4" RISERS W/NUTS & WSHRS**

**3/8" RISERS W/NUTS & WSHRS**

**1/4" CHROME LAV RISERS**

**1/4" CHROME TLT TANK RISERS**

**3/8" OD LAV. RISERS**

**3/8" OD CLOSET RISERS**

iPlumb offers high quality risers in a variety of colors and sizes. They meet ASME A112.18.6 and CSA B125. standards. Risers are available in both chrome and white, with and without nuts and washers, 1/4" ID, 3/8" ID and 3/8" OD.

### 1/4" ID RISERS W/NUTS & WASHERS



| BULK | BARCODE | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 71260 | 81260 | RISER W/NUTS & WASHER 1/4" ID X 10" | 100 |
| 71261 | 81261 | RISER W/NUTS & WASHER 1/4" ID X 12" | 100 |
| 71262 | 81262 | RISER W/NUTS & WASHER 1/4" ID X 20" | 50 |
| 71263 | 81263 | RISER W/NUTS & WASHER 1/4" ID X 24" | 50 |
| 71264 | 81264 | RISER W/NUTS & WASHER 1/4" ID X 30" | 50 |
| 71265 | 81265 | RISER W/NUTS & WASHER 1/4" ID X 36" | 50 |
| 71266 | 81266 | RISER W/NUTS & WASHER 1/4" ID X 48" | 50 |
| 71267 | 81267 | RISER W/NUTS & WASHER 1/4" ID X 60" | 50 |

# PEX RISERS



### 3/8" ID RISERS W/NUTS & WASHERS

| BULK | BARCODE | DESCRIPTION | CASE |
|------|---------|-------------|------|
| 71274 | 81274 | RISER W/NUTS & WASHER 3/8" ID X 12" | 300 |
| 71275 | 81275 | RISER W/NUTS & WASHER 3/8" ID X 24" | 150 |
| 71276 | 81276 | RISER W/NUTS & WASHER 3/8" ID X 36" | 35 |
| 71277 | 81277 | RISER W/NUTS & WASHER 3/8" ID X 48" | 35 |
| 71278 | 81278 | RISER W/NUTS & WASHER 3/8" ID X 60" | 50 |



### 1/4" ID CHROME BASIN/LAVATORY RISERS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 71270 | BASIN/LAVATORY PEX RISER CHROME 1/4" ID X 12" | 25 |
| 71271 | BASIN/LAVATORY PEX RISER CHROME 1/4" ID X 20" | 25 |



### 1/4" ID CHROME CLOSET/TANK RISERS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 71272 | CLOSET/TANK PEX RISER CHROME 1/4" ID X 12" | 25 |
| 71273 | CLOSET/TANK PEX RISER CHROME 1/4" ID X 20" | 25 |



### 3/8" OD BASIN/LAVATORY RISERS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41217 | BASIN/LAVATORY RISER 3/8" OD X 12" | 100 |
| 41223 | BASIN/LAVATORY RISER 3/8" OD X 15" | 100 |
| 41218 | BASIN/LAVATORY RISER 3/8" OD X 20" | 250 |
| 41219 | BASIN/LAVATORY RISER 3/8" OD X 30" | 200 |

### 3/8" OD CLOSET/TANK RISERS

| BULK | DESCRIPTION | CASE |
|------|-------------|------|
| 41220 | CLOSET/TANK RISER 3/8" OD X 12" | 100 |
| 41221 | CLOSET/TANK RISER 3/8" OD X 20" | 175 |



# DISPLAY KITS



**FLAIR-IT DISPLAY KITS**

**FLAIR-IT PRO DISPLAY KITS**

**IPLUMB BRASS DISPLAY KITS**

**IPLUMB PLS DISPLAY KITS**

**PROBITE DISPLAY KITS**

**DISPLAY KIT ACCESSORIES**

Display kits are available for Flair-It fittings, Flair-It PRO fittings, iPlumb brass insert fittings, iPlumb PLS insert fittings and PROBite fittings. Both bulk and barcoded kits are available. The freight is prepaid on all displays. *Gondolas, PEX pipe and cutters are not included with kits.*



### FLAIR-IT DISPLAY KITS

| BULK | BARCODE | DESCRIPTION |
|------|---------|-------------|
|  | 28055.5B | FLAIR-IT DISPLAY KIT 3/8", 1/2" & 3/4" - HALF KIT 4' WIDE |
|  | 28055B | FLAIR-IT DISPLAY KIT 3/8", 1/2" & 3/4" - FULL KIT 4' WIDE |
|  | 28051.5B | FLAIR-IT SUPER DISPLAY KIT 3/8", 1/2" & 3/4" - HALF KIT 8' WIDE |
|  | 28051B | FLAIR-IT SUPER DISPLAY KIT 3/8", 1/2" & 3/4" - FULL KIT 8' WIDE |
| 28070 |  | FLAIR-IT RV DISPLAY KIT 3/8" & 1/2" |

# DISPLAY KITS



### FLAIR-IT PRO DISPLAY KITS

| BULK | BARCODE | CNTRCTR PK | DESCRIPTION |
|------|---------|-----------|-------------|
| 28060 | | | FLAIR-IT PRO DISPLAY KIT 1/2" |
| 28063 | | | FLAIR-IT PRO RV/MARINE DISPLAY KIT 1/2" |
| 28061 | | | FLAIR-IT PRO DISPLAY KIT 1/2" & 3/4" |



### IPLUMB BRASS DISPLAY KITS

| BULK | BARCODE | CNTRCTR PK | DESCRIPTION |
|------|---------|-----------|-------------|
| 28059 | 28054 | 28098 | IPLUMB BRASS DISPLAY KIT 1/2" & 3/4" |
| | | 28072 | IPLUMB BRASS DISPLAY KIT 1" |



### IPLUMB PLS DISPLAY KITS

| BULK | BARCODE | CNTRCTR PK | DESCRIPTION |
|------|---------|-----------|-------------|
| 28099 | | | IPLUMB PLS DISPLAY KIT 1/2" & 3/4" |

### PROBITE DISPLAY KITS

| LOW LEAD | LEAD FREE | DESCRIPTION |
|----------|-----------|-------------|
| 28081 | 28181 | PROBITE DISPLAY KIT 1/2" & 3/4" |
| 28082 | 28182 | PROBITE DISPLAY KIT 3/8", 1/2", 3/4" & 1" |

### DISPLAY KIT ACCESSORIES



| BULK | DESCRIPTION |
|------|-------------|
| 01300 | 3 BIN TILT OUT BIN |
| 01400 | 4 BIN TILT OUT BIN |
| 01500 | 5 BIN TILT OUT BIN |
| 01600 | FLAIR-IT DISPLAY BOARD |
| 01700 | FLAIR-IT BIN TAGS - HARDWARE |
| O1800 | FLAIR-IT BIN TAGS - RV |
| 01900 | FLAIR-IT DISPLAY SETUP VIDEO |



# IRRIGATION

 **OETIKER CLAMP KITS**

 **OETIKER PINCER TOOLS**

 **OETIKER INTERLOCK CLAMPS**

**OETIKER STEPLESS CLAMPS**

Oetiker clamps can be used for connecting irrigation and binding wires and hoses. The pincers are durable and available in various sizes.

