## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800 <br> ) Case No.: 1:17-md-2800-TWT <br> ) <br> ) CONSUMER ACTIONS <br> ) <br> ) Chief Judge Thomas W. Thrash, Jr. <br> ) <br> ) |

## MOTION TO ALTER OR AMEND JUDGMENT
## [FED. R. CIV. P. 59(e) AND 52(b)]
## AND SUPPORTING MEMORANDUM OF LAW

Class member John W. Davis ("Objector") respectfully moves for this Court pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 52(b) to amend or alter its Order Granting Final Approval of Settlement, Certifying Settlement Class and Awarding Attorney's Fees, Expenses and Service Awards entered on January 13, 2020 (DE956 - the "Approval Order") and to alter or amend the Judgment entered thereupon.

## I. INTRODUCTION

The grounds for granting a motion to alter or amend judgment under Rule 59(e) are "newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116,

1119 (11th Cir. 1999)).  Similarly, Rule 52(b) states that, "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b).

Objector respectfully asserts that the Approval Order makes fundamental legal errors in its analysis and conclusions relating to the binding authority and standards governing the award of attorneys' fees and incentive awards in common-fund cases.  The Approval Order also contains findings disparaging Objector Davis that are clearly erroneous and unduly prejudicial to the Objection.

As a consequence, the Approval Order does not give a genuine response to the objections actually made to the attorneys' fees and incentive award requests. District courts have an obligation to analyze objections carefully to ensure the settlement is fair to the absent class, and must provide a "reasoned response" to legitimate objections.  *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("The Court should examine the settlement in light of the objections raised and set forth a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response.") followed in *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1219 (5th Cir. 1978); *Burke v. Ruttenberg*, 317 F.3d 1261, 1263 (11th Cir. 2003).  The failure to make an adequate evaluation of the

objections frustrates appellate review, and requires remand on that basis alone so that the district court can make the required analysis. *Pettway*, 576 F.2d at 1219; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981) (limited remand for further analysis required because reviewing court's function is to review the district court's exercise of discretion, not to exercise its own discretion).[1]

Therefore, Objector respectfully requests that this Court reconsider: (1) Objector's argument for application of certain lodestar and fee-shifting principles to common-fund fee analysis, (2) Objector's argument that the incentive awards are contrary to law, and (3) findings regarding "serial objectors" – particularly with regard to Mr. Davis.  Mr. Davis further requests that the Court, upon rehearing, modify the Approval Order (DE956) to provide a reasoned response to the objections, to alter or amend its findings of fact and conclusions of law, and to amend the judgment accordingly.

---

[1] Indeed, in a common fund class action, a too-perfunctory fee analysis can even jeopardize the entire settlement approval.  *See Piambino v. Bailey*, 757 F.2d 1112, 1140 (11th Cir. 1985), discussing *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir., 1980).

II.    **ARGUMENT FOR A CHANGE IN ELEVENTH CIRCUIT PRECEDENT CONCERNING AN ISSUE NOT YET CONSIDERED BY THE SUPREME COURT OF THE UNITED STATES IS NOT FRIVOLOUS**

In its Order granting final approval to Plaintiffs' class settlement, this Court described as "frivolous" Objector's argument that the Court should, in setting the attorneys' fees to be awarded to Class Counsel, consider their lodestar in light of *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010).  DE956 at 93-94.

An argument is not frivolous if it is a good faith argument for an extension, modification, or reversal of existing law or the establishment of new law.  Fed. R. Civ. P. 11.  Davis's Objection describes a well-developed divergence of authority among the Circuits concerning the calculation of attorneys' fees in class and common fund cases.  Objection, DE879-1 at 7-8.  It explains that federal courts are in conflict on the most basic standards governing fee awards in common-fund cases, including whether courts should use the lodestar or percentage method, or may choose between both, and whether courts using percentage methodology should reference "benchmark" percentages or make lodestar cross-checks in setting fees.  *Id*.

