# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 <br> No. 1:17-md-2800-TWT <br><br> CONSUMER ACTIONS <br><br> Chief Judge Thomas W. Thrash, Jr. |

## PLAINTIFFS' OPPOSITION TO OBJECTOR CHRIS ANDREWS' MOTION TO PROCEED *IN FORMA PAUPERIS*

Christopher Andrews, a serial objector with a history of improper behavior in class action litigation who the Court has already determined is not acting in the best interests of the class, has filed a motion to proceed *in forma pauperis* so that he can pursue an appeal at tax-payer expense. (Doc. 986)  Plaintiffs oppose Mr. Andrews' motion for three reasons.   First, the motion does not satisfy the procedural requirements of Federal Rule of Appellate Procedure 24(a).   Second, Mr. Andrews' appeal is in bad faith and malicious within the meaning of 28 U.S.C. § 1915.   And, third, Mr. Andrews' financial affidavit is both incomplete and suspect.   Plaintiffs thus request that Mr. Andrews' motion be denied or, alternatively, that they be afforded an opportunity to conduct discovery regarding his financial condition.

## FACTUAL BACKGROUND

Christopher Andrews of Livonia, Michigan is not a lawyer, but he has a long and tortured history of objecting to class action settlements.  He has objected in about ten class actions. (Doc. 956 at 111)  As this Court noted in its final approval order, Mr. Andrews "is known to be a 'professional objector who has extorted fees from counsel in other cases.'" *Id*; *In re Nutella Marketing and Sales Practices Litig.,* No. 11-cv-01086 (D.N.J.) (July 9, 2012 Fairness Hearing Tr. Doc. 111 at 128); *see also e.g., In re Polyurethane Foam Antitrust Litig.,* 2016 WL 6599570 (6th Cir. Jun. 20, 2016) ("Professional objectors, such as Andrews, may not disrupt the settlement process based on nothing more than unsupported suppositions.").

### A.     Mr. Andrews' History of Vexatious Conduct in Other Cases

Mr. Andrews has been cited repeatedly for filing frivolous objections and unauthorized related papers, failing to comply with court orders, engaging in vexatious and bad faith litigation, and has been sanctioned and held in contempt for his inappropriate conduct.  *See, e.g., Shane Group, Inc. v. Blue Cross Blue Shield of Mich.,* 2015 WL 1498888, at *20 (E.D. Mich. March 31, 2015), *vacated on other grounds*, 825 F.3d 299 (6th Cir. 2016) ("many of [Andrews] submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel"); *In re Polyurethane Foam Antitrust Litig.*, 178

F. Supp. 3d 635, 639-40 (N.D. Ohio Apr. 13, 2016 (ordering Andrews to post an appeal bond because of vexatious conduct); *Id.,* Case No. 1:10-md-2196 (Doc. 2113 at 2) (sanctioning Andrews for his "vexatious use of the judicial system" and ignoring court orders and noting his conduct was either "to extort a pay-off" or "as a delay tactic to prolong his coercion attempt"); *In re Andrews,* 2019 WL 3331604, at 2 (E.D. Mich. Jul. 23, 2019) (describing Andrews' history of vexatious conduct and contempt); *Edwards v. National Milk Producers Federation,* 2017 WL 4581926, at * 3-4 (N.D. Cal. Sept. 13, 2017) (denying Andrews' motion to proceed *in forma pauperis* on appeal because he failed to raise any non-frivolous issues).

One of Mr. Andrews' litigation tactics—in addition to repeatedly filing frivolous motions and other pleadings—is to make outrageous and utterly unsubstantiated charges of fraud, collusion, and unethical conduct regarding class counsel and the courts evaluating the fairness of class action settlements to which he has objected. Mr. Andrews' conduct in *In re Polyurethane Foam Antitrust Litigation* provides a good example.[1]

In that case, Mr. Andrews and several other objectors objected to a class action settlement and, after their objections were rejected, filed notices of appeal.

