# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800<br>) Case No.: 1:17-md-2800-TWT<br>)<br>) CONSUMER ACTIONS<br>)<br>) Chief Judge Thomas W. Thrash, Jr.<br>)<br>) |

# REPLY IN SUPPORT OF MOTION
# TO ALTER OR AMEND JUDGMENT
# [FED. R. CIV. P. 59(e) AND 52(b)]

## I. STANDARDS FOR RELIEF

Plaintiffs accuse Mr. Davis of merely repeating argument, urging that this does not meet the necessary standard, but the very case Plaintiffs cite explains that the purpose of Rule 59 is to address "manifest errors of law or fact." *See* DE999 at 6, quoting *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). So, where a court has appeared to overlook or misconceive the force of a legal argument, or the presence or absence of dispositive fact, relief through Rule 59 is warranted. That is particularly the case when the matter is a class action, in which district courts have a separate obligation to assess the objections made. *See Motion to Amend*, DE978 at 2-3.

## II. CALCULATION OF ATTORNEYS' FEES

On the issue of the law governing attorneys' fees, Plaintiffs simply beg the question. *See, e.g.*, DE999 at 3-4 ("The Court also specifically addressed Mr. Davis' incorrect contention that *Camden I* is no longer good law in light of *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010), and determined that his argument was frivolous.") citing at DE978 at 94.

Mr. Davis has argued cogently that the Supreme Court's recent fee cases such as *Perdue* and *Dague* strongly suggest the Court will likely disagree that: (1) a percentage methodology is the *exclusive* means of determining common fund fees, or (2) lodestar/multiplier analysis is irrelevant to calculating

common-fund fees, or (3) common-fund percentage awards can result in fees that exceed the "presumptively reasonable" lodestar fee by high multiples. DE979-1 at 8-9; DE978 at 4-10.

    Mr. Davis pointed out that the Court's analysis relied heavily upon an Eleventh Circuit case that did not actually serve as or cite binding authority on the issues he raised, *In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019). *Home Depot* made only passing reference to the relationship between fee-shifting authority and common fund doctrine, by way of observing that contractual fee shifting was more like statutory fee shifting. *Id*. at 1085. *Home Depot* does not tackle the issues Mr. Davis raised, and in fact noted a potential circuit split on the issue of whether and how much *Perdue* and *Dague* influenced lodestar calculations used in common fund fee awards. *See id.*, quoting *In re Gen. Motors Corp.*, 55 F.3d 768, 822 (3d Cir. 1995) ("even in a common-fund case, the 'pertinence' of Supreme Court precedent on the use of multipliers in lodestar analysis is 'patent'"). Now, the Second Circuit has recently weighed in to explain that in common-fund awards, *Perdue* and *Dague* mostly constrain lodestar/multiplier calculations (there in the context of a cross-check to a percentage award) with the very limited exception of minor enhancement for "opportunity cost" contingent risk. DE978 at 5-6, discussing *Fresno County*.

*Home Depot* does not control this issue. This Court and the Eleventh Circuit are free to recognize that Supreme Court authority on lodestar multipliers may well influence common fund fee awards, particularly for cross-check purposes. Mr. Davis further submits that the requested percentage fee here would not pass such a cross-check. The percentage fee in this case represents a multiplier on lodestar of 2.79. DE858 at 23-24. It is not frivolous to suggest that exceeds what should be considered a reasonable enhancement to a presumptively reasonable lodestar, and that the Court should consider whether Plaintiffs have provided evidentiary and legal support to obtain such a large premium on their time by way of the requested percentage award.

Plaintiffs disagree. And the Court may find that the argument is not compelling enough to influence its application of *Camden I* here without further controlling guidance from higher courts. But, given the divergence in Circuit authority on the issue and the absence of Supreme Court clarification, there is no support for the conclusion that Mr. Davis's argument is so devoid of legal support as to be "frivolous."

### III.  CLASS REPRESENTATIVE AWARDS

Mr. Davis has made a compelling case that Supreme Court authority precludes incentive awards entirely, and he has explained that Supreme Court authority remains binding on lower courts. DE879 at 10-18; DE978 at 11-14.

