# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 13 2020

JAMES N. HATTEN, Clerk
By:                    Deputy Clerk

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No.  1:17-md-2800-TWT

**CONSUMER ACTIONS**

Chief Judge Thomas W. Thrash, Jr.

**MOTION TO TAKE JUDICIAL NOTICE OF MISCONDUCT AND A**

**RULE 11 VIOLATION THAT FATALLY POISONED THIS APPROVAL**

Under Rule 201(b)(1) and (2) the objector requests the court take judicial notice of a meritorious adjudicative fact that is missing an acknowledgment of its existence from the plaintiffs and the court. The objector is not a lawyer but this misconduct issue appears to be serious enough that this deal should not have been approved and needs to be recalled immediately from the Eleventh Circuit.

From the settlement agreement;

14.1.12 "Receiving requests for exclusion and objections from Settlement Class Members and promptly providing copies thereof to Class Counsel and Defendants' Counsel. If the Settlement Administrator receives any requests for exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;" From Settlement Agreement and Release Doc 739-2 pgs 33 and 34 of 295

Class counsel and the steering committee required objectors to send their objections to JND Legal Administration instead of to the court directly. (This huge error broke the chain of evidence and used that unheard of requirement to falsely claim this objector's objection was a day late and should not be considered by the court which apparently it was not because the court never stated what it believed about the objection.)

After this objector filed his objection with JND Legal administration on November 19, 2019 see Doc. 899 Exhibit 10, class counsel then received its copies from them (and may have forwarded copies on to the balance of all other firms in the litigation) before the objection filing made onto the docket on December 05, 2019.

Class counsel, the steering committee and possibly JND Legal Administration out right lied by stating the objector's objection was filed a day late and need not be considered thereby committing fraud on the class, court which is misconduct and should have prohibited any approval and award of fees and expenses until this issue was investigated. That lie to obtain a fraudulent approval is in their Response to Objections dated December 01, 2019 Doc 902 pg 41 footnote 34 at bottom of page Exhibit 1.

The objector filed the evidence of their misconduct lie in his Motion To Remove Class Counsel for Misconduct that appears on the docket December 09, 2019 Docket 917, the attachment to that filing has the certified return receipt number of 9590940302505155596187 which is on the same envelope as the tracking number of 70171450000125522361 which the court is not aware of, which shows the history of the package as it was tracked. The objection was mailed November 19, 2019 not on November 20, 2019. See Exhibit 2. The objector also took pictures at the post office proving again when it was mailed, see Exhibit 3. The evidence is beyond a reasonable doubt proves fraud was involved and poisoned this approval.

The four hour long fairness hearing encompasses 125 pages and the court's order granting final approval opinion, Doc 956, totals 122 pages in length. When combined, that is a grand total of 247 pages of evidence but yet there is nothing in the record from the court or any of the lawyers on both sides acknowledging this

malicious lie by those who knew it was false when made and they remained silent hoping the court would ignore the objection and approve the settlement which it did because the court never addressed the objection and if it was invalid as class counsel and the steering committee claim it to be.

Here is what the fraud means and why it spells doom for this settlement and approval which no one appreciates or hasn't thought that far ahead and requires a recall of the approval for the Eleventh Circuit which no one wants.

That lie utilized either mail fraud, wire fraud or a combination but it cannot be neither. Wire fraud is a crime in which a person concocts a scheme to defraud or obtain money based on false representation or promises. This criminal act is done using electronic communications or an interstate communications facility. See Exhibit 4. Mail fraud is the same as above just substitute the term wire for mail and different case law applies obviously but let's stick with wire since that can be proven at a minimum.

The envelope the objector's objection mailed to JND Legal Administration needs to be found but may have been destroyed or concealed to allow this fraudulent $380 million lie fraud scheme to take place. (It's fortunate the objector assumed this was going to happen so he did not use regular first class mail and documented the truth along the way, see Motion to Remove Class Counsel Docket 917 the

attachment that proves the objection was mailed on November 19, 2019 and not a day late on November 20, 2019 as claimed by the lying lawyers see three exhibits.

That objection was then forwarded by JND Legal Administration in Seattle Washington by direct mail or electronically across state lines to class counsel and/or the steering committee that are located in Georgia and other states (JND's principals are all lawyers by the way.)

