## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

## CONSUMER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPEAL BONDS

This memorandum supports Consumer Plaintiffs' motion for an order requiring Objectors/Appellants Theodore H. Frank and David R. Watkins, Mikell West, George W. Cochran, Christopher Andrews, and Shiyang Huang (collectively, "Objectors") to post appeal bonds.

Plaintiffs are harmed and prejudiced by the appeals lodged by the Objectors. Under the terms of the class settlement, no part of the $380.5 million in cash benefits, credit monitoring, or the other significant non-monetary relief will be provided to class members until the appeals are resolved. Pursuant to Rules 7 and 8 of the Federal Rules of Appellate Procedure, Plaintiffs therefore move for an order requiring each Objector to post an appeal bond in the amount of $20,000, as security for the costs of appeal. As demonstrated below, under similar

1

circumstances, other courts have required objectors to post sizeable bonds. The modest appeal bonds sought here are factually and legally justified to ensure payment of the taxable costs Plaintiffs will incur.

## FACTUAL BACKGROUND

On July 22, 2019, Plaintiffs filed their motion to direct notice of the settlement of this action to the settlement class, informing the Court that the parties had entered into a settlement providing for a non-reversionary cash fund of $380.5 million to pay benefits to the class, including cash compensation, credit monitoring, and help with identity restoration. In addition, Equifax may pay up to another $125 million for certain out-of-pocket losses. Equifax must also spend a minimum of $1 billion for data security and related technology over five years and comply with comprehensive data security requirements. (Doc. 739). This Court granted Plaintiffs' motion the same day, and, in its order, set forth the requirements for any objections to final approval of the settlement. (Doc. 742). Of the approximately 147 million class members, only 388 directly objected to the settlement [1] which the Court recognized was a "miniscule number . . . in comparison to the class size." (Doc. 1029 at 26).

---

[1] As the Court recognized, many of the objections were in the response to "incomplete or misleading media coverage, or at the behest of serial class action objectors, and often demonstrat[ed] a flawed understanding of the settlement terms." (Doc. 1029 at 25-26).

On December 19, 2019, the Court heard oral argument regarding the merits of the settlement and Plaintiffs' motion for fees, expenses, and service awards to the class representatives. Thereafter, in an order dated January 13, 2020 (and amended March 17, 2020), the Court finally approved the settlement and granted Plaintiffs' motion for fees, expenses, and service awards. (Docs. 956, 1029). In its order, the Court determined the settlement is fair, reasonable, and adequate and complies with Federal Rule of Civil Procedure 23. The Court also found the settlement to be the largest data breach settlement in history, providing class members "an unprecedented package of benefits, including but not limited to cash compensation for out-of-pocket losses fairly traceable to the breach of up to $20,000 per class member, reimbursement for time spent as a result of the breach, and 25% of the amount paid to Equifax by class members for identity restoration services in the year prior to the breach; ten years of high quality credit monitoring services having a retail value of $1,920 per class member; and seven years of identity restoration services without the need to file a claim," and "a consent order requiring [Equifax] to comply with comprehensive cybersecurity standards, spend at least $1 billion on data security and related technology, and have its compliance audited by independent experts." (*Id.* at 90).

The Court also thoroughly addressed the substance of each Objector's

objections, and found that they each lacked merit, and in some instances, were made in bad faith. (*Id.* at 37-82, 93-103;[2] *see also* Doc. 951 (denying Objector Huang's motion to strike the expert declaration of Professor Klonoff)). Objectors filed their respective Notices of Appeal on January 17, 2020 (Doc. 965 (Huang)); February 10, 2020 (Doc. 977 (Frank and Watkins); Doc. 985 (Andrews); Doc. 989

---

[2] *See id.* at 54 & n.23, 56-58 (addressing objection by Objector Huang, concluding it was "particularly weak," *id.* at 58); 54 & n.24, 59-65 & n.28, 30 (addressing objections by Objectors Frank and Watkins, noting they had made the same objection in *Target* which was rejected there); 55 & n.26 (addressing challenge to attorneys' fees by Objectors Frank and Watkins, finding their arguments contradictory in claiming separate counsel should be appointed to represent residents of each jurisdiction while also criticizing class counsel's hours as inflated because too many lawyers worked on the case); 93-94 (overruling objection to fees by Objector John Davis as "frivolous") 94-98 (overruling objections to attorneys' fees by Objectors West and Frank and Watkins regarding the percentage of the fund awarded, stating these objectors "unreasonably and erroneously" discounted the risk class counsel faced, *id.* at 94); 99-100 (overruling objection by Objectors Frank and Watkins regarding how the size of the fund was measured, noting "[s]imilar arguments have been rejected before," *id.* at 99); 100-103 (overruling objection of Objectors West and Frank and Watkins regarding valuation of credit monitoring and injunctive components of settlement, noting that a similar objection by Frank in a different case had been rejected, *id.* at 102); 110-114 (noting Objectors Cochran, Andrews, Frank, Davis, and attorney for Objector West are "serial" objectors); 108 (recognizing that Objector Davis's objection to compensating class representatives for their service was based on an argument that has been "rejected out of hand" by other courts because it relied on inapposite cases); 114 (finding Objector Frank "disseminated false and misleading information about the settlement in an effort to encourage others to object and direct class members to object using the 'chat-bot' created by Class Action Inc., notwithstanding that it contained false and misleading information about the settlement"); 121 (denying motion by Objector Andrews stating it was an objection improperly couched as a motion).

