UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 0 2 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No 2800
No. 1:17-md-2800-TWT

**CONSUMER ACTIONS**

Chief Judge Thomas W. Thrash, Jr.

**Appellant Christopher Andrews' Response to Doc 1040 Request For Bond**

## The $380 Million Equifax Cover-Up Bond Request

The duplicitous lawyers are attempting to cover up a fraud they are engaged in along with the covering up the clearly reversible issues the objector's objection contains that they can't beat by requesting an appeal bond so it won't reach the appeals court and be reversed. The court does not want a reversal either, obviously. The appellant is still fighting the plaintiffs and court over the informa pauperis status issue they have created and still no decision at the forty day mark and counting, hmm.

These lawyers should not be granted any bond request because the evidence in the docket proves they engaged in two criminal acts and obtained a fraudulent approval as a result even if the court ignored/missed it so they have forfeited their right to continue to represent the class which is not in our best interests. The appeal bond should be denied for this appellant since he cannot even afford the filing fee as the financial forms indicate/ Attached is a third updated Form 239 Exhibit 1.

The appellant has not received or read the plaintiffs' paper copies of the last three documents they mailed (because they have not been received yet) nor has he read any emailed copies that were sent that are related to these appellant's own last two filings as of this time, 9:00 am, and today's date when this was mailed.

Ms. Keller has been now been informed that there is to be no email or verbal communications with me from now on, things have changed.

Thirteen lawyers representing thirteen law firms who are asking for this bond should be investigated and charged with a felony for the criminal act of lying by breaking 18 U.S.C. § 1623—or, the "false declarations" law—where they "did knowingly and willfully" make "materially false, fictitious, and fraudulent" statement to the court in a filing to obtain a $380 million approval worth $77 million in fees when the lawyers falsely wrote:

34 "Mr. Andrews's objection was postmarked after the deadline and can be rejected on that basis alone." Plaintiffs' Response to Objections to the Settlement Doc 902 pg 41 dated 12-5-19.

That is a criminal lie, it's a felony that they chose not to correct after multiple filings were made by this appellant leading up to the approval. The objection was postmarked on the last day he could be filed which was on November 19, 2019 see Objection Doc 899 Exhibit B-10 pg 1-49 especially page 49 and Doc 913-2. Attached see Exhibit 2. This criminal lie was made to divert the court's attention away from the objection and raised a fake standing issue when there was none by claiming it was a day late and not valid at the time the court approved this fraudulent deal. The lawyers and court remained silent on this issue.

The thirteen lawyers who signed that document intentionally lied and the balance of lawyers that are on CM/ECF did also receive all filings Doc 899 Exhibit B-10 pg 1-49 especially page 49, buried in the docket, Doc 913-2 again shows more evidence of that false declaration with Doc 917 rounding out the evidence which appeared across multiple filings, mailings and dates.

The remaining lawyers on CM/ECF who are not on class counsel or on the steering committee also remained mute as well, endorsing a felony by silence and violating Rules of Professional Conduct in Georgia and elsewhere.

It's all misconduct and a well known fact that lawyers that engage in misconduct cannot receive any fees. The lie was clearly done to mislead, deceive and obtain the approval and fees. They had the means, motive and opportunity for this fraud on the court's machinery even if it's ignored/missed by the court.

It also appears to be a violation of 941. 18 U.S. C. 1343, wire fraud, which is a second felony since that criminal fraudulent filing was transmitted over telecommunication wires/ Pacer technology, possibly interstate, depending who sent it and where they were located, to the courthouse in Atlanta, Georgia. They illegally used federal government "taxpayer funded" facilities to defraud the court's machinery and 147.9 million member class.

This bond request now appears to be part of a RICO scheme to obtain a $380 million approval and the $77 million in fees at all costs. They are all driven by greed. Here is the position the thirteen lawyers have put themselves into.

In <u>Zen And The Art Of Motorcycle Maintenance</u>, Robert Pirsig describes the following way to trap a monkey, (or in this case, greedy, crooked, error prone, non gravitas lawyers.)

