## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL No. 17-2800-TWT |
| THEODORE H. FRANK and DAVID R. WATKINS, | CONSUMER ACTIONS |
| Objectors. | Chief Judge Thomas W. Thrash, Jr. |

## FRANK AND WATKINS' RESPONSE IN OPPOSITION TO CONSUMER PLAINTIFFS' MOTION FOR APPEAL BONDS

### INTRODUCTION

Plaintiffs' request for $120,000 in appeal bonds from objectors ($20,000 each), including $40,000 from Watkins and Frank, has no basis in law or fact. Plaintiffs' Memorandum in Support of Motion for Appeal Bonds, Dkt. 1040-1 ("Mem."). *First*, the Rule 39 copying costs that can be taxed under a Rule 7 appeal bond are limited by Eleventh Circuit law to $0.25/page printing for seven filed copies of a single appellees' brief—approximately $200. Even with copying costs for a supplemental appendix, plaintiffs' costs would not exceed $1,000. This should come as no surprise to class counsel who submitted a declaration when seeking an appeal bond in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation* ("*Home Depot*") that estimated

copying costs at $1,100.[1] Based on that declaration, this Court ordered an appeal bond of $1,100 in *Home Depot*.[2] There is no basis in the rules or appellate precedent to require Frank and Watkins ("Watkins") to post $40,000. *E.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614-15 (8th Cir. 2017) (citing cases) (argued by Watkins's counsel, Holyoak). *See Section* I.A and I.B.

*Second*, the motion seeks a bond pursuant to Fed. R. App. P. 8, though a supersedeas bond is only possible when an appellant has moved for a stay; Watkins has not. *E.g., In re Am. President Lines, Inc.*, 779 F.2d 714, 716-18 (D.C. Cir. 1985) (per curiam). *See* Section I.C. And *third*, plaintiffs' claim that an appeal bond is warranted based on bad faith misapprehends *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1335 (11th Cir. 2002) and contradicts undisputed record evidence. *See Section* II.

In support of their motion, plaintiffs cite multiple appeal bond orders (Mem. 16-17) that were vacated or stayed on appeal. *See Tennille v. Western Union Co.*, 774 F.3d 1249, 1258 (10th Cir. 2014); *In re Uponor, Inc.*, 716 F.3d 1057, 1062 (8th Cir. 2013); *In re Wal-Mart Wage & Hour Employ. Prac. Litig.*, No. 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010). This Court should order

---

[1] *See* Declaration of Melissa Holyoak ("Holyoak Decl.") (attached hereto at Exh. 1) at Exh. B (*Home Depot*, No. 1:14-md-02583-TWT, Decl. of Roy E. Barnes, Dkt. 292-4 (N.D. Ga. Sept. 29, 2016)).

[2] *See* Holyoak Decl. at Exh. C (*Home Depot*, No. 1:14-md-02583-TWT, Order, Dkt. 315 (N.D. Ga. Oct. 21, 2016)).

class counsel to show cause why sanctions should not issue based on their misleading representations regarding Eleventh Circuit law and citations to vacated orders. *See* Section I.A.2.

Watkins would normally not oppose paying their $200 *pro rata* share of the estimated costs (one-fifth of the $1,000 copying costs),[3] but plaintiffs have not shown why it is necessary. Unlike criminal cases where the judge has discretion to determine what percentage of the amount of the bond is to be posted with the court, *see United States v. Gutierrez*, 771 F.2d 1001, 1002 n.1 (7th Cir. 1985), the order plaintiffs seek would mean that Frank, Watkins, and the other four appellants must each post 100% of $20,000. (Unlike a criminal bond, third-party services will not take collateral for posting a civil appeal bond, and the only way for Watkins and Frank to comply with the proposed bond order is to deposit $40,000 in cash in the district court

---

[3] While plaintiffs' proposed order would not impose joint and several liability, *see* Proposed Order Granting Consumer Plaintiffs' Motion for Appeal Bond ("Proposed Order") (Dkt. 1040-2), plaintiffs' memorandum incoherently argues that appellants should each pay $20,000 and that that the appeal bonds should be imposed jointly and severally, *see* Mem. at 18. To the extent plaintiffs are seeking to impose an appeal bond jointly and severally, it would be unconstitutional. If the Eleventh Circuit orders sanctions against the other appellants for a frivolous appeal or vexatious litigation, plaintiffs could attempt to collect from Frank's or Watkins's money deposited in the court's registry. *Cf. Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992) (Posner, J.) ("Happily that principle [of collective punishment] is not—not generally, anyway—a part of our law. Proximity to a wrongdoer does not authorize punishment.").

registry.) Frank is a member of the Eleventh Circuit bar and would pay his court-ordered costs rather than risk discipline. There is simply no need to require the administrative hassle of utilizing the court's registry (and the motion practice required for withdrawals) to ensure recovery of $200. *See Golloher v. Todd Christopher Int'l, Inc.*, 2014 U.S. Dist. LEXIS 91942, *5-6 (N.D. Cal. July 7, 2014) (refusing to order Rule 7 bond where "no reason to believe a bond is necessary to ensure that plaintiffs will be able to recover their $175 in copying costs").

