# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

---

## MIKELL WEST'S RESPONSE IN OPPOSITION TO CLASS COUNSELS' MOTION FOR APPEAL BONDS

---

## Introduction

Class counsel move for a $20,000 appeal bond from each objector-appellant purportedly to secure against costs on appeal taxable in the district court pursuant to Fed. R. App. P. 7 and 39(e). There is no legal basis for imposing such a bond, which has no relation to any cost suggested by class counsel.

Although the merits of the appeal are to be decided by the Eleventh Circuit alone, there is no cognizable argument that West's appellate arguments lack merit and therefore warrant imposition of a bond. As discussed *infra*, his appellate arguments are valid and stand to return tens of millions in excess fees to the class.

Regardless, any appeal bond must be limited to "an amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7. Because there is no fee-shifting statute applicable to the objecting class members, the costs in Rule 7 are limited to "bondable costs on appeal … enumerated in Rule 39e." *Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2016 WL 11601010, at *3–4 (S.D. Fla. Dec. 19, 2016), *report and recommendation adopted*, No. 0:15-CV-60716-WPD, 2017 WL 11220677 (S.D. Fla. Jan. 9, 2017). That includes items such as preparation of the record, filing fees, and similar costs. *See e.g., Fleury v. Rinchemont N. AM. Inc.*, No., No. C-05-4525 EMC, 2008 WL 4680033, at *8 (N.D. Cal. Oct. 21, 2008). Since West paid the filing fee and appellants are responsible for preparation of the record, the bondable costs for class counsel will

be minimal, presumably around $1,000. Otherwise, the proposed bond also cannot be justified as a supersedeas bond since West does not seek a stay of judgment pending appeal. *See Muransky*, 2016 WL 11601010, at *3–4. Although West does not believe any bond is appropriate, he is prepared to post his share of an estimated $1,000 in printing costs should the Court nevertheless impose a bond.

### I.  West Has a Right to Appeal the Court's Decision.

As a starting point, it must be recalled that appeals are a matter of right. *In re American President Lines, Inc.*, 779 F.2d 714, 718 (D.C. Cir. 1985) (citing *Coppedge v. United States,* 369 U.S. 438, 441–442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." *Id.* (citing *North Carolina v. Pearce,* 395 U.S. 711, 724 (1969) ("[a] court is without right to . . . put a price on an appeal. A party's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (quoting *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998), *cert denied*, 525 U.S. 875 (1998)).

The merits of an appeal are decided by the appellate court and cannot be short-circuited by a district court that disapproves of the appeal. *American President Lines*, 779 F.2d at 717; *Vaughn v. American Honda Motor Co., Inc.*, 507

F.3d 295, 299 (5th Cir. 2007); *see also Cooter & Gell,* 496 U.S. 384, 407 (1990).[1] Thus, "A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012).

The notion that an appeal bond under Rule 7 may be entered on the basis that the appeal is allegedly frivolous has been dispelled by courts in this Circuit and elsewhere. *See e.g., Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2016 WL 11601010, at *3 ("Should the Eleventh Circuit determine that the Objectors have mounted a frivolous or vexatious appeal, the Plaintiffs will have the opportunity to move pursuant to Rule 38 for the remaining costs incurred as a consequence of the delay"); *Durham v. Jones*, No. WMN-10-CV-2534, 2013 WL 12242047, at *1 (D. Md. Feb. 6, 2013); *Azizan v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 960 (9th Cir. 2007); *see also Khoday v. Symantec Corp.*, No. CV 111-180, 2016 WL 4098557, at *2 (D. Minn. July 28, 2016) ("[w]hether the objectors' "appeals are frivolous under Rule 38 . . . [was a] matter[] for the Eighth Circuit to decide and not factors for [the district court] to consider in calculating a Rule 7 appeal bond").

Courts should "not consider any alleged bad faith or vexatious conduct . . .

---

[1] Further, the appellate court is the only court with the authority to impose sanctions for a frivolous appeal. *In re Vasseli,* 5 F.3d 351, 353 (9th Cir. 1993) (citing *American President Lines*, 779 F.2d at 717). Thus, if the Eleventh Circuit determines that an appeal is frivolous, class plaintiffs have the option of taking action in the Court at that time. *Muransky*, 2016 WL 11601010, at *3

because doing so would not advance the purpose of Rule 7, which is 'to protect the amount the appellee stands to have reimbursed, [and] not to impose an independent penalty on the appellant.' … Fed. R. App. P. 38 which deals with frivolous appeals, is the appropriate avenue for penalizing bad faith or vexatious conduct by an appellant." *Durham*, 2013 WL 12242047, at *1. "Allowing districts court to impose high Rule 7 bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Azizian,* 499 F.3d at 961; *accord In re Am. President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985).

