In re: Equifax Inc. Customer
Data Security Breach Litigation

MDL Docket No. _____
No. 1:17-md-2800-TWT

CONSUMER ACTIONS

**MOTION FOR RELIEF TO ALLOW
PETITIONERS LATE OPT-OUT, OR,
IN THE ALTERNATIVE, MOTION
FOR RELIEF TO DETERMIE THAT
PETITIOENRS ARE NOT A PART OF
THE CLASS AND SETTLMENT OR,
IN THE ALTERNATIVE,
OBJECTION TO CLASS AND
SETTLMENT**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTIRCT OF GEORGIA
## ATLANTA DIVISION

This matter comes before the Court upon Equifax's Motion to Dismiss, without prejudice, or, in the alternative, Stay the Trials Pending Conclusion of the Appeal of the Judgement Approving the *In re Equifax Settlement* ("Class Action") that was field in South Carolina Magistrate's Court, County of Lexington.

34 similarly situated Petitioners filed individual complaints against Equifax regarding the September 7, 2017 data breach in South Carolina Magistrate's Court, County of Lexington, on August 1, 2018.[1] Petitioner's filed an Amended Complaint ("Petitioners Complaint") on or about

---

[1] 2018CV321071471 Roach, Rudy; 2018CV321071472 Stone, Johanh; 2018CV321071473 Shaughnessy, Roberta; 2018CV321071474 Tabares, Vivian Fridelle; 2018CV321071475 Cade, Troy D; 2018CV321071476 Rottach, Linda; 2018CV321071477 Shaughnessy, John; 2018CV321071478 Carver, Joshua Thomas; 2018CV321071479 Hill, Calvin D; 2018CV321071480 Lee, Daria; 2018CV321071481 Lee, Raymond; 2018CV321071482 Sodas, Ana Paula; 2018CV321071483 Carver, Stephanie Lynne; 2018CV321071224 Newman, Steve; 2018CV321071225 Byrd, Mark; 2018CV321071474 Tabares, Vivian Fridelle; 2018CV321071476 Rottach, Linda; 2018CV321071478 Carver, Joshua Thomas; 2018CV321071256 West, Bridgette; 2018CV321071257 Jenkins, Troy; 2018CV321071258 Pryor, Kathleen; 2018CV321071259 Richardson, Sharon; 2018CV321071260 Cox, David

September 27, 2018 and Equifax moved to dismiss the Amended Complaint for lack of standing and failure to state a claim under SCRCP Rule 12(b)(6). Following a hearing before the Honorable Judge Scott D. Whittle, on January 29, 2019, the Court granted Equifax's motion and dismissed Petitioner's Amended Complaint. Petitioners field an appeal on February 14, 2019 and served a timely Notice of Appeal on Equifax. The Court held a hearing on the appeal on July 30, 2019. On or about August 20, 2019 the Honorable William P. Keesley entered an order reversing the decision of the Magistrate Court and remanding the cases to be tried on the merits. The Court subsequently scheduled the trials to held on January 30, 2020. On January 28, 2020, two days before trials scheduled for January 30, 2020, Equifax filed a Motion to Dismiss, without prejudice, or, in the alternative, Stay the Trials Pending Conclusion of the Appeal of the Judgement Approving the In re Equifax Settlement.

## I.    Petitioners are Not a Part of the Settlement Class

1. The Petitioners re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

2. Petitioners assert they are not a part of the In re: Equifax Inc. Customer Data Security Breach Litigation class action therefore they are not a party to the In re: Equifax Inc. Customer Data Security Breach Litigation class action settlement.

### a.   Petitioner's Opted-Out by Implication

---

Ashemore; 2018CV321071261 Pryor, Joseph; 2018CV321071262 West, Eric; 2018CV321071263 Sims, Michael; 2018CV321071264 Culp, Mark Lawrence; 2018CV321071265 Sutton, Caleb James; 2018CV321071266 Love, John Howard; 2018CV321071267 Galloway, Lisa A; 2018CV321071268 Lee, Tara C; 2018CV321071269 Galloway, Darryl; 2018CV321071270 Love, Michelle H; 2018CV321071271 Perry, Richard.

3.  The Petitioners re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

4.  Petitioners are not a party to the In re: Equifax Inc. Customer Data Security Breach Litigation Class or Settlement Class because they opted-out by implication.

