# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

**MIKELL WEST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO UNSEAL TRANSCRIPT OF JULY 30, 2019 HEARING AND RELATED DOCKET ENTRIES**

## Introduction

Class member Mikell West moves pursuant to the common-law right of public access for this Court to unseal the transcript and related docket entries from the July 30, 2019 hearing concerning adjustments to the notice/claims process. *See* Dkt. 776, 777, 782. As discussed *infra*, class counsels' representations concerning the alternative reimbursement compensation and the need to modify the notice/claims process are relevant to West's appeal from $77.5 million in attorneys' fees.

The class has a presumptive right of access to the transcript and related docket entries. *F.T.C. v. AbbVie Products, LLC,* 713 F.3d 54, 62 (11th Cir. 2013). Class counsel did not file a formal motion to seal the records[1] and the order sealing merely concludes without explanation that there is "good cause" for sealing the records. Dkt. 781. That is not enough to overcome the strong presumption of access. *Romero v. Drummond Co.*, 480 F.3d 1234, 1247 (11th Cir. 2007); *see also* Press-*Enter. Co. v. Superior Court,* 478 U.S. 1, 15, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) ("right of access cannot be overcome by … conclusory assertion"). Any claimed interest in sealing these judicial records must give way to the public's right to access them.

---

[1] The request to seal, itself, appears to be under seal to the extent a motion was made orally at the July 30, 2019 hearing.

**Background**

The Court approved issuance of class notice on July 22, 2019. Dkt. 742. The notice advised that class members with existing credit monitoring were eligible "for cash up to $125 as an alternative to the fee Credit Monitoring Services." Dkt. 739-2 Ex. 7-A at 1. It soon became apparent that class counsel grossly underestimated the number of class members who would select the alternative cash compensation, meaning payments will be substantially lower than $125. Dkt. 900-1 at 24.[2]

Class counsel set about to adjust the notice and claims process through an emergency motion that was heard telephonically on July 30, 2019. Dkt. 901-1 at 24-25; Dkt. 1029 at 49-53. As part of that plan, "[i]ndividuals who had filed claims prior to that point in time were invited to 'validate' their claims by providing the name of their credit monitoring service…." Dkt. 900-1 at 25. Those who did not will ostensibly receive no alternative cash reimbursement. Dkt. 900-4 at 27. Consequently, most alternative cash reimbursement claimants will likely have their claims wiped out since emails to class members rarely elicit responses. *See* FTC Staff Report, *Consumers and Class Actions: A Retrospective and Analysis of*

---

[2] The settlement administrator indicated that 4,509,727 claims were made for Alternative Reimbursement Compensation (from members who provided a response regarding a claimed credit monitoring service) as of December 1, 2019. Dkt. 900-4 at 28. If all 4.5 million claims were validated, the $31 million fund would seemingly result in $6.87 payments for those who elected alternative cash reimbursement.

2

*Settlement Campaigns*, at 11, 27, 30 (Sept. 2019) (average claims rate of 3% for class notice by email; most emails from administrators aren't even opened).[3]

The Court apparently approved a supplemental notice plan at the July 30, 2019 hearing. Dkt. 1029.[4] Although no formal motion was filed, this Court granted an order sealing the transcript from the July 30th hearing "in addition to the corresponding minute entries at Dkt. Nos. 776 and 777[.]" Dkt. 781. The court concluded without explanation that the matters were sealed "[f]or good cause[.]" *Id*.

## I. A strong presumption against sealing public records exists.

The common-law right of access "establish[es] a general presumption that criminal and civil actions should be conducted publicly.'" *AbbVie Products,* 713 F.3d at 62 (quoting *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311 (11th Cir.2001)). Open access is premised on the importance of preserving "the public's right to monitor the functioning of our courts." *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570 (11th Cir. 1985). The public presumptively has access to "judicial records," and the transcript of the hearing on class counsels'

---

[3] https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last visited April 20, 2020).

[4] The online claim form was also amended as of August 2, 2019 to advise that payments for the alternative compensation benefit may be less than $125 depending on the number and amount of claims filed. Dkt. 1049 at p. 51 n 22.

3

unfiled emergency motion is unquestionably a "judicial record." *See LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011) (transcript "recorded in open court" was "judicial document for purposes of determining the public's right of access); *Smith v. United States District Court for the Southern District of Illinois*, 956 F.2d 647, 650 (7th Cir. 1992) ("Courts have also held that judicial records include transcripts of proceedings") (citation omitted); *United States v. Martin,* 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents. It includes transcripts, evidence, pleadings, and other materials submitted by litigants ...") (citations and quotation marks omitted); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2015 WL 224705, at *4 (D. Minn. Jan. 15, 2015) ("orders and hearing transcripts… clearly are judicial records" for purposes of the presumption of public access).

The Eleventh Circuit has seemingly endorsed the Second Circuit's approach that the weight of the presumption of access is a function of how a particular document is used. *See Chi. Tribune,* 263 F.3d at 1311 n. 7 (citing *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir.1995)). That is, "information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo,* 71 F.3d at 1049. Because the transcript obviously affects the

court's adjudication directly, the presumption of access weighs heavily in favor of unsealing here.

