# Exhibit 2

**Case Nos. 20-10249, 20-10610, 20-10611, 20-10612, 20-10613**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**SHIYANG HUANG,** *et al.*
**Objectors-Appellants**

v.

**BRIAN SPECTOR,** *et al.*
**Plaintiffs-Appellees**

and

**EQUIFAX INC.,** *et al.*
**Defendants-Appellees**

**On Appeal from the United States District Court**
**for the Northern District of Georgia, Case No. 17-md-2800-TWT**

---

**PLAINTIFFS-APPELLEES' CORRECTED RESPONSE TO FRANK AND**
**WATSON'S MOTION FOR RELIEF UNDER FED. R. APP. P. 10(e)(2)(C)**

---

Kenneth S. Canfield
Ga Bar No. 107744
**DOFFERMYRE**
**SHIELDS**
**CANFIELD &**
**KNOWLES, LLC**
1355 Peachtree Street,
N.E., Suite 1725
Atlanta, Georgia 30309
kcanfield@dsckd.com

Amy E. Keller
**DiCELLO LEVITT**
**GUTZLER LLC**
Ten North Dearborn
Street
Sixth Floor
Chicago, Illinois 60602
akeller@dicellolevitt.com

Norman E. Siegel
**STUEVE SIEGEL**
**HANSON LLP**
460 Nichols Road,
Suite 200
Kansas City, Missouri 64112
siegel@stuevesiegel.com

*Attorneys for Plaintiffs-*
*Appellees*

**Case Nos. 20-10249, 20-10610, 20-10611, 20-10612, 20-10613,** *Huang v. Spector*

## CERTIFICATION REGARDING CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Plaintiffs-Appellees

hereby certify, pursuant to 11th Cir. L.R. 26.1-1(a)(3) and 26.1-2(b), that the

Certificate of Interested Persons contained in their most recent filing with the

Court contains a complete list of all persons and entities known to the filer to

have an interest in the outcome of this particular appeal.

Dated: April 30, 2020

/s/ *Amy E. Keller*
*Attorney for Plaintiffs-Appellees*

In his order finally approving the settlement, Chief Judge Thomas Thrash found that Objector-Appellant Frank is a "serial objector" who is not acting in the best interest of the class and that he disseminated false and misleading information to encourage others to object. (Doc. 1029 at 113-114)   Apparently offended by these factually-supported findings, Frank now seeks to supplement the record for the purpose of supporting a motion for summary reversal and to remove Judge Thrash for alleged misconduct.   Plaintiffs-Appellees did not object to Frank's request below that the proposed order be made public, but it is now apparent the relief he seeks is personal to him, has nothing to do with the merits of his appeal, and if granted likely will delay distribution of the settlement's benefits to the class while he pursues a vendetta against the trial judge.   Supplementing the appellate record for this purpose is both unnecessary and detrimental to the efficient resolution of the pending appeals.

After considering hundreds of pages of briefing and nearly four hours of argument at the final approval hearing, the district court ruled from the bench and explained its reasoning in some detail.   The district court then directed class counsel to prepare a written order reflecting those rulings and, after obtaining Equifax's approval as to form, submit it for consideration.   As directed, after obtaining Equifax's approval, class counsel emailed the proposed order in Word format to the court, which later entered a final approval order consistent with its oral rulings.   Frank and his co-Objector-Appellant Watkins argue that this process—a process to which they did not object—was fundamentally unfair.   According to Frank, the trial court

was led by class counsel to make factually unsupported findings about him of which he had no notice and no opportunity to respond, requiring that the record be supplemented with the proposed order to enable him to seek relief.

Frank's motion lacks merit. The proposed order is unnecessary to address the pending appeals or his challenge to the factual findings about him, which turn on the merits of the order that was actually entered. Further, while critical of the practice in some circumstances not presented here, this Court has consistently upheld a trial court's adoption of a proposed order—and declined to subject it to a different standard of review—so long as the order is supported by evidence and the process is not fundamentally unfair. Contrary to Frank's assertions, the findings about him are factually supported by the record, he had a full opportunity to contest their accuracy before the court ruled, and there was otherwise nothing unfair about the process.

## FACTUAL BACKGROUND

Frank distorts and mischaracterizes both the settlement and what happened below. Some of Frank's factual assertions are simply wrong and others are contrary to the district court's findings. Accordingly, Plaintiffs necessarily must set the record straight by providing an accurate account of the relevant facts in sufficient detail for this Court to evaluate Frank's motion.

