IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800<br>1:17-md-2800-TWT<br><br>ALL CASES |

**ORDER**

This is an MDL proceeding arising out of the Equifax data breach. It is before the Court on the Plaintiffs' Motion for Bond Pending Appeal [Doc. 1040]. The Plaintiffs seek an order requiring Objectors/Appellants Theodore H. Frank and David R. Watkins, Mikell West, George W. Cochran, Christopher Andrews, and Shiyang Huang(collectively, "Objectors") to post appeal bonds. The Plaintiffs contend that they are harmed and prejudiced by the appeals lodged by the Objectors. Under the terms of the class settlement, no part of the $380.5 million in cash benefits, credit monitoring, or the other significant non-monetary relief will be provided to class members until the appeals are resolved. Under Rules 7 and 8 of the Federal Rules of Appellate Procedure, the Plaintiffs move for an order requiring each Objector to post an appeal bond in the amount of $20,000, as security for the costs of appeal.

On July 22, 2019, the Plaintiffs filed their motion to direct notice of the settlement of this action to the settlement class, informing the Court that the parties had entered into a settlement providing for a non-reversionary cash fund of $380.5 million to pay benefits to the class, including cash compensation, credit monitoring, and help with identity restoration. In addition, Equifax may pay up to another $125 million for certain out-of-pocket losses. Equifax must also spend a minimum of $1 billion for data security and related technology over five years and comply with comprehensive data security requirements. The Court granted the Plaintiffs' motion the same day, and, in its Order, set forth the requirements for any objections to final approval of the settlement. Of the approximately 147 million class members, only 388 directly objected to the settlement which the Court recognized was a "miniscule number . . . in comparison to the class size." The Court recognized that many of the objections were in the response to "incomplete or misleading media coverage, or at the behest of serial class action objectors, and often demonstrat[ed] a flawed understanding of the settlement terms."

On December 19, 2019, the Court heard oral argument regarding the merits of the settlement and the Plaintiffs' motion for fees, expenses, and service awards to the class representatives. Thereafter, in an Order dated January 13, 2020 (and

amended March 17, 2020), the Court finally approved the settlement and granted the Plaintiffs' motion for fees, expenses, and service awards. In its Order, the Court determined that the settlement was fair, reasonable, and adequate and complied with Federal Rule of Civil Procedure 23. The Court also found the settlement to be the largest data breach settlement in history, providing class members "an unprecedented package of benefits, including but not limited to cash compensation for out-of-pocket losses fairly traceable to the breach of up to $20,000 per class member, reimbursement for time spent as a result of the breach, and 25% of the amount paid to Equifax by class members for identity restoration services in the year prior to the breach; ten years of high quality credit monitoring services having a retail value of $1,920 per class member; and seven years of identity restoration services without the need to file a claim," and "a consent order requiring [Equifax] to comply with comprehensive cybersecurity standards, spend at least $1 billion on data security and related technology, and have its compliance audited by independent experts." The Court also thoroughly addressed the substance of each objections, and found that they each lacked merit, and in some instances, were made in bad faith. The Objectors filed Notices of Appeal.

Under the terms of the settlement agreement, no money can be paid out or relief provided under the settlement until final resolution of any appeals, which in the ordinary course could take a year or more. The Plaintiffs contend that the existence of this delay provides an opportunity for Objectors to continue to act against the settlement class's interests, spread further misinformation about the settlement, or attempt to leverage the appeal into a personal money-grab, allowing them to attempt to extract a payment in exchange for dismissal of their appeals so that the settlement funds can be distributed immediately. The Plaintiffs contend that the delay caused by these appeals will result in substantial costs to the class, costs that Objectors/Appellants should be required to secure with a bond.

Courts routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal and to protect against the additional costs the class will incur caused by the delay of appeal. *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:08-CV-23323-JLK, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012); *In re Cardizem CD Antitrust Litig.*, 391 F. 3d 812, 816-17 (6th Cir. 2004); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010); *Aboltin v. Jeunesse LLC*, No. 6:17-CV-1624-ORL-40TBS,

2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019). Requiring objectors to post bonds also serves to discourage frivolous appeals. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizeable bond"); *In re Polyurethane*, 178 F. Supp. 3d at 638.

