**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| _____ | )   MDL Docket No.  2800 |
| In re: Equifax, Inc.  Customer | )   Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation | ) |
|  | ) This document relates to: |
|  | ) |
|  | )   FINANCIAL INSTITUTIONS TRACK |
| _____ | ) |

**FINANCIAL INSTITUTION PLAINTIFFS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND..................................................................................3

    A.    Factual and Procedural Overview of the Litigation...................3

    B.    Negotiation of the Proposed Settlement ....................................5

    C.    Terms of the Proposed Settlement ............................................6

        1.    The Settlement Class Definition......................................6

        2.    Consideration ..................................................................7

            a.    Direct Monetary Relief to Settlement Class Members................................................................7

            b.    Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation ........8

            c.    Injunctive Relief.................................................9

            d.    Releases ............................................................10

        3.    The Proposed Notice and Claims Program ...................11

            a.    Direct Mail Notice.............................................11

            b.    Publication Notice .............................................13

            c.    Settlement Website and Telephone Support ........13

            d.    Opt-Out and Objection Procedures and Deadlines ...........................................................14

ARGUMENT ......................................................................................................14

    I.    The Court Should "Preliminarily Approve" the Agreement and Authorize Notice to the Proposed Settlement Class ...........................14

    A.    The Proposed Class Was Adequately Represented .................17

    B.    The Proposed Settlement Was Negotiated at Arm's Length....19

    C.    The Settlement Relief is Fair, Reasonable, and Adequate........19

        1.    The Risks, Costs, and Delay of Continued Litigation....21

        2.    The Method of Distributing Relief Will Be Equitable and Effective.................................................................22

        3.    The Proposed Attorneys' Fees Are Reasonable ............22

II.     The Court Should Find It Is Likely to Certify the Settlement Class...24

    A.     The Rule 23(a) Requirements Are Satisfied ............................25

    B.     The Requirements of Rule 23(b)(3) Are Satisfied...................26

III.    The Court Should Approve the Proposed Notice Plan and
        Administrator.......................................................................................28

CONCLUSION .......................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agan v. Katzman & Korr, P.A.*,
    222 F.R.D. 692 (S.D. Fla. 2004) ........................................................................28

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................24, 27

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ..........................................................................26

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...................................................................15, 17

*Brown v. Electrolux Home Products, Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ........................................................................27

*Burrows v. Purchasing Power, LLC*,
    No. 1:12-CV- 22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ..................21

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ..........................................................................23

*Carriuolo v. GM Co.*,
    823 F.3d 977 (11th Cir. 2016) ..........................................................................27

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.D. Ga. 2007) .........................................................17, 24, 26

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ..........................................................................15

*Fresco v. Auto Data Direct, Inc.*,
    No. 03-60063-CIV, 2007 WL 2330895 (S.D. Fla. May 11, 2007) ....................14

*George v. Acad. Mortg. Corp. (UT)*,
    No. 1:16-cv-00471-CAP, 2019 WL 1324023, (N.D. Ga. Mar. 20,
    2019) .................................................................................................................23

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) ...............28, 29

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................27

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) ........................................................26

*Holman v. Student Loan Xpress, Inc.*,
  No. 8:08–cv–305–T–23MAP, 2009 WL 4015573 (M.D. Fla. Nov.
  19, 2009) ...........................................................................................29

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011).................................................16, 19

*In re Disposable Contact Lens Anti. Lit.*,
  170 F.R.D. 524 (M.D. Fla. 1996*)* .....................................................26

*In re: Equifax, Inc. Customer Data Security Breach Litigation*,
  289 F. Supp. 3d 1322 (J.P.M.L. 2017) ................................................3

*In re Motorsports*,
  112 F. Supp. 2d at 1334 ..............................................................15, 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  309 F.R.D. 482 (D. Minn. 2005) .......................................................24

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth
  Telecommunications, Inc.*,
  275 F.R.D. 638 (M.D. Fla. 2011) ......................................................25

*Melanie K. v. Horton*,
  No. 1:14–cv–710–WSD, 2015 WL 1799808 (N.D. Ga. Apr. 15,
  2015) .................................................................................................15

*Meyer v. Citizens and Southern Bank*,
  677 F. Supp. 1196 (M.D. Ga. 1988) ..................................................15

*Neuberg v. Shapiro*,
  110 F. Supp.2 d 373, 377 (E.D. Pa. 2000)..........................................29

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)................................................................................28

*Saccoccio v. JP Morgan Chase Bank*
  297 F.R.D. 683 (S.D. Fla. 2014)............................................................21

*Terrill v. Electrolux Home Products, Inc.*,
  295 F.R.D. 671 (S.D. Ga. 2013), *vacated and remanded on other*
  *grounds*, *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th
  Cir. 2016) .......................................................................................25, 28

*Williams v. Mohawk Industries, Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ..........................................................25, 26

*Wolff v. Cash 4 Titles*,
  No. 03–22778–CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .................23

## Statutes, Rules & Regulations

Federal Rules of Civil Procedure
  Rule 12 .............................................................................................21
  Rule 23 .............................................................................................2, 29
  Rule 23(a).........................................................................................24, 25
  Rule 23(a)(1).....................................................................................25
  Rule 23(b) .........................................................................................24
  Rule 23(b)(3).....................................................................6, 7, 10, 26
  Rule 23(e)..........................................................................................*passim*
  Rule 23(e)(1)(B).................................................................................15, 24
  Rule 23(e)(2)(A)-(D) ...........................................................................16
  Rule 23(e)(2).....................................................................................15, 17
  Rule 23(e)(2)(A) ................................................................................18
  Rule 23(e)(2)(B).................................................................................19
  Rule 23(e)(3)......................................................................................16

## Other Authorities

7B C. Wright & A. Miller, *Federal Practice and Procedure* §1797.6
  (3rd ed. 2005).....................................................................................28

4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015) .....................15

Manual for Complex Litigation, §21.632 (4th ed.  2014)  .......................................24

## **INTRODUCTION**

The Financial Institution Plaintiffs[1] move under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of a proposed class action settlement between themselves and Defendants Equifax Inc. and Equifax Information Services LLC (collectively, "Defendants" or "Equifax"). After almost three years of hard-fought litigation involving the filing of over twenty actions by financial institution plaintiffs, the parties have reached a proposed settlement to resolve all claims that arose out of the 2017 Equifax data security incident.

Under the Agreement, if approved, Equifax will agree to: (1) pay up to $5.5 million for settlement class members who submit valid claims; (2) spend a minimum of $25 million over a period of two years towards adopting and/or maintaining data security measures pertinent to the Financial Institution Plaintiffs and their claims; (3) pay all reasonable settlement administration and notice costs; and (4) pay

---

[1]     The remaining named Financial Institution Plaintiffs are: Army Aviation Center Federal Credit Union, ASI Federal Credit Union, Bank of Louisiana, Consumers Cooperative Credit Union, Elements Financial Federal Credit Union, Firefly Credit Union, First Financial Credit Union, Halliburton Employees' Federal Credit Union, Heritage Federal Credit Union, Hudson River Community Credit Union, Peach State Federal Credit Union, SeaComm Federal Credit Union, Services Credit Union, Seven Seventeen Credit Union, Sky Federal Credit Union, State Employees Federal Credit Union (SEFCU), Summit Credit Union, Suncoast Credit Union, The Summit Federal Credit Union, Washington Gas Light Federal Credit Union, and Wright-Patt Credit Union.

reasonable, Court-approved attorneys' fees, costs, expenses, and named plaintiff service awards, up to agreed-upon limits.

The Financial Institution Plaintiffs have moved for an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the proposed settlement class; (3) approving the proposed notice program; and (4) scheduling a final approval hearing. Plaintiffs respectfully request that this Motion, which Equifax does not oppose, be granted. The settlement meets all of the standards for preliminary approval. The settlement class satisfies the requirements of Rule 23. And the notice program – which consists of individualized mailed notice, publication notice, and a website maintained by the settlement administrator – comports with both Rule 23 and due process.

In support of their motion, Plaintiffs submit a proposed preliminary approval order; the Joint Declaration of Class Counsel Gary F. Lynch and Joseph P. Guglielmo ("Jt. Decl."); the proposed settlement agreement ("SA") and its various attachments, such as the proposed notices and claim form (attached as Exhibit A); and a Declaration of Richard W. Simmons, from the proposed Settlement Administrator, Analytics Consulting LLC.

# FACTUAL BACKGROUND

### A.    Factual and Procedural Overview of the Litigation

On September 7, 2017, Equifax Inc. announced that it had been the victim of a criminal cyberattack (the "Data Breach") on its computer systems in which the attackers gained unauthorized access to the personal information of approximately 147 million U.S. individuals, including credit and debit card numbers ("Payment Card Data") from approximately 209,000 consumers.

After announcement of the Data Breach, approximately twenty putative class action lawsuits were filed by U.S. financial institutions against Equifax seeking damages and other relief and alleging that financial institutions had been injured as a result of the data breach.

On December 7, 2017, the Judicial Panel on Multidistrict Litigation transferred those cases to this Court for coordinated pretrial proceedings under the case caption *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.).  *See* 289 F. Supp. 3d 1322 (J.P.M.L. 2017).

The Court created separate litigation tracks for Consumer Cases and Financial Institution Cases and appointed separate leadership counsel for plaintiffs in each track.  The Court appointed Co-Lead and Co-Liaison Counsel, and a Plaintiffs' Steering Committee for the Financial Institution Cases to, among other duties, direct

and manage pretrial proceedings and coordinate settlement discussions or other dispute resolution efforts on behalf of Financial Institution Plaintiffs.  (Doc.  232).

On May 30, 2018, the Financial Institution Plaintiffs filed their Consolidated Amended Complaint (the "Complaint") against Equifax asserting claims for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief.  (Doc.  390). On July 16, 2018, Equifax moved to dismiss the Complaint (the "Motion to Dismiss").  (Doc. 435). The Court heard oral arguments on the Motion to Dismiss on December 14, 2018.  On January 28, 2019 the Court issued an order granting in part and denying in part the Motion to Dismiss.  (Doc.  539, corrected at Doc.  711).

On March 20, 2019, the Financial Institution Plaintiffs filed a Motion for Leave to Amend (Doc.  648), which Equifax opposed on July 29, 2019.  (ECF 774). On December 18, 2019, the Court issued an order granting in part and denying in part the Financial Institutions' Motion for Leave to Amend.  (Doc.  941).

During the litigation, the Parties engaged in significant motion practice and discovery.  In particular, Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to Amend their Complaint resulted in hundreds of pages of substantive briefing. (Jt. Decl., ¶4).  In the midst of this briefing process, the Financial Institution Plaintiffs negotiated a protective order governing the production of discovery produced in the litigation, an ESI protocol governing the form of production of

discovery, as well as a 502(d) order governing the inadvertent production of privileged information. (*Id.*, ¶5). Financial Institution Plaintiffs also served Equifax with a joint set of document requests as well as a specific set of document requests relating to Financial Institution Plaintiffs' claims, and Equifax produced millions of pages of documents, which Plaintiffs reviewed. (*Id.*). Additionally, the Financial Institution Plaintiffs subpoenaed approximately sixty third parties and obtained and reviewed thousands of pages of documents from these third parties, including subpoenas served on the major card brands (Visa, MasterCard, American Express, and Discover) as well as other entities responsible for the investigation into the Data Breach. (*Id.*). Finally, Financial Institution Plaintiffs took multiple depositions of current and former Equifax employees and had numerous additional depositions, including a 30(b)(6) deposition, noticed to occur at the time the settlement was reached. (*Id.*).

### B.   Negotiation of the Proposed Settlement

This Settlement resulted from good faith, arm's-length settlement negotiations, including multiple settlement conferences, both in-person and telephonically among counsel for the Parties, including a full-day mediation session with Phillips ADR – a respected mediation firm which also facilitated the Consumer-track settlement – on June 3, 2019. (Jt. Decl., ¶7). The Parties resumed negotiations after the Court's order granting in part and denying in part leave to amend the

complaint, including in-person negotiations between counsel for the Parties on February 6, 2020, at which agreement in principle was reached and memorialized in a term sheet. (*Id.*, ¶8).

The Parties did not discuss attorneys' fees, costs, or expenses prior to agreeing to the essential terms of the Settlement. (*Id.*, ¶9).

### C. Terms of the Proposed Settlement

#### 1. The Settlement Class Definition

For settlement purposes only, Plaintiffs propose certification of the following class pursuant to Fed. R. Civ. P. 23(b)(3),[2] defined as:

> All Financial Institutions in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards (including debit or credit cards).[3]

> Excluded from the class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and Financial Institutions who timely and validly request exclusion from the Settlement Class.

---

[2]    Equifax does not oppose certification for settlement purposes only.

[3]    An Alerted on Payment Card means any payment card (including debit or credit cards) that was identified as having been at risk as a result of the Data Breach in the following alerts or documents issued by Visa, MasterCard, Discover, or American Express: (i) in an alert in the MasterCard series ADC 004129-US-17 (*e.g.*, ADC 004129-US-17-1, ADC 004129-US-17-2, ADC 004129-US-17-3); (ii) in an alert in the Visa series US-2017-0448-PA (*e.g.*, US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in alert American Express Incident Number C1709012512; and (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action. (SA ¶2.1).

(SA, ¶3.1).

### 2.     Consideration

#### a.     Direct Monetary Relief to Settlement Class Members

Under the Settlement, Equifax will pay, on a claims-made basis, up to a maximum aggregate amount of $5,500,000 to an escrow account from which the Settlement Administrator will make payments to Settlement Class Members who submit approved Documented Out-of-Pocket Claims and/or Fixed Payment Claims, as defined in the Settlement Agreement. (SA, ¶4.3). Eligible Settlement Class Members may make both Documented Out-of-Pocket Claims and Fixed Payment Claims so long as such claims are not encompassed by one another. (*Id.*).

For Fixed Payment Claims, Settlement Class Members are eligible to receive $4.50 for each Alerted on Payment Card they identify in their Claim Form. (SA, ¶¶4.4(a)(ii)(1)).

For Documented Out-of-Pocket Claims, Equifax will provide monetary consideration up to $5,000 for each Settlement Class Member who submits valid claims for reimbursement of the following types of documented, unreimbursed out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Security Incident: (1) fraud reimbursement amounts paid to customers for fraudulent activity on Alerted on Payment Cards that occurred between July 6, 2017, and December 20, 2017; and (2) other direct, out-of-pocket expenses that a

Settlement Class Member attests to having incurred as a result of, and specifically associated with, the Security Incident between May 13, 2017, and December 20, 2017, as set forth in and subject to the Claims Administration and Distribution Plan. (SA, ¶4.4 (a)(ii)(2)).

In the event the aggregate amount of all valid claims from Settlement Class Members exceeds $5,500,000, Fixed Payment Claims shall be paid first and Documented Out-of-Pocket Claims shall be pro-rated as set forth in the Claims Administration and Distribution Plan.  (SA, ¶4.3).

### b.      Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation

Separate from the monetary consideration directly available to Settlement Class Members, Equifax will also pay the reasonable costs of notice, settlement administration, service awards to the named Financial Institution Plaintiffs, attorneys' fees, and reimbursement of litigation expenses/costs, as further described explained below.  (SA, ¶4.4(b)).

Equifax will pay the reasonable costs of settlement administration, including the costs of the notice program, directly to the Settlement Administrator.  (SA, ¶¶2.9, 4.4(b)(i)).

The Financial Institution Plaintiffs and Class Counsel will apply to the Court for awards to the named Financial Institution Plaintiffs for their service to the Settlement Class.  Subject to the Court's approval, Equifax will pay up to $1,500 to

8

each of the twenty-one Financial Institution Plaintiffs, via Class Counsel, as a service award.  (SA, ¶¶4.4(b)(ii), 10.1).

Class Counsel will apply to the Court for an award of attorneys' fees and reimbursement of litigation costs and expenses.  Subject to the Court's approval, Equifax will pay Class Counsel up to $2,000,000 as attorneys' fees, and up to $250,000 as reimbursement of litigation costs and expenses, within 30 days of the Effective Date of the Settlement.  (SA, ¶¶4.4(b)(iii), 10.2).

### c.      Injunctive Relief

In addition to monetary consideration, Equifax has agreed to adopt and/or maintain certain measures with respect to its U.S.-based businesses that regularly collect and hold United States consumers' personally-identifying information ("PII").  These measures include, but are not limited to: (1) continuing to identify and analyze reasonably foreseeable threats to the confidentiality of PII and respond to identified vulnerabilities impacting the confidentiality of PII; (2) continuing to design and implement reasonable safeguards to manage risks identified through its data security risk assessments, including implementation of data loss prevention controls and intrusion detection and protection systems; (3) continuing to perform data security risk assessments, utilizing a risk exception process involving Equifax's leadership, and performing annual risk-based penetration testing while ensuring that vulnerabilities identified as "critical" are mitigated within 60 days; (4) continuing to

maintain a governance process designed to inventory and manage the lifecycle of digital certificates; (5) designing and implementing a security control framework based on industry-recognized cybersecurity standards or frameworks, as appropriate, for the Equifax environment, including controls consistent with applicable PCI DSS requirements for those systems that store, process, or transmit Payment Card Data in connection with U.S. payment card transactions; and (6) maintaining a compliance program and providing an annual certification to Class Counsel certifying that Equifax is in compliance with the foregoing requirements, or identifying steps to remedy areas of material non-compliance. (SA, ¶4.8). These obligations shall be maintained for a period of two years, subject to reasonable modifications. Finally, Equifax will spend a minimum of $25 million on the measures identified in the Settlement Agreement over a two-year period. (*Id.*; *id.*, ¶ 4.9).

### d.      Releases

In exchange for the consideration provided by Equifax under the Agreement, the Settlement Class Representatives, Settlement Class Members who do not timely and validly exclude themselves, and their related entities will release Equifax and its related entities from any claims that were or could have been asserted in the Complaint, including, but not limited to, claims related to the Data Breach,

fraudulent use of any Alerted on Payment Cards, and any alleged damage to the financial services "ecosystem" as alleged in the Complaint.  (SA, ¶9.1).

### 3.    The Proposed Notice and Claims Program

Subject to the Court's approval, the Parties propose to individually notify each Settlement Class Member through U.S.  Mail, and to have the Settlement Administrator establish a toll-free number and Settlement Website to provide information about the Settlement.  (SA ¶¶ 2.22, 7.2).  Settlement Class Members will be able to file claims both electronically and by mail.  (Claims Administration and Distribution Plan, SA Ex. 1 § II).  Publication notice through digital media also will be utilized.  (SA ¶ 7.2(c)).

### a.    Direct Mail Notice

For purposes of effectuating Mail Notice, Class Counsel will submit to the Settlement Administrator the legal address of each financial institution that issued an Alerted on Payment Card.  (SA, ¶7.2(a)).  The Settlement Administrator will use this data, along with other reasonably available sources, to compile a final list of potential Settlement Class Members to which Mail Notice will be issued.  (SA, ¶7.2(a)–(b)).

For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated.  (SA, ¶7.2(b)).  For any Mail Notices that are returned

11

undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  (*Id.*).  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.  (*Id.*).

Mail Notice will consist of the Long-Form Notice, as well as the Claim Form. (SA ¶ 7.2(b)).  The Long-Form Notice (SA Ex.  2) includes a description of the material terms of the Settlement; a date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members can submit a Claim Form and access the Settlement Agreement and other related documents and information.  The Parties propose a 180-day claim period following the Notice Deadline (defined as the date by which the Administrator is required to send Mail Notice, which shall be 30 days after entry of the Preliminary Approval Order unless the Court sets a different deadline).  (SA, ¶¶2.5, 2.21).

The Claim Form (SA, Ex. 4) clearly informs the Settlement Class Members of the process they must follow.  It is only five pages long and requires Settlement Class Members to provide very basic information: the name of the financial

institution; the person filling out the form; the financial institution's contact information; and whether the institution is making a Fixed Payment Claim, a Documented Out-of-Pocket Claim, or both. For each type of claim, the Claim Form indicates the information or documentation required from the institution. For a Fixed Payment Claim, the form requires identification of the number and brand(s) of Alerted on Payment Cards. For a Documented Out-of-Pocket Claim, the form requires identification of the amount and type of claimed loss, and indicates the types of supporting documentation that the Administrator will review when validating such claims.

The information required by the Claim Form will be easy for financial institution employees to locate and provide. A substantially similar form will appear on the Settlement Website for purposes of electronically submitting a claim.

### b.  Publication Notice

The Settlement Administrator will cause a link to the proposed Summary Notice to be published in the ABA Banking Journal in the form depicted in SA Ex. 3, or substantively similar. (SA, ¶7.2(c)).

### c.  Settlement Website and Telephone Support

The Settlement Administrator also will establish the Settlement Website, which will contain all the information included in the other forms of notice and will provide links to pertinent case documents. (SA, ¶¶2.22, 2.35, 7.2(d)). The

13

Settlement Website will permit Settlement Class Members to file claims electronically and will allow Settlement Class Members to submit questions regarding the Settlement to customer support personnel. (SA, ¶7.2(d)). The Settlement Administrator also will establish a toll-free number Settlement Class Members can call for information about the Settlement. (SA, ¶¶6.1, 6.2(d)).

### d. Opt-Out and Objection Procedures and Deadlines

All forms of notice: (1) explain the procedure by which a Settlement Class Member can exclude itself from the Settlement prior to the Opt-Out Deadline (SA, ¶7.3); and (2) explain the procedure for a Settlement Class Member to object to the Settlement or Class Counsel's applications for awards of attorneys' fees, costs and expenses, or Service Awards to Settlement Class Representatives prior to the Objection Deadline. (SA, ¶7.5). The proposed Opt-Out and Objection Deadlines are 90 days after the Notice Deadline. (SA, ¶¶2.23, 2.24).

## ARGUMENT

### I. The Court Should "Preliminarily Approve" the Agreement and Authorize Notice to the Proposed Settlement Class

Court approval is required for any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e). Approval is a two-step process. First, the Court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, No. 03-60063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007)

(internal citations omitted); *see Melanie K.  v. Horton*, No. 1:14–cv–710–WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015).  "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015).  Second, after preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected.  *See, e.g.*, *id.*

The law generally encourages the settlement of class actions.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *see also, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Meyer v. Citizens and Southern Bank,* 677 F. Supp. 1196, 1200 (M.D. Ga. 1988).  "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).  The Court has broad discretion in approving a settlement.  *Id.*

Before the Court can direct notice to the class, a plaintiff must "show[] that the court will likely be able to . . .  approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B) (eff. Dec. 1, 2018).   Approval under amended Rule

23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (1) whether "the class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief provided for the class is adequate"; and (4) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).[4]

There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness, and adequacy considerations and the two standards district courts typically use within the Eleventh Circuit when determining whether to "preliminarily approve" a settlement and authorize notice. Some courts find that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).[5] Other courts consider the Eleventh Circuit's multi-factor test customarily used to assess whether final approval is warranted. Those factors, known as the *Bennett* factors, are:

---

[4]     Rule 23(e)(3) also requires the identification of any additional agreements related to the settlement. The parties are submitting to the Court *in camera* the specific terms of the provisions allowing termination of the settlement if more than a certain number of class members opt out. Other than that agreement, there is nothing else to disclose.

[5]     Unless otherwise indicated, citations are omitted and emphasis is added.

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558–59

(N.D. Ga. 2007) (quoting *Bennett*, 737 F.2d at 986).

Amended Rule 23(e)(2), however, establishes a uniform set of core approval factors that the Advisory Committee Note states "should always matter to the [court's] decision" whether to approve the proposal.  Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment.  Plaintiffs, therefore, will predominantly address the amended Rule 23(e) factors and briefly discuss the *Bennett* factors, which will also be fully addressed in their motion for final approval of the Settlement.

### A.     The Proposed Class Was Adequately Represented

This Court previously has considered Class Counsel's qualifications when appointing Gary F. Lynch and Joseph P. Guglielmo as Co-Lead Counsel for the Financial Institution Track.  (*See* Doc. 232 at 4–5).  Class Counsel have extensive experience litigating complex and class actions and have demonstrated particular

success in litigating data security breach class actions on behalf of financial institutions.  (Jt. Decl., ¶13).[6]

Class Counsel have aggressively litigated this action – opposing the motions to dismiss and succeeding on numerous claims, drafting and serving discovery, managing the review of millions pages of documents produced by Equifax and third parties, and drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case.  This activity has provided Class Counsel with adequate information to negotiate this Settlement.  (Jt. Decl., ¶¶4–5, 7, 14).

The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, monitoring the Litigation, producing information and documents to Class Counsel, participating in the initial phases of discovery, and participating in the mediation process.  (Jt. Decl., ¶15).  Their claims align with those of the Settlement Class.  Thus, this factor under Rule 23(e)(2)(A) weighs in favor of granting preliminary approval.

---

[6]     This settlement represents the fourth data breach class settlement in three years achieved by Carlson Lynch and Scott+Scott working together as co-lead counsel on behalf of financial institutions.  The prior cases include one before this Court, *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.) ("Home Depot"); plus *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-356 (W.D. Wash.); and *First Choice Federal Credit Union v. The Wendy's Company*, 2:16-cv-506 (W.D. Pa.). All three settlements were granted final approval with no objections.

### B.      The Proposed Settlement Was Negotiated at Arm's Length

"Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *See, e.g.*, *In re Checking Acct. Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

The proposed settlement was negotiated at arm's length, without collusion and with the assistance of a respected mediation firm.  As part of the mediation process, the Parties exchanged, and provided to the mediators, comprehensive memoranda outlining the strengths and weaknesses of their claims and defenses, and responded to written questions posed by the mediators.  Two representatives of the Financial Institution Plaintiffs attended the mediation.  (Jt. Decl., ¶7).  Finally, Class Counsel's attorneys' fees, costs, and expenses and Service Awards were not discussed until after the Parties agreed on the material terms of the Settlement.  (*Id.,* ¶9).  That the Settlement was achieved through well-informed and arm's-length negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### C.      The Settlement Relief is Fair, Reasonable, and Adequate

The settlement provides a strong recovery for the Class in light of the risks posed by continued litigation.  Class members are eligible for substantial cash benefits totaling up to $5.5 million.  Class Members who submit valid claims will receive $4.50 per Alerted on Card, plus up to an additional $5,000 for certain out-

of-pocket losses related to the Data Breach.  Equifax is also required to adopt and/or maintain security measures to protect the sensitive data it collects.  These benefits compare favorably with settlements approved in similar data breach cases.

In *Target* and *Home Depot*, the settlements provided financial institutions with $1.50 and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option to obtain a percentage of documented losses).  *See In re Target Customer Data Sec. Breach Litig.*, No.  0:14-md-02522, ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017).  Other approved settlements also provided approximately $2.00–$3.00 per card.  *See* Settlement Agreement, *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-356, ECF No. 164-1 at 6, ¶33 (W.D. Wash. Apr. 26, 2019); Pls.' Mem. in Supp. of Mot. for Final Approval, *First Choice Federal Credit Union v. The Wendy's Company*, 2:16-cv-506, ECF No. 186 at 19 (W.D. Pa. Oct. 7, 2019) (noting that distribution per card would have been approximately $2.00 if claims rate had been 100%); Final Judgment and Order of Dismissal, *WinSouth Credit Union v. Mapco Express, Inc.*, No. 3:14-cv-01573 (M.D. Tenn. Jan. 12, 2017) (approving settlement with a $700,000 fund giving class members up to $3.00 per card or up to 60 percent of proven losses).

Thus, on a guaranteed, dollar-per-card basis, this Settlement represents a stronger recovery for Class Members than these other recent settlements that received final approval.

### 1.    The Risks, Costs, and Delay of Continued Litigation

The trial court weighs the first *Bennett* factor, the likelihood of success at trial, "against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV- 22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). Although Plaintiffs are confident about their case, the risks involved cannot be disregarded. Class Counsel presented theories of liability based on the unique nature of Equifax's role in the financial "ecosystem" in addition to the traditional negligence claims related to the compromised Payment Card Data. Some of these theories were rejected by the Court at the Rule 12 pleading stage. If Plaintiffs were to attempt to revive those claims, they would have to litigate the case to completion and await a post-judgment appeal, the outcome of which would be uncertain and likely several years away.

Further, with respect to the claims that did survive Equifax's motion to dismiss, class certification is always challenging, and, assuming a class is certified, Plaintiffs risk losing on summary judgment, at trial, or on appeal. *See generally In*

*re Motorsports*, 112 F. Supp. 2d at 1334 ("[T]he trial process is always fraught with uncertainty."). The proposed settlement avoids these uncertainties and provides the class with meaningful and certain relief.

### 2. The Method of Distributing Relief Will Be Equitable and Effective

As explained above, Class Members are eligible for two forms of cash relief: Fixed Payment Claims, Documented Out-of-Pocket Claims, or both. All Class Members who make valid Fixed Payment Claims will receive $4.50 per Alerted on Card. Class Members will also be able to receive up to $5,000 if they make valid claims for certain forms of documented out-of-pocket losses sustained as a result of the Data Breach. The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. (Simmons Decl., ¶¶2–9 & Ex. 1).

No Class Member will receive different treatment or a category of relief that is unavailable to other class members. The 180-day claim period will be sufficiently long to enable all eligible Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective.

### 3. The Proposed Attorneys' Fees Are Reasonable

Class Counsel will request no more than $2 million in Attorneys' Fees, which Equifax has agreed to pay, subject to Court approval. Although there will not be a

traditional common fund established for this settlement, the Court can analyze this fee request using a "constructive common fund" approach by dividing the requested fee ($2 million) by the total monetary amount Equifax has agreed to make available ($7.5 million, including fees, but excluding expenses, administration costs, and any injunctive relief valuation).   Under this approach, Class Counsel's fee request is equivalent to 26.6% percent of the "fund," and does not include the value of injunctive relief provisions or the fact that Equifax has agreed to spend $25 million over the next two years towards such provisions.

This request is well within the typical range in the Eleventh Circuit and elsewhere, and poses no impediment to preliminary approval.  *See, e.g.*, *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *George v. Acad. Mortg. Corp. (UT)*, Civil Action No. 1:16-cv-00471-CAP, 2019 WL 1324023, at *17 (N.D. Ga. Mar. 20, 2019); Eisenberg, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in 11th Circuit is 33 percent).

Class Counsel's application for a fee award will also demonstrate that the request is supported by the lodestar crosscheck, as counsel devoted substantial time

to this matter, and will not be earning a large multiplier.

## II.     The Court Should Find It Is Likely to Certify the Settlement Class

When a settlement is reached before certification, a court must determine whether to certify the settlement class.  *See, e.g.*, Manual for Complex Litigation §21.632 (4th ed.  2014); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  Amended Rule 23(e) states that before authorizing notice, a Court should determine that it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.  *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 553 (N.D. Ga. 2007).

The Court should certify this Settlement Class.  Indeed, courts have recently certified similar classes in data breach cases – both for litigation purposes, see *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn.  2005), as well as for purposes of settlement.  *See First Choice Federal Credit Union v. Wendy's*, Doc. 191 at 4 (W.D. Pa. Nov. 6, 2019); *Veridian v. Eddie Bauer*, Doc. 182 (W.D. Wash. Oct. 25, 2019); *Home Depot*, Doc. 343 at 8–10 (N.D. Ga. Sept. 22, 2017); *Winsouth Credit Union v. Mapco Express, Inc.*, No. 3:14-cv-01573, ECF No. 48 (M.D. Tenn. Sept. 14, 2016).

### A.    The Rule 23(a) Requirements Are Satisfied

*Numerosity:* Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." The proposed class consists of thousands of financial institutions (Jt. Decl., ¶6), which is more than sufficient. *See, e.g.*, *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (the Eleventh Circuit's general rule is that more than 40 class members satisfies numerosity).

*Commonality:* "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members,'" *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Products, Inc.*, 295 F.R.D. 671, 685 (S.D. Ga. 2013), *vacated and remanded on other grounds*, *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016).  In this case, all members of the proposed class assert that issued payment cards were compromised as a result of the Data Breach and bring the same legal claims based on Equifax's common conduct.  Proving their claims thus will involve numerous common questions of law and fact that will be resolved in the same way for all class members.  The commonality requirement thus is met.

*Typicality:* The typicality requirement primarily focuses on whether the

named plaintiffs' claims "have the same essential characteristics" as claims of other class members. *See, e.g.*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The requirement is undemanding, *In re Disposable Contact Lens Anti. Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *See, e.g.*, *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus exists if the claims arise from the same pattern of conduct and there is a similarity of legal theories. *See, e.g., Williams*, 568 F.3d at 1357. Here, the claims of all class members arise out of the same alleged misconduct by Equifax and are based on the same legal theories. Thus, the typicality requirement is satisfied.

*Adequacy of Representation***:** In assessing the adequacy requirement, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Plaintiffs do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced. (Jt. Decl., ¶15). The requirement is thus met.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and

that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Manageability, the part of the superiority analysis that asks whether the case, if tried as a class action, would be manageable, is irrelevant for purposes of certifying a settlement class.  *Amchem*, 521 U.S. at 620.

*Predominance:* "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016).  Predominance does not require that all questions be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members.  *See, e.g.*, *Target*, 309 F.R.D. at 486–89.  The only potentially individualized issue is damages, which does not defeat predominance.  *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004).

Litigating the claims of thousands of class members – which would require presentation of the same evidence and expert opinions many times over – would be inefficient. *See Terrill*, 295 F.R.D. at 697 ("A single, coordinated proceeding is superior to hundreds of discrete and disjointed suits addressing the same facts and legal issues."). Because class treatment is superior to individual litigation, superiority is satisfied.

## III.   The Court Should Approve the Proposed Notice Plan and Administrator

Rule 23(e) provides that "notice of the proposed . . . compromise shall be given to all members of the class in such manner as the court directs." Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). There is no single way in which the notice must be transmitted. However, mail notice is sufficient when the class members are known. 7B C. Wright & A. Miller, *Federal Practice and Procedure* §1797.6 at 200 (3rd ed. 2005).

The Parties, therefore, propose to notify Class Members individually by mail. The identity and addresses of individual Class Members are known to the Administrator and Class Counsel from the records of Visa, MasterCard, the other Card Brands, and prior settlements involving substantially the same institutions. (Jt. Decl., ¶12). Reasonable efforts will be made to re-mail notices to Class Members whose initial notice was returned as undeliverable. The notice itself is written in plain English and includes a description of the litigation, the claims being made, and the terms of the settlement as well as information for Class Members about the deadlines and their rights to opt out or object. In addition, the Settlement Administrator will publish notice in a popular online banking journal, and a website will be established where Class Members will be able to view and download copies of pleadings, orders, and the documents relating to the settlement. Class members will be able to call a toll free number for further information.

This notice program satisfies the requirements of due process and Rule 23 and thus should be approved. *See, e.g.*, *Grunin*, 513 F.2d at 121 (individualized mail notice sufficient when class members can be identified); *Holman v. Student Loan Xpress, Inc.*, No. 8:08–cv–305–T–23MAP, 2009 WL 4015573, at *6 (M.D. Fla. Nov. 19, 2009) (approving notice by first class mail to most recent known address); *Neuberg v. Shapiro*, 110 F. Supp. 2d 373, 377 (E.D. Pa. 2000) (same).

The Court should also approve Analytics Consulting to serve as the settlement

administrator.   Analytics is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements with financial institution plaintiffs.  (Simmons Decl., Ex. 1).  The parties selected Analytics after considering multiple administration firms and believe that Analytics will be able to meet the obligations imposed on the settlement administrator under the settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant their motion and enter the order proposed by the parties to: (1) preliminarily approve the proposed settlement; (2) certify the proposed settlement class; (3) approve the notice program; and (4) schedule a final approval hearing.


Dated: May 15, 2020                       Respectfully submitted,

*/s/ Joseph P.  Guglielmo*               */s/ Gary F.  Lynch  (filer)*
Joseph P.  Guglielmo                      Gary F.  Lynch
**SCOTT+SCOTT ATTORNEYS**          **CARLSON LYNCH, LLP**
**AT LAW LLP**                            1133 Penn Avenue, 5th Floor
230 Park Avenue, 17th Floor               Pittsburgh, Pennsylvania 15222
New York, New York 10169                  Tel.  412.322.9243
Tel.  212.223.6444                        glynch@carlsonlynch.com
jguglielmo@scott-scott.com

*Financial Institution Plaintiffs' Co-Lead Counsel*

Craig A.  Gillen                          Ranse Partin
**GILLEN WITHERS & LAKE,**          **CONLEY GRIGGS PARTIN**
**LLC**                                   **LLP**
3490 Piedmont Road, N.E.                  4200 Northside Parkway

One Securities Centre, Suite 1050
Atlanta, Georgia 30305
Tel.  404.842.9700
cgillen@gwllawfirm.com

Building One, Suite 300
Atlanta, Georgia 30327
Tel.  404.572.4600
ranse@onleygriggs.com

MaryBeth V.  Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
Tel.  404.320.9979
mgibson@thefinleyfirm.com

*Financial Institution Plaintiffs' Co-Liaison Counsel*

Arthur M.  Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel.  504.525.8100
amurray@murray-lawfirm.com

Charles H.  Van Horn
**BERMAN FINK VANHORN
P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel.  404.261.7711
cvanhorn@bfvlaw.com

Stacey P.  Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Tel.  612.349.8500
sslaughter@robinskaplan.com

Allen Carney
**CARNEY BATES & PULLIAM,
PLLC**
519 W.  7th Street
Little Rock, Arkansas 72201
Tel.  501.312.8500
acarney@cbplaw.com

Bryan L.  Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel.  612.339.7300
bbleichner@chestnutcambronne.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL
NAUEN P.L.L.P.**
100 Washington Ave.  S., Suite
2200
Minneapolis, Minnesota 55401
Tel.  501.812.5575
khriebel@locklaw.com

Brian C.  Gudmundson
**ZIMMERMAN REED LLP**

1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel.  612.341.0400
brian.gudmunson@zimmreed.com

Karen S.  Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O.  Box 241790
Little Rock, Arkansas 72223
Tel.  501.821.5575
karenhalbert@robertslawfirm.us

*Financial Institution Plaintiffs' Steering Committee*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R.  7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R.  5.1B. This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 15th day of May, 2020.

*s/ Gary F.  Lynch*
Gary F.  Lynch

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*s/ Gary F.  Lynch*
Gary F.  Lynch
