# Exhibit A

Settlement Agreement and Release

## Index of Attachments

| Title | Exhibit | PDF Page |
|---|---|---|
| Settlement Agreement and Release | | 2 |
| Claims Administration and Distribution Plan | 1 | 35 |
| Long Form Notice | 2 | 44 |
| Short Form Notice | 3 | 55 |
| Claim Form | 4 | 57 |
| Proposed Preliminary Approval Order | 5 | 63 |
| Proposed Final Order and Judgment | 6 | 79 |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of May 15, 2020, by and between, as hereinafter defined, (a) Settlement Class Representatives on behalf of themselves and the Settlement Class, (b) the Association Plaintiffs, and (c) Equifax Inc. and Equifax Information Services LLC (collectively, "Equifax" or "Defendants") and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives, Association Plaintiffs, and Equifax enter into this Agreement by and through their respective counsel. By this Agreement, Equifax, the Association Plaintiffs, and the Settlement Class Representatives seek to and do hereby resolve all claims of the Association Plaintiffs, the Settlement Class Representatives and the Settlement Class (as defined in this Agreement) that could have been or were asserted in the action titled *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga). Settlement Class Representatives, Association Plaintiffs and Equifax are collectively referred to herein as the "Parties."

## Recitals

1.1.    In a series of announcements beginning in September 2017, Equifax Inc. announced that it had been the victim of a criminal cyberattack on its computer systems in which the attackers gained unauthorized access to the personal information of approximately 147 million U.S. individuals, including credit card numbers for approximately 209,000 consumers.

1.2.    After announcement of the Data Breach, multiple putative class action lawsuits were filed by U.S. financial institutions against Equifax seeking damages and other relief and alleging that financial institutions had been injured as a result of the data breach.

1.3.    On December 7, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") transferred those lawsuits to the Honorable Thomas W. Thrash in the United States District Court for the Northern District of Georgia (the "Court") for coordinated pretrial proceedings under the case caption *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.) (the "Litigation").

1.4.    The Court created separate litigation tracks for Consumer Cases and Financial Institution Cases and appointed separate leadership counsel for plaintiffs in each track. The Court appointed Co-Lead and Co-Liaison Counsel, and a Plaintiffs' Steering Committee for the Financial Institution Cases to, among other duties, direct and manage pretrial proceedings and coordinate settlement discussions or other dispute resolution efforts on behalf of Financial Institution Plaintiffs.

1.5.    On May 30, 2018, the Financial Institution Plaintiffs filed their "Financial Institution Plaintiffs' Consolidated Amended Complaint" (the "Complaint") against Equifax asserting

1

claims for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief.  On July 16, 2018, Equifax moved to dismiss the Complaint (the "Motion to Dismiss").  The Court heard oral arguments on the Motion to Dismiss on December 14, 2018. On January 28, 2019 the Court issued an order granting in part and denying in part the Motion to Dismiss.

1.6.  On March 20, 2019, the Financial Institution Plaintiffs filed a Motion for Leave to Amend which Equifax opposed on July 29, 2019.  On December 18, 2019, the Court issued an order granting in part and denying in part the Financial Institutions' Motion for Leave to Amend.

1.7.  The Parties have engaged in significant motion practice and discovery.  In particular, Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to Amend their Complaint resulted in hundreds of pages of substantive briefing.  In the midst of this briefing process, the Financial Institution Plaintiffs also served Equifax with document requests, and Equifax produced millions of pages of documents, which Plaintiffs reviewed. Additionally, the Financial Institution Plaintiffs obtained and reviewed thousands of pages of documents from numerous third parties in response to subpoenas the Financial Institution Plaintiffs served, including subpoenas served on the major card brands. Finally, the Financial Institution Plaintiffs took multiple depositions of current and former Equifax employees and had numerous additional depositions noticed to occur.

1.8.  This Settlement resulted from good faith, arm's-length settlement negotiations, including multiple settlement conferences among counsel for the Parties and a full-day mediation before Phillips ADR, a respected mediation firm. The Parties did not discuss attorneys' fees, costs, or expenses prior to agreeing to the essential terms of the Settlement.

1.9.  Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in the Settlement and how best to serve the interests of the Settlement Class.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty, and cost of further prosecution of the Litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Settlement, that a settlement with Equifax on the terms set forth in this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

1.10.  Equifax denies any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Equifax with respect to any claim of fault or liability or wrongdoing or damages whatsoever, any infirmity in the defenses that Equifax asserted or would assert, or to Financial Institution Plaintiffs' ability to satisfy the requirements of the Federal Rule of Civil Procedure Rule 23.  Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Equifax has agreed to settle the Litigation on the terms as set forth in this Settlement, subject to Court approval.

1.11.  The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined below) of the Settlement Class.

The Parties intend this Agreement to bind Settlement Class Representatives, Equifax, and all Settlement Class Members that do not timely and validly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice, subject to preliminary and final Court approval, as required by Rule 23, on the following terms and conditions:

## Definitions

2.1.   "Alerted on Payment Card" means any payment card (including debit or credit cards) that was identified as having been at risk as a result of the Data Breach in the following alerts or documents issued by Visa, MasterCard, Discover, or American Express: (i) in an alert in the MasterCard series ADC 004129-US-17 (e.g., ADC 004129-US-17-1, ADC 004129-US-17-2, ADC 004129-US-17-3); (ii) in an alert in the Visa series US-2017-0448-PA (e.g., US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in alert American Express Incident Number C1709012512; and (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action.

2.2.   "Approved Claim" means a claim for Settlement benefits made using a Claim Form by a Settlement Class Member found to be valid and in an amount approved by the Settlement Administrator.

2.3.   "Association Plaintiffs" means Credit Union National Association, Illinois Credit Union League, New York Credit Union Association, and Independent Community Bankers of America.

2.4.   "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and payment of Approved Claims by the Settlement Administrator, as well as any other duties and obligations of the Settlement Administrator, as set forth in the Settlement.

2.5.   "Claims Deadline" means the deadline by which Settlement Class Members must submit a claim for benefits under this Settlement, which shall be 180 days after the Notice Deadline.

2.6.   "Claim Form" shall mean the claim form attached as Exhibit 4 (including an electronic version thereof), or a claim form approved by the Court that is substantially similar to Exhibit 4, that a Settlement Class Member must complete and submit in order to be eligible for benefits under the Settlement.

2.7.     "Class Counsel" means the Court-appointed Co-Lead Counsel in the Litigation:

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Avenue, 17th Floor
New York, NY 10169

2.8.     "Complaint" means the operative Financial Institution Plaintiffs' Consolidated Amended Complaint (ECF No. 390), filed in the Litigation on May 30, 2018.

2.9.     "Costs of Settlement Administration" means all reasonable actual costs and expenses of the Settlement Administrator associated with or arising from the Claims Administration, the Notice Program, and providing notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b). The Costs of Settlement Administration shall be paid to the Settlement Administrator as set forth in this Settlement.

2.10.    "Court" means the United States District Court for the Northern District of Georgia.

2.11.    "Data Breach" or "Security Incident" mean the data breach announced by Equifax Inc. on or about September 7, 2017.

2.12.    "Defendants' Released Persons" means: (a) Equifax; (b) each of its or their respective current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct; and (c) the respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, reinsurers, shareholders, members, advisors, consultants, representatives, partners, joint venturers, and assigns of each of the entities and persons listed in sections (a) and (b) of this Paragraph.

2.13.    "Effective Date" means the first business day after which all of the following events have occurred:  (a) Class Counsel and Equifax's counsel have executed this Settlement; (b) following notice to the Settlement Class, the Court has entered the Final Approval Order and Judgment without material change to either the Parties' Settlement or agreed-upon proposed Final Approval Order and Judgment, as described in this Settlement and attached hereto as Exhibit 6; and (c)(i) the time for seeking rehearing, appellate, or other review of the Final Approval Order and Judgment has expired with no appeal, motion for rehearing, or motion for further review being filed, except as specifically described further in this definition; or (ii) the Final Approval Order and Judgment is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and

the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered, precluded, or delayed in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses or Service Awards in the amounts that Class Counsel requests but otherwise enters a Final Order and Judgment without material change to the remainder of the Settlement or the agreed-upon proposed Final Order and Judgment.  Further, the Effective Date shall not be altered, precluded, or delayed in the event that an appeal is filed, with the sole issues on appeal being the award of attorneys' fees, costs, and/or expenses to Class Counsel and/or Service Award.

2.14.  "Equifax" means Equifax Inc. and Equifax Information Services LLC.

2.15.  "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described in the Settlement.  The Parties agree that the Escrow Account is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. The Parties agree that the Escrow Account shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the Escrow Account as a qualified settlement fund from the earliest date possible.

2.16.  "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

2.17.  "Final Approval Order and Judgment" means the order and judgment that the Court enters upon Final Approval and in the form of, or materially in the form of, the proposed Final Approval Order and Judgment attached hereto as Exhibit 6.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then the Final Approval Order and Judgment includes all such orders.

2.18.  "Financial Institution Plaintiffs" means the following financial institutions:  Army Aviation Center Federal Credit Union, ASI Federal Credit Union, Bank of Louisiana, Consumers Cooperative Credit Union, Elements Financial Federal Credit Union, Firefly Credit Union, First Financial Credit Union, Endurance Federal Credit Union f/k/a Halliburton Employees' Federal Credit Union, Heritage Federal Credit Union, Hudson River Community Credit Union, Peach State Federal Credit Union, SeaComm Federal Credit

Union, Services Credit Union, Seven Seventeen Credit Union, Sky Federal Credit Union, State Employees Federal Credit Union, Summit Credit Union, Suncoast Credit Union, The Summit Federal Credit Union, Washington Gas Light Federal Credit Union, and Wright-Patt Credit Union.

2.19.  "Litigation" means the Financial Institutions Track of the consolidated action styled *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.) in the United States District Court for the Northern District of Georgia.

2.20.  "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

2.21.  "Notice Deadline" means the date by which the Settlement Administrator is required to send out Mail Notice, which shall be 30 days after entry of the Preliminary Approval Order unless a different deadline is set by the Court.

2.22.  "Notice Program" means the notice plan and methods provided for in this Settlement and consists of: (a) a direct mail notice to Settlement Class Members ("Mail Notice"); (b) publication notice  (as described in more detail below); (c) notice posted on the Settlement Website; and (d) such other notice as is required by due process and Rule 23.  The Notice Program shall be effected in substantially the manner provided for in this Settlement, subject to Court approval.

2.23.  "Objection Deadline" means 90 days after the Notice Deadline.

2.24.  "Opt-Out Deadline" means 90 days after the Notice Deadline.

2.25.  "Parties" means Equifax, the Association Plaintiffs, and the Financial Institution Plaintiffs, individually and on behalf of the Settlement Class.

2.26.  "Personally Identifiable Information" or "PII" means a United States resident's first name or first initial and last name in combination with any one or more of the following data elements that relate to such resident, when either the name or the data elements are not encrypted: (a) Social Security Number; (b) driver's license or state issued identification card number; and (c) financial account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to the financial account; provided, however, that PII shall not include information that is lawfully obtained from publicly available sources of information or from government records lawfully made available to the public.

2.27.   "Plaintiffs' Released Persons" means the Settlement Class, Association Plaintiffs, their current and former parents, subsidiaries, affiliated companies, predecessors, successors, officers, directors, agents, predecessors, assigns, assignees, partnerships, partners, insurers,

reinsurers and divisions and the Settlement Class Representative's counsel of record in the Litigation.

2.28.  "Preliminary Approval Order" means the order preliminarily approving the Settlement and, among other things, ordering that notice be provided to the Settlement Class, and in the form of, or materially in the form of, the proposed Preliminary Approval Order attached hereto as Exhibit 5.

2.29.  "Releasing Parties" means the Settlement Class Representatives, the Association Plaintiffs, and all Settlement Class Members who do not timely and validly exclude themselves from the Settlement, and each of these entities' current and former parents, subsidiaries, affiliated companies, predecessors and divisions, as well as their respective heirs, assigns, beneficiaries, predecessors, officers, directors, agents, partnerships, partners, insurers, reinsurers and successors.

2.30.  "Service Award" means a payment of up to $1,500 to each Financial Institution Plaintiff (twenty-one total); subject to Court approval, in compensation for its involvement in this Litigation and service on behalf of other financial institutions.  The Service Awards shall be paid separately by Equifax.

2.31.  "Settlement Agreement" or "Settlement" means this settlement agreement and release, including exhibits hereto.

2.32.   "Settlement Administrator" means the entity to be selected by the Parties, and approved by the Court to effectuate the Notice Program and Claims Administration per the terms of this Settlement.

2.33.   "Settlement Class Members" or "Settlement Class" means all persons and entities that fall within the settlement class definition set forth in this Settlement.

2.34.  "Settlement Class Representatives" means the Financial Institution Plaintiffs.

2.35.   "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but no later than the Notice Deadline, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to the Settlement, Notice, Preliminary Approval Order, Claim Form, Complaint, and such other documents as Class Counsel and Equifax's counsel agree to post, or that the Court orders posted, on the website.  These documents shall remain on the Settlement Website at least 60 days after the Effective Date.  The URL of the Settlement Website shall be agreed upon by Class Counsel and Equifax's counsel.  Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website.  The Settlement Website

shall not include any advertising and shall remain operational until at least 60 days after the Effective Date.

**Settlement Class**

3.1.    For settlement purposes only, the Parties agree that the Court should certify the following class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

>    **All financial institutions in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards.**

Excluded from the class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and Financial Institutions who timely and validly request exclusion from the Settlement Class.

3.2.    For settlement purposes only, Class Counsel shall seek, and Equifax shall not oppose, the appointment of Class Counsel as settlement class counsel and the appointment of Settlement Class Representatives as defined above.  Settlement Class Representatives will move for provisional certification of the Settlement Class, for settlement purposes only, contemporaneously with their  motion for preliminary approval of the Settlement.  Equifax agrees not to contest provisional certification of the Settlement Class for settlement purposes only.

3.3.    Within fourteen (14) days after preliminary approval, Class Counsel shall provide, or cause to be provided, the Settlement Administrator and Equifax with a class list reflecting: (1) the available contact information (i.e., name and mailing address) of each Financial Institution falling under the class definition; and (2) the number of Alerted on Payment Cards issued by each Financial Institution (the "Class List").

**Settlement Consideration**

4.1.    In exchange for the mutual promises and covenants in this Agreement; including, without limitation, the Releases set forth below and the dismissal of the Action upon the Effective Date, Equifax agrees to pay and provide the settlement consideration described in this Section 4 as restitution (the "Settlement Consideration").

4.2.    In no event shall Equifax be required to pay or provide more than the Settlement Consideration in connection with this Settlement.

4.3.    After the Effective Date, Equifax will make up to a maximum aggregate amount of $5,500,000 available to the Settlement Class Members who submit approved Documented Out-of-Pocket Claims and/or Fixed Payment Claims, as defined below (together,

8

"Approved Claims"). Eligible Settlement Class Members may make both Documented Out-of-Pocket Claims and Fixed Payment Claims so long as such claims are not encompassed by one another. In the event the aggregate amount of claims exceed $5,500,000, Fixed Payment Claims shall be paid first and Documented Out-of-Pocket Claims shall be prorated as set forth in the Claims Administration and Distribution Plan.

4.4. Equifax shall fund the following payments of the Settlement Consideration, as set forth below:

a. Payment of Approved Claims to the Settlement Class.

i. Payments to the Settlement Class shall be administered on a "claims made" basis in accordance with the Claims Administration and Distribution Plan (attached hereto as Exhibit 1). This means that Equifax will provide sufficient funds to pay only those Approved Claims submitted by Settlement Class Members in accordance with the Claims Administration and Distribution Plan. Equifax will not be required to establish a settlement fund. Instead, within 14 business days or as soon thereafter as is reasonably practicable after the Effective Date or, if after the Effective Date, the Claims Deadline, the Settlement Administrator shall create the Escrow Account, calculate the dollar amount of all Approved Claims, and inform Equifax of that amount. Within 20 business days of receiving notification from the Settlement Administrator of the dollar amount of Approved Claims, Equifax shall transfer funds to the Escrow Account to pay Approved Claims. These funds will be used solely for payment of Approved Claims and shall not exceed an amount equal to the aggregate amount of Approved Claims or $5,500,000, whichever is less. The funds placed in this Escrow Account shall be deemed a "qualified Settlement fund" within the meaning of United States Treasury Reg. §1.468B-l. Equifax will fully satisfy its obligation to fund this account upon depositing the appropriate amount as directed by the Settlement Administrator, and all risk of loss thereafter passes to Financial Institution Plaintiffs and the Settlement Class.

ii. Payment to the Settlement Class will consist of the following, subject to proration if necessary:

1. *Fixed Payment Claims.* Settlement Class Members who submit valid, documented claims will receive $4.50 for each Alerted on Payment Card they identify in their Claim Form, subject to the Claims Administration and Distribution Plan (attached hereto as Exhibit 1) (the "Fixed Payment Claims").

      2.   *Documented Out-of-Pocket Claims.*

      a.   Equifax will provide monetary consideration to be paid to Settlement Class Members who submit valid claims for reimbursement of the following types of documented, unreimbursed out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Security Incident ("Documented Out-of-Pocket Claims"): (1) fraud reimbursement amounts paid to customers for fraudulent activity on Alerted on Payment Cards that occurred between July 6, 2017 and December 20, 2017; and (2) other direct, out-of-pocket expenses that a Settlement Class Member attests to having incurred as a result of, and specifically associated with, the Security Incident between May 13, 2017 and December 20, 2017, as set forth in and subject to the Claims Administration and Distribution Plan (attached hereto as Exhibit 1) (collectively, "Documented Out-of-Pocket Claims").

      b.   Eligible Settlement Class Members will be entitled to receive up to $5,000.00 per Settlement Class Member for valid Documented Out-of-Pocket Claim(s) in the aggregate, subject to a pro-rata reduction following the payment of Fixed Payment Claims, if necessary.

  b.  <u>Payment of Costs Associated with Administration of Settlement, Service Awards, Attorneys' Fees, and Expenses of Litigation.</u>  Equifax will pay the reasonable Costs of Settlement Administration, Service Awards to Financial Institution Plaintiffs, Attorneys' Fees, and Expenses of Litigation.  These costs will be paid directly by Equifax as follows:

    i.  *Costs of Settlement Administration.* Equifax will pay the reasonable Costs of Settlement Administration.   Payment for such costs shall be made directly to the Settlement Administrator, within sixty (60) days of receipt by Equifax of an invoice from the Settlement Administrator after entry of the Preliminary Approval Order by the Court.

    ii.  *Service Awards.* Equifax will pay costs of Court-approved Service Awards to each of the Financial Institution Plaintiffs, not to exceed $1,500 per Financial Institution Plaintiff. Equifax shall fund such payment directly to the Financial Institution Plaintiffs, care of Class Counsel, by wire transfer to Class Counsel's escrow account, within thirty (30) days of the Effective

Date.  Class Counsel shall have sole responsibility for ensuring that the Service Awards are distributed the Financial Institution Plaintiffs following the wire transfer to Class Counsel's escrow account and Equifax shall have no further liability with respect to the Service Awards. Neither Class Counsel's application for, nor any institution's entitlement to, a Service Award shall be conditioned in any way upon such institution's support for this Settlement.

iii. *Attorneys Fees' and Expenses of Litigation.* Equifax will pay Court-approved Class Counsel attorneys' fees, costs, and expenses, in an amount not to exceed $2,000,000 in fees and $250,000 in costs and expenses. Equifax shall make such payment to Class Counsel, by wire transfer, within thirty (30) days of the Effective Date.

4.5. Equifax shall be under no obligation to fund any other, additional, or greater amount than the Settlement Consideration amounts reflected in Sections 4 and 10.1.  The attorneys' fees, costs, and expenses and any Service Award awarded by the Court will be funded by Equifax, not by the Settlement Class.  Class Counsel will not seek attorneys' fees, costs, and expenses or a Service Award other than as provided for in Section 10.2.

4.6. The funds in the Escrow Account, if any, shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. §1.468B-l, at all times, from the creation of the Escrow Account.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed upon Equifax, Plaintiff, and/or Class Counsel, with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively, "Taxes"), shall be paid out of the Escrow Account.  The Escrow Account shall indemnify and hold Equifax, Financial Institution Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification) and Equifax, Financial Institution Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes.

4.7. The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement. Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state and local tax consequences to it of the receipt of any funds pursuant to this Agreement.

4.8. <u>Injunctive Relief.</u>  In further consideration for the releases described herein, Equifax agrees to adopt and/or maintain the following measures with respect to its U.S.-based businesses that regularly collect and hold United States consumers' PII:

11

a.    <u>Identification of Foreseeable Security Threats.</u> Equifax will continue to identify and analyze reasonably foreseeable threats to the confidentiality of PII, respond to identified vulnerabilities impacting the confidentiality of PII, and implement reasonable measures to mitigate such threats and vulnerabilities;

b.    <u>Safeguard Data Furnished by Financial Institutions.</u> Equifax will continue to design and implement reasonable safeguards to manage the risks, if any, identified through its data security risk assessments.  Equifax will ensure that it has data loss prevention ("DLP") controls and intrusion detection and protection systems ("IDS/IPS") as appropriate for its networks, endpoints or servers that process, transmit, or store PII data provided by financial institutions;

c.    <u>Risk Exception Process.</u> Equifax will continue to track and manage its data security risk assessments and utilize an exception process that will include the involvement of Equifax's leadership.  The exception process shall be reviewed annually;

d.    <u>Annual Security Testing.</u> Equifax will continue to perform annual, risk-based internal and external penetration testing of its systems to identify potential vulnerabilities and ensure that vulnerabilities identified as "critical" are mitigated within 60 days;

e.    <u>Digital Certificates.</u> Equifax will continue to maintain a governance process designed to inventory and manage the lifecycle of digital certificates, including through the use of automated tools where reasonably feasible;

f.    <u>Designing Reasonable Safeguards.</u> Equifax will continue to design and implement reasonable safeguards to manage its data security risks consistent with one or more industry recognized cybersecurity standards or frameworks (*e.g.*, ISO/IEC 27001:2013, NIST, PCI DSS), including by: continuing to maintain and periodically re-evaluate its Information Security Policy and Incident Response Plan, or similar document(s), and continuing to maintain monitoring for indicators of compromise on Equifax's computer network endpoints;

g.    <u>Industry Standard Adoption.</u> Equifax's information security program will design and implement a security control framework based on industry-recognized cybersecurity standards or frameworks, as appropriate, for the Equifax environment.  Further, for those systems that store, process or transmit Payment Card Data in connection with U.S. payment card transactions, Equifax's security program will include controls consistent with applicable PCI DSS requirements;

h.    <u>Compliance.</u> Equifax will maintain a compliance program that regularly assesses compliance with its cybersecurity policies and standards;

i.    <u>Certification.</u> Equifax's SVP Enterprise Risk and Compliance or such designated equivalent will submit an annual certification (for a minimum of two years) to Class Counsel, certifying that Equifax is in compliance with the foregoing requirements or identifying steps Equifax is taking to remedy areas of material non-compliance. This certification shall be kept strictly confidential; and,

> j.    Equifax shall spend a minimum of $25 million on such measures identified above over a two-year period commencing on the date of execution of the Settlement Agreement.

4.9.    Other than as specifically set forth above, Equifax's obligations under Section 4.8 shall commence on the Effective Date of the Settlement Agreement and shall terminate two years thereafter. The measures set forth above will be materially maintained during this two-year period of time, subject to any of the following: (a) a determination by the Equifax officer designated as the head of Equifax's cyber-security program that the measure is no longer in the best interest of Equifax, including, but not limited to, due to circumstances making the measure no longer applicable, feasible, or available on commercially reasonable terms; or (b) modifications which Equifax reasonably believes are required by applicable law or regulation.

## Preliminary Approval

5.1.    Upon execution of this Settlement, Class Counsel shall promptly move the Court for an order granting the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 5. The motion for preliminary approval shall request that the Court: (a) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (b) provisionally certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) and (e) for settlement purposes only; (c) approve the Settlement Administrator and Notice Program set forth herein, form and content of the Notice, and Claim Form; (d) approve the procedures set forth in this Settlement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (e) stay all proceedings in the Litigation unrelated to the Settlement pending Final Approval of the Settlement; (f) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning any Released Claims; (g) appoint Class Counsel and Settlement Class Representatives; and (h) schedule a Final Approval hearing at a date that provides sufficient time for the deadlines contemplated by this Settlement and that is convenient for the Court, at which time the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses and Service Awards (the "Final Approval Hearing").

5.2.    Within 10 days of the filing of the motion for preliminary approval, the Settlement Administrator shall serve, or cause to be served, a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under CAFA.

## Settlement Administrator

6.1.    The Settlement Administrator shall administer various aspects of the Settlement and perform such other functions as are specified for the Settlement Administrator elsewhere

in this Settlement and the Claims Administration and Distribution Plan, including, but not limited to, overseeing administration of the Escrow Account; providing Notice to Settlement Class Members, as described in this Settlement; establishing and operating the Settlement Website and a toll-free number; administering the claims process; and distributing cash payments according to the processes and criteria established by this Settlement and the Claims Administration and Distribution Plan.

6.2.   The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Settlement, include:

a.   implementing the Notice Program required by this Settlement;

b.   establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

c.   establishing and maintaining the Settlement Website;

d.   establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement Agreement-related inquiries;

e.   responding to Settlement Class Member inquiries;

f.   processing all written notifications of exclusion from the Settlement Class and providing deficiency notices as set forth herein and in the Claims Administration and Distribution Plan;

g.   providing weekly reports and, no later than 10 days after the Opt-Out Deadline, a final report to Class Counsel and Equifax that summarizes the number of written requests for exclusion received that week, total number of written requests for exclusion received to date, and other pertinent information as requested by Class Counsel and Equifax's counsel;

h.   in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and validly provided a written request for exclusion from the Settlement Class;

i.   reviewing, determining the validity of, responding to, and processing all claims submitted by Settlement Class Members, pursuant to criteria established by this Settlement Agreement and as set forth in the Claims Administration and Distribution Plan;

> j.  Making available to the Parties for inspection and review the Claim Forms and any supporting documentation submitted by Settlement Class Members and any other information regarding the Settlement Administrator's review and validation process at any time upon reasonable notice;
>
> k.  after the Effective Date, processing and transmitting payments to Settlement Class Members that submitted Approved Claims;
>
> l.  providing weekly reports and a final report to Class Counsel and Equifax's counsel that summarize the number of claims since the prior reporting period, total number of claims received to date, number of any claims approved and denied since the prior reporting period, total number of claims approved and denied to date, and other pertinent information as requested by Class Counsel and Equifax's counsel; and,
>
> m.  performing any function related to Claims Administration at the agreed-upon instruction of the Parties, including, but not limited to, verifying that cash payments have been distributed in accordance with this Settlement.

6.3.  Class Counsel shall provide the Settlement Administrator with sufficient information about Settlement Class Members to permit the Settlement Administrator to process and validate claims, including, at a minimum, the names and mailing addresses of all Settlement Class Members and the number of Alerted on Payment Cards issued by each Settlement Class Member.

6.4.  The Parties, Class Counsel, and Defendants' Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Escrow Account; (iii) the formulation, design or terms of the disbursement of the Escrow Account; (iv) the determination, administration, calculation or payment of any claims under this Agreement; (v) any losses suffered by or fluctuations in the value of the Escrow Account; or (vi) the payment or withholding of any Taxes, expenses or costs incurred in connection with the taxation of the Escrow Account or the filing of any returns.

6.5.  The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the administration of the Settlement; (ii) the management, investment or distribution of the Escrow Account; (iii) the formulation, design or terms of the disbursement of the Escrow Account; (iv) the determination, administration, calculation or

payment of any claims asserted under this Agreement; (v) any losses suffered by, or fluctuations in the value of the Escrow Account; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Escrow Account or the filing of any returns.

## **Notice, Opt-Outs, and Objections**

7.1.   Upon entry of the Preliminary Approval Order of the Settlement, at the direction of Class Counsel, the Settlement Administrator will begin implementing the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may opt-out or object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Settlement and other related documents and information.

7.2.   The Notice Program includes Mail Notice, Publication Notice, and Notice on the Settlement Website.  The Notice Program is to be implemented as follows:

a.   Within 14 days after entry of the Preliminary Approval Order, or as soon as practicable, Class Counsel will provide, or will cause to be provided, available contact information to the Settlement Administrator for all potential Settlement Class Members. Based upon information obtained from Class Counsel and from other reasonably available sources, the Settlement Administrator will prepare a final list of potential Settlement Class Members to which Notice will be issued;

b.   Mail Notice will be sent to those on the final list by the Notice Deadline.  The Mail Notice shall consist of the long-form notice, in the form attached hereto as Exhibit 2, and Claim Form, in the form attached hereto as Exhibit 4.  For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable;

c.   The Settlement Administrator will cause to be published in the digital edition of the ABA Banking Journal a link to the summary notice attached hereto as Exhibit 3 for 30 continuous days.

16

     d.   By the Notice Deadline, the Settlement Administrator will create and maintain the Settlement Website, which will contain the information and documents required by this Settlement.  The Settlement Website will be configured so that Settlement Class Members may file claims electronically; and,

7.3.    The Notice shall include a procedure for Settlement Class Members to opt-out and exclude themselves from the Settlement by notifying, in writing, the Settlement Administrator, Class Counsel, and Equifax's counsel of their intent to exclude themselves from the Settlement.  The notice shall be sent via first class postage prepaid U.S. mail to the addresses provided in the Notice.  Such written requests for exclusion must be postmarked no later than the Opt-Out Deadline, as specified in the Notice.  The written request for exclusion must include the name of this Litigation (*In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.)) the full name, address, and telephone number of the Settlement Class Member; the name, address, email address, telephone number, position, and signature of the individual who is acting on behalf of the Settlement Class Member; the words "Request for Exclusion" at the top of the document or a statement in the body of the document requesting exclusion from the Settlement; and the total number of Alerted on Payment Cards issued by the Settlement Class Member. The Settlement Administrator shall provide the Parties with copies of all opt-out requests on a weekly basis and a final list of all who have timely and validly excluded themselves from the Settlement, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing.  Any Settlement Class Member who does not provide a timely request for exclusion, or who does not provide all information required by this Settlement to exclude itself, shall be bound by the terms of the Settlement, including all releases in the Settlement.

7.4.    In the event that a Settlement Class Member purports to provide notice of its intention to opt out of the Settlement but fails to provide all of the information set forth above, including specifically the identification of the number of Alerted on Payment Cards issued by the Settlement Class Member, the Settlement Administrator shall, within 5 days of receiving the deficient notice, send the Settlement Class Member a deficiency notice.  The deficiency notice shall inform the Settlement Class Member that its attempt to opt out is deficient, invalid, and without legal effect.  The deficiency notice shall be sent by the Settlement Administrator via email and, if email is not feasible, then by a USPS Priority Express mail. The deficiency notice shall also inform the Settlement Class Member that it must re-submit a valid notice requesting exclusion that includes all of the required information, including but not limited to the number of Alerted on Payment Cards identified as at risk to an email address to be provided by the Settlement Administrator, no later than 10 days from the date of the deficiency notice in order for its opt out to be effective.  If the Settlement Class Member fails to provide all of the required information on or before that deadline, then its

attempt to opt out shall be invalid and have no legal effect, and the Settlement Class Member shall be bound by the Settlement, including the releases.

7.5.   The Notice shall also include a procedure for Settlement Class Members to object to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or the application for Service Award.  Objections to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or to the application for Service Award must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Equifax's counsel.  For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Equifax's counsel at the addresses listed in the Notice and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

a.   the name of the Litigation: *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.);

b.   the full name of the objector and full name, address, email address, and telephone number of the person acting on its behalf;

c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.   whether the objection applies only to the objector, a specific subset of the Settlement Class, or the entire Settlement Class;

e.   all grounds for the objection stated, with specificity, accompanied by any legal support for the objection;

f.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorney's fees, costs, and expenses, or the application for Service Awards;

g.   the identity of all representatives (including counsel representing the objector) who will appear at the Final Approval Hearing;

h.   the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

i.  if the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include: (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate;

j.  any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

k.  a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

l.  a statement indicating whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

m.  the objector (or the objector's attorney's) signature on the written objection.

7.6.  In addition, any Settlement Class Member that objects to the proposed Settlement must make itself available to be deposed regarding the grounds for its objection and must provide, along with its objection, the dates when the objector will be available to be deposed during the period from when the objection is filed through the date seven days before the Final Approval Hearing.

7.7.  Any Settlement Class Member who both objects to the Settlement Agreement and opts-out will be deemed to have opted-out and the objection shall be deemed null and void.

7.8.  The Mail Notice shall be sent or issued by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable

7.9.  At least 35 days before the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Equifax with one or more affidavits confirming that the Notice Program was completed in accordance with the Parties' instructions and the Court's approval.  Class Counsel shall file such affidavit(s) with the Court as an exhibit to, or in conjunction with, Settlement Class Representatives' motion for Final Approval of the Settlement.

7.10.   In the event that Effective Date does not occur, Equifax will not be entitled to a return of any of the monies it has paid to the Settlement Administrator for the Costs of Settlement Administration incurred up to that point. Class Counsel and the Settlement Administrator will take reasonable steps to ensure that no further Costs of Settlement Administration are incurred thereafter without Equifax's express written approval.

## Final Approval Order and Judgment

8.1.   Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur, which shall be sufficiently far in advance to allow for the deadlines contemplated by this Settlement.  The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C. § 1715. By no later than 30 days prior to the Final Approval Hearing, Class Counsel shall file a motion for final approval of the Settlement. Class Counsel shall move for Court approval of attorneys' fees, costs, and expenses and for Service Awards no later than 14 days prior to the Objection Deadline. Objectors, if any, shall file any response to Class Counsel's motions no later than 17 days prior to the Final Approval Hearing. By no later than 10 days prior to the Final Approval Hearing, responses shall be filed, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards shall be filed. At the Final Approval Hearing, the Court will consider the motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel), who object to the Settlement and/or Class Counsel's Fee Application, costs, expenses, and/or Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in this Settlement.

8.2.   At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and Judgment granting Final Approval of the Settlement, and whether to approve Class Counsel's Application for Attorney's Fees, costs, expenses, and Service Awards.  The proposed Final Approval Order and Judgment that will be filed with the Final Approval Motion shall be in a form agreed upon by Class Counsel and Equifax as set forth in Exhibit 6 attached hereto.   Such proposed Final Approval Order and Judgment shall, among other things:

a.      determine that the Settlement is fair, adequate, and reasonable;

b.      finally certify the Settlement Class for settlement purposes only;

c.      determine that the Notice provided satisfied Rule 23 and due process requirements;

    d.      dismiss all claims in the Complaint and Litigation with prejudice;

    e.      bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment;

    f.      release and forever discharge Equifax and Defendants' Released Persons from the Released Claims and release Plaintiffs' Released Persons, as provided in this Settlement Agreement; and

    g.      reserve the Court's continuing and exclusive jurisdiction over Equifax and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Settlement in accordance with its terms.

## **Releases**

9.1.    As of the Effective Date, the Releasing Parties, each on behalf of itself and any predecessors, successors, or assigns, and any other entity purporting to claim through or on behalf of them directly or indirectly, shall automatically be deemed to have fully, completely, finally, irrevocably, and forever released and discharged Defendants' Released Persons of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown (including Unknown Claims), existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, administrative, statutory, or equitable, that are, were or could have been asserted in the Litigation or the Complaint, including, but not limited to, claims that result from, arise out of, are based upon, or relate to the Data Breach, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (a) Equifax's information security policies and practices; (b) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (c) Equifax's response to and notices about the Data Breach; (d) the fraudulent use of any Alerted on Payment Cards (e) the cancellation and reissuance of any Alerted on Payment Cards; and (f) any expenses incurred investigating, responding to, or mitigating potential damage from the theft or illegal use of Alerted on Payment Cards or the Data Breach, including but not limited to any claims related to alleged damage to the financial services "ecosystem" (the "Released Claims").

9.2.    For the avoidance of doubt, the Released Claims include, without limitation, any claims, causes of actions, remedies, or damages that were, or could have been, asserted in the Litigation and also include, without limitation:  any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States; causes of action under the common or civil laws of any

state in the United States, including, but not limited to, unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

9.3.   As of the Effective Date, Defendants' Released Persons will be deemed to have completely released and forever discharged the Releasing Parties and Plaintiffs' Released Persons from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits. For the avoidance of doubt, Defendants' Released Persons release, as set forth in this Paragraph, does not include entities that do not meet the definition of either Releasing Parties or Plaintiffs Released Persons.

9.4.   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including the Settlement Class Representatives, does not know or suspect to exist in its favor at the time of the release of Defendants' Released Persons that, if known by it, might have affected its settlement with, and release of, the Defendants' Released Persons, or might have affected its decision not to object to and/or to participate in this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Settlement Class Representatives expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, waived the provisions, rights, and benefits conferred by Cal. Civ. Code §1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. §28-1-1602; North Dakota Cent.

Code §9-13-02; and South Dakota Codified Laws §20-7-11), which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> *A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.*

(Emphasis added.) Settlement Class Members, including the Settlement Class Representatives, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Settlement Class Representatives expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

9.5.   The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

9.6.   For purposes of clarity, the releases described herein are not intended to, and shall not apply, to claims relating to the enforcement of this agreement.

9.7.   As of the Effective Date, Settlement Class Members shall be enjoined from prosecuting or otherwise pursuing whether directly or in any other capacity any claim they have released in this Settlement against any of Defendants' Released Persons or based on any actions taken by any of Defendants' Released Persons that are authorized or required by this Settlement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding or action asserting claims released by this Settlement

## Attorneys' Fees, Costs, Expenses and Service Award

10.1.   Service Awards. Equifax will pay costs of Court-approved Service Awards to each of the Financial Institution Plaintiffs, not to exceed $1,500 per Financial Institution Plaintiff. Equifax shall fund such payment directly to the Financial Institution Plaintiffs, care of Class Counsel, by wire transfer to Class Counsel's escrow account, within thirty (30) days of the Effective Date.

10.2.   Attorneys Fees' and Expenses of Litigation. Equifax will pay Court-approved Class Counsel attorneys' fees, costs, and expenses, in an amount not to exceed $2,000,000 in fees and $250,000 in costs and expenses. Equifax shall make such payment to Class Counsel, by wire transfer, within thirty (30) days of the Effective Date.

10.3.   Notwithstanding anything herein, no decision by the Court, or modification or reversal or appeal of any decision by the Court, that fails to approve, in whole or in part, the amounts of requested Service Awards and/or attorneys' fees, costs, and expenses will prevent the Settlement Agreement from becoming effective, nor will it be grounds for termination of this Settlement Agreement.  If the Court declines to approve, in whole or in part, the requested Service Award and/or attorneys' fees, costs, and expenses in the amount set forth above, or at all, the remaining provisions of this Settlement Agreement will remain in full force and effect.  The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees or costs or Service Awards.

10.4.   Neither Class Counsel's application for nor any individual's entitlement to a Service Award shall be conditioned in any way upon such individual's support for this Settlement.

10.5.   Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' counsel of record.

## Termination

11.1.   Equifax shall have the sole discretion to terminate the Settlement Agreement if Settlement Class Members representing a certain number of Alerted on Payment Cards or percentage of the Settlement Class elect to opt-out of the Settlement Class.  That number is separately agreed to by the Parties and will be submitted to the Court for *in camera* review if requested.  If Equifax elects to terminate the Settlement Agreement, it must notify Class Counsel that it intends to pursue that right pursuant to this provision, if any such right exists, no later than 35 days after the Opt-Out Deadline.

11.2.   If the requirements to terminate the Settlement Agreement set forth in Paragraph 11.1 are met and Equifax provides Class Counsel with notice of its intent to terminate the Settlement Agreement, Class Counsel will have 60 days from the date of such notice for the purposes of

communicating with any opt-outs to attempt to have such Settlement Class Members withdraw their opt-outs and remain in the Settlement Class.

11.3.  This Settlement Agreement may be terminated by either the Settlement Class Representatives or Equifax by serving on counsel for the opposing Party; and filing with the Court a written notice of termination within 14 days (or such longer time as may be agreed between Class Counsel and Equifax) after any of the following occurrences:

    a.    Class Counsel and Equifax mutually agree to termination before the Effective Date;

    b.    the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

    c.    an appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

    d.    the Court, or any reviewing appellate court, incorporates material terms or provisions into, deletes or strikes material terms or provisions from, or materially modifies, amends, or changes the proposed Preliminary Approval Order, Preliminary Approval Order, proposed Final Approval Order and Judgment, Final Approval Order and Judgment, or Settlement; or

    e.    the Effective Date does not occur.

11.4.  In the event of a termination, as provided for in the Settlement, the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement shall cease to be of any force and effect; and any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion; the Parties shall return to the *status quo ante* in the Litigation, as if the Parties had not entered into this Settlement. In such an event, the fact of this Settlement and that Defendants did not oppose certification of any class under the Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including all defenses to class certification.  Further, if Equifax elects to terminate the Settlement pursuant to Section 11.1, the parties agree to conduct good faith settlement discussions during a 30 day period following Equifax's notice of termination, including renewed mediation if feasible. If, after that 30 day period, a resolution is not reached, the case will go back into litigation.

## **No Admission of Liability**

12.1.   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

   a.   Shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Litigation or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

   b.   Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

   c.   Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

   d.   Shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

   e.   Shall not be construed as or received in evidence as an admission, concession or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Actions would not have exceeded the amounts provided for in this Agreement.

12.2.   Equifax disputes the claims alleged in the Litigation and does not, by this Settlement or otherwise, admit any liability or wrongdoing of any kind.  Equifax has agreed to enter into this Settlement solely to avoid the further expense, inconvenience, and distraction of

burdensome and protracted litigation and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

12.3.   Class Counsel and Settlement Class Representatives believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the Settlement, risks associated with the continued prosecution of this complex, costly, and time-consuming Litigation, and likelihood of success on the merits of the Litigation.  Class Counsel and Settlement Class Representatives have concluded that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

12.4.   The Parties understand and acknowledge that this Settlement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever.

12.5.   Neither the Settlement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is, may be deemed to be, or may be used as an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Defendants' Released Persons; or (b) is, may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of the Defendants' Released Persons in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## **Miscellaneous**

13.1.   <u>Confidentiality.</u> Prior to the filing of the motion for preliminary approval, the parties agree to keep the Settlement's terms and existence strictly confidential unless otherwise required by law or as reasonably determined by Defendants as necessary or appropriate in order to comply with financial reporting and disclosure obligations. .  The Limitations in this Section 13.1 shall not apply to: (1) communications between Plaintiffs' Counsel and their clients (including Settlement Class Members); (2) any SEC or other contractual or legal disclosure obligations that Equifax may have; (3) Equifax's communications with its employees; (4) the ability of the Parties to communicate with the payment card brands about the Settlement, in order to facilitate notice to the Settlement Class, as provided in the Settlement Agreement; (5) the ability of Equifax to notify its insurers about the Settlement; (6) the ability of the Parties to communicate with necessary third parties for the purpose of facilitating the administration of the Settlement.  The Parties may also disclose the Settlement's terms and existence to its insurers or auditors provided that they agree to maintain such information as confidential. Neither party shall make any oral or written

statement about the other party that is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation in connection with the Settlement.

13.2.   Escrow Account Bank. Class Counsel, subject to Equifax's approval—which shall not be unreasonably withheld—shall select the bank at which the Escrow Account shall be established, and all funds shall be held exclusively in an interest-bearing account or accounts where the principal will not decrease and is fully insured by the United States Government or an agency thereof, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Account Bank shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Equifax shall not bear any responsibility for or liability related to the investment of the Escrow Account by the Escrow Account Bank.

13.3.   Singular and Plurals. As used in this Settlement, all references to the plural shall also mean the singular and all references to the singular shall also mean the plural whenever the context so indicates.

13.4.   Binding Effect. This Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and Defendants' Released Persons.

13.5.   Settlement Class Member Communications. Equifax shall not substantively communicate with any Settlement Class Member during the pendency of the settlement approval process regarding the Settlement, including the decision to opt-out or the relief being awarded in the Settlement. For purposes of clarity, this provision restricts only communications regarding the Settlement; it does not purport to limit any other communications.

13.6.   Cooperation of Parties. The Parties to this Settlement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, defend Court approval, and do all things reasonably necessary to complete and effectuate the Settlement, as described herein. Nothing in this provision is intended to limit any Party's right to terminate the Settlement in accordance with its terms.

13.7.   Obligation to Meet and Confer. Before filing any motion in the Court raising a dispute arising out of, or related to, this Settlement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

13.8.   Entire Agreement. This Settlement (along with any exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

13.9.   Drafting. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentem*. This Agreement is a collaborative effort of the Parties and their attorneys.

13.10.   Modification or Amendment. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties who executed this Agreement or their Successors.

13.11.   Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

13.12.   Successors. This Agreement shall be binding upon and inure to the benefit of the Successors and assigns of the Parties thereto.

13.13.   Survival. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

13.14.   No Conflict Intended. Any inconsistency between the headings used in this Settlement and the text of the paragraphs of this Settlement shall be resolved in favor of the text.

13.15.   Governing Law. The Settlement shall be construed in accordance with, and be governed by, the laws of the state of Georgia, without regard to the principles thereof regarding choice of law.

13.16.   Counterparts. This Settlement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

13.17.   Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Settlement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and Settlement Administration.  As part of its agreement to render services in connection

with this Settlement Agreement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

13.18. <u>Exhibits</u>. The Exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

13.19. <u>Notices.</u> All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: 212-223-6444
jguglielmo@scott-scott.com

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-253-6307
glynch@carlsonlynch.com

All notices to Equifax provided for herein, shall be sent by overnight mail and email to:

David L. Balser
Phyllis B. Sumner
S. Stewart Haskins II
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: 404.572.4600
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

13.20.  <u>Authority.</u> Any person executing this Settlement in a representative capacity represents and warrants that he or she is fully authorized  to do so and to bind the Party on whose behalf he or she signs this Settlement to all of the terms and provisions of this Settlement.

13.21.  <u>Arms' Length Negotiation.</u> The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

DATED: May 15, 2020

_____
Class Counsel on behalf of Association Plaintiffs,
and the Settlement Class Representatives

_____
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: (212) 223-6444

_____
Gary F. Lynch
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel: (412) 253-6307

*Financial Institution Plaintiffs' Co-Lead Counsel*

Craig A. Gillen
**GILLEN WITHERS & LAKE, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, GA 30305

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327

*Financial Institution Plaintiffs' Co-Liaison
Counsel*

Arthur M. Murray

_____
Representative of Equifax

_____
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com

*Counsel for Equifax Inc.*

**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue Suite 2800 Minneapolis, MN

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, GA  30305

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, MN 55401

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

*Financial Institution Plaintiffs' Steering*
*Committee*

# Exhibit 1 to Settlement Agreement

Claims Administration and Distribution Plan

## CLAIMS ADMINISTRATION AND DISTRIBUTION PLAN

The provisions below are subject to the terms and definitions set forth in the Settlement Agreement and Release (the "Agreement") filed with the Court in the Financial Institutions track of the litigation styled *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.) (the "Litigation"). Terms used throughout this Claims Administration and Distribution Plan (the "Plan") shall have the same meaning as in the Agreement. To the extent any provisions in this Plan are inconsistent with the Agreement, those terms in the Agreement control.  The Court overseeing the Litigation shall have the ultimate oversight and approval of this Plan.

I.      <u>Claims Period</u>. The Claims Period will run for 180 days after the Notice Deadline.

II.     <u>Claims Process</u>. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically through the Settlement Website or by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked before midnight on the final day of the Claims Period.  All Claims Forms must be submitted during the Claims Period and in the manner set forth in the Agreement and this Plan.

   A.   The Settlement Administrator will mail copies of the Claim Forms and Notice to Settlement Class Members. Settlement Class Members submitting a claim must submit an accurate and complete Claims Form, signed under penalty of perjury, and supporting documentation as needed, to the Settlement Administrator.

   B.   In its discretion, to be reasonably exercised, the Settlement Administrator will review, determine the validity of, and process all claims submitted by Settlement Class Members. The Settlement Administrator may require supplementation of a completed Claim Form or additional information needed to validate or audit a claim. To the extent that a Settlement Class Member fails to provide any supplementation or additional information if requested, the Settlement Administrator may determine that the Settlement Class Member failed to submit a valid claim and therefore reject that claim. Subject to the appeal rights set forth herein, the decision of the Settlement Administrator with respect to the validity of a claim shall be final.

C.    The Settlement Administrator will process valid claims of Settlement Class Members and distribute payments after the Effective Date.

III.    <u>Fixed Payment Claims</u>. A Settlement Class Member can seek a fixed payment based on the number of Alerted on Payment Cards that the Settlement Class Member issued. To be eligible to receive a Fixed Payment Award, a Settlement Class Member must submit a valid Claim Form stating the number of Alerted on Payment Cards issued by that Settlement Class Member. Settlement Class Members do not need to submit evidence of costs that they incurred in order to be eligible to receive a Fixed Payment Award. Each Settlement Class Member that submits a valid claim will be eligible for a payment in the amount of $4.50 per Alerted on Payment Card issued by such Settlement Class Member ("Fixed Payment Award"). The Settlement Administrator, in its discretion to be reasonably exercised, will evaluate claims submitted for Fixed Payment Awards to determine: a) whether the claimant is a Settlement Class Member and submitted a complete and accurate Claim Form; and b) whether the claimant issued the number of Alerted on Payment Cards for which claimant seeks a Fixed Payment Award, based on a comparison of the information submitted and information provided by Class Counsel pursuant to Section 6.3 of the Agreement.

IV.    <u>Documented Out-of-Pocket Claims</u>. In addition to Fixed Payment Awards, Settlement Class Members may receive financial compensation for Documented Out-of-Pocket Claims, not to exceed $5,000 per Settlement Class Member, subject to a *pro rata* reduction as discussed below ("Documented Out-of-Pocket Award"). The Settlement Administrator shall: a) verify that each entity that submits a Documented Out-of-Pocket Claim is a Settlement Class Member and submitted a complete and accurate Claim Form, including required documentation; b) evaluate claims from Settlement Class Members to determine whether the Documented Out-of-Pocket Claims are of the type permitted; and c) review the Claim Form and any supporting documentation submitted to determine whether the Documented Out-of-Pocket Claims are unreimbursed out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Data Breach. Settlement Class Members with Documented Out-of-Pocket Claims must provide documentation supporting their claims, as outlined below. Documented Out-of-Pocket Awards are available to compensate Settlement Class Members for the following types of costs:

A.   *Reimbursement for Fraudulent Activity on Alerted on Payment Cards*:

    1.   A Settlement Class Member may submit a claim for the amount of reimbursements made to its customers for fraudulent activity on Alerted on Payment Cards ("Card-Related Fraud Award") that occurred between July 6, 2017 and December 20, 2017 and that have not previously been reimbursed to the Settlement Class Member.

    2.   A claim for a Card-Related Fraud Award shall be supported by documentation that demonstrates that: (1) the fraudulent activity occurred on an Alerted on Payment Card; (2) the fraudulent activity occurred between July 6, 2017 and December 20, 2017; (3) the Settlement Class Member making the claim reimbursed its customer within four months after being notified of the fraudulent activity; and (4) the fraudulent activity involved use of the payment card information that was stolen in the Data Breach. Satisfactory documentation may include, but is not limited to, correspondence with customers, correspondence with card brands regarding fraudulent activity on payment cards, payment card and/or bank statements, and police reports. No specific documentation shall be required, but the Settlement Administrator may reject any claims that, in the Settlement Administrator's discretion, are not substantiated with sufficient documentary evidence or are related to transactions that would require information not compromised in the Data Breach to complete.

B.   *Reimbursement for Other Direct Out-of-Pocket Expenses:* A Settlement Class Member may submit a claim for the following types of unreimbursed direct out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Data Breach:

    a.   Expenses actually incurred between May 13, 2017 and December 20, 2017 to reimburse customers for fraudulent banking activity that occurred as a direct result, and specifically because, of the Data Breach. ("Non-Card Related Fraud Expense").

    A claim for a Non-Card Related Fraud Expense shall be supported by the following documentation which will be

set forth on the Claims Form: (1) bank statements, paid invoices or other documentation showing the timing and amounts of reimbursements which are being claimed; (2) documentation showing that the reimbursements were due to the fraudulent use of the reimbursed customer's PII of the type that was impacted in the Data Breach (i.e., name, address, birth date, Social Security Number, and/or driver's license number) (such as a police report, investigative report, or correspondence with the customer who received the reimbursement); and (3) an attestation explaining the basis for the claimant's assertion that the fraud for which the claimant seeks reimbursement occurred directly as a result, and specifically because, of the Data Breach, and stating that claimant has not previously been reimbursed for the expenses.

b.    The following costs that the Settlement Class Member incurred as a direct result, and specifically because, of the Data Breach ("Breach-Related Expenditures"):

(1)    Costs actually incurred between September 7, 2017 and December 20, 2017 for customer authentication or fraud detection services procured and/or implemented by the Settlement Class Member directly as a result of, and specifically in response to, the Data Breach.

(2)    Any claim for a Breach-Related Expenditure shall be supported by the following documentation: (1) document/s showing amounts paid for the services and reflecting when the services were first purchased; (2) a description of the services for which reimbursement is being sought (such as a brochure or other descriptive materials from the service provider); and (3) an attestation explaining that the services were purchased directly as a result, and specifically because, of the Data Breach and were not purchased in response to any other data breach, regulatory requirement, or industry best practice.

V.   <u>Disputes and Appeals</u>.

A.   To the extent the Settlement Administrator determines a Fixed Payment Claim or Documented Out-of-Pocket Claim is deficient in whole or part, within 14 days after making such a determination or as soon as reasonably practicable, the Settlement Administrator shall notify the claimant, via email or mail to the address specified in the Claim Form, of the deficiency identified by the Settlement Administrator. The Settlement Administrator shall have the sole discretion and authority to determine whether a Fixed Payment Claim or Documented Out-of-Pocket Claim is deficient in whole or part but may consult with the Parties in making individual determinations. Within 14 days of such notice, the claimant shall respond to the Settlement Administrator by reply email by stating whether the claimant accepts the Settlement Administrator's determination regarding the claim, rejects the Settlement Administrator's determination regarding the claim, or seeks to cure the identified deficiencies. Any attempt to cure the identified deficiency, such as additional information, an amended Claim Form, or amended or additional documentation, must be submitted by the claimant along with its reply email.

1.   If claimant agrees with the Settlement Administrator's decision or fails to timely respond to the notice provided hereunder, then the Settlement Administrator's determination regarding the claim shall be deemed final.

2.   If the claimant rejects the Settlement Administrator's determination regarding the Disputed Claim or seeks to cure the identified deficiencies, the Settlement Administrator will have 10 days to reconsider the original determination, make a final determination, and communicate the final determination to the claimant by email (the "Final Determination"). The claimant will then have 10 days to reply back to the Settlement Administrator to accept or reject the final determination. If claimant fails to timely respond to the notice provided hereunder, then the claimant shall be deemed to have accepted the Settlement Administrator's final determination.

B.   If the claimant disputes a Final Determination, then the Settlement Administrator shall provide Class Counsel and Defendants' Counsel a

copy of the Settlement Class Member's dispute and Claim Form along with all documentation or other information submitted by the claimant.

    1.    Class Counsel and Defendants' Counsel will confer regarding the claim submission. If Class Counsel and Defendants' Counsel agree on approval or rejection of the claim, in whole or in part, then that determination shall be final.

    2.    If Class Counsel and Defendants' Counsel cannot agree on approval or rejection of the claim, in whole or part, the dispute will be submitted to the Court. The Court will have final, non-appealable decision-making authority.

VI.    <u>Settlement Website</u>. The Settlement Administrator will establish and maintain the Settlement Website which will contain the relevant Settlement documents, set forth the relevant deadlines relating to the Settlement, including any hearing date, in order to permit Settlement Class Members to obtain information about the Settlement Class Members' rights and options under the Settlement and submit claims during the Claims Period. The Settlement Website will:

VII.    Be available for informational purposes within 7 days after the Court's entry of the Preliminary Approval Order and for submission of claims on or before the Notice Deadline;

VIII.    Be maintained for at least 60 days after the Effective Date or until all funds are distributed from the Escrow Account, whichever is later; and

IX.    Include answers to frequently asked questions, including an email address and a toll-free number to contact the Settlement Administrator with any questions relating to the Settlement.

X.    Include hyperlinked access to the Settlement, Notice, Preliminary Approval Order, Claim Form, Complaint, and such other documents as Class Counsel and Equifax's counsel agree to post, or that the Court orders to be posted.

XI.    Allow Settlement Claims Members to submit claims electronically,

XII.    <u>Creation of Escrow Account</u>: Within 14 business days or as soon thereafter as is reasonably practicable after the Effective Date or, if after the Effective Date, the Claims Deadline, the Settlement Administrator shall create the Escrow Account, calculate the dollar amount of all Approved Claims, and inform

Equifax of that amount.  Within 20 business days of receiving notification from the Settlement Administrator of the dollar amount of Approved Claims, Equifax shall transfer funds to the Escrow Account to pay Approved Claims. These funds will be used solely for payment of Approved Claims and shall not exceed an amount equal to the aggregate amount of Approved Claims or $5,500,000, whichever is less.

XIII.   Payment Process for Approved Claims:

XIV.   Immediately following the creation of the Escrow Account and the transfer of funds described in Section XII, above, the Settlement Administrator shall begin to process payments for Approved Claims.

XV.   Within thirty (30) days of the Funds Transfer Date, the Settlement Administrator shall mail a check for the amount of any Approved Claims to the address provided by the Settlement Class Member in the Claim Form or to the Settlement Class Member's preferred address if updated with the Claims Administrator. If a check is returned as undeliverable with forwarding address information, the Settlement Administrator shall re-mail the check to the updated address as indicated.  For any checks that are returned undeliverable without forwarding address information, the Settlement Administrator will make reasonable efforts to re-deliver the check, including verifying if an updated address or contact person is available, and by attempting to contact the Settlement Class Member in order to obtain an updated address or contact person.

XVI.   Any check will include its expiration date, if applicable, and the Settlement Class Member's name. The Settlement Administrator will inform the Settlement Class Member that the check is for the "Equifax Financial Institution Data Breach Settlement." Checks not cashed within 90 days shall no longer be valid.

XVII.   After all appeals have been resolved pursuant to Section V, above, and all issued checks issued under this Section XV have expired, any funds remaining in the Escrow Account shall be donated to a charitable organization selected by Class Counsel and approved by the Court.

XVIII.   <u>Pro-Rata Reductions</u>: In the event that Approved Claims exceed $5,500,000, Approved Claims shall be paid as follows: (1) all Fixed Payment Claims shall be paid before any Documented Out-of-Pocket Claims are paid; (2) each Settlement Class Member that submits a Documented Out-of-Pocket Claim

will be paid a pro rata share of the funds remaining in the Escrow Account after payment of the Fixed Payment claims, so that each Settlement Class Member will receive a percentage of its Approved Documented Out-of-Pocket Award equal to the amount of funds remaining the Escrow Account divided by the total amount of Document Out-of-Pocket Awards that have been Approved for payment.

# Exhibit 2 to Settlement Agreement

Long Form Notice

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

**If your financial institution issued one or more payment cards identified as having been at risk as a result of the data breach that Equifax announced in 2017, it could get a payment from a class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

***Your financial institution's legal rights are affected whether you act or don't act.  Read this notice carefully.***

- A settlement has been proposed to resolve lawsuits against Equifax Inc. and Equifax Information Services LLC ("Equifax") brought by financial institutions and associations as a result of a third-party criminal cyberattack on Equifax, which was announced by the company in 2017 and affected payment cards belonging to approximately 209,000 consumers (the "Data Breach").

- The lawsuits, referred to collectively as the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.), assert claims on behalf of a class of financial institutions related to the Data Breach and Equifax's data security practices.  These claims include alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and seek injunctive and declaratory relief.  Equifax denies these allegations, any wrongdoing, and that it is liable in any amount to the financial institutions.

- Under the Settlement, Equifax will pay, on a claims-made basis, up to $5.5 million into an escrow account out of which the Settlement Administrator will make payments to Settlement Class Members who timely submit valid claims. Two types of claims may be made: "Fixed Payment Claims" and "Documented Out-of-Pocket Claims." A Settlement Class Member may make one or both types of Claims. The different types of Claims are explained later in this notice.

- In addition, Equifax has agreed to adopt and/or maintain certain practices related to its data security and to pay separately the costs of notice, settlement administration, and, if approved by the Court, up to $2 million in fees and $250,000 in costs and expenses to attorneys for the Settlement Class. In addition, if approved by the Court, Equifax will pay service awards of $1,500 to each class representative.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | If eligible, your financial institution will receive a cash payment.  This is the only way to get compensation from the Settlement. |
| **EXCLUDE YOUR FINANCIAL INSTITUTION** | If you ask to be excluded, you will not receive a cash payment, but you may be able to file your own lawsuit against Equifax for the same claims.  This is the only option that leaves your financial institution the right to file its own lawsuit against Equifax and/or Defendants' Released Persons (defined in the Settlement Agreement) for the claims that are being resolved by the Settlement.  In order to be effective, a request to be excluded from the Settlement must include all information required by the Settlement. |
| **OBJECT** | Your financial institution can remain in the Settlement Class and file an objection telling the Court why you do not like the Settlement.  If your objections are overruled, your financial institution will be bound by the Settlement. |
| **DO NOTHING** | If you do nothing, you will not receive any cash payment.  If you do nothing, you will also forfeit your right to sue or bring any claim against Equifax and/or Defendants' Released Persons related to the Data Breach. |

**Questions?  Call <mark>1-XXX-XXX-XXXX</mark> toll free, or visit [<mark>Website</mark>]**

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

**Basic Information**................................................................................................ **Page X**

1. Why did my financial institution get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**Who is Part of the Settlement** ........................................................................ **Page X**

5. How does a financial institution know if it is part of the settlement?
6. Are there exceptions to being included?
7. I am still not sure if my financial institution is included.

**The Settlement Benefits**.................................................................................. **Page X**

8. What does the settlement provide?
9. How much will my financial institution's payment be?

**How To Get a Payment – Submitting a Claim Form** ...................................... **Page X**

10. How can my financial institution get a payment?
11. When would my financial institution get its payment?
12. What is my financial institution giving up to get a payment or remain in the Settlement Class?

**Excluding Your Financial Institution from the Settlement** .......................... **Page X**

13. How can my financial institution opt out of the settlement?
14. If my financial institution doesn't opt out, can it sue Equifax for the same thing later?
15. If my financial institution excludes itself, can it get money from this settlement?

**The Lawyers and Financial Institutions Representing You** ......................... **Page X**

16. Does my financial institution have a lawyer in the case?
17. How will the lawyers and financial institutions representing the class be paid?

**Objecting to the Settlement**............................................................................ **Page X**

18. How does a financial institution tell the Court that it does not like the settlement?
19. What is the difference between objecting and excluding/opting out?

**The Court's Final Approval Hearing**.............................................................. **Page X**

20. When and where will the Court decide whether to approve the settlement?
21. Does my financial institution have to attend the hearing?

**If You Do Nothing** ........................................................................................... **Page X**

22. What happens if my financial institution does nothing at all?

**Getting More Information** ............................................................................... **Page X**

23. How do I get more information?

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

## BASIC INFORMATION

<table><tr><td></td></tr></table>

Your financial institution may have issued payment cards identified in one of the alerts (or a similar document) sent out by Visa, MasterCard, American Express, or Discover related to the Data Breach.

The Court authorized this notice because you have a right to know about your financial institution's rights under a proposed class action settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, a settlement administrator appointed by the Court will make the cash payments that the Settlement allows.

This package explains the lawsuits, the Settlement, your financial institution's rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Georgia, and the case is known as the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.). The financial institutions and associations who sued are called "Plaintiffs," and the companies they sued, Equifax Inc. and Equifax Information Services LLC, are the "Defendants."

<table><tr><td></td></tr></table>

The lawsuits referred to collectively as the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.), are related to the Data Breach and assert claims against Equifax for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief. The financial institutions seek to recover damages in the lawsuits for the expense of payment card reissuance, amounts paid to cover fraudulent payment card charges, and other costs allegedly incurred as a result of the Data Breach. Equifax denies the allegations, any wrongdoing, and that it is liable in any amount to the financial institutions. The Court has not decided whether Equifax has any legal liability.

<table><tr><td></td></tr></table>

In a class action, one or more entities called "class representatives" sue on behalf of themselves and other entities with similar claims. All of these entities together are the "class" or "class members." One court resolves the issues for all class members, except for those who exclude themselves from the settlement class.

<table><tr><td></td></tr></table>

The Court has not decided in favor of Plaintiffs or Equifax. Instead, both sides agreed to the Settlement. The Settlement is not an admission that Equifax did something wrong, but rather a compromise to end the lawsuits. By agreeing to settle, both sides avoid the costs, risks, and uncertainties of a trial and related appeals, while providing benefits to members of the Settlement Class. The Settlement Class Representatives and the attorneys for the Settlement Class think the Settlement is best for all class members.

## WHO IS PART OF THE SETTLEMENT

<table><tr><td></td></tr></table>

Your financial institution is a member of the Settlement Class and affected by the Settlement if:

- It is a financial institution in the United States (including its Territories and the District of Columbia); and

- It issued one or more "Alerted On Payment Card," which includes any payment card (including debit

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

and credit cards) that was identified as having been at risk as a result of the Data Breach in the following alerts or similar documents issued by Visa, MasterCard, Discover, or American Express: (i) in an alert in the MasterCard series ADC 004129-US-17 (e.g., ADC 004129-US-17-1, ADC 004129-US-17-2, ADC 004129-US-17-3); (ii) in an alert in the Visa series US-2017-0448-PA (e.g., US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in alert American Express Incident Number C1709012512; and (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action.

Specifically *excluded* from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and financial institutions who timely and validly request exclusion from the Settlement Class.

If your financial institution excludes itself from the Settlement, it is no longer part of the Settlement Class and will no longer be eligible to receive any of the Settlement benefits.  This process of excluding your financial institution is also referred to as "opting out" of the Settlement.

If you are still not sure whether your financial institution is included, you can ask for free help.  You can call 1-XXX-XXX-XXXX or visit [website] for more information.  Or you can fill out and return the Claim Form described in Question 10 to see if you qualify.

# THE SETTLEMENT BENEFITS

Under the Settlement, Equifax will fund, on a claims-made basis, a settlement of up to $5.5 million for Settlement Class Members who timely submit valid claims. Two types of Claims may be made: "Fixed Payment Claims," and "Documented Out-of-Pocket Claims." A Settlement Class Member may make one or both types of Claims. The two types of Claims are further explained in the next section.

In addition, Equifax has agreed to adopt and/or maintain certain practices related to its data security. If approved by the Court, Equifax will pay up to $2 million in fees and $250,000 in costs and expenses to attorneys for the Settlement Class. In addition, if approved by the Court, Equifax will pay service awards of $1,500 to each class representative. Costs of notice and settlement administration will also be paid by Equifax.

If your financial institution issued an Alerted on Payment Card and does not "opt out" of the Settlement, it may be eligible for a payment under the Settlement. If your financial institution files a timely and valid Claim, the amount your financial institution receives will depend on the type of Claim(s) filed and other variables. The two types of Claims are described below:

- **Fixed Payment Claims**: All Settlement Class Members who submit a valid Claim are eligible to receive a cash payment of $4.50 for each Alerted on Payment Card they issued. Class Members making these claims must identify the total number of their Alerted On Payment Cards on their Claim Form, but are not required to provide any other documentation of their losses.

- **Documented Out-of-Pocket Claims**: Settlement Class Members who submit a valid Claim for reimbursement of certain types of documented, unreimbursed out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Data Breach may receive up to $5,000 per Settlement Class Member.  The amount received may be subject to pro-rata reduction as discussed below. This type of Claim

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

4

must be supported with documentation. Documented Out-of-Pocket Claims can include claims for "Card-Related Fraud" and/or other types of direct, out-of-pocket expenses related to the Data Breach as described below. Claims are subject to review and approval by the court-appointed Settlement Administrator and there is no guarantee that a Documented Out-of-Pocket Claim will be approved.

o *Reimbursement for Fraudulent Activity on Alerted on Payment Cards*: A Settlement Class Member may submit a claim for the amount of reimbursements made to its customers for fraudulent activity on Alerted on Payment Cards ("Card-Related Fraud Award") that occurred between July 6, 2017 and December 20, 2017 and that have not previously been reimbursed to the Settlement Class Member.

- A claim for a Card-Related Fraud Award shall be supported by documentation that demonstrates that: (1) the fraudulent activity occurred on an Alerted on Payment Card; (2) the fraudulent activity occurred between July 6, 2017 and December 20, 2017; (3) the Settlement Class Member making the claim reimbursed its customer within four months after being notified of the fraudulent activity; and (4) the fraudulent activity involved use of the type of payment card information that was stolen in the Data Breach. Satisfactory documentation may include, but is not limited to, correspondence with customers, correspondence with card brands regarding fraudulent activity on payment cards, payment card and/or bank statements, and police reports. No specific documentation shall be required, but the Settlement Administrator may reject any claims that, in the Settlement Administrator's discretion, are not substantiated with sufficient documentary evidence or are related to transactions that would require information not compromised in the Data Breach to complete.

o *Reimbursement for Other Direct Out-of-Pocket Expenses:* A Settlement Class Member may submit a claim for the following types of unreimbursed direct out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Data Breach: (1) expenses actually incurred between May 13, 2017 and December 20, 2017 to reimburse customers for fraudulent banking activity that occurred as a direct result, and specifically because, of the Data Breach ("Non-Card Related Fraud Expense"); and (2) costs actually incurred between September 7, 2017 and December 20, 2017 for customer authentication or fraud detection services procured and/or implemented by the Settlement Class Member directly as a result of, and specifically in response to, the Data Breach ("Breach-Related Expenditures").

- A claim for a Non-Card Related Fraud Expense shall be supported by the following documentation which will be set forth on the Claims Form: (1) bank statements, paid invoices or other documentation showing the timing and amounts of reimbursements which are being claimed; (2) documentation showing that the reimbursements were due to the fraudulent use of the reimbursed customer's PII of the type that was impacted in the Data Breach (i.e., name, address, birth date, Social Security Number, and/or driver's license number) (such as a police report, investigative report, or correspondence with the customer who received the reimbursement); and (3) an attestation explaining the basis for the claimant's assertion that the fraud for which the claimant seeks reimbursement occurred directly as a result, and specifically because, of the Data Breach, and stating that claimant has not previously been reimbursed for the expenses.

- Any claim for a Breach-Related Expenditure shall be supported by the following documentation: (1) document/s showing amounts paid for the services and reflecting when the services were first purchased; (2) a description of the services for which reimbursement is being sought (such as a brochure or other descriptive materials from the service provider); and (3) an attestation explaining that the services were purchased directly as a result, and specifically because, of the Data Breach and were not purchased in response to any other data breach, regulatory requirement, or industry best practice.

Valid **Documented Out-of-Pocket Claims** will be paid after all valid **Fixed Payment Claims** have been paid.  As a result, Documented Out-of-Pocket Claims may be subject to a *pro rata* reduction if the total of all valid claims exceeds $5.5 million. Settlement Class Members may submit one or both types of Claims, if applicable, and may submit multiple types of Documented Out-of-Pocket Claims, if applicable, but no Settlement Class Member will receive more than $5,000 total for Documented Out-of-Pocket Claims. Expenses typically associated with cancellation and reissuance of Alerted On Cards, such as the costs of printing and mailing new cards, do not qualify as Documented Out-of-Pocket Claims. The Fixed Payment Claims provide compensation for any expenses associated with the cancellation and reissuance of payment cards.

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

## HOW TO GET A PAYMENT – SUBMITTING A CLAIM FORM

<table><tr><td></td></tr></table>

To qualify for a payment, you must complete and submit a valid Claim Form, which is included with this Notice.  You may also get this Claim Form on the internet at [Website].  All Settlement Class Members that wish to receive compensation must complete and submit a Claim Form and follow its instructions, including submitting supporting documentation as needed.

To properly complete and timely submit a Claim Form, you should read the instructions carefully, include all information required by the Claim Form, sign it, and either submit the signed Claim Form electronically through [Website] by _____, 2020 or mail it to the Settlement Administrator postmarked no later than _____, 2020 at the following address:

[Settlement Administrator Address Info]

The Settlement Administrator will review your claim to determine its validity and the amount of your financial institution's payment.

<table><tr><td></td></tr></table>

The Court will hold a hearing on _____ to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved and resolving them takes time, perhaps more than a year.  Payments to Settlement Class Members will be made after the Settlement is finally approved and any appeals or other required proceedings have been completed as set forth in the Settlement Agreement.  You may visit [Website] for updates on the progress of the Settlement.  Please be patient.

<table><tr><td></td></tr></table>

Unless you exclude your financial institution from the Settlement, your financial institution cannot sue, or be part of any other lawsuit against, Equifax or Defendants' Released Persons (as defined in the Settlement) relating to the Data Breach.  The specific claims your financial institution is giving up against Equifax and Defendants' Released Persons are described in the Settlement Agreement.  The terms of the release are described in Section 9 of the Settlement Agreement. Read it carefully. The Settlement Agreement is available at [Website].

If you have any questions, you can talk to the law firms listed in Question 16 for free, or you can, of course, talk to your own lawyer if you have questions about what this means.

If your financial institution wants to keep its rights to sue or continue to sue Equifax based on claims this Settlement resolves, your financial institution must take steps to exclude itself from the Settlement Class (*see* Questions 13-15).

## EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

<table><tr><td></td></tr></table>

To exclude your financial institution from the Settlement, or "opt out," you must send a letter by U.S. Mail that includes the information in the bullet points below.  If you fail to include this information, the notice of exclusion will be ineffective and the Settlement Class Member will be bound by the Settlement, including all releases.

- The name of this Litigation (the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.)).
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the document

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

requesting exclusion from the Settlement;

- The name, address, email address, telephone number, position, and signature of the individual who is acting on behalf of the Settlement Class Member; and
- The total number of Alerted on Payment Cards issued by your financial institution.

You must mail via first class postage prepaid United States mail the completed above-described letter, postmarked no later than _____, 2020, to each of the following addresses:

| Settlement Administrator | Settlement Class Counsel | Defense Counsel |
|---|---|---|
| Equifax Data Breach Settlement c/o _____ P.O. Box _____ _____ | Joseph P. Guglielmo SCOTT+SCOTT ATTORNEYS AT LAW LLP 230 Park Avenue, 17th Floor New York, NY 10169 Gary F. Lynch CARLSON LYNCH LLP 1133 Penn Avenue, 5th Floor Pittsburgh, PA 15222 | S. Stewart Haskins II KING & SPALDING LLP 1180 Peachtree Street, N.E. Atlanta, Georgia 30309 |

If you ask to be excluded, your financial institution will not get any payment as part of this Settlement, and you cannot object to this Settlement. Your financial institution will not be legally bound by anything that happens in the Settlement and related proceedings. Your financial institution may be able to sue (or continue to sue) Equifax in the future. If you object to the Settlement and seek to exclude your financial institution, you will be deemed to have excluded your financial institution.

No. Unless you exclude your financial institution from the Settlement, your financial institution gives up any right to sue Equifax and Defendants' Released Persons (as defined in the Settlement Agreement) for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately. Your financial institution must exclude itself from this Settlement to continue its own lawsuit. Remember, the exclusion deadline is _____, 2020.

No. If you exclude your financial institution, do not send in a Claim Form asking for a payment.

## THE LAWYERS AND FINANCIAL INSTITUTIONS REPRESENTING YOU

Yes. The Court appointed to represent your financial institution and other members of the Settlement Class the following law firms: Carlson Lynch, LLP, in Pittsburgh, Pennsylvania; and Scott+Scott Attorneys at Law, LLP, in New York, New York ("Class Counsel."). You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class Counsel joined with other law firms around the country to initiate the lawsuits, consolidate them into a single action, and prosecute the Financial Institutions Track on behalf of the Plaintiffs and Settlement Class Members. Class Counsel worked on a contingent basis, which means that they would receive a fee only if the lawsuits were successful. None of the lawyers has yet received any payment for their time or expenses. The lawyers intend to ask the Court to approve an award of $2 million, to be paid separately by Equifax, as attorneys' fees to compensate them for their time

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

and the financial risk that they undertook.  In addition, the lawyers intend to ask the Court to approve a payment of $250,000 from Equifax to reimburse Class Counsel for their out-of-pocket costs and expenses.  Equifax has agreed not to object to these requests.

The Settlement Class is represented by 21 named financial institutions (the "Settlement Class Representatives").  In addition to the benefits that the Settlement Class Representatives will receive as members of the Settlement Class— and subject to the approval of the Court—Equifax has agreed to pay service awards of $1,500 to each of the Settlement Class Representatives for the efforts that they have expended on behalf of the Settlement Class. The amount of the service awards approved by the Court will be paid separately by Equifax.

The Court will determine whether to approve the amount of fees and costs and expenses requested by Class Counsel and the proposed service awards to the Settlement Class Representatives at the Final Approval Hearing scheduled for _____, 2020.  Class Counsel will file an application for fees, expenses, and service awards no later than [14 days before the Opt-out and Objection Deadline].  The application will be available on the Settlement Website ([Website]) or you can request a copy by contacting the Settlement Administrator (*see* Question 23).

## OBJECTING TO THE SETTLEMENT

If your financial institution is a Settlement Class Member, you can object to the Settlement if you do not think it is fair, reasonable, or adequate.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  If you both object to the Settlement and seek to exclude your financial institution, your financial institution will be deemed to have excluded itself and your objection will be deemed null and void.

Your objection must be in writing, and must include:

- The name of this Litigation: *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.) ("Financial Institution Track");
- Your financial institution's full name, and the full name, address, email address, and telephone number of the person acting on its behalf;
- An explanation of the basis for why your financial institution is a Settlement Class Member;
- Whether the objection applies only to your financial institution, to a specific subset of the Settlement Class, or to the entire Settlement Class;
- All grounds for the objection stated with specificity, accompanied by any legal support for the objection;
- The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorney's fees, costs, and expenses, or the application for Service Awards;
- The identity of all representatives (including counsel representing the objector) who will appear at the Final Approval Hearing;
- A description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;
- ***All other information specified in the Preliminary Approval Order*** (available on the settlement website, [Website]), including but not limited to information relating to any objections you or your counsel have filed in other class action litigation and any agreements that relate to your objection; and
- Your signature on the written objection.

Any objection must be either filed electronically with the Court or mailed to the Clerk of the Court, Class Counsel, *and* Equifax's counsel at the addresses set forth below.  The objection must be electronically filed, or if mailed postmarked no later than _____, 2020

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

8

| Court | Settlement Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>USDC, Northern District of Georgia<br>Richard B. Russell Federal Bldg.<br>2211 United States Courthouse<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303-3309 | Joseph P. Guglielmo<br>SCOTT+SCOTT ATTORNEYS<br>AT LAW LLP<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br><br>Gary F. Lynch<br>CARLSON LYNCH LLP<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222 | S. Stewart Haskins II<br>KING & SPALDING LLP<br>1180 Peachtree Street, N.E.<br>Atlanta, Georgia 30309 |

In addition, any Settlement Class Member that objects to the proposed Settlement Agreement may be required to appear for deposition regarding the grounds for its objection, and must provide along with its objection the dates when the objector will be available to be deposed during the period from when the objection is filed through the date five days before the Final Approval Hearing.

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the benefits provided by the Settlement or other terms of the Settlement only if your financial institution stays in the Settlement Class. Excluding your financial institution or "opting out" is telling the Court that you don't want to be included in the Settlement Class. If your financial institution excludes itself, you have no basis to object to the Settlement and related releases because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing at _____ 2020, in Courtroom 2108 before Chief United States District Judge Thomas W. Thrash, Jr. of the United States District Court for the Northern District of Georgia, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, or at such other time, location, and venue as the Court may Order. This hearing date and time may be moved. Please refer to the settlement website ([Website]) for notice of any changes.

By no later than [14 days prior to Opt-out and Objection Deadline], Class Counsel shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards. Objectors, if any, shall file any response to Class Counsel's motions no later than 17 days prior to the Final Approval Hearing. By no later than 10 days prior to the Final Approval Hearing, responses shall be filed, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards shall be filed.

At the Final Approval Hearing, the Court will consider, among other things, whether the Settlement is fair, reasonable, and adequate; how much Plaintiffs' lawyers will receive as attorneys' fees and costs and expenses; and whether to approve service awards to the Settlement Class Representatives. If there are objections, the Court will consider them. The Court will listen to people at the hearing who file in advance a timely notice of their intention to appear (*see* Question 18). At or after the Final Approval Hearing, the Court will decide whether to approve the Settlement. There is no deadline by which the Court must make its decision.

No. Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. As long as you submitted your objection timely and in accordance with the requirements for objecting set out of the Settlement (*see* Question

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

18), the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

## IF YOU DO NOTHING

If your financial institution is a Settlement Class Member and does nothing, it will remain a part of the Settlement Class but will not get any payments from the Settlement.  And, unless your financial institution excludes itself, it will not be able to sue Equifax about the claims being resolved through this Settlement ever again.  See the Settlement Agreement for more details about the releases.

## GETTING MORE INFORMATION

This notice summarizes the Settlement.  More details are in the Settlement Agreement itself.  You can get a copy of the Settlement Agreement at ([Website]) or from the Settlement Administrator by calling toll-free 1-XXX-XXX-XXXX.

***Please do not contact the Court or Equifax with questions about the Settlement.***

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit [Website]**

# Exhibit 3 to Settlement Agreement

Short Form Notice

# LEGAL NOTICE

**If your financial institution issued one or more payment cards identified as having been at risk as a result of the data breach that Equifax announced in 2017, it could get a payment from a class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

**Your financial institution's legal rights are affected whether you act or don't act.  Read this notice carefully.**

A settlement has been proposed to resolve lawsuits brought against Equifax Inc. and Equifax Information Services LLC ("Equifax") by a putative class of financial institutions as a result of a third-party criminal cyberattack on Equifax, which was announced by the company in 2017 and affected payment cards belonging to approximately 209,000 consumers (the "Data Breach"). If your financial institution ("you") qualifies, you may send in a claim form to get benefits, or you can exclude yourself from the Settlement, or object to it. The United States District Court for the Northern District of Georgia authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the Settlement.

## Who Is Included?

You are a member of the Settlement Class and affected by the settlement if:
(1)  You are a financial institution in the United States (including its Territories and the District of Columbia); **and**
(2)  You issued one or more payment cards (including debit and credit cards) identified as having been at risk as a result of the Data Breach in an alert or similar document by Visa, MasterCard, Discover, or American Express ("Alerted on Card"). (See the Settlement Website, www.XXXXXXXXXX.com, for more details as to the payment cards that are included.)

## What Is This Case About?

The lawsuits, referred to collectively as the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.), are related to the Data Breach and assert claims against Equifax for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief.  The financial institutions seek to recover damages in the lawsuits for the expense of payment card reissuance, amounts paid to cover fraudulent payment card charges, and other costs allegedly incurred as a result of the Data Breach.  Equifax denies these allegations, any wrongdoing, and says that it did not do anything wrong.

## What Does the Settlement Provide?

Under the Settlement, Equifax will pay, on a claims-made basis, up to $5.5 million into an escrow account for payments to Settlement Class Members who timely submit valid claims. Two types of Claims may be made: "Fixed Payment Claims," and "Documented Out-of-Pocket Claims." A Settlement Class Member may make one or both types of Claims. For Fixed Payment Claims, eligible Settlement Class Members who submit a valid Claim will receive $4.50 per Alerted on Card. For Documented Out-of-Pocket Claims, Settlement Class Members may receive up to $5,000 if they file a valid Claim for reimbursement of certain out-of-pocket expenses incurred as a direct result of the Data Breach. Documented Out-of-Pocket Claims must be supported by documentation and may be reduced on a prorated basis depending on the amount of claims received. More information about the types of Claims and the information required to file them is available at the Settlement Website.

In addition, Equifax has agreed to adopt and/or maintain certain practices related to its data security. If approved by the Court, Equifax will pay up to $2 million in fees and $250,000 in expenses and costs to attorneys for the Settlement Class. In addition, if approved by the Court, Equifax will pay service awards of $1,500 to each class representative. Costs of settlement administration and notice will also be paid separately by Equifax.

## How Do You Ask for a Payment?

A detailed notice and Claim Form package contains everything you need.  Just call the number or visit the website below to get one.  To qualify for a payment, you must send in a complete and valid Claim Form, which can be submitted electronically or by mail.  Claim Forms must be submitted electronically, and if mailed postmarked, by **[Month 00, 2020]**.

## What Are Your Other Options?

If you do not want to be legally bound by the Settlement, you must exclude yourself by **[Month 00, 2020],** or you will not be able to sue, or continue to sue, Equifax or any other Defendants' Released Persons (as defined in the Settlement Agreement) for any of the claims resolved by the Settlement.  To exclude yourself, you must provide all required information.  If you exclude yourself, you cannot get money from this Settlement. If you stay in the Settlement Class but wish to object, you must do so by **[Month 00, 2020]**.  Details for excluding yourself or objecting to the Settlement can be found in the Settlement Agreement available on the Settlement Website.

The Court will hold a hearing in this case on **[Month 00, 2020]**, to consider whether to approve the Settlement.  At the hearing, the Court will also consider a request by the lawyers representing all Settlement Class Members for attorneys' fees, costs, and expenses for investigating the facts, litigating the case, and negotiating the Settlement, as well as for Service Awards to the Settlement Class Representatives for their time participating in the case.  You may ask to appear at the hearing, but you do not have to.

## Want More Information?

For more information, call toll free at 1-XXX-XXX-XXXX or visit the website at [Website].

**[Settlement Website Address]**

# Exhibit 4 to Settlement Agreement

Claim Form

COMPLETE AND SIGN THIS FORM AND SUBMIT ONLINE NO LATER THAN _____, 2020 at
[WEBSITE]
or
SUBMIT BY MAIL POSTMARKED BY ___, 2020 at
Equifax Financial Institution Data Breach Settlement, c/o_____, Settlement Administrator,

## INSTRUCTIONS – READ CAREFULLY

- Use this form if your financial institution is a Settlement Class Member that is entitled to make a claim under the Settlement. For more information about who is a Settlement Class Member and details about the Settlement, see [website].

- To make a claim, first, fill out the "Settlement Class Member Information" on the next page, regardless of the type of Claim you are making.

- After the Settlement Class Member Information section, this form has two parts. You should fill out Part I if your financial institution wants to make a "Fixed Payment Claim" and be eligible to receive a fixed payment of $4.50 per Alerted on Card. No documentation is needed for Part I, but you must provide the total number of Alerted on Payment Cards issued by your institution.

- You should fill out Part II if your financial institution wants to make a "Documented Out-of-Pocket Claim," and be eligible to receive up to $5,000 as reimbursement for certain types of expenses incurred directly as a result of, and specifically associated with, the Equifax Data Breach (subject to potential *pro rata* reduction depending on the amount of valid claims). To validly complete a Documented Out-of-Pocket Claim, you will need to provide documentation to support your claim, as further explained below. The claim is subject to review and validation by the Settlement Administrator and there is no guarantee that your Documented Out-of-Pocket Claim will be approved.

- Your institution may file just one or both types of Claim, but if you intend to file a claim in Part II, you must still complete Part I to verify that you are a Settlement Class Member.

- Please note that Settlement benefits will be distributed only after the Settlement is effective.

**Materials to Gather to Complete a Fixed Payment Claim (Part I):** The number of payment card accounts your financial institution issued that were identified as having been at risk as a result of the Data Breach in an alert (i) in the MasterCard series ADC 004129-US-17 (e.g., ADC 004129-US-17-1, ADC 004129-US-17-2, ADC 004129-US-17-3); (ii) in the Visa series US-2017-0448-PA (e.g., US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in the American Express Incident Number C1709012512; (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action.

**Materials to Gather to Complete a Documented Out-of-Pocket Claim (Part II):** First, gather the same information identified immediately above and complete Part I to verify that you are a Settlement Class Member. Then You will need to provide supporting documentation depending on the type of out-of-pocket expenses you seek reimbursement for. Please read the following carefully:

    1. If your institution made reimbursements to its customers/members for fraudulent activity on Alerted on Payment Cards that occurred between July 6, 2017, and December 20, 2017, you may make a claim for a **"Card-Related Fraud Award"** if you have not been previously reimbursed for that loss. In order for your claim to be considered, you must provide documentation that demonstrates:
        (1) the fraudulent activity occurred on an Alerted on Payment Card;
        (2) the fraudulent activity occurred between July 6, 2017 and December 20, 2017;
        (3) you reimbursed your customer/member within four months after being notified of the fraudulent activity; and

1

(4) the fraudulent activity involved use of the payment card information that was stolen in the Data Breach. Satisfactory documentation may include, but is not limited to, correspondence with customers, correspondence with card brands regarding fraudulent activity on payment cards, payment card and/or bank statements, and police reports.

2. If you incurred actual expenses between May 13, 2017 and December 20, 2017 to reimburse a customer/member for fraudulent banking activity that occurred as a direct result of, and specifically because of, the Equifax Data Breach, you may make a claim for a **"Non-Card Related Fraud Expense"** by providing the following documentation:

(1) bank statements, paid invoices or other documentation showing the timing and amounts of reimbursements which are being claimed;

(2) documentation showing that the reimbursements were due to the fraudulent use of the reimbursed customer's PII of the type that was impacted in the Data Breach (i.e., name, address, birth date, Social Security Number, and/or driver's license number) (such as a police report, investigative report, or correspondence with the customer who received the reimbursement); and

(3) an attestation explaining the basis for your assertion that the fraud for which the you seek reimbursement occurred directly as a result, and specifically because, of the Data Breach, and stating that you have not previously been reimbursed for the expenses.

3. If your institution incurred actual costs between September 7, 2017 and December 20, 2017 for customer/member authentication or fraud detection services you procured and/or implemented directly as a result of, and specifically in response to, the Equifax Data Breach, you may make a claim for a **"Breach-Related Expenditure."** To do so, provide the following documentation:

(1) document/s showing amounts paid for the services and reflecting when the services were first purchased;

(2) a description of the services for which reimbursement is being sought (such as a brochure or other descriptive materials from the service provider); and

(3) an attestation explaining that the services were purchased directly as a result, and specifically because, of the Data Breach and were not purchased in response to any other data breach, regulatory requirement, or industry best practice.

## ** ALL CLAIMANTS MUST COMPLETE THE SECTION BELOW **

## SETTLEMENT CLASS MEMBER INFORMATION

Name of Financial Institution / Settlement Class Member

Name of Person Filling Out This Form

Your Title in the Financial Institution

Mailing Address

City                                                      State      Zip Code

Daytime Phone

☐☐☐ — ☐☐☐ — ☐☐☐☐

**E-Mail Address (if provided, we will communicate primarily by email about your claim)**

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

# PART I

### FIXED PAYMENT CLAIM

<u>CERTIFICATION OF PAYMENT CARDS</u>:  Please complete all parts of the question below:

Is your financial institution the issuer of one or more payment cards that were identified in any of the categories of alerts or similar documents below?  (Check All Applicable Boxes Below.)

If you check "YES" for any category of alert(s) (or similar documents), indicate how many payment card accounts your financial institution issued that were identified in the referenced alert(s) or similar documents.  For purposes of completing this form, please note that a payment card number can have only one corresponding payment card account, even if your financial institution issued multiple payment cards bearing the card number.

| | |
|---|---|
| (a)  Visa alert(s) in the US-2017-0448-PA series: | ☐ YES    ☐ NO |
| Number of Issued Accounts Identified in These Alerts: | |
| (b)  MasterCard alert(s) in the ADC 004129-US-17 series: | ☐ YES    ☐ NO |
| Number of Issued Accounts Identified in These Alerts: | |
| (c)  Discover alert(s) for Equifax: | ☐ YES    ☐ NO |
| Number of Issued Accounts Identified in These Alerts / Documents: | |
| (d)  American Express Incident Number C1709012512: | ☐ YES    ☐ NO |
| Number of Issued Accounts Identified in These Alerts / Documents: | |

<span style="color:red">If you are unable to answer YES to any part of Question 1 then your financial institution is not a Settlement Class Member and is not eligible to participate in <u>any</u> part of this Settlement.  Please do not submit a form.</span>

<span style="color:red"><u>**SIGN THE CLAIM FORM ON THE LAST PAGE**</u></span>

# PART II

## DOCUMENTED OUT-OF-POCKET CLAIM

**PART II MUST BE COMPLETED ONLY IF YOU WANT TO MAKE A DOCUMENTED OUT-OF-POCKET CLAIM.  IF YOU ONLY WANT TO MAKE A FIXED PAYMENT CLAIM, YOU CAN SKIP THIS SECTION BUT YOU STILL NEED TO SIGN YOUR CLAIM FORM.**

You may list as many expenses as you can document. However, the maximum amount that a Settlement Class Member can receive for these Claims is $5,000. Depending on the amount of Claims received, your Claim may be reduced on a prorated basis.

| | |
|---|---|
| 1. Were you able to state in Part I that your institution issued at least one Alerted on Card?<br><br>**If the answer is no, your institution is not a Settlement Class Member. Please do not submit a claim form.** | ☐ YES      ☐ NO |
| 2. Did your institution reimburse any of its customers/members for fraudulent activity on Alerted on Payment Cards that occurred between July 6, 2017, and December 20, 2017, that was directly as a result of, and specifically associated with, the Equifax Data Breach and which has not previously been reimbursed to your institution?<br><br>If so, state the total amount you reimbursed to customers/members in the box.<br><br>You will need to provide documentation. Please refer to the Instructions regarding acceptable documentation for a **"Card-Related Fraud Award."** Attach the supporting documentation for your claim, including a document describing what you have attached for this claim. Clearly label the documentation (e.g., with a cover sheet) and keep it separate from documentation submitted for other forms of out-of-pocket costs. | ☐ YES      ☐ NO<br><br><br>_____ |
| 3. Did your institution incur actual expenses between May 13, 2017 and December 20, 2017 to reimburse any of its customers/members for fraudulent banking activity (not card-related) that occurred as a direct result of, and specifically because of, the Equifax Data Breach?<br><br>If so, state the amount you reimbursed to customers/members in the box.<br><br>You will need to provide documentation, including an attestation. Please refer to the Instructions regarding acceptable documentation for a **"Non-Card Related Fraud Expense."** Attach the supporting documentation for your claim, including a document describing what you have attached for this claim. Clearly label the documentation (e.g., with a cover sheet) and keep it separate from documentation submitted for other forms of expenses. | ☐ YES      ☐ NO<br><br><br>_____ |
| 4. Did your institution incur actual costs between September 7, 2017 and December 20, 2017 for customer authentication or fraud detection services you procured and/or implemented directly as a result of, and specifically in response to, the Equifax Data Breach?<br><br>If so, state the amount you spent in the box. | ☐ YES      ☐ NO |

You will need to provide documentation, including an attestation. Please refer to the Instructions regarding acceptable documentation for a **"Breach-Related Expenditure."** Attach the supporting documentation for your claim, including a document describing what you have attached for this claim. Clearly label the documentation (e.g., with a cover sheet) and keep it separate from documentation submitted for other forms of expenses.

## SIGN THE CLAIM FORM ON THE NEXT PAGE

## SIGN CLAIM FORM

By submitting this Claim Form, the above-named Settlement Class Member certifies that it is eligible to make a claim in this settlement and that the information provided in this claim form is true and correct.  The Duly Authorized Representative of the Settlement Class Member declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  The above-named Settlement Class Member understands that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from Settlement Class Member. The representative signing this form certifies that it has authority to submit the form on behalf of the above-named Settlement Class Member.

_____          _____
Signature of Duly Authorized Representative of Settlement Class Member          Date


_____          _____
Print Name          Title

## CLAIM SUBMISSION REMINDERS

- You may submit your claim by mail or through the website at [WEBSITE].

- Please keep a copy of this claim form if submitting by mail.

- If you are making a claim in Part II, please be sure to follow the Instructions and include the required types of documentation. Clearly label and describe the documentation (e.g., with a cover sheet), and group documentation separately for different types of expenses.

- Claims must be submitted through the website by _____, 2020 or mailed so they are postmarked, by _____, 2020.

# Exhibit 5 to Settlement Agreement

Proposed Preliminary Approval Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| _____ | )   MDL Docket No. 2800 |
| In re: Equifax, Inc. Customer | )   Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation | ) |
|  | )   This document relates to: |
|  | ) |
|  | )   FINANCIAL INSTITUTIONS TRACK |
| _____ | ) |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter is before the Court on Plaintiffs' Unopposed Motion for

Preliminary Approval of the Settlement between Financial Institution Plaintiffs, for

themselves and on behalf of the Settlement Class, and the Association Plaintiffs

(collectively, "Plaintiffs"), and the Defendants Equifax Inc. and Equifax Information

Services LLC (collectively, "Defendants" or "Equifax") for consideration of

whether the Settlement reached by the parties should be preliminarily approved, the

proposed Settlement Class preliminarily certified, and the proposed plan for

notifying the Settlement Class approved.  Having reviewed the proposed Settlement,

together with its exhibits, and based upon the relevant papers and all prior

proceedings in this matter, the Court has determined the proposed Settlement

satisfies the criteria for preliminary approval, the proposed Settlement Class is likely

to be certified for settlement purposes, and the proposed notice plan is approved.[1]

Accordingly, good cause appearing in the record, Plaintiffs' Motion is GRANTED,

and **IT IS HEREBY ORDERED THAT**:

## Provisional Certification of the Settlement Class

(1)    The Court finds that it is likely to certify the following Settlement

Class:

> All Financial Institutions in the United States (including its Territories and the District of Columbia) that issued Alerted On Payment Cards which means any payment card (including debit or credit cards) that was identified as having been at risk as a result of the Data Breach in the following alerts or documents issued by Visa, MasterCard, Discover, or American Express: (i) in an alert in the MasterCard series ADC 004129-US-17 (e.g., ADC 004129-US-17-1, ADC 004129-US-17-2, ADC 004129-US-17-3); (ii) in an alert in the Visa series US-2017-0448-PA (e.g., US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in alert American Express Incident Number C1709012512; and (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action.

> Excluded from the class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and Financial Institutions who timely and validly request exclusion from the Settlement Class.

This Settlement Class is provisionally certified for purposes of settlement only.

---

[1]    Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement.

(2)   The Court determines that for settlement purposes the proposed Settlement Class likely meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representatives are typical of absent class members; that the class representatives will fairly and adequately protect the interests of the class as they have no interests antagonistic to or in conflict with the class and have retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

(3)   The Financial Institution Plaintiffs are designated and appointed as the Settlement Class Representatives.

(4)   The following lawyers, who were previously appointed by the Court as interim Co-Lead Counsel, are designated as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Joseph P. Guglielmo of Scott+Scott Attorneys at Law, LLP; Gary F. Lynch of Carlson Lynch, LLP.  The Court finds that these lawyers are experienced and will adequately protect the interests of the Settlement Class.

## Preliminary Approval of the Proposed Settlement

(5)   Upon preliminary review as required under Rule 23(e)(2), the Court finds it will likely be able to approve the proposed settlement, that the agreement appears to

be fair, reasonable, and adequate, and that it warrants issuance of notice to the Settlement Class.  Accordingly, the proposed Settlement is preliminarily approved.

## **Final Approval Hearing**

(6)    A Final Approval Hearing shall take place before the Court on _____, 2020 at ____ a.m./p.m. in Courtroom 9C before in Courtroom 2108 before Chief United States District Judge Thomas W. Thrash, Jr. of the United States District Court for the Northern District of Georgia, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, to determine, among other things, whether: (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and, in accordance with the Settlement's terms, all claims in the Complaint and Litigation should be dismissed with prejudice; (c) Settlement Class Members should be bound by the releases set forth in the Settlement; (d) the proposed Final Approval Order and Judgment should be entered; (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved; and (f) the application for Service Awards to the Settlement Class Representatives should be approved.  Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(7)     Class Counsel shall submit their application for fees, costs, and expenses and the application for Service Awards at least 14 days before the Opt-out/Objection Deadline.  Objectors, if any, shall file any response to Class Counsel's motions no later than 17 days prior to the Final Approval Hearing.  By no later than 10 days prior to the Final Approval Hearing, responses shall be filed, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards shall be filed.

(8)     Any Settlement Class Member that has not timely and properly excluded itself from the Settlement Class in the manner described below, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Settlement Class Member that has elected to exclude itself from the Settlement Class shall be entitled to object or otherwise appear, and, further provided, that no Settlement Class Member shall be heard in opposition to the Settlement unless the Settlement Class Member complies with the requirements of this Order pertaining to objections, which are described below.

### Administration

(9)     Analytics Consulting, LLC ("Analytics") is appointed as the Settlement Administrator, with responsibility for Claims Administration, the Notice Program,

and all other obligations of the Claims Administrator as set forth in the Settlement. The Settlement Administrator's fees, as well as all other costs and expenses associated with notice and administration, will be paid by Equifax, as provided in the Settlement.

### Notice to the Class

(10)   The Notice Program set forth in the Settlement, including the forms of Notice and Claim Form attached as exhibits to the Settlement, satisfy the requirements of Federal Rule of Civil Procedure 23 and due process and thus are approved.  Non-material modifications to the exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement and to perform all other tasks that the Settlement requires.

(11)   The Court finds that the form, content, and method of giving notice to the Settlement Class as described in the Settlement and exhibits:  (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any

other legal requirements.  The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

### Exclusions from the Class

(12)   Any Settlement Class Member that wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude itself to the Settlement Administrator, Class Counsel, and Equifax's counsel at the addresses provided in the Notice, postmarked no later than _____ [90 days after the date of this Order] (the "Opt-Out Deadline") and sent via first class postage pre-paid United States mail.  The written notification must include the name of this Litigation (the "Financial Institution Track" in *In re: Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.); the full name, address, and telephone number of the Settlement Class Member; the name, address, email address, telephone number, position, and signature of the individual who is acting on behalf of the Settlement Class Member; the words "Request for Exclusion" at the top of the document or a statement in the body of the document requesting exclusion from the Settlement; and the total number of payment cards issued by the Settlement Class Member that were identified as having been at risk as a result of the Data Breach in any alerts or similar documents by Visa, MasterCard, Discover, and American Express.  If the Settlement Class Member fails to provide all of the

required information on or before the deadlines specified in the Settlement and fails to cure any deficiency within the time allowed in the Settlement, then its attempt to opt out shall be invalid and have no legal effect, and the Settlement Class Member shall be bound by the Settlement, including the releases, if finally approved.

(13)   All Settlement Class Members who submit valid and timely notices of their intent to be excluded from the Settlement shall not receive any benefits of or be bound by the terms of the Settlement.  Any Settlement Class Member that does not timely and validly exclude itself from the Settlement shall be bound by the terms of the Settlement.  If final judgment is entered, any Settlement Class Member that has not submitted a timely, valid written notice of exclusion from the Settlement (in accordance with the requirements of the Settlement) shall be bound by all subsequent proceedings, orders and judgments in this matter, the Settlement, including but not limited to the releases set forth in the Settlement, and the Final Approval Order and Judgment.

(14)   The Settlement Administrator shall provide the parties with copies of all opt-out notifications promptly upon receipt, and a final list of all that have timely and validly excluded themselves from the Settlement Class in accordance with the terms of the Settlement, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing.

## Objections to the Settlement

(15)   A Settlement Class Member that complies with the requirements of this Order may object to the Settlement, the request of Class Counsel for an award of attorneys' fees, costs, and expenses, and/or the request for Service Awards.

(16)   No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless the objection is (a) electronically filed with the Court by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Equifax's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, which shall be _____ [90 days after the date of this Order], as specified in the Notice. Objections shall not exceed twenty-five (25) pages.   For the objection to be considered by the Court, the objection shall set forth:

a. the name of the Litigation: *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.) ("Financial Institution Track");

b. the full name of the objector and full name, address, email address, and telephone number of the person acting on its behalf;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. whether the objection applies only to the objector, a specific subset of the Settlement Class, or the entire Settlement Class;

e.    all grounds for the objection stated, with specificity, accompanied by any legal support for the objection;

f.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorney's fees, costs, and expenses, or the application for Service Awards;

g.    the identity of all representatives (including counsel representing the objector) who will appear at the Final Approval Hearing;

h.    the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

i.    if the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include: (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate;

j.    any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

k.    a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a

summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

l.      a statement indicating whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

m.      the objector (or the objector's attorney's) signature on the written objection.

(17)   In addition, any Settlement Class Member that objects to the proposed Settlement must make itself available to be deposed regarding the grounds for its objection and must provide along with its objection the dates when the objector will be available to be deposed during the period from when the objection is filed through the date seven days before the Final Approval Hearing.

(18)   Any Settlement Class Member that fails to comply with the provisions in this Order will waive and forfeit any and all rights it may have to object, and shall be bound by all the terms of the Settlement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the releases in the Settlement, if finally approved.   Any Settlement Class Member who both objects to the Settlement and opts out will be deemed to have opted out and the objection shall be deemed null and void.

## Claims Process and Distribution Plan

(19)   The Settlement establishes a process for assessing and determining the validity and value of claims and a methodology for paying Settlement Class

Members that submit a timely, valid Claim Form. The Court preliminarily approves this process.

(20)   Settlement Class Members that qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form. If the Settlement is finally approved, all Settlement Class Members that qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

## <u>Termination of the Settlement and Use of this Order</u>

(21)   This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement. In such event, the Settlement shall become null and void and be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

(22)   If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against Equifax of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against any Settlement Class Representative or any other Settlement Class Member that its claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims it may have in this Litigation or in any other lawsuit.

## Stay of Proceedings

(23)   Except as necessary to effectuate this Order, this matter and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

## Continuance of Final Approval Hearing

(24)   The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

## Actions by Settlement Class Members

(25)   The Court stays and enjoins, pending Final Approval of the Settlement, any actions, lawsuits, or other proceedings brought by Settlement Class Members against Equifax related to the Data Breach.

## Summary of Deadlines

(26)   The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.  Deadlines arising under the Settlement and this Order include but are not limited to the following:

- Notice Deadline:  [30 days after entry of this Order]

- Objection and Opt-Out Deadline:  [90 days after entry of this Order]

- Claims Deadline:  [210 days after entry of this Order]

- Final Approval Hearing:  [a date to be set by the Court no earlier than 120 days after entry of this order]

- Application for Attorneys' Fees, Expenses and Service Awards ("Fee Application"):  [76 days after entry of this Order]

- Motion for Final Approval of the Settlement ("Final Approval Motion"):  [30 days before the Final Approval Hearing]

- Objectors', if any, Response to Final Approval Motion and Fee Application [17 days before the Final Approval Hearing]

14

- Replies in Support of Final Approval and Fee Motion [10 days before the Final Approval Hearing]

IT IS SO ORDERED this _____ day of _____, 2020.

_____
Hon. Thomas W. Thrash, Jr.
Chief U.S. District Judge

# Exhibit 6 to Settlement Agreement

Proposed Final Approval Order and Judgment

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| ———————————————— | ) MDL Docket No. 2800 |
| In re: Equifax, Inc. Customer | ) Case No.: 1:17-md-2800-TWT |
| Data Security Breach Litigation | ) |
|  | ) This document relates to: |
|  | ) |
|  | ) FINANCIAL INSTITUTIONS TRACK |
| ———————————————— | ) |

## [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

On _____ **[DATE]**, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") (Doc. _____) of the Settlement between the Financial Institution Plaintiffs, on their own behalf and on behalf of the Settlement Class, and the Association Plaintiffs (collectively, "Plaintiffs"), and the Defendants Equifax Inc. and Equifax Information Services LLC (collectively, "Defendants" or "Equifax"), as memorialized in Exhibit __ (Doc. __) to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;[1]

On _____ **[DATE]**, pursuant to the notice requirements set forth in the Settlement and in the Preliminary Approval Order, the Settlement Class was apprised of the nature and pendency of the Litigation, the terms of the Settlement, and their rights to request exclusion, object, and/or appear at the final approval hearing;

---

[1]  The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement except as may otherwise be indicated.

On _____ **[DATE]**, Plaintiffs filed their Motion for Final Approval of the Class Action Settlement ("Final Approval Motion") and accompanying Memorandum of Law and supporting exhibits, and Class Counsel filed their Application for Attorneys' Fees, Expenses and Service Awards and accompanying Memorandum of Law and supporting exhibits ("Fee Application");

On _____ **[DATE]**, the Court held a final approval hearing to determine, inter alia: (1) whether the Settlement is fair, reasonable, and adequate; and (2) whether judgment should be entered dismissing all claims in the Complaint with prejudice. Prior to the final approval hearing, Class Counsel filed a declaration from the Settlement Administrator confirming that the Notice Program was completed in accordance with the Parties' instructions and the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the final approval hearing in support of or in opposition to the proposed Settlement, the award of attorneys' fees, costs, and expenses, and the payment of Service Awards.

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for Equifax, having reviewed all of the submissions presented with respect to the proposed Settlement, having determined that the Settlement is fair, adequate, and reasonable, having considered the application made by Class Counsel for attorneys' fees, costs, and expenses, and the application for

2

Service Awards, and having reviewed the materials in support thereof, and good cause appearing in the record and Plaintiffs' Final Approval Motion is **GRANTED**, and Class Counsel's Fee Application is **GRANTED**, and:

**IT IS HEREBY ORDERED THAT:**

1.     The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class. The Court also has personal jurisdiction over the Parties and the Settlement Class Members.

2.     The Settlement was entered into in good faith following arm's length negotiations and is non-collusive.

3.     The Settlement is, in all respects, fair, reasonable, and adequate, is in the best interests of the Settlement Class, and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays and uncertainties, including as to the outcome, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class Members. The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the Settlement.

4.     This Court grants final approval of the Settlement, including but not limited to the releases in the Settlement and the plans for distribution of the settlement relief.   The Court finds that the Settlement is in all respects fair,

reasonable, and in the best interest of the Settlement Class.  Therefore, all Settlement Class Members who have not opted out are bound by the Settlement and this Final Approval Order and Judgment.

5.     The Settlement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force of an Order of this Court.

6.     The Parties shall effectuate the Settlement in accordance with its terms.

## OBJECTIONS AND OPT-OUTS

7.     _____ objections were filed by Settlement Class Members. The Court has considered all objections and finds the objections do not counsel against Settlement approval, and the objections are hereby overruled in all respects.

8.     All persons and entities who have not objected to the Settlement in the manner provided in the Settlement are deemed to have waived any objections to the Settlement, including but not limited to by appeal, collateral attack, or otherwise.

9.     A list of those putative Settlement Class Members who have timely and validly elected to opt out of the Settlement and the Settlement Class in accordance with the requirements in the Settlement (the "Opt-Out Members") has been submitted to the Court in the Declaration of _____, filed in advance of the final approval hearing.  That list is attached as Exhibit A to this Order.  The persons and/or entities listed in Exhibit A are not bound by the Settlement, this Final Approval Order and Judgment, and are not entitled to any of the benefits under the

4

Settlement.  Opt-Out Members listed in Exhibit A shall be deemed not to be Releasing Parties.

## **CLASS CERTIFICATION**

10.    For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies for settlement purposes only the following Settlement Class:

> All Financial Institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (including debit or credit cards) identified in a card brand notice issued in connection with the data breach announced by Equifax on September 7, 2017 (the "Security Incident") (collectively, the "Alerted on Payment Cards"[2]).
>
> Excluded from the class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and Financial Institutions who timely and validly request exclusion from the Settlement Class.

11.    The Court determines that for settlement purposes the Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representatives are typical of absent class members; that the class representatives will fairly and adequately protect the interests of the class as they have no interests antagonistic to or in conflict with the class and have retained experienced and competent counsel to

---

[2]    As further defined in ¶ 2.1 of the Settlement Agreement.

prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy

12.     The Court grants final approval to the appointment of the Financial Institution Plaintiffs as the Settlement Class Representatives.  The Court concludes that the Settlement Class Representatives have fairly and adequately represented the Settlement Class and will continue to do so.

13.     The Court grants final approval to the appointment, pursuant to Rule 23(g), of Joseph P. Guglielmo of Scott+Scott Attorneys at Law, LLP and Gary F. Lynch of Carson Lynch, LLP as Class Counsel.  The Court concludes that Class Counsel have adequately represented the Settlement Class and will continue to do so.

## NOTICE TO THE SETTLEMENT CLASS

14.     The Court finds that the Notice Program, set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied Rule 23(c)(2), was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement, their right to exclude themselves, their right to object to the Settlement and to appear at the Final Approval Hearing, and satisfied the other requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable laws.

6

15.    The Court finds that Equifax has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS

16.    The Court has considered Class Counsel's Motion for attorneys' fees, costs, and expenses, and for Service Awards.

17.    Pursuant to Rule 23(h) and relevant Eleventh authority, the Court awards Class Counsel $2 million as an award of reasonable attorneys' fees, and $250,000 as an award of costs and expenses to be paid by Equifax in accordance with the Settlement. The Court finds this amount of fees, costs, and expenses to be fair and reasonable.  This award of attorneys' fees, costs, and expenses, shall be paid from the Settlement Fund in accordance with the Settlement.   This award of attorneys' fees, costs, and expenses is independent of the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.

18.    The Court grants Class Counsel's request for Service Awards and awards $1,500 to each Financial Institution Plaintiff: Army Aviation Center Federal Credit Union, ASI FCU, Bank of Louisiana, Consumers Cooperative Credit Union, Elements Financial Federal Credit Union, Firefly Credit Union, First Financial Credit Union, Halliburton Employees' Federal Credit Union, Heritage Federal Credit Union, Hudson River Community Credit Union, Peach State Federal Credit Union, SeaComm Federal Credit Union, Services Credit Union, Seven Seventeen Credit Union, Sky Federal Credit Union, State Employees Federal Credit Union (SEFCU),

Summit Credit Union, Suncoast Credit Union, The Summit Federal Credit Union, Washington Gas Light Federal Credit Union, and Wright-Patt Credit Union.

19.    The Court finds that this payment is justified by their service to the Settlement Class. These Service Awards shall be paid by Equifax in accordance with the Settlement.

## OTHER PROVISIONS

20.    The Parties to the Settlement shall carry out their respective obligations thereunder.

21.    Within the time period set forth in the Settlement, the relief provided for in the Settlement shall be made available to the Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions of the Settlement.

22.    As of the Effective Date, the Releasing Parties, each on behalf of itself—and any each of these entities' current and former parents, subsidiaries, affiliated companies, predecessors and divisions, as well as their respective heirs, assigns, beneficiaries, predecessors, officers, directors, agents, partnerships, partners, insurers, reinsurers and successors—shall automatically be deemed to have fully, completely, finally, irrevocably, and forever released and discharged Equifax and Defendants' Released Persons of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses,

and remedies, whether known or unknown (including Unknown Claims[3]), existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, administrative, statutory, or equitable, that are, were or could have been asserted in the Litigation or the Complaint, including, but not limited to, claims that result from, arise out of, are based upon, or relate to the Data Breach, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (a) Equifax's information security policies and practices; (b) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (c) Equifax's response to and notices about the Data Breach; (d) the fraudulent use of any Alerted on Payment Cards (e) the cancellation and reissuance of any Alerted on Payment Cards; and (f) any expenses incurred investigating, responding to, or mitigating potential damage from the theft or illegal use of Alerted on Payment Cards or the Data Breach, including but not limited to any claims related to alleged damage to the financial services "ecosystem" (the "Released Claims").

23.    The Released Claims include, without limitation, any claims, causes of actions, remedies, or damages that were, or could have been, asserted in the Litigation and also include, without limitation:  any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those

---

[3] As further defined in the Settlement Agreement.

arising under state or federal law of the United States; causes of action under the common or civil laws of any state in the United States, including, but not limited to, unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

24.     Settlement Class Members are deemed to have waived the provisions, rights, and benefits conferred by Cal. Civ. Code §1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. §28-1-1602; North Dakota Cent. Code §9-13-02; and South Dakota

Codified Laws §20-7-11), which is similar, comparable, or equivalent to Cal. Civ.

Code §1542, which provides:

> A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

25.    As of the Effective Date, Defendants' Released Persons will be deemed to have completely released and forever discharged the Releasing Parties and Plaintiffs' Released Persons from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits.

26.    The Settlement Class Representatives, Settlement Class Members, and Association Plaintiffs are enjoined from prosecuting any Released Claims in any proceeding against any of the Defendants' Released Persons or prosecuting any claim based on any actions taken by any of the Defendants' Released Persons that are authorized or required by this Settlement or by the Final Approval Order and

Judgment.  It is further agreed that the Settlement and/or this Final Approval Order and Judgment may be pleaded as a complete defense to any proceeding subject to this section.

27.    This Final Approval Order and Judgment and the Settlement, and all acts, statements, documents, and proceedings relating to the Settlement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Equifax of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Equifax or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the Litigation.

28.    This Final Approval Order and Judgment, the Settlement, and all acts, statements, documents, and proceedings relating to the Settlement shall not be offered, received, or admissible in evidence in any action or proceeding, or be used in any way as an admission, concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; ***provided, however***, that nothing in the foregoing, the Settlement, or this Final Approval Order and Judgment shall be interpreted to prohibit the use of the Settlement or this Final Approval Order and Judgment in a proceeding to consummate or enforce the Settlement or this Final Approval Order and Judgment (including all releases in the Settlement and Final Approval Order and

Judgment), or to defend against the assertion of any Released Claims in any other proceeding, or as otherwise required by law.

29.     The Settlement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims (and other prohibitions set forth in this Final Approval Order and Judgment) that are brought, initiated, or maintained by, or on behalf of, any Settlement Class Member who is not an Opt-Out Member or any other person subject to the provisions of this Final Approval Order and Judgment.

30.     The Court hereby dismisses the Litigation and Complaint and all claims therein on the merits and with prejudice, without fees or costs to any Party except as provided in this Final Approval Order and Judgment.

31.     Consistent with the Settlement, if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Approval Order and Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever; the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement, the Preliminary Approval Order, and this Final Approval Order and Judgment shall cease to be of any force and effect, and the Parties shall return to the status quo ante in the Litigation as if the Parties had not entered into the Settlement.  In such an event, the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement

had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).

32.   Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

33.   Without affecting the finality of this Final Approval Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of its terms at the request of any party and resolution of any disputes that may arise relating in any way to, arising from, the implementation of the Settlement or the implementation of this Final Order and Judgment.

**ENTERED:**

DATED: _____, 2020

By: _____

Hon. Thomas W. Thrash, Jr.

Chief United States District Judge

14