UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>CONSUMER ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

**CONSUMER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPEAL BOND AS TO OBJECTOR JOHN DAVIS**

This memorandum supports Consumer Plaintiffs' motion for an order requiring Objector/Appellant John W. Davis ("Davis") to post an appeal bond.

Plaintiffs are harmed and prejudiced by the appeal lodged by Davis and the other Objectors/Appellants ("Objectors"). Under the terms of the class settlement, no part of the $380.5 million in cash benefits, credit monitoring, or other significant non-monetary relief will be provided to class members until the appeals are resolved. Pursuant to Rule 7 of the Federal Rules of Appellate Procedure, and consistent with the Court's Order requiring the other Objectors to each post a bond in the amount of $2,000 (Doc. 1094), Plaintiffs move for an order requiring Davis to likewise post an appeal bond in the amount of $2,000, as security for the costs of appeal. The modest appeal bond sought here is factually and legally justified as to Davis, just as it was

1

as to the other Objectors, to ensure payment of the taxable costs Plaintiffs will incur.

## **FACTUAL BACKGROUND**

On July 22, 2019, Plaintiffs filed their motion to direct notice of the settlement of this action to the settlement class, informing the Court that the parties had entered into a settlement providing for a non-reversionary cash fund of $380.5 million to pay benefits to the class, including cash compensation, credit monitoring, and help with identity restoration. In addition, Equifax may pay up to another $125 million for certain out-of-pocket losses. Equifax must also spend a minimum of $1 billion for data security and related technology over five years and comply with comprehensive data security requirements. (Doc. 739). This Court granted Plaintiffs' motion the same day, and, in its order, set forth the requirements for any objections to final approval of the settlement. (Doc. 742). Of the approximately 147 million class members, only 388 directly objected to the settlement[1] which the Court recognized was a "miniscule number . . . in comparison to the class size." (Doc. 1029 at 26).

On December 19, 2019, the Court heard oral argument regarding the merits

---

[1] As the Court recognized, many of the objections were in the response to "incomplete or misleading media coverage, or at the behest of serial class action objectors, and often demonstrat[ed] a flawed understanding of the settlement terms." (Doc. 1029 at 25-26).

of the settlement and Plaintiffs' motion for fees, expenses, and service awards to the class representatives. Thereafter, in an order dated January 13, 2020 (and amended March 17, 2020), the Court finally approved the settlement and granted Plaintiffs' motion for fees, expenses, and service awards. (Docs. 956, 1029). In its order, the Court determined the settlement is fair, reasonable, and adequate and complies with Federal Rule of Civil Procedure 23. The Court also found the settlement to be the largest data breach settlement in history, providing class members "an unprecedented package of benefits, including but not limited to cash compensation for out-of-pocket losses fairly traceable to the breach of up to $20,000 per class member, reimbursement for time spent as a result of the breach, and 25% of the amount paid to Equifax by class members for identity restoration services in the year prior to the breach; ten years of high quality credit monitoring services having a retail value of $1,920 per class member; and seven years of identity restoration services without the need to file a claim," and "a consent order requiring [Equifax] to comply with comprehensive cybersecurity standards, spend at least $1 billion on data security and related technology, and have its compliance audited by independent experts." (*Id.* at 90).

The Court also thoroughly addressed the substance of each Objector's objections, including Davis's, and found that they each lacked merit, and in some

instances, were made in bad faith. (*Id.* at 37-82, 93-103). As relevant here, the Court found Davis's objection that Class Counsel's fee must be calculated using the lodestar method "frivolous" (Doc. 1029 at 93-94), and rejected his contention that "the longstanding practice of compensating class representatives for their service is prohibited by two Supreme Court cases from the 1800s," noting the argument had "been rejected out of hand because the cases were decided before Rule 23 and involve different facts and circumstances" (*id.* at 108).

Objectors Huang, Frank and Watkins, Andrews, Cochran, and West filed their respective Notices of Appeal on January 17, 2020 (Doc. 965 (Huang)); February 10, 2020 (Doc. 977 (Frank and Watkins); Doc. 985 (Andrews); Doc. 989 (Cochran)); and February 11, 2020 (Doc. 982 (West)).[2] On February 10, 2020, Davis filed a motion to alter or amend the judgment (Doc. 978), which the Court denied on March 17, 2020 (Doc. 1026). Davis filed his Notice of Appeal on April 14, 2020. (Doc. 1059).

On March 30, 2020, Plaintiffs filed a motion requesting that Objectors Huang, Frank and Watkins, Andrews, Cochran, and West each post appeal bonds securing Plaintiffs' taxable costs on appeal. (Doc. 1040). Plaintiffs stated that they

---

[2] Under Federal Rule of Appellate Procedure 4(a)(4)(B)(i), these Notices of Appeal took effect as of the Court's decisions on post-judgment motions on March 17, 2020. (Docs. 1026, 1027).

would move for Davis to post a bond once his post-judgment motion was resolved and he filed his Notice of Appeal. (*Id.* at 5 n.3). On May 11, 2020, this Court granted Plaintiffs' motion and ordered Objectors Huang, Frank and Watkins, Andrews, Cochran, and West to each post an appeal bond in the amount of $2,000. (Doc. 1094 at 10).

Under the terms of the settlement agreement, no money can be paid out or relief provided under the settlement until final resolution of any appeals, which in the ordinary course could take a year or more. The existence of this delay provides an opportunity for Objectors to continue to act against the settlement class's interests, spread further misinformation about the settlement, or attempt to leverage the appeal into a personal money-grab, allowing them to attempt to extract a payment in exchange for dismissal of their appeals so that the settlement funds can be distributed immediately. Accordingly, just as the Court ordered Objectors Huang, Frank and Watkins, Andrews, Cochran, and West to each post an appeal bond in the amount of $2,000, it should order Davis to do so.

## ARGUMENT

As this Court recognized in ordering the other Objectors to post a bond, "[c]ourts routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal and to protect against

the additional costs the class will incur caused by the delay of appeal." Doc. 1094 at 4 (citing *In re Checking Account Overdraft Litig.*, No. 1:08-CV-23323-JLK, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010); *Aboltin v. Jeunesse LLC*, No. 6:17-CV-1624-ORL-40TBS, 2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019)). The Court also recognized that "[r]equiring objectors to post bonds also serves to discourage frivolous appeals." *Id.* at 5 (citing *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizeable bond"); *In re Polyurethane*, 178 F. Supp. 3d at 638).

"Such bonds are authorized by Federal Rule of Appellate Procedure 7, which provides that, '[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.'" *Id.* (citing *In re Checking*, 2012 WL 456691, at *2; *Aboltin*, 2019 WL 1092789, at *3; *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006)).

The amount of the bond rests in the Court's discretion. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th Cir. 2005). "Among the costs a court can

consider in setting the amount of the bond are costs taxable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 and the increased administrative costs and loss of interest resulting from delay in consummating the settlement." Doc. 1094 at 5-6 (citing *In re Polyurethane*, 178 F. Supp. 3d at 642-45; *In re Checking*, 2012 WL 456691, at *2).

As explained below, the same considerations that led the Court to order Objectors Huang, Frank and Watkins, Andrews, Cochran, and West to each post an appeal bond in the amount of $2,000 apply to Davis as well. Thus, the Court should order Davis to post an appeal bond in the amount of $2,000 to secure the taxable costs Plaintiffs will incur on appeal.

**I.      OBJECTOR DAVIS SHOULD BE REQUIRED TO POST A BOND.**

When determining if an appeal bond is appropriate, "courts consider several factors, including: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful." Doc. 1094 at 6 (citing *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 212; *In re Checking*, 2012 WL 456691, at *2)). Each of these factors supports requiring Davis to post a bond in this case.

### A.   Davis Is Presumed to Be Able to Afford a Bond.

"Courts presume that an objector is financially able to post an appeal bond unless he or she demonstrates otherwise." *Id.* (citing *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Polyurethane*, 178 F. Supp. 3d at 641-42; *In re Cardizem*, 391 F.3d at 818)). Accordingly, Plaintiffs need not prove that Davis can afford to post the bond Plaintiffs have requested; the burden is on Davis to come forward with sufficient financial information to prove that a bond is beyond his means. In its Order requiring the other Objectors to each post a bond, the Court recognized that several of the Objectors "have already been identified by this court as serial objectors, who have extorted money from counsel in prior class actions to withdraw objections, and thus should not be heard now to claim they cannot afford to put up a bond to pursue their appeals." Doc. 1094 at 7. The Court likewise has identified Davis as a serial objector. (Doc. 1029 at 112 (stating "John Davis has a history of objecting in class actions and his involvement as an objector and class representative has been criticized by other courts.")). Accordingly, this factor supports requiring Davis to post a bond.

### B.   Davis's Appeal Lacks Merit.

"Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding whether to require a bond." Doc. 1094 at 7 (citing *Adsani v. Miller*, 139 F.3d 67, 79

(2d Cir. 1998); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL 456691, at *2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999)). "The less likely it is an appeal will succeed, the stronger the case for a requiring a bond." *Id.* Like the other serial objectors who were ordered to post a bond, this Court identified Davis as a serial objector who had "unsuccessfully asserted many of the same or similar objections in other class action settlements," and stated "that there is no substantial likelihood [his] objections will be successful on appeal." (Doc. 1029 at 110-114; *see also id.* at 93-94 (finding Davis's objection that Class Counsel's fee must be calculated using the lodestar method "frivolous"); *id.* at 108 (rejecting Davis's contention that "the longstanding practice of compensating class representatives for their service is prohibited by two Supreme Court cases from the 1800s," noting the argument had "been rejected out of hand because the cases were decided before Rule 23 and involve different facts and circumstances")). Thus, like the other Objectors who were ordered to post a bond, Davis's appeal lacks merit, and this factor supports requiring Davis to post a bond.

    **C.**    **Davis Has Acted in Bad Faith and Vexatiously.**

Like Objectors Frank, West (through his attorney Christopher Bandas), Cochran, and Andrews, the Court has already identified Davis as a "serial objector"

who has "unsuccessfully asserted many of the same or similar objections in other class action settlements," and noted "that [his] objections are not in the best interests of the class, that there is no substantial likelihood [his] objections will be successful on appeal, and that the class would be best served by final resolution of [his] objections as soon as practicable so that class members can begin to benefit from the settlement." (Doc. 1029 at 110). The Court found, *id.* at 112, that:

> John Davis has a history of objecting in class actions and his involvement as an objector and class representative has been criticized by other courts. In *Muransky v. Godiva Chocalatier*, 2016 WL 11601079, at *3 (S.D. Fla. Sept. 16, 2016), a federal magistrate judge denied an objection similar to the one filed here by Mr. Davis and, in so doing, labeled Davis and others as "professional objectors who threaten to delay resolution of class action cases unless they receive extra compensation." *See also Davis v. Apple Computer, Inc.*, 2005 WL 1926621, at *2 (Cal. Ct. App. Aug. 12, 2005) (noting that Davis and Steven Helfand, another serial objector who objected here, previously had "confidentially settled or attempted to confidentially settle putative class actions in return for payment of fees and other consideration directly to them" in apparent violation of court rules.).

As the Court recognized in requiring the other Objectors to post a bond, "[t]he problem posed by professional objectors is well known." (Doc. 1094 at 8 (citing *Newberg on Class Actions* § 15:37)). "The Federal Judicial Center has advised courts to '[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests.'" *Id.* (quoting Federal Judicial Center, *Managing Class Action Litigation: A Pocket*

10

*Guide for Judges*, at 15 (2d ed. 2009)); *see also id.* at 9 ("Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .") (quoting *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008)). As the Court recognized in requiring the other Objectors to each post a bond, this factor likewise supports requiring Davis to post a bond.

### D. There is Risk that Davis Will Not Pay Costs Absent a Bond.

In ordering the other Objectors to post a bond, this Court recognized that their residences outside the Court's physical jurisdiction created the "substantial risk that the costs of appeal will not be paid unless a bond is required." (Doc. 1094 at 9). Davis also resides outside the Court's jurisdiction. (*See* Doc. 1059 (Davis's Notice of Appeal showing Tampa, Florida address)). Thus, this factor likewise supports requiring Davis to post a bond.

## II. DAVIS SHOULD BE ORDERED TO POST A $2,000 BOND.

As the Court recognized in ordering the other Objectors to post a bond,

11

"Plaintiffs seek only a modest bond for the costs on appeal" (Doc. 1094 at 9). "Taxable costs listed in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 are customarily included in an appeal bond." (*Id.* at 9 (citing *In re Polyurethane*, 178 F. Supp. 3d at 642; Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (4th ed. 2008)). "These costs include, among others, preparing and transmitting the record, obtaining necessary transcripts, printing, and copying." (*Id.*). Plaintiffs here likewise request that Davis's bond be in an amount sufficient to cover their taxable costs on appeal. The Court ordered the other Objectors to post bonds in the amount of $2,000 each to cover these costs, and the Court should order Davis to do the same.

## CONCLUSION

For the reasons set forth above, Objector Davis should be ordered to post an appeal bond in the amount of $2,000.

Dated: May 19, 2020            Respectfully submitted,

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
Ga Bar No. 107744
**DOFFERMYRE SHIELDS**
**CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E.
Suite 1725
Atlanta, Georgia 30309
Tel. 404.881.8900
kcanfield@dsckd.com

*/s/ Amy E. Keller*
Amy E. Keller
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

*/s/ Norman E. Siegel*
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com

***Consumer Plaintiffs' Co-Lead Counsel***

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com

*Consumer Plaintiffs' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW
Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, New York 10119
Tel. 212.946.9453
atadler@tadlerlaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com

*Consumer Plaintiffs' Steering Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com

*Consumer Plaintiffs' State Court Coordinating Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law has been prepared in compliance with Local Rules 5.1 and 7.1.

<u>/s/ Norman E. Siegel</u>

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Counsel will be served by the ECF system.

I also certify that copies of the foregoing were served upon the following objector via electronic mail pursuant to agreement on May 19, 2020:

>Shiyang Huang
>defectivesettlement@gmail.com

I also certify that copies of the foregoing were served upon the following objectors via U.S. Mail (and electronic mail, where listed below) on May 19, 2020:

>George Willard Cochran, Jr.
>1981 Crossfield Circle
>Kent, Ohio 44240
>lawchrist@gmail.com
>
>Christopher Andrews
>P.O. Box 530394
>Livonia, Michigan 48153

>>*/s/ Norman E. Siegel*
>>Norman E. Siegel
>>*Attorney for Plaintiffs*