**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | )  MDL Docket No. 2800<br>)  Case No.: 1:17-md-2800-TWT<br>)<br>)  CONSUMER ACTIONS<br>)<br>) |

**RESPONSE IN OPPOSITION TO CONSUMER PLAINTIFFS'**
**MOTION FOR BOND**

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion to impose an appeal bond upon John Davis is meritless.

The motion is made under Fed. R. App. P. 7, but Plaintiffs do not set forth many

facts relevant to the concerns addressed by Rule 7: ensuring the payment of costs

enumerated in Fed. R. App. P. 39.  That is because the motion follows similar bond

motions made against earlier appellants, in which Plaintiffs improperly relied on

overruled or vacated cases, and sought bonds under Rule 8.  *See* DE1057: 9-13, 15-

22 (Frank and Watkins' Response in Opposition to Consumer Plaintiffs' Motion

for Appeal Bonds).[1]   In that bond motion, Plaintiffs sought $20,000 per appellant.

This Court awarded $2,000 per appellant.

Plaintiffs now seek a $2,000 bond against Mr. Davis, relying principally on

the inertia of the prior bond order.  Plaintiffs hardly bother to explain why they

believe Mr. Davis is unlikely to reimburse their minor recoverable costs should

they prevail on appeal.  Instead, Plaintiffs simply repeat the irrelevant ad hominem

attacks and theories upon which the original motion was based, though they are

irrelevant to determining whether to set a Rule 7 bond and how much it should be.

Moreover, all of the arguments appear to apply to objectors other than Davis, or to

no one at all:

> Thus Plaintiffs charge that Davis's appeal was filed entirely for delay,
> because [t]he existence of this delay provides an opportunity for
> Objectors to continue to act against the settlement class's interests,
> spread further misinformation about the settlement, or attempt to
> leverage the appeal into a personal money-grab, allowing them to
> attempt to extract a payment in exchange for dismissal of their appeals
> so that the settlement funds can be distributed immediately.

DE1110-1:5.

Plaintiffs "charge" is empty throat-clearing.  There is no evidence Davis has

ever attempted any of these things in this case.  If Davis manages to lower the fee

---

[1] For brevity, Davis adopts and incorporates by reference the arguments made in
the Frank and Watkins Response, DE1057, to the extent cited herein.

or service awards as a consequence of the appeal, returning money to the class fund, that is certainly in the interests of the settlement class.  Davis has not yet been accused of "spreading misinformation" about the Settlement; that appears to be an artifact earlier directed at another objector.  Plaintiffs' oft-repeated charge that Davis intends to take money to dismiss the appeal is not only unsupported, it is unsupportable.  Plaintiffs' counsel are no longer permitted to offer money to objectors to dismiss appeals without court approval; there is no evidence Mr. Davis has sought payment from anyone in this case; and Mr. Davis has consistently disavowed any intent to seek or accept any such payment.  DE1019:5-6, ¶8.

Moreover, rather than delay the settlement, Davis's objection was drafted to permit distribution of the settlement benefits in this case pending an appeal.  As explained below, Davis initially limited his objections to the attorneys' fees and service awards and, under the terms of the Settlement itself, an objection or appeal on those issues would not delay settlement implementation.  To the extent there are now due process and other constitutional issues that attend the appeal of the fee and service awards, they result from Plaintiffs' own overreaching attempts to insulate the attorneys' fees and incentive awards from criticism.  Had Plaintiffs refrained, Davis's same challenge to the fees and service awards would be before the Eleventh Circuit without any impediment to finality.  It is Plaintiffs and their

counsel who have jeopardized the interests of the class, and solely to protect their fees and service awards from appellate scrutiny.

Plaintiffs made two large errors in promoting the settlement. The first was exhibiting an overriding and aggressive interest in suppressing criticism. That created additional issues and complexity having nothing to do with the merits of objections, and which cannot have been intended to benefit the absent class. The second error was downplaying and ignoring Davis's legal arguments in favor of ad hominem attacks, leaving Plaintiffs to play catch-up on appeal when it turns out that the legal arguments are, in fact, quite serious. Plaintiffs' circular assertion that this Court found Mr. Davis to be a "professional objector," and so his appeal is necessarily meritless by definition, will not get far on review.

Plaintiffs' hastily recycled bond motion provides no support for any bond under the terms of Rule 7, much less a bond of $2,000. As a result, the requested bond is unsupported and arbitrary, and this Court should deny the motion outright.

## II.  THERE IS NO REALISTIC RISK OF NONPAYMENT JUSTIFYING IMPOSITION OF A BOND

The purpose of a bond is to ensure payment of costs that may become due, if there is a realistic risk they will go unpaid. In this case, Plaintiffs' sole argument is that Mr. Davis is a resident of Florida, rather than Georgia, such that he cannot be

compelled to pay costs.  That facile argument is inapplicable to Mr. Davis, who as an attorney has litigated many cases and appeals in federal and state courts across the country.  He is a member of the Eleventh Circuit bar, and would face discipline were he to ignore an order to pay costs.  *Cf.* DE1057:4 (Frank and Watkins' Opposition to Appeal Bond Motion) (noting lawyer Frank is a member of the Eleventh Circuit and would be bound to pay costs).  Notably, despite asserting that Mr. Davis has brought many objections, ***Plaintiffs are unable to cite a single case in which he did not pay appellate costs imposed upon him or his clients***.  That speaks volumes, and Plaintiffs' sole reliance on Davis's state of residence hardly raises a contrary inference that he will not pay costs.

Secondly, this Court has already imposed bonds on other appellants, who have posted them in the aggregate amount of $10,000.  Plaintiffs cannot, and do not, seriously contend that their compensable costs under Rule 7 will exceed that.  Indeed, as the Frank and Watkins objectors exhaustively documented, the potentially recoverable costs for defending all appeals are unlikely to exceed $1,000.  *See* DE1057:4-6 (citing and applying 11th Cir. 39-1; 11th Cir. Bill of Costs Form ("Costs Form"), 11th Cir. R. 31-3; 11th Cir. R. 30-1(d)); *see also id*. at 6-8 (discussing and collecting cases).

Finally, though there is no reason to believe Davis would not pay costs attributable to his appeal in the first place, Plaintiffs have not even bothered to quantify the actual recoverable incremental costs of the Davis appeal.  There is no valid data upon which this Court can set a bond, and Plaintiffs' failure is fatal to their bond motion. *See* 1057:13-15 (Frank and Watkins objectors arguing Plaintiffs provided no calculation or evidence of recoverable costs, precluding a bond). Under these circumstances, this Court has no basis on which to conclude that an additional bond is necessary to ensure payment of recoverable costs.  The bond would exist only as an administrative and financial impediment to the appeal, without any basis in protecting a legitimate interest of Plaintiffs.  The motion should be denied on this ground alone.

## III.  ANY DELAY IN SETTLEMENT DISTRIBUTION IS DIRECTLY ATTRIBUTABLE TO PLAINTIFFS AND THEIR COUNSEL

Plaintiffs argue they are "harmed and prejudiced" by Davis's appeal because the settlement's benefits cannot be distributed until the appeal is resolved. DE1110-1:1. They assert that the terms of the settlement agreement require that "no money can be paid out or relief provided under the settlement until final resolution of any appeals." DE1110-1:5. Plaintiffs are by now acutely aware the facts of this case do not justify an increase in the amount of a bond beyond

recoverable costs, based merely on delay in settlement distribution, under Eleventh Circuit precedent.  *See* DE1057:9-13.

But it is in any case false that "any" appeal would delay resolution of the settlement, and Davis's appeal was never intended to do so.  Appeals from the grant of attorneys' fees and service awards do not affect the finality of the settlement.  *See* Settlement Agreement, DE739-2:29 §11.4 (attorneys' fees); *id*. at 28, §10.3 (service awards).  Under the terms of the settlement agreement, an appeal from an objection limited to the fees and service awards should not delay effectuation of the settlement.  Davis's objection was overtly directed at challenging the attorneys' fees and incentive awards.  *See* DE879-1:6-20 (titled: "Objection to Plaintiffs' Request for Attorneys' Fees and Service Awards").  An appeal from his merits objections would not delay the settlement.

But Plaintiffs and their counsel had another agenda.  In crafting the settlement approval process, Plaintiffs proposed a host of requirements to objecting, and purported to require objectors represented by counsel to sit for deposition as a condition of objecting.[2]  Davis complied with the disclosure

---

[2] The Notice stated objectors must provide "A statement as to whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number, and four dates between the Objection Deadline and December 5, 2019 during

requirements in the settlement notice, but did not provide a deposition date as he was not represented by counsel.  DE879-1:1-3.  He warned that the burdensome objection prerequisites would unduly chill class member participation. *Id*.  He also pointed out that the rationale behind the requirements – exposing and foiling objectors who would extract payment to drop their opposition – was no longer valid in the wake of recent changes to Rule 23 expressly prohibiting the practice. *See* Reply in Support of Motion to Quash (in *John W. Davis v. Christy Adams, et al*., 1:19-cv-05805-TWT) DE7:2.

The justification for the objection requirements thus had no basis in reality. And as Davis anticipated, absent class members were generally confused by the requirements.  Some believed that they were subject to being deposed simply for objecting, whether or not they were represented by counsel, others did not. *See, e.g.,* DE899-3:4-17; DE899-4:4-25 (unrepresented class members who did not provide deposition dates); *compare* DE899-3:18, DE899-3:22 (unrepresented class members who did provide deposition dates). *See also* DE899-3 – DE899-38.

Incredibly, Class Counsel's own interpretation of the Order was equally fluid, though for different reasons.  On the one hand, Plaintiffs took the position

---

which the objecting settlement class member is available to be deposed by counsel for the Parties." DE742:10, ¶20(h).

that the deposition requirement was only an additional requirement for objectors represented by counsel. *See* DE939-10 ("Additional Requirements for those Represented by Counsel.").  In accordance with that position, they did not designate Mr. Davis's objection, or those of other unrepresented objectors who did not provide deposition dates, as "deficient" in a report to this Court. *See generally* DE899 and exhibits thereto.

Nevertheless, wanting to fault Mr. Davis for refusing to sit for a deposition, Plaintiffs confidently argued to Mr. Davis and this Court that the Notice required ***all*** objectors to submit to deposition, whether or not represented by counsel, despite its plain language.  *See* DE4:2-3 (opposition to Motion to Quash in *John W. Davis v. Christy Adams, et al.*, 1:19-cv-05805-TWT (Plaintiffs arguing that the Class Notice deposition requirement applied to all objectors, whether or not represented by counsel); DE939-1:12 (asserting Notice Order "expressly permitted" Davis's deposition, though he was not represented).  DE907-1:4-5 (Class Counsel correspondence to Mr. Davis insisting that the Notice Order required all objectors to submit to deposition).  Class Counsel's bid to harness their own prolixity to stifle objections simply went too far in this case, creating a record of inconsistent positions on a critical issue of class member participation.

Davis advised early on that the settlement's requirements for objecting impinged rights of due process and expression, and penalized class members for exercising their right to competent counsel of their choice.  DE879-1:2-3 (Davis Objection).  Heedless, Plaintiffs' counsel used the requirements in an aggressive and unprincipled attempt to harass Mr. Davis.  In response, Mr. Davis filed a supplemental objection detailing Class Counsel's conduct.  DE929 (Notice of Pendency of Related Action; Supplemental Objection to Proposed Settlement).  He pointed out the detailed objection requirements in this case have never been endorsed in any precedential opinion and that, on the contrary, practice guides recommend against chilling class member participation in precisely the way Class Counsel had done.  *Id*. at 2-3 & n.1. DE929-1:5-7 & n.1 (Davis Motion to Quash Deposition Subpoena in *John W. Davis v. Christy Adams, et al*., 1:19-cv-05805-TWT at DE1:5-7 & n.1, filed as DE929-1 in this case). (*citing and quoting* 4 Newberg on Class Actions §13:33 (5th ed. Nov. 2018)).

Nevertheless, Plaintiffs insisted on strict enforcement and devoted substantial resources to defeating objections brought by capable, experienced counsel and laypeople alike.  At Plaintiffs' request, this Court disqualified numerous objections for noncompliance, and disqualified a large number of otherwise compliant communications critical of the settlement upon Plaintiffs' ad

hoc urging that they were filed in response to "incomplete or misleading media coverage, or at the behest of serial class action objectors, and often demonstrat[ed] a flawed understanding of the settlement terms." DE1029:25-26.  In the end, most of the effort concerning final approval did not involve a considered evaluation of settlement's terms or the reaction of class members, but rather Plaintiffs' single-minded attempts to preclude commentary on the settlement.

Mr. Davis's merits objections would not, under the terms of the Settlement, prevent the Settlement going forward during appeal.  Here, however, Plaintiffs insisted on bullying objectors with unnecessary requirements and obstacles so extreme they infringed upon constitutional rights and impeded Mr. Davis's ability to bring his legitimate objections to the fees and service awards, leaving no choice but to challenge them before this Court and subsequently on appeal.  In the case of Mr. Davis's appeal, therefore, the blame for any delay in distribution lies squarely at Plaintiffs' feet.  This factor does not favor imposing a bond on Mr. Davis.

## IV.  DAVIS'S ARGUMENTS ARE NOT ONLY MERITORIOUS, HE HAS A GOOD CHANCE OF PREVAILING ON APPEAL

Plaintiffs essentially take for granted that there is little likelihood that Mr. Davis will prevail on appeal, based on the Court determining Mr. Davis is a professional objector whose arguments the Court overruled. DE1110-1:9.  That

circular reasoning will not gain traction on review.  Simply labeling Mr. Davis as a "professional objector" will not carry the day.[3]

Instead the Eleventh Circuit will assess the legal force behind Davis's arguments on common-fund fees and service awards.  In fact, the Eleventh Circuit is presently preparing to hear argument on June 12, 2020 in a case involving the same legal arguments on fees and service awards, which may provide controlling guidance, should that panel reach those issues. *Dickenson v. NPAS Solutions, LLC.*, USCA 11th Circuit No. 18-12344.  Plaintiffs' continued assertion that the fee and service award challenges are frivolous, vexatious, and in bad faith are fairly obliterated by the fact that these issues are presently pending before the Eleventh Circuit outside of this case.

On the attorneys' fees issue, Davis has repeatedly explained that the Supreme Court's recent opinions have called into question the unaccountable disparity between fees awarded on common funds and those awarded under fee-shifting theories, and that there are developing Circuit splits concerning the role of

---

[3] The finding that Mr. Davis is a professional objector is based exclusively on improper evidence, and unfortunately involves usurping the authority of a co-equal district court judge to make a contrary ruling on a matter that was never before this Court.  It is clearly erroneous. DE978:14-23. Therefore, any argument dependent upon Mr. Davis's status as a "professional objector" is unlikely to withstand appellate scrutiny.

lodestar in setting common fund fees. DE879-1:7-8 (Davis Objection); DE978:4-11 (Davis Rule 59(e) motion).  Plaintiffs mischaracterized and oversimplified the argument as "*Perdue* bars any multiplier" and responded that the matter was settled in *In re Home Depot, Inc. Customer Data Sec. Breach Litig*., 931 F.3d 1065, 1084-85 (11th Cir. 2019), so Davis cannot be correct.  This Court adopted that argument without elaboration in the Amended Approval Order.  DE1029:93-94 and 106.  In fact, that case did not resolve the issue, and only highlights the arbitrarily potential range of fee awards that can be awarded for the same work depending on the theory of compensation. *See* DE978:7-10 (Davis Rule 59(e) motion) (discussing *Home Depot* and its relation to Davis's argument); DE1018:2-4 (reply brief, same).

Plaintiffs' arguments before this Court on the service awards were likewise indirect and borrowed.  Davis cited Supreme Court authority that for years precluded service awards and which have never been overruled.  DE879-1:10-18 citing and discussing *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central Railroad & Banking* Co. *v. Pettus,* 113 U.S. 116 (1885) and cases following. Plaintiffs did not address the precedential cases that Davis raised, but instead merely asserted that other courts had rejected the arguments.  But Davis's objection anticipated citation to those court's holdings and explained why they

were incorrect. *Id*. at 16-18 (discussing, inter alia, *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 96 (2d Cir. 2019), 5 Newberg on Class Actions §17.1, 28 U.S.C. §2072 (Rules Enabling Act). Plaintiffs' papers, and the Court's Amended Approval Order, simply disregarded those inconvenient arguments as if they had never been made. DE1029:108-109 (Amended Approval Order). *See* DE978:11-14 (Davis Rule 59(e) Motion) (reiterating and seeking resolution of arguments ignored in Final Approval Order); DE1018:4-6 (on reply, same).

Further, even apart from Davis's theory that the service awards are prohibited altogether, Davis objected that such awards must be justified by reference to actual, concrete contributions to the litigation. DE879-1:18-20. Plaintiffs did not meet that standard, and the uniformity, numerosity, and sheer scale of the awards effectively precludes them from doing so. This Court's Amended Final Approval Order dispenses with that problem by asserting that awards of "such modest sums" does not require additional evidence and that the burden was on objectors to provide a "basis to believe the class representatives did not perform the services described" by their lawyers. DE1029 at 108-109. As no precedential authority supports that standard, it is very likely that the service awards will be reversed even if the Eleventh Circuit does not honor the Supreme Court's rulings in *Greenough* and *Pettus*.

The summary analysis in the Amended Approval Order does not accurately depict or adequately address Davis's arguments, nor does the record reflect any argument by Plaintiffs that does address them. Davis explained in his motion to amend the judgment pursuant to Rule 59(e) that the paucity of analysis, relative to the detailed arguments Davis made, would provide a threshold issue of whether the Order provides the required "reasoned response" to valid objections for, if it does not, remand is appropriate on that ground alone. *See* DE978:2-3, 12, and 14.

Finally, the appellate court will also be called to assess the constitutional legitimacy of the prerequisites to objecting, and Class Counsel's conduct in proposing and litigating them. As Davis has explained, the requirements do not find support in any precedential case. In fact, authorities counsel against imposing such barriers to class member comment. DE971-1:2-3 (Davis Objection); DE978:13-14 (Davis Rule 59(e) motion). These requirements found many reasonable objections disregarded or discounted for noncompliance. It is no help to Plaintiffs that their counsel promoted varying and inconsistent positions on the scope and meaning of the Notice Order they themselves drafted for the Settlement.

The standards of review on appeal are deferential, but the bulk of Davis's appeal presents issues of law reviewed de novo. Plaintiffs' failure to analyze those issues seriously has left the record bereft of sound analysis on the core merits

issues and is not the sort of record development and analysis conducive to affirmance on appeal. This factor, therefore, does not favor the imposition of a bond against Mr. Davis.

## V. CONCLUSION

Plaintiffs' motion for an appeal bond is unsupported. Plaintiffs have not provided facts from which this Court could conclude that it is likely that Mr. Davis would not pay his share of appellate costs in the absence of a bond. In any case, Plaintiffs request an arbitrary amount that is unrelated to any specific items of recoverable cost. Plaintiffs' characterization of Mr. Davis's objection as being frivolous or designed in bad faith to delay settlement implementation is overtly contrary to the record, and Plaintiffs vastly overestimate the likelihood of their prevailing on appeal. There is no support for Plaintiffs' requested bond, and the motion should be denied.

Dated:  June 2, 2020         Respectfully submitted,


       /s/ John W. Davis
_____

John W. Davis
john@johnwdavis.com
3030 N. Rocky Point Drive W.
Suite 150
Tampa, FL  33607
Telephone:  (813) 533-1972

*Pro Se*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in

compliance with Local Rules 5.1 and 7.1.

/s/  John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its

CM/ECF service, which will send notification of such filing to all counsel of record.

Executed this 2nd  day of June, 2020.

/s/  John W. Davis
John W. Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL  33607
(813) 533-1972