# Exhibit A

Motion for Relief under Fed. R. App. Proc. 10(e)(2)(C) by
Appellants Watkins and Frank

*In re: Equifax Inc. Customer Data Security Breach Litigation*,
No. 17-md-2800-TWT (N.D. Ga.)

Plaintiffs' Opposition to Frank and Watkins' Motion to Clarify
or, Alternatively, to Supplement the Record

Case No. 20-10249-RR
Case No. 20-10609

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

SHIYANG HUANG, *et al.*,
Objectors-Appellants,

v.

BRIAN SPECTOR, *et al.*,
Plaintiffs-Appellees.
*and*
EQUIFAX INC., *et al.*,
Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Georgia,
No. 1:17-md-02800-TWT

**Motion for Relief under Fed. R. App. Proc. 10(e)(2)(C)
by Appellants Watkins and Frank**

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Melissa A. Holyoak
1629 K Street NW, Suite 300
Washington, D.C. 20006
(703) 203-3848

*Attorneys for Objector-Appellants Theodore H. Frank
and David R. Watkins*

## Table of Contents

Eleventh Circuit Rule 26.1-2(a) Statement ...................................................CIP-1

Table of Contents.................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction ......................................................................................................... 1

Background .......................................................................................................... 3

I.      Equifax and its data breach........................................................................ 3

II.     The case settles. ......................................................................................... 3

III.    Frank objects. ............................................................................................ 4

IV.     The fairness hearing................................................................................... 5

V.      Class counsel volunteers to provide a proposed opinion and the court issues a
        122-page opinion without any disclosure of the proposed opinion. .................... 7

VI.     Post-judgment proceedings. ....................................................................... 9

Argument............................................................................................................ 10

I.      The undisclosed proposed opinion submitted *ex parte* is material to the
        appeal. ..................................................................................................... 10

II.     Rule 10(e)(2)(C) relief is appropriate. ..................................................... 16

Conclusion.......................................................................................................... 17

Certificate of Compliance with  Type-Volume Limit, Typeface Requirements, and
        Type-Style Requirements ....................................................................... 18

Certificate of Service .......................................................................................... 19

# Table of Authorities

<u>Cases</u>

*Bright v. Westmoreland County*,
    380 F.3d 729 (3rd Cir. 2004) ................................................................. 10

*Briseno v. Conagra Foods, Inc.*,
    No. 19-56297 (9th Cir.) .......................................................................... 12

*Chudasama v. Mazda Motor Corp.*,
    123 F. 3d 1353 (11th Cir. 1997) ................................................... 1, 10, 15

*In re Colony Square*,
    819 F.2d 272 (11th Cir. 1987) ......................................................... 10, 14

*Commodores Entm't Corp. v. McClary*,
    879 F.3d 1114 (11th Cir. 2018) ............................................................. 11

*Edgar v. K.L.*,
    93 F.3d 256 (7th Cir. 1996) ................................................. 1-2, 14-15, 16

*In re The Home Depot Inc. Shareholder Derivative Litig.*,
    No. 15-cv-02999-TWT, Dkt. 84 (N.D. Ga. Oct. 2, 2017) ............................ 12-13

*In re Lithium Ion Batteries Antitrust Litig.*,
    777 Fed. Appx. 221 (9th Cir. 2019) ................................................... 5, 13

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................. 12

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ........................................................ 12

*Stevo v. Frasor*,
    662 F.3d 880 (2011) ............................................................................... 15

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    847 F.3d 608 (8th Cir. 2017),
    *on remand*, 2017 WL 2178306 (D. Minn.),
    *affirmed*, 892 F.3d 968 (8th Cir. 2018) ............................................. 5, 14

*United States v. El Paso Natural Gas Co.*,
    376 U.S. 651 (1964) ............................................................................... 10

*United States v. Forness*,
125 F.2d 928 (2d Cir. 1942) ...................................................... 11

*United States v. Torkington*,
874 F.2d 1441 (11th Cir. 1989)................................................... 16


Rules and Statutes

Fed. R. App. Proc. 10(e) ............................................... 1, 8, 9, 14, 16

Fed. R. App. Proc. 10(e)(2)(C) .................................... 2, 14, 15, 16, 17

Fed. R. Civ. Proc. 23(a)(4) ................................................... 4, 13

Fed. R. Civ. Proc. 59 ............................................................... 13

Fed. R. Evid. 702 ..................................................................... 6

N.D. Ga. Loc. Civ. R. 5.1(A)(1)............................................... 1, 7


Other Authorities

Editorial Board,
*The Anthem Class-Action Con*,
Wall Street Journal, Feb. 11, 2018............................................ 5

Liptak, Adam,
*When Lawyers Cut Their Clients Out of the Deal*,
N.Y. Times, Aug. 13, 2013, at A12 ......................................... 5-6

MacDonald, R. Robin,
*Equifax Judge Says "Serial Objector" Ted Frank Put Out Misleading Information
About Settlement*, Law.com Daily Report Online (Jan. 15, 2020) ........................... 7

## Introduction

The appellate record is incomplete. Objector-Appellants Frank and Watkins ("Frank") ask this Court to correct an omission in the record that is material to the appeal—specifically an *ex parte* written communication from class counsel to the district court that both class counsel and the district court refuse to place on the docket.

At the conclusion of the fairness hearing approving the settlement in this case, the district court accepted class counsel's offer to prepare a proposed opinion for the court's approval. Dkt. 945; Dkt. 943, December 19, 2019 Fairness Hearing Tr. ("Tr.") 123-24. But the proposed opinion was never published on the docket, as N.D. Ga. Loc. Civ. R. 5.1(A)(1) requires. Class counsel admits that they did submit a written proposed opinion *ex parte* to the district court without putting it on the docket. Dkt. 971. And Frank, joined by other appellants, requested that the record be corrected under Fed. R. App. Proc. 10(e) to include the *ex parte* communications. Dkt. 961, 963, 964. The motion was unopposed—but the district court mysteriously denied it in a single sentence without explanation. "Any other motions and requests for specific relief asserted by objectors are also denied." Dkt. 1029 at 122.

The district court's 122-page opinion differs from the oral ruling at the fairness hearing in material ways that are prejudicial to appellants. And if that 122-page opinion—which remarkably and incorrectly sanctions several appellants based on a request for relief that only occurred for the first time at the fairness hearing without notice or an opportunity to respond—was largely a verbatim edition of an opinion class counsel drafted, it would be grounds for reversal and reassignment. *E.g., Chudasama v.*

*Mazda Motor Corp.*, 123 F. 3d 1353, 1373 & n. 46 (11th Cir. 1997). Perhaps the *ex parte* communication was harmless and the district court performed an independent analysis and substantially rewrote the draft proposed opinion. But because neither class counsel nor the district court are willing to put the *ex parte* proposed opinion on the docket, "We cannot know." *Edgar v. K.L.*, 93 F.3d 256, 258 (7th Cir. 1996) (Easterbrook, J.) (granting mandamus to disqualify judge who refused to disclose content of oral *ex parte* communications with expert).

The undisclosed *ex parte* communication is material to the appeal. This Court should exercise its authority under Fed. R. App. Proc. 10(e)(2)(C) to order the district court to put all written *ex parte* communications on the record.

\*     \*     \*

For over a week, Frank has repeatedly requested other parties in this case to state their position on this motion. Appellants Andrews, Davis, and West support the motion. Appellant Huang stated his position was "unknown." Plaintiffs-appellees refused to provide a yes/no answer whether they oppose this motion or whether they would place the *ex parte* communication on the docket without a court order. Plaintiffs-appellees stated instead "you may represent our position as stated in response to your motion in the trial court (Doc. 971)." No other appellee or appellant stated their position.

## Background

### I.     Equifax and its data breach.

Over the last decade, there have been dozens of data breaches exposing private information about millions of consumers and businesses. Dkt. 374 at 92-93. In response, many states have passed statutes bolstering the rights of consumers to recover for data breaches and failures to timely disclose data breaches, including statutory damages remedies.

The Equifax defendants are credit reporting agencies: they collect and maintain data on millions of Americans and sell that data to creditors evaluating requests for credit; they also contract with federal agencies to verify eligibility and identity for various government programs. Equifax received notice of a cybersecurity vulnerability in March 2017, but failed to "patch" it appropriately; from May to July 2017, it suffered an extensive and continuing data breach accessing the sensitive personal information of 147.9 million American consumers. Dkt. 374 at 102-07. Equifax learned of the breach in July 2017, but did not publicly announce it until September 7, 2017. *Id.* at 119 *ff.* Class-action litigation followed, consolidated in a multidistrict litigation in the Northern District of Georgia.

### II.     The case settles.

The consolidated complaint alleged claims on behalf of a national class, and additional state-law claims for each of fifty-three state subclasses, many of which survived a motion to dismiss. Dkt. 374; Dkt. 540. But the settlement was solely on

behalf of a nationwide class, treating citizens of states with no statutory damages claims identically to citizens of states with statutory damages claims.

In the words of Senator Elizabeth Warren,

> The settlement offered affected consumers the option to choose four years of credit monitoring or a cash award of up to $125. However, the settlement only allotted $31 million to this cash award fund…on a *pro rata* basis…

Dkt. 1057-2 Ex. B. at 2. Warren criticized "the flaws in the FTC [sic] settlement that first resulted in misleading consumers about their potential award, and then added complicated new steps that appear to be clearly designed to weed out deserving claimants." *Id.* The *New York Times* issued similar criticism in an article discussing objection options. *Id.* Ex. A. (Other damages were available to class members who could document loss from the data breach, but most claimants were interested in the $125 instead of redundant credit monitoring.) Hundreds of class members ultimately complied with burdensome requirements to object, and the district court rejected several hundred more objections as procedurally defective.

## III.   Frank objects.

Frank, who founded the non-profit Center for Class Action Fairness ("CCAF") in 2009, is a class member who was a citizen of the District of Columbia at the time of the data breach. Dkt. 876-1. D.C. provides for $2,000 in statutory damages to citizens victimized by data breaches.

Frank objected, *inter alia*, to the nationwide class certification and failure under Rule 23(a)(4) to subclass citizens of states with statutory damages claims. Dkt. 876

at 4-12. He reiterated Senator Warren's complaints of an attempt to "throttle" cash claims. *Id.* at 13-17. At the fairness hearing, Frank's counsel forthrightly acknowledged that a similar Rule 23(a)(4) objection his law firm made was rejected by the district court in the *Target Data Breach* case, but noted that the Eighth Circuit never reached the merits of that particular objection, and that Supreme Court and other appellate-court precedent supported Frank's position. Tr. 77-78.

## IV.   The fairness hearing.

The evening before the December 19 fairness hearing, class counsel filed hundreds of pages of declarations and exhibits making a variety of accusations against a variety of objectors. Dkt. 939. At the fairness hearing, Frank asked for an opportunity to respond in writing if the court was going to consider any of these claims. Tr. 79-80.

At the fairness hearing, the court heard from objectors without asking Frank's counsel a single question about his objection. Tr. 76-80. Class counsel announced for the first time, without notice, that they were seeking a ruling from the district court that "serial objectors" were objecting for "an improper purpose," which is "why we filed the declaration last night." Tr. 86-88. Class counsel then made a variety of false allegations against Frank. *Compare id.* at 90-95 *with* Dkt. 1057-2. (Class counsel's written response to objections did accuse several other objectors of being "serial objectors," but not Frank. Dkt. 902 at 40-42.) Frank's counsel was not given another chance to speak.

Class counsel's accusations of Frank objecting in bad faith were unquestionably baseless. A "serial objector" is a bad-faith objector who brings meritless boilerplate

objections in the hopes of extorting payment in exchange for withdrawing his objection, something neither Frank nor CCAF have ever done. Dkt. 876-1 at 41-42. (No one could possibly claim Frank's objection was boilerplate. *Compare* Dkt. 876 *with* Dkt. 1029 at As required by the preliminary approval order (Dkt. 742), Frank and his counsel documented his non-profit's history of objections. That history includes winning over a dozen federal appeals, a Supreme Court decision, and hundreds of millions of dollars of benefits for class members. Dkt. 876-3; Dkt. 876-1. In particular, Frank argued an almost identical objection to a nationwide class in *In re Lithium Ion Batteries Antitrust Litigation* on behalf of a class member who resided in a state with indirect-purchaser causes of action, but who was unfairly treated identically as class members from states without indirect-purchaser causes of action, ultimately prevailing in the Ninth Circuit. 777 Fed. Appx. 221 (2019); Dkt. 1057-2 at 10-11. Frank and his counsel documented their good faith in bringing the objections, and their policy against extorting class counsel through settling appeals or withdrawing objections in exchange for payment without benefit to the class. Dkt. 876-1 ¶¶ 24-26. Frank's work has won national acclaim. *E.g.,* Editorial Board, *The Anthem Class-Action Con*, Wall Street Journal, Feb. 11, 2018 (stating "The U.S. could use more Ted Franks" after his success exposing class-counsel wrongdoing in a data-breach class action, resulting in millions of dollars of additional benefit to the class); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal,* N.Y. Times, Aug. 13, 2013 at A12 (calling Frank "the leading critic of abusive class action settlements"). The Department of Justice and bipartisan coalitions of state attorneys general have filed briefs as *amicus* in support of CCAF's objections in numerous cases in federal appellate and district courts.

The district court approved class certification, the settlement, and the full fee request from the bench. While the district court found that the objections were "without merit" and overruled them, the district court made no factual findings at the fairness hearing about Frank or his counsel, made no findings of "improper purpose" for any of the objectors, and made no findings that anyone was a "serial objector." Tr. 113-21.

Class counsel submitted a 72-page brief written by Professor Robert Klonoff making legal arguments about objections, but labeled it an "expert opinion." Dkt. 900-2. Frank moved to strike the "expert opinion" as inappropriate under Fed. R. Evid. 702 and as a violation of the district court's order setting briefing page limits. Dkt. 909. The district court's oral opinion did not acknowledge the motion, and stated "I did find Professor Klonoff's responses to the objections to be, generally speaking, meritorious and appropriate." Tr. 116. The court then repeatedly relied on the Klonoff report as reasons to reject hundreds of objections. *Id.* at 116-17.

## V.   Class counsel volunteers to provide a proposed opinion and the court issues a 122-page opinion without any disclosure of the proposed opinion.

The district court "directed Mr. Canfield [class counsel] to prepare a written order, to be approved by Mr. Balser [Equifax's counsel], that summarizes the Court's findings. Mr. Canfield suggested submitting to the Court a proposed (1) consent order pertaining to the injunctive relief, (2) opinion containing the Court's ruling, and (3) final judgment, which the Court approved. All 3 documents to be submitted to the Court at the same time." Dkt. 945; Tr. 123-24.

N.D. Ga. Loc. Civ. R. 5.1(A)(1) requires all papers to be filed on the docket, including any "proposed order." But the proposed opinion was never filed on the docket. On January 13, 2020, without any notice, the Court entered a 122-page Order Granting Final Approval of Settlement, Certifying Settlement Class, and Awarding Attorney's Fees, Expenses and Service Awards. Dkt. 956. The issued opinion was inconsistent with the court's oral ruling. It repeated class counsel's false claims about Frank. The claims were made for the first time at the fairness hearing that Frank had no notice of, no opportunity to rebut, and no reason to believe would be in the opinion. From those claims came findings that Frank was a "serial objector" who objected "merely to benefit the objector or attorney" and that Frank committed an ethical violation of "disseminat[ing] false and misleading information" without identifying any false and misleading information Frank supposedly disseminated. *Id.* at 110, 113-14. These findings were so extraordinary that law.com chose to headline the criticism of Frank in its coverage of the 122-page opinion, and repeat that criticism in almost every story about the pending litigation since. *E.g.,* R. Robin MacDonald, *Equifax Judge Says "Serial Objector" Ted Frank Put Out Misleading Information About Settlement*, Law.com Daily Report Online (Jan. 15, 2020).

The written opinion denied the motion to strike the expert reports. Dkt. 956 at 115-19. Though the court repeatedly relied upon Professor Klonoff's expert report at the fairness hearing, the written opinion stated "Professor Klonoff's declaration was particularly helpful to the Court in the organization and consideration of the objections, but the Court's decisions regarding the objections are not dependent upon his declaration." *Id.* at 38. Notwithstanding this statement, the opinion mirrors the Klonoff

"expert report" in many instances, sometimes verbatim. *Compare, e.g., id.* at 54 *with* Dkt. 900-2 ¶ 89; Dkt. 956 at 64 *with* Dkt. 900-2 ¶ 96; Dkt. 956 at 65 *with* Dkt. 900-2 ¶ 95.

## VI.    Post-judgment proceedings.

Frank moved to supplement the record under Fed. R. App. Proc. 10(e) to include the proposed opinion submitted to the court. Dkt. 961. Class counsel's response acknowledged that it had submitted the proposed opinion to the court without putting it on the docket, but argued that it had the right to do so. Dkt. 971. Class counsel purported to be unopposed to the motion, but claimed that the district court had the discretion to deny Frank's motion. *Id.* Class counsel had every opportunity to simply file the proposed opinion on the docket in response to the motion, and chose not to.

Meanwhile, another objector, West, separately moved for Rule 59 reconsideration to strike a false statement about one of his attorneys in the opinion. Dkt. 962. The court granted the motion, and issued an amended opinion that struck a single sentence. Dkt. 1027; Dkt. 1029.

The opinion concluded by denying Frank's motion for Fed. R. App. Proc. 10(e) relief in a single sentence without explanation: "Any other motions and requests for specific relief asserted by objectors are also denied." Dkt. 1029 at 122. The amended opinion had the same factual findings about Frank inconsistent with the facts and the oral ruling at the fairness hearing. *Id.* at 110, 113-14.

Frank timely appealed the final judgment and the amended opinion. Dkt. 977; Dkt. 1041. Seven weeks after Frank's notice of appeal, plaintiffs moved for a punitive

$40,000 appeal bond against Frank and Watkins based on the district court's putative finding of Frank's status as a "serial objector" and extortionist; Frank has opposed. Dkt. 1040; Dkt. 1057.

## Argument

### I. The undisclosed proposed opinion submitted *ex parte* is material to the appeal.

There is no dispute that class counsel submitted a proposed opinion to the district court as the district court requested, and no dispute that this *ex parte* submission is not in the record. Dkt. 945; Dkt. 971. This proposed opinion is material to the appeal, and Frank is entitled under Fed. R. App. Proc. 10(e) to have the omission corrected. The discrepancy between the oral opinion and the 122-page written opinion from the bench sanctioning attorneys, combined with the refusal to disclose *ex parte* communications and other procedural irregularities, demonstrates fundamental unfairness and may require reversal and reassignment.

This Court condemns "delegating the task of drafting important opinions to litigants."

> We have consistently frowned upon the practice of delegating the task of drafting important opinions to litigants, and the cases admonishing trial courts for the verbatim adoption of proposed orders drafted by litigants are legion. This practice harms the quality of the district court's deliberative process, impedes our ability to review the district court's decisions, and creates the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor. *See also United States v. El Paso*

> *Natural Gas Co.*, 376 U.S. 651, 657 n. 4 (1964) (quoting Judge J.
> Skelly Wright's admonition that the lawyers who draft opinions "in
> their zeal and advocacy and their enthusiasm are going to state the
> case for their side ... as strongly as they possibly can. When these
> [opinions] get to the courts of appeals they won't be worth the
> paper they are written on as far as assisting the court of appeals in
> determining why the judge decided the case.").

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46. "In particular, the judge's practice of delegating the task of drafting sensitive, dispositive orders to plaintiffs' counsel, and then uncritically adopting his proposed orders nearly verbatim, would belie the appearance of justice to the average observer." *Id.* at 1373. *Accord Bright v. Westmoreland County*, 380 F.3d 729, 732 (3rd Cir. 2004).

That said, the "fact that a judge allowed a litigant to draft the court's orders without notice to the opposing party does not automatically invalidate these orders, however." *In re Colony Square*, 819 F.2d 272, 276 (11th Cir. 1987). "Such orders will be vacated only if a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair." *Id.*

If the written opinion reflects substantially verbatim duplication of class counsel's proposed opinion, that fundamental unfairness is at issue here.

*First*, as discussed above, the written opinion substantially and materially differs from the oral opinion. For example, though the oral opinion made no findings about serial objectors, the written opinion falsely accuses Frank of objecting in bad faith, of being a "serial objector," and of committing ethical violations. Dkt. 1029 at 109-15. As in *United States v. Forness*, "the findings made by the district court are not supported by the evidence and not substantially in accord with the opinion." 125 F.2d 928, 942 (2d

Cir. 1942) (Frank. J.) ("The judiciary properly holds administrative officers to high standards in the discharge of the fact-finding function. The judiciary should at least measure up to the same standards.").

The district court's oral opinion relying on Klonoff as an expert to adopt Klonoff's legal opinions would be reversible error, because those opinions are inadmissible. *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018). The written opinion contradicts what happened at the fairness hearing. If it reflects the court's independent reasoning, it would preclude the appellate issue because the assertion that the court did not depend on Klonoff would make its reliance harmless error. But if those statements were crafted by class counsel to appeal-proof the error committed in the oral ruling, the Eleventh Circuit would be entitled to disregard it as not "worth the paper they are written on." *Chudasama*, 123 F.3d at 1373 n. 46 (cleaned up).

Certainly, it is possible that the proposed written opinion was only a few pages long, and the district court "performed its own independent legal research and analysis and made up its own mind" (Dkt. 1029 at 119) and independently expanded upon its conclusory oral findings to 122 detailed pages.

But it seems well within the realm of possibility that class counsel overreached, wrote their own preferred opinion that differed from the oral opinion in material ways, and the district court improperly adopted it largely verbatim. (Judge Thrash has previously rubber-stamped proposed opinions without reviewing for accuracy. For example, in a recent class-action settlement approval, his opinion read "The Court has considered any submitted objections to the Settlement and hereby overrules them"—

12

but there were no objections. *In re The Home Depot Inc. Shareholder Derivative Litig.*, No. 15-cv-02999-TWT, Dkt. 84 at 3 (N.D. Ga. Oct. 2, 2017).)

Indeed, the opinion here is rife with errors mischaracterizing facts and precedent to accuse Frank of wrongdoing and otherwise benefit class counsel.[1] For example:

| Amended written opinion (Dkt. 1029) | Reality |
|---|---|
| Finds Frank to be a "serial objector" advancing objections for the "improper purpose" of "enrich[ing] the objector or his attorney." Dkt. 1029 at 109-10, 113. | Frank has never settled an objection for a payment without benefit to the class, and his non-profit has won over $200 million for class members. Dkt. 876-1 at 5, 41-42. There was no evidence contradicting this. |
| *Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015), demonstrates Frank's bad faith because the Eleventh Circuit found Frank's arguments "improper[]." Dkt. 1029 at 113. | While *Poertner* denied Frank's appeal, it never held that Frank's objection was "improper." Nor can Frank's loss in *Poertner* be evidence of bad faith, because Frank won on identical issues in *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). |

---

[1] Frank is adverse to one of the lead class counsel firms in a pending Ninth Circuit appeal where Frank's client, supported by a bipartisan coalition of *amicus* state attorneys general, is objecting to the fairness of a settlement that paid the attorneys almost $7 million when the class received less than $1 million. *Briseno v. Conagra Foods, Inc.*, No. 19-56297. Frank expects class counsel to cite the *Equifax* criticism in their merits brief.

| Amended written opinion (Dkt. 1029) | Reality |
|---|---|
| Frank's lack of success in the *Target* district court demonstrates bad faith in this objection. Dkt. 1029 at 113. | The Eighth Circuit ordered remand in Frank's first appeal in *Target* and did not reach the merits of Frank's arguments in a second appeal. Tr. 77-78; 847 F.3d 608 (8th Cir. 2017). Frank prevailed on identical or similar Rule 23(a)(4) issues in the Third and Ninth Circuits. Dkt. 876-1 at 6. |
| Accuses Frank of unethically "misleading" about the settlement, but does not identify a single factually misleading statement Frank made. Dkt. 1029 at 113. | Frank did not make any false or misleading statements about the settlement. Dkt. 1057-2 at 3-7. |
| Accuses Frank of unethically encouraging class members to use a misleading "chatbot" to file perfunctory objections. Dkt. 1029 at 113-14. | Frank tweeted a link to a news story about the chatbot, but had no role in the design of the "chatbot," and told a reporter the "chatbot" objections would be legally irrelevant. Dkt. 1057-2 at 7-8. |

One of the attacks on another objector's counsel, falsely asserting another court had rejected a motion for *pro hac vice*, was so sloppy that the court was compelled to amend its opinion in response to a Rule 59 motion for reconsideration. Dkt. 969; Dkt. 1027.

If the district court did not exercise independent consideration in issuing sanctions and instead adopted class counsel's proposed findings verbatim to sanction Frank and other objectors without fair notice, *Chudasama* would require reversal and reassignment. Unfortunately, because neither class counsel nor the district court are willing to put the *ex parte* proposed opinion on the docket, "We cannot know." *K.L.*, 93 F.3d at 258. Class counsel and the district court are attempting to preclude appellate

review of whether the district court improperly relied on class counsel in delegating the drafting of an opinion approving class certification and sanctioning Frank beyond what the district court found in open court. The only reason for the district court to deny a routine, unopposed Rule 10(e) motion is to spare itself and class counsel the embarrassment of what granting that motion would disclose. This Court must rectify the problem by granting relief under Rule 10(e)(2)(C).

*Second*, unlike *Colony Square*, Frank did not have "ample opportunity to present [his] arguments." *Colony Square* accepted a verbatim adoption of an attorney's proposed opinion when it involved the decision of a bankruptcy judge where the appellant had already had the opportunity of appeal to a district court judge that gave the decision independent consideration. Here, however, Frank had no such opportunity for lower-court appellate review, and, moreover, was unfairly surprised by the unnoticed request for a factual finding that Frank was a "serial objector," which class counsel only made for the first time at the fairness hearing. The district court made no factual findings at the fairness hearing that Frank was a "serial objector" acting in bad faith, and did not accept Frank's request for the opportunity on additional briefing on the question. Yet the opinion criticizes Frank at length. This procedural unfairness compounded the other irregular procedural unfairness where (1) objectors were limited to 25-page objections; (2) class counsel was allowed to evade page limits to submit what became dispositive legal argument through a lengthy inadmissible expert opinion; (3) class counsel then was permitted to submit without leave of court additional factual arguments the night before and at the fairness hearing, weeks after a court-ordered deadline; and (4) the court then denied *sub silentio* Frank's request for a right to respond.

If the district court adopted an *ex parte* proposed opinion of 122 pages to impose *de facto* sanctions, the irregularity of this procedural unfairness followed by the step of keeping that *ex parte* communication hidden from the record in attempting to deprive appellate review of the extent to which that adoption was verbatim or independent, would add up to requiring reversal and reassignment. *Chudasama*, 123 F.3d at 1353 (concluding reassignment necessary under factors of *United States v. Torkington,* 874 F.2d 1441, 1446 (11th Cir.1989)). As in *Chudasama*, delegating to counsel dispositive and sanctions findings is inexcusable. 123 F.3d at 1353 n.46. And as in *Chudasama*, "[t]he extent of the judge's abuse of discretion—and the partiality of the practices constituting that abuse—would have a significant effect on the appearance of justice should he remain assigned to this case." *Id.* at 1353.

## II.    Rule 10(e)(2)(C) relief is appropriate.

Frank would be unfairly prejudiced by the district court's denial of his Rule 10(e) motion, as he would not be able to fully demonstrate the *Chudasama* problem without either this Court's willingness to draw an adverse inference under *K.L.* or the proposed opinion to discern the degree of improper delegation of judicial decision-making. This Court has the authority under Rule 10(e)(2)(C) to order the record supplemented so that there is no question about the contents of the *ex parte* communication and the basis for the district court's 122-page opinion. For example, in *Stevo v. Frasor*, the Seventh Circuit granted 10(e) relief for an accidental omission to "avoid punishing innocent parties." 662 F.3d 880, 885 (2011). Here, the omission is intentional at the behest of a

16

party to deprive its innocent adversaries of appellate review. Frank requests an order under Rule 10(e)(2)(C).

## Conclusion

This Court should issue an order under Rule 10(e) for the district court to add the *ex parte* proposed opinion submitted in response to the district court's December 19 order (Dkt. 945) to the record.

Dated: April 20, 2020

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
Melissa A. Holyoak
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email: ted.frank@hlli.org

*Attorneys for Objector-Appellants Theodore H. Frank and David R. Watkins*

**Certificate of Compliance with**
**Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,371 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: April 20, 2020                    */s/ Theodore H. Frank*
                                         Theodore H. Frank

18

## Certificate of Service

I hereby certify that on this the 20th day of April, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system and that as a result electronic notice of the filing was served upon all attorneys of record.

I further caused notice to be sent by email to:

Alice-Marie Flowers
PO BOX 2322
ANDERSON, IN 46018

John William Davis
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, Florida 33607


*/s/ Theodore H. Frank*
Theodore H. Frank

19