# Exhibit E

Plaintiffs-Appellees' Opposition to Objector-Appellants Frank and Watkins' Motion for Reconsideration

*In re: Equifax Inc. Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.)

Plaintiffs' Opposition to Frank and Watkins' Motion to Clarify or, Alternatively, to Supplement the Record

**Case Nos. 20-10249, 20-10610, 20-10611, 20-10612, 20-10613**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**SHIYANG HUANG**, *et al.*

Objectors-Appellants

v.

**BRIAN SPECTOR**, *et al.*

Plaintiffs-Appellees

and

**EQUIFAX INC.**, *et al.*

Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Georgia, Case No. 17-md-2800-TWT

## PLAINTIFFS-APPELLEES' OPPOSITION TO OBJECTOR-APPELLANTS FRANK AND WATKINS' MOTION FOR RECONSIDERATION

Kenneth S. Canfield
Ga Bar No. 107744
**DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E., Suite 1725
Atlanta, Georgia 30309
kcanfield@dsckd.com

Amy E. Keller
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
akeller@dicellolevitt.com

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
siegel@stuevesiegel.com

*Attorneys for Plaintiffs-Appellees*

In his order finally approving the settlement, Chief Judge Thrash found that Objector-Appellant Frank is a serial objector who is not acting in the best interests of the class and that he disseminated false and misleading information to encourage others to object. (Doc. 1029 at 113-14)  Offended by these findings, which he did not contest, Frank filed a motion to supplement the record with the proposed final approval order that Judge Thrash directed class counsel to submit after he orally ruled from the bench in accordance with the local rules.  While Plaintiffs did not object to Frank's motion below, Plaintiffs objected when Frank sought the same relief in this Court because it had become apparent he is engaged in a baseless personal vendetta to remove the trial judge for alleged misconduct related to the district court's findings personal to Frank. Plaintiffs argued that supplementing the appellate record was both unnecessary and detrimental to the efficient resolution of this litigation and that facilitating Frank's personal campaign against the trial judge would only further delay distribution of the settlement's benefits to 147 million Americans.

On May 7, 2020, this Court denied Frank's motion.  He now seeks reconsideration because of three alleged "new developments"—the trial court's order expressly denying a similar motion, his amended civil appeal statement, and entry of an order requiring him and others to post a "punitive" appeal bond of $2,000.  Neither the orders below nor the amended appeal statement have anything to do with the proposed final approval order and thus are not material to the issue of whether this Court erred in denying his motion to supplement the record.  Anyway, Frank has not shown that

the so-called new developments constitute the sort of "extraordinary circumstances" required for reconsideration.

Notwithstanding Frank's conspiracy theories and scurrilous attacks on the trial judge, the simple fact remains: the proposed final approval order is unnecessary to resolve the merits of the pending appeals and placing it on the record will only allow Frank to create a sideshow that is contrary to the interests of the rest of the class. This Court thus properly denied Frank's motion to supplement the record and, because Frank has not met the applicable requirements, his motion for reconsideration also should be denied.

## FACTUAL BACKGROUND

Plaintiffs described in detail the relevant procedural history and factual record in their brief opposing Frank's motion to supplement the record. (Pls. Corrected Opp. to Frank and Watkins' Rule 10(e)(2)(C) Motion at 2-13) (hereinafter cited as "Pl. Opp.") Plaintiffs will not repeat that description here, but instead will summarize the facts specific to Frank and address the relevant proceedings that have occurred since this Court denied Frank's motion. Moreover, as in his initial motion, Frank's motion for reconsideration distorts and mischaracterizes the record, necessitating several corrections.[1]

---

[1] One unusual feature of the "Background" section of Frank's motion for reconsideration is that almost an entire page consists of a single-spaced quote from a media reporter identified as "an outside commentator" with whom he apparently has a relationship. (Frank's Motion for Reconsideration at 3-4)  Obviously, the quote is

### A.     Proceedings Before this Court Denied Frank's Motion

On December 5, 2020, two weeks before the final approval hearing, class counsel filed a declaration that, among other things, set forth evidence that Frank (a lawyer who has objected in dozens of class actions) improperly conducted a media and Twitter campaign to disparage the settlement using inflammatory language, misrepresent its terms, and encourage other objections. (Doc. 900-1)  *See Manual for Complex Litig.* § 21.33 ("Objectors . . . may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or opt out.") For example, Frank called the settlement a "scam," accused class counsel of "snookering" the FTC, and made false statements about the settlement that contributed to widespread public misunderstanding.  (Doc. 900-1, ¶¶ 45-53)  Frank also encouraged others to object using a website created by Class Action Inc. (www.NoThanksEquifax.com) that featured an automated "chat-bot" to drive online objections and blatantly misrepresented the available relief.  (*Id.*, ¶¶ 49-51)  The district court later rejected the objections gathered on the website and found that Class Action, Inc., like Frank, had promoted false and misleading information to deceptively generate objections. (Doc. 1029 at 115)

---

hearsay, outside the record, and hardly qualifies as newly-discovered evidence since it is dated April 23, 2020, well before this Court denied his motion.  But the fact that Frank feels compelled to cite his own news clippings about the motion to supplement the record he filed in this Court, written before Plaintiffs had even responded, demonstrates the weakness of his position.

The day before the final approval hearing, class counsel filed another declaration that described Frank's continuing public comments and false statements, including claims that class counsel had "pulled a bait and switch" and were "blaming" a Congresswoman for "their screwed up settlement." (Doc. 939-1, ¶¶ 29-31) At the final approval hearing, class counsel orally detailed the evidence relating to Frank and asked the trial court to make appropriate findings regarding his motivation as suggested by Section 21.463 of the *Manual for Complex Litigation*. Class counsel also noted that, while Frank might not necessarily be using his objection to extort a payoff, he was pushing arguments that he had made unsuccessfully in other cases and was acting for personal reasons, not to benefit the class. To illustrate the point, class counsel described Frank's touting as a "win" his objection in the *Target* data breach litigation, where he unsuccessfully made the same intra-class conflict argument he makes here and accomplished nothing for the class except to delay distribution of their settlement benefits for two years. (Tr., 85:18-94:24)

Frank never challenged any of the evidence contained in class counsel's declarations, even though the first declaration was submitted more than two weeks before the final approval hearing, leaving him ample time to respond in writing (although Frank did spend time trying to disqualify one of Plaintiffs' experts, instead, Doc. 909). Further, at the hearing, Frank's lawyer never disputed any of the evidence or class counsel's arguments about him, notwithstanding she was present and participated. And, contrary to the claim that Frank made in his motion to supplement

4

the record, his lawyer never asked for an opportunity at the hearing to brief the issue of whether Frank was a serial objector or had acted improperly.  (Pl. Opp. at 10-11)

After oral arguments concluded, the court took a recess.  Upon returning to the bench, Judge Thrash announced his rulings and explained his rationale at some length, including his conclusion that some of the objectors were not acting in the best interest of the class for the reasons class counsel had given. (Tr. at 113-122)  Judge Thrash then directed class counsel to prepare a written order that "summarizes my rulings on the motions and my adoption basically of the arguments that have been made by the Plaintiffs and by Equifax in the hearing today," obtain Equifax's approval as to form, and submit it for consideration.  (Tr., 122:15-20)  Class counsel suggested that, in lieu of a single order, they submit three separate proposals—a final approval order, a final judgment, and the consent order relating to the settlement's injunctive relief—a suggestion the court accepted. (*Id.*, 123:19-124:7)  No one objected to that process, including Frank's counsel.  (*Id.* at 124-25)

As directed, after obtaining Equifax's approval, class counsel emailed the proposed orders to the court in Word format, allowing for their easy revision.  That is the standard practice in the Northern District of Georgia and codified in the local rules. *See* N.D. Ga. L. Civ. R. 7.3 ("Unless the Court directs otherwise, all orders, including findings of fact and conclusions of law, orally announced by the district judge in Court shall be prepared in writing by the attorney for the prevailing party.").  On January 13, 2020, nearly a month after the hearing, the court entered the final approval order; the

consent order; and the final judgment. (Docs. 956, 957, 958)  Frank only complains about the final approval order, which contains the findings about him.

On January 15, 2020, Frank moved below to supplement the record with the proposed final approval order supported by a two-page brief that did not mention he might seek summary reversal and reassignment of the trial judge. (Doc. 961)  Neither Plaintiffs nor Equifax objected to his motion.  (Doc. 971 at 4; Doc. 974 at 1)  Also, two objectors (but not Frank) filed motions to amend the final approval order under Rule 59, contending certain factual findings were erroneous. On March 17, 2020, the district court denied one motion to amend (Doc. 1026), granted the other such motion (Doc. 1027), and issued an amended final approval order that was identical to the original order except for the deletion of one sentence.  The amended order included language from the original order generally denying "all motions and requests for specific relief" by objectors, but did not specifically mention Frank's motion to supplement the record. (Doc. 1029 at 122)

On April 20, 2020, Frank filed a motion to supplement the record in this Court, asserting the district court had denied his first motion in the amended final approval order. (Frank and Watkins' Motion for Relief under Fed. R. App. P. 10(e)(2)(C) at 1) ("Frank's Rule 10(e)(2)(C) Motion")  Plaintiffs decided to oppose Frank's new motion when they learned his motivation was to use the proposed order to obstruct and delay resolution of the appeals while he challenged the district court's findings personal to him. (Pl.  Opp. at 1) Plaintiffs argued the proposed order was unnecessary to resolve

6

the merits of the pending appeals; the process below was fair; the final approval order and supporting evidence are in the existing record; and Frank's ultimate goal of summarily reversing the final approval order and removing the trial judge for misconduct was doomed to fail because it was unsupported by any facts or law and he had not objected below to the process or the evidence about him. (*Id.* at 1-2, 14-19)

### B.    This Court's Order and Later Proceedings Below

This Court denied Frank's motion to supplement the record without explanation in an order entered May 7, 2020. Roughly an hour later, the district court granted the same motion Frank filed below and directed class counsel to file the proposed order. (Doc. 1084) On May 11, 2020, uncertain whether the district court was aware of this Court's earlier ruling or that Plaintiffs no longer consented to the relief Frank sought, Plaintiffs filed a motion for clarification of their obligations. (Doc. 1093) Frank opposed the motion for clarification, contending among other things that class counsel, by filing the motion rather than the proposed order, were "in contempt for willfully refusing to comply with the Court's order." (Doc. 1101 at 4) The trial court treated Plaintiffs' motion as one for reconsideration and, in light of this Court's decision, vacated its order granting Frank's motion. (Doc. 1106) Frank has already appealed the district court's order vacating its prior order. (Doc. 1108)

In a separate ruling on May 11, 2020, the district court granted Plaintiffs' motion to require the objector-appellants to post appeal bonds, and, after analyzing each applicable factor, determined the appropriate bond amount was $2,000 rather than the

$20,000 Plaintiffs requested. (Doc. 1094 at 4-6)  In its order, the district court noted bonds are routinely required to ensure payment of appellate costs; found there is substantial risk the appeal costs would go unpaid absent a bond because each objector is outside the court's jurisdiction; confirmed its earlier findings regarding the serial objectors, including Frank; and reiterated that each appeal "lacks merit and has no legitimate likelihood of success." (*Id.* at 7, 9)  A copy of the appeal bond order is attached as Exhibit 1. As directed, Frank posted the bond, but he has appealed the order that he do so.  (Docs. 1095, 1108)

## **ARGUMENT**

This Court has not adopted a particular standard applicable to motions for reconsideration pursuant to 11th Cir. R. 27-2.  However, in considering appeals from denials of such motions, the Court has set a high bar, emphasizing that reconsideration is only appropriate in extraordinary circumstances such as those involving newly discovered evidence or manifest errors of fact or law.  *See, e.g., Wilson v. United States*, 2018 WL 4676492, at *2 (11th Cir. Sept. 13, 2018); *Smith v. Ocwen Financial*, 488 Fed. App'x 426, 428 (11th Cir. 2012).  The Court has also stated that a "motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgement." *Smith*, 488 Fed. App'x at 428.

The three "new developments" that Frank contends require this Court to reconsider its order—the trial court's decision to deny his motion below, his amended

civil appeal statement, and the order requiring him to post an appeal bond—do not meet the required standard.  None of these developments constitutes newly-discovered evidence or supports an argument that this Court committed manifest errors of fact or law.  Frank has simply repackaged the same arguments in an attempt to convince the Court it was wrong.[2]  That is not the purpose of reconsideration.  Accordingly, his latest motion also should be denied.

## A.   The District Court's Decision to Deny Frank's Motion to Supplement Does Not Require Reconsideration

Frank first makes a convoluted argument that the district court's grant and then subsequent denial of his motion to supplement the record somehow constitutes "new evidence" establishing this Court was wrong to deny his motion to supplement the record.  The argument lacks merit and does not make much sense.

As noted above, Frank asserted in his appellate motion to supplement the record that the district court had already denied the same relief. (Frank's Rule 10(e)(2)(C) Motion at 1)  In opposing the motion, Plaintiffs observed that: "The district court never expressly ruled on Frank's motion to supplement." (Pl. Opp. at 13)  According to Frank, by making that observation, "class counsel was judicially estopped from arguing [to the district court] that the Eleventh Circuit had not adopted its argument that Frank's

---

[2] Frank complains that he never had a full opportunity to make his argument because the Court ruled on his motion before he replied to Plaintiffs' opposition brief. However, Appellate Rule 27(b) provides that the court may act on a motion for a procedural order "at any time without awaiting a response." *See* 11th Cir. R. 27-1(c)(6) (characterizing a motion to supplement the record as a procedural motion).

appellate motion was not yet ripe." (Frank's Motion for Reconsideration at 8-9)  And, because class counsel supposedly were judicially estopped from arguing that this Court had denied his motion for any reason other than ripeness, the district court allegedly erred by vacating its initial order granting his motion.  (*Id.*)

There are several fatal flaws with Frank's position.  Class counsel never argued that Frank's appellate motion was not ripe, but only pointed out in the "Factual Background" section of their brief that the district court had not expressly ruled on it. (Pl. Opp. at 13)  Indeed, any ripeness argument would have been unavailing because Federal Rule of Appellate Procedure 10(e)(2)(C) permits a motion to supplement the record to be made directly in the court of appeals, regardless of whether the motion previously was made below.   Plaintiffs cannot be judicially estopped by an argument that they never made and would not have made because it lacked merit.

Further, even if class counsel had argued ripeness (which their brief conclusively shows they did not), the judicial estoppel doctrine is inapplicable.  The doctrine's purpose is to prevent a party from taking clearly inconsistent positions in different proceedings to preserve judicial integrity, avoid the perception that one of the courts was misled, and prevent the party from gaining an unfair advantage.  *See New Hampshire v. Maine,* 532 U.S. 742, 750-51 (2000).  Plaintiffs did not take inconsistent positions regarding the basis upon which this Court denied Frank's motion.  In fact, Plaintiffs could not have known the basis for this Court's ruling until this Court ruled, which was after Plaintiffs filed the brief that Frank contends contains the inconsistent argument.

Perhaps more importantly, the trial court was not misled and Plaintiffs did not gain some sort of unfair advantage by their argument below.  Judge Thrash simply vacated his order because he evidently had been unaware of this Court's ruling, and at the time he had before him Frank's arguments and this Court's order.  (Doc. 1093-1; Doc. 1101)

Frank also contends that the district court's reconsideration of its initial order was improper and suggests that the district court's purpose was to conceal evidence of "unethical" behavior.  (Frank's Motion for Reconsideration at 8-9, 10)  According to Frank, notwithstanding that this Court had denied the same motion only an hour before the district court granted it and as a result there were conflicting rulings on the same issue, class counsel's motion for clarification was "frivolous, there was nothing to clarify, and class counsel had no standing to request reconsideration." (*Id.* at 8)  Because Plaintiffs' motion for clarification allegedly was procedurally improper and lacked merit, Frank argues the district court should have denied the motion out of hand rather than reconsidering its prior order and adopting "class counsel's erroneous reasoning … to hide the *ex parte* communications from class counsel from appellate scrutiny."  (*Id.* at 9)

Frank does not cite any relevant law for this argument.[3]  Instead, he simply asserts, almost hysterically, that: "No appellate court has ever permitted a district court

---

[3] The only case Frank cites, *Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996), which he also cited repeatedly in his initial motion and deals with the circumstances that justify disqualification of a trial judge, does not concern the new "developments" he claims justify reconsideration, the issue of when a motion for clarification is appropriate, or whether such a motion can be construed as one for reconsideration.

to manipulate an appeal like this." (*Id.* at 9)  Frank's assertion is nonsensical.  The district court merely vacated an order that, unbeknownst to the court at the time the order was entered, conflicted with this Court's earlier ruling.  In so doing, the district court did not manipulate the appeal, but brought its order into compliance with what this Court had decided.  Moreover, there was nothing inappropriate about Plaintiffs asking for further direction or the trial court construing their motion as one for reconsideration. *See, e.g., U.S. v. King*, 2008 WL 2511778 (M.D. Ga. June 19, 2008) (treating a motion for clarification as a motion for reconsideration).

Without support in the record or the applicable law, Frank's suggestion that the district court engaged in an unethical cover-up by deferring to this Court's ruling on the same motion is irresponsible at best.  Frank may not like that this Court denied his motion and that upon learning of the denial the district court vacated its contrary ruling, but that is hardly a good reason for this Court to reconsider its ruling.

## B.   Frank's Amended Notice of Appeal Does Not Justify Reconsideration

Frank previously argued in support of his motion to supplement the record that the proposed final approval order is material to his appeal.  In moving for reconsideration, Frank makes the same argument again, which he says has been strengthened by the fact that he filed an amended civil appeal statement after Plaintiffs filed their brief opposing his motion.  Yet the "new" version of Frank's argument is still unpersuasive.

As an initial matter, the amended civil appeal statement is not "new evidence." Frank filed the amended statement on May 4, 2020, three days before this Court denied his motion and thus it was in the record at the time of the ruling. Further, while the amended civil appeal statement added another appellate issue (namely, whether the final approval process was unfair to Frank and the factual findings about him were factually supported), the parties addressed that issue in their briefing before this Court denied his motion. Frank claimed he needed the proposed order to challenge the process below and the findings about him, potentially meriting reversal of the final approval order and disqualification of Judge Thrash. (Frank's Rule 10(e)(2)(C) Motion at 10-15) Plaintiffs responded that the proposed order was unnecessary for that purpose and that granting his motion would lead to a sideshow that would inevitably fail and disrupt and delay resolution of the appeals. (Pl. Opp. at 15-16) Consequently, his amended civil appeal statement changes nothing.

In asking for reconsideration, Frank also takes issue with Plaintiffs' argument that any effort to seek reversal or remove the trial judge because of the proposed order is doomed to fail. The trial court issued its order only after making its own findings on the record, pursuant to a procedure specified by local rule, and there was no objection by Frank to either the process or the evidence about him. Consequently, he has no basis to challenge what happened below. However, even if the process had not been discussed in open court, done in accordance with the local rule, or Frank had objected, any effort to reverse the final approval order or disqualify the judge on that basis would

13

still fail.  Both the Supreme Court and this Court have consistently upheld even the verbatim adoption of a proposed order so long as the order is fully supported by the evidence, despite the existence of procedural irregularities and the process having taken place in secret.  (Pl. Opp. at 16-19)

Frank spends over three and a half pages in his latest brief arguing that the cases Plaintiffs cited for these propositions are *factually* distinguishable.  But the fundamental *legal* principle discussed above remains as true today as it was when this Court denied Frank's motion.  And the record in this case, which Plaintiffs discussed at length in their previous brief, proves that none of the starkly different factual circumstances that occasionally have led to problems with the use of proposed orders occurred here.  (Pl. Opp. at 17-19)

### C.      The Appeal Bond is Immaterial to the Issue Before the Court

Likewise, the order that Frank post a $2,000 appeal bond does not compel this Court's to reconsider the denial of his motion to supplement the record.  While Frank has appealed the bond order (Doc. 1108 at 1-2), the proposed final approval order—which was entered months before the trial court ordered Frank to post a bond—has no relevance to the merits of that appeal.

Frank brings up the appeal bond to support his false narrative, based on a blatant distortion of the record, that the trial judge is biased against him.  According to Frank, the appeal bond order was designed to punish him solely based on his status as a serial objector.  (Frank's Motion for Reconsideration at 17)  However, the appeal bond is not

"punitive," but rather is justified by the applicable law and at only $2,000 is quite modest, tied to the actual costs for which Frank will be liable if his appeal is unsuccessful, and far less than what Plaintiffs requested and other courts have awarded under similar circumstances. *See, e.g., In re Wal-Mart Wage and Hour Employee Practices Litigation,* 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (four objectors each ordered to pay $500,000); *In re Checking Account Overdraft Litigation,* 2012 WL 456691, at *3 (SD. Fla. Feb. 14, 2012) ($616,338); *In re Polyurethane Foam Antitrust Litigation,* 178 F. Supp. 3d 635, 645 (N.D. Ohio 2016) ($145,463).

Further, the trial court did not single out Frank for special treatment.  All of the objectors who had appealed from the final approval order as of the date Plaintiffs filed their motion were ordered to post a bond—even Appellant Huang who the district court has never found to be a serial objector. (Doc. 1094 at 6-10)  While the district court repeated its earlier finding that Frank is a serial objector acting contrary to the best interest of the class, there was nothing untoward in doing so.[4]  The finding is relevant to the judicial inquiry under Federal Rule of Appellate Procedure Rule 7.  (Doc. 1094 at 7)

Frank also attacks the merits of the district court's finding that he is a serial objector, arguing he does not object to settlements for personal financial gain and thus

---

[4] That the appeal bond order finds Frank is a serial objector demonstrates that the finding was intentional and, not, as Frank claims, driven solely by the district court's alleged unquestioned adoption of the proposed final approval order.

by definition should not be so labeled.[5]   (Frank's Motion for Reconsideration at 16-18)

Frank made the same argument in unsuccessfully moving to supplement the record.

(Frank's Rule 10(e)(2)(C) Motion at 5-6)   Re-arguing matters that already have been

rejected is not a proper purpose of a motion for reconsideration. *See Wilson*, 2018 WL

4676492, at *2.   If Frank wants to pursue in his pending appeal from the bond order

whether its findings personal to him are supported by the record, he is free to do so.

However, that appeal does not require the appellate record to be supplemented with

the proposed order class counsel submitted before final approval, which occurred

months before the appeal bond order was entered, and thus the proposed order is

irrelevant for purposes of his motion for reconsideration.

## **CONCLUSION**

Nothing new has occurred warranting reconsideration of this Court's May 7,

2020 order.   The district court's finding that Frank is a serial objector is supported by

---

[5] Frank creates his own definition so he can argue he is not a serial objector.   Setting
aside the fact that Frank makes his living from objecting and thus may be a serial
objector even under his own definition, a desire for financial gain is not required.
Section 21.643 of the *Manual for Complex Litigation*, which Frank cites, criticizes those
who repeatedly file weak objections and delay implementation of a settlement for any
"improper purpose" or who are "motivated by self-interest" rather than a desire to
benefit the class.   Regardless, the trial court did not use Frank's definition, but the
*Manual*'s broader approach, and under that approach found that he is a serial objector
because he has objected in dozens of cases, previously asserted the same weak
objections unsuccessfully, has little chance of prevailing, and is not acting in the best
interest of the class. (Doc. 1029 at 110, 113-14)   Other courts have used a similar
definition. *See In re Yahoo Mail* Litig., 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016)
(finding that an objector who filed meritless objections in 25 cases was a "serial
objector" without any discussion of whether he was motivated by financial gain).

the existing record. The proposed final approval order is not needed to resolve the merits of the pending appeals. And supplementing the record with the proposed order will only allow Frank to pursue his personal vendetta against the trial judge, which will needlessly delay resolution of these appeals to the detriment of the class. Therefore, Frank's motion for reconsideration should be denied.

Dated: May 27, 2020

Respectfully submitted,

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
Ga Bar No. 107744
**DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC**
1355 Peachtree Street, N.E.
Suite 1725
Atlanta, Georgia 30309
Tel. 404.881.8900
kcanfield@dsckd.com

*/s/ Amy E. Keller*
Amy E. Keller
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

*/s/ Norman E. Siegel*
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com

***Consumer Plaintiffs' Co-Lead Counsel***

17

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

David J. Worley
Ga. Bar No. 776665
**EVANGELISTA WORLEY LLC**
8100A Roswell Road Suite 100
Atlanta, Georgia 30350
Tel. 404.205.8400
david@ewlawllc.com
*Consumer Plaintiffs' Co-Liaison Counsel*

Andrew N. Friedman
**COHEN MILSTEIN SELLERS &**
**TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202.408.4600
afriedman@cohenmilstein.com

Eric H. Gibbs
**GIRARD GIBBS LLP**
505 14th Street
Suite 1110
Oakland, California 94612
Tel. 510.350.9700
ehg@classlawgroup.com

James Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

18

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, New York 10119
Tel. 212.946.9453
atadler@tadlerlaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel. 813.223.5505
jyanchunis@forthepeople.com

William H. Murphy III
**MURPHY, FALCON & MURPHY**
1 South Street, 23rd Floor
Baltimore, Maryland 21224
Tel. 410.539.6500
hassan.murphy@murphyfalcon.com

Jason R. Doss
Ga. Bar No. 227117
**THE DOSS FIRM, LLC**
36 Trammell Street, Suite 101
Marietta, Georgia 30064
Tel. 770.578.1314
jasondoss@dossfirm.com
*Consumer Plaintiffs' Steering
Committee*

Rodney K. Strong
**GRIFFIN & STRONG P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Tel. 404.584.9777
rodney@gspclaw.com
*Consumer Plaintiffs' State Court
Coordinating Counsel*

19

## CERTIFICATE OF COMPLIANCE WITH TYPE-FACE VOLUME LIMIT, <u>TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,497 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: May 27, 2020.                    */s/ Roy E. Barnes*
                                        Roy E. Barnes
                                        Ga. Bar No. 039000
                                        **BARNES LAW GROUP, LLC**
                                        31 Atlanta Street
                                        Marietta, Georgia 30060
                                        Tel. 770.227.6375
                                        roy@barneslawgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Those counsel for Objector-Appellants and Defendant-Appellees who are registered ECF users will be served by the ECF system.

I also certify that copies of the foregoing were served upon the following Objector-Appellants via electronic mail pursuant to agreement this May 27, 2020.

Shiyang Huang
defectivesettlement@gmail.com

George Willard Cochran, Jr.
lawchrist@gmail.com

I also certify that copies of the foregoing were served upon the following Objector-Appellants via U.S. Mail (and electronic mail, where listed below) this May 27, 2020.

Christopher Andrews
P.O. Box 530394
Livonia, Michigan 48153

Alice-Marie Flowers
P.O. Box 2322
Anderson, Indiana 46108

/s/ *Roy E. Barnes*
Roy E. Barnes
**Attorney for Plaintiffs-Appellees**

# Exhibit 1

*Huang, et al. v. Spector, et al.,*
**Case Nos. 20-10249, 20-10610, 20-10611, 20-10612, 20-10613**

Case 1:17-md-02800-TWT Document 1163-5 Filed 05/23/20 Page 25 of 34
Case: 1:17-md-02800-TWT Document 1094 Filed 05/23/20 Page 1 of 10
Case: 20-10249    Date Filed: 05/27/2020    Page: 2 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 1:17-md-2800-TWT ALL CASES |

## ORDER

This is an MDL proceeding arising out of the Equifax data breach. It is before the Court on the Plaintiffs' Motion for Bond Pending Appeal [Doc. 1040]. The Plaintiffs seek an order requiring Objectors/Appellants Theodore H. Frank and David R. Watkins, Mikell West, George W. Cochran, Christopher Andrews, and Shiyang Huang(collectively, "Objectors") to post appeal bonds. The Plaintiffs contend that they are harmed and prejudiced by the appeals lodged by the Objectors. Under the terms of the class settlement, no part of the $380.5 million in cash benefits, credit monitoring, or the other significant non-monetary relief will be provided to class members until the appeals are resolved. Under Rules 7 and 8 of the Federal Rules of Appellate Procedure, the Plaintiffs move for an order requiring each Objector to post an appeal bond in the amount of $20,000, as security for the costs of appeal.

T:\ORDERS\17\In re Equifax\appealbond.docx

Case 1:17-md-02800-TWT Document 1163-5 Filed 05/27/20 Page 26 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 26 of 34
Case: 20-10249    Date Filed: 05/27/2020    Page: 3 of 11

On July 22, 2019, the Plaintiffs filed their motion to direct notice of the settlement of this action to the settlement class, informing the Court that the parties had entered into a settlement providing for a non-reversionary cash fund of $380.5 million to pay benefits to the class, including cash compensation, credit monitoring, and help with identity restoration. In addition, Equifax may pay up to another $125 million for certain out-of-pocket losses. Equifax must also spend a minimum of $1 billion for data security and related technology over five years and comply with comprehensive data security requirements. The Court granted the Plaintiffs' motion the same day, and, in its Order, set forth the requirements for any objections to final approval of the settlement. Of the approximately 147 million class members, only 388 directly objected to the settlement which the Court recognized was a "miniscule number . . . in comparison to the class size." The Court recognized that many of the objections were in the response to "incomplete or misleading media coverage, or at the behest of serial class action objectors, and often demonstrat[ed] a flawed understanding of the settlement terms."

On December 19, 2019, the Court heard oral argument regarding the merits of the settlement and the Plaintiffs' motion for fees, expenses, and service awards to the class representatives. Thereafter, in an Order dated January 13, 2020 (and

Case 1:17-md-02800-TWT Document 1103-5 Filed 05/23/20 Page 27 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 3 of 10
Case: 20-10249 Date Filed: 05/27/2020 Page: 4 of 11

amended March 17, 2020), the Court finally approved the settlement and granted the Plaintiffs' motion for fees, expenses, and service awards. In its Order, the Court determined that the settlement was fair, reasonable, and adequate and complied with Federal Rule of Civil Procedure 23. The Court also found the settlement to be the largest data breach settlement in history, providing class members "an unprecedented package of benefits, including but not limited to cash compensation for out-of-pocket losses fairly traceable to the breach of up to $20,000 per class member, reimbursement for time spent as a result of the breach, and 25% of the amount paid to Equifax by class members for identity restoration services in the year prior to the breach; ten years of high quality credit monitoring services having a retail value of $1,920 per class member; and seven years of identity restoration services without the need to file a claim," and "a consent order requiring [Equifax] to comply with comprehensive cybersecurity standards, spend at least $1 billion on data security and related technology, and have its compliance audited by independent experts." The Court also thoroughly addressed the substance of each objections, and found that they each lacked merit, and in some instances, were made in bad faith. The Objectors filed Notices of Appeal.

3

T:\ORDERS\17\In re Equifax\appealbond.docx

Case 1:17-md-02800-TWT Document 1169-5 Filed 05/23/20 Page 28 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 4 of 10
Case: 20-10249    Date Filed: 05/27/2020    Page: 5 of 11

Under the terms of the settlement agreement, no money can be paid out or relief provided under the settlement until final resolution of any appeals, which in the ordinary course could take a year or more. The Plaintiffs contend that the existence of this delay provides an opportunity for Objectors to continue to act against the settlement class's interests, spread further misinformation about the settlement, or attempt to leverage the appeal into a personal money-grab, allowing them to attempt to extract a payment in exchange for dismissal of their appeals so that the settlement funds can be distributed immediately. The Plaintiffs contend that the delay caused by these appeals will result in substantial costs to the class, costs that Objectors/Appellants should be required to secure with a bond.

Courts routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal and to protect against the additional costs the class will incur caused by the delay of appeal. *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:08-CV-23323-JLK, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012); *In re Cardizem CD Antitrust Litig.*, 391 F. 3d 812, 816-17 (6th Cir. 2004); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010); *Aboltin v. Jeunesse LLC*, No. 6:17-CV-1624-ORL-40TBS,

4

2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019). Requiring objectors to post bonds also serves to discourage frivolous appeals. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizeable bond"); *In re Polyurethane*, 178 F. Supp. 3d at 638.

Such bonds are authorized by Federal Rule of Appellate Procedure 7, which provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *See*, *e.g.*, *In re Checking*, 2012 WL 456691, at *2; *Aboltin*, 2019 WL 1092789, at *3; *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CIV, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006); *In re Uponor, Inc.*, *F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012). The amount of the bond rests in the Court's discretion. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th Cir. 2005). Among the costs a court can consider in setting the amount of the bond are costs taxable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 and the increased administrative costs and loss of interest resulting from delay in consummating the settlement. *See, e.g.*, *In re Polyurethane*,178 F. Supp. 3d at 642-

5

Case 1:17-md-02800-TWT Document 1149-5 Filed 05/28/20 Page 30 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 6 of 10
Case: 20-10249    Date Filed: 05/27/2020    Page: 7 of 11

45; *In re Checking*, 2012 WL 456691, at *2; *In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

In determining if an appeal bond is appropriate, courts consider several factors, including: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 212; *In re Checking*, 2012 WL 456691, at *2. Each of these factors supports requiring each Objector to post a bond in this case.

Courts presume that an objector is financially able to post an appeal bond unless he or she demonstrates otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Polyurethane*, 178 F. Supp. 3d at 641-42; *In re Cardizem*, 391 F.3d at 818. Accordingly, the Plaintiffs need not prove that each Objector can afford to post the bond the Plaintiffs have requested; the burden is on each Objector to come forward with sufficient financial information to prove that a bond is beyond their means. Regardless, Objector West, for example, is represented by counsel, who presumably have agreed to advance litigation expenses on his behalf. Most of the

Case 1:17-md-02800-TWT Document 1169-5 Filed 05/23/20 Page 31 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 8 of 11
Case: 20-10249   Date Filed: 05/27/2020   Page: 8 of 11

other Objectors have already been identified by this Court as serial objectors, who

have extorted money from counsel in prior class actions to withdraw their objections,

and thus should not be heard now to claim they cannot afford to put up a bond to

pursue their appeals.

Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding

whether to require a bond. *See*, *e.g.*, *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998);

*Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL

456691, at *2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-

29 (S.D.N.Y. 1999). The less likely it is an appeal will succeed, the stronger the case

for a requiring a bond. Here, each Objector's appeal lacks merit and has no legitimate

likelihood of success.

This Court has already found that Objectors Frank, West (through his attorney

Christopher Bandas), Cochran, and Andrews "are serial objectors, that they have

unsuccessfully asserted many of the same or similar objections in other class action

settlements, that their objections are not in the best interests of the class, that there

is no substantial likelihood their objections will be successful on appeal, and that the

class would be best served by final resolution of their objections as soon as

practicable so that class members can begin to benefit from the settlement." Objector

Case 1:17-md-02800-TWT Document 1163-5 Filed 05/23/20 Page 32 of 34
Case 1:17-md-02800-TWT Document 1094 Filed 05/13/20 Page 8 of 10
Case: 20-10249    Date Filed: 05/27/2020    Page: 9 of 11

Andrews has been cited for repeatedly filing frivolous objections and related motions; sanctioned for engaging in vexatious and bad faith litigation; arrested and held in contempt for violating a court order. One of his litigation tactics is to make outrageous and utterly unsubstantiated charges of fraud, collusion, and unethical conduct regarding class counsel and the courts evaluating the fairness of class action settlements to which he has objected. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp.3d 635, 639-40 (N.D. Ohio 2016); *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 WL 8791098 (6th Cir. Dec. 14, 2017). The wild and outrageous accusations in his Response to the Motion for Bond Pending Appeal are typical.

The problem posed by professional objectors is well known. *See, e.g.*, Newberg on Class Actions § 15:37. The Federal Judicial Center has advised courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009). And federal courts overseeing class actions have described the conduct of professional objectors in stark terms. For example, one judge noted:

8

> Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

There is a substantial risk that the costs of appeal will not be paid unless a bond is required. Each Objector resides outside of this Court's physical jurisdiction. If the costs of appeal are not voluntarily paid, the Plaintiffs will be forced to institute a collection action in one or more other jurisdictions. Courts routinely find a substantial risk of non-payment under such circumstances, warranting an appeal bond. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 293.

Here the Plaintiffs seek only a modest bond for the costs of appeal. Taxable costs listed in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 are customarily included in an appeal bond. *See, e.g., In re Polyurethane*, 178 F. Supp. 3d at 642; Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (4th ed. 2008). These costs include, among others, preparing and transmitting the record, obtaining necessary transcripts, printing, and copying. *Id*. The Court does find that

9

T:\ORDERS\17\In re Equifax\appealbond.docx

the request for $20,000 for each Objector to secure appeal costs is excessive. The Court finds that an appeal bond of $2,000 for each Objector is more appropriate.

The Plaintiffs' Motion for Bond Pending Appeal [Doc. 1040] is GRANTED. Therefore, the Court orders each Objector to post a bond of $2,000 or deposit $2,000 in cash in the registry of the Court for the costs of appeal. Each Objector has 14 days from the date of this Order to post a bond acceptable to the Clerk or a cash deposit.

SO ORDERED, this 11 day of May, 2020.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

10

T:\ORDERS\17\In re Equifax\appealbond.docx