UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL No. 17-2800-TWT |
| | CONSUMER ACTIONS |
| THEODORE H. FRANK and DAVID R. WATKINS, | Chief Judge Thomas W. Thrash, Jr. |
| Objectors. | |

**FRANK AND WATKINS'S REPLY IN SUPPORT OF MOTION TO CLARIFY, OR IN THE ALTERNATIVE, MOTION TO SUPPLEMENT THE RECORD PURSUANT TO FED. R. APP. P. 10(e)(1)**

As Local Civil Rule 7.1(C) permits, and in the interests of expediting the appellate proceedings, Objectors Frank and Watkins reply after only two days to Plaintiffs' Opposition ("Opp.," Dkt. 1148) to Objectors' Motion to Clarify, or in the Alternative, Motion to Supplement the Record Pursuant to Fed. R. App. P. 10(e)(1) ("Motion," Dkt. 1134).

Plaintiffs' Opposition does not contest that this Court's May 15 order incorrectly held that "the Court of Appeals necessarily found that the proposed orders were not material to the appeal." Dkt. 1106. Since then, the Court of Appeals expressly clarified "that its May 7, 2020 order denying Appellants' 'Motion for Relief under Fed. R. App. Proc. 10(e)(2)(C)' did not 'reject [Appellants'] claim that the proposed final approval order was necessary for any issue on appeal.'" Opp. Ex. G (Dkt. 1148-7) at 3. Over

eighteen pages, plaintiffs provide no argument as to why this development does not undermine the May 15 order, nor any reasoned basis for hiding the *ex parte* communication, which the Code of Conduct for U.S. Judges requires to be disclosed.

Instead, the Opposition—which plaintiffs took two weeks to file—theorizes that supplementing the record would delay appellate proceedings, which plaintiffs admit are currently halted for unrelated reasons involving a different objector who has not even joined this Motion. Opp. at 18.

Plaintiffs are wrong. The appeal will not be slowed by disclosure of the complete record, but denying this motion will. First, the appeal remains stayed because of plaintiffs' collateral litigation with Objector Andrews. Second, if no relief is granted in this Court, the appeal will be delayed by a Rule 10(e)(3) motion in the Eleventh Circuit. Third, because as plaintiffs noted in an opposition before the Eleventh Circuit, it is *disqualifying* for a judge to have "*ex parte* discussions about the merits of the case with one party's experts and refuse[] to describe or permit discovery of the discussions." Opp. Ex. B (Dkt. 1148-2) at 19. *Accord* Code of Conduct for U.S. Judges Canon 3A(4). It is *denial* of Frank's motion that would be grounds for recusal and reassignment.

If plaintiffs have nothing to hide, they should welcome disclosure, because then the proposed order will prove immaterial. That plaintiffs instead complain about filing their "sixth brief" relating to this matter demonstrates a fear of sunlight. There would have been *no* delay if plaintiffs

had filed the proposed order in January, when Frank and Watkins requested it, or on May 7, when this Court ordered the proposed opinion to be filed "as soon as reasonably possible." Dkt. 1084. (Plaintiffs did not seek relief from that order for four days, again confirming their interest in frustrating the appellants rather than expediting the appeal.)

Plaintiffs' theory that disclosure of *ex parte* communication would lead to a Rube Goldberg machine of delays lacks merit, and certainly does not justify violating judicial norms. In the interests of expediting a decision on their Motion, Frank and Watkins file this Reply within two days rather than the fourteen they are allotted under LR 7.1(C). Objectors pray this Court quickly orders the resolution that plaintiffs could have provided themselves with minutes of effort—over five months ago.

## Background

Plaintiffs make several errors and omissions in their recitation of the events in this case.

### A. Frank and Watkins never had an opportunity to object to the findings against them, nor to the *ex parte* process by which the proposed orders were submitted.

As this Court is aware, objections to the underlying settlement were due on November 19, 2019, and the Court's Order Directing Notice provided a firm 25-page limit and no opportunity for reply. Dkt. 742, ¶ 20. Frank and Watkins complied with this order and filed their objection on November 18. Dkt. 900. The Court ordered this process intentionally, in hopes of avoiding a deluge of late reply filings by one or more objectors. Transcript of Dec. 19,

2019 Proceedings ("Tr.," Dkt. 943) at 87-88. Plaintiffs, however, had other plans.

First, on December 5, 2010, along with their Response to Objections (Dkt. 900), plaintiffs filed a 72-page Supplemental Declaration of Prof. Robert H. Klonoff, which entirely consisted of legal arguments and functioned as a legal brief arguing extensively against objectors. Dkt. 900-2. The Supplemental Klonoff Declaration thus evaded the 50-page limit that plaintiffs themselves requested on December 2, *after* the objections were received. Dkt. 891.

Also on December 5, plaintiffs filed a declaration which contained *ad hominem* attacks against Ted Frank (Dkt. 900-1), but neither the declaration nor the Response, nor the Klonoff Declaration suggested that findings should be made against Mr. Frank. This omission was significant, because the Response *did* recommend that findings be made against *other* objectors. *See* Dkt. 902 at 40-42 (arguing that West, Andrews, and Scheffler—but not Frank—were "professional objectors").

Plaintiffs assert that Frank and Watkins "never challenged the evidence in class counsel's declarations, even though the first declaration was submitted more than two weeks before the final approval hearing, leaving him ample time to respond (although Frank did spend time trying to disqualify one of Plaintiffs' experts, Doc. 909)." Opp. at 5. In fact, Objectors, unlike plaintiffs, sought to comply with the Court's procedural order. For this reason, Frank and Watkins did not attempt to smuggle in substantive

rebuttal argument into their 6-page Motion to Strike the Belated Klonoff Declaration, but instead renewed and applied arguments from their prior motion that the Supplemental Klonoff Declaration, like the earlier Klonoff Declaration, constituted impermissible opinion on legal matters. Dkt. 909. And even this six-page motion crossed the line for plaintiffs, who argued it should be denied because "the Court's Order Directing Notice did not contemplate that objectors would be allowed to file reply briefs or engage in seriatim motion practice." Dkt. 932 at 4 n.3. According to plaintiffs then, Frank and Watkins were forbidden from filing a reply, and having failed to file a reply, have forfeited any argument to complain about findings on appeal. This is obviously wrong.

On the eve of the fairness hearing, plaintiffs filed—in defiance of the court's scheduling orders—an additional 22-page declaration of additional *ad hominem* attacks against the objectors. And yet still this filing did not suggest that any findings be made against Frank or Watkins. True, Objectors' counsel did not argue against these declarations at the fairness hearing—but they didn't amount to anything except *ad hominem* attacks. The Center for Class Action Fairness often encounters *ad hominem* arguments, and strives to focus on substance over atmospherics. For this reason, Frank's counsel sought leave to respond to the seemingly-substantive chart that class counsel also filed the previous night, which purported to catalog objection deficiencies. Tr. at 85. Objector's counsel did not seek leave to respond to plaintiffs' characterizations of Ted Frank's twitter activity

5

because **even hours into the fairness hearing, plaintiffs *still* had not sought findings against Frank or Watkins.** Only after Frank's counsel sat down did plaintiffs argue for the first time that findings should be made against Frank. Tr. at 90-91. Only after Frank's counsel sat down did plaintiffs reveal that their new oral motion to label Frank a "serial objector" is "why we filed the declaration last night." Tr. at 86-88.

Following the lengthy presentation by plaintiffs' counsel, two objectors attempted to interject a rebuttal, and were denied by the Court. Tr. at 113. The Court took a recess and then immediately provided its ruling from the bench, comprising 9 transcript pages. Tr. at 114-23. The oral ruling mentioned neither Frank nor Watkins and remarked only "[a]nd for the reasons stated by Mr. Siegel, it's my judgment that most of the objections that were voiced here today did not take into consideration the best interest of the Class itself." Tr. at 117.

To summarize: Frank and Watkins were not permitted to file a reply and so did not file a reply to plaintiffs December 5 papers. In any event, the December 5 papers *did not* call for any findings to be made against them, though it did against three other objectors. In fact, plaintiffs didn't argue that any findings should be made against Frank until the *day of the fairness hearing*, **after Frank's counsel had already spoken**, based partially on purported evidence that plaintiffs had filed the night before. After plaintiffs made this argument for the first time, the court did not permit any further argument from objectors. The Court ordered plaintiffs to provide it with

proposed orders, but nowhere is it suggested they be provided *ex parte*, and so the objectors could not have objected to the *ex parte* process; indeed, because of the *ex parte* process, objectors also could not respond to the substance of the proposed orders.

**B. The findings against Frank were not supported.**

Plaintiffs suggest that the proposed orders are immaterial because the findings against Ted Frank are supported by the record. They are not. The opinion repeated class counsel's false claims about Frank made for the first time at the fairness hearing that Frank had no notice of, no opportunity to rebut, and no reason to believe would be in the opinion. The *ad hominem* attacks plaintiffs repeat are irrelevant to whether this Court should comply with Canon 3A(4), but it is worth noting that they are completely false and have already been demonstrated to be false. Dkt. 1057-2.[1]

---

[1] Plaintiffs cite two additional quotes they claim to be false from the supplemental declaration filed on the eve of the fairness hearing (Opp. at 4), but all of these remarks were made *after the settlement deadline* and so could not possibly be calculated to encourage objections to the settlement, even if they were actually false and not simply complaints about Frank's choice of words. Plaintiffs complain that Frank said class counsel had "blam[ed]" a Congresswoman "for their screwed up settlement and notice program." Opp. at 4. Yet plaintiffs *did* cite the Congresswoman's Twitter "tweet" as promulgating "innocent but pervasive misinformation regarding" settlement benefits. Dkt. 900-1 at 20-21. Plaintiffs did in fact attribute dissatisfaction with the settlement (blame, in other words) on such "misinformation."

Note that the Congresswoman's allegedly misinformed tweet earned 83,100 "likes" and 37,100 "retweets" by other Twitter users. In contrast, none of the tweets by Ted Frank sent prior to the objection deadline and cited by plaintiffs garnered more than 3 likes or retweets. *Id.* at 28-29, 33.

Because the Opinion cites nothing in the record for its findings, Frank is handicapped in defending against them. These are the kind of impermissible "findings [that] have taken the form of conclusory statements unsupported by citation to the record." *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985).

C. **Frank and Watkins's unopposed January motion to supplement the record was denied based on plaintiffs' incorrect characterization of the Eleventh Circuit's order.**

Because the *ex parte* communications between class counsel and the district court were never placed on the docket, and were not on the record on appeal, Frank and Watkins made an unopposed motion on January 17 under Fed. R. App. Proc. 10(e)(2)(B) for the district court to correct the record by placing the *ex parte* communications on the docket. Dkt. 961. As Frank and Watkins noted in their original motion, and no one disputes, class counsel never argued that Frank was a serial objector in any written filing. *Id.* at 5. To the contrary, before the hearing, plaintiffs argued that only *other objectors* should be discounted as "serial objectors." Dkt. 902 at 40-42.

The Court granted Frank's unopposed January motion on May 7. The May 7 Order required plaintiffs to file the proposed orders "as soon as reasonably possible." Dkt. 1084. Plaintiffs did not comply, nor move to stay, nor move to reconsider the order. Instead, on May 11, class counsel filed a self-styled "motion to clarify." Dkt. 1093. Plaintiffs falsely represented that "the appellate court determined that the proposed order is not needed to resolve the appeals from this Court's final approval order." *Id.* at 5.

8

In fact, the Eleventh Circuit provided no explanation for its denial of Frank and Watkins' similar motion before that court, as Objectors noted in their opposition filed on May 2. Dkt. 1101 at 2. Frank and Watkins also argued that plaintiffs did not meet the standard for reconsideration as they did not even oppose Frank's January motion.[2]

Nevertheless, on May 15, the Court construed the plaintiffs' motion as a motion to reconsider, and—without once mentioning the standards for motions to reconsider—it vacated the May 7 order. The Court adopted class counsel's reasoning that the Eleventh Circuit's (unexplained) denial of Frank's Rule 10(e)(2)(C) motion "necessarily found that the proposed orders were not material to the appeal." Dkt. 1106.

As explained in the memorandum in support of the motion, Frank and Watkins sought reconsideration in the Eleventh Circuit because plaintiffs had argued the motion should be denied because the Court had not yet ruled on the January motion. Dkt. 1134-1 at 4. The Eleventh Circuit denied the

---

[2] Opposition was required under the rules within two weeks, and plaintiffs informed they had "no objection to making the Proposed Orders part of the record." Dkt. 971. Even months later, when plaintiffs reminded the Court of the possible pendency of the January motion on May 2, they did not tell the Court they then opposed the motion, but only "let the Court know of the position Plaintiffs have taken before the appellate court." Dkt. 1077. Incredibly, plaintiffs argue that Frank and Watkins have waived their opposition to findings plaintiffs never articulated until the fairness hearing, using a process that Objectors could not have known would rely on *ex parte* communication, yet plaintiffs feel entitled to change their mind about allowing class members to see the *ex parte* communication five months after Objectors filed their unambiguous written motion seeking it.

motion on June 8, but clarified that it "did not 'reject[] [Appellants'] claim that the proposed final approval order was necessary for any issue on appeal.'" Opp. Ex. G (Dkt. 1148-7) at 3. Therefore, the sole reason given in the Court's May 15 order (Dkt. 1106) is unfounded.

## Argument

Plaintiffs try to litigate several questions that are not at issue in this Motion, but these provide no basis for having an incomplete appellate record.

Plaintiffs cannot deny that this Court's May 15 order denied Frank and Watkins's January motion for only one stated reason, which the Eleventh Circuit clarified to be false: that "the Court of Appeals necessarily found that the proposed orders were not material to the appeal." Dkt. 1106. For this reason alone, the Court should revisit the reasoning of the May 15 order. Even though plaintiffs assert that Eleventh Circuit's intervening order does not justify reconsideration, they admit that the Court "may want to reassess its decision." Opp. at 12.

Plaintiffs propose that the Court refuse to complete the record because the proposed orders are "unnecessary" because in some circumstances verbatim proposed orders may be permissibly adopted by courts. But this is not the correct standard. What matters is whether the complete record is *material* to the appeals. Maybe Objectors' arguments are ultimately unsuccessful, but the record sought is certainly *material* to the arguments.

Moreover, by default American courts are public and transparent. The proposed orders do not just resolve "personal issues" to Frank, but concerns

the resolution of tens of millions of class members' claims. These norms are embodied in the Code of Conduct for U.S. Judges, and plaintiffs dim view of Frank and Watkins's appeal is not a reason to violate it.

Finally, plaintiffs argue that *other objectors'* refusal to assent to a stipulation waiving their arguments on appeal suggests Frank's Motion should be denied. It does not.

### A. The proposed orders are material—they need not be determinative.

Plaintiffs do not deny that the proposed orders are material to the arguments Frank and Watkins seek to present on appeal. Instead, they argue the proposed orders are not "necessary" because Frank can show the deficiency of the findings against him from the record and the Eleventh Circuit sometimes affirms "verbatim adoption of proposed orders." Opp. at 13.

But the question remains whether the omissions are *material* to the record—not whether they are *determinative* to Frank's arguments. Currently, the record does not reflect the differences between the proposed orders and the Final Orders entered by the Court. Any differences between the proposed and Final Orders are material. Dkt. 1134-1 at 6 (citing cases). Plaintiffs do not and cannot dispute these authorities from Frank's brief.

Maybe the *ex parte* proposed orders support Objectors' arguments on appeal; maybe they do not. Maybe Objectors' arguments on appeal would prevail or lose regardless of the proposed orders. But the contents of the proposed orders are surely material and belong in the record. Plaintiffs

instead cite cases where parties unsuccessfully challenged process based on a complete record. Opp. at 14-15. These authorities do not suggest that a substantially *verbatim* duplication of a proposed opinion is *never* material.[3]

## B. Disclosure of *ex parte* communication is required by the Code of Conduct for U.S. Judges.

Plaintiffs' suggestion that the *ex parte* proposed orders should be held in confidence runs against the nature of courts in this country, which are by default public and adversarial.

Canon 3A(4) of the Code of Conduct for United States Judges provides: "a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." While *ex parte* proceedings are sometimes necessary on an emergency basis, courts should ensure "the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication." Canon 3A(4)(b).

---

[3] Plaintiffs intone that "Frank only complains about the final approval order, which contains the findings about him." Opp. at 6. This is incorrect. The Motion seeks the proposed opinion and proposed final judgment. Dkt. 1134 at 1. A third document—the proposed consent order—was publicly filed last July, so is not an undisclosed *ex parte* communication. Dkt. 739-2 at 84-98. Moreover, the final approval order includes language about Klonoff and the class certification that differs from the Court's oral ruling, so the proposed final approval order is relevant to those issues on appeal. *E.g.,* Dkt. 1148-1 at 12.

Plaintiffs clearly believe that the non-public *ex parte* communication provides them a tactical advantage in the appeal. Plaintiffs have expressly argued that the Court should *not* disclose the proposed orders because they allegedly may become fodder for arguments that plaintiffs imagine Frank and Watkins will advance before the Eleventh Circuit. Opp. at 16.

Denial of the Motion for this reason would be improper under the Canons, and pointless besides. Plaintiffs argue that disclosure of the proposed orders will enable Frank and Watkins to move for "reassignment of this Court for alleged misconduct." Opp. at 1. Perhaps—but so would denial of the Motion. In *Edgar v. K.L.*, a district court refused discovery into oral communication between the court and an expert witness, and was disqualified—removed from the case by a writ of mandamus—for the court's refusal to place the communication in the record and the court's failure to "reconcile with Canon 3A(4) … the procedure he used in this case." 93 F.3d 256, 259 (7th Cir. 1996). As plaintiffs surmised themselves, it is *disqualifying* for a judge to have "*ex parte* discussions about the merits of the case with one party's experts and refuse[] to describe or permit discovery of the discussions." Opp. Ex. B (Dkt. 1148-2) at 19 (describing *Edgar v. K.L.*).

## C. Plaintiffs' inability to get *other objectors* to waive their rights on appeal does not provide a reason to deny the Motion.

Plaintiffs finally argue that denial of Frank's Motion would be "detrimental" to resolving the appeals because *other objectors* would not agree to a broad stipulation calculated to surrender objectors' options on appeal.

Opp. at 18. This is preposterous. The stipulation that plaintiffs offered speaks for itself. Opp. Ex. H (Dkt. 1148-8).

That said, even in light of plaintiffs' manifestly unacceptable draft stipulation, plaintiffs cannot deny that Frank and Watkins *remained willing to negotiate in good faith* to revise the stipulation so that it would not waive objectors' substantive rights. *Id.* at 2. Plaintiffs—not Frank and Watkins— refused this invitation because *other objectors* had already signaled their firm disapproval. *Id.*

Frank and Watkins's willingness to negotiate is unsurprising. These Objectors hope to simplify and expedite the appeal, while plaintiffs instead pin their hopes on maneuvers to *suppress* the appeals while *prolonging* the proceedings. Whereas Frank and Watkins "already agreed to file an opening brief twenty-four days after the disclosure of the proposed opinion" (Opp. Ex. F at 4), plaintiffs sought punitive appeal bonds in the apparent hope objectors could not pay. Plaintiffs complain that the settlement may hypothetically be delayed by ancillary motions, but if delay were really paramount, pausing the appeal to seek $20,000 from each objector makes no economic sense when allegedly caretaking a putative $380 million settlement. (Indeed, the appeal is paused only now because the plaintiffs seek $2,505 from appellant Andrews.)

Nor did it make sense for plaintiffs to wait two full weeks to file their opposition to the Motion, given that the time for this reply (or the Court's

decision) is constrained by the date of plaintiffs' response. In an effort to assist a speedy resolution, Frank files this reply within two days.

## Conclusion

Plaintiffs insist that the *ex parte* communication was harmless and wouldn't support disqualification of the Court. If true, then disclosure should be desirable, and plaintiffs could have filed the proposed orders months ago. Instead, plaintiffs demand that the *ex parte* communication be entirely hidden from appellate review—an action that *would* violate the Code of Conduct and require recusal. The parties provide no reason and no precedent why the *ex parte* communication should not be part of the record. The Court should disclose the proposed orders itself, or order plaintiffs to do so.

Dated: June 25, 2020.　　　　　　　　/s/ Melissa A. Holyoak
　　　　　　　　　　　　　　　　　　Melissa A. Holyoak, (DC Bar No. 487759)
　　　　　　　　　　　　　　　　　　Hamilton Lincoln Law Institute
　　　　　　　　　　　　　　　　　　1629 K Street, NW Suite 300
　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　Phone: (573) 823-5377
　　　　　　　　　　　　　　　　　　Email: melissa.holyoak@hlli.org

　　　　　　　　　　　　　　　　　　*Attorneys for Objectors David R. Watkins and Theodore H Frank*

## CERTIFICATE OF FONT

I hereby certify that this Motion and Memorandum in Support has been prepared in compliance with Local Rules 5.1 and 7.1.

Dated: June 25, 2020.                                    /s/ Melissa A. Holyoak

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

Dated: June 25, 2020.                    /s/ Melissa A. Holyoak