## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| _____ ) | MDL Docket No. 2800 |
| ) | Case No.: 1:17-md-2800-TWT |
| ) |  |
| In re: Equifax, Inc. Customer Data ) | This document relates to: |
| Security Breach Litigation ) |  |
| ) | FINANCIAL INSTITUTIONS TRACK |
| ) |  |
| _____ ) |  |

## FINANCIAL INSTITUTION PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR APPROVAL OF
## <u>ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS</u>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................1

FACTUAL BACKGROUND ...................................................3

    I.    Factual and Procedural Overview of the Litigation .............................3

        A.    Negotiation of the Proposed Settlement ...................................6

        B.    Pertinent Terms of the Proposed Settlement...............................6

        C.    The Preliminary Approval and Notice Process..........................8

ARGUMENT ...................................................................9

    I.    The Requested Fee Should Be Approved Because It Is Reasonable and Supported by the Relevant Factors ............................9

        A.    The Settlement Creates a Constructive Common Fund from Which a Reasonable Percentage-Based Fee Can Be Determined................................................................9

        B.    The Requested Fee Is Within the Typical Approvable Range....................................................................12

        C.    The *Johnson* Factors Support Approval ...................................12

            1.    The Time and Labor Involved .......................................13

            2.    The Novelty and Difficulty of Factual and Legal Questions Involved .......................................................14

            3.    The Skill Required and the Experience, Reputation, and Ability of Counsel..................................................16

            4.    The Customary Fee, Contingent Nature of the Fee, and Preclusion of Other Employment ............................18

            5.    Time Limitations Imposed by the Client or Circumstances..............................................................19

            6.    The Amount Involved and Results Obtained ................19

       7.     Awards in Similar Cases.................................................20

   D.   A Lodestar "Crosscheck" Confirms the Reasonableness of the Award ................................................................................21

II.   The Requested Expenses Should Be Approved Because They Are Reasonable and Were Necessary to Prosecute the Litigation ......22

III.   The Service Awards Are Reasonable and Should Be Approved to Recognize Plaintiffs for Their Service to the Settlement Class ......23

CONCLUSION ......................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................9

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ........................................................9, 11, 12, 18

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011)............................................................18

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
   887 F.3d 803 (7th Cir. 2018) ............................................................................15

*Drazen v. GoDaddy.com, LLC*,
   No. 1:19-00563-KD-B, 2020 WL 4606979 (S.D. Ala. Aug. 11, 2020).............23

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*,
   289 F. Supp. 3d 1322 (J.P.M.L. 2017) ...............................................................4

*First Choice Fed. Credit Union v. The Wendy's Co.*,
   No. 2:16-cv-00506 (W.D. Pa.)....................................................................17, 20

*George v. Acad. Mortg. Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019).............................................................12

*Glover v. I.C. Sys., Inc.*,
   No. 5:19-cv-00103-TES, 2020 WL 3105091 (M.D. Ga. June 11, 2020)...........21

*In re Home Depot Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583 (N.D. Ga.) ..................................................................17, 20

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................23

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ....................................................................*passim*

*In re NetBank, Inc. Secs. Litig.*,
   No. 1:07-cv-2298-TCB, 2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ............22

iv

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ...............................................................18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...............................................................11

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
   MDL No. 14-2522 (PAM), 2016 WL 2757692
   (D. Minn. May 12, 2019)...........................................................15, 20

*In re Target Customer Data Sec. Breach Litig.*,
   No. 0:14-md-02522 (D. Minn.) ..........................................................20

*In re The Home Depot Inc.*,
   931 F.3d 1065 (11th Cir. 2019) ...............................................*passim*

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)........15

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007).........................................................15

*Veridian Credit Union v. Eddie Bauer LLC*,
   No. 2:17-cv-00356 (W.D. Wash.) .....................................................17

*Veridian Credit Union v. Eddie Bauer LLC*,
   No. 2:17-cv-00356-JLR, 2019 WL 5536824
   (W.D. Wash. Oct. 25, 2019) ..............................................15, 20, 21

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ............................................................9

*Wolff v. Cash 4 Titles*,
   No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...................12

## STATUTES, RULES & REGULATIONS

FED. R. CIV. P. 23(h).........................................................................9

## OTHER AUTHORITIES

ANNOTATED MANUAL FOR COMPLEX LITIGATION §21.7 (4th ed. 2020)..................10

ANNOTATED MANUAL FOR COMPLEX LITIGATION §21.62 (4th ed. 2020)...............23

Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*,
92 N.Y.U. L. REV. 937 (2017) ............................................................12

## INTRODUCTION

The Financial Institution Plaintiffs[1] (hereinafter, "Plaintiffs") move under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees, reimbursement of expenses, and approval of a Service Award for each Settlement Class Representative in connection with the Settlement Agreement and Release (Doc. 1107-4) (the "Settlement Agreement," "Settlement," or "SA") entered into with Defendants Equifax Inc. and Equifax Information Services LLC (collectively, "Defendants" or "Equifax").[2]   The Court preliminarily approved the Settlement on June 4, 2020, and authorized dissemination of Notice to the provisionally certified Settlement Class.  (Doc. 1133).  Pursuant to the deadlines approved by the Court, Plaintiffs will move for Final Approval of the Settlement on September 21, 2020.

---

[1]   The remaining named Financial Institution Plaintiffs are: Army Aviation Center Federal Credit Union, ASI Federal Credit Union, Bank of Louisiana, Consumers Cooperative Credit Union, Elements Financial Federal Credit Union, Firefly Credit Union, First Financial Credit Union, Halliburton Employees' Federal Credit Union, Heritage Federal Credit Union, Hudson River Community Credit Union, Peach State Federal Credit Union, SeaComm Federal Credit Union, Services Credit Union, Seven Seventeen Credit Union, Sky Federal Credit Union, State Employees Federal Credit Union (SEFCU), Summit Credit Union, Suncoast Credit Union, The Summit Federal Credit Union, Washington Gas Light Federal Credit Union, and Wright-Patt Credit Union.

[2]   Unless otherwise defined, all capitalized terms herein shall maintain the same meanings as those set forth in the Settlement Agreement.

If the Settlement receives Final Approval, Equifax will: (1) pay up to $5.5 million for Settlement Class Members who submit valid claims; (2) spend a minimum of $25 million over a period of two years towards adopting and/or maintaining data security measures pertinent to the Plaintiffs and their claims; (3) pay all reasonable Claims Administration and Notice costs; and (4) pay reasonable, Court-approved attorneys' fees, costs, and expenses, including Service Awards to each named Plaintiff, up to agreed-upon limits as set forth in the Settlement.

In connection with the approval of the Settlement, Plaintiffs request that the Court approve attorneys' fees in the amount of $2,000,000. This figure represents, at most, 25.8% of the constructive common fund created by the Settlement, even when numerous valuable benefits are excluded from the calculation. This percentage is within the typical range of fee awards in cases of similar type and complexity, and the reasonableness of the request is further supported by application of the factors described in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), including a lodestar cross-check. As shown below, counsel for the Plaintiffs will receive a "negative" multiplier of only 0.178 if their request is approved, indicating that counsel's extensive work in the Litigation will be compensated at a major discount when compared to counsel's usual hourly rates.

Plaintiffs also request reimbursement of litigation expenses in the amount of $250,000, which were reasonably incurred in furtherance of the Settlement Class's interests.  Finally, Plaintiffs request approval of Service Awards of $1,500 to each named Plaintiff for their services on behalf of the Settlement Class.

In support of their motion, Plaintiffs submit this memorandum, the Joint Declaration of Gary F. Lynch and Joseph P. Guglielmo ("Jt. Decl."), with Exhibit A attached thereto, and refer the Court to the previously filed Settlement Agreement (Doc. 1107-4).

## FACTUAL BACKGROUND

### I.    Factual and Procedural Overview of the Litigation

On September 7, 2017, Equifax Inc. announced that it had been the victim of a criminal cyberattack (the "Data Breach") on its computer systems in which the attackers gained unauthorized access to the personal information of approximately 147 million U.S. individuals, including credit and debit card numbers ("Payment Card Data") from approximately 209,000 consumers.

After announcement of the Data Breach, approximately 20 putative class action lawsuits were filed by U.S. financial institutions against Equifax seeking damages and other relief and alleging that financial institutions had been injured as a result of the Data Breach.

On December 6, 2017, the Judicial Panel on Multidistrict Litigation transferred those cases to this Court for coordinated pretrial proceedings under the case caption *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.).  *See* 289 F. Supp. 3d 1322 (J.P.M.L. 2017).

The Court created separate litigation tracks for Consumer Cases and Financial Institution Cases and appointed separate leadership counsel for plaintiffs in each track.  The Court appointed Co-Lead and Co-Liaison Counsel and a Plaintiffs' Steering Committee for the Financial Institution Cases to, among other duties, direct and manage pretrial proceedings and coordinate settlement discussions or other dispute resolution efforts on behalf of Plaintiffs.  (Doc. 232).

On May 30, 2018, Plaintiffs filed their Consolidated Amended Complaint (the "Complaint") against Equifax, asserting claims for alleged negligence, negligence *per se*, violations of various states' unfair and deceptive trade practices statutes, and injunctive and declaratory relief.  (Doc. 390).  On July 16, 2018, Equifax moved to dismiss the Complaint (the "Motion to Dismiss").  (Doc. 435).  The Court heard oral arguments on the Motion to Dismiss on December 14, 2018.  On January 28, 2019, the Court issued an order granting in part and denying in part the Motion to Dismiss. (Doc. 539, corrected at Doc. 711).

On March 20, 2019, Plaintiffs filed a Motion for Leave to Amend (Doc. 648), which Equifax opposed on July 29, 2019.  (Doc. 774).  On December 18, 2019, the Court issued an order granting in part and denying in part the Motion for Leave to Amend.  (Doc. 941).

During the Litigation, the Parties engaged in significant motion practice and discovery.  In particular, Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to Amend the Complaint resulted in hundreds of pages of substantive briefing.  (Jt. Decl. ¶4).  In the midst of this briefing process, Plaintiffs negotiated a protective order governing the production of discovery produced in the Litigation and an ESI protocol governing the form of production of discovery, as well as a Rule 502(d) order governing the inadvertent production of privileged information.  (*Id.* ¶5). Plaintiffs also served Equifax with a joint set of document requests, as well as a specific set of document requests relating to Plaintiffs' claims, and Equifax produced millions of pages of documents, which Plaintiffs reviewed.  (*Id.*).  Additionally, Plaintiffs subpoenaed approximately 60 third parties and obtained and reviewed thousands of pages of documents from these third parties, including subpoenas served on the major card brands (Visa, MasterCard, American Express, and Discover), as well as other entities responsible for the investigation into the Data Breach.  (*Id.*).  Finally, Plaintiffs took multiple depositions of current and former

5

Equifax employees and had numerous additional depositions, including a Rule 30(b)(6) deposition, noticed to occur at the time the Settlement was reached. (*Id.*).

### A. Negotiation of the Proposed Settlement

The Settlement resulted from good faith, arm's-length settlement negotiations, including multiple settlement conferences, both in-person and telephonically, among counsel for the Parties, including a full-day mediation session with Phillips ADR – a respected mediation firm that also facilitated the Consumer Track settlement – on June 3, 2019. (*Id.* ¶6). The Parties resumed negotiations after the Court's order granting in part and denying in part leave to amend the Complaint, including in-person negotiations between counsel for the Parties on February 6, 2020, during which an agreement-in-principle was reached and memorialized in a term sheet. (*Id.* ¶7).

The Parties did not discuss attorneys' fees, costs, or expenses prior to agreeing to the essential terms of the Settlement. (*Id.* ¶8).

### B. Pertinent Terms of the Proposed Settlement

Under the Settlement, Equifax will pay, on a claims-made basis, up to a maximum aggregate amount of $5,500,000 to an Escrow Account from which the Settlement Administrator will make payments to Settlement Class Members who submit approved Documented Out-of-Pocket Claims and/or Fixed Payment Claims,

as defined in the Settlement Agreement.  (SA ¶4.3).  The proposed Settlement Class includes "[a]ll financial institutions in the United States . . . that issued Alerted on Payment Cards," as defined by the Settlement Agreement and the Court's Preliminary Approval Order.  (SA ¶¶2.1, 3.1; Doc. 1133 at 2).

Separate from the monetary consideration directly available to Settlement Class Members, Equifax will also pay the reasonable costs of Notice, Claims Administration, Service Awards to each named Plaintiff, attorneys' fees, and reimbursement of litigation expenses/costs.  (SA ¶4.4(b)).  Equifax will pay the reasonable costs of Claims Administration, including the costs of the Notice Program, directly to the Settlement Administrator.  (*Id.* ¶¶2.9, 4.4(b)(i)).

Specifically, and subject to the Court's approval as requested herein, Equifax agreed to pay Class Counsel up to $2,000,000 in attorneys' fees and $250,000 in reimbursement of litigation costs and expenses within 30 days of the Effective Date of the Settlement.  (*Id.* ¶¶4.4(b)(iii), 10.2).  Equifax also agreed to pay up to $1,500 to each of the 21 Plaintiffs, via Class Counsel, as a Service Award for their work in connection with achieving the Settlement.  (*Id.* ¶¶4.4(b)(ii), 10.1).

In addition to monetary consideration, Equifax has agreed to adopt and/or maintain certain measures, with respect to its U.S.-based businesses, that regularly collect and hold U.S. consumers' personally identifying information ("PII").  (*Id.*

7

¶4.8).  These obligations shall be maintained for a period of two years, subject to reasonable modifications.  Equifax will spend a minimum of $25 million on the measures identified in the Settlement Agreement over a two-year period.  (*Id.*; *id.* ¶4.9).

### C. The Preliminary Approval and Notice Process

On May 15, 2020, Plaintiffs moved for preliminary approval and authorization to issue Notice to the proposed Settlement Class Members.  (Doc. 1107).  The Court granted preliminary approval on June 4, 2020, and authorized dissemination of Notice to the provisionally certified Settlement Class.  (Doc. 1133).

Co-Lead Counsel for the Plaintiffs subsequently worked with the Settlement Administrator, Analytics LLC ("Analytics"), and counsel for Equifax to finalize the Notice forms, script for the Settlement toll-free number, and content of the Settlement Website.  (Jt. Decl. ¶9).  Counsel for Plaintiffs confirmed with Analytics that by the deadline of July 6, 2020, the Notices were mailed, the website, phone line, and claims application were live, and that the digital advertisement of the Settlement Notice was published.  (*Id.*).  Plaintiffs will provide a more detailed update to the Court regarding the status of the claims process in conjunction with their motion for Final Approval of the Settlement.

## ARGUMENT

### I.  The Requested Fee Should Be Approved Because It Is Reasonable and Supported by the Relevant Factors

#### A.  The Settlement Creates a Constructive Common Fund from Which a Reasonable Percentage-Based Fee Can Be Determined

It is well settled that attorneys who represent a class and whose efforts achieve a benefit for class members are "entitled to a reasonable attorney's fee from the fund as a whole" as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Rule 23 also permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A district court "'has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning'" in case appellate review is required. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).

The Eleventh Circuit has held that the "percentage of the fund approach" should be used to determine a fee award when the settlement establishes a common fund. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("*Camden I*"). Here, the parties negotiated a "package deal" in which Equifax agreed to pay up to $2 million for attorneys' fees and $250,000 in expenses ***in addition*** to the $5.5 million it will make available to Settlement Class Members.

(SA ¶¶4.3, 4.4).  This arrangement creates a "constructive common fund" from which the fee percentage can be determined by dividing the agreed-upon fee amount by the total value of the class relief, including the fee.  *See In re The Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019) (describing constructive common fund scenario as when "the defendant negotiated the payment to the class and the payment to counsel as a 'package deal'") (citing *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012)); *see also* Annotated Manual for Complex Litigation §21.7, 335 (4th ed. 2020) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel.").

The *Home Depot* court cited the following example of a constructive common fund: "'the settling defendant, in agreeing to pay the class, say, $8 million and class counsel an additional $2 million, is effectively agreeing to pay the class $10 million and to not contest class counsel's pursuit of a 20% fee from the $10 million recovery.'"  *Home Depot*, 931 F.3d at 1080 (quoting William B. Rubenstein, *Newberg on Class Actions* §15:76, 267 n.7 (5th ed. 2015)).

The Settlement of the Litigation creates a constructive common fund of at least $7.75 million, composed of $5.5 million in cash relief made available to Settlement Class Members, plus the $2 million in requested attorneys' fees and $250,000 in litigation expenses. Notably, for purposes of this analysis, Plaintiffs are excluding valuations for ***all*** the other benefits provided by the Settlement, even though those commitments from Equifax are significant and inure to the benefit of the Settlement Class.

Specifically, the constructive common fund of $7.75 million ***does not*** include: (1) the $25 million Equifax will spend on adopting or maintaining the various data-security-related measures identified in the Settlement Agreement (SA ¶¶4.8, 4.9); (2) the costs of Notice and Claims Administration that Equifax will cover, which avoids the need for these sums to be deducted from the funds available to the Settlement Class (*id.* ¶¶4.4(b)(i)); and (3) the requested Service Awards.[3]

---

[3] Plaintiffs chose to exclude these items from the common benefit analysis presented here to simplify the math and to be conservative. Excluding them avoids any disputes as to whether these forms of relief should be included, or how they should be valued. Nevertheless, the Court can and should take them into consideration when evaluating the reasonableness of the fee request. *See Camden I*, 946 F.2d at 775 (holding that even non-monetary benefits conferred upon the class through settlement are a relevant factor in determining a fee award); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (holding that procurement of benefits through a settlement agreement is a "'relevant circumstance'" in determining a reasonable fee, even when the value of those benefits cannot be accurately ascertained). If those other amounts were included, the Settlement could be valued at $32.75 million.

### B.      The Requested Fee Is Within the Typical Approvable Range

When the requested fee of $2 million is divided by the constructive common fund value of $7.75 million, the percentage of the fund requested is 25.8%.  This percentage is near the middle of the typical range approved in the Eleventh Circuit and elsewhere.  *See, e.g.*, *Camden I*, 946 F.2d at 774-75 (noting that majority of percentage-based awards are between 20% and 30% of the common fund); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third."); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382-83 (N.D. Ga. 2019); Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 951 (2017) (empirical study showing the median award in the Eleventh Circuit is 33% and the mean is 30%).

### C.      The *Johnson* Factors Support Approval

Although the Eleventh Circuit has acknowledged that the factors relevant to determining an appropriate percentage fee award will "undoubtedly vary" from case-to-case, it has approved the use of the factors identified in *Johnson*.  *See Camden I*, 946 F.2d at 775.  The *Johnson* court listed 12 factors, two of which are not relevant here – the "undesirability," or negative community impression of a case, and relationship between counsel and client, to the extent it impacts the attorney's fee

12

arrangement.  *See Johnson*, 488 F.2d at 717-19.  Plaintiffs address the other ten factors below (addressing some combinations of related factors within the same paragraph, where indicated).

### 1.   The Time and Labor Involved

The Court's February 12, 2018 order appointed leadership counsel for each track in the Litigation and required that Co-Lead and Co-Liaison Counsel: (1) collect, on a monthly basis, the daily time and expense reports of all counsel working on the Litigation; and (2) submit time and expense reports to the Court *in camera* on a quarterly basis beginning April 30, 2018.  (Doc. 232 at 9-10).  Co-Lead and Co-Liaison Counsel for Plaintiffs have fully complied with these directives.  (Jt. Decl. ¶10).  Co-Lead Counsel also fulfilled their responsibilities under the Court's appointment order to manage assignments and monitor the work being performed by all counsel to ensure that the work was "conducted effectively, efficiently, and economically" and that "unnecessary expenditures of time and expense" were avoided.  (Doc. 232 at 7; Jt. Decl. ¶11).

As of the last quarterly report, dated June 30, 2020, counsel for the Plaintiffs have reported working a combined 19,919 hours on the Litigation.  (Jt. Decl. ¶12 & Ex. A).  Slightly more than half of those hours – 10,854.20 – were reported by Co-Lead Counsel, Carlson Lynch, LLP ("Carlson Lynch") and Scott+Scott Attorneys at

Law LLP ("Scott+Scott").   These reported hours confirm that Class Counsel aggressively litigated the Litigation and committed the necessary time and energy to serve the Settlement Class's best interests by drafting lengthy and detailed complaints, opposing the motions to dismiss and succeeding on numerous claims, drafting and serving discovery, managing the review of millions pages of documents produced by Equifax and third parties, and drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the Litigation. (Jt. Decl. ¶¶4-7).   This significant investment of time and effort supports the requested fee.

### 2.   The Novelty and Difficulty of Factual and Legal Questions Involved

The *Johnson* court observed that cases involving questions of first impression generally require attorney time and effort and that attorneys who bring such cases "should be appropriately compensated for accepting the challenge."  488 F.2d at 718. The claims brought by Plaintiffs were novel and difficult.  One particularly complex legal issue centered around the question of whether Equifax owed Plaintiffs a duty of reasonable care, an issue which was complicated by a series of recent decisions in Georgia state courts that provided evolving and at times conflicting guidance. (*See* Doc. 711 at 21-32 (discussing duty element of negligence claim)).

14

This is still a developing area of the law and recent precedents in similar cases have had mixed outcomes for financial institution plaintiffs.  Some similar cases have ended in settlements, such as *Target*, *Home Depot*, and *Eddie Bauer*,[4] but others have been dismissed in whole or substantial part, *e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817-18 (7th Cir. 2018), and class certification has been denied in others.  *E.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance).

The Litigation also involved significant factual variations when compared to those other cases.  For instance, unlike in previous data breach cases against very large consumer merchants, such as Home Depot or Target, Equifax's transactions with individual consumers were more limited in number and, as a result, fewer payment cards were compromised in the Data Breach than in those cases.  But due to the scope of the personally identifying information compromised in the Data Breach, the alleged harms suffered by Plaintiffs extended beyond the card-related

---

[4]      *See In re: Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM), 2016 WL 2757692 (D. Minn. May 12, 2019); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356-JLR, 2019 WL 5536824 (W.D. Wash. Oct. 25, 2019).

damages.  In an effort to seek remedies for those damages, Class Counsel presented theories of liability based on the unique nature of Equifax's role in the financial "ecosystem" in addition to the traditional negligence claims related to the compromised Payment Card Data.  These theories were rejected by the Court at the Rule 12 pleading stage with respect to financial institutions that did not issue affected payment cards, but most of the claims brought by financial institutions that did issue affected payments cards (a smaller subset of the initially proposed class) remained live at the time the Settlement was reached.  (*See generally* Docs. 711, 941).

The overall settlement value, the requested fee, and the results of the lodestar crosscheck all appropriately reflect the novel nature of the Litigation, the challenges taken on by Class Counsel, and Plaintiffs' partial success in pretrial proceedings. These factors support approval of the fee request.

### 3. The Skill Required and the Experience, Reputation, and Ability of Counsel

Two of the *Johnson* factors consider related questions: the skill required from and demonstrated by the attorneys seeking a fee and the attorneys' experience, reputation, and ability.  *Johnson*, 488 F.2d at 718-19.

This Court has reviewed Class Counsel's experience and reputation on several previous occasions, including when appointing Gary F. Lynch and Joseph P.

16

Guglielmo as Co-Lead Counsel for the Financial Institution Track (*see* Doc. 232 at 4-5); when granting preliminary approval (Doc. 1133 at 3); and in connection with the *Home Depot* litigation.   As previously demonstrated, Class Counsel have extensive experience litigating complex and class actions and have achieved particular success in litigating data security breach class actions on behalf of financial institutions.  (Jt. Decl. ¶13).[5]

Class Counsel drew on this experience to navigate what was a complex and sizeable action involving dozens of named plaintiffs, as many as 25 potential claims (*see* Doc. 390), and a formidable opposing party with significant assets and highly skilled defense counsel at King & Spalding, LLP, a large national law firm with a prestigious reputation.  (Jt. Decl. ¶14).  Despite significant hurdles, Class Counsel ably kept the Litigation moving forward and succeeded in reaching the Settlement within two and a half years of the announcement of the Data Breach.  These factors support approval of the requested fee.

---

[5]   This settlement represents the fourth major data breach class settlement in three years achieved by Carlson Lynch and Scott+Scott working together as co-lead counsel on behalf of financial institutions.  The prior cases include one before this Court, *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.), in addition to *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.), and *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506 (W.D. Pa.).  All three settlements were granted final approval with no objections from class members.

17

### 4.    The Customary Fee, Contingent Nature of the Fee, and Preclusion of Other Employment

Three of the *Johnson* factors examine the economic conditions pertinent to counsel's representation, including: (1) the customary fee for similar work; (2) whether the attorneys worked on a contingent basis; and (3) whether the case precluded the attorneys from other employment.

In the relevant market of plaintiff-side class action practice, the "customary fee" corresponds to the percentages normally approved by courts, which generally range from 20% to 30%. *Camden I*, 946 F.2d at 774-75; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366-67 (S.D. Fla. 2011) (noting that fee awards of 30% and thereabouts are customary and supported by empirical studies).

Class Counsel took this fee on a contingent basis, advanced the costs of litigation, and did not charge Plaintiffs by the hour as the Litigation was proceeding. (Jt. Decl. ¶15).  If the Litigation had been entirely dismissed or otherwise failed on the merits, Class Counsel would not have recovered any fee.  (*Id.*).  Indeed, there have been numerous class actions in which plaintiffs' counsel took the risks of a case, expended thousands of hours for their clients and absent class members, and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010) (affirming grant

of summary judgment in favor of defendants on loss causation grounds after several years of litigation).

Finally, the complexity, high publicity, and fast schedule of the Litigation required that it be given the highest priority by Co-Lead Counsel from the outset, requiring them to forego other opportunities. (Jt. Decl. ¶16). Indeed, the hours Class Counsel spent on the Litigation resulted in a measurable and significant opportunity cost, as the requested fee, if granted, compensates counsel for only a small fraction of the lodestar incurred. (*Id.*).

### 5. Time Limitations Imposed by the Client or Circumstances

As the Court is aware, the Litigation and Consumer Track moved in parallel during the early phases, and at a relatively fast pace, with the first consolidated complaint filed three-and-half months after the Court appointed leadership counsel. Class Counsel worked diligently to keep the Litigation on schedule and to meet the Court's deadlines without seeking significant extensions. This factor supports the fee award.

### 6. The Amount Involved and Results Obtained

The benefits provided under the Settlement provide meaningful and valuable relief to the Settlement Class. Settlement Class Members are eligible for cash benefits totaling up to $5.5 million. Settlement Class Members who submit valid

claims will receive $4.50 per Alerted on Card, plus up to an additional $5,000 for certain out-of-pocket losses related to the Data Breach.  In addition, Equifax is required by the Settlement to adopt and/or maintain security measures to protect the sensitive data it collects.  These forms of relief are substantial and compare favorably to other settlements.  For instance, in *Target* and *Home Depot*, the settlements provided financial institutions with $1.50 and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option to obtain a percentage of documented losses).  *See In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017).  Unlike the settlement reached with Equifax in the Consumer Track of this MDL, governmental entities were not involved in any aspect of the Settlement, so the results are attributable entirely to Class Counsel's efforts. This factor therefore supports approval of the fee request.

### 7.    Awards in Similar Cases

The requested fee is in line with those awarded in other recent payment card data breach settlements.  In the *Wendy's* data breach case, the court awarded 30% of the common fund.  *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506, ECF No. 191 at 5 (W.D. Pa. Nov. 6, 2019).  In *Eddie Bauer*, the court

approved a combined fee, expense, and administration cost award of $2 million in a settlement providing up to $2.8 million in cash relief and $5 million worth of injunctive relief in the form of improved data security measures.  2019 WL 5536824, at *3; *see also id.*, No. 2:17-cv-00356, ECF No. 164-1 (W.D. Wash. Apr. 26, 2019). The requested fee here is within the same range and should be approved.

### D.    A Lodestar "Crosscheck" Confirms the Reasonableness of the Award

As mentioned above, as of June 30, 2020, counsel for the Plaintiffs have reported working a combined 19,919 hours on the Litigation, 10,854.20 of which were performed by Co-Lead Counsel, Carlson Lynch and Scott+Scott.  (Jt. Decl. ¶12).  When those hours are multiplied by the billers' standard hourly rates, the total lodestar is $11,261,488.75, of which $6,618,695.50 was incurred just by Co-Lead Counsel's two firms.  (*Id.*).[6]

The requested fee results in an overall average hourly rate of just $100.40 per hour, far below Class Counsel's customary rates (*id.* ¶12) and below the average rates in the area for comparable work.  *See, e.g.*, *Glover v. I.C. Sys., Inc.*, No. 5:19-

---

[6]      These figures are the same amounts reported to the Court *in camera*.  Co-Lead Counsel have not audited the reports of other firms or deducted any time that has been submitted to the Court, as it was unnecessary to do so in order to support the requested fee, but Co-Lead Counsel reserve the right to do so for purposes of fee allocation.  (Jt. Decl. ¶12 n.2).

cv-00103-TES, 2020 WL 3105091, at *3 (M.D. Ga. June 11, 2020) (finding $275 a reasonable rate for consumer rights attorneys in Macon, Georgia).

The requested fee is therefore significantly less than the lodestar, and if approved, Class Counsel would receive a "negative" multiplier of only 0.178. (Jt. Decl. ¶12). This supports the requested amount. *See In re NetBank, Inc. Secs. Litig.*, No. 1:07-cv-2298-TCB, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011) (finding counsel's recovery of "about one-half of their lodestar" supported propriety of fee request).

## II. The Requested Expenses Should Be Approved Because They Are Reasonable and Were Necessary to Prosecute the Litigation

The Settlement Agreement authorizes reimbursement of up to $250,000 in expenses that Class Counsel reasonably incurred while successfully prosecuting the Litigation on behalf of the Settlement Class. As of June 30, 2020, Class Counsel reasonably and necessarily incurred more than the requested reimbursement – $278,256.27 – in expenses. (Jt. Decl. ¶17). The majority of these expenses were for such items as: creation and maintenance of an e-discovery platform; travel for court hearings, depositions, and mediation; and the mediator's fee. (*Id.*). Counsel was incentivized to keep costs reasonable due to the risk of non-recovery. (*Id.*). Accordingly, the Court should approve Class Counsel's expense reimbursement request.

### III.   The Service Awards Are Reasonable and Should Be Approved to Recognize Plaintiffs for Their Service to the Settlement Class

Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695-96 (N.D. Ga. 2001); *see also* Annotated Manual for Complex Litigation §21.62, 317 n.971 (4th ed. 2020) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). The amounts requested here, $1,500 to each named Plaintiff, are modest and well within the typical range. *See Home Depot*, ECF No. 342 (N.D. Ga. Sept. 22, 2017) (minute entry awarding financial institution service awards of $2,500 per settlement class representative); *Drazen v. GoDaddy.com, LLC*, No. 1:19-00563-KD-B, 2020 WL 4606979, at *5 (S.D. Ala. Aug. 11, 2020) (approving $5,000 incentive awards and listing cases). These awards were not a condition of any Financial Institution Plaintiff's approval of the Settlement or the initial representation agreements. (Jt. Decl. ¶18).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion (in conjunction with their forthcoming Final Approval motion) and approve an award of $2 million in attorneys' fees, reimbursement of $250,000 in

litigation expenses, and Service Awards of $1,500 to each named Plaintiff identified

in the Settlement.

Dated: August 19, 2020                    Respectfully submitted,

 /s/ Joseph P. Guglielmo                     /s/ Gary F. Lynch (filer)
Joseph P. Guglielmo                       Gary F.  Lynch
**SCOTT+SCOTT**                           **CARLSON LYNCH, LLP**
**ATTORNEYS AT LAW LLP**                  1133 Penn Avenue, 5th Floor
230 Park Avenue, 17th Floor               Pittsburgh, PA 15222
New York, NY 10169                        Tel. 412.322.9243
Tel. 212.223.6444                         glynch@carlsonlynch.com
jguglielmo@scott-scott.com

### *Financial Institution Plaintiffs' Co-Lead Counsel*

Craig A. Gillen                           Ranse Partin
**GILLEN WITHERS & LAKE, LLC**            **CONLEY GRIGGS PARTIN LLP**
3490 Piedmont Road, N.E.                  4200 Northside Parkway
One Securities Centre, Suite 1050         Building One, Suite 300
Atlanta, GA 30305                         Atlanta, GA 30327
Tel. 404.842.9700                         Tel.  404.572.4600
cgillen@gwllawfirm.com                    ranse@onleygriggs.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Tel.  404.320.9979
mgibson@thefinleyfirm.com

### *Financial Institution Plaintiffs' Co-Liaison Counsel*

Arthur M. Murray                          Charles H. Van Horn
**MURRAY LAW FIRM**                       **BERMAN FINK VANHORN P.C.**
650 Poydras Street, Suite 2150            3475 Piedmont Road, Suite 1100
New Orleans, LA 70130                     Atlanta, GA 30305

Tel. 504.525.8100
amurray@murray-lawfirm.com

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel. 612.349.8500
sslaughter@robinskaplan.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Tel. 612.339.7300
bbleichner@chestnutcambronne.com

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel. 612.341.0400
brian.gudmunson@zimmreed.com

Tel. 404.261.7711
cvanhorn@bfvlaw.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
Tel. 501.312.8500
acarney@cbplaw.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Tel. 501.812.5575
khriebel@locklaw.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O.  Box 241790
Little Rock, AR 72223
Tel. 501.821.5575
karenhalbert@robertslawfirm.us

*Financial Institution Plaintiffs' Steering Committee*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 19th day of August, 2020.

*/s/ Gary F. Lynch*
Gary F.  Lynch

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Gary F. Lynch*
Gary F.  Lynch