FILED IN OPEN COURT
U.S.D.C. - Atlanta

SEP 16 2020

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800<br>1:17-md-2800-TWT<br><br>CONSUMER CASES |

# RESPONSE OF MISSISSIPPI EQUIFAX CLAIMS TO EQUIFAX, INC.'S EMERGENCY MOTION TO ENFORCE FINAL JUDGMENT AND FOR ORDER TO SHOW CAUSE

COMES NOW, Mississippi Plaintiffs, by and through counsel Jeffrey J. Hosford, Esq., ("Respondent") and files this response to the Emergency Motion to Enforce Final Judgment and For Order to Show Cause ("Emergency Motion") as follows, to-wit:

## *RELEVANT BACKGROUND*

As stated in the Emergency Motion, Equifax and Lead Plaintiffs in this MDL entered into a nationwide class action settlement to resolve all consumer litigation arising out of the 2017 data security incident ("Data Breach") in July 2019. The Settlement Agreement defines the Settlement Class to include "the approximately 147 million U.S. consumers identified by Equifax whose personal information was compromised as a result of the cyberattack and data breach announced by Equifax Inc. on September 7, 2017." Dkt. No. 739-2, at Section 2.43.

As further stated in the Emergency Motion, the MDL Court preliminarily

approved the Settlement on July 22, 2019. Dkt. No. 742. In accordance with the Order Directing Notice ("Order"), any class member wishing to be excluded from the Settlement was required to submit a request for exclusion (or "opt out") to the Settlement Administrator no later than November 19, 2019. *Id.* The Order, which was not sent to the potential class members, also required that "[e]ach written request for exclusion must identify th[e MDL proceeding], set forth the name of the individual seeking exclusion, be signed by the individual seeking exclusion, and can only request exclusion for that one individual." Dkt. No. 742 at 7-8. The Order approves the "forms of notice attached as exhibits to the settlement agreement," finding that the "notices are written in plain language, use simple terminology, and are designed to be readily understandable by settlement class members." *Id.* at 6-7. The Order directs the notice provider to "carry out the notice program in conformance with the settlement agreement." *Id.* at 6.

However, on its face, the Notice actually provided to the Mississippi Plaintiffs and other potential class members was not in conformity with the above requirements. The Notice that was transmitted to Respondent's clients on September 20, 2019, by the notice provider contains instructions for opting out of the class action as follows:

(see following page)

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 24. How do I exclude myself from the settlement?

If you are a member of the settlement class but do not want to remain in the class, you may exclude yourself from the class (also known as "opting out"). If you exclude yourself, you will lose any right to participate in the settlement, including any right to receive the benefits outlined in this notice.

If you decide on this option, you may keep any rights you have, if any, against Equifax and you may file your own lawsuit against Equifax based upon the same legal claims that are asserted in this lawsuit, but you will need to find your own attorney at your own cost to represent you in that lawsuit. If you are considering this option, you may want to consult an attorney to determine your options.

**IMPORTANT:** You will be bound by the terms of the Settlement Agreement unless you submit a timely and signed written request to be excluded from the settlement. To exclude yourself from the settlement you must mail a "request for exclusion," postmarked no later than **11/19/2019**, to:

**Equifax Data Breach Class Action Settlement Administrator**<br>
**Attn: Exclusion**<br>
**c/o JND Legal Administration**<br>
**P.O. Box 91318**<br>
**Seattle, WA 98111-9418**

This statement must contain the following information:

(1) The name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, or similar identifying words such as "Equifax Data Breach Lawsuit");

(2) Your full name;

(3) Your current address;

(4) The words "Request for Exclusion" at the top of the document or a statement that you do not wish to participate in the settlement; and

(5) Your signature.

The Notice also contains instructions on how to object to the settlement's terms. Relevant portions of these objection instructions are listed below:

OBJECTING OR COMMENTING ON THE SETTLEMENT

**25. How do I tell the Court that I like or don't like the settlement?**

If you are a Settlement Class Member, you have the right to tell the Court what you think of the settlement. You can object to the settlement if you don't think it is fair, reasonable, or adequate, and you can give reasons why you think the Court should not approve it. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement as it is.

To object, you must send a letter stating that you object to the settlement. Your objection letter must include:

(1) The name of this proceeding (*In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT, or similar identifying words such as "Equifax Data Breach Lawsuit");

(2) Your full name and current address;

(3) Your personal signature (an attorney's signature is not enough);

(4) A statement indicating why you think that you are a member of the settlement class;

(5) A statement with the reasons why you object, accompanied by any legal support for your objection;

(6) A statement identifying all class action settlements to which you have objected in the previous five (5) years; and

(7) A statement as to whether you intend to appear at the Fairness Hearing, either in person or through a lawyer, and if through a lawyer, identifying your lawyer by name, address, and telephone number, and four dates between 11/19/2019 and 12/5/2019 during which you are available to be deposed by counsel for the Parties.

Thus, while the objections instructions clearly require the objector's "personal signature (an attorney's signature is not enough)," the opt-out instructions merely require "your [the objector's] signature" with no mention of an attorney's signature at all. Both instructions, however, give only 60 days to respond either way. Dkt. No. 742 at 14.

Therefore, Respondent respectfully submits that the ambiguity created by this

juxtaposition of terms undermines the Order's mandate that the Notice contain "plain language," "simple terminology," and be "readily understandable by settlement class members." *Id.* at 6-7. Thus, an attorney's signature would suffice for a proper opt-out request since the same is not expressly excluded in the opt-out instructions (as it is in the objection instructions).

## *ARGUMENT*

Equifax asserts that Respondent's clients did not properly opt-out of the settlement agreement. Equifax's basis for this assertion is that the Mississippi Plaintiffs failed to comply with two requirements set forth in the Court's preliminary order, specifically the "(i) the requirement that an exclusion request be signed by the individual seeking exclusion and (ii) the requirement that an exclusion request only seek exclusion for one individual." Therefore, Equifax contends that (1) the judgments Respondent has obtained on behalf of some of his clients should be voided and that (2) future hearings for other clients should be enjoined.

### 1. It is undisputed the Mississippi Plaintiffs submitted a timely notice of exclusion.

As set forth in Ms. Keough's declaration, the Mississippi Plaintiffs by and through counsel submitted a request for the Mississippi Plaintiffs to be excluded from the settlement class dated November 18, 2019 (postmarked November 19, 2019 as required by settlement) to JND Legal Administration ("JND"). See Dkt. 1168-1

Keough Declaration ¶6. Thus, the only dispute remaining in this matter is whether the opt-out requests were validly submitted.

**2. The Mississippi Plaintiffs Opt-Out Requests Are Valid Since Equifax Failed to Object to the Opt-Out Requests Prior to the Final Order Being Entered Herein.**

As set forth in the previous paragraph, the Mississippi Plaintiffs submitted a request for exclusion in a timely manner. Apparently, the administrator, JND Legal Administrator, summarily made the decision on what requests were timely or valid without any notice to those persons who they deemed to have submitted invalid or untimely requests. Although the Court order provides that JND should submit a list to the parties of the opt out requests, JND also made a judicial determination and summarily submitted a list of requests they deemed to be untimely or invalid without the Court making said determination on the merits of each request. Respondent submits this summary determination deprived his clients of substantive and procedural due process by failing to provide any notice and by allowing the administrator rather than the Court make such a determination. Typically, the burden of objecting to an exclusion request would and should be on Equifax after receiving a copy of the requests (JND was required by ¶16 of the Directing Order (Dkt.742) to provide to the parties). To date, Equifax has not filed any objection to the November 18, 2019, opt out requests and should be estopped from now doing so. Thus, Respondent would request that the opt out requests be deemed valid since

this Court has never made a ruling the Mississippi Plaintiffs request for exclusion were invalid or untimely, and the time for any such objections is now past since a final order has been entered.

### 3. The Mississippi Plaintiffs' Opt-Out Requests Were in Compliance with the Notice Provided and Should Be Excluded from the Class.

If the Court considers the issue of the validity of the opt-out requests despite no previous objection, Respondent respectfully submits that the opt-out instructions contained in the Notice referenced above are not "readily understandable by settlement class members," *Id.*, because they contain a critical ambiguity. Given the nature of this ambiguity, Respondent shall employ ancient canons of statutory construction to show how he and his clients reasonably complied with the terms of the Notice.

The rule against surplusage teaches that every word in a statute is presumed to be there for a reason.[1] *See U.S. v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *see also Corley v. U.S.*, 556 U.S. 303, 314 (2009) (recognizing that "one of the most basic interpretative canons" is that a "statute should be construed so that effect is given to

---

[1] Of course, the Notice is not a statute in the strictest sense of the term. It was not enacted into law by Congress, nor was it signed into law by the President. However, the Notice does carry the force of law as to the class members, just as any statute would. After all, class members must do what the Notice instructs, or they will lose substantive rights that are protected by the United States Constitution. To that end, from the perspective of the class members, the Notice should be interpreted in the same way as any statute.

all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (internal quotation marks omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)); *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619 (5th Cir. 2014).

Section 25 of the Notice gives instructions for objecting to the settlement agreement, which is different from opting out of the class. It reads in pertinent part: "Your objection letter must include: … (3) Your personal signature (an attorney's signature is not enough); …." However, Section 24, *i.e.*, the opt-out instructions, merely states: "The statement must contain the following information: … (5) Your signature."

Considering the rule against surplusage, one must infer that the word "personal" and the parenthetical phrase "an attorney's signature is not enough" in Section 25 are not meaningless, or else they would not be used. *See Butler*, 297 U.S. at 65. Thus, the phrase "your signature" – which is all that remains when these words are removed – must have a different meaning than the phrase "your personal signature (an attorney's signature is not enough)." Otherwise, why would Section

25 contain the additional language?

Therefore, by reverse implication, the phrase "your signature" necessarily means something less "personal" than the phrase "your personal signature (an attorney's signature is not enough)." Accordingly, the signature requirement found in Section 24 – which employs the phrase "your signature" – is necessarily less stringent than the signature requirement found in Section 25 – which uses the phrase "your personal signature (an attorney's signature is not enough)."

*A fortiori*, Respondent followed the instructions found in Section 24, as interpreted by similar requirements in Section 25, to a tee. Respondent's correspondence with the Claims Administrator provides all the material information that is required in the notice. Furthermore, as alter ego for his clients, Respondent's signature should suffice for theirs.

Respondent, however, is mindful of the Court's rationale for the individual signature requirement, the same having been articulated on March 17, 2020, *viz.*:

> The individual signature requirement on opt-out requests is not burdensome at all. Moreover, it ensures that each individual has carefully considered his options and understands that he is giving up his right to relief under the settlement. While technology provides an avenue for filing claim forms more easily, it also makes it easier for third parties and their counsel to file unauthorized mass opt-outs, which are sometimes highly indicative of a conclusion that such counsel did not spend much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them.

Dkt. No. 1029 at 26. Respondent respectfully submits that this rationale could not be gleaned from the face of the Notice, which is ambiguous on its face.

From the face of the Notice, one simply cannot discern any requirements for opting-out other than the ambiguous terms stated therein. Put simply, Respondent and his clients substantively complied with the opt-out procedures as stated in the Notice. In the Eighth Circuit, the Court considered the issue of whether an attorney's signature would suffice when the order required class members to sign their own opt-out letters and the class members did not, to wit:

> While an attorney's signature did not comply with the literal wording of the court's order, there is little question that the attorney's signature complied with the court order as a matter of law. Both in Alabama, see Ala. Code § 34-3-21, and in Pennsylvania, *Tucker v. Tucker*, 370 Pa. 8, 87 A.2d 650, 656 (Pa. 1952), attorneys are empowered to sign legal documents on behalf of their clients. Thus whatever the merit of GALIC's technical objection may be, the legal propriety of attorneys 'signing their clients' opt-out requests cannot be impugned.
>
> Second, even if these class members violated the court's order by failing personally to sign their opt-out requests, we are persuaded that the district court acted within its sound discretion in overlooking the violations in the "interests of justice." See, e.g., *Council on Social Work Educ., Inc. v. Texas Instruments Inc.,* 105 F.R.D. 68, 71 (N.D.Tex. 1985) (collecting cases holding that "`considerable flexibility' should be used in determining what constitutes an effective request for exclusion").

*In re General American Life Ins. Co. Sales*, 268 F.3d 627, 635 (8th Cir. 2001). Therefore, they should be allowed to proceed with their separate individual cases in Mississippi state court.

4. **Alternatively, the Mississippi Plaintiff's Exclusion Requests Should be Accepted in the Interests of Justice or They Should Be Granted an Opportunity to Cure the Alleged Deficiencies or Submit a Late Opt-Out.**

Nevertheless, even if the Court were to find that neither Respondent nor his clients technically complied with the opt-out requirements, Respondent respectfully submits that the interests of justice would be served if they were permitted to proceed with their state court litigation considering that flexibility should be granted in considering exclusion requests. Alternatively, the Respondent's clients should be permitted to cure any deficiencies in their opt-out requests due to the ambiguity of the Notice.

Assuming *arguendo* that the Court were to find the opt-out requests to be fatally deficient in some manner, Respondent would request the Court allow an amended opt-out or a late opt-out. A district court has discretion under Federal Rules of Civil Procedure 6(b) and60(b) to modify its order to allow a late opt-out from a class action. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209-10 (D.C.Cir.2003). Specifically, "Rule 60(b) provides that '[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, ... or (6) any other reason justifying relief from the operation of the judgment.' Fed.R.Civ.P. 60(b)." *Id.* at 1209. *Augst-Johnson v. Morgan Stanley & Co.*, 247 F.R.D. 25, 26 (D.D.C. 2008). In the even

the Court rules the opt-out notices are fatally deficient, Respondent would request that his clients be granted thirty (30) days to submit an amended or corrected opt-out request.

Respectfully Submitted,
Mississippi Plaintiffs

By______________________________
Jeffrey J. Hosford

Of Counsel:

Hosford Law Firm
115-A S Lafayette
Starkville, MS 39759
MS Bar # 100788
T: (662) 323-0844
F: (662) 323-5560
jeffhosford@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing pleading or other paper with the Clerk of the Court using the MEC system which sent notification of such filing to the following:

Honorable Stewart Haskins II

Further, I hereby certify that I have mailed by United States Postal Service the document to the following non-MEC participants:

This the 16th day of September, 2020.

Jeffrey J. Hosford