1
2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

3

4

IN RE:  EQUIFAX, INC., CUSTOMER )
DATA SECURITY BREACH LITIGATION )

5

6

7

                Case Number

)
)     1:17-md-2800-TWT
)
)
)     CONSUMER ACTIONS
)

8

9

10

11

12

13

14

15

Transcript of a hearing on an Emergency Motion To Enforce

Final Judgment And For Order To Show Cause before

The Honorable Thomas W. Thrash, Jr., Chief Judge

September 16, 2020; 3:06 p.m.

Atlanta, Georgia

16

17

18

19

(Appearances on page two.)

20

21

    Proceedings recorded by mechanical stenography,
transcript produced by computer.

22

23

24

25

Diane Peede, RMR, CRR, CRC
Federal Official Court Reporter
75 Ted Turner Drive, SW, Suite 2194
Atlanta, Georgia  30303-3309

Appearances:

Counsel for Consumer
  Plaintiffs:                    BARNES LAW GROUP, LLC
                                 BY:  J. CAMERON TRIBBLE, ESQ.
                                 31 Atlanta Street
                                 Marietta, Georgia  30060


Counsel for Mississippi
  Plaintiffs:                    HOSFORD LAW FIRM, PLLC
                                 BY:  JEFFREY J. HOSFORD, ESQ.
                                 115-A South Lafayette Street
                                 Starkville, Mississippi  39759

        - and -

                                 STARKS LAW FIRM
                                 BY:  WILLIAM P. STARKS, II, ESQ.
                                 407 7th Street North
                                 Columbus, Mississippi  39701


Counsel for Defendant
  Equifax:                       KING & SPALDING LLP
                                 BY:  S. STEWART HASKINS II, ESQ.
                                      JOHN C. TORO, ESQ.
                                      ROBERT D. GRIEST, ESQ.
                                 1180 Peachtree Street, NE
                                 Atlanta, Georgia  30309

P R O C E E D I N G S

(Call to the order of the Court.)

THE COURT:  All right.  This is the case of In re:
Equifax Customer Data Security Breach Litigation, Case Number
17-md-2800.

First, let me ask counsel for the parties to
identify yourselves for the record and the parties you
represent, beginning with the Plaintiffs.

MR. TRIBBLE:  Good afternoon, Your Honor.  Cameron
Tribble on behalf of the Class.

THE COURT:  Good afternoon, Mr. Tribble.

MR. HOSFORD:  Jeff Hosford on behalf of the
Mississippi Plaintiff that was brought here before the Court,
Your Honor.

THE COURT:  Good afternoon, Mr. Hosford.

MR. STARKS:  Your Honor, William Starks, co-counsel
with Mr. Hosford, on behalf of the Mississippi Plaintiffs.

THE COURT:  Good afternoon, Mr. Starks.

MR. HASKINS:  Good afternoon, Your Honor.  Stewart
Haskins with King and Spalding, on behalf of the Defendant
Equifax.

THE COURT:  Good afternoon, Mr. Haskins.

MR. TORO:  Good afternoon, Your Honor.  John Toro
of King and Spalding, also on behalf of Equifax.

THE COURT:  Good afternoon, Mr. Toro.

1          MR. GRIEST:  Good afternoon.  Robert Griest from

2     King and Spalding, also on behalf of Equifax.

3          THE COURT:  Good afternoon, Mr. Griest.

4          All right.  Mr. Haskins, this is a hearing on your

5     Motion To Enforce The Final Judgment And For Order To Show

6     Cause.  It's your motion, so I'll hear from you first.

7          MR. HASKINS:  Your Honor, is it acceptable to the

8     Court if I speak from the podium there?

9          THE COURT:  It is.  And if you stay behind the

10    plexiglas and you want to take your mask off while you're

11    talking, you can do so, or you can stay at your seat and take

12    your mask off.

13         MR. HASKINS:  I think that might make life a little

14    easier for the court reporter.

15         THE COURT:  I hate trying to talk through these

16    things.  Go ahead, Mr. Haskins.

17         MR. HASKINS:  Thank you, Your Honor.

18         Again, Stewart Haskins for the Defendant Equifax

19    here.  And I, first of all, want to thank the Court for

20    making a hearing available under the current conditions that

21    we're all challenged with these days, and we certainly

22    appreciate you handling this on an expedited basis.

23         We're here this afternoon, Your Honor, because

24    there are some Plaintiffs in Mississippi that are violating

25    this Court's final judgment.

1        And, specifically, these are Settlement Class

2   Members in the state of Mississippi who are violating the

3   injunction provision in the final judgment that this Court

4   entered in connection with the Consumer Class Action

5   Settlement in the Equifax Data Breach case, which, of course,

6   Your Honor is very familiar with.

7        The claims that those Mississippi Plaintiffs are

8   prosecuting are against Equifax and arise out of the Data

9   Breach.  So it is really undisputed, Your Honor, that these

10  Mississippi Plaintiffs are members of the Settlement Class

11  that this Court certified in connection with the Consumer

12  Settlement in the Equifax Data Breach Litigation.

13       And by the same token, it's really undisputed as

14  well that the claims that they are pursuing arise out of the

15  Data Breach and therefore are released claims under the final

16  judgment and the final approval order in the settlement in

17  that case.

18       So it's pretty clear that these folks are violating

19  this Court's Order, and that's why, Your Honor, that we were

20  forced -- Equifax was forced to file this Emergency Motion,

21  because it's been forced to defend these claims in

22  Mississippi, in some state courts there, you know, for the

23  last several months.

24       And there are really two things that are going on

25  here:

1          First, these Mississippi courts, which are

2    essentially small-claims courts, those courts have ignored

3    this Court's final judgment and the order releasing those

4    claims and failed to give it effect, for reasons that aren't

5    clear to us because we don't get written decisions from those

6    courts.

7          But, more importantly, and perhaps more troubling,

8    is the fact that these Settlement Class Members, some of whom

9    actually made claims under the Settlement, Your Honor, which

10   is quite remarkable, the Class Members themselves as well as

11   their counsel, Mr. Hosford, who is here today, have refused

12   to abide by the express language in the Court's final

13   judgment.

14         And that refusal comes in the face of repeated

15   requests from Equifax's counsel, both here and in

16   Mississippi, advising them of the terms of the settlement,

17   advising them of the clear prohibition against these suits in

18   the Court's final judgment, and asking that they, A, dismiss

19   the cases that they have already brought; and, B, forego

20   filing any additional suits against Equifax arising out of

21   the Data Breach because those claims are released and those

22   claims are barred by the anti-suit injunction in the final

23   judgment.

24         Yet even after -- they have refused to do so,

25   obviously, or we wouldn't be here.  And even after Equifax

filed this Emergency Motion, even after Your Honor set this hearing to address this issue, on September 14th Equifax was served with 32 new cases that were filed by Mississippi Settlement Class Members arising out of the Equifax Data Breach.

So it's clear, Your Honor, that without some swift action by this Court, that Equifax is going to be forced to continue to have to spend time, money and effort defending claims that were released and defending your Order, which is being violated by these Plaintiffs.  And that's why we're here, and that's the relief that we're asking for.

Now, it's my understanding that Mr. Hosford has brought with him today a written response to the motion that we filed.  Obviously, we didn't have much time to take a look at it.  It was just handed to me minutes before this hearing.

But it is my understanding that Mr. Hosford's explanation for their violation of the anti-suit injunction in the final judgment is that he has opted out these Mississippi Plaintiffs by virtue of a letter that he sent to the Court-appointed Settlement Administrator in this case, JND, back on November 18th.

And that letter, which is a part of our motion and included and attached as an exhibit to the declaration that we submitted for Ms. Keough, who is a representative of JND, that letter states simply, "Dear Madam/Sir:  Please be

advised I have been retained by the attached list of clients in Equifax Data Breach.  This letter is to notify you that we are not participating in the settlement and filed this, our, request for exclusion."

Your Honor, that letter didn't opt out anyone or exclude anyone from the Equifax Settlement Class, and the reasons for that are very simple.

As the Court may recall, in connection with preliminary approval of the settlement in this case and the Equifax Consumer Litigation, the Court approved the Notice Plan and set forth specific requirements in connection with that in terms of what had to be included for a valid request for exclusion from a Settlement Class Member, and specifically, that order required that each written request for exclusion must identify the MDL proceeding, set forth the name of the individual seeking exclusion, be signed by the individual seeking exclusion, and can only request exclusion for that one individual.

So the Court's Preliminary Approval Order clearly spelled out the requirements for an exclusion, a valid exclusion.

Mr. Hosford's letter, obviously, was not signed by any individual, any Class Member; and, in fact, no Mississippi Plaintiff that is pursuing these claims against Equifax that are the released claims that are the subject of

the Data Breach, none of those Mississippi Plaintiffs have submitted a valid, signed, opt-out request, as expressly required by your Court's Order.

But in addition to that, Your Honor, the Order makes it clear that it expressly prohibits multiple or mass opt-outs, and that's precisely what Mr. Hosford's letter purports to do.  He attached a list of clients, and there are thousands of names on there that he purportedly represents, and said that, "We are not participating, and this is our request for exclusion," in direct contravention of this Court's Order requiring that an exclusion request can only request exclusion for one individual.

Now, as you might imagine, and not surprisingly, when JND received this letter from Mr. Hosford, the Settlement Administrator did not include the list of thousands of individuals that Mr. Hosford purported to opt out on the list of opt-outs that it prepared and provided to Class Counsel that Class Counsel filed and submitted to this Court on December 5th as the Final Opt-Out List.  That list represents the list of Settlement Class Members who complied with the Court's requirements in the Preliminary Approval Order, who submitted a timely and valid opt-out request, and that list was ultimately attached and incorporated into the Court's final judgment and is now the law of the case.  It represents those Settlement Class Members who have opted out.

None of the Mississippi Plaintiffs are contained on that list, nor should they have been, because they did not file a valid request for exclusion in accordance with the Court's Preliminary Approval Order.

As a result, this is a pretty straightforward case, Your Honor.  What we have are a bunch of Plaintiffs who didn't opt out.  They are members of the Settlement Class. They are pursuing released claims, in direct violation of the anti-injunction provision that is in the final judgment. They're aware of it, yet they continue to pursue those claims.

The Court should order those Mississippi Plaintiffs to immediately dismiss their claims or face contempt proceedings in short order.

Thank you.

THE COURT:  Mr. Tribble, do you want to be heard?

MR. TRIBBLE:  Not at this time, Your Honor.  Thank you.

THE COURT:  Mr. Hosford?

MR. HOSFORD:  Your Honor, if I may, Mr. Starks would like to address the Court.

THE COURT:  I'm only going to hear from one of you.

MR. HOSFORD:  Yes, sir.  That's fine.

THE COURT:  All right.

Mr. Starks.

1          MR. STARKS:  Yes, Your Honor.

2          Your Honor, I'm William Starks, on behalf of the

3   Mississippi Plaintiffs today.  And the -- Equifax has filed a

4   motion, this Emergency Motion, for -- to enforce the final

5   judgment in this case.

6          The issue is -- I believe we're putting the cart

7   before the horse a little bit -- is they make the assumption

8   that there's been a determination that the Mississippi

9   Plaintiffs are indeed Class Members and that that is

10  undisputed.

11         Well, that is not true in our estimation.  In fact,

12  all of these opt-outs were made in a timely manner.  There's

13  no dispute about that.  The question is whether they are

14  valid.

15         Well, once they were made, they were sent to JND,

16  the legal administrators.

17         But to give a little relevant background, Your

18  Honor, in our written response, there's a copy of the notice,

19  the Settlement Notice that was actually sent to Class Members

20  or potential Class Members.  "How do I exclude myself from

21  the settlement?"  And it gives instructions for the

22  Settlement Class Members to do that.

23         There's also a section on "How do I tell the Court

24  that I like or don't like the settlement," for objecting to

25  the settlement.

1          And I would call to the Court's attention that

2    there's a stark difference between the two requirements.

3          One, in question 24 of the notice, if you look at

4    the -- the statement must contain the name of the proceeding,

5    your full name, your current address, the words "Request for

6    exclusion" at the top of the document or a statement that you

7    do not wish to participate in the settlement, and your

8    signature.

9          Now, I don't think there's any dispute the first

10   four items were complied with in the November 18th, 2019,

11   letter.

12          The signature issue is these letters were signed by

13   Mr. Hosford on behalf of his clients, just like many lawyers

14   do for their clients on legal proceedings.

15          The second notice, if you look at question 25, is

16   there's a requirement for objecting.  And if you look at

17   subparagraph three under section 25, it says, "Your personal

18   signature."  And in parentheses, "An attorney's signature is

19   not enough," parentheses.  That language is missing from the

20   initial -- the notice about excluding yourself from the

21   settlement.

22          So, certainly, our argument and our response, Your

23   Honor, is that you have to give those words some import, that

24   we have this requirement, "An attorney's signature is not

25   enough," clear, simple language.  Any claimant can understand

that.   That is not included on the notice to exclude
yourself.

　　　　　And so, Your Honor, we would say that's a technical
requirement.  We believe that the lawyer's signature should
stand in the stead of the clients in this case, and we
understand that the Order says differently, but the clients
didn't receive or the potential Class Members did not receive
a copy of the directing order.  They received a copy of this
notice that tells them the instructions.  The instructions
are different.

　　　　　And so there's no actual notice that it can't be
your attorney's signature like it was for objecting to the
Class.  So we would point out that that is something -- and
we remind the Court that that's under the backdrop that's
supposed to be in simple, plain language that lay Members can
understand.  So we would ask that the Court consider that as
part of this.

　　　　　And then it's supposed to be -- excuse me -- plain
language, simple terminology, and be readily understandable
by Settlement Class Members.

　　　　　So thus, our argument is an attorney's signature
would suffice for a proper opt-out request since the same is
not expressly included in the opt-out instructions as it
actually was in the objection instructions.

　　　　　So that would be the first item that we would like

1    to talk about, Your Honor.

2            Now, getting to the issue of the actual opt-out

3    request, they were timely made.  Now we get into the

4    procedure that was followed after that.  JND legal

5    administrators received a copy of this letter and all the

6    names.  According to the directing order, it's required that

7    they send a copy of all these opt-out requests to the

8    parties, to the Class and to Class Counsel and also to

9    Equifax.

10           Presumably at that time, they would have the

11   opportunity to object.  Like in many cases -- I was reading

12   an Eighth Circuit case where the actual party objected to the

13   lack of personal signatures.  They filed an objection once

14   they received that list.

15           In this case, that didn't happen.  There's been

16   zero notice to the actual Mississippi Plaintiffs that there

17   was a deficiency.  No chance to correct anything, no chance

18   to add to it, no chance to come before this Court and ask

19   that it be changed or that requirements be -- that they be

20   allowed to cure this deficiency that was alleged.

21           So -- and the other part of that is JND, I know, is

22   the Settlement Administrator, but they're actually making a

23   judicial determination here that, you know -- and there's no

24   appeal, there's no notification, there's no process for

25   review, that they make this determination without any notice

1    to anybody that actually submitted these notices.

2            And it would be as simple as, "Hey, Mr. Hosford, we

3    received these notices.  They didn't include this.  So we're

4    going to find that they were invalid."

5            Actually, we think that is the Court's

6    determination, not their determination.  But we think Equifax

7    should have to bring that objection before this Court.  They

8    didn't do that before the Final Order was entered.

9            Now, I believe, it would not be timely.  And this

10   is basically what they're doing at this point, is asking the

11   Court to make a determination that these opt-outs were not

12   valid when they didn't do so before.

13           And so we would say that there's a prima facie case

14   that they are validly submitted because they were timely,

15   they were received by the administrator.  There's no doubt

16   about that.  No one disputes that.

17           But they made a summary determination of validity.

18   We would submit that's your call, not theirs.  You may have

19   come to the same decision, but they don't get to make that

20   call.  They get to bring it before you and say, "We received

21   these.  Here's what we think the deficiencies are" -- and

22   when I say "we," Equifax -- "and we would ask that these be

23   excluded."  They did not do that.  And so they have not filed

24   any objection to date about these until this proceeding here.

25           Now, Your Honor, we would also say to the Court

1   that these opt-out requests were in compliance with the

2   notice provided and should be excluded from the Class.

3          We know that there are cases on both sides of this

4   issue that say an attorney's signature is good.  Some say

5   it's not.  And we understand that even this Court has found

6   that, that an attorney's signature is not enough.

7          But we would ask that the Court consider the

8   procedural and substantive due process of the clients not

9   being notified and the lack of a clear and unambiguous

10  statement of that requirement in the Settlement Notice, that

11  that would not be readily understood by the Settlement Class

12  Members.  And so we would ask the Court to find that the fact

13  that an attorney signed versus the client is not a fatally

14  defi- -- a fatal deficiency at this point.

15         Now, Your Honor, I would call your attention to an

16  Eighth Circuit case, the In re:  General American Life

17  Insurance Company Sales case, and in that case they had

18  basically the same issue come up about the attorney's

19  signature and they had an order in that case that that would

20  not suffice.

21         And the Court there found, While an attorney's

22  signature did not comply with the literal wording of the

23  Court's order, there is little question that the attorney's

24  signature complied with the court order as a matter of law.

25         "Both in Alabama and in Pennsylvania," and they

cite the relevant code and statutes, "attorneys are empowered to sign legal documents on behalf of their clients."

I would represent to you as a member of the Mississippi Bar, that is the same in Mississippi.

"Thus whatever the merit of the technical objection may be" by -- and that was by the actual company involved, General American Life Insurance Company -- "the legal propriety of attorneys signing their clients' opt-out requests cannot be impugned.

"Second, even if the class members violated the court's order by failing to personally sign," the Eighth Circuit was persuaded that the district court acted within the interests of justice and within its sound discretion to overlook that violation.

And they cite a case out of Texas that talks about the considerable flexibility that should be used when looking at what constitutes an effective opt-out request.

So we would ask the Court to allow the Mississippi Plaintiffs to proceed as excluded Class Members, and we submit to the Court they are excluded Class Members, and that the only deficiency is a technical deficiency, that the Court has the discretion to say that's okay.

Alternatively, we would ask the Court to accept those in the interests of justice or to give them the opportunity to cure that deficiency by providing additional

time since there was no notice provided by JND that there was
a deficiency.  And now Equifax has waited until all
applicable deadlines for appeal and everything else have
passed before they filed this motion.

So there's no way to appeal that issue, and that's
from Mississippi Plaintiffs who never received any notice
that there was a problem until they filed these actions --
responses in justice court, Your Honor.

So -- and we would ask that the Court find that
they either be allowed to cure the deficiency or submit a
late opt-out request.

And, Your Honor, we cite a case from the D.C.
Circuit that allows for you to modify under Rule 60(b) and
Federal Rule of Civil Procedure 6(b), where they allow late
opt-outs under conditions where the interests of justice
required that.

And so, Your Honor, we think that, you know, kind
of to summarize, is:

One, it was timely;

Two, they were valid;

And that it's just a technical deficiency about the
signature that was caused by the ambiguous notice;

Fourth, there was no due process afforded these
Mississippi Plaintiffs by failing to provide them notice that
their opt-out was deficient in some manner prior to the

1   proceeding.

2          And so we would ask the Court to find that these

3   clients are and were excluded at the time of their submission

4   on November 19th.

5          THE COURT:  Mr. Haskins, I'll give you the last

6   word, unless Mr. Tribble decides he wants to speak.

7          MR. TRIBBLE:  Again, not at this time.  Thank you,

8   Your Honor.

9          THE COURT:  All right.

10          MR. HASKINS:  Thank you, Your Honor.

11          And much of this we're obviously hearing for the

12   first time, but I'll try to address the points that Mr.

13   Starks made.

14          He is right about one thing:  Equifax is not

15   arguing that the letter that Mr. Hosford sent purporting to

16   opt out these Mississippi Plaintiffs was untimely, but it was

17   clearly deficient and did not comply with the Court's order,

18   and that's the problem.

19          Now, Mr. Starks claims that the Mississippi

20   Plaintiffs didn't have any notice of the deficiency in the

21   purported opt-out letter from Mr. Hosford, yet on

22   December 5th Class Counsel filed the final list of valid and

23   timely exclusions from the Settlement Class.  That was filed

24   in the court's docket.  It was there for the public to see,

25   including their counsel.  So they were clearly aware as of

1    December 5th that they were not on it.  Their names were not

2    included on that final exclusion list.

3         At that time, they could have raised their hand.

4    They could have objected and said, "Hey, we should have been

5    on there," or they could have come to the final approval

6    hearing and informed Your Honor that they felt like they

7    should have been included with the list of valid and timely

8    exclusions.  Of course, they did none of that.

9         Again, on January 13th, that list was attached to

10   the Court's final judgment.  Once again, the Mississippi

11   Plaintiffs were not on that final judgment.  Of course, it

12   was posted on the JND Settlement website.  It was also on

13   this court's docket.  It was available to counsel at any

14   time.  And at no point in time did they raise their hand and

15   object and say, "Hey, wait a minute.  My thousands of clients

16   are supposed to be on there."

17        So I think they had more than adequate notice that

18   they were not included on the final opt-out list.

19        Second, with respect to the argument that they made

20   about the requirement of the signatures not being expressed

21   in the notice itself, first of all, the Court's Order is what

22   controls here.  And clearly, you know, Mr. Hosford and Mr.

23   Starks in advising their clients had several months, six

24   months, to review that Order and comply with it.

25        But, second, even if you look at the notice

itself -- and, in fact, it's on page 14 of the brief that

they submitted -- and it's the response to the question in

the long form of the Settlement Notice in the Consumer

Settlement here, it says, "How do I exclude myself from the

settlement," and adjacent to the word "important," it says,

"You will be bound by the terms of the settlement unless you

submit a timely and signed written request to be excluded

from the settlement.

          "To exclude yourself from the settlement, you must

mail a request for exclusion."  Then it gives the address.

          And then it goes on to say, "This statement must

contain the following information:  your signature."

          I think it's pretty clear from anyone who reads

that, Your Honor, that that requires the signature and the

submission of the request for exclusion expressly by the

individual Class Member themselves.  There's nowhere in here

that it says, "or your attorney."

          And the fact that an attorney was expressly

excluded from the list of folks who could file an objection

is only because, of course, objections are frequently filed

by counsel on behalf of Class Members.

          But that doesn't change any aspect of this notice,

make it ambiguous in any way, nor does it relieve any of

these parties from their obligation to comply with the

express requirements in the Court's Preliminary Approval

1    Order.

2          Now, surprisingly, Mr. Starks also claimed that

3    somehow Equifax had waived its rights to enforce the release

4    claims against these Mississippi Plaintiffs because we didn't

5    object to Mr. Hosford's letter from November.

6          Of course, there was nothing for us to object to,

7    Your Honor.  The Mississippi Plaintiffs were not listed on

8    the list of valid opt-outs.  If they had been, we would have

9    objected, of course, but they were not, because JND made the

10   correct interpretation, as is its right and responsibility

11   under the Settlement Agreement, as the Court-appointed

12   Settlement Administrator, to determine if they had validly

13   and properly opted out.  They had not.

14         In fact, it's actually the Mississippi Plaintiffs

15   who have waived their rights here, because the entire

16   argument that Mr. Starks just made about a potential

17   ambiguity in the notice and whether or not an attorney's

18   signature would suffice to satisfy the signature requirement

19   described in the notice or in the Preliminary Approval Order,

20   to the extent they had an issue with that, they had ample

21   opportunity to either raise that issue with the Court or file

22   an objection to the procedure and be heard at the final

23   approval hearing.  Of course, they did neither.

24         Now, I want to talk just very briefly, Your Honor,

25   about this case, I believe it's from the Sixth Circuit, that

1    -- I'm sorry -- the Eighth Circuit, the General American

2    case.  You'll see it.  It's cited in their brief.  And that

3    case doesn't help their argument in this case at all.

4         While it is true that in that case, the court of

5    appeals did decide that the district court did not abuse its

6    discretion in waiving the signature requirement that it had

7    imposed in that case, what's important is that the court

8    didn't say that exclusion requests that are deficient because

9    they were signed by an attorney and not a class member must

10   be accepted by the district court.

11        And, in fact, if you take a look at the signature

12   requirement in General American, it's understandable why the

13   court reached that conclusion, because the signature

14   requirement in that case was much less explicit than it is in

15   this case, Your Honor.

16        In General American, the settlement -- neither the

17   settlement itself, the settlement agreement, or the court's

18   preliminary approval order, which is obviously very

19   important, contained the signature requirement.  There was no

20   express signature requirement in the court's preliminary

21   approval order.  It was only included in the notice where the

22   parties had added it themselves.

23        Here, of course, the signature requirement was

24   expressly in the Court's Preliminary Approval Order and also

25   in the Notice.

And not surprisingly, in that case, the parties who had added that provision, later the class counsel said, "Well, it's okay.  We're fine with waiving that provision."

There's been no argument by Class Counsel here waiving the express requirements in your Court's Order of a signature.

I think it's also important to keep in mind that in the General American case, there are only seven invalid exclusion requests.  Here, Mr. Hosford has purported to opt out over 4,500 Class Members with his letter that he sent back in November.

So the consequences of forgiving non-compliance in that case were much more severe.  And, in fact, I think even one of those exclusion requests, it was handwritten by the Class Member themselves.

So, obviously, the court there had a number of, you know, reasons why it allowed the signature requirement to be waived by the district court and did not find that that was an abuse of discretion, but that doesn't apply here, much less does it control.

And, in fact, many courts, including this Court, have enforced an individual signature requirement.  And as the Hallie case that we cited in our Motion, Your Honor, says indeed the signature requirement "seems to be the standard requirement in class actions, and it's not onerous."

And as the Court is well aware, obviously, this
Court imposed a signature requirement in the Home Depot Data
Breach Class Action Settlement, and Judge Ray also imposed a
similar signature requirement in the Arby's Data Breach Class
Action Settlement.

And as this Court specifically noted in its Final
Approval Order in this case, it stated that, "the individual
signature requirement on opt-out requests is not burdensome
at all," and, "it ensures that each individual has carefully
considered his options and understands that he is giving up
his right to relief under the settlement."

That's exactly what we were requiring here, Your
Honor, and it wasn't complied with.

Now, even if, you know, it was appropriate to waive
the individual signature requirement here, and it's not, the
Mississippi Plaintiffs have not complied with the other facet
of the Court's Order, which was the prohibition against
multiple or mass opt-outs.  Each request has to be submitted
individually, and they haven't even made an argument as to
how they complied with that portion of the Order, and that's
significant.

As the Court in the Larson case that we cited in
our Motion stated, it is well settled that the right to opt
out of a class action is an individual one.  And that court,
in rejecting multiple opt-outs in that case, said that the

overwhelming law denies mass opt-outs.

And that's for a good reason, because if we didn't
deny mass opt-outs, it would completely undermine a class
action settlement.  That's why the Court included that
requirement in the Final Approval Order.

And then finally, Your Honor, I just want to touch
on -- again, this is the first time we've heard this
argument, but that somehow even if they didn't comply with
the Court's Order, and, you know, that Order was available
and they could have reviewed it and complied with it for many
months, even if they didn't have the signature requirement
and they've opted out multiple Plaintiffs, that they should
somehow be granted a late request for an exclusion.

The Court should not consider this argument.  The
standard is excusable neglect.  This wasn't an issue of,
"Well, I mailed it a week late."  "I mailed it a day late."
"It got here a day late."

Now, there may have been some neglect here, but it
was not excusable.  In fact, it was neglect of the Court's
Order.

The Plaintiffs in this case are represented by
counsel, and they should have and should be required to have
read the Court's Order and complied with it, and they didn't.
And there's no excuse for that and they haven't offered one.

And we're not dealing with a small number of opt-

outs.  As we've said, there's over 4,500 purported Class

Settlement Members who would opt out, which would undermine

our settlement completely.  And, in fact, it would drive a

truck through, you know, much of the relief that was granted

to the Class; and, importantly, it would be unfair to those

Class Members who participated in the settlement and unfair

to those Class Members who took the time and effort to

validly and properly opt out.

        If we take a look at the Court's decision in that

Hallie v. Wells Fargo case, the court there actually explains

this requirement better than I could.  It says, "The purpose

of requiring the class member to actually sign the opt-out as

opposed to allowing a lawyer to sign it for her is to give

assurance that the defendants -- to the defendants that the

class member does not wish to be bound by the settlement.

The requirement of a personally signed individual opt-out

notice is rational, given the court's interest in avoiding

mass or large subclass opt-outs.

        "Class actions and class settlements would lose

their effectiveness if internal struggles among different

plaintiffs' lawyers and factions of plaintiffs were paired

with an easy way to fragment the class.  Requiring a

personally signed individual request for exclusion from class

settlement heightens the likelihood that each class plaintiff

will make an informed, individualized decision whether to opt

out, and courts want to encourage this careful decision-making process."

The court said, "Hallie's counsel should have well understood this requirement."

I submit to you, Your Honor, that the Mississippi Plaintiffs' counsel should have well understood this requirement as well.  It was express in the Court's Order, and they didn't comply with it and they've given no excuse for why they didn't.

Under those circumstances, Your Honor, there's no justification for allowing them to untimely opt out.

And then, finally, I just want to touch on the point that they did not act with diligence here.  If we go back and look at the timeline, Mr. Hosford sent his letter on November 19th, 2019, and that was the invalid attempt to opt out all of these Plaintiffs, but that was also the opt-out deadline.  So they waited until the very last minute and, of course, did not take any steps to try to remedy it.

As I mentioned earlier, that Final Opt-Out List was filed with the Court on December 5th, two weeks before the final approval hearing, and his clients weren't on it.  They didn't take any action to cure that.  They didn't take any steps to have them added to the list after this Court issued its Final Order.  And they didn't bring it up at the final approval hearing.  At no point did they ever ask this Court

1    to modify that final list in any way.

2            Instead, what they've done is continued to pursue

3    these claims and simply make this argument that those

4    provisions in the Order don't apply to them, without coming

5    to this Court and seeking relief from it.

6            I suggest to you that under those circumstances,

7    Your Honor, that's not excusable neglect.  That's an

8    intentional violation of this Court's order.  I think it

9    needs to be stopped.  I think this Court needs to order them

10   to dismiss these claims.  And if they don't do it, then we

11   need to be back in here for contempt proceedings in short

12   order.

13           Thank you.

14           MR. STARKS:  Your Honor, I would request permission

15   to address just the issue of the individualized requests

16   briefly, if I might, Your Honor.

17           THE COURT:  All right, Mr. Starks.

18           MR. STARKS:  Your Honor, the counsel for Equifax

19   has brought up the issue of this mass opt-out of sending one

20   letter with multiple names on it.

21           And I would direct Your Honor's attention to the

22   notice once more, that the notice given to potential Class

23   Members has no -- no information about that it has to be a

24   single opt-out request.  It would be simple to put a phrase

25   in there, "You must file your own opt-out request."  In fact,

in a lot of class actions they have forms that each person --
you have to submit your own form.  This case doesn't have
that.  You have to actually write your own statement, send it
in.

And we're not denying that that's in the Order, but
certainly it's not in the notice, which causes a problem
because that's what's supposed to be understandable to the
Settlement Class Members, not to the attorneys.  It's
supposed to be to the Settlement Class Members.

And so that individualized requirement or
individual opt-out requirement is not in this notice
anywhere, and that's on -- it's actually page three, but it's
marked -- it was 14 of the Settlement Notice that's in our
brief, Your Honor, that we copied the whole page from that
exclusion requirement.  And so it is nowhere to be there.

And the fact that it says you must submit a timely
and signed written request, well, that could be interpreted
either, yes, I know I've got to send it, but I can send it
with others.

There's no question that that could be interpreted
either way, and that's an ambiguity, Your Honor.  And they
drafted it or they were involved in the drafting of it, Your
Honor, with the settlement notice provider.  So we would ask
that that be certainly held against them as far as the
drafting of it.

1           And, Your Honor, the argument that mass opt-outs

2    undermine the settlement in this case, we've got 4,500 out of

3    147,000,000.  I don't think we've got a statistical anomaly

4    there that causes a problem with undermining their class

5    action settlement.

6           And, Your Honor, the other part of that is that,

7    you know, certainly an attorney could have created a form,

8    had each person sign it, stacked them all up and put them in

9    an envelope and mailed it off.  That wouldn't be an

10   impediment.  It's a matter of substance over form, really, is

11   what you're looking at rather than, hey, these people came

12   in, hired an attorney, asked him to send in their request to

13   be excluded.  They did so.  And their wishes are the ones

14   that should be the interests of justice, not technical

15   requirements for persons that are trying to get out of a

16   settlement.  It's certainly an important legal decision.

17          They were advised of their options.  They hired

18   counsel, which is much more advice than they got if they were

19   just members of the Class who remained in, most likely.

20   Because you have, you know, 140,000,000, 146,000,000 people

21   who remained in who ostensibly received no legal advice.

22   Some of them might, but I'll bet not many, Your Honor.

23          So we would say that those who actually went and

24   hired an attorney, sent in a request, they shouldn't be, you

25   know -- or they should be excluded from the class, Your

1   Honor.

2              Thank you.

3              THE COURT:  Do you have anything else, Mr. Haskins?

4              MR. HASKINS:  No, Your Honor.

5              THE COURT:  Mr. Tribble, one last opportunity.

6              MR. TRIBBLE:  No.  Thank you, Your Honor.

7              THE COURT:  All right.  I'm going to grant the

8   Defendant's Motion.  I do not believe that these individuals

9   were properly excluded from the Class.

10             Number one, there's no ambiguity whatsoever about

11  my Preliminary Approval Order and that these purported opt-

12  outs don't comply with that Order.

13             The Order clearly prohibited mass opt-outs like

14  these.  It clearly required individual personally signed

15  exclusions, unlike these.  There was no ambiguity whatsoever

16  about this.  If there was any, then Mr. Hosford and Mr.

17  Starks had an obligation to consult the Order and comply with

18  it in all respects.

19             The Settlement Notice itself, in my opinion, is not

20  ambiguous at all.  The words "Your signature" mean your

21  signature, and it's clear that individual opt-outs were

22  required.

23             And Mr. Hosford and Mr. Starks and the Plaintiffs

24  that they represented were on notice no later than December

25  the 5th that they were not included on the final list of opt-

outs.  They could have objected.  They could have appeared at
the final fairness hearing and objected to that.  They did
neither.

When I signed the final judgment identifying the
people who were excluded, their clients were not on that
list.  There was no objection to that.  They could have
appealed.  They clearly knew they weren't excluded at the
time my final judgment was entered.

So these are clearly Class Members.  They clearly
did not validly exclude themselves from the Class, and they
are bound by the Class Settlement.

MR. STARKS:  Your Honor, may I ask a question?

THE COURT:  Yes.

MR. STARKS:  The -- I believe the Proposed Order
provides that the relief is with prejudice that these should
be dismissed.  It's my understanding the case is still under
appeal.  So we would ask that they be stayed, and that if it
is affirmed on appeal, then it becomes with prejudice.  But
until then, that they just be merely stayed until that time
period, Your Honor.

THE COURT:  There's been no appeal from the list of
exclusions.  So I'm not going to do that, Mr. Starks.

MR. STARKS:  Okay.

THE COURT:  And I'm also not going to consider your
oral request for late exclusion.

1          MR. STARKS:  Thank you.

2          THE COURT:  I think it's completely untimely, and

3    in light of the failure to object on multiple occasions prior

4    to September of 2020, it's untimely.

5          All right.  Mr. Haskins, I've signed your Order.

6          MR. HASKINS:  Thank you, Your Honor.

7          THE COURT:  Thank you very much.  Gentlemen, that

8    concludes the hearing.

9          Court's in recess until further order.

10          (Proceedings concluded at 3:53 p.m.)

11                - - - - - - - -

12                   Reporter's Certification

13    I certify that the foregoing is a correct transcript from the

14    record of proceedings in the above-entitled matter.

15                              s/Diane Peede, RMR, CRR, CRC
                              Official Court Reporter
16                              United States District Court
      Date:  September 20, 2020   Northern District of Georgia
17