# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800<br>1:17-md-2800-TWT |

## FINANCIAL INSTITUTION PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

I.   BACKGROUND ........................................................................................2

    A.   Factual and Procedural Overview of the Litigation ..............................2

    B.   Negotiation of the Proposed Settlement...............................................4

II.  THE TERMS OF THE SETTLEMENT AGREEMENT.............................5

    A.   The Settlement Class Definition ..........................................................5

    B.   The Direct Benefits to the Settlement Class ........................................6

        1.   The Monetary Relief Made Available to Settlement Class
            Members.................................................................................6

        2.   Additional Security Measures..................................................7

        3.   Releases...................................................................................7

        4.   Administration Costs, Service Awards, Attorneys' Fees,
            and Expenses of Litigation.....................................................8

III. THE IMPLEMENTATION OF THE NOTICE PROGRAM
AND CLAIMS PROCESS ..........................................................................8

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED ..........................................10

    A.   Legal Standard for Final Approval of a Proposed Class Action
       Settlement........................................................................................10

    B.   The Rule 23(e) Factors Are Satisfied.................................................13

        1.   The Class Was Adequately Represented ..................................13

        2.   The Proposed Settlement Was Negotiated at Arm's Length....14

        3.   The Relief Is Fair, Reasonable, and Adequate.........................14

            a.   The Risks, Costs, and Delay of Continued Litigation....15

            b.   The Method of Distributing Relief Is Effective .............16

            c.   The Terms Relating to Attorneys' Fees Are
               Reasonable................................................................16

            d.   Agreements Required to Be Identified by
               Rule 23(e)(3)..............................................................17

|   |   | 4. | Class Members Are Treated Equitably Relative to Each Other.................................................................17 |
| C. | | | The Settlement Satisfies the *Bennett* Factors .....................................18 |
|   | 1. | | The Likelihood of Success at Trial ...........................................18 |
|   | 2. | | The Range of Possible Recovery ..............................................19 |
|   | 3. | | The Point on or Below the Range of Possible Recovery at Which a Settlement Is Fair, Adequate, and Reasonable..........20 |
|   | 4. | | The Complexity, Expense, and Duration of the Litigation.......20 |
|   | 5. | | The Substance and Amount of Opposition to the Settlement...21 |
|   | 6. | | The Stage of the Proceedings at Which the Settlement Was Achieved ...................................................................21 |

V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.............21

    A.    The Rule 23(a) Requirements Are Satisfied. ......................................22

    B.    The Requirements of Rule 23(b)(3) Are Satisfied .............................24

CONCLUSION .........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
No. C 18-05982-WHA, ECF No. 261 (N.D. Cal. Nov. 26, 2019) ....................15

*Agan v. Katzman & Korr, P.A.*,
222 F.R.D. 692 (S.D. Fla. 2004).........................................................................25

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................24

*Appleyard v. Wallace*,
754 F.2d 955 (11th Cir. 1985) ...........................................................................23

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) .........................................................................12

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ..............................................................10, 12, 18

*Berman v. Gen. Motors, LLC*,
CASE NO. 2:18-CV-14371, 2019 WL 6163798 (S.D. Fla. Nov. 18,
2019) ...................................................................................................................21

*Brown v. Electrolux Home Prods.*,
817 F.3d 1225 (11th Cir. 2016) ...................................................................22, 24

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ...........................................................................24

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545 (N.D. Ga. 2007) ..................................................................12, 13

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*,
Civil Action No. 15-0590-KD-B, 2017 WL 1042079 (S.D. Ala.
Mar. 17, 2017)....................................................................................................11

iii

*First Choice Federal Credit Union v. Wendy's Co.*,
Civil No. 2:16-cv-00506-NBF-MPK, 2019 WL 948400 (W.D. Pa.
Feb. 26, 2019) ...................................................................................16, 25

*George v. Academy Mortgage Corp. (UT)*,
369 F. Supp. 3d 1356 (N. D. Ga. 2019)...............................................18

*Hines v. Widnall*,
334 F.3d 1253 (11th Cir. 2003) ..........................................................23

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018).........................................................25

*In re Arby's Rest. Group, Inc. Data Sec. Litig.*,
Case No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June
6, 2019) ...............................................................................................20

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ..............................................................10

*In re Disposable Contact Lens Antitrust Litig.*,
170 F.R.D. 524 (M.D. Fla. 1996) ........................................................23

*In re Domestic Air Transp. Antitrust Litig.*
148 F.R.D. 297 (N.D. Ga. 1993) .........................................................11

*In re: Equifax, Inc., Customer Data Security Breach Litigation*
289 F. Supp. 3d 1322 (J.P.M.L. 2017) ...................................................3

*In re Equifax Inc. Customer Data Security Breach Litigation*,
No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17,
2020) .......................................................................................18, 21, 23

*In re: Equifax, Inc., Customer Data Security Breach Litigation*,
No. 1:17-md-2800-TWT (N.D. Ga.) .......................................................2

*In re Home Depot Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583, ECF No. 336-1 (N.D. Ga. Aug. 23, 2017).........19

*In re Home Depot, Inc., Customer Data Security Breach Litig.*,
Case No.: 1:14-md-02583-TWT, 2017 WL 9605206 (N.D. Ga.
Sept. 22, 2017) ..................................................................15, 23, 24

*In re the Home Depot, Inc., Customer Data Security Breach Litigation*,
  Case No.: 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .....................................................................................21

*In re Motorsports Merch. Antitrust Litig.*,
  112 F. Supp. 2d 1329 (N.D. Ga. 2000)..............................................11

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ...........................................................11

*In re Target Customer Data Sec. Breach Litig.*,
  No. 0:14-md-02522, ECF No. 747-1 ..................................................19

*Ingram v. Coca- Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .......................................................14

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm., Inc.*,
  275 F.R.D. 638 (M.D. Fla. 2011) ......................................................22

*McGaffin v. Argos USA, LLC*,
  Civil Action File No.: 4:16-cv-00104-RSB-BKE, 2020 WL 3491609 (S.D. Ga. June 26, 2020).......................................................18

*Terrill v. Electrolux Home Prods., Inc.*,
  295 F.R.D. 671 (S.D. Ga. 2013) ........................................................22

*Veridian Credit Union v. Eddie Bauer LLC*,
  2:17-cv-356, ECF No. 164-1 (W.D. Wash. Apr. 26, 2019) ...............19

*Veridian Credit Union v. Eddie Bauer LLC*,
  NO. 2:17-cv-00356-JLR, 2019 WL 5536824 (W.D. Wa. Oct. 25, 2019) ................................................................................................22

*Williams v. Mohawk Industries, Inc.*,
  568 F.3d 1350 (11th Cir. 2009) .........................................................22

## Statutes, Rules & Regulations

28 U.S.C. §1715(b) ..................................................................................9

Federal Rules of Civil Procedure

23...........................................................................................................12, 18
23(a) ............................................................................................................22
23(a)(1) .......................................................................................................22
23(b)(3) ..................................................................................................*passim*
23(e) .......................................................................................................*passim*
23(e)(2) ........................................................................................12, 13, 17
23(e)(2)(B) ..................................................................................................14
23(e)(2)(C)'s ...............................................................................................14
23(e)(3) ........................................................................................................17
30(b)(6) ........................................................................................................4

# **INTRODUCTION**

The Financial Institution Plaintiffs[1] ("Plaintiffs") move under Rule 23(e) of the Federal Rules of Civil Procedure for final approval of a class action settlement between themselves and Defendants Equifax Inc. and Equifax Information Services LLC (collectively, "Defendants" or "Equifax").   The proposed Settlement is an excellent result and was only reached after nearly three years of hard-fought litigation involving the filing of over twenty actions by financial institution Plaintiffs and successive rounds of motion practice.   Under the Settlement, Equifax will agree to: (1) pay up to $5.5 million for settlement Class Members who submit valid claims; (2) spend a minimum of $25 million over a period of two years towards adopting and/or maintaining data security measures pertinent to the Plaintiffs and their claims; (3) pay all reasonable settlement administration and notice costs; and (4) pay reasonable, Court-approved attorneys' fees, costs, expenses, and named Plaintiff service awards, up to agreed-upon limits.

The Court preliminarily approved this Settlement on June 4, 2020.   ECF No. 1132.   Notice has since been disseminated to all potential Settlement Class Members, and the response has been overwhelmingly positive.   With the deadline to file objections or opt out of the Settlement having passed, no Class Member has objected

---

[1]     All capitalized terms not defined herein have the meaning defined in the Settlement Agreement and Release ("Settlement," "Settlement Agreement," or "SA") filed at ECF No. 1107-4.

and only one Class Member has sought to timely opt out of participating in the Settlement. Plaintiffs now move the Court to: (1) certify the Settlement Class under Rules 23(b)(3) and 23(e); and (2) approve the Settlement as fair, reasonable, and adequate. In support of this Motion, Plaintiffs refer to the Joint Declaration of Gary F. Lynch and Joseph P. Guglielmo, which was submitted with Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards (ECF No. 1157-1) ("8/19/20 Jt. Decl."); the Joint Declaration of Gary F. Lynch and Joseph P. Guglielmo, which was submitted with Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 1107-2) ("5/15/20 Jt. Decl."); and the Declaration of Christopher D. Amundson ("Amundson Decl.") (Exhibit 1).

## I.   BACKGROUND

### A.   Factual and Procedural Overview of the Litigation

On September 7, 2017, Equifax Inc. announced that it had been the victim of a criminal cyberattack (the "Data Breach") on its computer systems in which the attackers gained unauthorized access to the personal information of approximately 147 million U.S. individuals, including credit and debit card numbers ("Payment Card Data") from approximately 209,000 consumers.

On December 7, 2017, the Judicial Panel on Multidistrict Litigation transferred those cases to this Court for coordinated pretrial proceedings under the case caption *In re: Equifax, Inc., Customer Data Security Breach Litigation*, No.

1:17-md-2800-TWT (N.D. Ga.).  *See* 289 F. Supp. 3d 1322 (J.P.M.L. 2017).  The Court appointed Co-Lead and Co-Liaison Counsel and a Plaintiffs' Steering Committee for the Financial Institution Cases.  ECF No. 232.

On May 30, 2018, Plaintiffs filed their Consolidated Amended Complaint (the "Complaint") against Equifax asserting claims for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief.  ECF No. 390.  On July 16, 2018, Equifax moved to dismiss the Complaint (the "Motion to Dismiss").  ECF No. 435.  The Court heard oral arguments on the Motion to Dismiss on December 14, 2018, and on January 28, 2019, the Court issued an order granting in part and denying in part the Motion to Dismiss.  ECF No.  539, corrected at ECF No. 711.

On March 20, 2019, Plaintiffs filed a Motion for Leave to Amend the Complaint (ECF No. 648), which Equifax opposed on July 29, 2019.  ECF No. 774. On December 18, 2019, the Court issued an order granting in part and denying in part the Financial Institutions' Motion for Leave to Amend.  ECF No. 941.

During the litigation, the Parties engaged in significant motion practice and discovery.  In particular, Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to Amend resulted in hundreds of pages of substantive briefing.  8/19/20 Jt. Decl., ¶4.  Plaintiffs served Equifax with a joint set of document requests and a specific set of document requests relating to their claims, and Equifax produced

millions of pages of documents, which Plaintiffs reviewed. *Id.* Additionally, Plaintiffs subpoenaed approximately sixty third parties and obtained and reviewed thousands of pages of documents from these third parties, including subpoenas served on the major card brands (Visa, MasterCard, American Express, and Discover) as well as other entities responsible for the investigation into the Data Breach. *Id.* Finally, Plaintiffs took multiple depositions of current and former Equifax employees and had numerous additional depositions, including a Rule 30(b)(6) deposition, noticed to occur at the time the Settlement was reached. *Id.*

### B.    Negotiation of the Proposed Settlement

This Settlement resulted from good faith, arm's-length settlement negotiations, including multiple settlement conferences, both in-person and telephonically, among counsel for the Parties, including a full-day mediation session with Phillips ADR – a respected mediation firm which also facilitated the Consumer-track settlement – on June 3, 2019.  8/19/20 Jt. Decl., ¶6.  The Parties resumed negotiations after the Court's order granting in part and denying in part leave to amend the complaint, including in-person negotiations on February 6, 2020, at which time an agreement in principle was reached and memorialized in a term sheet. *Id.*, ¶7.  The Parties did not discuss attorneys' fees, costs, or expenses prior to agreeing to the essential terms of the Settlement. *Id.*, ¶8.

## II.   THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   The Settlement Class Definition

On June 5, 2020, the Court preliminarily approved certification of the following Class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All Financial Institutions in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards (including debit or credit cards).

ECF No. 1133, Preliminary Approval Order ("PA Order") at 2. The term "Alerted on Payment Card" in the Class definition means

> [A]ny payment card (including debit or credit cards) that was identified as having been at risk as a result of the Data Breach in the following alerts or documents issued by Visa, MasterCard, Discover, or American Express: (i) in an alert in the MasterCard series ADC 004129-US-17 (e.g., ADC 004129-US-17-1, ADC 004129- US-17-2, ADC 004129-US-17-3); (ii) in an alert in the Visa series US-2017-0448-PA (e.g., US-2017-0448a-PA, US-2017-0448b-PA, US-2017-0448c-PA); (iii) in alert American Express Incident Number C1709012512; and (iv) in a similar notice issued by Discover, the recipients of which were identified by Discover in discovery in the Action.

SA, ¶2.1. Based on discovery, there are approximately 209,000 Alerted on Cards, issued by approximately 2,904 Settlement Class Members. SA, ¶1.1; Amundson Decl., ¶5. For settlement purposes only, the Parties agreed that the Court should certify the aforementioned Settlement Class under Fed. R. Civ. P. 23(b)(3). SA, ¶3.1.

**B.     The Direct Benefits to the Settlement Class**

**1.     The Monetary Relief Made Available to Settlement Class Members**

Under the Settlement, Equifax will pay, on a claims-made basis, up to a maximum aggregate amount of $5,500,000 to an escrow account from which the Settlement Administrator will make payments to Settlement Class Members who submit approved Documented Out-of-Pocket Claims and/or Fixed Payment Claims, as defined in the Settlement Agreement.  SA, ¶4.3.  Settlement Class Members may make both Documented Out-of-Pocket Claims and Fixed Payment Claims so long as such claims are not encompassed by one another.  *Id.*

For Fixed Payment Claims, Settlement Class Members who submit valid, documented claims are eligible to receive $4.50 for each Alerted on Payment Card they identify in their Claim Form.  SA, ¶4.4(a)(ii)(1).  For Documented Out-of-Pocket Claims, Equifax will provide monetary consideration up to $5,000 for each Settlement Class Member who submits valid, documented claims for reimbursement of the following types of documented, unreimbursed out-of-pocket expenses incurred directly as a result of, and specifically associated with, the Security Incident: (1) fraud reimbursement amounts paid to customers for fraudulent activity on Alerted on Payment Cards that occurred between July 6, 2017, and December 20, 2017; and (2) other direct, out-of-pocket expenses that a Settlement Class Member attests to having incurred as a result of, and specifically associated with, the Security

Incident between May 13, 2017, and December 20, 2017, as set forth in and subject to the Claims Administration and Distribution Plan.  SA, ¶4.4 (a)(ii)(2) & Ex. 1.  In the event the aggregate amount of all valid claims from Settlement Class Members exceeds $5,500,000, Fixed Payment Claims shall be paid first and Documented Out-of-Pocket Claims shall be pro-rated as set forth in the Claims Administration and Distribution Plan.  SA, ¶4.3 & Ex. 1.

### 2.    Additional Security Measures

In addition to monetary consideration, Equifax has agreed to spend a minimum of $25 million to adopt and/or maintain certain measures with respect to its U.S.-based businesses that regularly collect and hold United States consumers' personally-identifying information ("PII").  SA, ¶¶4.8, 4.9.

### 3.    Releases

In exchange for the consideration provided by Equifax under the Agreement, the Settlement Class Representatives, Settlement Class Members who do not timely and validly exclude themselves, and their related entities will release Equifax and its related entities from any claims that were or could have been asserted in the Complaint, including, but not limited to, claims related to the Data Breach, fraudulent use of any Alerted on Payment Cards, and any alleged damage to the financial services "ecosystem" as alleged in the Complaint.  SA, ¶9.1.

### 4. Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation

In addition to the monetary consideration made available to Settlement Class Members, Equifax has agreed to pay the reasonable costs of notice and settlement administration. SA, ¶¶2.9, 4.4(b)(i). In addition, subject to the Court's approval, Equifax will pay up to $1,500 to each of the twenty-one named Plaintiffs as a service award (SA, ¶¶4.4(b)(ii), 10.1; *see also* ECF No. 1158), and will pay Class Counsel up to $2,000,000 as attorneys' fees, and up to $250,000 as reimbursement of litigation costs and expenses. SA, ¶¶4.4(b)(iii), 10.2; *see also* ECF No. 1158.

## III. THE IMPLEMENTATION OF THE NOTICE PROGRAM AND CLAIMS PROCESS

The Parties implemented the Court-approved Notice Program in coordination with the approved Settlement Administrator, Analytics Consulting, LLC ("Analytics"). PA Order at 5-6; Amundson Decl., ¶2. Using records obtained by Class Counsel through third party discovery, Analytics created a database list of Settlement Class Members and verified the addresses using multiple methods. Amundson Decl., ¶5. This resulted in mailing address records for 2,904 Settlement Class Members. *Id.* Analytics caused the Court-approved Notice and Claim Forms to be sent via USPS first-class mail on July 6, 2020. *Id.*, ¶6.

As of September 21, 2020, USPS has returned 6 Notices with an updated address for the Settlement Class Member (the period in which USPS automatically

forwards the Notice had expired).  *Id.*, ¶7.  Analytics re-mailed the Notices to these Settlement Class Members at their updated addresses.  *Id.*  An additional two Notices were returned by USPS as undeliverable.  *Id.*  Analytics was not able to locate new addresses through a third-party commercial data source, Experian; both Notices remain undeliverable.  *Id.*  Analytics estimates that Notice was successfully delivered to over 99% of the Settlement Class.  *Id.*  Analytics also caused the summary form of the Notice to be published in the digital edition of the *ABA Banking Journal* for a period of 30 consecutive days, ending on August 5, 2020.  *Id.*, ¶8; *see also* https://bankingjournal.aba.com/2020/07/26851/.

Analytics established a Settlement Website, operational as of July 6, 2020, where Settlement Class Members can review relevant pleadings, obtain Settlement information and submit/upload Claim Forms electronically.  *Id.*, ¶¶9-10.  The Settlement Website has received visits from 1,373 unique users as of September 21, 2020.  ¶10.  Analytics also established a toll-free phone number to provide Settlement Class Members with additional information regarding the Settlement through both automated messages and live call center representatives.  *Id.*, ¶9.  The toll-free number became operational on July 6, 2020, and as of September 21, 2019, the number has received 40 phone calls and 15 requests to speak with a customer service representative.  *Id.*  In compliance with the Class Action Fairness Act ("CAFA"), 28

9

U.S.C. §1715(b), Analytics served Notice of the proposed Settlement on the appropriate state and federal authorities on May 29, 2020.  *Id.*, ¶3.

Under the schedule established by the Preliminary Approval Order, the deadline for Settlement Class Members to opt out from or object to the Settlement was September 2, 2020, and the deadline for Settlement Class Members to submit claims is December 31, 2020.  PA Order at 7.  One timely request for exclusion and no objections were received by Analytics and is attached as Exhibit D to the Declaration of Chris Amundson.  Amundson Decl., ¶14.

As of September 21, 2020, a total of 97 Claim Forms have been submitted by Settlement Class Members.  Amundson Decl., ¶13.  The claims process is ongoing and the deadline for filing claims is December 31, 2020.  *Id.*; PA Order at 14.

## IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A.  Legal Standard for Final Approval of a Proposed Class Action Settlement

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e).  A court's analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the

realization that compromise is the essence of settlement.").

In evaluating a proposed class settlement, "'absent fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of experienced counsel representing the class.'" *In re Domestic Air Transp. Antitrust Litig.* 148 F.R.D. 297, 315 (N.D. Ga. 1993).[2]  Indeed, "'[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'" *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).  Class settlements are also favored because they minimize the parties' expenses and reduce the strain major litigation imposes upon already scarce judicial resources.  *See Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, Civil Action No. 15-0590-KD-B, 2017 WL 1042079, at *5 (S.D. Ala. Mar. 17, 2017).

Courts have broad discretion over the settlement approval process.  *See*, *e.g.*, *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).  In exercising this discretion, courts in this Circuit analyze a settlement using the so-called *Bennett* factors.  These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of

---

[2]      Unless otherwise indicated, citations are omitted and emphasis is added.

proceedings at which the settlement was achieved.  *Bennett*, 737 F.2d at 986.  *See*, *e.g*., *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558–59 (N.D. Ga. 2007); *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1217 (11th Cir. 2012).

Additionally, in 2018, Rule 23(e) was amended to set forth the requirements a class action settlement must satisfy in order to be approved.  The 2018 amendments to Rule 23 make clear that the court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."  *See* Fed R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  While "[t]he relief that the settlement is expected to provide to class members is a central concern," *id*., the enumerated considerations include whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, delay of trial and appeal; (4) how the relief will be distributed; the terms governing attorney's fees; and any side agreements; and (5) whether Class Members are treated equitably relative to each other.  Fed. R. Civ. P. 23(e).

As discussed herein, Plaintiffs demonstrate that the Settlement both satisfies the Rule 23(e)(2) factors and the *Bennett* factors and should be finally approved.

### B.     The Rule 23(e) Factors Are Satisfied

#### 1.     The Class Was Adequately Represented

The first requirement for approval of a settlement under Rule 23(e)(2) involves two questions: "(1) whether the [class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 555.   Here, the Class Representatives are adequate because they share the same interests as absent Class Members, assert the same claims stemming from the same event, and share the same injuries.  8/19/20 Jt. Decl., ¶18.  Specifically, the Class Representatives and all Class Members received an alert from Visa, Mastercard, American Express, and/or Discover informing them that payment cards that they issued to customers had been compromised.  SA, ¶3.1.

Moreover, Class Counsel have demonstrated that they have appropriate qualifications through their actions in this case as well as when they applied to be and were subsequently appointed Co-Lead Counsel for the Financial Institution Plaintiffs.  ECF Nos. 189 & 232.  Plaintiffs' interests align with each other and the other Class Members, and the Class was more than adequately represented by Class Counsel.

13

### 2.      The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." This settlement was negotiated at arm's length over the period of months, a fact supported by the terms of the settlement, the length and difficulty of the negotiations, and the oversight of Phillips ADR as mediator. *See generally Ingram v. Coca- Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (the presence of "a highly experienced mediator, lends further support to the absence of collusion"). Thus, there is no evidence of collusion.

### 3.      The Relief Is Fair, Reasonable, and Adequate

Rule 23(e)(2)(C)'s mandate that any settlement be "fair, reasonable, and adequate" requires consideration of the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the Class, and the terms of the proposed award of attorneys' fees. As stated above, a central concern is the amount of relief available to the class, and in this case, the recovery to the class is excellent in comparison with previous data breach settlements. Attached hereto as Exhibit 2 is a chart summarizing the material terms of recent class action settlements on behalf of financial institutions in data breach cases. The Settlement here – providing for up to $4.50 per alerted on card and up to $5,000 for fraud losses – is clearly an excellent result as it provides monetary relief that is comparable to or even more favorable than prior settlements found to be fair, reasonable, and adequate.

### a.     The Risks, Costs, and Delay of Continued Litigation

At the time of the Settlement, a thorough factual and legal investigation had been conducted, which included the review of over one million documents, depositions of Equifax employees, and involved interviews and discussions with the Settlement Class Representatives.  8/19/20 Jt. Decl., ¶18.

As a result, Class Counsel were armed with sufficient knowledge of the law and facts to fairly weigh the benefits of the Settlement against the potential of continued litigation.  The cost and delay of continued litigation are obviously substantial.  *See, e.g.*, *In re Home Depot, Inc., Customer Data Security Breach Litig.*, Case No.: 1:14-md-02583-TWT, 2017 WL 9605206, at *3 (N.D. Ga. Sept. 22, 2017) (finding that "complexity, expense and likely duration of the litigation if the settlement is not approved" weighed in favor of settlement).  Equifax's Motion to Dismiss was granted as to part of the initial proposed class, and the Court denied in large part Plaintiffs' Motion to Amend the complaint.

Class certification outside of the settlement context also poses a significant challenge.  *See, e.g.*, Redacted Version of Order on Motion for Class Certification and Motions to Strike, *Adkins v. Facebook, Inc*., No. C 18-05982-WHA, ECF No. 261 (N.D. Cal. Nov. 26, 2019) (denying motion to certify data breach damages class under Rule 23(b)(3)).  And, even if Plaintiffs would have prevailed on all those legal issues, they faced the risks that proof of causation would be difficult, that discovery

15

would not support their factual allegations, that a jury might find for Equifax on disputed factual issues, or that an appellate court might reverse a Plaintiffs' judgment on any of several possible grounds.

### b. The Method of Distributing Relief Is Effective

As described above and in the declarations supporting preliminary approval, Class Members can easily file claims for monetary relief. Packets containing a long-form notice with all pertinent information, a paper claims form, and information about how to opt out or object to the settlement were mailed to all eligible class members on July 6, 2020. Additionally, a settlement website has been live since July 6, 2020 and allows Class Members to view important documents and file claims.[3] Those claiming out-of-pocket losses must supply documentation of the loss, but such requirements are routine. Further, the Settlement Administrator in this case is highly regarded and experienced in handling large class actions claims. *See, e.g.*, *First Choice Federal Credit Union v. Wendy's Co.*, Civil No. 2:16-cv-00506-NBF-MPK, 2019 WL 948400, at *2 (W.D. Pa. Feb. 26, 2019) (approving Analytics, LLC as settlement administrator in data breach settlement for financial institutions).

### c. The Terms Relating to Attorneys' Fees Are Reasonable

As described in their unopposed fee application, Plaintiffs requested that the Court approve attorneys' fees in the amount of $2,000,000. This figure represents,

---

[3]     Available at https://equifaxfidatabreachsettlement.com/.

at most, 25.8% of the constructive common fund created by the Settlement, or a lodestar of 0.16, which supports the reasonableness of the requested attorney's fees. *See* FI Pls.' Mem. of Law in Supp. of Mot. for Approval of Attorneys' Fees, Expenses and Service Awards at 2, ECF No. 1157 ("Plaintiffs' Fee Br."); 8/19/20 Jt. Decl., ¶12.  As is fully set forth in that memorandum, this request is in accordance with Eleventh Circuit precedent and is within the typical range of fee awards in cases of similar type and complexity.

### d.    Agreements Required to Be Identified by Rule 23(e)(3)

The parties agreed that, upon request, they would submit to the Court, in camera, the specific terms of a provision allowing Equifax to terminate the Settlement if more than a certain number of Class Members opted out.  This provision has not been triggered, and thus does not affect the adequacy of the relief obtained here.

### 4.    Class Members Are Treated Equitably Relative to Each Other

Finally, Rule 23(e)(2) requires that the class members be treated equitably relative to one another.  This requirement can include evaluation of "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways . . . ."  Advsory Comm. Notes, 2018.  Class Members are treated equitably because they all are eligible to claim the same benefits provided by

the Settlement if they meet the same requirements, including claiming fixed costs for Alerted on Payment Cards and documented out of pocket costs incurred in responding to the breach. *See also In re Equifax Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *9 (N.D. Ga. Mar. 17, 2020) ("As an initial matter, the class members all have similar claims arising from the same event: the Equifax data breach. And as all class members are eligible to claim the various benefits provided by the settlement if they meet the requirements, they all are treated equitably under the settlement.").

### C.   The Settlement Satisfies the *Bennett* Factors

In addition to fulfilling the requirements for approval of a class action settlement under Rule 23, the terms of this Settlement also satisfy the traditional factors set forth by the 11th Circuit in *Bennett*, 737 F.2d at 986 (the "*Bennett* factors"). *See also McGaffin v. Argos USA, LLC*, Civil Action File No.: 4:16-cv-00104-RSB-BKE, 2020 WL 3491609 (S.D. Ga. June 26, 2020), *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356 (N. D. Ga. 2019). Those factors are discussed below.

### 1.   The Likelihood of Success at Trial

As discussed above, Plaintiffs faced numerous obstacles to winning a trial on the merits of this case. Moreover, the likelihood of success at trial required Plaintiffs to succeed on their class certification motion and defeat any summary judgment

motion filed by Equifax.  The uncertainty surrounding the outcome of those motions and success at trial weighs in favor of approving the settlement.

### 2.    The Range of Possible Recovery

Plaintiffs are not aware of any similar case that has been resolved at trial, and Plaintiffs' primary negligence claims would not provide for any fixed statutory damage awards if successful, so estimating the Plaintiffs' maximum possible recovery with precision would likely require expensive expert analysis. However, other approved settlements provide useful data on the range of recoveries achieved in similar litigation. In *Target* and *Home Depot*, the settlements provided financial institutions with $1.50 and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option to obtain a percentage of documented losses). *See* Settlement Notice, *In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); Joint Declaration of Co-Lead Counsel, *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017).  Other approved settlements also provided approximately $2.00–$3.00 per card. *See* Settlement Agreement, *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-356, ECF No. 164-1 at 6, ¶33 (W.D. Wash. Apr. 26, 2019); Pls.' Mem. in Supp. of Mot. for Final Approval, *First Choice Federal Credit Union v. The Wendy's Company*, 2:16-cv-

506, ECF No. 186 at 19 (W.D. Pa. Oct. 7, 2019) (noting that distribution per card would have been approximately $2.00 if claims rate had been 100%).

### 3.   The Point on or Below the Range of Possible Recovery at Which a Settlement Is Fair, Adequate, and Reasonable

As is illustrated by the cases above and those listed in Exhibit 2, the relief afforded by this settlement is well within the range of a possible recovery and compares favorably to settlements in other data breach cases. Thus, the Settlement clearly falls on the higher end of what has been recovered on a per-Class Member basis in similar cases. As a result, the Court should find that these factors support approval of the Settlement.

### 4.   The Complexity, Expense, and Duration of the Litigation

Data breach class actions typically require protracted motion practice including motions for summary judgment; involved discovery proceedings, including numerous reports and depositions of experts; and hearings related to these proceedings. *See, e.g.*, *In re Arby's Rest. Group, Inc. Data Sec. Litig.*, Case No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 6, 2019). Although the action has already entailed significant motion practice and discovery, several major phases remained, including expert discovery, class certification, summary judgment, and trial. Approval of the Settlement at this stage will provide efficient relief to the Class, and spare the Parties further expenditures of time and money that could have threatened the overall return available for Class Members

### 5.     The Substance and Amount of Opposition to the Settlement

The deadline to file objections or opt out was September 2, 2020.  There was no opposition to the settlement and only one timely opt-out from the Settlement; this factor weighs in favor of approval.

### 6.     The Stage of the Proceedings at Which the Settlement Was Achieved

This factor measures whether "the parties 'had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'"  *Berman v. Gen. Motors, LLC*, CASE NO. 2:18-CV-14371, 2019 WL 6163798, at *8 (S.D. Fla. Nov. 18, 2019).  As detailed above, the Settlement was not reached until after extensive motion practice and discovery.  Thus, the parties were well apprised of the facts and circumstances affecting settlement.

Analysis of Rule 23(e) and the *Bennett* factors demonstrates that the settlement is fair, reasonable and adequate and meets the criteria for final approval.

## V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Settlement Class should now be finally certified.  Settlement classes are routinely certified in data breach cases.  *See, e.g.*, *Equifax*, 2020 WL 256132; *In re the Home Depot, Inc., Customer Data Security Breach Litigation*, Case No.: 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *Veridian Credit Union v. Eddie Bauer LLC*, NO. 2:17-cv-00356-JLR, 2019 WL 5536824 (W.D. Wa.

Oct. 25, 2019). This Court has already found that it likely would certify the class when it preliminarily approved the settlement (PA Order at 1–2). As demonstrated below, that decision should be made final.

### A.    The Rule 23(a) Requirements Are Satisfied.

1.    Numerosity: Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." The proposed class consists of thousands of financial institutions (5/15/20 Jt. Decl., ¶6), which is more than sufficient. *See, e.g.*, *James D. Hinson Elec. Contracting Co., Inc.  v. BellSouth Telecomm., Inc*., 275 F.R.D. 638, 642 (M.D. Fla. 2011).

2.    Commonality: "[c]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members,'" *Williams v. Mohawk Industries, Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Prods., Inc*., 295 F.R.D. 671, 685 (S.D. Ga. 2013), vacated and remanded on other grounds, *Brown v. Electrolux Home Prods*., 817 F.3d 1225 (11th Cir. 2016). In this case, all members of the proposed class assert that they issued payment cards that were compromised as a result of the Data Breach, and they bring the same legal claims based on Equifax's common conduct.  All class members' claims arise out of Equifax's conduct resulting in the Data breach.  Thus, the

commonality requirement is met. *See Equifax*, 2020 WL 256132, at *12 ("Courts, including this one, have previously addressed this requirement in the context of data breach class actions and found it readily satisfied.").

3.      Typicality: the typicality requirement primarily focuses on whether the 21 named Plaintiffs' claims "have the same essential characteristics" as claims of other class members. *See, e.g.*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The requirement is undemanding, *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the named plaintiffs' claims and the common questions uniting the Class. *See, e.g.*, *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). Here, the claims of all class members arise out of the same alleged misconduct by Equifax and are based on the same legal theories, *i.e.*, claims for negligence, negligence per se, negligent misrepresentation, and claims under various state business practices statutes. *See, e.g.*, *Home Depot*, 2017 WL 9605206, at *3 (finding typicality requirement met in financial institutions' data breach litigation). Thus, the typicality requirement is satisfied.

4.      Adequacy of Representation: as noted above, Plaintiffs do not have any interests antagonistic to other Class Members and have retained lawyers whom the Court has already recognized are abundantly qualified and experienced, thus satisfying the adequacy requirement. 8/19/20 Jt. Decl., ¶¶2, 13, 14.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  One part of the superiority analysis – manageability – is irrelevant for purposes of certifying a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Predominance:   the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016).  Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Equifax, and the only individual issues involve damages, which rarely present predominance problems. *See, e.g.*, *Home Depot*, 2017 WL 9605206, at *3; *Brown*, 817 F.3d at 1239 (individualized damages generally do not defeat predominance).  Further, the fact that multiple state laws are implicated in this case does not defeat predominance: "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims" for purposes of Rule

23(b)(3).  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018).  Here too, "Plaintiffs' theories across these consumer-protection statutes are essentially the same."  *Id.*

Superiority: "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"  *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004); *First Choice Federal Credit Union*, 2019 WL 948400, at *1.  Litigating the same claims of thousands of financial institutions through individual litigation would obviously be inefficient.  The superiority requirement thus is satisfied.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs request the Court grant Plaintiffs' motion, finally approve the Settlement, and certify the Settlement Class for settlement purposes.


Dated: September 21, 2020              Respectfully submitted,

/s/ Joseph P.  Guglielmo            /s/ Gary F.  Lynch
Joseph P.  Guglielmo                  Gary F.  Lynch
**SCOTT+SCOTT ATTORNEYS**             **CARLSON LYNCH, LLP**
**AT LAW LLP**                        1133 Penn Avenue, 5th Floor
230 Park Avenue, 17th Floor           Pittsburgh, Pennsylvania 15222
New York, New York 10169              Tel.  412.322.9243
Tel.  212.223.6444                    glynch@carlsonlynch.com
jguglielmo@scott-scott.com

*Financial Institution Plaintiffs' Co-Lead Counsel*

25

Craig A. Gillen
**GILLEN WITHERS & LAKE, LLC**
3490 Piedmont Road, N.E.
One Securities Centre, Suite 1050
Atlanta, Georgia 30305
Tel. 404.842.9700
cgillen@gwllawfirm.com

Ranse Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway
Building One, Suite 300
Atlanta, Georgia 30327
Tel. 404.572.4600
ranse@onleygriggs.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

*Financial Institution Plaintiffs' Co-Liaison Counsel*

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Tel. 504.525.8100
amurray@murray-lawfirm.com

Charles H. Van Horn
**BERMAN FINK VANHORN P.C.**
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Tel. 404.261.7711
cvanhorn@bfvlaw.com

Stacey P. Slaughter
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Tel. 612.349.8500
sslaughter@robinskaplan.com

Allen Carney
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Tel. 501.312.8500
acarney@cbplaw.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North
Suite 300
Minneapolis, Minnesota 55401
Tel. 612.339.7300

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200

26

bbleichner@chestnutcambronne.com

Brian C.  Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Tel.  612.341.0400
brian.gudmunson@zimmreed.com

Minneapolis, Minnesota 55401
Tel.  501.812.5575
khriebel@locklaw.com

Karen S.  Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O.  Box 241790
Little Rock, Arkansas 72223
Tel.  501.821.5575
karenhalbert@robertslawfirm.us

*Financial Institution Plaintiffs' Steering Committee*


## CERTIFICATE OF COMPLIANCE

Pursuant to L.R.  7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R.  5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 21st day of September, 2020.

*/s/ Joseph P.  Guglielmo*
Joseph P.  Guglielmo

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

                                                                    */s/ Joseph P.  Guglielmo*
                                                                    Joseph P.  Guglielmo