# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re: Equifax, Inc. Customer Data Security Breach Litigation | ) MDL Docket No. 2800 <br> ) Case No.: 1:17-md-2800-TWT <br> ) <br> ) This document relates to: <br> ) <br> ) FINANCIAL INSTITUTIONS TRACK <br> ) <br> ) |

# FINANCIAL INSTITUTION PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Financial Institution Plaintiffs submit this reply in further support of their motion for final approval of the Settlement with Defendants Equifax, Inc. and Equifax Information Services, LLC ("Equifax") (ECF No. 1182), and motion for an award of attorneys' fees, expenses, and service awards to the Settlement Class Representatives (ECF No. 1158).

## I.     Update on Claim Process

Pursuant to the Order preliminarily approving the Settlement (ECF No. 1133), the Settlement Administrator administered notice of the Settlement to Settlement Class Members, resulting in approximately 99% of Settlement Class Members receiving mailed notice. Moreover, a Settlement website has been available to Settlement Class Members to obtain information regarding the Settlement and the deadlines to opt out, object, and file a claim. As of October 9, 2020, there have been 109 claims filed by Settlement Class Members, according to the latest report from the Settlement Administrator. The claims process is ongoing and the deadline for Settlement Class Members to submit claims is December 31, 2020. (ECF No. 1133, Prelim. App. Order at 14). The deadline for Settlement Class Members to object or opt out passed on September 2, 2020 (*id.* at 7), and no Settlement Class Member objected to the Settlement and only one Settlement Class Member request for exclusion has been submitted.

## II. The Requested Service Awards Remain Valid Despite the Eleventh Circuit's Opinion in *Johnson v. NPAS Solutions, LLC*

### A. Background Regarding Requested Service Awards and Conflicting Eleventh Circuit Panel Opinions on the Topic of Incentive Awards

Plaintiffs believe that the recent opinion by the Eleventh Circuit in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), is distinguishable on its facts and is not controlling in the situation present here.

The appeal in *Johnson* challenged a district court's final approval of a class action settlement in a case brought under the Telephone Consumer Protection Act. The settlement created a settlement fund of $1,432,000, from which claims were to be paid as well as attorneys' fees, expenses, and a $6,000 incentive award requested by the named plaintiff. *Id.*, at *3. The appealing objector argued, *inter alia*, that the district court should not have approved the incentive award because it created a conflict of interest between the class representative and absent class members, and because two Supreme Court cases from the 1880s—*Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885)—purportedly prohibited such awards. *Johnson*, 2020 WL 5553312, at *7.[1]

---

[1] *Greenough* and *Pettus* are the earliest cases in which the Supreme Court recognized, applying principles of equity, that one who secures a benefit for others is entitled to be reimbursed for

3

Two members of the *Johnson* panel—Judge Newsom and Judge Baldock (of the Tenth Circuit, sitting by designation) held that the $6,000 incentive award to the named plaintiff was akin to "a salary, a bounty, or both," and that *Greenough* and *Pettus* prohibited such payments. *Id.*, at *10. Judge Martin dissented from that part of the majority opinion, writing that the majority "takes a step that no other court has taken to do away with the incentive for people to bring class actions," and that the practical effect of the opinion would be "requiring named plaintiffs to incur costs well beyond any benefits they receive from their role in leading the class." *Id.*, at *15 (Martin, J., concurring in part and dissenting in part).

Although not mentioned by the majority or the dissent in *Johnson*, a different panel of the Eleventh Circuit previously considered and rejected the same objection to incentive awards made in *Johnson*, but that panel opinion has been vacated pending rehearing by the Eleventh Circuit *en banc*. *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196–97 (11th Cir. 2019), *vacated*, 939 F.3d 1278 (11th Cir.). In *Muransky*, the objector was represented by the same counsel representing the objector in *Johnson*. *Muransky*, 922 F.3d at 1175 (listing John W.

---

expenses, including attorneys' fees, from the common fund created by the litigation. *Johnson*, 2020 WL 5553312, at *7.

Davis as counsel for appellant Eric Alan Isaacson); *Johnson*, 2020 WL 5553312, at *1 (listing Davis and Isaacson as counsel for appellant).

The *Muransky* objector raised the same argument against incentive awards, also relying on *Greenough* and *Pettus*. *Muransky*, 922 F.3d at 1196. ("Relying on two common fund cases, Mr. Isaacson says litigants who secure a common fund can recover reasonable attorney's fees and litigation expenses but cannot recover incentive awards for their own services."). The now-vacated panel opinion directly rejected the argument, noting that "[m]any circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23," identified a number of possible justifications for such awards, and held "[a]ll of these justifications are legitimate, and district courts may exercise their discretion to determine whether they favor an incentive award in any given case." *Id.* at 1196–97.[2]

The Second Circuit also recently rejected the same argument raised by the same objecting counsel. *See Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019) ("Fourth, Bowes contends that incentive bonuses here are unlawful, given that the case involves common funds. The cases cited by Bowes

---

[2] The *Muransky* panel held that district courts reviewing proposed incentive awards should follow *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983), and determine whether terms that provide preferential treatment to named plaintiffs are fair and supported by "legitimate considerations." *Muranksy*, 922 F.3d at 1196–97 (citing *Holmes*, 706 F.2d at 1147–48).

5

for this proposition are inapposite. Neither [*Pettus*] nor [*Greenough*], provide factual settings akin to those here.").

As mentioned, the *Muransky* panel opinion was vacated pending rehearing *en banc*. The oral argument was held on February 25, 2020. In *Johnson*, both the named plaintiff and the objector have requested extensions of time to file petitions for panel rehearing or rehearing *en banc*. Those petitions are now due on October 22, 2020. As it stands, while Financial Institution Plaintiffs acknowledge that the *Johnson* opinion is currently binding circuit law, it may be vacated in the near future if rehearing is granted, or abrogated if the full Eleventh Circuit reinstates the panel opinion in *Muransky*. Nevertheless, as explained below, *Johnson* should not control here.

> **B.  The Holding in *Johnson* Does Not Apply to Service Awards that Are Not Paid from a Common Fund, and the Rule of *Greenough* Should Not Be Extended Here Because the Scenarios Are Clearly Distinguishable.**

As set forth herein, Financial Institution Plaintiffs believe that the Service Awards to the Settlement Class Representatives are appropriate and should be approved by the Court. Pursuant to the Settlement Agreement, Equifax agreed to pay Service Awards of $1,500 to each of the 21 named plaintiffs who were Settlement Class Representatives, subject to this Court's approval. Settlement Agreement, ¶¶4.4(b)(ii), 10.1 (filed at ECF No. 1107-4). Importantly, Equifax

agreed to pay these Service Awards separate and apart from any monetary consideration being made available to the Class. Thus, the $5.5 million that Equifax has agreed to make available for payment of claims to Settlement Class Members will not be increased if the Court were to deny these Service Awards. This fact distinguishes the Settlement here from the one under consideration in *Johnson* and the scenario in *Greenough*.

Indeed, both the majority opinion in *Johnson* and the *Greenough* case upon which it relies[3] involve situations where a lead plaintiff requested payment for a "salary" or "bounty" from a common fund, such that the payment would diminish the funds available to others entitled to share in the fund. *See Greenough*, 105 U.S. at 538; *Johnson*, 2020 WL 5553312, at *11 n.11 (noting that denial of incentive award would result in redistribution of funds to the rest of the class). Since that is not the situation here and Equifax contractually agreed to pay the requested Service Awards separately from the monetary relief provided to the Settlement Class, the Court should approve the requested awards.

In the related context of determining a reasonable attorney fee award in class litigation, the Eleventh Circuit recently emphasized the distinction between a

---

[3] The majority opinion in *Johnson* also discusses *Central Railroad & Banking Co. v. Pettus*, but that case does not provide any further pertinent authority beyond reiterating the main holding of *Greenough*.

7

settlement that creates a true common fund—from which attorneys' fees are paid—versus one in which the settling defendant separately agrees to pay the fees: "the key distinction between common-fund and fee-shifting cases is whether the attorney's fees are paid by the client (as in common-fund cases) or by the other party (as in fee-shifting cases)." *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019). The authority for permitting attorneys' fees to be paid out of a common fund is sourced in the equitable principle of preventing unjust enrichment of the class members at the expense of the named plaintiffs or their attorneys. *Id.* at 1085; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."). By contrast, the authority for payment of fees directly from a settling defendant who agrees to do so is contractual, in the form of the parties' settlement agreement. *See Home Depot*, 931 F.3d at 1078–80.

    The distinction matters because the source of the payment of the requested fees alters the considerations a court must weigh when determining how to calculate an award. In a common-fund scenario, for instance, class members are in effect paying their own counsel fees, so an increase in the fee award also results directly in a decrease in class members' recoveries. *Id.* (quoting 5 William B.

Rubenstein, *Newberg on Class Actions* § 15:25, p. 60 n.3 (5th ed. 2015)). When the attorney fee is being paid separately by the defendant, the court does not need to consider the direct detriment to class member recoveries posed by the fee, but instead should review the proposed fee for fairness and reasonableness with an eye towards whether it created a conflict of interest, or whether counsel may have negotiated for excessive fees in exchange for an unfair recovery for the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 964–66 (9th Cir. 2015).

This distinction is relevant here because unlike in *Johnson*, the requested Service Awards are not being paid from a common fund. *Johnson*, 2020 WL 5553312 at *7 ("Importantly for our purposes, *Greenough* and *Pettus* also establish limits on the types of awards that attorneys and litigants may recover *from the fund*.") (emphasis added). Although Financial Institution Plaintiffs describe the settlement as a "constructive common fund" for purposes of determining a reasonable attorneys' fee, Financial Institution Plaintiffs' motion specifically states that the requested Service Awards **are not included** in the valuation of the constructive common fund. (ECF No. 1158 at 11). For this reason, the requested Service Awards do not reduce the recovery available to Settlement Class Members, and the equitable concerns identified in *Johnson* and *Greenough* regarding payments to named plaintiffs from common funds are not applicable.

A closer examination of *Greenough* reveals that the Supreme Court's holding there rested upon unique concerns that only apply to payments sought from common funds, where additional payments to a particular individual party will *diminish* the funds available to other individuals entitled to share in the distribution.

In *Greenough*, a man named Vose owned bonds issued by a railroad company, and the interest and principal due on the bonds were secured by the land holdings of a trust fund. 105 U.S. at 528. Vose brought a suit against the trustees, alleging that they were selling large tracts of the land holdings at below-market prices and failing to make payments on the bonds. *Id.* at 528–29. After a few years of litigation during which he "bore the whole burden … and advanced most of the expenses," Vose succeeded in restoring much of the value of the trust, which inured to the benefit of himself and other bondholders. *Id.* at 529.

Vose then petitioned the court for allowances and reimbursements from the common funds he had restored. *Id.* A special master appointed by the court approved his requests, including, among other things, nearly $54,000 for direct costs of litigation and attorneys' fees, plus "$2,500 a year for ten years of personal services," interest, and $15,003.35 in private expenditures, which included "railroad fares and hotel bills." *Id.* at 530. The salary and personal expense

allowances totaled $40,003.35 before interest. The lower court approved most of the payments, and appeals were taken by the trustees of the fund. *Id.* at 531.

The Supreme Court upheld the payments to Vose for "his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, and in reclaiming and rescuing the trust fund and causing it to be subjected to the purposes of the trust." *Id.* at 537. But the Court reversed the awards to Vose for "private expenses" and "personal services," finding that while such allowances were sometimes made for trustees, they were not appropriate with respect to Vose:

> It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that perhaps only to a small amount, if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid.

*Id.* at 538.

The foregoing passage makes clear that the Supreme Court's ruling was based on an equitable balancing of Vose's interest in being repaid for the expenses he actually incurred to restore the common fund on the one hand, and protecting the assets of absent parties from Vose's apparent overreaching, on the other. The funds obtained by Vose belonged not only to himself, but also to others, yet he sought to use those same funds to repay his "private expenses," *id.*, and to pay himself a $2,500 salary per year for *ten years'* worth of work, *id.* at 530, despite

11

the fact that he had no formal position to act on behalf of the others as either a trustee or a lawyer.

The *Greenough* case is short on specifics, but the salary for personal services and private expense reimbursement Vose requested were apparently above and beyond the actual expenses he incurred *directly* as a result of his litigation, as the Supreme Court specifically noted. *Greenough*, 105 U.S. at 537 ("The reasons which apply to his expenditures *incurred in carrying on the suit*, and reclaiming the property subject to the trust, do not apply to his *personal services and private expenses*.") (emphasis added). This suggests that, unlike the service awards requested here, which are separate and apart from any funds being made available to Settlement Class Members, the allowances rejected by the Supreme Court in *Greenough* actually did not have a direct and clear connection to the litigation. By contrast, Financial Institution Plaintiffs are seeking Service Awards for their efforts directly related to the initiation, prosecution, and settlement of this litigation. (*See* ECF No. 1158-1 at ¶18).

In addition, the $40,000 sought by Vose for his personal services and private expenses was an exceptionally large amount compared to modern class action incentive awards, and demonstrates that the allowances requested in *Greenough* are not analogous to the awards routinely given to class representatives. That sum

is equivalent to more than $1 million in today's purchasing power, according to the Consumer Price Index inflation calculator maintained by the U.S. Bureau of Labor Statistics. *See* https://www.bls.gov/data/inflation_calculator.htm.[4] The $1,500 service awards requested for the 21 Settlement Class Representatives total just $31,500, which is well below what was requested by Vose in 1879, even *before* adjusting for inflation.

      The significant disparity between these amounts indicates that they are of an altogether different character. The Supreme Court refused to reward Vose with a windfall or a salary for acting as a self-appointed trustee, while still acknowledging that he was entitled to be compensated for his actual litigation-related expenses so that he would not end up in a worse position than the similarly-situated bondholders he benefitted through his work. *Greenough*, 105 U.S. at 532–33 ("where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts.").

---

[4] Although the calculator is only designed to measure changes in buying power dating back to 1913, Vose's award from the special master was issued in 1879, so the relative value of that money is likely even greater than $1 million in today's dollars.

The concerns motivating the Supreme Court's decision in *Greenough* do not apply here, as no Settlement Class Member is being required to compensate the Financial Institution Plaintiffs for personal services or private expenses unrelated to the litigation, the Service Awards are not being paid from a common fund, and the Service Awards are modest amounts compared to the class relief and are not equivalent to a "salary," or a windfall "bounty." The requested Service Awards also did not result from any impermissible agreements and they do not create any conflicts of interest. *See Berry v. Schulman*, 807 F.3d 600, 613–14 (4th Cir. 2015) (finding that district court did not abuse discretion in approving incentive awards of $5,000, because such awards did not create conflict of interest or result in impermissible preferential treatment for named plaintiffs). For these reasons, the Court should find that *Greenough* and *Johnson* do not prohibit the requested awards here.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement (ECF No. 1182), and motion for an award of attorneys' fees, expenses, and service awards to the Settlement Class Representatives. (ECF No. 1158).

Dated: October 12, 2020                    Respectfully submitted,

*/s/ Joseph P. Guglielmo*                    */s/ Gary F. Lynch (filer)*
Joseph P. Guglielmo                          Gary F. Lynch
**SCOTT+SCOTT**                              **CARLSON LYNCH, LLP**
**ATTORNEYS AT LAW LLP**                     1133 Penn Avenue, 5th Floor
230 Park Avenue, 17th Floor                  Pittsburgh, PA 15222
New York, NY 10169                           Tel. 412.322.9243
Tel. 212.223.6444                            glynch@carlsonlynch.com
jguglielmo@scott-scott.com

*Financial Institution Plaintiffs' Co-Lead Counsel*

Craig A. Gillen                              Ranse Partin
**GILLEN WITHERS & LAKE, LLC**               **CONLEY GRIGGS PARTIN LLP**
3490 Piedmont Road, N.E.                     4200 Northside Parkway
One Securities Centre, Suite 1050            Building One, Suite 300
Atlanta, GA 30305                            Atlanta, GA 30327
Tel. 404.842.9700                            Tel. 404.572.4600
cgillen@gwllawfirm.com                       ranse@conleygriggs.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

*Financial Institution Plaintiffs' Co-Liaison Counsel*

Arthur M. Murray                             Charles H. Van Horn
**MURRAY LAW FIRM**                          **BERMAN FINK VANHORN P.C.**
650 Poydras Street, Suite 2150               3475 Piedmont Road, Suite 1100
New Orleans, LA 70130                        Atlanta, GA 30305
Tel. 504.525.8100                            Tel. 404.261.7711
amurray@murray-lawfirm.com                   cvanhorn@bfvlaw.com

Stacey P. Slaughter                          Allen Carney

| | |
|---|---|
| **ROBINS KAPLAN LLP**<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402<br>Tel. 612.349.8500<br>sslaughter@robinskaplan.com | **CARNEY BATES & PULLIAM, PLLC**<br>519 W. 7th Street<br>Little Rock, AR 72201<br>Tel. 501.312.8500<br>acarney@cbplaw.com |
| Bryan L. Bleichner<br>**CHESTNUT CAMBRONNE PA**<br>17 Washington Avenue North<br>Suite 300<br>Minneapolis, MN 55401<br>Tel. 612.339.7300<br>bbleichner@chestnutcambronne.com | Karen Hanson Riebel<br>**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>100 Washington Ave. S., Suite 2200<br>Minneapolis, MN 55401<br>Tel. 501.812.5575<br>khriebel@locklaw.com |
| Brian C. Gudmundson<br>**ZIMMERMAN REED LLP**<br>1100 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>Tel. 612.341.0400<br>brian.gudmunson@zimmreed.com | Karen S. Halbert<br>**ROBERTS LAW FIRM, PA**<br>20 Rahling Circle<br>P.O. Box 241790<br>Little Rock, AR 72223<br>Tel. 501.821.5575<br>karenhalbert@robertslawfirm.us |

*Financial Institution Plaintiffs' Steering Committee*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This brief was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted this 12th day of October, 2020.

<i>/s/ Gary F. Lynch</i><br>
Gary F.  Lynch

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<i>/s/ Gary F. Lynch</i><br>
Gary F.  Lynch