1          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF GEORGIA
2              ATLANTA DIVISION

3

4   IN RE:  EQUIFAX, INC., CUSTOMER )     Case Number
    DATA SECURITY BREACH LITIGATION )
5                                    )     1:17-md-2800-TWT
                                     )
6                                    )
                                     )     FINANCIAL INSTITUTION
7                                    )     ACTIONS
    _____ )
8

9

10

11          Transcript of a video/teleconference of the

12          Final Settlement Approval hearing before

13     The Honorable Thomas W. Thrash, Jr., Chief Judge

14             October 22, 2020; 2:07 p.m.

15                  Atlanta, Georgia

16

17

18
    (Appearances on page 2)
19

20
        Proceedings recorded by mechanical stenography,
21  transcript produced by computer.

22  _____

23

24          Diane Peede, RMR, CRR, CRC
            Federal Official Court Reporter
            75 Ted Turner Drive, SW, Suite 2194
25             Atlanta, Georgia  30303-3309

```
 1   Appearances:

 2   Counsel for Plaintiffs: SCOTT+SCOTT, LLP
                            BY:   JOSEPH P. GUGLIELMO, ESQ.
 3                                MARGARET B. FERRON, ESQ.
                            230 Park Avenue, 17th Floor
 4                          New York, New York  10169

 5   - and -

 6                          CARLSON LYNCH, LLP
                            BY:   GARY F. LYNCH, ESQ.
 7                                JAMISEN ETZEL, ESQ.
                            1133 Penn Avenue, 5th Floor
 8                          Pittsburgh, Pennsylvania  15222

 9   - and -

10                          THE FINLEY FIRM, P.C.
                            BY:  MARYBETH V. GIBSON, ESQ.
11                          3535 Piedmont Road
                            Building 14, Suite 230
12                          Atlanta, Georgia  30305

13

14

15   Counsel for Defendant: KING & SPALDING
                            BY: S. STEWART HASKINS II, ESQ.
16                          40th Floor
                            1180 Peachtree Street, NE
17                          Atlanta, Georgia  30309

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2          THE COURTROOM DEPUTY:  Court is again in session,

3     the Honorable Thomas W. Thrash presiding.

4          THE COURT:  All right.  This is the case of In re:

5     Equifax, Inc., Customer Data Security Breach Litigation, Case

6     Number 17-md-2800.

7          First, let me ask counsel for the parties who

8     intend to participate in this hearing to identify yourselves

9     for the record and the parties you represent, beginning with

10    the Plaintiffs.

11         MS. FERRON:  My name is Maggie Ferron from

12    Scott+Scott, Your Honor, and I represent the Financial

13    Institution Plaintiffs.

14         THE COURT:  Good afternoon, Ms. Ferron.

15         MR. ETZEL:  Hello, Your Honor.  I'm Jamison Etzel.

16    I'm from Carlson Lynch, and I also represent the Financial

17    Institution Plaintiffs.

18         THE COURT:  Good afternoon, Mr. Etzel.

19         MR. GUGLIELMO:  Your Honor, Joseph Guglielmo with

20    Scott+Scott.  I will not be speaking today, but I'm here with

21    my colleague Gary Lynch as well as our liaison counsel,

22    MaryBeth Gibson, also on behalf of Financial Institution

23    Plaintiffs.

24         THE COURT:  Good afternoon, counsel.

25         MR. HASKINS:  Good afternoon, Your Honor.  Stewart

Haskins with King and Spalding, on behalf of the Defendants, Equifax.

THE COURT:  All right.  This is a hearing on the Plaintiffs' Motion For Final Approval Of The Class Action Settlement.

Who's going to be speaking for the Plaintiffs on this?  Is that you, Ms. Ferron?

MS. FERRON:  I will, Your Honor, yes.

THE COURT:  All right.  I'll be glad to hear from you.

MS. FERRON:  All right.  Just by way of beginning, Mr. Etzel will be presenting the Motion For Attorneys' Fees, Reimbursement Of Costs, And Service Awards.

I won't repeat what's in our papers.  However, I would like to highlight some key terms of the Settlement and demonstrate to the Court that the Settlement is fair, reasonable, adequate, and satisfies the six factors set forth by the Eleventh Circuit in Bennett as well as Rule 23's considerations.

To begin with, the terms of the Settlement are favorable to the Class.  The Settlement provides that each Class Member is entitled to file a claim form and seek up to $4.50 per alerted-on card and up to $5,000 in out-of-pocket expenses.

The total amount available to the Class is

$5.5 million.  This amount is exclusive of the cost of notice and administration fees, expenses, and any service awards. These amounts are to be paid by Equifax in addition to the $5.5 million being made available to the Class Members.

The documented out-of-pocket costs can be either reimbursement for fraudulent activity on alerted-on cards or noncard-related costs.  The noncard-related costs either result from the theft of personally identifiable information in the breach, such as opening fraudulent bank accounts, or general breach-related expenditures, such as fraud detection and customer authentication.

The claims process is currently ongoing.  These amounts in per-card reimbursement and the amount available for fraud losses is greater than that provided by the settlement of the Home Depot Data Breach Litigation, which was approved by this Court.  The Settlement is structured in the same manner.

As set forth in Section 4.8 of the Settlement Agreement, Equifax has agreed to commit $25 million over two years towards certain injunctive relief.  The relief is significant and it's tailored to prevent another data breach from harming Financial Institution Class Members.

The monetary and injunctive relief provided by the Settlement is designed to remedy the specific harm Plaintiffs allege in the Complaint.

1    As I mentioned, the Notice and Claims Program is

2  underway.  As is laid out in the Declaration of Analytics,

3  the Settlement Administrator, which is at ECF Number 1182-2,

4  notice was implemented consistent with the Court's Order

5  preliminarily approving the Settlement.

6    I'd like to update the Court on the Notice Program.

7    Following preliminary approval of the Settlement,

8  Analytics sent out 2,904 notice packets with claims forms via

9  U.S.P.S. on July 6th of this year.  Six notices were

10  returned, and Analytics remailed notices for which they could

11  find new addresses.

12    After the mailing process, 99 percent of the Class

13  Members received U.S.P.S. notice.

14    Notice was also published in the American Bar

15  Association's Banking Journal.  And these facts clearly show

16  that the Notice Program was robust and appropriate.

17    Analytics also established a settlement website and

18  an 800 number for Class Members who obtained information

19  about the Settlement, including deadlines to opt out, to

20  object, and to file a claim.

21    Class Members have been mailing their claims in and

22  submitting them online.  As of October 16th, 113 claims have

23  been filed.

24    The deadline for Class Members to file a claim for

25  compensation isn't until the 31st of December of this year.

1    However, the deadline to opt out or object was September 2nd.

2              Only one opt-out was received, which was attached

3    as Exhibit D to the Analytics Declaration, and no objections.

4              We believe that the lack of any objection or any

5    significant number of opt-outs evidences the approval of the

6    Settlement by the Class and supports that the Settlement is

7    fair, reasonable, adequate, and warrants approval.

8              That brings me to the considerations that the Court

9    must look to in evaluating the Settlement.

10             Under both Rule 23 and the Bennett factors, the

11   Settlement is fair, adequate, reasonable, and should be

12   approved.

13             As to Rule 23, the Class representatives and Class

14   counsel have adequately represented the Class.  The Class

15   representatives have produced discovery, participated in

16   settlement negotiations, and reviewed and approved

17   settlement.

18             They also have no interests adverse to any Class

19   Members.  They're raising the same claims that arise out of

20   the same data breach.

21             And as set forth in the Joint Declaration of Class

22   counsel submitted in support of an award of attorneys' fees

23   at ECF 1157-1, Class counsel is highly experienced and

24   engaged in multiple rounds of briefing, depositions, document

25   review, and issued dozens of third-parties subpoenas.

1          Next, the Proposed Settlement was negotiated at

2    arm's length.  It occurred in two stages:  Before and after

3    denial of the Motion For Leave To Amend The Complaint.

4          We were assisted by Phillips ADR, a well-regarded

5    mediator, in the first round of negotiations.

6          Further, as set forth in the Settlement Chart we

7    submitted at ECF 1182-3, the Settlement compares favorably to

8    other financial institution data breach settlements that have

9    been approved by this Court and throughout the U.S.

10         Particularly when considering the substantial

11   costs, risks, and delays of trial and appeal, the Settlement

12   warrants final approval.

13         Finally, for Rule 23, the Class Members are treated

14   equitably.  No Class Members are favored over others because

15   all card-issuing financial institutions can claim the same

16   relief.

17         And I would like to touch briefly on the Bennett

18   factors, to the extent that they raise any separate concerns.

19         As to the range of possible recovery, as we set

20   forth in our papers, the range of recovery tends to be from

21   $1.50 per alerted-on card to $3 per alerted-on card.  So the

22   $4.50 here is on the higher side of those settlements.

23         The $25 million towards injunctive relief is also

24   significant as it will help in preventing a future data

25   incident.

As for opposition to the Settlement, there was no -- there were no objections and just one opt-out.

The stage of the proceedings at which settlement was reached was after three years, multiple rounds of briefing, document review and depositions, and two stages of settlement negotiations.  And counsel is, therefore, highly informed as to the value of the case.

As for Class certification, the Class should be finally certified.

Numerosity is satisfied, as set forth in the Analytics Declaration.  There are about 2,900 Class Members, which is well above and beyond the required 40.

Commonality is also satisfied because the factual and legal questions all resolve around Equifax's conduct.  And this conduct doesn't differentiate between Class Members at all.  All card-issuing financial institutions will be raising the same issues.

Typicality is satisfied because the claims of the named Plaintiffs are the same as those of the Proposed Class.

The adequacy requirement is satisfied because the named Plaintiffs have no interest antagonistic to that of the Class.

Class counsel has been approved and secured a favorable settlement.

Questions common to the Class predominate over

individual questions.  The issue of Equifax's uniform conduct
towards all Class Members predominates over any other
inquiry.

There may be some diversity in damages issues, but
this generally doesn't defeat predominance.

And, finally, a Class action is a superior method
to litigate this case.  It's better to resolve the claims of
all United States financial institutions that issued
alerted-on payment cards at once as opposed to thousands of
identical claims about Equifax's conduct.

Therefore, we respectfully request that the Court
grant Plaintiffs' Motion For Final Approval, and finally
certify the Class.

We believe the Settlement is an excellent result to
very hard-fought litigation.

And if Your Honor would like, we can submit a Word
version of the Proposed Final Order And Judgment for your
review and consideration following the hearing.

And if Your Honor doesn't have any questions, I
will now hand off to Mr. Etzel, who will argue for attorneys'
fees, expenses, and service awards.

THE COURT:  All right.

Mr. Etzel.

MR. ETZEL:  Thank you, Your Honor.  And I am here
to address our request for approval of a $2 million

attorneys' fee award, $250,000 worth of expense reimbursements, and service awards of $1,500 to each of the 21 named Financial Institution Plaintiffs.  And I'll address those in order.

First, with our fee requests, we've proposed to the Court to award $2 million as a -- using the constructive common fund approach.  We're using a standard traditional approach to the constructive common fund here.  We've calculated a constructive common fund of $7.75 million. That's comprised of the $5.5 million in direct cash relief that's been made available to Class Members plus the $2 million fee request and the $250,000 expense request, which if they were not being paid separately by Equifax, would have been paid by the clients or the Class.

And as I briefly mentioned, all of these requests are -- these amounts are to be paid separately by Equifax per the Settlement Agreement.  So they are not coming out of a traditional common fund; they're coming out of Equifax's agreement to pay these separate and on top of the $5.5 million in direct Class relief.

From our constructive common fund, we've also excluded valuations of any injunctive relief.  We've excluded the cost of administration, which Equifax is also paying separately; and we're excluding the value of the service awards that we're requesting.  So, again, it's a very

1    standard approach to the constructive common fund.

2         When you look at the fee requests divided into the

3    total constructive common fund, it represents a percentage

4    request of 25.8 percent.  This is well in line with

5    traditional requests approved in Class actions.

6         To evaluate the reasonableness of the requests, the

7    Court will, of course, look at several factors that are laid

8    out in a couple of cases from the Eleventh Circuit.  Johnson

9    v. Georgia Highway Express, and Camden I Condominium

10   Association v. Dunkle.

11        I'll just hit a few of the major factors quickly.

12   The first is the time and labor involved, and along with this

13   I'll also discuss the lodestar cross-check.

14        Counsel invested a significant amount of time in

15   this case.  As of the end of June, we spent about 19,900

16   hours litigating this case.  And these time reports were

17   submitted to the Court on a quarterly basis.  So the Court

18   was apprised of what we were doing.

19        Multiplied by our firm's usual rates, that lodestar

20   value would be about $11.2 million.  So as the Court can see,

21   the actual fee request that we're seeking here represents a

22   significant discount compared to the amount of time that we

23   invested in the case, and that's a function of the fact that,

24   as the Court will recall, counsel proposed some more novel

25   theories when initially litigating this case.  It involved

some departures from the typical payment card breach scenario
that involves a consumer goods merchant.

So as the Court saw through our -- through
Equifax's Motion to Dismiss briefing and our request to amend
the Complaint after the Court's initial Order on that motion,
the scope of the claims that we initially brought were
narrowed by the Court's Order.  So the negative multiplier is
a reflection of that, a partial success on the part of Class
counsel.

But we did invest a significant amount of time in
investigating the case, filing complaints, proceeding in
front of the JPML, responding to the Motion to Dismiss,
drafting the Consolidated Complaints, which were rather
lengthy, and then we did a fair amount of discovery in this
case too.  There was document discovery, and we were in the
midst of depositions at the time we reached settlement.

So the overall time and labor that counsel devoted
to this case definitely, I think, supports the fee requests
here.

Just a couple of other factors to touch on:  the
novelty and difficulty of the factual and legal questions
involved.

As I already mentioned, this was a slightly
different case than the traditional payment card breaches
that our firms have litigated before, including in this court

1  and in the In re:  Home Depot case.

2       So as the Court may recall from the Motion to

3  Dismiss hearing, we got into some questions about the

4  application of traditional principles, like the scope of

5  Equifax's duty to Financial Institution Plaintiffs.  We were

6  essentially testing the limits of some of these theories.  So

7  there were some novel difficult questions involved.

8       The skill required and the experience, reputation

9  and ability of counsel.

10      Our two firms, Carlson Lynch, Scott+Scott, along

11  with the team of co-counsel that we had, have a lot of

12  experience in these type of cases.  We were involved in the

13  Target data breach, the Home Depot data breach, Wendy's,

14  Eddie Bauer, several other cases that, again, fit -- fit the

15  payment card data breach fact pattern, which this is a slight

16  variation on.

17      But we've also submitted our resumes detailing our

18  experience in other types of complex and class litigation,

19  and our firms have a pretty strong and lengthy reputation in

20  this type of work.

21      The type -- excuse me.  The customary fee amount,

22  the contingent nature of the fee, and preclusion of other

23  employment.

24      Again, the 25.8 percent that we're requesting

25  against the common fund is well within the normal range that

plaintiff attorneys who work on contingent fees normally

seek, which is traditionally between 20 and 40 percent,

depending on the type of case.  So we're well within that

range and closer to the low end of that range.

We did take the case on on a contingent nature.  We

bore the risk of any failure or lack of success on the

claims, and some of that is demonstrated again in the

fractional multiplier that we have here.

Time limitations imposed by the client of

circumstances.

We did our best here to keep the case moving.  And

as the Court is aware, this litigation proceeded in parallel

with the claims brought by consumers.  We did our best to

make sure we kept up with the schedule laid out by the Court,

which enabled some coordinated proceedings, such as the

Motion to Dismiss hearing, the initial leadership hearing,

which were both conducted in tandem with the other tracks,

and I think that, you know -- that helped save some

efficiencies on the part of the Court and perhaps the

Defendant as well.

Finally, the amount involved, the results obtained,

and awards in similar cases.

As my colleague already mentioned, the recovery

here on a per-card basis compares very favorably to the ones

recovered in Home Depot and Wendy's and some of the other

1    cases we've listed in our brief.  So although the scope of

2    the case was narrowed, we still received a pretty strong

3    recovery for the Class Members with respect to the claims

4    that were pending at the time we reached agreement.

5              Moving on, I'd like to quickly address our expense

6    reimbursement requests.

7              Class counsel and co-counsel incurred $278,000 in

8    expenses and change, and that was at the end of June.  Again,

9    our expenses were reported to the Court on a quarterly basis.

10             The bulk of the expenses were for items like

11   eDiscovery, travel for court hearings and depositions, and

12   attending the mediation and mediator fee.

13             We did our best to keep expenses low because,

14   again, due to the contingent nature of the case, we bore the

15   risk that we would not be able to get any reimbursement in

16   the event that the case was unsuccessful.

17             The overall amount of the expenses is reasonable in

18   light of the total value of the Settlement.  It's only about

19   five percent of the total when compared to the total cash

20   relief available to the Class Members.

21             And, again, Equifax has agreed to pay this amount

22   separately.  So it's not reducing any Class Member's

23   recovery.

24             Finally, I think the last request that I'd like to

25   address is our service award request.  We're requesting

1    $1,500 for each of the 21 named Financial Institution

2    Plaintiffs.

3              And as we mentioned in a reply brief that we filed,

4    I think it was a week or two ago, we did want to bring to the

5    Court's attention a recent panel decision from the Eleventh

6    Circuit that discussed service awards -- well, incentive

7    awards, as they referred to in that case.  The case name was

8    Johnson v. NPAS Solutions LLC.

9              In that case, a two-member panel found that the

10   $6,000 incentive award requested by the named plaintiff in

11   that case was akin to a salary or bounty and was prohibited

12   under some Supreme Court precedents, and we discussed these

13   pretty thoroughly in our reply brief.

14             We wanted to raise a couple of points of

15   distinction which we think allow the Court to award our

16   requested service awards here.

17             First of all, the Johnson case was a true common

18   fund case.  So the incentive award requested by that named

19   plaintiff was actually reducing the amount of the benefits

20   available to the Class Members.

21             This is not that type of case.  Again, Equifax has

22   agreed to pay the amount separately.  So they're not -- if

23   the Court awards them, they do not reduce any Class Member's

24   recovery at all.

25             Also, there are no objections in this case, whereas

1    there was a rather vigorous objection in the Johnson case.

2           If the Court is more interested in that issue, our

3    brief also goes into the Supreme Court case that the Johnson

4    panel relied on, and we identify some other points of

5    distinction there.

6           The individual in the original Supreme Court case,

7    which was Trustees v. Greenoff, that individual was seeking a

8    salary for ten years' worth of work and private hotel and

9    railroad expenses.  And in today's money, the amounts that he

10   was requesting were hundreds of thousands of dollars.

11          So the service awards here are really just to

12   recognize that these named Plaintiffs were actually -- would

13   be at a detriment if they weren't awarded because of the time

14   they put into the case.

15          They're not asking for a salary or a bonus or

16   anything like that.  They're asking for basically a token

17   recognition that they did services that benefited the Class,

18   and without those awards, they would essentially be at a

19   detriment because they wouldn't be getting anything other

20   than the same Class relief available to everyone else, which

21   is, you know, $4.50 a card plus the expenses or the -- yeah.

22          So unless the Court has any questions, I think

23   that's basically all I had to present.  We just ask for the

24   Court to award $2 million in attorneys' fees, $250,000 in

25   expense reimbursements, and $1,500 to each of the 21 named

1    Plaintiffs.

2            THE COURT:  Mr. Haskins.

3            MR. HASKINS:  Thank you, Your Honor.  Obviously,

4    Equifax supports the Settlement.  But unless you have any

5    specific questions, I don't have anything to add to the

6    presentations from Plaintiffs' counsel.

7            THE COURT:  All right.

8            Does anybody want to be heard in opposition to the

9    Motion For Final Approval Of The Class Action Settlement?

10           (No response.)

11           THE COURT:  Does anybody want to be heard in

12   opposition to the Plaintiffs' Motion For Approval Of The

13   Attorneys' Fees, Expenses, And Incentive Awards?

14           (No response.)

15           THE COURT:  All right.  I'm going to grant the

16   Financial Institution Plaintiffs' Motion For Final Approval

17   Of The Class Action Settlement.  I think under the standards

18   set by Rule 23 and the Bennett case, I think the Settlement

19   is fair, reasonable and adequate, and should be approved.

20           With respect to the Rule 23 factors, I believe the

21   Class was more than adequately represented.  The Proposed

22   Settlement was negotiated at arm's length under the oversight

23   of former Judge Layn Phillips.

24           I think the relief obtained was fair, reasonable

25   and adequate.  It provides up to $4.50 per alerted card and

up to $5,000 for fraud losses.  I think that's an excellent result that's comparable to or even more favorable than other data breach settlements.

I think the Settlement is fair and reasonable considering the risks, costs and delay of continued litigation.  The Plaintiffs' fortunes in this case, to put it mildly, went up and then went down and then tried to go up again and only made it a little way.

So I think particularly considering the risk of continued litigation, I think the Settlement is an excellent one.  I think the method of distributing relief is effective, and the terms relating to the attorneys' fees are reasonable, as I'll get into in greater detail.

Finally, under the Rule 23 factors, I think the Class Members are treated equitably relative to each other.

Regarding the Bennett factors, I think considering the likelihood of success at trial, the Settlement is an excellent one.

Considering the range of possible recoveries, again, I think the Settlement is fair, reasonable and adequate.

Given the point at which the Settlement was reached in the course of the litigation, in considering the complexity, the expense and duration of the litigation, I think that the Settlement is an excellent one.

1    I think the fact that there were no objections from

2  the Class Members raised is in favor of approving the

3  Settlement.

4    And, finally, I think that the Rule 23(a)

5  requirements are all met and the requirements for

6  Rule 23(b)(3) are also satisfied.

7    So for those reasons, I will approve the

8  Settlement.

9    And, Ms. Ferron, if you would submit a proposed

10  written order summarizing and perhaps elaborating on the

11  factors that you have analyzed in your presentation and get

12  Mr. Haskins' approval as to form, I'll be glad to sign it.

13    MS. FERRON:  Will do, Your Honor.

14    THE COURT:  All right.  I'm also going to grant the

15  Plaintiffs' Motion For Attorneys' Fees, Expenses And Service

16  Awards.

17    I think the requested fee of $2 million should be

18  approved because it's reasonable and supported by the

19  relevant factors.

20    As Mr. Etzel set forth, the requested fee is

21  approximately 25 percent of the constructive common fund that

22  is created in this case without taking into consideration the

23  value of any of the injunctive relief.

24    And I think the fee is appropriate, considering the

25  Johnson factors, including the time and labor involved, the

novelty and difficulty of the factual and legal questions

involved, the skill required, and the experience, reputation

and ability of counsel.  I think the fee is within the range

of the customary fees for such settlement, the time

limitations imposed by the circumstances of the case, and

awards in similar cases.

I think the requested fee is supported by the

lodestar cross-check, which shows that actually counsel put

in more time if compensated according to their standard

hourly rates than the fee that they are actually requesting,

in fact, substantial more time.

I think the requested expenses are reasonable and

were necessary to prosecute the litigation.

Finally, I think the service awards are reasonable

and appropriate to recognize that the named Plaintiffs did

incur significant costs in prosecuting the litigation.

And I think this case is distinguished from the

recent Eleventh Circuit Johnson case because the service

awards are not coming out of the settlement portion that is

being awarded to the Members of the Class.  It's been

negotiated separately and is to be paid by Equifax separate

and apart from the Settlement that goes to the Class Members.

So for all of those reasons, I'm going to approve

the request for fees, expenses, and the incentives awards.

And, Mr. Etzel, if you'll prepare a written order

1  that summarizes what I've said today, and you may elaborate

2  upon factors you mentioned in requesting approval of the

3  award, present it to Mr. Haskins for approval as to form, and

4  present it to me, I'll be glad to sign it.

5           MR. ETZEL:  I will do that, Your Honor.

6           THE COURT:  All right.  Counsel, it's been a long

7  way from the telephone call asking me if I would accept this

8  MDL case.  It's not over yet, but we've made some progress.

9           So I appreciate everybody's professionalism and

10  excellence in your representation of your respective clients.

11          And unless y'all have anything else, that will

12  conclude the hearing.

13          MS. GIBSON:  Thank you, Your Honor.

14          MR. HASKINS:  Thank you, Your Honor.

15          MR. GUGLIELMO:  Thank you, Your Honor.

16          THE COURT:  All right.  Thank you very much.

17          That concludes the hearing, and court's in recess

18  until further order.

19          (Proceedings concluded at 2:40 p.m.)

20                      - - - - - - - -

21                 Reporter's Certification

22  I certify that the foregoing is a correct transcript from the

23  record of proceedings in the above-entitled matter.

24                          s/Diane Peede, RMR, CRR, CRC
                            Official Court Reporter
25                          United States District Court
    Date:  October 23, 2020   Northern District of Georgia