# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE EQUIFAX, INC. CUSTOMER
DATA SECURITY BREACH
LITIGATION

MDL Docket No. 2800

No: 17-md-2800-TWT

CONSUMER CASES

**MEMORANDUM OF LAW IN SUPPORT OF EQUIFAX'S MOTION TO
<u>DISMISS THE OPT-OUT CONSUMER COMPLAINTS</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    PLAINTIFFS' ALLEGATIONS.............................................................3

     A.  "Commercial Acquiescence" Plaintiffs...................................3

     B.  Eustice Plaintiffs....................................................................5

     C.  Plaintiffs Joshpe and Khalaf..................................................7

     D.  Plaintiff Anna Lee ..................................................................7

III.   STANDARD OF REVIEW.....................................................................8

IV.  APPLICABLE LAW ..............................................................................8

V.    ARGUMENT.......................................................................................10

     A.  Most of the Opt-Out Plaintiffs' Claims Are Facially Insufficient Under Rule 8(a)......................................................................10

     B.  Contract and Quasi-Contract Claims. ..................................13

     C.  Negligence Claims ...............................................................18

     D.  Plaintiffs' FCRA Claims Fail Because They Have Not Alleged That Equifax "Furnished" a "Consumer Report." .............................29

     E.  Plaintiffs' State Statutory Claims Should Be Dismissed. ...................31

VI.  CONCLUSION ...................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advon Corp. v. Coopwood's Air Conditioning Inc.*,
   517 F. Supp. 3d 656 (S.D. Tex. 2021) ................................................................32

*Amstadt v. U.S. Brass Corp.*,
   919 S.W.2d 644 (Tex. 1996) ......................................................................31, 32

*Anderson v. Barrow Cty.*,
   256 Ga. App. 160, 568 S.E.2d 68 (2002) .........................................................23

*In re Arby's Rest. Grp. Inc. Litig.*,
   No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5,
   2018) .................................................................................................................26

*Arrington v. Wells Fargo*,
   842 F. App'x 307 (11th Cir. 2020) ...................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................8, 10

*Baker v. G4S Secure Sols. (USA) Inc.*,
   No. 4:18-CV-267, 2020 WL 5096520 (S.D. Ga. Aug. 28, 2020) .....................28

*Baylor Univ. v. Sonnichsen*,
   221 S.W.3d 632 (Tex. 2007) ............................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................31

*Bickley v. Dish Network, LLC*,
   751 F.3d 724 (6th Cir. 2014) ...........................................................................30

*Bilal v. Geo Care, LLC*,
   981 F.3d 903 (11th Cir. 2020) ...........................................................................8

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) ............................................................33, 34

*Bradley Center, Inc. v. Wessner*,
250 Ga. 199 (Ga. 1982) ......................................................................25, 26, 27

*Brooks v. Branch Banking & Tr. Co.*,
107 F. Supp. 3d 1290 (N.D. Ga. 2015) ..............................................................16

*Budinich v. Becton Dickinson & Co.*,
486 U.S. 196 (1988)....................................................................................9

*Collins v. Athens Orthopedic Clinic, P.A.*,
307 Ga. 555 (2019) ...............................................................................19, 22, 23

*Columbian Mut. Life Ins. Co. v. Carter*,
58 Ga. App. 150 (1938) ..............................................................................16

*Coon v. Med. Ctr., Inc.*,
300 Ga. 722, 797 S.E.2d 828 (2017) ..................................................................9

*Davis v. Equifax, Inc.*,
No. 2:20CV00094RMGMHC, 2020 WL 7000971 (D.S.C. Sept.
30, 2020) .............................................................................................15

*Department of Labor v. McConnell*,
305 Ga. 812 (2019) ...............................................................................26, 27, 28, 29

*Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro*,
38 F.3d 1571 (11th Cir. 1994) .......................................................................16

*Engram v. Engram*,
265 Ga. 804 (Ga. 1995) ..............................................................................17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17,
2020) ................................................................................................27

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019)..............................................................18

*Frank Briscoe Co. v. Georgia Sprinkler Co.*,
 713 F.2d 1500 (11th Cir. 1983) ............................................................9

*Frintzilas v. DirecTV, LLC*,
 731 F. App'x 71 (2d Cir. 2018) ...........................................................35

*Frye v. Barbour*,
 2017 WL 4226531 (M.D. Fla. Sept. 22, 2017)....................................12

*Gen. Elec. Co. v. Lowe's Home Centers, Inc*.,
 279 Ga. 77 (2005) ................................................................................20

*Glennon v. Dean Witter Reynolds, Inc.*,
 83 F.3d 132 (6th Cir. 1996) ...................................................................9

*Gordon v. JPMorgan Chase Bank, N.A.*,
 No. CIV.A. H-12-0528, 2012 WL 1552050 (S.D. Tex. Apr. 30,
 2012) .....................................................................................................17

*Grinold v. Farist*,
 284 Ga. App. 120, 643 S.E.2d 253 (2007) ...........................................24

*Hamilton v. Powell, Goldstein, Frazer & Murphy*,
 167 Ga. App. 411, 306 S.E.2d 340 (1983), *aff'd*, 252 Ga. 149, 311
 S.E.2d 818 (1984) ................................................................................20

*Hart v. Hart*,
 297 Ga. 709 (2015) ...............................................................................14

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
 61 Cal. 4th 988 (2015) .........................................................................18

*Harvey v. Merchan*,
 860 S.E.2d 561 (Ga. 2021) .....................................................................9

*Hayes v. Bank of New York Mellon*,
 No. 1:14-CV-338-TWT, 2014 WL 3887922 (Thrash, J.) (N.D. Ga.
 Aug. 6, 2014), *aff'd*, 592 F. App'x 891 (11th Cir. 2015) ...................12

*Hite v. Anderson*,
 284 Ga. App. 156 (2007) ......................................................................28

*Horne v. Equifax Inc.*,
　No. 1:17-cv-03713-TWT (N.D. Ga.) ...................................................3

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
　313 U.S. 487 (1941) .............................................................................8

*Levine v. World Fin. Network Nat. Bank*,
　437 F.3d 1118 (11th Cir. 2006) .........................................................29

*Marshall v. Hyundai Motor Am.*,
　334 F.R.D. 36 (S.D.N.Y. 2019) ..........................................................34

*McConnell v. Ga. Dep't. of Lab.*,
　No. 2014CV241506, 2015 WL 12551624 (Ga. Super. Oct. 12,
　2015) ...................................................................................................28

*Murray v. ILG Techs., LLC*,
　798 F. App'x 486 (11th Cir. 2020) ...............................................21, 27

*Patao v. Equifax, Inc.*,
　No. CV 19-00677 .................................................................................13

*Remax Mountain Co. v. Tabsum, Inc.*,
　634 S.E.2d 77 (Ga. Ct. App. 2006), *cert. denied* ................................20

*Ryckeley v. Callaway*,
　261 Ga. 828, 412 S.E.2d 826 (1992) ..................................................21

*Sherman Simon Enterprises, Inc. v. Lorac Serv. Corp.*,
　724 S.W.2d 13 (Tex. 1987) ..................................................................32

*Siopes v. Kaiser Found. Health Plan, Inc.*,
　130 Haw. 437 (2013) ...........................................................................14

*Sitterli v. Csachi*,
　344 Ga. App. 671 (2018) .....................................................................18

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
　No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7,
　2020) .............................................................................................36, 37

iv

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014)...................................................37

*Steiner v. Mobil Oil Corp.*,
  20 Cal. 3d 90 (1977) ..........................................................................14

*Swayne v. Equifax, Inc.*,
  No. 5:19-CV-196, 2019 WL 2494574 (M.D. Ga. June 13, 2019).....................14

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-2583-TWT, 2016 WL 2897520 (Thrash, J.) (N.D.
  Ga. May 18, 2016) ..............................................................................26

*Tiamson v. Equifax, Inc.*,
  No. 19-CV-08430-LHK, 2020 WL 3972582 (N.D. Cal. July 14,
  2020) ................................................................................................15

*TRO-X, L.P. v. Anadarko Petroleum Corp.*,
  548 S.W.3d 458 (Tex. 2018) ...............................................................16

*United States v. Perkins*,
  No. 1:10-CR-97-1-JEC-LTW, 2013 WL 3820716 (N.D. Ga. July
  23, 2013), *aff'd*, 787 F.3d 1329 (11th Cir. 2015) ................................11

*Wallace v. Health Quest Sys., Inc.*,
  No. 20..............................................................................................33

*Weiss v. Equifax, Inc.*,
  No. 20-CV-1460 (BMC), 2020 WL 3840981 (E.D.N.Y. July 8,
  2020) ................................................................................................31

*Wells v. Wells*,
  197 Ind. 236 (1926) ...........................................................................14

*Williams v. Equifax, Inc.*,
  No. 1:19-CV-622, 2019 WL 3556920 (S.D. Ohio Aug. 5, 2019) .....................15

*Young v. PNC Bank, N.A.*,
  No. 3:16cv298/RV/EMT, 2018 WL 1251920 (N.D. Fla. Mar. 12,
  2018) ................................................................................................11

**Statutes**

15 U.S.C. § 1681a .........................................................................................29

15 U.S.C. § 1681b ....................................................................................29, 30

15 U.S.C. §§ 1681n, o .................................................................................29

28 U.S.C. § 1332 ...........................................................................................8

Cal. Civ. Code § 1798 ................................................................................36

Cal. Civ. Code § 1798.82 .......................................................................5, 36

Cal. Civ. Code § 1798.82(a) ......................................................................36

Fair Credit Reporting Act ..........................................................................2

FCRA ...............................................................................................*passim*

FCRA Section 611 Part (A)(1) ..................................................................12

FCRA Sections 1681b and 1681e ..........................................................29, 30

FCRA Sections 1681n and 1681o ..............................................................29

Federal Trade Commission Act Section 5 .................................................28

N.Y. Gen. Bus. Law § 349(a) ..................................................................7, 33

OCGA § 10-1-393.8(a)(1) ..........................................................................26

OCGA § 10-1-910 ..................................................................................26, 28

OCGA § 51-12-8 .........................................................................................24

Tex. Bus. & Com. Code Ann. §§ 20.01, 05 ...............................................32

Tex. Bus. & Com. Code Ann. § 20.12 ...................................................31, 32

Texas Business and Commerce Code ch. 20 ...............................7, 12, 31, 32

UCC ...............................................................................................................11

Uniform Commercial Code.......................................................................11

Uniform Commercial Code.......................................................................11

**Other Authorities**

CCC. *See* Dkt. 540 .........................................................................9, 10

CCC, Dkt. No. 425-1, 8 .........................................................................5

Fed. R. Civ. P. 8(a)(2) ....................................................................11, 31

Rule 8 ...............................................................................10, 12, 13

Rule 8(a)........................................................................1, 10, 31

Rule 8's ...........................................................................11

Rule 12(b)(6)..................................................................8, 15, 32

# I.    INTRODUCTION

In this multi-district litigation concerning the data security incident that Equifax announced on September 7, 2017 ("Data Security Incident"), Equifax and a nationwide class of consumers reached a settlement resolving the claims of all class members that were or could have been asserted in this case ("Consumer Settlement").  But a small number of plaintiffs who filed complaints in this MDL submitted requests to be excluded from the Consumer Settlement ("Opt-Outs").  In accordance with the Court's Case Management Order for Opt-Out Cases,[1] Equifax now moves to dismiss the complaints in the twelve Opt-Out Cases remaining in the MDL ("Opt-Out Complaints") for the following reasons:

***First,*** the Complaints of Plaintiffs Adams, Cathy Eustice, David Eustice, Hubbard, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva are unintelligible and insufficient under Rule 8(a).  They merely include a formulaic recitation of the elements of their so-called "claims," while failing entirely to allege facts showing they are entitled to any relief.  In addition to failing to sufficiently plead any cognizable claims, these Plaintiffs' claims fail for the additional reasons explained below.

---

[1] Under the Case Management Order for Opt-Out Cases (Dkt. 1216, as amended by Dkt. 1219), the Opt-Out Plaintiffs have 45 days from the filing of this Motion to respond to Equifax's arguments pertaining to their claims.

**Second,** Plaintiffs Adams, Cathy Eustice, David Eustice, Hubbard, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva cannot recover on their would-be "contract" claims because they have not alleged mutual assent or facts to show that any contract was formed between them and Equifax.

**Third,** Plaintiff Patterson's unjust enrichment claim should be dismissed, like the unjust enrichment claim pled in the Consolidated Consumer Class Action Complaint ("CCC"), because Patterson failed to allege that she conferred a benefit on Equifax and, even setting that aside, she failed to allege facts to show any reasonable expectation that Equifax would pay her anything.

**Fourth,** the negligence claims of Plaintiffs Cathy Eustice, David Eustice, Hubbard, Joshpe, Khalaf, Lee, and Patterson fail because those Plaintiffs have not alleged that Equifax owed them a duty cognizable under Georgia law. Nor have Joshpe and Khalaf alleged proximate cause. Moreover, none of these Plaintiffs has alleged injuries cognizable in negligence.

**Fifth,** the Fair Credit Reporting Act ("FCRA") claims of Plaintiffs Cathy Eustice, David Eustice, Hubbard, Joshpe, Khalaf, Lee, and Patterson should be dismissed for the same reason this Court previously dismissed similar FCRA claims pled in the CCC: Plaintiffs failed to allege that Equifax "furnished" a "consumer report" pertaining to them.

2

***Sixth,*** the state statutory claims raised by Plaintiffs Cathy Eustice, David Eustice, Hubbard, Joshpe, Khalaf, Lee, and Patterson should be dismissed because they have failed to allege essential elements of their respective claims.

For these reasons and those that follow, the Court should dismiss all the Opt-Out Complaints with prejudice.

## II.    PLAINTIFFS' ALLEGATIONS[2]

### A.    "Commercial Acquiescence" Plaintiffs

Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva allege an unintelligible "claim" based on what they call Equifax's "commercial acquiescence" to a contract ("Commercial Acquiescence Plaintiffs"). *See e.g.*, Adams Compl. at 8.[3]   Each of the Commercial Acquiescence Plaintiffs alleges that after the Data Security Incident occurred, they sent Equifax certain mailings seeking "Request for Proof of [their] Claim," and stating that if Equifax did not respond, then its "commercial acquiescence" would constitute an admission of its liability for the Data Security Incident and an agreement to the terms in those

---

[2] Equifax and Opt-Out Plaintiff Ivy Madsen, a named plaintiff in the case of *Horne v. Equifax Inc.*, No. 1:17-cv-03713-TWT (N.D. Ga.), have agreed to a settlement. Accordingly, Equifax does not address Ms. Madsen's claims in this Motion.

[3] Citations to the Opt-Out Complaints refer to the page number of the .pdf document unless otherwise stated.

mailings. *Id*. Thus, because Equifax did not respond to their mailings, Plaintiffs allege that Equifax's "non-response and silence" establishes its agreement to the supposed contract with each Plaintiff. *See id.* (alleging that "the Defendants have quietly agreed to all of the facts as outlined in the Notice of Default"). Plaintiffs further contend Equifax is in "default," and they seek between $75,000 and $75 million in unspecified damages. *See*, *e.g.*, Silva Compl. at 4 (seeking $75,000); Adams Compl. at 5 (seeking $75 million); Flowers Compl. at 5 (seeking $75 million). Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, and Silva assert only this "commercial acquiescence" claim, while Plaintiff Patterson asserts additional claims (discussed below).

With respect to harm, each Plaintiff generally alleges that "the data breach has affected and injured [them] personally." *See* Adams Compl. at 4; Flowers Compl. at 4; Edward Hutchinson Compl. at 4; Ruby Hutchinson Compl. at 4; Silva Compl. at 4.

### 1.    Plaintiff Patterson

In addition to her "commercial acquiescence" claim, Plaintiff Patterson also asserts a negligence claim, alleging that Equifax failed to take adequate measures to prevent the Data Security Incident and to timely notify her after it occurred. Patterson Compl. at 7. Further, Patterson purports to assert an unjust enrichment

claim, alleging that Equifax received an unjust benefit as a result of the Data Security Incident.   While not clear, it appears that Patterson's unjust enrichment claim is based on a quote from a U.S. Senator who speculated that Equifax could profit from an increase in subscribers to paid credit monitoring services as a result of the Data Security Incident.[4]   *Id*. at 14-15.   Although the quote Patterson relies on suggests that the "standard rate" of paid credit monitoring services is $17 per month, she does not allege that she paid Equifax anything for credit monitoring services; nor does she allege any other benefit she conferred on Equifax.   *Id*. at 15.   Finally, Patterson asserts a claim under California's data breach notification statute, Cal. Civ. Code § 1798.82, based on Equifax's allegedly delayed notice of the Data Security Incident. *Id*. at 13-14.

Patterson also alleges that she is a "Secured Party/Creditor with Common Law Copyrights to all her sensitive PII Nunc Pro Tunc."   *Id*. at 10.   She further alleges that she suffers an "imminent risk of impending identity fraud," but has not alleged any actual instances of fraud she has suffered as a result of the Data Security Incident.   *Id*. at 8.

---

[4] As Equifax has previously explained in this MDL, after the Data Security Incident occurred, Equifax offered credit monitoring services free of charge to *all* U.S. Consumers—whether their PII had been stolen or not.   *See* Equifax's Br. Supp. Mot. To Dismiss the CCC, Dkt. No. 425-1, 8.

### B.    Eustice Plaintiffs

Three of the Opt-Out Complaints are identical lawsuits originally filed in Texas state court by Christopher Eustice (who is not an attorney), supposedly on behalf of himself and his "client[s]" Cathy Eustice, David Eustice, and Travis Hubbard ("Eustice Plaintiffs" and "Eustice Complaints").[5]  Eustice Compls. Ex. C, 8.  Each Plaintiff asserts "Personal Injury Tort Claims" (*id*. at 16), alleging that the cybersecurity "vulnerability [exploited in the Data Security Incident] was known for at least four months" and Equifax's "fail[ure] to patch [it]" was "preventable" (*id*. at 4).[6]  All three Plaintiffs allege that their data was "breached" and "compromised" in the Data Security Incident (*id*. at 4), but none alleges that anyone has attempted to fraudulently use their PII.  They seek to recover money damages, and damages for mental anguish on the basis that they are "fearful" of the possibility that their

---

[5]  Although Christopher Eustice purports to be acting as an authorized agent for Plaintiffs Cathy Eustice, David Eustice, and Hubbard (Eustice Compls., Ex. C, 6), he does not appear to assert claims on his own behalf.  In fact, none of the three Eustice Complaints alleges that Christopher Eustice's PII was breached in the Data Security Incident.  Eustice Compls., Ex. C, 7.  But to the extent that the Eustice Complaints can be construed as asserting any claims on behalf of Christopher Eustice, those claims are subject to dismissal for the same reasons as the claims of Plaintiffs Cathy Eustice, David Eustice, and Hubbard.

[6] Without any additional detail in the Complaints regarding the specific tort cause of action being asserted, Equifax interprets these as negligence claims.

identities will be stolen.  They also allege violations of an unidentified "oral" and "written contract," the FCRA, and unspecified "violations(s) of Texas Business and Commerce Code ch. 20."  *Id*.  Each Plaintiff seeks $9,975 in money damages.  *Id*.

### C.     Plaintiffs Joshpe and Khalaf

The Complaints of Brett Joshpe and Richard Khalaf were filed by the same law firm, Joshpe Mooney Paltzik LLP, and each asserts claims for negligence and violations of N.Y. Gen. Bus. Law § 349(a) and the FCRA.  Both Plaintiffs claim that they "suffered financial, emotional, and reputational damages" as a result of the Data Security Incident.  Joshpe Compl. ¶ 49; Khalaf Compl. ¶ 45.  Specifically, both Plaintiffs allege that following the breach, their credit has been damaged, they have received fraudulent or harassing phone calls or emails, and they have suffered instances of identity theft such as fraudulent charges on their financial accounts and fraudulent accounts being opened in their names.  *See* Joshpe Compl. ¶ 25; Khalaf Compl. ¶ 25.  Further, both Plaintiffs seek to recover for lost time they allegedly spent to mitigate a risk of identity theft.  *See* Joshpe Compl. ¶¶ 26, 16; Khalaf Compl. ¶¶ 26, 16.  They each seek money damages of no less than $1 million.  *See* Joshpe Compl. ¶ 35; Khalaf Compl. ¶ 35.

### D.     Plaintiff Anna Lee

Plaintiff Anna Lee asserts claims for negligence, violations of the FCRA, and violations of N.Y. Gen. Bus. Law § 349(a).  Lee Compl. ¶¶ 3, 5, 11, 12.  She claims that she has "spent numerous hours monitoring [her] accounts and addressing issues" as a result of the Data Security Incident, that she faces an "imminent" risk of identity theft as a result of the Incident, and that she faces a "significant" risk of incurring expenses to mitigate that risk.  *Id.* ¶¶ 4, 19.  Lee seeks money damages of $25,000.  *Id.*¶ 23.

### III.    <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.*  Further, while courts "liberally construe pro se pleadings," a court "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

## IV.   <u>APPLICABLE LAW</u>

As the forum state for this MDL, Georgia's conflict of law rules apply.[7]

Georgia courts generally adhere to the principle of "*lex loci delicti*" for tort claims,

which requires applying the "law of the place where the tort was committed," namely

"the place where the injury sustained was suffered."  *Harvey v. Merchan*, 860 S.E.2d

561, 567 (Ga. 2021).  But if the law of the place of injury is foreign law, then Georgia

courts will apply it only if it concerns "statutes and decisions construing those

statutes."  *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th

Cir. 1983).  "In the absence of a [foreign] statute . . . a Georgia court will apply the

_____

[7] Courts exercising diversity jurisdiction under 28 U.S.C. § 1332 apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941).    Here, Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva invoked the diversity jurisdiction of this Court because the parties are completely diverse and the Plaintiffs seek recovery of at least $75,000.  Adams Compl. at 1-2; Flowers Compl. at 3-4; E. Hutchinson Compl. at 3-4; R. Hutchinson Compl. at 3-4; Patterson Compl. at 4; Silva Compl. at 3-4.

The FCRA claims of Plaintiffs Cathy Eustice, David Eustice, Hubbard, Joshpe, Khalaf, and Lee, which give rise to federal question jurisdiction, must be decided under federal "rules of decision."  *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198 (1988).  However, this Court must apply Georgia's choice of law rules to the state law claims in those Plaintiffs' Complaints because "[i]n federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state."  *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996).

common law as expounded by the courts of Georgia." *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 729, 797 S.E.2d 828, 834 (2017).

Therefore, Georgia law governs all the Plaintiffs' common law tort claims.[8] But their non-Georgia state statutory claims are governed by the laws of the states that enacted those statutes—*i.e.*, Texas (Eustice Plaintiffs), New York (Plaintiffs Joshpe, Khalaf, and Lee), and California (Plaintiff Patterson). *Id*. This is the approach the Court previously took when ruling on Equifax's motion to dismiss the CCC. *See* Dkt. 540 at 8-9 ("[T]he Court will apply Georgia common law to the common law claims.").

## V.   ARGUMENT

### A.   Most of the Opt-Out Plaintiffs' Claims Are Facially Insufficient Under Rule 8(a).

As a threshold matter, the Complaints of the Eustice Plaintiffs and Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva fail under Rule 8(a) because they are entirely devoid of any "factual content" and include only a "formulaic recitation" of the supposed elements of their claims. *Ashcroft*, 556 U.S. at 678; *see Arrington v. Wells Fargo*, 842 F. App'x 307, 312 (11th Cir. 2020)

---

[8] This Court also applied Georgia law to the breach of contract and unjust enrichment claims asserted in the CCC. *See* Dkt. 540 at 46-54. Regardless, Plaintiffs' contractual and quasi-contractual claims here would fail even if the Court applied the laws of the Plaintiffs' states of residence, as shown below.

(affirming dismissal of pro se complaint under Rule 8 where "complaint contained allegations that were vague, disorganized, repetitive, and confusing, with no clear direct connection to each other or to the relevant claims").

For example, on the pro se complaint forms which instructed them to state the "facts showing that [they are] entitled to the . . . relief sought," Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, and Silva included boilerplate language (apparently derived from a common template) regarding their fabricated "commercial acquiescence" claims. *See* Adams Compl. at 4 ("Statement of Claim" portion of Complaint referring entirely to the "attached exhausted/ completed administrative remedy/ procedure" documents underlying "commercial acquiescence" claim); Flowers Compl. at 4 (same); E. Hutchinson Compl. at 4 (same); R. Hutchinson Compl. at 4 (same); Silva Compl. at 4. These references to pseudo-legal documents Plaintiffs claim they mailed to Equifax's corporate offices fail to satisfy Rule 8's requirement to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Next, Plaintiff Patterson's Complaint—while it contains additional attachments not included in the other Commercial Acquiescence Plaintiffs' Complaints—fails for similar reasons. The bulk of Patterson's Complaint focuses on the nonsensical "commercial acquiescence" claim and associated mailings she

purportedly sent to Equifax, while the remainder consists of recitations of the

elements of legal claims and quotations of publicly available sources, none of which

set forth a coherent claim for relief.[9]

Finally, the Eustice Complaints also fail to meet the basic requirements of

Rule 8.  When instructed on their petition forms to "[s]tate the cause of action in

plain and concise language, sufficient to . . . enable the defendant to prepare a

defense," Plaintiffs merely wrote (i) "Willful Injury-FCRA Section 623" (along with

a reference to a Third Circuit case); (ii) "Violation(s) of FCRA, including but not

limited to Part (A)(5)(B)(ii) and FCRA Section 611 Part (A)(1)"; (iii) "Breach of

Oral Contract for a Service not lasting more than a year and Breach of Written

---

[9] While Patterson's papers do not expressly claim that she identifies as a "sovereign citizen," they "bear all the hallmarks of the sovereign citizen theory," including "incoherent . . . cit[ations to] the Uniform Commercial Code." *Young v. PNC Bank, N.A.*, No. 3:16cv298/RV/EMT, 2018 WL 1251920, at *2 n.1 (N.D. Fla. Mar. 12, 2018); *see United States v. Perkins*, No. 1:10-CR-97-1-JEC-LTW, 2013 WL 3820716, at *1–2 (N.D. Ga. July 23, 2013), *aff'd*, 787 F.3d 1329 (11th Cir. 2015) (noting that sovereign citizen litigants "typically file[ ] lots of rambling, verbose motions" and often "rely heavily on the Uniform Commercial Code ("UCC"), admiralty laws, and other commercial statutes").  See Patterson Compl. at ¶ 7 (Patterson alleging she is a "Secured Party/Creditor with Common Law Copyrights to all her sensitive PII Nunc Pro Tunc").  The papers filed by other Commercial Acquiescence Plaintiffs also contain indicia of the sovereign citizen theory.  *See* Adams Compl. at 10 (asserting that Equifax is in "default . . . relative to UCC, State Statute, Federal Laws and otherwise."); Silva Compl., Attach. 1, 14 (same);  Flowers Compl. at 1 (copyright symbol next to name).

Contract"; and (iv) "[v]iolations of Texas Business and Commerce Code ch. 20, Personal Injury Tort Claims."  Eustice Compls. Ex. C, 4.  Federal courts routinely dismiss under Rule 8 pro se complaints which "ramble[] and cite[] multiple statutes" without "providing an explanation of Plaintiffs' legal theories."  *See*, *e.g.*, *Hayes v. Bank of New York Mellon*, No. 1:14-CV-338-TWT, 2014 WL 3887922, at *6, 8 (Thrash, J.) (N.D. Ga. Aug. 6, 2014), *aff'd*, 592 F. App'x 891 (11th Cir. 2015) (dismissing pro se complaint which failed to "explain the basis for [the plaintiffs'] claim" and instead was riddled with "statutory provisions, case law, and legal conclusions."); *Frye v. Barbour*, 2017 WL 4226531, at *3 (M.D. Fla. Sept. 22, 2017) (pro se plaintiff's "filings [were] confusing, incoherent, and unintelligible," thus "fail[ing] to comply with Federal Rule of Civil Procedure 8").

To the extent the Complaints of the Eustice Plaintiffs and Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva contain *any* factual details, they appear in extrinsic documents attached to or referenced in the Complaints, namely pseudo-legal mailings, news articles about the Data Security Incident, screenshots, and affidavits purporting to demonstrate the Plaintiffs' PII was compromised.  *See*, *e.g.*, D. Eustice Compl. Ex. C, 6-43; Silva Compl., Attach. 1, 1-*et seq*.  But these attachments to the Complaints cannot cure the pleading deficiencies because they are not factual allegations that articulate any theory under

13

which Plaintiffs are entitled to relief.  Even under the liberal pro se standard, these Complaints must be dismissed because their allegations, even when construed with the attached documents, do not state a claim to relief.  *See Patao v. Equifax, Inc.*, No. CV 19-00677 JMS-WRP, 2020 WL 5033561, at *6 (D. Haw. Aug. 25, 2020) (dismissing similar pro se complaint against Equifax related to the Data Security Incident because "neither the Complaint nor the attached documents identifies any cognizable legal theory or asserts any specific, let alone plausible, claim for relief.").

### B.   Contract and Quasi-Contract Claims.

Even if the Court finds that Plaintiffs' "commercial acquiescence" and other contract and quasi-contract claims meet the basic requirements of Rule 8 (and they do not), they should be dismissed for failure to allege essential elements of those claims under Georgia law.

### 1.   *The "Commercial Acquiescence" Claims Fail Because Plaintiffs Do Not Plausibly Allege That Equifax Assented to a Contract.*

The "commercial acquiescence" claims should be dismissed because Plaintiffs fail to allege facts showing that Equifax assented to the terms of any contract.  As explained above, Plaintiffs allege that Equifax's "commercial acquiescence" and "non-response and silence" with respect to documents they sent to Equifax constitute an admission of fault and somehow bound Equifax to the terms

14

of those documents, and that Equifax is now in default.  *See, e.g.*, Silva Compl. at 4.

These nonsensical claims have no legal merit and fail, among other reasons, because

the Plaintiffs have not alleged "mutual assent" as "necessary" to create an

"enforceable contract."  *Hart v. Hart*, 297 Ga. 709, 712, 777 (2015).[10]  When

considering an identical "commercial acquiescence" claim against Equifax related

to the Data Security Incident, Judge Treadwell of the Middle District of Georgia

dismissed it as "frivolous."  *See Swayne v. Equifax, Inc*., No. 5:19-CV-196, 2019

WL 2494574, at *2 (M.D. Ga. June 13, 2019) (holding plaintiff could not bring

"commercial acquiescence" claim *in forma pauperis*—"governed by the same

standard as a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)"—

because the allegations were "clearly baseless" and the "legal theories [were]

indisputably meritless.").

Nor is Judge Treadwell alone in his rejection of Plaintiffs' made-up

commercial acquiescence claim.  Courts nationwide have also rejected identical

claims, reasoning that "mailing a series of pre-litigation documents with certain

---

[10] *Accord Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 103 (1977) (mutual assent required to form contract under California law, applicable to Patterson); *Wells v. Wells*, 197 Ind. 236, 236 (1926) (same, Indiana law, applicable to Hutchinsons); *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 447, (2013) (same, Hawaiian law, applicable to Silva); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (same, Texas law, applicable to Adams).

response deadlines and consequences unilaterally imposed by Plaintiff does not demonstrate assent by [Equifax] or a meeting of the minds sufficient to establish a contract between the parties." *Davis v. Equifax, Inc*., No. 2:20CV00094RMGMHC, 2020 WL 7000971, at *2 (D.S.C. Sept. 30, 2020); *see Williams v. Equifax, Inc*., No. 1:19-CV-622, 2019 WL 3556920, at *2 (S.D. Ohio Aug. 5, 2019) (finding "no basis" for the "erroneous" claim that Equifax was "contractually b[ou]nd . . . to pay him $75 million dollars" because it "has failed to respond to prior 'Notices' and/or demands.").

Accordingly, the Court should dismiss with prejudice the "commercial acquiescence" claims of Plaintiffs Adams, Flowers, Edward Hutchinson, Ruby Hutchinson, Patterson, and Silva. *Tiamson v. Equifax, Inc.*, No. 19-CV-08430-LHK, 2020 WL 3972582, at *5 (N.D. Cal. July 14, 2020) (dismissing commercial acquiescence claims with prejudice, reasoning "amendment . . . would be futile because Plaintiffs' only theory of liability, based upon the formation of contract through silence, fails as a matter of law.").

### 2. *The Eustice Plaintiffs Failed To Allege Any Contract With Equifax.*

Similarly, the Eustice Plaintiffs' contract claims fail because they have not alleged the existence of any contract with Equifax. A breach of contract claim necessarily requires showing the existence of a "valid contract," among other

elements.  *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015); *accord TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 464 (Tex. 2018) (same, Texas law); *see Columbian Mut. Life Ins. Co. v. Carter*, 58 Ga. App. 150 (1938) ("In an action upon an alleged contract, the petition should *affirmatively disclose* . . . the existence of the contract.").

But the Eustice Complaints include no factual allegations showing a written or oral contract between the parties ever existed.  *See* Eustice Compls., Ex. C, 4.  Nor do these Plaintiffs allege that they purchased a product or service from Equifax prior to the Data Security Incident that could have created any contractual obligations. Simply put, the Eustice Plaintiffs "cannot assert a breach of contract claim against [Equifax] because" they have not alleged that a "contract exists between the [parties]."  *Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1579 (11th Cir. 1994); *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) (finding plaintiff's "allegations fail to state a claim for breach of contract because Plaintiff never alleged a contractual provision Defendant breached"); *accord Gordon v. JPMorgan Chase Bank, N.A.*, No. CIV.A. H-12-0528, 2012 WL 1552050, at *2 (S.D. Tex. Apr. 30, 2012) (dismissing breach of contract claim because "Plaintiff has not alleged the existence of a valid contract.").

3.     *Patterson's Unjust Enrichment Claim Should Be Dismissed.*

Plaintiff Patterson's unjust enrichment claim should be dismissed because it fails to allege that she "conferred a benefit" on Equifax. *Engram v. Engram*, 265 Ga. 804 (Ga. 1995); *accord Schertzer v. Bank of Am.*, N.A., 489 F. Supp. 3d 1061, 1076 (S.D. Cal. 2020) (Under California law, "[i]n order for a plaintiff to successfully plead an unjust enrichment claim, he/she must show that a benefit was conferred on the defendant."). Patterson's Complaint merely quotes a statement by a U.S. Senator speculating that "if just 1 million" people signed up for paid credit monitoring services with Equifax at the "standard rate of $17" a month, then Equifax would receive a financial benefit. Patterson Compl. ¶ 18. But Patterson has not alleged that this hypothetical scenario actually occurred—much less that *she* paid Equifax anything for credit monitoring services (or any other product or service). In fact, Patterson's Complaint acknowledges that the credit monitoring services which Equifax made available to impacted consumers after the Data Security Incident were provided "free" of charge. *Id*. Thus, Patterson's claim must be dismissed for the same reason that this Court dismissed the unjust enrichment claim in the CCC—*i.e.*, she has "failed to show that [she] conferred a thing of value" upon Equifax. *In re Equifax, Inc., Customer Data Sec. Breach Litig*., 362 F. Supp. 3d 1295, 1330 (N.D. Ga. 2019).

Even if Patterson could have plausibly alleged that she conferred a benefit on Equifax, her unjust enrichment claim would still fail because she has not alleged that she "expect[ed] that the defendant would be responsible for the cost." *Sitterli v. Csachi*, 344 Ga. App. 671, 673 (2018). Indeed, her Complaint is devoid of any averment that she expected Equifax to pay her for the purported value of anything that she provided. Nor has she articulated why Equifax would have an "equitable obligation" to pay her for the same. *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1001 (2015). Without plausibly alleging a justified expectation on her part, or an equitable obligation on Equifax's part, Patterson has not stated a claim for unjust enrichment. *Sitterli*, 344 Ga. App. at 673 (affirming judgment in favor of defendant where plaintiff presented no evidence of an "expectation that the party receiving the benefit [would be] responsible for the cost").

### C.    Negligence Claims

The Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson assert negligence claims against Equifax arising out of the Data Security Incident. Each Plaintiff's claim should be dismissed for reasons explained below.

### 1.    *Plaintiffs Have Not Alleged a Cognizable Injury for Their Negligence Claims.*

"[B]efore an action for a tort will lie, the plaintiff must show he sustained injury or damage." *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 558

(2019).  Here, the Eustice Plaintiffs and Plaintiffs Patterson, Joshpe, Khalaf, and Lee cannot recover for their claimed injuries under Georgia law.  As explained *infra* in Section V.C.1.a, they cannot recover in negligence for economic losses which do not arise from damage to their person or property.  Furthermore, the emotional distress damages claimed by the Eustice Plaintiffs and Plaintiffs Joshpe and Khalaf cannot be sustained absent allegations that they sustained a physical impact, as explained *infra* in Section V.C.1.b.  Finally, as explained *infra* in Section V.C.1.c, the alleged increased risk of identity theft claimed by the Eustice Plaintiffs and Plaintiffs Patterson and Lee are too speculative to be a cognizable injury under Georgia law because there are no allegations to "plausibl[y] infer that" they "*likely will* suffer identity theft."  *Id*. at 562 (emphasis added).   Because they have alleged no cognizable "injury or damage," the negligence claims of the Eustice Plaintiffs and Plaintiffs Patterson, Joshpe, Khalaf, and Lee must be dismissed.  *Id*. at 558.

### a.    Georgia's Economic Loss Doctrine Bars Recovery for Plaintiffs' Injuries.

*First*, the economic losses claimed by the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson—namely, actual or attempted fraud, increased risk of identity theft, identity theft mitigation efforts, and reputational damage—are

barred by Georgia's economic loss doctrine.[11]  *See* Defs.' Ex. 2, Chart Summarizing Tort Harms Alleged By Opt-Out Plaintiffs.  The Georgia Supreme Court has held that "[u]nder the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his *person* or damage to his *property*."  *Gen. Elec. Co. v. Lowe's Home Centers, Inc*., 279 Ga. 77, 78 (2005) (emphasis added).  And in *Remax Mountain Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 & n.6 (Ga. Ct. App. 2006), *cert. denied* Nov. 6, 2006, the Georgia Court of Appeals held that the economic loss rule bars tort claims for economic damages even where no contract exists.  Since the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson have alleged no injury to person or property, their purported economic harms cannot support their negligence claims.[12]

---

[11]  Plaintiffs Joshpe and Khalaf are independently foreclosed from recovering "reputational damages" because under Georgia law they "are recoverable only in actions alleging intentional or wanton misconduct, for example, libel and slander, malicious prosecution or malicious arrest."  *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 416, 306 S.E.2d 340, 344 (1983), *aff'd*, 252 Ga. 149, 311 S.E.2d 818 (1984).  Reputational damages are not recoverable in negligence.

[12] Although this Court's opinion on Equifax's motion to dismiss the CCC found that economic damages may be recovered in negligence where "an independent duty exists under the law" (Dkt. 540 at 28-29), these Plaintiffs have alleged no such duty, as explained below.  *See infra* in Section V.C.3.

### b.    Plaintiffs' Cannot Recover Emotional Distress Damages Under Georgia's Impact Rule.

*Second*, the Eustice Plaintiffs and Plaintiffs Joshpe and Khalaf cannot support their negligence claims by relying on allegations of "mental anguish" (Eustice Compls., Ex. C, 4) and "incalculable and harmful stress" (Joshpe Compl. ¶ 26; Khalaf Compl. ¶ 26) purportedly suffered as a result of the Equifax Data Security Incident.  "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a *physical injury*."  *Ryckeley v. Callaway*, 261 Ga. 828, 828, 412 S.E.2d 826, 826 (1992) (emphasis added).  Here, the Plaintiffs seeking to recover for emotional distress have not alleged (nor could they) that the Data Security Incident *physically injured them.*[13]

### c.    Plaintiffs' Allegations of Imminent Risk of Identity Theft Are Too Speculative.

The risk of future identity theft alleged by the Eustice Plaintiffs and Plaintiffs Patterson and Lee are too speculative to establish a cognizable injury, because their Complaints contain no factual allegations to "plausibl[y] infer that" they "*likely will*

---

[13] Even accepting that the Eustice Plaintiffs have had "sleepless nights" as a result of the Data Security Incident (Eustice Compls. at 4), "[d]amages for such physical manifestations of psychic or emotional trauma are generally unrecoverable in negligence actions under Georgia's impact rule."  *Murray v. ILG Techs., LLC*, 798 F. App'x 486, 493 (11th Cir. 2020).

suffer identity theft." *Id*. at 562 (emphasis added).  In *Collins*, the Georgia Supreme Court held that the plaintiffs plausibly alleged a cognizable tort injury based on an increased risk of identity theft.  *Id*.  The court reasoned that, "assuming the truth of [their] allegations" that "a thief stole" their data, **and** "offered at least some of the data for sale," it could reasonably accept "the chain of inferences that one must draw in order to conclude that the plaintiffs . . . likely will suffer identity theft."  *Id*.

But those allegations are lacking in these Complaints.  Although the Eustice Plaintiffs and Plaintiffs Patterson and Lee have alleged that their PII was stolen, this Court cannot credit their conclusory statement that they suffer a sufficiently increased risk of identity theft absent plausible allegations[14] that anyone has "offered . . . the data for sale" or that "fraudulent charges . . . were made."  *Collins*, 307 Ga. at 556.   Unlike the CCC, which alleged that the Plaintiffs there had *already* experienced identity theft (*see* Dkt. 540 at 7), Plaintiffs here have not done so.  Nor

---

[14] Equifax notes that Plaintiff Lee's Complaint includes a speculative allegation that "[t]here are reports that information from the Equifax Data Breach is already on sale on [a] black market, known as the Dark Web."  Lee Compl. ¶ 16.  But Plaintiff Lee fails to cite any such "reports" or to allege any plausible facts to show that any of the stolen information was actually posted for sale on the Dark Web (nor could she). Regardless, even if the Court credits this speculative allegation, it would not change the fact that Plaintiff Lee has not alleged that her or any else's information stolen in the Data Security Incident has been used to commit identity theft or fraud in the over four years since the breach.

have they amended their pleadings to allege *any* attempted fraudulent activity since the Data Security Incident occurred over four years ago.  This stands in stark contrast to the plaintiffs in *Collins* who alleged attempted identity theft "shortly after the data breach."  *Collins*, 307 Ga. at 556.

Simply put, Plaintiffs' allegations of an increased risk of future harm is too speculative to support recovery under Georgia tort law where they have not alleged (1) any actual fraud they suffered in the over four years since the Data Security Incident or (2) any other facts to plausibly suggest the stolen data has been sold or offered for sale to criminals.  And without any cognizable "injury or damage," the negligence claims of the Eustice Plaintiffs and Plaintiffs Lee and Patterson should be dismissed.  *Collins*, 307 Ga. at 558.

**2.   *Plaintiffs Joshpe and Khalaf Have Not Alleged Proximate Cause For Their Claimed Instances Of Actual Fraud.***

Plaintiffs Joshpe and Khalaf allege that they have *already* "suffered financial, emotional, and reputational harm" as a result of the Data Security Incident.  Joshpe Compl. ¶ 49; Khalaf Compl. ¶ 45.  But Joshpe and Khalaf's Complaints fail to plausibly allege "a legally attributable causal connection between [Equifax's] conduct and the[ir] alleged injury."  *Anderson v. Barrow Cty.*, 256 Ga. App. 160, 163, 568 S.E.2d 68, 71 (2002); *see also* OCGA § 51-12-8 (Georgia law prohibits

recovery of damages that are "only the . . . *possible* result of a tortious act.") (emphasis added).

To begin, Joshpe and Khalaf fail to allege any facts to plausibly tie their alleged injuries to the Data Security Incident. While both Plaintiffs allege that their credit scores fell after the breach (Joshpe Compl. ¶ 25(c); Khalaf Compl. ¶ 25(f)), they put forth no facts to show how the exposure of their data in the Equifax breach caused those alleged reductions in their credit scores. In essence, all Joshpe and Khalaf allege is that (1) their information was stolen in the Data Security Incident and (2) they suffered actual or attempted identity theft or fraud. But "[a] mere possibility of such causation is not enough." *Grinold v. Farist*, 284 Ga. App. 120, 121, 643 S.E.2d 253, 254 (2007). Thus, Plaintiffs' allegations do not establish proximate cause because they do not establish that "it is more likely than not that" the *Data Security Incident*—as opposed to any other breach or exposure of their information—caused their alleged harms. *Id.*

In fact, Plaintiffs' own allegations confirm that the fraud they claim to have suffered was *not* caused by the Equifax Data Security Incident. For example, Plaintiff Joshpe alleges that his PayPal and Gmail accounts were hacked (Joshpe Compl. ¶ 25(d), (f)), but he does not allege (nor could he) that his PayPal or Gmail account information was stolen in the Data Security Incident. Likewise, Plaintiff

Khalaf alleges that he was "the victim of attempted check fraud" on an Ally Bank account (Khalaf Compl. ¶ 25(c)), but he does not allege (nor could he) that his Ally Bank account information was stolen in the Data Security Incident. And while both allege they have suffered from harassing phone calls (Joshpe Compl. ¶ 25(a), (b); Khalaf Compl. 25(a), (b)), neither alleges that their phone number was stolen in the Data Security Incident. Thus, by Plaintiffs' own telling, any harms they may have suffered as a result of identity theft or other fraud were caused by some other exposure of their personal information, *not* the Equifax Data Security Incident.

Accordingly, Joshpe and Khalaf's negligence claims should be dismissed for failure to allege proximate cause.

### 3. *Plaintiffs Have Not Alleged a Cognizable Duty Under Georgia Law.*

Plaintiffs' negligence claims fail for the independent reason that Georgia law does not recognize a common law duty to safeguard personal information.

#### a. Pre-*McConnell* Framework.

In ruling on Equifax's motion to dismiss the CCC, this Court concluded that Equifax owed a duty under Georgia law to safeguard the Consumer Plaintiffs' personal information. *Id*. at 1325. The Court found support for its decision in *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 201 (Ga. 1982), where Georgia's Supreme Court noted that there is a "general duty one owes to all the world not to

subject them to an unreasonable risk of harm." This Court also found that its ruling was in line with prior data breach cases in federal court that had recognized a duty to safeguard personal information under Georgia law. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (Thrash, J.) (N.D. Ga. May 18, 2016) (finding defendants owed a duty to "safeguard information" under Georgia law); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *5 (N.D. Ga. Mar. 5, 2018) (same). However, the Court's ruling on the motion to dismiss the CCC was issued *before* the Georgia Supreme Court had weighed in on the question whether there is a common law duty in Georgia to safeguard personal information. Since this Court's prior ruling, the Georgia Supreme Court answered that question in the negative.

### b. Post-*McConnell* Framework.

After this Court's ruling on the motion to dismiss the CCC, the case of *Department of Labor v. McConnell*, 305 Ga. 812 (2019) ("*McConnell IV*") definitively held that there is no duty under Georgia law to safeguard personal information. Specifically, the Georgia Supreme Court in *McConnell IV* held that Georgia law imposes "no duty to protect [a plaintiff's] information against negligent disclosure," reasoning that that no such duty arises from *Bradley Center*; legislative findings which stated that data security is "increasingly at risk," OCGA § 10-1-910;

27

or a statute prohibiting the display of an individual's social security number, OCGA § 10-1-393.8(a)(1). *Id.* at 816. The Georgia Supreme Court also expressly disapproved of *Bradley Center* insofar as it had been interpreted to recognize "a general legal duty to all the world not to subject [others] to an unreasonable risk of harm." *Id.*

Following *McConnell IV*, the Eleventh Circuit has noted that the Georgia Supreme Court's decision "seriously calls into question the existence under Georgia law of an independent common-law duty to safeguard and protect . . . personal information." *Murray v. ILG Techs., LLC*, 798 F. App'x 486, 492 (11th Cir. 2020). Likewise, when certifying the Consumer Settlement Class in this MDL, this Court recognized that *McConnell IV* "strengthened" Equifax's arguments that no duty to safeguard personal information exists under Georgia law. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *7 (N.D. Ga. Mar. 17, 2020).

### c. *McConnell IV* Requires Dismissal of Plaintiffs' Negligence Claims.

In light of *McConnell IV*, the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson have failed to allege a cognizable duty under Georgia law to support their negligence claims. To be sure, *McConnell IV* noted it was not deciding "whether a duty might arise on . . . other facts from any other statutory or common

28

law source." *Id*. at 816 n.5.  But the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, and Patterson point to no alternate source of duty.[15]  Nor do any of these Plaintiffs allege any materially different facts to bring their negligence claims out from under *McConnell IV*'s control.  Nor can the alleged foreseeability of the Data Security Incident distinguish this case from *McConnell IV*.  Allegations of foreseeability were likewise present in *McConnell IV*, and accepted as true at the motion to dismiss stage when that case was decided.[16]  But despite credited allegations that the Department of Labor could have foreseen the data breach, the Georgia Supreme Court found that no duty arose under the common law, or OCGA § 10-1-910 which allegedly put the Department on notice that data privacy of individuals is "increasingly at risk." Simply put, the holding of *McConnell IV* controls here—Equifax owed Plaintiffs no common law duty to safeguard their information.  *See McConnell IV*, 305 Ga. at 816;

---

[15] Plaintiff Lee's Complaint includes references to alleged duties under the FCRA and Section 5 of the Federal Trade Commission Act.  *See* Lee Compl. ¶¶ 3, 6. However, as explained below the FCRA does not apply to situations where data is stolen from a consumer reporting agency, and Plaintiff Lee's general reference to Section 5 of the FTC Act fails to identify any relevant duty to safeguard her personal information.  And even if the Court were to find Plaintiff Lee adequately pled a duty under Section 5 of the FTC Act, her negligence claim would still fail because, as explained above, she has not alleged a cognizable injury as required to recover.  *Hite v. Anderson*, 284 Ga. App. 156, 158 (2007).

[16] First Am. Compl. ¶¶ 26-27, *McConnell v. Ga. Dep't. of Lab*., No. 2014CV241506, 2015 WL 12551624, at *1 (Ga. Super. Oct. 12, 2015) (alleging the breach was "reasonably foreseeable").

*Baker v. G4S Secure Sols. (USA) Inc.*, No. 4:18-CV-267, 2020 WL 5096520, at *5 (S.D. Ga. Aug. 28, 2020) (finding "under *McConnell*, [the defendant] did not have a duty to protect Plaintiffs' information against negligent disclosure.").

    **D.**    **Plaintiffs' FCRA Claims Fail Because They Have Not Alleged That Equifax "Furnished" a "Consumer Report."**

The claims of the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson under Sections 1681b and 1681e of the FCRA must be dismissed for the same reasons this Court dismissed similar claims in the CCC—*i.e.*, Plaintiffs have not alleged (nor could they) that Equifax "furnished" any "consumer report" pertaining to them.

The FCRA generally defines a "consumer report" as information "bearing on a consumer's credit worthiness."  15 U.S.C. § 1681a.  Section 1681b prohibits a "consumer reporting agency" from "furnish[ing] a consumer report" except under circumstances enumerated in that section.  15 U.S.C. § 1681b.  Furthermore, Section 1681e requires the agency to "maintain reasonable procedures" to ensure that it does not furnish a consumer report for an "impermissible purpose."  *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1121 (11th Cir. 2006) (citing 15 U.S.C. § 1681e(a)).[17]  And a plaintiff's claim under § 1681e fails where the plaintiff does not

---

[17] Sections 1681n and 1681o of the FCRA impose "civil liability" for violating the FCRA.  15 U.S.C. §§ 1681n, o.

plead a predicate violation of § 1681b.  Dkt. 540 at 13 (stating "since the Consumer Plaintiffs' section 1681b claim fails, their section 1681e claim must also necessarily fail").

As an initial matter, Plaintiffs here have not alleged that the Data Security Incident impacted "consumer reports" pertaining to them.  For example, the Patterson and Eustice Complaints simply reference unspecified "sensitive PII" or "data" without any factual allegations showing that such information could bear on their credit worthiness.  Patterson Compl. at 7; Eustice Compls., Ex. C, 7.  Moreover, the Joshpe and Khalaf Complaints refer to social security numbers, birthdates, addresses, driver's license numbers, and payment card numbers—so-called "header information" which this Court and others have held does not "constitute . . . a credit report."  Dkt. 540 at 12-13; *Bickley v. Dish Network, LLC*, 751 F.3d 724, 729 (6th Cir. 2014) (stating "the ambiguously termed Header Information are not consumer reports.").  Thus, because Plaintiffs have not alleged that any "consumer reports" pertaining to them were impacted in the Data Security Incident, their claims under Sections 1681b and 1681e of the FCRA—just like those of the MDL Consumer Plaintiffs—necessarily fail.

Independently, Plaintiffs' FCRA claims fail because they have not plausibly alleged that Equifax *furnished* anything about them.  Rather, criminal hackers *stole*

the personal information from Equifax.  *See*, *e.g.*, Patterson Compl. at 7; Joshpe Compl. ¶ 24; Khalaf Compl. ¶ 24.  As this Court previously held in dismissing the Consumer Plaintiffs' FCRA claims in the CCC, where "the data is stolen by a third party, and not furnished to the third party," there can be no recovery under the FCRA.  Dkt. 540 at 11.  Other courts have held the same.  *See, e.g., Weiss v. Equifax, Inc.*, No. 20-CV-1460 (BMC), 2020 WL 3840981, at *3 (E.D.N.Y. July 8, 2020) (collecting cases).

Accordingly, the FCRA claims asserted by the Eustice Plaintiffs and Plaintiffs Joshpe, Khalaf, Lee, and Patterson should be dismissed.

## E. Plaintiffs' State Statutory Claims Should Be Dismissed.

### 1. *The Eustice Plaintiffs' Texas Statutory Claims Fail For Numerous Reasons.*

The Eustice Plaintiffs' unspecified claims under the "Texas Business and Commerce Code ch. 20" fail for at least two reasons.  Eustice Compls., Ex. C, 4. First, the catch-all conclusory allegation that Equifax violated the entire chapter of the statute does not give Equifax "notice as to the claim being asserted."  Fed. R. Civ. P. 8(a)(2).  Indeed, insofar as Plaintiffs contend that Equifax engaged in deceptive trade practices prohibited under Section 20.12, "[a] consumer must . . . establish that [the] defendant violated a *specific provision* of the Act."  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (emphasis added).  The failure

to specify which section of the statute Equifax purportedly violated renders the Eustice Plaintiffs' statutory claims deficient under Rule 8(a) and Texas law.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating "blanket" claims cannot survive a motion under Rule 12(b)(6));  *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 669 (S.D. Tex. 2021) (dismissing Texas Deceptive Trade Practices Act Claim for failure to "specify[]   any particular provision").

Regardless, any claim of the Eustice Plaintiffs under Chapter 20 of Texas Business and Commerce Code would fail because the Eustice Plaintiffs have not plausibly alleged statutory standing or essential elements of the claim.  For instance, a claim under Section 20.05 (governing disclosures by consumer reporting agencies) would fail for the same reason that the FCRA Claim fails—*i.e.*, the Eustice Plaintiffs have not alleged that Equifax "furnish[ed] a consumer report" (information "relating to the[ir] creditworthiness") as the statute requires.  Tex. Bus. & Com. Code Ann. §§ 20.01, 05.  Similarly, they have not alleged standing to bring a claim under Section 20.12 for a "false, misleading, or deceptive act or practice."  To do so, a plaintiff must allege that he or she is a "consumer" who "s[ought] or acquire[d] . . . goods or services."  *Sherman Simon Enterprises, Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987); *see* Tex. Bus. & Com. Code Ann. § 20.12.  But the

33

Eustice Plaintiffs have not alleged that.  Although "privity of contract is not required for the plaintiff to be a consumer," he must still at least allege that he *sought* to acquire goods or services "in reliance" of the defendant's misrepresentations. *Amstadt*, 919 S.W.2d at 649.  But the Eustice Plaintiffs have not alleged that they sought to purchase any product or service from Equifax, much less that they relied on any misstatements by Equifax in doing so.  Thus, the Eustice Plaintiffs cannot recover under any potentially relevant sections of the Texas Business and Commercial Code.

### 2. *Plaintiffs Joshpe, Khalaf, and Lee's New York Statutory Claims Fail.*

To state a claim under N.Y. Gen. Bus. Law § 349(a), "[a] plaintiff . . . must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004).  Here, Plaintiffs Joshpe, Khalaf, and Lee have failed to allege a claim under Section 349 for several reasons.

First, none of these Plaintiffs has alleged any cognizable injury to support a claim under Section 349.  Plaintiff Lee alleges that she has "spent numerous hours monitoring [her] accounts and addressing issues arising from the Equifax Data Breach" (Lee Compl. ¶ 4), and Plaintiffs Joshpe and Khalaf allege that they have

had to expend "enormous amounts of time and energy" dealing with issues allegedly resulting from the Cyber Incident (Joshpe Compl. ¶ 26; Khalaf Compl. ¶ 26).  Those allegations "do not plausibly plead cognizable damages" for a Section 349 claim. *See Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *7 (S.D.N.Y. Mar. 23, 2021) (holding that allegations of time plaintiffs spent "monitoring their credit, responding to potential instances of fraud, or by freezing and unfreezing their credit" do not support a Section 349 claim).  Likewise, Plaintiff Lee's allegation that she "faces significant risk of harm or threat of harm in the future" cannot support a Section 349 claim.  *See id*. at *8 (finding allegations of future risk of harm "raise only the speculative possibility that plaintiffs might, at some point in the future, be victims of fraud and thereby incur monetary or other damages").  Finally, Plaintiffs Joshpe and Khalaf's vague allegation of having expended "financial resources" in response to the Data Security Incident (Joshpe Compl. ¶ 26; Khalaf Compl. ¶ 26) fails to identify any legally cognizable mitigation expenses to support their Section 349 claims.[18]

---

[18] To be clear, while Joshpe and Khalaf have also alleged identity theft following the Data Security Incident, those allegations of harm cannot support their Section 349 claim either because they do not allege any actual out-of-pocket monetary harm resulting from those instances of fraud.  Any regardless, both Plaintiffs fail to allege proximate cause (*see supra* in Section V.C.2), as required to state a Section 349 claim.  *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019).

Further, Plaintiff Lee's claim fails for the independent reason that she has not alleged factual allegations to satisfy the materiality element of a Section 349 claim—*i.e.*, that the allegedly unlawful conduct Equifax engaged in "would have affected" her "choice of, or conduct regarding, a product." *Bildstein v. MasterCard Int'l Inc*., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).   Lee claims that Equifax "misrepresent[ed] and fraudulently advertis[ed]" that it would "maintain adequate data privacy and security practices," but—even setting aside the conclusory nature of those allegations—she has not alleged any facts showing whether or how Equifax's alleged misrepresentations affected any choice she made regarding a product.  Lee Compl. ¶ 12.  In other words, she has not alleged that she would have done anything different had Equifax disclosed its allegedly inadequate data security practices.

Finally, Plaintiffs Joshpe and Khalaf's claims also fail because they have not even alleged any "deceptive" or "misleading" conduct by Equifax, which is the essence of a Section 349 claim.  *See Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) ("a claim under GBL § 349 . . . requires that a materially misleading statement be made in the first place").  Instead, they allege only that the Data Security Incident *itself* "was deceptive and violates [Section] 349(a)."  Joshpe Compl. ¶ 44; Khalaf Compl. ¶ 40.  That Equifax was the victim of a criminal

36

cyberattack, standing alone, does not constitute "deceptive" or "misleading" conduct, and thus cannot support Joshpe and Khalaf's Section 349 claim.[19]

Accordingly, Plaintiffs Joshpe, Khalaf, and Lee's Section 349 claims should be dismissed.

### 3.     *Patterson Has Not Alleged a Cognizable Injury Under California's Data Breach Notification Statute.*

Patterson's claim under Cal. Civ. Code § 1798.82 for Equifax's allegedly unreasonable delay in providing her notice of the Data Security Incident should be dismissed because she failed to allege any injury caused by Equifax's purportedly delayed notice.  Section 1798.82 provides that an entity that suffers a data breach "shall disclose" the breach to impacted individuals "in the most expedient time possible and without unreasonable delay."  Cal. Civ. Code § 1798.82(a).  Because the gravamen of a claim asserted under the statute is that the company unreasonably delayed affording notice of the breach, a plaintiff must allege "incremental harm suffered as a result of the alleged delay in notification, as opposed to harm from the Data Breach itself."  *In re Solara Med. Supplies, LLC Customer Data Sec. Breach*

---

[19] While the Court allowed the Section 349 claim (and many other state consumer protection statutory claims) in the CCC to survive Equifax's motion to dismiss, the Court did not specifically address the arguments made by Equifax here.

*Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *8 (S.D. Cal. May 7, 2020).

While the Cal. Civ. Code § 1798 claim asserted in the CCC survived Equifax's motion to dismiss, the Consumer Plaintiffs there had specifically alleged that "they could have frozen their credit earlier, or taken other precautions" had Equifax notified them of the breach sooner. Dkt. 540 at 76-77. Here, Patterson has made no such allegations. Her Complaint fails to identify any connection between its vague references to "identity theft and aggravated identity theft damages" and Equifax's alleged delay in providing notice of the Data Security Incident. *See* Patterson Compl. ¶ 16. In other words, Patterson has failed to allege that the delay prevented her from "taking steps to protect [her] personal information from identify theft." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* 2020 WL 2214152, at *8. Therefore, Patterson's claim must be dismissed because she has failed to allege that she was "injured due to the interval between the hacking incident and [Equifax's] notice of the incident." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014).

## VI.  CONCLUSION

For these reasons, the Opt-Out Complaints should be dismissed with prejudice.

Respectfully submitted this 10th day of December, 2021.

*/s/ S. Stewart Haskins II*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145
Robert D. Griest
Georgia Bar No. 294216
Elijah T. Staggers
Georgia Bar No. 903746
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com
rgriest@kslaw.com

*Counsel for Equifax Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Motion was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 10th day of December, 2021.

/s/ S. Stewart Haskins II
S. Stewart Haskins II

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10th, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.  I also certify I served the following pro se Plaintiffs by U.S. Mail, postage prepaid, and addressed as follows:

Douglas Emery Adams
519 Colgate Dr.
Allen, TX 75013

David Eustice
655 West Forest Dr.
Houston, TX 77079

Travis Hubbard
655 West Forest Dr.
Houston, TX 77079

Alice M. Flowers
P.O. Box 2322
Anderson, IN 46018

Ivy Madsen
6181 W. Horizon Peak Way
West Valley City, UT 84128

Edward D. Hutchinson, Sr.
1810 E. 49th St.
Anderson, IN 46013

Ruby Hutchinson
1810 E. 49th St.
Anderson, IN 46013

Anna Lee
53 S. 11th St., Apt. 5 E
Brooklyn, NY 11249

Audella Patterson
P.O. Box 3188
Crestline, CA 92325

Raymond Silva
1885 Railroad Ave.
Hilo, HI 96720

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II