**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 |
| | No: 17-md-2800-TWT |
| | CONSUMER CASES |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
EQUIFAX'S MOTION TO DISMISS
OPT-OUT PLAINTIFF BRETT JOSHPE'S
<u>AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ........................................................................ 1

STATEMENT OF FACTS .............................................................. 2

I.     The Equifax Data Breach ............................................... 2

II.    Allegations Related to Joshpe's Damages ................................ 4

ARGUMENT ............................................................................ 9

I.     Applicable Law: Georgia Law Does Not Govern
       Plaintiff's Tort Claims ................................................ 9

II.    Applicable Legal Standard on a Rule 12(b)(6) Motion.............. 11

III.   Plaintiff Adequately States a Cause of Action for
       Negligence Under New York Law .................................... 12

           a. *Plaintiff Has Alleged a Cognizable Injury for His
              Negligence Claims* ........................................ 12

           b. *Plaintiff Has Pleaded Proximate Cause for His
              Negligence Claims* ........................................ 15

           c. *Plaintiff Has Alleged a Cognizable Duty Under
              New York Law or Under Georgia Law* ...................... 16

   IV.  Plaintiff Has Properly Pleaded a Claim Under
        N.Y. GBL § 349(a) ..................................................... 19

CONCLUSION ......................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca–Cola Co.*,
   2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................ 22

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.,*
   300 A.D. 2d 608 (2002) .......................................................................... 20

*Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg., Inc.*,
   2013 WL 489141(N.D. Ga. Feb. 8, 2013) …………………………… 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... 11, 12

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015).............................................................. 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 11

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003)..................................................................... 20

*Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*,
   2008 WL 4277877 (D. Ariz. Sept. 18, 2008)......................................... 19

*Department of Labor v. McConnell*,
   828 S.E.2d 352 (Ga. 2019)..................................................................... 18

*Faber v. Metro Life Ins. Co.*,
   648 F.3d 98 (2d Cir. 2011)..................................................................... 12

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990) ...................................................................... 10, n.2

*Fero v. Excellus Health Plan, Inc.,*
    236 F. Supp. 3d 735 (W.D.N.Y. 2017).............................................. 21, 24

*Ferreira v. City of Binghamton*,
    975 F.3d 255 (2d Cir. 2020)................................................... 12

*Goldemberg v. Johnson & Johnson Consumer Cos.,*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014)....................................... 21

*GSW, Inc. v. Long County*,
    999 F.2d 1508 (11th Cir.1993)................................................ 11

*Hain v. Jamison*,
    28 N.Y.3d 524 (2016) ........................................................ 15

*Hanover Ins. Co. v. Hermosa Const. Grp., LLC,*
    57 F. Supp. 3d 1389 (N.D. Ga. 2014) .................................... 17

*Heinitz v. Seterus, Inc.*,
    2019 WL 4805326 (N.D.N.Y. Sept. 30, 2019) ........................ 20

*In re Air Crash Disaster Near Chicago, Ill.*, *on May 25, 1979*,
    644 F.2d 594 (7th Cir. 1981).................................................. 10

*In re Anthem Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................. 15, 21

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. Feb. 14, 2016) ............................... 21, 25

*In re Bridgestone / Firestone, Inc. Tires Products Liability Litigation*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) .................................... 10

*In re Conagra Peanut Butter Prods. Liab. Litig.*,
    251 F.R.D. 689 (N.D. Ga. 2008) ............................................. 9

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    2019 WL 937735 (N.D. Ga. Jan. 28, 2019) ............................ 17

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   371 F. Supp. 3d 1150 (N.D. Ga. Jan. 28, 2019) ...................................... 18

*In re Managed Care Litigation*,
   298 F. Supp. 2d 1259 (S.D. Fla.2003)....................................... 10, 12, n. 2

*In re Supervalu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) .................................................................. 23

*In re Takata Airbag Prod. Liab. Litig.*,
   193 F.Supp.3d 1324 (S.D. Fla. 2016)............................................... 10, n. 2

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
   97 F.3d 1050 (8th Cir. 1996) .................................................................. 10

*In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019).................................................................. 23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ................................................................................ 9

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012).............................................................................. 20

*Lopez v. First Union National Bank of Florida*,
   129 F.3d 1186 (11th Cir.1997) ............................................................... 12

*McMorris v. Carlos Lopez & Associates, LLC*,
   995 F.3d 295 (2d Cir. 2021) ................................................................... 23

*Murphy v. F.D.I.C.*,
   208 F.3d 959 (11th Cir. 2000) ........................................................... 9, n. 2

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ................................................................... 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995)........................................................................... 21, 24

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir 2005) .................................................... 20

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) ..................................... 21

*Rodriguez v. It's Just Lunch, Int'l*,
   300 F.R.D. 125 (S.D.N.Y. May 14, 2014)............................... 22

*Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*,
   689 F.2d 982 (11th Cir.1982)........................................... 10, n. 2

*Rudolph v. Hudson's Bay Co.*,
   2019 WL 2023713 (S.D.N.Y. May 5, 2019).................................... 13, 16

*Sackin v. TransPerfect Glob., Inc.*,
   278 F. Supp. 3d 739 (S.D.N.Y. 2017).............................. 13, 14

*Sims v. First Consumers Nat'l Bank*,
   758 N.Y.S. 2d 284 (1st Dep't 2003) ...................................... 21

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) ............................................................. 20

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (2000) ............................................................. 22

*United States v. Aretz*,
   280 S.E.2d 345 (Ga. 1981)...................................................... 18

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ......................................................... 10, n. 2

*Wallace v. Health Quest Sys., Inc.*,
   2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .................. 14, 22

*Walters v. Kimpton Hotel & Rest. Grp., LLC,*
    2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) ........................................ 15

*Wilner v. Allstate Ins. Co.,*
    71 A.D. 3d 155 (2d Dep't. 2010) ............................................................ 22

**Statutes**

N.Y. Gen. Bus. Law § 349 ......................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

Fed. R. Civ. P. 12(b)(6) ......................................................... 11, 12, 14

**INTRODUCTION**

This multi-district litigation ("MDL") concerns the data breach that Defendants Equifax Inc. and Equifax Information Services LLC (collectively "Equifax") announced on September 7, 2017. Plaintiff Brett Joshpe ("Plaintiff" or "Joshpe") brings this action to recover damages pursuant to New York General Business Law § 349(a) ("NY GBL § 349(a)") (Count Three of First Amended Complaint dated May 8, 2019)(the "Amended Complaint") and under common law negligence (Count Four of Amended Complaint)[1], for the ongoing financial, reputational, and emotional harm that he has suffered and will continue to suffer as a result of a catastrophic breach of Defendants' servers on July 29, 2017. Joshpe's original Complaint was filed in United States District Court of the Southern District of New York, and he thereafter filed the Amended Complaint. The Complaint and Amended Complaint were filed under Case No. 1:19-cv-03146-ER (S.D.N.Y.). The action was then transferred to the MDL proceeding before this Court under Case Number 1:19-cv-03595-TWT. On December 10, 2021, Equifax filed a motion to dismiss Joshpe's Amended Complaint. Joshpe respectfully submits this Memorandum of Law in Opposition to Equifax's motion to dismiss.

---

[1] Joshpe does not contest Equifax's arguments to dismiss Count One (Violation of 15 U.S.C. § 1681n) and Count Two (Violation of 15 U.S.C. § 1681o).

## STATEMENT OF FACTS

### I.     The Equifax Data Breach

On or about July 29, 2017, Equifax discovered that one or more of its servers, which contained sensitive personal identifiable information (PII) of hundreds of millions of Equifax's customers, and also included Joshpe's sensitive PII, including his name, full Social Security number, birth date, address, and, upon belief, his driver's license number, and possibly one or more of his credit cards, had been breach or "hacked" by a still unknown third party (the "Data Breach"). (Amended Complaint at ¶ 11). When Equifax discovered this breach, which affected not only Joshpe but millions of other individuals, Equifax began an internal investigation. (*Id.* at ¶ 12). To that end, on August 2, 2017, Equifax retained the cyber-security group at King & Spalding LLP and shortly thereafter contracted with a third-party cyber-security consulting firm, Mandiant, to conduct a comprehensive forensic review to determine the scope of the Data Breach, including identifying the specific data impacted. (*Id.*). Additionally, Equifax informed the FBI of the Data Breach. *Id.*

Thereafter, on September 7, 2017, major news outlets began reporting about the Data Breach in response to Equifax's issuance of a press release announcing that the Data Breach had affected 143 million U.S. consumers, including names,

Social Security numbers, birth dates, addresses, and driver's license numbers. (*Id.* at 13). The total number of affected individuals was later determined to be at least 145.5 million. (*Id.*).

Despite Equifax's efforts to conduct an internal investigation, it astonishingly failed to disclose the Data Breach to Joshpe and other members of the public during the over-month period between the retention of King & Spalding LLP and Mandiant, and the press release. (Amended Complaint at ¶ 14). Moreover, Richard Smith, the then-CEO of Equifax Inc., failed to inform the Equifax Board until three weeks after he learned of the Data Breach. Indeed, Smith did not inform the Board's lead independent director, Mark Feidler, until August 22, 2017, and did not inform the full Board until August 24, 2017. (*Id.* at ¶ 15).

As a result of this over one-month delay in informing the public of the Data Breach, Joshpe lost valuable time during which he could have taken measures to address the illegal dissemination and theft of his sensitive PII. (*Id.* at ¶ 16).

The unknown hackers initially exploited known vulnerabilities in Equifax's cyber-security measures in order to perpetrate the theft of Joshpe's PII. (Amended Complaint at ¶¶ 17-18). Although Equifax took various remedial steps to prevent further attacks after the fact, it was too late – the damage to Joshpe and other consumers was already done. (*Id.* at ¶ 19). Equifax willfully and/or negligently

failed to address the known vulnerability in their software that made the attack possible in the first place, failed to detect the attack for 76 days, and then deceptively failed and/or refused to inform Joshpe and other members of the public for over one month after the Data Breach was discovered. (*Id.*). To date, Equifax has failed to offer any adequate remedy for the harm caused to Joshpe by the Data Breach. (*Id.* at ¶ 20).

## II.    Allegations Related to Joshpe's Damages

Plaintiff Joshpe is a well-respected attorney practicing in Manhattan, and is the founder of the law firm Joshpe Mooney Paltzik LLP. (*Id.* at 21). He has historically maintained and possessed outstanding credit rating s and has had no difficulty obtaining credit cards and loans from mainstream financial institutions. (*Id.*). Additionally, he has never been arrested, convicted of a crime, or otherwise engaged in behavior that would reflect adversely on his character. (*Id.*).

At all relevant times, Equifax, in its capacity as a Credit Reporting Agency ("CRAs"), maintained and possessed PII about Joshpe, including his name, date of birth, Social Security number, driver's license number, and credit card information. (*Id.* at 22).

Following the Data Breach, Joshpe learned that his PII had been stolen by the cyber-attackers who perpetrated the Data Breach from the website

4

www.equifaxsecurity2017.com, and a related call center, which were established by Equifax so that affected consumers could learn whether or not their PII had been among the breached data. (*Id.* at ¶¶ 23-24).

Moreover, events since the Data Breach have only confirmed that Joshpe is a real victim of Defendants' willful and negligent failures. (*Id.* at ¶ 25). Indeed, as a result of Defendants' willful and negligent acts and omissions, Joshpe has been subjected to the following serious harms, which continue up to the present time: (a) He has routinely received harassing phone calls from various phone numbers threatening that the Internal Revenue Service ("IRS") or other government agencies will arrest him or will subject him to prosecution or investigation; (b) He has routinely received other harassing and fraudulent phone calls; (c) His credit rating has been compromised and reduced, thereby adversely affecting his ability now and in the future to obtain loans, credit cards and access to housing; (d) His PayPal account has been attacked and compromised on numerous occasions, leading to various unauthorized transactions, which have continued even after he has changed his password and sought assistance from PayPal representatives; (e) Fraudulent bank and credit card accounts have been opened in Joshpe's name at various financial institutions, including American Express, Wells Fargo and Synchrony Bank; (f) Joshpe's personal Gmail account has been repeatedly hacked,

resulting in the transmission of bizarre and embarrassing messages emanating in his name to business and personal contacts, thereby causing significant known and unknown reputational and emotional harm; (g) Joshpe attempted to obtain a credit card from Chase Bank and was denied in December of 2018. (*Id.*).

In order to attempt to address these harms caused by the data breach, Joshpe has been forced to expend significant emotional and financial resources, as well as enormous amounts of time and energy. (*Id.* at ¶ 26). He has endured incalculable and harmful stress that has had a deleterious impact on his professional and personal lives. (*Id*). To date, none of Joshpe's efforts have proven successful in mitigating or ending the ongoing identity theft and security breaches relating to his PII. (*Id.*). Instead, Joshpe will continue to suffer financial, emotional, and reputational harm well into the future, with no discernible endpoint. (*Id.*).

Indeed, in a totally Kafkaesque scenario of Defendants' own creation, Joshpe attempted to lift the credit freeze that he put in place on October 24, 2017 after he learned of the Data Breach and various malicious attempts by third parties to gain further access to his accounts and personal information. (*Id.* at ¶ 27). However, when he called Equifax to have the credit freeze removed, their agents asked him questions that: (a) no reasonable person could possibly know the answer to, such as the name of the entity that ultimately held any car loans he has ever had

and the monthly payments for car loans that have not been outstanding in years, or (b) the answers to which were incorrect because, upon information and belief, their accuracy was compromised by the same Equifax breach. (*Id.*). Additionally, when Joshpe attempted to register for an Equifax online account, he received an error message and was unable to log-in. (*Id.*). When Joshpe attempted to reset his password in the event he already had an active account, he never received an email that would enable him to do so. (*Id.*).

Joshpe attempted to have the credit freeze lifted through Equifax's automated phone system on April 2, 2019. (*Id.* at ¶ 28). For several days, third parties were still unable to access his credit file. (*Id.*). On April 4, 2019, Joshpe called Defendants' automated system, which said the credit freeze had been temporarily lifted. (*Id.*). Nonetheless, third parties were still unable to obtain any credit information on him, and a credit report provided to him confirmed that "Equifax Credit File Frozen." (*Id.*). Joshpe attempted multiple calls and emails to Equifax's representatives, including emailing Equifax, Inc. CEO Mark Begor, in which he further notified Equifax of the damages that he was incurring (and continues to incur). (*Id.* at ¶ 29). It was not until approximately 48 hours after Joshpe had attempted to lift the credit freeze that a representative of Equifax called him and attempted to assist. (*Id.*). Although the agent who contacted Joshpe also

reiterated that the credit freeze had been lifted, third parties informed Joshpe that they still could not access his credit file. (*Id.*).

Finally, Joshpe decided to go to creditkarma.com to access his own credit score. (*Id.* at ¶ 30). When he did, he was shocked to see that his credit score had been badly, and perhaps irreparably, damaged as a result of the Equifax breach. (*Id.*). Having previously possessed pristine credit, Joshpe's Transunion credit score was 621 at the time the Amended Complaint was filed, which is classified as "Needs Work." (*Id.*). His Equifax score was 613 at the time of the Amended Complaint, also classified as "Needs Work." (*Id.*). Among the factors listed on these reports are efforts by third parties to fraudulently obtain credit in Joshpe's name as a direct result of the Equifax breach. (*Id.*).

The personal and financial damages that Joshpe has suffered, and will continue to suffer in the future, as a direct result of Equifax's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect customers' PII and prevent the Data Breach from occurring, and Equifax's deceptive practices and conduct after the Data Breach occurred, are enormous. (*Id.* at ¶ 31). They include, *inter alia*, the potential inability to obtain housing that is critical to his livelihood, a potential inability to obtain affordable student loans, which would extend damages into the tens of millions of dollars, an inability to

obtain credit in the future for credit cards, car loans, a mortgage, a home equity line, and other forms of credit that people depend on in the modern economy. (*Id.*).

## ARGUMENT

### I.    Applicable Law: Georgia Law Does Not Govern Plaintiff's Tort Claims

Defendants argue that Georgia conflict of law rules should apply to the common law tort claims asserted in this action since Georgia is the "forum state for this MDL." Equifax's Brief ("Eq. Br.") at 8. In a footnote, Equifax relies on *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) to argue the general principle that "[c]ourts exercising diversity jurisdiction under 28 U.S.C. §1332 apply the choice of law rules of the forum state." (Eq. Br. at 8, n.7). Yet from this basic principle, Defendants impermissibly extrapolate that this Court should ignore the particular transferor court's choice of law rules and apply Georgia's choice of law rules. Notably, *Klaxon Co.* did not concern an MDL scenario as is the litigation in the case at bar.

In multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied. *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N. D. Ga. 2008); *see also Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000) ("Our [federalist] system contemplates differences between different states' laws; thus a multidistrict judge

9

asked to apply divergent state positions on a point of law would face a coherent, if sometimes difficult, task."); *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 991 (11th Cir.1982) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). As the Supreme Court stated in *Van Dusen*, "[a] change of venue . . . generally should be, with respect to state law, but a change of courtrooms." 376 U.S. at 639.[2] Therefore, all states in which the transferor court of an individual action sits are considered forum states. *In re Bridgestone / Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001) (citing *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 644 F.2d 594, 610 (7th Cir. 1981)); *see also In re Managed Care Litig.*, 298 F. Supp. at 1296–97 ("In cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue."); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not

---

[2] Although *Van Dusen* concerned change of venue under § 1404(a), the reasoning in that decision, as well as the related decision of *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990), has been applied consistently in MDL decisions. *See generally Roofing & Sheet Metal Services, Inc.,* 689 F.2d at 991; *In re Takata Airbag Prod. Liab. Litig.*, 193 F.Supp.3d 1324, 1332 (S.D. Fla. 2016); *Murphy*, 208 F.3d at 965*; In re Managed Care Litig.,* 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003).

been transferred for consolidation."). Therefore, the applicable law for determining Plaintiffs' claims in this MDL proceeding, including Plaintiff's claims for negligence, must be the laws of the State of New York, where Plaintiff initially filed his Amended Complaint.

## II.    Applicable Legal Standard on a Rule 12(b)(6) Motion

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that [the] defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57).

When considering a motion to dismiss, all facts set forth in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993). A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir.1997) (internal quotations and citation omitted). That is, in deciding a Rule 12(b)(6) motion, a court should "draw all reasonable inferences in Plaintiff[s'] favor, 'assume all well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.' " *Faber v. Metro Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### III.  Plaintiff Adequately States a Cause of Action for Negligence Under New York Law

Plaintiff asserts a claim of negligence against Equifax. To plead a viable negligence claim under New York law, a plaintiff must plausibly allege that "[i] the defendant owed the plaintiff a cognizable duty of care; [ii] the defendant breached that duty; and [iii] the plaintiff suffered damage as a proximate result." *Ferreira v. City of Binghamton*, 975 F.3d 255, 266 (2d Cir. 2020).

#### a.  *Plaintiff Has Alleged a Cognizable Injury for His Negligence Claims*

Firstly, Equifax claims that Joshpe cannot recover for his injuries in negligence since he has not alleged a cognizable "injury or damage" for his negligence claims. (Eq. Br. at 19). Equifax claims that Joshpe "cannot recover in negligence for economic losses which do not arise from damage to [his] person or

12

property." *Id.* Furthermore, Equifax argues that "the emotional distress damages claimed by … Joshpe … cannot be sustained absent allegations that [he] sustained a physical impact." *Id.*

These arguments are misplaced. The Amended Complaint is filled with allegations of injuries to Joshpe's person and property resulting from Equifax's negligence, discussed at length *supra.* (*See* Amended Complaint at ¶ 25). It goes without saying that Joshpe has an undeniable interest in ensuring that his PII is secure, remains secure, and is not subject to further misappropriation and theft as a result of the Data Breach. His extensive damages are thus more than merely speculative.

As concerns Equifax's arguments that the economic loss doctrine bars Plaintiff's recovery, in New York, which is the appropriate governing law for deciding this issue (*see* Section I *supra*), the economic loss doctrine does not bar Plaintiff's negligence claim, especially as such arises out of a data breach incident. *See Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, *9 (S.D.N.Y. May 5, 2019) (declining to apply economic loss rule in data breach case); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) (same).

The decision in *Rudolph* is illustrative. In *Rudolph*, a case involving a debit-card data breach that exposed the names and account numbers of customer credit

13

and debit card holders, the court rejected the defendants' argument that the plaintiff
failed to demonstrate actual damages to support her negligence claim. The court
there found that the plaintiff experienced loss based on allegations of "imminent
and impending injury arising from the increased risk of future fraud and identity
theft stemming from the data breach; the time and money lost in obtaining a new
debit card and dealing with the data breach; the purchase of items that she would
not have bought had she known defendants lacked adequate data security-
practices; and the diminution in the value of her Customer Data." *Id.* at *1 (internal
quotations omitted). The court noted that "the expense she incurred when she
drove to a Bank of America branch to obtain a new debit card, as well as time
expended to retrieve the card and update account records" constituted actual
damages. *Id.* at *9.

Accepted as true, as must be done in reviewing a 12(b)(6) motion, these
allegations are sufficient to survive Defendants' motion to dismiss. *See Sackin*, 278
F. Supp. 3d at 749 ("[T]he Complaint adequately alleges that Plaintiffs face an
imminent threat of identity theft and have purchased preventive services to
mitigate the threat. These mitigation expenses satisfy the injury requirements of
negligence[.]"); *see also Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at
*6 (S.D.N.Y. Mar. 23, 2021) (finding plausible allegations of monetary damages

where plaintiffs, *inter alia*, "allege[d] they purchased credit monitoring and identity protection services to reduce the risk of future identity theft from the Data Breach"); *Walters v. Kimpton Hotel & Rest. Grp., LLC*, 2017 WL 1398660 at *2 (N.D. Cal. Apr. 13, 2017) (finding that plaintiff "sufficiently alleged actual damages flowing from the alleged breach, including having to secure and maintain credit monitoring services (which presumably come at a cost) and other out-of-pocket expenses and the value of . . . time reasonably incurred to remedy or mitigate the breach." (internal quotation marks omitted) (quoting *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783 at *16 (N.D. Cal. May 27, 2016)).

### b. *Plaintiff Has Pleaded Proximate Cause for His Negligence Claims*

Equifax argues that Plaintiff has not established proximate cause for his negligence claim against Equifax. (Eq. Br. at 23). A defendant's negligence qualifies as a proximate cause where it is "a substantial cause of the events which produced the injury." *Hain v. Jamison*, 28 N.Y.3d 524, 528-29 (2016). Generally, "the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is one to be made by the factfinder." *Id*. Plaintiff alleges that his data and PII, which was stored on Equifax's servers (Amended Complaint at ¶ 11), was stolen in the Data Breach (*Id*. at ¶ 24-25), and that Equifax "failed to address the known vulnerability in their software that made the attack possible in the first

15

place, failed to detect the attack for 76 days, and then failed to inform Joshpe and other members of the public for over one month after the [Data Breach] was discovered." (*Id*. at ¶ 19). This breach resulted in significant harm on the part of Joshpe, which included fraudulent bank accounts opened in his name at various financial institutions, hacking of his personal email account, and a decrease in Plaintiff's credit rating adversely affecting Plaintiff's ability to obtain loans, credit cards, and access to housing. *Id.* At this stage of the case, this sufficiently alleges that Equifax's negligent conduct was the proximate cause of plaintiff's injuries. Equifax's arguments that Joshpe has not pleaded proximate cause are "more appropriately addressed at summary judgment or at trial", as Equifax's motion demands proof beyond what is required at the pleading stage and must be rejected. *See Rudolph v. Hudson's Bay Co*., 2019 WL 2023713, at *9. Therefore, Plaintiff has sufficiently alleged that Equifax's conduct was the proximate cause of Plaintiff's injury and has sufficiently stated a claim for negligence.

### c. *Plaintiff Has Alleged a Cognizable Duty Under New York Law or Under Georgia Law*

Equifax argues that Plaintiff cannot recover on his claims under Georgia law. (Eq. Br. at 19). While New York is the appropriate forum for determining Plaintiff's purely state common law claims of negligence (*see* Section I *supra*),

Plaintiff can still state a cause of action for negligence under Georgia law should this Court choose to apply the law of the State of Georgia.

Specifically, Defendant argues that Plaintiff's negligence claim fails based on a lack of duty and on the economic loss doctrine. (Eq. Br. at 19, 25). If the Court were to apply Georgia law to Plaintiff's negligence claims, Joshpe would still be able to recover.

Applying Georgia law, there is an independent duty and it defeats the application of the economic loss doctrine. Where "an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Rosen v. Protective Life Ins. Co*., 2010 WL 2014657, at *9 (N.D. Ga. May 20, 2010). "This principle has been applied in cases where the plaintiff identified a statutory or common law duty that would have existed absent the  underlying contract." *Hanover Ins. Co. v. Hermosa Const. Grp*., *LLC*, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014). Importantly, Georgia law recognizes a specific and independent duty to protect against known, foreseeable risks to a company's data security systems. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 2019 WL 937735 at *13 (N.D. Ga. Jan. 28, 2019) ("This duty of care arises from the allegations that the Defendants knew of a foreseeable risk to

17

its data security systems but failed to implement reasonable security measures.").
The Georgia Supreme Court's recent decision in *Department of Labor v. McConnell*, which Equifax discuss but misconstrue, is actually not contrary to Plaintiff's position, as in that case, there were no allegations of a known foreseeable risk. 828 S.E.2d 352 (Ga. 2019). In *McConnell*, a state employee inadvertently e-mailed a spreadsheet with the PII of 4,757 individuals to approximately 1,000 recipients. *Id*. at 356. On those facts, the court rejected a "general legal duty *to all the world* not to subject others to an unreasonable risk of harm." *Id*. at 358. (Emphasis added). However, *McConnell* stands for the basic concept that a duty is owed to *identifiable individuals,* not the world at large—it did not remove the age-old, independent duty in Georgia common law that a person is under a duty to remove a known hazard of their creation where it is reasonably foreseeable that injury will occur. *See e.g., United States v. Aretz*, 280 S.E.2d 345, 350-351 (Ga. 1981); *accord In re Equifax, Inc., Customer Data Sec. Breach Litig*., 371 F. Supp. 3d 1150, 1170 (N.D. Ga. Jan. 28, 2019) (ruling that plaintiffs' allegations stated a negligence claim under Georgia law where they alleged Defendants subjected them to "an unreasonable risk of foreseeable harm by collecting troves of valuable personal data and failing to take reasonable security measures in the face of known risks").

Georgia also recognizes an "accident exception" to the economic loss doctrine: "[t]here is a general duty under tort law, independent of any contract, to avoid causing 'a sudden and calamitous event which . . . poses an unreasonable risk of injury to other persons or property.' " *Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg., Inc*., 2013 WL 489141 at *4 (N.D. Ga. Feb. 8, 2013). Courts have applied this rationale to preclude application of the economic loss rule to a data breach case because it "present[s] a real danger of harm to persons or property." Here, the Data Breach is comparable to a tortious "accident" and the damages are of a type that caused economic harm to persons or entities. Indeed, tortious damages may include purely economic damages . . . [d]ismissal of the tort claims based on the economic loss rule is not appropriate. *Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*, 2008 WL 4277877, at *8 (D. Ariz. Sept. 18, 2008). Here, the accident exception applies because Equifax's "sudden and calamitous" Data Breach posed an unreasonable risk of harm to Joshpe, who was one of the finite and identifiable customers and users of Equifax's service. Accordingly, Plaintiff has alleged a plausible negligence claim.

## IV.   Plaintiff Has Properly Pleaded a Claim Under N.Y. GBL § 349(a)

In the State of New York, N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of

any service." *See also Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.,* 300 A.D. 2d 608, 609 (2002). To maintain a cause of action under Section 349, "a plaintiff must allege that a defendant has engaged in (i) consumer-oriented conduct that is (ii) materially misleading and that (iii) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (2012)). "[A] private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ. P . . . ." *Pelman ex rel. Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir 2005); *Heinitz v. Seterus, Inc*., 2019 WL 4805326, at *6 (N.D.N.Y. Sept. 30, 2019). Plaintiff does not need to show reliance on the misleading act or practice. *See Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999). New York courts define the term "deceptive acts and practices" objectively, as "representations or omissions, limited to those likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 26 (1995).

In the case at bar, Equifax vaguely parrots the general standards under New York law, but avoids explaining how those standards apply here. Equifax fails to mention the multitude of relevant data breach cases holding that allegations, as those made in the Amended Complaint relating to Equifax's misrepresentations and material omissions concerning security, allege cognizable claims under § 349. *Fero v. Excellus Health Plan, Inc.,* 236 F. Supp. 3d 735, 775-777 (W.D.N.Y. 2017)*; In re Anthem Inc. Data Breach Litig*., 2016 WL 3029783 at *38-39 (N.D. Cal. May 27, 2016). (denying motion to dismiss GBL claim); and *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 995-996 (N.D. Cal. Feb. 14, 2016) (loss of value of PII and loss of benefit-of-bargain constitute cognizable injuries under N.Y. GBL § 349).

Moreover, the determination of whether a representation or omission is misleading is a question of fact inappropriate for a motion to dismiss. "[U]sually such a determination is a question of fact." *Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (citing *Sims v. First*

*Consumers Nat'l Bank*, 758 N.Y.S. 2d 284 (1st Dep't 2003)); *Ackerman v. Coca–Cola Co*., 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010).

Additionally, Plaintiff's damages are adequate for a N.Y. GBL § 349 claim. "[P]roof that 'a material deceptive act or practice caused actual, although not necessarily pecuniary harm' is required to impose compensatory damages." *Wilner v. Allstate Ins. Co*., 71 A.D. 3d 155, 161-62 (2d Dep't. 2010). "In demonstrating that she 'sustained injury as a result' of defendant's action, the plaintiff must merely show that she suffered a loss 'because of' the defendant's 'deceptive act.'" *Rodriguez v. It's Just Lunch*, *Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. May 14, 2014). *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 63 (S.D.N.Y. 2015); *see also Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). The specifics of the damages suffered by Plaintiff are set forth in detail *supra* and in the Amended Complaint (¶ 25).

Equifax's reliance on *Wallace,* 2021 WL 1109727 at *6, to find that time spent on mitigation does not meet the standard for cognizable damages is misplaced. In *Wallace*, the Court noted the plaintiffs failed to cite any authority recognizing that time alone was sufficient to establish cognizable injury. *Id*. at *7 ("Each of the cases plaintiffs cite for support either involved allegations of lost time and money or were predicated upon interpretations of unique state statutes."). In a subsequent decision, in *McMorris*, the Second Circuit clarified the issue:

"[W]here plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 303 (2d Cir. 2021) (quoting *In re Supervalu, Inc*., 870 F.3d 763, 771 (8th Cir. 2017)). Conversely, "where plaintiffs have shown a substantial risk of future identity theft or fraud, 'any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact.'" *Id*. (quoting *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig*., 928 F.3d 42, 59 (D.C. Cir. 2019)) (emphasis added). Although the appellant in *McMorris* did not raise the issue, the Court of its own accord made clear that the time spent protecting oneself cannot create an injury where the plaintiff fails to show a substantial risk of future identity theft. *Id*. n.7 (emphasis added). Here, as discussed *supra*, Plaintiff has adequately alleged a substantial risk of identity theft because the Data Breach was the result of a targeted attack and Plaintiff's stolen PII, which included his name, full Social Security number, birth date, address, and, upon belief, his driver's license number, and possibly one or more of his credit cards, includes the sort of information that creates a substantial risk of identity theft or fraud. The *McMorris* court also looked at the type of data stolen and reasoned that: "courts have looked to the type of data at issue, and whether that type of data is more or less likely to subject plaintiffs to a perpetual

risk of identity theft or fraud once it has been exposed. Naturally, the dissemination
of high-risk information such as Social Security numbers and dates of birth –
especially when accompanied by victims' names – makes it more likely that those
victims will be subject to future identity theft or fraud." *Id*. at 302. Accordingly,
Plaintiffs' time spent mitigating the effects of the Data Breach, especially in light
of the actual theft of his data and high likelihood that he will be subject to future
identity theft, establishes a cognizable injury.

Lastly, Defendants state that Joshpe did not allege any "deceptive" or
"misleading" conduct by Equifax, which is the essence of a Section 349 claim;
according to Equifax, Joshpe only alleges that they Data Beach Incident itself was
"deceptive and violates [Section] 349(a)." (Eq. Br. at 35). However, as concerns
this point, the pleading requirements under Section 349 are not as strict as Equifax
would have this court believe. *Oswego Laborers' Local 214 Pension Fund*, 85
N.Y.2d at 25 (holding plaintiffs need only "demonstrate that the acts or practices
have a broader impact on consumers at large."). *See e.g., Fero*, 236 F. Supp. 3d at
776–77 (finding allegations defendant would "maintain adequate data privacy and
security practices" and "comply with requirements of relevant federal and state
laws" plausibly alleged material misrepresentation).  In the context of a data
breach, courts have also held that a plaintiff can satisfy the pleading element by

alleging that a defendant's "continued non-compliance with data security practices" have affected "a broad group of individuals." *Anthem*, 162 F. Supp. 3d at 992. Plaintiff has made substantively similar allegations. Plaintiff has already established that he suffered actual harm as a result of the Data Breach, and that he faces more than just a "substantial risk" of future harm, indeed this harm is practically certain. Moreover, the Amended Complaint is replete with allegations regarding Equifax's deceptive conduct, including hiding the Data Breach from its own Board, and incredibly slow reaction to aid Joshpe and other affected individuals after-the-fact. These allegations are more than enough to sufficiently state a claim under Section 349.

## **CONCLUSION**

For all the foregoing reasons, Equifax's Motion to Dismiss should be denied. Plaintiff respectfully requests leave to replead if the Court grants any portion of the Motion.

Dated: January 28, 2022

_____
JOSHPE MOONEY PALTZIK LLP
By: Edward Paltzik, Esq.
1407 Broadway, Suite 4002
New York, NY 10018
Tel: 212-344-8211
Cell: 516-526-0341
Fax: 212-313-9478
epaltzik@jmpllp.com
*Attorneys for Plaintiff Brett Joshpe*

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Motion was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 28th day of January, 2022

_____
Edward A. Paltzik

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Respectfully submitted, this 28th day of January, 2022

_____
Edward A. Paltzik