# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 1:17-MD-2800-TWT<br><br>CONSUMER CASES |

## EQUIFAX'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS <u>THE OPT-OUT CASES OF JOSHPE AND KHALAF</u>

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. ARGUMENT ................................................................................................2

   A. Plaintiffs' Negligence Claims Fail. ......................................................2

      1. *Plaintiffs Have Not Alleged Causation Under Georgia or New York Law.*................................................................................................3

      2. *New York's Choice of Law Rules Call for the Application of Georgia Subtantive Law.*..................................................................7

      3. *Plaintiffs Fail to Allege a Duty or Damages Under Georgia Law.* 11

   B. Plaintiffs Failed to Allege Any Deceptive Conduct That Caused Them Cognizable Injury Under N.Y. Gen. Bus. L. § 349(a). .........16

III.   CONCLUSION ............................................................................................20

## I.    <u>INTRODUCTION</u>

In their oppositions to Equifax's Motion to Dismiss, Opt-Out Plaintiffs Brett Joshpe and Richard Khalaf ("Joshpe" or "Khalaf" or "Plaintiffs") fail to put forth any legitimate reason why their claims should not be dismissed.[1]

***First,*** both Plaintiffs have abandoned their FCRA claims, conceding that dismissal is required.  Joshpe Br., Dkt. No. 1225 at 1 n.1; Khalaf Br., Dkt. No. 1226 at 1 n.1.

***Second,*** the Court need not even reach the choice of law issue concerning Plaintiffs' negligence claim because they have failed to plausibly allege causation regardless of whether Georgia or New York law applies.  But even assuming New York's choice of law rules apply as Josphe and Khalaf suggest, the Court would still be required to apply Georgia *substantive* law to their negligence claim.  And because Georgia substantive law governs, the Georgia Supreme Court's decision in *McConnell IV* expressly forecloses the existence of a common law duty.  *Dep't of*

---

[1] This brief pertains only to Opt-Out Plaintiffs Joshpe and Khalaf, who requested leave to file their oppositions to Equifax's Motion to Dismiss four days after the original deadline, *i.e.*, on January 28, 2022.  *See* Dkt. 1224.  Equifax timely files this reply within 30 days of their responses, as required by the Court's October 27, 2021 Case Management Order for Opt-Out Cases.  *See* Orders, Dkts. 1216, 1219 (as amended).

*Lab. v. McConnell*, 305 Ga. 812 (2019).  Moreover, Plaintiffs' claims fail for the independent reason that their alleged injuries are barred by Georgia's economic loss and impact rules.

**Third,** Plaintiffs' New York General Business Law § 349 ("Section 349") claim should be dismissed because they have not alleged that any deceptive conduct on Equifax's part caused them to suffer cognizable harm.  Their oppositions gloss over their failure to allege any deceptive conduct to which they were exposed, and they likewise fail to cite any support for their incorrect assertion that lost time is a cognizable injury for a Section 349 claim.  Independently, they fail to allege causation as required under Section 349.

For these reasons and those explained below, the Court should dismiss Plaintiffs' claims with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs' Negligence Claims Fail.

Plaintiffs' contention that this Court should apply New York law to their negligence claim is mistaken and, in any event, inconsequential.  While Plaintiffs are wrong that New York law governs the claim (as explained below), the Court need not reach that issue—regardless of whether New York or Georgia substantive

law applies, their negligence claims fail because they have not plausibly alleged proximate causation.  Moreover, even if they were correct that New York's choice of law rules apply, those rules would still require application of Georgia *substantive* law.  As a result, their claims must be dismissed because they fail to allege a duty of care and, independently, because the economic loss and impact rules preclude recovery for their alleged harms.  *See* Mot. at 19-23, 26-30.

### 1. *Plaintiffs Have Not Alleged Causation Under Georgia or New York Law.*

Because Plaintiffs fail to allege proximate causation under both Georgia and New York law, the Court can dismiss their negligence claims without deciding the choice of law issue.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) (recognizing that "'when the laws of the competing states are substantially similar . . .' 'the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states'") (citation omitted).

Both New York and Georgia law require a plaintiff to plausibly allege "'that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury.'" *City of Richmond Hill v. Maia*, 301 Ga. 257, 258, 800 S.E.2d 573, 576 (2017) (citation omitted); *accord Monahan v. Weichert*, 442 N.Y.S.2d 295, 298 (N.Y. App. Div. 1981).  The focus of the causation-in-fact inquiry is "whether the

3

injury really was sustained as a result of the [defendant's] conduct." *Pagan v. Goldberger*, 382 N.Y.S.2d 549, 550 (1976); *see Blondell v. Courtney Station 300 LLC*, 865 S.E.2d 589, 595 (Ga. Ct. App. 2021) (cause-in-fact analysis considers whether "but for the defendant's act, the injury to the plaintiff would not have occurred") , *reconsideration denied* (Nov. 17, 2021).  The question of proximate cause then considers whether "the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." *Johnson v. Avis Rent A Car Sys., LLC*, 311 Ga. 588, 593, 858 S.E.2d 23, 29 (2021) (citation omitted); *accord Hain v. Jamison*, 28 N.Y.3d 524, 530 (2016).

Here, Plaintiffs fail to allege facts to plausibly show that the Data Security Incident caused any of their purported harms.  *See* Mot. at 24-26.  Equifax pointed out in its Motion that all Joshpe and Khalaf allege is (1) their information was stolen in the Data Security Incident and (2) at some point they purportedly suffered decreased credit scores and actual or attempted fraud.  *Id*. at 25.  They plead no facts showing that information stolen from Equifax was used to cause their alleged injuries.

Plaintiffs fail to address this pleading deficiency in their response briefs. Instead, they simply say the Court should allow their claims to proceed even though

4

they allege *no facts* tying their harms to the Data Security Incident.  *See* Joshpe Br. at 16; Khalaf Br. at 14-15.  But as the Eleventh Circuit held in *Resnick v. AvMed, Inc.*, "to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances *beyond* allegations of time and sequence."  693 F.3d 1317, 1326 (11th Cir. 2012) (emphasis added).  Plaintiffs fail to allege any causal nexus here.

For example, Plaintiffs have pointed to no factual allegations plausibly suggesting any decrease in their credit scores was caused by the Data Security Incident.  Moreover, neither Plaintiff addresses the fact that they allege numerous harms that *could not* have been committed using the information stolen in the Data Security Incident.  Joshpe, for instance, offers no explanation as to how the Data Security Incident enabled someone to hack his Gmail and PayPal accounts when he has not alleged that login credentials for those accounts were stolen in the Data Security Incident.  *Compare* Mot. at 25 *with* Joshpe Br. at 15-16.  Similarly, Khalaf does not explain how the Data Security Incident could have enabled someone to present a "fraudulent check" at a credit union in his name.  Khalaf Br. at 5.  In fact, he does not allege (and could not allege) that his Ally Bank account information was stolen in the Data Security Incident.  And both Plaintiffs fail to explain how the

5

harassing phone calls they allegedly received were caused by the Data Security Incident when neither alleges their phone number was stolen from Equifax. *Compare* Mot. at 26 *with* Joshpe Br. at 15-16.  In short, unlike the plaintiffs in *Resnick*, who plausibly "allege[d] that [] sensitive information on [a] stolen laptop was the same sensitive information used to" cause their harms, 693 F.3d at 1327, Plaintiffs' own allegations confirm that some other exposure of their information— and *not* the Equifax Data Security Incident—caused the harms they allegedly suffered.

Accordingly, under both Georgia and New York law, causation can "be determined as a matter of law [because] no reasonable person could find causation based on the facts alleged in the complaint . . . without resorting to 'wild speculation.'" *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d  512, 538 (S.D.N.Y. 2003) (quoting *Price v. Hampson*, 530 N.Y.S.2d 392, 394 (N.Y. App. Div. 1988)); *accord Phillips v. MacDougald*, 219 Ga. App. 152, 154, 464 S.E.2d 390, 393–94 (1995); *Feldman v. Am. Dawn, Inc.*, No. 1:14-CV-3006-LMM, 2015 WL 11439174, at *6 (N.D. Ga. Sept. 16, 2015) (12(b)(6) dismissal proper where plaintiff's causation theory relies on a "speculative chain of causation"), *aff'd*, 849 F.3d 1333 (11th Cir. 2017); *Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1382 (N.D. Ga.

2014) (stating that proximate cause can be decided as a matter of law where the "'jury can draw but one reasonable conclusion'") (citation omitted).

### 2. New York's Choice of Law Rules Call for the Application of Georgia Subtantive Law.

Even if New York's choice of law rules apply here as Joshpe and Khalaf suggest, those rules would still require the application of Georgia substantive law to their negligence claims.  New York choice of law rules require an "[i]nterest analysis," calling for application of the law of the jurisdiction that, because of its "'relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d. Cir. 2005) (citation omitted).

Where, as here, the conflict of laws analysis concerns what standard governs an entity's conduct, a court must begin the analysis with the presumption that "'the law of the jurisdiction where t[he allegedly tortious acts] occurred will generally apply.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 49 (2d Cir. 2013) (alteration in original) (citation omitted). In negligence claims premised upon "corporate decision-making policies" and alleged failures to implement adequate security or safety programs (like Plaintiffs' allege here), New York courts have held that such tortious conduct occurs in the entity's principal place of business

7

or nerve center.  *See In re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009*, 798 F. Supp. 2d 481, 490 (W.D.N.Y. 2011) (concluding airline's alleged failure to implement adequate safety programs and negligent hiring and training of flight crews were "corporate decision-making and policies" that occurred in the airline's principal place of business); *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 525-26 (E.D.N.Y. 2010) (concluding a pharmaceutical company's failure to conduct clinical trials, among other things, occurred in the state where the defendant was headquartered and where corporate decisions were made).

Here, Plaintiffs' claims arise out of Equifax's alleged "fail[ure] to address [a] known vulnerability in [its] software that made the [Data Security Incident] possible, . . . fail[ure] to detect the attack for 76 days, and . . . fail[ure] to inform [Joshpe and Khalaf] and other members of the public for over one month after the data breach was discovered."  Joshpe Compl. ¶ 19; Khalaf Compl. ¶ 19.  Plaintiffs also allege that Equifax maintains its "principal place of business located in Atlanta, Georgia" (Joshpe Am. Compl. ¶ 4; Khalaf Compl. ¶ 4).  Accordingly, this Court must begin its choice of law analysis presuming that Georgia law governs Plaintiffs' negligence claims.

8

Next, this Court must consider the interests of the relevant states.  Under the facts alleged here, Georgia has a "superior" interest in what standards govern Equifax's conduct because it has the "'greatest interest in regulating behavior within its borders,'" "admon[ishing] . . . similar conduct in the future,'" and "'protecting the reasonable expectations of the parties who relied on the [laws of that place] to govern their primary conduct.'"  *Licci*, 739 F.3d at 50-51 (last alteration in original) (citations omitted).  In contrast, New York's interest is minimal.  Although it is the place where some injuries allegedly occurred and where Plaintiffs reside, the location of their alleged injuries and domiciles was fortuitous.  *See Poppel v. Estate of Archibald*, No. 1:19-cv-01403 (ALC), 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020) (applying the law where defendant's conduct occurred because the injuries were "felt in states across the country").

Indeed, Plaintiffs have alleged that Equifax maintains information about consumers "[n]ationwide" and that the Data Security Incident affected "145.5 million" people across the country.  Joshpe and Khalaf Compls. ¶¶ 4, 13.  Courts conducting interest-weighing choice of law analyses for negligence claims arising from large data breaches have found they present "quintessential example[s] of when the plaintiff's injury is fortuitous and the law of the place where the defendant's

9

conduct occurred should be given more weight." *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *3 (E.D. Mo. Aug. 3, 2021) (applying Missouri law because "the allegedly negligent actions by [the defendant] resulting in the Data Breach occurred in Missouri" and the named plaintiff's "living in Indiana cannot overcome these clear, significant contacts to Missouri"); *see Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1244 (D. Colo. 2018) (applying Colorado law to Chipotle's alleged failure to safeguard customers' personal data, because the wrongful conduct "occurred in Denver" where Chipotle is headquartered, and "the place of the injury . . . is fortuitous and . . . bears little relation to the occurrence of the parties."); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1155 (W.D. Wash. 2017) (holding that the law of Eddie Bauer's principal place of business governed any duty it owed for "failing to employ adequate data security measures" because this conduct "emanated from its headquarters," which deserved "greater weight" since "the location of the alleged injury [was] in multiple states and [thus] fortuitous.").[2]

---

[2] Equifax notes that although Plaintiffs Christopher Eustice, Cathy Eustice, David Eustice, and Travis Hubbard did not oppose Equifax's Motion to Dismiss (much less argue which choice of law rules should apply to their negligence claims), the result

Simply put, Georgia has a much stronger interest in the conflict at issue than any interest New York may have.  Accordingly, Georgia substantive law applies to Plaintiffs' negligence claims.

### 3.  *Plaintiffs Fail to Allege a Duty or Damages Under Georgia Law.*

Because Plaintiffs fail to allege a cognizable duty or damages under Georgia law, their claims should be dismissed.

### a.  Plaintiffs Cannot Escape *McConnell IV*.

Plaintiffs fail to distinguish their negligence claims from those in *McConnell IV*, in which the Georgia Supreme Court unequivocally held that Georgia law recognizes no "duty to protect [a plaintiff's] information against negligent disclosure."  *McConnell*, 305 Ga. at 816, 828 S.E.2d at 358; *see also Murray v. ILG Techs., LLC*, 798 F. App'x 486, 492 (11th Cir. 2020) (stating, *McConnell IV* "seriously calls into question the existence under Georgia law of an independent common-law duty to safeguard and protect . . . personal information.").  Plaintiffs instead offer a strained, incorrect reading of *McConnell IV*, which would carve out

_____

would be the same even if the Court applied the choice of law rules of their home state, Texas.  See Eustice Compls. Ex. C, 4 (stating the plaintiffs reside in Texas); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (noting that Texas uses the Restatement's "most significant relationship" test to decide choice of law issues).

11

broad exceptions for cases purportedly involving "foreseeable risk[s]" and "identifiable" plaintiffs.  Joshpe Br. at 18; Khalaf Br. at 17.

*First*, *McConnell IV* necessarily precludes any duty to safeguard personal information even where there are allegations that the risk of disclosure was foreseeable.  *See* Mot. at 29 & n.16.  The plaintiffs' complaint in *McConnell* specifically alleged that it was "reasonably foreseeable" that unauthorized third parties would gain access to their PII.  Ex. 1, First Am. Compl. ¶¶ 26,27, *McConnell v. Ga. Dep't of Lab.*, No. 2014CV241506 (Ga. Super. Ct. March 12, 2014), attached hereto as Ex. 1.  Despite these allegations of foreseeability—allegations that had to be credited under Georgia's notice pleading standard, *see McConnell v. Ga. Dep't of Labor*, 814 S.E.2d 790, 796 (Ga. Ct. App. 2018)—the Georgia Supreme Court still squarely held that no duty of care existed under Georgia common law without so much as hinting that its holding was limited to *un*foreseeable data breaches.  *See Dep't of Lab. v. McConnell*, 305 Ga. at 812, 828 S.E.2d at 356.  *McConnell IV* thus requires dismissal of Plaintiffs' claims regardless of any allegations of "foreseeability."  *See also CSX Transp., Inc. v. Williams*, 278 Ga. 888, 890, 608 S.E.2d 208, 209 (2005) (rejecting plaintiff's argument that "mere foreseeability" was sufficient to create "a duty of care").

12

*Second*, *McConnell IV* forecloses Plaintiffs' so-called "identifiable plaintiffs" exception.  Joshpe Br. at 18; Khalaf Br. at 17.  Even if such an exception had any support in Georgia law (and Plaintiffs cite no authority suggesting that it does) *McConnell IV* precludes its application in the data breach context because the plaintiffs there were certainly "identifiable"—they included "4,757 individuals" employed by the Georgia Department of Labor who were identifiable by "name, social security number, home telephone number, [and] email address."  *Dep't of Labor v. McConnell*, 305 Ga. 812, 812 (2019).  And if those 4,757 employees somehow were *not* sufficiently "identifiable" in *McConnell IV* to invoke a duty of care under Plaintiffs' so-called "identifiable plaintiffs" exception, then such exception certainly would not apply here, where the Data Security Incident impacted 147 million U.S. consumers—most of whom had no direct relationship with Equifax.

In sum, Plaintiffs have failed to allege a duty of care in light of the Georgia Supreme Court's decision in *McConnell IV*.  Because Georgia law does not recognize the duty that Plaintiffs claim Equifax owed them, their negligence claims must be dismissed.

            b.  <u>Plaintiffs' Alleged Damages Are Barred By Georgia's Economic Loss Rule and Impact Rule</u>.

Even if Plaintiffs could allege a duty of care, their claims should still be dismissed because they have not alleged cognizable damages.  Under Georgia law, Plaintiffs' alleged damages arising from harassing phone calls, reputational harm in the form of a decreased credit score, and time spent responding to attempted fraud are not recoverable on a negligence claim.  First, the Eleventh Circuit has recognized that harms caused by harassment like "psychic or emotional trauma are generally unrecoverable in negligence actions under Georgia's impact rule" where, as here, plaintiffs allege no physical impact.  *Murray*, 798 F. App'x at 493; *see also Ryckeley v. Callaway*, 261 Ga. 828, 828, 412 S.E.2d 826, 826 (1992) ("In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury.") (emphasis added). Second, allegations of decreased credit scores do not suffice as an injury because, as the Eleventh Circuit explained in *Murray*, "reputational damage[s]" are unrecoverable in ordinary negligence claims in Georgia.  *Id*. at 492.  Third, any "time lost" due to attempted fraud is a species of "'purely economic interests'" which Georgia courts have long held cannot support a negligence claim.  *See Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga. App. 293, 293, 295, 217 S.E.2d 602, 603-04 (1975) (holding that negligence claim seeking damages for "time lost from work" was

14

barred by Georgia's economic loss rule); *see also Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1243 (S.D. Ga. 2019) (collecting cases and explaining that the economic loss rule's "reach in Georgia has extended to also encompass cases that involve neither [a contractual relationship nor product liability]"), *aff'd*, 798 F. App'x 486 (11th Cir. 2020).  Put simply, none of the harms Plaintiffs have alleged are recoverable on a negligence claim under Georgia law.

Plaintiffs' arguments in response are unavailing.  First, the handful of cases they cite that were decided under New York law (Joshpe Br. 13-15; Khalaf Br. 12-14) are irrelevant because, as explained above, Georgia law governs their negligence claims.  Second, the "accident exception" to the economic loss rule is inapplicable here because the Georgia Supreme Court has narrowly limited that doctrine to products liability claims.  *See Vulcan Materials Co. v. Driltech, Inc*., 251 Ga. 383, 385, 306 S.E.2d 253, 255 (1983) ("'Defects of quality, evidenced by internal deterioration or breakdown, are assigned to the economic loss category, while the loss stemming from defects that cause accidents of violence or collision with external objects is treated as physical injury'" so as to be recoverable in negligence) (citation omitted); *see Murray,* 378 F. Supp. 3d at 1249 (holding that "the accident exception could only apply to Plaintiffs' products liability claims and would not save

15

Plaintiffs' ordinary negligence claim"). And finally, the "independent duty" exception to Georgia's economic loss rule cannot apply because *McConnell IV* forecloses any argument that Equifax owed Plaintiffs a common law duty to safeguard their personal information, and Plaintiffs have not (and cannot) point to any other cognizable duty to invoke the exception.

Accordingly, Plaintiffs' negligence claims fail for the independent reason that they allege no recoverable damages.

**B.    Plaintiffs Failed to Allege Any Deceptive Conduct That Caused Them Cognizable Injury Under N.Y. Gen. Bus. L. § 349(a).**

Plaintiffs argue that the allegedly "deceptive" conduct on which their Section 349 claims are based includes Equifax's allegedly "hiding the Data Breach from its own Board" and the "incredibly slow reaction to aid [them] and other affected individuals after-the-fact." Joshpe Br. at 25; Khalaf Br. at 24. This alleged conduct, however, cannot support a Section 349 claim. Missing from Plaintiffs' complaints are any allegations that they were *exposed to* and aware of misleading or inadequate statements about the Data Security Incident or Equifax's cybersecurity practices more generally. As the court held in *Fero v. Excellus Health Plan, Inc.*, "while a plaintiff pursuing a GBL § 349 claim need not have relied on (or even necessarily have believed) the allegedly deceptive conduct, he or she must have at least been

16

exposed to it."  502 F. Supp. 3d 724, 740 (W.D.N.Y. 2020); *see Abraham v. Am.*
*Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) ("In an
action under GBL § 349, each Plaintiff must individually plead that the disclosures
he or she received were inadequate, misleading, or false, and that she was injured as
a result of the insufficient or false disclosures.").  Here, Plaintiffs simply allege that
Equifax did not notify them of the Data Security Incident as soon as they would have
liked or expected.  But because they have not alleged any deceptive statement or
conduct of which they were actually aware, their Section 349 claims fail.  *See Fero*,
502 F. Supp. 3d at 739 (noting there is not "a single case embracing a theory under
which a GBL § 349 plaintiff need not even be aware of the allegedly deceptive
conduct").[3]

---

[3] Plaintiffs incorrectly cite *In re Anthem, Inc. Data Breach Litigation* for the
proposition that "[i]n the context of a data breach," a plaintiff asserting a Section
349 claim need not allege deceptive conduct, only that the "defendant's 'continued
non-compliance with data security practices' have affected 'a broad group of
individuals.'" Joshpe Br. at 24-25; Khalaf Br. at 23.  But the quoted language from
*Anthem* concerned only the question whether the plaintiffs had "sufficiently alleged
that Defendants' conduct was *consumer-oriented in nature*"—a different issue
entirely.  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992 (N.D. Cal.
2016) (emphasis added).

Even if Plaintiffs had alleged deceptive conduct capable of supporting a Section 349 claim, their claims would still fail because they have not alleged any damages cognizable under Section 349.  Plaintiffs rely on cases concerning Article III standing to argue that they alleged an injury under Section 349.  Joshpe Br. at 22; Khalaf Br. at 21.  But whether Plaintiffs have Article III standing is a different question from whether their alleged injuries are cognizable under Section 349.  *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("[H]olding that Plaintiffs–Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims.").  The relevant point is that Plaintiffs' allegations of attempted fraud and time spent responding to it are insufficient under Section 349 without allegations demonstrating that Plaintiffs suffered accompanying out-of-pocket expenses.  Mot. at 34-35.

The Southern District of New York recently held in *Wallace v. Health Quest Systems, Inc.* that a plaintiff's allegations of time spent "monitoring their credit, responding to potential instances of fraud, or . . . freezing and unfreezing their credit" cannot support a Section 349 claim.  2021 WL 1109727, at *7 (S.D.N.Y. Mar. 23, 2021).  And while Plaintiffs argue that monetary "mitigation *expenses* satisfy the

18

injury requirements of negligence" (Joshpe Br. at 14; Khalaf Br. at 13) (emphasis added), neither has alleged that they incurred such expenses here.[4]

Likewise, *Wallace* held that allegations of attempted fraud (without any attendant out-of-pocket losses) and an imminent threat of future harm cannot support a Section 349 claim. *See Wallace*, 20 CV 545 (VB), 2021 WL 1109727, at *7-8. Plaintiffs suggest that *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2d Cir. 2021) abrogated *Wallace*, but it did no such thing. Joshpe Br. at 22-23; Khalaf Br. at 21-22. *McMorris* considered only whether the plaintiffs' claims of lost time and money, along with an increased risk of identity theft, plausibly alleged an injury-in-fact for purposes of *Article III standing*; it did not consider whether those allegations met the higher threshold for a statutory injury. *McMorris*, 995 F.3d at 303. In short, Plaintiffs allege no recoverable injuries.

---

[4] Plaintiffs did not respond to Equifax's argument that their Complaints' passing reference to unspecified "financial resources" spent after the Data Security Incident cannot be credited because they are unsupported by any factual allegations. Joshpe Am. Compl. ¶ 26; Khalaf Compl. ¶ 26; *see* Mot. at 35 & n.18. Their failure to respond concedes this point. *See Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005) (stating that "by failing to respond to Defendant's argument . . . Plaintiff concedes this part of his claim").

Finally, even setting aside their failure to allege deceptive conduct *or* a cognizable injury, Plaintiffs fail to allege causation for their Section 349 claims. "Under GBL § 349, a plaintiff must show that he or she was injured as a result of the defendant's deceptive acts or practices." *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019). Plaintiffs at most allege they spent time mitigating the effects of the Data Security Incident itself, not that they undertook such mitigative steps because of Equifax's purported deceptive conduct (*i.e.*, allegedly "hiding the Data Breach from its own Board" or its alleged "slow reaction to aid [them] . . . after-the-fact"). In fact, Plaintiffs' own allegations suggest that they would have spent time remedying the effects of the alleged fraudulent activity regardless of when Equifax notified the public of the Data Security Incident. Thus, even if Plaintiffs had alleged deceptive conduct and an injury sufficient to support a claim under Section 349 (and they have not), their failure to allege causation would require dismissal.

## III.   <u>CONCLUSION</u>

For these reasons, the complaints of Plaintiffs Brett Joshpe and Richard Khalaf should be dismissed with prejudice.

20

Respectfully submitted this 28th day of February, 2022.

*/s/ S. Stewart Haskins II*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145
Robert D. Griest
Georgia Bar No. 294216
Elijah T. Staggers
Georgia Bar No. 903746
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com
rgriest@kslaw.com
estaggers@kslaw.com

*Counsel for Equifax Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies

with the font and point selections permitted by L.R. 5.1B.  This Motion was prepared

on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 28th day of February, 2022.

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ S. Stewart Haskins II
S. Stewart Haskins II