# IN THE UNITED STATE DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: EQUIFAX INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 2800 No. 1:17-md-2800-TWT CONSUMER CASES Chief Judge Thomas W. Thrash, Jr. |

## SANFORD HEISLER SHARP'S OPPOSITION TO MOTION FOR
## IMMEDIATE INJUNCTIVE RELIEF

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ........................................4

I.   Background ......................................................................................................5

II.  The Parties' Dispute ........................................................................................7

ARGUMENT .............................................................................................................8

I.   The Court Should Deny Defendants' Request for a Permanent Injunction and
     Allow the Tennessee Common Law Action to Proceed .........................................8

     A.   An All Writs Act Injunction Is Reserved for "Extraordinary" and "Exigent"
          Circumstances Not Present Here .................................................................8

     B.   The Anti-Injunction Act Prohibits the Requested Injunction ......................10

          1.   There Is No Need for this Court to Enjoin SHS's State Court Action to
               Aid its Jurisdiction Over the Closed MDL Matter..................................13

               a.   The Complex Multi-State Litigation Exception Does Not Apply ........14

               b.   The Court's General Retention of Jurisdiction Over the MDL Action
                    Does Not Support an Injunction Under the Exception ......................15

               c.   Defendants' Motion Must be Denied Under Burr & Forman v. Blair,
                    Which Represents Controlling, On-Point Authority ..........................16

          2.   Enjoining the Tennessee Chancery Court Action Would Not Serve to
               Protect or Effectuate this Court's Judgments...........................................18

II.  Defendants Acted in Bad Faith in Filing their Motion .......................................22

     A.   Defendants Have Introduced a Host of Immaterial Evidence and Improperly
          Threaten to Seek Sanctions ......................................................................22

     B.   Defendants Have Disclosed Confidential Settlement Communications for
          Illegitimate Purposes Without Making Any Effort to Show their Relevance
          to the Motion or to Place them Under Seal .................................................23

CONCLUSION ........................................................................................................25

<u>T</u>ABLE OF <u>A</u>UTHORITIES

**Cases**

*Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117 (11th Cir. 2005),
  *cert. denied*, 547 U.S. 1192 (2006) ....................................................................9, 10
*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970) ................................................................................2, 11, 16
*Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989) ...........................14
*Brown v. Gilmore*, 533 U.S. 1301 (2001) ..................................................................2, 8
*Burr & Forman v. Blair*, 470 F.3d 1029 (11th Cir. 2006)...................................*passim*
*Casale v. Tillman*, 2008 WL 2782740 (M.D. Ala. July 15, 2008) .................11, 13, 19
*Cha v. YP's Kani, Inc.*, 317 F. Supp. 3d 1215 (N.D. Ga. 2018)..................................24
*Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001)...........23
*Choo v. Exxon Corp.*, 486 U.S. 140 (1988)..........................................................11, 18
*Delta Air Lines v. Marriott Int'l Inc.*, 2021 WL 5033481
  (N.D. Ga. July 20, 2021) .......................................................................................10
*Egidi v. Mukamai*, 571 F.3d 1156 (11th Cir. 2009).......................................................9
*Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998) .....................................................17
*Giercyk v. Nat'l Union Fire Ins. Co. of Pitt., Pa.*, 2018 WL 1469048
  (D.N.J. Mar. 26, 2018)…………………………………………………………………...16
*Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401 (2012).......................................2
*In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006)............*passim*
*In re Linerboard Antitrust Litig.*, 361 F. App'x 392 (3d Cir. 2010) ...........................16
*In re Perry H. Koplik & Sons, Inc.*, 2007 WL 781905
  (Bankr. S.D.N.Y. Mar. 13, 2007) .........................................................................10
*In re Veros Energy, LLC*, 2018 WL 2676068 (Bankr. N.D. Ala. June 1, 2018)..........10
*Int'l Assoc. of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125
  (5th Cir. 1975)........................................................................................................11
*Jaye v. Barr*, 2021 WL 3008299 (S.D. Ga. June 7, 2021),
  *R&R adopted*, 2021 WL 2556693 .....................................................................2, 11
*Jones v. Poole*, 2020 WL 8988457 (S.D. Ga. Mar. 31, 2020)....................................12
*Kaplan v. Divosta Homes, L.P.*, 2010 WL 3945108 (N.D. Fla. Oct. 7, 2010).......11, 12
*Kaplan v. Reed Smith, LLP*, 919 F.3d 154 (2d Cir. 2019)...........................................16
*Klay v. United Healthgroup*, 376 F.3d 1092 (11th Cir. 2004) ................................9, 18

*Love v. Blue Cross & Blue Shield Ass'n*, 2021 WL 949940
 (S.D. Fla. Mar. 12, 2021) ................................................................21
*Morales v. Fla. Dep't of Corrs.*, 346 F. App'x 539 (11th Cir. 2009) ...........................9
*Patel v. U.S. Bank Nat'l Assoc.*, 2019 WL 5490722 (N.D. Ga. June 22, 2019).............9
*Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985)..............................8
*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999)...................................19
*Romero v. Drummond Co.*, 480 F.3d (11th Cir. 2007)...................................................23
*Safeco Ins. Co. of Am. v. Norris & Hirshberg, Inc.*,
 640 F. Supp. 712 (N.D. Ga. 1986)............................................................11, 13
*Shears v. Mobile Cnty. Revenue Comm'n*, 2008 WL 4493234
 (S.D. Ala. Oct. 3, 2008) ................................................................24
*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000)...........................................................9
*Siemens Indus., Inc. v. SIPCO, LLC*, 2013 WL 2285564
 (N.D. Ga. May 23, 2013) ................................................................24
*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ...............................................11, 19, 21
*Triangle Constr. & Maint. Corp. v. Our V.I. Lab. Union*,
 425 F.3d 938 (11th Cir. 2005) ................................................................10
*United States v. Am. Soc'y of Composers, Authors, & Publishers*,
 442 F.2d 601 (2d Cir. 1971)................................................................17
*Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993) ...............................................14, 19
*Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305 (2004) ...................................................2

**Statutes**

All Writs Act, 28 U.S.C. § 1651 ........................................................*passim*
Anti-Injunction Act, 28 U.S.C. § 2283 ...............................................*passim*

**Rules**

Fed. R. Evid. 408 ................................................................4, 23, 24
LR 16.7(I)(5), N.D. Ga. ................................................................24

**Other Authorities**

18C Wright & Miller, Fed. Prac. & Proc. § 4405 (2d ed. 2002) ...................................21

## INTRODUCTION

Plaintiff Sanford Heisler Sharp (SHS) has sued Defendants Stueve Siegel Hanson LLP, Dicello Levitt Gutzler LLC, and Doffermyre Shields Canfield & Knowles, LLC in the Chancery Court of Tennessee. The Defendant law firms were Co-Lead Counsel in this MDL action arising from the Equifax Data Breach. SHS alleges that Defendants violated Tennessee law when they allocated its share of the $77.5 million fee in this action after the case was completed.

In their motion, Defendants seek extraordinary relief: an immediate permanent injunction blocking a valid state court lawsuit brought under the laws of another state (Tennessee) in the courts of another state (Tennessee). No sufficient basis exists for this Court to intercede. Under fundamental principles of federalism and comity, the Court must allow the action to proceed; it is for the courts of Tennessee to determine whether Defendants violated Tennessee law.

While Defendants attempt to make an injunction sound routine, they neglect to inform the Court that the enumerated exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283 are narrow and "strictly construed." *E.g.*, *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250 (11th Cir. 2006); *Burr & Forman v. Blair*, 470 F.3d 1019, 1028 (11th Cir. 2006). In turn, the All Writs Act (28 U.S.C. § 1651), invoked by Defendants, "is to be used sparingly and only in the most critical and exigent

circumstances." *Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (citation omitted). The Court's authority "is only appropriately exercised where (1) 'Necessary or appropriate in aid of [its] jurisdictio[n]'" *and* "(2) the legal rights at issue are 'indisputably clear.'" *Id*. (citations omitted). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

Defendants have failed to meet these standards and thus cannot show that the "extraordinary remedy" of an All Writs Act injunction is warranted. *See Wis. Right to Life*, 542 U.S. at 1306. Their entitlement to relief barring the Tennessee suit is far from "indisputably clear." *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012); *Brown v. Gilmore*, 533 U.S. 1301 (2001); *Jaye v. Barr*, 2021 WL 3008299, at *16 (S.D. Ga. June 7, 2021), *R&R adopted*, 2021 WL 2556693. **Indeed, this case is controlled by the Eleventh Circuit's decision in *Burr & Forman*,** which reversed an injunction entered under nearly identical circumstances—a state breach of contract suit to recover a portion of the attorney's fees awarded in a prior federal class action. 470 F.3d 1019.

All claims in this MDL action have been fully resolved and the case is closed. In January 2020, the Court granted final approval of the parties' settlement. In its order, the Court awarded $77.5 million in fees and $1,404,855.35 in costs to plaintiffs' counsel

collectively. The Court did not address the division of fees among MDL counsel or indicate that it planned to do so. Nor did the parties' settlement agreement, submitted to the Court for approval, in any way designate how fees were to be allocated among the plaintiffs' firms in the *Equifax* matter. Instead, both the settlement and the Court left the allocation of the fee award as an internal accounting issue to be determined by Defendants, Co-Lead Counsel in the MDL action.

The parties' dispute under Tennessee law arose independently of the Court's role in approving and overseeing the settlement between Equifax and the consumer class. By the time Defendants made the fee allocation and informed SHS of the amount it would receive, the Court's involvement had ended for all practical purposes. Shortly thereafter, the MDL action was officially closed. SHS sought to resolve its share of the fee without the need for judicial intervention and then filed suit in an appropriate forum.

SHS alleges that, in setting the fee distribution among MDL plaintiffs' counsel and refusing to make adjustments, Defendants breached Tennessee law, giving rise to tort and contract claims. Because of the posture of the action and the nature of the claims, the most sensible and appropriate course was to file suit in Tennessee. Neither the MDL parties' settlement nor the Court's orders touch upon the division of fees among the firms and this Court has no overriding interest in adjudicating the parties' dispute—which first arose and became ripe after the MDL action was fully resolved.

Tennessee courts are better suited to handle claims brought under Tennessee law.

In short, despite Defendants' labels and intemperate accusations, Plaintiff's suit is not an improper attempt to skirt the Court's jurisdiction. In the Tennessee action, SHS pursues newly arising state law claims. This Court has decided everything it needs to in this case; SHS's suit would not impair its ability to decide issues pending between the MDL parties. The Court should not usurp the sovereignty of the Tennessee court.

Peripheral to their motion, Defendants indicate their intent to seek sanctions if SHS pursues its claims. This is little more than a naked threat meant to chill SHS's right of access to the courts. There is no viable basis to award sanctions for serving a valid suit in another forum. Similarly, in their motion papers, Defendants divulge confidential settlement communications protected by Federal Rule of Evidence 408 without any conceivable basis to do so. SHS's settlement overture has absolutely nothing to do with whether it may pursue its claims in Tennessee Chancery Court.

Hence, the Court should deny an injunction, decline to reopen the MDL action, and allow the state court litigation to proceed. It should also remove SHS's settlement letter from the public docket and admonish Defendants for filing it.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

While Defendants engage in extensive factual exposition and name-calling on the history and merits of the parties' dispute, very little of it is even potentially pertinent to

the sole question at issue on this motion: whether Plaintiff's suit may proceed in state court or must be enjoined and transplanted to this forum. All else seems designed to improperly litigate the merits of its claims before this Court.

The following facts and circumstances, drawn largely from the allegations in SHS's Tennessee complaint, are actually material to Defendants' motion.

## I.   **Background**

In the wake of revelations about the Equifax data breach, affected consumers filed complaints in courts around the country. In December 2017, those cases were transferred to this Court for purposes of "coordinated or consolidated" discovery and other "pretrial proceedings." Dkt. 1, MDL Transfer Order. Under standard MDL procedures, the cases could have been sent back to their original districts for trial.

In February 2018, the Court appointed Defendants Stueve Siegel, Dicello, and Doffermyre as Co-Lead Counsel in control of most aspects of the litigation—including delegating work among the MDL plaintiffs' counsel, coordinating settlement efforts, and maintaining and submitting counsel's time and expense reports. Dkt. 232.

In July 2019, the MDL consumer action settled on a consolidated basis. The parties' settlement provides that plaintiffs' counsel could seek up to $77.5 million in fees and up to $3 million in costs. Dkt. 739-2 § 11.1. It further specifies that the issue of attorneys' fees and costs will not affect the finality, validity, or enforceability of the

settlement and will not be grounds for terminating or canceling the agreement. *Id.* § 11.4. The settlement says nothing about how a fee award is to be allocated among the various plaintiffs' firms—either in terms of amounts; pro rata apportionment; or any process, method, or procedure to be used for designating each firm's share. *Id.* § 11.1.

In October 2019, Defendants, as Co-Lead Counsel in the MDL action, moved for an award for attorneys' fees from the settlement. Dkt. 858. In accordance with the settlement agreement, they sought a sum of $77.5 million in fees. While Defendants submitted a breakdown of lodestar by firm—through September 30, 2019—to justify the total award (Dkt. 858-1, Exs. D–F), they did not set forth a proposal or manner of allocation as to how the collective fee would be distributed among the firms. In fact, they assured SHS and other non-leadership firms that fee allocations would not be based on lodestar alone but would be determined by a variety of factors. Then, in December 2019, Defendants moved for final approval of the settlement and submitted a reply to certain class members' objections to the overall fee request. Dkts. 900–903.

On January 13, 2020, the Court granted final approval of the *Equifax* settlement and awarded all plaintiffs' counsel a total of $77.5 million in fees. Dkts. 956–957. The Court's order did not address how the fee award would be apportioned among the various plaintiffs' firms. This issue did not in any way impact the disposition of the

MDL action and was not something that the Court needed to decide.[1]

## II.   <u>The Parties' Dispute</u>

On February 8, 2022, Defendants contacted SHS to inform it that all appeals relating to the settlement had been resolved, that the MDL matter had reached final disposition, and that the fee and cost award was ready to be distributed. Thereafter, Defendants notified SHS of its designated share of the fee. According to the MDL docket, this matter officially closed and was terminated on April 13, 2022.

Plaintiff concluded that Defendants allocated SHS a fee that was egregiously and disproportionately low and that Defendants' conduct in unilaterally determining its fee in 2022 violated applicable state common law—giving rise to several contract and tort claims. SHS engaged in multiple conversations with Defendants over the course of several months to attempt to resolve the parties' dispute short of litigation.

When these efforts proved unsuccessful, Plaintiff filed suit in Tennessee—where one of its offices is located and all events relevant to its claims occurred. Specifically, SHS's Co-Vice Chairman, the Hon. Kevin Sharp, led the firm's efforts in the MDL action out of its Nashville, Tennessee location and engaged in all relevant communications with Defendants pertaining to SHS's claims.

Plaintiff SHS's claims are based on conduct occurring in 2022—arising after this

---

[1] The Court amended the order in March 2020, but not in any material respect.

action was effectively concluded, on subject matter having nothing to do with the MDL parties' underlying dispute about the Equifax data breach and not addressed in any manner in the MDL parties' settlement agreement or the Court's orders. The Tennessee lawsuit in no way interferes with this Court's jurisdiction over the MDL action.

## ARGUMENT

### I.   The Court Should Deny Defendants' Request for a Permanent Injunction and Allow the Tennessee Common Law Action to Proceed

#### A.   An All Writs Act Injunction Is Reserved for "Extraordinary" and "Exigent" Circumstances Not Present Here

Defendants invoke the All Writs Act in asking this Court to take the drastic action of enjoining state court proceedings. The Act gives courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. But, "injunctive relief under the All Writs Act is to be used 'sparingly and only in the most critical and exigent circumstances.'" *Brown*, 533 U.S. 1301 (citation omitted). "Such an injunction is appropriate only if 'the legal rights at issue are indisputably clear.'" *Id.*

Although the Act grants certain authority to federal courts, "it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Rather, an order <u>*must*</u> *be necessary* to aid a court's existing

jurisdiction. *Morales v. Fla. Dep't of Corrs.*, 346 F. App'x 539, 540 (11th Cir. 2009).

As with traditional injunctions, "a court may not issue an injunction under the All Writs Act if adequate remedies at law are available." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006).[2] If the party seeking an injunction would have the opportunity to raise its claims in the proceeding that party seeks to enjoin, "that concurrent proceeding is deemed to provide an adequate remedy at law." *Id.* "The simple fact that litigation involving the same issues is occurring concurrently in another forum does not sufficiently threaten the court's jurisdiction as to warrant an injunction under [the Act]." *Klay v. United Healthgroup*, 376 F.3d 1092, 1102–1103 (11th Cir. 2004).

Defendants fail to show that "critical and exigent circumstances" justify relief under the All Writs Act. As explained below, an injunction is not necessary to protect this Court's jurisdiction over the MDL action. There is no reason why the Court must exercise jurisdiction, much less exclusive jurisdiction, over the peripheral, post-litigation issue of whether Defendants violated Tennessee law when they assigned SHS

---

[2] Defendants do not seek a traditional injunction; nor have they addressed the factors required to show that they are entitled to one. *See Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000); *Patel v. U.S. Bank Nat'l Assoc.*, 2019 WL 5490722, at *6–7 (N.D. Ga. June 22, 2019) (holding that even if the Anti-Injunction Act did not prohibit the requested relief, party still did not meet the required elements for an injunction). Accordingly, Defendants waive any argument that this Court should enter a traditional injunction. *See, e.g.*, *Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009).

its share of the fee award in 2022—more than two years after final settlement approval.

Nor can Defendants show that that their entitlement to relief is "indisputably clear." Defendants will have a full and fair opportunity to raise any and all of their defenses to SHS's claims in the course of Tennessee action, and have not argued that they will be deprived of such opportunity. *See U.S. Army Corps*, 424 F.3d at 1132. The fact that Defendants may have to incur certain costs associated with defending the Tennessee suit is not considered a form of injury or harm, much less irreparable harm; it does not warrant the extraordinary relief that Defendants seek here.[3]

### B.      The Anti-Injunction Act Prohibits the Requested Injunction

Even within the parameters of the All Writs Act, a court's authority is "tempered" and constrained by the Anti-Injunction Act—which provides for only narrow, strict exceptions to its broad prohibition on injunctions against state court proceedings. *See,*

---

[3] Defending a suit—particularly in one forum versus another—is not irreparable harm warranting special relief. *In re Veros Energy, LLC*, 2018 WL 2676068, at *11 (Bankr. N.D. Ala. June 1, 2018) (rejecting claim that stay was needed because movant would otherwise be forced to proceed with litigation in improper forum); *see also, e.g., Triangle Constr. & Maint. Corp. v. Our V.I. Lab. Union*, 425 F.3d 938, 947 (11th Cir. 2005) (time and expense incurred in a legal proceeding is not irreparable injury); *Delta Air Lines v. Marriott Int'l Inc.*, 2021 WL 5033481, at *3 (N.D. Ga. July 20, 2021) ("Even where the costs of litigation are 'substantial,' such costs alone 'do[] not constitute irreparable injury.'"); *In re Perry H. Koplik & Sons*, 2007 WL 781905, at *2 (Bankr. S.D.N.Y. Mar. 13, 2007) ("The notion that defending a lawsuit amounts to 'irreparable injury' strikes this Court as absurd."). Even a contention that defending a suit would be "duplicative or wasteful" does not elevate the defense of an action to a form of harm, much less an irreparable one. *Perry H. Koplik*, 2007 WL 781905, at *2.

*e.g.*, *Kaplan v. Divosta Homes, L.P.*, 2010 WL 3945108, at *2 (N.D. Fla. Oct. 7, 2010); *Jaye*, 2021 WL 3008299, at *16. The Act provides that a federal court may not enjoin state court proceedings except: (1) "as expressly authorized by Act of Congress"; (2) "where necessary in aid of its jurisdiction"; or (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283. It serves as "an *absolute prohibition* against enjoining state-court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions." *Atl. Coast Line*, 398 U.S. at 286 (emphasis added).

Where a federal court is asked to block a state proceeding, "the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act." *Burr*, 470 F.3d at 1028. Because the Act "is grounded in the constitutional guarantees of independence between the state and federal systems, [its] language. . . is construed narrowly by the courts." *Id.*; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) ("[T]he Act's core message is one of respect for state courts."); *Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (the Act's "exceptions are narrow and are 'not [to] be enlarged by loose statutory construction'").[4] "[P]roceedings

---

[4] *See also*, *e.g., Bayshore*, 471 F.3d at 1250; *Int'l Assoc. of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 129 (5th Cir. 1975) ("[T]he sensitive nature of federal interference with state court proceedings requires that the statute be strictly construed."); *Safeco Ins. Co. of Am. v. Norris & Hirshberg, Inc.*, 640 F. Supp. 712, 714 (N.D. Ga. 1986) ("It is well-settled that 'in the interest of comity and federalism,' the three exceptions specifically stated in the Anti-Injunction Act must be strictly construed."); *Casale v. Tillman*, 2008 WL 2782740, at *4 (M.D. Ala. July 15, 2008).

in state court should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately the United States Supreme Court." *Bayshore*, 471 F.3d at 1250. Courts must "tread carefully"—as a decision to enjoin a state court action "directly implicates the 'very delicate balance struck between the federal and state judicial systems.'" *Id*.

As recently summarized: "[E]xceptions to the Anti-Injunction Act are strictly construed and doubts are decided against enjoining state court proceedings"; as a matter of comity, courts should generally decline to enjoin state court actions even when they are related to a federal action within the court's jurisdiction. *Jones v. Poole*, 2020 WL 8988457, at *3 (S.D. Ga. Mar. 31, 2020). And, even if one or more of the exceptions is met, a court may still exercise its discretion to decline to enjoin the state action. *E.g. Kaplan*, 2010 WL 3945108, at *2 (citing *Bayshore*, *Burr*, and *Klay*).

Here, Defendants have invoked the Act's second exception, which permits a court to enter an injunction "necessary in aid of its jurisdiction," and third exception, which permits injunctions needed "to protect and effectuate [the court's] judgments." Dkt. 1249. As articulated below, neither exception applies. The rights and obligations of the parties to the MDL action have been fully and finally resolved and are in no way implicated by the Tennessee suit. The Court's judgments relate solely to the disposition of the MDL action—including the total amount of fees and costs to be awarded as part

of the settlement—and not the internal division of fees among plaintiffs' firms, transpiring after the conclusion of the MDL matter.

### 1. There Is No Need for this Court to Enjoin SHS's State Court Action to Aid its Jurisdiction Over the Closed MDL Matter

"The 'necessary in the aid of jurisdiction' exception is a narrow one and should be invoked only where federal injunctive relief is necessary 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Safeco Ins. Co. of Am. v. Norris & Hirshberg, Inc.*, 640 F. Supp. 712, 715 (N.D. Ga. 1986) (quoting *Atl. Coast Line,* 398 U.S. at 295). Here, there is nothing left to decide in the MDL action; the case has been fully disposed of and is designated as terminated. The Tennessee action in no way implicates or affects the outcome. This should be the end of the inquiry. SHS nonetheless proceeds to address Defendants' arguments.

"Ordinarily, a federal court may issue an injunction 'in aid of its jurisdiction' in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from the state court; or (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." *Bayshore*, 471 F.3d at 1250–51; *see also Casale v. Tillman*, 2008 WL 2782740, at *5 (M.D. Ala. July 15, 2008). Defendants do not contend that either of these circumstances apply, arguing that this case fits into a third category: the "complex

multi-state litigation exception." It does not. It remains the case that the Tennessee action does not impede or interfere with this Court's jurisdiction over the MDL action.

### a. *The Complex Multi-State Litigation Exception Does Not Apply*

This exception "enables a district court to enjoin a state court proceeding in aid of its jurisdiction when it has retained jurisdiction over complex, *in personam* lawsuits." *Bayshore*, 471 F.3d at 1251. An injunction may be needed to protect an earlier federal court ruling or injunction. *See Burr*, 470 F.3d at 1029. **A prior order providing for continued jurisdiction over a class settlement is an insufficient predicate for an injunction against a state court suit—the state action *must* "directly attack[ ] the substance of the federal court's earlier ruling."** *Id.* at 1033. Here, there is no such direct attack because the Court has not issued any ruling about the proper division of its $77.5 million fee award to plaintiffs' counsel collectively—leaving it as a matter of internal accounting. In performing that accounting, after the MDL action was completely resolved, Defendants allegedly violated Tennessee law.

The cases in which the Eleventh Circuit has applied the exception involve wholly different factual scenarios. In *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989), the exception was applied to bar plaintiffs from filing a state court action based on claims that were substantially similar to claims that had been settled by final judgment in an earlier federal class action. In *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir.

1993), individuals unhappy with the final judgment in a federal action filed a subsequent state class action on behalf of the same plaintiffs asserting substantially equivalent claims. Such cases presented a major risk that "contradictory state-court judgments, purporting to bind substantially similar claims, would only confuse the parties as to their legally enforceable rights and obligations." *Bayshore*, 471 F.3d at 1252. That risk does not exist here: the Tennessee action in no way implicates the rights and obligations of the MDL parties—Equifax and the class of consumers affected by the data breach. Nor does it jeopardize or affect the settlement, which is final and enforceable regardless of how much of the fee award is assigned to each firm.

> b. *The Court's General Retention of Jurisdiction Over the MDL Action Does Not Support an Injunction Under the Exception*

SHS recognizes that the Court has entered an order providing for continuing jurisdiction over the MDL action—essentially to enforce the settlement as may be necessary. This is an insufficient basis to enjoin SHS's state court suit. The Eleventh Circuit cautions that the exception "is predicated on *both* complexity and potential for interference." *Bayshore*, 471 F.3d at 1252 (emphasis added). Again, even when a court has jurisdiction over a complex multistate action, "it is not enough that the requested injunction is *related* to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction"—that is, "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case **as to *seriously impair* the federal**

**court's flexibility and authority to decide that case**." *Atl. Coast Line*, 398 U.S. at 295 (emphasis added). Given that the *Equifax* MDL action is closed, with all matters and issues between the parties fully resolved, there is no reason to conclude that prosecution of SHS's state court action would impair the Court's ability to decide the litigation, much less "seriously" so. *See id.*; *see also Bayshore*, 471 F.3d at 1252.

Despite repeatedly suggesting that Plaintiff seeks to circumvent this Court's jurisdiction, Defendants do not and cannot demonstrate that SHS's state law claims would interfere with the adjudication of a closed case. *Ad hominem* attacks do not warrant an intrusion on the sovereignty of Tennessee courts.

      c.  *Defendants' Motion Must be Denied Under Burr & Forman v. Blair,*
           *Which Represents Controlling, On-Point Authority*

Defendants turn to other circuits to dig for cases that they attempt to wield in support of their motion, but completely ignore *Burr*, 470 F.3d 1019, binding authority from this Circuit that directly contradicts their position.[5]

---

[5] Defendants' cases are distinguishable. Unlike *Kaplan v. Reed Smith, LLP*, 919 F.3d 154 (2d Cir. 2019), decided under the relitigation exception, the Court's orders do not touch upon any elements of SHS's state claims. In contrast to *In re Linerboard Antitrust Litig.*, 361 F. App'x 392 (3d Cir. 2010), SHS does not request that the state court escrow part of the fee until its claims are resolved; its suit does not "directly implicate the res at issue in the MDL case." *Id.* at 396. Defendants' main case, *Giercyk* (D.N.J.), must be rejected as it conflicts with controlling law (*Burr*). Further, the agreement there specified that allocation of the fee was a requisite part of settlement implementation and set forth the criteria to be used ("the expenses incurred and the contributions of counsel"). 2018 WL 1469048, at *1-2 & n.2. Here the agreement does not address

*Burr* arose after the litigation and settlement of *Tolbert v. Monsanto*, a mass tort action in federal court. *Id.* at 1023. The district court awarded attorneys' fees to Burr & Forman to be paid out of a qualified settlement fund. *Id.* Another firm, Blair & Trussell, filed an action against Burr & Forman in state court seeking a declaration that it was entitled to 40% of the fee that had been awarded in *Tolbert*. *Id.* Burr & Forman removed that action and it was consolidated with *Tolbert*. *Id.* The district court entered an order enjoining Blair & Trussell from pursing any further state court litigation regarding the fee allocation. *Id.* at 1026. The Eleventh Circuit reversed, holding in relevant part that the Anti-Injunction Act barred an injunction against the state action. *Id.* at 1022.

In holding that the complex multistate litigation exception did not apply, the Eleventh Circuit distinguished *Battle* and *Wesch* (*id.* at 1032), explaining:

> *Battle* and *Wesch* do not stand for the broad proposition that the "necessary in aid of its jurisdiction" exception authorizes a federal court to issue injunctions in all

---

allocation, merely noting as an aside that Class Counsel (as opposed to the MDL parties or Court) will determine the distribution when the case is over. Dkt. 739-2 § 11-1.

Defendants also incorrectly assert that *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998), and *United States v. Am. Soc'y of Composers, Authors, & Publishers*, 442 F.2d 601, 603 (2d Cir. 1971), stand for the proposition that the Court's order providing for continued jurisdiction over the *Equifax* MDL action confers "exclusive" jurisdiction over any disputes related to that action. (Dkt. 1249) This is a clear misreading of both cases, which involved actions to enforce the terms of a settlement agreement and a district court's "exclusive jurisdiction to *enforce* a judgment." *Flanagan*, 143 F.3d at 545; *Am. Soc'y*, 32 F.2d at 731–32. SHS's state court action does not seek to enforce or contest the *Equifax* settlement agreement or this Court's judgment in the *Equifax* litigation. And *Burr* makes clear that a continued jurisdiction clause is not enough.

cases where it has retained jurisdiction to enforce a judgment incorporating a complex settlement. . . The simple fact that the district court in the present case entered a judgment implementing a settlement and retained jurisdiction over the settlement fund did not, standing alone, render the Injunction "necessary in aid of its jurisdiction." For an injunction properly to issue, the matter in controversy in the federal court proceeding must be "the virtual equivalent" of a controversy over disputed res in an *in rem* proceeding <u>and</u> ***the state court proceeding must constitute a threat to the federal court's resolution of that controversy***.

Like the state court plaintiffs in *Burr*, SHS seeks only money damages on its *in personam* claims against Defendants. Dkt. 1249-1 at 72–95. Those claims do not threaten this Court's resolution of the matter before it or "attack the substance of" the *Equifax* judgment. *See Burr*, 470 F.3d at 1033. A judgment in favor of SHS in the state court action "would not threaten the entitlement of the [*Equifax*] plaintiffs to their judgment;" and SHS does not "seek[ ] a lien on the money" awarded by the MDL court for attorneys' fees. *See id.* Therefore, for the reasons set forth in *Burr*, the "necessary in aid of its jurisdiction" exception to the Act does not apply.

### 2. Enjoining the Tennessee Chancery Court Action Would Not Serve to Protect or Effectuate this Court's Judgments

Defendants also fail to show that an injunction is needed to protect or effectuate this Court's judgments, known as the relitigation exception. This exception "is founded in the well-recognized concepts of *res judicata* and collateral estoppel"; it allows "a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Choo*, 486 U.S. at 147; *Klay*, 376 F.3d at 1104

("Proceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction."); *Wesch*, 6 F.3d at 1471 (exception "is essentially a res judicata concept designed to prevent issues that have already been tried in federal court from being relitigated in state court."); *Casale*, 2008 WL 2782740, at *5. Here, there is no order purporting to address the division of fees between the firms in the MDL action so the exception is inapplicable on its face.

*Res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). Four elements must be present for *res judicata* to apply: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.*

The Supreme Court has ruled that, in considering the relitigation exception, "every benefit of the doubt" regarding whether the requirements of res judicata have been met "goes toward the state court. [A]n injunction can issue only if preclusion is clear beyond peradventure." *Smith*, 564 U.S. at 307 (citation omitted). "Any doubt regarding whether the requirements of res judicata have been met will be resolved against interference with the state proceeding." *Burr*, 470 F.3d at 1030.

An injunction is not needed to protect or effectuate the Court's judgments: the Court has not entered judgment on any of the issues raised by SHS's Tennessee suit. SHS files claims for breach of fiduciary duty, breach of contract/breach of the covenant of good faith and fair dealing, quantum meruit, and unjust enrichment. Dkt. 1249-1 at 72–95. None of these claims were before the Court in the MDL—where the only parties are Equifax and the consumer class. Nor were they resolved by any of this Court's orders, because the Court has not made any rulings touching upon the division of fees between plaintiffs' counsel or the propriety of Defendants' actions in dividing those fees. This was not a matter at issue in the MDL action, including in connection with settlement approval. The controversy did not even arise until well into 2022, when Defendants assigned SHS its share of the fee and refused to consider an adjustment. None of the requisites of *res judicata* are met: the parties to the two suits are entirely distinct—(i) Equifax and its consumers *vs.* (ii) SHS and Co-Lead Counsel; SHS could not have pursued tort and contract claims in a resolved matter between other parties.

Defendants argue that SHS's suit is precluded by the Court's order requiring that attorneys secure authorization for work undertaken in this litigation and submit time reports to the Court (Dkt. 232). But SHS's complaint does not dispute these mandates. *See, e.g.*, Dkt. 1249-1 at 76 ¶ 17 ("As part of the adopted process for attorney time and expense submissions, SHS submitted their hours worked on the litigation to Defendants

each month, so that Defendants could review for appropriateness and submit to the court for *in camera* review."). The Court's orders would have their greatest implication if the case proceeded to trial and the MDL plaintiffs sought fee-shifting after being successful on the merits. Here, the Court awarded a fee as a percentage of a common settlement fund; the sole question presented in the state action is whether Defendants violated Tennessee law when they unilaterally fixed SHS's share after the case concluded.

Likewise, the order awarding attorneys' fees (Dkt. 956) did not resolve any of the issues implicated in SHS's state court action. SHS's claims do not contest or seek to undermine the Court's fee decision. *See, e.g.*, Dkt. 1249-1 at 84 ¶¶ 50–51. Rather, SHS alleges, once the total fee was set and the settlement funds distributed, Defendants breached Tennessee law in apportioning out its share.

Defendants are free to raise the arguments presented in their motion as they defend the state court case. Even assuming that this Court's orders might be raised as a defense in the Tennessee action, this would not justify an injunction against the suit. *See Love v. Blue Cross & Blue Shield Ass'n*, 2021 WL 949940, at *1 (S.D. Fla. Mar. 12, 2021) ("[A] court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'") (quoting 18C Wright & Miller, Fed. Prac. & Proc. § 4405 (2d ed. 2002)); *Smith*, 564 U.S. at 307 ("Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court."). The fact

that the Court's orders may have some tangential relevance to the claims does not warrant the extraordinary measure of an injunction barring a valid state court suit.

## II.   Defendants Acted in Bad Faith in Filing their Motion

### A.   Defendants Have Introduced a Host of Immaterial Evidence and Improperly Threaten to Seek Sanctions

The only thing actually at issue on Defendants' motion is whether the Court should enjoin the Tennessee suit based on the argument that SHS's claims belong exclusively in this forum. Yet Defendants include an extensive, one-sided presentation—briefing, declaration, and exhibits—on the background, substance, and merits of the action. All of this is window dressing designed to smear SHS and prejudice the Court against the firm. SHS will duly respond to Defendants' assertions at the proper procedural juncture.

Defendants also state that they will seek sanctions if SHS serves its complaint or otherwise pursues its claims. The Court cannot sanction SHS for filing suit in good faith in another forum—and certainly cannot issue sanctions based upon hypothetical actions that SHS has not yet taken. Defendants' suggestion is levied solely as a threat to deter SHS from its First Amendment right of access to the courts. It would be premature and improper for the Court to entertain sanctions. Nothing about SHS's case is frivolous, as it will demonstrate if a sanctions request is made in an appropriate posture.

### B.   Defendants Have Disclosed Confidential Settlement Communications for Illegitimate Purposes Without Making Any Effort to Show their Relevance to the Motion or to Place them Under Seal

Defendants have improperly filed confidential materials protected by FRE 408 as exhibits to the motion and reference their contents in a declaration and the motion. Dkt. 1249 at 13–15; Dkt. 1249-1 at 10–13 ¶¶ 16–18; *Id.* at 60–70. The communications are utterly irrelevant to Defendants' motion for injunctive relief; they have nothing whatsoever to do with the sole issue of whether the Tennessee suit should be enjoined under the All Writs Act. Their inclusion in Defendants' motion papers serves no conceivable purpose other than to harass, embarrass, and prejudice SHS. Accordingly, the Court should strike and remove the motion, exhibits, and declaration from the docket or place them under seal. The Court should order Defendants to file new motion papers that do not describe or reference the substance of settlement communications.

The presumption of public access to court records is not absolute. *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). It "may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Here, SHS's letter has no bearing on the motion at issue; Defendants filed it gratuitously for illegitimate reasons. The public does not need access to it to understand

the proceedings on the motion to enjoin the Tennessee suit. In contrast, FRE 408 reflects the strong federal interest in maintaining the confidentiality of such communications so that parties may freely explore settlement. *See* Advisory Committee Notes (rule is based on two key concerns: (1) that settlement overtures are "irrelevant" to the underlying claims and (2) "promotion of the public policy favoring the compromise and settlement of disputes.").[6] SHS's letter includes a proposed settlement figure and is clearly labeled as "Confidential Settlement Communication Subject to FRE 408." Dkt. 1249-1 at 61–66. Yet, Defendants publicly filed unredacted copies—along with their responsive letter, an attorney declaration, and their motion, all of which describe its substance.

Under similar circumstances, courts routinely seal settlement communications and related filings. *See, e.g.*, *Cha v. YP's Kani, Inc.*, 317 F. Supp. 3d 1215, 1216 (N.D. Ga. 2018) (finding good cause to seal settlement letter based on its irrelevance and inadmissibility under Rule 408); *Siemens Indus., Inc. v. SIPCO, LLC*, 2013 WL 2285564, at *2 (N.D. Ga. May 23, 2013) (good cause to seal filings that included terms of confidential settlement agreement); *Shears v. Mobile Cnty. Revenue Comm'n*, 2008 WL 4493234, at *1 & n.4 (S.D. Ala. Oct. 3, 2008) (granting motion to file settlement

---

[6] The Local Rules also reflect the importance of keeping settlement communications confidential by mandating that parties participating in alternative dispute resolution conferences "sign a form agreeing that any statements made or presented during the ADR conference are confidential and may not be used as evidence in any subsequent administrative or judicial proceeding." LR 16.7(I)(5), N.D. Ga.

under seal where agreement was "confidential and sensitive" and its terms were "largely immaterial" to the proceedings). This Court should follow suit here.

Defendants had no basis for filing confidential settlement communications on the Court's public docket. As experienced lawyers, they are well aware of the importance of maintaining the confidentiality of these communications, making clear that their actions were taken in bad faith. The Court should strike and remove the relevant materials from the docket and admonish Defendants for their effrontery.

## **CONCLUSION**

Despite Defendants' attempt to create a smoke-and-mirrors sideshow, the motion boils down to a simple request to enjoin the Tennessee suit under the All Writs Act. On that front, the answer is clear: Defendants do not surmount the strong presumption against injunctions on state court proceedings. None of the strict exceptions to the Anti-Injunction Act apply, as plainly set forth by the Eleventh Circuit under analogous circumstances in *Burr & Forman*. Further, Defendants have not shown that they are clearly entitled to the extraordinary remedy of an All Writs Injunction barring the state suit. The Court should ignore the noise, deny the motion, and allow the Tennessee action to proceed. Finally, the Court should strike and remove any settlement communications and references to the substance of such communications from the public docket.

Dated: March 6, 2023                    Respectfully submitted,

<u>**/s/ Halsey G. Knapp, Jr.**</u>
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
hknapp@khlawfirm.com
*Counsel for Sanford Heisler Sharp*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1(B), specifically, Times New Roman, 14 point.

This 6th day of March, 2023.

**/s/ Halsey G. Knapp, Jr.**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
*Counsel for Sanford Heisler Sharp*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF filing system, which will automatically send e-mail notification of such filing to all counsel of record. This 6th day of March, 2023.

> **/s/ Halsey G. Knapp, Jr.**
> Halsey G. Knapp, Jr.
> Georgia Bar No. 425320
> *Counsel for Sanford Heisler Sharp*