IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 <br> 1:17-MD-2800-TWT <br><br> CONSUMER CASES |

**EQUIFAX'S OPPOSITION TO OLIVER AND PRIDDY'S
MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

Defendants Equifax Inc. and Equifax Information Services LLC (collectively, "Equifax") submit this Opposition to Oliver and Priddy's Motion to Enforce the Settlement Agreement, Dkt. No. 1264. Anthony Oliver and Reginald Priddy ("Claimants") filed claims under the settlement Equifax reached with a nationwide consumer class in this MDL ("Settlement Agreement") to resolve claims arising from the cybersecurity incident that Equifax announced on September 7, 2017 ("Cybersecurity Incident" or "Data Breach"). JND, the court-appointed settlement administrator, approved and paid Priddy's claim in accordance with the terms of the Settlement Agreement. Oliver's claims, however, were denied due to his failure to provide information from which JND could match him to the class list.

Both Claimants take issue with how JND resolved their claims, but they chose not to raise their issues pursuant to the claims process outlined in the Settlement

Agreement. Instead, they have filed a motion in this MDL asking the Court to "vacate the settlement agreement, and enter judgment against Equifax." Mot. at page 5 of 11, Dkt. No. 1264. In support, Claimants include a series of preposterous allegations about Equifax and JND (and JND's CEO, Jennifer Keough) that have no basis in fact and which are solely meant to intimidate and harass—conduct which is consistent with Oliver's long and well-documented history of abusing the judicial system.

Claimants' Motion is frivolous, nonsensical and should be denied out of hand. At best, it appears to be a misguided attempt by Claimants to appeal JND's determination of their claims under the Settlement Agreement. But if that is their goal, the Settlement Agreement provides the exclusive remedy for raising those concerns, and the Settlement notices clearly advised them of how to do so. In any event, Claimants are not entitled to the other relief they seek—vacatur of the Settlement and a "judgment against Equifax." *Id*. The Motion should be denied.

## I.     RELEVANT BACKGROUND

### A. Oliver's History of Abusive Litigation

Oliver is known in this district and courts throughout the United States as a vexatious litigant who attempts to extract money from his victims through threats, falsehoods, and deceit. *See*, *e.g.*, Order Declaring Pl. To Be a Vexatious Litigant,

*Oliver v. Luner et al.*, No. 2:18-cv-02562 (C.D. Cal.), Dkt. No. 99, Ex. A. He has a "history of filing baseless lawsuits in federal and state court" "with no verdicts in his favor." *Id*. at 2, 4. Since at least 2010, he has filed over 35 lawsuits against various businesses, government entities, and public officials. *See id*. At 4-6 (collecting cases that Oliver has filed). The Northern and Southern Districts of Georgia have repeatedly dismissed Oliver's claims and denied him IFP status after three prior federal courts found his previous claims frivolous or without merit. R. & R., Dkt. No. 4, *Oliver v. Kemp*, 1:19-cv-05014-TCB-JFK (N.D. Ga. Nov. 20, 2019), *adopted* at Dkt. No. 6 (N.D. Ga. Dec. 11, 2019), Exs. B, C; R. & R., Dkt. No. 5, *Oliver v. Chex Sys., Inc.*, et al., 3:20-cv-0030-TCB-RGV (N.D. Ga. Mar. 2, 2020), *adopted over objection* at Dkt. 12 (N.D. Ga. Apr. 21, 2020), Exs. D, E. *Oliver v. Ameris Bank*, No. 4:20-cv-273, 2021 WL 3508680, at *6 (S.D. Ga. Aug. 10, 2021).

His claims generally follow the same formula. He alleges a make-believe "conspiracy between defendants" "'to reap [] financial benefits'" from Oliver and others—and typically asserts claims for torts, breaches of contract, or discrimination. *Oliver v. Cty. of Effingham*, No. CV418-120, 2019 WL 356803, at *2 (S.D. Ga. Jan. 29, 2019), *adopting R. & R.*, 2019 WL 1244715 (S.D. Ga. Mar. 18, 2019). The allegations are couched in "'hyperbole'" and "inflammatory accusations, unaccompanied by factual support." *Id*. at *2. Courts have observed that Oliver

"reiterat[es]" these "tactics" to "harass opposing parties." *Oliver v. Ameris Bank*, No. CV42;0-273, 2021 WL 3024291, at *3 (S.D. Ga. July 16, 2021), *adopting R. & R.*, 2021 WL 3508680 (S.D. Ga. Aug. 10, 2021). Indeed, setting aside the addition of Priddy, Claimants' Motion is nearly identical to the meritless lawsuit that Oliver filed against JND and Ms. Keough in Chatham County Superior Court, alleging they conspired to deny his Settlement claims because of personal animus, discrimination, and retaliation. Complaint, Ex. F, *Oliver v. JND Holdings, L.L.C.*, No. SPCV22-0681-WA (Chatham Cty. Super. Ct.); Oliver's Request to File Am. Compl., Ex. G, *Oliver v. JND Holdings, L.L.C.*, No. SPCV22-0681-WA (Chatham Cty. Super. Ct.); Equifax's Opp. to Pl.'s Request to File, Ex. H, *Oliver v. JND Holdings, L.L.C.*, No. SPCV22-0681-WA (Chatham Cty. Super. Ct.).[1]

For these reasons, courts have imposed pre-filing injunctions and bond requirements which preclude Oliver from making motions or initiating lawsuits without a judge's prior approval.[2] Oliver has attempted to evade those restrictions

---

[1] The Chatham County Superior Court has not addressed the substance of any of Oliver's claims.

[2] The Southern District of Georgia has required that Oliver's complaints be forwarded to a "miscellaneous file" and dismissed after thirty days unless a reviewing judge determines it states a claim, and that he post a $1,000 contempt bond declaring under penalty of perjury that the facts asserted are true and accurate. *Oliver v. Ameris Bank*, No. 4:20-CV-273, 2021 WL 3508680, at *3 (S.D. Ga. Aug.

4

by recruiting supposed co-plaintiffs to join his filings. Thus, courts have observed Oliver's "persistent failure to abide by . . . the conditions imposed." *Oliver v. Cty. of Effingham*, 2019 WL 356803, at *1.

Oliver is currently engaging in his ongoing abuse of the court system from jail. Following a September 26, 2019 trial in Chatham County Superior Court, a jury convicted Oliver of aggravated stalking, criminal attempt to commit a felony, and making a false statement. *See* Sentencing Order, Ex. I. These convictions related to his violation of a protective order entered for the benefit of his children's mother after Oliver had harassed, intimidated, physically attacked, and chased them throughout five states over a period seventeen years. Article at 2, Ex. I.

### B. JND'S Claims Determinations

The Court's final approval of the Settlement (later affirmed by the Eleventh Circuit) approved the claims process set forth in the Settlement Agreement. Final Order and Judgment, Dkt. No. 957; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021). As relevant here, the Settlement Agreement

---

10, 2021). The Central District of California has ordered that he must "obtain leave of court before filing any additional lawsuits." *Oliver v. Luner*, No. 2:18-cv-2562 (C.D. Cal. Sept. 26, 2018), Dkt. No. 99 at 1, 9, Ex. A. Finally, any legal document that Oliver seeks to make in Chatham County Superior Court must be submitted for screening to the clerk of court in a "Request to File" and the document only becomes docketed and effective "after consideration of the merits and [Oliver's] record." Sentencing Order at 6, Ex. I.

"establishe[d] a process for claiming benefits under the settlement, including reimbursement for [1] out-of-pocket losses relating [to] the breach; [2] reimbursement for time spent remedying issues relating [to] the breach . . . and [3] alternative cash payments for those settlement class members who already have some form of credit monitoring." Settlement Agreement at 119-120 of 295, Dkt. No. 739-2. The Settlement Agreement instructed Class Members to "submit Claim Forms to the Settlement Administrator," *id*. at 24 of 295, who would "review, determine the validity of, and process all claims submitted by Settlement Class Members." Settlement Agreement Ex. 9 - Claims Administration Protocol ("Claims Administration Protocol") at 285 of 295, Dkt. No. 739-2. Specifically, the Court appointed JND as the settlement administrator responsible for those tasks. Order Directing Notice at 5-7, Dkt. No. 742; *see* Settlement Agreement at 24 of 295, Dkt. No. 739-2 (stating the "Settlement Administrator shall apply the Claims Administration Protocol.").

      The Settlement Agreement and Claims Administration Protocol provide JND certain objective criteria by which to evaluate claims. For out-of-pocket expenses, JND must, in the first instance, "verify that each person who submits a Claim Form is a Settlement Class Member" and then "mak[e] a determination as to whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Data Breach." *Id*.

JND may approve "Claims for Time" at $25 per hour spent remedying or taking preventative measures against "fraud, identity theft, or other alleged misuse of the Settlement Class Member's [PII] fairly traceable to the Data Breach" that is supported by either "Reasonable Documentation" or the Settlement Class Member's attestation. *Id*. at 25-26 of 295. And JND may approve "a claim for Alternative Reimbursement Compensation" for a Settlement Class Member who certifies they have and will keep their existing credit monitoring service for at least six months from when they file their claim. Claims Administration Protocol at 288 of 295, Dkt. No. 739-2.[3]

The Settlement Agreement sets forth procedures for deficient claims. Within 14 days of determining any claim is deficient, JND must provide notice of the same and give the claimant 30 days to cure, dispute the determination in writing, or request an appeal. Settlement Agreement at 26-27 of 295, Dkt. No. 739-2. Should the claimant appeal, Class Counsel and Defendants' Counsel resolve the dispute by agreement, or if they cannot agree, a "mutually-agreeable neutral" claims referee

---

[3] The Settlement Agreement provided that if payments for time spent and credit monitoring services exceeded certain capped amounts, then all payments to subsequent claimants would be reduced and distributed on a proportional or "pro rata" basis. Settlement Agreement at 17 of 295, Dkt. No. 739-2.

makes a decision which is "final and not subject to appeal or further review." *Id*. at 27-28 of 295.

Relevant here, Oliver submitted three claims to JND in March and April 2022 seeking out-of-pocket expenses totaling over $30,000 and more than 330 hours allegedly spent trying to address identity theft. Decl. of G. Eoff ¶ 4, Ex. K. On March 31, 2023, JND issued Oliver a notice of deficiency because he could not be matched to the class list based on the information he had provided, and JND advised him that he needed to respond with additional information by May 1, 2023. *Id*. ¶ 5. As of the date of this filing, JND had not received a response from Oliver. *Id*. Priddy alleges that he submitted a claim seeking $250. Mot. ¶ 5. But JND's records show that he only submitted a claim for "Alternative Reimbursement Compensation." Decl. of G. Eoff ¶ 6, Ex. J. In any event, JND approved Priddy's request, and payment was issued to him via a pre-paid debit card that has since been redeemed. *Id*. Priddy does not contend he filed an appeal of his claim, nor does JND have a record of any such appeal.

### C. Claimants' Motion

Apparently dissatisfied with JND's determination of their claims, Claimants filed the instant Motion on April 21, 2023.[4] Although styled a "Motion to Enforce Settlement Agreement," Claimants ask the Court to "vacate the settlement agreement, and enter judgment against Equifax" for $5,016.72 in favor of Oliver and $250 in favor of Priddy, in addition to costs and expenses. *Id.* ¶ 7 & Conclusion.

In support of their Motion, Claimants include a set of outlandish accusations against Equifax and JND. Claimants assert, among other things, that JND and Equifax "have acted in bad faith in refusing to execute the formal settlement agreement" in retaliation against Oliver for filing previous lawsuits against JND. Mot. ¶ 9, Dkt. No. 1264. For his part, Priddy asserts that JND denied his claim after somehow "discovering" that he and Oliver "were close friends." *Id.* ¶ 5. They further allege that JND and Ms. Keough endeavor to deny claims so they can "keep and embezzle" money "left over in the class fund." *Id.* ¶ 4.

## II.    ARGUMENT

As is readily apparent from the face of this Motion, Claimants' allegations are entirely fabricated and intended solely to harass Equifax and JND. Claimants'

---

[4] Claimants filed their Motion *pro se*. However, after they filed their Motion, an attorney representing Oliver (but not Priddy) filed a very similar motion in this Court. *See* Dkt. No. 1266. Equifax will respond to that motion separately.

assertions that JND "gets to keep" money in the Consumer Restitution Fund or that Equifax and JND are "refusing to execute the formal settlement agreement" strain credulity and are proven false by the plain terms of the Settlement Agreement. *Id*. ¶ 4, 9. Regardless, Claimants are not entitled to any of the relief they seek.

### A. Claimants' Allegations Are False and Abusive

To start, Claimants' assertion that JND and Ms. Keough conspired to enrich themselves by profiting from unremitted money in the Consumer Restitution Fund is, of course, false. JND's compensation is not determined by the amount remaining in the Consumer Restitution Fund after claims payments are processed. Rather, JND is paid "Administrative Costs" it incurs out of the Consumer Restitution Fund for performing specified tasks. Settlement Agreement at 13, 28 of 295, Dkt. No. 739-2. Indeed, JND does not have authority to withdraw money from the Consumer Restitution Fund unless "expressly authorized" by the Settlement Agreement or "approved by the Court." *Id*. at 13 of 295.

Equally absurd is Claimants' assertion that Equifax somehow acted in bad faith when processing their Settlement claims. The Settlement Agreement does not confer upon Equifax any responsibility to review or process Settlement claims. Equifax's only obligation related to Settlement claims was to deposit the "non-reversionary settlement payment" into the Consumer Restitution Fund from which

10

claims are paid. *Id*. at 12 of 295. There is no dispute that Equifax performed that obligation. Moreover, any remaining funds in the Consumer Restitution Fund will not revert to Equifax.

Claimants' remaining allegations are equally absurd, designed solely to harass, and they do not warrant a detailed response. As just one example, Claimants assert that JND has denied Settlement claims "based on race, gender, [and] sexual orientation (Mot. ¶ 3, Dkt. No. 1264)—which is, of course, impossible because none of that information has been provided to JND in connection with its administration of the Settlement. These false accusations should be ignored.

### B. Claimants Are Entitled to No Relief From This Court.

Putting aside Claimants' false and abusive allegations, their motion fails to identify any relief to which they are entitled. As an initial matter, the "Disputes and Appeals" process set forth in the Settlement Agreement provides the exclusive remedy for Oliver and Priddy's complaints about how their Settlement claims were handled. Settlement Agreement at 26 of 295, Dkt. No. 739-2. Courts have repeatedly found they have "no authority to require reconsideration of the denied claims" in a class action settlement where, as here, the settling parties agreed that claims determinations made by neutral claims reviewers (like JND here) would be final. *In re Black Farmers Discrimination Litig.*, 29 F. Supp. 3d 1, 5 (D.D.C. 2014);

*see Atchison v. U.S. Dist. Cts.*, 190 F. Supp. 3d 78, 94 (D.D.C. 2016) (stating, "The Settlement Agreement is clear: Track B determinations are not subject to review.").

Moreover, Claimants should not be allowed to challenge JND's determinations when they have not complied with the Disputes and Appeals process set forth under the Settlement Agreement. If Oliver took issue with JND's deficiency notice or handling or his claims, he could have simply submitted the additional information that was requested from him. He did not. And if either Claimant disagreed with JND's claims determination, the Settlement Agreement guaranteed review *as of right* by Class Counsel and Defendants' Counsel, and a neutral claims referee if they could not agree on a resolution. Settlement Agreement at 27 of 295, Dkt. No. 739-2. In sum, Claimants have no authority under the Settlement Agreement to ask this Court to intervene in the claims process, especially when they have not complied with the provisions set forth in the Settlement Agreement.

Finally, Claimants have no legal basis to "vacate" the Settlement Agreement, which was incorporated into and given "full effect" by the Final Order and Judgment of this Court—and which was affirmed in relevant part by the Eleventh Circuit. Final Order at 9, Dkt. No. 947; Opinion, Dkt. No. 1203. Likewise, Claimants have identified no basis for this Court to "enter judgment against Equifax"—whatever

that means—given that Equifax has fully complied with its obligations under the Settlement Agreement.

### III.    CONCLUSION

For the reasons stated above, Claimants' motion should be denied.

Respectfully submitted this 9th day of May, 2023.

/s/ *S. Stewart Haskins II*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
Elizabeth D. Adler
Georgia Bar No. 558185
John C. Toro
Georgia Bar No. 175145
Robert D. Griest
Georgia Bar No. 294216
Elijah T. Staggers
Georgia Bar No. 903746
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
dbalser@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com
eadler@kslaw.com
jtoro@kslaw.com
rgriest@kslaw.com
estaggers@kslaw.com

*Counsel for Equifax Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Motion was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 9th day of May, 2023.

> */s/ S. Stewart Haskins II*
> S. Stewart Haskins II

# CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II
