# EXHIBIT G

**IN THE SUPERIOR COURT OF THE EASTERN JUDICIAL CIRCUIT
STATE OF GEORGIA**

ANTHONY OLIVER,
JOHN ANDERSON,

      Plaintiff,

VS.

JND HOLDINGS, L.L.C.,
JENNIFER KEOUGH; EQUIFAX
INFORMATION SERVICES, L.L.C.;
and DOES 1-10, inclusive.

      Defendants.

Case No.:  <u>SPCV22-00681-WA</u>

### PLAINTIFF ANTHONY OLIVER'S REQUEST TO FILE LITIGATION

**AND NOW**, Plaintiff Anthony Oliver, named above, and files this proposed action, and request to file litigation against the Defendants, and shows the Court the following:

1.

The Plaintiff Anthony Oliver, pursuant to the Sentence in **SPCR19-02076-J4** is required to file this request prior to the filing of any civil action or lawsuit in this circuit and is attached hereto as **Exhibit A.**

1

2.

The Plaintiffs seek to file Plaintiff Anthony Oliver and John Anderson's Motion for Leave to Amend, the Summons, First Amended Complaint. All of which are attached hereto as **Exhibit B & C.**

3.

Plaintiff Anthony Oliver certifies that he has mailed a copy of this proposed filing to Edward Philbin at his address of Augusta State Medical Prison located at 3001 Gordon Highway, Grovetown, Georgia 30813.

4.

Plaintiff Anthony Oliver further certifies that he will gladly mail a copy of this proposed filing to the Chief or Assigned Judge of the Eastern Judicial Circuit as the Georgia Department of Corrections, the tax payers, and the State of Georgia is now required to pay for the copies, envelopes, postage, and notary as Plaintiff Oliver is now indigent.

## CONCLUSION

**WHEREFORE**, Plaintiff Anthony Oliver requests from the Court the following relief:

1.      That Plaintiff be allowed to file the proposed pleadings;


Submitted,


Dated: _____         _____
                                    Anthony Oliver, # 1002060648
                                    Augusta State Medical Prison
                                    3001 Gordon Highway
                                    Grovetown Georgia 30813


                                    Submitted,


Dated: _____         _____
                                    John P. Anderson, Plaintiff Pro Se
                                    22 W. Bryan Street, # 174
                                    Savannah Georgia 31401


2

## IN THE SUPERIOR COURT OF THE EASTERN JUDICIAL CIRCUIT
## STATE OF GEORGIA

ANTHONY OLIVER, *et al.*

      Plaintiff,

VS.

JND HOLDINGS, L.L.C., *et al.*

      Defendants.

Case No.:  <u>SPCV22-00681-WA</u>

### CERTIFICATE OF SERVICE

This is to certify that I have this date served upon counsel for the opposing party in the forgoing matter a copy of the **PLAINTIFFS REQUEST TO FILE,** by first-class mail of the United States Postal Service in an envelope properly addressed with adequate postage thereon addressed to all parties, and a copy transmitted through this Court's odessey program to:

KING & SPAULDING, L.L.P
1800 Peachtree Street N.E.
Atlanta Georgia 30309

Bouhan Falligant, L.L.P.
One West Park Avenue
Savannah Georgia 31401

Dated:  _____

      _____
Anthony Oliver, # 1002060648
Augusta State Medical Prison
3001 Gordon Highway
Grovetown Georgia 30813

Dated:  _____

      _____
John P. Anderson, Plaintiff Pro Se
22 W. Bryan Street, # 174
Savannah Georgia 31401

PLAINTIFF ANTHNOY OLIVER'S REQUEST TO FILE LITIGATION

# EXHIBIT A

PLAINTIFF ANTHNOY OLIVER'S REQUEST TO FILE LITIGATION

## IN THE SUPERIOR COURT OF CHATHAM COUNTY, STATE OF GEORGIA

**FILED IN OFFICE**

| STATE OF GEORGIA versus | Clerk to complete if incomplete FEB P 3 27 |
|---|---|

**ANTHONY ALLEN OLIVER**
**CRIMINAL ACTION #**

| OTN(s): | |
|---|---|
| DOB: | 9/8/1981 |
| Ga. ID # | |

DEP CLK SUPERIOR CT.
CHATHAM COUNTY, GA

**SPCR19-02076-J4**

June Term of 2019

| Final Disposition |
|---|
| **FELONY with PROBATION / SUSPENDED SENTENCE** |

| First Offender/Conditional Discharge entered under: | PLEA / VERDICT: |
|---|---|
| ☐ OCGA § 42-8-60 _____  ☐ OCGA § 16-13-2 _____ | **Jury** |
| ☑ Repeat Offender as imposed below | |
| ☐ Repeat Offender waived _____ | |

| Concurrent Cases | |
|---|---|

The Court enters the following judgment

| Count | Charge (as indicted or accused) | Disposition (Guilty, Not Guilty, Guilty-Alford, Guilty-Lesser Incl., Nolo, Nol Pros, Dead Docket) | Sentence | Fine | Concurrent/ Consecutive Merged, Suspended |
|---|---|---|---|---|---|
| 1 | Aggravated Stalking | Guilty | 10 Years to Serve | | |
| 2 | Criminal Attempt to Commit a Felony | Guilty | 5 Years to Serve | | Consecutive to Ct 1 |
| 3 | Making s False Statement | Guilty | 5 Years to Serve | | Consecutive to Ct 2 |

The Defendant is adjudged guilty or sentenced under the First Offender/Conditional Discharge for the above-stated offense(s); the Court sentences the Defendant to confinement in such institution as the Commissioner of the State Department of Corrections or the Court may direct, with the period of confinement to be computed as provided by law.

**Sentence Summary:** The Defendant is sentenced to a total of 20 years to serve.

**ENTERED CMIN**   OCT 1 6 2019

The Defendant is to receive credit for time served in custody:

| | | |
|---|---|---|
| ☐ | from __. | |
| ☑ | As determined by the custodian. | |
| ☐ | 1. The above sentence may be served on probation provided the Defendant shall comply with the Inventory of Conditions of Probation / Suspended Sentence imposed by the Court as part of this sentence. | |
| ☐ | 2. | |
| ☑ | 3. The Court sentences the Defendant as a recidivist under O.C.G.A.: | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ☑ | § 17-10-7(a); | ☐ | § 17-10-7(c); | ☐ | § 16-7-1(b); | ☐ | § 16-8-14(b); | ☐ § |

State of Georgia v. <u>ANTHONY ALLEN OLIVER</u>
Criminal Action # <u>SPCR19-02076-J4</u>
SC-6.2 Final Disposition Felony Sentence With Probation / Suspended Sentence
Page **2** of 4

## GENERAL CONDITIONS OF PROBATION / SUSPENDED SENTENCE

The Defendant is subject to arrest for any violation of probation. If probation is revoked, the Court may order incarceration. The Defendant shall comply with the following General Conditions of Probation / Suspended Sentence: 1) Do not violate the criminal laws of any governmental unit and be of general good behavior. 2) Avoid injurious and vicious habits. 3) Avoid persons or places of disreputable or harmful character. 4) Report to the Probation Officer as directed and permit the Probation Officer to visit you at home or elsewhere. 5) Work faithfully at suitable employment insofar as may be possible. 6) Do not change your place of abode, move outside the jurisdiction of the Court, or leave Georgia without permission of the Probation Officer. If permitted to move or travel to another state, you agree to waive extradition from any jurisdiction where you may be found and not contest any effort by any jurisdiction to return you to this State. 7) Support your legal dependents to the best of your ability. 8) When directed, in the discretion of the Probation Officer: (a) submit to evaluations and testing relating to rehabilitation and participate in and successfully complete rehabilitative programming; (b) wear a device capable of tracking location by means including electronic surveillance or global positioning satellite systems; (c) complete a residential or nonresidential program for substance abuse or mental health treatment; and/or (d) agree to the imposition of graduated sanctions as defined by law. 9) Make restitution as ordered by the Court.

**FINE SURCHARGES or ADD-ONs:** The Court assesses all fine surcharges or add-ons as required by the laws of the State of Georgia and as are applicable to offense(s) for which the Defendant has been convicted.

1) The Court orders that: ☐ the Defendant shall pay the probation supervision fee as required by law, or ☐ the probation supervision fee is waived.
2) If Counsel was provided under the Georgia Indigent Defense Act: ☐ the Defendant shall pay the $50 Public Defender Application Fee; or ☐ the Public Defender Application Fee is waived.
3) If counsel was provided at public expense: ☐ the Defendant shall pay attorney's fees of $___ to _____ County; or ☐ attorney's fees are waived.
4) The Defendant shall pay the Crime Lab fee as required by law – (None).

## SPECIAL CONDITIONS OF PROBATION / SUSPENDED SENTENCE

The Defendant is advised that violation of any Condition of Probation may subject the Defendant to a revocation of probation and the Court may require the Defendant to serve up to the balance of the sentence in confinement. The Defendant shall comply with all Special Conditions of Probation: ☑ as designated on the attached Inventory of Conditions of Probation; or ☐ as follows:
*(import conditions to be imposed from Inventory of Conditions of Probation)*

## FIRST OFFENDER OR CONDITIONAL DISCHARGE
### (if designated by the Court)

The Defendant consenting hereto, it is the judgment of the Court that no judgment of guilt be imposed at this time but that further proceedings are deferred and the Defendant is hereby sentenced to confinement at such institution as the Commissioner of the State Department of Corrections or the Court may direct, with the period of confinement to be computed as provided by law.

Upon violation of the terms of probation, upon conviction of another crime during the period of probation, or upon the Court's determination that the Defendant is or was not eligible for sentencing under the First Offender Act or for Conditional Discharge, the Court may enter an adjudication of guilt and proceed to sentence the Defendant to the maximum sentence as provided by law.

State of Georgia v. ANTHONY ALLEN OLIVER
Criminal Action # SPCR19-02076-J4
SC-6.2 Final Disposition Felony Sentence With Probation / Suspended Sentence
Page 3 of 4

Upon fulfillment of the terms of this sentence, or upon the release of the Defendant by the Court prior to the termination of this sentence, the Defendant shall stand discharged of said offense without court adjudication of guilt and shall be completely exonerated of guilt of said offense charged.

*For Court's Use*

All conditions of probation set forth in this Order are also to be established as conditions of parole, if parole is granted to this Defendant.

The Hon. Martin Hilliard, Attorney at Law, represented the Defendant, by ☑ employment; or ☐ appointment.

SO ORDERED this 10 day of OCTOBER, 20 19

Timothy R. Walmsley
Judge of Superior Court
Eastern Judicial Circuit

**FIREARMS** – If you are convicted of a crime punishable by imprisonment for a term exceeding one year, or of a misdemeanor crime of domestic violence where you are or were a spouse, intimate partner, parent, or guardian of the victim, or are or were involved in another similar relationship with the victim, it is unlawful for you to possess or purchase a firearm including a rifle, pistol, or revolver, or ammunition, pursuant to federal law under 18 U.S.C. § 922(g)(9) and/or applicable state law.

**Acknowledgment:** I have been provided with a copy of the sentence. I have read the terms of this sentence or had them read and explained to me. If all or any part of this sentence is probated or suspended I certify that I understand the meaning of the order of probation and the conditions of probation. I understand that violation of a special condition of probation or suspended sentence could result in revocation of all time remaining on the period of probation or suspended sentence.

☐ | Defendant Entered Plea with assistance of an interpreter

*Not Available to Sign*
Defendant

State of Georgia v. ANTHONY ALLEN OLIVER
Criminal Action # SPCR19-02076-J4
SC-6.2 Final Disposition Felony Sentence With Probation / Suspended Sentence
Page 4 of 4

# INVENTORY OF CONDITIONS OF PROBATION / SUSPENDED SENTENCE

These conditions are hereby incorporated into the Defendant's sentence by reference. The Defendant is advised that violation of any Special Condition of Probation / Suspended Sentence may subject the Defendant to a revocation of the balance of the period of probation and the Defendant may be required to serve up to the balance of the sentence in confinement.
*(Judge to designate conditions to be applied.)*

| | |
|---|---|
| 1) | **The Defendant shall report to the DCS Office** at Chatham County, Georgia by no later than <u>as directed by DCS</u>. Defendant shall only be allowed into Chatham County upon the direct instruction of DCS and for no other reason. |
| 2) | **Fourth Amendment waiver.** The Defendant shall submit to a search of person, residence, papers, vehicle, and/or effects at any time of day or night without a search warrant, whenever requested to do so by a Probation Officer or other law enforcement officer upon reasonable cause to believe that the the Defendant is in violation of probation or otherwise acting in violation of the law, and the Defendant shall specifically consent to the use of anything seized as evidence in any judicial proceedings or trial. |

| 3) | **Limited or no contact.** The Defendant shall: | | |
|---|---|---|---|
| | ☐ | stay __ yards away from | ☐ have no violent contact with |
| | ☑ | have no contact of any kind, in person, or by telephone, mail, or otherwise, | |
| | | with <u>Crystal Field, Destiny Field, all witnesses, and all jurors appearing in the case</u> | |
| | ☑ | or with his/her family members | ☐ and the Defendant shall not enter the premises of __. |

| | |
|---|---|
| 4) | **Harassment, threats.** The Defendant shall not harass, threaten, intimidate, physically or verbally abuse, or harm the following person(s): <u>Crystal Field, Destiny Field, all witnesses in the case, all jurors in the case.</u> |
| 5) | **Family Violence Intervention Program (FVIP).** The Defendant has been convicted of a crime involving family violence and is required to participate in a Family Violence Intervention Program certified by the State. |
| 6) | **Records release.** The Defendant shall provide a release which allows the Department of Community Supervision to have access to all medical, clinical, treatment, attendance or work records, and for driving and criminal history. |

| 7) | **Evaluation and treatment.** The Defendant shall provide verification of evaluation and/or treatment for: | | |
|---|---|---|---|
| | ☑ mental health | ☐ substance abuse | ☐ clinical evaluation |
| | ☑ anger management | ☐ cognitive skills training | |
| | ☐ educational training | ☐ or, | |
| | at a State- or Court-approved provider at his/her own expense, and shall cooperate and comply with all rules and regulations of the treatment or program, including any aftercare deemed necessary. | | |

| 8) | **Bar order.** The Defendant shall not enter the confines of: | |
|---|---|---|
| | ☐ __ County or | ☒ the 1st, 2nd, 8th and 10th Judicial Districts |
| | during the period of probation for any reason whatsoever | |

| | |
|---|---|
| 9) | **Stalking or Aggravated Stalking special conditions.** The Defendant is subject to Special Conditions of Probation for violation of O.C.G.A. §§ 16-5-90 or 16-5-91. These conditions are described more fully on a separate page which is incorporated into this sentence by reference. |

**10)** **Other special condition(s).** The Defendant shall abide by the following additional special condition(s):

Defendant.agrees to violate no law
Defendant waives extradition if arrested in another state or country and agrees not to contest any effort to return him/her to the State of Georgia and the jurisdiction of this court.
Defendant consents and surrenders all rights to property held by Police in evidence.

**Special Condition (filing):** The evidence submitted in this case demonstrates that the Defendant has continuously and relentlessly filed frivolous lawsuits and made other unmeritorious legal claims against a named victim as well as numerous other individuals. He has filed frivolous claims and/or been deemed a vexatious litigant in Federal Court in both Georgia and California. (See, trial exhibits). Oliver has asserted claims and positions in numerous filings, with respect to which there existed an absence of any justiciable issue of law or fact, which the Defendant could not have reasonably believed that a court would accept said claims and/or positions. As such, and in accord with Higdon v. Higdon, 321 Ga. App. 260, 739 S.E.2d 498 (2013), a Special Condition of this sentence shall be that before filing any new actions, motions or petitions in the State of Georgia, the Defendant shall satisfy the following conditions:

(1) Oliver must file a "Request to File," in the Clerk of Court's Office in the jurisdiction in which he intends to file; (2) he shall attach the document he wishes to file to the "Request," as an "Exhibit A"; (3) he shall attach to any such pleading, motion, petition, or any other filing, a copy of this Order as an "Exhibit B"; (4) he shall present a courtesy copy of the "Request", along with the Exhibits, to the assigned Judge at their professional address; and (5) he shall provide a copy of the "Request", along with the Exhibits, to either the Georgia Department of Corrections Warden or Department of Community Supervision ("DCS") Officer then assigned to supervise the Defendant.

The Court with jurisdiction, in its discretion, and after consideration of the merits and Defendant's record, may accept or deny the Request. The Court notes that this order does not enjoin Oliver from future filings, but instead mandates as a condition on his sentence that Oliver observe certain conditions before filing.

**Special Condition (Protective Order):** On September 14, 2018 (*nunc pro tunc* to August 31, 2018), in SU17DR450P, the Superior Court of Effingham County entered a Permanent Family Violence Protective Order against the Defendant. All conditions and restrictions contained in that Order are fully incorporated herein as Special Conditions of the Defendant's sentence.

All Special Conditions may also be enforceable through the Georgia Department of Corrections while the Defendant is under sentence.

State of Georgia v. ANTHONY ALLEN OLIVER
Criminal Action # SPCR19-02076-J4
SC-6.4(B) Inventory of Special Conditions
Page **2** of **3**

SO ORDERED this __W 2__ day of __October__, __2019__

_____
Timothy R. Walmsley
Judge of Superior Court
Eastern Judicial Circuit

**Acknowledgement:** I have read the terms of this document or had them read and explained to me. I understand that the violation of a special condition of probation or suspended sentence could result in revocation of all time remaining on the period of probation or suspended.

_Not Available to Sign_____
Defendant

State of Georgia v. ANTHONY ALLEN OLIVER
Criminal Action # SPCR19-02076-J4
SC-6.4(B) Inventory of Special Conditions
Page **3** of 3

## SPECIAL CONDITIONS OF PROBATION / SUSPENDED SENTENCE FOR VIOLATION OF
## O.C.G.A. §§ 16-5-90 OR 16-5-91
### (Stalking or Aggravated Stalking)

These conditions imposed by O.C.G.A. § 42-8-35.3 are hereby incorporated into the Defendant's sentence by reference. The Defendant is advised that violation of any Special Condition of Probation / Suspended Sentence may subject the Defendant to a revocation of the balance of the period of probation or suspension and the Defendant may be required to serve up to the balance of the sentence in confinement.

| | |
|---|---|
| ☑ | The Defendant is prohibited from engaging in conduct which is a violation of O.C.G.A. §§ 16-5-90 (Stalking) or 16-5-91 (Aggravated Stalking). |
| ☑ | The Defendant shall undergo a mental health evaluation and receive such treatment as determined necessary by the Court. |
| ☑ | The Defendant shall not enter or remain present at <u>Crystal Field, Destiny Field</u>'s school, place of employment or business, |
| ☐ | and the Defendant shall not enter or remain at __ at times when the named person(s) is present. |

SO ORDERED this _11²_ day of _October_, _2019_

_____
Timothy R. Walmsley
Judge of Superior Court
Eastern Judicial Circuit

**Acknowledgement:** I have read the terms of this document or had them read and explained to me. I understand that the violation of a special condition of probation / suspended sentence could result in revocation of all time remaining on the period of probation or suspension.

<u>Not Available to Sign</u>
Defendant

State of Georgia v. <u>ANTHONY ALLEN OLIVER</u>
Criminal Action # <u>SPCR19-02076-J4</u>
SC-6.4(E) Special Conditions of Probation / Suspended Sentence for Violation of O.C.G.A. §§ 16-5-90 or 16-5-91 (Stalking or Aggravated Stalking)
Page 1 of 1

# EXHIBIT B

PLAINTIFF ANTHNOY OLIVER'S REQUEST TO FILE LITIGATION

**IN THE SUPERIOR COURT OF THE EASTERN JUDICIAL CIRCUIT
STATE OF GEORGIA**

ANTHONY OLIVER,                    Case No.:  SPCV22-00681-WA
JOHN ANDERSON,

     Plaintiff,


VS.



JND HOLDINGS, L.L.C.,
JENNIFER KEOUGH; EQUIFAX
INFORMATION SERVICES, L.L.C.;
and DOES 1-10, inclusive.

     Defendants.


**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND TO
FILE FOR A FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**

    **COMES NOW**, Plaintiffs [1] Anthony Oliver, and John Anderson,  named above and

files this brief in support of Motion for leave to amend to file a First Amended Complaint for

damages against the Defendants, and shows the Court the following in support of the

proposed First Amended Complaint for Damages and Injunctive Relief:

    In support of their Motion, the Plaintiffs show this Court the following:

---

[1]    The Plaintiffs have filed a Motion to Transfer Venue to Gwinette County where Equifax
maintains a registered agent. The Plaintiffs request that the Venue Motion be resolved first
as this Motion may be moot if the Venue Motion is granted.

1

## I.   BACKGROUND

Plaintiffs are victims of one the biggest data breach in modern day history. Their personal information was compromised when Defendant Equifax Information Services, L.L.C., ("EQUIFAX"), allowed third-parties to steal the Plaintiffs, and millions more, personal information, to only turn a blind eye. Defendant EQUIFAX was later sued by a myriad of Plaintiffs, and their attorneys in the United States District Court, in the Northern District of Georgia.

With no end in sight, Defendant EQUIFAX was under pressure by numerous State and Federal agencies to fix the problems. Instead of doing so, Defendant EQUIFAX elected to settle the class action lawsuit. Defendant EQUIFAX petitioned the federal Court to have Washington State Corporation, and local scam artists JND Holdings, LLC., ("JND"), and its President Jennifer Keough, ("KEOUGH"), appointed as the class action administrator that would be responsible with issuing payments to the Plaintiffs in this case. Rather then pay the Plaintiffs their claims, JND and KEOUGH decided to steal the Plaintiffs money, and use it for illegal purposes. Admittedly, Defendants JND and KEOUGH were sued by Plaintiff Anthony Oliver in federal Court for allegations and violations of the Fair Standards Labor Act, ("FLSA"), in the South Carolina federal Court. JND and KEOUGH are refusing to pay the Plaintiffs due to the FLSA lawsuit that exposed JND and KEOUGH to high levels of corruption.

The Plaintiffs, appearing pro se, have no located over eighty-five (85) Plaintiffs in Georgia alone whom EQUIFAX, JND, and KEOUGH have refused to pay. And now they seek to amend their complaint to add all eighty-five Plaintiffs, and more then a dozen causes of actions under violations of State and Federal law for, among other things, Racketeering Influenced and Corrupt Organizations Act violations under State and Federal law. This Motion will also seek to add more allegations that have become known to the Plaintiffs since their investigation. The Plaintiffs respectfully requests leave to file a First Amended Complaint for damages, declaratory, injunctive, and permanent relief.

The Plaintiffs contacted EQUIFAX and its counsel prior to the filing of this Motion, and neither one of them would stipulate to the Plaintiffs file a First Amended Complaint for damages, declaratory, injunctive, and permanent relief.

2

## II.    LEGAL ARGUMENT

Plaintiff seeks to file a First Amended Complaint in this case by adding and dropping some causes of actions with respect to fraud, breach of contract, misrepresentation, breach of fiduciary duty, interference with economic advantage, as well as interference with contractual relations. Further, the Plaintiff needs to amend the complaint to add the correct entity name of the Defendant Equifax, Inc., and two Equifax entities as additional Defendants to this action.

O.C.G.A. § 9-11-15(a) provides a party may amend their pleading as a matter of course and without leave of Court at anytime before the entry of a pretrial order. Thereafter, the party may amend their pleading only by leave of Court or by written consent of the adverse party. Leave of Court shall be freely given when justice so requires in a civil matter. The Georgia Supreme has held the right to amend is very broad, and there is no prohibition against pleading a new cause of action, and Defendant. The Supreme Court has further found and held: The right to amend is properly broad, and there is no prohibition against pleading a new cause of action. (cit). See Hutto v. Plagens, 254 Ga. 512, 514 (2)(330 S.E. 2d 341)(1985).

Finally, a motion for leave to amend a complaint to add additional claims against existing Defendants is superfluous before a pretrial order. Id.

A trial Court's decision as to whether a party should be added to a lawsuit lies in the Court's sound legal discretion and will be overturned on appeal only upon a showing of abuse of that discretion. Rasheed v. Klopp Enerprises, 276 Ga.App. 91, 92 (1) 622 S.E. 2d)(2005).

Here, Plaintiffs have spoken to counsel at Seyfarth Shaw, LLP., who is allegedly counsel for EQUIFAX, and counsel stated they would not agree to any such amendment despite the fact that the Plaintiffs have only brought one cause of action against EQUIFAX.

Should the Motion be granted, due to the complex nature of allegations, causes of actions, and the magnitude of Plaintiffs being added from across the State, the Plaintiffs request that they be given thirty-days to file their First Amended Complaint.

3

## CONCLUSION

For all the foregoing reasons, Plaintiff requests that he be permitted to file a First Amended Complaint for Damages and Injunctive Relief against the Defendants and be given thirty-days to file such Motion.

Respectfully submitted,

Dated: _____   By: _____
                                     John Anderson, Plaintiff In Propria Person
                                     22 W. Bryan Street, # 174
                                     Savannah Georgia 31401
                                     Telephone: (912) 220-5842
                                     Facsimile:  (912) 330-6061
                                     Email: John.anderson0311@gmail.com

Respectfully submitted,

Dated: _____   By: _____
                                     Anthony Oliver, Plaintiff Pro Se
                                     GDC # 1002060648
                                     Augusta State Medical Prison
                                     3001 Gordon Highway
                                     Grovetown Georgia 30813

4

**IN THE SUPERIOR COURT OF THE EASTERN JUDICIAL CIRCUIT
STATE OF GEORGIA**

ANTHONY OLIVER, *et al.*

      Plaintiff,

VS.

JND HOLDINGS, L.L.C., *et al.*

      Defendants.

Case No.:  <u>SPCV22-00681-WA</u>

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this date served upon counsel for the opposing party in the forgoing matter a copy of the **PLAINTIFFS MOTION FOR LEAVE TO AMEND,** by first -class mail of the United States Postal Service in an envelope properly addressed with adequate postage thereon addressed to all parties, and a copy transmitted through this Court's odessey program to:

Equifax Information Services, LLC
Agent:  Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

JND Holdings, L.L.C.
Agent:  Corporation Service Company
MC-CSC, 1300 Deschutes Way S.W.,
Suite # 208
Tumwater, Washington 98501

Respectfully submitted,

Dated: _____

By: _____
John Anderson, Plaintiff In Propria Person
22 W. Bryan Street, # 174
Savannah Georgia 31401
Telephone: (912) 220-5842
Facsimile:  (912) 330-6061
Email: John.anderson0311@gmail.com

5

# EXHIBIT B C

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

ANTHONY OLIVER, JOHN ANDERSON,

MAURICE BENTLEY, THOMAS CAMPBELL, DANEL JONES,

CIVIL ACTION NUMBER  SPCV22-00681-WA

PLAINTIFF

VS.

JND Holdings, L.L.C.; Jennifer Keough; Equifax

Information Services, L.L.C.; MARK BEGOR; and

DOES 1-10, inclusive.

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

Anthony Oliver, GDC # 1002060648
3001 Gordon Highway
Grovetown Georgia 30813

John Anderson, Plaintiff
22 W. Bryan Street, # 174
Savannah GA 31401

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This_____ day of _____, _____.

TAMMIE MOSLEY
Clerk of Superior Court
CHATHAM COUNTY

By_____
Deputy Clerk

**Instructions:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

# IN CHATHAM SUPERIOR COURT

_____ TERM _____

_____ _____

_____

_____

VS.

_____

_____

## ORIGINAL

Filed in the Clerk's Office this _____

day of _____, _____

_____

Clerk, Dep. Clerk, S.C.C.C. GA

_____

PLAINTIFF'S ATTORNEY

IN THE SUPERIOR COURT OF THE EASTERN JUDICIAL CIRCUIT
STATE OF GEORGIA

ANTHONY OLIVER, JOHN ANDERSON,      Case No.:  <u>SPCV22-00681-WA</u>
MAURICE BENTLEY, THOMAS CAMPBELL,
DANEL JONES,


      Plaintiff,                      DEMAND FOR JURY TRIAL


VS.


JND HOLDINGS, L.L.C.,
JENNIFER KEOUGH; EQUIFAX
INFORMATION SERVICES, L.L.C.;
MARK BEGOR; and DOES 1-10,
inclusive.

      Defendants.

### PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, PERMANENT, AND INJUNCTIVE RELIEF

**AND NOW**, Plaintiffs named above and files this Complaint for damages, declaratory, and injunctive relief against Defendants, and shows this Court the following:

### I.    PARTIES

1.    Plaintiff Anthony Oliver, ("Plaintiff Oliver") is over the age of 18 years old, a Citizen of the State of Georgia, the County of Richmond, competent enough to bring this action in this Court, and will be mentioned herein at all times.

2.    Plaintiff John Anderson, ("Plaintiff Anderson") is over the age of 18 years old, a Citizen of the State of Georgia, the County of Chatham, competent enough to bring this action in this Court, and will be mentioned herein at all times.

4.    Plaintiff Maurice Bentley, ("Plaintiff Bentley") is over the age of 18 years old, a Citizen of the State of Georgia, the County of Richmond, competent enough to bring this action in this Court, and will be mentioned herein at all times.

5.      Plaintiff Thomas Campbell, ("Plaintiff Campbell") is over the age of 18 years old, a Citizen of the State of Georgia, and Alabama, a duel citizen of both States, competent enough to bring this action in this Court, and will be mentioned herein at all times.

6.      Plaintiff Daniel Jones, ("Plaintiff Jones"), is over the age of 18 years old, a Citizen of the State of Georgia, the County of Richmond, competent enough to bring this action in this Court, and will be mentioned herein at all times.

7.      Defendant JND Holdings, L.L.C., ("JND HOLDINGS"), is a Washington State Corporation licensed to do business in Washington State pursuant to the laws of Washington, and is currently an active Corporation with the Washington Secretary of State. Defendant JND HOLDINGS was, and still is, transacting business in Georgia, has transacted business in Georgia, and has numerous contacts in Georgia. Therefore, JND HOLDINGS is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91, as JND HOLDINGS transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this State. In addition, JND HOLDINGS has the required minimal contacts in Georgia to established personal jurisdiction in Georgia as Defendant serves as a class action administrator, and serves to email, write, call, send checks, and claim forms to Georgia residents. JND can be served through its registered agent, Corporation Service Company located at 300 Deschutes Way, Ste. 208, MC-CSC1, Tumwater, Washington, 98501.

8.      Defendant Jennifer Keough, ("KEOUGH"), is a resident of the State of Washington, over the age of 18 years old, and will be mentioned herein at all times. KEOUGH is subject to jurisdiction of this Court pursuant to the Georgia long-arm statute.

9.      Defendant Equifax Information Services, L.L.C., ("EQUIFAX"), is a Georgia limited liability company, with its principal place of business in Atlanta, Georgia. Defendant EQUIFAX is subject to the jurisdiction of this Court and can be served through it's registered agent Corporation Service Company located at 2 Sun Court, Suite # 400, Peachtree Corners Georgia 30092.

10.     Defendant Mark Begor, ("BEGOR"), is a resident of the State of Georgia, currently serves as the President, and chief executive officer of Equifax Informations Services, L.L.C, over the age of 18 years old, and will be mentioned herein at all times. Defendant BEGOR is sued in his individual and official capacity. Defendant BEGOR can be served with

2

service of process located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

## II.   JURISDICTION AND VENUE

11.   Venue is proper in this Court pursuant to OCGA § 9-10-93.

12.   Defendants JND HOLDINGS and EQUIFAX are subject to the jurisdiction of this Court because all of the allegations arose from this judicial District, all of the injuries occurred in this District, and all of the events, and contract took place in this Judicial District therefore, jurisdiction lies within this circuit.

13.   Plaintiffs identified below allege the following against Defendants Equifax Information Services LLC ("EQUIFAX"), and JND HOLDINGS Administration, L.L.C., ("JND HOLDINGS") (collectively, "EQUIFAX," "JND HOLDINGS" or "Defendants"), based upon personal knowledge with respect to himself, and on information and belief derived from, among other things, investigation of Plaintiff, and review of public documents.

## III.   JURISDICTION UNDER THE GEORGIA LONG-ARM STATUTE

14.   Each of the Defendants sued herein, JND HOLDINGS Administration, Inc., ("JND HOLDINGS"), and Jennifer Keough, ("KEOUGH"), are residents of the State of Washington, but must be held to the personal jurisdiction of the State of Georgia under the Georgia Long-Arm statute, O.C.G.A. § 9-10-91 because they transact business within the State, has committed a tortious act, or omission within the State, and/or has committed a tortious injury in this State caused by an act, or omission outside this State. Further, the Defendants JND HOLDINGS and KEOUGH regularly transact business within the State to seek their appointment as class action administrator, and did so when they contacted Defendant Equifax Information Services, L.L.C., ("EQUIFAX") at their Atlanta Georgia office where EQUIFAX in permanently demonciled, and a corporation existing under the laws of the State of Georgia.  Furthermore, Defendants JND HOLDINGS and KEOUGH regularly solicits, and transacts business in Georgia, engages in other persistent courses of conduct in Georgia, or derives substantial revenue from services rendered in this State.

## IV.   FACTS AND PROCEDURAL BACKGROUND

15.   Defendant EQUIFAX plays a central role in the modern American economy, collecting and selling vast amounts of data  about the most important details of consumers' financial lives. That data consists of names, birth dates, Social Security numbers, credit card information, drivers' license numbers, and more contains the keys that unlock a consumer's

identity and is relied upon by third-parties to make major financial decisions affecting almost all Americans, including the citizens of Georgia. EQUIFAX understood it had an enormous responsibility to protect the data it collected and assured the public that: "At Equifax, the security of our customers' information is paramount." But, as its former CEO has acknowledged, EQUIFAX has not lived up to that responsibility or fulfilled its public assurances to protect Georgians' or Americans' confidential information.

16.     By not living up to their responsibilities, the personal information of over 178 million people was compromised that led to hackers, scam artists, and other third-party person, or entities to steal personal information to obtain consumer credit, goods, or money.

17.     Despite being provided with a warning from the federal government, EQUIFAX disregarded signs, and warnings to potentially stop any identity theft, or personal information from being stolen. Instead of taking the necessary steps to prevent the breach, EQUIFAX decided to sell its consumers identity theft protection, and credit monitoring at a reduced price. In an effort to stuff it's wallet with cold hard cash, EQUIFAX never followed up in any potential breach that could have been prevented. Instead, EQUIFAX sought to sell consumers identify theft protection, annual, and monthly credit monitoring services for a special price. Ultimately, hackers, and scam artist obtained the consumer files, and personal information for millions of unsuspected consumers whom had a trade line listed with EQUIFAX that led to millions, upon millions of consumers, and victims having their identity stolen. Unbeknownst to millions of consumers like the Plaintiffs, consumers had open accounts for credit cards, vehicle, and home loans, as well as open consumer accounts like a cell phone, home Internet, cable, and more.

18.     On September 7, 2017, EQUIFAX announced that it was subject to one of the largest personal data breaches in our nation's U.S. history. Taking advantage of glaring weaknesses, and vulnerabilities in the company's data security systems, hackers stole the personal and financial information of nearly 178 million Americans from mid-May through the end of July, 2017.

19.     During that entire two and one-half month period, EQUIFAX failed to detect the hackers' presence, notice the massive amounts of data that were being exfiltrated from its databases, or take any steps to investigate the numerous other red flags that should have warned the company about what was happening. EQUIFAX has

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, PERMANENT, AND INJUNCTIVE RELIEF

attributed the breach to a low-level employee's failure to install a necessary software patch. While that employee's negligence may have created the door through which the hackers first entered, the breach was in fact the inevitable result of EQUIFAX's systemic incompetence and a longstanding, lackluster approach to data security that permeated the company's culture from the top down. Indeed, EQUIFAX's cavalier attitude about data security persisted despite warnings by outside cybersecurity experts, the occurrence of other data breaches at Equifax, and numerous high-profile data breaches at other major American corporations, all of which should have alerted EQUIFAX of the need to revamp and enhance its woefully inadequate data security practices. The severity of this breach is unprecedented, affecting almost half of the American population. Nearly all of the victims had no prior relationship with EQUIFAX, and there is no mechanism to opt-out of Equifax's collection and sale of this data. The hackers obtained at least 146.6 million names, 146.6 million dates of birth, 145.5 million Social Security numbers, 99 million addresses, 17.6 million driver's license numbers, 209,000 credit card numbers, and 97,500 tax identification numbers, and by using this information, identity thieves can create fake identities, fraudulently obtain loans and tax refunds, and destroy a consumer's credit-worthiness—the very thing EQUIFAX exists to assess and report. And because Social Security numbers do not expire and are almost impossible to change, thieves will be able to do so for years to come. As one knowledgeable analyst noted soon after the breach was announced: "On a scale of 1 to 10 in terms of risk to consumers, this is a 10."

**Equifax Admits To The Largest Personal Information Data Breach In U.S. History**

20.     On October 7, 2017, Equifax was caught with it's hand in the cookie jar, and had no choice but to announce a cybersecurity incident (the  "Cybersecurity Incident") potentially impacting approximately 143 million U.S. consumers. Equifax further admitted that on October 2, 2017, Equifax announced  that approximately 2.5 million additional U.S. consumers were potentially impacted,  for a total of 145.5 million.  Then again on March 1, 2018, Equifax announced, as a result  of ongoing analysis of data stolen in the Cybersecurity Incident, that the company confirmed the identities of U.S. consumers whose partial driver's license  information was taken.  Through these additional efforts, Equifax was allegedly able to identify  approximately 2.4 million U.S. consumers whose names and partial driver's

license information were stolen, but who were not in the previously identified affected population discussed in the company's prior disclosures about the incident.

21.   Looking anyone, or someone to blame for this massive date breach, Equifax allegedly attributed the breach to a low-level employee's failure to install a necessary software patch. While that employee's negligence may have created the door through which the hackers first entered, the breach was in fact the inevitable result of Equifax's systemic incompetence and a longstanding, lackluster approach to data security that permeated the company's culture from the top down. Indeed, Equifax's cavalier attitude about data security persisted despite warnings by outside cybersecurity experts, the occurrence of other data breaches at EQUIFAX, and numerous high-profile data breaches at other major American corporations, all of which should have alerted Equifax of the need to revamp and enhance its woefully inadequate data security practices. But all of this was nothing more then a web of lies as EQUIFAX sought to blame anyone it could. Ironically enough, EQUIFAX never identified the so-called "low level employee's" in this scandal. Because it was nothing more then an engineered story that EQUIFAX came up with, and expected federal regulators, and consumers to believe. The severity of this breach is unprecedented, and not in anyway minimal, it affected almost half of the American population. Nearly all of the victims had no prior relationship with EQUIFAX, and there is no mechanism to opt-out of Equifax's collection and sale of this data. The hackers obtained at least 146.6 million names, 146.6 million dates of birth, 145.5 million Social Security numbers, 99 million addresses, 17.6 million driver's license numbers, 209,000 visa and mastercard credit card numbers, and 97,500 tax identification numbers. Using this personal information identity thieves can create fake identities, fraudulently obtain loans and tax refunds, and destroy a consumer's credit-worthiness—the very thing Equifax exists to assess and report. And because Social Security numbers do not expire and are almost impossible to change, thieves will be able to do so for years to come. This was an unfortunate incident that could have been prevented by EQUIFAX, but it choose to do nothing to protect the American people.

22.     In fact, once the news broke, it was EQUIFAX that offered to sell millions of American's identity theft protection for a whopping $ 49.99 a year to protect their information. [1]

**Plaintiff's From Several States File A Federal Class Action Lawsuit And Equifax Settles The Lawsuit On A Class Action Status With All Plaintiffs**

23.     On May 14, 2018, after EQUIFAX had no choice but to admit their failures to the American people, Plaintiffs from Ninety-Four states in the United States filed a federal class action lawsuit in the United States District Court, for the Northern District of Georgia asserting both State and Federal violations of law for EQUIFAX's role in intentionally allowing the personal information of over 174 million people to be compromised.

24.     With no other choice, EQUIFAX agreed with the Plaintiffs and an unknown amount of class members to make the class of Plaintiffs whole again. In agreement with the United States District Court, EQUIFAX agreed to pay $ 3,000,000,00.00 (three billion) dollars toward the class action fund for Plaintiffs who have been injured. EQUIFAX agreed to pay two classes of Plaintiffs. The two classes are identified as :

1.     **Reimbursement for Time Spent**.  If you spent time trying to recover from fraud or identity theft because of the Equifax data breach, between January 23, 2020 and January 22, 2024, you can get up to $25 per hour for up to 10 total hours, or up to 20 total hours if you provide supporting documents; and

2.     **Reimbursement for Money You Spent**.  If you spent money trying to recover from fraud or identity theft because of the Equifax data breach, between January 23, 2020 and January 22, 2024, you can be reimbursed up to $20,000.  You must submit documents supporting your claim.

---

[1]     As used throughout this Complaint, "Personal Information" is defined as all information exposed by the Equifax data breach, including all or any part or combination of name, address, birth date, Social Security number, driver's license information (any part of license number, state, home address, dates of issuance or expiration), telephone number, email address, tax identification number, credit card number, or dispute documents with personally identifying information (such as images of government-issued identifications).

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, PERMANENT, AND INJUNCTIVE RELIEF

25.     Prior to the lawsuit being settled, Defendant EQUIFAX and its new President, Defendant Mark Begor, ("BEGOR"), met with their defense counsel from the law firms of Seyfarth Shaw, L.L.P., ("SEYFARTH"), King & Spaulding, L.L.P., ("KING SPAULDING"), and other defense attorney firms to seek the appointment of JND HOLDINGS to serve as the class action administrator. EQUIFAX and BEGOR personally met with with Defendants JND HOLDINGS and KEOUGH and hired them to serve as the class action administrator in charge of dispersing funds to the Plaintiffs.

26.     Once EQUIFAX and BEGOR met with JND HOLDINGS and KEOUGH, the Defendants agreed that JND HOLDINGS and KEOUGH would draft a declaration from KEOUGH to be filed with the United States District Court. Through this declaration, Defendants JND HOLDINGS and KEOUGH established a written contract with the United States District Court attesting that JND HOLDINGS and KEOUGH would be retained as the administrator with the express written consent of EQUIFAX and BEGOR and fulfill its duties to all of the Plaintiffs and class members. This was hardly the truth.

27.     Before the ink could dry on the paper, Defendants JND HOLDINGS and KEOUGH filed a declaration with the federal Court outlining the responsibilities that JND HOLDINGS and KEOUGH would pursue in notifying the Plaintiffs, and the class members concerning the pendency of the action. Once JND HOLDINGS and KEOUGH filed their declaration that they knew to be false, JND HOLDINGS and KEOUGH appeared in the United States District Court for a hearing for the appointment of JND HOLDINGS and KEOUGH as the administrator. After several hours of giving false testimony, hundreds of lies, fraud and perjury being committed upon the federal Court, Defendants JND HOLDINGS and KEOUGH duped United States District Judge Thomas W. Thrash, Jr., ("JUDGE THRASH") into believing a web of lies and the results, were staggering. JND and KEOUGH was appointed as the class action administrator after lying to a federal Judge.

28.     On December 5, 2019, Defendants JND HOLDINGS and KEOUGH filed another false supplemental declaration with the District Court for JUDGE THRASH to review, and approve. Once JUDGE THRASH reviewed the supplemental declaration, JND HOLDINGS and KEOUGH appeared again in federal Court seeking their appointment so that the Defendants can in reality, steal as much money as possible. By way of filing a declaration with the Court to seek an appointment, is the form of establishing a written contract with

8

federal actors, agencies, EQUIFAX, BEGOR, and the Plaintiffs.

29.     On January 13, 2020, after being injected with hundreds of lies, deceit, fraud and perjury, JUDGE THRASH agreed in writing to have JND HOLDINGS and KEOUGH appointed as the EQUIFAX class action administrator. However, the Defendants JND HOLDINGS and KEOUGH never had any intention of fulfilling the terms and conditions of the written contract, or providing settlement funds to hundreds, if not thousands of Plaintiffs.

### Equifax And Begor Are Liable To The Plaintiffs For Its Negligent Supervision And Hiring of JND Holdings And Jennifer Keough

30.     Prior to the approval of JND HOLDINGS and KEOUGH being appointed by the federal Court, both EQUIFAX and BEGOR knew that the Defendants JND HOLDINGS and KEOUGH were not capable of fulfilling the terms of the written agreement that JND HOLDINGS and KEOUGH entered into with the federal Court.

31.     At some point, Defendants EQUIFAX and BEGOR transferred the settlement funds to JND HOLDINGS and KEOUGH to deposit into a secret bank account that only JND HOLDINGS and KEOUGH had access to. Upon information and belief, JND HOLDINGS and KEOUGH secretly withdrew funds from the account containing the settlement funds, and used  funds for personal expenses.

32.     With the funds transferred to JND HOLDINGS and KEOUGH, both EQUIFAX and BEGOR owed a duty to the Plaintiffs in this lawsuit to monitor the funds to ensure that they were being correctly processed, distributed and that JND HOLDINGS and KEOUGH were complying with the terms and conditions outlined in the declaration of KEOUGH, as well as JUDGE THRASH's written order.

33.     Defendants EQUIFAX and BEGOR were negligent in hiring Defendants JND HOLDINGS and KEOUGH and entrusting them with millions of dollars. EQUIFAX and BEGOR knew that once the funds were transmitted to JND HOLDINGS and KEOUGH, that they free to do whatever they wanted with EQUIFAX and BEGOR's settlement funds.

34.     EQUIFAX and BEGOR knew that JND HOLDINGS and KEOUGH was free to also to choose approve and deny compensation to the Plaintiffs based on personal, retaliatory, and/or selfish reasons. Defendants EQUIFAX and BEGOR was negligent by failing to properly supervise JND HOLDINGS and KEOUGH to ensure that the Plaintiffs' received their funds in this case. On several occasions, some of the Plaintiffs in this case sent

letters to both EQUIFAX and BEGOR informing them of the abuse of process that JND HOLDINGS and KEOUGH are displaying by refusing to accept, process, provide claim forms, and issue funds to the Plaintiffs. EQUIFAX and BEGOR' committed negligence  in hiring  JND HOLDINGS and KEOUGH,  entrusting  them to disburse funds, and claim forms to the Plaintiffs,  and  failing  to  train  and  supervise  them  properly  were  the  proximate cause of the damages at issue  and the injuries to, and each Plaintiff.

35.     The  actions,  and  inactions  of  EQUIFAX  and  BEGOR  were  intentional, reckless, and despicable thereby entitling the Plaintiffs to an award of punitive damages to make an example out of EQUIFAX and BEGOR for the gross negligence, and supervision of JND HOLDINGS and KEOUGH.

### Defendants Breach Their Written Contract Between Themselves, The Plaintiffs And Hundreds Of Class Members And The Plaintiffs

36.     Defendants EQUIFAX and BEGOR have once again failed to live up to their responsibilities by ensuring the rights of consumers, and the very Plaintiffs that they swore to make whole by allegedly compensating the Plaintiffs for their damages and injuries.

37.     Since the EQUIFAX data breach lawsuit was settled, JND HOLDINGS and KEOUGH have refused to issue payment to the Plaintiffs in this case for personal reasons, and well as searching for other illegal and unfounded reasons to deny compensation to the Plaintiffs. In sum instances, JND HOLDINGS and KEOUGH have out right denied Plaintiffs claims due to certain Plaintiff's being incarcerated, or being a gay person.

38.    As an example below, JND HOLDINGS and KEOUGH denied claims filed by the Plaintiff's for various reasons. The following Plaintiffs were denied compensation based on the following:

### A.     Facts Specific To Plaintiff Anthony Oliver

39.     On January 3, 2021, Plaintiff Anthony Oliver, ("Plaintiff Oliver") became suspicious that his identity was stolen after Plaintiff Oliver received a debt collection notice from Comcast cable for a past due account for cable, and/or Internet for an amount of $ 268.00 and the collection notice stated that this amount was not paid in a timely fashion, the past due amount would be sent to a third-party debt collector called Southwest Credit Systems, L.P., ("SOUTHWEST").

40.     Plaintiff Oliver never paid any money to Comcast cable, and the past due balance, and account was then transferred and/or sold to SOUTHWEST, who in turn mailed a debt collection notice informing Plaintiff Oliver the account was assigned to SOUTHWEST, and that Plaintiff Oliver was directed to pay SOUTHWEST the balance, and not Comcast cable. After receiving the notice from SOUTHWEST, Plaintiff Oliver called SOUTHWEST, and inquired about the debt. SOUTHWEST informed Plaintiff Oliver that a recent account was opened. Plaintiff Oliver informed SOUTHWEST that the date of when the account was opened, Plaintiff Oliver was incarcerated. SOUTHWEST sent Plaintiff Oliver a fraud affidavit, and notarized it stating the same. SOUTHWEST ultimately removed the account. In addition, Plaintiff Oliver was informed by SOUTHWEST about a large federal class action lawsuit filed against EQUIFAX for data breaches. Plaintiff Oliver was informed to contact EQUIFAX, or go online to see if he was impacted by the EQUIFAX data breach.

41.     Notwithstanding Plaintiff Oliver being a victim of identity theft to begin with, Plaintiff Oliver sent dispute, and demand for investigation letters pursuant to the Fair Credit Reporting Act to each of the three credit bureaus, TransUnion, Experian, and Equifax as well. Plaintiff Oliver then also retrieved copies of his three credit reports from annual credit report, and there, Plaintiff Oliver discovered that there was another account opened in Plaintiff Oliver's name for consumer credit. This time around, Plaintiff Oliver was now a victim of a home rental, and was being sent to collections alleging that Plaintiff Oliver rented a home, and then moved out before the rent could be paid. Accordingly, the account was sent to collections. Of course, the account was opened while Plaintiff Oliver was incarcerated, but what's more disturbing, is the account was opened in Wisconsin.

40.     Plaintiff Oliver spent over thirty (30) hours of time, resources, money, and costs sending the FCRA dispute, and demand for investigation letters to all of the debtors that appeared in their credit reports. Each of the debt collectors that Plaintiff Oliver sent letters to, only a few replied back to Plaintiff Oliver. With no response, Plaintiff Oliver had to spend more time, resources, hire an attorney service company, and copies to send more letters to properly defend against any, and all identity theft. In addition, Plaintiff Oliver spent over $ 600.00 dollars in inmate telephone cards just to be able to call certain debt collectors, and attorneys to seek representation against EQUIFAX.

11

41.     Plaintiff Oliver's friend then went online, by email, and United States mail with sufficient notice, and timely filed a claim for damages to the EQUIFAX class action fund to provide Plaintiff Oliver with a class action settlement payment of $ 5,016.42, that equaled to an amount that was deemed just, and proper. Likewise, Plaintiff Oliver also spent over $ 2,000 dollars in cash in defending himself in removing the fraudulent consumer debt against SOUTHWEST by filing a federal lawsuit against SOUTHWEST.

42.     Over the next several weeks, spending more money just to get justice, Plaintiff Oliver called Defendant KEOUGH and informed Defendants JND HOLDINGS and KEOUGH that if they continued to withhold compensation due to him from the EQUIFAX settlement fund, that Plaintiff Oliver would file a Superior Court lawsuit against JND HOLDINGS and KEOUGH. In response, KEOUGH informed Plaintiff Oliver that if he called her, her office, or JND HOLDINGS again, that KEOUGH would contact the Police in Georgia, or the Georgia Department of Corrections, and have Plaintiff Oliver arrested for "Aggravated Stalking," or any other crimes that KEOUGH could claim that the Plaintiff committed. KEOUGH confirmed that Plaintiff Oliver would not receive any money from the EQUIFAX class action fund, and hung up.

43.     Defendants JND HOLDINGS and KEOUGH unlawfully breach their contract with Plaintiff Oliver, and Plaintiff Anderson, whom are class members, to uphold their duties as the EQUIFAX class action settlement administrator by refusing to issue Plaintiff Oliver, and Plaintiff Anderson  any form of payment in the amount of $ 5,016.42, or an amount of 2,098.07.

44.     Defendant JND HOLDINGS and KEOUGH interfered with a valid contract between Plaintiff Oliver and EQUIFAX causing him to suffer more financial damages, and other unknown damages, and costs. Plaintiff Oliver relied upon Defendants JND HOLDINGS and KEOUGH to remit payment to Plaintiff Oliver after successfully providing EQUIFAX and JND HOLDINGS with documentation justifying and substantiating the funds payable to him. By JND HOLDINGS and KEOUGH refusing to remit any payment to Plaintiff Oliver, this caused Plaintiff Oliver to be damaged in his contractual relations with third-parties, unable to purchase a new vehicle for his teenage daughter, to have the funds to pay for an appellate attorney to have his convictions overturned, and other unknown damages sustained by Plaintiff Oliver.

12

45.     Defendant KEOUGH went on to remind Plaintiff Oliver how JND HOLDINGS was never appointed in the three federal class action lawsuits filed by Plaintiff Oliver and his class action attorneys. KEOUGH went on to say: "So no, no you're not going to be getting anything."

46.     Plaintiff Oliver reminded JND HOLDINGS and KEOUGH that he was a class member in the EQUIFAX multi-district class action settlement, and that neither JND HOLDINGS, nor KEOUGH could withhold payment from Plaintiff Oliver due to any personal animosity that KEOUGH has against Plaintiff Oliver. Additionally, KEOUGH informed Plaintiff Oliver that because he sued her, and JND HOLDINGS in the federal Court for claims under the Fair Labor Standards Act, ("FLSA"), that this was another reason why Plaintiff Oliver would not be receiving any compensation. Further, KEOUGH was already familiar with Plaintiff Oliver in one particular and notable federal class action lawsuit that was filed in California where JND HOLDINGS, nor KEOUGH served as the class action administrator. In this class action, Dan McKibben v. Sheriff John McMahon, USDC Central District of California, Civil Action No. 4:15-cv-02171-JGB-SP, this was a prisoner class action where Plaintiff Oliver was appointed class Plaintiff in a civil right case where the Sheriff John McMahon discriminated against Plaintiff Oliver while incarcerated at the San Bernardino County jail for being a gay prisoner. JND HOLDINGS, nor KEOUGH was appointed as class action administrator as Plaintiff Oliver worked relentlessly to remove JND HOLDINGS, nor KEOUGH as administrator. There, JND HOLDINGS, nor KEOUGH stole nearly $ 2,000 dollars from Plaintiff Oliver's incentive award. JND HOLDINGS, nor KEOUGH were extremely angry as KEOUGH personally informed Plaintiff Oliver that she would get him back. JND HOLDINGS, nor KEOUGH informed Plaintiff Oliver that they hated gay people and KEOUGH informed Plaintiff Oliver that this was another reason why he was not receiving his EQUIFAX settlement funds.

47.     On or about April 11, 2022, Plaintiff Oliver sent numerous letters to JND HOLDINGS, KEOUGH, EQUIFX and BEGOR informing them that Plaintiff Oliver is entitled to some form of payment, and that any payment that Plaintiff Oliver is entitled to, is being kept and/or used by JND HOLDINGS and KEOUGH for personal, or business use. And that they cannot withhold payment to him. Despite sending to the Defendants, and EQUIFAX demanding payment, to date, no payment from the Defendants, or EQUIFAX has been

remitted to Plaintiff Oliver for his time, resources, and expenses related to being a legitimate victim of identity theft. Plaintiff Oliver was, and still is entitled to $ 5,016.32.

48.     In addition, Plaintiff Oliver intended to use the funds that he was supposed to receive, to hire an attorney for a family law action to be filed in the Effingham County Superior Court. As a result of the breach of contract that JND HOLDINGS and KEOUGH breached, and caused to be breached, Plaintiff Oliver has been severly damaged in an amount to be determined at trial, but not less then $ 200,000 dollars.

49.     At all times relevant, JND HOLDINGS and KEOUGH knew there was in place, a valid contract between Plaintiff Oliver as a class member in the EQUIFAX class action where the parties agreed that Plaintiff Oliver would receive payment to be made whole again. Because Plaintiff Oliver never opted out of being a class member by filing any written objections to the class action settlement, that meant there was a valid contract between Plaintiff Oliver and EQUIFAX that they agreed upon for the benefit of Plaintiff Oliver. At all times relevant, JND HOLDINGS and KEOUGH breached that contract between the parties and intentionally interfered with Plaintiff Oliver's contractual relations with EQUIFAX.

50.     At all relevant times, JND HOLDINGS and KEOUGH did unlawfully interfere with the contractual relations between Plaintiff Oliver and EQUIFAX when they refused to pay Plaintiff Oliver the amount of $ 5,016.42. As a result of the unlawful interference, Plaintiff Oliver has been damaged in an amount to be proven at trial but not less then the amount of $ 200,000 dollars.

51.     At all times relevant, Plaintiff Oliver informed EQUIFAX that Defendants JND HOLDINGS and KEOUGH were refusing to pay Plaintiff Oliver his settlement claims, but EQUIFAX refused to intervene by directing JND HOLDINGS and KEOUGH to pay Plaintiff Oliver his settlement funds. By refusing to do so, EQUIFAX and BEGOR are liable to Plaintiff Oliver jointly and severally for his damages. In fact, EQUIFAX received a letter directly to its corporate office, but EQUIFAX refused to respond to the letter, or take the necessary steps to render payment directly, cause the payment to be made available to Plaintiff Oliver.

51.     At all additional relevant times, Defendants BEGOR and EQUIFAX knew, and had reason to know that there was a contract with Plaintiff Oliver, but refused to uphold its end of the contract thereby causing Plaintiff Oliver significant injuries. To date, none of the Defendants have remitted any payment to Plaintiff Oliver thereby necessitating the instant lawsuit. [2]

52.     On or about April 11, 2022, Plaintiff Oliver sent a letter to JND HOLDINGS and KEOUGH requesting a EQUIFAX claim form from the Defendants due to the fact that the Plaintiff was incarcerated and did not have access to the Internet. Despite receiving the letter, neither JND HOLDINGS and KEOUGH would mail Plaintiff Oliver a claim form to amend his claim, as JND HOLDINGS and KEOUGH refuse to mail prisoners claims forms to be filed. At all relevant times, JND HOLDINGS and KEOUGH stated on the Internet, in their contract with the federal Court, and JUDGE THRASHER that they would provide a claim form to anyone who requested one, but all of this was false and amount to both false advertising and unfair business practices.

53.     Based on Plaintiff Oliver being a victim of identity theft, the Plaintiff obtained a EQUIFAX data breach claim form, filled out the form, attached exhibits, and evidence supporting the Plaintiff's claims for compensation, and mailed the claim form to JND HOLDINGS and KEOUGH for approval. Several weeks after not receiving any confirmation that his claim was received, the Plaintiff Oliver contacted again JND HOLDINGS and spoke personally to Defendant KEOUGH to inquire as to whether Plaintiff Oliver's claim was received, and if so, as to when the claim would be approved. Defendant KEOUGH went on to tell Plaintiff Oliver that he claim "automatically denied" and that KEOUGH did not have to give Plaintiff Oliver a reason as to why. Coincedentially, in 2019, Defendants JND HOLDINGS and KEOUGH hired Plaintiff Oliver when they contacted him from Washington State, to his cell phone in Georgia to hire Plaintiff Oliver to open and run an office for JND HOLDINGS and KEOUGH  in Georgia.

---

[2]     After the filing of this lawsuit, Plaintiff Oliver sent Defendants Mark Begor and Equifax another letter stating that once he receives his settlement funds, that the instant lawsuit would be dismissed with prejudice, but neither Defendant responded directly, indirectly or through their counsel. Instead, Plaintiff Oliver received an email from general counsel from the Defendant's insurance company stating the Defendants would not waive service.

54.     Furthermore, Plaintiff Oliver was a class Plaintiff in two federal class actions pending before the federal Court of the Northern District of Illinois, in the City of Chicago. In both federal lawsuits whereas Plaintiff Oliver was, and still is, a resident of Chicago, JND HOLDINGS and KEOUGH were aware that Plaintiff Oliver filed <u>Anthony Oliver v. York Risk Management Services</u>, Inc., USDC Northern District of Illinois Civil Action No. 1:2018-cv-05998, and <u>Anthony Oliver v. Compass Group USA, Inc.</u>, USDC Northern District of Illinois, 1:2019-cv-00061, and were pending class certification, and an administrator like JND HOLDINGS, to be appointed. JND HOLDINGS and KEOUGH at the time, agreed to pay Plaintiff Oliver $ 50,000 in untraceable cash if Plaintiff Oliver spoke to his lead class attorney, and mentor Eugene Y. Turin, Esq., ("ATTORNEY TURIN"), of McGuire, P.C., and directed ATTORNEY TURIN to pick JND HOLDINGS as the class action administrator. Defendant KEOUGH flew out to Savannah Georgia in 2019, and an agreement on the untraceable amount of money could not be agreed upon, and KEOUGH became upset, and angry because KEOUGH knew that both JND HOLDINGS and KEOUGH would lose substantial revenue by not being appointed to serve as administrator in these federal class actions that Plaintiff Oliver and ATTORNEY TURIN filed.

55.     In <u>Anthony Oliver v. The Men's Warehouse, Inc.</u>, USDC CD of California, Civil Action No. 4:15-cv-01100-TJH, JND HOLDINGS and KEOUGH tried to persuade Plaintiff Oliver again into having JND HOLDINGS appointed as the administrator by replacing the current administrator by asking Plaintiff Oliver to lie and say that the administrator was not notifying class members and Plaintiffs about the pendency of the lawsuit. However, JND HOLDINGS and KEOUGH was never appointed to any of these three federal class actions, and KEOUGH became enraged, and upset at Plaintiff Oliver. In a position to dominate, discriminate and retaliate against Plaintiff Oliver, JND HOLDINGS and KEOUGH sought to retaliate against him for not having them appointed in the above class action lawsuits. JND HOLDINGS and KEOUGH formally denied Plaintiff Oliver compensation that he was entitled to from the EQUIFAX class action for these reasons despite Plaintiff Oliver submitted a timely claim with evidence of damages and should not have been denied by JND HOLDINGS and KEOUGH for being gay, or any personal animosity that KEOUGH has, and continues to have against him.

16

56.     As a direct and proximate result of the actions of JND HOLDINGS and KEOUGH, the Plaintiff Oliver has been damaged in an amount to be determined at trial. As a further and direct result of the actions of JND HOLDINGS and KEOUGH, had they paid and compensated the Plaintiff Oliver for his damages, the Plaintiff could have hired Appeallate counsel to represent him in the Georgia Court of Appeals. However, JND HOLDINGS and KEOUGH never paid Plaintiff Oliver and is still left incarcerated. At all times relevant, JND HOLDINGS and KEOUGH violated the written contract that required them to pay Plaintiff Oliver for his damages causing him additional damages, other costs and unknown costs.

## B.     Facts Specific To Plaintiff John Anderson

57.     On January 3, 2021, Plaintiff John Anderson, ("Plaintiff Anderson") became suspicious that his identity was stolen after Plaintiff Anderson received a debt collection notice from American Express for a past due account for an amount of $ 4,083.22.00 and the collection notice stated that it was coming directly from American Express. Further, the letter went on to say that if the balance was not paid with a timely manner, the outstanding balance would be sent to a third-party debt collector.

58.     That same day, Plaintiff Anderson obtained copies of his consumer credit reports, and confirmed by his credit reports that American Express was in fact reporting an account with all three credit bureaus an account ending in 6042, all with the same balance as above reporting on his credit card. Plaintiff Anderson immeaditely filed a dispute with all three credit bureaus demonstrating the same. After successfully demonstrating that Plaintiff Anderson was a victim of identity theft, American Express closed the account.

59.     On or about January 10, 2022, Plaintiff Anderson discovered, and confirmed that a federal class action was in deed filed against Defendant EQUIFAX in the United States District Court, the Northern District of Georgia is the case titled In re: Equifax, Inc. Customer Data Security Breach Litigation, which is a consolidated class action complaint filed on behalf of over 100 million consumers from over twenty states. The class Plaintiff's seek to represent four classes of consumers from 2017 until 2021.

60.     Once the class action was in place, Plaintiff Anderson  verified that his Personal Information was compromised in the EQUIFAX data breach by going onto the EQUIFAX's data breach response website, entering his Personal Information into the website, all of which confirmed Plaintiff Anderson's information was leaked to data thieves.

17

61.     Plaintiff Anderson went online to JND HOLDINGS and KEOUGH's website that was approved by JUDGE THRASH, entered his social security number, and JND HOLDINGS and KEOUGH confirmed once again that Plaintiff Anderson's personal information was leaked. Plaintiff Anderson then filled out a claim form to seek compensation from the class action fund, and mailed the form to JND HOLDINGS and KEOUGH.

62.     Plaintiff Anderson did not hear back from JND HOLDINGS and KEOUGH as far as a confirmation letter, or number, so Plaintiff Anderson called the 1800-number for JND HOLDINGS, and spoke to KEOUGH about his claim. Defendant KEOUGH informed Plaintiff Anderson that he would not be receiving any settlement funds because he was affiliated with Plaintiff Oliver. Defendant KEOUGH informed Plaintiff Anderson that KEOUGH gets to decide who gets paid and who doesn't.

63.     Plaintiff Anderson informed KEOUGH that if he did not receive compensation, that both JND HOLDINGS and KEOUGH would be sued for breach of contract. KEOUGH then hung up on Plaintiff Anderson. To ensure that Plaintiff Anderson kept evidence of the filing of his claim, Plaintiff Anderson also sent an email that is available on JND HOLDINGS and KEOUGH's website to info@equifaxbreachsettlement.com, and attached copies of all copies of receipts, letters, exhibits, and all relevant documents in PDF format. Plaintiff Anderson then received a confirmation email from JND HOLDINGS and KEOUGH confirming his claim was received. JND HOLDINGS and KEOUGH violated Plaintiff Anderson's rights. At all times relevant, JND HOLDINGS and KEOUGH breached that contract between the parties, and intentionally interfered with Plaintiff Anderson's contractual relations with EQUIFAX.

64.     As a direct and proximate result of the actions of JND HOLDINGS and KEOUGH, the Plaintiff Anderson has been damaged in an amount to be determined at trial. As a further and direct result of the actions of JND HOLDINGS and KEOUGH, had they paid and compensated the Plaintiff Anderson for his damages, he could have used the funds to put a down payment on a new car. To date, Plaintiff Anderson still has not received any settlement funds, or a check from JND HOLDINGS and KEOUGH. At all times relevant, JND HOLDINGS and KEOUGH violated the written contract that required them to pay Plaintiff Anderson for his damages causing him additional damages, and other costs.

### C.    Facts Specific To Plaintiff Maurice Bentley

65.    On or about March 14, 2022, Plaintiff Bentley discovered the EQUIFAX class action lawsuit and data breach. Concerned that his personal information was compromised, and stolen by identity thieves, Plaintiff Bentley contacted his sister to go online to JND HOLDINGS and KEOUGH's website to see if he was effected. His sister entered his social security number and it was confirmed that his personal information was compromised in the data breach. Once confirmed, Plaintiff Bentley then had his sister go online to a free credit reporting agency to pull copies of his credit reports.

66.    Plaintiff Bentley discovered some minor discrepancies in his credit report and then spent time, money and resources in contacting the three major credit bureaus to try and resolve what was on his credit reports. In addition, Plaintiff Bentley spent time on phone calls, letters and postage trying to repair his credit.

67.    Plaintiff Bentley then contacted JND HOLDINGS and there, Plaintiff Bentley spoke to a representative to obtain a EQUIFAX settlement claim form. Because Plaintiff Bentley is currently incarcerated and without access to the Internet, it was JND HOLDINGS and KEOUGH's responsibility to provide Plaintiff Bentley with a claim form. Plaintiff Bentley provided the representative with his mailing address, and when the representative asked Plaintiff Bentley is his address was that of a prison, Plaintiff Bentley confirmed that it was. However, the representative informed Plaintiff Bentley that because he was a prisoner, that he could not receive a claim form. But both JND HOLDINGS and KEOUGH's advertise that they would provide any person with a EQUIFAX claim form.

68.    Contrary to their public statements, and written contract, JND HOLDINGS and KEOUGH still refused to provide Plaintiff Bentley with a claim form simply because he was, or still is, incarcerated. At all relevant times, JND HOLDINGS and KEOUGH breached their written contract with Plaintiff Bentley. The contract that JND HOLDINGS and KEOUGH agreed upon, was for the benefit of Plaintiff Bentley. JND HOLDINGS and KEOUGH agreed in writing to compensate Plaintiff Bentley for his damages once he filed a timely claim for damages. JND HOLDINGS and KEOUGH knowingly and willingly breached that contract that JND HOLDINGS and KEOUGH entered into for the benefit of Plaintiff Bentley. At all times relevant, JND HOLDINGS and KEOUGH breached the contract between the parties and intentionally interfered with Plaintiff Bentley's contractual relations with EQUIFAX.

69.     At all relevant times, JND HOLDINGS and KEOUGH falsely advertised on the Internet, in letters mailed to Plaintiffs and class members, and elsewhere that they would provide a claim form to anyone who requested one. JND HOLDINGS and KEOUGH knew all of this was false, amounted to false advertising and still made their false statements to the Courts, media, place on the Internet, and in letters mailed to Plaintiffs but still made the false statements anyways. Defendants JND HOLDINGS and KEOUGH knew and had reason to know that they were violating one or more law in Georgia but did it anyways.

70.     As a direct and proximate result of the actions of JND HOLDINGS and KEOUGH, the Plaintiff Bentley has been damaged in an amount to be determined at trial. As a further and direct result of the actions of JND HOLDINGS and KEOUGH, had they paid and compensated Plaintiff Bentley for his damages, he could have used the funds to retain an appellate attorney to seek release from incarceration. At all times relevant, JND HOLDINGS and KEOUGH violated the written contract that required them to pay Plaintiff Bentley for his damages causing him additional damages, costs and other unknown costs.

### D.     Facts Specific To Plaintiff Daniel Jones

71.     On or about February 5, 2022, Plaintiff Daniel Jones discovered the EQUIFAX class action lawsuit and data breach that was pending in federal Court, Plaintiff Daniel Jones became very concerned that his personal information was exposed, and/or obtained by any third-party identity thieves. Plaintiff Jones then asked his next door neighbor to go online and obtain his credit reports from TransUnion, Experian and Equifax.

72.     Two weeks later, Plaintiff Jones received his credit reports in the mail. After careful review of his credit reports, Plaintiff Daniel Jones discovered that he had over seven past due consumer accounts that consisted on medical bills and consumer cable all of which was opened while Plaintiff Jones was incarcerated. For example, several of the medical bills listed on his credit trade line was for over $ 70,000 dollars that was listed on his credit reports from a local hospital in Northern Georgia.

73.     Plaintiff Jones obtained the creditors information and contacted the original creditors and informed them that the past due accounts were not his. The creditors informed Plaintiff Jones that the medical bills arise from a major surgery that Plaintiff Jones' allegedly had undergone. That date of the surgery provided by the creditor was on a date that he was incarcerated in Georgia. Plaintiff Jones filed a dispute with all of the creditors and is still

pending as of the filing of this First Amended Complaint.

74.     On or about February 15, 2022, Plaintiff Jones contacted JND HOLDINGS, spoke to a representative, and requested a EQUIFAX claim form. When the representative was provided with Plaintiff Jones' address, the representative asked whether or not, his address was from a jail and/or prison, Plaintiff Jones informed the representative that it was and that he was incarcerated. The representative informed Plaintiff Jones that it is the policy of JND HOLDINGS and KEOUGH to not provide prisoners with claim forms. Plaintiff Jones then spoke to KEOUGH and informed her that he cannot be denied I claim form. KEOUGH informed Plaintiff Jones that no claim form would be mailed and that "all people in jail deserve nothing."

75.     With no other choice, Plaintiff Jones then had to pay money to family and friends to go online to obtain the EQUIFAX claim forms. Plaintiff Jones filled out the form and attached evidence of loss of money that he spent is trying to recover from the EQUIFAX data breach. For example, Plaintiff Jones attached receipts, and documents showing his loss of money trying to defend himself against $ 70,000 plus dollars in medical bills that are still appearing on his credit trade line. Plaintiff Jones was, and still is entitled to settlement funds in the amount between $ 6,000 to $ 7,300.

76.     Once Plaintiff Jones obtained copies of his losses, he then mailed a timely filed claim to JND HOLDINGS and KEOUGH so that he could receive compensation from the EQUIFAX class action settlement fund. Once Plaintiff Jones mailed his claim form, he waited a few weeks and then decided to call JND HOLDINGS and KEOUGH again after he did not receive any letter of confirmation, or a claim number. Plaintiff Jones spoke to another JND HOLDINGS representative, and there the representative reaffirmed that Plaintiff Jones would not be receiving any compensation based solely on the facts JND HOLDINGS and KEOUGH get to dictate as to who receives compensation.

77.     Contrary to their public statements, and written contract, JND HOLDINGS and KEOUGH still refused to provide Plaintiff Jones with a claim form simply because he was, or still is, incarcerated. At all relevant times, JND HOLDINGS and KEOUGH breached their written contract with Plaintiff Jones. The contract that JND HOLDINGS and KEOUGH agreed upon, was for the benefit of Plaintiff Jones. Defendants JND HOLDINGS and KEOUGH agreed in writing to compensate Plaintiff Jones for his damages once he filed a

21

timely claim for damages. Defendants JND HOLDINGS and KEOUGH knowingly and willingly breached that contract that JND HOLDINGS and KEOUGH entered into for the benefit of Plaintiff Jones. At all times relevant, JND HOLDINGS and KEOUGH breached that contract between the parties and intentionally interfered with Plaintiff Jones' contractual relations with EQUIFAX.

78.     At all relevant times, JND HOLDINGS and KEOUGH falsely advertised on the Internet, in letters mailed to Plaintiffs and class members, and elsewhere that they would provide a claim form to anyone who requested one. JND HOLDINGS and KEOUGH knew all of this was false, amounted to false advertising and still made their false statements to the Courts, media, place on the Internet, and in letters mailed to Plaintiffs but still made the false statements anyways. Defendants JND HOLDINGS and KEOUGH knew and had reason to know that they were violating one or more law in Georgia but did it anyways.

79.     As a direct and proximate result of the actions of JND HOLDINGS and KEOUGH, the Plaintiff Jones has been damaged in an amount to be determined at trial. As a further and direct result of the actions of JND HOLDINGS and KEOUGH, had they paid and compensated the Plaintiff Jones for his damages, he could have used the funds to help his family members obtain housing, and a new car. At all times relevant, JND HOLDINGS and KEOUGH violated the written contract that required them to pay Plaintiff Jones for his damages causing him additional damages, costs and other unknown costs.

### E.     Facts Specific To Plaintiff Thomas Campbell

80.     On or about April 2, 2022, Plaintiff Thomas Campbell was discovered the EQUIFAX class action lawsuit and data breach that was pending in federal Court. Plaintiff Campbell became very concerned that his personal information was exposed, and/or obtained by any third-party identity thieves. Plaintiff Campbell then asked his girl friend to go online and obtain his credit reports from TransUnion, Experian and Equifax.

81.     Plaintiff Campbell received his credit reports in the mail and after careful review of his credit reports, Plaintiff Campbell discovered that he had over one past due consumer account that consisted of consumer debt that he was not familiar with, all of which was opened while Plaintiff Campbell was incarcerated. Plaintiff Campbell then began the process of sending dispute letters out to the three credit bureaus and the original creditor.

82.    Plaintiff Campbell paid actual expenses of approximately $ 400 to $ 500 dollars in trying to recover from the EQUIFAX data breach. Plaintiff Campbell then contacted JND HOLDINGS holdings by telephone to request a EQUIFAX claim form. Once he was connected to a JND HOLDINGS representative, Plaintiff Campbell provided his mailing address and his inmate booking number. When the representative asked whether or not he was incarcerated, Plaintiff Campbell informed the representative that he was. Thereafter, Plaintiff Campbell was informed that it JND HOLDINGS policy to not provide prisoners with any EQUIFAX claim forms. When Plaintiff Campbell inquired as to why, he was not provided with any reasonable explanation. When Plaintiff Campbell asked who made the decision to deny claim forms to prisoners, the representative informed him that Plaintiff Campbell would need to speak to KEOUGH concerning that policy. Two days later, unable to grasp the horror that JND HOLDINGS and KEOUGH put in place of denying prisoners claim forms, he sent KEOUGH a letter demanding a claim form and stop this illegal practice.

83.    Once Plaintiff Jones obtained copies of his losses, he then mailed a timely filed claim to JND HOLDINGS and KEOUGH so that he could receive compensation from the EQUIFAX class action settlement fund. Once Plaintiff Jones mailed his claim form, he waited a few weeks and then decided to call JND HOLDINGS and KEOUGH again after he did not receive any letter of confirmation, or a claim number. Plaintiff Jones spoke to another JND HOLDINGS representative, and there the representative reaffirmed that Plaintiff Jones would not be receiving any compensation based solely on the facts JND HOLDINGS and KEOUGH get to dictate as to who receives compensation.

84.    Plaintiff Campbell had no other choice but to spend money out of pockets to try and recover from the EQUIFAX data breach. Plaintiff Campbell made numerous inmate phone calls, postage, stamps, paper, copies and paid other costs to try and have the fraudulent consumer debt removed from his trade line. Once Plaintiff Campbell obtained copies of all his losses, finances and documents, Plaintiff Campbell then had to pay more money out of pocket to obtain a EQUIFAX claim form that he was entitled to. Once Plaintiff Campbell obtained the claim form, he then attached documentation and evidence showing his financial losses and mailed the his timely completed EQUIFAX claim form to JND HOLDINGS and KEOUGH.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY,
PERMANENT, AND INJUNCTIVE RELIEF

85.     After waiting a month, and not having received any proof that his claim was received by JND HOLDINGS, Plaintiff Campbell called JND HOLDINGS and there, a representative confirmed that JND HOLDINGS received Plaintiff Campbell's claim. The representative then reviewed the claim form while on the telephone with Plaintiff Campbell.

86.     The representative asked Plaintiff Campbell to confirm his mailing address, and after doing so, he was informed by a JND HOLDINGS representative that he would not be receiving any compensation because Plaintiff Campbell was incarcerated. Plaintiff Campbell was then informed by the representative that it was KEOUGH's decision to deny compensation to claimants who are incarcerated. Plaintiff Campbell informed the representative that he would be taking legal action against JND HOLDINGS and KEOUGH and he was then told to go sue EQUIFAX for his losses.

87.     Contrary to their public statements, and written contract, JND HOLDINGS and KEOUGH never provided Plaintiff Campbell with a claim form upon request for one simply because he was, or still is, incarcerated. At all relevant times, JND HOLDINGS and KEOUGH breached their written contract with Plaintiff Campbell causing additional damages to him. The contract that JND HOLDINGS and KEOUGH agreed upon, was for the benefit of Plaintiff Campbell. Defendants JND HOLDINGS and KEOUGH agreed in writing to compensate Plaintiff Campbell for his damages once he filed a timely claim for damages with them. Defendants JND HOLDINGS and KEOUGH knowingly and willingly breached that contract that JND HOLDINGS and KEOUGH agreed in writing to, by refusing to pay Plaintiff Campbell for his financial losses. At all times relevant, JND HOLDINGS and KEOUGH breached that contract between the parties and intentionally interfered with Plaintiff Campbell's' contractual relations with EQUIFAX.

88.     At all relevant times, JND HOLDINGS and KEOUGH falsely advertised on the Internet, in letters mailed to Plaintiffs and class members, and elsewhere that they would provide a claim form to anyone who requested one. JND HOLDINGS and KEOUGH knew all of this was false, amounted to false advertising and still made their false statements to the Courts, media, place on the Internet, and in letters mailed to Plaintiffs but still made the false statements anyways. Defendants JND HOLDINGS and KEOUGH knew and had reason to know that they were violating one or more law in Georgia but did it anyways.

24

89.     As a direct and proximate result of the actions of JND HOLDINGS and KEOUGH, the Plaintiff Campbell has been damaged in an amount to be determined at trial. As a further and direct result of the actions of JND HOLDINGS and KEOUGH, had they paid and compensated the Plaintiff Campbell for his damages, he could have used the funds to help his family members obtain housing, and a new car. At all times relevant, JND HOLDINGS and KEOUGH violated the written contract that required them to pay Plaintiff Jones for his damages causing him additional damages, costs and other unknown costs.

### Plaintiffs Contact Defendant Mark Begor And Equifax Concerning The Unlawful And Unfair Business Practices Of JND Holdings And Keough

90.     On or about May 10, 2022, the Plaintiffs in this case sent a group demand letter signed by all of the Plaintiffs appearing in this case to the current President and Chief Executive at EQUIFAX, Defendant BEGOR and EQUIFAX outlining the misconduct of JND HOLDINGS and KEOUGH. In their letter to BEGOR and EQUIFAX, the Plaintiffs pointed out that prisoners in Georgia and likely other states are being denied access to EQUIFAX claims forms and compensation based on the facts that they are prisoners. Further, the letter went on to place BEGOR and EQUIFAX on notice that the conduct of JND HOLDINGS and KEOUGH is illegal, unauthorized and should not be condoned. Furthermore, by denying compensation to Plaintiff Oliver for retaliatory reasons was also illegal as a matter of law.

91.     As the Plaintiffs correctly pointed out in their letter, Defendants JND HOLDINGS and KEOUGH were knowingly, willingly and intentionally violating the terms of their agreement with both EQUIFAX, the federal Court, and JUDGE THRASHER because they were either incarcerated, or gay people.

92.     The Plaintiffs demanded in their letter to BEGOR and EQUIFAX that they direct JND HOLDINGS and KEOUGH to immediately cease and desist in illegal business practices, and to further stop breaching their written agreement with the Plaintiffs. However, what came as no surprise to anyone, neither BEGOR and EQUIFAX responded to the Plaintiffs demand letter. Upon information and belief, the Plaintiffs believe and thereon allege that BEGOR and EQUIFAX never intervened in directing JND HOLDINGS and KEOUGH to cease and desist in their policy of denying the Plaintiffs, and prisoners EQUIFAX claim forms, or denying compensation to the Plaintiffs and prisoners, because the less money that BEGOR, EQUIFAX, JND HOLDINGS and KEOUGH paid out to prisoners and the Plaintiffs,

the more money that would be left over in the EQUIFAX class action, and would later be transferred back to BEGOR and EQUIFAX thereby saving them money. Simply said, the less money BEGOR and EQUIFAX had to pay the Plaintiffs and prisoners, the more money they would have at the end of the day as any class action settlement funds left over from a class action is automatically transmitted back to the Defendant in the class action like EQUIFAX and BEGOR. At all relevant time, BEGOR and EQUIFAX were placed on advanced notice of the illegal business practices carried out by JND HOLDINGS and KEOUGH, but did nothing to protect the Plaintiffs and prisoners thereby causing damages to the Plaintiffs in this case. Had BEGOR and EQUIFAX to steps to protect the Plaintiffs, this lawsuit would have never been filed.

93.    The actions of each of the Defendants were intentional, reckless, and carried out with the intent to intentionally injure the said Plaintiffs in more ways then one. Therefore, the Plaintiffs are absolutely entitled to an award of punitive damages to make an example out of each of the Defendants pursuant to O.C.G.A. § 51-12-5.1.

**FIRST CAUSE OF ACTION**
**Breach of Contract Under Georgia State Law**
**Plaintiffs v. Equifax Information Services, L.L.C.**

94.    Plaintiff incorporate each of the paragraphs of this Complaint as if fully set forth herein.

95.    Plaintiff had a valid contract with EQUIFAX that Plaintiff Oliver, and Plaintiff Anderson would be paid funds from the EQUIFAX class action settlement fund for Plaintiff Oliver, and Plaintiff Anderson to receive funds, and to be reimbursed any and all costs associated with being a victim of identity theft. EQUIFAX agreed to, among other things, to pay Plaintiff Oliver, and Plaintiff Anderson money for his damages, injuries, and was placed on notice that he did not receive any money from JND HOLDINGS and KEOUGH, but EQUIFAX did not to fulfill its part of the contract.

96.    At all relevant times, Plaintiff Oliver, and Plaintiff Anderson  was, and still is, class members to the EQUIFAX multi-district class action lawsuit still pending in the United States District Court, the Northern District of Georgia. When EQUIFAX agreed to pay the class Plaintiff's, and members, EQUIFAX agreed to pay Plaintiff Oliver, and Plaintiff Anderson .

26

97.     Upon information, and belief, EQUIFAX did transmit to JND HOLDINGS, and KEOUGH over $ 800 million dollars to pay the class members, including Plaintiff Oliver, and Plaintiff Anderson  in this federal lawsuit.

98.     Plaintiffs on one side, and EQUIFAX on the other formed a contract through the settlement terms, and conditions of the federal lawsuit agreement. EQUIFAX breached its agreement when EQUIFAX : (1) failed to take reasonable steps to direct and/or order JND HOLDINGS to pay the Plaintiffs ; (2) failed to pay the Plaintiffs  directly, or indirectly; and (3) failed to promptly resolve the matter by notifying the federal Court that the class action administrator breached its duty owed to them. As  a  direct  and  proximate  result  of EQUIFAX's  breach  of  contract, Plaintiff  has sustained  actual  losses, and  damages  as described  in detail above, and  the Plaintiffs are also  entitled  to recover substantial nominal damages. As a further, and direct result of the actions, the Plaintiffs  have been damaged in an amount to be determined at trial as the Plaintiffs  seek damages jointly, and several against all of the Defendants.

## SECOND CAUSE OF ACTION
### Breach of Contract Under Georgia State Law
### Plaintiffs v. JND HOLDINGS, L.L.C., and Jennifer Keough

99.     Plaintiffs incorporate each of the paragraphs of this Complaint as if fully set forth herein.

100.     Defendants JND HOLDINGS and KEOUGH filed numerous declarations with the United States District Court, the Northern District of Georgia that they would serve as the class action  administrator  if  they  were  appointed  to  serve  as  the  administrator  in  the EQUIFAX.

101.     Defendants  JND  HOLDINGS  and  KEOUGH  signed  a  contract  with  the defense attorney's of record, EQUIFAX, and the Court that they would process claims, remit payment to the class members, class attorneys, and Plaintiffs. Each Plaintiff in this lawsuit was, and still are, class members that were, and still are, entitled to money that JND HOLDINGS and KEOUGH are required to pay. But they had no intention of paying to Plaintiff Oliver, and the rest of the Plaintiff. Defendants JND HOLDINGS and KEOUGH further informed the attorney's of record, EQUIFAX, and the Court that it would process all of claims filed by the Plaintiffs and class members, but JND HOLDINGS and KEOUGH failed, and refused to do so for personal reasons.

27

102.    JND HOLDINGS and KEOUGH has failed, and refused to remit any payment to Plaintiff Oliver in the amount of $ 5,016.42; Plaintiff Anderson in the amount of $ 2,098.00; Emory Lopez in the amount of $ 936.00; Maurice Bentley in the amount of $ 1,500; Thomas Campbell in the amount of $ 1,600; and Daniel Jones in the amount of $ 6,636.00, thereby causing injuries sustained by Plaintiffs. In sum, Plaintiffs in this case seek  relief  under O.C.G.A. § 10-1-912 including  actual damages, and injunctive  relief.

103.    As direct and proximate result of the Defendants' actions, Plaintiff suffers and continues to suffer severe mental anguish and emotional and physical distress. Plaintiffs believe and thereon alleges that the Defendants JND HOLDINGS and KEOUGH will continue to deny the Plaintiffs any payment, or settlement funds where JND HOLDINGS is appointed to serve as a class action administrator where Plaintiff Oliver, and the Plaintiffs as class Plaintiffs or class members. As a further, and direct result of the actions, Plaintiffs have been damaged in an amount to be determined at trial as Plaintiffs seek damages jointly, and several against all of the Defendants.

104.    The actions of the Defendants, and each of them, were carried out intentionally, and with the intent to harm each of the Plaintiffs simply because they are incarcerated, or gay people.

**THIRD CAUSE OF ACTION**
**Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, et seq.**
**Plaintiffs v. JND HOLDINGS, L.L.C., and Jennifer Keough**

105.    Plaintiffs incorporate each of the paragraphs of this Complaint as if fully set forth herein.

106.    Plaintiff, JND HOLDINGS, and KEOUGH are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

107.    JND HOLDINGS, and KEOUGH engaged in deceptive trade practices in the conduct of its business, in violation of O.C.G.A. § 10-1-372(a), including:

    a.    **Representing that goods or services have characteristics that they do not have, or posses;**

    b.    **Representing that goods or services are of a particular standard, quality, or grade if they are of another;**

28

  **c.**  **Advertising goods or services with intent not to sell, or provide them as advertised; and**

  **d.**  **Engaging in other conduct that creates a likelihood of confusion or misunderstanding.**

108. JND HOLDINGS, and KEOUGH's deceptive trade practices include:

  **a.**  **Refusing to process settlement claims filed by Plaintiff Oliver, and the Plaintiffs in this case ;**

  **b.**  **Failing to send the Plaintiffs and prisoners claim forms for the EQUIFAX class action;**

  **c.**  **Lying to a United States Federal District Judge by stating that JND HOLDINGS and KEOUGH would serve as the administrator to the**

    **EQUIFAX class action, process claims by any person including the Plaintiffs, who filed a claim, process payments, mail claim and issue them to the Plaintiffs, but JND HOLDINGS, and KEOUGH did none of these things, and instead, pocketed the settlement funds;**

  **d.**  **Omitting, suppressing, and concealing the material fact that JND HOLDINGS, and KEOUGH would not reasonably or adequately process any claims, or payments filed by the Plaintiffs and prisoners;**

109. JND HOLDINGS, and KEOUGH's representations, and omissions were material because they were likely to deceive reasonable class members like Plaintiffs about the adequacy, and competency of the settlement administrations ability to process claims, and payments. JND HOLDINGS, and KEOUGH intended to mislead Plaintiffs, and other members of the class, and induce them to rely on its misrepresentations and omissions made by JND HOLDINGS, and KEOUGH.

110. In the course of its business, JND HOLDINGS, and KEOUGH engaged in activities with a tendency or capacity to deceive a Federal Judge, the class attorneys, and most importantly, the Plaintiffs and prisoners.

111.   JND HOLDINGS, and KEOUGH acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs rights under Georgia State law.  Plaintiff's numerous letters that placed JND HOLDINGS, and KEOUGH on notice that their conduct was illegal, and violated Georgia's UDTPA laws and statutes, but JND HOLDINGS, and KEOUGH continued their criminal and civil misconduct. The letters mailed by the Plaintiffs to KEOUGH and JND HOLDINGS gave them ample opportunity to act, stop their discriminatory business practices, stop violating Georgia's UDTPA statute, provide prisoners with EQUIFAX claims forms, and pay the Plaintiffs their compensation, but the Defendants took no action whatsoever. Plaintiffs seek all relief allowed by law, including injunctive relief, and costs of suit under O.C.G.A. § 10-1-373.

112.   Because the actions of JND HOLDINGS, and KEOUGH were intentional, reckless, and carried out with a complete disregard for the rights of the Plaintiffs, they are entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

**FOURTH CAUSE OF ACTION**
**Interference With Contractual Relations**
**Plaintiffs v. All Defendants**

113.   Plaintiffs incorporate each of the paragraphs of this Complaint as if fully set forth.

114.   Defendants EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH intentionally interfered with the Plaintiffs's contractual relations between themselves, and EQIFAX and BEGOR, by refusing to pay the Plaintiffs the settlement funds and amount of as a part of their claims and agreement with EQUIFAX and BEGOR based on evidence he submitted for his settlement claims.

115.    As a separate but closely related allegation, Defendants EQUIFAX and BEGOR knowingly interfered with the Plaintiffs contractual relations between them and the federal Court when they refused to intervene, supervise, and order JND HOLDINGS, and KEOUGH to pay the Plaintiffs their settlement funds.

116.   Further, EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH intentionally interfered with the Plaintiffs contractual relations between themselves and prospective attorneys, vehicles, residence, and other contracts.

30

117.    Defendants EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH knew, or had reason to know that there was a valid, and existing contract between the Plaintiffs and the Court to receive settlement funds, but EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH unlawfully interfered with the Plaintiffs receiving their funds that they were, and are entitled to as a matter of law under the laws of the State of Georgia and the contract that the Defendants agreed upon. By EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH not paying the Plaintiffs, they have been damaged, and their contractual relations interfered with by each of the Defendants. As a direct result of the actions of the EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH, the Plaintiff's have been damaged in an amount to be determined at trial. Accordingly, the Plaintiff's are entitled to an award of punitive damages to make an example of each Defendant pursuant to O.C.G.A. § 51-12-5.1.

### FIFTH CAUSE OF ACTION
### Negligent Hiring, Training & Supervision
### Plaintiffs v. Equifax Information Services, L.L.C. and Mark Begor

118.    Plaintiffs incorporate each of the paragraphs of this Complaint as if fully set forth herein.

119.    Defendants EQUIFAX and BEGOR made the personal and official decision to retain and hire Defendants JND HOLDINGS, and KEOUGH as their class action administrator to be appointed in the EQUIFAX data breach federal lawsuit. Before JND HOLDINGS, and KEOUGH sought appointment as administrator, EQUIFAX and BEGOR reviewed the terms of the settlement, several declarations by KEOUGH, and despite knowing that JND HOLDINGS, and KEOUGH would never fulfill their duties, both EQUIFAX and BEGOR approved their co-Defendants to serve as the administrator.

120.    Once the settlement funds of $ 385,500,000 was transmitted to JND HOLDINGS, and KEOUGH to be disbursed, EQUIFAX and BEGOR owed a duty to the Plaintiffs to properly supervise JND HOLDINGS, and KEOUGH to ensure that they complied with the terms of the written contract, but EQUIFAX and BEGOR never supervised them leaving JND HOLDINGS, and KEOUGH to dictate who they pay, and did not pay using EQUIFAX and BEGOR's settlement funds.

121.    Despite being placed on substantial notice that JND HOLDINGS, and KEOUGH were violating the terms of the contract, and denying compensation to gay people, prisoners and the Plaintiffs, EQUIFAX and BEGOR took no affirmative action to order JND

HOLDINGS, and KEOUGH to stop their illegal acts, nor direct them to immediately pay the Plaintiffs. Another words, once the settlement funds left the hands of EQUIFAX and BEGOR, they no longer cared about the Plaintiffs, and the terms of the contract that they entered into with on behalf of the Plaintiffs thereby causing the Plaintiffs irreparable, and incomprehensible injuries.

122.    Defendants EQUIFAX and BEGOR's negligence  in  hiring  JND HOLDINGS, and KEOUGH,  entrusting  them  to disperse funds, not breach the terms of the agreement, and failing to train and supervise JND HOLDINGS, and KEOUGH properly were the proximate cause of the Plaintiffs damage and injuries at issue and other unknown injuries and damages to the Plaintiff.

123.    As a result of the actions EQUIFAX and BEGOR negligent supervision, training, and hiring, the Plaintiffs are entitled to an award of punitive damages to make a clear and present example of EQUIFAX and BEGOR pursuant to O.C.G.A. § 51-12-5.1.

### SIXTH CAUSE OF ACTION
### Punitive Damages
### Plaintiffs v. All Defendants

124.    Plaintiff incorporates each of the paragraphs of this Complaint as if fully set forth herein.

125.    The allegations contained in the preceding paragraphs are hereby incorporated herein by reference against all Defendants as they have exhibited bad faith in their conduct and, dealings with each of the Plaintiffs in this case.

126.    Defendants EQUIFAX, BEGOR, JND HOLDINGS, and KEOUGH breached their duty owed to Plaintiffs to remit payment, process claims, mail claims forms, not interfere with the payment process, deny compensation, or directly ensure that payments were made available to the Plaintiffs, and not deny compensation or forms simply because the Plaintiffs are gay people, or prisoners. Defendants and each of them, directly, and/or indirectly, failed and refused to do anything to ensure that the Plaintiffs were paid, and not denied compensation. Defendants and each of them knew, or had reason to know that they would be causing injuries to the Plaintiffs, but they still committed their illegal and unlawful actions.

127.    Defendants were placed on advanced notice that the Plaintiffs were, and would not be receiving any settlement payments well in advanced from the Plaintiffs, and they still did nothing to correct the problem, or comply with the terms, and conditions setforth in the

contract between the Plaintiffs, EQUIFAX and BEGOR. Therefore, the Plaintiffs are entitled to recover punitive damages but not less then $ 15,000,000.00 dollars.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray for judgment against each of the Defendants as more fully set forth below:

1.　　For an award of compensatory damages according to proof;

2.　　For an award of special damages according to proof;

3.　　For an award of punitive damages against each of the Defendants;

4.　　Award pre- and post-judgment interest;

5.　　For an award of all costs of this lawsuit and litigation;

6.　　For an order of this Court for declaratory relief that each of the Defendants violated the terms and agreement of the written contract between themselves, and the Plaintiffs;

7.　　For an order of this Court for declaratory relief that Defendants JND Holdings, L.L.C., and Jennifer have discriminated against each of the Plaintiffs for either personal animosity, for being lesbian, gay, bisexual or transgender, or prisoners ;

8.　　For an order of this Court for injunctive relief ordering the Defendants and each of them to pay the Plaintiffs their settlement funds;

9.　　For an order of this Court for injunctive relief ordering the Defendants and each of them to stop their illegal acts of denying compensation to Plaintiffs ;

10.　　For an order of this Court enjoining each of the Defendants, their counsel and any third-party persons or entities from retaliating against the Plaintiffs for initiating this lawsuit;

11.　　For an order of this Court directing JND Holdings, L.L.C., and Jennifer Keough to provide notice and a copy of this lawsuit to be filed in every lawsuit in which JND Holdings, L.L.C., and Jennifer Keough is appointed or is seeking appointment as class administrator in any and all class action lawsuits;

12.　　For injunctive relief preventing JND Holdings, L.L.C, and Jennifer Keough from ever serving as a class action administrator in the State of Georgia in any State or Federal lawsuits filed in the State of Georgia;

33

13.     For an order of this Court directing JND Holdings, L.L.C., and Jennifer Keough to cease and desist in any further business tractions, and/or from transacting business within the State of Georgia;

14.     For an order of this Court directing the Georgia Secretary of State to suspend and/or revoke Equifax Information Services, L.L.C.'s corporation business license;

15.     For an order of this Court directing each of the Defendants to notify Judge Timothy Thrash and the Clerk of the United States District Court, for the Northern District of Georgia concerning the pendency of this action;

16.     For an order of this Court directing JND Holdings, L.L.C., and Jennifer KEOUGH to immediately start mailing Equifax settlement claim forms to any Plaintiff or class member who requests a claim form;

17.     For an order of this Court recommending that the District Attorney of Fulton, and Chatham counties investigate the Defendants for their fraudulent business transactions for criminal and civil prosecution;

18.     For declaratory judgment that the Defendants breached, or caused to be breached, the contract between Plaintiff Oliver, and Plaintiff Anderson, and the Defendants;

19.     For a permanent order of this Court preventing JND Holding, L.L.C., and Jennifer Keough from ever serving as a class action administrator in the State of Georgia;

20.     In addition to actual damages, statutory damages as allowed by law;

21.     Any and other further relief as this Court deems just and proper.

Date: _SEPTEMBER 28, 2022_        Date: _9-28-22_

Respectfully submitted,                   Respectfully submitted,

Anthony Oliver, Plaintiff Pro Se          John Anderson, Plaintiff Pro Se
GDC # 1002060648                          22 W. Bryan Street
Augusta State Medical Prison              Suite # 174
3001 Gordon Highway                       Savannah Georgia 31401
Grovetown Georgia 30813

34

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY,
PERMANENT, AND INJUNCTIVE RELIEF

Date: 9-28-2022                          Date: 9/28/2022

Respectfully submitted,                  Respectfully submitted,


Daniel Jones, GDC # 1189476              Maurice Bentley, GDC #
Augusta State Medical Prison             Augusta State Medical Prison
3001 Gordon Highway                      3001 Gordon Highway
Grovetown Georgia 30813                  Grovetown Georgia 30813

Date: 9-28-22                            Date: _____

Respectfully submitted,


Thomas Campbell, GDC #
Augusta State Medical Prison
3001 Gordon Highway
Grovetown Georgia 30813


## JURY TRIAL DEMANDED

Under the Seventh Amendment to the United States Constitution, the Plaintiffs are entitled to, and does, hereby request a jury trial on all issues so triable.


Respectfully submitted,                  Respectfully submitted,


Anthony Oliver, Plaintiff Pro Se         John Anderson, Plaintiff Pro Se
GDC # 1002060648                         22 W. Bryan Street
Augusta State Medical Prison             Suite # 174
3001 Gordon Highway                      Savannah Georgia 31401
Grovetown Georgia 30813

Date: SEPTEMBER 28, 2022                 Date: 9-28-22


35

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY,
PERMANENT, AND INJUNCTIVE RELIEF

Respectfully submitted,

Daniel Jones, GDC # 1189476
Augusta State Medical Prison
3001 Gordon Highway
Grovetown Georgia 30813

Date: 9-28-2022

Respectfully submitted,

Maurice Bentley, GDC #
Augusta State Medical Prison
3001 Gordon Highway
Grovetown Georgia 30813

Date: 9/28/2022

Respectfully submitted,

Thomas Campbell, GDC # 1183329
Augusta State Medical Prison
3001 Gordon Highway
Grovetown Georgia 30813

Date: 9-28-22

36

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY,
PERMANENT, AND INJUNCTIVE RELIEF

Sept 28, 2022

Ms. Anonga Byington:

Please Find Enclosed a Civil Filing For Chatham County Superior Court Case No: SPCV22-00681-WA.

Enclosed is a Request To File Litigating With Exhibits Attached As:

Exhibit A - SPCR19-02076-J4.

Exhibit B - Motion For Leave To Amend And Proposed First Amended Complaint.

Thank you.