UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800 No. 1:17-md-2800-TWT<br><br>ALL ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

**RESPONSE OF NON-PARTY JND LEGAL ADMINISTRATION TO PLAINTIFFS' MOTION FOR ORDER TO DISCLOSE INFORMATION**

JND Legal Administration ("JND"), which has served as the settlement administrator in this action for over seven years, respectfully submits this response to Plaintiffs' Motion for Order to Disclose Information Related to Legal Administration (Doc. 1293). Though they cite no authority authorizing post-litigation discovery against a settlement administrator, Class Counsel belatedly seek to compel JND to provide details about rebates, credits, or other benefits received from vendors or banks in the course of its work on this case.

The Court should deny the motion. The engagement agreement that has governed JND's role from the start—an agreement Class Counsel reviewed, scrutinized, edited, and ultimately approved—expressly provides that JND may receive such benefits and they are "solely the property of JND." Notably, Class

1

Counsel first reviewed, and ultimately approved, this exact provision seven years ago, before JND was even formally engaged as settlement administrator.  As explained below, Class Counsel's motion fails to identify why—seven years later and in the final stages of this long-running litigation—they need the requested proprietary information, especially in light of the above provision expressly authorizing all such benefits. Because Class Counsel's post-litigation discovery request lacks a valid factual or legal basis and would serve no useful purpose, the Court should deny the motion.

### A.    JND Has Delivered Exceptional Performance in this Groundbreaking Settlement.

The parties named JND as their settlement administrator in their Settlement Agreement, and the Court appointed JND as settlement administrator by order of July 22, 2019 (Doc. 742).  JND is proud of its track record of providing excellent service to the Court and the parties, as well as its role facilitating the execution of an overwhelmingly successful—and colossal—settlement process in this case.

As the Court found in its 2020 order granting final approval, this was "the largest data breach settlement in history," exceeding "the total recovered in all consumer data breach settlements in the last ten years." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *34 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F.3d 1247 (11th Cir. 2021).  A settlement of that massive scale

posed daunting challenges for administration, and at every step of the way JND met those challenges. The Court observed that JND "is highly experienced in administering large class action settlements and judgments" and took extensive efforts to "administer[] the settlement, facilitat[e] claims, and ensur[e] those claims are properly and efficiently handled." *Id.* at *8. By "develop[ing] protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims," JND demonstrated its "capacity to handle class member inquiries and claims of this magnitude." *Id.*

For example, upon receiving over 140 million class records from the defendant, JND developed a final class list of about 100 million individuals, a process that demanded extensive research and analysis. JND then helped design and implemented a "first-of-its kind" notice program that was "unprecedented in scope and impact," bringing "a significant benefit to the class." *Id.* at *3. After JND sent four rounds of email notice to all 100 million class members, "the response from the class [was] unprecedented," with a claims rate exceeding 10%, which is considered a highly successful outcome in consumer class action settlements. *Id.* at *5.

JND also (1) designed and built a secure case-specific website in English and Spanish that hosted all settlement documents, FAQs, and other features and ultimately received more than 200 million visits; (2) created a highly sophisticated and unique "Am I Impacted" tool that interfaced directly with Equifax data to

determine whether an inquiring individual was a class member; (3) developed an online claim form that met the highest standards for security as well as being capable of handling millions of claims per day; (4) built a portal allowing claimants to check the status of their claim at any time; and (5) established a 24/7 call center that was staffed by over 150 personnel and received over 100,000 operator calls.[1]

As a result of these efforts, class members filed over 18 million claims with JND (over 10 million in the first week alone).  JND reviewed and evaluated all of these claims, including adjudication of any claims by class members for money spent, which required review and assessment of extensive supporting documentation.  JND ultimately distributed over $147 million to over 6,650,000 Settlement Class Members.

As Class Counsel's motion notes (Doc. 1293 at 3-4 n.1), in late 2024, the parties directed JND to proceed with a secondary distribution of remaining funds to class members.  While class members had a choice between paper checks and prepaid debit cards for the initial distribution, Class Counsel directed JND to proceed with the remainder disbursement exclusively via digital prepaid debit cards, which offer numerous advantages over mailing physical checks (*e.g.*, savings on postage

---

[1] Many of these efforts are described in greater detail in the December 5, 2019 Declaration of JND CEO Jennifer M. Keough Regarding Implementation of Settlement Administration Program, filed with the Court at the final approval stage. Doc. 900-4.

and handling and obviating mis-delivery risks).  JND took painstaking efforts to make class members aware of the prepaid-card remainder payment and how to use it.  Before sending the digital prepaid cards, JND emailed recipients to notify them that a card would be coming.  When JND sent the cards, it referred claimants to the *Equifax* Data Breach Settlement website for activation codes and updated the website on a continuing basis to include detailed instructions.  Most importantly, after initially sending the cards, JND followed up with numerous rounds of email reminders to class members to activate and use their cards, sending more than 23 million such emails over the ensuing twelve months.

> **B.      JND's Engagement Document, Approved by Class Counsel, Authorizes JND to Receive Outside Income Through Arrangements with Vendors and Financial Institutions.**

> **1. The JND Engagement Agreement Discloses that JND May Receive and Retain Benefits from Vendors and Banks**

Class Counsel seek an order requiring JND to disclose "the amount of any rebates, awards and/or credits from vendors, and financial benefits from banks or any institutions."  Doc. 1293 at 7.  But as Class Counsel's motion acknowledges (at 5), the seven-year old engagement agreement through which JND agreed to provide services in this matter provides:

> JND may receive rebates or credits from vendors in connection with volume of work performed in connection with its overall business. JND may also receive financial benefits from banks or other institutions

> based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

*See* Ex. A.  This unambiguous provision authorizes JND to receive such income, which becomes "solely the property of JND," without any conditions, further disclosures, or other requirements.  *Id.*  It does not require JND to quantify any amounts.  Further, the authorized rebates, credits, and benefits are based on JND's continuing relationships with vendors across its overall business, *i.e.*, all of the cases it works on, not just one case.

### 2. Class Counsel Reviewed and Commented on JND's Engagement Agreement, and Then Approved It

To the extent that Class Counsel now have a substantive concern with the JND engagement agreement seven years after it was approved, the Court should be aware that Class Counsel also approved it.  Although the engagement agreement is directly between JND and Equifax, Class Counsel were given numerous opportunities to review and comment on it and approved the final agreement, including the above authorization, before JND and Equifax executed the contract.

In November 2018, well before the preliminary approval motion, JND sent Class Counsel and Equifax counsel "JND's proposal to handle the Administration related to [this action]."  Ex. B.  That proposal contained JND's standard terms and conditions, including that

6

JND may receive rebates or credits from vendors in connection with volume of work performed for all of its Clients. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

On June 21, 2019, Class Counsel sent JND a redline of JND's proposed terms and conditions. *See* Ex. C. In that redline, Class Counsel highlighted the above provision and annotated the draft with the comment: "Not sure if JND should be receiving benefits beyond what it is directly charging to the Settlement Fund." *Id.*



Class Counsel were thus well aware that the contract, as drafted, would authorize JND to earn rebates, credits, and other benefits from banks or vendors in addition to the charges for time and expenses that JND would charge to the Settlement Fund. Notably, however, JND declined to cede its ability to receive such rebates, credits, and benefits. And, despite initially raising questions about this provision, Class Counsel ultimately assented to it.

After Class Counsel's redline acknowledging the rebates and credits authorization, Equifax's counsel circulated a revised version of the agreement. *See* Ex. D. That revision changed the phrase "in connection with volume of work performed for all of its Clients" in the relevant provision to "in connection with

volume of work performed for Class Counsel and Equifax," while otherwise keeping the provision intact. *Id.* On July 9, 2019, JND sent Class Counsel proposed changes to Equifax's document. *See* Ex. E. That markup changed "in connection with volume of work performed for Class Counsel and Equifax" to "in connection with its overall business," reverting to phrasing similar to JND's original draft. *Id.*

Thus, rather than accommodating Class Counsel's June 21, 2019 comment by deleting the rebates and credits authorization altogether, the parties negotiated new language that resembled JND's original formulation.

On July 20, 2019, as the contract neared finalization and execution, Equifax's counsel and Class Counsel exchanged emails about the JND agreement, which continued to include the rebates and credits authorization. *See* Ex. F. Class Counsel advised Equifax's counsel that they "do not object to this agreement." *Id.* Class Counsel also confirmed the same directly to JND's principals: "We are not objecting. Thank you for giving us a heads-up." Ex. G. Class Counsel reiterated their assent a third time when JND followed up for clarification about a separate question: "Correct. No objection to the general services agreement. . . . Thanks so much for your hard work on all of this." *Id.*

In short, the provision authorizing rebates and benefits and making them solely the property of JND, without any obligation to make additional disclosures, was an integral part of the bargain JND struck to provide the services it did. Class

Counsel's time to criticize that bargain was seven years ago, not in the waning moments of a class action that this Court has overseen for years.

### C. The Needlessly Intrusive Relief Class Counsel Seek Lacks Any Factual or Legal Basis and Would Serve No Useful Purpose.

Class Counsel do not cite any statute, regulation, precedential or persuasive court decision, court rule, order of this Court, settlement agreement provision, or engagement agreement provision that justifies their unusual request for JND's proprietary financial information. That is because there is none.

Nor do Class Counsel explain what purpose the requested disclosure would serve or what they would do with the information. There is no allegation that JND received some compensation or benefit that was not expressly allowed in the engagement agreement. And while class members have brought various concerns about the settlement to the Court's attention from time to time, to JND's knowledge, no class members have raised any issues with the Court about JND's compensation. That is because class members have received all of the relief to which they were entitled under the settlement. No payment to JND in any way diluted the amounts class members were due to receive.

Rather, Class Counsel explain that their unusual request to this Court is prompted by their reading untested allegations against several settlement administrators, including JND, in an April 2025 Pennsylvania lawsuit called *Baker*

*v. Angeion Group LLC, et al.*, and later recycled in a consolidated amended complaint in an ensuing MDL in D.C.  *See* Doc. 1293 at 3, 6 (asking the Court to issue an order "[i]n light of the allegations made in *Baker*").  Those allegations are entirely meritless, using group pleading, "upon information and belief" qualifiers, and innuendo to try to sweep JND into a set of claims aimed primarily at other companies in the industry.  JND has moved to dismiss the MDL lawsuit on numerous grounds, including the provision authorizing rebates and benefits.  *See* JND Legal Administration's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint, Doc. 144, *In re Class Action Settlement Admin. Litig.*, Misc. A. No. 25-179 (JDB) (D.D.C.) (filed July 17, 2026).  Although Class Counsel cite these allegations—made in collateral litigation that has not advanced past the pleadings stage, notably, they do not take the position that the allegations are true (which they are certainly not).

Lacking any actual authority supporting their unusual request, Class Counsel point to activity that has occurred over the last year in two other class actions in the wake of the *Baker* complaint:  *In re: Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-2843-VC (N.D. Cal.) and *Gibson, et al. v. The Nat'l Ass'n of Realtors, et al.*, No. 23-cv-788-SRB (W.D. Mo.).  *Id.* at 6-7.  Nothing that has happened in those cases supports granting Class Counsel's motion here.

In *Facebook*, the settlement administrator (another administrator, not JND) *voluntarily* disclosed information ahead of the "commencement of distribution" to aid the court's decision whether prepaid Mastercards or alternative means should be used in that distribution. *See Facebook* Doc. 1238 at 1. There was no court order compelling disclosure like Class Counsel requests here. In fact, the only relevant action taken by the court (Hon. Vince Chhabria) was to order that prepaid Mastercards be used notwithstanding that the administrator "receives an undisclosed sum [from the card issuer]." *Id*. at 3; *see also Facebook* Doc. 1241 (Minute Order: "The Court has considered the options . . . The parties should go with Option 1 (Proceeding with Prepaid Mastercards)." In *Realtors*, distributions likewise have not commenced due to pending objector appeals, and the court (Hon. Stephen R. Bough) ordered quarterly accountings of fees and expenses on an ongoing basis purely for the sake of transparency, not as a result of finding or suspicion of wrongdoing. *Realtors* Doc. 757.

Here, in contrast to *Facebook* and *Realtors*, final approval occurred over six years ago, two massive distributions to class members have already occurred, and this settlement is in its final phase. To JND's knowledge, the information that Class Counsel seeks would not aid the Court's resolution of any motion or other issue pending before it. Again, Class Counsel do not explain why the Court should order

11

intrusive disclosure of JND's proprietary details about its business at this late date. Curiosity is not a proper basis for the extraordinary relief sought here.

*** 

For the foregoing reasons, JND respectfully requests that the Court deny Class Counsel's motion. Should the Court have any questions or require any additional information about JND's administration of the settlement or the allegations in *Baker* or the MDL, JND stands ready to address any such matters either *in camera* or however the Court sees fit.

Respectfully submitted this 24th day of July, 2026,

/s/ Kamal Ghali
Kamal Ghali
Georgia Bar No. 805055
kghali@chaikenghali.com
CHAIKEN GHALI LLP
1201 W. Peachtree Street, Suite 2300
Atlanta, GA 30309
(404) 795-5005

Robert J. Katerberg*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. N.W.
Washington, D.C. 20001
(202) 942-6289
Robert.katerberg@arnoldporter.com

E. Alex Beroukhim*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017

(213) 243-4059
Alex.beroukhim@arnoldporter.com

*Counsel for Non-Party JND Legal
Administration*

\* *Pro hac vice* applications to be filed if the
Court determines further proceedings
relating to this matter are necessary

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document has been prepared in compliance with Northern District of Georgia Local Rules 5.1C and 7.1D.

This 24th day of July, 2026.

*/s/ Kamal Ghali*
Kamal Ghali

*Counsel for Non-Party JND Legal Administration*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will automatically serve such filing on all counsel of record.

This 24th day of July, 2026.

*/s/ Kamal Ghali*
Kamal Ghali

*Counsel for Non-Party JND Legal Administration*

15