# Exhibit A



This agreement ("Agreement") is effective as of July 20, 2019 by and between JND Legal Administration ("JND"), and Equifax Inc. ("Equifax"), relating to *Equifax Inc., Customer Data Security Breach Litigation*, MDL No. 2800 (the "Class Action"). Equifax and JND are individually referred to as a "Party" and together as the "Parties." References to Equifax herein shall also be deemed to include affiliates of Equifax.

1. SERVICES: JND shall perform all services or duties assigned to the "Settlement Administrator" in any orders, settlement agreements, protocols, plans and other documents (collectively, as described herein, the "Orders") that are approved by the court in the Class Action ("Court") that pertain to the administration of the settlement of the Class Action, or are set forth herein (collectively, the "Services"). JND shall comply with the Orders and perform all Services in accordance with the Orders. Any terms of the Orders that are required by their terms to be included in this Agreement are hereby incorporated herein. Such Services do not in any way constitute legal services or advice. The Services shall be performed within the United States, unless otherwise ordered by the Court. .

2. PAYMENT: In consideration for providing the Services, class counsel in the Class Action ("Class Counsel") will request the Court approve payment of JND's professional fees from the settlement fund in the Class Action ("Settlement Fund") in the amounts set forth on Schedule 1 of this Agreement ("Fees"). If approved by the Court, payment of Fees and reimbursement of expenses (as described in Section 3) shall be made in accordance with the general terms and conditions set forth on Schedule 1. Schedule 1 is not a cap, but rather a good faith estimate by JND, as of July 3, 2019, of the expected charges for the Services, and any material deviation must be approved in writing by the Court. JND reserves the right to increase its hourly rates annually upon agreement by Equifax and Class Counsel.

3. EXPENSES: In accordance with Section 2, JND shall be reimbursed for all expenses reasonably incurred in connection with the Services. These expenses include, but are not limited to, postage, FedEx, P.O. Box rental ($150/month), travel, copies ($0.20 per copy), box storage ($1.50/box per month), accounting fees, electronic storage ($0.003 per image/record), and other items outlined in Schedule 1 and associated with the Services. JND may receive rebates or credits from vendors in connection with volume of work performed in connection with its overall business. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

4. BILLING:
   a. JND shall provide each invoice to Equifax and Class Counsel every thirty (30) days and expect payment from the Settlement Fund within thirty (30) days of receipt of invoices. Payment for postage and printing, as well as email notice, is due in advance of mailing.

   b. Subject to Section 3, JND shall be solely responsible for the payment of all employees, agents, approved subcontractors and other third parties engaged by or through JND to provide, perform or assist in the provision and delivery of the Services. JND shall bear all of its own expenses incurred in performing the Services specified in this Agreement or otherwise agreed to by Equifax and Class Counsel. Invoices for any expenses will be reimbursed only if these expenses are approved in writing in advance by Equifax and Class Counsel.

   c. For the Services or a part of the Services invoiced at an hourly rate: (i) JND employees, agents, subcontractors (including its employees), and consultants who are provided by JND to perform Services hereunder ("JND Employees") billing time for a particular Service or assignment shall maintain and submit a reasonably detailed timekeeping record with detail of the actual time being charged hereunder within the applicable timekeeping system(s); and (ii) back-up detail for invoices submitted shall be made available to the parties upon reasonable request.

5. CONFIDENTIALITY AND DATA USE LIMITATIONS: For the purposes of this Agreement, "Personal Information" shall mean any information that (a) identifies, relates to, is linked to, or is capable of being linked to an individual, household, or device; (b) is governed, regulated, or protected by one or more Applicable Privacy and Data Security Laws (as defined in Section 9 below); (c) is derived from other Personal Information; or (d) is associated with any other Personal Information. "Confidential Information" shall mean all information in any form or medium, including without limitation all Personal Information and

Proprietary information, whether or not marked or identified as confidential, that is (i) disclosed or provided to JND by or on behalf of Equifax; (ii) received by JND from Equifax or any third party acting on behalf of Equifax; or (iii) collected, created, received, maintained, modified, transmitted, used, disclosed, or accessed by JND in connection with or during the performance of the Services.

Notwithstanding anything to the contrary in any agreement, instructions, or documents relating to the Services contemplated under this Agreement: (a) JND and its affiliates and subcontractors shall only access, use, store, or disclose Confidential Information to perform the Services; and (b) notwithstanding the foregoing, JND may not disclose any Personal Information that is collected or received under this Agreement (including the list of Settlement Class Members) to, or allow any other party (including, in each case, any assignee, affiliate or subcontractor) to access such Personal Information, without the express, advance, written consent of Equifax. JND shall only permit access to Confidential Information or disclose Confidential Information to those employees who have a need to know that Confidential Information, except as permitted in this Agreement. JND shall not have any right to access, use, or disclose Confidential Information for JND's own purposes or for any other purposes.

Each Party acknowledges that any unauthorized disclosure or use of the disclosing Party's Confidential Information would irreparably damage the disclosing Party in such a way that the disclosing Party could not be compensated adequately in damages in an action at law. Accordingly, if any dispute arises concerning the receiving Party's disclosure or use of any Confidential Information, the disclosing Party may seek injunctive relief restraining any unauthorized disclosure or use, in addition to any other legal or equitable remedy otherwise available. No bond or other security will be required in connection with the pursuit of this injunction.

Equifax grants JND a limited, non-exclusive license to use and display Equifax trademarks, trade names, product names, brands, logos, and service marks ("Equifax Marks") solely in connection with the activities and Services performed pursuant to this Agreement. Use of the Equifax Marks must comply with Equifax's advertising and usage guidelines provided to JND, which Equifax may change from time to time upon written notice. All use of the Equifax Marks will accrue solely to the benefit of Equifax. Equifax shall have the right to review all uses of Equifax Marks and all content related thereto (including website content), and JND shall make any reasonable changes requested by Equifax. Upon any termination of this Agreement, the preceding licenses shall terminate, and JND shall cease all use of the Equifax Marks.

JND does not convey to Equifax any right in the programs, systems, or methodologies used or provided by JND in the performance of this Agreement. Equifax shall retain ownership of any and all (i) pre-existing or future trademarks, tradenames, or service marks owned or used by Equifax or its affiliates, (ii) Equifax Confidential Information, (iii) registered and unregistered rights granted or applied for related to any trademarks and service marks, patents, copyrights, trade secrets, moral rights for all purposes and uses, or other similar intellectual property rights, whether protected under the all applicable laws, orders, statutes, codes, regulations, ordinances, decrees, rules, subordinate legislation, treaties, directives, bylaws, or other requirements with similar effect of any governmental authority, each as updated from time to time ("Laws") of the United States of America, or some other jurisdiction possessed by Equifax and its affiliates ("Equifax Intellectual Property Rights"), and (iv) all Equifax Intellectual Property Rights relating to any of the foregoing (collectively, "Equifax Intellectual Property"). Except as set in subsection (a) above, nothing herein shall be deemed to grant any ownership rights or any other rights in any intellectual property rights of Equifax or its affiliates. Equifax and its licensors reserve all rights not expressly granted to JND hereunder, and nothing in this Agreement or the relationship between the Parties shall be deemed to grant any implied right or license.

To the extent expressly permitted by this Agreement, and subject to the restriction on the disclosure of Personal Information above, JND may disclose Confidential Information to its subcontractors that have a need to know that Confidential Information in order to perform the Services, provided that each subcontractor that receives Confidential Information is contractually bound to comply with terms at least as restrictive as the terms set forth in this Agreement. In the event that JND provides Confidential Information to any permitted subcontractor, JND shall not be relieved of any of its obligations under this Agreement with regard to that Confidential Information, shall remain liable and responsible for the performance of all of its obligations under this Agreement with regard to that Confidential Information, and shall be liable to Equifax for any acts or omissions of that permitted subcontractor in relation to that Confidential Information.

JND is committed to taking all reasonable steps to ensure the security of all Confidential Information, including all client and claimant data entrusted to our care. JND protects Confidential Information in all of our engagements, including this one, regardless of the size of the matter or the amount of data at issue. Please see JND's complete Privacy Policy at www.jndla.com/privacy-policy regarding data collection and use. Without limitation to any of the terms of this Agreement or expansion of JND's rights to Confidential Information, JND shall comply with that privacy policy.

Upon the termination or expiration of this Agreement, and whenever JND no longer needs to retain all or part of the Confidential Information in order to perform the Services, JND shall, at Equifax's option, immediately return and/or destroy that Confidential Information. In the event that Equifax opts to have JND to destroy that Confidential Information, JND shall destroy it using a final, secure, and complete method that will render that Confidential Information permanently unrecoverable. Upon Equifax's request, JND shall certify in writing that it has completed the destruction of that Confidential Information.

JND may disclose Confidential Information to a governmental authority if that disclosure is required by Law provided that: (i) to the extent permitted by Law, JND provides prior written notice of such disclosure to Equifax within twenty-four (24) hours of receipt of the request and that notice shall include a copy of the request and any related documents; (ii) JND takes all reasonable and lawful actions to avoid, and minimize the extent of, that disclosure; and (iii) if possible and reasonable to do so, before disclosing Confidential Information to the governmental authority JND reasonably cooperates with Equifax to resist that disclosure if Equifax chooses to do so.

JND's obligations relating to Section 5 for Confidential Information shall survive for as long as JND has access to any such Confidential Information, but in no event for a period shorter than five (5) years following the expiration or termination of this Agreement.

For the avoidance of doubt, and without limitation to any other terms of this Agreement, the Parties acknowledge and agree that, solely for the purposes of determining the Parties' obligations under any applicable laws requiring the notification to individuals, governmental entities or the media in the event of a Data Breach or other unauthorized access to Personal Information or the provision of credit monitoring services to the subject of such Personal Information, as between the Parties, JND shall be the owner and controller of all Personal Information that is created or received by JND pursuant to this Agreement. JND shall comply with all such laws and shall be responsible for carrying out any obligations imposed on the owner or controller (or any similar term) under such laws.

6.  LIMITATION OF DAMAGES: THE SETTLEMENT CLASS MEMBERS OF THE CLASS ACTION, CLASS COUNSEL, AND EQUIFAX SHALL NOT HAVE ANY LIABILITY WHATSOEVER WITH RESPECT TO ANY ACT OR OMISSION OF JND, OR ANY OF ITS SUBCONTRACTORS OR AFFILIATES, IN CONNECTION WITH ITS PROVISION OF THE SERVICES OR THE PERFORMANCE OF ITS DUTIES UNDER THIS AGREEMENT. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY PUNITIVE, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES (INCLUDING LOSS OF BUSINESS OPPORTUNITY OR LOST PROFITS OR REVENUE) IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES TO BE PROVIDED UNDER THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR CONTEMPLATED. EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED IN THE AGGREGATE FOR ALL CLAIMS TO AN AMOUNT NOT TO EXCEED THE GREATER OF (I) TOTAL AMOUNT BILLED HEREUNDER, OR (ii) IF EIGHTEEN (18) MONTHS HAVE NOT ELAPSED IN THE TERM AT THE TIME OF A CLAIM, THE ESTIMATED CHARGES FOR THE SERVICES SET FORTH HEREIN DURING THE FIRST EIGHTEEN (18) MONTHS OF THE TERM OF THIS AGREEMENT. THE FOREGOING LIMITATIONS OF LIABILITY SHALL NOT APPLY TO A PARTY'S BREACH OF SECTION 5 (CONFIDENTIALITY AND DATA USE LIMITATIONS), SECTION 9 (REPRESENTATIONS AND WARRANTIES), SCHEDULE 2 (CONFIDENTIALITY, PRIVACY AND DATA SECURITY), AND CLAIMS SUBJECT TO INDEMNITY PURSUANT TO SECTION 3 OF SCHEDULE 2 (INDEMNITY), OR A PARTY'S WILLFUL MISCONDUCT.

7.  REPORTING: JND shall provide reports in accordance with the Orders, and shall provide the Annual Reports, as defined in Schedule 3, in accordance with Schedule 3.

8.  JND EMPLOYEES:

a. JND represents that it conducts appropriate background checks for all its employees and requires its subcontractors to also conduct appropriate background checks for any subcontractor working on a JND matter. JND hereby attests that no one currently employed or contracted with JND (or any employee or contractor of any subcontractor) who will have access to Equifax Confidential Information (including any Personal Information) has a conviction, guilty plea or diversion to a crime involving Dishonesty (including theft), Breach of Trust, or money laundering, at least in the past seven (7) years.  For purposes herein, "Dishonesty" means directly or indirectly to cheat or defraud; to cheat or defraud for monetary gain or its equivalent; or wrongfully to take property belonging to another in violation of any criminal statute, including acts involving want of integrity, lack of probity, or a disposition to distort, cheat, or act deceitfully or fraudulently, and may include crimes which Federal, state or local laws define as dishonest. For purposes herein, "Breach of trust" means a wrongful act, use, misappropriation or omission with respect to any property or fund that has been committed to a person in a fiduciary or official capacity, or the misuse of one's official or fiduciary position to engage in a wrongful act, use, misappropriation or omission. Whether a crime involves Dishonesty or Breach of Trust will be determined from the statutory elements of the crime itself.   Notwithstanding the foregoing, if any JND Employee is unacceptable to Equifax for any lawful reason, Equifax will notify JND and JND will promptly remove the JND Employee from performing any further Services.

9. REPRESENTATIONS AND WARRANTIES:

a. Each Party represents and warrants to the other Party that the execution, performance, and delivery of this Agreement does not and shall not conflict with, violate, or result in the breach of any obligations or duties of any of them to any person or entity or a violation of applicable Law.

b. JND represents and warrants that: (i) JND and all JND Employees will perform all Services in a workmanlike and professional manner consistent with generally accepted industry standards; (ii) Services do not and will not infringe upon any patent, trademark, trade secret, copyright, or any other intellectual property or proprietary interest of any third party; (iii) JND will comply with and abide by all applicable Laws, including all Laws that limit, restrict, or otherwise govern the collection, use, security, storage, protection, and disclosure of Personal Information ("Applicable Privacy and Data Security Laws"), in its performance under this Agreement; (iv) to the extent JND Processes (as defined in Schedule 2) any Confidential Information after the Term, it will Process such information in compliance with all Applicable Privacy and Data Security Laws; and (v) JND, including its principals, officers, and directors, is not debarred, suspended, or proposed for debarment by an agency of the U.S. Government or any State and is not otherwise excluded from, or ineligible for, participation in federal, state, or county government contracts.

10. FORCE MAJEURE: If any event out of the reasonable control of JND prevents JND's performance, such performance shall be excused. Security incidents and data breaches incurred or experienced by JND or its affiliates or subcontractors shall not be considered force majeure events.

11. NOTICE: Any notice required in connection with the Services shall be in writing and sent by registered mail or overnight courier to the addresses listed on the signature pages hereto.

12. MISCELLANEOUS:  This Agreement constitutes the entire agreement between the Parties with respect to its subject matter and supersedes all past and contemporaneous agreements, promises, and understandings, whether oral or written, between the Parties. Provisions of this Agreement may be amended and/or waived only if such amendment and/or waiver is in writing and signed by the Parties, in the case of an amendment, or, in the case of a waiver, by the Party against whom the waiver is to be effective. No failure or delay by any Party in exercising any right hereunder shall operate as a waiver of such right, nor shall any single or partial exercise thereof preclude any other or further exercise thereof, or exercise of any other right hereunder. Each of the Parties represents and warrants that the signatory below is authorized to bind such Party to this Agreement.

13. ASSIGNMENT: JND will not transfer or assign its rights, obligations, or performance under this Agreement to any third party without the prior written consent of Equifax. JND will not subcontract the performance of this Agreement to a subcontractor without the prior written consent of Equifax.  This Agreement and the rights and obligations of JND and Equifax shall inure to the benefit of their successors and assigns, if any.

14.  TERM AND TERMINATION:

a.  This Agreement shall commence as of the date of the Parties' acknowledgement below (the "Effective Date") and shall continue until the completion of the Services, unless earlier terminated in accordance with this Section 14 (the "Term").

b.  This Agreement may be terminated in the event that the Court orders an alternative provider of the Services outlined in the Agreement.

c.  Subject to any applicable order of the Court, either Party may terminate this Agreement without penalty immediately upon written notice to the other Party if:  (i) the other Party files a voluntary or involuntary petition for bankruptcy, is liquidated or dissolved, becomes insolvent, or makes an assignment of a substantial portion of its assets for the benefit of creditors; or (ii) the other Party fails to perform any material provision of this Agreement, provided that the terminating Party will first give thirty (30) days written notice to the breaching Party, and the breaching Party will have the opportunity to attempt to correct its performance within such 30 day period or provide sufficient evidence to evidence compliance with the terms of this Agreement.

d.  The obligation of Class Counsel to pay for Services in progress at the time of notice of withdrawal shall continue throughout the 30 day period.

e.  Both Parties agree after termination to cooperate reasonably with each other with respect to efforts for an orderly transition of work.

f.  Upon termination, JND shall immediately return all unused prepaid fees and charges for Services applicable to the period following the effective date of termination to the Settlement Fund, including any prepaid, but unused supplies.

g.  The obligations contained in Sections 5 (Confidentiality and Data Use Limitations), 6 (Limitation of Damages), 9 (Representations and Warranties), 12 (Miscellaneous), 14 (Term and Termination), and Schedule 2 (Confidentiality, Privacy and Data Security), and all other terms herein which by their nature survive beyond termination, will survive any termination of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date first written above.

**JND Legal Administration**

By: _____

Print Name: ___Jennifer M. Keough_____

Title: ___CEO_____

Date: ___July 20,2019_____

**Address for Notice:**
JND Legal Administration
1100 2nd Ave, Ste 300 Seattle, WA 98101
**Attn:** Jennifer Keough
**Email:** jennifer.keough@jndla.com

**Equifax Inc.**

By: _____

Print Name: John J. Kelley III

Title: Corporate Vice President, Chief Legal Officer

Date: _____7-21-19_____

**Address for Notice:**
Equifax Inc.
1550 Peachtree Street
Atlanta, GA 30309

**Attn:** SVP US Legal
**Email:** jennifer.burns@equifax.com