# Exhibit D



This agreement ("Agreement") is effective as of [date] by and between JND Legal Administration ("JND"), and Equifax Inc. ("Equifax"), relating to *Equifax Inc., Customer Data Security Breach Litigation*, MDL No. 2800 (the "Class Action"). Equifax and JND are individually referred to as a "Party" and together as the "Parties." References to Equifax herein shall also be deemed to include affiliates of Equifax.

1.    SERVICES: JND ~~agrees to~~shall perform all services necessary to complete the tasks ~~outlined~~as stated in ~~the applicable proposal or other documents or per its understanding about the Client assignment.~~Schedule 1 and this Agreement ("Services"). Such Services do not in any way constitute legal services or advice.

2.1.    PAYMENT: The ~~Client agrees to pay JND for~~ Services shall be performed within the ~~Services as outlined in the Proposal or other agreement between the parties.  Client agrees and understands that fees charged by JND may include mark-ups, commissions, or other arrangements constituting potential profits to JND.  Client further agrees that the prices to be charged by JND were negotiated at arm's length and that total fees are estimates and that the actual amount charged may be greater or lesser than the estimated amounts.  JND reserves the right to increase its hourly rates annually~~United States, unless expressly agreed by Equifax.

2.    PAYMENT: In consideration for providing the Services, class counsel in the Class Action ("Class Counsel") will request the Court approve payment of JND's professional fees from the settlement fund in the Class Action ("Settlement Fund") in the amounts set forth on Schedule 2 of this Agreement ("Fees").  If approved by the Court, payment of Fees and reimbursement of expenses shall be made in accordance with the terms and conditions set forth on Schedule 2. JND represents and warrants that it disclosed all potentially applicable categories of fees, profit arrangements, and fee-generating activities or services within its total Fees. JND may not increase the Fees and/or impose any new category of fee or new profit arrangement, or identify any new fee-generating activity or service, without the written agreement of Equifax. JND reserves the right to increase its hourly rates annually upon agreement by the Parties.

3.    EXPENSES: ~~JND~~The Fees shall ~~also bill for~~include all expenses reasonably incurred in connection with the Services. These expenses include but are not limited to postage, FedEx, P.O. Box rental ($150/month), travel, copies ($0.20 per copy), box storage ($1.50/box per month), brokerage fees, accounting fees, electronic storage ($0.006 per image/record), and other items associated with the Services.  JND may receive rebates or credits from vendors in connection with volume of work performed for ~~all of its Clients.~~Class Counsel and Equifax.  JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit.  These credits/rebates/awards are solely the property of JND.

4.    BILLING:

   a.    JND shall provide each invoice ~~clients~~to Equifax and Class Counsel every thirty (30) days and expect payment within ~~thirty (30~~sixty (60) days of receipt of invoices~~.~~, subject to any reasonable delays arising from the Class Counsel's or Equifax's good faith challenge of, or further inquiry into any invoice.  Payment for postage and printing is due in advance of mailing.

   b.    All invoices, which shall be submitted in a form acceptable to Equifax, shall include a detailed breakdown of the charges for the Services.  In connection with invoicing, JND shall submit an up-to-date W-9 to Equifax.  Equifax may deduct and withhold from any payment made under this Agreement any taxes, duties, fees, assessments or governmental charges that Equifax determines in its reasonable discretion are required to be withheld (including taxes that Equifax reasonably determines were required to have been withheld out of previous payments, but were erroneously not withheld).  In such case, Class Counsel shall pay to JND the charges for the Services net of such taxes, duties, fees, assessments or governmental charges.

   a.c.    JND shall be solely responsible for the payment of all approved subcontractors and other third parties engaged by or through JND to provide, perform or assist in the provision and delivery of the Services.  JND shall bear all of its own expenses incurred in performing the Services otherwise specified in Schedule 2 or otherwise agreed to by Equifax. Invoices ~~not paid within thirty (30) days~~for any expenses will be ~~subject to a 1.5% monthly finance charge.~~reimbursed only if these expenses are approved in writing in advance by Equifax.

d.  For the Services or a part of the Services invoiced at an hourly rate: (i) JND employees, agents, subcontractors (including its employees), and consultants who are provided by JND to perform Services hereunder ("JND Employees") billing time for a particular Service or assignment shall maintain and submit a reasonably detailed timekeeping record with detail of the actual time being charged hereunder within the applicable timekeeping system(s) and shall be submitted to the system no later than the mutually agreed cut-off dates; and (ii) invoices submitted shall contain the actual hours worked for each JND Employee during the relevant billing period in which the Services are performed.

e.  JND shall be responsible for assessing any applicable taxes including, without limitation, sales and use, rental and gross receipts taxes (in the nature of sales taxes), but excluding taxes on JND's income, property or employment (collectively, "Taxes") for invoiced Services provided hereunder.  Class Counsel shall be responsible for paying any and all properly billed Taxes, which will be included on JND's invoice unless Equifax provides proof of their respective tax-exempt status.  Each Party shall bear sole responsibility for all taxes, assessments and other real or personal property-related levies on its owned or leased real or personal property, for income, franchise or similar taxes on its business, for employment taxes on its employees or contractors, and for tangible and intangible taxes on property it owns or licenses.

4.5. INDEPENDENT CONTRACTOR: JND is performing its Services as an ~~Independent Contractor~~independent contractor and neither it nor its employees shall be deemed to be employees of ~~the Client.~~Equifax.  Equifax reserves the right to contract with other firms or individuals during the term of this Agreement to obtain services similar to those being performed by JND under this Agreement.  JND reserves the right to contract with other firms or individuals during the term of this Agreement to provide services similar to those being performed under this Agreement.

6.   CONFIDENTIALITY~~:  JND and the Client will each treat~~ AND DATA USE LIMITATIONS:  For the purposes of this Agreement, "Personal Information" shall mean any information that (a) identifies, relates to, is linked to, or is capable of being linked to an individual, household, or device; (b) is governed, regulated, or protected by one or more Applicable Privacy and Data Security Laws (as defined in Section 10 below); (c) is derived from other Personal Information; or (d) is associated with any other Personal Information. "Confidential Information" shall mean all information in any form or medium, including without limitation all Personal Information and proprietary information, whether or not marked or identified as confidential ~~any~~, that is (i) disclosed or provided to JND by or on behalf of Equifax; (ii) received by JND from Equifax or any third party acting on behalf of Equifax; or (iii) collected, created, received, maintained, modified, transmitted, used, disclosed, or accessed by JND in connection with or during the performance of the Services.

Notwithstanding anything to the contrary in any agreement, instructions, or documents ~~shared by one party with the other.~~ relating to the Services contemplated under this Agreement, JND and its affiliates and subcontractors shall only access, use, store, or disclose Confidential Information in accordance with express instructions from Equifax, this Agreement, or a lawful court order or regulator instructions, and as minimally necessary to perform the Services, subject to Schedule 3. JND shall only permit access to Confidential Information or disclose Confidential Information to those employees who have a need to know that Confidential Information, except as permitted in this Agreement. JND shall not have any right to access, use, or disclose Confidential Information for JND's own purposes or for any other purposes. JND shall not have any right to share, disclose, or make available to third parties, including affiliates or subcontractors, Confidential Information, except as provided in this Section.

Each Party acknowledges that any unauthorized disclosure or use of the disclosing Party's Confidential Information would irreparably damage the disclosing Party in such a way that the disclosing Party could not be compensated adequately in damages in an action at law.  Accordingly, if any dispute arises concerning the receiving Party's disclosure or use of any Confidential Information, the disclosing Party may seek injunctive relief restraining any unauthorized disclosure or use, in addition to any other legal or equitable remedy otherwise available.  No bond or other security will be required in connection with the pursuit of this injunction.

JND does not convey to ~~the Client~~Equifax any right in the programs, systems, or methodologies used or provided by JND in the performance of this ~~assignment.~~ Agreement. Equifax shall retain ownership of any and all (i) pre-existing or future trademarks, tradenames, or service marks owned or used by Equifax or its affiliates, (ii) Equifax Confidential Information, (iii) registered and unregistered rights granted or applied for related to any trademarks and service marks, patents, copyrights, trade secrets, moral rights for all purposes and uses, or other similar intellectual property rights, whether protected under the all applicable laws, orders, statutes, codes, regulations, ordinances, decrees, rules, subordinate legislation, treaties, directives, bylaws, or other requirements with similar effect of any governmental authority, each as updated from time to time ("Laws") of the United States of America, or some other jurisdiction possessed by Equifax and its affiliates ("Equifax Intellectual Property Rights"), and (iv) all Equifax Intellectual Property Rights relating to any of the foregoing (collectively, "Equifax Intellectual Property").  Except as set in subsection (a) above, nothing herein shall be deemed to grant any ownership rights or any other rights in any intellectual property rights of Equifax or its affiliates.  Equifax and its licensors reserve all rights not expressly granted to JND hereunder, and nothing in this Agreement or the relationship between the Parties shall be deemed to grant any implied right or license.

~~DATA PRIVACY: JND Is~~To the extent expressly permitted by this Agreement, JND may disclose Confidential Information to its subcontractors that have a need to know that Confidential Information in order to perform the Services, provided that each subcontractor that receives Confidential Information is contractually bound to comply with terms at least as restrictive as the terms set forth in this Agreement.  In the event that JND provides Confidential Information to any permitted subcontractor, JND shall not be relieved of any of its obligations under this Agreement with regard to that Confidential Information, shall remain liable and responsible for the performance of all of its obligations under this Agreement with regard to that Confidential Information, and shall be liable to Equifax for any acts or omissions of that permitted subcontractor in relation to that Confidential Information.

The Parties agree to access, use, store, process, and disclose Confidential Information in accordance with Schedule 3.

JND is committed to taking all reasonable steps to ensure the security of all Confidential Information, including all client and claimant data entrusted to our care.  ~~We seek to protect confidential data~~JND protects Confidential Information in all of our engagements, including this one, regardless of the size of the matter or the amount of data at issue.  Please see JND's complete Privacy Policy at www.jndla.com/privacy-policy regarding data collection and use.  Without limitation to any of the terms of this Agreement or expansion of JND's rights to Confidential Information, JND shall comply with that privacy policy.

~~5.   LIMITATION OF DAMAGES:    JND is not responsible to the Client for any special, consequential or incidental damages incurred by Client and any liability of JND to the Client shall not exceed the total amount billed to the Client for the particular Services that give rise to any loss.~~

Upon Equifax's request, upon the termination or expiration of this Agreement, and whenever JND no longer needs to retain all or part of the Confidential Information in order to perform the Services, JND shall, at Equifax's option, immediately return and/or destroy that Confidential Information.  In the event that Equifax opts to have JND to destroy that Confidential Information, JND shall destroy it using a final, secure, and complete method that will render that Confidential Information permanently unrecoverable.  Upon Equifax's request, JND shall certify in writing that it has completed the destruction of that Confidential Information.

JND may disclose Confidential Information to a governmental authority if that disclosure is required by Law provided that: (i) to the extent permitted by Law, JND provides prior written notice of such disclosure to Equifax within twenty-four (24) hours of receipt of the request and that notice shall include a copy of the request and any related documents; (ii) JND takes all reasonable and lawful actions to avoid, and minimize the extent of, that disclosure; and (iii) before disclosing Confidential Information to the governmental authority JND reasonably cooperates with Equifax to resist that disclosure if Equifax chooses to do so.

JND's obligations relating to Section 6 for Confidential Information shall survive for as long as JND has access to any such Confidential Information, but in no event for a period shorter than five (5) years following the expiration or termination of this Agreement.

7.  LIMITATION OF DAMAGES:    NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY PUNITIVE, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES (INCLUDING LOSS OF BUSINESS OPPORTUNITY OR LOST PROFITS OR REVENUE) IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES TO BE PROVIDED UNDER THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR CONTEMPLATED.  EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED IN THE AGGREGATE FOR ALL CLAIMS TO AN AMOUNT NOT TO EXCEED THE GREATER OF (I) TOTAL AMOUNT BILLED HEREUNDER, OR (ii) IF EIGHTEEN (18) MONTHS HAVE NOT ELAPSED IN THE TERM AT THE TIME OF A CLAIM, THE ESTIMATED CHARGES FOR THE SERVICES SET FORTH HEREIN DURING THE FIRST EIGHTEEN (18) MONTHS OF THE TERM OF THIS AGREEMENT. THE FOREGOING LIMITATIONS OF LIABILITY SHALL NOT APPLY TO A PARTY'S BREACH OF SECTION 6 (CONFIDENTIAL AND DATA USE LIMITATIONS), SECTION 10 (REPRESENTATIONS AND WARRANTIES), SCHEDULE 3 (CONFIDENTIALITY, PRIVACY AND DATA SECURITY), SCHEDULE 3 (CONFIDENTIALITY, PRIVACY AND DATA SECURITY), AND CLAIMS SUBJECT TO INDEMNITY PURSUANT TO SECTION 3 OF SCHEDULE 3 (INDEMNITY), OR A PARTY'S WILLFUL MISCONDUCT.

8.  REPORTING:  JND shall provide Annual Reports, as defined in Schedule 4, in accordance with Schedule 4.

    JND also agrees that, in the event of a valid request for information by Equifax, Class Counsel, the Consumer Financial Protection Bureau, Federal Trade Commission, or Court in the Class Action, or any other governmental or regulatory authority to which Equifax is subject, JND will provide such requestor with information related to this Agreement as directed by the Settlement Agreement and the requesting agency.

> **Commented [1]:** **JND**: The reporting requirements continue to be updated in the various orders, and these terms will likely need to be expanded once that process is complete.

9.  JND EMPLOYEES:
    a.  The JND Employees will not be employees or agents of Equifax for any purpose, and JND assumes full responsibility for their acts.  JND will be solely responsible for the payment of compensation to JND Employees, and Equifax will not be responsible for withholding or paying any worker's compensation, disability benefits, unemployment insurance, employment taxes, or any other employee benefit for any JND Employee.  Notwithstanding the foregoing, any JND Employee is unacceptable to Equifax for any lawful reason, Equifax will notify JND and JND will promptly remove the JND Employee from performing any further Services.

    b.  For those JND Employees who are required to obtain access to Equifax data or information and those who are required to obtain an access badge and/or an Equifax user ID, JND will conduct security pre-qualifications on each JND Employee including, without limitation, drug screening in accordance with Equifax's drug-free work place policy and a criminal background investigation, all as set forth in Schedule 5 attached hereto.  Unless prevented by applicable law, such security pre-qualifications shall be completed within the sixty (60) day period prior to a JND Employee's assignment to Equifax's account.  JND Employees who fail to meet the criteria set forth in Schedule 5 shall be disqualified from assignment to Equifax.  Equifax reserves the right to require the JND to perform these tests at any time during the term of the Agreement.

    c.  **Unless exempt, JND and JND's subcontractors shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment qualified individuals without regard to race, color, religion, sex, sexual orientation, gender identification, national origin, protected veteran status or disability.** If applicable, JND and JND's subcontractors shall also abide by the requirements 41 CFR § 61-300.10 regarding veterans' employment reports and 29 CFR Part 471, Appendix A to Subpart A regarding posting a notice of employee rights.

10.  REPRESENTATIONS AND WARRANTIES:

a.   Each Party represents and warrants to the other Party that the execution, performance, and delivery of this Agreement does not and shall not conflict with, violate, or result in the breach of any obligations or duties of any of them to any person or entity or a violation of applicable Law.

b.   JND represents and warrants that: (i) JND and all JND Employees will perform all Services in a workmanlike and professional manner consistent with generally accepted industry standards; (ii) Services do not and will not infringe upon any patent, trademark, trade secret, copyright, or any other intellectual property or proprietary interest of any third party; (iii) JND will comply with and abide by all applicable Laws, including all Laws that limit, restrict, or otherwise govern the collection, use, security, storage, protection, and disclosure of Personal Information ("Applicable Privacy and Data Security Laws"), in its performance under this Agreement; (iv) to the extent JND Processes (as defined in Schedule 3) any Confidential Information after the Term, it will Process such information in compliance with all Applicable Privacy and Data Security Laws; (v) JND's performance under this Agreement will not cause Equifax to be in violation of any applicable Laws; and (vi) JND, including its principals, officers, and directors, is not debarred, suspended, or proposed for debarment by an agency of the U.S. Government or any State and is not otherwise excluded from, or ineligible for, participation in federal, state, or county government contracts.

6.11.   FORCE MAJEURE: If any event out of the reasonable control of JND prevents JND's performance, such performance shall be excused. Security incidents and data breaches incurred or experienced by JND or its affiliates or subcontractors shall not be considered force majeure events.

7.12.   NOTICE: Any notice required in connection with the Services shall be in writing and sent by registered mail or overnight courier. Such notice is deemed given if mailed five days after the date of deposit in the U.S. mail, or if sent by overnight courier, one business day after delivery to such courier. to the addresses listed on the signature pages hereto.

8.13.   GOVERNING LAW: This contractAgreement will be governed by and construed by the laws of the State of WashingtonGeorgia without reference to its conflict of law rules. In any legal action relating to this Agreement, both Parties agree and consent to the exercise of personal jurisdiction by the state or federal courts sitting in the State of Georgia, and both parties agree that proper venue for any action relating to this Agreement will lie solely in the State of Georgia.

9.14.   ASSIGNMENT: JND will not transfer or assign its rights, obligations, or performance under this Agreement to any third party without the prior written consent of Equifax. JND will not subcontract the performance of this Agreement or any substantial portion of this Agreement to a subcontractor without the prior written consent of Equifax. This Agreement and the rights and obligations of JND and the ClientEquifax shall inure to the benefit of their successors and assigns, if any.

15.   TERM AND TERMINATION:

a.   This Agreement shall commence as of the date of the Parties' acknowledgement below (the "Effective Date") and shall continue until the completion of the Services, unless earlier terminated in accordance with Section **Error! Reference source not found.** (the "Term").

b.   This Agreement may be terminated by the Client: (i) in the event that the Court in the Class Action orders an alternative provider of the Services outlined in the Agreement; or (ii) by Equifax upon at least 30 days prior written notice to JND.

c.   Either Party may terminate this Agreement without penalty immediately upon written notice to the other Party if: (i) the other Party files a voluntary or involuntary petition for bankruptcy, is liquidated or dissolved, becomes insolvent, or makes an assignment of a substantial portion of its assets for the benefit of creditors; or (ii) the other Party fails to perform any material provision of this Agreement, provided that the terminating Party will first give thirty (30) days written notice to the breaching Party, and the breaching Party will have the opportunity to attempt to correct its performance within such 30 day period or provide sufficient evidence to evidence compliance with the terms of this Agreement.

d.    The ~~Client's~~ obligation of Class Counsel to pay for ~~services or projects~~Services in progress at the time of notice of withdrawal shall continue throughout the 30 day period. ~~JND may terminate this Agreement (i) with 10 days prior written notice if the Client is not current in payment of charges or (ii) in any event, upon at least three months prior written notice to the Client.~~

e.    If ~~Client~~Equifax terminates this Agreement, JND shall have no obligation to release any information or documentation related to the applicable matter until JND has been paid in full~~,~~ for Service provided through the date of termination, except with respect to the return or destruction of Personal Information as provided in Section 6.

f.    Both Parties agree after termination to cooperate reasonably with each other with respect to efforts for an orderly transition of work.

g.    Upon termination, JND shall immediately return all prepaid fees and charges for Services applicable to the period following the effective date of termination, including any prepaid, but unused supplies.

h.    The obligations contained in Sections 6 (Confidential and Data Use Limitations), 7 (Limitation of Damages), 8 (Reporting), 10 (Representations and Warranties), 13 (Governing Law), 15 (Termination), **Error! Reference source not found.** (Miscellaneous) and Schedule 3 (Confidentiality, Privacy and Data Security), and all other terms herein which by their nature survive beyond termination, will survive any termination of this Agreement.

16.  CLASS TERMINATION EVENT:

a.    "Class Termination Event" means the Federal Trade Commission ("FTC") and/or Consumer Financial Protection Bureau ("CFPB") sending Equifax a written notice of termination pursuant to the provisions governing "Termination Events" or "Triggering Events" in the FTC Stipulated Order for Permanent Injunction and Monetary Judgment and the CFPB Stipulated Order for Permanent Injunction and Monetary Judgment.

b.    If the Class Termination Event occurs, Equifax may, in its sole discretion, terminate this Agreement immediately and without penalty.

c.    If the Class Termination Event occurs, and Equifax does not terminate this Agreement, Equifax will notify JND, and the Parties shall promptly negotiate an amendment ("Class Termination Amendment") to this Agreement in good faith. The Class Termination Amendment shall include any reasonably necessary modifications resulting from a Class Termination Event, which may include: (i) changing the identity of the entity responsible for paying the Fees necessary to reflect the lack of a Settlement Fund; (ii) reassigning the rights or obligations of the Class Counsel; (iii) modifying provisions that refer to the Settlement Agreement (as defined in Schedule 4); (iv) revising any terms that are made inapplicable, impossible, or inaccurate by the Class Termination Event such that they reflect the current terms as closely as practical without being inapplicable, impossible, or inaccurate; and/or (vi) revising any other terms necessary to comply with Applicable Law. Notwithstanding the foregoing, the Class Termination Amendment shall not include modifications to: (a) the Services; (b) the Fees; or (c) any other terms that are not directly implicated by the Class Termination Event, unless such modifications are mutually agreed by both Parties.

d.    Following the negotiation of the Class Termination Amendment, the Parties shall promptly execute the Class Termination Amendment unless Equifax elects to terminate this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date first written above.


**[JND Legal Administration]**                    **Equifax Inc.**

By: _____          By: _____
Print Name: _____          Print Name: _____

Title: _____

Date: _____

**Address for Notice:**
[INSERT]
**Attn:**
**Email:**

Title: _____

Date: _____

**Address for Notice:**
Equifax Inc.
1550 Peachtree Street
Atlanta, GA 30309
**Attn:**
**Email:**

**Non-Pertinent Pages Omitted**