**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Equifax Inc. Customer Data Security Breach Litigation | MDL Docket No. 2800<br>No. 1:17-md-2800-TWT<br><br>ALL ACTIONS<br><br>Chief Judge Thomas W. Thrash, Jr. |

JND attempts to avoid the Court's oversight by pointing to a contractual provision between JND and Equifax that is too vague to provide meaningful notice of JND's financial interest in any future services it performed as part of this Settlement. Given that this Court's Preliminary Approval Order and the Settlement stated that administrative fees and costs should be paid from the Settlement Fund, the Court should reject JND's opacity and exercise its continuing jurisdiction over this Settlement to order JND to disclose all compensation it has received outside of the Settlement Fund.

> **a.      The JND Engagement Agreement Should Not Shield JND from Oversight of Any Compensation It Has Received from Outside of the Fund**.

The thrust of JND's argument against disclosure is that Class Counsel was aware of a "standard" provision in its engagement agreement with Equifax, slightly

1

modified here to provide: "JND may receive rebates or credits from vendors in connection with volume of work performed in connection with its overall business… These credits/rebates/awards are solely the property of JND." (*See, e.g.*, Doc. 1294, at 5-6). JND places great weight on this allegedly "unambiguous" provision, which it argues allows all matter of payments to JND by third parties in any amount without disclosure to the Parties or the Court.

But this provision is too vague to offer a blanket sanction for all forms of compensation outside of a settlement fund, and nothing in this provision allows such payments to remain secret. *See id.* at 6. Among other things, none of the terms upon which it relies (rebates, credits, awards, vendors, overall business) are defined in the engagement. And there is no indication as to what types or sorts of rebates it may receive from ***this*** Settlement specifically. This cannot constitute fair notice to Class Counsel of an alleged scheme to share payment card "breakage" with another entity for distribution services performed under direction of the Court—especially when the Preliminary Approval Order and Settlement Agreement indicate that administrative fees and costs were to be paid out of the Settlement Fund. JND implicitly acknowledges the vagueness of this provision when it argues that the "rebates, credits, and benefits are based on JND's continuing relationships with vendors across its overall business … not just one case." *Id.*, at 6.

JND criticizes the timing of Class Counsel's requests for information and the motion to compel it. (Doc. 1294, at 9). However, given the vagueness of the provision in the engagement, and JND's lack of disclosure regarding the allegations involving the distribution of the 2024 supplemental payments, the public reporting preceding the *Baker* Complaint was the first that Class Counsel learned of any potential compensation regarding the electronic payment cards involving the *Equifax* litigation. *See, e.g., In re: Class Action Settlement Administration Litigation*, 25-mc-179-JDB, MDL Docket No. 3162, Doc. 123 ¶12 (citing *Forbes* article published on May 21, 2025).

Perhaps more important than whether JND's engagement agreement allowed the conduct as alleged in *Baker* and MDL 3162, this provision in no way shields JND from disclosing such benefits to either Class Counsel or the Court. Given that the Court retains jurisdiction over this action, including over "appointed entities" for purposes expressly including administration, the Court should compel disclosure of the compensation JND has received outside of the Fund here. *See, e.g., Gibson v. Realtors*, No. 23-cv-00788-SRB, 2026 WL 1840538, at *1 (W.D. Mo. June 25, 2026) (collecting cases regarding importance of transparency in JND's settlement administration and noting that a court's "inherent and equitable powers include

3

oversight and supervision of a class action settlement administrator in the performance of its duties, which include acting diligently and in good faith").

To avoid disclosure, JND seeks to distinguish *Facebook* on the grounds that the settlement administrator "voluntarily disclosed information ahead of the 'commencement of distribution' to aid the court's decision" regarding distribution. (Doc. 1294, at 11). *Facebook* only serves to emphasize that a court's oversight powers extend to issues regarding settlement administrator's compensation outside of the fund. That JND chose not to disclose such compensation is more reason, not less, to order disclosure here.

### b.      Other Arguments from JND and Other Settlement Terms Here Further Demonstrate Why Disclosure Is Warranted.

JND's lack of transparency is particularly troublesome given the position it has taken in MDL 3162. There, JND argued that only "class counsel—*not settlement administrators*—[owe] the fiduciary obligation to protect class members, acting under the continuing supervision of the court." MDL 3162, Doc. 143-1 (emphasis added), at 1; *see also id.* at 6 (suggesting that class counsel were proper parties in lawsuit). Disclaiming any fiduciary duty to the class is a necessary foundational point lurking behind JND's position here—if such a duty is owed to the class, JND would unquestionably be obligated to provide full transparency of all material facts regarding its financial arrangements.

In the abstract, JND's position is doubtful, particularly in the context of a lawsuit alleging that class action administrators were unlawfully enriched by undisclosed agreements with third parties. After all, administrators act under court supervision, and they secure court appointments by touting their reputation and experience with notice, claims adjudication, and disbursement. (*See generally* Doc. 739-6, Declaration of Jennifer M. Keough Regarding Proposed Administration Program); (*see also* Doc. 1294, at 3-4) (favorably reciting efforts to overcome Settlement's "daunting challenges for administration [at] every step of the way…").

Here, labels aside, the Settlement plainly vested JND with broad discretion and responsibility in certain matters.[1] For example, JND had sole discretion to determine the validity of out-of-pocket loss claims by Class Members. *See* Doc. 739-2, Settlement Agreement §§ 8.3.2, 8.5.2. JND determined the validity of out-of-pocket loss claims and undertook to design and handle the payment distribution process itself, including to "[w]ork with card issuer to design pre-paid Visa card and

---

[1] *Cf. Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1356-57 (11th Cir. 2003) (treating settlement administrator as merely ministerial when it had "no duty or even discretion" over the fund, but noting that "the Settlement Administrator's activities are subject to the court's supervision" and that the administrator "is entitled to nothing more for his services than reimbursement 'for fees, costs and expenses incurred in connection with the administration' of the settlement fund.").

create distribution awards." *See* Keough Declaration, Doc. 739-6, ¶11, at pg. 11.

Especially important, by administering this Settlement, JND agreed:

> ***The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel*** *for* (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, ***in connection with the administration of the Settlement***; (ii) the management, investment or ***distribution of the Consumer Restitution Fund***; (iii) ***the formulation, design or terms of the disbursement of the Consumer Restitution Fund***[.]

(Doc. 739-2, at p. 35, Settlement Agreement § 14.3) (emphasis supplied); *see also*

*id.* § 3.5 ("The Settlement Administrator, subject to such supervision and direction

of the Court and Class Counsel as may be necessary or as circumstances may require,

shall administer and oversee distribution of the Consumer Restitution Fund to

Settlement Class Members pursuant to this Agreement.").

An entity entrusted with that degree of discretion over money belonging to

absent class members occupies a position of trust and owes corresponding fiduciary

obligations to those it serves. Other courts have recognized this fiduciary

relationship where settlement administrators have "all the necessary powers . . . to

effectuate the terms of the Settlement Agreement" including "investing, allocating

and distributing the Settlement Fund, and in general supervising the administration

of the Settlement Agreement in accordance with its terms." *Beanland v. Fed. Express*

*Corp.*, No. CV 22-672-MAK, 2023 WL 12070618, at *5 (D. Del. Mar. 30, 2023);

*see also Halter v. Providence Health & Servs.*, No. 2:25-CV-00210-JNW, 2026 WL 1601689 (W.D. Wash. June 4, 2026) (same). *See also McMahon Found. v. Amerada Hess Corp.*, 98 F. App'x 267, 270 f.5 (5th Cir. 2004) (characterizing administrators of settlement fund as fiduciaries). Vested with this authority and responsibility, JND should be obligated to disclose compensation it may have received from its design and implementation of fund disbursement. A determination of whether such compensation is permissible can follow.

Doubtlessly under Georgia law, "a fiduciary relationship encompasses a duty to disclose," and a fiduciary accordingly has "a duty. . . to disclose the existence of the kickback scheme" in which it participates. *Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 593 (2012) (quoting *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 696 (2003)). But even if a court were to find that JND owed no fiduciary duties, surely "special circumstances" exist here (by virtue of the JND's appointment and role in the class action administration process) to trigger a duty to disclose any material personal financial interest it may have from this Settlement. *See* O.C.G.A § 23-2-53.[2] Here, however, the provision JND invokes is too vague to

---

[2] *Wright* also recites black-letter Georgia law that confidential relationships may be found whenever one party is justified in reposing confidence in another, that agents have fiduciary duties to their principle, and the presence of confidential relationships sufficient to trigger a duty to disclose are factual issues. *Id.*, 315 Ga. App. at 592.

have placed anyone on notice of the specific arrangement at issue. *Gen. Info. Processing Sys., Inc. v. Sweeney*, 176 Ga. App. 315, 316 (1985) ("the beneficiary. . . may rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid"). The operative terms JND relies on to keep its payments secret are undefined and disclose nothing about payments tied to this Settlement's distribution.

Developments in this Settlement illustrate why such disclosure is warranted. JND correctly notes that prepaid debit cards were always contemplated as a form of payment under the Settlement. *See* Doc. 1294, at 4; *see also* Doc. 739-2, at p. 283; Doc. 739-6, at 10.  And Class Counsel agrees that in the context of this Settlement, sending smaller supplemental payments via digital prepaid format had obvious advantages over the mailing of physical checks. However, Class Counsel's decision was made without the benefit of the allegations regarding the arrangement between the purported prepaid payment card issuer (Blackhawk) and JND. *See, e.g.*, *In re: Class Action Settlement Administration Litigation*, 25-mc-179-JDB, MDL Docket No. 3162, Doc. 123 ¶ 329-330.

Such disclosure would have heightened Class Counsel's scrutiny regarding the supplemental distribution particularly, including, for example, regarding the charging of any fees. *C.f.* Claims Administration Protocol, Doc. 739-2, at 8 ("There

will be no fees or charges of any kind debited from Settlement Class Members for obtaining funds from the check or prepaid card[.]"). Regardless of whether any corrective action ought to be taken, "Class Counsel and the Court, as fiduciaries of the Class, should have been aware of *this arrangement* [between the settlement administrator and payment card issuer Blackhawk] earlier in the proceedings to permit review of any potential conflicts of interest[.]." *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2025 WL 2494429, at *4 (N.D. Cal. Aug. 29, 2025) (emphasis supplied).

## Conclusion

For these reasons, Class Counsel respectfully request that the Court order JND to disclose to Class Counsel, Defendant, and the Court the amount of any rebates, awards, and/or credits from vendors, and financial benefits from banks or any institutions from this Settlement.

9

Dated:  August 14, 2026

Respectfully submitted,

*/s/ Amy Keller*
Amy E. Keller
**DɪCELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel. 770.227.6375
roy@barneslawgroup.com

*/s/ Norman E. Siegel*
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. 816.714.7100
siegel@stuevesiegel.com

***Consumer Plaintiffs' Counsel***

10

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document has been prepared in compliance with Local Rules 5.1 and 7.1.

*/s/ Amy Keller*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 14th day of August 2026.

I also certify that a copy of the foregoing was sent to counsel for JND Legal Administration via electronic mail this 14th day of August 2026.

_/s/ Amy Keller_