## OETIKER CLAMP KITS



| BULK | DESCRIPTION |
|------|-------------|
| 47000 | OETIKER SERVICE KIT |
| 47001 | OETIKER STEPLESS KIT |
| 47002 | OETIKER WELDING KIT |
| 47003 | OETIKER CONSTRUCTION KIT |

## OETIKER PINCER TOOLS



| BULK | DESCRIPTION | BOX | CASE |
|------|-------------|-----|------|
| 47004 | OETIKER STANDARD JAW PINCER TOOL | 6 | |
| 47005 | OETIKER SIDE JAW PINCER TOOL | 6 | |
| 47006 | OETIKER LONG HANDLE PINCER TOOL | 6 | |

## OETIKER INTERLOCK CLAMPS



| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 47007 | OETIKER INTRLOCK CLAMP 17.0-19.8 MM 1/2" POLY | 100 | |
| 47008 | OETIKER INTRLOCK CLAMP 18.2-21.0 MM 1/2" POLY | 100 | |
| 47009 | OETIKER INTRLOCK CLAMP 22.8-25.6 MM 3/4" POLY | 100 | |
| 47010 | OETIKER INTRLOCK CLAMP 24.0-27.1 MM 3/4" POLY | 100 | |
| 47011 | OETIKER INTRLOCK CLAMP 28.5-31.6 MM 3/4" POLY | 100 | |
| 47012 | OETIKER INTRLOCK CLAMP 30.0-33.1 MM 1" POLY | 100 | |

## OETIKER STEPLESS CLAMPS



| BULK | DESCRIPTION | BAG | CASE |
|------|-------------|-----|------|
| 47014 | OETIKER STEPLESS CLAMP 29.9-33.1 MM 1" POLY | 100 | |
| 47015 | OETIKER STEPLESS CLAMP 31.4-34.6 MM 1" POLY | 100 | |
| 47016 | OETIKER STEPLESS CLAMP 37.8-41.0 MM 1.25" POLY | 100 | |
| 47017 | OETIKER STEPLESS CLAMP 39.3-42.5 MM 1.25" POLY | 100 | |
| 47018 | OETIKER STEPLESS CLAMP 45.3-48.5 MM 1.50" POLY | 100 | |
| 47019 | OETIKER STEPLESS CLAMP 47.8-51.0 MM 1.50" POLY | 100 | |



# LOW PRESSURE NATURAL GAS EXCESS FLOW VALVES - NON-BYPASS

EFV-NB

The Eichler Low Pressure Natural Gas Excess Flow Valve is a non-bypass valve that is used with natural gas systems. When properly installed, it can prevent natural gas fires caused by gas leaks inside homes. The valve installs in minutes and requires no special tools or extra parts or plumbing. It may be installed vertically or horizontally and is available for various flow rates.



### NATURAL GAS EXCESS FLOW VALVES - NON-BYPASS



| BULK | DESCRIPTION |
|-------|-------------|
| 71210 | EICHLER VALVE 1.0" LP 300 VERTICAL |
| 71211 | EICHLER VALVE 1.0" LP 300 HORIZONTAL |
| 71212 | EICHLER VALVE 1.25" LP 500 VERTICAL |
| 71213 | EICHLER VALVE 1.25" LP 500 HORIZONTAL |
| 71214 | EICHLER VALVE 1.5" LP 700 VERTICAL |
| 71215 | EICHLER VALVE 1.5" LP 700 HORIZONTAL |



# COLORED FLEX CONNECTS

 **COLORED FLEX CONNECTS**

iPlumb offers high quality colored hot water tank connectors. This product is sold in sets, containing one red and one blue flex connect. These flexible connectors are constructed of 304 stainless steel tube and coated with epoxy and polyester for a durable finish and feature double-ended chrome plated brass nuts. Available in 18" and 24" models.

**COLORED FLEX CONNECTS**



| BULK | DESCRIPTION | BOX |
|---|---|---|
| 61554 | COLORED FLEX CONNECT SET 18" | 12 |
| 61555 | COLORED FLEX CONNECT SET 24" | 12 |

# iPlumb

## Order Form

**Sales Office**
6601 S. Shields Blvd.
Oklahoma City, OK 73149
800-842-2543 Toll Free
405-631-0000 Tel
405-631-1701 Fax

**Warehouse**
1701 S. Cherokee St.
Muskogee, OK 74403

| BILL TO | | |
|---|---|---|
| **ADDRESS** | | |
| **SHIP TO** | | |
| **ADDRESS** | | |
| **DATE** | **PO #** | **SHIP DATE** |
| **TERMS** | | |
| **PURCHASING AGENT NAME** | | |
| **SIGNATURE** | | |

| QTY | PART # | DESCRIPTION | PRICE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT D

Amazon.ca...Watt...Case 1:17-md-02800-TWT Document 976-2 Filed 02/04/20 Page 215 of 246 1-400R-Str...

Case 8:19-cv-07874-EW-JB Document 212-2 Filed 04/04/19 Page 66 of 78 PageID: 19492



Shop women-run businesses

Bargain finds
Shop now >

Try Prime

Tools & Home Improvement ▾

Deliver to
The Bronx 10469

Your Amazon.com    Today's Deals    Gift Cards

EN ▾    Hello, Sign in
Account & Lists ▾    Orders    Try Prime ▾    0 Cart

Tools & Home Improvement    Best Sellers    Deals & Savings    Gift Ideas    Power & Hand Tools    Lighting & Ceiling Fans    Kitchen & Bath Fixtures    Smart Home

Industrial & Scientific › Hydraulics, Pneumatics & Plumbing › Tubing, Pipe & Hose › Tubing › Plastic Tubing

Watts Water

$28.48
& FREE Shipping

**Get it as soon as April 10 – 15** when you choose **Standard Shipping** at checkout.

In Stock.

Qty: 1

$28.48 + Free Shipping

Add to Cart

Buy Now

**Ships from and sold by Great Household.**

Deliver to The Bronx 10469

Add to List

Share

Have one to sell?    Sell on Amazon

Ad feedback

Roll over image to zoom in

## Sponsored products related to this item



Davis Foreign Body Spud Straight sharp round blade. Flat serrated hanble with polis...
$20.00



MC PHERSON Forceps Tying Straight With Platform overall Length 109 mm (Titanium)
$60.00



FORCEPS TYING STRAIGHT KIRBY MODEL WITH PLATFORM OVERALL LENGTH 103MM...
$60.00



Corneal Forcep Toothed 0.1mm/0.2mm 1x2 Teeth with Tying Platform Straight Castrovie...
$78.00



#8 Deck Screws, S Length In Listing, Stainless Steel, Sq Drive, Type ...
96
$6.89

Ad feedback



1/2-Inch Pex Tubing Combo - 100' Blue 100 Feet Red Flexible Tubing - 200 Feet of Water...

27

#1 Best Seller in Pipe Supports

$54.99

## Have a question?

Find answers in product info, Q&As, reviews

## Product description

Red is for use with hot water supply, blue is used for cold water supply to make identification easier, white can be used for both or to identify water softners or incoming water line. Flexible, corrosion-resistant hot/cold potable water, CTS (rigid copper tube size) for use with Quick connect push-on fittings and/or, brass and poly alloy PEX insert barb fittings. Barbed insert PEX fittings are secured using either stainless steel cinch clamps or copper crimp ring methods. Support pipe every 30" vertically and horizontally. Protect pipe when entering/exiting slab or walls. Do not kink or expose to sunlight. Minimum clearance to water heaters, boilers, wood burning appliances 18", recessed lights 12", gas appliance vents 6". 25 year warranty even when used with other manufacturers ASTM SDR-9 Certified fittings, covers materials, labor and is not pro-rated. Maximum working pressure: 160 psi (pounds per square inch) (11 bar) at 73.4 F (degree Fahrenheit) (23 C degree Celsius); 100 psi (6.9 bar) at 180 F (80 C); 80 psi (5.5 bar) at 200 F (93 C). PEX tubing cannot be solvent welded. Caution-Do not use any pipe dope or thread sealing compound or duct tape as damage to pipe or fittings can result. No. P-12-20R: Inside Diameter: 1/2", Length: 20', Type: B, Color: Red No. P-34-20R: Inside Diameter: 3/4", Length: 20', Type: B, Color: Red No. P-12-20B: Inside Diameter: 1/2", Length: 20', Type: B, Color: Blue No. P-1-20: Inside Diameter: 1", Length: 20', Type: B, Color: White

## Product information

### Technical Details

| | |
|---|---|
| Part Number | P-34-20R |
| Item Weight | 12.8 ounces |
| Item model number | P-34-20R |
| Item Package Quantity | 1 |
| Cutting Diameter | 0.5 inches inches |
| Certification | ASTM |
| Assembled Diameter | 0.5 inches |

### Additional Information

| | |
|---|---|
| ASIN | B001UL2ZDS |
| Customer Reviews | Be the first to review this item<br>0.0 out of 5 stars |
| Best Sellers Rank | #4,418,095 in Tools & Home Improvement (See top 100)<br>#8,680 in Industrial Plastic Tubing |
| Shipping Weight | 12.8 ounces (View shipping rates and policies) |
| Date First Available | March 4, 2009 |

### Warranty & Support

**Product Warranty:** For warranty information about this product, please click here

### Feedback

If you are a seller for this product, would you like to suggest updates through seller support?

Would you like to tell us about a lower price?

## Related Video Shorts (0)  Upload your video



**Be the first video**

Your name here



Ad feedback

## Customer Questions & Answers

See questions and answers

## No customer reviews

| | | |
|---|---|---|
| 5 star | | 0% |
| 4 star | | 0% |
| 3 star | | 0% |
| 2 star | | 0% |
| 1 star | | 0% |

### Review this product

Share your thoughts with other customers

Write a customer review



Ad feedback

Ad feedback

Back to top

| Get to Know Us | Make Money with Us | Amazon Payment Products | Let Us Help You |
|---|---|---|---|
| Careers | Sell on Amazon | Amazon Rewards Visa Signature Cards | Your Account |
| Blog | Sell Under Private Brands | Amazon.com Store Card | Your Orders |
| About Amazon | Sell on Amazon Handmade | Amazon Business Card | Shipping Rates & Policies |
| Press Center | Sell Your Services on Amazon | Amazon.com Corporate Credit Line | Amazon Prime |
| Investor Relations | Sell on Amazon Business | Shop with Points | Returns & Replacements |
| Amazon Devices | Sell Your Apps on Amazon | Credit Card Marketplace | Manage Your Content and Devices |
| | Become an Affiliate | Reload Your Balance | Amazon Assistant |
| | Advertise Your Products | Amazon Currency Converter | Help |
| | Self-Publish with Us | | |
| | › See all | | |

English

United States

Amazon Music
Stream millions
of songs

Amazon Advertising
Find, attract, and
engage customers

Amazon Drive
Cloud storage
from Amazon

6pm
Score deals
on fashion brands

AbeBooks
Books, art
& collectibles

ACX
Audiobook Publishing
Made Easy

Alexa
Actionable Analytics
for the Web

Amazon Business
Everything For
Your Business

AmazonFresh
Groceries & More
Right To Your Door

AmazonGlobal
Ship Orders
Internationally

Home Services
Handpicked Pros
Happiness Guarantee

Amazon Inspire
Digital Educational
Resources

Amazon Rapids
Fun stories for
kids on the go

Amazon Restaurants
Food delivery from
local restaurants

Amazon Web Services
Scalable Cloud
Computing Services

Audible
Listen to Books & Original
Audio Performances

Book Depository
Books With Free
Delivery Worldwide

Box Office Mojo
Find Movie
Box Office Data

ComiXology
Thousands of
Digital Comics

CreateSpace
Indie Print Publishing
Made Easy

DPReview
Digital
Photography

East Dane
Designer Men's
Fashion

Fabric
Sewing, Quilting
& Knitting

Goodreads
Book reviews
& recommendations

IMDb
Movies, TV
& Celebrities

IMDbPro
Get Info Entertainment
Professionals Need

Junglee.com
Shop Online
in India

Kindle Direct Publishing
Indie Digital Publishing
Made Easy

Prime Now
FREE 2-hour Delivery
on Everyday Items

Amazon Photos
Unlimited Photo Storage
Free With Prime

Prime Video Direct
Video Distribution
Made Easy

Shopbop
Designer
Fashion Brands

Amazon Warehouse
Great Deals on
Quality Used Products

Whole Foods Market
America's Healthiest
Grocery Store

Woot!
Deals and
Shenanigans

Zappos
Shoes &
Clothing

Souq.com
Shop Online in
the Middle East

Subscribe with Amazon
Discover & try
subscription services

PillPack
Pharmacy Simplified

Amazon Renewed
Refurbished products
with a warranty

Amazon Second Chance
Pass it on, trade it in,
give it a second life

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2019, Amazon.com, Inc. or its affiliates



SDR-9 Certified fittings, covers materials, labor and is not pro-rated. Maximum working pressure: 160 psi (pounds per square inch) (11 bar) at 73.4 F (degree Fahrenheit) (23 C degree Celsius); 100 psi (6.9 bar) at 180 F (80 C); 80 psi (5.5 bar) at 200 F (93 C). PEX tubing cannot be solvent welded. Caution-Do not use any pipe dope or thread sealing compound or duct tape as damage to pipe or fittings can result. No. P-12-20R: Inside Diameter: 1/2", Length: 20', Type: B, Color: Red No. P-34-20R: Inside Diameter: 3/4", Length: 20', Type: B, Color: Red No. P-12-20B: Inside Diameter: 1/2", Length: 20', Type: B, Color: Blue No. P-1-20: Inside Diameter: 1", Length: 20', Type: B, Color: White

## Product information

### Technical Details

| | |
|---|---|
| Part Number | P-12-20B |
| Item Package Quantity | 1 |

### Additional Information

| | |
|---|---|
| ASIN | B001M5E85K |
| Customer Reviews | Be the first to review this item<br>0.0 out of 5 stars |
| Best Sellers Rank | #4,588,220 in Tools & Home Improvement (See top 100) |
| Shipping Information | View shipping rates and policies |
| Date First Available | September 23, 2010 |

### Warranty & Support

**Product Warranty:** For warranty information about this product, please click here

### Feedback

If you are a seller for this product, would you like to suggest updates through seller support?
Would you like to tell us about a lower price?

## Related Video Shorts (0)   Upload your video



**Be the first video**
Your name here



Ad feedback

## Customer Questions & Answers

See questions and answers

## No customer reviews

| | | |
|---|---|---|
| 5 star | | 0% |
| 4 star | | 0% |
| 3 star | | 0% |
| 2 star | | 0% |
| 1 star | | 0% |

## Review this product

Share your thoughts with other customers

| Write a customer review |
|---|



Ad feedback



Ad feedback

Back to top

**Get to Know Us**

Careers
Blog
About Amazon
Press Center
Investor Relations
Amazon Devices

**Make Money with Us**

Sell on Amazon
Sell Under Private Brands
Sell on Amazon Handmade
Sell Your Services on Amazon
Sell on Amazon Business
Sell Your Apps on Amazon
Become an Affiliate
Advertise Your Products
Self-Publish with Us

**Amazon Payment Products**

Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Business Card
Amazon.com Corporate Credit Line
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

**Let Us Help You**

Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help

4/4/2019, 3:35 PM

› See all

| English | | United States |

| Amazon Music | Amazon Advertising | Amazon Drive | 6pm | AbeBooks | ACX | Alexa |
| Stream millions | Find, attract, and | Cloud storage | Score deals | Books, art | Audiobook Publishing | Actionable Analytics |
| of songs | engage customers | from Amazon | on fashion brands | & collectibles | Made Easy | for the Web |
| | | | | | | |
| Amazon Business | AmazonFresh | AmazonGlobal | Home Services | Amazon Inspire | Amazon Rapids | Amazon Restaurants |
| Everything For | Groceries & More | Ship Orders | Handpicked Pros | Digital Educational | Fun stories for | Food delivery from |
| Your Business | Right To Your Door | Internationally | Happiness Guarantee | Resources | kids on the go | local restaurants |
| | | | | | | |
| Amazon Web Services | Audible | Book Depository | Box Office Mojo | ComiXology | CreateSpace | DPReview |
| Scalable Cloud | Listen to Books & Original | Books With Free | Find Movie | Thousands of | Indie Print Publishing | Digital |
| Computing Services | Audio Performances | Delivery Worldwide | Box Office Data | Digital Comics | Made Easy | Photography |
| | | | | | | |
| East Dane | Fabric | Goodreads | IMDb | IMDbPro | Junglee.com | Kindle Direct Publishing |
| Designer Men's | Sewing, Quilting | Book reviews | Movies, TV | Get Info Entertainment | Shop Online | Indie Digital Publishing |
| Fashion | & Knitting | & recommendations | & Celebrities | Professionals Need | in India | Made Easy |
| | | | | | | |
| Prime Now | Amazon Photos | Prime Video Direct | Shopbop | Amazon Warehouse | Whole Foods Market | Woot! |
| FREE 2-hour Delivery | Unlimited Photo Storage | Video Distribution | Designer | Great Deals on | America's Healthiest | Deals and |
| on Everyday Items | Free With Prime | Made Easy | Fashion Brands | Quality Used Products | Grocery Store | Shenanigans |
| | | | | | | |
| Zappos | Souq.com | Subscribe with Amazon | PillPack | Amazon Renewed | Amazon Second Chance | |
| Shoes & | Shop Online in | Discover & try | Pharmacy Simplified | Refurbished products | Pass it on, trade it in, | |
| Clothing | the Middle East | subscription services | | with a warranty | give it a second life | |

Conditions of Use   Privacy Notice   Interest-Based Ads   © 1996-2019, Amazon.com, Inc. or its affiliates



570 Broad Street / Suite 1201 / Newark, NJ 07102
**P:** 973.623.3000 / **F:** 973.623.0858 / litedepalma.com

Newark ■ Chicago ■ Philadelphia

April 4, 2019

**VIA ECF**
Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Federal Building
  and Courthouse
402 East State Street
Trenton, NJ  08608

   **Re:** *Cole v. NIBCO, Inc.*
      **Civil Action No.: 13-cv-7871(FLW)(TJB)**

Dear Judges Wolfson and Bongiovanni:

   Together with our co-counsel, this office represents Plaintiffs and the Class in this matter. With the permission of the Court, Plaintiffs submit this supplemental letter to address false statements made by objector Jeffrey Palmer and his counsel in their Declarations submitted to this Court and in Mr. Palmer's deposition. Those false statements and lack of candor to the Court and the parties calls for the Court to strike Mr. Palmer's objection and deny any attorney from The Bandas Law Firm, Mr. Palmer's counsel, pro hac vice admission. Further sanctions may be warranted but can be addressed via an appropriate motion at a later time.

### FALSE SWORN STATEMENTS BY MR. PALMER AND MR. BANDAS

   In Mr. Palmer's Declaration in opposition to final settlement approval, he swore that "To the best of my recollection, I have objected one time before to a class action settlement. That case was *Gellis v. Verizon Communications*, 07-cv-03679, before the United States District Court, Northern District of California. The objection was overruled and the appeal was dismissed for want of prosecution." ECF No. 184-1, at 4. In fact, Plaintiffs recently learned that Mr. Palmer has objected to at least two other class action settlements, both of which were plumbing cases very similar to the present matter.

   In In*re Kitec Plumbing System Prods. Liab. Litig.*, Case No. 09-md-2098-F (N.D. Tex.), Mr. Palmer filed an objection on September 30, 2011. ECF No. 108 (true copy attached to the accompanying Declaration of Bruce D. Greenberg as Exhibit A). He was represented by Mr. Bandas and the Law Offices of Darrell Palmer, Mr. Palmer's brother, who is now suspended from legal practice. *Id.* at 9-10. Among other things, Mr. Palmer objected that the *Kitec* claim form was "too invasive, demanding, and confusing," *id.* at 8-9, the same boilerplate objection he has asserted here. Similarly, Mr. Palmer's demand here that Class Counsel provide detailed lodestar information even though this is a common fund also appeared in *Kitec*. *Id.* at 2-3.

**LITE**DEPALMA
**GREENBERG**

Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
April 4, 2019
Page 2

Ten days later, on October 10, 2011, Mr. Palmer withdrew that objection, with prejudice. ECF No. 111 (Greenberg Decl., Exhibit B). Plainly, he and/or his attorneys were able to extort a payment, in keeping with the recognized practice of Messrs. Bandas and Darrell Palmer.

Mr. Palmer failed to disclose that he had objected in *Kitec*. Nor did Mr. Bandas disclose in his list of prior objections, ECF No. 184-2, that he had represented Mr. Palmer on that objection in a defective plumbing class action similar to this one.

*Kitec* is not the only prior plumbing class action settlement to which Mr. Palmer objected, and which he has concealed. In *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 3984542 (D. Minn. Sept. 11, 2012), the court described how Mr. Palmer and his brother, Paul Palmer, had objected to that settlement. In that case, the Palmers purported to be pro se. But the court observed that, in fact, Darrell Palmer appeared to be behind their objection:

> [T]he Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class-action settlements. This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas addresses of the Palmer Objectors. Further, the Palmer Objectors' Response indicates the involvement of Darrell Palmer or some other attorney. Although the Palmer Objectors profess to be pro se, their memoranda stated that "Counsel for appellants has never ever seen a cost bill exceeding $1,000 for a record of this size, in any district."

[*Id*. at *3 (emphasis by the court; citations omitted].

Mr. Palmer's misconduct in *Uponor* did not end there. The court found that the Palmers had "evidenced bad faith and vexatious conduct," justifying an appeal bond. *Id*. at *2-3. "Most critically, the Palmer Objectors are not class members. As the Court has noted in a previous order, the photograph of the allegedly faulty pipe fitting in the Palmer residences reveals that their pipe fittings are HLPEX systems, a pipe fitting not involved in this litigation." *Id*. at 3.

Here, too, Mr. Palmer lacks standing, because he does not have any Covered Product. Apparently enlightened by his experience in *Uponor*, Mr. Palmer has not presented a photograph of any purported Covered Product. Instead, he has offered only carefully vague assertions about the presence of Covered Products in his property and a receipt from Nocona Building Center that does not mention NIBCO. Mr. Palmer apparently assumed that the seller of the product he bought could not expose Mr. Palmer's claim as false. He expressed doubt at his deposition that the seller would "be aware of the difference between a NIBCO or any other fittings or probably not know exactly where he had gotten those fittings …." ECF No. 201-2, Ex. B, at 89:2-6.

**LITE DEPALMA**
**GREENBERG**

Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
April 4, 2019
Page 3

But Mr. Palmer guessed wrong.  The product numbers on the Nocona receipt match competing products, not NIBCO Covered Products.  *See also* Greenberg Decl., ¶¶4-5 & Exs. C and D.  Mr. Palmer does not have a Covered Product.  He has no standing to object.

Mr. Palmer also did not disclose that he objected in *Uponor*, and that he was found to lack standing there.  As will also be so here, the court in *Uponor* found that his objections were "without[ed] merit" and "appear[ed] little more than dilatory tactics of questionable motivation."  *Id.* at 3.  Given all the circumstances, it is not surprising that Mr. Palmer tried to conceal his *Uponor* objection from this Court.

## MR. PALMER'S OBJECTION SHOULD BE STRICKEN

Mr. Palmer and his counsel have perpetrated a fraud on the Court, innocuously holding Mr. Palmer out as a person who has objected to a class action only once before, in a context far removed from this plumbing settlement.  In reality, he has objected to at least two other plumbing class action settlements.  In one of those cases, *Kitec*, where he was represented by Mr. Bandas and Darrell Palmer, he quickly withdrew his objection.  The inference is that he or his counsel got paid off to go away.  If the Court has any doubt about that, the Court should require Messrs. Bandas and Palmer to make full disclosure of the circumstances surrounding the withdrawal of his objection in *Kitec*, provide all documents reflecting those circumstances, and appear in person to answer questions from the Court.

Given the harsh criticism of Mr. Palmer by the court in *Uponor*, it is even less believable that Mr. Palmer merely forgot about his objection in that case.  His Declaration was simply false.

"Partial disclosure can amount to fraud."  *Berman v. Gurwicz*, 189 N.J. Super. 89, 93 (Ch. Div. 1981), aff'd o.b., 189 N.J. Super. 49 (App. Div. 1983).  Having spoken, under oath, about his prior objections, Mr. Palmer had a duty to make <u>complete</u> disclosure.  He did not do so, in order to conceal from the Court his history with Mr. Bandas, his baseless *Kitec* objection, and his condemnation by the court in *Uponor*.

In the Preliminary Approval Order, the Court required objectors and their counsel to "disclose all cases in which they have filed an objection by caption, court and case number, and for each case, the disposition of the objection."  ECF No. l77, at 9.  Mr. Palmer did not obey that mandate (nor did Mr. Bandas, as discussed below).  The Court should strike his objection.

Mr. Palmer compounded his false Declaration with false testimony at this deposition about prior objections.  When asked whether, besides the present case and the *Verizon* matter that he disclosed, he had ever consulted with any other attorney about possibly objecting to a class action settlement, Mr. Palmer said "No, I've not."  ECF No. 201-2, Ex. B, at 19:16-19.  He

**LITE DEPALMA**
**GREENBERG**

Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
April 4, 2019
Page 4

also pretended at his deposition that he had no relationship with The Bandas Law Firm prior to this case, describing how his brother Darrell had suggested that he contact Mr. Clore for this case. *Id*. at 20:10-19, 57:16-58:11. Nowhere did he mention that Mr. Bandas had represented him in *Kitec*, along with Darrell Palmer.

Mr. Palmer lied about knowing that his now-suspended brother Darrell had worked with The Bandas Law Firm before, including on Mr. Palmer's own Kitec objection. At deposition, Mr. Palmer said he had "no knowledge that [Darrell] had done any work with the Bandas firm," but knew only that Darrell was "an acquaintance of Mr. Clore's." *Id*. at 62:10-23.

Finally, as shown above, it is evident that Mr. Palmer never had any Covered Product. The receipt that he proffered as evidence of that matches to competing products, not NIBCO products. For all these reasons, the Court should strike Mr. Palmer's objection.

## MESSRS. BANDAS AND CLORE SHOULD BE DENIED PRO HAC VICE ADMISSION

In their reply brief in support of their application for admission pro hac vice, Messrs. Bandas and Clore asserted that "What class counsel cannot and do not assert in opposing *pro hac vice* admission is misconduct in this case." ECF No. 199, at 2 (emphasis in original). Plaintiffs have now done that, demonstrating that Mr. Bandas deliberately concealed his role in representing Mr. Palmer as an objector to at least one other comparable plumbing settlement, *Kitec*. Mr. Bandas offered a Declaration that purported to list his prior objections, ECF No. 184-2, but he deliberately omitted his prior representation of Mr. Palmer as an objector in *Kitec*.

Mr. Bandas cannot hide behind his claim that he might not recall all of the matters in which he represented an objector. Id. at 1 n.1. He was able to recall cases whose docket numbers show they began as far back as 2002, 2003, 2005, 2006, and 2007. E.g., *id*., items 1, 3, 14, 42, 51, 52, 72, 77. It is inconceivable that Mr. Bandas forgot that he represented this same objector, Jeffrey Palmer, in another case of this same type in 2011. His omission of Kitec was plainly an effort to conceal the fact that Mr. Palmer is Mr. Bandas' "designated hitter" to object to plumbing settlements so Mr. Bandas can advance his own interest in extorting financial gain.

Mr. Bandas' false statement, in a sworn Declaration, should result in the denial of his application for pro hac vice admission. *See Shaw v. Toshiba Am. Info. Syst.*, 91 F. Supp. 2d 942, 975 & n.19 (E.D. Tex. 2000) (revoking pro hac vice admission of another serial objector counsel where his papers were "at best, negligently created and, at worst, suspiciously manufactured"). His assertion that "[t]his is not a case where Mr. Bandas has engaged in some kind of uncivil or unprofessional conduct before this Court," ECF No. 199, at 10, is no longer true (if it ever was, given his misleading statement about his role in *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), see ECF No. 197, at 4 n.3 (describing Mr. Bandas' misleading assertion)).

LITE DEPALMA
GREENBERG

Honorable Freda L. Wolfson, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.
April 4, 2019
Page 5

  Mr. Clore's application should also be denied.  Mr. Palmer testified at his deposition that Mr. Clore is the primary attorney with whom he worked on this matter.  ECF No. 201-2, Ex. B, at 32:11-15 (consultation with Mr. Clore throughout the process of completing his Claim Form), 39:17-24 (deposition preparation with both Messrs. Bandas and Clore), 57:23-58:11 (Mr. Palmer hired The Bandas Law Firm based on his discussion with Mr. Clore), 75:19-77:1 (consultation with Mr. Clore about allegedly unclear term "Effective Date"), 109:7-15 (a dozen phone calls with Mr. Clore).  Thus, Mr. Clore is fully responsible for Mr. Palmer's false Declaration.  In any event, The Bandas Law Firm cannot advance its goal of extorting payment by bringing in another attorney whose track record may not be as bad as that of Mr. Bandas himself.

  For the reasons set forth above, and in prior submissions, the Court should strike Mr. Palmer's objection or, if the Court chooses to consider it, should reject it.  The Court should deny Messrs. Bandas and Clore pro hac vice admission.

  Thank you very much for your consideration.


    Respectfully,


    Bruce D. Greenberg


BDG:emp

cc: All Counsel (via ECF)



**Eisenberg, Gold & Agrawal**

*A Professional Corporation*

1040 N. Kings Highway
Suite 200
Cherry Hill, NJ 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
Web: www.egalawfirm.com

Janet L. Gold *∆
Amar A. Agrawal *∆
Douglas J. Ferguson *∆
Andrew L. Unterlack *∆◊
Christopher J. Macchi *∆
Scott P. Shectman*∆◊
Mary B. Fisher *▢

William V. Eisenberg
(1935-2016)

Member of NJ Bar *
Member of PA Bar ∆
Member of NY Bar ◊
Of Counsel ▢

E-mail:
jgold@egalawfirm.com

Pennsylvania Office:
101 Greenwood Avenue
5th Floor
Jenkintown, PA 19046
Tel: (610) 454-7932

April 5, 2019

*Via ECF and Overnight Delivery*
Hon. Freda L. Wolfson, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

*Via ECF*
Hon. Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:**  **Cole, et al. vs. NIBCO, Inc.**
> **Docket No. 13-cv-7871 (FLW)(TJB)**
> **Our File No.: PL-570-G**

Dear Judges Wolfson and Bongiovanni,

I along with Robert Clore and Christopher Bandas represent objecting class member Jeffrey Palmer. Mr. Palmer submits this request for leave to make a short response to class counsels' supplemental submission, a copy of which is attached hereto. The responsive submission will address Jeffrey Palmer's honest mistake in forgetting two objections from nearly a decade ago (which he has now corrected in an errata sheet attached hereto), and Mr. Bandas' oversight in inadvertently omitting a single objection in which he was involved.

We welcome the opportunity to address the omissions. But, we were already in the process of preparing a submission describing troubling misconduct by class counsel in dealing with the objections. As the submission will also show, class counsel attempted to present false evidence to this Court to refute Mr. Palmer's standing. In particular, Jacob Polakoff of Berger Montague attempted to procure false testimony from an employee at Nocona Building Center to establish Mr. Palmer is not in the class. A declaration from that employee, along with Mr. Polakoff's proposed declaration containing false testimony, are attached hereto.

Thank you very much for your consideration.

Very truly yours,

**EISENBERG, GOLD & AGRAWAL, P.C.**

**JANET L. GOLD, ESQUIRE**

JLG/ks
*Enclosure(s)*

cc:  Counsel of Record (*Via ECF*)



**Eisenberg, Gold & Agrawal**

*A Professional Corporation*

1040 N. Kings Highway
Suite 200
Cherry Hill, NJ 08034
Tel: (856) 330-6200
Fax: (856) 330-6207
Web: www.egalawfirm.com

Janet L. Gold *^
Amar A. Agrawal *^
Douglas J. Ferguson *^
Andrew L. Unterlack *^◊
Christopher J. Macchi *^
Scott P. Shectman*^◊
Mary B. Fisher *▢

William V. Eisenberg
(1935-2016)

Member of NJ Bar *
Member of PA Bar ^
Member of NY Bar ◊
Of Counsel ▢

E-mail:
jgold@egalawfirm.com

Pennsylvania Office:
101 Greenwood Avenue
5th Floor
Jenkintown, PA 19046
Tel: (610) 454-7932

April 5, 2019

*Via ECF and Overnight Delivery*
Hon. Freda L. Wolfson, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

*Via ECF*
Hon. Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:   **Cole, et al. vs. NIBCO, Inc.**
      **Docket No. 13-cv-7871 (FLW)(TJB)**
      **Our File No.: PL-570-G**

Dear Judges Wolfson and Bongiovanni:

I, along with attorneys Christopher Bandas and Robert Clore, represent Jeffrey Palmer in this matter. Please accept this response to class counsels' April 4, 2019 supplemental submission.

I.      **Mr. Palmer Made an Honest Mistake.**

Class counsel are correct that Jeff Palmer objected in the two additional cases which they identified, *Kitec Plumbing System* (2011) and *In re Uponor* (2012). The failure to disclose them was not intentional, but rather was an honest mistake. Jeff Palmer recalled his *Verizon* objection and forgot the other two. There was nothing to be gained by the mistake. Not disclosing them is embarrassing and could only lead to dramatic insinuations and scandalous rhetoric exactly like what class counsel delivered. There would have been no downside to disclosing the two other matters had Mr. Palmer remembered.

Pursuant to the Federal Rules of Civil Procedure, Jeff Palmer has amended his deposition testimony to correct the omission, and his errata sheet is attached hereto. To further address the mistake, Mr. Palmer is willing to appear for an additional deposition to answer any questions about his involvement in the cases from nearly a decade ago.

Although Mr. Palmer was mistaken, he did not give false testimony. His declaration stated that, to the best of his recollection, he had objected one time *previously to a* class action settlement—i.e., in the Verizon case. Dkt. 184-1 at 4. That was his recollection, albeit mistaken. His deposition testimony is to the same effect:

# EISENBERG, GOLD & AGRAWAL, P.C.

## A PROFESSIONAL CORPORATION

April 5, 2019
Page 2

Q. Okay. So let's first talk about how you got involved in this.· Actually let's talk about other cases. Have you been a -- an objector in any other class actions besides this one?

A. Yes, I believe there's one. It's noted in the objection documents.

Q. Okay. And do you remember who the defendant was in that case?

A. I believe it was Verizon Wireless.· It's been some time ago, though, so I'm not -- I'm not going to be real up on the details of that case.

Q. Okay.· And I guess I should give you another instruction, too, which is, this is not designed as a memory test. If there's something you don't remember, feel free to say you don't remember, if that's the truth, obviously. If there is some fragments that you can remember, feel free to tell me that --

A. Okay.

Q. -- as well. Okay?

A. That's fine.

Q. In connection with the Verizon case, do you remember generally what the class action was about?

A. No. No, not at this time, I don't.

Q. Who was your lawyer in that case?

A. That would have been Darrell.

Q. And when your brother, Darrell, was representing you in that case, did he ask you to be his client in that case, or did you get a notice and come to him?· How – how did that communication flow work?

A. I honestly don't remember. I -- I remember seeing some notice somewhere about it, but I don't recall whether I inquired of him first, or he mentioned it to me.

Q. Besides this case -- putting aside this case and the Verizon case, have you received notices in any other class actions that you're a class member and you might be entitled to share in a recovery?

New Jersey Office: 1040 N. Kings Highway, Suite 200, Cherry Hill, New Jersey 08034   Tel: (856) 330-6200
Pennsylvania Office:  101 Greenwood Ave, 5th Floor, Jenkintown, PA  19046   Tel:  (610) 454-7932

# EISENBERG, GOLD & AGRAWAL, P.C.

## A PROFESSIONAL CORPORATION

April 5, 2019
Page 3

> A. I received a notice on the Naked Juice case, I believe. And there was one other case that I remember seeing -- receiving a notice on, but I can't tell you exactly what it was.

Dkt. 201-2 Ex. B at 9-11.

Thus, Jeff Palmer recalled objecting once previously, and also recalled receiving another notice. With class counsel having caught the error, he has now corrected the omission through an errata sheet and is making himself available for further examination on the subject.

Class counsel attempt to smear Jeff Palmer through the conduct of his brother, Darrell Palmer in both *Kitec* and *Uponor*. Though class counsel insinuate something sinister, there is no evidence of any impropriety in *Kitec* and the court there didn't suggest anything to the contrary. Further, the district court's criticism in *Uponor* was directed at Darrel Palmer for hiding behind *pro se* objectors, and not at Jeff Palmer. Jeff Palmer's brother is not an attorney in this case and has no involvement in it whatsoever other than suggesting Jeff call the Bandas Law Firm.

## II.   The Bandas' Firm's Omission of 1 out of 106 Objections Was an Honest Mistake.

Mr. Bandas and the Bandas Law Firm also made a mistake in omitting the 2011 *Kitec* case from their list of prior objections. That mistake was also not deliberate. In assembling the list of 105 cases in which they have objected, the 2011 *Kitec* case did not appear in their records, consistent with the generally recognized five-year file retention policy in Texas.[1] Again, there was absolutely no suggestion of any impropriety in *Kitec*.

Robert Clore, who began working with the Bandas Law firm in 2016, is the attorney who prepared the list of objections and was unaware of the 2011 *Kitec* case. Mr. Clore searched for prior objections in the firm's S drive and online. There is no record of the *Kitec* case on the Bandas Law Firm's S drive. Though Mr. Clore was able to find some objections not in the S drive through online searches, he unfortunately did not discover *Kitec*. Mr. Clore also searched the S drive for prior representation of Jeff Palmer and found none.

The list of objections involving Mr. Bandas, the Bandas Law Firm, and/or Robert Clore, which was not submitted as testimony,[2] qualified that it might be possible an objection could have been missed due to lack of recollection or lack of records. Dkt. 184-2 at 1. It also noted a server malfunction at the firm in the summer of 2017 that resulted in the loss of records. *Id.* Now that the omission has been caught, Mr. Bandas and the Bandas Firm intend to amend the list of prior objection to add *Kitec*.

---

[1]   Texas Center for Legal Ethics, Opinion 627 https://www.legalethicstexas.com/Ethics-Resources/Opinions/Opinion-627.aspx.

[2] Class counsel allege Mr. Bandas gave false testimony. Mr. Bandas did not give any testimony. And, as explained, the omission of *Kitec* in the list, which was not given in testimony, was an honest mistake.

# EISENBERG, GOLD & AGRAWAL, P.C.

## A PROFESSIONAL CORPORATION

April 5, 2019
Page 4

Class counsels' rhetoric about extortion is categorically false. There have been no demands by Jeff Palmer or his counsel in the case, nor do they intend to make any. Further, given the recent amendments to Rule 23, there can be no resolution of the objection for compensation without court approval. Fed. R. Civ. P. 23(e)(5)(B)(ii). It is the intention of Jeff Palmer and his counsel to defeat this attorney-first settlement and return millions of dollars to the class. If successful, Jeff Palmer and his attorneys certainly intend on requesting fees and an incentive award. But, class counsels' ascribing improper motives are nothing more than unfounded accusations, and have no basis in fact.

Again, the omissions class counsel are complaining about are a lapse in memory. Nothing more. Nothing less. Class counsel should be embarrassed to argue, without any evidence, that the omissions were attributable to some kind of deliberate misconduct. But, there is something nefarious beyond class counsels' attempted highway robbery of the class.

### III.  Class Counsel Attempted to Present False Evidence to the Court.

The real scandal here is the depth to which class counsel have sunk in preserving their agreed upon and disproportionate $13 million fee. Class counsel encouraged a witness to present false sworn testimony related to Jeff Palmer's standing. Attached hereto is the declaration of Donald R. McMahan, Jr., who is a manager at Nocona Building Center where Jeff Palmer purchased the Nibco PEX fittings.

As reflected in the declaration, attorney Jacob M. Polakoff from Berger Montague reached out to Mr. McMahan by phone and tried to get him to agree to certain facts. Mr. McMahan told him the facts he wanted him to say weren't true. Nevertheless, Mr. Polakoff followed up the conversation with a proposed declaration for Mr. McMahan to sign, swearing to facts that class counsel knew were not true. The declaration that Mr. Polakoff asked Mr. McMahan to sign is attached as an exhibit to Mr. McMahan's signed declaration.

Otherwise, the attacks on Jeff Palmer's standing are a reach. Class counsel complain he didn't present a photograph of any Covered Product. But how could he since he threw away the material after the October 2014 leak? Dkt. 201-2 Ex. B at 70; Dkt. 184-1 at 9. Palmer fully satisfied the requirements for making a claim by attaching a contractor's letter verifying the NIBCO fittings, which is further substantiated in his deposition. Dkt. 184-1 (claim form with contractor letter attached as exhibit to declaration); Dkt. 201-2 Ex. B at 33-34 (deposition testimony confirming the purchase of a Covered Product); *see also* Dkt. 184-1 (declaration setting forth Jeff Palmer's purchase of Nibco PEX fittings). In addition to that proof of standing, Jeff Palmer also searched his records and found a Nocona Building Center invoice from around the time he purchased the fittings. In his declaration, he explained that he was not sure that this was the invoice from the purchase of the subject fittings. Dkt. 184-1 at 2. Thus, class counsels' evidence of part numbers simply confirms this invoice was not the purchase and does nothing to negate his standing.

Jeff Palmer acknowledges his mistake in omitting two prior objections, as does Mr. Bandas in omitting the *Kitec* objection. They have made efforts to correct them, and they should have no bearing on the disposition of Jeff Palmer's meritorious objection to the settlement and egregiously excessive fee request. Again, to remedy any

New Jersey Office: 1040 N. Kings Highway, Suite 200, Cherry Hill, New Jersey 08034   Tel: (856) 330-6200
Pennsylvania Office:  101 Greenwood Ave, 5th Floor, Jenkintown, PA  19046   Tel:  (610) 454-7932

# EISENBERG, GOLD & AGRAWAL, P.C.

## A PROFESSIONAL CORPORATION

April 5, 2019
Page 5

concerns, Jeff Palmer will present himself for deposition to answer questions about these prior matters. The explained and inadvertent omission of 1 out of 106 objections involving Mr. Bandas should also not impact the Court's ruling on the requests for *pro hac vice* admission by Mr. Bandas or Mr. Clore.

Very truly yours,

**EISENBERG, GOLD & AGRAWAL, P.C.**

**JANET L. GOLD, ESQUIRE**

JLG/ks
*Enclosure(s)*

cc:     Counsel of Record (*Via ECF*)

Jeffrey Palmer
March 20, 2019

130

1                    CORRECTIONS AND SIGNATURE

2  PAGE           LINE           CHANGE          REASON

3    In reference to the question asked on page 9 lines 15-18, I have been made
     aware that there were two other instances where I participated in an objection
4    to a class action settlement.   I did not recall these cases at the time of the
     deposition   My original answer is on lines 19-20.
5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

Jeffrey Palmer
March 20, 2019

131

```
 1      I, MR. JEFFREY P. PALMER, have read the foregoing
 2  deposition and hereby affix my signature that same is true
 3  and correct, except as noted above.
 4                              MR. JEFFREY P. PALMER
 5
 6  THE STATE OF  Texas        )
 7  COUNTY OF  Montague         )
 8      Before me,  Jeffrey P. Palmer , on this day
 9  personally appeared MR. JEFFREY P. PALMER, known to me (or
10  proved to me under oath or through _____ )
11  (description of identity card or other document) to be the
12  person whose name is subscribed to the foregoing
13  instrument and acknowledged to me that he executed the
14  same for the purposes and consideration therein expressed.
15      Given under my hand and seal of office this 5th
16  day of  April           , 2019.
17
18          Notary Public in and for the State Of Texas
19  My commission expires: 3.29-22
20
21                          RENEE R. LEWIS
                            Notary Public, State of Texas
22                          Notary I.D. # 421555-7
                            My Commission Expires 03-29-2022
23
24
25
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | Civil Action No. 13-7871-FLW-TJB |
| Plaintiffs, | |
| vs. | |
| NIBCO, Inc., | |
| Defendant. | |

## DECLARATION OF DONALD R. MCMAHAN, JR.

My name is Donald R. McMahan, Jr. I am over 18 years old. I am qualified and competent to make this declaration. The facts stated herein are within my personal knowledge.

1.  I live in Montague, Texas and am manager of Nocona Building Center in Nocona, Texas. I have worked there for 14 years, but have been manager for 4 years.

2.  On April 4, 2019, attorney Jacob M. Polakoff from Berger Montague called me at work to discuss products sold at Nocona Building Center. After talking with me, he asked if I would be willing to sign a declaration, which he then sent to the fax number for Nocona Building Center at 940-825-4021. A true and correct copy of the declaration is attached hereto as Exhibit 1.

3.  The declaration Mr. Polakoff asked me to sign under penalty of perjury contains multiple false statements which are not consistent with what I told him during our discussion. For example, paragraph 3 of the declaration states that "The Nocona Building Center has never sold NIBCO Inc. PEX products." I have no idea if Nocona Building Center has sold NIBCO Inc. PEX products, and I did not tell Mr. Polakoff that I knew otherwise.

4.  The declaration also states that "I cross-referenced the item numbers found on the Nocona Building Center receipt that was attached to the declaration of Jeffrey Palmer Dkt. 184-1 at 22) with the Nocona Building Center's records. These items numbers correspond to products that the Nocona Building Center purchased from

iPLUMB PEX Plumbing and Radiant Heating Systems." That statement, which Mr. Polakoff asked me to sign under penalty of perjury, is also not true. He did not send me the necessary documents to cross-reference, and I am not completely certain where the products were purchased from as I was not solely in charge of purchasing at that time. I did not tell him that I cross-referenced the item numbers because he had not yet sent the necessary documents. He asked me to sign the declaration before providing me with the documents I was swearing to have seen.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 4, 2019

Donald R. McMahan, Jr.

# EXHIBIT 1



1818 MARKET STREET, SUITE 3600
PHILADELPHIA, PA 19103
p 215.875.3000  f 215.875.4604
BERGERMONTAGUE.COM

FAX

| TO: | Donald R. McMahan, Jr. | FROM: | Jacob M. Polakoff |
|---|---|---|---|
| FAX NO.: | 940-825-4021 | DATE: | April 4, 2019 |
| RE: | PEX Products | PAGES: | 3 (including cover sheet) |

Don,

Attached please find the declaration we discussed. If it looks good to you, please sign and fax back to me at 215-875-4604. If anything needs to be changed, please let me know. My direct phone line is 215-875-5816.

Thank you again for your help with this.

Jacob

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. The information in this transmittal may be privileged and/or confidential. It is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify Berger Montague PC immediately at (215) 875-3000 or by return e-mail. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, *et al.*, on behalf of themselves and all others similarly situated, | : Civil Action No. 3:13-cv-07871-FLW-TJB |
| *Plaintiffs*, | : |
| v. | : |
| NIBCO, Inc., | : |
| *Defendant*. | : |

### DECLARATION OF DONALD R. MCMAHAN, JR.

I, Donald R. McMahan, Jr., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am over 18 years of age and reside in Montague, Texas 76251. I have personal knowledge of the facts set forth in this Declaration, and if called to testify, I could and would testify competently thereto.

2.     I am a manager at the Nocona Builder Center, where I have worked for fourteen (14) years.

3.     The Nocona Building Center has never sold NIBCO Inc. PEX products.

4.     I cross-referenced the item numbers found on the Nocona Building Center receipt that was attached to the Declaration of Jeffrey Palmer (Dkt. 184-1 at

22) with the Nocona Building Center's records. These item numbers correspond to
products that the Nocona Building Center purchased from iPLUMB PEX
Plumbing and Radiant Heating Systems.

Executed on this 4th day of April, 2019.

                                    _____
                                    Donald R. McMahan, Jr.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**(609) 989-2040**

CHAMBERS OF

**TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

**U.S. COURTHOUSE**
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

April 5, 2019

**LETTER ORDER**

**Re:    Cole, et al. v. NIBCO, Inc.**
**Civil Action No. 13-7871 (FLW)**

Dear Counsel:

Currently pending before the Court are Christopher Bandas and Robert Clore's motions for

leave to appear *pro hac vice* on behalf of Jeffrey Palmer, an objecting class member in the above

captioned matter. (Docket Entry Nos. 182 and 183).  Counsel for the Plaintiff Class objects to

Messrs. Bandas and Clore's applications. (Docket Entry No. 197).   For the reasons set out below,

Messrs. Bandas and Clore's motions are DENIED.

L. Civ. Rule 101.1(c)(1) provides that "any member in good standing of the bar of any

court of the United States or of the highest court of any state, who is not under suspension or

disbarment by any court and is ineligible for admission to the bar of this Court under L. Civ. R.

101.1(b), may in the discretion of the Court, on motion, be permitted to appear and participate in

a particular case."   However, while the fact that an attorney is in good standing in the jurisdiction

where he or she is admitted is a prerequisite to admission *pro hac vice*, the mere fact that an

attorney is in good standing is not a guarantee of admission *pro hac vice*. *See Kohlmayer v.*

*National Railroad Passenger Corp.*, 124 F. Supp. 2d 877, 879 (D.N.J. 2000) (holding that L. Civ.

R. 101(c)(1) "contemplates that Courts may deny admission *pro hac vice*, even though the

applicant is not currently suspended or disbarred from the practice of law.").   Further, "Courts can use their discretion to deny the privilege of pro hac admission to attorneys who consistently act in an uncivilized manner, regardless of whether formal ethical complaints have been made against the pro hac applicant." *Id.* at 883.

In light of Mr. Bandas' past behavior, the Court has substantial concerns with allowing him to appear *pro hac vice*.   Although Mr. Bandas is not suspended or disbarred, several courts around the country have expressed skepticism that Mr. Bandas' objections to class settlements have been made in good faith.   For example, the Southern District of New York admonished Mr. Bandas for his actions throughout the litigation of *Garber v. Office of the Comm'r of Baseball*, No. 12-cv-3704 (S.D.N.Y. Feb 27, 2017), holding, among other things, that he "orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and extort a payoff." (*Garber*, Docket Entry No. 608 at 9).   Additionally, the Northern District of Illinois issued a permanent injunction against Mr. Bandas and the Bandas Law Firm for objecting to a class settlement for the sole purpose of extorting attorney's fees without any benefit to the class.   The Illinois Attorney & Registration Disciplinary Commission is also investigating Mr. Bandas in connection with an allegation of the unauthorized practice of law for failing to move *pro hac vice* in a matter in that state, further evidencing Mr. Bandas' indiscretions.

In addition to past wrongdoing, class counsel also argues in its April 5, 2019 supplemental letter to the Court that in this matter, Mr. Bandas deliberately concealed his role in representing Mr. Palmer as an objector in *In re Kitec Plumbing System Prods. Liab. Litig.*, Case No. 09-md-2098-F (N.D. Tex). (Pl.'s 4/5/2019 letter; Docket Entry No. 212).   Class counsel cites this omission in a sworn declaration as yet another example of Mr. Bandas' misconduct.   The Bandas

2

Law Firm filed a response to this supplemental letter, stating that the omission was a mistake on the part of Mr. Clore due to lack of record retention. (Docket Entry No. 214).   However, with a record like that associated with the Bandas Law Firm, this is error is cause for concern.

Fed. Rule Civ. P. 1 states that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."   The Court is not persuaded that the admission of Messrs. Bandas and Clore will effectuate this aim.   As a result, the Court exercises its discretion against permitting their *pro hac vice* admission.   Therefore, the aforementioned motions for leave to appear *pro hac vice* are DENIED.

**IT IS SO ORDERED.**

**The Clerk of the Court is directed to terminate Docket Entry Nos. 182 and 183.**

<div style="text-align: right">

_____s/ Tonianne J. Bongiovanni_____
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**

</div>