The Objection also pointed out that the Supreme Court in *Perdue* cast doubt on the factors the Eleventh Circuit currently uses in setting percentage awards in

common fund cases, criticizing the "*Johnson* factors" that *Camden I* held should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condominium Ass'n*, 946 F.2d 768, 775 (11th Cir. 1991); *but see Perdue*, 559 U.S. at 551 citing *aware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986) (describing *Johnson* factors as subjective and giving "very little actual guidance to district courts."). Objection, DE879-1 at 8.

Actually, neither the Eleventh Circuit nor, more importantly, the Supreme Court has ruled definitively on the extent to which common fund fee awards must relate to lodestar, or the extent to which *Perdue* applies to common-fund cases. Against that backdrop, it is hardly frivolous to argue that lodestar should operate to constrain percentage awards, or that courts should revisit *Camden I* in light of the Supreme Court's criticism of the *Johnson* factors in *Perdue*.  Objection, DE879-1 at 8-9.

Nevertheless, the Approval Order concludes without elaboration that "*Perdue* is irrelevant in a common fund fee analysis." DE956 at 106, citing *Home Depot*, 931 F.3d at 1084-85.

That is a manifest misinterpretation of the law, for even though *Perdue* involved a fee shifting statute rather than a common fund, *Perdue* does not preclude application of a lodestar analysis to fees based on a common fund.  In

fact, the Second Circuit recently took the argument very seriously in *Fresno County Employees Retirement Assn. v. Isaacson/Weaver Family Trust*, 925 F.3d 63 (2019). *Fresno County* agreed with a critical component of Davis's argument here by invoking the Supreme Court's fee-shifting jurisprudence to analyze a lodestar cross-check in a common-fund percentage award case. *Fresno*, 925 F.3d at 72 citing, *inter alia*, *City of Burlington v. Dague,* 505 U.S. 557, 562-63 (1992). *Fresno County* also affirmed that the lodestar is a presumptively reasonable fee when used as a cross-check against a percentage award, such that the larger the deviation between the lodestar and the percentage award, the more likely the requested percentage fee represents a windfall. *Fresno County*, 925 F.3d at 72 (advocating use of lodestar crosscheck and warning that "[f]ee requests that deviate wildly from the unenhanced lodestar are unlikely to pass this crosscheck…."). Moreover, *Fresno County* expressly followed *Dague* and other Supreme Court lodestar cases in defining and limiting contingency risk enhancement in common fund cases. *Fresno County*, 925 F.3d at 68-70 (2019) (citing and discussing *City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air* (*Del. Valley II* ), 483 U.S. 711, 724-25 (1987)). Thus at least one circuit court has found that fee-shifting cases like *Perdue* and *Dague* are at least relevant to common-fund fee analysis.

For its part, the Eleventh Circuit has issued no binding precedent on the question.  In support of the finding that the argument is frivolous, the Approval Order cites *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1084-85 (11th Cir. 2019).  That case does not control here, for two reasons. First, *Home Depot* relies upon a holding of *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019), which was vacated for en banc rehearing.  11th Cir. R. 35-10 ("Unless otherwise expressly provided, the effect of granting a rehearing en banc is to vacate the panel opinion and the corresponding judgment."). Decisions vacated for en banc rehearing are not precedential.  *United States v. Rice*, 635 F.2d 409, 410 (5th Cir. January 26, 1981) (opinion vacated for en banc rehearing "constitutes no precedent").[2]  The *Muransky* panel opinion now "has no precedential value ... as it was vacated pursuant to granting of rehearing *en banc*." *United States v. McIver,* 688 F.2d 726, 729 n.5 (11th Cir. 1982). "A petition for rehearing *en banc* was granted, which effectively vacates the panel opinion as a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

citable precedent." *Henderson v. Fort Worth Ind. Sch. Dist.,* 584 F.2d 115, 116 (5th Cir. 1978).[3]

In *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1279-1280 (11th Cir. 2002), the Eleventh Circuit ruled that a prosecutor criticized for misconduct in two published opinions had no recourse to overturn the findings because both opinions were vacated, one by the panel itself, and the other upon a grant of en banc rehearing, and thus presumptively no longer existed: "Both opinions remain vacated, and are officially gone.  They have no legal effect whatever.  They are void.  None of the statements made in either of them has any remaining force and cannot be considered to express the view of this Court." *Id*. at 1280 (followed in *Compucredit Holdings Corp. v. Akanthos Capital Mgmt., LLC*, 698 F.3d 1348, 1349 (11th Cir. 2012) (describing effect of panel opinion remaining vacated by operation of law after en banc review) and *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1257 (11th Cir. 2003) (explaining why district court's reliance on vacated decision was "misplaced").[4]

---

[3] The Eleventh Circuit may decide that some part of a vacated opinion has persuasive value.  *E.g.*, *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it.").

[4]*McMillian  v. Johnson*, 88 F.3d 1573, 1578 (11th Cir.1996) (where decision of Court of Appeals was subsequently vacated on jurisdictional grounds, decision was

More fundamentally still, *Home Depot* was not a common fund case.  The Eleventh Circuit expressly found it was a fee-shifting case because the terms of the settlement provided that defendants would pay fees separately.  *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019) ("[W]e are convinced that this is a fee-shifting case.").  Having so decided, the Court cited and discussed the *Perdue* case.  *Id.* at 1082 (11th Cir. 2019) discussing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, (2010).  Consequently, its reference to *Muransky* on common fund fees would be dictum, even if *Muransky* were not vacated.  Dicta do not stand as binding precedent.  *Schwab v. Crosby,* 451 F.3d 1308, 1325 (11th Cir. 2006); *United States v. Becton,* 632 F.2d 1294, 1296 n. 3 (5th Cir.1980).

*Home Depot* concerned fee-shifting instead of common-fund methodology, and at most contains a nonprecedential reference to a nonprecedential case about common fund fees.  That does not render Davis's Objection frivolous.  It only

---

not binding precedent); *cf. Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1295 n.1 (11th Cir. 2009) (noting the 11th Circuit had addressed an issue in a prior case, but "as that case was vacated on other grounds, we have no binding precedent to guide us."). *James v. Am. Int'l Recovery, Inc.*, 799 F. Supp. 1156, 1186 (N.D. Ga. 1992) (concluding that vacated case and its progeny "may no longer be binding precedent within this circuit" and disregarding them in favor of line of cases that "currently stands as the only remaining unquestioned precedent binding upon courts in this circuit.").

illuminates the fluid line between fee-shifting and common-fund cases.  In *Home Depot*, a slightly different agreement might have led to a common-fund percentage fee.  That could lead to a considerably different fee award in the same case, even though the risk of nonpayment, the work performed, the result obtained in settlement, and the novelty and difficulty of the case are the same.

The Supreme Court has not opined on the proper place of lodestar analysis in common fund cases.  That Court has acknowledged percentage awards, but its own common-fund precedents find it cutting common-fund awards to ten percent of the fund or less.  *See* Objection, DE879-1 at 7.  The Court has allowed percentage fee awards in common-fund cases, if they are "made with moderation and a jealous regard to the rights of those who are interested in the fund," *Trustees v. Greenough*, 105 U.S. 527, 536-37 (1882), and do not exceed the "reasonable compensation for their professional services," *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (cutting common-fund fee award in half, to 5% of the fund), with "special care ... taken to confine the fees to what was reasonable." *United States v. Equitable Trust Co.,* 283 U.S. 738, 746 (1931) (cutting equitable-fund fee award that the Second Circuit had approved in half, to roughly 8% of the fund in question).

Objector's argument concerning extension, modification, or reversal of existing law regarding calculation of attorneys' fees is far from frivolous given the national importance of the issue and the well-developed split among the Circuits. Objector has made a good-faith argument that *Camden I* should be re-visited in light of intervening Supreme Court authority that cast doubt on the underpinnings of *Camden I* and which affirms that a lodestar is a presumptively reasonable fee that should only be augmented in exceptional circumstances.  Objection, 879-1 at 8-9.  Because neither the Supreme Court nor the Eleventh Circuit has conclusively ruled on the matter, this Court should entertain the argument with the correct understanding that the binding law is far from settled.

At a minimum, Objector's argument concerning calculation of attorneys' fees cannot be characterized as "frivolous" and so Mr. Davis requests that the Court amend its findings and conclusions to remove that characterization of Mr. Davis's argument.

## III.  THE COURT SHOULD RECONSIDER ITS APPROVAL OF "SERVICE AWARDS" TO EACH OF THE 96 REPRESENTATIVE PLAINTIFFS

This Court has awarded $2,500 to each of 96 representative plaintiffs, over Davis's objection that the Supreme Court's seminal common-fund cases prohibit

them. Objection, DE879-1 at 10, *et seq*.  Davis's objection comprised eight pages of detailed argument on the legality of incentive awards. *See id*.  The Approval Order rejects all of this argument by saying only that it "previously has been rejected out of hand because the cases were decided before Rule 23 and involve different facts and circumstances." DE956 at 108 citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019).

Davis's Objection, filed after *Melito* was issued, refutes each of those points with an extended discussion of the holding in *Melito*, and additional arguments not addressed in *Melito*.  Yet the Approval Order contains no reasoned response to Davis's arguments.  As to issues of fact, as the Approval Order notes, the *Melito* opinion asserts that case involved "different facts and circumstances" compelling a departure from precedent, but that court clearly did not purport to extend that factual distinction to all other cases, and the Approval Order does not examine why the facts and circumstances of *Greenough* and *Pettus* differ from *this* case.

Concerning the governing law, the Objection pointed out that the Supreme Court's last clear pronouncements on the matter are controlling; Supreme Court precedent is strengthened, and not diluted, by the passage of time.  DE879-1 at 14-15, citing *Gamble v. United States*, 139 S. Ct. 1960, 1969 (2019) and *Bosse v. Oklahoma*, 137 S.Ct. 1, 2 (2016).  The objection also explained that Rule 23 does

not authorize incentive awards to representative plaintiffs, and nothing in Rule 23 itself undermines—let alone overrules—*Greenough* and *Pettus*.  Objection, DE879-1 at 17-18.  Mr. Davis's objection further explains that the Rules Enabling Act, 28 U.S.C. §2072, would prevent Rule 23 from independently overruling those cases and conferring authority for incentive awards because the federal rules "shall not abridge, enlarge or modify any substantive right." *Id*.

The Objection provided additional context for analyzing the propriety of incentive awards.  It explained that the so-called "longstanding" practice of awarding incentive awards arose only about 30 years ago, when courts had consistently adhered to the Supreme Court's rule for a nearly a century before.  Objection, DE879-1 at 12-13.  It recounted the historical development of incentive awards, showing the practice to have originated with lower courts apparently unaware of the Supreme Court's prohibition of the practice and sometimes overruling, sub silentio, their own prior decisions.  *Id*. at 12-16.  The Objection cited academic analyses noting the lack of authority for incentive awards. *See id*. at 13, quoting 5 NEWBERG ON CLASS ACTIONS §§17:1 (5th ed. 2019); *see id.* at §§17:2, 17:4 (concluding that "The judiciary has created these awards out of whole cloth.") and Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. REV. 1303, 1312-13 (2006)

(noting the "lack of specific authorization for incentive awards in the relevant statutes or court rules.").

For these reasons, Mr. Davis submits that the legal holdings in the Approval Opinion represent a manifest error of law in the application and interpretation of binding precedent, and that they do not represent a reasoned response to valid objections to the incentive awards.  Objector Davis therefore requests that the Court reconsider its order overruling this objection, and amend the order and judgment to deny the incentive awards.

## IV.   THE RECORD DOES NOT SUPPORT THE COURT'S FINDING THAT MR. DAVIS'S OBJECTION DOES NOT BENEFIT THE CLASS

The Approval Order contains a section devoted to criticizing the professional background and record of several of the lawyers pursuing objections in this case.  Ironically, a few of the lawyers singled out have been particularly successful in pursuing objections before trial and appellate courts.  As to Mr. Davis, the disparaging comments are entirely without evidentiary support and, in fact, contrary to a public record of Mr. Davis's success in benefiting courts and absent class members by objections.

Motions under either Rule 59(e) or Rule 52(b) are an appropriate method to strike disparaging comments regarding counsel that are unsupported by evidence. *Love v. Deal*, 5 F.3d 1406, 1408-9 & n.3 (11th Cir. 1993) (plaintiffs seeking revision of footnote that was unduly critical of lawyer brought motion to amend under Rule 59(e) and Rule 52(b)).

Mr. Davis's Objection challenged the size of the fee awarded from the class fund, as well as the legality of the incentive awards granted to the named plaintiffs. As a prima facie matter, if he is correct, the class fund will be augmented for the benefit of the class.[5]  In fact, courts have observed that competent objections may be a benefit even if unsuccessful, both to courts and absent class members, by providing a genuine adversarial context to test settlements and requests for fees.[6] As discussed above, Objector's arguments are not frivolous by any measure.

---

[5] *See, e.g., Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (district court erred in denying objectors' counsel fees when their arguments resulted in a reduction of certain fee and expense awards, and thereby benefitted the class); *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) (error to refuse award to objectors' counsel when they successfully appealed fee award: "[W]hen objections "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel."); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (observing that "if a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial.").

[6] *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359-60 (N.D.Ga. 1993); *Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y.

Mr. Davis submitted information about his professional record in response to the requirements of the Notice.  DE879-1.  He provided citation to examples of cases in which he prevailed in objecting, either before trial or appellate courts, in his capacity as a lawyer and a litigant.  *Id.*  Yet the Approval Order ignores this information on the record in favor of Class Counsel's unsupported and inadmissible character assassination.

The Court's conclusion about Mr. Davis's litigation history is founded entirely on a superseded report rejected by the district court in the same case, and an unreported, non-citeable state trial court decision superseded on appeal.  There is simply no evidence to support the conclusions stated in the Approval Order.

The Approval Order cannot rely on the superseded report in *Muransky*.

---

1977).  Courts have long recognized that competent settlement objections are beneficial in class actions. *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974), quoted in *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 743 (3d Cir. 2001) (noting objectors' "valuable and important role" in class action settlements) quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) (in settlement, courts lose benefits of adversarial process so that "objectors play an important role by giving courts access to information on the settlement's merits."); *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (courts should encourage "desirable participation of objectors" in fairness determinations); *In re Prudential Ins. Co. Am. Sales Practice Lit. Agent Actions*, 278 F.3d 175, 202 (3d Cir. 2002) (objectors "raise challenges free from the burden of conflicting baggage that Class Counsel carries."); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) ("Objectors' counsel ably performed the role of devil's advocate in this litigation….").

The district court there expressly and pointedly refused to adopt the magistrate judge's conclusions about professional objector status, entering instead its own order describing the objections to the settlement as "meaningful," while expressly "ignoring the comments" of the magistrate judge disparaging counsel and disavowing any reliance on them. *Muransky v. Godiva Chocolatier, Inc.*, No. 0:15-CV-60716-WPD, 2016 WL 11601080, at *4 (S.D. Fla. Sept. 28, 2016), aff'd, 922 F.3d 1175 (11th Cir. 2019), reh'g en banc granted, opinion vacated, 939 F.3d 1278 (11th Cir. 2019).  The district court's order controls, and the earlier recommendation is a nullity. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976) (28 USC §636(b) does not give a magistrate judge's recommendation any "presumptive weight," emphasizing that the authority and responsibility to make an informed, final determination, "remains with the judge."); *Hatmaker v. Liberty Mut. Fire Ins. Co.*, 308 F. Supp. 2d 1308, 1312 (M.D. Fla. 2004) (a timely objection "requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'") (quoting *Jeffrey S. v. State Bd. of Educ.,* 896 F.2d 507, 512 (11th Cir.1990)). *Estate of Conners*, 6 F.3d at 659 & n.2 (observing that "The magistrate's error. . . was cured by the district court's later de novo review of the magistrate's findings and conclusions, and the court's entry of its own order awarding attorney's fees and costs.").

Likewise, the Approval Order cannot rely on factual conclusions about Mr.

Davis set forth in an unpublished 2005 California Appellate decision.   Under

California's strict citation rules, an unpublished trial court or appellate opinion

"must not be cited or relied on by a court or a party in any other action." Cal. Court

Rule 8.1115(a).[7]  California courts apply this rule strictly, and impose sanctions for

repeated violation.

> The rules authorize reference to unpublished opinions only in a
> narrow set of circumstances. . . .We realize that depublished and
> unpublished decisions are now as readily available as published
> cases, thanks to the Internet and technologically savvy legal research
> programs. That does not give counsel an excuse to ignore the rules
> of court. Indeed, persistent use of unpublished authority may be
> cause for sanctions.

*People v. Williams*, 176 Cal. App. 4th 1521, 1529, (2009) citing *Alicia T. v. County*

*of Los Angeles*, 222 Cal.App.3d 869, 885 (1990) modified (Aug. 16, 1990)

(imposing sanctions exceeding those normally imposed for nonconforming briefs

because "Counsel's refusal to desist in the citation of an opinion ordered not to be

published and failure to address controlling published authority merits, in our view,

---

[7] The narrow exceptions are when the opinion is relevant under law of the case, res
judicata, or collateral estoppel, or when relevant to a criminal or disciplinary
action.  Cal Court Rule 8.115(b)

a more severe sanction....").  The *Williams* Court concluded, quoting an influential

practice guide:

> Counsel would be well served to heed this advice by a leading
> treatise writer: "Do *not, under any circumstances,* cite to an
> *unpublished or depublished* opinion (or any *unpublished part* of a
> published opinion) ... unless ... one of the narrow exceptions to the
> noncitation rule applies."

*People v. Williams*, 176 Cal. App. 4th at 1529 (quoting Eisenberg et al., CAL.

PRACTICE GUIDE: CIVIL APPEALS AND WRITS (The Rutter Group 2008) ¶ 9:59, p.

9–18) (emphasis in original)).  Like the vacated decisions discussed above,

unpublished opinions are a nullity – they do not exist.  *See Farmers Ins. Exch. v.*

*Superior Court*, 218 Cal. App. 4th 96, 109, 159 Cal. Rptr. 3d 580, 591 (2013)

""[A] depublished opinion is no longer part of the law and thus ceases to exist.").

Putting aside whether these cases could be cited in the first place, this Court

could not in any event rely on either of the cited documents as evidence to

establish that Mr. Davis is a "professional objector," even if there were court

orders that actually said that.  Most courts agree that Fed. R. Evid. 201 does not

permit courts to judicially notice the truth of findings of fact from court documents

in other cases.  See 21B Charles Alan Wright and Kenneth W. Graham, Jr. FED.

PRAC. & PROC. EVID. § 5106.4 (2d ed., April 2018 Supp.) (footnotes omitted); *Orix*

*Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 725-

726 (11th Cir. 1995) (a court may take judicial "notice of another court's order ...

for the limited purpose of recognizing the 'judicial act' that the order represents or

the subject matter of the litigation and related filings" but "may not take judicial

notice of a finding of fact.") (quoting *United States v. Jones*, 29 F.3d 1549, 1553–

54 (11th Cir.1994)).

Additionally, Fed. R. Evid. 406 requires a strong showing of numerous

instances of conduct to justify a finding of a pattern, practice, or habit. *Loughan v.

Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985) ("It is only

when examples offered to establish such pattern of conduct or habit are 'numerous

enough to base an inference of systematic conduct,' that examples are

admissible.") citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 511 (4th Cir.

1977) (error for court to rely on selected orders from other cases to find a "pattern

or practice of professional conduct" regarding stonewalling in discovery

proceedings).

Finally, the inclusion of the disparaging language in the Approval Order is

the result of bad faith on the part of Class Counsel.  It was improper for Class

Counsel to cite the report in *Muransky*, and doubly improper to keep citing it after

being informed that the district court there had entered a superseding order

rejecting the very language they cited.  DE907 at 4, ¶6.  "[M]aintaining a legal

stance untenable with [the] law demonstrates either an ignorance of [the] law, and thus inadequate research, or some intent to mislead the ... court...." *DeSisto College, Inc. v. Line,* 888 F.2d 755, 766 (11th Cir.1989), *cert. denied,* 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990); *Piambino v. Bailey*, 757 F.2d 1112, 1131 n.44 (11th Cir. 1985) (collecting authority that lawyers are "subject to discipline for failing to apprise a court of controlling authority that is directly adverse to [their] position" even if not disclosed by opposing counsel.); *Cf. Howell v. Komori Am. Corp.*, 816 F. Supp. 1547, 1551 (N.D. Ga. 1993) (chiding plaintiffs for having "again cited a vacated or superseded version of an Eleventh Circuit opinion as the precedent for their position.").

The conclusion in the Approval Order concerning Mr. Davis's professional record is a manifest error of fact, regarding an issue that is irrelevant to the legal standards governing determination of a reasonable fee for Class Counsel or the legal propriety of incentive awards.  It has the inequitable result of stifling Mr. Davis's legitimate objections in a way not countenanced by Rule 23 or due process, as well as falsely tarnishing his professional reputation.  Court rulings that wrongly impugn a lawyer's professional reputation can have serious adverse professional consequences.  *United States v. Schrimsher*, 493 F.2d 842, 844 (5th Cir. 1974), followed in *Wolfe v. Coleman*, 681 F.2d 1302, 1305 (11th Cir. 1982).

Davis further submits that this section appears to have been the original work of Class Counsel, by way of an ex parte proposed order, rather than the result of deliberation by the Court in light of admissible evidence.[8]  The reason, Mr. Davis further submits, has nothing to do with the issues in this case, but rather with a bid by Class Counsel to obtain an order that impugns the reputations of lawyers singularly effective in limiting attorneys' fees in class action cases, which Class Counsel can then cite to limit or prevent their working in subsequent cases.  This tactic is intended to deprive absent class members of competent representation and impair their ability to be represented by counsel of their choice.  *See* William H. Rubenstein, et al., NEWBERG ON CLASS ACTIONS § 9:37 n.1 (5th ed.) ("In *Eisen v. Carlisle & Jacquelin*, [417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974)] the Supreme Court observed that class members are entitled to the best notice practicable in part to further their ability to appear through counsel of their choice.").  The dignity and authority of this Court should not be enlisted in service of those base ends.

---

[8] Class Counsel have not responded to Mr. Davis's repeated requests for copies of proposed orders—even after Class Counsel conceded, in response to motions to supplement by several class members, that the proposed orders should be part of the record.  *See* Ex. 1 attached hereto.  *See also* DE971 at 4 ("Accordingly, Plaintiffs do not object to the request to supplement the record with the Proposed Orders.")

Mr. Davis therefore respectfully requests that this Court afford rehearing on the matter of "serial objectors," and reconsider whether that section's verbiage actually supports the Court's ruling and advances the interests of the class, or whether it instead gives an appearance of bias that undercuts it.

## V.    CONCLUSION

For these reasons, Objector Davis requests that the Court grant rehearing and reconsider its findings of facts and conclusions of law on the matters set forth above, and that it alter or amend the Approval Order and judgment accordingly.

Respectfully submitted this 10th day of February, 2020.

_/s/  John W. Davis_____
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972
john@johnwdavis.com

*Pro se*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response has been prepared in compliance with

Local Rules 5.1 and 7.1.

/s/  John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its

CM/ECF service, which will send notification of such filing to all counsel of record.

This 10th day of February, 2020.

/s/  John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972