---

[1] Copies of the docket entries from *In re Polyurethane Foam Antitrust Litigation* and other cases cited in the text that are unavailable on WestLaw are collectively attached to this brief as Exhibit A.

Judge Jack Zouhary of the Northern District of Ohio ordered the objectors to post an appeal bond, finding among other things that the objectors had little likelihood of prevailing on appeal and failed to prove their inability to pay for a bond. In so doing, the court noted the objections had all been filed by serial objectors with a prior history of misconduct and singled out Mr. Andrews for special comment:

> This history of misconduct strongly suggests each Objector is not appealing in good faith. Moreover, some have acted vexatiously before this Court. Andrews is the worst. As this Court noted in the Final Approval Order, Andrews' Objection included "scurrilous, unfounded accusations (*e.g.*, perjury and fraud by IPP counsel)," and he "repeatedly ma[de] baseless accusations using inappropriate language". More recently, in his appeal papers, Andrews insists he is a victim of a conspiracy of "unbelievable favoritism shown [to] class counsel at the district court level and at this appeals court level"; Andrews concludes, "[t]his looks like a quid pro quo all around" accusing Class Counsel, this Court, and the Court of Appeals of unethical behavior—without a shred of evidence. This certainly qualifies as vexatious conduct.

*In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 639-40.

Mr. Andrews did not post the required bond, and despite repeated orders that he do so, continued to press his frivolous arguments on appeal. Instead, as described by class counsel in that case, he filed six separate motions or pleadings attacking the bond—three in the trial court and three before the appellate court—all of which were based on groundless assertions that the trial court had already expressly and repeatedly rejected. (*Id.*, Doc. 2107 at 2-3) Ultimately, the Sixth

Circuit dismissed his appeal for failure to post the bond. *In re Polyurethane Foam Antitrust Litig.,* 2016 WL 6599570 (6th Cir. Jun. 20, 2016).   Mr. Andrews then filed a petition for certiorari in the United States Supreme Court and, when that petition was denied, unsuccessfully moved for rehearing. *See Andrews v. Indirect Purchaser Class*, 137 S. Ct. 842 (Jan. 23, 2017); 137 S. Ct. 1141 (Feb. 21, 2017 2017).   In so doing, he further and needlessly delayed the proceedings for at least nine months.

Following the dismissal of Mr. Andrews' appeal, the court ordered Mr. Andrews to pay over $15,000 in sanctions for his vexatious conduct. *See In re Polyurethane Foam Antitrust Litig.,* 2016 WL 6599969 (N.D. Ohio Oct. 24, 2016). When Mr. Andrews did not pay the sanctions, class counsel sought to depose him. Mr. Andrews refused to appear for the deposition, intentionally defying a court order commanding his appearance.   He was held in contempt, arrested and brought before the court, which issued a further sanctions order, ordered him to pay more than $6,000 in additional sanctions, and denied his motion to stay the sanctions order pending a further appeal. *Id.*, Order of Civil Contempt (Doc. 2127 entered Dec. 29, 2016); *In re Andrews,* 2019 WL 3331604, at *2.   After the sanctions award was affirmed on appeal, *see In re Polyurethane Foam Antitrust Litig.* 2017 WL 8791098 (6th Cir. Dec. 14, 2017), Mr. Andrews filed bankruptcy in an effort

to avoid paying. *In re Andrews,* 2019 WL 3331604, at *2.

B.    **Mr. Andrews' Misconduct in this Case**

Mr. Andrews' conduct in this case is consistent with his behavior in *In re Polyurethane Antitrust Litigation* and other class actions.[2]  His objection asserts a variety of groundless objections, all of which the Court rejected.   Further, the objection is replete with impertinent and scandalous allegations accusing class counsel, the named plaintiffs, Equifax, the claims administrator, and notice provider of unethical and inappropriate conduct without a shred of supporting evidence.  For example, according to Mr. Andrews:

> class counsel, named plaintiffs, the defendant, and the administrator colluded and schemed among themselves in a Faustian bargain by hijacking and settling this error ridden, unfair settlement for the gluttonous unjustified fees, awards, expenses and costs they demand by selling out the class.  The class has been set up, hoodwinked and bamboozled into this collisional settlement orchestrated by a cabal of lawyers so rejection is required.  It's a common divide and conquer strategy that games a crooked rigged system and treats the unnamed class as pawns in their settlement scheme.

(Doc. 913 at 4)   Mr. Andrews also falsely accuses class counsel and JND of

---

[2] This Court's Order Directing Notice required that objectors list all of the class actions in which they previously objected.  However, Mr. Andrews did not identify his objection in *In re Polyurethane Foam Antitrust Litigation*, although he listed several others. (Doc. 913 at 10)  Mr. Andrews disclosed the missing objection in a belated filing dated December 16, 2019 explaining that he "forgot" about it until being reminded by an unnamed law firm in Detroit. (Doc. 936 at 5)   That Mr. Andrews forgot about the case, given its sordid history, is simply not believable.

colluding with Equifax to allow Equifax to surreptitiously track the internet search history of class members who file claims and sell that history to third parties. (*Id.* at 14; *compare* Doc. 939-1 at 18-20)  And he claims that class counsel, JND, the notice administrator and the "puppet named plaintiffs" engaged in a "treasonous" conspiracy to sell out the class in exchange for money.  (Doc. 914. at 21)

Mr. Andrews was not content to rest on his objection.  After preparing the objection on or about November 19, 2019, Mr. Andrews continued to file a slew of baseless motions and pleadings.  On December 6, 2019, he filed a self-styled "Motion to Remove Class Counsel, the Steering Committee, and Legal Administration, the Named Plaintiffs and Defense Counsel for Misconduct." (Doc. 916)  The motion accused class counsel and JND of a "duplicitous scheme to sell out the class" involving a "cover-up" and "obstruction of justice."  He also demanded defense counsel be removed and ordered to forfeit their legal fees.  On December 9, 2019, Mr. Andrews filed a second motion asserting the same allegations and seeking the same relief. (Doc. 917)  And, on December 16 and 18, 2019, he filed two motions to strike Equifax's brief in support of final approval, (Docs. 935 and 936), contending it was untimely and that by granting Equifax's motion for leave to file a 35 page brief the Court had shown "prejudice and bias against the class in a fight that the parties have already lost." (Doc. 935 at 2)

On February 10, 2020, after this Court denied Mr. Andrews' objections and other motions in its final approval order, he filed a notice of appeal (Doc. 985). The notice of appeal, which he certified as true under penalty of perjury, is a 20-page rant containing more of the same.  Mr. Andrews repeatedly claims that class counsel are "lying," "crooked," "duplicitous," and engaged in fraud, libel, trickery, and other misconduct. (Doc. 985 at 4-5, 9-10, 18)  He also repeatedly criticizes this Court's competence and integrity, asserting the approval was "biased" (*Id.* at 9); class counsel "tricked the court into approval" and "snookered" and "bamboozled" the Court (*id.* at 4, 9); the approval process was calculated to "rubber stamp" the deal to benefit Equifax (*id.* at 3); the Court "intentionally ignored" his objection and "refused to address the material issues raised because [the Court] could not overcome them" (*id.* at 9); the Court and counsel "engaged in shenanigans to obtain the desired result" (*id.* at 4); and the Court attempted to "obstruct, influence, and impede justice by ignoring and covering up the material issues." (*Id.* at 17) Mr. Andrews also mocked the Court, contending its reaction to his objection "is exactly like the reaction when Sergeant Schultz in Hogan's Heroes knows something is wrong but 'sees, hears, and knows nothing.'" (*Id.* at 10)

One passage in the notice of appeal is particularly scandalous.  According to Mr. Andrews:

> Class counsel and the steering committee have never corrected their lie even after being caught red handed and the court remains mute, refusing to ask more than a single question at the four hour unfairness hearing, something really wrong here and I think I know why. This looks like a quid pro quo with Equifax's shadow looming overhead. Amicus briefs will be filed in other cases the lawyers are currently in as well as future cases to alert those judges about their fraud in this case. They should never be representing and ripping off any more class members.

(*Id.* at 10)  This one passage—devoid of any evidence or factual support—accuses class counsel of lying; criticizes the Court's motivation in not asking questions at the final approval hearing; suggests that the Court and class counsel are engaged in wrongdoing as part of a "quid pro quo" with Equifax; and threatens to take retaliatory action against class counsel in other cases.

The scandalous allegations in the notice of appeal are not limited to this case.  Mr. Andrews also discusses *The Shane Group, Inc., supra,* a case that found he was a serial objector acting in bad faith and that this Court cited in its final approval order. (Doc. 956 at 111-12)  In a lengthy diatribe, Mr. Andrews accuses the *Shane* court of being "compromised"; alleges the cover-up of a "huge financial connection between the judge and defendant" that "the court and lawyers hid from the class"; contends the "court's observations and comments are worth zero because it's really about the court running interference on behalf of BCBSM, [its] donor benefactor"; and avers that the litigants and court were parties to "a crooked, fixed, rigged, illegal, compromised deal."  (Doc. 985 at 7-9).  Perhaps most

amazingly, Mr. Andrews contends the *Shane* class counsel have committed malpractice by continuing to oppose his objection "rather than admit defeat and pay me a success fee for helping the class or maybe for another reason." (*Id.* at 8)

Mr. Andrews' notice of appeal was accompanied by a motion to proceed *in forma pauperis*. (Doc. 986)   The motion argues that he has a right to appeal and asserts that other courts have allowed him to appeal *in forma pauperis*.   Mr. Andrews also submitted this Court's Local Form 239, which allegedly sets forth his financial condition.

## ARGUMENT AND CITATION OF AUTHORITY

Motions to proceed *in forma pauperis* on appeal are governed by Rule 24 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1915.  *See, e.g., Holiday v. Markel Syndicate 300 at Underwriters at Lloyds,* 2019 WL 920880, at *3 (M.D. Fla. Feb. 15, 2019).  Rule 24(a)(1) sets forth the procedural requirements for such appeals and provides in pertinent part that the movant furnish an affidavit that: (A) shows the party's inability to pay or give security for the fees and costs of the appeal, (B) claims an entitlement to redress, and (C) states the issues that the party intends to present on appeal. *Id.* Section 1915 specifies the substantive requirements for those seeking status as an indigent.  Individuals need not show they are "absolutely destitute" to qualify for indigent status under section 1915. *Id.*

(citing *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004)).

An affidavit is "sufficient if it represents that the litigant, because of his poverty, is

unable to pay for the court fees and costs, and to support and provide necessities

for himself and his dependents." *Id.*

A district court has "wide discretion" to grant or deny an application to

proceed *in forma pauperis*. *Id.* at *3.  In civil cases for damages, the privilege

should be granted "sparingly." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305,

1307 (11th Cir. 2004) (quotation omitted); *see Daker v. Jackson*, 942 F.3d 1252,

1257 (11th Cir. 2019) ("To be sure, proceeding IFP in a civil case is a privilege,

not a right—fundamental or otherwise."). A motion to proceed *in forma pauperis*

on appeal should be denied if the appeal is in bad faith.  *See, e.g.,* 28 U.S.C. §

1915(a)(3) ("An appeal may not be taken in forma pauperis if the trial court

certifies in writing that it is not taken in good faith."); *Branch Banking & Trust Co.*

*v. Griffin,* 2014 WL 12861738, at *2 (N.D. Ga. Nov. 17, 2014).  Moreover, Section

1915(e)(2)(B)(i) authorizes a court to dismiss an indigent's appeal if it is frivolous

or malicious.  *See, e.g., Atwood v. Singletary,* 105 F.3d 610, 613 (11th Cir. 2016);

*Gozo v. Chertoff*, 2008 WL 11440545, at *1 (N.D. Ga. June 2, 2008).

As explained below, Mr. Andrews' motion fails to satisfy the requirements

of Rule 24; his appeal is malicious and part of a pattern of bad faith litigiousness

and manipulative tactics; and his financial affidavit is incomplete and insufficient to prove he cannot afford to pay the appellate costs. The Court thus should exercise its discretion to deny the motion.

### A.    Mr. Andrews' Fails to Satisfy Rule 24(a)(1)(C)

Mr. Andrews' motion is a bare-bones document that does not satisfy Rule 24 of the Federal Rules of Appellate Procedure. In particular, the motion does not explain why he believes he is entitled to redress or state any of the issues that Mr. Andrews intends to raise on appeal as required by Rule 24(a)(1)(B) and (C). This Court has repeatedly denied such deficient motions to proceed *in forma pauperis* and should do so here. *See, e.g., JRK Property Management v. Braxton,* 2019 WL 1219333, at *2 (N.D. Ga. Jan. 25, 2019); *Patel v. Vinson,* 2018 WL 6839016, at *2 (N.D. Ga. Nov. 20, 2018); *see also, e.g., Hesed-El v. McCord,* 2019 WL 5092476, at *5 (S.D. Ga. Oct. 10, 2019); *Pettway v. Mobile County Revenue Commissioner,* 2018 WL 10419347, at *1 (S.D. Ala. May 24, 2018).

Mr. Andrews may contend that he incorporated his notice of appeal into his motion to proceed *in forma pauperis* and that the notice identifies the redress he seeks on his own behalf and lists the issues he intends to pursue on appeal. However, Rule 24 does not provide for an incorporation process, but instead requires that the mandated information be contained in the motion. Further, the

notice of appeal is little more than an *ad hominem* attack on class counsel, the court, and the other participants in the settlement process and does not clearly identify either the redress he seeks on his own behalf or the issues he intends to pursue on appeal.  This Court should not have to fly-speck the lengthy allegations in a 20-page notice of appeal to discern whether Mr. Andrews has complied with Rule 24.  Moreover, because of the scandalous allegations and unfounded attacks it contains, the notice of appeal should be disregarded as a nullity.  *See generally Theriault v. Silber*, 574 F.2d 197, 197 (5th Cir. 1978) (striking a notice of appeal pursuant to Federal Rule of Civil Procedure 12(f) because "it contains disrespectful and impertinent references to the trial judge.").

## B.   Mr. Andrews' Appeal is in Bad Faith and Malicious

A party demonstrates good faith—and conversely has not acted in bad faith within the meaning of 28 U.S.C. §1915(a)(3)—by seeking appellate review of any issue that is not frivolous when examined under an objective standard.  *See Ghee v. Retailers National Bank*, 271 Fed. App'x. 858, 859 (11th Cir. 2008).  An issue is frivolous if it lacks arguable merit either in fact or law and thus is incapable of being convincingly argued.  *See, e.g., Id.*; *Pettway,* 2018 WL 10419347, at *1 ("a case is frivolous when it appears that the plaintiff has little to no chance of success, meaning that the factual allegations are clearly baseless or that the legal theories

are indisputably meritless") (citing *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)) (internal citations omitted).

Mr. Andrews has not met this standard and thus his motion to proceed *in forma pauperis* should be denied.   *See, e.g., Spence v. Hapeville Police Department,* 2017 WL 4466460, at *1 (N.D. Ga. July 13, 2017) (denying motion because the appeal was not taken in good faith).   To begin with, because Mr. Andrews' motion does not state any reason why he believes he is entitled to redress or what issues he intends to pursue on appeal, he has not provided sufficient information to determine whether the appeal is in good faith, leaving the Court with no option but to deny his motion.   *Pettway,* 2018 WL 10419347, at *2. Regardless, the issues set forth in his objection are factually unsupported, objectively lack legal merit, and are thus frivolous.[3]   *See generally Edwards,* 2017 WL 4581926, at * 3-4 (denying Andrews' motion to proceed *in forma pauperis* on

---

[3] This Court has already found there is no substantial likelihood that Mr. Andrews' objections will be successful on appeal. (Doc. 956 at 110)   A review of the specifics of his objection, moreover, shows that the issues he raises are not capable of being convincingly argued.   Not only are his assertions dependent on factual allegations bereft of any evidentiary support, the legal arguments are conclusory, contradicted by the record, without relevant legal authority, or of a type he lacks standing to make.   *See, e.g., Young v. LG Chem, Ltd.*, 783 Fed. App'x. 727 (9th Cir. 2019) (affirming with little discussion denial of Andrews' objections, including claims that the settlement consideration was insufficient and the notice inadequate).   Moreover, as explained by this Court in its final approval order, similar objections are routinely rejected.

appeal because he failed to raise any non-frivolous issues).

Mr. Andrews' motion also should be denied because he is acting maliciously within the meaning of 28 U.S.C. §1915(e)(2)(B)(i). For all of the reasons described above—including Mr. Andrews' repetitive scandalous allegations in this case, his threats of harm to class counsel's ability to litigate future class action cases free of baseless allegations of fraud, and his history of engaging in similar behavior when objecting to other settlements—there can be no question but that Mr. Andrews is acting maliciously and engaged in bad faith litigiousness. *See, e.g., Atwood,* 105 F.3d at 613 ("A finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal" under Section 1915); *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (a claim is malicious if intended to harm another); *Daker v. Bryson*, 2017 WL 11427081, at *2 (M.D. Ga. Dec. 29, 2017), *report and recommendation adopted,* 2018 WL 9598914 (M.D. Ga. July 19, 2018) (a claim is malicious if, among other things, it is harassing, vexatious, and intended to abuse the judicial system).[4]

---

[4] Federal Rule of Civil Procedure 11, which provides that Mr. Andrews certified he conducted a reasonable inquiry and that his allegations and factual contentions have evidentiary support, further supports a finding he is acting maliciously. *See Atwood,* 105 F.3d at 612. Plaintiffs are not requesting Mr. Andrews be sanctioned under Rule 11; such a request would require a separate motion and an opportunity for him to respond. Yet, the rule helps to define the standard by which Mr. Andrews' conduct can be judged.

On its face, Section 1915 authorizes dismissal of a pauper's malicious appeal, not specifically denial of the pauper's motion for relief from paying the appellate costs.  However, there is no good reason for this Court to first grant Mr. Andrews' motion to proceed *in forma pauperis* before addressing whether his appeal is malicious.  If the appeal is malicious, as in fact it is, the Court should simply deny Mr. Andrews the status of a pauper at the outset, ensuring that taxpayers are not forced to subsidize his duplicitous and self-serving efforts to abuse the objection process for his own ends.  *See Anderson v. Fulton County Govt.*, 485 Fed. App'x. 394, 395-96 (11th Cir. 2012) (affirmed dismissal of an action pursuant to Section 1915(e) and simultaneous denial of a motion to proceed *in forma pauperis,* stating: "any *in forma pauperis* action or appeal shall be dismissed *at any time* if it is frivolous or malicious") (emphasis added).

### C.    Mr. Andrews' Application Does Not Establish that He Cannot Afford to Pay Appellate Costs

Mr. Andrews' "Application to Proceed in District Court without Prepaying Fees or Costs" fails to prove he lacks the financial ability to pay the costs of appeal.  Mr. Andrews admits he has income of $1,900 per month (Doc. 986), which is sufficient to pay the $505 fee to file his appeal.  *See Edwards,* 2017 WL 4581926, at *5 (finding that, despite Andrews' affidavit attesting he had income of only $1433 per month, he had the ability to qualify for and post an appeal bond of

$1,000). Regardless, when he finds it necessary to do so, Mr. Andrews seems to be able to come up with funds to pay litigation expenses. For example, he appeared in person at the final approval hearing in this matter, apparently having been able to afford the cost of traveling to Atlanta from his home in Michigan. And, when Mr. Andrews filed bankruptcy in 2018 in an attempt to avoid having to pay a sanctions award, he was able to pay $750 for his bankruptcy lawyer's legal fees, even though he claimed his income was only $1,800 per month. *See In re Andrews,* Case No. 18-31345 (Bankr. E.D. Mich. filed May 31, 2018) (Doc. 1 at 25, 36).

Mr. Andrews' financial affidavit in this case, furthermore, omits information which would allow the Court to evaluate his status as an alleged pauper. For example, he does not disclose his business or profession, stating only that he is self-employed, and does not account for any payoffs he may be received in connection with other objections he has filed. Andrews also estimates his monthly tax expense and business expenditures, but the form instructed him to provide the specific amount of taxes and attach a detailed expense report. Granting *in forma pauperis* status is unwarranted in light of the incomplete application. *See, e.g., Gresham v. AT&T Corp.*, 2014 WL 12513895, at *2 (N.D. Ga. Nov. 12, 2014) (noting that "[b]ecause the applications to proceed IFP are incomplete, the Court is

unable to determine whether either plaintiff is able to pay the costs of this proceeding or give security therefore," and recommending denial of IFP status and dismissal of case for failure to supplement after being allowed opportunity to do so), *report and recommendation adopted,* 2014 WL 12513899 (N.D. Ga. Dec. 17, 2014); *see also Paul v. Cheddar's Scratch Kitchen*, 2020 WL 97453, at *1 (S.D. Ga. Jan. 8, 2020) (Southern District routinely demands for supplemental information from dubious movants for *in forma pauperis* status).

In any event, in light of all the circumstances—including Mr. Andrews' history of vexatious conduct, his initial lack of candor in connection with his failure to disclose to the Court his objection in *In re Polyurethane Foam Antitrust Litigation,* and his willingness to unfounded allegations under penalty of perjury— Plaintiffs urge the Court not to accept at face value Mr. Andrews' claim that he cannot afford to pay the costs of appeal.  Before the Court finds that Mr. Andrews merits status as a pauper, Plaintiffs request the opportunity to conduct discovery into his financial condition and entry of an order requiring him to appear for a deposition and produce all of his relevant records.  *See* Order, *In re Polyurethane Foam Antitrust Litig.,* Case No. 1:10-md-2196 (N.D. Ohio March 22, 2017) (Doc. 2157) (noting that the court needed additional documentation relating to Andrews

before evaluating his motion to proceed *in forma pauperis* and directing class counsel to file documents regarding his finances he produced during discovery).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Objector Andrews's motion to proceed *in forma pauperis*.  Alternatively, Plaintiffs request an opportunity to conduct discovery concerning Mr. Andrews' financial circumstances as described above.


Dated:  February 24, 2020                    Respectfully submitted,


                                             */s/ Kenneth S. Canfield*
                                             Kenneth S. Canfield
                                             Ga Bar No. 107744
                                             **DOFFERMYRE SHIELDS**
                                             **CANFIELD & KNOWLES, LLC**
                                             1355 Peachtree Street, N.E.
                                             Suite 1725
                                             Atlanta, Georgia 30309
                                             Tel. 404.881.8900
                                             kcanfield@dsckd.com


                                             */s/ Amy E. Keller*
                                             Amy E. Keller
                                             **DiCELLO LEVITT GUTZLER LLC**
                                             Ten North Dearborn Street
                                             Eleventh Floor
                                             Chicago, Illinois 60602
                                             Tel. 312.214.7900
                                             akeller@dicellolevitt.com

*/s/ Norman E. Siegel*
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com

***Consumer Plaintiffs' Co-Lead Counsel***

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

***Consumer Plaintiffs' Co-Liaison Counsel***

Andrew N. Friedman
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, New York 10119
Tel. 212.946.9453
atadler@tadlerlaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Consumer Plaintiffs' Steering*
*Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

*Consumer Plaintiffs' State Court*
*Coordinating Counsel*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion and the accompanying memorandum of law have been prepared in compliance with Local Rules 5.1 and 7.1.

*/s/ Amy E. Keller*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 24th day of February 2020.

*/s/ Amy E. Keller*