He has likewise explained that neither Rule 23, the prevalence of incentive awards among lower courts, nor the passage of time can overcome that authority.  DE879-1 at 17-18; DE978 at 12-13.

At present, the Approval Order avoids joining those issues directly, and Mr. Davis submits they should be addressed.  Plaintiffs' insufficient response is to invoke the Second Circuit case cited in the Approval Order, *Melito v. Experian Mktg. Sols.*, 923 F.3d 85 (2d Cir. 2019).  Not only does that case not control, but Plaintiffs' description of its dismissal of the argument as "out of hand" is telling.  The *Melito* court did not actually engage the legal issues, but instead ended up distinguishing *Greenough* and *Pettus* on their facts, and without any explanation of what facts brought *Melito* outside the scope of those cases.  DE978 at 12.  Given that angle of approach, the analysis finds little application outside of *Melito* itself.

Plaintiffs' complaint that the issue involves "less than $250,000" is meritless.  DE999 at 16.  First, if the awards are legally impermissible, then it is a breach of fiduciary duty to the class to seek them from the class fund in any amount. *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1318 (11th Cir. 2013) ("In the absence of class members as parties, the class representative, who is a named plaintiff, must 'purport to act on behalf of all.'") quoting Restatement (First) of Judgments § 86, cmt. b (1942).  The suggestion that

there is some threshold below which Plaintiffs, and the Court as guardian of absent class members, may disregard that duty—let alone that the threshold is well north of a quarter million dollars—is without any support.  Additionally, Plaintiffs do not dispute that the practice of granting such awards has become common among lower courts.  A controlling holding recognizing its impermissibility would protect class funds from widespread defalcations in future cases.

## IV.   THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' *AD HOMINEM* ATTACKS ON MR. DAVIS

Plaintiffs personally attack Mr. Davis for participating as a lawyer or objector in several class actions, and in support cite two court documents that are simply not citable for the truth of the facts contained therein.

As to the first assertion, Plaintiffs mischaracterize Mr. Davis's litigation history, notably omitting from their list several cases in which Mr. Davis prevailed.  *See Declaration of John W. Davis* filed herewith ("Davis Decl.") at ¶¶4-7.  *See also* DE907, D879-1 at 3-5.  Regardless, Plaintiffs' string cite is meaningless: merely having participated in objections does not serve as a basis for any adverse inference, much less a conclusion about a lawyer's motivations in a case.  DE978 at 15-16 citing *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 743 (3d Cir. 2001) (noting objectors' "valuable and important role" in class action settlements); *see also Vollmer v. Selden*, 350 F.3d 656 (7th Cir.

2003) (error for trial court to infer an improper purpose solely from the fact that lawyers made a "routine practice" of filing objections previously); *Reed v. The Great Lakes Co., Inc.*, 330 F.3d 931, 936-37 (7th Cir. 2003).

Mr. Davis's actual litigation history does not justify judicial criticism. He has never been sanctioned, and he has achieved demonstrable success in litigating and appealing objections. That leaves Plaintiffs relying solely on two documents from other litigations: (1) a Report and Recommendation of a U.S. Magistrate Judge that Mr. Davis successfully challenged as erroneous in *Muransky* and (2) an unciteable trial court order from fifteen years ago that did not involve an objection.

### A.  The Federal Rules of Evidence Apply to Class Action Settlement Proceedings

Plaintiffs argue that "formal" rules of evidence do not apply to final approval hearings. Plaintiffs are incorrect. The cases upon which they rely are either inapposite or district court cases that do not appear to have considered the issue thoroughly.

The Federal Rules of Evidence apply to all proceedings in United States courts except those proceedings which are excepted by Fed. R. Evid. 1101. A "civil case" such as the one at bar falls squarely within the scope of the rules. Fed. R. Evid. 101(b)(1). *See Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015) (finding Federal Rules of Evidence applicable to

class certification proceedings and that none of the 1101(d) exceptions applied); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) ("[f]airness hearings conducted under Fed. R. Civ. P. 23(e) are not among the proceedings excepted from the Rules of Evidence.  No case of which we are aware holds that Rule 1101(d) suspends the usual rules of evidence for fairness hearings."); *cf. Fears v. Keystone Petro. Transp., LLC*, 2012 U.S. Dist. LEXIS 191775, *29 n. 23 (N.D. Ga. Feb. 21, 2012) ("A plain reading of these rules suggests that the Federal Rules of Evidence apply to the instant motion [to strike defendant's answer] and, consequently, that the Court should not consider hearsay in making its determination.").

Even assuming *arguendo* that a Rule 23 fairness hearing is a "miscellaneous proceeding" as defined in Fed. R. Evid. 1101(d)(3), Plaintiffs' argument that the Rules do not apply fails because this settlement necessarily required a motion for class certification to effectuate a class-wide settlement. DE956 at 28.  To obtain class certification, the moving party "must be prepared to prove" the requirements of Fed. R. Civ. P. 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  This includes "satisfy[ing] through evidentiary proof at least one of the provisions of [Fed. R. Civ. P.]23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct.1426, 1432 (2013).[1]

---

[1] Further, in determining whether a settlement may be approved under Rule 23, the trial court "should conduct a 'rigorous analysis' including an

### B. Plaintiffs' Continued Reliance on Rejected Language in the R&R in *Muransky* is in Bad Faith

Davis has explained that the Report and Recommendation (R&R) of United States Magistrate Judge Lurana Snow had no presumptive weight and was nullified after a specific objection to its conclusions, de novo review by the district court, and issuance of a superseding opinion expressly "ignoring" Magistrate Judge Snow's comments about "professional objectors."

Plaintiffs respond that the district court did not "overrule" the Magistrate Judge on her disparaging comments. Plaintiffs are exactly wrong. District courts do not "overrule" Magistrate Judges' reports and recommendations on attorneys' fees in class actions, and the district court in *Muransky* expressly rejected the disparaging comments Plaintiffs cite here. So that there can be no doubt about the frivolousness of Plaintiffs' position, and the bad faith inherent in pursuing it, Mr. Davis will explain the legal foundations in depth.

Referrals of matters to United States Magistrate Judges for the preparation of pretrial orders is governed by 28 USC § 636 and Fed. R. Civ. P. 72, which together set forth different procedures according to whether the

---

'examination of what the parties would be required to prove at trial.'" *Cox v. Zurn Pex, Inc.*, 644 F.3d 604, 611 (8th Cir. 2011). *See also Chen-Oster v. Goldman, Sachs & Co.,* 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015); *American Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010); *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 415 (E.D. Pa. 2015) (applying *Daubert* test to the class certification stage).

referral concerns a dispositive or nondispositive matter.  *See* § 636(b); Fed. R. Civ. P. 72(a) and (b).

The R&R in *Muransky* was prepared to assist in determining the award of attorneys' fees and incentive awards.  *Muransky* is a class action and therefore subject to Fed. R. Civ. P. 23.  In every class action under Rule 23, "[a] claim for an award [of attorneys' fees] must be made by motion under Rule 54(d)(2)." Fed. R. Civ. P. 23(h)(1).  And district courts must adhere to Rule 54(d)(2) in referring the determination to a magistrate judge.   *See* Fed. R. Civ. P. 23(h)(4) ("The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).").  Rule 54(d)(2)(D) in turn provides that courts "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."

As a consequence, attorneys' fees sought pursuant to Fed. R. Civ. P. 54(d) are thus considered ***dispositive motions that magistrates do not have the authority to decide with finality***.  Without adoption or some other action by a district court judge, a magistrate judge's report has no legal effect.  Even where no objection to the report and recommendation is filed, "[i]t is fundamental that those recommendations *do not become an order of the court* until the district judge takes *some* action."  12 Charles A. Wright and Arthur

- 9 -

A. Miller, Fed. Prac. & Proc. Civ. § 3070.1 (2d ed.) (emphasis added).  In *Mathews v. Weber*, 423 U.S. 261 (1976), the Supreme Court reminded that 28 USC § 636(b) does not give a magistrate judge's recommendation any "presumptive weight," emphasizing that the authority and responsibility to make an informed, final determination, "remains with the judge." 423 U.S. at 270–71, followed in *Beatty v. Rawski*, 97 F. Supp. 3d 768, 771 (D.S.C. 2015) ("The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight."); *see also Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 659 (9th Cir. 1993) (holding that "because the magistrate did not have the authority to enter a final order, the defendants' notice of appeal from that order was a nullity….").[2]

Plaintiffs' insistence that the *Muranksy* court did not overrule or contradict the R&R is therefore a *non-sequitur*.  The order had no presumptive force except to the extent it was formally and expressly adopted.  And, as explained below, the district court in fact rejected the very language Plaintiffs continue to cite.

---

[2] *See also Rajaratnam v. Moyer*, 47 F.3d 922, 923-25 and n.5 (7th Cir. 1995) (despite district court's apparent belief, "the magistrate judge did not have the statutory authority to rule definitively" on fee application and the district court erred in failing to conduct a de novo review); *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues.") citing *Massey v. City of Ferndale,* 7 F.3d 506, 510–11 (6th Cir.1993).

Mr. Davis and his colleagues properly objected in *Muransky* to the very conclusion that Plaintiffs quoted in this case. *See* Davis Decl., Ex. 4 at 11-20 (Objection to R&R in *Muransky*). That objection required the district court to review the record de novo to determine whether the magistrate's conclusions were accurate. *See Hatmaker v. Liberty Mut. Fire Ins. Co.*, 308 F. Supp. 2d 1308, 1312 (M.D. Fla. 2004) (a timely objection "requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'") (quoting *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir.1990)).

That review was properly de novo because of the application of Rule 54(d)(2)(D), which specifies that attorneys' fee motions are referred (and thus reviewed) under Rule 72(b) as dispositive pretrial matters. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 945 (D.C. Cir. 2017) (district court erred in applying "clearly erroneous or contrary to law" standard of Rule 72(a); Rule 54(d)(2)(D) requires de novo review of magistrate judge's disposition).[3]

Applying Rule 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.

---

[3] *See also, e.g., AG Equip. Co. v. AIG Life Ins. Co.*, 691 F. Supp. 2d 1295, 1300 (N.D. Okla. 2010) ("The Court treats AIG's motion for attorney fees as a dispositive motion and reviews the magistrate judge's report and recommendation under Rule 72(b).").

- 11 -

The district judge may ***accept, reject, or modify*** the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Thus on de novo review of a report and recommendation, the district court has complete discretion to adopt it "or wholly to ignore it." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *Mathews v. Weber*, 423 U.S. 261, 271 (1976)); *see also Johnson v. Barnhart*, 402 F. Supp. 2d 1280 (D. Kan. 2005) ("the district court is free to follow or wholly ignore the magistrate judge's recommendation"). Under decades of case law, a district court "ignoring" a finding of a magistrate judge has signified rejection of it, i.e., the exact opposite of "adopting" it.

Judge Dimitrouleas followed exactly that procedure in *Muransky*: he considered the objections to the R&R, conducted a de novo review, and then entered his own original order describing the objections to the settlement as "meaningful," while expressly "ignoring the comments" of the magistrate judge disparaging counsel and disavowing any reliance on them. *See* Davis Decl., Ex. 5 at 6, ¶11(l). Judge Dimitrouleas expressly rejected the language Plaintiffs relied on in this case, and it was well within his discretion to do so. There is no requirement that Judge Dimitrouleas also make an express finding that the magistrate judge "was wrong" when he declined to include her

characterization in his order, lest it otherwise be construed to be part of his order by negative implication.  Plaintiffs cite no authority to support that theory and, as evidenced by the foregoing discussion, it is at odds with the law.

Plaintiffs' theory that the *Muransky* R&R is citable for its conclusions ignores the statutory scheme governing referrals to magistrate judges.  It disregards the legal process by which Mr. Davis successfully challenged the factual basis for Magistrate Judge Snow's report.  Most of all, it ignores Judge Dimitrouleas's subsequent order, to which this Court owes full faith and credit.[4]  Plainitffs' desire to quote disparaging comments from the R&R cannot overrule Judge Dimitrouleas's considered judgment that those comments did not belong in his order.  Plainitffs have never explained why Judge Dimitrouleas' order is not entitled to their respect and deference in this Court.[5]

---

[4] Plaintiffs suggest that it is consequential that the objector in *Muransky* did not brief on rehearing the issues raised in this case. DE999 at 9, n.3. Plaintiffs fail to disclose that the en banc panel requested briefing on the threshold issue of standing only, and not any merits issue.  Plaintiffs thus compound their improper citation to a vacated opinion by misrepresenting the context of the rehearing grant that vacated it.

[5] Class counsel's continued attempts to justify reliance on the R&R are devoid of legal merit, and only aggravate the transgression.  *E.g., DeSisto College, Inc. v. Line,* 888 F.2d 755, 766 (11th Cir.1989) ("[M]aintaining a legal stance untenable with [the] law demonstrates either an ignorance of [the] law, and thus inadequate research, or some intent to mislead the ... court....") *cert. denied,* 495 U.S. 952 (1990).

### C. Plaintiffs' Continued Reliance on an Irrelevant, Unpublished Trial Court Order in *Apple* is in Bad Faith

Faced with the reality that citing unpublished California trial court orders is sanctionable, Plaintiffs' only response is that federal courts may consider them "persuasive."  The cases Plaintiffs cited uniformly involve interpreting questions of California law; they certainly do not say that facts recited in unpublished orders may be considered "persuasive" in making factual conclusions about litigants in other cases.  The Approval Order does not cite the order to inform any issue of California law; it adopts a factual statement in the order to support a factual conclusion in the Approval Order.  The order is not citeable for Plaintiffs' purpose, and it has no place in this Court's order.

### D. Plaintiffs Concede that the Approval Order's Disparaging Comments about Mr. Davis are Irrelevant and Unnecessary

Plaintiffs downplay the seriousness of the issue by suggesting this Court, despite disparaging comments within the Approval Order, nevertheless considered the merits of Mr. Davis's objection.  *See, e.g.*, DE999 at 4, citing DE978 at 23 (despite criticism of Mr. Davis, the Court "still considered the 'full merits' of Mr. Davis's objections.").  In other words, Plaintiffs concede that the gratuitous and false attack on Mr. Davis is unnecessary to this Court's decision.   If that is so, then there is no reason to disparage Mr. Davis, and good reasons to refrain. Plaintiffs' concession of the gratuitous nature of

- 14 -

unfortunate comments in the Approval Order highlights the prudence of precluding *ex parte* communications such as the Proposed Orders giving rise to this motion.[6]  *In re Colony Square Co.*, 819 F.2d 272, 275 (1987) ("When an interested party is permitted to draft a judicial order without response by or notice to the opposing side, the temptation to overreach and exaggerate is overwhelming.")

## V.   CONCLUSION

Mr. Davis respectfully requests that the Court grant rehearing and reconsider its findings of facts and conclusions of law on the matters set forth above, and that it alter or amend the Approval Order and Judgment.

Respectfully submitted this 8th day of March, 2020.

>       /s/  John W. Davis
> John W. Davis
> 3030 N. Rocky Point Dr. W.
> Suite 150
> Tampa, FL  33607
> (813) 533-1972
> john@johnwdavis.com
>
> *Pro se*

---

[6] *See also Declaration of John W. Davis*, Ex. 6 (email correspondence requesting copies of proposed orders); *see also* DE961, 961-1, 963, 964, 964-1 (Motion to Supplement Record).

- 15 -

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response has been prepared in compliance with Local Rules 5.1 and 7.1.

/s/ John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

This 8th day of March, 2020.

/s/ John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972