Class counsel and the steering committee then transmitted Doc 902 electronically through the government's Pacer system to the courthouse in Georgia, hence there appears to be mail and wire fraud violations involved in this settlement and approval which can be felonies.

Class counsel and the steering committee whose signatures are on Doc 902 appesr to have committed fraud on the class, court and class by lying and being deceitful about the mailing date along with it being a Rule 11 violation.

The objector states that it appears the court relied on this false statement because it did not acknowledge that the objection was indeed valid and as a result unlawfully approved the $380 million settlement thereby selling out the class.

Some other lawyer objector who is more qualified then I, or the court sua sponte, should file a motion for an indicative ruling to recall the approval from the Eleventh Circuit so their judicial resources along with their objectors' are not

wasted and the class is not forced to wait another nine months waiting for poisoned justice to be invalidated and returned to have the issues fixed.

The lawyers who signed Doc 902 should have been required to acknowledge and explain this lie in the past in writing or at the fairness hearing but the truth is covered-up. The lawyers have still not come clean even after this issue was pointed out by the objector months ago Doc 917 attachment.

As a result the lawyers and their firms that represent this objector and 147.9 million class members violated the sections below of the Georgia Rules of Professional Conduct. (For those three attorneys with JND Legal Administration in the State of Washington it's the Washington Bar Association Rules of Professional Conduct in what appears to be a conspiracy to obtain an approval through lie by deceit and should have prohibited the approval.)

The plaintiffs lawyers signatures appear on to this fraudulent misconduct scheme lie document to obtain a tainted approval which is Plaintiffs Response To Objections Doc 902 pg 43-46. Those who knew or should have known about this fraud by reading the objector's filings on the docket and failed to address and correct this misconduct either in writing or even at the fairness hearing are:

Kenneth Canfield of Doffermyre Shields Canfield & Knowles, LLC

Amy E. Keller of Dicello Levitt Gutzler LLC

Norman Siegel of Stueve Siegel Hanson LLP

Roy E. Barnes of Barnes Law Group

David Worley of Evangelista Worley LLC

Andrew N. Friedman Cohen Milstein Sellers & Toll PLLC

Eric H. Gibbs of Girard Gibbs LLP

James Pizzirusso of Hausfeld LLP

Ariana J. Adler of Tadler Law LLP

John A. Yanchunis of Morgan & Morgan Complex Litigation Group

William H. Murphy of Murphy, Falcon & Murphy

Jason R. Doss of The Doss Firm, LLC

Rodney K. Strong of Griffin & Strong P.C.

They all appear to have violated the following sections of the Georgia Rules of Professional Conduct as follows:

## Georgia Rules of Professional Conduct

## RULE 3.3 CANDOR TOWARD THE TRIBUNAL

    a.  A lawyer shall not knowingly:
           1.  make a false statement of material fact or law to a tribunal

4. offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

The maximum penalty for a violation of this rule is disbarment.

Comment

2. ….Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.

Representations by a Lawyer

…..Compare Rule 3.1. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.

Offering Evidence

[5] Paragraph (c) allows that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence.

[7] The duties stated in paragraphs (a), (b) and (c) apply to all lawyers,

[8] The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances. See Rule 1.0 (i). Thus, although a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of the client, the lawyer cannot ignore an obvious falsehood.

Remedial Measures

[10] Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, a lawyer may be surprised when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations, the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. If that fails, the advocate must take further remedial action. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is for the tribunal then to determine what should be done - making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing.

[11] The disclosure of a client's false testimony can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement. See Rule 1.2 (d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.

Preserving Integrity of Adjudicative Process

[12] Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding, unlawfully destroying or

concealing documents or other evidence or failing to disclose information to the tribunal when required by law to do so.  (Envelope with mailing date on it where is it?)

Duration of Obligation

[13] A practical time limit on the obligation to rectify false evidence or false statements of law and fact has to be established. The conclusion of the proceeding is a reasonably definite point for the termination of the obligation. A proceeding has concluded within the meaning of this rule when a final judgment in the proceeding has been affirmed on appeal or the time for review has passed.

## RULE 3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL

A lawyer shall not:

a. unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

b.
    1. falsify evidence;

Comment

[1] The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.

## RULE 3.5 IMPARTIALITY AND DECORUM OF THE TRIBUNAL

A lawyer shall not, without regard to whether the lawyer represents a client in the matter:

a. seek to influence a judge, juror, prospective juror or other official by means prohibited by law;

b. communicate ex parte with such a person except as permitted by law;
c. communicate with a juror or prospective juror after discharge of the jury if:
  i. the communication is prohibited by law or court order; or
  ii. the juror has made known to the lawyer a desire not to communicate; or
  iii. the communication involves misrepresentation, coercion, duress or harassment.
d. engage in conduct intended to disrupt a tribunal.

The maximum penalty for a violation of paragraph (a) or paragraph (c) of this rule is disbarment. The maximum penalty for a violation of paragraph (b) or paragraph (d) of this rule is a public reprimand.

## RULE 3.6 TRIAL PUBLICITY

a. A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a person would reasonably believe to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
(Lawyer gal lied regarding the $1,920.00 value for credit monitoring.)

## RULE 5.1 RESPONSIBILITIES OF PARTNERS, MANAGERS AND SUPERVISORY LAWYERS

a. A law firm partner as defined in Rule 1.0 (q), and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Georgia Rules of Professional Conduct.
b. A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Georgia Rules of Professional Conduct.
c. A lawyer shall be responsible for another lawyer's violation of the Georgia Rules of Professional Conduct if:
  1. the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
  2. the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices or has direct supervisory

authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

The maximum penalty for a violation of this Rule is disbarment.

## RULE 5.2 RESPONSIBILITIES OF A SUBORDINATE LAWYER

a. A lawyer is bound by the Georgia Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.
b. A subordinate lawyer does not violate the Georgia Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.

The maximum penalty for a violation of this Rule is disbarment.

## RULE 8.3 REPORTING PROFESSIONAL MISCONDUCT

a. A lawyer having knowledge that another lawyer has committed a violation of the Georgia Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, should inform the appropriate professional authority. 9They all knew and stayed silent.)

## RULE 8.4 MISCONDUCT

a. It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to:
   1. violate or knowingly attempt to violate the Georgia Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

4. engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation;

7.
applicable rules of judicial conduct or other law; or

(Judge intentionally did not acknowledge that the information submitted was false and ignored it, why?)

8. ☐

reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer, where the lawyer has admitted in judicio, the commission of such act.

The maximum penalty for a violation of Rule 8.4 (a) (1) is the maximum penalty for the specific Rule violated. The maximum penalty for a violation of Rule 8.4 (a) (2) through (c) is disbarment.

## Conclusion

The approval is forever poisoned and has no chance of being affirmed, none, because the class was sold out in this approval by our conniving, lying lawyers. They all need to be removed from this litigation immediately without fees or expenses. Many lawyers should have their law licenses revoked and be jailed in the future by the time all is said and done.

This court officially should take notice of this fact, the ramifications that have spun from it, address the issues now rather than later instead of requiring the Eleventh Circuit to kick this back in a year for correction of this issue and others.

I certify under penalty of perjury all of the above is true to the best of my knowledge and belief.

Christopher Andrews, Pro se objector
P.O. Box 530394
Livonia, MI 48153-0394
T. 248-635-3810 E. caaloa@gmail.com
Dated March 09 , 2020

**Certificate of Mailing**

I certify that this document with four exhibits was sent to the Clerk of the Court via

first class mail with copies sent to everyone else who are registered with CM/ECF.

Christopher Andrews, Pro se objector P.O. Box 530394 Livonia, MI 48153-0394

T. 248-635-3810 E. caaloa@gmail.com   Dated March 09, 2020

Clerk of the Court
Richard B. Russell Federal Building
2211 United States Courthouse
75 Ted Turner Drive, SW Ste. 2211
Atlanta, GA 30303-3309

Exhibit 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT CONSUMER ACTIONS Chief Judge Thomas W. Thrash, Jr. |

### PLAINTIFFS' RESPONSE TO OBJECTIONS TO THE SETTLEMENT

Consumer Plaintiffs, through Consumer Plaintiffs' Lead Counsel, respectfully file this response to the objections filed by settlement class members. Even after a sustained effort by a handful of lawyers to drum up objections based on misleading or incorrect information, there are relatively few objections to this historic settlement. As explained in this response, the objections fail to establish the settlement is anything other than "fair, adequate and reasonable." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Of approximately 147.4 million class members, at most 1,106 submitted objections—or, approximately 0.00075% of the class. A majority of those objections were received on two occasions following the promotion of false information in the national press. The first sizeable batch appeared after a *New York Times* opinion

has been excoriated by Courts for this conduct." *CRT*, 281 F.R.D. at 533. *See also, e.g., Clark v. Gannett Co.*, 122 N.E. 3d 376, 380 (Ill. Ct. App. 2018) (Bandas has "earned condemnation of [his] antics from courts around the country. Yet, [his] obstructionism continues."). Most recently, Mr. Bandas and his law firm, The Bandas Law Firm, P.C. ("Bandas Law"), admitted that they engaged in the unauthorized practice of law by representing a "*pro se*" objector in another action, without filing an appearance, and agreed to withdraw that objection in exchange for attorneys' fees. *See* App. 1, ¶ 62. As part of the final judgment in a subsequent action, Mr. Bandas and Bandas Law were ordered not to seek *pro hac vice* admission without attaching that judgment. *Id.*

Objector Christopher Andrews, who also filed an objection in another class action, *Shane v. Blue Cross*, No. 10-cv-14360 (E.D. Mich.), has made a number of accusations against Class Counsel in his objection here.[34] Notably, in the *Shane* litigation, the United States District Court for the Eastern District of Michigan found that "many of [Mr. Andrews'] submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." App. 1, ¶ 65 & Ex. 7. That court also noted that Mr. Andrews "is known to be a

---

[34] Mr. Andrews' objection was postmarked after the deadline and can be rejected on that basis alone.

Exhibit 2

# USPS Tracking®

Tracking **FAQs**

## Track Another Package +

Track Packages
Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

Remove

## Tracking Number: 70171450000125522361

Your item has been delivered and is available at a PO Box at 8:30 am on November 22, 2019 in SEATTLE, WA 98111.

## Status

# Delivered

November 22, 2019 at 8:30 am

Delivered, PO Box

SEATTLE, WA 98111

Delivered

## Tracking History

**November 22, 2019, 8:30 am**
Delivered, PO Box
SEATTLE, WA 98111
Your item has been delivered and is available at a PO Box at 8:30 am on November 22, 2019 in SEATTLE, WA 98111.

**November 22, 2019, 7:17 am**
Departed USPS Regional Facility
SEATTLE WA DISTRIBUTION CENTER

**November 22, 2019, 6:36 am**
Arrived at Unit
SEATTLE, WA 98101

**November 21, 2019, 3:15 pm**
Arrived at USPS Regional Destination Facility
SEATTLE WA DISTRIBUTION CENTER

**November 21, 2019**
In Transit to Next Facility

**November 20, 2019, 12:29 am**
Arrived at USPS Regional Origin Facility
PONTIAC MI DISTRIBUTION CENTER

**November 19, 2019, 4:56 pm**
Departed Post Office
LAKELAND, MI 48143

**November 19, 2019, 12:19 pm**
USPS in possession of item
LAKELAND, MI 48143

Exhibit 3









IFIED MAIL

0001 2552 2361

U.S. POSTAGE PAID
FCM LG ENV
LAKELAND, MI
48143
NOV 19 19
AMOUNT
$8.35
R2305K137140-99

1000        98111

ax Data Breach Class Action
ment Administrator
tion: Objection
O Administration
a 91318
Wa 49111-8125

Exhibit 4

## 941. 18 U.S.C. 1343—Elements of Wire Fraud

The elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994) (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire); *see also, e.g., United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.) (the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used) (*citing* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)), *cert. denied*, 115 S.Ct. 2289 (1995); *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994) (essential elements of wire fraud are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme), *cert. denied*, 115 S.Ct. 193 (1995); *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993) (to prove wire fraud government must show (1) scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in scheme with intent to defraud, and (3) use of interstate wire communications in furtherance of scheme); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").