(Cochran)); and February 11, 2020 (Doc. 982 (West)).[3] Under Federal Rule of Appellate Procedure 4(a)(4)(B)(i), these notices of appeal took effect as of the Court's decisions on certain post-judgment motions on March 17, 2020. (Docs. 1026, 1027).

Under the terms of the settlement agreement, no money can be paid out or relief provided under the settlement until final resolution of any appeals, which in the ordinary course could take a year or more. The existence of this delay provides an opportunity for Objectors to continue to act against the settlement class's interests, spread further misinformation about the settlement, or attempt to leverage the appeal into a personal money-grab, allowing them to attempt to extract a payment in exchange for dismissal of their appeals so that the settlement funds can be distributed immediately. The delay caused by these appeals will result in substantial costs to the class, costs that Objectors/Appellants should be required to secure with a bond.

## <u>ARGUMENT</u>

Courts routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal and to

---

[3] Objector John Davis has not yet appealed. On February 10, 2020, he filed a motion to alter or amend the judgment (Doc. 978), which the Court denied on March 17, 2020 (Doc. 1026). Upon his anticipated appeal, Plaintiffs intend to request that Davis post an appeal bond.

protect against the additional costs the class will incur caused by the delay of appeal. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012); *In re Cardizem CD Antitrust Litig.*, 391 F. 3d 812, 816-17 (6th Cir. 2004); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010); *Aboltin v. Jeunesse LLC*, 2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019). Requiring objectors to post bonds also serves to discourage frivolous appeals. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizeable bond"); *In re Polyurethane*, 178 F. Supp. 3d at 638.

Such bonds are authorized by Federal Rule of Appellate Procedure 7, which provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal," and Federal Rule of Appellate Procedure 8(a)(1)(B), which empowers a district court to approve a supersedeas bond, which is justified where the objector's appeal effectively stays consummation of the settlement and distribution of its benefits. *See, e.g.*, *In re Checking*, 2012 WL 456691, at *2; *Aboltin*, 2019 WL 1092789, at *3; *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006); *In re Uponor, Inc. F1807 Plumbing*

*Fittings Prod. Liab. Litig.*, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012). Further, courts have inherent authority to require an objector to post a bond as a sanction for willful disobedience of a court order or when the objector acts in bad faith or vexatiously. *Pedraza*, 313 F. 3d at 1335-36.

The amount of the bond rests in the Court's discretion. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th Cir. 2005). Among the costs a court can consider in setting the amount of the bond are costs taxable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 and the increased administrative costs and loss of interest resulting from delay in consummating the settlement. *See, e.g.*, *In re Polyurethane*, 178 F. Supp. 3d at 642-45; *In re Checking*, 2012 WL 456691, at *2; *In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

Thus, Plaintiffs' motion presents two questions. First, is a bond appropriate under the circumstances of this case? And, second, if so, how much should the bond be? As explained below, requiring Objectors to each post a bond is appropriate and the bond should be in the modest amount of $20,000 to secure the taxable costs Plaintiffs will incur on appeal.

## I.   OBJECTORS SHOULD BE REQUIRED TO POST A BOND.

When determining if an appeal bond is appropriate, courts consider several

factors, including: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 212; *In re Checking*, 2012 WL 456691, at *2. Each of these factors supports requiring each Objector to post a bond in this case.

### A.   Each Objector Is Presumed to Be Able to Afford a Bond.

Courts presume that an objector is financially able to post an appeal bond unless he or she demonstrates otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Polyurethane*, 178 F. Supp. 3d at 641-42; *In re Cardizem*, 391 F.3d at 818. Accordingly, Plaintiffs need not prove that each Objector can afford to post the bond Plaintiffs have requested; the burden is on each Objector to come forward with sufficient financial information to prove that a bond is beyond their means. Regardless, Objector West, for example, is represented by counsel, who presumably have agreed to advance litigation expenses on his behalf. Most of the other Objectors have already been identified by this Court as professional, serial objectors (Doc. 1029 at 110-114), who have extorted money from counsel in prior class actions to withdraw their objections, and thus should not be heard now to claim they cannot afford to put up a bond to pursue their appeals. For example,

Objector Andrews has objected in about ten class actions and "has extorted additional fees from counsel in other cases." (*Id.* at 111-112). His request to proceed *in forma pauperis* should be denied for the reasons set forth in Plaintiffs' opposition to that motion, which is incorporated by reference herein. (Doc. 998). In addition, Objector Huang has shown his financial means by paying the filing fees to appeal. Accordingly, this factor supports requiring each Objector to post a bond.

### B.    Each Objector's Appeal Lacks Merit.

Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding whether to require a bond. *See, e.g.*, *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL 456691, at *2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999). The less likely it is an appeal will succeed, the stronger the case for a requiring a bond. Here, each Objector's appeal lacks merit and has no legitimate likelihood of success.

The Court has already found that Objectors Frank of Frank and Watkins, West through his attorney Christopher Bandas, Cochran, and Andrews—all of whom the Court identified as serial objectors—"have unsuccessfully asserted many of the same or similar objections in other class action settlements," and "that

there is no substantial likelihood their objections will be successful on appeal." (Doc. 1029 at 110-114; *see also id.* at 37-82, 94-103 (analyzing each objection and determining each lacks merit)). The Court has likewise concluded that the other Objectors' arguments lack merit and have previously been rejected by other courts. (*See id.* at 54, 56, 58 (finding Objector Huang's objection regarding intra-class conflicts "wholly without merit," previously "thoroughly analyzed and rejected in *Target*," and "particularly weak given the structure of the settlement in this case and the nature of the alleged harm to the class")).

### C.     Objectors Have Acted in Bad Faith and Vexatiously.

This Court has already found that Objectors Frank, West (through his attorney Christopher Bandas), Cochran, and Andrews "are serial objectors, that they have unsuccessfully asserted many of the same or similar objections in other class action settlements, that their objections are not in the best interests of the class, that there is no substantial likelihood their objections will be successful on appeal, and that the class would be best served by final resolution of their objections as soon as practicable so that class members can begin to benefit from the settlement." (Doc. 1029 at 110). The Court previously found, *id.* at 110-114, that:

- Objector George Cochran, an attorney who objects on his own behalf, "is a serial objector to class action settlements, with a history of attempting to

extract payment for the withdrawal of objections." *Syngenta*, 357 F. Supp. 3d at 1104.

- Christopher Bandas, an attorney who represents objector Mikell West, is recognized by federal courts across the country as a "serial objector" who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *CRT*, 281 F.R.D. at 533; *see also, e.g.*, *Clark v. Gannett Co.*, 122 N.E. 3d 376, 380 (Ill. Ct. App. 2018) (Bandas has "earn[ed] condemnation for [his] antics from courts around the country. Yet, [his] obstructionism continues."). Moreover, Bandas and his law firm are subject to a permanent injunction issued by a federal judge governing their ability to object in class actions. *Edelson P.C. v. The Bandas Law Firm*, 2019 WL 272812 (N.D. Ill. Jan. 17, 2019).

- Objector Christopher Andrews, although not an attorney, by his own admission at the final approval hearing has filed objections in about ten class actions. In *Shane v. Blue Cross*, No. 10-cv-14360 (E.D. Mich.), the court found that "many of [Mr. Andrews'] submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." App. 1, ¶ 65 & Ex. 7. That court also noted that Mr. Andrews "is known to be a 'professional objector who has extorted additional fees from counsel in other cases[.]'" *Id.* Additionally, class counsel have submitted an email from Mr. Andrews that calls into question his motivation for objecting in this case. [Doc. 900-1, Ex. 8].

  . . .

- Theodore Frank, a lawyer and director of the Hamilton Lincoln Law Institute, is in the business of objecting to class action settlements and has previously and unsuccessfully made some of the same or similar objections that he has made here. *See Target*, 2017 WL 2178306, at *6 (rejecting objection that an allegedly fundamental intra-class conflict existed in a data breach case because class members could assert claims under various state statutes); *Poertner*, 618 Fed. Appx. at 628-29 (rejecting objection that the proposed fee was unfair, finding Frank had improperly limited the monetary

benefits to the class and excluded the substantial non-monetary benefits of the settlement). The Court also finds that Frank disseminated false and misleading information about this settlement in an effort to encourage others to object in this case and directed class members to object using the "chat-bot" created by Class Action Inc., notwithstanding that it contained false and misleading information about the settlement. These actions are improper and further support a finding that Frank's objection is not motivated to serve the interests of the class. *See Manual* § 21.33 ("Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out.").

Objector Andrews—who has submitted to the Court a flurry of vexatious filings—has a sordid litigation history as further described in Plaintiffs' opposition to his motion to appeal *in forma pauperis* (Doc. 998) and Plaintiffs' opposition to his "Motion to Take Judicial Notice of Misconduct and a Rule 11 Violation that Fatally Poisoned this Approval" (Doc. 1031). Those filings are incorporated by reference here. In short, Andrews has been cited for repeatedly filing frivolous objections and related motions; sanctioned for engaging in vexatious and bad faith litigation; arrested; and held in contempt for violating a court order. One of his litigation tactics is to make outrageous and utterly unsubstantiated charges of fraud, collusion, and unethical conduct regarding class counsel and the courts evaluating the fairness of class action settlements to which he has objected. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 639-40 (N.D. Ohio 2016); *In re Polyurethane Foam Antitrust Litig.*, 2017 WL 8791098 (6th Cir.

Dec. 14, 2017).

The problem posed by professional objectors is well known. *See, e.g.*, *Newberg on Class Actions* § 15:37. The Federal Judicial Center has advised courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009). And federal courts overseeing class actions have described the conduct of professional objectors in stark terms. For example, one judge noted:

> Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

Many other courts have used similar language to describe the modus operandi of serial objectors. *See, e.g.*, *Snell v. Allianz Life Ins. Co. of N. Am.*, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000) (professional objectors "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that

could otherwise be undermined by a time-consuming appeals process"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("professional objectors . . . seek out class actions to simply extract a fee by lodging generic, unhelpful protests"); *Barnes v. Fleetwood Fin. Corp.*, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal).").

One means of dealing with the harm caused by professional objectors is to require them to post an appeal bond. Courts routinely find that appeals by professional objectors are vexatious and in bad faith and impose a bond to protect the class and class counsel. *See, e.g.*, *In re Initial Public Offering Securities Litig.*, 728 F. Supp. 2d at 294; *In re General Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 155-56 (S.D.N.Y. 2014); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013). This Court should do that here, requiring Objectors Frank and Watkins, West, Cochran, and Andrews to bear at least some of the costs that their conduct imposes on the rest of the class by posting a bond.

Likewise, while the Court did not identify Objector Huang as a serial

objector, his serial filings in this case work a detriment to the efficient administration of justice and can be deemed vexatious in their own right. (Docs. 813, 852, 872, 893, 918, 919, 948, 949, 950). He also has previously taken positions found to be meritless in other cases. *See Larson v. Allina Health Sys.*, , 2020 WL 583082, at *1-2 (D. Minn. Feb. 6, 2020) (denying "non-party, non-class member Shiyang Huang['s] Motion for Leave to File Amicus Curiae in Support of Neither Party," finding arguments raised "meritless," and concluding "Huang's proposed involvement [would not] be timely, useful, or otherwise helpful to the Court"); *McDonald v. Edward D. Jones & Co., L.P.*, 2020 WL 504865, at *1 (8th Cir. Jan. 31, 2020) (per curiam opinion rejecting objections by Huang to class settlement and attorneys' fee award). Requiring Objector Huang to post a bond would likewise disincentivize his deleterious conduct.

### D. There is Risk that Each Objector Will Not Pay Costs Absent a Bond.

There is a substantial risk that the costs of appeal will not be paid unless a bond is required. Each Objector resides outside of this Court's physical jurisdiction.[4] If the costs of appeal are not voluntarily paid, Plaintiffs will be forced

---

[4] *See* Doc. 965 at 2 (Huang resides in Kansas); Doc. 985 at 19 (Andrews resides in Minnesota); Doc. 989 at 2 (Cochran resides in Ohio); Doc. 876 at 2 (Frank resides in Washington, D.C. and Watkins resides in Utah); Doc. 880 at 3 (West resides in Texas).

to institute a collection action in one or more other jurisdictions. Courts routinely find a substantial risk of non-payment under such circumstances, warranting an appeal bond. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 ("[T]he Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is a significant risk of non-payment."); *see also Dennings*, 928 F. Supp. 2d at 1271-72 ("Second, there is a risk of non-payment of appeal costs given that both objectors live in Texas, and it may therefore be difficult to enforce a cost order imposed upon them."); *In re Netflix Privacy Litig.*, 2013 WL 6173772, at *3 (N.D. Cal. Nov. 25, 2013); *In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010).

In short, the factors typically considered by courts in deciding whether to require an appeal bond all support requiring Objectors to do so in this case.

## II.   THE APPROPRIATE AMOUNT OF THE BOND.

Courts frequently require objectors who have appealed from final approval orders to post substantial bonds. *See, e.g.*, *In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, 2010 WL 786513, at *2 ($2 million); *Tennille v. Western*

*Union Co.*, 2013 WL 5716877, at *2 (D. Colo. Oct. 21, 2013) ($1,007,294); *In re Checking*, 2012 WL 456691, at *3 ($616,338); *Barnes*, 2006 WL 6916834, at *3 ($645,111); *In re Broadcom Securities Litig.*, SAC 01-275 (C.D. Cal. Dec. 5, 2005) (cited in *In re Checking*, 2012 WL 456691, at *2 ($517,700)); *In re Cardizem*, 391 F.3d at 814 ($174,429); *In re Polyurethane*, 178 F. Supp. 3d at 645 ($145,463); *In re Uponor*, 2012 WL 3984542, at *6 ($125,000).

Here—despite the enormous harm the Objectors are inflicting on the settlement class by delaying any relief by many months or even years—Plaintiffs seek only a modest bond for the costs of appeal. Taxable costs listed in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 are customarily included in an appeal bond. *See, e.g.*, *In re Polyurethane*, 178 F. Supp. 3d at 642; Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (4th ed. 2008). These costs include, among others, preparing and transmitting the record, obtaining necessary transcripts, printing, and copying. *Id.* Courts routinely approve appeal bonds for taxable costs of $25,000 or more without the need for delineating the specific costs that are expected to be incurred. *In re Uponor*, 2012 WL 3984542, at *3; *In re Polyurethane*, 178 F. Supp. 3d at 643; *In re Brokerage Antitrust Litig.*, 2007 WL 1963063, at *2-3 (D.N.J. July 2, 2007). This is an appropriate amount for an appeal bond considering the potential costs of a multi-party multi-issue appeal.

*See In re Brokerage*, 2007 WL 1963063, at *3 (ordering $25,000 bond). Plaintiffs therefore request that the Court order bonds of $20,000 for the costs of appeal, to be posted by each Objector.[5]

## **CONCLUSION**

For the reasons set forth above, requiring Objectors to post substantial appeal bonds is both justified and proper. Taking all of the relevant factors into account, Plaintiffs respectfully request that the appropriate total amount of the bond, to be posted jointly and severally by each Objector/Appellant, is $20,000.

---

[5] Each objector should independently secure the full bond amount. *See, e.g.*, *Muransky v. Godiva Chocolatier, Inc.*, 2017 WL 11220677, at *2 (S.D. Fla. Jan. 9, 2017) (If "only one of the Objectors posted that bond, the Objector could still proceed on every issue on appeal, yet the costs Plaintiffs would incur would not be reduced by half."); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 218 (ordering bond for which objectors were jointly and severally liable).

Dated: March 30, 2020                    Respectfully submitted,


                                         */s/ Kenneth S. Canfield*
                                         Kenneth S. Canfield
                                         Ga Bar No. 107744
                                         **DOFFERMYRE SHIELDS**
                                         **CANFIELD & KNOWLES, LLC**
                                         1355 Peachtree Street, N.E.
                                         Suite 1725
                                         Atlanta, Georgia 30309
                                         Tel. 404.881.8900
                                         kcanfield@dsckd.com


                                         */s/ Amy E. Keller*
                                         Amy E. Keller
                                         **DICELLO LEVITT GUTZLER LLC**
                                         Ten North Dearborn Street
                                         Eleventh Floor
                                         Chicago, Illinois 60602
                                         Tel. 312.214.7900
                                         akeller@dicellolevitt.com


                                         */s/ Norman E. Siegel*
                                         Norman E. Siegel
                                         **STUEVE SIEGEL HANSON LLP**
                                         460 Nichols Road, Suite 200
                                         Kansas City, Missouri 64112
                                         Tel. 816.714.7100
                                         siegel@stuevesiegel.com


                                         ***Consumer Plaintiffs' Co-Lead Counsel***

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

*Consumer Plaintiffs' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW
Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, New York 10119
Tel. 212.946.9453
atadler@tadlerlaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Consumer Plaintiffs' Steering Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

*Consumer Plaintiffs' State Court Coordinating Counsel*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion and memorandum of law have been prepared in compliance with Local Rules 5.1 and 7.1.

*/s/ Norman E. Siegel*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with this Court via its CM/ECF service on March 30, 2020, which will send notification of such filing to all counsel of record.

*/s/ Norman E. Siegel*