It's called The Monkey's Fist. The trap "consists of a hollowed-out coconut, chained to a stake. The coconut has some rice inside which can be grabbed through a small hole". The monkey's hand fits through the hole, but his clenched fist can't fit back out. "The monkey is suddenly trapped."

My objection is a modern day legal version of the monkey trap. The participants got caught by illegally colluding in this crooked deal to obtain a $380 million settlement and the lawyers refuse to let go of the fraudulently earned $77 million in fees. They are all trapped now, just like the monkey and there is no escape now. The appellant has filed a complaint with taxpayer funded entity(ies) in Washington D.C. to investigate this $380 million scam that the evidence proves took place that everyone willfully ignores because of the ramifications if looked into.

If the court issues a bond it could be construed by some as part of a rubber stamp approval that contains violations of criminal law and part of a cover-up process

that has been ongoing now for the past four months based on the evidence in the record in this case.

This issue needs to be dealt with immediately before a bond issue is addressed since criminal fraud involving two felonies was clearly involved in the $380 million approval which includes a chief judge of a federal court. Not addressing it may also violate Judicial Cannons, it's more important than a bond.

## The Objector Has a Right to Appeal the Court's Decision and Proceed In Forma Pauperis And Without A Bond

Appeals are a matter of right. In re American President Lines, Inc., 779 F.2d 714, 718 (D.C. Cir. 1985) (citing Coppedge v. United States, 369 U.S. 438, 441-442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." Id. (citing North Carolina v. Pearce, 395 U.S. 711,724 (1969) ("[a] court is without right to . . . put a price on an appeal. A party's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). See Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974) ("any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"). See also Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 961 (9th Cir. 2007) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." (quoting Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998), cert denied, 525 U.S. 875 (1998)).

The merits of an appeal are decided by the appellate court and cannot be short circuited by a district court that disapproves of the appeal. In re American Presidential Lines, 779 F.2d 714, 717 (D.C. Cir. 1985) Vaughn v. American Honda Motor Co., Inc., 507F.3d 295, 299 (5th Cir. 2007); Cooter & Gell, 496 U.S. 384, 407 (1990).1 Thus, "A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." Robert F. Booth Trust v. Crowley, 687 F.3d 314, 318 (7th Cir. 2012). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting Clark v. UniversalBuilders, Inc., 501 F.2d 324, 341 (7th Cir. 1974)). Azizian, 499 F.3d at 961;

As the Ninth Circuit explained, a district court does not get to prejudge the appeal and "deter" appeals it does not like through excessive appeal bonds. Azizian, 499 F.3d at 961; Vaughn, 507 F.3d at 299; Am. President Lines, 779 F.2d 714; but seeAdsani, 139 F.3d at 79. If a judge improperly chills appeals of its decisions, it could forever avoid review of its rulings. Cf. Robert F. Booth Trust v. Crowley, 687 F.3d 314, 318 (7th Cir. 2012) ("A district judge ought not try to insulate his decisions from appellate review....").

## Lack of Standing Voids The Approval And To Also Issue An Appeal Bond

The U.S. Constitution empowers the federal courts to decide "Cases" or Controversies." In Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016), the United States Supreme Court held Article III standing required injury in fact, defined as the invasion of "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id., citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

The Supreme Court's has admonished courts that they must keep the merits of a claim separate from the standing question. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998) (explaining the "fundamental distinction" between the merits and standing.) "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but as the case progresses, if standing is "controverted," standing must be supported by evidence. Lujan, 504 U.S. at 561. A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing. Simon v. East-ern Ky. Welfare Rights Organization, 426 U. S. 26, 40, n. 20 (1976).

"The party invoking federal jurisdiction bears the burden of proving standing," and the requisite showing varies depending upon the stage of the litigation. Bischoff v. Osceola County, 222 F.3d 874, 878 (11th Cir. 2000).

The district court erred as a matter of law by not assessing standing before approving and enforcing the settlement agreement and approval. Article III standing raised by the objector at the fairness hearing, which must be decided first by the court before the merits are addressed, presents a question of justiciability. If it is lacking, a federal court has no subject matter jurisdiction so the court cannot act. Standing has not been established in this case so the inferior court lacked the power to approve it and has no authority to act on the illegal, cover-up, appeal blocking bond request by the dirty lawyers.

Each and every one of the ninety six Named Plaintiffs claim in the complaint that they each individually verified through Equifax's data breach response website that some unknown pieces of individualized Personal Information was compromised. But there has been nothing presented as evidence that this is true. They also don't have any evidence as to what was stolen because no one knows that except Equifax and they won't disclose it to the named plaintiffs or to each of the individual class members who have allegedly been damaged so named plaintiffs lack verified actual standing in the record.

The named plaintiffs individually also failed to prove they filed a claim for damages which would also help prove their alleged standing and thus have the right to represent and settle this action on behalf of the class. Since this appellant and the 14 million claimants (out of 147.9 million) were required to establish standing by filing a claim for damages under penalty of perjury, so should the named plaintiffs, yet we have nothing from them. The burden is on them is to prove standing just like all the claimants did, not for the appellant to disprove it, a big difference.

The named plaintiffs appear to have had no involvement in this settlement and it was made behind their backs meaning they were not actively involved in the litigation, they failed to monitor the lawyers so this is a lawyer driven not a named plaintiff's driven settlement. They never sat for a deposition, did not sign the complaint and did not sign the settlement release on their behalf and on behalf of the 147.9 million member class. The inadequate named representatives did not acknowledge, agree or understand when they agreed to be a class representative at the time the lawsuit was filed and at the settlement stage. We have nothing in the record.  Class counsel and the steering committee were not and could not be acting in the best interests of the class without the named plaintiffs oversight, authorization and approval which they did not have when they entered into the Preliminary Approval and the Settlement Agreement and now some unverified

unknown request for a cover- up bond to illegally block the appeal of this appellant. What was the vote taken by the named plaintiffs for a bond? Have they been shown this appellant's objection and if not why not?

The named plaintiffs also did not authorize their respective counsel to sign the Motion for Preliminary Approval, the Settlement Agreement and now some alleged unknown document authorizing the lawyers to file an appeal bond on behalf of themselves and on behalf of the 147.9 million member class.

They also did not authorize counsels' signatures only on their behalf, and behalf of all the absent class members on those documents that they can prove in the record. That makes the Preliminary Approval Order, the Settlement Agreement and any request for a cover-up bond, defective, unbinding, unenforceable and illegal. Issuing a bond is clear legal error and abuse of discretion. The cover-up bond request for this appellant by the proven, lying, crooked lawyers should be denied.

I certify under penalty of perjury all of the above is true to the best of my knowledge and belief.

Respectfully Submitted,

*/s/ Christopher Andrews*

Christopher Andrews, Pro se objector P.O. Box 530394 Livonia, MI 48153-0394
T. 248-635-3810 E. caaloa@gmail.com  Dated March 31, 2020

## Certificate of Compliance

I hereby certify that this filing has been prepared in compliance with Local Rules 5.1 and 7.1 (if applicable.)

*[signature]*

Christopher Andrews, Pro se objector P.O. Box 530394 Livonia, MI 48153-0394

T. 248-635-3810 E. caaloa@gmail.com  Dated March 31, 2020

## RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point. (if applicable)

*[signature]*

Christopher Andrews, Pro se objector P.O. Box 530394 Livonia, MI 48153-0394

T. 248-635-3810 E. caaloa@gmail.com   Dated March 31, 2020

## Certificate of Mailing

I certify that this document was sent to the Clerk of the Court via first class mail with copies sent to everyone else who are registered with CM/ECF. The Form 239 was mailed to Ms. Keller. Is class counsel going to disclose more info from this sealed document again? *[signature]*

Christopher Andrews, Pro se objector P.O. Box 530394 Livonia, MI 48153-0394

T. 248-635-3810 E. caaloa@gmail.com Dated  March 31, 2020