## ARGUMENT

I. **Plaintiffs' request for $120,000 in appeal bonds ($40,000 from Watkins and Frank) is improper because the only appellate costs that can be taxed in this case—printing costs—will total no more than $1,000.**

Plaintiffs' request pursuant to Rules 7 and 8 of the Federal Rules of Appellate Procedure for appeal bonds of $120,000 is improper because (1) it exceeds any reasonable amount of costs that can be taxed under Federal Rule of Appellate Procedure 7; (2) a Rule 7 appeal bond cannot tax costs for frivolous appeals and Watkins's appeal is meritorious, not frivolous; and (3) a Rule 8 *supersedeas* bond is unavailable here because appellants have not sought to stay final judgment.

A. **The only costs that can be taxed under Rule 7 are Appellees' printing costs that will not exceed $1,000.**

"The purpose of a Rule 7 appeal bond is to ensure that the appellant, if

he is unsuccessful on appeal, can pay the 'costs on appeal' incurred by his opponent." *Tennille v. Western Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014). For purposes of Rule 7, "costs on appeal" include appellate costs expressly provided for by a rule or statute. *See Young v. New Process Steel, LP*, 419 F.3d 1201, 1203-04 (11th Cir. 2005); *Tennille*, 774 F.3d at 1255 (citing Eleventh, D.C., Third, Second, Ninth, and First Circuits). Thus, the Court's discretionary authority is limited to an amount necessary to ensure payment of appellate costs recoverable under a specific rule or statute.

Here, plaintiffs claim to tax costs recoverable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 including taxable costs for "preparing and transmitting the record, obtaining necessary transcripts, printing, and copying." Mem. at 17. But plaintiffs' request for $40,000 from Watkins, and $120,000 in sum, wildly exaggerates a realistic estimate of those costs. To begin, it is the district court clerk, not plaintiffs, that prepares and transmits the record. *See* Fed. R. App. P. 10(b)(2). Further, plaintiffs already have the transcript of the fairness hearing, as this Court directed them to obtain to draft the proposed final approval order. *See* Dkt. 945. Plaintiffs have not designated other transcripts necessary for appeal in this Court or the Eleventh Circuit. *See* Fed. R. App. P. 10.

Therefore, the only possible costs plaintiffs will incur on appeal that can be taxed under Rule 7 are printing and copying costs for plaintiffs' appellee's brief and supplemental appendix, if any. *See* 11th Cir. 39-1; 11th

Cir. Bill of Costs Form ("Costs Form").[4] Eleventh Circuit law limits Rule 39 costs to $0.25/page printing and copying for seven filed copies of a single appellees' brief plus five copies of appellees' supplemental appendix. *Id.*; 11th Cir. R. 31-3; 11th Cir. R. 30-1(d). As appellees, plaintiffs' costs are further limited because their appendix, if any, cannot duplicate material in appellants' appendix. 11th Cir. R. 30-1(b). Generously assuming 100 pages for appellees' 13,000-word brief, copying costs would be under $200 (100 pages x $0.25 x 7 copies = $175). And even assuming an enormous 600-page supplemental appendix (600 pages x $0.25 x 5 copies = $750), the total copying costs would not exceed $1,000. But because Watkins's appeal focuses on the legal question of class certification, no supplemental appendix will be needed to respond to his appeal.

> ### 1.   Courts recognize that appellee's direct costs are typically a couple hundred dollars; class counsel estimated $1,100 for appellate costs in *Home Depot*.

Appeal costs "rarely exceed more than a few hundred dollars when taxed against an appellant." *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. 2014) (unpublished). In *MagSafe*, the Ninth Circuit held that the district court abused its discretion by requiring the objectors to post $15,000 appeal bonds and ordered that the appeal bond

---

[4] *Available at* http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormBillofCosts_19_JUN17.pdf.

must "more accurately reflect[] the amount that a prevailing appellee would be entitled to recover from a losing appellant under Fed. R. App. P. 39." *Id.* at 563; *Cobell v. Salazar*, 816 F. Supp. 2d 10, 16 (D.D.C. 2011) (holding that appellee's Rule 39 costs are "closer to $200 than the $34,000 or so asserted by the plaintiffs"); *see also Target*, 847 F.3d at 614-15 (reversing $49,156 appeal bond and holding that bond should only include direct costs which totaled $2,284).

In fact, class counsel here swore in a previous, similar action that appellees' estimated appeal costs would be $1,100. In *Home Depot*, plaintiffs sought an appeal bond of $40,217, including $1,100 in direct appeal costs and $39,117 for increased administrative costs. *See* Holyoak Decl. at Exh. A (Motion for Appeal Bond, No. 1:14-md-02583-TWT, Dkt. 292 (N.D. Ga. Sept. 29, 2016)). In support of the motion, plaintiffs submitted the declaration of class counsel Roy E. Barnes who declared that "estimated direct costs on appeal for copying and binding Plaintiffs/Appellees' brief and appendix, and for copies of the court reporter's transcripts of the preliminary approval hearing conducted March 8, 2016 and the final fairness hearing conducted on August 12, 2016, will total at least $1,100.00 for this appeal." *See* Holyoak Decl. at Exh. B (*Home Depot*, No. 1:14-md-02583-TWT, Decl. of Roy E. Barnes, Dkt. 292-4 (N.D. Ga. Sept. 29, 2016)). This Court rejected the request regarding administration costs and ordered an appeal bond for the $1,100 direct costs on appeal. *See* Holyoak Decl. at Exh. C (*Home Depot*, No. 1:14-md-02583-TWT, Order, Dkt. 315 (N.D. Ga. Oct. 21, 2016); Holyoak Decl. at

Exh. D (Transcript of Hearing dated Oct. 21, 2016, Dkt. 318 at 20-21 (N.D. Ga. Oct. 26, 2016)). Here, the direct costs are likely to be even less than those in *Home Depot* because plaintiffs do not have any transcript costs.

Class counsel's $1,100 estimate in *Home Depot* is in line with appeal bond orders for direct costs:

- *In re Enfamil Lipil Mktg.*, No. 11-MD-02222, 2012 WL 1189763, 2012 U.S. Dist. LEXIS 49254, *18 (S.D. Fla. Apr. 9, 2012) (rejecting bond request of $61,400 and ordering $1,000 bond for direct costs);

- *Muransky v. Godiva Chocolatier, Inc.*, 2016 WL 11601010, 2016 U.S. Dist. LEXIS 175906, *10 (S.D. Fla. Dec. 19, 2016) (rejecting $115,934 bond request and ordering $2,500 bond for direct costs);

- *Low v. Trump Univ.*, 2017 WL 2655300, 2017 U.S. Dist. LEXIS 95065, *8, *16 (S.D. Cal. Jun. 19, 2017) (rejecting $220,833 bond request and ordering $500 bond for direct costs);

- *Edwards v. Nat'l Milk Producers Fed'n*, 11-cv-4766, 2017 WL 4581926, 2017 U.S. Dist. LEXIS 220571, *21 (N.D. Cal. Sept. 13, 2017) (ordering $1,000 bond for direct costs);

- *Khoday v. Symantec Corp.*, 2016 WL 4098557, 2016 U.S. Dist. LEXIS 99478 (D. Minn. July 28, 2016) (rejecting bond request of $66,040 and ordering $1,472 bond for direct costs);

- *In re Korean Air Lines Antitrust Litig.*, No. 07-cv05107, 2014 U.S. Dist. LEXIS 200323, *6 (C.D. Cal. Jul. 24, 2014) (rejecting bond request of $290,000 and ordering bond of $762 for direct costs);

- *Golloher v. Todd Christopher Int'l, Inc.*, 2014 WL 12625124, 2014 U.S. Dist. LEXIS 91942, *5-6 (N.D. Cal. July 7, 2014) (finding bond unnecessary to ensure recovery of $175 in estimated copying costs);

- *Foos v. Ann, Inc.*, No. 11-cv-2794 L (MDD), 2013 U.S. Dist. LEXIS 193070, *3 (S.D. Cal. May, 20, 2013) (finding $5,000 bond "excessive" and granting bond for $1,000).

Not only is plaintiffs' request grossly excessive in light of actual direct costs, plaintiffs improperly seek $20,000 from each of the six appellants. In *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, the district court denied a bond for copying costs against each of four different appellant groups. 2013 U.S. Dist. LEXIS 156986, *102-103 (C.D. Cal. Oct. 21, 2013). The court reasoned, "[c]ollectively, then, Plaintiffs seek bonds to cover their briefing costs *four times over*. This is clearly improper under the plain language of the Rule, which permits imposition of a bond in an amount limited to that '*necessary* to ensure payment of costs on appeal.'" *Id.* (quoting Fed. R. App. P. 7) (emphasis added). The court instead ordered bonds of $1,000 for each of the appellants. *Id*. This case is much worse than *Toyota*. Plaintiffs' request here for $120,000 ($20,000 from each of the six appellants) seeks to cover their actual briefing costs more than *one hundred times* over.

Accordingly, plaintiffs' bond request should be denied because $120,000 is not necessary to ensure the recovery of direct costs of appeal. Their request is grossly exaggerated and contradicts their counsel's previous declaration.

> **2.  This Court should order plaintiffs to show cause why they should not be sanctioned for their citation to reversed appeal bond orders and misleading representations of the law of the Eleventh Circuit.**

In support of their $120,000 total request, plaintiffs argue that courts frequently "post substantial bonds." Mem. at 16-17 (citing cases). But to support their argument, plaintiffs cite to two appeal bond orders that were

***reversed*** on appeal:

| Plaintiffs' Citation | Appeals Court |
|---|---|
| "*Tennille v. Western Union Co.*, 2013 WL 5716877, at *2 (D. Colo. Oct. 21, 2013) ($1,007,294)" <br><br> Mem. at 16-17. | The Tenth Circuit reversed the appeal bond order, finding that the bond could not include administration costs and reducing bond to $5,000 for copying costs. *Tennille*, 77 F.3d at 1257. |
| "*In re Uponor*, 2012 WL 3984542, at *6 ($125,000)" <br><br> Mem. at 117. | The Eight Circuit vacated all but $25,000 of the $170,000 bond. *See In re Uponor, Inc.*, 716 F.3d 1057, 1062 (8th Cir. 2013). |

Indeed, plaintiffs' citation to the reversed orders is more than sloppiness, as demonstrated by their misleading arguments regarding the law governing appeal bonds. Plaintiffs argue that courts "routinely" require objectors to post a bond for "the additional costs the class will incur caused by the delay of appeal." Mem. at 5-6. "Although Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to maintain a class settlement pending appeal…the unanimous circuit authority restrict[s] an appeal bond to costs expressly permitted by rule or statute." *Tennille*, 774 F.3d at 1256. This includes the Eleventh Circuit. *See Young*, 419 F.3d at 1203-04.

Indeed, the Eleventh Circuit holds that a Rule 7 bond can only secure costs permitted by a rule or statute where appellees could *actually* recover the costs from appellant if appellee were successful on appeal. In *Young*, the Eleventh Circuit explained that it is not enough to have the fee-shifting

provision define attorneys' fees as part of costs, but the underlying statute must *actually* support an award of fees to the appellees. *Id*. at 1204. The Court reversed a Rule 7 bond that included fees because the fee-shifting statute only permitted recovery of fees to defendants in exceptional cases and the district court made no finding that defendant-appellee would actually recover fees. *Id*. at 1207-08.

For this reason, the other "substantial bond" cases cited by plaintiffs (Mem. at 16-17) are inapposite. Those cases included bonds for administrative costs or delay damages that were untethered to a specific rule or statute, as required by the Eleventh Circuit. *See In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, 2010 U.S. Dist. LEXIS 21466, at *18-19 (D. Nev. Mar. 8, 2010) (ordering bonds for "administrative costs and interest costs" but no mention of rule permitting recovery of such costs);[5] *In re Broadcom Securities Litig.*, SAC 01-275, 2005 U.S. Dist. LEXIS 45656, *17 (C.D. Cal. Dec. 5, 2005) (failing to cite rule or statute to support $1.2 million in fees and delay costs).[6] And while *In re Cardizem CD Antitrust Litigation* affirmed the

---

[5] In fact, the bond was immediately stayed by the Ninth Circuit. *In re Wal-Mart Wage & Hour Employ. Prac. Litig.*, No. 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010). Then, after appellees were successful on the merits, the Ninth Circuit denied their request for costs and sanctions including delay damages and attorneys' fees. *See Wal-Mart,* No. 11-17718 (9th Cir. April 18, 2014).

[6] Plaintiffs also rely (Mem. at 17) on *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14, 2012) and *Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22,

inclusion of administration costs in an appeal bond order, the Sixth Circuit did so because of Tennessee's underlying law. "That case, then, is consistent with case law from other circuits permitting an appeal bond to cover only costs on appeal made expressly recoverable by rule or statute." *Tennille* 774 F.3d at 1256 n.6 (citing *Cardizem*). Here, by contrast, there is no rule or statute that provides for costs apart from the approximately $1,000 direct costs under Rule 39.

Plaintiffs further mislead the court, arguing that "the amount of the bond rests in the Court's discretion" and the court need only "consider" 28 U.S.C. § 1920 and Rule 39 in setting costs. Mem. at 6-7. This contradicts the plain language of Rule 7, which permits only an "amount ***necessary*** to ensure payment of costs on appeal" Fed. R. Civ. P. 7 (emphasis added), as well as Eleventh Circuit law requiring that costs be based on a specific rule or statute, *Young*, 419 F.3d at 1203-04. Plaintiffs mislead this Court to believe that it has *carte blanche* regarding the appeal bond order.

In *Cobell v. Salazar*, plaintiffs sought an $8.3 million appeal bond, misrepresenting that D.C. Circuit "practice" allowed administration costs and attorneys' fees to be taxed in an appeal bond. 816 F. Supp. 2d at 12, 18. The district court admonished plaintiffs for representing that the district court "essentially can exercise carte blanch with respect to an appeal bond when there plainly is no support for such a representation and the applicable

2006). Those appeal bonds were taxed based on Rule 8 or Rule 38 and have no application here. *See* Sections I.B. and I.C. below.

precedent and rules in this jurisdiction provide otherwise." *Cobell*, 816 F. Supp. 2d at 19-20. The district court ordered lead plaintiffs' counsel to file a declaration addressing the unsupported arguments and representations. *Id.* at 20. This Court too should order class counsel to show cause why sanctions should not issue based on their misleading representations regarding Eleventh Circuit law and citations to reversed cases. *Cf. Fox v. Acadia State Bank* 937 F. 2d 1566, 1570 (11th Cir. 1991) (affirming sanctions for misleading district court by failing to cite Eleventh Circuit decision contradicting cited district court orders). The bad faith of plaintiffs is especially egregious because they waited *seven weeks* after Watkins filed a notice of appeal to seek an appeal bond, which will delay the resolution of the appeal because Watkins cannot file an opening merits brief until they know whether they have to address an oversized appeal bond in the Eleventh Circuit.

### 3.    Plaintiffs have presented no evidence of direct costs.

Class counsel did not submit a declaration regarding costs like the one they submitted in *Home Depot*—likely because it would only confirm that costs here will not exceed $1,000—but instead plaintiffs argue that they need not specify costs because courts order $25,000 appeal bonds without delineation of direct costs. Mem. at 17 (citing cases). But plaintiffs again rely on *Uponor*, which was reversed, 716 F.3d at 1062, as well *In re Polyurethane*, where direct costs were actually $10,000 and the remaining $173,429 was for attorneys' fees and administration costs. 178 F. Supp. 3d at 643-45. And their

reliance on *In re Brokerage Antitrust Litigation*, 2007 U.S. Dist. LEXIS 47659 (D.N.J. July 2, 2007), is misplaced as multiple courts have rejected *Brokerage's* holding that appellees need not make any showing of costs for a bond motion. *See, e.g., In re Enfamil Lipil Marketing*, 2012 WL 1189763, 2012 U.S. Dist. LEXIS 49254, *16-17 (S.D. Fla. Apr. 9, 2012).

In *Enfamil*, the district court rejected plaintiffs' "bare assertion" that $5,000 was necessary where parties failed "to provide any support" regarding copying costs. 2012 U.S. Dist. LEXIS 49254 at *16-17 (ordering bond of $1,000); *see also Rougvie v. Ascena Retail Group*, Inc., No. 15-cv-724, 2016 U.S. Dist. LEXIS 142404, at *20-*21 (E.D. Pa. Oct. 14, 2016) (refusing to follow *Brokerage* and reducing bond because court would not "penalize Appellants with a bond amount based on unsupported suppositions"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 125555, at *15-16 (E.D.N.Y. Sept. 3, 2013) (reducing bond to $5,000 because plaintiffs provided "no evidence" that $25,000 was necessary for copying costs); *Pan Am Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 43 (D.P.R. 2000) (finding the requested sum "simply does not correlate with the taxable costs under Rule 39(e) that are likely to accrue on appeal") (internal citation omitted). Plaintiffs have presented no evidence of costs and their bald assertion that $20,000 from each appellant is necessary for copying costs is so divorced from reality that it warrants sanctions.

Plaintiffs also rely on *Brokerage* to argue that they need not specify

costs because of "potential costs of a multi-party multi-issue appeal." Mem. at 17. But plaintiffs here have sought to consolidate the appeals, specifically touting the efficiency of "allowing Plaintiffs to respond to all the arguments in a single brief." *See* Motion of Plaintiffs-Appellees for Consolidation and to Expedite Appeals at 4, No. 20-10249 (11th Cir. Apr. 3, 2020). With a single brief and appendix, plaintiffs have not shown how the presence of multiple appellants would increase their direct costs on appeal.[7]

## B. It is improper to tax costs for a frivolous appeal in a Rule 7 appeal bond; Frank and Watkins's appeal is not frivolous, but meritorious.

Plaintiffs argue that the Rule 7 bond is appropriate because each of the appeals "lack merit." Mem. at 9. Rule 38 permits an *appellate* court to order an appellant to pay costs to the appellee if the *appellate* court finds that an appeal is frivolous. Fed. R. App. P. 38.[8] The Third, Ninth and D.C. Circuits have held that a Rule 7 bond should not include costs available under Rule 38 for frivolous appeals:

---

[7] Even if briefing were not consolidated, it is fundamentally unfair to require Watkins to be taxed for copying costs related to appellee's briefing in response to the other appellants' appeals. *See supra* n.3.

[8] Plaintiffs do not invoke Rule 38, but they cite to *Sckolnick v. Harlow*, 820 F.2d 13, 14-15 (1st Cir. 1987) (Mem. at 9), which permits a bond to cover fees under Rule 38. Regardless, the other circuits to have addressed the issue held that a Rule 7 appeal bond cannot tax potential attorneys' fees pursuant to Rule 38. *Vaughn*, 507 F.3d at 298-99; *Azizian*, 499 F.3d at 960-61; *In re Am. President Lines, Inc.*, 779 F.2d at 717-18.

> We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38. Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks "impermissibly encumbering" appellants' right to appeal and "effectively preempting this court's prerogative" to make its own frivolousness determination.

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (cleaned up) (citations omitted) (citing *In re Am. President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985)*; Adsani v. Miller,* 139 F.3d 67, 71-75 (2d Cir. 1998);[9] *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.")). *See also Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007) (per curiam) (holding that district court cannot "predict that an appellate court will find an appeal frivolous and to set a bond for costs on appeal" based on what "appellate court *might* award"). As the Ninth Circuit explained, a district court does not get to prejudge the appeal and "deter" appeals it does not like through excessive appeal bonds. *Azizian*, 499 F.3d at 961.

---

[9] Plaintiffs' reliance (Mem. at 9) on *Adsani* is misplaced because the court taxed potential fees pursuant to the Copyright Act applicable to the underlying case. 139 F.3d at 79. Plaintiffs have not alleged a similar fee-shifting statute applicable to the underlying case.

Even if the Rule 7 appeal bond could include Rule 38 costs, Rule 38 cannot save the excessive appeal bond here because this Court did not specifically find—nor could it—that Frank and Watkins's appeal will be frivolous. *Cf. Young*, 419 F.3d at 1207-08 (holding that Rule 7 bond could not tax attorneys' fees based on underlying civil rights fee-shifting statute without specific finding that appeal would be frivolous). While the Court held that "there is no substantial likelihood their objections will be successful on appeal," it did not hold that their arguments were frivolous. *See* Amended Final Approval Order, Dkt. 1029 at 58-65, 110.

More importantly, Watkins's appeal is not frivolous—it's meritorious. "Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003); *Perdue v. Pilgrim Pride*, 237 Fed. Appx. 432, 435 n.1 (11th Cir. 2007) (holding that standard for Rule 38 frivolousness is whether case "is so lacking in arguable merit as to be groundless or without foundation"); *Azizian*, 499 F.3d at 960 ("Award of appellate attorney's fees for frivolousness under Rule 38 is highly exceptional….").

The central issue in Watkins's appeal is whether a nationwide class certification treating all class members identically is legally permissible when states have enacted materially different compensation and liability regimes for data breaches. *E.g., Ortiz v. Fibreboard Corp.,* 527 U.S. 815, (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Juris v. Inamed*

*Corp.*, 685 F.3d 1294, 1323-24 (11th Cir. 2012); *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985); *In re Literary Works,* 654 F.3d 242 (2d Cir. 2011). "[C]lass treatment will be inappropriate … when recovery depends on law that varies materially from state to state." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (Easterbrook, J.).

Frank recently argued and won an appeal on the same Rule 23(a)(4) issue raised on this appeal, where class counsel similarly ignored material differences in state law to settle with a nationwide class treating all class members identically. *In re Lithium Ion Batteries Antitrust Litigation*, 777 Fed. Appx. 221 (9th Cir. 2019); *see also Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) (successful appeal argued by Frank challenging settlement on Rule 23(a)(4) grounds). On remand in *Lithium*, a renegotiated allocation proposes to pay class members from states with more plaintiff-friendly law an additional $10 million, demonstrating the benefits Frank's objections can bring to class members. *See* IPP's Motion to Direct Notice to the Class Regarding Settlements with LG Chem, Hitachi Maxell, and NEC Defendants, No. 4:13-md-2420, Dkt. 2566 (N.D. Cal. Dec. 10, 2019). *Cf. also Target*, 847 F.3d 608 (remanding data-breach class-action settlement with nationwide class for district court's failure to apply correct Rule 23(a)(4) standard).[10]

---

    [10] On remand, the *Target* district court again committed legal error,
but the Eighth Circuit did not reach the issue on the successive appeal
because it held the objecting class member did not have standing to challenge
the certification because he was not a citizen of a state that had statutory
damages claims disadvantaged by the certification decision. 2017 WL

And while Frank was unsuccessful in *Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015), the Court did not find Frank had acted "improperly" as plaintiffs claim, but instead created a circuit split with *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (argued by Frank)). Indeed, the Supreme Court granted certiorari on one of the issues Frank lost on in *Poertner*. *See Frank v. Gaos*, 139 S. Ct. 1041 (2019).

While this Court overruled Watkins's objections, plaintiffs cannot show that Watkins's appeal is frivolous and thus, even if Rule 38 costs could be taxed, such costs could not be included in a Rule 7 appeal bond here.

### C.   Plaintiffs' request for appeal bonds pursuant to Rule 8 is improper because appellants have not sought to stay the final judgment below.

Plaintiffs argue that the appeal bonds may be ordered pursuant to Fed. R. App. P. 8, which permits a district court to order a supersedeas bond. Pls. Mem. at 1. Plaintiffs cannot shoehorn a Rule 8 foot into a Rule 7 shoe. The difference between supersedeas bonds and costs bonds is salient. A court can require a supersedeas bond to preserve a money judgment when staying execution of a judgment under Fed. R. Civ. P. 62(d) or Fed. R. App. P. 8(a)(2)(E). *Tennille*, 774 F.3d at 1254 n.3. "A supersedeas bond is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a Rule 7 appeal or cost bond is

2178306 (D. Minn.), *aff'd*, 892 F.3d 968 (8th Cir. 2018). (Total Rule 39 costs awarded to the prevailing appellees was $517.81.) The standing obstacle in *Target* is not present in this appeal.

prospective relating to the potential expenses of litigating an appeal." *Id.* (cleaned up). A Rule 8 supersedeas bond is not available here because appellants have not sought to stay execution of the final judgment. *E.g., In re Am. President Lines, Inc.*, 779 F.2d 714, 716-18 (D.C. Cir. 1985) (per curiam).

Plaintiffs argue that a Rule 8 supersedeas is nonetheless justified because "objector's appeal *effectively* stays consummation of the settlement." Pls. Mem. at 6 (emphasis added). Courts have rejected this same argument. In *Muransky v. Godiva Chocolatier, Inc.*, plaintiffs and defendant had negotiated that the class action settlement would not become final until all appeals were resolved. 2016 WL 11601010, 2016 U.S. Dist. LEXIS 175906 at *11 (S.D. Fla. Dec. 19, 2016). The district court agreed with the objector-appellants that a Rule 8 bond was not appropriate because the "[e]xecution of the settlement is on hold pursuant to agreement of the parties and not because the Objectors requested a stay for purposes of appeal." *Id.* at *11.

In support of their Rule 8 argument, plaintiffs cite the reversed *Uponor* decision and other district court cases. *See* Mem. at 6. But as *Muransky* observes, "the greater weight of authority counsels that when the parties' settlement agreement contemplates the effect of an appeal on the distribution of settlement proceeds, a supersedeas bond is not appropriate." *Id.* (citing cases); *Tennille*, 774 F.3d at 1254 n.3 (noting that plaintiffs did not seek supersedeas bond because there was no final judgment to stay where settling parties "expressly provided that their settlement would not become effective until all appeals challenging the settlement [we]re resolved"); *Vaughn v. Am.*

*Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007) (per curiam) (finding error to include Rule 8 interests costs where settlement not effective until appeals concluded); *see also In re American Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 162 (E.D. Pa. 2010) (citing cases where *supersedeas* bond for appellant-objectors denied).

As these courts recognize, Rule 8 does not condition an *appeal* on the posting of a bond, but instead, it conditions a *stay of execution* on the posting of a bond. *In re: Diet Drugs Products Liability Litigation*, 2000 U.S. Dist. Lexis 16085 (E.D. Pa., Nov. 6, 2000); *In re Farrell Lines, Inc.*, 761 F.2d 796, 797-98 (D.C. Cir. 1985) (failure to post supersedeas bond does not forfeit appellant's right to appeal). Indeed, because a supersedeas bond is a co-requisite for a motion to stay, *Muransky* questioned whether the rules would even permit the appellee to seek the supersedeas bond. 2016 U.S. Dist. LEXIS 175906 at *12 (citing *United States use of Terry Investment Co. v. United Funding & Investors, Inc.,* 800 F. Supp. 879, 882 (E.D. Cal. 1992)).

Here, the settling parties expressly negotiated that the settlement would not become effective until the resolution of all appeals. *See* Settlement, Dkt. 739-2 § 17.1. The settlement's execution is delayed based on the terms expressly negotiated by plaintiffs and defendant, not because of a Rule 8 motion to stay. Therefore, a supersedeas bond is not available here and any appeal bond must be ordered pursuant to Rule 7 and its limitations on costs that may be taxed.

## II.  The Court cannot impose an appeal bond under its inherent authority because Watkins and Frank are not acting in bad faith, vexatiously, wantonly, or for oppressive reasons.

In addition to Rule 7, Eleventh Circuit precedent allows a district court inherent authority to require an appellant to post an appeal bond for his adversary's attorneys' fees based on permissible exceptions to the American Rule as set forth in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1335 (11th Cir. 2002). Thus, a district court could require an appeal bond to cover an adversary's attorneys' fees if appellant had willfully disobeyed a court order or if the appellant acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1336.

Here, plaintiffs' Proposed Order provides that the appeal bond be issued pursuant to Rule 7 and 8 without mention of the court's inherent authority or taxing attorneys' fees. *See* Proposed Order at 10. In plaintiffs' memorandum, however, plaintiffs cite *Pedraza* and argue that an appeal bond is appropriate because objectors acted "in bad faith and vexatiously." Mem. at 10. Any appeal bond for attorneys' fees pursuant to the Court's inherent authority would be improper under *Pedraza* for three reasons (in addition to the fact that the plaintiffs have not requested it).

*First*, plaintiffs' argument (Mem. at 10-11) that Watkins's appeal is meritless—*i.e.*, objectors have "no substantial likelihood of success on appeal" and that Frank "unsuccessfully made some of the same or similar objections that he has made here"—is not subjective bad faith. As explained above, Frank is correct on the merits and was successful on this same issue in the

Ninth Circuit. *Lithium*, 777 Fed. Appx. 221. But more important, plaintiffs' arguments regarding the merits are insufficient for an appeal bond under *Pedraza*. In *Pedraza*, the district court's appeal bond order was based on a finding that the class action objector's appeal was "without foundation." *Id.* The Eleventh Circuit reversed: the district court's finding that the appeal was "objectively meritless" was "vastly different from the ***subjective bad faith*** contemplated by the third exception to the American Rule identified in *Chambers*." *Id.* (emphasis added); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.,* 851 F.3d 1218, 1224-1225 (11th Cir. 2017) ("[T]he inherent-powers standard is a subjective bad-faith standard.").

"Subjective bad faith" is "deliberate wrongdoing, such as proceeding with claims the attorney knows for a fact are false or frivolous." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 1190) (citing Black's Law Dictionary 149 (8th ed. 2004) (defining "bad faith as "[d]ishonesty of belief or purpose"). As the Supreme Court observed, direct evidence of subject bad-faith is "difficult to establish." *Chambers*, 501 U.S. at 47 n.11 ("Rule 11 was amended in 1983 precisely because the subjective bad-faith standard was difficult to establish and courts were therefore reluctant to invoke it as a means of imposing sanctions."). While this Court overruled Watkins's objection, the Court's order made no findings that Watkins proceeded with the objection deliberately knowing it was lacking in arguable merit.

*Second*, plaintiffs' argument (Mem. at 10-14) that Frank disseminated

false and misleading information is also insufficient under *Pedraza*. Plaintiffs rely on the Court's findings in the final approval order that Frank "disseminated false and misleading information about the settlement." Final Approval Order, Dkt. 1029 at 113-14. Even assuming that Frank made any false statements, nothing in the Court's order reflects a finding of subjective bad faith—that Frank deliberately proceeded *knowing* that it was false. *Amlong*, 457 at 1190. More important, the Order does not identify a single factually misleading statement made by Frank. This is not surprising given that Plaintiffs' Response to Objections also failed to identify a single false statement. *See* Declaration by Theodore H. Frank (attached at Exh. 2) ¶¶ 9-18 (discussing Declaration of Class Counsel, Dkt. 900-1). In fact, Frank's critiques of the settlement mirror those of prominent politicians. *See id.* at Exh. B (Senator Elizabeth Warren, Letter to FTC Chairman Joseph J. Simons (Sept. 18, 2019)). He still in good faith believes his critique to be true. Frank Decl. ¶ 11.

*Third*, plaintiffs' argument that Frank and Watkins are "professional objectors" (Mem. at 14) that "extort the parties, and particularly the settling defendants, into ransoming a settlement" (Mem. at 13) is contradicted by undisputed evidence in the record. This is the first class action in which Watkins has ever objected. *See* Declaration by David Watkins, Dkt. 876-2 ¶ 9. And unlike extortionate objectors, Frank has never accepted money to withdraw and objection or dismiss an appeal. *See* Declaration of Theodore H. Frank, Dkt. 876-1 ¶ 24. In fact, Frank's counsel argued and won the leading

appellate case against bad-faith objections in a case where Frank sought disgorgement by objectors who did use appeals as a personal money-grab. *Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018).

## CONCLUSION

Based on the foregoing, this Court should deny the consumer plaintiffs' request for appeal bonds. In the alternative, if this Court grants plaintiffs' request, it should limit the appeal to include only direct appeal costs and limit Objector Frank's and Watkins's burden to their combined *pro rata* share (20%) of the total amount.

Dated: April 13, 2020.

/s/ Melissa A. Holyoak
Melissa A. Holyoak, (DC Bar No. 487759)
Hamilton Lincoln Law Institute
1629 K Street, NW Suite 300
Washington, DC 20036
Phone: (573) 823-5377
Email: melissa.holyoak@hlli.org

*Attorneys for Objectors David R. Watkins and Theodore H Frank*

## CERTIFICATE OF FONT

I hereby certify that this Response in Opposition has been prepared in compliance with Local Rules 5.1 and 7.1.


Dated: April 13, 2020.                          /s/ Melissa A. Holyoak

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

Dated: April 13, 2020.                                         /s/ Melissa A. Holyoak