This Court should not entertain class counsel's efforts to restrict West's appellate rights through an untenable appeal bond premised on the false notion that West's appeal is in any respect frivolous. As discussed below, it is meritorious.

## II.   West's appeal is meritorious.

Among other issues to be raised, West's appeal seeks the return of tens of millions in excess attorneys' fees to the class. The $77.5 million in attorneys' fees for less than two years of litigation—25% of the $310 million secured by class counsel—is beyond the pale for a settlement of this magnitude. West's appeal invokes a *de novo* issue of first impression in the Eleventh Circuit: must district courts apply a methodology that accounts for the economies of scale for

settlements like this one that exceed $300 million and are more a product of hundreds of millions of class members' claims than class counsels' labor?

Though the Eleventh Circuit hasn't spoken directly to the issue, *Camden I* contemplates that the benchmark fee will be adjusted based on "the individual circumstances of each case." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). One of those circumstances is when a settlement reaches into the hundreds of millions of dollars. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1271–72 (N.D. Ga. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993). In this setting, "courts most stringently weigh the economies of scale inherent in class actions in fixing an appropriate percent recovery for reasonable fees. Accordingly, fees in the range of 6-10% and even lower are common in this large scale context." *Domestic Air*, 148 F.R.D. at 350–51.

Three of four circuits to address the issue require some sort of accounting for the economies of scale. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (requiring an adjustment to the benchmark percentage for megafunds where lodestar reveals windfall profits); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (utilizing a diminishing percentage sliding-scale for megafunds under an ex ante market-based analysis); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (disapproving off

benchmark fee without accounting for the economies of scale); *but see In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302-03 (3d Cir. 2005) (disapproving of megafund principals).

Respectfully, this Court's justification for the enormous fee is flawed. Dkt. 1029 at 96-98. First, the court remarked that reducing fees at the higher margins misaligns the attorneys' interests from the class and discourages early settlements. *Id.* at 96. That explanation made sense in *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006), where class counsel litigated the case for 15 years, including two trials and appeals before the Supreme Court, to achieve an extraordinary 100% return on class compensatory damages. *Id.* at 1213. But even *Allapattah* qualified that a declining fee approach "may have validity when there is a large settlement short of a full trial[.]" *Id.*

This case settled in less than two years on the heels of other large data breach class action settlements. The first deposition taken by class counsel came from West, this objecting class member. The concerns implicating a disincentive are aren't present. Further, according to the Second Circuit, "protecting the . . . class from an excessive fee award" must be prioritized over "awarding attorneys' fees based purely on economic incentives." *Wal-Mart*, 396 F.3d at 121–23. The Second Circuit scoffed at the notion that a reduced percentage (but still high overall fee) could possibly "deter plaintiffs' attorneys from pursuing similar

claims[.]" *Id*. As the district court remarked (and the Second Circuit agreed), "[i]f [this fee award] amounts to punishment, I am confident there will be many attempts to self-inflict similar punishment in future cases." *Id*.

The Court was also mistaken that a 25% recovery from a settlement above $300 million is typical and supported by the empirical data. Dkt. 1029 at 97-98. It isn't. The experts have synthesized available data to make that very point: "empirical data on class action fee awards . . . demonstrates[s] that the percentage awarded to counsel decreases as the size of the fund increases…" *William B. Rubenstein*, NEWBERG ON CLASS ACTIONS §15.18 (5th ed.); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, (2010) 7 J. EMPIRICAL LEGAL STUD. 811, 837 "fee percentage is strongly and inversely associated with settlement size among all cases"). One study showed an average fee of 23.7% for settlements from $72.5 million to $100 million; 17% for settlements between $100 million and $250 million; and 17.8% for settlements between $250 and $500 million. Fitzpatrick, at 839.

A second study, published in 2010, and surveying a greater number of cases over a longer period identified an average recovery of 19.4% for settlements between $69.6 and $175.5 million, and a 12% recovery for settlements above $175.5 million. Eisenberg and Miller, *supra*, at 265 tbl.7. A third study covering a six-year period, found a 20.9% average fee recovery for settlements over $44.6

million, with the percentages declining from there. *William B. Rubenstein*, NEWBERG ON CLASS ACTIONS §15.18 (5th ed.).

In light of that data, the Court's award of 25% of $310 million (or even 20% of $380 million) is truly anomalous. *Conley v. Sears, Roebuck & Co.* (D. Mass. 1998) 222 B.R. 181, 187–88 ("[d]istrict courts have awarded fees of 4 to 16 percent as the so-called megafund baseline"); *In re Prudential Ins. Co. of American Sales Practices Litig.*, 962 F.Supp. 450, 458 (D.N.J. 1997) (percentage awards in megafund cases range from 4.1 percent to 17.92 percent of fund); *Duhaime v. John Hancock Mut. Life Ins.*, 989 F.Supp. 375 (D. Mass 1997) (applying 9.3 percent to a fund over $300 million).

Professor Miller's testimony that the mean percentage is 19.7% for settlements between $325-$425 million, something that does not appear in the most recent Eisenberg-Miller study that he co-authored, is misleading.  Dkt. 900-3 at 8-9; Theodore Eisenberg, Geoffrey P. Miller, Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. REV. 937 (2017). Miller did not describe how many settlements fell within that group nor any of the data relied on for that new figure. He also failed to reconcile the claimed increase with the statement in his 2017 study that "among cases with recoveries greater than $50 million, … fees did not increase over the 2003-2013 period." Eisenberg, 92 N.Y.U. L. REV. at 942. Miller also did not qualify his remarks, as the study does, that the variation among

percentages for settlements above $100 million "is probably due to the significantly smaller number of very large cases in our data set." *Id*. at 947.

Respectfully, the failure to account for the economies of scale, with a percentage in line with $300 million plus settlements, is methodological error of law that should be corrected de novo. That meritorious issue, and others, should not be hamstrung with an improper appeal bond.

### III.   Class counsel failed to substantiate the amount of their requested bond, which is far above permissible limits under Rule 7.

Class counsel request a $20,000 bond from each objector, an arbitrary number they selected to obstruct objectors' due process rights to appeal. Rule 7 allows "costs on appeal." Fed. R. App. P. 7. Because there is no fee-shifting statute applicable to the objecting class members, Rule 39 defines costs on appeal to include items like preparation of the record and transcript. Fed. R. App. P. 39(e). There is no reason (and certainly no evidence) to believe these costs would approach anything close to $20,000, and certainly not that amount applied to each objector-appellant.

The $20,000 also cannot be justified as delay costs in a Rule 7 appeal bond. While a Rule 8 supersedeas bond can secure delay costs, a Rule 7 appeal bond cannot. *See e.g., Vaughn v. Am. Honda Motor Co*., 507 F.3d 295, 298-99 (5th Cir. 2007). A supersedeas bond is not available here because appellants have not sought to stay the judgment. *See e.g., Vaughn*, 779 F.2d at 716-18. In fact, it has been held

to be reversible error to impose a supersedeas bond under Rule 8 ostensibly under the authority of a Rule 7 cost bond. *See e.g., id*; *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985).

## IV.   The Court cannot impose an appeal bond under its inherent authority.

Although class counsel did not request an appeal bond under the Court's inherent authority, there is no basis for it to do so here. *Pedraza v. United Guar. Corp.*, 313 F.33d 1323, 1335 (11th Cir. 2002) (requiring subjective bad faith). There is no evidence that West acted in bad faith or vexatiously.[2] In fact, the only evidence is West objected to improve the settlement benefits for the class. The court overruled West's objections but failed to make any finding approaching the level of subjective bad faith. Otherwise, the fact that one of his three attorneys has been called a professional objector by others does not demonstrate subjective bad faith here.

## Conclusion

There is simply no basis for the requested $20,000 appeal If the Court nevertheless orders the objectors to post bond, it should limit the bond to include costs of appeal under Rule 39, no more than around $1,000, with each objector-appellant responsible for their respective share of the total.

---

[2] West incorporates by reference Watkins' and Frank's call for the Court to order class counsel to show cause why they should not be sanctioned for misrepresenting authority. Dkt. 1057 at 9-11.

Dated:      April 13, 2020              Respectfully submitted,


                                        /s/ Robert W. Clore
                                        Robert W. Clore
                                        *Pro Hac Vice*[3]
                                        State Bar of Texas #24012436
                                        Admitted to the United States District
                                        Court, Southern District of Texas, ID
                                        No. 2032287
                                        Bandas Law Firm, P.C.
                                        500 N. Shoreline Blvd., Suite 1020
                                        Corpus Christi, Texas 78418
                                        (361) 698-5200

                                        Jerome J. Froelich, Jr.
                                        State Bar No. 278150
                                        McKenney & Froelich
                                        One Midtown Plaza, Suite 910
                                        1360 Peachtree Street
                                        Atlanta, Georgia  30309-2920
                                        (404) 881-1111

                                        *Attorneys    for    Objecting    Class
                                        Member, Mikell West*

---

[3] Dkt. 23 at 4.

## CERTIFICATE OF FONT

I hereby certify that this document has been prepared in compliance with Local Rules 5.1 and 7.1

DATED: April 13, 2020                    /s/ Robert W. Clore
                                         Robert W. Clore

## **CERTIFICATE OF SERVICE**

The undersigned certifies that today he filed the foregoing document on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: April 13, 2020                    /s/ Robert W. Clore
                                         Robert W. Clore