5.  Petitioners filed complaints against Equifax on August 1, 2018 in South Carolina Magistrates Court, County of Lexington.

6.  Equifax knew or should have known the Petitioners were opting-out of the class action when Petitioners filed their complaints in South Carolina Magistrates Court.

7.  Petitioners filed their complaints against Equifax in South Carolina during the infancy of the Class Action Complaint in Georgia. Petitioners filed their complaint in South Carolina Magistrate Court less than three months after Plaintiff's in the Georgia Class Action filed their Amended Consolidated Complaint [Doc. 374] on May 14, 2018; more than five months before the Court ruled on Equifax Motion to Dismiss [Doc. 539] on January 28, 2019; almost a year before the Court's Order directing Notice of a Proposed Class Action Settlement of Consumer Claims arising from the data breach on July 22, 2019 [Doc. 742]; and more than a 15 months before the opt-out or exclusion date set by the Court of November 19, 2019.

8.  While Petitioners Complaint did not expressly include the words "request for exclusion," Petitioners Complaint served as written notice to Equifax that Petitioners were opting-out of any other action at law.

9.  Petitioners Complaint also served as written notice to Equifax that the Petitioners were represented by counsel. Equifax had direct knowledge that the Petitioners were

represented because attorney's for Equifax and attorney for Petitioners exchanged multiple email correspondence, amongst other things.

10. The procedural history of Petitioners cases further proves that Equifax knew of Petitioners intention to opt-out of the Class Action Case. Equifax vigorously defended against Petitioners claims.

11. Equifax filed multiple motions, supporting briefs, and argued their case in front of multiple judges and courts.

12. In the almost year and a half that Petitioners and Equifax have been engaged in litigation, Equifax mentioned, for the first time, the issue at hand a mere two days before Petitioners trial.

13.  Equifax's actions of vigorously defending against Petitioners claims, and their failure to mention the issue at hand during that time, serve as further proof that Equifax knew Petitioners were opting-out of the Georgia Class Action Case.

14. Petitioner faults Equifax and Equifax Counsel for not raising the issue of Petitioner's failure to opt-out sooner than late January 2020.

15. Equifax delay in raising Petitioner's failure to opt-out was purely tactical. Equifax could have raised the issue at any time from August 1, 2018 to July 22, 2019 (Order Directing Notice, Dkt. No. 742) to November 19, 2019 (opt-out deadline).

16. Equifax, however, waited until January 28, 2020, 15 days **after** the Georgia District Court entered the Order and Final Judgment in the Class Action complaint on January 13, 2020 and 5 days **after** the appeals period ended on January 23, 2020, to raise the issue of Petitioner's failure to opt-out.

17. There is no other inference that can be drawn from Equifax's actions other than an intent to deceive the Petitioners and the Courts of both Georgia and South Carolina. Equifax actions offend the fundamental fairness of the judicial process and are an intentional waste of the Courts time and resources.

18. Equifax was clearly aware of Petitioners intention to opt-out of the Class Action in Georgia. Equifax vigorously defended against Petitioners Complaint, by filing a motion for summary judgment, and Petitioners Appeal, by filing multiple motions and briefs.

19. Petitioners effectively opted-out of the Class Action by implication, if not explicitly, and therefore, Petitioners are not a part of the Settlement Class.

### b.  Petitioners Never Received Notice

20. The Petitioners re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

21. An overwhelming majority of Petitioners **never received notice** of the Proposed or Approved settlement. These Petitioners were unaware of the exclusion, objection, and comment date set by the Court of November 19, 2019.

22. Because Equifax failed to provide notice to the Petitioners, Petitioners are not a part of the Settlement Class.

23.  A few Petitioners (approximately 9) received email notice of the Proposed or Approved settlement, however, more than half of the Petitioners who did receive notice were unaware of the notice as it was directed to their spam folder. The Petitioners were

unaware of the emails until after they were explicitly asked to look for any notice by their attorney.

24. Of the Petitioners who did receive email notice, almost all of them did not respond to the email because they were under the impression that the email they received was in reference to the case filed in South Carolina Magistrate Court and Petitioners believed their attorney received the notice and was handling any issue that arose in the case.

25. Equifax has been actively engaged with the Attorney for the Petitioners since August 1, 2018. In that time, counsel for Equifax and counsel for the Petitioners met at multiple hearings and scheduling conferences; communicated through the court by filing various motions, briefs, and replies; and exchanged numerous phone calls and emails.

26. There is no question that Equifax knew Petitioners were represented by counsel.

27. Rule 4.2 of the Georgia Rules of Professional Conduct reads as follows:

**RULE 4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL**

   a. A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.
   b. Attorneys for the State and Federal Government shall be subject to this Rule in the same manner as other attorneys in this State.

   **The maximum penalty for a violation of this Rule is disbarment.**

28. Rule 4.2 of the South Carolina Rules of Professional Conduct reads as follows:

**RULE 4.2: COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL**
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

29. Any direct contact by Equifax with the Petitioners was clearly a violation of South Carolina and Georgia's ethic laws.

30. Because Petitioners were represented by counsel, and because Equifax knew, without a doubt, that Petitioners were represented by counsel from April 1, 2018 to present, any and all pertinent information, including Settlement Notices and Exclusion Notices, should have been sent to Petitioner's attorney.

31. Attorney for Petitioners never received any notice or documentation regarding the Class Action.

32. However, Attorney for Petitioners did receive direct notice and documentation regarding Petitioner's Magistrate Complaint. The fact that Equifax provided notice to Petitioner's Attorney with regard to Petitioner's Magistrate Complaint is further evidence that Equifax knew the Petitioners were represented and knew because they were represented, Equifax must communicate through Petitioner's counsel.

33. Equifax argues that Petitioners are "clearly a part of the settlement class, as shown by the allegations in their Amended Complaints, which arise solely from the Data Breach." *See* Equifax's Motion to Dismiss, without prejudice, or, in the alternative, Stay the Trials Pending Conclusion of the Appeal of the Judgement Approving the *In re Equifax Settlement.* (Attached as **Exhibit A**).

34. If Equifax argues the Petitioners are a part of the settlement class because of the nexus between the allegations in Petitioners Amended Complaint and the allegations in the Class Action Complaint, they cannot argue that Petitioners were represented for purposes of one complaint and not the other.

35. Therefore, any communication from Equifax, specifically any opt-out notices, should have been sent to Petitioner's Attorney.

36. Even if the Court finds it was not a violation of South Carolina and Georgia's ethics laws for Equifax to communicate directly with Petitioners, because Equifax knew Petitioners were represented, Equifax should have sent the Petitioners Attorney a copy of any and all court documents and legal notices.

37. Equifax should have notified Petitioners Attorney that the Court was setting an exclusion date on July 22, 2019, when the Court entered the Order Directing Notice (Dkt. No. 742).

38. Petitioner and Equifax had a hearing on July 30, 2019 at which Attorney's for Equifax and Petitioners Attorney attended. **Equifax Attorney's spoke directly with Petitioners Attorney <u>after the Court set an exclusion date</u>, yet Equifax failed to mention anything about the exclusion date to the Attorney for Petitioners** or the Court.

39. Because the Petitioners nor Petitioners Counsel received notice of the Proposed Settlement or Exclusion Date, Petitioners cannot be included in the Settlement Class. To hold otherwise would be a direct violation of Petitioners Due Process Rights and would offend the public policy of both South Carolina and Georgia.

40. Because the overwhelming majority of Petitioners did not receive notice from Equifax regarding the exclusion date, and because Equifax intentionally did not provide notice to Petitioner's counsel despite the fact that Equifax knew the Petitioners were represented, Petitioners are not a party to the Class Action or Class Action Settlement Class.

### c.   Fundamental Public Policy

41. The Petitioners re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

42. Petitioners are not a party to the Class Action or Class Action Settlement Class because to hold otherwise would be a direct violation of Petitioners Substantive and Procedural Due Process Rights and would offend the public policy of both South Carolina and Georgia.

43. The Due Process Clause requires notice, an opportunity to appear in person or by counsel, an opportunity to "opt out," and adequate representation. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 798, 105 S. Ct. 2965, 2967, 86 L. Ed. 2d 628 (1985).

44. Petitioners were not provided notice, an opportunity to appear, opportunity to opt-out, or adequate representation in the Class Action suit in Georgia. Therefore, to hold that Petitioners are a party to the Settlement would violate Petitioners Due Process Rights.

45. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff **must receive notice** plus an opportunity to be heard and participate in the litigation, whether in person or through counsel…Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members. *Hansberry v. Lee*, 311 U.S., at 42–43, 45, 61 S.Ct., at 118–119, 120. (Emphasis added) *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985).

46. Because Equifax failed to properly send notice of the Proposed Settlement or Exclusion Date to the Petitioners and/or Petitioners Counsel, it would be a violation of Petitioners Due Process Rights to now say they are bound by terms of said Settlement or Exclusion Date.

47. Additionally, the Plaintiff's in the Class Action did not adequately represent the Petitioners interest. The settlement award for the individual Class Action Plaintiffs is significantly less than the Petitioners expected settlement in South Carolina Magistrates court. Additionally, the proportion of the settlement award for the Class Action Plaintiffs to the attorney's fees for the Class Action Attorneys is significantly lower than the expected proportion of Petitioners settlement to Petitioners attorney's fees in South Carolina Magistrates court.

48. "But when the judgment of a state court, ascribing to the judgment of another court the binding force and effect of res judicata, is challenged for want of due process it becomes the duty of this Court to examine the course of procedure in both litigations to ascertain whether the litigant whose rights have thus been adjudicated has been afforded such notice and opportunity to be heard as are requisite to the due process which the Constitution prescribes. Western Life Indemnity Co. v. Rupp, 235 U.S. 261, 273, 35 S.Ct. 37, 40, 59 L.Ed. 220." *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940).

49. In Shutts, the court held, "the procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to "opt out," satisfies due process. Requiring a plaintiff to affirmatively request inclusion

would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. See, e.g., Eisen, supra, 417 U.S., at 161, 94 S.Ct., at 2144. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution. If, on the other hand, the plaintiff's claim is sufficiently large or important that he wishes to litigate it on his own, he will likely have retained an attorney or have thought about filing suit, and should be fully capable of exercising his right to "opt out."" 472 U.S. 797, 812–13, 105 S. Ct. 2965, 2975, 86 L. Ed. 2d 628 (1985).

50. Unlike the procedure followed in *Shutts*, in the Georgia Class Action, Plaintiffs were not notified via first class mail. The Plaintiffs in the Georgia Class Action were not sent direct mail at all. Equifax claims they sent e-mail's to all affected parties that could be reasonably identified. Petitioner was reasonably identifiable thorough their attorney, who was directly engaged with attorney's for Equifax. Petitioners did not receive any notice through first class mail or otherwise that explained their right to opt-out.

51. Additionally, the public policy concerns that are behind requiring absent class action plaintiffs to opt-out as opposed to opt-in are not present in this case.

52. The fact that Petitioners filed suit was proof that they thought their claims were sufficiently large or important enough to litigate them on their own. Petitioners did in fact hire an attorney and file suit in South Carolina Magistrate Court. Also, the Petitioners

were capable of opting out, and would have opted-out but had they received notice of the

exclusion date.

53. Because Petitioners did not receive notice with an explanation of their right to opt-out, it

violates Petitioners Due Process Rights and it is against public policy to hold Petitioners

are a part of the Settlement Class.

54. In *Phillips Petroleum Co. v. Shutts*, the Court discusses at length the differences between

a Defendant and a Plaintiff in a Class Action Suit.

The burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant. An out-of-state defendant summoned by a plaintiff is faced with the full powers of the forum State to render judgment against it. The defendant must generally hire counsel and travel to the forum to defend itself from the plaintiff's claim, or suffer a default judgment. The defendant may be forced to participate in extended and often costly discovery, and will be forced to respond in damages or to comply with some other form of remedy imposed by the court should it lose the suit. The defendant may also face liability for court costs and attorney's fees. These burdens are substantial, and the minimum contacts requirement of the Due Process Clause prevents the forum State from unfairly imposing them upon the defendant. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808, 105 S.Ct. 2965, 2972, 86 L. Ed. 2d 628 (1985).

Besides this continuing solicitude for their rights, absent plaintiff class members are not subject to other burdens imposed upon defendants. They need not hire counsel or appear. They are almost never subject to counterclaims or cross-claims, or liability for fees or costs. Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages, although a valid adverse judgment may extinguish any of the plaintiff's claims which were litigated. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809–11, 105 S. Ct. 2965, 2973–74, 86 L. Ed. 2d 628 (1985).

55. Petitioners in this case face many of the same harms contemplated in *Shutts*. Petitioners,

if they are determined to be a part of the Settlement Class, are faced with the full powers

of the forum state (Georgia) to render a judgment against them.

56. Petitioners have been forced to travel to the forum state to defend themselves or they will suffer a default judgment (that they are a party to the settlement and the settlement is fair).

57. Petitioners have been forced to comply with and accept the remedy of the Georgia Court when they filed suits in South Carolina in lieu of the Class Action in Georgia.

58. Petitioners are subject to the attorney's fees and costs awarded in the Class Action that is to be deducted from any portion of the settlement they would be entitled to if they were a part of the Settlement Class.

59. Petitioners feel as if they are subject to a coercive penalty by being forced to be a part of the Settlement Class. Despite the Georgia Court entering a judgment "in favor" of the Plaintiffs in the Class Action, Petitioners are said to be bound by the minimal damages award. Additionally, despite filing a suit before the judgment was awarded in the Class Action, Petitioners rights and claims are being taken away from them.

60. Therefore, the burdens placed on Petitioners by holding they are a party to the Settlement Class in this suit are greater than those normally applicable to an absent plaintiff.  The burdens placed on Petitioners here are similar to the burdens on an absent defendant that are contemplated by the Court in *Shutts*.

61. Because the burdens placed on Petitioners is greater than those contemplated by the Court for an absent Plaintiff, it is against public policy to hold Petitioners are a part of the Settlement Class.

62. The public policy reason for binding an absent class action plaintiff is to protect a defendant so that they are not subject to an unknown number of repeated suits and the

possibly inconsistent judgments. However, the Court must balance the interest of the Petitioners with the interest that Equifax not be subject to an unknown number of suits.

63. Petitioners filed their suits before there was a final judgment in the Class Action. Petitioners did file suit after learning that the Court granted Plaintiffs in the Class Action a large damages award. Therefore, Equifax was put on notice of Petitioners suit and was prepared to, and did, vigorously defend against Petitioners claims. Petitioners did not sue after an award was granted in the Class action therefore Equifax is not subject to repeated suits. They are only subject to a suit they knew about before the Class Action reached a final judgment.

64. Additionally, Equifax would be benefited by an inconsistent judgment in Petitioners case. Petitioner could accept the money award granted in the Class Action Settlement. However, Petitioner wishes to continue with their suit in South Carolina Magistrates Court knowing they could lose their action and collect nothing on their claims.

65. Because Petitioners interest in having their claims adjudicated in South Carolina Magistrates Court is greater than Equifax interest in not being subject to unknown number of repeated suits or inconsistent judgments, it is against public policy to hold Petitioners are a part of the Settlement Class.


## II.    Petitioners are Entitled to a Late Opt-Out

66. The Petitioners re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

67. Petitioner's assert they are not a party to the In re: Equifax Inc. Customer Data Security Breach Litigation class action settlement. However, if this Court finds Petitioners are a party to the Settlement, Petitioners assert they are entitled to a late opt-out from the Class Action.

68. A district court has discretion under Federal Rules of Civil Procedure 6(b) and 60(b) to modify its order to allow a late opt-out from a class action. *In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1209-10 (D.C.Cir.2003). Specifically, "Rule 60(b) provides that '[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, ... or (6) any other reason justifying relief from the operation of the judgment.' Fed.R.Civ.P. 60(b)." *Id.* at 1209. *Augst-Johnson v. Morgan Stanley & Co.*, 247 F.R.D. 25, 26 (D.D.C. 2008).

69. The Court in *Augst-Johnson v. Morgan Stanley & Co.* held that class members were not required to show excusable neglect to justify a late opt-out. 247 F.R.D. 25 (D.D.C. 2008).

70. In *Augst-Johnson v. Morgan Stanley & Co.*, the court held that relief from order was warranted to allow class member to opt out late from the class, even if class member did not show excusable neglect, where class notice was delivered to her late, she did not act in bad faith or with intent to delay for tactical reasons, and defendant was not prejudiced by the tardiness of the opt-out. 247 F.R.D. 25 (D.D.C. 2008).

71. The Court in *Augst-Johnson* put substantial weight on the fact that the Plaintiff received notice of the opt-out late and distinguished that case from others because of that issue.

"Moreover, the cases from this circuit cited by defendant are distinguishable on the issue of late notice to the plaintiff. Late notice was not a feature of the matter in *In re Vitamins Antitrust Class Actions,* 327 F.3d at 1209, and was not established in *In re National Student*

*Marketing Litigation,* 530 F.2d at 1014-15. By contrast, late notice is a key feature of this matter and not a matter in dispute. *Augst-Johnson v. Morgan Stanley & Co.*, 247 F.R.D. 25, 26 (D.D.C. 2008)."

72. Similarly to *Augst-Johnson*, Petitioners here received no notice of the opt-out date therefore the late request to opt-out is of no fault of their own. It is not in dispute that Equifax was in constant contact with Petitioners and Petitioners Counsel yet Equifax failed to provide Petitioners or Petitioners Counsel with notice of the opt-out date.

73. Petitioners are not requesting a late opt-out because of an intent to delay for tactical reasons. If anything, the decision by Equifax not to provide notice to the Petitioners or Petitioners counsel was tactical. Equifax failure to raise the argument that Petitioners have not opted-out and thus cannot proceed with their claims in South Carolina Magistrate Court was tactical. Like the Plaintiffs in *Augst-Johnson*, Petitioners fault Equifax' counsel for not raising Petitioners failure to opt out sooner than late January, when Equifax was in constant contact with Petitioners counsel and was even at a hearing with Petitioners counsel after the Court's Order Directing Notice. [Dkt. No. 742]. There is no other inference that can be drawn from Equifax's actions other than an intent to deceive the Petitioners and the Courts of both Georgia and South Carolina.

74. However, unlike Equifax, the Petitioners have not come into this Court in bad faith.

75. Additionally, Equifax is not prejudiced by Petitioners tardiness in opting-out. Equifax had notice of Petitioners claims long before there was a final order in the Class Action Suit in Georgia. Equifax vigorously defended Petitioners claims in South Carolina Magistrate Court for more than fifteen months. Petitioners case was set for trial two days before Equifax brought about their objection.

76. Even if the Court finds Petitioners must show excusable neglect in order to justify a late opt-out, Petitioners satisfy this standard.

77. The Supreme Court addressed the meaning of "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court set forth factors to consider when determining what kind of neglect will be considered "excusable." These include: (1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. at 1498. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

78. Equifax would not be substantially prejudiced by Petitioners untimely opt-out. As stated before, if Petitioners are granted a late opt-out, Equifax will only have to defend against a suit they have known about, and been vigorously defending against, for more than fifteen months. There is also no guarantee Petitioners will prevail on their claims. Equifax would not be prejudiced if they were forced to litigate Petitioners claims because Petitioners case was set for trial just two days before Equifax raised this issue. Therefore, Equifax was reasonably prepared for trial and has had additional time to prepare for trial while Petitioners cases are pending.

79. On the other hand, Petitioners will be substantially prejudiced if they are not granted a late opt-out. They will be deprived of their Due Process Rights and will be prohibited from adjudicating their claims on the merits in South Carolina Magistrate Court.

80. The length of the delay and the potential impact on judicial proceedings are minimal. There is already a judicial proceeding ongoing in South Carolina Magistrates Court. The only thing that is needed for that case to continue is a determination from the Court that Petitioners are entitled to a late opt-out. Additionally, allowing Petitioners to opt-out would not delay the judicial proceeding in Georgia because Plaintiffs in the Class Action have objected to the Settlement and Class. Therefore, that judicial proceeding is not yet closed, and the Court will not be forced to re-open the case to rule on Petitioners opt-out issue.

81. The reason for the delay is not within Petitioners reasonable control. Equifax intentionally did not provide notice to Petitioners or Petitioners Counsel despite the fact that Equifax knew Petitioners were represented and counsel for Equifax and counsel for Petitioners were at a hearing after the Court's Order Directing Notice. [Dkt. No. 742]. Even if the Court finds the reason for the delay is reasonably within Petitioners control, the other factors outweigh the impact of that finding.

82. The Petitioner, unlike Equifax, have at all times acted in good faith.

83. It is in the interest of justice for the Court to allow Petitioners to opt-out of the Settlement Class even if such opt-out is late. Equifax's *own* actions justify the Court granting Petitioners relief from the judgment. For the reasons stated above, and because the Petitioners can show excusable neglect for not opting-out in the time first set by the Court, Petitioners are entitled to a late opt-out.

### III.     Equifax is Barred by Latches/Estoppel/Waiver/Unclean Hands

84. The Petitioner re-alleges and reasserts the information alleged in the preceding

    paragraphs as if repeated verbatim.

85. If Petitioners are deemed to be a part of the settlement and class, Equifax argument that

    Petitioners failed to opt-out of the Class Action and thus cannot proceed with their claim

    in South Carolina Magistrate Court barred by the doctrines of Latches, Estoppel, Waiver,

    and/or Unclean Hands.

### a.   Latches

86. The Petitioner re-alleges and reasserts the information alleged in the preceding

    paragraphs as if repeated verbatim.

87. Equifax claim that Petitioners failed to opt-out of the Class Action and thus cannot

    proceed with their claim in South Carolina Magistrate Court is barred by the doctrine of

    latches.

88. Equifax has failed to explain why they waited nearly a year and a half to raise the claim

    that Petitioners did not opt-out of the Class Action. This delay is most certainty

    unreasonable, and as stated earlier, Equifax actions were clearly strategic. Equifax actions

    offend the fundamental fairness of the judicial process and are an intentional waste of the

    Courts time and resources.

89. Equifax had knowledge of their claim and could have raised the issue at any time from

    August 1, 2018 to July 22, 2019 (Order Directing Notice, Dkt. No. 742) to November 19,

    2019 (opt-out deadline). However, Equifax did not raise this claim until January 28,

    2020, two days before Petitioners trials were scheduled.

90. Equifax delay in raising this claim has materially prejudiced the Petitioner. Equifax delay in raising this claim was done intentionally as an attempt to extinguish Petitioners fundamental rights to opt-out of the settlement and appeal the settlement. Equifax did this by failing to raise their claim until after the exclusion deadline and appeal deadline had passed. Petitioner is further prejudiced as Petitioner was prepared for trial and as a result of Equifax failure to raise the issue more than two days before trial, Petitioners was denied the right to adjudicate their claim.

### b.  Estoppel

91. The Petitioner re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

92. Equifax claim that Petitioners failed to opt-out of the Class Action and thus cannot proceed with their claim in South Carolina Magistrate Court is barred by the doctrine of estoppel.

93. Equifax actions of vigorously defending against Petitioners claims and failing to raise the claim that Petitioners cannot proceed with their claim for failure to opt-out was clearly misleading conduct. As stated above, Petitioners could have raised the issue at any time from August 1, 2018 but failed to raise the issue until after exclusion deadline passed.

94. Equifax failure to raise this claim was either due to Equifax's intention to deceive Petitioners or was the result of Equifax gross negligence as to amount to constructive fraud.

95. Equifax took the position from August 1, 2018 until January 27, 2020 that South Carolina Magistrates Court was the proper venue for the suit.

96. Petitioners continued vigorously defending their complaint in an attempt to adjudicate their rights in South Carolina Magistrates Court in reliance on Equifax's conduct, which indicated South Carolina Magistrates Court was the proper venue for the suit.

97. Equifax failure to assert their claim that Petitioners were prohibited from proceeding with their complaint in South Carolina Magistrates Court in Equifax Motion to Dismiss Petitioners Complaint is further proof that Equifax conduct indicated South Carolina Magistrates Court was the proper venue for the suit.

98. Petitioner relied on Equifax conduct that indicated South Carolina Magistrates Court was the proper venue for the suit and Petitioner has been prejudiced, as stated above, by Equifax failure to raise their claim before the opt-out date, objection date, and appeal date passed.

### c.   Waiver

99. The Petitioner re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

100.   Equifax claim that Petitioners failed to opt-out of the Class Action and thus cannot proceed with their claim in South Carolina Magistrate Court is barred by the doctrine of waiver.

101.   Equifax voluntary relinquished its right to claim that South Carolina Magistrate Court is not the proper venue to hear Petitioners Complaints.

102.   As stated above, Equifax failed to claim that Petitioners were prohibited from proceeding with their claim in South Carolina Magistrate Court until January 28, 2020, nearly a year and a half after Petitioners filed their Complaint.

103.    Equifax filed a Motion to Dismiss Petitioners Complaint on or about September 27, 2018. However, Equifax failed to raise the claim that South Carolina was not the proper venue to hear Petitioners Complaint or that Petitioners failed to opt-out of the Class Action and therefore could not proceed with their claim in South Carolina Magistrate Court.

104.    Equifax knew, or should have known, of this claim when Petitioners filed their Complaint, but Equifax failed to plead it. Equifax took the position that South Carolina Magistrate Court was the proper venue for Petitioners Complaint and Equifax vigorously defended against Petitioners Complaint for nearly a year and a half. For that reason, Equifax relinquished the right to raise the claim now that Petitioners are prohibited from proceeding with their Complaint in South Carolina Magistrates Court.

105.    If Equifax were allowed to change their position after nearly a year and a half of vigorously defending Petitioners Complaint, Petitioners would be severely prejudiced for all the reasons stated above.

### d.  Unclean Hands

106.    The Petitioner re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

107.    Equifax claim that Petitioners failed to opt-out of the Class Action and thus cannot proceed with their claim in South Carolina Magistrate Court is barred by the doctrine of unclean hands.

108.    Equifax has committed an unconscionable act immediately related to the equity Petitioner seeks in respect to litigation. Equifax has acted in bad faith and comes into

court seeking an inequitable result that undermines the fundamental fairness of the judicial system.

109.     Equifax acted in bad faith by failing to notify Petitioners Attorney of the exclusion date despite knowing Petitioner was represented. Equifax failed to inform Petitioners Attorney of the Settlement Order or send Petitioners Attorney a copy of the Settlement Order. Equifax should have notified Petitioners Attorney that the Court was setting an exclusion date on July 22, 2019, when the Court entered the Order Directing Notice (Dkt. No. 742). Petitioner and Equifax had a hearing on July 30, 2019 at which Attorney's for Equifax and Petitioners Attorney attended. **Equifax Attorney's spoke directly with Petitioners Attorney <u>after the Court set an exclusion date,</u> yet Equifax failed to mention anything about that to the Attorney for Petitioners**. Equifax could have raised this issue at any time in the four months from the date of the Order until the exclusion date, but they failed to do so. Equifax could have raised this issue at any time in the two months from the exclusion date, but only raised the issue two days before Petitioners trial. Equifax explicitly waited until the time for Petitioner to appeal the settlement had ended to raise this issue. Equifax comes to this court after committing numerous unconscionable acts and asks this Court to allow them to take inconsistent positions, clearly in bad faith.

110.     Equifax actions were clearly deceitful and taken in bad faith. Petitioners assert Equifax actions were also fraudulent.

111.     It is clear that Equifax actions are directly related to the matter in issue and have injured Petitioners for the reasons stated above. It is also clear that the actions taken by

Equifax unfairly affects the balance of equity between the parties and is arguably fraud on the Court.

### IV.    Petitioners Object to Settlement/Class

112.    The Petitioner re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

113.    If Petitioners are deemed to be a part of the settlement and class, they object to the settlement and class.

114.    Petitioners were not allowed to exercise their right to object because Equifax intentionally did not notify them of the settlement until after the exclusion and objection date had passed.

115.    Allowing Petitioners to object to the settlement and class does not prejudice Equifax as Plaintiffs in the Class Action have already objected.

116.    Not allowing Petitioners to object to the settlement and class would prejudice Petitioners because to hold them as a part of the class without letting them object to it would strip Petitioners of their fundamental due process rights.

117.    Therefore, if the Court holds that Petitioners are a part of the Class and are not permitted to opt-out of the Settlement, Petitioners must be allowed to exercise their fundamental rights and do exercise their right to Object to the Settlement.

WHEREFORE, the Petitioners respectfully pray for the following relief:

**a)** A determination from The Court that Petitioners are not a party to the *In re Equifax Settlement* and can proceed with their claims against Equifax in South Carolina Magistrates Court.

**b)** In the alternative, a determination from The Court that Petitioners are entitled a late opt-out from the *In re Equifax Settlement* and therefore Petitioners can proceed with their claims against Equifax in South Carolina Magistrates Court.

**c)** A determination from The Court that Equifax argument that Petitioners failed to opt-out of the Class Action and thus cannot proceed with their claim in South Carolina Magistrate Court is barred by the doctrines of Latches, Estoppel, Waiver, and/or Unclean Hands.

**d)** The Court award Petitioners costs and attorney's fees as Equifax filed their motion in South Carolina Magistrates Court in bad faith.

**e)** For such other and further relief as the court shall deem appropriate.

Respectfully Submitted,

/s/Daniel A. Stone
Daniel A. Stone, Dist.
ID 8077
Stone Law Firm, LLC
PO BOX 3884
Irmo, SC 29063
(803) 407-6565 phone
(803) 407-3345 fax

This __16th_____ day of _____April_____ , 2020.