## II. The parties cannot satisfy their heavy burden for sealing the transcript.

To overcome the strong presumption of access, the party seeking protection has the burden of marking a particularized showing of good cause. *Chicago Tribune*, 263 F.3d at 1310; *BASF Corp. v. SNF Holding Co.*, No. 4:17-cv-251, 2019 WL 3554699, at *4-5 (S.D. Aug. 5, 2019). Neither "blanket assertions of confidentiality," nor "stereotyped and conclusory statements" support a finding of good cause. *BASF Corp.*, 2019 WL 3554699 at *5 (quoting *Romero*, 480 F.3d at 1246).

Good cause to seal only exists for a few categories of information: "In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret. . . ." *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002); *accord Shane Grp. Inc., v. BCBS of Mich.*, 825 F.3d 299, 307 (6th Cir. 2016). None of these limited exceptions apply to the transcript from the July 30th hearing. No recognized privilege (e.g., attorney-client) covers the proceedings. Nor does any statute protect disclosure of the transcript (e.g., contain no protected health information). Other exceptions are even less plausible. For

example, undercover government agents will not be exposed by disclosure. *See United States ex rel. Littlewood v. King Pharms., Inc.*, 806 F. Supp. 2d 833, 842 (D. Md. 2011) (granting motion to unseal docket over government objection). There are also no facts to support a claim of trade secrets that could be revealed in disclosing the transcript. As such, good cause cannot be shown.

### III. The transcript is important to West's arguments on appeal, including his challenge to $77.5 million in attorneys' fees.

Whatever representations were made by class counsel at the July 30th hearing are directly relevant to West's appeal. Class counsels' efforts to eliminate potentially millions of claims for alternative reimbursement compensation speak to the most important factor in awarding attorneys' fees: "the amount involved and the results obtained[.]" *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3 (11th Cir. 1991) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

West challenges the $77.5 million award of attorneys' fees, or 25% of $310 million, as inconsistent with the economies of scale for $300 million plus settlements. Subsumed within the argument is that the extraordinary fee is unjustified to the extent class counsel overpromised, underdelivered, and then attempted to solve the problem with "corrective action"[5] designed to eliminate potentially millions of claims. *See In re Lumber Liquidators Chinese-*

---
[5] Dkt. 900-1 at 25.

6

*Manufactured Flooring Prods.*, No. 1:15-md-02743, Dkt. 167 at 5 (E.D. Va. Nov. 15, 2018) (reducing fees where class notice significantly overestimated cash relief), *vacated in part on other grounds*, 952 F.3d 471 (4th Cir. 2020); *see also Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) ("it is unfathomable that the class's lawyer would try to sabotage the recovery of some of his own clients.").

### IV. Access to the transcript is particularly important because this is a class action.

Beyond West's interests in securing a complete appellate record for his appeal seeking to return tens of millions in excess fees to the class, the overall interests of the class in transparency substantially outweigh any claimed need for sealing. The Court must weigh the presumption of access "against any significant interests raised by the party seeking to file under seal." *BASF*, 2019 WL 3554699, at *3 (citations omitted); *see also Chicago Tribune*, 263 F.3d at 1312 (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)). The court may consider, *inter alia*, "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246.

In the context of a class action, the competing interest of public access is

"particularly compelling … because many members of the 'public' are also plaintiffs in the class action." *In re Cendant Corp.*, 260 F.3d 183, 193-98 (3d Cir. 2001). Besides allowing class members the ability to monitor proceedings affecting their rights, the "openness of class actions provides class members with 'a more complete understanding of the [class action process] and a better perception of its fairness.'" *Id.* (citing *Littlejohn v. Bic Corp.,* 851 F.2d 673, 678 (3d Cir. 1988)). Stated another way, "in class actions—where by definition some members of the public are also parties to the case—the standards for denying public access to the record should be applied with particular strictness." *Shane Grp.*, 825 F.3d at 305.

To the extent any privacy interests are implicated from disclosure of the July 30th transcript, they must yield to the public's right to know what transpired before the Court that resulted in the adjustments to the notice/claims process and the potential elimination of millions of claims. The information concerns public information—adjustments to a notice/claims procedure affecting millions of Americans. The only injury to the public will come from continued sealing.

## Conclusion

Accordingly, West moves for the Court to unseal the transcript from the July 30, 2019 telephonic hearing and related docket entries (776, 777, 782), which are relevant in his appeal before the Eleventh Circuit, and which are presumptively public record.

Dated: April 22, 2020 Respectfully submitted,

/s/ Robert W. Clore
Robert W. Clore
*Pro Hac Vice*[6]
State Bar of Texas #24012436
Admitted to the United States District Court, Southern District of Texas, ID No. 2032287
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78418
(361) 698-5200

Jerome J. Froelich, Jr.
State Bar No. 278150
McKenney & Froelich
One Midtown Plaza, Suite 910
1360 Peachtree Street
Atlanta, Georgia 30309-2920
(404) 881-1111

*Attorneys for Objecting Class Member, Mikell West*

---

[6] Dkt. 23 at 4.

9

**CERTIFICATE OF FONT**

I hereby certify that this document has been prepared in compliance with Local Rules 5.1 and 7.1

DATED: April 22, 2020 /s/ Robert W. Clore
Robert W. Clore

## **CERTIFICATE OF SERVICE**

The undersigned certifies that today he filed the foregoing document on ECF which will send electronic notification to all attorneys registered for ECF-filing.


DATED: April 22, 2020                                         /s/ Robert W. Clore
                                                              Robert W. Clore