### A.   Litigation Overview

The pending appeals arise from litigation following the data breach affecting over 147 million Americans that Equifax announced in September 2017. More than

300 class actions were transferred by the Judicial Panel on Multidistrict Litigation to Judge Thrash. (Doc. 1029 at 2)  Plaintiffs filed a detailed consolidated complaint that named 96 class representatives, including one from every state, asserting claims on behalf of a national class for negligence, negligence per se, other common law causes of action, and violations of the Fair Credit Reporting Act and the Georgia Fair Business Practices Act.  Plaintiffs also asserted alternative claims on behalf of state-specific classes for violation of various consumer protection statutes if a national class was not certified.  Equifax moved to dismiss.  The district court found that Georgia common law would apply nationally, sustained Plaintiffs' negligence and negligence per se claims under Georgia law, and dismissed most of the other national claims and several state-specific claims.  (*Id.* at 3)

Several months later, following 18 months of hard-fought negotiations presided over by former federal judge Layn Phillips, the case settled.  Plaintiffs moved for preliminary approval on July 22, 2019.  Granting the motion, the district court approved a robust notice program, set an objection deadline of November 19, 2019, and scheduled a final approval hearing for December 19, 2019.

## B.     The Settlement

Equifax will contribute $380.5 million into a non-reversionary fund and up to $125 million more, if needed, for certain class benefits.  Class members can claim as much as $20,000 for documented losses; ten years of high-quality credit monitoring and identity protection worth approximately $1,920 to each class member, or

3

alternative compensation of up to $125 (initially capped at $31 million) for those who already have credit monitoring, identify their existing service, and attest it will remain in place for six months; and compensation for up to 20 hours of time spent related to the breach at $25 per hour (initially capped at $38 million) (Tr. at 114; Doc. 1029 at 5-6, 47, 50).[1]  Class members are also eligible for seven years of identity restoration services without filing a claim. (Doc. 1029 at 6)   Moreover, Equifax agreed to a consent order requiring it to spend at least $1 billion for data security and related technology over five years; comply with comprehensive cybersecurity standards; be audited by an independent expert; and be subject to the district court's oversight and enforcement powers.  (Tr. at 114; Doc. 1029 at 7)

The minimum out-of-pocket cost of the settlement to Equifax is $1.38 billion and could be more. (Tr. at 114; Doc. 1029 at 16)   The settlement's benefit to the class—even when only considering the minimum value of the cash fund, the $1 billion Equifax must spend on cybersecurity, and the value of the credit monitoring claimed by class members—exceeds $7 billion. (Doc. 1029 at 16-17)

In its oral rulings at the final approval hearing, the district court described the settlement as "historically significant," an "exceptional" result; and in the "high range" of what could be recovered at trial.  (Tr. at 114, 119, 121)   Judge Phillips, the mediator, submitted a declaration stating that, based on his experience and oversight

---

[1] The $31 million and $38 million caps will be lifted and payments to class members increased *pro rata* if money remains after other claims are paid. (Doc. 739-2; ¶ 5.4)

of the negotiations, he "strongly" supported final approval. (Doc. 739-9 at 7)

Moreover, the settlement was embraced by the Federal Trade Commission, the

Consumer Finance Protection Bureau, and Attorneys General of 48 states, Puerto

Rico, and the District of Columbia, all of whom incorporated the settlement's

consumer restitution provisions into their own separate consent orders with Equifax.[2]

(Doc. 1029 at 14-15, 65)

### C.    Objections to the Settlement

The reaction of the class was overwhelming and positive.  More than 10

percent of the class has filed claims, unprecedented in a case of this nature. (Doc.

1029 at 10) By comparison, in the Anthem data breach settlement, the largest and

most analogous other case, the claims rate was only 1.7 percent.  The large claims rate

here undoubtedly reflects massive media coverage, the settlement's substantial

benefits, and a sweeping notice program designed to engage class members and

encourage participation. (Doc. 1029 at 7-10)

In contrast, only 388 class members (0.0002 percent of the class) validly

_____

[2] Frank ignores the settlement's substantial benefits and attempts to create the
impression it is fundamentally flawed by quoting a letter from Senator Elizabeth
Warren to the FTC Chairman.   Senator Warren expressed concern that, in
announcing its separate settlement with Equifax, the FTC misled the public regarding
the alternative compensation benefit and was preventing valid claims from being filed.
She otherwise does not criticize the FTC settlement or even mention this litigation.
(Doc. 1057-2, ¶ 8, Ex. B)  Regardless, the district court found that valid claims were
not prevented and the parties acted quickly and appropriately to address the public
confusion. (Doc. 1029 at  47-53)

objected—despite organized efforts by Frank and others to solicit objections and false and misleading media coverage following the regulators' announcements of their separate deals. (Doc. 1029 at 25-26, 37, 113-14) The *New York Times* opinion piece Frank cites in his motion (and in which he is quoted encouraging class members to object) illustrates the misleading coverage. Ignoring the hundreds of millions of dollars available to pay class claims, the piece states, "Equifax earmarked only $31 million for claims, meaning that if all 147 million people affected by the breach filed a claim, everyone would get just 21 cents." (Doc. 1057-2, Ex. A) That statement is flat wrong. (Doc. 1029 at 115)

Not surprisingly, the overwhelming majority of objectors relied on erroneous media reports instead of the approved class notice, expressed anger Equifax was not being sufficiently punished, and sought relief beyond a court's power to provide (*e.g.,* that Equifax be forced to stop doing business and that its executives disgorge their salaries and be criminally prosecuted). (Tr. at 116-17, 119-20; Doc. 1029 at 38-43) A handful of serial objectors who challenge class settlements to benefit themselves also objected. (*Id.* at 109-14) With one exception, all appeals from the final approval order were filed by serial objectors.

Frank, a lawyer who has objected in dozens of class actions, is a serial objector. (*Id.* at 113-14) Frank did not appear as counsel of record below. He was represented by his law partner, Melissa Holyoak, and was joined in objecting by Watkins, her brother. (*Id.* at 59) Frank focused on two points. First, he argued that each of the

6

alternative state subclasses that survived dismissal (33 in total) required separate representation (Docs. 876 at 6-12; 1029 at 55, n. 26)), an objection he made unsuccessfully in the Target data breach case and was rejected in the Anthem data breach case.  (*Id.* at 58-60)  Second, he argued class counsel should receive a $16 million fee because they faced "minimal risk," the settlement fund was of little value, and the injunctive relief was illusory—similar to an argument that he made and this Court rejected in *Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 628-30 (11th Cir. 2015), *cert. denied sub nom.*, *Frank v. Poertner*, 136 S. Ct. 1453 (2016).  (Docs. 876 at 17-15; 1029 at 94-96)

Plaintiffs responded to the objections and moved for final approval on December 5, 2019 (Docs. 900, 901, 902, 903), supported by declarations from class counsel and several experts, including Professor Robert Klonoff—who is one of the nation's authorities on class actions and was appointed by Chief Justice Roberts as the sole academic member of the Federal Rules Advisory Committee. (Docs. 858-2 ¶¶ 2-4, App. A; 900-2) Class counsel's declaration contained substantial information relating to the serial objectors.  (Doc. 900-1)

The declaration set forth evidence that Frank conducted a media and Twitter campaign to disparage the settlement using inflammatory language, misrepresent its terms, and encourage other objections.  For example, Frank referred to the settlement as a "scam," accused class counsel of "snookering" the FTC, and contributed to misunderstanding about the alternative compensation benefit by falsely asserting it

"doesn't require anything other than class membership." (Doc. 900-1, ¶¶ 45-53) Frank also encouraged class members to object on a website (www.NoThanksEquifax.com) created by Class Action Inc. (*Id.*, ¶¶ 49-53) The website, which used an automated "chat-bot" to drive online objections, blatantly misrepresented the settlement's benefits by, among other things, repeating the canard that it provided only $31 million for claims. (*Id.*, ¶¶ 49-51)  Class Action, Inc. submitted 718 "objections" it collected, which were all invalidated because they did not comport with the trial court's orders and the requirements of Rule 23(e)(5). (Doc. 1029 at 37-38, 114)[3]

Frank never challenged this evidence, even though class counsel's declaration was submitted more than two weeks before the final approval hearing.  Instead, he sought to strike Professor Klonoff's opinions on *Daubert* grounds, (Docs. 890 and 909), notwithstanding similar motions have been routinely denied, including motions Frank filed recently in two other class actions.[4]  (Doc. 932 at 5-10)

The day before the final approval hearing, class counsel filed a second declaration.  The new declaration included several tweets Frank had sent in the

---

[3] Frank continued to misrepresent the settlement's terms in his objection, falsely claiming that out-of-pocket claims were capped at $38 million. (Doc. 876 at 23-24)  In fact, out-of-pocket claims are not capped, and, if needed, Equifax will pay up to an additional $125 million for out-of-pocket claims.

[4] Frank cites *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018) for the proposition that Professor Klonoff's opinions are inadmissible.  That case, however, did not challenge the widespread practice of considering expert declarations at final approval, but rather held that a trial court did not abuse its discretion in preventing a lawyer from testifying about his legal opinions during a jury trial.

preceding ten days continuing to promote the false narrative class counsel had "pulled a bait and switch with their settlement" and taunting Congresswoman Ocasio-Cortez to get involved by falsely claiming class counsel were "blaming" her for "their screwed up settlement." (Doc. 939-1, ¶¶ 29-31)  The declaration also informed the court that Class Action Inc. had defied a subpoena commanding its appearance at a deposition, (*Id.*, ¶¶ 32-38), preventing discovery about the scope and extent of its relationship with Frank and his public efforts to prompt objections through its "chat-bot."

### D.    The Final Approval Hearing

At the final approval hearing, the district court placed no time restrictions on the participants' arguments.  The hearing lasted four hours. (Tr. at 1, 125)  Plaintiffs' counsel Ken Canfield led off, explaining why the motion for final approval, attorneys' fees, and service awards should be approved. (Tr. at 6-47) Plaintiffs' counsel Norman Siegel addressed the issue of serial objectors, pointing out that Section 21.463 of the Manual for Complex Litigation instructs that some objectors may be motivated by self-interest rather than a desire to benefit the class and discusses the need for a court to distinguish between meritorious objections and those advanced for improper purposes. (*Id.* at 85-88) Mr. Siegel named those who Plaintiffs contended were serial objectors, referred to the detailed evidence about them in the record, and requested the district court make relevant findings to aid the approval and appeal process. (*Id.* at 89-90)

Specifically with regard to Frank, Mr. Siegel argued Frank perpetuated the false

narrative that the settlement only made $31 million available to pay claims and encouraged class members to use the Class Action, Inc. website, even though the website blatantly distorted the settlement's terms. (*Id.* at 91-93) Mr. Siegel also noted that, while Frank might not necessarily be using his objection to extort undeserved fees, he was not acting in the best interests of the class. (*Id.* at 90-91) To illustrate Frank's motivation, Mr. Siegel described how in the Target data breach litigation, Frank unsuccessfully made the same argument in the trial court regarding intra-class conflicts that he makes here; on appeal he convinced the Eighth Circuit to remand for a more in-depth opinion; the trial court wrote a more robust opinion; and that opinion was affirmed. (*Id.* at 93-94) As Mr. Siegel explained, Frank accomplished nothing for the class except to delay distribution of the settlement benefits for two years; but Frank touted his *Target* objection as a "win," demonstrating that his objections are motivated for his own reasons, not to benefit class members. (*Id.* at 94; Doc. 876-1, ¶ 16)

Ms. Holyoak made a short presentation on behalf of Frank, who did not attend the hearing. (Tr. 76-80) While the Court did not limit Ms. Holyoak's argument, she never attempted to rebut Plaintiffs' assertion that Frank is a serial objector not acting in the best interest of the class. Contrary to Frank's claim (Mot. at 15), Ms. Holyoak never requested an opportunity to brief the issue of whether Frank is a serial objector, and the district court never denied such a request. Instead, she objected to a chart listing the deficiencies of many objections that Plaintiffs had filed the day before

10

(Doc. 939-10 at 122) and asked "to the extent that the Court takes any action based on that chart, we would request an opportunity to respond." (Tr. at 79-80)   The district court never took any action based on the chart, did not find that Frank's objection was deficient, and, in fact, expressly considered and rejected his objection (and all others) on the merits.  (Doc. 1029 at 38)  Thus, her request was moot.

After hearing oral argument, the district court took a recess.  Upon returning to the bench, Judge Thrash announced his rulings and explained his rationale at some length. (Tr. at 113-122)  Frank claims the district court made no findings regarding the serial objectors or their motivation. (Mot. at 7, 15)  That claim is incorrect.  Judge Thrash said: "for the reasons stated by Mr. Siegel, it's my judgement that most of the objections that were voiced here today did not take into consideration the best interest of the Class itself."  (Tr. at 117)

Once he completed ruling, Judge Thrash directed class counsel to prepare a written order that "summarizes my rulings on the motions and my adoption basically of the arguments that have been made by the Plaintiffs and by Equifax in the hearing today," obtain Equifax's approval as to form, and submit it for consideration.  (Tr. at 122)  Class counsel then suggested that, in lieu of a single order, they submit three separate proposals—a final approval order, a final judgment, and the consent order relating to the settlement's injunctive relief—a suggestion the court accepted. (*Id.* at 123-24)  No one objected to that process, including Frank's counsel. (*Id.* at 124-25)

As directed, after obtaining Equifax's approval, class counsel emailed the proposed orders to the court in Word format, allowing for their easy revision. That is the typical practice in the Northern District of Georgia. *See* N.D. Ga. L. Civ. R. 7.3 ("Unless the Court directs otherwise, all orders, including findings of fact and conclusions of law, orally announced by the district judge in Court shall be prepared in writing by the attorney for the prevailing party.").[5]  On January 13, 2020, nearly a month after the final approval hearing, the court entered the final approval order; the consent order relating to the injunctive relief; and the final judgment. (Docs. 956, 957, 958)

### E.   Post-Judgment Proceedings

On January 15, 2020, Frank moved to supplement the record with the proposed final approval order (as well as the proposed final judgment and consent decree about which he does not complain) supported by a two-page brief.  (Doc. 961) Plaintiffs responded that they had no objection to inclusion of the proposed orders in the record, while noting the motion could appropriately be denied because the existing record was accurate and supported by the record. The district court never

---

[5] Frank wrongly contends a separate rule, N.D. Ga. L. Civ. R. 5.1(A)(1), required that the proposed orders be filed on the docket.  That rule applies to proposed orders filed with a motion or other request for relief, not to proposed orders prepared at the court's direction to implement an oral ruling.

expressly ruled on Frank's motion to supplement.[6]   (Doc. 971 at 4)  Several objectors

(but not Frank) filed motions to amend the final approval order under Rule 59,

contending its findings about their status as serial objectors were erroneous.   On

March 17, 2020, the district court denied one motion to amend (Doc. 1026), granted

the other such motion (Doc. 1027), and issued an amended final approval order that

was identical to the original order with the exception of the deletion of one sentence.[7]

(Doc. 1029)

## ARGUMENT

Frank has announced his appeal "will focus on the *single* legal issue of the

appropriateness of national class certification and uniform recovery despite material

differences in state law under Rules 23(a)(4) and 23(e)(2)" (Doc. 1057-2, ¶ 18

(emphasis added))  Frank does not contend that the proposed order is needed to

---

[6] Frank claims the motion was denied by general language in the original final approval order repeated in the amended order.

[7] Frank contends the district court was forced to amend its original order because it falsely asserted another court had denied a serial objector's *pro hac vice* application. (Mot. at 14)  Not true.  The original order found that Christopher Bandas, who represents Objector-Appellant Mikell West, is a notorious serial objector, has been excoriated for misconduct, and is subject to a permanent injunction governing objections he and his law firm make. The original order also correctly stated that "because of their history of inappropriate conduct" *pro hac vice* applications by Bandas and his associate, Robert Clore, were denied in *Cole v. NIBCO, Inc.*, No. 3-13-cv-07871 (D.N.J. Apr. 5, 2019) (Doc. 223) at 2.  West's motion to amend the order did not challenge those facts, but denied Clore personally had a history of misconduct.  (Doc. 969)  Plaintiffs opposed the motion, pointing out that Clore admitted filing a false declaration in *Cole* and the court expressed doubt about the credibility of his explanation. (Doc. 976)  The court granted West's motion, without explanation, striking the sentence that referred to Clore. (Docs. 1027 and 1029)

13

resolve the intra-class conflict issue or that the final approval order, with regard to

that issue, is inconsistent with the trial court's oral rulings.  Rather, Frank wants the

proposed order as part of a personal crusade to avenge what he perceives as personal

sleights by the trial court regarding his role as a serial objector.  If his motion is

granted, Frank has previewed that he may seek summary reversal and reassignment of

this multidistrict litigation to another judge. (Mot. at 16)[8]  Such a course of action

would benefit no one other than perhaps Frank, is not in the interest of the class, and

would be doomed to fail because, as this Court has repeatedly held, a trial court's

adoption of a proposed order does not constitute reversible error except under

circumstances that bear no resemblance to what happened here.  Because there is no

need to supplement the record, Frank's motion should be denied.

### A.    There is no need to supplement the Record

Rule 10(e)(2)(C) allows the Court to supplement the record "[i]f anything

material to either party is omitted from or misstated in the record by error or

accident." *Id.* While appellate courts exercise authority under Rule 10(e)(2)(C) to

supplement the record when material is omitted "by error or accident" or because of a

"harmless bureaucratic slip"—as demonstrated in the one case Frank cites supporting

---

[8] In a series of emails beginning April 10, 2020, Frank was even more explicit about
his intentions, stating he would file a motion for summary reversal and request an
order from this Court requiring Judge Thrash to request reassignment under the Rules
of Procedure of the United States Panel on Multidistrict Litigation 2.1(e).  The emails
are attached as Exhibit 1.

his position, (Mot. at 16),[9] there is no need to supplement the record when the existing record is clear and the material is irrelevant to the merits of an appeal. *See, e.g., Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1543 n.5 (11th Cir. 1988) (denying motion to supplement where the record as transmitted "discloses the content of the proceedings which actually took place before the district court"); *First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1487 (11th Cir. 1987) (denying motion to supplement where the facts necessary for the merits of the appeal were already clear from the record); *see generally CSX Transp. v. City of Garden City,* 235 F.3d 1325, 1330 (11th Cir. 2000) ("A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues.").

Here, the record is clear on the "single issue" Frank has appealed, and the proposed order is not material to that issue. Frank does not contend otherwise. The proposed order also is unnecessary for the purpose Frank says he needs it—*i.e.,* to challenge the findings that he is a serial objector who is not acting in the best interest of the class and that he disseminated false information about the settlement to encourage objections. As noted above, those findings are supported by record

---

[9] *Stevo v. Frasor*, 662 F.3d 880, 885 (7th Cir. 2011) (supplementing the record with a missing signed consent form to "correct[] a harmless bureaucratic slip that should not defeat our jurisdiction and grant [appellant] an unjustified do-over of his entire lawsuit").

evidence, which Frank never rebutted, and any challenge to the findings he *now* makes

is either waived or can be resolved based on the existing record.

**B.    The Court's written order is consistent with its oral rulings and Frank had ample opportunity to present his arguments**

Judge Thrash's direction to counsel to draft an order consistent with his oral

rulings involves no "fundamental unfairness [which] may require reversal and

reassignment." (Mot. at 10)  To begin with, the prevailing party's preparation of

proposed orders is the default rule in the court below after a trial judge makes oral

findings of fact and conclusions of law. *See* N.D. Ga. L.R. 7.3.  While the Court has

"criticized the verbatim adoption of proposed orders, the Supreme Court and this

Court have consistently upheld the use of such orders as long as they ... are fully

supported by the evidence." *Brownlee v. Haley*, 306 F.3d 1043, 1067 n.19 (11th Cir.

2002), *citing Anderson v. City of Bessemer*, *N.C.,* 470 U.S. 564, 572 (1985) ("even when the

trial judge adopts proposed findings verbatim, the findings are those of the court and

may be reversed only if clearly erroneous"); *U.S. v. El Paso Natural Gas Co.,* 376 U.S.

651, 656 (1964) (proposed findings adopted verbatim "though not the product of the

workings of the district judge's mind, are formally his; they are not to be rejected out-

of-hand, and they will stand if supported by evidence"); and *Ammons v. Dade City, Fla.,*

783 F.2d 982, 984 n.4 (11th Cir. 1986) (unconditionally adopting proposed findings

does not change the standard of review).

Contrary to Frank's claims (Mot. at 13-14), the final approval order's findings are factually supported and consistent with the trial court's oral rulings.[10]  The order (1) did not find he objected for the purpose of enriching himself, only that his objection was not in the best interests of the class (Doc. 1029 at 110, 113-14); (2) correctly noted this Court in *Poertner*, 618 F. App'x. at 630, previously rejected a similar argument by Frank (that class counsel should receive a reduced fee based on a flawed valuation of the settlement); and (3) as described above, correctly found Frank disseminated false information about the settlement and encouraged class members to object using the misleading "chat-bot."

Further, there was nothing fundamentally unfair about the process.  Before the trial court ruled, Frank had ample notice and opportunity, both in writing and orally, to rebut the evidence and Plaintiffs' allegations relating to his motivation and conduct, but he chose not to do so.[11]  After considering the written record and oral arguments, the trial court ruled from the bench, directed class counsel in open court to prepare a

---

[10] Frank cites his declaration below to support his claims (Doc. 1057-2).  However, that declaration was submitted in opposition to Plaintiffs' motion for an appeal bond on April 13, 2020, three months after the District Court first issued its written findings, and thus was too late to be considered.

[11] Frank contends that he was unfairly prejudiced because his objection was limited to 25 pages while Plaintiffs (who had to respond to over 375 objections) were allowed more pages, submitted extensive expert declarations, and filed a supplemental declaration the day before the hearing.  Unlike Plaintiffs, Frank never requested leave for more pages and chose not to submit expert testimony.  Further, as explained above, Frank did not object to class counsel's supplemental declaration as untimely, only to the deficiency chart submitted with it, which the court did not consider.

17

proposed order, and provided a detailed framework for that order.  Frank's counsel did not object; and, unlike two others found to be serial objectors, he did not move to amend the final approval order to address his grievances with the trial court.

These facts do not support summary reversal, reassignment of the case, or even subjecting the findings about Frank to heightened review.  *See, e.g.*, *Anderson,* 470 U.S. at 572-73; *Brownlee,* 306 F.3d at 1067 n.19; *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1030 (11th Cir. 1989) (refusing to vacate a "ghostwritten" order where the losing party had ample opportunity to argue its case, the court ruled after considering extensive briefs and argument, the request to prepare a written order was not a secret, and no objection was made to the process); *In re Colony Square Co.,* 819 F.2d 272, 276-77 (11th Cir. 1987) (refusing to vacate an order drafted by a party when the court first made a firm decision and then directed counsel to reach a particular result, even though the direction was *ex parte*); *Fields v. City of Tarpon Springs*, 721 F.2d 318, 320-21 (11th Cir. 1983) (declining to reverse findings adopted verbatim from a proposed order because the "district judge had command of the legal issues," was "an active arbiter of the dispute," and thus did not "abdicate his adjudicative role"); *see also King v. Secretary, Dep't of Corrections,* 793 F. App'x. 834, 841 (11th Cir. 2019) (holding that it was not fundamentally unfair for the trial court to adopt as its own reasoning portions of the prevailing party's briefs).

The cases Frank cites, mostly from other Circuits, involve starkly different facts.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 & n. 46 (11th Cir.

1997) (vacating sanctions order striking defendant's answer and reassigning case after the trial judge engaged in a pattern of abusing its discretion and displayed an "utter lack of appearance of impartiality"); *Bright v. Westmoreland Cty.,* 380 F.3d 729, 732 (3d Cir. 2004) (court decided a motion to dismiss before even receiving the plaintiff's response and adopted the defendant's proposed opinion without conducting an independent review or exercising its own judgment); *Edgar v. K.L.,* 93 F.3d 256, 258 (7th Cir. 1996) (disqualifying judge after he had *ex parte* discussions about the merits of the case with one party's experts and refused to describe or permit discovery of the discussions); *United States v. Forness,* 125 F. 2d 928, 942 (2d Cir. 1942) (vacating findings proposed by defendants that the trial court "mechanically" adopted, were unsupported by the record, and not substantially in accord with the court's opinion).

## CONCLUSION

Although the Plaintiffs previously did not object to its disclosure, including the proposed final approval order in the appellate record will not aid in resolving the pending appeals or support Frank's underlying purpose—*i.e.,* supporting a meritless attempt at summary reversal and the trial judge's disqualification. Accordingly, Frank's request to supplement the appellate record should be denied.

19

Dated:  April 30, 2020                    Respectfully submitted,

                                          */s/ Kenneth S. Canfield*
                                          Kenneth S. Canfield
                                          Ga Bar No. 107744
                                          **DOFFERMYRE SHIELDS**
                                          **CANFIELD & KNOWLES, LLC**
                                          1355 Peachtree Street, N.E.
                                          Suite 1725
                                          Atlanta, Georgia 30309
                                          Tel. 404.881.8900
                                          kcanfield@dsckd.com

                                          */s/ Amy E. Keller*
                                          Amy E. Keller
                                          **DiCELLO LEVITT GUTZLER LLC**
                                          Ten North Dearborn Street
                                          Eleventh Floor
                                          Chicago, Illinois 60602
                                          Tel. 312.214.7900
                                          akeller@dicellolevitt.com

                                          */s/ Norman E. Siegel*
                                          Norman E. Siegel
                                          **STUEVE SIEGEL HANSON LLP**
                                          460 Nichols Road, Suite 200
                                          Kansas City, Missouri 64112
                                          Tel. 816.714.7100
                                          siegel@stuevesiegel.com

                                          ***Plaintiffs-Appellees' Co-Lead Counsel***

                                          */s/ Roy E. Barnes*
                                          Roy E. Barnes
                                          Ga. Bar No. 039000
                                          **BARNES LAW GROUP, LLC**
                                          31 Atlanta Street
                                          Marietta, Georgia 30060
                                          Tel. 770.227.6375
                                          roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

*Plaintiffs-Appellees' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, New York 10119
Tel. 212.946.9453
atadler@tadlerlaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Plaintiffs' Steering*
*Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

*Plaintiffs' State Court*
*Coordinating Counsel*

## CERTIFICATE OF COMPLIANCE WITH TYPE-FACE VOLUME LIMIT, <u>TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,154 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: April 30, 2020          <u>/s/  Amy E. Keller</u>
Amy E. Keller
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  Those counsel for Objector-Appellants and Defendant-Appellees who are registered ECF users will be served by the ECF system.

I also certify that copies of the foregoing were served upon the following Objector-Appellants via electronic mail pursuant to agreement this April 30, 2020.

Shiyang Huang
defectivesettlement@gmail.com

John William Davis
john@johnwdavis.com

I also certify that copies of the foregoing were served upon the following Objector-Appellants via U.S. Mail (and electronic mail, where listed below) this April 30, 2020.

George Willard Cochran, Jr.
1981 Crossfield Circle
Kent, Ohio 44240
lawchrist@gmail.com

Christopher Andrews
P.O. Box 530394
Livonia, Michigan 48153

Alice-Marie Flowers
P.O. Box 2322
Anderson, Indiana 46108

*/s/  Amy E. Keller*
Amy E. Keller
*Attorney for Plaintiffs-Appellees*

# Exhibit 1

***Huang, et al. v. Spector, et al.,***
**Case Nos. 20-10249, 20-10610, 20-10611, 20-10612, 20-10613**

**Amy Keller**

| | |
|---|---|
| **From:** | Theodore Frank <ted.frank@hlli.org> |
| **Sent:** | Tuesday, April 14, 2020 3:58 PM |
| **To:** | Amy Keller; dbalser@kslaw.com |
| **Cc:** | Cam Tribble; Ken Canfield; Melissa hlli. Holyoak; Slegel; caaloa@gmail.com; defectivesettlement@gmail.com; jfroelich@mckfroeatlaw.com; john@johnwdavis.com; lawchrist@gmail.com; rclore@bandaslawfirm.com |
| **Subject:** | Re: In re Equifax Data Breach Litigation, No. 20-10249, 20-10609 |

I should clarify with specificity the relief sought, as we ask for all of the parties' positions:

* Summary reversal
* An order requiring the district court to request reassignment under the Rules of Procedure of the United States Panel on Multidistrict Litigation 2.1(e)
* In the alternative, a grant of our previously denied motion to correct the record (Dkt. 961) under Fed. R. App. Proc. 10(e)(2)(C), and an order to the district court to place the ex parte communications from class counsel on the record

Thank you for your attention to this matter.


On Fri, Apr 10, 2020 at 8:34 PM Theodore Frank <ted.frank@hlli.org> wrote:

> Counsel,
>
> We'd hoped to get a motion for summary reversal on file tonight, but the press of other business precluded that. My apologies. With two Monday deadlines and a Tuesday oral argument in the Seventh Circuit, we're now shooting for the 17th. I presume appellees oppose; if not, let me know. If the other appellees can let me know their position by Wednesday, it'd be greatly appreciated.
>
> Have a good holiday weekend, and be safe out there.
>
> Ted