Such bonds are authorized by Federal Rule of Appellate Procedure 7, which provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *See, e.g.*, *In re Checking*, 2012 WL 456691, at *2; *Aboltin*, 2019 WL 1092789, at *3; *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CIV, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012). The amount of the bond rests in the Court's discretion. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th Cir. 2005). Among the costs a court can consider in setting the amount of the bond are costs taxable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 and the increased administrative costs and loss of interest resulting from delay in consummating the settlement. *See, e.g.*, *In re Polyurethane*, 178 F. Supp. 3d at 642-

5

45; *In re Checking*, 2012 WL 456691, at *2; *In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

In determining if an appeal bond is appropriate, courts consider several factors, including: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 212; *In re Checking*, 2012 WL 456691, at *2. Each of these factors supports requiring each Objector to post a bond in this case.

Courts presume that an objector is financially able to post an appeal bond unless he or she demonstrates otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Polyurethane*, 178 F. Supp. 3d at 641-42; *In re Cardizem*, 391 F.3d at 818. Accordingly, the Plaintiffs need not prove that each Objector can afford to post the bond the Plaintiffs have requested; the burden is on each Objector to come forward with sufficient financial information to prove that a bond is beyond their means. Regardless, Objector West, for example, is represented by counsel, who presumably have agreed to advance litigation expenses on his behalf. Most of the

other Objectors have already been identified by this Court as serial objectors, who have extorted money from counsel in prior class actions to withdraw their objections, and thus should not be heard now to claim they cannot afford to put up a bond to pursue their appeals.

Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding whether to require a bond. *See*, *e.*g., *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL 456691, at \*2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999). The less likely it is an appeal will succeed, the stronger the case for a requiring a bond. Here, each Objector's appeal lacks merit and has no legitimate likelihood of success.

This Court has already found that Objectors Frank, West (through his attorney Christopher Bandas), Cochran, and Andrews "are serial objectors, that they have unsuccessfully asserted many of the same or similar objections in other class action settlements, that their objections are not in the best interests of the class, that there is no substantial likelihood their objections will be successful on appeal, and that the class would be best served by final resolution of their objections as soon as practicable so that class members can begin to benefit from the settlement." Objector

7

Andrews has been cited for repeatedly filing frivolous objections and related motions; sanctioned for engaging in vexatious and bad faith litigation; arrested and held in contempt for violating a court order. One of his litigation tactics is to make outrageous and utterly unsubstantiated charges of fraud, collusion, and unethical conduct regarding class counsel and the courts evaluating the fairness of class action settlements to which he has objected. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp.3d 635, 639-40 (N.D. Ohio 2016); *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 WL 8791098 (6th Cir. Dec. 14, 2017). The wild and outrageous accusations in his Response to the Motion for Bond Pending Appeal are typical.

The problem posed by professional objectors is well known. *See, e.g.*, Newberg on Class Actions § 15:37. The Federal Judicial Center has advised courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009). And federal courts overseeing class actions have described the conduct of professional objectors in stark terms. For example, one judge noted:

> Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

There is a substantial risk that the costs of appeal will not be paid unless a bond is required. Each Objector resides outside of this Court's physical jurisdiction. If the costs of appeal are not voluntarily paid, the Plaintiffs will be forced to institute a collection action in one or more other jurisdictions. Courts routinely find a substantial risk of non-payment under such circumstances, warranting an appeal bond. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 293.

Here the Plaintiffs seek only a modest bond for the costs of appeal. Taxable costs listed in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 are customarily included in an appeal bond. *See, e.g., In re Polyurethane*, 178 F. Supp. 3d at 642; Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (4th ed. 2008). These costs include, among others, preparing and transmitting the record, obtaining necessary transcripts, printing, and copying. *Id*. The Court does find that

the request for $20,000 for each Objector to secure appeal costs is excessive. The Court finds that an appeal bond of $2,000 for each Objector is more appropriate.

The Plaintiffs' Motion for Bond Pending Appeal [Doc. 1040] is GRANTED. Therefore, the Court orders each Objector to post a bond of $2,000 or deposit $2,000 in cash in the registry of the Court for the costs of appeal. Each Objector has 14 days from the date of this Order to post a bond acceptable to the Clerk or a cash deposit.

SO ORDERED, this 11 day of May, 2020.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge